## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (___) |
| Debtors.[1] | (Joint Administration Requested) |
| | **Hearing Date:** TBD |
| | **Objection Deadline:** September 23, 2024 at 4:00 p.m. (ET) |

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO REJECT CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) AUTHORIZING AND ESTABLISHING PROCEDURES TO REJECT EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**" or "**Big Lots**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this *Motion of Debtors for Entry of an Order (I) Authorizing Debtors To Reject Certain Unexpired Leases of Nonresidential Real Property and (II) Authorizing and Establishing Procedures To Reject Executory Contracts and Unexpired Leases* (this "**Motion**"). This Motion is supported by the *Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings* (the "**Ramsden Declaration**") filed contemporaneously herewith and

---

[1]   The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

incorporated herein by reference.  In further support of this Motion, the Debtors respectfully state as follows:

### **Relief Requested**

1.      By this Motion, and pursuant to sections 105, 363, 365, and 554 of title 11 of the United States Code (the "**Bankruptcy Code**") and rules 6004, 6006, and 6007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (a) authorizing the rejection of the Initial Leases (as defined below) effective as of the rejection date for each Initial Lease as set forth on Exhibit 1 annexed to the Proposed Order (each such date, the "**Initial Lease Rejection Date**"), (b) authorizing and establishing the procedures contained in the Proposed Order (the "**Rejection Procedures**")[2] for (i)  rejecting executory contracts and unexpired leases (each, a "**Contract**" or "**Lease**") and (ii) abandoning personal property in connection with any rejected Contract or Lease,[3] and (c) authorizing and approving the Rejection Notice (as defined in the Proposed Order) to each relevant non-Debtor counterparty (each, a "**Counterparty**") to an affected Contract or Lease, substantially in the form attached to the Proposed Order as Exhibit 2.[4]

---

[2]  The Rejection Procedures and any exhibits thereto are incorporated herein by reference.

[3]  The Debtors may, in the future, seek entry of an order approving procedures for the abandonment of "*de minimis*" assets unrelated to the rejection of any Contract or Lease.  The Debtors submit that, if there is any conflict between the provisions in the Rejection Procedures relating to the abandonment of assets and those set forth in any subsequently Court-approved procedures, the latter shall control.

[4]  As described below, the Rejection Procedures allow for the simultaneous rejection of multiple Contracts and Leases, such that it is conceivable that a Counterparty may be party to multiple Contracts or Leases on the Rejection Notice.  As such, all references in this Motion or the Proposed Order to a Contract or Lease (or terms related thereto) in the singular shall include the plural as well, and vice versa.

## Jurisdiction, Venue, and Authority

2.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

3.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  In addition, the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

4.      Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

### A.   General Background

5.      On September 9, 2024 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors remain in possession of their property and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner, and no official committee has been appointed in the Chapter 11 Cases.

6.      Contemporaneously herewith, the Debtors have filed a motion requesting the joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

7.    Big Lots is a one-stop shop home discount retailer.  Big Lots' mission is to help customers "Live Big and Save Lots" by offering bargains on everything for their homes, including furniture, décor, pantry essentials, kitchenware, groceries, and pet supplies.  Headquartered in Columbus, Ohio, Big Lots operates more than 1,300 stores across 48 states in the United States, as well as an ecommerce store with expanded fulfillment and delivery capabilities.

8.    Additional information about the Debtors' businesses and affairs, capital structure, and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the Ramsden Declaration.

**B.    The Debtors' Executory Contracts and Unexpired Leases**

9.    The Debtors are party to hundreds of agreements, including agreements (a) with vendors for the supply of goods and services, licensing agreements, software and information technology agreements, and other agreements related to the Debtors' businesses and (b) Leases with respect to real and personal property.

**C.    The Initial Leases**

10.    As described more fully in the Ramsden Declaration and the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors To Assume the Services Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* filed contemporaneously herewith, the Debtors historically operated over 1,300 stores (the "**Stores**") and five Distribution Centers (the "**Distribution Centers**") across the United States.  As part of the Debtors' efforts to rationalize their cost structure under their transformation business plan, the Debtors started to (a) reduce their retail footprint by commencing the process of closing unprofitable Stores and (b) prepare for a process to streamline their supply chain by utilizing a third-party logistics provider.  In fact, prior to the Petition Date, the Debtors commenced the process of closing 295 Stores (collectively, the "**Closing Locations**").  By this Motion, the

Debtors seek authorization to reject the Leases associated with the Closing Locations (collectively, the "**Initial Leases**"), effective as of the applicable Initial Lease Rejection Dates.

**D.      Procedures To Reject Contracts and Leases**

11.      The Debtors and their advisors are in the process of evaluating the economic value of each of their Contracts and Leases.  In doing so, the Debtors already determined that the liabilities associated with the Initial Leases far outweigh the benefit that the Initial Leases provide to the Debtors' estates.  With respect to the Debtors' remaining Contracts and Leases, the Debtors intend to continue evaluating how best to implement their transformation business plan, including closing additional unprofitable Stores and potentially Distribution Centers.  Moreover, where appropriate, and in the ordinary course of their businesses, the Debtors intend to work diligently with their Counterparties to negotiate new or amended agreements that are more compatible with the Debtors' current and projected needs and resources.  However, the Debtors may not be able to negotiate a suitable arrangement with certain Counterparties and, in such cases, rejection would be an appropriate exercise of the Debtors' business judgment.

12.      The Debtors and their advisors are continuing to assess which Contracts and Leases should be rejected as such Contracts and Leases are no longer required by, or are otherwise unfavorable to, the Debtors.  Absent the relief requested herein, the Debtors may be required under applicable law to file a discrete motion each time they seek to reject a Contract or Lease.  This would require the Debtors to needlessly expend their limited resources, to the detriment of all stakeholders in the Chapter 11 Cases, and would be burdensome for the Court and its staff as well.

13.      Accordingly, the Debtors believe that establishing orderly procedures for the rejection of Contracts and Leases would streamline the administration of the Chapter 11 Cases and otherwise promote efficiency for the Court, the office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), and all other parties in interest, thereby (a) maximizing the

value of the Debtors' estates for the benefit of all stakeholders and (b) preserving the due process rights of parties in interest (particularly the Counterparties). The Rejection Procedures are designed to, among other things, (x) outline the process by which the Debtors would serve notice to Counterparties regarding the prospective rejection of their Contracts or Leases, which notice would include pertinent information relating thereto (*e.g.*, the effective date thereof (the "**Rejection Date**")), (y) establish objection and other relevant deadlines and the manner for resolving disputes relating to the Debtor's proposed rejection, and (z) eliminate the necessity for a hearing with respect thereto.

**Basis for Relief**

**A.    Rejection of the Initial Leases, and Rejection of Contracts and Leases Pursuant to the Rejection Procedures, is and Would be an Exercise of the Debtors' Sound Business Judgment and Should be Authorized**

14.    Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease." 11 U.S.C. § 365(a). Courts routinely approve motions to reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (stating that the traditional standard applied by courts to authorize the rejection of an executory contract is that of "business judgment"); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 114 (Bankr. D. Del. 2001) ("A debtor's authority to assume or reject an executory contract 'is vital to the basic purpose [of] a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization.'" (quoting *Bildisco*, 465 U.S. at 528)).

15.    The standard applied to determine whether the rejection of an unexpired lease should be authorized is the "business judgment" standard. *Sharon Steel Corp. v. Nat'l Fuel Gas*

*Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *accord L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000) ("Section 365 enables the trustee to maximize the value of the debtor's estate by assuming executory contracts and unexpired leases that benefit the estate and rejecting those that do not."). The business judgment rule entails "a presumption that, in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985) (cleaned up), *overruled on other grounds by Gantler v. Stephens*, 965 A.2d 695 (Del. 2009); *see also In re Sols. Liquidation LLC*, 608 B.R. 384, 402 (Bankr. D. Del. 2019) (citation omitted).

16.     Courts emphasize that the business judgment rule is not an onerous standard and, in the context of a debtor's rejection of an executory contract or unexpired lease, merely requires a showing that the rejection of such executory contract or unexpired lease would benefit the debtor's estate. *See NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) (noting that the "usual test for rejection of an executory contract is simply whether rejection would benefit the estate"), *aff'd*, 465 U.S. 513 (1984); *In re AbitibiBowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (explaining that the business judgment rule is "not a difficult standard to satisfy" (citing *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006))). As such, courts exhibit great judicial deference to a debtor's exercise of business judgment to reject an unexpired lease or an executory contract. *See In re Comput. Sales Int'l v. Fed. Mogul Glob., Inc. (In re Fed. Mogul Glob., Inc.)*, 293 B.R. 124, 127 (D. Del. 2003) (holding that Debtors have the "fundamental authority to assume or reject an executory contract" and that this authority should not be disturbed "[a]bsent bad faith or gross negligence"); *Glenstone Lodge, Inc. v. Buckhead Am. Corp. (In re Buckhead Am. Corp.)*, 180 B.R. 83, 88 (D. Del. 1995) ("[T]he question whether a[n executory

contract] should be rejected and if not on what terms it should be assumed is one of business judgment." (citation omitted)); *In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the "product of bad faith, whim, or caprice"); *cf. Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

### Rejection of the Initial Leases

17.     As a result of the Debtors' prepetition efforts to rationalize their cost structure under their transformation business plan by reducing their retail footprint and recalibrating their distribution network, the Debtors no longer require the Closing Locations that are occupied by the Debtors pursuant to the Initial Leases.  The Debtors submit that rejecting the Initial Leases would allow the Debtors to avoid unnecessary and ongoing risks or costs associated with the Initial Leases on a post-petition basis.  Accordingly, the Debtors seek authorization to reject the Initial Leases, effective as of the applicable Initial Lease Rejection Dates.

### Approval of the Rejection Procedures

18.     Here, any rejection of a Contract or Lease would constitute an exercise of the Debtors' sound business judgment because such action would allow the Debtors to keep valuable agreements while shedding onerous or unneeded ones, thereby reshaping the Debtors' businesses to reflect their current and projected needs and resources.   In sum, the Debtors have determined, in their sound business judgment, that the rejection (including the abandonment of any personal property in connection therewith) of any Contract or Lease in accordance with the Rejection Procedures is and would be in the best interest of the Debtors' estates.

19.    Moreover, as described above, the streamlined Rejection Procedures would greatly maximize efficiency and, by extension, value in the Chapter 11 Cases.  Without the Rejection Procedures, the Debtors may be required to file an individual stand-alone motion each time they want to reject a Contract or Lease, thereby consuming the scarce time and resources of the Debtors, the Court and its staff, the U.S. Trustee, any official committee appointed in the Chapter 11 Cases, and other parties in interest.

20.    In addition, the Rejection Procedures would not violate or prejudice the due process rights of any Counterparty or other party in interest.  As a procedural matter, "[a] proceeding to assume, reject, or assign an executory contract or unexpired lease . . . is governed by Rule 9014." Fed. R. Bankr. P. 6006(a).  Bankruptcy Rule 9014 provides that, "[i]n a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Fed. R. Bankr. P. 9014(a).  The notice and hearing requirements for contested matters in Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" or a similar phrase to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances").  Here, pursuant to the Rejection Procedures, affected Counterparties and other parties in interest (including the U.S. Trustee and any official committee appointed in the Chapter 11 Cases) would receive notice of a Debtor's proposed rejection of any Contract or Lease, which would contain pertinent information in connection therewith (*e.g.*, the proposed Rejection Date). *See, e.g.*, *In re Thane Int'l, Inc.*, 586 B.R. 540, 548 (Bankr. D. Del. 2018) (finding that the requirements of the Bankruptcy Code are meant to protect the interests and due process rights of the non-debtor parties to executory contracts); *In re Carlisle Homes, Inc.*, 103 B.R. 524, 535

(Bankr. D.N.J. 1988) (finding that a debtor may reject an executory contract by clearly communicating its intention to reject).

21.     Under Bankruptcy Rule 6006(e), however, a debtor may join requests for authority to reject multiple executory contracts or unexpired leases in one motion, subject to Bankruptcy Rule 6006(f).  A motion to reject multiple executory contracts or unexpired leases that are not between the same parties shall:

> (1) state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion; (2) list parties alphabetically and identify the corresponding contract or lease; . . . (5) be numbered consecutively with other omnibus motions to . . . reject executory contracts or unexpired leases; and (6) be limited to no more than 100 executory contracts or unexpired leases.

Fed. R. Bankr. P. 6006(f).

22.     The proposed Rejection Procedures largely comport with the requirements of Bankruptcy Rule 6006(f).  The procedural requirements in Bankruptcy Rule 6006(f) are intended to protect the due process rights of Counterparties to the affected Contracts and Leases.  A Counterparty must be able to locate its Contract or Lease and readily determine whether its Contract or Lease is being rejected.  Given the substantial number of Contracts and Leases that the Debtors may reject, obtaining Court approval of each rejection would impose unnecessary administrative burdens on the Debtors and the Court and result in costs to the Debtors' estates that may decrease the economic benefits of rejection.  Pursuant to the Rejection Procedures, however, the Debtors would provide the affected Counterparty, the U.S. Trustee, and any official committee appointed in the Chapter 11 Cases (collectively, the "**Objection Service Parties**") with the requisite notice and an opportunity to object to any proposed action, thereby preserving the due

process rights of the key parties in interest. Moreover, the Court would maintain authority and oversight in the event of an objection to a particular rejection of a Contract or Lease.

23. Furthermore, section 105(a) of the Bankruptcy Code confers the Court with broad equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Accordingly, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtors' assets. *See In re Nixon*, 404 F. App'x 575, 578 (3d Cir. 2010) ("It is well settled that the court's power under § 105(a) is broad." (citation omitted)); *In re Nortel Networks, Inc.*, 532 B.R. 494, 554 (Bankr. D. Del. 2015) ("The Third Circuit has construed [section 105 of the Bankruptcy Code] to give bankruptcy courts 'broad authority' to provide appropriate equitable relief to assure the orderly conduct of reorganization proceedings, and to 'craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain.'" (citations omitted)); *Patrick v. Dell Fin. Servs., L.P. (In re Patrick)*, 344 B.R. 56, 58 (Bankr. M.D. Pa. 2005) ("There is no doubt that § 105(a) is a 'powerful [and] versatile tool' designed to empower bankruptcy courts to fashion orders in furtherance of the Bankruptcy Code." (quoting *Joubert v. ABN AMRO Mortg. Grp., Inc. (In re Joubert)*, 411 F.3d 452, 455 (3d Cir. 2005))).

24. Finally, this Court has routinely granted relief similar to that requested herein. *See, e.g.*, *In re Fisker Inc.*, No. 24-11390 (TMH) (Bankr. D. Del. July, 29, 2024) [D.I. 337]; *In re Yellow Corp.*, No. 23-11069 (CTG) (Bankr. D. Del. Sept. 14, 2023) [D.I. 550]; *In re Rockport Co., LLC*, No. 23-10774 (BLS) (Bankr. D. Del. July 12, 2023) [D.I. 189]; *In re Agway Farm & Home Supply, LLC*, No. 22-10602 (JKS) (Bankr. D. Del. Dec. 20, 2022) [D.I. 406]; *In re Clarus Thera. Holdings,*

*Inc.*, No. 22-10845 (MFW) (Bankr. D. Del. Oct. 27, 2022) [D.I. 208]; *In re 24 Hour Fitness Worldwide, Inc.*, No. 20-11558 (KBO) (Bankr. D. Del. July 2, 2020) [D.I. 405].

25.     Based on the foregoing, the Debtors respectfully submit that the Rejection Procedures are fair, reasonable, and in the best interests of the Debtors and their estates and stakeholders and, therefore, should be approved.

**B.     *Nunc Pro Tunc* Relief is Appropriate**

26.     The Debtors submit that it is appropriate for the Court to authorize the Debtors to deem the rejection of the Initial Leases effective *nunc pro tunc* to the applicable Initial Lease Rejection Dates, which date is, at the earliest, the filing date of this Motion.  Moreover, the Debtors submit that it is appropriate for the Court to authorize, but not direct nor require, the Debtors, through the Rejection Procedures, to deem the rejection of a Contract or Lease effective *nunc pro tunc* to the filing date of this Motion or a later date established by the Debtors in accordance with the Rejection Procedures or as agreed between the Debtors and the applicable Counterparty.

27.     Section 365 of the Bankruptcy Code does not address when the rejection ordered by the Court is deemed effective, nor does the Bankruptcy Code restrict courts from concluding that the effective date of the rejection is the date of the requested relief.  *See In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (stating that section 365 of the Bankruptcy Code does not include "restrictions as to the manner in which the court can approve rejection"); *see also In re CCI Wireless, LLC*, 297 B.R. 133, 138 (D. Colo. 2003) (noting that section 365 of the Bankruptcy Code "does not prohibit the bankruptcy court from allowing the rejection of [leases] to apply retroactively").  Courts have held that a bankruptcy court may, in its discretion, authorize rejection retroactively to a date prior to the date of the entry of an order authorizing such rejection where the balance of equities favors such relief.  *See In re Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1028–29 (1st Cir. 1995) (stating "rejection

-12-

under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively"); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (stating "the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)"); *CCI Wireless*, 297 B.R. at 140 (holding that a "court has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject"); *In re At Home Corp.*, 392 F.3d 1064, 1065–66 (9th Cir. 2004) (holding "that a bankruptcy court may approve retroactively the rejection of an unexpired nonresidential lease"); *BP Energy Co. v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, No. 02-cv-6419-NRB, 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) ("We cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution.").

28.    This Court routinely grants relief similar to that requested herein.  *See, e.g.*, *In re Fisker Inc.*, No. 24-11390 (TMH) (Bankr. D. Del. July 29, 2024) [D.I. 337]; *In re Zymergen Inc.*, No. 23-11661 (KBO) (Bankr. D. Del. Oct. 31, 2023) [D.I. 122] (authorizing rejection *nunc pro tunc* to the petition date); *In re Southcross Energy Partners, L.P.*, No. 19-10702 (MFW) (Bankr. D. Del. Oct. 17, 2019) [D.I. 544] (authorizing rejection *nunc pro tunc* to the date debtors abandoned the subject premises, which preceded the date of filing the motion); *In re Ltd. Stores Co., LLC*, No. 17-10124 (KJC) (Bankr. D. Del. Jan. 30, 2017) (authorizing rejection *nunc pro tunc* to the petition date) [D.I. 158, 159, 160, 161]; *In re UCI LLC*, No. 16-11354 (MFW) (Bankr. D. Del. Aug. 25, 2016) (authorizing rejection *nunc pro tunc* to the date of filing the motion) [D.I. 420]; *In re Amyris, Inc.*, No. 23-11131 (TMH) (Bankr. D. Del. Sept. 15, 2023) (authorizing rejection *nunc pro tunc* to the petition date) [D.I. 300]; *In re Alex and Ani, LLC*, No. 21-10918

(CTG) (Bankr. D. Del. July 16, 2021) (same) [D.I. 216]; *In re White Stallion Energy, LLC*, No. 20-13037 (LSS) (Bankr. D. Del. Dec. 28, 2020) (same) [D.I. 174].

29.     Accordingly, the Debtors respectfully request the Court's authorization to reject (a) the Initial Leases effective *nunc pro tunc* to the applicable Initial Lease Rejection Dates and (b) the remaining Contracts or Leases effective *nunc pro tunc* to the filing date of this Motion or a later date established by the Debtors in accordance with the Rejection Procedures or as agreed between the Debtors and the applicable Counterparty.

**C.     Abandonment of Certain Personal Property in Connection with the Rejected Contracts and Leases is in the Best Interests of the Debtors, their Estates, and All Parties in Interest**

30.     Section 554(a) of the Bankruptcy Code provides that a debtor in possession "[a]fter notice and a hearing . . . may abandon any property of the estate that . . . is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). When rejecting a Contract or Lease, it may be more economically sound for the Debtors to abandon certain personal property (*e.g.*, signage, store pylons, point of sale registers, fixtures, furniture equipment, advertising displays, and unwanted merchandise) than it would for the Debtors to incur costs relating to retrieving and selling such assets outright, especially when considering the expenses ancillary to such sale efforts (*e.g.*, dismantling, interim storage, shipping and marketing). Subject to applicable law, the Debtors would not abandon personal property unless, in the Debtors' reasonable business judgment, the sale of the asset would not generate enough net value for the Debtors' estates.

31.     Bankruptcy Rule 6007 affords the Court discretion in limiting notice and the time for filing objections in connection with the abandonment of property. The Debtors submit that strict compliance with Bankruptcy Rule 6007(a) in connection with the abandonment of assets located on premises governed by a rejected Contract or Lease (*i.e.*, requiring notice be given to all creditors) would be unnecessarily expensive and time consuming and would not provide any

incremental benefit to the Debtors' estates or creditors.  Furthermore, the Debtors submit that the

proposed deadline to file an objection to the abandonment of assets should be sufficient and should

not otherwise prejudice the rights of any party in interest.  Accordingly, the Debtors request that

the Court limit notice and objection deadlines under Bankruptcy Rule 6007, as set forth in the

Proposed Order, and otherwise approve the abandonment provisions set forth in the Rejection

Procedures.

### Debtors' Reservation of Rights

32.    Nothing contained herein or any actions taken pursuant to such relief requested is

intended or should be construed as, or deemed to constitute, an agreement or admission as to the

amount, priority, character, or validity of any claim against the Debtors on any grounds (whether

under bankruptcy law or otherwise), a commitment or requirement to pay any claim, a waiver or

impairment of the Debtors' rights to dispute any claim on any grounds, or an admission as to the

amount, priority, enforceability, perfection, or validity of any lien on, security interest in, or other

encumbrance on property of the Debtors' estates.  The Debtors expressly reserve their rights to

contest any claims under applicable bankruptcy and non-bankruptcy law.  Likewise, if the Court

grants the relief sought herein, any payment or transfer made pursuant to the Court's order

(including in connection with any action taken by the Debtors in accordance with the Rejection

Procedures) is not intended, and should not be construed, as an admission as to the amount,

priority, character, or validity of any claim or a waiver of the Debtors' rights to subsequently

dispute such claim.

### Compliance with Bankruptcy Rule 6004(a) and Waiver of
### Bankruptcy Rules 4001(a)(3), 6004(h), and 6006(d)

33.    To implement successfully the relief sought herein, the Debtors request that the

Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the

-15-

circumstances.  The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by (a) Bankruptcy Rule 4001(a)(3), which provides that "[a]n order granting a motion for relief from an automatic stay . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise," Fed. R. Bankr. P. 4001(a)(3), and (b) Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the Debtors have already commenced the process of analyzing their Contracts and Leases to maximize and preserve value for their estates and stakeholders.  Accordingly, the Debtors respectfully submit that ample cause exists to justify the (a) finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and (b) waiving of the 14-day stay imposed by Bankruptcy Rules 4001(a)(3) and 6004(h).

## Notice

34.     Notice of this Motion will be provided to the following parties:  (a) the U.S. Trustee; (b) those creditors holding the 30 largest unsecured claims against the Debtors' estates (on a consolidated basis); (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for states in which the Debtors conduct business; (g) Choate, Hall & Stewart LLP, as counsel to the ABL Agent; (h) Otterbourg P.C., as counsel to the Term Agent (i) each Counterparty; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

35.     A copy of this Motion and any order entered in respect thereto will also be made available on the Debtors' case information website located at https://www.cases.ra.kroll.com/BigLots.  Based on the circumstances surrounding this Motion and

the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is required.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:    September 9, 2024
          Wilmington, Delaware

                        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                        */s/ Sophie Rogers Churchill*
                        Robert J. Dehney, Sr. (No. 3578)
                        Andrew R. Remming (No. 5120)
                        Tamara K. Mann (No. 5643)
                        Sophie Rogers Churchill (No. 6905)
                        Casey B. Sawyer (No. 7260)
                        1201 N. Market Street, 16th Floor
                        Wilmington, DE 19801
                        Tel: (302) 658-9200
                        rdehney@morrisnichols.com
                        aremming@morrisnichols.com
                        tmann@morrisnichols.com
                        srchurchill@morrisnichols.com
                        csawyer@morrisnichols.com

                        *-and-*

                        DAVIS POLK & WARDWELL LLP

                        Brian M. Resnick (*pro hac vice* forthcoming)
                        Adam L. Shpeen (*pro hac vice* forthcoming)
                        Stephen D. Piraino (*pro hac vice* forthcoming)
                        Ethan Stern (*pro hac vice* forthcoming)
                        450 Lexington Avenue
                        New York, NY 10017
                        Tel.: (212) 450-4000
                        brian.resnick@davispolk.com
                        adam.shpeen@davispolk.com
                        stephen.piraino@davispolk.com
                        ethan.stern@davispolk.com

                        *Proposed Counsel to the Debtors and Debtors in Possession*