**Exhibit A**

**Revised Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 15** |

**INTERIM ORDER (I) AUTHORIZING (A) DEBTORS TO CONTINUE TO MAINTAIN EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS, (B) DEBTORS TO OPEN AND CLOSE BANK ACCOUNTS, AND (C) FINANCIAL INSTITUTIONS TO ADMINISTER THE BANK ACCOUNTS AND HONOR AND PROCESS RELATED CHECKS AND TRANSFERS, (II) WAIVING DEPOSIT AND INVESTMENT REQUIREMENTS, AND (III) ALLOWING INTERCOMPANY TRANSACTIONS AND AFFORDING ADMINISTRATIVE EXPENSE PRIORITY TO POST-PETITION INTERCOMPANY CLAIMS**

Upon the motion (the "**Motion**")[2] of Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for entry of interim and final orders, pursuant to sections 105(a), 345, 363(c)(1), 364(a), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (a) authorizing, but not directing, the Debtors to (i) continue operating their Cash Management System, (ii) maintain their existing Bank Accounts located at the Banks and open and close Bank Accounts post-petition in the ordinary course of business, and (iii) maintain their existing Business Forms, (b) authorizing the applicable financial institutions to treat, service, and administer the Bank Accounts in the ordinary

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

course of business and to receive, process, honor, and pay all checks or wire transfers used by the Debtors, (c) waiving the requirements of section 345(b) of the Bankruptcy Code, Local Rule 2015-2, and section 2 of the U.S. Trustee Guidelines on an interim basis, (d) allowing the Debtors to continue to enter into and perform Intercompany Transactions, and (e) affording post-petition Intercompany Claims administrative expense priority treatment under sections 503(b)(1) and 364(a) of the Bankruptcy Code, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of the Chapter 11 Cases and related proceedings being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the Ramsden Declaration; and the Court having held a hearing to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and the Ramsden Declaration and at the Hearing establish just cause for the relief granted herein; and the Debtors having submitted that the relief requested in the Motion is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and all objections and reservations of rights filed or asserted in respect

of the Motion, if any, having been withdrawn, resolved, or overruled; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. The Motion is granted on an interim basis to the extent set forth in this order (this "**Order**").

2. Subject to the limitations of this Order, the Debtors are authorized, but not directed, pursuant to sections 105(a), 363(c)(1), and 364(a) of the Bankruptcy Code, to continue, in their sole discretion, to maintain, operate, and make transfers under their Cash Management System in the same or similar manner as it was maintained before the Petition Date.

3. The Debtors shall maintain full, accurate, and complete records of all transfers within the Cash Management System, including transfers between Debtors, so that transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and post-petition transactions. The Banks shall not be required to monitor, and the Banks shall not be liable to any party on account of, compliance or noncompliance by the Debtors with the foregoing conditions and limitations.

4. To the extent that cash, including cash collateral (as defined in the Bankruptcy Code), of any Debtor is used by another Debtor, the Debtor funding such use shall have an allowed administrative expense claim pursuant to sections 503(b) and 507(a) of the Bankruptcy Code.

5. The Debtors are authorized, but not directed, to continue, in their sole discretion, to maintain the Bank Accounts with the same account numbers following the commencement of the Chapter 11 Cases.

6. The Banks are authorized to:

3

(a) continue to treat, service, and administer the Debtors' Bank Accounts, as accounts of the respective Debtor as a debtor in possession, without interruption, and in the ordinary course of business without the need for further order of the Court;

(b) receive, process, honor, debit, and pay any and all checks, drafts, wires, check transfer requests, and/or ACH transfers drawn on the Bank Accounts by the holders or makers thereof, including all checks that are cashed at the Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date, as the case may be, to the extent that the Debtors have sufficient funds standing to their credit with the Banks;

(c) receive, process, honor, debit, and pay any and all checks, drafts, wires, check transfer requests, and/or ACH transfers drawn on the Bank Accounts by the holders or makers thereof, including all checks that are cashed at the Banks' counters or exchanged for cashier's checks by the payees thereof evidencing amounts paid by the Debtors under the Proposed Orders whether presented prior to, on, or after the Petition Date, as the case may be, to the extent that the Debtors have sufficient funds standing to their credit with the Banks; and

(d) debit all undisputed prepetition and post-petition amounts owed to the Banks as service charges for the maintenance of the Cash Management System without the need for further order of the Court.

7. All applicable financial institutions shall be authorized to (a) receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the claims that the Debtors requested authority to pay in the Motion or any other motion approved by the Court, regardless of whether the checks were presented or fund transfer requests were submitted before, on, or after the Petition Date and (b) rely on the Debtors' designation of any particular check, draft, wire, ACH transfer, electronic funds transfer payment, or item as approved by this Order. The Banks shall not be liable to any party on account of (x) following the Debtors' instructions, representations, or presentation as to any order of the Court (without any duty of further inquiry), (y) the honoring of any prepetition check, draft, wire, ACH transfer, electronic funds transfer payment, or item in a good faith belief, or upon representation by a Debtor, that the Court has authorized such prepetition check, draft, wire, ACH transfer,

electronic funds transfer payment, or item, or (z) an innocent mistake and/or human error made despite implementation of reasonable item handling procedures.  Further, the Banks may rely, without a duty of inquiry, upon an instruction of the Debtors to issue a stop payment order with respect to any item, whether such item is issued prepetition or post-petition, as a direction by the Debtors that any other item will be paid.  To the extent that the Debtors have represented to the Banks that a check, draft, wire, ACH transfer, electronic funds transfer payment, or item should be dishonored, the Banks are hereby authorized to comply with such representations, either through utilizing the Banks' stop-payment system, or through voiding the check, draft, wire, ACH transfer, electronic funds transfer payment, or item using the Bank's relevant internal procedures.  Without limiting the foregoing, the Banks may assume that any check or other payment order drawn or issued by the Debtors prior to the Petition Date that is not subject to a stop payment instruction should be honored pursuant to this Order unless otherwise specifically advised by the Debtors, and the Banks shall not have any liability to any party for relying on representations by the Debtors in good faith as provided for herein.

8.  Those certain existing deposit agreements between the Debtors and the Banks shall continue to govern the post-petition cash management relationship between the Debtors and the Banks, and all of the provisions of such agreements, including the termination and fee provisions, shall remain in full force and effect.  The Debtors shall be authorized, without further order of the Court, to implement changes to the Cash Management System and cash management procedures in the ordinary course of business, including the opening and closing of Bank Accounts subject to paragraph **Error! Reference source not found.**, and for the Banks to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions, *provided*, that the Banks

5

shall not have any liability to any party for relying on such representations in good faith. The relief granted herein shall extend to any new Bank Account opened by the Debtors after the date hereof and to the bank at which such Bank Account is opened.

9. The Debtors shall give notice as soon as practicable to the U.S. Trustee, the Banks, and counsel to any official committee appointed in the Chapter 11 Cases after opening a new Bank Account or closing an existing Bank Account; *provided*, *however*, that, unless otherwise ordered by the Court, the Debtors shall open any new Bank Account at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee or at a bank willing to immediately execute such an agreement.

10. In accordance with current practice and any applicable agreement governing the Bank Accounts, the Banks are authorized to "charge back" to the Debtors' Bank Accounts any prepetition and post-petition cash management fees and expenses incurred by the Banks resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, merchant services transactions, or other electronic transfers of any kind, and the Debtors are authorized, but not directed, to pay, in their sole discretion, the Bank Fees (and the Banks are authorized to debit or charge back the Bank Accounts for any such Bank Fees unless notified by the Debtors that any such Bank Fees are disputed), in each case regardless of whether such items were deposited prepetition or post-petition or relate to prepetition or post-petition items and without need for further order of the Court.

11. Any payment from a Bank Account at the request of the Debtors made by the Bank prior to the Petition Date (including any ACH transfer the Bank is or becomes obligated to settle), or any instruments issued by the Banks on behalf of any Debtor pursuant to a "midnight deadline"

or similar protocol, shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

12. Within 14 days of the date of entry of this Order, with respect to the Banks that are party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall (a) contact each Bank, (b) provide each Bank with each of the Debtors' tax identification numbers, and (c) identify each of their Bank Accounts held at such Bank as being held by a debtor in possession in a bankruptcy case.

13. The Debtors shall have 30 days from the Petition Date (the "**Extension Period**") within which to comply with section 345(b) of the Bankruptcy Code and Local Rule 4001-3, or to make arrangements to which the U.S. Trustee agrees, and such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or waiver of the requirements of section 345(b) of the Bankruptcy Code and Local Rule 4001-3 in the Chapter 11 Cases. The Debtors may obtain a further extension of the Extension Period referenced above by entering into a written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

14. Nothing contained herein shall prevent the Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services. For the avoidance of doubt, those agreements existing between the Debtors and the Banks shall continue to govern the post-petition cash management between the Debtors and the Banks and all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, collateral, and offset rights, and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with the Banks (including, for the avoidance of doubt, any rights of the Banks to use

funds from the Bank Accounts to remedy any overdraft of another Bank Account or other cash management obligations, whether prepetition or postpetition, to the extent permitted under the applicable agreement), unless the Debtors and the applicable Bank agree otherwise, and any other legal rights and remedies afforded to such Bank under applicable law shall be preserved.

15. The Debtors are authorized, but not directed, to continue the Corporate Credit Card Program in the ordinary course of business, consistent with prepetition practices (subject to ordinary course modifications thereto), including the payment of all past and future obligations as they become due and owing under the accounts (whether pre- or post-petition) on a post-petition basis and performing all obligations thereunder (collectively, the "**Card Obligations**"); *provided*, that, absent further order of the Court, the Debtors' payments on account of the Card Obligations shall not exceed $100,000. The issuer of the cards under the Corporate Credit Card Program is authorized to continue to make advances pursuant to the terms of its existing agreement (in reliance upon section 364(e) of the Bankruptcy Code) with the Debtors, and the Debtors are authorized to incur credit in respect of such advances under sections 364(a) and (c) of the Bankruptcy Code, as applicable. The terms of the existing agreement by and between the Debtors and issuer of the cards under the Corporate Credit Card Program, including the termination, fee provisions, rights, benefits, collateral, and offset and termination rights, and remedies afforded under such agreements shall remain in full force and effect and govern the parties' post-petition transactions with the Debtors, including making ordinary course modifications thereto.

16. The Debtors are authorized, but not directed, to continue to operate and perform under the Merchant Processing Agreements, including paying and reimbursing the credit card processors for Merchant Services Obligations, whether such Merchant Service Obligations are incurred prepetition or post-petition, in accordance with the Merchant Processing Agreements.

17. The Debtors are authorized, but not directed, to continue to operate and perform under the Security Service Agreements, including paying and reimbursing the security firms for Security Obligations, whether such Security Obligations are incurred prepetition or post-petition, in accordance with the Security Service Agreements.

18. The Debtors are authorized, but not directed, to continue, in their sole discretion, to use the Business Forms, including purchase orders, letterhead, envelopes, promotional materials, checks, and other business forms substantially in the forms existing immediately before the Petition Date, without reference to their status as debtors in possession; *provided*, that once the Debtors' existing checks have been used, the Debtors shall, when reordering checks, ensure that the designation "Debtor in Possession" and the corresponding bankruptcy case number be printed on all checks; *provided*, *further*, that, with respect to electronic checks and checks that the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor in Possession" legend on such items within ten days of the date of entry of this Order.

19. Notwithstanding anything contained herein, despite the Debtors' use of a consolidated cash management system, the Debtors shall calculate their quarterly fees under 28 U.S.C. § 1930(a)(6) based on disbursements of each Debtor, regardless of which Debtor pays those disbursements.

20. The Debtors are authorized to continue entering into and performing under Intercompany Transactions in the ordinary course of business.

21. All Intercompany Claims against a Debtor by another Debtor arising after the Petition Date as a result of Intercompany Transactions and transfers in the ordinary course of business shall be afforded administrative expense priority status in accordance with sections 503(b) and 364(a) of the Bankruptcy Code.

9

22. A final hearing to consider the relief requested in the Motion shall be held on October 9, 2024 at 1:00 p.m. (prevailing Eastern Time) and any objections or responses to the Motion shall be filed and served on the Notice Parties so as to be actually received on or prior to October 2, 2024 at 4:00 p.m. (prevailing Eastern Time).

23. Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and all of the Debtors' rights with respect to such matters are expressly reserved.

24. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

25. Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as or deemed to constitute (a) an agreement or admission by the Debtors as to the amount, priority, character, or validity of any claim against the Debtors on any grounds, (b) a grant of third-party beneficiary status or bestowal of any additional rights on any third party, (c) a waiver or impairment of any rights, claims, or defenses of the Debtors' rights to dispute the amount, priority, character, or validity of any claim on any grounds, whether under bankruptcy or non-bankruptcy law, (d) a promise by the Debtors to pay any claim, or (e) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

26. Any Bankruptcy Rule or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

27. The Debtors are authorized to take any action necessary or appropriate to implement and effectuate the terms of, and the relief granted in, this Order without seeking further order of the Court.

28. The Court shall retain jurisdiction over any matter arising from or related to the implementation, interpretation, and enforcement of this Order.