**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 19** |

**INTERIM ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 361, 362, 363, 364, 503, 506, 507, AND 552, AND BANKRUPTCY RULES 2002, 4001, 6003, 6004, AND 9014 (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING (A) LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS AND (B) ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS, (III) MODIFYING AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING <u>RELATED RELIEF</u>**

Upon the motion (the "***Motion***")[2] of Big Lots, Inc. and certain of its affiliates, each of which is a debtor and debtor in possession (collectively, the "***Debtors***") in the above-captioned chapter 11 cases (the "***Chapter 11 Cases***"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and rules 2002-1(b), 4001-2, and 9013-

---

[1] The Debtors in these cases, together with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion, or if not defined therein, the DIP Loan Documents (as defined herein).

1(m) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), seeking entry of this interim order (this "***Interim Order***"), among other things:

    a.    authorizing the Debtors to obtain postpetition financing consisting of the obligations under a superpriority senior asset-based credit facility in the aggregate principal amount of $550 million (the "***DIP ABL Facility***" and such funding commitment thereunder, the "***DIP ABL Commitment***"), pursuant to the terms and conditions of that certain *Senior Secured Superpriority Debtor-in-Possession Asset-Based Revolving Credit Agreement*, attached hereto as **Exhibit 2** (as the same may be amended, restated, amended and restated, supplemented, waived, or otherwise modified in accordance with the terms thereof from time to time the "***DIP ABL Credit Agreement***") by and among (A) Big Lots, Inc. (the "***Company***"), (B) Big Lots Stores, LLC ("***Big Lots Stores***" and together with the Company, the "***Borrowers***"), (C) the subsidiaries of the Company from time to time party thereto as guarantors, (D) PNC Bank, National Association, as Left Lead Arranger and Administrative Agent (in such capacity, the "***DIP ABL Agent***"), and (E) the lenders from time to time party thereto (collectively, the "***DIP ABL Lenders***"; the DIP ABL Agent, the DIP ABL Lenders and the Secured Parties (as defined in the DIP ABL Credit Agreement) are collectively referred to herein as the "***DIP ABL Credit Parties***") and allocated and made available to the Borrowers as follows:

        i.    upon entry of this Interim Order, subject to the terms and conditions set forth in the DIP ABL Credit Agreement, the other DIP Loan Documents, and this Interim Order, the DIP ABL Commitment shall be available to the Borrowers to draw upon pursuant to a "creeping roll-up" whereby all cash is used to pay down the Prepetition ABL Obligations and gives rise to a corresponding amount of ABL DIP Availability (the "***Interim ABL Financing")***; and

        ii.    upon entry of the Final Order (as defined herein), subject to the terms and conditions set forth in the DIP ABL Credit Agreement and the other DIP Loan Documents, the repayment and refinancing of any outstanding and remaining Prepetition ABL Loans (as defined herein) (all amounts so repaid and refinanced, the "***DIP ABL Roll-Up Loan***" and together with the Interim ABL Financing, the "***DIP ABL Loans***") pursuant to a "creeping roll-up" whereby all cash is used to pay down the Prepetition ABL Obligations and gives rise to a corresponding amount of ABL DIP Availability, and any remaining outstanding Prepetition ABL Obligations (as defined herein), together with all accrued and unpaid interest, fees, and expenses shall be fully "rolled" into the DIP ABL Facility and shall constitute DIP ABL Obligations (as defined herein) upon the entry of the Final Order granting such relief.

b.    authorizing the Debtors to obtain a superpriority senior secured asset-based term loan credit facility (the "***DIP Term Loan Facility***", and, together with the DIP ABL Facility, the "***DIP Facilities***"), pursuant to the terms and conditions of that certain *Senior Secured Super-Priority Debtor-in-Possession Term Loan Credit Agreement*, attached hereto as **Exhibit 3** (as the same may be amended, restated, amended and restated, supplemented, waived, or otherwise modified in accordance with the terms thereof from time to time the "***DIP Term Credit Agreement***" and together with the DIP ABL Credit Agreement, the "***DIP Credit Agreements***") by and among the (A) Borrowers, (B) the subsidiaries of the Company from time to time party thereto as guarantors, (C) 1903P Loan Agent, LLC, as the term loan agent (in such capacity, the "***DIP Term Agent***" and together with the DIP ABL Agent, the "***DIP Agents***"), and (D) the other term lenders party thereto (the "***DIP Term Lenders***," and collectively with the DIP ABL Lenders, the "***DIP Lenders***", the DIP Term Agent, the DIP Term Lenders and the Secured Parties (as defined in the DIP Term Credit Agreement) are collectively referred to herein as the "***DIP Term Credit Parties***" and together with the DIP ABL Credit Parties, the "***DIP Credit Parties***"), consisting of term loan commitments in an aggregate principal amount equal to $157,500,000 (the "***DIP Term Loan Commitment***" and together with the DIP ABL Commitment, the "***DIP Commitment***"), allocated and made available to the Borrowers as follows:

   i.    upon entry of this Interim Order, subject to the terms and conditions set forth in the DIP Term Credit Agreement, the other DIP Loan Documents, and this Interim Order, $25,000,000 of initial commitments shall be made available to the Borrowers to draw in accordance with the DIP Term Credit Agreement and the proceeds of the loans thereunder (the "***Interim New Money Term Loan***") shall be applied in accordance with the terms of the DIP Loan Documents (as defined herein) and this Interim Order;

   ii.    upon entry of this Interim Order, subject to the terms and conditions set forth in the DIP Term Credit Agreement, the other DIP Loan Documents, and this Interim Order, an aggregate principal amount of $75,000,000, constituting a partial roll-up, conversion, or exchange of Prepetition Term Loan Obligations (as defined herein), shall be deemed funded on the Closing Date under the DIP Term Credit Agreement (the "***Interim DIP Term Roll-Up Loan***," and together with the Interim New Money Term Loan, the "***Interim Term Financing***", and the Interim Term Financing together with the Interim ABL Financing, the "***Interim Financing***").

   iii.    upon entry of the Final Order, subject to the terms and conditions set forth in the DIP Term Credit Agreement and the other DIP Loan Documents, $10,000,000 of additional commitments shall be made available to the Borrowers to draw in accordance with the DIP Term Credit Agreement and the proceeds of the loans thereunder (the "***Final New Money Term Loan***" and together with the Interim New

Money Term Loan, the "***New Money DIP Term Loans***") shall be applied in accordance with the terms of the DIP Loan Documents and this Interim Order; and

    iv.    upon entry of the Final Order, subject to the terms and conditions set forth in the DIP Term Credit Agreement and the other DIP Loan Documents, a roll-up, conversion, or exchange of all remaining Prepetition Term Loan Obligations shall be deemed funded on the date of entry of the Final Order (the "***Final DIP Term Roll-Up Loan***," and together with the Interim DIP Term Roll-Up Loan, the "***DIP Term Roll-Up Loan***" and the DIP Term Roll-Up Loan, together with the New Money DIP Term Loans, the "***DIP Term Loans***" and the DIP Term Loans together with the DIP ABL Loans, the "***DIP Loans***").

c.    authorizing the Debtors to execute and deliver the DIP Credit Agreements and all other related documents, instruments, letters, notes, and agreements, including, without limitation, security agreements, deposit account control agreements, pledge agreements, guaranties, and promissory notes (collectively, the "***DIP Loan Documents***") and to perform such other acts as may be necessary, convenient, advisable, or appropriate in connection with the DIP Loan Documents;

d.    authorizing the Debtors to incur, guarantee, and pay, as applicable, loans, advances, extensions of credit, financial accommodations, reimbursement obligations, fees (including, without limitation, any unused line fees, closing fees, commitment fees, administrative agency fees, the reasonable and documented fees and disbursements of the DIP Credit Parties' attorneys (which firms shall be for (i) the DIP ABL Credit Parties, (x) Choate, Hall & Stewart, LLP and (y) Blank Rome, LLP, and (ii) for the DIP Term Loan Credit Parties, (x) Otterbourg, P.C., and (y) Richards, Layton & Finger, P.A.) advisers, accountants, and other consultants, and all related expenses of the DIP Credit Parties, in each case, subject to the terms and provisions of the DIP Loan Documents, and other fees payable pursuant to the DIP Loan Documents), costs, expenses, and other liabilities, all other obligations (including indemnities and similar obligations, whether contingent or absolute) and all other Obligations (as defined in each respective DIP Credit Agreement) due or payable under the DIP Facilities to the DIP ABL Lenders (the "***DIP ABL Obligations***") and to the DIP Term Lenders (the "***DIP Term Obligations***" and collectively with the DIP ABL Obligations, the "***DIP Obligations***") respectively, which, for the avoidance of doubt, shall include the DIP ABL Roll-Up Loan and the DIP Term Roll-Up Loans (collectively, the "***DIP Roll-Up Loans***"), and to perform such other and further acts as may be necessary, convenient, advisable, desirable, or appropriate in connection therewith;

e.    authorizing each subsidiary of the Company (other than Big Lots Stores) to jointly and severally guarantee (such entities, the "***Guarantors***" and the Guarantors collectively with the Borrowers, the "***DIP Loan Parties***") the DIP Facilities and DIP Obligations as set forth herein and in the DIP Loan Documents;

f.      subject and subordinate only to the Carve Out (as defined herein) and the relative priorities as agreed upon by the parties-in-interest set forth on **Exhibit 1** hereto (the "***Lien Priority Annex***"), granting allowed superpriority administrative expense claim status pursuant to section 364(c)(1) of the Bankruptcy Code in each of the Chapter 11 Cases and any Successor Cases (as defined herein) to the DIP Obligations;

g.      authorizing the Debtors to use the "cash collateral" (as defined in section 363(a) of the Bankruptcy Code) of the Prepetition ABL Lenders and the Prepetition Term Loan Lenders (each as defined herein) (the "***Prepetition ABL Cash Collateral***" and the "***Prepetition Term Loan Cash Collateral***," respectively, and together, the "***Cash Collateral***") in accordance with the terms of this Interim Order, that the Debtors are holding or may obtain, pursuant to sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and 6004 and in accordance with the Approved Budget (as defined herein);

h.      granting to the DIP Agents, for the benefit of the respective DIP Credit Parties, automatically perfected security interests in and liens on all DIP Collateral (as defined herein), including, without limitation, all property constituting Cash Collateral, which liens shall be subject to the Carve Out and the relative priorities set forth on the Lien Priority Annex;

i.      authorizing the Debtors to provide adequate protection to the Prepetition Secured Creditors (as defined herein) solely to the extent of any Diminution in Value (as defined herein) on the terms set forth herein;

j.      approving certain stipulations by the Debtors with respect to the Prepetition Credit Documents and the Prepetition Collateral (each as defined herein) as set forth herein;

k.      waiving any applicable stay and provisions for immediate effectiveness of this Interim Order;

l.      vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order;

m.      granting related relief; and

n.      scheduling a final hearing (the "***Final Hearing***") to consider entry of a final order (the "***Final Order***") authorizing and approving, among other things, the relief requested in the Motion on a final basis, which order shall be in form substantially similar to this Interim Order and otherwise reasonably acceptable to the Debtors, the DIP Agents, the DIP Lenders, and the Prepetition Agents, and approving the form of notice with respect to the Final Hearing.

This Court having considered the interim relief requested in the Motion, the exhibits attached thereto, the *Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings* (the "**Ramsden Declaration**") and the *Declaration of Stuart Erickson in Support of the Debtors' Motion Under Bankruptcy Code Sections 105, 361, 362, 363, 364, 503, 506, 507, and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing Debtors To (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection To Prepetition Secured Creditors, (III) Modifying Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "**DIP Declaration**"), each filed concurrently with the Motion, the DIP Loan Documents, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on September 10, 2024 (the "**Interim Hearing**"); and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by this Court; and it appearing to this Court that, pursuant to Bankruptcy Rule 4001(c)(2), granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors and their estates, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Loan Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, INCLUDING THE SUBMISSIONS OF DECLARATIONS AND**

**THE REPRESENTATIONS OF COUNSEL, THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.      *Petition Date*.  On September 9, 2024 (the "***Petition Date***"), each of the Debtors filed a separate voluntary petition under chapter 11 of the Bankruptcy Code (the "***Petitions***") in the United States Bankruptcy Court for the District of Delaware (the "***Court***") commencing the Chapter 11 Cases.  On the date hereof, this Court entered an order directing joint administration of the Chapter 11 Cases.

B.      *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

C.      *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. § 1334, over these proceedings and over the persons and property affected hereby.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief sought in the Motion and granted in this Interim Order are sections 105, 361, 362, 363, 364, 503, 506, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rules 2002-1(b), 4001-2, and 9013-1(m).

D.      *Committee Formation*.  As of the date hereof, the United States Trustee for the District of Delaware (the "***U.S. Trustee***") has not appointed any committee, including an official

---

[3]     The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

committee of unsecured creditors, in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (to the extent appointed in the Chapter 11 Cases, the "***Committee***").

E.      _Notice_.  The Interim Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Notice was provided by Kroll Restructuring Administration LLC as the proposed claims and noticing agent for the Debtors to (a) the U.S. Trustee, (b) those creditors holding the 30 largest unsecured claims against the Debtors' estates (on a consolidated basis), (c) the Securities and Exchange Commission, (d) the Internal Revenue Service, (e) the United States Attorney's Office for the District of Delaware, (f) the state attorneys general for states in which the Debtors conduct business, (g) counsel to the DIP Agent and the Prepetition ABL Agent ,(h) counsel to the DIP Term Agent and the Prepetition Term Loan Agent, and (i) any party that has requested notice pursuant to Bankruptcy Rule 2022, and therefore complied with Local Rule 9013.

F.      _Debtors' Stipulations, Releases, and Acknowledgements_.  In requesting the use of Cash Collateral, and in exchange for and as a material inducement to the Prepetition Secured Creditors consenting to the Debtors' access to and use of the Cash Collateral, and without prejudice to the rights of the parties-in-interest as set forth in paragraph 42 herein, the Debtors admit, stipulate, acknowledge, and agree, as follows (collectively, the admissions, stipulations, acknowledgements, and agreements set forth in this paragraph F, the "***Debtors' Stipulations***"):

(i)      _Prepetition ABL Obligations_.  The Borrowers, certain of the other Debtors (together with the guarantors of the Prepetition ABL Facility (as defined herein), collectively, the "***Prepetition ABL Obligors***") and PNC Bank, N.A., as administrative agent (in such capacity, the "***Prepetition ABL Agent***"), for its own benefit and the benefit of the lenders and letter of credit issuers from time to time party under the Prepetition ABL Facility (the "***Prepetition ABL Lenders***" and collectively with the Prepetition ABL Agent and the other

Secured Parties (as defined in the Prepetition ABL Credit Agreement), collectively, the "***Prepetition ABL Secured Parties***"), are party to that certain *Credit Agreement* dated as of September 21, 2022 (as amended by that certain First Amendment dated as of April 18, 2024, and that certain Second Amendment dated as of July 31, 2024, and as may be further amended, restated, amended and restated, supplemented, replaced, or otherwise modified from time to time, the "***Prepetition ABL Credit Agreement***," and together with the Loan Documents (as defined therein), collectively, the "***Prepetition ABL Documents***," and the revolving facility thereunder, the "***Prepetition ABL Facility***").  Pursuant to the Prepetition ABL Documents, the Prepetition ABL Lenders provided revolving credit, certain banking products, and other financial accommodations to, and issued letters of credit for the account of, the Prepetition ABL Obligors (the "***Prepetition ABL Loans***").  Under the Prepetition ABL Documents, the Prepetition ABL Lenders provided the Prepetition ABL Obligors with, among other things, up to $800,000,000 in Aggregate Commitments (as defined in the Prepetition ABL Credit Agreement), including a $90,000,000 letter of credit sublimit.  As of the Petition Date, there were approximately: (a) $433,600,000 in outstanding Revolving Loans (as defined in the Prepetition ABL Credit Agreement); (b) $61,200,000 in existing Letters of Credit (as defined in the Prepetition ABL Credit Agreement); and (c) other outstanding obligations under the Prepetition ABL Documents, including, without limitation, reimbursement obligations (contingent or otherwise) in respect of letters of credit, any fees, expenses, and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees, and financial advisors' fees, and related expenses and disbursements, in each case, solely to the extent chargeable or reimbursable under the Prepetition ABL Credit Agreement), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and

costs of whatever nature owing, whether or not contingent, whenever arising, accrued, arising, due, owing, or chargeable in respect of any of the Prepetition ABL Obligors' obligations pursuant to, or secured by, the Prepetition ABL Documents, in each case payable pursuant to the terms and conditions of the Prepetition ABL Credit Agreement (collectively, the "***Prepetition ABL Obligations***").  The Prepetition ABL Obligations are secured by: (x) first priority security interests in and liens on the ABL Priority Collateral (as defined in the Intercreditor Agreement (as defined herein)); and (y) second priority security interests in and liens on the Term Priority Collateral (as defined in the Intercreditor Agreement) (the ABL Priority Collateral and the Term Priority Collateral together, the "***Prepetition Collateral***" and the liens and security interests in clauses (x) and (y), the "***Prepetition ABL Liens***").

(ii)    *Prepetition Term Loan Obligations*.  The Borrowers, certain of the other Debtors (together with the guarantors of the Prepetition Term Loan Facility, collectively, the "***Prepetition Term Loan Obligors***"), 1903P Loan Agent, LLC, as administrative agent (in such capacity, the "***Prepetition Term Loan Agent***", and together with the Prepetition ABL Agent, the "***Prepetition Agents***") for its own benefit and the benefit of the lenders from time to time party thereto (the "***Prepetition Term Loan Lenders***", collectively with the Prepetition Term Loan Agent, the "***Prepetition Term Loan Secured Parties***" and, together with the Prepetition ABL Secured Parties, the "***Prepetition Secured Creditors***") are party to that certain *Credit Agreement*, dated as of April 18, 2024 (as was amended by that certain First Amendment dated as of July 31, 2024, and as may be further amended, restated, amended and restated, supplemented, replaced, or otherwise modified from time to time prior to the filing of the Petitions, the "***Prepetition Term Loan Credit Agreement***", and together with the Loan Documents (as defined therein), the "***Prepetition Term Loan Documents***" and, together with the Prepetition ABL Documents and the Intercreditor

Agreement, the "***Prepetition Credit Documents***", and the term loan facility thereunder, the "***Prepetition Term Loan Facility***" and, together with the Prepetition ABL Facility, the "***Prepetition Loan Facilities***").  As of the Petition Date, the Prepetition Term Loan Obligors were obligated under the Prepetition Term Loan Credit Agreement to the Prepetition Term Loan Lenders in the aggregate outstanding principal amount of not less than approximately $122,500,000, plus all accrued, accruing, and unpaid interest with respect thereto and any additional fees, costs, expenses (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees, and financial advisors' fees, and related expenses and disbursements, in each case, solely to the extent chargeable or reimbursable under the Prepetition Term Loan Credit Agreement), indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, arising, due, owing or chargeable in respect of any of the Prepetition Term Loan Obligors' obligations pursuant to, or secured by, the Prepetition Term Loan Documents, in each case constituting "Secured Obligations" (as defined in the Prepetition Term Loan Credit Agreement) and due and payable pursuant to the terms and conditions of the Prepetition Term Loan Credit Agreement (the "***Prepetition Term Loan Obligations***" and, together with the Prepetition ABL Obligations, the "***Prepetition Secured Obligations***"). The Prepetition Term Loan Obligations are secured by: (a) first priority security interests in and liens on the Term Priority Collateral; and (b) second priority security interests in and liens on the ABL Priority Collateral (the liens and security interest in clauses (a) and (b), the "***Prepetition Term Loan Liens***" and, together with the Prepetition ABL Liens, the "***Prepetition Liens***"), subject in all respects to the Intercreditor Agreement.

(iii) *Intercreditor Agreement*. Pursuant to that certain Intercreditor Agreement, dated as of April 18, 2024, by and among the Prepetition ABL Agent, the Prepetition Term Loan Agent, and acknowledged by the Prepetition ABL Obligors and Prepetition Term Loan Obligors (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "***Intercreditor Agreement***"), the Prepetition Agents have agreed, among other things, and as more specifically set forth therein, on the respective rights, interests, obligations, priority, and positions of the Prepetition Secured Creditors with respect to the Prepetition Collateral.

(iv) *Prepetition Secured Obligations*. Each of the Debtors acknowledges that the Prepetition Secured Obligations owing to the Prepetition Secured Creditors, respectively, (a) constitute legal, valid, binding and non-avoidable obligations of the Debtors and their applicable affiliates, enforceable against them in accordance with their respective terms, and (b) no portion of the Prepetition Secured Obligations owing to the Prepetition Secured Creditors, respectively, is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, disgorgement, impairment, recovery, subordination (equitable or otherwise), or any other challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, including in any Successor Cases.

(v) *Prepetition Liens*. The Debtors acknowledge that as of the Petition Date the Prepetition Liens granted to each of the Prepetition Agents (a) constitute legal, valid, binding, enforceable, non-avoidable, and properly perfected security interests in and liens on the Prepetition Collateral, and were granted to, or for the benefit of, the applicable Prepetition Secured Creditors for fair consideration and reasonably equivalent value, (b) are not subject to defense, counterclaim, recharacterization, subordination, avoidance, or recovery pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, and (c) are senior in priority

over any and all other liens on the Prepetition Collateral *provided* that (i) the Prepetition ABL Liens are subject to the Prepetition Term Loan Liens on the Term Priority Collateral and to certain liens senior (solely to the extent such liens were valid, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date and properly perfected prior to the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or otherwise permitted by the Prepetition ABL Documents (the "***ABL Prepetition Permitted Liens***"), and (ii) the Prepetition Term Loan Liens are subject to the Prepetition ABL Liens on the ABL Priority Collateral and to certain liens senior (solely to the extent such liens were valid, non-avoidable, and senior in priority to the Prepetition Term Loan Liens as of the Petition Date and properly perfected prior to the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or otherwise permitted by the Prepetition Term Loan Documents (the "***Term Loan Prepetition Permitted Liens***," and together with the ABL Prepetition Permitted Liens, the "***Prepetition Permitted Liens***").[4]

(vi)    *No Challenges / Claims*.  The Debtors and their estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action against any of the Prepetition Secured Creditors or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to the Prepetition Credit Documents, the Prepetition Secured Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, disgorgement, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541,

---

[4]    As used in this Interim Order, no reference to the ABL Prepetition Permitted Liens, the Term Loan Prepetition Permitted Liens or the Prepetition Permitted Liens shall refer to or include the Prepetition ABL Liens or the Prepetition Term Loan Liens.

542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents. The Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code, and the aggregate value of the Prepetition Collateral exceeds the amount of the Prepetition Secured Obligations.  The Debtors have waived, discharged, and released any right to challenge any of the Prepetition Secured Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the Prepetition Liens.

(vii)    *Cash Collateral*.  Except as otherwise provided in the Prepetition Credit Documents, all of the Debtors' cash, including, without limitation, the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral within the meaning of section 363(a) of the Bankruptcy Code and is Prepetition Collateral of the Prepetition Secured Creditors, subject in all respects to the Intercreditor Agreement.

(viii)    *No Control*.  None of the DIP Agents, the DIP Lenders, the Prepetition Agents, or the other Prepetition Secured Creditors controls the Debtors or their operations, has authority to determine the manner in which any of the Debtors' operations are conducted or is a control person or "insider" (as defined in section 101(31) of the Bankruptcy Code) of the Debtors or any of their affiliates by virtue of any of the actions taken through the date of this Interim Order with respect to, in connection with, related to, or arising from this Interim Order, the DIP Facilities, the DIP Loan Documents, the Prepetition Secured Obligations, and/or the Prepetition Credit Documents.

(ix)    *Release*.  Effective as of the date of entry of this Interim Order and subject to the rights of all parties-in-interest hereunder (including with respect to the Challenge Period), other than the Debtors, as set forth in paragraph 42 herein, each of the Debtors, on their own behalf

and on behalf of each of their past, present, and future predecessors, successors, heirs, subsidiaries, and assigns, and solely to the extent permitted under applicable law, hereby forever, unconditionally, permanently, and irrevocably releases, discharges, and acquits each of the DIP Agents, the DIP Credit Parties, the Prepetition Agents, the other Prepetition Secured Creditors, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, advisors, sub-fund advisors, and collateral managers, and each of their respective heirs, predecessors, successors, and assigns, in each case solely in their capacity as such (collectively, the "***Released Parties***") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), actions, suits, controversies, proceedings, losses, damages, injuries, debts, liens, actions, judgments, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, pending, or threatened, arising under, in connection with, or relating to the DIP Obligations or DIP Loan Documents, the Prepetition Secured Obligations or the Prepetition Credit Documents, including, without limitation: (a) any so-called "lender liability" or equitable subordination claims or defenses; (b) Claims and causes of action arising under the Bankruptcy Code; and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law,

including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the DIP Obligations, the DIP Loan Documents, the DIP Liens, the Prepetition Secured Obligations, the Prepetition Credit Documents, or the Prepetition Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the DIP Obligations and the Prepetition Secured Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or released to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Interim Order. For the avoidance of doubt, nothing in this paragraph F(ix) shall relieve the DIP Agents, the other DIP Lenders, or the Debtors of their obligations hereunder or under the DIP Obligations.

G.    _Findings Regarding the Postpetition Financing_.

(i)    _Request for Postpetition Financing_. The Debtors seek authority on an interim basis to: (a) enter into, and access and use the liquidity provided under, the DIP Facilities on the terms described herein and in the DIP Loan Documents; and (b) use Cash Collateral on the terms described herein to administer the Chapter 11 Cases and fund operations.  For the avoidance of doubt, the Debtors shall apply the proceeds of the DIP Collateral and the Prepetition Collateral in accordance with the DIP Loan Documents and paragraph 17 of this Interim Order, including, without limitation, and upon entry of the Final Order, the repayment and refinancing of the remaining Prepetition Secured Obligations with proceeds of the DIP Roll-Up Loans.

(ii)    _Priming of Certain Prepetition Liens; Consent to Use of Cash Collateral_. For the avoidance of doubt, with respect to the ABL Priority Collateral, the DIP Term Liens (as defined herein) shall not prime, and shall instead be subject and subordinate to the extent set forth in the Intercreditor Agreement, to the DIP ABL Liens (as defined herein) and the Prepetition ABL

16

Liens on the ABL Priority Collateral. With respect to the Term Priority Collateral, the DIP ABL Liens shall not prime, and shall instead be subject and subordinate to the extent set forth in the Intercreditor Agreement, to the DIP Term Liens and the Prepetition Term Loan Liens on the Term Priority Collateral. The Prepetition ABL Secured Parties and the Prepetition Term Loan Secured Parties have consented to the use of the Cash Collateral and to the subordination of the Prepetition ABL Liens to the DIP ABL Liens and the Carve Out as well as to the subordination of the Prepetition Term Loan Liens to the DIP Term Liens and the Carve Out in each case on the terms and conditions set forth in this Interim Order.

(iii)     *Immediate Need for Postpetition Financing and Use of Cash Collateral*. The Debtors' immediate need to use Cash Collateral and to obtain credit pursuant to the DIP Facilities as provided for herein is necessary and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, to protect the value of their assets, and to otherwise finance their operations requires the availability of working capital from the DIP Facilities and the use of Cash Collateral.  Without the ability to access the DIP Facilities or use Cash Collateral, the Debtors, their estates, their creditors, their equity holders, and the possibility for a successful reorganization or sale of all or substantially all of the Debtors' assets, would suffer immediate and irreparable harm.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facilities and authorized use of Cash Collateral.

(iv)     *DIP ABL Roll-Up Loan.*  Upon (i) entry of this Interim Order, without any further action by the Debtors or any other party, but subject to paragraph 42 herein, all cash,

collections and proceeds of DIP ABL Priority Collateral shall be used, on a dollar-for-dollar basis, to reduce the Revolving Exposure (as defined in the Prepetition ABL Credit Agreement) and result in a corresponding increase to the Availability (as defined in the DIP ABL Credit Agreement) (the "***Creeping Roll-Up***"), and (ii) entry of the Final Order granting such relief, but subject to paragraph 42 herein, all remaining outstanding Prepetition ABL Obligations shall automatically be deemed exchanged and converted on a cashless basis into and constitute DIP ABL Obligations (the "***Full ABL Roll-Up***" and, together with the Creeping Roll-Up, the "***DIP ABL Roll-Up Obligations***"). The Prepetition ABL Secured Parties would not otherwise consent to the use of their Cash Collateral, and the DIP ABL Agent and the DIP ABL Lenders would not be willing to provide the DIP ABL Facility or extend credit to the Debtors thereunder, without the inclusion of (a) the Creeping Roll-Up, upon entry of this Interim Order, and (b) the Full ABL Roll-Up, upon entry of the Final Order granting such relief.  The DIP ABL Roll-Up Obligations shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the Prepetition ABL Lenders to fund amounts under the DIP ABL Facility and not as adequate protection for, or otherwise on account of, any Prepetition ABL Obligations.

(v)     *DIP Term Roll-Up Loan*. Upon (i) entry of this Interim Order, without any further action by the Debtors or any other party, but subject to paragraph 42 herein, outstanding Prepetition Term Obligations in the amount of $75,000,000 shall automatically be deemed exchanged and converted on a cashless basis into and constitute DIP Term Obligations, and (the "***Interim Term Roll-Up***") (ii) entry of the Final Order granting such relief, but subject to paragraph 42 herein, all remaining outstanding Prepetition Term Obligations shall automatically be deemed exchanged and converted on a cashless basis into and constitute DIP Term Obligations (the "***Full Term Roll-Up***" and, together with the Interim Term Roll-Up, the "***DIP Term Roll-Up***

*Obligations*"). The Prepetition Term Secured Parties would not otherwise consent to the use of their Cash Collateral, and the DIP Term Agent and the DIP Term Lenders would not be willing to provide the DIP Term Facility or extend credit to the Debtors thereunder, without the inclusion of (a) the Interim Term Roll-Up, upon entry of this Interim Order, and (b) the Full Term Roll-Up, upon entry of the Final Order granting such relief. The DIP Term Roll-Up Obligations shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the Prepetition Term Lenders to fund amounts under the DIP Term Facility and not as adequate protection for, or otherwise on account of, any Prepetition Term Obligations.

(vi)     *No Credit Available on More Favorable Terms*.   Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Credit Parties on terms more favorable than the DIP Facilities.  The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are unable to obtain adequate credit: (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis is not otherwise available under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without granting the DIP Agents, for the benefit of the DIP Credit Parties: (x) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets (other than the Excluded Assets (as defined in the DIP Credit Agreements)) with the priorities and to the extent set forth herein; (y) superpriority claims and priming liens to the extent set forth herein; and (z) the other protections set forth in this Interim

Order, and without incurring the Adequate Protection Superpriority Claims and Adequate Protection Liens (each as defined herein) described herein.

(vii)    *Adequacy of the Approved Budget*.  As set forth in the DIP Loan Documents, the Debtors have prepared and delivered to the DIP Credit Parties and the Prepetition Agents, a budget, a summary copy of which is attached as **Exhibit 4** hereto (as the same may be modified from time to time consistent with the terms of the DIP Loan Documents and this Interim Order, and once approved by DIP Agents and the Prepetition Agents, the "***Approved Budget***").  As a condition to entry into the DIP Credit Agreements, the extensions of credit under the DIP Facilities, and the authorization to use Cash Collateral, the DIP Credit Parties and the Prepetition Secured Creditors require, and the Debtors have agreed, that proceeds of the DIP Facilities and the Cash Collateral shall be used in a manner consistent with the terms and conditions of the DIP Loan Documents and this Interim Order and in accordance with the Approved Budget (subject to Permitted Variances (as defined herein)).

(viii)   *Certain Conditions to DIP Facilities*.  The DIP Lenders' willingness to make the DIP Loans is conditioned upon, among other things:  (a) the Debtors obtaining Court approval to enter into the DIP Loan Documents and to incur all of the respective obligations thereunder, and to confer upon the DIP Credit Parties and the Prepetition Secured Creditors all applicable rights, powers, and remedies thereunder in each case as modified by this Interim Order; (b) the provision and scope of adequate protection, as set forth herein, of the Prepetition Secured Creditors' interests in the Prepetition Collateral pursuant to sections 361, 363, and 364 of the Bankruptcy Code; and (c) the DIP Credit Parties being granted, as security for the prompt payment of the DIP Facilities and all other obligations of the Debtors under the DIP Loan Documents, subject to the Carve Out and the relative priorities set forth on the Lien Priority Annex, senior, first

priority perfected security interests in and liens upon the DIP Collateral to the extent set forth herein.

H. *Prepetition ABL Lenders' Adequate Protection*.  Until such time as the Prepetition ABL Obligations are Paid in Full,[5] the Prepetition ABL Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code and as set forth in paragraph 12 of this Interim Order resulting from, among other things: (i) provisions of this Interim Order granting the DIP Liens; (ii) the use of the Prepetition ABL Cash Collateral; (iii) the use, sale, lease, or depreciation or other Diminution in Value of the ABL Priority Collateral; and/or (iv) the imposition of the automatic stay under the Bankruptcy Code.  The terms of the adequate protection being provided reflect the Debtors' prudent exercise of business judgment and constitute a reasonable compromise for the use of the ABL Priority Collateral, including the Prepetition ABL Cash Collateral.

I. *Prepetition Term Loan Secured Parties' Adequate Protection*.  Until such time as the Prepetition Term Loan Obligations are Paid in Full, the Prepetition Term Loan Secured Parties

---

[5]   "Paid in Full" means the indefeasible repayment in full in cash of all obligations (including principal, accrued and unpaid interest and fees, reimbursable expenses and indemnities, other than contingent indemnification obligations for which no claim has been asserted and threatened, and all other amounts due and owing by the Debtors) under the applicable credit facility and this Interim Order, the cash collateralization or repayment in full in cash of all treasury and cash management obligations, hedging obligations, and bank product obligations, and the cancelation, replacement, backing, or cash collateralization of letters of credit, in each case, in accordance with the terms of the applicable facility and that each of the Prepetition Agents, Prepetition Lenders, DIP Agents and DIP Lenders, as the case may be, shall have received a release from each Debtor and any Committee of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities (including, without limitation any obligations or liabilities of any kind related to the Carve-Out upon payment in full of the Prepetition Secured Obligations or DIP Obligations) in form and substance acceptable to Prepetition Agents or DIP Agents, as applicable or in the case of the Committee, instead of such release, (A) if the Challenge Deadline (as defined in this Final Order) has not elapsed, a written notice or other confirmation that no Challenge or any other claims of any kind (including with respect to the Carve-Out upon payment in full of the Prepetition Secured Obligations or DIP Obligations) will be asserted or (B) if the Challenge Deadline has elapsed, then no Challenge or any other claim has been asserted or any Challenge or other claim asserted has been dismissed pursuant to a final, non-appealable order of a court of competent jurisdiction and a written notice or other confirmation that no claim of any kind with respect to the Carve Out will be asserted against any Prepetition Agent, Prepetition Lender, DIP Agent or DIP Lender.

are entitled to receive adequate protection pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code and as set forth in paragraph 12 of this Interim Order resulting from, among other things:  the (i) provisions of this Interim Order granting the DIP Liens; (ii) use of the Prepetition Term Loan Cash Collateral, (iii) use, sale, lease, or depreciation or other Diminution in Value of the Term Priority Collateral; and/or (iv) the imposition of the automatic stay under the Bankruptcy Code.  The terms of the adequate protection being provided reflect the Debtors' prudent exercise of business judgment and constitute a reasonable compromise for the use of the Term Priority Collateral, including the Prepetition Term Loan Cash Collateral.

J.      *Sections 506(c) and 552(b)*.  The Debtors have agreed as a condition to obtaining financing under the DIP Facilities and the use of Cash Collateral that as a material inducement to the DIP Credit Parties' agreement to provide the DIP Facilities and the Prepetition Secured Creditors' consent to the use of Cash Collateral, and in exchange for:  (a) the DIP Credit Parties' willingness to provide the DIP Facilities to the extent set forth herein; (b) the DIP Credit Parties' and the Prepetition Secured Creditors' agreement to subordinate the DIP Liens and the Prepetition Liens, respectively, to the Carve Out; and (c) the consensual use of Cash Collateral consistent with the Approved Budget (subject to Permitted Variances), the terms of the DIP Loan Documents, and the terms of this Interim Order, subject to and upon entry of the Final Order, each of the DIP Credit Parties and the Prepetition Secured Creditors shall receive:  (x) a waiver of any equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code and a waiver of unjust enrichment and similar equitable relief as set forth below; and (y) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

22

K.    _Good Faith of the DIP Credit Parties_.

(i)    _Willingness to Provide Financing_.  Each of the DIP Lenders has indicated a willingness to provide financing to the Debtors subject to:  (a) on an interim basis, the entry by this Court of this Interim Order, and on a final basis, the entry by this Court of a Final Order; (b) approval by this Court of the terms and conditions of the DIP Facilities and the DIP Loan Documents; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that each of the DIP Credit Parties is extending credit to the Debtors pursuant to the DIP Loan Documents in good faith, and that each of the DIP Credit Parties' claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Interim Order and the DIP Loan Documents will have the protections provided in section 364(e) of the Bankruptcy Code.

(ii)    _Business Judgment and Good Faith Pursuant to Section 364(e)_.  The terms and conditions of this Interim Order, the DIP Loan Documents, the extension of credit and the fees paid and to be paid thereunder: (a) are fair, reasonable, and the best available to the Debtors under the circumstances; (b) reflect the Debtors' exercise of prudent and sound business judgment consistent with their fiduciary duties; and (c) are supported by reasonably equivalent value and consideration.  The DIP Facilities and the use of Cash Collateral were negotiated in good faith and at arm's length among the Debtors and the DIP Credit Parties and the Prepetition Secured Creditors.  The use of Cash Collateral and credit to be extended under the DIP Loan Documents shall be deemed to have been so allowed, advanced, made, used, and extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and each of the DIP Credit Parties is therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim Order in the event that this Interim Order or any

provision hereof is vacated, reversed, or modified, on appeal or otherwise. The DIP Credit Parties and Prepetition Secured Creditors have acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith.

L. *Prepetition Permitted Liens*. Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Permitted Lien is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Credit Parties, the Prepetition Secured Creditors or the Committee (if any), to challenge the validity, priority, enforceability, seniority, perfection, or extent of any alleged Prepetition Permitted Lien and/or security interests. Subject to entry of the Final Order, the right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Prepetition Permitted Lien and is expressly subject to the Prepetition Liens and the DIP Liens.

M. *Intercreditor Agreement*. The parties assert and agree that, pursuant to section 510 of the Bankruptcy Code, except as provided herein, the Intercreditor Agreement and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Credit Documents, (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Creditors, (iii) shall govern the relative priorities, rights, and remedies of the DIP Credit Parties and the Prepetition Secured Creditors, other than to the extent set forth in this Interim Order, and (iv) shall not be deemed to be amended, altered, or modified by the terms of this Interim Order unless expressly set forth herein. For the avoidance of doubt, the respective priorities set for in the Intercreditor Agreement are not altered by the DIP Roll-Up Loans.

N. *Good Cause*.  Good cause has been shown for the entry of this Interim Order.  The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to:  (a) minimize disruption to the Debtors' businesses and on-going operations; (b) preserve and maximize the value of the Debtors' estates for the benefit of all the Debtors' creditors; and (c) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.  The terms of the DIP Facilities are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration.  The DIP Facilities are the product of reasonable, arm's-length, good faith negotiations between the Debtors and the DIP Credit Parties.

O. *Immediate Entry*.  Good and sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, the Motion and the record before this Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1. Motion Granted; Interim Financing Approved.  The Motion is granted on an interim basis, the Interim Financing is authorized on an interim basis, and the use of Cash Collateral on an interim basis is authorized, solely to the extent of the terms and conditions set forth in this Interim Order.

2. Objections Overruled.  All objections, reservations of rights, or other statements with respect to the Interim Financing and/or entry of this Interim Order to the extent not withdrawn or resolved are hereby overruled on the merits.

**DIP Facilities Authorization**

3.        Authorization of the DIP Financing and DIP Loan Documents.  The Debtors are

expressly and immediately authorized and empowered to:  (a) execute and deliver the DIP Loan

Documents; (b) incur and to perform the DIP Obligations (including the DIP Roll-Up Loans)[6] in

accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents

(including the Approved Budget); and (c) deliver all instruments, agreements, certificates, letters,

and documents that may be necessary, desirable, or required for performance by the Debtors under

the DIP Facilities and the creation and perfection of the DIP Liens described in and provided for

by this Interim Order and the DIP Loan Documents.  The Debtors are hereby authorized to pay the

principal, interest, fees, expenses and other amounts described in the DIP Loan Documents as such

become due on the terms set forth in the DIP Loan Documents and without need to obtain further

Court approval, including, without limitation, commitment fees, closing fees, administrative fees,

unused line fees, any additional fees and other amounts set forth in the DIP Loan Documents, and

the reasonable and documented fees and disbursements of the DIP Credit Parties' attorneys,

advisers, accountants, and other consultants, all to the extent required by the DIP Loan Documents,

with invoices to be provided in accordance with paragraph 25 below.  Upon execution and

delivery, the DIP Loan Documents shall represent valid and binding, and joint and several,

obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance

with the terms of the DIP Loan Documents.  The Debtors are also hereby authorized, by this

Interim Order, to make the Adequate Protection Payments.  Without any further action by the

Debtors or any other party, but subject to any Challenge (as defined herein) and an appropriate

remedy fashioned by this Court in the event of a successful Challenge, the Debtors shall be

---

[6]      The Final DIP Term Roll-Up Loan and the Full ABL Roll-Up remain subject to entry of the Final Order.

authorized and deemed to have repaid and refinanced (i) the Prepetition Secured Obligations with proceeds of the Interim DIP Term Roll-Up Loan and Creeping Roll-Up, as applicable and (ii) upon entry of the Final Order, all additional outstanding Prepetition Secured Obligations with the proceeds of the DIP Roll-Up Loans.

4.      <u>Authorization to Borrow</u>.  Until a Termination Declaration Date (as defined herein), and subject to the terms and conditions set forth in the DIP Loan Documents, the DIP Facilities, and this Interim Order, and in order to prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized, prior to the entry of the Final Order, to (i) request extensions of credit under the DIP ABL Facility up to an aggregate principal amount of $550,000,000 at any one time outstanding and (ii) to receive the Interim Term Financing. No other corporate action is required for the Debtors to execute and deliver the DIP Loan Documents, perform their obligations thereunder, or request any extension of credit under the DIP Facilities as set forth herein.

5.      <u>DIP Obligations</u>.  The DIP Loan Documents and this Interim Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases (collectively, "***Successor Cases***").  Upon entry of this Interim Order, the DIP Obligations shall include all loans, (for the avoidance of doubt, the Final DIP Term Roll-Up Loan and the Full ABL Roll-Up shall be included upon entry of the Final Order), and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to any of the DIP Credit Parties under the DIP Loan Documents or this Interim Order,

including, without limitation, all principal, accrued interest, costs, fees, expenses, and other amounts owed pursuant to the DIP Loan Documents, and shall be joint and several obligations of the Debtors in all respects; *provided* that the DIP Roll-Up Loans shall be subject to paragraph 42 hereof, and the challenge rights granted thereunder.  No obligation, payment, transfer, or grant of security under the DIP Credit Agreements, the other DIP Loan Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment, or counterclaim.

      6.      <u>Postpetition Liens and Collateral</u>.

      (a)      Effective immediately upon the entry of this Interim Order, pursuant to sections 364(c)(3) and 364(d) of the Bankruptcy Code, the Debtors are authorized to grant and do hereby grant to the DIP ABL Agent (for the benefit of itself and the other DIP ABL Lenders under and as described in the DIP Loan Documents) continuing valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens (collectively, the "***DIP ABL Liens***") on the Prepetition Collateral and the "Collateral" (as defined in each respective DIP Credit Agreement) (and together with the Prepetition Collateral, the "***DIP Collateral***").  For the avoidance of doubt, DIP Collateral shall include any proceeds of avoidance actions brought pursuant to chapter 5 of the Bankruptcy Code or section 724(a) of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable state law or foreign law equivalents (such actions, "***Avoidance Actions***" and any proceeds therefrom "***Avoidance Proceeds***"), subject to entry of the Final Order. Effective immediately upon the entry of this Interim Order, pursuant to sections 364(c)(3) and 364(d) of the Bankruptcy Code, the Debtors are authorized to grant and do hereby grant to the DIP Term Agent (for the benefit of itself and the

other DIP Term Lenders under and as described in the DIP Loan Documents) continuing valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens (collectively, the "***DIP Term Liens***" and together with the DIP ABL Liens, the "***DIP Liens***") on the DIP Collateral.  DIP Collateral (other than the Term Priority Collateral) constituting ABL Priority Collateral, and the proceeds and products thereof whether in existence on the Petition Date or thereafter arising, and Avoidance Proceeds that involve ABL Priority Collateral, shall constitute "***DIP ABL Priority Collateral.***" DIP Collateral (other than the ABL Priority Collateral) constituting Term Priority Collateral, and the proceeds and products thereof whether in existence on the Petition Date or thereafter arising, and Avoidance Proceeds that involve Term Priority Collateral, shall constitute "***DIP Term Priority Collateral.***"

7.      DIP Lien Priority in DIP Collateral.

(a)      *DIP Liens*.  Pursuant to Section 364(d), the DIP Liens on the DIP Collateral securing the DIP Obligations shall be first and senior in priority to all other interest and liens of every kind, nature, and description, whether created consensually, by an order of this Court or otherwise, including, without limitation, liens or security interests granted in favor of third parties in conjunction with sections 363, 364, or any other section of the Bankruptcy Code or applicable law; *provided*, however, that the DIP Liens on the DIP Collateral shall be subordinate to the Prepetition Permitted Liens and subject to the Carve Out and the relative priorities set forth on the Lien Priority Annex and the Intercreditor Agreement.

(b)      Other than as set forth herein, the DIP Liens, the DIP Superpriority Claims, the Carve Out, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims (each of which shall be subject to the relative priorities set forth on the Lien Priority Annex): (i) shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore

29

or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases or any claim for reclamation or return (whether asserted pursuant to section 546(c) of the Bankruptcy Code or otherwise), and shall be valid and enforceable against the Debtors, their estates, any trustee, or any other estate representative appointed or elected in the Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Cases, (B) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to challenge under sections 510, 549, 550, or 551 of the Bankruptcy Code; *provided* that the DIP Roll-Up Loans shall be subject to paragraph 42 hereof, and the challenge rights granted thereunder.

(c)    *Continuing Effect of Intercreditor Agreement.*   Except as otherwise expressly set forth herein: (i) the DIP Agents, the DIP Lenders, and the Prepetition Secured Creditors shall be bound by the terms and conditions set forth in the Intercreditor Agreement, including with respect to the Prepetition Collateral and the DIP Collateral, as applicable, and subject to the Carve Out and the relative priorities set forth on the Lien Priority Annex; (ii) nothing contained in this Interim Order shall be deemed to abrogate or limit the respective rights, claims, and obligations of each of the DIP Agents, the DIP Lenders, and the Prepetition Secured Creditors under the Intercreditor Agreement; and (iii) the Intercreditor Agreement shall apply and govern the respective rights, obligations, and priorities of each of the DIP Agents, the DIP Lenders, and the Prepetition Secured Creditors with respect to the Prepetition Collateral and the DIP Collateral, as applicable, in the Chapter 11 Cases and any Successor Cases subject in all respects to the Carve Out and the relative priorities set forth on the Lien Priority Annex.  All loans and advances made by the DIP Agents and/or DIP Lenders pursuant to and under the DIP Facilities and all other DIP

Obligations outstanding thereunder shall be subject to the Carve Out and the relative priorities set forth on the Lien Priority Annex.

8.    <u>DIP Superpriority Claims</u>.

(a)    *DIP ABL Superpriority Claim*.  Subject to the Carve Out on account of all DIP ABL Obligations now existing or hereafter arising pursuant to this Interim Order, the DIP Loan Documents, or otherwise, the DIP ABL Agent (for the benefit of itself and the other DIP ABL Lenders) is hereby granted to the maximum extent permitted pursuant to sections 364(c)(1), 503, and 507 of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any Successor Cases (collectively, the "***DIP ABL Superpriority Claim***") for all DIP ABL Obligations; <u>*provided*</u> that the DIP Roll-Up Loans shall be subject to paragraph 42 hereof, and the challenge rights granted thereunder.  Subject to paragraph 8(b) of this Interim Order, the Carve Out, and Prepetition Permitted Liens, the DIP ABL Superpriority Claim shall have priority over any and all other obligations, liabilities, and indebtedness of each Debtor, whether now in existence or hereafter incurred by such Debtor including without limitation administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (upon entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, and 1114 of the Bankruptcy Code, which allowed DIP ABL Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof.

(b)    *DIP Term Superpriority Claim*.  Subject to the Carve Out and to paragraph 42 hereof, and the challenge rights granted thereunder, on account of all DIP Term Obligations now existing or hereafter arising pursuant to this Interim Order, the DIP Loan Documents, or otherwise, the DIP Term Agent (for the benefit of itself and the other DIP Term Lenders) is hereby

granted to the maximum extent permitted pursuant to sections 364(c)(1), 503, and 507 of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any Successor Cases (collectively, the "***DIP Term Superpriority Claim***" and together with the DIP ABL Superpriority Claim, the "***DIP Superpriority Claims***")) for all DIP Term Obligations.  Subject to paragraph 8(a) of this Interim Order and the Carve Out, the DIP Term Superpriority Claim shall have priority over any and all other obligations, liabilities, and indebtedness of each Debtor, whether now in existence or hereafter incurred by such Debtor including without limitation administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (upon entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, and 1114 of the Bankruptcy Code, which allowed DIP Term Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof.

(c)     *Priority of DIP Superpriority Claims.*  The DIP ABL Superpriority Claim and the DIP Term Superpriority Claims shall be *pari passu* in right of payment with one another, subject only to the Carve Out, to further allocation described in and pursuant to the relative priorities set forth on the Lien Priority Annex, and the Intercreditor Agreement.  The DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, Avoidance Proceeds.

9.     <u>No Obligation to Extend Credit</u>. Except as may be required to fund the Professional Fees Account (as defined below) or as otherwise required under this Interim Order, no DIP Credit Party shall have any obligation to make any loan or advance under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit under the applicable DIP

Loan Documents and this Interim Order have been satisfied in full or waived in accordance with the DIP Loan Documents.

10.    <u>Use of Proceeds of the DIP Facilities</u>.  The DIP Loans shall be made available to the Debtors: (a) on the Closing Date (as defined in the DIP Credit Agreements) to pay the fees, costs and expenses incurred in connection with the transactions contemplated hereby; and (b) on and/or after the Closing Date (i) for the Debtors' working capital requirements and for general corporate purposes (including to fund the costs, fees, and expenses in connection with administration of the Chapter 11 Cases) in accordance with the provisions governing the Approved Budget (including the Permitted Variances) set forth herein and in each respective DIP Credit Agreement, (ii) payment of all reasonable and documented out-of-pocket costs, fees, and expenses required by the DIP Loan Documents, and (iii) to fund the Professional Fees Account and obligations benefitting from the Carve Out, in each case of (a) and (b) above, in accordance with the terms of the DIP Loan Documents.  For the avoidance of doubt, until such time as the DIP Obligations and the Prepetition Secured Obligations have been indefeasibly Paid in Full in cash, except as may be otherwise agreed by the DIP Agents, any fees or disbursements of any Professional Person (which shall not include, for the avoidance of doubt, those payments authorized or required pursuant to paragraphs 12(b), 25 and 26 of this Interim Order) shall be paid solely from the Professional Fee Account (including, to the extent applicable, the Post-Carve Out Trigger Notice Cap funded into the Professional Fee Account following delivery of a Carve Out Trigger Notice (as defined herein)) and any retainer, as applicable.

**Authorization to Use Cash Collateral**

11.    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, and in compliance with the Approved Budget (subject to Permitted Variances), the Debtors are authorized to use Cash Collateral only in accordance with

the Approved Budget (subject to Permitted Variances) until such time that the DIP Credit Parties or the Prepetition Secured Creditors terminate the Debtors' use of Cash Collateral as provided herein; *provided* that the Prepetition Secured Creditors are granted the Adequate Protection Superpriority Claims, Adequate Protection Liens, Adequate Protection Payments, as applicable, and other forms of adequate protection set forth herein; *provided further* that nothing herein shall impede the Debtors' ability and entitlement to fund the Carve Out as provided in paragraph 29 hereof; *provided further* that during the Remedies Notice Period (as defined below), the Debtors may use Cash Collateral solely to fund the Carve Out and pay payroll (other than severance) and other day-to-day operational expenses that are necessary and critical to the administration of the Debtors' estates during the Remedies Notice Period.

### Adequate Protection Provisions

12.     As adequate protection for the interest of the Prepetition Secured Creditors in the Prepetition Collateral (including Cash Collateral) on account of the granting of, among other things, the DIP Liens, the incurrence of the DIP Obligations, the subordination, as applicable, of the Prepetition Liens to the Carve Out, the Debtors' use of Cash Collateral, and any other diminution in value arising out of the imposition of the automatic stay or the Debtors' use, sale, lease, depreciation, or disposition of the Prepetition Collateral and Cash Collateral during the pendency of the Chapter 11 Cases, (collectively, "***Diminution in Value***"), the Prepetition Secured Creditors shall receive adequate protection as follows:

(a)     *Adequate Protection Liens*. To the extent of any Diminution in Value, each of the Prepetition Agents (for the benefit of itself and the other Prepetition Secured Creditors, as applicable) are hereby granted, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, valid, binding, enforceable, non-avoidable and perfected replacement and additional postpetition security interests in, and liens on the ABL Priority Collateral and the Term Priority

34

Collateral, as applicable (the "***Adequate Protection Liens***"), which shall be (x) subject to the Carve Out and the relative priorities set forth on the Lien Priority Annex and (y) subordinate to the Prepetition Permitted Liens.  The Adequate Protection Liens granted to the Prepetition ABL Agent (on behalf of the Prepetition ABL Lenders) shall secure the Prepetition ABL Obligations and the Adequate Protection Liens granted to the Prepetition Term Loan Agent shall secure the Prepetition Term Loan Obligations.

        (i)       The Adequate Protection Liens shall be: (A) deemed to be valid, binding, non-avoidable, enforceable, and fully perfected as of the Petition Date; and (B) in all instances, subject to the Carve Out and the relative priorities set forth on the Lien Priority Annex. Other than as set forth herein, until the indefeasible payment in full in cash of the Prepetition Secured Obligations, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases. The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of any of the Chapter 11 Cases or Successor Cases.  The Adequate Protection Liens shall not be subject to Bankruptcy Code sections 506(c) (upon entry of the Final Order), 510, 549, or 550.  No lien or interest avoided and preserved for the benefit of any Debtor's estate pursuant to Bankruptcy Code section 551 shall be made *pari passu* with or senior to the Adequate Protection Liens. The Adequate Protection Liens, solely with respect to the DIP Roll Up Loans, are subject to the Challenge Period (as defined herein).

(ii)     *Priority of Adequate Protection Liens*.   The Adequate Protection Liens shall be payable from and have recourse to all Prepetition Collateral and DIP Collateral, subject to the Carve Out and the relative priorities set forth on the Lien Priority Annex.

(b)     *Adequate Protection Payments.*   Until the Prepetition Secured Obligations have been indefeasibly Paid in Full, all claims (including principal, interest at the default rate and letter of credit fees) arising from or related to the Prepetition Secured Obligations shall continue to accrue and be paid in cash at the applicable contract rates and at the times specified in the applicable Loan Documents through the Chapter 11 Cases (the "***Secured Lender Payments***"). The Prepetition Agents (including any successor thereto) shall be entitled to the payment of all reasonable and documented fees, costs, expenses and charges of the Prepetition Agents, to the extent payable under the Prepetition ABL Credit Agreement and the Prepetition Term Loan Credit Agreement (the "***Secured Lender Fees and Expenses***" and together with the Secured Lender Payments, the "***Adequate Protection Payments***"); *provided, however*, that notwithstanding the foregoing, the out-of-pocket expenses incurred by the Prepetition Agents prior to and unpaid as of the Closing Date shall be paid indefeasibly upon the occurrence of the Closing Date without the Prepetition Agents (or their counsel or other professionals) or the other Prepetition Secured Creditors being required to deliver an invoice in summary form as set forth herein.  For all Secured Lender Fees and Expenses incurred after the Closing Date, Counsel and/or professionals to the Prepetition Agents shall each deliver an invoice in summary form (which shall not be required to include time entry detail, but shall include a general description of the nature of the matters for which services were performed, and may be redacted for privileged information; *provided, however*, that the Debtors, the U.S. Trustee and any Committee reserve their rights to request additional detail regarding the services rendered and expenses incurred by such professionals) to

counsel to the Debtors, the U.S. Trustee, and any Committee.  If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the date that is ten (10) days after delivery of such invoice to counsel to the Debtors, the U.S. Trustee, and any Committee, the Debtors shall promptly pay such fees and expenses in full.  If an objection to the Prepetition Agents' invoice is timely received, the Debtors shall promptly pay the undisputed amount of the invoice, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. Counsel and/or professionals to the Prepetition Agents shall not be required to file applications or motions with, or obtain approval of, this Court for the payment of any of its fees or out-of-pocket expenses (other than with respect to disputed amounts). Payments of any amounts set forth in this paragraph are not subject to avoidance, subordination, or disgorgement. For the avoidance of doubt, the Adequate Assurance Payments shall be subject to paragraph 42 hereof, and the challenge rights granted thereunder.

(c)    *Adequate Protection Superpriority Claims.*

(i)    *Superpriority Claims of the Prepetition Agents*.  As further adequate protection of the interests of the Prepetition Agents and the other Prepetition Secured Creditors with respect to the Prepetition Secured Obligations, each of the Prepetition Agents (for the benefit of itself and the other Prepetition Secured Creditors, as applicable) is hereby granted an allowed administrative claim against the Debtors' estates to the maximum extent permitted under section 503 of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the Debtors and their estates of any kind or nature whatsoever, subject to the Carve Out, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 726, 1113, and 1114 of the Bankruptcy Code, as

provided for by section 507(b) of the Bankruptcy Code (the "***Adequate Protection Superpriority Claims***"), to the extent that the Adequate Protection Liens do not adequately protect against any Diminution in Value of the Prepetition Agents' interests in the Prepetition Collateral.

(ii)     *Priority of Adequate Protection Superpriority Claims*.    The Adequate Protection Superpriority Claims, subject to the Carve Out and the relative priorities set forth on the Lien Priority Annex, shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, Avoidance Proceeds.

(d)     *Reporting*.    The Debtors shall timely provide the Prepetition Agents and the Prepetition Secured Creditors with copies of all financial and budget reporting provided to the DIP Credit Parties pursuant to the DIP Loan Documents substantially simultaneously with such delivery to the DIP Credit Parties.

(e)     *Reservations of Rights*.    Subject only to the Carve Out, the relative priorities set forth on the Lien Priority Annex, and the Prepetition Permitted Liens, nothing contained herein shall impair or modify the Prepetition Secured Creditors' rights under section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Creditors in this Interim Order is insufficient to compensate for the Diminution in Value of the interest of the Prepetition Secured Creditors' in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases.    Nothing contained in this Interim Order shall be construed as an admission as to the extent of any Diminution in Value, if any, in the interest of any Prepetition Secured Creditors in the Prepetition Collateral and nothing shall impair or modify the rights of any party to contest any assertion of Diminution in Value or contest any request for additional adequate protection.    Notwithstanding anything contained in this Interim Order, all parties' rights are

reserved with respect to allocation of any Adequate Protection Payments provided for in this Interim Order with respect to any allowed secured claims of any parties receiving such Adequate Protection Payments.

## Provisions Common to DIP Financing and Use of Cash Collateral Authorizations

13. _Amendments_.  The DIP Loan Documents may from time to time be amended, restated, amended and restated, supplemented, or otherwise modified, in each case in accordance with the provisions of the DIP Loan Documents governing amendments thereto, by the parties thereto, each without further application to or order of this Court; _provided_, that any amendment to the DIP Credit Agreements: that (a) shortens or lengthens the maturity of the extensions of credit thereunder; (b) increases or decreases the aggregate commitments thereunder; or (c) increases the rate of interest payable with respect thereto (each, a "**_Material DIP Amendment_**"), shall be (a) provided (which may be by electronic mail) to the U.S. Trustee, the other DIP Agent, the Prepetition Agents and any Committee, which shall have five (5) days from the date of receipt of such notice within which to object, in writing to the Material DIP Amendment and (b) filed with the court, it being understood that waivers for the benefit of the Debtors and extensions of Milestones and similar deadlines shall not be considered "material" for purposes hereof, and may become immediately effective.  If the U.S. Trustee, Prepetition Agent(s) or any Committee timely objects to the Material DIP Amendment, the Material DIP Amendment shall only be permitted pursuant to an order of this Court.  The foregoing shall be without prejudice to the Debtors' right to seek approval from this Court of a Material DIP Amendment on an expedited basis.

14. _Approved Budget, Testing, and Permitted Variances_.

    (a)    _Approved Budget._   The Approved Budget and any modification to, or amendment or update of, the Approved Budget shall be in form and substance reasonably satisfactory to the DIP Agents and modified or amended in accordance with the DIP Loan

Documents.  The Approved Budget shall be updated, modified or supplemented by the Debtors in accordance with the DIP Credit Agreements and this Interim Order, but in any event the budget shall be updated by the Debtors by no later than 5:00 p.m. on the Thursday of every other week (commencing with September 12, 2024) or, to the extent such Thursday is not a business day, the next business day thereafter.  Each such updated, modified or supplemented budget shall be in form and substance acceptable to each of the DIP Agents, and no such updated, modified or supplemented budget shall be effective until so approved and once approved shall be deemed the Approved Budget; *provided, however*, that, in the event that the DIP Agents and the Debtors cannot agree as to a new Approved Budget, the prior Approved Budget shall remain in full force and effect unless and until a new Approved Budget has been approved by each of the DIP Agents.

(b)     *Permitted Variances*.  The Debtors shall comply with the Approved Budget subject to the following permitted variances (as amended from time to time as provided herein, the "***Permitted Variances***"): (i) aggregate operating cash receipts shall not be less than 15% of the projected operating cash receipts set forth in the Approved Budget, and (ii) aggregate actual operating disbursements shall not exceed 15% of the projected disbursements set forth in the Approved Budget; *provided* that, for the avoidance of doubt, the actual operating disbursements considered for determining compliance shall exclude the Debtors' disbursements in respect of all professional fees of the Debtors, the DIP Credit Parties, and the Prepetition Secured Creditors and remittance of receipts for augmented sales in closing stores to the liquidator. The Permitted Variances may be modified in form and substance acceptable to the Debtors, the DIP Agents and the Prepetition Agents.

(c)     *Approved Budget Testing*.  Permitted Variances shall be reported by the Debtors on the Thursday following the last Friday of each completed week (each such Friday,

a "***Testing Date***").  For the avoidance of doubt, the testing of covenant compliance shall begin on the fourth full calendar week following the Closing Date (as defined in the DIP Credit Agreements).  The Debtors shall prepare a variance report (the "***Variance Report***"), and deliver such Variance Report to the DIP Agents, the Prepetition Agents and their advisors setting forth for the period in the most recently-delivered Approved Budget, (i) a rolling four-week (or, with respect to the first Testing Date, rolling three-week) comparison setting forth the actual operating cash receipts and the actual disbursements against the amount of the Debtors' projected operating cash receipts and projected disbursements, respectively, as set forth in the Approved Budget, and (ii) as to each variance contained in the Variance Report, an indication as to whether such variance is temporary or permanent and an explanation in reasonable detail for any variance.

15.    <u>Modification of Automatic Stay</u>.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to permit: (a) the Debtors to grant the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claims, and the Adequate Protection Superpriority Claims; (b) the Debtors to incur all liabilities and obligations to the DIP Agents as contemplated under the DIP Loan Documents; and (c) the Debtors to pay, and the DIP Credit Parties and Prepetition Secured Creditors to retain and apply, all amounts referred to, required under, and in accordance with the terms of this Interim Order and the DIP Loan Documents.

16.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>.

(a)    This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, the Adequate Protection Liens, and the other security interests granted herein, effective as of the Petition Date, without any further act and

without regard to any other federal, state, or local requirements or law requiring notice, execution, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, entering into any control agreements with any financial institution(s) party to a control agreement or other depository account consisting of DIP Collateral or requirement to register liens on any certificates of title (a "***Perfection Act***"). Notwithstanding the foregoing, if any DIP Agent or Prepetition Agent, as applicable, shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, then such DIP Agent or Prepetition Agent, as applicable, is authorized to perform such act, and the Debtors are authorized to perform such act to the extent necessary or required by the DIP Loan Documents, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law.  Either DIP Agent or either Prepetition Agent, as applicable, may choose to file, record, or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Interim Order in accordance with applicable law.  Should any DIP Agent or Prepetition Agent, as applicable, so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of this Interim Order.

(b)     To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of any liens and security

interests granted and created by this Interim Order (including the DIP Liens and the Adequate

Protection Liens) or otherwise would impose filing or registration requirements with respect to

such liens and security interests, such law is hereby pre-empted to the maximum extent permitted

by the Bankruptcy Code, applicable federal or foreign law, and the judicial power and authority of

this Court; *provided, however,* that nothing herein shall excuse the Debtors from payment of any

local fees, if any, required in connection with such liens.  By virtue of the terms of this Interim

Order, to the extent that any DIP Agent or Prepetition Agent, as applicable, has filed Uniform

Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection

documents under the names of any of the Debtors, such filings shall be deemed to properly perfect

its liens and security interests granted and confirmed by this Interim Order without further action

by the applicable DIP Agent or Prepetition Agent.

17.    <u>Application of Proceeds of DIP Collateral</u>.  Subject to the Carve Out, the relative

priorities set forth on the Lien Priority Annex, and the Prepetition Permitted Liens, as applicable,

the proceeds of DIP Collateral shall be applied in accordance with the terms of the DIP Loan

Documents, the Prepetition Credit Documents and this Interim Order.  The Debtors shall not,

directly or indirectly, voluntarily purchase, redeem, defease, or prepay any principal of, premium,

if any, interest or other amount payable in respect of any indebtedness prior to its scheduled

maturity, other than the DIP Obligations, the Adequate Protection Payments required under this

Interim Order, and obligations authorized by an order of this Court (which may include, without

limitation, obligations secured by Prepetition Permitted Liens). The Debtors shall apply the

proceeds of the DIP Collateral, the proceeds of the Prepetition Collateral, and any other cash and

collections and receipts of case from any source, including accounts, sale of property, loan

advances, or refunds (but excluding amounts reserved for the Carve Out) to the repayment and

refinancing of all Prepetition Secured Obligations as set forth in this Interim Order, the Prepetition Credit Documents and the DIP Credit Agreements, and in each case, subject to and in accordance with the terms of the Intercreditor Agreement. The extension of the DIP Facilities and the repayment and refinancing of the Prepetition Secured Obligations with the proceeds of the DIP Roll-Up Loans are part of an integrated transaction.

18.     <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in the Chapter 11 Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the repayment in full in cash of all DIP Obligations, and the termination of the DIP Credit Parties' obligations to extend credit under the DIP Facilities, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agents to be applied as set forth in paragraph 17 herein.

19.     <u>Maintenance of DIP Collateral and Prepetition Collateral</u>.  Until the indefeasible payment in full in cash of all Prepetition Secured Obligations and all DIP Obligations and the termination of the DIP Credit Parties' obligations to extend credit under the DIP Loan Documents, as provided therein, the Debtors shall insure the Prepetition Collateral and the DIP Collateral as required under the DIP Loan Documents and the Prepetition Credit Documents.

20.     <u>Termination Declaration Date</u>.  On a Termination Declaration Date (as defined herein), consistent with Article VII of the DIP ABL Credit Agreement and Article VII of the DIP Term Credit Agreement: (a) all DIP Obligations shall be immediately due and payable; and (b) all commitments to extend credit under the DIP Facilities will terminate (subject, in each case, to funding of the Carve Out as provided herein).

21. <u>Events of Default</u>. The occurrence of an "Event of Default" under the DIP Credit Agreements, including failure to comply with any DIP Milestones (as defined in the DIP Credit Agreements and attached hereto as **Exhibit 5**), shall constitute an event of default under this Interim Order (each, an "***Event of Default***"). With the prior written consent of each DIP Agent, any DIP Milestone may be extended by five (5) business days (or such longer period with the written consent of each DIP Agent and the Required Lenders under and as defined in the DIP ABL Credit Agreement).

22. <u>Rights and Remedies Upon Event of Default</u>.

(a)    Subject to the terms of the DIP Loan Documents and, solely with respect to the exercise of rights and remedies as between the DIP Agents and the Prepetition Agents, the Intercreditor Agreement, immediately upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from this Court, but subject to the terms of this Interim Order, including, without limitation, the funding of the Carve Out, the Remedies Notice Period (as defined herein) and the notice and grace period provisions of the DIP Credit Agreements set forth in Article VII of the DIP ABL Credit Agreement and Article VII of the DIP Term Credit Agreement: (1) (i) the applicable DIP Agent may declare in writing (the "***DIP Termination Declaration***") with a copy of such DIP Termination Declaration delivered to the other DIP Agent, (A) all DIP ABL Obligations or all DIP Term Obligations, as applicable, owing under the DIP Loan Documents to be immediately due and payable, (B) the termination, reduction, or restriction of any further commitment to extend applicable credit to the Debtors to the extent any such commitment remains under the DIP Facilities, (C) termination of the applicable DIP Facility and the applicable DIP Loan Documents as to any future liability or obligation of the DIP

ABL Agent or the DIP Term Agent and the DIP ABL Lenders or the DIP Term Lenders, as applicable, but without affecting any of the DIP Liens or the DIP Obligations, and (D) that any obligations to fund the Carve Out Reserve shall be triggered, through the delivery of the Carve Out Trigger Notice (as defined herein) to the Debtors; and (ii) (A) the DIP ABL Agent may declare a termination, reduction, or restriction on the ability of the Debtors to use Cash Collateral that constitutes DIP ABL Priority Collateral and DIP ABL Loans (such declaration, the "***DIP ABL Termination Declaration***") except solely to fund the Carve Out Reserves and to seek a Remedies Determination (as defined herein) (the date on which a DIP Termination Declaration is delivered by the DIP ABL Agent, the "***DIP ABL Termination Date***") and (B) the DIP Term Agent may declare a termination, reduction, or restriction on the ability of the Debtors to use Cash Collateral that constitutes DIP Term Priority Collateral and DIP Term Loans (such declaration, the "***DIP Term Loan Termination Declaration***") except solely to fund the Carve Out Reserves and to seek a Remedies Determination (the date on which a DIP Term Loan Termination Declaration is delivered by the DIP Term Agent, the "***DIP Term Loan Termination Date***" and together with the DIP ABL Termination Date, the "***Termination Declaration Date***"). For the avoidance of doubt, a DIP Termination Declaration shall not be required for any exercise of rights or remedies to the extent permitted under and in accordance with the DIP Credit Agreements. Notwithstanding any other provisions herein to the contrary, upon the occurrence of a Default or Event of Default under the DIP Credit Agreements, any payments, including Adequate Protection Payments, made to the DIP Agents and/or the Prepetition Agents pursuant to the terms of this Interim Order shall be made solely in accordance with the terms of the Intercreditor Agreement.

(b)       Any DIP Termination Declaration shall not be effective until notice has been provided by electronic mail (or other electronic means) to counsel to the Debtors, counsel to

any Committee, the U.S. Trustee and counsel to the DIP Agents and/or Prepetition Agents (as applicable). The automatic stay in the Chapter 11 Cases otherwise applicable to the DIP Agents, the DIP Lenders, and the Prepetition Secured Creditors is hereby modified so that five (5) Business Days (as defined in the DIP Credit Agreements) after the applicable Termination Declaration Date (as such period may be extended pursuant to the terms hereof, the "***Remedies Notice Period***") and subject to the Intercreditor Agreement, the funding of the Carve Out in accordance with paragraph 29(b) of this Interim Order and the relative priorities set forth on the Lien Priority Annex: (x) the applicable DIP Agent shall be entitled to exercise its rights and remedies in accordance with the DIP Loan Documents (including, without limitation, the Intercreditor Agreement) and this Interim Order; (y) the applicable Prepetition Agent shall be entitled to exercise its respective rights and remedies to the extent available in accordance with the applicable Prepetition Credit Documents (including, without limitation, the Intercreditor Agreement) and this Interim Order.

(c)     During the Remedies Notice Period, the Debtors and other parties-in-interest shall be entitled to seek an emergency hearing with this Court (the "***Remedies Determination***"); _provided_ that if the Debtors seek an emergency hearing during the Remedies Notice Period, but such hearing is scheduled for a later date by this Court (without any request by the Debtors to this Court with respect to such later scheduling), the Remedies Notice Period shall be tolled and the automatic stay shall not be modified until this Court enters an order determining that an Event of Default has occurred and is continuing. The Court may fashion an appropriate remedy at a hearing on a Remedies Determination; _provided_ that the rights of the Debtors, the applicable DIP Credit Parties, and the Prepetition Secured Creditors to contest such relief are expressly preserved.  Except as set forth in this paragraph 22(c) or otherwise ordered by this Court prior to the expiration of the Remedies Notice Period, after the Remedies Notice Period,

the Debtors shall waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agents, the DIP Lenders, or the Prepetition Secured Creditors under this Interim Order.  Furthermore, during the Remedies Notice Period, the Debtors may use Cash Collateral solely to fund the Carve Out and pay payroll (other than severance) and other day-to-day operational expenses that are necessary and critical to the administration of the Debtors' estates during the Remedies Notice Period. Unless this Court orders otherwise prior to the expiration of the Remedies Notice Period, the automatic stay, as to all of the DIP Agents, the DIP Lenders, and the Prepetition Secured Creditors shall automatically be terminated at the end of the Remedies Notice Period (as it may be extended in accordance with this paragraph) without further notice or order.  Upon expiration of the Remedies Notice Period (as it may be extended in accordance with this paragraph) subject to the Intercreditor Agreement, the funding of the Carve Out in accordance with paragraph 29(b) of this Interim Order, the relative priorities set forth on the Lien Priority Annex, and the Prepetition Permitted Liens, the applicable DIP Agent and the applicable Prepetition Secured Creditors shall be permitted to exercise all remedies set forth herein, and in the DIP Loan Documents, and as otherwise available at law without further order of or application or motion to this Court consistent with this Interim Order and the applicable loan documents.  The DIP Credit Parties and the Prepetition Secured Creditors may, subject to the Prepetition Credit Documents, the funding of the Carve Out, the relative priorities set forth on the Lien Priority Annex, and the Prepetition Permitted Liens, after the Remedies Notice Period, enter onto the premises of any Debtor in accordance with paragraph 23(b) herein.

      23.    <u>Leased Premises</u>.

(a)     Notwithstanding anything to the contrary in this Interim Order, for purposes of this Interim Order, DIP Liens and Adequate Protection Liens shall not encumber and DIP Collateral shall not include (i) leasehold interests of non-residential real property that prohibit or restrict the granting of such liens in the applicable lease except as permitted pursuant to applicable non-bankruptcy law (but shall include the proceeds of the sale or disposition of such leases) and (ii) any security deposits (in possession of the Debtors or the landlord) or the Debtors' interests, if any, in pre-paid rent, unless liens on such security deposits or pre-paid rent are expressly permitted pursuant to the underlying lease documents; _provided_ that, the DIP Liens and Adequate Protection Liens shall extend to any such security deposits or pre-paid rent upon reversion thereof to the Debtors, if at all, as well as any proceeds or value of such leasehold interests whether by sale, financing, or other disposition or form of transfer, termination or transaction; _provided, further,_ that prior to the Final Order, any liens granted herein relating to the Debtors' insurance policies shall not interfere with any rights held by a landlord under such policies to any such insurance proceeds for damage to landlord's property.

(b)     The DIP Agents' or the Prepetition Agents' exercise of their remedies pursuant to paragraph 22 under the DIP Loan Documents and the Prepetition Credit Documents shall be subject to, as may be applicable: (a) any agreement in writing between the DIP Agents or Prepetition Agents and any applicable landlord; (b) pre-existing rights of the DIP Agents or Prepetition Agents, and any applicable landlord under applicable non-bankruptcy law; (c) written consent of the applicable landlord; or (d) further order of this Court following notice and a hearing.

24.     Good Faith Under Section 364 of the Bankruptcy Code; No Modification or Stay of this Interim Order.  In accordance with sections 364(e) and 363(m) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter reversed, modified,

amended, or vacated by a subsequent order of this Court, or any other court, the DIP Credit Parties

and Prepetition Secured Creditors are entitled, upon entry of this Interim Order, to the protections

provided in section 364(e) of the Bankruptcy Code. Any such reversal, modification, amendment,

or vacatur shall not affect the validity and enforceability of any advances previously made or made

hereunder, or lien, claim or priority authorized or created hereby. Any liens or claims granted to

the DIP Credit Parties and Prepetition Secured Creditors hereunder arising prior to the effective

date of any such reversal, modification, amendment, or vacatur of this Interim Order shall be

governed in all respects by the original provisions of this Interim Order, including, without

limitation, entitlement to all rights, remedies, privileges, and benefits granted herein.

      25.   <u>DIP and Other Expenses</u>.  The Debtors are authorized to pay, without duplication

of fees paid for the benefit of the DIP Credit Parties, all reasonable and documented out-of-pocket

costs and expenses (and the DIP Agents are authorized to make advances or charges against the

loan account to pay such agreed costs and expenses of the DIP Credit Parties in accordance with

the DIP Loan Documents) of the DIP Credit Parties in connection with the DIP Facilities

(including, without limitation, costs and expenses incurred prior to the Petition Date), to the extent

set forth in by the DIP Loan Documents. The respective professionals for the DIP Agents, shall

deliver an invoice in summary form (which shall not be required to include time entry detail and

may be redacted for privileged information, but shall include (i) a general description of the nature

of the matters for which services were performed and (ii) contain sufficiently detailed information

to permit the Review Parties (as defined herein) to determine whether the fees and expenses sought

to be paid are reasonable) *provided, however*, that the Debtors, the U.S. Trustee and any Committee

reserve their rights to request additional detail regarding the services rendered and expenses

incurred by such professionals) to counsel to the Debtors, the U.S. Trustee, and any Committee

(together, the "***Review Parties***"); <u>*provided, however*</u>, that notwithstanding the foregoing, the out-of-pocket expenses (including, without limitation, all attorneys' and other professionals' fees and expenses) incurred by the DIP Agents prior to and unpaid as of the Closing Date shall be paid indefeasibly upon the occurrence of the Closing Date without the DIP Agents being required to deliver an invoice in summary form as set forth herein.  If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the date that is ten (10) calendar days after receipt of such invoice by the Review Parties, the Debtors shall promptly pay such fees and expenses in full.  If an objection to a professional's invoice is timely received, the Debtors shall promptly pay the undisputed amount of the invoice, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  The DIP Agents' professionals shall not be required to file applications or motions with, or obtain approval of, this Court for the payment of any of their fees or out-of-pocket expenses (other than with respect to disputed amounts).

26.    <u>Indemnification</u>. The Debtors shall indemnify and hold harmless the DIP Agents, each other DIP Credit Party, and each Indemnitee (as respectively defined in each DIP Credit Agreement), subject to and in accordance with each DIP Credit Agreement, including, without limitation, Section 9.03(b) of each respective DIP Credit Agreement.

27.    <u>Proofs of Claim</u>.  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or any Successor Cases, neither the DIP Credit Parties, the Prepetition Agents or any of the Prepetition Secured Creditors shall be required to file proofs of claim in these cases or any Successor Cases in order to assert claims for payment of any of the DIP Obligations or the Prepetition Secured Obligations, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts due and payable under

the Prepetition Credit Documents or this Interim Order.  None of the DIP Credit Parties or the Prepetition Secured Creditors will be required to file proofs of claim or requests for approval of administrative expenses in any of the Chapter 11 Cases or Successor Cases, and the provisions of this Interim Order relating to the DIP Obligations, the DIP Superpriority Claims, the relevant Adequate Protection Superpriority Claims, the Prepetition Secured Obligations and the Debtors' Stipulations shall constitute timely filed proofs of claim and/or administrative expense requests (as applicable) in each of the Chapter 11 Cases.

28.     <u>Rights of Access and Information</u>.  The Debtors shall use commercially reasonable efforts to afford the DIP Credit Parties, and the Prepetition Agents all of the rights of access and information provided for under the DIP Loan Documents.

29.     <u>Carve Out</u>.

(a)     *Priority of Carve Out.*  Each of the DIP Liens, the Prepetition Liens, the Adequate Protection Liens, the DIP Superpriority Claims, and the Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve Out (as defined herein).  The Carve Out shall be senior to all claims and liens over all assets of the Debtors, including any DIP Collateral, as set forth in the Lien Priority Annex. For the avoidance of doubt, the Carve Out shall not prime Prepetition Permitted Liens.

(b)     *Definition of Carve Out.*  As used in this Interim Order, the "***Carve Out***" means the sum of (i) all fees required to be paid to the Clerk of this Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iv) below); (ii) all reasonable Court-allowed fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iv) below); (iii) all allowed unpaid fees and expenses,

(the "*Allowed Professional Fees*"), incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "*Debtor Professionals*") and any Committee appointed pursuant to section 328 or 1103 of the Bankruptcy Code (the "*Committee Professionals*" and, together with the Debtor Professionals, the "*Professional Persons*") at any time before or on the first Business Day following delivery by the DIP ABL Agent or the DIP Term Agent of a Carve Out Trigger Notice, whether allowed by this Court prior to or after delivery of a Carve Out Trigger Notice (the amounts set forth in clauses (i) through (iii), the "*Pre-Carve Out Trigger Notice Cap*"), which amount shall be funded into a non-interest bearing account maintained at PNC Bank, N.A. (the "*Professional Fee Account*") on Wednesday of each week (or such other day of the week agreed to by the Debtors and the DIP Agents); (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $3,500,000 incurred after the first Business Day following delivery by the DIP ABL Agent or the DIP Term Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise; (the amounts set forth in clause (iv) above being the "*Post-Carve Out Trigger Notice Cap*"). Within three (3) Business Days of delivery of a Carve Out Trigger Notice, the DIP ABL Lenders shall fund the Post-Carve Out Trigger Notice Cap into the Professional Fee Account.  For purposes of the foregoing, "*Carve Out Trigger Notice*" shall mean a written notice delivered by email (or other electronic means) by the DIP ABL Agent or the DIP Term Agent to the Debtors, their lead restructuring counsel (Davis Polk & Wardwell, LLP), the U.S. Trustee, lead counsel to the DIP ABL Agent and the Prepetition ABL Agent (Choate, Hall & Stewart, LLP), lead counsel to the DIP Term Agent and the Prepetition Term Loan Agent (Otterbourg, P.C.), and lead counsel to any Committee, which notice may be delivered only following the occurrence and during the continuation of an Event of Default.

(c) *Professional Fee Account*. Notwithstanding anything to the contrary contained in this Interim Order, until an Event of Default or the Termination Declaration Date has occurred, the Debtors shall be permitted to borrow under the DIP ABL Commitment on a weekly basis to fund the Professional Fee Account in the amounts contemplated under clause (iii) of the immediately preceding paragraph. The Debtors shall be permitted to pay, from the Professional Fee Account, as and when the same may become due and payable, the Allowed Professional Fees of Professional Persons regardless of whether an Event of Default or the Termination Declaration Date has occurred.  None of the provisions of this Interim Order or any DIP Loan Document shall prohibit or restrict the payment of the fees and expenses of any Professional Persons from any retainers held by such Professional Person.  Any amounts remaining in the Professional Fee Account after the payment in full of all Allowed Professional Fees of Professional Persons pursuant to final fee applications and orders shall be returned to the DIP ABL Lenders, which amounts shall be applied in accordance with paragraph 17 hereof.  The DIP Liens and Adequate Protection Liens shall attach to any cash held in the Professional Fee Account following the payment of Professional Persons from the Carve Out.

(d) *Delivery of Weekly Fee Statements*.

(i) Not later than 6:00 p.m. New York time on Tuesday of each week starting with the second week following the Petition Date, each Professional Person shall deliver to the Debtors, the DIP Agents, and the Prepetition Agents a statement setting forth a good-faith estimate of the amount of the fees and expenses incurred during the preceding week (through the Saturday of such week, the "***Calculation Date***"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors

(each such statement, a "***Weekly Statement***"); _provided_ that within one business day of the occurrence of the Termination Declaration Date, each Professional Person shall deliver one additional statement (the "***Final Statement***") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date.

(ii)     If any Professional Person fails to deliver a Weekly Statement within three calendar days after such Weekly Statement is due, then the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period (if any) shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person; _provided_ that such Professional Person shall be entitled to be paid any unpaid amount of Allowed Professional Fees in excess of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person from the Professional Fee Account.

(e)     *Carve Out Reserves.*

(i)     On or before the Wednesday of each week (or such other day of the week agreed to by the Debtors and the DIP Agents), the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor (and if necessary, the Debtors shall be deemed to make a draw request and notice of borrowing by the Debtors for DIP ABL Loans under the DIP ABL Commitment (on a pro rata basis based on the then outstanding DIP ABL Commitment) (any such amounts actually advanced from the outstanding DIP ABL Commitment shall constitute DIP ABL Loans) (any such amounts actually advanced shall constitute DIP ABL Loans)) to fund the Professional Fee Account in an amount equal to the greater of (x) the sum of

(I) the aggregate unpaid amount of fees and expenses included in such Weekly Statements timely received by each of the DIP Agents, the Prepetition Agents, and the Debtors prior to the Termination Declaration Date plus, without duplication, (II) the aggregate unpaid amount of fees and expenses included in the Final Statements timely received by each of the DIP Agents, the Prepetition Agents, and the Debtors pertaining to the period through and including the Termination Declaration Date, and (y) the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for the period prior to the Termination Declaration Date (collectively, the "***Weekly Professional Fee Amount***").  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such Allowed Professional Fees (the "***Pre-Carve Out Trigger Notice Reserve***") prior to any and all other claims, and all payments of Allowed Professional fees incurred prior to the Termination Declaration Date shall be paid first from such Pre-Carve Out Trigger Notice Reserve.  Upon the foregoing funding, the DIP Credit Parties and Prepetition Secured Creditors shall have no further obligation to fund the Pre-Carve Out Trigger Notice Reserve and their liens and claims shall not be subordinate to any Allowed Professional Fees incurred through the Calculation Date for the most recent Weekly Statement required to be delivered in accordance with paragraph 29(d)(i) herein.  For the avoidance of doubt, it shall be an Event of Default if Debtors do not fund the full amount of the Weekly Professional Fee Amount into the Pre-Carve Out Trigger Notice Reserve on or before the fifth business day following the Wednesday of each week (or such other day of the week agreed to by the Debtors and the DIP Agents).

(ii)    Upon delivery of the Carve Out Trigger Notice, the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor (and if necessary, the Debtors shall be deemed to make a draw request and notice of borrowing by the Debtors for

DIP ABL Loans under the DIP ABL Commitment (on a pro rata basis based on the then outstanding DIP ABL Commitment) (any such amounts actually advanced from the outstanding DIP ABL Commitment shall constitute DIP ABL Loans) (any such amounts actually advanced shall constitute DIP ABL Loans)) to fund (A) the Pre-Carve Out Trigger Notice Reserve, to the extent not already funded, in an amount equal to the aggregate amount of all fees and expenses reflected in the Final Statements timely delivered to the Debtors and the DIP Agents plus the amounts set forth in paragraph 29(b)(i) and 29(b)(ii) herein (collectively, the "***Pre-Carve Out Amounts***"), and (B) after funding the Pre-Carve Out Trigger Notice Reserve, a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "***Post-Carve Out Trigger Notice Reserve***" and, together with the Pre-Carve Out Trigger Notice Reserve, the "***Carve Out Reserves***") prior to any and all other claims.  The Debtors shall deposit and hold such amounts in a segregated account designated by the Debtors and not subject to the control of the DIP Agents to pay such then unpaid Allowed Professional Fees prior to any and all other claims. Upon the foregoing funding, the DIP Credit Parties and Prepetition Secured Creditors shall have no further obligation to fund the Pre-Carve Out Trigger Notice Reserve or Post-Carve Out Trigger Notice Reserve and their liens and claims shall not be subordinate to any portion of the Carve Out other than that which is held in the Carve Out Reserves.

(iii)    On the first Business Day after the delivery of the Carve Out Trigger Notice, notwithstanding anything in the DIP Credit Agreements to the contrary, including with respect to the existence of a Default (as defined in the DIP Credit Agreements) or Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for DIP Loans under the DIP Facilities, any termination of the DIP Commitment following an Event of Default, or the occurrence of the Maturity Date (as defined in the DIP Credit Agreements), to the extent necessary

and there remains availability under the DIP Commitment, each DIP Lender with an outstanding DIP Commitment (on a pro rata basis based on the then outstanding DIP Commitment) shall make available to the DIP Agents such DIP Lender's pro rata share with respect to such borrowing in accordance with the respective DIP Facility; *provided* that prior to the delivery of a Carve Out Trigger Notice, Allowed Professional Fees shall be paid solely from the Professional Fee Account and any retainers held by Professional Persons.

(iv)    All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the Pre-Carve Out Amounts, but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until Paid in Full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP ABL Agent for the benefit of the DIP ABL Lenders, unless the DIP ABL Obligations have been indefeasibly Paid in Full in cash, and the DIP ABL Commitment has been terminated, in which case any such excess shall be paid to the DIP Term Agent for the benefit of the DIP Term Lenders, unless the DIP Term Obligations have been indefeasibly Paid in Full in cash, and the DIP Term Loan Commitment have been terminated, in which case any such excess shall be paid to the Prepetition Secured Creditors in accordance with their rights and priorities in this Interim Order.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "***Post-Carve Out Amounts***"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, first to pay any Pre-Carve Out Amounts until indefeasibly Paid in Full, and then to pay the DIP ABL Agent for the benefit of the DIP ABL Lenders, unless the DIP ABL Obligations have been indefeasibly Paid in Full in cash, and the DIP ABL Commitment has been terminated, in which case any such excess shall be paid to the DIP Term Agent for the benefit of the DIP Term Lenders, unless the DIP Term Obligations have been

indefeasibly Paid in Full in cash, and the DIP Term Loan Commitment have been terminated, in which case any such excess shall be paid to the Prepetition Secured Creditors in accordance with their rights and priorities in this Interim Order.  Notwithstanding anything to the contrary in the DIP Loan Documents or this Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts and manner set forth in this paragraph 29, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount and in the manner set forth in this paragraph 29, prior to making any payments to the DIP Agents or the Prepetition Secured Creditors, as applicable.  Notwithstanding anything to the contrary in the DIP Loan Documents or this Interim Order, following delivery of a Carve Out Trigger Notice by the DIP ABL Agent or the DIP Term Agent, the DIP Agents and the Prepetition Agents shall not sweep or foreclose on cash (including, without limitation, cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the applicable DIP Agent for application in accordance with the terms hereof and the DIP Loan Documents and this Interim Order.  Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute DIP Loans or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Approved Budget, Carve Out, Pre-Carve Out Trigger Notice Cap, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  Any Carve Out Trigger Notice shall be deemed a consent by the DIP

Agents and each DIP Lender to the Debtors depositing Cash Collateral to fund the Carve Out Reserves as described herein and any incurrence or funding of any Carve Out, Pre-Carve Out Trigger Notice Cap, Post-Carve Out Trigger Notice Cap, or Carve Out Reserves.  For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, the other DIP Loan Documents, or in any Prepetition Credit Document, the Carve Out shall be senior to all liens and claims securing the DIP Facilities, and to the Adequate Protection Liens, the DIP Superpriority Claims, and the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims relating to the DIP Obligations or the Prepetition Secured Obligations as set forth in the Lien Priority Annex.

(f)    *Payment of Allowed Professional Fees Prior to the Termination Declaration Date*.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce or be deemed to reduce the Carve Out.

(g)    *No Direct Obligation To Pay Allowed Professional Fees*.  None of the DIP Credit Parties or the Prepetition Secured Creditors shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person or any fees or expenses of the U.S. Trustee or Clerk of this Court incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Credit Parties or the Prepetition Secured Creditors, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(h)    *Payment of Carve Out On or After the Termination Declaration Date*.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date

in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding or payment of the Carve Out shall be added to, and made a part of the DIP ABL Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law; *provided* that any funding or payment that constituted DIP ABL Obligations, shall not be further added to the DIP ABL Obligations.

(i)     *Subordination to Carve Out*. Notwithstanding anything to the contrary in this Interim Order, the Debtors' obligations to the DIP Credit Parties and the Prepetition Secured Creditors and the liens, security interests, and superpriority claims granted herein, under the DIP Loan Documents, and/or under the Prepetition Credit Documents, including, without limitation, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, Adequate Protection Superpriority Claims, and the Prepetition Secured Obligations, shall be subject in all respects and subordinate to the Carve Out.

(j)     In accordance with the DIP ABL Credit Agreement, the DIP ABL Agent shall be entitled to at all times maintain a reserve (the "***ABL Carve Out Reserve***") against the Borrowing Base (as defined in the DIP ABL Credit Agreement) in an amount not to exceed, at any time of determination, the sum of (i) the Post-Carve Out Trigger Notice Cap, (ii) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the two weeks succeeding the then-current week occurring after the most recent Calculation Date; and (iii) any amount in respect of Allowed Professional Fees not timely funded into the Professional Fee Account pursuant to paragraph 29(b) (such ABL Carve Out Reserve shall be reduced by such amount immediately prior to or simultaneous with the funding of such amount into the Professional Fee Account); *provided* that the ABL Carve Out Reserve will only be maintained and effective

until the delivery of a Carve Out Trigger Notice, upon which the ABL Carve Out Reserve will be lifted, reduced to zero, and shall give rise to corresponding ABL DIP Availability.

(k)    *Reservation of Rights*.  Nothing in this Interim Order shall be construed as consent to the allowance of any professional fees or expenses of any Professional Person or shall be construed as a waiver of any right of the DIP Credit Parties and the Prepetition Secured Creditors with respect to any fee statement, interim application or monthly application issued or filed by the Professional Persons.  Notwithstanding anything to the contrary herein or in the DIP Loan Documents, (x) except with respect to the obligation to fund the Carve Out Reserves, in no event shall any DIP Lender be required to fund any amounts in excess of its DIP Commitment and (y) the payment of any Allowed Professional Fees pursuant to the Carve Out shall not (i) reduce any Debtor's obligations owed to the DIP Agents, any DIP Lender, the DIP Credit Parties, the Prepetition Agents, and the Prepetition Secured Creditors (whether under this Interim Order or otherwise) or (ii) modify, alter or otherwise affect any of the liens and security interests of such parties (whether granted under this Interim Order or otherwise) in the Prepetition Collateral or the DIP Collateral (or their claims against the Debtors).

30.    <u>Limitation on Use of DIP Loans and DIP Collateral (Including Cash Collateral)</u>. For the avoidance of doubt and notwithstanding any other provision of this Interim Order or any other order entered by this Court to the contrary, no portion of the Carve Out, DIP Collateral, Term Priority Collateral (including Cash Collateral), or ABL Priority Collateral (including Cash Collateral) may be used directly or indirectly in connection with: (i) the investigation, initiation, or prosecution of any claims, causes of action, motions, adversary proceedings, or other litigation, (A) against any of the DIP Lenders, the DIP Agents, the Prepetition Secured Creditors (whether in such capacity or otherwise), or (B) challenging the amount, validity, perfection, priority, or

enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP Loan Documents or in connection with the Prepetition Loan Facilities, including, in each case without limitation, for lender liability or pursuant to Sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (ii) attempts to modify any of the rights granted to the DIP Lenders or the DIP Agents with respect to the DIP Facilities or the Prepetition Agents or the other Prepetition Secured Creditors with respect to the Prepetition Loan Facilities; (iii) any objection to, motion to reconsider or appeal of any order with respect to the DIP Facilities; (iv) attempts to prevent, hinder, or otherwise delay any of the DIP Lenders' or the DIP Agents' assertion, enforcement, or realization upon any DIP Collateral in accordance with the DIP Loan Documents and the Final Order once an Event of Default has occurred and any applicable Remedies Notice Period expired; *provided*, *however*, that the proceeds of the DIP Loans and DIP Collateral (including Cash Collateral) may be used by the Committee (if any) to investigate prior to the Challenge Deadline (as defined below), but not to prosecute, (A) the claims and liens of the Prepetition Secured Creditors, and (B) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Creditors, up to an aggregate cap of no more than $50,000.

31.    No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

32.    Release.    Subject to paragraph 42 hereof, and the challenge rights granted thereunder, effective upon entry of this Interim Order, each of the Released Parties is released by the Debtors as provided in paragraph F(ix) hereof.

33.     <u>Section 506(c) Claims</u>. Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or Successor Cases at any time shall be charged against the DIP Credit Parties or the DIP Collateral or the Prepetition Secured Creditors or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise and all rights to surcharge the DIP Credit Parties or the DIP Collateral or the Prepetition Secured Creditors or the Prepetition Collateral under sections 105 or 506(c) of the Bankruptcy Code or any other applicable principle of equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties-in-interest in this or any Successor Cases.

34.     <u>No Marshaling / Applications of Proceeds</u>.  Upon entry of the Final Order, none of the DIP Credit Parties or the Prepetition Secured Creditors shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral.

35.     <u>Section 552(b)</u>.  The DIP Agents and the other DIP Credit Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  Upon entry of the Final Order, and subject to approval by this Court therein, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Credit Parties or the Prepetition Secured Creditors with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral or DIP Collateral.

36.     <u>Limits on Lender Liability</u>.  Nothing in this Interim Order, any of the DIP Loan Documents, the Prepetition Credit Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents, the DIP Lenders, the Prepetition Agents, or the Prepetition Secured Creditors of any liability for any claims

arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of the Chapter 11 Cases. The DIP Agents, the DIP Lenders, the Prepetition Agents, and the Prepetition Secured Creditors shall not, solely by reason of having made loans under the DIP Facilities or permitting the use of Cash Collateral, as applicable, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute). Nothing in this Interim Order or the DIP Loan Documents, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents, the DIP Lenders, the Prepetition Agents, or the Prepetition Secured Creditors of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

37. <u>Joint and Several Liability</u>. Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facilities and the DIP Loan Documents.

38. <u>No Superior Rights of Reclamation</u>. Based on the findings and rulings herein concerning the integrated nature of the DIP Facilities and the Prepetition Credit Documents and the relation back of the DIP Liens, subject to entry of the Final Order, in no event shall any alleged right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have any additional or greater rights and priority with respect to the Prepetition Liens as such claim had on the Petition Date.

39.     <u>Debtors' Waivers/Covenants</u>. At all times during the Chapter 11 Cases prior to the payment in full of the DIP Obligations and Prepetition Secured Obligations, and whether or not an Event of Default has occurred, the Debtors waive and covenant not to seek authority to take any of the following actions prior to the payment in full of the DIP Obligations and Prepetition Secured Obligations, other than as expressly provided for in this Interim Order or the DIP Loan Documents, or unless each of the DIP Agents otherwise consent in writing: (i) use Cash Collateral under Section 363 of the Bankruptcy Code, (ii) obtain post-petition loans or other financial accommodations pursuant to Section 364(c) or 364(d) of the Bankruptcy Code, (iii) challenge the application of any payments authorized hereunder pursuant to Section 506(b) of the Bankruptcy Code, or assert that the value of the Prepetition Collateral is less than the Prepetition Secured Obligations, (iv) propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in full in cash in full satisfaction of all DIP Obligations and Prepetition Secured Obligations on the effective date of such plan; (v) seek relief under the Bankruptcy Code, including without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of any DIP Credit Parties as provided in this Interim Order and the DIP Loan Documents or any DIP Credit Parties' exercise of such rights or remedies, (vi) challenge, contest or otherwise seek to impair or object to the validity, extent, enforceability or priority of DIP Agents' post-petition liens and claims, or (vii) take any other action prohibited pursuant to Section 6.11 of the DIP Credit Agreements. No consent to any of the foregoing shall be implied from any other action, inaction, or acquiescence by any of the DIP Credit Parties, and the written consent of the DIP Agents shall be required to relieve the Debtors of their obligations under this paragraph 39.

40.     <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Credit Parties' or the Prepetition Secured Creditors' right to seek any other or supplemental relief in respect of the Debtors (including, the right to seek additional or different adequate protection); (b) the rights of any of the Prepetition Secured Creditors to seek the payment by the Debtors of postpetition interest or fees pursuant to section 506(b) of the Bankruptcy Code; or (c) any of the rights of the DIP Credit Parties or the Prepetition Secured Creditors under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, (iii) seek an injunction, (iv) oppose any request for use of Cash Collateral, (v) object to any sale of assets, or (vi) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; *provided*, that the rights of the DIP Credit Parties and the Prepetition Secured Creditors with respect to sections (i)–(iii) of this paragraph 40 shall be subject to the Carve Out and the relative priorities set forth on the Lien Priority Annex.  Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Credit Parties and the Prepetition Secured Creditors are preserved.

41.     <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Credit Parties to seek relief or otherwise exercise rights and remedies under this Interim Order, the DIP Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Credit Parties.

42.    <u>Binding Effect of Interim Order</u>.    Immediately upon entry by this Court of this Interim Order, the stipulations (including the Debtors' Stipulations), terms and provisions of this Interim Order (including, without limitation, the Adequate Protection Liens, Adequate Protection Payments, and the Adequate Protection Superpriority Claims) shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Credit Parties, the Prepetition Secured Creditors, all other creditors of any of the Debtors, the Committee, if any, and all other parties-in-interest and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case, unless, and solely to the extent that: any person or any party-in-interest (including the Committee, if any) that has sought and obtained standing and the requisite authority to commence a Challenge[7] (other than the Debtors, as to which any Challenge is hereby irrevocably waived and relinquished) and has timely commenced a Challenge until the date that is the earlier of (i) subject to entry of the Final Order, concurrent with the hearing approving a sale of substantially all of the Debtors' assets or confirming a plan of reorganization and (ii) seventy five (75) calendar days after the entry of this Interim Order (the "***Challenge Deadline***"), as such applicable date may be extended in writing from time to time by the Prepetition Term Loan Agent in its sole discretion (with respect to the Prepetition Term Loan Documents and the Prepetition Term Loan Obligations) and the Prepetition ABL Agent in its sole discretion (with respect to the Prepetition ABL Documents and Prepetition ABL Obligations, as applicable), or by this Court for

---

[7] "Challenge" as used herein shall mean an adversary proceeding or contested matter (subject to the limitations contained herein) (a) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Obligations or the Prepetition Liens, or (b) asserting or prosecuting any Avoidance Action or any other claims, counterclaims or causes of action, objections, contests or defenses against any Prepetition Secured Creditors or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof in connection with or related to the Prepetition Credit Documents, the Prepetition Secured Obligations, the Prepetition Liens and the Prepetition Collateral.

good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline; *provided* that if the Chapter 11 Cases are converted to chapter 7 or a chapter 7 or chapter 11 trustee is appointed or elected prior to the expiration of the Challenge Deadline, any such estate representative or trustee shall receive the full benefit of any remaining time before expiration of the Challenge Deadline, which, solely if not yet expired, shall be extended for a period of sixty (60) days; and (B) this Court enters judgment in favor of the plaintiff or movant in any such timely commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal. The Challenge Deadline set forth herein shall be tolled if a party-in-interest (including the Committee, if any) files a motion seeking standing to bring a Challenge ("***Standing Motion***"), which attaches one or more draft complaints that detail the alleged challenge(s) that the applicable party in interest seeks to file, until such time as the Court decides the Standing Motion and solely with respect to (i) the party-in-interest that files the Standing Motion and (ii) the contents of the complaint attached to the Standing Motion. Notwithstanding any other provision in the interim order, the Court retains the right to enter any appropriate remedy.

43.    <u>Credit Bidding</u>. Subject to paragraph 42 of this Interim Order and the rights of parties-in-interest under section 363(k) of the Bankruptcy Code, in connection with any sale process authorized by the Court, upon entry of the Interim order, the Prepetition Agents may seek to credit bid some or all of their claims for their respective collateral (each a "***Credit Bid***"). A Credit Bid may be applied only to reduce the cash consideration with respect to those assets in which the party submitting such Credit Bid holds a perfected security interest.

44.    Any order dismissing one or more of the Chapter 11 Cases or Successor Cases under section 1112 of the Bankruptcy Code or otherwise shall be deemed to provide (in accordance

with sections 105 and 349 of the Bankruptcy Code) that: (i) the DIP Liens, Prepetition Liens, and Adequate Protection Liens shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations, the Prepetition Secured Obligations, and/or Adequate Protection Superpriority Claims, as applicable, are indefeasibly paid and satisfied in full; and (ii) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Superpriority Claims, DIP Liens, Carve Out, Adequate Protection Superpriority Claims, Adequate Protection Liens, and the Prepetition Liens. Notwithstanding anything contained herein with respect to the obligations or limitations when a Final Order is entered, the terms of the Final Order shall be what is binding on all parties.

45.     No Modification of Interim Order.  Until and unless the DIP Obligations have been Paid in Full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facilities which survive such discharge by their terms) and all commitments to extend credit under the DIP Facilities have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agents (i) any reversal, modification, stay, vacatur, or amendment to this Interim Order or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases or Successor Cases, equal or superior to the DIP Superpriority Claims or the Adequate Protection Superpriority Claims, other than the Carve Out; (b) any order, other than this Interim Order or the Final Order, allowing use of Cash Collateral resulting from DIP Collateral; and (c) except as set forth in this Interim Order or the Final Order,

any lien on any of the DIP Collateral or Prepetition Collateral with priority equal or superior to the DIP Liens, the Adequate Protection Liens or the Prepetition Liens.

46.     <u>Interim Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents or this Interim Order, the provisions of this Interim Order shall govern and control.

47.     <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases.  Upon entry of the Final Order, the terms and provisions of this Interim Order, including, without limitation, the claims, liens, security interests, and other protections granted to the DIP Credit Parties and Prepetition Secured Creditors pursuant to this Interim Order and/or the DIP Loan Documents, notwithstanding the entry of any such order, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until (x) all DIP Obligations have been indefeasibly Paid in Full in cash and all commitments to extend credit under the DIP Facilities are terminated and (y) all Prepetition Secured Obligations have been Paid in Full.

48.     <u>Final Hearing</u>.  A final hearing to consider the relief requested in the Motion shall be held on October 9, 2024, at 11:00 a.m., prevailing Eastern Time before this Court.

49.     <u>Notice of Entry of Interim Order</u>.  The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having

been given notice of the Interim Hearing and to any party that has filed a request for notices with this Court.

50.    <u>Objections</u>.  Any party in interest objecting to the relief sought at the Final Hearing shall file a written objection no later than October 2, 2024 at 4:00 p.m., prevailing Eastern Time and serve such objection or response on the following parties: (a) proposed counsel to the Debtors, (i) Davis Polk & Wardwell, LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick, Esq., Adam L. Shpeen, Esq., Stephen D. Piraino, Esq., and Ethan Stern Esq. (notice.biglots@davispolk.com) and (ii) and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq., Andrew R. Remming, Esq., Daniel B. Butz, Esq., Tamara K. Mann, Esq., and Casey B. Sawyer, Esq. (biglots.mnat@morrisnichols.com); (b) counsel to the DIP ABL Agent and Prepetition ABL Agent, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola, Esq. (jventola@choate.com), Jonathan D. Marshall, Esq. (jmarshall@choate.com), and Jacob S. Lang, Esq. (jslang@choate.com), and Blank Rome, LLP, 1201 N. Market Street Suite 800 Wilmington, DE 19801, Attn: Regina Stango Kelbon, Esq. (regina.kelbon@blankrome.com) and Stanley Tarr, Esq. (stanley.tarr@blankrome.com); (c) counsel to the DIP Term Agent and the Prepetition Term Loan Agent, Otterbourg, P.C., 230 Park Ave Ste 29, New York, NY 10169, Attn: Chad B. Simon, Esq. (CSimon@otterbourg.com), James V. Drew, Esq. (JDrew@otterbourg.com), and Sarah L. Hautzinger, Esq. (shautzinger@otterbourg.com) and Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn: John H. Knight, Esq. (knight@rlf.com), (d) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Attn: Linda J. Casey (linda.casey@usdoj.gov); and (f) counsel to the Committee (if any). In

the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

51.     <u>Effectiveness</u>.  This Interim Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding anything to the contrary proscribed by applicable law, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

52.     <u>Retention of Jurisdiction</u>.  This Court has and will retain jurisdiction to enforce this Interim Order.

**Dated: September 10th, 2024**
**Wilmington, Delaware**

**J. KATE STICKLES**
**UNITED STATES BANKRUPTCY JUDGE**