**<u>Exhibit 1 to the Interim Order</u>**

**Proposed Lease Sale Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 ([●]) |
| | (Jointly Administered) |
| Debtors.[1] | Re: Docket No. [●] |

---

**LEASE SALE PROCEDURES FOR THE SALE OF CERTAIN LEASE ASSETS**

---

On September 10, 2024, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered the *Interim Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. [●]] (the "**Lease Sale Procedures Order**"),[2] by which the Court approved the following procedures on an interim basis. These Lease Sale Procedures set forth the process by which the Debtors are authorized to conduct auctions (each, a "**Lease Auction**") for the sale or transfer (the "**Lease Sales**") of certain unexpired leases (collectively, the "**Lease Assets**"), including with any ancillary agreement(s) thereto or through the sale of designation rights related thereto.

A.     **Lease Assets.**

The Debtors are seeking to sell all of their Lease Assets, or any portion thereof, pursuant to these Lease Sale Procedures. These Lease Assets include certain unexpired non-residential leases, free and clear of all liens, claims, interests, or other encumbrances.

B.     **Solicitation Process; Distribution of Lease Sale Procedures.**

For any sale of Lease Assets in these chapter 11 cases (these "**Chapter 11 Cases**") subject to a Lease Sale Procedure, the above-captioned debtors and debtors in possession (the "**Debtors**"),

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Lease Sale Procedures Order or the *Motion of Debtors for Entry of Interim and Final Orders (I) Establishing Procedures To Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (iii) Granting Related Relief* [Docket No. [●]], as applicable.

A&G Realty Partners, LLC ("**A&G**"), or any such other agent of the Debtors shall, at the Debtors' direction, distribute these Lease Sale Procedures to any potential interested bidders. The Debtors, in consultation with the Consultation Parties,[3] may elect to exclude any Lease Asset from these Lease Sale Procedures and sell such Lease Asset at either a private or public sale, subject to Bankruptcy Court approval of any alternative sale method. Furthermore, the Debtors, in consultation with the Consultation Parties, may determine whether to proceed with a sale of any Lease Asset.

**C.**     **Eligibility of Bidders to Participate in a Lease Auction.**

In order to be eligible to bid for the sale of any Lease Asset in these Chapter 11 Cases subject to a Lease Sale Procedure or otherwise participate in a Lease Auction (as defined below), each bidder must be determined by the Debtors, in consultation with the Consultation Parties, to be a Qualified Bidder (as defined below).

**D.**     **Qualification of Bidders.**

Each Qualified Bid (as defined below) must be made by a Qualified Bidder. In order to be considered for status as a "Qualified Bidder" and to have a Qualified Bid, a bidder must:

i.     Deliver to A&G Realty Partners, LLC, c/o Mike Matlat (mike@agrep.com) and Todd Eyler (todd@agrep.com); Tel: (631) 465-9508; with copy to the Debtors' counsel, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn.: Brian M. Resnick, Esq., Adam L. Shpeen, Esq., Stephen D. Piraino, Esq., and Ethan Stern, Esq. (notice.biglots@davispolk.com); so as to be received before **5:00 p.m. (prevailing Eastern Time) on September 16, 2024** (the "**Bid Deadline**"), a written offer to purchase the Lease Assets at issue (a "**Qualified Bid**") that:

     a.     Consists of an executed form of the assignment and assumption agreement for sale that may not deviate substantially from the terms of the form assignment and assumption agreement, substantially in the form attached hereto as **Exhibit A**, marked to show any proposed revisions, which are acceptable to the Debtors in consultation with the Consultation Parties, that provides for the purchase of the Lease Asset(s) being sold (such bidder's executed assignment and assumption agreement, the "**Bidder A&A Agreement**"); *provided* that any landlord bidding on a Lease Asset related to a property which such landlord owns shall instead provide with its Qualified Bid an executed form of the lease termination agreement that may not deviate substantially from the terms of the form lease termination agreement,

---

[3] "**Consultation Parties**" shall mean (a) Choate, Hall & Stewart LLP, as counsel to the ABL Agent; **(b)** Otterbourg P.C., as counsel to the Term Agent and (c) any official committee appointed in the Chapter 11 Cases (the "Committee"), including in each case the legal and financial advisors thereto, as applicable.

substantially in the form attached hereto as **Exhibit B**, marked to show any proposed revisions, which are acceptable to the Debtors in consultation with the Consultation Parties. Any bidder may propose to purchase more than one Lease Asset. The assignment and assumption agreement shall be marked to reflect differences as to the Lease Assets proposed to be purchased;

b.  Consists of a completed bidder registration form, substantially in the form attached hereto as **Exhibit C**, which must detail which of the Lease Assets up for sale the Qualified Bidder proposes to be assumed and assigned and provides for the payment of all Cure Costs related to such Lease Assets by the Qualified Bidder. A single bidder or group of bidders may purchase all or a portion of the Lease Assets. If a bidder or group of bidders submits an offer for a combination of Lease Assets, such bidder or group of bidders must indicate (i) if it would be willing to purchase any of such assets if not sold as a group and, if so, (ii) a schedule indicating the Bid as to any individual or sub-group of assets that such bidder would purchase. The Debtors, in consultation with the Consultation Parties, reserve the right to determine whether to auction any assets as part of a group or individually up through and including at an Auction or to conduct an Auction of any Lease Asset both individually and as part of a group in order to determine which option maximizes value of the assets;

c.  Contains no contingencies to the validity, effectiveness, and/or binding nature of the bid, including without limitation, contingencies for due diligence and inspection (other than as set forth in **Exhibit A**) or financing of any kind;

d.  Contains documentation acceptable to the Debtors, in consultation with the Consultation Parties, evidencing that the bidder has financial resources sufficient to close the transaction within fourteen (14) days after the Lease Auction which evidence may include, without limitation, evidence of cash on hand, a binding financing commitment from an established and financially sound financial institution or investment fund, and the identity of contact persons at the entity issuing such commitment letter;

e.  Demonstrates, to the Debtors' satisfaction, in consultation with the Consultation Parties, that the bidder has the legal capacity to consummate the transaction it is proposing; and

f.  Includes a statement from the bidder that: (i) it is prepared to enter into and consummate the transactions contemplated in the Bidder A&A Agreement

3

immediately upon entry by the Bankruptcy Court of an order approving the sale of Lease Assets to such bidder; and (ii) the Qualified Bid, if determined to be a Successful Bid (defined below) or Backup Bid (defined below), will then be irrevocable for a period of thirty (30) days after the conclusion of the Lease Auction;

ii.  Contemporaneous with the submission of a Bid, tender an earnest money deposit of ten percent (10.0%) of the proposed purchase price for the sale of the Lease Assets (the "**Qualified Bidder Deposit**") by cashier's or certified check or wire transfer of immediately available funds, which deposit shall be held in an interest bearing escrow account in accordance with the terms of the Bidder A&A Agreement.[4] A Qualified Bidder Deposit will be refunded only if (a) the bid corresponding to the Qualified Bidding Deposit is rejected; or (b) the bid corresponding with the Qualified Bidder Deposit is not approved by the Bankruptcy Court. The Debtors reserve the right to hold each Qualified Bidder Deposit until five (5) days after the closing of a Lease Sale of the applicable Lease Assets, but the Debtors may refund the full Qualified Bid Deposit any time after the corresponding Lease Sale Hearing. The provisions of this subparagraph D(ii) shall apply to Qualified Bidders and controls notwithstanding any conflicting provisions in the Bidder A&A Agreement.

   a.  With respect to a bid for any Lease Asset submitted by the landlord counterparty (or its affiliate) to that real property lease, the landlord may deduct from its Qualified Bidder Deposit the amount of any undisputed cure amount for the applicable Lease Asset.

iii.  By submitting a Bid, the Qualified Bidder agrees that, should such Qualified Bidder purchase the corresponding Lease Assets, such Qualified Bidder will pay all rent costs associated with such Lease Assets for the calendar month of closing on a pro rata basis from the date of closing.

iv.  Qualified Bidders must provide adequate assurance of future performance (which the Qualified Bidder agrees may be disseminated to affected landlords if such Qualified Bidders' Bid is determined to be a Qualified Bid), which may include, without limitation, information regarding the Qualified Bidders' financial condition such as tax returns, current financial statements, or bank accounts; provided that any landlord may submit

---

[4]    For the avoidance of doubt, these funds are not property of the Debtors' estates.

Qualified Bids for Lease Assets they own without providing adequate assurance of future performance.

**E.      Rejection of "Qualified Bid" Status for Non-Conforming Bids.**

The determination as to which bids qualify shall be determined by the Debtors, in consultation with the Consultation Parties. The Debtors, in consultation with the Consultation Parties, shall have the right to reject bids as non-conforming bids; *provided*, *however*, the Debtors shall have the right to negotiate with any bidder with respect to clarification of any bid. Notwithstanding anything to the contrary herein, any bid submitted by any of the Agents, or their respective designees shall be a Qualified Bid.

**F.      Due Diligence.**

Any Qualified Bidder may request diligence from the Debtors, and the Debtors, in consultation with the Consultation Parties, may grant or deny the request. The Debtors may require such Qualified Bidder to execute a non-disclosure agreement prior to providing diligence to such Qualified Bidder. All due diligence shall be completed prior to the corresponding Bid Deadline.

**G.      Bid Deadline.**

All Qualified Bids must be submitted to A&G, with copy to Debtors' counsel in accordance with paragraph D(i), so as to be actually received not later than **September 16, 2024, at 5:00 p.m. (prevailing Eastern Time)**.

**H.      Terms of Lease Auction(s).**

In the event that one or more Qualified Bids are submitted in accordance with these Lease Sale Procedures, the Debtors will conduct an auction sale of the Lease Assets (a "**Lease Auction**") on the following terms:

    i.    **Time, Date and Virtual Venue of Auction; Adjournment of Auction; Appearance of Qualified Bidders at Auction.** Each Auction will be held virtually. An Auction will be conducted on **September 18, 2024, at 10:00 a.m. (prevailing Eastern Time)**. The Debtors will send written notice of the date, time, and virtual venue of each Lease Auction to the Qualified Bidders no later than two business days before such Lease Auction, and file a notice of the date, time, and virtual venue of each Lease Auction with the Court no later than two business days before such Lease Auction and post such notice on the Debtors' Case Website: https://www.cases.ra.kroll.com/BigLots. The Debtors, in consultation with the Consultation Parties, may modify the date, time, and virtual venue of each Lease Auction by providing written notice to Qualified Bidders and filing a notice with

the Court so long as such notice is no later than two days before the corresponding Lease Auction.

ii.     **Permitted Attendees at Lease Auction.** Unless otherwise ordered or directed by the Bankruptcy Court, only representatives of the Debtors, the Consultation Parties, the Office of the United States Trustee for the District of Delaware, any statutory committee appointed in these Chapter 11 Cases, any landlord with an interest in the Lease Assets set for a Lease Auction, any other parties invited specifically by the Debtors, and any Qualified Bidders (and the professionals for each of the foregoing) shall be entitled to attend a Lease Auction; *provided that*, only Qualified Bidders shall be entitled to bid at a Lease Auction.

iii.    **Lease Auction Bid Submission Procedures.** Lease Auction bidding shall be subject to the following procedures:

   a.  For a Qualified Bid to be considered and in order for a Qualified Bidder to further bid at a Lease Auction, Qualified Bidders must appear in person at the Lease Auction, or through a duly authorized representative, unless alternative arrangements are agreed upon in advance by the Debtors.

   b.  Only Qualified Bidders shall be entitled to make any subsequent bids at a Lease Auction.

   c.  Bidding will commence with the announcement of the highest and best Qualified Bid with respect to each Lease Asset or group thereof, which shall be determined by the Debtors in their business judgment in consultation with the Consultation Parties.  Any Qualified Bidder may then submit successive bids in minimum increments, which will be determined by the Debtors, in consultation with the Consultation Parties, at the corresponding Lease Auction depending on the total dollar value of the Lease Assets being sold (the "**Minimum Overbid Amount**").  The Minimum Overbid Amount may be different with respect to each asset or group of assets being auctioned.

   d.  If one or more Qualified Bids are received by the Debtors, each such Qualified Bidder shall have the right to improve its respective bid at the corresponding Lease Auction.

e.  Each successive bid submitted by any bidder at any Lease Auction must contain an actual cash purchase price that exceeds the then existing highest bid by at least the Minimum Overbid Amount.

f.  At commencement of the Lease Auction, the Debtors, in consultation with the Consultation Parties, may announce procedural and related rules governing such Lease Auction, including time periods available to all Qualified Bidders to submit successive bid(s) in an amount equivalent to at least the Minimum Overbid Amount.

iv.  **No Collusion.** Each Qualified Bidder participating at the Lease Auction will be required to confirm on the record at the Lease Auction that (i) it has not engaged in any collusion with respect to the bidding and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

v.  **Selection of Successful Bid.** The Lease Auction shall continue until there is only one bid remaining to purchase a certain portion or all of the Lease Assets that the Debtors determine in consultation with the Consultation Parties, subject to Bankruptcy Court approval, is the highest and/or best Qualified Bid (such bid, the "**Successful Bid**" and such bidder, the "**Successful Bidder**"). For the avoidance of doubt, if there are any Qualified Bids for different portions of the Lease Assets, there may be multiple Successful Bidders. In making this decision, the Debtors, in consultation with the Consultation Parties, shall consider the amount of the purchase price, the form of consideration being offered, the contents of the Bidder A&A Agreement, the likelihood of such Qualified Bidder's ability to close the transaction, the timing thereof, and the net benefit to the Debtors' estates. The Debtors, in consultation with the Consultation Parties, reserve the right to select the Successful Bid, even if it is not the highest bid. The Debtors, in consultation with the Consultation Parties, reserve the right to not select any Successful Bid or Successful Bidder with respect to any Lease Asset or group thereof. The Successful Bidder shall have such rights and responsibilities of the purchaser, as set forth in the Bidder A&A Agreement. Prior to the corresponding Lease Sale Hearing, the Successful Bidder shall complete and execute a final and revised Bidder A&A Agreement, as necessary to conform to the terms of each Lease Auction, and all other agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made (such documents collectively, the "**Successful Bidder Sale Documents**"). The

Successful Bid shall be irrevocable for a period of thirty (30) days after the conclusion of the corresponding Lease Auction.

vi.    **Selection of Backup Bidder.** The bidder of the second highest and best bid for a portion or all of the Lease Assets, as determined by the Debtors in consultation with the Consultation Parties, may be deemed a backup bidder (such bidder the "**Backup Bidder**" and such bid the "**Backup Bid**"). For the avoidance of doubt, if there are Qualifying Bids for different portions of the Lease Assets, there may be multiple Backup Bidders. If the Debtors, in consultation with the Consultation Parties, so designate a bidder as a Backup Bidder, such Backup Bidder shall be required to complete and execute an assignment and assumption agreement in form and substance reasonably acceptable to the Debtors, in consultation with the Consultation Parties, memorializing, among other things, the amount of the Backup Bid (the "**Backup Bidder A&A Agreement**"). Upon the failure of the Successful Bidder to timely consummate its purchase of the Lease Assets, pursuant to the terms of the Successful Bidder Sale Documents, the Debtors, in consultation with the Consultation Parties, shall be empowered to effect the sale pursuant to the Backup Bidder A&A Agreement, without further order from the Bankruptcy Court. The Backup Bidder A&A Agreement shall be irrevocable for a period of thirty (30) days after the conclusion of the corresponding Lease Auction.

vii.    **Irrevocability of Bids; Rejection of Bids.** **A Qualified Bid must be irrevocable unless and until the Debtors accept a higher Bid and such Qualified Bidder is not selected as the Backup Bidder.** Unless determined by the Debtors, in consultation with the Consultation Parties, to be the Successful Bid or Backup Bid, all other Qualified Bids and all other successive bids at a Lease Auction shall be deemed rejected at the conclusion of such Lease Auction.

I.    **Lease Sale Hearing.**

The Bankruptcy Court shall hold a Lease Sale Hearing (i) on **September 30, 2024, at 11:00 a.m. (prevailing Eastern Time)**, to approve the Lease Sale of the Lease Assets, if any. The Lease Sale Hearing will be held at the United States Bankruptcy Court for the District of Delaware. At the Lease Sale Hearing, the Debtors will seek entry of an order approving and authorizing the proposed sale to the Successful Bidder(s), if any. The Debtors shall also notify the Bankruptcy Court of the Backup Bidder(s), if any. The Debtors, in consultation with the Consultation Parties, shall ascertain whether the Successful Bidder(s) and the Backup Bidder(s) are insiders of one or more of the Debtors, whether each applicable Lease Sale represents an arm's-length transaction between the parties, made without fraud or collusion, and whether there has been any attempt by either party to take any unfair advantage of the other such that a Successful Bidder or Backup

Bidder may be deem to be purchasing the Lease Assets in good faith pursuant to 11 U.S.C. § 363(m). At the Lease Sale Hearing, the Debtors shall make a record of these findings and any order approving the Lease Sales shall include such findings in order to approve the sale to the Successful Bidder(s) or Backup Bidder(s), pursuant to 11 U.S.C. § 363(m). The Lease Sale Hearing may be adjourned or rescheduled without notice other than by announcement of the adjourned date at such Lease Sale Hearing or the Debtors', in consultation with the Consultation Parties, filing notice of a rescheduled Lease Sale Hearing with the Court.

**J.      Closing.**

The closing of the sale of the Lease Assets will occur no later than fourteen (14) days after the Lease Auction, unless otherwise extended by the Debtors, in consultation with the Consultation Parties, in accordance with the terms of the Successful Bidder Sale Documents or the assignment and assumption agreement of the entity otherwise authorized by the Bankruptcy Court to purchase the Lease Assets, as applicable. Upon the closing, the proceeds of the Lease Sales shall be payable in accordance with the DIP Orders and the Approved Budget (as defined in the DIP Orders).

**K.      Disclosures.**

Qualified Bidders shall disclose to the Debtors all communications with other Qualified Bidders following the submission of a Qualified Bid until the sale of the Lease Assets is consummated.

**L.      Commissions.**

The Debtors shall be under no obligation to pay commission to any agent or broker, with the exception of A&G. All commissions, fees, or expenses for agents, other than A&G, may be paid by bidders at such bidder's discretion. In no case shall any commissions, fees, or expenses be deducted from the proceeds of the sale of the Lease Assets or an agreed Successful Bid.

**M.      No Representation; Qualified Bidder's Duty to Review.**

The Debtors are not making and have not at any time made any warranties or representations of any kind or character, express or implied, with respect to the Lease Assets, including, but not limited to, any warranties or representations as to habitability, merchantability, fitness for a particular purpose, title, zoning, tax consequences, latent or patent physical or environmental condition, utilities, operating history or projections, valuation, governmental approvals, the compliance of the Lease Assets with governmental laws (including, without limitation, accessibility for handicapped persons), the truth, accuracy or completeness of any documents related to the Lease Assets, or any other information provided by or on behalf of the Debtors to a bidder, or any other matter or thing regarding the Lease Assets. All bidders must acknowledge and agree that upon closing the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the Lease Assets "AS-IS, WHERE IS, WITH ALL FAULTS," except to the extent expressly provided otherwise in the Bankruptcy Court's order approving the Lease Sale. All bidders must agree that they have not relied on and will not rely on, and the Debtors are not liable for or bound by, any express or implied warranties, guaranties,

statements, representations, or information pertaining to the Lease Assets or relating thereto (including specifically, without limitation, information regarding the Lease Assets distributed with respect to such real estate) made or furnished by the Debtors or any real estate broker or agent representing or purporting to represent the Debtors, to whomever made or given, directly or indirectly, orally or in writing, unless specifically set forth in the Bankruptcy Court's order approving the Lease Sale.

**N.      Reservation of Rights.**

The Debtors, in consultation with the Consultation Parties, reserve their rights to modify these Lease Sale Procedures in their business judgment in any manner that will best promote the goals of these Lease Sale Procedures, or impose, at or prior to any Lease Auction, additional customary terms and conditions on Lease Sales, including, without limitation: (a) extending the deadlines set forth in these Lease Sale Procedures; (b) adjourning such Lease Auction at the corresponding Lease Sale Hearing; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting such Lease Auction; (d) canceling such Lease Auction; and (e) rejecting any or all Bids or Qualified Bids.  Nothing in these Lease Sale Procedures shall abrogate the fiduciary duties of the Debtors.

**O.      Consent to Jurisdiction.**

All Qualified Bidders at each Lease Auction shall be deemed (i) to have consented to the jurisdiction of the Court and (ii) to have waived any right to a jury trial in connection with any disputes relating to such Lease Auction and the construction and enforcement of these Lease Sale Procedures.

**P.      Return of Qualified Bidder Deposit.**

The Qualified Bidder Deposit of a Successful Bidder shall be applied to the purchase price of such transaction at closing.  The Qualified Bidder Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on the date that is five business days after the close of the Sales, or as soon as is reasonably practicable thereafter.  Upon the return of the Deposits, the applicable Qualified Bidders shall receive any and all interest that will have accrued thereon.

If a Successful Bidder (or Backup Bidder, as applicable) fails to consummate a proposed transaction because of a breach of, or default or failure to perform under, any Successful Bidder Sale Documents or the terms of these Sales Procedures by such Successful Bidder (or Backup Bidder, as applicable), the Qualified Bidder Deposit shall be released to the Debtors and the Debtors shall not have any obligation to return the Qualified Bidder Deposit deposited by such Successful Bidder (or Backup Bidder, as applicable).  Such Qualified Bidder Deposit released to the Debtors may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and their estates, and the Debtors

shall be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

**Q.**     **Fiduciary Out.**

Nothing in these Lease Sale Procedures shall require the Debtors' management or board of directors to take any action, or to refrain from taking any action, with respect to these Lease Sale Procedures, to the extent the Debtors' management or board of directors determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

**<u>EXHIBIT A TO THE LEASE SALE PROCEDURES</u>**

**ASSUMPTION AND ASSIGNMENT AGREEMENT**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "**Agreement**"), dated as of _____, 2024, is by and between _____ ("**Assignor**") and _____ ("**Assignee**"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), jointly administered under case *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "**Chapter 11 Cases**"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto (the "**Assigned Asset(s)**" or the "**Lease(s)**") with respect to the premises set forth on Schedule A (the "**Premises**"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "**Lease Sale Procedures**") subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.    Assignment and Assumption.

(a)    Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s).

(b)    Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset(s).

2.    Payment of Purchase Price. Assignee shall, on the date hereof, deliver the purchase price for the Assigned Asset(s) in the amount of _____ (the "**Purchase Price**") in immediately available funds wired to the account specified by Assignor.  If the assumption and assignment of the Assigned Asset(s) do(es) not occur by _____, 2024, Assignee will additionally reimburse Assignor for all amounts that came due, were required to be paid, and were in fact paid in connection with the Assigned Asset(s) on and after _____, 2024.

3.     <u>Assumption of Liabilities</u>. In addition to assuming all remaining obligations that exist with respect to the Assigned Asset(s), including, but not limited to, accrued but unbilled adjustments for common area maintenance, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Assigned Asset(s).

4.     <u>No Further Liability of Assignor</u>. From and after the date hereof, Assignor shall have no further obligations and duties with respect to the Assigned Asset(s).

5.     <u>Further Assurances</u>. At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

6.     <u>"As Is Where Is" Transaction</u>. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s).  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s).  Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

7.     <u>Compliance With Law</u>. Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

8.     <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

9.     <u>Jurisdiction.</u> The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10.     <u>No Reliance</u>. Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party

is relying on any representation or statement made by any other Party or any person representing such other Party.

11.    <u>Construction</u>. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12.    <u>Execution in Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**[COMPANY]**

By_____
Name_____
Its_____

**ASSIGNEE:**
**[ASSIGNEE]**

By_____
Name_____
Its_____

3

**Schedule A to the Assumption and Assignment Agreement**

**Description of Lease Asset(s)**

**<u>EXHIBIT B TO THE LEASE SALE PROCEDURES</u>**

**LEASE TERMINATION AGREEMENT**

# LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "**Agreement**") is made as of this ____ day of _____, 2024 between _____ "**Landlord**") and _____ ("**Tenant**") or "**Debtor**").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated ____ (the "**Lease**"), covering certain premises located at _____ (the "**Premises**"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

WHEREAS, the Parties desire to enter into this Agreement, for among things, Landlord is restored to possession of the Premises as of the Termination Date, the parties release the other and Landlord is able to dispose of any remaining equipment at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.      Recitals.  The Recitals are incorporated herein as if set forth at length.

2.      Lease Termination.  The Lease is terminated effective _____ (the "**Termination Date**").

3.      Consideration.  Landlord shall pay to Tenant $_____.

4.      Landlord Release of Tenant. For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action,

debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

5.      <u>Tenant Release of Landlord</u>. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

6.      As further consideration for this Release, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7.      In this connection, the parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that this Release has been negotiated and agreed upon in light of that realization and that, except as expressly limited above, it nevertheless hereby intends to release,

discharge, and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.      <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)      Tenant has delivered possession of the Premises to Landlord;

(b)      Tenant has delivered to Landlord the keys and access codes to the Premises;

(c)      An order has been entered by the Bankruptcy Court approving the entirety of this Agreement.

9.      [Reserved]

10.      <u>Authority to Settle</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.      <u>Entire Agreement</u>. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement.  Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.      <u>Advice of Counsel</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    <u>Attorneys' Fees</u>. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document.  Further, each of the parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.    <u>Governing Law.</u> This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.    <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.    <u>Miscellaneous</u>.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement.  Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)     The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel.  Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply.  Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

5

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**[LANDLORD]**

By:_____

Print Name:_____

Its:_____

**[TENANT]**

By:_____

Print Name:_____

Its:_____

## <u>EXHIBIT C TO THE LEASE SALE PROCEDURES</u>

### BIDDER REGISTRATION FORM

## EXHIBIT C TO LEASE SALE PROCEDURES

## OFFER AND QUALIFIED BIDDER FORM

Bidder,_____, hereby:

Offers to purchase the following Lease Asset(s) for the bid set forth below, pursuant to this Offer and Qualified Bidder Form and the terms and conditions of the accompanying Assumption and Assignment Agreement, and

Seeks to become a Qualified Bidder pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* subject to approval by the United States Bankruptcy Court for the District of Delaware in the Chapter 11 Cases jointly administered under *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "**Lease Sale Procedures**").

Bidder's offer is for the following Lease Assets at the following bids:

| LEASE ASSET | BID/PURCHASE PRICE |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| 6. | |
| 7. | |
| 8. | |
| **Aggregate Purchase Price:** | |

**Bidder hereby warrants and represents as follows:**

(a)  Bidder has received, reviewed, understands, and agrees to abide by the terms and conditions of the Lease Sale Procedures, the terms and conditions of which are incorporated herein by reference.

(b)  Bidder has received, reviewed, and understands the terms and conditions of the Assumption and Assignment Agreement, the terms and conditions of which are incorporated herein by reference.

(c)  To the extent that the words and phrases which are capitalized in this Offer and Qualified Bidder Form have been defined in the Lease Sale Procedures or in the Assumption and Assignment Agreement, those definitions are incorporated herein by reference.

(d)  Each Bid made at a Lease Auction shall constitute a binding, irrevocable "Bid" pursuant to the Lease Sale Procedures.

(e)  Each Bid is and shall be a good faith, bona fide, irrevocable offer to purchase the Lease Asset(s) on an as-is, where-is basis, with no contingencies.

(f)  Bidder (a) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Lease Asset(s) in making its offer; (b) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Lease Asset(s) or the completeness of any information provided in connection therewith or the Lease Auction other than as provided in the Assumption and Assignment Agreement; (c) is not entitled to any break-up fee, termination fee, expense reimbursement, or similar type of payment; and (d) by submitting an Assignment and Assumption Agreement, waives, and shall be deemed to waive, the right to pursue a substantial contribution claim under section 503 of title 11 of the United States Code (the "**Bankruptcy Code**") related in any way to the submission of its bid, the Lease Sale Procedures, or any earnest money Deposit.

(g)  Bidder is either not represented by a broker seeking a commission, or if Bidder is represented by a broker, Bidder exclusively authorizes broker to submit such offer on behalf of Bidder and that any commission or fee of any type due and payable to such broker as a result of a Lease Sale shall be paid solely by Bidder and Bidder shall indemnify the Debtors and their agents in this regard, and (ii) Bidder acknowledges that it will comply with the Lease Sale Procedures.

(h)  Bidder acknowledges that, pursuant to, inter alia, 18 U.S.C. § 371, it is a federal crime to engage in collusive bidding or to chill the bidding.

(i)  Bidder confirms that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Lease Sale.

(j)  Identification of how the Bidder will pay the purchase price at Closing.

*[Signatures appear on following page]*

2

AGREED & ACCEPTED this _____ day of _____, 2024

Company: _____

By:_____

Name:_____

Title:_____

_BIDDER I.D._

Bidder's Company: _____

Bidder's Address:_____

_____

Bidder's Contact:_____

_____

Bidder's Phone & Facsimile Numbers:_____

_____

Bidder's Email Address: _____

| Bidder's | Tax | ID | Number: |
|---|---|---|---|

_____

_ATTORNEY OR AUTHORIZED AGENT I.D._

Attorney or Agent Name:_____

_____

Law Firm or Company: _____

Address:_____

_____

Phone & Facsimile Numbers:_____

_____

Email Address: _____

3