IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: Docket No. 18** |

**DECLARATION OF ADAM RIFKIN IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF DEBTORS' ASSETS, (B) APPROVING THE STALKING HORSE BID PROTECTIONS, (C) SCHEDULING AUCTION FOR, AND HEARING TO APPROVE, SALE OF DEBTORS' ASSETS, (D) APPROVING FORM AND MANNER OF NOTICES OF SALE, AUCTION, AND SALE HEARING, AND (E) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (II)(A) APPROVING SALE OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES AND (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

I, Adam Rifkin, declare as follows:

1. I am a Senior Managing Director at Guggenheim Securities, LLC ("**Guggenheim Securities**"), an investment banking firm with principal offices located at 330 Madison Avenue, New York, NY, 10017. Guggenheim Securities is the proposed investment banker for the debtors

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

1

and debtors in possession (collectively, the "**Debtors**")[2] in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").[3]

2.  I submit this declaration (this "**Declaration**") in support of the *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures, (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (the "**Motion**").[4]

3.  Although Guggenheim Securities is expected to be compensated for its work as the Debtors' proposed investment banker in the Chapter 11 Cases, I am not compensated separately for this Declaration or testimony. Except as otherwise indicated herein, all of the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, the information provided to me by Guggenheim Securities professionals involved in advising the Debtors in the Chapter 11 Cases, or information provided to me by the Debtors. If called upon to testify, I could and would testify to the facts set forth herein on that basis. I am over the age of 18 years and am authorized to submit this Declaration.

---

[2] The Debtors and their direct and indirect subsidiaries are collectively referred to herein as "**Big Lots**" or the "**Company**."

[3] The Debtors anticipate filing an application to retain Guggenheim Securities as their investment banker, effective as of the commencement of the Chapter 11 Cases, shortly hereafter.

[4] Capitalized terms used but not defined otherwise herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

**Qualifications**

4. I have been employed at Guggenheim Securities since 2013. I have over twenty-seven years of experience, including as an investment banker advising companies in the retail and consumer sectors. My areas of expertise include, among other things, (a) M&A and asset sales, (b) analyzing business plans and related financial projections for companies, (c) developing valuations, and (d) sizing, structuring, raising, and executing all aspects of financing transactions. Among others, I have represented Rite-Aid, Walmart, Cabela's Inc, Lifetime Group Holdings Inc, At Home Group Inc, Planet Fitness, Academy Sports and Outdoors Inc, Pier 1 Imports, and California Pizza Kitchen.

5. Prior to joining Guggenheim Securities, I was a Managing Director and senior member of the Retail / Consumer investment banking team at Barclays. Prior to joining Barclays, I was a Senior Vice President at Lehman Brothers. Prior to working at Lehman Brothers, I worked as a Vice President at Credit Suisse. I graduated with a B.A. in Economics from Brandeis University. I am a member of the Board of Trustees at Brandeis University.

**The Retention of Guggenheim Securities**

6. Guggenheim Securities has been engaged as investment banker to the Debtors, and members of my team and I have been working closely with the Debtors, since May 2024. Since being engaged by the Debtors, Guggenheim Securities has rendered investment banking advisory services to the Debtors in connection with the Debtors' (a) evaluation of financing and strategic alternatives in light of their financial position and (b) marketing process for the sale of the Bid Assets. Additionally, Guggenheim Securities has worked with the Debtors' management team and other professionals retained by the Debtors and has become familiar with the Debtors' capital structure, financial condition, liquidity needs, and business operations.

**The Marketing and Sale Process**

7. As noted in the Motion, the Debtors commenced these Chapter 11 Cases to complete the prepetition marketing and sale process that they initiated with the intent to consummate a value-maximizing sale transaction of the Bid Assets for the benefit of the Debtors' stakeholders. Specifically, the Debtors, with the assistance of Guggenheim Securities, conducted a prepetition marketing process, in respect of which informal outreach began in early June 2024, with a formal process commencing in July 2024. In connection therewith, 18 potential strategic and financial purchasers were contacted with respect to a sale of all or some of the Bid Assets. The Debtors, with the assistance of Guggenheim Securities, also responded to all incoming inquiries regarding potential sale transactions. Of these 18 potential purchasers, 12 entities executed non-disclosure agreements with Big Lots, following which they were provided with a confidential information memorandum and granted access to a virtual data room containing confidential information regarding the Bid Assets. In addition, such entities were provided with a form of asset purchase agreement and offered management meetings and discussions. The Stalking Horse Bidder was one of the 18 potential parties contacted, who, having signed a non-disclosure agreement, was given access to these confidential materials.

8. Given the Debtors' recent performance trends and financial circumstances, in connection with the foregoing marketing and sale process, the potential purchasers were instructed to submit definitive proposals for the Bid Assets by marking up the form of asset purchase agreement shared with them and returning to the Debtors such version thereof that they would be prepared to sign. Although several parties expressed interest in acquiring all or part of the Bid Assets, Gateway BL Acquisition, LLC, an affiliate of Nexus Capital Management LP ("**Nexus**") was the only party to send back a proposed stalking horse asset purchase agreement. Given the

foregoing, the Debtors proceeded to negotiate the terms of the Stalking Horse APA with Nexus as discussed further below. As noted in the Motion, Nexus' proposed stalking horse bid (the "**Stalking Horse Bid**") contemplates the purchase of substantially all of the Bid Assets for an aggregate purchase price (subject to certain adjustments) of approximately $760 million, consisting of $2.5 million in cash plus the Debt Payoff Amount (as defined in the Stalking Horse APA) and the assumption of certain liabilities.

9. Following the approval of the proposed Bidding Procedures, the Debtors, with the assistance of Guggenheim Securities and the Debtors' other advisors, expect to continue marketing the Bid Assets to potential buyers and to continue facilitating access to diligence materials, including by (a) engaging potential parties that may have an interest in bidding for the Bid Assets or a portion thereof, (b) providing access to the data room (to those parties that have executed a confidentiality agreement with the Debtors), (c) providing information packets to potential purchasers, and/or (d) conducting meetings with Big Lots' management, as appropriate.

**The Bidding Procedures and the Selection of the Stalking Horse Bidder**

10. As noted in the Motion, the Debtors seek approval of the Bidding Procedures to facilitate a value-maximizing sale of the Bid Assets in a timely and efficient manner. As more fully described in the Motion, the Bidding Procedures contain provisions relating to, among other things, (a) the Bid Assets available for sale, (b) the manner in which bids and bidders become "qualified," (c) the provision of diligence by the Debtors to bidders, (d) the receipt and negotiation of bids received, (e) the conduct of any Auction, (f) the selection and approval of the Successful Bidder(s) and Successful Bid(s) and Alternate Bidder(s) and Alternate Bid(s), (g) the designation and approval of the Stalking Horse Bidder, Stalking Horse APA, and Bid Protections, and (h) the funding of the Wind-Down Budget (as defined in Section 4 of the Bidding Procedures).

11. In addition, as noted in the Motion, the Bidding Procedures contain the following proposed dates and deadlines:

| | |
|---|---|
| **October 8, 2024** | Target date for the Debtors to file Potential Assumed Contracts Schedule |
| **October 9, 2024 at 1:00 p.m. (prevailing Eastern Time)** | Hearing to consider approval of the Bidding Procedures and Stalking Horse Bidder's Bid Protections for entry of the Bidding Procedures Order |
| **October 15, 2024 at 5:00 p.m. (prevailing Eastern Time)** | Bid Deadline |
| **October 18, 2024 at 10:00 a.m. (prevailing Eastern Time)** | Auction (if any) to be held at the New York offices of Davis Polk & Wardwell LLP |
| **October 21, 2024 at 4:00 p.m. (prevailing Eastern Time)** | Cure Objection Deadline (as defined below) |
| **October 22, 2024** | Target date for the Debtors to file with the Court the Notice of Successful Bidder (as defined below) |
| **October 25, 2024 at 4:00 p.m. (prevailing Eastern Time)** | Deadline to object to the Sale Transaction to the Successful Bidder; and the Assumption and Assignment Objection Deadline (as defined below) |
| **November 4, 2024 at 10:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Debtors may reasonably be heard** | Hearing to consider approval of the Sale Transaction(s) and for entry of the Sale Order(s) |

12. Further, as noted in the Motion, the Debtors seek authority to enter into the Stalking Horse APA with Nexus and, in connection therewith, the Debtors are also seeking approval of certain Bid Protections. Specifically, as noted in the Motion, the Bid Protections include (a) the payment of a Break-Up Fee in an amount equal to $7.5 million and (b) Expense Reimbursement of the reasonable and documented fees and out-of-pocket expenses actually incurred by the Stalking Horse Bidder in an amount up to $1.5 million.

13.     Based on my experience, I believe that the proposed Bidding Procedures have been designed with the intent to maximize the value received for the Bid Assets by facilitating a competitive Bidding Process in which Potential Bidders are encouraged to participate and submit competing bids within the specified time frame (as required by the DIP Milestones).  Additionally, given the prepetition marketing process undertaken, as well as the post-petition marketing process contemplated to be undertaken (both as described above), including the number of parties that I understand the Debtors and their advisors have contacted and expect to contact and the amount of diligence materials anticipated to be made available to such Potential Bidders, it is my view (based on my experience as an investment banker) that the proposed Bidding Procedures are reasonable under the circumstances of the Chapter 11 Cases.

14.     With respect to the Bid Protections, in my experience, stalking horse bidders typically require bid protections similar to the type of Bid Protections set forth in the proposed Bidding Procedures (including both the Break-Up Fee and Expense Reimbursement) and that such terms are customary and usual under the circumstances.  Here, the negotiations around the Stalking Horse APA extended for multiple weeks.  In my view, based solely on the discussions that I participated in and observed during the course of these negotiations, I believe these negotiations were conducted at arm's length and that the Bid Protections were an integral component of the overall terms of the Stalking Horse APA specifically required by Nexus.

15.     Finally, the timeline proposed by the Debtors in the Bidding Procedures provides for approximately 18 weeks between the start of the outreach in early June and the Bid Deadline. Under the circumstances described herein and in the Motion, I believe that, based on my experience as an investment banker, this timeline provides the Debtors with a reasonable amount of time to conduct a marketing process for the Bid Assets and to solicit and potentially select such

higher or otherwise better potential offers for the Bid Assets that may then be reasonably available under the circumstances. Additionally, at the Auction, as set forth in the proposed Bidding Procedures, the Debtors would have an opportunity to consider all potential competing offers and select (in consultation with the Consultation Parties) the offer for the Bid Assets that they deem to be the higher or otherwise better such offer.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 17, 2024

By: /s/ *Adam Rifkin*
Adam Rifkin
Senior Managing Director
Guggenheim Securities, LLC