## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

BIG LOTS, INC., *et al.*,

Debtors.[1]

Chapter 11

Case No. 24-11967 (JKS)

(Jointly Administered)

**Hearing Date:**
**October 9, 2024 at 1:00 p.m. (ET)**

**Objection Deadline:**
**October 2, 2024 at 4:00 p.m. (ET)**

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP AS FINANCIAL ADVISOR FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE

The above-captioned debtors (collectively, the "**Debtors**"), respectfully state the following

in support of this application (the "**Application**"):

1.     The Debtors seek entry of an order (the "**Proposed Order**"), substantially in the

form attached hereto as **Exhibit A**, authorizing the Debtors to retain and employ AlixPartners,

LLP ("**AlixPartners**") as financial advisor for the Debtors in connection with these chapter 11

cases ("**Chapter 11 Cases**"), pursuant to the terms of the engagement letter by and among the

Debtors and AlixPartners, dated as of September 4, 2024 (the "**Engagement Letter**"), a copy of

which is attached hereto as **Exhibit B**, and for related relief, in each instance effective as of the

Petition Date (as defined below).  In support of this Application, the Debtors submit the declaration

---

[1]     The debtors and debtors in possession in the chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows:  Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

of Kent Percy, a Partner and Managing Director of AlixPartners, LLP (the "**Percy Declaration**"), attached hereto as __Exhibit C__.

### __Jurisdiction and Venue__

2.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and, under Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue of these cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 327(a), 330, and 1107(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules 2014-1 and 2016-1.

### __Background__

5.      On September 9, 2024, (the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.  The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being administered jointly.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in

2

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

6.      Big Lots is a one-stop shop home discount retailer.  Big Lots' mission is to help customers "Live Big and Save Lots" by offering bargains on everything for their homes, including furniture, décor, pantry essentials, kitchenware, groceries, and pet supplies.  Headquartered in Columbus, Ohio, Big Lots operates more than 1,300 stores across 48 states in the United States, as well as an ecommerce store with expanded fulfillment and delivery capabilities.

7.      A comprehensive description of the Debtors' businesses and operations, capital structure, and the events leading to the commencement of these Chapter 11 Cases can be found in the *Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings* [Docket No. 3] (the "**First Day Declaration**"), which is incorporated herein.

## Relief Requested

8.      Pursuant to sections 327(a), 330 and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-1, the Debtors respectfully request entry of an order authorizing the employment and retention of AlixPartners as financial advisor for the Debtors effective as of the Petition Date, in accordance with the terms of the Proposed Order and the Engagement Letter.

## AlixPartners' Qualifications

9.      AlixPartners is an internationally recognized restructuring and turnaround firm with substantial experience in providing financial advisory services and has an excellent reputation for its work in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.  In light of the size and complexity of these Chapter 11 Cases, the Debtors require a qualified and experienced financial advisor with the resources, capabilities, and

experience of AlixPartners to assist them in taking steps that are crucial to the success of these Chapter 11 Cases. AlixPartners performs critical services that complement the services provided by the Debtors' other professionals.

10.     AlixPartners has assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to these Chapter 11 Cases. AlixPartners' professionals have provided restructuring or crisis management services in numerous large cases, including recent filings in this district. *See, e.g.*, *In re DermTech Inc.*, No. 24-11378 (JTD) (Bankr. D. Del. July 15, 2024); *In re NanoString Techs., Inc.*, No. 24-10160 (CTG) (Bankr. D. Del. Mar. 13, 2024); *In re Cano Health, Inc.*, No. 24-10164 (KBO) (Bankr. D. Del. Mar. 5, 2024); *In re Mallinckrodt plc*, No. 23-11258 (JTD) (Bankr. D. Del. Oct. 2, 2023); *In re KDC Agribusiness LLC*, No. 23-10786 (CTG) (Bankr. D. Del. Jul. 18, 2023); *In re Clovis Oncology, Inc.*, No. 22-11292 (JKS) (Bankr. D. Del. Jan. 20, 2023); *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. Jan. 20, 2023); *In re Phoenix Services Topco, LLC*, No. 22-10906 (MFW) (Bankr. D. Del. Oct. 25, 2022); *In re Kabbage Inc. d/b/a KServicing*, No. 22-10951 (CTG) (Bankr. D. Del. Oct. 21, 20220; *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Oct. 7, 2022); *In re MD Helicopters, Inc.,* No. 22-10263 (KBO) (Bankr. D. Del. Apr. 25, 2022); *In re Alto Maipo Delaware LLC*, No. 21-11507 (KBO) (Bankr. D. Del. Dec. 16, 2021); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Dec. 8, 2021); *In re Alpha Latam Mgmt., LLC*, No. 21-11109 (JKS) (Bankr. D. Del. Sept. 15, 2021); *In re Nine Point Energy, LLC*, No. 21-10570 (MFW) (Bankr. D. Del. Apr. 20, 2021); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Apr. 13, 2021); *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Nov. 19, 2020); *In re RGN-Grp. Holdings, LLC*, No. 20-11961 (BLS) (Bankr. D. Del. Sept. 15, 2020); *In re Skillsoft Corp.*, No. 20-11532 (MFW) (Bankr.

4

D. Del. July 23, 2020); *In re Celadon Grp., Inc.*, No. 19-12606 (KBO) (Bankr. D. Del. Jan. 3, 2020); *In re Bumble Bee Parent, Inc.*, No. 19-12505 (LSS) (Bankr. D. Del. Dec. 26, 2019).

11.     In addition to AlixPartners' experience and reputation for providing financial advisory services in large, complex chapter 11 cases, AlixPartners has performed prepetition work for the Debtors since April 2024.  As a result, AlixPartners has acquired significant knowledge of the Debtors and their businesses, and familiarity with the Debtors' financial affairs, debt structure, operations, and related matters.  Likewise, in providing prepetition services to the Debtors, AlixPartners' professionals have worked closely with the Debtors' management and their other advisors.  Accordingly, AlixPartners has experience, expertise, and specifically relevant knowledge regarding the Debtors that will assist it in providing effective and efficient services in these Chapter 11 Cases.  The Debtors submit that the retention of AlixPartners on the terms and conditions set forth herein is necessary and appropriate, in the best interest of the Debtors, their estates, and all parties in interest, and should be granted in all respects.

12.     If the Application is approved, the individuals working on this matter (the "**AlixPartners Personnel**"), all with substantial expertise in the areas discussed above, will continue to provide necessary services to the Debtors.  Such personnel will work closely with the Debtors' management and other professionals throughout the reorganization process.  By virtue of the expertise of its restructuring personnel and the significant prepetition work that AlixPartners performed for the Debtors during its prepetition representation of the Debtors, AlixPartners is well-qualified to provide services to and represent the Debtors' interests in these Chapter 11 Cases.

## Services to be Provided

13.     Prior to the Petition Date, the Debtors and AlixPartners entered into the Engagement Letter, which governs the relationship between them.  The terms and conditions of

the Engagement Letter were negotiated between the Debtors and AlixPartners and reflect the

parties' mutual agreement as to the substantial efforts that will be required in this engagement.

Subject to further order of the Court, AlixPartners may provide the services described in the

Engagement Letter as AlixPartners and the Debtors shall deem appropriate and feasible in order

to advise the Debtors in the course of these Chapter 11 Cases, including, but not limited to, the

following:

- Assist the Debtors with development of their rolling 13-week cash receipts and disbursements forecasting, including through the use of a tool designed to provide on-time information related to the Debtors' liquidity.

- Support the Debtors' financial and treasury functions including, without limitation, by assisting in cash management strategies, planning, general accounting, financial reporting information management and strengthening the core competencies of the finance organization.

- Work with management of the Debtors to obtain covenant relief from their bank lenders and other creditors.

- Work with the Debtors to identify, implement, and monitor both short-term and long-term liquidity generating initiatives.

- Assist the Debtors with analyzing performance improvement and cash enhancement opportunities, including assisting with cost reduction initiatives, operational improvement initiatives, accounts receivable management and accounts payable process improvement opportunities.

- Provide assistance to the Debtors' management in connection with the Debtors' development of their revised business plan, and such other related forecasts as may be required by the Debtors' lenders in connection with negotiations or by the Debtors for other corporate purposes.

- Assist the Debtors and their management in the design, negotiation, and implementation of a restructuring strategy designed to maximize enterprise value, taking into account the unique interests of all key constituencies.

- Work with management to develop a restructuring strategy, evaluate, negotiate, and implement restructuring initiatives and strategic alternatives.

- Assist the Debtors with their communications and/or negotiations with outside parties including the Debtors' stakeholders, banks and potential acquirers of the Debtors' assets and advisors to the foregoing.

- Assist the Debtors' management and their professionals specifically assigned to sourcing, developing, negotiating and implementing any financing, including DIP and

exit financing facilities, in conjunction with a plan of reorganization and the overall restructuring.

- Assist the Debtors in preparing for and filing a bankruptcy petition for relief under the Bankruptcy Code, coordinating and providing administrative support for the proceeding and developing the Debtors' disclosure statement and plan of reorganization, or other appropriate case resolution, if necessary.

- Advise the Debtors on the financial reporting requirements attendant to a bankruptcy filing, including but not limited to court orders, court-approved transactions, emergence, and fresh-start reporting.

- In connection with a bankruptcy, assist with the preparation of documents such as a disclosure statement, a plan of reorganization, a liquidation analysis, the statements of financial affairs, schedules of assets and liabilities, potential preference analysis, claims analyses, monthly operating reports and other regular reports required by the Court.

- Manage the claims and claims reconciliation processes.

- Conduct eDiscovery, document review and forensic data services required in conjunction with any document requests or other discovery.

- Provide testimony and litigation support services regarding any of the matters to which AlixPartners is providing services.

- Meet with lenders, unsecured creditors' committee and other statutory or unofficial committees, if any, in connection with any bankruptcy filing, as necessary, to provide general process updates and other information as may be requested by the Debtors.

- Provide post confirmation services, as may be necessary, to support the chapter 11 plan and emergence.

- Assist the Debtors with such other matters as may be requested by the Debtors that fall within AlixPartners' expertise and that are mutually agreeable.

14.    Such financial advisory services are necessary to the Debtors' restructuring efforts and in the ongoing operation and management of the Debtors' businesses while subject to chapter 11 of the Bankruptcy Code.

## No Duplication of Services

15.    AlixPartners understands that the Debtors may retain additional professionals during the term of its engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.  The financial

advisory services provided by AlixPartners will complement, and not duplicate, the services rendered by any other professional retained in these Chapter 11 Cases.

**Fee and Expense Structure**

16.     AlixPartners' decision to accept this engagement to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in **Schedule 1** of the Engagement Letter (the "**Fee and Expense Structure**").

17.     AlixPartners' current standard hourly rates, subject to periodic adjustments, are as follows:

| Title | Hourly Rate |
|---|---|
| Partner/ Partner & Managing Director | $1,200 – $1,495 |
| Senior Vice President/ Director | $825 – $1,125 |
| Vice President | $640 – $810 |
| Analyst/ Consultant | $230 – $625 |

18.     AlixPartners generally reviews and revises its billing rates semi-annually.  Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates become effective.

19.     To the extent the Debtors request services related to electronic discovery and data collection, certain monthly hosting fees and consulting fees will apply.

20.     To the extent AlixPartners uses the services of independent contractors (the "**Contractors**") in these Chapter 11 Cases, AlixPartners shall:  (a) pass through the cost of such Contractors to the Debtors at the same rate that AlixPartners pays the Contractors; (b) seek reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflict

8

checks as required for AlixPartners; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

21.    In addition to compensation for services rendered by the AlixPartners Personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses incurred in connection with these Chapter 11 Cases, including but not limited to transportation costs, lodging, and meals.

22.    AlixPartners intends to apply for compensation for services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* (Appendix A to 28 C.F.R. § 58), applicable provisions of the Bankruptcy Code, including sections 330 and 331, the Bankruptcy Rules, the Local Rules, and any other further orders of the Court, both in connection with this Application and the interim and final fee applications to be filed by AlixPartners in these Chapter 11 Cases.

23.    AlixPartners will maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in these Chapter 11 Cases.  Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Debtors. AlixPartners' applications for compensation of fees and reimbursement of expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter and any procedures established by the Court, pursuant to an interim compensation order or otherwise.

24.    AlixPartners often works for compensation that includes hourly-based fees and performance-based, contingent-incentive compensation earned upon achieving meaningful results.

Pursuant to the Engagement Letter, the Debtors and AlixPartners agree that AlixPartners may be compensated for its efforts by the payment of a completion fee (the "Completion Fee"). AlixPartners shall earn a Completion Fee of up to $1,500,000. The Completion Fee will broken out in two tranches, the first tranche in the amount of $1,000,000 will be earned upon the earliest to occur of any of the following: (i) confirmation of a chapter 11 plan of reorganization, (ii) a sale of all or substantially all of the Debtors' assets under section 363 of the Bankruptcy Code or otherwise, (iii) the consummation of any material recapitalization, debt exchange or debt restructuring of the Debtors, or (iv) consummation of one or more transactions, in any form, that effectively transfers a significant portion of the business as a going concern to another entity or entities or that results in a change in structure of the Board of Directors of the Debtors. The second tranche in the amount of $500,000 will be awarded at the discretion of management, driven upon the basis of a successful restructuring.  The first tranche of the Completion Fee shall be due and payable immediately when the success objective or objectives determined as described above have been achieved. The second tranche will be determined and awarded upon the successful emergence from bankruptcy.

25.    The Debtors understand and agree that the Completion Fee is not being pre-approved and remains subject to Court approval, however, the Completion Fee was negotiated as part of the Fee and Expense Structure.

26.    AlixPartners received a retainer in the amount of $750,000 from the Debtors (the "**Retainer**").  According to AlixPartners' books and records, during the 90-day period prior to the Petition Date, the Debtors paid AlixPartners $10,517,354.93 in aggregate for professional services performed and expenses incurred, including the Retainer.

27.     Any balance of the Retainer will constitute an evergreen retainer as security for post-petition services and expenses.  An evergreen retainer is appropriate in these Chapter 11 Cases.  First, evergreen retainer agreements reflect normal business terms in the marketplace.  *See In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("[I]t is not disputed that the taking of evergreen retainers is a practice now common in the marketplace . . . .  [T]he practice in this district has been engaged in since at least the early 1990's . . . .").  Second, AlixPartners and the Debtors are sophisticated business entities that have negotiated the Retainer at arm's length. As such, the Debtors respectfully request that approval of the proposed evergreen retainer is warranted.

28.     Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior, and subsequent to, the Petition Date, AlixPartners may have incurred fees and reimbursable expenses related to the prepetition period which remain unpaid. Approval is sought from the Court for AlixPartners to apply the Retainer to these unpaid amounts. Upon entry of an order approving the relief requested herein, AlixPartners will apply the Retainer to the unpaid amounts, and the Debtors will not owe AlixPartners any sums for prepetition services.

### The Fee and Expense Structure is Appropriate and Reasonable and Should be Approved under Section 327 of the Bankruptcy Code

29.     Without the relief requested herein, the Debtors would be deprived of the assistance of a qualified financial advisor, which would disadvantage the Debtors and parties in interest.  If the Debtors are forced to engage a new financial advisor, the Debtors' restructuring efforts would be slowed as any such new advisor is provided with the necessary background to provide adequate services.  Moreover, comparable financial advisors would likely require similar compensation.

30.     To the best of the Debtors' knowledge, there is no agreement or understanding between AlixPartners and any nonaffiliated person or entity for sharing compensation received, or to be received, for services rendered in connection with the Debtors' Chapter 11 Cases.  The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by AlixPartners and other comparable firms that render similar services.  The Fee and Expense Structure is reasonable, market-based, and designed to compensate AlixPartners fairly for its work and to cover fixed and routine expenses.  Thus, the Fee and Expense Structure is fair and reasonable under the standards set forth in section 327 of the Bankruptcy Code.

## AlixPartners' Disinterestedness

31.     To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Percy Declaration, AlixPartners: (a) is a "disinterested person" (within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and supplemented by section 1107(b) of the Bankruptcy Code) and does not hold or represent an interest materially adverse to the Debtors' estates, (b) has no connection to the Debtors, their creditors, or other parties in interest in these Chapter 11 Cases, or the attorneys or accountants of the foregoing, or the U.S. Trustee, or any person employed in the Office of the U.S. Trustee, and (c) does not hold any interest adverse to the Debtors' estates.

32.     As set forth in further detail in the Percy Declaration, AlixPartners has certain connections with creditors, equity security holders, and other parties in interest in these Chapter 11 Cases.  AlixPartners does not believe that any of these connections represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these Chapter 11 Cases.

33.    In the event that AlixPartners learns of additional connections not reflected in the Percy Declaration, AlixPartners will use reasonable efforts to promptly file a supplemental declaration.

### Indemnification Provisions

34.    The Engagement Letter contains standard indemnification language with respect to AlixPartners' services including, without limitation, an agreement by the Debtors to indemnify AlixPartners and its affiliates, partners, directors, officers, employees and agents (each, an "**AlixPartners Party**" and collectively, the "**AlixPartners Parties**") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Engagement Letter, except to the extent caused by gross negligence, bad faith, willful misconduct, or fraud of any AlixPartners Party.

35.    The Debtors and AlixPartners believe that the indemnification provisions contained in the Engagement Letter, as may be amended in the Proposed Order, are customary and reasonable for AlixPartners and comparable firms providing financial advisory services, and as would be modified pursuant to the foregoing limitations, reflect the qualifications and limitations on indemnification provisions that are customary in this district.  *See, e.g.*, *In re Virgin Orbit Holdings, Inc.*, No. 23-10405 (KBO) (Bankr. D. Del. May 18, 2023) (approving similar modified indemnification provisions for the retention and employment of Alvarez & Marsal North America, LLC); *In re Clovis Oncology, Inc.*, No. 22-11292 (JKS) (Bankr. D. Del. Jan. 19, 2023) (approving similar modified indemnification provisions for the retention and employment of AlixPartners); *In re Phoenix Services TopCo, LLC.*, No. 22-10906 (MFW) (Bankr. D. Del. Oct. 25, 2022) (same); *In re Kabbage, Inc.*, No. 22-10951 (CTG) (Bankr. D. Del. Oct. 21, 2022) (same); *In re TNT Crane & Rigging, Inc.*, No. 20-11982 (BLS) (Bankr. D. Del. Sept. 18, 2020) (approving similar modified

indemnification provisions for the retention and employment of FTI Consulting, Inc.); *In re VIVUS, Inc.*, No. 20-11779 (LSS) (Bankr. D. Del. Aug. 24, 2020) (approving similar modified indemnification provisions for the retention and employment of Ernst & Young LLP); *In re Lucky Brand Dungarees, LLC*, No. 20-11768 (CSS) (Bankr. D. Del. July 29, 2020) (approving similar modified indemnification provisions for the retention and employment of Houlihan Lokey Capital, Inc.).

36.     Moreover, the terms and conditions of the indemnification provisions were negotiated by the Debtors and AlixPartners at arm's length and in good faith.  The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of AlixPartners' proposed retention, are reasonable and in the best interest of the Debtors, their estates, and all parties in interest in light of the fact that the Debtors require AlixPartners' services to ensure the success of these Chapter 11 Cases.  Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions as set forth in the Engagement Letter, as may be amended by the Proposed Order.

## Basis for Relief

37.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

> 11 U.S.C. § 327(a).

38.      Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with

the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

39.     The Debtors respectfully submit that section 327 of the Bankruptcy Code permits them to hire a professional firm like AlixPartners to undertake an advisory role in these Chapter 11 Cases.  Furthermore, the requirements set forth by Bankruptcy Rule 2014 are satisfied by this Application.  The retention of AlixPartners as financial advisor in these Chapter 11 Cases is in the best interest of the Debtors, their estates, and all parties in interest.

**Notice**

40.     Notice of this Application will be provided to the following parties:  (a) the office of the United States Trustee for Region 3; (b) those creditors holding the 30 largest unsecured claims against the Debtors' estates (on a consolidated basis); (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for states in which the Debtors conduct business; (g) Choate, Hall & Stewart LLP, as counsel to the ABL Agent; (h) Otterbourg P.C., as counsel to the Term Agent; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

41.     A copy of this Application and any order entered in respect thereto will also be made available on the Debtors' case information website located at https://www.cases.ra.kroll.com/BigLots. Based on the circumstances surrounding this Application and the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is required.

## **No Prior Request**

42.     No prior request for the relief sought herein has been made to the Court or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the

relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:    September 18, 2024
Wilmington, Delaware

**BIG LOTS, INC.**
(for itself and on behalf of its affiliated debtors)

By:    /s/ *Ronald A. Robins, Jr.*

Ronald A. Robins, Jr.