# **EXHIBIT C**

## **Master Services Agreement (with Amendments)**

## TAX MASTER SERVICE AGREEMENT

This Tax Master Service Agreement (this "<u>Agreement</u>"), dated July 11, 2012 (the "<u>Effective Date</u>"), is between PricewaterhouseCoopers LLP, a Delaware limited liability partnership, with offices at 300 Madison Avenue, New York, New York 10017 ("<u>PwC</u>"), and Big Lots Stores, Inc., an Ohio corporation,, with offices at 300 Phillipi Rd., Columbus, Ohio 43228 ("<u>Client</u>").

1.      **Scope of Agreement and Services**

**(a)**    This Agreement describes the process by which Client may engage PwC to perform professional services (the "<u>Services</u>") other than audit or attestation services, and sets out the terms and conditions applicable to those Services.    Client may procure Services under this Agreement for itself and for those of its consolidated subsidiaries or affiliates that Client binds to this Agreement by its signature or which separately agree to the provisions of this Agreement (collectively, the "<u>Subsidiaries</u>").

**(b)**    PwC will perform such Services as agreed in one or more statements of work issued under this Agreement, a form of which is attached as <u>Exhibit A</u> ("<u>SOW</u>").    Each SOW will describe the Services to be performed, the expected schedule for performance, the amounts that Client will pay for those Services, and any other relevant information.    This Agreement does not obligate either party to enter into any SOW.    If there is a conflict between the terms contained in the main body of the Agreement, any Exhibit and/or a SOW, the following order of precedence shall apply: (i) the SOW, (ii) the applicable Exhibit and then, (iii) the main body of the Agreement.    If PwC commenced Services prior to execution of this Agreement or a particular Statement of Work, the terms of this Agreement shall govern such Services.

**(c)**    The provisions of <u>Exhibit B</u> shall apply to any tax-related Services.

2.      **Deliverables**

**(a)**    Client will own all written material that is prepared for and delivered to it under this Agreement ("<u>Deliverables</u>"), except as follows: PwC will own its working papers, preexisting materials and software, as well as any general skills, know-how, processes, or other intellectual property (including a non-Client specific version of any Deliverables) which PwC may have discovered or created as a result of the Services ("<u>PwC Materials</u>").    Client has a nonexclusive, perpetual and non-transferable license to use any PwC Materials included in the Deliverables for Client's own internal use as part of those Deliverables.

**(b)**    PwC is providing the Services and Deliverables solely for Client's internal use and benefit. The Services and Deliverables are not for a third party's use, benefit or reliance and PwC disclaims any contractual or other responsibility or duty of care to others based upon the Services or Deliverables.    Except as described below, Client shall not discuss the Services with or disclose Deliverables to any third party, or otherwise disclose the Services or Deliverables without PwC's prior written consent.    Client may disclose Deliverables to or discuss information relating to the Services with Client's third party professional advisors (including accountants, auditors, attorneys, financial and other advisors) which are acting solely for Client's benefit and on Client's behalf and which have a need to know such information in order to provide advice or services to Client, provided that such advisors agree: (i) that PwC did not perform the Services or prepare Deliverables for such advisors' use, benefit or reliance and PwC assumes no duty, liability or responsibility to such advisors, and (ii) to not disclose the Services or Deliverables to any other party without PwC's prior written consent. Third party professional advisors do not include any parties that are providing or may provide insurance, financing, capital in any form, a fairness opinion, or selling or underwriting securities in connection with any transaction that is the subject of the Services or any counterparty to an anticipated transaction or dispute or any parties which have or may obtain a financial interest in Client or an anticipated transaction.

**(c)**    Client may disclose any materials that do not contain PwC's name or other information that could identify PwC as the source (either because PwC provided a Deliverable without identifying information or because Client subsequently removed it) to any third party if Client first accepts and represents them as its own and makes no reference to PwC in connection with such materials.

**3.    PwC Responsibilities**.  PwC will perform the Services in accordance with the relevant standards promulgated by the American Institute of Certified Public Accountants ("AICPA") as set forth in the applicable Exhibit or SOW.  PwC's role is advisory only.  PwC will not provide an audit, accounting or attest opinion or other form of assurance. PwC will not verify or audit any information provided to it.  Because PwC will provide the Services solely for Client's use and benefit and pursuant to a relationship exclusively with Client, PwC disclaims any contractual or other responsibility, liability or duty of care to others based upon the Services or upon any Deliverables or advice PwC provides. Any spreadsheets or  electronic materials that do not constitute Deliverables and  that PwC provides to Client, are for Client's convenience and are provided as is.  PwC will not be responsible for results obtained by anyone other than PwC from the use of those items

**4.    Client Responsibilities**.  Client is responsible for all management functions and decisions relating to the Services, including without limitation, evaluation and acceptance of the adequacy of the scope of Services in addressing Client's needs.  Client also is responsible for the results achieved from using the Services or Deliverables.  Client will designate a competent member of Client's management to oversee the Services. Client will provide accurate and complete information, and reasonable assistance, and PwC will perform the Services on that basis.  It is Client's responsibility to establish and maintain its internal controls.

**5.    Fees, Expenses and Payment**.  Client will pay all undisputed amounts set forth in each Statement(s) of Work.  PwC will bill Client for out-of-pocket expenses agreed to in each SOW, any applicable sales, use or value added tax, and PwC's internal per-ticket charges for booking travel. Amounts billed for services performed by PwC or the PwC Subcontractors (defined below) shall be considered fees and not expenses and will be billed at rates agreed to in each SOW.    Unless otherwise agreed in the SOW, PwC will invoice Client on a regular basis in arrears, and Client will pay each undisputed invoice within 30 days after Client's receipt of the invoice from PwC.   Client may request fee details, billing date cutoffs and interim updates to fees incurred.

**6.    Confidentiality**. Subject to Exhibit B, Section II,  "Confidential Information" means any non-public information disclosed by a party to the other pursuant to this Agreement or any SOW.   All terms of this Agreement, including but not limited to fee and expense structure, are considered Confidential Information. Confidential Information does not include any information which (i) is rightfully known to the recipient prior to its disclosure; (ii) is released to any other person or entity (including governmental agencies) without restriction; (iii) is independently developed by the recipient without use of or reliance on Confidential Information; or (iv) is or later becomes publicly available without violation of this Agreement or may be lawfully obtained by a party from a non-party.  Each party will protect the confidentiality of Confidential Information that it receives and, neither party will disclose Confidential Information for any purpose other than to perform this Agreement or as required by applicable law, statute, rule, regulation or professional standard, without the other party's prior consent.  If disclosure is required by law, statute, rule or regulation (including any subpoena or other similar form of process), or by professional standards, the party to which the request for disclosure is made shall (other than in connection with routine supervisory examinations by regulatory authorities with jurisdiction and without breaching any legal or regulatory requirement) provide the other party with prior prompt written notice thereof and, if practicable under the circumstances, allow the other party to seek a restraining order or other appropriate relief.

**7.    Term and Termination**.  This Agreement has a term of three (3) years.  Either party may terminate this Agreement or any SOW without penalty upon notice to the other party. Any provisions of this Agreement which expressly or by implication are intended to survive its termination or expiration will survive and continue to bind the parties.

**8.    Indemnity**.

    **(a)**    Each party shall indemnify, defend and hold harmless the other from and against any and all amounts payable under any judgment, verdict, court order or settlement for death or bodily injury or the damage to or loss or destruction of any real or tangible personal property, but only to the extent the foregoing arise out of the indemnitor's negligence or intentional misconduct in the performance of this Agreement.

**(b)**    PwC shall indemnify, defend and hold harmless Client, its directors, officers and employees from and against any and all amounts payable under any judgment, verdict, court order or settlement for third party claims of infringement of any trade secrets, copyrights, trademarks, trade names or other intellectual property rights, alleged to have occurred and arising from the Deliverables. Should Client's use of such Deliverables be determined to have infringed, or if, in PwC's judgment, such use is likely to be infringing, PwC may, at its option: (i) procure for Client the right to continue using such Deliverables provided, or (ii) replace or modify the Deliverables to make their use non-infringing while yielding substantially equivalent results. If neither of the above options are or would be available on a basis that PwC finds commercially reasonable, then PwC may terminate the applicable SOW, Client shall return such Deliverables provided to PwC and PwC will refund to Client the fees paid for the Deliverables. This infringement indemnity does not cover claims to the extent they arise from: (1) the combination of Deliverables with products or services not provided by PwC; the modification of Deliverables by any person other than PwC; (2) Deliverables complying with or based upon information, specifications or designs provided by or at Client's direction; or (3) use of Services and/or Deliverables in a manner not permitted or contemplated under the Agreement.

**(c)**    Without limiting PwC's indemnity obligations hereunder, Client shall indemnify PwC and the Beneficiaries (defined below) and hold them harmless from and against all third party claims, losses, liabilities and damages arising from or relating to the Services or Deliverables, except to the extent finally determined to have resulted from PwC's gross negligence, fraud or intentional misconduct relating to the Services and/or Deliverables. For the avoidance of doubt, nothing in this Section 8(c) shall preclude or otherwise hinder Client from pursuing any claim against PwC for negligence, gross negligence, or intentional misconduct, subject to the terms of this Agreement.

9.    **Limitations of Liability.**

**(a)**    Except to the extent finally determined to have resulted from PwC's gross negligence or intentional misconduct, PwC's aggregate liability for all claims, losses, liabilities or damages in connection with this Agreement or its subject matter, whether as a result of breach of contract, tort (including negligence) or otherwise, regardless of the theory of liability asserted, is limited to no more than three times (3x) the total amount of fees paid to PwC for the particular Service giving rise to the liability under the relevant SOW. In addition, PwC will not be liable in any event for lost profits, consequential, indirect, punitive, exemplary or special damages.

**(b)**    In no event, unless it has been finally determined that the Client was grossly negligent or acted willfully or fraudulently, shall the Client be liable to PWC or any of its partners, agent, officers, directors, employees or shareholders or to any other third party, whether a claim be in tort, contract or otherwise:  (a) for any amount in excess of three times (3x) the total amount of fees paid to PwC for the particular Service giving rise to the liability under the relevant SOW. In addition, Client will not be liable for lost profits, consequential, indirect, punitive, exemplary or special damages.    The liability limitation in this Section 9 shall not apply to Client's or PwC's obligations under the Indemnification obligations under Section 8 of this Agreement.

**(c)**    Also, PwC shall have no liability arising from or relating to any third party hardware, software, information or materials selected or supplied by Client to PwC.

10.    **Other PwC Firms; Subcontracting.** PwC is the U.S. firm of the global network of separate and independent PricewaterhouseCoopers firms (exclusive of PwC, the "Other PwC Firms"). PwC may, in its discretion, draw on the resources of and/or subcontract to its subsidiaries, the Other PwC Firms and/or third party contractors and subcontractors (each, a "PwC Subcontractor"), in each case within or outside of the United States in connection with the provision of Services and/or for internal, administrative and/or regulatory compliance purposes. Client agrees that PwC may provide information PwC receives in connection with this Agreement to the PwC Subcontractors for solely for such purposes. PwC will be solely responsible for the provision of the Services (including those performed by the PwC Subcontractors) and for the protection of the information provided to the PwC Firm Subcontractors. The PwC Subcontractors and theirs and PwC's respective partners, principals or employees (collectively the "Beneficiaries") shall have no liability or obligations arising out of this Agreement. Client agrees to: (a) bring any claim or other legal proceeding of any nature arising from

the Services against PwC and not against the Beneficiaries; and (b) ensure or procure that the Subsidiaries do not assert any such claim or other legal proceeding against PwC or the Beneficiaries. If any of the Subsidiaries receive Services under this Agreement, Client agrees to provide a copy of this Agreement to such Subsidiaries, and Client will notify them that although the Beneficiaries may interact with them, the delivery of the Services is governed by the terms of this Agreement (including the liability limitations herein), and Client's Subsidiaries should notify Client of any disputes or potential claims arising from the Services. PwC disclaims any contractual or other responsibility or duty of care to any other subsidiaries or affiliates. While PwC is entering into this Agreement on its own behalf, this section also is intended for the benefit of the Beneficiaries

**11.    Dispute Resolution.**  In the unlikely event that differences arise between the parties related to or arising from the Services or this Agreement that are not resolved by mutual agreement, to facilitate a judicial resolution and save time and expense of both parties, Client and PwC agree not to demand a trial by jury in any action, proceeding or counterclaim.

**12.    Choice of Law**. This Agreement and any dispute relating to the Services will be governed by and construed, interpreted and enforced in accordance with the laws of the State of New York, without giving effect to any provisions that would require the laws of another jurisdiction to apply.

**13.    Other Matters**.  PwC is an independent contractor, not a fiduciary or agent of Client, and shall not perform any obligation of Client, whether regulatory or contractual, nor shall PwC negotiate on Client's behalf.  This is a non-exclusive agreement and, subject to its confidentiality obligations, PwC and the Other PwC Firms are not prevented or restricted from providing services to other clients.  No party to this Agreement may assign or transfer this Agreement, or any rights, obligations, claims or proceeds from claims arising hereunder, without prior written consent of the other party, and any assignment without such consent shall be void and invalid.  If any provision of this Agreement is found to be unenforceable, the remainder of this Agreement shall be enforced to the extent permitted by law.  This Agreement supersedes any prior understandings, proposals or agreements concerning the Services and represents the entire agreement between the parties with regard to the subject matter hereof.  Any changes to this Agreement must be agreed in writing.  Neither party shall be liable to the other for any delay or failure to perform any of the Services or obligations in this Agreement due to causes beyond its reasonable control.  This Agreement and/or any applicable SOW may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one single document between the parties.  Counterparts may be exchanged by facsimile, or attached as a pdf, jpeg, or similar file type to an email.

**14.    CPA Notice**.  PwC is owned by professionals who hold CPA licenses as well as by professionals who are not licensed CPAs.  Depending on the nature of the Services PwC provides, non-CPA owners may be involved in providing Services under this Agreement.

Each of the parties has caused this Agreement to be executed on its behalf by its duly authorized representative as of the date first above written.

**PricewaterhouseCoopers LLP**

By: _____

Name/Title: ___Art Wachholz, Partner___

Date: _____July 26, 2012_____

**Big Lots Stores, Inc.**
**On behalf of itself and its Subsidiaries**

By: *L. Michael Watts*

Name/Title: _L. Michael Watts/VP Tax_

Date: _07/25/2012_

**EXHIBIT A**

**SAMPLE FORM OF SOW**

This Statement of Work ("SOW") is governed by and subject to the provisions of the Master Services Agreement dated (the "Agreement"), the terms of which are incorporated herein, between Big Lots Stores, Inc. and PricewaterhouseCoopers LLP ("PwC"). The term "Client" in the Agreement shall include the entity(ies) signing this SOW. Any terms used in this SOW and not otherwise defined will have the same meaning as in the Agreement. If there is a conflict between the Agreement and the SOW, this SOW shall prevail.

I.      PURPOSE AND SCOPE

This SOW covers [describe project generally]. This SOW sets forth the objectives, Deliverables, timing, staffing and fees for this project/effort.

II.     PARTIES' RESPONSIBILITIES

**2.1     Services to be provided by PwC:**

**2.2     Applicable AICPA Standards:** [Select the applicable standards: The advisory Services performed under this SOW will be performed in accordance with the AICPA's Standards for Consulting Services and/or the tax Services will be performed in accordance with the AICPA Statements on Standards for Tax Services. The Services which represent an estimate of value will be performed in accordance with the AICPA Statement on Standards for Valuation Services. The accounting advisory Services will be performance in accordance with Standards for Reports on the Application of Accounting Principles.]

**2.3     Additional provisions applicable to the Services:**

**2.4     Deliverables:**

**2.5     Client's Responsibilities:**

**2.6     Timing**

The timing of the Services is as follows:

| | |
|---|---|
| Project Start Date: | |
| Estimated Project Completion Date: | |

III.    RESOURCES ASSIGNED

The PricewaterhouseCoopers personnel assigned to provide Services and Deliverables under this SOW are as follows:

IV.     FEES, EXPENSES AND PAYMENT

**4.1     Professional Fees and Expenses** [list sales tax if applicable]

**4.2     Payment Terms**

Each of the parties has caused this Agreement to be executed on its behalf by its duly authorized representative as of the date first above written.

**PricewaterhouseCoopers LLP**                **Big Lots Stores, Inc.**

OGC Version October 7, 2011

By: _____

Name/Title: _____

Date: _____

By: _____

Name/Title: _____

Date: _____

**EXHIBIT B**

**ADDITIONAL PROVISIONS APPLICABLE TO TAX RELATED SERVICES**

**I.    Applicable Performance Standards.** PwC shall perform any tax Services in a manner consistent with this Agreement and the AICPA Statements on Standards for Tax Services.

**II.    No Obligations of Confidentiality.** Notwithstanding Sections 2 or 6 of the Agreement or any provisions to the contrary in this Agreement or any SOW, Client has no obligation of confidentiality with respect to any portion of any materials, advice or Deliverables to the extent that they concern the tax structure or tax treatment of any transaction.

**III.    Codification of Economic Substance.** Federal law (IRC Section 6662(b)) subjects taxpayers to a strict liability penalty equal to 40% (or 20% if adequately disclosed in a tax return) of any underpayment of tax attributable to that portion of a transaction which is determined to lack economic substance under IRC Section 7701(o) or fails to satisfy any other similar rule of law. The higher penalty will be due if the transaction that is determined to lack economic substance is not "adequately disclosed" in the taxpayer's return; therefore, it is important that Client advises Client's tax return preparers of transactions to which this penalty provision might apply, recognizing that no guidance has yet been issued on the substantive aspects of the codified economic substance doctrine. Penalties can also be imposed by states to the extent that state laws have adopted similar provisions.

If PwC is engaged to provide any advice with respect to the potential impact of the economic substance doctrine included in IRC Section 7701(o) or similar state provisions or any related penalties that might be imposed, such advice rendered as part of PwC's Services will be based on applicable case law, reasonable interpretation of legislation and available guidance.

In addition, if PwC provides tax compliance services, Client is responsible for identifying transactions to which the economic substance doctrine applies and determining whether disclosure should be made, and if so, the adequacy of any disclosure. Unless specifically addressed in a SOW, any additional PwC time spent preparing such disclosures and/or providing any advice with respect to Client's determination of the economic substance of a transaction and any related penalties that might be imposed is outside the scope of the Services set forth in a SOW. If PwC prepares disclosures and/or provides any such advice, such disclosures prepared and/or advice rendered as part of PwC's Services will be based on applicable case law, reasonable interpretation of legislation and available guidance. There is no guidance on the substantive aspects of the codified economic substance doctrine. The strict liability penalty is not affected by whether the position taken on the return meets standards regarding levels of confidence.

Under IRC Section 6664(c), no exceptions (including the reasonable cause exception) to the imposition of such penalties are available and therefore no advice will protect Client from any such penalties. Therefore, PwC shall not be liable for any federal or state penalties imposed on Client if any portion of a transaction is determined to lack economic substance or fails to satisfy any similar rule of law or if the disclosure of such transaction is determined to be inadequate.

**IV. Circular 230**. Unless agreed in a SOW that PwC will provide a Covered Opinion, as defined in U.S. Treasury Circular 230 ("Circular 230"), any written tax-related advice in connection with the Services will be Other Written Advice, as defined in Circular 230. PwC's Other Written Advice is not intended to be used to avoid tax penalties and it must not be used to avoid tax penalties, including, but not limited to penalties that may apply if the transaction that is the subject of the Services is found to lack economic substance or fails to satisfy any other similar rule of law. If a SOW states that PwC will provide a Covered Opinion then, Client understands that its reliance on the Covered Opinion for the purposes of penalty protection will be limited to the issues expressly set forth in the final, written Covered Opinion delivered to Client. Moreover,  to the extent that PwC provides any advice with respect to whether the transaction that is the subject of the Services is subject to or satisfies the newly codified economic substance standards, PwC's written advice will include a disclosure stating that the advice concerning economic substance was not intended or written to be used, and it cannot be used,

for the purpose of avoiding tax penalties that may be imposed on Client if any portion of the transaction is determined to lack economic substance or fails to satisfy any similar rule of law.

**V.  Tax Return Disclosure and Tax Advisor Listing Requirements.**  Certain federal and state regulations require taxpayers to disclose their participation in certain reportable transactions to the taxing authorities.  Client shall advise PwC if Client determines that any matter covered by this Agreement is a reportable transaction requiring disclosure.  Certain federal and state regulations also require PwC to submit information returns and maintain lists of certain client engagements if PwC is a material advisor to clients that have participated in a reportable transaction.  Therefore, if PwC determines, after consultation with Client, that Client has participated in a transaction which requires PwC to register and/or list the transaction, PwC will place Client's name and other required information on a list.  PwC will contact Client if PwC is required to provide Client's name to the U.S. Internal Revenue Service or any state in connection with any matter under this Agreement.

**VI.  Internal Revenue Code Section 6694 Preparer Standards**

**(a)**      Federal law and certain state laws imposes obligations on tax return preparers with respect to a position reported on a tax return or claim for refund that does not meet certain standards regarding levels of confidence. If during the course of applicable Services PwC identifies a position that does not meet these standards, PwC will advise Client about Client's penalty exposure and whether Client can avoid penalty through disclosure. If PwC is preparing the return and it is concluded that disclosure is required, PwC will prepare the disclosure and provide it to Client

**(b)**      PwC's work may require consultation with a PwC subject matter specialist to reach and document the level of technical support for the position. PwC will discuss with Client any additional fees that may be incurred as a result of complying with these requirements.

**VII.      Additional Consents.**  Notwithstanding anything to the contrary in the Agreement, Client agrees that PwC may disclose Client information, including Client's entire tax return information, to PwC Subcontractors involved in the Services and/or for internal, administrative and/or regulatory compliance purposes, and which may be located outside the United States, and to Client's agents, representatives, administrators or professional advisors (including accountants, attorneys, financial and other professional advisors), their respective officers, directors or employees, and other parties as you may direct. The foregoing consent is valid until the later of three years following receipt of your information or completion of the Services covered by this Agreement or the applicable SOW, however, Client may, in an applicable SOW or otherwise in writing, request a more limited disclosure than the foregoing.

**VIII. North Carolina State Board of Accountancy Rules on disclosure of Client information and subcontracting.**  If PwC engages third party subcontractors, to assist PwC in providing the Services, the applicable SOW shall include the following:

"As required by the North Carolina State Board of Accountancy Rules, PwC is disclosing to Client that Client's information will be disclosed to the following parties for purposes of providing the Services described in the applicable SOW:
Name :
Address :
Telephone number :"

**REINSTATEMENT OF AND AMENDMENT**
**TO**
**TAX MASTER SERVICE AGREEMENT**

This Reinstatement of and Amendment to Tax Master Service Agreement (this "Reinstatement and Amendment"), effective as of June 30, 2020 (the "Reinstatement and Amendment Effective Date"), is made by and between PricewaterhouseCoopers LLP, a Delaware limited liability partnership ("PwC"), and Big Lots Stores, Inc., an Ohio corporation ("Client"). Client and PwC are sometimes hereinafter referred to individually as a "Party" and, together, the "Parties".

**RECITALS**

**WHEREAS**, the Parties previously entered into that certain Tax Master Service Agreement, dated July 11, 2012 (the "Agreement"), which, by its terms, expired on July 11, 2015, but which term has been extended from time to time by the Parties in SOWs executed under the Agreement; and

**WHEREAS**, the Parties desire to reinstate the Agreement in its entirety and amend a provision of the Agreement as expressly set forth in this Reinstatement and Amendment.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained in this Reinstatement and Amendment, the sufficiency and receipt of which are hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

1. Reinstatement. Client and PwC hereby agree that the Agreement is hereby reinstated and, except as specifically herein amended, all terms, provisions, conditions and exhibits contained in the Agreement are hereby confirmed, ratified and restated and shall remain unmodified and in full force and effect.

2. Section 7; Term and Termination. The first sentence of Section 7 of the Agreement shall be deleted in its entirety and replaced with the following:

   "This Agreement shall expire on October 31, 2020, unless earlier terminated in accordance herewith."

3. All capitalized terms which are not otherwise defined herein shall possess the respective meanings allocated to such terms in the Agreement. Except as specifically amended or waived by this Reinstatement and Amendment, all of the terms and conditions of the Agreement shall remain in full force and effect. If there is any conflict between the terms and provisions set forth in this Reinstatement and Amendment and those set forth in the Agreement, this Reinstatement and Amendment shall control. This Reinstatement and Amendment may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one single document between the Parties. Counterparts may be exchanged by facsimile or attached as a pdf, jpeg, or similar file type to an email or by DocuSign, Adobe Acrobat, or other electronic signature.

**IN WITNESS WHEREOF**, each Party has caused this Reinstatement and Amendment to be executed by its duly authorized representatives as of the Reinstatement and Amendment Effective Date.

PRICEWATERHOUSECOOPERS LLP                    BIG LOTS STORES, INC.

DocuSigned by:                                 DocuSigned by:

*Craig Keller*                                 *Jonathan Ramsden*

By: _____                     By: _____
    A934896CAADA499...                              FF2E51629539412...

Name: Craig Keller                             Name: Jonathan Ramsden
Title: Partner                                 Title: EVP, CFO & CAO

                                               ┌─────────────────────────┐
                                               │ **APPROVED**            │
                                               │ By Jennifer Smith at 4:29 pm, Jul 01, 2020 │
                                               └─────────────────────────┘

## AMENDMENT NO. 2
## TO
## TAX MASTER SERVICE AGREEMENT

This Amendment No. 2 to Tax Master Service Agreement (this "Amendment"), effective as of October 30, 2020 (the "Amendment Effective Date"), is made by and between PricewaterhouseCoopers LLP, a Delaware limited liability partnership ("PwC"), and Big Lots Stores, Inc., an Ohio corporation ("Client"). Client and PwC are sometimes hereinafter referred to individually as a "Party" and, together, the "Parties".

### RECITALS

**WHEREAS**, the Parties previously entered into that certain Tax Master Service Agreement, dated July 11, 2012 (the "Agreement"), which, by its terms, expired on July 11, 2015, but which term has been extended from time to time by the Parties in SOWs executed under the Agreement or through amendments to the Agreement; and

**WHEREAS**, the Parties desire to extend the Agreement and amend a provision of the Agreement as expressly set forth in this Amendment.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained in this Amendment, the sufficiency and receipt of which are hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

1. Section 7; Term and Termination. The first sentence of Section 7 of the Agreement shall be deleted in its entirety and replaced with the following:

   "This Agreement shall expire on April 30, 2021, unless earlier terminated in accordance herewith."

2. All capitalized terms which are not otherwise defined herein shall possess the respective meanings allocated to such terms in the Agreement. Except as specifically amended or waived by this Amendment, all of the terms and conditions of the Agreement shall remain in full force and effect.  If there is any conflict between the terms and provisions set forth in this Amendment and those set forth in the Agreement, this Amendment shall control. This Amendment may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one single document between the Parties. Counterparts may be exchanged by facsimile or attached as a pdf, jpeg, or similar file type to an email or by DocuSign, Adobe Acrobat, or other electronic signature.

**IN WITNESS WHEREOF**, each Party has caused this Amendment to be executed by its duly authorized representatives as of the Amendment Effective Date.

PRICEWATERHOUSECOOPERS LLP                    BIG LOTS STORES, INC.

By: _____                    By: _____
                                                   0D00ADAE45E141E

Name: ___Craig Keller___                        Name: ___Steve Hutkai___

Title: ___Partner___                            Title: ___VP of Tax___

APPROVED
By Jennifer Smith at 5:21 pm, Nov 04, 2020

**AMENDMENT NO. 3**

**TO**

**TAX MASTER SERVICE AGREEMENT**

This Amendment No. 3 to Tax Master Service Agreement (this "Amendment"), effective as of April 9, 2021(the "Amendment Effective Date"), is made by and between PricewaterhouseCoopers LLP, a Delaware limited liability partnership ("PwC"), and Big Lots Stores, Inc., an Ohio corporation ("Client"). Client and PwC are sometimes hereinafter referred to individually as a "Party" and, together, the "Parties".

**RECITALS**

**WHEREAS**, the Parties previously entered into that certain Tax Master Service Agreement, dated July 11, 2012 (the "Agreement"), which, by its terms, expired on July 11, 2015, but which term has been extended from time to time by the Parties in SOWs executed under the Agreement or through amendments to the Agreement; and

**WHEREAS**, the Parties desire to extend the Agreement and amend a provision of the Agreement as expressly set forth in this Amendment.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained in this Amendment, the sufficiency and receipt of which are hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

1. Section 7; Term and Termination. The first sentence of Section 7 of the Agreement shall be deleted in its entirety and replaced with the following:

   "This Agreement shall expire on April 30, 2022, unless earlier terminated in accordance herewith."

2. All capitalized terms which are not otherwise defined herein shall possess the respective meanings allocated to such terms in the Agreement. Except as specifically amended or waived by this Amendment, all of the terms and conditions of the Agreement shall remain in full force and effect. If there is any conflict between the terms and provisions set forth in this Amendment and those set forth in the Agreement, this Amendment shall control. This Amendment may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one single document between the Parties. Counterparts may be exchanged by facsimile or attached as a pdf, jpeg, or similar file type to an email or by DocuSign, Adobe Acrobat, or other electronic signature.

**IN WITNESS WHEREOF**, each Party has caused this Amendment to be executed by its duly authorized representatives as of the Amendment Effective Date.

PRICEWATERHOUSECOOPERS LLP                    BIG LOTS STORES, INC.

DocuSigned by:                                 DocuSigned by:
*Craig Keller*                                 *Steve Hutkai*
By: _____                    By: _____
A934896CAADA499                                0D00ADAF45F141E

      Craig Keller

Name: _____                  Name: Steve Hutkai

      Partner

Title: _____                 Title: VP, Tax

                                               APPROVED
                                               By Jennifer Smith at 11:53 am, May 03, 2021

DocuSign Envelope ID: ED30B44A-E31D-47F9-AA25-AA7B8E757FA9

AMENDMENT NO. 4
TO
TAX MASTER SERVICE AGREEMENT

This Amendment No. 4 to Tax Master Service Agreement (this "Amendment"), effective as of May 9, 2022 (the "Amendment Effective Date"), is made by and between PricewaterhouseCoopers LLP, a Delaware limited liability partnership ("PwC"), and Big Lots Stores, LLC (formerly Big Lots Stores, Inc.), an Ohio corporation ("Client"). Client and PwC are sometimes hereinafter referred to individually as a "Party" and, together, the "Parties".

RECITALS

WHEREAS, the Parties previously entered into that certain Tax Master Service Agreement, dated July 11, 2012 (the "Agreement"), which, by its terms, expired on July 11, 2015, but which term has been extended from time to time by the Parties in SOWs executed under the Agreement or through amendments to the Agreement; and

WHEREAS, the Parties desire to extend the Agreement and amend certain other provisions of the Agreement as expressly set forth in this Amendment.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained in this Amendment, the sufficiency and receipt of which are hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

1. <u>Section 7; Term and Termination</u>. The first sentence of Section 7 of the Agreement shall be deleted in its entirety and replaced with the following:

   "This Agreement shall expire on October 31, 2022, unless earlier terminated in accordance herewith."

2. All capitalized terms which are not otherwise defined herein shall possess the respective meanings allocated to such terms in the Agreement. Except as specifically amended or waived by this Amendment, all of the terms and conditions of the Agreement shall remain in full force and effect. If there is any conflict between the terms and provisions set forth in this Amendment and those set forth in the Agreement, this Amendment shall control. This Amendment may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one single document between the Parties. Counterparts may be exchanged by facsimile or attached as a pdf, jpeg, or similar file type to an email or by DocuSign, Adobe Acrobat, or other electronic signature.

IN WITNESS WHEREOF, each Party has caused this Amendment to be executed by its duly authorized representatives as of the Amendment Effective Date.

PRICEWATERHOUSECOOPERS LLP

By:     Craig Keller
Date:   5/9/2022
Name:   Craig Keller
Title:  Partner

BIG LOTS STORES, LLC

By:     Steve Hutkai
Date:   5/11/2022
Name:   Steve Hutkai
Title:  VP, Tax

DocuSign Envelope ID: 5E18C060-9238-41F5-BD68-6A5E442EABBA

**REINSTATEMENT OF AND AMENDMENT NO. 5**
**TO**
**TAX MASTER SERVICE AGREEMENT**

This Reinstatement of and Amendment No. 5 to Tax Master Service Agreement (this "Reinstatement and Amendment"), effective as of February 8, 2023 (the "Reinstatement and Amendment Effective Date"), is made by and between PricewaterhouseCoopers LLP, a Delaware limited liability partnership ("PwC"), and Big Lots Stores, LLC (formerly Big Lots Stores, Inc.), an Ohio corporation ("Client"). Client and PwC are sometimes hereinafter referred to individually as a "Party" and, together, the "Parties".

**RECITALS**

**WHEREAS**, the Parties previously entered into that certain Tax Master Service Agreement, dated July 11, 2012 (the "Agreement"), which, by its terms, expired on July 11, 2015, but which term has been extended from time to time by the Parties in SOWs executed under the Agreement or through amendments to the Agreement; and

**WHEREAS**, the Parties desire to reinstate the Agreement in its entirety and extend the Agreement as expressly set forth in this Reinstatement and Amendment.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained in this Reinstatement and Amendment, the sufficiency and receipt of which are hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

1. Reinstatement. Client and PwC hereby agree that the Agreement is hereby reinstated and, except as specifically herein amended, all terms, provisions, conditions and exhibits contained in the Agreement are hereby confirmed, ratified and restated and shall remain unmodified and in full force and effect.

2. Section 7; Term and Termination. The first sentence of Section 7 of the Agreement shall be deleted in its entirety and replaced with the following:

   "This Agreement shall expire on May 31, 2023, unless earlier terminated in accordance herewith."

3. All capitalized terms which are not otherwise defined herein shall possess the respective meanings allocated to such terms in the Agreement. Except as specifically amended or waived by this Amendment, all of the terms and conditions of the Agreement shall remain in full force and effect. If there is any conflict between the terms and provisions set forth in this Amendment and those set forth in the Agreement, this Amendment shall control. This Amendment may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one single document between the Parties. Counterparts may be exchanged by facsimile or attached as a pdf, jpeg, or similar file type to an email or by DocuSign, Adobe Acrobat, or other electronic signature.

**IN WITNESS WHEREOF**, each Party has caused this Reinstatement and Amendment to be executed by its duly authorized representatives as of the Reinstatement and Amendment Effective Date.

**PRICEWATERHOUSECOOPERS LLP**

By: _Craig Keller_
Date: 3/27/2023
Name: Craig Keller
Title: Partner

**BIG LOTS STORES, LLC**

By: _Steve Hutkai_
Date: 3/27/2023
Name: Steve Hutkai
Title: VP, Tax & Treasurer

**REINSTATEMENT OF AND AMENDMENT NO. 6**
**TO**
**TAX MASTER SERVICE AGREEMENT**

This Reinstatement of and Amendment No. 6 to Tax Master Service Agreement (this "Reinstatement and Amendment"), effective as of June 30, 2023 (the "Reinstatement and Amendment Effective Date"), is made by and between PricewaterhouseCoopers LLP, a Delaware limited liability partnership ("PwC"), and Big Lots Stores, LLC (formerly Big Lots Stores, Inc.), an Ohio corporation ("Client"). Client and PwC are sometimes hereinafter referred to individually as a "Party" and, together, the "Parties".

**RECITALS**

**WHEREAS**, the Parties previously entered into that certain Tax Master Service Agreement, dated July 11, 2012 (the "Agreement"), which, by its terms, expired on July 11, 2015, but which term has been extended from time to time by the Parties in SOWs executed under the Agreement or through amendments to the Agreement; and

**WHEREAS**, the Parties desire to reinstate the Agreement in its entirety and extend the Agreement as expressly set forth in this Reinstatement and Amendment.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained in this Reinstatement and Amendment, the sufficiency and receipt of which are hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

1.  Reinstatement. Client and PwC hereby agree that the Agreement is hereby reinstated and, except as specifically herein amended, all terms, provisions, conditions and exhibits contained in the Agreement are hereby confirmed, ratified and restated and shall remain unmodified and in full force and effect.

2.  Section 7; Term and Termination. The first sentence of Section 7 of the Agreement shall be deleted in its entirety and replaced with the following:

    "This Agreement shall expire on October 31, 2023, unless earlier terminated in accordance herewith."

3.  All capitalized terms which are not otherwise defined herein shall possess the respective meanings allocated to such terms in the Agreement. Except as specifically amended or waived by this Amendment, all of the terms and conditions of the Agreement shall remain in full force and effect.  If there is any conflict between the terms and provisions set forth in this Amendment and those set forth in the Agreement, this Amendment shall control. This Amendment may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one single document between the Parties. Counterparts may be exchanged by facsimile or attached as a pdf, jpeg, or similar file type to an email or by DocuSign, Adobe Acrobat, or other electronic signature.

**IN WITNESS WHEREOF**, each Party has caused this Reinstatement and Amendment to be executed by its duly authorized representatives as of the Reinstatement and Amendment Effective Date.

**PRICEWATERHOUSECOOPERS LLP**

By: _Craig Keller_ _____
        2A8A678B318D426...

Name: Craig Keller

Title: Partner

**BIG LOTS STORES, LLC**

By: _Steve Hutkai_ _____
        0D00ADAF45F141E...

Name: Steve Hutkai

Title: VP, Tax & Treasurer

**REINSTATEMENT OF AND AMENDMENT NO. 7**
**TO**
**TAX MASTER SERVICE AGREEMENT**

This Reinstatement of and Amendment No. 7 to Tax Master Service Agreement (this "Reinstatement and Amendment"), effective as of October 31, 2023 (the "Reinstatement and Amendment Effective Date"), is made by and between PricewaterhouseCoopers LLP, a Delaware limited liability partnership ("PwC"), and Big Lots Stores, LLC (formerly Big Lots Stores, Inc.), an Ohio corporation ("Client"). Client and PwC are sometimes hereinafter referred to individually as a "Party" and, together, the "Parties".

**RECITALS**

**WHEREAS**, the Parties previously entered into that certain Tax Master Service Agreement, dated July 11, 2012 (the "Agreement"), which, by its terms, expired on July 11, 2015, but which term has been extended from time to time by the Parties in SOWs executed under the Agreement or through amendments to the Agreement; and

**WHEREAS**, the Parties desire to reinstate the Agreement in its entirety and extend the Agreement as expressly set forth in this Reinstatement and Amendment.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained in this Reinstatement and Amendment, the sufficiency and receipt of which are hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

1. Reinstatement. Client and PwC hereby agree that the Agreement is hereby reinstated and, except as specifically herein amended, all terms, provisions, conditions and exhibits contained in the Agreement are hereby confirmed, ratified and restated and shall remain unmodified and in full force and effect.

2. Section 7; Term and Termination. The first sentence of Section 7 of the Agreement shall be deleted in its entirety and replaced with the following:

   "This Agreement shall expire on March 31, 2024, unless earlier terminated in accordance herewith."

3. All capitalized terms which are not otherwise defined herein shall possess the respective meanings allocated to such terms in the Agreement. Except as specifically amended or waived by this Amendment, all of the terms and conditions of the Agreement shall remain in full force and effect.  If there is any conflict between the terms and provisions set forth in this Amendment and those set forth in the Agreement, this Amendment shall control. This Amendment may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one single document between the Parties. Counterparts may be exchanged by facsimile or attached as a pdf, jpeg, or similar file type to an email or by DocuSign, Adobe Acrobat, or other electronic signature.

**IN WITNESS WHEREOF**, each Party has caused this Reinstatement and Amendment to be executed by its duly authorized representatives as of the Reinstatement and Amendment Effective Date.

| PRICEWATERHOUSECOOPERS LLP | BIG LOTS STORES, LLC |
|---|---|
| By: *Matthew Haskins* | By: *Steve Hutkai* |
| Name: Matthew Haskins | Name: Steve Hutkai |
| Title: Authorized Signatory | Title: VP, Tax & Treasurer |
| Date: 11/1/2023 | Date: 11/1/2023 |

**REINSTATEMENT OF AND AMENDMENT NO. 8**
**TO**
**TAX MASTER SERVICE AGREEMENT**

This Reinstatement of and Amendment No. 8 to Tax Master Service Agreement (this "Reinstatement and Amendment"), effective as of March 26, 2024 (the "Reinstatement and Amendment Effective Date"), is made by and between PricewaterhouseCoopers LLP, a Delaware limited liability partnership ("PwC"), and Big Lots Stores, LLC (formerly Big Lots Stores, Inc.), an Ohio corporation ("Client"). Client and PwC are sometimes hereinafter referred to individually as a "Party" and, together, the "Parties".

**RECITALS**

**WHEREAS**, the Parties previously entered into that certain Tax Master Service Agreement, dated July 11, 2012 (the "Agreement"), which, by its terms, expired on July 11, 2015, but which term has been extended from time to time by the Parties in SOWs executed under the Agreement or through amendments to the Agreement; and

**WHEREAS**, the Parties desire to reinstate the Agreement in its entirety and extend the Agreement as expressly set forth in this Reinstatement and Amendment.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained in this Reinstatement and Amendment, the sufficiency and receipt of which are hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

1. Reinstatement. Client and PwC hereby agree that the Agreement is hereby reinstated and, except as specifically herein amended, all terms, provisions, conditions and exhibits contained in the Agreement are hereby confirmed, ratified and restated and shall remain unmodified and in full force and effect.

2. Section 7; Term and Termination. The first sentence of Section 7 of the Agreement shall be deleted in its entirety and replaced with the following:

   "This Agreement shall expire on September 30, 2024, unless earlier terminated in accordance herewith."

3. All capitalized terms which are not otherwise defined herein shall possess the respective meanings allocated to such terms in the Agreement. Except as specifically amended or waived by this Amendment, all of the terms and conditions of the Agreement shall remain in full force and effect.  If there is any conflict between the terms and provisions set forth in this Amendment and those set forth in the Agreement, this Amendment shall control. This Amendment may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one single document between the Parties. Counterparts may be exchanged by facsimile or attached as a pdf, jpeg, or similar file type to an email or by DocuSign, Adobe Acrobat, or other electronic signature

**IN WITNESS WHEREOF**, each Party has caused this Reinstatement and Amendment to be executed by its duly authorized representatives as of the Reinstatement and Amendment Effective Date.

**PRICEWATERHOUSECOOPERS LLP**

By: _Matthew Haskins_
6DB319217BB64E9...
Name: Matthew Haskins
Title: Authorized Signatory
Date:  3/29/2024

**BIG LOTS STORES, LLC**

By: _Steve Hutkai_
0D00ADAF45F141E...
Name: Steve Hutkai
Title: VP, Tax & Treasurer
Date:  4/5/2024

## AMENDMENT NO. 9
## TO
## TAX MASTER SERVICE AGREEMENT

This Amendment No. 9 to Tax Master Service Agreement (this "Amendment"), effective as of September 17, 2024 (the "Amendment Effective Date"), is made by and between PricewaterhouseCoopers LLP, a Delaware limited liability partnership ("PwC"), and Big Lots Stores, LLC (formerly Big Lots Stores, Inc.), an Ohio corporation ("Client"). Client and PwC are sometimes hereinafter referred to individually as a "Party" and, together, the "Parties".

### RECITALS

**WHEREAS**, the Parties previously entered into that certain Tax Master Service Agreement, dated July 11, 2012 (the "Agreement"), which, by its terms, expired on July 11, 2015, but which term has been extended from time to time by the Parties in SOWs executed under the Agreement or through amendments to the Agreement; and

**WHEREAS**, the Parties desire to extend the Agreement as expressly set forth in this Amendment.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained in this Amendment, the sufficiency and receipt of which are hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

1. Section 7; Term and Termination. The first sentence of Section 7 of the Agreement shall be deleted in its entirety and replaced with the following:

   "This Agreement shall expire on March 31, 2025, unless earlier terminated in accordance herewith."

2. All capitalized terms which are not otherwise defined herein shall possess the respective meanings allocated to such terms in the Agreement. Except as specifically amended or waived by this Amendment, all of the terms and conditions of the Agreement shall remain in full force and effect.  If there is any conflict between the terms and provisions set forth in this Amendment and those set forth in the Agreement, this Amendment shall control. This Amendment may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one single document between the Parties. Counterparts may be exchanged by facsimile or attached as a pdf, jpeg, or similar file type to an email or by DocuSign, Adobe Acrobat, or other electronic signature.

**IN WITNESS WHEREOF**, each Party has caused this Amendment to be executed by its duly authorized representatives as of the Reinstatement and Amendment Effective Date.

**PRICEWATERHOUSECOOPERS LLP**

Signed by:

By: *Matthew P. Haskins*
    6DB319217BB64E9...

Name: Matthew Haskins
Title: Authorized Signatory
Date: Signer2wC_Date_1

**BIG LOTS STORES, LLC**

DocuSigned by:

By: *Steve Hutkai*
    0D00ADAF45F141E...

Name: Steve Hutkai
Title: VP, Tax & Treasurer
Date: 9/18/2024