## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>        Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>**October 9, 2024, at 1:00 p.m. (ET)**<br><br>**Objection Deadline:**<br>**October 2, 2024, at 4:00 p.m. (ET)** |

**DEBTORS' APPLICATION FOR ENTRY
OF AN ORDER, PURSUANT TO SECTIONS 327(a) AND 328(a)
OF THE BANKRUPTCY CODE, AUTHORIZING THE RETENTION AND
EMPLOYMENT OF GUGGENHEIM SECURITIES, LLC AS INVESTMENT BANKER
FOR THE DEBTORS AND DEBTORS-IN-POSSESSION EFFECTIVE AS OF THE
PETITION DATE, AND MODIFYING CERTAIN TIME-KEEPING REQUIREMENTS**

The debtors and debtors-in-possession in the above-captioned cases (collectively, the

"**Debtors**" or the "**Company**") hereby submit this application (this "**Application**") for entry of an

order, substantially in the form annexed hereto as **Exhibit A** (the "**Order**"), pursuant to sections

327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy**

**Code**"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

**Rules**"), and rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of

the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"),

(i) authorizing the retention and employment of Guggenheim Securities, LLC ("**Guggenheim**

**Securities**") as the Debtors' investment banker, effective as of the Petition Date (as defined

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows:  Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

below), in accordance with the terms and conditions of that certain engagement letter between Guggenheim Securities and the Debtors, effective as of May 20, 2024 (together with the Annex and the Indemnification Provisions attached thereto, the "**Engagement Letter**"), a copy of which is attached hereto as **Exhibit B**;[2] (ii) modifying certain timekeeping requirements of Local Rule 2016-2; and (iii) granting related relief.  In support of this Application, the Debtors relies upon the declaration of Stuart Erickson, Senior Managing Director at Guggenheim Securities (the "**Erickson Declaration**"), attached hereto as **Exhibit C**.   In further support of this Application, the Debtors respectfully state as follows:

## BACKGROUND

1. On September 9, 2024 (the "**Petition Date**"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "**Court**") a voluntary petition for relief under the Bankruptcy Code.  The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or creditors' committee has been appointed in these chapter 11 cases (the "**Chapter 11 Cases**").

2. Additional factual background relating to the Debtors' business and the commencement of these Chapter 11 Cases is set forth in the *Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings* [Docket No. 3] (the "**First Day Declaration**").

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

**Jurisdiction**

3.     The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2.  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Application to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**Relief Requested**

4.     By this Application, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the retention and employment of Guggenheim Securities as the Debtors' investment banker, effective as of the Petition Date, in accordance with the terms and conditions of the Engagement Letter, (ii) modifying certain timekeeping requirements of Local Rule 2016-2 and (iii) granting related relief.

**GUGGENHEIM SECURITIES' QUALIFICATIONS
AND THE NEED FOR GUGGENHEIM SECURITIES' SERVICES**

5.     The Debtors submit this Application because they require a qualified investment banker to assist them in the critical tasks associated with guiding the Debtors through these Chapter 11 Cases.  The Debtors believe that their retention of an investment banker is necessary and appropriate to enable them to evaluate the financial and economic issues raised by these

Chapter 11 Cases, to successfully consummate one or more Transactions, and to fulfill certain of their statutory duties.

6.     The Debtors selected Guggenheim Securities as their investment banker in these Chapter 11 Cases based upon Guggenheim Securities' extensive experience in matters involving complex chapter 11 cases and Guggenheim Securities' excellent reputation for the services that it has rendered on behalf of debtors and creditor constituencies throughout the United States.

7.     As set forth in the Erickson Declaration, Guggenheim Securities and its senior professionals have extensive expertise providing investment banking services to financially distressed companies, creditors, committees, equity holders, asset purchasers and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court.  Guggenheim Securities and its professionals are providing or have provided investment banking services in connection with the following recent cases, among others:  *See, e.g.*, *In re Hornblower Holdings LLC*, No. 24-90061 (MI) (Bankr. S.D. Tex. Feb. 21, 2024); *In re Robertshaw US Holding Corp.*, No. 24-90052 (CML) (Bankr. S.D. Tex. Feb. 15, 2024); *Sunlight Financial Holdings Inc.*, No. 23-11794 (MFW) (Bankr. D. Del. Oct. 30, 2023); *In re Rite Aid Corporation,* No. 23-18993 (MBK) (Bankr. D.N.J. Oct. 15, 2023); *In re AN Global LLC*, No. 23-11294 (JKS) (Bankr. D. Del. Aug. 28, 2023); *In re Mallinckrodt plc*, No. 23-11258 (JTD) (Bankr. D. Del. Aug. 23, 2023); *In re Instant Brands Acquisition Holdings Inc.*, No. 23-90716 (MI) (Bankr. S.D. Tex. June 12, 2023); *In re Cyxtera Technologies, Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. June 4, 2023); *In re Kidde-Fenwal, Inc.*, No. 23-10638 (LSS) (July 27, 2023); *In re Lannett Company, Inc.*, No. 23-10559 (KJS) (Bankr. D. Del. May 2, 2023); *In re Lincoln Power, L.L.C.*, No. 23-10382 (LSS) (Mar. 31, 2023); *In re Ryze Renewables II, LLC*, No. 23-10289 (BLS) (Mar. 9, 2023); *In re Nielsen & Bainbridge, LLC*, No. 23-90071 (DRJ) (Bankr. S.D. Tex. Feb. 8, 2023);

4

*In re Washington Prime Group Inc.*, No. 21-31948 (MI) (Bankr. S.D. Tex. July 27, 2021); *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Jan. 12, 2021); *In re California Pizza Kitchen, Inc.*, No. 20-33752 (MI) (Bankr. S.D. Tex. Oct. 6, 2020); *In re Ascena Retail Grp., Inc.*, No. 20-33113 (KRH) (Bankr. E.D. Va. Sept. 8, 2020); *In re Templar Energy LLC*, No. 20-11441 (BLS) (June 29, 2020); *In re Hornbeck Offshore Servs., Inc.*, No. 20-32679 (DRJ) (Bankr. S.D. Tex. June 18, 2020); *In re OneWeb Glob. Ltd.*, No. 20-22437 (RDD) (Bankr. S.D.N.Y. May 21, 2020); *In re Pier 1 Imports, Inc.*, No. 20-30805 (KRH) (Bankr. E.D. Va. Apr. 8, 2020); *In re White Star Petrol. Holdings, LLC*, No. 19-12521 (JL) (Bankr. W.D. Okla. July 12, 2019); *In re Pernix Sleep, Inc.*, No. 19-10323 (CSS) (Mar. 22, 2019); *In re Charlotte Russe Holding, Inc.*, No. 19-10210 (LSS) (Mar. 6, 2019); *In re LBI Media, Inc.*, No. 18-12655 (CSS) (Dec. 13, 2018); *In re Mattress Firm, Inc.*, No. 18-12241 (CSS) (Nov. 7, 2018); *In re The NORDAM Grp., Inc.*, No. 18-11699 (MFW) (Aug. 28, 2018); *In re Charming Charlie Holdings Inc.*, No. 17-12906 (CSS) (Jan. 10, 2018); *In re Appvion, Inc.*, No. 17-12082 (KJC) (Nov. 1, 2017); *In re Payless Holdings LLC*, No. 17-42267 (KAS) (Bankr. E.D. Mo. May 9, 2017); *In re Limited Stores Co., LLC*, No. 17-10124 (KJC) (Feb. 16, 2017); *In re Essar Steel Minn. and ESML Holdings Inc.*, No. 16-11626 (BLS) (Aug. 9, 2016); *In re Juniper GTL LLC*, No. 16-31959 (MI) (Bankr. S.D. Tex. May 18, 2016); *In re Tex. Pellets, Inc.*, No. 16-90126 (BP) (Bankr. E.D. Tex. July 28, 2016); *In re Pac. Sunwear of Cal., Inc.*, No. 16-10882 (LSS) (May 3, 2016); *In re Hutcheson Med. Ctr., Inc.*, No. 14-42863 (PB) (Bankr. N.D. Ga. May 22, 2015); *In re Cal Dive Int'l, Inc.*, No. 15-10458 (CSS) (May 26, 2015).[3]

---

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application. Copies of these orders are available upon request to the Debtors' counsel.

8.      The Debtors, moreover, employed Guggenheim Securities prior to the commencement of these Chapter 11 Cases in May 2024, and Guggenheim Securities, together with the Debtors' other advisors, assisted the Debtors in preparing for these Chapter 11 Cases.  As a result, Guggenheim Securities is already familiar with the Debtors' businesses and operations.

9.      For the foregoing reasons, the Debtors believe that Guggenheim Securities is well-qualified to advise the Debtors in these Chapter 11 Cases in an expert and efficient manner. The Debtors submit that the retention of Guggenheim Securities on the terms and conditions set forth herein and in the Engagement Letter is necessary and appropriate, is in the best interests of the Debtors' estates, their creditors, and all other parties in interest, and should be granted in all respects.

## SCOPE OF SERVICES

10.     Subject to the Court's approval, the Debtors anticipate that Guggenheim Securities will perform investment banking services by continuing to assist the Debtors, to the extent requested, with respect to the following, in each case, subject to the terms of and to the extent set forth in the Engagement Letter:[4]

> a.      Review and analysis of the business, financial condition and prospects of the Company;
>
> b.      Evaluation of the liabilities of the Company, its debt capacity and its strategic and financial alternatives;
>
> c.      In connection with any Transaction:
>
> > i.      Evaluation from a financial and capital markets point of view of alternative structures and strategies for implementing the Transaction;

---

[4] To the extent there is any inconsistency between the summary set forth herein of the services to be provided under the Engagement Letter and the terms of the Engagement Letter, the terms of the Engagement Letter shall control.

       ii.     Preparation of offering, marketing, disclosure or other transaction materials concerning the Company and the Transaction for distribution and presentation to the Transaction Counterparties;

       iii.    Development and implementation of a marketing plan with respect to such Transaction;

       iv.    Identification and solicitation of, and the review of proposals received from, the Investors and other prospective Transaction Counterparties; and

       v.     Negotiation of the Transaction; and

     d.    In connection with a Bankruptcy Case, evaluation, from a financial point of view, of alternative strategies for implementing and seeking approval of any such Transaction, including pursuant to a Plan under Chapter 11 of the Bankruptcy Code confirmed in connection with any Bankruptcy Case in Bankruptcy Court.

11.     By separate applications, the Debtors are also seeking to employ various other professionals in these Chapter 11 Cases. The Debtors do not believe that the services to be rendered by Guggenheim Securities will be duplicative of the services performed by any of the other professionals retained by the Debtors, and Guggenheim Securities intends to use reasonable efforts to coordinate and work with such other professionals to minimize any duplication of services.

**PROFESSIONAL COMPENSATION**

12.     As set forth more fully in the Engagement Letter, Guggenheim Securities and the Debtors have agreed, among other things, on the following terms of compensation and expense reimbursement (the "**Fee and Expense Structure**"):[5]

     a.    **Monthly Fees**.

       i.     The Company will pay Guggenheim Securities a non-refundable cash fee of $200,000 per month (each, a "**Monthly Fee**"), which fee will be due and paid by the Company in advance promptly on the

---

[5] To the extent there is any inconsistency between the summary of the Fee and Expense Structure set forth herein and the terms of the Engagement Letter, the terms of the Engagement Letter shall control.

twentieth (20) day of each calendar month during the period of Guggenheim Securities' engagement under the Engagement Letter (with the first such Monthly Fee to become due and payable by the Company as of May 20, 2024), in each case, whether or not any Transaction is consummated.

ii.    Commencing with the fourth full Monthly Fee actually paid under the Engagement Letter, an amount equal to 50% of the Monthly Fees actually paid to Guggenheim Securities shall be credited against any Transaction Fee that thereafter becomes payable pursuant to Sections 4(b), 4(c) or 4(d) of the Engagement Letter (it being understood that, once credited against any one of the foregoing fees, any such amount of the Monthly Fee so credited cannot be credited again against any other fee payable under the Engagement Letter).

b.    **Restructuring Transaction Fee(s)**.

i.    If a Restructuring Transaction is consummated, then, in each case, the Company will pay Guggenheim Securities a cash fee (the "**Restructuring Transaction Fee**") in an amount equal to 1.50% of the Aggregate Restructuring Value relating to such Restructuring Transaction.

ii.    Any such Restructuring Transaction Fee will be payable promptly upon the consummation of any Restructuring Transaction.

c.    **Financing Fee(s)**.

i.    If any Financing Transaction is consummated, then, in each case, the Company will pay Guggenheim Securities one or more cash fees (each, a "**Financing Fee**") in an amount equal to the sum of:

A.    125 basis points (1.25%) of the aggregate face amount of any debt obligations to be issued or raised by the Company (including the face amount of any related commitments) in any Debt Financing that is secured by first priority liens over the Company's assets, plus

B.    250 basis points (2.50%) of the aggregate face amount of any debt obligations to be issued or raised by the Company (including the face amount of any related commitments) in any Debt Financing that is not covered by Section 4(c)(i)(A) of the Engagement Letter, plus

C.    400 basis points (4.00%) of the aggregate amount of gross proceeds raised by the Company in any Equity Financing (including the face amount of any related commitments); plus

D.  With respect to any other securities or indebtedness issued that is not otherwise covered by Sections 4(c)(i)(A) to 4(c)(i)(C) of the Engagement Letter, such financing fees, underwriting discounts, placement fees or other compensation as customary under the circumstances and mutually agreed in advance by the Company and Guggenheim Securities.

ii.  Financing Fees for any Financing Transaction will be payable upon the consummation of the related Financing Transaction.

iii.  In connection with any Debt Financing constituting a "debtor-in-possession" financing consummated in connection with a Bankruptcy Case ("**DIP Financing**"), on account of which Guggenheim Securities has been actually paid a Financing Fee under the Engagement Letter (such portion of any Financing Fee so paid specifically on account of any such DIP Financing, a "**DIP Financing Fee**"), then, to the extent that the amount of any such DIP Financing Fee exceeds $2,500,000 (the amount of any such excess, the "**Relevant DIP Fee Amount**"), an amount equal to 50% of any such Relevant DIP Fee Amount shall be credited against any Restructuring Transaction Fee or Sale Transaction Fee that thereafter becomes payable pursuant to Sections 4(b) or 4(d) of the Engagement Letter; it being understood that such portion of any such Relevant DIP Fee Amount can only be credited once against any one of the foregoing fees and cannot be credited against any other fee payable under the Engagement Letter.

d.  **Sale Transaction Fee(s)**.

i.  If any Sale Transaction is consummated, then in each case, the Company will pay Guggenheim Securities a cash fee (each, a "**Sale Transaction Fee**") in an amount equal to 1.50% of the Aggregate Sale Consideration relating to such Sale Transaction.

ii.  Any such Sale Transaction Fee will be payable promptly upon the consummation of any Sale Transaction.

e.  **Maximum Fee Cap.**  Notwithstanding anything to the contrary in Section 4 of the Engagement Letter, the aggregate amount of Monthly Fees, Restructuring Transaction Fees, Financing Fees and Sale Transaction Fees that is actually paid to Guggenheim Securities under the Engagement Letter shall not exceed an amount equal to $16,000,000 (unless otherwise agreed in writing among the Company and Guggenheim Securities).

f.  **Expense Reimbursement**.  The Company will, whether or not any Transaction contemplated under the Engagement Letter will be proposed or

consummated, promptly reimburse Guggenheim Securities, upon request, for its reasonable and documented travel and all other reasonable and documented out-of-pocket expenses incurred in connection with or arising out of the Engagement Letter, including Guggenheim Securities' entering into the Engagement Letter, Guggenheim Securities' activities under or as contemplated by the Engagement Letter or Guggenheim Securities' enforcing its rights thereunder, including all reasonably incurred (and documented) fees, disbursements and other charges of (x) any legal counsel retained by Guggenheim Securities (without the requirement that the retention of such legal counsel be approved by the applicable Insolvency Authority) and (y) any other consultants and advisors reasonably required to be retained by Guggenheim Securities.

13.    For the avoidance of doubt, (i) in connection with any Transaction, in the event that more than one such Transaction is effected or occurs, the Debtors will, in each case, separately pay Guggenheim Securities the applicable Transaction Fee on account of each such Transaction as and when specified in the provisions of Section 4 of the Engagement Letter, and (ii) more than one fee and more than one type of fee may be payable to Guggenheim Securities under the Engagement Letter in connection with any single Transaction or a series of Transactions, and in each case, each such fee will be paid to Guggenheim Securities.  However, if a transaction is consummated that constitutes both a Restructuring Transaction and a Sale Transaction, then Guggenheim Securities shall not be paid on account thereof both a Restructuring Transaction Fee and a Sale Transaction Fee, but shall instead, as between such two fees and on account of such transaction, only be paid the higher of the Restructuring Transaction Fee and the Sale Transaction Fee applicable thereto.

14.    During the pendency of these Chapter 11 Cases, Guggenheim Securities shall apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court and consistent with the Fee and Expense Structure.

15.    The Debtors believe that the Fee and Expense Structure is reasonable.  The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Guggenheim Securities and the fee structures typically utilized by leading investment banking firms of similar stature to Guggenheim Securities for comparable engagements, both in and out of court.  The Fee and Expense Structure is consistent with Guggenheim Securities' normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein.  Moreover, the Fee and Expense Structure is reasonable in light of (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) Guggenheim Securities' substantial experience with respect to investment banking services, and (d) the nature and scope of work to be performed by Guggenheim Securities in these Chapter 11 Cases.  In particular, the Debtors believe that the Fee and Expense Structure creates a proper balance between fixed fees and contingent fees.  Similar fixed and contingent fee arrangements have been approved and implemented in other recent, large chapter 11 cases, including certain of the cases referenced in paragraph 7 above.  *See, e.g.*, *In re Hornblower Holdings LLC*, No. 24-90061 (MI) (Bankr. S.D. Tex. Feb. 21, 2024) (approving retention of Guggenheim Securities with a similar fixed and contingent fee arrangement); *In re Robertshaw US Holding Corp.*, No. 24-90052 (CML) (Bankr. S.D. Tex. Feb. 15, 2024) (same); *Sunlight Financial Holdings Inc.*, No. 23-11794 (MFW) (Bankr. D. Del. Oct. 30, 2023) (same); *In re Rite Aid Corporation*, No. 23-18993 (MBK) (Bankr. D.N.J. Oct. 15, 2023) (same); *In re AN Global LLC*, No. 23-11294 (JKS) (Bankr. D. Del. Aug. 28, 2023) (same); *In re Cyxtera Technologies, Inc.*, Case No. 23-14853 (JKS) (Bankr. D. Del. May 4, 2023) (same); *In re Mallinckrodt plc*, No. 23-11258 (JTD) (Bankr. D. Del. Aug. 23, 2023) (same); *In re Instant Brands Acquisition Holdings Inc.*, No. 23-90716 (MI) (Bankr. S.D. Tex. June 12, 2023) (same); *In re Kidde-Fenwal, Inc.*, No. 23-10638 (LSS) (Bankr. D. Del. May

14, 2023) (same); *In re Lannett Company, Inc.*, No. 23-10559 (KJS) (Bankr. D. Del. May 2, 2023) (same);*In re Lincoln Power, L.L.C.*, No. 23-10382 (LSS) (Bankr. D. Del. Mar. 31, 2023) (same); *In re Ryze Renewables II, LLC*, No. 23-10289 (BLS) (Bankr. D. Del. Mar. 9, 2023) (same); *In re Nielsen & Bainbridge, LLC*, No. 23-90071 (DRJ) (Bankr. S.D. Tex. Feb. 8, 2023) (same); *In re Washington Prime Group Inc.*, No. 21-31948 (MI) (Bankr. S.D. Tex. July 27, 2021) (same); *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Jan. 12, 2021) (same); *In re California Pizza Kitchen, Inc.*, No. 20-33752 (MI) (Bankr. S.D. Tex. Oct. 6, 2020) (same); *In re Templar Energy LLC*, No. 20-11441 (BLS) (Bankr. D. Del. June 29, 2020) (same); *In re Pier 1 Imports, Inc.*, No. 20-30805 (KRH) (Bankr. E.D. Va. April 8, 2020) (same); *In re White Star Petrol. Holdings, LLC, et al.*, No. 19-12521 (JL) (Bankr. W.D. Okla. July 12, 2019) (same); *In re LBI Media, Inc.*, No. 18-12655 (CSS) (Bankr. D. Del. Dec. 13, 2018) (same); *In re Mattress Firm, Inc.*, No. 18-12241 (CSS) (Bankr. D. Del. Nov. 7, 2018) (same); *In re The NORDAM Grp., Inc.*, No. 18-11699 (MFW) (Bankr. D. Del. Aug. 28, 2018) (same).[6]

## MODIFICATION OF COMPLIANCE WITH TIME-DETAIL REQUIREMENTS

16.     Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee arrangements are not hours-based, Guggenheim Securities does not maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals.  Given the foregoing and that Guggenheim Securities' compensation is based on fixed and contingent fees, the Debtors request, pursuant to Local Rule 2016-2(h), that Guggenheim Securities' professionals be excused from maintaining time records in connection with the services to be rendered pursuant to the Engagement Letter, notwithstanding anything to the contrary in the

---

[6]  Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application. Copies of these orders are available upon request to the Debtors' counsel.

Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order of this Court, or any other guideline regarding the submission and approval of fee applications.  Guggenheim Securities will nonetheless maintain reasonably detailed summary time records in half-hour increments, which records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed.  Courts in other recent large chapter 11 cases have excused flat-fee professionals from timekeeping requirements under similar circumstances, including certain of the cases referenced in paragraph 7 above.

## INDEMNIFICATION OF GUGGENHEIM SECURITIES

17.    As part of the overall compensation payable to Guggenheim Securities under the terms of the Engagement Letter, the Engagement Letter provides for the indemnification of Guggenheim Securities and its affiliates, and each of its and their respective controlling persons, stockholders, members, directors, officers, managers, employees, consultants, legal counsel and agents, to the fullest extent lawful, from and against any and all losses, claims, damages, obligations, penalties, judgments, awards and other liabilities, as well as for the reimbursement of certain fees, costs, expenses and disbursements, in each case, as incurred, related to or arising out of or in connection with Guggenheim Securities' services under the Engagement Letter.[7]  Such terms of indemnification, as modified by the Order, reflect the qualifications and limits on such terms that are customary for investment bankers such as Guggenheim Securities in chapter 11 cases, including certain of the cases referenced in paragraph 7 above.

---

[7]  To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the Indemnification Provisions annexed to the Engagement Letter, the terms of such Indemnification Provisions and the Engagement Letter shall control.

## GUGGENHEIM SECURITIES' DISINTERESTEDNESS

18.     Guggenheim Securities has informed the Debtors that as of the date hereof, except as set forth in the Erickson Declaration, (a) Guggenheim Securities has no connection with the Debtors, their creditors, equity security holders, or other parties in interest in these Chapter 11 Cases; (b) Guggenheim Securities does not have or represent any interest adverse to the Debtors' estates; and (c) Guggenheim Securities (i) is not a creditor, equity security holder, or an insider of the Debtors and (ii) is not and was not, within two (2) years before the Petition Date, a director, officer, or employee of the Debtors.  In addition, none of the Guggenheim Securities professionals expected to assist the Debtors in these Chapter 11 Cases are related or connected to any United States Bankruptcy Judge for the District of Delaware, the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), or any person employed in the office of the U.S. Trustee.

19.     During the 90-day period preceding the commencement of these Chapter 11 Cases, the Debtors paid in the ordinary course certain fees and expense reimbursements due under the Engagement Letter.  Specifically, (a) on June 20, 2024, $400,000.00 on account of the May 2024 and June 2024 Monthly Fees and related expense reimbursements in the amount of $2,304.43, (b) on July 19, 2024, $200,000.00 on account of the July 2024 Monthly Fee and related expense reimbursements in the amount of $8,650.74, (c) on August 19, 2024, $200,000.00 on account of the August 2024 Monthly Fee and related expense reimbursements in the amount of $4,512.32, (d) on August 26, 2024, $42,940.08 for certain expense reimbursements, of which $25,000.00 was an expense advance, and (e) on September 4, 2024, an expense advance in the amount of $15,000.00.  Guggenheim Securities will apply any such expense advances received from the Debtors before the Petition Date, first, to any prepetition expenses incurred but not reimbursed prepetition and, second, to any postpetition expenses.

20.     The Debtors have been advised that Guggenheim Securities has no agreement with any other entity to share any compensation received from the Debtors for professional services rendered in connection with these Chapter 11 Cases, except as permitted under section 504(b)(1) of the Bankruptcy Code.

21.     Based on the foregoing, the Debtors believe that Guggenheim Securities is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and utilized in sections 327(a) and 328(c) of the Bankruptcy Code.

## Basis for Relief

22.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval, "may employ one or more attorneys, accountants, appraisers, auctioneers or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the debtor in carrying out the debtor's duties under this title." 11 U.S.C. § 327(a).

23.     Additionally, pursuant to section 328(a) of the Bankruptcy Code, the Debtors, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Furthermore, Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

24.     The Debtors submit that for all the reasons stated above and in the Erickson Declaration, the retention and employment of Guggenheim Securities as investment banker to the Debtors as of the Petition Date is warranted.  The terms of the Engagement Letter were negotiated in good faith and at arm's length between the Debtors and Guggenheim Securities and reflect the Debtors' evaluation of the extensive work and substantial commitment to be undertaken by Guggenheim Securities during these Chapter 11 Cases, in addition to the work already undertaken by Guggenheim Securities before the Petition Date (including in connection with these Chapter 11 Cases).  Also, given the numerous issues that Guggenheim Securities may be required to address in performing its services for the Debtors pursuant to the Engagement Letter, Guggenheim Securities' commitment to the variable time requirements and effort necessary to address all such issues as they arise, and the market prices for Guggenheim Securities' services for engagements of this nature, the Debtors submit that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.  The Debtors also believe that the Fee and Expense Structure appropriately reflects (a) the nature and scope of Guggenheim Securities' services, (b) Guggenheim Securities' substantial experience with respect to investment banking services, and (c) the fee structures typically utilized by Guggenheim Securities and other investment banks, which do not bill their clients on an hourly basis, in bankruptcy or otherwise.

25.     Based on the foregoing, the Debtors submit that the relief requested herein is appropriate.

## NOTICE

26.     Notice of this Application has been provided to: (a) the U.S. Trustee; (those creditors holding the 30 largest unsecured claims against the Debtors' estates (on a consolidated

basis); (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for states in which the Debtors conduct business; (g) Choate, Hall & Stewart LLP, as counsel to the ABL Agent; (h) Otterbourg P.C., as counsel to the Term Agent; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

### Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as **Exhibit A**, and (b) grant such other and further relief as is just and proper.

Dated: September 18, 2024        Respectfully submitted,
Wilmington, Delaware


**BIG LOTS, INC.**
(for itself and on behalf of its affiliated debtors)

*/s/ Ronald A. Robins, Jr.*
Ronald A. Robins, Jr.
Executive Vice President, Chief Legal and
Governance Officer