# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>**October 9, 2024, at 1:00 p.m. (ET)**<br><br>**Objection Deadline:**<br>**October 2, 2024, at 4:00 p.m. (ET)** |

### DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF MORRIS, NICHOLS, ARSHT & TUNNELL LLP AS BANKRUPTCY CO-COUNSEL FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors in possession (the "**Debtors**"), by and through their undersigned proposed counsel, respectfully move (the "**Application**") as follows:

### RELIEF REQUESTED

1. The Debtors respectfully seek entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the retention and employment of Morris, Nichols, Arsht & Tunnell LLP ("**Morris Nichols**") as bankruptcy co-counsel to the Debtors *nunc pro tunc* to the Petition Date (as defined below).

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

2. In support of this Application, the Debtors rely upon and incorporate by reference (i) the *Declaration of Robert J. Dehney, Sr. in Support of the Debtors' Application for Entry of an Order Authorizing Retention and Employment of Morris, Nichols, Arsht & Tunnell LLP as Bankruptcy Co-Counsel for the Debtors* Nunc Pro Tunc *to the Petition Date* (the "**Dehney Declaration**"), attached as **Exhibit B**, (ii) the *Statement of Morris, Nichols, Arsht & Tunnell LLP Pursuant to 11 U.S.C. § 329, Fed. R. Bankr. P. 2016 and Bankr. D. Del. L.R. 2016-1* (the "**Rule 2016 Statement**"), attached as **Exhibit C**, and (iii) the *Declaration of Ronald A. Robins, Jr., in Support of the Debtors' Application for Entry of an Order Authorizing Retention and Employment of Morris, Nichols, Arsht & Tunnell LLP as Bankruptcy Co-Counsel for the Debtors* Nunc Pro Tunc *to the Petition Date* (the "**Robins Declaration**"), attached hereto as **Exhibit D**.

## JURISDICTION

3. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over these chapter 11 cases and this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these cases and the Application is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order with respect to this Application if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

5. The statutory bases for the relief requested herein are sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code, as supplemented by rules 2014 and 2016 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules 2014-1 and 2016-1.

## BACKGROUND

6. On September 9, 2024 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors remain in possession of their property and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and no official committee has been appointed in the Chapter 11 Cases.

7. Big Lots is a one-stop shop home discount retailer. Big Lots' mission is to help customers "Live Big and Save Lots" by offering bargains on everything for their homes, including furniture, décor, pantry essentials, kitchenware, groceries, and pet supplies. Headquartered in Columbus, Ohio, Big Lots operates more than 1,300 stores across 48 states in the United States, as well as an ecommerce store with expanded fulfillment and delivery capabilities.

8. Additional information about the Debtors' businesses and affairs, capital structure, and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the *Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings* (the "**Ramsden Declaration**").

## BASIS FOR RELIEF

9. Under section 327(a) of the Bankruptcy Code, a debtor in possession may employ one or more attorneys to represent it in carrying out its duties under the Bankruptcy Code,

provided that such attorneys are disinterested persons and do not hold or represent an interest adverse to the estate. Section 101(14) of the Bankruptcy Code defines "disinterested person" as one who

> is not a creditor, an equity security holder, or an insider; [or] is not and was not, within 2 years before the date of the filing of the petition, a director, officer or employee of the debtor; and . . . does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

10. Prior to the commencement of these chapter 11 cases, the Debtors retained Morris Nichols to provide advice regarding, among other things, preparing for, commencing, and prosecuting these cases under chapter 11 of the Bankruptcy Code. The Debtors have engaged Morris Nichols as their bankruptcy co-counsel in connection with the filing and, subject to the entry of an order approving the retention of Morris Nichols, the prosecution of these chapter 11 cases.

11. The Debtors seek to retain and employ Morris Nichols because the firm's attorneys have extensive experience representing debtors in chapter 11 cases before this Court. Further, Morris Nichols attorneys have become familiar with the Debtors and their business and financial affairs through assisting the Debtors both prior to, and in connection with, these chapter 11 cases. For these reasons, Morris Nichols is well qualified to represent the Debtors as bankruptcy co-counsel.

12. The Debtors request approval of the employment of Morris Nichols *nunc pro tunc* to the Petition Date. Such relief is warranted by the extraordinary circumstances presented by these cases. The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. *See Matter of Ark. Co.*, 798 F.2d

4

645, 650 (3d Cir. 1986); *see also In re Indian River Homes, Inc.*, 108 B.R. 46, 52 (D. Del. 1989). Given the Debtors' need to have Morris Nichols commence work immediately, the Debtors were not able to seek approval of Morris Nichols's retention before Morris Nichols began work. Under these circumstances, no party will be prejudiced, and *nunc pro tunc* retention should be approved. Accordingly, the Debtors believe that Morris Nichols's retention *nunc pro tunc* to the Petition Date, on the terms and conditions proposed herein is appropriate.

## SERVICES TO BE PROVIDED BY MORRIS NICHOLS

13. The Debtors believe that the services of Morris Nichols are necessary to enable them to faithfully execute their duties as debtors in possession. Subject to further order of this Court, Morris Nichols will render the following professional services to the Debtors, in coordination with the Debtors' other advisors:

   a. perform all necessary services as the Debtors' bankruptcy counsel, including, without limitation, providing the Debtors with advice, representing the Debtors, and preparing necessary documents on behalf of the Debtors in the areas of restructuring and bankruptcy;

   b. take all necessary actions to protect and preserve the Debtors' estates during these chapter 11 cases, including the prosecution of actions by the Debtors, the defense of any actions commenced against the Debtors, negotiations concerning litigation in which the Debtors are involved and objecting to claims filed against the estate;

   c. prepare or coordinate preparation on behalf of the Debtors, as debtors in possession, necessary motions, applications, answers, orders, reports and papers in connection with the administration of these chapter 11 cases;

   d. counsel the Debtors with regard to their rights and obligations as debtors in possession;

   e. coordinate with the Debtors' other professionals in representing the Debtors in connection with these cases; and

   f. perform all other necessary legal services.

5

14. The Debtors believe that Morris Nichols's employment is in the best interests of the Debtors, their estates, and their creditors.

15. Subject to this Court's approval of the Application, Morris Nichols is willing to serve as the Debtors' counsel and to perform the services described above.

## DISINTERESTEDNESS OF MORRIS NICHOLS

16. To the best of the Debtors' knowledge, information and belief, and except to the extent otherwise indicated in the Dehney Declaration, Morris Nichols does not hold or represent any interest adverse to the Debtors' estates or their creditors, and Morris Nichols is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code.

17. Other than the Debtors, Morris Nichols does not, and has not, represented any entities in matters related to these chapter 11 cases. Morris Nichols may represent or may have represented certain parties with interests in the Debtors' cases, on matters unrelated to these chapter 11 cases. As set forth in the Dehney Declaration, Morris Nichols has conducted, and continues to conduct, research into its relations with the Debtors, the Debtors' substantial creditors and equity security holders, and other parties interested in these chapter 11 cases. As part of this inquiry, Morris Nichols obtained the names of individuals or entities that may be parties in interest in these chapter 11 cases (the "**Potential Parties in Interest**," attached to the Dehney Declaration as Schedule 1). Morris Nichols has entered the names of Potential Parties in Interest into a computer database containing the names of all clients and conflict information concerning the clients of Morris Nichols.

18. This inquiry has thus far revealed that certain of the Potential Parties in Interest were current or former Morris Nichols clients (the list of such clients is referred to herein as the "**Client Match List**"). Current clients are listed on Schedule 2 attached to the Dehney Declaration and former clients are listed on Schedule 3 attached to the Dehney Declaration.

6

Through the information generated from the above-mentioned computer inquiry, and through follow-up inquiries with Morris Nichols attorneys responsible for certain clients listed on the Client Match List, Morris Nichols determined that the representation of the clients on the Client Match List concerned matters unrelated to these chapter 11 cases, except to the extent otherwise indicated in the Dehney Declaration. Although Morris Nichols values all of its clients, none of the entities listed on the Client Match List represents significant financial revenues for Morris Nichols.[2]

19.     While Morris Nichols has undertaken, and continues to undertake, efforts to identify connections with the Debtors and other parties in interest, it is possible that connections with some parties in interest have not yet been identified. Should Morris Nichols, through its continuing efforts or as these cases progress, learn of any new connections of the nature described above, Morris Nichols will so advise the Court.

## COMPENSATION

20.     In connection with these chapter 11 cases, Morris Nichols was retained by the Debtors under an advance payment retainer pursuant to an engagement letter executed by the Debtors on July 22, 2024 (the "**Engagement Agreement**").

21.     In the 90 days before the Petition Date, Morris Nichols received the following payments from the Debtors:

| Type of Transaction | Payment Date | Payment Amount | Advance Balance |
|---|---|---|---|
| Opening Advance Balance | 08/05/24 | $100,000.00 | $100,000.00 |
| Additional Retainer Payment | 08/29/24 | $469,092.82 | $569,092.82 |
| Payment (retainer draw) | 08/29/24 | ($69,092.85) | $499,999.97 |
| Additional Retainer Payment | 09/06/24 | $130,786.40 | $630,786.37 |
| Payment (retainer draw) | 09/09/24 | ($80,786.40) | $549,999.97 |

---

[2] None of the entities listed on the Client Match List represent greater than 1% of Morris Nichols' revenue over the last 2 years.

7

22. As indicated in the above chart, the Debtors have paid in full each invoice issued by Morris Nichols. As a result, on the Petition Date, Morris Nichols held a balance of $549,999.97 (the "**Advance Payment**"). After all fees and charges that accrued prior to the Petition Date have been finally posted (the "**Final Billed Amount**"), Morris Nichols will issue a final billing statement (the "**Final Billing Statement**") for the actual fees, charges, and disbursements for the period prior to the Petition Date. The Final Billed Amount (net of payments received) shall be paid from the Advance Payment. Morris Nichols will then hold the balance of the Advance Payment as a postpetition advance payment to be applied against any unpaid fees and expenses approved by the Court with respect to Morris Nichols's final fee application in these cases.

23. Morris Nichols has not been paid any other compensation by the Debtors within the ninety days before the Petition Date and Morris Nichols is not a creditor of the Debtors.

24. In these cases, the Advance Payment held by Morris Nichols is appropriate. *See In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("Factors to be considered, include . . . whether terms of an engagement agreement reflect normal business terms in the marketplace; . . . the relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation [and] . . . whether the retention, as proposed, is in the best interests of the estate . . . ."). First, agreements regarding retainers are commonplace and "reflect normal business terms in the marketplace." *See id.* at 634. Second, the Debtors and Morris Nichols are sophisticated entities that have negotiated the Advance Payment at arm's length. Third, the Advance Payment is in the best interest of the Debtors and their estates because the Engagement Agreement and the Advance Payment allow the Debtors and Morris Nichols to maintain their prepetition relationship

and assure continuity of legal advice and representation through the prosecution of these bankruptcy cases. Thus, under the factors described by the *Insilco* court, the facts and circumstances of these cases support the Court's approval of the Advance Payment.

25. In addition, compensation for professional services rendered to the Debtors will be based upon the hours actually expended by each assigned professional at each professional's hourly billing rate, as detailed further in the Dehney Declaration. Subject to Court approval in accordance with Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules, and the orders of this Court, the Debtors propose to compensate Morris Nichols for professional services rendered at its normal and customary hourly rates in effect from time to time as set forth in the Dehney Declaration.

26. Morris Nichols will also seek reimbursement for reasonable and necessary expenses incurred, which shall include travel, photocopying, delivery service, postage, vendor charges and other out-of-pocket expenses incurred in providing professional services.

27. Morris Nichols intends to apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

## STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

28. Morris Nichols intends to use its reasonable best efforts to comply with the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective as of November 1, 2013 (the "**Appendix B Guidelines**"). To that end, Morris Nichols provides the following

statements in response to the request for additional information set forth in Part D.1. of the Appendix B Guidelines:

**Question:** Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

**Response:** No.

**Question:** Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

**Response:** No.

**Question:** If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

**Response:** In connection with the chapter 11 cases, Morris Nichols was retained by the Debtors pursuant to the Engagement Agreement dated July 22, 2024. The material terms of the prepetition restructuring engagement are the same as the terms described in the Dehney Declaration.

For work performed for the Debtors in 2024, Morris Nichols's hourly rates are as follows:

| | |
|---|---|
| Partners | $850–1,695 |
| Associates and Special Counsel | $545–965 |
| Paraprofessionals | $345–395 |
| Other Support Staff | $195 |

**Question:** Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

**Response:** Morris Nichols and the Debtors are working on a budget and staffing plan for the chapter 11 cases.

## NOTICE

29. Notice of this Application will be provided to: (a) the Office of the United States Trustee (Attn: Linda J. Casey); (b) the Internal Revenue Service; (c) the parties included on

the Debtors' consolidated list of their 30 largest unsecured creditors; (d) any official committee appointed in these cases; (e) the United States Attorney for the District of Delaware; (f) the state attorneys general in states where the Debtors are authorized to do business; (g) Choate, Hall & Stewart LLP, as counsel to the ABL Agent; (h) Otterbourg P.C., as counsel to the Term Agent; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice of this Application is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Application and the relief requested herein; (ii) enter the proposed order attached hereto as **Exhibit A**; and (iii) grant such other and further relief as it deems just and proper.

Dated: September 18, 2024

>                    */s/ Ronald A. Robins, Jr.*
>                    Ronald A. Robins, Jr.
>                    Executive Vice President,
>                    Chief Legal and Governance Officer