**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al*., | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date:**<br>**October 9, 2024, at 1:00 p.m. (ET)** |
| | **Objection Deadline:**<br>**October 2, 2024, at 4:00 p.m. (ET)** |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER
(I) APPROVING (A) THE PROCEDURES FOR THE SALE OF CERTAIN
OF THE DEBTORS' *DE MINIMIS* ASSETS FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (B) THE FORM
AND MANNER OF NOTICE OF *DE MINIMIS* ASSET SALES, AND (II)
GRANTING RELATED RELIEF**

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**" or "**Big Lots**"), each

of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the

"**Chapter 11 Cases**"), hereby file this *Motion of the Debtors for Entry of an Order (I) Approving*

*(A) the Procedures for the Sale of Certain of the Debtors' De Minimis Assets Free and Clear of*

*Liens, Claims, Encumbrances, and Interests, (B) the Form and Manner of Notice of a De Minimis*

*Sale, (II) Authorizing the Sale of Certain of Debtors' De Minimis Assets Free and Clear of Liens,*

*Claims, Encumbrances, and Interests, and (III) Granting Related Relief* (the "**Motion**"). In further

support of the Motion, the Debtors respectfully state as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

**Relief Requested**

1.      By this Motion, and pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an order (the "**Proposed Order**"), substantially in the form attached hereto as **Exhibit A**, (i) approving (a) procedures (the "**De Minimis Sale Procedures**") for certain *de minimis* assets that are not otherwise being sold pursuant to the Stalking Horse Bid or the Store Closing Procedures (the "**De Minimis Assets**") having a Sale Price (as defined below) of $1,250,000 or less (each such sale, a "**De Minimis Asset Sale**") and (b) the form and manner of notice of a Sale attached as **Exhibit 1** to the Proposed Order (the "**De Minimis Sale Notice**"), (ii) authorizing the sale of the Debtors' *de minimis* Assets free and clear of liens, claims, encumbrances and interests (collectively, the "**Liens**"); and (iii) granting related relief.

**Jurisdiction, Venue, and Authority**

2.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

3.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  In addition, the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

4.      Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rule 6004-1.

## Background

### A.      General Background

6.      On September 9, 2024 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors remain in possession of their property and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.

7.      The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [D.I. 95] entered by the Court, on September 10, 2024, in each of the Chapter 11 Cases.[2]

8.      On September 23, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors pursuant to section 1102 of the Bankruptcy Code.  *See Not. of Appointment of Comm. of Unsecured Creditors* [D.I. 248].

---

[2] *See In re Great Basin, LLC*, No. 24-11966 (JKS); *In re Big Lots, Inc.*, No. 24-11967 (JKS); *In re Big Lots Management, LLC*, No. 24-11969 (JKS); *In re Consolidated Property Holdings, LLC*, No. 24-11968 (JKS); *In re Broyhill LLC*, No. 24-11971 (JKS); *In re Big Lots Stores - PNS, LLC*,  No. 24-11970 (JKS); *In re Big Lots Stores, LLC*, No. 24-11973 (JKS); *In re BLBO Tenant, LLC*, No. 24-11972 (JKS); *In re Big Lots Stores - CSR, LLC*, No. 24-11976 (JKS); *In re CSC Distribution LLC*, No. 24-11974 (JKS); *In re Closeout Distribution, LLC*, No. 24-11978 (JKS); *In re Durant DC, LLC*, No. 24-11975 (JKS); *In re AVDC, LLC*, No. 24-11981 (JKS); *In re GAFDC LLC*, No. 24-11977 (JKS); *In re PAFDC LLC*, No. 24-11982 (JKS); *In re WAFDC, LLC*, No. 24-11979 (JKS); *In re INFDC, LLC*, No. 24-11983 (JKS); *In re Big Lots eCommerce LLC*, No. 24-11980 (JKS); *In re Big Lots F&S, LLC*, No. 24-11984 (JKS).

9.    Information about the Debtors' business and affairs, capital structure, and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the *Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Filings* [D.I. 77] (the "**Ramsden Declaration**"), which is incorporated herein by reference.

10.    On September 9, 2024, the Debtors filed (a) the *Motion of Debtors for Entry of Orders (I) (A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures, (II) (A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [D.I. 18] (the "**Bidding Procedures Motion**"),[3] (b) the *Motion of Debtors for Entry of Interim and Final Orders (I) Establishing Procedures To Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (iii) Granting Related Relief* [D.I. 13] (the "**Lease Sale Motion**"), (c) the *Motion of Debtors for Entry of an Order (I) Authorizing Debtors To Reject Certain Unexpired Leases of Nonresidential Real Property and (II) Authorizing and Establishing Procedures To Reject Executory Contracts and Unexpired Leases* [D.I. 17] (the "**Lease Rejection Motion**"), (d) the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors*

---

[3] The Bidding Procedures Motion is supported by *the Declaration of Adam Rifkin in Support of Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures, (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [D.I. 197] (the "**Rifkin Declaration**" and, together with the Ramsden Declaration, the "**Declarations**"), filed on September 17, 2024.

*To Assume the Services Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* [D.I. 16] (the "**Store Closing Motion**"), and (e) the *Motion of Debtors for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552 (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Post-Petition Financing and (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Providing Adequate Protection to Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [D.I. 19] (the "**DIP Motion**").[4]

B.    **The *De Minimis* Assets**

11.    As described more fully in the Ramsden Declaration, the Debtors formulated a business transformation plan focused on repositioning the Debtors as an extreme bargain retailer. As part of such efforts, the Debtors recognized the need to right-size their store portfolio to optimize their go-forward cost structure by eliminating underperforming Stores.  Accordingly, the Debtors' management team, in consultation with their advisors, undertook an extensive analysis of the Debtors' existing store portfolio, evaluating, among other factors, historical and recent store profitability, sales, and gross margin trends, occupancy costs, changing location value, customer and competitive factors, the geographic market in which each store is located, and specific operational circumstances related to each store's performance.  The Debtors and their advisors also evaluated the need to negotiate lease modifications (*e.g.,* cure cost waivers, rent concessions, and certain other contractual modifications) with certain of their landlords to achieve forecasted performance metrics for each of their remaining stores.

---

[4] On September 10 and 11, 2024, the Court entered orders granting interim relief for each of (a) the Lease Sale Motion, at D.I. 135, (b) the Store Closing Motion, at D.I. 134 (the "**Interim Store Closing Order**"), and (c) the DIP Motion, at D.I. 114.

12.    In addition to closing certain underperforming stores in accordance with the procedures set forth in the Interim Store Closing Order, and as further described in the Ramsden Declaration, the Debtors plan to exit certain of their five existing forward distribution centers (the "**Distribution Centers**") to lower costs and remove excess capacity.

13.    Because the Debtors own certain De Minimis Assets at the Distribution Centers that would not otherwise be sold pursuant to the Stalking Horse Bid or the Store Closing Procedures (as defined in the Store Closing Motion), the Debtors have determined that it is in the best interests of the Debtors, their creditors and other parties in interest to develop transparent, efficient and comprehensive Court-approved sale procedures to govern the sale of the De Minimis Assets.  It is of paramount importance to monetize these assets quickly so that the Debtors can exit the facilities expeditiously.

14.    The De Minimis Assets include racking, forklifts, crane systems, conveyor belts, pallet jacks, storage and pick modules, lift trucks, batteries and chargers, IT and network equipment, office furniture, yard equipment, maintenance equipment, and other equipment and machinery.  The Debtors expect many of the De Minimis Assets to be sold will be related to the closings of the Distribution Center.  Attached as **Exhibit 2** is an example of the types of the assets that will potentially be sold by these procedures.

15.    The Debtors submit that the utilization of the De Minimis Sale Procedures will enable the Debtors to liquidate the De Minimis Assets, provide needed liquidity to the estates, reduce administrative costs to the estates, and provide parties in interest appropriate notice, and therefore are demonstrably in the best interests of all creditors.

16.    Despite the potentially large aggregate value the Debtors may generate by closing the Sale Transaction contemplated by the Stalking Horse Bid and the Lease Sales, many of the

Debtors' remaining assets, on an individual basis have a *de minimis* value. Indeed, by this Motion, the Debtors do not seek authority to sell any asset with a Sale Price of more than $1,250,000 without separate Court approval.

17. Maintaining and preserving the value of the De Minimis Assets—which are not being used to generate revenue—imposes a substantial cost on the Debtors' estates. The Debtors' efforts to sell the De Minimis Assets and the relief sought herein are an attempt to avoid burdening the estates and to realize efficiently and quickly the highest and best value of the De Minimis Assets for the benefit of their creditors.

**C.    The De Minimis Sale Procedures**

18. The proposed De Minimis Sale Procedures will allow the Debtors to maximize the value of the Debtors' estates, reduce the administrative costs incurred in connection with effectuating each sale, and increase the speed at which the Debtors are able to close such sales. Notably, expediting these De Minimis Asset Sales also ensures that the Debtors can quickly generate liquidity for the benefit of creditors.

19. Specifically, the Debtors seek authority to implement the following De Minimis Sale Procedures as an alternative to those set forth in Local Rule 6004-1, to the extent applicable, and submit that the requirements of such rule, if applicable, be waived with respect to any sale of assets undertaken by the Debtors pursuant to these De Minimis Sale Procedures:[5]

- Sale Price Less Than or Equal to $10,000. If the Sale Price[6] for a De Minimis Asset Sale is less than or equal to $10,000, no notice or hearing shall be

---

[5] Note, the Debtors will not sell Assets to any insider, as that term is defined in section 101(31) of the Bankruptcy Code, under the De Minimis Sale Procedures.

[6] "Sale Price" shall mean the total net cash consideration and fair market value of non-cash consideration estimated to be received by the Debtors for each De Minimis Asset (notwithstanding the total purchase price of any lot, bulk, or similar type bids), plus the amount of any liabilities to be assumed by the purchaser (to the extent quantifiable or reasonably estimable), less the amount of expenses to be incurred in connection with the sale, offsets, or other deductions (to the extent quantifiable or reasonably estimable).

required. In such instance, the Debtors are authorized to consummate such De Minimis Asset Sale if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interests of their estates, without further order of the Court or notice to any party. Any such transaction shall be deemed final and fully authorized by the Court and may be, as provided in the documentation governing the applicable transactions, free and clear of all liens, claims, and interests, with such liens, claims, or interests attaching only to the sale proceeds with the same validity, extent and priority as immediately prior to the transaction. Good faith purchasers of such De Minimis Assets shall be entitled to the protections of section 363(m) of the Bankruptcy Code.

- <u>Sale Price Greater than $10,000 and Less Than or Equal to $350,000</u>. If the Sale Price for each De Minimis Asset is greater than $10,000 and less than or equal to $350,000, no notice or hearing shall be required. In such instance the Debtors will file a notice of De Minimis Asset sales on a bi-weekly basis to inform the Court and parties in interest of any De Minimis Asset sales that occurred in the preceding two weeks.

- <u>Sale Price Greater than $350,000 and Less than or Equal to $1,250,000</u>. If the Sale Price for each De Minimis Asset is greater than $350,000 and less than or equal to $1,250,000, the following De Minimis Sale Procedures shall apply:

    (a)    The Debtors shall file a notice with the Court specifying (i) the applicable De Minimis Asset(s) to be sold, (ii) the identity of the purchaser, (iii) any commissions to be paid to third parties (such as brokers), and (iv) the Sale Price. The Debtors shall serve the De Minimis Sale Notice on the following parties: (a) the U.S. Trustee, J. Caleb Boggs Federal Building, 844 King Street Suite 2207 Lockbox 35, Wilmington, Delaware 19801, Attn: Linda J. Casey; (b) counsel to any official committee appointed in the Chapter 11 Cases (the "**Committee**"); (c) Choate, Hall & Stewart LLP, as counsel to the ABL Agent; (d) Otterbourg P.C., as counsel to the Term Agent; and (e) any person or entity with a particularized interest in the asset(s) to be sold (collectively, the "**Notice Parties**").

    (b)    Parties will have five (5) days after the service of a De Minimis Sale Notice (the "**De Minimis Sale Objection Deadline**") to object (each, an "**Objection**") to a proposed sale of De Minimis Assets. After the expiration of the De Minimis Sale Objection Deadline, the Debtors may immediately sell the De Minimis Asset(s) listed in the De Minimis Sale Notice and take any actions and execute any agreements or other documentation that are necessary or desirable to close the transaction and obtain the sale proceeds.

    (c)    If any party in interest wishes to object to a proposed sale of De Minimis Assets, such party must (i) file a written Objection with the Court on or before the De Minimis Sale Objection Deadline and (ii) serve the Objection on the Debtors and each of the other Notice Parties so that it is

actually received by such parties on or before the De Minimis Sale Objection Deadline. Any such Objection shall identify, with specificity, the legal and factual bases for such Objection. If an Objection is timely received and filed and cannot be resolved by the Debtors and the objecting party, the De Minimis Assets that are the subject of the Objection will not be sold except upon order of the Court; *provided*, *however*, that any De Minimis Asset set forth in the De Minimis Sale Notice that is not the subject of an Objection may be immediately sold in accordance with paragraph (ii).

- Sale Price Greater than $1,250,000. If the Sale Price for the sale of any De Minimis Asset is greater than $1,250,000, the Debtors shall file a motion with the Court requesting approval of the sale.

20.    The Debtors seek authority to compensate any broker engaged by the Debtors in connection with any sale of the De Minimis Assets. Any compensation to a broker will be subject to the same notice and objection process as described above. If an Objection to the payment of any broker's fees is timely received and filed by the De Minimis Sale Objection Deadline, then the portion of such broker's fees to which the Objection is directed shall not be paid until such Objection is consensually resolved or until the Court approves such payment.

21.    The De Minimis Sale Procedures are designed to generate the highest or otherwise best available recoveries to the Debtors' estates, their creditors, and all parties in interest by facilitating the expeditious value-maximizing liquidation of the De Minimis Assets. The Debtors believe that the De Minimis Sale Procedures are in the best interests of the Debtors' estates and will provide interested parties with sufficient opportunity to participate in the sale process.

## Basis for Requested Relief

**I.    The De Minimis Sale Procedures Should be Approved.**

**A.    The De Minimis Sale Procedures are Fair, Reasonable and in the Best Interests of the Debtors, Their Creditors and Other Parties in Interest.**

22.    Section 363(b) of the Bankruptcy Code provides that "[t]he [debtor in possession], after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code

does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of a debtor's estate, courts have approved the authorization of a sale of a debtor's assets if such sale is based upon the sound business judgment of the debtor.  *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 389-90 (6th Cir. 1986); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

23.     Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith.  *See In re Decora Indus., Inc.*, 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)).   Where a debtor demonstrates a valid business justification for a decision, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

### B.     A Sound Business Justification for the De Minimis Sale Procedures Exists.

24.     A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to preserve the value of the estate for the benefit of creditors and interest holders.  *See, e.g., In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147, 149 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d at 1063; *Four B. Corp. v. Food Barn Stores,*

*Inc.* (*In re Food Barn Stores, Inc.*), 107 F.3d 558, 566 n.16 (8th Cir. 1997) (recognizing the paramount goal of any proposed sale of property of estate is to maximize value).

25.     Courts emphasize that the business judgment rule is not an onerous standard and may be satisfied "as long as the proposed action *appears* to enhance the debtor's estate." *Crystalin, L.L.C. v. Selma Props. Inc.* (*In re Crystalin, L.L.C.*), 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003) (quoting *In re Food Barn Stores, Inc.*, 107 F.3d at 564-65 (emphasis in original, internal alterations and quotations omitted)).  Courts require only that the debtors "show that a sound business purpose justifies such actions."  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153-54 (D. Del. 1999) (citations omitted); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729, 2003 WL 22316543, at *31 (Bankr. S.D.N.Y. Mar. 4, 2003); *In re Lionel Corp.*, 722 F.2d at 1071.

26.     Further, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task"); *In re AbitibiBowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (the business judgment standard is "not a difficult standard to satisfy").  Under the business judgment rule, "management of a corporation's affairs is placed in the hands of its board of directors and officers, and the Court should interfere with their decisions only if it is made clear that those decisions are, *inter alia*, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code." *In re Farmland Indus., Inc.*, 294 B.R. 855, 881

(Bankr. W.D. Mo. 2003) (citing *In re United Artists Theatre Co.*, 315 F.3d 217, 233 (3d Cir. 2003)); *Richmond Leasing Co. v. Cap. Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Def. Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992)); *In re Food Barn Stores, Inc.*, 107 F.3d at 567 n.16 (citing *Richmond Leasing Co.*, 762 F.2d at 1309) ("Where the [debtor's] request is not manifestly unreasonable or made in bad faith, the court should normally grant approval 'as long as the proposed action appears to enhance the debtor's estate.'").

27.    Relief similar to the relief requested herein has been granted by courts in this jurisdiction for chapter 11 cases.  *See, e.g., In re Fisker Inc.*, No. 24-11390 (TMH) (Bankr. D. Del. Aug. 15, 2024) [D.I. 277] (authorizing *de minimis* asset sales up to $750,000); *In re Coach USA, Inc.*, Case No. 24-11258 (MFW) (Bankr. D. Del. July 10, 2024) [D.I. 245] (authorizing *de minimis* asset sales up to $1,500,000); *In re Cano Health, Inc.*, Case No. 24-10164 (KBO) (Bankr. D. Del. Apr. 15, 2024) [D.I. 648] (authorizing *de minimis* asset sales up to $1,000,000); *In re Yellow Corp.*, Case No. 23-11069 (CTG) (Bankr. D. Del. Sept. 14, 2023) [D.I. 551] (authorizing *de minimis* asset sales up to $5,000,000); *In re Proterra Inc*, No. 23-11120 (BLS) (Bankr. D. Del. Sept. 4, 2023) [D.I. 189] (authorizing *de minimis* asset sales up to $5,000,000); *In re Fred's Inc.*, No. 19-11984 (CTG) (Bankr. D. Del. Sept. 26, 2019) [D.I. 192] (authorizing *de minimis* asset sales up to $1.5 million); *In re Southcross Energy Partners, L.P.*, No. 19-10702 (MFW) (Bankr. D. Del. May 6, 2019) [D.I. 190] (authorizing *de minimis* asset sales up to $2 million); *In re Welded Constr., L.P.*, No. 18-12378 (LSS) (Bankr. D. Del. Nov. 19, 2018) [D.I. 245] (authorizing *de minimis* asset sales up to $2 million); *In re Nuverra Envtl. Sols., Inc.*, No. 17-10949 (KJC) (Bankr. D. Del. June 5, 2017) [D.I. 167] (approving *de minimis* sale procedures for sale of assets up to $2 million); *In re*

*Paragon Offshore PLC*, No. 16-10386 (CSS) (Bankr. D. Del. Apr. 28, 2017) [D.I. 1426] (approving *de minimis* sale procedures for sale of assets up to $1.5 million).

28.     The De Minimis Sale Procedures will allow the Debtors to expedite the flow of cash into the Debtors' estates, which will eliminate the need to prepare and prosecute motions and to obtain express Court approval of every sale of the De Minimis Assets.  In addition, the De Minimis Sale Procedures will save the Debtors potentially significant interim storage and maintenance costs, eliminate certain administrative costs, reduce professional fees, and expedite the sale of assets for the benefit of the Debtors' estates and their creditors.  The De Minimis Sale Procedures constitute the most efficient and cost-effective way to capitalize on the value of the assets, while protecting the best interests of the Debtors, their estates, and their creditors.  It would not be an efficient use of the Debtors' resources or the Court's time for the Debtors to seek Court approval each and every time the Debtors have an opportunity to sell their De Minimis Assets.

29.     Finally, compensating brokers, to the extent they are engaged by the Debtors, in connection with the sale of assets will promote maximizing value for the Debtors' estates and, thus, is in the best interest of the Debtors' estates and creditors.

30.     For the reasons above, a strong business justification exists for the sale of the De Minimis Assets in accordance with the De Minimis Sale Procedures.  An orderly but expeditious sale of assets is critical to maximizing the value of the Debtors' assets and recoveries for the Debtors' creditors.  Accordingly, the Debtors submit that the De Minimis Sale Procedures should be approved by the Court because they provide for the efficient disposition of the De Minimis

Assets, maximize the value of such assets, and are in the best interests of the Debtors, their creditors and other parties in interest.

### C.    The De Minimis Sale Notice Should be Approved.

31.    The De Minimis Sale Procedures described above are reasonably calculated to provide all of the Debtors' significant creditors and all other parties in interest with adequate, timely notice of, among other things, any proposed sale of the assets.  Bankruptcy Rules 2002 and 6004 and Local Rule 6004-1 require the Debtors to provide notice of any proposed sale of assets, including the terms and conditions of such sale and the deadline for objections.  Generally, Bankruptcy Rule 2002(a)(2) requires that a minimum of 21 days' notice of proposed sales of property outside the ordinary course of business be provided to parties by mail "*unless the court for cause shortens the time or directs another method of giving notice*." Fed. R. Bankr. 2002(a)(2) (emphasis added).

32.    As set forth herein, sufficient cause exists for this Court to exercise its discretion and shorten the notice period for Sales of De Minimis Assets with an aggregate sale price less than or equal to $1,250,000 to five (5) days.  The Debtors submit that approval of the applicable notice periods will (a) avoid the unnecessary costs and administrative burdens that may undermine or eliminate the economic benefits of the underlying transactions and (b) enable the Debtors to take advantage of transaction opportunities that are available only for a limited time.  Given the compressed timeframe, the De Minimis Sale Procedures will provide sufficient notice of the Sales, while preserving parties' rights to be heard in connection with, and object to, such Sales.  *See, e.g.*, *In re Fisker Inc.*, No. 24-11390 (TMH) (Bankr. D. Del. Aug. 15, 2024) [D.I. 277] (approving a five-day objection period for miscellaneous sale notices below $750,000); *In re Coach USA, Inc.*, Case No. 24-11258 (MFW) (Bankr. D. Del. July 10, 2024) [D.I. 245] (approving a five-business day objection period for miscellaneous sale notices below $1.5 million); *In re Yellow Corp.*, Case

14

No. 23-11069 (CTG) (Bankr. D. Del. Sept. 14, 2023) [D.I. 551] (approving a seven-day objection period for miscellaneous sale notices below $5 million).

33.     Moreover, as set forth above, the Debtors believe that the proposed De Minimis Sale Procedures will allow the Debtors to obtain fair and reasonable purchase prices for the De Minimis Assets and to effectuate such transactions in an efficient and streamlined process. The De Minimis Sale Procedures will serve the important objectives of obtaining not only a fair and reasonable purchase price for the De Minimis Assets, but also the highest or otherwise best value for the De Minimis Assets, which will inure to the benefit of all parties in interest in the Chapter 11 Cases.

34.     The Debtors submit that the notice of the Sale of the applicable De Minimis Assets in accordance with the De Minimis Sale Procedures, including the form and manner of service of the De Minimis Sale Notice and the other notice procedures set forth herein, is reasonably designed to (a) provide good and sufficient notice of the De Minimis Sale Procedures, the applicable objection deadlines thereunder, and the proposed Sale of the applicable De Minimis Assets pursuant to the De Minimis Sale Notice (including a description of the De Minimis Assets being sold and the material terms of the Sale) and (b) enable interested parties to participate in the sale process with respect to any Sale of De Minimis Assets. Therefore, the Debtors submit that the De Minimis Sale Notice satisfies the requirements of the Bankruptcy Code, Bankruptcy Rules and the Local Rules and respectfully requests that the Court approve such notice.

**II.     The Court Should Authorize the Sale of the De Minimis Assets Pursuant to Section 363 of the Bankruptcy Code.**

35.     Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve a sale under section 363(b)(1) of the Bankruptcy Code,

the Third Circuit requires a debtor to show that the decision to sell the property outside of the ordinary course of business was based on a sound exercise of the debtor's business judgment and that there is a sound business purpose for the proposed transaction.  *See, e.g.*, *In re Martin*, 91 F.3d at 395 (3d Cir. 1996) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *see also In re Schipper*, 933 F.2d at 515 (7th Cir. 1991) (same); *In re Lionel Corp.*, 722 F.2d at 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale or lease of property outside of the ordinary course of business).

36.      In determining whether a sale is a sound exercise of a debtor's business judgment, the sale must satisfy four requirements: "(1) a sound business reason exists for the sale; (2) the sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith." *In re Decora Indus., Inc.*, 2002 WL 32332749, at *7−8 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)); *see also In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 150; *In re Exaeris Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008); *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Ests., Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). The "sound business reason" factor is similar to the 'business judgment rule,' which provides significant deference to a debtor's determination of its own best interests. *In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997).  The proposed De Minimis Sale Procedures ensure that all of these requirements will be met for each Sale.

37.     Accordingly, the Debtors have determined in the exercise of their business judgment that selling the De Minimis Assets pursuant to the De Minimis Sale Procedures is in the best interests of the Debtors, their creditors and other parties in interest.

**A.     The Court Should Authorize and Approve any Sale of the De Minimis Assets Free and Clear of Liens and Successor Liability Pursuant to Section 363(f) of the Bankruptcy Code.**

38.     Under section 363(f) of the Bankruptcy Code, a trustee or a debtor in possession may sell all or any part of a debtor's property free and clear of any interest in such property if: (1) such a sale is permitted under applicable non-bankruptcy law; (2) the party asserting such interest consents to such sale; (3) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (4) the interest is the subject of a bona fide dispute; or (5) the party asserting such interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. *See* 11 U.S.C. § 363(f); *In re P.K.R. Convalescent Ctrs., Inc.*, 189 B.R. 90, 93–94 (Bankr. E.D. Va. 1995) ("[Section] 363 covers more situations than just sales involving liens. . . . Section 363(f) addresses sales free and clear of any interest . . . ."); *see also In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."). In addition, a court may authorize the sale of a debtor's assets free and clear of any liens, claims or encumbrances under section 105 of the Bankruptcy Code. *See Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

39.     Here, the Debtors believe that one or more of the standards set forth in sections 363(f)(1)–(5) of the Bankruptcy Code will apply to each Sale of De Minimis Assets. Any holder

of a Lien on any De Minimis Asset to be sold, with a Sale Price greater than $350,000 and less

than or equal to $1,250,000, will receive a De Minimis Sale Notice and will have an opportunity

to object to any sale in which they claim an interest.  If a holder of a Lien receives a De Minimis

Sale Notice and does not object within the prescribed time period, then such holder will be deemed

to have consented to the proposed sale and the property may then be sold free and clear of the

holder's interests pursuant to section 363(f) of the Bankruptcy Code, with any such liens, claims,

interests, or encumbrances to be satisfied from the proceeds of the sale.

40.    Furthermore, the Debtors believe that section 363(f)(5) will be satisfied because (a)

any entity holding a valid and perfected Lien on the applicable De Minimis Assets could be

compelled to accept a money satisfaction of its Lien and (b) the Lien on the applicable De Minimis

Assets will attach to the sale proceeds.  Accordingly, any holders of Liens on the De Minimis

Assets being sold will be sufficiently protected.  Further, all parties in interest will be given a

sufficient opportunity to object to the relief requested, and any entity that does not object to a sale

should be deemed to have consented.

41.    This Court routinely grants relief similar to that requested in this Motion. *See, e.g.*,

*In re Fisker Inc.*, No. 24-11390 (TMH) (Bankr. D. Del. Aug. 15, 2024) [D.I. 277] (approving free

and clear sales pursuant to miscellaneous sale procedures); *In re Cano Health, Inc.*, Case No. 24-

10164 (KBO) (Bankr. D. Del. Apr. 15, 2024) [D.I. 648] (same); *In re Peer Street, Inc.*, Case No.

23010815 (LSS) (Bankr. D. Del. Nov. 29, 2023) [D.I. 647] (same); *In re Yellow Corp.*, Case No.

23-11069 (CTG) (Bankr. D. Del. Sept. 14, 2023) [D.I. 551] (same); *In re Amyris, Inc.*, Case No.

23-11131 (TMH) (Bankr. D. Del. Sept. 8, 2023) [D.I. 205] (same); *In re AeroFarms, Inc.*, Case

No. 23-10737 (MFW) (Bankr. D. Del. Aug. 23, 2023) [D.I. 284] (same).

42.     Accordingly, the Debtors submit that sufficient cause exists to approve the Sale of

the De Minimis Assets free and clear of all Liens.

**B.      The Court Should Afford Purchasers All Protections Under Sections 363(m) of the Bankruptcy Code**.

43.     The Debtors also request that each purchaser of De Minimis Assets receive the

protections set forth in sections 363(m) and (n) of the Bankruptcy Code for the sales contemplated

under the De Minimis Sale Procedures.   Specifically, section 363(m) of the Bankruptcy Code

provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith," courts have stated

that "the phrase encompasses one who purchases in 'good faith' and for 'value.'"  *In re Abbotts*

*Dairies of Pa.*, 788 F.2d at 147.  Courts have held that to demonstrate a lack of good faith, a party

would have to show "fraud or collusion between the purchaser and [seller] or an attempt to take

grossly unfair advantage [of other potential purchasers.]"  *Id*.  The Third Circuit has held that "[t]he

requirement that a purchaser act in good faith … speaks to the integrity of [a purchaser's] conduct

in the course of the sale proceedings."  *Id*. (internal citations omitted).

44.     In approving the sale of assets free and clear of Liens, the Debtors request that the

Court find that those who purchase De Minimis Assets in accordance with the De Minimis Sale

Procedures are entitled to the protections afforded by section 363(m) of the Bankruptcy Code.

Any agreement that results in the sale of De Minimis Assets under the De Minimis Sale Procedures will be an arms-length transaction entitled to the protections of section 363(m).

45.     Further, this relief is appropriate in light of the opportunity for review and objection provided herein.  Bankruptcy Rule 2002(a)(2) provides that, for cause shown, the Court may direct "another method of giving notice" of a proposed sale of property of the estate.  The Debtors submit that good cause has been shown for approval and implementation of the De Minimis Sale Procedures as a fair and reasonable alternative to the notice procedures of Bankruptcy Rule 2002. Accordingly, the Debtors request that the Court find that any purchaser of De Minimis Assets is entitled to the protections of section 363(m) of the Bankruptcy Code.

## **Debtors' Reservation of Rights**

46.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or should be construed as, or deemed to constitute, an agreement or admission as to the amount, priority, character, or validity of any claim against the Debtors on any grounds (whether under bankruptcy law or otherwise), a commitment or requirement to pay any claim, a waiver or impairment of the Debtors' rights to dispute any claim on any grounds, or an admission as to the amount, priority, enforceability, perfection, or validity of any lien on, security interest in, or other encumbrance on property of the Debtors' estates.  The Debtors expressly reserve their rights to contest any claims under applicable bankruptcy and non-bankruptcy law.  Likewise, if the Court grants the relief sought herein, any payment or transfer made pursuant to the Court's order is not

intended, and should not be construed, as an admission as to the amount, priority, character, or validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

47.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a).  The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to consummate the sales of their De Minimis Assets to preserve and maximize the value of the estates for the benefit of all stakeholders.  Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h).

## **Notice**

48.    Notice of this Motion will be provided to the following parties:  (a) the Notice Parties; (b) Kirkland & Ellis LLP, as counsel to the Stalking Horse Bidder; and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached as **Exhibit A**, granting the requested relief and such other and further relief as may be just and proper.

Dated: September 25, 2024
       Wilmington, Delaware

                          MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                          */s/ Sophie Rogers Churchill*
                          Robert J. Dehney, Sr. (No. 3578)
                          Andrew R. Remming (No. 5120)
                          Tamara K. Mann (No. 5643)
                          Sophie Rogers Churchill (No. 6905)
                          Casey B. Sawyer (No. 7260)
                          1201 N. Market Street, 16th Floor
                          Wilmington, DE 19801
                          Tel: (302) 658-9200
                          rdehney@morrisnichols.com
                          aremming@morrisnichols.com
                          tmann@morrisnichols.com
                          srchurchill@morrisnichols.com
                          csawyer@morrisnichols.com

                          *-and-*

                          DAVIS POLK & WARDWELL LLP
                          Brian M. Resnick (admitted *pro hac vice*)
                          Adam L. Shpeen (admitted *pro hac vice*)
                          Stephen D. Piraino (admitted *pro hac vice*)
                          Ethan Stern (admitted *pro hac vice*)
                          450 Lexington Avenue
                          New York, NY 10017
                          Tel.: (212) 450-4000
                          brian.resnick@davispolk.com
                          adam.shpeen@davispolk.com
                          stephen.piraino@davispolk.com
                          ethan.stern@davispolk.com

                          *Proposed Counsel to the Debtors and Debtors in Possession*