**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br>(Jointly Administered)<br><br>**Hearing Date: Sept. 30, 2024, at 11:00 a.m. (ET)**<br>**Objection Deadline: Sept. 26, 2024, at 4:00 p.m. (ET)**<br><br>RE: D.I. 137, 229 |

**LIMITED OBJECTION OF MIDEB NOMINEES, INC., LEVIN & OBERMAN II LLC AND MITCHELL LAUFORD, AS TRUSTEE, TO PROPOSED ASSUMPTION AND ASSIGNMENT OF LEASE**

Mideb Nominees, Inc., Levin & Oberman II LLC, and Mitchell Lauford, as Trustee of the Mitchell Lauford Trust u/t/d 1/14/1988 (collectively, "Landlord") hereby submit this limited objection (the "Limited Objection") to Debtors' *Notice of Successful and Backup Bidder With Respect To The Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* [D.I. 229] (the "Assumption and Assignment Notice"), as follows:

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

1.    On September 9, 2024 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On September 10, 2024, this Court entered its order authorizing joint administration of these Chapter 11 cases [D.I. 95]. No trustee or examiner has been appointed and Debtors continue to

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

operate their business and manage their properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

2. Landlord, as landlord, and debtor PNS Stores, Inc. ("Tenant"), as tenant, are parties to that certain Amended and Restated Shopping Center Lease, dated August 27, 2001 (as subsequently amended, the "Santa Maria Lease") for retail premises commonly known as 1417 South Broadway, Santa Maria, California (the "Leased Premises"). It cannot be seriously disputed that Debtors' Santa Maria Lease with Landlord is for premises in a shopping center, as that term is defined in Section 365(b)(3) of the Bankruptcy Code. *See*, *e.g.*, *In re Joshua Slocum, Ltd*., 922 F.2d 1081, 1087 (3d Cir. 1990); *In re Three A's Holdings, LLC*, 364 B.R. 550, 560 (Bankr. D. Del. 2007).

3. On September 10, 2024, this Court entered its *Interim Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [D.I. 137] (the "Lease Sale Procedures Order")[2] by which the Court approved procedures by which the Debtors were authorized to conduct an auction for the sale and transfer of certain unexpired real property leases.

4. On September 18, 2024, pursuant to the Lease Sale Procedures Order, the Debtors conducted a virtual Lease Auction with respect to certain of Debtors' Lease Assets. At the conclusion of the Lease Auction, Burlington Coat Factory Warehouse Corporation ("Burlington") was selected as the Successful Bidder with respect to the Santa Maria Lease.

5. On September 19, 2026, Debtors filed and served their Assumption and Assignment Notice.

6. As of September 25, 2024 – a week after the Lease Auction – a proposed asset

---

[2] Capitalized terms not otherwise defined shall have the same meaning as set forth in the Assumption and Assignment Notice and Lease Sale Procedures Order.

purchase agreement, assumption and assignment agreement or similar documentation with respect to the proposed assignment of the Santa Maria Lease has not been provided to Landlord. Indeed, the Assumption and Assignment Notice states that "[t]he Debtors are working to finalize documentation for each Successful Bid."[3]

7. On September 23, 2024, Debtors filed the *Notice of Filing of Proposed Order Pursuant To Section 363 and 365 of the Bankruptcy Code Authorizing the Debtors-In-Possession To Terminate or Assume, Assign and Sell Certain Non-Residential Real Property Leases* [D.I. 252] (the "Proposed Order").

8. While Landlord does not generally object to the proposed assumption and assignment of the Santa Maria Lease to Burlington, Landlord does object to any assumption and assignment of the Santa Maria Lease to the extent the proposed assignment fails to meet the requirements for assumption and assignment of an unexpired shopping center lease under Section 365 of the Bankruptcy Code.

II. **ARGUMENT**

    A. **DEBTORS MUST CURE ALL EXISTING DEFAULTS, OR PROVIDE ADEQUATE ASSURANCE OF A PROMPT CURE, AS A CONDITION TO THE ASSUMPTION AND ASSIGNMENT OF SANTA MARIA LEASE**

9. Bankruptcy Code section 365(b)(1)(A) provides that unless a lessee-debtor either (a) cures all existing defaults or (b) provides the lessor with adequate assurance that it will promptly cure those defaults, it cannot assume and assign a lease. As one court has held, "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord*, *In re Valley View Shopping*

---

[3] Under the Lease Sale Procedures authorized by the Lease Sale Procedures Order, a Qualified Bid was to be accompanied by an executed form of assignment and assumption agreement.

*Center, L.P.*, 260 B.R. 10, 25 (Bankr. D. Kan. 2001); *In re Mushroom Transportation Co., Inc.*, 78 B.R. 754, 759 (Bankr. E.D. Pa. 1987).  Indeed, "the cost of assumption is nothing short of complete mutuality and requires performance in full as if bankruptcy had not intervened." *In re Frontier Properties, Inc.*, 979 F.2d 1358, 1367 (9th Cir. 1992).  Bankruptcy Code section 365(b)(1)(A) "clearly and unambiguously" requires the cure of *all defaults* before an unexpired lease of nonresidential real property may be assumed.  *In re Building Block Child Care Centers, Inc.*, 234 B.R. 762, 765 (9th Cir. BAP 1999); *accord, In re Fifth Taste Concepts Las Olas, LLC*, 325 B.R. 42 (Bankr. S.D. Fla. 2005) ("The purpose of § 365(b)(1)(A) is to preserve the *entirety* of an unexpired lease upon assumption and cure any defaults.") (emphasis in original).

10. Debtors bear the burden of proving the requirements of Bankruptcy Code section 365(b) by a preponderance of the evidence. *See In re PRK Enterprises, Inc.*, 235 B.R. 597, 602 (Bankr. E.D. Tex. 1999).

11. Debtors' Assumption and Assignment Notice acknowledges the obligation to pay unpaid monetary obligations ("Cure"), identifying the amount asserted to be due to satisfy the "cure" requirement for the proposed assignment of the Santa Maria Lease, as delineated in Exhibit A to the Assumption and Assignment Notice.  The Cure amount for the Santa Maria Lease is identified as $81,335.00.  While this amount is currently correct, Bankruptcy Code section 365(b)(1) measures defaults as of the "time of assumption." *See, e.g., In re Rachels Industries, Inc.*, 109 B.R. 797, 811-12 (Bankr. W.D. Tenn. 1990).  Debtors remain required to pay accruing post-petition rent and charges on a timely basis, as required by Bankruptcy Code section 365(d)(3) and Landlord reserves its rights and remedies against Debtors with respect to any additional sums.

12. Where, as here, there are defaults under a lease sought to be assumed and assigned, Bankruptcy Code section 365(b)(1) comes into play. The Santa Maria Lease contains a provision (¶ 21) for the recovery of reasonable attorneys' fees in proceedings for the "recovery of any rent due under the provisions of this Lease."

13. Bankruptcy courts have held that attorneys' fees incurred in the enforcement of obligations, covenants and conditions of a lease are recoverable as part of a landlord's "pecuniary loss" under Bankruptcy Code section 365(b)(1)(B) due upon assumption and assignment of a lease if the underlying lease provides for them. *In re Entertainment, Inc.*, 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998). "Although attorneys' fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties." *In the Child World, Inc.,* 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993); *see also Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co.*, 127 S.Ct. 1199, 1203-06 (2007) (contract providing for attorneys' fee recovery enforceable in bankruptcy unless Bankruptcy Code specifically provides otherwise); *In re Crown Books Corporation*, 269 B.R. 12, 18 (Bankr. D. Del. 2001) (landlord's attorneys' fees incurred in proving post-petition rent had not been recoverable as component of cure under Section 365(b)(1)). "[T]here is no logical distinction, for purposes of § 365, between claims for attorney's fees in connection with pre-petition defaults and such claims in connection with post-petition defaults." *In re Entertainment, Inc.*, 223 B.R. at 154. The Santa Maria Landlord's attorneys' fees, which currently are in excess of $5,000.00, are ongoing. The Santa Maria Landlord reserves its right to supplement this Limited Objection to provide such further attorneys' fees information as may be requested by Debtors.

### B. DEBTORS HAVE FAILED TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE PROPOSED ASSIGNMENT OF THE SANTA MARIA LEASE

14. It is well-established that the Debtors bear the ultimate burden of presentation and persuasion that an unexpired lease of nonresidential real property is one subject to assumption and that all of the applicable requirements under Bankruptcy Code section 365 for assumption have been met. *In re Rachels Indus., Inc.,* 109 B.R. at 802; *In re Memphis-Fridays Assocs.*, 88 B.R. 830, 840-41 (Bankr. W.D. Tenn. 1988); *see also Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1309 (5th Cir. 1985).

15. Bankruptcy Code section 365(b)(1)(A) provides as follows:

> . . . If there has been a default in an executory contract or unexpired Lease of the Debtor, the Trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the Trustee –
>
> A. cures or provides adequate assurance that the Trustee will promptly cure such default;
>
> B. compensates, or provides adequate assurance that the Trustee will promptly compensate, a party other than the Debtor to such contract or lease for any pecuniary loss to such party from such default; and
>
> C. provides adequate assurance of future performance under such contract or lease.

"Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the <u>full benefit of his bargain</u> in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.,* 53 B.R. at 793 (emphasis added); *accord In re Valley View Shopping Center, L.P.,* 260 B.R. at 25.

16. Thus, adequate assurance of future performance is clearly an element of the assumption process which must be met in addition to the curing of any default. 11 U.S.C.

§ 365(b)(1)(C); *see In re Old Market Group Holdings Corp.*, 647 B.R. 104, 110 (Bankr. S.D.N.Y. 2022). Section 365(f)(2)(B) provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." *See In re Sun TV and Appliances, Inc.,* 234 B.R. 356, 370 (Bankr. D. Del. 199).

17. While adequate assurance of future performance is not generally defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction in light of the facts of each case." *In re Natco Indus., Inc.,* 54 B.R. 436, 440-41 (Bankr. S.D.N.Y. 1985). The emphasis is on protection of the lessor, and the intention "is to afford landlord with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." *Id.* at 441. Adequate assurance requires a foundation that is non-speculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Center, Inc.,* 100 B.R. 147, 148-49 (Bankr. D. Conn. 1989). By implication, Bankruptcy Code section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate. *See In re Standard Furniture Co.,* 3 B.R. 527, 530 (Bankr. S.D. Cal. 1980). The factors for the court to consider in determining whether the debtor is able to provide adequate assurance include the present status of the existing obligations under the lease, the remaining term of the lease, and what a landlord can look to for sufficient adequate assurance of future performance. *In re Hub of Military Circle, Inc.*, 19 B.R. 460, 461 (Bankr. E.D. Va. 1982).

18. It is well-established that "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of shopping centers." *In re Joshua Slocum, Ltd.,* 922

F.2d at 1086; *In re Trak Auto Corporation*, 277 B.R. 655, 665-66 (Bankr. E.D. Va. 2002) (The legislative history of 1984 amendments to Section 365 "indicates that Congress sought to provide special protections to lessors of a debtor."). Bankruptcy Code section 365(b)(3), added as part of the so-called 1984 "Shopping Center Amendments" to the Bankruptcy Code, provides that adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance:

> A) of the source of rent and other consideration due under such lease, and *in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease*;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that *assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision*, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3) (emphasis added).

19. The initial burden of presentation as to adequate assurance falls upon the debtor. *Sea Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077, 1079 (9th Cir. 1989). The *Sea Harvest* court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that Sea Harvest's "empty declaration does not provide the compensation and assurances required by section 365(b)(1)." *Id.* at 1080.

20. Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g., Matter of Haute Cuisine, Inc.,* 58 B.R. 390, 393-94 (Bankr. M.D. Fla. 1986); *In the Matter of CM Systems, Inc.,* 64 B.R. 363, 364-65 (Bankr. M.D. Fla. 1986).

21. As evidenced by the plain language of Bankruptcy Code section 365(b)(3), adequate assurance is not limited to the financial wherewithal of the proposed assignee. It is well-established that debtors must assume executory contracts or unexpired leases *cum onere* and may not unilaterally seek to modify the terms of such assumed contracts and leases. *See, e.g., N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531-32 (1984); *Cinnicola v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001) ("If the trustee [or debtor-in-possession] meets the assumption requirements under § 365 it must assume the executory contract *entirely*.") (emphasis added). "If the debtor decides to assume a lease [], it must generally assume all the terms of the lease and may not pick and choose only favorable terms to be assumed." *In re Buffets Holdings, Inc.*, 387 B.R. 115, 119 (Bankr. D. Del. 2008); *see also In re New York Skyline, Inc.*, 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) ("Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party."). Bankruptcy Code section 365(b)(3)(C) embodies this concept, providing that assumption and assignment of a shopping center lease is "subject to all the provisions thereof …."[4]

### i. *The Assignment of the Santa Maria Lease Must Be Subject To Accrued but Unbilled or Unasserted Monetary and Nonmonetary Obligations*

22. There are numerous accruing obligations under the Santa Maria Lease in addition to the payment of monthly "fixed minimum rent." For example, typical of modern "triple net"

---

[4] In the bluntest terms, Burlington having the "financial wherewithal to meet all future obligations under such unexpired lease" (*see* Assumption and Assignment Notice) is not the same as making the contractual commitment to do so.

leases, Tenant is required to reimburse the Santa Maria Landlord for its proportionate share of real estate taxes and assessments, insurance premiums and common area charges on a monthly, estimated basis, subject to annual reconciliation.  *See* Santa Maria Lease, ¶¶ 4.B, 10, 11 and 12.

23. The Proposed Order has multiple provisions that attempt to limit Burlington's future liability under the Santa Maria Lease.  For example, Paragraph 6 of the Proposed Order provides, in pertinent part, that "[u]pon remittance of the Cure Costs by the Debtors, the Landlords shall be barred from asserting any additional cure amounts or *other claims* with respect to the Leases."  (emphasis added).  Indeed, the Proposed Order (¶ 3), "[i]n accordance with Section 363 of the Bankruptcy Code," purports to transfer leases, including the Santa Maria Lease, "free and clear" of "claims."

24. Bankruptcy Code section 101(5) defines a claim as "[any] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." "As has frequently been observed, this definition is extremely broad." *In re Old Market Group Holdings Corp.*, 647 B.R. at 112-13 (*citing Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991)) ("Congress intended . . . to adopt the broadest available definition of 'claim.'"); *Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 156 (2d Cir. 2016), *cert denied*, 581 U.S. 1813, 137 S. Ct. 1813 (2017) (Even a right to payment contingent on future events is a claim under section 101(5) if it "result[s] from pre-petition conduct fairly giving rise to that contingent claim."); *see also JELD–WEN, Inc. v. Van Brunt (In re Grossman's)*, 607 F.3d 114, 119-21 (3d Cir. 2010) (a "claim" may exist before a right to payment arose (or accrued) under state law).

25. Another provision of the Proposed Order appears to "dial back" some of this overbroad language, providing, at Paragraph 7, that "[o]n and after the Closing Date, each Buyer shall be responsible for paying (and shall be entitled to receive any credits for) all amounts outstanding under the Leases due on or after the Closing Date." But this language falls short of providing complete clarity on the scope of assumed lease obligations, particularly given the inconsistency with the "free and clear" language found elsewhere in the Proposed Order. By way of example, when the Santa Maria Landlord bills Burlington, as Debtors' assignee, for 2024 operating expense, insurance and tax reconciliations in 2025, as permitted by the terms of the Santa Maria Lease (*see* Santa Maria Lease, ¶ 4.B), will Burlington be responsible for that portion of the obligation that relates to pre-Closing Date periods, even though such amounts are billed thereafter?

26. In order to satisfy the adequate assurance requirements of Bankruptcy Code section 365(b)(1)(C), then Burlington must have clear responsibility for such as yet unbilled or unasserted obligations (and, conversely, receive the benefit of any credits) even though future billings or claims may include expenses or obligations that accrue prior to the Closing Date. Similarly, Burlington cannot escape liability for accrued, but not yet due, nonmonetary obligations such as future maintenance and repair to the Leased Premises to remedy deferred maintenance or the restoration obligations (Santa Maria Lease, ¶ 18) that arise upon the expiration or earlier termination of the Santa Maria Lease. *See, e.g.*, *In re Number Holdings, Inc.*, Case No. 24-10719 (JKS) (Bankr. D. Del.), *Twenty-Seventh Order Assumption and Assignment of Certain Unexpired Leases, etc.*, entered August 9, 2024 [D.I. 1145] at ¶ 3.

> **ii.** *Either Burlington or Debtors Must Provide Adequate Assurance of Future Performance of Insurance and Indemnification Obligations*

27. In addition to the monetary obligations that either Debtors or Burlington must satisfy under Bankruptcy Code section 365, the Santa Maria Lease contains customary provisions requiring the Tenant to indemnify and hold Landlord harmless from claims, damages and liability arising from Tenant's use and occupancy of the Leased Premises (¶ 19) and maintain certain insurance coverage (¶ 12). As discussed above, Debtors and Burlington attempt to modify and limit the scope of assumed liabilities through multiple provisions of the Proposed Order, including language that purports to assign the Santa Maria Lease "free and clear" of "claims."

28. But what of third party claims (such as a customer "slip and fall") that occurred prior to the Closing Date but are not asserted until after the Closing Date?[5] Debtors, with the burden of demonstrating adequate assurance of future performance, have offered no proposal for satisfaction of the indemnification requirements of the Santa Maria Lease should a third party premises liability claim be asserted against Landlord for events or occurrences on the Leased Premises prior to the Closing Date. Instead, Debtors simply seek to be relieved of any further liability under the Lease in accordance with to Bankruptcy Code section 365(k). *See* Proposed Order at ¶ 10. As a matter of law, however, a debtor is not entitled to the benefits and protections of Bankruptcy Code section 365(k) where the debtor does not assume and assign the lease *cum onere* – with all benefits and burdens. *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999). In particular, where an agreement between the debtor and assignee attempts to limit the obligations assumed by the assignee only to obligations arising after

---

[5] Under California law, the general statute of limitations for such personal injury claims is two years from the date of injury. Cal. Code Civ. Proc. § 335.1.

the closing, there has not been a complete assignment and the debtor is not entitled to the protections of Section 365(k). *Id.* at 81.

29. As the Third Circuit has observed, "[a]n assignment is intended to change only who performs an obligation, not the obligation to be performed." *Medtronic AVE., Inc. v. Advanced Cardiovascular Sys., Inc.,* 247 F.3d 44, 60 (3d Cir.2001). Accordingly, in order to provide adequate assurance of future performance with respect to the indemnification obligations under the Santa Maria Lease, either (a) Burlington must clearly be required to assume all responsibility for any and all such claims, including any deductible or self-insured retention amount, or (b) Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences prior to the Closing Date. Such claims for indemnity could include claims for personal injury occurring at the Leased Premises where Landlord is joined as a party to a lawsuit or for damage and destruction of property by Debtors or their agents or employees.

      **iii.**    ***The Court Cannot Approve the Wholesale Annulment of Multiple Lease Provisions***

30. The Proposed Order contains no fewer than eleven common lease provisions that Debtors seek to have determined to be "Invalid Provisions" (Proposed Order at ¶ 11) and would provide that "[n]one of the Invalid Provisions shall apply to any Buyer in any respect and, without limiting the generality of the foregoing, no violation by the Debtors or Buyers of the Invalid Provisions shall constitute an event of default under any of the Leases." Proposed Order at ¶ 12. While a number of these purported Invalid Provisions, such as assignment fees (¶ 11(d)), landlord recapture rights (¶ 11(d)), and tradename restrictions (¶ 11(h)), have been held to be *de facto* anti-assignment provisions under Bankruptcy Code section 365(f), many others have not. For example, Bankruptcy Code section 365(b)(3) unambiguously provides that the assignment of a shopping

center lease shall be subject to existing radius, location and use provisions, yet the Proposed Order improperly seeks to broadly annul or modify such terms.

31. A number of these purportedly Invalid Provisions are defined by reference to the "Agreements" between the Debtors and Buyers (*see, e.g.*, Proposed Order at ¶ 11(a)-(c)) but, as noted above, the Agreement with Burlington has not yet been provided. While the broad use provision of the Santa Maria Lease (¶ 6) permits the "sale of general merchandise," presumably consistent with Burlington's intended use, there are other use provisions of the Santa Maria Lease (such as limitations on non-selling space in ¶ 6.A-2) that cannot be evaluated without further disclosure. Similarly, the attempted annulment of signage and alterations requirements is not tailored and cannot be evaluated without reference to the missing "Agreement."

32. There is not even a temporal limitation on the effectiveness of Paragraphs 11 and 12 of the Proposed Order. Debtors and Burlington do not seek to have the Invalid Provisions rendered *unenforceable* for purposes of the assignment of the Santa Maria Lease in these Chapter 11 cases but, rather, their annulment, potentially extending to future assignments by Burlington outside a bankruptcy context. There is no authority under the Bankruptcy Code allowing the bankruptcy court to permanently annul lease provisions. To the extent a limited number of lease provisions are determined to be unenforceable for the purposes of the pending transaction, the Proposed Order must be clear that any such determination is only in connection with the assignment of the Santa Maria Lease pursuant to the Assumption and Assignment Notice and these Chapter 11 cases. *See, e.g.*, *In re Number Holdings, Inc.*, Case No. 24-10719 (JKS) (D. Del.), *Twenty-Seventh Order Assumption and Assignment of Certain Unexpired Leases, etc.*, entered August 9, 2024 [D.I. 1145] at ¶ 5.

### III. RESERVATION OF RIGHTS

33. Landlord fully reserves its rights to (a) further supplement or amend this Limited Objection and assert any additional objections, including any additional cure obligations that may arise under the Santa Maria Lease in the ordinary course of business, and (b) further object to the Assumption and Assignment Notice on additional grounds based upon any new information provided by Debtors or Burlington or upon any different relief requested by Debtors, including a proposed assignment of the Santa Maria Lease to an entity other than Burlington.

### IV. JOINDER

34. To the extent not inconsistent with the foregoing, Landlord joins in the objections of other shopping center landlords to the proposed assumption and assignment of retail leases to Burlington on the terms proposed.

### V. CONCLUSION

35. Debtors have thus far failed to sustain their burden of demonstrating adequate assurance of future performance with respect to the proposed assumption and assignment of the Santa Maria Lease with Landlord. Any assignment of the Santa Maria Lease must be subject to the existing terms, conditions and covenants of the Santa Maria Lease and Debtors and Burlington must provide for a complete assumption and assignment of all lease obligations.

Dated: September 26, 2024
Wilmington, Delaware

Respectfully submitted,

*/s/ Laurel D. Roglen*
Leslie C. Heilman (DE 4716)
Laurel D. Roglen (DE 5759)
Nicholas J. Brannick (DE 5721)
Margaret Vesper (DE 6995)
BALLARD SPAHR LLP
919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel: (302) 252-4465
Fax: (302) 252-4466
Email: heilmanl@ballardspahr.com
       roglenl@ballardspahr.com
       brannickn@ballardspahr.com
       vesperm@ballardspahr.com

-and-

Ivan M. Gold (admission *pro hac vice* pending)
ALLEN MATKINS LECK GAMBLE
 MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
Telephone: (415) 837-1515
Facsimile: (415) 837-1516
E-mail: igold@allenmatkins.com

*Attorneys for Mideb Nominees, Inc., Levin & Oberman II LLC, and Mitchell Lauford, as Trustee of the Mitchell Lauford Trust u/t/d 1/14/1988*