<u>**EXHIBIT "A"**</u>

<u>**LEASE AGREEMENT**</u>

This Lease Agreement ("Lease") shall be made effective the 21ᵗʰ day of January, 2022 (the "Effective Date"), by and between Upper Glen Street Associates, L.L.C., a New York limited liability company, whose mailing address is c/o Nigro Companies, 20 Corporate Woods Boulevard, Albany, New York 12211 ("Landlord"), and PNS Stores, Inc., a California corporation, doing business as Big Lots, of the City of Columbus, County of Franklin, and State of Ohio ("Tenant"), whose mailing address is 4900 East Dublin Granville Road, Columbus, OH 43081-7651, Attention: Lease Administration.

**WITNESSETH:**

1.  **DEFINITIONS:**

    For purposes of this Lease, these terms are defined as follows:

    A.  <u>Common Areas</u>:  The improved portion of the Shopping Center (as defined herein) not occupied by building area as shown on Exhibit A, including, but not limited to, the parking areas, driveways, service driveways, service areas, sidewalks, any landscaped areas, Pylon (as defined herein), and parking lot lighting poles and light fixtures of the Shopping Center (collectively, the "**Common Areas**").  Expressly excluded from the definition of Common Areas are the roof and all structural portions of the Shopping Center.

    Neither Tenant, nor any employees or agents of Tenant, shall fence, block, allow property to remain in or upon or otherwise obstruct the Common Areas; provided, however, Tenant shall be permitted to place drop/storage trailer(s)/container(s) in the receiving area of the Demised Premises so long as said trailer(s)/container(s) do not interfere with the other tenants and the operation of the Shopping Center and do not violate any local codes/ordinances.  Tenant agrees to allow and facilitate orderly access to neighboring tenants' rear facilities.  Landlord shall not construct additional buildings or alter any of the Common Areas within the existing Shopping Center as depicted on Exhibit A ("**No Change Area**"), without Tenant's written consent.

    B.  <u>Dates</u>:

        1)  Landlord shall notify Tenant if and when construction progress and procedures shall permit any part of Tenant's work to be done simultaneously with Landlord's Work, as set forth in Exhibit C and defined below. Upon such notice, Tenant shall have the right to enter upon the Demised Premises for such purposes.  The date of such entry shall be the "**Tenant Entrance Date**" and shall not be construed as an acceptance of or possession of the Demised Premises by Tenant under the provisions of this Lease or as a waiver of any of the provisions hereof.  Tenant, its agents, employees, and contractors will not interfere with or delay Landlord's Work.  Tenant hereby agrees to indemnify, defend and hold Landlord harmless against any injury, loss or damage which may occur to any person or property as a

2

adjusted and revised by Landlord after the end of each calendar year or partial calendar year, as the case may be, during the Term hereof on the basis of the actual Common Area Charges for the immediately preceding calendar year.  Upon Landlord's furnishing to Tenant a statement setting forth such revised Common Area Charges, Tenant shall pay to Landlord such revised estimated share in equal monthly installments, each such installment to be a sum equal to one-twelfth (1/12th) of such revised estimated Common Area Charges in advance on the first day of each calendar month thereafter until the next succeeding revision in such estimate.

Within ninety (90) days following each calendar year, Landlord shall furnish to Tenant a written statement in reasonable detail showing the total Common Area Charges for such calendar year, the amount of Tenant's pro rata share thereof, and payments made by Tenant with respect thereto.  Upon request by Tenant, Landlord shall furnish copies of actual paid invoices and other documentation as Tenant may reasonably request for such Common Area Charges as stated herein.

If Tenant's pro rata share of such Common Area Charges exceeds Tenant's payment with respect to any calendar year, Tenant shall pay to Landlord the deficiency within thirty (30) days after the date Landlord furnishes the statement to Tenant. If Tenant's payments exceed Tenant's share of the Common Area Charges, and Tenant is not in default hereunder beyond any applicable notice and cure periods or otherwise indebted to Landlord, Landlord shall credit such excess against the next Rent payment(s) due; provided, if such overpayment is for the last calendar year of the Term, Landlord shall refund to Tenant the amount of such overpayment after Tenant has fully performed all of its obligations under this Lease, and has vacated the Demised Premises in accordance with the provisions of this Lease.  In the event Tenant is indebted to Landlord for any reason whatsoever, Landlord may deduct such amount owed from such overpayment.

<u>Common Area Charges Cap</u>:  Landlord represents that the Common Area Charges are currently approximately Two and 29/100 ($2.29) Dollars per square foot per annum.  During the first calendar year or partial calendar year, as the case may be, Tenant shall pay its pro rata share of Common Area Charges not to exceed Two and 45/100 ($2.45) Dollars per square foot. Thereafter, Tenant's pro rata share of Common Area Charges shall not increase by more than five (5%) percent above the amount of Common Area Charges payable by Tenant for the previous calendar year or partial calendar year, as the case may be.  The Common Area Charges Charge and the caps described in this paragraph shall be collectively known as the **"CAM Cap"**.  Notwithstanding anything to the contrary contained herein, Tenant shall be obligated to pay its actual pro rata share of snowfall costs related to plowing, sanding and salting, and its actual pro rata share of common area utilities costs, all of which shall not be subject to the CAM Cap.

E.    <u>Real Estate Taxes:</u>  Landlord shall timely pay all real property taxes which may be levied or assessed by any lawful authority against the land and improvements in the Shopping Center or against Landlord in respect of the land and improvements in the Shopping Center (hereinafter referred to as **"Real Estate Taxes"**).  Excluded from such Real Estate Taxes for Tenant shall be the amount of any special assessments or impositions, income

15

taxes or sales, use, gross receipts-based or other excise taxes or fees imposed on or computed with reference to any payments required to be made by Tenant to Landlord under this Lease. Tenant shall pay to Landlord its pro rata share of Real Estate Taxes paid by Landlord. Tenant's pro rata share of such Real Estate Taxes shall be the product obtained by multiplying said Real Estate Taxes by a fraction, the numerator of which shall be the gross leasable ground floor area of the Demised Premises and the denominator of which shall be the gross leasable area of all buildings in the Shopping Center. In calculating Tenant's pro rata share, the area (the actual square footage of such space) leased to any Shopping Center tenant which is solely responsible for payment of Real Estate Taxes shall be deducted from the gross leasable area of the Shopping Center, and the taxes allocated to said tenant shall be deducted from the total Real Estate Taxes for the Shopping Center. If the Rent Commencement Date or the expiration date of this Lease shall fall on a date other than the beginning (or ending, as the case may be) of a tax year, a proper apportionment of said Real Estate Taxes for the year shall be made.

Tenant shall pay to Landlord Tenant's pro rata share of Real Estate Taxes within thirty (30) days after Tenant's receipt of an invoice therefor specifically showing the amount of Real Estate Taxes levied or assessed against the Shopping Center and Tenant's pro rata share thereof along with a copy of the Real Estate Tax bill issued by the taxing authority. Landlord shall provide Tenant with copies of actual bills for Real Estate Taxes, work papers evidencing allocation of Real Estate Taxes to the Demised Premises and to all Shopping Center parcel(s) and other documentation as Tenant may reasonably request, promptly upon receipt of tax bills from taxing authorities. Tenant shall not be required to make more than two (2) such payments in any calendar year or partial calendar year, as the case may be. Landlord represents that the Real Estate Taxes are currently approximately One and 57/100 ($1.57) Dollars per square foot per annum.

Interest and/or penalties for late payment shall not be included in determining Real Estate Taxes. Tenant's pro rata share shall be reduced to the extent of abatements, refunds or rebates granted to Landlord.

If Tenant deems any Real Estate Taxes payable by Tenant hereunder, or any part thereof, to be illegal or excessive, Tenant may contest the same by proper proceedings commenced at its own expense and in good faith. Landlord agrees to render to Tenant all assistance reasonably possible in connection therewith, including property card requests, and the joining in, and signing of, any protest or pleading which Tenant may deem it advisable to file. During the pendency of such proceedings, Tenant shall pay its pro rata share of all Real Estate Taxes due and owing under this Lease. Tenant shall indemnify Landlord against any loss or damage by reason of such contest, including all costs and expenses thereof during the pendency of any such proceedings, and shall fully protect and preserve the title and rights to Landlord, as well as Tenant's leasehold estate in and to the Demised Premises. If such proceedings are resolved in favor of Tenant, Tenant shall retain an amount equal to its expense of the proceedings together with its pro rata share of the net refund, and shall pay the balance of the refund to Landlord for distribution to the other Shopping Center tenants.

Page 118, License Agreement, dated as of December 1, 2010, of record as Bk. 4991 Page 142 and Grant of Easement, dated September 27, 2019, of record as Bk. 6005 Page 204 in the Official Records of Warren County, New York (collectively, the "Declaration"). To the extent that the Declaration allocates any expenses or charges in connection with the Shopping Center (as defined in this Lease) or the shopping center (as defined in the Declaration) differently than in the Lease, or to the extent the aforesaid charges are calculated or defined differently than as in this Lease, this Lease shall control as between Landlord and Tenant. In no event shall Tenant be obligated to pay more for charges than as agreed to under this Lease, or to pay for any other expense or item which Tenant has not agreed to pay for pursuant to the terms of this Lease. Landlord agrees that any payments required be made under the Declaration, or charges in excess of what Tenant has agreed to pay under this Lease, are to be made by Landlord without reimbursement from Tenant. Landlord agrees to indemnify, defend and hold harmless Tenant from any and all demands, claims, causes of action, losses, liabilities, judgments, damages and expenses (including without limitation attorney fees and court costs) arising out of any violation by Tenant of the Declaration to the extent it conflicts with this Lease as stated above. Landlord further agrees that it will, at all times and upon request of Tenant, use commercially reasonable efforts to enforce the maintenance obligations and casualty obligations of other owners under the Declaration, and Landlord agrees not to consent to any uses prohibited by the Declaration or this Lease in the Shopping Center.

6.    **INITIAL BUILDOUT AND SUBSEQUENT ALTERATIONS:**

If Landlord fails to complete Landlord's Work at the Demised Premises within ten (10) days after the date specified for delivery of possession as provided in Section 1.B.5, Tenant shall be permitted to enter the Demised Premises and complete Landlord's Work. In the event Tenant completes Landlord's Work as aforesaid, Tenant may off-set such expenses plus a ten (10%) percent administrative fee from the next installments of Rent due and owing until such amount is recaptured in full. In such event, the Tenant Possession Date shall be deemed to be the date Tenant completes all of Landlord's Work. Tenant shall complete such work in a timely manner.

During the Term of this Lease, following completion of Landlord's Work, Tenant shall have the right to make changes, additions, and alterations to the interior of the Demised Premises without consent from Landlord, provided that such work shall not affect the structural parts of the building of which the Demised Premises are a part; that such are done in good and workmanlike manner; that permits therefor from all public authorities, as required, are timely obtained and paid for; that all cost and expense arising from such undertaking as well as all damages occasioned in connection therewith shall be timely paid by Tenant unless Landlord otherwise agrees in writing; that all such changes shall at the end of this Term continue to remain the property of Landlord. Tenant shall promptly remove any mechanic's lien placed on the Demised Premises resulting from any such changes, additions and/or alterations.

7.    **MAINTENANCE AND REPAIRS:**

Tenant agrees to make all repairs (including replacements as required in Tenant's reasonable judgment) necessary to keep the interior portions of the Demised Premises in good order, repair

19

and operation, except those which the Landlord is required to make pursuant to this Lease. The interior portions of the Demised Premises shall include (without limitation) each of the following: (i) interior faces of the exterior walls, (ii) ceilings, (iii) floor coverings, (iv) non-structural portions of the Demised Premises including doors, doorway thresholds (including exterior doors and doorway thresholds), windows, window frames and plate glass, (v) heating, ventilating and air conditioning system (HVAC) exclusively serving the Demised Premises and (vi) the electrical, plumbing, sprinkler and other mechanical systems and equipment exclusively serving the Demised Premises, but only to the extent such electrical, plumbing, sprinkler and mechanical systems and equipment are located inside the interior surface of the exterior or demising walls of the Demised Premises and not located within the floor slab of the Demised Premises.

Landlord agrees, at Landlord's sole cost and expense, to make all repairs and replacements necessary to keep the exterior and structural portions of the Demised Premises in good order, repair and operation except those repairs and replacements the Tenant is required to make pursuant to this Section 7. The exterior and structural portions of the Demised Premises shall include (without limitation) each of the following: (i) exterior walls of the Demised Premises and exterior faces thereof, (ii) the roof, (iii) gutters, downspouts and roof drainage system; (iv) foundations and floor slabs; (v) all structural members of the building of which the Demised Premises is a part; (vi) canopy (if any), (vii) canopy lights, (viii) building lights to include side and rear floodlights, (ix) electrical, plumbing, sprinkler and other mechanical systems and equipment including backflow preventor valves for the domestic water and for the sprinkler riser (whether or not exclusively serving the Demised Premises) located outside the interior surface of the exterior or demising walls and/or within the floor slab of the Demised Premises. Notwithstanding anything to the contrary contained in this Section 7, Landlord shall reimburse Tenant for the cost of labor and materials to replace any ceiling tiles in the Demised Premises that are damaged or stained as a result of roof leaks, unless the leaks are the result of the actions and/or omissions of Tenant and/or its agents.

Landlord shall be responsible for supplying Tenant with an HVAC inspection report two (2) weeks prior to the Tenant Possession Date. Such report shall be prepared by a reputable HVAC company, reasonably acceptable to Tenant, and Landlord shall guarantee that the HVAC system is in good working condition in accordance with Exhibit C. Should Landlord not provide Tenant with such report by the Tenant Possession Date, Tenant shall have the right to have such report prepared at Landlord's sole cost and expense by a local and reputable contractor. Tenant shall have the right to deduct such expense from the next Rent payments owing. After receipt of said inspection report, Tenant shall have the right to perform any and all work required to place the HVAC system in good working condition and adequate for Tenant's intended use as stated above, at Landlord's sole cost and expense. Should Landlord fail to reimburse Tenant for all costs and expenses incurred as provided for above, within thirty (30) days of receipt of invoice therefor, Tenant shall have the right to deduct such amount, with interest at the Lease Interest Rate, from its next Rent payment(s) owing until such amount is recaptured in full.

Notwithstanding the foregoing, Landlord hereby expressly warrants to Tenant that, to the best of Landlord's knowledge and belief, all items required to be kept by Tenant in good order/repair, maintenance, and operation including, without limitation, all fire alarm and fire suppression

20

**IN TESTIMONY WHEREOF**, the Landlord and Tenant have caused this Lease to be signed as of the respective acknowledgment dates set forth below:

**LANDLORD: UPPER GLEN STREET ASSOCIATES, L.L.C., a New York limited liability company**

By: _____

     John J. Nigro

Title: Member

Date: _____1/27/22_____

**TENANT:**    **PNS STORES, INC., a California corporation**

By: _____

     Jonathan E. Ramsden

Title: Executive Vice President, Chief Financial & Administrative Officer

Date: _____1/26/22_____

# EXHIBIT "B"

UPPER GLEN STREET ASSOCIATES
C/O NIGRO RETAIL PROPERTIES
20 CORPORATE WOODS BLVD
ALBANY, NY  12211

(518)436-8421

| | 9/4/2024 | ACCOUNT NUMBER | |
|---|---|---|---|
| Big Lots Stores - PNS LLC | INVOICE #:  000322 | 00000558 | 1 |

Big Lots Stores - PNS LLC
Attn:  Lease Administration
4900 East Dublin
Granville Road
Columbus, OH  43081-7651

**MAKE CHECKS PAYABLE TO:**   UPPER GLEN STREET ASSOCIATES          BALANCE DUE          29,276.94

| Date | Code | Description | Charges | Payments | Amount Due |
|---|---|---|---|---|---|
| 9/4/2024 | TA | 2024-2025 School Taxes | 29,276.94 | 0.00 | 29,276.94 |

| | 9/4/2024 | ACCOUNT NUMBER | |
|---|---|---|---|
| Please send this portion of the statement with your remittance. | INVOICE #:  000322<br>Big Lots Stores - PNS LLC | 00000558 | 1 |

UPPER GLEN STREET ASSOCIATES
C/O NIGRO RETAIL PROPERTIES
20 CORPORATE WOODS BLVD
ALBANY, NY  12211

(518)436-8421

| Current | 30 | 60 | 90 | 120 | BALANCE DUE |
|---|---|---|---|---|---|
| 29,276.94 | 0.00 | 0.00 | 0.00 | 0.00 | 29,276.94 |

**Upper Glen Street Associates**
**QUEENSBURY, NEW YORK**
**SCHOOL TAX**

### Big Lots #4764

2024-2025 School Tax Billing
*July 1, 2024 - June 30, 2025*

| Parcels | | |
|---|---|---|
| **302.6-1-20** | $ | 66.56 |
| **302.6-1-23** | $ | 266.22 |
| **302.6-1-25** | $ | 66,223.09 |
| | $ | **66,555.87** |

| Big Lots #4764 | 30,660  sq. ft. | = | 43.989% |
|---|---|---|---|
| Shopping Center | 69,700  sq. ft. | | |

| $ | 66,555.87 | x | 43.989% | = | $  29,276.94 |
|---|---|---|---|---|---|

Payment is due within (15) fifteen days

# QUEENSBURY UNION - SCHOOL 2024

| FISCAL YEAR: 7/1/2024 to 6/30/2025 | WARRANT DATE: 9/1/2024 | STATE AID:SCHL $32,825,854 |
|---|---|---|

| | BANK | BILL 5365 | TAX MAP NUMBER 523400  302.6-1-20 |
|---|---|---|---|

**MAKE CHECKS PAYABLE TO:**
Caroline H. Barber, Receiver of Taxes
742 BAY ROAD
QUEENSBURY, NY 12804

**TO PAY IN PERSON:**
Queensbury Town Hall
742 Bay Road
M-F, 8 AM - 4 PM
(518) 761-8234

**PROPERTY INFORMATION:**
ACCOUNT#:
DIMENSION:        0.15 Acres
ROLL SECTION:  1   CLASS: 330 - VACANT COMM
LOCATION:        Glen St
MUNICIPALITY:  Town of Queensbury
SCHOOL:          523402   Queensbury Union
FULL MARKET VALUE:  As of 3/1/24         5,000
UNIFORM % OF VALUE:                      100.00
LAND ASSESSMENT:                          5,000
TOTAL ASSESSMENT:                         5,000

**PROPERTY OWNER:**

Upper Glen Street Assoc., LLC
c/o Nigro Companies
20 Corporate Woods Blvd
Albany, NY 12211

| EXEMPTION | VALUE | FULL VALUE | TAX PURPOSE |
|---|---|---|---|

APPLY FOR THIRD PARTY NOTIFICATION BY:        07/01/25

**PROPERTY TAX PAYERS BILL OF RIGHTS:**

If you feel the assessment of your property is too high, you have the right to file a grievance to lower it for future tax bills. For information, please contact your assessor for the booklet "How to File a Complaint on Your Assessment" and to inquire about your exemptions. Any reduction in assessment will NOT be reflected on this bill.  You can pay online at www.queensbury.net

| LEVY DESCRIPTION | TOTAL TAX LEVY | % CHANGE FROM PRIOR YEAR LEVY | TAXABLE VALUE OR UNITS | RATE | TAX AMOUNT |
|---|---|---|---|---|---|
| QUEENSBURY SCHOOL | 39,250,031 | 2.1 | 5,000.00 | 13.31117300 | 66.56 |

NIGRO RETAIL PROPERTIES

SEP 3 2024

RECEIVED

| FULL PAY BY | TAX AMOUNT | INTEREST | TOTAL DUE |
|---|---|---|---|
| 09/30/2024 | 66.56 | 0.00 | 66.56 |
| 10/31/2024 | 66.56 | 1.33 | 67.89 |
| 11/04/2024 | 66.56 | 2.00 | 68.56 |

----------------------------------------------------------------

# QUEENSBURY UNION - SCHOOL 2024

**RECEIVER'S STUB**

MUNICIPALITY:  Town of Queensbury
SCHOOL:        523402   QUEENSBURY UNION
LOCATION:      GLEN ST

Upper Glen Street Assoc., LLC
c/o Nigro Companies
20 Corporate Woods Blvd
Albany, NY 12211

BILL NUMBER:                    5365
Tax Map:        523400 302.6-1-20
BANK:

| OFFICE USE ONLY | |
|---|---|
| Check: | _____ |
| Cash: | _____ |
| CC: | _____ |
| Amount: | _____ |

**YOU MUST RETURN ENTIRE BILL WITH YOUR PAYMENT**

*523400302.6-1-20*

Printed On: 08/21/2024 At: 12:18:02 PM

# EXHIBIT "C"

## Big Lots #4764 - Upper Glen Street Associates - Reimbursement

### Mike Strohmaier <mstrohmaier@nigroproperties.com>

Mon 9/9/2024 11:03 AM

To:sralls@biglots.com <SRalls@biglots.com>
Cc:Rick Jones <rjones@nigroproperties.com>;Lease Admin <leaseadmin@nigroproperties.com>

📎 1 attachments (1 MB)

08 - Big Lots (#4764) - Trap Bar Reimb. - Northeast Fire Protection #7000-13510-02.pdf;

Good morning,

Please see attached for an invoice for **Big Lots #4764 located in Queensbury, NY for work that was done. Please review the invoice and make checks payable to Upper Glen Street Associates.**

If you have any questions, please let me know.

Thank you,

Mike

Mike Strohmaier
Property Accountant
Nigro Retail Properties
20 Corporate Woods Boulevard
Albany, New York 12211
518-436-8421

UPPER GLEN STREET ASSOCIATES
C/O NIGRO RETAIL PROPERTIES
20 CORPORATE WOODS BLVD
ALBANY, NY  12211

(518)436-8421

|  |  |  |  |
|---|---|---|---|
| | **9/9/2024** | **ACCOUNT NUMBER** | |
| Big Lots Stores - PNS LLC | INVOICE #:  000329 | 00000558 | 1 |
| Attn:  Lease Administration | | | |
| 4900 East Dublin | | | |
| Granville Road | | | |
| Columbus, OH  43081-7651 | | | |

**MAKE CHECKS PAYABLE TO:**   UPPER GLEN STREET ASSOCIATES             **BALANCE DUE**          1,142.76

| Date | Code | Description | Charges | Payments | Amount Due |
|---|---|---|---|---|---|
| 9/9/2024 | OTH | Install Trap Bar | 1,142.76 | 0.00 | 1,142.76 |

|  |  |  |  |
|---|---|---|---|
| | **9/9/2024** | **ACCOUNT NUMBER** | |
| Please send this portion of the statement with your remittance. | INVOICE #:  000329 | 00000558 | 1 |
| | Big Lots Stores - PNS LLC | | |

UPPER GLEN STREET ASSOCIATES
C/O NIGRO RETAIL PROPERTIES
20 CORPORATE WOODS BLVD
ALBANY, NY  12211

(518)436-8421

| Current | 30 | 60 | 90 | 120 | BALANCE DUE |
|---|---|---|---|---|---|
| 1,142.76 | 0.00 | 0.00 | 0.00 | 0.00 | 1,142.76 |



NORTH EAST FIRE PROTECTION
SYSTEMS, INC.
P.O. BOX 508
BURNT HILLS NY 12027
518-885-1115

# Contract Invoice

Invoice#: 7000-13510-02

Date: 03/28/2024

**Billed To:** Nigro Companies
20 Corporate Woods Blvd.
Albany NY 12211

NIGRO RETAIL PROPERTIES

MAR 28 2024

RECEIVED

**Project:** Big Lots Install trap bar for bent hanger, prc
751 Upper Glen St,
Queensbury NY 12804

---

Due Date: 04/12/2024          **Terms:** 15DY          Order#

---

| Description | Amount |
|---|---|
| Deficiency Repairs-Replace Painted Heads | |
| Work Performed on 02/26/2024 | 418.00 |
| Lift | 650.00 |

**Notes:**
Please see service report 1127 for a detail of work performed.

Thank you for your business!

*This should really Have been done by Big Lots so I would. Direct Bill.*

APPROVED FOR PAYMENT
NIGRO RETAIL PROPERTIES
Justin Wetzel
AUTHORIZATION
APR 10 2024
DATE
PROPERTY #

ENTERED 3/28/24

*A service charge of 12.00% per annum will be charged on all amounts overdue on regular statement dates.*

*Thank you for your prompt payment!*

| | |
|---|---|
| Non-Taxable Amount: | 0.00 |
| Taxable Amount: | 1,068.00 |
| Sales Tax: | 74.76 |
| **Amount Due** | **1,142.76** |

North East Fire Protection Systems Inc.
318 Charlton Rd
Ballston Spa NY 12020
518-885-1115



# Service Report

| Billed to:<br>Nigro Companies<br>20 Corporate Woods Blvd<br>Albany NY 12211 | Property:<br>Glen Square Plaza<br>751 Upper Glen Street<br>Queensbury NY 12804 | | |
|---|---|---|---|

| **Service Date** | 03/04/2024 |
|---|---|
| **WO #** | 1127 |
| **Technician(s)** | Grady Beck, Robby Thompson |
| **Reference #** | 7-13510 |

## Service Description

Deficiency Repairs:
Drain down wet system in Big Lots space and replace (8) painted pendent heads., Replace bent hanger rod with Trapeze bar and new hanger rod and clamps., Provide (4) spare QR white 155* pendent sprinklers for head box, 1 spare wrench and spare headbox.
In Dollar Tree: Provide (2) SR chrome 155* vertical sidewall for spare headbox.

## Work Performed on 10/24/2023 by Robby Thompson

While systems were drained down I replaced the painted heads I saw with new heads. I could not get the lift down the isle to put up trap bar in big lots will need a 16' one man lift to get to the trap bar hung. I also hung the headbox in Dollar Tree.

## Work Performed on 02/26/2024 by Grady Beck

I arrived this morning to install a trap bar and remove current bent rod installed. I installed new trap bar and hangers and removed the old hanger.

System remained in service during work.

See attached for material used.

## Service Items

| Description | Quantity |
|---|---|
| Rental for 20' scissor lift | 1 |
| Materials and Labor for deficiency repairs. | 1 |

## Photos

Trap bar installed



Trap bar and hanger installed



## Photos

Bent rod removed

**Photos**





## Inspector Signature

I state that the information on this form is correct at the time and place of this inspection and that all equipment tested was left in operational condition upon completion of this inspection, unless otherwise noted.  I acknowledge the owner's responsibility to secure the building such that adequate heat is provided, maintaining a temperature of 40F or higher, to prevent exposure of piping to freezing conditions.

| Inspector Name | Signature | Date Completed |
|---|---|---|
| Grady Beck | | 2024-02-26 |

## Inspector Signature

I state that the information on this form is correct at the time and place of this inspection and that all equipment tested was left in operational condition upon completion of this inspection, unless otherwise noted.  I acknowledge the owner's responsibility to secure the building such that adequate heat is provided, maintaining a temperature of 40F or higher, to prevent exposure of piping to freezing conditions.

| Inspector Name | Signature | Date Completed |
|---|---|---|
| Robby Thompson | | 2023-10-24 |