**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Big Lots, Inc. , *et al.*,<br><br>Debtor.[1] | Chapter 11<br><br>Case No.: 24-11967 (JKS)<br>(Jointly Administered)<br><br>Hearing Date: Sept. 30, 2024 at 11 a.m. (ET)<br>Objection Deadline: Sept. 26, 2024 at 5 p.m. (ET)<br><br>**Re: D.I. 13, 229 and 252** |

**OBJECTION OF NS RETAIL HOLDINGS, LLC TO MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) ESTABLISHING PROCEDURES TO SELL CERTAIN LEASES, (II) APPROVING THE SALE OF CERTAIN LEASES, AND (III) GRANTING RELATED RELIEF; AND PROPOSED ORDER LODGED IN RELATION THERETO**

NS Retail Holdings, LLC ("Landlord"), by and through undersigned counsel, hereby files this Objection (the "Objection") to the *Motion of Debtors for Entry of Interim and Final Orders (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief; and Proposed Order Lodge in Relation thereto* (the "Sale Motion"),[2] and respectfully represents as follows:

**BACKGROUND FACTS**

1. On September 9, 2024 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court"). The cases (the

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined here shall have the meanings ascribed to them in the Sale Motion (D.I. 13) and accompanying documents.

"Bankruptcy Cases") are jointly administered under the above-captioned case. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in the Bankruptcy Cases.

2. Landlord is the owner of real property commonly described as 616 W. Johnson Street, Fond du Lac, WI ("Premises"),[3] in which Debtor Big Lots Store – PNS, LLC ("Big Lots") operates (or operated) a home discount retail store pursuant to an unexpired nonresidential real property lease with an effective date of March 15, 2021 between Landlord's predecessor-in-interest, CORTA FDL, LLC, and Big Lots' predecessor-in-interest, PNS Stores, Inc. (together with all amendments and modifications thereto, the "Lease").

3. The Lease is a lease "of real property in a shopping center," as that term is used in 11 U.S.C. § 365(b)(3). *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4. Fixed Minimum Rent payments are due monthly pursuant to the terms of the Lease (each, a "Monthly Lease Payment"). Each Monthly Lease Payment is in the amount of approximately $20,833.33. Lease at Sec. 5(A).

5. In addition to the Fixed Minimum Rent, Big Lots is also obligated to pay Big Lots' pro rata share of, including but not limited to:

    a. Common Area Charges as set forth in Sec. 5(D) of the Lease;

    b. Real Estate Taxes as set forth in Sec. 5(E) of the Lease; and,

    c. Insurance as set forth in Sec. 12(B) of the Lease.

6. As of September 30, 2024, the pre- and post-petition amount of the Monthly Lease Payment is $23,719.00 ($20,833.33 plus the monthly CAM impound of $2,885).

7. As of September 9, 2024, the pre-petition amount due to Landlord in addition to the Monthly Lease Payment was not less than $288,476.03, which is summarized as follows:

|  | CAM | Insurance | Tax |
|---|---|---|---|
| 2023 | $72,962.58 | $0.00 | $38,707.09 |
| 2024 | $38,201.52 | $15,471.04 | $123,133.80 |
|  |  | Total: | $288,476.03 |

---

[3] The Premises is identified as Store No. 4735.

8. The amounts set forth in the 2023 row represent Big Lots' annual obligations for the 2022 fiscal year to which Landlord provided notice to Big Lots in or around April 2023. Similarly, the amounts set forth in the 2024 row represent Big Lots' annual obligations for the 2023 fiscal year wherein notice was provided to Big Lots in or around April 2024. Thus, all accrued and owing to Landlord prepetition.

9. On September 12, 2024, Debtors filed the *Notice of (A) Bid Deadline, (B) Sale Hearing, and (C) Potential Assumption and Assignment of Certain Unexpired Leases* [D.I. 151]. Exhibit "B" sets forth that the Premises was included within the potential unexpired nonresidential real property lease to be assumed and assigned. [D.I. 151, Exhibit "B," p. 11 of 16].

10. On September 19, 2024, Debtors filed the *Notice of Successful and Backup Bidder with Respect to the Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* ("Notice") [D.I. 229]. Exhibit "A" identifies Ollie's Bargain Outlet, Inc. as the successful bidder, and sets forth the cure is in the amount of $23,719. [D.I. 229, Exhibit "A," p. 2 of 2].

11. The Notice further provides that the "Type of Agreement" between the Debtors and the successful bidder will be an Assignment Agreement. *Id*.

12. On or about September 11, 2024, Debtors filed a proposed form of Assumption and Assignment Agreement as part of the lease sale procedures that the successful bidder is to prospectively execute in substantially the same form. [D.I. 137, Exhibit "1"]. As of the date of this Objection, it is unknown whether the Debtors and the successful bidder have agreed to any potential redline changes. Moreover, Debtors have not provided the prospective Purchase & Sale Agreement between the Debtors and successful bidder, if the Debtors and the successful bidder contemplate entering into the same.

**OBJECTION**

13. Landlord hereby objects to the assumption and assignment of the Lease as set forth in the Notice because the Cure Cost does not include all prepetition and postpetition arrearage owed to Landlord.

14. A debtor in possession may not assume an unexpired lease "unless, at the time of assumption of such . . . lease, the [debtor in possession] cures, or provides adequate assurance that the [debtor in possession] will promptly cure" any monetary defaults under such lease. 11 U.S.C. § 365(b)(1)(A). A debtor bears the burden of proving it has satisfied the requirements for assumption and assignment. *Id.*; *In re Thane International, Inc.*, 586 B.R. 540, 546 (Bankr. D. Del. 2018) ("The debtor has the burden to show that a contract is assumable and that Section 365 has been met . . . .").

15. The Cure Cost set forth in the Notice with respect to the Lease is deficient in that it does not include all pre- and post-petition arrearages owed to Landlord pursuant to the terms of the Lease, and therefore does not cure all existing monetary defaults under the Lease as required by the Bankruptcy Code.

16. The Landlord's books and records show it is currently owed at least $312,195.03 in Cure Cost pursuant to the Lease, as summarized in Paragraphs 6 though 8, above.

17. Landlord recognizes and understands that pursuant to the *Proposed Order Pursuant to Sections 363 and 365 of the Bankruptcy Code Authorizing the Debtors-in-Possession to Terminate or Assume, Assign and Sell Certain Non-Residential Real Property Leases* ("Proposed Order"), the Buyer (as defined therein) is responsible for the payment of all obligations under the Lease that are due on or after the Closing Date (as defined therein). [D.I. 252]. However, the Closing Date is not defined, at least in the proposed form of Assumption and Assignment Agreement. *See* D.I. 137, Exhibit "1" and 252.

18. In any order that is entered establishing the Cure Cost with respect to the Lease, such cure amount must be set to cover all amounts owing under the Lease. As set forth above, the Debtors submit that the Cure Cost for the Lease is $23,719. [D.I. 229, Exhibit "A," p. 2 of 2]. However, there is no evidence of how this amount was determined. On information and belief, the

Cure Cost submitted by the Debtors includes the Monthly Lease Payment ($20,833.33 plus the monthly CAM impound of $2,885). The Cure Cost for the Lease must, at minimum, include the outstanding Monthly Lease Payments plus the accrued CAM, insurance, and real estate taxes. *See* Paragraph 6 through 8.

      i.     **Year-End Adjustments and Reconciliations**.

19.     In addition to rent and related monthly charges, attorneys' fees, costs and interest, some charges for which the Debtors bear responsibility under the Lease have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like. Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred at the Premises. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e., year-end reconciliations and adjustments that accrue through 2024 may not yet have been billed). Since these accrued, but unbilled, charges are not yet due under the Lease, they do not create a current default that gives rise to a requirement of cure by the Debtors at this time.

20.     Nevertheless, Debtors remain responsible for all accrued or accruing charges under the Lease, and must pay such charges when they come due under the Lease. The Debtors (or any successful bidder) assume the Lease subject to their terms, and must assume and assign all obligations owing under the Lease, including obligations that have accrued but may not yet have been billed under the Lease. In addition, any provision in a sale order that purports to release the Debtors (or any successful bidder) of further liability based upon a payment of Cure Cost, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Lease. Landlord further understands that the proposed form of Assumption and Assignment Agreement [D.I. 137, Exhibit "1," p. 15 of 28] sets forth similar language, but the Proposed Order [D.I. 252] does not provide any specificity. Any final

assumption or sale order should clearly state that the Debtors (or any successful bidders) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the Closing Date.

    ii.    **Preservation of Indemnification of Landlord.**

21.    In addition, Sec. 11 of the Lease requires the Debtor (or any successful bidder) to indemnify and hold the Landlord harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Lease, examples of which may include such claims as personal injuries at the Premises and damage to the Premises by the Debtors, the successful bidder, or their agents. Any assumption and assignment of the Lease must be subject to the terms of the Lease, including the continuation of all indemnification obligations, regardless of when they arose.[4] In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Lease for any claims that relate to the period prior to assumption or assumption and assignment of the Lease. Nothing in any sale order should preclude the Landlord from pursuing the Debtors, their insurance, or any other party that may be liable under the Lease, and the Landlord requests that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.

    iii.    **Attorneys' Fees.**

22.    Pursuant to Sec. 40, the Lease contains a provision for recovery of attorneys' fees, costs, and interest in the event the Landlord is required to take legal action to protect Landlord's interests. The Debtors are obligated to cure all defaults under the Lease, and compensate the Landlord for the actual pecuniary losses as a result of defaults under the Lease. *See* 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. *In re LCO Enterprises*, 12 F.3d 938, 941 (9th Cir. 1993); *Elkton Associates v. Shelco Inc. (Matter of Shelco)*, 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*).

---

[4] Any ability to assume and assign the Lease is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Lease.

23. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of Lease are also proper components of a cure claim, and the Debtors must satisfy these lease charges as part of the assumption or assumption and assignment of the Lease. *Entertainment, Inc.*, 223 B.R. at 152 (citation omitted). There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. *Id.* 154. The fact that a landlord uses bankruptcy procedures to enforce leases should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). *Id.*, *see also*, *In re Crown Books Corporation*, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); *Urban Retail Properties v. Loews Cineplex Entertainment Corporation, et al.*, 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . .").

24. Accordingly, Landlord further requests that Landlord be reimbursed for all of Landlord's actual pecuniary losses including, but not limited to, attorney's fees and costs expended with regard to Debtors' bankruptcy proceedings, which are currently estimated to be approximately $5,000 through the date of the Objection.

## CURE AMOUNTS SERVES AS AN ESTIMATE

25. Landlord can only provide the information presently available regarding amounts owing by the Debtor, while reserving the right to amend the Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations. There is no basis to impose upon the Landlord the equivalent of an administrative bar date, limiting their recourse to recover charges to which they are entitled under the Lease.

### JOINDER IN OBJECTION RAISED BY OTHER LANDLORDS

26. To the extent consistent with the objections expressed herein, Landlord also joins in the objections of any other landlords to the Debtors' proposed relief.

### RESERVATION OF RIGHTS

27. Nothing in this Objection is intended to be, or should be construed as, a waiver by the Landlord of any of its rights under the Lease, the Bankruptcy Code, or applicable law, including other orders of this Court entered herein. Landlord expressly reserves all such rights, including, without limitation, the right to: (i) supplement and/or amend this Objection and to assert additional objections to assumption and/or assignment of the Lease on any and all grounds; (ii) assert additional non-monetary defaults under the Lease; (iii) assert any rights for indemnification or contribution against the Debtors arising under the Lease; and (iv) assert any further objections as they deem necessary or appropriate.

## CONCLUSION

28. Landlord submits that it does not object to the Successful Bidder, Ollie's Bargain Outlet, Inc. as the prospective assignee of the Lease. Landlord respectfully requests that any sale or assignment of the Lease (i) allow the correct Cure Cost (subject to adjustment by the Landlord) in the amount set forth herein (ii) order payment of all undisputed Cure Costs, with an escrow established that is sufficient to pay any remaining disputed Cure Cost, when resolved by the parties or this Court and (iii) grant such further relief as this Court deems just and proper.

Dated: September 26, 2024
Wilmington, Delaware

*/s/ Laurel D. Roglen*
Laurel D. Roglen (DE No. 5759)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: roglenl@ballardspahr.com

and

Joel F. Newell (AZ No. 025296) (admitted *pro hac vice*)
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004
Telephone: (602) 798-5400
Facsimile: (602) 798-5595
E-mail: newellj@ballardspahr.com