# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> BIG LOTS, INC., *et al.*, <br><br> Debtors. | Chapter 11 <br><br> Case No. 24-11967 (JKS) <br><br> (Jointly Administered) <br><br> **Obj. Deadline: September 26, 2024 at 4:00 p.m. (ET)** <br><br> **Hearing Date: September 30, 2024 at 11:00 a.m. (ET)** <br><br> **Related Docs: 137, 196, & 229** |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF WPG LEGACY, LLC TO THE NOTICE OF SUCCESSFUL AND BACKUP BIDDER WITH RESPECT TO THE AUCTION OF CERTAIN OF THE DEBTORS' LEASE ASSETS AND ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES**

WPG Legacy, LLC, as the managing agent for Plaza at Buckland Hills, LLC (collectively, "WPG"), by its undersigned counsel, hereby files this limited objection and reservation of rights (this "Limited Objection") to the above-captioned debtors' (the "Debtors") *Notice of Successful and Backup Bidder with Respect to the Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* [Docket No. 229] (the "Notice"). In support of this Limited Objection, WPG respectfully states:

## BACKGROUND

1. On September 9, 2024 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court").

2. Upon information and belief, the Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107 and 1108 of the

Bankruptcy Code.

3. The Debtors and WPG are parties to that certain unexpired lease of nonresidential real property (the "WPG Lease")[1] involving the Debtors' retail store (the "Leased Premises'") located at Plaza at Buckland Hills in Manchester, Connecticut (the "Center").

4. The Leased Premises is located in a "shopping center" as that term is used in section 365(b)(3) of the Bankruptcy Code. *See, e.g.*, *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1086-87 (3rd Cir. 1990).

5. On September 9, 2024, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Orders (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. 13] (the "Lease Procedures Motion")[2] pursuant to which the Debtors sought entry of an order establishing procedures for the sale of the Lease Assets.

6. On September 11, 2024, this Court entered the *Interim Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. 137] (the "Lease Procedures Order") which, among other things, approved certain lease procedures (the "Lease Procedures") for the first wave of lease sales. Pursuant to the Lease Procedures Order, September 26, 2024 at 4:00 p.m. ET is the deadline to object to any Lease Sale, including Cure Costs.

7. As contemplated by the Lease Procedures Order, on September 19, 2024, the Debtors filed the Notice which identifies certain Lease Assets, including the WPG Lease, that the Debtors propose to assume and assign to certain Successful Bidders. Specifically, the Debtors propose to assume and assign the WPG Lease (the "Proposed Assignment") to Burlington Coat

---

[1] A copy of the WPG Lease is attached hereto as **Exhibit A**.
[2] Any capitalized terms not defined herein shall have the meaning ascribed in the Lease Procedures Motion.

2

Factory Warehouse Corporation (the "Proposed Assignee" or "Burlington Stores") and assert the cure amount for the WPG Lease is $24,171.00 (the "Proposed Cure Amount").

8. On September 23, 2024, the Debtors filed the proposed Lease Sale Order [Docket No. 252] that, among other things, (i) does not address the Debtors' and Burlington Stores' responsibility for all accrued but unbilled charges as of the Closing Date and (iii) allows Burlington Stores to "go-dark" in the Leased Premises up to 120 days after the lease assignment date or such later time "when the particular facts and circumstances of a given store warrant additional time . . ." (the "Go-Dark Provision").

9. WPG is in discussions with the Debtors, through counsel, regarding the proposed assumption and assignment of the WPG Lease to Burlington Stores, including the WPG Cure Amount (defined herein), the proposed assumption and assignment agreement (the "Assignment Agreement"), the proposed purchase agreement (the "Purchase Agreement") and the form of the proposed Lease Sale Order. WPG is hopeful that a consensual resolution can be reached in advance of the hearing September 30, 2024 and files this Limited Objection out of an abundance of caution to preserve its rights. As of the filing of this Limited Objection, the Assignment Agreement and Purchase Agreement have not been filed on the docket or shared with WPG.

## LIMITED OBJECTION

10. Although WPG supports generally the assignment of the WPG Lease to Burlington Stores, WPG objects to any terms of the Proposed Assignment that seek to impair, limit and/or modify under the WPG Lease, the Bankruptcy Code and applicable law. Moreover, any assumption of the WPG Lease must be conditioned on the Debtors' compliance with the requirements of section 365 of the Bankruptcy Code and the WPG Lease, including, but not limited to, paying all amounts due and owing under each of the WPG Lease through the effective date of

the assumption and assignment of the WPG Lease and complying with all terms of the WPG Lease.

### A. The Debtors' Proposed Cure Amount is Incorrect

11. The Proposed Cure Amount is not accurate and will not cure all amounts due and owing to WPG under the WPG Lease. As of the date of this Limited Objection, the aggregate cure amount owing under the WPG Lease is not less $84,237.71[3], plus any indemnity and contribution obligations (the "WPG Cure Amount").[4] Attached hereto and incorporated herein as **Exhibit B** are schedules containing an itemization of the amounts due and owing under the WPG Lease.

12. The WPG Cure Amount represents the amounts currently due and owing to WPG under the WPG Lease. The WPG Cure Amount may increase prior to any actual date of assumption and assignment of the WPG Lease if the Debtors do not pay all amounts that accrue after the date of this Limited Objection, and any taxes, common area maintenance and other amounts that may come due, pursuant to the terms of the WPG Lease, and regardless of when those amounts accrued.

13. WPG notes that the WPG Lease imposes certain indemnification and contribution obligations that arise out of litigation or other claims that may be asserted or threatened against WPG in connection with the WPG Lease. Each of these indemnification and contribution covenants and obligations must be assumed, paid, and otherwise cured in connection with the Proposed Assignment. WPG objects to the Proposed Cure Amount to the extent that it fails to include amounts related to the indemnification and contribution covenants and obligations for

---

[3] This amount includes unbilled charges that have accrued as of the Closing Date and will come due in the future. These charges include (i) accrued, but unbilled tax reconciliation for January 2024 through September 2024 in the approximate amount of $55,061.56, and (ii) accrued, but unbilled insurance reconciliation for January 2024 through September 2024 in the approximate amount of $876.75.

[4] The WPG Cure Amount includes $2,000.00 in attorneys' fees. WPG is entitled to attorneys' fees as part of the WPG Cure Amount for the WPG Lease, as the WPG Lease specifically provide for the recovery of such fees pursuant to its terms. *See* **Exhibit A**, § 40; *see also In re Westview 74th Street Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986) (payment of attorneys' fees required as condition to lease assumption); *In re Entertainment, Inc*., 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998). Thus, any attorneys' fees incurred by WPG in enforcing its rights under the WPG Lease must be paid as part of any assumption and assignment of the WPG Lease. *See id.*

which the Debtors are responsible to WPG under the WPG Lease.

14. In connection with the Proposed Assignment of the WPG Lease, all rights of WPG under the WPG Lease (including defenses thereto) must be preserved. As such, the proposed Lease Sale Order should specify that WPG's setoff, recoupment, and subrogation rights are preserved, and that the Debtors and the Proposed Assignee remain liable to WPG for (i) any accrued but unbilled charges under the WPG Lease including but not limited to year-end adjustments for common area maintenance, taxes and similar charges; (ii) any regular or periodic adjustment or reconciliation charges that come due under the WPG Lease; (iii) any percentage rent that may be due under the WPG Lease; (iv) any non-monetary defaults; and/or (v) any insurance, indemnification and other contractual obligations under the WPG Lease regardless of when they accrued. This result is mandated by the requirement that the Debtors cure all arrears and that the Debtors provide adequate assurance of future performance under the terms of the WPG Lease. *See* 11 U.S.C. § 365(b)(1).

15. To the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue, and/or WPG suffers other pecuniary losses with respect to the WPG Lease, WPG further reserves the right to amend the WPG Cure Amount to: (i) reflect such additional amounts; and (ii) to account for any additional year-end adjustments (collectively, the "Adjustment Amounts"), which have not yet been billed or have not yet become due under the terms of the WPG Lease. The Debtors or any assignee of the WPG Lease must be responsible for satisfying the Adjustment Amounts when due in accordance with the terms of the WPG Lease regardless of when such Adjustment Amounts were incurred. To the extent that the Debtors are to remain responsible for any Adjustment Amounts, WPG requests that at the closing of the Proposed Assignment, such funds be placed into a separate and segregated escrow account outside of the Debtors' chapter 11

bankruptcy estates so that there is no question that sufficient, earmarked, unencumbered funds will be available to pay WPG when said Adjustment Amounts become due and owing to WPG in accordance with the terms of the WPG Lease.

16. Further, under section 365(k) of the Bankruptcy Code the Debtors remain responsible for any contractual obligations under the WPG Lease that arose prior to the assumption and assignment of the WPG Lease, thus, any provision in the proposed Lease Sale Order that purports to release the Debtors from any further liability under the WPG Lease, including those contractual obligations that arose prior to the assumption and assignment of the WPG Lease should be stricken. Further, the proposed Lease Sale Order should be revised to provide that nothing impairs or prejudices WPG's right to recover from the Debtors' available insurance coverage with respect to third-party claims asserted in connection with the Debtors' use and occupancy of the Leased Premises on account of events that arose prior to the assumption and assignment of the WPG Lease. Further, the Debtors should be required to demonstrate proof of such insurance coverage and/or to obtain, if applicable, any necessary tail insurance in order to satisfy potential indemnification obligations based on events or occurrences prior to the Closing Date.

17. Finally, the proposed Lease Sale Order must provide, among other things, that the Debtors or the Proposed Assignee promptly pay to WPG all amounts due and owing under the WPG Lease through the effective date of assumption and assignment of the WPG Lease (*i.e.*, the WPG Cure Amount), as the same may increase to reflect attorneys' fees and any other amounts that become due or are determined after the date of this Limited Objection.

**B. <u>Debtors Must Demonstrate Adequate Assurance of Future Performance</u>**

18. In accordance with section 365 of the Bankruptcy Code, WPG must be provided with sufficient information with respect to adequate assurance of future performance prior to the

potential assumption and assignment of the WPG Lease to the Proposed Assignee.

19. The adequate assurance of future performance information provided to WPG as part of the Proposed Assignment must demonstrate the heightened standards for adequate assurance of future performance in a shopping center will be satisfied by Burlington Stores in accordance with section 365 of the Bankruptcy Code.

20. Under this requirement, the Debtors must provide to WPG assurances: (a) of the source of rent and other consideration due under the WPG Lease, and that the financial condition and operating performance of the Proposed Assignee and any guarantor shall be similar to the financial condition and operating performance of the Debtors and any guarantor of the Debtors at the time the Debtors entered into the WPG Lease; (b) that any percentage rent due under the WPG Lease, if applicable, will not decline substantially; (c) that assumption and assignment of the WPG Lease is subject to all provisions of the WPG Lease, including but not limited to radius, location, use or exclusivity provisions, and will not breach any such provision contained in another lease; and (d) that assumption or assignment of the WPG Lease will not disrupt any tenant mix in the Leased Premises. *See* 11 U.S.C. § 365(b)(3). The Debtors bear the burden of demonstrating the Proposed Assignee's ability to provide adequate assurance of future performance. *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991). *See also In re Federated Dept. Stores, Inc.*, 135 B.R. 941, 944 (Bankr. S.D. Ohio 1991); *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 308 (Bankr. S.D.N.Y. 1983).[5]

---

[5] In order to satisfy the heightened adequate assurance of future performance burden, the Proposed Assignee must provide the following information: (i) the proposed name under which the Proposed Assignee intends to operate the store; (ii) the Proposed Assignee's intended use for the space; (iii) audited financial statements and annual reports for the past three (3) years, including all supplements or amendments thereto; (iv) cash flow projections for the Proposed Assignee, the Proposed Assignee's most recent business plan, all cash flow projections for the WPG Lease, and any financial projections, calculations and/or proformas prepared in contemplation of purchasing the WPG Lease; (v) all documents and other evidence of the Proposed Assignee's retail experience and experience operating stores in a shopping center; and (vi) a contact person for the Proposed Assignee WPG may directly contact in connection with the adequate assurance of future performance information.

21. On September 17, 2023, WPG, through counsel, received Burlington Stores' adequate assurance information (the "Proposed Adequate Assurance Information"). WPG is reviewing the Proposed Adequate Assurance Information and reserves all of its rights accordingly. WPG expressly reserves the right to request further adequate assurance information that WPG may deem necessary, in its sole and unfettered discretion, to make an informed decision as to Burlington Stores' adequate assurance of future performance under section 365 of the Bankruptcy Code.

### C. The Debtors are Required to Assume and Assign the WPG Lease in its Entirety, Including any and all Obligations Contained Therein, and all WPG's Rights Under the WPG Lease and Applicable Law Must be Preserved

22. WPG objects to any attempt by the Debtors and the Proposed Assignee to side-step or invalidate the bargained-for protections in the WPG Lease. As set forth in paragraph 11, among others, of the proposed Lease Sale Order, the Debtors seek to invalidate certain terms of the WPG Lease and WPG's rights thereunder even though such relief is contrary to well-established caselaw and not supported by the Bankruptcy Code and, furthermore, was not requested in the Lease Procedures Motion or approved in the Lease Procedures Order.

23. Any assumption and assignment of the WPG Lease requires the Debtors to assume and assign the WPG Lease in its entirety, including any and all conditions, covenants, monetary and non-monetary obligations and terms contained in the WPG Lease for which the Debtors are responsible. *See In re New York Skyline, Inc.,* 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) (citations omitted) ("When a debtor assumes the lease…it must assume both the benefits and burdens of the contract. Neither the debtor nor the bankruptcy court may exercise material obligations owing to the non-debtor contracting party."). WPG is entitled to the full benefit of its bargain under the WPG Lease and the full protections provided by section 365 of the Bankruptcy Code. *See, e.g.*, *Entertainment, Inc.*, 223 B.R. at 151; *In re new Almacs, Inc.*, 196 B.R. 244, 248 (Bankr. N.D.N.Y.

8

1996); *In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 831 (Bankr. S.D.N.Y. 1996) (each recognizing that section 365(d)(3) of the Bankruptcy Code imposes an affirmative duty on a debtor to comply with all of its leasehold obligations).

24. The Proposed Assignee must be responsible for satisfying all obligations and charges when due in accordance with the terms of the WPG Lease regardless of when such amounts were incurred. Accordingly, the proposed Lease Sale Order must preserve WPG's right to payment of these charges and expressly provide that the Proposed Assignee continues to be responsible for any and all express and implied covenants and obligations under the WPG Lease or related documents or supplements, regardless of when such covenants or obligations arose.

25. Moreover, WPG's rights under the WPG Lease and applicable law must survive the Proposed Assignment. Any acquisition of the WPG Lease free and clear of claims could presumably result in the impairment of WPG's setoff and recoupment rights under the WPG Lease and applicable law. WPG's rights under the WPG Lease (including defenses thereto) cannot be extinguished through the Proposed Assignment.

26. Additionally, the Go-Dark Provision represents an impermissible attempt to unilaterally modify the terms of the WPG Lease and curtail WPG's rights under the WPG Lease, and should not be approved by this Court. *See City of Covington v. Covington landing L.P.*, 71 F.3d 1221, 1226 (6th Cir. 1995) ("Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party."); *In re Air Vectors Assocs.*, 53 B.R. 668, 687 (Bankr. S.D.N.Y. 1985) (The bankruptcy court does not have authority to rewrite the terms of a lease.). The WPG Lease does not permit the Debtors or any assignee of the Debtors, to go dark during the term of the WPG Lease for more than 90 days. *See* **Exhibit A**, § 4A. This Court should require strict compliance with the WPG Lease by the Proposed Assignee and the Proposed

Assignee should not be permitted to cease operations in connection with a renovation, alternation or restoration of the Leased Premises for more than 90 days as proposed, absent WPG's consent.

27. This proposed treatment of the WPG Lease disregards the long-standing principle that executory contracts are assumed *cum onere*, subject to all its benefits and burdens. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000); *In re E-Z Convenience Stores, Inc.*, 289 B.R. 45, 49 (Bankr. M.D. N.C. 2003) (citations omitted) ("When an executory contract or lease is assumed, it must be assumed *cum onere*, with all of its benefits and burdens…Debtors cannot assume favorable positions of a lease and reject unfavorable provisions or rewrite the terms when assuming a lease."); *In re Buffets Holdings, Inc.*, 387 B.R. 115, 128 (Bankr. D. Del. 2008) (debtor could not assume or reject individual leases but had to assume or reject the master lease and all related agreements as a whole, where evidence established that master leases governed all related leases). It is well-settled that the Debtors cannot sell the WPG Lease, or any of their real estate assets, free and clear of certain terms. *See, e.g.*, *In re Kopel*, 232 B.R. 57 (Bankr. E.D. N.Y. 1999) (lease and related agreements constituted an entire transaction; debtor could not assume one agreement without curing defaults on others). In assuming and assigning the WPG Lease to Burlington Stores, the Debtors must assume and assign to Burlington Stores all the terms and conditions of the WPG Lease and cannot unilaterally rewrite the WPG Lease or pick and choose the terms of the WPG Lease with which Burlington Stores will comply. *See Citibank, N.A. v. Tele/Resources, Inc.*, 724 F.2d 266 (2nd Cir. 1983) ("An assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and the assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged….Insofar as an assignment touches on the obligations of the other party to the underlying contract, the assignment moves into the shoes of the assignor.") (citations omitted); *In re Fifth*

*Taste Concepts Las Olas, LLC*, 325 B.R. 42, 47 (Bankr. S.D. Fla. 2005) (A debtor "must assume the contract warts and all."); *In re The Texstone Venture, Ltd.,* 54 B.R. 54, 56 (Bankr. S.D. Tex. 1985) ("It is axiomatic that an assumed contract . . . is accompanied by all of its provisions and conditions.").

28.     Not only does the Go-Dark Provision violate the terms of the WPG Lease, but the presence of a vacant store at the Center is damaging to WPG and detrimental to other tenants located at the Center. Burlington Stores' failure to operate for a period of time in excess of what is provided for in the WPG Lease may result in the Center's other tenants being able to exercise certain rights and remedies against WPG if co-tenancy requirements are breached.  In addition, a vacant store can lead to negative inferences being drawn by customers with respect to the overall state of the Center, and perhaps of greatest concern, disrupts the tenant mix at the Center. The success of any shopping center depends upon a carefully thought out and planned tenant mix, a fact long recognized by bankruptcy courts. *See In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 306-07 (Bankr. S.D.N.Y. 1983). Merchants rely on each other as a collective draw for potential customers. For every vacant space that exists in the Center, the potential draw of customers is diminished, and revenues of the other merchants suffer. Because of the harmful effects on WPG and its other tenants, this Court should prohibit the Proposed Assignee from ceasing operations at the Leased Premises for more than 90 days, pursuant to the terms of the WPG Lease, without WPG's consent. While WPG recognizes that Burlington Stores may need to "go dark" to conform the Leased Premises to Burlington Stores' typical retail store, a go dark period extending up to 120 days or longer, without WPG's consent, violates the terms of the WPG Lease and is determinantal to WPG and other tenants at the Center.[6]

---

[6] WPG reserves the right to seek to hold Burlington Stores liable for any actual and pecuniary losses and damages, including any legal costs and/or fees, incurred by WPG resulting from Burlington Stores going dark in the Leased

**CONCLUSION AND RESERVATION OF RIGHTS**

29. In sum, WPG is entitled to the full benefit of its bargain under the WPG Lease and the full protections provided by section 365 of the Bankruptcy Code. Any assumption and assignment of the WPG Lease must be in accordance with all provisions of the WPG Lease and the Bankruptcy Code. *See, e.g.*, *Entertainment, Inc.*, 223 B.R. at 151.

30. Nothing in this Limited Objection is intended to be, or should be construed as, a waiver by WPG of any of its rights under the WPG Lease, the Bankruptcy Code, or applicable law. WPG expressly reserves all such rights, including, without limitation, the right to: (a) supplement and/or amend this Limited Objection and to assert any additional objections with respect to the WPG Cure Amount, the Proposed Assignment, the Proposed Assignment Agreement and the proposed Lease Sale Order; (b) amend the WPG Cure Amount; and (c) assert any further objections with respect to the relief requested that may subsequently be sought by the Debtors and/or any other party, as such requested relief relates to the WPG Lease and/or the interests of WPG.

**JOINDER**

31. WPG joins in any objections that are filed by other landlords to the extent that they are not inconsistent with this Limited Objection.

**WHEREFORE**, WPG respectfully requests that this Court: (a) sustain this Limited Objection; (b) affirmatively require the Debtors and the Proposed Assignee to comply with each and every term, condition and obligation set forth in the WPG Lease; and (c) grant WPG such other and further relief as this Court deems just and appropriate under the circumstances.

---

Premises that violates or creates any potential violation by WPG of any other lease at the Center.

Dated: September 26, 2024  
Wilmington, Delaware

Respectfully submitted,

LAW OFFICE OF SUSAN E. KAUFMAN, LLC

*/s/ Susan E. Kaufman*
Susan E. Kaufman (DSB# 3381)
919 N. Market Street, Suite 460
Wilmington, DE 19801
Tel: (302) 472-7420
Fax: (302) 792-7420
Email: skaufman@skaufmanlaw.com

-and-

Ronald E. Gold, Esq.
Ohio Bar No. 0061351
(Admitted *pro hac vice*)
FROST BROWN TODD LLP
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
Tel: (513) 651-6800
Fax: (513) 651-6981
Email: rgold@fbtlaw.com

**Counsel for WPG Legacy, LLC**

0028924.0790918   4876-5460-0679v5