**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Related Docket Nos. 13, 137, 229, 252** |

**OBJECTION AND RESERVATION OF RIGHTS OF REALTY INCOME
CORPORATION TO NOTICE OF SUCCESSFUL AND BACKUP BIDDER WITH
RESPECT TO THE AUCTION AND CERTAIN OF THE DEBTORS' LEASE ASSETS
AND ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES**

Realty Income Corporation (together with its affiliates, "**RIC**"), by and through its undersigned counsel, submits this objection and reservation of rights (the "**Objection**") to the *Notice of Successful and Backup Bidder with Respect to the Auction and Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* [Docket No. 229] (the "**Assignment Notice**") filed by the above-captioned debtors (collectively, the "**Debtors**"), and in support thereof, respectfully states as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores -PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin- Granville Road, Columbus, OH 43081.

301648610v2

**PRELIMINARY STATEMENT**

RIC, one of the Debtors' largest unsecured landlord creditors,[2] objects to the assumption and assignment of RIC's lease agreement on two grounds: (i) the Cure Costs[3] associated with RIC's lease agreement with the Debtors (the "**RIC Cure Amount**") do not account for certain prepetition and post-petition amounts owed by the Debtors to RIC, and (ii) the proposed assumption and assignment seeks to improperly modify the terms of the RIC Lease (defined below).

RIC respectfully requests that the Court (i) modify the RIC Cure Amount such that the total RIC Cure Amount is $69,161.91; and (ii) restrict the Debtors' ability to vary the terms of the RIC Lease.

**BACKGROUND**

1.  Realty Income Corporation and Big Lots Stores – PNS, LLC ("**Big Lots**," one of the Debtors in these Chapter 11 Cases (defined below), are parties to that certain Lease Agreement dated as of March 2, 2022 (the "**RIC Lease**")[4] covering the premises located at 1690 S. Main Street, West Bend, Wisconsin 53095 (the "**Store**"). The Store is located in RIC's shopping center located at 1710 South Main Street, West Bend, Wisconsin 53095 (the "**Shopping Center**").

2.  On September 9, 2024 (the "**Petition Date**"), the Debtors each filed with the United States Bankruptcy Court for the District of Delaware (this "**Court**") a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Debtors

---

[2] For disclosure purposes, RIC is a member of the Official Committee of Unsecured Creditors (the "**Committee**"). This objection is asserted by RIC in its individual capacity and not as a member of the Committee.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Assignment Notice and Proposed Order (defined below), as applicable.

[4] The RIC Lease was initially entered into between Big Lots and Spirit Realty, L.P. RIC subsequently merged with Spirit Realty, L.P.

continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These Chapter 11 Cases are being jointly administered for procedural purposes only.

3. In accordance with the *Interim Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. 137], the Debtors have conducted an auction for the sale or transfer of certain unexpired leases, including the RIC Lease.

4. Pursuant to the Assignment Notice filed by the Debtors on September 19, 2024, the Debtors selected Ollie's Bargain Outlet, Inc. ("**Ollie's**") as the Successful Bidder for the sale of the RIC Lease.  The Assignment Notice lists the RIC Cure Amount as $43,750.00.

5. The Assignment Notice provides that any party seeking to object to the Lease Sales, including on account of Cure Costs, must file a written objection by September 26, 2024 at 5:00 p.m. (prevailing Eastern Time).

6. On September 23, 2024, the Debtors filed a *Notice of Filing of Proposed Order Pursuant to Section 363 and 365 of the Bankruptcy Code Authorizing the Debtors-in-Possession to Terminate or Assume, Assign and Sell Certain Non-Residential Real Estate Property Leases* [Docket No. 252] (the "**Proposed Order**").  By the Proposed Order, the Debtors seek to annul or vary certain provisions of the RIC Lease.

7. RIC does not object generally to the Debtors' proposed sale transaction, or the assumption and assignment of the RIC Lease as part of such a transaction; however, RIC files this Objection because, prior to the entry of an order approving the assumption and assignment of the RIC Lease, RIC is entitled to insist that any defaults, including prepetition and post-petition defaults, be cured.  In addition, RIC objects to the Debtors' attempt to vary certain provisions of

the RIC Lease because, among other things, such variations adversely affect RIC's leases with other tenants in the Shopping Center.

## CURE OBJECTION

8. Pursuant to section 365 of the Bankruptcy Code, if there is a default under an unexpired lease, such unexpired lease may not be assumed unless the debtor cures such default. 11 U.S.C. § 365(b)(1).

9. The Assignment Notice proposes an incorrect cure amount for the RIC Lease. According to the Assignment Notice, the proposed RIC Cure Amount totals $43,750.00. However, according to RIC's books and records, the actual amount outstanding under the RIC Lease as of the Petition Date is $53,849.41. The actual amount outstanding under the RIC Lease after the Petition Date (September 10-September 30, 2024) is $15,312.50. Thus, the proposed RIC Cure Amount is $15,312.50 short.

10. RIC objects to the RIC Cure Amount and asks that the Court modify the Assignment Notice to increase the RIC Cure Amount to $69,161.91 consistent with RIC's books and records.

## OBJECTION TO MODIFICATIONS TO THE RIC LEASE

11. It is well-settled law that a debtor must assume an unexpired lease *in toto* with both the benefits and burdens intact. *In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3d Cir. 1951) ("The trustee, however, may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other."). A debtor may not alter the terms of an agreement or lease as part of assumption or assignment. *See also City of Covington v. Covington Landing L.P.*, 71 F.3d 1221, 1226 (6th Cir.1995) ("Neither the debtor nor the bankruptcy court may excise material obligations owing to

4

the non-debtor contracting party"); *Richmond Leasing Co. v. Cap. Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

12. Here, the Debtors are seeking to do just that – they are seeking to impermissibly vary the terms of the RIC Lease without RIC's consent. While RIC recognizes the need to modify certain terms in order to accommodate a new tenant in the Shopping Center, the modifications set forth in paragraph 11 of the Proposed Order are overly broad. RIC takes each of the objectionable Invalid Provisions in turn:

    a. *Paragraph 11(a)* seeks to invalidate a provision prohibiting each Buyer's Intended Use of the premises. The term "Intended Use" is not defined. To the extent Ollie's intends to use the Store for any purpose other than operating it as a going concern general merchandise retailer, RIC objects. In addition, RIC is conducting title searches to ensure that bringing in a replacement tenant will not conflict with any existing title instruments or lease agreements. This step is critical to confirm that the proposed tenancy does not violate any legal restrictions or encumbrances tied to the Store. The title search is currently underway and will likely not be completed by September 30, 2024. If any violations are flagged, the parties should be required to work together to seek appropriate exceptions and/or consents from affected tenants.

    b. *Paragraph 11(b)* seeks to invalidate a provision unreasonably prohibiting necessary alterations to the premises or signage required to convert the premises to each Buyer's Intended Use. Similarly, *paragraph 11(g)* seeks to invalidate a provision restricting a Buyer's ability to place reasonable signage on the premises. RIC objects to the extent this language would permit Ollie's to disregard the

5

301648610v2
4860-3069-6681, v. 2

signage provisions of the RIC Lease beyond transitioning "Big Lots" signs to "Ollie's Bargain Outlet, Inc." signs. Ollie's cannot be excused from complying with the signage restrictions set forth in the RIC Lease.

c. *Paragraph 11(c)* seeks to permit Ollie's to "go dark" until the later of (i) 120 days after the closing date of the assignment of the RIC Lease "or such later time" (ii) or the Going Dark Period listed in each applicable Agreement. Due to lease restrictions contained in RIC's leases with other tenants in the Shopping Center, RIC objects to Ollie's going dark for a period of time beyond four months. RIC's other leases also contain a restriction that would require Ollie's to use the entire square footage of the Store.

d. *Paragraph 11(d)* seeks to invalidate a provision conditioning assignment on landlord consent. RIC does not object to the Debtors' assignment of the RIC Lease to Ollie's, but RIC's consent to such assignment shall not be deemed as consent to future assignments by Ollie's.

e. *Paragraph 11(f)* is vague. As noted above, RIC does not object to the Debtors' assignment of the RIC Lease pursuant to the Bankruptcy Code or other applicable law. To the extent paragraph 11(f) has a different interpretation, RIC requests a clarification and reserves the right to object.

f. *Paragraph 11(g)* seeks to invalidate radius provisions. RIC cannot at this time ascertain whether paragraph 11(g) would cause RIC to be in breach of any leases with other tenants within a particular radius of the Store. To the extent RIC determines that it would be in violation of anther lease by virtue of an annulment

of a radius provision, the parties should be required to work together to ensure that RIC remains in compliance with its contractual obligations to other tenants.

13. RIC respectfully requests that the Court restrict the Debtors from altering material terms in the RIC Lease as some of these terms may be harmful to other tenants in the Shopping Center and may cause RIC to be in breach of its other leases.

## RESERVATION OF RIGHTS

14. RIC reserves all rights with respect to the RIC Lease, the Assignment Notice, the RIC Cure Amount, the Proposed Order, and all other pending pleadings in the Chapter 11 Cases, and as against the Debtors, Ollie's, or any other party under the RIC Lease, the Bankruptcy Code, and other applicable law.

15. RIC expressly reserves the right to amend or supplement this Objection, including with respect to the cure amount and requirements under section 365(b)(1) of the Bankruptcy Code, at any time prior to any assumption or assignment of the RIC Lease, to assert additional non-monetary defaults or any rights for indemnification or contribution against the Debtors under the RIC Lease, to assert any rights of RIC with respect to the RIC Lease, to object to the assumption and assignment of the RIC Lease on the grounds of adequate assurance or other grounds, and to assert any further objections as it deems necessary or appropriate and as the evidence may allow at any hearing thereon.

## NOTICE AND NO PRIOR REQUEST

16. Pursuant to the Assignment Notice, notice of this Objection will be provided to:

   a. Proposed counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn.: Brian M. Resnick, Esq., Adam L. Shpeen, Esq., Stephen D. Piraino, Esq., and Ethan Stern, Esq;

   b. Proposed co-counsel to the Debtors, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, DE 19801, Attn: Robert J.

       Dehney, Sr., Esq., Andrew R. Remming, Esq., Daniel B. Butz, Esq., Tamara K. Mann, Esq., and Casey B. Sawyer, Esq.;

c.    The Office of the United States Trustee for the District of Delaware, Attn: Linda Casey;

d.    Proposed counsel to the Committee, McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, NY 10017-3852, Attn: Darren Azman, Esq.; Kristin Going, Esq.; and

e.    Proposed co-counsel to the Committee, Cole Schotz P.C., 500 Delaware Avenue, Suite 200, Wilmington, DE 19801, Attn: Attn: Justin R. Alberto, Esq..

    *[Remainder of page left intentionally blank.]*

**CONCLUSION**

WHEREFORE, RIC respectfully requests that the Court (i) enter an Order sustaining this Objection, (ii) establish the RIC Cure Amount as no less than $69,161.91, (iii) restrict the Debtors' ability to modify the terms of the RIC Lease, and (iv) grant such other and further relief as is just and equitable.

Dated: September 26, 2024
      Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

 /s/ *William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
1313 N. Market Street, Suite 5400
Wilmington, DE 19801
Telephone:   (302) 295-0191
Facsimile:   (302) 295-0199
    Email:  chipman@chipmanbrown.com

-and-

**KATTEN MUCHIN ROSENMAN LLP**
John E. Mitchell (TX Bar No. 00797095)
Yelena E. Archiyan (TX Bar No. 24119035)
2121 N. Pearl St., Suite 1100
Dallas, TX 75201
Telephone:   (214) 765-3600
Facsimile:    (214) 765-3602
Email: john.mitchell@katten.com
    yelena.archiyan@katten.com

*Counsel for Realty Income Corporation*