## Exhibit 2

**Redline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administrated) |
| | **Re: Docket No. 13 &** 137 |

**ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS-IN-POSSESSION TO TERMINATE OR ASSUME, <u>ASSIGN AND SELL CERTAIN NON-RESIDENTIAL REAL PROPERTY LEASES</u>**

Upon the motion (the "**Motion**")[2] of Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for an order pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006 and 9014, and Local Rule 6004-1, (i) establishing procedures (the "**Lease Sale Procedures**") to sell or transfer certain unexpired leases of non-residential real property (each, as the same may have been amended from time to time a "**Lease**"); (ii) scheduling an auction to sell the leases (the "**Lease Sales**") detailed in the Lease Sale Procedures (the "**Lease Auction**") and a hearing to approve one or more Sales (the "**Lease Sale Hearing**"); and (iii) granting related relief, and the [Docket No. 13]; Court having entered an interim order granting the relief requested in the Motion on September 11, 2024 [Docket No.

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin- Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

137] (the "**Interim Order**"); and in accordance with the Interim Order, the Debtors having conducted a Lease Auction on September 18, 2024; and the Debtors having filed a notice of Successful Bidder on September 19, 2024 [Docket No. 229] (the "**Post-Auction Notice**"); and the Debtors having filed a *Notice of Abandonment, Utilization and Disposal of Personal Property on Certain of the Debtors' Leased Premises Sold Pursuant to the September Wave Lease Sales* on September 23, 2024 [Docket No. 251] (the "**Notice of Abandonment**"); and the Debtors having determined, in the exercise of their business judgement and in consultation with their advisors and the Consultation Parties, that the offers listed on **Exhibit A** attached hereto are the highest and best offers for the respective Leases; and the Court having determined that the legal and factual bases set forth in the Motion and the ~~A&G Declaration~~*Declaration of Todd Eyler of A&G Real Estate Partners, in Support of Order (I) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of all Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (II) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 351] establish just cause for the relief granted herein; and the Debtors having served notice of Motion, the Lease Sale Hearing, the Notice of Abandonment and related filings [Docket Nos. 72, 235, 311, 324, 325 & 361]; and after due deliberation and good and sufficient cause appearing therefor;

    **NOW, THEREFORE**, the Court hereby finds as follows:

    A.    After good and sufficient notice of the Motion having been provided and the occurrence of the Lease Auction on September 18, 2024, the purchase prices listed on **Exhibit A** are the highest and best offers received by the Debtors for the Leases listed therein.

B.      A reasonable opportunity to object or be heard regarding the Post-Auction Notice has been afforded to all interested persons and entities, including the landlords for the premises referenced on **Exhibit A** (the "**Landlords**").

C.      The Debtors have determined in the exercise of their reasonable business judgment that the Leases should be (i) sold and assigned to the parties listed on **Exhibit A** for which the type of agreement sought to be approved is an Assignment Agreement (the "**Proposed Assignees**," and the relevant Leases, the "**Assigned Leases**"), or (ii) terminated pursuant to agreements entered into with the parties listed on **Exhibit A** for which the type of agreement sought to be approved is a Lease Termination Agreement (the "**LTA Landlords**," and together with the Proposed Assignees, the "**Buyers**").

D.      The assumption, assignment and sale of the Leases to the Buyers, or the termination of the Leases, as applicable, pursuant to Sections 363 and 365 of the Bankruptcy Code is in the best interests of the Debtors, their estates and their creditors.

E.      The consideration to be paid by the Buyers pursuant to the Assumption and Assignment Agreements or Termination Agreements dated September 30, 2024 (the "**Agreements**"), copies of which are attached as **Exhibit B** and **Exhibit C**, respectively, hereto, constitutes adequate and fair value for the Leases.

F.      Pursuant to Sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) of the Bankruptcy Code, to the extent required under the Lease Sale Procedures, the Buyers have provided adequate assurance of future performance under the Leases, as applicable.

G.      The assumption and assignment of the Assigned Leases to the Proposed Assignees is in compliance with Section 365(b)(3) of the Bankruptcy Code.

H.      The Agreements were negotiated and entered into in good faith, from arm's length bargaining positions, by the Debtors and the Buyers. Each Buyer is hereby found to be a good faith purchaser of the Leases and is found to be entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code.

I.      Through, *inter alia*, the Notice of Abandonment, the Debtors have provided sufficient notice to certain known and potentially interested third parties concerning the abandonment of personal property that will be left at the leased premises upon the Closing Dates or Termination Dates (as defined in the Agreements), as applicable.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT**

1.      The Lease Sale Procedures Motion, as it pertains to the assignment of the Leases to each Buyer, or the termination of the Leases, is hereby approved.

2.      Subject to Paragraph 21 below, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are each hereby authorized to assume, sell and assign to each Proposed Assignee the Assigned Leases, pursuant to the terms and provisions of this Order and the Agreements attached hereto as **Exhibit B**, all of the terms of which are hereby approved.

3.      Pursuant to Sections 105(a), 363(b)(1) and (f) and 365(a) of the Bankruptcy Code, the Debtors and the LTA Landlords are authorized to enter into and perform under the Lease Termination Agreements attached hereto as **Exhibit C**, and to implement the Lease Termination Agreements and the transactions contemplated thereunder and hereunder.    The Lease Termination Agreements and all of the terms and conditions thereof, including, without limitation, the Debtors' termination of the relevant Leases and surrender of the leased premises, are hereby approved in all respects.

4.      In accordance with Section 363 of the Bankruptcy Code, effective as of the applicable Closing Dates or Termination Dates, the Leases shall be transferred free and clear of any leasehold mortgages, subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, interests, mechanics liens, bills, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances.

5.      Subject to paragraph 21 below, upon the entry of this Order and the occurrence of the Closing Date (as defined in the Assignment Agreements), each Proposed Assignee shall be deemed to have assumed and succeeded to the entirety of the Debtors' rights and obligations in each of the Assigned Leases which are due and owing from and after the Closing Date and shall have the rights of the tenant thereunder.

6.      Upon the Termination Date (as defined in the Lease Termination Agreements), the Debtors' rejection and termination of the relevant Leases shall occur without any further action required by the Debtors, and the Debtors shall surrender the premises to the LTA Landlords pursuant to the terms of the Lease Termination Agreements, including turnover of the keys and access codes (or written confirmation that the LTA Landlords are authorized to change the locks).

7.      Upon entry of this Order and the occurrence of the Closing Date or Termination Date, as applicable, each Buyer is a good faith purchaser and shall be entitled to the protections of Bankruptcy Code Section 363(m).

8.      Pursuant to Section 365(b)(l) of the Bankruptcy Code, to the extent a Cure Cost is owed to a Counterparty, the applicable Cure Cost shall be promptly paid by the Debtors. Any objection of any Counterparty to the assumption or assignment or transfer of any Assigned Leases, any Cure Cost, or seeking further adequate assurance of future performance other than

that provided in the relevant Agreements, to the extent not otherwise resolved by agreement, contemplated to be heard after the Lease Sale Hearing, or by separate order of this Court, is hereby overruled. There shall be no accelerations, assignment fees, increases, or any other fees charged to any Buyer or the Debtors as a result of the assumption and assignment of the Assigned Leases. Upon remittance of the Cure Costs by the Debtors to the Landlords pursuant to the terms of this Order, the Landlords for the Assigned Leases shall be barred from asserting any additional cure amounts or other claims with respect to the Assigned Leases. For the avoidance of doubt, the counterparties (including without limitation, the Landlords) to the Assigned Leases shall be forever (i) barred from objecting to the applicable Cure Cost and from asserting any additional cure or other amounts with respect to the Leases, and the Debtors and Assignee shall be entitled to rely solely upon the Cure Cost set forth above and (ii) barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, the Buyer or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the Leases, or that there is any objection or defense to the assumption or assumption and assignment of the Leases. On and after the Closing Date, each Proposed Assignee shall be responsible for paying (and shall be entitled to receive any credits for) all amounts outstanding under the Assigned Leases due on or after the Closing Date.

9. The proceeds of the Lease Sales shall be payable in accordance with the DIP Orders and the Approved Budget (as defined in the DIP Orders).

10. All personal property and furniture, fixtures and equipment ("**FF&E**") remaining in the stores subject to the Leases on or after the Closing Date or Termination Date, as applicable, shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as of the Closing Date or Termination Date, as applicable. Each Buyer may, in its sole discretion and

without further order of this Court, utilize and/or dispose of such property without notice or liability to the Debtors or any consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition; provided, however, that the DIP Lenders and the Debtors' pre-petition secured lenders consent to the release of their interests (if any) in, and liens on (if any), the FF&E, and to the Buyers' disposition of such FF&E, and any such interests and liens are hereby released; provided, further, that the Debtors are not aware of any other parties with interests in the FF&E.

11.    Subject to paragraph 19 herein, the sale and assignment of the Assigned Leases, payment of the Cure Costs and the transfer of the furniture, fixtures and equipment referenced immediately above, as applicable, shall relieve the Debtors from any further liability pursuant to Section 365(k) of the Bankruptcy Code.

12.    Solely with respect to the transactions contemplated by this Order and the Agreements, and except as otherwise agreed between any Landlord and each Buyer, and except to the extent a Lease is terminated pursuant to this Order (in which case such provisions are no longer of any force and effect in any event), nothing in this Order shall be deemed to annul or vary any provision of the Leases *other than* the following provisions (the "**Unenforceable Provisions**"):

a.    a provision prohibiting each Buyer's Intended Use of the premises, as defined in each Agreement;

b.    a provision unreasonably prohibiting necessary alterations to the premises or signage required to convert the premises to each Buyer's Intended Use, as defined in each Agreement; provided such alterations are deemed necessary by the Buyer to conform such store

to the Buyer's typical retail store consistent with the Buyer's Intended Use of the premises, as defined in each Agreement;

       c.     a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Leases or an increase in rent or other penalty by reason of the Debtors' cessation of retail operations before the assignment, and/or any delay by any Buyer in reestablishing retail operations after the assignment, to the extent any such provision does not permit any Buyer to "go dark" until the later of: (i) one hundred twenty (120) days after the Closing Date (as defined in the Agreement) of the assignment of the Leases, or such later time, when the particular facts and circumstances of a given store warrant additional time, which circumstances shall include, without limitation, the age and condition of the shopping center, the ability to obtain any permits and documents necessary to complete construction, the location of the premises in the shopping center, the shape of the premises to be assigned, the demographics of the shopping center's location and the overall quality of the shopping center and its existing tenants or (ii) the Going Dark Period (as defined in each Agreement) listed in each applicable Agreement;

       d.     a provision conditioning assignment on Landlord consent, or requiring payment to the Landlord as the price of assignment, or granting Landlord the right to recapture the leased premises following the assignment;

       e.     a provision effecting forfeiture or a modification of any of a Buyer's rights or obligations presently in effect under the Leases upon an assignment by the Debtors of the Leases;

       f.     a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

g. a provision restricting a Buyer's ability to place reasonable signage on the premises; provided such signage is deemed necessary by the Buyer to conform such store to the Buyer's typical retail store consistent with the Buyer's Intended Use of the premises, as defined in each Agreement;

h. a provision requiring the use of a certain tradename;

i. a provision regarding minimum sales revenues required to be satisfied at the premises covered by the Leases; and

j. any radius provisions set forth in the Leases to the extent applicable to any existing stores of each Buyer located near the Debtors' premises (but such radius provisions shall at all times apply to any new stores which might be opened by each Buyer in the area of Debtors' premises after Closing).

13. Solely with respect to the transactions contemplated by this Order and the Agreements, none of the Unenforceable Provisions shall apply to any Proposed Assignee in any respect and, without limiting the generality of the foregoing, no violation by the Debtors or Proposed Assignees of the Unenforceable Provisions shall constitute an event of default under any of the Leases.

14. Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and Buyers are authorized to close the Lease Sales set forth in the Agreements immediately upon entry of this Order. Time is of the essence in closing the Lease Sale transactions referenced herein, and the Debtors and Buyers intend to close each of the Lease Sale transactions as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order. ~~Any party objecting to this~~

~~Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being~~ ~~foreclosed as moot.~~

15.     Upon entry of this Order, this Order and the findings hereunder shall be binding upon all parties to the Leases and the Agreements.

16.     Upon the entry of this Order and the occurrence of the Closing Date, the Landlords of the Assigned Leases shall accept and honor the assignment of the Assigned Leases to the Proposed Assignees.

17.     The Landlords for the Assigned Leases shall cooperate and expeditiously execute and deliver, within ten (10) days of any reasonable requests of any Buyer and at no cost to such Landlords, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the properties as contemplated under a relevant Agreement.

18.     Notwithstanding anything to the contrary in the Interim Order, this Order, any of the Agreements, any side letters, or the Lease Sale Procedures, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of the applicable Buyer and applicable insurer and/or third-party administrator.

19.     Notwithstanding anything to the contrary in the Interim Order, this Order, the Lease Sale Procedures, or any Lease Termination Agreement, the Landlords do not release, and are not releasing, the Debtors from any claims for indemnification under the terminated Leases or the Assigned Leases, as applicable, arising from any third party claims that may be asserted

against the Landlords for occurrences taking place prior to the Termination Dates or Closing Dates, as applicable. Nothing in this Order or the applicable Agreements shall impair or prejudice an applicable landlord's rights with respect to the Debtors' available insurance coverage with respect to third-party claims asserted in connection with the Debtors' use and occupancy of the applicable premises subject to the Assigned Leases or Terminated Leases with regard to events that occurred prior to the Closing Date or Termination Date, as applicable.

20.    Any party which did not object to the Lease Auction, Cure Cost & Lease Sale Hearing Notice and was served with a Notice of Abandonment within the time set forth in the notice is deemed to consent to the Debtors' assumption and assignment or termination of the Leases and the satisfaction of the requirements of Section 365 of the Bankruptcy Code. In accordance with the Notice of Abandonment, any party served with the Notice of Abandonment that did not object to the Lease Sale is deemed to have consented to: (i) the abandonment of personal property remaining on the Lease Asset premises as of the effective date of the Lease Sales; (ii) the transfer of ownership of all such property to any Buyer; and (iii) allow the Debtors or any Buyer to utilize and/or dispose of any personal property remaining on the premises of the Lease Assets without further Court order and without liability or further notice to any third party. Notwithstanding anything herein to the contrary, nothing herein shall authorize the Debtors or any other party to abandon property not owned by the Debtors without the consent of the owner of such property; provided that, if any such non-owned property is abandoned, the rights of the owner of such property who was served with a Notice of Abandonment to assert a claim against the Debtors are preserved, and any defenses or rights of the Debtors are also preserved.

21.    The *Objection and Reservation of Rights of Realty Income Corporation* ("**RIC**") *to Notice of Successful and Backup Bidder With Respect to the Auction and Certain of the*

*Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* [Dkt. No. 309] is deemed resolved as set forth herein.  Solely with respect to the sale to Ollie's Bargain Outlet, Inc. ("**Ollie's**"), Proposed Assignee of the Lease Asset covering the premises located at 1690 S. Main Street, West Bend, Wisconsin 53095 (Store Number 4767) (the "**West Bend Lease**"), RIC, as landlord, shall have until October 10, 2024 to provide notice to the Debtors and Ollie's regarding the results of RIC's review of title instruments and other real property records, and whether RIC believes that the proposed assumption and assignment of the West Bend Lease may violate any exclusivity or shopping center title use restrictions (the "**Subject Issue**"). Ollie's, the Debtors, and RIC shall then have until October 12, 2024, to determine how the Subject Issue, if any, may be resolved. In the event the parties are not able to agree on a mutually acceptable resolution to any Subject Issue by October 12, 2024, then: (i) the West Bend Lease shall be deemed rejected by the Debtors as of September 30, 2024; (ii) the Debtors and Ollie's shall not proceed with the Lease Sale of the West Bend Lease; and (iii) the Debtors shall file a notice of rejection of the West Bend Lease with the Court.  In the event that the parties are able to agree on a mutually acceptable resolution to the Subject Issue, if any, on or before October 12, 2024, then, notwithstanding anything to the contrary in the Assignment Agreement: (i) the Debtors and Ollie's shall proceed with the Lease Sale of the West Bend Lease; (ii) October 13, 2024 shall be deemed the Closing Date of the assumption and assignment of the West Bend Lease; (iii) the purchase price for the Lease Sale of the West Bend Lease to Ollie's shall be $93,759 (the "**West Bend Lease Sale Price**"); (iv) Ollie's shall assume the entirety of the Debtors' rights and obligations in the West Bend Lease from and after the Closing Date, provided that Ollie's shall have no obligation to pay rent for the period prior to October 13, 2024; and (v) following the Closing Date of the assumption and assignment of the West Bend

Lease, the Debtors shall file a notice of closing of the Lease Sale of the West Bend Lease with the Court.  To the extent applicable, the Debtors and Ollie's may enter into separate Assignment Agreements for, on the one hand, the Lease Sale of the West Bend Lease and, on the one hand, the Lease Sale of each of the other Lease Assets comprising Ollie's bid (the "**Non-West Bend Assignment Agreement**").  For the avoidance of doubt, the aggregate purchase price for the Non-West Bend Assignment Agreement shall not include the West Bend Lease Sale Price. Based on the Debtors' representation that the premises associated with the West Bend Lease will be vacated by September 30, 2024, RIC shall waive its right to an administrative rent claim or any other claim for the period from October 1 through and including October 12, 2024, while it conducts its due diligence on the Subject Issue. However, in the event the Debtors continue operations at the premises, then the Debtors shall pay rent on a per diem basis until such time as the Debtors vacate the premises. RIC shall have until 5:00 p.m. (prevailing Eastern Time) on October 10, 2024, to provide the Debtors with documentation indicating that utility bills in the amounts of $11,609.76, $1787.03 and $1699.99 were invoiced to the Debtors as of February 13, 2024, June 12, 2024, and June 12, 2024, respectively with respect to the West Bend Lease. Upon timely provision of all or part of such documentation, amounts not to exceed $15,096.78 shall be added to the Cure Cost for the West Bend Lease.

22.    This Court shall retain jurisdiction (i) to construe and determine any disputes under this Order, (ii) to enforce and implement the terms and provisions of each Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, and (iii) to resolve any disputes arising under or related to the Lease Sales (but all Landlord/tenant disputes arising subsequent to the Closing Date or

Termination Date, as applicable, which do not involve the Lease Sales, this Order or the Debtors shall not be subject to the jurisdiction of this Court).

23.    The Debtors and the Buyers are hereby authorized and directed to execute and deliver any and all documents, and to do all things reasonably necessary, to effectuate the purposes of this Order, to transfer the Debtors' interests in and to the Leases, in accordance with the terms of the Agreements, and to carry out the terms and conditions of such Agreements.

24.    The Buyers are not successors in interest to the Debtors (other than with respect to the Debtors' rights and obligations under the Assigned Leases first accruing after each Proposed Assignee takes assignment thereunder as provided for under the relevant Agreements), or their bankruptcy estates as a result of each Buyer taking title or possession of the Leases and the subject premises, and the Buyers are not assuming any liabilities or obligations of the Debtors or their bankruptcy estates, except as may be specifically provided for in the Agreements.

25.    This Order shall be effective and enforceable after its entry as provided by Bankruptcy Rule 7062.

26.    Any remaining objections to the assignment of the Leases or the termination of the Leases that have not been withdrawn, waived, adjourned, or settled, and all reservations of rights included in such objections, are overruled in all respects and denied.

27.    Any provision in the Leases regarding percentage rent to the extent of Debtors' sales prior to the Closing Date shall not be imputed against the Proposed Assignees provided that each Proposed Assignee shall be liable for Percentage Rent for the prorated portion of calendar year 2024 remaining after the Closing Date for a partial calendar year as if the Term began on the Closing Date (and each Proposed Assignee shall not be liable to pay any Percentage Rent based

upon sales that occurred prior to the Closing Date) and no Percentage Rent is due and owing by the Buyers for the period prior to the Closing Date.

28.     ~~To the extent this Order is inconsistent with any prior order or filing with respect to the Motion in these Chapter 11 Cases, the terms of this Order shall govern and any prior orders shall be deemed amended or otherwise modified to the extent required to permit consummation of the Lease Sales.~~ To the extent there is any inconsistency between the terms of this Order and the terms of the Agreements (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

29.     To the extent that any Buyer and Landlord enter into a side letter with respect to any Lease, such side letter shall govern with respect to rights and obligations of the Buyer and Landlord.  For the avoidance of doubt, no side letter shall modify the rights and obligations of any third party without such third party's consent.

30.     The failure to specifically include any particular provision of the Agreements or other related documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreements and all other related documents be authorized and approved in their entirety pursuant to this Order.

31.     The Agreements and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement is consistent with this Order and does not have any adverse effect on the Debtors' estates; *provided, further*, that the Debtors shall provide any such modification, amendment, or supplement to the Secured Parties, the applicable Landlord under the Lease and any official committee appointed in these Chapter 11 Cases no less than one (1) day prior to

execution of such modification, amendment, or supplement; *provided further,* that after Closing, the final versions of the Agreement any related agreements, documents or other instruments (as modified, amended or supplemented) shall be filed with the Court.

**EXHIBIT A**

| Lease Asset(s) | Lease Counterparty | Successful Bidder | Type of Agreement | Cure | Price[31] |
|---|---|---|---|---|---|
| #4634, 17510 N 75th Ave., Glendale, AZ | Glendale Arrowhead, LLC | Glendale Arrowhead, LLC | Lease Termination | $56,674 | $56,674 |
| #4667, 2840 E Main St., STE 109, Mesa, AZ | RED MOUNTAIN ASSET FUND I, LLC | Burlington Coat Factory Warehouse Corporation | Assignment Agreement | $35,024 | $95,712 |
| #4754, 1085 Bellevue Rd, Atwater, CA | Ethan Conrad | Ethan Conrad | Lease Termination | $28,661 | $28,661 |
| #4739, 951 W Pacheco Blvd, Los Banos, CA | Ethan Conrad | Ethan Conrad | Lease Termination | $33,690 | $33,690 |
| #4283, 665 Fairfield Dr, Merced CA | Ethan Conrad | Ethan Conrad | Lease Termination | $18,088 | $26,488 |
| # 1918, 8700 La Riviera Dr, Sacramento, CA | Ethan Conrad | Ethan Conrad | Lease Termination | $36,161 | $36,161 |
| #4054, 1417 S Broadway, Santa Maria, CA | Mideb Nominees, Inc. | Burlington Coat Factory of Texas, Inc. | Assignment Agreement | $81,835 | $120,712 |
| #4749, 1840 Countryside Dr, Turlock, CA | NINE ISLAND 11, LLC | Burlington Coat Factory Warehouse Corporation | Assignment Agreement | $59,143 | $95,712 |
| #1659, 3426 Kohler Memorial Dr, Sheboygan, WI | Plankview Green Development, LLC | Ollie's Bargain Outlet, Inc. | Assignment Agreement | $14,000 | $87,714.83 |
| #5147, 1470 Pleasant Valley Rd, Manchester, CT | Plaza at Buckland Hills, LLC | Burlington Coat Factory Warehouse Corporation | Assignment Agreement | $26,299.40 | $95,712 |
| #5169, 34940 Emerald Coast Pkwy, Destin, Fl | Paradise Isle Destin, LLC | Paradise Isle Destin, LLC | Lease Termination | $45,964 | $54,687 |
| #4635, 340 Summit Drive, Lockport IL | Gator Lockport LLC | Ollie's Bargain Outlet, Inc. | Assignment Agreement | $15,198 | $87,714.83 |
| #4735, 616 W Johnson St, Fond Du Lac, WI | NS Retail Holdings, LLC | Ollie's Bargain Outlet, Inc. | Assignment Agreement | $60,000 | $87,714.83 |

[31] Certain Landlord bid prices may be netted by outstanding cure amounts as provided for in the applicable Termination Agreements.

| #5457, 3331 Corridor Marketplace, Laurel, MD | Corridor Market Place, LLC | Corridor Market Place, LLC | Lease Termination | $25,761 | $225,000[42] |
| #4767, 1690 S Main St, West Bend, WI | Spirit Realty LP | Ollie's Bargain Outlet, Inc. | Assignment Agreement | $43,750 | $93,759 |
| #4764, 751 Upper Glen St, STE 2, Queensbury, NY | UPPER GLEN STREET ASSOCIATES, LLC | Ocean State Jobbers, Inc. | Assignment Agreement | $72,726.70 | $110,000 |
| #5449, 713 E Baltimore Ave, Clifton Heights, PA | Gator Clifton Partners, LTD | Burlington Coat Factory Warehouse Corporation | Assignment Agreement | $38,389 | $95,712 |
| #5305, 5415 Washington Ave, Mount Pleasant, WI | NH Lakeville LLC | Ollie's Bargain Outlet, Inc. | Assignment Agreement | $72,507.80 | $87,714.83 |
| #5415, 7743 Sudley Rd, Manassas, VA | Agree Central, LLC | Agree Central, LLC | Lease Termination | $50,181 | $325,000 |
| #5463, 687 Main St, Thomson, GA | Thomson Plaza Shopping Center, LLC | Ollie's Bargain Outlet, Inc. | Assignment Agreement | $27,770 | $87,714.84 |
| #5477, 339 South Dr, Natchitoches, LA | River South Commons, LLC | Ollie's Bargain Outlet, Inc. | Assignment Agreement | $40,920 | $87,714.84 |

---

[42] As part of their bid, Corridor Market Place, LLC has agreed to waive the Debtors' full cure amount, along with all unpaid taxes and insurance amounts set to come due under the lease in the expected amount of approximately $85,000.

# EXHIBIT B

## Assumption & Assignment Agreements

# EXHIBIT C

**Lease Termination Agreements**