## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| BIG LOTS, INC., *et al.*,[1] | ) ) ) | Case No. 24-11967 (JKS) |
| Debtors. | ) ) ) | **Re: Docket No. 17** |

### OBJECTION AND RESERVATION OF RIGHTS OF CRP/CHI MERRILLVILLE II OWNER, L.L.C. TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO REJECT CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) AUTHORIZING AND ESTABLISHING PROCEDURES TO REJECT EXECUTORY CONTRACTS AND UNEXPIRED LEASES

CRP/CHI MERRILLVILLE II OWNER, L.L.C. (the "**Landlord**") files this Objection and

Reservation of Rights (this "**Objection**") to the *Motion of Debtors for Entry of an Order (I)*

*Authorizing Debtors to Reject Certain Unexpired Leases of Nonresidential Real Property and (II)*

*Authorizing and Establishing Procedures to Reject Executory Contracts and Unexpired Leases*

[Docket No. 17] (the "**Rejection Motion**")[2] filed by the debtors and debtors-in-possession

(together, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). In

pertinent part, the Rejection Motion seeks authority to reject a lease between Debtor INFDC, LLC

("**INFDC**") and Landlord (the "**Lease**"), and an accompanying sublease (the "**Sublease**") between

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined in this Objection shall have the meanings given to those terms in the Rejection Motion.

INFDC and National Distribution Centers, LLC ("**Subtenant**"). In support of the Objection, the Landlord respectfully states as follows:[3]

## PRELIMINARY STATEMENT

1.      Landlord is not generally opposed to the Debtors' request for an order authorizing rejection of the Lease and Sublease. However, the Rejection Motion goes beyond mere rejection in that Debtors seek to retroactively set the Initial Lease Rejection Date with respect to the Lease and Sublease as the date of the Debtors' bankruptcy filings, which was September 9, 2024 ("**Petition Date**").

2.      For the reasons set forth herein, the Initial Lease Rejection Date cannot be deemed to have occurred on the Petition Date. INFDC had not surrendered the property to Landlord as of the Petition Date, and still has not done so as of the date of this Objection. Allowing retroactive rejection of the Lease and Sublease to the Petition Date would inequitably relieve the Debtors' administrative rent obligations during a time when Landlord is unable to possess or re-let its real property.

## BACKGROUND

3.      On the Petition Date, the Debtors filed the Rejection Motion which requests entry of an Order (i) establishing procedures for the future rejection of executory contracts and unexpired leases and (ii) the rejection of a designated set of Initial Leases as of an Initial Lease Rejection Date.

---

[3] The Rejection motion requests entry of an order authorizing and approving: (i) Rejection Procedures which would govern the process for future rejections of executory contracts and unexpired leases and (ii) rejection of "Initial Leases" *nunc pro tunc* to an "Initial Lease Rejection Date," each of which are identified in Exhibit 1 to the Rejection Motion. This Objection relates solely to the Debtors' request to reject its unexpired lease with Landlord and a related Sublease. Landlord does not object to the Rejection Procedures generally, except to the limited extent, if any, such Rejection Procedures would directly affect the proposed rejection of Debtors' lease with Landlord.

98999381.6

4.    The Lease is Number 41 on the Debtors' list of Initial Leases subject to the request for rejection, and the Sublease is Number 94. *See* Rejection Motion at Exhibit 1, pp. 12 and 16.

5.    As to both the Lease and the Sublease, the Debtors' proposed Effective Rejection Date, which would also be the Initial Lease Rejection Date if approved, is September 9, 2024, the Petition Date.

## FACTUAL BACKGROUND

6.    On or about March 14, 2022, Landlord, as the landlord, and Debtor INFDC, as tenant, entered into an Agreement of Lease with respect to non-residential real property located at 9602 Georgia Street, Merrillville, Indiana (the "**Premises**").

7.    The Lease is scheduled to expire on January 31, 2030. The Lease was in effect as of the Petition Date.

8.    In or about October 2023, INFDC requested Landlord's consent to a Sublease between INFDC, as sublandlord, and National Distribution Centers, LLC, as Subtenant. The Lease expressly requires INFDC obtain Landlord's consent to such Sublease.

9.    Thereafter, Landlord, INFDC, and Subtenant entered into a tri-partite Sublease Consent which set forth the terms and conditions of Landlord's consent to the Sublease (the "**Sublease Consent**"). In pertinent part, the Sublease Consent provides that Subtenant's leasehold estate is completely and unconditionally subject and subordinate to all the terms and conditions of the Lease.

10.    Landlord also declined to provide any non-disturbance or similar rights to Subtenant and Landlord expressly would not recognize the Sublease or Subtenant in the event of expiration or termination of the Lease. The Sublease Consent additionally provides that Landlord

may remove Subtenant from the Premises upon termination or expiration of the Lease. Finally, the Sublease Consent left unaffected INFDC's liabilities and duties to Landlord under the Lease.

11.       As of the Petition Date, and as of the date of this Objection, INFDC and, through it, Subtenant, remain in possession of the Premises.

## LANDLORD'S OBJECTIONS TO PROPOSED REJECTION

12.       As set forth herein, Landlord does not generally object to the Debtors' rejection of the Lease and Sublease. However, the details of rejection, as presently proposed, do not comply with the Bankruptcy Code.

### A.       The Initial Lease Rejection Date Should be no Earlier than Debtor's Surrender of the Premises

13.       Debtors propose that the Initial Lease Rejection Date, i.e., the Effective Date of Rejection, be set *nunc pro tunc* to the Petition Date. In support of this request, the Debtors cite authorities which generally recognize the Court's discretion to grant *nunc pro tunc* relief where warranted under the equities of a particular case. *See* Rejection Motion at ¶ 27.

14.       However, the Court's equitable powers are not unlimited, and *nunc pro tunc* relief is the exception, not the rule. *See generally Thinking Machs. V. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995) ("a bankruptcy court's exercise of its residual equitable powers must be connected to, and advance the purposes of, specific provisions in the Code.").

15.       Because the Court's "power to grant retroactive relief is derived from the bankruptcy court's equitable powers" the Court may only grant retroactive relief "so long as it promotes the purpose of § 365(a)" *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004). Thus, "only after balancing the equities in a particular case, should the court approve a retroactive rejection of nonresidential lease." *Id.* [sic].

4

16.    The Debtors' Rejection Motion does not assert any facts justifying retroactive relief under the equities of this case. In particular, the Rejection Motion does not explain why rejection should be effective as of a date prior to surrender of the Premises. Courts have consistently declined to approve retroactive rejection where the debtor had not yet surrendered the premises. Those courts which have approved retroactive rejection have done so after finding that the premises were already surrendered before the effective date.

17.    For example, in *In re Chi-Chi*'s, the bankruptcy court first found that the "premises are subject to subleases/sub-subleases, and the current tenants remain on the premises." *Id.* Because the tenant remained in possession, the bankruptcy court concluded that it would not exercise its equitable power to grant retroactive relief. *Id.* Instead, the court held that the "more appropriate date" for rejection was the day "Debtors surrendered the premises to Landlords, and the Landlords were able to enter into agreements with current tenants." *Id. See also In re CCI Wireless, LLC*, 279 B.R. 590, 595-96 (Bankr. D. Colo. 2002) (approving retroactive rejection after finding that "most or perhaps all of the leased premises were vacated before, on or shortly after the date of filing."); *Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1074 (9th Cir. 2004 (affirming *nunc pro tunc* rejection order after finding that debtor never occupied the lease premises); *In re Cafeteria Operators, L.P.*, 299 B.R. 384 (Bankr. N.D. Tex. 2003) (permitting retroactive rejection to the later of the debtor's rejection motion being filed or the date the leased space was vacated); *Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 609 (2nd Cir. 2007) (affirming bankruptcy court's decision to permit retroactive lease rejection where bankruptcy court had "properly considered" that the tenant had vacated the premises and provided its landlord with the opportunity to re-let); *In re SVB Fin. Grp.*, No. 23-10367(mg), 2023 WL

3513360 at *10 (Bankr. S.D.N.Y. 2023) (allowing *nunc pro tunc* rejection where "the leased premises have been unambiguously surrendered").

18.     These opinions all stand for the proposition that the effective date of rejection is tied to the Landlord's ability to re-let the premises and mitigate its damages. In other words, equity does not allow debtors to avoid post-petition administrative rent obligations by rejecting a nonresidential lease retroactive to a date prior to surrendering the premises.

19.     Here, the Debtors and Subtenant remain in possession of the Premises. Allowing retroactive rejection of the Lease and Sublease to the Petition Date would inequitably delegate post-petition rent obligations to pre-petition unsecured claim status, even though Landlord could not and did not possess the Premises during that time.

20.     Indeed, Subtenant paid September rent to the Debtors, which Debtors are obligated to pay over to Landlord pursuant to the Lease. Landlord has not received any rent payments from either the Debtors or the Subtenant since the Petition Date. Landlord would be significantly prejudiced if Debtors were permitted to receive and retain post-petition rent from its Subtenant, refuse to pay that rent over to Landlord, and simultaneously obtain a retroactive Rejection Effective Date negatively affecting Landlord's claim for administrative rent. Conversely, the Subtenant's payment of post-petition rent demonstrates that there would be no prejudice to the Debtors in setting the Effective Rejection Date on or after surrender of the premises because Debtors are still receiving the benefit of their Sublease.

21.     To prevent this inequitable result, the Initial Lease Rejection Date and the Effective Date of Rejection should be no earlier than the date Debtors unambiguously surrender the Premises, including by terminating the possessory rights of Subtenant.

**B.      Subtenant's Obligation to Surrender Possession upon Rejection**

22.     Following termination of the Lease, Subtenant can have no possessory rights under the Sublease. Thus, the Debtors' obligation to surrender the Premises in order to reject the Lease includes the requirement that the Debtors remove Subtenant from possession under the Sublease. *See Chatlos Systems, Inc. v. Kaplan*, 147 B.R. 96 (D. Del. 1992).

23.     In *Chatlos*, the debtor rejected a lease that was subject to a sublease; however, the subtenant failed to surrender possession of the leased premises upon the debtor's rejection. *Id.* at 97-98. Under these circumstances, the court in *Chatlos* determined that the debtor had rejected the lease and had "done everything possible to surrender the premises" to the landlord, thereby terminating the lease. *Id.* The *Chatlos* court further noted that the subtenant became a tenant at sufferance as to the prime landlord after rejection and, as such, became liable to the prime landlord for the reasonable value of the use and occupation of the property in accordance with applicable nonbankruptcy law. *Id.* at 101.

24.     Here, as in *Chatlos*, rejection of the Lease will necessarily result in termination of the Sublease which, in turn, triggers the Debtors' obligation to surrender the Premises free of Subtenant's possessory interest.

25.     Additionally, Landlord's own right to remove Subtenant from the Premises does not stem from § 365, but arises independently through the Sublease Consent and should not be effected by rejection.

**C.      Landlord is Entitled to Administrative Rent**

26.     As set forth above, retroactive rejection of the Lease and Sublease to a time prior to unambiguous surrender of the Premises would inequitably deny Landlord's right to post-petition administrative rent during a time when Landlord is unable to retake and re-let its property.

98999381.6

27. Accordingly, any order authorizing rejection of the Lease and Sublease should be subject to Landlord's entitlement to an administrative expense claim for unpaid post-petition rent at all times prior to the Effective Date of Rejection. Landlord expressly reserves the right to assert such a claim for all time periods in which Debtors or Subtenant occupy the Premises, notwithstanding the Effective Date of Rejection.

## RESERVATION OF RIGHTS

28. This Objection is submitted without prejudice to, and with a full reservation of, Landlord's federal and state law claims, defenses, and remedies, including the right to amend, modify, or supplement this Objection, to seek discovery, to raise additional objections and to introduce evidence at any hearing related to this Objection and without in any way limiting any other rights of Landlord to further object to the Rejection Motion, on any grounds, as may be appropriate.

## CONCLUSION

The Debtors' rejection of the Lease and Sublease should not be allowed if it would result in inequity and harm to the Landlord inconsistent with the Bankruptcy Code. Here, retroactive rejection to the Petition Date is inequitable because it would alter Landlord's right to administrative rent during a time when Landlord cannot possess or re-let its property. This, in turn, provides both Debtors and Subtenant an impermissible monetary windfall through the continued right to possess the Premises without the continuing obligation to pay post-petition rent on an administrative expense basis.

*[signature page follows]*

8

98999381.6

Dated:    October 2, 2024
          Wilmington, Delaware

Respectfully submitted,

**POLSINELLI PC**

 */s/ Shanti M. Katona*
Shanti M. Katona (Del. Bar No. 5352)
Michael V. DiPietro (Del. Bar No. 6781)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
skatona@polsinelli.com
mdipietro@polsinelli.com

-and-

Michael L. Schuster
1401 Lawrence Street, Suite 2300
Denver, Colorado 80202
Telephone: (720) 931-1188
Facsimile: (720) 228-2272
mschuster@polsinelli.com

*Counsel to Landlord*

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that on October 2, 2024, a true and correct copy of the foregoing was caused to be served via the Court's CM/ECF system on all parties authorized to receive electronic notice in this case and upon the parties listed below via electronic mail.

Morris, Nichols, Arsht & Tunnell LLP
Robert J. Dehney, Sr.
Andrew R. Remming
Daniel B. Butz
Sophie Rogers Churchill
Casey B. Sawyer
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
rdehney@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
srchurchill@morrisnichols.com
csawyer@morrisnichols.com

Davis Polk & Wardwell LLP
Brian M. Resnick
Adam L. Shpeen
Stephen D. Piraino
Ethan Stern
450 Lexington Avenue
New York, NY 10017
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
stephen.piraino@davispolk.com
ethan.stern@davispolk.com

Cole Schotz, P.C.
Justin R. Alberto
Stacy L. Newman
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
jalberto@coleschotz.com
snewman@coleschotz.com

McDermott Will & Emery
Darren Azman
Kristin K. Going
One Vanderbilt Avenue
New York, NY, 10017
dazman@mwe.com
kgoing@mwe.com

Linda J. Casey
Office of United States Trustee
844 King Street
Suite 2207
Wilmington, DE 19801
Linda.Casey@usdoj.gov

*/s/ Shanti M. Katona*
Shanti M. Katona (Del. Bar No. 5352)

98999381.6