## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>Jointly Administered<br><br>**Hearing Date**: TBD<br><br>**Objection Deadline:**<br>October 23, 2024 at 4:00 p.m. (ET) |

### MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO REJECT CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) GRANTING RELATED RELIEF

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**" or "**Big Lots**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this *Motion of Debtors for Entry of an Order (I) Authorizing Debtors To Reject Certain Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* (this "**Motion**"). In support of this Motion, the Debtors respectfully state as follows:

### Relief Requested

1. By this Motion, and pursuant to sections 105, 363, 365, and 554 of title 11 of the United States Code (the "**Bankruptcy Code**") and rules 6004, 6006, and 6007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors seek entry of

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (a) authorizing the rejection of the Distribution Center Leases (as defined below) effective as of October 31, 2024 (the "**Distribution Center Leases Rejection Date**"), (b) authorizing the abandonment of personal property in connection with the rejection of the Distribution Center Leases, and (c) granting related relief.

### Jurisdiction, Venue, and Authority

2.    The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

3.    This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). In addition, the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

4.    Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

**A.    General Background**

5.    On September 9, 2024 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors remain in possession of their property and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 23, 2024, the Office

of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**") pursuant to 11 U.S.C. § 1102(a)(1).  No trustee or examiner has been appointed in the Chapter 11 Cases.

6. Big Lots is a one-stop shop home discount retailer.  Big Lots' mission is to help customers "Live Big and Save Lots" by offering bargains on everything for their homes, including furniture, décor, pantry essentials, kitchenware, groceries, and pet supplies.  Headquartered in Columbus, Ohio, Big Lots operates more than 1,300 stores across 48 states in the United States, as well as an ecommerce store with expanded fulfillment and delivery capabilities.

7. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and the Order Directing Joint Administration of Chapter 11 Cases [D.I. 95] entered by the Court, on September 10, 2024, in each of the Chapter 11 Cases.[2]

8. Additional information about the Debtors' businesses and affairs, capital structure, and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the *Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings* [D.I. 3] (the "**Ramsden Declaration**").

B. **The Distribution Center Leases**

9. As described more fully in the Ramsden Declaration, the Debtors historically operated over 1,300 stores (the "**Stores**") and five Distribution Centers (the "**Distribution**

---

[2] *See In re Great Basin, LLC, No. 24-11966 (JKS); In re Big Lots, Inc., No. 24-11967 (JKS); In re Big Lots Management, LLC, No. 24-11969 (JKS); In re Consolidated Property Holdings, LLC, No. 24-11968 (JKS); In re Broyhill LLC, No. 24-11971 (JKS); In re Big Lots Stores - PNS, LLC, No. 24-11970 (JKS); In re Big Lots Stores, LLC, No. 24-11973 (JKS); In re BLBO Tenant, LLC, No. 24-11972 (JKS); In re Big Lots Stores - CSR, LLC, No. 24-11976 (JKS); In re CSC Distribution LLC, No. 24-11974 (JKS); In re Closeout Distribution, LLC, No. 24-11978 (JKS); In re Durant DC, LLC, No. 24-11975 (JKS); In re AVDC, LLC, No. 24-11981 (JKS); In re GAFDC LLC, No. 24-11977 (JKS); In re PAFDC LLC, No. 24-11982 (JKS); In re WAFDC, LLC, No. 24-11979 (JKS); In re INFDC, LLC, No. 24-11983 (JKS); In re Big Lots eCommerce LLC, No. 24-11980 (JKS); In re Big Lots F&S, LLC, No. 24-11984 (JKS).*

Centers") across the United States.  As part of the Debtors' efforts to rationalize their cost structure under their transformation business plan, the Debtors have begun to reduce their real estate footprint and consolidate their network of Distribution Centers.  By this Motion, the Debtors seek authorization to reject the Leases associated with the distribution center located at 18880 Navajo Road, Apple Valley, California (the "**Apple Valley Distribution Center Lease**") and the distribution center located at 200, 300, 350, 400, 450, 500 and 550 Phillipi Road, Columbus, Ohio (the "**Columbus Distribution Center Lease**", together with the Apple Valley Distribution Center Lease, the "**Distribution Center Leases**"), effective as of the Distribution Center Leases Rejection Date.

## Basis for Relief

**A.  Rejection of the Distribution Center Leases is an Exercise of the Debtors' Sound Business Judgment and Should be Authorized**

10. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease."  11 U.S.C. § 365(a).  Courts routinely approve motions to reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment.  *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (stating that the traditional standard applied by courts to authorize the rejection of an executory contract is that of "business judgment"); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 114 (Bankr. D. Del. 2001) ("A debtor's authority to assume or reject an executory contract 'is vital to the basic purpose [of] a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization.'" (quoting *Bildisco*, 465 U.S. at 528)).

11. The standard applied to determine whether the rejection of an unexpired lease should be authorized is the "business judgment" standard. *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *accord L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000) ("Section 365 enables the trustee to maximize the value of the debtor's estate by assuming executory contracts and unexpired leases that benefit the estate and rejecting those that do not."). The business judgment rule entails "a presumption that, in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985) (cleaned up), *overruled on other grounds by Gantler v. Stephens*, 965 A.2d 695 (Del. 2009); *see also In re Sols. Liquidation LLC*, 608 B.R. 384, 402 (Bankr. D. Del. 2019) (citation omitted).

12. Courts emphasize that the business judgment rule is not an onerous standard and, in the context of a debtor's rejection of an executory contract or unexpired lease, merely requires a showing that the rejection of such executory contract or unexpired lease would benefit the debtor's estate. *See NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) (noting that the "usual test for rejection of an executory contract is simply whether rejection would benefit the estate"), *aff'd*, 465 U.S. 513 (1984); *In re AbitibiBowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (explaining that the business judgment rule is "not a difficult standard to satisfy" (citing *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006))). As such, courts exhibit great judicial deference to a debtor's exercise of business judgment to reject an unexpired lease or an executory contract. *See In re Comput. Sales Int'l v. Fed. Mogul Glob., Inc. (In re Fed. Mogul Glob., Inc.)*, 293 B.R. 124, 127 (D. Del. 2003) (holding that Debtors have the "fundamental authority to assume or reject an executory contract" and that this authority should not be disturbed

"[a]bsent bad faith or gross negligence"); *Glenstone Lodge, Inc. v. Buckhead Am. Corp. (In re Buckhead Am. Corp.)*, 180 B.R. 83, 88 (D. Del. 1995) ("[T]he question whether a[n executory contract] should be rejected and if not on what terms it should be assumed is one of business judgment." (citation omitted)); *In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the "product of bad faith, whim, or caprice"); *cf. Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

13. As a result of the Debtors' efforts to rationalize their cost structure under their transformation business plan by recalibrating their distribution network, the Debtors no longer require the Distribution Center Leases. The Debtors submit that rejecting the Distribution Center Leases would allow the Debtors to reduce administrative costs, remove excess capacity and avoid unnecessary and ongoing risks associated with the Distribution Center Leases on a go-forward basis. Accordingly, the Debtors seek authorization to reject the Distribution Center Leases, effective as of the Distribution Center Lease Rejection Date.

B. **Abandonment of Certain Personal Property in Connection with the Rejected Distribution Center Leases is in the Best Interests of the Debtors, their Estates, and All Parties in Interest**

14. Section 554(a) of the Bankruptcy Code provides that a debtor in possession "[a]fter notice and a hearing . . . may abandon any property of the estate that . . . is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). When rejecting the Distribution Center Leases, it may be more economically sound for the Debtors to abandon certain personal property (*e.g.*, storage and pick modules, IT and network equipment, batteries and chargers, fixtures, furniture, and other equipment and machinery) than it would for the Debtors to incur costs relating to

retrieving and selling such assets outright, especially when considering the expenses ancillary to such sale efforts (*e.g.*, dismantling, interim storage, shipping and marketing).  Subject to applicable law, the Debtors would not abandon personal property unless, in the Debtors' reasonable business judgment, the sale of the asset would not generate enough net value for the Debtors' estates.

15. Prior to abandoning any property located in a Distribution Center Lease, the Debtors shall serve notice of such abandonment on the DIP Agents[3] and any and all third parties that may have interest in the abandoned property.  Such noticed parties shall have fourteen (14) days from the date that the abandonment notice is served to file an objection to the proposed abandonment.  Absent a timely objection, any and all of the Debtors' personal property and FF&E located on the leased premises on the Rejection Date of the applicable lease of nonresidential real property shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the Distribution Center Lease Rejection Date.  The landlords of the Distribution Center Leases may, in their sole discretion and without further notice or order of this Court, utilize and/or dispose of such property without further notice or liability to the Debtors or any consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition.

16. Bankruptcy Rule 6007 affords the Court discretion in limiting notice and the time for filing objections in connection with the abandonment of property.  The Debtors submit that strict compliance with Bankruptcy Rule 6007(a) in connection with the abandonment of assets located in the Distribution Center Leases (*i.e.*, requiring notice be given to all creditors) would be unnecessarily expensive and time consuming and would not provide any incremental benefit to the

---

[3] "DIP Agents" shall have the meaning ascribed in the *Motion of Debtors for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552 (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Post-Petition Financing and (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Providing Adequate Protection to Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [D.I. 20].

Debtors' estates or creditors. Furthermore, the Debtors submit that the proposed deadline to file an objection to the abandonment of assets should be sufficient and should not otherwise prejudice the rights of any party in interest. Accordingly, the Debtors request that the Court limit notice and objection deadlines under Bankruptcy Rule 6007 and otherwise approve the Abandonment Procedures.

### Debtors' Reservation of Rights

17. Nothing contained herein or any actions taken pursuant to such relief requested is intended or should be construed as, or deemed to constitute, an agreement or admission as to the amount, priority, character, or validity of any claim against the Debtors on any grounds (whether under bankruptcy law or otherwise), a commitment or requirement to pay any claim, a waiver or impairment of the Debtors' rights to dispute any claim on any grounds, or an admission as to the amount, priority, enforceability, perfection, or validity of any lien on, security interest in, or other encumbrance on property of the Debtors' estates. The Debtors expressly reserve their rights to contest any claims under applicable bankruptcy and non-bankruptcy law. Likewise, if the Court grants the relief sought herein, any payment or transfer made pursuant to the Court's order is not intended, and should not be construed, as an admission as to the amount, priority, character, or validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rules 4001(a)(3), 6004(h), and 6006(d)

18. To successfully implement the relief sought herein, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances. The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by (a) Bankruptcy Rule 4001(a)(3), which provides that "[a]n order granting a motion for relief from an automatic stay . . . is stayed until the expiration

of 14 days after the entry of the order, unless the court orders otherwise," Fed. R. Bankr. P. 4001(a)(3), (b) Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h), and (c) Bankruptcy Rule 6006(d), which provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under §365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d). Accordingly, the Debtors respectfully submit that ample cause exists to justify the (a) finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and (b) waiving of the 14-day stay imposed by Bankruptcy Rules 4001(a)(3), 6004(h) and 6006(d).

**Notice**

19. Notice of this Motion will be provided to the following parties: (a) the U.S. Trustee; (b) counsel for the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for states in which the Debtors conduct business; (g) Choate, Hall & Stewart LLP, as counsel to the ABL Agent; (h) Otterbourg P.C., as counsel to the Term Agent (i) each relevant non-Debtor counterparty (each, a "**Counterparty**"); and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

20. A copy of this Motion and any order entered in respect thereto will also be made available on the Debtors' case information website located at https://www.cases.ra.kroll.com/BigLots. Based on the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: October 9, 2024
      Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Daniel B. Butz*
Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
Sophie Rogers Churchill (No. 6905)
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
tmann@morrisnichols.com
srchurchill@morrisnichols.com
csawyer@morrisnichols.com

-and-

DAVIS POLK & WARDWELL LLP

Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
stephen.piraino@davispolk.com
ethan.stern@davispolk.com

*Proposed Counsel to the Debtors and Debtors in Possession*