Exhibit A

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In re:

BIG LOTS, INC., *et al.*,

Debtors.[1]

Chapter 11

Case No. 24-11967 (JKS)

(Jointly Administered)

**Re: Docket No. 13 & 459**

## SECOND INTERIM ORDER (I) ESTABLISHING PROCEDURES
## TO SELL CERTAIN LEASES, (II) APPROVING THE
## SALE OF CERTAIN LEASES AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**" or "**Big Lots**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for entry of interim and final orders pursuant to sections 105, 363, rules 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006 and 9014, and Rule 6004-1 of the Local Rules, (a) establishing procedures authorizing, but not directing, the Debtors to sell or transfer certain unexpired leases of non-residential real property (each, a "**Lease**") , pursuant to the procedures attached hereto as **Exhibit 1** (the "**Lease Sale Procedures**"), by which the Debtors, in consultation with the Consultation Parties, will solicit and select the highest or otherwise best offer(s) for the sales, assignments, or transfers (the "**Lease Sales**") of certain unexpired leases (the "**Lease Assets**"), including with any related ancillary agreement(s) thereto or through the sale of

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows:  Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

designation rights related thereto; (b) approving the form and manner of notice of each Lease Auction and Lease Sale Hearing , including the notice of proposed cure amounts, attached hereto as **Exhibit 2** (the "**Lease Auction, Cure Cost & Lease Sale Hearing Notice**"); (c) scheduling an auction or auctions to sell the Leases detailed in the Lease Sale Procedures (each, a "**Lease Auction**") and a hearing or hearings to approve one or more Sales (each, a "**Lease Sale Hearing**"); (d) approving the form and manner of the Post-Auction Notice attached hereto as **Exhibit 3**; and (e) granting related relief, all as more fully set forth in the Motion; and upon the Ramsden Declaration; and upon the Ramsden Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of the Chapter 11 Cases and related proceedings being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the Ramsden Declaration; and the Court having held a hearing to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and the Ramsden Declaration and at the Hearing establish just cause for the relief granted herein; and the Debtors having submitted that the relief requested in the Motion is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and the Court having determined that the relief requested in the Motion is necessary to

avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis to the extent set forth in this order (this "**Order**"). For the avoidance of doubt, the relief granted herein only applies to the Lease Auction to be held in October 2024 (the "**October Lease Auction**"), and any subsequent auctions and sales will be subject to further court order.

## I.      Important Dates and Deadlines.

2.      The following dates and deadlines are hereby approved on an interim basis in connection with the October Wave Lease Auction (and may be adjourned from time to time by the Debtors in consultation with the Consultation Parties):

a)   <u>**Lease Auction, Cure Cost & Lease Sale Hearing Notice**</u>: **Within one day after entry of this Second Interim Order,** is the time to file and serve the initial notice of leases being subject to the October Lease Auction and the various deadlines below.

b)   <u>**Bid Deadline**</u>: **October 15, at 5:00 p.m. (prevailing Eastern Time),** is the deadline by which all binding Bids must be actually received pursuant to the Lease Sale Procedures.

c)   <u>**Notice of Qualified Bid Deadline**</u>: **October 17, at 5:00 p.m. (prevailing Eastern Time)**, is the date and time by which the Debtors shall notify the Bidders for Lease Assets whether their Bids are Qualified Bids.

d)   <u>**Notice of Adequate Assurance Deadline**</u>: **October 17, at 5:00 p.m. (prevailing Eastern Time)**, is the date and time by which the Debtors shall notify applicable Counterparties of the Adequate Assurance terms of any Qualified Bids, including any submitted Bidder A&A Agreements.

e)   <u>**Lease Auction**</u>: **October 18, at 10:00 a.m. (prevailing Eastern Time)**, is the date and time by which the Lease Auction, if needed, will be held virtually via Zoom.  The Debtors shall send written notice of the date, time and virtual access information for

such Auction to the Qualified Bidders no later two business days before such Lease Auction, and file a notice of the date, time, and virtual access information for the Lease Auction with the Court no later than two business days before such Lease Auction and post such notice on the Debtors' Case Website: https://www.cases.ra.kroll.com/BigLots. The Debtors, in consultation with the Consultation Parties, may modify the date, time, and virtual venue of the Lease Auction by providing written notice to Qualified Bidders and filing a notice with the Court so long as such notice is no later than two days before such Lease Auction.

f) **File Post-Auction Notice**: **October 21 at 5:00 p.m. (prevailing Eastern Time)**, is the deadline by which the Debtors must file with the Court a list of all proposed final Lease Sales.

g) **Lease Sale Objection Deadline**: **October 25, at 5:00 p.m. (prevailing Eastern Time)**, is the deadline to object to any Lease Sale on any grounds, including on account of Cure Costs.

h) **Adequate Assurance Objection Deadline**: **October 25, at 5:00 p.m. (prevailing Eastern Time)**, is the deadline to object to the proposed the Successful Bidder's proposed form of adequate assurance of future performance with respect to Lease Assets.

i) **Lease Sale Hearing**: **October 31**, **at 12:00 p.m. (prevailing Eastern Time)**, as the date by which the Debtors shall seek approval from this Court to designate the Successful Bidders in connection with the October Lease Auction.

## II.   Lease Auction and Lease Sales Procedures.

3.      The Lease Sale Procedures, attached as **Exhibit 1** hereto, are incorporated herein and are hereby approved on an interim basis, and the Lease Sale Procedures shall govern the submission, receipt, and analysis of all bids related to any Lease Sales.  Any party desiring to submit a bid shall comply with the Lease Sale Procedures and this Order.  The Debtors, in consultation with the Consultation Parties, are authorized to take any and all actions necessary to implement the Lease Sale Procedures.

4.      If the Debtors do not receive a Qualified Bid as to a particular Lease Asset by the corresponding Bid Deadline, the corresponding Lease Auction shall be cancelled as to such asset. If the Debtors receive one or more Qualified Bids, the Debtors will conduct a Lease Auction in

accordance with the Lease Sale Procedures. For the avoidance of doubt, Lease Assets that did not receive a Qualified Bid by the Bid Deadline cannot be bid on during the Lease Auction.

5.      At the Lease Auction, each Qualified Bidder will be entitled, but will not be obligated, to submit overbids and, to the extent a Qualified Bidder has a valid and perfected lien on the Lease Assets included in its bid, will be entitled in any such overbids to credit bid all or a portion of the value of the secured portion of its claims within the meaning of section 363(k) of the Bankruptcy Code. For the avoidance of doubt, all parties' rights are reserved with respect to any credit bids, and nothing in this Order shall be a finding that any Qualified Bidder has a valid or perfected lien on the Lease assets.

6.      At or following the Lease Auction, the Debtors, in consultation with the Consultation Parties, may: (a) select, in their business judgment, pursuant to the Lease Sale Procedures, (i) the highest or otherwise best bid as the Successful Bidder and (ii) the second highest or otherwise second best bid as the Backup Bidder; and (b) reject any bid (regardless of whether such bid is a Qualified Bid) that, in the Debtors' business judgment, is (i) inadequate, insufficient, or not the highest or best bid, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or the Lease Sale Procedures, or (iii) contrary to, or otherwise not in the best interests of the Debtors' estates, affected stakeholders, or other parties in interest. For the avoidance of doubt, the Debtors are not required to name a Successful Bidder for any given Lease Asset or group thereof and may elect, in consultation with the Consultation Parties, to not sell such asset to the highest or otherwise best bidder.

**III.     Lease Auction, Cure Cost & Lease Sale Hearing Notice**

7.      The Lease Auction, Cure Cost & Lease Sale Hearing Notice, substantially in the form attached hereto as **Exhibit 2**, is approved on an interim basis.  As soon as practicable after

the entry of the Order, the Debtors shall cause a Lease Auction, Cure Cost & Lease Sale Hearing Notice to be filed and served upon the Notice Parties and Counterparties.  Each Lease Auction, Cure Cost & Lease Sale Hearing Notice will indicate that copies of this Motion and any future sale documents, if applicable, can be obtained on the Case Website.

8.      As soon as practicable after the entry of the Order, the Debtors shall post a publication version of each Lease Auction, Cure Cost & Lease Sale Hearing Notice onto the Case Website.  Such notice shall be deemed sufficient and proper notice of the Lease Sales with respect to known interested parties.

9.      The Lease Auction, Cure Cost & Lease Sale Hearing Notice will include, among other things, the: (i) the Lease or Leases subject to the particular Lease Auction, Cure Cost & Lease Sale Hearing Notice; (ii) the names and addresses of the Counterparties to such Leases; (iii) the proposed cure amount (the "**Cure Costs**"), if any for each such Lease;  and (iv) the proposed date, time, and place of the corresponding Lease Auction and Lease Sale Hearing and the deadline for filing any Lease Sale Objection or Adequate Assurance Objection (each as defined and described below), and will therefore, comply with Bankruptcy Rule 2002(c).

10.      The inclusion of an Assumed Lease on any Lease Auction, Cure Cost & Lease Sale Hearing Notice will not: (a) obligate the Debtors to sell or assume any Assumed Lease listed thereon or the Successful Bidder to take assignment of such Assumed Lease; or (b) constitute any admission or agreement of the Debtors that such Assumed Lease is an executory contract.  Only those Assumed Leases that are included on a schedule of assumed and acquired leases attached to a final assignment and assumption agreement with a Successful Bidder (including amendments or modifications to such schedules in accordance with such assignment and assumption agreement)

will be assumed and assigned to the applicable Successful Bidder.  No Assumed Lease shall be assumed absent closing on the assignment thereof to the applicable Successful Bidder.

11.     Parties and Counterparties objecting to approval of a proposed Lease Sale or to the Cure Costs listed in the Lease Auction, Cure Cost & Lease Sale Hearing Notice must file a written objection (each, a "**Lease Sale Objection**") so that such Lease Sale Objection is filed with the Court and served so as to be **actually received** by **October  25, at 5:00 p.m. (prevailing Eastern Time)** and serve such Sale Objection on: (a) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn.: Brian M. Resnick, Esq., Adam L. Shpeen, Esq.,  Stephen D. Piraino, Esq., and Ethan Stern, Esq. (notice.biglots@davispolk.com); and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq., Andrew R. Remming, Esq., Daniel B. Butz, Esq., Tamara K. Mann, Esq., and Casey B. Sawyer, Esq. (biglots.mnat@morrisnichols.com), proposed co-counsel to the Debtors; (b) (y) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola, Esq. (jventola@choate.com), Jonathan D. Marshall, Esq. (jmarshall@choate.com), and Jacob S. Lang, Esq. (jslang@choate.com) and (z) Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn: Regina Stango Kelbon (regina.kelbon@blankrome.com) and Stanley Tarr (stanley.tarr@blankrome.com); (c) (y) Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Chad B. Simon, Esq. (CSimon@otterbourg.com) and (z) Richards Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn: John Knight, Esq. (knight@rlf.com); (d) the Office of the United States Trustee for the District of Delaware, Attn: Linda Casey; and (e) (y) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attn: Justin R. Alberto, Esq. (jalberto@coleschotz.com), Stacy L. Newman, Esq. (snewman@coleschotz.com) and  Sarah  Carnes  Esq.  (scarnes@colescholtz.com)  and  (z)

McDermott Will & Emery, One Vanderbilt Avenue, New York, NY, 10017, Attn: Darren Azman (dazman@mwe.com) and Kristin K. Going (kgoing@mwe.com), proposed co-counsel to the official committee appointed in these Chapter 11 Cases (collectively, the "**Objection Notice Parties**").

12.     If the Counterparty to the proposed Assumed Lease does not file and serve a Lease Sale Objection in a manner that is consistent with the requirements set forth herein, and absent a subsequent order of the Court in connection with such objection establishing an alternative Cure Cost, (a) the Cure Costs, if any, set forth in Lease Auction, Cure Cost & Lease Sale Hearing Notice shall be controlling, notwithstanding anything to the contrary in any Assumed Lease or any other document, and (b) the Counterparty to the Assumed Lease will be deemed to have consented to the assumption and assignment of the Assumed Lease and the Cure Costs, if any, and will be forever barred from asserting any other claims related to such Assumed Lease against the Debtors or the Successful Bidder, or the property of any of them.

## IV.     Notice of Qualified Bid(s)

13.     Within two business day after the Bid Deadline, the Debtors shall notify (email being sufficient) the Counterparties of any Lease Asset receiving a Qualified Bid of the terms of proposed Adequate Assurance contained in such Qualified Bid(s).

## V.     Notice of Successful Bidder(s)

14.     As soon as reasonably practicable after the conclusion of any Lease Auction, the Debtors will file on the docket a notice (the "**Post-Auction Notice**") identifying (a) the proposed assignee(s) of such Lease(s) (the "**Assignee**" or "**Successful Bidder**"); (b) the effective date of the assumption for each such Lease (the "**Assumption Date**"); and (c) a description of any material

amendments to the Lease made outside of the ordinary course of business with the written consent of the Lease counterparty, substantially in the form attached hereto as **Exhibit 3**.

## VI.    Adequate Assurance Objections

15.    Counterparties objecting to a Successful Bidder's proposed form of adequate assurance of future performance must file a written objection (each, an "**Adequate Assurance Objection**") so that such Adequate Assurance Objection is filed with the Court and **actually received** by **October 25, at 5:00 p.m. (prevailing Eastern Time)** and serve such Adequate Assurance Objection on the Objection Notice Parties (as defined herein).

16.    If no objection to the proposed form of adequate assurance of future performance is timely filed, each Lease shall be assumed as of the Assumption Date set forth in the applicable Lease Auction, Cure Cost & Lease Sale Hearing Notice or Post-Sale Notice or such other date as the Debtors and the counterparty or counterparties to such Lease(s) agree; *provided*, *however* that the Assumption Date for a lease of non-residential real property shall not occur earlier than the date the Debtors filed and served the applicable Lease Auction, Cure Cost & Lease Sale Hearing Notice.

17.    For the avoidance of doubt, all provisions of the applicable assigned Lease, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such Lease by the Debtors to the Assignee.

18.    Notwithstanding anything herein or in the Lease Sale Procedures to the contrary, if any Consultation Party bids on any Lease Assets, such Consultation Party shall no longer have any consultation rights with respect to such Lease Assets.

## VII.    Procedures for Unsold Property

9

19.     If the Debtors receive no bids on certain properties prior to the close of the Lease Auction or the highest or otherwise best bid at such Lease Auction will not (in the Debtors' business judgment and in consultation with the Consultation Parties) maximize the value of the Lease Asset(s) being sold, the Debtors in their sole discretion (and in consultation with the Consultation Parties), may (i) pursuant to a separate motion, sell such Lease Assets through private sale, (ii) subject to the terms of the Final Order, include such Lease Assets on a future auction, if any, or (iii) pursuant to a separate motion (which shall include any procedure for rejection approved by the Court), reject the leases associated with the Lease Assets.

**VIII.   Miscellaneous**

20.     The form of *Notice of Abandonment, Utilization and Disposal of Personal Property on Certain of the Debtors' Leased Premises Sold Pursuant to the October Wave Lease Sales* (the "**Abandonment Notice**") attached hereto as **Exhibit 4** to this Order is hereby approved.  Pursuant to the Abandonment Notice, the Debtors are authorized to seek to abandon all personal property and furniture, fixtures and equipment ("FF&E") remaining in the stores subject to the sold Leases at the Lease Sale Hearing. Parties seeking to object to the Debtors' proposed abandonment of the Abandoned Property must file with the Court and serve a written objection in accordance with the Abandonment Notice and within the time frame set forth therein.

21.     The form of Notice of Potential Utilization and Disposal of Personal Property on Certain of the Debtors' Leased Premises Sold Pursuant to the October Wave Lease Sales (the "**Disposal Notice**") attached hereto as **Exhibit 5** to this Order is hereby approved.  Pursuant to the Disposal Notice, the Debtors are authorized to seek to allow each Buyer to utilize and/or dispose of all personal property and FF&E remaining in the stores subject to the sold Leases at the Lease Sale Hearing.  Parties seeking to object to the Buyer's proposed usage and/or disposal of the such

property must file with the Court and serve a written objection in accordance with the Disposal Notice and within the time frame set forth therein.

22.     For the avoidance of doubt, any fees or commissions payable to A&G Realty Partners, LLC will be subject to further order of the Court.

23.     The Debtors are authorized to establish an escrow account (the "**Escrow Account**") to accept deposits from Qualified Bidders and may pay any reasonable fees related to such account. Any deposits made by Qualified Bidders into the Escrow Account shall not be property of the Debtors' estates.

24.     Notwithstanding anything to the contrary contained in the Motion, this Order, or the Lease Sale Procedures, any Lease Sales effected pursuant hereto or thereto, and any relief or authorization granted herein shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of any interim and final orders entered by the Court in respect of the *Motion of Debtors for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552 (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Post-Petition Financing and (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Providing Adequate Protection to Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 20] (the "**DIP Motion**" and such orders in respect thereto, the "**DIP Orders**") or the DIP Credit Agreements (as defined in the DIP Motion) and any rights, terms, or conditions set forth therein. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

25.     Notwithstanding anything to the contrary in this Order, the Lease Sale Procedures, any notice pursuant thereto, or agreements or side letters into pursuant to or related thereto, none

of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of the applicable Buyer and applicable insurer and/or third-party administrator.

26.     The requirements set forth in Bankruptcy Rule 6003 are satisfied by the contents of the Motion or otherwise deemed waived.

27.     The Debtors, in consultation with the Consultation Parties, are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

28.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

29.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

30.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Dated: October 9th, 2024**
**Wilmington, Delaware**

**J. KATE STICKLES**
**UNITED STATES BANKRUPTCY JUDGE**

**Exhibit 1 to the Interim Order**

**Proposed Lease Sale Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 ([●]) |
| | (Jointly Administered) |
| Debtors.[1] | **Re: Docket No. [●]** |

## LEASE SALE PROCEDURES FOR THE SALE OF CERTAIN LEASE ASSETS

On October 9, 2024, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered the *Interim Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. [●]] (the "**Lease Sale Procedures Order**"),[2] by which the Court approved the following procedures on an interim basis. These Lease Sale Procedures set forth the process by which the Debtors are authorized to conduct auctions (each, a "**Lease Auction**") for the sale or transfer (the "**Lease Sales**") of certain unexpired leases (collectively, the "**Lease Assets**"), including with any ancillary agreement(s) thereto or through the sale of designation rights related thereto.

### A.    Lease Assets.

The Debtors are seeking to sell all of their Lease Assets, or any portion thereof, pursuant to these Lease Sale Procedures. These Lease Assets include certain unexpired non-residential leases, free and clear of all liens, claims, interests, or other encumbrances.

### B.    Solicitation Process; Distribution of Lease Sale Procedures.

For any sale of Lease Assets in these chapter 11 cases (these "**Chapter 11 Cases**") subject to a Lease Sale Procedure, the above-captioned debtors and debtors in possession (the "**Debtors**"),

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Lease Sale Procedures Order or the *Motion of Debtors for Entry of Interim and Final Orders (I) Establishing Procedures To Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (iii) Granting Related Relief* [Docket No. [●]], as applicable.

A&G Realty Partners, LLC ("**A&G**"), or any such other agent of the Debtors shall, at the Debtors' direction, distribute these Lease Sale Procedures to any potential interested bidders. The Debtors, in consultation with the Consultation Parties,[3] may elect to exclude any Lease Asset from these Lease Sale Procedures and sell such Lease Asset at either a private or public sale, subject to Bankruptcy Court approval of any alternative sale method. Furthermore, the Debtors, in consultation with the Consultation Parties, may determine whether to proceed with a sale of any Lease Asset.

**C.**    **Eligibility of Bidders to Participate in a Lease Auction.**

In order to be eligible to bid for the sale of any Lease Asset in these Chapter 11 Cases subject to a Lease Sale Procedure or otherwise participate in a Lease Auction (as defined below), each bidder must be determined by the Debtors, in consultation with the Consultation Parties, to be a Qualified Bidder (as defined below).

**D.**    **Qualification of Bidders.**

Each Qualified Bid (as defined below) must be made by a Qualified Bidder. In order to be considered for status as a "Qualified Bidder" and to have a Qualified Bid, a bidder must:

i.    Deliver to A&G Realty Partners, LLC, c/o Mike Matlat (mike@agrep.com) and Todd Eyler (todd@agrep.com); Tel: (631) 465-9508; with copy to the Debtors' counsel, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn.: Brian M. Resnick, Esq., Adam L. Shpeen, Esq., Stephen D. Piraino, Esq., and Ethan Stern, Esq. (notice.biglots@davispolk.com); so as to be received before **5:00 p.m. (prevailing Eastern Time) on October 15, 2024** (the "**Bid Deadline**"), a written offer to purchase the Lease Assets at issue (a "**Qualified Bid**") that:

    a.    Consists of an executed form of the assignment and assumption agreement for sale that may not deviate substantially from the terms of the form assignment and assumption agreement, substantially in the form attached hereto as **Exhibit A**, marked to show any proposed revisions, which are acceptable to the Debtors in consultation with the Consultation Parties, that provides for the purchase of the Lease Asset(s) being sold (such bidder's executed assignment and assumption agreement, the "**Bidder A&A Agreement**"); *provided* that any landlord bidding on a Lease Asset related to a property which such landlord owns shall instead provide with its Qualified Bid an executed form of the lease termination agreement that may not deviate substantially from the terms of the form lease termination agreement,

---

[3] "**Consultation Parties**" shall mean (a) Choate, Hall & Stewart LLP, as counsel to the ABL Agent; **(b)** Otterbourg P.C., as counsel to the Term Agent and (c) any official committee appointed in the Chapter 11 Cases (the "Committee"), including in each case the legal and financial advisors thereto, as applicable.

substantially in the form attached hereto as **Exhibit B**, marked to show any proposed revisions, which are acceptable to the Debtors in consultation with the Consultation Parties. Any bidder may propose to purchase more than one Lease Asset. The assignment and assumption agreement shall be marked to reflect differences as to the Lease Assets proposed to be purchased;

b.  Consists of a completed bidder registration form, substantially in the form attached hereto as **Exhibit C**, which must detail which of the Lease Assets up for sale the Qualified Bidder proposes to be assumed and assigned and provides for the payment of all Cure Costs related to such Lease Assets by the Qualified Bidder. A single bidder or group of bidders may purchase all or a portion of the Lease Assets. If a bidder or group of bidders submits an offer for a combination of Lease Assets, such bidder or group of bidders must indicate (i) if it would be willing to purchase any of such assets if not sold as a group and, if so, (ii) a schedule indicating the Bid as to any individual or sub-group of assets that such bidder would purchase. The Debtors, in consultation with the Consultation Parties, reserve the right to determine whether to auction any assets as part of a group or individually up through and including at an Auction or to conduct an Auction of any Lease Asset both individually and as part of a group in order to determine which option maximizes value of the assets;

c.  Contains no contingencies to the validity, effectiveness, and/or binding nature of the bid, including without limitation, contingencies for due diligence and inspection (other than as set forth in **Exhibit A**) or financing of any kind;

d.  Contains documentation acceptable to the Debtors, in consultation with the Consultation Parties, evidencing that the bidder has financial resources sufficient to close the transaction within fourteen (14) days after the Lease Auction which evidence may include, without limitation, evidence of cash on hand, a binding financing commitment from an established and financially sound financial

institution or investment fund, and the identity of contact persons at the entity issuing such commitment letter;

    e. Demonstrates, to the Debtors' satisfaction, in consultation with the Consultation Parties, that the bidder has the legal capacity to consummate the transaction it is proposing; and

    f. Includes a statement from the bidder that: (i) it is prepared to enter into and consummate the transactions contemplated in the Bidder A&A Agreement immediately upon entry by the Bankruptcy Court of an order approving the sale of Lease Assets to such bidder; and (ii) the Qualified Bid, if determined to be a Successful Bid (defined below) or Backup Bid (defined below), will then be irrevocable for a period of thirty (30) days after the conclusion of the Lease Auction;

ii. Contemporaneous with the submission of a Bid, tender an earnest money deposit of ten percent (10.0%) of the proposed purchase price for the sale of the Lease Assets (the "**Qualified Bidder Deposit**") by cashier's or certified check or wire transfer of immediately available funds, which deposit shall be held in an interest bearing escrow account in accordance with the terms of the Bidder A&A Agreement.[4]  A Qualified Bidder Deposit will be refunded only if (a) the bid corresponding to the Qualified Bidding Deposit is rejected; or (b) the bid corresponding with the Qualified Bidder Deposit is not approved by the Bankruptcy Court.  The Debtors reserve the right to hold each Qualified Bidder Deposit until five (5) days after the closing of a Lease Sale of the applicable Lease Assets, but the Debtors may refund the full Qualified Bid Deposit any time after the corresponding Lease Sale Hearing.  The provisions of this subparagraph D(ii) shall apply to Qualified Bidders and controls notwithstanding any conflicting provisions in the Bidder A&A Agreement.

    a. With respect to a bid for any Lease Asset submitted by the landlord counterparty (or its affiliate) to that real property lease, the landlord may deduct from its Qualified Bidder Deposit the amount of any undisputed cure amount for the applicable Lease Asset.

iii. By submitting a Bid, the Qualified Bidder agrees that, should such Qualified Bidder purchase the corresponding Lease Assets, such Qualified Bidder will pay all rent costs

---

[4] For the avoidance of doubt, these funds are not property of the Debtors' estates.

associated with such Lease Assets for the calendar month of closing on a pro rata basis from the date of closing.

iv.   Qualified Bidders must provide adequate assurance of future performance (which the Qualified Bidder agrees may be disseminated to affected landlords if such Qualified Bidders' Bid is determined to be a Qualified Bid), which may include, without limitation, information regarding the Qualified Bidders' financial condition such as tax returns, current financial statements, or bank accounts; provided that any landlord may submit Qualified Bids for Lease Assets they own without providing adequate assurance of future performance.

**E.    Rejection of "Qualified Bid" Status for Non-Conforming Bids.**

The determination as to which bids qualify shall be determined by the Debtors, in consultation with the Consultation Parties.  The Debtors, in consultation with the Consultation Parties, shall have the right to reject bids as non-conforming bids; *provided*, *however*, the Debtors shall have the right to negotiate with any bidder with respect to clarification of any bid. Notwithstanding anything to the contrary herein, any bid submitted by any of the Agents, or their respective designees shall be a Qualified Bid.

**F.    Due Diligence.**

Any Qualified Bidder may request diligence from the Debtors, and the Debtors, in consultation with the Consultation Parties, may grant or deny the request.  The Debtors may require such Qualified Bidder to execute a non-disclosure agreement prior to providing diligence to such Qualified Bidder.  All due diligence shall be completed prior to the corresponding Bid Deadline.

**G.    Bid Deadline.**

All Qualified Bids must be submitted to A&G, with copy to Debtors' counsel in accordance with paragraph D(i), so as to be actually received not later than **October 15, 2024, at 5:00 p.m. (prevailing Eastern Time)**.

**H.    Terms of Lease Auction(s).**

In the event that one or more Qualified Bids are submitted in accordance with these Lease Sale Procedures f, the Debtors will conduct an auction sale of the Lease Assets (a "**Lease Auction**") on the following terms:

i.   **Time, Date and Virtual Venue of Auction; Adjournment of Auction; Appearance of Qualified Bidders at Auction.** Each Auction will be held virtually. An Auction will be conducted on **October 18, 2024, at 10:00 a.m. (prevailing Eastern Time)**. The Debtors will send written notice of the date, time, and virtual

venue of each Lease Auction to the Qualified Bidders no later than two business days before such Lease Auction, and file a notice of the date, time, and virtual venue of each Lease Auction with the Court no later than two business days before such Lease Auction and post such notice on the Debtors' Case Website: https://www.cases.ra.kroll.com/BigLots. The Debtors, in consultation with the Consultation Parties, may modify the date, time, and virtual venue of each Lease Auction by providing written notice to Qualified Bidders and filing a notice with the Court so long as such notice is no later than two days before the corresponding Lease Auction.

ii. **Permitted Attendees at Lease Auction.** The Lease Auction(s) shall be conducted openly, and all parties in interest will be permitted to attend; *provided that*, only Qualified Bidders shall be entitled to bid at a Lease Auction.

iii. **Lease Auction Bid Submission Procedures.** Lease Auction bidding shall be subject to the following procedures:

    a. For a Qualified Bid to be considered and in order for a Qualified Bidder to further bid at a Lease Auction, Qualified Bidders must appear in person at the Lease Auction, or through a duly authorized representative, unless alternative arrangements are agreed upon in advance by the Debtors.

    b. Only Qualified Bidders shall be entitled to make any subsequent bids at a Lease Auction.

    c. Bidding will commence with the announcement of the highest and best Qualified Bid with respect to each Lease Asset or group thereof, which shall be determined by the Debtors in their business judgment in consultation with the Consultation Parties. Any Qualified Bidder may then submit successive bids in minimum increments, which will be determined by the Debtors, in consultation with the Consultation Parties, at the corresponding Lease Auction depending on the total dollar value of the Lease Assets being sold (the "**Minimum Overbid Amount**"). The Minimum Overbid Amount may be different with respect to each asset or group of assets being auctioned.

6

d.  If one or more Qualified Bids are received by the Debtors, each such Qualified Bidder shall have the right to improve its respective bid at the corresponding Lease Auction.

e.  Each successive bid submitted by any bidder at any Lease Auction must contain an actual cash purchase price that exceeds the then existing highest bid by at least the Minimum Overbid Amount.

f.  At commencement of the Lease Auction, the Debtors, in consultation with the Consultation Parties, may announce procedural and related rules governing such Lease Auction, including time periods available to all Qualified Bidders to submit successive bid(s) in an amount equivalent to at least the Minimum Overbid Amount.

iv.  **No Collusion.** Each Qualified Bidder participating at the Lease Auction will be required to confirm on the record at the Lease Auction that (i) it has not engaged in any collusion with respect to the bidding and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

v.  **Selection of Successful Bid.** The Lease Auction shall continue until there is only one bid remaining to purchase a certain portion or all of the Lease Assets that the Debtors determine in consultation with the Consultation Parties, subject to Bankruptcy Court approval, is the highest and/or best Qualified Bid (such bid, the "**Successful Bid**" and such bidder, the "**Successful Bidder**"). For the avoidance of doubt, if there are any Qualified Bids for different portions of the Lease Assets, there may be multiple Successful Bidders. In making this decision, the Debtors, in consultation with the Consultation Parties, shall consider the amount of the purchase price, the form of consideration being offered, the contents of the Bidder A&A Agreement, the likelihood of such Qualified Bidder's ability to close the transaction, the timing thereof, and the net benefit to the Debtors' estates. The Debtors, in consultation with the Consultation Parties, reserve the right to select the Successful Bid, even if it is not the highest bid. The Debtors, in consultation with the Consultation Parties, reserve the right to not select any Successful Bid or Successful Bidder with respect to any Lease Asset or group thereof. The Successful Bidder shall have such rights and responsibilities of the purchaser, as set forth in the Bidder A&A Agreement. Prior to the corresponding Lease Sale Hearing, the Successful Bidder shall complete and execute a final and revised Bidder A&A

7

Agreement, as necessary to conform to the terms of each Lease Auction, and all other agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made (such documents collectively, the "**Successful Bidder Sale Documents**"). The Successful Bid shall be irrevocable for a period of thirty (30) days after the conclusion of the corresponding Lease Auction.

vi.   **Selection of Backup Bidder.** The bidder of the second highest and best bid for a portion or all of the Lease Assets, as determined by the Debtors in consultation with the Consultation Parties, may be deemed a backup bidder (such bidder the "**Backup Bidder**" and such bid the "**Backup Bid**"). For the avoidance of doubt, if there are Qualifying Bids for different portions of the Lease Assets, there may be multiple Backup Bidders. If the Debtors, in consultation with the Consultation Parties, so designate a bidder as a Backup Bidder, such Backup Bidder shall be required to complete and execute an assignment and assumption agreement in form and substance reasonably acceptable to the Debtors, in consultation with the Consultation Parties, memorializing, among other things, the amount of the Backup Bid (the "**Backup Bidder A&A Agreement**"). Upon the failure of the Successful Bidder to timely consummate its purchase of the Lease Assets, pursuant to the terms of the Successful Bidder Sale Documents, the Debtors, in consultation with the Consultation Parties, shall be empowered to effect the sale pursuant to the Backup Bidder A&A Agreement, without further order from the Bankruptcy Court. The Backup Bidder A&A Agreement shall be irrevocable for a period of thirty (30) days after the conclusion of the corresponding Lease Auction.

vii.   **Irrevocability of Bids; Rejection of Bids. A Qualified Bid must be irrevocable unless and until the Debtors accept a higher Bid and such Qualified Bidder is not selected as the Backup Bidder.** Unless determined by the Debtors, in consultation with the Consultation Parties, to be the Successful Bid or Backup Bid, all other Qualified Bids and all other successive bids at a Lease Auction shall be deemed rejected at the conclusion of such Lease Auction.

**I.   <u>Lease Sale Hearing.</u>**

The Bankruptcy Court shall hold a Lease Sale Hearing (i) on **<u>October 31, 2024, at 12:00 p.m. (prevailing Eastern Time)</u>**, to approve the Lease Sale of the Lease Assets, if any. The Lease Sale Hearing will be held at the United States Bankruptcy Court for the District of Delaware. At the Lease Sale Hearing, the Debtors will seek entry of an order approving and authorizing the proposed sale to the Successful Bidder(s), if any. The Debtors shall also notify the Bankruptcy

Court of the Backup Bidder(s), if any.  The Debtors, in consultation with the Consultation Parties, shall ascertain whether the Successful Bidder(s) and the Backup Bidder(s) are insiders of one or more of the Debtors, whether each applicable Lease Sale represents an arm's-length transaction between the parties, made without fraud or collusion, and whether there has been any attempt by either party to take any unfair advantage of the other such that a Successful Bidder or Backup Bidder may be deem to be purchasing the Lease Assets in good faith pursuant to 11 U.S.C. § 363(m).  At the Lease Sale Hearing, the Debtors shall make a record of these findings and any order approving the Lease Sales shall include such findings in order to approve the sale to the Successful Bidder(s) or Backup Bidder(s), pursuant to 11 U.S.C. § 363(m).  The Lease Sale Hearing may be adjourned or rescheduled without notice other than by announcement of the adjourned date at such Lease Sale Hearing or the Debtors', in consultation with the Consultation Parties, filing notice of a rescheduled Lease Sale Hearing with the Court.

**J.      Closing.**

The closing of the sale of the Lease Assets will occur no later than fourteen (14) days after the Lease Auction, unless otherwise extended by the Debtors, in consultation with the Consultation Parties, in accordance with the terms of the Successful Bidder Sale Documents or the assignment and assumption agreement of the entity otherwise authorized by the Bankruptcy Court to purchase the Lease Assets, as applicable. Upon the closing, the proceeds of the Lease Sales shall be payable in accordance with the DIP Orders and the Approved Budget (as defined in the DIP Orders).

**K.      Disclosures.**

Qualified Bidders shall disclose to the Debtors all communications with other Qualified Bidders following the submission of a Qualified Bid until the sale of the Lease Assets is consummated.

**L.      Commissions.**

The Debtors shall be under no obligation to pay commission to any agent or broker, with the exception of A&G.  All commissions, fees, or expenses for agents, other than A&G, may be paid by bidders at such bidder's discretion.  In no case shall any commissions, fees, or expenses be deducted from the proceeds of the sale of the Lease Assets or an agreed Successful Bid.

**M.      No Representation; Qualified Bidder's Duty to Review.**

The Debtors are not making and have not at any time made any warranties or representations of any kind or character, express or implied, with respect to the Lease Assets, including, but not limited to, any warranties or representations as to habitability, merchantability, fitness for a particular purpose, title, zoning, tax consequences, latent or patent physical or environmental condition, utilities, operating history or projections, valuation, governmental approvals, the compliance of the Lease Assets with governmental laws (including, without limitation, accessibility for handicapped persons), the truth, accuracy or completeness of any documents related to the Lease Assets, or any other information provided by or on behalf of the

#99189957v1
#99182420v8

Debtors to a bidder, or any other matter or thing regarding the Lease Assets. All bidders must acknowledge and agree that upon closing the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the Lease Assets "AS-IS, WHERE IS, WITH ALL FAULTS," except to the extent expressly provided otherwise in the Bankruptcy Court's order approving the Lease Sale. All bidders must agree that they have not relied on and will not rely on, and the Debtors are not liable for or bound by, any express or implied warranties, guaranties, statements, representations, or information pertaining to the Lease Assets or relating thereto (including specifically, without limitation, information regarding the Lease Assets distributed with respect to such real estate) made or furnished by the Debtors or any real estate broker or agent representing or purporting to represent the Debtors, to whomever made or given, directly or indirectly, orally or in writing, unless specifically set forth in the Bankruptcy Court's order approving the Lease Sale.

**N.**     **Reservation of Rights.**

The Debtors, in consultation with the Consultation Parties, reserve their rights to modify these Lease Sale Procedures in their business judgment in any manner that will best promote the goals of these Lease Sale Procedures, or impose, at or prior to any Lease Auction, additional customary terms and conditions on Lease Sales, including, without limitation: (a) extending the deadlines set forth in these Lease Sale Procedures; (b) adjourning such Lease Auction at the corresponding Lease Sale Hearing; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting such Lease Auction; (d) canceling such Lease Auction; and (e) rejecting any or all Bids or Qualified Bids. Nothing in these Lease Sale Procedures shall abrogate the fiduciary duties of the Debtors.

**O.**     **Consent to Jurisdiction.**

All Qualified Bidders at each Lease Auction shall be deemed (i) to have consented to the jurisdiction of the Court and (ii) to have waived any right to a jury trial in connection with any disputes relating to such Lease Auction and the construction and enforcement of these Lease Sale Procedures.

**P.**     **Return of Qualified Bidder Deposit.**

The Qualified Bidder Deposit of a Successful Bidder shall be applied to the purchase price of such transaction at closing. The Qualified Bidder Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on the date that is five business days after the close of the Sales, or as soon as is reasonably practicable thereafter. Upon the return of the Deposits, the applicable Qualified Bidders shall receive any and all interest that will have accrued thereon.

If a Successful Bidder (or Backup Bidder, as applicable) fails to consummate a proposed transaction because of a breach of, or default or failure to perform under, any Successful Bidder Sale Documents or the terms of these Sales Procedures by such Successful Bidder (or Backup

10

Bidder, as applicable), the Qualified Bidder Deposit shall be released to the Debtors and the Debtors shall not have any obligation to return the Qualified Bidder Deposit deposited by such Successful Bidder (or Backup Bidder, as applicable).  Such Qualified Bidder Deposit released to the Debtors may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and their estates, and the Debtors shall be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

**Q.**    **Fiduciary Out.**

Nothing in these Lease Sale Procedures shall require the Debtors' management or board of directors to take any action, or to refrain from taking any action, with respect to these Lease Sale Procedures, to the extent the Debtors' management or board of directors determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

11

## EXHIBIT A TO THE LEASE SALE PROCEDURES

### ASSUMPTION AND ASSIGNMENT AGREEMENT

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSUMPTION AND ASSIGNMENT AGREEMENT (the "**Agreement**"), dated as of [__], 2024, is by and between _____ ("**Assignor**") and _____ ("**Assignee**" and together with Assignor, collectively, the "**Parties**" and each a "**Party**"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), jointly administered under case *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "**Chapter 11 Cases**"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto (the "**Assigned Asset(s)**" or the "**Lease(s)**") with respect to the premises set forth on Schedule A (the "**Premises**"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "**Lease Sale Procedures**") subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.    Assignment and Assumption.

(a)    Effective as of the date the Bankruptcy Court enters an order of record pursuant to 11 U.S.C. 363(b) and 365 approving the assumption and assignment contemplated by this Agreement (the "Closing Date"), and upon payment of the Purchase Price as set forth below, Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s) free and clear (subject to this Agreements express terms regarding the assumption/cure of certain liabilities) of leasehold mortgages (if any), subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, mechanics liens, bills, interests, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances (collectively, the "**Interests**").

(b)    No later than the Closing Date, Assignor shall surrender the Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written

#99189957v1
#99182420v8

confirmation that Assignee is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Assignee.

(c)      Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset(s) which come due after the date hereof. Assignor shall be barred from asserting any additional cure costs or other claims, with respect to the Assigned Asset(s) that came due on or before the Closing Date.

2.      <u>Payment of Purchase Price</u>. Assignee shall, on the Closing Date or the immediately following business day if the Court Order is entered of record after 3:00PM ET, deliver the purchase price for the Assigned Asset(s) in the amount of _____ (net of any previously paid deposit amounts) (the "**Purchase Price**") in immediately available funds wired to the account specified by Assignor. The Purchase Price is inclusive of any cure amounts that may be owed as a result of the assumption of any lease(s) in connection with this Agreement.

3.      <u>No Further Liability of Assignor</u>. Except as provided for herein, from and after the date hereof, Assignor shall have no further obligations and duties with respect to the Assigned Asset(s).

4.      <u>Further Assurances</u>. At any time and from time to time after the Closing Date, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

5.      <u>Representations</u>. Assignor represents and warrants to Assignee that it has fully complied with any requests from Assignee to provide access to all known leases and amendments documents relating to the Assigned Asset(s).

6.      <u>"As Is Where Is" Transaction</u>. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s) except as otherwise expressly provided herein. Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s). Assignee further acknowledges that the Assignee has conducted (or has had an opportunity to conduct) an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

7.      <u>Abandonment</u>. Subject to Court approval, upon the Closing Date, any personal property remaining at the premises is deemed abandoned and Assignee is free to dispose of or

#99189957v1
#99182420v8

utilize any personal property without further notice or liability to the Debtor or any consenting third parties.

8. <u>Compliance With Law</u>. Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

9. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

10. <u>Jurisdiction.</u> The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

11. <u>No Reliance</u>. Except as specifically set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

12. <u>Construction</u>. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

13. <u>Execution in Counterparts</u>. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

14. <u>Miscellaneous</u>. Assignor acknowledges and agrees that Assignee shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Assignor with respect to this Agreement unless otherwise agreed by the Parties.

15. <u>Intended Use & Going Dark</u>. Assignee intends to use the Premises to _____. In order to facilitate such usage, Assignee may need to delay reestablishing retail operations for a period of time not to exceed _____ (the "**Going Dark Period**").

#99189957v1
#99182420v8

*[Signatures appear on following page]*

4

#99189957v1
#99182420v8

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**[COMPANY]**

By_____
Name_____
Its_____


**ASSIGNEE:**
**[ASSIGNEE]**

By_____
Name_____
Its_____

## Schedule A to the Assumption and Assignment Agreement

**Description of Lease Asset(s)**

**EXHIBIT B TO THE LEASE SALE PROCEDURES**

**LEASE TERMINATION AGREEMENT**

#99189957v1
#99182420v8

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "**Agreement**") is made as of this _____ day of _____, 2024 between _____ "**Landlord**") and _____ ("**Tenant**") or "**Debtor**").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated _____(the "**Lease**"), covering certain premises located at _____ (the "**Premises**"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

WHEREAS, the Parties desire to enter into this Agreement, for among things, Landlord is restored to possession of the Premises as of the Termination Date (as defined below), the parties release the other and Landlord is able to dispose of any remaining equipment at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement (the "**Bankruptcy Court Order**"):

## AGREEMENT

1.    <u>Recitals</u>.  The Recitals are incorporated herein as if set forth at length.

2.    <u>Lease Termination</u>.    Subject to the Bankruptcy Court Order, the Lease is terminated effective [____], 2024 (the "**Termination Date**"). From and after the Termination Date, Tenant shall have no right, title or interest in or to the Premises pursuant to the Lease. Subject to the Bankruptcy Court Order, no later than the Termination Date, Tenant shall surrender the Premises to Landlord, deliver possession thereof to Landlord and deliver all access codes and keys (or written confirmation that Landlord is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Landlord. As of the date of execution of this Agreement, Tenant acknowledges and agrees that, from and after the date hereof, (a) Landlord shall have the right to immediately market the Premises for lease, and (b) Tenant shall not market the Lease and shall remove the Lease from any further sale process, and shall instruct its representatives, advisors and agents (including A&G Realty) accordingly.

3.      Consideration.  Landlord shall pay to Tenant $[•] (minus any deposits previously paid to Tenant) and waive all unpaid prepetition and post-petition amounts owed by Tenant to Landlord.

4.      Landlord Release of Tenant. For valuable consideration, and the mutual covenants and agreements contained herein, effective from and after the Termination Date, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

5.      Tenant Release of Landlord. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, avoidance actions under chapter 5 of the Bankruptcy Code, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

6.      As further consideration for this Release, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

2

#99189957v1
#99182420v8

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7.    In this connection, the parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that this Release has been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.    <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)    Tenant has delivered possession of the Premises to Landlord;

(b)    Tenant has delivered to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks);

(c)    An order has been entered by the Bankruptcy Court approving the entirety of this Agreement. Tenant shall use commercially reasonable efforts to seek and obtain Bankruptcy Court approval of this Agreement on an expedited basis such that the Termination Date shall occur no later than [____], 2024.

9.    <u>Abandonment</u>. Subject to Court approval, upon the Termination Date, any personal property remaining at the premises is deemed abandoned and Landlord is free to dispose of or utilize any personal property without further notice or liability to the Tenant or any consenting third parties.

10.    <u>Authority to Settle</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.    <u>Entire Agreement</u>. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the

3

parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement.  Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.    <u>Advice of Counsel</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    <u>Attorneys' Fees</u>. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document.  Further, each of the parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.    <u>Governing Law.</u> This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.    <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.    <u>Miscellaneous</u>.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its

#99189957v1
#99182420v8

terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(f)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel. Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

5

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**[LANDLORD]**

By:_____

Print Name:_____

Its:_____

**[TENANT]**

By:_____

Print Name:_____

Its:_____

## EXHIBIT C TO THE LEASE SALE PROCEDURES

## BIDDER REGISTRATION FORM

## EXHIBIT C TO LEASE SALE PROCEDURES

### OFFER AND QUALIFIED BIDDER FORM

Bidder,_____, hereby:

      Offers to purchase the following Lease Asset(s) for the bid set forth below, pursuant to this Offer and Qualified Bidder Form and the terms and conditions of the accompanying Assumption and Assignment Agreement, and

      Seeks to become a Qualified Bidder pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* subject to approval by the United States Bankruptcy Court for the District of Delaware in the Chapter 11 Cases jointly administered under *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "**Lease Sale Procedures**").

Bidder's offer is for the following Lease Assets at the following bids:

| LEASE ASSET | BID/PURCHASE PRICE |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| 6. | |
| 7. | |
| 8. | |
| **Aggregate Purchase Price:** | |

**Bidder hereby warrants and represents as follows:**

(a)  Bidder has received, reviewed, understands, and agrees to abide by the terms and conditions of the Lease Sale Procedures, the terms and conditions of which are incorporated herein by reference.

(b)  Bidder has received, reviewed, and understands the terms and conditions of the Assumption and Assignment Agreement, the terms and conditions of which are incorporated herein by reference.

(c)  To the extent that the words and phrases which are capitalized in this Offer and Qualified Bidder Form have been defined in the Lease Sale Procedures or in the Assumption and Assignment Agreement, those definitions are incorporated herein by reference.

(d)  Each Bid made at a Lease Auction shall constitute a binding, irrevocable "Bid" pursuant to the Lease Sale Procedures.

(e)  Each Bid is and shall be a good faith, bona fide, irrevocable offer to purchase the Lease Asset(s) on an as-is, where-is basis, with no contingencies.

(f)  Bidder (a) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Lease Asset(s) in making its offer; (b) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Lease Asset(s) or the completeness of any information provided in connection therewith or the Lease Auction other than as provided in the Assumption and Assignment Agreement; (c) is not entitled to any break-up fee, termination fee, expense reimbursement, or similar type of payment; and (d) by submitting an Assignment and Assumption Agreement, waives, and shall be deemed to waive, the right to pursue a substantial contribution claim under section 503 of title 11 of the United States Code (the "**Bankruptcy Code**") related in any way to the submission of its bid, the Lease Sale Procedures, or any earnest money Deposit.

(g)  Bidder is either not represented by a broker seeking a commission, or if Bidder is represented by a broker, Bidder exclusively authorizes broker to submit such offer on behalf of Bidder and that any commission or fee of any type due and payable to such broker as a result of a Lease Sale shall be paid solely by Bidder and Bidder shall indemnify the Debtors and their agents in this regard, and (ii) Bidder acknowledges that it will comply with the Lease Sale Procedures.

(h)  Bidder acknowledges that, pursuant to, inter alia, 18 U.S.C. § 371, it is a federal crime to engage in collusive bidding or to chill the bidding.

(i)  Bidder confirms that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Lease Sale.

(j)  Identification of how the Bidder will pay the purchase price at Closing.

*[Signatures appear on following page]*

AGREED & ACCEPTED this ____ day of _____, 2024


Company: _____

By:_____

Name:_____

Title:_____


*BIDDER I.D.*

Bidder's Company: _____

Bidder's Address:_____

_____

Bidder's Contact:_____

_____

Bidder's Phone & Facsimile Numbers:_____

_____

Bidder's Email Address: _____

Bidder's                    Tax                    ID                    Number:
_____


*ATTORNEY OR AUTHORIZED AGENT I.D.*

Attorney or Agent Name:_____

_____

Law Firm or Company: _____

Address:_____

_____

Phone & Facsimile Numbers:_____

_____

Email Address: _____

#99189957v1
#99182420v8

**Exhibit 2 to the Interim Order**

**Lease Auction, Cure Cost & Lease Sale Hearing Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| | (Jointly Administered) |
| Debtors.[1] | Re: Docket No. [●] |

## NOTICE OF (A) BID DEADLINE, (B) SALE HEARING, AND (C) POTENTIAL ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES

---

### THIS NOTICE SHALL SERVE AS NOTICE OF CURE COSTS FOR ALL LEASES LISTED ON EXHIBIT B.

### PLEASE REVIEW EXHIBIT B IF YOU HAVE RECEIVED THIS NOTICE.

---

**PLEASE TAKE NOTICE** that on October 9, 2024, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered the *Second Interim Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. [●]] (the "**Lease Sale Procedures Order**"), attached hereto as **Exhibit A**,[2] by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct an auction (the "**Lease Auction**") for the sale of certain unexpired leases, including with any ancillary agreement(s) thereto or through the sale of designation rights related thereto (the "**Lease Assets**").

**PLEASE TAKE NOTICE** that the Debtors are soliciting offers for the sale, liquidation, or other disposition of certain of the Debtors' Lease Assets consistent with the Lease Sale

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Lease Sale Procedures Order or the *Motion of Debtors for Entry of Interim and Final Orders (I) Establishing Procedures To Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (iii) Granting Related Relief* [Docket No. [●]], as applicable.

Procedures approved by the Court by entry of the Lease Sale Procedures Order. **All interested bidders should carefully read the Lease Sale Procedures and Lease Sale Procedures Order.** To the extent that there are any inconsistencies between this notice and the Lease Sale Procedures or Lease Sale Procedures Order, the Lease Sale Procedures or Lease Sale Procedures Order, as applicable, shall govern in all respects.

      **PLEASE TAKE FURTHER NOTICE** that pursuant to the Lease Sale Procedures Order and by this written notice (this "**Lease Auction, Cure Cost & Sale Hearing Notice**"), the Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each unexpired lease set forth on **Exhibit B** attached hereto may be assumed and assigned subject to the results of the Lease Auction, subject to the payment of any cure costs (the "**Cure Costs**") in the amounts set forth on **Exhibit B** required to assume such unexpired lease, effective as of the date (the "**Assumption Date**") set forth in **Exhibit B** or such other date as the Debtors and the Counterparties to such unexpired leases agree.

      **PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing bids within the requirements and time frame specified by the Lease Sale Procedures, the Debtors will conduct a virtual Lease Auction of certain of the Debtors' Lease Assets **on or about [●], 2024, at [●] (prevailing Eastern Time)** with a virtual venue as the Debtors shall hereafter designate on proper notice.

      **PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Lease Sale(s) at the hearing scheduled to commence on or before **[●], 2024, at [●] [a./p.].m. (prevailing Eastern Time)** (the "**Lease Sale Hearing**") before the Honorable [●], at the Court, Courtroom [●], [●].

      **PLEASE TAKE FURTHER NOTICE** that the Debtors believe that the party to which each applicable unexpired lease will be assigned has the financial wherewithal to meet all future obligations under such unexpired lease and the Debtors will, at the request of the applicable Counterparty use commercially reasonable efforts to provide evidence thereof to such applicable Counterparty (and their counsel, if known), thereby demonstrating that the assignee of the unexpired lease has the ability to comply with the requirements of adequate assurance of future performance. The Debtors will provide adequate assurance information to Lease counterparties at the last known email address for such counterparty. Lease counterparties can also contact the Debtors directly as notice.biglots@davispolk.com to provide updated notice information.

      **PLEASE TAKE FURTHER NOTICE** that objections to approval of the proposed Lease Sale, to the proposed Cure Costs, the abandonment of personal property, and/or to the proposed assumption and assignment must file a written objection (each, a "**Lease Sale Objection**") so that such objection is filed with the Court so as to be **actually received** by **[●], 2024, at [●] p.m., (prevailing Eastern Time)** and serve such Lease Sale Objection on: (a) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn.: Brian M. Resnick, Esq., Adam L. Shpeen, Esq., Stephen D. Piraino, Esq., and Ethan Stern, Esq. (notice.biglots@davispolk.com); and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq., Andrew R. Remming, Esq., Daniel B. Butz, Esq., Tamara K. Mann, Esq., and Casey B. Sawyer, Esq. (biglots.mnat@morrisnichols.com), proposed co-

#99189957v1
#99182420v8

counsel to the Debtors; (b) the Office of the United States Trustee for the District of Delaware, Attn: Linda Casey; and (c) counsel to any official committee appointed in these Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE** that if a Lease Sale Objection is timely filed and not withdrawn or resolved, such Lease Sale Objection will be heard at a Lease Sale Hearing, or such other date and time as agreed to by the Debtors and the objecting party or as ordered by the Court.  If such Lease Sale Objection is overruled or withdrawn, or if no Lease Sale Objection is filed with respect to any unexpired lease, such unexpired lease shall be assumed as of the Assumption Date set forth in **<u>Exhibit B</u>** or such other date as the Debtors and the applicable Counterparties to such unexpired lease agree.

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO A LEASE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE LEASE SALE PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH LEASE SALE, INCLUDING WITH RESPECT TO THE DISPOSITION OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN SUCH OTHER AGREEMENT WITH THE SUCCESSFUL BIDDER.**

**PLEASE TAKE FURTHER NOTICE** that copies of the Lease Sale Procedures Motion, Lease Sale Procedures, and the Lease Sale Procedures Order, as well as all related exhibits, including the form purchase agreement, are available: (a) by visiting the website maintained in these Chapter 11 Cases at <u>https://www.cases.ra.kroll.com/BigLots</u>; or (b) for a fee via PACER by visiting http://www. https://pacer.uscourts.gov.

#99189957v1
#99182420v8

Dated: [●], 2024

/s/ [Draft]

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Tamara K. Mann (No. 5643)
Sophie Rogers Churchill (No. 6905)
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
tmann@morrisnichols.com
srchurchill@morrisnichols.com
csawyer@morrisnichols.com

-and-

DAVIS POLK & WARDWELL LLP

Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Jonah A. Peppiatt (admitted *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
stephen.piraino@davispolk.com
jonah.peppiatt@davispolk.com
ethan.stern@davispolk.com

Proposed Counsel to the Debtors and Debtors in Possession

#99189957v1
#99182420v8

<u>**EXHIBIT A TO THE LEASE AUCTION, CURE COST
& LEASE SALE HEARING NOTICE**</u>

**Lease Sale Procedures Order**

**EXHIBIT B TO THE LEASE AUCTION, CURE COST &  SALE HEARING NOTICE**

**Schedule of Unexpired Leases to be Potentially Assumed and Assigned
Pursuant to the Lease Auction**

## Exhibit 3 to the Interim Order

**Post-Auction Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-24-11967 (JKS) |
| | (Jointly Administered) |
| Debtors.[1] | **Re: Docket No. [●]** |

### NOTICE OF SUCCESSFUL AND BACKUP BIDDER WITH RESPECT TO THE AUCTION OF CERTAIN OF THE DEBTORS' LEASE ASSETS AND ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES

On September 10, 2024, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered the *Interim Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. [●]] (the "**Lease Sale Procedures Order**"),[2] by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct an auction (the "**Lease Auction**") for the sale or transfer (the "**Lease Sales**") of certain unexpired leases (collectively, the "**Lease Assets**"), including with any ancillary agreement(s) thereto or through the sale of designation rights related thereto.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2024, pursuant to the Lease Sale Procedures Order, the Debtors conducted the virtual Lease Auction with respect to certain of the Lease Assets.

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Lease Sale Procedures Order or the *Motion of Debtors for Entry of Interim and Final Orders (I) Establishing Procedures To Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (iii) Granting Related Relief* [Docket No. [●]], as applicable.

PLEASE TAKE FURTHER NOTICE that, at the conclusion of the Lease Auction, the Debtors, in consultation with their professionals, selected the following Successful Bidder and Backup Bidder with respect to each of the Lease Assets listed on **Exhibit A** attached hereto.

PLEASE TAKE FURTHER NOTICE that the hearing to consider approval of the sale, assumption and assignment, termination, or other disposition of the Lease Assets to the Successful Bidders at the Lease Auction, free and clear of all liens, claims, interests, and encumbrances in accordance with Bankruptcy Code sections 363(f) and 365, will be held before the Honorable [●], at the Court, Courtroom [●], [●], **on [●], 2024 at [●]:00 [a./p.].m. (prevailing Eastern Time)** (the "**Lease Sale Hearing**").

PLEASE TAKE FURTHER NOTICE, that at the Lease Sale Hearing, the Debtors will seek the Court's approval of the Successful Bid pursuant to an order (the "**Lease Sale Order**"). Unless the Court orders otherwise or as agreed to by the applicable parties, the Lease Sale Hearing shall be an evidentiary hearing on matters relating to the Lease Sale and there will be no further bidding at the Lease Sale Hearing. In the event that the Successful Bidder cannot or refuses to consummate the Lease Sale following entry of a Lease Sale Order because of the breach or failure on the part of the Successful Bidder, the Debtors shall promptly file a supplemental notice on or before the Lease Sale Closing Deadline, seeking to approve the sale to the Backup Bidder, if applicable, on expedited notice and a hearing.

PLEASE TAKE FURTHER NOTICE that the Debtors believe that the party to which each applicable unexpired lease, as applicable, will be assigned has the financial wherewithal to meet all future obligations under such unexpired lease and the Debtors will, within three business days or sooner provide evidence thereof to such applicable lease counterparty (and their counsel, if known) thereby demonstrating that the assignee of the lease has the ability to comply with the requirements of adequate assurance of future performance.

PLEASE TAKE FURTHER NOTICE that parties objecting to the Successful Bidder's proposed form of adequate assurance of future performance must file a written objection (each, a "**Adequate Assurance Objection**") so that such objection is filed with the Court by **[●], 2024, at 5:00 p.m., (prevailing Eastern Time)** and serve such Adequate Assurance Objection on: (a) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn.: Brian M. Resnick, Esq., Adam L. Shpeen, Esq., Stephen D. Piraino, Esq., and Ethan Stern, Esq. (notice.biglots@davispolk.com); and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq., Andrew R. Remming, Esq., Daniel B. Butz, Esq., Tamara K. Mann, Esq., and Casey B. Sawyer, Esq. (biglots.mnat@morrisnichols.com), proposed co-counsel to the Debtors; (b) the Office of the United States Trustee for the District of Delaware, Attn: Linda Casey; and (c) counsel to any official committee appointed in these Chapter 11 Cases.

PLEASE TAKE FURTHER NOTICE that, if an Adequate Assurance Objection is timely filed and not withdrawn or resolved, such objection will be heard at the Lease Sale Hearing or such other date and time as agreed to by the Debtors and the objecting party or ordered by the Court.

2

**PLEASE TAKE FURTHER NOTICE** that this Post-Auction Notice is subject to the terms and conditions of the Lease Sale Procedures Motion and the Lease Sale Procedures Order, with such Lease Sale Procedures Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety.  Copies of the Lease Sale Procedures Motion, the Lease Sale Procedures Order, this Notice, and any other related documents are available: (a) by visiting the website maintained in these Chapter 11 Cases at https://www.cases.ra.kroll.com/BigLots; or (b) for a fee via PACER by visiting http://www. https://pacer.uscourts.gov.

3

Dated: [●], 2024

/s/ [Draft]

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Tamara K. Mann (No. 5643)
Sophie Rogers Churchill (No. 6905)
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
tmann@morrisnichols.com
srcurchill@morrisnichols.com
csawyer@morrisnichols.com

-and-

DAVIS POLK & WARDWELL LLP

Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Jonah A. Peppiatt (admiteed *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
stephen.piraino@davispolk.com
jonah.peppiatt@davispolk.com
ethan.stern@davispolk.com

Proposed Counsel to the Debtors and Debtors in Possession

4

**Exhibit A to Post-Auction Notice**

**Successful and Backup Bidder List**

| Lease Asset(s) | Lease Counterparty | Successful Bidder | Type of Agreement [Assignment Agreement/Lease Termination Agreement] | Backup Bidder | Price | Cure |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

#99189957v1
#99182420v8

<u>**Exhibit 4 to the Interim Order**</u>

**Abandonment Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
|  | (Jointly Administered) |
| Debtors.[1] | **Re: Docket Nos. 13 &  [ ]** |

**NOTICE OF ABANDONMENT, UTILIZATION AND DISPOSAL OF PERSONAL
PROPERTY ON CERTAIN OF THE DEBTORS' LEASED PREMISES SOLD
PURSUANT TO THE OCTOBER WAVE LEASE SALES**

      **PLEASE TAKE NOTICE** that on October  [ ], 2024, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered the *Second Interim Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No.  [ ]] (the "**Lease Sale Procedures Order**"),[2] by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct an auction (the "**Lease Auction**") for the sale of certain unexpired leases, including with any ancillary agreement(s) thereto or through the sale of designation rights related thereto, listed on __Exhibit A__ attached hereto (the "**October Wave Lease Assets**").

      **PLEASE TAKE FURTHER NOTICE** that, the Debtors intend to conduct a virtual Lease Auction with respect to the October Wave Lease Assets **on October 18, 2024, at 10:00 a.m. (prevailing Eastern Time)** via __Zoom__ (the "**October Auction**").

      **PLEASE TAKE FURTHER NOTICE** that, after the October Auction, the Debtors will file a *Notice of Successful and Backup Bidder with Respect to the Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* (the

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Lease Sale Procedures Order or the *Motion of Debtors for Entry of Interim and Final Orders (I) Establishing Procedures To Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (iii) Granting Related Relief* [Docket No. 13], as applicable.

"**Post-Auction Notice**"), listing the October Wave Lease Assets for which the Debtors' received bids for and will be pursuing sales of (the "**Lease Sales**").

PLEASE TAKE FURTHER NOTICE that the Debtors will seek approval of the Lease Sales at the hearing scheduled to commence on **October [ ], 2024, at []:00 [].m. (prevailing Eastern Time)** (the "**Lease Sale Hearing**") before the Honorable J. Kate Stickles, at the Court, 824 Market Street, 5th Floor, Courtroom #6, Wilmington DE 19801 [Docket No. ___].

**PLEASE TAKE FURTHER NOTICE that, at the Lease Sale Hearing, the Debtors will seek approval to abandon, pursuant to section 554 of the Bankruptcy Code, all personal property and furniture, fixtures and equipment ("FF&E") remaining in the stores subject to the Leases on or after the Closing Date or Termination Date, as applicable.**

**PLEASE TAKE FURTHER NOTICE that, at the Lease Sale Hearing, the Debtors will seek approval to permit each Buyer, in its sole discretion and without further order of this Court, to utilize and/or dispose of all personal property and FF&E without notice or liability to the Debtors or any consenting third party.**

PLEASE TAKE FURTHER NOTICE that, you are receiving this notice because the Debtors believe you may have an interest in personal property or FF&E at the premises subject to the Lease Sales.

PLEASE TAKE FURTHER NOTICE that parties seeking to object to the Debtors' proposed abandonment must file with the Court and serve a written objection so as to actually be received by no later than **October 25, 2024, at 4:00 p.m. (prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that the Debtors will alert all known interested parties as to the pending sale of the applicable Lease Assets and are working with counterparties to facilitate appropriate actions in connection with the personal property on the premises of such Lease Assets. **Any party with an interest in personal property on the Lease Asset premises should contact Debtors' counsel (notice.biglots@davispolk.com).**

PLEASE TAKE FURTHER NOTICE that copies of the Lease Sale Procedures Motion, Lease Sale Procedures, the Lease Sale Procedures Order and the Post-Auction Notice as well as all related exhibits, are available: (a) by visiting the website maintained in these Chapter 11 Cases at https://www.cases.ra.kroll.com/BigLots; or (b) for a fee via PACER by visiting http://www. https://pacer.uscourts.gov.

2

Dated:

              /s/ *DRAFT*             

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
tmann@morrisnichols.com
csawyer@morrisnichols.com

-and-

DAVIS POLK & WARDWELL LLP

Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
stephen.piraino@davispolk.com
ethan.stern@davispolk.com

*Proposed Counsel to the Debtors and Debtors in Possession*

3

**EXHIBIT A**

| STORE |
|---|
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |

**Exhibit 5 to the Interim Order**

**Disposal Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| | (Jointly Administered) |
| Debtors.[1] | **Re: D.I. 13 &  [ ]** |

### NOTICE OF POTENTIAL UTILIZATION AND DISPOSAL OF PERSONAL PROPERTY ON CERTAIN OF THE DEBTORS' LEASED PREMISES SOLD PURSUANT TO THE OCTOBER WAVE LEASE SALES

**PLEASE TAKE NOTICE** that on October 9, 2024, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered the *Second Interim Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [D.I. 137] (the "**Lease Sale Procedures Order**"),[2] by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct an auction (the "**Lease Auction**") for the sale of certain unexpired leases, including with any ancillary agreement(s) thereto or through the sale of designation rights related thereto, listed on **Exhibit A** attached hereto (the "**October Wave Lease Assets**").

**PLEASE TAKE FURTHER NOTICE** that, the Debtors intend to conduct a virtual Lease Auction with respect to the October Wave Lease Assets **on October 18, 2024, at 10:00 a.m. (prevailing Eastern Time)** via **Zoom** (the "**October Auction**").

**PLEASE TAKE FURTHER NOTICE** that, after the October Auction, the Debtors will file a *Notice of Successful and Backup Bidder with Respect to the Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* (the

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows:  Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Lease Sale Procedures Order or the *Motion of Debtors for Entry of Interim and Final Orders (I) Establishing Procedures To Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (iii) Granting Related Relief* [D.I. 13], as applicable.

"**Post-Auction Notice**"), listing the October Wave Lease Assets for which the Debtors' received bids for and will be pursuing sales of (the "**Lease Sales**").

PLEASE TAKE FURTHER NOTICE that the Debtors will seek approval of the Lease Sales at the hearing scheduled to commence on **October 31, 2024, at 12:00 p.m. (prevailing Eastern Time)** (the "**Lease Sale Hearing**") before the Honorable J. Kate Stickles, at the Court, 824 Market Street, 5th Floor, Courtroom #6, Wilmington DE 19801.

**PLEASE TAKE FURTHER NOTICE that, at the Lease Sale Hearing, the Debtors may seek entry of an order, substantially in the form attached hereto as <u>Exhibit B</u>, which permits each Buyer, in its sole discretion and without further order of this Court, to utilize and/or dispose of all personal property and furniture, fixtures, and equipment without notice or liability to the Debtors or any consenting third party.**

**PLEASE TAKE FURTHER NOTICE that, at the Lease Sale Hearing, the Debtors may seek entry of an order, substantially in the form attached hereto as <u>Exhibit B</u>, that provides that any party served with this notice that does not object to the proposed disposal of their property in accordance with the terms of this notice will be deemed to have consented to: (i) the abandonment of personal property remaining on the Lease Asset premises as of the effective date of the Lease Sales; (ii) the transfer of ownership of all such property to any Buyer; and (iii) allow the Debtors or any Buyer to utilize and/or dispose of any personal property remaining on the premises of the Lease Assets without further Court order and without liability or further notice to any third party.**

PLEASE TAKE FURTHER NOTICE that parties seeking to object to the Debtors' proposed abandonment must file with the Court and serve a written objection so as to actually be received by no later than **October 25, 2024, at 4:00 p.m. (prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that the Debtors will alert all known interested parties as to the pending sale of the applicable Lease Assets and are working with counterparties to facilitate appropriate actions in connection with the personal property on the premises of such Lease Assets. **Any party with an interest in personal property on the Lease Asset premises should contact Debtors' counsel (notice.biglots@davispolk.com).**

PLEASE TAKE FURTHER NOTICE that copies of the Lease Sale Procedures Motion, Lease Sale Procedures, and the Lease Sale Procedures Order as well as all related exhibits, are available: (a) by visiting the website maintained in these Chapter 11 Cases at https://www.cases.ra.kroll.com/BigLots; or (b) for a fee via PACER by visiting http://www. https://pacer.uscourts.gov.

Dated:

/s/ *DRAFT*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
tmann@morrisnichols.com
csawyer@morrisnichols.com

-and-

DAVIS POLK & WARDWELL LLP

Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Jonah A. Peppiatt (admitted *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
stephen.piraino@davispolk.com
ethan.stern@davispolk.com

*Proposed Counsel to the Debtors and Debtors in Possession*

3

**EXHIBIT A**