# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Big Lots, Inc., *et al.,* [1]<br><br>                         Debtors. | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>Re: Docket No. 18<br>UST Obj. Deadline: October 15, 2024<br>Hearing Date: October 21, 2024 at 1:30 p.m. |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF DEBTORS FOR ENTRY OF ORDERS (A) APPROVING BIDDING PROCEDURES FOR SALE OF DEBTORS' ASSETS, (B) APPROVING THE STALKING HORSE BID PROTECTIONS, (C) SCHEDULING AUCTION FOR, AND HEARING TO APPROVE, SALE OF DEBTORS' ASSETS, (D) APPROVING FORM AND MANNER OF NOTICES OF SALE, AUCTION, AND SALE HEARING, AND (E) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES**

Andrew R. Vara, the United States Trustee for Regions 3 and 9 ("U.S. Trustee"), files this objection ("Objection") to the *Motion of Debtors for Entry of Orders (A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures* (D.I. 18; the "Motion"), and in support of the Objection states:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182);CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400);GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC(9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

**PRELIMINARY STATEMENT**

1. The U.S. Trustee objects to the approval of the payment of the Bid Protections in circumstances where the standard for their payment under 503(b) of the Code has not been met. In particular, the Bid Protections should only be approved at this time only if a sale to a purchaser providing a higher and better offer actually closes.

2. The U.S. Trustee also objects to treating any expense reimbursement allowed by the Court as a super-priority administrative claim. There are only two types of claims under the Bankruptcy Code that are provided such status, which are (i) claims securing post-petition debtor-in-possession financing and (ii) claims of pre-petition secured parties for adequate protection. Neither of those two circumstances applies here.

**JURISDICTION AND STANDING**

3. This Court has jurisdiction to hear and determine the Bid Procedures Motion and this Objection pursuant to: (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court of the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2).

4. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district. The duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the Courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

5. The U.S. Trustee has standing to be heard on the Bid Procedures Motion pursuant to 11 U.S.C. § 307. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys.,*

*Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## BACKGROUND

6. On September 9, 2024, the Debtors commenced the above-captioned cases by the filing of voluntary chapter 11 petitions in this Court.

7. On September 23, 2024, the U.S. Trustee appointed an official committee of unsecured creditors ("Committee"). [D.I. 248].

8. The Debtors filed the Bid Procedures Motion. The Debtors propose to sell their assets pursuant to section 363 of the Bankruptcy Code. The Debtors have identified a proposed Stalking Horse Bidder, an entity called Gateway BL Acquisition, LLC, an affiliate of Nexus Capital Management LP ("Nexus"). Nexus submitted a bid with an aggregate purchase price of approximately $760 million, consisting of $2.5 million in cash plus the Debt Payoff Amount (as defined in the Stalking Horse APA). Mot. ¶ 17.

9. Contemporaneously with executing the Stalking Horse APA, the Debtors also entered into a "Reimbursement Agreement," which provided for the reimbursement of Nexus's expenses as of the date of entry into the Stalking Horse APA. Mot. Exh. C p. 1.

10. The Debtors seek approval of a Break-Up Fee of $7.5 million and an Expense Reimbursement of up to $1.5 million (collectively, the "Bid Protections").

11. The proposed order approving the Bid Protections states:

> Bid Protections. The Debtors are hereby authorized and directed to pay, or cause to be paid, the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse APA and the Bidding Procedures, without further order of this Court. The dollar amount of the Break-Up Fee and Expense Reimbursement are hereby approved. The Stalking Horse Bidder shall be entitled to receive the Bid Protections in accordance with the terms and conditions of the Stalking Horse APA. The Debtors' obligation to pay the Bid

3

>Protections shall be the joint and several obligations of the Debtors and shall survive termination of the Stalking Horse APA, dismissal or conversion of any of the Chapter 11 Cases, and confirmation of any plan of reorganization or liquidation.

Mot. Exh. B ¶ 16.

12. The proposed order grants the Bid Protections superpriority status under Bankruptcy Code Sections 503(b), 507(a)(2), and 507(b). *Id.* ¶ 17.

13. The Stalking Horse APA requires payment of the Break-Up Fee under the following circumstances:

>In accordance with the terms of the Bidding Procedures Order: (A) if (I) this Agreement is validly terminated pursuant to Section 12.01(b)(iii) (Superior Proposal), Section 12.01(c)(i) (Material Seller Breach), Section 12.01(c)(ii) (Alternative Transaction), Section 12.01(c)(v) (Buyer Not Selected at Auction), or (solely at a time when this Agreement was permitted to be terminated pursuant to the foregoing sections) Section 12.01(b)(i) (Outside Date), and (II) concurrently with or within 120 days following such termination of this Agreement, the closing of a Tail Transaction has occurred, the Selling Entities will pay to Buyer the Break-Up Fee upon the closing of the Tail Transaction[.]

Mot. Exh. C ¶ 13.07(b). "Tail Transaction" is defined as, "(a) an Alternative Transaction pursuant to which the holders of Repaid Indebtedness [i.e. the ABL DIP Obligations, the Pre-Petition ABL Obligations, the Term DIP Obligations and the Pre-Petition Term Obligations] receive payment in full for the Repaid Indebtedness or (b) in the case of termination of this Agreement for any reason other than pursuant to Section 12.01(d) (Material Buyer Breach), a transaction pursuant to a Superior Proposal." *Id.* p. 19.

14. The Stalking Horse APA requires payment of the Expense Reimbursement under the following conditions:

>if this Agreement is validly terminated (I) pursuant to Section 12.01(b)(v) or (II) for any other reason other than (x) by Seller pursuant to Section 12.01(d) (Material Buyer Breach), Section 12.01(e) (Buyer Failure to Close When Required) or (solely at a time when Seller was permitted to terminate this Agreement pursuant to the foregoing sections) Section 12.01(b)(i) (Outside Date), in each case other than as a result of a Lending Failure, or (y) by Buyer

4

pursuant to Section 12.01(b)(i) (Outside Date), the Selling Entities will pay to Buyer the Expense Reimbursement within five Business Days of such termination by Buyer and Seller delivering written notice to the Escrow Agent instructing the Escrow Agent to release an amount equal to the Expense Reimbursement to Buyer or its designee with any remaining funds held in escrow to be released to Seller or its designee.

## **ARGUMENT**

**Approval of Payment of the Bid Protections in any Circumstance Other Than Closing of a Sale to <u>a Higher and Better Offer Obtained at Auction Is Premature.</u>**

15. Bid protections must be sought and analyzed under Section 503(b). *See Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) ("[A] bidder must seek a break-up fee under 11 U.S.C. § 503(b)[.]") (citing *In re O'Brien Env't Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999)).

16. The analysis of bid protections under Section 503(b) "must be made in reference to general administrative expense jurisprudence. In other words, the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *O'Brien*, 181 F.3d at 535 (emphasis added). "[T]ermination fees are subject to the same general standard used for all administrative expenses under 11 U.S.C. § 503[.]" *In re Energy Future Holdings Corp. ("EFH I")*, 904 F.3d 298, 313 (3d Cir. 2018). The party requesting bid protections has the burden of showing that the fee is actually necessary to preserve the value of the estate. *See O'Brien*, 181 F.3d at 535.

17. Bid protections are ordinarily predicated on a stalking horse attracting other bidders to an auction or enhancing the value of the estate in some other way. But that does not satisfy Third Circuit precedent: the requesting party must show that the bid protections are "actually necessary" to preserve the value of the estate. *O'Brien*, 181 F.3d at 535. There is no certainty that

bid protections will be actually necessary. For example, a secured creditor may not need an inducement to credit bid for its collateral. Even if a break-up fee would benefit the estate, the Court must still determine "whether the proposed fee's potential benefits to the estate outweigh any potential harms, such that the fee is actually necessary to preserve the value of the estate." *Id.* at 314 (citing *O'Brien*, 181 F.3d at 535) (quotation marks omitted).

18. *In In re Energy Future Holdings Corp. ("EFH II"),* 990 F.3d 728, 744 (3d Cir. 2021), the United States Court of Appeals for the Third Circuit considered, in the context of a motion to dismiss based upon the sufficiency of the pleading, an administrative expense application submitted by an unsuccessful bidder. Initially, the unsuccessful bidder argued that the lower courts erred in measuring whether its bid had conferred a benefit using hindsight (as opposed to measuring the benefit at the time the bid was submitted). *See EFH II* at 744. The Third Circuit rejected that argument and concluded that, consistent with the well-established Bankruptcy Code policy of limiting administrative expenses, it was "entirely appropriate to consider" the asserted benefit "through the rearview mirror." *Id*.

19. The unsuccessful bidder in *EFH II* also asserted two potential benefits to the process: that it served as a stalking horse bidder, and that its unsuccessful efforts provided a "roadmap" for other viable bids that were later submitted, including the successful bid. *Id*. The Third Circuit rejected the argument that the unsuccessful bidder had stated a plausible argument for allowance of an administrative expense on a theory that its bid served as a catalyst for the submission of other bids, as it was the only bid at the time it was submitted. *Id*. While the bid did not technically establish a "floor" because the estates ultimately accepted a substantially lower offer after the unsuccessful bid fell through, the Third Circuit found that the argument that the bid had provided a "roadmap" for other bids post-termination was a plausible argument in favor of

benefit to the estates. Id. at 745-46. The Third Circuit remanded the matter in *EFH II* so that a sufficient record could be developed to enable the bankruptcy court to determine, in hindsight, the extent to which the unsuccessful bidder's participation had benefitted the estates more than it had harmed the estates. *Id*. at 748.

20. Here, under the APA, the Debtors are required to pay the Break-Up Fee and Expense Reimbursement in situations where it is, at best, presently unclear how the estate will have been benefitted and its value preserved. For example, the Debtors must pay the Break-Up Fee if the Debtors breach their warranties and representations and a sale closes that provides only payment in full of the Repaid Indebtedness, apparently without a cash component as provided by the Stalking Horse APA, and apparently without requiring approval of a Wind-Down Budget. In addition, the payment of the Expense Reimbursement does not require *any* sale to close. Without knowing the specific circumstances, payment of the Bid Protections cannot be demonstrated to be "actually necessary to preserve the value of the estate," as required under *O'Brien*. Under *EFH II*, analyzing the payment of Bid Protections in hindsight through the rearview mirror is entirely appropriate.

21. If Nexus wants payment of the Bid Protections under such circumstances, they must come back to the Court and make the case that, under the particular circumstances, the payment of Bid Protections would meet the *O'Brien* standard. Other than as a result of the Debtors accepting a higher and better offer for their assets through the auction process and a sale premised upon that offer closing, payment of the Bid Protections would not truly function as bid protections, but rather as liquidated damages for breach of the APA.

22. For these reasons, the U.S. Trustee submits that the Bid Protections should not be approved to the extent they are payable for any reason other than the closing of a higher and better transaction.

Bid Protections Are Not Entitled to Superpriority Status

23. The U.S. Trustee also objects to treating any expense reimbursement allowed by the Court as a super-priority administrative claim.

24. The Third Circuit has ruled that break-up fees must be sought and analyzed under Section 503(b). *See Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) ("[A] bidder must seek a break-up fee under 11 U.S.C. § 503(b)[.]" (citing *O'Brien*).

25. Section 503(b) does not provide for superpriority status. Such status is provided for only in Sections 364(c)(1) and 507(b). Those sections are addressed exclusively to (a) parties providing post-petition financing and (b) secured creditors who have received insufficient "adequate protection" for the post-petition diminution in the value of their collateral. Neither of those two circumstances are present here.

26. "The filing of a petition for bankruptcy protection under Chapter 11 of the Code . . . precludes all efforts to obtain or distribute property of the estate other than as provided by the Bankruptcy Code. This statutory control over the right to recover property from the debtor's estate is integral to the purposes and goals of federal bankruptcy law." *O'Brien*, 181 F.3d at 532 (citations omitted).

27. Permitting Nexus to prime other administrative expense claimants has no basis in the Bankruptcy Code and is inconsistent with Third Circuit precedent.

<u>Nexus Must Provide Notice and an Opportunity to Object to the Expense Reimbursement</u>

28. Expense Reimbursements must be actual and necessary. The Stalking Horse APA recognizes this and permits repayment of actual expenses *up to* $1.5 million.

29. Nexus must be required to provide the Debtors, the Committee and the U.S. Trustee with sufficient detail regarding their actual and necessary and provide such parties an opportunity to object prior to payment of such expenses. It is standard in this District for stalking horse purchasers to provide 10 days' notice of such expenses before they are paid.

**[Continued on next page – space intentionally left blank]**

## **CONCLUSION**

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court enter an order: (i) limiting approval of the Bid Protections to only the circumstance where a higher and better offer is accepted by the Debtors and actually closes; (ii) denying superpriority status to the Bid Protections; (iii) requiring a minimum of 10 days' notice of the actual expenses sought to be paid by Nexus under the Expense Reimbursement, with an opportunity for the Debtors, the Committee and the U.S. Trustee to object; and (iv) granting such other and further relief as the Court deems just and equitable.

| | |
|---|---|
| Dated:  October 15, 2024<br>         Wilmington, Delaware | Respectfully submitted,<br><br>**ANDREW R. VARA**<br>**UNITED STATES TRUSTEE**<br>**Regions 3 and 9**<br><br>By:  */s/ Linda J. Casey*<br>     Linda J. Casey<br>     Trial Attorney<br>     United States Department of Justice<br>     Office of the United States Trustee<br>     J. Caleb Boggs Federal Building<br>     844 King Street, Suite 2207, Lockbox 35<br>     Wilmington, DE 19801<br>     (302) 573-6491 (Phone)<br>     (302) 573-6497 (Fax)<br>     Linda.Casey@usdoj.gov |

## CERTIFICATE OF SERVICE

I, Linda Casey, hereby attest that on October 15, 2024, I caused to be served a copy of the *United States Trustee's Objection to Motion of Debtors for Entry of Orders (A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures* by electronic service on the registered parties via the Court's CM/ECF system and upon the following parties via electronic mail:

Morris, Nichols, Arsht & Tunnell LLP
Robert J. Dehney, Sr.
Andrew R. Remming
Tamara K. Mann
Sophie Rogers Churchill
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
rdehney@morrisnichols.com
aremming@morrisnichols.com
tmann@morrisnichols.com
srchurchill@morrisnichols.com
csawyer@morrisnichols.com

Davis Polk & Wardwell LLP
Brian M. Resnick
Adam L. Shpeen
Stephen D. Piraino
Ethan Stern
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
stephen.piraino@davispolk.com
ethan.stern@davispolk.com

Cole Schotz P.C.
Justin R. Alberto
Stacy L. Newman
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
jalberto@coleschotz.com
snewman@coleschotz.com

Mcdermott Will & Emery
Darren Azman
Kristin K. Going
One Vanderbilt Avenue
New York, NY, 10017
dazman@mwe.com
kgoing@mwe.com

By: /s Linda J. Casey
Linda J. Casey, Esq.