## Exhibit A

**Revised Proposed Bidding Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 18** |

### ORDER (I) APPROVING BIDDING PROCEDURES FOR SALE OF DEBTORS' ASSETS, (II) APPROVING THE STALKING HORSE BID PROTECTIONS, (III) SCHEDULING AUCTION FOR, AND HEARING TO APPROVE, SALE OF DEBTORS' ASSETS, (IV) APPROVING FORM AND MANNER OF NOTICES OF SALE, AUCTION, AND SALE HEARING, (V) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for entry of orders, pursuant to sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008, and Local Rules 2002-1, 6004-1 and 9006-1, (a)(i) authorizing and approving Bidding Procedures for the sale of the Debtors' assets, (ii) approving the Bid Protections pursuant to the "stalking horse" asset purchase agreement (the "**Stalking Horse APA**") with Gateway BL Acquisition, LLC (the "**Stalking Horse Bidder**"), (iii) scheduling an Auction for, and a hearing to approve, the sale of certain of the Debtors' assets,

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the DIP Motion (as defined in the Motion).

(iv) authorizing and approving the Noticing Procedures, and (v) approving the Assumption and Assignment Procedures, (b)(i) authorizing and approving the sale of certain of the Debtors' assets free and clear of liens, claims, interests, and encumbrances, and (ii) authorizing and approving the procedures for the assumption and assignment of certain Contracts and Leases, and (c) granting related relief, in each case, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of the Chapter 11 Cases and related proceedings being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the Rifkin Declaration, and Ramsden Declaration; and the Court having held a hearing to consider the relief requested in the Motion (the "**Bidding Procedures Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion, the Rifkin Declaration, and the Ramsden Declaration and at the Bidding Procedures Hearing establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Debtors' proposed notice of the Motion, the Bidding Procedures, the Bidding Procedures Hearing, and the proposed entry of this Order (this "**Bidding Procedures Order**") is (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iii) adequate and sufficient under the circumstances of the Chapter 11 Cases, and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including with respect to the Bidding Procedures, Bid Protections, and the Stalking Horse APA) has been afforded to all interested persons and entities, including the Notice Parties.

C.      The Bidding Procedures in the form attached hereto as **Exhibit 1** (i) are fair, reasonable, and appropriate, (ii) are designed to maximize recoveries from a sale of the Bid Assets, (iii) permit the Debtors to comply with the DIP Milestones, and (iv) are consistent with the Debtors' exercise of their respective fiduciary duties under applicable law.  The Bidding Procedures (i) were negotiated in good faith and at arm's-length, (ii) are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Bid Assets, and (iii) preserve the opportunity to attract value-maximizing proposals beneficial to the Debtors' estates, their creditors, and other parties in interest.  The Debtors, with the assistance of their advisors,

engaged in a robust and extensive marketing and sale process prior to the Petition Date to solicit and develop the highest or otherwise best offer for the Bid Assets. The Bidding Procedures are designed to continue that robust and extensive marketing and sale process. The Bidding Procedures comply with the requirements of Local Rule 6004-1(c).

D.      The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Bidding Procedures Order and, thereby, (i) authorize and approve the Bidding Procedures, (ii) authorize and approve the Bid Protections under the terms and conditions set forth in the Stalking Horse APA and the Bidding Procedures, (iii) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing, and other deadlines set forth in the Bidding Procedures, (iv) authorize and approve the Noticing Procedures and the forms of notice, and (v) authorize and approve the Assumption and Assignment Procedures and the forms of relevant notice. Such compelling and sound business justification, which was set forth in the Motion, the Rifkin Declaration, and on the record at the Bidding Procedures Hearing, is incorporated herein by reference and, among other things, forms the basis for the findings of fact and conclusions of law set forth herein.

E.      The Bid Protections, as approved by this Bidding Procedures Order, are fair and reasonable and provide a benefit to the Debtors' estates and stakeholders.

F.      The Debtors have selected a Stalking Horse Bidder with respect to the Assets, and the payment of Bid Protections, if triggered in accordance with this Bidding Procedures Order, the Bidding Procedures, and the Stalking Horse APA (i) would constitute actual and necessary costs of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code and (ii) is reasonably tailored to facilitate, rather than hinder, bidding for the Bid Assets by providing a baseline of value, increasing the likelihood of competitive bidding at the

Auction, and encouraging the participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors would achieve the value-maximizing transaction for the Bid Assets. The Bid Protections are, accordingly, (i) of substantial benefit to the Debtors' estates, their stakeholders, and all parties in interest, (ii) reasonable and appropriate, (iii) a material inducement for, and condition necessary to, ensure that the Stalking Horse Bidder will continue to pursue its proposed agreement to purchase the Bid Assets in accordance with the Stalking Horse APA, and (iv) reasonable in relation to the Stalking Horse Bidder's efforts, the magnitude and complexity of the Sale Transaction, and the loss of opportunities the Stalking Horse Bidder would suffer as a result of the time spent pursuing a Sale Transaction.  Without the Bid Protections, the Stalking Horse Bidder would be unwilling to remain obligated to consummate the Sale Transaction or otherwise be bound under the Stalking Horse APA (including the obligation to maintain its committed offer while such offer is subject to higher or better offers, as contemplated by the Bidding Procedures).

G.      The Stalking Horse Bidder is a third-party purchaser and is unrelated to any of the Debtors. Neither the Stalking Horse Bidder, nor any of its affiliates, subsidiaries, officers, directors, members, partners or principals, or any of their respective representatives, successors or assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

H.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bidding Procedures Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest herein.

I.      The Notice of Successful Bidder, substantially in the form attached hereto as Exhibit 5 (the "**Notice of Successful Bidder**"), is reasonably calculated to provide interested

parties with timely and proper notice of any proposed Sale Transaction with respect to the Assets, including, without limitation: (a) the Successful Bidder(s) for the Assets, (b) the Alternate Bidder(s), if applicable, (c) the key terms of the proposed Sale Transaction, (d) the purchase agreement of the successful Bidder(s) based on the form Stalking Horse APA, which shall be accompanied by a redline copy marked against the form Stalking Horse APA to show any revisions, (e) the date, time, and place of the Sale Hearing, and (f) the Sale Objection Deadline (as defined herein).

J.      The form and manner of notice to be delivered pursuant to the Noticing Procedures and the Assumption and Assignment Procedures (including the Sale Notice attached hereto as **Exhibit 2**, the Potential Assumption and Assignment Notice attached hereto as **Exhibit 3**, and the Proposed Assumption and Assignment Notice attached hereto as **Exhibit 4**) are reasonably calculated to provide each Counterparty to the Potential Assumed Contracts and the Proposed Assumed Contracts with proper notice of (a) the potential assumption and assignment of such Potential Assumed Contracts and Proposed Assumed Contracts by the Successful Bidder(s) (including the Stalking Horse Bidder) or any of their known proposed assignees (if different from the applicable Successful Bidder) and (b) the requirement that each such Counterparty assert any objection to the proposed Cure Costs by the Cure Objection Deadline or otherwise be barred from asserting claims arising from events occurring prior to the Petition Date.  The Sale Notice is reasonably calculated to provide all parties in interest with notice of (i) the date, time, and place of the Sale Hearing, and (ii) the Sale Objection Deadline.

ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is granted to the extent set forth herein.

2.      Any objections to or reservations of rights regarding the Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits with prejudice.

3.      The Bidding Procedures, in substantially the form attached hereto as **Exhibit 1**, are approved and fully incorporated into this Bidding Procedures Order and the Debtors are authorized, but not directed, to act in accordance therewith.  The failure to specifically include a reference to any particular provision of the Bidding Procedures in the Motion or this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Bidding Procedures Order.  In accordance with and subject to the Bidding Procedures, the Debtors, in the exercise of their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, shall have the right, in consultation with the Consultation Parties, to modify the Bidding Procedures, including to (i) extend or waive deadlines or other terms and conditions set forth herein or therein; (ii) adopt new rules and procedures for conducting the bidding and Auction process so long as any such modifications are disclosed to all Qualified Bidders; and (iii) otherwise modify the Bidding Procedures to further promote competitive bidding for and maximizing the value of the Bid Assets; *provided* that such extensions, waivers, new rules and procedures, accommodations, and modifications (except as are consented to or otherwise approved or permitted in accordance with the Bidding Procedures) (i) do not conflict with and are not inconsistent with this Order, the Bidding Procedures, the Bankruptcy Code or any order of the Court and (ii) are as promptly as practicable communicated to each Qualified Bidder or at the Auction (if any).

4.      The Stalking Horse Bidder is deemed a Qualified Bidder for all purposes, and the Stalking Horse Bid, as set forth in the Stalking Horse APA, is deemed a Qualified Bid. In the event that no other Qualified Bids are submitted, the Debtors shall deem the Stalking Horse Bidder to be the Successful Bidder in accordance with paragraph 7 of this Bidding Procedures Order.

5.      Nothing herein shall prejudice the Debtors' rights to seek, through separate motion, in the exercise of their sound business judgment and fiduciary duties, the authority to sell assets of the Debtors' estates (that do not constitute all or substantially all of the Debtors' assets) pursuant to section 363 of the Bankruptcy Code.

6.      <u>Bid Deadline</u>.  As further described in the Bidding Procedures, the Bid Deadline shall be **October 23, 2024 at 5:00 p.m. (prevailing Eastern Time)**.

7.      <u>Auction</u>.  In the event that the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids (in addition to the Stalking Horse Bid), an Auction shall be conducted at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, on **October 28, 2024** at **10:00 a.m. (prevailing Eastern Time)**, or such later time on such day or such other place as the Debtors shall notify all Participating Parties. The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures.

8.      If (a) no Qualified Bid other than the Stalking Horse Bid is submitted by the Bid Deadline for the Bid Assets comprising the Stalking Horse Bid, (b) multiple Partial Bids are submitted by the Bid Deadline for non-overlapping lots of Bid Assets that, in the aggregate, do not exceed the amount of the Stalking Horse Bid for such Bid Assets, or (c) multiple Partial Bids are submitted by the Bid Deadline for non-overlapping lots of Bid Assets excluded from the Stalking Horse Bid, the Debtors may, in consultation with the Consultation Parties, elect to cancel the Auction and seek approval of the transactions contemplated in the Stalking Horse Bid and Partial

Bids, as applicable, at the Sale Hearing; *provided*, that the Debtors shall provide the Stalking Horse Bidder with reasonable advanced notice of such determination prior to cancelling the Auction; *provided*, *further*, that if the Debtors determine not to conduct an Auction, then the Debtors shall file the Notice of Successful Bidder designating the Stalking Horse Bidder as the Successful Bidder within one (1) calendar day following such determination.

9.      The form of Sale Notice attached hereto as **Exhibit 2** is hereby approved.

10.     As soon as reasonably practicable after entry of this Bidding Procedures Order, the Debtors shall cause the Sale Notice to be served (by email, to the extent such parties have requested service by email, or otherwise by first class mail) upon the Sale Notice Parties; *provided* that the Debtors need not serve the Sale Notice on any party for whom the Debtors are unable to obtain, after reasonable diligence, an email or physical address as of the entry of the Bidding Procedures Order; *provided*, *further*, that the Debtors shall not be obligated to provide supplemental service of the Sale Notice with respect to any Sale Notice that is returned as undeliverable so long as the Debtors have confirmed that any such Sale Notice was sent to the applicable email or physical address on file in the Debtors' books and records and no other email or physical address could be obtained after reasonable diligence.  The Debtors will also cause the Sale Notice to be published once in the national edition of *USA Today* or another publication with similar national circulation as soon as practicable following entry of this Bidding Procedures Order and shall post the Sale Notice and the Bidding Procedures Order on the Case Information Website.

11.     Service of the Sale Notice on the Sale Notice Parties in the manner described in this Bidding Procedures Order constitutes good and sufficient notice of the Auction, the Sale Hearing, and the Sale Objection Deadline.  No other or further notice is required.

12.     No later than the earlier of (i) twenty-four (24) hours after conclusion of the Auction (if any) and the selection of the Successful Bid(s) and Alternate Bid(s) and (ii) four (4) business days prior to the Objection Deadline (as defined herein) (as long as the Successful Bid(s) and Alternate Bid(s) have been selected at least 12 hours prior to such time), the Debtors shall file with the Court and post on the Case Information Website the Notice of Successful Bidder, which shall attach as an exhibit the asset purchase agreement with the Successful Bidder.

13.     <u>Sale Objections</u>.  Objections to the relief sought through the Sale Order must (a) be in writing, (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (c) state, with specificity, the legal and factual bases thereof, (d) be filed with the Court no later than **November 4, 2024 at 12:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**") and (e) be served on (i) proposed counsel to the Debtors, (y) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick, Esq., Adam L. Shpeen, Esq., Stephen D. Piraino, Esq., Jonah A. Peppiatt, Esq., and Ethan Stern, Esq. (notice.biglots@davispolk.com) and (z) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq., Andrew R. Remming, Esq., Daniel B. Butz, Esq., Tamara K. Mann, Esq., and Casey B. Sawyer, Esq. (biglots.mnat@morrisnichols.com), (ii) counsel to the ABL Agent, (y) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola, Esq. (jventola@choate.com), Jonathan D. Marshall, Esq. (jmarshall@choate.com), and Jacob S. Lang, Esq. (jslang@choate.com), and (z) Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn: Regina Stango Kelbon, Esq. (regina.kelbon@blankrome.com) and Stanley Tarr, Esq. (stanley.tarr@blankrome.com), (iii) counsel to the Term Agent, (y) Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Chad B. Simon, Esq.

(CSimon@otterbourg.com), James V. Drew, Esq. (JDrew@otterbourg.com), and Sarah L. Hautzinger, Esq. (shautzinger@otterbourg.com) and (z) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn: John H. Knight, Esq. (knight@rlf.com), (iv) proposed counsel to the Committee, (y) McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, NY 10017, Attn: Darren Azman, Esq. (dazman@mwe.com) and Kristin G. Going, Esq. (kgoing@mwe.com), and (z) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attn: Justin R. Alberto, Esq. (jalberto@coleschotz.com) and Stacy L. Newman, Esq. (snewman@coleschotz.com), (v) counsel to the Stalking Horse Bidder, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Christopher Marcus, P.C. (cmarcus@kirkland.com), Douglas A. Ryder, P.C. (douglas.ryder@kirkland.com), and Nicholas M. Adzima (nicholas.adzima@kirkland.com), and (vi) the U.S. Trustee, Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov) (collectively, the "**Objection Notice Parties**").

14.     <u>Sale Hearing</u>.  The Sale Hearing shall be held in the United States Bankruptcy Court for the District of Delaware, Wilmington, Delaware 19801 on **November 8, 2024 at 10:30 a.m. (prevailing Eastern Time)**, or such other date and time that the Court may later direct; *provided* that the Debtors may adjourn the Sale Hearing through an announcement of the adjournment in open court or on the Court's docket.

15.     As soon as reasonably practicable after the conclusion of the Auction (if any), and by no later than three (3) days after the conclusion of the Auction (if any), the Debtors shall file a proposed final form of order approving the Sale Transaction(s) as agreed upon between the Debtors and the applicable Successful Bidder(s).

16.    <u>Bid Protections</u>.  The Debtors are hereby authorized and directed to pay, or cause to be paid, the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse APA and the Bidding Procedures, without further order of this Court. The dollar amount of the Break-Up Fee and Expense Reimbursement are hereby approved. The Stalking Horse Bidder shall be entitled to receive the Bid Protections in accordance with the terms and conditions of the Stalking Horse APA. The Debtors' obligation to pay the Bid Protections shall be the joint and several obligations of the Debtors and shall survive termination of the Stalking Horse APA, dismissal or conversion of any of the Chapter 11 Cases, and confirmation of any plan of reorganization or liquidation.

17.    Until paid, the Break-Up Fee or Expense Reimbursement shall constitute allowed superpriority administrative expense claim(s) arising in the Chapter 11 Cases under sections 503(b), 507(a)(2), and 507(b) of the Bankruptcy Code; *provided, however,* that such superpriority administrative expense claim(s) shall be subject to the Carve-Out and the Wind-Down Budget, and shall in no circumstance be *pari passu* with or senior to the claims granted to the DIP Credit Parties or the Prepetition Secured Creditors; *provided*, *further*, that any requirement that the Stalking Horse Bidder file a proof of claim for, or otherwise request allowance of, such superpriority administrative expense claim(s) is hereby waived.

18.    To ensure the funding of the Chapter 11 Cases, after paying in full in cash all DIP Obligations and Prepetition Secured Obligations (unless otherwise agreed to by each of the DIP Credit Parties and Prepetition Secured Creditors, all in their sole discretion) at the closing of a Sale Transaction, and after paying in full in cash all DIP Obligations and Prepetition Secured Obligations, the Debtors shall deposit into a segregated account any excess cash proceeds to fund the Wind-Down Budget.

19.     <u>Assumption and Assignment Procedures</u>.    The assumption and assignment procedures set forth in the Motion and as may be modified hereby (the "**Assumption and Assignment Procedures**") are hereby approved.

20.     <u>Potential Assumption and Assignment Notice</u>.    The Debtors shall (i) by no later than October 16, 2024, file with the Court and cause to be published on the Case Information Website, and (ii) as soon as reasonably practicable, and by no later than two (2) business days thereafter, serve on each relevant Counterparty, the Potential Assumption and Assignment Notice, which shall (a) include a list of the Potential Assumed Contracts (the "**Potential Assumed Contracts Schedule**") that specifies each of the Contracts and Leases that potentially could be assumed and assigned in connection with the sale of the Bid Assets, including the name of each Counterparty and the store number and physical address of the leased premises, (b) list the Debtors' good faith calculation of the Cure Costs with respect to the Potential Assumed Contracts identified on the Potential Assumed Contracts Schedule, (c) expressly state that assumption or assignment of an Assumed Contract or Assumed Lease is not guaranteed and is subject to designation by the Successful Bidder and Court approval, (d) prominently display the deadline to file an Assumption and Assignment Objection (as defined below), and (e) prominently display the date, time, and location of the Sale Hearing.

21.     Any (i) landlord Counterparty (and their counsel, if known) and (ii) other Counterparty  (and their counsel, if known) upon request by the Counterparty to the Debtors' counsel delivered not less than twenty-four (24) hours prior to the Bid Deadline, shall be provided with adequate assurance information relevant to the affected Counterparty as soon as practicable (by email if available or otherwise by first class mail), and no later than (i) twenty-four (24) hours after the Bid Deadline for delivery via email and (ii) one (1) business day after the Bid Deadline

for delivery via first class mail.   Any Counterparty that receives any adequate assurance information with respect to the Stalking Horse Bidder or any other Qualified Bidder shall keep such information strictly confidential and shall not disclose such information to any party.  Such Counterparty may not use or disclose, except to representatives, attorneys, advisors and financing sources ("**Representatives**"), any confidential adequate assurance information for any purpose other than: (a) evaluating whether adequate assurance of future performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code has been provided; and (b) in support of any Assumption and Assignment Objection by such counterparty. Any Representative receiving Adequate Assurance Information shall be notified of and shall be deemed to be bound by the restrictions set forth in this Order. If any Counterparty files an objection to the Sale that references confidential, non-public adequate assurance information in any way (an "**Adequate Assurance Objection**"), such Adequate Assurance Objection must be filed under seal unless disclosure of such confidential, non-public adequate assurance information is authorized by the Debtors and the applicable assignee(s).  The party filing an Adequate Assurance Objection under seal shall follow the procedures for the same set forth in Local Rule 9018-1(d), including, without limitation filing a motion to seal confidential and non-public information.  The unredacted versions of such Adequate Assurance Objections shall be served upon the Debtors, the other Assumption and Assignment Objection Notice Parties, the Consultation Parties and the U.S. Trustee; *provided* further that all rights of all parties in interest in the Chapter 11 Cases are reserved to oppose the filing under seal of any such information and to seek any other relief from this Court with respect to such matter.

22.    <u>Proposed Assumption and Assignment Notice</u>.  The Debtors shall, by no later than (i) the earlier of (a) twenty-four (24) hours after conclusion of the Auction (if any) and the selection

of the Successful Bid(s) and Alternate Bid(s) and (b) four (4) business days prior to the Objection

Deadline (as long as the Successful Bid(s) and Alternate Bid(s) have been selected at least 12 hours

prior to such time), file with the Court and cause to be published on the Case Information Website,

and (ii) two (2) business days after conclusion of the Auction (if any) and the selection of the

Successful Bid(s) and Alternate Bid(s), serve on each relevant Counterparty, a Proposed

Assumption and Assignment Notice, which shall (a) include a schedule of the Proposed Assumed

Contracts (the "**Proposed Assumed Contracts Schedule**") as agreed between the Debtors and the

applicable Successful Bidder, (b) expressly state that assumption or assignment of an Assumed

Contract or Assumed Lease is not guaranteed and is subject to Court approval, (c) prominently

display the deadline to file an Assumption and Assignment Objection, and (d) prominently display

the date, time, and location of the Sale Hearing.

     23.   <u>Assumption and Assignment Objection Deadlines</u>.  Any Counterparty may object

to the potential or proposed assumption or assignment of its Assumed Contract or Assumed Lease,

the Debtors' proposed Cure Costs, if any, or the ability of a Successful Bidder to provide adequate

assurance of future performance (an "**Assumption and Assignment Objection**").  All

Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy

Code, the Bankruptcy Rules, and the Local Rules, (c) state, with specificity, the legal and factual

bases thereof, including, if applicable, the Cure Costs the Counterparty believes are required to

cure any alleged defaults under the relevant Assumed Contract or Assumed Lease, (d)(i) for

Assumption and Assignment Objections relating to proposed Cure Costs, be filed no later than

**November 4, 2024 at 12:00 p.m. (prevailing Eastern Time)** (the "**Cure Objection Deadline**")

and (ii) for all other Assumption and Assignment Objections, **November 4, 2024 at 12:00 p.m.**

**(prevailing Eastern Time)** (the "**Assumption and Assignment Objection Deadline**"), and (e)

be served on (i) proposed counsel to the Debtors, (y) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick, Esq., Adam L. Shpeen, Esq., Stephen D. Piraino, Esq., Jonah A. Peppiatt, Esq., and Ethan Stern, Esq. (notice.biglots@davispolk.com) and (z) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq., Andrew R. Remming, Esq., Daniel B. Butz, Esq., Tamara K. Mann, Esq., and Casey B. Sawyer, Esq. (biglots.mnat@morrisnichols.com), (ii) counsel to the ABL Agent, (y) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola, Esq. (jventola@choate.com), Jonathan D. Marshall, Esq. (jmarshall@choate.com), and Jacob S. Lang, Esq. (jslang@choate.com), and (z) Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn: Regina Stango Kelbon, Esq. (regina.kelbon@blankrome.com) and Stanley Tarr, Esq. (stanley.tarr@blankrome.com), (iii) counsel to the Term Agent, (y) Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Chad B. Simon, Esq. (CSimon@otterbourg.com), James V. Drew, Esq. (JDrew@otterbourg.com), and Sarah L. Hautzinger, Esq. (shautzinger@otterbourg.com) and (z) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn: John H. Knight, Esq. (knight@rlf.com), (iv) proposed counsel to the Committee, (y) McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, NY 10017, Attn: Darren Azman, Esq. (dazman@mwe.com) and Kristin G. Going, Esq. (kgoing@mwe.com), and (z) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attn: Justin R. Alberto, Esq. (jalberto@coleschotz.com) and Stacy L. Newman, Esq. (snewman@coleschotz.com), (v) counsel to the Stalking Horse Bidder, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Christopher Marcus, P.C. (cmarcus@kirkland.com), Douglas A. Ryder, P.C. (douglas.ryder@kirkland.com), and Nicholas M. Adzima (nicholas.adzima@kirkland.com), and (vi) the U.S. Trustee, Caleb Boggs Federal

Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov) (collectively, the "**Assumption and Assignment Objection Notice Parties**").

24.     <u>Resolution of Assumption and Assignment Objections</u>.  If a Counterparty timely files an Assumption and Assignment Objection, such objection shall be heard at the Sale Hearing or such later date that the Debtors and the objecting Counterparty, in consultation with the Successful Bidder, shall determine (subject to the Court's calendar).  If a Counterparty timely files an Assumption and Assignment Objection relating to a proposed Cure Cost (a "**Cure Objection**"), such objection shall be heard at (a) the Sale Hearing or at a later date on at least seven (7) days' notice to the applicable Counterparty, or (b) such later date as the parties agree (subject to the Court's calendar). If such a Cure Objection or Assumption and Assignment Objection has not been resolved prior to the closing of the Sale Transaction (whether by an order of the Court or by agreement with the Counterparty), each Successful Bidder may elect, in its sole and absolute discretion, one of the following options:  (a) treat such Counterparty's contract or lease as property excluded from the Bid Assets (an "**Excluded Contract**" or "**Excluded Lease**," respectively) or (b) temporarily treat the Proposed Assumed Contract as an Excluded Contract or Excluded Lease, as applicable (a "**Designated Agreement**"), proceed to the closing of the Sale Transaction with respect to all other Bid Assets, and determine whether to treat the Designated Agreement as an Assumed Contract or Assumed Lease, as applicable, or an Excluded Contract or Excluded Lease, as applicable, within ten business days after resolution of such objection (whether by the Court's order or by agreement of the Counterparty, the Debtors, and the applicable Successful Bidder).

25.     <u>Failure To File Timely Assumption and Assignment Objection</u>.  If a Counterparty fails to timely and properly file with the Court and serve on the Assumption and Assignment

Objection Notice Parties a timely Assumption and Assignment Objection, the Counterparty shall be forever barred from asserting any such objection regarding the assumption or assignment of its Assumed Contract or Assumed Lease, the Debtors' proposed Cure Cost or the ability of the Successful Bidder to provide adequate assurance of future performance, with respect to the consummation or performance of the applicable Sale Transaction. Notwithstanding anything to the contrary in the Assumed Contract or Assumed Lease, or any other document, the Cure Costs set forth in the Potential Assumed Contracts Schedule or the Supplemental Assumed Contracts Schedule (as defined below) shall be controlling and shall be the only amount necessary to cure any alleged outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the Petition Date, whether known or unknown, due or to become due, accrued, absolute, contingent, or otherwise, and the Counterparty shall be forever barred from asserting any additional cure or other amounts with respect to prepetition defaults under such Assumed Contract or Assumed Lease against the Debtors, the Successful Bidder, or the property of any of them.

26.    Modification of Potential Assumed Contracts Schedule or Proposed Assumed Contracts Schedule.  In addition to the rights of a Successful Bidder described above with respect to an Assumption and Assignment Objection, at or prior to the closing of a Sale Transaction, each Successful Bidder may elect, in its sole and absolute discretion, to (a) exclude any Contract or Lease on the Potential Assumed Contracts Schedule (as amended or supplemented) (in which case it shall become an Excluded Contract or Excluded Lease, as applicable) or (b) include on the Proposed Assumed Contracts Schedule any Contract or Lease listed on the Potential Assumed Contracts Schedule (in each case, as amended or supplemented), by providing to the Debtors written notice of its election to exclude or include such Contract or Lease, as applicable. Within

two (2) days of receiving such notice from the Successful Bidder, the Debtors shall file with the Court a notice advising of the modification to the Potential Assumed Contracts Schedule or Proposed Assumed Contracts Schedule.

27.     If the Debtors or any Successful Bidder identify during the pendency of the Chapter 11 Cases (before or after the closing of the applicable Sale Transaction) any Contract or Lease that is not listed on the Proposed Assumed Contracts Schedule, and such Contract or Lease has not been rejected by the Debtors, such Successful Bidder may, in its sole and absolute discretion, elect by written notice to the Debtors to treat such Contract or Lease as an Assumed Contract or Assumed Lease, as applicable, and the Debtors may seek to assume and assign such Assumed Contract or Assumed Lease in accordance with the Assumption and Assignment Procedures.

28.     Following the conclusion of the Auction, if any, and the selection of the Successful Bidder(s), the Debtors reserve the right, at any time before the closing of the Sale Transaction(s), to modify the previously-stated Cure Costs associated with any Proposed Assumed Contract, subject to notice requirements in the Assumption and Assignment Procedures.

29.     In the event that any Contract or Lease is added to the Potential Assumed Contracts Schedule or the Proposed Assumed Contracts Schedule or previously-stated Cure Costs are modified, in accordance with the Assumption and Assignment Procedures, the Debtors shall promptly file, cause to be published on the Case Information Website, and serve a supplemental assumption and assignment notice, by email or ECF where available, or otherwise by first class mail, on the applicable Counterparty (each, a "**Supplemental Assumption and Assignment Notice**").  Each Supplemental Assumption and Assignment Notice shall (a) include a schedule of the modified Potential Assumed Contracts Schedule or Proposed Assumed Contracts Schedule (the "**Supplemental Assumed Contracts Schedule**"), (b) expressly state that assumption or

assignment of an Assumed Contract or Assumed Lease is not guaranteed and is subject to Court approval, (c) prominently display the deadline to file a Supplemental Assumption and Assignment Objection (as defined below), and (d) prominently display the date, time, and location of the Sale Hearing.

30.    Any Counterparty listed on a Supplemental Assumed Contracts Schedule whose Contract or Lease is proposed to be assumed and assigned may object to the proposed assumption or assignment of its Assumed Contract or Assumed Lease, the Debtors' proposed Cure Costs (to the extent modified from the previously-stated amount), or the ability of a Successful Bidder to provide adequate assurance of future performance (a "**Supplemental Assumption and Assignment Objection**"). All Supplemental Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs the Counterparty believes are required to cure any alleged defaults under the relevant Assumed Contract or Assumed Lease, (d) no later than **14 days from the date of service of such Supplemental Assumption and Assignment Notice**, (i) be filed with the Court and (ii) be served on the Assumption and Assignment Objection Notice Parties. Each Supplemental Assumption and Assignment Objection, if any, shall be resolved in the same manner as an Assumption and Assignment Objection.

31.    _Debtors' Reply Deadline_. All replies to any Sale Objection, Assumption and Assignment Objection or Cure Objection must be filed by 4:00 p.m. (prevailing Eastern Time) on November 6, 2024.

32.    _Reservation of Rights_. The inclusion of an Assumed Contract, an Assumed Lease, or, in each case, Cure Costs with respect thereto on a Potential Assumption and Assignment Notice, Proposed Assumption and Assignment Notice, Potential Assumed Contracts Schedule, Proposed

Assumed Contracts Schedule, Supplemental Assumption and Assignment Notice, or Supplemental Assumed Contracts Schedule shall not constitute, nor be deemed, a determination or admission by the Debtors, the Successful Bidder(s), or any other party in interest that such Contract or Lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code.  The Debtors (and to the extent necessary, the Successful Bidder) reserve all of their rights, claims, and causes of action with respect to each Assumed Contract and Assumed Lease listed on a Potential Assumption and Assignment Notice, Proposed Assumption and Assignment Notice, Supplemental Assumption and Assignment Notice, Potential Assumed Contracts Schedule, Proposed Assumed Contracts Schedule, or Supplemental Assumed Contracts Schedule.  The Debtors' inclusion of any Assumed Contract or Assumed Lease on a Potential Assumption and Assignment Notice, Proposed Assumption and Assignment Notice, Supplemental Assumption and Assignment Notice, Potential Assumed Contracts Schedule, Proposed Assumed Contracts Schedule, or Supplemental Assumed Contracts Schedule shall not be a guarantee that such Assumed Contract or Assumed Lease ultimately shall be assumed or assumed and assigned.

33.    <u>Miscellaneous.</u> Any Sale Transaction Fees[3] due to Guggenheim Securities, LLC ("**Guggenheim Securities**") as a result of the closing of any Sale Transaction shall be segregated and escrowed (for the exclusive benefit of Guggenheim Securities) from the net cash proceeds of such Sale Transaction received by the Debtors (after paying in full in cash all DIP Obligations and Prepetition Secured Obligations). If any Sale Transaction is the result of a Successful Bid (including on account of any successful credit bid) without a cash component sufficient to pay the

---

[3]    Capitalized terms used in this paragraph and not otherwise defined herein shall have the meanings ascribed to such terms in that certain engagement letter between Guggenheim Securities and the Debtors, dated as of May 20, 2024, a copy of which is being filed in connection with the Debtors' application to retain Guggenheim Securities, LLC.

corresponding Sale Transaction Fee due to Guggenheim Securities in full, then any resulting unpaid portion of the Sale Transaction Fee due to Guggenheim Securities shall be segregated and escrowed (for the exclusive benefit of Guggenheim Securities) at the closing of such Sale Transaction from the available cash of the Debtors. For the avoidance of doubt, nothing in this Order shall prohibit or be construed to prohibit the use of any unencumbered assets of the Debtors or the proceeds thereof to pay any fees and expenses of Guggenheim Securities or the assertion or allowance of an administrative priority claim under sections 503(b)(2) and 507(a)(2) of the Bankruptcy Code, if applicable, on account of any fees or expenses of Guggenheim Securities.

34.     The Official Committee of Unsecured Creditors (the "**Committee**") reserves the right to file a motion with the Court seeking an extension of the dates and deadlines herein in the event that the Committee determines that any interested party requires additional time to submit a bid; *provided* that the Committee shall first consult with the Debtors with respect to any such extension request and shall file such motion only to the extent that the Debtors have refused to consent thereto.

35.     Any Bankruptcy Rule or Local Rule that might otherwise delay the effectiveness of this Bidding Procedures Order is hereby waived, and the terms and conditions of this Bidding Procedures Order shall be effective and enforceable immediately upon its entry.

36.     The Debtors are authorized to take any action necessary or appropriate to implement and effectuate the terms of, and the relief granted in, this Bidding Procedures Order without seeking further order of the Court.

37.     Unless otherwise noted in this Bidding Procedures Order or the Bidding Procedures, all time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

38.     To the extent any provisions of this Bidding Procedures Order shall be inconsistent with the Motion, the Bidding Procedures, the Proposed Assumption and Assignment Notice, or the Potential Assumption and Assignment Notice, the terms of this Bidding Procedures Order shall control.

39.     The Court shall retain jurisdiction over any matter arising from or related to the implementation, interpretation, and enforcement of this Bidding Procedures Order.

**<u>Exhibit 1</u>**

**Proposed Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |

## BIDDING PROCEDURES

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**" or "**Big Lots**") are debtors and debtors in possession in the jointly administered chapter 11 cases (collectively, the "**Chapter 11 Cases**") currently pending in the United States Bankruptcy Court for the District of Delaware (the "**Court**") and have entered into that certain stalking horse Asset Purchase Agreement, dated September 8, 2024 (as amended, modified or supplemented, the "**Stalking Horse APA**")[2] with Gateway BL Acquisition, LLC (the "**Stalking Horse Bidder**").

Pursuant to the Stalking Horse APA, and subject to the terms and conditions thereof, the Stalking Horse Bidder has agreed to acquire all of the Debtors' Assets (as defined therein) from the Debtors and assume all of the Assumed Liabilities (as defined therein). To facilitate the Debtors' ability to attain the highest or otherwise best offer for their assets, and to maximize the value of their estates, on _____ __, 2024, the Court entered the *Order (I) Approving Bidding Procedures for Sale of Debtors' Assets, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (IV) Approving Form and Manner of Sale, Auction, and Sale Hearing, (V) Approving Assumption and Assignment Procedures, and (VI) Granting Related Relief* [D.I. [•]] (the "**Bidding Procedures Order**") pursuant to which the Bankruptcy Court, among other things, approved these bidding procedures (these "**Bidding Procedures**") to be employed to solicit bids for the purchase of all, substantially all, or a substantial portion of the Debtors' assets (including those assets contemplated for purchase under the Stalking Horse APA) (collectively,

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] A copy of the Stalking Horse APA is available free of charge on the Debtors' case information website located at https://www.cases.ra.kroll.com/BigLots. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Stalking Horse APA, the Motion, or the Bidding Procedures Order, as applicable.

the "**Bid Assets**"). A party may participate in the Bidding Process (as defined herein) by submitting a bid for (i) all or substantially all of the Bid Assets and/or (ii) one or more, or any combination of, Bid Assets as that party may desire. These Bidding Procedures also provide that the Debtors may consider competing bids (each, a "**Chapter 11 Plan Bid**") in the form of a chapter 11 plan of reorganization (a "**Chapter 11 Plan Transaction**"), subject to the requirements set forth herein.

**Any interested bidder should contact, as soon as practicable:**

**GUGGENHEIM SECURITIES, LLC**[3]
330 Madison Avenue
New York, NY 10017
Attn:
Adam.Rifkin@guggenheimpartners.com; (tel.) (212) 518-9070
Michael.Gottlieb@guggenheimpartners.com; (tel.) (212) 518-9607
Stuart.Erickson@guggenheimpartners.com; (tel.) (212) 518-9005

These Bidding Procedures describe, among other things, (i) the Bid Assets offered for sale, (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), respectively, (iii) the conduct of the Auction (as defined below), if necessary, (iv) the selection of the Successful Bidder(s) (as defined below), and (v) the approval by the Court of the sale of the Bid Assets to the Successful Bidder(s).

Throughout the Bidding Process, the Debtors, with the assistance of their advisors, will regularly and timely consult with the following parties (collectively, the "**Consultation Parties**"): (i) PNC Bank, National Association, solely in its capacity as DIP ABL Agent, Prepetition ABL Agent, and lender under the DIP ABL Facility and Prepetition ABL Facility (in such capacities, collectively, the "**ABL Agent**"); (ii) 1903P Loan Agent, LLC, solely in its capacity as DIP Term Agent, Prepetition Term Loan Agent, and lender under the DIP Term Loan Facility and Prepetition Term Loan Facility (in such capacities, the "**Term Agent**"); and (iii) any official committee appointed in the Chapter 11 Cases (the "**Committee**"), including in each case the legal and financial advisors thereto, as applicable. The Debtors will provide updates as reasonably appropriate to the Consultation Parties as to the status of the Bidding Process.

1.    **PARTICIPATION REQUIREMENTS**

(a)    **Interested Parties**

Unless otherwise ordered by the Court for cause shown, to participate in the bidding process described herein (the "**Bidding Process**"), each interested person or entity (each an "**Interested Party**") must deliver (unless previously delivered) the following items to Guggenheim Securities:

---

[3] Guggenheim Securities, LLC, in its capacity as the Debtors' investment banker, is referred to herein as "**Guggenheim Securities**."

    i.   an executed confidentiality agreement in form and substance satisfactory to the Debtors (a "**Confidentiality Agreement**");

    ii.   a statement and other factual support demonstrating, to the Debtors' satisfaction, that the Interested Party has a *bona fide* interest in purchasing some or all of the Bid Assets and which Bid Assets the Interested Party intends to acquire;

    iii.   a description of the nature and extent of any due diligence the Interested Party wishes to conduct and the date in advance of the Bid Deadline by which such due diligence will be completed; and

    iv.   sufficient information, as ascertained by the Debtors, to allow the Debtors, to determine that the Interested Party has the financial wherewithal and any required internal corporate, legal, or other authorizations to close a Sale Transaction pursuant to the Bidding Procedures, which may include current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtors) or, if the Interested Party is an entity formed for the purpose of acquiring some or all of the Bid Assets, (a) current audited financial statements of the equity holder(s) (the "**Sponsor(s)**") of the Interested Party (or such other form of financial disclosure acceptable to the Debtors) and (b) a written commitment acceptable to the Debtors that the Sponsor(s) are responsible for the Interested Party's obligations in connection with the Bidding Process.

      If the Debtors determine after receipt of the items identified above, that an Interested Party has a *bona fide* interest in purchasing some or all of the Bid Assets, such Interested Party will be deemed a "**Potential Bidder**" and the Debtors will provide such Potential Bidder with access to the Debtors' confidential electronic data room concerning the Bid Assets (the "**Data Room**"). Each of PNC Bank, National Association, solely in its capacity as the ABL Agent, and 1903P Loan Agent, LLC, solely in its capacity as the Term Agent, shall automatically be deemed a Potential Bidder and shall not be required to submit any of the foregoing information.

    **(b)**    <u>**Due Diligence**</u>

      Until the Bid Deadline, in addition to granting access to the Data Room, the Debtors will provide Potential Bidders with due diligence access and additional information as may be requested by a Potential Bidder, to the extent that the Debtors determine that such requests are reasonable and appropriate under the circumstances. All due diligence requests shall be directed to Guggenheim Securities. The Debtors, with the assistance of Guggenheim Securities, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.

      For any Potential Bidder that is a competitor of the Debtors (or an affiliate thereof), the Debtors reserve the right to withhold any diligence materials that the Debtors deem commercially

sensitive or otherwise not appropriate for disclosure to such Potential Bidder, or to require that the Potential Bidder enter into a "clean team" or similar arrangement acceptable to the Debtors in order to receive such diligence materials.

Unless otherwise determined by the Debtors, the availability of due diligence to a Potential Bidder will cease if (i) the Potential Bidder does not become a Qualified Bidder or (ii) the Bidding Process is terminated in accordance with its terms.

## 2.  **QUALIFIED BIDS**

Each offer, solicitation, or proposal by a Potential Bidder must satisfy each of the following conditions in order for such offer, solicitation, or proposal to be deemed a "**Qualified Bid**" and for such Potential Bidder to be deemed a "**Qualified Bidder**," unless any such conditions that are not satisfied are waived by the Debtors in consultation with the Committee:

### (a)  **Bid Deadline**

A Potential Bidder who desires to be deemed a Qualified Bidder must deliver to Guggenheim Securities, with a copy to Davis Polk & Wardwell LLP ("**Davis Polk**"), 450 Lexington Avenue, New York, NY 10017 (Attn: Brian M. Resnick, Adam L. Shpeen, Stephen D. Piraino, Jonah A. Peppiatt, and Ethan Stern), the Required Bid Documents (as defined below), so as to be received no later than **October 23, 2024 at 5:00 p.m. (prevailing Eastern Time) (**the "**Bid Deadline**").

The Debtors, without the need for further Court approval, may extend the Bid Deadline by a reasonable period of time, so long as such extensions are consistent with the DIP Milestones set forth in the DIP Credit Agreements or otherwise with the prior written consent of each DIP Agent, if the Debtors believe that such extension would further the goal of attaining the highest or otherwise best offer for the Bid Assets.

### (b)  **Bid Requirements**

All bids must include the following items (collectively, the "**Required Bid Documents**"):

- a letter stating that the bidder's offer is irrevocable until consummation of a transaction involving the Bid Asset(s) identified in such offer;

- other than for any Chapter 11 Plan Bid, a duly authorized and executed purchase agreement based on the form Stalking Horse APA, marked to show any revisions, including the purchase price for the subject Bid Assets, together with all exhibits and schedules thereto (including, a proposed form of order approving the transaction(s) contemplated in such purchase agreement).  For the avoidance of doubt, a "conceptual" or "issues list"-style markup of the form Stalking Horse APA would not satisfy this requirement;

- each Chapter 11 Plan Bid must be accompanied by an executed investment agreement, signed by an authorized representative of such bidder, pursuant to which the bidder proposes to effectuate the Chapter 11 Plan Transaction, in the form of a recapitalization transaction effectuated pursuant to a chapter 11 plan of reorganization, and must provide for a fully-committed investment of capital in exchange for substantially all of the equity of the reorganized Debtors;

- written evidence (i) demonstrating financial wherewithal, operational ability, and corporate authorization to consummate the proposed transaction and (ii) to the extent applicable, of a firm commitment for financing to consummate the proposed transaction, in both cases, acceptable to the Debtors in their sole discretion; and

- a written acknowledgment that the bidder (i) has had an opportunity to conduct any and all due diligence regarding the subject Bid Assets, the Sale Transaction, and/or a Chapter 11 Plan Transaction, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and any other information in making the bid, (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, by the Debtors or any of their advisors (including Guggenheim Securities, AlixPartners, and Davis Polk) or other representatives regarding the bid, the Bid Assets, the Sale Transaction, the Chapter 11 Plan Transaction, or the completeness or accuracy of any information provided in connection therewith or with the Auction, except, solely with respect to the Debtors and their estates, as expressly stated in these Bidding Procedures, and (iv) the bidder did not engage in any collusive conduct and acted in good faith in submitting its bid.

A bid will be considered only if the bid:

- identifies the legal name of the purchaser (including any Sponsor(s), if the purchaser is an entity formed for the purpose of consummating the proposed transaction);

- other than for a Chapter 11 Plan Bid, identifies the Bid Asset(s) to be purchased and the Contract(s) and Lease(s) to be assumed;

- other than for a Chapter 11 Plan Bid, clearly states which liabilities of the Debtors or the Bid Assets would be assumed;

- sets forth the consideration, including the form thereof, for the Bid Asset(s) to be purchased and the Contract(s) and Lease(s) to be assumed (the "**Bid Consideration**"); *provided* that, if not a Partial Bid, the consideration must be at least equal to the following:  (i) the consideration set forth in the Stalking Horse Bid; *plus* (ii) the aggregate amount of the Bid Protections (as defined below); *plus* (iii) $2,000,000 additional consideration set forth in the Stalking Horse Bid (the "**Minimum Overbid**");

- is not conditioned on (i) obtaining financing or (ii) further due diligence;

- includes a description of all governmental, licensing, regulatory, or other approvals or consents that are required to consummate the proposed transaction (including any antitrust approval related to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended), together with evidence satisfactory to the Debtors of the ability to obtain such approvals or consents as soon as reasonably practicable, and in no event later than 30 days after the submission of such Bid, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such approvals or consents;

- if not a Partial Bid, such bid is not materially more burdensome, less favorable, or more conditional than the terms of the Stalking Horse APA, as determined by the Debtors in their sole discretion;

- if not a Partial Bid, such bid includes a purchase price sufficient to pay in full in cash all DIP Obligations and Prepetition Secured Obligations or otherwise be agreed to by the DIP Credit Parties and the Prepetition Secured Creditors, all in their sole discretion;

- if a Partial Bid, the sum of all Partial Bids collectively results in a purchase price sufficient to pay in full in cash all DIP Obligations and Prepetition Secured Obligations or otherwise be agreed to by DIP Credit Parties and the Prepetition Secured Creditors, all in their sole discretion;

- expressly states that the bidder agrees to serve as an Alternate Bidder (as defined below) if such bidder's Qualified Bid is selected as the next highest or next best bid after the Successful Bid (as defined below) with respect to the Bid Assets;

- is accompanied by a cash deposit by wire transfer to an escrow agent selected by the Debtors (the "**Deposit Agent**") in an amount equal to ten percent (10%) of the consideration set forth in connection with such bid (any such deposit, a "**Good Faith Deposit**");

- sets forth the representatives that are authorized to appear and act on behalf of the bidder in connection with the proposed transaction;

- indicates that, with the exception of the Stalking Horse Bidder, the bidder will not seek any transaction or Break-Up Fee, Expense Reimbursement, or similar type of payment and that it waives any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code;

- includes evidence of the bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such bidder's ability to perform in the future under any Contract(s) and Lease(s) proposed in its bid to be assumed by the Debtors and assigned to the bidder, in a form that would permit the Debtors to disseminate immediately such evidence to the non-Debtor counterparties to such Contract(s) and Lease(s), which such adequate assurance information may include: (i) the specific name of the proposed assignee, the proposed name under which the proposed assignee intends to operate the store if not the current trade-name of the Debtors, (ii) a corporate organizational chart or similar disclosure identifying corporate ownership and control, (iii) audited or unaudited financial statements, tax returns, bank account statements or annual reports; (iv) the proposed assignee's intended use of the leased premises and a description of the proposed business to be conducted at the premises; (v) a contact person for the proposed assignee; and/or (vi) any other documentation that the Debtors may further request;

- indicates whether or not the bidder will assume all Cure Costs associated with any Contracts and Leases it intends to

assume; and

- is received on or before the Bid Deadline (as such deadline may be extended in accordance with these Bidding Procedures).

A bid received from a Potential Bidder will constitute a Qualified Bid only if it includes all of the Required Bid Documents and meets all of the above requirements (other than a credit bid described in Section 3 below), including, in the case of a Chapter 11 Plan Transaction, the structure, confirmability, and feasibility of any proposed chapter 11 plan (including the proposed time and costs estimated to be necessary to negotiate, document, and obtain confirmation of such proposed chapter 11 plan), as determined by the Debtors. The Debtors shall have the right to deem a bid a Qualified Bid even if such bid does not conform to one or more of the requirements above or does not include one or more Required Bid Documents; *provided* that such bid, or, in the case of a Partial Bid, the total amount of all Partial Bids, provides for a purchase price sufficient to pay in full in cash all DIP Obligations and Prepetition Secured Obligations or otherwise be agreed to by the DIP Credit Parties and the Prepetition Secured Creditors, in consultation with the Committee. The Debtors will be authorized to approve joint bids in their reasonable discretion on a case-by-case basis.

If the Debtors receive a bid prior to the Bid Deadline that is not a Qualified Bid, the Debtors may provide the bidder with the opportunity to remedy any deficiencies through and after the Bid Deadline. If any bid is determined by the Debtors not to be a Qualified Bid, and the applicable bidder fails to remedy such bid in accordance with these Bidding Procedures, the Debtors, to the extent applicable, shall promptly instruct the Deposit Agent to return such bidder's Good Faith Deposit. Notwithstanding the foregoing, the Stalking Horse Bidder shall be deemed a Qualified Bidder and the Stalking Horse Bid shall be deemed a Qualified Bid for all purposes in connection with these Bidding Procedures (including with respect to any Partial Bids), and the Stalking Horse Bidder shall, without any further action, be entitled to participate in any Auction, including with respect to any Partial Bids.

Notwithstanding any other provision of these Bidding Procedures, the Debtors may, in consultation with the Consultation Parties, evaluate bids on any grounds consistent with applicable law, including, but not limited to, (a) the amount of the purchase price, including non-cash consideration, set forth in the bid, (b) the value to be provided to the Debtors under the bid, (c) any benefit to the Debtors' estates from any assumption of liabilities or waiver of liabilities, including the release or replacement of letters of credit, (d) the transaction structure and execution risk, including conditions to and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approvals, (e) the anticipated timing to closing and whether such timing is consistent with the Debtors' adherence to the Approved Budget, (f) the impact on employees and employee claims against the Debtors, (g) the presence of any governmental, licensing, regulatory, or other approvals or consents in a bid, and the anticipated timing or likelihood of obtaining such approvals or consents, (h) the impact on trade and other unsecured, priority, and administrative claim creditors, and (i) any other factors the Debtors may reasonably deem relevant, in each case, consistent with their fiduciary duties and applicable bankruptcy law. For the avoidance of doubt, the presence of any governmental, licensing, regulatory, or other approvals or consents in a bid, and the anticipated

timing or likelihood of obtaining such approvals or consents, may be grounds for the Debtors in their sole discretion, in consultation with the Consultation Parties, to determine that such bid (y) is not a Qualified Bid or (z) is not higher or otherwise better than any other Qualified Bid.

By submission of its bid, each Qualified Bidder shall be deemed to acknowledge and represent that it (a) has reviewed, understands, and accepts these Bidding Procedures, (b) has consented to the jurisdiction of the Court, (c) intends to consummate its Qualified Bid if it is selected as the Successful Bidder, and (d) waives any and all rights (whether actual or potential) to contest any of the Debtors' determinations made during, or in connection with, any aspect of the Bidding Process.  Without the written consent of the Debtors, in consultation with the Consultation Parties, a Qualified Bidder may not amend, modify, or withdraw its Qualified Bid, except for proposed amendments to increase the amount or otherwise improve the terms of its Qualified Bid, during the period that such Qualified Bid is required to remain irrevocable.

3.    **CREDIT BID**

Pursuant to section 363(k) of the Bankruptcy Code and subject to the terms and conditions set forth in the DIP Order (including, for the avoidance of doubt, paragraphs 42 and 43 therein), the DIP Loan Documents, and the Prepetition Credit Documents, the DIP Credit Parties and the Prepetition Secured Creditors, consistent with the terms of the Intercreditor Agreement, shall have the right to credit bid up to the full amount of the applicable outstanding DIP Obligations and Prepetition Secured Obligations, as the case may be, in any bulk or piecemeal sale of all, substantially all, or any portion of the Bid Assets constituting DIP Collateral or Prepetition Collateral, as applicable; *provided* that any such credit bid must be submitted no later than the Bid Deadline and include cash consideration sufficient to satisfy the Carve Out, any senior liens on the collateral that is subject to the credit bid (except to the extent otherwise agreed by the holders of such senior liens in their sole and absolute discretion), and the applicable Bid Protections payable to the Stalking Horse Bidder.  If the DIP Credit Parties or the Prepetition Secured Creditors submit a credit bid in accordance with this Section 3, and such bid is received by the Bid Deadline, such bidder shall be deemed to be a Qualified Bidder and any such credit bid shall be deemed to be a Qualified Bid (without the need for any Good Faith Deposit or satisfying any other conditions set forth in Section 2).

4.    **WIND-DOWN BUDGET**

Notwithstanding anything contained in these Bidding Procedures, at the closing of a Sale Transaction, after paying in full in cash all DIP Obligations and Prepetition Secured Obligations, the Debtors shall deposit into a segregated account any additional net cash proceeds to be used for funding a reasonable wind-down budget negotiated in good faith (the "**Wind-Down Budget**").

5.    **BID PROTECTIONS**

Recognizing the Stalking Horse Bidder's expenditure of time, energy and resources in connection with the proposed transaction set forth in the Stalking Horse APA, and the benefit that those efforts provided to the Debtors, their estates and creditors, and all other parties in interest, the Debtors agreed to provide the following bid protections to the Stalking Horse Bidder, payable if the Debtors consummate a sale pursuant to a Qualified Bid other than the Stalking Horse Bid (if

the assets subject to such sale include those to which the Stalking Horse Bid relates):  (a) payment of a break-up fee in an amount equal to $7.5 million (the "**Break-Up Fee**") and (b) reimbursement of the reasonable and documented fees and out-of-pocket expenses actually incurred by the Stalking Horse Bidder (the "**Expense Reimbursement**" and, together with the Break-Up Fee, the "**Bid Protections**") in an amount up to $1.5 million; *provided* that the payment of any Break-Up Fee and/or Expense Reimbursement shall be (subject to the terms and conditions of the Stalking Horse APA and the DIP Order.

Until paid, the Break-Up Fee or Expense Reimbursement shall constitute allowed superpriority administrative expense claim(s) arising in the Chapter 11 Cases under sections 503(b), 507(a)(2), and 507(b) of the Bankruptcy Code; *provided, however,* that such superpriority administrative expense claim(s) shall be subject to the Carve-Out and the Wind-Down Budget, and shall in no circumstance be *pari passu* or senior to the claims granted to the DIP Credit Parties or the Prepetition Secured Creditors; *provided*, *further*, that any requirement that the Stalking Horse Bidder file a proof of claim for, or otherwise request allowance of, such superpriority administrative expense claim(s) is hereby waived.

6.    **AUCTION**

In the event that the Debtors timely receive more than one Qualified Bid, the Debtors shall conduct an auction (the "**Auction**") for the applicable Bid Assets.  The Auction shall be conducted in accordance with these Bidding Procedures and upon notice to all Qualified Bidders that have submitted Qualified Bids.  The Auction shall be conducted at the offices of Davis Polk, 450 Lexington Avenue, New York, NY 10017 on **October 28, 2024 at 10:00 a.m. (prevailing Eastern Time)**, or at such later time on such day or such other place as the Debtors, in consultation with each DIP Agent, shall notify all Participating Parties (as defined below).  If (a) no Qualified Bid other than the Stalking Horse Bid is submitted by the Bid Deadline for the Bid Assets comprising the Stalking Horse Bid, (b) multiple Partial Bids (as defined below) are submitted by the Bid Deadline for non-overlapping lots of the Bid Assets that, in the aggregate, do not exceed the amount of the Stalking Horse Bid for such Bid Assets, or (c) multiple Partial Bids are submitted by the Bid Deadline for non-overlapping lots of Bid Assets excluded from the Stalking Horse Bid, the Debtors may, in consultation with the Consultation Parties, elect to cancel the Auction and seek approval of the transactions contemplated in the Stalking Horse Bid and Partial Bids, as applicable, at the Sale Hearing (as defined below).

If any of the Qualified Bids submitted by the Bid Deadline are structured as a purchase of less than all or substantially all of the Debtors' assets (each such bid, a "**Partial Bid**"), the Debtors (in consultation with the Consultation Parties) may conduct separate auctions at the Auction for each lot of assets (each, an "**Auction Lot**") subject to a Partial Bid; *provided* that a Partial Bid may not be a bid solely for assignment of individual or lots of Contracts or Leases.  The Debtors may, in consultation with the Consultation Parties, combine multiple Partial Bids into an Auction Lot to compete against the Stalking Horse Bid *provided*, that the sum of all Partial Bids collectively results in a purchase price sufficient to pay in full in cash all DIP Obligations and Prepetition Secured Obligations or otherwise be agreed to by the DIP Credit Parties and the Prepetition Secured Creditors, all in their sole discretion.  The Debtors may designate each Auction Lot at any time prior to the Auction.

Only (i) representatives or agents (including legal and financial advisors) of the Debtors, (ii) the Consultation Parties, (iii) the Qualified Bidders (including the Stalking Horse Bidder), (iv) any Counterparty to a Contract or Lease subject to the Auction or (v) any other party in interest (provided that those persons in categories (iv) and (v) request attendance at least two days prior to the start of the Auction by emailing notice.biglots@davispolk.com, Attn.: Brian M. Resnick, Esq., Adam L. Shpeen, Esq.,  Stephen D. Piraino, Esq., Jonah A. Peppiatt, Esq., and Ethan Stern, Esq.) (collectively, the "**Participating Parties**"), will be entitled to attend the Auction (and, in the case of the parties listed in clauses (iv) and (v), such attendance shall be limited to Zoom or similar videoconference), and only Qualified Bidders will be entitled to make any Subsequent Bids (as defined below) at the Auction.

Prior to the Auction, the Debtors will (a) notify each Qualified Bidder that has timely submitted a Qualified Bid that its bid is a Qualified Bid and (b) provide all Qualified Bidders with (i) copies of the Qualified Bid or combination of Qualified Bids that the Debtors believe, in consultation with the Consultation Parties, is the highest or otherwise best offer (the "**Starting Bid**"), (ii) an explanation of how the Debtors value the Starting Bid, and (iii) a list identifying all of the Qualified Bidders.  For the avoidance of doubt, the Starting Bid may be comprised of multiple Qualified Bids if the aggregate consideration of such Qualified Bids is higher and better than the Stalking Horse Bid.  The Debtors shall also provide copies of such Starting Bid (marked against the Stalking Horse Bid) to all of the Qualified Bidders (including the Stalking Horse Bidder) and the Consultation Parties.

The Debtors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules for conducting the Auction (*e.g.*, the amount of time allotted to submit Subsequent Bids); *provided* that such rules shall (a) not be inconsistent with the Bankruptcy Code, the Bidding Procedures Order, or any other order of the Court entered in connection herewith and (b) be disclosed to all Qualified Bidders.

Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding in the presence of all parties at the Auction, so long as during each round at least one subsequent bid (a "**Subsequent Bid**") is submitted by a Qualified Bidder that (a) improves upon such Qualified Bidder's immediately prior Qualified Bid and (b) the Debtors, in consultation with the Consultation Parties, determine is (i) with respect to the first round, a higher or otherwise better offer than the Starting Bid and (ii) with respect to subsequent rounds, a higher or otherwise better offer than the Leading Bid, in each case taking into account other Qualified Bids for other Bid Assets; *provided* that, with respect to the first round, any Qualified Bid must provide incremental consideration at least equal to the Minimum Overbid.  In each subsequent round after the first round, the Debtors, in consultation with the Consultation Parties, may determine appropriate minimum bid increments or requirements for each round of bidding.

After the first round of bidding and between each subsequent round of bidding, as applicable, the Debtors, in consultation with the Consultation Parties, will determine and announce the bid or bids that they believe to be the highest or otherwise best offer or combination of offers (the "**Leading Bid**").  Additional consideration in excess of the amount set forth in the Starting Bid may include cash and/or non-cash consideration; *provided* that the value for such non-cash consideration shall be determined by the Debtors, in consultation with the Consultation Parties.

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and written confirmation of the Leading Bid.

Notwithstanding anything herein to the contrary, any Subsequent Bid by the Stalking Horse Bidder to the bid embodied in the Stalking Horse APA, in any and all rounds of bidding, will be deemed to be comprised of a credit in the full amount of the Break-Up Fee and Expense Reimbursement Amount plus a cash bid for the remainder of the Purchase Price.

For the purpose of evaluating Subsequent Bids, the Debtors may require a Qualified Bidder (other than the Stalking Horse Bidder) submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement acceptable to the Debtors in their sole discretion) demonstrating such Qualified Bidder's ability to close the proposed transaction.

The Debtors shall maintain a transcript of all bids made and announced at the Auction, including the Starting Bid(s), all Subsequent Bid(s), the Leading Bid(s), the Alternative Bid(s) (as defined below), and the Successful Bid(s).

If a Qualified Bidder increases its bid at the Auction and is the Successful Bidder or Alternate Bidder, such bidder must increase its Good Faith Deposit to an amount equal to ten percent (10%) of the proposed purchase price submitted at the Auction within two days after the Auction.

## 7.    <u>SELECTION OF SUCCESSFUL BID(S) AND ALTERNATE BID(S)</u>

Prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, shall (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the Bidding Process, including those factors affecting the speed and certainty of consummating the Sale Transaction and, in the case of a Chapter 11 Plan Transaction, the structure, confirmability, and feasibility of any proposed chapter 11 plan (including the proposed time and costs estimated to be necessary to negotiate, document, and obtain confirmation of such proposed chapter 11 plan), (b) determine and identify the highest or otherwise best offer or collection of offers (the "**Successful Bid(s)**"), (c) determine and identify the next highest or otherwise best offer or collection of offers (the "**Alternate Bid(s)**"), and (d) notify all Qualified Bidders participating in the Auction of (i) the identity of the party or parties that submitted the Successful Bid(s) (the "**Successful Bidder(s)**"), (ii) the amount and other material terms of the Successful Bid(s), (iii) the identity of the party or parties that submitted the Alternate Bid(s) (the "**Alternate Bidder(s)**"), and (iv) the amount and other material terms of the Alternate Bid(s).  Each Qualified Bidder shall agree and be deemed to agree to be the Alternate Bidder if so designated.  As soon as reasonably practicable after the conclusion of the Auction, the Successful Bidder(s) and the applicable Debtors shall complete and execute all agreements, instruments, and other documents necessary to consummate the applicable sale or other transaction(s) contemplated by the applicable Successful Bid(s).  Promptly following the selection of the Successful Bid(s) and Alternate Bid(s), the Debtors will file a notice of the Successful Bid(s) and Alternate Bid(s) with the Court, together with a proposed order approving the transaction(s) contemplated therein (the "**Sale Order**").

8.    **THE SALE HEARING**

The hearing to consider the proposed Sale Order (the "**Sale Hearing**") will be held on **November 8, 2024 at 10:30 a.m. (prevailing Eastern Time)**[4] before the Honorable Judge J. Kate Stickles, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, or by such other virtual or electronic means as may be determined by the Court.  The Sale Hearing may be adjourned by the Debtors, in consultation with the Consultation Parties by an announcement of the adjourned date at a hearing before the Court or by filing a notice on the Court's docket.  At the Sale Hearing, the Debtors will seek the Court's approval of the Successful Bid(s).

The Debtors' presentation to the Court of the Successful Bid(s) and Alternate Bid(s) will not constitute the Debtors' acceptance of such bid(s), which acceptance will only occur upon approval of such bid(s) by the Court.  Following the Court's entry of the Sale Order, the Debtors and the Successful Bidder(s) shall promptly proceed to consummate the transaction(s) contemplated by the Successful Bid(s).  If the Debtors and the Successful Bidder(s) fail to consummate the proposed transaction(s) and Alternate Bidder(s) (other than the Stalking Horse Bidder) have been previously identified, the Debtors shall file with the Court and post on the case website, *https://www.cases.ra.kroll.com/BigLots*, a Notice of Intent to Proceed with Alternate Bid(s), together with a copy of such Alternate Bidder's proposed purchase agreement and financial and other information regarding adequate assurance of future performance of the Contracts and Leases it intends to assume (including the name of such Alternate Bidder and description of its business), and serve the Notice of Intent to Proceed with Alternate Bid(s) on the Counterparties by overnight delivery and electronic mail (if known), and the Counterparties shall have seven (7) days from the date such Notice of Intent to Proceed with Alternative Bid(s) is filed to to file and serve on the Objection Notice Parties an objection solely on the basis of adequate assurance of future performance by such Alternate Bidder. If any objections are filed, the Debtors shall schedule a hearing, which may be expedited, upon reasonable notice under the circumstances (which shall be no less than seven (7) days after the Notice of Intent to Proceed with Alternate Bid(s) is filed), with respect to such objections. For the avoidance of doubt, any approval of an Alternate Bidder at the Sale Hearing shall be expressly subject to the right of Counterparties to object to the adequate assurance of future performance by such Alternate Bidder in accordance with this section. If the failure to consummate the transaction(s) contemplated by the Successful Bid(s) or Alternate Bid(s), as applicable, is the result of a breach by the Successful Bidder(s) or Alternate Bidder(s), as applicable (the "**Breaching Bidder(s)**") of its (their) asset purchase agreement(s), the Debtors reserve the right to seek all available remedies from such Breaching Bidder(s), subject to the terms of the applicable asset purchase agreement.

9.    **RETURN OF GOOD FAITH DEPOSIT**

The Good Faith Deposits of all Qualified Bidders will be held in escrow by the Deposit Agent and will not become property of the Debtors' bankruptcy estates unless released to the Debtors from escrow pursuant to the terms of the applicable escrow agreement or pursuant to further order of the Court.  The Deposit Agent will retain the Good Faith Deposits of the Successful

---

[4]  This date remains subject to Court approval.

Bidder(s) and the Alternate Bidder(s) until the consummation of the transaction(s) contemplated by the Successful Bid(s) or the Alternate Bid(s), as applicable, in accordance with Section 6 above, except as otherwise ordered by the Court.  The Good Faith Deposits (and all interest accrued thereon) of the other Qualified Bidders will be returned promptly following the conclusion of the Auction.  At the closing of the transaction contemplated by the Successful Bid(s), the Successful Bidder(s) will receive a credit in the amount of its Good Faith Deposit (plus all interest accrued thereon).  All remaining Good Faith Deposits of the Alternate Bidders (and all interest accrued thereon) held by the Deposit Agent will be released by the Deposit Agent four business days after the consummation of the transaction(s) contemplated by the Successful Bid(s), or as soon as reasonably practicable thereafter; *provided* that the Deposit Agent will retain the Good Faith Deposit of a Breaching Bidder pending a ruling by the Court as to the amount of damages owed, if any, by such Breaching Bidder to the Debtors.

Notwithstanding anything herein to the contrary, the terms under which the Stalking Horse Bidder provided a Good Faith Deposit, and the terms of its use, release and return to the Stalking Horse Bidder, will be governed by the Stalking Horse APA.

**10.    AS IS, WHERE IS**

The sale of the Bid Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or their estates, except, solely with respect to the Debtors and their estates, as provided in a purchase agreement, as approved by the Court (including the Stalking Horse APA).

**11.    FREE AND CLEAR OF ANY AND ALL INTERESTS**

Except as otherwise provided in the Stalking Horse APA or another Successful Bidder(s)'s purchase agreement, all of the Debtors' right, title, and interest in and to the Bid Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon (collectively, the "**Interests**") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Bid Assets with the same validity and priority as such Interests applied against the Bid Assets.

**12.    RESERVATION OF RIGHTS**

Except as otherwise provided in these Bidding Procedures or the Bidding Procedures Order, the Debtors reserve the right, consistent with applicable bankruptcy law and all other orders entered in the Chapter 11 Cases after consultation with the Consultation Parties, to:

- determine which Interested Parties are Potential Bidders;

- determine which bidders are Qualified Bidders;

- determine which bids are Qualified Bids;

- determine which Qualified Bid is the Starting Bid;

- determine which Qualified Bid is the highest or otherwise best offer for the Bid Assets and which is the next highest or otherwise best offer;

- reject any bid (other than the Stalking Horse Bid) that the Debtors deem to be (a) inadequate or insufficient, (b) not in conformity with the requirements of these Bidding Procedures or the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, or (c) contrary to the best interests of the Debtors and their estates;

- impose additional terms and conditions with respect to all Potential Bidders (other than the Stalking Horse Bidder);

- cancel the Auction;

- waive the terms and conditions set forth herein with respect to Potential Bidders

- extend the deadlines set forth herein, so long as such extensions are consistent with the DIP Milestones set forth in the DIP Credit Agreements or otherwise with the prior written consent of each DIP Agent; and

- modify these Bidding Procedures and implement additional procedural rules that the Debtors determine, in their sole discretion consistent with applicable bankruptcy law and all other orders entered in the Chapter 11 Cases, in consultation with the Consultation Parties, will better promote the goals of the Bidding Process and discharge the Debtors' fiduciary duties; *provided, however,* that nothing herein shall permit the Debtors to modify the Bidding Procedures to reduce the time provided for a party in interest to file an objection.

Nothing in these Bidding Procedures requires the Debtors' board of directors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent that the Debtors' board of directors determines that taking such action, or refraining from taking such action, is required to comply with applicable law or its fiduciary duties under applicable law. Accordingly, at any time prior to the Court's entry of a Sale Order, the Debtors may terminate the sale process and pursue an alternative transaction.

All Consultation Parties will be permitted to seek relief from the Court on an expedited basis if they disagree with any actions or decision made by the Debtors as part of these Bidding Procedures. The rights of all Consultation Parties with respect to all issues are expressly reserved and not modified, waived, or impaired in any way by these Bidding Procedures.

## 13.    RELEVANT DATES

| | |
|---|---|
| **October 21, 2024 at 1:30 p.m. (prevailing Eastern Time), or as soon thereafter as the Debtors may reasonably be heard** | Hearing to consider approval of the Bidding Procedures and Stalking Horse Bidder's Bid Protections for entry of the Bidding Procedures Order |
| **October 16, 2024** | Deadline for the Debtors to file Potential Assumed Contracts Schedule |
| **October 23, 2024 at 5:00 p.m. (prevailing Eastern Time)** | Bid Deadline |
| **October 28, 2024 at 10:00 a.m. (prevailing Eastern Time)** | Auction (if any) to be held at the New York offices of Davis Polk & Wardwell LLP |
| **The earlier of (i) twenty-four (24) hours after conclusion of the Auction (if any) and (ii) four (4) business days prior to the Objection Deadline** | Deadline for the Debtors to file with the Court the Notice of Successful Bidder and Proposed Assumption and Assignment Notice |
| **November 4, 2024 at 12:00 p.m. (prevailing Eastern Time)** | Deadline to object to the Sale Transaction with the Successful Bidder, the Assumption and Assignment Objection Deadline and the Cure Objection Deadline (together, the "**Objection Deadline**") |
| **November 6, 2024 at 4:00 p.m. (prevailing Eastern Time)** | Deadline for Debtors to Reply to Sale Objections, Assumption and Assignment Objections, and Cure Objections (if any) |
| **November 8, 2024 at 10:30 a.m. (prevailing Eastern Time) or as soon thereafter as the Debtors may reasonably be heard** | Hearing to consider approval of the Sale Transaction(s) and for entry of the Sale Order(s) |

## **Exhibit 2**

**Form of Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |

### NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**") on September 9, 2024.

**PLEASE TAKE FURTHER NOTICE** that, on September 9, 2024, the Debtors filed a motion (the "**Motion**") with the Court seeking entry of an order, among other things, approving (a) procedures for the solicitation of bids (the "**Bidding Procedures**") in connection with (i) the proposed sale of substantially all of the Debtors' assets to Gateway BL Acquisition, LLC (the "**Stalking Horse Bidder**") for approximately $760 million, consisting of $2.5 million in cash plus the Debt Payoff Amount (as defined in the Stalking Horse APA) and the assumption of certain liabilities, subject to the submission of higher or otherwise better offers, (ii) the Sale Transaction, and (iii) the Auction,[2] (b) the form and manner of notice related to the Sale Transaction, and (c) procedures for the assumption and assignment of Contracts and Leases in connection with the Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2024, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction and the Auction.  All parties

---

[1]  The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

interested in bidding should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

### Contact Persons for Parties Interested in Submitting a Bid

The Bidding Procedures set forth the requirements for submitting a Qualified Bid, and any person interested in making an offer to purchase some or all of the Bid Assets must comply strictly with the Bidding Procedures. Only Qualified Bids will be considered by the Debtors, in accordance with the Bidding Procedures.

**Any interested bidder should contact, as soon as practicable:**

**GUGGENHEIM SECURITIES, LLC**[4]
330 Madison Avenue
New York, NY 10017
Attn:
Adam.Rifkin@guggenheimpartners.com; (tel.) (212)518-9070
Michael.Gottlieb@guggenheimpartners.com; (tel.) (212)518-9607
Stuart.Erickson@guggenheimpartners.com; (tel.) (212)518-9005

### Obtaining Additional Information

Copies of the Motion and the Bidding Procedures Order, as well as all related exhibits (including the Bidding Procedures) and all other documents filed with the Court, are available free of charge on the Debtors' case information website located at *https://www.cases.ra.kroll.com/BigLots* or can be requested by email at BigLotsInfo@ra.kroll.com.

### Important Dates and Deadlines[5]

1. **Bid Deadline.** The deadline to submit a Qualified Bid is **October 23, 2024 at 5:00 p.m. (prevailing Eastern Time).**

2. **Auction.** In the event that the Debtors timely receive more than one Qualified Bid for the Bid Assets, and subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction for the Bid Assets. The Auction, if one is held, will commence on **October 28, 2024 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017.

---

[3] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

[4] Guggenheim Securities, LLC, in its capacity as the Debtors' investment banker, is referred to herein as "**Guggenheim Securities**."

[5] The following dates and deadlines may be extended by the Debtors, consistent with the terms of the DIP Credit Agreements, or the Court in accordance with the terms of the Bidding Procedures and the Bidding Procedures Order.

3. **Auction and Sale Objections Deadline**. The deadline to file with the Court an objection to the Sale Order, the conduct of the Auction, or the Sale Transaction (collectively, the "**Sale Objections**") is **November 4, 2024 at 12:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**").

4. **Assumption and Assignment Objection Deadline**. The deadline for Counterparties to file with the Court an objection to the potential or proposed assumption or assignment of their Assumed Contract or Assumed Lease, the Debtors' proposed Cure Costs, if any, or the ability of a Successful Bidder to provide adequate assurance of future performance is **November 4, 2024 at 12:00 p.m. (prevailing Eastern Time)** (the "**Assumption and Assignment Objection Deadline**").

5. **Sale Hearing**. A hearing (the "**Sale Hearing**") to consider the approval of Sale Transactions will be held before the Court on **November 8, 2024 at 10:30 a.m. (prevailing Eastern Time)**[6] or such other date as determined by the Court.

## Filing Objections

Sale Objections, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (d) be filed with the Court no later than the Sale Objection Deadline, and (e) no later than the Sale Objection Deadline, be served on (i) counsel to the Debtors, (y) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick, Esq., Adam L. Shpeen, Esq., Stephen D. Piraino, Esq., Jonah A. Peppiatt, Esq., and Ethan Stern, Esq. (notice.biglots@davispolk.com) and (z) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq., and Andrew R. Remming, Esq., Daniel B. Butz, Esq., Tamara K. Mann, Esq., and Casey B. Sawyer, Esq. (biglots.mnat@morrisnichols.com), (ii) counsel to the ABL Agent, (y) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola, Esq. (jventola@choate.com), Jonathan D. Marshall, Esq. (jmarshall@choate.com), and Jacob S. Lang, Esq. (jslang@choate.com) and (z) Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn: Regina Stango Kelbon, Esq. (regina.kelbon@blankrome.com) and Stanley Tarr, Esq. (stanley.tarr@blankrome.com), (iii) counsel to the Term Agent, (y) Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Chad B. Simon, Esq. (CSimon@otterbourg.com), James V. Drew, Esq. (JDrew@otterbourg.com), and Sarah L. Hautzinger, Esq. (shautzinger@otterbourg.com) and (z) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn: John H. Knight, Esq. (knight@rlf.com), (iv) proposed counsel to the Committee, (y) McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, NY 10017, Attn: Darren Azman, Esq. (dazman@mwe.com) and Kristin G. Going, Esq. (kgoing@mwe.com), and (z) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attn: Justin R. Alberto, Esq. (jalberto@coleschotz.com) and Stacy L. Newman, Esq. (snewman@coleschotz.com), (v) counsel to the Stalking Horse Bidder, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Christopher Marcus, P.C. (cmarcus@kirkland.com), Douglas A. Ryder, P.C. (douglas.ryder@kirkland.com), and Nicholas

---

[6] This date remains subject to Court approval.

M. Adzima (nicholas.adzima@kirkland.com), and (vi) the U.S. Trustee, Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov).

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Any party or entity who fails to timely make an objection to a Sale Transaction on or before the Sale Objection Deadline in accordance with the Bidding Procedures Order and this Notice shall be forever barred from asserting any objection to the Sale Transaction, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances, and other interests*.

## NO SUCCESSOR LIABILITY

*The assets sold in any Sale Transaction will be free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the Sale Transaction, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale Transaction.  Accordingly, as a result of a Sale Transaction, a Successful Bidder will not be a successor to any of the Debtors by reason of any theory of law or equity, and a Successful Bidder will have no liability, except as expressly provided in a definitive agreement reached between the Debtors and the applicable Successful Bidder, for any liens, claims, encumbrances, and other interests against or in any of the Debtors under any theory of law, including successor liability theories.*

*[Remainder of page intentionally left blank]*

Dated:    [●], 2024
              Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *[Draft]*_____
Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Tamara K. Mann (No. 5643)
Sophie Rogers Churchill (No. 6905)
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
tmann@morrisnichols.com
srchurchill@morrisnichols.com
csawyer@morrisnichols.com

-*and*-

DAVIS POLK & WARDWELL LLP

Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Jonah A. Peppiatt (admitted *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
stephen.piraino@davispolk.com
jonah.peppiatt@davispolk.com
ethan.stern@davispolk.com

*Counsel to the Debtors and Debtors in Possession*

## **Exhibit 3**

**Form of Potential Assumption and Assignment Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |

### NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNT

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**") on September 9, 2024.

**PLEASE TAKE FURTHER NOTICE** that, on September 9, 2024, the Debtors filed a motion (the "**Motion**") with the Court seeking entry of an order, among other things, approving (a) procedures for the solicitation of bids (the "**Bidding Procedures**") in connection with (i) the proposed sale of substantially all of the Debtors' assets to Gateway BL Acquisition, LLC (the "**Stalking Horse Bidder**") for approximately $760 million consisting of $2.5 million in cash plus the Debt Payoff Amount (as defined in the Stalking Horse APA) and the assumption of certain liabilities, subject to the submission of higher or otherwise better offers, (ii) the Sale Transaction and (iii) the Auction,[2] (b) the form and manner of notice related to the Sale Transaction, and (c) procedures for the assumption and assignment of Contracts and Leases in connection with the Sale Transaction (the "**Assumption and Assignment Procedures**").

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2024, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction, the Auction, and the Assumption and Assignment Procedures.

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

**PLEASE TAKE FURTHER NOTICE** that, upon the closing of the Sale Transaction, the Debtors intend to assume and assign to the Successful Bidder(s) the Potential Assumed Contracts. A schedule listing the Potential Assumed Contracts (the "**Potential Assumed Contracts Schedule**") is attached hereto and may also be accessed free of charge on the Debtors' case information website located at *https://www.cases.ra.kroll.com/BigLots* or can be requested by email at BigLotsInfo@ra.kroll.com. In addition, the amount necessary to cure any prepetition defaults thereunder (the "**Cure Costs**"), if any, necessary for the assumption and assignment of the Potential Assumed Contracts are set forth on the Potential Assumed Contracts Schedule. *Each Cure Cost listed on the Potential Assumed Contracts Schedule represents all liabilities of any nature of the Debtors arising under an Assumed Contract or Assumed Lease prior to the Petition Date, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the Petition Date.*

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A POTENTIAL ASSUMED CONTRACT**. Under the terms of the Assumption and Assignment Procedures, (a) at or prior to the closing of a Sale Transaction, a Successful Bidder may elect, in its sole and absolute discretion, to (i) exclude any Contract or Lease on the Potential Assumed Contracts Schedule (as amended or supplemented) (in which case it shall become an Excluded Contract or Excluded Lease, as applicable), or (ii) include on the Proposed Assumed Contracts Schedule any Contract or Lease listed on the Potential Assumed Contracts Schedule (as amended or supplemented), by providing to the Debtors written notice of its election to exclude or include such Contract or Lease, as applicable, (b) if the Debtors or any Successful Bidder identify during the pendency of the Chapter 11 Cases (before or after the closing of the applicable Sale Transaction) any Contract or Lease that is not listed on the Proposed Assumed Contracts Schedule, and such Contract or Lease has not been rejected by the Debtors, such Successful Bidder may, in its sole and absolute discretion, elect by written notice to the Debtors to treat such Contract or Lease as an Assumed Contract or Assumed Lease, as applicable, and the Debtors shall seek to assume and assign such Assumed Contract or Assumed Lease in accordance with the Assumption and Assignment Procedures, and (c) following the Auction, the Debtors may, in accordance with the applicable purchase agreement, or as otherwise agreed by the Debtors and the Successful Bidder(s), at any time before the closing of the Sale Transaction, modify the previously stated Cure Costs associated with any Proposed Assumed Contract in accordance with the Assumption and Assignment Procedures. The Assumption and Assignment Procedures further provide that any Counterparty whose previously-stated Cure Cost is modified will receive notice thereof and an opportunity to file a Supplemental Assumption and Assignment Objection. **The assumption and assignment of the Contracts and Leases on the Potential Assumed Contracts Schedule is not guaranteed and is subject to approval by the Court and the Debtors' or Successful Bidder's right to remove an Assumed Contract or Assumed Lease from the Potential Assumed Contracts Schedule and Proposed Assumed Contracts Schedule.**

<u>**Obtaining Additional Information**</u>

Copies of the Motion and the Bidding Procedures Order, as well as all related exhibits (including the Bidding Procedures) and all other documents filed with the Court, are available free

of charge on the Debtors' case information website located at *https://www.cases.ra.kroll.com/BigLots* or can be requested by email BigLotsInfo@ra.kroll.com.

## Filing Assumption and Assignment Objections

Pursuant to the Assumption and Assignment Procedures, any Counterparty may object to the potential or proposed assumption or assignment of its Assumed Contract or Assumed Lease, the Debtors' proposed Cure Costs, if any, or the ability of a Successful Bidder to provide adequate assurance of future performance (an "**Assumption and Assignment Objection**"). All Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs the Counterparty believes are required to cure any alleged defaults under the relevant Assumed Contract or Assumed Lease, (d)(i) for objections relating to proposed Cure Costs, be filed no later than **November 4, 2024 at 12:00 p.m. (prevailing Eastern Time)** (the "**Cure Objection Deadline**") and (ii) for all other objections, **November 4, 2024 at 12:00 p.m. (prevailing Eastern Time)** (the "**Assumption and Assignment Objection Deadline**"), and (e) be served on (i) proposed counsel to the Debtors, (y) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick, Esq., Adam L. Shpeen, Esq., Stephen D. Piraino, Esq., Jonah A. Peppiatt, Esq., and Ethan Stern, Esq. (notice.biglots@davispolk.com) and (z) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq., Andrew R. Remming, Esq., Daniel B. Butz, Esq., Tamara K. Mann, Esq., and Casey B. Sawyer, Esq. (biglots.mnat@morrisnichols.com), (ii) counsel to the ABL Agent, (y) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola, Esq. (jventola@choate.com), Jonathan D. Marshall, Esq. (jmarshall@choate.com), and Jacob S. Lang, Esq. (jslang@choate.com) and (z) Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn: Regina Stango Kelbon, Esq. (regina.kelbon@blankrome.com) and Stanley Tarr, Esq. (stanley.tarr@blankrome.com), (iii) counsel to the Term Agent, (y) Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Chad B. Simon, Esq. (CSimon@otterbourg.com), James V. Drew, Esq. (JDrew@otterbourg.com), and Sarah L. Hautzinger, Esq. (shautzinger@otterbourg.com) and (z) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn: John H. Knight, Esq. (knight@rlf.com), (iv) proposed counsel to the Committee, (y) McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, NY 10017, Attn: Darren Azman, Esq. (dazman@mwe.com) and Kristin G. Going, Esq. (kgoing@mwe.com), and (z) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attn: Justin R. Alberto, Esq. (jalberto@coleschotz.com) and Stacy L. Newman, Esq. (snewman@coleschotz.com), (v) counsel to the Stalking Horse Bidder, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Christopher Marcus, P.C. (cmarcus@kirkland.com), Douglas A. Ryder, P.C. (douglas.ryder@kirkland.com), and Nicholas M. Adzima (nicholas.adzima@kirkland.com), and (vi) the U.S. Trustee, Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov) (collectively, the "**Objection Notice Parties**").

Pursuant to the Assumption and Assignment Procedures, objections to the potential assumption and assignment of an Assumed Contract or Assumed Lease by a party whose Contract or Lease is listed on a Supplemental Assumed Contracts Schedule (a "**Supplemental Assumption and Assignment Objection**") with respect to the ability of a Successful Bidder to provide

adequate assurance of future performance or relating to the Cure Costs (to the extent modified form the previously-stated amount) must (a) be in writing, (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) by no later than **14 days from the date of service of such Supplemental Assumption and Assignment Notice,** (i) be filed with the Court and (ii) be served on the Objection Notice Parties.

Objections to the Sale Order, the conduct of the Auction, or the Sale Transaction, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (d) by no later than **November 4, 2024 at 12:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**") be (i) filed with the Court and (ii) served on the Objection Notice Parties.

## <u>CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION</u>

*Any Counterparty to a Contract or Lease who fails to timely make an objection to the potential assumption and assignment of such Contract or Lease, the Debtors' proposed Cure Costs or the ability of the Successful Bidder to provide adequate assurance of future performance on or before the Assumption and Assignment Objection Deadline in accordance with the Assumption and Assignment Procedures, the Bidding Procedures Order, and this Notice (or in the case of a Supplemental Assumption and Assignment Objection, by 14 days from the date of service of such Supplemental Assumption and Assignment Notice) shall be deemed to have consented to the assumption and assignment of such Contract or Lease, including the Cure Costs (if any), set forth on a Potential Assumed Contracts Schedule or a Supplemental Assumed Contracts Schedule, and shall be forever barred from asserting any objection or claims against the Debtors, the Successful Bidder, or the property of any such parties relating to the assumption and assignment of such Contract or Lease, including asserting additional Cure Costs with respect to such Contract or Lease.  Notwithstanding anything to the contrary in such Contract or Lease, or any other document, the Cure Costs set forth on a Potential Assumed Contracts Schedule or a Supplemental Assumed Contracts Schedule shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the Petition Date, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the Petition Date.*

## <u>Other Important Dates and Deadlines</u>[3]

In addition to the dates and deadlines described above with respect to filing Assumption and Assignment Objections, Cure Objections, and Supplemental Assumption and Assignment Objections, note the following important dates and deadlines:

---

[3] The following dates and deadlines may be extended by the Debtors, consistent with the terms of the DIP Credit Agreements, or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

1. **Auction.**  In the event that the Debtors timely receive more than one Qualified Bid for Bid Assets, and subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction for the Bid Assets.  The Auction, if one is held, will commence on **October 28, 2024 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017.

2. **Sale Hearing**.  A hearing to consider the approval of a proposed Sale Transaction will be held before the Court on **November 8, 2024 at 10:30 a.m. (prevailing Eastern Time)**,[4] or such other date as determined by the Court.

*[Remainder of page intentionally left blank]*

---

[4] This date remains subject to Court approval.

Dated:   [●], 2024
         Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL
LLP

/s/ *[Draft]*
Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Tamara K. Mann (No. 5643)
Sophie Rogers Churchill (No. 6905)
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
tmann@morrisnichols.com
srchurchill@morrisnichols.com
csawyer@morrisnichols.com

*-and-*

DAVIS POLK & WARDWELL LLP

Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Jonah A. Peppiatt (admitted *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
stephen.piraino@davispolk.com
jonah.peppiatt@davispolk.com
ethan.stern@davispolk.com

*Counsel to the Debtors and Debtors in
Possession*

**<u>Exhibit 4</u>**

**Form of Proposed Assumption and Assignment Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |

### NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNT

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**") on September 9, 2024.

**PLEASE TAKE FURTHER NOTICE** that, on September 9, 2024, the Debtors filed a motion (the "**Motion**") with the Court seeking entry of an order, among other things, approving (a) procedures for the solicitation of bids in connection with the Sale Transaction and the Auction (the "**Bidding Procedures**"),[2] (b) the form and manner of notice related to the Sale Transaction, and (c) procedures for the assumption and assignment of Contracts and Leases in connection with the Sale Transaction (the "**Assumption and Assignment Procedures**").

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2024, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction, the Auction, and the Assumption and Assignment Procedures.

**PLEASE TAKE FURTHER NOTICE** that, on **October 28, 2024 at 10:00 a.m. (prevailing Eastern Time),** the Debtors held an Auction at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017.

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

**PLEASE TAKE FURTHER NOTICE** that, upon the closing of the Sale Transaction, the Debtors intend to assume and assign to the Successful Bidder(s) the Proposed Assumed Contracts. A schedule listing the Proposed Assumed Contracts (the "**Proposed Assumed Contracts Schedule**") is attached hereto and may also be accessed free of charge on the Debtors' case information website located at *https://www.cases.ra.kroll.com/BigLots* or can be requested by email at BigLotsInfo@ra.kroll.com.  In addition, the amount necessary to cure any prepetition defaults thereunder (the "**Cure Costs**"), if any, necessary for the assumption and assignment of the Proposed Assumed Contracts are set forth on the Proposed Assumed Contracts Schedule. *Each Cure Cost listed on the Proposed Assumed Contracts Schedule represents all liabilities of any nature of the Debtors arising under an Assumed Contract or Assumed Lease prior to the Petition Date, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the Petition Date.* Pursuant to the Assumption and Assignment Procedures, all Assumption and Assignment Objections relating to a proposed Cure Cost (a "**Cure Objection**") must have been filed and served no later than **November 4, 2024 at 12:00 p.m. (prevailing Eastern Time)**, and a Counterparty's failure to timely and properly file and serve its Cure Objection shall be (a) deemed to have consented to the Cure Costs (if any) set forth on the Potential Assumed Contracts Schedule (or a Supplemental Assumed Contracts Schedule, if applicable) and (b) forever barred from asserting any Cure Objection against the Debtors, the Successful Bidder, or the property of any such parties relating to such Counterparty's Assumed Contract(s) or Assumed Lease(s).

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A PROPOSED ASSUMED CONTRACT**. Under the terms of the Assumption and Assignment Procedures, (a) at or prior to the closing of a Sale Transaction, the Successful Bidder(s) may elect, in their sole and absolute discretion, to (i) exclude any Contract or Lease on the Proposed Assumed Contracts Schedule (as amended or supplemented) (in which case it shall become an Excluded Contract or Excluded Lease, as applicable) or (ii) include on the Proposed Assumed Contracts Schedule any Contract or Lease listed on the Potential Assumed Contracts Schedule (as amended or supplemented), by providing to the Debtors written notice of its election to exclude or include such Contract or Lease, as applicable, (b) if the Debtors or the Successful Bidder(s) identify during the pendency of the Chapter 11 Cases (before or after the closing of the applicable Sale Transaction) any Contract or Lease that is not listed on the Proposed Assumed Contracts Schedule, and such Contract or Lease has not been rejected by the Debtors, such Successful Bidder(s) may, in their sole and absolute discretion, elect by written notice to the Debtors to treat such Contract or Lease as an Assumed Contract or Assumed Lease, as applicable, and the Debtors shall seek to assume and assign such Assumed Contract or Assumed Lease in accordance with the Assumption and Assignment Procedures, and (c) following the Auction, the Debtors may, in accordance with the applicable purchase agreement, or as otherwise agreed by the Debtors and the Successful Bidder(s), at any time before the closing of the Sale Transaction, modify the previously stated Cure Costs associated with any Proposed Assumed Contract in accordance with the Assumption and Assignment Procedures. The Assumption and Assignment Procedures further provide that any Counterparty whose previously-stated Cure Cost is modified will receive notice thereof and an opportunity to file a Supplemental Assumption and Assignment Objection. **The assumption and assignment of the Contracts and Leases on the Proposed Assumed Contracts Schedule is not guaranteed**

**and is subject to approval by the Court and the Debtors' or Successful Bidder's right to remove an Assumed Contract or Assumed Lease from the Proposed Assumed Contracts Schedule.**

### Obtaining Additional Information

Copies of the Motion and the Bidding Procedures Order, as well as all related exhibits (including the Bidding Procedures) and all other documents filed with the Court, are available free of charge on the Debtors' case information website located at *https://www.cases.ra.kroll.com/BigLots* or can be requested by email at BigLotsInfo@ra.kroll.com.

### Filing Objections

Pursuant to the Assumption and Assignment Procedures, objections to the proposed assumption and assignment of an Assumed Contract or Assumed Lease (an "**Assumption and Assignment Objection**") with respect to the ability of a Successful Bidder to provide adequate assurance of future performance must (a) be in writing, (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (c) state, with specificity, the legal and factual bases thereof (including, to the extent modified from the previously stated amount, the Cure Costs), (d) by no later than **November 4, 2024 at 12:00 p.m. (prevailing Eastern Time)** (the "**Assumption and Assignment Objection Deadline**"), (i) be filed with the Court and (ii) be served on (1) counsel to the Debtors, (y) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick, Esq., Adam L. Shpeen, Esq., Stephen D. Piraino, Esq., Jonah A. Peppiatt, Esq., and Ethan Stern, Esq. (notice.biglots@davispolk.com) and (z) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq., Andrew R. Remming, Esq., Daniel B. Butz, Esq., Tamara K. Mann, Esq., and Casey B. Sawyer, Esq. (biglots.mnat@morrisnichols.com), (2) counsel to the ABL Agent, (y) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola, Esq. (jventola@choate.com), Jonathan D. Marshall, Esq. (jmarshall@choate.com) and (z) Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn: Regina Stango Kelbon, Esq. (regina.kelbon@blankrome.com) and Stanley Tarr, Esq. (stanley.tarr@blankrome.com), (3) counsel to the Term Agent, (y) Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Chad B. Simon, Esq. (CSimon@otterbourg.com), James V. Drew, Esq. (JDrew@otterbourg.com), and Sarah L. Hautzinger, Esq. (shautzinger@otterbourg.com) and (z) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn: John H. Knight, Esq. (knight@rlf.com), (4) proposed counsel to the Committee, (y) McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, NY 10017, Attn: Darren Azman, Esq. (dazman@mwe.com) and Kristin G. Going, Esq. (kgoing@mwe.com), and (z) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attn: Justin R. Alberto, Esq. (jalberto@coleschotz.com) and Stacy L. Newman, Esq. (snewman@coleschotz.com), (5) counsel to the Stalking Horse Bidder, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Christopher Marcus, P.C. (cmarcus@kirkland.com), Douglas A. Ryder, P.C. (douglas.ryder@kirkland.com), and Nicholas M. Adzima (nicholas.adzima@kirkland.com), and (6) the U.S. Trustee, Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801. Attn: Linda J. Casey (linda.casey@usdoj.gov) (collectively, the "**Objection Notice Parties**").

Objections to the Sale Order, the conduct of the Auction, or the Sale Transaction, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (d) by no later than **November 4, 2024 at 12:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**") be (i) filed with the Court and (ii) served on the Objection Notice Parties.

A hearing to consider the approval of the proposed Sale Transaction(s) will be held before the Court on **November 8, 2024 at 10:30 a.m. (prevailing Eastern Time)**[3] or such other date as determined by the Court.

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Any Counterparty to an Assumed Contract or Assumed Lease who fails to timely make an objection to the proposed assumption and assignment of such Assumed Contract or Assumed Lease, the Debtors' proposed Cure Costs or the ability of the Successful Bidder to provide adequate assurance of future performance on or before the Assumption and Assignment Objection Deadline in accordance with the Assumption and Assignment Procedures, the Bidding Procedures Order, and this Notice (or in the case of a Supplemental Assumption and Assignment Objection, by 14 days from the date of service of such Supplemental Assumption and Assignment Notice) shall be deemed to have consented to the assumption and assignment of such Assumed Contract or Assumed Lease, including with respect to the ability of the Successful Bidder(s) to provide adequate assurance of future performance and the Debtors' proposed Cure Costs, to the extent modified from the previously stated amount, and shall be forever barred from asserting any objection or claims against the Debtors, the Successful Bidder(s), or the property of any such parties relating to the assumption and assignment of such Assumed Contract or Assumed Lease (including asserting additional Cure Costs with respect to such Assumed Contract or Assumed Lease).  Notwithstanding anything to the contrary in such Assumed Contract or Assumed Lease, or any other document, the Cure Costs set forth on the Proposed Assumed Contracts Schedule (as amended or supplemented) shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the Petition Date, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the Petition Date.*

*[Remainder of page intentionally left blank]*

---

[3] This date remains subject to Court approval.

Dated:    [●], 2024
          Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *[Draft]*_____
Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Tamara K. Mann (No. 5643)
Sophie Rogers Churchill (No. 6905)
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
tmann@morrisnichols.com
srchurchill@morrisnichols.com
csawyer@morrisnichols.com

-*and*-

DAVIS POLK & WARDWELL LLP

Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Jonah A. Peppiatt (admitted *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
stephen.piraino@davispolk.com
jonah.peppiatt@davispolk.com
ethan.stern@davispolk.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit 5</u>**

**Form of Notice of Successful Bidder**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |

### NOTICE OF SUCCESSFUL BIDDER FOR THE SALE OF THE DEBTORS' ASSETS

**PLEASE TAKE NOTICE** that, on September 9, 2024, the above-captioned Debtors filed the *Motion of Debtors for Entry of Orders (I) (A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures, (II) (A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [D.I. 18] (the "**Bidding Procedures Motion**").

**PLEASE TAKE FURTHER NOTICE** that on _____, 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures* [D.I. [•]] (the "**Bidding Procedures Order**")[2] by which the Court, among other things, approved procedures (the "**Bidding Procedures**") to be used in connection with (i) one or more sales of the Debtors' assets free and clear of all liens, claims, encumbrances, and other interests, and (ii) an auction (the "**Auction**")

---

[1]  The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2]   Capitalized terms use but not defined herein are defined in the Bidding Procedures Order.

pursuant to section 363 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures Order, the Court approved Gateway BL Acquisition, LLC, an affiliate of Nexus Capital Management LP as the Stalking Horse Bidder for certain of the Debtors' assets (the "**Acquired Assets**") pursuant to the Asset Purchase Agreement, dated as of September 8, 2024, by and among Big Lots, Inc. and each of its subsidiaries and the Stalking Horse Bidder (the "**Stalking Horse Bid**").

**PLEASE TAKE FURTHER NOTICE** that the bid deadline for competing Qualified Bids was October 23, 2024 at 5:00 p.m. (Prevailing Eastern Time) (the "**Bid Deadline**"), and the Auction was scheduled for October 28, 2024 at 10:00 a.m. (Prevailing Eastern Time). Prior to the Bid Deadline, the Debtors received [•] Qualified Bid[s] in addition to the Stalking Horse Bid.

[**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bidding Procedures and the Bidding Procedures Order, the Auction was held on October 28, 2024.]

[**PLEASE TAKE FURTHER NOTICE** that, at the conclusion of the Auction, the Debtors selected the bid from _____ (the "**Successful Bidder**") as the highest and best bid (the "**Successful Bid**"). The Debtors further selected the bid from _____ (the "**Alternative Bidder**") as the next highest or next best bid.]

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order, the Debtors are potentially assuming and assigning certain contracts and leases to the Successful Bidder (the "**Potential Assumed Contracts**"). The list of Potential Assumed Contracts will be filed with the Court in advance of the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale of the Acquired Assets to the Successful Bidder at the hearing currently scheduled for **November 8, 2024 at 10:30 a.m. (Prevailing Eastern Time)** before the Honorable Judge J. Kate Stickles, United States Bankruptcy Judge for the District of Delaware, at 824 North Market Street, 5th Floor, Courtroom #6, Wilmington, Delaware 19801. The hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that if you object to the Sale Transaction to the Successful Bidder or to the proposed assumption and assignment of an executory contract or unexpired lease or the proposed cure cost related to such assumption and assignment (each such objection, a "**Supplemental Sale Objection**"), your objection must (i) be in writing, (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules and any orders of the Court, (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor, and (iv) be filed with the Court and served so as to be actually received no later than November 4, 2024 at 12:00 p.m. (ET) by the following parties: (1) counsel to the Debtors, (y) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick, Esq., Adam L. Shpeen, Esq., Stephen D. Piraino, Esq., and Ethan Stern, Esq. (notice.biglots@davispolk.com) and (z) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq., Andrew R. Remming,

Esq., Daniel B. Butz, Esq., Tamara K. Mann, Esq., and Casey B. Sawyer, Esq. (biglots.mnat@morrisnichols.com), (2) counsel to the ABL Agent, (y) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola, Esq. (jventola@choate.com), Jonathan D. Marshall, Esq. (jmarshall@choate.com) and (z) Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn: Regina Stango Kelbon, Esq. (regina.kelbon@blankrome.com) and Stanley Tarr, Esq. (stanley.tarr@blankrome.com), (3) counsel to the Term Agent, (y) Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Chad B. Simon, Esq. (CSimon@otterbourg.com), James V. Drew, Esq. (JDrew@otterbourg.com), and Sarah L. Hautzinger, Esq. (shautzinger@otterbourg.com) and (z) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn: John H. Knight, Esq. (knight@rlf.com), (4) proposed counsel to the Committee, (y) McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, NY 10017, Attn: Darren Azman, Esq. (dazman@mwe.com) and Kristin G. Going, Esq. (kgoing@mwe.com), and (z) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attn: Justin R. Alberto, Esq. (jalberto@coleschotz.com) and Stacy L. Newman, Esq. (snewman@coleschotz.com), (5) counsel to the Stalking Horse Bidder, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Christopher Marcus, P.C. (cmarcus@kirkland.com), Douglas A. Ryder, P.C. (douglas.ryder@kirkland.com), and Nicholas M. Adzima (nicholas.adzima@kirkland.com), and (6) the U.S. Trustee, Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov).

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures Order and all related exhibits and other documents filed with the Court are available for review free of charge on the Debtors' Case Information Website, at https://www.cases.ra.kroll.com/BigLots.

*[Remainder of Page Intentionally Left Blank]*

Dated:  October [•], 2024
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *DRAFT*
Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Tamara K. Mann (No. 5643)
Sophie Rogers Churchill (No. 6905)
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
tmann@morrisnichols.com
srchurchill@morrisnichols.com
csawyer@morrisnichols.com

*-and-*

Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Jonah A. Peppiatt (admitted *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
stephen.piraino@davispolk.com
jonah.peppiatt@davispolk.com
ethan.stern@davispolk.com

*Counsel to the Debtors and Debtors in Possession*