**Exhibit C**

**Proposed Stalking Horse APA Amendment**

EXECUTION VERSION

# FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT

This FIRST AMENDMENT TO THE ASSET PURCHASE AGREEMENT (this "**Amendment**") dated as of October 14, 2024, is entered into by and between Big Lots, Inc., a company organized under the laws of the State of Ohio whose address is 4900 E. Dublin-Granville Road, Columbus, Ohio 430871 ("**Seller**"), and Gateway BL Acquisition, LLC, a Delaware limited liability company ("**Buyer**").  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement (as defined below).

## RECITALS

WHEREAS, the parties hereto and the other parties identified therein entered into the Asset Purchase Agreement, dated as of September 8, 2024 (the "**Agreement**");

WHEREAS, in accordance with Section 13.04 of the Agreement, the Agreement may not be amended except by a written agreement executed by both Buyer and Seller; and

WHEREAS, the parties hereto desire to amend the terms of the Agreement as set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

Section 1.    <u>Amendments to the Agreement</u>.  The Agreement is hereby amended as follows:

(a)    The definition of "**Expense Reimbursement**" set forth in Section 1.01 (*Definitions*) is hereby amended and restated in its entirety as follows:

"**Expense Reimbursement**" means an amount equal to the reasonable and documented out-of-pocket fees and expenses of Buyer in connection with the transactions contemplated by this Agreement, including all such fees and expenses related to negotiating this Agreement, or any of the other Definitive Documents, preparing to implement the transactions contemplated hereby and thereby, and investigating and evaluating the Selling Entities, the Business, the Assets and the Assumed Liabilities, up to a maximum amount of $1,500,000 (which amount shall increase to $2,000,000 following entry of the Bidding Procedures Order) if payable pursuant to Section 13.07(b)(ii)(B)(II) or $1,500,000 if payable pursuant to Section 13.07(b)(ii)(B)(I).  The Expense Reimbursement shall constitute an allowed superpriority administrative expense claim against the Selling Entities under sections 105(a), 503(b), and 507(a)(2) of the Bankruptcy Code with priority over all other administrative expenses of Sellers of the kind specified in section 503(b) of the Bankruptcy Code; *provided* that the priority of such superpriority administrative claims shall be subject in all respects to the interim and

Final Order approving the Selling Entities' post-petition financing and junior to the Carve-Out.

(b) Section 2.05 (*Cure Costs; Desired 365 Contracts*) of the Agreement is hereby amended and restated in its entirety as follows:

Section 2.05   *Cure Costs; Desired 365 Contracts.*

(a) Disclosure Schedule 2.05(a) sets forth a complete list as of the date hereof of all 365 Contracts that Buyer intends to assume at the Closing (as updated prior to the Closing pursuant to Section 2.05(c), the "**Desired 365 Contracts**"). Seller shall use commercially reasonable efforts to provide timely and proper written notice of the motion seeking entry of the Sale Order to all known parties to any executory Contracts or unexpired Leases to which the Selling Entities are a party that are Desired 365 Contracts and take all other reasonable actions reasonably necessary to cause such Contracts to be assumed by the applicable Selling Entity and assigned to Buyer (or its designee) pursuant to Section 365 of the Bankruptcy Code to the extent that such Contracts are Desired 365 Contracts at Closing; *provided* that no Selling Entity shall be required to make any payment or grant any accommodation in connection therewith other than the payment of Cure Costs relating thereto in accordance with this Section 2.05(a). Upon Closing, subject to the terms and conditions hereof, (i) Seller or its Subsidiaries, as applicable, will assign each Desired 365 Contracts to Buyer or its designee, (ii) Buyer (or such designee) will assume Liabilities under each Desired 365 Contract in accordance with Section 2.03(b) and pursuant to Section 365 of the Bankruptcy Code and the Sale Order, and (iii) Seller shall pay all Cure Costs relating thereto as and when finally determined by the Bankruptcy Court pursuant to the procedures set forth in the Sale Order.

(b) At any time prior to the Closing Date, but only to the extent consistent with the Bidding Procedures Order and the Bidding Procedures, Buyer will have the right, by written notice to Seller, to:

(i) designate a 365 Contract (including any 365 Contract that is a Desired 365 Contract immediately before such designation) as an Excluded Contract, and upon such designation such 365 Contract will constitute an Excluded Contract and Excluded Asset (and, if applicable, will cease to constitute an Asset); and

(ii) designate a 365 Contract as a Desired 365 Contract, and upon such designation such 365 Contract will constitute an Asset and Assigned Contract and will be conveyed to Buyer (or its designee) under this Agreement at Closing (and, if applicable, will cease to constitute an Excluded Asset), so long as (A) such 365 Contract is added to the Assigned Contracts prior to the entry of any Order of the Bankruptcy Court approving the rejection of such 365 Contract, and (B) the assumption and assignment has been or is approved by the Bankruptcy Court (including through the Sale Order).

(c) To the extent that Buyer makes a valid designation with respect to any 365 Contracts pursuant to Section 2.05(b), the applicable Exhibits and Schedules to this

Agreement will be deemed to have automatically been updated (without action of any Party or Person) to reflect such designation.

(d) If Buyer exercises its rights in Section 2.05(b) to designate a 365 Contract as a Desired 365 Contract or as an Excluded Asset (as the case may be), then the Parties acknowledge and agree that there will be no increase or reduction in (and such designation shall not otherwise affect) the Purchase Price as a result of such designation or change in designation, nor will there be any delay to the Closing.

(d) Section 7.10(b) (*Bankruptcy Court Milestones*) is hereby amended and restated in its entirety as follows:

(b) the Bankruptcy Court shall have entered the Bidding Procedures Order no later than October 22, 2024; and

Section 2. <u>Reference to and Effect on the Agreement</u>. Except as expressly amended by this Amendment, all of the terms, conditions and other provisions of the Agreement shall continue to be in full force and effect in accordance with their respective terms. No reference to this Amendment need be made in any instrument or document making reference to the Agreement, and any reference to the Agreement in any such instrument or document shall be deemed to refer to the Agreement as amended by this Amendment.

Section 3. <u>Miscellaneous</u>. Sections 13.02 (*Notices*), 13.03 (*Waiver*), 13.04 (*Entire Agreement; Amendment*), 13.05 (*Assignment*), 13.06 (*Severability*), 13.07 (*Expenses*), 13.09 (*Governing Law; Consent to Jurisdiction and Venue; Jury Trial Waiver*), 13.10 (*Counterparts*), 13.11 (*Parties in Interest; No Third Party Beneficiaries*) and 13.12 (*No Recourse*) of the Agreement shall apply to this Amendment to the same extent as if set forth herein, *mutatis mutandis*.

[*Signature Pages Follow*]

IN WITNESS WHEREOF, the parties have executed this Amendment as of the date first written above.

**BUYER:**

GATEWAY BL ACQUISITION, LLC

By: _____

   Name:

   Title:

[SIGNATURE PAGE TO FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT]

**SELLER:**

BIG LOTS, INC.

By: _____

    Name:

    Title: