## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Big Lots, Inc., *et al.,* [1] | Case No. 24-11967 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 16, 257, 258, 259**<br>**UST Obj. Deadline:  October 16, 2024**<br>**Hearing Date: October 21, 2024 at 1:30 p.m.** |

## UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO ASSUME THE SERVICES AGREEMENT, (II) AUTHORIZING STORE CLOSING SALES AND APPROVING RELATED PROCEDURES, AND (III) GRANTING RELATED RELIEF

Andrew R. Vara, the United States Trustee for Regions Three and Nine (the "United States Trustee"), in furtherance of the duties and responsibilities set forth in 28 U.S.C. § 586(a)(3) and (5) and pursuant to 11 U.S.C. §§ 307, 327, 503, and 363, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for this District, hereby files his objection to the Debtors' *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Assume the Services Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* (the "<u>GOB Sale Motion</u>")[2] (D.I. 16).  In support of

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182);CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400);GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC(9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] To the extent not otherwise defined herein, capitalized terms shall have the meaning assigned to them in the GOB Sale Motion and any other reference document or pleading.

his objection, the United States Trustee submits:

## PRELIMINARY STATEMENT

The United States Trustee does not have an objection *per se* to the Debtors exercising their business judgment to engage in "store closing sales." However, the United States Trustee objects to the "assumption" of the retention agreement with the professional who is being retained to provide advice to the Debtors regarding their GOB liquidation sales where that consultant and/or its affiliates hold interests adverse to the estates (including secured claims, unsecured claims, and potentially administrative claims).

The Debtors seek to retain Gordon Brothers Retail Partners, LLC (the "Liquidation Consultant") to serve as an agent to liquidate the Debtors' remaining assets at stores that the Debtors have elected to close. Because the Liquidation Consultant is serving purely as a professional, liquidating estate assets as part of a public sale process, the Liquidation Consultant's retention must be reviewed and approved under section 327(a) of the Bankruptcy Code ("section 327(a)") and Federal Rule of Bankruptcy Procedure 2014 ("Bankruptcy Rule 2014"). The requirements of section 327(a) and Bankruptcy Rule 2014 ensure that professionals who provide advice to the Debtors and administer assets of a debtor's estate – such as the Liquidation Consultant – will tender undivided loyalty and provide untainted advice in furtherance of their fiduciary responsibilities. Here, the Liquidation Consultant, as well as two liquidating professionals who have partnered with the Liquidation Consultant to provide services to the Debtors, all have various connections that would disqualify them to act as professionals to the estates, including their connections with affiliates holding secured claims, unsecured claims, and potentially administrative claims against the estates.

Even if the Court were to review the requested assumption of the agreement under Sections

363 and 365 of the Bankruptcy Code, the request must be denied. While the "business judgment" standard that generally applies to such matters is a relatively deferential standard, that standard does not apply when the action is tainted by a conflict of interest. Because the Liquidation Consultant's affiliates, and affiliates of the consulting firms retained by the Liquidation Consultant to assist it in providing services, hold secured claims, unsecured claims, and potentially administrative claims against the estates, they hold and/or represents interests adverse to the estates and are not disinterested, and it is an improper exercise of business judgement to retain these entities to oversee the liquidation of the Debtors' assets.

If the Liquidation Consultant and its syndicates are permitted to advise the Debtors regarding the sale of certain of the Debtors' assets, the Liquidation Consultant, its syndicates and their affiliates should be expressly prohibited from purchasing any assets of the Debtors.

## II.  <u>JURISDICTION</u>

1.      This Court has jurisdiction to hear the GOB Sales Motion and this objection.

2.      Pursuant to section 586 of title 28, U.S. Code, the United States Trustee is charged with overseeing the administration of Chapter 11 cases filed in this District. 28 U.S.C. § 586. Under section 586 and section 307 of the Bankruptcy Code, Congress charged the United States Trustee with broad responsibilities in Chapter 11 cases and the standing to rise and be heard on any issue in any case or proceeding. 11 U.S.C. § 307; *see also United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (the United States Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest)[3.]

---

[3] *See* H.R. Rep. No. 595, 95th Cong., 2d Sess. 88 (1977) (United States Trustees "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena.").

3.      Specifically, in accordance with 28 U.S.C. § 586(a)(3) and more specifically 28 U.S.C. § 586(a)(3)(I), the United States Trustee is charged with the duties and obligations to supervise the administration of cases and trustees in Chapter 11 cases, monitoring applications filed under section 327 of title 11 and, whenever the United States Trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications.

4.      Pursuant to 11 U.S.C. § 307, the United States Trustee has standing to be heard regarding the GOB Sales Motion.

## BACKGROUND AND RELEVANT FACTS

5.      On September 9, 2024, the Debtors commenced these Chapter 11 cases.

6.      On September 23, 2024, the United States Trustee appointed an Official Committee of Unsecured Creditors (D.I. 248).

7.      On September 9, 2024, the Debtors filed the GOB Sales Motion seeking, *inter alia*, interim and final approval of a motion under section 105(a), 363, 365, and 554 of the Bankruptcy Code authorizing the Debtors to assume the Services Agreement ("MSA"), where the Liquidation Consultant shall act as the exclusive agent for the purpose of conducting certain store closing GOB sales.

8.      Under the GOB Sales Motion, the Liquidation Consultant is proposed to act as the Debtors' exclusive agent for the purpose of conducting a sale of certain Merchandise and FF&E at the certain of the Debtors' stores.[4]  *See* GOB Sales Mot. Ex. A, Sch. 1 (MSA), Amendment 2, ¶ 1.

---

[4] The Liquidation Consultant obtained the *exclusive* right to provide these services to the Debtors through an Amendment to the MSA. The amendment to the MSA was a condition precedent to the entry into the Credit Agreement between the Debtors and 1903P Loan Agent, LLC, an affiliate of the Liquidation Consultant.

4

9.      The Debtors selected the Liquidation Consultant because it "has extensive experience, capabilities, and *expertise* in conducting going out of business and similar sales and can oversee, and assist in the management and implementation of, the Store Closing Sales and Store Closings in an efficient and cost-effective manner." GOB Sales Mot. ⁋ 29 (emphasis added).

10.     Through the GOB Sale Motion, the Debtors propose to retain the Liquidation Consultant to (i) recommend appropriate discounting and other strategies too effectively sell all of the Merchandise at closing stores; (ii) recommend  point-of-purchase, point-of sale, and other internal and external advertising to sell all of Debtors' goods; (iii) provide qualified supervision to oversee the conduct of the Store Closing Sales; (iv) maintain communication with store employees and managers; (v) designate FF&E that are not to be sold; and (vi) recommend appropriate strategies to effectively market and sell Offered FF&E. *Id.* ⁋15. Importantly, while the Debtors attach the MSA to the GOB Sale Motion, they do not attach the any Statements of Work ("<u>SOW</u>") that specify the services to be provided by the Liquidation Consultant.[5]

11.     The MSA states that the Liquidation Consultant will be paid as specified in an applicable SOW. MSA ⁋ 3.1. While no SOW is attached, the GOB Sale Motion states that the Liquidation Consultant will be compensated through a percentage fee of gross proceeds on the sale of Merchandise and a different percentage fee for the sale of FF&E. GOB Sale Mot. ⁋ 15.

---

[5] The proposed form of order provides, " BL Stores is authorized, on a final basis, to assume the Services Agreement pursuant to sections 363 and 365 of the Bankruptcy Code." GOB Sale Mot. Ex. B ("<u>Proposed Order</u>") ⁋ 4. The MSA provides that each SOW, upon execution, will be "automatically incorporated into" the MSA. MSA, ⁋ 1.24.

Further, the proposed form of order provides that, to the extent of any conflict between the MSA and the Store Closing Procedures, the MSA will control. Proposed Order ⁋ 3. Finally, the order permits the MSA to be modified, amended or supplemented by the parties thereto without further order of the Court provided that the interest of the landlords under the appliable Leases are not adversely affected. Proposed Order ⁋ 7.

12.     Under the GOB Sales Motion, the Debtors propose that the Liquidation Consultant shall have the right to supplement the Merchandise in the sale at the Stores with additional goods procured by the Liquidation Consultant which are of like kind and of no lesser quality than the Merchandise in the Sale at the Stores. The Debtors shall be entitled to an amount equal to 5% of the gross proceeds from the sale of the additional goods. *Id.*

13.     Under the GOB Sales Motion, the Debtors and the Liquidation Consultant propose to mutually indemnify each other for certain acts. *Id.*

14.     The MSA permits the Liquidation Consultant to utilize the services of an auctioneer to sell Offered FF&E. MSA, Amendment No. 1, ¶ 1 ("13.4.3 If applicable, any auctioneer may be paid its additional compensation by means of an industry-standard buyer's premium added to the "gavel" price of any sold Offered FF&E via online auction and collected from the buyers thereof.")

15.      The MSA also permits the Liquidation Consultant to partner with Hilco Merchant Resources and/or Tiger Group to provide a portion of the services. MSA, Amendment No. 2 ¶ V.

16.     The Liquidation Consultant is, presumably, authorized to negotiate "side letters" directly with the Debtors' landlords. *See id.* ("13.9 . . . Big Lots shall reimburse [Liquidation Consultant] for its reasonable and documented out-of-pocket legal fees and expense incurred in . . . the negotiation of any "side letters" with landlords of the Stores . . .").

17.     The Liquidation Consultant holds itself out as a professional. "With 30 offices and over 700 experienced *professionals* worldwide, we're ready where and when you need us . . . Gordon Brothers rapidly customizes solutions to help companies maximize assets, minimize liabilities . . . ." www.gordonbrothers.com/services/disposition-assets-for-sale.

18.     The MSA requires that the Liquidation Consultant maintain professional liability insurance. MSA, ¶ 9.1.

19.     In the GOB Sales Motion, the Debtors recognize that, if the MSA is not assumed, it will need to retain a separate professional to provide the services provided by the Liquidation Consultant. GOB Sale Mot. ¶ 29 ("If the [MSA] is not assumed, and the Debtors are forced to find another *professional* firm to assist them with the Store Closing Sales and Store Closings, the Debtors' estates would lose the benefit of the Consultant's preparations.") (emphasis added).

20.     The Liquidation Consultant has disclosed:

- The Liquidation Consultant's affiliates, 1903P Loan Agent, LLC and 1903 Partners, LLC (collectively, the "1903 Parties") are the administrative and collateral agent and a lender under the term loan facility dated April 18, 2024.

- The 1903 Parties are also the administrative agent and a lender under the Debtors' senior secured superpriority debtor-in-possession term loan agreement dated as of September 11, 2024.

- The Liquidation Consultant's affiliate, Gordon Brothers Commercial & Industrial, LLC, is an ordinary course seller of goods to the Debtors and is a creditor of the Debtors based on amounts outstanding on account of the sale of such goods.

*Declaration of Joseph Malfitano in Support of Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Assume the Services Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief,* Sch. 2.

21.     Tiger Capital Group, LLC ("Tiger"), a syndicate partner of the Liquidation Consultant, has disclosed:

- Its subsidiary and affiliate, Tiger Finance, LLC ("Finance"), is a lender under the term loan facility dated April 18, 2024.

- Tiger itself is a lender under the superpriority debtor-in-possession term loan agreement dated September 11, 2024.

- Tiger Valuation Services, LLC, Tiger's subsidiary, has provided appraisal services with respect to the Debtors for lender PNC Business Credit; the most recent appraisal provided to PNC was issued as of May 22, 2024.

- Tiger previously provided services related to store closing sales and fixture sales to the Debtors pursuant to agreements dated from October, 2002 through January, 2024.

- Tiger, in the ordinary course, has sold goods to one of the Debtors, but is not a creditor of the Debtors based on these interactions.

*Declaration of Mark P. Naughton in Support of Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Assume the Services Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, And (III) Granting Related Relief, Sch. 2.*

22.    Hilco Merchant Resources, LLC ("HMR"), a syndicate partner of the Liquidation Consultant, has disclosed:

- HMR executed a master services agreement in April 2023 with the Debtors.

- HMR's affiliate, Hilco Wholesale Solutions, LLC, has sold inventory to the Debtor Big Lots, Inc., and holds a claim against Big Lots, Inc., in the amount of $916,372.51. HMR does not disclose if this claim is entitled to administrative expense priority under Section 503(b)(9).

- HRM's affiliate, ReStore Capital (BIG), LLC, is a secured lender of the Debtors.

*Declaration of Eric W. Kaup in Support of Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Assume the Services Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief, Sch. 2.*

23.    The Debtors' proposed Bid Procedures permit the DIP Credit Parties to bid on all or any portion of the Bid Assets.

## **OBJECTION**

A.   **The Liquidation Consultant is a "Professional" and Cannot be Retained Because It Has a Disqualifying Conflict and/or Is Not Disinterested.**

24.   Section 327(a) of the Bankruptcy Code provides that the trustee or debtor-in-possession, "with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).   Additionally, Federal Rule of Bankruptcy Procedure 2014 provides, "[a]n order approving the employment of attorneys, accountants, appraisers, auctioneers, *agents*, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee." Fed. R. Bankr. P. 2014(a) (emphasis added).

25.   The purpose of section 327 is to ensure both that the person's employment is "held to the strictest of fiduciary standards and that the professional possesses no conflict of interest with the estate." *See In re Cornerstone Prods., Inc.*, 416 B.R. 591 (Bankr. E.D. Tex. 2008) ("The purpose of § 327(a) is to ensure that any auctioneer or other professional appointed to represent the estate will tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities."); *In re Buchanan*, 1998 WL 1041291, *2 (Bankr. E.D. Va. Aug. 11, 1998).   Among other things, the retention of professionals without a formal application process would impair full and fair disclosure of the terms of each professionals' engagement, and would deny parties in interest a full determination of whether the professional satisfies the "disinterestedness" and "adverse interest" standards under section 327(a).   To implement these statutory provisions, Bankruptcy Rule 2014 dictates the manner in which a professional is to be

9

retained under section 327 and requires that the application state, among other things, the specific facts showing the necessity for the employment, the reasons for the selection, and any connections with parties in interest. *See* Fed. R. Bankr. P. 2014.

26.     In the present case, the Debtors seek the services of the Liquidation Consultant to facilitate the liquidation of a substantial portion of the Debtors' remaining assets, contemplating the Liquidation Consultant as the "exclusive agent" to sell the assets and close many of the Debtors' locations.

27.     To properly be retained under section 327, the Liquidation Consultant must: (1) submit a section 327(a) application; (2) submit a declaration of disinterestedness pursuant to Federal Rule of Bankruptcy Procedure 2014; (3) not hold and/or represent an interest adverse to the estates and be disinterested; (4) disclose its fees; and (5) have its fees subject to court approval. Here, the Debtors seek to circumvent this process by assuming the agreement pursuant to Sections 363 and 365 of the Bankruptcy Code. This appears to be because, if the Liquidation Consultant, or any of its syndicate partners, attempted to be retained under section 327(a), that retention would be denied because they and/or their affiliates are all secured creditors, including creditors under the Debtors' DIP facility, and two of them and/or their affiliates hold prepetition unsecured (and potentially administrative priority) claims.

28.     The Debtors acknowledge that the Liquidation Consultant is going to provide services for compensation, and that those services relate to the liquidation of the Debtors' property outside the ordinary course of business, that they were retained because of their "extensive expertise," and that their services will include recommending the appropriate price to sell the goods, recommending the appropriate advertising of the sale, and supervising the conduct of the sale.

29.     HMR has been retained as a liquidator conducting GOB sales in past cases. *See In re Rockaway Bedding, Inc.*, Case No. 07-14890 (Bankr. D.N.J. May 11, 2007) (D.I. 240) ("The Debtors are authorized pursuant to Sections 327(a) and 328 of the Bankruptcy Code to retain and employ Hilco as their exclusive sales agent to market and sell the Debtors' assets in accordance with the terms and conditions reflected in the Agency Agreement[.]"); *In re Gadzooks, Inc.*, Case No. 04-31486 (Bankr. N.D. Tex. Feb. 26, 2004) (D.I. 209) ("**ORDERED,** pursuant to Section 327 of the Bankruptcy Code, the Debtor shall be, and hereby is, authorized to employ and retain Hilco, pursuant to the terms of the Hilco Agreement, to provide consulting services to the Debtor in connection with the Sales. Pursuant to Section 328 of the Bankruptcy Code, the Debtor is authorized to pay Hilco at the rates and on the terms set forth in the Hilco Agreement and in the Motion without the need for further order of the Court[.]").[6]

30.     The Liquidation Consultant and its syndicate partners, as the Debtors' agent conducting the liquidation of assets, cannot hold or represent interests adverse to the estates that may impact the Liquidation Consultant's ability to perform their services. Professionals who are secured creditors, unsecured creditors and potentially administrative creditors of the Debtors, and who are tasked with selling assets of the Debtors, have a disqualifying conflict of interest. Under section 327(a), Congress has mandated that professionals with disqualifying conflicts of interest may not be retained by bankruptcy estates.

31.     The premise that the Liquidation Consultant is a professional that needs to be retained under section 327 is based not only on a plain reading of section 327 and Fed. R. Bankr. P. 2014, but also on applicable case law.  First, Judge Glenn in *Borders* articulated a clear rule that

---

[6] For the avoidance of doubt, both *Rockaway* and *Gadzooks* involved retention of Hilco Merchant Resources, LLC.

even for *de minimis* asset sales, brokers, auctioneers, and liquidators need to file section 327 applications. *See In re Borders Group, Inc.*, 453 B.R. 477, 485 (Bankr. S.D.N.Y. 2011) ("Applications to retain brokers, auctioneers and liquidators to conduct *de minimis* asset sales are commonplace; it need not be an expensive or time-consuming process."). Here, where the GOB sales are a key component of the Debtors' restructuring strategy, the Liquidation Consultant should certainly file a section 327 application.

32.    In *In re First Merchants Acceptance Corp.*, No. 97-1500, 1997 WL 873551 (D. Del. Dec. 15, 1997), the Debtor sought approval of a servicing agreement between an entity that was an agent for the lender bank, and the Debtor. 1997 WL 873551 at *1. It was proposed that the entity would service the receivable portfolio not only of its agent bank, but also of other portfolios that comprised estate assets. *Id.* The Court sustained the United States Trustee's objection to the proposed retention, holding that the agent was a professional subject to section 327(a), but could not be retained because it was also an agent for the lender bank, and was therefore not disinterested. *Id.* at *5. In the *First Merchants* opinion, the United States District Court for the District of Delaware examined the case law on the subject and adopted a totality of circumstances approach to determining professional status, identifying factors for the court to consider when determining whether or not someone is a professional. The factors include the following:

> (1) whether the employee controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization, (2) whether the employee is involved in negotiating the terms of a Plan of Reorganization, (3) whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations; (4) whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate, i.e. the qualitative approach,

(5) the extent of the employee's involvement in the administration of the debtor's estate, i.e. the quantitative approach; and (6) whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a "professional" within the ordinary meaning of the term. 1997 WL 873551 at *3 (footnotes omitted).

33.    The *First Merchants* court found the agent to be a professional within the meaning of section 327(a), observing : "the type of work which [the agent] intends to perform for the Debtor is work that requires a specialized skill or knowledge, such that [the agent] can be considered a 'professional' within the ordinary and common sense meaning of the term." 1997 WL 873551 at *4.

34.    Examining the *First Merchants* factors in these cases shows that factors 1 and 3 through 6 weigh in favor of determining that the Liquidation Consultant is a professional.  First, the Debtors are entrusting the Liquidation Consultant with oversight and authority to dispose of its assets at many of its locations as it continues the GOB sales.  While only a subset of the Debtors' property, the continued liquidation of the assets at those locations was enough to prompt the Debtors to seek first-day approval of the GOB Sales Motion, and they have never expressed a position that disposition of the assets is insignificant to their reorganization strategy.  Second, Factor 3 also weighs in favor of determining that the Liquidation Consultant is a professional, as the store closings are extraordinary for the Debtors and they require tapping into the Liquidation Consultant's expertise and experience.  Third, Factor 4 also supports finding that the Liquidation Consultant is a professional, as the Debtors again are relying on its "extensive expertise" to recommend pricing and advertising as well as oversee employees.

35.    Factor 5 weighs in favor of treating the Liquidation Consultant as a professional, as the closing of the stores represent a significant amount of restructuring activity in the cases.

13

Finally, the Debtors acknowledgement of the Liquidation Consultant's "extensive expertise" demonstrate that the Liquidation Consultant's "services involve some degree of special knowledge or skill, such that the employee can be considered a 'professional' within the ordinary meaning of the term." *First Merchants*, 1997 WL 873551 at *3 (footnotes omitted). In fact, the Debtors state that if the MSA is not assumed, it will need to hire a *professional firm* to conduct the sales. GOB Sales Mot. ¶ 29.

36.    *In re Brookstone Holdings Corp.*, 592 B.R. 27, 29 (Bankr. D. Del. 2018), this Court determined that liquidation consultants are not "professionals" as contemplated by section 327(a). The United States Trustee posits that the court in *Brookstone* did not weigh the *First Merchants* factors appropriately, and that the Liquidation Consultant is a professional for the reasons set forth above.

### B.  The Assumption of the MSA Is Not a Proper Exercise of the Debtors' Business Judgment.

37.    Assuming that the Liquidation Consultant is not a professional, the Court should nevertheless deny assumption of the MSA. Where the Debtors have the discretion to exercise their business judgment, "[a] debtor in possession is bound by a duty of loyalty that includes an obligation to refrain from self dealing, to avoid conflicts of interests and the appearance of impropriety....[s]o long as the Debtor remains in possession, it is clear that the corporation bears essentially the same fiduciary obligation to the creditors as does the trustee for the Debtor out of possession." *In re Coram Healthcare Corp.*, 271 B.R. 228. 235 (Bankr. D. Del. 2001).

38.    The Third Circuit applies the business judgment standard in assessing the decision of a trustee or debtor in possession to assume or reject an executory contract.  *See Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp. (In re Sharon Steel)*, 872 F.2d 36, 39 (3d Cir. 1989).  But that

relatively deferential standard does not apply when the action is tainted by a conflict of interest. *See e.g., In re Classica Group*, 2006 WL 2818820 at *7 (Bankr. D.N.J. 2006) (citing *Maul v. Kirkman,* 270 N.J. Super 596, 614 (App. Div. 1994)).  Although the conflict of interest that would negate the protections of the business judgment rule is typically the conflict of management, the taint of any conflict of interest from any source in the transaction should justify a heightened standard for approval – or at least disavowal of a deferential one.  This is particularly true in bankruptcy, given that section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate" on behalf of the debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, LLC*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

39.     Courts that have determined that liquidation consultants are not "professionals" as contemplated by section 327(a) have nonetheless imposed additional obligations on liquidation consultants as part of the court's approval of relief sought like the instant motion. *In re Brookstone Holdings Corp.*, 592 B.R. 27, 29 (Bankr. D. Del. 2018).  *Brookstone* identified fulsome disclosure as part of the established practice to approve assumption of consulting agreements like the one here. *Id.* While the Liquidation Consultant and its syndicate partners have provided disclosure and informed parties in interest of their conflicting roles in these cases, retaining the Liquidation Consultant to conduct the GOB Sales is not an exercise of reasonable business judgment. Specifically, the facts as disclosed should preclude the Court from considering the relief sought on a deferential standard like business judgment and instead put the parties seeking approval to proof under a heightened standard of review.

40.     The Liquidation Consultant and its syndicate partners and/or their affiliates acting as (i) secured creditors, unsecured creditors, and potentially administrative claimants and (ii)

liquidation consultants create a disqualifying conflict of interest. Where there is a disqualifying conflict of interest, no amount of disclosure can act to permit approval of the tainted transaction. *See Coram Healthcare Corp.*, 271 B.R. at 239.  Here, a disqualifying conflict exists because the Liquidation Consultant, its syndicate partners and/or their respective affiliates, in their capacities as creditors, hold or represent interests adverse to the estates in the same matter that they are proposing to provide professional advisory services to the Debtors in connection with the GOB sales.

41.     If the Court is nevertheless inclined to approve the assumption of the Liquidation Agreement, the Liquidation Consultant, its syndicate partners, and/or their respective affiliates should be prohibited from purchasing any of the Debtors' assets.

42.     In *In re Abbotts Dairies of Pennsylvania*, 788 F.2d 143, 149-50 (3d Cir. 1986), the court stated:

> The requirement that a purchaser act in good faith...speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders, or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted).

43.     In determining good faith, the *Abbotts Dairies* court also stated:

> Finally, such a procedure ensures that section 363(b)(1) will not be employed to circumvent the creditor protections of Chapter 11, and, as such, it mirrors the requirement of section 1129 that the bankruptcy court independently scrutinize the debtor's reorganization plan and make a finding that it "has been proposed in good faith and not by any means forbidden by law.

788 F.2d at 150.

44.     The two-or-three-hat-role which the Liquidation Consultant and its syndicate partners seek in these cases is not indicative of good faith; the role calls for heightened scrutiny of the Debtors' proposal.

45.     As outlined above, the scope of the Liquidation Consultant's involvement in the sale process is significant and touches upon a bevy of sale issues, such as:  recommending sale strategies; recommending advertising; and communicating with store managers and employees. The Liquidation Consultant and its syndicate partners are, at present, in a position of significant influence over the ongoing sale process.  This position creates a direct actual conflict with the Liquidation Consultant, its syndicate partners, and/or their affiliates later becoming bidders for the Debtors' assets.  Accordingly, the Liquidation Consultant, its syndicate partners, and/or their respective affiliates should be prohibited from purchasing any of the Debtors' assets.

## RESERVATION OF RIGHTS

46.     The United States Trustee reserves any and all rights, duties and obligation found under law, equity and otherwise including, *inter alia*, complement, supplement, augment, alter and/or modify this objection, file a subsequent reply or objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery and cross-examine any

and all witnesses in support of the Motion.

## CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the Court sustain this objection, deny the GOB Sales Motion to the extent of the objection, and grant such other and further relief as the Court may deem just and proper.

Dated:  October 16, 2024
       Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**Regions 3 and 9**

By: */s/ Linda J. Casey*
    Linda J. Casey
    Trial Attorney
    United States Department of Justice
    Office of the United States Trustee
    J. Caleb Boggs Federal Building
    844 King Street, Suite 2207, Lockbox 35
    Wilmington, DE 19801
    (302) 573-6491 (Phone)
    (302) 573-6497 (Fax)
    Linda.Casey@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I, Linda Casey, hereby attest that on October 16, 2024, I caused to be served a copy of the

*United States Trustee's Objection to Motion of Debtors for Entry of Interim and Final Orders (I)*

*Authorizing Debtors to Assume the Services Agreement, (II) Authorizing Store Closing Sales and*

*Approving Related Procedures, and (III) Granting Related Relief s* by electronic service on the

registered parties via the Court's CM/ECF system and upon the following parties via electronic

mail:

| | |
|---|---|
| Morris, Nichols, Arsht & Tunnell LLP | Davis Polk & Wardwell LLP |
| Robert J. Dehney, Sr. | Brian M. Resnick |
| Andrew R. Remming | Adam L. Shpeen |
| Tamara K. Mann | Stephen D. Piraino |
| Sophie Rogers Churchill | Ethan Stern |
| Casey B. Sawyer (No. 7260) | 450 Lexington Avenue |
| 1201 N. Market Street, 16th Floor | New York, NY 10017 |
| Wilmington, DE 19801 | Tel.: (212) 450-4000 |
| rdehney@morrisnichols.com | brian.resnick@davispolk.com |
| aremming@morrisnichols.com | adam.shpeen@davispolk.com |
| tmann@morrisnichols.com | stephen.piraino@davispolk.com |
| srchurchill@morrisnichols.com | ethan.stern@davispolk.com |
| csawyer@morrisnichols.com | |
| | |
| Cole Schotz P.C. | Mcdermott Will & Emery |
| Justin R. Alberto | Darren Azman |
| Stacy L. Newman | Kristin K. Going |
| 500 Delaware Avenue, Suite 1410 | One Vanderbilt Avenue |
| Wilmington, DE 19801 | New York, NY, 10017 |
| jalberto@coleschotz.com | dazman@mwe.com |
| snewman@coleschotz.com | kgoing@mwe.com |

By:  /s Linda J. Casey
         Linda J. Casey, Esq.