**Exhibit A**

**Revised Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>Re: D.I. 12, 119 |

**FINAL ORDER AUTHORIZING (I) DEBTORS TO (A) CONTINUE AND RENEW THEIR LIABILITY, PROPERTY, CASUALTY, SURETY BOND, AND OTHER INSURANCE PROGRAMS, AND HONOR ALL OBLIGATIONS IN RESPECT THEREOF, (B) HONOR AND RENEW THE TERMS OF THE PREMIUM FINANCING AGREEMENTS AND PAY THE FINANCING AGREEMENT PAYMENTS THEREUNDER, AND (C) ENTER INTO NEW PREMIUM FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS AND (II) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the motion (the "**Motion**")[2] of Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for entry of interim and final orders, pursuant to sections 105(a), 363(b), and 364 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (a) authorizing, but not directing, the Debtors to (i) maintain, continue, review, purchase, renew or extend, and obtain, in their sole discretion, the

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Insurance and Surety Bond Programs through the Carriers[3] and the Sureties on an uninterrupted basis and in accordance with the same practices and procedures as were in effect before the Petition Date and (ii) pay all Insurance Obligations, Surety Bond Obligations, Broker Fees, and Administrator Fees, whether due and payable before, on, or after the Petition Date, (b) authorizing, but not directing, the Debtors to honor and renew the terms of the Premium Financing Agreements and pay the Financing Agreement Payments thereunder, (c) authorizing, but not directing, the Debtors to enter into new premium financing agreements in the ordinary course of business, and (d) authorizing the applicable financial institutions to receive, process, honor, and pay all checks or wire transfers used by the Debtors to pay the foregoing, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of the Chapter 11 Cases and related proceedings being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the Ramsden Declaration; and the Court having held a hearing, if necessary, to consider the relief requested in the Motion on a final basis (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and the

---

[3] For the avoidance of doubt, the term "Carrier" shall include all insurance carriers and third party administrators that issued or entered into Insurance Programs, whether or not such insurance carriers and third party administrators are identified on **Schedule 1** hereto.

Ramsden Declaration and at the Hearing, if any, establish just cause for the relief granted herein; and the Debtors having submitted that the relief requested in the Motion is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. The Motion is granted on a final basis to the extent set forth in this order (this "**Order**").

2. The Debtors are authorized, but not directed, to maintain, continue, amend, endorse, renew, supplement, extend, replace, and/or cancel, in their sole discretion, their Insurance and Surety Bond Programs (including (a) those Insurance Programs[4] and Surety Bond Programs listed on **Schedule 1** and **Schedule 2**, respectively, annexed hereto and (b) any general agreements of indemnity ("**Indemnity Agreements**") or Surety Indemnity Agreements) without interruption and in accordance with the same practices and procedures as were in effect prior to the Petition Date.

3. The Debtors are authorized, but not directed, to pay, in their sole discretion, (a) the Insurance and Surety Bond Obligations, including, but not limited to, (i) the Insurance Deductibles, (ii) the Surety Bond premiums, and (iii) any other related payments, fees, and obligations under the Insurance and Surety Bond Programs; (b) the Broker Fees; and (c) the Administrator Fees, if any, that may be owed in connection with the Insurance and Surety Bond Programs, whether due and payable before, on, or after the Petition Date.

---

[4] For the avoidance of doubt, the term "Insurance Programs" shall include all insurance policies issued or providing coverage at any time to any of the Debtors or their predecessors, whether expired, current, or prospective, and any agreements or documents related thereto, whether or not identified on **Schedule 1** hereto.

3

4. The Debtors are authorized, but not directed, to (i) renew or obtain, in consultation with the Official Committee of Unsecured Creditors (the "**Committee**"), new insurance policies, surety bonds, Indemnity Agreements, or Surety Indemnity Agreements or (ii) execute other agreements in connection with their Insurance and Surety Bond Programs, including upon the expiration or termination of any Insurance Program or Surety Bond Program.

5. The Debtors are authorized, but not directed, to (a) honor the terms of the Premium Financing Agreements and pay the Financing Agreement Payments thereunder, whether due and payable before, on, or after the Petition Date and (b) enter into, renew, amend, supplement, or extend premium financing agreements as necessary, to the extent that the Debtors determine, in consultation with the Committee, that such action is in the best interest of their estates; *provided*, that the Debtors shall provide notice of any renewal, amendment, supplement, or extension of an insurance policy, surety bond or financing agreement to counsel to the Committee within seven (7) days prior to the effective date of such execution, renewal, amendment, supplement, or extension.

6. The Debtors are authorized, but not directed, in their sole discretion, to continue to utilize the services of the Insurance Brokers, the Surety Broker, and the Logistics Provider in the ordinary course of business.

7. The Debtors are authorized, but not directed, in consultation with the DIP Agents (as defined in the Final DIP Order), to provide additional collateral as necessary and/or required under any prepetition or postpetition Indemnity Agreement and/or the Surety Bonds.

8. Notwithstanding anything to the contrary in the Premium Financing Agreements, the Debtors' filing of the Chapter 11 Cases shall not constitute a default under any Premium Financing Agreements.

9. Notwithstanding anything to the contrary in the Insurance and Surety Bond Programs or the Premium Financing Agreements, in the event the Debtors default under the terms of any Insurance and Surety Bond Program or Premium Financing Agreement, the Carrier, the Surety, or the Premium Financer (as applicable) shall not cancel or direct the cancellation of any insurance policy of the Debtors, any surety bond of the Debtors, or any Premium Financing Agreement without first providing (a) notice of such default in writing by overnight mail to the Debtors, their counsel, counsel to the Committee, and the U.S. Trustee and (b) the Debtors with at least ten business days to cure such default.  If the Debtors fail to cure the default within that time, then the Carrier, the Surety, or the Premium Financer (as applicable) may, in accordance with the terms of any applicable Insurance and Surety Bond Program or Premium Financing Agreement (as applicable), and without further order of the Court, exercise any and all of its rights under such Insurance and Surety Bond Program or Premium Financing Agreement (as applicable), including, with regard to a Premium Financer, directing the applicable Carrier to cancel the relevant Insurance Program, and the automatic stay, if and to the extent applicable, is hereby modified to the extent necessary to allow the Carrier, the Surety, or the Premium Financer (as applicable) to take all actions set forth in this paragraph.

10. Nothing in this Order or the Motion (a) alters, amends or modifies the terms and conditions of the Insurance Programs, including, but not limited to, (i) the obligation, if any, of any Carrier to pay defense costs and any amounts within an Insurance Deductible and the right, if any, of any Carrier to seek reimbursement from the Debtors therefor, and (ii) the obligation, if any, of the Debtors to reimburse any Carrier for defense costs and any amounts within an Insurance Deductible; (b) relieves the Debtors of any of their obligations under the Insurance Programs; (c) creates or permits a direct right of action against an Carrier; (d) precludes or limits, in any way,

5

the rights of any Carrier to contest and/or litigate the existence, primacy and/or scope of available coverage under the Insurance Programs; or (e) waives any Carriers' claims or rights against the Debtors, any of the Debtors' subsidiaries or affiliates, or any other person, entity, property or parties liable to such Carrier (whether under the Insurance Programs or otherwise).

11. All applicable banks and other financial institutions are hereby authorized to receive, process, honor, and pay any and all checks, drafts, wires, check transfer requests, or automated clearinghouse transfers evidencing amounts paid by the Debtors under this Order whether presented prior to, on, or after the Petition Date. Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

12. The Debtors are authorized, but not required, to (a) issue new post-petition checks or effect new fund transfers (in each case, in their sole discretion) for the Insurance and Surety Bond Obligations, the Broker Fees, the Administrator Fees, and the Financing Agreement Payments and to replace any prepetition checks or fund transfer requests that may be dishonored or rejected and (b) reimburse the Carriers, the Sureties, the Brokers, the Administrator, the Premium Financers, or the applicable payee, as the case may be, for any fees or costs incurred by them in connection with a dishonored or voided check or funds transfer.

13. Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and all of the Debtors' rights with respect to such matters are expressly reserved.

14. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

15. Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as or deemed to constitute (a) an agreement or admission by the Debtors as to the amount, priority, character, or validity of any claim against the Debtors on any grounds, (b) a grant of third-party beneficiary status or bestowal of any additional rights on any third party, (c) a waiver or impairment of any rights, claims, or defenses of the Debtors' rights to dispute the amount, priority, character, or validity of any claim on any grounds, whether under bankruptcy or non-bankruptcy law, (d) a promise by the Debtors to pay any claim, or (e) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

16. Any Bankruptcy Rule or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

17. The Debtors are authorized to take any action necessary or appropriate to implement and effectuate the terms of, and the relief granted in, this Order without seeking further order of the Court.

18. The Court shall retain jurisdiction over any matter arising from or related to the implementation, interpretation, and enforcement of this Order.