**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re: BIG LOTS, INC., *et al.*, Debtors.[1] | Chapter 11<br>Case No. 24-11967 (JKS)<br>(Jointly Administered)<br>**Re: Docket No. 210** |
|---|---|

**SUPPLEMENTAL DECLARATION OF STUART ERICKSON IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 327(A) AND 328(A) OF THE BANKRUPTCY CODE, AUTHORIZING THE RETENTION AND EMPLOYMENT OF GUGGENHEIM SECURITIES, LLC AS INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS-IN-POSSESSION, EFFECTIVE AS OF THE PETITION DATE, AND MODIFYING CERTAIN TIME-KEEPING REQUIREMENTS**

I, Stuart Erickson, hereby state and declare as follows:

1. I am a Senior Managing Director at Guggenheim Securities, LLC ("Guggenheim Securities"), an investment banking and financial advisory firm with principal offices located at 330 Madison Avenue, New York, New York 10017, as well as at other locations within the United States.

2. I submit this declaration (this "Supplemental Declaration") in support of the application (the "Application") of the debtors and debtors in possession in the above-captioned jointly administered Chapter 11 Cases (the "Debtors") for entry of an order approving the Debtors' retention and employment of Guggenheim Securities as their investment banker, effective as of the Petition Date, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code [Docket No. 210].

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

In connection with the Application, I also submitted an initial declaration (the "Initial Declaration") describing Guggenheim Securities' connections to the Debtors and other Potential Parties in Interest.[2] The Initial Declaration was appended to the Application as **Exhibit C**. Except as otherwise stated in this Supplemental Declaration, I have personal knowledge of or have relied upon the knowledge of others employed by Guggenheim Securities with respect to the matters set forth herein.[3] If called to testify, I could and would testify competently to the facts set forth herein.

**Guggenheim Primary Businesses**

3. Guggenheim Securities is a subsidiary of Guggenheim Partners, LLC ("Guggenheim Partners"), a global financial services firm. Guggenheim Partners' two primary businesses consist of (x) an investment management business, which primarily provides investment advisory services to third parties (i.e., parties that are neither direct nor indirect subsidiaries of Guggenheim Partners) (collectively, "Third Parties"), and (y) an investment banking and capital markets business, which is managed by Guggenheim Securities.[4] Since Guggenheim Partners principally functions as a holding company, such businesses are generally managed through several of Guggenheim Partners' subsidiaries, including, insofar as the investment banking and capital markets business is concerned, through Guggenheim Securities (all such subsidiaries, other than Guggenheim Securities, the "Separate Affiliates"). Guggenheim Securities is the only entity herewith being retained by the Debtors and none of the Separate

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings given to them in the Application or in the Initial Declaration, as the context requires.

[3] Certain information set forth herein relates to matters (i) contained in Guggenheim Securities' books and records and (ii) within the knowledge of other Guggenheim Securities' employees, and is based on information provided by such employees.

[4] Please refer to the Initial Declaration for a more detailed description of Guggenheim Securities' and its affiliates' businesses.

Affiliates will be retained to provide advisory services to the Debtors in connection with these Chapter 11 Cases.

**Business Separateness and Information Barriers**

4. Guggenheim Securities is a separate legal entity, is an SEC- and FINRA-regulated broker-dealer, and is the investment banking and capital markets business of Guggenheim Partners. Guggenheim Securities' investment banking and broker-dealer business is managed directly by Guggenheim Securities and not by the Separate Affiliates.

5. Moreover, Guggenheim Securities has implemented information barriers to, among other things, comply with existing federal securities laws that require the establishment of policies and procedures reasonably designed to protect and guard against the misuse of material non-public information in the possession of Guggenheim Securities' Investment Banking Department professionals. Stated more simply, Guggenheim Securities has information barriers in place between its Investment Banking Department professionals (which includes the professionals advising the Debtors in these Chapter 11 Cases), on the one hand, and the remainder of Guggenheim Partners and its affiliates (including the Separate Affiliates), on the other hand. These information barriers are required by, among other things, the SEC and FINRA and are subject to review and scrutiny by regulators.

6. These information barriers include functional, physical and technological barriers, and policies and procedures reasonably designed to prevent material non-public information from being shared improperly outside of Guggenheim Securities' Investment Banking Department. Other affiliates of Guggenheim Securities, including the Separate Affiliates, will, to the extent required by law or regulation, have similar policies and procedures in place reasonably designed to prevent sensitive information specific to their businesses from being shared improperly outside

of their respective businesses (including Guggenheim Securities) (all such policies and procedures, including those of Guggenheim Securities, collectively, the "Information Barriers and Handling of Confidential Information Policies"). Business and compliance personnel utilize surveillance to test the effectiveness of these information barriers.

7. Investment Banking Department professionals, as an example, execute investment banking engagements independently on a day-to-day basis and such professionals are different from the business professionals of the Separate Affiliates (with the exception of members of certain control groups, such as compliance, legal, IT and members of senior management, who are tasked with, among other things, general management responsibilities or supervising and monitoring the various businesses' compliance with the aforementioned information barriers and/or other policies and procedures of such businesses (collectively, "Control Persons")).

8. In addition to functional separation, these professionals are also subject to physical separation. Specifically, Investment Banking Department personnel are located in dedicated physical locations, subject to access controls (*i.e.*, locks, key cards), separate from non-Investment Banking Department personnel, including personnel at the Separate Affiliates.

9. Furthermore, pursuant to Guggenheim Securities' policies and procedures: (i) Investment Banking Department personnel are subject to certain clean desk requirements and shredding protocols; and (ii) the firm implements a secure deal folder system for digital storage of transaction documentation, where sensitive project-specific work is required to be stored. Each client project is assigned a transaction-specific secure deal folder that, save for certain Control Persons, is only accessible to Investment Banking Department professionals of the transaction team, and not to any professionals of any of the Separate Affiliates.

10. Guggenheim Securities utilizes a traditional compliance "control room" that captures and monitors the presence of material nonpublic information via the maintenance of firm-wide "watch" and "restricted" lists, including trade surveillance relating thereto. As part of Guggenheim Securities' firm-wide surveillance program, employee emails are routinely monitored for actual or suspected breaches of its policies' requirements, with any such breaches being escalated to the Investment Banking Department's appropriate Control Persons. As noted above, moreover, such policies and procedures are subject to periodic review and scrutiny by the firm's regulators.

**Restricted Access to Books and Records**

11. Given the general business separation and information barriers described above, save for limited circumstances, including as coordinated through Control Persons, Guggenheim Securities' business professionals cannot access the Separate Affiliates' books and records, and the Separate Affiliates' business professionals cannot access Guggenheim Securities' books and records.

12. Thus, in circumstances where certain of Guggenheim Securities' Control Persons are accorded restricted access to such of Guggenheim Securities' affiliates' books and records, the use and disclosure of any sensitive non-public information therein by such Control Persons remains subject to the applicable Information Barriers and Handling of Confidential Information Policies described above, which, for legal, regulatory or other reasons, prohibit such Control Persons from improperly sharing such sensitive information outside of the relevant affiliates' respective businesses.[5]

---

[5] As an example, the Investment Company Act of 1940 (which regulates specified investment companies, as well as their investment advisers and principal underwriters) – including Rule 17j-1 promulgated thereunder – and the Investment Advisers Act of 1940 (which regulates specified investment advisers) – including Section 204A thereof and Rule 204A-1 promulgated thereunder – specifically require specified investment companies and investment

13. Accordingly, in these circumstances, I am advised that even if Guggenheim Securities' professionals were granted access to the Separate Affiliates' books and records, such professionals would not thus be permitted to disclose herewith any such sensitive, non-public information identified therein; especially any such sensitive information pertaining to investments in the securities of Potential Parties in Interest held by funds, other investment vehicles or other client accounts managed by Guggenheim Securities' investment advisor affiliates, without the consent of such affiliates' clients or other relevant parties on account of whom such investments are held.[6]

**Supplemental Connections Disclosure**

14. As set forth in the Initial Declaration, prior to filing the Application, Guggenheim Securities researched certain of its internal databases to determine whether Guggenheim Securities had any connections with the entities identified by the Debtors as Potential Parties in Interest, and, accordingly, on **Schedule 2** to the Initial Declaration, Guggenheim Securities identified certain Potential Parties in Interest (or certain of their pertinent affiliates or instrumentalities) that are current or former investment banking clients of Guggenheim Securities.

15. At the request of the U.S. Trustee, **Updated Schedule 2** attached hereto now also identifies Potential Parties in Interest who were, or, if applicable, whose pertinent affiliates were, identified by Guggenheim Securities prior to filing the Application as current or former customers of Guggenheim Securities' Sales and Trading Department; vendors of Guggenheim Securities;

---

advisers (such as certain of Guggenheim Securities' investment advisor affiliates) to adopt codes of ethics and implement policies and procedures reasonably designed to, among other things, protect against the misuse of material non-public information and restrict the dissemination of client information.

[6] In addition, insofar as Guggenheim Securities' investment advisor affiliates are concerned, I am advised that such affiliates' investment management activities are conducted overwhelmingly on behalf of Third Parties.

and/or subjects of statements, investment recommendations or research reports made or published by Guggenheim Securities' Equity Research Department.

**Guggenheim Form 13F Report**

16. Finally, at the request of the U.S. Trustee, Guggenheim Securities also searched the most recently filed report on Form 13F that Guggenheim Partners' parent company, Guggenheim Capital, LLC, on behalf of itself and its other specified institutional investment manager subsidiaries (each, a "Guggenheim Form 13F Report"), filed with the U.S. Securities and Exchange Commission (on August 14, 2024) for the calendar quarter ended June 30, 2024, in order to determine whether such report includes securities of entities categorized as "Secured Lenders" or "Suppliers and Vendors" on the list of Potential Parties in Interest attached to the Initial Declaration as **Schedule 1**. To the extent that this inquiry identified any such securities, the names of the relevant issuers are listed on **Updated Schedule 2** attached hereto.

[*Remainder of page left intentionally blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Dated: October 17, 2024

**GUGGENHEIM SECURITIES, LLC**

*/s/ Stuart Erickson*
Stuart Erickson
Senior Managing Director