**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------x

In re:                                                :        Chapter 11
                                                      :
BIG LOTS, INC.,[1]                                    :        Case No. 24-11967 (JKS)
                                                      :
        Debtor.                         :        **Obj. Deadline: October 17, 2024 at 12:00 p.m. (ET)[2]**
                                                      :        **Hearing Date:  October 21, 2024 at 1:30 p.m. (ET)**
                                                      :        **Related to DI Nos. 20 & 114**

-----------------------------------------------------x

**LIMITED OBJECTION OF ARC ASANDSC001, LLC, ARC NWNCHSC001, LLC, AMERICAL MANAGEMENT CO. INC., ARAPAHOE CROSSINGS, LP, BRE RETAIL NP MEMPHIS COMMONS OWNER LLC, BRE RETAIL NP OWNER 1 LLC, BRE RETAIL RESIDUAL NC OWNER L.P., BRE RETAIL RESIDUAL SHOPPES AT VALLEY FORGE OWNER LLC, BRE RETAIL RESIDUAL OWNER 1 LLC, BRIXMOR COCONUT CREEK OWNER, LLC, BRIXMOR GA APOLLO II TX LP, BRIXMOR GA PANAMA CITY, LLC, BRIXMOR GA WASHTENAW FOUNTAIN, LLC, BRIXMOR HOLDINGS 12 SPE, LLC, BRIXMOR/IA CAYUGA PLAZA, LLC, BRIXMOR/IA RUTLAND PLAZA LLC, BRIXMOR LEHIGH SC LLC, BRIXMOR MIRACLE MILE, LLC, BRIXMOR WATSON GLEN LLC,  BRIXTON CAPITAL, CA NEW PLAN SARASOTA, LP, CALIFORNIA PROPERTY OWNER I, LLC, COUNTY LINE PLAZA REALTY ASSOCIATES, LP, CROSSPOINT REALTY SERVICES, INC., FEDERAL REALTY OP LP, FRENCH SHOPPING CENTER LLC, GERRITY GROUP, GREENBERG GIBBONS COMMERCIAL, HANFORD MALL 2020 LLC, KR COLLEGETOWN LLC, NS RETAIL HOLDINGS, LLC, NEWSEM TYRONE GARDENS PROPERTY OWNER LLC, PLAZA AT BUCKLAND HILLS, LLC, RD MANAGEMENT LLC, ROBHANA GROUP, STARWOOD RETAIL PROPERTIES, STERLING ORGANIZATION, THE CARRINGTON COMPANY, TRUSSVILLE PROMENADE I OWNER, LLC, VALUE INVESTMENT GROUP, INC., AND WATT COMPANIES, INC. TO MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS, PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, AND 552 (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN SENIOR SECURED SUPERPRIORITY POST-PETITION FINANCING AND (B) USE CASH**

---

[1]  The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin Granville Road, Columbus, OH 43081.

[2]  Extended by agreement of the parties.

**COLLATERAL, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) PROVIDING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

ARC ASANDSC001, LLC, ARC NWNCHSC001, LLC, Americal Management Co. Inc. Arapahoe Crossings, LP, BRE Retail NP Memphis Commons Owner LLC, BRE Retail NP Owner I LLC, BRE Retail Residual NC Owner L.P., BRE Retail Residual Shoppes at Valley Forge Owner LLC, BRE Retail Residual Owner 1 LLC, Brixmor Coconut Creek Owner, LLC, Brixmor GA Apollo II TX LP, Brixmor GA Panama City, LLC, Brixmor GA Washtenaw Fountain, LLC, Brixmor Holdings 12 SPE LLC, Brixmor/IA Cayuga Plaza, Brixmor/IA Rutland Plaza LLC, Brixmor Lehigh SC LLC, Brixmor Miracle Mile, LLC, Brixmor Watson Glen LLC, Brixton Capital, CA New Plan Sarasota, LP, California Property Owner I, LLC, County Line Plaza Realty Associates, LP, Crosspoint Realty Services, Inc., Federal Realty OP LP, French Shopping Center LLC, Gerrity Group, Greenberg Gibbons Commercial, Hanford Mall 2020 LLC, KR Collegetown LLC, NS Retail Holdings, LLC, Newsem Tyrone Gardens Property Owner LLC, Plaza at Buckland Hills, LLC, RD Management LLC, Robhana Group, Starwood Retail Properties, Sterling Organization, The Carrington Company, Trussville Promenade I Owner, LLC, Value Investment Group, Inc., and Watt Companies, Inc. (collectively, the "Landlords"), by and through their undersigned counsel, hereby file this limited objection (the "Limited Objection") to the *Motion of Debtors for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552 (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Post-Petition Financing and (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Providing Adequate Protection to Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "Financing Motion") [D.I. 20],[3] and respectfully represent as follows:

---

[3] Terms not otherwise defined herein shall have the meanings ascribed to them in the Financing Motion and accompanying documents.

2

## I.    BACKGROUND FACTS

1.    Big Lots, Inc., and their affiliated debtor entities (the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on September 9, 2024 (the "Petition Date").  The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[4]

2.    The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the locations (the "Centers") set forth on the attached Schedule A.

3.    Each Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3).  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4.    On September 10, 2024, the Court entered an order approving the Financing Motion on an interim basis [D.I. 114] (the "Interim Order").  The Interim Order excludes the Leases from the DIP Collateral, limiting such collateral to only the proceeds of the disposition of the Leases ("Lease Proceeds").  *See* Interim Order, ¶ 23(a).  Additionally, the Interim Order limits the DIP Lenders' access to the Premises in the event of a default under the DIP Credit Agreement by requiring the DIP Lender to seek relief from the automatic stay before enforcing such rights ("Access Limitation").  *See* Interim Order, ¶ 23(b).  Finally, the Interim Order preserves the respective rights of Debtors, DIP Lenders', and Landlords with respect to any insurance proceeds arising from loss or damage to Landlords' property ("Insurance Limitation").  *See* Interim Order, ¶ 23(a). (the Lease Proceeds, Access Limitation, and Insurance Limitation provisions, together with any other modifications to the Interim Order made at the request of Landlords, the "Landlord Protections").  The Interim Order includes a consolidated, summary 13-week budget, extending only through the week ending November 30, 2024 (the

---

[4]  Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

"Budget"), and provides that "proceeds of the DIP Facilities and the Cash Collateral shall be used . . . in accordance with the Approved Budget." *See* Interim Order, ¶ G(vii).

5.      Despite the Debtors' ongoing use and occupancy of the premises for the direct benefit of the DIP Lender, the Debtors have failed to pay post-petition rent for the period September 9, 2024 through September 30, 2024 (the "Stub Rent").  Based on discussions with counsel, Landlords believe Stub Rent is not included in the DIP Budget, and instead, would only be paid upon confirmation of a plan and emergence from bankruptcy, but it is not clear where the funds to do so would come from as the Budget runs only through the week ending November 30, 2024.

6.      Due to the consolidation of all expenses into a single "Total Operating Disbursements" line item, it is also unclear whether the Budget provides sufficient funds for the payment of all other additional post-petition rental obligations that may become due under the Leases pursuant to Section 365(d)(3) of the Bankruptcy Code through the rejection of such Leases (together with the Stub Rent, the "Post-Petition Rent"), including, but not limited to, October and November rent at all remaining locations, and for any bi-annual real estate taxes to be paid by the tenant, and other like charges that may arise outside of the monthly recurring rental obligations that have been budgeted.

7.      A proposed final order approving the Financing Motion (the "Proposed Final Order") has not been filed or provided to counsel for the Landlords, and as a result, Landlords cannot yet confirm that the Proposed Final Order maintains the Landlord Protections. To the extent the Proposed Final Order is modified to exclude, or there are material changes to the Landlord Protections previously negotiated, Landlords reserve all rights to raise objections to any provisions relating to liens on leases and/or access rights to the Premises at the final hearing.

8.      However, Landlords object to the approval of any 506(c) waiver for the benefit of the Debtors' lenders prior to the payment, budgeting, or otherwise providing for the Debtors' ability to pay the Post-Petition Rent, including the administrative Stub Rent, incurred in

these cases.  Debtors and their lenders must pay the freight of a bankruptcy in order to enjoy its benefits, sometimes known as "pay to play," and this case is no different.  The Debtors' lenders should not obtain the benefit of a 506(c) waiver unless and until Post-Petition Rent is paid or Landlords are provided with adequate protection of the Debtors' ability to pay the Post-Petition Rent.  The Debtors and their lenders are using the bankruptcy process to conduct store closing sales outside of the ordinary course of business in many locations that are otherwise impermissible at the Premises to their sole benefit (and detriment to the Centers and other shopping center tenants), all while simultaneously marketing the leases for sale or as part of an ongoing going-concern sale process.  This Court should not allow them to do so absent payment of all post-petition rent and charges for such use and occupancy.

## II.    ARGUMENT

### A.    Landlords are entitled to adequate protection for the Post-Petition Rent for the post-petition use and occupancy of the Premises as part of any Proposed Final Order.

9.    Landlords do not oppose the Debtors' need for the DIP Financing and the relief requested in the DIP Motion, provided the Landlord Protections are maintained in any further DIP order and Landlords receive adequate protection that they will receive payment of the Post-Petition Rent accrued under all Leases, regardless of whether the Leases are ultimately assumed or rejected.  Since the bankruptcy filing, Landlords have provided and continue to provide critical benefits to the Debtors and the Lenders in terms of their continued use of the Premises in order to operate the Debtors' business to maximize the value of the Lenders' collateral, secured storage of the Lenders' collateral, and payment of out of pocket expenses such as taxes, common area maintenance, utilities, and insurance.

10.    The Debtors recognize that their business is dependent on the ongoing use of their leased locations, and that Landlords are correspondingly critical to their potential success.  That fact notwithstanding, the current DIP Budget unfairly fails to budget for certain Post-Petition Rent, placing Landlords in a position unlike any other administrative creditor by

relegating Landlords to the position of an involuntary, unsecured, post-petition, interest-free lender to the Debtors in the amount of the unbudgeted Post-Petition Rent. This is the very result that Section 365(d)(3) was intended to counteract. See In re Warehouse Club, Inc., 184 B.R. 316, 318 (Bankr. N.D. Ill. 1994). The DIP Budget provides for the payment of other post-petition administrative expenses of these estates, including professional fees, and although it provides certain budgeted amounts for payment of post-petition Occupancy Costs, Landlords understanding is that the DIP Budget fails to provide for the payment of the Stub Rent at any time during these bankruptcy cases, and it is unclear whether the DIP Budget is sufficient to pay certain other post-petition Lease obligations, such as for bi-annual real estate taxes. The Proposed Final Order provides that the Debtors can only use the proceeds of the DIP Loans and Cash Collateral as provided by the DIP Budget, and the use of such proceeds and Cash Collateral in any manner that is not consistent with the DIP Budget is an event of default under the DIP Documents. As a result, if an expense is not included in the DIP Budget the Debtors cannot and will not pay it. (See Interim Order, ¶10)

11.     As a result, the ultimate payment of the Post-Petition Rent is at a risk that is not shared by other administrative creditors. While Landlords may not ever recover on account of the pre-petition rent that the Debtors have failed to pay, this Court should not also permit the Debtors to avoid paying for their post-petition use and occupancy of the Premises, while availing themselves of the benefits of the Bankruptcy Code (and simultaneously avoiding its obligations). There is ample support for Landlords' entitlement to adequate protection under the Bankruptcy Code.

12.     Adequate protection for the Post-Petition Rent is warranted as a condition of a sale or plan that involves the use of the Premises under Section 363(e), which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, *the court, with or without a hearing, shall prohibit or condition such*

> *use, sale, or lease as is necessary to provide adequate protection*
> *of such interest. . . .*

11 U.S.C. § 363(e) (emphasis added).

13.    Section 363(e) provides a basis to grant adequate protection to real property lessors in the form of budgeting for the payment of or reserving for the Post-Petition Rent.  See, e.g., Matter of Cont'l Airlines, Inc., 154 B.R. 176, 180 (Bankr. D. Del. 1993) (finding that adequate protection is available under § 363(e) for a decrease in value due to the use, sale, *or lease* of an entity's interest in property) (emphasis added); In re P.J. Clarke's Rest. Corp., 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) (providing that a "landlord's right to adequate protection seems to follow clearly from the language of Section 363(e)"); In re Ernst Home Center, Inc., 209 B.R. 955, 966-67 (Bankr. W.D. Wash. 1997) (finding that adequate protection is available to real property lessors under Section 363(e)); In re RB Furniture, Inc., 141 B.R. 706, 713-14 (Bankr. C.D. Cal. 1992) (adequate protection under Section 363(e) may even be broader than the rights encompassed under Section 365(d)(3), given it "is a fluid concept that reflects all the circumstances surrounding a debtor's use of property").

14.    While all parties hope these cases will be administratively solvent, it is too early to tell if this will be true in these proceedings.  The Debtors hope to sell substantially all of their assets, but it remains unclear whether such a sale will proceed and, even if it does, whether the proceeds of such a sale would be sufficient to pay the administrative expenses of these cases (even unbudgeted expenses, like Stub Rent), subjecting Landlords' postpetition rent claims to undue risk of non-payment if the Debtors are unable to reach their ambitious restructuring goals. Simply allowing an administrative expense claim for the Post-Petition Rent will not adequately protect Landlords.  See 11 U.S.C. § 361(3).  In fact, Section 361(3) makes clear that adequate protection may not take the form of a deferred administrative claim.

15.    The Debtors were open and operating in all of Landlords' Premises for the entirety of September 2024.  Unlike other creditors, Landlords have no choice but to allow the Debtors to continue to use and occupy their Premises.  Many Landlords wish to maintain a

relationship with the Debtors, but not at their sole expense.  This Court has seen many cases where the Debtors and their professionals have stated (and believed) that there would be money to pay administrative claims at the end of a case, only later to concede that the estates are administratively insolvent.  In this case, the Debtors have many milestones and obstacles to overcome.  Everyone, including Landlords, is hopeful that the Debtors can achieve their goals, but the outcome remains uncertain at this time and Landlords should not be the only administrative creditors to shoulder this risk.  The Court should require the Debtors to provide adequate protection for the continued use of the Premises through the date of the payment of the Post-Petition Rent.

16.     Thus, any order approving the DIP Motion on a final basis must provide adequate protection to the Landlords.

**B.     Adequate protection can be provided to the Landlords in various ways.**

17.     Because the Landlords are entitled to adequate protection of the Post-Petition Rent, the Court may consider the various forms of adequate protection that can be provided.

*i.     Payment is a form of adequate protection.*

18.     The best form of adequate protection the Debtors could provide is the payment of all of the Post-Petition Rent obligations that will accrue through the assumption, assumption and assignment, or rejection of the Leases.  See, e.g., In re ZB Company, Inc., 302 B.R. 316, 320 (Bankr. D. Del. 2003) (holding that rent should be paid to landlords on a per diem basis during the pre-rejection period in order to avoid the potential that the landlord could be left with an allowed administrative claim against an administratively insolvent estate).

19.     No provision of the Bankruptcy Code permits the Debtors to receive the benefits and protections of chapter 11 while simultaneously shirking their attendant obligations. In circumstances where there is a risk of administrative insolvency, it is appropriate for adequate protection to take the form of budgeting and immediate cash payments for post-petition use of

the Premises.  See 11 U.S.C. § 361; In re Kellstrom Indus., Inc., 282 B.R. 787, 794 (Bankr. D. Del. 2002).

20.     Moreover, the Court may also allow the unpaid Post-Petition Rent, including Stub Rent, as an administrative expense of the Debtors under Section 503(b)(1), and order its payment.  Section 503(b)(1) provides for an administrative expense claim for "the actual, necessary costs and expenses of preserving the estate. See 11 U.S.C. § 503(b)(1).  Section 365(d)(3) does not preclude the Court from ruling that Stub Rent is an administrative expense under Section 503(b)(1).  See In re Goody's Family Clothing Inc., 610 F.3d 812, 816-19 (3d Cir. 2010); In re Garden Ridge Corp., 323 B.R. 136, 142-43 (Bankr. D. Del. 2005) (citing ZB Co. Inc., 302 B.R. at 319 (landlords entitled to prorated rent from the Petition Date—despite the fact that the billing date occurred the day before the petition date).  A landlord's administrative claim under Section 503(b)(1) is equal to the lease contract rate.  See ZB Co. Inc., 302 B.R. at 319 (contract rate is presumed to be the fair rental value).

21.     Courts have discretion to determine the timing of the administrative payments.  See, e.g., Garden Ridge Corp., 323 B.R. at 143 (citing In re HQ Global Holdings, Inc., 282 B.R. 169, 173 (Bankr. D. Del. 2002) (entering interim orders directing the full contract rent for February 2004 to each landlord); ZB Co., Inc., 302 B.R. at 320.  "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." See Garden Ridge Corp., 323 B.R. at 143; see also HQ Global, 282 B.R. at 173.  The hardship to Landlords outweighs any prejudice to the Debtors or other creditors.  Without immediate payment of Post-Petition Rent, including the Stub Rent, or at least providing adequate protection that Landlords will receive such payment in one of the manners set forth herein, Landlords bear the risk of administrative insolvency, while the Debtors and Lenders continue to benefit from the use of their Premises.  Other creditors do not provide post-petition services to the Debtors without payment.  Forcing Landlords to act as involuntary post-petition lenders is contrary to the Bankruptcy Code, and directing payment (or adequate

protection for payment) of the unpaid Post-Petition Rent, including Stub Rent, is appropriate under the circumstances.  See In re Travel 2000, Inc., 264 B.R. 444 (Bankr. W.D. Mich. 2001) (finding that Congress and courts have determined that a landlord should receive the benefit of its bargain to compensate a landlord for being compelled by the Bankruptcy Code to continue providing a debtor with a critical service).  Therefore, this Court may allow and require the immediate payment of the Stub Rent under Section 503(b)(1).

> ii. **Post-Petition Rent can be escrowed as a form of adequate protection.**

22.    Short of immediate payment of the Post-Petition Rent owed to Landlords, the Debtors could escrow sufficient funds to provide adequate protection for the Post-Petition Rent, including Stub Rent.  The Court was faced with a similar situation in *CEC Entertainment, Inc.*, where the debtors' financing budget failed to provide sufficient funds for the payment of stub rent and other outstanding post-petition lease obligations, and the debtors similarly sought a 506(c) waiver before those amounts would be paid to landlords.  There, the Court fashioned a remedy of an escrow for the outstanding stub rent to provide adequate protection to landlords until the catchup payment could be made by the Debtors.  [CEC Entertainment, Inc., Case No. 20-33163, Tr. Hr'g 10/8/20 pp. 74:4-75:3, relevant portions attached hereto as Exhibit 1], see also In re The Sports Authority, Inc., et al., Case No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) (Final Order Authorizing Debtors to Obtain Postpetition Financing) [D.I. 1699, at § 40] (requiring reserve of stub rent for closing locations).[5]

> iii. **A carve out or condition to any surcharge waiver under Section 506(c) can provide Landlords adequate protection.**

23.    As set forth in the DIP Motion, the Debtors are seeking a waiver of their surcharge rights under Section 506(c) in connection with a Final Order.  Section 506(c) provides that a trustee or debtor in possession may recover from property securing an allowed secured claim the "reasonable, necessary costs and expenses of preserving or disposing of, such property

---

[5]  A copy of the Sports Authority final DIP Order is attached to this Limited Objection as Exhibit 2.

to the extent of any benefit to the holder of such claim . . . ." 11 U.S.C. § 506(c); See Precision Steel Shearing, Inc. v. Fremont Financial Corp. (In re Visual Ind., Inc.), 57 F.3d 321, 325 (3d Cir. 1995). The premise underlying Section 506(c) is that the unsecured creditors should not be required to bear the costs of preserving a secured creditor's collateral. See In re Evanston Beauty Supply Inc., 136 B.R. 171, 175 (Bankr. N.D. Ill. 1992). "Ample case authority exists which permits lessors to recover under Section 506(c) provided that the standards for recovery are met." In re World Wines, Ltd., 77 B.R. 653, 658 (Bankr. N.D. Ill. 1987). Standards for recovery are that the services were necessary and beneficial to the lender. Visual Indus., Inc., 57 F.3d at 325. The Debtors and Lenders continue to benefit from the post-petition use and occupancy of the Premises, which is vital to operation of the Debtors' business, and there is no legitimate reason that they should not pay for that benefit.

24.    Courts may surcharge lenders for post-petition rents and storage charges owed to them for storing lender's collateral, as necessary and directly beneficial to the lender. In re Scopetta-Senra Partnership III, 129 B.R. 700 (Bankr. S.D. Fla. 1991) (determining that a landlord that provided post-petition lease space provided benefit to the secured creditor by storing its collateral, and ensuring the debtor's continued operations); In re Gain Electronics Corp., 138 B.R. 464, 465 (Bankr. D.N.J. 1992); In re World Wines, Ltd., 77 B.R. at 658 (finding that landlord was entitled to be paid by the bank for the use and occupancy of its premises for storage of wine pursuant to Section 506(c)); In re Proto-Specialties, Inc., 43 B.R. 81 (Bankr. D. Ariz. 1984).

25.    The Debtors and Lenders are requesting a waiver of the Debtors' (and any other party's) ability to surcharge the Lenders under Section 506(c). This places the risk of future administrative insolvency on the Landlords in the amount of the unpaid Post-Petition Rent, as well as any other post-petition obligations that are not provided for in the DIP Budget. Shifting this risk to unsecured creditors—and involuntary unsecured creditors, at that—is contrary to the purpose of Section 506(c) and results in an unwarranted windfall to the Lenders.

As a result, courts have increasingly required that lenders pay for such benefits, which requirement is sometimes referred to as the "pay to play" concept.  See, e.g., In re The Sports Authority, Inc., et al., Case No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) (Final Order Authorizing Debtors to Obtain Postpetition Financing) [D.I. 1699] (preserving Section 506(c) rights for the Debtors or any party with standing absent providing for payment of Stub Rent and Section 503(b)(9) claims).

26.     Indeed, courts in a number of jurisdictions have adopted this "pay to play" concept.  In the Eighth Circuit, for instance, the case law provides that "if a secured creditor consents to the debtor's continued operation, it also impliedly consents to the debtor surcharging the necessary operating expenses of continuing its business against the creditor's secured claim." See In re Machinery, Inc., 287 B.R. 755, 768 (Bankr. E.D. Mo. 2002); citing Underwriters Ins. v. Magna Bank (In re Hen House Interstate, Inc.), 150 F.3d 868, 871-72 (8th Cir. 1998) rev'd on other grounds 150 F.3d 868 (8th Cir.1998) (en banc) aff'd. 530 U.S. 1 (2000); United States v. Boatmen's First Nat'l. Bank, 5 F.3d 1157, 1159-60 (8th Cir.1993).  "[B]oth Boatmen's and Hen House . . . require a finding that the secured creditor does in fact impliedly consent [to surcharging of its collateral] when it agrees to the debtor's continued operation of its business." Machinery, Inc., 287 B.R. at 768.  This is just another way of stating the "pay to play" concept to make sure that Landlords and other unsecured creditors do not solely bear the risk of administrative insolvency.

27.     If the Debtors and their Lenders are unable or unwilling to pay or escrow the Post-Petition Rent, than any waiver of the Debtors' surcharge rights under Section 506(c) should carve out Post-Petition Rent to make such waiver applicable to Post-Petition Rent only after such amounts are escrowed or paid to the Landlords.  This conditional 506(c) waiver is another means of providing Landlords with the adequate protection to which they are entitled under the Bankruptcy Code.  See In re The Sports Authority, Inc., et al., Case No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) (Final Order Authorizing Debtors to Obtain Postpetition

Financing) [D.I. 1699, at ¶43(a)].  It is improper for the Debtors to seek to waive the statutory provisions specifically intended to protect Landlords' Post-Petition Rent claims while providing absolutely no means for such claims to be paid.

### C. The Bankruptcy Code Requires Equal Treatment of Administrative Expense Creditors.

28.     Moreover, the Bankruptcy Code does not allow the Debtors to treat similarly situated administrative claimants differently.  In re Lazar, 83 F.3d 306, 308-09 (9th Cir. 1996) ("Under the Bankruptcy Code, administrative expense creditors must be treated equally and the court should not set up its own order of priorities.").  Through their Budget, the Debtors are establishing different classes of administrative claimants to receive payment, to the exclusion of others (namely, the Landlords), in violation of the Bankruptcy Code.  As these estates may be administratively insolvent, this alone should justify the payment of the Stub Rent.

### III.   JOINDER IN OBJECTIONS

29.     To the extent consistent with the objections expressed herein, Landlords also join in the objections of any other shopping center lessors or the official committee of unsecured creditors to the Debtors' proposed relief.

### IV.   CONCLUSION

The Court should require the Final Financing Order be modified consistent with this Objection, and grant such further relief as the Court deems just and proper.

Dated: October 17, 2024
Wilmington, Delaware

/s/ Laurel D. Roglen
Leslie C. Heilman (DE No. 4716)
Laurel D. Roglen (DE No. 5759)
Margaret A. Vesper (DE No. 6995)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: heilmanl@ballardspahr.com
          roglenl@ballardspahr.com
          vesperm@ballardspahr.com

and

Dustin P. Branch, Esquire
Nahal Zarnighian, Esquire
Sara Shahbazi, Esquire
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: (424) 204-4400
Facsimile: (424) 204-4350
E-mail: branchd@ballardspahr.com
        zarnighiann@ballardspahr.com
        shahbazis@ballardspahr.com

and

Craig Solomon Ganz, Esquire
Michael S. Myers, Esquire
Joel F. Newell, Esquire
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: (602) 798-5427
Facsimile: (602) 798-5595
E-mail: ganzc@ballardspahr.com
        myersm@ballardspahr.com
        newellj@ballardspahr.com

*Counsel to ARC ASANDSC001, LLC, ARC NWNCHSC001, LLC, Americal Management Co. Inc. Arapahoe Crossings, LP, BRE Retail NP Memphis Commons Owner LLC, BRE Retail NP Owner I LLC, BRE Retail Residual NC Owner L.P., BRE Retail Residual Shoppes at Valley Forge Owner LLC, BRE Retail Residual Owner 1 LLC, Brixmor Coconut Creek Owner, LLC, Brixmor GA Apollo II TX LP, Brixmor GA Panama City, LLC, Brixmor GA Washtenaw Fountain, LLC, Brixmor Holdings 12 SPE LLC, Brixmor/IA Cayuga Plaza, Brixmor/IA Rutland Plaza LLC, Brixmor Lehigh SC LLC, Brixmor Miracle Mile, LLC, Brixmor Watson Glen LLC, Brixton Capital, CA New Plan Sarasota, LP, California Property Owner I, LLC, County Line Plaza Realty Associates, LP, Crosspoint Realty*

*Services, Inc., Federal Realty OP LP, French Shopping Center LLC, Gerrity Group, Greenberg Gibbons Commercial, Hanford Mall 2020 LLC, KR Collegetown LLC, NS Retail Holdings, LLC, Newsem Tyrone Gardens Property Owner LLC, Plaza at Buckland Hills, LLC, RD Management LLC, Robhana Group, Starwood Retail Properties, Sterling Organization, The Carrington Company, Trussville Promenade I Owner, LLC, Value Investment Group, Inc., and Watt Companies, Inc.*

**SCHEDULE A**

| | | |
|---|---|---|
| **ARC ASANDSC001, LLC** | | |
| Store No. 5367 | Anderson Station | Anderson, SC |
| **ARC NWNCHSC001, LLC** | | |
| Store No. 5139 | Northwoods Marketplace | North Charleston, SC |
| **AMERICAL MANAGEMENT CO., INC.** | | |
| Store No. 4501 | South Shores Center | Las Vegas, NV |
| **ARAPAHOE CROSSINGS, LP** | | |
| Store No. 4586 | Arapahoe Crossings | Aurora, CO |
| **BRE RETAIL NP MEMPHIS COMMONS OWNER LLC** | | |
| Store No. 1349 | Memphis Commons | Memphis, TN |
| **BRE RETAIL NP OWNER 1 LLC** | | |
| Store No. 5387 | Northgate Shopping Center | DeLand, FL |
| **BRE RETAIL RESIDUAL NC OWNER L.P.** | | |
| Store No. 5086 | The Commons at Chancellor | Charlotte, NC |
| **BRE RETAIL RESIDUAL SHOPPES AT VALLEY FORGE OWNER LLC** | | |
| Store No. 5441 | Shoppes at Valley Forge | Phoenixville, PA |
| **BRE RETAIL RESIDUAL OWNER 1 LLC** | | |
| Store No. 1450 | Hearthstone Corners | Houston, TX |
| Store No. 4566 | The Centre at Preston Ridge | Frisco, TX |
| Store No. 1377 | Wallkill Plaza | Middletown, NY |
| **BRIXMOR COCONUT CREEK OWNER, LLC** | | |
| Store No. 562 | Coconut Creek Plaza | Coconut Creek, FL |
| **BRIXMOR GA APOLLO II TX LP** | | |
| Store No. 4146 | Jones Square (formerly Mac Frugal's) | Houston, TX |
| **BRIXMOR GA PANAMA CITY, LLC** | | |
| Store No. 5215 | Panama City Square | Panama City, FL |
| **BRIXMOR GA WASHTENAW FOUNTAIN, LLC** | | |
| Store No. 4734 | Washtenaw Fountain Plaza | Ypsilanti, MI |
| **BRIXMOR HOLDINGS 12 SPE, LLC** | | |
| Store No. 4237 | Merchant's Park (formerly Mac Frugal's) | Houston, TX |
| Store No. 1835 | Parmer Crossing | Austin, TX |
| Store No. 4652 | Stevens Park Village | Dallas, TX |
| **BRIXMOR/IA CAYUGA PLAZA, LLC** | | |
| Store No. 830 | Cayuga Shopping Center | Ithaca, NY |
| **BRIXMOR/IA RUTLAND PLAZA LLC** | | |
| Store No. 525 | Rutland Plaza | St. Petersburg, FL |
| **BRIXMOR LEHIGH SC LLC** | | |
| Store No. 1380 | Lehigh Shopping Center | Bethlehem, PA |

| | | |
|---|---|---|
| **BRIXMOR MIRACLE MILE, LLC** | | |
| Store No. 1532 | Miracle Mile Shopping Plaza | Toledo, OH |
| **BRIXMOR WATSON GLEN LLC** | | |
| Store No. 5191 | Watson Glen Shopping Center | Franklin, TN |
| **BRIXTON CAPITAL** | | |
| Store No. 4489 | American Fork Shopping Center | American Fork, UT |
| **CA NEW PLAN SARASOTA, LP** | | |
| Store No. 1796 | Sarasota Village | Sarasota, FL |
| **CALIFORNIA PROPERTY OWNER I, LLC** | | |
| Store No. 4432 | Santa Paula Center | Santa Paula, CA |
| **COUNTY LINE PLAZA REALTY ASSOCIATES, LP** | | |
| Store No. 5468 | County Line Plaza | Souderton, PA |
| **CROSSPOINT REALTY SERVICES, INC.** | | |
| Store No. 4768 | McCarthy Ranch | Milpitas, CA |
| **FEDERAL REALTY OP LP** | | |
| Store No. 5219 | Governor Plaza | Glen Burnie, MD |
| **FRENCH SHOPPING CENTER LLC** | | |
| Store No. 4122 | French Shopping Center | Visalia, CA |
| **GERRITY GROUP** | | |
| Store No. 4621 | Bethel Junction | Port Orchard, WA |
| **GREENBERG GIBBONS COMMERCIAL** | | |
| Store No. 5175 | Reisterstown Shopping Center | Reisterstown, MD |
| **HANFORD MALL 2020 LLC** | | |
| Store No. 4665 | Hanford Mall | Hanford, CA |
| **KR COLLEGETOWN LLC** | | |
| Store No. 4713 | Collegetown Shopping Center | Glassboro, NJ |
| **NS RETAIL HOLDINGS, LLC** | | |
| Store No. 4729 | 3000 Scottsville Road | Bowling Green, KY |
| Store No. 5239 | 2821 Montgomery Highway | Dothan, AL |
| Store No. 1507 | 4420 Altama Avenue | Brunswick, GA |
| Store No. 225 | 1913 Sherwood Road | Kingsport, TN |
| Store No. 4723 | 14333 Eureka Road | Southgate, MI |
| Store No. 1891 | Elizabeth City Crossing | Elizabeth City, NC |
| Store No. 5228 | 4420 Mitchellville Road | Bowie, MD |
| **NEWSEM TYRONE GARDENS PROPERTY OWNER LLC** | | |
| Store No. 554 | Tyrone Gardens | St. Petersburg, FL |
| **PLAZA AT BUCKLAND HILLS, LLC** | | |
| Store No. 5147 | Plaza at Buckland Hills | Manchester, CT |
| **RD MANAGEMENT LLC** | | |
| Store No. 835 | Port Huron Shopping Center | Port Huron, MI |

| Store No. 5225 | Shops at Billerica | Billerica, MA |
|---|---|---|
| **ROBHANA GROUP** | | |
| Store No. 4025 | 610 Las Tunas Drive | Arcadia, CA |
| Store No. 4118 | 3003 W Manchester Blvd | Inglewood, CA |
| Store No. 4126 | Bay Plaza | National City, CA |
| **STARWOOD RETAIL PROPERTIES** | | |
| Store No. 5125 | Hamburg Pavilion | Lexington, KY |
| **STERLING ORGANIZATION** | | |
| Store No. 5102 | Pompano Citi Centre | Pompano Beach, FL |
| **THE CARRINGTON COMPANY** | | |
| Store No. 5345 | 791 W Elk Avenue | Elizabethton, TN |
| Store No. 4770 | Northbridge Mall | Albert Lea, MN |
| Store No. 4618 | Public Square Center | North Bend, OR |
| **TRUSSVILLE PROMENADE I OWNER, LLC** | | |
| Store No. 5233 | Trussville Promenade | Birmingham, AL |
| **VALUE INVESTMENT GROUP, INC.** | | |
| Store No. 4692 | Park Manor Shopping Center | Bellingham, WA |
| **WATT COMPANIES, INC.** | | |
| Store No. 4718 | North Mesa Plaza | N Las Vegas, NV |