# EXHIBIT 1

```
 1                 UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF TEXAS
 2                        HOUSTON DIVISION

 3                                   )   CASE NO: 20-33163
                                     )
 4   CEC Entertainment,              )   Houston, Texas
                                     )
 5                                   )   Thursday, October 8, 2020
              Debtors.               )
 6                                   )   3:43 p.m.- 6:02 p.m.
                                     )
 7   ------------------------------)

 8                                TRIAL

 9              BEFORE THE HONORABLE MARVIN ISGUR
                  UNITED STATES BANKRUPTCY JUDGE
10

11   APPEARANCES:

12   For The Official          JASON ADAMS
     Committee of              Kelley Drye & Warren LLP
13   Unsecured Creditors:      101 Park Avenue
                               New York, NY 10178
14
     For Kimco Realty          MICHELLE SHRIRO
15   Corporation, Site         Singer & Levick PC
     Centers Corporation       16200 Addison Road, Suite 140
16   and Various Other         Addison, Texas 75001
     Landlords:
17
     For Wilmington Trust,     JASON ANGELO
18   National Association,     MICHAEL COOLEY
     as Indenture Trustee:     Reed Smith LLP
19                             811 Main Street, Suite 1700
                               Houston, TX, 77002-6110
20
     For The Official          TODD A. ATKINSON
21   Committee of Unsecured    Womble Bond Dickinson (US) LLP
     Creditors:                811 Main St Suite 3130
22                             Houston, TX 77002

23   For Debtors:              MATT BARR
                               SCOTT BOWLING
24                             CLIFFORD CARLSON
                               PAUL GENENDER
25                             ALFREDO PEREZ
```

```
 1    (indiscernible) given that -- (indiscernible) didn't know
 2    that (indiscernible) due to (indiscernible) often happens
 3    (indiscernible), that's all we have.  We (indiscernible)
 4    again in this argument.  Thank you.
 5              THE COURT:  Thank you.  Any other opponents?  All
 6    right.  Probably makes the most sense to go to Mr. Rubin but
 7    if the debtor wants to address issues first that's fine.
 8    Mr. Rubin, why don't you - - I'm sorry, go ahead.  Mr.
 9    Carlson, go ahead.
10    CARLSON: So Your Honor, the objections really come down to
11    objection to specific terms, they want me to cut a deal
12    negotiated heavily by the debtors.  We (indiscernible) and
13    Mr. Walters helped the (indiscernible) process, reached out
14    to several different parties including the committee and the
15    (indiscernible) crew and ultimately negotiated a deal that
16    included these protections here, subject to (indiscernible)
17    surcharge.
18              And you know, I've seen (indiscernible) --
19    negotiations were done in the package and the 506(c)
20    surcharge (indiscernible) other protections were provided in
21    exchange for the DIP lenders offering to provide the $200
22    million in financing and the use of (indiscernible) cash in
23    these cases.
24              And so you know, given that background and sort of
25    what the debtors -- the debtors are seeking approval that
```

```
 1    (indiscernible) we thought it was a fair deal and we fought
 2    hard for it, and to the (indiscernible) request of the Court
 3    for that and an order within (indiscernible).
 4               THE COURT:  Mr. Carlson, if we were to order the
 5    debtors to establish a $13 million catch-up reserve next
 6    week, is that consistent with what your rights are under the
 7    DIP order?
 8    CARLSON: If we are permitted to do a $13 million reserve for
 9    catch-up payments?
10               THE COURT:  Right, if I ordered it -- when this
11    money gets funded, that you take 13 million and you put it
12    into a reserve next week so that you then have it for the
13    November rent catch-up payment, does that in any way violate
14    any of your obligations under this DIP order?
15    CARLSON: It may violate -- well, taking a look at it, it may
16    violate communications on (indiscernible) that, in paragraph
17    21 that provide limitations on use of (indiscernible).  It
18    would not be necessarily consistent with our budget in that
19    paragraph.  But I think that is (indiscernible) the DIP
20    order probably would not allow for that.
21               THE COURT:  So Mr. Rubin, let me ask you a couple
22    questions.  I'm not sure that it would violate the terms but
23    I'm not sure it wouldn't if I were to order that the debtors
24    go ahead and establish a $13 million reserve for those
25    catch-up payments.  That would eliminate a lot of the
```

1    landlords' concerns over giving the 506(c) waiver up front.
2    Which is something that they're raising pretty hard.  And I
3    don't know that it hurts your clients at all to do that.
4              And then the second question that I have for you
5    about a change in the order -- and I am worried despite the
6    fact that I said to Mr. Adams that doesn't prohibit you from
7    doing things, it just prohibits you from getting paid for
8    it.  It would seem to me that the committee has to get
9    funded by the debtors, and that if they're doing their job
10   that doesn't include a challenge to your lien position or a
11   suit against you all up until the point of default.
12             That that language can largely be eliminated just
13   by adding language at the beginning of it that says prior to
14   the event of a default they can be -- or after an event of
15   default they can't be paid for these things and they can
16   never be paid for suing you.  I don't see much injury to
17   your client because we all know that the professional fees
18   have to get paid in the case.
19             And it is a bit distasteful to do it -- I don't
20   know that it's wrong, I don't know that I shouldn't approve
21   it and I'm not -- trying not to dictate to you, but just
22   kind of raising those two questions for you as maybe
23   reasonable actions to take at this point.  What's your
24   reaction?
25             MR. RUBIN:  Sure, Your Honor.  Jason Rubin from

1     Akin Gump.  I'm on behalf of the DIP lenders.  I will take
2     your questions in order.  First question, Your Honor, is if
3     the Court were to request or order that the debtors need to
4     provide a $13 million reserve for rent in order for the DIP
5     lenders to be given the 506(c) waiver, I do believe that is
6     something we could agree to.
7             We do believe that testimony that was presented to
8     the Court today clearly demonstrated by the $200 million,
9     should be more than sufficient to pay operating expenses
10    while (indiscernible) expense claims and all (indiscernible)
11    landlord claim and all the (indiscernible) fees throughout
12    the case.  But if Your Honor confirmed and would like to see
13    a reserve established in order to grant the 506(c) waiver, I
14    believe that is something we would be okay with.
15            Your second one Your Honor, there is no intention
16    of the DIP lenders or the pre petition secure parties to
17    restrict the ability of the committee to do what committees
18    need to do to represent their constituents.  As Your Honor
19    noted, there are certainly a lot of words on that page but
20    the limitation that -- as you summarized it is probably
21    accurate, as you said (indiscernible) our clients in a
22    general sense.
23            We added language at the committee's request to
24    the DIP order in paragraph 21, we did -- that may clear that
25    -- per their prosecution and preparation of their objections

1    to the DIP motion were not intended to be covered by the
2    restriction on investigation matters.  That's here in the
3    red line in paragraph 21.
4              Similarly, Your Honor, you know, prosecution
5    (indiscernible) objection, again, we would not expect the
6    (indiscernible) subject to the committee investigation but
7    if that's set forth in paragraph 21, so potentially Your
8    Honor, you know, we could work on the language.  That was
9    not the intention and I can represent that.
10             And then lastly, myriad language at the end of
11   paragraph 21 that does make (indiscernible) that in the
12   extent there are expenses incurred that (indiscernible)
13   challenge (indiscernible), this is not prejudicing the right
14   of the committee to have those expenses paid under our
15   (indiscernible) bankruptcy code.
16             THE COURT:  Yeah, I just -- and I appreciate that
17   language.  I want to be sure that there isn't -- and I'm not
18   suggesting your clients were doing this.  I want Mr. Adams
19   not to feel that level of leverage on your clients' part.
20   And I appreciate the fact that your client would be willing
21   to make those two changes.
22             I think that the evidence is pretty overwhelming
23   that this DIP ought to be approved.  And although I have
24   additional objections to those that have been resolved by
25   agreement I think, by three principle agreements, I find

```
 1    that this DIP is necessary and in the best interest of the
 2    estate.
 3              The fact that the DIP wasn't taken down in the
 4    beginning and that the debtors have used their money to
 5    operate with seems entirely appropriate to me.  The fact is
 6    that on the 13 week budget which no one contests, next week
 7    the debtor will drop below its $25 million optimum cash
 8    reserves if the DIP isn't funded immediately.  And we will
 9    jeopardize this business and jeopardize the jobs and
10    jeopardize any more point of recovery for the various
11    creditors in the case.
12              The lenders can't be charged for the
13    administrative expenses in the case.  They can't be charged
14    for the losses of the debtor that are the routine losses
15    that aren't directly related to their collateral.  And the
16    fact is, this estate's going to lose in cash flow over $100
17    million during the course of this bankruptcy case.
18              Are we funding too large of a DIP?  No way.  We
19    are in wholly uncharted territory for the United States and
20    maybe for the world in terms of what's going on.  We know
21    the money is needed next week in some amount, and the fact
22    that the forecasts don't show that all $200 million will be
23    used doesn't mean that this debtor from a stability point of
24    view doesn't need additional money.  It needs pretty much as
25    much as it can get in order to assure its stability and
```

1  ability to emerge as a going concern business.
2  I find that the DIP should be approved and it
3  should be approved in full with the three changes that we
4  have talked about. So just to run through those and then
5  we'll get an order uploaded that does that, number one is
6  there will be a remedies provision added. Number two is
7  that there will be, out of the first $100 million of
8  funding, $13 million set aside out of which the debtors may
9  pay all of their catch-up payments in order to bring the
10 landlords current.
11 That does not excuse the debtors from any
12 additional obligation to bring them current. It doesn't set
13 an amount -- if that turns out to be in excess of what is
14 needed, the debtors can then put it into their regular bank
15 account. But that reserve will be inviolate until those
16 amounts are paid.
17 And then the third change is I just want cleaner
18 language to be sure that the UCC can do its job without fear
19 of leverage. And I think those have all been agreed to by
20 the lenders. I should say for the record that I think my
21 role is either to approve or not approve the DIP. I can't
22 approve it and impose additional conditions. And so these
23 three conditions that I am now requiring are done because
24 the lender has agreed to it.
25 As to whether I would have approved this without

1   the lenders' agreement to those things is a different
2   question.  But my choice is either approve or don't approve,
3   it isn't approve and then print something on it because the
4   lenders have volunteered in terms of advancing additional
5   money.
6              They've done this voluntarily at this -- as
7   voluntarily as they can be when asked a question like I
8   asked.  They've still done it voluntarily and solved the
9   problems. So I'm going to approve it.  Mr. Carlson, can you
10  -- I think this needs to be done tomorrow.  Can you work on
11  this -- I hate to do this to you overnight during the storm
12  if it comes in, and get an order uploaded tomorrow that I'll
13  be able to sign tomorrow?
14             MR. CARLSON:  Not a problem (indiscernible).
15             THE COURT:  All right.  I want the landlords to
16  tell me -- one landlord lawyer that Mr. Carlson can consult
17  with.  I want Mr. Adams signing off with it and then one of
18  the landlord lawyers.  Can you all designate one person that
19  can consult with the rest of you all so that Mr. Carlson's
20  not having to deal with six people all with identical
21  interests?
22             THE COURT:  Let's volunteer Ms. Roglen, Your
23  Honor.
24             MR. RUBIN: That's fine with me, Your Honor.
25             THE COURT:  Ms. Roglen?

```
 1                 MS. ROGLEN:  That's fine for me as well, thanks.
 2                 THE COURT:  Yeah, I'll have them confer with you.
 3     I do think this resolves your objection as I understand it
 4     as well, and I hope that -- it's not what you asked for but
 5     I think it's actually better than what you asked for.  So.
 6     Hopefully you all can agree.
 7                 MS. ROGLEN:  I think it's a very (indiscernible)
 8     Your Honor.
 9                 MR. ADAMS:  Yes, Your Honor, thank you.
10                 THE COURT:  All right.  Is there anything else
11     that we need to get done tonight?  Okay, thank you.  I know
12     it's been a long day for you all and I know I started a
13     little bit late just from other hearings, so.  I appreciate
14     your courtesies towards me.  We will go ahead and adjourn
15     for the night.  I'll get an order in tomorrow.
16     CARLSON: Thank you, Your Honor.
17                 THE COURT:  Mr. Carlson, if you will contact Ms.
18     Stowe the minute that gets filed, I'll need to get that done
19     tomorrow and I want to do it right away on an emergency
20     basis.
21                 CARLSON: We'll do that, thanks, Your Honor.
22                 THE COURT:  Thank you all.  Good night, everyone.
23                 MR. RUBIN:  Thank you, Your Honor.
24
25            (Proceedings adjourned at 6:02 p.m.)
```

1                    CERTIFICATION

2

3    I certify that the foregoing is a correct transcript from

4    the electronic sound recording of the proceedings in the

5    above-entitled matter.

6

7    *Sonya M. Ledanski Hyde*

8

9

10   Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  October 16, 2020