**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br>(Jointly Administered)<br><br><u>Hearing Date</u>: October 21, 2024, at 1:30 p.m. (ET)<br><u>Objection Deadline</u>: October 14, 2024, at 5 p.m. (ET)<br>(as extended)<br><br>RE:  D.I. 20, 114 |

**LIMITED OBJECTION OF MULTIPLE LANDLORDS TO DEBTORS'**
**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS,**
**PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, AND**
**552, (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN SENIOR**
**SECURED SUPERPRIORITY POST-PETITION FINANCING AND**
**(B) USE CASH COLLATERAL, ETC.**

Multiple landlords, identified in <u>Exhibit A</u> hereto (collectively, the "<u>Objecting Landlords</u>"), by and through their undersigned counsel, submit this limited objection to the *Motion of Debtors for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552 (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Post-Petition Financing and (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Providing Adequate Protection to Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [D.I. 20] (the "<u>DIP Financing Motion</u>") and the entry of any final order thereon, as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

**PRELIMINARY STATEMENT**

1. As discussed below, this Court should not enter a final order with respect to Debtors' DIP Financing Motion that fails to provide adequate protection to Debtors' lessors, including Objecting Landlords, as to accruing post-petition occupancy costs that do not appear to be provided for by the DIP Financing Motion and accompanying Approved Budget.[2] Debtors should not be permitted to waive their rights under Bankruptcy Code sections 506(c) and 552 unless and until potential administrative expense claims for September "stub rent" are provided for, whether by payment or the segregation of funds from the increased availability under the proposed debtor-in-possession financing (upon entry of a final order), to provide some assurance of the payment of post-petition occupancy expenses, particularly given the risk of administrative insolvency in these Chapter 11 cases. Here, any relief under the DIP Financing Motion needs to better balance the competing interests of Debtors, their lenders, landlords and other stakeholders.

**FACTUAL AND PROCEDURAL BACKGROUND**

2. On September 9, 2024 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On September 10, 2024, this Court entered its order authorizing joint administration of these Chapter 11 cases [D.I. 95]. No trustee or examiner has been appointed and Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

3. Objecting Landlords are lessors and former lessors of Debtors with respect to retail stores located throughout the United States, as more particularly described in Exhibit A hereto. There should be no serious question that Debtors' leases with the Objecting Landlords are for

---

[2] Capitalized terms not otherwise defined shall have the same meaning as set forth in the DIP Financing Motion.

"lease[s] of real property in a shopping center" as that term is used in Section 365(b)(3). *See In re Joshua Slocum, Ltd.,* 922 F.2d 1081, 1086-1087 (3d Cir. 1990).

4. On the Petition Date, as part of their "first day" motions, the Debtors filed their DIP Financing Motion.

5. On September 10, 2024, this Court entered its *Interim Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364, 503, 506, 507, and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing Debtors To (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection To Prepetition Secured Creditors, (III) Modifying Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [D.I. 114] (the "Interim DIP Order").

6. The 13-week Approved Budget, Exhibit 4 to the Interim DIP Order, broadly provides for payment of "Operating Disbursements," presumably including accruing monthly rent and other occupancy expenses (although no detail is provided to assess the sufficiency of any budgeted amounts). The Approved Budget makes no apparent provision for the payment (or the reserve for payment) of September "stub rent." While an updated "liquidity forecast" has now been informally circulated, apparently providing for payment of some of the September stub rent in early November, a proposed final order with respect to the DIP Financing motion, which might disclose any conditions or contingencies with respect to such payment, has yet not been provided, necessitating this limited objection.

**ARGUMENT**

I. **Any Final Order Approving the DIP Financing Motion Should Adequately Protect Landlords and Not Waive Debtors' Rights Under Bankruptcy Code sections 506(c) and 552(b)**

7. Objecting Landlords do not dispute Debtors' need for sufficient liquidity to sustain their on-going business operations, to "satisfy an immediate cash need to maintain business relationships with vendors, suppliers, operators and managers, to make capital expenditures and to satisfy other working capital and operational needs and otherwise finance the Debtors' operations" as they work towards a sale of their assets and stabilizing Debtors' business operations pending a sale process. *See DIP Financing Motion* at ¶¶ 4-6. But Debtors and its pre- and post-petition lenders appear to have negotiated debtor-in-possession financing that conspicuously failed to provide for payment of "stub rent," i.e., the pro-rated, post-petition portion of September rent and charges, while the Debtors continued to use and occupy the leased premises, liquidating the DIP Collateral and generating revenue therefrom. *See generally In re Goody's Family Clothing, Inc.*, 610 F.3d 812, 815, 818-20 (3d Cir. 2010).

8. Objecting Landlords did not receive payment of September rent and charges under their leases with Debtors. Debtors continued to use and occupy these locations after the Petition Date, in many cases conducting store closing sales as part of the first and second "waves" of post-Petition Date store closures.

9. Bankruptcy Code section 503(b)(1)(A) provides for the allowance of administrative expenses, including, in particular, the actual, necessary costs and expenses of preserving the bankruptcy estate. "When third parties are induced to supply goods or services to the debtor-in-possession . . . the purposes of [§ 503] plainly require that their claims be afforded priority." *In re Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir. 1984); *In re Goody's Family Clothing, Inc.*, 392 B.R. 604, 609 (Bankr. D. Del. 2008).

10. As this Court held in *In re Goody's Family Clothing, Inc.*, 392 B.R. at 614, "the mere fact that the Debtors are occupying the Landlords' premises is sufficient, in and of itself, to establish that payment for that use and occupancy is an actual, necessary expense of preserving the Debtors' estates under section 503(b)(1). Moreover, the amount of the administrative claim for that use and occupancy is the fair market value, which is presumably the lease rate unless there is evidence to the contrary." *Accord, In re JLM Couture, Inc.,* 661 B.R. 862, 868-69 (Bankr. D. Del. 2024).

11. The 13-week Approved Budget accompanying the DIP Financing Motion does not appear to make any provision for the ultimate payment of September "stub rent." While the premises were used by Debtors in the operation of their business throughout the month of September, and landlords have administrative expense claims for post-Petition Date use and occupancy of leased premises, with no apparent provision being made for their administrative expense claims, Debtors' landlords bear the risk of potential administrative insolvency. Indeed, the Third Circuit in *Goody's Family Clothing Inc.* rejected such an attempt by a Chapter 11 debtor to continue to use leased premises "without providing any post-petition consideration to the Landlords who were still providing services for the premises in the time prior to rejection." 610 F.3d at 819.

12. Under the circumstances of this case, Objecting Landlords, along with Debtors' other landlords, are entitled, at a minimum, to adequate protection under Bankruptcy Code section 363(e) with respect to the payment of these post-petition occupancy costs. It is well-settled that real property lessors are entitled to seek adequate protection. *See, e.g.*, *Memphis-Shelby County Airport Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 783 F.2d 1283, 1286-87 (5th Cir. 1986) (recognizing landlord's right to adequate protection); *In re P.J. Clarke's*

*Rest.t Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) (noting that a "landlord's right to adequate protection seems to follow clearly from the language of §363(e) . . . ."); *In re Ernst Home Center, Inc.*, 209 B.R. 955, 965-66 (Bankr. W.D. Wash. 1997); *In re MS Freight Distribution, Inc.*, 172 B.R. 976, 980 n.4 (Bankr. W.D. Wash. 1994) ("Section 363(e) by its express terms authorizes an entity whose property is to be leased by the debtor to seek adequate protection."); *In re RB Furniture, Inc.*, 141 B.R. 706, 713 (Bankr. C.D. Cal. 1992) (adequate protection under § 363(e) may even be broader that the rights provided lessors under § 365(d)(3) given that it "is a fluid concept that reflects all the circumstances surrounding a debtor's use of property.").

13.     Of course, the best form of adequate protection is the payment of September "stub rent," just as Debtors pay employee wages, utilities and other post-petition operating expenses with respect to these retail store locations. Absent current payment, under the circumstances of these Chapter 11 cases, the preservation of the Debtors' ability to surcharge its lenders for the cost of preservation and potential disposition of its lenders' collateral, including unpaid occupancy costs for Debtors' leased locations, and the preservation of Debtors' "going concern" value pending multiple sale processes, would be a form of adequate protection.[3]  Accordingly, Debtors should not be permitted to waive the bankruptcy estates' rights under Bankruptcy Code sections 506(c) and 552 sought by the DIP Financing Motion. *See Interim DIP Order* ¶¶ J, 33 and 35.

14.     Section 506(c) of the Bankruptcy Code allows a debtor to charge the costs of preserving or disposing of a secured lender's collateral to the collateral itself. 11 U.S.C. § 506(c). This provision ensures that the cost of liquidating a secured lender's collateral is not paid from

---

[3]  The mere allowance of an administrative priority claim for accruing post-petition rents is not adequate protection. *In re Attorneys Office Management, Inc.*, 29 B.R. 96, 99 (Bankr. C.D. Cal. 1983) ("In §361(3) it is made clear that an administrative claim under §503(b)(1) in itself will not constitute adequate protection.").

unsecured recoveries. *See, e.g.*, *Precision Steel Shearing v. Fremont Fin. Corp. (In re Visual Indus., Inc.)*, 57 F.3d 321, 325 (3d Cir. 1995) ("[S]ection 506(c) is designed to prevent a windfall to the secured creditor"); *Kivitz v. CIT Group/Sales Fin., Inc.*, 272 B.R. 332, 334 (D. Md. 2000) (stating that "the reason for [section 506(c)] is that unsecured creditors should not be required to bear the cost of protecting property that is not theirs"); *In re Codesco Inc.*, 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982) ("The underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured collateral is that the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs.").[4] Similarly, the "equities of the case" exception in Bankruptcy Code section 552(b) allows a debtor, creditors' committee or other party-in-interest to exclude post-petition proceeds from pre-petition collateral on equitable grounds, including to avoid having unencumbered assets fund the cost of a secured lender's foreclosure or other disposition of assets. 11 U.S.C. § 552(b).

15. At this point, there should be little doubt that this case is now being run for primary benefit of Debtors' lenders. The lenders directly benefit from the continued operation of Debtors' business through the payment of significant fees (see *DIP Financing Motion* at ¶ 11), the opportunity to maintain their position during the pendency of the bankruptcy, enhancing or preserving Debtors' going concern value, and liquidating their collateral at hundreds of closing retail locations, while marketing many of Debtors' leasehold interests for potential assignment. *See, e.g.*, *Interim DIP Order* at Exhibit 5 (DIP Milestones). The DIP Financing Motion even refers to "the potential for the DIP Term Lenders to provide subsequent financing to the buyer of the Debtors' assets." DIP Financing Motion at ¶ 4. As a result, Debtors' DIP Lender must accept the

---

[4] It is well-settled, however, that administrative claimants do not have an independent right to seek payment of otherwise unsatisfied claims under Section 506(c) from property encumbered by a secured creditor's lien since the statute reserves that right to a trustee (or debtor-in-possession in a Chapter 11 case). *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S. Ct. 1942, 1947 (2000).

costs and risks associated with those benefits and opportunities, including payment of necessary administrative expenses incurred by Debtors in these Chapter 11 cases. *See, e.g.*, *In re Scopetta-Senra Partnership III,* 129 B.R. 700, 701 (Bankr. S.D. Fla. 1991) (landlord that leased auto dealership premises to debtor, without payment of administrative rent, provided benefit to secured creditors through the continued use of the premises to sell the vehicles to enable repayment to the secured creditors); *In re So Good South Potato Chip Co.*, 116 B.R. 144, 146 (Bankr. E.D. Mo. 1990) (where the trustee declined to pursue a Section 506(c) surcharge claim, the failure of secured creditor to pay for storage of collateral at premises leased by debtor would otherwise "result in a windfall benefit to the secured creditor to the detriment of a third party."); *In re Issac Cohen Clothing Corp.*, 39 B.R. 199, 201 (Bankr. S.D.N.Y. 1984) (granting surcharge because lender "clearly benefited from the property being stores on the [landlord's] premises"). The DIP Lenders' role and objective in these cases should not be without burden or expense. It has been observed that bankruptcy courts "should not ignore the basic injustice of an agreement in which a debtor, acting out of desperation, has compromised the rights of unsecured creditors." *In re FCX, Inc.*, 54 B.R. 833, 838 (Bankr. E.D.N.C. 1985); *accord, In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (9th Cir. BAP 1992) (recognizing that debtors-in-possession "generally enjoy little negotiating power" with secured lenders, "particularly where the lender has a prepetition lien on cash collateral.").

16. Given that the DIP Lenders substantially benefit from the continued use and occupancy of Debtors' retail locations through the preservation and disposition of DIP Collateral located in the leased premises pending both lease marketing and going concern sale processes, the DIP Lenders should be required to fund the expenses of that benefit rather than escape any responsibility for occupancy costs through attempted waivers of Sections 506(c) and 552. In

denying a Section 506(c) waiver in *In re Sports Authority Holdings, Inc.*, Case No. 16-10527 (MFW) (Bankr. D. Del.), Judge Walrath observed that where a Chapter 11 case is being run for the "benefit of the lenders," as here, then "the lenders are going to have to pay the cost of that. And that includes all administrative. It includes the rent." April 26, 2016 hearing transcript [Docket No. 1463] at 194:10 to 195:16. The *Sports Authority* holding is consistent with the Fifth Circuit's conclusion that "a secured creditor should not reap the benefit of actions taken to preserve the secured creditor's collateral without shouldering the cost." *Southwest Securities, FSB v. Segner (In re Domistyle, Inc.)*, 811 F.3d 691, 696 (5th Cir. 2015).[5]

**I.    Any Final DIP Order Should Contain Language (1) Limiting the Scope of the DIP Collateral and Adequate Protection Liens and (2) Limiting the Remedies of DIP Lender In the Event of Default, Consistent with the Interim DIP Order**

17.    Any final order on the DIP Financing Motion should provide that any DIP Liens and Adequate Protection Liens with respect to Debtors' nonresidential leasehold interests are limited to "proceeds of the sale or disposition of such leases" and not a direct lien on the leaseholds themselves, tracking the provisions of the Interim DIP Order. *See Interim DIP Order* at ¶ 23(a).

18.    Similarly, any final order on the DIP Financing Motion should also make it clear that the DIP Lenders do not have unrestricted rights of access to use and occupy Debtors' leased premises following a default under the Obligations or other Events of Default under the DIP Facility. Notwithstanding any remedies purported to be granted by the DIP Documents, there is no basis for a bankruptcy court to grant a non-debtor party rights to use and occupy real property

---

[5]    Another approach was taken by Judge Isgur in *In re CEC Entm't, Inc.*, Case No. 20-33163 (MI) (Bankr. S.D. Tex. 2020), where the debtors' proposed financing budget failed to provide sufficient funds for the payment of stub rent and other post-petition lease obligations. In that case, Judge Isgur conditioned approval of post-petition financing on the establishment of a $13 million "Rent Reserve Account" to support ultimate payment, subject to adjustment or consensual reduction based upon agreement between the debtors and their landlord. *In re CEC Entm't, Inc.*, Case No. 20-33163 (MI) (Bankr. S.D. Tex. October 13, 2020) [D.I. 1118] (*Order (I) Authorizing the Debtors To (A) Obtain Postpetition Financing, (B) Grant Senior Secured Liens and Superpriority Administrative Expense Claims, etc.* at ¶ 39).

leased by a debtor outside the parameters of Section 365. *See, e.g.*, *In re Antwerp Diamond, Inc.*, 138 B.R. 865, 866-69 (Bankr. N.D. Ohio 1992). Any final order approving the DIP Financing Motion should maintain the limitations on lender access in the exercise of remedies contained in the Interim DIP Order (*see Interim DIP Order* at ¶ 23(b)), consistent with similar limitations in other major Chapter 11 cases and applicable state law.

## JOINDER

To the extent not inconsistent with the foregoing, the Objecting Landlords join in the objections to the DIP Financing Motion filed by Debtors' other landlords and the Official Committee of Unsecured Creditors.

## RESERVATION OF RIGHTS

Objecting Landlords reserve the right to make such other and further objections to the DIP Financing Motion as may be appropriate based upon any new information provided by Debtors or upon any different relief requested by Debtors, or as may be developed through formal and informal discovery.

## CONCLUSION

Any relief under the DIP Financing Motion needs to better balance the competing interests of Debtors, their lenders, landlords and other stakeholders. Objecting Landlords should be granted adequate protection as requested herein, either in the form of the payment or segregation of funds on account of September "stub rent" or the preservation of the Debtors' rights to surcharge the lenders' collateral under Bankruptcy Code sections 506(c).

Dated: October 17, 2024
Wilmington, Delaware

Respectfully submitted,

*/s/ Laurel D. Roglen*
Leslie C. Heilman (DE 4716)
Laurel D. Roglen (DE 5759)
Nicholas J. Brannick (DE 5721)
Margaret Vesper (DE 6995)
BALLARD SPAHR LLP
919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel:  (302) 252-4465
Fax:  (302) 252-4466
Email:  heilmanl@ballardspahr.com
            roglenl@ballardspahr.com
            brannickn@ballardspahr.com
            vesperm@ballardspahr.com

-and-

Ivan M. Gold (admitted *pro hac vice*)
ALLEN MATKINS LECK GAMBLE
 MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
Telephone:  (415) 837-1515
Facsimile:  (415) 837-1516
E-mail:  igold@allenmatkins.com

*Attorneys for Objecting Landlords identified in* <u>Exhibit A</u> *hereto*