UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re

BIG LOTS, INC., *et al.,*[1]

              Debtors.

Chapter 11

Case Nos. 24-11967 (JKS), *et seq.*
(Jointly Administered)

### CICERO 8148 LLC'S LIMITED OBJECTION TO ASSUMPTION AND ASSIGNMENT OF LEASE AND NOTICE OF PROPOSED CURE AMOUNTS FOR CERTAIN UNEXPIRED LEASES
*(relates to Docket Nos. 443, 460)*

Cicero 8148 LLC ("Landlord"), by its undersigned attorney, files this limited objection (the "Objection") to the (i) Notice To Proposed Cure Amounts for Certain Unexpired Leases (Docket No. 443) (the "Cure Notice"), and (ii) the sale of Landlord's unexpired lease (the "Lease") of non-residential real property located at 8148 S Cicero Ave, Burbank, IL (Store No. 4728) (the "Leased Property") by debtor Big Lots Stores-PNS, LLC (the "Debtor"), and in support hereof states as follows:

1.      On September 9, 2024 (the "Petition Date"), each of the above-captioned debtors (including the Debtor, the "Debtors") filed a voluntary petition

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

for relief under Chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On or about November 1, 1972, the Penrich Associates entered into the Lease as landlord with Children's Bargain Town U.S.A., Inc. Through a series of assignments and mergers, Landlord is now the landlord and the Debtor is now the tenant.  The Lease is an unexpired lease of non-residential real property as that term is used in § 365 of the Bankruptcy Code.

3.      On September 11, 2024, the Court entered the an Interim Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases and (III) Granting Related Relief (Docket No. 137), in which it imposed certain "Lease Sale Procedures" on an interim basis with respect to a "First Wave" of lease sales.

4.      On October 8, 2024, the Debtors filed the Cure Notice in which they listed various leases, including but not limited to the Lease, and proposed cure amounts for each lease. The Cure Notice was not proposed in connection with an order of the Court but instead under a certification of counsel to submit a proposed interim order (Docket No. 442).

5.      On October 15, 2024, the Debtor delivered the keys to the Property to Landlord and gave Landlord access to the Property. At that time, Landlord was able to inspect the Property.

6.      In connection with the Lease, the Debtors listed a proposed cure amount of $21,667.00, which represents two months' rent and no other costs or damages. The correct cure amount should actually be at least $364,918.00, calculated as follows as of a projected October 31, 2024 assumption and assignment date:[2]

(A)     The Debtors are in default on rent for three months, totaling $32,500.50.

(B)     Under the Lease, the Debtor is required to pay all property taxes associated with the Property. The property taxes for the year 2024 through and including October 31, 2024 prorates to $140,081.50.

(C)     Under the Lease, the Debtor is required to maintain the Property in good repair at its own expense. During the October 15, 2024 inspection, Landlord became aware that the Property had not been kept in good repair and there were serious upkeep issues. Most notably, the plumbing on the Property had fallen into disrepair and had caused substantial flooding. Landlord

---

[2] The Cure Notice does not state the date for which the Debtors propose the cure amount. Because the Debtor surrendered the keys to the Property on October 15, 2024, Landlord presumes that it intends to seek assumption and assignment on or before October 31, 2024 so as not to pay rent due on November 1st. If the Debtor intend a different date, Landlord reserves the right to amend the cure amounts herein accordingly.

obtained an estimate from a licensed plumber showing that the repair cost is $47,000.00.

(D)    The bricks on the side of the building were not kept up and need to be tuckpointed. Landlord obtained an estimate showing that the repair cost is $86,336.00.

(E)    The parking lots, which the Debtors are required to maintain, are in extreme disrepair, causing a hazard for vehicles. The repair cost is estimated at $57,000.00.

(F)    Landlord has been contacted by the Code Enforcement Division of the City of Burbank, which indicated an intention to issue a citation against Landlord for failure to remove debris around the store. Due to the exigent circumstances, Landlord is begin forced to remove this debris itself and estimates the cost of at $1,000.00.

(G)    The Debtor also failed to pay to remove the trash from the Property. Due to the exigent circumstances, Landlord is begin forced to remove the trash itself and estimates the cost of at $1,000.00.

7.    The foregoing are only the defaults, defects, and repairs that Landlord was able to identify in the 36 hours since it was given access to the Property. For example, Landlord may later discover hidden damage, slip-and-fall lawsuits that have not yet been brought, mechanic's liens, utility liens, and other damage that it

could not reasonably foresee and therefore cannot include in this objection, and reserves the right to amend this objection accordingly.

8.      Landlord also reserves the right to assert that the procedures for the sale of its Lease were not fair. First, the Cure Notice was not issued in accordance with an actual order of the Court, but rather only a proposed order of the Court. Furthermore, Landlord has no record of receiving a copy of any motion seeking entry of that order, so it was entered *ex parte*. Then, when that order was entered by the Court (Docket No. 460), the Debtor sent a copy of it to the wrong address, and Landlord did not receive it until October 15, 2024—which was the same day as the deadline for parties (including Landlord) to submit a Qualified Bid. As the Debtor is not obligated to advise Landlord whether a Qualified Bid was received on the Lease until October 17, 2024 at 5:00 P.M. (without stating a method to notify it), there is no reasonable way Landlord—one of the most likely parties to bid on its own lease—could qualify or participate in the auction scheduled for October 18, 2024 at 10:00 A.M. Landlord reserves the right to argue that this sale process was not effective to realize the highest and best value for the Lease.

9.      The Bankruptcy Code requires the Debtor to cure all defaults under an unexpired lease as of the date of assumption. Section 365(b)(1) of the Bankruptcy Code provides:

(b)(1)  If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A)  cures, or provides adequate assurance that the trustee will promptly cure, such default . . .;

(B)  compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C)  provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

10.    The Debtors are also required to cure all nonmonetary and/or unliquidated obligations under the Lease including, without limitation, indemnification obligations.  *See* 11 U.S.C. § 365(b)(2); *In re Akron Thermal, L.P.*, No. 07-51884, 2008 WL 1886171, *17 (Bankr. N.D.Ohio Apr. 25, 2008; *In re Fleming Cos., Inc.*, No. 03-10945, 2004 WL 385517, *5 (Bankr. D.Del. Feb. 27, 2004). For example, the Debtor is obligated to indemnify Cicero and hold it harmless from a variety of claims relating to automotive and injuries to person and property (¶ 4 of the Lease). The Debtors and any buyer are therefore required to provide adequate assurance that such unliquidated obligations (collectively, the "Unliquidated Obligations") will be promptly cured even if they are not discovered and/or liquidated until after the sale closes.

11.     Cicero thus objects to entry of an order approving a sale of the Lease that does not (a) require that the full amount of the cure cost under the Lease be paid at or prior to assumption and assignment, and (b) provide that any and all Unliquidated Obligations shall survive the assumption and assignment, and that any assignee shall take the Contract subject to all of its respective terms and undertake to satisfy all monetary and non-monetary obligations under the Contract, regardless of whether such obligations could be argued to have existed, occurred, or accrued prior to the assumption and assignment of the Contract.

12.     Nothing in this Objection is intended to be, or should be construed as, a waiver by Cicero of any of its rights under the Contract, the Bankruptcy Code, or applicable law. Cicero expressly reserves all such rights including, without limitation, the right to: (a) supplement and/or amend this Objection to assert any additional objections with respect to the Cure Notice and/or any proposed assumption and assignment of the Lease; (b) amend the cure costs under the Lease; (c) assert any additional unliquidated obligations and/or nonmonetary defaults under the Lease; (d) object to the assumption and assignment of the Lease to any proposed purchaser with providing adequate assurance of future performance; (e) assert a claim for allowance of administrative expenses under § 503 of the Bankruptcy Code; and (f) demand immediate payment of all amounts due under,

and full compliance with, the Lease to the extent required under § 365 of the Bankruptcy Code.

WHEREFORE, Cicero respectfully requests that this Honorable Court:

(A)    Condition the Debtors' request for assumption (including the assumption and assignment) of the Lease upon (i) payment of the correct cure cost, including attorneys' fees and expenses, on or before closing, (ii) survival of any Unliquidated Obligations after the assumption and assignment, and (iii) the Debtors' providing of adequate assurance of future performance under the Lease by any proposed assignee thereof; and

(B)    Grant Cicero such further relief as this Court deems just and proper.


Dated:    October 17, 2024          Respectfully submitted,
          Wilmington, Delaware
                                     HILLER LAW, LLC


                                     /s/ Adam Hiller
                                     Adam Hiller (DE No. 4105)
                                     300 Delaware Avenue, Suite 210, #227
                                     Wilmington, Delaware 19801
                                     (302) 442-7677 telephone
                                     ahiller@adamhillerlaw.com

                                     *Attorney for Cicero 8148 LLC*