## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
|  | **Re: D.I. 16, 134 & 557** |

### FINAL ORDER (I) AUTHORIZING DEBTORS TO ASSUME THE CONSULTING AGREEMENT, (II) AUTHORIZING STORE CLOSING SALES AND APPROVING RELATED PROCEDURES, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for entry of a final order pursuant to sections 105(a), 363(b), 363(f), and 554(a) of the Bankruptcy Code and Bankruptcy Rules 6003, 6004, 6006, and 6007, (a) authorizing BL Stores to assume the Services Agreement (a copy of which is attached hereto as **Schedule 1**), (b) authorizing and approving the continuation of the Store Closing Sales free and clear of all liens, claims, interests, and encumbrances, (c) approving the Store Closing Procedures (a copy of which is attached hereto as **Schedule 2**), and (d) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of the Chapter 11 Cases and related proceedings being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the Ramsden Declaration; and the Court having held a hearing to consider the relief requested in the Motion on a final basis (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and the Ramsden Declaration and at the Hearing establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all other parties in interest; and all objections and reservations of rights filed or asserted in respect of the relief requested in the Motion on a final basis, if any, having been withdrawn, resolved, or overruled; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Debtors have demonstrated compelling and sound business justifications for assuming the Services Agreement, conducting the Store Closing Sales and Store Closings, and adopting the Store Closing Procedures on a final basis; as such, assumption of the Services Agreement, conducting the Store Closing Sales and Store Closings, and adoption of the Store Closing Procedures constitutes an exercise of the Debtors' sound business judgement and is in the best interests of the Debtors and their estates and stakeholders.

C.      The Consultant and BL Stores negotiated and entered into the Services Agreement in good faith, at arm's-length, and without collusion, and the terms therein are fair, reasonable, and appropriate.

D.      The Store Closing Procedures are fair, reasonable, appropriate and designed to maximize the value of the Store Closing Assets, and conducting the Store Closing Sales and Store Closings in accordance with the Store Closing Procedures will provide an efficient means for the Debtors to dispose of the Store Closing Assets and are in the best interests of the Debtors and their estates and stakeholders.

E.      The Dispute Resolution Procedures are fair and reasonable and comply with applicable law.

F.      The Debtors have represented that they intend to neither sell, lease, nor abandon Personal Identifying Information pursuant to the relief requested in the Motion.

G.      The Debtors have represented that they will utilize all commercially reasonable efforts to remove or cause to be removed any confidential or Personal Identifying Information, as defined under 11 U.S.C. section 101(41A), from any Store Closing Asset prior to its Sale or abandonment.   At this time, the Court finds that the appointment of a consumer privacy

ombudsman is unnecessary; however, if circumstances change, Governmental Units may, in order to protect consumers, file a motion requesting the appointment of a consumer privacy ombudsman.

H.      The Consultant is not an insider of the Debtors.

I.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this order (this "**Final Order**") is in the best interests of the Debtors and their estates and stakeholders.

ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is granted on a final basis as set forth in this Final Order.

2.      To the extent of any conflict between the Store Closing Procedures and the Services Agreement, the Services Agreement shall control.  To the extent of any conflict among this Final Order, the Store Closing Procedures, and the Services Agreement, the terms of this Final Order shall control.

3.      <u>Services Agreement</u>.  BL Stores is authorized, on a final basis, to assume the Services Agreement pursuant to sections 363 and 365 of the Bankruptcy Code.

4.      The Debtors are authorized to act and perform in accordance with the terms of the Services Agreement on a final basis, including making payments to the Consultant required by the Services Agreement without a further order of the Court and without the need for the Consultant to apply for same.  The Consultant's fees and expenses shall be paid from the gross proceeds of the Store Closing Sales, and shall be subject to any Approved DIP Budget agreed to by the Debtors and the terms of the Services Agreement, including as to the Expense Budget.

5.      Subject to the restrictions set forth in this Final Order and the Store Closing Procedures, the Debtors and the Consultant are hereby authorized to take any and all actions as may be necessary or desirable to implement the Services Agreement.

6.      The Services Agreement and related documents may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court so long as (i) any such modifications, amendment or supplements are not adverse to the Debtors or their estates, (ii) the interest of the landlords under the applicable Leases are not adversely affected, or as otherwise ordered by the Court.

7.      Notwithstanding anything contrary in the Services Agreement, the Debtors and their estates shall not indemnify the Consultant for any damages arising out of the Consultant's fraud, willful misconduct, or gross negligence.

8.      <u>Store Closing Sales and Store Closings</u>.  The Debtors are authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to continue conducting or to commence the Store Closing Sales in accordance with this Final Order, the Store Closing Procedures, and the Services Agreement.

9.      The Store Closing Procedures are approved in their entirety on a final basis.

10.      Neither the Debtors nor the Consultant nor any of their respective officers, employees, or agents shall be required to obtain the approval of any third party, including any Governmental Unit or landlord, to conduct the Store Closing Sales and Store Closings and to take the actions related to the Store Closing Sales and Store Closings, as authorized herein.

11.      The Debtors and/or the Consultant and the landlords of the Stores are authorized to enter into the Side Letters modifying the Store Closing Procedures without further order of the Court, and each such Side Letter shall be binding on the Debtors, the Consultant, and the applicable landlords, *provided, however*, that the Store Closing Procedures may not be materially modified without the consent of the Debtors and the DIP Agents (as defined in the DIP Orders), which shall not be unreasonably withheld, conditioned, or delayed.  In the event of any conflict between the

Store Closing Procedures and any Side Letter, the terms of such Side Letter shall control. To the extent there is a conflict between either the Store Closing Procedures, the Consultant Agreement or the Side Letter on the one hand, and this Final Order on the other hand, this Final Order shall control; *provided*, *however*, that the applicable Side Letter, if any, shall control over this Final Order solely as it relates to the conduct of the Store Closing Sales at the applicable Store.

12.    Newspapers and other media in which the Store Closing Sales may be advertised and all applicable landlords are directed to accept this Final Order as binding authority authorizing the Debtors and the Consultant to conduct the Store Closing Sales and Store Closings pursuant to the Services Agreement, including, conducting and advertising the sale of the Store Closing Assets in the manner contemplated by and in accordance with this Final Order, the Store Closing Procedures, any applicable Side Letter, and the Services Agreement (as modified by any Side Letter).

13.    The Debtors and the Consultant are authorized to take such actions as may be necessary and appropriate to implement the Services Agreement and conduct the Store Closing Sales and Store Closings without further order of the Court as provided in the Services Agreement and the Store Closing Procedures, including advertising the Store Closing Sales as a "going out of business," "store closing sale", "sale on everything", "everything must go", or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent that the applicable closing location entrance does not require entry into the enclosed mall common area), use of sign-walkers, A-frames, and other street signage, as contemplated in the Store Closing Procedures (subject to any Side Letter).

14.     Except as expressly provided in the Services Agreement or the Store Closing Procedures, the Debtors and the Consultant may conduct the Store Closing Sales, Additional Consultant Goods Sales, and Store Closings notwithstanding any Lease Restriction affecting or purporting to restrict the conduct of the Store Closing Sales, Additional Consultant Goods Sales, or Store Closings or the abandonment of any Store Closing Assets.  Such Lease Restrictions shall not be enforceable with respect to the Store Closing Sales, Additional Consultant Goods Sales, Store Closings, or abandonment of Store Closing Assets, and the breach of any such Lease Restrictions in connection with the Store Closing Sales, Additional Consultant Goods Sales, Store Closings, or abandonment of Store Closing Assets shall not constitute a default under the applicable instrument, including a Lease, or provide a basis to terminate such instrument; *provided* that the Store Closing Sales, Additional Consultant Goods Sales, Store Closings, and abandonment of Store Closing Assets are conducted in accordance with the terms of this Final Order or the Store Closing Procedures.

15.     Except as expressly provided for herein or in the Store Closing Procedures, no person or entity, including any Governmental Unit, landlord, licensor, service provider, utility, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sales, the Additional Consultant Goods Sales, the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such sales, or the Store Closings, and all such parties and persons of every nature and description, including any Governmental Unit, landlord, licensor, service provider, utility, or creditor, or anyone acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding the conduct of the Store Closing Sales, Additional Consultant Goods Sales, or Store Closings and (b) instituting any action or proceeding

in any court (other than in the Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords at the Stores that might in any way directly or indirectly obstruct, interfere with, hinder, or adversely affect the conduct of the Store Closing Sales, Additional Consultant Goods Sales, or Store Closings or seek to recover damages for breach(es) of covenants or provisions in any Lease, license, or contract based upon any relief authorized herein.

16.     In accordance with and subject to the terms and conditions of the Services Agreement, the Consultant shall have the right to use the Stores, the Store Closing Assets, and other assets of the Debtors for the purpose of conducting Store Closing Sales free of any interference from any entity or person, subject to compliance with the Store Closing Procedures and this Final Order.

17.     The Consultant is authorized to supplement the Merchandise in the Stores with Additional Consultant Goods; *provided* that any such Additional Consultant Goods must be of like kind and no lesser quality than the Merchandise.  Sales of Additional Consultant Goods shall be run through the Debtors' cash register systems; *provided*, *however*, that the Consultant shall mark the Additional Consultant Goods using either a "dummy" SKU or department number or in such other manner that shall distinguish the Additional Consultant Goods from the Merchandise.  The Consultant and the Debtors shall cooperate to ensure that the Additional Consultant Goods are marked in such a way that a reasonable consumer could distinguish the Additional Consultant Goods from the Merchandise.

18.     All transactions relating to the Additional Consultant Goods are, shall be construed as, and are acknowledged by the Debtors to be, a true consignment from the Consultant to the Debtors under Article 9 of the Uniform Commercial Code in effect in the State of Delaware (the

"**UCC**") and not a consignment for security purposes.  For the avoidance of doubt, any disbursements by the Debtors to the Consultant of proceeds of the Additional Consultant Goods shall not be considered disbursements for purposes of calculating quarterly fees payable by the Debtors pursuant to 28 U.S.C. § 1930(a)(6).

19.     The Consultant shall pay to the Debtors an amount equal to five percent (5%) of the gross proceeds (excluding sales taxes) from the sale of Additional Consultant Goods in the Stores completed during the Sale Term.  All remaining amounts from the sale of the Additional Consultant Goods shall be the exclusive property of the Consultant, and no other person or entity shall have any claim against any of the Additional Consultant Goods or their proceeds.  At the Consultant's sole cost and expense, the Debtors shall insure the Additional Consultant Goods at the Consultant's request and, if required, promptly file any proofs of loss with regard to the same with the Debtors' insurers.  The Consultant shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Consultant Goods.

20.     The Consultant is hereby granted a first-priority security interest in and lien on (a) the Additional Consultant Goods and (b) the Additional Consultant Goods proceeds, which security interest shall be deemed perfected, on a final basis, pursuant to this Final Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties; *provided* that the Consultant is authorized to deliver any notices and file any financing statements under the applicable UCC and amendments thereof with respect to the Consultant's interest in the Additional Consultant Goods and any proceeds from the sale thereof.

21.     All Store Closing Sales and Additional Consultant Goods Sales shall be "as is" and final.  No returns related to the purchase of the Store Closing Assets or Additional Consultant Goods shall be accepted at any Stores or any stores that are not participating in the Store Closing

Sales.  Conspicuous signs stating that "all sales are final" and "as is" shall be posted at the point-of-sale areas at all Stores.  However, as to the Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of such goods or the use of the terms "as is" or "final sales." As to the Stores, the Debtors shall accept return of any goods purchased during the Store Closing Sales that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within seven (7) days of purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect.

22.     The Consultant shall not be liable for sales taxes except with respect to the Additional Consultant Goods or as expressly provided in the Services Agreement, and the payment of all sales taxes (except with respect to the Additional Consultant Goods or as expressly provided in the Services Agreement) is the responsibility of the Debtors.  The Debtors are directed to remit all taxes arising from the Store Closing Sales to the applicable Governmental Units as and when due; *provided* that, in the case of a bona fide dispute, the Debtors are only directed to pay such taxes upon the resolution of such dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  The Consultant shall collect, remit to the Debtors, and account for sales taxes as and to the extent provided in the Services Agreement.  This Final Order does not (a) enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state or federal law or (b) constitute a declaratory judgment with respect to any party's liability for taxes under state or federal law.

23.     Pursuant to section 363(f) of the Bankruptcy Code, all Store Closing Sales, whether by the Consultant or the Debtors, shall be free and clear of any and all liens, claims, interests, encumbrances, and defenses (including rights of setoff), including security interests of whatever kind or nature, mortgages conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state, and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, alter ego and other liabilities, causes of action, contract rights, and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether prepetition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or noncontingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "**Encumbrances**"), as provided for herein because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) has been satisfied.  Unless a party asserting a prepetition Encumbrance on any of the Store Closing Assets timely and properly objects to this Motion, such party shall be deemed to have consented to the Store Closing Procedures and the Store Closing Sales.

24.     The Debtors and the Consultant are authorized and empowered to transfer Store Closing Assets and Additional Consultant Goods among, and into, the Stores.

25.     The Consultant may use the Debtors' customer lists and mailing lists (if any) in accordance with the Services Agreement solely for purposes of advertising and promoting Store Closing Sales.

26.     The Debtors shall utilize all commercially reasonable efforts to remove or cause to be removed any confidential or Personal Identifying Information from any Store Closing Asset prior to its Sale or abandonment.  At the conclusion of the Store Closing Sales, the Consultant shall provide the Debtors with written verification that the Consultant has not removed, copied, or transferred any Personal Identifying Information and that any records containing Personal Identifying Information were shredded, erased, or otherwise modified to render the Personal Identifying Information unreadable or undecipherable.

27.     Nothing in this Final Order shall (a) alter or affect the Debtors' obligations to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a Lease with the Debtors to file an appropriate motion or otherwise seek relief if the Debtors fail to comply with section 365(d)(3) of the Bankruptcy Code; *provided* that the conduct of the Stores Closings and Store Closing Sales in accordance with the Store Closing Procedures, as may have been modified by any Side Letter, shall not be in violation of section 365(d)(3) of the Bankruptcy Code.  The Debtors are authorized to enter into short-term extension agreements with respect to any Lease that is set to expire during the Sale Term.

28.     Nothing in this Final Order, the Services Agreement, or the Store Closing Procedures releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order.  Nothing contained in this Final

Order, the Services Agreement, or the Store Closing Procedures shall in any way (a) diminish the obligation of any entity to comply with environmental laws or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtor in possession under the Bankruptcy Code. The Store Closings and the Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment (including applicable WARN Act obligations), environmental, antitrust, fair competition, traffic, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "**General Laws**").  Nothing in this Final Order, the Services Agreement, or the Store Closing Procedures, shall alter or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Final Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws, subject to the Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Final Order.  Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

29.    With respect to any Additional Closing Stores, within five (5) business days after filing any Additional Closing Store List with the Court, the Debtors will serve by first-class mail, copies of the Final Order or the Final Order, as applicable, the Services Agreement, and the Store Closing Procedures attached on the U.S. Trustee, the Additional Closing Store Landlords and counsel to any official committee appointed in the Chapter 11 Cases.

30.     To the extent that the Store Closing Sales are subject to any Liquidation Sale Laws, including any federal, state or local statute, ordinance, rule, or licensing requirement directed at regulating "going out of business," "store closing," or similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, signage, and use of sign-walkers solely in connection with the Store Closing Sales, including ordinances establishing license or permit requirements, waiting periods, time limits, or bulk sale restrictions that would otherwise apply solely to the Store Closing Sales, the following dispute resolution procedures in this section shall apply:

a.   Within three business days after entry of this Final Order, the Debtors will serve, by first-class mail, copies of this Final Order (with the Services Agreement and the Store Closing Procedures attached) on the following: (i) the office of the Attorney General for each state where the Store Closing Sales are being conducted; (ii) the county consumer protection agency or similar agency for each county where the Store Closing Sales are being conducted; (iii) the division of consumer protection for each state where the Store Closing Sales are being conducted; and (iv) the landlords of the Stores.

b.   To the extent that there is a dispute arising from or relating to the Store Closing Sales, the Store Closings, this Final Order, the Services Agreement, or the Store Closing Procedures, which dispute relates to any Liquidation Sale Laws (a "**Reserved Dispute**"), the Court will retain exclusive jurisdiction to resolve the Reserved Dispute. A party wishing to submit a Reserved Dispute (a "**Disputing Party**") must serve a notice of Reserved Dispute (a "**Dispute Notice**") within ten days following entry of the this Final Order (including an additional ten days after an Additional Closing Store List is filed) (the "**Dispute Deadline**") on the following:  (i) proposed counsel to the Debtors, (A) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017, Attn: Brian M. Resnick, Esq. (brian.resnick@davispolk.com), Adam L. Shpeen, Esq. (adam.shpeen@davispolk.com), Stephen D. Piraino, Esq. (stephen.piraino@davispolk.com), and Ethan Stern, Esq. (ethan.stern@davispolk.com), and (B) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq. (rdehney@morrisnichols.com), Andrew R. Remming, Esq. (aremming@morrisnichols.com), Daniel B. Butz, Esq. (dbutz@morrisnichols.com), Tamara K. Mann, Esq. (tmann@morrisnichols.com), and Casey B. Sawyer, Esq. (csawyer@morrisnichols.com); (ii) the Consultant, Gordon Brothers Retail Partners, LLC, 101 Huntington Avenue, Suite 1100, Boston, MA 02199, Attn: Andy Stone (astone@gordonbrothers.com) and David Braun (dbraun@gordonbrothers.com); (iii) counsel to the Consultant, Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, NY 10036 (Attn: Steven E. Fox) (sfox@riemerlaw.com); (iv) the United States Trustee for Region 3 (the "**U.S.**

**Trustee**"), J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Linda Casey; (v) counsel to the DIP ABL Agent (as defined in the DIP Orders), (A) Choate Hall, & Stewart, LLP, 2 International Place, Boston, MA 02110, Attn: John Ventola (jventola@choate.com), Jonathan Marshall (jmarshall@choate.com) and Jacob Lang (jslang@choate.com), and (B) Blank Rome LLP, 1201 N. Market Street Suite 800, Wilmington, DE 19801, Attn: Regina Stango Kelbon (regina.kelbon@blankrome.com) and Stanley Tarr (stanley.starr@blankrome.com); (vi) counsel to the DIP Term Agent (as defined in the DIP Orders), (A) Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Chad B. Simon (csimon@otterbourg.com), James V. Drew (jdrew@otterbourg.com), and Sarah L. Hautzinger (shautzinger@otterbourg.com), and (B) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn: John H. Knight, Esq. (knight@rlf.com); (vii) counsel to any official committee appointed in the Chapter 11 Cases; and (viii) the affected landlord and their counsel of record (if known). If the Debtors, the Consultant, and the Disputing Party are unable to resolve the Reserved Dispute within 15 days after service of the Dispute Notice, the Disputing Party may file a motion with the Court requesting that the Court resolve the Reserved Dispute (a "**Dispute Resolution Motion**").

c.  In the Dispute Resolution Motion, the Disputing Party shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of the applicable Liquidation Sale Laws or the lack of preemption of such Liquidation Sale Laws by the Bankruptcy Code.

d.  Nothing in this Final Order precludes the Debtors, any landlord, or any other interested party from asserting that (i) any provision of any Liquidation Sale Laws is preempted by the Bankruptcy Code, or (ii) neither the terms of this Final Order nor the conduct of the Consultant or the Debtors pursuant to this Final Order violates any Liquidation Sale Laws. The filing of a Dispute Resolution Motion will not affect the finality of this Final Order or limit or interfere with the Debtors' or the Consultant's ability to conduct the Store Closing Sales, absent further order of the Court. Nothing in this Final Order constitutes a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

e.  In a dispute relating to the Leases between the Consultant and/or the Debtors and a landlord, the Debtors, the Consultant, and the landlord may seek an emergency hearing before the Court on no less than three business days' notice, unless the parties agree to a hearing on a shorter notice, in each respect subject to the Court's availability.

f.  Notwithstanding anything to the contrary herein, in view of the importance of the use of sign-walkers, banners, and other advertising for the Store Closing Sales, to the extent that disputes arise during the course of the Store Closing Sales regarding laws regulating the use of sign-walkers, banners, or other advertising and the Debtors and the Consultant are unable to resolve the matter consensually, any party may request an immediate telephonic hearing with the Court. Such hearing will, to the extent practicable and subject to the Court's availability, be scheduled initially no later than within three business days of such request. This scheduling procedure shall not be

deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

g.  If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraph (d) above by serving a notice to the other party and proceeding thereunder in accordance with that paragraph.  Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made de novo.

h.  Provided that the Store Closing Sales are conducted in accordance with the terms of this Final Order, the Services Agreement, or the Store Closing Procedures (subject to any Side Letter), and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors and the Consultant shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Store Closing Sales in accordance with the terms of this Final Order and the Store Closing Procedures, without the necessity of further showing compliance with any such Liquidation Sale Laws.

31.     Subject to paragraphs 28 and 30 above, each and every federal, state, and local agency, department, and Governmental Unit with regulatory authority over the Store Closing Sales shall consider this Final Order as binding authority that no further approval, license, or permit of any federal, state, or local agency, department, or Governmental Unit shall be required, nor shall the Debtors or the Consultant be required to post any bond, to conduct Store Closing Sales. Nothing in this Final Order is intended to affect any rights of any Applicable Government Unit to enforce any law affecting the Debtors' conduct of any store closing sale that occurred prior to the Petition Date.

32.     The Consultant shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Consultant, in each case other than as expressly provided for in the Services Agreement.

33.     To the extent that the Debtors are subject to any state Fast Pay Laws in connection with the Store Closing Sales, the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of (a) the Debtors'

next regularly scheduled payroll and (b) seven (7) calendar days following the termination date of the relevant employee, and, in all such cases, consistent with, and subject to, any previous orders of the Court regarding payment of same.

34.     Prior to conducting Sales at any additional stores pursuant to the procedures set forth herein (the "**Additional Closing Stores**"), the Debtors shall file a list including such Additional Closing Store with this Court (each, an "**Additional Closing Store List**"), and serve a notice of their intent to conduct the Sales at the Additional Closing Store on the applicable landlords (collectively, the "**Additional Closing Store Landlords**"), the Additional Closing Store Landlord's counsel of record (if known), certain state Attorneys General and other interested parties by email (to the extent available to the Debtors) or overnight mail.  With respect to Additional Closing Store Landlords, the Debtors will mail, if applicable, such notice to the notice address set forth in the lease for such Additional Closing Store (or, if none, at the last known address available to the Debtors).

35.     The Additional Closing Store Landlords and any interested parties shall have five (5) days after service of the applicable Additional Closing Store List to object to the application of this Final Order and the Store Closing Procedures, or otherwise enter into a Side Letter.  If no timely objections are filed with respect to the application of this Final Order to an Additional Closing Store, the Debtors are authorized, pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, to proceed with conducting the Sales at the Additional Closing Stores in accordance with this Final Order, the Store Closing Procedures, and the Services Agreement.  If any objections are filed with respect to the application of this Final Order, to an Additional Closing Store, and such objections are not resolved, the objections and the application of this Final Order to the Additional Closing Store will be considered by the Court at the next regularly scheduled

omnibus hearing, subject to the rights of any party to seek relief on an emergency basis on shortened notice, to the extent necessary. Any objections as to particular Additional Closing Stores will not affect the Debtors' and Consultant's right to begin Closing Sales at non-objected Additional Closing Stores.

36.     Neither the Consultant nor any of its respective affiliates (whether individually, as part of a joint venture, or otherwise) shall be precluded from providing additional services to the Debtors including pursuant to the Services Agreement and/or bidding on the Debtors' assets not subject to the Services Agreement in connection with any other future process that may or may not be undertaken by the Debtors to close additional stores; *provided* that any such services and/or transactions is approved by separate order of the Court.

37.     The Consultant shall act solely as an independent consultant to the Debtors and shall not be liable for any claims against the Debtors other than as expressly provided in the Services Agreement (including the Consultant's indemnity obligations thereunder) or the Store Closing Procedures, with the exception of acts of fraud, gross negligence, or willful misconduct and, for greater certainty, the Consultant shall not be deemed to be an employer, or a joint or successor employer or a related or common employer or payor of any of the Debtors' employees within the meaning of any legislation governing employment or labor standards or pension benefits or health and safety or other statute, regulation, or rule of law or equity for any purpose whatsoever, and shall not incur any successor liability whatsoever.

38.     The Debtors are authorized and permitted to transfer to the Consultant personal information in the Debtors' custody and control solely for the purposes of assisting with and conducting the Store Closing Sales and only to the extent necessary for such purposes; *provided*

that Consultant removes such personal information from the Store Closing Assets prior to the sale or abandonment of the same.

39. Notwithstanding anything to the contrary in this Final Order or the Services Agreement, the Debtors shall not sell or abandon any property that the Debtors know is not owned by the Debtors; provided that the Debtors will either (a) provide for the return of such property to the Debtors' headquarters or (b) return such property to the applicable lessor, or other owner of the property; provided, however, that the Debtors may abandon property owned by the Landlord at the applicable Store.

40. No later than seven (7) days prior to the objection deadline to entry of a final order on the Motion, the Consultant shall file a declaration disclosing any connections to the Debtors, their creditors, and other parties in interest in these Chapter 11 Cases, and the Debtors shall serve the same on the U.S. Trustee, any official committee of unsecured creditors appointed in these cases, and all parties who have filed requests for service under Bankruptcy Rule 2002, by email, or if the email address is not available to the Debtors, then by first class mail. If the Consultant syndicates a portion of its services in connection with a Store Closing Sale to a comparable retail liquidation firm (a "**Syndicated Consultant**"), such Syndicated Consultant shall, within fifteen (15) business days of entering into an agreement to perform such services, shall file a declaration disclosing connections to the Debtors, their creditors, and other parties in interest in these Chapter 11 Cases, and the Debtors shall serve the same on the U.S. Trustee, any official committee of unsecured creditors appointed in these cases, and all parties who have filed requests for service under Bankruptcy Rule 2002, by email, or if the email address is not available to the Debtors, then by first class mail.

41.    Within 30 days of the conclusion of the Store Closing Sales, the Debtors shall file with the Court a summary report of the Store Closing Sales that will include (a) a list of the Stores closed and (b) gross revenue from the Store Closing Sales.

42.    On a confidential basis and for professionals' "eyes only" and upon the written (including email) request of the U.S. Trustee (which request has been made), the National Association of Attorneys General or the Committee, the Debtors shall provide such requesting party, if any, with copies of periodic reports and detailed information regarding the calculation of fees paid to the Consultant and expenses reimbursed to the Consultant concerning the Sales that are prepared by the Debtors, their professionals or the Consultant.  The Debtors shall provide the Committee with a copy of the Expense Budget within two (2) business days of making such a request in writing (which may be by email).

43.    Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Final Order or any payment made pursuant to this Final Order shall constitute, nor it is intended to constitute, (a) an agreement or admission by the Debtors as to the amount, priority, character, or validity of any claim against the Debtors on any grounds, (b) a grant of third-party beneficiary status or bestowal of any additional rights on any third party, (c) a waiver or impairment of any rights, claims, or defenses of the Debtors' rights to dispute the amount, priority, character, or validity of any claim on any grounds, whether under bankruptcy or non-bankruptcy law, (d) a promise by the Debtors to pay any claim, or (e) an implication or admission by the Debtors that such claim is payable pursuant to this Final Order.

44.    Notwithstanding anything to the contrary in the Interim Order, this Order, the Store Closing Procedures, the Services Agreement, or any Side Letter none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and

the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred pursuant to any Store Closing Sale(s) without the express prior written consent of the applicable insurer and/or third-party administrator.

45.     Notwithstanding anything to the contrary in the Interim Order and this Final Order nothing in this Final Order or the Interim Order shall relieve the Debtors of any obligations under federal, state, or local police or regulatory laws or under 28 U.S.C. § 959(b), provided that nothing herein shall limit or impair the Debtors' rights to assert defenses under applicable law and nothing herein shall create new defenses to obligations under police or regulatory laws or 28 U.S.C. § 959(b). Further, nothing in the Interim Order or Final Order limits any governmental unit in the exercise of its police powers in accordance with 11 U.S.C. § 362(b)(4), included, but not limited to, the Governmental Units' ability to bring any such police and regulatory case in the forum of their choice.

46.     Upon the conclusion of a Store Closing of any Store that is the record situs of property encumbered by a statutory tax lien, the Debtors shall pay any undisputed and invoiced 2024 tangible personal property taxes to Broward County, Florida, and the Orange County, Florida, tax collector, as soon as reasonably practicable but no later than 30 days after the conclusion of any such Store Closing and receipt of such invoice.

47.     Nothing in this Order shall amend, alter, or otherwise modify the terms of the DIP Order as it relates to the Texas Tax Reserve (as defined therein).

48.     Notwithstanding anything to the contrary in the Interim Order, this Final Order, the Store Closing Procedures, or the Services Agreement, nothing in the Interim Order, this Final Order, the Store Closing Procedures, or the Services Agreement shall amend, alter, invalidate, limit, or otherwise affect any of the leases or other documents governing the distribution centers

used by the Debtors, including the enforceability, rights, remedies, restrictions, or other terms of such leases or other documents.

49.     Any Bankruptcy Rule or Local Rule that might otherwise delay the effectiveness of this Final Order is hereby waived, and the terms and conditions of this Final Order shall be effective and enforceable immediately upon its entry.

50.     The Debtors and the Consultant are authorized to take any action necessary or appropriate to implement and effectuate the terms of, and the relief granted in, this Final Order without seeking further order of the Court.

51.     The Court shall retain jurisdiction over any matter arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**Dated: October 21st, 2024**
**Wilmington, Delaware**

**J. KATE STICKLES**
**UNITED STATES BANKRUPTCY JUDGE**