# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.,*<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>Re: Docket Nos. 13, 460, & 575<br><br>Objections: October 25, 2024, at 5:00 p.m.<br>Hearing: October 31, 2024, at 12:00 p.m. |

## OBJECTION TO PROPOSED SALE OF
## LEASE #5444, 1801 S. SEMORAN BLVD, ORLANDO, FLORIDA

Landlord Shadrall Orlando, LP hereby files this Objection (this "**Objection**") to the proposed sale of Lease # 5444 to Brook Valley Thrift Stores [ECF No. 575-1] pertaining to the real property and related improvements located at 1801 S. Semoran Blvd., Orlando, FL, and in support thereof does state as follows:

1.    On or about September 9, 2024, (the "Petition Date") Big Lots, Inc. and each of its subsidiaries (collectively, "Big Lots" or the "Debtors") filed voluntary petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to chapter 11 of title 11 of the United States Code, (as amended, the "Bankruptcy Code").

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores – PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores – CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the Debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

2. On October 9, 2024, the Court entered the Second Interim Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief [ECF No. 460] (the "Lease Sale Procedures Order"). According to the terms of the Lease Sale Procedures Order, this Court authorized the Debtors, on an interim basis, to conduct an auction for the sale or transfer of certain leases.

3. Prior to the Petition Date, on or about February 5, 2021, the Debtor Big Lots Stores, Inc. (as Tenant) and Shadrall Orlando, LP (as Landlord) entered into that certain lease (the "Lease")2 whereby the Debtor leased certain real property located in a shopping center located at 1081 S. Semoran Blvd., Orlando, FL 32822 (the "Shopping Center").

4. On October 21, 2024, pursuant to the Lease Sale Procedures Order the Debtors filed their Second Notice of Successful Bidders with Respect to the Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases [ECF No. 575] (the "Second Notice"). In the Second Notice on Exhibit A thereto, the Debtors identified Brook Valley Thrift Stores as the proposed winner of an auction to purchase the Lease.

**The Debtors and Brook Valley Have Failed to Provide Adequate Assurance of Future Performance**

5. Section 365(b) of the Bankruptcy Code generally provides that a debtor may assume any unexpired lease so long as (a) the debtor cures any monetary default and (b) provides adequate assurance of future performance. See, 11 U.S.C. § 365(b).

6. The Bankruptcy Code further provides:

---

2 A true and correct copy of the Lease is attached hereto as **Exhibit 1**.

"Adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance –

(A) of the source of rent, and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

(B) that any percentage rent due under such lease will not decline substantially;

(C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

7. The Debtor and the proposed assignee bear the burden of providing adequate assurance to the lessor. See In re RS Legacy Corp., 15-10197, 2015 Bankr. LEXIS 2206 (Bankr. D. Del. June 25, 2015).

8. Here the Debtor and Brook Valley have failed to adequately assure Landlord in accordance with and as required by Bankruptcy Code section 365(b)(3). For example, while Brook Valley has provided a balance sheet[3] dated as of August 31, 2024, it is a vastly smaller company than Big Lots, particularly as of execution of the Lease in January/February 2021. Brook Valley plainly does not have similar financial conditions and operating performance as Big Lots. Brook

---

[3] Brook Valley's bid letter, balance sheet, and statement of operations, is attached hereto as **Exhibit 2**.

Valley purports to operate just 13 thrift stores in six states, and reports Operating Income of a little over $7 million.4  Brook Valley lists its total assets at $33 million.

9.    In contrast, Big Lots operates more than 1,300 stores across 48 states.5  As of January 2021, just before the Debtor signed the Lease, Big Lots reported $395.3 million in Operating Income, and total assets of $4.037 billion.6  In other words, Big Lots is exponentially larger in terms of financial conditions and operational performance than is Brook Valley.

10.    The Debtor and Brook Valley's failure to show that their financial condition and operating performance are similar is fatal to any sufficient showing of adequate assurance under section 365(b)(3).  For this reason alone, the proposed assignment must fail.

11.    Moreover, the Bankruptcy Code requires the Debtor and the proposed assignee to show that the proposed assignment of the Lease is subject to all provisions of the Lease including restrictions on use. See 11 U.S.C. §365(b)(3)(C).  The Debtors and Brook Valley fair no better under this section 365(b)(3) requirement.

12.    Presumably, Brook Valley plans to operate the Leased premises as a thrift store as is their business.  Section 4(A) of the Lease allows the Tenant to "use and occupy the Demised Premises for . . . any other lawful retail purpose not specifically excluded herein."7   Section 4(F) confirms

---

4 The $7 million number includes stores divested by Brook Valley in September of this year. *See* Exhibit 2 at p. 3.

5 *See* Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings, ECF No. 3, at ¶6.

6 https://debtwire.ionanalytics.com/company/546983 (last visited 10/24/2024); printed version attached hereto as **Exhibit 3**.

7 Lease, § 4(A).

> Notwithstanding anything contained in this Lease to the contrary, neither Tenant, its successors and/or assigns nor Landlord, its successors and/or its assigns shall use the Demised Premises and shall not allow or permit the Shopping Center to be used for the following…(ii) <u>to operate a second hand, so-called "Army and Navy" surplus store</u>, or for the conduct of distress, auction, fire, liquidation, going-out-of-business or bankruptcy sales, or for the operation of a discount priced clearance center operation as that term is generally used at this time and from time to time hereafter, expect as permitted herein <u>a store selling used apparel</u> or "fleas market" type operation or other operation selling goods (<u>except excluding antiques, estate merchandise, "upscale merchandise" or consignment merchandise or retailers such as goodwill</u>)."

13. The Lease, while seeming to permit certain types of apparel stores, prohibits second-hand stores. Brook Valley describes itself as a thrift store.[8] Merriam-Webster defines a thrift shop as "a shop that sells secondhand articles and especially clothes and is often run for charitable purposes."

14. The premises under the Lease are part of an integrated first-class shopping center that includes other tenants. Section 4(C) of the Lease requires the Tenant to "stock and display merchandise in a reasonable manner consistent with the standards of a first-class retail center." The product offerings, merchandise and clientele of a thrift store are inconsistent with the first-class nature of the Shopping Center.

15. Landlord files this Objection in compliance with the Second Notice. Landlord reserves the right to request an adjournment of this hearing to continue to negotiate resolutions of this matter with the Debtors and/or Brook Valley. Landlord further reserves its rights to conduct additional discovery as may be needed in advance of any contested hearing on this matter.

---

[8] See Exhibit 2, Bid Letter; *see also* Brook Valley's website: http://www.buythrift.com.

WHEREFORE, Shadrall Orlando, LP prays that this Court deny approval of the proposed sale of Lease # 5444 to Brook Valley Thrift Stores, Inc. and for all other relief to which it is entitled in law and equity.

Date: October 25, 2024

          **ASHBY & GEDDES, P.A.**

          */s/ Michael DeBaecke*
          Michael D. DeBaecke (No. 3186)
          500 Delaware Avenue, Ste. 800
          Wilmington, DE 19899
          Telephone: (302) 654-1888
          Email: mdebaecke@ashbygeddes.com

          -and-

          **JONES WALKER LLP**
          Mark A. Mintz (#31878)
          201 St. Charles Avenue, 51st Floor
          New Orleans, LA  70170
          Telephone: (504) 582-8368
          Email: mmintz@joneswalker.com

          *Attorneys for Shadrall Orlando, LP*