# **Exhibit 1**

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

# TABLE OF CONTENTS

Section

1.  Definitions
    A.  Common Areas
    B.  Dates
    C.  Exhibits
    D.  Demised Premises
    E.  Shopping Center

2.  Demise

3.  Term
    A.  Original Term
    B.  Option to Extend Term

4.  Use and Operation

5.  Rent and Construction Allowance
    A.  Fixed Minimum Rent
    B.  Utilities Charges
    C.  Intentionally Deleted
    D.  Common Area Charges and Fixed CAM
    E.  Real Estate Taxes
    F.  Taxes
    G.  Construction Allowance

6.  Initial Buildout and Tenant Alterations

7.  Maintenance and Repairs

8.  Signs

9.  Trade Fixtures

10. Governmental Regulations

11. Indemnification

12. Insurance
    A.  Tenant
    B.  Landlord

13. Fire Rebuilding and Altering

14. Force Majeure

15. Injunction

1



Exhibit
1

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

16.    Warranty of Title by Landlord; Representations

17.    Quiet Enjoyment

18.    Mortgage and Estoppel Certificates

19.    Default

20.    Condemnation

21.    Mutual Waiver of Subrogation

22.    Assignment and Subletting

23.    Surrender and Holdover

24.    Notices

25.    Legality

26.    Binding Obligations

27.    No Recordation

28.    Real Estate Broker's Commission

29.    No Waiver, Laches or Accord and Satisfaction

30.    Hazardous Materials

31.    Titles and Entire Agreement

32.    Waiver of Claims

33.    Intentionally Deleted

34.    Intentionally Deleted

35.    No Presumption against Drafter

36.    Submission of Lease

37.    Interlineation

38.    Time of the Essence

39.    Tenant's Audit Rights

40.    Attorney Fees

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

41.    Waiver of Jury Trial

42.    Exculpation

43.    Office of Foreign Asset Control and Anti-Money Laundering

44.    Express Waiver

45.    Accord and Satisfaction

46.    Late Charge/Interest

47.    Counterparts

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

## LEASE AGREEMENT

This Lease Agreement ("Lease") shall be made effective the 5th day of February____, 2021 (the "Effective Date"), by and between Shadrall Orlando, LP, a Delaware limited partnership , whose mailing address is c/o Auburndale Properties, Inc. 50 Tice Blvd., Woodcliff Lake, NJ 07677-7654 ("Landlord"), and Big Lots Stores, Inc., an Ohio corporation, doing business as Big Lots, of the City of Columbus, County of Franklin, and State of Ohio ("Tenant"), whose mailing address is 4900 East Dublin Granville Road, Columbus, OH 43081-7651, Attention: Lease Administration.

### WITNESSETH:

### 1. DEFINITIONS:

For purposes of this Lease, these terms are defined as follows:

A.    Common Areas: The term "Common Areas" as used herein shall mean the improved portion of the Shopping Center (as hereinafter defined) not occupied by building areas exclusively used by individual tenants and as shown on the site plan attached hereto and made a par thereof as Exhibit "A" (the "Site Plan"), including, but not limited to, common utility rooms, common sprinkler rooms, the parking areas, driveways, service driveways, service areas, sidewalks, any landscaped areas, Shopping Center signs, and parking lot lighting poles and light fixtures of the Shopping Center which shall be collectively referred to as Common Areas. Expressly excluded from the definition of Common Areas are the roof and all structural portions of the Shopping Center.

Tenant shall comply with the rules and regulations as set forth herein, with respect to the Common Areas. Neither Tenant, nor any employees or agents of Tenant, shall fence, block, allow property to remain in or upon or otherwise obstruct the Common Areas; provided, however, Tenant may use a portion of the sidewalk immediately adjacent to the Demised Premises and identified as "Sidewalk Display Area " as set forth on Exhibit A to display for sale items from third party vendors, such as propane tanks, and otherwise conduct sales in the Sidewalk and Outdoor Display Area of non-hazardous items (excluding propane tanks). Furthermore, Tenant shall be permitted to place two (2) drop/storage trailer(s) not to exceed forty (40) feet in the rear of the Demised Premises in the location identified as "Trailer Park Area" as set forth in Exhibit A so long as said trailer(s) do not materially interfere with the business operations of the other tenants of the Shopping Center and do not violate any local codes/ordinances or otherwise take up or reduce parking. Tenant shall be responsible for repairing any damage to the Sidewalk Display Area Outside Display Area (as hereinafter defined), and Trailer Park Area caused by Tenant's use thereof and insuring the

4

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CDBFAE43C

Sidewalk Display Area, the Outdoor Display Area, and Trailer Park Area while it is using same.

Landlord shall maintain the Common Areas. Except in the No Build Area (as hereinafter defined), Landlord shall have the right as detailed below, to increase or reduce the Common Areas, and to rearrange the parking spaces, driveways on the Common Area, without Tenant's consent; provided however that the same does not substantially and unreasonably block access to the Demised Premises.

Except as set forth above and below, Landlord agrees that it shall not construct any permanent structures in the area identified as the "No Build Area" as depicted on Exhibit A of the Lease without Tenant's written consent, which consent shall not be unreasonably withheld, unless: (i) required to comply with or satisfy conditions of Law (as defined in Section 10) (including, but not limited to, the Americans with Disabilities Act) or requirements of Landlord's insurance company; (ii) below ground installations, repairs or replacements; (iii) such alterations are minor changes in connection with landscaping, installation of lighting or similar changes; or (iv) temporary modifications in connection with a repair, replacement, or construction in connection with other portions of the Shopping Center ("Landlord's Basic Change Rights"). In addition, Landlord shall have the right to construct non-permanent structures within the No Build Area in connection with construction of improvements in the Shopping Center or as a staging area in connection with the construction of such improvements, any non-permanent structures constructed within the No Build Area shall not exceed a total time period of twelve (12) weeks per year, or three (3) weeks per quarter. In no event, shall any non-permanent structures be placed in front of the Demised Premises, except as required by Law, and in connection with any repairs or replacements of the Shopping Center; in non-emergency events, Landlord shall coordinate the placement of such non-permanent structures with Tenant.

Furthermore, within the No Build Area, Landlord shall have the right to: (A) plant trees and other growing plants pursuant to a landscape plan; (B) construct other non-structural amenities customary in other similar centers, such as light standards, benches and directional signage; provided the same does/do not unreasonably interfere with the parking areas and parking spaces required under this Lease, access to the Premises or visibility of Tenant's building signage, as reasonably determined by Tenant; (C) intentionally omitted; )(D) any changes in connection with condemnation; (E) the installation of a cart containment system around the perimeter of the primary parking customer field within the Common Area; (F) change the direction of any parking stalls; and (G) temporary modifications in connection with a repair or replacement ("Landlord's Additional Change Rights"); provided, however, Landlord shall not exercise Landlord's Additional Change Rights in the area immediately in front of the Demised Premises storefront (Tenant's Storefront Area") or the parking field within the No Build Area, except for those required under (D) or (G) set forth above.

5

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD8FAE43C

B.    <u>Dates</u>: Landlord and Tenant agree, upon the request of either party, to confirm in writing, the dates contained in this Section along with other key dates contained in this Lease following execution of this Lease.

    1)  Landlord, shall notify Tenant if and when, in Landlord's opinion, Landlord has completed a sufficient portion of Landlord's work, as defined in Exhibit "C", attached hereto and made a part hereof ("Landlord's Work") to permit certain portions ("Early Access Work") of Tenant's work, as defined in Exhibit C, attached hereto and made a part hereof ("Tenant's Work") that will not interfere with Landlord performing Landlord's Work, to be done simultaneously with Landlord's Work, and upon such notice, Tenant shall have the right to enter upon the Demised Premises solely for such purposes. The date of such entry shall be the "Tenant Entrance Date" and shall not be construed as an acceptance of or possession of the Demised Premises by Tenant under the provisions of this Lease or as a waiver of any of the provisions hereof Tenant, its agents, employees, and contractors will not interfere with or delay the work to be completed by Landlord's Work. Tenant's entering upon the Demised Premises prior to Tenant's Possession Date shall be at Tenant's sole risk. Tenant acknowledges that Landlord shall not provide security for Tenant's work or anything left at the Demises Premises. Tenant hereby agrees to indemnify and hold Landlord harmless from and against any injury or damage which may occur to any person or property as a result of any of the Tenant's Work made in the Demised Premises, except to the extent if such injury or damage was caused by the negligence of Landlord, its employees, agents, or contractors. Prior to any early entry by Tenant, both Landlord and Tenant shall provide proof of insurance coverages described in this Lease. Notwithstanding the foregoing, Tenant shall not be entitled to use and occupy the Demised Premises other than for the performance of Early Access Work until Tenant's Possession Date (as hereinafter defined) has occurred. The access to the Demised Premises provided to Tenant pursuant to this Section shall be subject to the conditions that all of Tenant and the Tenant's representatives shall work in harmony and not interfere with Landlord and its agents and contractors in performing Landlord's Work in, to, or on the Demised Premises. If at any time such entry or occupancy shall cause or create disharmony or interference, Landlord, shall have the right to suspend such access upon twenty-four (24) hours' written notice to Tenant until such time as Tenant, at Tenant's sole cost, has remedied such disharmony or interference. Tenant agrees not to use union labor.

    2)  The "Tenant Possession Date" shall be the later of: (i) the date Landlord delivers possession of the Demised Premises to Tenant with Landlord's Work in the Demised Premises, as identified on Exhibit C Substantially

DocuSign Envelope ID: C55DAD76-4BFD-469F-87E8-E76CD9FAE43C

Completed (as hereinafter defined) in the Demised Premises, (the "Delivery Date"), or (ii) the date on which Tenant receives all building permits to begin its construction (the "Permits"); provided Tenant shall submit complete plans for the Permits within sixty (60) days of full lease execution and thereafter shall diligently pursue obtaining such Permits. Landlord will cooperate fully, at Tenant's sole cost and expense, with Tenant in obtaining said Permits. Landlord shall send written notice to Tenant when it has Substantially Completed Landlord's Work in the Demised Premises. Landlord's Work on the Exterior of the Demised Premises or in the Common Areas, as identified on Exhibit C shall be Substantially Completed by the Rent Commencement Date (as hereinafter defined).    The Landlord's Work shall be deemed "Substantially Completed" if: (i) only minor or insubstantial details of construction, decoration or mechanical adjustments relating to Landlord's Work ("Punch List Items") remain to be done in the Demised Premises or outside the Demised Premises that will not unreasonably interfere with Tenant's work in the Demised Premises; or (ii) the delay in the Landlord's Work being deemed Substantially Completed shall be due to: (x) special work, changes, alterations or additions required or made by Tenant in the Demised Premises; or (y) caused in whole or in part by Tenant through the delay of Tenant in submitting any plans and/or specifications, supplying information, approving plans, specifications or estimates, giving authorizations or otherwise; or (z) caused in whole or in part by delay and/or default on the part of Tenant or Landlord and/or its subtenant or subtenants.   Notwithstanding anything to the contrary, such Punch List Items shall be completed within the time frame set forth in Section 6 of this Lease; provided, however, Tenant shall not have a termination right with respect to the completion of Punch List Items. Landlord shall perform Landlord's Work so that it complies with all Laws, ordinances, regulations and building restrictions. Landlord shall be responsible for any exterior improvements to the Shopping Center, parking lot, landscaping or façade required by the local authority having jurisdiction as a condition for issuing Tenant's Permits or a certificate of occupancy for the initial opening of the Demised Premises ("Exterior Improvements") and subject to Exhibit C. Furthermore, Landlord shall be responsible for the payment of any impact fees or systems development charges provided such impact fees or systems development charges are based upon or required for a general retail use. In the event Tenant's temporary or permanent certificate of occupancy is delayed, and Tenant cannot operate in the Demised Premises due to Landlord's failure to complete any Landlord Work, the Rent Commencement Date shall be delayed one (1) day for each day the certificate of occupancy is delayed. As of the earlier of the Tenant Entrance Date, or the Tenant Possession Date, all provisions of this Lease shall be applicable, including without limitation the requirements of Section 12 to provide Landlord with insurance, except as to Tenant's

7

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

obligations with regard to payments due hereunder which shall take effect as of the Rent Commencement Date.

3)      The "Rent Commencement Date" shall be the earlier of: (i) the date which is one hundred eighty (180) days after the Tenant Possession Date; or (ii) the date on which Tenant opens for business in the Demised Premises. Notwithstanding the foregoing, if Tenant does not submit complete plans for Tenant's work to the municipality by November 1, 2020, or once it has submitted its complete plans, it does not diligently pursue obtaining such plans and completing Tenant's Work ("Tenant Work Delay"), if the Rent Commencement Date is determined pursuant to subsection (i) herein, such date shall be shortened by one (1) day for each day of Tenant Work Delay.

4)      The "Term Commencement Date" shall be Tenant's Possession Date.

5)      The Estimated Delivery Date (as hereinafter defined) of the Demised Premises shall be February 8, 2021 and Tenant shall not be required to accept possession of the Demised Premises prior to February 8, 2021 ("Estimated Delivery Date"); provided however, if the Tenant's Possession Date occurs prior to the Estimated Delivery Date Tenant shall have the option of accepting possession earlier and same shall be Tenant's Possession Date. In the event Landlord does not deliver possession of the Demised Premises to Tenant by the Estimated Delivery Date, unless same was due to a Tenant Delay or any other action or inaction of Tenant affecting Landlord's ability to perform Landlord's Work: (i) commencing on February 9, 2021 unless and continuing for each and every day Landlord is delayed in completing Landlord's Work in the Demised Premises, Landlord shall pay to Tenant, as Tenant's sole and exclusive remedy for such delay, as liquidated damages and not a penalty, the sum of $1,250.00 per day; and (ii) commencing February 24, 2021 and continuing for each and every day Landlord is delayed in completing Landlord's Work in the Demised Premises, Landlord shall pay to Tenant, as Tenant's sole and exclusive remedy for such delay as liquidated damages and not a penalty, the sum of $2,500.00 per day. Notwithstanding anything to the contrary, Tenant shall not waive any other remedy available to Tenant under this Lease including the rights provided in Section 7 herein. If Landlord shall fail to pay such liquidated damages within ten (10) days after receipt of an invoice therefor, Tenant shall have the right to deduct such amount with interest at the rate of two percent (2%) above the prime rate as established by Chase Bank (or any successor thereto) annually (the "Lease Interest Rate"), from the next installments(s) of Rent due under this Lease. Notwithstanding anything to the contrary contained hereinabove, no liquidated damages will be assessed for late completion of Landlord's Work until Tenant has received its Permits

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

unless Tenant has been delayed in obtaining its Permits solely due to actions or inactions of Landlord.

6)   In the event Landlord has not completed Landlord's Work in the Demised Premises and/or; provided Tenant has complied with the requirements to apply for and diligently pursue permits in the time periods set forth in Section 1(B)(3) hereof, if Tenant has not received the Permits by July 1, 2021, Tenant will not be required to accept possession until February 1, 2022. The period of time between July 2, 2021 and February 1, 2022 will be the "Optional Blackout Period ·In the event Landlord has not Substantially Completed Landlord's Work by February 1, 2022, then Tenant may a) complete Landlord's Work on Landlord's behalf and charge Landlord the reasonable costs thereof or b) terminate this Lease by delivery of a termination notice within thirty (30) days after February 1, 2022, provided Landlord has not tendered delivery of possession of the Demised Premises to Tenant prior to the date Tenant sends the aforesaid termination notice.

7)   In the event Landlord completes Landlord's Work and offers possession of the Demised Premises to Tenant during the Optional Blackout Period, and Tenant elects to accept possession in the Optional Blackout Period, unless Tenant opens for business, the Rent Commencement Date will not begin until the later of: (i) the later of one hundred eighty (180) days after delivery of possession of the Demised Premises by Landlord or ninety (90) days after Tenant has received all its construction permits and approvals; or (ii) February 1, 2022. Notwithstanding anything in this Section 1.B.7. to the contrary, the Rent Commencement Date will never be delayed beyond the date when Tenant opens for business within the Demised Premises.

C.   Exhibits: The following Exhibits are attached to and made a part of this Lease by reference hereto:   ALL EXHIBITS TO BE REVIEWED AND UPDATED, IF NECESSARY. BY LANDLORD

1)   Exhibit A -   Site Plan of Shopping Center

2)   Exhibit A – 1 Tenant's Plans and Specifications

3)   Exhibit A-2 Lay Out of Demised Premises

4)   Exhibit B -   Legal Description of Shopping Center

5)   Exhibit C -   Landlord's Work

6)   Exhibit D -   Tenant Building Sign Specifications

9

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

    7)    Exhibit D – 1 Tenant Pylon Sign Location

    8)    Exhibit E -   Completion of Landlord's Work Letter

    9)    Exhibit F -   Exclusive Use Provisions

    10)   Exhibit G -   Remeasurement Rider

D.    Demised Premises: The "Demised Premises" shall be the storeroom, indicated on Exhibit A, which storeroom shall have approximately 40,000 rentable square feet of ground floor area as more particularly shown on Exhibit A-2, attached hereto and made a part hereof. Notwithstanding anything contained in this Lease to the contrary, Tenant acknowledges that it has approved Exhibit A-2 and in the event of any inconsistencies in this Lease, Tenant's Plans and Specifications shall control. Tenant's Plans and Specifications for Tenant's Work in the Demised Premises are attached hereto as Exhibit A-1 and deemed approved by the parties hereto. Tenant shall perform Tenant's Work in compliance with Law and in a good and workmanlike manner, using new materials only. Within sixty (60) days after the Tenant Possession Date, Landlord and Tenant shall have the opportunity to measure the dimensions of the Demised Premises for a determination of its exact square footage and provide the other with written notice of its findings. Such findings shall be by a licensed architect, acceptable to both Landlord and Tenant and shall be certified to both Landlord and Tenant using BOMA standard. Except as otherwise provided herein, should the findings of such remeasurement differ from the square footage of the Demised Premises by an amount greater than 41,000 square feet or less than 39,000 square feet, then all aspects of Rent and Additional Rent shall be adjusted accordingly.    Upon performing such remeasurement, should the findings thereof differ from the square footage of the Demised Premises by an amount greater than 100 square feet, then the Landlord and Tenant shall complete the Remeasurement Rider attached hereto as Exhibit G and shall exchange such Remeasurement Rider with each other. Notwithstanding the foregoing, Tenant shall not be obligated to pay Rent or Additional Rent on any space in excess of 44,000 square feet nor accept possession of any space under 36,000 square feet in size and may terminate this Lease in such an event.

E.    Shopping Center: Landlord's "Shopping Center" is described in Exhibit B attached hereto and made a part hereof, which said description encompasses the area shown on Exhibit A, and having a street address of 1801 S. Semoran Blvd., Orlando, FL 32822. If the legal description changes, Landlord will provide an updated legal description to be exchanged as Exhibit B when the legal description is completed. The legal description shall describe the Shopping Center as shown on Exhibit A. Landlord represents, to the best of its actual knowledge, that as of the date of this Lease, the gross leasable area of the Shopping Center as of the date of this Lease is approximately 114,000 square feet. Landlord shall have the

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

right, but not the obligation, to construct/extend the Building in the area identified on Exhibit A as "New Additional Rental" which is contiguous to the Demised Premises so long as any construction or extension does not materially interfere with Tenant's operation or obstruct the Receiving Corridor as set forth in Exhibit A. In addition to the foregoing, Landlord shall have the right, but not the obligation, to remove from the definition of Shopping Center any outparcels or area in the Common Area of the Shopping Center shown on Exhibit A as "Proposed Future Buildings", as herein permitted provided same are separately parceled and assessed and remain subject to Section 4D. If Landlord constructs a building on an outparcel, Landlord shall have such outparcel separately assessed, and in such event, such outparcel shall be removed from the calculation of Tenant's definition of Landlord's "Shopping Center".

2.    **DEMISE:**

Landlord, in consideration of the Rent to be paid by Tenant and Tenant's covenants and undertakings hereinafter provided, hereby leases to Tenant the Demised Premises together with all rights, privileges, benefits, rights-of-way and easements now or hereafter appurtenant or belonging thereto during the Term and for the use hereinafter provided. Landlord further grants to Tenant, its employees, agents, customers and invitees, a non-exclusive license to use the Common Areas to be shared with the other tenants and occupants of the Shopping Center and their respective employees, agents, customers, and invitees.

3.    **TERM:**

A.    Original Term: The original term of this Lease shall be for a period commencing on the Term Commencement Date as defined in Article 1.B(4) above and ending on the January 31st ten (10) full years from the Rent Commencement Date (the "Original Term"). Upon the expiration or earlier termination of this Lease, Landlord and Tenant shall be released from all liability, under this Lease, thereafter accruing, except as otherwise provided herein. The "Lease Year" shall be defined as each successive period of twelve (12) consecutive calendar months commencing on the first day of February of each year during the Term hereof. If the Term Commencement Date is other than February 1st of any year, the period between the Term Commencement Date and January 31st of the following year shall be a "Partial Lease Year." If this Lease is terminated on a date other than January 31st of any year, the period between the February 1st immediately preceding the termination date and the actual termination date shall be a "Partial Lease Year". Tenant's obligations to pay Rent and Additional Rent shall commence on the Rent Commencement Date. As used herein, "Term" shall mean the Original Term, any exercised Option Terms (as defined below), and any other extended period.

11

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

B.    Options to Extend Term:  Subject to the provisions set forth below, Landlord hereby grants to Tenant the option to extend the Term of this Lease for two (2), five (5) year option terms, consecutively referred to as "First Option Term", and "Second Option Term"  The First Option Term shall commence at the end of the Original Term of this Lease, and the Second Option Term shall commence at the end of the First Option Term, each upon the same terms and conditions as contained in this Lease except as provided herein.  If Tenant is then in possession of the Demised Premises, Tenant may elect to exercise each option by giving the Landlord written notice at least nine (9) full calendar months, prior to the expiration of the immediately preceding Original Term or the previous Option Term as applicable.  Tenant shall be deemed not to have renewed this Lease unless Tenant notifies Landlord in writing of its exercise of its option to renew at least nine (9) months prior to the expiration of the Original Term, or the Option Term as applicable. Only one (1) option may be executed at a time.

Tenant's options to renew, as provided above, shall be conditioned upon and subject to each of the following:

(1)    At the time Landlord receives Tenant's notice as provided above, and again at the commencement of the applicable Option Term, Tenant shall be open and operating in all of the Demised Premises, subject to reasonable period related to casualty, force majeure or condemnation and shall not be in monetary default, beyond the expiration of applicable notice and cure periods, under the terms or provisions of this Lease;

(2)    Tenant shall have no further renewal option other than the options to extend for the two (2) Option Terms as set forth above;

(3)    The options to renew shall be deemed personal to Tenant and may not be assigned (except that same may be assigned pursuant to the provisions of Article 22 hereof, but nothing contained herein shall be deemed Landlord's consent to any assignment); and

(4)    Tenant agrees to accept the Demised Premises in its then "as is" condition at the commencement of the Option Term subject to Landlord's obligations set forth in Section 6 and 7 herein.

4.    **USE AND OPERATION:**

A.    Permitted Uses:  Tenant shall have the right to use and occupy the Demised Premises for the purpose of the retail sale (including financing and/or leasing) of general merchandise, furniture, furniture accessories, furnishings, mattresses, appliances, electronics, toys, seasonal merchandise, plastics, crafts, home goods, party goods, greeting cards, health and beauty products, food (including refrigerated and frozen food, beer and wine), similar or related merchandise

12

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

("Specific Use") and for any other lawful retail purpose not specifically excluded herein. Notwithstanding the foregoing, after Tenant initially opens in the Demised Premises for the Specific Use (as required in Paragraph E), Tenant may not thereafter use and occupy the Demised Premises or any part thereof, in violation of any exclusive or restricted use Landlord has granted in any lease in the Shopping Center at the time Tenant seeks to change its use in the Demised Premises. If Tenant seeks to change its business model from a prototypical Big Lots in the Demised Premises (whether Tenant will continue operating in the Demised Premises or in connection with an assignment of the Lease or sublease of the Demised Premises), Tenant shall send notice thereof to Landlord and Landlord shall, within thirty (30) days of receipt of such notice inform Tenant of any exclusive uses or restrictions granted in then existing leases in the Shopping Center. Landlord represents and warrants as of the date hereof, to the best of its actual knowledge, to Tenant that all exclusive use provisions granted by Landlord, or any predecessor of Landlord, to tenants in the Shopping Center are attached hereto and incorporated herein as Exhibit F. Notwithstanding anything contained in this Lease to the contrary, without limiting the generality of the foregoing provisions of this section, should Tenant, its subtenants, successors or assigns, change its use from a prototypical Big Lots to a Permitted Use it shall not violate any exclusive or restricted use in any other lease in the Shopping Center executed at the time Tenant changes it use from the prototypical Big Lots use.

B.    In connection with Tenant's use and occupancy of the Demised Premises, Tenant shall not:

(1) Obstruct, solicit business or distribute advertising in, place any advertising or merchandise, public telephones, vending or amusement machines on, or otherwise use in the conduct of its business, any part of the Common Area of the Shopping Center, except that Tenant shall have the right to use the sidewalks in front of the Demised Premises as identified on Exhibit A as "Tenant's Sidewalk Display Area" in the Tenant's normal course of business to include but not be limited to; side walk sales, vending machines, small amusement ride, propane tank sales, each of the foregoing shall not impede pedestrian traffic, or ingress or egress through the Shopping Center or violate Laws or any local rules or codes; provided, however, the Tenant shall repair damages to and insure Tenant's Sidewalk Sale Area during its use of same. Further, Tenant shall be allowed to place placards in the Common Areas for a period of two (2) weeks in connection with Tenant's grand opening and in connection with specific promotional sales, to include but not be limited such promotional sales as "Friends and Family" promotions for up to six (6) week-ends per calendar year; provided same shall not impede pedestrian traffic, or ingress or egress through the Shopping Center or violate local rules or codes ;

(2) install any exterior lighting, plumbing fixtures, shades or awnings; make any exterior decoration or painting; build any fences, walls, barricades or other

13

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

obstructions; or install any radios, public telephones, televisions, phonographs, antennae, loud speakers, sound amplifiers, flashing or revolving lights, or similar devices on the roof, exterior walls or in the windows of the Demised.   Should Tenant change its sign specifications in the future, Tenant shall seek Landlord's consent, which consent shall not be unreasonably withheld or delayed; provided, however, the foregoing shall not apply to the operation of a Big Lots Store. Tenant shall not display, paint or place, or cause to be displayed, painted or placed, any handbills, bumper stickers, or other advertising devices on any vehicles parked in the Common Area of the Shopping Center, nor shall Tenant distribute or cause to be distributed in the Shopping Center any handbills;

(3) Interfere with any other tenant's use of the Common Area or cause or permit any waste on the Demised Premises or in the Shopping Center;

(4) Permit or suffer any machine or equipment at the Demised Premises to overload the slab:

(5) Take any action or cause any condition to exist that increases, or tends to increase, Landlord's operating costs for the Shopping Center or the risk of peril or injury to Landlord, other tenants, or guests or invitees of the Shopping Center. In the event of any such increased risk of peril or injury, in addition to Landlord's right to declare a default under the Lease, Landlord may increase the security for the Shopping Center or take such other action as is necessary or reasonable to protect the Shopping Center and its tenants, guests and invitees, and any such additional costs attributable to such action by Landlord shall be borne solely by Tenant. Notwithstanding anything to the contrary, any increase in cost as a result of another tenant will not be borne by Tenant hereunder;

(6) Dispose of the following items in sinks or commodes: plastic products (plastic bags, straws, boxes); sanitary napkins; tea bags, cooking fats, cooking oils; any meat scraps or cutting residue; petroleum products (gasoline, naphtha, kerosene, lubricating oils); paint products (thinner, brushes) or any other item which the same are not designed to receive;

(7) Permit or suffer any portion of the Demised Premises to be used for lodging or extended stay purposes;

(8) Permit any animals to be brought into or kept in or about the Shopping Center other than service animals; and

(9) In or on any part of the Common Area, deface, damage or demolish any sign, light standard or fixture, landscaping materials or other improvement within the Shopping Center, or the property of customers, business invitees or employees situated within the Shopping Center.

14

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

C.  In connection with Tenant's use and occupancy of the Demised Premises Tenant shall:

(1) Warehouse, store stock and/or serve in the Demised Premises only such goods, wares and merchandise as Tenant intends to offer for sale at retail at, in, from or upon the Demised Premises. Tenant shall use for office, clerical or other non-selling purposes only such space in the Demised Premises as from time to time is reasonably required for Tenant's Specific Use in the Demised Premises. Stock and display merchandise in a reasonable manner consistent with the standards of a first-class retail center;

(2) Keep the Demised Premises, entrances thereto, and to the extent exclusively for Tenant's use, loading platforms, service areas and garbage and refuse storage areas free from obstruction and clean and neat, and arrange for the prompt and frequent pickup of rubbish. Notwithstanding anything to the contrary in this Lease, Tenant shall, at Tenant's expense, promptly pick up and dispose of any and all rubbish emanating from the Demised Premises whether such rubbish is located on the Demised Premises, the Tenant's Used Common Area (including the Tenant Sidewalk Display Area, and the Outdoor Display Area. Prior to its collection, all trash shall be stored in appropriate receptacles located near the rear access of the Demised Premises. Notwithstanding the foregoing, Tenant shall be permitted to place cardboard bails in the rear of the Demised Premises.

(3) If to the Premises are used for the sale or service or cooked food, Tenant shall install and maintain at Tenant's cost on the Demised Premises a facility that shall enable Tenant to wash Tenant's trash cans and to trap and collect any grease in order to avoid the depositing of such grease in the sewage system, roof or the Common Areas. Such can washing facility shall meet such specifications as Landlord and any and all governmental agencies having jurisdiction thereof shall reasonably require. Tenant shall provide a refrigerated garbage room at Tenant's expense for the disposal of its food scraps and refuse and shall not place same outside the Demised Premises except for the purpose of causing same to be removed immediately thereafter from the Shopping Center. Tenant shall install chemical extinguishing devices approved by Landlord, any and all governmental agencies having jurisdiction thereof and any fire insurance rating organization and shall keep such devices under service as required by such agencies and organization. Further, Tenant shall install an exhaust system acceptable to Landlord to remove odors from the Lease Premises; and

(4) Landlord shall to the extent related to the Common Area generally, perform exterminations at a reasonable commercial standard and schedule so as to keep the Demised Premises and Shopping Center free from insects, rodents and other pests. Further, should the activities of Tenant in the Demised Premises result in insect or rodent infestation of the building in which the Demised Premises are located and/or the adjoining areas of the Shopping Center, Tenant shall pay the

15

DocuSign Envelope ID: C55DA078-4BFD-469F-87E8-E76CD9FAE43C

actual cost of extermination and any preventative measures. Should **Landlord's** activities in the Shopping Center result in insect or rodent infestation, Landlord shall pay the actual cost of extermination and any preventative measures.

(5) Comply with such reasonable parking rules and regulations as set forth herein. Tenant agrees to cause its employees to park in areas noted as **"Employee Parking Areas"** and Tenant shall enforce same with its employees.

D.       Exclusive Use: Provided Tenant is not in monetary default beyond any cure period under the Lease and is operating in one hundred (100%) percent of the Demised Premises for the Exclusive Use (as hereinafter defined), except: (i) for tenants, their subtenants, assignees or other occupants, their successors or assigns, with leases currently executed as of the full Lease execution, whether or not such tenants are currently open and operating for business in the Shopping Center (collectively, an **"Existing Tenant"**); and (ii) as specifically set forth or permitted in this Lease: (a) no other general merchandise discount store, liquidator, close-out store, and stores selling furniture (including rent to own stores and home accessories or mattresses) (hereinafter called the "Exclusive Use"); and (b) no more than one (1) dollar store operation in excess of 10,000 square feet (, a "Competing Business") may be permitted in the Shopping Center during the Original Term of this Lease or any Option Terms or extensions thereof.  A "Competing Business" shall mean business operations such as: Dollar General, Dollar General Market, Dollar Tree, Roses, Encore, Family Dollar, 99 Cent Only (and any store with the word 99 Cent in its name), Deals, Save-A-Lot , Marc's, Fred's, Super 10, Maxway, Mazel, Odd Job, Amazing Savings, Ocean State Job Lot, Grossman's Bargain Outlet, Greenbacks, Kings Discount, Building 19, National Wholesale Liquidators, Dollar Dreams, Bed Bath & Beyond, Dirt Cheap, Bargain Hunt, Rose's, Christmas Tree Shops, Five Below, Encore and Ollie's Bargain Outlet, Aaron's, Rent A Center, Rent Way, Color Tyme, Show Place, Buddy's. The parties acknowledge that retailers such as any TJMaxx brands (such as Homegoods, Sierra Trading and Marshall's), Ross, and Burlington shall not be deemed a Competing Business. Furthermore, the parties acknowledge that a grocery, supermarket, convenience store, pharmacy retailers (such as CVS and Walgreens) or other food stores shall not be deemed a Competing Business or a violation of Tenant's Exclusive Use.

For purposes of this section 4D, Landlord hereby represents that Orlando Semoran Club 24, LLC (the "Existing Tenant"), is the only Existing Tenant in the Shopping Center with a signed lease as of the execution of this Lease.

In the event a Competing Business, as defined herein, is operated in the Shopping Center, commencing thirty (30) days after Landlord has received written notice from Tenant of the violation of this provision, Tenant shall be entitled, as its sole and exclusive remedies for such violation, to any and all of the following remedies: (i) Tenant may pay, in lieu of Fixed Minimum Rent, an amount equal to fifty percent (50%) of the Fixed Minimum Rent then effective under this Lease;

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E78CD9FAE43C

(ii) Tenant may seek injunctive relief to enjoin or restrain such Competing Business from engaging in a competing use at Landlord's sole cost and expense; or (iii) if the Competing Business continues to operate for a period of twelve (12) months or more, Tenant shall have the right to terminate this Lease, by sending written notice thereof to Landlord and this Lease shall terminate ninety (90) days thereafter and Tenant shall vacate the Demised Premises and deliver the Demised Premises to Landlord in the condition required herein.  All of Tenant's remedies herein are cumulative, and the exercise of one or more rights or remedies herein shall not preclude or waive the right of the Tenant to exercise any of its rights at law or equity.  All such rights and remedies may be exercised and enforced concurrently and whenever and as often as Tenant shall deem desirable.

Notwithstanding the terms of this section, Tenant shall have no remedy for a violation hereof if another tenant or occupant of the Shopping Center violates a provision of its lease or license agreement regarding the use of its premises, which said lease or license agreement prohibits the uses set forth in this paragraph; provided Landlord, within thirty (30) days after receipt of written notice from Tenant advising Landlord of such violation, uses commercially reasonable efforts to enforce its rights under such lease or license agreement in order to cause such violation to cease; provided, further, if said violation does not cease within 365 days after its occurrence Tenant shall have the right to terminate the Lease at any time thereafter while such violation continues by sending written notice to Landlord and this Lease shall terminate ninety (90) days after Landlord's receipt of such notification.

If any person or entity violates the foregoing exclusive granted to Tenant in a situation where Landlord included in such person's or entity's lease or other occupancy agreement a provision effectuating the exclusive rights granted to Tenant in this Section, and despite such inclusion, the person or entity has violated the exclusive rights granted to Tenant in this Section, Landlord will promptly commence appropriate legal proceedings, and vigorously prosecute the same at Landlord's expense, to enjoin and prohibit any such violation.    Tenant will also have the right to seek and to obtain injunctive relief in its own name and at its own expense.  In the event an order or judgment is entered, that shall be deemed a resolution of the rogue tenant violation on the terms contained in that order or judgment.

E.      Continuous Operation:
        Tenant represents and warrants that it will initially open in one hundred (100%) percent of the Demised Premises for one (1) day within three hundred and sixty-five (365) days of Tenant Possession Date as a prototypical Big Lots store, and it shall operate, fully fixtured and merchandised, in the Demised Premises for the Specific Use in a first class manner.

        Notwithstanding anything to the contrary contained herein, Tenant may close the Demised Premises in Tenant's reasonable discretion; provided, however, that any

17

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

such closing shall not relieve Tenant from any of its obligations hereunder. In the event that Tenant closes the Demised Premises under this Section and fails to reopen the Demised Premises within ninety (90) days thereafter, Landlord may terminate this Lease upon thirty (30) days' notice to Tenant, and if Tenant (or a permitted assignee or subtenant of Tenant) has not reopened for business as of the date of the notice, Tenant shall be released from all further liability hereunder.

Without limiting the foregoing provisions of this Lease, Tenant agrees to keep the Demised Premises in a clean, neat, healthful, aesthetically pleasing, well-maintained and orderly condition and to keep the Demised Premises and, if Tenant utilizes the sidewalks for the display and/or or sale of merchandise or for vending machines, the sidewalks in front of the Demised Premises free of debris, trash, garbage, refuse (except that reasonable amounts may be kept temporarily in closed containers in places directed by Landlord), vermin, insects or pests by virtue of having regular pest extermination, loud or constant noises, and excessive vibrations. Tenant further agrees not to burn trash or garbage in the Shopping Center; commit waste in the Demised Premises or Shopping Center; cause or permit pipes, lines, conduits, fixtures or appliances in the Demised Premises to be ruined or damaged by freezing, excessive heat or lack of care, maintenance or repair. Tenant shall contract, and pay directly, for its own trash receptacle and trash removal. Tenant shall lock the doors of the Demised Premises whenever Tenant is not open for business, however, Tenant shall not be responsible for providing or maintaining security in the Common Areas of the Shopping Center.

Notwithstanding anything to the contrary contained in this Lease, provided same complies with Law and insurance requirements, Tenant shall have the right to: (i) store shopping carts and baskets in the Common Areas immediately adjacent to the Demised Premises and identified as "Cart Corral Area" on Exhibit A; and (ii) use up to 4 parking spaces in the Common Areas, immediately adjacent to the Demised Premises and identified as "Outdoor Display Area" on Exhibit A for the sale and display of merchandise for a period of time not to exceed a total of twelve (12) weeks per year, or three (3) weeks per quarter. Tenant shall collect all Tenant's carts from the Common Areas and keep same stored at all times in Tenant's Cart Corral Area. Tenant shall be responsible for repairing any damage to the Cart Corral Area and the Outside Display Area caused by Tenant's use thereof and insuring the same while it is using same.

F.    Prohibited Uses: Notwithstanding anything contained in this Lease to the contrary, neither Tenant, its successors and/or assigns nor Landlord, its successors and/or its assigns shall use the Demised Premises and shall not allow or permit the Shopping Center to be used for the following uses: (i) except by court order, to conduct or advertise any auction, bankruptcy, fire, distress, liquidation, sheriff's or receiver's sale on or from the Demised Premises; (ii) to operate a second hand, so-called "Army and Navy" surplus store, or for the conduct of distress, auction, fire, liquidation, going-out-of-business or bankruptcy sales, or for the operation of a

18

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

discount-priced clearance center operation as that term is generally used at this time and from time to time hereafter, except as permitted herein a store selling used apparel or a "flea market" type of operation or other operation selling goods (except excluding antiques, estate merchandise, "upscale merchandise" or consignment merchandise, or retailers such as goodwill); (iii) for an auditorium, activity facility, meeting hall, church or other place of worship; (iv) for any self-storage facilities; (v) within 75 linear feet from the door of the Demised Premises for any medical or health-oriented facilities or offices, including but not limited to plasma centers (excluding a pharmacy or pharmacy type retailer such as Walgreens and/or CVS); (vi) for any industrial type use (e.g., manufacturing, warehousing, processing, assembly, plating); (vii) to conduct any activity which may make void or voidable or increase the premium on any insurance coverage on the Shopping Center or parts thereof, except if the excess premium is not charged to Tenant; (viii) for any automotive, , gasoline (except if separate from the building of which the Demised Premises is a part), or oil service centers (excluding Autozone or Pep Boys); (ix)for any governmental use or office or any social service functions or facilities in excess of six thousand (6,000) rentable square feet in the Shopping Center; (x) for the operation of a massage parlor (excluding a day spa, or operators such as Massage Envy) or bath house, adult book or adult video store, or for the sale, rental or exhibition of pornographic material and/or display in storefront windows or in areas within the Demised Premises which are visible from outside of the Demised Premises, any sign, product or advertising material which is or is for pornographic or "adult" material, adult store  (xi) in a manner which is a public or private nuisance including any which creates undue noise, sound, vibration, litter or odor  (xii) for a night club, dance hall or discotheque, tavern, bar, cocktail lounge or similar establishment, or any establishment which features any form of "adult entertainment" or any form of regularly scheduled live entertainment, or any establishment which permits the sale of alcoholic beverages (excluding any incidental beer or wine sales by Tenant and a full-service restaurant; provided, however, that any restaurant and/or liquor store must be located at least 150 linear feet away from the entrance of the Demised Premises and notwithstanding no restaurant may be located adjacent to the Demised Premises); (xiii) for a roller or skating rink, skateboard or other rink or area, billiard parlor or pool hall, paintball, amusement center, video game arcade, including use of any video or mechanical game machines, theater, bowling alley, health spa, health club, exercise club, gymnasium or other similar operations; provided the foregoing shall not be applicable to Landlord; (xiv) for lodging, including a hotel, motor inn, apartments or condominiums; (xv) for storage, sale , display, repair or servicing vehicles, including automobile, truck, trailer, R.V. or boat dealer (or other similar enterprise), sales, leasing, display or repair (other than for office functions relating to such operations) (excluding retailers, such as Gander Mountain, Dick's, Cabela's and Sports Authority); (xvi) for a funeral parlor or mortuary; (xvii) for a mobile home or trailer court; (xviii) for any dumping, disposing, recycling, incineration or reduction on a large-scale commercial basis of refuse and recyclables (exclusive of collection in

19

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E78CD9FAE43C

appropriately screened areas of refuse and recyclables resulting from normal day to day operations in the locations designated by Landlord from time to time); (xix) for any commercial laundry or dry cleaning plant, or coin operated laundromat; (xx) for any day care center or school (other than in conjunction with a retail health clubs, fitness centers, gymnasiums or, in the case of day care, office operation); (xxi) for any veterinary hospital, animal boarding, training or raising facilities or pet shop; provided the foregoing shall not apply to retailers such as Petco, PetSmart and the like but may not be adjacent to tenant; (xxii) for any separately demised newsstand; (xxiii) for an off-track betting business, bingo, lottery or similar "games of chance" sales (excluding incidental sales of lottery tickets) or facility; (xxiv) for the placement of any aerial or antenna on the roof or exterior walls of the Demised Premises, other than an aerial, satellite dish or antenna for Tenant's own use (which Tenant may install on the Demised Premises using Landlord's identified roofer), and provided the foregoing shall not emit frequencies that interfere with the business operations of any other tenant of the Shopping Center; (xxv) for the display of billboards or large advertisements whether free-standing, painted upon or affixed to the exterior of any structure; (xxvi) for any astrology, palm reading, tarot card or other like service or facility; (xxvii) for the use of a "call center"; or (xxviii) for the use as a "head shop" selling drug paraphernalia; (xxix) as a so-called take-out restaurant; provided the foregoing shall not apply to Landlord (xxx) except as herein above and below provided, offices (except as incidental to retail sales or services conducted therein, dental office, travel agency, real estate agency, or similar type operations or as part of any other use which is commonly found in mixed use centers); (xxxi) beauty school or barber college; (xxxiii) gun range; (xxxiv) the sale of drug paraphernalia except as may be permitted in a standard drugstore such as Walgreens or CVS or another lawful seller of such items; and (xxxv) grocery store; provided the foregoing shall not apply to Landlord . All of the foregoing uses are sometimes collectively referred to herein as the **"Prohibited Uses"**.

Upon the expiration or sooner termination of this Lease, Tenant shall remove any aerial, satellite dish or antennae and repair any damaged caused by such removal.

H. Existing Tenant: All the restrictions set forth in Section 4F shall not apply to the Existing Tenant.

5.   **RENT AND CONSTRUCTION ALLOWANCE:**

From the Rent Commencement Date during the Term hereof, Tenant does hereby covenant and agree to pay to the Landlord in lawful money of the United States at the address of Landlord first listed above, or at such other place as Landlord may from time to time direct in writing, Fixed Minimum Rent and Percentage Rent (sometimes referred to collectively as "Rent") along with all other charges due from Tenant to Landlord under this Lease ("Additional Rent"). Tenant will not make any payment to Landlord until Landlord provides Tenant with a duly executed federal Form W-9. The Rent and

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

Additional Rent for any partial month shall be prorated based on the actual number of days in such month.

A.   Fixed Minimum Rent:  Commencing from the Rent Commencement Date of this Lease, the sum of _____$340,000.00_____ per annum which shall be paid, without demand, in equal monthly installments in advance on the first day of each and every month, in the amount of _____$28,333.33.

All the terms and conditions of this Lease shall apply during the Option Terms except that (1) each option to extend the Term shall terminate when exercised or expire in accordance with the terms of the Lease; and (2) the Fixed Minimum Rent applicable for the First Option Term shall be the sum of _____$360,000.00_____ per Lease Year which shall be paid, without demand, in equal monthly installments in advance on the first day of each and every month in the amount of _____$30,000.00_____. The Fixed Minimum Rent applicable for the Second Option Term shall be the sum of _____$380,000.00_____ per Lease Year which shall be paid, without demand, in equal monthly installments in advance on the first day of each and every month in the amount of _____$31,666.67_____.

B.   Utilities Charges:  As specifically provided as part of Landlord's Work, Landlord shall provide Tenant with access to the utilities as set forth in Exhibit C. As specified as part of Landlord's Work, Landlord shall provide separate utility meters, other than meters for sprinklers, and as specifically set forth on Exhibit C, from local distribution companies.  Tenant shall be solely responsible for and shall promptly pay for all public utility and private services rendered or furnished directly to the Demised Premises during the Term hereof including water, sewer, gas, electricity, telephone, and trash, based on the use of such utilities and shall pay any deposits or other fees required by the provider of such utilities.  Tenant shall at all times have the right, in its sole discretion, to select the particular utility providers for the Demised Premises so long as said utility is available to the Demised Premises.  In addition to, and not in limitation of any other obligations of Tenant under this Lease, other than in connection with Landlord's Work and, as specifically set forth herein, in connection with Tenant's Initial Possession of the Demised Premises, Tenant shall be solely responsible for any and all federal, state, county, local permitting or access fees, including, but not limited to utility and sewer connection fees, water access fees, or the like.  Accordingly, Landlord shall only pay impact fees in connection with Landlord's Work and a general retail use at the time Tenant Initial Possession of the Demised Premises.

Notwithstanding the foregoing, if Landlord is providing water and/or sewer under a master meter account in Landlord's name, Landlord shall provide and maintain separate utility submeters for any such water/sewer, which submeters shall accurately reflect Tenant's usage. All such submeters shall be a type that is utility billing grade, with ANSI standard, and the water submeter type shall comply with

21

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

ANSI/AWWA Standard C700, latest revision. Each submeter shall be tested on a minimum five (5) year frequency, unless otherwise requested by Tenant. If no problems are found during requested test, Tenant shall reimburse Landlord for the reasonable expense. Such submeter shall have sealed register and a minimum of available characters to match up with respective tenants' use. The schedule for reading the submeter shall reflect that of the master meter account from the public utility, and billing shall include a copy of the master meter invoice. In the event any utility service to the Demised Premises provided by Landlord shall be interrupted for a period of more than forty-eight (48) consecutive hours as a result of the acts, omissions or negligence of Landlord, its agents, contractors or employees, or as a result of Landlord's failure or refusal to make repairs, as Tenant's sole and exclusive remedy, Rent and Additional Rent shall wholly abate upon the expiration of such forty-eight (48) hour period until such services are fully restored. To the extent utilities are not separately monitored, Tenant shall have the right, at any time and from time to time, to install and operate devices for check metering (monitoring) for utility supply and use. Installation shall be the cost and responsibility of the Tenant. The monitoring equipment can be installed at any time during the lease Term. Tenant reserves the right to leave monitoring equipment in place indefinitely. Landlord agrees to recalculate utilities and services based on findings by Tenant's monitoring data. Landlord shall provide Tenant written notice of such adjustment. In no event shall Tenant be charged an amount greater than the rate that would be charged by the utility company, if service were furnished directly to the Demised Premises.

C.    Intentionally Deleted

D.    Common Area Charges and Fixed CAM: Throughout the Term of this Lease, Landlord shall be responsible for the following with respect to the Common Areas:

    (i)    operating, maintaining, refurbishing, repairing, replacing, improving and lighting the Common Areas and all other non-leasable areas and facilities located in the Common Areas of the Shopping Center which are available for use in common by occupants of the Shopping Center and/or their customers and invitees, including keeping the parking lot lights on during periods of darkness during Normal Shopping Center Hours and also, for the period commencing November 20th through December 31st each year, until midnight. Normal Shopping Center Hours are from 10:00 a.m. through 10:00 p.m., Monday through Saturday and 12:00 noon through 6:00 Sunday;

    (ii)    operating, maintaining, refurbishing, repairing, replacing, improving and lighting the service areas, garbage and refuse disposal facilities (but specifically excluding any garbage and refuses disposal facilities for tenant spaces or caused by Tenant or any other tenant), and all other areas and facilities which are not allocated for any specific tenant and located in the

22

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

Shopping Center which are used in the maintenance and operation of the Shopping Center;

(iii) operating, maintaining, refurbishing (to the extent necessary in the Landlord's reasonable business judgment), repairing, replacing, improving and lighting appropriate parking area entrances, exit and directional markers, Shopping Center signs, and other traffic control signs as are reasonably required to effect the site plan;

(iv) providing, lighting and if necessary, in Landlord's reasonable judgment, on-site traffic control;

(iv) maintaining all paved surfaces in a level and smooth condition, reasonably free of potholes, with the type of material as originally used or a substitute equal in quality; restriping and repainting as reasonably required to keep same clearly visible and appropriately marked; and

(v) cleaning, sweeping, and snow and ice removal as needed. Landlord agrees to deposit snow accumulation in an area that will not interfere with Tenant's store entrance;

(vi) to the extent same is common to the whole Building, sprinkler monitoring or any other services with respect to the sprinkler system in the Demised Premises, if applicable.

Landlord's costs shall be the expenses incurred by Landlord in performing the above enumerated items as well as those costs incurred refurbishing, repairing, maintaining, replacing, and improving (but less the amount of any insurance proceeds, or condemnation awards), lighting, line painting, landscaping, and total compensation and benefits (including premiums for workers' compensation and other insurance) paid to or on behalf of on-site employees, to the extent such employees perform work in the maintenance of the Common Areas, all charges for water, sewer and other utilities used or consumed in the Common Areas, licenses and permit fees, and parking area levies ("Common Area Charges").

Fixed Common Area Charges:    Notwithstanding anything to the contrary contained herein, Tenant's portion of Common Area Charges shall be fixed at one and 50/100 dollars ($1.50) per rentable square foot of the Demised Premises for the first Lease Year during the Original Term, as well as the initial Partial Lease Year, if any.    After the first Lease Year, or the initial Partial Lease Year if the first Lease Year is not a full Lease Year, Tenant's share of Common Area Charges shall increase 3% annually (such amount being called "Fixed CAM"). Tenant shall pay Fixed CAM in equal monthly installments in advance on the first day of each and every month simultaneously with the payment of the monthly

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

installments of Fixed Minimum Rent. Inasmuch as Tenant is paying a Fixed CAM, Tenant shall have no right to audit CAM.

E.   Real Estate Taxes: Landlord shall timely pay all real property taxes which may be levied or assessed by any lawful authority against the land and improvements in the Shopping Center or against Landlord in respect of the land and improvements in the Shopping Center (hereinafter referred to as "Real Estate Taxes"). Excluded from such Real Estate Taxes for Tenant shall be the amount of any penalties or interest if payable because of Landlord's late payment. Tenant shall pay to Landlord Tenant's pro rata share of Real Estate Taxes paid by Landlord. Tenant's pro rata share of such Real Estate Taxes shall be the product obtained by multiplying said Real Estate Taxes by a fraction, the numerator of which shall be the rentable ground floor area of the Demised Premises and the denominator of which shall be the rentable ground floor area of all buildings in the Shopping Center. In calculating Tenant's pro rata share, the area (the actual square footage of such space) leased to any Shopping Center tenant which is solely responsible for payment of Real Estate Taxes shall be deducted from the gross rentable area of the Shopping Center, and the taxes allocated to said tenant shall be deducted from the total Real Estate Taxes for the Shopping Center. If the Rent Commencement Date or the expiration date of this Lease shall fall on a date other than the beginning (or ending, as the case may be) of a tax year, a proper apportionment of said Real Estate Taxes for the year shall be made.

Tenant shall pay to Landlord, Tenant's pro rata share of Real Estate Taxes simultaneously with the monthly payment of Fixed Minimum Rent based on Landlord's good faith estimate subject to reconciliation. Landlord shall provide Tenant with copies of actual bills for Real Estate Taxes, work papers evidencing allocation of Real Estate Taxes to the Demised Premises and to all Shopping Center parcel(s) and other documentation as Tenant may reasonably request, within ninety (90) days after the applicable tax year. If Tenant has overpaid its pro rata share of Real Estate Taxes, the overpayment shall be applied to its future payments of Real Estate Taxes due. If Tenant has underpaid its pro rata share of Real Estate Taxes, Tenant shall pay such under payment within thirty (30) days of Landlord's receipt therefore. Landlord has provided Tenant with the tax bill for Real Estate Taxes for the 2020 tax year which shows Real Estate Taxes for the 2020 tax year are $0.85 per square foot per annum. Landlord makes no representation as to future Real Estate Taxes.

Interest and/or penalties for late payment shall not be included in determining Real Estate Taxes. Further, if a discount of said Real Estate Tax bills is available by prompt payment, and Landlord pays Real Estate Taxes in the time required to obtain and does obtain such discount, Tenant's pro rata share of Real Estate Taxes shall be based upon the discounted amount. Tenant's pro rata share shall be reduced to the extent of abatements, refunds or rebates granted to Landlord and for Real Estate Taxes paid by Landlord.

24

DocuSign Envelope ID: C55DA07B-4BFD-469F-87E8-E78CD9FAE43C

If Tenant deems any Real Estate Taxes payable by Tenant hereunder, or any part thereof, to be illegal or excessive, Tenant may send written notice thereof to Landlord with the request that Landlord contest the same by proper proceedings. Landlord, in Landlord's reasonable judgment shall determine if it is reasonable to commence a proceeding to contest the amount of Real Estate Taxes assessed against the Shopping Center, which shall be commenced at its own expense and in good faith. If Landlord does not contest the amount of Real Estate taxes, Tenant shall have the right to do so, and Landlord agrees to render to Tenant all assistance reasonably possible in connection therewith, including property card requests, and the joining in, and signing of, any protest or pleading which Tenant may deem it advisable to file. If such proceedings are resolved against Tenant, Tenant shall pay its pro rata share of all Real Estate Taxes, and all penalties and interest thereon, found to be due and owing. Tenant shall indemnify Landlord against any loss or damage, including criminal liability, by reason of such contest, including all costs and expenses thereof during the pendency of any such proceeding, and shall fully protect and preserve the title and rights to Landlord, as well as Tenant's leasehold estate in and to the Demised Premises.

Landlord shall promptly notify Tenant, in writing, of any sale, conveyance, change in ownership or other transfer of real property, buildings or other improvements in the Shopping Center. Notwithstanding anything to the contrary contained herein, Tenant shall contribute not more than two (2) times in any five (5) year period toward an increase in Real Estate Taxes resulting from the sale, conveyance, change in ownership or other transfer of real property, buildings or other improvements or a reassessment resulting therefrom. This provision shall include, and Tenant shall contribute toward any increase in Real Estate Taxes resulting from a transaction which, in accordance with the applicable authority having jurisdiction, constitutes a sale, conveyance, change in ownership or other transfer

Tenant shall pay directly to the applicable taxing authority all taxes assessed against Tenant for its trade fixtures, equipment, machinery, appliances, and other personal property, and any other license fees, occupational taxes and other governmental charges imposed upon Tenant in connection with this Lease or Tenant's use or occupancy of the Demised Premises or operation of its business.

F.    Taxes:

1. "Excluded Tax(es)" means any Tax other than a Transaction Tax.

2. "Tax(es)" means any income, net income, alternative or add-on minimum tax, business and occupation ("B&O") (e.g., Washington B&O), business privilege, gross income, adjusted gross income, gross receipts, commercial activity (e.g., Ohio Commercial Activity Tax or "Ohio CAT"), sales, use, consumer, transfer, documentary, registration, ad valorem, value added, franchise (including, but not limited to, the Texas franchise tax on taxable margin), privilege, profits, license,

25

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

permits, withholding, payroll, employment, or other tax, governmental fee or other like assessment or charge of any kind whatsoever, together with any interest or any penalty, addition to tax or additional amount imposed by any governmental authority responsible for the imposition of any such tax.

3. "Transaction Tax(es)" means Taxes similar in characteristics and nature to sales and use Taxes and (a) directly imposed with respect to a retail sale or rent transaction; (b) levied upon the purchaser/Tenant; (c) can be legally collected from the purchaser/Tenant; and (d) must be remitted to the applicable jurisdiction when collected from the purchaser/Tenant.

4. The rent payments do not include any amount for Transaction Taxes. Tenant will pay, reimburse or indemnify (as the facts and circumstances dictate) Landlord for any applicable Transaction Taxes with respect to the rents, unless the particular rent is nontaxable.   For purposes of clarity, currently, only rents for locations in Florida and certain locations in Arizona are subject to Transaction Taxes and these taxes will be payable by Tenant and collected by Landlord.

G.    Construction Allowance: Tenant shall receive a total tenant improvement allowance ("Tenant Improvement Allowance") towards the cost of improvements to be performed by Tenant for the performance of Tenant's work in connection with its initial occupancy of the Demised Premises ("Tenant's Initial Work") in the total amount of One Million Dollars ($1,000,000.00). Tenant represents and warrants that the full Tenant Improvement Allowance shall be utilized for Tenant's Initial Work as set forth herein. Fifty (50%) percent of Construction Allowance is a Monetary Payment with the remaining Fifty (50%) consisting of Rent Abatement as set forth below.

Monetary Payment: Landlord shall pay to Tenant in the amount of Five Hundred Thousand Dollars ($500,000.00) within thirty (30) business days after Landlord's receipt or the occurrence, as the case may be, of all of the following:

(i)    a copy of a fully executed standard form of contractor's requisition indicating substantial completion of Tenant's Initial Work;

(ii)  Tenant's Initial Work shall have been completed in accordance with Tenant's plans and specifications as attached hereto as Exhibit A-1, subject to revisions and changes required by Law and in accordance with all of the terms, covenants and conditions of this Lease applicable thereto;

(iii) Tenant shall deliver to Landlord waivers of lien from all contractors, subcontractors and materialmen working in/or the Demised Premises in excess of $5,000;

26

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

(iv) Tenant shall have obtained and delivered to Landlord a copy of the Certificate of Occupancy permitting Tenant to open and operate in the Demises Premises for the Specific Use;

(v) Tenant has opened the Demised Premises for business to the general public.

Construction Rent Abatement:   Notwithstanding anything to the contrary contained in this Lease, for a period commencing upon the Rent Commencement Date until the date the Rent Abatement (as hereinafter defined) has been completed, Tenant shall not be obligated to pay Fixed Minimum Rent, as consideration for Tenant's construction to and improvement of the Demised Premises (hereinafter referred to as "Rent Abatement"). The total amount of the Rent Abatement shall be in the amount of Five Hundred Thousand Dollars ($500,000.00).

Landlord and Tenant recognize and agree that to the extent that the Construction Allowance and Rent Abatement are spent and/or used for the purpose of constructing or improving long term real property at the Demised Premises, then Landlord and Tenant agree that the Construction Allowance and Rent Abatement shall be a "qualified Tenant construction allowance" as defined in Reg. Sec. 1.110-1(b) of the Internal Revenue Code. Landlord and Tenant agree to comply with the reporting requirements of Reg. Sec. 1.110-1(c) of the Internal Revenue Code.

6.    **INITIAL BUILDOUT AND TENANT ALTERATIONS:**

If Landlord fails to Substantially Complete Landlord's Work in the Demised Premises by July 1, 2021, subject to force majeure, then at Tenant's discretion, (i) Tenant may refuse to accept possession of the Demised Premises until February 1, 2022, or (ii) Tenant shall, upon notice thereof to Landlord, be permitted to enter the Demised Premises and complete Landlord's Work.

Landlord hereby expressly warrants to Tenant that all items which are part of Landlord's Work in the Demised Premises and specifically set forth in Exhibit C, will be in place at the Demised Premises and will be in good operating condition, as of the Tenant Initial Possession Date.

After Landlord has Substantially Completed Landlord's Work in the Demised Premises, Tenant shall notify Landlord of any defects within sixty (60) days after Tenant opens for business, by providing Landlord with written notice of such items in the Demised Premises which are not in operating condition. Landlord shall, within thirty (30) days from such notice, take such reasonable action necessary to put such inoperative items listed on the punch list in operating condition, and, thereupon, Landlord's obligation under the above warranty shall terminate. If Landlord fails to perform such work within the thirty (30) day period, or if the work cannot be reasonably completed in such thirty

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

(30) day period and Landlord has not commenced to perform such work and diligently proceed to completion), Tenant shall, have the right to send Landlord notice ("Tenant's Notice of Intent") of its intent to complete the punch list items.   If Landlord fails to complete the punch list items (or if the work cannot be completed, Landlord fails to commence such work and diligently pursue the completion of same) within ten (10) days after Landlord's receipt of Tenant's Notice of Intent. then Tenant shall have the right to complete the Punch List Items, and charge the Landlord the reasonable cost thereof. In performing any such repairs pursuant to this Section, Tenant shall use reputable contractors and perform all such repairs in a first class and workmanlike manner. Should Landlord fail or refuse to reimburse Tenant the reasonable cost of any such repair work within thirty (30) days of receipt of an invoice therefor, Tenant shall have the right to deduct such cost, from fifty (50%) percent of the next payment(s) of Fixed Minimum Rent owing until such amount is recaptured in full. Notwithstanding the foregoing, if the need for repairs constitutes an emergency and Tenant has notified Landlord in writing of the emergency, if Landlord does not commence to repair same within two (2) business days of notice from the Tenant, the Tenant's self-help rights shall engage.

In the event Tenant completes same as aforesaid, Tenant shall deliver copies of paid receipts therefore and shall deduct such costs and expenses from the next payment of Fixed Minimum Rent owing until such amount is recaptured in full. In such event, the Tenant Possession Date shall be deemed to be the date Tenant completes all of Landlord's Work in the Demised Premises provided that Tenant shall complete such work in a timely manner. During the Term of this Lease, following the completion of initial buildout and alterations  in the Demised Premises, Tenant shall have the right to make further changes, additions, and alterations to the interior of the Demised Premises ("Tenant Alteration") without consent from Landlord, provided that such work shall not affect the exterior or structural parts of the Demised Premises and the building of which the Demised Premises are a part and do  not affect the electrical, plumbing, mechanical or other building systems other than those in the Demised Premises or  on the exterior of the Demised Premises. In such an event, Tenant must obtain Landlord's prior written consent. which consent shall not be unreasonably withheld. Tenant will conduct such work in a good and workmanlike manner in accordance with Law; obtain permits therefor from all public authorities, as required, and ensure all permits are paid for and closed. Tenant will also ensure that all cost and expense arising from such undertaking as well as all damages occasioned in connection therewith shall be paid by Tenant; that all such changes remain in the Demised Premises and continue to remain the property of Landlord. Tenant shall promptly remove any Mechanic's Lien placed on the Demised Premises resulting from any such alterations. When Landlord's consent is required for Tenant to perform any alteration such consent shall not be unreasonably withheld. In connection with Tenant's Work, if such changes, additions and alterations to the interior are to be done during the completion of Landlord's Work, Tenant shall provide copies of any drawings required to be submitted to the applicable authority.   Notwithstanding anything contained herein to the contrary, Tenant acknowledges that at the end of the term, Tenant shall remove all of its, trade fixtures (whether attached to the Demised

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

Premises or not), furniture, equipment and inventory and all personal property from the Demised Premises.

At all times during the course of any Tenant Alteration and the performance of Tenant's Work, in addition to the insurance requirements of Article 12 hereof, Tenant shall procure and maintain or cause to be provided or maintained, at its sole cost and expense: (1) Worker's Compensation and Disability Benefits Insurance covering all individuals and employed by Tenant, as required by State of Florida law, (2) Owner's Protective Insurance written under a commercial general liability policy or policies form (separate from any contractor's commercial general liability policy) naming Landlord as an additional insured, as their respective interests may appear, in an amount not less than the amount provided in Article 12 hereof; and (3) Builder's Risk Insurance (fire, extended coverage, vandalism, malicious mischief, burglary and theft) written on a non-reporting basis of at least Two Million and No/100 ($2,000,000.00) Dollars; naming Landlord, Landlord's managing agent, and all fee mortgagees as additional insureds, as their respective interests may appear, and such insurance: (i) shall contain a waiver of subrogation against subcontractors; and (ii) if any off-site storage location is used, shall cover, for the full insurable value thereof, all materials and equipment on or about any such off-site storage location intended for use with respect to the Demised Premises. Not later than five (5) days prior to the commencement of any Tenant's Work or any Tenant Alteration, Tenant shall deliver, or cause to be delivered, to Landlord a certificate or certificates of insurance evidencing the aforesaid coverages and reflecting Landlord as an additional insured thereunder and which provide that each of such insurance coverages is cancelable only upon fifteen (15) days' prior written notice to Landlord.

Tenant agrees that if Tenant intends to penetrate or alter the roof of the Demised Premises in connection with any installation permitted by Landlord as part of Tenant's Work, a Tenant Alteration or otherwise, Tenant shall (1) obtain Landlord's prior consent for the proposed penetration or alteration to the roof (which consent shall not be unreasonably withheld or delayed, and (2) utilize the same contractor who installed the roof provided said contractor is competitively priced (or if such contractor is unavailable or not competitively priced, then such other contractor approved by the roof manufacturer or another reputable roof contractor reasonably acceptable to Landlord; provided the use of another roofer will not invalidate Landlord's roof warranty). Landlord's identified roofer is Tecta America using roofing manufactured by Firestone. If Tenant invalidates Landlord's roof warranty, Tenant shall be obligated to repair any damage to the roof. Tenant shall indemnify and save Landlord harmless from any cost and expense Landlord may incur as a result of any forfeiture of any applicable roofing bond or warranty as a result of work done.

To the extent, Tenant Alterations require that Tenant obtain a permit, Tenant will provide Landlord with copies of plans submitted to such permitting authority within a reasonable time upon request.  Promptly upon completion of Tenant's Work and any Tenant Alteration, Tenant shall furnish Landlord with "as built" plans for such Tenant Alteration, and (2) a certificate of occupancy or other approval issued by the applicable

29

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

governmental authority. In performing Tenant's Work or any Tenant Alteration, Tenant shall comply with all Laws (as hereinafter defined).

7.    **MAINTENANCE AND REPAIRS:**

Tenant agrees that its acceptance of the Demised Premises on the Tenant Possession Date shall signify that the Demised Premises is in tenantable and good condition with Landlord's Work Substantially Completed, and that Tenant will take good care thereof, reasonable wear and tear excepted. Tenant acknowledges and agrees that except as set forth in Exhibit C hereto, the Demised Premises shall be delivered to Tenant in its "AS IS, WHERE IS" condition with all faults other than as provided for in this Lease. Tenant acknowledges that neither Landlord nor Landlord's agent has made any representation or warranty as to the present or future suitability of the Demised Premises for the conduct of Tenant's business, or as to the condition of the Demised Premises or any equipment or utilities servicing the Demised Premises, other than those set forth in Exhibit C, for any limitation on Tenant's use or occupancy of the Demised Premises and Tenant has not relied on any further representation, warranty or any other statements not set forth in Exhibit C, by Landlord, Broker, or any other their respective agents, employees or representatives in connection with entering into this Lease.

Tenant agrees to promptly make all: (i) repairs (which term shall include replacements as required in Tenant's reasonable judgment) necessary to keep all portions of the interior portions of the Demised Premises in good order, repair and operation and all appurtenances thereto in a good, clean, safe and wholesome condition at all times during the Lease term, reasonable wear and tear excepted, except those which the Landlord is required to make pursuant to this Sections 7, 13, 20 or 30 of this Lease; (ii) repairs or damage to Tenant's loading dock bumper; (iii) repairs to the Trailer Park Area, Cart Corral Area, Sidewalk Display Area, and Outside Display Area in accordance with the terms of this Lease; (iv) repairs to the exterior portions of the Demised Premises or the Shopping Center; and (v) repairs to any other portions of the Shopping Center if the need for such repair was caused by the act, omission or negligence of Tenant. Tenant shall comply with all applicable Laws now in effect or hereafter enacted in connection with Tenant's obligations under this Lease.

The interior and exterior portions of the Demised Premises that are Tenant's obligation to repair and replace shall include (without limitation) each of the following: (i) interior faces of the exterior walls; (ii) ceilings; (iii) floors and floor coverings; (iv) all non-structural portions of the storefront including doors, windows, weather stripping, window frames, glazing and plate glass and the architectural aluminum portions thereof; (v) heating, ventilating and air conditioning equipment and systems (HVAC) exclusively serving the Demised Premises; (vi) the electrical, plumbing, sprinkler and other mechanical conduits, systems, equipment, wiring, fixtures and pipes exclusively serving the Demised Premises; and (vii) marquee lights, rear or side floodlights, attached to the exterior of the Demised Premises, lighting, sewers, and drains but only to the extent such electrical, plumbing, sprinkler and mechanical systems and equipment are either located

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

inside the interior surface of the exterior or demising walls of the Demised Premises or exclusively serving the Demised Premises to the point of connection and not located within the floor slab of the Demised Premises, unless caused by Tenant, or its employees, contractors, guests or invitees, in which event, same shall be Tenant's obligation to repair or replace. As it relates to sewers and drains, Tenant shall conduct routine maintenance of sewers, sewer lines, and drains and will advise Landlord of the need for any repairs or replacement of same.

Tenant's obligation shall also include the retaining by Tenant of a service contract by a heating, ventilating and air conditioning ("HVAC") service company to service and to maintain the HVAC equipment and systems on a regular commercially standard periodic inspection and service basis

Landlord agrees, after notice from Tenant of the need therefore, at no cost to Tenant, to make all repairs and replacements necessary to keep the exterior and structural portions of the Demised Premises (exclusive of interior doors, door frames, door checks, plate glass, window frames and store front facade, the architectural aluminum portions thereof and any other portion of the exterior portions of the Demised Premises specifically set forth in this Lease as Tenant's obligations), in good order, repair and operation except those repairs and replacements the Tenant is required to make pursuant to this Section 7 or otherwise set forth in this Lease. The exterior and structural portions of the Demised Premises shall include (without limitation) each of the following: (i) exterior walls of the Demised Premises and exterior faces thereof; (ii) the roof; (iii) gutters, downspouts and roof drainage system; (iv) foundations and floor slabs; (v) all structural members of the building of which the Demised Premises is a part; (vi) intentionally omitted; (vii) outside marquee lights or rear or side floodlights not attached to the exterior of the Demised Premises; (viii) except as specifically set forth as Tenant's obligation herein, electrical, plumbing, sprinkler and other mechanical systems and equipment (whether or not exclusively serving the Demised Premises) located outside the interior surface of the exterior or demising walls and/or within the floor slab of the Demised Premises. Notwithstanding anything to the contrary contained in this Lease, Landlord shall have no obligation to reimburse Tenant for the cost of labor and materials to repair or replace any ceiling tiles in the Demised Premises, repair or replace any of Tenant's furniture, fixtures, equipment or merchandise or other contents in the Demised Premises that are damaged or stained as a result of roof leaks, casualty, or any other reason.

Notwithstanding anything contained in this Lease to the contrary, neither Landlord nor Tenant shall not be required to make any repairs that were caused or occasioned by any negligence or willful misconduct of the other, any subtenant, assignee, or concessionaire of the other, or any of their respective officers, employees, agents or contractors.

If Landlord fails to commence and diligently complete the making of any repairs within thirty (30) days after notice by Tenant of the need for such repairs, Tenant shall after giving Landlord ten (10) days written notice of its intention to do so, in addition to all other rights and remedies under the Lease, shall have the right to perform such repairs

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

and to charge Landlord the reasonable cost thereof. If the repair is necessary to end, mitigate, or avert an emergency and if Landlord, after receiving confirmation from Tenant of such necessity, fails to commence repair within twenty-four (24) hours of receipt of such notice, Tenant may do so at Landlord's cost, without waiting additional time.    In performing any such repairs pursuant to this Section, except with respect to the roof, which is specifically addressed separately, Tenant shall use reputable and licensed contractors and perform all such repairs in a first class and workmanlike manner. Should Landlord fail or refuse to reimburse Tenant the reasonable costs of any such repair work within thirty (30) days of receipt of invoice therefor, Tenant shall have the right to deduct such costs, from fifty percent (50%) of the next payment(s) of Fixed Rent owing until such amount is recaptured in full.

If Tenant fails to commence and diligently complete the making of any repairs within thirty (30) days after notice by Landlord of the need for such repairs, Landlord shall after giving Tenant ten(10) days written notice of its intention to do so, in addition to all other rights and remedies under the Lease, shall have the right to perform such repairs and to charge Tenant the reasonable cost thereof. If the repair is necessary to end, mitigate, or avert an emergency and if Tenant, after receiving confirmation from Landlord of such necessity, fails to commence repair within twenty-four (24) hours of receipt of such notice, Landlord may do so at Tenant's cost, without waiting additional time. In performing any such repairs pursuant to this Section, Landlord shall use reputable and licensed contractors and perform all such repairs in a first class and workmanlike manner.

Any reservation of a right by Tenant to enter upon the Demised Premises and to make or perform any repairs, alterations, or other work, in, to, or about the Demised Premises which, in the first instance, is the Landlord's obligation pursuant to the Lease, shall not be deemed to: (i) impose any obligation on Tenant to do so; (ii) render Tenant liable to Landlord or any third party for failure to do so; or (iii) relieve Landlord from any obligation to indemnify Tenant as otherwise provided elsewhere in the Lease.

Notwithstanding anything contained in this Lease to the contrary: Landlord and Tenant shall be responsible for any repairs, maintenance and replacement arising out of or relating to any act, omission, or negligence by it or its agents, employees, contractors or invitees.

8.    **SIGNS:**

Except as specifically permitted herein, Tenant shall not maintain or display any signs, lettering or lights on the exterior of the Demised Premises, in the Common Areas, or in the interior of the Demised Premises or any show window thereof, which is visible from the exterior thereof unless approved by Landlord in writing, which approval shall not be unreasonably withheld, conditioned or delayed; provided such signage shall comply with the provisions of this Paragraph.    Tenant shall, at its sole cost and expense, provide and maintain a proper sign or signs on the exterior of the Demised Premises which sign shall be of such size, color, design, illumination and location as designated in Exhibit D.

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

Notwithstanding the foregoing, provided same comply with all applicable Laws and Landlord's sign criteria; provided the foregoing shall not apply to a Big Lot's Store having the sign criteria set forth on Exhibit D. Landlord hereby approves Tenant's signage, including colors and logos, on the facade of the Demised Premises as shown on Exhibit D. Subject to applicable Laws, the Tenant may, as consistent with other locations in the trade area, use its own professionally designed monthly advertising posters, non-illuminated signs or such signage as is typically maintained by Tenant's other locations on up to fifty (50%) percent coverage of the windows.   No rights are granted to Tenant to use the outer walls or the roof of the Demised Premises or any other area outside of the Demised Premises. Landlord shall have the right to remove the signs or any of them, at any time or from time to time during the Term of this Lease, as may be necessary in order to paint or make any other repairs, alterations or improvements in or upon the Demised Premises or the building, or any part thereof, providing the same be replaced by Landlord, at Landlord's cost and expense. Tenant shall at no time utilize any scotch plaid decal strips or flashing or neon signs or lights on the Demised Premises, and the bulbs of all Tenant's permitted signs and lights shall be replaced as soon as they become defective or lose their intensity. Notwithstanding anything contained in this Lease to the contrary, Tenant shall have the right: (i) for a period of time not to exceed fifteen (15) days prior to opening the Demised Premises for business, to affix a "Coming Soon" professionally prepared temporary sign to the outside of the Demised Premises; and (ii) for a period not to exceed fifteen (15) days after opening the Demised Premises for business, to affix a "Grand Opening" professionally prepared temporary sign to the outside of the Demised Premises.

Landlord has applied for and has obtained the permits to construct and maintain two (2) pylon monument sign structures to be constructed in the location identified on Exhibit A as "Monument Sign Structure"(individually, the "Pylon", collectively, the "Pylons"). Landlord shall construct the Pylons so that: (i) the panel where Tenant will install its sign is properly wired, maintained and constructed; and (ii) conform to all requirements of any authorities having jurisdiction. Tenant shall have the right at its sole cost and expense, to install and maintain its sign panels in the second position on the Sign Panels as shown on Exhibit D-1 and in the form shown on Exhibit D-1, which has been approved by Landlord.   Once Tenant's sign panels are installed, Tenant shall not be required to remove, replace, change, or alter such signs, unless in connection with Tenant's obligation to maintain the sign panel and as required by Law, and Landlord shall not remove, replace or diminish the size of Tenant's signs unless so required by Law. Notwithstanding anything contained in this Lease to the contrary, Tenant shall not have the right to have its sign panel displayed on more than the two (2) New Pylon Signs.

Upon the expiration or early termination of this Lease, or at such time as Tenant ceases to operate a business at the Demised Premises, Tenant shall remove all of its signage from the Demised Premises, including any exterior signs, and its pylon signage, signs, awnings, canopies and decorations and shall repair any damage caused by such removal. In connection with the foregoing, Tenant shall properly fill and color match all holes in the Building facade caused by such removal.   During the Term of this Lease, Landlord

33

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

shall not install any structure, sign or landscaping or take any other action, unless so directed by any authority having jurisdiction over the property, which will materially and permanently obstruct or interfere with the visibility or legibility of Tenant's signs, except that Landlord may place "for lease" and/or "for sale" signs, and any signs or notices required by any governmental entity, at such times and in such locations of the Shopping Center but not within the Demised Premises as Landlord in its reasonable discretion determines.

Subject to all applicable Law, Tenant, at its sole cost and expense, shall have the right to place, suffer or erect signs, awnings, canopies or decorations on the exterior walls of the Demised Premises. Tenant agrees to maintain such sign(s) in good condition and repair, save and defend Landlord free of all cost, expense, loss, or damage which may result from the erection, maintenance, and existence of the same.

## 9.   TRADE FIXTURES:

Tenant agrees to furnish and install, at Tenant's expense, all trade fixtures or equipment required by Tenant. At the end of the Term, Tenant shall remove such trade fixtures and equipment, and shall repair any damage to the Demised Premises caused by or resulting from such removal, reasonable wear and tear excepted, and shall deliver the Demised Premises to Landlord in broom clean condition. Should Tenant have installed lighting fixtures, and/or HVAC equipment, the parties agree that they are not trade fixtures or equipment and they may not be removed since they became the property of Landlord when affixed. For the benefit of Tenant's employees and customers, Tenant shall be entitled to place up to two (2) vending machines and/or equipment in the Demised Premises and the Sidewalk Display Area, providing same does not impede the ingress or egress of pedestrian traffic. Tenant shall be responsible for maintaining said machines and/or equipment in good condition and shall indemnify Landlord for any liability arising from the use of said machines and equipment.

## 10.   GOVERNMENTAL REGULATIONS:

Landlord shall provide Tenant with a complete set of "as built" drawings, to the extent in Landlord's possession, in the event they are required by local, state or federal code. Landlord shall further provide an asbestos survey to Tenant prior to Tenant's Possession Date. After Tenant's Possession Date: (i) to the extent it is Tenant's obligation under this Lease, including, without limitation, Sections 4, 6 and 7 herein; (ii) caused by Tenant exercising its rights under this Lease, including, without limitation, Tenant Alterations; or (iii) due to the specific manner or method of Tenant's use or operation of the Demised Premises, Tenant agrees to make all repairs, alterations, additions, or replacements to the Demised Premises or those portions of the Common Areas permitted to be used by Tenant, specifically the Sidewalk and Outdoor Display Area, Tenant's Storefront Area, Cart Corral Area, Tenant Outside Selling Area, Tenant's Loading Dock and Trailer Park Area (collectively, "Tenant's Used Common Areas") required by any law, statute, ordinance, order or regulation of any governmental authority (collectively "Laws"); to

34

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

keep the Demised Premises equipped with all fire and safety appliances, devices, equipment and applications so required, including, but not limited to. smoke and fire alarms, sprinkler system (subject to Landlord's responsibility to ensure there is adequate pressure and flow to the sprinkler riser for Tenant's use) and approved fire extinguishers of the type and number recommended; to procure any licenses and permits required; and to comply with the orders and regulations of all governmental authorities, including all requirements as set forth in the Americans with Disabilities Act as said Act now exists or may be amended in the future; and to place all HVAC equipment in compliance with the Clean Air Act of 1992. Notwithstanding anything to the contrary, if Tenant shall notify Landlord of the presence of Hazardous Materials in or on the interior of the Demised Premises, Landlord shall promptly remove any Hazardous Materials found in or on the interior of the Demised Premises which were there prior to Tenant's Possession Date per code requirements.

11.  **INDEMNIFICATION:**

Tenant, its successors and assigns, agrees to indemnify, defend and hold harmless Landlord from any liability for injury to or death of any person (including Tenant, its agents, employees, visitors or invitees) or loss or damage to personal property of every kind and nature (including Tenant's property) occurring within the Demised Premises or Tenant's Used Common Areas while in use by Tenant or caused by Tenant's actions or inactions in such areas, or any other area of the Shopping Center where Tenant has exclusive use rights arising from or in connection with the use and occupancy, or where Tenant has a maintenance obligation within the Demised Premises caused by the negligent acts or omissions to act or willful misconduct of Tenant's or Tenant's or employees, contractors and agents, or by the failure of Tenant, or Tenant's employees, contractors and agents to fulfill Tenant's obligations hereunder. When a claim is caused by the joint negligence or willful misconduct of Tenant and Landlord or Tenant or a third party unrelated to Tenant, except Tenant's agents or employees, Tenant's duty to indemnify, defend and hold harmless Landlord shall be in proportion to Tenant's allocable share of the joint negligence or willful misconduct.

Landlord, its heirs, executors, administrators, successors and assigns, agrees to indemnify, defend and hold harmless Tenant from any liability for injury to, or death of any person (including Landlord. its agents, employees, visitors or invitees) or damage to personal property(including Landlord's property) of every kind and nature occurring from any cause in the Shopping Center or Common areas of the Shopping Center other than those in Tenant's Sidewalk Sales Area, the Trailer Park Area, or any other part of the Common Areas while in use by Tenant or which Tenant has of the right to use in accordance with this Lease, except to the extent of Landlord's negligence therein, arising from or in connection with the use and occupancy of the structural components of the Demised Premises, the Shopping Center or the Common Areas caused by defects therein, or caused by the negligent acts or omissions to act or willful misconduct of Landlord. or Landlord's employees, contractors and agents, or by the failure of Landlord or Landlord's or employees, contractors and agents to fulfill Landlord's obligation hereunder. When a

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

claim is caused by the joint negligence or willful misconduct of Landlord and Tenant or Landlord and a third party unrelated to Landlord, except Landlord's agents or employees , Landlord's duty to indemnify, defend and hold harmless Tenant shall be in proportion to Landlord's allocable share of the joint negligence or willful misconduct Under no circumstances shall Landlord be liable for any damage to Tenant's merchandise or personal property in the Demised Premises or located anywhere in the Shopping Center.

Landlord and Tenant agree to notify their respective insurance carriers of the indemnity and hold harmless agreement contained in this Section.

The provisions of this Section 11 shall survive termination of this Lease.

12.    **INSURANCE**

A.    Tenant:  At all times after delivery of possession of the Demised Premises to Tenant, Tenant shall maintain in full force and effect one or more policies evidencing the following coverages:

(i) Comprehensive general liability insurance with the broad form endorsement, including, but not limited to, premises operations, independent contractors, products and completed operations and contractual liability coverage for losses arising from the operation, possession, maintenance, use of the Demised Premises, the periodic use of the Trailer Park Area the Sidewalk Display Area, the Outside Display Area, the Cart Corral Area as specifically required in this Lease, or ways immediately adjacent thereto, with limits of liability not less than $1,000,000 per occurrence, $2,000,000 in aggregate, for both bodily injury (including death) and property damage;

(ii) Intentionally Deleted;

(iii) Standard form worker's compensation and employer's liability insurance covering all Tenant's employees for injury (including death) or illness suffered in the course of or arising out of their employment, providing statutory worker's compensation benefits and employer's liability limits of not less than $500,000;

(iv) Plate glass insurance covering the full replacement value of plate glass, frames and lettering thereon within and part of the Demised Premises, including a safety glazing material endorsement; provided Tenant can self-insure for all plate glass, inventory, equipment (excluding equipment that is used for the operation of the Demised Premises, such as heating, ventilating and air-conditioning systems) and trade fixtures; provided, however, with respect to the foregoing items, Tenant may self-insure an amount not to exceed $300,000;

(v) If Tenant utilizes or stores any Hazardous Materials, Tenant shall carry Hazardous Material contamination insurance with limits of $1,000,000.00 limit

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

per occurrence in connection with Tenant's use and/or operation of the Demised Premises; provided the foregoing shall not apply to cleaning materials used in a manner and in quantities used in retail operations in accordance with applicable Law;

(vi) "All Risk" casualty insurance against loss or damage by fire, vandalism and malicious mischief, and other perils, in an amount equal to 100% of the replacement cost of all furniture, fixtures, stock and equipment, including fixtures, improvements and betterments installed by Tenant, in the Demised Premises;

(vii) At all times during which Tenant is doing construction work in the Demised Premises, such coverage as is set forth on Exhibit H;

(viii)  An umbrella policy in an amount not less than $5,000,000, with respect to all policies to be carried by Tenant hereunder;

All insurance provided by Tenant shall name Landlord, Landlord's managing agent, any ground lessor of the Shopping Center and each mortgagee of Landlord as additional insureds, as their respective interests may appear, with no obligation on the part of Landlord. Landlord's managing agent, Landlord's mortgagee and/or ground lessor to pay premiums. Such policy or policies shall contain provision for at least thirty (30) days' notice to Landlord of cancellation and shall include cross liability endorsement. If such premiums shall not be so paid and/or the policies therefor shall not be so delivered, then Landlord may procure and/or pay for the same and the amounts so paid by Landlord. Tenant shall be liable for all of Tenant's deductible amounts or self-insured retention. All insurance policies obtained by Tenant shall contain a waiver of subrogation whereby the insurer waives all rights of subrogation against Landlord, its partners, officers, directors, agents, employees, contractors or other representatives, with respect to losses insured under such policies. Tenant shall advise Landlord promptly of the applicable provisions of such insurance policies and notify Landlord promptly of any cancellation or change therein. Prior to Tenant Possession Date or Early Access Work in the Demised Premises, Tenant shall deliver to Landlord copies of all certificates evidencing the existence and amount of such insurance, issued by an insurer or insurers, licensed and admitted to do business in the State of Florida. Without limiting any other rights of Landlord hereunder, Tenant shall procure policies for all insurance at least thirty (30) days before the expiration of prior policies. Each insurance policy shall contain the following provisions: (1) the agreement of the insurer to give Landlord and each mortgagee of Landlord at least thirty (30) days' notice prior to cancellation, change in coverage or any other material change in such policy and ten (10) days' notice for any non-payment of premium due by the Tenant; (2) waiver of subrogation rights against Landlord and Tenant; (3) Intentionally Deleted. Tenant's insurance may be in the form of a general coverage or blanket policy covering the Demised Premises and other premises, provided that Landlord, any ground lessor of the Shopping Center and

37

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

each mortgagee of Landlord are specifically named therein as additional insureds. Tenant shall pay all of any increase in premiums for the casualty or public liability insurance required to be maintained by Landlord which is a result of the type of services rendered by Tenant or its activities in the Demised Premises, whether or not Landlord has consented to the same.

In the event Tenant fails at any time during the term of this Lease to obtain and keep in force required insurance or to provide satisfactory evidence thereof, Landlord shall have the right but not the duty to procure such insurance, and Tenant shall pay to Landlord the costs and expenses thereof, as Additional Rent when the next payment of Base Minimum Rent following billing by Landlord is required to be made. Tenant and Landlord hereby waive any right of subrogation against the other party hereto. The amounts of the foregoing insurance shall in no event be less than the amount required by any mortgagee of Landlord.

B.    Landlord: At all times during the term of this Lease, Landlord shall maintain in full force and effect one or more policies of insurance as Landlord in its business judgment deems advisable for the operation and protection of Landlord, Tenant and the Shopping Center, including, but not limited to, comprehensive general liability insurance against claims for bodily injury, death or property damage occurring in or upon the Common Area and/or Shopping Center with limits of liability not less than $2,000,000 general combined single limit for both bodily injury (including death) and property damage, and fire and extended coverage or all-risk casualty insurance, including vandalism, malicious mischief, loss of rental income, and sprinkler leakage (if building contains sprinklers) insurance, and insurance covering such other perils, including flood, earthquake and boiler or compressor damage, insuring the buildings and other improvements made by Landlord in the Shopping Center in an amount equal to 100% of the replacement cost thereof less items required to be insured by Tenant. Such insurance may be, in part or whole, maintained by another (in the event that Landlord does not hold or own a fee simple title interest in or to the entirety of the Shopping Center or the Demised Premises). Landlord shall have the right to maintain a blanket policy or policies of insurance to satisfy its obligations under this Section. All proceeds shall belong to and be the sole property of Landlord except such proceeds designated for Tenants and provided that same does not deduct from Landlord's proceeds. Prior to Tenant's Possession Date, Landlord shall provide Tenant with a certificate of insurance evidencing such coverage. Tenant shall have the right to request same any time prior to Tenant's Possession Date. Landlord shall have the right to maintain blanket and/or umbrella policies with not less than the foregoing limits. Notwithstanding anything to the contrary contained herein, Landlord shall be solely responsible for any and all deductibles and/or self-insured retentions in excess of $25,000.00 with respect Section 13. Tenant's only obligation as it relates to deductibles herein shall be Tenant's pro-rata share of deductibles not to exceed $25,000.00 for casualties set forth in Section 13.

38

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

In addition to the payment of Fixed Minimum Rent, Tenant shall, commencing on the Rent Commencement Date, simultaneously with the monthly payment of Fixed Minimum Rent, pay Tenant's estimated pro rata share of the premiums paid by Landlord for maintaining the all insurance policies, but only to the extent such insurance is specifically and solely for the Shopping Center, referred to herein and obtained by Landlord, for the Term hereof (the "Insurance Costs"). Tenant's pro rata share of Insurance Costs shall be based on Landlord's good faith estimate subject to reconciliation. Landlord shall provide Tenant with copies of actual bills for Insurance Costs and other documentation as Tenant may reasonably request, promptly within thirty (30) days after the end of each Lease Year. If Tenant has overpaid its pro rata share of Insurance Costs, the overpayment shall be applied to its future payments of Insurance Costs due. If Tenant has underpaid its pro rata share of Insurance Costs, Tenant shall pay such under payment within thirty (30) days of Landlord's receipt therefore.

Tenant's pro rata share of such Insurance Costs shall be the product obtained by multiplying said Insurance Costs by a fraction, the numerator of which is the rentable ground floor area of the Demised Premises and the denominator of which is the gross rentable ground floor area of all buildings in the Shopping Center. Landlord covenants that there shall be no duplication of costs between this Section and any other Section of this Lease. The premiums for the insurance required to be carried by Landlord pursuant to this Section 12.B are estimated to be $0.25 per square foot per annum for the 2020 calendar year. The foregoing is only an estimate and not a representation or warranty, nor an inducement for entering this Lease.

In the event that the premiums on policies required to be carried by Landlord pursuant to this section are increased due to the specific manner of use or occupancy of another tenant in the Shopping Center, such increase shall be deducted from the calculation stated above in the determination of Tenant's pro rata share of such insurance. Tenant shall not be responsible for any increase in the payments toward such insurance cost.

13. **FIRE REBUILDING AND ALTERING:**

A.     If the Demised Premises, any permanent additions or leasehold improvements thereto, and/or any buildings or other improvements located within the Shopping Center shall be damaged, destroyed, or rendered untenantable, in whole or in part, by or as the result or consequence of fire or other casualty during the Term hereof, subject to receipt of insurance proceeds provided Landlord is diligently pursuing collection of such insurance proceeds, Landlord shall repair and restore the same to a condition substantially similar to the condition existing immediately prior to such casualty with respect to Landlord's Work and such Tenant Alterations including initial buildout improvements, but in compliance with all regulations by authority having jurisdiction as of the date of restoration; During any period of

39

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

repair or casualty, the Rent and Additional Rent herein provided for in this Lease shall abate entirely in case the whole premises are untenantable or, if Tenant determines in good faith it cannot economically conduct business from the undamaged portion of the Demised Premises. In the event of a casualty which damages only a portion of the Demised Premises and Tenant continues to operate in the remaining portion of the Demised Premises, Rent and Additional Rent shall be reduced based on the square footage of the Demised Premises which is not used by Tenant. Said abatement shall cease when the Demised Premises are restored to tenantable condition. Notwithstanding anything contained in this Lease to the contrary, Landlord shall not be obligated to insure, repair, replace or restore any of Tenant's trade fixtures (whether attached to the Demised Premises or not), furniture, equipment, inventory or personal property in the Demised Premises or merchandise.

B.    In the event the Demised Premises or a substantial portion of the Shopping Center, because of such damage or destruction, are not repaired and restored to tenantable condition within three hundred sixty (360) days from the date of such casualty , Tenant may, at its option, terminate this Lease by giving sixty (60) days prior written notice to Landlord and thereupon Tenant shall be released from all future liability and obligations under this Lease. Landlord shall use commercially reasonable efforts to perform such construction, including obtaining the insurance proceeds and receiving its permits to repair such damage. In the event Landlord does not reasonably expect to complete the restoration of the Demised Premises or portion of the Shopping Center damaged or destroyed to tenantable condition, within three hundred sixty (360) days of such casualty, Landlord shall have the right to send written notice thereof to Tenant at any time after the casualty, such notice including Landlord's estimation of the when the damage or destruction shall be repaired ("Estimated Repair Date"). Tenant shall, at its option, either: (i) terminate this Lease by giving sixty (60) days written notice to Landlord of such termination and thereupon Tenant shall be released from all future liability and obligations under this Lease: or (ii) agree to waive its right to terminate this Lease, pursuant to its rights hereunder, and this Lease shall continue with Rent abating as set forth in Section 13.A. If Landlord does not complete the reconstruction as required herein, within ninety (90) days of the Estimated Repair Date, Tenant's right to terminate this Lease shall be reinstated.

C.    The term "Total Destruction" of the Demised Premises as used in this Section is defined as damage to or destruction of the Premises by fire or other causes to the extent that the cost of repair or reconstruction will exceed fifty percent (50%) of the cost of rebuilding or reconstructing the Premises at the time of such disaster. In the event of Total Destruction of the Premises during the last twenty-four (24) months of: (i) the original Term; or (ii) during any of the Option Terms, Tenant shall have the right to terminate this Lease upon delivery of written notice to Landlord of such election within sixty (60) days following the date of the casualty. If Tenant does not elect to terminate this Lease, Landlord shall rebuild

40

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

the Premises as described in Section 13. Landlord shall not be required to rebuild unless Tenant exercises an option to renew which will cause the remaining term of the Lease to exceed twenty-four (24) months.

14.    **FORCE MAJEURE:**

Whenever a period of time is provided in this Lease for Landlord or Tenant to do or perform any act or thing, Landlord or Tenant shall not be liable or responsible for any delays due to strikes, lockouts, casualties, acts of God, war, governmental regulation or control, or other causes beyond the reasonable control of Landlord or Tenant, and in any such event said time period shall be extended for the amount of time Landlord or Tenant is so delayed. This provision shall not apply to excuse the payment of Rent or any other monies due under this Lease. Landlord reserves the right to discontinue temporarily any services Landlord has agreed to supply in the event of a force majeure event, as set forth in Section 14 herein or as a result of repairs, alterations, or improvements; any rule, order or regulation of any governmental agency; or Landlord's compliance with any mandatory governmental energy conservation or environmental protection program, or any voluntary governmental energy conservation program at the request of or with consent or acquiescence of Tenant.

15.    **INJUNCTION:**

In addition to all other remedies, Tenant or Landlord is entitled to obtain a restraining order and/or injunction against all violations, actual, attempted or threatened of any covenant, condition, or provision of this Lease.

16.    **WARRANTY OF TITLE BY LANDLORD; REPRESENTATIONS:**

Landlord hereby warrants and represents to Tenant that at the time of the execution by Landlord of this Lease: (a) Landlord is the sole owner in fee simple and absolute of the Demised Premises; (b) Landlord has good and marketable fee simple title to the Demised Premises free and clear of all liens and encumbrances except taxes not yet due and payable and other exceptions of title which, to Landlord's actual knowledge, will not, in Landlord's reasonable judgment, materially and adversely impact the operation of business in the Demised Premises for the Specific Use; (c)intentionally omitted; (d) Landlord has full right and power to execute this Lease and to lease the Demised Premises for the Term provided in this Lease; (e) to Landlord's actual knowledge, Landlord has not received any written notice of an intent to change the current zoning and the construction of the Demised Premises complies with all local planning or zoning commission plans or orders at the time the Demised Premises were constructed; and (f) Landlord, to its actual knowledge is not in default under any of the terms of any restriction, easement, covenant or agreement of record of which Landlord is a party to, and no notice has been received by Landlord or given by Landlord of any default under any restriction, easement, covenant or agreement of record of which Landlord is a party to that has not been cured, and there are no circumstances that with the passage of time or

41

DocuSign Envelope ID: C55DAD78-4BFD-489F-87E8-E76CD9FAE43C

giving of notice would be a default by Landlord under any restriction, easement, covenant or agreement of record. In case Landlord does not have the title and rights aforesaid, or breaches the aforesaid representations and a claim is made which prevents Tenant from operating in the Demised Premises as a result of thereof, then in such event, Tenant may withhold Rent and Additional Rent thereafter accruing until Tenant is furnished proof satisfactory to Tenant as to the parties entitled to receive Rent and Additional Rent, or the breach of the aforesaid representations is cured. Should Landlord fail to furnish such satisfactory proof to Tenant within six (6) months of the event, then Tenant may, but is not obligated to vacate the Demised Premises upon sixty (60) days' notice to Landlord and no Rent or Additional Rent for the remainder of the Term shall become due to Landlord. Landlord will defend, indemnify, and protect the Tenant from all costs, demands, claims, causes of action, losses, liabilities, judgments, damages and expenses (including without limitation attorney fees and court costs) in any dispute made by any party claiming that Landlord does not have full right and power to execute this Lease, or arising out of a breach of the above representations.   Tenant acknowledges that, notwithstanding anything contained in this Lease to the contrary, Landlord makes no representation regarding zoning, requirements of Law or any other legal restrictions to which the Demised Premises or the Shopping Center are subject to.   Tenant has performed its own due diligence with respect thereto.

Landlord covenants that Landlord shall not make major amendments, modifications or terminate any restriction, covenant or agreement of record, nor enter into any new or other restriction, covenant or agreement of record affecting the Shopping Center which negatively impacts Tenant or violates any exclusive or prohibited use contained herein, nor permit any other entity to do so, without obtaining the prior written consent of Tenant, which said consent shall not be unreasonably withheld or delayed; provided, however, Landlord agrees it shall not be unreasonable for Tenant to withhold consent if said amendment, modification, termination or new agreement substantially and adversely limits Tenant's rights or expands Tenant's obligations as set forth under this Lease.

17.   **QUIET ENJOYMENT:**

Landlord hereby covenants and agrees that, upon paying the Rent and materially performing all the covenants and conditions on Tenant's part to be performed, beyond any applicable cure period, Tenant's use and enjoyment of the Demised Premises will not be disturbed during the Original Term of this Lease and any Option Terms or extensions by Landlord or anyone claiming through Landlord.

18.   **MORTGAGE AND ESTOPPEL CERTIFICATES:**

Tenant accepts this Lease subject and subordinate to any recorded mortgage lien presently existing or hereafter created upon the Demised Premises or Shopping Center.; provided, that as a condition to such subordination, Tenant and the holder of the existing mortgage lien shall enter into a mutually satisfactory subordination, non-disturbance, and attornment agreement ("SNDA"), which shall include a covenant by the mortgagee not to

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD8FAE43C

disturb the tenancy of Tenant, so long as Tenant is not in default of its obligations under this Lease beyond any applicable notice and cure periods. In connection with any future mortgage lien, such subordination, non-disturbance, and attornment agreement shall be in a mutually satisfactory form. All parties agree to negotiate in good faith. If the interests of Landlord under this Lease shall be transferred by reason of foreclosure or other proceedings for enforcement of any first mortgage on the Demised Premises, Tenant shall be bound to the transferee, under the terms, covenants and conditions of this Lease, for the balance of the Term remaining, including any options or extensions, with the same force and effect as if the transferee were Landlord under this Lease, and Tenant agrees to attorn to the transferee, including the first mortgagee under any such mortgage if it be the transferee, as its Landlord.

Upon request in writing from Landlord, Tenant agrees to execute, acknowledge, and deliver to Landlord, any purchaser of the Shopping Center, or to the holder of the mortgage lien on the Demised Premises, a statement certifying the following facts; provided that such facts are true and ascertainable: (i) this Lease constitutes the entire agreement between Landlord and Tenant, is unmodified (or if there has been a modification, that the Lease, as modified, is in full force and effect), and is in full force and effect; (ii) the dates to which the Fixed Minimum Rent, Common Area Charges and other charges hereunder have been paid; (iii) the Tenant is occupying the Demised Premises; (iv) Tenant knows of no default under the Lease by the Landlord and there is no offset which Tenant has against Landlord; and (v) any other information reasonably requested by such purchaser or mortgagee.

19.   **DEFAULT:**

A.   If: (i) Tenant shall be adjudicated a bankrupt, or if a trustee or receiver of Tenant's property be appointed; or (ii) Tenant shall make an assignment for the benefit of creditors; or (iii) Tenant defaults in its obligations in the performance of any other covenant, agreement, condition, rule or regulation herein contained for thirty (30) days after receipt by Tenant of a second written notice of such default from the Landlord; provided, however, Landlord shall not send the second notice until at least fifteen (15) days have passed from receipt by Tenant of the first notice (if the nature of the default is such that it cannot be reasonably cured within thirty (30) days, Tenant shall be permitted additional time to cure the default provided Tenant is diligently pursuing such cure; or (iv) Tenant defaults in the payment of Rent for more than five (5) days after receipt by Tenant of a second written notice of such default; provided, however, Landlord shall not send the second notice until at least fifteen (15) days have passed from receipt by Tenant of the first notice; or (v) Tenant has received more than two (2) notices specifically for the same default at different instances, within in a twelve (12) month period, then this Lease, if the Landlord so elects, shall thereupon become null and void, and the Landlord shall have the right to reenter or repossess the Demised Premises, either by summary proceedings, surrender or otherwise, and dispossess and remove

DocuSign Envelope ID: C55DAD78-4BFD-489F-87E6-E76CD9FAE43C

therefrom the Tenant or other occupants thereof and their effects, without being liable to any prosecution therefor.

If Landlord does not receive the payment of the Rent reserved herein, or any installment thereof Landlord's remedies shall include those set forth in Section 46 herein.

Neither bankruptcy, insolvency, an assignment for the benefit of creditors, nor the appointment of a receiver shall affect this Lease or permit its termination so long as the covenants on the part of the Tenant to be performed shall be performed by Tenant or some party claiming under Tenant. In such case, the Landlord may, at its option, relet the Demised Premises or any part thereof, as the agent of the Tenant, and the Tenant shall pay the Landlord the amount by which the rent reserved herein for the balance of the Term shall exceed the rent received by Landlord, less any reasonable costs and expenses expended by Landlord in connection with obtaining the new tenant, including, without limitation, brokerage fees. In no event shall Landlord be entitled to accelerate any amount due under this Lease following a default by Tenant. Rather, such amount shall remain payable monthly as they would have come due under this Lease. Landlord shall be obligated to mitigate its damages by using commercially reasonable efforts to find a replacement tenant to lease the Demised Premises.

B.    If Landlord shall default in its obligations for the performance of any of the agreement, conditions or covenants herein contained on its part to be performed in connection with its obligations in the Demised Premises or the Shopping Center, Tenant may give written notice of such default to Landlord and if Landlord shall not within thirty (30) days thereafter cure such default (or if the nature of the default is such that it cannot be reasonably cured within thirty (30) days, Landlord shall be permitted additional time to cure the default provided Landlord is diligently pursuing such cure, ), then the Tenant, shall, have the right to send Landlord a second notice of default which allows Landlord an additional fifteen (15) days to cure such default or commence the cure of such default and diligently pursue same. If after the second notice to Landlord and Landlord continues to fail to commence and diligently pursue such cure within such fifteen (15) days of receipt of Tenant's second notice, Tenant may at its option: (i) to cure such default and the reasonable amount expended by it therefor may be deducted by Tenant from Rent up to an amount equal to fifty (50%) percent of each payment of Rent thereafter to become due until such amount is recaptured in full; or (ii) send Landlord a third notice of default which allows Landlord an additional ten (10) days to cure such default or commence the cure of such default and diligently pursue same. If after the third notice to Landlord and Landlord continues to fail to commence and diligently pursue such cure within such ten (10) days of receipt of Tenant's third notice Tenant may at its option terminate this Lease without penalty or default on the part of Tenant.    Tenant shall, upon request, submit to Landlord receipted bills showing payment of all the aforesaid items. It is further

DocuSign Envelope ID: C55DAD78-4BFD-489F-87E8-E76CD9FAE43C

provided, however, that in the event of urgent situations (non-emergency) which shall include, but not be limited to, defects and failures in the roof or failures in the sprinkler system, the Tenant shall promptly notify the Landlord, or its duly appointed agent, by email or express mailing, and upon the failure of the Landlord to promptly correct, or to commence to take necessary steps to correct such urgency then upon at least three (3) days written notice from Tenant advising Landlord that if it does not commence to cure the its default within such three (3) day period, Tenant shall have the right to correct the same without waiting for the expiration of the notice periods and be reimbursed as hereinabove provided. In the event the Demised Premises shall be rendered completely untenantable by reason of Landlord's failure to perform any obligation described herein, including without limitation Landlord's failure to make repairs, and such failure continues after the required notices for Tenant's rights of self-help as set forth above, thereafter, all Rent and Additional Rent hereunder shall wholly abate ("Full Abatement") until Landlord shall have satisfactorily performed such obligation. In addition, Tenant shall have the right to perform such obligations at the expense of Landlord as hereinabove provided. Notwithstanding anything to the contrary, Full Abatement shall not apply if Tenant is exercising its self-help rights contained herein, unless the Demised Premises is rendered completely untenantable. All rights and remedies of Tenant herein created, or remedies otherwise existing at law or equity are cumulative, and the exercise of one or more rights or remedies shall not preclude or waive the right of the Tenant to exercise any other remedy available to it under this Lease, at law, or in equity. All such rights and remedies may be exercised and enforced concurrently and whenever and as often as Tenant shall deem desirable.

## 20.    CONDEMNATION:

Condemnation shall be defined as "Taking" in this Section 20 and means an appropriation or taking under the power of eminent domain by any public or quasi-public authority or a voluntary sale or conveyance in lieu of condemnation. In the event of a Taking of the whole of the Demised Premises during the Term of this Lease or any extension hereof, this Lease will terminate as of the date possession is delivered to the condemning authority, and Rent shall be pro-rated to the date of such Taking, with Landlord refunding to Tenant any Rent paid in advance. In the event of a Taking of: (a) any portion of the Demised Premises (i.e., any portion of the building), (b) ten percent (10%) or more of the parking area, (c) ten percent (10%) or more of the lineal front footage of the Shopping Center which runs parallel to any adjacent street or the highway thereof, or (d) any area that results in cutting off any direct access from the Shopping Center to any adjacent public street or highway, then, and in any such event, Tenant may elect to terminate this Lease as of the date of the Taking by such authority. Such notice of election to terminate shall be given in writing to Landlord within ninety (90) days after official notice to Tenant of the Taking. In the event that this Lease continues following any partial Taking, the Rent for the balance of the Term of this Lease shall be abated and adjusted in an equitable manner and Landlord shall promptly rebuild and restore, at its

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

cost, the area not so taken to a single architectural unit functionally equivalent to the Premises as the same were delivered to Tenant on the delivery date. Rent shall equitably abate during the period of any such rebuilding or restoration. In the event of any Taking, whether or not the Lease is terminated, Tenant reserves the right to prosecute a claim for an award based on: (i) Tenant's fixtures, furniture and equipment; (ii) relocation expenses; and (iii) goodwill; provided, in no event shall such award reduce the Landlord's award.

21.   **MUTUAL WAIVER OF SUBROGATION:**

Notwithstanding anything to the contrary contained in this Lease: (i) Landlord shall not be liable for any damage to fixtures, merchandise or property of Tenant and Tenant hereby releases Landlord from the same and Tenant waives any and all rights of recovery against Landlord relating to property damage whether or not such loss or damage is insured; and (ii) Tenant shall not be liable for any damage to the Demised Premises, building of which it is a part or other improvements in the Shopping Center and Landlord hereby releases Tenant from the same and Landlord waives any and all rights of recovery against Tenant relating to property damage whether or not such loss or damage is insured. Landlord and Tenant agree promptly to provide notice, if necessary, to their respective, appropriate, insurers of the terms of the aforementioned mutual waivers; and, if necessary, to obtain appropriate insurance policy endorsements to prevent the invalidation of the insurance coverages by reason of these waivers, if required by the respective insurers.

Landlord and Tenant each shall indemnify, defend and hold harmless the other against any loss or expense resulting from failure to obtain such insurance subrogation waivers.

The provisions of this Section 21 will survive termination of this Lease.

22.   **ASSIGNMENT AND SUBLETTING:**

A.     Landlord's Recapture Rights: If Tenant seeks to assign this Lease or sublet the Demised Premises, Tenant shall send notice thereof to Landlord and Landlord shall have the right to elect to recapture the Demised Premises ("Landlord's Recapture Right"). Upon notice from Tenant to Landlord of Landlord's Recapture Right, ("Tenant's Request"), Landlord shall have the option, which shall be exercisable by notice given to Tenant within thirty (30) days after receipt of Tenant's Request, to cancel this Lease. If Landlord shall elect to cancel this Lease, the Lease shall terminate 90 days from the date on which Tenant receives written notice of Landlord's termination election, and this Lease shall so terminate without penalty or Default on the part of either Party, and Tenant and Landlord shall be released of all obligations stated in this Lease except for such obligations which would naturally survive the termination of this Lease.

B.     Continuing Obligation: No assignment or subletting by Tenant shall relieve Tenant of any obligation to be performed by Tenant under this Lease, whether occurring

46

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

before or after such, assignment or subletting. If at the time of a default beyond any applicable notice and cure periods under this Lease, all or a part of the Demised Premises shall be assigned or sublet, Landlord, may seek remedies as set forth in Section 19 herein. Any collection directly by Landlord from the assignee or sublessee shall not be construed as a novation or a release of Tenant hereunder. The acceptance by Landlord of Rent or Additional Rent from any other person shall not be deemed to be a waiver by Landlord of any provision of this Lease.

C.    Related Entities: Notwithstanding anything contained in this Lease to the contrary, Tenant may assign this Lease or sublet the Demised Premises without Landlord's consent, and without the payment of a review fee, but with reasonable written notice, and without Landlord's right to exercise Landlord's Recapture Right and terminate this Lease so long as: (i) the use by subtenant or assignee is a Permitted Use and: (a) does not violate any prohibited use contained herein; or (b) is not for a use that is an exclusive use in another executed lease in the Shopping Center at the time subtenant or assignee opens for business in the Demised Premises; (ii) the sublease or assignment shall be subject and subordinate to this Lease, all the terms and provisions set forth herein, and subtenant or assignee shall comply with all the terms and provisions of this Lease; and (iii) such assignment or subletting is to a parent, wholly owned subsidiary, succeeding entity, or other wholly owned affiliate of Tenant, or is in connection with a merger or consolidation of the same or, is in connection with the sale of all or substantially all of the assets, stock, or an operating division of Tenant, which operating division shall have at least five (5) other existing locations; (I) provided that in case of any such assignment or sublet referred to above, such assignee or sublessee shall assume all of Tenant's obligations hereunder in writing; and (II) Tenant shall not be relieved of its obligations hereunder. The parties agree that the transfer, assignment or hypothecation of any stock or interest of Tenant shall not be deemed an assignment or transfer of this Lease or Tenant's interest in and to the Demised Premises within the meaning and provisions of this Section so long as: (A) the common stock of either Tenant or Tenant's parent is traded in the over-the-counter market or is listed on a national stock exchange; or (B) such transfer is otherwise a permitted transfer without Landlord's consent as provided for above.

E.    Subordination: Each sublease or assignment shall be subject and subordinate to the rights of Landlord under this Lease and to any renewal, amendment or modification thereof, to the rights of any mortgage to which this Lease is, or shall hereafter be, subject or subordinate and to all renewals, modifications. consolidations and extensions thereof.

F.    If Landlord does not elect to recapture the Demised Premises as set forth in Section 22.A, Tenant shall have the right at any time to sublet the Demised Premises or any part thereof or to assign this Lease without Landlord's prior written consent; provided, that no such subletting or assignment shall relieve Tenant of any of its obligations hereunder. Each sublease or assignment shall be subject and subordinate to the rights of Landlord under this Lease and to any renewal, amendment or modification thereof, to the rights of any first mortgage to which this Lease is subject or subordinate

47

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E6-E76CD9FAE43C

and to all renewals, modifications, consolidations and extensions thereof. The provisions for such subordination shall be self-operative so that no further instrument of subordination need be required by a mortgagee.

### 23.    SURRENDER AND HOLDOVER:

When the tenancy herein created terminates, Tenant agrees to surrender the Demised Premises to Landlord in broom clean, as-is condition. Tenant may remove all of its trade fixtures from the Demised Premises. Lighting fixtures and HVAC equipment are the property of Landlord and may not be removed.

If Tenant retains possession of the Demised Premises or any part thereof after the expiration or earlier termination of the Original Term or any Option Terms, as the case may be, without prior written approval of Landlord, such holding over shall constitute an extension of this Lease on a month to month basis. Upon receipt of a notice to vacate received by Tenant from Landlord ("Notice to Vacate"), Tenant shall have ninety (90) days in which to return possession of the Demised Premises back to Landlord. Should Tenant continue to holdover past the ninety (90) day period, then Tenant shall pay Landlord Fixed Rent at two hundred (200%) percent of the rate which was payable for the last month prior to the expiration or earlier termination of the Term, together with any Additional Rent as provided herein, for the time Tenant thus remains in possession.

### 24.    NOTICES:

Whenever any demand, request, approval, consent or notice ("notice") shall or may be given by one party to the other, notice shall be addressed to the parties at their respective addresses as specified in the opening paragraph of this Lease and delivered by: (i) a nationally recognized overnight express courier; or (ii) registered or certified mail return receipt requested; or (iii) via facsimile, provided a copy of said notice is sent in accordance with (i) or (ii) within two (2) business days following facsimile transmission. The date of actual receipt shall be deemed the date of service of notice. In the event an addressee refuses to accept delivery, however, then notice shall be deemed to have been served on the date of said refusal of delivery. Either party may, at any time, change its notice address by giving the other party notice, in accordance with the above, stating the change and setting forth the new address. To be effective, a copy of any notice sent to Landlord shall be simultaneously sent, by the same method, to Landlord's General Counsel, Tal Mor, c/o Auburndale Properties, 50 Tice Boulevard, Suite 320, Woodcliff Lake, New Jersey 07677.

### 25.    LEGALITY:

Should any one or more of the clauses of this Lease be declared void or in violation of the law, this Lease shall remain in effect, exclusive of such clause or clauses, to the fullest extent of the law. The terms of this Lease shall be interpreted under the substantive laws

48

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

of the State where the Demised Premises is located, without regard to choice of law rules of that state.

Landlord represents it is a limited partnership duly organized, validly existing and in good standing under the laws of Delaware. Tenant represents it is a corporation duly organized, validly existing and in good standing under the laws of Ohio. Landlord and Tenant each represent and warrant to the other that the individual executing this Lease on their behalf are each duly authorized to so execute and deliver this Lease.

## 26.   BINDING OBLIGATIONS:

This Lease and all rights and duties hereunder shall inure to the benefit of and shall be binding upon Landlord and Tenant and their respective personal representatives, administrators, executors, heirs, successors and assigns.

## 27.   NO RECORDATION:

If requested by the Tenant, Landlord will execute a recordable memorandum of lease; provided Tenant shall execute a discharge of memorandum of lease, in recordable form, which Landlord's attorney shall hold in escrow until the expiration or other termination of the Lease. Tenant may record such memorandum at its expense. Tenant shall provide Landlord with a copy of such recorded memorandum of lease.

Neither party shall record this Lease.

## 28.   REAL ESTATE BROKER'S COMMISSION:

Tenant and Landlord covenant and represent to each other that no parties are entitled to be paid a fee or commission in connection with the transaction contemplated by this Lease other than CBRE, Inc. (the "Broker"). The Broker shall be paid by Landlord pursuant to a separate agreement. If, other than Broker, any individual or entity shall assert a claim to a finder's fee or commission as a broker or a finder, then the party who is alleged to have retained such individual or entity shall defend, indemnify and hold harmless the other party from and against any such claim and all costs, expenses, liabilities and damages incurred in connection with such claim or any action or proceeding brought thereon.

## 29.   NO WAIVER, LACHES OR ACCORD AND SATISFACTION:

The waiver of any covenant or condition or the acquiesced breach thereof shall not be taken to constitute a waiver of any subsequent breach of such covenant or condition nor to justify or authorize the non-observance of the same or of any other covenant or condition hereof. No payment by Tenant or receipt by Landlord of a lesser amount than the Rent herein stipulated shall be deemed to be other than on account of the earliest stipulated Rent nor shall any endorsement or statement on any check or any letter

49

DocuSign Envelope ID: C65DAD78-4BFD-489F-87E8-E78CD9FAE43C

accompanying any check or payment as Rent be deemed an accord and satisfaction or waiver, and Landlord may accept such check or payment without waiver of the default or prejudice to Landlord's right to recover the balance of such Rent or pursue any remedy provided for in this Lease or available at law or in equity.

30. **HAZARDOUS MATERIAL:**

Landlord represents, that upon Tenant's Possession Date the interior of the Demised Premises will not contain any Hazardous Materials. "Hazardous Materials" means any hazardous or toxic substance, material or waste (including, without limitation, asbestos, pcb, mold, fungus, bacteria, etc.) which, now or in the future is determined by any state, federal or local governmental authority to be capable of posing a risk of injury to health, safety, or property and/or the use and/or disposal of which is regulated by any governmental authority. Upon discovery of any Hazardous Material in, on, under or around the Demised Premises at any time during the Original Term of this Lease or any Options Term or extensions thereof, which Hazardous Material is determined to have been in existence in, on, under or around the Demised Premises prior to the Tenant Possession Date, or is determined to have been placed thereon by Landlord, Landlord's agents, contractors, or employees or a tenant or prior occupant of Landlord's, Landlord shall promptly, at Landlord's sole cost and expense, remove and dispose of such Hazardous Material in compliance with all EPA, governmental Laws and regulations, and Landlord shall indemnify, defend and hold harmless Tenant with respect to all costs, demands, claims, causes of action, losses, liabilities, judgments, damages and expenses (including without limitation attorney fees and court costs) if the existence of the Hazardous Materials in the Demised Premises was caused by Landlord or any of Landlord's prior tenants, agents or contractors.

Throughout the Original Term of this Lease or any Option Terms or extensions, Tenant shall not permit the presence, use, generation, release, discharge, storage, disposal, or transportation of any Hazardous Materials on, under, in, above, to, or from the Demised Premises other than minimum amounts of cleaning supplies used in the ordinary course of business. Tenant shall not engage in any activity in, on or about the Demised Premises which constitutes a Reportable Use (as hereinafter defined) of Hazardous Substances without the express prior written consent of Landlord and compliance in a timely manner (at Tenant's sole cost and expense) with all applicable Law. "Reportable Use" shall mean (a) the installation or use of any above or below ground storage tank, (b) the generation, possession, storage, use, transportation, or disposal of a Hazardous Substance that requires a permit from, or with respect to which a report, notice, registration or business plan is required to be filed with, any governmental authority. Reportable Use shall also include Tenant's being responsible for the presence in, on or about the Demised Premises of a Hazardous Substance with respect to which any applicable Law requires that a notice be given to persons entering or occupying the Demised Premises or neighboring properties. Notwithstanding the foregoing, Tenant may, without Landlord's prior written consent, but in compliance with all applicable Law, use any ordinary and customary materials reasonably required to be used by Tenant in the normal course of Tenant's

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

business permitted on the Demised Premises. so long as such use is not a Reportable Use and does not expose the Demised Premises or neighboring properties to any meaningful risk of contamination or damage or expose Landlord to any liability therefor.

Tenant shall take the commercially reasonable actions and precautions in the exercise of its obligations under the Lease to prevent mold from accumulating in the Demised Premises or migrating from the Demised Premises to any part of the building in which the Demised Premises is located, or any adjacent building whether or not owned by Landlord. Landlord shall take commercially reasonable actions and precautions in the exercise of its obligations under this Lease to prevent mold from accumulating in the Demised Premises.   Both Tenant and Landlord will be cognizant of all water leaks within the Demised Premises (such as plumbing leaks, roof leaks, foundations leaks or any other source of water that penetrates into the Demised Premises) and Tenant will report the same to Landlord reasonably promptly.   Tenant shall, at its sole cost and expense remove mold from the Demised Premises that arises out of Tenant's intentional acts or negligence of its obligations hereunder specifically its obligation to be cognizant of water leaks or to properly heat or cool the Demised Premises but in no event will Tenant be responsible for continued roof leaks of which Landlord has been given notice. Landlord shall, at its sole cost and expense, remove the mold from the Demised Premises that arises out of its intentional act or the negligence of its obligations hereunder or its actions or inaction, specifically its obligation to be cognizant of water leaks or to properly maintain the roof. If Tenant becomes aware of any mold growth, Tenant shall reasonably promptly notify Landlord so that Landlord can have the growth examined and thereafter Tenant shall properly and promptly remedy any such condition. Should Tenant fail to so notify Landlord as herein required, or otherwise fail, after notice and beyond any applicable cure period, to remove mold from the Demised Premises as aforesaid, then Landlord shall have the right (but not the obligation) to do so on Tenant's behalf and in Tenant's name and Tenant will be responsible, as Additional Rent, for the reasonable cost of removal and for any and all additional costs and other damages that may result from any moisture and such growth of mold that may occur as a result thereof. Tenant shall install proper ventilation in accordance with recommendations from Tenant's mechanical engineer provided in Tenant's Plans and Specifications set forth in Exhibit A-1.

If Tenant knows, or has reasonable cause to believe, that a Hazardous Substance, or a condition involving or resulting from same, has come to be located in, on, under or about the Demised Premises, Tenant shall give written notice of such fact to Landlord.  Tenant shall also give Landlord a copy of any statement, report, notice, registration, application, permit, business plan, license, claim, action or proceeding given to, or received from, any governmental authority or private party, or persons entering or occupying the Demised Premises, concerning the presence, spill, release, discharge of, or exposure to, any Hazardous Substance or contamination in, on or about the Demised Premises, including but not limited to all such documents as may be involved in any Reportable Uses involving the Demised Premises.

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

Tenant shall indemnify Landlord, except for the negligence or reckless acts of Landlord, Landlord's agents, contractors, or employees, from any release of Hazardous Materials from the Demised Premises caused by Tenant while in possession, or elsewhere if caused by Tenant or persons acting under Tenant.

The within covenants shall survive the expiration or earlier termination of the Lease Term or any extensions thereof. Furthermore, no termination, cancellation or release agreement entered into by Landlord and Tenant shall release Landlord or Tenant from their respective obligations under this Lease with respect to Hazardous Substances or storage tanks.

Indemnification.  Tenant shall indemnify, protect, defend and hold Landlord, its agents, employees, lenders and ground Landlord, if any, and the Demised Premises, harmless from and against any and all damages, liabilities, judgments, costs, claims, liens, expenses, penalties, permits and actual attorneys' and consultants' fees but only to the extent arising out of or involving any Hazardous Substance or storage tank brought onto the Demised Premises by or for Tenant or under Tenant's control.  Tenant's obligations under this Section shall include, but not be limited to, the effects of any contamination or injury to person, property or the environment created or suffered by Tenant, and the actual cost of investigation (including consultant's and reasonable attorney's fees and testing), removal, remediation, restoration and/or abatement thereof, or of any contamination therein involved, and shall survive the expiration or earlier termination of this Lease.  No termination, cancellation or release agreement entered into by Landlord and Tenant shall release Tenant from its obligations under this Lease with respect to Hazardous Substances or storage tanks, unless specifically so agreed by Landlord in writing at the time of such agreement.

Landlord shall indemnify, protect, defend and hold Tenant, its agents, employees and contractors harmless from and against any and all loss of rents and/or damages, liabilities, judgments, costs, claims, liens, expenses, penalties, permits and attorneys' and consultants' fees arising out of or involving any Hazardous Substance or storage tank brought onto the Demised Premises or Shopping Center by or for Landlord or under Landlord's control.  Landlord's obligations under this Section shall include, but not be limited to, the effects of any contamination or injury to person, property or the environment created or caused by Landlord, and the actual cost of investigation (including consultant's and reasonable attorney's fees and testing), removal, remediation, restoration and/or abatement thereof, or of any contamination therein involved, and shall survive the expiration or earlier termination of this Lease.  No termination, cancellation or release agreement entered into by Landlord and Tenant shall release Landlord or Tenant from their respective obligations under this Lease with respect to Hazardous Substances or storage tanks, unless specifically so agreed by Landlord and Tenant in writing at the time of such agreement.

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

31.    **TITLES AND ENTIRE AGREEMENT:**

All marginal titles are for reference and convenience only and do not form a part of this Lease. This Lease and Exhibits, and Rider, if any, attached hereto and forming a part hereof, set forth all the covenants, promises, agreements, conditions, and understandings between Landlord and Tenant concerning the Demised Premises. No subsequent alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by them.

32.    **WAIVER OF CLAIMS:**

Notwithstanding anything to the contrary contained herein, in the event there is: (i) a year-end adjustment; (ii) an adjustment resulting from an error in the calculation of any Rent payable by Tenant under the Lease; or (iii) any other sum payable to Landlord pursuant to the terms of this Lease, including without limitation, Tenant's pro rata share of insurance charges, Real Estate Taxes or any charges to Tenant for electrical and heating and air conditioning service, which results in an amount owed by Tenant, Landlord shall notify Tenant of any amount owed within twelve (12) months after the expiration of the Lease Year in which such payments or adjustments are applicable. If Landlord does not notify Tenant of such amount owed within said twelve (12) month period, Landlord's claim to such amount owed shall be deemed waived and discharged.

33.    **RADON:**

Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in building in Florida. Additionally, information regarding radon and radon testing may be obtained from your county public health unit. If Radon is found in levels that exceed applicable Law, Landlord shall take reasonable measures to cause such Radon levels to comply with law.

34.    **INTENTIONALLY DELETED**

35.    **NO PRESUMPTION AGAINST DRAFTER:**

Landlord and Tenant understand, agree and acknowledge that: (i) this Lease has been freely negotiated by both parties; and (ii) that, in any controversy, dispute, or contest over the meaning, interpretation, validity, or enforceability of this Lease or any of its terms or conditions there shall be no inference, presumption, or conclusion drawn whatsoever against either party by virtue of that party having drafted this Lease or any portion thereof.

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

36.  **SUBMISSION OF LEASE:**

The submission by Tenant to Landlord of this Lease shall have no binding force or effect, shall not constitute an option for the leasing of the Demised Premises, nor confer any rights or impose any obligations upon either party until the execution thereof by Landlord and Tenant and the delivery of a fully executed original counterpart thereof to Tenant.

If a party returns this Lease by facsimile machine or email, the signing party intends the copy of this authorized signature printed by the receiving facsimile machine or email to be its original signature.

The signatory of this Lease represents and warrants that he/she has full corporate authority to execute this Lease and bind Tenant to the obligations set forth herein. Based upon this representation and warranty, Landlord agrees that an authorized executive of Tenant's organization will execute this Agreement.

37.  **INTERLINEATION:**

Whenever in this Lease any printed portion has been stricken, and initialed by both parties hereto, whether or not any relative provision has been added, this Lease shall be construed as if the material so stricken was never included herein and no inference shall be drawn from the material so stricken which would be inconsistent in any way with the construction or interpretation which would be appropriate if such material were never contained herein.

38.  **TIME OF THE ESSENCE:**

Time is of the essence with respect to the obligations to be performed under this Lease. Notwithstanding anything herein to the contrary, whenever under the terms and provisions of this Lease the time for performance falls upon a Saturday, Sunday or legal holiday, such time for performance shall be extended to the next business day.

39.  **TENANT'S AUDIT RIGHTS:**

If Tenant wishes to challenge the accuracy or validity of Real Estate Taxes or Insurance Costs, or any other sums or Additional Rent payable by Tenant to Landlord herein that are not payable on a "fixed fee basis", or if Tenant is not satisfied with Landlord's written statement(s) with respect to Real Estate Taxes, Insurance Costs or any other Rent or Additional Rent charges payable pursuant to the terms of this Lease that are not payable on a "fixed fee basis", or wishes to challenge the accuracy or validity of any items therein, it shall give Landlord notice of its dissatisfaction within ninety (90) days of receipt of the statement setting forth the amounts due, and Tenant shall be entitled to an audit of Landlord's books and records, at the place where Landlord's books and records are located, in accordance with generally accepted accounting principles to be made by Tenant's representatives. Tenant shall not employ the services of an auditor or company

54

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

whose fees are on a contingency basis or otherwise based on the amount of "savings" it obtains for its client. If such audit reveals any overpayment by Tenant, the amount of such overpayment shall be promptly refunded to Tenant. If such audit shows that any statement rendered by Landlord is overstated by more than five percent (5%), Landlord shall pay to Tenant, in addition to any overpayment, the reasonable costs of such audit. Any overpayments not refunded to Tenant in full prior to the end of the then current Original Term or Option Term, as the case may be, shall be refunded to Tenant in cash prior to the end of that Original Term or Option Term, regardless of whether Tenant remains in possession of the Demised Premises thereafter. If Landlord refuses to allow said audit, until such time as Landlord allows such audit, Tenant shall be obligated to pay Landlord only Fifty Percent (50%) of such Real Estate Taxes, Insurance Costs or Additional Rent charges payable pursuant to the terms of this Lease that are not payable on a "fixed fee basis", as Tenant paid Landlord for the immediately preceding Lease Year. If Tenant does not notify Landlord of such amount owed within ninety (90) days after the conclusion of the audit period set forth in this Lease, Tenant's right to audit with respect to such audit period shall be deemed waived and discharged. Notwithstanding anything contained in this Lease to the contrary, Tenant shall not have the right to audit Common Area Charges.

## 40.   ATTORNEYS FEES:

In the event either Landlord or Tenant is required to enforce the provisions of this Lease, then the prevailing party shall be entitled to court costs and reasonable attorney's fees from the non-prevailing party. This provision applies to court costs and attorney's fees incurred in any trial and/or appellate courts, and which costs and fees shall be paid upon demand therefor.

## 41.   WAIVER OF JURY TRIAL:

The parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this Lease.

## 42.   EXCULPATION:

Tenant agrees, and this Lease is made upon the express condition, that Landlord shall not be liable, responsible or in any way accountable to Tenant, Tenant's agents, employees, servants, or to any person whomever, for any loss, theft or destruction of or damage (including but not limited to any damage caused by rain, storm or other water damage) to any goods, wares, merchandise, fixtures or other property stored, kept, maintained or displayed in or about the Demised Premises or Common Areas.

Notwithstanding anything to the contrary in this Lease, any judgment obtained by Tenant against Landlord shall be satisfied only out of Landlord's interest in the Shopping Center and the rents receivable by Landlord therefrom. Neither Landlord nor any of its general

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

or limited partners, officers, directors, shareholders, beneficiaries or employees shall have any personal liability for any matter in connection with this Lease or its obligations as Landlord of the Demised Premises, except as provided above. Tenant shall not institute, seek or enforce any personal or deficiency judgment against Landlord or any of its general or limited partners, officers, directors, shareholders, beneficiaries or employees, and none of their property, except the Shopping Center, shall be available to satisfy any judgment hereunder.

In the event of any sale or transfer of the Demised Premises and/or Shopping Center, the seller, transferor or assignor shall be and hereby is entirely freed from and after the date of the transfer and relieved of all agreements, covenants and obligations of Landlord thereafter to be performed; provided, the purchaser, transferee or assignee on any such sale, transfer or assignment has assumed and agreed to carry out any and all agreements, covenants and obligations of Landlord hereunder.

## 43. OFFICE OF FOREIGN ASSET CONTROL AND ANTI-MONEY LAUNDERING:

Landlord and Tenant each represents and warrants to the other that: (i) they are not acting, directly or indirectly, for or on behalf of any person, group, entity or nation listed by the United States Treasury Department as a Specially Designated National and Blocked Person ("SDN List"), or for or on behalf of any person, group, entity or nation designated in Presidential Executive Order 13224 as a person who commits, threatens to commit, or supports terrorism; and (ii) they are not engaged in this transaction directly or indirectly on behalf of, or facilitating this transaction directly or indirectly on behalf of, any such person, group, entity or nation.

Landlord and Tenant each represents and warrants to the other that they are not a person and/or entity with whom United States Persons are restricted from doing business under the International Emergency Economic Powers Act, 50 U.S.C. §1701 et seq.; the Trading with the Enemy Act, 50 U.S.C. App. §5; any executive orders promulgated thereunder; any implementing regulations promulgated thereunder by the U.S. Department of Treasury Office of Foreign Assets Control ("OFAC") (including those persons and/or entities named on the SDN List); or any other applicable Law of the United States.

Landlord and Tenant each represents and warrants to the other that no person and/or entity who is named on the SDN List has any direct interest in Landlord or Tenant with the result that the direct investment in Landlord or Tenant is prohibited by any applicable Law of the United States. Landlord and Tenant each represents and warrants to the other that none of the funds of Landlord and Tenant have been derived from any unlawful activity with the result that the direct investment in Landlord or Tenant is prohibited by applicable Law of the United States.

Landlord and Tenant each represents and warrants to the other that they are not in violation of the U.S. Federal Bank Secrecy Act, as amended by Title III (the "International Money Laundering Abatement and Financial Anti-Terrorism Act") of the

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CDBFAE43C

Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (the "Patriot Act"), Public Law 107-56; its implementing regulations promulgated by the U.S. Department of Treasury Financial Crimes Enforcement Network ("FinCEN") (31 CFR Part 103); or any other anti-money laundering law of the United States.

## 44.    EXPRESS WAIVER:

Notwithstanding anything contained in this Lease to the contrary, Landlord and Tenant acknowledge and agree that any liability arising under this Lease or any matter relating to or arising out of the occupancy or use of the Demised Premises and/or other areas of the Shopping Center shall be limited to actual direct, but not consequential punitive, special or incidental, damages therefor. The foregoing provisions are not intended to relieve any parties' performance under this Lease, but only to limit the damages and liability in case of recovery of a judgment.

## 45.    ACCORD AND SATISFACTION:

No payment by Tenant or receipt by Landlord of a lesser amount than any installment or payment of Rent due shall be deemed to be other than on account of the amount due, and no endorsement or statement on any check or payment of Rent shall be deemed an accord and satisfaction. Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such installment or payment of Rent or pursue any other remedies available to Landlord.

## 46.    LATE CHARGE/INTEREST:

If any payment of Rent or other payment is not paid within the (10)) days after the due date, Tenant shall pay to Landlord, a late charge in an amount equal to five percent (5%) of the unpaid portion of the payment due; provided, however such late charge shall not be applicable to the first 1 (1st) two (2) times a late payment in any calendar year should be instituted. This provision shall not be construed to relieve Tenant from any default hereunder arising through the failure on the part of Tenant to make any payment at the time and in the manner specified. In addition, any sum owed to Landlord under the terms and provisions of this Lease that is not paid from and after the sixth (6th) day after the due date shall bear interest at twelve percent (12%) per annum or the highest lawful rate, whichever is lower, from the date the same becomes due and payable by the terms and provisions of this Lease until paid, but interest shall not accrue on the amount of any late charges assessed.

## 47.    COUNTERPARTS.

This Lease may be signed in multiple counterparts which, when signed by all parties, shall constitute a binding agreement. Signatures transmitted by email in portable document format and signatures electronically signed in accordance with the Uniform Electronic Transaction Act (UETA) or the substantive equivalent of

57

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

the UETA, as adopted in the State of Florida and with the United States ESIGN Act shall have the same effect as the delivery of original signatures and shall be binding upon and enforceable against the parties hereto as if such transmittal were an original executed counterpart.

[Signatures Appear on Immediately Subsequent Page.]

58

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

**IN TESTIMONY WHEREOF,** the Landlord and Tenant have caused this Lease to be signed as of the respective acknowledgment dates set forth below, and the last date shall be the Effective Date:

Signed and acknowledged in the presence of:

Witnesses as to Landlord:

LANDLORD:    **SHADRALL ORLANDO, LP, a Delaware limited partnership**

By: Shadrall 2012 Orlando, LLC, its General Partner

MAUREEN MARRONE

Jacqueline LaGamba

By: _____
           Benjamin J. Dempsey

Title: President

Witnesses as to Tenant:

TENANT:    **BIG LOTS STORES, INC., an Ohio corporation**

By: Jonathan E. Ramsden
        Jonathan E. Ramsden

Title:    Executive Vice President, Chief Financial and Administrative Officer

59

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

STATE OF New Jersey

COUNTY OF Bergen

Before me, a Notary Public, in and for said State and County, personally appeared the above named Landlord, Shadmall Orland LP by, Benyamin J. Dempsey its President who acknowledged that he/she did sign the foregoing instrument and that the same is the free act and deed of said corporation, and the free act and deed of him/her personally and as said officer.

IN WITNESS WHEREOF, I have hereunto set my hand and the official seal, at Woodcliff Lake, New Jersey this 5th day of February , ~~2020.~~ 2021

_Amanda Cannone_
Notary Public

STATE OF OHIO

COUNTY OF FRANKLIN

AMANDA R CANNONE
Commission #2443463
Notary Public, State of New Jersey
My Commission Expires
February 26, 2024

Before me, a Notary Public, in and for said State and County, personally appeared the above Tenant, **Big Lots Stores, Inc.,** by Jonathan E. Ramsden, its Executive Vice President, Chief Financial and Administrative Officer, who acknowledged that he did sign the foregoing instrument and that the same is the free act and deed of said corporation, and the free act and deed of him personally and as said officer.

IN WITNESS WHEREOF, I have hereunto set my hand and the official seal, at Columbus, Ohio, this 31st day of January , ~~2020.~~ 2021

Janelle N. Lopez
Attorney At Law
Notary Public, State of Ohio
My commission has no expiration date
Sec 147.03 R.C

Notary Public

DocuSign Envelope ID: C55DAD78-4BFD-489F-87E8-E76CD9FAE43C

IN TESTIMONY WHEREOF, the Landlord and Tenant have caused this Lease to be signed as of the respective acknowledgment dates set forth below, and the last date shall be the Effective Date:

Signed and acknowledged in the presence of:

Witnesses as to Landlord:

LANDLORD:  SHADRALL ORLANDO, LP, a
                      Delaware limited partnership

By: Shadrall 2012 Orlando, LLC, its General
Partner

By: _____

Title: _____

Witnesses as to Tenant:

TENANT:       BIG LOTS STORES, INC., an
                      Ohio corporation

By: _____Jonathan E. Ramsden_____
          Jonathan E. Ramsden

Title:    Executive Vice President,
          Chief Financial and Administrative
          Officer

59

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

# EXHIBIT A

## SITE PLAN OF SHOPPING CENTER



Landlord makes no warranty or representation whatsoever regarding existing or prospective tenant(s) at the center. Any trade name(s), tenant mix, character of business used or to be used and conducted, and the size of location of any space occupied or to be occupied by any tenant or prospective tenant at the center is for illustrative purposes only. Any use and designation, site analysis figures, and common area detail drawings shown on this site plan is for convenience only, and may not be relied upon nor be deemed as a representation or warranty that any such use, figure and drawing is accurate. It is expressly understood that this site plan is not an inducement to enter into a lease for space at the center, and any actual or prospective tenant shall conduct and rely on its own due diligence in entering into a lease.

DocuSign Envelope ID: C55DAD78-4BFD-489F-87E8-E76CD9FAE43C



SEMORAN BLVD.

BIG LOTS

OUTPARCEL

FLEVEN

18

KMART
SEMORAN

AUBURNDALE
PROPERTIES

REVISIONS

A002

EXISTING
LOADING RAMP

EXISTING
LOADING RAMP

62

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C



DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

## EXHIBIT A-1

### TENANT PLANS AND SPECIFICATIONS



DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

## EXHIBIT B

### LEGAL DESCRIPTION OF SHOPPING CENTER

SITUATED IN THE COUNTY OF ORANGE AND STATE OF FLORIDA BOUNDED AND DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST CORNER OF SECTION 3, TOWNSHIP 23 SOUTH, RANGE 30 EAST, AND RUNNING THENCE SOUTH 01°41'23" EAST, A DISTANCE OF 688.08 FEET; THENCE NORTH 88°18'37" EAST, A DISTANCE OF 100.00 FEET TO THE EAST RIGHT OF WAY LINE OF LAKE BARTON ROAD (ALSO KNOWN AS SEMORAN BOULEVARD AND STATE ROUTE 436); THENCE CONTINUING NORTH 88°18' 37" EAST, A DISTANCE OF 150.00 FEET TO A POINT OF BEGINNING; THENCE CONTINUING NORTH 88°18'37" EAST, A DISTANCE OF 11.25 FEET TO A POINT; THENCE NORTH 21°27'37" EAST, A DISTANCE OF 179.51 FEET TO A POINT IN THE ESTABLISHED SOUTHERLY RIGHT OF WAY OF CURRY FORD ROAD; THENCE SOUTH 68°32'23" EAST ALONG SAID SOUTHERLY RIGHT OF WAY OF CURRY FORD ROAD, A DISTANCE OF 13.47 FEET TO A POINT; THENCE NORTH 21°27'37" EAST, A DISTANCE OF 10.00 FEET TO A POINT IN THE ESTABLISHED SOUTHERLY RIGHT OF WAY OF CURRY FORD ROAD; THENCE SOUTH 68°32'23" EAST ALONG SAID SOUTHERLY RIGHT OF WAY OF CURRY FORD ROAD, A DISTANCE OF 445.02 FEET TO A POINT; THENCE SOUTH 01°41'23" EAST, A DISTANCE OF 684.00 FEET TO A POINT; THENCE SOUTH 88°18'37" WEST, A DISTANCE OF 657.33 FEET TO A POINT IN THE EASTERLY RIGHT OF WAY OF SAID LAKE BARTON ROAD; THENCE NORTH 01°41'23" WEST ALONG SAID EASTERLY RIGHT OF WAY LINE OF LAKE BARTON ROAD, A DISTANCE OF 510.00 FEET TO A POINT; THENCE NORTH 88°18'37" EAST, A DISTANCE OF 150.00 FEET TO A POINT; THENCE NORTH 01°41'23" WEST, A DISTANCE OF 180.00 FEET TO THE POINT OF BEGINNING.

TOGETHER WITH THAT CERTAIN NON-EXCLUSIVE EASEMENT FOR UTILITY PURPOSES AS RESERVED IN THE CONVEYANCE RECORDED IN OFFICIAL RECORDS BOOK 2239, AT PAGE 883, OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA.

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

## EXHIBIT C

## LANDLORD'S WORK

**The following work is to be completed prior to the Tenant Possession Date per Tenant's Plans and is subject to the review and approval from the Big Lots Director of Construction or its Representative.**

## LANDLORD'S WORK IN THE DEMISED PREMISES:

| | |
|---|---|
| **STOREFRONT:** | Landlord is to construct a new store front façade per the attached renderings as shown on Exhibit A-2, which is approved by Tenant. |
| **UTILITIES:** | Landlord to provide separate utilities and separate utility meters for electric and water with service direct from the local distribution company per the following specifications. Tenant to have a minimum electrical service of r 800 amps for 277/480v 3 phase service and include all switch gear, main distribution panels, transformers, circuit panels and breakers. All electrical equipment to be located on the rear wall within the Demised Premises, which location was approved by Tenant. Tenant to install panels within the Demised Premises. |
| **DEMISING WALL:** | Landlord to erect demising wall(s) separating the Demised Premises Wall one is CMU 8" 1 hour rated and wall two is 6-1/4" 20 gauge metal stud 16" OC also 1 hour rated. |
| **PLUMBING, ELECTRICAL, SPRINKLER & FIRE SYSTEMS:** | Landlord is to provide a Sprinkler Certification and ensure that the pressure and flow to the sprinkler riser required by the Fire Marshall for Tenant Use (Class A Plastics with Pallet Racking 12' AFF is Stock Room). If the sprinkler riser is not in Tenant's premises, Landlord to ensure tenant has access to the riser.  The existing sewer lines to be in operating condition. Sprinkler System specification are as follows: (a) flow test: (Static: 60 P.S.I.) – (Residual:  52 P.S.I.) – ( Flow: 1106 G.P.M.); and (b) System Calcs: Ordinary Hazard Group 2 max head spacing 130 sq ft Density .2 G.P.M. per sq ft Design Area: 1500 sq ft. |
| | Tenant shall be responsible to adjust sprinkler head height, and add additional heads, if necessary to meet Tenant's requirements. |
| **REMOVAL OF FIXTURES & EQUIPMENT:** | Landlord to deliver the space in broom clean condition. |
| **HAZARDOUS MATERIALS:** | Landlord shall promptly remove per code requirements hazardous materials found in/on the interior of the Demised Premises.  [All New Construction] |

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

## LANDLORD'S WORK IN THE COMMON AREA:

**EXTERIOR LIGHTING:**   Subject to applicable Law, all Exterior lighting within the Common Area shall be operational and working including pole lights, entrance/exiting lighting, building lights, with a minimum average of two (2) foot-candles of exterior lighting throughout the parking lot. All exterior lighting is to be on a separately metered house panel in the Landlord's name.

**ROOF:**   Landlord to install a new roof by a reputable roofing company with a minimum 10-year warranty.

**RECEIVING AREA:**   Tenant to utilize the existing loading docks. Tenant shall have exclusive use of the dock area.

**PARKING LOT:**   Parking lot shall be in good condition (paved and patched with potholes, severe cracks and uneven areas to be resurfaced and adequate for customer parking per legal requirements). The parking lot serving the Demised Premises shall be re-sealed and re-striped 30 days prior to Tenant opening for business to the public in the Demised Premises to Tenant. Fire lanes, curbs and pole bases shall be freshly painted as well.

**CART CORRAL:**   Tenant shall have the right to install up to four (4) single parking stall cart corrals in the parking lot area in front of the Demised Premises and in reasonable proximity thereto, in the area identified on the Site Plan as "Cart Corral Area".

**SIGNAGE:**   Tenant to have the right to use its color and logo on building signs at the maximum size per code and on pylons. Landlord to construct two new pylons per the Attached Pylon Exhibit D-1 Tenant shall receive a pylon position per the attached pylon Exhibit and the pylon shall be in good condition, illuminated, and ready for tenant to install its panel.

**DRAWINGS:**   Landlord to provide accurate drawings of the existing condition of the demised premised in order for Tenant to begin its drawings.

**GENERAL CONDITIONS:**   The Demised Premises shall be delivered in "As-Is" condition

All above work to be completed before the Tenant Possession Date.

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

## EXHIBIT D

### TENANT BUILDING SIGN SPECIFICATION

### TENANT SIGN SPECIFICATION



If you need additional information that
is not contained in this packet contact:

**Store Planning Department:**
**Michael Neu - 614-278-6868**

2017

68

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C



## HORIZONTAL LOGO
### INDIVIDUAL LED ILLUMINATED CHANNEL LETTER SET

| A | B | C | D | E | Area |
|---|---|---|---|---|---|
| 3'-0" | 17'-5½" | 3'-6½" | 13" | 5½" | 52 SqFt |
| 3'-6" | 20'-4½" | 4'-1½" | 15½" | 6½" | 71 SqFt |
| 4'-0" | 23'-3½" | 4'-8½" | 17½" | 7½" | 92 SqFt |
| 4'-6" | 26'-2½" | 5'-3½" | 19½" | 8½" | 119 SqFt |
| 5'-0" | 29'-1½" | 5'-10½" | 22" | 9½" | 145 SqFt |
| 5'-6" | 32'-½" | 6'-5½" | 2' | 10½" | 177 SqFt |
| 6'-0" | 34'-11" | 7'-½" | 2'-2" | 11" | 207 SqFt |

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C



## STACKED LOGO
### INDIVIDUAL LED ILLUMINATED CHANNEL LETTER SET

| A | B | C | D | E | F | Area |
|---|---|---|---|---|---|---|
| 3'-0" | 2'-4" | 8'-2" | 5'-9½" | 13" | 4½" | 71 SqFt |
| 4'-0" | 3'-1½" | 10'-10½" | 7'-9" | 17½" | 6" | 84 SqFt |
| 4'-6" | 3'-6" | 12'-3" | 8'-8½" | 19½" | 6½" | 107 SqFt |
| 5'-0" | 3'-11" | 13'-7" | 9'-8" | 22" | 7½" | 131 SqFt |
| 5'-6" | 4'-3½" | 14'-11½" | 10'-7½" | 2' | 8" | 159 SqFt |
| 6'-0" | 4'-8" | 16'-4" | 11'-7½" | 2'-2" | 9" | 190 SqFt |

70

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

# SECTION DETAILS





RETURNS: .063 x 5" DEEP
PAINT OUTSIDE BLACK
PAINT INSIDE WHITE

BACKS: .063 ALUMINUM
PAINT OUTSIDE BLACK
PAINT INSIDE WHITE

FACES: 3/16" 7328 WHITE ACRYLITE WRT30 ACRYLIC
ILLUMINATION: SLOAN GREAT WHITE 4 LED MODULES
761260-WL4-465

WIRING AND FIXTURES: UL LISTED/RECOGNIZED
HARDWARE

POWER SUPPLY: PHILLIPS ADVANCE LED DRIVER

MOUNTING HARDWARE: TBD

TRIMCAP: 1" BLACK JEWELITE

FACADE

**1:1 LETTER SECTION DETAIL**
SCALE: 3/4" = 1"

RETURNS: .063 x 5" DEEP
PAINT OUTSIDE BLACK
PAINT INSIDE WHITE

BACKS: .063 ALUMINUM
PAINT OUTSIDE BLACK
PAINT INSIDE WHITE

FACES: 3/16" 2119 ORANGE ACRYLITE 3N020 ACRYLIC
ILLUMINATION: SLOAN V-SERIES GW465 LED MODULE
701265-OLP465

WIRING AND FIXTURES: UL LISTED/RECOGNIZED
HARDWARE

POWER SUPPLY: PHILLIP ADVANCE LED DRIVER

MOUNTING HARDWARE: TBD
TRIMCAP: 1" BLACK JEWELITE

BAHS AS ABOVE

FACADE

**EXCLAMATION POINT SECTION DETAIL**
SCALE: 3/4" = 1"

71

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

# PYLON PANELS

## RECTANGULAR PANELS

PREFERRED:



2ND OPTION:



## SQUARE PANELS

PREFERRED:

2ND OPTION:




## COLORS:

 **BACKGROUND OR LETTERS (DEPENDING ON OPTION) 100% BLACK**

 **EXCLAMATION POINT MATCH PMS 021c ORANGE (3M COLOR 44)**

72

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

## EXHIBIT D - 1

### PROPOSED PYLONS



DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

## EXHIBIT E
## Completion of Landlord's Work Letter

**Date:** _____

**To:**    Big Lots Stores, Inc. (insert Tenant)
via facsimile: (614) 278-6546

**From:** Shadrall Orlando, LP (insert Landlord, name of contact person and **LANDLORD'S FEDERAL TAXPAYER IDENTIFICATION NUMBER -- RENT WILL NOT BE PAID WITHOUT SUCH INFORMATION**)

**RE:** Kmart Azalea Park (insert Shopping Center, City/State of Demised Premises)

You are hereby notified that all work required of Landlord pursuant to the Lease dated _____ has been completed, including all construction, surveys, inspections and repairs. Landlord shall deliver to Tenant with this notice, the required surveys and initial completion of each item below prior to possession being accepted by Tenant.

_____ Pest Survey certifying the premises.

_____ Sprinkler Certification.

_____ Completion of Exhibit C

_____ Utility Information: Meter numbers for electric, gas and water.

Accordingly, delivery of the Demised Premises with Landlord's Work completed is hereby made to Tenant.

You may pick up the keys at
_____.

If you have any questions, please feel free to contact me at
_____

Thank You.

**LANDLORD:**

Shadrall Orlando, LP
a Delaware limited partnership
 **By: Shadrall 2012 Orlando, LLC,**
**its General Partner**


By: _____

74

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

Title: _____

**TENANT:**

**BIG LOTS STORES, INC., an Ohio
corporation**

By: _____
Title: _____

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E78CD9FAE43C

## EXHIBIT F

### EXCLUSIVE USE PROVISIONS

Landlord agrees that during the term of this Lease, Landlord will not hereafter enter into a new lease in the Shopping Center with a tenant whose principal permitted use is as a health/physical fitness club, nor shall Landlord amend, modify, revise or renew leases with existing tenants in the Shopping Center to permit such existing tenants to use its/their premises for the operation of a health/physical fitness club (the "Exclusive Use").

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

## EXHIBIT G

## REMEASUREMENT RIDER

This Rider dated _____ ____, 20___ is attached to and made a part of the Lease dated
_____ (the "Lease") by and between _____
("Landlord"), and BIG LOTS STORES, INC., an Ohio corporation, ("Tenant").

Notwithstanding anything in the Lease to the contrary, the following provisions shall apply:

1.      Demised Premises: (Section 1.D.) = _____.

2.      A.      Fixed Minimum Rent – Original Term (Section 5.A.):
                _____ annually; _____ per month.

3.      A.      Fixed Minimum Rent – First Option (Section 5.A.):
                _____ annually; _____ per month.

4.      A.      Fixed Minimum Rent – Second Option (Section 5.A.):
                _____ annually; _____ per month.

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

## EXHIBIT H

### TENANT'S CONTRACTOR INSURANCE

Tenant shall cause each of Tenant's contractors shall obtain and maintain insurance in the minimum amounts:

Workers Compensation and Employers Liability Coverage
A.Statutory Workers Compensation coverage;
B.Employers Liability –Limits as required by statutory requirements but in no event less than $500,000 each accident, $500,000 for bodily injury by accident, and $500,000 each employee for injury by disease;

General Liability (CGL) Coverage
A.Limits of Liability not less than:
$1,000,000 combined single limit for bodily injury, personal injury or property damage per occurrence; coverage must apply on a per project or per location basis
$2,000,000 aggregate; and
$2,000,000 Products & Completed Operations

Other General Liability Policy requirements: ISO Occurrence form CG 00 01 1093 or equivalent and shall cover liability arising from premises, operations, independent contractors, products and completed operations, and personal and advertising injury.  Policy language or endorsements MUST be provided with Certificate of Insurance evidencing:

1.Blanket Contractual Liability, including coverage for all liability assumed under this Contract, ISO Additional Insured Endorsement (i) CG 2026 (11 85) or (ii) CG 2033 (10 01) and CG 2037 (10 01) must be attached to the certificate of insurance.  Modifications to the standard endorsements listed above will not be acceptable, if they serve to reduce coverage.

2.Certificate must recognize all of the additional insureds - as listed in the Exhibit "X" (attached) with the wording "AS ITS INTEREST MAY APPEAR".

3.Insurance shall apply as primary and non-contributory insurance before resort to any other insurance or self-insurance, (including application of any deductible cost) maintained by, or provided to, any of the additional insureds.

4.Waiver of Subrogation shall apply for all additional insureds.

5.The policy must contain a separation of insureds clause and shall not exclude or preclude coverage for claims brought by any additional insureds against a named insured.

6.Contractor shall maintain CGL coverage and maintain Completed Operations coverage for itself and all additional insureds for a minimum of three (3) years after the final completion of

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

the Shopping Center (or until the Applicable Statute of Limitation (as defined hereinbelow) has expired in the jurisdiction where the Shopping Center is being completed).

a.For purposes of this Exhibit, the "Applicable Statute of Limitation" shall refer to the longest of the permitted periods of time within which to bring an action for: (i) personal injury; (ii) wrongful death; (iii) property damage; and/or (iv) any other damage that may arise out of the Contractor's performance of the Work; as set forth by statute in the jurisdiction where the Shopping Center is being completed.

7.Pollution Coverage for losses arising out of a hostile fire.

8."XCU" Hazard must be covered.

9.The general liability policy shall contain no exclusions for: (i) injury to employees, (ii) limitations of coverage territory which include the United States of America, or (iii) operations required under the terms of this contract between Landlord or Tenant and Contractor.

Business Automobile Coverage
A.Minimum Limit of Liability $1,000,000 Combined Single Limit Per Accident for bodily injury or property damage;

B.Coverage for "any auto" which includes owned, leased, hired, and non-owned autos;

C.Coverage for additional insureds, including a waiver of subrogation;

D.Insurance shall apply as primary and non-contributory insurance before resort to any other insurance or self-insurance (including application of any deductible cost) maintained by, or provided to, any of the additional insureds; and

Commercial Umbrella
A.Minimum Limit of Liability $2,000,000, except demolition and foundation contractors, steel erectors, crane operators, and other high hazard operations as determined by Landlord or statute, which shall carry a minimum limit of not less than $10,000,000 or as provided by law, whichever is greater.

B.Umbrella must schedule the primary General Liability, Auto Liability and Worker's Compensation Policies;

C.Umbrella Coverage must include as insureds all entities that are additional insureds on the primary GL policy; including a waiver of subrogation;

D.Umbrella Coverage must apply on a per project basis;

E.Coverage for such additional insureds shall apply as primary excess before resort to any other insurance or self-insurance (including application of any deductible cost), maintained by, or provided to, any of the additional insureds; and

79

DocuSign Envelope ID: C55DAD78-4BFD-469F-87E8-E76CD9FAE43C

Property Damage

Contractor shall be responsible for all loss or damage to its tools, equipment, sheds and any other materials or supplies which do not become part of the finished Shopping Center. The Landlord, its representative, and their agents and employees take no responsibility for said tools, equipment, sheds and other materials or supplies. All property insurance for Contractor's materials and equipment described herein shall include a waiver of subrogation in favor of the Landlord and all additional insureds.

Additional Insurance Requirements

A. Cancellation Notice - Contractor shall endeavor to obtain a formal endorsement to their policies providing such required notification of cancellation from their insurance carrier. To the extent the insurance carrier refuses or otherwise fails to provide such notice of cancellation to Landlord, Contractor shall be obligated to provide the thirty (30) day prior written notice in the event of cancellation or material change in any of these policies. If Contractor, for any reason, fails to maintain insurance coverage which is required pursuant to this Agreement, the same shall be deemed a material breach of contract. Landlord, at its sole option, may thereafter at its sole option elect to: (i) immediately terminate this Agreement and obtain damages from Contractor resulting from said breach; or (ii) effect the required insurance coverage for Contractor, the costs of which shall be deducted from any payments due and owing Contractor, or in the event no payments are due and owing to Contractor, Landlord shall charge Contractor for the cost to effect insurance, and Contractor shall promptly reimburse Landlord for all such costs.

B. All Insurance policies under this Agreement shall be provided by carriers licensed and/or authorized to do business in the State in which the Shopping Center is being constructed and carrying minimum A.M. Best ratings of A-VII or better.

C. Except as approved by Landlord in writing, the insurance requirements herein shall also apply to all Contractor's subcontractors, independent contractors, and all other entities performing work on behalf of Contractor in connection with the Shopping Center.

D. Self-funded, policy fronting, contractor pooling arrangements and other non-risk transfer insurance mechanisms are not acceptable to Landlord. If the Contractor has such a program, full disclosure must be made to Landlord prior to any consideration being given.

E. Certificates of Insurance in form and substance acceptable to Landlord evidencing all insurance and including the additional insureds, Completed Operations and Contractual Liability endorsement's must be provided to the Landlord for approval prior to the Contractor's entry onto the site and prior to commencement of any work.