**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br>(Jointly Administered)<br><br>**Hearing Date: Oct. 31, 2024 at 12:00 p.m. (ET)**<br>**Objection Deadline: Oct. 25, 2024, at 5 p.m. (ET)**<br><br>**RE: D.I. 460, 538, 575** |

**LIMITED OBJECTION OF SCHWARTZ TORRANCE COMPANY, LLC
TO PROPOSED ASSUMPTION AND ASSIGNMENT OF LEASE**

Schwartz Torrance Company, LLC ("Landlord") hereby submits this limited objection (the "Limited Objection") to Debtors' *Second Notice of Successful Bidders With Respect to the Auction of Certain of The Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* [D.I. 575] (the "Assumption and Assignment Notice"), as follows:

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

1.    On September 9, 2024 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On September 10, 2024, this Court entered its order authorizing joint administration of these Chapter 11 cases [D.I. 95]. No trustee or examiner has been appointed and Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

---

[1]   The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

4857-4870-3218.1

2. Landlord, as successor-in-interest to VAT Partners II, a California general partnership, as landlord, and debtor PNS Stores, Inc. ("Tenant"), as tenant, are parties to that certain Lease, dated July 26, 1994 (as subsequently amended, the "Torrance Lease") for retail premises commonly known as 955 Sepulveda Boulevard, Torrance, California (the "Leased Premises").  It cannot be seriously disputed that Debtors' Torrance Lease with Landlord is for premises in a shopping center, as that term is defined in section 365(b)(3) of the Bankruptcy Code. *See*, *e.g.*, *In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1087 (3d Cir. 1990); *In re Three A's Holdings, LLC*, 364 B.R. 550, 560 (Bankr. D. Del. 2007).

3. On October 9, 2024, this Court entered its *Second Interim Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [D.I. 460] (the "Lease Sale Procedures Order"),[2] by which the Court approved procedures by which the Debtors were authorized to conduct an auction for the sale and transfer of certain unexpired real property leases.

4. On October 15, 2024, Debtors' counsel sent an e-mail to Landlord, stating that a bid had been received for the Torrance Lease from "Burlington" and attaching copies of the most recent Form 10-Q and Form 10-K of Burlington Stores, Inc. ("Burlington Stores") and an unexecuted draft Assumption and Assignment Agreement between Debtors and Burlington Coat Warehouse Corporation or its "designated affiliates."  The proposed assignee of the Torrance Lease was identified as Burlington Coat Factory of Texas, Inc. ("Burlington Texas").

5. Pursuant to the Lease Sale Procedures Order, on October 17, 2024, Debtors filed their *Supplemental Notice of Lease Sale Auction and List of October Lease Assets* [D.I. 538], identifying certain of the Debtors' Lease Sale Assets, including the Torrance Lease, as receiving

---

[2] Capitalized terms not otherwise defined shall have the same meaning as set forth in the Assumption and Assignment Notice and Lease Sale Procedures Order.

bids.

6. On October 21, 2024, Debtors filed and served their Assumption and Assignment Notice identifying Burlington Texas as the Successful Bidder with respect to the Torrance Lease.

7. While Landlord does not generally object to the proposed assumption and assignment of the Torrance Lease to Burlington Texas, Landlord does object to any assumption and assignment of the Torrance Lease to the extent the proposed assignment fails to meet the requirements for assumption and assignment of an unexpired shopping center lease under section 365 of the Bankruptcy Code.

## II. ARGUMENT

### A. DEBTORS MUST CURE ALL EXISTING DEFAULTS, OR PROVIDE ADEQUATE ASSURANCE OF A PROMPT CURE, AS A CONDITION TO THE ASSUMPTION AND ASSIGNMENT OF THE TORRANCE LEASE

8. Bankruptcy Code section 365(b)(1)(A) provides that unless a lessee-debtor either (a) cures all existing defaults or (b) provides the lessor with adequate assurance that it will promptly cure those defaults, it cannot assume and assign a lease. As one court has held, "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord*, *In re Valley View Shopping Center, L.P.*, 260 B.R. 10, 25 (Bankr. D. Kan. 2001); *In re Mushroom Transportation Co., Inc.*, 78 B.R. 754, 759 (Bankr. E.D. Pa. 1987). Indeed, "the cost of assumption is nothing short of complete mutuality and requires performance in full as if bankruptcy had not intervened." *In re Frontier Properties, Inc.*, 979 F.2d 1358, 1367 (9th Cir. 1992). Bankruptcy Code section 365(b)(1)(A) "clearly and unambiguously" requires the cure of *all defaults* before an unexpired lease of nonresidential real property may be assumed. *In re Building Block Child Care*

*Centers, Inc.* (9th Cir. BAP 1999) 234 B.R. 762, 765; *accord, In re Fifth Taste Concepts Las Olas, LLC*, 325 B.R. 42, 49 (Bankr. S.D. Fla. 2005) ("The purpose of § 365(b)(1)(A) is to preserve the *entirety* of an unexpired lease upon assumption and cure any defaults.") (emphasis in original).

9. Debtors bear the burden of proving the requirements of Bankruptcy Code section 365(b) by a preponderance of the evidence. *See In re PRK Enterprises, Inc.*, 235 B.R. 597, 602 (Bankr. E.D. Tex. 1999).

10. Debtors' Assumption and Assignment Notice acknowledges the obligation to pay unpaid monetary obligations ("Cure"), identifying $53,085 as the amount asserted to be due to satisfy the "cure" requirement for the proposed assignment of the Torrance Lease, as delineated in Exhibit A to the Assumption and Assignment Notice. The correct Cure amount for the Torrance Lease, as reflected in Landlord's books and records and detailed in **Exhibit A** hereto, is $77,118.77.

11. The current Cure amount asserted by Landlord does not, however, include rent and charges that may accrue after October 25, 2024. Bankruptcy Code section 365(b)(1) measures defaults as of the "time of assumption." *See, e.g., In re Rachels Industries, Inc.*, 109 B.R. 797, 811-12 (Bankr. W.D. Tenn. 1990). Debtors remain required to pay accruing post-petition rent and charges on a timely basis, as required by Bankruptcy Code section 365(d)(3) and Landlord reserves its rights and remedies against Debtors with respect to any additional sums.

12. Where, as here, there are defaults under a lease sought to be assumed and assigned, Bankruptcy Code section 365(b)(1) comes into play. The Torrance Lease contains a provision (at Paragraph 26) for the recovery of reasonable attorneys' fees in proceedings for the "enforcement or construction of this Lease."

13. Bankruptcy courts have held that attorneys' fees incurred in the enforcement of obligations, covenants and conditions of a lease are recoverable as part of a landlord's "pecuniary loss" under Bankruptcy Code section 365(b)(1)(B) due upon assumption and assignment of a lease if the underlying lease provides for them. *In re Entertainment, Inc*., 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998). "Although attorneys' fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties." *In the Child World, Inc.,* 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993); *see also Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co.*, 127 S.Ct. 1199, 1203-1206 (2007) (contract providing for attorneys' fee recovery enforceable in bankruptcy unless Bankruptcy Code specifically provides otherwise); *In re Crown Books Corporation*, 269 B.R. 12, 18 (Bankr. D. Del. 2001) (landlord's attorneys' fees incurred in proving post-petition rent had not been recoverable as component of cure under section 365(b)(1)). "[T]here is no logical distinction, for purposes of § 365, between claims for attorney's fees in connection with pre-petition defaults and such claims in connection with post-petition defaults." *In re Entertainment, Inc*., 223 B.R. at 154. Landlord's attorneys' fees, which currently are in excess of $5,000.00, are ongoing. Landlord reserves its right to supplement this Limited Objection to provide such further attorneys' fees information as may be requested by Debtors.

**B. DEBTORS HAVE FAILED TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE PROPOSED ASSIGNMENT OF THE TORRANCE LEASE**

14. It is well-established that the Debtors bear the ultimate burden of presentation and persuasion that an unexpired lease of nonresidential real property is one subject to assumption and that all of the applicable requirements under Bankruptcy Code section 365 for assumption have been met. *In re Rachels Indus., Inc.,* 109 B.R. at 802; *In re Memphis-Fridays Assocs.*, 88 B.R.

830, 840-41 (Bankr. W.D. Tenn. 1988); *see also Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1309 (5th Cir. 1985).

15. Bankruptcy Code section 365(b)(1)(A) provides as follows:

> . . . If there has been a default in an executory contract or unexpired Lease of the Debtor, the Trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the Trustee –
>
> A. cures or provides adequate assurance that the Trustee will promptly cure such default;
>
> B. compensates, or provides adequate assurance that the Trustee will promptly compensate, a party other than the Debtor to such contract or lease for any pecuniary loss to such party from such default; and
>
> C. provides adequate assurance of future performance under such contract or lease.

16. "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the <u>full benefit of his bargain</u> in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.,* 53 B.R. at 793 (emphasis added); *accord In re Valley View Shopping Center, L.P.,* 260 B.R. at 25.

17. Thus, adequate assurance of future performance is clearly an element of the assumption process which must be met in addition to the curing of any default. 11 U.S.C. § 365(b)(1)(C); *see In re Old Market Group Holdings Corp.*, 647 B.R. 104, 110 (Bankr. S.D.N.Y. 2022). Section 365(f)(2)(B) provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." *See In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 370 (Bankr. D. Del. 1999).

18. While adequate assurance of future performance is not generally defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have

concluded that "the term was intended to be given a practical, pragmatic construction in light of the facts of each case." *In re Natco Indus., Inc.,* 54 B.R. 436, 440-41 (Bankr. S.D.N.Y. 1985). The emphasis is on protection of the lessor, and the intention "is to afford landlord with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." *Id.* at 441. Adequate assurance requires a foundation that is non-speculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Center, Inc.,* 100 B.R. 147, 148-49 (Bankr. D. Conn. 1989). By implication, Bankruptcy Code section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate. *See In re Standard Furniture Co.,* 3 B.R. 527, 530 (Bankr. S.D. Cal. 1980). The factors for the court to consider in determining whether the debtor is able to provide adequate assurance include the present status of the existing obligations under the lease, the remaining term of the lease, and what a landlord can look to for sufficient adequate assurance of future performance. *In re Hub of Military Circle, Inc*., 19 B.R. 460, 461 (Bankr. E.D. Va. 1982).

19. It is well-established that "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of shopping centers." *In re Joshua Slocum, Ltd.,* 922 F.2d at 1086; *In re Trak Auto Corporation*, 277 B.R. 655, 665-66 (Bankr. E.D. Va. 2002) (The legislative history of 1984 amendments to section 365 "indicates that Congress sought to provide special protections to lessors of a debtor."). Bankruptcy Code section 365(b)(3), added as part of the so-called 1984 "Shopping Center Amendments" to the Bankruptcy Code, provides that adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance:

> A) of the source of rent and other consideration due under such lease, and *in the case of an assignment, that the financial condition and operating performance of the proposed*

        *assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease*;

(B)    that any percentage rent due under such lease will not decline substantially;

(C)    that *assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision*, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D)    that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3) (emphasis added).

20.    The initial burden of presentation as to adequate assurance falls upon the debtor. *Sea Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077, 1079 (9th Cir. 1989). The *Sea Harvest* court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that Sea Harvest's "empty declaration does not provide the compensation and assurances required by section 365(b)(1)." *Id.* at 1080.

21.    Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g., Matter of Haute Cuisine, Inc.,* 58 B.R. 390, 393-94 (Bankr. M.D. Fla. 1986); *In the Matter of CM Systems, Inc.,* 64 B.R. 363, 364-65 (Bankr. M.D. Fla. 1986).

22.    As evidenced by the plain language of Bankruptcy Code section 365(b)(3), adequate assurance is not limited to the financial wherewithal of the proposed assignee. It is well-established that debtors must assume executory contracts or unexpired leases *cum onere* and may not unilaterally seek to modify the terms of such assumed contracts and leases. *See, e.g., N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 531-32 (1984); *Cinnicola v. Scharffenberger*, 248 F.3d 110,

119 (3d Cir. 2001) ("If the trustee [or debtor-in-possession] meets the assumption requirements under § 365 it must assume the executory contract *entirely*.") (emphasis added). "If the debtor decides to assume a lease [], it must generally assume all the terms of the lease and may not pick and choose only favorable terms to be assumed." *In re Buffets Holdings, Inc*., 387 B.R. 115, 119 (Bankr. D. Del. 2008); *see also In re New York Skyline, Inc*., 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) ("Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party."). Bankruptcy Code section 365(b)(3)(C) embodies this concept, providing that assumption and assignment of a shopping center lease is "subject to all the provisions thereof . . . ."[3]

        **i.**    ***The Assignment of the Torrance Lease Must Be Subject To Accrued but Unbilled or Unasserted Monetary and Nonmonetary Obligations***

23.    There are numerous accruing obligations under the Torrance Lease in addition to the payment of monthly "Minimum Rent." For example, typical of modern "triple net" leases, under the Torrance Lease, Tenant is required to pay the Landlord for "Tenant's Share" of "Common Area Expenses" (Paragraph 5.4 of Torrance Lease), on a monthly, estimated basis, subject to annual reconciliation, and reimbursement of "Real Property Taxes" (Section 6.2) and "Insurance," including earthquake coverage (Paragraph 7.1).

24.    The proposed Assumption and Assignment Agreement between Debtors and Burlington Texas has several problematic provisions that attempt to limit Burlington Texas' future liability under the Torrance Lease. For example, Paragraph 3 of the Assumption and Assignment Agreement provides that "Assignee shall have no liability or obligation arising or accruing under the Assigned Assets prior to the Closing Date" and that "Assignee shall assume all obligations

---

[3] In the bluntest terms, Burlington Texas claiming to have the "financial wherewithal to meet all future obligations under such unexpired lease" (*see* Assumption and Assignment Notice) is not the same as making the contractual commitment to do so.

with respect to the Assigned Assets arising from and after the Closing Date." The Lease Sale Procedures, accompanying the Lease Sale Procedures Order, make it clear that Debtors are seeking to sell their Lease Assets "*free and clear of* all liens, *claims*, interests, or other encumbrances." (emphasis added).

25. Bankruptcy Code section 101(5) defines a claim as "[any] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." "As has frequently been observed, this definition is extremely broad." *In re Old Market Group Holdings Corp.*, 647 B.R. at 112-13, *citing Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) ("Congress intended . . . to adopt the broadest available definition of 'claim.'"); *Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 156 (2d Cir. 2016), *cert denied*, 581 U.S. 1813, 137 S. Ct. 1813 (2017) (Even a right to payment contingent on future events is a claim under section 101(5) if it "result[s] from pre-petition conduct fairly giving rise to that contingent claim."); *see also JELD–WEN, Inc. v. Van Brunt (In re Grossman's),* 607 F.3d 114, 119-21 (3d Cir. 2010) (a "claim" may exist before a right to payment arose (or accrued) under state law).

26. Given this attempted limitations on the scope of liabilities under the Torrance Lease being assumed by Burlington Texas, when the Landlord bills Burlington Texas, as Debtors' assignee, for the reconciliation of 2024 Common Area Expense in 2025, as permitted by the terms of the Torrance Lease (*see* Paragraph 5.4 of the Torrance Lease), will Burlington Texas be responsible for that portion of the obligation that relates to pre-Closing Date periods, even though such amounts are billed thereafter? Similarly, will Burlington Texas be responsible for future billings of Real Property Taxes (bi-annual) and Insurance (annual) even though a portion of such

billings relate to periods prior to the Closing Date.[4] If Burlington Texas does not assume these obligations in their entirety, how does it propose that the Landlord collect the pre-Closing Date portions of these sums from Debtors that are selling substantially all of their assets and liquidating? The proposed Assumption and Assignment Agreement purport to provide that "obligations of Assignor arising or accruing prior to the Closing Date (including, but not limited to, fees, charges, adjustments, or reconciliations for taxes, insurance, CAM, and other charges, whether billed or unbilled, due or not due (each a "True-Up Charge") regardless of whether such True-Up Charge relates to a period of time prior to the assignment of such Assigned Asset(s) . . . shall be cured by Assignor on or before the Closing Date." Does Burlington Texas suggest that landlords, including the Landlord, be compelled to generate or estimate billings in advance of the times and under the terms contemplated by their leases for potentially unliquidated sums, with landlords bearing the risk should the amounts billed turn out to be insufficient?[5] This is effectively a compelled modification of the Torrance Lease for the convenience of Burlington Texas, contrary to Bankruptcy Code section 365(b)(1)(C)'s requirement "that assumption or assignment of [a shopping center lease] is subject to all the provisions thereof" and case law holding that the bankruptcy court may not modify or excise material obligations owing to the non-debtor contracting party. Put another way, the provisions of the proposed Assumption and Assignment Agreement that attempt to disclaim the assignee's liabilities for accrued but unbilled liabilities do not provide Landlord with adequate assurance of future performance with respect to those obligations.

---

[4] California has a June 30-July 1 fiscal year and secured real property taxes are paid in two installments, the first due no later than December 10 and the second by April 10 of the following year. As a result, the first installment of 2024-2025 real property taxes is not yet due and relates to periods prior to the anticipated Closing Date of Debtors' sale of Lease Assets.

[5] Burlington Texas does not explain how the Debtors are supposed satisfy *unbilled* obligations that are *not yet due prior* to the Closing Date.

27. In order to satisfy the adequate assurance requirements of Bankruptcy Code section 365(b)(1)(C), then Burlington Texas must have clear responsibility for such as yet unbilled or unasserted obligations (and, conversely, receive the benefit of any credits) even though future billings or claims may include expenses or obligations that accrue prior to the Closing Date. Similarly, Burlington Texas cannot escape liability for accrued, but not yet due, nonmonetary obligations such as future maintenance and repairs to the Leased Premises to remedy deferred maintenance or the restoration obligations that arise upon the expiration or earlier termination of the Torrance Lease. *See, e.g.*, *In re Number Holdings, Inc.*, Case No. 24-10719 (JKS) (D. Del.), *Twenty-Seventh Order Assumption and Assignment of Certain Unexpired Leases, etc.*, entered August 9, 2024 [D.I. 1145] at ¶ 3.

    **ii**     ***Either Burlington Texas or Debtors Must Provide Adequate Assurance of Future Performance of Insurance and Indemnification Obligations***

28. In addition to the monetary obligations that either Debtors or Burlington Texas must satisfy under Bankruptcy Code section 365, the Torrance Lease contains customary provisions requiring the Tenant to indemnify and hold Landlord harmless from claims, damages and liability arising from Tenant's use and occupancy of the Leased Premises (Paragraph 7.8 of Torrance Lease) and maintain certain insurance coverage (Paragraphs 7.2-7.4). As discussed above, Debtors and Burlington Texas attempt to modify and limit the scope of assumed liabilities through the Assumption and Assignment Agreement and the attempted assignment of the Torrance "free and clear" of "claims."

29. But what of third party claims (such as a customer "slip and fall") that occurred prior to the Closing Date but are not asserted until after the Closing Date?[6] Debtors, with the

---

[6] Under California law, the general statute of limitations for such personal injury claims is two years from the date of injury. Cal. Code Civ. Proc. § 335.1.

burden of demonstrating adequate assurance of future performance, have offered no proposal for satisfaction of the indemnification requirements of the Torrance Lease should a third party premises liability claim be asserted against Landlord for events or occurrences on the Leased Premises prior to the Closing Date. Landlord anticipates that Debtors will seek to be relieved of any further liability under the Lease in accordance with to Bankruptcy Code section 365(k). As a matter of law, however, a debtor is not entitled to the benefits and protections of Bankruptcy Code section 365(k) where the debtor does not assume and assign the lease *cum onere* – with all benefits and burdens. *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999). In particular, where an agreement between the debtor and assignee attempts to limit the obligations assumed by the assignee only to obligations arising after the closing, there has not been a complete assignment and the debtor is not entitled to the protections of Section 365(k). *Id.* at 81.

30. As the Third Circuit has observed, "[a]n assignment is intended to change only who performs an obligation, not the obligation to be performed." *Medtronic AVE., Inc. v. Advanced Cardiovascular Sys., Inc.,* 247 F.3d 44, 60 (3d Cir. 2001). Accordingly, in order to provide adequate assurance of future performance with respect to the indemnification obligations under the Torrance Lease, either (a) Burlington Texas must clearly be required to assume all responsibility for any and all such claims, including any deductible or self-insured retention amount, or (b) Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences prior to the Closing Date. Such claims for indemnity could include claims for personal injury occurring at the Leased Premises where Landlord is joined as a party to a lawsuit or for damage and destruction of property by Debtors or their agents or employees.

      **iii.**    *The Financial Information Regarding Burlington Texas Proffered To Date Is Inadequate to Establish Adequate Assurance of Future Performance*

31.    Bankruptcy Code section 365(b)(3)(A) requires that adequate assurance of future performance of a shopping center lease, such as the Torrance Lease, include adequate assurance that "that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease."

32.    Here, the proposed assignee of the Torrance Lease is Burlington Texas, not Burlington Stores, the publicly-traded holding company (NYSE: BURL), or Burlington Coat Factory Warehouse Corporation, the primary operating company.  The financial information proffered by Debtors with respect to adequate assurance of future performance of the proposed assignee was that contained in the public Form 10-K and 10-Q filings of Burlington Stores presented on a consolidated basis.  As described in the Form 10-K annual report, as of February 3, 2024, of Burlington Stores (at page 21), "since we are a holding company, substantially all of the assets shown on our consolidated balance sheets are held by our subsidiaries."  But no financial information specific to Burlington Texas, the proposed assignee of the Torrance Lease, has been provided nor have Debtors made any attempt to compare the financial condition of Burlington Texas to that of Tenant at the time it entered into the Torrance Lease.  While Burlington Texas operates over 300 "Burlington" stores in seven states (including California), no information has been provided to as its overall assets and, more importantly, its liabilities.[7]

33.    Absent additional evidence of sufficient capitalization or further financial information from Burlington Texas, particularly with respect to the capital and debt structure, the

---

[7]    For example, is Burlington Texas a co-obligor or guarantor of secured or unsecured borrowing by other subsidiaries and affiliates of Burlington Stores?

proposed assignment of the Torrance Lease should be conditioned on a third party guaranty, security deposit (*see* 11 U.S.C. § 365(l)), letter of credit or other credit enhancement. Any guaranty or security arrangement could have a "sunset" provision, expiring after several years if there were no uncured defaults under the Torrance Lease during that time, affording Landlord with an appropriate guaranty of performance while the operations at the Leased Premises by Burlington Texas, and the new landlord-tenant relationship "matures."

### III.     RESERVATION OF RIGHTS

34.     Landlord fully reserves its rights to (a) further supplement or amend this Limited Objection and assert any additional objections, including any additional cure obligations that may arise under the Torrance Lease in the ordinary course of business, and (b) further object to the Assumption and Assignment Notice on additional grounds based upon any new information provided by Debtors or Burlington or upon any different relief requested by Debtors, including a proposed assignment of the Torrance Lease to an entity other than Burlington Texas.

### IV.     JOINDER

35.     To the extent not inconsistent with the foregoing, Landlord joins in the objections of other shopping center landlords to the proposed assumption and assignment of retail leases to Burlington Texas on the terms proposed.

### V.     CONCLUSION

36.     Debtors have thus far failed to sustain their burden of demonstrating adequate assurance of future performance with respect to the proposed assumption and assignment of the Torrance Lease. Any assignment of the Torrance Lease must be subject to the existing terms, conditions and covenants of the Torrance Lease and Debtors and Burlington Texas must provide for a complete assumption and assignment of all lease obligations.

| | |
|---|---|
| Dated: October 25, 2024<br>Wilmington, Delaware | Respectfully submitted,<br><br>*/s/ Laurel D. Roglen*<br>Leslie C. Heilman (DE 4716)<br>Laurel D. Roglen (DE 5759)<br>Nicholas J. Brannick (DE 5721)<br>Margaret Vesper (DE 6995)<br>BALLARD SPAHR LLP<br>919 North Market Street, 11th Floor<br>Wilmington, DE 19801-3034<br>Tel:  (302) 252-4465<br>Fax:  (302) 252-4466<br>Email:  heilmanl@ballardspahr.com<br>          roglenl@ballardspahr.com<br>          brannickn@ballardspahr.com<br>          vesperm@ballardspahr.com<br><br>    -and-<br><br>Ivan M. Gold (admitted *pro hac vice*)<br>ALLEN MATKINS LECK GAMBLE<br> MALLORY & NATSIS LLP<br>Three Embarcadero Center, 12th Floor<br>San Francisco, CA 94111<br>Telephone:  (415) 837-1515<br>Facsimile:  (415) 837-1516<br>E-mail:  igold@allenmatkins.com<br><br>*Attorneys for Schwartz Torrance Company, LLC* |