# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 460, 466, 484, 497, 502 & 575** |

**DECLARATION OF TODD EYLER OF A&G REAL ESTATE PARTNERS, IN SUPPORT OF ORDER (I) AUTHORIZING AND APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS, ENCUMBRANCES, AND OTHER ASSUMED LIABILITIES AND PERMITTED ENCUMBRANCES, (II) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

I, Todd Eyler, declare under penalty of perjury:

1. I am the Senior Managing Director of A&G Realty Partners, LLC ("**A&G**"), real estate consultant and advisor to the above captioned debtors and debtors in possession (collectively, the "**Debtors**"). I submit this declaration (this "**Declaration**") in support of the *Motions of Debtors for Entry of Interim and Final Orders (I) Establishing Procedures To Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [D.I. 13] (the "**Sale Motion**")[2].

---

[1] The Debtors in these cases, together with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms not defined herein have the meanings ascribed to them in the Sale Motion.

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Debtors' management team and the Debtors' advisors, my review of relevant documents and information concerning the Debtors' operations, real estate portfolio, and restructuring initiatives, or my opinions based upon my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors.

### **Professional Background and Qualifications**

3. I am the Senior Managing Director of A&G, which was founded in 2012. A&G is a commercial real estate consulting and advisory firm with extensive experience providing high quality, specialized real estate services to both healthy and distressed companies. A&G's services include portfolio analytics and due diligence, lease optimization, real estate sales, auctions, new store growth, and capital solutions and acquisition strategies.

4. Since joining A&G, I have served as a go to resource for board members and C-suite executives at both healthy and distressed companies across all industries, including the retail, restaurant, movie theater, and supermarket industries. I specialize in lease renegotiations and terminations, real estate optimization and dispositions, and real estate valuations and sales. My representative engagements include *Toys R Us*, *Rite Aid*, *GNC*, *Mattress Firm*, *RadioShack*, *Regal Cinemas*, *Ascena*, *West Marine*, *Tailored Brands* and *Tuesday Morning*.

5. A&G has been advising the Debtors since June 2024 with respect to optimizing their real estate portfolio. As a result, I am generally familiar with the Debtors' real estate portfolio and related marketing efforts. Members of the A&G team and I have assisted the Debtors with their ongoing efforts to right-size their retail footprint, among other things.

### The Real Estate Portfolio

6. The Debtors historically maintained a leased real estate portfolio that consisted of approximately 1,300 properties spanning 48 states. In the lead up to the filing of these cases, A&G assisted the Debtors in a portfolio review. As a result of this analysis, A&G advised the Debtors that certain of these leases represented value.

7. Following that review, the Debtors commenced a comprehensive marketing process (the "**Marketing Process**") for those various leases including the properties listed in the Sale Motion (the "**Lease Assets**").

### The Marketing Process

8. To initiate the Marketing Process, shortly after the Petition Date, the Debtors, with the assistance of A&G, circulated a flyer marketing hundreds of the Debtors' leases, to approximately two hundred (200) potential purchasers. The Debtors, with the assistance of A&G, took additional steps to broadly market the Debtors' valuable leases, including publishing press releases, ultimately expanding the population of interested parties to over four hundred (400).

9. These marketing efforts culminated in the successful sale of over 20 leases in September 2024 as part of the "Wave 1" lease sale auction process. Building off the success of the Wave 1 process, the Debtors sought, and received, Court authorization to run a similar process for October 2024, the "Wave 2" auction.

10. A&G continued their Wave 1 marketing practices for the Wave 2 Lease Assets and ultimately marketed 151 of the Debtors leases to approximately 500 potentially interested buyers.

11. In order to maximize the value of the Debtors' estate and to avoid incurring additional lease costs, the Debtors pursued an accelerated lease sale process for the month of October. Through this accelerated timeline, by the Bid Deadline, the Debtors had received a total of thirty-five (35) bids across thirty-four (34) "Wave Two" properties.

12. In light of competing bids on one of the Lease Assets, the Debtors planned to hold a competitive live auction for Store #4599 located at 2450 South 9th St., Salina, KS on October 18, 2024 (the "**Auction**"). However, prior to the Auction, Ollie's Bargain Outlet, Inc. withdrew its bid for Store #4599, leaving only one Qualified Bidder for that Lease Asset.

### The Auction

13. On October 18, 2024, Debtors' counsel, Davis Polk & Wardwell LLP ("**Davis Polk**"), moderated the Auction for the Lease Assets. At the beginning of the Auction, Davis Polk announced that the auction was held only to recite the list of stores receiving bids. Davis Polk announced such list on the record and adjourned the Auction.

14. Each of the Lease Assets receiving bids received only one bid. The Debtors, in consultation with their advisors the Consultation Parties (as defined in the *Interim Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving The Sale of Certain Leases and (III) Granting Related Relief* [D.I. 137] (the "**Bidding Procedures Order**"), engaged in dialogue with those solitary bidders and decided to pursue sales with certain of those bidders on the terms set forth in the Sale Motion, for each respective property therein.

15. The Debtors, with the assistance of A&G and in consultation with the Consultation Parties, selected each purchaser as the winning bidder for each respective Property after careful review and consideration of all competing offers submitted at the Auction. I believe that each Purchase Price represents the highest or otherwise best offer for each Lease Asset.

16. Furthermore, I believe that each sale agreement related to a sale of one of the Lease Assets (each, a "**Sale Agreement**," and together, the "**Sale Agreements**") was negotiated at arm's-length and in good faith. To my knowledge, no purchaser acted in a collusive or fraudulent manner with any person, and each Purchaser's prospective performance and payment of amounts owing under the applicable Sale Agreement is in good faith and for a valid business purpose.

## Conclusion

17. For the foregoing reasons, I believe that the sale of each of the Lease Assets should be approved. The robust Marketing Process undertaken by the Debtors, with the assistance of A&G, has resulted in each Lease Asset receiving a winning bid that represents the highest and best value that the Debtors can reasonably expect to receive for the Lease Assets. Accordingly, for the reasons stated herein and in the Sale Motion, I believe that entering into the Sale Agreements and consummating the sale of each of the Lease Assets is fair, reasonable, and represents a sound exercise of the Debtors' business judgment.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: October 27, 2024               */s/ Todd Eyler*
                                      Name:  Todd Eyler
                                      Title: Sr. Managing Director