IN THE UNITED STATE BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | Re: Docket No. 511 |

**OBJECTION AND RESERVATION OF RIGHTS OF JORDAN MANUFACTURING COMPANY, INC. WITH RESPECT TO DEBTORS' NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR <u>UNEXPIRED LEASES AND CURE AMOUNT</u>**

Jordan Manufacturing Company, Inc. ("JMC"), by and through its undersigned counsel, submits this objection and reservation of rights (this "Objection") in response to the *Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount* [D.I. 511] (the "Cure Notice") filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"). In support of this Objection, JMC states as follows.

**BACKGROUND**

1. On September 9, 2024 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

2.     Prior to the Petition Date, JMC and the Debtor Big Lots eCommerce LLC (the "Debtor") entered into that certain (i) Supplier Direct Fulfillment Program Agreement, effective as of May 3, 2017 and (ii) related Statement of Work, effective as of May 19, 2017 (collectively, the "Agreements"[2]), pursuant to which JMC supplied and shipped certain Products (as defined in the Agreements) to the Debtor and/or directly to its customers.

3.     On the Petition Date, the Debtors filed the *Motion of Debtors for Entry of Orders (I) (A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures, (II) (A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [D.I. 18] (the "Sale Motion").  Pursuant to the Sale Motion, the Debtors seek entry of an order, among other things, approving Bidding Procedures[3] in connection with the proposed sale of substantially all of the Debtors' assets to the Stalking Horse Bidder, or such other Successful Bidder after an Auction, and procedures for the assumption and assignment of contracts and leases in connection with the Sale Transaction (the "Assumption and Assignment Procedures").

4.     On October 25, 2024, the Court entered an order approving, among other things, the Assumption and Assignment Procedures [D.I. 612] (the "Bidding Procedures Order").

---

[2] The Agreements, the individual invoices and other records which more particularly evidence the Debtors' indebtedness to JMC are voluminous, may contain proprietary information and terms, and are subject to confidentiality restrictions.  Accordingly, copies of such documents do not accompany this Objection.  The Agreements and any additional documents and information related to this Objection would be made available by JMC to appropriate persons upon reasonable request, and with appropriate non-disclosure protections in place.

[3] Capitalized terms used but not defined herein have the meaning set forth in the Cure Notice.

5. On October 16, 2024, the Debtors filed the Cure Notice. Appended to the Cure Notice is a list of the Debtors' executory contracts, together with the Cure Costs the Debtors believe must be paid to the applicable contract counterparties as a condition to assumption and assignment under Section 365 of the Bankruptcy Code (the "Potential Assumed Contracts Schedule"). The Debtors identify the JMC Agreements in the Potential Assumed Contracts Schedule and assign each of them with a Cure Cost (under the heading "Preliminary Estimated Cure Amount") of zero dollars ($0.00).

6. Pursuant to the Cure Notice, the proposed Cure Cost listed on the Potential Assumed Contracts Schedule "represents all liabilities of any nature of the Debtors arising under an Assumed Contract or Assumed Lease prior to the Petition Date, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the Petition Date." Cure Notice at 2.

7. On October 23, 2024, JMC filed a proof of claim with the Debtors' claims and noticing agent, which has been designated as Claim No. 2616 (the "Proof of Claim"). The Proof of Claim reflects a total pre-petition indebtedness of the Debtor to JMC in the amount of $229,102.42 (the "Pre-Petition Indebtedness"). As reflected in the Proof of Claim, a portion of the Pre-Petition Indebtedness (not less than $75,440.65) relates to Products delivered within 20-days of the Petition Date, on account of which JMC is entitled to an administrative priority claim under Section 503(b)(9) of the Bankruptcy Code.

**OBJECTION**

8. JMC objects to the Debtors' proposed Cure Costs related to the Agreements because they do not include amounts that are currently due and owing, or which may become due,

to JMC under the Agreements. At a minimum, the proposed Cure Costs should include the Pre-Petition Indebtedness reflected in JMC's Proof of Claim, as well as any other amounts that may become due under the Agreements and remain unpaid as of the effective date of any assumption, or assumption and assignment, of the Agreements.

9. In order to assume an executory contract or unexpired lease, a debtor must at the time of assumption: (a) cure all existing defaults; (b) compensate the non-debtor party for any actual pecuniary loss resulting from such defaults; and (c) provide adequate assurance of future performance under the contract or lease. 11 U.S.C. § 365(b)(1). A debtor's assumption of a contract or lease must be *cum onere* – including all of the conditions, liabilities and obligations as well as the benefits of such contract or lease. *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) (indicating that a debtor is required to assume a contract "*cum onere*"); *Kimmelman v. The Port Authority of New York and New Jersey (In re Kiwi Int'l Air Lines, Inc.)*, 344 F.3d 311, 318 (3d Cir. 2003) (the non-debtor party to an executory contract must be given the full benefit of its bargain and made whole before assumption of the contract can be permitted); *In re Gardinier, Inc.*, 831 F.2d 974, 975 (11th Cir. 1987) ("a bankruptcy trustee cannot accept the benefits of an executory contract without also assuming its burdens"). The proper Cure Costs should include all liabilities and obligations that have arisen or accrued under the Agreements after the Petition Date as well as prior to or as of the Petition Date. *See* 11 U.S.C. § 365(b)(1)(A) ("If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, *at the time of assumption of such contract or lease*, the trustee—cures, or provides adequate assurance that the trustee will promptly cure, such default… .") (emphasis added).

4

10.     JMC objects to any assumption, or assumption and assignment, of the Agreements unless and until each of the aforementioned requirements of Section 365(b)(1) of the Bankruptcy Code has been satisfied as of the effective date of such assumption, or assumption and assignment. Accordingly, the proper cure amount for the Agreements should include both the Pre-Petition Indebtedness **and** any post-petition amounts that are currently due, or become due, under the Agreements through and including the date upon which the Agreements are assumed by the Debtors and assigned to the Stalking Horse Purchaser or any other Successful Bidder.

## RESERVATION OF RIGHTS

11.     JMC reserves the right to update, supplement or modify this Objection as may be necessary or appropriate, and to submit additional documents or evidence in support hereof. JMC additionally reserves the right later to object to an assumption and assignment of the Agreements on the basis of adequate assurance of future performance by any Successful Bidder which may be proposed as the assignee of the Agreements. Nothing herein shall be deemed to waive any of JMC's procedural, substantive or other rights, privileges or remedies in connection with the Agreements, all of which are hereby expressly reserved.

WHEREFORE, Jordan Manufacturing Company, Inc. respectfully requests that the Court (i) condition the Debtors' assumption, or assumption and assignment of each of the Agreements upon (a) the Debtors' payment of all outstanding amounts due and owing to Jordan Manufacturing Company, Inc. as of the date of any such assumption and assignment, and (b) the Debtors' compliance with all other requirements for such assumption and assignment, including but not limited to the provision of adequate assurance of future performance, and (ii) grant such other and further relief to Jordan Manufacturing Company, Inc. as is proper.

| | |
|---|---|
| Dated: October 30, 2024 | BARNES & THORNBURG LLP<br><br>*/s/ Kevin G. Collins*<br>Kevin G. Collins (DE No. 5149)<br>222 Delaware Avenue, Suite 1200<br>Wilmington, DE 19801<br>Tel: (302) 300-3434<br>Fax: (302) 300-3456<br>Email: kevin.collins@btlaw.com<br><br>David A. Hall (*admitted pro hac vice*)<br>171 Monroe Avenue NW, Suite 1000<br>Grand Rapids, MI 49503-2694<br>Telephone: (616) 742-3954<br>Facsimile: (616) 742-3999<br>Email: david.hall@btlaw.com<br><br>*Counsel to Jordan Manufacturing Company, Inc.* |