IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>Objection Deadline: November 14, 2024 at 4:00 p.m.<br>Hearing Date: November 21, 2024 at 10:30 a.m. |

**LOGO BRANDS, INC.'S MOTION FOR ALLOWANCE OF
ADMINISTRATIVE EXPENSE CLAIM AND IMMEDIATE PAYMENT THEREOF**

Logo Brands, Inc. ("Logo Brands") hereby moves (the "Motion") for an order, substantially in the form attached hereto as **Exhibit A**, (a) granting Logo Brands an allowed administrative claim pursuant to section 503(b)(9) of title 11 of the United States Code (the "Bankruptcy Code") in the amount of $808,966.40 and (b) compelling the Debtors to pay such amount within seven days of an order approving this Motion. In support hereof, Logo Brands submits the declaration (the "Roper Declaration") of Mr. Julien Roper, Chief Financial Officer of Logo Brands, attached hereto as **Exhibit B**. In further support of the Motion, Logo Brands respectfully states as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

53139217.9

## PRELIMINARY STATEMENT[2]

1. Within the twenty days prior to the Petition Date, the Debtors received $808,966.40 worth of goods that were purchased in the ordinary course of the Debtors' businesses. That amount is an administrative claim under section 503(b)(9) of the Bankruptcy Code.

2. While normally administrative claims are not paid until plan confirmation, under these circumstances, the Court should require immediate payment of the administrative claim. The Debtors have funding to pay section 503(b)(9) claims like this, and immediate payment of this claim will have no material effect on the Debtors' chapter 11 cases. In contrast, this receivable represents a potential massive hit to Logo Brands' bottom line, and any delay in payment for Logo Brands would be catastrophic to this small, family-owned business.

3. Accordingly, the Court should grant this Motion, grant Logo Brands an allowed administrative claim in the amount of $808,966.40, and order the Debtors to pay the claim within seven days.

## JURISDICTION AND VENUE

4. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. The subject matter of this Motion pertains to the administration of the estate and use of property by the Debtors and, therefore, is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (O). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

5. On September 9, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under the Bankruptcy Code.

---

[2] Capitalized terms used in the Preliminary Statement but not otherwise defined herein shall have the same meaning ascribed to them later in the Motion.

53139217.9

6. Through their critical vendor motion, the Debtors have authority to pay $60 million in critical vendor claims including up to $37 million in section 503(b)(9) claims. See D.I. 463 (critical vendor order). The Debtors have financing to pay such amounts, as well as postpetition operating disbursements. See D.I. 584 (final DIP order).

7. Logo Brands is a family-owned business that has grown from a small, two-car garage in Tennessee. Logo Brands now has over 200 employees, and has over 350,000 square feet of warehouse space in Tennessee. Logo Brands is proud to have been named a top workplace by the *Tennessean* six out of the last eight years. Roper Decl. ¶ 3.

8. Logo Brands manufactures recreation, sporting, and other non-apparel products branded with the logos of professional or collegiate sports teams: for example, Alabama Crimson Tide branded blankets and pillows, an inflatable of the Kansas City Chiefs' mascot, and a Savanna Bananas drink tumbler. Logo Brands manufactures and ships its products to retailers, including the Debtors, from its foreign and domestic manufacturing facilities. Roper Decl. ¶ 4.

9. Logo Brands' annual revenue for 2023 was $114,929,602, and is projected to be $117 million for 2024. Logo Brands' annual net income for 2023 was $3,434,312, and is projected to be $4.5 million for 2024. Roper Decl. ¶ 5.

10. Logo Brands has sold goods to the Debtors for two years. Logo Brands manufactured all goods sold to the Debtors in China. All goods in question were shipped by the Debtors' logistics company from Shanghai, China to a port in the United States, and ultimately to one of the Debtors' U.S. facilities. The Debtors were invoiced for the Logo Brands products through Yusen Logistics Co., LTD ("Yusen"), and the Yusen invoices provided the date of each shipment from China. The Debtors maintained an automated inquiry phone line for its vendors like Logo Brands, which showed invoices and payments, but did not show the date that the goods

were received in the Debtors' U.S. facilities. However, based on experience, shipments from Logo Brands' manufacturing facilities in China routinely take approximately forty-one days from shipment to delivery to the Debtors' facilities. Roper Decl. ¶ 6.

11. In the ordinary course of their business with Logo Brands, the Debtors placed thirteen purchase orders for goods totaling $808,966.40 (the "Purchase Orders").[3] Roper Decl. ¶ 7.

12. Payment from the Debtors on the Purchase Orders was due within forty-five days of the Debtors' receipt of the goods. Roper Decl. ¶ 8.

13. The goods relating to the Purchase Orders were shipped to the Debtors "FOB Shanghai." Roper Decl. ¶ 9.

14. Logo Brands prepared the list of the Purchase Orders and their delivery dates as set forth in the chart below. Roper Decl. ¶ 10.

15. The Debtors were able to confirm the date of receipt of certain Purchase Orders, listed in the chart below. Roper Decl. ¶ 11.

16. For some Purchase Orders, Logo Brands does not have access to the Debtors' electronic system to confirm receipt dates. For these Purchase Orders, Logo Brands assumed they were received by the Debtors forty-one days after their shipment date, consistent with past practices. The estimated date of receipt of these orders in the chart below is indicated with an asterisk:

---

[3] The Debtors also owe Logo Brands in excess of $134,642.83 for orders placed and delivered more than twenty days prepetition. Allowance and immediate payment of this amount is not being sought by this Motion.

| Biglots PO# | Big Lots Invoice # | Invoice Amount | Container# | Ship Date (from China) | Date of Receipt - Big Lots | | Location of Receipt | # of days before petetion |
|---|---|---|---|---|---|---|---|---|
| 95313599 | SHAC1034447 | $ 31,026.00 | MSMU7597764 | 7/4/2024 | 8/26/2024 | | Columbus, OH | 14 |
| 95313593 | SHAU1029806 | | CMAU6773830 | 7/11/2024 | 8/21/2024 | * | Durant, OK | 19 |
| 95313593 | SHAU1029806 | | CMAU9609245 | 7/11/2024 | 8/21/2024 | * | Durant, OK | 19 |
| 95313593 | SHAU1029806 | $ 104,487.60 | ECMU8109736 | 7/11/2024 | 8/21/2024 | * | Durant, OK | 19 |
| 95313586 | SHAM1033739 | $ 7,476.00 | HMMU9058301 | 7/12/2024 | 8/22/2024 | * | Montgomery, AL | 18 |
| 95313586 | SHAM1033744 | $ 34,313.40 | ONEU7042869 | 7/14/2024 | 8/29/2024 | | Montgomery, AL | 11 |
| 95313586 | SHAM1033817 | $ 56,541.00 | KOCU9004620 | 7/14/2024 | 8/24/2024 | * | Montgomery, AL | 16 |
| 95313592 | SHAT1033304 | | FSCU5077489 | 7/14/2024 | 8/24/2024 | * | Tremont, PA | 16 |
| 95313592 | SHAT1033304 | $ 81,963.00 | OOLU7992950 | 7/14/2024 | 8/24/2024 | * | Tremont, PA | 16 |
| 95313599 | SHAC1034535 | | HNSU4023100 | 7/17/2024 | 8/27/2024 | * | Columbus, OH | 13 |
| 95313599 | SHAC1034535 | | OOCU4850810 | 7/17/2024 | 8/27/2024 | * | Columbus, OH | 13 |
| 95313599 | SHAC1034535 | $ 97,475.40 | OOLU4508039 | 7/17/2024 | 8/27/2024 | * | Columbus, OH | 13 |
| 95313599 | SHAC1034549 | | OOLU4395328 | 7/17/2024 | 8/27/2024 | * | Columbus, OH | 13 |
| 95313599 | SHAC1034549 | | OOCU4879748 | 7/17/2024 | 8/27/2024 | * | Columbus, OH | 13 |
| 95313599 | SHAC1034549 | $ 113,950.20 | OOLU4995603 | 7/17/2024 | 8/27/2024 | * | Columbus, OH | 13 |
| 95313592 | SHAT1033217 | | OOLU4433285 | 7/18/2024 | 8/28/2024 | * | Tremont, PA | 12 |
| 95313592 | SHAT1033217 | $ 51,543.00 | TLLU7744870 | 7/18/2024 | 8/28/2024 | * | Tremont, PA | 12 |
| 95363747 | SHAT1033191 | $ 27,435.00 | UETU6834002 | 7/22/2024 | 9/1/2024 | * | Tremont, PA | 8 |
| 95363748 | SHAU1029777 | $ 17,500.00 | KOCU4678630 | 7/22/2024 | 8/28/2024 | | Durant, OK | 12 |
| 95363720 | SHAA1005759 | $ 13,900.00 | KOCU4601686 | 7/24/2024 | 8/21/2024 | | Apply Valley, CA | 19 |
| 95363736 | SHAM1033713 | $ 18,730.00 | APHU4658634 | 7/25/2024 | 9/2/2024 | | Montgomery, AL | 7 |
| 95299802 | SHAA1005795 | | CMAU5672810 | 7/26/2024 | 9/5/2024 | * | Apple Valley, CA | 4 |
| 95299802 | SHAA1005795 | $ 79,790.40 | TGHU9813518 | 7/26/2024 | 9/5/2024 | * | Apple Valley, CA | 4 |
| 95363749 | SHAC1034428 | $ 38,993.00 | KOCU4172072 | 7/26/2024 | 9/5/2024 | * | Columbus, OH | 4 |
| 95313593 | SHAU1029874 | $ 33,842.40 | MRKU0340030 | 7/30/2024 | 9/9/2024 | * | Durant, OK | - |
| | | Total: $ 808,966.40 | | | | | | |

Roper Decl. ¶ 12.

17. Based on these confirmed and estimated dates, all goods in the foregoing summary were received by the Debtors within twenty days of the Petition Date. Roper Decl. ¶ 13.

18. These goods created a substantial receivable for Logo Brands, representing approximately 7% of Logo Brands' projected gross sales and 18% of net income for 2024. Roper Decl. ¶ 14.

5

19.     As a small company, delayed payment of such a large receivable would put incredible stress on Logo Brands.  Roper Decl. ¶ 15.

20.     If Logo Brands is not paid for the Purchase Orders in short order, Logo Brands may be forced to adjust its ability to fulfill orders for the Debtors and other customers, causing severe disruption and uncertainty to the business.  Roper Decl. ¶ 16.

21.     Accordingly, Logo Brands would suffer extreme prejudice if it was forced to wait months for payment for the Purchase Orders, until confirmation of a plan.  Roper Decl. ¶ 17.

## ARGUMENT

**I.     Logo Brands is Entitled to an Administrative Expense Claim Against the Debtors**

22.     Section 503(b)(9) of the Bankruptcy Code provides that, "there shall be allowed administrative expenses . . . including . . . the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business."  11 U.S.C. § 503(b)(9). Administrative claims are entitled to priority payment under section 507(a)(2) of the Bankruptcy Code and are required to be paid in full in cash under a plan pursuant to section 1129(a)(9).  See id. §§ 507(a)(2), 1129(a)(9).

23.     For the purposes of section 503(b)(9), "goods are 'received' when the debtor or its agent takes physical possession of them" even if they are ordered or shipped FOB on an earlier date. In re World Imports, Ltd., 862 F.3d 338, 342 (3d Cir. 2017).  In World Imports, a vendor shipped goods from China to a debtor prepetition via a common carrier, FOB their port of origin. The shipment left China more than twenty days prepetition but arrived in the United States and was accepted by the debtor within the twenty days prepetition.  Id. at 340-41.  When the debtor filed a chapter 11 bankruptcy, the vendor claimed the goods were entitled to section 503(b)(9) priority.  The Third Circuit held that the use of the "FOB" term controlled how the parties allocated

6

the risk of loss, not title to the goods or "receipt" of the goods for purposes of section 503(b)(9). Id. at 344. The goods were received for section 503(b)(9) purposes when the debtor took control of them upon delivery in the United States, so the vendor was entitled to administrative priority. Id.

24. The material facts here are identical: the goods were shipped by common carrier FOB, and received by the Debtors within twenty days of the Petition Date. The goods were "received" by the Debtors during the priority period, so binding precedent dictates that Logo Brands is entitled to administrative priority pursuant to section 503(b)(9).

25. Logo Brands' calculation of the delivery dates is an estimate for certain of the goods. If, however, any goods were received postpetition, the claim relating to those goods is entitled to an administrative expense pursuant to section 503(b)(1) as an "actual, necessary cost and expense of preserving the estate." See 11 U.S.C. § 503(b)(1); see also, e.g., In re Energy Future Holdings Corp., 990 F.3d 728, 741-42 (3d Cir. 2021) (holding that claim is entitled to administrative expense priority under section 503(b)(1) if "(1) there was a post-petition transaction between the claimant and the estate, and (2) those expenses yielded a benefit to the estate"); see also In re Bluestem Brands, Inc., No. 20-10566 (MFW), 2021 WL 3174911 at *15 (Bankr. D. Del. July 27, 2021) (amounts owed for goods ordered and shipped prepetition but received postpetition were entitled to administrative expense priority); In re S. Mont. Elec. Generation & Transmission Coop., Inc., No. 11-62031 (RBK), 2013 WL 85162, at *5 (Bankr. D. Mont. Jan. 8, 2013) (the portion of an asserted section 503(b)(9) claim for goods delivered postpetition should be treated as a section 503(b)(1)(A) claim).

26. This Court has previously held that—in the absence of evidence to the contrary— goods or services exchanged at the contract rate are presumed to be exchanged at fair market value,

such that the contract rate is presumed to be the "value" for purposes of section 503(b). <u>In re Smurfit-Stone Container Corp.</u>, No. 09-10235 (BLS), 2010 Bankr. LEXIS 661, 15-16 (Bankr. D. Del. March 8, 2010) ("There is an initial assumption that, where a contract exists, the contractual rate is the reasonable value of the goods or services provided to the estate. This presumption is viable unless the debtor introduces convincing evidence to the contrary." (citations and internal quotation marks omitted)); <u>see also</u> <u>In re Goody's Family Clothing, Inc.</u>, 392 B.R. 604, 614 (Bankr. D. Del. 2008) ("[Fair market value. . . is presumably the lease rate unless there is evidence to the contrary."). Accordingly, the purchase price for the goods here is presumed to be the "value" of the goods, for purposes of section 503(b).

27. In this case, the Debtors received the goods relating to the Purchase Orders in the ordinary course of their businesses, within twenty days before the Petition Date. In the alternative, any goods received postpetition preserved and augmented the estate, so payment for these goods is an actual and necessary cost to the estate. In either case, Logo Brands is entitled to an administrative expense.

28. Accordingly, Logo Brands is entitled to an allowed administrative expense in the amount of $808,966.40.

## II. The Court Should Compel Payment of the Administrative Expense Claim Within Seven Days

29. The Bankruptcy Code does not require immediate payment of section 503(b) claims. However, a court may, in its discretion, require that they be paid immediately. <u>In re Garden Ridge Corp.</u>, 323 B. R. 136, 143 (Bankr. D. Del. 2005). "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." <u>Id</u>.

> In making this determination, one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets. . . . Courts will also consider the particular needs of each administrative claimant and the length and expense of the case's administration. To qualify for exceptional immediate payment, a creditor must show that there is a necessity to pay and not merely that the Debtor has the ability to pay.

In re Global Home Products, LLC, No. 06–10340 KG, 2006 WL 3791955, *3 (Bankr. D. Del. Dec. 21, 2006) (internal quotations marks and citations omitted).

30. Courts apply the same analysis regarding immediate payment of section 503(b)(9) administrative expenses as used for other kinds of administrative expenses: "(1) the prejudice to the debtors, (2) hardship to claimant, and (3) potential detriment to other creditors." Id. at *4 (applying Garden Ridge Corp. test and granting immediate payment of section 503(b)(9) expense).

31. Here, the Debtors have already received final authority to pay up to $60 million in critical vendor claims including up to $37 million in section 503(b)(9) claims. See D.I. 463 (critical vendor order).

32. The Debtors also have authorization—and a DIP and cash collateral budget—permitting them to pay in excess of $50 million in operating disbursements per week, which amount includes section 503(b)(9) claims. See D.I. 114 at 431 (interim DIP order); D.I. 584 (final DIP order).

33. The Debtors have thus already decided that, in their business judgment, the prejudice to the Debtors and other creditors arising from immediate payment of section 503(b)(9) claims is outweighed by the necessity of business continuity. See D.I. 11 (critical vendor motion).

34. The Debtors have also budgeted and set aside sufficient funds to pay section 503(b)(9) claims without impairing their ability to operate or restructure during the pendency of these cases.

35. The Debtors thus already have the capacity, ability, and authority to pay Logo Brands' section 503(b)(9) claim, and the Court has ruled that payment of other section 503(b)(9) claims is a proper exercise of the Debtors' business judgment.

36. Logo Brands further submits that there would be no meaningful prejudice to other creditors if Logo Brands is paid immediately. As the holder of an allowed administrative expense, Logo Brands is entitled to payment in full for its administrative claim in any potential plan or liquidation, so immediate payment will not disadvantage any other creditors.

37. On the other hand, Logo Brands would suffer extreme prejudice if not paid immediately: Logo Brands is a small, family-owned business, and the section 503(b) claim asserted in this Motion represents approximately 7% of its annual gross sales and 18% of net income. If forced to wait for payment of this amount, Logo Brands could suffer severe financial distress and may experience disruptions in its ability to place and fulfill future orders for the Debtors, the potential purchasers of the Debtors' business, and Logo Brands' other customers.

38. The totality of the circumstances supports compelling the Debtors to pay Logo Brands' administrative claim immediately, as further delay in payment will only prejudice Logo Brands, and there is no cognizable prejudice to the Debtors or to the Debtors' other creditors. Accordingly, Logo Brands requests that the administrative expense claim be paid within seven days after the entry of this Court's order granting the Motion.

## RESERVATION OF RIGHTS

39. The filing of this Motion shall not be construed as a waiver or release of any of Logo Brands' claims, rights, or remedies. Logo Brands reserves the right to supplement or amend this Motion in any manner and for any purpose including without limitation to assert additional administrative claims for any additional period.

## CONCLUSION

40. Logo Brands respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (a) allowing Logo Brands an administrative claim in the amount of $808,966.40; (b) compelling the Debtors to pay such amounts within seven days of entry of an order approving this Motion; and (c) granting such other and further relief as the Court may deem just and appropriate.

Dated: October 31, 2024

**SAUL EWING LLP**

*/s/ Lucian B. Murley*
Lucian B. Murley (DE Bar No. 4892)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6898
luke.murley@saul.com

*Attorneys for Logo Brands, Inc.*

53139217.9