IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| BIG LOTS, INC., et al., | : | Case No. 24-11967 (JKS) |
| | : | |
| | : | (Jointly Administered) |
| | : | |
| Debtors.[1] | : | |
| | : | **Re: D.I. 511** |

**LIMITED OBJECTION OF LEVIN PROPERTIES, L.P. TO (I) NOTICE OF POTENTIAL ASSUMPTION OF LEASE AND CURE AMOUNT AND (II) LACK OF ADEQUATE ASSURANCE [D.I. 511]**

Levin Properties, L.P. ("Levin") hereby submits this limited objection (i) to the cure amount set forth in the *Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts* [D.I. 511] (the "Cure Notice") and (ii) due to a lack of adequate assurance of the proposed assignee's ability to perform under the Lease (as defined below) in accordance with 11 U.S.C. §§ 365(f)(2)(B) and 365(b)(3).

While the Cure Notice lists the correct outstanding rent owed under the Lease, Levin submits this cure objection to preserve its rights to additional amounts due and owing to it under the Lease, including legal fees and costs incurred in this case, as well as for any reconciliations of Additional Rent (as defined below).

With regard to adequate assurance, counsel for Levin has been in contact with counsel for Big Lots, LLC ("Big Lots" or the "Debtor") and its affiliated debtors (collectively, the "Debtors")

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin- Granville Road, Columbus, OH 43081.

to try to obtain sufficient information to satisfy §§ 365(f)(2)(B) and 365(b)(3), but to date such information has not been provided.

Levin will continue to work to resolve these concerns in the hopes of consensually resolving this limited objection. Nonetheless, due to the deadline to file such an objection pursuant to the Cure Notice, Levin submits this limited objection. In support of this limited objection, Levin states as follows:

## BACKGROUND

### A. The Lease

1. Levin is the owner and landlord of that certain store premises known and referred to as Clifton Plaza, located at 1006 Route 46, Clifton, New Jersey 07013. Clifton Plaza is a 95,222 square foot shopping center with a mix of more than a dozen contiguous, retail tenants situated around a common parking lot. *See*, *e.g.*, https://www.levinmgt.com/levinproperties/clifton-plaza/; https://www.levinmgt.com/wp-content/uploads/2023/08/Clifton_Clifton-Plaza_Brochure-7.pdf.

2. On December 16, 2004, Levin's predecessor-in-interest, Federal Realty Investment Trust,[2] entered into a lease, which commenced on January 6, 2005, with Big Lots Stores, Inc.[3] for 24,000 square feet of space located at Clifton Plaza, as more particularly described in the Lease (as defined below) (the "Premises").

3. In particular, the Debtor entered into a certain retail lease agreement dated December 16, 2004 (the "Original Lease"), as modified by that certain letter dated August 22, 2014 (the "Extension Letter"), whereby the Debtor exercised its option to extend the term of the Original Lease, as further amended by that certain First Lease Extension and Modification

---

[2] Levin is the successor-in-interest to Federal Realty Investment Trust pursuant to an Assignment of Leases, Rents and Security Deposits, dated as of October 26, 2007.
[3] Based on a 2019 certificate from the Ohio Secretary of State, Levin understands that Big Lots Stores, Inc. changed its name to Big Lots Stores, LLC in 2019.

Agreement dated June 24, 2019 (the "June 2019 Amendment" and together with the Extension Letter and the Original Lease, the "Lease").  Pursuant to the Lease, Levin leased the Premises to the Debtor.  True and accurate copies of the Original Lease, the Extension Letter, and the June 2019 Amendment are annexed hereto as **Exhibits A**, **B**, and **C**, respectively.

4. In exchange for leasing the Premises, the Debtor agreed to pay to Levin Rent,[4] which is composed of both Minimum Rent and Additional Rent, as those terms are defined in the Lease.  The "Minimum Rent"[5] is as follows:

| Lease Year | Annual Minimum Rent | Monthly Minimum Rent |
|---|---|---|
| 1-5 | $264,000.00 | $22,000.00 |
| 6-10 | $290,400.00 | $24,200.00 |
| 11-15 | $319,440.00 | $26,620.00 |
| 16-20 | $351,360.00 | $29,280.00 |
| 21-25 | $395,280.00 | $32,940.00 |

*See* Original Lease § 1.01(G); Extension Letter; June 2019 Amendment § 5.  The Additional Rent includes all sums payable by the Debtor to Levin, if any, under the Lease, other than Minimum Rent.  *See* Original Lease § 1.02(H).

5. In particular, the Additional Rent includes the Tax Rent, which is paid in equal monthly installments based on Levin's estimate of the Tenant's Proportionate Share of the Taxes

---

[4] Capitalized terms not defined herein will have the meaning ascribed to them in the Lease.

[5] The June 2019 Amendment also provides that during the Option Term, if any, in addition to the payment of Additional Rent, the Debtor shall pay Minimum Rent in the annual amount of $454,560 from June 1, 2030 to May 31, 2035.  June 2019 Amendment § 5(B).  In addition, pursuant to the June 2019 Amendment, Levin leased to the Debtor, in addition to the Original Leased Premises, Additional Storage Premises containing approximately 1,532 square feet located within the Shopping Center.  June 2019 Amendment § 1.  Thus, the June 2019 Amendment provides that during the Storage Term, in addition to the payment of Additional Rent, the Debtor shall pay Minimum Rent for the Additional Storage Premises in the annual amount of $30,639.96 from the date of execution of the June 2019 Amendment until May 31, 2025, and an annual amount of $34,470.00 from June 1, 2025 to May 31, 2030.  June 2019 Amendment § 5(C).  Lastly, the June 2019 Amendment provides that during the Storage Option Term, if any, in addition to the payment of Additional Rent, the Debtor shall pay Minimum Rent for the Additional Storage Premises in the total annual amount of $39,648.12 from June 1, 2030 to May 31, 2035.  June 2019 Amendment § 5(D).

and is subject to reconciliation at the end of each Tax Year with the Debtor liable to pay any shortfall in estimated Tax Rent payments against the actual Taxes. Original Lease § 5.08(B). Additional Rent also includes Tenant's Share of Operating Costs, which is similarly billed in equal monthly installments based on Levin's estimate and is subject to a reconciliation after each Operating Costs Year with Debtor liable to pay any shortfall in the estimated Tenant's Share of Operating Costs against the actual Operating Costs. Original Lease § 6.03(B).

6. Moreover, the Debtor agreed to pay the Levin's attorneys' fees and costs as a prevailing party in connection with enforcing the terms of the Lease in any litigation proceeding. *See* Original Lease § 17.04.

### B. The Bankruptcy Cases, the Cure Amount, and the Lack of Adequate Assurance Information

8. On September 9, 2024 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 in this Court.

9. Moreover, on the Petition Date, the Debtors filed a *Motion of Debtors for Entry of Orders (I) (A) Approving Bidding Procedures for Sale of Debtors Assets, (B) Approving the Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing To Approve, Sale of Debtors Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures, (II) (A) Approving Sale of Debtors Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [D.I. 18] (the "Bid Procedures Motion"), which, among other things, seeks Court approval of certain bidding procedures in connection with the sale of substantially all of the Debtors' assets, approval of such sale, and assume and assign various executory contracts and unexpired leases to a stalking horse bidder subject to higher and better bids.

10. On October 16, 2024, the Debtors filed the Cure Notice. The Cure Notice lists the Lease with a cure of "$48,951.00" (the "Cure Amount"). *See* Cure Notice, p. 44. This number is accurate and tracks the amount Levin believes it is currently owed for Minimum Rent and the estimated Additional Rent described above for the month of September 2024. However, the Cure Amount does not reflect Levin's legal fees and costs incurred to date in connection with these bankruptcy cases. Through September 30, 2024, Levin has incurred $1,908.00 in legal fees and costs in this case and anticipates incurring additional amounts thereafter. Moreover, the Cure Notice and Cure Amount is unclear concerning the additional amounts that may be due for Additional Rent for the period before the Petition Date after those amounts are reconciled against the monthly estimated amounts at the end of the Tax Year and Operating Costs Year, as described above.

11. The Court granted the Bid Procedures Motion on October 25, 2024 (the "Bid Procedures Order"). *See* D.I. 612.

12. The Bid Procedures Order provides, in pertinent part, as follows: "[a]ny (i) landlord Counterparty (and their counsel, if known) and (ii) other Counterparty (and their counsel, if known) upon request by the Counterparty to the Debtors' counsel delivered not less than twenty-four (24) hours prior to the Bid Deadline, shall be provided with adequate assurance information relevant to the affected Counterparty as soon as practicable (by email if available or otherwise by first class mail), and no later than (i) twenty-four (24) hours after the Bid Deadline for delivery via email and (ii) one (1) business day after the Bid Deadline for delivery via first class mail." *See* Bid Procedures Order ¶ 21. The Bid Deadline was October 28, 2024, and, thus, the deadline to provide adequate assurance information was October 29, 2024. *Id.* ¶ 6. Levin's counsel reached out to the Debtors requesting adequate assurance of future performance information from the

Debtors or from Gateway BL Acquisition, LLC (the "Stalking Horse Bidder"), but to date has not received any such information. Accordingly, Levin also objects to the Cure Notice based on the Debtors' and the Stalking Horse Bidder's failure to deliver adequate assurance information.

**OBJECTION**

12. Section 365(b)(1) of the Bankruptcy Code requires that "[i]f there has been a default in an executory contract . . . of the debtor, the trustee may not assume such contract . . . unless, at the time of assumption of such contract . . ., the trustee . . . cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ."

13. As of September 9, 2024, the Cure Amount accurately reflects the total amount of Minimum Rent and estimated Additional Rent owed to Levin under the Lease for September 2024. However, as noted above, other amounts will become due and owing under the Lease, including but not limited to (i) attorneys' fees and costs incurred by Levin in the amount of $1,908 for legal services through September 30, 2024, and additional amounts incurred thereafter, as provided in Section 17.04 of the Original Lease and (ii) any amounts due to Levin for the shortfall of the estimated Additional Rent paid against the actual Taxes and Operating Costs, which amount will be determined after the end of the Tax Year and Operating Costs Year.

14. Thus, in accordance with 11 U.S.C. § 365(b), any order approving the assumption of the Lease must require the payment in full of amounts due under the Lease and any other amounts that may become due and owing under the Lease as of the date of such assumption.

15. In addition to the payment of the correct Cure Amount, for the Lease to be assumed and assigned to the Successful Bidder (as defined in the Bid Procedures Order), Levin must be provided with adequate assurance of future performance by the Successful Bidder under the Lease.

11 U.S.C. § 365(f)(2)(B). Because the Premises is part of a shopping center,[6] Levin must be provided with adequate assurance of the following:

> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
> (B) that any percentage rent due under such lease will not decline substantially;
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

16.  To date, and despite the deadlines in the Bidding Procedures Order, Levin has not been provided with any information concerning the Stalking Horse Bidder, or any other potential bidder, from which Levin could be provided with adequate assurance of future performance under 11 U.S.C. § 365(f)(2)(B) or 11 U.S.C. § 365(b)(3). Unless and until such information is provided, this Court should not approve the assumption and assignment of the Lease to the Successful Bidder.

## RESERVATION OF RIGHTS

17.  Levin hereby reserves the right to amend or supplement this objection to revise the Cure Amount to reflect additional amounts due and owing under the Lease as of the date of any such assumption of the Lease, including but not limited to (i) attorneys' fees and costs incurred by

---

[6] Clifton Plaza (where the Premises is located) falls clearly within the classic conception of a shopping center under the Bankruptcy Code. *See In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1087 (3d Cir. 1990) (describing factors, such as combination of leases held by a single landlord, with tenants engaged in retail operations, the presence of common parking area, existence of a tenant mix, purposeful development as shopping center, sharing costs of maintenance).

Levin on and after October 1, 2024, as provided in Section 17.04 of the Original Lease and (ii) the Additional Rent that is subject to reconciliation as described herein.

18. Levin hereby reserves any further objection to the assumption and assignment of the Lease, including with regard to adequate assurance of future performance.

WHEREFORE, Levin respectfully requests that the Court enter an order (i) requiring the additional payment of the amounts that will accrue under the Lease as set forth herein as part of the cure of defaults under 11 U.S.C. § 365(b), (ii) denying the assumption and assignment of the Lease until Levin is provided adequate assurance of future performance by the Successful Bidder as required under 11 U.S.C. §§ 365(b)(3) and 365(f)(2)(B), and (iii) granting such further relief as the Court deems appropriate.

| | |
|---|---|
| Dated: November 1, 2024<br>Wilmington, Delaware | Respectfully submitted,<br><br>  /s/ *Joseph C. Barsalona II*<br>PASHMAN STEIN WALDER HAYDEN, P.C.<br>Joseph C. Barsalona II, Esq.<br>824 North Market Street, Suite 800<br>Wilmington, Delaware 07601<br>Telephone: (302) 592-6496<br>Email:    jbarsalona@pashmanstein.com<br><br>-and-<br><br>SHIPMAN & GOODWIN LLP<br>Eric S. Goldstein, Esq.<br>Anthony R. Scarcella, Esq.<br>One Constitution Plaza<br>Hartford, Connecticut 06103<br>Telephone: (860) 251-5000<br>Email:    egoldstein@goodwin.com<br>             ascarcella@goodwin.com<br><br>*Attorneys for Levin Properties, L.P.* |