IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>**BIG LOTS, INC.,** *et al..*,<br>Debtors. | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>Sale Hearing Date: November 12, 2024 1:30 PM<br>Sale Objection Date: November 6, 2024<br>Cure Objection Date: November 4, 2024 at Noon<br><br>Docket Nos. 18, 511 and 661 |

**ORACLE'S LIMITED OBJECTION TO AND RESERVATION OF RIGHTS REGARDING DEBTORS' SALE MOTION AND RELATED NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNT**

Oracle Credit Corporation and Oracle America, Inc., successor in interest to Sun MicroSystems, Inc., Talent Corporation, PeopleSoft, Inc., ATG, and Endeca Technology (jointly, "Oracle"), a creditor and contract counter-party in the above-captioned Chapter 11 case, submits this limited objection and reservation of rights ("Rights Reservation") regarding both: (1) *Motion of Debtors For Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Stalking Horse Bid Protections, (C) Scheduling Auction For, and Hearing to Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures, (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B)Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Dkt. No. 18] ("Sale Motion"); and (2) *Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* [Dkt. No. 511] ("Assumption Notice"), filed by Big Lots, Inc., et al. ("Debtors").

**I.      INTRODUCTION**

1. In connection with the Sale Motion, the Debtors seek Bankruptcy Court authority to, among other things, assume and assign numerous executory contracts between the Debtors and Oracle. Oracle objects to, and reserves its rights regarding, the proposed assumption and assignment for several reasons.

2. First, the targeted Oracle agreements are, or pertains to, one or more licenses of intellectual property which are not assignable absent Oracle's consent pursuant to both the underlying license agreement and applicable law.

3. Second, the Assumption Notice identifies approximately 52 contracts which may be assumed and assigned. In each instance the contract description lacks specificity, precluding identification of the targeted agreement. Therefore, Oracle is unable to determine which contracts may be assumed and assigned. As a result, Oracle is unable to determine the accuracy of the proposed cure amount.

4. Third, at present, no adequate assurance information has been provided for Gateway (defined below). Therefore, Oracle is unable to determine whether Gateway will be capable of performing under the terms of the contracts which the Debtors seek to assume and assign.

5. Finally, the APA (defined below) contemplates a transition services agreement which may call for the unauthorized shared use of Oracle's licenses, in a manner which is not permitted by Oracle's agreements. Oracle objects to any unauthorized shared use of its licenses.

6. Accordingly, Oracle requests that the Court deny the Debtors' request for authority to assume and assign, transfer, or share use of, any Oracle agreement without Oracle's consent.

## II.     FACTUAL BACKGROUND

7.     The Debtors filed the above captioned case on September 9, 2024 ("Petition Date") and an order directing joint administration was entered shortly thereafter. The Debtors continue to operate as debtors in possession.

8.     On the Petition Date, the Debtors filed the Sale Motion, which seeks Court authority to sell substantially all assets of the Debtors. The Sale Motion identifies Gateway BL Acquisition, LLC as the stalking horse bidder ("Gateway").

9.     Attached as Exhibit "C" to the Sale Motion is the Asset Purchase Agreement between the Debtors and Gateway ("APA").

10.    The APA contemplates entering into a Transition Services Agreement ("TSA"), covering the period from the closing date until entry of a final decree closing the Debtors' bankruptcy case.

11.    Section 7.08 of the APA states:

As soon as practicable following the date hereof, Seller and Buyer shall use reasonable best efforts to negotiate the terms of , and at the Closing shall enter into, a transition services agreement and, if requested by Seller, an employee lease agreement, pursuant to which (i) Buyer or one or more of its Affiliates will provide, or cause to be provided, from the Closing until the date of a final decree closing of {sic} the Bankruptcy Cases and the winding up and dissolution of the Selling Entities and their debtor affiliates in the Bankruptcy Cases, unless sooner terminated pursuant to the terms of the relevant agreement, (A) the services of the Transferred Employees to enable the Selling Entities and their debtor affiliates in the Bankruptcy Cases to (x) process taxes and (y) process monthly operating reports and financial data for the Selling Entities and their debtor affiliates in the Bankruptcy Cases, and (B) use of the applicable Systems and Facilities included in the Acquired Assets, to the extent such use is necessary to enable the foregoing, in each case, that are necessary or advisable to enable the Selling Entities to wind down and dissolve the Selling Entities and their debtor affiliates in the Bankruptcy Cases and (ii) Seller will provide, or cause to be provided, from the Closing until the date of a final decree closing of {sic} the Bankruptcy Cases and the winding up and dissolution of the Selling Entities and their debtor affiliates in the Bankruptcy Cases, unless sooner terminated pursuant to the terms of the relevant agreement, a sublease to the Durant Facility to enable Buyer or one or more of its Affiliates to operate such facility prior to transitioning to a third party distribution center. The transition services agreement, and if applicable, the employee lease agreement, will

3

be on customary terms, including that (1) Seller shall pay Buyer and its Affiliates within 28 days after the end of each calendar month an amount equal to the allocable fully loaded cost to provide the services thereunder (with respect to employees, based on the percentage of such employee's time that is dedicated to providing such services), which shall include all (a) out-of-pocket expenses, costs, fees and taxes, (b) base salary and wages, pro-rated bonus, medical benefits, withholding taxes, load charges and all other employee, labor, Systems- and service-related and other expenses, costs, fees and taxes, as well as overhead, in each case of (a)-(b), incurred, paid or payable in connection with the provision of services, without markup, (2) the services will be provided to the Selling Entities in a manner consistent with the manner in which such services were performed by the Selling Entities and the Transferred Employees immediately prior to the Closing, (3) Buyer and its Affiliates shall not be liable for any damages arising in connection with the services, other than to the extent caused by Buyer's or its Affiliates' fraud, willful misconduct or gross negligence, (4) the transition services agreement and employee lease agreement (if applicable) will be coterminous, and such agreements may be terminated by Seller for convenience upon 14 days' notice to Buyer, and by Buyer if Seller fails to timely pay amounts due under either agreement and (5) Buyer shall pay Seller within 28 days after the end of each calendar month an amount equal to the allocable fully loaded cost to provide the services thereunder, which shall include all out-of-pocket expenses, costs, fees and taxes, incurred, paid or payable in connection with the provision of services, without markup, as well as the cost of the rent paid or payable for such calendar month for the Durant Facility.

*See*, APA §7.08(a).

12. The TSA has not been filed with the Court. However, based on the description included, the services outlined in the APA could include the use of Oracle's agreements.

13. Therefore, Oracle reserves all rights in the event this provision purports to authorize the shared use of Oracle's licensed software, whether post-closing, or at any other time.

14. On October 16, 2024, the Debtors filed the Assumption Notice which identifies numerous Oracle agreements between several Debtors and Oracle ("Oracle Agreements")[1]. One of the Oracle Agreements has a preliminary estimated cure amount of $76,744 (*See*, pg 55 of the Assumption Notice).

---

[1] Oracle is also identified in connection with Digital Mobile Innovations, LLC, Fundamental Security, LLC and KPMG, LLC. Oracle is in the process of reviewing its records to determine whether it has an interest in these contracts.

15. On October 30, 2024, the Debtors filed the *Notice of Successful Bidder for the Sale of the Debtors' Assets* [Dkt. No. 661] ("Notice").  The Notice identifies Gateway as the winning bidder.  Attached as Exhibit A to the Notice are certain amendments to the APA, which include the following:

> **Transition Services Agreement**: Debtors agree to provide TSA services Buyer reasonably requests at fully loaded cost (subject, for the avoidance of doubt, to the Debtors' ability to provide such services), including (a) certain employee benefits specified by Buyer until February 15, 2025 and (b) use of existing bank accounts to operate business for a reasonable period of time to permit orderly transition, if necessary (to be clear, Buyer would not be acquiring any cash that the Debtors are entitled to retain that is held in their bank accounts).

### III. ARGUMENT

#### A. The Debtors May Not Assume And Assign Oracle's Agreements Absent Oracle's Consent Because They Pertain To Licenses Of Intellectual Property.

16. Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

17. Federal law makes non-exclusive patent licenses non-assignable absent consent of the licensor.  *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *In re: West Elec., Inc.)* 852 *F. 2d 79 (3d Cir. 1988)* (holding that the "provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment."), *In re Trump Entm't Resorts,*

*Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

18. Oracle's agreements are, or pertain to, non-exclusive licenses of copyrighted software.

19. Therefore, pursuant to Bankruptcy Code section 365, the Debtors may not assume and assign any Oracle agreement without Oracle's consent.

20. For the reasons discussed herein, Oracle does not consent to the Debtors' proposed assumption and assignment of the Oracle Agreements at this time.

**B.  The Debtors Have Not Adequately Identified The Oracle Agreements To Be Assumed and Assigned.**

21. The Assumption Notice does not provide sufficient information for Oracle to determine which contracts are at issue.

22. Without more specific information, Oracle cannot determine whether it is evaluating the same agreements the Debtors seek to assume and assign.

23. In addition, the Assumption Notice does not identify either the support renewals, or in most instances, the governing license agreement. Because the support agreements and master agreements relate to the underlying license agreements as part of substantially the same transaction, they constitute integrated contracts which may not be separately assumed and assigned – if that is the Debtors' intent. *See, e.g., In re Interstate Bakeries Corporation*, 751 F.3d 955, 961-2 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008). An executory contract must be assumed in its entirety and "[c]orrespondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract."

*In re Taylor-Wharton Int'l LLC*, 2010 WL 4862723, at *3 (Bankr. D. Del. Nov. 23, 2010) (citing *In re Exide Tech.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006)).

24. Under California law,[2] made applicable by the Oracle Agreement, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642.

25. In order to clarify which Oracle contracts Debtors hope to assume and assign, Oracle requests that the Debtors specify the targeted contracts' (a) identification or contract number; (b) date; (c) associated support renewals; and (d) governing license agreement, if not already identified.

26. This information will enable Oracle to evaluate whether the Oracle Agreements are assignable, supported, expired, or in default, and, if in payment default, the appropriate cure amount.

27. Additionally, the information will allow Oracle to assess whether Oracle may accept performance from an entity other than the Debtors.

28. Oracle reserves its right to be heard on this issue until after the Oracle Agreements the Debtors seek to assume and assign are identified with greater specificity.

**C.  The Debtors May Not Have Provided The Correct Cure Amount.**

29. Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1).

30. The Debtors have identified a preliminary cure amount of $76,744 for one of the Oracle Agreements.

---

[2] *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB), 2013 WL 2663193, at *3 (Bankr. S.D.N.Y. June 13, 2013) ("State law governs the question whether an agreement is divisible or indivisible for the purposes of assumption and rejection under Bankruptcy Code § 365.")

31. However, since the Debtors have failed to provide a clear and complete description of the contracts they seek to assume and assign, Oracle is unable to determine whether the cure amount is accurate.

32. Oracle needs more information about which Oracle agreements may be assumed and assigned in order to confirm the correct cure amount.

33. Therefore, Oracle reserves its right to be heard further regarding the cure until after the contracts the Debtors seek to assume and assign are identified with enough specificity to allow Oracle to determine the corresponding cure amount.

**D.    The Debtors Have Not Provided Adequate Assurance of Future Performance For Gateway.**

34. Before assuming and assigning any executory contract, the Debtors must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1). As of the date of this Rights Reservation, no adequate assurance information regarding Gateway has been provided.

35. To satisfy Bankruptcy Code section 365(b), Oracle requests that the Debtors provide the following information: (a) financial bona fides; (b) confirmation that the purchaser is not an Oracle competitor; and (c) confirmation that the ultimate assignee will (i) execute an Oracle Assignment Agreement and related documentation which identifies with specificity the Oracle executory contract(s) to be assigned; and, if appropriate (ii) enter into an Oracle Master License Agreement.

36. Absent these assurances, Oracle cannot determine the proposed assignee's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform under the terms of the Oracle Agreements.

37. Until the information described above is provided, the Debtors have not complied with the requirements of section 365(b)(1)(C).

### E. The Oracle Agreements Do Not Authorize Simultaneous Use By The Debtors and Gateway.

38. The APA contemplates that certain transition services may be provided via a TSA. To date, neither a copy of the TSA nor its schedules have been filed with the Court. These omissions preclude Oracle from determining how, or if, its contracts will be affected.

39. Simultaneous use of, and access to, Oracle's licensed software may exceed the scope of the permitted uses under the Oracle Agreements. Such usage would potentially result in an unauthorized "splitting" of the licenses between the Debtors and Gateway.

40. Oracle objects to the extent that any transitional or shared use arrangement purports to grant to both the Debtors and to Gateway the right to shared use of the Oracle licenses beyond the licenses' terms. Oracle reserves all rights regarding any transitional use, pending Oracle's further review of the same.

## IV.  CONCLUSION

41.  For the reasons set forth above, Oracle respectfully requests that the Court deny the Debtors' request for authority to assume and assign, transfer or share use of the Oracle Agreements, or any Oracle agreement. Oracle reserves its right to be heard further on all issues set forth herein.

Dated: November 1, 2024  
Wilmington, Delaware

**MARGOLIS EDELSTEIN**

By:     /s/ James E. Huggett     
James E. Huggett, Esq. (#3956)  
300 Delaware Avenue, Suite 800  
Wilmington, Delaware 19801  
Telephone: (302) 888-1112  
E-mail: jhuggett@margolisedelstein.com

Amish R. Doshi, Esq.  
**DOSHI LEGAL GROUP, P.C.**  
1979 Marcus Avenue, Suite 210E  
Lake Success, NY 11042  
Tel: (516) 622-2335  
E-Mail: amish@doshilegal.com

Shawn M. Christianson, Esq.  
**BUCHALTER, A PROFESSIONAL CORPORATION**  
425 Market Street, Suite 2900  
San Francisco, California 94105-2491  
Tel: (415) 227-0900

Peggy Bruggman, Esq.  
Alice Miller, Esq.  
**ORACLE AMERICA, INC.**  
500 Oracle Parkway  
Redwood City, California 94065

**Attorneys for Oracle America, Inc.**