# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| BIG LOTS, INC., et al.[1], | ) | |
| Debtors | ) | Case No. 24-11967 (JKS) |
| | ) | |
| | ) | (Jointly Administered) |

## CONROAD ASSOCIATES, LP'S JOINDER IN MOTION TO COMPEL IMMEDIATE PAYMENT OF STUB RENT IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 503(b) AND JOINDER AND OBJECTION TO ORDERS FOR (I) STORE CLOSING PROCEDURES AND (II) POST PETITION FINANCING AND ORDERS AUTHORIZING THE DEBTORS TO (A) OBTAIN SENIOR SECURED SUPERPRIORITY POST-PETITION FINANCING AND (B) USE CASH COLLATERAL, ETC. and FILING ASSUMPTION AND ASSIGNMENT OBJECTIONS

NOW COMES Landlord Conroad Associates, LP ("Conroad" or "Landlord"), as owner and landlord of Big Lots Stores #251 and #260 (collectively the "Properties"), and the joinders and objections contained herein shall constitute an Assumption and Assignment Objection, Cure Objection, Adequate Assurance Objection, and Sale Objection, hereby makes the following objections, including those to which Conroad joins and to *Order (I) APPROVING BIDDING PROCEDURES* (DE 612) (filed by Big Lots, Inc. and each of its subsidiaries (collectively, the "Debtors") in the above-captioned jointly administered chapter 11 bankruptcy cases (the "Chapter 11 Cases"), and respectfully represents as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin Granville Road, Columbus, OH 43081.

## JOINDER

1. Conroad respectfully joins in the following Objections: Cicero 8148 LLC's Limited Objection to Assumption and Assignment of Lease and Notice of Proposed Cure Amounts for Certain Unexpired Leases (Docket No. 535); Grove Shops' Objection (Docket No. 400); Fifth Avenue Landlord's Motion to Compel (Docket No. 541); Certain Landlords Omnibus Limited Objection (Docket No. 385); Limited Objections of Multiple Landlords (Docket No. 527); Normandy Dayton Landlord's Motion to Compel Payment of Post-Petition Rent (Docket No. 540); Limited Objection of Schwartz Torrance Company, LLC to Proposed Assumption and Assignment of Lease (Docket No. 610); and hereby adopts the objections, authorities and arguments therein, to the extent not inconsistent with the positions of Conroad.

## LEASE

2. Landlord is the Owner and Lessor of the Properties leased to Debtors at 1612 N. State Street, Greenfield, Indiana (Store #251) and 204 Charleston Avenue East, Mattoon, Illinois (Store #260). The leases (the "Leases") are identified as Potential Assumed Contracts on the Schedule attached to Debtors' Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount , Initial Leases, to the Debtors' Motion to Reject Unexpired Leases, filed 10/16/24, (DE 511).

## JOINDER AND RESERVATION OF RIGHTS

3. Landlord also joins in any other Objections filed by any other landlords concerning Objections to Debtor's procedures regarding leases and to adequate assurance of future performance. Landlord reserves the right to supplement this limited Objection where it may be necessary or appropriate.

## OBJECTIONS

4. The Debtors listed a Preliminary Cure Amount of $17,786.00 for Store #251 and $8,955.00 for Store #260, which appears to represent the September, 2024 rent and no other costs or damages.

The Cure Amount, as known to the best of Landlord's knowledge and belief, for Store #251 should be at least $25,786.00 because an $8,000.00 Post-Petition lien has been filed against Landlord's property, which constitutes both a Pre-Petition and a Post-Petition default under the lease for Store #251. The lien and Debtors' failure to indemnify Landlord constitutes a past and continuing default under the Store #251 lease and needs to be cured prior to the assumption and assignment of the Store #251 lease. The face amount of the lien is stated to be $8,000.00, but satisfaction of the lien will include interest, attorneys fees, and costs. The Debtors are required to cure all non-monetary and/or unliquidated obligations under the Leases, including, without limitation, indemnification obligations. See 11 U.S.C Section 365(b)(2). The Cure Cost or Cure Amount set forth by Debtor is not in good faith, as Debtor knows of the outstanding post-petition lien, Debtor's indemnity, and Debtor's obligation to cure.

5. Debtors, assignees, or purchasers of the Leases are required to provide adequate assurances that unliquidated obligations (including, among other obligations, accrued property and other taxes) will be timely paid, even if unknown upon the assignment of the Leases. Debtor delivered to Conroad a two page document purporting to be an "Adequate Assurance Package" (the "Package"), purporting to demonstrate "the clear ability of Nexus to satisfy any and all obligations associated with the Assigned Contracts." Conroad objects and contends that Nexus Capital Management LP ("Nexus") has not provided Conroad with adequate assurance of its ability to perform, as required by the Bankruptcy Code, for the following reasons, among others: The Package states that the Leases can be assigned to any of BL RE Holdings, LLC ("Holdings"), Gateway BL Acquisitions, LLC ("Acquisitions"), a direct affiliate of either Holdings or Acquisitions, or a subsidiary of either of Holdings or Acquisitions (all referred to as "Nexus" in the Package); the Package refers to substantial loans, but fails to disclose any of the terms, duration, covenants, priorities, security, whatever associated with such loans; the Package includes a Balance Sheet, but does not identify which entity such Balance Sheet represents; the Package does not contain any Cash Flow Statements or Income Statements; the Balance Sheet includes "Property, Plant & Equipment, net" of $1.307B (which is grossly inflated, and cannot be supported by facts or sales of Big Lots leases at auction); without the $1.3B valuation of the "Property, Plant & Equipment," Nexus has no Shareholder Equity; with the $1.3B valuation of "Property, Plant & Equipment," Nexus has no Tangible Book Value; and, the footnote in the

Package states that the statements in the Package "may be subject to material change and revision." Most importantly, lease obligations are paid by Cash Flow and not a Balance Sheet - Nexus has provided no projections of Cash Flow. On April 18, 2024 Big Lots filed, with the Securities Exchange Commission, an audited financial statement that included a Balance Sheet showing Total Shareholders' Equity of $284M. Yet, mere months later Big Lots was unable to meet it financial obligations and was compelled to file a Chapter 11 Bankruptcy. The Package presented by Nexus projects Total Equity that is almost $90M (one-third) less than the amount Big Lots represented on April 18, 2024. The projected Nexus Shareholder Equity is substantially less than Big Lots. Big Lots August 3, 2024 Form 10-Q states that as of that date Big Lots had 1,389 stores and Nexus targets reducing the store count to approximately 800 - a 42% reduction. The Package's projected value of Inventory is $677M vs. the August 3, 2024 10-Q's value of $837M - a mere 19% reduction. Considering a bankrupt entity's challenges replenishing merchandise during bankruptcy, store closing discounts, the closing of stores, and closing of distribution centers, it is inconceivable that the store count could be reduced by 42% and the projected Inventory would be reduced by 19%. Additionally, a contributing factor to Big Lots insolvency is its Inventory Turnover Ratio - approximately 3.3 and too low to operate profitably. With starting Inventory of $677M on Sales likely reduced by 40%, the likely low Inventory Turnover Ratio would not support a profitable retail business. The August 4, 2024 Form 10-Q indicates that "Property and Equipment - net" was $473M vs. the Package's value of $1.3B. Considering property and equipment has been shed during the bankruptcy, it is inexplicable that Property and Equipment has grown by a factor of 3X. The Operating Lease Liability represented in the Package could be nearly $1.1B, down from $1.8B in the August 3, 2024 Form 10-Q - a nearly 40% reduction. So, Nexus has reduced liabilities proportionately with store reduction, but only reduced asset values by less than half as much. If the Package's "Property, Plant, and Equipment, net" value includes a "bonus" value for the Assumed Leases, the value is grossly overstated. Assuming the tangible asset component of Property, Plant, and Equipment is reduced by the roughly 40% reduction in store count (and the reduction should be greater because of the elimination of the Distribution Centers), the tangible component cannot be more than approximately $280M and the value attributed to the "bonus" value of leases is approximately $1.02B. With 800 surviving stores, the value attributable to each lease would be approximately $1.2M - a value unsupported by the auction of Big Lots leases. Of the roughly 600 stores being

closed by Big Lots, bids have only been received on less than 100 leases. Almost all of those leases have received only one (1) bid and the bid amount is equal to the Cure Cost (liability that must be satisfied in the sale of the lease). This means that there is no net value to these leases. There have been only a handful of leases that have received multiple bids or sold for more than the Cure Cost. Therefore, ascribing more than $1M in value to each and every lease that Nexus might assume stretches credulity. The Conroad Leases have terms of approximately five (5) years, yet the Package provides no information indicating or inferring how Nexus has a business plan, financing, or cash flow to pay lease obligations for the five (5) year terms of the Leases. By example, if the Nexus financings mature prior to the expiration of the terms of the Leases or if a default in any of the loan covenants were to occur prior to the expiration of the terms of the Leases, Nexus would be unable to satisfy any of the financial obligations under the Leases. The Bankruptcy Code entitles Conroad to receive adequate assurance of performance for the specific entity that the Leases will be assigned to - Nexus has failed to provide any of such information. The only financial statement contained in the Package appears to be a consolidated Balance Sheet, while the Package is clear that not all of the assets of Nexus will be owned by one entity. Furthermore, the Package provides no audited or independently verified financial information. Clearly, Debtor has not fulfilled its obligation to provide adequate assurance information relevant to the affected Counterparty no later than twenty-four (24) hours after the Bid Deadline, as required by Section 21 of Order Approving Bidding Procedures (D.I. 612).

6. The Debtors have not paid the Post-Petition rent for the month of September and Debtors' failure to pay the Post-Petition September rent constitutes a default under the Leases that continues today and might continue past the assignment of the Leases. The duty to pay rent and fulfill other obligations of the Leases (except those that might diminish the value of the bankruptcy estate) cannot be modified, abridged, or abrogated by Debtor's bankruptcy. The September rent is an administrative expense that must be paid, as all other Post-Petition administrative expenses that benefit the bankruptcy estates. Debtors failure to pay Post-Petition Stub Rent converts Landlord's priority claims under the Bankruptcy Code to a subordinated Post-Petition debt that allows Debtor to profit from the use of the Properties for the benefit of increasing the cash available for the Stalking Horse Bidder. Section 363(e) of the Bankruptcy Code requires adequate protection to any party with an interest in property used by the Debtor

during the bankruptcy proceedings. The only means of providing such assurance is to require the immediate payment of the Stub Rent. Section 365(d)(3) of the Bankruptcy Code requires landlords to receive timely payment for post-petition, pre-rejection use and occupancy of the Properties. Debtor's assertion that the September rent accrued on a pre-petition date and Debtor is not obligated to pay the Stub Rent in a timely fashion is a specious argument that is not supported by bankruptcy law. The timely payment of rent is particularly salient in this situation, where the Stalking Horse Bidder is attempting to use Landlord's unpaid rent as equity in its purchase of the Assets and has submitted proposed orders to the Court to absolve itself of liabilities in contravention of the Bankruptcy Code. Established bankruptcy law requires any assignee (whether Stalking Horse Bidder, buyer at auction, or other) of an assumed contract to agree to assume and satisfy all of the obligations under the executory contract (the Leases). Nexus' proposed orders before the Court attempt to absolve Nexus of pre-closing obligations and liabilities.

7. The Debtors are required to pay all property and other taxes associated with the Properties during the terms of the Leases. The property and other taxes are paid in arrears, might not yet be due and payable, or might not be knowable in amount. The Debtors have submitted proposed orders to the Court that attempt to absolve and free Debtors (as well as assignees of the Leases) from liability from unpaid, accrued, and not yet due property and other taxes. In the event the Debtors assign or sell the Leases, the assignees/purchasers of the Leases must remain liable for all accrued and unpaid property and other taxes, whether known or unknown, as well as all other obligations under the Leases. On November 12, 2024, a real estate payment of $17,070.34 is due and payable for Store #251. Debtor and assignee have represented that it intends to satisfy the payment of Store #251 real estate taxes due on November 12, 2024, but has not provided Conroad binding written assurance that such payment or other real estates taxes for periods prior to the assumption and assignment of the Leases will be timely made. The assumption and assignment of the Leases are anticipated to occur subsequent to November 12, 2024 and Debtor knows that the Cure Amount and Cure Cost might be greater than represented. Debtor continues to possess, occupy, control, and profit from the Properties, and real estate payments due are no different than any other occupancy expense (i.e. trash removal, utilities, rent, whatever) and the Bankruptcy Code requires all such expenses to be paid during Debtor's control of the Properties

and by the assignee subsequent to the assumption and assignment of the Leases. Debtor's statement of Cure Cost or Cure Amount is not in good faith, as it does not include the real estate tax payment that is due and will be unpaid upon the assumption and assignment of the Leases. The amount of such real estate taxes will include interest and penalties if such real estate tax payment is not made in a timely manner. The Debtors have argued before the Court that the Post-Petition September rent accrued on September 1, 2024 and Stub Rent for the period from the date of filing through the end of September is not required to be paid in the same manner as October and future rents that accrue during Debtor's occupancy of leased real estate. Debtor should be estopped from arguing before the Court that real estate tax payments due and payable during the tenure of Debtor's occupancy of Conroad's real estate is any different from rent, and Debtor must pay all such real estate tax bills, whether or not attributable to Pre-Petition period.

8. The Debtors continue to occupy, benefit from, operate, and profit from the Properties. The Debtors are required to comply with substantially all the terms, covenants, and conditions of the Leases, which would include, but are not be limited to, maintaining the Properties in good order and repair, complying with all building codes and local ordinances, as well as other covenants and conditions contained in the Leases.

9. The Bankruptcy Code requires the Debtors to cure all defaults under the Leases as of the date of assumption and assignment. Section 365(b)(1). Conroad objects to entry of an order approving or ratifying a sale of the Leases that does not (a) require that the full amount of the Cure Amount and Cure Costs under the Leases be paid at or prior to assumption and assignment of the Leases, (b) provide that any and all unliquidated and unknown covenants and obligations under the Leases that might have arisen or accrued at any time prior to the sale or assignment of the Leases, and (c) in any manner releases Debtors and/or the assignee/purchaser of the Leases from its continuing obligation to fulfill the terms, conditions, covenants, warranties, indemnifications, and obligations under the Leases. In the Assumption and Assignment Agreement filed with the Court on October 30, 2024 (D.I. 658), Debtor states that "All defaults or other obligations of Assignor subject to 11 U.S.C. 365(b) shall be cured by Assignor on or before the Closing Date or as soon thereafter as reasonably practicable (or as otherwise agreed with the counterparty to such Assigned Asset), and Assignee.... Assignee shall assume all obligations with respect to the Assigned Assets due from and after the Closing Date." It makes

no legal or logical sense that the sale/assignment of 800 Big Lots leases is any different than the sale/assignment of a single lease. As Debtor has admitted through the above referenced filing that all defaults and other obligations of Debtor must be cured by assignment of such lease, the Court should require such to be the case in the assignment of Conroad's Leases.

10. Bankruptcy courts have held that attorneys' fees incurred in the enforcement of obligations, covenants, and conditions of a lease are recoverable as part of a landlord's "pecuniary loss" under Bankruptcy Code section 365(b)1)(B) due upon the assumption and assignment of a lease if the underlying lease provides for them. Attorneys' fees incurred by Conroad in connection with the assumption and assignment of the Leases is due to Debtor's bad faith attempt to understate the Cure Amount and Cure Cost, and to avoid real estate tax and other expenses accruing prior to assumption and assignment of the Leases. Conroad reserves its right to supplement the objections contained herein to include the amount of attorneys' fees incurred by Conroad.

11. Nothing in this Objection shall be construed to waive or limit Conroad's rights under the Leases, Bankruptcy Code, or other law. Conroad reserves its rights to amend or supplement this Objection and make other objections to protect its interests and enforce its rights under the Leases.

## **CONCLUSION**

**WHEREFORE,** Landlord respectfully request the Court enter an order sustaining the objection; enter an order reflecting the correction in the Cure Amount be set forth in this Cure Objection; and, providing for adequate assurance for the Landlord that all past and future obligations under the Leases are assumed by the assignee/buyer of the Leases; and (2) granting Landlord such other and further relief as the Court deems just and proper.

Dated: October 31, 2024                              Respectfully Submitted,

Conroad Associates, L.P.

By:_____

Its: General Partner

<u>CERTIFICATE OF SERVICE</u>

I, Lloyd Abrams, do hereby certify that on October 31, 2024, a copy of the foregoing was emailed to the parties listed on the attached service list in the manner indicated.

_____

Lloyd Abrams

SALE OBJECTIONS PARTIES:

(i) proposed counsel to the Debtors, (y) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick, Esq., Adam L. Shpeen, Esq., Stephen D. Piraino, Esq., Jonah A. Peppiatt, Esq., and Ethan Stern, Esq. (notice.biglots@davispolk.com) and (z) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq., Andrew R. Remming, Esq., Daniel B. Butz, Esq., Tamara K. Mann, Esq., and Casey B. Sawyer, Esq. (biglots.mnat@morrisnichols.com), (ii) counsel to the ABL Agent, (y) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola, Esq. (jventola@choate.com), Jonathan D. Marshall, Esq. (jmarshall@choate.com), and Jacob S. Lang, Esq. (jslang@choate.com), and (z) Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn: Regina Stango Kelbon, Esq. (regina.kelbon@blankrome.com) and Stanley Tarr, Esq. (stanley.tarr@blankrome.com), (iii) counsel to the Term Agent, (y) Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Chad B. Simon, Esq.

(CSimon@otterbourg.com), James V. Drew, Esq. (JDrew@otterbourg.com), and Sarah L. Hautzinger, Esq. (shautzinger@otterbourg.com) and (z) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn: John H. Knight, Esq. (knight@rlf.com), (iv) proposed counsel to the Committee, (y) McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, NY 10017, Attn: Darren Azman, Esq. (dazman@mwe.com) and Kristin G. Going, Esq. (kgoing@mwe.com), and (z) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attn: Justin R. Alberto, Esq. (jalberto@coleschotz.com) and Stacy L. Newman, Esq. (snewman@coleschotz.com), (v) counsel to the Stalking Horse Bidder, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Christopher Marcus, P.C. (cmarcus@kirkland.com), Douglas A. Ryder, P.C. (douglas.ryder@kirkland.com), and Nicholas M. Adzima (nicholas.adzima@kirkland.com), and (vi) the U.S. Trustee, Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov) (collectively, the "Objection Notice Parties").

Align top of FedEx Express® shipping label here.

ORIGIN ID:MGCA  (314) 283-3937
KEVIN ABRAMS

40700 DESERT CREEK LN

RANCHO MIRAGE, CA 92270
UNITED STATES US

SHIP DATE: 31OCT24
ACTWGT: 0.20 LB
CAD: 6570784/ROSA2570

TO **USBC DISTRICT OF DELAWARE**

**824 MARKET STREET**
**3RD FLOOR**
**WILMINGTON DE 19801**
(302) 262-2900

INV:
PO:                          REF:
                             DEPT:



**FedEx**
Express

**E**

TRK# 7796 5153 5260
0201

FRI – 01 NOV 5:00P
**STANDARD OVERNIGHT**

**XS ZWIA**

19801
DE-US  **PHL**



# Envelope
# Recycle me.