# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,[1]<br><br>                  Debtors, | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 511, 683** |

## LIMITED OBJECTION OF DELL FINANCIAL SERVICES, L.L.C. TO NOTICES OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR <u>UNEXPIRED LEASES AND CURE AMOUNT</u>

Dell Financial Services, L.L.C. ("DFS"), by and through its undersigned counsel, files this Limited Objection (the "<u>Limited Objection</u>") to the two Notices of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount filed as D.I. 511 and D.I. 683, respectively,[2] and reserves its rights with regard to the proposed assumption and assignment of the DFS agreements. In support of the Limited Objection, DFS states as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Debtors have filed two Notices of Proposed Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure amounts that list DFS as a counterparty to contracts/leases for potential assumption and assignment, D.I. 511 and 683. Both notices list various agreements with DFS, with the difference being the proposed cure amount. This Limited Objection applies to both of the foregoing notices.

**BACKGROUND**

1. On September 9, 2024 (the "Petition Date"), Big Lots, Inc. and each of its subsidiaries (collectively, the "Debtor") commenced a bankruptcy case, by filing a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code. The Debtor is continuing to operate its business and manage its property as a debtor in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

2. Prior to the Petition Date, on May 2, 2023, the Debtor and DFS entered into Subscription Agreement No. 613856-86711 and seven (7) related schedules (collectively, the "Subscription Agreement"). Pursuant to the Subscription Agreement, DFS provides to the Debtor certain computers, servers, laptops, and related equipment (the "Equipment"), described more specifically and identified in the schedules (with their attachments) to the Subscription Agreement. Under the Subscription Agreement, Debtor was to make payments to DFS as required under the Subscription Agreement and the related schedules. The Debtor, however, failed to make required pre-petition payments. As of the Petition Date, Debtor owed DFS $1,279,002.39 for missed pre-petition payments under the Subscription Agreement.

3. The Debtor also entered into a Payment Plan Agreement with DFS, Agreement No. 011-9012176-001 ("License Agreement") for an Enterprise Software License Agreement. Debtor was required to make payments pursuant to the terms of the License Agreement. The Debtor, failed to make required pre-petition payments under the License Agreement. As of the Petition Date, Debtor owed DFS $219,040.49 for missed pre-petition payments under the License Agreement.

4. On September 9, 2024, the Debtor filed a motion with the Court seeking entry of an order, among other things, approving (a) procedures for the solicitation of bids in connection

with (i) the proposed sale of substantially all of the Debtors' assets to Gateway BL Acquisition, LLC for approximately $760 million consisting of $2.5 million in cash plus the Debt Payoff Amount (as defined in the Stalking Horse APA) and the assumption of certain liabilities, subject to the submission of higher or otherwise better offers, (ii) the Sale Transaction and (iii) the Auction, (b) the form and manner of notice related to the Sale Transaction, and (c) procedures for the assumption and assignment of Contracts and Leases in connection with the Sale Transaction (D.I. 18) (the "Sale Procedures Motion").

5.  On October 16, 2024, Debtor filed a Notice of Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount (D.I. 511) ("First Assumption and Cure Notice"). In the First Assumption and Cure Notice, the Debtor listed various agreements with DFS for potential assumption and identified a total cure amount of $1,579,676. However, the cure amount is provided with respect to an agreement generally identified as a "Customer Acceptance Form", the descriptions of the specific agreements do not adequately identify the contracts subject to assumption and cure, and all but the "Customer Acceptance Form" listed do not state a cure amount.

6.  On October 25, 2024, the Court entered its Order (I) Approving Bidding Procedure for Sale of the Debtors' Assets, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (IV) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (V) Approving Assumption and Assignment procedures, and (VI) Graning Related Relief (D.I. 612) (the "Sale Procedures Order").

7.  Thereafter, on October 31, 2024, the Debtor filed another Notice of Proposed Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure amounts (D.I. 683) ("Second Assumption and Cure Notice"). The Second Assumption and Cure Notice lists the

same DFS agreements set forth on the First Assumption and Cure Notice, and the Second Assumption and Cure Notice identified a total cure amount of $1,402,644.16, which is less than the amount set forth on the First Assumption and Cure Notice.  However, as was the case with the First Assumption and Cure Notice, the cure amount on the Second Assumption and Cure Notice is provided with respect to an agreement generally identified as a "Customer Acceptance Form", the descriptions of the specific agreements do not adequately identify the contracts subject to assumption and cure, and all but the "Customer Acceptance Form" listed do not state a cure amount.

## **LIMITED OBJECTION**

8. Section 365(b) of the Bankruptcy Code provides in pertinent part as follows:

(b)(1)  If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –

(A)  cures, or provides adequate assurance that the trustee will promptly cure, such default…

(B)  compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contact or lease.

11  U.S.C. § 365(b)(1).

### A. **The Notice of Potential Assumption and Assignment Does Not Sufficiently Identify the Potentially Assumed and Assigned Executory Contracts**

9. DFS does not object to the assumption and assignment of its agreements with the Debtor; however, further clarity is needed regarding the identification of the agreements subject to potential assumption and assignment and the cure amount to be paid.  In this regard, the Second Assumption and Cure Notice shows the following with respect to DFS agreements identified for potential assumption and cure:

4

| Big Lots, Inc. | Dell & Dell Financial Services | $ | 1,402,644.16 | Customer Acceptance Form | N/A |
| Big Lots, Inc. | Dell & Dell Financial Services | $ | - | Warranty & Returns Policy | N/A |
| Big Lots, Inc. | Dell Financial Services L.L.C. | $ | - | Payment Plan Agreement | N/A |
| Big Lots, Inc. | Dell Financial Services L.L.C. | $ | - | Payment Plan Agreement | N/A |
| Big Lots, Inc. | Dell Financial Services L.L.C. | $ | - | Subscription Agreement | N/A |
| Big Lots, Inc. | Dell Financial Services L.L.C. | $ | - | Subscription Agreement | N/A |
| Big Lots, Inc. | Dell Financial Services L.L.C. | $ | - | Subscription Agreement | N/A |
| Big Lots, Inc. | Dell Financial Services L.L.C. | $ | - | Technology Payment Solution | N/A |
| Big Lots Stores, LLC | Dell Financial Services L.L.C. (DFS) | $ | - | Payment Schedule | N/A |
| Big Lots Stores, LLC | Dell Financial Services L.L.C. (DFS) | $ | - | Payment Schedule | N/A |

10. Both the First and Second Assumption and Cure Notices generally describe DFS agreements that Debtor seeks to identify for potential assumption and assignment; however, based on these descriptions, it is unclear what agreements are identified for potential assumption and the cure amount. Further, with respect to the cure amount, although the Debtor appears to identify a contract identified as a "Customer Acceptance Form" and lists a cure amount for that document, it is unclear what this listed agreement consists of and how the cure relates to the other listed contracts, including the Subscription Agreement and the License Agreement, which do not reflect a cure amount.

11. The Debtor may not segregate the governing Subscription Agreement from the corresponding schedules and any associated payment schedules/agreements for purposes of assumption and assignment, if that is the Debtor's intention. *See In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008) (holding that where several agreements are economically interdependent, and the parties' course of dealing demonstrates that the deal was meant to be indivisible, the agreements comprised one integrated agreement that the debtor cannot sever in order to assume, assign, or reject individually). Indeed, a debtor seeking to assume a contract must do so *cum onere*, accepting both its benefits and burdens. *See In re Fleming*, 499 F.3d 300, 308 (3d Cir. 2007) ("Section 365(f) requires a debtor to assume a contract subject to the benefits and burdens thereunder"), citing *In re ANC Rental Corp.*, 277 B.R. 226, 238 (Bankr.D.Del. 2002) (holding that debtor may not assume only part of a contract but must assume the entire agreement).

5

"Should the debtor-in-possession elect to assume the executory contract…it assumes the contract *cum onere.*" *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984); citing *In re Italian Cook Oil Corp.,* 190 F.2d 994, 996 (CA3 1951).  As the Subscription Agreement is the governing agreement to which all schedules relate, any potential assumption and assignment must include the assumption and assignment of the entire Subscription Agreement, including each of the schedules thereto, and DFS is entitled to payment of the cure amount corresponding to all unpaid amounts due through the Petition Date, which is $1,279,002.39.  With respect to the License Agreement, DFS likewise is entitled to payment of the full cure amount in order to assume that agreement, which is $219,040.49 through the Petition Date.

12. In order to clarify the DFS contracts that are subject to potential assumption and assignment by the Debtor, DFS requests that the Debtor specify the targeted contracts' (1) name and date with the cure amount and (2) any associated schedules/agreements. This information will enable DFS to evaluate the specific contracts for potential assumption and the cure amount.

13. Moreover, to the extent, the Debtor attempts to sever the specific schedules from the Subscription Agreement, DFS objects on the basis that the Subscription Agreement and its related schedules constitute an indivisible agreement such that specific schedules and related documents under the Subscription Agreement cannot be severed and individually assumed or rejected.  The cure amount due under the Subscription Agreement, including with respect to the schedules, must be paid in connection with assumption and assignment.  Likewise, the cure amount due under the License Agreement also must be paid.

B. **The Debtor's Asserted Cure Amounts are Incorrect**

14. As discussed above, the Second Assumption and Cure Notice states a cure amount of $1,402,644.16 next to the designation for "Customer Acceptance Form."   No other cure amount

is provided with respect to any of the other agreements listed. As set forth above, the amount to cure the pre-petition payment defaults under the Subscription Agreement is $1,279,002.39. In addition, the amount to cure the pre-petition payment defaults under the License Agreement is $219,040.49. As a result, the amount to cure pre-petition payment defaults under the Subscription Agreement and the License Agreement totals $1,498,042.88, not $1,402,644.16 as set forth in the Second Assumption and Cure Notice next to the designation "Customer Acceptance Form." DFS, therefore, objects to the cure amount set forth in the Second Assumption and Cure Notice.[3]

15. As a final matter, it is noted that the cure amount owed under the Subscription Agreement and the License Agreement continues to accrue post-petition and is subject to adjustment based on the assumption and assignment date and the post-petition amounts due and owing as of such date. Therefore, DFS objects to the cure amount to the extent it does not include post-petition amounts that are unpaid and due and owing under the DFS agreements through the date of assumption and assignment.

## RESERVATION OF RIGHTS

16. DFS hereby reserves its rights to revise this objection and make such other and further objections as may be appropriate, including but not limited to, adjusting the cure amount and objecting to the assumption and assignment based on the lack of adequate assurance of future performance and any other grounds.

## CONCLUSION

17. For the reasons set forth above, DFS respectfully request that this Court (a) sustain this Limited Objection; (b) require that any order authorizing the assumption and assignment of

---

[3] The cure amount listed in the First Assumption and Cure Notice was also incorrect; however, in that notice, the amount listed was overstated.

the Subscription Agreement (with its related schedules) and the License Agreement affirmatively compel the Debtor to pay all amounts owing thereunder as set forth herein through the effective date of any such assumption and assignment, and (c) grant DFS such further relief as it deems proper.

Dated: November 4, 2024

        Respectfully submitted,

        **AUSTRIA LEGAL, LLC**

        */s/ Matthew P. Austria*
        Matthew P. Austria (No. 4827)
        1007 North Orange Street, 4th Floor
        Wilmington, DE 19801
        Telephone: (302) 521-5197
        Facsimile: (302) 291-1772
        Email: maustria@austriallc.com

        -and-

        **STREUSAND, LANDON, OZBURN & LEMMON, LLP**
        Sabrina L. Streusand
        G. James Landon
        1801 S. MoPac Expressway, Suite 320
        Austin, Texas 78746
        Telephone: (512) 236-9900
        Facsimile: (512) 236-9904
        Email: streusand@slollp.com
        Email: landon@slollp.com

        *Attorneys for Dell Financial Services L.L.C.*