**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Big Lots, Inc., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |

**BLUE OWL CAPITAL LLC'S EMERGENCY MOTION TO EXTEND CHALLENGE PERIOD AND REMOVE BLANKET "PROFESSIONAL EYES ONLY" DESIGNATION FROM PRODUCTIONS OR, IN THE ALTERNATIVE, APPOINT AN EXAMINER**

Blue Owl Real Estate Capital LLC ("***Blue Owl***"),[2] the Debtors' largest unsecured creditor and chair of the Official Committee of Unsecured Creditors (the "***Committee***"), hereby files this motion (the "***Motion***") for entry of an Order substantially in the form attached hereto as Exhibit A, (a) extending the Challenge Deadline in the Final DIP Order[3] for a period of fifteen (15) days from the current Challenge Deadline, *i.e.*, from November 7, 2024 at 12:00 p.m. (ET), to November 22, 2024 at 12:00 p.m. (ET), and ordering that the blanket "Professional Eyes Only" designation be removed from all productions to the Committee, or, in the alternative, (b) appointing

---

[1] The debtors and debtors in possession in these chapter 11 cases (the "***Debtors***"), along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. DublinGranville Road, Columbus, OH 43081.

[2] The affiliates of Blue Owl Real Estate Capital, LLC involved in these Chapter 11 Cases are as follows: BIG AVCA Owner LLC, BIG BCLA Owner LLC, BIG CSCO Owner LLC, BIG FBTX Owner LLC, BIG FRCA Owner LLC, BIG LACA Owner LLC, BIG LCNM Owner LLC, BIG LOCA Owner LLC, BIG SATX Owner LLC, BIG TAMI Owner LLC, BIG VICA Owner LLC, BIG YVCA Owner LLC, BIGCOOH002 LLC, BIGMOAL001 LLC, BIGDUOK001 LLC, and BIGTRPA001 LLC.

[3] *Final Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364, 503, 506, 507, and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection to Prepetition Secured Creditors, (III) Modifying Automatic Stay, and (IV) Granting Related Relief*, entered on October 22, 2024 (D.I. 584) (the "***Final DIP Order***"). Capitalized terms used but not defined herein have the meanings ascribed to them in the Final DIP Order.

an examiner under 11 U.S.C. § 1104 in order to conduct the investigation that the Committee has been hindered to conduct. In support of this Motion, Blue Owl respectfully states as follows:

**PRELIMINARY STATEMENT[4]**

1. Blue Owl—a member of the Committee and the largest unsecured creditor in these cases—requests a modest extension to the Challenge Deadline to ensure that potentially valuable claims and causes of action against the Debtors' multifaceted secured creditors are not extinguished for zero value. Blue Owl's request is critical: as a result of the failure of the Debtors and their secured creditors to timely produce discovery, the Committee has not been able to fully perform its investigatory mandate on the truncated timeline provided in the Final DIP Order, and the Debtors are positioned to offer unsecured creditors (and the estate for which they serve as a proxy) little to no recovery.

2. Fortunately, the Final DIP Order provides for an extension of the Challenge Deadline for good cause shown. Good cause clearly exists here, as reflected in the following:

   a. Notwithstanding the fact that the Committee served discovery on the Debtors and the Secured Lenders (defined below) on October 17 and October 18, 2024—four days prior to entry of the Final DIP Order—*not one document had been produced as of October 26, 2024*.

   b. As of October 30, 2024, every single document produced to the Committee had been designated as "Professional Eyes Only," in blanket fashion, such that only the professionals retained by the Committee—not the actual members of the Committee or their professionals—could review the produced materials.

   c. On October 30, 2024 the Debtors (*but not the Secured Lenders*) agreed to allow Blue Owl's professionals (but not Blue Owl itself—the actual Committee member) to review the Debtors' production. Thus, as of the date hereof, not one Committee member has been able to review a single page of the materials produced by the Debtors.

   d. The Secured Lenders' agent, 1903P Loan Agent, LLC, produced to the Committee counsel merely 1,672 documents. But all of these documents have been also

---

[4] Capitalized terms used but not defined in the Preliminary Statement have the meanings ascribed to them below.

    designated as Professional Eyes Only and, thus, not shared with the Committee members or Blue Owl's professionals.

   e. On November 1, 2024—less than one week ahead of the Challenge Deadline—PNC Bank, N.A. produced to the Committee counsel 1,939 documents, all on Professional Eyes Only basis. PNC subsequently agreed to allow Blue Owl's professionals (but not Blue Owl itself—the actual Committee member) to review PNC's production. Thus, as of the date hereof, not one Committee member has been able to review a single page of the materials produced by PNC.

   f. As late as November 2, 2024, Gordon Brothers Retail Partners, LLC (together with its affiliates, "**Gordon Brothers**") had not produced one document to the Committee. On November 3, 2024—four days ahead of the Challenge Deadline—Gordon Brothers had produced to the Committee counsel all of *thirteen (13) documents*, again entirely designated Professional Eyes Only, stating that its production would come towards the "middle of the week," *i.e., **no sooner than the day before the Challenge Deadline***. The 13 documents have not been shared with the Committee members or Blue Owl's professionals either.

   g. As a result of the untimely production of documents, neither the Committee nor Blue Owl nor any other Committee Member is able to conduct depositions before the threatened expiry of the current Challenge Period.

   3.    The Committee has the power and the duty to investigate estate claims and causes of action under 11 U.S.C § 1103. Under Bankruptcy Local Rules, the Committee is entitled to 75 days from the entry of an interim DIP order to investigate claims against secured creditors. *See* Bankr. L.R. 4001-2(a)(i)(Q). During the First Day hearing, the Court stated that a Challenge Deadline shorter than 75 days "is not consistent with our [L]ocal [R]ules" and "if a [C]ommittee comes in here and they ask for the Local Rule, that's what they're going to get." Sept. 10, 2024 Hr'g Tr. at 110:16-17, 119:24-120:1. When the Committee accepted the remarkably short Challenge Period, it expressly relied on the premise "that the company, its advisors, as well as the lenders, will be responsive to various discovery requests, if the committee needs, *in an expedited fashion to allow the committee to do this work on an expedited basis*." Oct. 21, 2024 Hr'g Tr. at 112:15-113:3 (emphasis added). Unfortunately, this has not occurred. No documents were produced as of October 26, 2024 and, as late as October 31 (one week prior to the looming Challenge Deadline),

many parties still had not produced anything, including PNC and Gordon Brothers. As of November 3, 2024 (four days before the Challenge Deadline), Gordon Brothers produced a mere 13 documents. It is simply impossible, given this discovery record, for the Committee to conduct its critical investigation. Good cause exists.

4.  Moreover, even assuming *arguendo* that the current production were timely in view of the November 7, 2024 deadline (it was not), the absurd, blanket "Professional Eyes Only" designations imposed by every single one of the producing parties prevent the Committee members from serving their all-important function. Under the Bankruptcy Code, the United States Trustee ("**U.S. Trustee**") appoints to the Committee "creditors holding unsecured claims." 11 U.S.C. § 1102. It is those creditors who are charged with the fiduciary duty to seek to maximize returns to unsecured creditors. It is inappropriate—neither contemplated by the U.S. Trustee nor Congress—for the producing parties to seek to place the Committee's charge solely on its retained professionals, while seeking to keep the members themselves in the dark.

5.  The facts of this case reflect the critical nature of the relief requested. The Secured Lenders wear a stunning plurality of hats. And, as the Court perceived at the October 21 hearing, there is cause for great concern. The Secured Lenders act not only as secured lenders, DIP lenders, and unsecured creditors, but also as liquidators (that work hand in hand with, and serve as *de facto*, management), auctioneers, bidders, and vendors to the Debtors at the same time. The amount of control that the Secured Lenders were able to exercise over the Debtors—all solely for their own pecuniary benefit—cannot be understated. For example, the Term Loan Facility entered into on April 19, 2024, just five months before the Debtors' bankruptcy filing, mandates that the Debtors must use the Secured Lenders as store liquidators exclusively (removing any power of the Debtors' board to select another service provider), and in that short time since the execution of the Term

Loan, the store liquidation activity markedly increased *tenfold*. And even now in bankruptcy, Gordon Brothers continues to be intimately involved in the liquidation process, has direct input and control regarding staffing decision of the Debtors, and essentially runs the going-out-of-business sale processes, serving as a "liquidator in possession."

6. Given this dynamic, in a case that is currently forecasting little to no distributions to unsecured creditors—and that is otherwise being run merely to administer the Secured Lenders' collateral—the investigation must be given life, and valuable claims and causes of action must not be allowed to be, effectively, abandoned.

7. For all of these reasons, good cause exists and Blue Owl requests that the Court order (i) the extension of the Challenge Deadline by fifteen (15) days until November 22, 2024 at 12:00 p.m. (ET), and (ii) the removal of the "Professional Eyes Only" designation.

8. In the alternative, if the Debtors and the Secured Lenders will not allow the Committee to serve its function, Blue Owl, in furtherance of its fiduciary duties, requests the appointment of an examiner under 11 U.S.C. § 1104 and *In re FTX Trading Ltd.*, 91 F.4th 148 (3d Cir. 2024), so that the investigation that the Committee has been precluded from conducting may take place at the hands of, and pursuant to the powers of, an independent examiner.

## JURISDICTION AND VENUE

9. The Court has jurisdiction to consider this Motion under 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

10. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

11. The legal bases for the relief requested herein are Bankruptcy Code sections 105(a), 1103, and 1104, Bankruptcy Rule 9006, and 9006-2 of the Bankruptcy Local Rules.

**RELIEF REQUESTED**

12. By this Motion, Blue Owl requests that the Court extend the Challenge Deadline by fifteen (15) days to November 22, 2024 at 12:00 p.m. (ET), so that Blue Owl and the Committee may have an opportunity to properly investigate claims and causes of action against the Secured Lenders.

13. Blue Owl further requests that the Court order the removal of the blanket "Professional Eyes Only" designation from documents produced by the Debtors, the Term Loan Agent (defined below), PNC Bank, N.A., and GBRP (defined below).

14. In the alternative, if the Debtors and the Secured Lenders will not allow the Committee to serve its function, Blue Owl moves for the appointment of an examiner under 11 U.S.C. § 1104 and *FTX Trading*, so that the investigation that the Committee is precluded from conducting can take place at the hands of, and pursuant to the powers of, an examiner.

**BACKGROUND**

I. **The Debtor's Bankruptcy Filing And The Final DIP Order**

15. On September 9, 2024 (the "*Petition Date*"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the District of Delaware (the "*Court*") and, thereby, commenced their individual chapter 11 cases (collectively, the "*Chapter 11 Cases*").

16. These Chapter 11 Cases are jointly administered for procedural purposes only. The Debtors continue to operate their businesses as debtors-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

17. On September 23, 2024, Joseph J. McMahon, Assistant United States Trustee for the District of Delaware, appointed the members of the Committee in these Chapter 11 Cases, including Blue Owl. Blue Owl has been elected the Chair of the Committee. Shortly thereafter, the Committee selected McDermott Will & Emery LLP to serve as its counsel, Cole Schotz P.C. to serve as its special real estate counsel, efficiency counsel, and Delaware counsel, and FTI Consulting, Inc. to serve as its financial advisor.

18. On October 22, 2024, the Court entered the Final DIP Order.

19. On October 30, 2024, the Debtors announced that the auction for the sale of Debtors' assets was cancelled because only one qualifying bid was received by the Debtors. A hearing to approve the sale is set for November 12, 2024.

## II. Blue Owl Is The Largest Unsecured Creditor

20. Blue Owl is by far the Debtors' largest unsecured creditor and is owed well over $100 million pursuant to leases the Debtors entered into with certain Blue Owl entities as part of a sale-lease back transaction between the Debtors and Blue Owl.[5]

## III. The Final DIP Order And Challenge Period

21. Section F(ix) of the Final DIP Order provides comprehensive releases for the Secured Lenders, subject to the timely commencement of a Challenge prior to the Challenge Deadline. *See* Final DIP Order § F(ix); ¶ 42.

22. The Final DIP Order set November 7, 2024 as the Challenge Deadline. *See* Final DIP Order ¶ 42 ("[A]ny person or any party-in-interest (including the Committee) that has sought and obtained standing and the requisite authority to commence a Challenge (other than the

---

[5] *See Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings Filed By Big Lots, Inc.* (D.I. 3) ("**First Day Decl.**") ¶ 44.

Debtors . . .) and has timely commenced a Challenge prior to November 7, 2024 at 12:00 p.m. (ET) (the 'Challenge Deadline') . . . .").

23. The Final DIP Order further provides that the Challenge Deadline may be extended "by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline." *Id*.

### IV. The Secured Lenders' Numerous Relationships With The Debtors

24. The Debtors are party to a term loan facility, dated April 18, 2024, (the "***Term Loan Facility***") with 1903P Loan Agent, LLC, as administrative agent and collateral agent (the "***Term Loan Agent***"), and certain secured lenders identified therein. *See* First Day Decl. ¶ 25.

25. Among the lenders under the Term Loan Facility are 1903 Partners, LLC, Tiger Finance, LLC, and ReStore Capital (BIG), LLC (together, the "***Term Lenders***"), who together hold a majority of the outstanding term loans.

26. PNC Bank, N.A. is the administrative agent under the prepetition ABL Facility (PNC Bank, N.A. together with the Term Lenders, the "***Secured Lenders***").

27. The Secured Lenders are also lenders under the Debtors' senior secured superpriority debtor-in-possession term loan agreement ("***DIP Agreement***") dated as of September 11, 2024.[6] Under the DIP Agreement, the Term Loan Agent and PNC Bank are the DIP Agents.

---

[6] *See* Oct 21, 2024 Hr'g Tr. 37:17-19. *Declaration of Joseph Malfitano In Support of Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Assume the Services Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* ("***GBRP Decl.***") (D.I. 257 at Schedule 2); *Declaration of Mark P. Naughton in Support of Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors To Assume the Services Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* ("***Tiger Decl.***") (D.I. 259 at Schedule 2); *Declaration of Eric W. Kaup in Support of Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors To Assume the Services Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* ("***Hilco Decl.***") (D.I. 258 at Schedule 2).

28.     1903 Partners, LLC is an affiliate of (i) the Term Loan Agent, (ii) the Debtors' liquidator and bidder Gordon Brothers Retail Partners, LLC ("**GBRP**"),[7] and (iii) Gordon Brothers Commercial & Industrial, LLC a vendor that holds a claim against the Debtors.[8]

29.     Tiger Finance, LLC is an affiliate of the Debtors' liquidator Tiger Capital Group, LLC and appraiser Tiger Valuation Services, LLC.[9] ReStore Capital (BIG), LLC is an affiliate of the Debtors' liquidator Hilco Merchant Resources, LLC and vendor Hilco Wholesale Solutions, LLC.[10]

30.     The numerous roles that these entities play with respect to the Debtors and the potential impact on the Debtors' reorganization efforts and creditor recoveries have already raised concerns by the U.S. Trustee serving as estate watchdog.[11] And the very limited evidence adduced in these Chapter 11 Cases to date suggests that these Secured Lenders may have (and may continue to) use their stranglehold on the Debtors' business to exercise dominion and control over the Debtors, *see Basho Techs. Holdco B, LLC v. Georgetown Basho Invs., LLC*, Case No. CV 11802-VCL, 2018 WL 3326693, at *26 (Del. Ch. July 6, 2018) (lender liability is found "when a lender exercises influence over a company that goes beyond the domain of the usual money lender and, while doing so, acts negligently or in bad faith" (cleaned up) (citations omitted)), *aff'd sub nom.*

---

[7] *See* GBRP Decl. at Schedule 2.

[8] *Id.*; Oct 21, 2024 Hr'g Tr. 38 ("Q. Are any of the -- let me just ask it individually. Does an affiliate of Gordon Brothers also act as a vendor for the debtors? A. Yes. Q. Do they hold a pre-petition unsecured claim as a result of that relationship? A. They do have a pre-petition claim, which I believe is 503(b)(9). Q. 100 percent of it is 503(b)(9)? A. I believe the outstanding amount is, yes.")

[9] Tiger Decl. at Schedule 2.

[10] Hilco Decl. at Schedule 2.

[11] *See e.g.*, *Objection United States Trustees Objection to Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Assume the Services Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* (D.I. 503).

*Davenport v. Basho Techs. Holdco B, LLC*, 221 A.3d 100 (Del. 2019), to enrich themselves to the detriment of the Debtors and their estates:

- GBRP, Tiger Capital Group, LLC, and Hilco Merchant Resources, LLC are all syndication partners with each other that are, and have been, working together to "provid[e] store closing services for the Debtors."[12]

- The Term Loan Facility *requires* the Debtors to use GBRP for the store liquidations going forward.[13]

- The Debtors' store closure activity increased markedly after the Term Loan Facility was executed—the Debtors closed "approximately 50" stores in the twelve months preceding the Term Loan Facility, and "about 550 stores" in the few months since.[14]

- GBRP is intimately involved in, and profits from, the liquidation process.[15]

- GBRP runs the going-out-of-business sale processes: the Debtors' management consistently defers to their recommendations and, in fact, has never disagreed with GBPR's positions.[16]

- The Term Lenders obtained the ability to engage in liquidation activities that would otherwise violate existing law, including the ability to "put additional goods that they own into those store selling sales."[17]

- GBRP controls staffing decisions at liquidating stores.[18]

---

[12] GBRP Decl. at Schedule 2; Tiger Decl. at Schedule 2; Hilco Decl. at Schedule 2.

[13] *See* Oct. 21, 2024 Hr'g Tr. 21:15-18 ("The appointment was also made in connection with the execution of the final term loan with Gordon Brothers, which required us to use them for the store liquidations going forward."); *id*. at 38:3-7 ("[A] term of the—condition of closing on that FILO loan was that the Gordon Brothers became the exclusive consultant to conduct these going-out-of-business sales; is that correct?  A. That was a provision of the updated MSA, yes.").

[14] *Id.* at 29:9; 22:7.

[15] *Id.* at 20:11-15.

[16] *Id.* at 23:9-12 (Gordon Brothers are "helping to devise strategy . . . with regard to the store closures"); *id*. at 31:4-5 ("Typically [we] would accept those recommendations [from the liquidators]."); *id*. at 33:7-10 ("Have you not accepted any of their recommendations on advertising in the Big Lots sales? A. I'm not aware I was not agreeing with their recommendation.").

[17] *Id.* at 29:18-25.

[18] *Id.* at 24:8-11 ("Does Gordon Brothers have authority to make any decisions with respect to staffing levels at the Big Lots stores? A. They would be involved in consultation on that."); i*d*. at 34:22-35:3 ("[At a] certain point in time, the staffing needs of that store will evolve to reflect the lower level of inventory in the store and so on. So Gordon Brothers will have input into that, and they'll work closely with our store management team, our district management team, to make any adjustments to the store payroll that are appropriate to the current situation at the store.").

- Pursuant to an amendment to the MSA that was executed around the time of the Term Loan Facility, GBRP has obtained the right to auction off FF&E, and obtain additional compensation for doing so.[19]

- The proposed bidding procedures grant the Secured Lenders the ability to credit bid for the assets, and Blue Owl understands that at least one Secured Lender was a participant in the bidding process.[20]

31.     As the U.S. Trustee succinctly put it during the October 21, 2024 hearing, the Secured Lenders simply occupy "too many roles to say they are . . . capable of acting in the best interest of the creditors."[21]

## V.  The Secured Lenders And The Debtors Impede The Committee's Ability To Conduct An Investigation Within The Challenge Period

32.     Notwithstanding the clear indication that a full investigation into claims against the Secured Lenders is warranted, the Final DIP Order, which was entered on October 22, 2024, provides releases for the Secured Lenders, subject only to the Challenge Period, which is set to expire on November 7, 2024.[22]  The propriety of such releases, therefore, depends solely on the ability of the Committee to conduct an investigation on behalf of all unsecured creditors and to bless that no wrongdoing occurred.  To that end, on October 18, 2024—even before the Final DIP

---

[19] *Id.* 35:17-36:3 ("[T]his is the Amendment Number 1, that was effective as of April 18th, 2024, and I'm quoting, 'If applicable, any auctioneer may be paid as additional compensation by means of an industry standard buyer's premium added to the gavel price of any sold off FF&E via online auction and collected from the buyers thereof.' Is it your understanding that the consultant has the right to retain an auctioneer to auction off some of the . . . FF&E?  A.  Yes, again, that would only be . . . applicable to the FF&E").

[20] *See id.* 39:11-16.

[21] *Id.* 48:12-14; *see also id.* at 48:6-12 (noting that the Secured Lenders "ha[ve] secured claims, administrative priority claims, and general unsecured claims, and are in control of the sale of the assets and the maximizing of the value of the assets, and potentially could come in and purchase the assets through a credit bid or otherwise").

[22] *See* Final DIP Order ¶ 42; Oct. 21, 2024 Hr'g Tr. at 44:11-19 ("Gordon Brothers is an affiliate of 1903P, which you have heard today, and the DIP order that you're going to be asked to approve later today, paragraph 42, and specifically, footnote 6 defines a challenge as 'asserting or prosecuting any avoidance, action or any other claims, counterclaims or causes of actions, objections, contests or defenses against any creditors or' importantly, 'their respective subsidiaries, affiliates, officers, directors', and the list goes on.").

Order was entered—the Committee served discovery requests on (i) the Debtors, (ii) GBRP, (iii) the Term Loan Agent, and (iv) PNC Bank, N.A.

33. Nothing was produced until October 26, 2024, when the Debtors made an initial production of documents to the Committee's counsel. In all, the Debtors have produced a total of 8,915 documents but all such documents were, until recently, designated "Professional Eyes Only." It was only on October 30, 2024 that the Debtors agreed to allow Blue Owl's professionals (but not Blue Owl, or any other Committee member) to review the Debtors' production. Thus, as of the date hereof, not one Committee member has been able to review a single page of the 8,915 produced documents.

34. As to the Secured Lenders: the Term Loan Agent has thus far produced only 1,672 documents to Committee counsel. Like the Debtors' documents, this production was also designated—without discrimination—"Professional Eyes Only." Notwithstanding Blue Owl's requests to lift the "Professional Eyes Only" designation, the Term Loan Agent has refused to allow the Committee members or Blue Owl (or even their professionals) to review these materials.

35. On November 1, 2024, less than one week from the Challenge Deadline, PNC Bank, N.A. produced 1,939 documents. Like the Term Loan Agent's documents, PNC Bank's production was also blanket-designated "Professional Eyes Only." PNC subsequently agreed to allow Blue Owl's professionals (but not Blue Owl itself—the actual Committee member) to review PNC's production. Thus, as of the date hereof, not one Committee member has been able to review any of the 1,939 documents produced by PNC.

36. Finally, as late as November 3, 2024, four days from the Challenge Deadline, GBRP has produced a mere thirteen (13) documents. GBRP further informed the Committee counsel that in addition to the 13 "sample documents," it would produce more documents towards the "middle

of the week." Assuming the "middle of the week" to mean Wednesday, November 6, or Thursday, November 7, 2024, GBRP effectively informed the Committee counsel that it would produce requested documents the day before or on the day of the Challenge Deadline, with the Challenge Deadline set for Thursday, November 7, 2024, at 12 p.m. (ET). To make things worse, even the 13 produced documents were designated Professional Eyes Only, and have thus not been shared with the Committee members or Blue Owl's professionals.

37.     On October 29, 2024, upon assessing the discovery deficiencies discussed herein, Blue Owl requested a two-week extension of the Challenge Deadline from the Debtors and the Secured Lenders. No party responded, each of them implicitly rejecting the request.

## ARGUMENT

### I.     Cause Exists To Extend The Challenge Deadline

38.     The Final DIP Order, consistent with Bankruptcy Rule 9006, provides that the Challenge Deadline "may be extended . . . by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline." Final DIP Order ¶ 42.[23] In general, "cause" is found where there is some justification for the relief requested. *See In re Wooten*, 620 B.R. 351, 358 (Bankr. D.N.M. 2020). "Because there is no clear definition of what constitutes 'cause,' discretionary relief . . . must be determined on a case by case basis." *Id.* (citations omitted); *see also In re Cripps,* 549 B.R. 836, 858 (Bankr. W.D. Mich. 2016)

---

[23]  Pursuant to Local Rule 9006-2, the filing of the Motion prior to the expiration of the current Challenge Deadline automatically extends the deadline until the Court acts on the Motion, without the necessity for the entry of a bridge order.

(finding that "cause" should be determined on a case-by-case basis), *aff'd*, 566 B.R. 172 (W.D. Mich. 2017).

39. Blue Owl respectfully submits that there is good cause and justification to extend the Challenge Deadline from November 7, 2024 through and including November 22, 2024.

40. While the Committee did not object to the Final DIP order and agreed that the initial Challenge Deadline would be set for November 7, 2024 (only 16 days from the entry of the Final DIP Order), that agreement was expressly conditioned on the full cooperation of the responding parties. *See* Oct. 21, 2024 Hr'g Tr. at 112:15-113:3 ("The committee did agree to a shortened challenge period here. That, of course, presumes that the company, its advisors, as well as the lenders, will be responsive to various discovery requests, if the committee needs, in an expedited fashion to allow the committee to do this work on an expedited basis."). Which is why the DIP Order expressly provided that the Challenge Deadline may be extended for cause.

41. Unfortunately, despite the Committee's best efforts, the discovery process has been a far cry from what the Committee expected at the October 21 hearing.

42. *As to the Debtors*: while the Committee first served its Requests for Production to the Debtors on October 17, 2024 (D.I. 599), it did not receive documents from the Debtors—8,915 of them—until October 26. Crucially, as described above, all these documents were marked with a blanket "Professional Eyes Only" designation, making them available for review ***only by counsel to the Committee***. Needless to say, this made it impossible for the Committee members or their individual counsel to review or evaluate such documents for responsiveness and deficiencies or for potential causes of action. Only after a demand by Blue Owl's counsel, the Debtors agreed, on

October 30, 2024, to allow counsel, ***and only counsel***, for Blue Owl to review the documents.[24] Given the looming Challenge Deadline, that left Blue Owl professionals a mere eight (8) days (including the weekend) to review the Debtors' production of 8,915 documents, assess that production for any deficiencies, and analyze the documents for any claims the estate may have against the Secured Lenders, not to mention scheduling and preparing for depositions of key witnesses as warranted.

43.  It gets worse when it comes to the Committee's requests to the Secured Lenders. As of November 3, 2024, the Term Loan Agent produced to Committee counsel 1,672 documents. But again, each of these documents have been designated as "Professional Eyes Only" and not shared with the Committee members or Blue Owl's professionals for evaluation of any potential causes of action or even deficiencies in the production. To date, despite Blue Owl's formal requests to the remove the "Professional Eyes Only" designation, the members of the Committee, each of whom has a fiduciary duty to evaluate and pursue claims to maximize value to the estate, have not been able to review even one document produced by the Term Loan Agent. And the Term Loan Agent has not even agreed to make these documents available to the Committee members' counsel, making it impossible to evaluate whether further inquiry is required, including whether the Term Loan Agent has produced documents from relevant Gordon Brothers entities (whose multiple roles vis-à-vis the Debtors have already raised red flags in this process) or whether and when key members of these organizations should be deposed.

44.  Only on November 1, 2024, less than a week before the Challenge Deadline, PNC Bank, N.A. produced to Committee counsel 1,939 documents. Again, all of these documents have

---

[24] Blue Owl itself, as a Committee member, is still prohibited from viewing any documents designated Professional Eyes Only. The same is true for the other Committee members. Moreover, to Blue Owl's knowledge, even counsel to the other Committee members has not been allowed access.

been designated as "Professional Eyes Only." Subsequently, PNC agreed to allow Blue Owl's professionals (but not Blue Owl itself—the actual Committee member) to review PNC's production. Thus, as of the date hereof, not one Committee member has been able to review a single page of the materials produced by PNC.

45. Finally, as late as November 3, 2024, four days from the Challenge Deadline, GBRP has produced a mere ***thirteen (13) documents***, also designated Professional Eyes Only, and thus not to be shared with the Committee members or Blue Owl's professionals.

46. GBRP characterized the thirteen-document production as "sample documents" and tentatively advised the Committee counsel that GBRP would produce the balance of documents towards the "middle of the week." GBRP has thus effectively informed the Committee counsel that it intended to produce requested documents the day before or on the day of the Challenge Deadline, which was set by the Final DIP Order for Thursday, November 7, 2024, at 12 p.m. (ET). This is simply unacceptable.

47. In light of the foregoing, there can be little question that cause exists to extend the Challenge Deadline and remove the oppressive "Professional Eyes Only" designation that has thus far handcuffed the Committee and prevented its members from fulfilling their duties. Such an extension is necessary for Blue Owl and the Committee to obtain relevant documents, complete its review of such documents, conduct depositions, and determine whether there are valuable claims against the Secured Lenders that could and should be pursued for the benefit of unsecured creditors, who otherwise stand to receive no recovery in these Chapter 11 Cases.

48. This is especially true in light of the fact that the Secured Lenders have a remarkable level of control over the Debtors and profit from wearing a remarkable number of hats in these Chapter 11 Cases. There is no question that this level of influence and control warrants a thorough

and complete review of the implications of this relationship, and whether any of the Secured Lenders' self-interested actions should be subject to claims by the estate. That is the ultimate purpose of the Committee's and its members' mandate. The Debtors' and the Secured Lenders' incalcitrant conduct cannot be ignored and cannot be allowed to handcuff the Committee here.

49. At bottom, releases to the Secured Lenders are wholly inappropriate and should not be granted until the Committee and its members are able to conduct a full and thorough investigation, which Blue Owl submits will be impossible before the current Challenge Deadline passes, principally because of delays and roadblocks laid by the Secured Lenders and the Debtors.

### II. The Court Should Order That The Blanket "Professional Eyes Only" Designation Be Removed.

50. Granting the extension is not enough. In addition to extending the Challenge Deadline, to properly evaluate claims and proceed with the investigation, Blue Owl (and other members of the Committee) must be given access to all productions. The Committee and its members, including Blue Owl, are charged with the fiduciary duty to seek to maximize returns to unsecured creditors, and it is simply inappropriate for the producing parties to prevent any Committee from discharging its duty by blocking the Committee members' ability to review these productions via a wholesale confidentiality designation. To the extent any of the documents produced by any of the producing parties truly raise competition or other issues that rise to the level of marking them "Professional Eyes Only," those parties should have the burden of explaining why.

### III. In the Alternative, the Court Should Order The Appointment Of An Examiner So That The Investigation May Proceed.

51. Blue Owl files this motion in furtherance of its fiduciary duty as chair member of the Committee. The investigation that the Committee is supposed to conduct under section 1103(c)(2), however, may also be conducted by an examiner under section 1104(c).

52. Blue Owl believes the investigation will be most efficiently performed by the Committee or by Blue Owl itself—if allowed to proceed. However, if the Debtors and the Secured Lenders, by providing untimely and deficient discovery, succeed in preventing the Committee's investigation to proceed, then the job should fall to an examiner. These parties' delay and self-interest should not be allowed to stifle the investigation. As Justice Brandeis said: "Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." *Buckley v. Valeo*, 424 U. S. 1, 67, 68 (1976) (per curiam) (citation omitted).

## CONCLUSION

53. For all of these reasons, good cause exists and Blue Owl requests that the Court order (i) the extension of the Challenge Deadline by fifteen (15) days until November 22, 2024 at 12:00 p.m. (ET), and (ii) the removal of the "Professional Eyes Only" designation on all documents that have been produced so far by the Debtors, the Term Loan Agent, GBRP, and PNC Bank, N.A.

54. In the alternative, if the Debtors and the Secured Lenders will not allow the Committee to serve its function, Blue Owl moves for the appointment of an examiner under section 1104 of the Bankruptcy Code, so that the investigation the Committee has been precluded from conducting may be performed by an independent examiner.

## RESERVATION OF RIGHTS

55. Blue Owl reserves the right to amend, modify, or supplement this Motion in all respects. Nothing herein constitutes a waiver of Blue Owl's rights or remedies.

## NOTICE

56. Notice of the Motion has been provided to (a) counsel to the Debtors, (b) the U.S.

Trustee, (c) counsel to the Secured Lenders, (d) counsel to the Committee; and (e) all other parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the relief requested herein, Blue Owl submits that no other notice is necessary under the circumstances.

| | |
|---|---|
| Date: November 4, 2024<br>Wilmington, Delaware | **KLEHR HARRISON HARVEY BRANZBURG LLP**<br><br>*/s/ Domenic E. Pacitti*<br>Domenic E. Pacitti (Delaware Bar No. 3989)<br>919 North Market Street, Suite 1000<br>Wilmington, Delaware 19801<br>Telephone: 302-552-5511 \|<br>Facsimile: 302-426-9193<br>Email: dpacitti@klehr.com<br><br>-and-<br><br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>Benjamin Finestone (admitted *pro hac vice*)<br>Victor Noskov (*pro hac vice* pending)<br>Zachary Russell (*pro hac vice* pending)<br>Joanna D. Caytas (*pro hac vice* pending)<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Telephone: 212-849-7000<br>Facsimile: 212-849-7100<br>Email: benjaminfinestone@quinnemanuel.com<br>Email: victornoskov@quinnemanuel.com<br>Email: zacharyrussell@quinnemanuel.com<br>Email: joannacaytas@quinnemanuel.com<br><br>*Counsel for Blue Owl Real Estate Capital LLC* |