IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered) |

**PNC BANK, N.A.'S RESPONSE TO BLUE OWL CAPITAL LLC'S
EMERGENCY MOTION TO EXTEND THE CHALLENGE DEADLINE AND
REMOVE BLANKET "PROFESSIONALS' EYES ONLY" DESIGNATION FROM
PRODUCTIONS OR, IN THE ALTERNATIVE, APPOINT AN EXAMINER**

PNC Bank, National Association ("PNC"), agent to the prepetition and debtor-in-possession ABL facilities, files this response in opposition to Blue Owl's[2] emergency motion (Doc. 870) (the "Motion").

**PRELIMINARY STATEMENT**

The Motion lumps all Secured Lenders together, accuses them of wearing a "stunning plurality of hats" and alleges – in a wholly conclusory fashion – that limited evidence "suggests" that they "may have" acted improperly to enrich themselves at the expense of the Debtors. Blue Owl does not attribute any improper conduct to PNC. Nor could it. PNC wears only one hat. It has been a longtime lender to Debtors, including as agent under the prepetition ABL Facility. PNC

---

[1] The Debtors in these cases, together with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] The title of the motion lists Blue Owl Capital LLC while "Blue Owl" is later defined as Blue Owl Real Estate Capital LLC. Blue Owl provides a list of its affiliates involved in these cases in its motion.

and its affiliates are not acting as liquidators, auctioneers or bidders. Nor is PNC affiliated with any other Secured Lender.

Moreover, PNC worked diligently and cooperatively with counsel for the Official Committee of Unsecured Creditors (the "Committee") to complete its document production a mere ten business days after the Committee served its requests for production on October 18, 2024. Those documents confirm that PNC's only role has been to act as a (good faith) lender to Debtors. To make a production as quickly as possible, the Committee expressly agreed during multiple meet-and-confer sessions and in several written communications that PNC could produce documents subject to this Court's default confidentiality provisions, designated as "Professionals' Eyes Only." *See* Local Rule 9018-1(f). PNC relied on this agreement when it reviewed documents on an expedited basis to fully satisfy the Committee's requests as soon as possible. Even after Blue Owl first made its request for access to PNC's document production, it agreed to do so subject to this agreement and consistent with the Local Rules. Then Blue Owl reversed course and – without providing any explanation – demanded that the Secured Lenders and the Debtors remove the blanket designation and instead conduct a page-by-page re-review of their document productions for the purpose of affixing new confidentiality designations to each document. That new request at this late date is unduly burdensome, contrary to the agreement reached with the Committee and unnecessary because PNC has agreed that (i) Blue Owl's attorneys and its other professionals can review its documents and (ii) if Blue Owl's attorneys identify specific documents they would like to show Blue Owl business representatives, PNC will consider all such requests and decide whether to de-designate the Professionals' Eyes Only designation on those documents. Contrary to the Motion, PNC's compliance with the Local Rules and the Committee's express requests is not "inappropriate" or "prevent[ing] the Committee members from serving their all-

important function." Motion (Doc. 870) at 4, ¶ 4. And PNC's completion of its document production on an expedited and informal basis and in full satisfaction with the Committee's requests is not "incalcitrant [sic] conduct." *Id.* at 17, ¶ 48.

Blue Owl has not served any separate discovery requests on PNC, the Debtors or any other Secured Lender. Instead, it has opted to "piggy-back" entirely on the Committee's discovery requests, to which PNC has fully complied. For these reasons, PNC respectfully requests that the Court deny the Motion in its entirety.

## RELEVANT BACKGROUND

Debtors filed their Chapter 11 petition on September 9, 2024. The Committee members, including Blue Owl, were appointed on September 23. Motion (Doc. 870) at 7, ¶ 17. The Committee selected McDermott Will & Emery LLP and Cole Schotz P.C. to serve as counsel. *Id.* They filed a notice of appearance the next day, September 24. Doc. 263. Shortly thereafter, PNC voluntarily produced to the Committee all loan documents and amendments.

The Committee waited 24 days to broach the subject of discovery with PNC. On Friday, October 18 at 6:17 pm, the Committee emailed PNC the Committee's First Request for the Production of Documents. The following Monday, counsel for PNC and the Committee conferred and, on Tuesday the 22nd, PNC agreed to voluntarily produce responsive documents with the understanding that, consistent with the Local Rules, disclosure would be limited to members and employees of Committee counsel for Committee purposes only.

Upon receiving the requests, PNC immediately began collecting documents from relevant custodians, ultimately processing tens of thousands of documents. Over the next several days, counsel for PNC and the Committee worked together to narrow the scope of the requests so that PNC could focus its review on the documents specifically identified by the Committee. Due to the

sheer volume of the collection, it took until the night of Saturday, October 26 for PNC's vendors to process the data, set up a review database and make the documents available for review by PNC's counsel. At all times since the Committee served its requests, PNC kept the Committee regularly apprised of its progress.

On Monday, October 28 at 8:45 pm, Committee counsel sent PNC an email stating they had received a request from an (unidentified) member of the Committee that its (unidentified) counsel be permitted to review documents produced by PNC on a professionals' eyes only basis. The following day, PNC's counsel had two separate calls with Committee counsel regarding the request. On the second call, Committee counsel identified Blue Owl as the Committee member. Committee counsel confirmed again that the request was for the documents to be made available for Blue Owl's counsel to review on a professional eyes' only basis.

Later on October 29 – 36 days after Blue Owl was appointed to the Committee – PNC received a new and materially different request from Blue Owl's counsel at Quinn Emanuel, asking that the professionals' eyes only designation be lifted and the challenge deadline be extended to November 21. Because of the last-minute requests by Blue Owl and the uncertainty it created, PNC's counsel was forced to delay its production of documents to the Committee while they conferred with their client.

On October 31, PNC, in an effort to reasonably resolve the unnecessary dispute created by Blue Owl, agreed to allow Committee counsel to provide PNC's document production to Blue Owl on a professionals' eyes only basis, consistent with the agreement reached with the Committee, the original request from Blue Owl conveyed to PNC and the Local Rules.

PNC produced 1,939 documents designated "Professionals' Eyes Only" to the Committee on Friday, November 1 – a mere ten business days after the Committee first served its requests.

Upon receipt, Committee counsel confirmed again that the Committee would treat the produced documents on a professionals' eyes only basis. PNC reaffirmed that it consented to Committee counsel providing PNC's production to Blue Owl on a professionals' eyes only basis.

On November 4, Committee counsel requested that each of the Committee members, not just Blue Owl, be able to review PNC's production on a professionals' eyes only basis, to which PNC agreed. Committee counsel also wrote "on behalf of [certain unidentified] Committee members who have requested to review produced documents," requesting that PNC undertake a second review of its documents for the sole purpose of re-designating documents as "Confidential" those that could be reviewed by members of the Committee. PNC declined that request because (i) it was contrary to the agreement previously reached with the Committee and relied on by PNC and (ii) it would be unduly burdensome to conduct a second review of all of the produced documents solely for that purpose. However, PNC offered to consider de-designating certain documents requested by the Committee.

In less than two weeks, PNC collected, searched for, and reviewed thousands of documents, in full cooperation with the Committee at every step. PNC has produced everything the Committee requested. It also designated those documents as Professionals' Eyes Only, as expressly agreed by the Committee and consistent with Local Rules.

PNC and the Committee have likewise worked cooperatively on extending the challenge deadline. On November 4, PNC agreed to extend the challenge deadline to November 11 at noon, as requested by the Committee. PNC agreed that the extension applies equally to Blue Owl.

To date, Blue Owl has not served any discovery on PNC, Debtors or any other Secured Lender. It also did not participate in any of the numerous meet-and-confer sessions between PNC

and Committee counsel during which it was agreed that PNC's documents would be designated as Professionals' Eyes Only.

## ARGUMENT

A. *No Cause for Extension of the Challenge Deadline to November 22.*

PNC completed its production on November 1. PNC has agreed with the Committee to extend the challenge deadline to November 11 at noon, as have the Debtors and term lender agent. At this point, the need for extensions beyond November 11 has not been established and Court intervention is unnecessary. PNC respectfully submits that Blue Owl has therefore not shown good cause to extend the challenge deadline to November 22.

B. *The Court Should Not Disturb the Agreed Confidentiality Protections.*

PNC and the Committee previously agreed on numerous occasions that the documents produced by PNC would be designated and treated as confidential pursuant to Local Rule 9018-1(f), which provides:

> If any information or documents are designated confidential by the producing party at the time of production and the parties have not stipulated to a confidentiality agreement, until such an agreement has been agreed to by the parties or ordered by the Court, **disclosure shall be limited to members and employees of the law firm representing the receiving party and such other persons as to which the parties agree.** Such persons are under an obligation to keep such information and documents confidential and to use them only for purposes of the contested matter or the proceeding with respect to which they have been produced. Additionally, **parties may stipulate to the application of this rule in connection with informal discovery conducted outside a contested matter or adversary proceeding** (e.g., a statutory committee's investigation of the validity, perfection or amount of a secured creditor's prepetition lien), in which case the documents and information produced shall be used only for the purpose defined by the parties' stipulation.

PNC reasonably relied on that agreement (and the Local Rule) when it reviewed and produced documents on an expedited basis so those documents could be provided to the Committee as soon as possible and without undue concern regarding whether each individual document should be designated as Professionals' Eyes Only or merely as Confidential. Blue Owl

chose not to serve its own requests and instead decided to piggy-back entirely on the Committee's requests. It did not participate in the many meet-and-confers that PNC held with counsel to the Committee during which PNC and the Committee agreed upon the scope and parameters of PNC's production. At this late date, Blue Owl should not be allowed to modify the terms of PNC's agreement with the Committee, PNC's protection under the Local Rules, or even Blue Owl's initial request to access those documents on a Professionals' Eyes Only Basis. That would upset the orderly use of informal discovery by the Committee in this case and in every case going forward.

Blue Owl has not provided a good reason for removing the Professionals' Eyes Only designations and forcing the Debtors and the Secured Lenders to conduct another burdensome re-review of their documents solely for the purpose of affixing confidentiality designations to each individual document. Blue Owl argues that the designations are "inappropriate" and prevent the Committee members from fulfilling their fiduciary duties. *See* Motion (Doc. 870) at 4, ¶ 4; 16, ¶ 47; 17, ¶ 50. There is no legitimate reason why Blue Owl has to review all of the documents itself when its attorneys and its other professionals have full access to all of the document productions and PNC has agreed to consider individual requests to de-designate specific documents Blue Owl's professionals would like to show their client representatives.[3] In sum, Blue Owl has failed to explain how having counsel (and its other professionals) review documents— the usual way of doing things—impedes it from fulfilling its duties.

Committee counsel is also a fiduciary like the Committee members. *See In re Mesta Mach. Co.*, 67 B.R. 151, 157 (Bankr. W.D. Pa. 1986) ("Counsel to a creditors' committee owes a fiduciary duty to the committee and the individual creditors that the committee represents."); *In re*

---

[3] As an entity, Blue Owl can only act through its agents. *See, e.g., In re Cyber Litig. Inc.*, Nos. 20-12702 (CTG), 22-50439 (CTG), 22-50441 (CTG), 22-50443 (CTG), 2023 Bankr. LEXIS 2584, at *24 (Bankr. D. Del. Oct. 19, 2023). Blue Owl does not explain how, from a fiduciary duty standpoint, reviewing documents through an attorney at Quinn Emanuel is different than reviewing documents through some other agent.

*Kensington Int'l, Ltd.*, 368 F.3d 289, 315 (3d Cir. 2004). Even if Committee counsel did not have their own fiduciary duties, it is black letter law that fiduciaries like Blue Owl may rely on their attorneys. *Cf. In re Mushroom Transp. Co.*, 366 B.R. 414, 458 (Bankr. E.D. Pa. 2007) ("[A] fiduciary's reliance upon the expertise of an agent, such as an attorney, to perform some fiduciary duties is permissible if the expert is necessary and if one with reasonable expertise is engaged."). There is no question that Committee counsel is experienced and capable of reviewing documents in this context.

Blue Owl also implies that Professionals' Eyes Only designations violate the Bankruptcy Code. Motion (Doc. 870) at 4, ¶ 4. Not so. Local Rule 9018-1(f) is presumptively valid and has the force of law. *See In re Valley Health Sys.*, No. CC-11-1100-DPaTa, 2015 Bankr. LEXIS 616, at *12 (B.A.P. 9th Cir. Feb. 24, 2015) ("It is well- and long-established that a court's local rules have the force of law. This principle includes the bankruptcy court's Local Rules.") (citations omitted); Fed. R. Bankr. P. 9029(a).

Blue Owl's legal arguments about how PNC's confidentiality designations pursuant to the Local Rules have hindered the Committee lack merit. The Committee itself has worked cooperatively with PNC and is not claiming it has been hindered in any manner whatsoever. Blue Owl's requested relief would have a destabilizing effect on this case (and future cases). PNC has offered to consider de-designating individual documents identified by counsel to address Blue Owl's concerns. PNC therefore respectfully requests that the Court deny Blue Owl's request to reverse the stipulated application of Local Rule 9018-1(f) to PNC's document production.

      C.    *The Court Should Not Appoint an Examiner.*

Blue Owl seeks, in the alternative, appointment of an examiner because "untimely and deficient discovery" is "preventing the Committee's investigation to proceed." Motion (Doc. 870)

at 18, ¶ 52. That is not a serious request. PNC's discovery has not been untimely or deficient and the Committee's investigation is proceeding. PNC respectfully submits there is no need for an examiner.

## CONCLUSION

For the reasons explained above, the Court should deny Blue Owl's Motion in its entirety.

Dated: November 5, 2024

*/s/ Stanley B. Tarr*
Regina S. Kelbon (DE No. 5444)
Stanley B. Tarr (DE No. 5535)
Jordan Williams (DE No. 7128)
**BLANK ROME LLP**
1201 N. Market Street, Suite 800
Wilmington, DE 19801
Regina.kelbon@blankrome.com
Stanley.tarr@blankrome.com
Jordan.williams@blankrome.com

John Ventola
G. Mark Edgarton
Jonathan D. Marshall
Jacob S Lang
**CHOATE, HALL & STEWART LLP**
Two International Place
Boston, MA 02110

*Attorneys for PNC Bank, National Association*