IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> BIG LOTS, INC., *et al.,*[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 24-11967 (JKS) <br><br> (Jointly Administered) <br><br> **Re: Docket 683** |

**CURE OBJECTION AND RESERVATION OF RIGHTS OF NCR VOYIX
CORPORATION TO PROPOSED ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS**

NCR Voyix Corporation (f/k/a NCR Corporation) ("NCR"), by its undersigned counsel, respectfully files this cure objection and reservation of rights ("Cure Objection") to the proposed assumption and assignment of executory contracts pursuant to the *Notice of Proposed Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* [D.I. 683] (the "Notice"). In support of the Cure Objection, NCR respectfully states as follows:

**RELEVANT BACKGROUND**

1. On September 9, 2024 (the "Petition Date"), the above-captioned Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (this "Court").

---

[1] The Debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

2. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Section 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in these chapter 11 cases.

3. On the Petition Date, the Debtors filed a motion (the "Bidding Procedures Motion") [D.I. 18] seeking entry of an order approving, among other things, (a) procedures for the solicitation of bids (the "Bidding Procedures") in connection with (i) the proposed sale of substantially all of the Debtors' assets and the assumption of certain liabilities, subject to the submission of higher or otherwise better offers, (ii) the proposed sale transaction and (iii) an auction, (b) the form and manner of notice related to the sale transaction, and (c) procedures for the assumption and assignment of contracts and leases in connection with the sale transaction (the "Assumption and Assignment Procedures").

4. On October 25, 2024, the Court approved the relief requested in the Bidding Procedures Motion [D.I. 612] (the "Bidding Procedures Order").

5. Pursuant to the Bidding Procedures Order, the Debtors filed the Notice, which included a schedule of executory contracts and unexpired leases that may potentially assumed and assigned to the successful bidder at the auction.

6. NCR has a number of agreements with the Debtors (the "NCR Agreements"), including those enumerated on the Cure Notice as well as those listed on Exhibit A attached hereto. In the Notice, the Debtors list the cure amounts due under all of the NCR Agreements identified therein as $0.00, with the exception of the "Statement of Work for Backup Archive and Restore Services"[2] as to which the cure amount is listed as $4,533,456.76 (the "Proposed Cure Amount"). *See* D.I. 683-1, p. 77.

---

[2] The undersigned counsel requested that the Debtors provide additional identifying information about the NCR Agreements in connection with the prior cure notice filed by the Debtors at Docket

7. The NCR Agreements are integrated together and act as a comprehensive package of services that NCR provides to the Debtors and would need to be assigned as a bundle, and the total cure amount associated with them is not less than $4,783,825.26 (the "<u>Actual Cure Amount</u>").

**OBJECTION**

8. NCR objects to the Proposed Cure Amount as being inadequate to fully cure the defaults under the NCR Agreements. To the extent the Debtors seek to assume and/or assign any of the NCR Agreements, NCR objects to any such assumption or assignment unless and until the Debtors pay the Actual Cure Amount with respect to the NCR Agreements.

9. Section 365(b)(1) of the Bankruptcy Code provides, in relevant part, as follows:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract of lease, the trustee —
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . .
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default . . .

11 U.S.C. § 365(b)(1).

10. Here, the Proposed Cure Amount is not the correct amount required to "cure" the NCR Agreements. To the extent the Debtors seek to assume and/or assign the NCR Agreements, the Debtors must pay the cure amount in full. NCR objects to the assumption and assignment of the NCR Agreements unless the Debtors fully comply with all of the requirements of the Bankruptcy Code, including § 365(b). Absent such full compliance, any proposed assumption and/or assignment must be denied.

11. Because NCR has continued to perform under the NCR Agreements after the Petition Date, additional amounts have accrued and will continue to accrue. Section 365(b) of the

---

Entry 511-1. The Cure Notice provides additional information but still lacks the necessary specificity to enable identification of all of the contracts that are intended to be listed.

Bankruptcy Code requires that a debtor cure all defaults in conjunction with contract assumption. Accordingly, any Order approving the assumption and/or assignment of the NCR Agreements must provide that, in addition to payment of the Actual Cure Amount, the Debtors shall be liable for all unbilled amounts regardless of whether those amounts arose pre- or post-petition and regardless of when the amounts accrued.

**RESERVATION OF RIGHTS**

12. NCR does not waive (and expressly reserves) its right to amend, modify and supplement this objection at or prior to the conclusion of the hearing to consider this Cure Objection, including but not limited to, asserting additional objections to the assumption and/or assignment of the NCR Agreements. NCR further reserves the right to modify or supplement the Actual Cure Amount based on any further reconciliation of amounts due under the NCR Agreements.

WHEREFORE, for all of the foregoing reasons, NCR respectfully requests the entry of an Order (i) confirming that all of the NCR Agreements are being assumed and assigned as a bundle, (ii) establishing the cure amount for the NCR Agreements of at least $4,783,825.26, plus all unbilled amounts regardless of whether those amounts arose pre- or post-petition and regardless

[Intentionally Left Blank]

of when the amounts accrued, and (iii) granting such further relief as the Court may deem just and proper.

|  |  |
|---|---|
|  | **WOMBLE BOND DICKINSON (US) LLP** |
| Dated: November 6, 2024<br>Wilmington, Delaware | By: */s/ Lisa Bittle Tancredi*<br>Matthew P. Ward (Del. Bar No. 4471)<br>Lisa Bittle Tancredi (Del. Bar No. 4657)<br>1313 North Market Street, Suite 1200<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-4320<br>Facsimile: (302) 252-4330<br>Email: matthew.ward@wbd-us.com<br>           lisa.tancredi@wbd-us.com<br><br>*Counsel for NCR Voyix Corporation* |