# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: November 6, 2024 at 4:00 p.m. (ET)**<br><br>**Hearing Date: November 12, 2024 at 1:30 p.m. (ET)**<br>**Related Doc: 18, 612, 683** |

**OBJECTION AND RESERVATION OF RIGHTS OF BANCKENTUCKY, INC. TO THE (I) NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND PROPOSED CURE AMOUNT AND (II) PROPOSED SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**

BancKentucky, Inc. ("BancKentucky"), by its undersigned counsel, files this objection and reservation of rights (this "Objection") to the *Notice of Proposed Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* (Docket No. 683) (the "Assumption Notice"),[2] and the Proposed Sale (defined herein). In support of this Objection, BancKentucky respectfully states:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms not defined herein shall have the meaning ascribed in the Assumption Notice.

**BACKGROUND**

1. On September 9, 2024 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court").

2. Upon information and belief, the Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors and BancKentucky are parties to that certain unexpired lease of nonresidential real property (the "Lease") involving the Debtors' retail store located in the Chestnut Hills Shopping Cetner in Murray, Kentucky (the "Premises").

4. The Premises is located in a "shopping center" as that term is used in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086–87 (3d Cir. 1990).

5. On the Petition Date, the Debtors filed *Motion of Debtors for Entry of Orders (I) (A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures, (II) (A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (Docket No. 18) (the "Bid Procedures Motion"), pursuant to which the Debtors sought, among other things, entry of an order establishing bid procedures for the sale (the "Proposed Sale") of substantially all of the Debtors' assets and procedures for the assumption and assignment of the Debtors' unexpired leases.

6. On October 25, 2024, this Court entered the *Order (I) Approving Bidding Procedures*

*for Sale of Debtors' Assets, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (IV) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (V) Approving Assumption and Assignment Procedures, and (VI) Granting Related Relief* (Docket No. 612) (the "Bidding Procedures Order") which, among other things, approved the Bidding Procedures and procedures for (i) filing objections to the Proposed Sale and (ii) providing notice to lease counterparties of the potential assumption and assignment of any unexpired leases in connection with the Proposed Sale. Pursuant to the Bidding Procedures Order, November 6, 2024 is the Cure Objection Deadline and Sale Objection Deadline.

7. As contemplated by the Bidding Procedures Order, on October 31, 2024, the Debtors filed the Assumption Notice which identifies certain executory contracts and unexpired leases that the Debtors may assume and assign in connection with the Proposed Sale, including the Lease. Pursuant to the Assumption Notice, the Debtors propose a $11,192.00 cure amount (the "Proposed Cure Amount") for the Lease.

**OBJECTION**

8. Although BancKentucky does not object to the Debtors' right to sell certain of the Debtors' assets, BancKentucky does object to the assumption and assignment of the Lease, the Proposed Sale, and the Debtors' right to grant designation rights ("Designation Rights") to the Successful Bidder to the extent of BancKentucky's rights under the Lease, the Bankruptcy Code and applicable law are impaired, limited, and/or modified. Moreover, any assumption and assignment of the Lease must be conditioned on the Debtors' compliance with the requirements of section 365 of the Bankruptcy Code and the Lease, including, but not limited to, paying all amounts due and owing under the Lease through the effective date of the assumption and assignment of the Lease and providing adequate assurance of future performance information to BancKentucky in accordance with

the terms of the Bidding Procedures Order. Furthermore, BancKentucky objects to the Designation Rights Period, should such period run afoul of the time period for the Debtors to assume, assume and assign or reject unexpired leases of nonresidential real estate set forth in section 365(d)(4) of the Bankruptcy Code.

### A. The Debtors' Proposed Cure Amount is Incorrect and Must Provide for Payment of all Obligations due Under the Lease.

9. As of the date of this Objection, the aggregate cure amount owing under the Lease is not less than $42,130.76, plus unbilled charges that are accruing, including, but not limited to reconciliation amounts for CAM, taxes and insurance, which may come due in the future, and any indemnity and contribution obligations and attorneys fees incurred by BancKentucky as provided in the Lease (the "Cure Amount").[3] Attached hereto and incorporated herein as **Exhibit A** is an itemization of the amounts due and owing under the Lease.

10. The Cure Amount may increase prior to any actual date of assumption and assignment of the Lease if the Debtors do not pay all amounts that accrue after the date of this Objection, and any taxes, common area maintenance, and other amounts that may come due, pursuant to the terms of the Lease, and regardless of when those amounts accrued.

11. BancKentucky notes that the Lease imposes certain indemnification and contribution obligations that arise out of litigation or other claims that may be asserted or threatened against BancKentucky in connection with the Lease. Each of these indemnification and contribution covenants and obligations must be assumed, paid, and otherwise cured if the Lease is to be assumed

---

[3] The Cure Amount includes $1,000.00 in attorneys' fees. BancKentucky is entitled to attorneys' fees as part of the Cure Amount for the Lease, as the Lease specifically provides for the recovery of such fees. *In re Westview 74th Street Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986) (payment of attorneys' fees required as condition to lease assumption). Thus, any attorneys' fees incurred by BancKentucky in enforcing its rights under the Lease must be paid as part of any assumption and assignment of the Lease. *See id.*

and assigned as part of the Proposed Sale. BancKentucky objects to the Proposed Cure Amount to the extent that it fails to include amounts related to the indemnification and contribution covenants and obligations for which the Debtors are responsible to BancKentucky under the Lease.

12. In connection with the assumption and assignment of the Lease, all rights of BancKentucky under the Lease (including defenses thereto) must be preserved. As such, any order approving the Proposed Sale should specify that BancKentucky's setoff, recoupment, and subrogation rights are preserved, and that the Debtors and any proposed assignee remain liable to BancKentucky for: (i) any accrued but unbilled charges under the Lease, including, but not limited to, year-end adjustments for common area maintenance, taxes, and similar charges; (ii) any regular or periodic adjustment or reconciliation charges that come due under the Lease; (iii) any percentage rent that may be due under the Lease; (iv) any non-monetary defaults; and/or (v) any insurance, indemnification, and other contractual obligations under the Lease regardless of when they accrued. This result is mandated by the requirement that the Debtors cure all arrears and that the Debtors provide adequate assurance of future performance under the terms of the Lease. *See* 11 U.S.C. § 365(b)(1).

13. To the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue, and/or BancKentucky suffers other pecuniary losses with respect to the Lease, BancKentucky further reserves the right to amend the Cure Amount to: (i) reflect such additional amounts; and (ii) to account for year-end adjustments, including, without limitation, adjustments for calendar years 2023 and 2024 (collectively, the "Adjustment Amounts"), which have not yet been billed or have not yet become due under the terms of the Lease. The Debtors or any assignee of the Lease must be responsible for satisfying the Adjustment Amounts when due in accordance with the terms of the Lease regardless of when such Adjustment Amounts were incurred. To the extent that the Debtors are to remain responsible for any Adjustment Amounts, BancKentucky requests that at the closing of the

Sale, such funds be placed into a separate and segregated escrow account outside of the Debtors' chapter 11 bankruptcy estates, so that there is no question that sufficient, earmarked, unencumbered funds will be available to pay BancKentucky when said Adjustment Amounts become due and owing to BancKentucky in accordance with the terms of the Lease.

14. Further, under section 365(k) of the Bankruptcy Code the Debtors remain responsible for any contractual obligations under the Lease that arose prior to the assumption and assignment of the Lease, thus, any provision in the proposed order approving the Sale that purports to release the Debtors from any further liability under the Lease, including those contractual obligations that arose prior to the assumption and assignment of the Lease, should be stricken.

15. Finally, the proposed order approving the Sale or any order approving the assumption and assignment of the Lease must provide, among other things, that the Debtors, the Successful Bidder, or the proposed assignee promptly pay to BancKentucky all amounts due and owing under the Lease through the effective date of assumption and assignment of the Lease (i.e., the Cure Amount), as the same may increase to reflect attorneys' fees and any other amounts that become due or are determined after the date of this Objection.

      **B.**    **The Debtors Must Demonstrate Adequate Assurance of Future Performance.**

16. In accordance with section 365 of the Bankruptcy Code, BancKentucky must be provided with sufficient information with respect to adequate assurance of future performance prior to the potential assumption and assignment of Lease to the Successful Bidder or proposed assignee.

17. The adequate assurance of future performance information provided to BancKentucky as part of the Proposed Sale must demonstrate that the heightened standards for adequate assurance of future performance in a shopping center will be satisfied by the Successful Bidder or proposed assignee in accordance with section 365 of the Bankruptcy Code.

18. Under this requirement, the Debtors must provide to BancKentucky assurances: (a) of the source of rent and other consideration due under the Lease, and that the financial condition and operating performance of the Successful Bidder or proposed assignee and any guarantor shall be similar to the financial condition and operating performance of the Debtors and any guarantor of the Debtors at the time the Debtors entered into the Lease; (b) that any percentage rent due under the Lease, if applicable, will not decline substantially; (c) that assumption and assignment of the Lease is subject to all provisions of the Lease, including but not limited to radius, location, use, or exclusivity provisions, and will not breach any such provision contained in another lease; and (d) that assumption or assignment of the Lease will not disrupt any tenant mix in the shopping center. *See* 11 U.S.C. § 365(b)(3). The Debtors bear the burden of demonstrating the Successful Bidder's or proposed assignee's ability to provide adequate assurance of future performance. *In re Lafayette Radio Elecs. Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991); *see also, e.g.*, *In re Federated Dep't Stores, Inc.*, 135 B.R. 941, 944 (Bankr. S.D. Ohio 1991); *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 308 (Bankr. S.D.N.Y. 1983).

19. In order to satisfy the heightened adequate assurance of future performance burden, the Successful Bidder or any proposed assignee of the Lease must provide the following information: (i) the specific name of the proposed assignee, and the proposed name under which the proposed assignee intends to operate the store; (ii) the proposed assignee's intended use for the space; (iii) audited financial statements and annual reports for the past three (3) years, including all supplements or amendments thereto; (iv) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projections for the Lease, and any financial projections, calculations and/or proformas prepared in contemplation of purchasing the Lease; (v) all documents and other evidence of the proposed assignee's retail experience and experience operating stores in a

shopping center; and (vi) a contact person for the proposed assignee BancKentucky may directly contact in connection with the adequate assurance of future performance information.[4]

20. BancKentucky demands strict proof of the Successful Bidder's or the proposed assignee's ability to establish adequate assurance of future performance with respect to the Lease. BancKentucky is entitled to the full benefit of its bargain under the Lease and the full protections provided by section 365 of the Bankruptcy Code. Any assumption and assignment of the Lease must be in accordance with all provisions of the Lease and the Bankruptcy Code. *See, e.g.*, *In re Entm't, Inc.*, 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998).

C. **The Debtors are Required to Assume and Assign the Lease in its Entirety, Including Any and All Obligations Contained Therein, and all BancKentucky's Rights Under the Lease and Applicable Law Must be Preserved.**

21. Any assumption and assignment of the Lease requires the Debtors to assume and assign the Lease in its entirety, including any and all conditions, covenants, monetary and non-monetary obligations and terms contained in the Lease for which the Debtors are responsible. *See, e.g., In re N.Y. Skyline, Inc.*, 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) ("When the debtor assumes the lease . . . it must assume both the benefits and the burdens of the contract. Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party." (quotation omitted)); *In re Shangra-La, Inc.*, 167 F.3d 843, 849 (4th Cir. 1999) ("When the debtor assumes its unexpired lease . . . it assumes it *cum onere*—the debtor must accept [the] obligations of the executory contract along with the benefits." (citing *Adventure Res., Inc. v. Holland*, 137 F.3d 786, 798 (4th Cir.), *cert. denied*, 525 U.S. 962 (1998))); *see also, e.g.*, *Citibank,*

---

[4] BancKentucky expressly reserves the right to request further adequate assurance information that BancKentucky may deem necessary, in its sole and unfettered discretion, to make an informed decision as to the ability of any proposed assignee of the Lease to satisfy the requirements of section 365 of the Bankruptcy Code.

*N.A. v. Tele/Res., Inc.*, 724 F.2d 266, 269 (2nd Cir. 1983) ("An assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged. Insofar as an assignment touches on the obligations of the other party to the underlying contract, the assignee simply moves into the shoes of the assignor." (citations omitted)). Further, the Proposed Sale cannot override the parties' contractually bargained for rights under the Lease. *See, e.g.*, *In re Nat'l Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000) (holding that executory contracts are assumed *cum onere*, subject to all their benefits and burdens).

22.     The Successful Bidder must be responsible for satisfying all obligations and charges when due in accordance with the terms of the Lease regardless of when such amounts were incurred. Accordingly, the proposed Sale Order must preserve BancKentucky's right to payment of these charges and expressly provide that any assignee of the Lease (including, but not limited to, the Successful Bidder) continues to be responsible for any and all express and implied covenants and obligations under the Lease or related documents or supplements, regardless of when such covenants or obligations arose.

23.     Further, BancKentucky's rights under the Lease and applicable law must survive any Sale. Any acquisition of the Lease free and clear of liens and claims could presumably result in the impairment of BancKentucky's setoff and recoupment rights under the Lease and applicable law. BancKentucky's rights under the Lease (including defenses thereto) cannot be extinguished through the Proposed Sale.

      **D.**     **Any Designation Rights Must Comply with the Lease and Protect BancKentucky's Rights.**

24. BancKentucky objects to any attempt by the Debtors to side-step or invalidate the bargained-for protections in the Lease. BancKentucky is entitled to the full benefit of its bargain under the Lease and is entitled to the full protections provided by section 365 of the Bankruptcy Code. *See, e.g., In re Entertainment, Inc.*, 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998). The Debtors and the Successful Bidder must strictly comply with all the terms and conditions of the Lease during the Designation Rights Period until such lease has been assumed, assumed and assigned or rejected. 11 U.S.C. § 365(d)(3); *see, e.g., In re new Almacs, Inc.*, 196 B.R. 244, 248 (Bankr. N.D.N.Y. 1996); *In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 831 (Bankr. S.D.N.Y. 1996) (each recognizing that section 365(d)(3) of the Bankruptcy Code imposes an affirmative duty on a debtor to comply with all of its leasehold obligations).

25. The Debtors' grant of the Designation Rights to the Successful Bidder as well as any proposed assumption and assignment of the Lease and its use of the Premises during the Designation Rights Period must be in accordance with all provisions of the Lease and the Bankruptcy Code. *See Almacs,* 196 B.R. at 248 ("The language of code § 365(d)(3) is clear that the obligation of the Debtor to perform in a timely manner is *mandatory*, not permissive.") (emphasis added).

26. The Debtors and the Successful Bidder must remain fully liable to BancKentucky for the payment of all amounts due and owing to BancKentucky under the Lease during the Designation Rights Period. To the extent this Court approves the grant of the Designation Rights to the Successful Bidder, any order that is entered by this Court approving the same should expressly provide that the Debtors and the Successful Bidder must timely perform all the obligations under the Lease and section 365 of the Bankruptcy Code during the Designation Rights Period.

27. The Successful Bidder and the Debtors must also be required to provide evidence that insurance coverage that complies with the terms of the Lease is in place during the Designation Rights Period, effective as of the first day of the Designation Rights Period.

28. BancKentucky also objects to the granting of any Designation Rights to the extent that the use and occupancy of the Premises violates any provision of the Lease, including, but not limited to, any radius, location, use and/or exclusivity provisions contained in the Lease during the Designation Rights Period. The Successful Bidder must also be required to adhere to all the terms and conditions of the Lease during the Designation Rights Period.

29. Accordingly, if this Court approves the sale of the Designation Rights to the Successful Bidder, BancKentucky respectfully requests that the Proposed Sale Order include (in addition to what is discussed otherwise herein) procedures that provide BancKentucky with sufficient notice of future requests of the Debtors, or of the Successful Bidder, for approval of any proposed assumption and assignment of the Lease. Such procedures should provide BancKentucky with an opportunity to object, on any basis, to any proposed assumption and/or assignment of the Lease at such time that the Debtors or the Successful Bidder may seek to actually assume and assign the Lease.

30. Additionally, if this Court approves the sale of the Designation Rights to the Successful Bidder, BancKentucky respectfully requests that the Proposed Sale Order include the following:

- A requirement that any proposed assignment of the Lease comply with the provisions of the Lease, including but not limited to use provisions, alteration provisions, signage provisions, and radius restrictions. The Debtors should not be allowed to sell the Designation Rights with a blanket order that allows the Successful Bidder to ignore or otherwise breach critical terms of the Lease.

- A provision that makes clear that the Debtors remain obligated under the Lease through the effective date of assumption and assignment or rejection of the Lease, and that no agreement with the Successful Bidder alters the Debtors' obligations under the Lease.

31.     Importantly, all rights of BancKentucky to object to a proposed assumption and assignment of the Lease at such time in the future during the Designation Rights Period (and to the extent that the Debtors or the Successful Bidder actually seeks to assume and assign the Lease) must be expressly preserved in the Proposed Sale Order. The provisions requested herein will protect the rights of BancKentucky and will ensure compliance with section 365 of the Bankruptcy Code.

### E.  The Debtors' Proposed Designation Rights Period Must Comply with the Express Terms of Section 365(d)(4) of the Bankruptcy Code.

32.     The Lease is an unexpired lease of nonresidential real property, which enjoys the protections of section 365(d)(4) of the Bankruptcy Code. Section 365(d)(4) of the Bankruptcy Code requires (and it is well established) that the Debtors must assume or reject an unexpired lease of nonresidential real property by the date of confirmation of the Plan. Specifically, section 365(d)(4) provides that the Debtors must assume or reject unexpired leases of nonresidential real property "by the earlier of (i) the date that is 120 days after the date of the order for relief; or (ii) the date of the entry of an order confirming a plan." 11 U.S.C. § 365(d)(4)(A). Section 365(d)(4) permits only one non-consensual 90-day extension of the time within which to assume or reject unexpired leases of nonresidential real property. *See* 11 U.S.C. § 365(d)(4)(B)(i).

33.     Currently, the deadline for the Debtors to assume or reject leases under section 365(d)(4)(A) of the Bankruptcy Code is January 7, 2025, which they can then seek a 90-day extension to April 7, 2025, upon filing a motion for cause. 11 U.S.C. § 365(d)(4)(A)(i) & (B)(i); *see* Docket No. 1 (the Debtor's Petition Date is September 9, 2024, thus the initial section

364(d)(4) deadline is January 7, 2025). Any further extension of the deadline to assume or reject an unexpired lease of nonresidential real property may only be granted "upon prior written consent of the lessor in each instance." 11 U.S.C. § 365(d)(4)(B)(ii).

34. BancKentucky presents this objection to reserve its rights if the Proposed Sale Order provides an extension of the Designation Rights Period which runs afoul of the protections afforded to BancKentucky under section 365(d)(4).

## **RESERVATION OF RIGHTS**

35. Nothing in this Objection is intended to be, or should be construed as, a waiver by BancKentucky of any of its rights under the Lease, the Bankruptcy Code, or applicable law. BancKentucky expressly reserves all such rights, including, without limitation, the right to: (a) supplement and/or amend this Objection and to assert any additional objections with respect to the Proposed Cure Amount, adequate assurance of future performance, the Proposed Sale, and the Successful Bidder's asset purchase agreement and any amendment thereto; (b) amend the Cure Amount; (c) assert any nonmonetary defaults under the Lease; (d) assert any rights for indemnification or contribution against the Debtors arising under the Lease; and (e) assert any further objections as it deems necessary or appropriate.

## **JOINDER**

36. BancKentucky joins in any objections to the Proposed Sale that are filed by other landlords to the extent they are not inconsistent with this Objection.

**WHEREFORE**, BancKentucky respectfully requests that this Court sustain this Objection and grant BancKentucky such other and further relief as this Court deems just and appropriate under the circumstances.

Dated: November 5, 2024

Respectfully submitted,

*/s/ Susan E. Kaufman*
Susan E. Kaufman (DSB# 3381)
919 N. Market Street, Suite 460
Wilmington, DE 19801
Tel: (302) 472-7420
Fax: (302) 792-7420
Email: skaufman@skaufmanlaw.com

-and-

Ronald E. Gold, Esq.
(Ohio Bar No. 0061351)
(Admitted *pro hac vice*)
FROST BROWN TODD LLP
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Tel: (513) 651-6800
Fax: (513) 651-6981
E-mail: rgold@fbtlaw.com

**COUNSEL FOR BANCKENTUCKY, INC.**

0159051.0796280   4875-8700-9270v2