# IN THE UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br>(Jointly Administered)<br><br>**Hearing Date**: Nov. 12, 2024 at 1:30 p.m. (ET)<br>**Objection Deadline**: Nov. 6, 2024, at 4 p.m. (ET)<br><br>RE:  D.I. 511, 612, 661 |

## LIMITED OBJECTION OF RIVER OAKS PROPERTIES, LTD. AND ROP NORTH HILLS, LLC TO PROPOSED ASSUMPTION AND ASSIGNMENT OF LEASES

River Oaks Properties, Ltd. (the "Montana Market Landlord") and ROP North Hills, LLC ("North Hills Landlord" and together with Montana Market Landlord, "Landlords") hereby submit their limited objection (the "Limited Objection") to Debtors' *Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount* [D.I. 575] (the "Notice of Potential Assumption and Assignment") and *Notice of Successful Bidder For The Sale of The Debtors' Assets* [D.I. 661] ("Notice of Successful Bidder"), as follows:

### I. FACTUAL AND PROCEDURAL BACKGROUND

1. On September 9, 2024 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On September 10, 2024, this Court entered its order authorizing joint administration of these

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

4880-7316-7094.1

Chapter 11 cases [D.I. 95]. No trustee or examiner has been appointed and Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

2. Landlords and debtor PNS Stores, Inc. ("Tenant") are parties to two real property leases in El Paso Texas: (a) that certain Lease Agreement, dated January 8, 2019 (as subsequently amended, the "Montana Market Lease") for retail premises commonly known as 6375 Montana Avenue, El Paso, Texas, located in the Montana Market shopping center, and (b) that certain Lease Agreement, dated February 20, 2015 (as subsequently amended, the "North Hills Lease") for retail premises commonly known as 10771 Gateway South Boulevard, El Paso, Texas, located in the North Hills Crossing shopping center.

3. It cannot be seriously disputed that Debtors' Montana Market and North Hills Leases are for premises in a shopping center, as that term is defined in Section 365(b)(3) of the Bankruptcy Code. *See*, *e.g.*, *In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1087 (3d Cir. 1990); *In re Three A's Holdings, LLC*, 364 B.R. 550, 560 (Bankr. D. Del. 2007).

4. On October 25, 2024, this Court entered its *Order (I) Approving Bidding Procedures for Sale of Debtors' Assets, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (IV) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (V) Approving Assumption and Assignment Procedures, and (VI) Granting Related Relief* (D.I. 612) (the "Bidding Procedures Order"),[2] by which the Court approved procedures by which the Debtors were authorized to conduct one or more sales of the Debtors' assets.

5. Pursuant to the Bidding Procedures Order, the Court approved Gateway BL Acquisition, LLC, an affiliate of Nexus Capital Management LP ("Nexus"), as the "Stalking Horse Bidder" for certain of Debtors' assets (the "Acquired Assets") pursuant to the Asset Purchase Agreement dated as of September 8, 2024, by and between Debtors and the Stalking Horse Bidder.

---

[2] Capitalized terms not otherwise defined shall have the same meaning as set forth in the Notice of Potential Assumption and Assignment and Bidding Procedures Order.

6.     On October 24, 2024, prior to the Auction, Nexus, the parent company of the Stalking Horse Bidder, transmitted a three-page letter (the "Adequate Assurance Package") purporting to provide evidence of adequate assurance of future performance in connection with the proposed assignment of the Leases. According to the Adequate Assurance Package, the proposed assignee of the Leases is not Gateway BL Acquisition, LLC, the Successful Bidder, but rather BL RE Holdings, LLC, "an entity funded by Nexus and Gateway." The Adequate Assurance Package also states that "[o]ne of more arm's length services agreements between the Big Lots enterprise and BL Re Holdings, LLC will allow the enterprise to continue to use such leased real property locations in exchange for paying rent, charges and other amounts on a pass-through basis (without any profit or premium) to BL RE Holdings, LLC (the "Assignee"), which such rent amounts shall ultimately be paid by BL RE Holdings, LLC to the landlord in respect of such real property leases."

7.     Following the Auction scheduled for October 30, 2024, Debtors selected the Stalking Horse Bidder as the Successful Bidder.

8.     On October 30, 2024, Debtors filed the Notice of Successful Bidder. The Notice of Successful Bidder describes several modifications to the Asset Purchase Agreement that impact real property leases, including, the Buyer's acquisition of lease designation rights and "[t]o the maximum extent permitted by law, if requested by Buyer, Buyer and the Debtors will agree to reasonable accommodations under the TSA [transition services agreement] to permit the operation of any leased facilities retained by the Debtors for that period, at the direction of Buyer and at Buyer's sole cost and expense." The Notice of Successful Bidder provides that "an amended Stalking Horse APA" is "intended to be filed with the Court in advance of the Sale Hearing." To date, however, neither an amended Asset Purchase Agreement nor proposed order has been filed that would provide greater detail on the terms of the new designation rights and transition services components of the proposed Nexus transaction.

9.     While Landlords do not generally object to the proposed assumption of the Leases to a purchaser of Debtors' assets that intends to continue to operate as "Big Lots" and, indeed,

Landlords continue to negotiate with Debtors' representatives, Landlords object to any assumption and assignment of the Leases to the extent a proposed assignment fails to meet the requirements for assumption and assignment of an unexpired shopping center lease under Section 365 of the Bankruptcy Code.

## II.  ARGUMENT

### A. DEBTORS MUST CURE ALL EXISTING DEFAULTS, OR PROVIDE ADEQUATE ASSURANCE OF A PROMPT CURE, AS A CONDITION TO THE ASSUMPTION AND ASSIGNMENT OF THE LEASES

10. Bankruptcy Code section 365(b)(1)(A) provides that unless a lessee-debtor either (a) cures all existing defaults or (b) provides the lessor with adequate assurance that it will promptly cure those defaults, it cannot assume and assign a lease. As one court has held, "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord*, *In re Valley View Shopping Center, L.P.*, 260 B.R. 10, 25 (Bankr. D. Kansas 2001); *In re Mushroom Transportation Co., Inc.*, 78 B.R. 754, 759 (Bankr. E.D. Pa. 1987). Indeed, "the cost of assumption is nothing short of complete mutuality and requires performance in full as if bankruptcy had not intervened." *In re Frontier Properties, Inc.*, 979 F.2d 1358, 1367 (9th Cir. 1992). Bankruptcy Code section 365(b)(1)(A) "clearly and unambiguously" requires the cure of *all defaults* before an unexpired lease of nonresidential real property may be assumed. *In re Building Block Child Care Centers, Inc.* (9th Cir. BAP 1999) 234 B.R. 762, 765; *accord, In re Fifth Taste Concepts Las Olas, LLC*, 325 B.R. 42, (Bankr. S.D. Fla. 2005) ("The purpose of § 365(b)(1)(A) is to preserve the *entirety* of an unexpired lease upon assumption and cure any defaults." [emphasis in original]).

11. Debtors bear the burden of proving the requirements of Bankruptcy Code section 365(b) by a preponderance of the evidence. *See In re PRK Enterprises, Inc.*, 235 B.R. 597, 602 (Bankr. E.D. Tex. 1999).

12. Debtors' Notice of Potential Assumption and Assignment acknowledges the obligation to pay unpaid monetary obligations ("Cure"), identifying the amounts due to Landlords to satisfy the "cure" requirements for the proposed assignment of the Leases as follows: (a) $35,873 with respect to the Montana Market Lease, and (b) $29,650.00 with respect to the North Hills Lease.

13. The current Cure amounts asserted by Landlords do not, however, include rent and charges that may accrue after November 6, 2024. Bankruptcy Code section 365(b)(1) measures defaults as of the "time of assumption." *See, e.g., In re Rachels Industries, Inc.*, 109 B.R. 797, 811-12 (Bankr. W.D. Tenn. 1990). Debtors remain required to pay accruing post-petition rent and charges on a timely basis, as required by Bankruptcy Code section 365(d)(3). In particular, since the Notice of Successful Bidder states that the "Target Closing Date" for the Nexus sale transaction is scheduled for December 2 or December 3, 2024, "so long as any additional costs associated with December rent and other December monthly costs are assumed and paid by the Buyer." Landlord reserves its rights and remedies against Debtors and Buyer with respect to any such additional sums.

14. Where, as here, there are defaults under a lease sought to be assumed and assigned, Bankruptcy Code section 365(b)(1) comes into play. The Leases contain customary provisions for the recovery of reasonable attorneys' fees in proceedings for the "enforcement or construction of this Lease."

15. Bankruptcy courts have held that attorneys' fees incurred in the enforcement of obligations, covenants and conditions of a lease are recoverable as part of a landlord's "pecuniary loss" under Bankruptcy Code section 365(b)(1)(B) due upon assumption and assignment of a lease if the underlying lease provides for them. *In re Entertainment, Inc.*, 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998). "Although attorneys' fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties." *In the Child World, Inc.,* 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993); *see also Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co.*, 127 S.Ct. 1199,

1203-1206 (2007) (contract providing for attorneys' fee recovery enforceable in bankruptcy unless Bankruptcy Code specifically provides otherwise); *In re Crown Books Corporation*, 269 B.R. 12, 18 (Bankr. D. Del. 2001) (landlord's attorneys' fees incurred in proving post-petition rent had not been recoverable as component of cure under Section 365(b)(1)). "[T]here is no logical distinction, for purposes of §365, between claims for attorney's fees in connection with pre-petition defaults and such claims in connection with post-petition defaults." *In re Entertainment, Inc.*, *supra*, 223 B.R. at 154. Landlord's attorneys' fees, which currently are in excess of $5,000.00, are ongoing. Landlords reserves their right to supplement this Limited Objection to provide such further attorneys' fees information as may be requested by Debtors.

    **B.    DEBTORS HAVE FAILED TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE PROPOSED ASSIGNMENT OF THE LEASES**

    16.    It is well-established that the Debtors bear the ultimate burden of presentation and persuasion that an unexpired lease of nonresidential real property is one subject to assumption and that all of the applicable requirements under Bankruptcy Code section 365 for assumption have been met. *In re Rachels Indus., Inc.,* 109 B.R. at 802; *In re Memphis-Fridays Assocs.*, 88 B.R. 830, 840-41 (Bankr. W.D. Tenn. 1988); *see also Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1309 (5th Cir. 1985).

    17.    Bankruptcy Code section 365(b)(1)(A) provides as follows:

> . . . If there has been a default in an executory contract or unexpired Lease of the Debtor, the Trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the Trustee –
>
> A.    cures or provides adequate assurance that the Trustee will promptly cure such default;
>
> B.    compensates, or provides adequate assurance that the Trustee will promptly compensate, a party other than the Debtor to such contract or lease for any pecuniary loss to such party from such default; and

        C.      provides adequate assurance of future performance under such contract or lease.

18. "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the <u>full benefit of his bargain</u> in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.,* 53 B.R. at 793 (emphasis added); *accord In re Valley View Shopping Center, L.P.,* 260 B.R. at 25.

19. Thus, adequate assurance of future performance is clearly an element of the assumption process which must be met in addition to the curing of any default. 11 U.S.C. § 365(b)(1)(C); *see In re Old Market Group Holdings Corp.*, 647 B.R. 104, 110 (Bankr. S.D.N.Y. 2022). Section 365(f)(2)(B) provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." *See In re Sun TV and Appliances, Inc., supra*, 234 B.R. 356, 370 (Bankr. D. Del. 1999).

20. While adequate assurance of future performance is not generally defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction in light of the facts of each case." *In re Natco Indus., Inc.,* 54 B.R. 436, 440-41 (Bankr. S.D.N.Y. 1985). The emphasis is on protection of the lessor, and the intention "is to afford landlord with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." *Id.* at 441. Adequate assurance requires a foundation that is non-speculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Center, Inc.,* 100 B.R. 147, 148-49 (Bankr. D. Conn. 1989). By implication, Bankruptcy Code section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate. *See In re Standard Furniture Co.,* 3 B.R. 527, 530 (Bankr. S.D. Cal. 1980). The factors for the court to consider in determining whether the debtor is able to provide adequate assurance include the present status of the existing obligations under the lease, the remaining term of the lease, and what a landlord can look to for sufficient adequate

assurance of future performance. *In re Hub of Military Circle, Inc.*, 19 B.R. 460, 461 (Bankr. E.D. Va. 1982).

21. It is well-established that "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of shopping centers." *In re Joshua Slocum, Ltd.,* 922 F.2d at 1086; *In re Trak Auto Corporation*, 277 B.R. 655, 665-66 (Bankr. E.D. Va. 2002) (The legislative history of 1984 amendments to Section 365 "indicates that Congress sought to provide special protections to lessors of a debtor."). Bankruptcy Code section 365(b)(3), added as part of the so-called 1984 "Shopping Center Amendments" to the Bankruptcy Code, provides that adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance:

> A) of the source of rent and other consideration due under such lease, and *in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease*;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that *assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision*, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3) (emphasis added).

22. The initial burden of presentation as to adequate assurance falls upon the debtor. *Sea Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077, 1079 (9th Cir. 1989). The *Sea Harvest* court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that Sea Harvest's "empty

declaration does not provide the compensation and assurances required by section 365(b)(1)." *Sea Harvest,* 868 F.2d at 1080.

23. Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g., Matter of Haute Cuisine, Inc.,* 58 B.R. 390, 393-94 (Bankr. M.D. Fla. 1986); *In the Matter of CM Systems, Inc.,* 64 B.R. 363, 364-65 (Bankr. M.D. Fla. 1986).

24. As evidenced by the plain language of Bankruptcy Code section 365(b)(3), adequate assurance is not limited to the financial wherewithal of the proposed assignee. It is well-established that debtors must assume executory contracts or unexpired leases *cum onere* and may not unilaterally seek to modify the terms of such assumed contracts and leases. *See, e.g., N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531-32 (1984); *Cinnicola v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001) ("If the trustee [or debtor-in-possession] meets the assumption requirements under § 365 it must assume the executory contract *entirely*." (emphasis added).) "If the debtor decides to assume a lease [], it must generally assume all the terms of the lease and may not pick and choose only favorable terms to be assumed." *In re Buffets Holdings, Inc*., 387 B.R. 115, 119 (Bankr. D. Del. 2008); *see also In re New York Skyline, Inc*., 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) ("Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party."). Bankruptcy Code section 365(b)(3)(C) embodies this concept, providing that assumption and assignment of a shopping center lease is "subject to all the provisions thereof …."

### The Assignment of the Leases Must Be Subject To Accrued but Unbilled or Unasserted Monetary and Nonmonetary Obligations

25. The proposed Asset Purchase Agreement between Debtors and Buyer has several problematic provisions that attempt to limit the Assignee's future liability under the Leases. For example, Paragraph 2.03(a) of the Assumption and Assignment Agreement provides that Buyer will assume "[a]ll Liabilities *solely to the extent* arising from the ownership or operation of the Business or the Assets by Buyer *after the Closing*." (Emphasis added.) Paragraph 2.03(c) further

provides that the assumption of "Seller's and its Subsidiaries' Liabilities under the Real Property Interests" is limited to the extent arising or attributable to any period after the Closing." While Exhibit A to the Notice of Successful Bidder purports to provide that Buyer will assume real property taxes "attributable to the pre-closing period to the extent not paid in the ordinary course of business prior to Closing …" but "subject and limited entirely to the liabilities contemplated by the existing model and the mutually agreeable amendment to the APA," which has not yet been disclosed.

26.     The Bidding Procedures (at ¶ 11), Exhibit 1 to the Bidding Procedures Order, make it clear that Debtors are seeking to sell their assets and assign real property leases "*free and clear* of any pledges, liens, security interests, encumbrances, *claims*, charges, options, and interests thereon." (Emphasis added.)

27.     Bankruptcy Code section 101(5) defines a claim as "[any] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." "As has frequently been observed, this definition is extremely broad." *In re Old Market Group Holdings Corp.*, *supra*, 647 B.R. at 112-113, *citing Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) ("Congress intended ... to adopt the broadest available definition of 'claim.' "); *Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 156 (2d Cir. 2016), *cert denied*, 581 U.S. 1813, 137 S. Ct. 1813 (2017) (Even a right to payment contingent on future events is a claim under Section 101(5) if it "result[s] from pre-petition conduct fairly giving rise to that contingent claim."); *see also JELD–WEN, Inc. v. Van Brunt (In re Grossman's),* 607 F.3d 114, 119-121 (3d Cir. 2010) (a "claim" may exist before a right to payment arose (or accrued) under state law).

28.     There are numerous accruing obligations under the Leases in addition to the payment of monthly "Fixed Minimum Rent." For example, under the North Hills Lease (at Section 5.E), Tenant is responsible for payment of "its pro rata share of Real Estate Texas paid by Landlord." Real property taxes in El Paso County, Texas are billed in arrears, i.e., 2024 real

property taxes are not due until January 31, 2025. Given the multiples limitations on the scope of liabilities under the Leases being assumed and assigned to Assignee, what assurance do Landlords have that real property taxes for 2024, the majority of which "are attributable to the pre-closing period," will be paid in accordance with the terms of the Leases. If Assignee does not assume these obligations in their entirety, how does it propose that Landlords collect the pre-Closing portions of these sums from Debtors that are selling substantially all of their assets and liquidating? These limitations on the scope of assumed liabilities are contrary to Bankruptcy Code section 365(b)(1)(C)'s requirement "that assumption or assignment of [a shopping center lease] is subject to all the provisions thereof" and case law holding that the bankruptcy court may not modify or excise material obligations owing to the non-debtor contracting party. Put another way, the provisions of the proposed Asset Purchase Agreement that attempt to disclaim the assignee's liabilities for accrued but unbilled liabilities do not provide Landlord with adequate assurance of future performance with respect to those obligations.

29. Similarly, the Assignee cannot escape liability for accrued, but not yet due, nonmonetary obligations such as future maintenance and repairs to the leased premises to remedy deferred maintenance or the restoration obligations that arise upon the expiration or earlier termination of the respective Leases. *See, e.g.*, *In re Number Holdings, Inc.*, Case No. 24-10719 (JKS) (D. Del.), *Twenty-Seventh Order Assumption and Assignment of Certain Unexpired Leases, etc.*, entered August 9, 2024 [Docket No. 1145] at ¶ 3.

**Either Assignee or Debtors Must Provide Adequate Assurance of Future Performance of Insurance and Indemnification Obligations:**

30. In addition to the monetary obligations that either Debtors or the Assignee must satisfy under Bankruptcy Code section 365, the Leases contain customary provisions requiring the Tenant to indemnify and hold Landlord harmless from claims, damages and liability arising from Tenant's use and occupancy of the leased premises and to maintain certain insurance coverage. As discussed above, Debtors and Assignee attempt to modify and limit the scope of assumed liabilities

through the Asset Purchase Agreement and the attempted assignment of the Leases "free and clear" of "claims."

31. But what of third party claims (such as a customer "slip and fall") that occurred prior to the Closing Date but are not asserted until after the Closing Date?[3] Debtors, with the burden of demonstrating adequate assurance of future performance, have offered no proposal for satisfaction of the indemnification requirements of the respective Leases should a third party premises liability claim be asserted against Landlord for events or occurrences on the Leased Premises prior to the Closing Date. Landlord anticipates that Debtors will seek to be relieved of any further liability under the Lease in accordance with to Bankruptcy Code section 365(k). As a matter of law, however, a debtor is not entitled to the benefits and protections of Bankruptcy Code section 365(k) where the debtor does not assume and assign the lease *cum onere* – with all benefits and burdens. *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999). In particular, where an agreement between the debtor and assignee attempts to limit the obligations assumed by the assignee only to obligations arising after the closing, there has not been a complete assignment and the debtor is not entitled to the protections of Section 365(k). *Id.* at 81.

32. As the Third Circuit has observed, "[a]n assignment is intended to change only who performs an obligation, not the obligation to be performed." *Medtronic AVE., Inc. v. Advanced Cardiovascular Sys., Inc.,* 247 F.3d 44, 60 (3d Cir. 2001). Accordingly, in order to provide adequate assurance of future performance with respect to the indemnification obligations under the Leases, either (a) Assignee must clearly be required to assume all responsibility for any and all such claims, including any deductible or self-insured retention amount, or (b) Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences <u>prior to</u> the Closing. Such claims for indemnity could include claims for personal injury occurring at the leased

---

[3] Under Texas law, the general statute of limitations for such personal injury claims is two years. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a).

premises where a landlord is joined as a party to a lawsuit or for damage and destruction of property by Debtors or their agents or employees.

### The Financial Information Regarding The Proposed Assignees Proffered To Date Is Inadequate to Establish Adequate Assurance of Future Performance:

33. Bankruptcy Code section 365(b)(3)(A) requires that adequate assurance of future performance of a shopping center lease, such as the Leases, include adequate assurance that "that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease."

34. Here, the proposed assignee of the Leases is Assignee, not Nexus or Buyer. The financial information proffered by Nexus with respect to adequate assurance of future performance of the proposed assignee was that of Buyer, not Assignee, yet Buyer will not be the tenant under the Leases. No financial information *specific to Assignee*, as opposed to the Buyer, has been provided nor have Debtors made any attempt to compare the financial condition of Assignee to that of Tenant at the time it entered into each of the Leases.[4] Assignee is apparently a "newco," a newly-formed acquisition vehicle and the Adequate Assurance Package raises questions as whether even the fixtures and inventory located in the retail stores will be owned by Assignee or by some other entity. No evidence of Assignee's capital or debt resources has been disclosed other than vague references to intended funding from Nexus and Buyer.[5]

35. Adequate assurance of financial performance has been described as "a bedrock requirement under § 365(b)(1) as well as 365(b)(3)." *In re RS Legacy Corp. f/k/a RadioShack Corporation*, Case No. 15-10197 (BLS), Docket No. 2548 (Bankr. D. Del., letter ruling dated June 25, 2015). Absent additional evidence of sufficient capitalization, *committed* funding, or further financial information from Assignee (as opposed to a parent or affiliate), particularly with respect

---

[4] For example, is Assignee a co-obligor or guarantor of secured or unsecured borrowing by Buyer or other subsidiaries and affiliates of Nexus or Buyer?

[5] Where a proposed assignee is entirely dependent on other related entities for capital, without an enforceable right to demand financing or an equity infusion, the assignee cannot demonstrate adequate assurance of future performance. *See, e.g.*, *In re Resource Technology Corp.*, 624 F.3d 376, 384-385 (7th Cir. 2010).

to the capital and debt structure, the proposed assignment of the Leases should be conditioned on a third party guaranty, security deposit (*see* 11 U.S.C. § 365(l)), letter of credit or other credit enhancement. Any guaranty or security arrangement could have a "sunset" provision, expiring after several years if there were no uncured defaults under the Leases during that time, affording each of the Landlords with an appropriate guaranty of performance while the operations at the leased premises by Assignee and the new landlord-tenant relationship "matures."

### III. THE SALE OF DESIGNATION RIGHTS CANNOT EXTEND DEBTORS' TIME TO ASSUME OR REJECT LEASES

36. Among the terms of the modified Asset Purchase Agreement generally described in the Notice of Successful Bidder is the "Post-Closing Designation of Leases." The grant of designation rights – Buyer's right "to cause any Debtor to designate additional leases that have not yet been rejected by such Debtor to Buyer, its affiliates or third parties" – purports to be "[f]rom and after the Closing through the effective date of a chapter 11 plan of liquidation." The details of the designation rights transaction, and associated procedures, have not yet been disclosed, depriving Landlords of the opportunity for meaningful review and analysis. Absent further detail, Landlords cannot determine whether appropriate arrangements and agreements have been made for the continued operations of stores during any designation period, including satisfaction of insurance and indemnification provisions of the Leases, particularly since Debtors will likely have limited liquidity post-Closing and, indeed, may even be administratively insolvent. Even the Notice of Successful Bidder leaves such issues "in the air," stating that "Buyers and Debtors *will agree* to reasonable accommodations under the TSA to permit the operation of any leased facilities retained by the Debtors …" (Emphasis added.)

37. With respect to the timing of any designation rights transaction, it is well-established that the sale of leasehold designations rights does not excuse a debtor's compliance with the requirements of section 365(d)(4). *See, e.g., In re Ames Dept. Stores, Inc.*, 287 B.R. 112, 115 (Bankr. S.D.N.Y. 2002). Under the plain terms of Bankruptcy Code section 365(d)(4), the Debtors' time to assume or reject is limited to the *earlier of* 120 days after the Petition Date (as

may be extended for "cause" pursuant to 11 U.S.C. § 365(d)(4)(B)(i) or "the date of the entry of an order confirming a plan." While an open-ended extension of the time to assume or reject may have been permissible prior to the 2005 amendments to Bankruptcy Code section 365(d)(4) (*see., e.g., Matter of American Healthcare Management, Inc.*, 900 F.2d 827, 830 (5th Cir. 1990) (discussing open-extended extensions)), such an extension is not permissible here. Debtors have not yet moved to extend the time to assume or reject but, even if they do, the maximum extension of time to assume or reject permissible under Bankruptcy Code section 365(d)(4) is April 7, 2025, i.e., 210 days after the Petition Date. Any approval of a modified Asset Purchase Agreement cannot modify the plain terms of Bankruptcy Code section 365(d)(4).

### IV. THE GENERALIZED TERMS OF A PROPOSED TRANSITION SERVICES AGREEMENT ARE PROBLEMATIC

38. As described above, the Adequate Assurance Package asserts that "[o]ne of more arm's length services agreements between the Big Lots enterprise and BL RE Holdings, LLC will allow the enterprise to continue to use such leased real property locations in exchange for paying rent, charges and other amounts on a pass-through basis (without any profit or premium) to BL RE Holdings, LLC (the "Assignee"), which such rent amounts shall ultimately be paid by BL RE Holdings, LLC to the landlord in respect of such real property leases." Whether or not such transition services agreements may be characterized as subleases, licenses or *de facto* assignments cannot be meaningfully assessed without disclosure of such agreements in advance of the Closing.[6]

39. While Bankruptcy Code section 365(f) invalidates prohibitions and restrictions on the assignment of real property leases, the statute does not speak to subletting, license agreements or other occupancy arrangements.[7] Accordingly, the question of a trustee or debtor-in-possession's

---

[6] At this point in the procedural timeline, the belated disclosure of a transition services agreement that might impact the Leases potentially leaves inadequate time for reasonable review, analysis and response. The Due Process Clause of the United States Constitution applies to proceedings under the Bankruptcy Code. See, e.g., In re Center Wholesale, Inc., 759 F.2d 1440, 1448 (9th Cir. 1985); In re Hobdy, 130 B.R. 318, 320 (9th Cir. BAP 1991). "The fundamental requisites of due process consist of notice and an opportunity to be heard at a meaningful time and in a meaningful manner." Turney v. Federal Deposit Insurance Corporation, 18 F.3d 865, 868 (10th Cir. 1994).

[7] Similarly, Section 365(k) is silent as to subletting.

right to sublease or license the leased premises is governed by the terms of the respective Leases and applicable state law. Debtors have made no attempt to comply with the terms of the Leases, notwithstanding the mandate of Bankruptcy Code section 365(d)(3), requiring that a trustee or debtor-in-possession "timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected." Similarly, if the Leases are assigned to Assignee, any post-assignment transaction with Debtors, as described in the Adequate Assurance Package, is governed by the terms of the Leases not Bankruptcy Code section 365.

## V.   RESERVATION OF RIGHTS

40.   Landlords fully reserve their rights to (a) further supplement or amend this Limited Objection and assert any additional objections, including any additional obligations that may arise under the Leases in the ordinary course of business, (b) further object to any further version of the Asset Purchase Agreement or any Transition Service Agreement, when available, and (c) further object on additional grounds based upon any new information provided by Debtors or upon any different relief requested by Debtors, or as may be developed by formal or informal discovery

## VI.   JOINDER

41.   To the extent not inconsistent with the foregoing, Landlord joins in the objections of other shopping center landlords to the proposed assumption and assignment of retail leases to Assignee on the terms proposed and any designation rights and transition service agreements in connection with the Nexus transaction.

## VII.   CONCLUSION

42.   While Landlords continue to work with Debtors towards consensual resolutions, and are cautiously optimistic that agreement can ultimately be reached, Debtors have declined any extension of time to respond to the Assumption and Assignment Notice and Notice of Successful Bidder, necessitating the filing of this Limited Objection. Debtors have thus far failed to sustain their burden of demonstrating adequate assurance of future performance with respect to the

proposed assumption and assignment of the Leases. Any assignment of the Leases must be subject to the existing terms, conditions and covenants of the respective Leases and Assignee must provide for a complete assumption and assignment of all lease obligations. Any transition services agreement that implicates either of the Leases must comply with the terms of the Leases.

Dated: November 6, 2024
Wilmington, Delaware

Respectfully submitted,

*/s/ Leslie C. Heilman*
Leslie C. Heilman (DE 4716)
Laurel D. Roglen (DE 5759)
Nicholas J. Brannick (DE 5721)
Margaret Vesper (DE 6995)
BALLARD SPAHR LLP
919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel: (302) 252-4465
Fax: (302) 252-4466
Email: heilmanl@ballardspahr.com
roglenl@ballardpshar.com
brannickn@ballardspahr.com
vesperm@ballardspahr.com

-and-

Ivan M. Gold (admitted *pro hac vice*)
ALLEN MATKINS LECK GAMBLE
 MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
Telephone: (415) 837-1515
Facsimile: (415) 837-1516
E-mail: igold@allenmatkins.com

*Attorneys for River Oaks Properties, Ltd. and ROP North Hills, LLC*