IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>Re:  DI 18, 511, 612, 683<br>Obj. Deadline:  Nov. 6, 2024 at 4 p.m. (ET) |

### OBJECTION OF CERTAIN LANDLORDS TO DEBTORS' PROPOSED CURE AMOUNTS AND ASSUMPTION AND ASSIGNMENT OF CERTAIN LEASES

Aston Properties, Basser-Kaufman, Benderson Development, LLC, Cloverleaf Group, Delco Development Co. of Hicksville, L.P., Kite Realty Group, NNN REIT, Inc., NewMark Merrill Companies, Inc., Regency Centers, L.P., SITE Centers Corp., and TLM Realty Corp. (each, a "Landlord" and, collectively, the "Landlords"), by and through their undersigned counsel, Kelley Drye & Warren LLP, hereby submit this limited objection (the "Objection") to the potential assumption and assignment of their Leases (as defined below) by the above-captioned debtors (collectively, "Debtors") and the Assignment Notices (as defined below).  In support of this Objection, Landlords respectfully state as follows:

### PRELIMINARY STATEMENT

1.     Landlords do not generally oppose the sale of the Debtors' assets to a viable, well-capitalized entity that will result in a healthier, go-forward company; however, Landlords file this

---

[1]    The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

objection to assert their rights to sufficient evidence of adequate assurance of future performance by such entity, the curing of all defaults under the Leases, and compliance with all provisions of the Leases on a go-forward basis.

2. Specifically, Landlords assert that: (i) Debtors or the proposed assignee must cure all amounts due and owing under the applicable Lease, including non-monetary defaults, and satisfy any pecuniary losses; (ii) Debtors must provide Landlords with adequate assurance of future performance with respect to any proposed assignee of the Leases; (iii) Debtors must timely pay all post-petition rent and additional rent due under the Leases; (iv) the proposed assignee must provide Landlords with security as required by section 365(l) of the Bankruptcy Code; and (v) any designation rights period must be consistent with and not violate the time periods set forth in section 365(d)(4) of the Bankruptcy Code with respect to the assumption and rejection of leases.

3. Landlords will continue to work with Debtors to address these outstanding issues, but reserve the right to argue them at the hearing.

## BACKGROUND

4. Landlords are the owners, affiliates, or managing agents of the properties listed on the attached **Exhibit 1** (collectively, the "Leased Premises") where Debtors lease non-residential real estate pursuant to written leases (each, a "Lease," and, collectively, the "Leases"). Many of the Leased Premises are located in shopping centers as that term is used in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

5. On September 9, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with this Court. Since the Petition Date, Debtors have continued to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. On the Petition Date, Debtors filed a motion to establish bidding procedures for the sale of Debtors' assets, a timeline for the bidding and sale process, and procedures for the potential assumption and assignment of leases and contracts (the "Bid Procedures Motion").[2]

7. On October 15, 2024, Debtors filed the *Notice of Filing of Revised Exhibits* to the Bid Procedures Motion,[3] attaching as Exhibit C an amendment to the Proposed Stalking Horse APA which provides for a period for the Stalking Horse Bidder to designate contracts for assumption or rejection (the "Designation Rights Period") to run through the Closing Date.

8. On October 16, 2024, Debtors filed the *Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount* (the "First Assignment Notice").[4] The First Assignment Notice included a schedule of Potential Assumed Contracts, which identified contracts and leases that may be assumed and assigned as part of the sale, along with Debtors' proposed cure amount for each of the contracts and leases.

9. On October 20, 2024, Debtors filed the *Notice of Filing of (I) Revised Proposed Bidding Procedures Order and (II) Proposed Stalking Horse Sale Order*[5], which attached as Exhibit C a proposed order approving the sale to the Stalking Horse Bidder (the "Sale Order").

10. On October 25, 2024, the Court entered an order approving the Bid Procedures Motion.[6]

---

[2] Docket No. 18. Terms capitalized but not defined herein are given the meanings ascribed to them in the Bid Procedures Motion.

[3] Docket No. 495.

[4] Docket No. 511.

[5] Docket No. 558.

[6] Docket No. 612.

11. On October 30, 2024, Debtors filed the *Notice of Successful Bidder for the Sale of the Debtors' Assets* (the "Successful Bidder Notice").[7] The Successful Bidder Notice provides, in relevant part, "[f]rom and after the Closing through the effective date of a chapter 11 plan of liquidation, the Buyer shall have the right to cause any Debtor to designate additional leases that have not yet been rejected by such Debtor to Buyer, its affiliates, and third parties (subject to appropriate notice and opportunity to object for counterparties)..." Successful Bidder Notice at Ex. A, ¶ 3.

12. On October 31, 2024, Debtors filed the *Notice of Proposed Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* (the "Second Assignment Notice" and, together with the First Assignment Notice, the "Assignment Notices").[8] The Second Assignment Notice included a schedule of Proposed Assumed Contracts, which identified contracts that may be assumed and assigned as part of the sale, along with Debtors' proposed cure amount for each of the contracts. The Debtors' proposed cure amounts for the Leases are included on **Exhibit 1**, attached hereto, in the column titled "Debtor Cure Amount."

## OBJECTION

**I.    Debtors Must Satisfy The Correct Cure Amounts Before The Leases Can Be Assigned**

13. Landlords dispute Debtors' proposed cure amounts listed on **Exhibit 1**, attached hereto, in the column titled "Debtor Cure Amount." The correct cure amounts for Landlords' Leases as of October 31, 2024 are set forth on **Exhibit 1**, attached hereto, in the column titled "Landlord Cure Amount."

---

[7]    Docket No. 661.

[8]    Docket No. 683.

14. Section 365(b)(1)(A) of the Bankruptcy Code provides that, unless a debtor either (a) cures all defaults existing under a lease, or (b) provides a lessor with adequate assurance that it will promptly cure those defaults, it cannot assume and assign such lease. *See* 11 U.S.C. § 365(b)(1)(A). Prior to assumption and assignment, Debtors are also required by section 365(b)(1)(B) of the Bankruptcy Code to compensate Landlords for any actual pecuniary loss, including the payment of related attorneys' fees. *See* 11 U.S.C. §365(b)(1)(B). Attorneys' fees due under the Leases are compensable. *See LJC Corp. v. Boyle*, 768 F.2d 1489, 1494-96 (D.C. Cir. 1985); *In re Bullock*, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); *In re Crown Books Corp.*, 269 B.R. 12, 14-15 (Bankr. D. Del. 2001); *In re BAB Enterprises, Inc.*, 100 B.R. 982, 984 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986).

15. Pursuant to the Leases, Debtors are obligated to pay regular installments of fixed monthly rent, percentage rent, and/or gross rent, as well as a share of common area maintenance costs and expenses, real estate taxes, and assessments. Certain of those amounts remain outstanding and are included in the Landlord Cure Amounts. As part of Landlords' pecuniary losses, they are entitled to attorneys' fees in connection with Debtors' obligation to cure all monetary defaults under the Leases, an estimate of which are included in the Landlord Cure Amounts.

16. To the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue, and/or Landlords suffer other pecuniary losses with respect to the Leases, Landlords reserve the right to amend the Landlord Cure Amounts to reflect such additional amounts or to account for year-end adjustments, including, without limitation, adjustments for 2023, 2024, and 2025, which have not yet been billed or have not yet become due under the terms of the Leases

(the "<u>Adjustment Amounts</u>").  Debtors must be responsible for satisfying all accrued but unbilled obligations under the Leases, including the Adjustment Amounts, if any, when due in accordance with the terms of the Leases, regardless of when such Adjustment Amounts were incurred. Landlords further reserve the right to amend the Landlord Cure Amounts to include additional amounts that continue to accrue, including non-monetary obligations, and any other obligations that arise and/or become known to Landlords prior to the assumption and assignment of the Leases.

**II.     Debtors and/or The Proposed Assignee Must Provide Evidence of Adequate Assurance of Future Performance Under the Leases**

17.    In addition to the curing of all defaults, any assignment of the Leases is also conditioned upon Debtors or the proposed assignee providing the Landlord with adequate assurance of future performance. *See* 11 U.S.C. § 365(b)(1)(C).

*(A)     Adequate Assurance of Future Performance for Shopping Center Leases*

18.    In connection with the assumption and assignment of leases, shopping center landlords are afforded special statutory protections under the Bankruptcy Code in the form of adequate assurance of future performance. *In re Joshua Slocum*, 922 F.2d at 1086; *In re Trak Auto Corp.*, 277 B.R. 655 (Bankr. E.D. Va. 2002). Section 365(f)(2) provides:

> The trustee may assign an executory contract or unexpired lease of the debtor only if–
>
>   (A)  the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
>   (B)  adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

19.    Section 365(b)(1) of the Bankruptcy Code provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease

6

unless, at the time of assumption of such contract or lease, the trustee–

> (A)  cures, or provides adequate assurance that the trustee will promptly cure, such default…;
>
> (B)  compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease for any actual pecuniary loss to such party resulting from such default; and
>
> (C)  provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

20.   In connection with the assumption and assignment of a shopping center lease, adequate assurance of future performance includes adequate assurance:

> (A)   of the source of rent… due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee… shall be similar to the financial condition and operating performance of the debtor… as of the time the debtor became the lessee under the lease;
>
> (B)   that any percentage rent due under such lease will not decline substantially;
>
> (C)   that assumption . . . of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement related to such shopping center; and
>
> (D)   that assumption . . . of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

21.   Debtors bear the burden of proving adequate assurance of future performance in connection with the potential assumption and assignment of the Leases. *In re F.W. Restaurant Assoc., Inc.*, 190 B.R. 143 (Bankr. D. Conn. 1995); *In re Rachels Indus. Inc.*, 109 B.R. 797, 802

(Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

22. To determine whether the requirements of adequate assurance of future performance will be satisfied, at a minimum, Landlords and their attorneys must receive the following information from the proposed assignee of the Leases (collectively, the "<u>Adequate Assurance Information</u>"):

    a. The exact name of the entity that will be designated as the proposed assignee of the Leases and any guarantor;

    b. Audited (or un-audited, if audited is not available) financial statements and any supplemental schedules for the calendar or fiscal years ended 2022, 2023, and 2024 for both the proposed assignee and any guarantors;

    c. The proposed assignee's and any guarantor's 2025 and 2026 business plans including sales and cash flow projections;

    d. Any financial projections, calculations, and/or financial *pro-formas* prepared in contemplation of purchasing the Leases;

    e. A detailed summary of the proposed assignee's and guarantor's experience operating retail stores; and

    f. The number of retail stores the proposed assignee and any guarantor operates and all trade names used.

23. Landlords may also need similar information for Debtors in the years when Debtors entered into the Leases to appropriately evaluate the ability of the proposed assignee to provide adequate assurance of future performance.

24. Unless and until Landlords receive all of this information, Debtors have not satisfied their burden pursuant to 11 U.S.C. § 365(b)(3).

    ***(B)    The Leases Must Be Assumed or Assumed and Assigned Cum Onere***

25. Section 365(b)(3)(C) of the Bankruptcy Code provides that the assumption of a shopping center lease "is subject to all the provisions thereof…". 11 U.S.C. § 365(b)(3)(C).

Bankruptcy courts have described the assumption of an unexpired lease as "an all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected." *See, e.g.*, *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003).

26.     As the court noted in *In re Washington Capital Aviation & Leasing*, 156 B.R. at 167, 175 n. 3 (Bankr. E.D. Va. 1993):

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the ... estate from any liability for any breach of such ... lease occurring after such assignment." A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. *See* Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed. 1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ("delegation of performance ... does not discharge any duty or liability of the delegating obligor")). While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and relieves the estate from all liability under the lease following assignment.

*See also In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) (adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach"). Debtors are not entitled to the benefits and protections of section 365(k) if they do not assume and assign a lease *cum onere* – with all benefits and burdens. *See, e.g., American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999).

27.     Furthermore, Debtors or the proposed assignee must be required to comply with all contractual obligations to indemnify and hold Landlords harmless for events which occurred before assumption and assignment, but which were not known to Landlords as of the date of the assumption and assignment. This includes, but is not limited to, (i) claims for personal injury that occurred at the Leased Premises, (ii) damage and destruction to the Leased Premises or property

by Debtors or their agents, and (iii) environmental damage or clean-up. To cure possible pre-assignment, non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Leases, either (a) Debtors or the proposed assignee must be required to satisfy any and all such claims, notwithstanding anything to the contrary contained in a plan or any court order, or (b) Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences that occurred prior to the effective date of an assignment. Such claims for indemnity could include claims for personal injury occurring at the Leased Premises where the applicable Landlord is joined as a party to a lawsuit or for damage and destruction of property by Debtors or their agents or employees.

28.   Finally, Landlords assert that, if Debtors seek to assume and assign the Leases, the proposed assignee should be required to execute short-form assumption and assignment agreements with Landlords so that Landlords will be in privity with their new tenant.

### III.   Demand For Security

29.   Section 365(l) of the Bankruptcy Code provides, in pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

30.   In the ordinary course of business, Landlords require security deposits, letters of credit, or guaranties when leasing (or assessing an assignment of a lease) to certain companies based on their financial information and history. In connection with the proposed assumption and assignment of the Leases, Landlords hereby demand such security in one of those forms as required

by section 365(l) of the Bankruptcy Code. Until the exact financials of the proposed assignee are known to Landlords, Landlords reserve the right to specify the exact form and amount of such security; however, Landlords would typically require a parent or personal guaranty in connection with leasing to a new tenant.

**IV.    Debtors Must Be Responsible For Timely Payment Of All Post-Petition Rent And Additional Rent Due Under The Leases Until They Are Assumed, Assumed And Assigned, or Rejected**

  31. Section 365(d)(3) of the Bankruptcy provides, in pertinent part:

> The [debtor] shall timely perform all the obligations of the debtor…arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of [the Bankruptcy Code].

11 U.S.C. § 365(d)(3).

  32. Landlords request that the assumption and assignment of the Leases be conditioned upon Debtors' timely performance of all obligations arising under the Leases before the Leases are assumed, assumed and assigned, or rejected pursuant to section 365(d)(3) of the Bankruptcy Code, including, without limitation, the payment in full of rent and additional rent on the first day of each month.

**V.    Designation Rights Period Must Not Extend Past The Statutory Deadline**

  33. Section 365(d)(4) of the Bankruptcy provides that Debtors must assume or reject unexpired leases of nonresidential real property "by the earlier of (i) the date that is 120 days after the date of the order for relief; or (ii) the date of the entry of an order confirming a plan." 11 U.S.C. § 365(d)(4)(A). Section 365(d)(4) allows for a non-consensual 90-day extension of the period of time within which to assume or reject unexpired leases of nonresidential real property. *See* 11 U.S.C. § 365(d)(4)(B)(i).

34. The Designation Rights Period, therefore, should, at a maximum, run through the earlier of the date of entry of an Order confirming a plan and January 7, 2025. The Designation Rights Period set forth in the Successful Bidder Notice should not create a mechanism for the Debtors or the proposed assignee to circumvent these statutory protections. Landlords reserve their rights if further revised versions of the Sale Order or Proposed Stalking Horse APA would run afoul of the deadlines set forth in section 365(d)(4) of the Bankruptcy Code.

## RESERVATION OF RIGHTS AND JOINDER

35. Landlords reserve the right to amend and/or supplement this Objection on any basis, including, without limitation, by amending the Landlord Cure Amounts and by adding or supplementing objections to the proposed assignment or adequate assurance of future performance information provided by Debtors.

36. To the extent not inconsistent with this Objection, Landlords join in the objections of other landlords and contract counterparties.

## CONCLUSION

**WHEREFORE**, Landlords respectfully request that the Court enter an order (i) conditioning the assumption and assignment of the Leases on (a) Debtors or the proposed assignee providing adequate assurance of future performance in accordance with section 365(b) of the Bankruptcy Code; and (b) Debtors or the proposed assignee promptly paying the cure amounts set forth in the column titled "Landlord Cure Amount" on **Exhibit 1**, attached hereto, plus any additional pecuniary losses suffered by Landlords; and (ii) granting such other and further relief as the Court deems just and proper.

Dated: November 6, 2024

**LAW OFFICE OF SUSAN E. KAUFMAN, LLC**

*/s/ Susan E. Kaufman*
Susan E. Kaufman (DE Bar No. 3381)
919 N. Market Street, Suite 460
Wilmington, DE 19801
Tel: (302) 472-7420
Fax: (302) 792-7420
Email: skaufman@skaufmanlaw.com

-and-

**KELLEY DRYE & WARREN LLP**
Robert L. LeHane
Jennifer D. Raviele
Allison B. Selick
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
Email: rlehane@kelleydrye.com
        jraviele@kelleydrye.com
        aselick@kelleydrye.com

**Exhibit 1**

**Aston Properties**

| Store No. | Location | Debtor Cure Amount | Landlord Cure Amount |
|---|---|---|---|
| 5234 | Culpepper, VA | $49,812 | $57,311.54 |
| 1152 | Front Royal, VA | $26,212 | $33,711.55 |
| 5276 | Salisbury, NC | $23,841 | $58,415.50 |

**Basser-Kaufman**

| Store No. | Location | Debtor Cure Amount | Landlord Cure Amount |
|---|---|---|---|
| 1783 | Derby, CT | $59,493 | $97,251.92 |
| 1744 | West Babylon, NY | $36,963 | $45,920 |
|  | West Babylon, NY (storage) | $0 | $7,000 |

**Benderson Development, LLC**

| Store No. | Location | Debtor Cure Amount | Landlord Cure Amount |
|---|---|---|---|
| 548 | Leesburg, FL | $20,657 | $85,465.41 |
| 1769 | Niagara Falls, NY | $30,027 | $118,356.40 |

**Cloverleaf Group**

| Store No. | Location | Debtor Cure Amount | Landlord Cure Amount |
|---|---|---|---|
| 1017 | Portage, IN | $17,669 | $30,668.68 |

**Delco Development Co. of Hicksville, LP**

| Store No. | Location | Debtor Cure Amount | Landlord Cure Amount |
|---|---|---|---|
| 5236 | Hicksville, NY | $107,357 | $472,746.51 |

**Kite Realty Group**

| Store No. | Location | Debtor Cure Amount | Landlord Cure Amount |
|---|---|---|---|
| 4639 | Las Vegas, NV | $43,821 | $51,320.76 |
| 1964 | Houston, TX | $21,575 | $31,013.31 |

**NNN REIT, Inc.**

| Store No. | Location | Debtor Cure Amount | Landlord Cure Amount |
|---|---|---|---|
| 5413 | Florence, AL | $38,634 | $55,566.16 |
| 5223 | Dover, NJ | $73,736 | $127,431.15 |
| 1215 | Webster Groves, MO | $21,859 | $37,235.49 |

**NewMark Merrill Companies, Inc.**

| Store No. | Location | Debtor Cure Amount | Landlord Cure Amount |
|---|---|---|---|
| 4256 | Riverside, CA | $19,991 | $44,634.44 |

**Regency Centers, L.P.**

| Store No. | Location | Debtor Cure Amount | Landlord Cure Amount |
|---|---|---|---|
| 4258 | Miami, FL | $48,392 | $58,570.15 |

**SITE Centers Corp.**

| Store No. | Location | Debtor Cure Amount | Landlord Cure Amount |
|---|---|---|---|
| 4720 | Union, NJ | $88,087 | $334,660.53 |

**TLM Realty Corp.**

| Store No. | Location | Debtor Cure Amount | Landlord Cure Amount |
|---|---|---|---|
| 5469 | Enid, OK | $30,298 | $40,055.40 |
| 5333 | Dover, DE | $28,965 | $70,746.79 |
| 5354 | Blue Ash, OH | $62,471 | $71,471.00 |
| 5373 | Zanesville, OH | $34,126 | $52,922.11 |
| 5458 | Cleveland, OH | $28,253 | $129,227.69 |