**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,[1]<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: November 6, 2024 at 4:00 p.m. (ET)**<br>**Hearing Date: November 12, 2024 at 1:30 p.m. (ET)**<br><br>**Related Docs: 18, 511, 612, 661 & 683** |

**OBJECTION AND RESERVATION OF RIGHTS OF KROGER LIMITED PARTNERSHIP I TO THE (I) NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND PROPOSED CURE AMOUNT AND (II) PROPOSED SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**

Kroger Limited Partnership I ("Kroger"), as a sublandlord to one of the Debtors, files this objection and reservation of rights (this "Objection") to the *Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and Cure Amount* (Docket No. 511) (the "First Assumption Notice"), the *Notice of Proposed Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* (Docket No. 683) (the "Second Assumption Notice" and together with the First Assumption Notice, the "Assumption Notices")[2] and the Proposed Sale (defined herein). In support of this Objection, Kroger respectfully states:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms not defined herein shall have the meaning ascribed in the Assumption Notices or Bidding Procedures Order (defined herein), as applicable.

**BACKGROUND**

1. On September 9, 2024 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court").

2. Big Lots Stores, Inc. ("BLSI") and Kroger are parties to that certain Sublease Agreement, dated as of November 12, 2002 (the "Sublease") concerning that certain property commonly known as 128 Kilmayne Drive, Cary, North Carolina 27511 (the "Premises").

3. The Premises is located in a "shopping center" as that term is used in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086–87 (3d Cir. 1990).

4. On the Petition Date, the Debtors filed *Motion of Debtors for Entry of Orders (I) (A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures, (II) (A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Subleases, and (III) Granting Related Relief* (Docket No. 18) (the "Bid Procedures Motion"), pursuant to which the Debtors sought, among other things, entry of an order establishing bid procedures for the sale (the "Proposed Sale") of substantially all of the Debtors' assets and procedures for the assumption and assignment of the Debtors' unexpired leases.

5. On October 25, 2024, this Court entered the *Order (I) Approving Bidding Procedures for Sale of Debtors' Assets, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (IV) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (V) Approving Assumption and Assignment Procedures,*

*and (VI) Granting Related Relief* (Docket No. 612) (the "Bidding Procedures Order") which, among other things, approved the Bidding Procedures and procedures for (i) filing objections to the Proposed Sale and (ii) providing notice to lease counterparties of the potential assumption and assignment of any unexpired leases in connection with the Proposed Sale. Pursuant to the Bidding Procedures Order, November 6, 2024 is the Cure Objection Deadline and Sale Objection Deadline.

6. On October 30, 2024, the Debtors filed the *Notice of Successful Bidder for the Sale of the Debtors' Assets* (Docket No. 661) (the "Successful Bidder Notice"), pursuant to which the Debtors selected Gateway BL Acquisition, LLC (the "Successful Bidder") as the successful bidder for the sale of substantially all the Debtors' assets. The Successful Bidder Notice provides, in relevant part, "[f]rom and after the Closing through the effective date of a chapter 11 plan of liquidation, the Buyer shall have the right to cause any Debtor to designate additional leases that have not yet been rejected by such Debtor to Buyer, its affiliates, and third parties (subject to appropriate notice and opportunity to object for counterparties)…" Successful Bidder Notice at Ex. A, ¶ 3 (the "Designation Rights Period").

7. As contemplated by the Bidding Procedures Order, on October 31, 2024, the Debtors filed the Second Assumption Notice which identifies certain executory contracts and unexpired leases that the Debtors may assume and assign in connection with the Proposed Sale, including the Sublease. Pursuant to the Second Assumption Notice, the Debtors propose a $19,239.37 cure amount (the "Proposed Cure Amount") for the Sublease.

## OBJECTION

8. Although Kroger does not object to the Debtors' right to sell certain of the Debtors' assets, Kroger objects to the assumption and assignment of the Sublease, the Proposed Sale, and BLSI's right to grant designation rights ("Designation Rights") to the Successful Bidder to the extent

{1457.002-W0078114.}   3

that Kroger's rights under the Sublease, the Bankruptcy Code and applicable law are impaired, limited, and/or modified. Moreover, any assumption and assignment of the Sublease must be conditioned on BLSI's compliance with the requirements of section 365 of the Bankruptcy Code and the Sublease, including, but not limited to, paying all amounts due and owing under the Sublease through the effective date of the assumption and assignment of the Sublease and providing adequate assurance of future performance information to Kroger in accordance with the terms of the Bidding Procedures Order. Furthermore, Kroger objects to the Designation Rights Period, should such period run afoul of the time period to assume and reject unexpired leases of nonresidential real estate set forth in section 365(d)(4) of the Bankruptcy Code.

### A. The Debtors' Proposed Assumption of the Sublease Must be Conditioned on Payment of all Obligations due Under the Sublease.

9. As of the date of this Objection, the aggregate cure amount owing under the Sublease is not less than $38,478.74, plus unbilled charges that are accruing, including, but not limited to reconciliation amounts for CAM, taxes and insurance, which may come due in the future, and any indemnity and contribution obligations (the "Cure Amount"). The Cure Amount may increase prior to any actual date of assumption and assignment of the Sublease if BLSI does not pay all amounts that accrue after the date of this Objection, and any taxes, common area maintenance, and other amounts that may come due, pursuant to the terms of the Sublease, and regardless of when those amounts accrued.

10. Kroger notes that the Sublease imposes certain indemnification and contribution obligations that arise out of litigation or other claims that may be asserted or threatened against Kroger in connection with the Sublease. Each of these indemnification and contribution covenants and obligations must be assumed, paid, and otherwise cured if the Sublease is to be assumed and assigned as part of the Proposed Sale. Kroger objects to the Proposed Cure Amount to the extent that it fails to

include amounts related to the indemnification and contribution covenants and obligations for which BLSI is responsible to Kroger under the Sublease.

11. In connection with the assumption and assignment of the Sublease, all rights of Kroger under the Sublease (including defenses thereto) must be preserved. As such, any order approving the Proposed Sale should specify that Kroger's setoff, recoupment, and subrogation rights are preserved, and that BLSI and any proposed assignee remain liable to Kroger for: (i) any accrued but unbilled charges under the Sublease, including, but not limited to, year-end adjustments for common area maintenance, taxes, and similar charges; (ii) any regular or periodic adjustment or reconciliation charges that come due under the Sublease; (iii) any percentage rent that may be due under the Sublease; (iv) any non-monetary defaults; and/or (v) any insurance, indemnification, and other contractual obligations under the Sublease regardless of when they accrued. This result is mandated by the requirement that BLSI cure all arrears and that BLSI provides adequate assurance of future performance under the terms of the Sublease. *See* 11 U.S.C. § 365(b)(1).

12. To the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue, and/or Kroger suffers other pecuniary losses with respect to the Sublease, Kroger further reserves the right to amend the Cure Amount to: (i) reflect such additional amounts; and (ii) to account for year-end adjustments, including, without limitation, adjustments for calendar years 2023 and 2024 (collectively, the "Adjustment Amounts"), which have not yet been billed or have not yet become due under the terms of the Sublease. BLSI or any assignee of the Sublease must be responsible for satisfying the Adjustment Amounts when due in accordance with the terms of the Sublease regardless of when such Adjustment Amounts were incurred. To the extent that BLSI is to remain responsible for any Adjustment Amounts, Kroger requests that at the closing of the Sale, such funds be placed into a separate and segregated escrow account outside of BLSI's chapter 11 bankruptcy estate, so that

there is no question that sufficient, earmarked, unencumbered funds will be available to pay Kroger when said Adjustment Amounts become due and owing to Kroger in accordance with the terms of the Sublease.

13. Further, under section 365(k) of the Bankruptcy Code, BLSI remains responsible for any contractual obligations under the Sublease that arose prior to the assumption and assignment of the Sublease, thus, any provision in the proposed order approving the Sale that purports to release BLSI from any further liability under the Sublease, including those contractual obligations that arose prior to the assumption and assignment of the Sublease, should be stricken.

14. Finally, the proposed order approving the Sale or any order approving the assumption and assignment of the Sublease must provide, among other things, that BLSI, the Successful Bidder, or the proposed assignee promptly pay to Kroger all amounts due and owing under the Sublease through the effective date of assumption and assignment of the Sublease (i.e., the Cure Amount), as the same may increase to reflect attorneys' fees and any other amounts that become due or are determined after the date of this Objection.

       **B.**      **BLSI Must Demonstrate Adequate Assurance of Future Performance.**

15. In accordance with section 365 of the Bankruptcy Code, Kroger must be provided with sufficient information with respect to adequate assurance of future performance prior to the potential assumption and assignment of the Sublease to the Successful Bidder or proposed assignee.

16. The adequate assurance of future performance information provided to Kroger as part of the Proposed Sale must demonstrate that the heightened standards for adequate assurance of future performance in a shopping center will be satisfied by the Successful Bidder or proposed assignee in accordance with section 365 of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d at 1086; *L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.)*, 209 F.3d 291, 299

(3d Cir. 2000).

17.     Under this requirement, BLSI must provide to Kroger assurances: (a) of the source of rent and other consideration due under the Sublease, and that the financial condition and operating performance of the Successful Bidder or proposed assignee and any guarantor shall be similar to the financial condition and operating performance of BLSI and any guarantor of BLSI at the time BLSI entered into the Sublease; (b) that any percentage rent due under the Sublease, if applicable, will not decline substantially; (c) that assumption and assignment of the Sublease is subject to all provisions of the Sublease, including but not limited to radius, location, use, or exclusivity provisions, and will not breach any such provision contained in another lease; and (d) that assumption or assignment of the Sublease will not disrupt any tenant mix in the shopping center. *See* 11 U.S.C. § 365(b)(3). BLSI bears the burden of demonstrating the Successful Bidder's or proposed assignee's ability to provide adequate assurance of future performance. *In re Lafayette Radio Elecs. Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991); *see also, e.g.*, *In re Federated Dep't Stores, Inc.*, 135 B.R. 941, 944 (Bankr. S.D. Ohio 1991); *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 308 (Bankr. S.D.N.Y. 1983).

18.     In order to satisfy the heightened adequate assurance of future performance burden, the Successful Bidder or any proposed assignee of the Sublease must provide the following information: (i) the specific name of the proposed assignee, and the proposed name under which the proposed assignee intends to operate the store; (ii) the proposed assignee's intended use for the space; (iii) audited financial statements and annual reports for the past three (3) years, including all supplements or amendments thereto; (iv) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projections for the Sublease, and any financial projections, calculations and/or proformas prepared in contemplation of purchasing the Sublease; (v) all documents and other evidence of the proposed assignee's retail experience and

experience operating stores in a shopping center; and (vi) a contact person for the proposed assignee Kroger may directly contact in connection with the adequate assurance of future performance information.[3]

19. Additionally, because the Successful Bidder is a newly formed entity with limited financial wherewithal information and insufficient operating experience, Kroger demands that the Successful Bidder provide a credit enhancement as part of its adequate assurance of future performance demonstration, such as: (i) a guaranty of future performance from its parent company, Nexus Capital Management LP; (ii) a letter of credit; or (iii) a cash security deposit, as required by section 365(l) of the Bankruptcy Code.

20. Kroger demands strict proof of the Successful Bidder's or the proposed assignee's ability to establish adequate assurance of future performance with respect to the Sublease. Kroger is entitled to the full benefit of its bargain under the Sublease and the full protections provided by section 365 of the Bankruptcy Code. Any assumption and assignment of the Sublease must be in accordance with all provisions of the Sublease and the Bankruptcy Code. *See, e.g.*, *In re Entm't, Inc.*, 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998).

### C. **BLSI is Required to Assume and Assign the Sublease in its Entirety, Including Any and All Obligations Contained Therein, and all Kroger's Rights Under the Sublease and Applicable Law Must be Preserved.**

21. Any assumption and assignment of the Sublease requires BLSI to assume and assign the Sublease in its entirety, including any and all conditions, covenants, monetary and non-monetary obligations and terms contained in the Sublease for which BLSI is responsible. *See, e.g., In re N.Y. Skyline, Inc.*, 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) ("When the debtor assumes the

---

[3] Kroger expressly reserves the right to request further adequate assurance information that Kroger may deem necessary, in its sole and unfettered discretion, to make an informed decision as to the ability of any proposed assignee of the Sublease to satisfy the requirements of section 365 of the Bankruptcy Code.

lease . . . it must assume both the benefits and the burdens of the contract. Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party." (quotation omitted)); *In re Shangra-La, Inc.*, 167 F.3d 843, 849 (4th Cir. 1999) ("When the debtor assumes its unexpired lease . . . it assumes it *cum onere*—the debtor must accept [the] obligations of the executory contract along with the benefits." (citing *Adventure Res., Inc. v. Holland*, 137 F.3d 786, 798 (4th Cir.), *cert. denied*, 525 U.S. 962 (1998))); *see also, e.g.*, *Citibank, N.A. v. Tele/Res., Inc.*, 724 F.2d 266, 269 (2nd Cir. 1983) ("An assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged. Insofar as an assignment touches on the obligations of the other party to the underlying contract, the assignee simply moves into the shoes of the assignor." (citations omitted)). Further, the Proposed Sale cannot override the parties' contractually bargained for rights under the Sublease. *See, e.g.*, *In re Nat'l Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000) (holding that executory contracts are assumed *cum onere*, subject to all their benefits and burdens).

22. The Successful Bidder must be responsible for satisfying all obligations and charges when due in accordance with the terms of the Sublease regardless of when such amounts were incurred. Accordingly, the proposed Sale Order must preserve Kroger's right to payment of these charges and expressly provide that any assignee of the Sublease continues to be responsible for any and all express and implied covenants and obligations under the Sublease or related documents or supplements, regardless of when such covenants or obligations arose.

23. Further, Kroger's rights under the Sublease and applicable law must survive any Sale. Any acquisition of the Sublease free and clear of liens and claims could presumably result in the impairment of Kroger's setoff and recoupment rights under the Sublease and applicable law.

Kroger's rights under the Sublease (including defenses thereto) cannot be extinguished through the Proposed Sale.

        **D.**     **Any Designation Rights Must Comply With the Sublease and Protect Kroger's Rights.**

        24.     Kroger objects to any attempt by BLSI to side-step or invalidate the bargained-for protections in the Sublease. Kroger is entitled to the full benefit of its bargain under the Sublease and is entitled to the full protections provided by section 365 of the Bankruptcy Code. *See, e.g., In re Entertainment, Inc.*, 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998). BLSI and the Successful Bidder must strictly comply with all the terms and conditions of the Sublease during the Designation Rights Period until such lease has been assumed, assumed and assigned or rejected. 11 U.S.C. § 365(d)(3); *see, e.g., In re new Almacs, Inc.*, 196 B.R. 244, 248 (Bankr. N.D.N.Y. 1996); *In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 831 (Bankr. S.D.N.Y. 1996) (each recognizing that section 365(d)(3) of the Bankruptcy Code imposes an affirmative duty on a debtor to comply with all of its leasehold obligations).

        25.     BLSI's grant of the Designation Rights to the Successful Bidder as well as any proposed assumption and assignment of the Sublease and its use of the Premises during the Designation Rights Period must be in accordance with all provisions of the Sublease and the Bankruptcy Code. *See Almacs,* 196 B.R. at 248 ("The language of code § 365(d)(3) is clear that the obligation of the Debtor to perform in a timely manner is *mandatory*, not permissive.") (emphasis added).

        26.     BLSI and the Successful Bidder must remain fully liable to Kroger for the payment of all amounts due and owing to Kroger under the Sublease during the Designation Rights Period. To the extent this Court approves the grant of the Designation Rights to the Successful Bidder, any

order that is entered by this Court approving the same should expressly provide that BLSI and the Successful Bidder must timely perform all the obligations under the Sublease and section 365 of the Bankruptcy Code during the Designation Rights Period.

27. The Successful Bidder and BLSI must also be required to provide evidence that insurance coverage that complies with the terms of the Sublease is in place during the Designation Rights Period, effective as of the first day of the Designation Rights Period.

28. Kroger also objects to the granting of any Designation Rights to the extent that the use and occupancy of the Premises violates any provision of the Sublease, including, but not limited to, any radius, location, use and/or exclusivity provisions contained in the Sublease during the Designation Rights Period. The Successful Bidder must also be required to adhere to all the terms and conditions of the Sublease during the Designation Rights Period.

29. Accordingly, if this Court approves the sale of the Designation Rights to the Successful Bidder, Kroger respectfully requests that the Proposed Sale Order include (in addition to what is discussed otherwise herein) procedures that provide Kroger with sufficient notice of future requests of BLSI, or of the Successful Bidder, for approval of any proposed assumption and assignment of the Sublease. Such procedures should provide Kroger with an opportunity to object, on any basis, to any proposed assumption and/or assignment of the Sublease at such time that BLSI or the Successful Bidder may seek to actually assume and assign the Sublease.

30. Additionally, if this Court approves the sale of the Designation Rights to the Successful Bidder, Kroger respectfully requests that the Proposed Sale Order include the following:

- A requirement that any proposed assignment of the Sublease comply with the provisions of the Sublease, including but not limited to use provisions, alteration provisions, signage provisions, and radius restrictions. BLSI should not be allowed to

sell the Designation Rights with a blanket order that allows the Successful Bidder to ignore or otherwise breach critical terms of the Sublease.

- A provision that makes clear that BLSI remains obligated under the Sublease through the effective date of assumption and assignment or rejection of the Sublease, and that no agreement with the Successful Bidder alters BLSI's obligations under the Sublease.

31. Importantly, all rights of Kroger to object to a proposed assumption and assignment of the Sublease at such time in the future during the Designation Rights Period (and to the extent that BLSI or the Successful Bidder actually seeks to assume and assign the Sublease) must be expressly preserved in the Proposed Sale Order. The provisions requested herein will protect the rights of Kroger and will ensure compliance with section 365 of the Bankruptcy Code.

### E. The Debtors' Proposed Designation Rights Period Must Comply With the Express Terms of Section 365(d)(4) of the Bankruptcy Code.

32. The Sublease is an unexpired lease of nonresidential real property, which enjoys the protections of section 365(d)(4) of the Bankruptcy Code. Section 365(d)(4) of the Bankruptcy Code requires (and it is well established) that the Debtors must assume or reject an unexpired lease of nonresidential real property by the date of confirmation of the Plan. Specifically, section 365(d)(4) provides that the Debtors must assume or reject unexpired leases of nonresidential real property "by the earlier of (i) the date that is 120 days after the date of the order for relief; or (ii) the date of the entry of an order confirming a plan." 11 U.S.C. § 365(d)(4)(A). Section 365(d)(4) permits only one non-consensual 90-day extension of the time within which to assume or reject unexpired leases of nonresidential real property. *See* 11 U.S.C. § 365(d)(4)(B)(i).

33. Currently, the deadline for the Debtors to assume or reject leases under section 365(d)(4)(A) of the Bankruptcy Code is January 7, 2025, which they can then seek a 90-day extension to April 7, 2025, upon filing a motion for cause. 11 U.S.C. § 365(d)(4)(A)(i) & (B)(i);

*see* Docket No. 1 (the Debtor's Petition Date is September 9, 2024, thus the initial section 364(d)(4) deadline is January 7, 2025). Any further extension of the deadline to assume or reject an unexpired lease of nonresidential real property may only be granted "upon prior written consent of the lessor in each instance." 11 U.S.C. § 365(d)(4)(B)(ii).

34. Kroger presents this objection to reserve its rights if the Proposed Sale Order provides an extension of the Designation Rights Period which runs afoul of the protections afforded to Kroger under section 365(d)(4).

## **RESERVATION OF RIGHTS**

35. Nothing in this Objection is intended to be, or should be construed as, a waiver by Kroger of any of its rights under the Sublease, the Bankruptcy Code, or applicable law. Kroger expressly reserves all such rights, including, without limitation, the right to: (a) supplement and/or amend this Objection and to assert any additional objections with respect to the Proposed Cure Amount, adequate assurance of future performance, the Proposed Sale, and the Successful Bidder's asset purchase agreement and any amendment thereto; (b) amend the Cure Amount; (c) assert any nonmonetary defaults under the Sublease; (d) assert any rights for indemnification or contribution against BLSI arising under the Sublease; and (e) assert any further objections as it deems necessary or appropriate.

## **JOINDER**

36. Kroger joins in any objections to the Proposed Sale that are filed by other landlords to the extent they are not inconsistent with this Objection.

**WHEREFORE**, Kroger respectfully requests that this Court sustain this Objection and grant Kroger such other and further relief as this Court deems just and appropriate under the circumstances.

Dated: November 6, 2024

**LANDIS RATH & COBB**

*/s/ Joshua B. Brooks*
Kimberly A. Brown (No. 5138)
Joshua A. Brooks (No. 6765)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: brown@lrclaw.com
brooks@lrclaw.com

-and-

**FROST BROWN TODD LLP**
A.J. Webb, Esq. (admitted *pro hac vice*)
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
513-651-6800 Telephone
513-651-6981 Facsimile
awebb@fbtlaw.com

*Counsel to Kroger Limited Partnership I*