**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Big Lots, Inc., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Related to D.I. 18 and 981** |

**BLUE OWL REAL ESTATE CAPITAL LLC'S**
**OBJECTION TO THE PROPOSED SALE OF SUBSTANTIALLY**
**ALL OF THE DEBTORS' ASSETS AND JOINDER IN SUPPORT OF THE**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' SALE OBJECTION**

Blue Owl Real Estate Capital LLC ("**Blue Owl**"),[2] respectfully submits this Objection ("**Objection**") to the sale of substantially all of the Debtors' assets (the "**Sale**") based upon the terms of the *Stalking Horse Purchase Agreement* (D.I. 18-3) (the "**APA**"), and formally joins in the substance of the Official Committee of Unsecured Creditors' (the "**Committee**") objection (D.I. 981) (the "**Committee Objection**") to the Sale.[3]

---

[1] The debtors and debtors in possession in these chapter 11 cases (the "**Debtors**"), along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. DublinGranville Road, Columbus, OH 43081.

[2] The affiliates of Blue Owl Real Estate Capital, LLC involved in these Chapter 11 Cases are as follows: BIG AVCA Owner LLC, BIG BCLA Owner LLC, BIG CSCO Owner LLC, BIG FBTX Owner LLC, BIG FRCA Owner LLC, BIG LACA Owner LLC, BIG LCNM Owner LLC, BIG LOCA Owner LLC, BIG SATX Owner LLC, BIG TAMI Owner LLC, BIG VICA Owner LLC, BIG YVCA Owner LLC, BIGCOOH002 LLC, BIGMOAL001 LLC, BIGDUOK001 LLC, and BIGTRPA001 LLC.

[3] Capitalized terms used but not defined in this Objection shall have the same meanings ascribed to them in the *Motion of Debtors for Entry of Orders (I) (A) Approving Bidding Procedures for Sale of Debtors Assets, (B) Approving the Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing To Approve, Sale of Debtors Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures (II) (A) Approving Sale of Debtors Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief Fee Amount* (the "**Sale Motion**") (D.I. 18), the APA, or the Committee Objection, as applicable.

**OBJECTION**

1.  Blue Owl objects to the Sale for two independent reasons. *First*, the APA includes a remarkably broad transfer of claims and causes of action to the Buyer—purportedly transferring "***all rights, claims, accounts, and causes of action . . . against any Persons. . . .***" Not surprisingly, none of the papers filed by the Debtors to date explain why claims of this breadth (which amount to backdoor blanket releases of claims against the Debtors' insiders and other potential investigation targets) are being transferred or what consideration the Debtors are receiving in exchange. *Second*, the Proposed Sale Order (defined below) provides that the vast majority of the Sale proceeds shall be transferred to the Secured Parties immediately upon the closing of the Sale. This ignores that the validity and secured status of the Secured Parties' claims in this case are subject to the Final DIP Order's Challenge Period, which has now been extended (without prejudice to further extensions) to November 15, 2024 and would be further tolled upon a filing of a standing motion and complaint by a party-in-interest. Absent modification of these two provisions—both of which undermine key potential sources of value to unsecured creditors in these chapter 11 cases—the Sale should be denied, as discussed below.

    A.  **The Court Should Strike The Backdoor Release Provision From The APA.**

2.  The APA purports to transfer to the Buyer all estate claims and causes of action that may be brought against the Debtors' directors and officers, affiliates, shareholders, Secured Parties, and other third parties—*i.e.*, claims that would otherwise form the primary basis of recovery for unsecured creditors. While under certain circumstances it may be appropriate to sell an identified subset of estate causes of action to a buyer, such as go-forward claims that arise in the ordinary course of business and/or claims arising under certain contracts that would also be acquired to the

buyer,[4] the APA goes significantly further, purporting to sell "***all rights, claims, accounts, and causes of action*** . . . of Seller or any of its Subsidiaries ***against any Persons*** (other than another Selling Entity) . . . ." APA § 2.01(b)(viii) (emphasis added). This provision (the "***Backdoor Release Provision***") is remarkably broad and amounts to a blanket sale of all estate claims and causes of action, including those that have no relationship whatsoever with go-forward operations. Nowhere do the Debtors explain what interest, if any, the Buyer has in purchasing such claims, and it would be surprising if discovery relating to the negotiations of the Sale: (i) showed any information related to value provided for these claims; or (ii) evidenced any intention by the Buyer to investigate or pursue them, notwithstanding their potential value to the Debtors' estates and unsecured creditors.[5] Such an unjustified transfer of value under the APA is inappropriate, especially in light of the Committee's and Blue Owl's ongoing investigation into potential estate causes of action against the exact same entities and individuals. The Backdoor Release Provisions should be stricken from the APA.

        **B.**      **The Sale Proceeds Should Be Held In Escrow, Subject To Challenge**

3. Blue Owl's second objection to the APA is even more straightforward. There is no doubt that Section F(ix) of the Final DIP Order provides that the comprehensive releases for the Secured Parties are subject to the timely commencement of a Challenge (as defined in the Final

---

[4] The APA contains provisions that specifically identify such claims as part of the Assets that will be sold. *See, e.g.*, APA § 2.02(b)(xvi) (purporting to sell "all rights, claims, or causes of action relating to or arising against suppliers, vendors, merchants, manufacturers, counterparties to leases, counterparties to licenses, and counterparties to any Assigned Contracts or Real Property Interests"); *id*. § 2.02(b)(xviii) (purporting to sell all Avoidance Actions and "all other claims, causes of action, lawsuits, judgements, privileges, counterclaims, defenses, rights of recovery, rights of setoff, rights of subrogation, . . . solely relating to vendors and service providers used in the Business after the Closing."). Still, it is the Debtors' burden to establish that the sale of such claims serves a "sound business purpose" and that fair value is provided for those claims. *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991). The Debtors have yet to provide such evidence. For the avoidance of doubt, Blue Owl objects to the sale of these claims on that basis.

[5] Blue Owl and the Committee are currently investigating the circumstances surrounding the presence of Backdoor Release Provision in the APA.

DIP Order) by the Challenge Deadline. *See* Final DIP Order § F(ix); ¶ 42. The Committee and Blue Owl are currently engaging in an investigation into potential estate claims against the Secured Parties, the deadline for which has been extended to November 15, 2024. However, the Debtors' *Proposed Stalking Horse Sale Order* (D.I. 558-3) (the "**Proposed Sale Order**"), contemplates that the vast majority of the Sale proceeds will immediately be transferred to the Secured Parties to satisfy the Pre-Petition ABL Obligations, Pre-Petition Term Obligations, ABL DIP Obligations, and Term DIP Obligations in full:

> At the Closing, the Debtors shall transfer, or cause to be transferred, proceeds generated from the sale of the Assets contemplated herein to the DIP Agents and the Prepetition Agents, as applicable, which shall be in an amount ***not less than necessary to fully fund the following*** two items and shall be applied as follows: (i) first, to fully fund the Carve Out Reserves in accordance with the DIP Orders (whereupon such funding, the DIP Credit Parties and Prepetition Secured Creditors shall have no further obligation to fund the Carve Out Reserves); and (ii) second, ***for permanent application against the DIP Obligations and the Prepetition Secured Obligations*** in accordance with the terms and conditions of the DIP Orders and the DIP Loan Documents until the DIP Obligations and the Prepetition Secured Obligations have been Paid in Full . . . .

Proposed Sale Order ¶ 18 (emphasis added).

4. If the Proposed Sale Order is implemented as written, nearly all of the cash consideration from the Sale will immediately flow out of the estates to pay off the Secured Parties, targets of the Committee's ongoing investigation. Such a transfer of funds not only would violate the Final DIP Order—which respects the Committee's and others' right to challenge the Secured Parties' claims—but would be illogical under the circumstances, requiring immediate claw-back if the Secured Parties' claims or liens are successfully challenged. As such, any order approving the Sale should provide for an escrow into which proceeds are deposited subject to the resolution of any Challenge by the Committee or any other party-in-interest. Absent this modification, the Sale should be denied.

**CONCLUSION**

5.      For all of these reasons, Blue Owl respectfully requests that this Court sustain this Objection.

Date: November 6, 2024  
Wilmington, Delaware

**KLEHR HARRISON HARVEY BRANZBURG LLP**

*/s/ Domenic E. Pacitti*
Domenic E. Pacitti (DE Bar No. 3989)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone: 302-552-5511 |
Facsimile: 302-426-9193
Email: dpacitti@klehr.com

-and-

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Benjamin Finestone (admitted *pro hac vice*)
Victor Noskov (admitted *pro hac vice* )
Zachary Russell (admitted *pro hac vice*)
Joanna D. Caytas (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: benjaminfinestone@quinnemanuel.com
Email: victornoskov@quinnemanuel.com
Email: zacharyrussell@quinnemanuel.com
Email: joannacaytas@quinnemanuel.com

*Counsel for Blue Owl Real Estate Capital LLC*