## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x

In re:                          :        Chapter 11
                                :
BIG LOTS, INC.,[1]              :        Case No. 24-11967 (JKS)
                                :
        Debtor.                 :        **Obj. Deadline: November 6, 2024 at 4:00 p.m. (ET)**
                                :        **Hearing Date:  November 12, 2024 at 1:30 p.m. (ET)**
                                :        **Related to Docket Nos. 18, 495, 511, 612, 661 and 683**

-------------------------------------------------------x

**LIMITED OBJECTION OF 35/WCD CENTURY SOUTH K/C LTD., ARC ASANDSC001, LLC, ARC NWNCHSC001, LLC, BMA BEACHWOOD, LLC, BRIXMOR OPERATING PARTNERSHIP LP, COLUMBIA GROUP BIG, LLC, F & F INVESTMENTS, LLC, FRANCIS CARRINGTON, HANFORD MALL 2020 LLC, HUNTING CREEK RETAIL, LLC, MILLAN HOLDINGS LLC, NS RETAIL HOLDINGS, LLC, RD MANAGEMENT LLC, ROBHANA GROUP, SUN PLAZA SHOPS, LLC, TJ ELITE PROPERTIES, LLC, AND TRUSSVILLE PROMENADE I OWNER, LLC. TO (1) SALE OF ACQUIRED ASSETS TO THE SUCCESSFUL BIDDER, AND (2) NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNTS**

35/WCD Century South K/C Ltd. ("Weitzman"), ARC ASANDSC001, LLC ("ARC ASANDSC001"), ARC NWNCHSC001, LLC ("ARC NWNCHSC001"), BMA Beachwood, LLC ("Berengaria"), Brixmor Operating Partnership LP ("Brixmor"), Columbia Group Big, LLC ("Americal"), F & F Investments, LLC ("F&F"), Francis Carrington ("Carrington"), Hanford Mall 2020 LLC ("Hanford"), Hunting Creek Retail, LLC ("Hunting Creek"), Millan Holdings LLC ("Millan"), NS Retail Holdings, LLC ("NetStreit"), RD Management LLC ("RD Management"), Robhana Group ("Robhana"), Sun Plaza Shops, LLC ("Sun Plaza"), TJ Elite Properties, LLC ("TJ Elite"), and Trussville Promenade I Owner, LLC

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin Granville Road, Columbus, OH 43081.

1

("Acadia" and together with Weitzman, ARC ASANDSC001, ARC NWNCHSC001, Berengaria, Brixmor, Americal, F&F, Carrington, Hanford, Hunting Creek, Millan, NetStreit, RD Management, Robhana, Sun Plaza, TJ Elite and Acadia, collectively, the "Landlords"), by and through their undersigned counsel, hereby file this objection (the "Limited Objection") to (1) the proposed sale of the Acquired Assets to the Successful Bidder noticed pursuant to that certain *Notice of Successful Bidder for the Sale of the Debtors' Assets* [D.I. 661] (the "Successful Bid Notice") and (2) the *Notice of Proposed Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* [D.I. 683] (the "Cure Notice"),[2] and respectfully represent as follows:

## I.    BACKGROUND FACTS

1.    Big Lots, Inc., and their affiliated debtor entities (the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on September 9, 2024 (the "Petition Date").  The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[3]

2.    The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the locations (the "Centers") set forth in Paragraph 25.

3.    Each Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3).  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

---

[2] Terms not otherwise defined herein shall have the meanings ascribed to them in the Cure Notice and accompanying sale documents.

[3] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

4. On the Petition Date, the Debtors filed the *Motion of Debtors for Entry of Orders (I) (A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures, (II) (A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [DI 18] (the "Sale Motion").  Attached to the Sale Motion as **Exhibit C**, is a copy of that certain asset purchase agreement dated as of September 8, 2024 (the "Stalking Horse APA"), by and among the Debtors and Gateway BL Acquisition, LLC, an affiliate of Nexus Capital Management LP "Nexus"), for the sale of certain of the Debtors' assets (the "Acquired Assets") to Nexus, pursuant to an auction and sale process.

5. On October 16, 2024, in connection with the Sale Motion, the Debtors filed the *Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount* [DI 511] (the "Initial Cure Notice").

6. On October 25, 2024, the Court entered the *Order (I) Approving Bidding Procedures for Sale of Debtors' Assets, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (IV) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (V) Approving Assumption and Assignment Procedures, and (VI) Granting Related Relief* [DI 612] (the "Bidding Procedures Order").

7. Pursuant to the Bidding Procedures Order, the Court approved Nexus, as the Stalking Horse Bidder, pursuant to the terms of the Stalking Horse APA, as amended by that

certain First Amendment to Asset Purchase Agreement dated October 14, 2024, a copy of which was filed on October 15, 2024.  *See* D.I. 495-3.

8.      On October 30, 2024, following the Auction, the Debtors filed the *Notice of Successful Bidder for the Sale of the Debtors' Assets* [DI 661] (the "<u>Successful Bidder Notice</u>"), in which the Debtors identified Nexus as the successful bidder ("<u>Successful Bidder</u>") for the Acquired Assets, and announced certain further modifications to the Stalking Horse APA as read into the record at the Auction and attached as **Exhibit A** to the Successful Bidder Notice, which changes included the addition of a post-closing designation rights period for the assumption, assumption and assignment or rejection of leases, including the Leases, a transition services agreement, and consultant rights' with respect to the continued disposition of the Debtors' owned real estate and leased property.  *See* D.I. 661-1.  As of the time of the filing of this Objection, however, no further modified form of the Stalking Horse APA has been filed incorporating the modifications agreed to at the auction.

9.      On October 31, 2024, the Debtors filed the Cure Notice. The Cure Notice identifies, *inter alia*, certain unexpired leases that may be assumed and assigned in connection with the Sale to the Successful Bidder, including the Leases, along with the amounts, according to the Debtors' books and records, which must be paid to cure any defaults existing under such unexpired leases.

10.     The Cure Amounts set forth in the Cure Notice do not reflect all outstanding balances due and owing to Landlords under the Leases, and do not account for accruing but unbilled charges which may come due in the future.  The Cure Amounts set forth by the Debtors must be modified to reflect additional charges owing, as well as recognize the liability for accruing charges due under the Leases, as more fully set forth herein.

11.    The Bidding Procedures Order also scheduled a hearing to consider approval of the Sale on November 12, 2024 (the "Sale Hearing"), with a November 6, 2024 deadline to raise objections to the sale and the assumption and assignment of the Leases, including as to Cure Amounts and the Stalking Horse Bidder's ability to provide adequate assurance of future performance under the Leases.

12.    Landlords have also received certain information intended to demonstrate adequate assurance of future performance for the Successful Bidder, which Landlords continue to review.

13.    Accordingly, Landlords file this Objection in order to preserve all of their rights with respect to any defaults under their Leases to be cured at the time of any assumption and assignment of their Leases to the Successful Bidder, and reserve their rights to raise further and other objections to the assumption and assignment of their Leases and cure amounts, when designated, including as to the adequate assurance information for the Successful Bidder, and as to the final forms of any Sale Order and/or APA, which again are not yet available as of the filing of this Objection.

## II.    ARGUMENT

14.    While Landlords do not generally object to a sale of the Debtors' assets to maximize the value of the estate for the benefit of all creditors, including Landlords, Landlords do object to any proposed assumption and assignment of the Leases unless Debtors and/or the Successful Bidder, comply with all of the requirements of Sections 365 of the Bankruptcy Code. Absent the ability, or willingness, of the Debtors and any proposed assignee to satisfy said requirements, the Court should deny any proposed assumption and assignment of the Leases.  In addition, the amounts set forth in the Cure Notice for the Leases do not accurately reflect the

total amount owing under the Leases, and do not provide for the payment or performance of certain accruing but not yet due charges under the Leases when those accruing obligations become due.

A.    **Any Assumption and Assignment Must Comply with the Terms of the Leases**.

15.    Through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amendments, "Section 365(f)(1) was amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the Code does not override Section 365(b)."  Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).  In explaining the change to Section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center.  When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored. Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

16.    The changes embodied in the BAPCPA specifically preserve a landlord's right to enforce use and other lease provisions.   Again, Senator Hatch's remarks in the Congressional Record clarify the intent behind Section 365(b) and 365(f):

> A shopping center operator . . . must be given broad leeway to determine the mix of retail tenants it leases to.  Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy.   It is my understanding that some bankruptcy judges have not followed this mandate.  Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment of a lease even though terms of the lease are not being followed. (emphasis added).

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

17.     BAPCPA clarified Section 365 to reflect the Congressional intent that a Debtor cannot use Section 365(f)(1) to void lease provisions, and to overrule those prior court decisions that did not strictly enforce lease terms.  The predicate to the limited ability to assign a lease over a landlord's objection under Section 365(f) is that such assignment must be subject to the protections of Section 365(b)(1) and (3).

18.     Section 365(f)(1) does not modify or override Section 365(b).  <u>Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.)</u>, 367 F.3d 237, 243-44 (4th Cir. 2004) (bankruptcy courts could not use the general anti-assignment provision of Section 365(f)(1) to trump the specific protections granted to landlords in Section 365(b)(3)(C)).  Any assignment must remain subject to all provisions of the Leases, including those provisions concerning use, radius, exclusivity, tenant mix and balance.

**B.    <u>Adequate Assurance of Future Performance.</u>**

19.     Pursuant to Section 365(f)(2)(B) of the Bankruptcy Code, Debtors may only assume and assign the Landlords' Leases if "adequate assurance of future performance by the assignee of such . . . lease is provided, . . . ."  As set forth in Section 365(b)(3), adequate assurance of future performance in the shopping center context includes, inter alia, adequate assurance:

> (A)     of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> * * *
>
> (C)     that assumption and assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use or exclusivity provision, and will not

breach any such provision contained in any other lease, . . . relating
to the shopping center; . . . .

20.    The burden of proof on adequate assurance issues is with the Debtors.  <u>See</u>
<u>In re Lafayette Radio Elecs. Corp.</u>, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991).

21.    To date, Landlords have received certain summary adequate assurance
information relating to Nexus in the form of a letter, together with an Opening Balance Sheet
Forecast, which relies primarily on Nexus's expectations, anticipations, intentions and beliefs.
Landlords are continuing to review this information and will engage in discussions with the
Successful Bidder regarding any necessary additional information they may need in order to
properly evaluate the Successful Bidder's ability to perform under the Leases through the Sale
Hearing, and at the time such Leases are designated for assumption and assignment.  While
Landlords demand strict proof of the Successful Bidder's and/or any Successful Bidders' ability
to provide adequate assurance of future performance at the Sale Hearing, it is also the Landlords
understanding that no Leases will be assumed and assigned at the Closing, and that there will be
a long designation rights period.  Accordingly, the information provided by Nexus today is likely
to change, and such information may only be properly evaluated as of the time of any actual
proposed assumption and assignment of the Leases.

22.    Further, since most of the Debtors' stores are located in shopping centers,
including the Landlords' Centers, Debtors and the Successful Bidder must meet the heightened
requirements of adequate assurance that the Bankruptcy Code contemplates in the case of such
assignments.  The Bankruptcy Code requires more than the basic adequate assurance of future
performance of the leases under Section 365(b)(1)(C).  <u>In re Sun TV and Appliances, Inc.</u>, 234
B.R. 356, 359 (Bankr. D. Del. 1999).  In order to assume and assign shopping center leases,
Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A) – (D).

See Joshua Slocum, 922 F.2d at 1086; see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F. 3d 291, 299 (3d Cir. 2000).  The heightened adequate assurance requirements include the following:

- The source of rent and assurance that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee.  See 11 U.S.C. § 365(b)(3)(A);

- That any percentage rent due under the lease will not decline substantially.  See 11 U.S.C. § 365(b)(3)(B);

- That assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center.  See 11 U.S.C. § 365(b)(3)(C); and

- That assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center.  See 11 U.S.C. § 365(b)(3)(D).

**C.**     **Additional Security.**

23.    To the extent the Successful Bidder does not possess sufficient operating experience or capitalization to satisfy Landlords' requirements, which will be the case if the assignee is a "Newco" as contemplated under the Stalking Horse APA, the assignee must also provide some type of credit enhancement as part of its adequate assurance of future performance demonstration, such as: (i) a guaranty of future performance from a financially capable parent or other entity; (ii) a letter of credit; or (iii) a cash security deposit, as required by Section 365(l) of the Bankruptcy Code.

24.    Accordingly, pursuant to Section 365(l) of the Bankruptcy Code, Landlords demand that any proposed assignee either post either a letter of credit or, in Landlords' sole discretion, a security deposit, equal to three (3) months' rent and additional

rental charges under each Lease and/or provide a guaranty from a financially capable parent entity.

D.    **Cure Amounts**

25.    The amounts set forth in the Cure Notice do not reflect all outstanding balances due and owing to Landlords under the Leases, and the proposed cure amounts do not account for accrued but unbilled charges which may come due in the future.  The cure amount set forth by the Debtors must be modified to reflect the additional charges owing, as well as recognize the liability for accruing charges due under the Leases, as set forth herein.

26.    Set forth below are Landlords' monetary cure claims for amounts due, exclusive of any sums which become due after November 1, 2024 (which amounts must be paid when due under the Leases), unless otherwise noted, as more fully set forth on Exhibits 1-39 attached hereto and incorporated into this Objection by reference.  The cure amounts are the Landlords' base cure claim amounts subject to supplementation and modification (including accrued and unbilled obligations and the addition of attorney's fees, as described below).

| LANDLORD | SHOPPING CENTER | LOCATION | STORE NO. | DEBTORS' CURE | LANDLORDS' CURE[4] | EXHIBIT NO. |
|---|---|---|---|---|---|---|
| Acadia | Trussville Promenade | Birmingham, AL | 5233 | $36,841 | $56,214.81 | 1 |
| Americal | South Shores Center | Las Vegas, NV | 4501 | $45,979 | $45,978.56 | 38 |
| ARC ASANDSC001 | Anderson Station | Anderson, SC | 5367 | $28,268 | $64,396.73 | 2 |
| ARC NWNCHSC001 | Northwoods Marketplace | North Charleston, SC | 5139 | $52,629 | $112,030.27 | 3 |
| Berengaria | Pavilion | Beachwood, OH | 5181 | $21,647 | $119,286.45 | 4 |

[4] Landlords' Cure does not include charges arising after filing this Objection, or charges not directly billed to Landlords as of the filing of this Objection.  Landlords' Cure also does not include charges that are billed directly to Debtors, including in some cases, real estate taxes.  To the extent Landlords are later billed for any amount due to Debtors' failure to pay, or to the extent that there are other charges that come due under the Lease after the date of this Objection, Landlords retain and reserve the right to payment of these amounts when billed in the ordinary course under the Leases (and to amend this Objection to the extent necessary for any amounts that come due under the Leases through the date of any cure payment).

| LANDLORD | SHOPPING CENTER | LOCATION | STORE NO. | DEBTORS' CURE | LANDLORDS' CURE[4] | EXHIBIT NO. |
|---|---|---|---|---|---|---|
| | Shopping Ctr. | | | | | |
| Brixmor | Collegetown Shopping Ctr. | Glassboro, NJ | 4713 | $0.00 | $195,426.18 | 5 |
| Brixmor | County Line Plaza | Souderton, PA | 5468 | $24,761 | $105,489.58 | 6 |
| Brixmor | County Line Plaza | Souderton, PA | Storage | $0.00 | $3,000 | 7 |
| Brixmor | Fox Run Shopping Ctr. | Prince Frederick, MD | 5460 | $31,109 | $110,491.51 | 8 |
| Brixmor | Hearthstone Corners | Houston, TX | 1450 | $26,013 | $48,856.86 | 9 |
| Brixmor | Hearthstone Corners | Houston, TX | Storage | $0.00 | $700.00 | 10 |
| Brixmor | Jones Square | Houston, TX | 4146 | $9,609 | $12,618.39 | 11 |
| Brixmor | Lehigh Shopping Ctr. | Bethlehem, PA | 1380 | $12,384 | $25,665.24 | 12 |
| Brixmor | Memphis Commons | Memphis, TN | 1349 | $20,616 | $41,571.60 | 13 |
| Brixmor | Merchant's Park | Houston, TX | 4237 | $18,658 | $27,494.27 | 14 |
| Brixmor | Northgate Shopping Ctr. | DeLand, FL | 5387 | $37,777 | $76,348.15 | 15 |
| Brixmor | Panama City Square | Panama City, FL | 5215 | $27,574 | $98,157.29 | 16 |
| Brixmor | Parmer Crossing | Austin, TX | 1835 | $24,880 | $49,791.26 | 17 |
| Brixmor | Parmer Crossing | Austin, TX | Storage | $0.00 | $500.00 | 18 |
| Brixmor | Rutland Plaza | St. Petersburg, FL | 525 | $35,080 | $72,868.91 | 19 |
| Brixmor | Shoppes at Valley Forge | Phoenixville, PA | Storage | $0.00 | $1,700.00 | 20 |
| Brixmor | Shoppes at Valley Forge | Phoenixville, PA | 5441 | $0.00 | $75,503.80 | 21 |
| Brixmor | Stevens Park Village | Dallas, TX | 4652 | $23,880 | $46,157.26 | 22 |
| Brixmor | The Centre at Preston Ridge | Frisco, TX | 4566 | $38,309 | $76,617.02 | 23 |
| Brixmor | Tyrone Gardens | St. Petersburg, FL | 554 | $28,732 | $59,552.49 | 24 |
| Brixmor | Walkill Plaza | Middletown, NY | 1377 | $40,078 | $188,403.38 | 25 |

| LANDLORD | SHOPPING CENTER | LOCATION | STORE NO. | DEBTORS' CURE | LANDLORDS' CURE[4] | EXHIBIT NO. |
|---|---|---|---|---|---|---|
| Carrington | 791 W Elk Avenue | Elizabethton, TN | 5345 | $40,781 | $78,387.22 | 26 |
| F&F | 400 Campbellville BYP | Campbellsville, KY | 1842 | $13,425 | $26,489.16 | 27 |
| Hanford Mall | Hanford Mall | Hanford, CA | 4665 | $45,402 | $45,402.34 | 39 |
| Hunting Creek | Hunting Creek Plaza | Conyers, GA | 1989 | $24,990 | $49,979.30 | 27 |
| Millan | Center State Station | Springfield, TN | 1797 | $16,933 | $73,386.29 | 28 |
| Millan | Wal-Mart Center | Hermitage, TN | 1845 | $0.00 | $61,020.54 | 29 |
| Netstreit | 3000 Scottsville Rd | Bowling Green, KY | 4729 | $38,294 | Agreed | N/A |
| Netstreit | 14333 Eureka Rd | Southgate, MI | 4723 | $23,381 | Agreed | N/A |
| Netstreit | Cypress Mill Square | Brunswick, GA | 1507 | $18,109 | Agreed | N/A |
| Netstreit | Elizabeth City Crossing | Elizabeth City, NC | 1891 | $14,247 | Agreed | N/A |
| Netstreit | Shops on the Circle | Dothan, AL | 5239 | $20,186 | Agreed | N/A |
| Netstreit | Southland Shopping Ctr. | Kingsport, TN | 225 | $12,000 | Agreed | N/A |
| RD Management | Port Huron Shopping Ctr. | Port Huron, MI | 835 | $15,000 | $24,953.00 | 31 |
| RD Management | Shops at Billerica | Billerica, MA | 5225 | $30,368 | $54,333.09 | 30 |
| Robhana | 610 Las Tunas Drive | Arcadia, CA | 4025 | $73,963 | $285,893.65 | 32 |
| Robhana | 3003 W Manchester Blvd | Inglewood, CA | 4118 | $119,218 | $566,875.26 | 33 |
| Robhana | Bay Plaza | National City, CA | 4126 | $179,678 | $306,205.13 | 34 |
| Sun Plaza Shops | Heart of Florida Shopping Ctr. | Haines City, FL | 5265 | $106,552 | $191,542.98 | 35 |
| TJ Elite | 8318 Farm to Market Rd 78 | Converse, TX | 4641 | $22,900 | $497,635.74 | 36 |
| Weitzman | Century South | Austin, TX | 4387 | $21,775 | $62,768.25 | 37 |

27.     In addition to the current outstanding rent and other monthly charges due under the Leases, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid, either as cure on the effective date of any assumption or assumption and assignment, or when properly billed under the Leases, including any obligations that have been deferred pursuant to any deferral or forbearance agreement between the Debtors and the Landlords.

i.     Attorneys' Fees, Costs and Interest

28.     The Leases contain provisions for recovery of attorneys' fees, costs, and interest in the event the Landlords are required to take legal action to protect their interests. The Debtors are obligated to cure all defaults under the Leases, and compensate the Landlords for their actual pecuniary losses as a result of defaults under the Leases. See 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. In re LCO Enterprises, 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured all pre-petition defaults).

29.     The Debtors (or their assignee) takes the Leases *cum onere*—subject to existing burdens. The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of their leases. In re Wash. Capital Aviation & Leasing, 156 B.R. 167, 172 (Bankr. E.D. Va. 1993). If forced to continue in the performance of the Leases, the Landlords are entitled to the full benefit of the bargain under the Leases with the Debtors. See Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a

contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." In re Entm't, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest on pre-petition lease charges continues to run from the filing of the Debtors' petitions and must be paid as a condition of the assumption of the Leases. See In re Skylark Travel, Inc., 120 B.R. 352, 355 (Bankr. S.D.N.Y. 1990). Interest calculations are, therefore, not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlords for the Debtors' defaults under the Leases, and thus to properly assume (or assume and assign) the Leases. Finally, post-petition interest is allowable where such interest is provided for under the terms of the Leases. Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

30. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or successor) must satisfy these lease charges as part of the assumption or assumption and assignment of the Leases. Entm't, Inc., 223 B.R. at 152 (citation omitted). There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. at 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). Id., see also In re Crown Books Corp., 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C.

14

§ 365(b)(1)); <u>Urban Retail Props. v. Loews Cineplex Entm't Corp., et al.</u>, 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); <u>Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated)</u>, 167 F.3d 843, 850 (4th Cir. 1999).  The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law.  <u>Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric</u>, 127 S. Ct. 1199, 1206 (2007).

31.     Accordingly, Landlords further request that they be reimbursed for all of their actual pecuniary losses including, but not limited to, attorney's fees and costs expended with regard to Debtors' bankruptcy proceedings.  To date, the Landlords estimate their attorney's fees and costs to be approximately $15,000 per Lease.

ii.     <u>Year-End Adjustments and Reconciliations and Indemnification</u>

32.     In addition to rent and related monthly charges, attorneys' fees, costs and interest, some charges for which the Debtors bear responsibility under the Leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods.  By way of example, the Debtors occupy retail space at the Centers pursuant to triple-net leases, where they typically pay rent and related lease charges in advance for each month.  The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("<u>CAM</u>") fees, annual percentage rent, and the like.  Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end.  The reconciliation compares the amounts estimated and paid against actual charges incurred at the Centers.  To the extent the estimated

payments exceed actual charges, the result is a credit to the tenant.  To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable.  In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e., year-end reconciliations and adjustments that accrued through 2023 may not yet have been billed, and such charges that are accruing for 2024 will not be billed until 2025). In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end.  Since Section 365(b) only requires debtors to cure defaults under their leases, and since there can be no default for failure to pay an amount that has not as yet been billed, these accrued, but unbilled, charges are not yet due under the Leases, and they do not create a current default that gives rise to a requirement of cure by the Debtors at this time.  The obligation to pay the year-end adjustments is, however, certainly a part of the obligation to provide adequate assurance of future performance.  As a result, the Court should deny any attempt to assign the Leases "free and clear" of these obligations.

33.    Debtors remain responsible for all accrued or accruing charges under the Leases, and must pay such charges when they come due under the Leases.  The Debtors (or any successful bidder) assumes and assigns the Leases subject to their terms, and must assume and assign all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under the Leases.  Any final assumption or sale order should clearly state that the Debtors (or any successful bidder) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of the Sales.  In addition, any provision in a sale order that purports to release the Debtors (or any successful bidder) of further liability based upon a payment of cure amounts, must specify that

such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Leases.

34.     Finally, the Leases require the Debtors and the Successful Bidder to indemnify and hold the Landlords harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Centers by the Debtors, the Successful Bidder or their agents.   Any assumption or assumption and assignment of the Leases must be subject to the terms of the Leases, including the continuation of all indemnification obligations, regardless of when they arose.[5]  In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any claims that relate to the period prior to assumption or assumption and assignment of the Leases.   Nothing in any sale order should preclude the Landlords from pursuing the Debtors, their insurance, or any other party that may be liable under the Leases, and the Landlords request that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.[6]

35.     Landlords, therefore, request that in the event an assumption or assumption and assignment of the Leases is approved by the Court, language must be inserted into the Sale Order or other order effectuating the assignment to provide that the proposed assignee shall be responsible for all unpaid year-end adjustments, whether accruing prior to or after the effective date of assumption of the Leases, when such charges become due in accordance with the terms of the Leases, including with respect to indemnification and insurance

---

[5] Any ability to assume and assign the Lease is subject to the protections provided by Section 365(b) and (f).  Therefore, any assumption (or assumption and assignment) must be in accordance with all provisions of the Leases.

[6] If Debtors are covered under an "occurrence basis" insurance policy, rather than a "claims made" policy, this objection may be satisfied by proof of such insurance by the Debtors for Landlords' locations.

obligations.  In default thereof, a suitable escrow for the Leases equal to 150% of the average year-end adjustments for the prior three (3) years must be established to assure that any amounts due will be available to Landlords when the year-end adjustments are actually billed and due pursuant to the terms of the respective Leases.

       iii.    <u>The Cure Amounts Serve Only As Estimates</u>

      36.    Landlords can only provide the information presently available regarding amounts owing by the Debtors, while reserving the right to amend the Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations.  There is no basis to impose upon the Landlords the equivalent of an administrative bar date, limiting their recourse to recover charges to which it is entitled under the Leases.

       iv.    <u>The Debtors Must Pay Undisputed Cure Amounts Immediately</u>

      37.    Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Leases upon assumption or assumption and assignment.  To the extent there is a dispute over the total cure obligation for the Leases, all undisputed cure amounts should be paid immediately.  Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption or assumption and assignment of the Leases to deal with any disputes that remain unresolved after such period.

    **E.**    **<u>Assumption and Amendment Agreement.</u>**

      38.    Landlords also request that, as a condition to any order approving assumption and assignment of any of Landlords' Leases, the assignee shall be required to enter into a short form Assumption and Amendment Agreement whereby the assignee shall become

directly obligated to Landlords and the provisions of the Leases regarding notice addresses will be modified.

**F.    Any Assignment of Leased Real Property Must be Subject to all Applicable Restrictive Covenants.**

39.    The *cum onere* principle and requirements of section 365 (including section 365(b)(3)) of the Bankruptcy Code also mandate that restrictive covenants be respected in connection with any lease assignment. See 11 U.S.C. § 365(b)(3)(C) (requiring that "assumption or assignment of such lease is subject to all the provisions thereof"); Bildisco, 465 U.S. at 531; In re MF Glob. Holdings Ltd., 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012).  As is typical, shopping center leases are part of an integrated and complex commercial relationship between the shopping center owner and tenants that arise under both leases as well as reciprocal easement agreements (or similar agreements) and other restrictive covenants applicable to the properties.  Accordingly, assumption of any assignment of any leases in accordance with section 365 of the Bankruptcy Code and applicable law requires compliance with, and is subject to, any agreements containing restrictive covenants or other obligations related to the properties.

40.    Accordingly, Landlords object to the assumption and/or assignment of the Leases or any Premises to the extent such transfer is not subject to all applicable reciprocal easement agreements, other similar agreements, and other restrictive covenants or obligations set forth therein.

**G.    Objection to Designation Rights Procedures.**

41.    Landlords do not object to designation rights in general that provide the Successful Bidder and Landlords time to explore the assumption and assignment of Leases. However, since the Landlords have not seen the Debtors' proposed form of Sale Order containing the proposed designation rights procedures, or the amended Stalking Horse APA

providing any detail whatsoever on the designation process, Landlords provide the following general objections below and reserve the right to object to any proposed designation rights.

42.    Landlords object to any restriction on their ability to object to the assumption and assignment of the Leases, for any reason, at the time such Leases are actually designated for assumption and assignment.  Designation rights emanate only from the rights of the Debtors under the Bankruptcy Code, (see In re Ames Dep't Stores, Inc., 287 B.R. 122 (Bankr. S.D.N.Y. 2002)), and there is no limitation on a Landlords' ability to object under Section 365, including with respect to the proposed Cure Amounts, which are of course subject to change and increase during the designation rights period, which may very well extend months into the future.  Any notice of designation of a Lease for assumption and assignment should provide Landlords with no less than 14-days' notice to object to the assumption and assignment of a designated Lease.

43.    Since the amended Stalking Horse APA has not been filed or otherwise made available to Landlords before the objection deadline, Landlords do not know whether the Successful Bidder's designation rights are limited solely to the ability to designate a lease for assumption and assignment to the Successful Bidder or an affiliate thereof, or if the Successful Bidder may seek to designate a lease to an unrelated third-party assignee.  This should be clarified in any proposed Sale Order, and to the extent the Successful Bidder may designate a lease for assignment to an unrelated third party, such notice of designation must be accompanied by adequate assurance information with respect to any proposed third-party assignee.

44.    Furthermore, the assumption and assignment of a Lease is not effective until ordered by the Court.  Accordingly, a separate assumption and assignment order must be

entered to approve the assumption and assignment of any designated Lease at the time of the assignment.

45.     Since no documentation describing the proposed designation rights process has been made available, it is unclear how long the Debtors and Successful Bidder intend the designation rights period to continue.  Any Designation Rights Period must comply with the terms and time limits of Section 365(d)(4) of the Bankruptcy Code, and entry of an order approving the sale and the Stalking Horse APA cannot serve to extend that statutory deadline, which requires a separate motion and order for cause shown.

46.     Finally, appropriate procedures must be established for the operation of the stores during any designation period, including the guaranty of the payment of all Section 365(d)(3) obligations of the Debtors during that period, as they will likely have limited assets, and may be even administratively insolvent, the continuance of insurance coverage as required by the affected Lease, the assumption of the Lease obligations by the Successful Bidder if it is operating the stores, and a written agreement governing the operation of the stores if the Leases are still with the Debtors but operated by another party.

47.     In the event of operation by a party other than the Debtors during a designation period, such party must comply with all terms of the Leases during any such period in all respects.  In addition, said party must be responsible for all obligations during the time that it controls the Leases, consistent with Section 365(d)(3), in addition to Debtors' joint liability therefor.

48.     There is also no direct relationship between the Successful Bidder and landlords of Leases that have not yet been assumed or assigned.  Therefore, it is unclear what remedy those landlords will have in the event of failure to perform by the Stalking Horse or any

Successful Bidder.   Any final order approving the sale must protect Landlords during any proposed designation period in the event the Successful Bidder fails to perform under the Leases. There should also be a direct contractual relationship establishing the rights and obligations of the parties during any such designation period.   The Court should require that sufficient funds remain with the Debtors to cover lease obligations for the undesignated leases during any such designation period in the event the Successful Bidder (or its assignee) fails to perform under the Leases.

## III.    RESERVATION OF RIGHTS TO RAISE FURTHER OBJECTIONS

49.    The Landlords reserve all rights to (i) raise further or other objections as may be necessary, including but not limited to, to the identity of any proposed assignee in connection with any assumption and assignment of the Leases; and to the final form of order approving the sale and any assumption and assignment of the Leases and/or the final transaction documents once such documents are filed of record with the Court; (ii) to require payment of all lease charges and compliance with all lease terms; and (iii) to require any assignment on a form acceptable to Landlords.

## IV.    JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS

50.    To the extent consistent with the objections expressed herein, Landlords also join in the objections of other shopping center lessors to the Debtors' proposed relief.

## V.    CONCLUSION

51.    Landlords respectfully requests that  the proposed Sale Order (i) allow the cure amounts (subject to adjustment by the Landlords) in the amounts set forth herein, (ii) order payment of all undisputed cure amounts, with an escrow established that is sufficient to pay any remaining disputed cure amounts, when resolved by the parties or this Court, (iii) order

compliance with all Lease provisions, additional security to Landlords, as necessary, to satisfy

adequate assurance requirements, and that any assignee enter into a short form Assumption and

Amendment Agreement; (iv) protect Landlords' rights and interests during any proposed

designation period, and (v) grant such other relief requested herein.

Dated: November 6, 2024                          */s/ Leslie C. Heilman*
Wilmington, Delaware                             Leslie C. Heilman (DE No. 4716)
                                                 Laurel D. Roglen (DE No. 5759)
                                                 Margaret A. Vesper (DE No. 6995)
                                                 BALLARD SPAHR LLP
                                                 919 N. Market Street, 11th Floor
                                                 Wilmington, Delaware 19801-3034
                                                 Telephone: (302) 252-4465
                                                 Facsimile: (302) 252-4466
                                                 E-mail: heilmanl@ballardspahr.com
                                                         roglenl@ballardspahr.com
                                                         vesperm@ballardspahr.com

                                                 and

                                                 Dustin P. Branch, Esquire
                                                 Nahal Zarnighian, Esquire
                                                 Sara Shahbazi, Esquire
                                                 BALLARD SPAHR LLP
                                                 2029 Century Park East, Suite 1400
                                                 Los Angeles, California 90067-2915
                                                 Telephone: (424) 204-4400
                                                 Facsimile: (424) 204-4350
                                                 E-mail: branchd@ballardspahr.com
                                                         zarnighiann@ballardspahr.com
                                                         shahbazis@ballardspahr.com

                                                 and

                                                 Craig Solomon Ganz, Esquire
                                                 Michael S. Myers, Esquire
                                                 Joel F. Newell, Esquire
                                                 BALLARD SPAHR LLP
                                                 1 East Washington Street, Suite 2300
                                                 Phoenix, Arizona 85004-2555
                                                 Telephone: (602) 798-5427
                                                 Facsimile: (602) 798-5595
                                                 E-mail: ganzc@ballardspahr.com

myersm@ballardspahr.com
newellj@ballardspahr.com

*Attorneys for 35/WCD Century South K/C Ltd., ARC ASANDSC001, LLC, ARC NWNCHSC001, LLC, BMA Beachwood, LLC, Brixmor Operating Partnership LP, Columbia Group Big, LLC, F & F Investments, LLC, Francis Carrington, Hanford Mall 2020 LLC, Hunting Creek Retail, LLC, Millan Holdings LLC, NS Retail Holdings, LLC , RD Management LLC, Robhana Group, Sun Plaza Shops, LLC, TJ Elite Properties, LLC, and Trussville Promenade I Owner, LLC*