# **EXHIBIT A**

**Assumption & Assignment Agreement**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSUMPTION AND ASSIGNMENT AGREEMENT (the "**Agreement**"), dated as of October __, 2024, is by and between **BIG LOTS STORES, INC.**, an Ohio corporation, doing business as Big Lots ("**Assignor**") and **BROOK VALLEY THRIFT STORES, INC.**, an Alabama corporation, doing business as City Thrift ("**Assignee**" and together with Assignor, collectively, the "**Parties**" and each a "**Party**"). For the avoidance of doubt, all provisions of the applicable assigned lease, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such lease by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession (collectively, the "**Debtors**"), has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), jointly administered under case *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "**Chapter 11 Cases**"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease listed on Schedule A attached hereto (the "**Assigned Asset**" or the "**Lease**") with respect to the premises set forth on Schedule A (the "**Premises**"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "**Lease Sale Procedures**") [DOC #460-1] subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1. Assignment and Assumption.

    (a) Effective as of the date the Bankruptcy Court enters an order of record (the "**Assignment Order**") pursuant to 11 U.S.C. 363(b) and 365 approving the assumption and assignment contemplated by this Agreement (the "Closing Date"), and upon payment of the Purchase Price as set forth below, Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset free and clear (subject to this Agreements express terms regarding the assumption/cure of certain liabilities) of leasehold mortgages (if any), subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, mechanics liens, bills, interests, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances (collectively, the "**Interests**).

    (b) No later than the Closing Date, Assignor shall surrender the Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written

1

confirmation that Assignee is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Assignee.

(c) Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset which come due after the Closing Date. Assignor shall be barred from asserting any additional cure costs or other claims, with respect to the Assigned Asset that came due on or before the Closing Date.

2. Payment of Purchase Price. Assignee shall, on the Closing Date or the immediately following business day if the Assignment Order is entered of record after 3:00PM ET, deliver the purchase price for the Assigned Asset in the amount of $217,000.00 (net of any previously paid deposit amounts) (the "**Purchase Price**") in immediately available funds wired to the account specified by Assignor. The Purchase Price is inclusive of any cure amounts that may be owed as a result of the assumption of the Lase in connection with this Agreement.

3. No Further Liability of Assignor. Except as provided for herein, from and after the Closing Date, Assignor shall have no further obligations and duties with respect to the Assigned Asset.

4. Further Assurances. At any time and from time to time after the Closing Date, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset.

5. Representations. Assignor represents and warrants to Assignee that it has fully complied with any requests from Assignee to provide access to all known leases and amendments documents relating to the Assigned Asset.

6. "As Is Where Is" Transaction. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset except as otherwise expressly provided herein. Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset. Assignee further acknowledges that the Assignee has conducted (or has had an opportunity to conduct) an independent inspection and investigation of the physical condition of the Assigned Asset and all such other matters relating to or affecting the Assigned Asset as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset, Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Assigned Asset "AS IS" and "WHERE IS."

7. Abandonment. Subject to Court approval, upon the Closing Date, any personal property remaining at the Premises is deemed abandoned and Assignee is free to dispose of or utilize any personal property without further notice or liability to the Assignor or any consenting third parties.

8. **Compliance With Law.** From and after the Closing Date, with respect to the Premises, Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

9. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

10. **Jurisdiction.** The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

11. **No Reliance.** Except as specifically set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

12. **Construction.** This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

13. **Execution in Counterparts.** This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

14. **Miscellaneous.** Assignor acknowledges and agrees that Assignee shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Assignor with respect to this Agreement unless otherwise agreed by the Parties.

15. **Intended Use & Going Dark.** Assignee intends to use the Premises to operate a first class retail thrift store and the bid related to this Agreement and this Agreement shall only be effective if Assignee is authorized to operate such a first class retail thrift store on Premises. In order to facilitate such usage, Assignee may need to delay reestablishing operations for a period of time not to exceed one hundred twenty (120) days (the "**Going Dark Period**").

*[Signatures appear on following page]*

4

720966.000024 4884-0871-4478.3 #99081037v2

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**

**BIG LOTS STORES, INC.**, an Ohio corporation, doing business as Big Lots

By: _____
Name: _____
Its: _____

**ASSIGNEE:**

**BROOK VALLEY THRIFT STORE, INC.**, an Alabama corporation, doing business as City Thrift

By: _*[signature]*_____
Name: _Greg Giles_____
Its: _pres_____

## Schedule A to the Assumption and Assignment Agreement

### Description of Lease Asset

That certain Lease Agreement* and entered into by and between Shadrell Orlando, LP, a Delaware limited partnership as Landlord ("**Landlord**") and Big Lots Stores, Inc., an Ohio corporation doing business as Big Lots ("**Tenant**"), having a street address of 1801 S. Semoran Blvd., Orlando, Florida 32822 and covering approximately 40,000 rental square feet (the "**Lease**").

\*   The Lease was signed and notarized by (i) Landlord on February 5, 2021 and (ii) Tenant on January 31, 2021, but the "**Effective Date**" is not complete on the first page of the Lease.

A-1