IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:

BIG LOTS, INC., *et al.*,

Debtors.

Chapter 11

Case No. 24-11964 (JKS)

(Jointly Administered)

## WITHDRAWAL OF CURE OBJECTION OF ORANGEBURG REALTY LTD. PARTNERSHIP

PLEASE TAKE NOTICE that ORANGEBURG REALTY LTD. PARTNERSHIP, a South Carolina limited partnership ("Contract Counterparty"), withdraws its Cure Objection filed in this case (Doc 655). The filing of this Cure Objection results from the execution of that certain Amendment to Lease by Contract Counterparty, as Landlord, and Debtor Big Lots Stores, LLC, as Tenant, a complete fully-executed copy of which is attached hereto as EXHIBIT "A" (the "Amendment"). This withdrawal by Contract Counterparty of its said Cure Objection is on the terms and subject to the conditions agreed to by the parties in the Amendment.

DATED: November 6, 2024

Respectfully submitted,

ORANGEBURG REALTY LTD. PARTNERSHIP,
a South Carolina limited partnership,

By:   Shopping Center Investments, Inc.,
      a South Carolina corporation,
      its General Partner,

By: *[signature]*
    John Politis
    Its: President

1

# EXHIBIT "A"

## TO WITHDRAWAL OF CURE OBJECTION
## OF ORANGEBURG REALTY LTD. PARTNERSHIP

AMENDMENT TO LEASE ATTACHED

Big Lots Store No. 1991

## AMENDMENT TO LEASE

**THIS AMENDMENT TO LEASE** (this "*Amendment*") is made effective as of October 1, 2024, (the "*Effective Date*"), by and between **Orangeburg Realty Ltd. Partnership**, a South Carolina limited partnership ("*Landlord*"), and **Big Lots Stores, LLC, an Ohio limited liability company** ("*Tenant*," and together with the Landlord, the "*Parties*" and each, a "*Party*").

## RECITALS

**WHEREAS,** Food Lion, LLC, a North Carolina limited liability company ("Food Lion"), as tenant, and Landlord, as landlord, entered into that certain lease (as amended from time to time thereafter, the "*Prime Lease*") with respect to that certain premises located at **1371 CHESTNUT ST, ORANGEBURG, SOUTH CAROLINA 29115**, which premises is defined and more particularly described in the Prime Lease (the "*Premises*"); and

**WHEREAS,** Tenant, as subtenant, and Food Lion, as sublandlord, entered into that certain Sublease Agreement, dated August 17, 2005 (the "*Sublease*"), for the Premises; and

**WHEREAS,** Food Lion and Landlord entered into that certain *Lease Termination Agreement* (herein so-called), dated October 31, 2016, terminating the Prime Lease, effective October 31, 2016.

**WHEREAS,** the Parties entered into that certain Agreement to Create Direct Leasehold with Prime Landlord and Sublease Amendment, dated effective October 28, 2016 (the "*Direct Lease Agreement*"), whereby, upon the date of termination of the Prime Lease, Tenant created a direct leasehold estate with Landlord, continuing the Sublease without interruption as a direct lease between the Parties with the same force and effect as if the Parties had entered into a lease as of the date of termination of the Prime Lease, containing the same terms, covenants and conditions as those contained in the Sublease, for a term commencing November 1, 2016 (the direct lease arising between the Parties under the Sublease as modified by the Direct Lease Agreement is referred to herein as the "*Lease*")

**WHEREAS,** on September 9, 2024, Tenant and certain of its debtor affiliates (collectively, the "*Debtors*") commenced cases (collectively, the "*Chapter 11 Cases*") under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "*Bankruptcy Code*") which are now pending in the United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Court*"). The Chapter 11 Cases are being jointly administered under Case Number 24-11967; and

**WHEREAS,** Landlord and Tenant desire to modify certain terms and conditions of the Lease, effective as of the Restructuring Effective Date (as hereinafter defined), as amended by this Amendment.

**NOW, THEREFORE,** in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, Landlord and Tenant hereby agree as follows:

## AGREEMENT

1. <u>Capitalized Terms; Recitals</u>. Capitalized terms used and not otherwise defined herein shall have their respective meaning assigned to such terms in the Lease. The foregoing recitals are true and correct and incorporated by reference herein.

2. <u>Effective Date</u>. This Amendment, and each of its amendments, modifications, and waivers with respect to the Lease as set forth herein, shall be effective on the date that the Lease is assumed or assigned in the Chapter 11 Cases, whether pursuant to (a) procedures approved by the Bankruptcy Court or

1

(FRTC)

(b) entry of an order by the Bankruptcy Court approving the assumption or assignment of the Lease, in each case, that also approve this Amendment, including pursuant to or in connection with a sale of Tenant's assets pursuant to Section 363 of the Bankruptcy Code, confirmation of Tenant's Chapter 11 plan of reorganization in the Chapter 11 Cases, or a stand-alone motion for assumption or assignment of the Lease (in each case, the "**Restructuring Effective Date**"); *provided, however*, that Tenant shall obtain the benefit of this Amendment, and this Amendment shall be binding on Landlord, beginning on the Effective Date hereof. In the event the Restructuring Effective Date does not occur, or the Lease is rejected in accordance with the Bankruptcy Code, this Amendment shall be null and void in all respects, and nothing in this Amendment shall give rise to any claim, causes of action, or damages (compensatory or consequential) against either Party. Nothing contained in this Amendment is intended to be or shall be construed as or deemed an assumption or an assignment of the Lease, as amended hereby, or any contract or document related thereto under section 365 of the Bankruptcy Code. Prior to the Restructuring Effective Date, Tenant expressly reserves its right, in its sole and absolute discretion, to assume, reject, or assign the Lease pursuant to Section 365 of the Bankruptcy Code. In the event the rejection occurs prior to the assumption (or assumption and assignment) of the Lease, the Landlord shall be permitted to assert an unsecured rejection claim based upon the original rent and charges due and owing under the Lease without regard to this Amendment pursuant to 11 U.S.C. § 502(b)(6). In the event the rejection occurs after an assumption (or assumption and assignment) of the Lease, the Landlord shall be permitted to assert an administrative expense claim based upon the original rent and charges due under the Lease without regard to this Amendment pursuant to 11 U.S.C. § 503(b)(7).

3.  Lease Modification.

    (a) Term. Notwithstanding anything in the Lease to the contrary, Landlord and Tenant acknowledge and agree that the current term of the Lease (the "**Term**") is hereby revised to expire on **January 31, 2032** ("**Revised Term**"). Such revised Term, and any applicable Extension Term (as hereinafter defined), shall be on the same terms and conditions as set forth in the Lease, except as modified or amended in this Amendment.

    (b) Monthly Base Rent. Notwithstanding anything in the Lease to the contrary, from and after January 1, 2025 through April 30, 2026, the fixed Base Rent due and payable during the Revised Term is hereby amended to **$217,920 per annum**, payable in equal monthly installments of **$18,160.00**. From and after May 1, 2026, through the remainder of the Revised Term, the Base Rent due and payable shall be $233,429.00 per annum, payable in monthly installments of $19,452.42.

    (c) Abatement of Base Rent. Landlord hereby acknowledges and agrees that Base Rent, with respect to the Abatement Period (as defined below) is hereby abated and forgiven (the "**Abated Base Rent**") in full. Landlord hereby waives any remedy under, or with respect to, the Lease or at law and/or equity arising in connection with, or otherwise related to, the Abated Base Rent. As used herein, "**Abatement Period**" shall mean the period of sixty (60) days (or such greater number of days, as the case may be, in any two (2)-month period) beginning on November 1, 2024 and ending two (2) months thereafter.

    (d) Waiver of Claims. Except as otherwise set forth herein, Landlord hereby (i) waives, releases, and discharges Tenant and all of its affiliated companies, the Debtors, and their bankruptcy estates, and their respective successors and assigns, from any and all claims, damages, obligations, liabilities, actions, and causes of action of every kind and nature whatsoever it may have for any cure payments or other amounts due and owing under the Lease, or that otherwise arose under or in connection with the Lease, through and including the Effective Date hereof, including but not limited to claims for so-called "stub rent" (whether or not asserted as administrative priority claims pursuant to Section 503(b) of

2

(FRTC)

Docusign Envelope ID: B5866DE0-26D5-497A-A235-97E0C0647745

the Bankruptcy Code), whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, now existing or hereafter arising, including any claims and causes of action for damages, payments, or amounts owing or that may become owing pursuant to Section 365(b) of the Bankruptcy Code, (ii) agrees and acknowledges that it will not object to or oppose the assumption of the Lease by Tenant and/or assignment of the Lease to any assignee selected by the Debtors in their sole discretion, and (iii) agrees that it shall not seek the provision of any adequate assurance of future performance by the assignee of the Lease selected by the Debtors in their sole discretion. Notwithstanding anything to the contrary contained herein, Tenant acknowledges and agrees that Tenant shall pay to Landlord the sum of $6,000.00 on January 1, 2025, as Additional Rent otherwise due and owing by Tenant under the Lease on October 1, 2024.

  (e) <u>Right to Extend Term</u>.

    i. Any and all options granted to Tenant under the Lease to extend the Term are hereby void and of no force or effect.

    ii. Landlord hereby grants to Tenant the right, exercisable at Tenant's option, to extend the Term for one (1) **five-year option and one (1) four-year option**(each, an "*Extension Option*"). The term of each Extension Option ( (each an "*Extension Term*"), shall be consecutive and exercisable separately as to each such Extension Option as hereinafter provided.

    iii. If properly exercised, the first Extension Term shall commence immediately following the end of the current Term, and each subsequent Extension Term shall commence immediately upon expiration of the preceding Extension Term, and in such event, each such Extension Term shall be part of the Term. Tenant shall exercise an Extension Option by giving Landlord written notice of the exercise thereof not later than six (6) months, nor earlier than sixteen (16) months, prior to the expiration of the current Term or the Extension Term, as the case may be, then in effect.

    iv. During each Extension Term, all the terms, conditions, covenants and agreements set forth in the Lease (except as modified by this Amendment) shall continue to apply and be binding upon Landlord and Tenant, except that the Base Rent for the initial Extension Term shall be $256,722.00 per annum, payable in monthly installments of $21,393.50, and Base Rent for the second Extension Term shall be $282,450.00 per annum, payable in monthly installments of $23,537.50.

  (f) <u>Attorneys' Fees</u>. Landlord further acknowledges and agrees that, notwithstanding anything to the contrary in the Lease, Landlord shall not be entitled to receive from Tenant or its affiliates (or charge as rent due from Tenant or its affiliates) any attorneys' fees incurred by Landlord in connection with this Amendment.

  (g) <u>Temporary Waiver of Additional Rent</u>. For the periods, totaling eleven (11) months, commencing on January 1, 2024 and continuing through September 30, 2024 and commencing on November 1, 2024 and continuing through December 31, 2024 (collectively, the "*Waiver Periods*"), Landlord hereby waives, releases and discharges Tenant from any and all obligations of Tenant under the Lease to pay Landlord Additional Rent. Landlord and Tenant acknowledge and agree that (w)notwithstanding anything to the contrary contained herein, Tenant remains obligated to pay Landlord the sum of $6,000.00 on January 1, 2025, as Additional Rent otherwise due and owing by Tenant under the

3

(FRTC)

Lease on October 1, 2024, (x) any provisions in the Lease that may be contrary to this broad interpretation shall not reduce, limit, or otherwise affect the scope of this interpretation, (y) this paragraph shall take precedence over any conflicting or contradictory provisions in the Lease, and (z) if the total amount waived, related or discharged during the Waiver Periods is less than $66,000.00, Landlord shall credit Tenant for future payments of Tenant of Additional Rent due and owing under the Lease to Landlord in an amount equal to the difference between the actual total amount of Additional Rent, related or discharged during the Waiver Periods and $66,000.00.

4. **No Default and Waiver of Charges**. Landlord acknowledges and affirms that as of the Effective Date, Tenant is not in default under any of the terms, conditions, or provisions of the Lease, and that there exist no events or circumstances which, with the passage of time or the giving of notice or both, constitutes a default under the Lease (including, without limitation, any failure of Tenant to meet its obligations to continuously operate in the Premises). Landlord further acknowledges and agrees that it has no offsets, claims, or defenses against Tenant with respect to any obligation or duty of Tenant arising pursuant to the Lease. To the extent that any notices of default or non-payment have been delivered to Tenant, all such notices are hereby waived and of no further force or effect. No default interest, late fees, charges, surcharges, or other fees shall be due, and all such interest, late fees, charges, surcharges, or other fees are waived and shall not apply.

5. **Confidentiality**. Tenant and Landlord will keep confidential (a) the terms of this Amendment, and (b) all negotiations and communications, including each Party's representatives in connection with this Amendment (collectively, "***Confidential Information***"). Tenant and Landlord will not disclose or make available any Confidential Information to any other person or entity, except (i) accountants, brokers, attorneys, and other agents of Landlord and Tenant for the sole purpose of providing advice to Landlord and Tenant in connection with the Confidential Information and who agree to preserve the confidential nature of same, or (ii) as required by law.

6. **Authority**. Each Party represents and warrants that it has the authority and power to enter into this Amendment and that this Amendment constitutes a legal, valid and binding obligation of that Party.

7. **Notices.**

(a) Notwithstanding anything to the contrary contained in the Lease, whenever any demand, request, approval, consent or notice ("***Notice***") shall or may be given by one party to the other, Notice shall be addressed to the parties at their respective addresses as specified below and delivered by (i) a nationally recognized overnight express courier, or (ii) registered or certified mail return receipt requested, or (iii) via electronic mail with such notice attached. The parties hereby acknowledge and agree that any electronic notices shall be legal and binding and shall have the same full force and effect as if a paper original of such Notice had been delivered and signed using a handwritten signature. The date of actual receipt shall be deemed the date of service of notice. In the event an addressee refuses to accept delivery, however, then notice shall be deemed to have been served on the date of said refusal of delivery. Either party may, at any time, change its notice address by giving the other party notice, in accordance with the above, stating the change and setting forth the new address.:

*If to Tenant*:

4900 East Dublin Granville Road
Columbus, OH 43081-7651
Attn: Lease Administration

(FRTC)

*If to Landlord*:

5533 Wind Drift Lane
Boca Raton, FL 33433
Attn: John Politis

8. <u>Miscellaneous</u>.

(a) Landlord and Tenant each hereby represents that it has dealt with no party or broker in connection with this Amendment except for A&G Real Estate Partners ("***Tenant's Broker***"). Any and all fees that may be due to Tenant's Broker shall be paid by Tenant pursuant to a separate agreement. Insofar as each Party knows, no other broker negotiated this Amendment or is entitled to any commission in connection therewith. Landlord and Tenant each agrees to indemnify, defend, and hold the other harmless from and against any and all claims, loss, cost and damages (including reasonable attorneys' fees and court costs) suffered or incurred by the representing Party as a result of a breach of this representation.

(b) This Amendment may be executed in counterparts, each of which shall constitute an original, and which together shall constitute one and the same agreement. This Amendment may be executed or delivered by electronic or facsimile means, and copies of executed signature pages stored electronically in portable document format (.pdf) shall be binding as originals. Neither Party shall record this Amendment without the express prior written consent of the other Party.

(c) Subject to the other terms of this Amendment, each of Landlord and Tenant agree to execute and deliver such other instruments and perform such other acts, in addition to the matters herein specified, as may be reasonably necessary, from time to time, to effectuate the modifications, waivers and amendments contemplated by this Amendment.

(d) This Amendment, and all covenants contained herein, shall be binding and inure to the benefit of the Parties and their respective successors, assigns, heirs, executors, administrators, and representatives.

(e) The invalidity or unenforceability of any provision of this Agreement shall not affect or impair any other provisions, which shall remain in full force and effect.

(f) Except as modified as set forth in this Amendment, all the terms and provisions of the Lease remain unchanged and in full force and effect and Landlord and Tenant hereby ratify and confirm same. Landlord and Tenant acknowledge and agree that the Lease, as modified by this Amendment, sets forth the entire agreement between Landlord and Tenant and there are no other agreements, understandings, undertakings, representations, or warranties among the Parties with respect to the subject matter hereof except as set forth herein. In case of any conflict between the terms and provisions of the Lease and the terms and provisions of this Amendment, the terms and provisions of this Amendment shall control.

[*signature page follows*]

(FRTC)

Big Lots Store No. 1991

     **IN WITNESS WHEREOF**, the Parties hereto have executed this Amendment effective as of the Effective Date.

**LANDLORD:**

ORANGEBURG REALTY, LTD.
PARTNERSHIP

By:  Shopping Center Investments, Inc.,
      a South Carolina Corporation,
      its General Partner

By: _____
    John Politis
    President

**TENANT:**

Big Lots Stores, LLC

By: _____
    Name: Joshua H. Nanberg
    Title: Vice President, Real Estate

6

(FRTC)

## CERTIFICATE OF SERVICE

I here certify that on the 6th day of November, 2024, I caused a true and correct copy of foregoing document to be served on all Objection Notice Parties identified on the attached Service List via e-mail.

_____
John Politis

3

**SERVICE LIST**

DAVIS POLK & WARDWELL LLP

    Attn:    Brian M. Resnick, Esq.
              Adam L. Shpeen, Esq.
              Stephen D. Piraino, Esq.
              Jonah A. Peppiatt, Esq.
              Ethan Stern, Esq.

              E-mail: notice.biglots@davispolk.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

    Attn:    Robert J. Dehney, Sr., Esq.
              Andrew R. Remming, Esq.
              Daniel B. Butz, Esq.
              Tamara K. Mann, Esq.
              Casey B. Sawyer, Esq.

              E-mail: biglots.mnat@morrisnichols.com

CHOATE, HALL & STEWART LLP

    Attn:    John F. Ventola, Esq.
              E-mail: jventola@choate.com
    Attn:    Jonathan D. Marshall, Esq.
              E-mail: jmarshall@choate.com
    Attn:    Jacob S. Lang, Esq.
              E-Mail: jslang@choate.com

BLANK ROME LLP

    Attn:    Regina Stango Kelbon, Esq.
              E-mail: regina.kelbon@blankrome.com
    Attn:    Stanley Tarr, Esq.
              E-mail: stanley.tarr@blankrome.com

OTTERBOURG P.C.

Attn:    Chad B. Simon, Esq.
         E-mail: CSimon@otterbourg.com
Attn:    James V. Drew, Esq.
         E-mail: JDrew@otterbourg.com
Attn:    Sarah L. Hautzinger, Esq.
         E-mail: shautzinger@otterbourg.com

RICHARDS, LAYTON & FINGER, P.A.

Attn: John H. Knight, Esq.
E-mail: knight@rlf.com

MCDERMOTT WILL & EMERY LLP

Attn: Darren Azman, Esq.
E-mail: dazman@mwe.com
Attn: Kristin G. Going, Esq.
E-mail: kgoing@mwe.com

COLE SCHOTZ P.C.

Attn: Justin R. Alberto, Esq.
E-mail: jalberto@coleschotz.com
Attn: Stacy L. Newman, Esq.
E-mail: snewman@coleschotz.com

KIRKLAND & ELLIS LP

Attn: Christopher Marcus, P.C.
E-mail: cmarcus@kirkland.com
Attn: Douglas A. Ryder, P.C.
E-mail: douglas.ryder@kirkland.com
Attn: Nicholas M. Adzima
E-mail: nicholas.adzima@kirkland.com

U.S. TRUSTEE

Attn: Linda J. Casey
E-mail: linda.casey@usdoj.gov.

5