IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 414, 674, 676, 1027 & 1032** |

## DEBTORS' OMNIBUS OBJECTION TO MOTIONS FOR RELIEF FROM AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**" or "**Big Lots**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this omnibus objection (the "**Objection**") to the *Motion of Judith Owczarkowski, as Administratrix for the Estate of Norman Owczarkowski for Relief from the Automatic Stay Under Section 362 of the Bankruptcy Code and Waiver of Fourteen Day Stay Imposed by Rule 4001 (a)(s)* [D.I. 414] (the "**Owczarkowski Motion**") filed by Judith Owczarkowski (the "**Owczarkowski Movant**"), the *Motion for Relief From Bankruptcy Stay To Proceed Against Insurance Proceeds* [D.I. 674] (the "**Eskra-Brown Motion**") filed by Amy Eskra-Brown (the "**Eskra-Brown Movant**"), the *Motion for Relief from Bankruptcy Stay To Proceed Against Insurance Proceeds* [D.I. 676] (the "**Donnelly Motion**") filed by Carol A. Donnelly (the "**Donnelly Movant**"), the *Motion of John Florence for Order Granting Relief from*

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

*the Automatic Stay* [D.I. 1027] (the "**Florence Motion**") filed by John Florence (the "**Florence Movant**"), and the *Motion of T'ron Bowie for Order Granting Relief from the Automatic Stay* [D.I. 1032] (the "**Bowie Motion**", and, together with the Owczarkowski Motion, the Eskra-Brown Motion, the Donnelly Motion, and the Florence Motion, the **"Motions"**) filed by T'ron Bowie (the "**Bowie Movant**", and, together with the Owczarkowski Movant, the Eskra-Brown the Movant, the Donnelly Movant, and the Florence Movant, the "**Movants**"). In support of this Objection, the Debtors respectfully represent and set forth as follows:

## PRELIMINARY STATEMENT

1. The Movants, each of which is a plaintiff asserting personal injury claims, seek relief from the automatic stay to proceed with their lawsuit against the Debtors.

2. The automatic stay is one of the most fundamental protections afforded to a debtor under the Bankruptcy Code. The stay provides a debtor with a "breathing spell" during which the debtor may concentrate on its chapter 11 cases, preserve the integrity of its assets, and operate in a manner that maximizes value for creditors and affords them with equitable treatment. For the reasons set forth herein, granting the Motions at this critical stage of the Debtors' chapter 11 efforts would frustrate the Debtors' reorganization. The Debtors are currently in the process of selling substantially all of their assets pursuant to a Court-approved sale process. Given that these Chapter 11 Cases are at a critical stage, the Debtors should not be distracted by ancillary litigation, but should be permitted to concentrate on maximizing the value of their assets and bringing these cases to a prompt resolution.

3. Importantly, if the Motions were granted, the Debtors would be forced to incur significant defense costs. The Debtors' applicable general liability insurance policy with Starr Indemnity & Liability Company (the "**Liability Insurance Policy**") contains a $1 million

self-insured retention (the "**SIR**") *per occurrence*, which does not contain an exception for bankruptcy or insolvency. See Exhibit 1, Excerpt of Debtors' Liability Insurance Policy. The Debtors are also responsible for all expenses – including defense costs – associated with defending covered claims until the SIR is exceeded. So, these costs will be borne by the Debtors, to the direct detriment of the Debtors' estates, creditors, and other stakeholders. And, while the Debtors contest any liability, if one or more of the Movants' lawsuits proceeded to judgment, the Debtors' estates would bear the cost up to the SIR. This would upend the order of priority under the Bankruptcy Code and allow what would otherwise be unsecured claims to potentially recover in full. Accordingly, at this stage of the Chapter 11 Cases, denial of the Motions is in the best interest of Debtors' estates.

4.  The Movants argue that lifting the stay would not affect the Debtors' estates because all claims and litigation costs will be covered by the Debtors' insurance provider.[2] However, that is indeed not the reality. In light of the SIR, the Debtors will be responsible for costs up to $1 million for each separate claim.

5.  Accordingly, there is no cause to lift the stay under the circumstances of these Chapter 11 Cases. The harm to the Debtors and their estates from lifting the stay far outweighs any harm to the Movants from maintaining the stay. The Movants are in no different position than

---

[2] The Owczarkowski Motion ¶ 15 ("[T]he Debtor will not be harmed because if Movant is successful in obtaining a judgment against, or settlement with, the Debtor, Movant is merely seeking to collect from the Debtor's insurance and will not seek to collect on any such judgment or settlement from the estate(s) assets without further order of this Court."); the Eskra-Brown Motion ¶ 10 (same); the Donnelly Motion ¶ 10 ("Movant seeks relief from stay because they seek only to proceed against the Insurance Policy/Insurance Proceeds and would ultimately not interfere with the bankruptcy proceedings."); the Florence Motion ¶ 14 (same); the Bowie Motion ¶ 15 ("[T]he Debtors will not suffer prejudice should the stay be lifted because Movants' personal injury action will proceed outside of bankruptcy court where the Debtors have liability coverage for defense costs and any resulting judgment.").

any other unsecured creditor subject to the stay. Therefore, for all of these reasons, and as set forth in more detail below, the Court should deny the Motion.[3]

## BACKGROUND

6. On September 9, 2024 (the "**Petition Date**"), the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 23, 2024, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**") pursuant to 11 U.S.C. § 1102(a)(1). No trustee or examiner has been appointed in the Chapter 11 Cases.

7. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [D.I. 95] entered by the Court, on September 10, 2024, in each of the Chapter 11 Cases.[4]

8. Big Lots is a one-stop shop home discount retailer. Big Lots' mission is to help customers "Live Big and Save Lots" by offering bargains on everything for their homes, including furniture, décor, pantry essentials, kitchenware, groceries, and pet supplies. Headquartered in

---

[3] The Debtors understand that the Court does not have jurisdiction to hear personal injury claims. 28 U.S.C. § 157(b)(5). However, the Debtors submit that the relief sought in the Motions is premature, and if liquidation of any alleged claims of the Movants becomes necessary in the future, such claims may be determined by the United States District Court for the District of Delaware or another court of competent jurisdiction at that time. The Debtors reserve all rights with respect to any future estimation or liquidation of such claims.

[4] *See In re Great Basin, LLC*, No. 24-11966 (JKS); *In re Big Lots, Inc.*, No. 24-11967 (JKS); *In re Big Lots Management, LLC*, No. 24-11969 (JKS); *In re Consolidated Property Holdings, LLC*, No. 24-11968 (JKS); *In re Broyhill LLC*, No. 24-11971 (JKS); *In re Big Lots Stores - PNS, LLC*, No. 24-11970 (JKS); *In re Big Lots Stores, LLC*, No. 24-11973 (JKS); *In re BLBO Tenant, LLC*, No. 24-11972 (JKS); *In re Big Lots Stores - CSR, LLC*, No. 24-11976 (JKS); *In re CSC Distribution LLC*, No. 24-11974 (JKS); *In re Closeout Distribution, LLC*, No. 24-11978 (JKS); *In re Durant DC, LLC*, No. 24-11975 (JKS); *In re AVDC, LLC*, No. 24-11981 (JKS); *In re GAFDC LLC*, No. 24-11977 (JKS); *In re PAFDC LLC*, No. 24-11982 (JKS); *In re WAFDC, LLC*, No. 24-11979 (JKS); *In re INFDC, LLC*, No. 24-11983 (JKS); *In re Big Lots eCommerce LLC*, No. 24-11980 (JKS); *In re Big Lots F&S, LLC*, No. 24-11984 (JKS).

Columbus, Ohio, Big Lots operates more than 1,300 stores across 48 states in the United States, as well as an ecommerce store with expanded fulfillment and delivery capabilities.

9. Additional detail regarding the Debtors, their business, the events leading to the filing of this chapter 11 case, and the facts and circumstances supporting the relief requested herein is set forth in the *Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings* [D.I. 77].

10. On October 25, 2024, the Court entered an order [D.I. 612] (the "**Bidding Procedures Order**") approving, among other things, bidding procedures to govern the sale (the "**Sale**") of substantially all of the Debtors' assets. The Sale Hearing (as defined in the Bidding Procedures Order) is scheduled on November 21, 2024 at 10:30 a.m. (ET).

## THE MOTIONS

11. **Owczarkowski Motion**. The Owczarkowski Movant seeks relief from the automatic stay to permit her to litigate a personal injury action against Debtor Big Lots, Inc., in a civil action, styled *Judith Owczarkowski, as Administratrix for the Estate of Norman Owczarkowski Norman Owczarkowski, Plaintiff, v. Big Lot Stores, Inc. et al, Defendants,* Index No.: 807969/2022 (the "**Owczarkowski Litigation**"), pending in the Supreme Court of New York, County of Erie. The Owczarkowski Movant asserts that she is seeking relief from the automatic stay to allow her to proceed with the Owczarkowski Litigation to settlement or final judgement and to enforce any settlement or judgement, as against Big Lots Stores, LLC "solely against the Debtor's insurance proceeds." D.I. 414 ¶ 7.

12. **Eskra-Brown Motion.** The Eskra-Brown Movant seeks relief from the automatic stay to permit her to litigate a personal injury action against Debtor Big Lots Stores, Inc, in a civil

action, styled as *Amy Eskra-Brown, Plaintiff, v. Big Lots Stores, Inc. d/b/a Big Lots, Defendant,* GD-23-6899 (the "**Eskra-Brown Litigation**") pending in the Court of Common Pleas of Allegheny County, Pennsylvania. The Eskra-Brown Movant asserts that she is seeking relief from the automatic stay to avoid unnecessary delay in the Eskra-Brown Litigation. Additionally, the Eskra-Brown Movant asserts that she "seek[s] only to proceed against the Insurance Policy/Insurance Proceeds[.]" D.I. 674 ¶ 10.

13.    **Donnelly Motion.** The Donnelly Movant seeks relief from the automatic stay to permit her to litigate a personal injury action against Debtor Big Lots Stores, Inc. in a civil action, styled *Carol A. Donnelly, Plaintiff, v. Big Lots Stores, Inc. d/b/a Big Lots, Defendant* (the "**Donnelly Litigation**") pending in the Court of Common Pleas of Allegheny County, Pennsylvania. The Donnelly Movant asserts that she is seeking relief from the automatic stay to avoid unnecessary delay in the Donnelly Litigation. Additionally, the Donnelly Movant asserts that she "seek[s] only to proceed against the Insurance Policy/Insurance Proceeds[.]" D.I. 676 ¶ 10.

14.    **Florence Motion.** The Florence Movant seeks relief from the automatic stay to permit him to litigate personal injury claims against Debtors Big Lots Stores, LLC, Big Lots Stores, LLC, and/or any employees of affiliated Debtor entity and/or non-debtor parties. The Florence Movant asserts that he is seeking relief from the automatic stay "to prosecute his claims against the Debtor(s) to judgment in state court and to satisfy any award or other resolution he may obtain against the Debtor(s) from the proceeds of any applicable insurance policies." D.I. 1027 ¶ 22.

15.    **Bowie Motion.** By the Bowie Motion, the Bowie Movant seeks relief from the automatic stay to permit him to litigate personal injury claims against Debtors Big Lots Stores, LLC and Big Lots Stores, LLC d/b/a Big Lots, in a civil action, styled, *T'Ron Bowie, Plaintiff, v.*

*Big Lots Stores, LLC; Big Lots Stores, LLC d/b/a Big Lots; Paragon Windermere, LLC; and Lebanon Windmere, LLC, Defendants* (the "**Bowie Litigation**", and, together with the Owczarkowski Litigation, the Eskra-Brown Litigation, the Donnelly Litigation, and the Florence Litigation, the **"State Litigations"**), originally filed in the Lake Circuit Court of Lake County, Indiana, and subsequently transferred to Marion County, Indiana. The Bowie Movant asserts that he is seeking relief from the automatic stay to "to prosecute his claims against the Debtor(s) to judgment in state court and to satisfy any award or other resolution he may obtain against the Debtor(s) from the proceeds of any applicable insurance policies." D.I. 1032 ¶ 22.

**ARGUMENT**

    **A.**    **The Automatic Stay Is a Fundamental Protection That Prevents Piecemeal Litigation of Claims in Other Courts.**

16.    The automatic stay of section 362 of the Bankruptcy Code is "one of the most fundamental protections granted the debtor under the Bankruptcy Code." *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986)). The purpose of the automatic stay is threefold: "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Borman v. Raymark Ind., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting *St. Croix Condo. Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir. 1982)), *quoted in Rexene Prods.*, 141 B.R. at 576.

17.    The automatic stay is designed to give a debtor a "breathing spell" free from the worry and expense associated with defending state court litigation while the debtor attempts to

reorganize its affairs. *See Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); H.R. Rep. No. 595, 95th Cong. 1st Sess. 340 (1977).

18. Section 362(d)(1) of the Bankruptcy Code permits a court to grant relief from the automatic stay "for cause." 11 U.S.C. § 362. Whether cause exists to lift the stay is determined on a case-by-case basis. *See In re Integrated Health Servs., Inc.*, 2000 WL 33712483, *1 (Bankr. D. Del. Aug. 11, 2000); *In re Lincoln*, 264 B.R 370, 372 (Bankr. E.D. Pa. 2001) ("Each request for relief for 'cause' under [section] 362(d)(1) must be considered on its own facts."). In determining whether "cause" exists, courts in this district consider the following three "*Rexene* Factors":

  (1) the prejudice that would be suffered by the debtors should the stay be lifted;
  (2) the balance of the hardships facing the parties if the stay is lifted; and
  (3) the probable success on the merits if the stay is lifted.

*In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 718 (Bankr. D. Del. 1996) (citing *Rexene Prods.*, 141 B.R. at 576). "To establish cause, the party seeking relief from the stay must show that 'the balance of hardships from not obtaining relief tips *significantly* in [its] favor.'" *Atl. Marine Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.)*, 298 B.R. 222, 225 (D. Del. 2003) (alteration in original) (quoting *In re FRG*, 115 B.R. 72, 74 (E.D. Pa. 1990)); s*ee also In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009) (listing as the second prong "whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor" (internal citations omitted)).

**B.    There Is No "Cause" To Modify the Stay.**

19. A review of the *Rexene* Factors demonstrates that lifting the automatic stay is not warranted. Lifting the automatic stay would significantly prejudice the Debtors' estates, and in each Movants' case, the balance of hardships favors the Debtors.

### 1. Lifting the Automatic Stay Would Prejudice Debtors.

20. If the automatic stay were lifted and the State Litigations were to proceed, the Debtors would be prejudiced by having to defend the State Litigations or else suffer adverse judgments, depleting the Debtors' limited resources and undermining one of the key objectives of the stay. *See Rexene*, 141 B.R. at 576; *Borman*, 946 F.2d at 1036 ("The automatic stay was designed . . . to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it . . . ."). The Liability Insurance Policy coverage does not arise until after the Debtors expend $1 million. As a result, the lifting of the automatic stay to allow the State Litigations to proceed could directly affect the Debtors' assets and prejudice the Debtors and their other creditors. *See In re Continental Airlines*, 177 B.R. 475, 481 (D. Del. 1993) (upholding bankruptcy court's finding that the automatic stay applied and further enjoining prosecution of litigation based, in part, on the direct impact on the debtor's assets caused by the debtor having to bear indemnification obligations and advancement of defense costs in the absence of insurance); *Majestic Star Casino v. City of Gary* (*In re Majestic Star Casino, LLC*), 2010 WL 2540457, *2 (Bankr. D. Del. Apr. 28, 2010) ("In addition, the Debtors will have to advance defense costs thereby, at the very least, temporarily diverting much needed funds—and funds which they do not have to expend absent their lenders' acquiescence." (citing *Continental*, 177 B.R. at 481)).

21. Additionally, allowing the Movants to recover on their claims ahead of other creditors is contrary to the priority scheme set forth in the Bankruptcy Code and the principle of bankruptcy law that all of the Debtors' interests in property are to be distributed equitably. Such a result would encourage others to seek similar relief (and to do so as quickly as possible) and would undermine the Debtors' chapter 11 efforts and hamper their ability to conduct a focused and structured claims reconciliation process. *See In re SN Liquidation, Inc.,* 388 B.R. 579, 584 (Bankr. D. Del. 2008); *DBSI,* 407 B.R. at 167 (denying stay relief where it may encourage "a race to the

courthouse by parties seeking similar orders, which will cause undue hardship and expense to the estate"); *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) (denying a motion for relief from the automatic stay where "granting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case").

22. Moreover, the burden associated with litigating these actions is not strictly financial. Allowing the Movants' litigations to proceed would force the Debtors to divert time, resources, and attention that would otherwise be dedicated to administering the estate. There are already significant, and conflicting, demands on management's time. The automatic stay is meant to allow the Debtors to concentrate on these critical chapter 11 tasks without the distraction of ancillary litigation. *See In re W.R. Grace,* 2007 WL 1129170 at *2 n.7 (Bankr. D. Del. Apr. 13, 2007). Accordingly, lifting the stay would prejudice the Debtors by unnecessarily distracting their management to the detriment of these Chapter 11 Cases.

### 2. The Balance of Harms Weighs Against Granting the Motions.

23. The most important factor to consider when addressing whether cause exists to lift the automatic stay is the effect on the administration of the Chapter 11 Cases. *See In re W.R. Grace*, 2007 WL 1129170 at *2 n.7 ("Even slight interference [to the administration of the case] . . . may be enough to preclude relief in the absence of a commensurate benefit."); *see also DBSI*, 407 B.R. at 166 ("Courts also place emphasis on whether lifting the automatic stay will impede[] the orderly administration of the debtor's estate."); *In re Penn-Dixie Indus., Inc.*, 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980) ("Interference by creditors in the administration of the estate, no matter how small, through the continuance of a preliminary skirmish in a suit outside the Bankruptcy Court is prohibited."). As a result, cause exists only if the harm that the Movants would suffer from

maintaining the stay "considerably outweighs" the harm that the Debtors would suffer from lifting of stay. *See, e.g.*, *DBSI*, 407 B.R. at 166.

24. Here, any conceivable harm to the Movants cannot outweigh the harm to the Debtors from lifting the automatic stay. As described above, the harm that the Debtors would suffer if the stay were lifted would be substantial. Conversely, the Movants have not identified any harm sufficient to merit lifting the automatic stay. The only harm they identify is the bare fact that their respective State Litigations are stayed. While the automatic stay may delay the prosecution of the State Litigations, such delay does not establish the harm necessary for relief from stay. If it did, every creditor would be entitled to relief from stay. *Cf. In re Condisco*, 271 B.R. 273, 277 (Bankr. N.D. Ill. 2002) ("The automatic stay almost always delays litigants. That is, after all, its purpose and the reason they call it a 'stay.'").

25. Further, the potential delay in resolving the Movants' claims does not outweigh the Debtors' interest in preserving estate assets. The Debtors would suffer significant prejudice if the Court were to allow the State Litigations to proceed at this critical juncture of the Chapter 11 Cases. The Debtors are currently operating their business, negotiating with stakeholders, and responding to the demands of these Chapter 11 Cases, while simultaneously conducting a going-concern sale process. Because of the SIR, the burden of the defending the State Litigation, if it were allowed to proceed, may fall on the Debtors, who can ill afford that distraction at this stage of the Chapter 11 Cases. The Debtors' must maintain their focus on administering the estate and completing the sale process. Finally, because the Movants are not in a unique position among

unsecured creditors, allowing them to potentially recover on their claims ahead of others would be contrary to the priority scheme set forth in the Bankruptcy Code.

26. Accordingly, based on the foregoing, there is no cause for lifting the automatic stay here, and the Motion should be denied.

## **RESERVATION OF RIGHTS**

27. Nothing included in or omitted from this Objection shall be deemed an admission by the Debtors or their estates with respect to the subject matter of the Motions and this Objection, including, without limitation, with respect to the Debtors' insurance policies and coverage thereunder, the Movants' claims, and the State Litigations, or shall waive, impair, prejudice, or otherwise affect any rights, claims, defenses, arguments, or remedies of the Debtors or their estates (or any successors thereto) with respect to such matters, including, without limitation, in any proceedings before the Court or the state courts.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court deny the Motion and grant the Debtors such other and further relief as may be just and proper.

Dated:   November 14, 2024
         Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Sophie Rogers Churchill*
Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4277)
Tamara K. Mann (No. 5643)
Sophie Rogers Churchill (No. 6905)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
tmann@morrisnichols.com
srchurchill@morrisnichols.com

-and-

DAVIS POLK & WARDWELL LLP

Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Jonah A. Peppiatt (admitted *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
stephen.piraino@davispolk.com
jonah.peppiatt@davispolk.com
ethan.stern@davispolk.com

*Counsel to the Debtors and Debtors in Possession*