## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Related to Docket Nos. 584, 1052** |

## EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER FURTHER EXTENDING THE CHALLENGE DEADLINE

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby moves (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), further extending the Challenge Deadline as to the Committee itself and Committee chair Blue Owl Real Estate Capital LLC ("Blue Owl") for an additional 45 days, through and including January 2, 2025.[2]  In support of the Motion, the Committee respectfully states as follows:

---

[1]    The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows:  Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2]    The Challenge Deadline was established under the *Final Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection to Prepetition Secured Creditors, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [Docket No. 584] (the "Final DIP Order").  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Final DIP Order.

## PRELIMINARY STATEMENT

1.      In connection with their post-petition financing, the Debtors made certain stipulations in favor of the Prepetition Secured Creditors (the "Debtors' Stipulations"), including that (i) the Prepetition Secured Creditors' have valid and properly perfected liens on substantially all the Debtors' assets and (ii) the Debtors and their estates have no valid claims, objections, challenges, or causes of action against any of the Prepetition Secured Creditors or any of their affiliates.  The Debtors also granted comprehensive releases to, among others, the Prepetition Secured Creditors and their affiliates.  The Debtors' Stipulations and releases become binding on all parties in interest if the Committee or another party does not assert a timely Challenge by the Challenge Deadline.

2.      The Committee has been diligently investigating the validity, extent, and priority of the Prepetition Secured Creditors' liens and claims as well as potential estate claims against the Prepetition Secured Creditors or their affiliates.  As discussed on the record of the November 5, 2024 hearing on Blue Owl's prior motion to extend the Challenge Deadline,[3] in connection with that investigation, the Committee served numerous document requests upon the Debtors, the lenders, and certain other parties.

3.      In addition to reviewing the Prepetition Credit Documents, the Committee also reviewed and evaluated more than 22,000 produced documents on an accelerated timeline—the last of such documents having only been produced on November 9, 2024.  As a result of its preliminary investigation, the Committee believes that the estates possess colorable claims against the Prepetition Secured Creditors, including claims to avoid certain Prepetition Obligations and Prepetition Liens as constructive fraudulent transfers.  Successful prosecution of

---

[3]     Docket No. 870.

a Challenge with respect to those claims may reduce the extent of the Prepetition Liens and amount of the Prepetition Obligations, thereby creating meaningful unencumbered value for the benefit of unsecured creditors not otherwise expected to receive a meaningful distribution in these cases.

4.      Importantly, the Committee has identified a potential constructive fraudulent transfer claim in respect of the Prepetition Term Loan Facility.  Determining the colorability of this claim, however, will require supplemental diligence as well as forensic accounting and valuation work.  The Committee therefore requires more time to further investigate and develop facts (to the extent they exist) necessary to support a complaint asserting such claim.

5.      If the Committee ultimately determines that an additional colorable claim exists, is granted standing to bring the claim, and successfully prosecutes a Challenge in respect of the claim, the treatment of unsecured creditors in these chapter 11 proceedings could be materially improved.  For that reason, and mindful of the looming Challenge Deadline, the Committee brings the Motion and requests an additional 45-day extension of the Challenge Deadline.  As shown herein, good cause exists to grant this request.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court for the District of Delaware, dated February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

7.      The bases for the relief sought in the Motion are Bankruptcy Code section 105, Bankruptcy Rule 9006, and Local Rule 9006-2.

8.    In addition, the Committee confirms its consent, pursuant to Local Rule 9013-1(f), to the entry of final orders and judgments by the Court in connection with the Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## **BACKGROUND**

**I.    The Chapter 11 Cases**

9.    On September 9, 2024, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing these chapter 11 cases (the "Chapter 11 Cases").

10.    On September 23, 2024, the U.S. Trustee filed a notice appointing the Committee.[4]  One of the Committee's statutory powers and duties under Bankruptcy Code section 1103 is to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor."  11 U.S.C. § 1103(c).

**II.    The Prepetition Loan Facilities, the DIP Facilities, and the Debtors' Stipulations**

11.    The Debtors are party to two prepetition credit facilities:

   a.   a five-year asset-based revolving credit facility (the "Prepetition ABL Facility") with PNC Bank, N.A. ("PNC"), as administrative agent (in such capacity, the "Prepetition ABL Agent"), and the lenders thereto; and

   b.   a term loan facility (the "Prepetition Term Loan Facility" and, with the Prepetition ABL Facility, the "Prepetition Loan Facilities") with 1903P Loan Agent, LLC ("1903P"), as administrative agent (in such capacity, the "Prepetition Term Loan Agent" and, with the ABL Agent, the "Prepetition Agents"), and the lenders thereto.

The Prepetition Loan Facilities are secured by liens on substantially all of the Debtors' assets.

---

[4]    Docket No. 248.

4

12.    To fund the Chapter 11 Cases, the Debtors sought and obtained (i) a superpriority senior asset-based credit facility (the "DIP ABL Facility") and (ii) a superpriority senior secured asset-based term loan credit facility (the "DIP Term Loan Facility" and, with the DIP ABL Facility, the "DIP Facilities").  The DIP ABL Facility is being provided by the lenders under the Prepetition ABL Facility, and the DIP Term Loan Facility is being provided by the lenders under the Prepetition Term Loan Facility.

13.    In connection with obtaining the DIP Facilities, as is set forth in the Final DIP Order, the Debtors, on behalf of themselves and their estates, (i) stipulated to the validity of the Prepetition Secured Creditors' claims and liens and (ii) released the Prepetition Secured Creditors and various related parties, including their affiliates, from any and all claims *of any kind or nature whatsoever*.  The Debtors' Stipulations and releases bind all other parties in interest, including the Committee, unless a party submits a Challenge on or before the Challenge Deadline.  The Final DIP Order provides that the Challenge Deadline may be extended in writing by the Prepetition Agents in their sole discretion or "by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline."[5]

**III.    The Committee's Investigation**

14.    The Committee was appointed to represent the interests of the Debtors' unsecured creditors and is charged with investigating the acts, conduct, assets, liabilities, and financial condition of the Debtors and any other matter relevant to the Chapter 11 Cases or to the

---

[5]    Final DIP Order ¶ 42.  Pursuant to its *Order Extending Challenge Period* [Docket No. 1052], the Court previously extended the Challenge Deadline for cause to November 15, 2024 at 12:00 p.m.  On November 12, 2024, the Committee requested a further extension of the Challenge Deadline from the Prepetition Agents through November 18, 2024.  The Prepetition Term Loan Agent agreed in writing to such extension on November 12, 2024.  The Prepetition ABL Agent agreed in writing to such extension on November 13, 2024.

formulation of a chapter 11 plan.  In connection with the Challenge Deadline, the Committee has diligently investigated the Prepetition Liens, Prepetition Obligations, and any potential claims or causes of action against the Prepetition Secured Creditors.

15.     During the course of its investigation, the Committee reviewed and analyzed the Prepetition Credit Documents to determine the extent and validity of the Prepetition Secured Creditors' liens.  The Committee also served a number of discovery requests on the Debtors, Prepetition Agents, and Gordon Brothers Retail Partners, LLC ("GBRP").  GBRP is an affiliate of 1903P[6] and serves as (i) the consultant currently conducting the Debtors' store closing sales[7] and (ii) the broker conducting certain *de minimis* asset sales.

16.     To date, in connection with a potential Challenge, the Debtors have produced 9,660 documents, 1903P has produced 5,054 documents, PNC has produced 1,939 documents, and GBRP has produced 5,913 documents.  The Committee has reviewed and analyzed all

---

[6]     *See* Sept. 10, 2024 Hr'g Tr. at 19:20-21 (Resnick) (confirming that "Gordon Brothers" is a lender under the term loan facility); *see also Declaration of Joseph Malfitano in Support of Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Assume the Services Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* at Schedule 2 [Docket No. 257] (disclosure by Gordon Brothers that its affiliates 1903P and 1903 Partners, LLC are the agent and a lender, respectively, under the DIP Term Loan Facility and the Prepetition Term Loan Facility).

Certain of 1903P's joint venture partners also are lenders under the DIP Term Loan Facility and the Prepetition Term Loan Facility.  *See Declaration of Eric W. Kaup in Support of Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Assume the Services Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* at Schedule 2 [Docket No. 258] (disclosure by Hilco Merchant Resources, LLC, a joint venture partner for services provided to the Debtors pursuant to that certain Master Services Agreement between Debtor Big Lots Stores, LLC and Gordon Brothers (the "Master Services Agreement"), that its affiliate ReStore Capital (BIG), LLC is a secured lender of the Debtors); *Declaration of Mark P. Naughton in Support of Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Assume the Services Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* at Schedule 2 [Docket No. 259] (disclosure by Tiger Capital Group, LLC, a joint venture partner for services provided to the Debtors pursuant to the Master Services Agreement, that its affiliate Tiger Finance, LLC is a lender under the DIP Term Loan Facility and the Prepetition Term Loan Facility).

[7]     Pursuant to its *Final Order (I) Authorizing Debtors to Assume the Consulting Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* [Docket No. 536], the Court authorized (i) assumption of the Master Services Agreement, and (ii) continuation of going out of business sales (which sales include sales of the furniture, fixtures and equipment at the Debtors' stores as well as additional goods) that Gordon Brothers has been facilitating for the Debtors for more than a year.

produced documents.  Based on this review, the Committee has uncovered viable claims that may reduce the extent of the Prepetition Liens and amount of the Prepetition Obligations, thereby creating meaningful unencumbered value for the benefit of unsecured creditors.

17.     First, the Committee believes that the estates hold viable claims to avoid certain Prepetition Obligations that were incurred for less than reasonably equivalent value.  In particular, on the eve of bankruptcy, the Debtors agreed to a $7.5 million "early termination fee" in favor of the Prepetition Term Loan Agent, which fee was capitalized and added to the principal balance of the Prepetition Term Loan Facility.  Critically, this fee was negotiated in exchange for a waiver by the Prepetition Term Loan Agent of a make-whole fee, the payment of which would have been subject to disallowance in the Chapter 11 Cases.  As such, the Prepetition Term Loan Agent's waiver of the make-whole fee did not provide the Debtors with any value.

18.     The Committee also believes that the Prepetition Agents do not have properly perfected security interests in approximately (i) $3.4 million cash held in accounts at third-party banks with respect to which no deposit account control agreements exist and (ii) $5.0 million in cash in store registers or safes, which was not in the Prepetition Agents' "possession" as of the Petition Date.  The Committee further believes that the Debtors never granted the Prepetition Secured Creditors security interests in or liens on (i) certain commercial tort claims that are not specifically identified in any of the Prepetition Credit Documents or (ii) certain owned real property with respect to which no mortgage was executed or recorded.

19.     Lastly, as previewed above, the Committee has identified an additional constructive fraudulent transfer cause of action for which additional diligence is required to determine its colorability.  Upon execution of the Prepetition Term Loan Documents, the

Debtors granted the Term Loan Agent, for the benefit of the Prepetition Term Loan Lenders, security interests in substantially all of their personal property and fixtures.  The Debtors that granted security interests under the Prepetition Term Loan Documents include Big Lots Stores, LLC ("BLS") and Big Lots Stores – PNS, LLC ("PNS"), the two Debtors that own the majority of the Debtors' stores.

20.     Based upon the Committee's review of available financial information, it appears that the stores owned by BLS may have been among the highest performing, whereas the stores owned by PNS may have been among the lowest performing.  If this information, once pressure tested, proves to be true, then it may be the case that due to the strong performance of the BLS-owned stores, BLS did not need additional financing at the time the Debtors entered into the Prepetition Term Loan Facility and instead merely provided credit support for PNS and its poorly performing stores.  In that case, because the value received by BLS under the Term Loan Facility would have been significantly less than the value it gave up by incurring the related liens and obligations for its affiliate's benefit, the Prepetition Term Loan Liens on BLS's assets would be avoidable as a constructive fraudulent transfer (the "BLS Constructive Fraudulent Transfer Claim").

21.     Due to the fact-intensive nature of the BLS Constructive Fraudulent Transfer Claim, the Committee's views regarding this claim remain preliminary.  The Committee needs time to further investigate critical details of the Debtors' prepetition business practices, including the uses of funds advanced under the Prepetition Term Loan Facility on a Debtor-by-Debtor basis.  The Committee also will need to value the collateral pledged by each Debtor in connection with securing the Prepetition Term Loan Facility.  Although performing the necessary analysis requires additional time, the Committee views this diligence as absolutely

necessary because the avoidance of Prepetition Liens on BLS's assets could profoundly improve unsecured creditor recoveries.

## REQUESTED RELIEF

22.    By the Motion, the Committee respectfully requests that the Court enter an order, substantially in the form of the Proposed Order, extending the Challenge Deadline as to the Committee and Blue Owl by 45 additional days, through and including January 2, 2025.[8]  To the extent that the Court determines to deny the requested relief, the Committee respectfully requests a modest extension of three (3) business days from the date of entry of an order denying the relief requested in the Motion to allow the Committee to convene and determine how to proceed.

## BASIS FOR REQUESTED RELIEF

23.    Bankruptcy Rule 9006(b) gives the Court discretion to extend unexpired time periods, including those established "by order of court," for "cause shown."  Fed. R. Bankr. P. 9006(b)(1).  Further, the Final DIP Order itself expressly provides that the Challenge Deadline may be extended "in writing from time to time by the Prepetition Term Loan Agent in its sole discretion (with respect to the Prepetition Term Loan Documents and the Prepetition Term Loan Obligations) and the Prepetition ABL Agent in its sole discretion (with respect to the Prepetition ABL Documents and Prepetition ABL Obligations, as applicable), or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline . . . ."[9]

24.    The Challenge Deadline is a time period created by the Final DIP Order, bringing it within the ambit of Bankruptcy Rule 9006(b).  In addition, section 105(a) of the Bankruptcy

---

[8]    This request is without prejudice to the Committee's or Blue Owl's ability to request further extensions of Challenge Deadline, if necessary or appropriate.

[9]    Final DIP Order ¶ 42.

Code allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a); *see also In re Peregrine Sys. Inc.*, 311 B.R. 679, 690 (D. Del. 2004) ("Section 105 specifically codifies what are traditionally called 'inherent powers' to give the bankruptcy courts the necessary ability to manage the cases on their dockets.").  Because the Challenge Deadline, as extended, has not yet passed, the Court may further extend it as requested herein.

25.     The Committee submits that ample cause exists to extend the Challenge Deadline. As discussed herein, the estates hold potentially viable causes of action against (i) the Prepetition Secured Creditors in respect of infirmities in the Prepetition Liens and (ii) the Prepetition Term Loan Agent for the constructive fraudulent transfer by the Debtors of the capitalized early termination fee on the eve of bankruptcy.  Certain of the Debtors' Stipulations therefore are subject to Challenge.  Given the expected size of the unsecured claims pool in the Chapter 11 Cases[10] and the composition of the purchase price under the Stalking Horse APA, it is likely that, absent a successful Challenge, unsecured creditors will receive little to no recovery in these cases.  Thus, it is imperative that *any* additional potential value that could inure to the benefit of unsecured creditors be preserved.

26.     For this reason, the Committee should be granted the time necessary to further investigate the BLS Constructive Fraudulent Transfer Claim and determine whether it (i) is

---

[10]   The Debtors' filed Schedules of Assets and Liabilities include more than $325 million of scheduled unsecured claims.  *See* Docket Nos. 685, 687, 690, 692, 694, 697, 699, 701, 703, 705, 707, 709, 711, 713, 715, 717, 719, 721, and 723.

colorable and (ii) if prosecuted, would result in a benefit to unsecured creditors.[11]  The

Committee is committed to fulfilling its fiduciary duties to unsecured creditors by continuing to

conduct a comprehensive and thorough investigation.  Extending the Challenge Deadline is

consistent with these duties, as it would allow thorough vetting of what may prove to be a

meaningful source of recovery for unsecured creditors and preserve potential claims that could

increase recoveries.

27.     The relief requested is consistent with similar extensions granted in complex

chapter 11 cases, where additional discovery or investigative steps are required.  Given the stakes

for unsecured creditors, extending the Challenge Deadline is both equitable and efficient.

## NOTICE

28.     Notice of the Motion is being provided to the following parties or their counsel:

(i) the Debtors; (ii) the U.S. Trustee; (iii) the Prepetition Secured Creditors; and (iv) any parties

requesting service pursuant to Bankruptcy Rule 2002.  The Committee submits that, in light of

the nature of the relief requested, no other or further notice is required or necessary.

## RESERVATION OF RIGHTS

29.     The Committee expressly reserves the right to request further extensions of the

Challenge Deadline.

*[Signature Page Follows]*

---

[11]    It is also for this reason that, in furtherance of the preservation of value that could inure to the benefit of unsecured creditors, the Committee further suggests that an equitable remedy in respect of sale proceeds is appropriate.  To that end, the Committee respectfully refers the Court to the requests made in (i) the *Limited Objection of the Official Committee of Unsecured Creditors to Proposed Sale of Substantially All of the Debtors' Assets* [Docket No. 981] that the Court retain the discretion to fashion an equitable remedy with respect to the sale proceeds in the event of a successful Challenge and (ii) the *Supplemental Limited Objection of the Official Committee of Unsecured Creditors to Proposed Sale of Substantially All of the Debtors' Assets*, filed substantially contemporaneously with this Motion, that such equitable remedy take the shape of an escrow of any sale proceeds pending resolution of any Challenge.

## <u>CONCLUSION</u>

WHEREFORE, the Committee respectfully requests that the Court enter the Proposed

Order granting the relief requested herein and such other relief as the Court deems appropriate

under the circumstances.  Should the Court decline to enter the Proposed Order as requested, the

Committee requests a short extension of the Challenge Deadline to the date that is three (3)

business days after entry of an order denying the relief requested in this Motion in order to allow

the Committee sufficient time to convene and decide how to proceed.


Dated: November 18, 2024
      Wilmington, Delaware

COLE SCHOTZ P.C.

/s/ Stacy L. Newman
Justin R. Alberto (No. 5126)
Stacy L. Newman (No. 5044)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Tel:     (302) 652-3131
Fax:     (302) 652-3117
Email: jalberto@coleschotz.com
      snewman@coleschotz.com

- and -

MCDERMOTT WILL & EMERY LLP

Darren Azman (admitted *pro hac vice*)
Kristin K. Going (admitted *pro hac vice*)
Stacy Lutkus (admitted *pro hac vice*)
Natalie Rowles (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, NY, 10017
Tel:     (212) 547-5400
Fax:     (212) 547-5444
Email: dazman@mwe.com
      kgoing@mwe.com
      salutkus@mwe.com
      nrowles@mwe.com

*Counsel to the Official Committee of*
*Unsecured Creditors*