## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 18 & 1229** |

### ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT, (II) AUTHORIZING AND APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS, ENCUMBRANCES, AND OTHER ASSUMED LIABILITIES AND PERMITTED ENCUMBRANCES, (III) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Big Lots, Inc. and certain of its affiliates, each of

which is a debtor and debtor in possession (collectively, the "Debtors"), pursuant to sections

105(a), 363, 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

(the "Bankruptcy Code"), rules 2002, 6004, 6006, 9007, and 9008 of the Federal Rules of

---

[1]  The Debtors in these cases, together with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the APA, or to the extent not defined therein, the Bidding Procedures Order. For the avoidance of doubt, the "Motion" as referred to herein refers to the *Motion of Debtors for Entry of an Order (I) Approving Bidding Procedures for Sale of Debtors' Assets, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (IV) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (V) Approving Assumption and Assignment Procedures, and (VI) Granting Related Relief* [D.I. 18], which, in addition to requesting the relief granted in the Bidding Procedures Order, is deemed to have served as the motion requesting the relief granted in this Sale Order pursuant to Local Rule 6004-1(c). Accordingly, the Debtors shall not be required to file a separate motion seeking approval or authorization, as applicable, of the relief granted in this Sale Order, and the notice of the Motion is hereby deemed good and sufficient notice, was appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale, the Sale Order, and the Sale Hearing is, or shall be, required.

Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1 and 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of an order (this "Sale Order") (a) authorizing and approving entry into that certain Asset Purchase Agreement, dated as of September 8, 2024 (as amended or supplemented, and including all exhibits, schedules, and annexes attached thereto, the "APA"), attached hereto as **Exhibit 1**, by and among Big Lots, Inc. (the "Seller"), each of the subsidiaries of the Seller listed in Schedule 1 of the APA (together with the Seller, the "Selling Entities"), and Gateway BL Acquisition, LLC, a Delaware limited liability company (the "Buyer"); (b) except as otherwise provided in this Sale Order, approving the sale of the Assets free and clear of any property or asset, any legal or equitable, specific or floating, lien (statutory or otherwise and including any "Lien" as defined in the Bankruptcy Code), pledge, mortgage, deed of trust, security interest, charge, debenture, lease, license, occupancy agreement, option, easement, Claim, restriction, preference, priority, right of first refusal, right of first offer, servitude, right of way, right of set off, preemptive right, conditional sale or other title retention agreement or installment Contract or finance lease with substantially the same effect, or other encumbrances affecting any right or title to the Assets or any part thereof or interest therein, in each case of any type, nature or kind whatsoever, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, recorded or unrecorded, contingent or noncontingent, material or nonmaterial, known or unknown (together, the "Encumbrances") pursuant to the APA (the "Sale"); (c) approving the assumption and assignment of certain executory contracts and unexpired leases identified in the APA (collectively, and subject in each case to the amendments and other agreements that have been fully executed by the applicable counterparties and described in the APA and agreed with the applicable counterparties (the "Agreed Modifications"), the "Assigned Contracts") pursuant to section 365 of

the Bankruptcy Code in connection with the Sale and assignment of the Assigned Contracts to the Buyer; (d) authorizing the Debtors to consummate the Sale and all other transactions related to the APA; and (e) granting related relief, all as more fully set forth in the Motion; and upon the *Declaration of Adam Rifkin in Support of Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures, (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [D.I. 197] (the "Rifkin Declaration"); and this court (the "Court") having entered on October 25, 2024, that certain *Order (I) Approving Bidding Procedures for Sale of Debtors' Assets, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (IV) Approving Form and Manner of Sale, Auction, and Sale Hearing, and (V) Approving Assumption and Assignment Procedures* [D.I. 612] (the "Bidding Procedures Order"); and the Bidding Procedures Order having (i) authorized the Debtors to (A) conduct, and approved the terms and conditions of, an auction, if applicable, as required and as set forth in the Bidding Procedures (as defined in the Bidding Procedures Order) (the "Auction"); (B) consider the highest or otherwise best offer for the Assets; and (C) establish a date for the Auction; and (ii) approved, among other things, (A) the Bidding Procedures to be used in connection with the Auction, if applicable; (B) the form and manner of notice of the Auction and Bidding Procedures; (C) the form of Notice of Successful Bidder (as defined herein); and (D) the form of notice and the procedures relating to the assumption and assignment of the Assigned Contracts (as defined in

the APA); and the Debtors having determined, in a sound exercise of their business judgment, that the Buyer made the highest or otherwise best offer for the Assets pursuant to the APA; and the Debtors having filed and served on parties in interest that certain *Notice of Successful Bidder for the Sale of the Debtors' Assets* [D.I. 661] (the "<u>Notice of Successful Bidder</u>") on October 30, 2024; and the Court having reviewed the Notice of Successful Bidder; and the Court having conducted a hearing on November 21–22, 2024 (the "<u>Sale Hearing</u>"), at which time all parties in interest were offered an opportunity to be heard with respect to the Sale, to consider the approval of the Sale pursuant to the terms and conditions set forth in the APA, and the Court having considered (1) the Motion and all objections related thereto, (2) the Sale, (3) the arguments of counsel made, and evidence adduced related thereto, and (4) the full record in these chapter 11 cases, including the record related to the hearing to consider the Bidding Procedures Order (the "<u>Bidding Procedures Hearing</u>") and the Sale Hearing held before the Court; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the APA, the Sale, the transactions contemplated under the APA or in connection therewith, and the proposed assumption and assignment of the Assigned Contracts; and due and sufficient notice of the Sale Hearing and the relief sought in the Motion having been given under the particular circumstances of these chapter 11 cases and in accordance with the Bidding Procedures Order; and no other or further notice needing to be provided; and the relief requested provided for herein being in the best interests of the Debtors, their estates, their creditors, and other parties in interest in these chapter 11 cases; it is hereby **FOUND, CONCLUDED, AND DETERMINED THAT**:[3]

---

[3] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.

A.          Findings of Fact and Conclusions of Law.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these chapter 11 cases pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.          Jurisdiction.  The Court has jurisdiction over the Motion and over the Debtors' property, including the Assets to be sold, transferred, and conveyed pursuant to the APA, pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these chapter 11 cases and the Motion in this district and Court is proper under 28 U.S.C. §§ 1408 and 1409.

C.          Final Order.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to the extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable to these chapter 11 cases through Bankruptcy Rule 7054, the Court finds that there is no just reason for delay in the implementation of this Sale Order and that the terms and conditions of this Sale Order shall be immediately effective and enforceable upon its entry.  The Court hereby directs entry of judgment as set forth herein.

D.          Power and Authority.  The Debtors (a) have full corporate power and authority to execute the APA and all other documents contemplated related thereto, (b) the Debtors' sale of the Assets has been duly and validly authorized by all necessary corporate action; (c) have all of the corporate power and authority necessary to consummate the transactions contemplated under the APA; and (d) have taken all corporate action necessary to authorize and approve the APA and

the consummation of the transactions contemplated thereunder.  No consents or approvals, other than those expressly provided for in the APA, are required for the Debtors to consummate such transactions, subject to the waiver of such consents or approvals to the extent provided for in the APA and as may be permitted under applicable law.

E.        Binding Agreement.  The APA is a valid and binding contract between the Selling Entities and the Buyer and shall be enforceable pursuant to its terms.  The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.  Neither the Debtors nor the Buyer is entering into the transactions contemplated by the APA fraudulently for the purpose of statutory and common law fraudulent conveyance, fraudulent transfer claims, or otherwise.  This Sale Order, the APA, the Sale, and the consummation thereof, shall (i) be, to the extent provided in the APA, specifically enforceable against and binding upon (without posting any bond) the Buyer and all successors and assigns of the Buyer and each of its respective affiliates, successors, and assigns, the Debtors and their estates, and any chapter 7 or chapter 11 trustee or receiver or trustee in bankruptcy appointed with respect to any of the Debtors, and, solely with respect to this Sale Order, their creditors (whether known or unknown) and holders of equity interests in any Debtor, any holders of Claims against or on all or any portion of the applicable Assets, all counterparties to the applicable Assigned Contracts, and any affected third-parties, (collectively, the "Bound Parties") and (ii) not be subject to rejection or avoidance. Notwithstanding any subsequent appointment of any trustee, examiner, or receiver under the Bankruptcy Code or any other law, all such provisions and terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary under the Bankruptcy Code or any other law with respect to any of the Bound Parties.  The terms and provisions of the APA, shall survive

the entry of any order that may be entered confirming or consummating any chapter 11 plan of the Debtors, dismissing these chapter 11 cases, or converting these chapter 11 cases to cases under chapter 7.  The rights and interests granted pursuant to this Sale Order and the APA shall continue in these or any superseding cases and shall be binding upon the Bound Parties and their respective successors and permitted assigns including, without limitation, any trustee, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized and directed to perform under the APA and this Sale Order without the need for further order of the Court.

F.      <u>Property of the Estate</u>.  The Debtors are the sole and lawful owner(s) of, and have clear and marketable title to, the Assets.  The Debtors' right, title, and interest in and to the Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  Subject to sections 363(f) and 365(a) of the Bankruptcy Code, and except as otherwise set forth in this Sale Order, the transfer of each of the Assets to the Buyer or its designee (collectively, the "**Designated Buyer**"), in accordance with the APA shall be, as of the Closing Date, a legal, valid, and effective transfer of the Assets, which transfer vests or shall vest the Designated Buyer with all right, title, and interest of the Debtors to the Assets free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances or as otherwise set forth in this Sale Order). Notwithstanding anything to the contrary in this Sale Order or the APA, the transfer of any nonresidential real property lease  shall be subject to any easements, reciprocal easement agreements, operating or redevelopment agreements, licenses, permits, dedications, covenants, or other rights applicable to

such real estate that run with the land or limit or condition the permitted use of the property (the "**Lease Encumbrances**") and shall not be free and clear of any such Lease Encumbrances.

G.        Statutory Bases for Relief.  The statutory bases for the relief requested in the Motion and provided for herein are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008, and Local Rules 2002-1 and 6004-1.

H.        Petition Date.  On September 9, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued to maintain their businesses and manage their property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

I.        The Auction.  The Auction was conducted on October 30, 2024, pursuant to the Bidding Procedures.  The transaction as described on the record at the Auction was properly identified as the Successful Bid for the Assets in the Notice of Successful Bidder filed and served on October 30, 2024 [D.I. 661] pursuant to the Bidding Procedures.

J.        Notice.  As evidenced by the affidavits of service and publication previously filed with the Court at D.I. 275, 361, 574, 640, 648, 748, 951, and 1013, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the hearing approving the Bidding Procedures Order, the Sale Hearing, the Bidding Procedures Hearing, the Auction, the Sale, and the assumption and assignment of the Assigned Contracts to be assumed and assigned to the Buyer at Closing pursuant to this Sale Order and the APA has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9007, 9008, and 9014, and in compliance with the Bidding Procedures Order, to each party entitled to receive such notice.  With respect to entities whose identities are not reasonably ascertained by the Debtors, publication of the Notice of Successful

8

Bidder once in the *Wall Street Journal* on November 5, 2024, as evidenced by the affidavit of publication the Debtors filed at D.I. 1013 in these chapter 11 cases, was, and is deemed, sufficient, and reasonably calculated under the circumstances to reach such entities.  The notices described herein constitute good and sufficient notice, and were appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale, this Sale Order, and the Sale Hearing is, or shall be, required.

K.       The notices provided all interested parties with timely and proper notice of the Motion, this Sale Order, the Sale, the Sale Hearing, the Bidding Procedures Order, the Bidding Procedures, the Bidding Procedures Hearing, the Auction, related deadlines and requirements, the assumption, assignment, and sale of the Assigned Contracts, and the other relief granted herein and related to the transactions contemplated under the APA.

L.       <u>Disclosures</u>.  The disclosures the Debtors made in the Motion, the Notice of Successful Bidder, and related documents filed with the Court concerning the APA, the Auction, the Sale, and the Sale Hearing were good, complete, and adequate.

M.       <u>Best Interests of the Estates, Creditors, and Parties in Interest</u>.  Given all the facts and circumstances of these chapter 11 cases and the adequacy and fair value of the consideration the Buyer shall provide to the Selling Entities under the APA, the Sale constitutes a reasonable and sound exercise of the Debtors' business judgment, is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, and should be approved.

N.       <u>Sound Business Purpose</u>.   The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code and pursuant to the APA because, among other reasons, (a) the APA constitutes the highest or

otherwise best offer for the Assets, (b) the APA and the closing of the Sale thereunder present the best available opportunity to realize the value of the Assets, and (c) any other transaction would not have yielded as favorable an economic result given the circumstances.

O.    <u>Sale and Marketing Process</u>.  The Bidding Procedures set forth in the Bidding Procedures Order are non-collusive, proposed and executed in good faith as a result of arms'-length negotiations, designed to maximize the value of the Assets, and substantively and procedurally fair to all parties.  The Debtors conducted the sale and marketing process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order. The sale and marketing process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase, and to competitively bid on, the Assets relative to all other interested parties, including the Buyer and all other bidders that participated in the Auction.  All potential purchasers had a full and fair opportunity to participate in the sale and marketing process and to make higher or better offers for the Assets relative to the Successful Bid.

P.    <u>Successful Bidder</u>.  The Debtors determined, in a sound exercise of their business judgment and in accordance with the Bidding Procedures Order, that the Buyer's bid represented the highest or otherwise best offer for the Assets.  As a result, the Debtors properly and adequately declared the Buyer as the Successful Bidder for the Assets in the Notice of Successful Bidder.

Q.    <u>Good Faith and No Collusion</u>.  The APA was negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and as the result of arm's-length bargaining positions and is substantively and procedurally fair to all parties.  Neither the Buyer nor any of the Buyer's affiliates, officers, directors, members, partners, principals, or shareholders

(or equivalent) or any of their respective representatives, successors, or assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, and no common identity of incorporators, directors, managers, or controlling stockholders existed between the Debtors and the Buyer.  The Buyer has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among bidders. The Debtors and the Buyer have not engaged in any conduct that would cause or permit the APA to be avoided or damages to be assessed against the Buyer or any other party under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-bankruptcy law.  The Buyer is purchasing the Assets, in accordance with the APA, in good faith, and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to all the protections afforded by such provision and otherwise has proceeded in good faith in all respects in connection with the Debtors' chapter 11 cases.  As demonstrated by (a) the Rifkin Declaration, (b) any testimony and other evidence proffered or adduced at the Sale Hearing, and (c) the representations of counsel made on the record at the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bidding Procedures Order and, among other things:  (i) the Debtors and Buyer complied with the provisions in the Bidding Procedures Order; (ii) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iii) the Buyer recognized that the Debtors were free to deal with any other party interested in purchasing and ultimately acquiring the Assets; (iv) the Buyer in no way induced or caused the Debtors' chapter 11 filing; (v) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been fully and properly disclosed; (vi) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (vii) the negotiation and execution of the APA,

including the Sale contemplated thereby, were at arms'-length and in good faith.  There was and

is no evidence of insider influence or improper conduct in any manner by the Buyer or any of its

affiliates in connection with the negotiation, and ultimate execution, of the APA with the Debtors.

R.      Highest and Best Bid and Fair Consideration.  The consideration the Buyer shall

provide to the Selling Entities pursuant to the APA (a) is fair and reasonable, (b) is the highest or

otherwise best offer for the Assets, (c) constitutes reasonably equivalent value and fair

consideration under the Bankruptcy Code and under the laws of the United States, any state,

territory, possession, or the District of Columbia (including the Uniform Voidable Transactions

Act (formally the Uniform Fraudulent Transfer Act), Uniform Fraudulent Conveyance Act, section

548 of the Bankruptcy Code, and other similar laws), and (d) will provide a greater recovery to the

Debtors' estates than would be provided by any other available alternative.  Taking into

consideration all relevant factors and circumstances, no other entity has offered to purchase the

Assets for greater economic value to the Debtors or their estates.  Therefore, following a full, fair,

and robust sale and marketing process and the Auction, the Debtors' determination that the APA

constitutes the highest and otherwise best offer for the Assets and the Debtors' selection of the

Buyer as the Successful Bidder each constitute a valid and sound exercise of the Debtors' business

judgment and the Debtors' decision to enter into the APA and consummate the transactions

contemplated thereunder constitutes a proper exercise of the fiduciary duties of the Debtors and

their officers and directors.

S.      Purchaser Not a Successor.  The transactions contemplated under the APA do

not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtors and/or the

Debtors' estates; there is not substantial continuity between the Buyer and the Debtors; there is no

continuity of enterprise between the Debtors and the Buyer; the Buyer is not a mere continuation

of the Debtors or their estates; and the Buyer is not a successor or assignee of the Debtors or their estates for any purpose including, but not limited to, under any federal, state, or local statute or common law, or revenue, pension, ERISA, COBRA, tax, labor, employment, environmental (including, without limitation, the Comprehensive Environmental Response Compensation and Liability Act, as amended), escheat, or unclaimed property laws, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine or common law, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation, or doctrine.  The Buyer and its affiliates shall have no liability or obligation under the Workers Adjustment and Retraining Act (the "WARN Act"), 929 U.S.C. §§ 210 *et seq.* or the Comprehensive Environmental Response Compensation and Liability Act, as amended or analogous foreign, state, or local laws and shall not be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disability Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the Employee Retirement Income Security Act, the Multiemployer Pension Protection Act, the Pension Protection Act, and/or the Fair Labor Standards Act.  Except for the Assumed Liabilities or Permitted Encumbrances or as otherwise set forth in the APA or this Sale Order, the (a) transfer of the Assets to Buyer and (b) assumption and assignment to the Buyer of the Assigned Contracts do not and shall not subject the Buyer to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under the laws of the

United States, any state, territory, or possession thereof, or the District of Columbia, either directly, or based on, in whole or in part, directly or indirectly, any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability, in each case regardless of whether such law or theory purports to apply any liability directly to the Buyer rather than in a successor or transferee capacity.

T.      No *Sub Rosa* Plan.  The Sale neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates the terms of a plan of reorganization of the Debtors. The Sale does not constitute a *sub rosa* or *de facto* plan of reorganization or liquidation.

U.      Valid Transfer.  The transfer of the Assets to the Buyer shall be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or shall vest the Buyer with all right, title, and interest to the Assets free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances.

V.      Free and Clear Sale.  The Debtors may sell the Assets free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances (as may be modified by this Sale Order), as contemplated under the APA, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Holders of Encumbrances and non-Debtor parties to Assigned Contracts that affirmatively consented to the Sale and the entry of this Sale Order (on the record or otherwise), or did not object, or who withdrew their objections to the Motion or the Sale, are deemed, subject to the terms of this Sale Order, to have consented to the Sale pursuant to sections 363(f)(2) and 365(c)(1) of the Bankruptcy Code and shall be forever barred and estopped from pursuing or asserting any right, title, claim, or interest against the Buyer or any of its respective assets, property, affiliates, successors, assigns, or the Assets.   All holders of Encumbrances are adequately protected by having their

14

Encumbrances, if any, attach to the net cash proceeds the Debtors shall receive in connection with the Sale that are ultimately attributable to the property against or in which such Encumbrances are asserted, subject to the terms of such Encumbrances with the same validity, force, and effect, and in the same order of priority, which such Encumbrances now have against the Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

W.        If the Sale were not free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances (as may be modified by this Sale Order), if the Buyer would, or in the future could, be liable for any Encumbrances other than Assumed Liabilities and Permitted Encumbrances, or if the Buyer could be liable for any liabilities related to the Debtors' business under any law or statute that purports to apply to the Buyer in the first instance rather than as successor or transferee, the Buyer would not have entered into the APA and would not consummate the Sale, thus adversely affecting the Debtors, their estates, their creditors, and all other parties in interest.  A sale of the Assets other than one free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances would yield substantially less value for the Debtors' estates, with less certainty, than the Sale.  Therefore, the Sale contemplated under the APA is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

X.        <u>Assigned Contracts</u>.  The Debtors have demonstrated that it is an exercise of their sound business judgment for the Debtors to assume and assign the Assigned Contracts to the Buyer pursuant to the terms of this Sale Order and the APA, in each case in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.  The

Assigned Contracts being assigned to the Designated Buyer under the APA are an integral part of the APA and the Sale, and accordingly such assumptions and assignments are reasonable, fair under applicable law or rules, and enhance the value of the Debtors' estates.

Y. The Debtors and the Buyer, as applicable, have, or will have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), 365(b)(1)(B), and 365(f) of the Bankruptcy Code, in connection with the sale and assumption and assignment of the Assigned Contracts to the extent provided under this Sale Order and the APA and have:  (a) cured or will cure any default existing prior to the Closing Date under any of the Assigned Contracts, within the meaning of section 365(b)(l)(A) of the Bankruptcy Code; (b) provided or will provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code; and (c) have provided or will provide adequate assurance of future performance with respect to the Assigned Contracts, within the meaning of sections 365(b)(1), 365(b)(3) (to the extent applicable), and 365(f)(2) of the Bankruptcy Code.  The Assigned Contracts are assignable notwithstanding any provisions contained therein to the contrary.

Z. Consumer Privacy Provisions.  The sale of personally identifiable information contemplated in the APA, if any, is consistent with the Selling Entities' privacy policies and satisfies the requirements of section 363(b)(1)(A) of the Bankruptcy Code.

AA. Single, Integrated Transaction.  The APA and Sale must be approved and the Closing must occur promptly to preserve the value of the Assets and the Debtors' estates.  The provisions of this Sale Order and the APA and the transactions contemplated under this Sale Order

and the APA and the Sale to the Buyer are inextricably linked and technically and collectively constitute a single, integrated transaction.

BB.     <u>Consummation is Legal, Valid and Authorized</u>.  The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all the applicable requirements of such sections have been complied with in respect of the Sale.

CC.     <u>Waiver of Stay</u>.  Time is of the essence in effectuating the APA and proceeding with the transactions contemplated therein without interruption.  Accordingly, cause exists to waive the stay to the extent necessary, as contemplated by Bankruptcy Rules 4001(a), 6004(h), and 6006(d) to permit the immediate effectiveness of this Sale Order.

DD.     <u>Legal and Factual Bases</u>.  The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

**<u>NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:</u>**

1.      The relief requested in the Motion is granted as set forth herein.

2.      Any and all objections and responses to the Motion that have not been withdrawn, waived, settled, adjourned (as set forth on the Agenda filed prior to the Sale Hearing) or resolved, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice. Notwithstanding anything to the contrary herein, the Debtors will identify the applicable assignee entity for all real property leases in (i) the filed schedule of Assigned Contracts in advance of the Closing, or (ii) the Designated Lease Notice. With respect to cure disputes, the Debtors will address the cure objections at a later hearing date, to the extent not resolved by ordinary-course reconciliation or otherwise consensually resolved. The Debtors will also address all unresolved assumption and adequate assurance objections at a later, separate hearing date. Accordingly,

notwithstanding anything to the contrary in the APA or this Sale Order, a landlord's timely filed objection challenging assumption that has not been consensually resolved or withdrawn as of the date of entry of this Sale Order, including any adequate assurance-related issues (including evidence), is expressly reserved until a hearing on December 19, 2024, or such later proceeding is scheduled on lease assumptions. No landlord needs to object to or challenge the assumption or assumption and assignment of their leases as part of the Sale, including any challenge to the Debtors' adequate assurance evidence and cure amounts at the Sale Hearing, to preserve their rights for that later hearing to the extent that such landlord has already timely objected and such objection remains unresolved as of the date of this Sale Order. While the Debtors may rely on similar evidence in connection with lease assumption issues, the Debtors will not argue issue preclusion as it relates to adequate assurance or cure evidence or findings that may be relevant to lease assumption issues.

3.      Notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, and the Sale was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008, the Local Rules, and applicable law.

4.      The Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, are incorporated herein by reference. No appeal, motion to reconsider, or similar pleading has been filed with respect to the Bidding Procedures Order, and the Bidding Procedures Order is a final order of the Court, has not been vacated, withdrawn, rescinded, or amended and remains in full force and effect.

**Approval of the Sale of the Assets**

5.      The APA, including all other ancillary documents, agreements, instruments, notices, and papers related thereto or contemplated thereunder, and all the terms and conditions

thereof, and the Sale and related transactions contemplated thereunder, are hereby approved in all respects unless otherwise set forth in this Sale Order.

6.        Pursuant to sections 363 and 365 of the Bankruptcy Code, the Selling Entities' entry into the APA, and any other ancillary documents required in connection with Sale, is hereby authorized and approved as a valid exercise of their business judgment.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to continue performance under and make all payments required by the APA (on the terms and conditions set forth herein) and all other ancillary documents as and when due thereunder without further order of the Court.  Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, acting by and through their agents, representatives, directors, and officers, are authorized and empowered to take any and all actions necessary or appropriate to:  (a) consummate and close the Sale pursuant to and in accordance with the terms and conditions of this Sale Order and the APA; (b) transfer and assign all right, title, and interest to all property, licenses, and rights to be conveyed in accordance with the terms and conditions of this Sale Order and the APA; and (c) execute and deliver, perform under, consummate, and implement this Sale Order and the APA and all additional instruments and documents that may be reasonably necessary or desirable to implement this Sale Order, the APA, and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated under this Sale Order, the APA, and any other ancillary documents.  The Debtors are further authorized to pay, without further order of the Court, whether before, at or after the Closing, any amounts that become payable by the Debtors pursuant to the APA or ancillary documents (on the terms and conditions set forth herein), together with other fees and expenses approved by the Court. Such amounts shall:  (a) constitute allowed administrative expenses of the Debtors' estates under sections 503(b)(1) and

507(a)(2) of the Bankruptcy Code (and in the case of the payment of the Bid Protections to the Stalking Horse Bidder, if applicable, shall constitute superpriority administrative expenses of the Debtors' estates with priority over any and all administrative expenses of any kind, including those specified under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code (*provided* that the priority of such superpriority administrative claims shall be junior to the Carve Out and the Wind-Down Budget, and shall in no circumstance be *pari passu* with or senior to the claims granted to the DIP Credit Parties or the Prepetition Secured Creditors);[4] and any requirement that the Stalking Horse Bidder file a proof of claim for, or otherwise request allowance of, such administrative expense claim(s) is hereby waived; and the Debtors, in accordance with the terms of the Bidding Procedures Order, are authorized and directed to make payment to the Stalking Horse Bidder on account of such administrative expense claim(s) without need for further order of the Court); (b) be treated with such priority if the chapter 11 cases convert to cases under chapter 7 of the Bankruptcy Code; and (c) not be discharged, modified, or otherwise affected by any reorganization or liquidation plan for any of the Debtors, except by written agreement with the Buyer (such agreement to be provided in the Buyer's sole discretion).  Neither the Buyer nor the Selling Entities shall have any obligation to proceed with the Closing under the APA until all conditions precedent to their respective obligations to do so have been met, satisfied, or waived in accordance with the terms of the APA.

---

[4]    Capitalized terms used in this paragraph 6, or paragraphs 20, 64 or 77,  that are not otherwise defined herein shall have the meanings ascribed to such terms in the *Interim Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364(c-d), 503, 506, 507, and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Post-Petition Financing and (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Providing Adequate Protection to Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "Interim DIP Order" and, upon entry of a final order, the "Final DIP Order" and, together with the Interim DIP Order, the "DIP Orders").

7.      The Debtors are authorized to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units (as defined in section 101(27) of the Bankruptcy Code), any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the APA, any related agreements and this Sale Order, including amended and restated certificates or articles of incorporation and bylaws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

8.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all their creditors, all holders of equity interests in the Debtors, all holders of any Encumbrances against the Debtors, any holders of Encumbrances against or on all or any portion of the Assets, all counterparties to any executory contract or unexpired lease of the Debtors, the Buyer and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in these chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' bankruptcy cases. The terms and provisions of the APA and this Sale Order shall inure to the benefit of the Debtors, their estates, their creditors, the Buyer and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, and any other affected third parties, including all persons asserting any Encumbrances in the Assets to be sold to the Buyer pursuant to the APA, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to

which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding.  This Sale Order shall survive any dismissal or conversion of any of these chapter 11 cases or any dismissal of any subsequent chapter 7 cases.  Nothing contained in any chapter 11 plan of reorganization or liquidation confirmed in any of these chapter 11 cases, any order confirming any such chapter 11 plan of reorganization or liquidation or any order approving the wind-down or dismissal of any of these chapter 11 cases or any subsequent chapter 7 cases (including any discharge of Claims thereunder) or otherwise shall alter, conflict with, or derogate from the provisions of this Sale Order or the APA, and to the extent of any conflict or derogation between this Sale Order or the APA and such future plan or order, the terms of this Sale Order and the APA shall control. To the extent of any conflict between the terms of this Sale Order and the APA, except as otherwise set forth in this Sale Order, the terms of this Sale Order shall control.

## Sale and Transfer of the Assets

9.      Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Assets to the Designated Buyer in accordance with the APA, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Assets and shall vest the Designated Buyer with title in and to the Assets and, other than the Assumed Liabilities or Permitted Encumbrances or as otherwise set forth in this Sale Order, the Designated Buyer shall take title to and possession of the Assets free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) and other interests of any kind or nature whatsoever, including, but not limited to, "bulk sale" rules (or similar laws) and theories of successor or successor-in-interest liability regardless of whether such theory, rule, or law would purport to provide for the Designated Buyer's direct liability rather than merely as a successor of the Selling Entities and claims in respect of the Excluded Liabilities, with all such Encumbrances and other interests to attach to the net cash proceeds the Debtors receive in connection with the

Sale that are ultimately attributable to the property against or in which such Encumbrances are asserted, subject to the terms of such Encumbrances with the same validity, force, and effect, and in the same order of priority, which such Encumbrances now have against the Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto. Those holders of such Encumbrances, counterparties to Assigned Contracts, and other parties in interest that did not object (or that ultimately withdrew their objections, if any) to the Sale are deemed to have consented to such Sale being free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances or as otherwise set forth in this Sale Order) pursuant to sections 363(f)(2) and 365(c)(1) of the Bankruptcy Code, or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Encumbrance, claim, right, interests, or otherwise that constitute interests in the Assets, if any, attach solely to the proceeds of the Sale ultimately attributable to the property in which they have an interest, in each case with the same validity, force and effect that such holders had prior to the entry of this Sale Order, and subject to any claims and defenses of the Debtors. Neither the process by which any of the Assets were sold, nor the results of such Sale in the APA (as opposed to selling the Assets to any other party), create claims of any kind against either the Designated Buyer or the Debtors, and no claims arising out of the sale process or the Sale shall be brought against the Designated Buyer or the Debtors.

10.     Pursuant to the APA, the sale of the Avoidance Actions described in Section 2.01(b)(xviii) of the APA (excluding the right to assert setoff rights that may arise from Avoidance Actions in relation to any Liability that is not an Assumed Liability, which right shall be retained by the Debtors), and all other claims, causes of action, lawsuits, judgments, privileges, counterclaims, defenses, rights of recovery, rights of setoff, rights of subrogation, and all other

rights of any kind in each case under any other provision of the Bankruptcy Code or Applicable Laws, solely relating to vendors and service providers used in the Business after the Closing (the "Purchased Avoidance Actions") is hereby approved.  To the extent any Purchased Avoidance Action is not assignable to the Buyer or any of its affiliates, the Debtors, and any chapter 11 or chapter 7 trustee (or any other designee) of any of the Debtors and their estates, shall be prohibited from bringing any such Purchased Avoidance Actions.

11.    Unless otherwise expressly included in the definition of "Assumed Liabilities" or "Permitted Encumbrances" in the APA or as otherwise set forth in this Sale Order, the Designated Buyer shall not be responsible for any Encumbrances, including, for the avoidance of doubt, any Claims (as defined in section 101(5) of the Bankruptcy Code).

12.    Notwithstanding anything to the contrary in this Sale Order or the APA, with respect to each Assigned Contract, upon assumption and assignment of such Assigned Contract to the Designated Buyer, the Designated Buyer shall be responsible for all obligations under such Assigned Contract, *cum onere* after giving effect to the Agreed Modifications, if any, including, without limitation, liabilities for any default under such Assigned Contract, in each case arising or occurring after such assumption, assignment and sale, and for payment or performance of any and all obligations under such Assigned Contract arising or occurring after such assumption, assignment and sale when due in accordance with the terms of such Assigned Contract (irrespective of whether such obligations accrued before, on, or after assumption and assignment of the Assigned Contract), including with respect to (a) claims for indemnification, and (b) year-end adjustment and reconciliation amounts that become due or accrue after the entry of this Sale Order, including for royalties, rents, utilities, taxes, insurance, fees, common area or other maintenance charges, promotional funds, and percentage rent, in each case subject to the terms

24

and conditions of the Assigned Contract, and subject to any defenses provided by such Assigned Contract and applicable non-bankruptcy law and unless otherwise agreed with the counterparty to the Assigned Contract. To the extent the Buyer relies on the Debtors' existing insurance coverage to satisfy any such assumed indemnification obligations under any Assigned Contracts, any deductibles or self-insured retention amount shall be the responsibility of the Designated Buyer, except to the extent the applicable Selling Entity has already satisfied any such insurance deductibles or self-insured retention amount.

13.    On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Assets or a bill of sale transferring the Debtors' good and marketable title in such Assets to the Designated Buyer pursuant to the terms set forth in this Sale Order and the APA.  This Sale Order is and shall be effective as a determination that, on the Closing Date, all Encumbrances or other interests of any kind or nature whatsoever existing as to the Assets prior to the Closing Date, other than the Assumed Liabilities or Permitted Encumbrances or as otherwise set forth in this Sale Order, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been affected.  This Sale Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby authorized to accept for

filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.  A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Encumbrances and other interests of record except those assumed as Assumed Liabilities or Permitted Encumbrances.

14.    Subject to the terms and conditions of this Sale Order, the transfer of the Assets to the Designated Buyer pursuant to the APA and the consummation of the Sale and any related actions contemplated thereby do not require any consents other than as specifically provided for in this Sale Order and the APA, constitute a legal, valid, and effective transfer of the Assets, and shall vest the Designated Buyer with right, title, and interest in and to the Assets as set forth in this Sale Order and the APA, as applicable, free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances.

15.    Upon the Closing Date, Buyer is acquiring all claims and causes of action of the Selling Entities against any current or former employee, director or officer of any Selling Entity that is hired or retained by Buyer or its affiliates on or within 90 days of the Closing Date. Notwithstanding anything to the contrary in this Sale Order or the APA, all claims and causes of action of the Selling Entities against any current or former employee, director or officer of any Selling Entity that is not hired or otherwise retained by Buyer or its affiliates on or within 90 days of the Closing Date shall not be transferred to Buyer or its affiliates unless and until either (a) this Court on notice and a hearing has entered a further order approving such transfer or (b) a settlement is reached, and notice of which is filed on the Bankruptcy Court's docket, among the Committee, Blue Owl, Buyer and Seller pursuant to which each agree to such transfer.  All rights of the Committee, Blue Owl Real Estate Capital LLC, Buyer and Seller with respect to the transfer of such claims are reserved notwithstanding entry of this Sale Order. Buyer has provided to the

Committee a list of individuals that Buyer believes in good faith will be employed or retained by the company following the closing of the Sale, which list may be updated up until five days prior to the Closing Date. For the avoidance of doubt, upon the Closing Date, Buyer is acquiring all claims and causes of action of the Selling Entities against any individuals on such list as it exists as of five days prior to the Closing Date. Any claims or causes of action against any current or former employee, director or officer of any Selling Entity who is not on such list but who is hired or otherwise retained by Buyer or its affiliates in good faith on or within 90 days of the Closing Date shall also be acquired by Buyer, provided that Buyer shall provide notice to the Committee within 10 days after the hiring or retention of any such individual, and the Committee shall have until 10 days thereafter to file an objection with the Bankruptcy Court to the acquisition by the Buyer of any claims or causes of action against such individual, which objection shall be based solely on an argument that the Buyer employed or retained such individual in bad faith in order to take advantage of this paragraph rather than because of Buyer's good faith desire to employee or retain such individual for genuine business reasons. If any such objection is timely filed, Buyer shall not be deemed to acquire claims and causes of action against any such individual absent further order of court resolving such objection, absent resolution between the Buyer and the Committee or further order of this Court. In addition, notwithstanding anything to the contrary in this Sale Order or the APA, no claims or causes of action against the Released Parties (as defined in the Final DIP Order) shall constitute Assets (as defined in the APA), and such claims and causes of action shall not be transferred to Buyer or its affiliates but instead for the avoidance of doubt shall be released pursuant to paragraph 64 of this Sale Order.

16.     All entities that are presently, or on the Closing Date may be, in possession of some or all of the Assets to be sold, transferred, or conveyed (wherever located) to the Designated Buyer

pursuant to this Sale Order and the APA are hereby directed to surrender possession of the Assets to the Designated Buyer on the Closing Date.

17.    Upon Closing, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) against or in the Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) that the person or entity has with respect to the Assets, then (a) the Debtors may request that the applicable person or entity execute and file such termination statements, releases, instruments of satisfaction, or other documents with respect to the Assets, and, to the extent such person or entity fails to do so, may execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets, and (b) the Designated Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances against or in the Assets of any kind or nature (other than Assumed Liabilities and Permitted Encumbrances).  For the avoidance of doubt, upon Closing, the Designated Buyer is authorized to file termination statements, lien terminations, or other amendments in any required jurisdiction to remove and record, notice filings or financing statements recorded to attach, perfect, or otherwise notice any Encumbrances that are extinguished or otherwise released pursuant to this Sale Order under section 363 of the Bankruptcy Code and the related provisions of the Bankruptcy Code. Notwithstanding the foregoing, the provisions of this Sale Order shall be self-executing and neither the Debtors nor the Buyer (or its designee) shall be required to execute or file releases, termination

statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

18.    Except for the Assumed Liabilities or Permitted Encumbrances or as otherwise set forth in this Sale Order, neither the Buyer nor any of its designees shall have any liability or other obligation of the Debtors arising under or related to any of the Assets, including, but not limited to, any liability for any Encumbrances, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing Date.

19.    Except to the extent included in Assumed Liabilities or Permitted Encumbrances or as otherwise set forth in this Sale Order, or as necessary to enforce the APA, all persons and entities, including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts and unexpired leases, contract counterparties, customers, licensors, litigation claimants, employees and former employees, dealers and sale representatives, and trade or other creditors holding Encumbrances against or in the Debtors and their estates or the Assets arising under or out of, in connection with, or in any way relating to, the transfer of the Assets to the Designated Buyer, or any entities or individuals asserting any interests in the Assets, hereby are forever barred, estopped, and permanently enjoined from asserting any Encumbrances against the Buyer, the permitted successors and assigns of the Buyer, the property of the Buyer or its permitted successors and assigns, or the Assets including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against Buyer, its successors and assigns, assets, or properties; (b) enforcing,

attaching, collecting, or recovering, in any manner, any judgment, award, decree, or order against the Buyer, its successors and assigns, or their assets or properties; (c) creating, perfecting, or enforcing any Encumbrance, lien, claim, or interest against the Buyer, its successors and assigns, their assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Buyer or its successors and assigns (except in connection with Assigned Contracts consistent with paragraph 12 of this Sale Order); (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets.

20.     As of and after the Closing, any and all valid and perfected liens or interests in the Assets shall attach to any proceeds of the Sale immediately upon receipt of such proceeds by the Debtors in the order of priority, and with the same validity, force and effect which they now have against such Assets, subject to any rights, claims, and defenses of the Debtors, the Debtors' estates or any trustee for any Debtor, or any statutory committee or any party (to the extent any such rights, claims, and defenses exist), as applicable, may possess with respect thereto; *provided*, *however*, that setoff rights shall be extinguished to the extent there is no longer mutuality after the consummation of the Sale. At the Closing, the Debtors shall transfer, or cause to be transferred, proceeds generated from the sale of the Assets contemplated herein to the DIP Agents and the Prepetition Agents, as applicable, which shall be in an amount not less than necessary to fully fund the following two items and shall be applied as follows: (i) first, to fully fund the Carve Out Reserves in accordance with the DIP Orders (whereupon such funding, the DIP Credit Parties and

Prepetition Secured Creditors shall have no further obligation to fund the Carve Out Reserves); and (ii) second, for permanent application against the DIP Obligations and the Prepetition Secured Obligations in accordance with the terms and conditions of the DIP Orders and the DIP Loan Documents until the DIP Obligations and the Prepetition Secured Obligations have been Paid in Full (which for the avoidance of doubt includes amounts used to fund the Carve Out in item (i)).

21.     Neither the Buyer nor its affiliates, successors, and assigns, shall have nor incur any liability to, or be subject to, any action by any Debtor or any of its predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the APA, the Transaction Documents, and the entry into and consummation of the Sale, except as expressly provided in the APA and this Sale Order.

22.     To the greatest extent available under applicable law, the Designated Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Assets to the extent transferred in the APA, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Designated Buyer as of the Closing Date.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Assets on account of the filing or pendency of these chapter 11 cases or the consummation of the transactions contemplated by the APA, including the Sale and the assumption and assignment of the Assigned Contracts.  To the extent any license or permit necessary for the operation of the business of the Debtors is determined not to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code or otherwise transferable to the Designated Buyer, the Designated Buyer may apply for and obtain any necessary license or permit

promptly and the Debtors are hereby authorized to cooperate with the Designated Buyer in connection with any such application as the Designated Buyer deems reasonably necessary or desirable, pursuant to the provisions of the Designated Buyer.

23.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the Debtors' ability to sell and transfer the Assets to the Buyer in accordance with the terms of the APA and this Sale Order.

24.     The Buyer has given substantial and fair consideration under the APA for the benefit of the Debtors, their estates, and their creditors.  The Buyer's consideration for the Assets under the APA shall constitute valid and valuable consideration for the releases of any potential Encumbrances pursuant to this Sale Order, which releases shall be deemed to have been given in favor of the Buyer by all holders of Encumbrances or liens against or interests in, or claims against, any of the Debtors or any of the Assets, other than with respect to the Assumed Liabilities or Permitted Encumbrances or as otherwise set forth in this Sale Order.  The Buyer's consideration for the Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

**Executory Contracts and Unexpired Leases to be Assumed and Assigned**

25.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing Date, the Debtors' assumption and assignment to the Buyer, and the Buyer's assumption, on the terms set forth in this Sale Order and the APA, of the Assigned Contracts, is hereby approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied subject to the terms of this Sale Order.

26.     The Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to assume and assign to the Designated Buyer, effective upon the

Closing Date, the Assigned Contracts free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances or as otherwise set forth in this Sale Order, and execute and deliver to the Designated Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Designated Buyer.

27.     Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Designated Buyer shall be fully and irrevocably vested in all right, title, and interest in and of each Assigned Contract.  The Debtors and all counterparties to the Assigned Contracts shall cooperate with, not charge for, and take all actions reasonably requested by, the Designated Buyer to effectuate the foregoing, as further provided in the APA.  The Designated Buyer shall likewise cooperate with the Debtors and all counterparties to the Assigned Contracts to effectuate the forgoing pursuant to the APA.

28.     Notwithstanding any term of any Assigned Contract to the contrary, any extension or renewal options or other rights contained in such Assigned Contract that purport to be personal only to, or exercisable only by, the Debtors, a named entity, or an entity operating under a specific trade name, may, in each case, be freely exercised to their full extent by the applicable Designated Buyer, subject to the other applicable terms of the Assigned Contract.  Any extension or renewal options in connection with all Assigned Contracts that the Debtors validly exercised prior to the entry of this Sale Order, and all terms of the Assigned Contracts are in full force and effect and have not been previously rejected, and the Debtors' time to assume or reject the Assigned Contracts has not otherwise expired.

29.     The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Designated Buyer in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in

sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer, or requires any counterparty to consent to assignment.

30.    Solely in accordance with any Assigned Contract, the Buyer shall be authorized to (a) use the leased premises, (b) operate its business at the leased premises, (c) make such alterations and modifications to the interior and exterior of the leased premises (including signage, together with appropriate changes to existing tenant signage in the respective shopping center, including signage affixed to the building panels on all directional and other ground and off-premises signs where the Debtors are presently represented) as are determined by the Buyer to be necessary to operate its business at such leased premises, and (d) exercise, utilize, or take advantage of any renewal options and any other current or future rights, benefits, privileges, and options granted or provided to the Debtors in or under any Assigned Contract.

31.    Notwithstanding anything to the contrary contained herein or in the APA, any Assigned Contract for which there is an unresolved cure objection shall not be assumed, assigned, and sold unless (a) all such objections relating to such executory contract or unexpired lease are withdrawn, (b) the counterparty to such executory contract or unexpired lease consents in writing (email being sufficient), or (c) the Court subsequently orders otherwise (each a "Resolution Event"). For the avoidance of doubt, if no Resolution Event occurs by the end of the Designation Rights Period with respect to any Assigned Contract(s) that are subject to a pending cure objection in accordance with this paragraph, such Assigned Contract(s) shall automatically be deemed an Excluded Contract (as defined in the APA) without the need for further order of the Court or amendments to the APA. Accordingly, unless an adequate assurance or cure objection with respect to the Buyer was filed and served before the applicable deadline (a "Filed Objection"), the applicable Counterparty is forever barred from objecting to (i) the Cure Costs and from asserting

any additional cure or other amounts with respect to the applicable Assigned Contract in the event it is assumed and/or assigned, except to the extent such Cure Costs further accrue (being subject to further credits, debits, and adjustments in accordance with the terms of the applicable underlying Assigned Contract) following the Debtors' filing of the applicable assumption and assignment notice or (ii) adequate assurance of future performance by the Buyer.

32.     Pursuant to sections 365(b)(1)(A)–(B) of the Bankruptcy Code, at the Closing, the Debtors shall pay to the respective counterparty the Cure Costs relating to any Assigned Contract.

33.     All defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing Date or as soon thereafter as reasonably practicable through the Debtors' payment of the Cure Costs.  To the extent that any counterparty to an Assigned Contract did not object to its Cure Cost by the Cure Objection Deadline, such counterparty is deemed to have consented to such Cure Cost and the assumption and assignment of its respective Assigned Contract(s) to the Buyer in accordance with the APA.

34.     Upon the Debtors' assignment of the Assigned Contracts to the Designated Buyer under the provisions of this Sale Order and any additional orders of the Court and payment of any Cure Costs by the Debtors, no counterparty to any Assigned Contract shall be permitted (a) to declare a pre-assignment default by the Designated Buyer under such Assigned Contract or (b) otherwise take action against the Designated Buyer as a result of Debtors' financial condition, bankruptcy, or failure to perform any of their obligations under the relevant Assigned Contract. Each non-Debtor party to an Assigned Contract hereby is also forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors or the Designated Buyer, or the

property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, including those constituting Excluded Liabilities or, against the Designated Buyer, any counterclaim, defense, setoff, recoupment, or any other Claim asserted or assertable against the Debtors, in each case, except as provided in paragraph 12 of this Sale Order and (b) imposing or charging against the Designated Buyer any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to the Designated Buyer of any Assigned Contract in accordance with the APA. The validity of such assumption and assignment of each Assigned Contract shall not be affected by any dispute between the Debtors and any non-Debtor party to an Assigned Contract relating to such contract's respective Cure Costs.

35.     Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtors are authorized to assume all Assigned Contracts, and assign such Assigned Contracts to the Buyer or transfer such Assigned Leases to the Buyer, as applicable.

36.     The payment of the applicable Cure Costs (if any) and cure if any non-monetary defaults (if any), shall effect a cure of all defaults existing as of the date that such Assigned Contracts are assumed and compensate for any actual pecuniary loss to such non-Debtor party resulting from such default, and the non-Debtor parties to such Assigned Contracts are forever bound by such Cure Costs and, upon payment of such Cure Costs, are hereby enjoined from taking any action against the Debtors and their bankruptcy estates, the Buyer and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, or the Assets with respect to any claim for cure under any Assigned Contract.

37.     The Debtors shall have assumed the Assigned Contracts, and pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Assigned Contracts to the

Buyer shall not be a default thereunder.  After the payment of the relevant Cure Costs, neither the Debtors and their bankruptcy estates nor the Buyer shall have any further liabilities to the non-Debtor counterparties to the Assigned Contracts, other than the Buyer's obligations under the Assigned Contracts as set forth in paragraph 12 of this Sale Order.

38.    Any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contract constitute anti-assignment provisions that are unenforceable solely in connection with this Sale.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts have been satisfied.

39.    To the furthest extent permitted by law, any party having the right to consent to the assumption or assignment of any Assigned Contract that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code, and shall be barred from objecting, or asserting monetary or non-monetary defaults, with respect to any such Assigned Contract.

40.    From the date of the entry of this Sale Order, the Debtors may, in consultation with the Buyer, settle objections to assumption and assignment of any Assigned Contract, including to proposed Cure Costs, without any further notice to or action by any party or order of the Court (including by paying any agreed Cure Cost); *provided* that notice to and consent of the Buyer shall be required to the extent the Buyer is liable for such Cure Cost pursuant to the APA as modified by this Sale Order.  Subject to and in accordance with the terms of the APA and unless the Court orders otherwise, contemporaneously with the resolution of any such objection, the executory

contract or unexpired lease underlying such objection shall be deemed an Assigned Contract to the Buyer without the necessity of obtaining any further order of the Court; *provided* that any counterparty to such Assigned Contract may request a subsequent order be submitted under certification of counsel with respect to its contract or lease.

41.     Nothing in this Sale Order, the Motion, or any notice relating to the assumption and assignment of the Assigned Contracts, is or shall be deemed an admission by the Debtors that any contract is an executory contract or must be assumed and assigned pursuant to the APA or in order to consummate the Sale.

42.     Upon the assignment of the Assigned Contracts and payment of the applicable Cure Costs, the Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Assigned Contracts, and the Debtors and their bankruptcy estates shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability for a breach under the Assigned Contracts.

43.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assigned Contracts.

44.     The Buyer has provided adequate assurance of future performance under the Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

45.     Neither the Buyer nor any permitted successor or assign of the Buyer shall be responsible for or have any Encumbrances or obligations arising out of any of the Excluded Contracts (except as specifically provided by the APA or this Sale Order).

46.     Notwithstanding anything herein to the contrary and subject to the APA, prior to the Closing Date, the Debtors may remove any contract or lease from the list of Assigned Contracts (and thereby exclude such Contract from the definition of Assigned Contracts) pursuant to the procedures set forth in the APA or the Bidding Procedures Order, as applicable.  To the extent applicable, the Debtors shall use reasonable best efforts file a schedule of the final Assigned Contracts reasonably promptly after the Closing Date; provided that such schedule may be amended or supplemented.

47.     Pursuant to the Bidding Procedures Order, at or prior to the Closing Date, in the event that a 365 Contract (as defined in the APA) was not listed on the Proposed Assumed Contracts Schedule, such Counterparty shall have 14 days after the date on which the applicable Supplemental Assumption and Assignment Notice is filed with the Court and served on the applicable Counterparty (the "Supplemental Additional Contract Cure Objection Deadline") to (a) object to the applicable proposed Cure Costs for such 365 Contract and the assumption and assignment of such 365 Contract (the "Supplemental Additional Cure Cost Objection") and (b) serve the Supplemental Additional Contract Cure Cost Objection (by email or overnight mail) so that is actually received by counsel for the Debtors and the Buyer on or before the Supplemental Additional Contract Cure Objection Deadline.

48.     In the event that a 365 Contract was listed on the Proposed Assumed Contracts Schedule and was the subject of a Filed Objection, the applicable Counterparty that filed such Filed Objection shall be limited to objecting (a) on the basis set forth in their Filed Objection, (b) on a basis which could not have been the subject of a Filed Objection at the time of such Filed Objection, and/or (c) on the basis of the adequate assurance information provided regarding the

applicable assignee; *provided, however*, that the applicable counterparty shall not be required to file a supplemental objection to preserve the objections previously asserted in a Filed Objection.

49.     Designation Rights. The APA is modified as set forth hereto as **Exhibit 2** (the "Designation Rights Amendment"), which is hereby approved. During the Designation Rights Period, the Buyer may designate any 365 Contract for assumption and assignment in accordance with the terms of the APA and this Sale Order (in such instance, a "Designated Lease").  In such event, the Debtors shall file with the Court and serve on the applicable Counterparty a Designated Lease Notice.  If the proposed assignee is not the Buyer, the Debtors shall also deliver to the applicable Counterparty (and deliver by email to counsel for the applicable Counterparty, if such counsel has filed a notice of appearance or request for service of notices) evidence of adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code with respect to the applicable Designated Lease that is proposed to be assumed and assigned to such assignee.

50.     Each Designated Lease Notice will set forth the following information:  (a) the street address of the real property that is the subject of such 365 Contract; (b) the name and address of the Counterparty (and their counsel, if known); (c) a description of the deadline and procedures for filing objections to the Designated Lease Notice; (d) the identity of the proposed assignee; (e) information intended to provide the Counterparty to the Designated Lease with adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code; (f) the proposed Cure Costs associated with such Designated Lease; and (g) a proposed form of order authorizing the assumption and assignment; *provided, however,* that if adequate assurance information is provided pursuant to this paragraph, such adequate assurance information shall be kept strictly confidential and not be used for any purpose other than to (a)

evaluate whether adequate assurance requirements under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code have been satisfied, and (b) to support any objection to adequate assurance provided by any party including the Buyer and its affiliates.

51.     Any party seeking to object to the assumption and assignment of any Designated Lease on any basis other than the Cure Costs (including, but not limited to, objections to adequate assurance of future performance if such Designated Lease is designated to a third party or with respect to the provision of adequate assurance of future performance of the Buyer if a Filed Objection was timely filed) must (a) file a written objection in compliance with the Bankruptcy Rules and Local Rules (a "Designated Contract Assumption and Assignment Objection") with the Court, so that such objection is filed no later than 14 days after the date on which (i) the applicable Designated Lease Notice is filed with the Court and (ii) evidence of adequate assurance of future performance required pursuant to the terms hereof is served on the applicable Counterparty (the "Designated Contract Assumption and Assignment Objection Deadline"); and (b) serve the Designated Contract Assumption and Assignment Objection (by email) so that it is actually received by counsel for the Debtors, the Buyer and applicable assignee on or before the Designated Contract Assumption and Assignment Deadline.

52.     If no Filed Objection has been filed, or no Designated Contract Assumption and Assignment Objection has been filed by the Designated Contract Assumption and Assignment Objection Deadline, the Debtors, the Buyer, and the applicable assignee shall submit for evaluation and entry by this Court, under certificate of no objection, an order approving assignment of the Designated Lease (such order, a "Supplemental Lease Assignment Order").  The Supplemental Lease Assignment Order may seek, among other things, that upon the applicable Designated Assignment Date, except as otherwise expressly agreed by the applicable assignee and the

applicable Counterparty, notwithstanding any provision in any Designated Lease that purports to prohibit, restrict, or condition such action, upon the assumption and assignment of such Designated Lease to an assignee in accordance with the terms of the APA and any related assignment agreements, (x) the applicable assignee shall be authorized to:  (i) use the leased premises subject to the Designated Lease (such premises, the "Leased Premises") as a retail store (and related goods and services) upon consummation of the assumption and assignment of such Designated Lease to such assignee in accordance with the terms of the APA and any related assignment agreements; (ii) operate its business at the Leased Premises under its tradename; (iii) make such alterations and modifications to the interior and exterior of the Leased Premises (including signage, together with appropriate changes to existing tenant signage in the respective shopping center, including signage affixed to the building panels on all directional and other ground and off-premises signs where the Debtors are presently represented) as are determined by the applicable assignee to be necessary to conform such Leased Premises to the applicable assignee's typical retail store; (iv) remain "dark" with respect to such Leased Premises after such assumption and assignment until the date that is necessary to permit, but no more than 270 consecutive days, such assignee to remodel, restock, re-fixture, change signage and/or until completion of the work described in clause (iii) above; and (v) exercise, utilize, or take advantage of any renewal options and any other current or future rights, benefits, privileges, and options granted or provided to the Debtors under such Designated Lease (including all of the same which may be described or designated as, or purport to be, "personal" to the Debtors or to a named entity in such Designated Lease or to be exercisable only by the Debtors or by a named entity or an entity operating under a specific trade name) and (y) neither the Buyer nor the applicable assignee shall have any responsibility or liability for any Excluded Liabilities.

53.     If a Filed Objection has been filed, or a Designated Contract Assumption and Assignment Objection is timely filed and not withdrawn or resolved, the Debtors, the applicable assignee, and the objecting Counterparty shall have authority to compromise, settle, or otherwise resolve any objections and submit an agreed form of order under certification of counsel.  If the Debtors, the applicable assignee, and the objecting Counterparty determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Designated Lease will be determined by the Court on a date to be scheduled by any of the Debtors or the applicable assignee (which hearing date shall be no sooner than ten business days following the date of filing of the Designated Lease Notice Objection, unless the Debtors, the Buyer, the applicable assignee, and the applicable Counterparty agree otherwise).

54.     Pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code, the Buyer shall, on the applicable assumption effective date for a 365 Contract, cure all nonmonetary defaults solely to the extent required under section 365 of the Bankruptcy Code, and pay to the applicable Counterparty all Cure Costs.  Upon assumption and assignment of any 365 Contract and payment of the applicable Cure Costs, the Debtors and the estates shall be relieved of any liability for breach of such 365 Contract pursuant to section 365(k) of the Bankruptcy Code, except as expressly provided herein or in the APA or related agreements. For the avoidance of doubt, during the Designation Rights Period, nothing in this Sale Order or the APA shall modify the obligations of the Debtors pursuant to Section 365(d)(3) of the Bankruptcy Code with respect to unexpired real property leases that are 365 Contracts until such time as the applicable 365 Contract is assumed, assumed and assigned, or rejected.  Nothing in this Sale Order shall be considered an extension of the Debtors' time to assume or reject nonresidential real property leases pursuant to Section 365(d)(4).

55.      The Debtors may seek that upon the applicable assignment effective date, any provision in any 365 Contract that purports to declare a breach or default as a result of a change or transfer of control of any interest in respect of the Debtors is unenforceable (solely in connection with this Sale) and all assigned 365 Contracts that in any way purport to: (i) prohibit, restrict, or condition the Debtors' assignment of such 365 Contract (including, but not limited to, the conditioning of such assignment on the consent of any non-debtor party to such 365 Contract); (ii) provide for the cancellation, or modification of the terms of the 365 Contract based on the filing of a bankruptcy case, the financial condition of the Debtors, or similar circumstances; (iii) provide for additional payments (e.g., so called "profit" sharing/splitting), penalties, fees, charges, or other financial accommodations in favor of the non-debtor third party to such 365 Contract upon assignment thereof; or (iv) provide for any rights of first refusal on a Counterparty's part, or any recapture or termination rights in favor of a Counterparty, or any right of a landlord to take an assignment or sub lease from a tenant, shall have any force or effect with respect to the grant and honoring of the Buyer's 365 Contract designation rights or in accordance with this Sale Order and the APA and assignments of 365 Contracts by the Debtors in accordance therewith or in accordance with any Supplemental Lease Assignment Order.

**Additional Provisions**

56.      Consumer Privacy Provisions.  The Buyer shall be bound by and meet the material standards established by the Buyer's privacy policies solely with respect to the personally identifiable information transferred to the Buyer pursuant to the APA; *provided*, *however*, that nothing in this Sale Order shall affect, limit, restrict, prohibit, or impair any right to amend or replace such privacy policies on a going forward basis with respect to the personally identifiable information transferred to the Buyer, in accordance with the terms thereof and applicable law.

57. <u>Automatic Stay Relief</u>. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted to the extent necessary, without further order of the Court, to (a) allow the Buyer to deliver any notice provided for in the APA and any ancillary documents and (b) allow the Buyer to take any and all actions permitted under this Sale Order, the APA and any ancillary documents in accordance with the terms and conditions thereof.

58. <u>Buyer Not a Successor</u>. The transactions contemplated under the APA do not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtors and/or the Debtors' estates; there is not substantial continuity between Buyer and the Debtors; there is no continuity of enterprise between the Debtors and the Buyer; the Buyer is not a mere continuation of the Debtors or their estates; and the Buyer is not a successor or assignee of the Debtors or their estates for any purpose including, but not limited to, under any federal, state, or local statute or common law, or revenue, pension, ERISA, COBRA, tax, labor, employment, environmental (including, without limitation, the Comprehensive Environmental Response Compensation and Liability Act, as amended), escheat, or unclaimed property laws, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine or common law, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation, or doctrine. The Buyer and its affiliates shall have no liability or obligation under the WARN Act, 929 U.S.C. §§ 210 *et seq.,* or the Comprehensive Environmental Response Compensation and Liability Act, as amended or analogous foreign, state, or local laws and shall not be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disability

Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the Employee Retirement Income Security Act, the Multiemployer Pension Protection Act, the Pension Protection Act, and/or the Fair Labor Standards Act. Except for the Assumed Liabilities or Permitted Encumbrances, or as otherwise set forth in this Sale Order, the (a) transfer of the Assets to Buyer and (b) assumption and assignment to Buyer of the Assigned Contracts do not and shall not subject Buyer to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, either directly, or based on, in whole or in part, directly or indirectly, any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability, in each case regardless of whether such law or theory purports to apply any liability directly to Buyer rather than in a successor or transferee capacity.

59.    <u>Bulk Transfer Laws</u>. The Debtors and the Buyer hereby waive, and shall be deemed to waive, any requirement of compliance with, and any Claims including, without limitation, any Claims related to non-compliance with the provisions of any bulk sales rules, bulk transfer rules, or similar law of any jurisdiction that may be applicable regardless of whether such non-compliance would purport to result in Buyer being liability in its own capacity.

60.    <u>No Interference</u>. Following the Closing, no holder of an Encumbrance (other than Assumed Liabilities and Permitted Encumbrances) in or against the Debtors and their estates or the Assets shall interfere with the Buyer's title to or use and enjoyment of the Assets based on or

related to such Encumbrance or any actions that the Debtors and their bankruptcy estates may take in these chapter 11 cases or any successor bankruptcy cases.

61.    <u>Authorization</u>.    The Debtors, including their respective directors, managers, officers, employees, and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the APA and this Sale Order.  The Debtors shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this Sale Order and the relief granted pursuant to this Sale Order.

62.    <u>Good Faith</u>.  The Sale as contemplated by the APA is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assigned Contracts by the Buyer and the sale free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances) unless such authorization and consummation of such Sale are duly stayed pending such appeal.  The Buyer is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and as such is entitled to the full benefits and protections of such section.  As a good-faith purchaser of the Assets, the Buyer has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Assets, and therefore the sale of the Assets shall not be avoided pursuant to section 363(n) of the Bankruptcy Code.

63.    <u>Buyer Releases</u>.  Except to the extent expressly preserved pursuant to the APA or this Sale Order, upon the Closing Date, each of the Debtors and the Buyers  (each a "<u>Releasing Party</u>"), to the fullest extent permissible under applicable law, mutually releases and discharges each other Releasing Party and such Releasing Parties' respective current and former predecessors, successors,

47

affiliates (regardless of whether such interests are held directly or indirectly), assigns, subsidiaries, direct and indirect equity holders, funds, portfolio companies, management companies, current, and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors, and other professionals, each in their capacity as such (collectively, in such capacity, the "Released Parties" and each a "Released Party"), from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities of every kind, nature and description whatsoever, which such Releasing Party ever had, now has or may have on or by reason of any matter, cause or thing whatsoever to the Closing Date, including any derivative claims that such Releasing Party (or someone on its behalf) would have been legally entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Releasing Party would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of a holder of any claim against a Releasing Party, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any claim, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Sale, entry into the APA, the chapter 11 cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Sale, the APA, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the APA, the filing of these chapter 11 cases, the pursuit of the Sale, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Closing Date related or relating to the foregoing; *provided* that this paragraph 63 shall not affect the liability of any Releasing Party for claims or liabilities arising out of or relating to any act or omission of a Releasing Party that constitutes actual

fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a final order of a court of competent jurisdiction.

64.    <u>Lender Releases</u>.  At (and immediately prior to) the Closing, the Debtors, on behalf of themselves their estates, and on behalf of their past, present, and future successors and assigns (solely to the extent permitted under applicable law), (collectively, the "<u>Debtor Releasors</u>"), hereby, forever release, discharge and acquit the DIP Credit Parties, the Prepetition Secured Parties and their respective successors and assigns, and their current and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, partners, members, managers, attorneys, employees, consultants, advisors and other representatives in their respective capacities as such (collectively, the "<u>DIP Credit Party Releasees</u>") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Debtor Releasors had, have or hereafter can or may have against any DIP Credit Party Releasees as of the Closing, in respect of events that occurred on or prior to the Closing relating to any Debtor or any subsidiary thereof, the APA, the DIP Orders, the DIP Obligations or DIP Loan Documents, the Prepetition Secured Obligations, the Prepetition Secured Parties, and the Prepetition Credit Documents**.**

65.    <u>Failure of Approval</u>.  The failure specifically to include any particular provision of the APA including any of the documents, agreements, or instruments executed in connection therewith in this Sale Order shall not diminish or impair the efficacy of such provision, document, agreement, or instrument, it being the intent of the Court that the APA and each document, agreement or instrument be authorized and approved in its entirety.

66.    <u>Post-Closing Claims Administration</u>.  After the Closing:  (a) neither the Debtors nor any successor in interest, including any chapter 11 or chapter 7 trustee in these chapter 11

cases or any successor chapter 7 cases, shall consent or agree to the allowance of any claim to the extent it would constitute an Assumed Liability or Permitted Encumbrance without the prior written consent of the Buyer; and (b) the Buyer shall have standing to object to any claim against the Debtors and their estates to the extent that, if allowed, it would constitute an Assumed Liability or Permitted Encumbrance, and the Court shall retain jurisdiction to hear and determine any such objections.   Buyer agrees to use commercially reasonable efforts, in consultation with the Committee and the Debtors, to establish a protocol within 10 business days of closing, for payment of Assumed 503(b)(9) Claims.   Further, Buyer shall pay all Assumed Accounts Payable consistent with the mutually agreeable protocol for payment.

67.   <u>Liberty Mutual Insurance Company</u>.   Liberty Mutual Insurance Company (the "<u>Surety</u>") executed certain surety bonds on behalf of certain of the Debtors (collectively, the "<u>Existing Surety Bonds</u>").   These Existing Surety Bonds are issued pursuant to certain existing indemnity agreements and/or related agreements by and between the Surety, on the one hand, and the Debtors, on the other hand (collectively, the "<u>Existing Indemnity Agreements</u>" and, together with any Existing Surety Bond, the "<u>Surety Agreements</u>").

68.   Nothing in this Sale Order, the APA, or any document related to any of the foregoing shall be (a) construed to authorize or permit the Debtors' assumption and/or assignment of any Surety Agreement or to obligate the Surety to replace any Existing Surety Bond in connection with the Sale, or (b) deemed to (i) provide the Surety's consent to the substitution of any principal under any Existing Surety Bond or Existing Indemnity Agreement, and the Buyer shall not be deemed a substitute principal under any Existing Surety Bond or an indemnitor under any Existing Indemnity Agreement or (ii) alter, limit, expand, modify, release, waive or prejudice

50

any rights, remedies and/or defenses of the Surety under the Surety Agreements or in connection with the Chapter 11 Cases.

69.     Nothing in this Sale Order, the APA, or any document related to any of the foregoing shall be deemed to limit, impair, or prime Surety's rights or interests, if any, in any letters of credit, or any other collateral or the proceeds of such collateral, securing existing surety bonds and existing indemnity agreements.

70.     <u>Chubb Companies</u>.  Notwithstanding anything to the contrary in the Motion, the APA, the Bidding Procedures, the Bidding Procedures Order, any cure notice or assumption notice, any lists of executory contracts to be assumed and assigned, this Sale Order, or any documents relating to any of the foregoing: (a) nothing shall permit or otherwise effect a sale, an assignment or any other transfer, without the express written consent of the Chubb Companies (as defined herein), of (i) any insurance policies that have been issued by ACE American Insurance Company, Federal Insurance Company, ACE Property & Casualty Insurance Company, Westchester Surplus Lines Insurance Company, Indemnity Insurance Company of North America, Executive Risk Indemnity Inc., Chubb Atlantic Indemnity, Ltd., Great Northern Insurance Company, Chubb Custom Insurance Company, and/or any of their U.S.-based affiliates and predecessors (collectively, the "<u>Chubb Companies</u>") to or that provide coverage to any of the Debtors (or their predecessors) and all agreements, documents or instruments relating thereto (collectively, the "<u>Chubb Insurance Contracts</u>"), and/or (ii) any rights, proceeds, benefits, claims, interests, rights to payments and/or recoveries under such Chubb Insurance Contracts to the Buyer; provided, however, that to the extent any claim with respect to the Assets arises that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Buyer any such insurance proceeds (each,

a "Proceed Turnover") and, further, Chubb Companies shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover.

71.    WPG Management Associates, Inc. Notwithstanding anything to the contrary in this Sale Order or the APA, the real property located at 4900 E Dublin Granville Rd., Westerville OH 43081 (the "Headquarters") shall not be transferred to the Buyer or its affiliates free and clear under Section 363(f) of the Bankruptcy Code of that certain leasehold interest (the "Lease") of WPG Management Associates, Inc. ("WPG") at the Headquarters until either (a) this Court on notice and a hearing has entered a further order approving such transfer of the Headquarters free and clear of any interest in the Lease or (b) a settlement is reached, and notice of which is filed on the Bankruptcy Court's docket, among WPG, Buyer and Seller pursuant to which each agree to such transfer free and clear.  All rights of WPG, Buyer and Seller are reserved notwithstanding entry of this Sale Order.

72.    Tempur Sealy International, Inc. Notwithstanding any other provision of this Sale Order or the APA to the contrary, to the extent the Assets include any assets related to Tempur Sealy International, Inc. or its affiliates, such transfer shall not be free and clear of, and shall not impair in any respect, but are expressly subject to, any and all affirmative defenses to payment, including but not limited to rights of setoff and recoupment, held by Tempur Sealy International, Inc. or its affiliates.

73.    AGS Matter.  Subject to the terms of this Sale Order, the Acquired Proceedings includes all rights, claims, accounts, and causes of action (including warranty and similar claims) of the Selling Entities against any persons (other than another Selling Entity) (regardless of whether such claims and causes of action have been asserted) and all rights of indemnity, rights of contribution, rights to refunds, rights of reimbursement, and other rights of recovery, including

rights to insurance proceeds, possessed by the Selling Entities (regardless of whether such rights are currently exercisable).  For the avoidance of doubt, the AGS Matter is an asset of the Sellers and is property of the Debtors' estates, and that is an Acquired Proceeding subject to the terms of this Sale Order and the APA. *provided, however,* that if Buyer determines not to pursue the AGS Matter, Buyer shall promptly inform Seller in writing and such claims shall be deemed to be Excluded Assets and be deemed property of the Debtors' Estates.  Within five business days of Closing, Seller shall file a motion to substitute Buyer as a party in the AGS Matter.

74.     <u>Notice of Sale Closing</u>.  Within one Business Day of the occurrence of the Closing of the Sale, the Debtors shall file and serve a notice of the closing of the Sale.

75.     <u>Computation of Time Periods</u>.  All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

76.     <u>Order Governs in Event of Inconsistencies</u>.  To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Sale Order shall govern.  To the extent there are any inconsistencies between the terms of this Sale Order and the APA (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

77.     <u>Modification</u>.  The APA and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court. Notwithstanding the foregoing, no such modifications, amendments or supplements shall be permitted that impair the rights of the DIP Credit Parties or Prepetition Secured Creditors under this Sale Order without their prior written consent or further order of the Court.

78. <u>Buyer Entities</u>. The term "Buyer" as used in this Sale Order shall include any affiliate the Buyer designates to acquire particular assets in accordance with the terms of the APA.

79. <u>Waiver of Stay</u>. Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), or 7062 or any applicable provisions of the Local Rules, this Sale Order shall not be stayed following the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.

80. <u>Non-Severability</u>. The provisions of this Sale Order as applied to the Buyer for the APA are nonseverable and mutually dependent.

81. <u>Retention of Jurisdiction</u>. The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, all amendments thereto, and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

**Dated: November 22nd, 2024**
**Wilmington, Delaware**

J. KATE STICKLES
UNITED STATES BANKRUPTCY JUDGE