# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS INC., *et al.*,<br><br>Debtors[1]. | Chapter 11<br><br>Case No. 24-11967 (JKS)<br>(Jointly Administered)<br><br>**Objection Deadline: December 11, 2024 at 4 p.m.(ET)**<br>**Hearing Date: December 19, 2024, at 2:00 p.m.(ET)** |

### ATTIC PRODUCTS, DAN DEE INTERNATIONAL, LLC, AND DEWAN & SONS' MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIMS

Attic Products, Dan Dee International, LLC ("Dan Dee"), and Dewan & Sons (collectively, the "Claimants"), by and through their undersigned attorneys, hereby submit claims and move for approval and payment administrative expenses. The Claimants request entry of an order, substantially in the form attached herein as **Exhibit A**, allowing the claims and payment thereof pursuant to 11 U.S.C. § 503(b)(9), and granting any other form of relief that the Court finds just and proper.

### JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

### FACTUAL BACKGROUND

2. The Debtors in this Bankruptcy filed their Chapter 11 petition on September 9, 2024 (the "Petition Date").

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

3. The period starting 20 days before the Petition Date begins on August 20, 2024 (the "503(b)(9) Claims Period").

4. Claimants are trade creditors of Big Lots affiliated debtors AVDC LLC ("AVDC"), Big Lots Stores, LLC ("Big Lots Stores"), Closeout Distribution, LLC ("Closeout"), CSC Distribution LLC ("CSC"), and Durant DC, LLC ("Durant DC" and, all together, the "Claim Entities") who received purchase orders and fulfilled those orders in the normal course of business.

5. The Claim Entities placed orders for goods from the Claimants which have been delivered but have not been paid for. A portion of these goods were delivered to the Debtors' possession within the 503(b)(9) Claims Period. Other portions of these goods have been delivered and/or received after the Petition Date (the "Post-Petition Deliveries"), based on available records or upon information and belief formed after a reasonable inquiry.

6. Claimant Attic Products delivered goods ordered by the Claim Entities in the normal course of business. Within the 503(b)(9) Claims Period, Attic Products delivered goods valued at $30,975.00. Attic Products also delivered goods in Post-Petition Deliveries valued at $90,008.65. In total, Attic Products delivered $120,983.65 worth of goods entitled to administrative priority in the normal course of business. Attic Products' claim is better described in the enclosed *Declaration of Attic Products*, which includes invoices, forwarder's cargo receipts, and Big Lots Purchase Orders, as attached herein as **Exhibit B**.

7. Claimant Dan Dee delivered goods ordered by the Claim Entities in the normal course of business. Within the 503(b)(9) Claims Period, Dan Dee delivered goods valued at $143,119.32. Dan Dee also delivered goods in Post-Petition Deliveries valued at $514,820.99. In total, Dan Dee delivered $657,940.31 worth of goods entitled to administrative priority in the normal course of business. Dan Dee's claim is better described in the enclosed *Declaration of Dan Dee*, which

{00040282.2 }

includes invoices, forwarder's cargo receipts, and Big Lots Purchase Orders, as attached herein as **Exhibit C**.

8. Claimant Dewan & Sons delivered goods ordered by the Claim Entities in the normal course of business. Within the 503(b)(9) Claims Period, Dewan & Sons delivered goods valued at $188,011.56. Dewan & Sons also delivered unpaid goods in Post-Petition Deliveries valued at $268,210.45. In total, Dewan & Sons delivered $456,222.01 worth of goods entitled to administrative priority in the normal course of business. Dewan & Sons' claim is better described in the enclosed *Declaration of Dewan & Sons*, which includes invoices, forwarder's cargo receipts, and Big Lots Purchase Orders, as attached herein as **Exhibit D**.

## RELIEF REQUESTED

9. Claimants seek allowance and payment of these trade debts as administrative claims in the total amount of $1,235,145.97.

### i. *Claimants' 503(b)(9) Administrative Expenses Should be Allowed*

10. The Court shall allow administrative expenses, after notice and hearing, in the amount of the value of any goods received by the debtor within 20 days before the Petition Date. 11 U.S.C. § 503(b)(9). For the purposes of 503(b)(9) claims, "receipt" occurs when the debtor takes physical possession of the items, even if contractual risk passes earlier in transit under e.g. FOB incoterms, as is the case here. *In re World Imports, Ltd.*, 862 F.3d 338, 346 (3d Cir. 2017). The goods at issue for the present claim were taken into Debtors' possession within 20 days before the Petition Date, so these 503(b)(9) claims should be allowed.

### ii. *Claimants' Post-Petition Delivery Administrative Expenses Should be Allowed*

11. Similarly, the Post-Petition Deliveries were received by the Debtors once they took physical possession after the Petition Date, even if the goods were shipped before the Petition

Date. Administrative expenses shall be allowed for "the actual, necessary costs and expenses of preserving the state[.]" 11 U.S.C. § 503(b)(1)(A).

12. To be awarded an administrative expense claim, a claimant must demonstrate that it conducted a transaction with a debtor in possession that, in turn, provided a benefit to such debtor's estate. See *Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.)*, 181 F.3d 527, 532–33 (3d Cir. 1999) (noting that, to establish a priority claim under section 503(b)(1)(A) of the Bankruptcy Code, the debt must arise post-petition and benefit the estate (citations omitted)).

13. The Claimants submit that, pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in connection with the post-petition delivery of desired and necessary goods, including goods ordered prepetition, are in fact administrative expense priority claims in virtually all instances. Indeed, even if the goods had been received in the ordinary course of the Debtors' business 20 days before the Petition Date, the related claims would receive administrative expense priority under section 503(b)(9) of the Bankruptcy Code. See *In re GWLS Holdings, Inc.*, No. 08-12430 (PJW) (Bankr. D. Del. Oct. 22, 2008); *In re Chateaugay Corp.*, 10 F.3d 944, 956 (2d Cir. 1993) (holding that an obligation from post-petition performance related to a prepetition transaction is entitled to administrative expense priority). Further, where transactions involve both the delivery of goods and associated services, courts have granted priority under section 503(b)(9) of the Bankruptcy Code to the portion of the claim relating to the sale of goods. See *In re NE Opco, Inc.*, 501 B.R. 233, 257 (Bankr. D. Del. 2013).[2]

---

[2] The arguments in this paragraph are taken, almost word for word, from the Debtors' own *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors To Pay Prepetition Critical Vendor Claims, Foreign Vendor Claims, and 503(b)(9) Claims in the Ordinary Course of Business, (II) Granting Administrative Expense Status to Debtors' Undisputed Obligations to Vendors Arising From Post-Petition Delivery of Goods Ordered Prepetition and Authorizing Debtors To Pay Those Obligations in the Ordinary Course of Business, (III) Authorizing Debtors To Return Goods, (IV) Authorizing Debtors To Pay Certain Prepetition Claims of Lien Claimants, and (V) Authorizing Financial Institutions To Honor and Process Related Checks and Transfers* (the "Critical Vendor

14. The Claimants are foreign vendors, whose services are "vital" and necessary for maintaining the value of the Debtors' estates. Claimants' uninterrupted shipment of goods to the Claim Entities have been critical to the Debtors' business during this bankruptcy, and therefore the Claimants have provided direct and substantial benefits to the estate.

15. In the Debtors' own words:

> The Debtors strongly believe that the uninterrupted supply of Goods and Services, on Customary Trade Terms, and the continuing support of their customers are imperative to the Debtors' ongoing businesses and operations and the preservation and maximization of the value of the Debtors' estates. The continued availability of trade credit, in amounts and on terms consistent with those that the Debtors have worked hard to obtain over time, is also clearly advantageous to the Debtors, as it allows the Debtors to maintain and enhance necessary liquidity and to focus on returning to profitability and preserving and maximizing the value of the Debtors' Critical Vendor Motion at 20

16. Therefore, the Claimants' administrative expense claims for Post-Petition Deliveries should be allowed, using the logic of the Debtors' own prior representations and arguments.

### iii. The Court Should Compel Payment of Claimants' Administrative Expense Claims Within Seven Days

17. This Court has discretion to require that Claimants' administrative expenses be paid immediately. *In re Garden Ridge Corp.*, 323 B. R. 136, 143 (Bankr. D. Del. 2005). "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." *Id*.

> In making this determination, one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets. . . . Courts will also consider the particular needs of each administrative claimant and the length and expense of the case's administration. To qualify for exceptional immediate payment, a creditor must show that there is a necessity to pay and not merely that the Debtor has the ability to pay.

Motion," ECF 11 ¶¶ 39-40)

{00040282.2 }

*In re Global Home Products, LLC*, No. 06–10340 KG, 2006 WL 3791955, *3 (Bankr. D. Del. Dec. 21, 2006) (internal quotations marks and citations omitted).

18. Courts apply the same analysis regarding immediate payment of section 503(b)(9) administrative expenses as used for other kinds of administrative expenses: "(1) the prejudice to the debtors, (2) hardship to claimant, and (3) potential detriment to other creditors." Id. at *4 (applying *Garden Ridge Corp*. test and granting immediate payment of section 503(b)(9) expense).

19. Here, the Debtors have already received final authority to pay up to $60 million in critical vendor claims including up to $37 million in section 503(b)(9) claims. See ECF 463 (the "Critical Vendor Order").

20. The Debtors also have authorization—and a DIP and cash collateral budget—permitting them to pay in excess of $50 million in operating disbursements per week, which amount includes section 503(b)(9) and post-petition delivery claims. See ECF 114 at 431 (interim DIP order); ECF 584 (final DIP order).

21. The Debtors have thus already decided that, in their business judgment, the prejudice to the Debtors and other creditors arising from immediate payment of section 503(b)(9) and post-petition delivery claims is outweighed by the necessity of business continuity. *See* Critical Vendor Motion.

22. The Debtors have also budgeted and set aside sufficient funds to pay section 503(b)(9) and post-petition delivery claims without impairing their ability to operate or restructure during the pendency of these cases.

23. The Debtors thus already have the capacity, ability, and authority to pay Claimants' administrative expenses, and the Court has ruled that payment of other section 503(b)(9) and post-petition delivery claims is a proper exercise of the Debtors' business judgment.

24. Claimants further submit that there would be no meaningful prejudice to other creditors if Claimants are paid immediately. As the holder of an allowed administrative expense, Claimants are entitled to payment in full for its administrative claim in any potential plan or liquidation, so immediate payment will not disadvantage any other creditors.

25. On the other hand, Claimants would suffer extreme prejudice if not paid immediately. Claimants are manufacturers with high overhead costs, including a relentless payroll.  If forced to wait for payment of the administrative expense amounts, Claimants could suffer severe financial distress and may experience disruptions in its ability to place and fulfill future orders for the Debtors, the potential purchasers of the Debtors' business, and Claimants' other customers.

26. 38. The totality of the circumstances supports compelling the Debtors to pay Claimants' administrative claim immediately, as further delay in payment will only prejudice Claimants, and there is no cognizable prejudice to the Debtors or to the Debtors' other creditors.

27. Accordingly, Claimants request that their administrative expense claim be paid within seven days after the entry of this Court's order granting the Motion.

## RESERVATION OF RIGHTS

28. By entering this motion or making these claims, the Claimants do not waive any rights related to the matters herein, including the right to submit these claims to insurance.

## CONCLUSION

29. The Claimants respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (a) allowing claimant Attic Products' administrative expense claims against the Claim Entities debtors in amount of $120,983.65, (b) allowing claimant Dan Dee's administrative expense claims against the Claim Entities debtors in amount of $657,940.31, (c) allowing claimant Dewan & Sons' administrative expense claims against the Claim Entities

{00040282.2 }

debtors in amount of $456,222.01,and (d) ordering that the payment of those administrative claim be made within seven days, and granting such other relief as is just and proper.

Dated: November 27, 2024                          **THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner
824 N. Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111
Email: rosner@teamrosner.com

**SARACHEK LAW FIRM**

*/s/ Zachary E. Mazur*
Zachary E. Mazur (NY Bar No. 5706726)
670 White Plains Road, Penthouse Suite
Scarsdale, NY 10583
Telephone: 646 519-4396
Email: zachary@sarachecklawfirm.com

*Attorneys for Claimants*