# Exhibit C

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS INC., *et al.*, | Case No. 24-11967 (JKS) (Jointly Administered) |
| Debtors*1*. | |

## DECLARATION OF DAN DEE INTERNATIONAL, LLC IN SUPPORT OF MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIMS OF TRADE CREDITORS

1.  I am an authorized representative for Dan Dee International, LLC.

2.  I have personal knowledge of the facts herein, including access to and review of business records and information for Dan Dee International, LLC.

3.  I make this declaration in support of the motion of Attic Products, Dan Dee International, LLC, and Dewan & Sons for allowance and payment of administrative claims of trade creditors (the "Motion").

4.  To the best of my knowledge and belief formed after a reasonable inquiry, including review of business records, Big Lots and its subsidiaries have taken possession of goods, shipped by Dan Dee International, LLC, either within 20 days before the Petition Date of Sept. 9, 2024 or after the Petition Date. These goods are summarized in **Exhibit 1** attached hereto.

5.  The purchase orders, invoices, and forwarder cargo receipts for these goods orders are attached hereto as **Exhibit 2**. These documents are true and accurate copies of business records of Dan Dee International, LLC's fulfillment of Big Lots purchase orders.

---

1 The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

6.  The invoices for these orders are unpaid, and no money or other valuable consideration has been received for the goods delivered.

7.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Date: November 22, 2024

Paul Berger
Chief Financial Officer
Dan Dee International, LLC

# Exhibit 1

## Summary of Claims

# EXHIBIT 1

*In re* **Big Lots, Inc., Case No. 24-11967-JKS**
**Claimant: Dan Dee International, LLC**

| Invoice | Big Lots PO Number | Order Total | FCR Issue Date | Big Lots Entity | Received by Big Lots | Claim Type |
|---|---|---|---|---|---|---|
| INVL2404068 | 95264538 | $ 12,409.92 | 18-Aug-24 | AVDC | 4-Sep-24 | 503(b)(9) |
| INVL2404069 | 95264538 | $ 5,107.20 | 10-Aug-24 | AVDC | 28-Aug-24 | 503(b)(9) |
| INVL2404070 | 95264539 | $ 17,727.24 | 18-Aug-24 | CSC Distribution | 24-Sep-24 | Post-Petition Delivery |
| INVL2404071 | 95264539 | $ 7,204.80 | 16-Aug-24 | CSC Distribution | 14-Oct-24 | Post-Petition Delivery |
| INVL2404072 | 95264540 | $ 13,427.16 | 4-Aug-24 | Closeout Distribution | 6-Sep-24 | 503(b)(9) |
| INVL2404073 | 95264540 | $ 7,980.00 | 4-Aug-24 | Closeout Distribution | 6-Sep-24 | 503(b)(9) |
| INVL2404074 | 95264541 | $ 13,162.68 | 6-Aug-24 | Durant DC | 6-Sep-24 | 503(b)(9) |
| INVL2404075 | 95264541 | $ 4,605.60 | 20-Aug-24 | Durant DC | 23-Sep-24 | Post-Petition Delivery |
| INVL2404076 | 95264542 | $ 9,114.72 | 18-Aug-24 | Big Lots Stores | 19-Sep-24 | Post-Petition Delivery |
| INVL2404077 | 95264542 | $ 7,752.00 | 14-Aug-24 | Big Lots Stores | 9-Oct-24 | Post-Petition Delivery |
| INVL2404078 | 95192364 | $ 13,224.96 | 4-Aug-24 | AVDC | 22-Aug-24 | 503(b)(9) |
| INVL2404079 | 95192364 | $ 23,034.96 | 29-Jul-24 | AVDC | 21-Aug-24 | 503(b)(9) |
| INVL2404080 | 95192365 | $ 18,597.60 | 23-Jul-24 | CSC Distribution | 31-Aug-24 | 503(b)(9) |
| INVL2404081 | 95192365 | $ 30,731.22 | 19-Jul-24 | CSC Distribution | 26-Aug-24 | 503(b)(9) |
| INVL2404084 | 95192367 | $ 12,760.02 | 22-Jul-24 | Durant DC | 28-Aug-24 | 503(b)(9) |
| INVL2404085 | 95192367 | $ 20,935.98 | 22-Jul-24 | Durant DC | 28-Aug-24 | 503(b)(9) |
| INVL2404086 | 95192368 | $ 19,062.54 | 22-Jul-24 | Big Lots Stores | 30-Aug-24 | 503(b)(9) |
| INVL2404087 | 95192368 | $ 31,269.42 | 22-Jul-24 | Big Lots Stores | 30-Aug-24 | 503(b)(9) |
| INVL2404088 | 95192369 | $ 4,959.36 | 4-Aug-24 | AVDC | 22-Aug-24 | 503(b)(9) |
| INVL2404089 | 95192369 | $ 22,120.02 | 29-Jul-24 | AVDC | 21-Aug-24 | 503(b)(9) |
| INVL2404090 | 95193770 | $ 5,682.60 | 7-Jul-24 | CSC Distribution | 30-Aug-24 | 503(b)(9) |
| INVL2404091 | 95193770 | $ 26,910.00 | 7-Jul-24 | CSC Distribution | 30-Aug-24 | 503(b)(9) |
| INVL2404095 | 95193772 | $ 18,191.16 | 22-Jul-24 | Durant DC | 28-Aug-24 | 503(b)(9) |
| INVL2404096 | 95193773 | $ 5,579.28 | 13-Jul-24 | Big Lots Stores | 15-Sep-24 | Post-Petition Delivery |
| INVL2404097 | 95193773 | $ 27,125.28 | 13-Jul-24 | Big Lots Stores | 15-Sep-24 | Post-Petition Delivery |
| INVL2404098 | 95232443 | $ 29,720.16 | 29-Jul-24 | AVDC | 22-Aug-24 | 503(b)(9) |
| INVL2404099 | 95232444 | $ 37,409.40 | 23-Jul-24 | CSC Distribution | 29-Aug-24 | 503(b)(9) |
| INVL2404100 | 95232445 | $ 39,991.56 | 28-Jul-24 | Closeout Distribution | 6-Sep-24 | 503(b)(9) |
| INVL2404101 | 95232446 | $ 25,555.32 | 22-Jul-24 | Durant DC | 27-Aug-24 | 503(b)(9) |
| INVL2404102 | 95232447 | $ 38,246.40 | 28-Jul-24 | Big Lots Stores | 14-Sep-24 | Post-Petition Delivery |
| INVL2404103 | 95264533 | $ 17,111.25 | 4-Aug-24 | AVDC | 23-Aug-24 | 503(b)(9) |
| INVL2404104 | 95264534 | $ 23,627.00 | 1-Aug-24 | CSC Distribution | 6-Sep-24 | 503(b)(9) |
| INVL2404105 | 95264535 | $ 27,113.75 | 1-Aug-24 | Closeout Distribution | 3-Sep-24 | 503(b)(9) |
| INVL2404106 | 95264536 | $ 14,725.75 | 4-Aug-24 | Durant DC | 4-Sep-24 | 503(b)(9) |

# EXHIBIT 1

| Invoice | Big Lots PO Number | Order Total | FCR Issue Date | Big Lots Entity | Received by Big Lots | Claim Type |
|---|---|---|---|---|---|---|
| INVL2404107 | 95264537 | $ 25,764.00 | 29-Jul-24 | Big Lots Stores | 3-Oct-24 | Post-Petition Delivery |

| | | |
|---|---|---|
| **Total Post-Petition Delivery** | $ | 143,119.32 |
| **Total 503(b)(9)** | $ | 514,820.99 |
| **Grand Total** | $ | 657,940.31 |

# Exhibit 2

Invoices, FCRs, and Big Lots Purchase Orders

# DAN DEE INTERNATIONAL , LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

---

# INVOICE

---

**Invoice No.:** INVL2404068 | **Invoice Date.:** August 01, 2024

**Sold To:**   AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Delivery To:**   18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB SHENZHEN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO SPAIN / 066E

**Port of Loading:** YANTIAN

**Ship on or about:** August 08, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95264538 | | 2,484 | EA | 2.380/EA | 5,911.920 |
| **SKU No.:** 810652452 | | 207 | CTNS | | |
| LONG STRIPED SANTA HAT W/ BELL | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| | | | | | |
| **P/O No.:** 95264538 | | 2,280 | EA | 2.850/EA | 6,498.000 |
| **SKU No.:** 810732467 | | 190 | CTNS | | |
| 33 INCH DISCO SANTA HAT | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | SHANTOU CHENGHAI YIXIN ARTS & CRAFTS CO., LTD XINYE ROAD ON THE 2ND OF LAIMEI INDUSTRIAL ZONE, FENGXIANG STREET, CHENGHAI, SHANTOU, GUANGDONG, CHI SHANTOU,, GUANGDONG 515800, CHINA | | | | |
| **Total:** | **(397 CTNS)** | | | **4,764** | **12,409.920** |

**TOTAL (USD) DOLLARS : TWELVE THOUSAND FOUR HUNDRED NINE AND CENTS NINETY-TWO ONLY.**

---

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
OOLU8882010/OOLJXY1267/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
OOLU8882010/OOLJXY1267/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES
PO#95264538

SKU#810652452
DEPT#360
CARTON 1- OF 207
MADE IN CHINA
PO#95264538
SKU#810732467
DEPT#360
CARTON 1- OF 190
MADE IN CHINA

# DAN DEE INTERNATIONAL , LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

## PACKING LIST

**Invoice No.:** INVL2404068

**Sold To:**      AVDC, LLC
          18880 NAVAJO ROAD
          APPLE VALLEY, CA 92307
          USA

**Shipment Terms:** FOB SHENZHEN

**Country of Origin:** CHINA

**Vessel / Voyage:** COSCO SPAIN / 066E

**Ship on or about:** August 08, 2024

**Invoice Date:** August 01, 2024

**Delivery To:**      18880 NAVAJO ROAD
          APPLE VALLEY, CA 92307
          USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** LONG BEACH, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|
| **P/O No.:** 95264538 | 2,484 EA | 273.24 | 368.00 | 4.838 |
| **SKU No.:** 810652452 | 207 CTNS | | | |
| LONG STRIPED SANTA HAT W/ BELL          No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | |
| | | | | |
| **P/O No.:** 95264538 | 2,280 EA | 205.20 | 264.00 | 4.440 |
| **SKU No.:** 810732467 | 190 CTNS | | | |
| 33 INCH DISCO SANTA HAT          No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | |
| **Total:**      (397 CTNS) | 4,764 | 478.44 | 632.00 | 9.278 |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
OOLU8882010/OOLJXY1267/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
OOLU8882010/OOLJXY1267/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES
PO#95264538
SKU#810652452
DEPT#360
CARTON 1- OF 207
MADE IN CHINA
PO#95264538
SKU#810732467

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-SZP-2401614**

| | |
|---|---|
| Maker/Supplier: **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404068** |
| Buyer/Consignee: **AVDC, LLC**<br>**18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated: **August 01, 2024** |
| Shipment From : **SHENZHEN**       To : **APPLE VALLEY, CA** | Date of Receipt of Cargo<br>**July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br>PO#95264538<br>SKU#810652452<br>DEPT#360<br>CARTON 1- OF 207<br>MADE IN CHINA<br>PO#95264538<br>SKU#810732467<br>DEPT#360<br>CARTON 1- OF 190<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>       5101 S. BROAD STREET<br>       PHILADELPHIA, PA 19112-1404, U.S.A.<br>       ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>       1300 SOUTH MINT STREET SUITE 200<br>       CHARLOTTE NC 28203 USA<br>       TEL: 704-593-6329<br>       EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>OOLU8882010 (PART)    SEAL# OOLJXY1267       40H  DRY | | |
| | | PO#95264538<br>SKU#810652452<br>LONG STRIPED SANTA HAT W/ BELL<br>SKU#810732467<br>33 INCH DISCO SANTA HAT<br><br>SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 397 CARTONS | | 9.278 CBM | 632.00 KGS |

```
================================================================
TOTAL : THREE HUNDRED NINETY-SEVEN (397) CARTONS ONLY
```

"FREIGHT COLLECT"

SHIPMENT PER S.S. "COSCO SPAIN" VOY NO. 066E    DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT August 8, 2024. CARGO RECEIVED ON July 26, 2024.

| | |
|---|---|
| **THIS IS NOT A DOCUMENT OF TITLE**<br><br>The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.<br><br>No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | **SHENZHEN**          **August 1, 2024**<br><br>(Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>*For and on behalf of*<br>*Yusen Logistics (Shenzhen) Co., Ltd.*<br><br>*Authorized Signature(s)*          As Agent<br><br>(Authorized Signature)          V1 |

ORIGINAL

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2404990 (01/01) ✎ | 🖨 | 5 | 2024-05-13 2024-07-23 | 95264538 | CFS | YANTIAN APPLE VALLEY, CA | CONFIRMED | S/O No. : SZPA1006957 Cargo Delivery : 2024-07-26 (112 ctn, 2.555 cbm, 213.000 kgs) <br> Doc. Submission : 2024-08-01 B/L : CMDUSHZ6502678 MAWB no. <br> FCR No: CNS-SZP-2401615 FCR Draft First Sent Date (GMT+8) : 08/07/2024 18:56:00 FCR Draft Last Sent Date (GMT+8) : 08/07/2024 18:56:00 FCR Confirmation Date (GMT+8) : 08/09/2024 19:00:00 by SYSTEM FCR Emailed (GMT+8) : 08/16/2024 | 📄 | (CMDU) INTERASIA ACCELERATE V.0TXI3E1MA ETD YTN : 2024-08-10 ATD YTN : 2024-08-10 POD : LOS ANGELES, CA ETA APV : 2024-09-02 VGM Cut-off : 2024-08-05 12:00 |
| CNS-2404989 (01/01) ✎ | 🖨 | 5 | 2024-05-13 2024-07-23 | 95264538 INVL2404608 | CFS | YANTIAN APPLE VALLEY, CA | CONFIRMED | S/O No. : SZPA1006958 Cargo Delivery : 2024-07-26 (397 ctn, 9.278 cbm, 632.000 kgs) <br> Doc. Submission : 2024-08-01 B/L : OOLU2150918910 MAWB no. <br> FCR No: CNS-SZP-2401614 FCR Draft First Sent Date (GMT+8) : 08/08/2024 01:21:00 FCR Draft Last Sent Date (GMT+8) : 08/08/2024 01:21:00 FCR Confirmation Date (GMT+8) : 08/12/2024 06:00:00 by SYSTEM FCR Emailed (GMT+8) : 08/16/2024 | 📄 | (OOLU) OOCL ROTTERDAM V.149E ETD YTN : 2024-08-18 ATD YTN POD : LONG BEACH, CA ETA APV : 2024-09-09 VGM Cut-off : 2024-08-01 12:00 |

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.   CNS-SZP-2401614

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404068** |
| Buyer/Consignee : AVDC, LLC<br>18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA | Dated: **August 01, 2024** |
| Shipment From : **SHENZHEN**    To : **APPLE VALLEY, CA** | Date of Receipt of Cargo **July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br>PO#95264538<br>SKU#810652452<br>DEPT#360<br>CARTON 1- OF 207<br>MADE IN CHINA<br>PO#95264538<br>SKU#810732467<br>DEPT#360<br>CARTON 1- OF 190<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>     5101 S. BROAD STREET<br>     PHILADELPHIA, PA 19112-1404, U.S.A.<br>     ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>     1300 SOUTH MINT STREET SUITE 200<br>     CHARLOTTE NC 28203 USA<br>     TEL: 704-593-6329<br>     EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>OOLU8882010 (PART)    SEAL# OOLJXY1267        40H  DRY<br><br><br>PO#95264538<br>SKU#810652452<br>LONG STRIPED SANTA HAT W/ BELL<br>SKU#810732467<br>33 INCH DISCO SANTA HAT<br><br>SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 397 CARTONS | | 9.278 CBM | 632.00 KGS |

TOTAL : THREE HUNDRED NINETY-SEVEN (397) CARTONS ONLY

*OOCL ROTTERDAM V.149E*

"FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO SPAIN" VOY NO. 066E    DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT August 8, 2024. CARGO RECEIVED ON July 26, 2024.

*8/18/2024*

| THIS IS NOT A DOCUMENT OF TITLE | SHENZHEN                    **August 1, 2024** |
|---|---|
| **Verification Copy** | (Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |



| PO # | **95264538** |
|---|---|

Date Created        03/26/2024
Version:             0
Buyer:               RUPERT, BRIANNE
Do Not Ship Before:  07/15/2024
Cancel if not Shipped by:  07/22/2024
Must be Routed by:   06/24/2024
Payment Terms:       Wire Transfer + 60 Days Upon Receipt in DC
Freight Terms:       Collect
FOB:                 LCL-YANTIAN ，CN

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520        Fax:

---

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

---

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:   216-262-1630        Fax
E-Mail:      meegan@matsongroupllc.com

---

**ADDITIONAL COMMENTS**

---

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 7,452 | 61,209.48 | 17,517.12 | 70.387 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810445275 | RUDOLPH LIGHT UP AN | 0.00 | CN | 24 | | 2,688 | 1.90 | 5,526.53 | 09/02/2024 |
| 36006 | DX012211M0MTBI19 | PARTYGOODS | | | 12 | | 112 | 0.16 | 16,101.12 | |
| 36006007 | Dan Dee | | H33 | | | | | 5.99 | 66.310 | |
| 1 | 047475221103 | | SEA | 0.768 | E1 | | | | | |
| 360 | 810732467 | 33IN SILVER DISCO B | 0.00 | CN | 12 | | 2,280 | 2.85 | 7,099.92 | 09/02/2024 |
| 36006 | 204722-0 | SANTAHATS | | | 12 | | 190 | 0.26 | 22,777.20 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | 9.99 | 69.399 | 12.99 |
| 2 | 195511156145 | | SEA | 0.715 | A1 | | | | | |
| 360 | 810652452 | LONG STRIPED SANTA | 0.00 | CN | 12 | | 2,484 | 2.38 | 6,521.00 | 09/02/2024 |
| 36006 | FAX01026651 | SANTAHATS | | | 12 | | 207 | 0.25 | 22,331.16 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | 8.99 | 71.328 | |
| 3 | 195511088408 | | SEA | 0.715 | A1 | | | | | |

# DAN DEE INTERNATIONAL , LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

---

# INVOICE

---

**Invoice No.:** INVL2404069 | **Invoice Date.:** August 01, 2024

**Sold To:**    AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Delivery To:**    18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB SHENZHEN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** INTERASIA ACCELERATE / 0TXI3E1MA

**Port of Loading:** YANTIAN

**Ship on or about:** August 10, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95264538 | 2,688  EA | 1.900/EA | 5,107.200 |
| **SKU No.:** 810445275 | 112  CTNS | | |
| RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE          No. of Pallet: | | | |
| **HTS Code.:** 9503000073 | | | |
| **Manufacturer Name & Address** | | | |
| SHANTOU CHENGHAI YIXIN ARTS & CRAFTS CO., LTD XINYE ROAD ON THE 2ND OF LAIMEI INDUSTRIAL ZONE, FENGXIANG STREET, CHENGHAI, SHANTOU, GUANGDONG, CHI SHANTOU,, GUANGDONG 515800, CHINA | | | |
| Total:          (112 CTNS) | 2,688 | | 5,107.200 |
| TOTAL (USD) DOLLARS : FIVE THOUSAND ONE HUNDRED SEVEN AND CENTS TWENTY ONLY. | | | |
| | | | |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES
PO#95264538
SKU#810445275
DEPT#360
CARTON 1- OF 112
MADE IN CHINA

# DAN DEE INTERNATIONAL , LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

## PACKING LIST

**Invoice No.:** INVL2404069

**Sold To:** AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB SHENZHEN

**Country of Origin:** CHINA

**Vessel / Voyage:** INTERASIA ACCELERATE / 0TXI3E1MA

**Ship on or about:** August 10, 2024

**Invoice Date:** August 01, 2024

**Delivery To:** 18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** LOS ANGELES, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95264538 | | 2,688  EA | 168.00 | 213.00 | 2.555 |
| **SKU No.:** 810445275 | | 112  CTNS | | | |
| RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE | No. of Pallet: | | | | |
| **HTS Code.:** 9503000073 | | | | | |
| **Total:** | **(112 CTNS)** | **2,688** | **168.00** | **213.00** | **2.555** |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES
PO#95264538
SKU#810445275
DEPT#360
CARTON 1- OF 112
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401615**

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404069** |
| Buyer/Consignee : **AVDC, LLC** **18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated: **August 01, 2024** |
| Shipment From : **SHENZHEN**      To : **APPLE VALLEY, CA** | Date of Receipt of Cargo **July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES PO#95264538 SKU#810445275 DEPT#360 CARTON 1- OF 112 MADE IN CHINA | | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM CFS-CY BMOU4048909 (PART)    SEAL# R6721883      40H  DRY  PO#95264538 SKU#810445275 RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 112 CARTONS | | 2.555 CBM | 213.00 KGS |

==================================================================
TOTAL : ONE HUNDRED TWELVE (112) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "INTERASIA ACCELERATE" VOY NO. 0TXI3E1MA    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT August 10, 2024. CARGO RECEIVED ON July 26, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                **August 1, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** *For and on behalf of* **Yusen Logistics (Shenzhen) Co., Ltd.** *Authorized Signature(s)*                As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)              V1 |

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2404990 (01/01) ✏ | 🖨 | 5 | 2024-05-13 2024-07-23 | 95264538 *INVL2406069* | CFS | YANTIAN APPLE VALLEY, CA | CONFIRMED | S/O No. : SZPA1006957 Cargo Delivery : 2024-07-26 (112 ctn, 2.555 cbm, 213.000 kgs) Doc. Submission : 2024-08-01 B/L : CMDUSHZ6502678 MAWB no. : FCR No: CNS-SZP-2401615 FCR Draft First Sent Date (GMT+8) : 08/07/2024 18:56:00 FCR Draft Last Sent Date (GMT+8) : 08/07/2024 18:56:00 FCR Confirmation Date (GMT+8) : 08/09/2024 19:00:00 by SYSTEM FCR Emailed (GMT+8) : 08/16/2024 | 📄 | (CMDU) INTERASIA ACCELERATE V.0TXI3E1MA ETD YTN : 2024-08-10 ATD YTN : 2024-08-10 POD : LOS ANGELES, CA ETA APV : 2024-09-02 VGM Cut-off : 2024-08-05 12:00 |
| CNS-2404989 (01/01) ✏ | 🖨 | 5 | 2024-05-13 2024-07-23 | 95264538 | CFS | YANTIAN APPLE VALLEY, CA | CONFIRMED | S/O No. : SZPA1006958 Cargo Delivery : 2024-07-26 (397 ctn, 9.278 cbm, 632.000 kgs) Doc. Submission : 2024-08-01 B/L : OOLU2150918910 MAWB no. : FCR No: CNS-SZP-2401614 FCR Draft First Sent Date (GMT+8) : 08/08/2024 01:21:00 FCR Draft Last Sent Date (GMT+8) : 08/08/2024 01:21:00 FCR Confirmation Date (GMT+8) : 08/12/2024 06:00:00 by SYSTEM FCR Emailed (GMT+8) : 08/16/2024 | 📄 | (OOLU) OOCL ROTTERDAM V.149E ETD YTN : 2024-08-18 ATD YTN : POD : LONG BEACH, CA ETA APV : 2024-09-09 VGM Cut-off : 2024-08-01 12:00 |

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.   CNS-SZP-2401615

| | Maker/Supplier's INVOICE No.<br>**INVL2404069** |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Dated: **August 01, 2024** |
| Buyer/Consignee : **AVDC, LLC**<br>**18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Date of Receipt of Cargo |
| Shipment From : **SHENZHEN**      To : **APPLE VALLEY, CA** | **July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br>PO#95264538<br>SKU#810445275<br>DEPT#360<br>CARTON 1- OF 112<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>    1300 SOUTH MINT STREET SUITE 200<br>    CHARLOTTE NC 28203 USA<br>    TEL: 704-593-6329<br>    EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>BMOU4048909 (PART)     SEAL# R6721883          40H  DRY<br><br><br>PO#95264538<br>SKU#810445275<br>RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE<br><br>SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL<br><br><br>112 CARTONS | | 2.555 CBM | 213.00 KGS |

==============================================================
TOTAL : ONE HUNDRED TWELVE (112) CARTONS ONLY

           "FREIGHT COLLECT"
SHIPMENT PER S.S. "INTERASIA ACCELERATE" VOY NO. 0TXI3E1MA    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT August 10, 2024 CARGO RECEIVED ON July 26, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | | SHENZHEN                                   **August 1, 2024** |
|---|---|---|
| **Verification Copy** | | (Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | | As Agent<br><br>V1 |

Verification Copy



**PO #**　　95264538

| | |
|---|---|
| Date Created | 03/26/2024 |
| Version: | 0 |
| Buyer: | RUPERT, BRIANNE |
| Do Not Ship Before: | 07/15/2024 |
| Cancel if not Shipped by: | 07/22/2024 |
| Must be Routed by: | 06/24/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-YANTIAN ，CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520        Fax:

---

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

---

**Purchase From Vendor:**   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:  216-262-1630        Fax
E-Mail:       meegan@matsongroupllc.com

---

**ADDITIONAL COMMENTS**

---

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 7,452 | 61,209.48 | 17,517.12 | 70.387 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:   95264538

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.
"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.
"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.
"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.
"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.
"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.
"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.
"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.
1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.
2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.
3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.
4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.
6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.
7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.
8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.
9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner, without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



**IMPORTANT Terms and Conditions**

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|----------------|--------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810445275 | RUDOLPH LIGHT UP AN | 0.00 | CN | 24 | | 2,688 | 1.90 | 5,526.53 | 09/02/2024 |
| 36006 | DX012211M0MTBI19 | PARTYGOODS | | | 12 | | 112 | 0.16 | 16,101.12 | |
| 36006007 | Dan Dee | | H33 | | | | | 5.99 | 66.310 | |
| 1 | 047475221103 | | SEA | 0.768 | E1 | | | | | |
| 360 | 810732467 | 33IN SILVER DISCO B | 0.00 | CN | 12 | | 2,280 | 2.85 | 7,099.92 | 09/02/2024 |
| 36006 | 204722-0 | SANTAHATS | | | 12 | | 190 | 0.26 | 22,777.20 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | 9.99 | 69.399 | 12.99 |
| 2 | 195511156145 | | SEA | 0.715 | A1 | | | | | |
| 360 | 810652452 | LONG STRIPED SANTA | 0.00 | CN | 12 | | 2,484 | 2.38 | 6,521.00 | 09/02/2024 |
| 36006 | FAX01026651 | SANTAHATS | | | 12 | | 207 | 0.25 | 22,331.16 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | 8.99 | 71.328 | |
| 3 | 195511088408 | | SEA | 0.715 | A1 | | | | | |

**DAN DEE INTERNATIONAL, LLC**

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404070

**Invoice Date.:** August 14, 2024

**Sold To:**      CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:**     2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHENZHEN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** SAVANNAH / 021E

**Port of Loading:** YANTIAN

**Ship on or about:** August 18, 2024

**Port of Entry:** MOBILE, AL

**Destination:** MONTGOMERY, AL

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95264539 | 3,468  EA | 2.380/EA | 8,253.840 |
| **SKU No.:** 810652452 | 289  CTNS | | |
| LONG STRIPED SANTA HAT W/ BELL    No. of Pallet: | | | |
| **HTS Code.:** 9505906000 | | | |
| | | | |
| **P/O No.:** 95264539 | 3,324  EA | 2.850/EA | 9,473.400 |
| **SKU No.:** 810732467 | 277  CTNS | | |
| 33 INCH DISCO SANTA HAT    No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | |
| **Manufacturer Name & Address** SHANTOU CHENGHAI YIXIN ARTS & CRAFTS CO., LTD XINYE ROAD ON THE 2ND OF LAIMEI INDUSTRIAL ZONE, FENGXIANG STREET, CHENGHAI, SHANTOU, GUANGDONG, CHI SHANTOU,, GUANGDONG 515800, CHINA | | | |
| **Total:**       (566 CTNS) | 6,792 | | 17,727.240 |
| **TOTAL (USD) DOLLARS : SEVENTEEN THOUSAND SEVEN HUNDRED TWENTY-SEVEN AND CENTS TWENTY-FOUR ONLY.** | | | |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
FCIU9514309/OOLJXU4092/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
FCIU9514309/OOLJXU4092/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264539
SKU#810652452
DEPT#360
CARTON 1- OF 289
MADE IN CHINA
PO#95264539
SKU#810732467
DEPT#360
CARTON 1- OF 277
MADE IN CHINA

**DAN DEE INTERNATIONAL , LLC**

Seller reference

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404070 | **Invoice Date.:** August 14, 2024

**Sold To:**   CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:**   2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHENZHEN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** SAVANNAH / 021E

**Port of Loading:** YANTIAN

**Ship on or about:** August 18, 2024

**Port of Entry:** MOBILE, AL

**Destination:** MONTGOMERY, AL

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95264539 | | 3,468  EA | 381.48 | 514.00 | 6.754 |
| **SKU No.:** 810652452 | | 289  CTNS | | | |
| LONG STRIPED SANTA HAT W/ BELL | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| | | | | | |
| **P/O No.:** 95264539 | | 3,324  EA | 299.16 | 385.00 | 6.473 |
| **SKU No.:** 810732467 | | 277  CTNS | | | |
| 33 INCH DISCO SANTA HAT | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| Total: | (566 CTNS) | 6,792 | 680.64 | 899.00 | 13.227 |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
FCIU9514309/OOLJXU4092/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
FCIU9514309/OOLJXU4092/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264539
SKU#810652452
DEPT#360
CARTON 1- OF 289
MADE IN CHINA
PO#95264539

SKU#810732467
DEPT#360
CARTON 1- OF 277
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics  Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.   **CNS-SZP-2401744**

| | |
|---|---|
| Maker/Supplier:   **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404070** |
| Buyer/Consignee:   **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **August 14, 2024** |
| Shipment From :   **SHENZHEN**     To : **MONTGOMERY, AL** | Date of Receipt of Cargo **July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS STORES** **PO#95264539** **SKU#810652452** **DEPT#360** **CARTON 1- OF 289** **MADE IN CHINA** **PO#95264539** **SKU#810732467** **DEPT#360** **CARTON 1- OF 277** **MADE IN CHINA** | | **NOTIFY PARTY: GEODIS** **5101 S. BROAD STREET** **PHILADELPHIA, PA 19112-1404, U.S.A.** **ATTN: ALENA LAMINA** **ALSO NOTIFY: EDRAY 2020 LLC.** **1300 SOUTH MINT STREET SUITE 200** **CHARLOTTE NC 28203 USA** **TEL: 704-593-6329** **EMAIL: DATAQUALITY@EDRAYCPL.COM** **CFS-CY** **FCIU9514309 (PART)**    **SEAL# OOLJXU4092**    **40H DRY** | | |
| | | **PO#95264539** **SKU#810652452** **LONG STRIPED SANTA HAT W/ BELL** **SKU#810732467** **33 INCH DISCO SANTA HAT** **SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL** **SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL** | | |
| | **566 CARTONS** | | **13.227 CBM** | **899.00 KGS** |

**TOTAL : FIVE HUNDRED SIXTY-SIX (566) CARTONS ONLY**

**"FREIGHT COLLECT"**
**SHIPMENT PER S.S. "SAVANNAH" VOY NO. 021E    DISCHARGED AT MOBILE, AL**
**SAILING ON / ABOUT August 18, 2024. CARGO RECEIVED ON July 26, 2024.**

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**     **August 14, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** *For and on behalf of* **Yusen Logistics (Shenzhen) Co., Ltd.** *Authorized Signature(s)*    As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: 1 (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)     V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

| Submission No. | Print | Rev | Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405004 (01/01) ✏ | 🖶 | 5 | 2024-05-13 2024-07-23 | 95264539 | CFS | YANTIAN MONTGOMERY, AL | CONFIRMED | S/O No. : SZPM1045065 Cargo Delivery : 2024-07-26 (158 ctn, 3.604 cbm, 300.000 kgs)<br><br>Doc. Submission : 2024-08-07 B/L : ONEYHKGEG0973300 MAWB no.<br><br>FCR No: CNS-SZP-2401676 FCR Draft First Sent Date (GMT+8) : 08/12/2024 14:38:00 FCR Draft Last Sent Date (GMT+8) : 08/12/2024 14:38:00 FCR Confirmation Date (GMT+8) : 08/14/2024 15:00:00 by SYSTEM FCR Emailed (GMT+8) : 08/16/2024 | 📄 | (ONEY) MOL COURAGE V.059E ETD YTN : 2024-08-16 ATD YTN : 2024-08-16 POD : MOBILE, AL ETA MGM : 2024-09-30 VGM Cut-off : 2024-08-09 10:00 |
| CNS-2404992 (01/01) ✏ | 🖶 | 5 | 2024-05-13 2024-07-23 | 95264539 INVL2406070 | CFS | YANTIAN MONTGOMERY, AL | CONFIRMED | S/O No. : SZPM1045066 Cargo Delivery : 2024-07-26 (566 ctn, 13.227 cbm, 899.000 kgs)<br><br>Doc. Submission : 2024-08-14 B/L : OOLU2151290800 MAWB no.<br><br>FCR No: CNS-SZP-2401744 FCR Draft First Sent Date (GMT+8) : 08/16/2024 19:32:00 FCR Draft Last Sent Date (GMT+8) : 08/16/2024 19:32:00 FCR Confirmation Due Date (GMT+8) : 08/20/2024 19:32:00 | 📄 | (OOLU) SAVANNAH V.021E ETD YTN : 2024-08-18 ATD YTN : 2024-08-17 POD : MOBILE, AL ETA MGM : 2024-09-25 VGM Cut-off : 2024-08-13 12:00 |

Accept    Change Request

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401744**

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No.<br>**INVL2404070** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC**<br>**2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **August 14, 2024** |
| Shipment From : **SHENZHEN**          To : **MONTGOMERY, AL** | Date of Receipt of Cargo<br>**July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95264539<br>SKU#810652452<br>DEPT#360<br>CARTON 1- OF 289<br>MADE IN CHINA<br>PO#95264539<br>SKU#810732467<br>DEPT#360<br>CARTON 1- OF 277<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>    1300 SOUTH MINT STREET SUITE 200<br>    CHARLOTTE NC 28203 USA<br>    TEL: 704-593-6329<br>    EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>FCIU9514309 (PART)    SEAL# OOLJXU4092      40H  DRY<br><br><br>PO#95264539<br>SKU#810652452<br>LONG STRIPED SANTA HAT W/ BELL<br>SKU#810732467<br>33 INCH DISCO SANTA HAT<br><br>SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| 566 CARTONS | | | 13.227 CBM | 899.00 KGS |

=============================================================
TOTAL : FIVE HUNDRED SIXTY-SIX (566) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "SAVANNAH" VOY NO. 021E   DISCHARGED AT MOBILE, AL
SAILING ON / ABOUT August 18, 2024. CARGO RECEIVED ON July 26, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | SHENZHEN                          August 14, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |

Verification Copy



**PO #**       **95264539**

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 03/26/2024 |
| Version: | 0 |
| Buyer: | RUPERT, BRIANNE |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-YANTIAN , CN |

---

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633     Fax:  334-286-7024

---

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800     Fax: 614-278-6871

---

**Purchase From Vendor:**  1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:     MEEGAN MCGEE
Telephone:  216-262-1630     Fax
E-Mail:     meegan@matsongroupllc.com

---

**ADDITIONAL COMMENTS**

---

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 10,584 | 87,098.16 | 24,932.04 | 70.398 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor.

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:   95264539

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810445275 | RUDOLPH LIGHT UP AN | 0.00 | CN | 24 | | 3,792 | 1.90 | 7,796.35 | 09/02/2024 |
| 36006 | DX012211M0MTBI19 | PARTYGOODS | | | 12 | | 158 | 0.16 | 22,714.08 | |
| 36006007 | Dan Dee | | H33 | | | | | 5.99 | 66.311 | |
| 1 | 047475221103 | | SEA | 0.768 | E1 | | | | | |
| 360 | 810732467 | 33IN SILVER DISCO B | 0.00 | CN | 12 | | 3,324 | 2.85 | 10,350.94 | 09/02/2024 |
| 36006 | 204722-0 | SANTAHATS | | | 12 | | 277 | 0.26 | 33,206.76 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | 9.99 | 69.399 | 12.99 |
| 2 | 195511156145 | | SEA | 0.715 | A1 | | | | | |
| 360 | 810652452 | LONG STRIPED SANTA | 0.00 | CN | 12 | | 3,468 | 2.38 | 9,104.19 | 09/02/2024 |
| 36006 | FAX01026651 | SANTAHATS | | | 12 | | 289 | 0.25 | 31,177.32 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | 8.99 | 71.328 | |
| 3 | 195511088408 | | SEA | 0.715 | A1 | | | | | |

# DAN DEE INTERNATIONAL , LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404071

**Invoice Date.:** August 07, 2024

**Sold To:**    CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:**    2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHENZHEN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** MOL COURAGE / 059E

**Port of Loading:** YANTIAN

**Ship on or about:** August 15, 2024

**Port of Entry:** MOBILE, AL

**Destination:** MONTGOMERY, AL

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95264539 | 3,792  EA | 1.900/EA | 7,204.800 |
| **SKU No.:** 810445275 | 158  CTNS | | |
| RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE     No. of Pallet: | | | |
| **HTS Code.:** 9503000073 | | | |
| **Manufacturer Name & Address**  SHANTOU CHENGHAI YIXIN ARTS & CRAFTS CO., LTD XINYE ROAD ON THE 2ND OF LAIMEI INDUSTRIAL ZONE, FENGXIANG STREET, CHENGHAI, SHANTOU, GUANGDONG, CHI SHANTOU,, GUANGDONG 515800, CHINA | | | |
| Total:        (158 CTNS) | 3,792 | | 7,204.800 |
| TOTAL (USD) DOLLARS : SEVEN THOUSAND TWO HUNDRED FOUR AND CENTS EIGHTY ONLY. | | | |
| | | | |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264539
SKU#810445275
DEPT#360
CARTON 1- OF 158
MADE IN CHINA

# DAN DEE INTERNATIONAL , LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

---

# PACKING LIST

---

**Invoice No.:** INVL2404071

**Sold To:**      CSC DISTRIBUTION, LLC
                 2855 SELMA HIGHWAY
                 MONTGOMERY, AL 36108
                 USA

**Shipment Terms:** FOB SHENZHEN

**Country of Origin:** CHINA

**Vessel / Voyage:** MOL COURAGE / 059E

**Ship on or about:** August 15, 2024

**Invoice Date:** August 07, 2024

**Delivery To:**     2855 SELMA HIGHWAY
                MONTGOMERY, AL 36108
                USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** MOBILE, AL

**Destination:** MONTGOMERY, AL

| Cargo Description | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|
| **P/O No.:** 95264539 | 3,792  EA | 237.00 | 300.00 | 3.604 |
| **SKU No.:** 810445275 | 158  CTNS | | | |
| RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE     **No. of Pallet:** | | | | |
| **HTS Code.:** 9503000073 | | | | |
| **Total:**   **(158 CTNS)** | 3,792 | 237.00 | 300.00 | 3.604 |

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#95264539
SKU#810445275
DEPT#360
CARTON 1- OF 158
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401676**

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404071** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **August 07, 2024** |
| Shipment From : **SHENZHEN**      To : **MONTGOMERY, AL** | Date of Receipt of Cargo **July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS STORES** **PO#95264539** **SKU#810445275** **DEPT#360** **CARTON 1- OF 158** **MADE IN CHINA** | | **NOTIFY PARTY: GEODIS** **5101 S. BROAD STREET** **PHILADELPHIA, PA 19112-1404, U.S.A.** **ATTN: ALENA LAMINA** **ALSO NOTIFY: EDRAY 2020 LLC.** **1300 SOUTH MINT STREET SUITE 200** **CHARLOTTE NC 28203 USA** **TEL: 704-593-6329** **EMAIL: DATAQUALITY@EDRAYCPL.COM** **CFS-CY** **MOEU1405057 (PART)    SEAL# CNCS72650       45' DRY** **PO#95264539** **SKU#810445275** **RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE** **SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL** **SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL** | | |
| | **158 CARTONS** | | **3.604 CBM** | **300.00 KGS** |

**TOTAL : ONE HUNDRED FIFTY-EIGHT (158) CARTONS ONLY**

**"FREIGHT COLLECT"**
SHIPMENT PER S.S. "MOL COURAGE" VOY NO. 059E    DISCHARGED AT MOBILE, AL
SAILING ON / ABOUT August 15, 2024. CARGO RECEIVED ON July 26, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                    **August 7, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** *For and on behalf of* **Yusen Logistics (Shenzhen) Co., Ltd.** *Authorized Signature(s)*                    As Agent |
| **No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: 1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V1 |

| Submission No. | Print | Rev | Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405004 (01/01) 🖉 | 🖶 | 5 | 2024-05-13 2024-07-23 | 95264539  INVL2N04071 | CFS | YANTIAN MONTGOMERY, AL | CONFIRMED | S/O No. : SZPM1045065 Cargo Delivery : 2024-07-26 (158 ctn, 3.604 cbm, 300.000 kgs)  Doc. Submission : 2024-08-07 B/L : ONEYHKGE00973300 MAWB no.  FCR No: CNS-SZP-2401676 FCR Draft First Sent Date (GMT+8) : 08/12/2024 14:38:00 FCR Draft Last Sent Date (GMT+8) : 08/12/2024 14:38:00 FCR Confirmation Date (GMT+8) : 08/14/2024 15:00:00 by SYSTEM FCR Emailed (GMT+8) : 08/16/2024 | 📄 | (ONEY) MOL COURAGE V.059E ETD YTN : 2024-08-16 ATD YTN : 2024-08-16 POD : MOBILE, AL ETA MGM : 2024-09-30 VGM Cut-off : 2024-08-09 10:00 |
| CNS-2404992 (01/01) 🖉 | 🖶 | 5 | 2024-05-13 2024-07-23 | 95264539 | CFS | YANTIAN MONTGOMERY, AL | CONFIRMED | S/O No. : SZPM1045066 Cargo Delivery : 2024-07-26 (566 ctn, 13.227 cbm, 899.000 kgs)  Doc. Submission : 2024-08-14 B/L : OOLU2151290800 MAWB no.  FCR No: CNS-SZP-2401744 FCR Draft First Sent Date (GMT+8) : 08/16/2024 19:32:00 FCR Draft Last Sent Date (GMT+8) : 08/16/2024 19:32:00 FCR Confirmation Due Date (GMT+8) : 08/20/2024 19:32:00 | 📄 | (OOLU) SAVANNAH V.021E ETD YTN : 2024-08-18 ATD YTN : 2024-08-17 POD : MOBILE, AL ETA MGM : 2024-09-25 VGM Cut-off : 2024-08-13 12:00 |

Accept    Change Request

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.   **CNS-SZP-2401676**

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404071** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **August 07, 2024** |
| Shipment From : **SHENZHEN**    To : **MONTGOMERY, AL** | Date of Receipt of Cargo **July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES  PO#95264539 SKU#810445275 DEPT#360 CARTON 1- OF 158 MADE IN CHINA | | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM  CFS-CY  MOEU1405057 (PART)    SEAL# CNCS72650      45' DRY   PO#95264539 SKU#810445275 RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE  SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 158 CARTONS | | 3.604 CBM | 300.00 KGS |

==============================================================
TOTAL : ONE HUNDRED FIFTY-EIGHT (158) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "MOL COURAGE" VOY NO. 059E   DISCHARGED AT MOBILE, AL
SAILING ON / ABOUT August 15, 2024. CARGO RECEIVED ON July 26, 2024.

8/16/2024

| THIS IS NOT A DOCUMENT OF TITLE | SHENZHEN                    August 7, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.)  **YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed *** *** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent  V1 |

Verification Copy



**PO #**          **95264539**

| | |
|---|---|
| Date Created | 03/26/2024 |
| Version: | 0 |
| Buyer: | RUPERT, BRIANNE |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-YANTIAN ， CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

SHIP TO

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633       Fax:  334-286-7024

---

BILL TO

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:     MEEGAN MCGEE
Telephone:   216-262-1630      Fax
E-Mail:      meegan@matsongroupllc.com

---

ADDITIONAL COMMENTS

---

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| | 10,584 | 87,098.16 | 24,932.04 | 70.398 |

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.
"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.
"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.
"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.
"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.
"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.
"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.
"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.
1.       Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.
2.       Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.
3.       Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.
4.       Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.       Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.
6.       Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.
7.       Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.
8.       Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.
9.       Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



Case 24-11967-JKS   Doc 1125-1   Filed 07/24/25   Page 54 of 418

| | |
|---|---|
| AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.<br>27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs. | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | | EAS Tag | PDQ Pkg | | |
| 360 | 810445275 | RUDOLPH LIGHT UP AN | 0.00 | CN | 24 | | | 3,792 | 1.90 | 7,796.35 | 09/02/2024 |
| 36006 | DX012211M0MTBI19 | PARTYGOODS | | | 12 | | | 158 | 0.16 | 22,714.08 | |
| 36006007 | Dan Dee | | H33 | | | | | | 5.99 | 66.311 | |
| 1 | 047475221103 | | SEA | 0.768 | E1 | | | | | | |
| 360 | 810732467 | 33IN SILVER DISCO B | 0.00 | CN | 12 | | | 3,324 | 2.85 | 10,350.94 | 09/02/2024 |
| 36006 | 204722-0 | SANTAHATS | | | 12 | | | 277 | 0.26 | 33,206.76 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | | 9.99 | 69.399 | 12.99 |
| 2 | 195511156145 | | SEA | 0.715 | A1 | | | | | | |
| 360 | 810652452 | LONG STRIPED SANTA | 0.00 | CN | 12 | | | 3,468 | 2.38 | 9,104.19 | 09/02/2024 |
| 36006 | FAX01026651 | SANTAHATS | | | 12 | | | 289 | 0.25 | 31,177.32 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | | 8.99 | 71.328 | |
| 3 | 195511088408 | | SEA | 0.715 | A1 | | | | | | |

# DAN DEE INTERNATIONAL , LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404072

**Invoice Date.:** August 01, 2024

**Sold To:**   CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:**   50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB SHENZHEN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL BANGKOK / 0UPILE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** August 03, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95264540 | | 3,012    EA | 2.380/EA | 7,168.560 |
| **SKU No.:** 810652452 | | 251   CTNS | | |
| LONG STRIPED SANTA HAT W/ BELL | No. of Pallet: | | | |
| **HTS Code.:** 9505906000 | | | | |
| | | | | |
| **P/O No.:** 95264540 | | 2,196    EA | 2.850/EA | 6,258.600 |
| **SKU No.:** 810732467 | | 183   CTNS | | |
| 33 INCH DISCO SANTA HAT | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| | **Manufacturer Name & Address** | | | |
| | SHANTOU CHENGHAI YIXIN ARTS & CRAFTS CO., LTD XINYE ROAD ON THE 2ND OF LAIMEI INDUSTRIAL ZONE, FENGXIANG STREET, CHENGHAI, SHANTOU, GUANGDONG, CHI SHANTOU,, GUANGDONG 515800, CHINA | | | |
| | **Total:** (434 CTNS) | 5,208 | | 13,427.160 |
| **TOTAL (USD) DOLLARS : THIRTEEN THOUSAND FOUR HUNDRED TWENTY-SEVEN AND CENTS SIXTEEN ONLY.** | | | | |
| | | | | |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
CMAU5837099/R7367092/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
CMAU5837099/R7367092/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264540
SKU#810652452
DEPT#360
CARTON 1- OF 251
MADE IN CHINA
PO#95264540
SKU#810732467
DEPT#360
CARTON 1- OF 183
MADE IN CHINA

**DAN DEE INTERNATIONAL, LLC** Seller reference

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404072

**Invoice Date.:** August 01, 2024

**Sold To:**   CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:**   50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB SHENZHEN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL BANGKOK / 0UPILE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** August 03, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95264540 | | 3,012 EA | 331.32 | 447.00 | 5.866 |
| **SKU No.:** 810652452 | | 251 CTNS | | | |
| LONG STRIPED SANTA HAT W/ BELL | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| | | | | | |
| **P/O No.:** 95264540 | | 2,196 EA | 197.64 | 254.00 | 4.277 |
| **SKU No.:** 810732467 | | 183 CTNS | | | |
| 33 INCH DISCO SANTA HAT | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** (434 CTNS) | | 5,208 | 528.96 | 701.00 | 10.143 |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
CMAU5837099/R7367092/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
CMAU5837099/R7367092/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264540
SKU#810652452
DEPT#360
CARTON 1- OF 251
MADE IN CHINA
PO#95264540

SKU#810732467
DEPT#360
CARTON 1- OF 183
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.   **CNS-SZP-2401609**

| | |
|---|---|
| Maker/Supplier: **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404072** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC** **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **August 01, 2024** |
| Shipment From : **SHENZHEN**       To : **TREMONT, PA** | Date of Receipt of Cargo **July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES PO#95264540 SKU#810652452 DEPT#360 CARTON 1- OF 251 MADE IN CHINA PO#95264540 SKU#810732467 DEPT#360 CARTON 1- OF 183 MADE IN CHINA | | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM CFS-CY CMAU5837099 (PART)    SEAL# R7367092        40H DRY | | |
| | | PO#95264540 SKU#810652452 LONG STRIPED SANTA HAT W/ BELL SKU#810732467 33 INCH DISCO SANTA HAT SHIP TO CODE & LOCATION : 00874-TREMONT, PA SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 434 CARTONS | | 10.143 CBM | 701.00 KGS |

TOTAL : FOUR HUNDRED THIRTY-FOUR (434) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "OOCL BANGKOK" VOY NO. 0UPILE1MA    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT August 4, 2024. CARGO RECEIVED ON July 26, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**        **August 1, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** *For and on behalf of* **Yusen Logistics (Shenzhen) Co., Ltd.** *Authorized Signature(s)*       As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)       V1 |

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405017 (01/01) ✏ | 🖨 | 4 | 2024-05-13 2024-07-23 | 95264540 | CFS | YANTIAN TREMONT, PA | CONFIRMED | S/O No : SZPT1044503<br>Cargo Delivery : 2024-07-26<br>(175 ctn, 3.992 cbm, 333.000 kgs)<br><br>Doc. Submission : 2024-08-01<br>B/L : CMDUSHZ6482415<br>MAWB no.<br><br>FCR No: CNS-SZP-2401610<br>FCR Draft First Sent Date (GMT+8) : 08/08/2024 08:31:00<br>FCR Draft Last Sent Date (GMT+8) : 08/08/2024 08:31:00<br>FCR Confirmation Date (GMT+8) : 08/12/2024 09:00:01 by SYSTEM<br>FCR Emailed (GMT+8) : 08/16/2024 | 📄 | (CMDU) OOCL BANGKOK V.0UFILE1MA<br>ETD YTN : 2024-08-04<br>ATD YTN : 2024-08-04<br>POD : NEW YORK, NY<br>ETA TOX : 2024-09-11<br>VGM Cut-off : 2024-07-30 12:00 |
| CNS-2405009 (01/01) ✏ | 🖨 | 4 | 2024-05-13 2024-07-23 | 95264540<br>INVL240472 | CFS | YANTIAN TREMONT, PA | CONFIRMED | S/O No : SZPT1044522<br>Cargo Delivery : 2024-07-26<br>(434 ctn, 10.143 cbm, 701.000 kgs)<br><br>Doc. Submission : 2024-08-01<br>B/L : CMDUSHZ6482415<br>MAWB no.<br><br>FCR No: CNS-SZP-2401609<br>FCR Draft First Sent Date (GMT+8) : 08/07/2024 18:55:00<br>FCR Draft Last Sent Date (GMT+8) : 08/07/2024 18:55:00<br>FCR Confirmation Date (GMT+8) : 08/09/2024 19:00:00 by SYSTEM<br>FCR Emailed (GMT+8) : 08/16/2024 | 📄 | (CMDU) OOCL BANGKOK V.0UFILE1MA<br>ETD YTN : 2024-08-04<br>ATD YTN : 2024-08-04<br>POD : NEW YORK, NY<br>ETA TOX : 2024-09-11<br>VGM Cut-off : 2024-07-30 12:00 |

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SZP-2401609

| | | |
|---|---|---|
| | | Maker/Supplier's INVOICE No.<br>**INVL2404072** |
| Maker/Supplier : | DAN DEE INTERNATIONAL , LLC | Dated: **August 01, 2024** |
| Buyer/Consignee : | CLOSEOUT DISTRIBUTION, LLC<br>50 RAUSCH CREEK RD, TREMONT, PA 17981, USA | Date of Receipt of Cargo<br>**July 26, 2024** |
| Shipment From : | SHENZHEN       To : TREMONT, PA | |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95264540<br>SKU#810652452<br>DEPT#360<br>CARTON 1- OF 251<br>MADE IN CHINA<br>PO#95264540<br>SKU#810732467<br>DEPT#360<br>CARTON 1- OF 183<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>        5101 S. BROAD STREET<br>        PHILADELPHIA, PA 19112-1404, U.S.A.<br>        ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>        1300 SOUTH MINT STREET SUITE 200<br>        CHARLOTTE NC 28203 USA<br>        TEL: 704-593-6329<br>        EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>CMAU5837099 (PART)    SEAL# R7367092        40H DRY<br><br><br><br>PO#95264540<br>SKU#810652452<br>LONG STRIPED SANTA HAT W/ BELL<br>SKU#810732467<br>33 INCH DISCO SANTA HAT<br><br>SHIP TO CODE & LOCATION : 00874-TREMONT, PA<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL<br><br><br>434 CARTONS | | 10.143 CBM | 701.00 KGS |

=========================================================
TOTAL : FOUR HUNDRED THIRTY-FOUR (434) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "OOCL BANGKOK" VOY NO. 0UPILE1MA    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT August 4, 2024 CARGO RECEIVED ON July 26, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | |
|---|---|
| **Verification Copy** | SHENZHEN                    **August 1, 2024**<br>- - - - - - - - - - - - - - - - - - - - - - - -<br>(Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |



| **PO #** | **95264540** |
| --- | --- |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
| --- | --- |
| Date Created | 03/26/2024 |
| Version: | 0 |
| Buyer: | RUPERT, BRIANNE |
| Do Not Ship Before: | 07/08/2024 |
| Cancel if not Shipped by: | 07/15/2024 |
| Must be Routed by: | 06/17/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-YANTIAN，CN |

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:  570-695-2862

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:   216-262-1630        Fax
E-Mail:       meegan@matsongroupllc.com

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
| --- | --- | --- | --- |
| 9,408 | 74,173.92 | 21,407.16 | 70.144 |

OFFICE-COPY



OFFICE-COPY

# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


OFFICE-COPY Case 24-11967-JKS — **IMPORTANT Terms and Conditions** Doc 1764-7 Filed 0?/22/25 Page ?? of 418    PO#: 95264540

Page 3 of 6

title to those Goods referenced in the applicable PO.  The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer.  A BOL in duplicate must accompany all Vendor invoices.  A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual.  Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period").  After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods.  Each party shall remain responsible (hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms.  For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law.  As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification.  Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records").  Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative.  Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit.  In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice.  Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof.  Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs.  Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls.  A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations.  In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate.  Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above.  When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date.  Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law.  Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods.  Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality.  Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information").  "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods.  Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties.  Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry.  Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13.  Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods.  Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms.  In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws.  In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected.  The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption.  Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws").  Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor.  Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | | EAS Tag | PDQ Pkg | | |
| 360 | 810445275 | RUDOLPH LIGHT UP AN | 0.00 | CN | 24 | | | 4,200 | 1.90 | 8,635.20 | 09/02/2024 |
| 36006 | DX012211M0MTBI19 | PARTYGOODS | | | 12 | | | 175 | 0.16 | 25,158.00 | |
| 36006007 | Dan Dee | | H33 | | | | | | 5.99 | 66.311 | |
| 1 | 047475221103 | | SEA | 0.768 | E1 | | | | | | |
| 360 | 810732467 | 33IN SILVER DISCO B | 0.00 | CN | 12 | | | 2,196 | 2.85 | 6,838.34 | 09/02/2024 |
| 36006 | 204722-0 | SANTAHATS | | | 12 | | | 183 | 0.26 | 21,938.04 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | | 9.99 | 69.399 | 12.99 |
| 2 | 195511156145 | | SEA | 0.715 | A1 | | | | | | |
| 360 | 810652452 | LONG STRIPED SANTA | 0.00 | CN | 12 | | | 3,012 | 2.38 | 7,907.10 | 09/02/2024 |
| 36006 | FAX01026651 | SANTAHATS | | | 12 | | | 251 | 0.25 | 27,077.88 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | | 8.99 | 71.328 | |
| 3 | 195511088408 | | SEA | 0.715 | A1 | | | | | | |

# DAN DEE INTERNATIONAL , LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404073

**Invoice Date.:** August 01, 2024

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB SHENZHEN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL BANGKOK / 0UPILE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** August 03, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95264540 | 4,200     EA | 1.900/EA | 7,980.000 |
| **SKU No.:** 810445275 | 175   CTNS | | |
| RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE          No. of Pallet: | | | |
| **HTS Code.:** 9503000073 | | | |
| | | | |
| **Manufacturer Name & Address** | | | |
| SHANTOU CHENGHAI YIXIN ARTS & CRAFTS CO., LTD XINYE ROAD ON THE 2ND OF LAIMEI INDUSTRIAL ZONE, FENGXIANG STREET, CHENGHAI, SHANTOU, GUANGDONG, CHI SHANTOU,, GUANGDONG 515800, CHINA | | | |
| **Total:**           **(175 CTNS)** | | 4,200 | 7,980.000 |

TOTAL (USD) DOLLARS : SEVEN THOUSAND NINE HUNDRED EIGHTY ONLY.

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
CMAU5837099/R7367092/40H

We certify that there is no wood packing material in the shipment.

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
CMAU5837099/R7367092/40H

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264540
SKU#810445275
DEPT#360
CARTON 1- OF 175
MADE IN CHINA

# DAN DEE INTERNATIONAL , LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

## PACKING LIST

**Invoice No.:** INVL2404073

**Invoice Date.:** August 01, 2024

**Sold To:**  CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:**  50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB SHENZHEN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL BANGKOK / 0UPILE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** August 03, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95264540 | | 4,200   EA | 262.50 | 333.00 | 3.992 |
| **SKU No.:** 810445275 | | 175   CTNS | | | |
| RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE | **No. of Pallet:** | | | | |
| **HTS Code.:** 9503000073 | | | | | |
| **Total:** | **(175 CTNS)** | **4,200** | **262.50** | **333.00** | **3.992** |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
CMAU5837099/R7367092/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
CMAU5837099/R7367092/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264540
SKU#810445275
DEPT#360
CARTON 1- OF 175
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.   **CNS-SZP-2401610**

| | |
|---|---|
| Maker/Supplier :   **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No.  **INVL2404073** |
| Buyer/Consignee :   **CLOSEOUT DISTRIBUTION, LLC**  **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated:   **August 01, 2024** |
| Shipment From :   **SHENZHEN**            To :   **TREMONT, PA** | Date of Receipt of Cargo  **July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                    NOTIFY PARTY: GEODIS
STORES                                    5101 S. BROAD STREET
PO#95264540                               PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#810445275                             ATTN: ALENA LAMINA
DEPT#360                    ALSO NOTIFY: EDRAY 2020 LLC.
CARTON 1-  OF 175                         1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                             CHARLOTTE NC 28203 USA
                                          TEL: 704-593-6329
                                          EMAIL: DATAQUALITY@EDRAYCPL.COM

                            CFS-CY

                            CMAU5837099 (PART)      SEAL# R7367092           40H  DRY


                            PO#95264540
                            SKU#810445275
                            RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE

                            SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                            SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                            MATERIAL


                            175 CARTONS              3.992 CBM     333.00 KGS
                            ===================================================
                            TOTAL : ONE HUNDRED SEVENTY-FIVE (175) CARTONS ONLY

                                    "FREIGHT COLLECT"
SHIPMENT PER S.S. "OOCL BANGKOK" VOY NO. 0UPILE1MA   DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT August 4, 2024. CARGO RECEIVED ON July 26, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                    **August 1, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)  **YUSEN LOGISTICS**  *For and on behalf of*  Yusen Logistics (Shenzhen) Co., Ltd.  *Authorized Signature(s)*              As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**  (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                      V1 |

ORIGINAL

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405017 (01/01) 🖨 | 🖨 | 4 | 2024-05-13 2024-07-23 | 95264540 [INVL240407]3 | CFS | YANTIAN TREMONT, PA | CONFIRMED | S/O No. : SZPT1044523 Cargo Delivery : 2024-07-26 (175 ctn, 3.992 cbm, 333.000 kgs) Doc. Submission : 2024-08-01 B/L : CMDUSHZ6482415 MAWB no. FCR No: CNS-SZP-2401610 FCR Draft First Sent Date (GMT+8) : 08/08/2024 08:31:00 FCR Draft Last Sent Date (GMT+8) : 08/08/2024 08:31:00 FCR Confirmation Date (GMT+8) : 08/12/2024 09:00:01 by SYSTEM FCR Emailed (GMT+8) : 08/16/2024 | 📄 | (CMDU) OOCL BANGKOK V.0UFILE1MA ETD YTN : 2024-08-04 ATD YTN : 2024-08-04 POD : NEW YORK, NY ETA TOX : 2024-09-11 VGM Cut-off : 2024-07-30 12:00 |
| CNS-2405009 (01/01) 🖨 | 🖨 | 4 | 2024-05-13 2024-07-23 | 95264540 | CFS | YANTIAN TREMONT, PA | CONFIRMED | S/O No. : SZPT1044522 Cargo Delivery : 2024-07-26 (434 ctn, 10.143 cbm, 701.000 kgs) Doc. Submission : 2024-08-01 B/L : CMDUSHZ6482415 MAWB no. FCR No: CNS-SZP-2401609 FCR Draft First Sent Date (GMT+8) : 08/07/2024 18:55:00 FCR Draft Last Sent Date (GMT+8) : 08/07/2024 18:55:00 FCR Confirmation Date (GMT+8) : 08/09/2024 19:00:00 by SYSTEM FCR Emailed (GMT+8) : 08/16/2024 | 📄 | (CMDU) OOCL BANGKOK V.0UFILE1MA ETD YTN : 2024-08-04 ATD YTN : 2024-08-04 POD : NEW YORK, NY ETA TOX : 2024-09-11 VGM Cut-off : 2024-07-30 12:00 |

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SZP-2401610

| | Maker/Supplier's INVOICE No. |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | **INVL2404073** |
| | Dated: **August 01, 2024** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC** **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Date of Receipt of Cargo |
| Shipment From : **SHENZHEN**    To : **TREMONT, PA** | **July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br><br>PO#95264540<br>SKU#810445275<br>DEPT#360<br>CARTON 1-  OF 175<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>          5101 S. BROAD STREET<br>          PHILADELPHIA, PA 19112-1404, U.S.A.<br>          ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>          1300 SOUTH MINT STREET SUITE 200<br>          CHARLOTTE NC 28203 USA<br>          TEL: 704-593-6329<br>          EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>CMAU5837099 (PART)    SEAL# R7367092        40H  DRY<br><br><br>PO#95264540<br>SKU#810445275<br>RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE<br><br>SHIP TO CODE & LOCATION : 00874-TREMONT, PA<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 175 CARTONS | | 3.992 CBM | 333.00 KGS |

===============================================================
TOTAL : ONE HUNDRED SEVENTY-FIVE (175) CARTONS ONLY

                    "FREIGHT COLLECT"
SHIPMENT PER S.S. "OOCL BANGKOK" VOY NO. 0UPILE1MA    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT August 4, 2024. CARGO RECEIVED ON July 26, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | SHENZHEN                      **August 1, 2024** |
|---|---|
| **Verification Copy** | (Place and date of issue.) |
| | **YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed *** <br> *** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent <br> V1 |

Verification Copy



**PO #** **95264540**

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 03/26/2024 |
| Version: | 0 |
| Buyer: | RUPERT, BRIANNE |
| Do Not Ship Before: | 07/08/2024 |
| Cancel if not Shipped by: | 07/15/2024 |
| Must be Routed by: | 06/17/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-YANTIAN ，CN |

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:  570-695-2862

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:  1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:     MEEGAN MCGEE
Telephone:  216-262-1630        Fax
E-Mail:      meegan@matsongroupllc.com

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 9,408 | 74,173.92 | 21,407.16 | 70.144 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.     Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.     Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.     Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.     Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.     Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.     Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.     Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.     Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.     Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



Case 24-11967-JKS Doc 1258-1 Filed 07/24/25 Page 78 of 418

| |
|---|

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95264540

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | | EAS Tag | PDQ Pkg | | |
| 360 | 810445275 | RUDOLPH LIGHT UP AN | 0.00 | CN | 24 | | | 4,200 | 1.90 | 8,635.20 | 09/02/2024 |
| 36006 | DX012211M0MTBI19 | PARTYGOODS | | | 12 | | | 175 | 0.16 | 25,158.00 | |
| 36006007 | Dan Dee | | H33 | | | | | | 5.99 | 66.311 | |
| 1 | 047475221103 | | SEA | 0.768 | E1 | | | | | | |
| 360 | 810732467 | 33IN SILVER DISCO B | 0.00 | CN | 12 | | | 2,196 | 2.85 | 6,838.34 | 09/02/2024 |
| 36006 | 204722-0 | SANTAHATS | | | 12 | | | 183 | 0.26 | 21,938.04 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | | 9.99 | 69.399 | 12.99 |
| 2 | 195511156145 | | SEA | 0.715 | A1 | | | | | | |
| 360 | 810652452 | LONG STRIPED SANTA | 0.00 | CN | 12 | | | 3,012 | 2.38 | 7,907.10 | 09/02/2024 |
| 36006 | FAX01026651 | SANTAHATS | | | 12 | | | 251 | 0.25 | 27,077.88 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | | 8.99 | 71.328 | |
| 3 | 195511088408 | | SEA | 0.715 | A1 | | | | | | |

# DAN DEE INTERNATIONAL , LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404074

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHENZHEN

**Country of Origin:** CHINA

**Vessel / Voyage:** COSCO MALAYSIA / 0TYIFE1MA

**Ship on or about:** August 04, 2024

**Invoice Date:** August 01, 2024

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** HOUSTON, TX

**Destination:** DURANT, OK

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95264541 | | 2,556  EA | 2.380/EA | 6,083.280 |
| **SKU No.:** 810652452 | | 213  CTNS | | |
| LONG STRIPED SANTA HAT W/ BELL | No. of Pallet: | | | |
| **HTS Code.:** 9505906000 | | | | |
| | | | | |
| **P/O No.:** 95264541 | | 2,484  EA | 2.850/EA | 7,079.400 |
| **SKU No.:** 810732467 | | 207  CTNS | | |
| 33 INCH DISCO SANTA HAT | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| | Manufacturer Name & Address | | | |
| | SHANTOU CHENGHAI YIXIN ARTS & CRAFTS CO., LTD XINYE ROAD ON THE 2ND OF LAIMEI INDUSTRIAL ZONE, FENGXIANG STREET, CHENGHAI, SHANTOU, GUANGDONG, CHI SHANTOU,, GUANGDONG 515800, CHINA | | | |
| **Total:** | **(420 CTNS)** | **5,040** | | **13,162.680** |
| TOTAL (USD) DOLLARS : THIRTEEN THOUSAND ONE HUNDRED SIXTY-TWO AND CENTS SIXTY-EIGHT ONLY. | | | | |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
SEGU4996130/R7365524/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
SEGU4996130/R7365524/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264541
SKU#810652452
DEPT#360
CARTON 1- OF 213
MADE IN CHINA
PO#95264541
SKU#810732467
DEPT#360
CARTON 1- OF 207
MADE IN CHINA

**DAN DEE INTERNATIONAL , LLC**
Seller reference

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404074

**Sold To:**  DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHENZHEN

**Country of Origin:** CHINA

**Vessel / Voyage:** COSCO MALAYSIA / 0TYIFE1MA

**Ship on or about:** August 04, 2024

**Invoice Date.:** August 01, 2024

**Delivery To:**  2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** HOUSTON, TX

**Destination:** DURANT, OK

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95264541 | | 2,556  EA | 281.16 | 379.00 | 4.978 |
| SKU No.: 810652452 | | 213  CTNS | | | |
| LONG STRIPED SANTA HAT W/ BELL | No. of Pallet: | | | | |
| HTS Code.: 9505906000 | | | | | |
| | | | | | |
| P/O No.: 95264541 | | 2,484  EA | 223.56 | 288.00 | 4.838 |
| SKU No.: 810732467 | | 207  CTNS | | | |
| 33 INCH DISCO SANTA HAT | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| Total:  (420 CTNS) | | 5,040 | 504.72 | 667.00 | 9.816 |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
SEGU4996130/R7365524/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
SEGU4996130/R7365524/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264541
SKU#810652452
DEPT#360
CARTON 1- OF 213
MADE IN CHINA
PO#95264541

Yusen Logistics - Yusen Logistics

# Yusen Logistics

Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-SZP-2401611**

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404074** |
| Buyer/Consignee : **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **August 01, 2024** |
| Shipment From : **SHENZHEN**          To : **DURANT, OK** | Date of Receipt of Cargo<br>**July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br>PO#95264541<br>SKU#810652452<br>DEPT#360<br>CARTON 1- OF 213<br>MADE IN CHINA<br>PO#95264541<br>SKU#810732467<br>DEPT#360<br>CARTON 1- OF 207<br>MADE IN CHINA | NOTIFY PARTY: GEODIS<br>5101 S. BROAD STREET<br>PHILADELPHIA, PA 19112-1404, U.S.A.<br>ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>1300 SOUTH MINT STREET SUITE 200<br>CHARLOTTE NC 28203 USA<br>TEL: 704-593-6329<br>EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>SEGU4996130 (PART)    SEAL# R7365524        40H DRY | | |

PO#95264541
SKU#810652452
LONG STRIPED SANTA HAT W/ BELL
SKU#810732467
33 INCH DISCO SANTA HAT

SHIP TO CODE & LOCATION : 00879-DURANT, OK
SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
MATERIAL

          420 CARTONS              9.816 CBM      667.00 KGS
          ===================================================
          TOTAL : FOUR HUNDRED TWENTY (420) CARTONS ONLY

                "FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO MALAYSIA" VOY NO. 0TYIFE1MA    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT August 6, 2024. CARGO RECEIVED ON July 26, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                    **August 1, 2024** |
|---|---|

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

(Place and date of issue.)
**YUSEN LOGISTICS**

*For and on behalf of*
*Yusen Logistics (Shenzhen) Co., Ltd.*

*Authorized Signature(s)*                As Agent

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Authorized Signature)                V1

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405019 (01/01) 🖊 | 🖶 | 5 | 2024-05-13 2024-07-23 | 95264541 | CFS | YANTIAN DURANT, OK | CONFIRMED | S/O No : SZPU1038064 Cargo Delivery : 2024-07-26 (101 ctn, 2.304 cbm, 192.000 kgs) Doc. Submission : 2024-08-07 B/L : MAEU241344639 MAWB no. FCR No : CNS-SZP-2401675 FCR Draft First Sent Date (GMT+8) : 08/09/2024 13:31:00 FCR Draft Last Sent Date (GMT+8) : 08/09/2024 13:31:00 FCR Confirmation Date (GMT+8) : 08/13/2024 14:00:00 by SYSTEM FCR Emailed (GMT+8) : 08/16/2024 | 📄 | (MAEU) MSC BRIDGEPORT V.433E ETD YTN : 2024-08-19 ATD YTN POD : HOUSTON, TX ETA DUA : 2024-09-27 VGM Cutoff : 2024-08-14 12:00 |
| CNS-2405014 (01/01) 🖊 | 🖶 | 5 | 2024-05-13 2024-07-23 | 95264541 INVL540K074 | CFS | YANTIAN DURANT, OK | CONFIRMED | S/O No : SZPU1038065 Cargo Delivery : 2024-07-26 (420 ctn, 9.816 cbm, 657.000 kgs) Doc. Submission : 2024-08-01 B/L : CMDUSHZ6482499 MAWB no. FCR No : CNS-SZP-2401611 FCR Draft First Sent Date (GMT+8) : 08/07/2024 18:55:00 FCR Draft Last Sent Date (GMT+8) : 08/07/2024 18:55:00 FCR Confirmation Date (GMT+8) : 08/09/2024 19:00:00 by SYSTEM FCR Emailed (GMT+8) : 08/16/2024 | 📄 | (CMDU) COSCO MALAYSIA V.0TY1FE1MA ETD YTN : 2024-08-06 ATD YTN : 2024-08-06 POD : HOUSTON, TX ETA DUA : 2024-09-10 VGM Cutoff : 2024-07-30 12:00 |

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SZP-2401611

| | | |
|---|---|---|
| | | Maker/Supplier's INVOICE No. **INVL2404074** |
| Maker/Supplier : | **DAN DEE INTERNATIONAL , LLC** | Dated: **August 01, 2024** |
| Buyer/Consignee : | **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Date of Receipt of Cargo **July 26, 2024** |
| Shipment From : | **SHENZHEN**            To : **DURANT, OK** | |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br><br>PO#95264541<br>SKU#810652452<br>DEPT#360<br>CARTON 1- OF 213<br>MADE IN CHINA<br>PO#95264541<br>SKU#810732467<br>DEPT#360<br>CARTON 1- OF 207<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>           5101 S. BROAD STREET<br>           PHILADELPHIA, PA 19112-1404, U.S.A.<br>           ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>           1300 SOUTH MINT STREET SUITE 200<br>           CHARLOTTE NC 28203 USA<br>           TEL: 704-593-6329<br>           EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>SEGU4996130 (PART)    SEAL# R7365524      40H  DRY<br><br><br><br>PO#95264541<br>SKU#810652452<br>LONG STRIPED SANTA HAT W/ BELL<br>SKU#810732467<br>33 INCH DISCO SANTA HAT<br><br>SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 420 CARTONS | | 9.816 CBM | 667.00 KGS |

==================================================================
TOTAL : FOUR HUNDRED TWENTY (420) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO MALAYSIA" VOY NO. 0TYIFE1MA    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT August 6, 2024. CARGO RECEIVED ON July 26, 2024.

---

| THIS IS NOT A DOCUMENT OF TITLE | SHENZHEN                         August 1, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.) **YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br>V1 |



**PO #**          **95264541**

| | |
|---|---|
| Date Created | 03/26/2024 |
| Version: | 0 |
| Buyer: | RUPERT, BRIANNE |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-YANTIAN ， CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:  580-931-2197

---

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

---

**Purchase From Vendor:**   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:     MEEGAN MCGEE
Telephone:   216-262-1630      Fax
E-Mail:      meegan@matsongroupllc.com

---

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 7,464 | 62,313.36 | 17,768.28 | 70.480 |

---

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:    95264541

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | | EAS Tag | PDQ Pkg | | |
| 360 | 810445275 | RUDOLPH LIGHT UP AN | 0.00 | CN | 24 | | | 2,424 | 1.90 | 4,983.74 | 09/02/2024 |
| 36006 | DX012211M0MTBI19 | PARTYGOODS | | | 12 | | | 101 | 0.16 | 14,519.76 | |
| 36006007 | Dan Dee | | H33 | | | | | | 5.99 | 66.311 | |
| 1 | 047475221103 | | SEA | 0.768 | E1 | | | | | | |
| 360 | 810732467 | 33IN SILVER DISCO B | 0.00 | CN | 12 | | | 2,484 | 2.85 | 7,735.18 | 09/02/2024 |
| 36006 | 204722-0 | SANTAHATS | | | 12 | | | 207 | 0.26 | 24,815.16 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | | 9.99 | 69.399 | 12.99 |
| 2 | 195511156145 | | SEA | 0.715 | A1 | | | | | | |
| 360 | 810652452 | LONG STRIPED SANTA | 0.00 | CN | 12 | | | 2,556 | 2.38 | 6,710.01 | 09/02/2024 |
| 36006 | FAX01026651 | SANTAHATS | | | 12 | | | 213 | 0.25 | 22,978.44 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | | 8.99 | 71.328 | |
| 3 | 195511088408 | | SEA | 0.715 | A1 | | | | | | |

# DAN DEE INTERNATIONAL , LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

---

# INVOICE

---

**Invoice No.:** INVL2404075

**Invoice Date.:** August 07, 2024

**Sold To:**       DURANT DC, LLC
             2306 ENTERPRISE DR
             DURANT, OK 74701
             USA

**Delivery To:**    2306 ENTERPRISE DR
             DURANT, OK 74701
             USA

**Shipment Terms:** FOB SHENZHEN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** ZIM NEWARK / 028E

**Port of Loading:** YANTIAN

**Ship on or about:** August 12, 2024

**Port of Entry:** HOUSTON, TX

**Destination:** DURANT, OK

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95264541 | 2,424   EA | 1.900/EA | 4,605.600 |
| **SKU No.:** 810445275 | 101   CTNS | | |
| RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE          No. of Pallet: | | | |
| **HTS Code.:** 9503000073 | | | |
| | | | |
| **Manufacturer Name & Address** | | | |
| SHANTOU CHENGHAI YIXIN ARTS & CRAFTS CO., LTD XINYE ROAD ON THE 2ND OF LAIMEI INDUSTRIAL ZONE, FENGXIANG STREET, CHENGHAI, SHANTOU, GUANGDONG, CHI SHANTOU,, GUANGDONG 515800, CHINA | | | |
| **Total:**          (101 CTNS) | 2,424 | | 4,605.600 |

**TOTAL (USD) DOLLARS : FOUR THOUSAND SIX HUNDRED FIVE AND CENTS SIXTY ONLY.**

---

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO., LTD. C/O CNBMIL
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
MRSU3457039/CN6611621/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO., LTD. C/O CNBMIL
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
MRSU3457039/CN6611621/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264541
SKU#810445275
DEPT#360
CARTON 1- OF 101
MADE IN CHINA

**DAN DEE INTERNATIONAL , LLC**                                        Seller reference

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404075

**Sold To:**     DURANT DC, LLC
            2306 ENTERPRISE DR
            DURANT, OK 74701
            USA

**Shipment Terms:** FOB SHENZHEN

**Country of Origin:** CHINA

**Vessel / Voyage:** ZIM NEWARK / 028E

**Ship on or about:** August 12, 2024

**Invoice Date:** August 07, 2024

**Delivery To:**     2306 ENTERPRISE DR
            DURANT, OK 74701
            USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** HOUSTON, TX

**Destination:** DURANT, OK

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95264541 | | 2,424  EA | 151.50 | 192.00 | 2.304 |
| **SKU No.:** 810445275 | | 101  CTNS | | | |
| RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE | **No. of Pallet:** | | | | |
| **HTS Code.:** 9503000073 | | | | | |
| **Total:** | **(101 CTNS)** | 2,424 | 151.50 | 192.00 | 2.304 |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO., LTD. C/O CNBMIL
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
MRSU3457039/CN6611621/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO., LTD. C/O CNBMIL
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
MRSU3457039/CN6611621/40H

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#95264541
SKU#810445275
DEPT#360
CARTON 1- OF 101
MADE IN CHINA

Yusen Logistics - Yusen Logistics # Yusen Logistics Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401675**

| Maker/Supplier: | **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404075** |
|---|---|---|
| Buyer/Consignee : | **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **August 07, 2024** |
| Shipment From : | **SHENZHEN**          To : **DURANT, OK** | Date of Receipt of Cargo<br>**July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                NOTIFY PARTY: GEODIS
STORES                               5101 S. BROAD STREET
PO#95264541                          PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#810445275                        ATTN: ALENA LAMINA
DEPT#360                ALSO NOTIFY: EDRAY 2020 LLC.
CARTON 1-  OF 101                    1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                        CHARLOTTE NC 28203 USA
                                     TEL: 704-593-6329
                                     EMAIL: DATAQUALITY@EDRAYCPL.COM

                        CFS-CY

                        MRSU3457039 (PART)     SEAL# CN6611621      40H  DRY


                        PO#95264541
                        SKU#810445275
                        RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE

                        SHIP TO CODE & LOCATION : 00879-DURANT, OK
                        SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                        MATERIAL




                        101 CARTONS              2.304 CBM    192.00 KGS
                        ======================================================
                        TOTAL : ONE HUNDRED ONE (101) CARTONS ONLY

                            "FREIGHT COLLECT"
SHIPMENT PER S.S. "ZIM NEWARK" VOY NO. 028E    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT August 12, 2024. CARGO RECEIVED ON July 26, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                              **August 7, 2024** |
|---|---|

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**

*For and on behalf of*
Yusen Logistics (Shenzhen) Co., Ltd.

Authorized Signature(s)                    As Agent

(Authorized Signature)                          V1

Filter by: All    ‹‹    ‹    1 - 2 of total 2 records    ›    ››

| Subm | Edit | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405019 (01/01) ✏ | | 🖶 | 5 | 2024-05-13 2024-07-23 | 95264541 *INVLX404075* | CFS | YANTIAN DURANT, OK | CONFIRMED | S/O No. : SZPU1038064 Cargo Delivery : 2024-07-26 (101 ctn, 2.304 cbm, 192.000 kgs) Doc. Submission : 2024-08-07 B/L : MAEU241344639 MAWB no. FCR No: CNS-SZP-2401675 FCR Draft First Sent Date (GMT+8) : 08/09/2024 13:31:00 FCR Draft Last Sent Date (GMT+8) : 08/09/2024 13:31:00 FCR Confirmation Date (GMT+8) : 08/13/2024 14:00:00 by SYSTEM FCR Emailed (GMT+8) : 08/16/2024 | 📄 | (MAEU) MSC BRIDGEPORT V.433E ETD YTN : 2024-08-19 ATD YTN : 2024-08-20 POD : HOUSTON, TX ETA DUA : 2024-09-27 VGM Cut-off : 2024-08-14 12:00 |
| CNS-2405014 (01/01) ✏ | | 🖶 | 5 | 2024-05-13 2024-07-23 | 95264541 | CFS | YANTIAN DURANT, OK | CONFIRMED | S/O No. : SZPU1038065 Cargo Delivery : 2024-07-26 (420 ctn, 9.816 cbm, 667.000 kgs) Doc. Submission : 2024-08-01 B/L : CMDUSHZ6482499 MAWB no. FCR No: CNS-SZP-2401611 FCR Draft First Sent Date (GMT+8) : 08/07/2024 18:55:00 FCR Draft Last Sent Date (GMT+8) : 08/07/2024 18:55:00 FCR Confirmation Date (GMT+8) : 08/09/2024 19:00:00 by SYSTEM FCR Emailed (GMT+8) : 08/16/2024 | 📄 | (CMDU) COSCO MALAYSIA V.0TY1FE1MA ETD YTN : 2024-08-06 ATD YTN : 2024-08-06 POD : HOUSTON, TX ETA DUA : 2024-09-10 VGM Cut-off : 2024-07-30 12:00 |

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SZP-2401675

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404075** |
| Buyer/Consignee : **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **August 07, 2024** |
| Shipment From : **SHENZHEN**          To : **DURANT, OK** | Date of Receipt of Cargo<br>**July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95264541<br>SKU#810445275<br>DEPT#360<br>CARTON 1- OF 101<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>        5101 S. BROAD STREET<br>        PHILADELPHIA, PA 19112-1404, U.S.A.<br>        ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>        1300 SOUTH MINT STREET SUITE 200<br>        CHARLOTTE NC 28203 USA<br>        TEL: 704-593-6329<br>        EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>MRSU3457039 (PART)    SEAL# CN6611621      40H  DRY<br><br><br>PO#95264541<br>SKU#810445275<br>RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE<br><br>SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 101 CARTONS | | 2.304 CBM | 192.00 KGS |

==================================================================
TOTAL : ONE HUNDRED ONE (101) CARTONS ONLY
==================================================================

MSC BRIDGEPORT V. 455E

"FREIGHT COLLECT"
SHIPMENT PER S.S. "ZIM NEWARK" VOY NO. 028E    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT August 12, 2024  CARGO RECEIVED ON July 26, 2024.

8/30/2024

| THIS IS NOT A DOCUMENT OF TITLE | SHENZHEN                    **August 7, 2024** |
|---|---|
| **Verification Copy** | (Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |

Verification Copy



**PO #**     **95264541**

| | | See attached Terms and  Conditions for additional Big Lots requirements. A complete list of requirements can be found on the Big Lots website www.biglots.com/corporate/vendors | Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program. |

Date Created         03/26/2024
Version:             0
Buyer:               RUPERT, BRIANNE
Do Not Ship Before:  07/01/2024
Cancel if not Shipped by: 07/08/2024
Must be Routed by:   06/10/2024
Payment Terms:       Wire Transfer + 60 Days Upon Receipt in DC
Freight Terms:       Collect
FOB:                 LCL-YANTIAN ， CN

---

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:   580-931-2197

---

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

---

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:    MEEGAN MCGEE
Telephone:  216-262-1630      Fax
E-Mail:     meegan@matsongroupllc.com

---

**ADDITIONAL COMMENTS**

---

Vendor Signature  _____

Signee's Name     _____

Title             _____

Date              _____

OFFICE-COPY

| Units | Retail | Vendor Cost | IMU |
|-------|--------|-------------|-----|
| 7,464 | 62,313.36 | 17,768.28 | 70.480 |



OFFICE-COPY **IMPORTANT Terms and Conditions**

PO#:   95264541

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95264541

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810445275 | RUDOLPH LIGHT UP AN | 0.00 | CN | 24 | | 2,424 | 1.90 | 4,983.74 | 09/02/2024 |
| 36006 | DX012211M0MTBI19 | PARTYGOODS | | | 12 | | 101 | 0.16 | 14,519.76 | |
| 36006007 | Dan Dee | | H33 | | | | | 5.99 | 66.311 | |
| 1 | 047475221103 | | SEA | 0.768 | E1 | | | | | |
| 360 | 810732467 | 33IN SILVER DISCO B | 0.00 | CN | 12 | | 2,484 | 2.85 | 7,735.18 | 09/02/2024 |
| 36006 | 204722-0 | SANTAHATS | | | 12 | | 207 | 0.26 | 24,815.16 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | 9.99 | 69.399 | 12.99 |
| 2 | 195511156145 | | SEA | 0.715 | A1 | | | | | |
| 360 | 810652452 | LONG STRIPED SANTA | 0.00 | CN | 12 | | 2,556 | 2.38 | 6,710.01 | 09/02/2024 |
| 36006 | FAX01026651 | SANTAHATS | | | 12 | | 213 | 0.25 | 22,978.44 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | 8.99 | 71.328 | |
| 3 | 195511088408 | | SEA | 0.715 | A1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404076

**Invoice Date.:** August 01, 2024

**Sold To:**   BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:**   500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB SHENZHEN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO SPAIN / 066E

**Port of Loading:** YANTIAN

**Ship on or about:** August 08, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** COLUMBUS, OH

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95264542 | | 2,364   EA | 2.380/EA | 5,626.320 |
| **SKU No.:** 810652452 | | 197   CTNS | | |
| LONG STRIPED SANTA HAT W/ BELL | No. of Pallet: | | | |
| **HTS Code.:** 9505906000 | | | | |
| | | | | |
| **P/O No.:** 95264542 | | 1,224   EA | 2.850/EA | 3,488.400 |
| **SKU No.:** 810732467 | | 102   CTNS | | |
| 33 INCH DISCO SANTA HAT | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| | **Manufacturer Name & Address** | | | |
| | SHANTOU CHENGHAI YIXIN ARTS & CRAFTS CO., LTD XINYE ROAD ON THE 2ND OF LAIMEI INDUSTRIAL ZONE, FENGXIANG STREET, CHENGHAI, SHANTOU, GUANGDONG, CHI SHANTOU,, GUANGDONG 515800, CHINA | | | |
| **Total:** | **(299 CTNS)** | **3,588** | | **9,114.720** |

TOTAL (USD) DOLLARS : NINE THOUSAND ONE HUNDRED FOURTEEN AND CENTS SEVENTY-TWO ONLY.

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264542
SKU#810652452
DEPT#360
CARTON 1- OF 197
MADE IN CHINA
PO#95264542
SKU#810732467
DEPT#360

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404076

**Sold To:** BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB SHENZHEN

**Country of Origin:** CHINA

**Vessel / Voyage:** COSCO SPAIN / 066E

**Ship on or about:** August 08, 2024

**Invoice Date:** August 01, 2024

**Delivery To:** 500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** LONG BEACH, CA

**Destination:** COLUMBUS, OH

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95264542 | | 2,364 EA | 260.04 | 351.00 | 4.604 |
| **SKU No.:** 810652452 | | 197 CTNS | | | |
| LONG STRIPED SANTA HAT W/ BELL | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| **P/O No.:** 95264542 | | 1,224 EA | 110.16 | 142.00 | 2.384 |
| **SKU No.:** 810732467 | | 102 CTNS | | | |
| 33 INCH DISCO SANTA HAT | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** (299 CTNS) | | 3,588 | 370.20 | 493.00 | 6.988 |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264542
SKU#810652452
DEPT#360
CARTON 1- OF 197
MADE IN CHINA
PO#95264542
SKU#810732467
DEPT#360
CARTON 1- OF 102
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401612**

| | |
|---|---|
| Maker/Supplier:    **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404076** |
| Buyer/Consignee :    **BIG LOTS STORES, LLC** <br> **500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated:   **August 01, 2024** |
| Shipment From :    **SHENZHEN**       To : **COLUMBUS, OH** | Date of Receipt of Cargo <br> **July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS <br> STORES <br><br> PO#95264542 <br> SKU#810652452 <br> DEPT#360 <br> CARTON 1- OF 197 <br> MADE IN CHINA <br> PO#95264542 <br> SKU#810732467 <br> DEPT#360 <br> CARTON 1- OF 102 <br> MADE IN CHINA | NOTIFY PARTY: GEODIS <br>     5101 S. BROAD STREET <br>     PHILADELPHIA, PA 19112-1404, U.S.A. <br>     ATTN: ALENA LAMINA <br> ALSO NOTIFY: EDRAY 2020 LLC. <br>     1300 SOUTH MINT STREET SUITE 200 <br>     CHARLOTTE NC 28203 USA <br>     TEL: 704-593-6329 <br>     EMAIL: DATAQUALITY@EDRAYCPL.COM <br><br> CFS-CY <br><br> OOLU8937601 (PART)     SEAL# OOLJYA3186      40H DRY <br><br><br><br> PO#95264542 <br> SKU#810652452 <br> LONG STRIPED SANTA HAT W/ BELL <br> SKU#810732467 <br> 33 INCH DISCO SANTA HAT <br><br> SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH <br> SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING <br> MATERIAL | | |
| | 299 CARTONS | | 6.988 CBM | 493.00 KGS |

=================================================================
TOTAL : TWO HUNDRED NINETY-NINE (299) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "OOCL ROTTERDAM" VOY NO. 149E    DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT August 18, 2024. CARGO RECEIVED ON July 26, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**              **August 1, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. <br><br> No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** <br> (Terms and conditions are to be continued to the reverse side hereof.) | (Place and date of issue.) <br> **YUSEN LOGISTICS** <br><br> *For and on behalf of* <br> *Yusen Logistics (Shenzhen) Co., Ltd.* <br><br> *Authorized Signature(s)*      As Agent <br> (Authorized Signature)      V1 |

ORIGINAL

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405021 (01/01) | 🖨 | 5 | 2024-05-13 2024-07-23 | 95264542 | CFS | YANTIAN COLUMBUS, OH | CONFIRMED | S/O No : S2PC1050007 Cargo Delivery : 2024-07-26 (170 ctn, 3.878 cbm, 323.000 kgs) Doc. Submission : 2024-08-01 B/L : CMDUSHZ6496299 MAWB no.: FCR No: CNS-SZP-2401613 FCR Draft First Sent Date (GMT+8) : 08/08/2024 19:34:00 FCR Draft Last Sent Date (GMT+8) : 08/08/2024 19:34:00 FCR Confirmation Date (GMT+8) : 08/12/2024 20:00:00 by SYSTEM FCR Emailed (GMT+8) : 08/16/2024 | 📄 | (CMDU) APL ESPLANADE V.0XR5ZE1MA ETD YTN : 2024-08-14 ATD YTN : 2024-08-14 POD : NORFOLK, VA ETA CMH : 2024-09-26 VGM Cut-off : 2024-08-09 10:00 |
| CNS-2405015 (01/01) | 🖨 | 5 | 2024-05-13 2024-07-23 | 95264542 INVD404076 | CFS | YANTIAN COLUMBUS, OH | CONFIRMED | S/O No : S2PC1050008 Cargo Delivery : 2024-07-26 (299 ctn, 6.988 cbm, 493.000 kgs) Doc. Submission : 2024-08-01 B/L : OOLU2150918940 MAWB no.: FCR No: CNS-SZP-2401612 FCR Draft First Sent Date (GMT+8) : 08/09/2024 19:33:00 FCR Draft Last Sent Date (GMT+8) : 08/09/2024 19:33:00 FCR Confirmation Date (GMT+8) : 08/13/2024 20:00:00 by SYSTEM | 📄 | (OOLU) OOCL ROTTERDAM V.149E ETD YTN : 2024-08-18 ATD YTN : 2024-08-19 POD : LONG BEACH, CA ETA CMH : 2024-09-13 VGM Cut-off : 2024-08-01 12:00 |

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401612**

| | |
|---|---|
| | Maker/Supplier's INVOICE No. **INVL2404076** |
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | |
| | Dated: **August 01, 2024** |
| Buyer/Consignee : **BIG LOTS STORES, LLC** **500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Date of Receipt of Cargo |
| Shipment From : **SHENZHEN**      To : **COLUMBUS, OH** | **July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95264542<br>SKU#810652452<br>DEPT#360<br>CARTON 1- OF 197<br>MADE IN CHINA<br>PO#95264542<br>SKU#810732467<br>DEPT#360<br>CARTON 1- OF 102<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>          5101 S. BROAD STREET<br>          PHILADELPHIA, PA 19112-1404, U.S.A.<br>          ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>          1300 SOUTH MINT STREET SUITE 200<br>          CHARLOTTE NC 28203 USA<br>          TEL: 704-593-6329<br>          EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>OOLU8937601 (PART)    SEAL# OOLJYA3186        40H  DRY<br><br><br>PO#95264542<br>SKU#810652452<br>LONG STRIPED SANTA HAT W/ BELL<br>SKU#810732467<br>33 INCH DISCO SANTA HAT<br><br>SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL<br><br><br>299 CARTONS | | 6.988 CBM | 493.00 KGS |

============================================================
TOTAL : TWO HUNDRED NINETY-NINE (299) CARTONS ONLY

                    "FREIGHT COLLECT"
SHIPMENT PER S.S. "OOCL ROTTERDAM" VOY NO. 149E    DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT August 18, 2024. CARGO RECEIVED ON July 26, 2024.

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                    **August 1, 2024** |
| **Verification Copy** | (Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |

Verification Copy



**PO #**       **95264542**

| | |
|---|---|
| Date Created | 03/26/2024 |
| Version: | 0 |
| Buyer: | RUPERT, BRIANNE |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-YANTIAN，CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800      Fax:  614-278-3809

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800      Fax: 614-278-6871

**Purchase From Vendor:**   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:    MEEGAN MCGEE
Telephone:  216-262-1630    Fax
E-Mail:    meegan@matsongroupllc.com

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 7,668 | 57,919.32 | 16,866.72 | 69.878 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:  95264542

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms").  The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party.  "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.
"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.
"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.
"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and related intellectual property of or related to such merchandise.
"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.
"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.
"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.
"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.
1.        Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.
2.        Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC").  A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.
3.        Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.
4.        Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.
6.        Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.
7.        Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.
8.        Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.
9.        Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | | PDQ Pkg | | |
| 360 | 810445275 | RUDOLPH LIGHT UP AN | 0.00 | CN | 24 | | | 4,080 | 1.90 | 8,388.48 | 09/02/2024 |
| 36006 | DX012211M0MTBI19 | PARTYGOODS | | | 12 | | | 170 | 0.16 | 24,439.20 | |
| 36006007 | Dan Dee | | H33 | | | | | | 5.99 | 66.311 | |
| 1 | 047475221103 | | SEA | 0.768 | E1 | | | | | | |
| 360 | 810732467 | 33IN SILVER DISCO B | 0.00 | CN | 12 | | | 1,224 | 2.85 | 3,811.54 | 09/02/2024 |
| 36006 | 204722-0 | SANTAHATS | | | 12 | | | 102 | 0.26 | 12,227.76 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | | 9.99 | 69.399 | 12.99 |
| 2 | 195511156145 | | SEA | 0.715 | A1 | | | | | | |
| 360 | 810652452 | LONG STRIPED SANTA | 0.00 | CN | 12 | | | 2,364 | 2.38 | 6,205.97 | 09/02/2024 |
| 36006 | FAX01026651 | SANTAHATS | | | 12 | | | 197 | 0.25 | 21,252.36 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | | 8.99 | 71.328 | |
| 3 | 195511088408 | | SEA | 0.715 | A1 | | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404077

**Invoice Date:** August 01, 2024

**Sold To:**   BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:**   500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB SHENZHEN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** CMA CGM AMBITION / 0XR5XE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** August 06, 2024

**Port of Entry:** NORFOLK, VA

**Destination:** COLUMBUS, OH

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95264542 | 4,080    EA | 1.900/EA | 7,752.000 |
| **SKU No.:** 810445275 | 170   CTNS | | |
| RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE          No. of Pallet: | | | |
| **HTS Code.:** 9503000073 | | | |
| **Manufacturer Name & Address**<br>SHANTOU CHENGHAI YIXIN ARTS & CRAFTS CO., LTD<br>XINYE ROAD ON THE 2ND OF LAIMEI INDUSTRIAL ZONE, FENGXIANG STREET, CHENGHAI,<br>SHANTOU, GUANGDONG, CHI<br>SHANTOU,, GUANGDONG<br>515800, CHINA | | | |
| Total:          (170 CTNS) | 4,080 | | 7,752.000 |

TOTAL (USD) DOLLARS : SEVEN THOUSAND SEVEN HUNDRED FIFTY-TWO ONLY.

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
CMAU7865865/R7367144/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
CMAU7865865/R7367144/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264542
SKU#810445275
DEPT#360
CARTON 1- OF 170
MADE IN CHINA

**DAN DEE INTERNATIONAL, LLC**

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

| | |
|---|---|
| **Invoice No.:** INVL2404077 | **Invoice Date:** August 01, 2024 |
| **Sold To:** BIG LOTS STORES, LLC<br>500 PHILLIPI RD<br>COLUMBUS, OH 43228<br>USA | **Delivery To:** 500 PHILLIPI RD<br>COLUMBUS, OH 43228<br>USA |
| **Shipment Terms:** FOB SHENZHEN | **Payment Term / OAT #(Open Account Transaction):** |
| **Country of Origin:** CHINA | **L/C Number:** TT |
| **Vessel / Voyage:** CMA CGM AMBITION / 0XR5XE1MA | **Port of Loading:** YANTIAN |
| **Ship on or about:** August 06, 2024 | **Port of Entry:** NORFOLK, VA |
| | **Destination:** COLUMBUS, OH |

| Cargo Description | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|
| **P/O No.:** 95264542 | 4,080  EA | 255.00 | 323.00 | 3.878 |
| **SKU No.:** 810445275 | 170  CTNS | | | |
| RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE    **No. of Pallet:** | | | | |
| **HTS Code.:** 9503000073 | | | | |
| **Total:** (170 CTNS) | 4,080 | 255.00 | 323.00 | 3.878 |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
CMAU7865865/R7367144/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
CMAU7865865/R7367144/40H

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#95264542
SKU#810445275
DEPT#360
CARTON 1- OF 170
MADE IN CHINA

Yusen Logistics - Yusen Logistics

Yusen Logistics - Yusen Logistics

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-SZP-2401613**

| | |
|---|---|
| Maker/Supplier: **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404077** |
| Buyer/Consignee: **BIG LOTS STORES, LLC** **500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated: **August 01, 2024** |
| Shipment From: **SHENZHEN**     To: **COLUMBUS, OH** | Date of Receipt of Cargo **July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS STORES PO#95264542 SKU#810445275 DEPT#360 CARTON 1-  OF 170 MADE IN CHINA** | **NOTIFY PARTY: GEODIS** **5101 S. BROAD STREET** **PHILADELPHIA, PA 19112-1404, U.S.A.** **ATTN: ALENA LAMINA** **ALSO NOTIFY: EDRAY 2020 LLC.** **1300 SOUTH MINT STREET SUITE 200** **CHARLOTTE NC 28203 USA** **TEL: 704-593-6329** **EMAIL: DATAQUALITY@EDRAYCPL.COM** | | | |
| | **CFS-CY** | | | |
| | **CMAU7865865 (PART)     SEAL# R7367144** | | **40H  DRY** |
| | **PO#95264542 SKU#810445275 RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE** **SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL** | | | |
| | **170 CARTONS** | **3.878 CBM** | **323.00 KGS** |

**TOTAL : ONE HUNDRED SEVENTY (170) CARTONS ONLY**

**"FREIGHT COLLECT"**
**SHIPMENT PER S.S. "APL ESPLANADE" VOY NO. 0XR5ZE1MA    DISCHARGED AT NORFOLK, VA SAILING ON / ABOUT August 13, 2024. CARGO RECEIVED ON July 26, 2024.**

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                    **August 1, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** *For and on behalf of* **Yusen Logistics (Shenzhen) Co., Ltd.** *Authorized Signature(s)*          As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V1 |

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405021 (01/01) | 🖨 | 5 | 2024-05-13 2024-07-23 | 95264542 INU(340V07) | CFS | YANTIAN COLUMBUS, OH | CONFIRMED | S/O No.: SZPC1050007 Cargo Delivery : 2024-07-26 (170 ctn, 3.878 cbm, 323.000 kgs) Doc. Submission : 2024-08-01 B/L : CMDUSHZ6496299 MAWB no.: FCR No: CNS-SZP-2401613 FCR Draft First Sent Date (GMT+8) : 08/08/2024 19:34:00 FCR Draft Last Sent Date (GMT+8) : 08/08/2024 19:34:00 FCR Confirmation Date (GMT+8) : 08/12/2024 20:00:00 by SYSTEM FCR Emailed (GMT+8) : 08/16/2024 | 📄 | (CMDU) APL ESPLANADE V.0XR5ZE1MA ETD YTN : 2024-08-14 ATD YTN : 2024-08-14 POD : NORFOLK, VA ETA CMH : 2024-09-26 VGM Cut-off : 2024-08-08 10:00 |
| CNS-2405015 (01/01) | 🖨 | 5 | 2024-05-13 2024-07-23 | 95264542 | CFS | YANTIAN COLUMBUS, OH | CONFIRMED | S/O No : SZPC1050008 Cargo Delivery : 2024-07-26 (299 ctn, 6.988 cbm, 493.000 kgs) Doc. Submission : 2024-08-01 B/L : OOLU2150918940 MAWB no.: FCR No: CNS-SZP-2401612 FCR Draft First Sent Date (GMT+8) : 08/09/2024 19:33:00 FCR Draft Last Sent Date (GMT+8) : 08/09/2024 19:33:00 FCR Confirmation Date (GMT+8) : 08/13/2024 20:00:00 by SYSTEM | 📄 | (OOLU) OOCL ROTTERDAM V.149E ETD YTN : 2024-08-18 ATD YTN : 2024-08-19 POD : LONG BEACH, CA ETA CMH : 2024-09-13 VGM Cut-off : 2024-08-01 12:00 |

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.   **CNS-SZP-2401613**

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404077** |
| Buyer/Consignee : **BIG LOTS STORES, LLC** <br> **500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated: **August 01, 2024** |
| Shipment From : **SHENZHEN**      To : **COLUMBUS, OH** | Date of Receipt of Cargo **July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS <br> STORES <br><br> PO#95264542 <br> SKU#810445275 <br> DEPT#360 <br> CARTON 1- OF 170 <br> MADE IN CHINA | | NOTIFY PARTY: GEODIS <br>     5101 S. BROAD STREET <br>     PHILADELPHIA, PA 19112-1404, U.S.A. <br>     ATTN: ALENA LAMINA <br> ALSO NOTIFY: EDRAY 2020 LLC. <br>     1300 SOUTH MINT STREET SUITE 200 <br>     CHARLOTTE NC 28203 USA <br>     TEL: 704-593-6329 <br>     EMAIL: DATAQUALITY@EDRAYCPL.COM <br><br> CFS-CY <br><br> CMAU7865865 (PART)    SEAL# R7367144    40H DRY <br><br><br> PO#95264542 <br> SKU#810445275 <br> RUDOLPH LIGHT UP ANTLER HEADBAND WITH NOSE <br><br> SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH <br> SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING <br> MATERIAL | | |
| | 170 CARTONS | | 3.878 CBM | 323.00 KGS |

==============================================================
TOTAL : ONE HUNDRED SEVENTY (170) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "APL ESPLANADE" VOY NO. 0XR5ZE1MA    DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT August 13, 2024. CARGO RECEIVED ON July 26, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | SHENZHEN                    **August 1, 2024** |
|---|---|
| **Verification Copy** | (Place and date of issue.) <br><br> **YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed *** <br> *** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent <br><br> V1 |

Verification Copy



| PO # | **95264542** |
|---|---|
| Date Created | 03/26/2024 |
| Version: | 0 |
| Buyer: | RUPERT, BRIANNE |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-YANTIAN ， CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800        Fax:  614-278-3809

---

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

Purchase From Vendor:  1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:   216-262-1630        Fax
E-Mail:        meegan@matsongroupllc.com

---

**ADDITIONAL COMMENTS**

---

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 7,668 | 57,919.32 | 16,866.72 | 69.878 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.
"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.
"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.
"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.
"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.
"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.
"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.
"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.
1.        Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.
2.        Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.
3.        Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.
4.        Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.
6.        Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.
7.        Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.
8.        Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.
9.        Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner, without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|-------------|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810445275 | RUDOLPH LIGHT UP AN | 0.00 | CN | 24 | | 4,080 | 1.90 | 8,388.48 | 09/02/2024 |
| 36006 | DX012211M0MTBI19 | PARTYGOODS | | | 12 | | 170 | 0.16 | 24,439.20 | |
| 36006007 | Dan Dee | | H33 | | | | | 5.99 | 66.311 | |
| 1 | 047475221103 | | SEA | 0.768 | E1 | | | | | |
| 360 | 810732467 | 33IN SILVER DISCO B | 0.00 | CN | 12 | | 1,224 | 2.85 | 3,811.54 | 09/02/2024 |
| 36006 | 204722-0 | SANTAHATS | | | 12 | | 102 | 0.26 | 12,227.76 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | 9.99 | 69.399 | 12.99 |
| 2 | 195511156145 | | SEA | 0.715 | A1 | | | | | |
| 360 | 810652452 | LONG STRIPED SANTA | 0.00 | CN | 12 | | 2,364 | 2.38 | 6,205.97 | 09/02/2024 |
| 36006 | FAX01026651 | SANTAHATS | | | 12 | | 197 | 0.25 | 21,252.36 | |
| 36006002 | Winter Wonder Lane | | H33 | | | | | 8.99 | 71.328 | |
| 3 | 195511088408 | | SEA | 0.715 | A1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

---

# INVOICE

---

**Invoice No.:** INVL2404078

**Sold To:** AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** OOCL POLAND / 0045E

**Ship on or about:** July 30, 2024

**Invoice Date.:** July 24, 2024

**Delivery To:** 18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** LONG BEACH, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| P/O No.: 95192364 | 1,536 EA | 8.610/EA | 13,224.960 |
| SKU No.: 810625150 | 256 CTNS | | |
| SINGING TREE WITH STAR    No. of Pallet: | | | |
| HTS Code.: 9505102500 | | | |
| **Manufacturer Name & Address** | | | |
| TIANCHANG TIANSHENG TOYS CO., LTD ZHANGZHUANG VILLAGE, TIANCHANG TOWN, TIANCHANG, ANHUI 239300, CHINA | | | |
| Total:    (256 CTNS) | 1,536 | | 13,224.960 |
| TOTAL (USD) DOLLARS : THIRTEEN THOUSAND TWO HUNDRED TWENTY-FOUR AND CENTS NINETY-SIX ONLY. | | | |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES
PO#95192364
SKU#810625150
DEPT#360
CARTON 1- OF 256
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404078

**Invoice Date.:** July 24, 2024

**Sold To:** AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Delivery To:** 18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL POLAND / 0045E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 30, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95192364 | | 1,536  EA | 696.32 | 798.72 | 6.580 |
| **SKU No.:** 810625150 | | 256  CTNS | | | |
| SINGING TREE WITH STAR | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** | **(256 CTNS)** | 1,536 | 696.32 | 798.72 | 6.580 |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES
PO#95192364
SKU#810625150
DEPT#360
CARTON 1- OF 256
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2401977**

| | |
|---|---|
| Maker/Supplier :   **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404078** |
| Buyer/Consignee :   **AVDC, LLC** <br> **18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated:   **July 24, 2024** |
| Shipment From :   **SHANGHAI**      To : **APPLE VALLEY, CA** | Date of Receipt of Cargo <br> **July 22, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS** <br> **STORES** <br> **PO#95192364** <br> **SKU#810625150** <br> **DEPT#360** <br> **CARTON 1- OF 256** <br> **MADE IN CHINA** | | **NOTIFY PARTY: GEODIS** <br>    **5101 S. BROAD STREET** <br>    **PHILADELPHIA, PA 19112-1404, U.S.A.** <br>    **ATTN: ALENA LAMINA** <br> **ALSO NOTIFY: EDRAY 2020 LLC.** <br>    **1300 SOUTH MINT STREET SUITE 200** <br>    **CHARLOTTE NC 28203 USA** <br>    **TEL: 704-593-6329** <br>    **EMAIL: DATAQUALITY@EDRAYCPL.COM** <br><br> **CFS-CY** <br><br> **OOCU7450361 (PART)**    **SEAL# OOLHZE7466**    **40H DRY** <br><br><br> **PO#95192364** <br> **SKU#810625150** <br> **SINGING TREE WITH STAR** <br><br> **SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA** <br> **SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING** <br> **MATERIAL** | | |
| | **256 CARTONS** | | **6.580 CBM** | **798.72 KGS** |

```
============================================================
```
**TOTAL : TWO HUNDRED FIFTY-SIX (256) CARTONS ONLY**

       **"FREIGHT COLLECT"**

**SHIPMENT PER S.S. "OOCL POLAND" VOY NO. 0045E    DISCHARGED AT LONG BEACH, CA**
**SAILING ON / ABOUT July 30, 2024. CARGO RECEIVED ON July 22, 2024.**

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**        **July 24, 2024** |
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) <br> **YUSEN LOGISTICS** <br><br>  <br><br> As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** <br> (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)      V1 |

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Ship Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405057 (01/01) | 🖨 | 4 | 2024-05-13 2024-07-18 | 95192364 | CFS | SHANGHAI APPLE VALLEY, CA | CONFIRMED | S/O No. : SHAAA1005698 Cargo Delivery : 2024-07-21 (428 ctn, 9.419 cbm, 1412.400 kgs) Doc. Submission : 2024-07-24 B/L : HDMUSHAZ67723000 MAWB no. FCR No: CNS-SHA-2401946 FCR Draft First Sent Date (GMT+8) : 07/25/2024 19:30:00 FCR Draft Last Sent Date (GMT+8) : 07/25/2024 19:30:00 FCR Confirmation Date (GMT+8) : 07/29/2024 20:00:00 by SYSTEM | 📄 | (HDMU) HMM PEARL V.0001E ETD SHA : 2024-07-29 ATD SHA : 2024-07-29 POD : LOS ANGELES, CA ETA APV : 2024-08-21 VGM Cut-off : 2024-07-25 11:00 |
| CNS-2405027 (01/01) | 🖨 | 4 | 2024-05-13 2024-07-18 | 95192364 INVL>404078 | CFS | SHANGHAI APPLE VALLEY, CA | CONFIRMED | S/O No. : SHAAA1005695 Cargo Delivery : 2024-07-22 (256 ctn, 6.580 cbm, 798.720 kgs) Doc. Submission : 2024-07-24 B/L : OOLU2150650580 MAWB no. FCR No: CNS-SHA-2401977 FCR Draft First Sent Date (GMT+8) : 07/29/2024 19:35:00 FCR Draft Last Sent Date (GMT+8) : 07/29/2024 19:35:00 FCR Confirmation Date (GMT+8) : 07/31/2024 20:00:00 by SYSTEM | 📄 | (OOLU) OOCL POLAND V.0045E ETD SHA : 2024-08-04 ATD SHA : 2024-08-04 POD : LONG BEACH, CA ETA APV : 2024-08-24 VGM Cut-off : 2024-07-25 14:00 |

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.   **CNS-SHA-2401977**

| | |
|---|---|
| | Maker/Supplier's INVOICE No. **INVL2404078** |
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Dated: **July 24, 2024** |
| Buyer/Consignee: **AVDC, LLC** **18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Date of Receipt of Cargo **July 22, 2024** |
| Shipment From : **SHANGHAI**      To : **APPLE VALLEY, CA** | |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES PO#95192364 SKU#810625150 DEPT#360 CARTON 1- OF 256 MADE IN CHINA | | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM CFS-CY OOCU7450361 (PART)    SEAL# OOLHZE7466        40H  DRY PO#95192364 SKU#810625150 SINGING TREE WITH STAR SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 256 CARTONS | | 6.580 CBM | 798.72 KGS |

TOTAL : TWO HUNDRED FIFTY-SIX (256) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "OOCL POLAND" VOY NO. 0045E / DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT July 30, 2024 CARGO RECEIVED ON July 22, 2024.

8/4/2024

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI                      July 24, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.) **YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed *** *** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent V1 |

Verification Copy



**PO #**    **95192364**

| | | |
|---|---|---|
| Date Created | 02/27/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

SHIP TO

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520  Fax:

BILL TO

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800  Fax: 614-278-6871

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:  MEEGAN MCGEE
Telephone:   216-262-1630  Fax
E-Mail:  meegan@matsongroupllc.com

ADDITIONAL COMMENTS

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 5,388 | 93,054.12 | 36,259.92 | 59.838 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:    95192364

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810625149 | HOLIDAY SILLY & WIL | 0.00 | CN | 9 | | 3,852 | 5.98 | 24,765.28 | 08/19/2024 |
| 36008 | PLX03023776 | animated | | | 9 | | 428 | 0.45 | 57,741.48 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 14.99 | 57.908 | |
| 1 | 195511080471 | | SEA | 0.778 | A1 | | | | | |
| 360 | 810625150 | SINGING TREE WITH S | 0.00 | CN | 6 | | 1,536 | 8.61 | 14,337.64 | 08/19/2024 |
| 36008 | PLX02023775 | animated | | | 6 | | 256 | 0.72 | 35,312.64 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 22.99 | 60.147 | 29.99 |
| 2 | 195511080440 | | SEA | 0.931 | A1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

Seller reference

## INVOICE

**Invoice No.:** INVL2404079

**Invoice Date.:** July 24, 2024

**Sold To:** AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Delivery To:** 18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** HMM PEARL / 0001E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 29, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95192364 | 3,852   EA | 5.980/EA | 23,034.960 |
| **SKU No.:** 810625149 | 428   CTNS | | |
| HOLIDAY SILLY & WILD PUPPY | No. of Pallet: | | |
| **HTS Code.:** 9505102500 | | | |
| | | | |
| **Manufacturer Name & Address** | | | |
| LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | |
| Total:     (428 CTNS) | 3,852 | | 23,034.960 |
| TOTAL (USD) DOLLARS : TWENTY-THREE THOUSAND THIRTY-FOUR AND CENTS NINETY-SIX ONLY. | | | |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
KOCU4846740/24H0857364/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (CHINA) CO., LTD.
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
KOCU4846740/24H0857364/40H

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES
PO#95192364
SKU#810625149
DEPT#360
CARTON 1- OF 428
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

## PACKING LIST

**Invoice No.:** INVL2404079

**Sold To:**      AVDC, LLC
             18880 NAVAJO ROAD
             APPLE VALLEY, CA 92307
             USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** HMM PEARL / 0001E

**Ship on or about:** July 29, 2024

**Invoice Date.:** July 24, 2024

**Delivery To:**    18880 NAVAJO ROAD
             APPLE VALLEY, CA 92307
             USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** LOS ANGELES, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|
| **P/O No.:** 95192364 | 3,852  EA | 1,198.40 | 1,412.40 | 9.419 |
| **SKU No.:** 810625149 | 428  CTNS | | | |
| HOLIDAY SILLY & WILD PUPPY | **No. of Pallet:** | | | |
| **HTS Code.:** 9505102500 | | | | |
| **Total:**        (428 CTNS) | 3,852 | 1,198.40 | 1,412.40 | 9.419 |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
KOCU4846740/24H0857364/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
KOCU4846740/24H0857364/40H

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES
PO#95192364
SKU#810625149
DEPT#360
CARTON 1- OF 428
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2401946**

| | |
|---|---|
| Maker/Supplier: **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404079** |
| Buyer/Consignee: **AVDC, LLC** **18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated: **July 24, 2024** |
| Shipment From: **SHANGHAI**          To: **APPLE VALLEY, CA** | Date of Receipt of Cargo **July 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                  NOTIFY PARTY: GEODIS
STORES                       5101 S. BROAD STREET
PO#95192364                  PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#810625149                ATTN: ALENA LAMINA
DEPT#360              ALSO NOTIFY: EDRAY 2020 LLC.
CARTON 1- OF 428             1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                CHARLOTTE NC 28203 USA
                             TEL: 704-593-6329
                             EMAIL: DATAQUALITY@EDRAYCPL.COM

                          CFS-CY

                          KOCU4846740 (PART)    SEAL# 24H0857364    40H  DRY


                          PO#95192364
                          SKU#810625149
                          HOLIDAY SILLY & WILD PUPPY

                          SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA
                          SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                          MATERIAL


                          428 CARTONS              9.419 CBM    1,412.40 KGS
                          ===============================================
                          TOTAL : FOUR HUNDRED TWENTY-EIGHT (428) CARTONS ONLY

                             "FREIGHT COLLECT"
SHIPMENT PER S.S. "HMM PEARL" VOY NO. 0001E    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 29, 2024. CARGO RECEIVED ON July 21, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                              **July 24, 2024** |
|---|---|

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**



As Agent

(Authorized Signature)                    V1

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2403057 (01/01) | 🖨 | 4 | 2024-05-13 2024-07-18 | 95192364 | CFS | SHANGHAI APPLE VALLEY, CA | CONFIRMED | S/O No. : SHAA1005698 Cargo Delivery : 2024-07-21 (428 ctn, 9.419 cbm, 1412.400 kgs)<br><br>Doc. Submission : 2024-07-24 B/L : HDMUSHAZ67723000 MAWB no.<br><br>FCR No: CNS-SHA-2401946 FCR Draft First Sent Date (GMT+8) : 07/25/2024 19:30:00 FCR Draft Last Sent Date (GMT+8) : 07/25/2024 19:30:00 FCR Confirmation Date (GMT+8) : 07/29/2024 20:00:00 by SYSTEM | 📄 | (HDMU) HMM PEARL V.0001E ETD SHA : 2024-07-29 ATD SHA : 2024-07-29 POD : LOS ANGELES, CA ETA APV : 2024-08-27 VGM Cut-off : 2024-07-26 11:00 |
| CNS-2403027 (01/01) | 🖨 | 4 | 2024-05-13 2024-07-18 | 95192364 | CFS | SHANGHAI APPLE VALLEY, CA | CONFIRMED | S/O No. : SHAA1005695 Cargo Delivery : 2024-07-22 (256 ctn, 6.580 cbm, 798.720 kgs)<br><br>Doc. Submission : 2024-07-24 B/L : OOLU2150650580 MAWB no.<br><br>FCR No: CNS-SHA-2401977 FCR Draft First Sent Date (GMT+8) : 07/29/2024 19:35:00 FCR Draft Last Sent Date (GMT+8) : 07/29/2024 19:35:00 FCR Confirmation Due Date (GMT+8) : 07/31/2024 19:35:00 | 📄 | (OOLU) OOCL POLAND V.0045E ETD SHA : 2024-08-03 ATD SHA POD : LONG BEACH, CA ETA APV : 2024-08-21 VGM Cut-off : 2024-07-26 14:00 |

INVL2404079

Accept    Change Request

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SHA-2401946

| | | |
|---|---|---|
| Maker/Supplier : | DAN DEE INTERNATIONAL , LLC | Maker/Supplier's INVOICE No. **INVL2404079** |
| Buyer/Consignee : | AVDC, LLC<br>18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA | Dated:  **July 24, 2024** |
| Shipment From : | SHANGHAI                To : APPLE VALLEY, CA | Date of Receipt of Cargo<br>**July 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br>PO#95192364<br>SKU#810625149<br>DEPT#360<br>CARTON 1- OF 428<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>           5101 S. BROAD STREET<br>           PHILADELPHIA, PA 19112-1404, U.S.A.<br>           ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>           1300 SOUTH MINT STREET SUITE 200<br>           CHARLOTTE NC 28203 USA<br>           TEL: 704-593-6329<br>           EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>KOCU4846740 (PART)     SEAL# 24H0857364      40H  DRY<br><br><br>PO#95192364<br>SKU#810625149<br>HOLIDAY SILLY & WILD PUPPY<br><br>SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 428 CARTONS | | 9.419 CBM | 1,412.40 KGS |

==========================================================
TOTAL : FOUR HUNDRED TWENTY-EIGHT (428) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "HMM PEARL" VOY NO. 0001E /  DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 29, 2024. CARGO RECEIVED ON July 21, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI                            July 24, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |

Verification Copy



**PO #**         **95192364**

| | |
|---|---|
| Date Created | 02/27/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520          Fax:

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800          Fax: 614-278-6871

**Purchase From Vendor:   1006055**

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:   216-262-1630      Fax
E-Mail:       meegan@matsongroupllc.com

**ADDITIONAL COMMENTS**

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| | 5,388 | 93,054.12 | 36,259.92 | 59.838 |

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

OFFICE-COPY



OFFICE-COPY

# IMPORTANT Terms and Conditions

PO#:   95192364

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.  **Purchase Order.** Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.  **Shipping Goods to a DC.** Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.  **Shipping Goods to a Buyer Store.** Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.  **Inspection of Goods.** Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.  **Cancellation.** Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.  **Buyer Remedies.** If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.  **Disposition of Rejected Goods.** Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.  **Vendor Disposal of Goods.** Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.  **Payment & Taxes.** Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810625149 | HOLIDAY SILLY & WIL | 0.00 | CN | 9 | | 3,852 | 5.98 | 24,765.28 | 08/19/2024 |
| 36008 | PLX03023776 | animated | | | 9 | | 428 | 0.45 | 57,741.48 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 14.99 | 57.908 | |
| 1 | 195511080471 | | SEA | 0.778 | A1 | | | | | |
| 360 | 810625150 | SINGING TREE WITH S | 0.00 | CN | 6 | | 1,536 | 8.61 | 14,337.64 | 08/19/2024 |
| 36008 | PLX02023775 | animated | | | 6 | | 256 | 0.72 | 35,312.64 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 22.99 | 60.147 | 29.99 |
| 2 | 195511080440 | | SEA | 0.931 | A1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404080

**Invoice Date.:** July 05, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** ALS JUNO / 0XR5RE

**Port of Loading:** SHANGHAI

**Ship on or about:** July 21, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95192365 | | 2,160   EA | 8.610/EA | 18,597.600 |
| **SKU No.:** 810625150 | | 360   CTNS | | |
| SINGING TREE WITH STAR | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| | | | | |
| **Manufacturer Name & Address** | | | | |
| TIANCHANG TIANSHENG TOYS CO., LTD ZHANGZHUANG VILLAGE, TIANCHANG TOWN, TIANCHANG, ANHUI 239300, CHINA | | | | |
| Total: | (360 CTNS) | 2,160 | | 18,597.600 |
| **TOTAL (USD) DOLLARS : EIGHTEEN THOUSAND FIVE HUNDRED NINETY-SEVEN AND CENTS SIXTY ONLY.** | | | | |
| | | | | |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95192365
SKU#810625150
DEPT#360
CARTON 1- OF 360
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

Seller reference

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

---

# PACKING LIST

---

**Invoice No.:** INVL2404080

**Sold To:**  CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** ALS JUNO / 0XR5RE

**Ship on or about:** July 21, 2024

**Invoice Date.:** July 05, 2024

**Delivery To:**  2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95192365 | | 2,160  EA | 979.20 | 1,123.20 | 9.253 |
| **SKU No.:** 810625150 | | 360  CTNS | | | |
| SINGING TREE WITH STAR | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** | **(360 CTNS)** | **2,160** | **979.20** | **1,123.20** | **9.253** |

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#95192365
SKU#810625150
DEPT#360
CARTON 1- OF 360
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.  **CNS-SHA-2401791**

| | |
|---|---|
| Maker/Supplier: **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404080** |
| Buyer/Consignee: **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **July 05, 2024** |
| Shipment From: **SHANGHAI**    To: **MONTGOMERY, AL** | Date of Receipt of Cargo **June 22, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                    NOTIFY PARTY: GEODIS
STORES                                    5101 S. BROAD STREET
PO#95192365                               PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#810625150                             ATTN: ALENA LAMINA
DEPT#360                    ALSO NOTIFY: EDRAY 2020 LLC.
CARTON 1-  OF 360                         1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                             CHARLOTTE NC 28203 USA
                                          TEL: 704-593-6329
                                          EMAIL: DATAQUALITY@EDRAYCPL.COM

                            CFS-CY

                            APHU4658634 (PART)    SEAL# R7241393          45' DRY


                            PO#95192365
                            SKU#810625150
                            SINGING TREE WITH STAR

                            SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                            SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                            MATERIAL



                            360 CARTONS              9.253 CBM   1,123.20 KGS
                            ===================================================
                            TOTAL : THREE HUNDRED SIXTY (360) CARTONS ONLY

                                "FREIGHT COLLECT"
SHIPMENT PER S.S. "ALS JUNO" VOY NO. 0XR5RE    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT July 21, 2024. CARGO RECEIVED ON June 22, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                    **July 5, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS**  As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)            V1 |

Filter By: All (Please click on search icon at bottom right to change the "Filter By" value)    ◀◀    ◀    1 - 2 of total 2 records    ▶    ▶▶

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405036 (01/01) 🖉 | 🖶 | 2 | 2024-05-13 2024-05-13 | 95192365 | CFS | SHANGHAI MONTGOMERY, AL | CONFIRMED | S/O No. : SHAM1033639 Cargo Delivery : 2024-06-21 (571 ctn, 13.540 cbm, 1884.300 kgs) Doc. Submission : 2024-07-05 B/L : CMDUCHN1374978 MAWB no : FCR No: CNS-SHA-2401702 FCR Draft First Sent Date (GMT+8) : 07/17/2024 13:32:00 FCR Draft Last Sent Date (GMT+8) : 07/17/2024 13:32:00 FCR Confirmation Date (GMT+8) : 07/19/2024 14:00:00 by SYSTEM | 📄 | (CMDU) COSCO SHIPPING SAKURA V.026E ETD SHA : 2024-07-19 ATD SHA : 2024-07-19 POD : SAVANNAH, GA ETA MGM : 2024-08-30 VGM Cut-off : 2024-07-15 09:30 |
| CNS-2405026 (01/01) 🖉 | 🖶 | 2 | 2024-05-13 2024-05-13 | 95192365 | CFS | SHANGHAI MONTGOMERY, AL | CONFIRMED | S/O No. : SHAM1033634 Cargo Delivery : 2024-06-22 (360 ctn, 9.253 cbm, 1123.200 kgs) Doc. Submission : 2024-07-05 B/L : CMDUCHN1339034 MAWB no : FCR No: CNS-SHA-2401701 FCR Draft First Sent Date (GMT+8) : 07/19/2024 13:33:00 FCR Draft Last Sent Date (GMT+8) : 07/19/2024 13:33:00 FCR Confirmation Date (GMT+8) : 07/23/2024 14:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/24/2024 | 📄 | (CMDU) ALS JUNO V.0XF5RE ETD SHA : 2024-07-23 ATD SHA : 2024-07-23 POD : SAVANNAH, GA ETA MGM : 2024-09-01 VGM Cut-off : 2024-07-16 15:00 |

INVL 24040080

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2401791**

| | | Maker/Supplier's INVOICE No.<br>**INVL2404080** |
|---|---|---|
| Maker/Supplier : | **DAN DEE INTERNATIONAL , LLC** | Dated:  **July 05, 2024** |
| Buyer/Consignee : | **CSC DISTRIBUTION, LLC**<br>**2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Date of Receipt of Cargo |
| Shipment From : | **SHANGHAI**            To : **MONTGOMERY, AL** | **June 22, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95192365<br>SKU#810625150<br>DEPT#360<br>CARTON 1- OF 360<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>    1300 SOUTH MINT STREET SUITE 200<br>    CHARLOTTE NC 28203 USA<br>    TEL: 704-593-6329<br>    EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>APHU4658634 (PART)    SEAL# R7241393        45' DRY<br><br><br>PO#95192365<br>SKU#810625150<br>SINGING TREE WITH STAR<br><br>SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 360 CARTONS | | 9.253 CBM | 1,123.20 KGS |

```
========================================================
TOTAL : THREE HUNDRED SIXTY (360) CARTONS ONLY
========================================================
```

"FREIGHT COLLECT"
SHIPMENT PER S.S. "ALS JUNO" VOY NO. 0XR5RE    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT July 21, 2024, CARGO RECEIVED ON June 22, 2024.

7/3/wine

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI                    July 5, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |



**PO #**    **95192365**

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 02/27/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:  216-262-1630      Fax
E-Mail:       meegan@matsongroupllc.com

**ADDITIONAL COMMENTS**

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| | 7,299 | 126,692.01 | 49,328.82 | 59.829 |

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and virtual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



# IMPORTANT Terms and Conditions

securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|--------------------|------|-------------------|--------|---|--------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810625149 | HOLIDAY SILLY & WIL | 0.00 | CN | 9 | | 5,139 | 5.98 | 33,039.66 | 08/19/2024 |
| 36008 | PLX03023776 | animated | | | 9 | | 571 | 0.45 | 77,033.61 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 14.99 | 57.908 | |
| 1 | 195511080471 | | SEA | 0.778 | A1 | | | | | |
| 360 | 810625150 | SINGING TREE WITH S | 0.00 | CN | 6 | | 2,160 | 8.61 | 20,162.30 | 08/19/2024 |
| 36008 | PLX02023775 | animated | | | 6 | | 360 | 0.72 | 49,658.40 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 22.99 | 60.147 | 29.99 |
| 2 | 195511080440 | | SEA | 0.931 | A1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404081

**Invoice Date.:** July 05, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO SHIPPING SAKURA / 026E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 18, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95192365 | 5,139   EA | 5.980/EA | 30,731.220 |
| **SKU No.:** 810625149 | 571   CTNS | | |
| HOLIDAY SILLY & WILD PUPPY | No. of Pallet: | | |
| **HTS Code.:** 9505102500 | | | |
| **Manufacturer Name & Address** | | | |
| LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | |
| Total:      (571 CTNS) | 5,139 | | 30,731.220 |
| TOTAL (USD) DOLLARS : THIRTY THOUSAND SEVEN HUNDRED THIRTY-ONE AND CENTS TWENTY-TWO ONLY. | | | |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95192365
SKU#810625149
DEPT#360
CARTON 1- OF 571
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404081

**Invoice Date.:** July 05, 2024

**Sold To:**  CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:**  2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO SHIPPING SAKURA / 026E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 18, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95192365 | | 5,139  EA | 1,598.80 | 1,884.30 | 13.540 |
| **SKU No.:** 810625149 | | 571  CTNS | | | |
| HOLIDAY SILLY & WILD PUPPY | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** | **(571 CTNS)** | **5,139** | **1,598.80** | **1,884.30** | **13.540** |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95192365
SKU#810625149
DEPT#360
CARTON 1- OF 571
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2401703**

| | |
|---|---|
| Maker/Supplier: **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404081** |
| Buyer/Consignee: **CSC DISTRIBUTION, LLC**<br>**2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **July 05, 2024** |
| Shipment From: **SHANGHAI**      To: **MONTGOMERY, AL** | Date of Receipt of Cargo<br>**June 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                     NOTIFY PARTY: GEODIS
STORES                                     5101 S. BROAD STREET
                                           PHILADELPHIA, PA 19112-1404, U.S.A.
PO#95192365                                ATTN: ALENA LAMINA
SKU#810625149                ALSO NOTIFY: EDRAY 2020 LLC.
DEPT#360                                   1300 SOUTH MINT STREET SUITE 200
CARTON 1-  OF 571                          CHARLOTTE NC 28203 USA
MADE IN CHINA                              TEL: 704-593-6329
                                           EMAIL: DATAQUALITY@EDRAYCPL.COM

                             CFS-CY

                             BMOU6709124 (PART)    SEAL# R7327317        40H  DRY


                             PO#95192365
                             SKU#810625149
                             HOLIDAY SILLY & WILD PUPPY

                             SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                             SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                             MATERIAL




                             571 CARTONS                13.540 CBM   1,884.30 KGS
                             ===========================================================
                             TOTAL : FIVE HUNDRED SEVENTY-ONE (571) CARTONS ONLY

                             "FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO SHIPPING SAKURA" VOY NO. 026E   DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT July 18, 2024. CARGO RECEIVED ON June 21, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                    **July 5, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS** |
| |  |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | As Agent<br>(Authorized Signature)                    V1 |

Filter By: All (Please click on search icon at bottom right to change the "Filter By" value)    |◄    ◄    1 - 2 of total 2 records    ►    ►►

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS 2405056 (01/01) ✏ | 🖨 | 2 | 2024-05-13 2024-05-13 | 95192365 | CFS | SHANGHAI MONTGOMERY, AL | CONFIRMED | S/O No. : SHAM1033639 Cargo Delivery : 2024-06-21 (571 ctn, 13.540 cbm, 1864.300 kgs) Doc. Submission : 2024-07-05 B/L : CMDUCHN1374878 MAWB no FCR No: CNS-SHA-2401709 FCR Draft First Sent Date (GMT+8) : 07/17/2024 13:32:00 FCR Draft Last Sent Date (GMT+8) : 07/17/2024 13:32:00 FCR Confirmation Date (GMT+8) : 07/19/2024 14:00:00 by SYSTEM | 📄 | (CMDU) COSCO SHIPPING SAKURA V.026E ETD SHA : 2024-07-19 ATD SHA : 2024-07-19 POD : SAVANNAH, GA ETA MGM : 2024-08-30 VGM Cut-off : 2024-07-15 09:30 |
| CNS 2405028 (01/01) ✏ | 🖨 | 2 | 2024-05-13 2024-05-13 | 95192365 | CFS | SHANGHAI MONTGOMERY, AL | CONFIRMED | S/O No. : SHAM1033634 Cargo Delivery : 2024-06-21 (360 ctn, 9.253 cbm, 1123.200 kgs) Doc. Submission : 2024-07-05 B/L : CMDUCHN1333034 MAWB no FCR No: CNS-SHA-2401791 FCR Draft First Sent Date (GMT+8) : 07/19/2024 13:33:00 FCR Draft Last Sent Date (GMT+8) : 07/19/2024 13:33:00 FCR Confirmation Date (GMT+8) : 07/23/2024 14:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/24/2024 | 📄 | (CMDU) ALS JUND V.0XR5RE ETD SHA : 2024-07-23 ATD SHA : 2024-07-23 POD : SAVANNAH, GA ETA MGM : 2024-09-01 VGM Cut-off : 2024-07-16 15:00 |

INVI 2404081

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.   **CNS-SHA-2401703**

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No.<br>**INVL2404081** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC**<br>**2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **July 05, 2024** |
| Shipment From : **SHANGHAI**       To : **MONTGOMERY, AL** | Date of Receipt of Cargo<br>**June 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95192365<br>SKU#810625149<br>DEPT#360<br>CARTON 1- OF 571<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>             5101 S. BROAD STREET<br>             PHILADELPHIA, PA 19112-1404, U.S.A.<br>             ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>             1300 SOUTH MINT STREET SUITE 200<br>             CHARLOTTE NC 28203 USA<br>             TEL: 704-593-6329<br>             EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>BMOU6709124 (PART)     SEAL# R7327317        40H DRY<br><br><br><br>PO#95192365<br>SKU#810625149<br>HOLIDAY SILLY & WILD PUPPY<br><br>SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 571 CARTONS | | 13.540 CBM | 1,884.30 KGS |

==================================================================
TOTAL : FIVE HUNDRED SEVENTY-ONE (571) CARTONS ONLY

                      "FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO SHIPPING SAKURA" VOY NO. 026E    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT July 18, 2024. CARGO RECEIVED ON June 21, 2024.

                7/19/2024

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                    **July 5, 2024** |
| **Verification Copy** | (Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |

Verification Copy



**PO #**    **95192365**

| | |
|---|---|
| Date Created | 02/27/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:   334-286-6633        Fax:   334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:   216-262-1630        Fax
E-Mail:       meegan@matsongroupllc.com

**ADDITIONAL COMMENTS**

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 7,299 | 126,692.01 | 49,328.82 | 59.829 |

OFFICE-COPY



OFFICE-COPY

# IMPORTANT Terms and Conditions

PO#:    95192365

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | | EAS Tag | PDQ Pkg | | |
| 360 | 810625149 | HOLIDAY SILLY & WIL | 0.00 | CN | 9 | | | 5,139 | 5.98 | 33,039.66 | 08/19/2024 |
| 36008 | PLX03023776 | animated | | | 9 | | | 571 | 0.45 | 77,033.61 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | | 14.99 | 57.908 | |
| 1 | 195511080471 | | SEA | 0.778 | A1 | | | | | | |
| 360 | 810625150 | SINGING TREE WITH S | 0.00 | CN | 6 | | | 2,160 | 8.61 | 20,162.30 | 08/19/2024 |
| 36008 | PLX02023775 | animated | | | 6 | | | 360 | 0.72 | 49,658.40 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | | 22.99 | 60.147 | 29.99 |
| 2 | 195511080440 | | SEA | 0.931 | A1 | | | | | | |

# DAN DEE INTERNATIONAL , LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404084

**Invoice Date.:** July 05, 2024

**Sold To:**  DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:**  2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** HYUNDAI PLUTO / 0039E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 12, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95192367 | | 1,482   EA | 8.610/EA | 12,760.020 |
| **SKU No.:** 810625150 | | 247   CTNS | | |
| SINGING TREE WITH STAR | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| | **Manufacturer Name & Address** | | | |
| | TIANCHANG TIANSHENG TOYS CO., LTD ZHANGZHUANG VILLAGE, TIANCHANG TOWN, TIANCHANG, ANHUI 239300, CHINA | | | |
| **Total:** | **(247 CTNS)** | **1,482** | | **12,760.020** |
| TOTAL (USD) DOLLARS : TWELVE THOUSAND SEVEN HUNDRED SIXTY AND CENTS TWO ONLY. | | | | |
| | | | | |

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#95192367
SKU#810625150
DEPT#360
CARTON 1- OF 247
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404084

**Invoice Date.:** July 05, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** HYUNDAI PLUTO / 0039E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 12, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95192367 | | 1,482  EA | 671.84 | 770.64 | 6.349 |
| **SKU No.:** 810625150 | | 247  CTNS | | | |
| SINGING TREE WITH STAR | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** | **(247 CTNS)** | **1,482** | **671.84** | **770.64** | **6.349** |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95192367
SKU#810625150
DEPT#360
CARTON 1- OF 247
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.   **CNS-SHA-2401646**

| | |
|---|---|
| Maker/Supplier: **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No.<br>**INVL2404084** |
| Buyer/Consignee : **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **July 05, 2024** |
| Shipment From : **SHANGHAI**        To : **DURANT, OK** | Date of Receipt of Cargo<br>**June 22, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS**<br>**STORES**<br>**PO#95192367**<br>**SKU#810625150**<br>**DEPT#360**<br>**CARTON 1-  OF 247**<br>**MADE IN CHINA** | | **NOTIFY PARTY: GEODIS**<br>**5101 S. BROAD STREET**<br>**PHILADELPHIA, PA 19112-1404, U.S.A.**<br>**ATTN: ALENA LAMINA**<br>**ALSO NOTIFY: EDRAY 2020 LLC.**<br>**1300 SOUTH MINT STREET SUITE 200**<br>**CHARLOTTE NC 28203 USA**<br>**TEL: 704-593-6329**<br>**EMAIL: DATAQUALITY@EDRAYCPL.COM**<br><br>**CFS-CY**<br><br>**KOCU5113270 (PART)    SEAL# 24H0619716      40H  DRY**<br><br><br>**PO#95192367**<br>**SKU#810625150**<br>**SINGING TREE WITH STAR**<br><br>**SHIP TO CODE & LOCATION : 00879-DURANT, OK**<br>**SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING**<br>**MATERIAL** | | |
| | **247 CARTONS** | | **6.349 CBM** | **770.64 KGS** |

===============================================================
**TOTAL : TWO HUNDRED FORTY-SEVEN (247) CARTONS ONLY**

**"FREIGHT COLLECT"**
**SHIPMENT PER S.S. "HYUNDAI PLUTO" VOY NO. 0039E   DISCHARGED AT LOS ANGELES, CA**
**SAILING ON / ABOUT July 17, 2024. CARGO RECEIVED ON June 22, 2024.**

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                    **July 5, 2024** |
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS** |
| |  |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | As Agent<br>(Authorized Signature)        V1 |

Filter By: All (Please click on search icon at bottom right to change the "Filter By" value)    ◄◄    ◄    1 - 2 of total 2 records    ►    ►►

| Submission No. | Print | Rev. | Date of Submission & Revision | PO No. | Load Type | Leading Port Destination | Status | SO No. FCR No. | Ship Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405640 (01/01) ✏ | 🖶 | 2 | 2024-05-13 2024-05-13 | 95192367 | CFS | SHANGHAI DURANT, OK | CONFIRMED | S/O No. : SHAU1029705 Cargo Delivery : 2024-06-21 (389 ctn, 9.224 cbm, 1283.700 kgs)  Doc. Submission : 2024-07-05 B/L : HDMUSHAZ65641300 MAWB no  FCR No. CNS-SHA-0431648 FCR Draft First Sent Date (GMT+8) : 07/12/2024 08:53:00 FCR Draft Last Sent Date (GMT+8) : 07/12/2024 08:53:00 FCR Confirmation Date (GMT+8) : 07/16/2024 09:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/23/2024 | 📄 | (HDMU) HMM EMERALD V.0002E ETD SHA : 2024-07-22 ATD SHA : 2024-07-22 POD : LOS ANGELES, CA ETA DUA : 2024-08-22 VGM Cut-off : 2024-07-15 09:30 |
| CNS-2405631 (01/01) ✏ | 🖶 | 2 | 2024-05-13 2024-05-13 | 95192367  INV[240U084 | CFS | SHANGHAI DURANT, OK | CONFIRMED | S/O No. : SHAU1029701 Cargo Delivery : 2024-06-22 (247 ctn, 6.349 cbm, 770.640 kgs)  Doc. Submission : 2024-07-05 B/L : HDMUSHAZ65641300 MAWB no  FCR No. CNS-SHA-0431648 FCR Draft First Sent Date (GMT+8) : 07/12/2024 08:51:00 FCR Draft Last Sent Date (GMT+8) : 07/12/2024 08:51:00 FCR Confirmation Date (GMT+8) : 07/16/2024 09:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/23/2024 | 📄 | (HDMU) HMM EMERALD V.0002E ETD SHA : 2024-07-22 ATD SHA : 2024-07-22 POD : LOS ANGELES, CA ETA DUA : 2024-08-22 VGM Cut-off : 2024-07-15 09:30 |

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SHA-2401646

| | | |
|---|---|---|
| | | Maker/Supplier's INVOICE No. |
| Maker/Supplier : | DAN DEE INTERNATIONAL , LLC | **INVL2404084** |
| | | Dated: **July 05, 2024** |
| Buyer/Consignee : | DURANT DC, LLC | |
| | 2306 ENTERPRISE DR, DURANT, OK 74701, USA | Date of Receipt of Cargo |
| Shipment From : | SHANGHAI    To : DURANT, OK | **June 22, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95192367<br>SKU#810625150<br>DEPT#360<br>CARTON 1- OF 247<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>          5101 S. BROAD STREET<br>          PHILADELPHIA, PA 19112-1404, U.S.A.<br>          ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>          1300 SOUTH MINT STREET SUITE 200<br>          CHARLOTTE NC 28203 USA<br>          TEL: 704-593-6329<br>          EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>KOCU5113270 (PART)    SEAL# 24H0619716    40H DRY<br><br><br>PO#95192367<br>SKU#810625150<br>SINGING TREE WITH STAR<br><br>SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 247 CARTONS | | 6.349 CBM | 770.64 KGS |

==================================================
TOTAL : TWO HUNDRED FORTY-SEVEN (247) CARTONS ONLY

HMM EMERALD V. 000&E

"FREIGHT COLLECT"
SHIPMENT PER S.S. "HYUNDAI PLUTO" VOY NO. 0039E   DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 17, 2024. CARGO RECEIVED ON June 22, 2024.

7/22/2024

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI                    July 5, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.) |
| | **YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT**<br>**LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT**<br>**LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |

Verification Copy



**PO #**      **95192367**

| | |
|---|---|
| Date Created | 02/27/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100         Fax:   580-931-2197

---

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800         Fax: 614-278-6871

---

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:   216-262-1630      Fax
E-Mail:       meegan@matsongroupllc.com

---

**ADDITIONAL COMMENTS**

---

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| | 4,983 | 86,551.17 | 33,696.00 | 59.828 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|---|---|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | | EAS Tag | PDQ Pkg | | |
| 360 | 810625149 | HOLIDAY SILLY & WIL | 0.00 | CN | 9 | | | 3,501 | 5.98 | 22,508.63 | 08/19/2024 |
| 36008 | PLX03023776 | animated | | | 9 | | | 389 | 0.45 | 52,479.99 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | | 14.99 | 57.908 | |
| 1 | 195511080471 | | SEA | 0.778 | A1 | | | | | | |
| 360 | 810625150 | SINGING TREE WITH S | 0.00 | CN | 6 | | | 1,482 | 8.61 | 13,833.58 | 08/19/2024 |
| 36008 | PLX02023775 | animated | | | 6 | | | 247 | 0.72 | 34,071.18 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | | 22.99 | 60.147 | 29.99 |
| 2 | 195511080440 | | SEA | 0.931 | A1 | | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404085

**Invoice Date.:** July 05, 2024

**Sold To:**  DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:**  2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** HYUNDAI PLUTO / 0039E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 12, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95192367 | | 3,501  EA | 5.980/EA | 20,935.980 |
| **SKU No.:** 810625149 | | 389  CTNS | | |
| HOLIDAY SILLY & WILD PUPPY | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| | **Manufacturer Name & Address** | | | |
| | LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | |
| **Total:** | **(389 CTNS)** | **3,501** | | **20,935.980** |
| TOTAL (USD) DOLLARS : TWENTY THOUSAND NINE HUNDRED THIRTY-FIVE AND CENTS NINETY-EIGHT ONLY. | | | | |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95192367
SKU#810625149
DEPT#360
CARTON 1- OF 389
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

Seller reference

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404085

**Invoice Date.:** July 05, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** HYUNDAI PLUTO / 0039E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 12, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95192367 | | 3,501  EA | 1,089.20 | 1,283.70 | 9.224 |
| **SKU No.:** 810625149 | | 389  CTNS | | | |
| HOLIDAY SILLY & WILD PUPPY | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** | **(389 CTNS)** | **3,501** | **1,089.20** | **1,283.70** | **9.224** |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95192367
SKU#810625149
DEPT#360
CARTON 1- OF 389
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2401648**

| Maker/Supplier: | **DAN DEE INTERNATIONAL , LLC** |
|---|---|

Maker/Supplier's INVOICE No.
**INVL2404085**

| Buyer/Consignee : | **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** |
|---|---|

Dated:  **July 05, 2024**

| Shipment From : | **SHANGHAI** | To : **DURANT, OK** |
|---|---|---|

Date of Receipt of Cargo
**June 21, 2024**

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                 NOTIFY PARTY: GEODIS
STORES                        5101 S. BROAD STREET
                              PHILADELPHIA, PA 19112-1404, U.S.A.
PO#95192367                   ATTN: ALENA LAMINA
SKU#810625149            ALSO NOTIFY: EDRAY 2020 LLC.
DEPT#360                      1300 SOUTH MINT STREET SUITE 200
CARTON 1-  OF 389             CHARLOTTE NC 28203 USA
MADE IN CHINA                 TEL: 704-593-6329
                              EMAIL: DATAQUALITY@EDRAYCPL.COM

                         CFS-CY

                         KOCU5113270 (PART)    SEAL# 24H0619716    40H  DRY


                         PO#95192367
                         SKU#810625149
                         HOLIDAY SILLY & WILD PUPPY

                         SHIP TO CODE & LOCATION : 00879-DURANT, OK
                         SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                         MATERIAL



                         389 CARTONS               9.224 CBM    1,283.70 KGS
                         =============================================================
                         TOTAL : THREE HUNDRED EIGHTY-NINE (389) CARTONS ONLY

                            "FREIGHT COLLECT"
SHIPMENT PER S.S. "HYUNDAI PLUTO" VOY NO. 0039E   DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 17, 2024. CARGO RECEIVED ON June 21, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI** | **July 5, 2024** |
|---|---|---|

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**



As Agent

(Authorized Signature)      V1

Filter By: All (Please click on search icon at bottom right to change the "Filter By" value)    |◄    ◄    1 - 2 of total 2 records    ►    ►|

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405640 (01/01) | 🖨 | 2 | 2024-05-13 2024-05-13 | 95192367 | CFS | SHANGHAI DURANT, OK | CONFIRMED | S/O No : SHAUT029705 Cargo Delivery : 2024-06-21 (389 ctn, 9.224 cbm, 1283.700 kgs)  Doc. Submission : 2024-07-05 B/L : HDMUSHAZ65641300 MAWB no  FCR No: CNS-SHA-2401648 FCR Draft First Sent Date (GMT+8) : 07/12/2024 08:53:00 FCR Draft Last Sent Date (GMT+8) : 07/12/2024 08:53:00 FCR Confirmation Date (GMT+8) : 07/16/2024 09:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/23/2024 | 📄 | (HDMU) HMM EMERALD V.0002E ETD SHA : 2024-07-22 ATD SHA : 2024-07-22 POD : LOS ANGELES, CA ETA DUA : 2024-08-22 VGM Cutoff : 2024-07-15 09:30 |
| CNS-2405631 (01/01) | 🖨 | 2 | 2024-05-13 2024-05-13 | 95192367 | CFS | SHANGHAI DURANT, OK | CONFIRMED | S/O No : SHAUT029701 Cargo Delivery : 2024-06-22 (247 ctn, 6.349 cbm, 770.640 kgs)  Doc. Submission : 2024-07-05 B/L : HDMUSHAZ65641300 MAWB no  FCR No: CNS-SHA-2401644 FCR Draft First Sent Date (GMT+8) : 07/12/2024 08:51:00 FCR Draft Last Sent Date (GMT+8) : 07/12/2024 08:51:00 FCR Confirmation Date (GMT+8) : 07/16/2024 09:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/23/2024 | 📄 | (HDMU) HMM EMERALD V.0002E ETD SHA : 2024-07-22 ATD SHA : 2024-07-22 POD : LOS ANGELES, CA ETA DUA : 2024-08-22 VGM Cutoff : 2024-07-15 09:30 |

*INVL24040085* (handwritten)

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SHA-2401648

| | Maker/Supplier's INVOICE No. |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | **INVL2404085** |
| | Dated: **July 05, 2024** |
| Buyer/Consignee : **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Date of Receipt of Cargo |
| Shipment From : **SHANGHAI**          To : **DURANT, OK** | **June 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br><br>PO#95192367<br>SKU#810625149<br>DEPT#360<br>CARTON 1- OF 389<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>          5101 S. BROAD STREET<br>          PHILADELPHIA, PA 19112-1404, U.S.A.<br>          ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>          1300 SOUTH MINT STREET SUITE 200<br>          CHARLOTTE NC 28203 USA<br>          TEL: 704-593-6329<br>          EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>KOCU5113270 (PART)    SEAL# 24H0619716       40H  DRY<br><br><br>PO#95192367<br>SKU#810625149<br>HOLIDAY SILLY & WILD PUPPY<br><br>SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL<br><br><br>389 CARTONS | | 9.224 CBM | 1,283.70 KGS |

TOTAL : THREE HUNDRED EIGHTY-NINE (389) CARTONS ONLY

"FREIGHT COLLECT"

HMM EMERALD V 0003E

SHIPMENT PER S.S. "HYUNDAI PLUTO" VOY NO. 0039E    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 17, 2024. CARGO RECEIVED ON June 21, 2024.

7/22/2024

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI                          July 5, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.) |
| | **YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed *** <br> *** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |

Verification Copy



**PO #**          **95192367**

| | |
|---|---|
| Date Created | 02/27/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

SHIP TO

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:  580-931-2197

BILL TO

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:     MEEGAN MCGEE
Telephone:  216-262-1630        Fax
E-Mail:      meegan@matsongroupllc.com

ADDITIONAL COMMENTS

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 4,983 | 86,551.17 | 33,696.00 | 59.828 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses'), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI') signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810625149 | HOLIDAY SILLY & WIL | 0.00 | CN | 9 | | 3,501 | 5.98 | 22,508.63 | 08/19/2024 |
| 36008 | PLX03023776 | animated | | | 9 | | 389 | 0.45 | 52,479.99 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 14.99 | 57.908 | |
| 1 | 195511080471 | | SEA | 0.778 | A1 | | | | | |
| 360 | 810625150 | SINGING TREE WITH S | 0.00 | CN | 6 | | 1,482 | 8.61 | 13,833.58 | 08/19/2024 |
| 36008 | PLX02023775 | animated | | | 6 | | 247 | 0.72 | 34,071.18 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 22.99 | 60.147 | 29.99 |
| 2 | 195511080440 | | SEA | 0.931 | A1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

---

# INVOICE

---

**Invoice No.:** INVL2404086

**Sold To:**   BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** HYUNDAI PLUTO / 0039E

**Ship on or about:** July 12, 2024

**Invoice Date.:** July 05, 2024

**Delivery To:**   500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** LOS ANGELES, CA

**Destination:** COLUMBUS, OH

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95192368 | 2,214   EA | 8.610/EA | 19,062.540 |
| **SKU No.:** 810625150 | 369   CTNS | | |
| SINGING TREE WITH STAR | No. of Pallet: | | |
| **HTS Code.:** 9505102500 | | | |
| | | | |
| <u>Manufacturer Name & Address</u> | | | |
| TIANCHANG TIANSHENG TOYS CO., LTD ZHANGZHUANG VILLAGE, TIANCHANG TOWN, TIANCHANG, ANHUI 239300, CHINA | | | |
| Total:          (369 CTNS) | 2,214 | | 19,062.540 |
| TOTAL (USD) DOLLARS : NINETEEN THOUSAND SIXTY-TWO AND CENTS FIFTY-FOUR ONLY. | | | |
| | | | |

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#95192368
SKU#810625150
DEPT#360
CARTON 1- OF 369
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

Seller reference

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

## PACKING LIST

**Invoice No.:** INVL2404086

**Invoice Date.:** July 05, 2024

**Sold To:** BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:** 500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** HYUNDAI PLUTO / 0039E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 12, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** COLUMBUS, OH

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95192368 | | 2,214  EA | 1,003.68 | 1,151.28 | 9.485 |
| **SKU No.:** 810625150 | | 369  CTNS | | | |
| SINGING TREE WITH STAR | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** | **(369 CTNS)** | **2,214** | **1,003.68** | **1,151.28** | **9.485** |

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#95192368
SKU#810625150
DEPT#360
CARTON 1- OF 369
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics   Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2401631**

| | |
|---|---|
| Maker/Supplier: **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No.<br>**INVL2404086** |
| Buyer/Consignee : **BIG LOTS STORES, LLC**<br>**500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated: **July 05, 2024** |
| Shipment From : **SHANGHAI**          To : **COLUMBUS, OH** | Date of Receipt of Cargo<br>**June 22, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                    NOTIFY PARTY: GEODIS
STORES                                    5101 S. BROAD STREET
PO#95192368                               PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#810625150                             ATTN: ALENA LAMINA
DEPT#360                    ALSO NOTIFY: EDRAY 2020 LLC.
CARTON 1-  OF 369                         1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                             CHARLOTTE NC 28203 USA
                                          TEL: 704-593-6329
                                          EMAIL: DATAQUALITY@EDRAYCPL.COM

                            CFS-CY

                            KOCU4790070 (PART)    SEAL# 24H0619666      40H  DRY


                            PO#95192368
                            SKU#810625150
                            SINGING TREE WITH STAR

                            SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH
                            SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                            MATERIAL



                            369 CARTONS            9.485 CBM    1,151.28 KGS
                            =============================================================
                            TOTAL : THREE HUNDRED SIXTY-NINE (369) CARTONS ONLY

                            "FREIGHT COLLECT"
SHIPMENT PER S.S. "HYUNDAI PLUTO" VOY NO. 0039E   DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 12, 2024. CARGO RECEIVED ON June 22, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                    **July 5, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS** |



No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

As Agent

(Authorized Signature)          V1

Filter By: All (Please click on search icon at bottom right to change the "Filter By" value)    |<<    <    1 - 2 of total 2 records    >    >>|

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | S/O No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405061 (01/01) ✏ | 🖨 | 2 | 2024-05-13 2024-05-13 | 95192368 | CFS | SHANGHAI COLUMBUS, OH | CONFIRMED | S/O No. : SHAC1004351 Cargo Delivery : 2024-06-21 (581 ctn, 13.777 cbm, 1917.300 kgs)  Doc. Submission : 2024-07-05 B/L : HDMUSHAZ80704900 MAWB no.  FCR No.: CNS-SHA-2401632 FCR Draft First Sent Date (GMT+8) : 07/10/2024 19:38:00 FCR Draft Last Sent Date (GMT+8) : 07/10/2024 19:38:00 FCR Confirmation Date (GMT+8) : 07/12/2024 20:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/20/2024 | 📄 | (HDMU) HMM EMERALD V.0002E ETD SHA : 2024-07-22 ATD SHA : 2024-07-22 POD : LOS ANGELES, CA ETA CMH : 2024-08-21 VGM Cut-off : 2024-07-15 09:30 |
| CNS-2405032 (01/01) ✏ | 🖨 | 2 | 2024-05-13 2024-05-13  INVL 2404086 | 95192368 | CFS | SHANGHAI COLUMBUS, OH | CONFIRMED | S/O No. : SHAC1004346 Cargo Delivery : 2024-06-22 (369 ctn, 9.485 cbm, 1151.280 kgs)  Doc. Submission : 2024-07-05 B/L : HDMUSHAZ80704900 MAWB no.  FCR No.: CNS-SHA-2401631 FCR Draft First Sent Date (GMT+8) : 07/10/2024 19:38:00 FCR Draft Last Sent Date (GMT+8) : 07/10/2024 19:38:00 FCR Confirmation Date (GMT+8) : 07/12/2024 20:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/20/2024 | 📄 | (HDMU) HMM EMERALD V.0002E ETD SHA : 2024-07-22 ATD SHA : 2024-07-22 POD : LOS ANGELES, CA ETA CMH : 2024-08-21 VGM Cut-off : 2024-07-15 09:30 |

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SHA-2401631

| | Maker/Supplier's INVOICE No. |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | **INVL2404086** |
| | Dated: **July 05, 2024** |
| Buyer/Consignee : **BIG LOTS STORES, LLC** **500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Date of Receipt of Cargo |
| Shipment From : **SHANGHAI**    To : **COLUMBUS, OH** | **June 22, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES PO#95192368 SKU#810625150 DEPT#360 CARTON 1- OF 369 MADE IN CHINA | | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM CFS-CY KOCU4790070 (PART)    SEAL# 24H0619666    40H DRY PO#95192368 SKU#810625150 SINGING TREE WITH STAR SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 369 CARTONS | | 9.485 CBM | 1,151.28 KGS |
| | TOTAL : THREE HUNDRED SIXTY-NINE (369) CARTONS ONLY | | | |

"FREIGHT COLLECT"

HMM EMERALD VOOODE

SHIPMENT PER S.S. "HYUNDAI PLUTO" VOY NO. 0039E    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 12, 2024. CARGO RECEIVED ON June 22, 2024.

7/22/2024

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI                    July 5, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.) **YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed *** *** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent V1 |

Verification Copy



**PO #**                **95192368**

| | |
|---|---|
| Date Created | 02/27/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800        Fax:   614-278-3809

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:    MEEGAN MCGEE
Telephone:  216-262-1630      Fax
E-Mail:      meegan@matsongroupllc.com

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 7,443 | 129,282.57 | 50,331.96 | 59.828 |

OFFICE-COPY



OFFICE-COPY

# IMPORTANT Terms and Conditions

PO#:    95192368

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner, without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | | EAS Tag | PDQ Pkg | | |
| 360 | 810625149 | HOLIDAY SILLY & WIL | 0.00 | CN | 9 | | | 5,229 | 5.98 | 33,618.29 | 08/19/2024 |
| 36008 | PLX03023776 | animated | | | 9 | | | 581 | 0.45 | 78,382.71 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | | 14.99 | 57.908 | |
| 1 | 195511080471 | | SEA | 0.778 | A1 | | | | | | |
| 360 | 810625150 | SINGING TREE WITH S | 0.00 | CN | 6 | | | 2,214 | 8.61 | 20,666.36 | 08/19/2024 |
| 36008 | PLX02023775 | animated | | | 6 | | | 369 | 0.72 | 50,899.86 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | | 22.99 | 60.147 | 29.99 |
| 2 | 195511080440 | | SEA | 0.931 | A1 | | | | | | |

# DAN DEE INTERNATIONAL, LLC

Seller reference

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404087 **Invoice Date.:** July 05, 2024

**Sold To:** BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:** 500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** HYUNDAI PLUTO / 0039E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 12, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** COLUMBUS, OH

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95192368 | | 5,229   EA | 5.980/EA | 31,269.420 |
| **SKU No.:** 810625149 | | 581   CTNS | | |
| HOLIDAY SILLY & WILD PUPPY | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| | **Manufacturer Name & Address** | | | |
| | LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | |
| **Total:** | **(581 CTNS)** | **5,229** | | **31,269.420** |
| TOTAL (USD) DOLLARS : THIRTY-ONE THOUSAND TWO HUNDRED SIXTY-NINE AND CENTS FORTY-TWO ONLY. | | | | |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95192368
SKU#810625149
DEPT#360
CARTON 1- OF 581
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404087

**Invoice Date.:** July 05, 2024

**Sold To:** BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:** 500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** HYUNDAI PLUTO / 0039E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 12, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** COLUMBUS, OH

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95192368 | | 5,229  EA | 1,626.80 | 1,917.30 | 13.777 |
| **SKU No.:** 810625149 | | 581  CTNS | | | |
| HOLIDAY SILLY & WILD PUPPY | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** | **(581 CTNS)** | **5,229** | **1,626.80** | **1,917.30** | **13.777** |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95192368
SKU#810625149
DEPT#360
CARTON 1- OF 581
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-SHA-2401632**

| | |
|---|---|
| Maker/Supplier: **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404087** |
| Buyer/Consignee : **BIG LOTS STORES, LLC** **500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated: **July 05, 2024** |
| Shipment From : **SHANGHAI**      To : **COLUMBUS, OH** | Date of Receipt of Cargo **June 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                    NOTIFY PARTY: GEODIS
STORES                                    5101 S. BROAD STREET
PO#95192368                               PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#810625149                             ATTN: ALENA LAMINA
DEPT#360                     ALSO NOTIFY: EDRAY 2020 LLC.
CARTON 1-  OF 581                         1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                             CHARLOTTE NC 28203 USA
                                          TEL: 704-593-6329
                                          EMAIL: DATAQUALITY@EDRAYCPL.COM

                             CFS-CY

                             KOCU4790070 (PART)     SEAL# 24H0619666        40H  DRY


                             PO#95192368
                             SKU#810625149
                             HOLIDAY SILLY & WILD PUPPY

                             SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH
                             SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                             MATERIAL




                             581 CARTONS               13.777 CBM    1,917.30 KGS
                             ==============================================================
                             TOTAL : FIVE HUNDRED EIGHTY-ONE (581) CARTONS ONLY

                     "FREIGHT COLLECT"
SHIPMENT PER S.S. "HYUNDAI PLUTO" VOY NO. 0039E   DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 12, 2024. CARGO RECEIVED ON June 21, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**              **July 5, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS**  |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | As Agent (Authorized Signature)                    V1 |

Filter By: All (Please click on search icon at bottom right to change the "Filter By" value)    |<<    <    1 - 2 of total 2 records    >    >>|

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405640 (01/01) 🖊 | 🖨 | 2 | 2024-05-13 2024-05-13 | 95192368 *INVL>404087* | CFS | SHANGHAI COLUMBUS, OH | CONFIRMED | SO No : SHAC1034351 Cargo Delivery : 2024-06-21 (581 ctn, 12,777 cbm, 1917.300 kgs) <br><br> Doc. Submission : 2024-07-05 B/L : HDMUSHAZB0704900 MAWB no. <br><br> FCR No: CNS-SHA-2401632 FCR Draft First Sent Date (GMT+8) : 07/10/2024 19:38:00 FCR Draft Last Sent Date (GMT+8) : 07/10/2024 19:38:00 FCR Confirmation Date (GMT+8) : 07/12/2024 20:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/12/2024 | 📄 | (HDMU) HMM EMERALD V.0002E ETD SHA : 2024-07-22 ATD SHA : 2024-07-22 POD : LOS ANGELES, CA ETA CMH : 2024-08-21 VGM Cutoff : 2024-07-15 09:30 |
| CNS-2405602 (01/01) 🖊 | 🖨 | 2 | 2024-05-13 2024-05-13 | 95192368 | CFS | SHANGHAI COLUMBUS, OH | CONFIRMED | SO No : SHAC1034346 Cargo Delivery : 2024-06-22 (369 ctn, 9.485 cbm, 1151.280 kgs) <br><br> Doc. Submission : 2024-07-05 B/L : HDMUSHAZB0704900 MAWB no. <br><br> FCR No: CNS-SHA-2401631 FCR Draft First Sent Date (GMT+8) : 07/10/2024 19:38:00 FCR Draft Last Sent Date (GMT+8) : 07/10/2024 19:38:00 FCR Confirmation Date (GMT+8) : 07/12/2024 20:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/23/2024 | 📄 | (HDMU) HMM EMERALD V.0002E ETD SHA : 2024-07-22 ATD SHA : 2024-07-22 POD : LOS ANGELES, CA ETA CMH : 2024-08-21 VGM Cutoff : 2024-07-15 09:30 |

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SHA-2401632

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404087** |
| Buyer/Consignee : **BIG LOTS STORES, LLC**<br>**500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated: **July 05, 2024** |
| Shipment From : **SHANGHAI**           To : **COLUMBUS, OH** | Date of Receipt of Cargo<br>**June 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95192368<br>SKU#810625149<br>DEPT#360<br>CARTON 1- OF 581<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>          5101 S. BROAD STREET<br>          PHILADELPHIA, PA 19112-1404, U.S.A.<br>          ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>          1300 SOUTH MINT STREET SUITE 200<br>          CHARLOTTE NC 28203 USA<br>          TEL: 704-593-6329<br>          EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>KOCU4790070 (PART)     SEAL# 24H0619666          40H  DRY<br><br><br>PO#95192368<br>SKU#810625149<br>HOLIDAY SILLY & WILD PUPPY<br><br>SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 581 CARTONS | | 13.777 CBM | 1,917.30 KGS |

================================================================
TOTAL : FIVE HUNDRED EIGHTY-ONE (581) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "HYUNDAI PLUTO" VOY NO. 0039E    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 12, 2024    CARGO RECEIVED ON June 21, 2024.

*(handwritten: HMM EMERALD V 0002E)*
*(handwritten: 7/12/2024)*

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI                          July 5, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |

Verification Copy



**PO #**   **95192368**

| | |
|---|---|
| Date Created | 02/27/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800        Fax:   614-278-3809

---

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

**Purchase From Vendor:**   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:     MEEGAN MCGEE
Telephone:   216-262-1630      Fax
E-Mail:      meegan@matsongroupllc.com

---

**ADDITIONAL COMMENTS**

---

Vendor Signature _____

Signee's Name  _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 7,443 | 129,282.57 | 50,331.96 | 59.828 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms").  The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party.  "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.       Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.       Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.       Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.       Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.       Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.       Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.       Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.       Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.       Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


# IMPORTANT Terms and Conditions

title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | | EAS Tag | PDQ Pkg | | |
| 360 | 810625149 | HOLIDAY SILLY & WIL | 0.00 | CN | 9 | | | 5,229 | 5.98 | 33,618.29 | 08/19/2024 |
| 36008 | PLX03023776 | animated | | | 9 | | | 581 | 0.45 | 78,382.71 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | | 14.99 | 57.908 | |
| 1 | 195511080471 | | SEA | 0.778 | A1 | | | | | | |
| 360 | 810625150 | SINGING TREE WITH S | 0.00 | CN | 6 | | | 2,214 | 8.61 | 20,666.36 | 08/19/2024 |
| 36008 | PLX02023775 | animated | | | 6 | | | 369 | 0.72 | 50,899.86 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | | 22.99 | 60.147 | 29.99 |
| 2 | 195511080440 | | SEA | 0.931 | A1 | | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404088

**Invoice Date.:** July 24, 2024

**Sold To:** AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Delivery To:** 18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL POLAND / 0045E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 30, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95192369 | 576    EA | 8.610/EA | 4,959.360 |
| **SKU No.:** 810625150 | 96    CTNS | | |
| SINGING TREE WITH STAR                    No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | |
| | | | |
| <u>Manufacturer Name & Address</u> | | | |
| TIANCHANG TIANSHENG TOYS CO., LTD ZHANGZHUANG VILLAGE, TIANCHANG TOWN, TIANCHANG, ANHUI 239300, CHINA | | | |
| Total:          (96 CTNS) | 576 | | 4,959.360 |

TOTAL (USD) DOLLARS : FOUR THOUSAND NINE HUNDRED FIFTY-NINE AND CENTS THIRTY-SIX ONLY.

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES
PO#95192369
SKU#810625150
DEPT#360
CARTON 1- OF 96
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

## PACKING LIST

**Invoice No.:** INVL2404088

**Invoice Date.:** July 24, 2024

**Sold To:** AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Delivery To:** 18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL POLAND / 0045E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 30, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95192369 | | 576  EA | 261.12 | 299.52 | 2.468 |
| **SKU No.:** 810625150 | | 96  CTNS | | | |
| SINGING TREE WITH STAR | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** | **(96 CTNS)** | **576** | **261.12** | **299.52** | **2.468** |

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES
PO#95192369
SKU#810625150
DEPT#360
CARTON 1- OF 96
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics · · · Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2401978**

| | |
|---|---|
| Maker/Supplier: **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404088** |
| Buyer/Consignee: **AVDC, LLC**<br>**18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated: **July 24, 2024** |
| Shipment From : **SHANGHAI**         To : **APPLE VALLEY, CA** | Date of Receipt of Cargo **July 22, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br>PO#95192369<br>SKU#810625150<br>DEPT#360<br>CARTON 1- OF 96<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>   5101 S. BROAD STREET<br>   PHILADELPHIA, PA 19112-1404, U.S.A.<br>   ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>   1300 SOUTH MINT STREET SUITE 200<br>   CHARLOTTE NC 28203 USA<br>   TEL: 704-593-6329<br>   EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>OOCU7450361 (PART)    SEAL# OOLHZE7466    40H  DRY<br><br><br>PO#95192369<br>SKU#810625150<br>SINGING TREE WITH STAR<br><br>SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 96 CARTONS | | 2.468 CBM | 299.52 KGS |

==========================================================
TOTAL : NINETY-SIX (96) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "OOCL POLAND" VOY NO. 0045E    DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT July 30, 2024. CARGO RECEIVED ON July 22, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                **July 24, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.<br><br>No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br><br>As Agent<br><br>(Authorized Signature)        V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405063 (01/01) ✏ | 🖶 | 4 | 2024-05-13 2024-07-18 | 95192369 | CFS | SHANGHAI APPLE VALLEY, CA | CONFIRMED | S/O No. : SHAA1005697 Cargo Delivery : 2024-07-21 (411 ctn, 9.206 cbm, 1356.300 kgs) Doc. Submission : 2024-07-24 B/L : HDMUSHAZ67723000 MAWB no.: FCR No. CNS-SHA-2401947 FCR Draft First Sent Date (GMT+8) : 07/25/2024 19:30:00 FCR Draft Last Sent Date (GMT+8) : 07/25/2024 19:30:00 FCR Confirmation Date (GMT+8) : 07/29/2024 20:00:00 by SYSTEM | 📄 | (HDMU) HMM PEARL V.0001E ETD SHA : 2024-07-29 ATD SHA : 2024-07-29 POD : LOS ANGELES, CA ETA APV : 2024-08-21 VGM Cut-off : 2024-07-26 11:00 |
| CNS-2405033 (01/01) ✏ | 🖶 | 4 | 2024-05-13 2024-07-18 | 95192369 | CFS | SHANGHAI APPLE VALLEY, CA | CONFIRMED | S/O No. : SHAA1005694 Cargo Delivery : 2024-07-22 (96 ctn, 2.468 cbm, 299.520 kgs) Doc. Submission : 2024-07-24 B/L : OOLU2150650580 MAWB no.: FCR No. CNS-SHA-2401978 FCR Draft First Sent Date (GMT+8) : 07/29/2024 19:35:00 FCR Draft Last Sent Date (GMT+8) : 07/29/2024 19:35:00 FCR Confirmation Date (GMT+8) : 07/31/2024 20:00:00 by SYSTEM | 📄 | (OOLU) OOCL POLAND V.0045E ETD SHA : 2024-08-04 ATD SHA : 2024-08-04 POD : LONG BEACH, CA ETA APV : 2024-08-24 VGM Cut-off : 2024-07-26 14:00 |

INVL 240U088

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SHA-2401978

| | |
|---|---|
| | Maker/Supplier's INVOICE No. **INVL2404088** |
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | |
| Buyer/Consignee : **AVDC, LLC**  **18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated:  **July 24, 2024** |
| Shipment From : **SHANGHAI**         To : **APPLE VALLEY, CA** | Date of Receipt of Cargo  **July 22, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br>PO#95192369<br>SKU#810625150<br>DEPT#360<br>CARTON 1-  OF 96<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>            5101 S. BROAD STREET<br>            PHILADELPHIA, PA 19112-1404, U.S.A.<br>            ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>            1300 SOUTH MINT STREET SUITE 200<br>            CHARLOTTE NC 28203 USA<br>            TEL: 704-593-6329<br>            EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>OOCU7450361 (PART)      SEAL# OOLHZE7466          40H  DRY<br><br><br>PO#95192369<br>SKU#810625150<br>SINGING TREE WITH STAR<br><br>SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 96 CARTONS | | 2.468 CBM | 299.52 KGS |

================================================================
TOTAL : NINETY-SIX (96) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "OOCL POLAND" VOY NO. 0045E / DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT July 30, 2024, CARGO RECEIVED ON July 22, 2024.

*8/4/2024*

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI                    July 24, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br>V1 |

Verification Copy



**PO #** **95192369**

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 02/27/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520        Fax:

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

**Purchase From Vendor:**   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:   216-262-1630        Fax
E-Mail:       meegan@matsongroupllc.com

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 4,275 | 68,690.25 | 27,079.38 | 59.970 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,
without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810625149 | HOLIDAY SILLY & WIL | 0.00 | CN | 9 | | 3,699 | 5.98 | 23,781.61 | 08/19/2024 |
| 36008 | PLX03023776 | animated | | | 9 | | 411 | 0.45 | 55,448.01 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 14.99 | 57.908 | |
| 1 | 195511080471 | | SEA | 0.778 | A1 | | | | | |
| 360 | 810625150 | SINGING TREE WITH S | 0.00 | CN | 6 | | 576 | 8.61 | 5,376.61 | 08/19/2024 |
| 36008 | PLX02023775 | animated | | | 6 | | 96 | 0.72 | 13,242.24 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 22.99 | 60.147 | 29.99 |
| 2 | 195511080440 | | SEA | 0.931 | A1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404089

**Invoice Date.:** July 24, 2024

**Sold To:** AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Delivery To:** 18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** HMM PEARL / 0001E

**Port of Loading:** SHANGHAI

**Ship on about:** July 29, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95192369 | 3,699 EA | 5.980/EA | 22,120.020 |
| **SKU No.:** 810625149 | 411 CTNS | | |
| HOLIDAY SILLY & WILD PUPPY | No. of Pallet: | | |
| **HTS Code.:** 9505102500 | | | |
| **Manufacturer Name & Address** | | | |
| LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | |
| **Total:** (411 CTNS) | 3,699 | | 22,120.020 |

TOTAL (USD) DOLLARS : TWENTY-TWO THOUSAND ONE HUNDRED TWENTY AND CENTS TWO ONLY.

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
KOCU4846740/24H0857364/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (CHINA) CO., LTD.
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
KOCU4846740/24H0857364/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES
PO#95192369
SKU#810625149
DEPT#360
CARTON 1- OF 411
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

Seller reference

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404089

**Sold To:** AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** HMM PEARL / 0001E

**Ship on or about:** July 29, 2024

**Invoice Date.:** July 24, 2024

**Delivery To:** 18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** LOS ANGELES, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|
| **P/O No.:** 95192369 | 3,699  EA | 1,150.80 | 1,356.30 | 9.206 |
| **SKU No.:** 810625149 | 411  CTNS | | | |
| HOLIDAY SILLY & WILD PUPPY | **No. of Pallet:** | | | |
| **HTS Code.:** 9505102500 | | | | |
| **Total:**  (411 CTNS) | 3,699 | 1,150.80 | 1,356.30 | 9.206 |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
KOCU4846740/24H0857364/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
KOCU4846740/24H0857364/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES
PO#95192369
SKU#810625149
DEPT#360
CARTON 1- OF 411
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2401947**

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No.<br>**INVL2404089** |
| Buyer/Consignee : **AVDC, LLC**<br>**18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated: **July 24, 2024** |
| Shipment From : **SHANGHAI**     To : **APPLE VALLEY, CA** | Date of Receipt of Cargo<br>**July 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS              NOTIFY PARTY: GEODIS
STORES                     5101 S. BROAD STREET
PO#95192369                PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#810625149              ATTN: ALENA LAMINA
DEPT#360              ALSO NOTIFY: EDRAY 2020 LLC.
CARTON 1-  OF 411          1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA              CHARLOTTE NC 28203 USA
                           TEL: 704-593-6329
                           EMAIL: DATAQUALITY@EDRAYCPL.COM

                      CFS-CY

                      KOCU4846740 (PART)    SEAL# 24H0857364      40H  DRY


                      PO#95192369
                      SKU#810625149
                      HOLIDAY SILLY & WILD PUPPY

                      SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA
                      SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                      MATERIAL



                      411 CARTONS              9.206 CBM    1,356.30 KGS
                      ==========================================================
                      TOTAL : FOUR HUNDRED ELEVEN (411) CARTONS ONLY

                          "FREIGHT COLLECT"
SHIPMENT PER S.S. "HMM PEARL" VOY NO. 0001E    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 29, 2024. CARGO RECEIVED ON July 21, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**     **July 24, 2024** |
|---|---|

The Goods and instructions are accepted and dealt with subject to the
**YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard
Trading Conditions printed reverse side. Forwarding instructions can only
be cancelled or altered if the original of this document is surrendered to the
Company and then only provided the Company is still in a position to
comply with such cancellation or alteration. Instructions authorizing
disposal by a third party can only be cancelled or altered if the original of
this document is surrendered to the Company, and then only provided the
Company have not yet received instructions under the original authority.
The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**



As Agent

(Authorized Signature)     V1

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405063 (01/01) ✏ | 🖨 | 4 | 2024-05-13 2024-07-18 | 95192369 *INVL2406089* | CFS | SHANGHAI APPLE VALLEY, CA | CONFIRMED | S/O No. : SHAA1005697 Cargo Delivery : 2024-07-21 (411 ctn, 9.206 cbm, 1356.300 kgs) Doc. Submission : 2024-07-24 B/L : HDMUSHAZ67723000 MAWB no : FCR No: CNS-SHA-2401947 FCR Draft First Sent Date (GMT+8) : 07/25/2024 19:30:00 FCR Draft Last Sent Date (GMT+8) : 07/25/2024 19:30:00 FCR Confirmation Date (GMT+8) : 07/29/2024 20:00:00 by SYSTEM | 📄 | (HDMU) HMM PEARL V.0001E ETD SHA : 2024-07-29 ATD SHA : 2024-07-29 POD : LOS ANGELES, CA ETA APV : 2024-08-27 VGM Cut-off : 2024-07-26 11:00 |
| CNS-2405033 (01/01) ✏ | 🖨 | 4 | 2024-05-13 2024-07-18 | 95192369 | CFS | SHANGHAI APPLE VALLEY, CA | CONFIRMED | S/O No. : SHAA1005694 Cargo Delivery : 2024-07-22 (96 ctn, 2.468 cbm, 299.520 kgs) Doc. Submission : 2024-07-24 B/L : OOLU2150650580 MAWB no : FCR No: CNS-SHA-2401929 FCR Draft First Sent Date (GMT+8) : 07/29/2024 19:35:00 FCR Draft Last Sent Date (GMT+8) : 07/29/2024 19:35:00 FCR Confirmation Due Date (GMT+8) : 07/31/2024 19:35:00 | 📄 | (OOLU) OOCL POLAND V.0045E ETD SHA : 2024-08-03 ATD SHA : POD : LONG BEACH, CA ETA APV : 2024-08-21 VGM Cut-off : 2024-07-26 14:00 |

[ Accept ]    [ Change Request ]

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SHA-2401947

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404089** |
| Buyer/Consignee : **AVDC, LLC**  **18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated: **July 24, 2024** |
| Shipment From : **SHANGHAI**           To : **APPLE VALLEY, CA** | Date of Receipt of Cargo **July 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES PO#95192369 SKU#810625149 DEPT#360 CARTON 1- OF 411 MADE IN CHINA | | NOTIFY PARTY: GEODIS  5101 S. BROAD STREET  PHILADELPHIA, PA 19112-1404, U.S.A.  ATTN: ALENA LAMINA  ALSO NOTIFY: EDRAY 2020 LLC.  1300 SOUTH MINT STREET SUITE 200  CHARLOTTE NC 28203 USA  TEL: 704-593-6329  EMAIL: DATAQUALITY@EDRAYCPL.COM  CFS-CY  KOCU4846740 (PART)      SEAL# 24H0857364      40H  DRY  PO#95192369  SKU#810625149  HOLIDAY SILLY & WILD PUPPY  SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA  SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING  MATERIAL | | |
| | 411 CARTONS | | 9.206 CBM | 1,356.30 KGS |

===========================================================
TOTAL : FOUR HUNDRED ELEVEN (411) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "HMM PEARL" VOY NO. 0001E/    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 29, 2024. CARGO RECEIVED ON July 21, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | |
|---|---|
| **Verification Copy** | **SHANGHAI**                    **July 24, 2024**  (Place and date of issue.)  **YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***  *** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent  V1 |



**PO #**  **95192369**

| | |
|---|---|
| Date Created | 02/27/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520          Fax:

---

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800          Fax: 614-278-6871

---

**Purchase From Vendor:**   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:   216-262-1630          Fax
E-Mail:      meegan@matsongroupllc.com

---

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 4,275 | 68,690.25 | 27,079.38 | 59.970 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses'), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810625149 | HOLIDAY SILLY & WIL | 0.00 | CN | 9 | | 3,699 | 5.98 | 23,781.61 | 08/19/2024 |
| 36008 | PLX03023776 | animated | | | 9 | | 411 | 0.45 | 55,448.01 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 14.99 | 57.908 | |
| 1 | 195511080471 | | SEA | 0.778 | A1 | | | | | |
| 360 | 810625150 | SINGING TREE WITH S | 0.00 | CN | 6 | | 576 | 8.61 | 5,376.61 | 08/19/2024 |
| 36008 | PLX02023775 | animated | | | 6 | | 96 | 0.72 | 13,242.24 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 22.99 | 60.147 | 29.99 |
| 2 | 195511080440 | | SEA | 0.931 | A1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404090

**Invoice Date.:** July 05, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** TAYMA EXPRESS / 031E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 07, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95193770 | 660    EA | 8.610/EA | 5,682.600 |
| **SKU No.:** 810625150 | 110    CTNS | | |
| SINGING TREE WITH STAR                            No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | |
| | | | |
| **Manufacturer Name & Address** | | | |
| TIANCHANG TIANSHENG TOYS CO., LTD ZHANGZHUANG VILLAGE, TIANCHANG TOWN, TIANCHANG, ANHUI 239300, CHINA | | | |
| **Total:**        (110 CTNS) | 660 | | 5,682.600 |
| TOTAL (USD) DOLLARS : FIVE THOUSAND SIX HUNDRED EIGHTY-TWO AND CENTS SIXTY ONLY. | | | |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
MOEU1406990/CN52278AK/45'

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
MOEU1406990/CN52278AK/45'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95193770
SKU#810625150
DEPT#360
CARTON 1- OF 110
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404090

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** TAYMA EXPRESS / 031E

**Ship on or about:** July 07, 2024

**Invoice Date.:** July 05, 2024

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

| Cargo Description | Quantity (Unit) | | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95193770 | 660 | EA | 299.20 | 343.20 | 2.827 |
| SKU No.: 810625150 | 110 | CTNS | | | |
| SINGING TREE WITH STAR | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| Total: (110 CTNS) | 660 | | 299.20 | 343.20 | 2.827 |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
MOEU1406990/CN52278AK/45'

We certify that there is no wood packing material in the shipment.

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
MOEU1406990/CN52278AK/45'

**Carton Marks And Number**

BIG LOTS
STORES

PO#95193770
SKU#810625150
DEPT#360
CARTON 1- OF 110
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics     Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-SHA-2401585**

| Maker/Supplier : | **DAN DEE INTERNATIONAL , LLC** |
|---|---|

Maker/Supplier's INVOICE No.
**INVL2404090**

| Buyer/Consignee : | **CSC DISTRIBUTION, LLC** |
|---|---|
| | **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** |

Dated: **July 05, 2024**

| Shipment From : | **SHANGHAI** | To : **MONTGOMERY, AL** |
|---|---|---|

Date of Receipt of Cargo
**June 22, 2024**

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                    NOTIFY PARTY: GEODIS
STORES                                    5101 S. BROAD STREET
PO#95193770                               PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#810625150                             ATTN: ALENA LAMINA
DEPT#360                     ALSO NOTIFY: EDRAY 2020 LLC.
CARTON 1-  OF 110                         1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                             CHARLOTTE NC 28203 USA
                                          TEL: 704-593-6329
                                          EMAIL: DATAQUALITY@EDRAYCPL.COM

                             CFS-CY

                             MOEU1406990 (PART)     SEAL# CN52278AK      45'  DRY


                             PO#95193770
                             SKU#810625150
                             SINGING TREE WITH STAR

                             SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                             SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                             MATERIAL



                             110 CARTONS               2.827 CBM     343.20 KGS
                             =======================================================
                             TOTAL : ONE HUNDRED TEN (110) CARTONS ONLY

                                  "FREIGHT COLLECT"
SHIPMENT PER S.S. "TAYMA EXPRESS" VOY NO. 031E    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT July 7, 2024. CARGO RECEIVED ON June 22, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**     **July 5, 2024** |
|---|---|

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

(Place and date of issue.)
**YUSEN LOGISTICS**



As Agent

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Authorized Signature)     V1

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

Filter By: All (Please click on search icon at bottom right to change the "Filter By" value)    ‹‹    ‹    1 - 2 of total 2 records    ›    ››

| Submission No | Print | Rev | Date of Submission & Revision | PO No | Load Type | Loading Port Destination | Status | SO No. FCR No | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNG 2405064 (61:01) ✏ | 🖶 | 2 | 2024-05-13 2024-05-13 | 95193770 | CFS | SHANGHAI MONTGOMERY, AL | CONFIRMED | S/O No : SHAM1023536 Cargo Delivery : 2024-06-21 (500 ctn, 11.856 cbm, 1650.000 kgs) Doc. Submission : 2024-07-05 B/L : ONEYSH4EUE308300 MAWB no FCR No. CNG-SHA-2401586 FCR Draft First Sent Date (GMT+8) : 07/05/2024 19:31:00 FCR Draft Last Sent Date (GMT+8) : 07/05/2024 19:31:00 FCR Confirmation Date (GMT+8) : 07/09/2024 20:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/19/2024 | 🖻 | (ONEY) DORTMUND EXPRESS V:053E ETD SHA : 2024-07-07 ATD SHA : 2024-07-07 POD : SAVANNAH, GA ETA MGM : 2024-08-24 VGM Cut-off : 2024-07-02 09:30 |
| CNG-2405034 (61:01) ✏ | 🖶 | 2 | 2024-05-13 2024-05-13 | 95193770 INVL2404090 | CFS | SHANGHAI MONTGOMERY, AL | CONFIRMED | S/O No : SHAM1033633 Cargo Delivery : 2024-06-22 (110 ctn, 2.827 cbm, 343.200 kgs) Doc. Submission : 2024-07-05 B/L : ONEYSH4EUE540800 MAWB no FCR No. CNG-SHA-2401583 FCR Draft First Sent Date (GMT+8) : 07/05/2024 19:30:00 FCR Draft Last Sent Date (GMT+8) : 07/05/2024 19:30:00 FCR Confirmation Date (GMT+8) : 07/09/2024 20:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/12/2024 | 🖻 | (ONEY) DORTMUND EXPRESS V:053E ETD SHA : 2024-07-07 ATD SHA : 2024-07-07 POD : SAVANNAH, GA ETA MGM : 2024-08-24 VGM Cut-off : 2024-07-02 09:30 |

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SHA-2401585

| Maker/Supplier : DAN DEE INTERNATIONAL , LLC | Maker/Supplier's INVOICE No. INVL2404090 |
|---|---|
| Buyer/Consignee : CSC DISTRIBUTION, LLC<br>2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA | Dated: July 05, 2024 |
| Shipment From : SHANGHAI    To : MONTGOMERY, AL | Date of Receipt of Cargo<br>June 22, 2024 |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95193770<br>SKU#810625150<br>DEPT#360<br>CARTON 1- OF 110<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>          5101 S. BROAD STREET<br>          PHILADELPHIA, PA 19112-1404, U.S.A.<br>          ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>          1300 SOUTH MINT STREET SUITE 200<br>          CHARLOTTE NC 28203 USA<br>          TEL: 704-593-6329<br>          EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>MOEU1406990 (PART)     SEAL# CN52278AK          45' DRY<br><br><br>PO#95193770<br>SKU#810625150<br>SINGING TREE WITH STAR<br><br>SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL<br><br>110 CARTONS | 2.827 CBM | 343.20 KGS |

=================================================================
TOTAL : ONE HUNDRED TEN (110) CARTONS ONLY

DORTMUND EXPRESS V. 053E

          "FREIGHT COLLECT"
SHIPMENT PER S.S. "TAYMA EXPRESS" VOY NO. 031E    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT July 7, 2024. CARGO RECEIVED ON June 22, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI                    July 5, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.)<br>**YUSEN LOGISTICS** |
| *** Please advise YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED if amendment is needed ***<br>*** Please check with YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |



**PO #**    **95193770**

| | |
|---|---|
| Date Created | 02/27/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

See attached Terms and  Conditions for
additional Big Lots requirements.
A complete list of requirements can be found
on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit
it to BigLotsmsds@chemtelinc.com prior to the time of shipment in
compliance with OSHA 29 CRF.1910.1200. If the product does not require
a Safety Data Sheet (SDS), please disregard this request. Thank you for
assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633       Fax:  334-286-7024

---

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:     MEEGAN MCGEE
Telephone:  216-262-1630        Fax
E-Mail:      meegan@matsongroupllc.com

---

**ADDITIONAL COMMENTS**

---

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 5,160 | 82,628.40 | 32,592.60 | 59.977 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.     Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.     Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.     Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.     Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.     Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.     Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.     Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.     Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.     Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO.  The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer.  A BOL in duplicate must accompany all Vendor invoices.  A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR.  Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual.  Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period").  After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods.  Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms.  For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law.  As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet.  Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification.  Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records").  Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative.  Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit.  In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice.  Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof.  Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs.  Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls.  A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations.  In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate.  Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above.  When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date.  Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law.  Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods.  Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality.  Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information").  "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods.  Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties.  Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry.  Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13.  Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods.  Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected.  The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption.  Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws").  Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor.  Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810625149 | HOLIDAY SILLY & WIL | 0.00 | CN | 9 | | 4,500 | 5.98 | 28,931.40 | 08/19/2024 |
| 36008 | PLX03023776 | animated | | | 9 | | 500 | 0.45 | 67,455.00 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 14.99 | 57.908 | |
| 1 | 195511080471 | | SEA | 0.778 | A1 | | | | | |
| 360 | 810625150 | SINGING TREE WITH S | 0.00 | CN | 6 | | 660 | 8.61 | 6,160.70 | 08/19/2024 |
| 36008 | PLX02023775 | animated | | | 6 | | 110 | 0.72 | 15,173.40 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 22.99 | 60.147 | 29.99 |
| 2 | 195511080440 | | SEA | 0.931 | A1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404091

**Invoice Date.:** July 05, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** TAYMA EXPRESS / 031E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 07, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95193770 | | 4,500    EA | 5.980/EA | 26,910.000 |
| **SKU No.:** 810625149 | | 500    CTNS | | |
| HOLIDAY SILLY & WILD PUPPY | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| | **Manufacturer Name & Address** | | | |
| | LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | |
| **Total:** | **(500 CTNS)** | | **4,500** | **26,910.000** |
| TOTAL (USD) DOLLARS : TWENTY-SIX THOUSAND NINE HUNDRED TEN ONLY. | | | | |
| | | | | |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
SEGU5938191/CN52277AK/45'

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (CHINA) CO., LTD.
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
SEGU5938191/CN52277AK/45'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95193770
SKU#810625149
DEPT#360
CARTON 1- OF 500
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

## PACKING LIST

**Invoice No.:** INVL2404091

**Sold To:**  CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** TAYMA EXPRESS / 031E

**Ship on or about:** July 07, 2024

**Invoice Date.:** July 05, 2024

**Delivery To:**  2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

| Cargo Description | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|
| **P/O No.:** 95193770 | 4,500  EA | 1,400.00 | 1,650.00 | 11.856 |
| **SKU No.:** 810625149 | 500  CTNS | | | |
| HOLIDAY SILLY & WILD PUPPY | **No. of Pallet:** | | | |
| **HTS Code.:** 9505102500 | | | | |
| **Total:**  (500 CTNS) | 4,500 | 1,400.00 | 1,650.00 | 11.856 |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
SEGU5938191/CN52277AK/45'

We certify that there is no wood packing material in the shipment.

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
SEGU5938191/CN52277AK/45'

**Carton Marks And Number**

BIG LOTS
STORES

PO#95193770
SKU#810625149
DEPT#360
CARTON 1- OF 500
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No. **CNS-SHA-2401586**

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404091** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC**<br>**2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **July 05, 2024** |
| Shipment From : **SHANGHAI** To : **MONTGOMERY, AL** | Date of Receipt of Cargo<br>**June 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                  NOTIFY PARTY: GEODIS
STORES                                  5101 S. BROAD STREET
PO#95193770                             PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#810625149                           ATTN: ALENA LAMINA
DEPT#360                  ALSO NOTIFY: EDRAY 2020 LLC.
CARTON 1-  OF 500                       1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                           CHARLOTTE NC 28203 USA
                                        TEL: 704-593-6329
                                        EMAIL: DATAQUALITY@EDRAYCPL.COM

                          CFS-CY

                          SEGU5938191 (PART)     SEAL# CN52277AK      45'  DRY


                          PO#95193770
                          SKU#810625149
                          HOLIDAY SILLY & WILD PUPPY

                          SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                          SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                          MATERIAL



                          500 CARTONS                 11.856 CBM    1,650.00 KGS
                          =========================================================
                          TOTAL : FIVE HUNDRED (500) CARTONS ONLY

                              "FREIGHT COLLECT"
SHIPMENT PER S.S. "TAYMA EXPRESS" VOY NO. 031E    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT July 7, 2024. CARGO RECEIVED ON June 21, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI** | **July 5, 2024** |
|---|---|---|

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**



As Agent

(Authorized Signature)  V1

Filter By: All (Please click on search icon at bottom right to change the "Filter By" value)    |◁◁    ◁    1 - 2 of total 2 records    ▷    ▷▷|

| Submission No. | Print | Rev | Date of Submission & Revision | P.O. No. | Load Type | Loading Port Destination | Status | S/O No FCR No. | Shp Ppt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2403064 (01/01) ✏ | 🖨 | 2 | 2024-05-13 2024-05-13 | 95193770 | CFS | SHANGHAI MONTGOMERY, AL | CONFIRMED | S/O No. : SHAM1033575 Cargo Delivery : 2024-06-21 (500 ctn, 11.856 cbm, 1650.000 kgs)  Doc. Submission : 2024-07-05 B/L : ONEYSH4EUE308300 MAWB no. :  FCR No. CNS-SHA-2401584 FCR Draft First Sent Date (GMT+8) : 07/05/2024 19:31:00 FCR Draft Last Sent Date (GMT+8) : 07/05/2024 19:31:00 FCR Confirmation Date (GMT+8) : 07/09/2024 20:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/18/2024 | 📄 | (ONEY) DORTMUND EXPRESS V.053E ETD SHA : 2024-07-07 ATD SHA : 2024-07-07 POD : SAVANNAH, GA ETA MGM : 2024-08-24 VGM Cutoff : 2024-07-02 09:30 |
| CNS-2403034 (01/01) ✏ | 🖨 | 2 | 2024-05-13 2024-05-13 | 95193770 | CFS | SHANGHAI MONTGOMERY, AL | CONFIRMED | S/O No. : SHAM1033633 Cargo Delivery : 2024-06-22 (110 ctn, 2.827 cbm, 343.200 kgs)  Doc. Submission : 2024-07-05 B/L : ONEYSH4EUE540800 MAWB no. :  FCR No. CNS-SHA-2401585 FCR Draft First Sent Date (GMT+8) : 07/05/2024 19:30:00 FCR Draft Last Sent Date (GMT+8) : 07/05/2024 19:30:00 FCR Confirmation Date (GMT+8) : 07/09/2024 20:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/12/2024 | 📄 | (ONEY) DORTMUND EXPRESS V.053E ETD SHA : 2024-07-07 ATD SHA : 2024-07-07 POD : SAVANNAH, GA ETA MGM : 2024-08-24 VGM Cutoff : 2024-07-02 09:30 |

INVL2404091

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SHA-2401586

| | |
|---|---|
| Maker/Supplier :  **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No.<br>**INVL2404091** |
| Buyer/Consignee :  **CSC DISTRIBUTION, LLC**<br>**2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated:  **July 05, 2024** |
| Shipment From :  **SHANGHAI**      To : **MONTGOMERY, AL** | Date of Receipt of Cargo<br>**June 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95193770<br>SKU#810625149<br>DEPT#360<br>CARTON 1-  OF 500<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>          5101 S. BROAD STREET<br>          PHILADELPHIA, PA 19112-1404, U.S.A.<br>          ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>          1300 SOUTH MINT STREET SUITE 200<br>          CHARLOTTE NC 28203 USA<br>          TEL: 704-593-6329<br>          EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>          CFS-CY<br><br>          SEGU5938191 (PART)     SEAL# CN52277AK          45' DRY<br><br><br><br>          PO#95193770<br>          SKU#810625149<br>          HOLIDAY SILLY & WILD PUPPY<br><br>          SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL<br>          SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>          MATERIAL | | |
| | 500 CARTONS | | 11.856 CBM | 1,650.00 KGS |

TOTAL : FIVE HUNDRED (500) CARTONS ONLY

"FREIGHT COLLECT"

*DORTMUND EXPRESS V.033E*

SHIPMENT PER S.S. ~~"TAYMA EXPRESS"~~ VOY NO. 031E    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT July 7, 2024. CARGO RECEIVED ON June 21, 2024.

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                    **July 5, 2024** |
| **Verification Copy** | (Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |

Verification Copy





| **PO #** | **95193770** |
| --- | --- |
| Date Created | 02/27/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:  216-262-1630        Fax
E-Mail:       meegan@matsongroupllc.com

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
| --- | --- | --- | --- |
| 5,160 | 82,628.40 | 32,592.60 | 59.977 |

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

### Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95193770

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 360 | 810625149 | HOLIDAY SILLY & WIL | 0.00 | CN | 9 | | 4,500 | 5.98 | 28,931.40 | 08/19/2024 |
| 36008 | PLX03023776 | animated | | | 9 | | 500 | 0.45 | 67,455.00 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 14.99 | 57.908 | |
| 1 | 195511080471 | | SEA | 0.778 | A1 | | | | | |
| 360 | 810625150 | SINGING TREE WITH S | 0.00 | CN | 6 | | 660 | 8.61 | 6,160.70 | 08/19/2024 |
| 36008 | PLX02023775 | animated | | | 6 | | 110 | 0.72 | 15,173.40 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 22.99 | 60.147 | 29.99 |
| 2 | 195511080440 | | SEA | 0.931 | A1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404095

**Invoice Date.:** July 05, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** HYUNDAI PLUTO / 0039E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 12, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95193772 | | 3,042   EA | 5.980/EA | 18,191.160 |
| **SKU No.:** 810625149 | | 338   CTNS | | |
| HOLIDAY SILLY & WILD PUPPY | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| | **Manufacturer Name & Address** | | | |
| | LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | |
| **Total:** | **(338 CTNS)** | **3,042** | | **18,191.160** |
| TOTAL (USD) DOLLARS : EIGHTEEN THOUSAND ONE HUNDRED NINETY-ONE AND CENTS SIXTEEN ONLY. | | | | |

We certify that there is no wood packing material in the shipment.

Carton Marks And Number

BIG LOTS
STORES

PO#95193772
SKU#810625149
DEPT#360
CARTON 1- OF 338
MADE IN CHINA

# DAN DEE INTERNATIONAL , LLC

Seller reference

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404095

**Invoice Date.:** July 05, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** HYUNDAI PLUTO / 0039E

**Port of Loading:** SHANGHAI

**Ship on about:** July 12, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95193772 | | 3,042 EA | 946.40 | 1,115.40 | 8.015 |
| **SKU No.:** 810625149 | | 338 CTNS | | | |
| HOLIDAY SILLY & WILD PUPPY | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** | **(338 CTNS)** | **3,042** | **946.40** | **1,115.40** | **8.015** |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95193772
SKU#810625149
DEPT#360
CARTON 1- OF 338
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.   **CNS-SHA-2401647**

| | |
|---|---|
| Maker/Supplier: **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404095** |
| Buyer/Consignee : **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **July 05, 2024** |
| Shipment From : **SHANGHAI**     To : **DURANT, OK** | Date of Receipt of Cargo<br>**June 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                    NOTIFY PARTY: GEODIS
STORES                          5101 S. BROAD STREET
PO#95193772                     PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#810625149                   ATTN: ALENA LAMINA
DEPT#360                    ALSO NOTIFY: EDRAY 2020 LLC.
CARTON 1-  OF 338               1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                   CHARLOTTE NC 28203 USA
                                TEL: 704-593-6329
                                EMAIL: DATAQUALITY@EDRAYCPL.COM

                            CFS-CY

                            KOCU5113270 (PART)    SEAL# 24H0619716      40H  DRY


                            PO#95193772
                            SKU#810625149
                            HOLIDAY SILLY & WILD PUPPY

                            SHIP TO CODE & LOCATION : 00879-DURANT, OK
                            SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                            MATERIAL



                            338 CARTONS            8.015 CBM    1,115.40 KGS
                            =============================================================
                            TOTAL : THREE HUNDRED THIRTY-EIGHT (338) CARTONS ONLY

                    "FREIGHT COLLECT"
SHIPMENT PER S.S. "HYUNDAI PLUTO" VOY NO. 0039E   DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 17, 2024. CARGO RECEIVED ON June 21, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                    **July 5, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS** |



As Agent

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Authorized Signature)          V1

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt. | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405067 (01/01) | 🖨 | 2 | 2024-05-13 2024-05-13 | 95193772 | CFS | SHANGHAI DURANT, OK | CONFIRMED | S/O No. : SHAU1029704 Cargo Delivery : 2024-06-21 (338 ctn, 9.015 cbm, 1115.400 kgs) Doc. Submission : 2024-07-05 B/L : HDMUSHAZ65641900 MAWB no. FCR No : CNS-SHA-2401647 FCR Draft First Sent Date (GMT+8) : 07/12/2024 08:52:00 FCR Draft Last Sent Date (GMT+8) : 07/12/2024 08:52:00 FCR Confirmation Date (GMT+8) : 07/16/2024 09:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/23/2024 | 📄 | (HDMU) HMM EMERALD V:0002E ETD SHA : 2024-07-22 ATD SHA : 2024-07-22 POD : LOS ANGELES, CA ETA DUA : 2024-08-22 VGM Cut-off : 2024-07-15 09:30 |
| CNS-2405036 (01/01) | 🖨 | 2 | 2024-05-13 2024-05-13 | 95193772 | CFS | SHANGHAI DURANT, OK | CONFIRMED | S/O No. : SHAU1029702 Cargo Delivery : 2024-06-22 (78 ctn, 1.799 cbm, 218.400 kgs) Doc. Submission : 2024-07-05 B/L : DOLU2149974260 MAWB no. FCR No : CNS-SHA-2401549 FCR Draft First Sent Date (GMT+8) : 07/09/2024 13:34:00 FCR Draft Last Sent Date (GMT+8) : 07/09/2024 13:34:00 FCR Confirmation Date (GMT+8) : 07/11/2024 14:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/17/2024 | 📄 | (OOLU) OOCL EGYPT V:061E ETD SHA : 2024-07-10 ATD SHA : 2024-07-10 POD : LONG BEACH, CA ETA DUA : 2024-08-05 VGM Cut-off : 2024-07-05 14:00 |

INVL2404095

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SHA-2401647

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404095** |
| Buyer/Consignee : **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **July 05, 2024** |
| Shipment From :   **SHANGHAI**         To : **DURANT, OK** | Date of Receipt of Cargo **June 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS
STORES                     NOTIFY PARTY: GEODIS
                                      5101 S. BROAD STREET
PO#95193772                           PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#810625149                         ATTN: ALENA LAMINA
DEPT#360                   ALSO NOTIFY: EDRAY 2020 LLC.
CARTON 1-  OF 338                     1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                         CHARLOTTE NC 28203 USA
                                      TEL: 704-593-6329
                                      EMAIL: DATAQUALITY@EDRAYCPL.COM

                           CFS-CY

                           KOCU5113270 (PART)     SEAL# 24H0619716      40H  DRY


                           PO#95193772
                           SKU#810625149
                           HOLIDAY SILLY & WILD PUPPY

                           SHIP TO CODE & LOCATION : 00879-DURANT, OK
                           SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                           MATERIAL



                           338 CARTONS              8.015 CBM    1,115.40 KGS
                           =================================================
                           TOTAL : THREE HUNDRED THIRTY-EIGHT (338) CARTONS ONLY
```

HNM2H(EAND) V 0092E

                        "FREIGHT COLLECT"
SHIPMENT PER S.S. "HYUNDAI PLUTO" VOY NO. 0039E    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 17, 2024. CARGO RECEIVED ON June 21, 2024.

7/22/20ME

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI                      July 5, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.) **YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed *** *** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent V1 |

Verification Copy



**PO #**  **95193772**

| | |
|---|---|
| Date Created | 02/27/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

See attached Terms and  Conditions for
additional Big Lots requirements.
A complete list of requirements can be found
on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit
it to BigLotsmsds@chemtelinc.com prior to the time of shipment in
compliance with OSHA 29 CRF.1910.1200. If the product does not require
a Safety Data Sheet (SDS), please disregard this request. Thank you for
assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:  580-931-2197

---

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

**Purchase From Vendor:**   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:  216-262-1630      Fax
E-Mail:      meegan@matsongroupllc.com

---

**ADDITIONAL COMMENTS**

---

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 3,462 | 55,255.38 | 21,807.36 | 59.983 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms").  The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party.  "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.       Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.       Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC").  A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.       Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.       Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.       Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.       Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.       Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.       Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.       Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|-----------|--------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810625149 | HOLIDAY SILLY & WIL | 0.00 | CN | 9 | | 3,042 | 5.98 | 19,557.63 | 08/19/2024 |
| 36008 | PLX03023776 | animated | | | 9 | | 338 | 0.45 | 45,599.58 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 14.99 | 57.908 | |
| 1 | 195511080471 | | SEA | 0.778 | A1 | | | | | |
| 360 | 810625150 | SINGING TREE WITH S | 0.00 | CN | 6 | | 420 | 8.61 | 3,920.45 | 08/19/2024 |
| 36008 | PLX02023775 | animated | | | 6 | | 70 | 0.72 | 9,655.80 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 22.99 | 60.147 | 29.99 |
| 2 | 195511080440 | | SEA | 0.931 | A1 | | | | | |

# DAN DEE INTERNATIONAL , LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404096

**Invoice Date.:** July 05, 2024

**Sold To:** BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:** 500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** DORTMUND EXPRESS / 053E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 10, 2024

**Port of Entry:** NORFOLK, VA

**Destination:** COLUMBUS, OH

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| P/O No.: 95193773 | | 648   EA | 8.610/EA | 5,579.280 |
| SKU No.: 810625150 | | 108   CTNS | | |
| SINGING TREE WITH STAR | No. of Pallet: | | | |
| HTS Code.: 9505102500 | | | | |
| **Manufacturer Name & Address** | | | | |
| TIANCHANG TIANSHENG TOYS CO., LTD ZHANGZHUANG VILLAGE, TIANCHANG TOWN, TIANCHANG, ANHUI 239300, CHINA | | | | |
| Total:     (108 CTNS) | | 648 | | 5,579.280 |
| TOTAL (USD) DOLLARS : FIVE THOUSAND FIVE HUNDRED SEVENTY-NINE AND CENTS TWENTY-EIGHT ONLY. | | | | |
| | | | | |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95193773
SKU#810625150
DEPT#360
CARTON 1- OF 108
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404096

**Sold To:**     BIG LOTS STORES, LLC
                 500 PHILLIPI RD
                 COLUMBUS, OH 43228
                 USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** DORTMUND EXPRESS / 053E

**Ship on or about:** July 10, 2024

**Invoice Date.:** July 05, 2024

**Delivery To:**    500 PHILLIPI RD
                    COLUMBUS, OH 43228
                    USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** NORFOLK, VA

**Destination:** COLUMBUS, OH

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95193773 | | 648  EA | 293.76 | 336.96 | 2.776 |
| **SKU No.:** 810625150 | | 108  CTNS | | | |
| SINGING TREE WITH STAR | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** | **(108 CTNS)** | 648 | 293.76 | 336.96 | 2.776 |

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#95193773
SKU#810625150
DEPT#360
CARTON 1- OF 108
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-SHA-2401600**

| | |
|---|---|
| Maker/Supplier: **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404096** |
| Buyer/Consignee : **BIG LOTS STORES, LLC** **500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated: **July 05, 2024** |
| Shipment From : **SHANGHAI**     To : **COLUMBUS, OH** | Date of Receipt of Cargo **June 22, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                     NOTIFY PARTY: GEODIS
STORES                                     5101 S. BROAD STREET
PO#95193773                                PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#810625150                              ATTN: ALENA LAMINA
DEPT#360                     ALSO NOTIFY: EDRAY 2020 LLC.
CARTON 1-  OF 108                          1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                              CHARLOTTE NC 28203 USA
                                           TEL: 704-593-6329
                                           EMAIL: DATAQUALITY@EDRAYCPL.COM

                             CFS-CY

                             CXDU2188618 (PART)     SEAL# CN65891AJ        45'  DRY


                             PO#95193773
                             SKU#810625150
                             SINGING TREE WITH STAR

                             SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH
                             SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                             MATERIAL



                             108 CARTONS              2.776 CBM      336.96 KGS
                             =================================================
                             TOTAL : ONE HUNDRED EIGHT (108) CARTONS ONLY

                                "FREIGHT COLLECT"
SHIPMENT PER S.S. "DORTMUND EXPRESS" VOY NO. 053E    DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT July 12, 2024. CARGO RECEIVED ON June 22, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**     **July 5, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | As Agent (Authorized Signature)     V1 |

Filter By: All (Please click on search icon at bottom right to change the "Filter By" value)    |<    <    1 - 2 of 2 records    >    >|

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | S/O No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2406068 (01/01) | 🖨 | 2 | 2024-05-13 2024-05-13 | 95193773 | CFS | SHANGHAI COLUMBUS, OH | CONFIRMED | S/O No : SHAC1024350 Cargo Delivery : 2024-06-21 (504 ctn, 11.951 cbm, 1663.200 kgs) Doc Submission : 2024-07-05 B.L : ONEYSH4EUC259600 MAWB no FCR No: CNS-SHA-2401601 FCR Draft First Sent Date (GMT+8) : 07/09/2024 13:34:00 FCR Draft Last Sent Date (GMT+8) : 07/09/2024 13:34:00 FCR Confirmation Date (GMT+8) : 07/11/2024 14:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/18/2024 | 📄 | (ONEY) DORTMUND EXPRESS V.053E ETD SHA : 2024-07-13 ATD SHA : 2024-07-13 POD : NORFOLK, VA ETA CMH : 2024-08-30 VGM Cut-off : 2024-07-08 16:30 |
| CNS-2406037 (01/01) | 🖨 | 2 | 2024-05-13 2024-05-13 | 95193773 | CFS | SHANGHAI COLUMBUS, OH | CONFIRMED | S/O No : SHAC1034347 Cargo Delivery : 2024-06-22 (108 ctn, 2.776 cbm, 336.960 kgs) Doc Submission : 2024-07-05 B.L : ONEYSH4EUC259600 MAWB no FCR No: CNS-SHA-2401600 FCR Draft First Sent Date (GMT+8) : 07/09/2024 13:34:00 FCR Draft Last Sent Date (GMT+8) : 07/09/2024 13:34:00 FCR Confirmation Date (GMT+8) : 07/11/2024 14:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/19/2024 | 📄 | (ONEY) DORTMUND EXPRESS V.053E ETD SHA : 2024-07-13 ATD SHA : 2024-07-13 POD : NORFOLK, VA ETA CMH : 2024-08-30 VGM Cut-off : 2024-07-08 16:30 |

INV2404096

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

<u>FORWARDER'S CARGO RECEIPT No.</u>   CNS-SHA-2401600

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404096** |
| | Dated: **July 05, 2024** |
| Buyer/Consignee : **BIG LOTS STORES, LLC**<br>**500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Date of Receipt of Cargo |
| Shipment From : **SHANGHAI**     To : **COLUMBUS, OH** | **June 22, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95193773<br>SKU#810625150<br>DEPT#360<br>CARTON 1- OF 108<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>                5101 S. BROAD STREET<br>                PHILADELPHIA, PA 19112-1404, U.S.A.<br>                ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>                1300 SOUTH MINT STREET SUITE 200<br>                CHARLOTTE NC 28203 USA<br>                TEL: 704-593-6329<br>                EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>CXDU2188618 (PART)    SEAL# CN65891AJ        45' DRY<br><br><br>PO#95193773<br>SKU#810625150<br>SINGING TREE WITH STAR<br><br>SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 108 CARTONS | | 2.776 CBM | 336.96 KGS |

======================================================
TOTAL : ONE HUNDRED EIGHT (108) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "DORTMUND EXPRESS" VOY NO. 053E  DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT July 12, 2024. CARGO RECEIVED ON June 22, 2024.

7/13/2024

| THIS IS NOT A DOCUMENT OF TITLE | |
|---|---|
| **Verification Copy** | SHANGHAI                    July 5, 2024<br><br>(Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| \*\*\* Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed \*\*\*<br>\*\*\* Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance \*\*\* | As Agent<br><br>                                    V1 |



**PO #**      **95193773**

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 02/27/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800        Fax:  614-278-3809

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:    MEEGAN MCGEE
Telephone:  216-262-1630      Fax
E-Mail:     meegan@matsongroupllc.com

**ADDITIONAL COMMENTS**

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| | 5,184 | 82,892.16 | 32,704.56 | 59.979 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | | |
| 360 | 810625149 | HOLIDAY SILLY & WIL | 0.00 | CN | 9 | | | 4,536 | 5.98 | 29,162.85 | 08/19/2024 |
| 36008 | PLX03023776 | animated | | | 9 | | | 504 | 0.45 | 67,994.64 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | | 14.99 | 57.908 | |
| 1 | 195511080471 | | SEA | 0.778 | A1 | | | | | | |
| 360 | 810625150 | SINGING TREE WITH S | 0.00 | CN | 6 | | | 648 | 8.61 | 6,048.69 | 08/19/2024 |
| 36008 | PLX02023775 | animated | | | 6 | | | 108 | 0.72 | 14,897.52 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | | 22.99 | 60.147 | 29.99 |
| 2 | 195511080440 | | SEA | 0.931 | A1 | | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404097

**Invoice Date.:** July 05, 2024

**Sold To:** BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:** 500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** DORTMUND EXPRESS / 053E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 10, 2024

**Port of Entry:** NORFOLK, VA

**Destination:** COLUMBUS, OH

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95193773 | | 4,536   EA | 5.980/EA | 27,125.280 |
| **SKU No.:** 810625149 | | 504   CTNS | | |
| HOLIDAY SILLY & WILD PUPPY | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **Manufacturer Name & Address** | | | | |
| LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | | |
| Total:    (504 CTNS) | | 4,536 | | 27,125.280 |
| TOTAL (USD) DOLLARS : TWENTY-SEVEN THOUSAND ONE HUNDRED TWENTY-FIVE AND CENTS TWENTY-EIGHT ONLY. | | | | |
| | | | | |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95193773
SKU#810625149
DEPT#360
CARTON 1- OF 504
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404097

**Invoice Date.:** July 05, 2024

**Sold To:**   BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:**   500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** DORTMUND EXPRESS / 053E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 10, 2024

**Port of Entry:** NORFOLK, VA

**Destination:** COLUMBUS, OH

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95193773 | | 4,536  EA | 1,411.20 | 1,663.20 | 11.951 |
| **SKU No.:** 810625149 | | 504  CTNS | | | |
| HOLIDAY SILLY & WILD PUPPY | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** | **(504 CTNS)** | **4,536** | **1,411.20** | **1,663.20** | **11.951** |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95193773
SKU#810625149
DEPT#360
CARTON 1- OF 504
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-SHA-2401601**

| | |
|---|---|
| Maker/Supplier: **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404097** |
| Buyer/Consignee: **BIG LOTS STORES, LLC**<br>**500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated: **July 05, 2024** |
| Shipment From: **SHANGHAI**     To: **COLUMBUS, OH** | Date of Receipt of Cargo **June 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS**<br>**STORES**<br>**PO#95193773**<br>**SKU#810625149**<br>**DEPT#360**<br>**CARTON 1- OF 504**<br>**MADE IN CHINA** | | **NOTIFY PARTY: GEODIS**<br>            **5101 S. BROAD STREET**<br>            **PHILADELPHIA, PA 19112-1404, U.S.A.**<br>            **ATTN: ALENA LAMINA**<br>**ALSO NOTIFY: EDRAY 2020 LLC.**<br>            **1300 SOUTH MINT STREET SUITE 200**<br>            **CHARLOTTE NC 28203 USA**<br>            **TEL: 704-593-6329**<br>            **EMAIL: DATAQUALITY@EDRAYCPL.COM**<br><br>**CFS-CY**<br><br>**CXDU2188618 (PART)    SEAL# CN65891AJ    45' DRY**<br><br><br>**PO#95193773**<br>**SKU#810625149**<br>**HOLIDAY SILLY & WILD PUPPY**<br><br>**SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH**<br>**SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL** | | |
| | **504 CARTONS** | | **11.951 CBM** | **1,663.20 KGS** |

**TOTAL : FIVE HUNDRED FOUR (504) CARTONS ONLY**

"FREIGHT COLLECT"

SHIPMENT PER S.S. "DORTMUND EXPRESS" VOY NO. 053E    DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT July 12, 2024. CARGO RECEIVED ON June 21, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                    **July 5, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.<br><br>No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br><br><br>As Agent<br>(Authorized Signature)          V1 |

Filter By: All (Please click on search icon at bottom right to change the "Filter By" value)    ‹‹    ‹    1 - 2 of total 2 records    ›    ››

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Leading Port Destination | Status | S.O No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2409068 (01/01) ✎ | 🖶 | 2 | 2024-05-13 2024-05-13 | 95193773 | CFS | SHANGHAI COLUMBUS, OH | CONFIRMED | S/O No. : SHAC1024350 Cargo Delivery : 2024-06-21 (504 ctn, 11.951 cbm, 1663.200 kgs) Doc. Submission : 2024-07-05 B.L : ONEYSHAEUC259600 MAWB no. FCR No : CNS-SHA-2401602 FCR Draft First Sent Date (GMT+8) : 07/09/2024 13:34:00 FCR Draft Last Sent Date (GMT+8) : 07/09/2024 13:34:00 FCR Confirmation Date (GMT+8) : 07/11/2024 14:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/18/2024 | 📄 | (ONE YI) DORTMUND EXPRESS V.053E ETD SHA : 2024-07-13 ATD SHA : 2024-07-13 POD : NORFOLK, VA ETA CMH : 2024-08-30 VGM Cut-off : 2024-07-08 10:30 |
| CNS-2409037 (01/01) ✎ | 🖶 | 2 | 2024-05-13 2024-05-13 | 95193773 | CFS | SHANGHAI COLUMBUS, OH | CONFIRMED | S/O No. : SHAC1034347 Cargo Delivery : 2024-06-22 (108 ctn, 2.776 cbm, 336.960 kgs) Doc. Submission : 2024-07-05 B.L : ONEYSH4EUC259600 MAWB no. FCR No : CNS-SHA-2401600 FCR Draft First Sent Date (GMT+8) : 07/09/2024 13:34:00 FCR Draft Last Sent Date (GMT+8) : 07/09/2024 13:34:00 FCR Confirmation Date (GMT+8) : 07/11/2024 14:00:00 by SYSTEM FCR Emailed (GMT+8) : 07/19/2024 | 📄 | (ONE YI) DORTMUND EXPRESS V.053E ETD SHA : 2024-07-13 ATD SHA : 2024-07-13 POD : NORFOLK, VA ETA CMH : 2024-08-30 VGM Cut-off : 2024-07-08 10:30 |

INVL>U04097

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.   CNS-SHA-2401601

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | DAN DEE INTERNATIONAL , LLC | **INVL2404097** |
| Buyer/Consignee : | BIG LOTS STORES, LLC<br>500 PHILLIPI RD, COLUMBUS, OH 43228, USA | Dated:  **July 05, 2024** |
| Shipment From : | SHANGHAI              To : COLUMBUS, OH | Date of Receipt of Cargo<br>**June 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95193773<br>SKU#810625149<br>DEPT#360<br>CARTON 1- OF 504<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>           5101 S. BROAD STREET<br>           PHILADELPHIA, PA 19112-1404, U.S.A.<br>           ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>           1300 SOUTH MINT STREET SUITE 200<br>           CHARLOTTE NC 28203 USA<br>           TEL: 704-593-6329<br>           EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>CXDU2188618 (PART)     SEAL# CN65891AJ      45' DRY<br><br><br>PO#95193773<br>SKU#810625149<br>HOLIDAY SILLY & WILD PUPPY<br><br>SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL<br><br><br><br>504 CARTONS | | 11.951 CBM | 1,663.20 KGS |

===========================================================
TOTAL : FIVE HUNDRED FOUR (504) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "DORTMUND EXPRESS" VOY NO. 053E / DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT July 12, 2024. CARGO RECEIVED ON June 21, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | |
|---|---|
| **Verification Copy** | SHANGHAI                    July 5, 2024<br><br>(Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |

Verification Copy



**PO #**           **95193773**

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 02/27/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800        Fax:  614-278-3809

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:   216-262-1630        Fax
E-Mail:       meegan@matsongroupllc.com

**ADDITIONAL COMMENTS**

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| | 5,184 | 82,892.16 | 32,704.56 | 59.979 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810625149 | HOLIDAY SILLY & WIL | 0.00 | CN | 9 | | 4,536 | 5.98 | 29,162.85 | 08/19/2024 |
| 36008 | PLX03023776 | animated | | | 9 | | 504 | 0.45 | 67,994.64 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 14.99 | 57.908 | |
| 1 | 195511080471 | | SEA | 0.778 | A1 | | | | | |
| 360 | 810625150 | SINGING TREE WITH S | 0.00 | CN | 6 | | 648 | 8.61 | 6,048.69 | 08/19/2024 |
| 36008 | PLX02023775 | animated | | | 6 | | 108 | 0.72 | 14,897.52 | |
| 36008008 | Winter Wonder Lane | | H30 | | | | | 22.99 | 60.147 | 29.99 |
| 2 | 195511080440 | | SEA | 0.931 | A1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404098

**Sold To:**  AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** HMM PEARL / 0001E

**Ship on about:** July 29, 2024

**Invoice Date.:** July 24, 2024

**Delivery To:**  18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** LOS ANGELES, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95232443 | 1,938 | EA | 8.980/EA | 17,403.240 |
| **SKU No.:** 810532709 | 323 | CTNS | | |
| RUDOLPH WITH SAXOPHONE | No. of Pallet: | | | |
| **HTS Code.:** 9503000073 | | | | |
| | | | | |
| **P/O No.:** 95232443 | 1,302 | EA | 9.460/EA | 12,316.920 |
| **SKU No.:** 810532179 | 217 | CTNS | | |
| SINGING AND WALKING RUDOLPH | No. of Pallet: | | | |
| **HTS Code.:** 9503000073 | | | | |
| | **Manufacturer Name & Address** | | | |
| | LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | |
| **Total:** | **(540 CTNS)** | | **3,240** | **29,720.160** |

**TOTAL (USD) DOLLARS : TWENTY-NINE THOUSAND SEVEN HUNDRED TWENTY AND CENTS SIXTEEN ONLY.**

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
DFSU7033930/24H0770391/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES
PO#95232443
SKU#810532709

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
DFSU7033930/24H0770391/40H

DEPT#360
CARTON 1- OF 323
MADE IN CHINA
PO#95232443
SKU#810532179
DEPT#360
CARTON 1- OF 217
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404098

**Sold To:**     AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** HMM PEARL / 0001E

**Ship on or about:** July 29, 2024

**Invoice Date.:** July 24, 2024

**Delivery To:**     18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** LOS ANGELES, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95232443 | | 1,938  EA | 956.08 | 1,162.80 | 13.302 |
| **SKU No.:** 810532709 | | 323  CTNS | | | |
| RUDOLPH WITH SAXOPHONE | No. of Pallet: | | | | |
| **HTS Code.:** 9503000073 | | | | | |
| | | | | | |
| **P/O No.:** 95232443 | | 1,302  EA | 566.37 | 729.12 | 10.663 |
| **SKU No.:** 810532179 | | 217  CTNS | | | |
| SINGING AND WALKING RUDOLPH | No. of Pallet: | | | | |
| **HTS Code.:** 9503000073 | | | | | |
| **Total:** | **(540 CTNS)** | **3,240** | **1,522.45** | **1,891.92** | **23.965** |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
DFSU7033930/24H0770391/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
DFSU7033930/24H0770391/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES
PO#95232443
SKU#810532709
DEPT#360
CARTON 1- OF 323
MADE IN CHINA
PO#95232443
SKU#810532179
DEPT#360

CARTON 1- OF 217
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2401948**

| | |
|---|---|
| Maker/Supplier :   **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404098** |
| Buyer/Consignee :   **AVDC, LLC** <br> **18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated:   **July 24, 2024** |
| Shipment From :   **SHANGHAI**       To : **APPLE VALLEY, CA** | Date of Receipt of Cargo <br> **July 20, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS** <br> **STORES** <br> **PO#95232443** <br> **SKU#810532709** <br> **DEPT#360** <br> **CARTON 1- OF 323** <br> **MADE IN CHINA** <br> **PO#95232443** <br> **SKU#810532179** <br> **DEPT#360** <br> **CARTON 1- OF 217** <br> **MADE IN CHINA** | | **NOTIFY PARTY: GEODIS** <br>   **5101 S. BROAD STREET** <br>   **PHILADELPHIA, PA 19112-1404, U.S.A.** <br>   **ATTN: ALENA LAMINA** <br> **ALSO NOTIFY: EDRAY 2020 LLC.** <br>   **1300 SOUTH MINT STREET SUITE 200** <br>   **CHARLOTTE NC 28203 USA** <br>   **TEL: 704-593-6329** <br>   **EMAIL: DATAQUALITY@EDRAYCPL.COM** <br><br> **CFS-CY** <br><br> **DFSU7033930 (PART)**    **SEAL# 24H0770391**      **40H DRY** | | |
| | | **PO#95232443** <br> **SKU#810532709** <br> **RUDOLPH WITH SAXOPHONE** <br> **SKU#810532179** <br> **SINGING AND WALKING RUDOLPH** <br><br> **SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA** <br> **SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL** | | |
| | **540 CARTONS** | | **23.965 CBM** | **1,891.92 KGS** |

======================================================
**TOTAL : FIVE HUNDRED FORTY (540) CARTONS ONLY**

**"FREIGHT COLLECT"**
**SHIPMENT PER S.S. "HMM PEARL" VOY NO. 0001E    DISCHARGED AT LOS ANGELES, CA**
**SAILING ON / ABOUT July 29, 2024. CARGO RECEIVED ON July 20, 2024.**

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**               **July 24, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. <br><br> No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** <br> (Terms and conditions are to be continued to the reverse side hereof.) | (Place and date of issue.) <br> **YUSEN LOGISTICS** <br><br>  <br> As Agent <br><br> (Authorized Signature)      V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

**Filter By:** All          ‹‹      ‹    1 - 1 of total 1 records    ›    ››

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405108 (01/01) ✏ | 🖶 | 3 | 2024-05-14 2024-07-18 | 95232443 | CFS | SHANGHAI APPLE VALLEY, CA | CONFIRMED | S/O No. : SHAA1005701 Cargo Delivery : 2024-07-20 (540 ctn, 23.965 cbm, 1891.920 kgs) Doc. Submission : 2024-07-24 B/L : HDMUSHAZ67792100 MAWB no : FCR No: CNS-SHA-2401948 FCR Draft First Sent Date (GMT+8) : 07/25/2024 19:31:00 FCR Draft Last Sent Date (GMT+8) : 07/25/2024 19:31:00 FCR Confirmation Date (GMT+8) : 07/29/2024 20:00:00 by SYSTEM | 📄 | (HDMU) HMM PEARL V.0001E ETD SHA : 2024-07-29 ATD SHA : 2024-07-29 POD : LOS ANGELES, CA ETA APV : 2024-08-27 VGM Cut-off : 2024-07-26 11:00 |

INVL2V04098

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.   CNS-SHA-2401948

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No.<br>**INVL2404098** |
| Buyer/Consignee : **AVDC, LLC**<br>**18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated: **July 24, 2024** |
| Shipment From : **SHANGHAI**      To : **APPLE VALLEY, CA** | Date of Receipt of Cargo<br>**July 20, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br>PO#95232443<br>SKU#810532709<br>DEPT#360<br>CARTON 1- OF 323<br>MADE IN CHINA<br>PO#95232443<br>SKU#810532179<br>DEPT#360<br>CARTON 1- OF 217<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>   5101 S. BROAD STREET<br>   PHILADELPHIA, PA 19112-1404, U.S.A.<br>   ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>   1300 SOUTH MINT STREET SUITE 200<br>   CHARLOTTE NC 28203 USA<br>   TEL: 704-593-6329<br>   EMAIL: DATAQUALITY@EDRAYCPL.COM<br>CFS-CY<br><br>DFSU7033930 (PART)   SEAL# 24H0770391   40H DRY<br><br><br>PO#95232443<br>SKU#810532709<br>RUDOLPH WITH SAXOPHONE<br>SKU#810532179<br>SINGING AND WALKING RUDOLPH<br><br>SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| 540 CARTONS | | | 23.965 CBM | 1,891.92 KGS |

TOTAL : FIVE HUNDRED FORTY (540) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "HMM PEARL" VOY NO. 0001E / DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 29, 2024. CARGO RECEIVED ON July 20, 2024.

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE<br><br>**Verification Copy** | SHANGHAI              **July 24, 2024**<br>(Place and date of issue.)<br>**YUSEN LOGISTICS** |

\*\*\* Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed \*\*\*
\*\*\* Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance \*\*\*

As Agent

V1



**PO #**            **95232443**

| | |
|---|---|
| Date Created | 03/14/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/08/2024 |
| Cancel if not Shipped by: | 07/15/2024 |
| Must be Routed by: | 06/17/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520          Fax:

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800          Fax: 614-278-6871

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:   216-262-1630          Fax
E-Mail:        meegan@matsongroupllc.com

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 3,240 | 80,967.60 | 29,720.16 | 61.527 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:   95232443

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses'), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI') signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | | EAS Tag | PDQ Pkg | | |
| 360 | 810532709 | RUDOLPH WITH SAXOPH | 0.00 | CN | 6 | | | 1,938 | 8.98 | 19,262.17 | 08/26/2024 |
| 36008 | KX607283MUBI21 | animated | | | 6 | | | 323 | 0.96 | 48,430.62 | |
| 36008008 | Rudolph | | H32 | | | | | | 24.99 | 60.946 | 45.99 |
| 1 | 047475172832 | | SEA | 1.470 | E1 | | | | | | |
| 360 | 810532179 | SINGING AND WALKING | 0.00 | CN | 6 | | | 1,302 | 9.46 | 13,747.04 | 08/26/2024 |
| 36008 | KX827103MU | animated | | | 6 | | | 217 | 1.10 | 32,536.98 | |
| 36008008 | Rudolph | | H32 | | | | | | 24.99 | 58.507 | 38.98 |
| 2 | 047475271030 | | SEA | 1.780 | E1 | | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404099

**Invoice Date.:** July 05, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** ALS JUNO / 0XR5RE

**Port of Loading:** SHANGHAI

**Ship on or about:** July 21, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95232444 | | 2,592   EA | 8.980/EA | 23,276.160 |
| **SKU No.:** 810532709 | | 432   CTNS | | |
| RUDOLPH WITH SAXOPHONE | No. of Pallet: | | | |
| **HTS Code.:** 9503000073 | | | | |
| | | | | |
| **P/O No.:** 95232444 | | 1,494   EA | 9.460/EA | 14,133.240 |
| **SKU No.:** 810532179 | | 249   CTNS | | |
| SINGING AND WALKING RUDOLPH | No. of Pallet: | | | |
| **HTS Code.:** 9503000073 | | | | |
| | <u>Manufacturer Name & Address</u> | | | |
| | LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | |
| **Total:** | **(681 CTNS)** | **4,086** | | **37,409.400** |

**TOTAL (USD) DOLLARS : THIRTY-SEVEN THOUSAND FOUR HUNDRED NINE AND CENTS FORTY ONLY.**

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#95232444
SKU#810532709
DEPT#360
CARTON 1- OF 432
MADE IN CHINA
PO#95232444
SKU#810532179
DEPT#360

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

## PACKING LIST

**Invoice No.:** INVL2404099

**Invoice Date.:** July 05, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** ALS JUNO / 0XR5RE

**Port of Loading:** SHANGHAI

**Ship on or about:** July 21, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95232444 | | 2,592 EA | 1,278.72 | 1,555.20 | 17.236 |
| **SKU No.:** 810532709 | | 432 CTNS | | | |
| RUDOLPH WITH SAXOPHONE | No. of Pallet: | | | | |
| **HTS Code.:** 9503000073 | | | | | |
| **P/O No.:** 95232444 | | 1,494 EA | 649.89 | 836.64 | 12.236 |
| **SKU No.:** 810532179 | | 249 CTNS | | | |
| SINGING AND WALKING RUDOLPH | No. of Pallet: | | | | |
| **HTS Code.:** 9503000073 | | | | | |
| **Total:** | (681 CTNS) | 4,086 | 1,928.61 | 2,391.84 | 29.472 |

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#95232444
SKU#810532709
DEPT#360
CARTON 1- OF 432
MADE IN CHINA
PO#95232444
SKU#810532179
DEPT#360
CARTON 1- OF 249
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2401792**

| Maker/Supplier: | **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404099** |
|---|---|---|
| Buyer/Consignee: | **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **July 05, 2024** |
| Shipment From : | **SHANGHAI**          To : **MONTGOMERY, AL** | Date of Receipt of Cargo **June 27, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                    NOTIFY PARTY: GEODIS
STORES                          5101 S. BROAD STREET
PO#95232444                     PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#810532709                   ATTN: ALENA LAMINA
DEPT#360                    ALSO NOTIFY: EDRAY 2020 LLC.
CARTON 1-  OF 432               1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                   CHARLOTTE NC 28203 USA
PO#95232444                     TEL: 704-593-6329
SKU#810532179                   EMAIL: DATAQUALITY@EDRAYCPL.COM
DEPT#360
CARTON 1-  OF 249           CFS-CY
MADE IN CHINA
                            ECMU8151269 (PART)     SEAL# R7241392        45'  DRY


                            PO#95232444
                            SKU#810532709
                            RUDOLPH WITH SAXOPHONE
                            SKU#810532179
                            SINGING AND WALKING RUDOLPH

                            SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                            SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                            MATERIAL



                            681 CARTONS            29.472 CBM   2,391.84 KGS
                            ==============================================================
                            TOTAL : SIX HUNDRED EIGHTY-ONE (681) CARTONS ONLY

                            "FREIGHT COLLECT"
SHIPMENT PER S.S. "ALS JUNO" VOY NO. 0XR5RE     DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT July 21, 2024. CARGO RECEIVED ON June 27, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                    **July 5, 2024** |
|---|---|

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**

As Agent

(Authorized Signature)        V1

Filter By: All (Please click on search icon at bottom right to change the "Filter By" value)    |◄◄    ◄    1 - 1 of total 1 records    ►    ►►|

| Submission No. | Print | Rev | Date of Submission & Revision | PO No | Load Type | Loading Port Destination | Status | SO No. FCR No. | | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2406109 (01/01) | 🖨 | 2 | 2024-05-14 2024-05-14 | 95232444 | CFS | SHANGHAI MONTGOMERY, AL | CONFIRMED | S/O No.: SWAM1033641 S/O No.: SWAM1033641 Cargo Delivery: 2024-05-27 (681 ctn, 29.472 cbm, 2391.840 kgs) Doc. Submission: 2024-07-05 B/L: CMDUCHN1339032 MAWB no: FCR No: CNS-SHA-2401792 FCR Draft First Sent Date (GMT+8): 07/19/2024 13:33:00 FCR Draft Last Sent Date (GMT+8): 07/19/2024 13:33:00 FCR Confirmation Date (GMT+8): 07/23/2024 14:00:00 by SYSTEM | | 🖹 | CMDU/ALS JUNO V 0XR5RE ETD SHA: 2024-07-23 ATD SHA: 2024-07-23 POD: SAVANNAH, GA ETA MGM: 2024-09-01 VGM Cut-off: 2024-07-16 15:00 |

INVL2404099

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SHA-2401792

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404099** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated:  **July 05, 2024** |
| Shipment From :  **SHANGHAI**           To : **MONTGOMERY, AL** | Date of Receipt of Cargo **June 27, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95232444<br>SKU#810532709<br>DEPT#360<br>CARTON 1- OF 432<br>MADE IN CHINA<br>PO#95232444<br>SKU#810532179<br>DEPT#360<br>CARTON 1- OF 249<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>          5101 S. BROAD STREET<br>          PHILADELPHIA, PA 19112-1404, U.S.A.<br>          ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>          1300 SOUTH MINT STREET SUITE 200<br>          CHARLOTTE NC 28203 USA<br>          TEL: 704-593-6329<br>          EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>ECMU8151269 (PART)     SEAL# R7241392          45' DRY | | |
| | | PO#95232444<br>SKU#810532709<br>RUDOLPH WITH SAXOPHONE<br>SKU#810532179<br>SINGING AND WALKING RUDOLPH<br><br>SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 681 CARTONS | | 29.472 CBM | 2,391.84 KGS |

TOTAL : SIX HUNDRED EIGHTY-ONE (681) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "ALS JUNO" VOY NO. 0XR5RE  DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT July 21, 2024. CARGO RECEIVED ON June 27, 2024.

7/23/2024

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                    **July 5, 2024** |
|---|---|
| ## Verification Copy | (Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |



| **PO #** | **95232444** |
|---|---|

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 03/14/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/24/2024 |
| Cancel if not Shipped by: | 07/01/2024 |
| Must be Routed by: | 06/03/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800         Fax:  614-278-6871

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:     MEEGAN MCGEE
Telephone:  216-262-1630      Fax
E-Mail:      meegan@matsongroupllc.com

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 4,086 | 102,109.14 | 37,409.40 | 61.756 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC").  A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:   95232444

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810532709 | RUDOLPH WITH SAXOPH | 0.00 | CN | 6 | | 2,592 | 8.98 | 25,762.41 | 08/26/2024 |
| 36008 | KX607283MUBI21 | animated | | | 6 | | 432 | 0.96 | 64,774.08 | |
| 36008008 | Rudolph | | H32 | | | | | 24.99 | 60.946 | 45.99 |
| 1 | 047475172832 | | SEA | 1.470 | E1 | | | | | |
| 360 | 810532179 | SINGING AND WALKING | 0.00 | CN | 6 | | 1,494 | 9.46 | 15,774.25 | 08/26/2024 |
| 36008 | KX827103MU | animated | | | 6 | | 249 | 1.10 | 37,335.06 | |
| 36008008 | Rudolph | | H32 | | | | | 24.99 | 58.507 | 38.98 |
| 2 | 047475271030 | | SEA | 1.780 | E1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

## INVOICE

**Invoice No.:** INVL2404100

**Invoice Date.:** July 24, 2024

**Sold To:**  CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:**  50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** AL QIBLA EXPRESS / 032E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 27, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95232445 | | 2,652 EA | 8.980/EA | 23,814.960 |
| **SKU No.:** 810532709 | | 442 CTNS | | |
| RUDOLPH WITH SAXOPHONE | No. of Pallet: | | | |
| **HTS Code.:** 9503000073 | | | | |
| | | | | |
| **P/O No.:** 95232445 | | 1,710 EA | 9.460/EA | 16,176.600 |
| **SKU No.:** 810532179 | | 285 CTNS | | |
| SINGING AND WALKING RUDOLPH | No. of Pallet: | | | |
| **HTS Code.:** 9503000073 | | | | |
| | Manufacturer Name & Address | | | |
| | LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | |
| **Total:** | **(727 CTNS)** | **4,362** | | **39,991.560** |

TOTAL (USD) DOLLARS : THIRTY-NINE THOUSAND NINE HUNDRED NINETY-ONE AND CENTS FIFTY-SIX ONLY.

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
HMMU9014216/191677528/45'

We certify that there is no wood packing material in the shipment.

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
HMMU9014216/191677528/45'

**Carton Marks And Number**

BIG LOTS
STORES

PO#95232445

SKU#810532709
DEPT#360
CARTON 1- OF 442
MADE IN CHINA
PO#95232445
SKU#810532179
DEPT#360
CARTON 1- OF 285
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404100

**Invoice Date.:** July 24, 2024

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** AL QIBLA EXPRESS / 032E

**Port of Loading:** SHANGHAI

**Ship on about:** July 27, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95232445 | | 2,652  EA | 1,308.32 | 1,591.20 | 19.254 |
| **SKU No.:** 810532709 | | 442  CTNS | | | |
| RUDOLPH WITH SAXOPHONE | No. of Pallet: | | | | |
| **HTS Code.:** 9503000073 | | | | | |
| | | | | | |
| **P/O No.:** 95232445 | | 1,710  EA | 743.85 | 957.60 | 14.341 |
| **SKU No.:** 810532179 | | 285  CTNS | | | |
| SINGING AND WALKING RUDOLPH | No. of Pallet: | | | | |
| **HTS Code.:** 9503000073 | | | | | |
| **Total:** | **(727 CTNS)** | **4,362** | **2,052.17** | **2,548.80** | **33.595** |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
HMMU9014216/191677528/45'

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
HMMU9014216/191677528/45'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95232445
SKU#810532709
DEPT#360
CARTON 1- OF 442
MADE IN CHINA
PO#95232445
SKU#810532179

# Yusen Logistics

Yusen Logistics - Yusen Logistics   Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.   **CNS-SHA-2401943**

| | |
|---|---|
| Maker/Supplier: **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404100** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC**  **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **July 24, 2024** |
| Shipment From : **SHANGHAI**    To : **TREMONT, PA** | Date of Receipt of Cargo **July 20, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                      NOTIFY PARTY: GEODIS
STORES                                  5101 S. BROAD STREET
PO#95232445                             PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#810532709                           ATTN: ALENA LAMINA
DEPT#360                      ALSO NOTIFY: EDRAY 2020 LLC.
CARTON 1- OF 442                        1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                           CHARLOTTE NC 28203 USA
PO#95232445                             TEL: 704-593-6329
SKU#810532179                           EMAIL: DATAQUALITY@EDRAYCPL.COM
DEPT#360
CARTON 1- OF 285              CFS-CY
MADE IN CHINA
                              HMMU9014216 (PART)    SEAL# 191677528      45'  DRY


                              PO#95232445
                              SKU#810532709
                              RUDOLPH WITH SAXOPHONE
                              SKU#810532179
                              SINGING AND WALKING RUDOLPH

                              SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                              SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                              MATERIAL



                              727 CARTONS            33.595 CBM   2,548.80 KGS
                              ============================================================
                              TOTAL : SEVEN HUNDRED TWENTY-SEVEN (727) CARTONS ONLY

                                   "FREIGHT COLLECT"
SHIPMENT PER S.S. "AL QIBLA EXPRESS" VOY NO. 032E   DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT July 27, 2024. CARGO RECEIVED ON July 20, 2024.
```

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                        **July 24, 2024** |
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** |
| |  |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | As Agent |
| | (Authorized Signature)               V1 |



**Filter By:** All          1 - 1 of total 1 records

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405111 (01/01) | 🖨 | 4 | 2024-05-14 2024-07-18 | 95232445 | CFS | SHANGHAI TREMONT, PA | CONFIRMED | S/O No. : SHAT1033127 Cargo Delivery : 2024-07-20 (727 ctn, 33.595 cbm, 2548.800 kgs) Doc. Submission : 2024-07-24 B/L : HDMUSHAZ31154000 MAWB no . FCR No: CNS-SHA-2401943 FCR Draft First Sent Date (GMT+8) : 07/25/2024 13:31:00 FCR Draft Last Sent Date (GMT+8) : 07/25/2024 13:31:00 FCR Confirmation Due Date (GMT+8) : 07/29/2024 13:31:00 | 📄 | (HDMU) AL QIBLA EXPRESS V.032E ETD SHA : 2024-07-27 ATD SHA : 2024-07-28 POD : NEW YORK, NY ETA TOX : 2024-09-07 VGM Cut-off : 2024-07-22 11:00 |

INVL NO (6100

**Accept**     **Change Request**

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.   **CNS-SHA-2401943**

| | | |
|---|---|---|
| | | Maker/Supplier's INVOICE No.<br>**INVL2404100** |
| Maker/Supplier : | **DAN DEE INTERNATIONAL , LLC** | Dated:  **July 24, 2024** |
| Buyer/Consignee : | **CLOSEOUT DISTRIBUTION, LLC**<br>**50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Date of Receipt of Cargo |
| Shipment From : | **SHANGHAI**          To : **TREMONT, PA** | **July 20, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95232445<br>SKU#810532709<br>DEPT#360<br>CARTON 1- OF 442<br>MADE IN CHINA<br>PO#95232445<br>SKU#810532179<br>DEPT#360<br>CARTON 1- OF 285<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>          5101 S. BROAD STREET<br>          PHILADELPHIA, PA 19112-1404, U.S.A.<br>          ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>          1300 SOUTH MINT STREET SUITE 200<br>          CHARLOTTE NC 28203 USA<br>          TEL: 704-593-6329<br>          EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>HMMU9014216 (PART)     SEAL# 191677528          45' DRY<br><br><br><br>PO#95232445<br>SKU#810532709<br>RUDOLPH WITH SAXOPHONE<br>SKU#810532179<br>SINGING AND WALKING RUDOLPH<br><br>SHIP TO CODE & LOCATION : 00874-TREMONT, PA<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 727 CARTONS | | 33.595 CBM | 2,548.80 KGS |

======================================================
TOTAL : SEVEN HUNDRED TWENTY-SEVEN (727) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "AL QIBLA EXPRESS" VOY NO. 032E   DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT July 27, 2024. CARGO RECEIVED ON July 20, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI                               July 24, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT**<br>**LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT**<br>**LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |



**PO #**    **95232445**

| | |
|---|---|
| Date Created | 03/14/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:   570-695-2862

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:   216-262-1630        Fax
E-Mail:       meegan@matsongroupllc.com

**ADDITIONAL COMMENTS**

Vendor Signature  _____

Signee's Name    _____

Title    _____

Date    _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 4,362 | 109,006.38 | 39,991.56 | 61.590 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes




securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810532709 | RUDOLPH WITH SAXOPH | 0.00 | CN | 6 | | 2,652 | 8.98 | 26,358.76 | 08/26/2024 |
| 36008 | KX607283MUBI21 | animated | | | 6 | | 442 | 0.96 | 66,273.48 | |
| 36008008 | Rudolph | | H32 | | | | | 24.99 | 60.946 | 45.99 |
| 1 | 047475172832 | | SEA | 1.470 | E1 | | | | | |
| 360 | 810532179 | SINGING AND WALKING | 0.00 | CN | 6 | | 1,710 | 9.46 | 18,054.86 | 08/26/2024 |
| 36008 | KX827103MU | animated | | | 6 | | 285 | 1.10 | 42,732.90 | |
| 36008008 | Rudolph | | H32 | | | | | 24.99 | 58.507 | 38.98 |
| 2 | 047475271030 | | SEA | 1.780 | E1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404101

**Invoice Date.:** July 05, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** HYUNDAI PLUTO / 0039E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 12, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95232446 | | 1,746  EA | 8.980/EA | 15,679.080 |
| **SKU No.:** 810532709 | | 291  CTNS | | |
| RUDOLPH WITH SAXOPHONE | No. of Pallet: | | | |
| **HTS Code.:** 9503000073 | | | | |
| | | | | |
| **P/O No.:** 95232446 | | 1,044  EA | 9.460/EA | 9,876.240 |
| **SKU No.:** 810532179 | | 174  CTNS | | |
| SINGING AND WALKING RUDOLPH | No. of Pallet: | | | |
| **HTS Code.:** 9503000073 | | | | |
| | **Manufacturer Name & Address** LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | |
| **Total:** | **(465 CTNS)** | **2,790** | | **25,555.320** |

**TOTAL (USD) DOLLARS : TWENTY-FIVE THOUSAND FIVE HUNDRED FIFTY-FIVE AND CENTS THIRTY-TWO ONLY.**

We certify that there is no wood packing material in the shipment.

Carton Marks And Number

BIG LOTS
STORES

PO#95232446
SKU#810532709
DEPT#360
CARTON 1- OF 291
MADE IN CHINA
PO#95232446
SKU#810532179
DEPT#360

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404101

**Invoice Date.:** July 05, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** HYUNDAI PLUTO / 0039E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 12, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

| Cargo Description | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|
| **P/O No.:** 95232446 | 1,746 EA | 861.36 | 1,047.60 | 11.610 |
| **SKU No.:** 810532709 | 291 CTNS | | | |
| RUDOLPH WITH SAXOPHONE | No. of Pallet: | | | |
| **HTS Code.:** 9503000073 | | | | |
| | | | | |
| **P/O No.:** 95232446 | 1,044 EA | 454.14 | 584.64 | 8.550 |
| **SKU No.:** 810532179 | 174 CTNS | | | |
| SINGING AND WALKING RUDOLPH | No. of Pallet: | | | |
| **HTS Code.:** 9503000073 | | | | |
| **Total:** (465 CTNS) | 2,790 | 1,315.50 | 1,632.24 | 20.160 |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95232446
SKU#810532709
DEPT#360
CARTON 1- OF 291
MADE IN CHINA
PO#95232446
SKU#810532179
DEPT#360
CARTON 1- OF 174
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.   **CNS-SHA-2401649**

| | |
|---|---|
| Maker/Supplier:  **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No.<br>**INVL2404101** |
| Buyer/Consignee :  **DURANT DC, LLC**<br>    **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated:  **July 05, 2024** |
| Shipment From :  **SHANGHAI**      To : **DURANT, OK** | Date of Receipt of Cargo<br>**June 27, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS<br>STORES**<br><br>**PO#95232446<br>SKU#810532709<br>DEPT#360<br>CARTON 1-  OF 291<br>MADE IN CHINA<br>PO#95232446<br>SKU#810532179<br>DEPT#360<br>CARTON 1-  OF 174<br>MADE IN CHINA** | **NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>    1300 SOUTH MINT STREET SUITE 200<br>    CHARLOTTE NC 28203 USA<br>    TEL: 704-593-6329<br>    EMAIL: DATAQUALITY@EDRAYCPL.COM**<br><br>**CFS-CY**<br><br>**KOCU5112822 (PART)    SEAL# 24H0619544    40H  DRY** | | |

**PO#95232446<br>SKU#810532709<br>RUDOLPH WITH SAXOPHONE<br>SKU#810532179<br>SINGING AND WALKING RUDOLPH**

**SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL**

    **465 CARTONS               20.160 CBM    1,632.24 KGS**
    ==================================================
    **TOTAL : FOUR HUNDRED SIXTY-FIVE (465) CARTONS ONLY**

           **"FREIGHT COLLECT"**
**SHIPMENT PER S.S. "HYUNDAI PLUTO" VOY NO. 0039E   DISCHARGED AT LOS ANGELES, CA<br>SAILING ON / ABOUT July 17, 2024. CARGO RECEIVED ON June 27, 2024.**

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**               **July 5, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.<br><br>No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>Yusen logistics (China) Co.,Ltd.<br>日邮物流(中国)有限公司<br>业务专用章--34<br><br>                           As Agent<br>(Authorized Signature)       V1 |

Filter By: All (Please click on search icon at bottom right to change the 'Filter By' value)    |◄◄    |◄    1 - 1 of total 1 records    ►|    ►►|

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405112 | 🖶 | 2 | 2024-05-14 | 95232446 | CFS | SHANGHAI | CONFIRMED | S/O No. : SH-AU1029758 | 📄 | (HDMJ) HMM EMERALD V.0002E |
| (01/03) | ✏ | | 2024-05-14 | | | DURANT, OK | | Cargo Delivery : 2024-06-27 | | ETD SHA : 2024-07-22 |
| | | | | *INVL2404101* | | | | (465 ctn, 20.160 cbm, 1632.240 kgs) | | ATD SHA : 2024-07-22 |
| | | | | | | | | | | POD : LOS ANGELES, CA |
| | | | | | | | | Doc. Submission : 2024-07-05 | | ETA DUA : 2024-08-22 |
| | | | | | | | | B/L : HDMUSHAZ71944900 | | VGM Cut-off : 2024-07-15 09:30 |
| | | | | | | | | MAWB no. | | |
| | | | | | | | | | | |
| | | | | | | | | FCR No.: CNS-SHA-2401642 | | |
| | | | | | | | | FCR Draft First Sent Date (GMT+8) : 07/12/2024 08:55:00 | | |
| | | | | | | | | FCR Draft Last Sent Date (GMT+8) : 07/12/2024 08:55:00 | | |
| | | | | | | | | FCR Confirmation Date (GMT+8) : 07/16/2024 09:00:00 by SYSTEM | | |

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SHA-2401649

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404101** |
| Buyer/Consignee : **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **July 05, 2024** |
| Shipment From : **SHANGHAI**          To : **DURANT, OK** | Date of Receipt of Cargo **June 27, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br><br>PO#95232446<br>SKU#810532709<br>DEPT#360<br>CARTON 1- OF 291<br>MADE IN CHINA<br>PO#95232446<br>SKU#810532179<br>DEPT#360<br>CARTON 1- OF 174<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>    1300 SOUTH MINT STREET SUITE 200<br>    CHARLOTTE NC 28203 USA<br>    TEL: 704-593-6329<br>    EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>KOCU5112822 (PART)    SEAL# 24H0619544    40H  DRY<br><br><br>PO#95232446<br>SKU#810532709<br>RUDOLPH WITH SAXOPHONE<br>SKU#810532179<br>SINGING AND WALKING RUDOLPH<br><br>SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 465 CARTONS | | 20.160 CBM | 1,632.24 KGS |

TOTAL : FOUR HUNDRED SIXTY-FIVE (465) CARTONS ONLY

HMM EMERALD V 0002E

"FREIGHT COLLECT"
SHIPMENT PER S.S. "HYUNDAI PLUTO" VOY NO. 0039E   DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 17, 2024  CARGO RECEIVED ON June 27, 2024.
7/22/2024

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI                    July 5, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.)<br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br>V1 |



**PO #**      **95232446**

| | |
|---|---|
| Date Created | 03/14/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/24/2024 |
| Cancel if not Shipped by: | 07/01/2024 |
| Must be Routed by: | 06/03/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:   580-931-2197

---

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800         Fax: 614-278-6871

---

**Purchase From Vendor:**   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:     MEEGAN MCGEE
Telephone:  216-262-1630       Fax
E-Mail:      meegan@matsongroupllc.com

---

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 2,790 | 69,722.10 | 25,555.32 | 61.702 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and virtual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.     Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.     Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.     Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.     Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.     Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.     Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.     Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.     Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.     Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|------------|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810532709 | RUDOLPH WITH SAXOPH | 0.00 | CN | 6 | | 1,746 | 8.98 | 17,353.84 | 08/26/2024 |
| 36008 | KX607283MUBI21 | animated | | | 6 | | 291 | 0.96 | 43,632.54 | |
| 36008008 | Rudolph | | H32 | | | | | 24.99 | 60.946 | 45.99 |
| 1 | 047475172832 | | SEA | 1.470 | E1 | | | | | |
| 360 | 810532179 | SINGING AND WALKING | 0.00 | CN | 6 | | 1,044 | 9.46 | 11,022.97 | 08/26/2024 |
| 36008 | KX827103MU | animated | | | 6 | | 174 | 1.10 | 26,089.56 | |
| 36008008 | Rudolph | | H32 | | | | | 24.99 | 58.507 | 38.98 |
| 2 | 047475271030 | | SEA | 1.780 | E1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

---

# INVOICE

---

**Invoice No.:** INVL2404102

**Invoice Date.:** July 05, 2024

**Sold To:**  BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:**  500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** SEASPAN BRAVO / 2430E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 13, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** COLUMBUS, OH

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95232447 | | 2,622   EA | 8.980/EA | 23,545.560 |
| **SKU No.:** 810532709 | | 437   CTNS | | |
| RUDOLPH WITH SAXOPHONE | No. of Pallet: | | | |
| **HTS Code.:** 9503000073 | | | | |
| | | | | |
| **P/O No.:** 95232447 | | 1,554   EA | 9.460/EA | 14,700.840 |
| **SKU No.:** 810532179 | | 259   CTNS | | |
| SINGING AND WALKING RUDOLPH | No. of Pallet: | | | |
| **HTS Code.:** 9503000073 | | | | |
| | Manufacturer Name & Address | | | |
| | LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | |
| **Total:** | **(696 CTNS)** | **4,176** | | **38,246.400** |

TOTAL (USD) DOLLARS : THIRTY-EIGHT THOUSAND TWO HUNDRED FORTY-SIX AND CENTS FORTY ONLY.

---

We certify that there is no wood packing material in the shipment.

Carton Marks And Number

BIG LOTS
STORES

PO#95232447
SKU#810532709
DEPT#360
CARTON 1- OF 437
MADE IN CHINA
PO#95232447
SKU#810532179
DEPT#360

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404102

**Invoice Date.:** July 05, 2024

**Sold To:** BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:** 500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** SEASPAN BRAVO / 2430E

**Port of Loading:** SHANGHAI

**Ship on about:** July 13, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** COLUMBUS, OH

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95232447 | | 2,622 EA | 1,293.52 | 1,573.20 | 17.435 |
| **SKU No.:** 810532709 | | 437 CTNS | | | |
| RUDOLPH WITH SAXOPHONE | No. of Pallet: | | | | |
| **HTS Code.:** 9503000073 | | | | | |
| **P/O No.:** 95232447 | | 1,554 EA | 675.99 | 870.24 | 12.727 |
| **SKU No.:** 810532179 | | 259 CTNS | | | |
| SINGING AND WALKING RUDOLPH | No. of Pallet: | | | | |
| **HTS Code.:** 9503000073 | | | | | |
| **Total:** (696 CTNS) | | 4,176 | 1,969.51 | 2,443.44 | 30.162 |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95232447
SKU#810532709
DEPT#360
CARTON 1- OF 437
MADE IN CHINA
PO#95232447
SKU#810532179
DEPT#360
CARTON 1- OF 259
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-SHA-2401650**

| | |
|---|---|
| Maker/Supplier :  **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No.  **INVL2404102** |
| Buyer/Consignee :  **BIG LOTS STORES, LLC**  **500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated:  **July 05, 2024** |
| Shipment From :  **SHANGHAI**          To :  **COLUMBUS, OH** | Date of Receipt of Cargo  **June 27, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95232447<br>SKU#810532709<br>DEPT#360<br>CARTON 1- OF 437<br>MADE IN CHINA<br>PO#95232447<br>SKU#810532179<br>DEPT#360<br>CARTON 1- OF 259<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>         5101 S. BROAD STREET<br>         PHILADELPHIA, PA 19112-1404, U.S.A.<br>         ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>         1300 SOUTH MINT STREET SUITE 200<br>         CHARLOTTE NC 28203 USA<br>         TEL: 704-593-6329<br>         EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>GAOU6347873 (PART)    SEAL# 24H0619659       40H DRY | | |

PO#95232447
SKU#810532709
RUDOLPH WITH SAXOPHONE
SKU#810532179
SINGING AND WALKING RUDOLPH

SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH
SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
MATERIAL

696 CARTONS                    30.162 CBM    2,443.44 KGS
============================================================
TOTAL : SIX HUNDRED NINETY-SIX (696) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "SEASPAN BRAVO" VOY NO. 2430E    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 17, 2024. CARGO RECEIVED ON June 27, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                              **July 5, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)  **YUSEN LOGISTICS** |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**  (Terms and conditions are to be continued to the reverse side hereof.) | As Agent<br>(Authorized Signature)          V1 |

Filter By: All    «    ‹    1 - 1 of total 1 records    ›    »

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405113 (01/01) | 🖨 ✏ | 2 | 2024-05-14 2024-05-14 | 95232447 | CFS | SHANGHAI COLUMBUS, OH | CONFIRMED | S/O No. : SHAC1034354 Cargo Delivery : 2024-06-27 (696 ctn, 30.162 cbm, 2443.440 kgs) Doc. Submission : 2024-07-05 B/L : HDMUSHAZ46483600 MAWB no. : FCR No. CNS-SHA-2401650 FCR Draft First Sent Date (GMT+8) : 07/12/2024 17:36:00 FCR Draft Last Sent Date (GMT+8) : 07/12/2024 17:36:00 FCR Confirmation Date (GMT+8) : 07/16/2024 18:00:00 by SYSTEM | 📄 | (HDMU) SEASPAN BEYOND V.2431E ETD SHA : 2024-07-26 ATD SHA : 2024-07-28 POD : LOS ANGELES, CA ETA CMH : 2024-08-27 VGM Cut-off : 2024-07-22 11:00 |

INVL 24-04102

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.   CNS-SHA-2401650

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404102** |
| Buyer/Consignee : **BIG LOTS STORES, LLC**<br>**500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated:  **July 05, 2024** |
| Shipment From :  **SHANGHAI**          To : **COLUMBUS, OH** | Date of Receipt of Cargo<br>**June 27, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                    NOTIFY PARTY: GEODIS
STORES                                5101 S. BROAD STREET
                                      PHILADELPHIA, PA 19112-1404, U.S.A.
PO#95232447                           ATTN: ALENA LAMINA
SKU#810532709               ALSO NOTIFY: EDRAY 2020 LLC.
DEPT#360                              1300 SOUTH MINT STREET SUITE 200
CARTON 1- OF 437                     CHARLOTTE NC 28203 USA
MADE IN CHINA                        TEL: 704-593-6329
PO#95232447                          EMAIL: DATAQUALITY@EDRAYCPL.COM
SKU#810532179               CFS-CY
DEPT#360
CARTON 1- OF 259            GAOU6347873 (PART)     SEAL# 24H0619659        40H  DRY
MADE IN CHINA


                            PO#95232447
                            SKU#810532709
                            RUDOLPH WITH SAXOPHONE
                            SKU#810532179
                            SINGING AND WALKING RUDOLPH

                            SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH
                            SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                            MATERIAL


                            696 CARTONS              30.162 CBM    2,443.44 KGS
                            ============================================================
                            TOTAL : SIX HUNDRED NINETY-SIX (696) CARTONS ONLY
```

*SEASPAN BEYOND V 2431E* (handwritten)

                      "FREIGHT COLLECT"
SHIPMENT PER S.S. "SEASPAN BRAVO" VOY NO. 2430E    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 17, 2024.  CARGO RECEIVED ON June 27, 2024.

*7/28/2024* (handwritten)

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI                    July 5, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |



| **PO #** | **95232447** |
|---|---|

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 03/14/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/24/2024 |
| Cancel if not Shipped by: | 07/01/2024 |
| Must be Routed by: | 06/03/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800        Fax:   614-278-3809

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:     MEEGAN MCGEE
Telephone:  216-262-1630        Fax
E-Mail:     meegan@matsongroupllc.com

**ADDITIONAL COMMENTS**

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| | 4,176 | 104,358.24 | 38,246.40 | 61.715 |

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



OFFICE-COPY Case 24-11967-JKS Doc 1259-1 Filed 11/22/24 Page 350 of 418 **IMPORTANT Terms and Conditions** PO#: 95232447

Page 3 of 6

title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:   95232447

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810532709 | RUDOLPH WITH SAXOPH | 0.00 | CN | 6 | | 2,622 | 8.98 | 26,060.58 | 08/26/2024 |
| 36008 | KX607283MUBI21 | animated | | | 6 | | 437 | 0.96 | 65,523.78 | |
| 36008008 | Rudolph | | H32 | | | | | 24.99 | 60.946 | 45.99 |
| 1 | 047475172832 | | SEA | 1.470 | E1 | | | | | |
| 360 | 810532179 | SINGING AND WALKING | 0.00 | CN | 6 | | 1,554 | 9.46 | 16,407.75 | 08/26/2024 |
| 36008 | KX827103MU | animated | | | 6 | | 259 | 1.10 | 38,834.46 | |
| 36008008 | Rudolph | | H32 | | | | | 24.99 | 58.507 | 38.98 |
| 2 | 047475271030 | | SEA | 1.780 | E1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404103

**Invoice Date.:** July 24, 2024

**Sold To:**  AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Delivery To:**  18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL POLAND / 0045E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 30, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95264533 | | 900 | EA | 6.000/EA | 5,400.000 |
| **SKU No.:** 810732437 | | 225 | CTNS | | |
| HOLIDAY DISCO ELF SLIPPER | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| **P/O No.:** 95264533 | | 1,803 | EA | 3.750/EA | 6,761.250 |
| **SKU No.:** 810581914 | | 601 | CTNS | | |
| RUDOLPH CAR COSTUME | No. of Pallet: | | | | |
| **HTS Code.:** 6307909891 | | | | | |
| **P/O No.:** 95264533 | | 900 | EA | 5.500/EA | 4,950.000 |
| **SKU No.:** 810652468 | | 225 | CTNS | | |
| STRIPE ELF SLIPPERS | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | | |
| **Total:** | **(1,051 CTNS)** | **3,603** | | | **17,111.250** |

**TOTAL (USD) DOLLARS : SEVENTEEN THOUSAND ONE HUNDRED ELEVEN AND CENTS TWENTY-FIVE ONLY.**

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES
PO#95264533
SKU#810732437
DEPT#360

CARTON 1- OF 225
MADE IN CHINA
PO#95264533
SKU#810581914
DEPT#360
CARTON 1- OF 601
MADE IN CHINA
PO#95264533
SKU#810652468
DEPT#360
CARTON 1- OF 225
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

---

# PACKING LIST

---

**Invoice No.:** INVL2404103

**Sold To:**     AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** OOCL POLAND / 0045E

**Ship on or about:** July 30, 2024

**Invoice Date.:** July 24, 2024

**Delivery To:**     18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** LONG BEACH, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | | Quantity (Unit) | | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|---|
| **P/O No.:** 95264533 | | 900 | EA | 252.00 | 427.50 | 7.200 |
| **SKU No.:** 810732437 | | 225 | CTNS | | | |
| HOLIDAY DISCO ELF SLIPPER | No. of Pallet: | | | | | |
| **HTS Code.:** 9505906000 | | | | | | |
| **P/O No.:** 95264533 | | 1,803 | EA | 540.90 | 841.40 | 13.436 |
| **SKU No.:** 810581914 | | 601 | CTNS | | | |
| RUDOLPH CAR COSTUME | No. of Pallet: | | | | | |
| **HTS Code.:** 6307909891 | | | | | | |
| **P/O No.:** 95264533 | | 900 | EA | 258.75 | 427.50 | 7.200 |
| **SKU No.:** 810652468 | | 225 | CTNS | | | |
| STRIPE ELF SLIPPERS | No. of Pallet: | | | | | |
| **HTS Code.:** 9505906000 | | | | | | |
| Total: | (1,051 CTNS) | 3,603 | | 1,051.65 | 1,696.40 | 27.836 |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES
PO#95264533
SKU#810732437
DEPT#360
CARTON 1- OF 225
MADE IN CHINA
PO#95264533
SKU#810581914
DEPT#360
CARTON 1- OF 601

MADE IN CHINA
PO#95264533
SKU#810652468
DEPT#360
CARTON 1- OF 225
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-SHA-2401980**

| | |
|---|---|
| Maker/Supplier: **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404103** |
| Buyer/Consignee : **AVDC, LLC** <br> **18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated: **July 24, 2024** |
| Shipment From : **SHANGHAI**      To : **APPLE VALLEY, CA** | Date of Receipt of Cargo **July 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS <br> STORES <br> PO#95264533 <br> SKU#810732437 <br> DEPT#360 <br> CARTON 1- OF 225 <br> MADE IN CHINA <br> PO#95264533 <br> SKU#810581914 <br> DEPT#360 <br> CARTON 1- OF 601 <br> MADE IN CHINA <br> PO#95264533 <br> SKU#810652468 <br> DEPT#360 <br> CARTON 1- OF 225 <br> MADE IN CHINA | | NOTIFY PARTY: GEODIS <br> 5101 S. BROAD STREET <br> PHILADELPHIA, PA 19112-1404, U.S.A. <br> ATTN: ALENA LAMINA <br> ALSO NOTIFY: EDRAY 2020 LLC. <br> 1300 SOUTH MINT STREET SUITE 200 <br> CHARLOTTE NC 28203 USA <br> TEL: 704-593-6329 <br> EMAIL: DATAQUALITY@EDRAYCPL.COM <br><br> CFS-CY <br><br> OOCU8647782 (PART)     SEAL# OOLJQR3416     40H  DRY <br><br><br> PO#95264533 <br> SKU#810732437 <br> HOLIDAY  DISCO ELF SLIPPER <br> SKU#810581914 <br> RUDOLPH CAR COSTUME <br> SKU#810652468 <br> STRIPE ELF SLIPPERS <br><br> SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA <br> SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 1,051 CARTONS | | 27.836 CBM | 1,696.40 KGS |

```
===========================================================
```
TOTAL : ONE THOUSAND FIFTY-ONE (1,051) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "OOCL POLAND" VOY NO. 0045E    DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT July 30, 2024. CARGO RECEIVED ON July 21, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI     July 26, 2024 |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) <br> **YUSEN LOGISTICS** <br><br> Yusen logistics (China) Co.,Ltd. <br> 日邮物流(中国)有限公司 <br> 业务专用章--34 <br><br> As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** <br> (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)     V1 |

Filter By: All (Please click on search icon at bottom right to change the "Filter By" value)    ⏮    ◄    1 - 1 of total 1 records    ►    ⏭

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2406114 (01/01) | 🖨 | 2 | 2024-05-14 2024-05-14 | 95264533 | CFS | SHANGHAI APPLE VALLEY, CA | CONFIRMED | S/O No : SHAA1005702 Cargo Delivery : 2024-07-21 (1051 ctn, 27.836 cbm, 1696.400 kgs) | 📄 | (OOLU) OOCL POLAND V.0045E ETD SHA : 2024-08-04 ATD SHA : 2024-08-04 POD : LONG BEACH, CA ETA APV : 2024-08-24 VGM Cut-off : 2024-07-26 14:00 |
|  |  |  |  |  |  |  |  | Doc. Submission : 2024-07-26 B/L : OOLU2150650530 MAWB no : |  |  |
|  |  |  |  |  |  |  |  | FCR No : CNS-SHA-C2401980 FCR Draft First Sent Date (GMT+8) : 07/29/2024 19:36:00 FCR Draft Last Sent Date (GMT+8) : 07/29/2024 19:36:00 FCR Confirmation Date (GMT+8) : 07/31/2024 20:00:00 by SYSTEM |  |  |

(NVL2408103)

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SHA-2401980

| | Maker/Supplier's INVOICE No. |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | **INVL2404103** |
| | Dated: **July 24, 2024** |
| Buyer/Consignee : **AVDC, LLC** **18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Date of Receipt of Cargo |
| Shipment From : **SHANGHAI**    To : **APPLE VALLEY, CA** | **July 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES PO#95264533 SKU#810732437 DEPT#360 CARTON 1-  OF 225 MADE IN CHINA PO#95264533 SKU#810581914 DEPT#360 CARTON 1-  OF 601 MADE IN CHINA PO#95264533 SKU#810652468 DEPT#360 CARTON 1-  OF 225 MADE IN CHINA | | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM CFS-CY OOCU8647782 (PART)    SEAL# OOLJQR3416        40H  DRY PO#95264533 SKU#810732437 HOLIDAY  DISCO ELF SLIPPER SKU#810581914 RUDOLPH CAR COSTUME SKU#810652468 STRIPE ELF SLIPPERS SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 1,051 CARTONS | | 27.836 CBM | 1,696.40 KGS |

===========================================================
TOTAL : ONE THOUSAND FIFTY-ONE (1,051) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "OOCL POLAND" VOY NO. 0045E  DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT July 30, 2024  CARGO RECEIVED ON July 21, 2024.

8/4/2024

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI                    July 26, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.) **YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed *** *** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent V1 |

Verification Copy



**PO #**     **95264533**

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 03/26/2024 |
| Version: | 0 |
| Buyer: | RUPERT, BRIANNE |
| Do Not Ship Before: | 07/15/2024 |
| Cancel if not Shipped by: | 07/22/2024 |
| Must be Routed by: | 06/24/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520     Fax:

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800     Fax:  614-278-6871

**Purchase From Vendor:**   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:     MEEGAN MCGEE
Telephone:   216-262-1630     Fax
E-Mail:     meegan@matsongroupllc.com

**ADDITIONAL COMMENTS**

| | | | |
|---|---|---|---|
| Units | Retail | Vendor Cost | IMU |
| 3,603 | 72,008.97 | 17,111.25 | 75.125 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:   95264533

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO.  The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer.  A BOL in duplicate must accompany all Vendor invoices.  A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR.  Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual.  Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period").  After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods.  Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms.  For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law.  As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet.  Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification.  Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records").  Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative.  Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit.  In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice.  Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof.  Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs.  Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls.  A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations.  In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate.  Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above.  When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date.  Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law.  Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods.  Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality.  Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information").  "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods.  Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties.  Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry.  Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13.  Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods.  Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer.  The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms.  In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws.  In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected.  The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption.  Vendor shall comply with all applicable laws.  Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws").  Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor.  Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,
without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|---|--------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810732437 | HOLIDAY DISCO ELF S | 0.00 | CN | 4 | | 900 | 6.00 | 6,219.00 | 09/02/2024 |
| 36006 | 203169-0 | PARTYGOODS | | | 4 | | 225 | 0.91 | 22,491.00 | |
| 36006007 | Winter Wonder Lane | | H33 | | | | | 24.99 | 72.829 | |
| 1 | 195511148393 | | SEA | 1.101 | A1 | | | | | |
| 360 | 810581914 | RUDOLPH CAR COSTUM | 0.00 | CN | 3 | | 1,803 | 3.75 | 9,015.00 | 09/02/2024 |
| 36006 | DEX02013210 | PARTYGOODS | | | 3 | | 601 | 1.25 | 27,026.97 | |
| 36006007 | Rudolph | | H33 | | | | | 14.99 | 67.145 | |
| 2 | 195511030346 | | SEA | 0.681 | E1 | | | | | |
| 360 | 810652468 | STRIPE ELF SLIPPERS | 0.00 | CN | 4 | | 900 | 5.50 | 5,751.00 | 09/02/2024 |
| 36006 | FTX01026652 | PARTYGOODS | | | 4 | | 225 | 0.89 | 22,491.00 | |
| 36006007 | Winter Wonder Lane | | H33 | | | | | 24.99 | 74.870 | |
| 3 | 195511088422 | | SEA | 1.104 | A1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404104

**Invoice Date.:** July 24, 2024

**Sold To:**  CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:**  2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO SHIPPING PEONY / 030E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 31, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95264534 | | 2,412 | EA | 3.750/EA | 9,045.000 |
| **SKU No.:** 810581914 | | 804 | CTNS | | |
| HOLIDAY DISCO ELF SLIPPER | No. of Pallet: | | | | |
| **HTS Code.:** 6307909891 | | | | | |
| **P/O No.:** 95264534 | | 1,268 | EA | 5.500/EA | 6,974.000 |
| **SKU No.:** 810652468 | | 317 | CTNS | | |
| RUDOLPH CAR COSTUME | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| **P/O No.:** 95264534 | | 1,268 | EA | 6.000/EA | 7,608.000 |
| **SKU No.:** 810732437 | | 317 | CTNS | | |
| STRIPE ELF SLIPPERS | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | | |
| **Total:** | **(1,438 CTNS)** | **4,948** | | | **23,627.000** |

**TOTAL (USD) DOLLARS : TWENTY-THREE THOUSAND SIX HUNDRED TWENTY-SEVEN ONLY.**

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264534
SKU#810581914

DEPT#360
CARTON 1- OF 804
MADE IN CHINA
PO#95264534
SKU#810652468
DEPT#360
CARTON 1- OF 317
MADE IN CHINA
PO#95264534
SKU#810732437
DEPT#360
CARTON 1- OF 317
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

## PACKING LIST

**Invoice No.:** INVL2404104

**Sold To:**     CSC DISTRIBUTION, LLC
            2855 SELMA HIGHWAY
            MONTGOMERY, AL 36108
            USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** COSCO SHIPPING PEONY / 030E

**Ship on or about:** July 31, 2024

**Invoice Date.:** July 24, 2024

**Delivery To:**     2855 SELMA HIGHWAY
            MONTGOMERY, AL 36108
            USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95264534 | | 2,412 EA | 723.60 | 1,125.60 | 17.604 |
| **SKU No.:** 810581914 | | 804 CTNS | | | |
| HOLIDAY DISCO ELF SLIPPER | No. of Pallet: | | | | |
| **HTS Code.:** 6307909891 | | | | | |
| | | | | | |
| **P/O No.:** 95264534 | | 1,268 EA | 364.55 | 602.30 | 10.144 |
| **SKU No.:** 810652468 | | 317 CTNS | | | |
| RUDOLPH CAR COSTUME | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| | | | | | |
| **P/O No.:** 95264534 | | 1,268 EA | 355.04 | 602.30 | 9.941 |
| **SKU No.:** 810732437 | | 317 CTNS | | | |
| STRIPE ELF SLIPPERS | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| Total: | (1,438 CTNS) | 4,948 | 1,443.19 | 2,330.20 | 37.689 |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264534
SKU#810581914
DEPT#360
CARTON 1- OF 804
MADE IN CHINA
PO#95264534
SKU#810652468
DEPT#360

CARTON 1- OF 317
MADE IN CHINA
PO#95264534
SKU#810732437
DEPT#360
CARTON 1- OF 317
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2402004**

| | |
|---|---|
| Maker/Supplier: **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404104** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **July 24, 2024** |
| Shipment From : **SHANGHAI**     To : **MONTGOMERY, AL** | Date of Receipt of Cargo **July 20, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES | NOTIFY PARTY: GEODIS | | | |

```
BIG LOTS                  NOTIFY PARTY: GEODIS
STORES                       5101 S. BROAD STREET
PO#95264534                  PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#810581914             ATTN: ALENA LAMINA
DEPT#360                  ALSO NOTIFY: EDRAY 2020 LLC.
CARTON 1-  OF 804            1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                CHARLOTTE NC 28203 USA
PO#95264534                  TEL: 704-593-6329
SKU#810652468                EMAIL: DATAQUALITY@EDRAYCPL.COM
DEPT#360                  CFS-CY
CARTON 1-  OF 317         TGBU7968123 (PART)    SEAL# OOLJQR6324    40H  DRY
MADE IN CHINA
PO#95264534
SKU#810732437
DEPT#360
CARTON 1-  OF 317         PO#95264534
MADE IN CHINA             SKU#810581914
                          HOLIDAY  DISCO ELF SLIPPER
                          SKU#810652468
                          RUDOLPH CAR COSTUME
                          SKU#810732437
                          STRIPE ELF SLIPPERS

                          SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                          SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                          MATERIAL

                          1,438 CARTONS              37.689 CBM    2,330.20 KGS
                          =================================================
                          TOTAL : ONE THOUSAND FOUR HUNDRED THIRTY-EIGHT (1,438) CARTONS
                          ONLY

                              "FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO SHIPPING PEONY" VOY NO. 030E    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT August 1, 2024. CARGO RECEIVED ON July 20, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI       July 26, 2024 |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | As Agent |
| | (Authorized Signature)     **V1** |

Yusen logistics (China) Co.,Ltd.
日邮物流(中国)有限公司
业务专用章--34

| Submission No. | Print | Rev. | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405115 | 🖶 | 4 | 2024-05-14 | 95264534 | CFS | SHANGHAI | CONFIRMED | S/O No. : SHAM1033642 | 🗎 | OCLU1 COSCO SHIPPING PEONY V:036E |
| (01/01) ✏ | | | 2024-07-18 | | | MONTGOMERY, AL | | Cargo Delivery : 2024-07-20 | | ETD SHA : 2024-08-01 |
| | | | | | | | | (1438 ctn, 37.689 cbm, 2330.200 kgs) | | ATD SHA : 2024-08-01 |
| | | | | | | | | | | POD : SAVANNAH, GA |
| | | | | | | | | Doc. Submission : 2024-07-26 | | ETA MGM : 2024-09-10 |
| | | | | | | | | B/L : OOLU2150648370 | | VGM Cut-off : 2024-07-26 14:00 |
| | | | | | | | | MAWB no. | | |
| | | | | | | | | | | |
| | | | | | | | | FCR No. CNS-SHA-2402004 | | |
| | | | | | | | | FCR Draft First Sent Date (GMT+8) : 07/30/2024 13:32:00 | | |
| | | | | | | | | FCR Draft Last Sent Date (GMT+8) : 07/30/2024 13:32:00 | | |
| | | | | | | | | FCR Confirmation Date (GMT+8) : 08/01/2024 14:00:00 by SYSTEM | | |
| | | | | | | | | FCR Emailed (GMT+8) : 08/05/2024 | | |

INVL2404404

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.   CNS-SHA-2402004

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404104** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC**<br>**2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **July 24, 2024** |
| Shipment From : **SHANGHAI**   To : **MONTGOMERY, AL** | Date of Receipt of Cargo<br>**July 20, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95264534<br>SKU#810581914<br>DEPT#360<br>CARTON 1- OF 804<br>MADE IN CHINA<br>PO#95264534<br>SKU#810652468<br>DEPT#360<br>CARTON 1- OF 317<br>MADE IN CHINA<br>PO#95264534<br>SKU#810732437<br>DEPT#360<br>CARTON 1- OF 317<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>5101 S. BROAD STREET<br>PHILADELPHIA, PA 19112-1404, U.S.A.<br>ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>1300 SOUTH MINT STREET SUITE 200<br>CHARLOTTE NC 28203 USA<br>TEL: 704-593-6329<br>EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>TGBU7968123 (PART)   SEAL# OOLJQR6324   40H DRY<br><br>PO#95264534<br>SKU#810581914<br>HOLIDAY DISCO ELF SLIPPER<br>SKU#810652468<br>RUDOLPH CAR COSTUME<br>SKU#810732437<br>STRIPE ELF SLIPPERS<br><br>SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 1,438 CARTONS | | 37.689 CBM | 2,330.20 KGS |

TOTAL : ONE THOUSAND FOUR HUNDRED THIRTY-EIGHT (1,438) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "COSCO SHIPPING PEONY" VOY NO. 030E / DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT August 1, 2024. CARGO RECEIVED ON July 20, 2024.

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE<br><br>## Verification Copy | SHANGHAI                    July 26, 2024<br><br>(Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |

Verification Copy



**PO #**    **95264534**

| | |
|---|---|
| Date Created | 03/26/2024 |
| Version: | 0 |
| Buyer: | RUPERT, BRIANNE |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

---

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:   216-262-1630        Fax
E-Mail:      meegan@matsongroupllc.com

---

**ADDITIONAL COMMENTS**

---

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 4,948 | 99,530.52 | 23,627.00 | 75.128 |

OFFICE-COPY



OFFICE-COPY

# IMPORTANT Terms and Conditions

PO#:    95264534

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810732437 | HOLIDAY DISCO ELF S | 0.00 | CN | 4 | | 1,268 | 6.00 | 8,761.88 | 09/02/2024 |
| 36006 | 203169-0 | PARTYGOODS | | | 4 | | 317 | 0.91 | 31,687.32 | |
| 36006007 | Winter Wonder Lane | | H33 | | | | | 24.99 | 72.829 | |
| 1 | 195511148393 | | SEA | 1.101 | A1 | | | | | |
| 360 | 810581914 | RUDOLPH CAR COSTUM | 0.00 | CN | 3 | | 2,412 | 3.75 | 12,060.00 | 09/02/2024 |
| 36006 | DEX02013210 | PARTYGOODS | | | 3 | | 804 | 1.25 | 36,155.88 | |
| 36006007 | Rudolph | | H33 | | | | | 14.99 | 67.145 | |
| 2 | 195511030346 | | SEA | 0.681 | E1 | | | | | |
| 360 | 810652468 | STRIPE ELF SLIPPERS | 0.00 | CN | 4 | | 1,268 | 5.50 | 8,102.52 | 09/02/2024 |
| 36006 | FTX01026652 | PARTYGOODS | | | 4 | | 317 | 0.89 | 31,687.32 | |
| 36006007 | Winter Wonder Lane | | H33 | | | | | 24.99 | 74.870 | |
| 3 | 195511088422 | | SEA | 1.104 | A1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404105

**Invoice Date.:** July 24, 2024

**Sold To:**   CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:**   50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO SHIPPING PEONY / 030E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 31, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95264535 | | 1,400    EA | 6.000/EA | 8,400.000 |
| **SKU No.:** 810732437 | | 350   CTNS | | |
| HOLIDAY DISCO ELF SLIPPER | No. of Pallet: | | | |
| **HTS Code.:** 9505906000 | | | | |
| **P/O No.:** 95264535 | | 2,937    EA | 3.750/EA | 11,013.750 |
| **SKU No.:** 810581914 | | 979   CTNS | | |
| RUDOLPH CAR COSTUME | No. of Pallet: | | | |
| **HTS Code.:** 6307909891 | | | | |
| **P/O No.:** 95264535 | | 1,400    EA | 5.500/EA | 7,700.000 |
| **SKU No.:** 810652468 | | 350   CTNS | | |
| STRIPE ELF SLIPPERS | No. of Pallet: | | | |
| **HTS Code.:** 9505906000 | | | | |
| | **Manufacturer Name & Address** | | | |
| | LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | |
| **Total:** | (1,679 CTNS) | 5,737 | | 27,113.750 |
| TOTAL (USD) DOLLARS : TWENTY-SEVEN THOUSAND ONE HUNDRED THIRTEEN AND CENTS SEVENTY-FIVE ONLY. | | | | |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264535
SKU#810732437

DEPT#360
CARTON 1- OF 350
MADE IN CHINA
PO#95264535
SKU#810581914
DEPT#360
CARTON 1- OF 979
MADE IN CHINA
PO#95264535
SKU#810652468
DEPT#360
CARTON 1- OF 350
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# PACKING LIST

**Invoice No.:** INVL2404105

**Invoice Date.:** July 24, 2024

**Sold To:**  CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:**  50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO SHIPPING PEONY / 030E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 31, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95264535 | | 1,400  EA | 392.00 | 665.00 | 10.976 |
| **SKU No.:** 810732437 | | 350  CTNS | | | |
| HOLIDAY DISCO ELF SLIPPER | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| **P/O No.:** 95264535 | | 2,937  EA | 881.10 | 1,370.60 | 21.436 |
| **SKU No.:** 810581914 | | 979  CTNS | | | |
| RUDOLPH CAR COSTUME | No. of Pallet: | | | | |
| **HTS Code.:** 6307909891 | | | | | |
| **P/O No.:** 95264535 | | 1,400  EA | 402.50 | 665.00 | 11.200 |
| **SKU No.:** 810652468 | | 350  CTNS | | | |
| STRIPE ELF SLIPPERS | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| Total: | (1,679 CTNS) | 5,737 | 1,675.60 | 2,700.60 | 43.612 |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264535
SKU#810732437
DEPT#360
CARTON 1- OF 350
MADE IN CHINA
PO#95264535
SKU#810581914
DEPT#360

CARTON 1- OF 979
MADE IN CHINA
PO#95264535
SKU#810652468
DEPT#360
CARTON 1- OF 350
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2402014**

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404105** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC** **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **July 24, 2024** |
| Shipment From : **SHANGHAI**　　　　　To : **TREMONT, PA** | Date of Receipt of Cargo **July 20, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES | NOTIFY PARTY: GEODIS | | | |

```
BIG LOTS                    NOTIFY PARTY: GEODIS
STORES                                    5101 S. BROAD STREET
PO#95264535                               PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#810732437                             ATTN: ALENA LAMINA
DEPT#360                     ALSO NOTIFY: EDRAY 2020 LLC.
CARTON 1-  OF 350                         1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                             CHARLOTTE NC 28203 USA
PO#95264535                               TEL: 704-593-6329
SKU#810581914                             EMAIL: DATAQUALITY@EDRAYCPL.COM
DEPT#360                     CFS-CY
CARTON 1-  OF 979            OOCU7081854 (PART)     SEAL# OOLJQR9928      40H  DRY
MADE IN CHINA
PO#95264535
SKU#810652468
DEPT#360
CARTON 1-  OF 350            PO#95264535
MADE IN CHINA                SKU#810732437
                             HOLIDAY  DISCO ELF SLIPPER
                             SKU#810581914
                             RUDOLPH CAR COSTUME
                             SKU#810652468
                             STRIPE ELF SLIPPERS

                             SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                             SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                             MATERIAL

                             1,679 CARTONS            43.612 CBM    2,700.60 KGS
                             =======================================================
                             TOTAL : ONE THOUSAND SIX HUNDRED SEVENTY-NINE (1,679) CARTONS
                             ONLY

                                "FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO SHIPPING PEONY" VOY NO. 030E   DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT August 1, 2024. CARGO RECEIVED ON July 20, 2024.
```

---

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**　　　　　　　　**July 26, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | As Agent (Authorized Signature)　　　　　V1 |

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405117 (01/01) | 🖨 | 3 | 2024-05-14 2024-07-18 | 95264535 | CFS | SHANGHAI TREMONT, PA | CONFIRMED | S/O No. : SHAT1033128 Cargo Delivery : 2024-07-20 (1679 ctn, 43.612 cbm, 2700.600 kgs) | 🗎 | (COLU) CCSCO SHIPPING PEONY V.030E ETD SHA : 2024-08-01 ATD SHA : 2024-08-01 POD : NEW YORK, NY ETA TOX : 2024-09-04 VGM Cut-off : 2024-07-26 14.00 |

INL 2404405

Doc. Submission : 2024-07-26
B/L : OOLU2150649670
MAWB no

FCR No. CNS-SHA-2402014
FCR Draft First Sent Date (GMT+8) : 07/31/2024 08.31.00
FCR Draft Last Sent Date (GMT+8) : 07/31/2024 08.31.00
FCR Confirmation Date (GMT+8) : 08/02/2024 09.00.00 by SYSTEM
FCR Emailed (GMT+8) : 08/05/2024

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.    CNS-SHA-2402014

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | DAN DEE INTERNATIONAL , LLC | **INVL2404105** |
| Buyer/Consignee : | CLOSEOUT DISTRIBUTION, LLC<br>50 RAUSCH CREEK RD, TREMONT, PA 17981, USA | Dated: **July 24, 2024** |
| Shipment From : | SHANGHAI                To : TREMONT, PA | Date of Receipt of Cargo<br>**July 20, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95264535<br>SKU#810732437<br>DEPT#360<br>CARTON 1- OF 350<br>MADE IN CHINA<br>PO#95264535<br>SKU#810581914<br>DEPT#360<br>CARTON 1- OF 979<br>MADE IN CHINA<br>PO#95264535<br>SKU#810652468<br>DEPT#360<br>CARTON 1- OF 350<br>MADE IN CHINA | NOTIFY PARTY: GEODIS<br>        5101 S. BROAD STREET<br>        PHILADELPHIA, PA 19112-1404, U.S.A.<br>        ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>        1300 SOUTH MINT STREET SUITE 200<br>        CHARLOTTE NC 28203 USA<br>        TEL: 704-593-6329<br>        EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>OOCU7081854 (PART)    SEAL# OOLJQR9928        40H DRY<br><br><br>PO#95264535<br>SKU#810732437<br>HOLIDAY DISCO ELF SLIPPER<br>SKU#810581914<br>RUDOLPH CAR COSTUME<br>SKU#810652468<br>STRIPE ELF SLIPPERS<br><br>SHIP TO CODE & LOCATION : 00874-TREMONT, PA<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL<br><br>1,679 CARTONS | | 43.612 CBM | 2,700.60 KGS |

==========================================================
TOTAL : ONE THOUSAND SIX HUNDRED SEVENTY-NINE (1,679) CARTONS
ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO SHIPPING PEONY" VOY NO. 030E    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT August 1, 2024. CARGO RECEIVED ON July 20, 2024.

---

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI                          July 26, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |

Verification Copy



**PO #**          **95264535**

| | |
|---|---|
| Date Created | 03/26/2024 |
| Version: | 0 |
| Buyer: | RUPERT, BRIANNE |
| Do Not Ship Before: | 07/08/2024 |
| Cancel if not Shipped by: | 07/15/2024 |
| Must be Routed by: | 06/17/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

See attached Terms and  Conditions for
additional Big Lots requirements.
A complete list of requirements can be found
on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit
it to BigLotsmsds@chemtelinc.com prior to the time of shipment in
compliance with OSHA 29 CRF.1910.1200. If the product does not require
a Safety Data Sheet (SDS), please disregard this request. Thank you for
assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:   570-695-2862

---

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

---

**Purchase From Vendor:**   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:   216-262-1630        Fax
E-Mail:        meegan@matsongroupllc.com

---

**ADDITIONAL COMMENTS**

---

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 5,737 | 113,997.63 | 27,113.75 | 75.123 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:    95264535

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1. Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2. Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3. Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4. Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5. Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6. Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7. Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8. Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9. Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



# IMPORTANT Terms and Conditions

securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses'), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI') signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810732437 | HOLIDAY DISCO ELF S | 0.00 | CN | 4 | | 1,400 | 6.00 | 9,674.00 | 09/02/2024 |
| 36006 | 203169-0 | PARTYGOODS | | | 4 | | 350 | 0.91 | 34,986.00 | |
| 36006007 | Winter Wonder Lane | | H33 | | | | | 24.99 | 72.829 | |
| 1 | 195511148393 | | SEA | 1.101 | A1 | | | | | |
| 360 | 810581914 | RUDOLPH CAR COSTUM | 0.00 | CN | 3 | | 2,937 | 3.75 | 14,685.00 | 09/02/2024 |
| 36006 | DEX02013210 | PARTYGOODS | | | 3 | | 979 | 1.25 | 44,025.63 | |
| 36006007 | Rudolph | | H33 | | | | | 14.99 | 67.145 | |
| 2 | 195511030346 | | SEA | 0.681 | E1 | | | | | |
| 360 | 810652468 | STRIPE ELF SLIPPERS | 0.00 | CN | 4 | | 1,400 | 5.50 | 8,946.00 | 09/02/2024 |
| 36006 | FTX01026652 | PARTYGOODS | | | 4 | | 350 | 0.89 | 34,986.00 | |
| 36006007 | Winter Wonder Lane | | H33 | | | | | 24.99 | 74.870 | |
| 3 | 195511088422 | | SEA | 1.104 | A1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

# INVOICE

**Invoice No.:** INVL2404106

**Invoice Date.:** July 24, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL POLAND / 0045E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 30, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95264536 | | 808 | EA | 6.000/EA | 4,848.000 |
| **SKU No.:** 810732437 | | 202 | CTNS | | |
| HOLIDAY DISCO ELF SLIPPER | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| **P/O No.:** 95264536 | | 1,449 | EA | 3.750/EA | 5,433.750 |
| **SKU No.:** 810581914 | | 483 | CTNS | | |
| RUDOLPH CAR COSTUME | No. of Pallet: | | | | |
| **HTS Code.:** 6307909891 | | | | | |
| **P/O No.:** 95264536 | | 808 | EA | 5.500/EA | 4,444.000 |
| **SKU No.:** 810652468 | | 202 | CTNS | | |
| STRIPE ELF SLIPPERS | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | | |
| **Total:** | **(887 CTNS)** | **3,065** | | | **14,725.750** |

**TOTAL (USD) DOLLARS : FOURTEEN THOUSAND SEVEN HUNDRED TWENTY-FIVE AND CENTS SEVENTY-FIVE ONLY.**

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264536
SKU#810732437

DEPT#360
CARTON 1- OF 202
MADE IN CHINA
PO#95264536
SKU#810581914
DEPT#360
CARTON 1- OF 483
MADE IN CHINA
PO#95264536
SKU#810652468
DEPT#360
CARTON 1- OF 202
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

## PACKING LIST

**Invoice No.:** INVL2404106

**Invoice Date.:** July 24, 2024

**Sold To:**   DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:**   2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL POLAND / 0045E

**Port of Loading:** SHANGHAI

**Ship on or about:** July 30, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

| Cargo Description | | Quantity (Unit) | | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|---|
| **P/O No.:** 95264536 | | 808 | EA | 226.24 | 383.80 | 6.335 |
| **SKU No.:** 810732437 | | 202 | CTNS | | | |
| HOLIDAY DISCO ELF SLIPPER | No. of Pallet: | | | | | |
| **HTS Code.:** 9505906000 | | | | | | |
| **P/O No.:** 95264536 | | 1,449 | EA | 434.70 | 676.20 | 10.576 |
| **SKU No.:** 810581914 | | 483 | CTNS | | | |
| RUDOLPH CAR COSTUME | No. of Pallet: | | | | | |
| **HTS Code.:** 6307909891 | | | | | | |
| **P/O No.:** 95264536 | | 808 | EA | 232.30 | 383.80 | 6.464 |
| **SKU No.:** 810652468 | | 202 | CTNS | | | |
| STRIPE ELF SLIPPERS | No. of Pallet: | | | | | |
| **HTS Code.:** 9505906000 | | | | | | |
| Total: | (887 CTNS) | 3,065 | | 893.24 | 1,443.80 | 23.375 |

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264536
SKU#810732437
DEPT#360
CARTON 1- OF 202
MADE IN CHINA
PO#95264536
SKU#810581914
DEPT#360

CARTON 1- OF 483
MADE IN CHINA
PO#95264536
SKU#810652468
DEPT#360
CARTON 1- OF 202
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.  **CNS-SHA-2402005**

| Maker/Supplier: | **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404106** |
|---|---|---|
| Buyer/Consignee : | **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **July 24, 2024** |
| Shipment From : | **SHANGHAI**   To : **DURANT, OK** | Date of Receipt of Cargo **July 20, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES | | NOTIFY PARTY: GEODIS<br>5101 S. BROAD STREET | | |
| PO#95264536<br>SKU#810732437<br>DEPT#360<br>CARTON 1-  OF 202<br>MADE IN CHINA<br>PO#95264536<br>SKU#810581914<br>DEPT#360<br>CARTON 1-  OF 483<br>MADE IN CHINA<br>PO#95264536<br>SKU#810652468<br>DEPT#360<br>CARTON 1-  OF 202<br>MADE IN CHINA | | PHILADELPHIA, PA 19112-1404, U.S.A.<br>ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>1300 SOUTH MINT STREET SUITE 200<br>CHARLOTTE NC 28203 USA<br>TEL: 704-593-6329<br>EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>FCIU9551576 (PART)      SEAL# OOLJQR3418      40H  DRY<br><br><br>PO#95264536<br>SKU#810732437<br>HOLIDAY  DISCO ELF SLIPPER<br>SKU#810581914<br>RUDOLPH CAR COSTUME<br>SKU#810652468<br>STRIPE ELF SLIPPERS<br><br>SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 887 CARTONS | | 23.375 CBM | 1,443.80 KGS |
| | | =====================================================<br>TOTAL : EIGHT HUNDRED EIGHTY-SEVEN (887) CARTONS ONLY | | |

"FREIGHT COLLECT"
SHIPMENT PER S.S. "OOCL POLAND" VOY NO. 0045E    DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT August 3, 2024. CARGO RECEIVED ON July 20, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                    **July 26, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS** |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | As Agent<br>(Authorized Signature)            V1 |

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | S/O No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405121 (C1/01) ✏ | 🖨 | 4 | 2024-05-14 2024-07-18 | 95264535 *INVL2404106* | CFS | SHANGHAI DURANT, OK | CONFIRMED | S/O No. : SHAU1029709 Cargo Delivery : 2024-07-20 (887 ctn, 23.375 cbm, 1443.800 kgs) Doc. Submission : 2024-07-26 B/L : OOLU2150650550 MAWB no. FCR No.:CNS-SHA-2402005 FCR Draft First Sent Date (GMT+8) : 07/30/2024 13:32:00 FCR Draft Last Sent Date (GMT+8) : 07/30/2024 13:32:00 FCR Confirmation Date (GMT+8) : 08/01/2024 14:00:00 by SYSTEM | 🖼 | (OOLU) OOCL POLAND V.0045E ETD SHA : 2024-08-04 ATD SHA : 2024-08-04 POD : LONG BEACH, CA ETA DUA : 2024-08-31 VGM Cut-off : 2024-07-26 14:00 |

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.   CNS-SHA-2402005

| | |
|---|---|
| Maker/Supplier : **DAN DEE INTERNATIONAL , LLC** | Maker/Supplier's INVOICE No. **INVL2404106** |
| Buyer/Consignee : **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **July 24, 2024** |
| Shipment From : **SHANGHAI**   To : **DURANT, OK** | Date of Receipt of Cargo **July 20, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES | | NOTIFY PARTY: GEODIS | | |
| PO#95264536 SKU#810732437 DEPT#360 CARTON 1- OF 202 MADE IN CHINA | | 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM | | |
| PO#95264536 SKU#810581914 DEPT#360 CARTON 1- OF 483 MADE IN CHINA | | CFS-CY FCIU9551576 (PART)   SEAL# OOLJQR3418    40H  DRY | | |
| PO#95264536 SKU#810652468 DEPT#360 CARTON 1- OF 202 MADE IN CHINA | | PO#95264536 SKU#810732437 HOLIDAY  DISCO ELF SLIPPER SKU#810581914 RUDOLPH CAR COSTUME SKU#810652468 STRIPE ELF SLIPPERS | | |
| | | SHIP TO CODE & LOCATION : 00879-DURANT, OK SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 887 CARTONS | | 23.375 CBM | 1,443.80 KGS |

==================================================================
TOTAL : EIGHT HUNDRED EIGHTY-SEVEN (887) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "OOCL POLAND" VOY NO. 0045E   DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT August 3, 2024. CARGO RECEIVED ON July 20, 2024.

*8/6/2024*

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI                     July 26, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.) **YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed *** *** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent V1 |

Verification Copy



**PO #**                    **95264536**

| | | |
|---|---|---|
| Date Created | 03/26/2024 | |
| Version: | 0 | |
| Buyer: | RUPERT, BRIANNE | |
| Do Not Ship Before: | 07/01/2024 | |
| Cancel if not Shipped by: | 07/08/2024 | |
| Must be Routed by: | 06/10/2024 | |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC | |
| Freight Terms: | Collect | |
| FOB: | LCL-SHANGHAI  CN | |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:   580-931-2197

---

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

---

**Purchase From Vendor:   1006055**

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:     MEEGAN MCGEE
Telephone:   216-262-1630        Fax
E-Mail:      meegan@matsongroupllc.com

---

**ADDITIONAL COMMENTS**

---

Vendor Signature _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 3,065 | 62,104.35 | 14,725.75 | 75.131 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:   95264536

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1. Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2. Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3. Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4. Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5. Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6. Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7. Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8. Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9. Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:   95264536

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810732437 | HOLIDAY DISCO ELF S | 0.00 | CN | 4 | | 808 | 6.00 | 5,583.28 | 09/02/2024 |
| 36006 | 203169-0 | PARTYGOODS | | | 4 | | 202 | 0.91 | 20,191.92 | |
| 36006007 | Winter Wonder Lane | | H33 | | | | | 24.99 | 72.829 | |
| 1 | 195511148393 | | SEA | 1.101 | A1 | | | | | |
| 360 | 810581914 | RUDOLPH CAR COSTUM | 0.00 | CN | 3 | | 1,449 | 3.75 | 7,245.00 | 09/02/2024 |
| 36006 | DEX02013210 | PARTYGOODS | | | 3 | | 483 | 1.25 | 21,720.51 | |
| 36006007 | Rudolph | | H33 | | | | | 14.99 | 67.145 | |
| 2 | 195511030346 | | SEA | 0.681 | E1 | | | | | |
| 360 | 810652468 | STRIPE ELF SLIPPERS | 0.00 | CN | 4 | | 808 | 5.50 | 5,163.12 | 09/02/2024 |
| 36006 | FTX01026652 | PARTYGOODS | | | 4 | | 202 | 0.89 | 20,191.92 | |
| 36006007 | Winter Wonder Lane | | H33 | | | | | 24.99 | 74.870 | |
| 3 | 195511088422 | | SEA | 1.104 | A1 | | | | | |

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

---

# INVOICE

---

**Invoice No.:** INVL2404107

**Invoice Date.:** July 24, 2024

**Sold To:**   BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:**   500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** CMA CGM URAL / 0XR5TE

**Port of Loading:** SHANGHAI

**Ship on about:** July 30, 2024

**Port of Entry:** NORFOLK, VA

**Destination:** COLUMBUS, OH

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95264537 | | 1,356 | EA | 6.000/EA | 8,136.000 |
| **SKU No.:** 810732437 | | 339 | CTNS | | |
| HOLIDAY DISCO ELF SLIPPER | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| **P/O No.:** 95264537 | | 2,712 | EA | 3.750/EA | 10,170.000 |
| **SKU No.:** 810581914 | | 904 | CTNS | | |
| RUDOLPH CAR COSTUME | No. of Pallet: | | | | |
| **HTS Code.:** 6307909891 | | | | | |
| **P/O No.:** 95264537 | | 1,356 | EA | 5.500/EA | 7,458.000 |
| **SKU No.:** 810652468 | | 339 | CTNS | | |
| STRIPE ELF SLIPPERS | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | LUJIANG DINGHUI EMBROIDERY& PACKAGING CO.,LTD. NORTH OF FANGTA ROAD (TEXTILE CLOTHING INDUSTRY ZONE),LUCHENG TOWN, LUJIANG COUNTY,HEFEI CITY, ANHUI,CHINA HEFEI, ANHUI 231500, CHINA | | | | |
| **Total:** | **(1,582 CTNS)** | **5,424** | | | **25,764.000** |
| TOTAL (USD) DOLLARS : TWENTY-FIVE THOUSAND SEVEN HUNDRED SIXTY-FOUR ONLY. | | | | | |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
ECMU8111820/R7447740/45'

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
ECMU8111820/R7447740/45'

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#95264537
SKU#810732437
DEPT#360
CARTON 1- OF 339
MADE IN CHINA
PO#95264537
SKU#810581914
DEPT#360
CARTON 1- OF 904
MADE IN CHINA
PO#95264537
SKU#810652468
DEPT#360
CARTON 1- OF 339
MADE IN CHINA

# DAN DEE INTERNATIONAL, LLC

UNIT 401-5, 408-421 4/F NEW MANDARIN PLAZA TOWER B,, 14 SCIENCE MUSEUM ROAD T.S.T.EAST, , KOWLOON, HONG KONG

## PACKING LIST

**Invoice No.:** INVL2404107

**Sold To:** BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** CMA CGM URAL / 0XR5TE

**Ship on or about:** July 30, 2024

**Invoice Date.:** July 24, 2024

**Delivery To:** 500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** NORFOLK, VA

**Destination:** COLUMBUS, OH

| Cargo Description | Quantity (Unit) | | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95264537 | 1,356 | EA | 379.68 | 644.10 | 10.631 |
| **SKU No.:** 810732437 | 339 | CTNS | | | |
| HOLIDAY DISCO ELF SLIPPER | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| **P/O No.:** 95264537 | 2,712 | EA | 813.60 | 1,265.60 | 19.794 |
| **SKU No.:** 810581914 | 904 | CTNS | | | |
| RUDOLPH CAR COSTUME | No. of Pallet: | | | | |
| **HTS Code.:** 6307909891 | | | | | |
| **P/O No.:** 95264537 | 1,356 | EA | 389.85 | 644.10 | 10.848 |
| **SKU No.:** 810652468 | 339 | CTNS | | | |
| STRIPE ELF SLIPPERS | No. of Pallet: | | | | |
| **HTS Code.:** 9505906000 | | | | | |
| **Total:** (1,582 CTNS) | 5,424 | | 1,583.13 | 2,553.80 | 41.273 |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
ECMU8111820/R7447740/45'

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (CHINA) CO., LTD
EASTERN ENTERPRISE DEVELOPMENT CO., LTD.
NO.1111 JIANG QUAN ROAD, PUDONG NEW AREA, SHANGHAI, CHINA
SHANGHAI , SHANGHAI
201308 CHINA
Container No./Seal/Size:
ECMU8111820/R7447740/45'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95264537
SKU#810732437
DEPT#360
CARTON 1- OF 339
MADE IN CHINA
PO#95264537
SKU#810581914
DEPT#360
CARTON 1- OF 904
MADE IN CHINA
PO#95264537
SKU#810652468
DEPT#360
CARTON 1- OF 339
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2401944**

---

Maker/Supplier:    **DAN DEE INTERNATIONAL , LLC**

Buyer/Consignee :    **BIG LOTS STORES, LLC**
**500 PHILLIPI RD, COLUMBUS, OH 43228, USA**

Shipment From :    **SHANGHAI**                    To : **COLUMBUS, OH**

Maker/Supplier's INVOICE No.
**INVL2404107**

Dated: **July 24, 2024**

Date of Receipt of Cargo
**July 20, 2024**

---

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                       NOTIFY PARTY: GEODIS
STORES                                       5101 S. BROAD STREET
                                             PHILADELPHIA, PA 19112-1404, U.S.A.
PO#95264537                                  ATTN: ALENA LAMINA
SKU#810732437              ALSO NOTIFY: EDRAY 2020 LLC.
DEPT#360                                     1300 SOUTH MINT STREET SUITE 200
CARTON 1-  OF 339                            CHARLOTTE NC 28203 USA
MADE IN CHINA                                TEL: 704-593-6329
PO#95264537                                  EMAIL: DATAQUALITY@EDRAYCPL.COM
SKU#810581914             CFS-CY
DEPT#360
CARTON 1-  OF 904         ECMU8111820 (PART)     SEAL# R7447740      45'  DRY
MADE IN CHINA
PO#95264537
SKU#810652468
DEPT#360
CARTON 1-  OF 339         PO#95264537
MADE IN CHINA             SKU#810732437
                          HOLIDAY  DISCO ELF SLIPPER
                          SKU#810581914
                          RUDOLPH CAR COSTUME
                          SKU#810652468
                          STRIPE ELF SLIPPERS

                          SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH
                          SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                          MATERIAL

                          1,582 CARTONS               41.273 CBM    2,553.80 KGS
                          ==================================================
                          TOTAL : ONE THOUSAND FIVE HUNDRED EIGHTY-TWO (1,582) CARTONS
                          ONLY

                              "FREIGHT COLLECT"
SHIPMENT PER S.S. "CMA CGM URAL" VOY NO. 0XR5TE    DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT July 30, 2024. CARGO RECEIVED ON July 20, 2024.
```

---

THIS IS NOT A DOCUMENT OF TITLE

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

**SHANGHAI**                    **July 26, 2024**

(Place and date of issue.)
**YUSEN LOGISTICS**

Yusen logistics (China) Co.,Ltd.
日邮物流(中国)有限公司
业务专用章--34

As Agent

(Authorized Signature)                    V1

Filter By: All          1 - 1 of total 1 records

| Submission No. | Print | Rev | Date of Submission & Revision | PO No. | Load Type | Loading Port Destination | Status | SO No. FCR No. | Shp Rpt | Vessel Information |
|---|---|---|---|---|---|---|---|---|---|---|
| CNS-2405124 (01/01) | 🖶 | 4 | 2024-05-14 2024-07-18 | 95264537 | CFS | SHANGHAI COLUMBUS, OH | CONFIRMED | S/O No. : SHAC1634355 Cargo Delivery : 2024-07-20 (1582 ctn, 41.273 cbm, 2553.800 kgs) Doc. Submission : 2024-07-26 B/L : CMDUCHN1363620 MAWB no. FCR No. CNS-SHA-2401944 FCR Draft First Sent Date (GMT+8) : 07/26/2024 13:31:00 FCR Draft Last Sent Date (GMT+8) : 07/26/2024 13:31:00 FCR Confirmation Date (GMT+8) : 07/30/2024 14:00:00 by SYSTEM | 📄 | (CMDU) PRESIDENT HW BUSH V:0DBJ7E1MA ETD SHA : 2024-07-29 ATD SHA : 2024-07-29 POD : LOS ANGELES, CA ETA CMH : 2024-09-02 VGM Cut-off : 2024-07-24 15:00 |

INVL2V04/07

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.   **CNS-SHA-2401944**

| Maker/Supplier : DAN DEE INTERNATIONAL , LLC | Maker/Supplier's INVOICE No. **INVL2404107** |
|---|---|
| Buyer/Consignee : BIG LOTS STORES, LLC<br>500 PHILLIPI RD, COLUMBUS, OH 43228, USA | Dated: **July 24, 2024** |
| Shipment From : SHANGHAI      To : COLUMBUS, OH | Date of Receipt of Cargo **July 20, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95264537<br>SKU#810732437<br>DEPT#360<br>CARTON 1- OF 339<br>MADE IN CHINA<br>PO#95264537<br>SKU#810581914<br>DEPT#360<br>CARTON 1- OF 904<br>MADE IN CHINA<br>PO#95264537<br>SKU#810652468<br>DEPT#360<br>CARTON 1- OF 339<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>                5101 S. BROAD STREET<br>                PHILADELPHIA, PA 19112-1404, U.S.A.<br>                ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>                1300 SOUTH MINT STREET SUITE 200<br>                CHARLOTTE NC 28203 USA<br>                TEL: 704-593-6329<br>                EMAIL: DATAQUALITY@EDRAYCPL.COM<br>CFS-CY<br><br>ECMU8111820 (PART)     SEAL# R7447740         45' DRY<br><br><br>PO#95264537<br>SKU#810732437<br>HOLIDAY DISCO ELF SLIPPER<br>SKU#810581914<br>RUDOLPH CAR COSTUME<br>SKU#810652468<br>STRIPE ELF SLIPPERS<br><br>SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 1,582 CARTONS | | 41.273 CBM | 2,553.80 KGS |

============================================================
TOTAL : ONE THOUSAND FIVE HUNDRED EIGHTY-TWO (1,582) CARTONS ONLY

PRESIDENT HW BUSH V.ODEJ7EIMA
X
                "FREIGHT COLLECT"
SHIPMENT PER S.S. "CMA CGM URAL" VOY NO. 0XR5TE    DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT July 30, 2024. X CARGO RECEIVED ON July 20, 2024.
7/29/2024

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI                         July 26, 2024 |
|---|---|
| **Verification Copy** | (Place and date of issue.)<br><br>**YUSEN LOGISTICS** |
| *** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***<br>*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance *** | As Agent<br><br>V1 |

Verification Copy



**PO #**        **95264537**

| | |
|---|---|
| Date Created | 03/26/2024 |
| Version: | 0 |
| Buyer: | RUPERT, BRIANNE |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-SHANGHAI  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800        Fax:   614-278-3809

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:   1006055

DAN-DEE INT'L LLC
MEEGAN MCGEE
7282 123RD CIR
LARGO FL  33773-3034

Contact:      MEEGAN MCGEE
Telephone:  216-262-1630        Fax
E-Mail:       meegan@matsongroupllc.com

**ADDITIONAL COMMENTS**

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 5,424 | 108,425.76 | 25,764.00 | 75.125 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:   95264537

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810732437 | HOLIDAY DISCO ELF S | 0.00 | CN | 4 | | 1,356 | 6.00 | 9,369.96 | 09/02/2024 |
| 36006 | 203169-0 | PARTYGOODS | | | 4 | | 339 | 0.91 | 33,886.44 | |
| 36006007 | Winter Wonder Lane | | H33 | | | | | 24.99 | 72.829 | |
| 1 | 195511148393 | | SEA | 1.101 | A1 | | | | | |
| 360 | 810581914 | RUDOLPH CAR COSTUM | 0.00 | CN | 3 | | 2,712 | 3.75 | 13,560.00 | 09/02/2024 |
| 36006 | DEX02013210 | PARTYGOODS | | | 3 | | 904 | 1.25 | 40,652.88 | |
| 36006007 | Rudolph | | H33 | | | | | 14.99 | 67.145 | |
| 2 | 195511030346 | | SEA | 0.681 | E1 | | | | | |
| 360 | 810652468 | STRIPE ELF SLIPPERS | 0.00 | CN | 4 | | 1,356 | 5.50 | 8,664.84 | 09/02/2024 |
| 36006 | FTX01026652 | PARTYGOODS | | | 4 | | 339 | 0.89 | 33,886.44 | |
| 36006007 | Winter Wonder Lane | | H33 | | | | | 24.99 | 74.870 | |
| 3 | 195511088422 | | SEA | 1.104 | A1 | | | | | |