# Exhibit D

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS INC., *et al.*, | Case No. 24-11967 (JKS) (Jointly Administered) |
| Debtors*¹*. | |

## DECLARATION OF DEWAN & SONS IN SUPPORT OF MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIMS OF TRADE CREDITORS

1. I am an authorized representative for Dewan & Sons.

2. I have personal knowledge of the facts herein, including access to and review of business records and information for Dewan & Sons.

3. I make this declaration in support of the motion of Attic Products, Dan Dee International, LLC, and Dewan & Sons for allowance and payment of administrative claims of trade creditors (the "Motion").

4. To the best of my knowledge and belief formed after a reasonable inquiry, including review of business records, Big Lots and its subsidiaries have taken possession of goods, shipped by Dewan & Sons, either within 20 days before the Petition Date of Sept. 9, 2024 or after the Petition Date. These goods are summarized in **Exhibit 1** attached hereto.

5. The purchase orders, invoices, and forwarder cargo receipts for these goods orders are attached hereto as **Exhibit 2**. These documents are true and accurate copies of business records of Dewan & Sons' fulfillment of Big Lots purchase orders.

---

¹ The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

6. The invoices for these orders are unpaid, and no money or other valuable consideration has been received for the goods delivered.

7. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: November 22, 2024

Vikas Agarwal
Accounting
Dewan & Sons

# Exhibit 1

## Summary of Claims

# EXHIBIT 1

*In re* Big Lots, Inc., Case No. 24-11967-JKS

**Claimant: Dewan & Sons**

| Invoice | Big Lots PO Number | Order Total | FCR Issue Date | Big Lots Entity | Received by Big Lots | Claim Type |
|---|---|---|---|---|---|---|
| 072/24 | 95152797 | $ 5,776.92 | 10-May-24 | Durant DC | 21-Aug-24 | 503(b)(9) |
| 194/24 | 95195191 | $ 6,305.60 | 4-Jun-24 | Durant DC | 22-Aug-24 | 503(b)(9) |
| 276/24 | 95347349 | $ 807.04 | 20-Jun-24 | CSC Distribution | 20-Aug-24 | 503(b)(9) |
| 306/24 | 95193419 | $ 4,593.60 | 20-Jun-24 | CSC Distribution | 20-Aug-24 | 503(b)(9) |
| 339/24 | 95252805 | $ 23,085.00 | 22-Jun-24 | Durant DC | 8-Sep-24 | 503(b)(9) |
| 340/24 | 95299497 | $ 14,415.00 | 22-Jun-24 | Durant DC | 8-Sep-24 | 503(b)(9) |
| 346/24 | 95193422 | $ 7,650.72 | 11-Jul-24 | Durant DC | 25-Sep-24 | Post-Petition Delivery |
| 366/24 | 95252802 | $ 6,699.00 | 28-Jun-24 | AVDC | 20-Aug-24 | 503(b)(9) |
| 384/24 | 95268213 | $ 14,850.00 | 5-Jul-24 | Durant DC | 12-Sep-24 | Post-Petition Delivery |
| 385/24 | 95259318 | $ 18,876.00 | 5-Jul-24 | Durant DC | 12-Sep-24 | Post-Petition Delivery |
| 397/24 | 95259318 | $ 15,740.40 | 5-Jul-24 | Durant DC | 9-Sep-24 | 503(b)(9) |
| 398/24 | 95252804 | $ 19,062.00 | 5-Jul-24 | Closeout Distribution | 26-Aug-24 | 503(b)(9) |
| 401/24 | 95299495 | $ 23,591.00 | 10-Jul-24 | CSC Distribution | 4-Sep-24 | 503(b)(9) |
| 402/24 | 95299498 | $ 23,250.00 | 5-Jul-24 | Big Lots Stores | 4-Sep-24 | 503(b)(9) |
| 403/24 | 95299496 | $ 19,964.00 | 5-Jul-24 | Closeout Distribution | 28-Aug-24 | 503(b)(9) |
| 404/24 | 95252804 | $ 16,424.00 | 5-Jul-24 | Closeout Distribution | 28-Aug-24 | 503(b)(9) |
| 450/24 | 95301010 | $ 8,298.00 | 2-Aug-24 | Closeout Distribution | 23-Sep-24 | Post-Petition Delivery |
| 451/24 | 95301011 | $ 8,298.00 | 22-Jul-24 | Big Lots Stores | 8-Sep-24 | 503(b)(9) |
| 477/24 | 95399575 | $ 7,084.00 | 11-Jul-24 | Durant DC | 25-Sep-24 | Post-Petition Delivery |
| 485/24 | 95320748 | $ 6,084.45 | 20-Aug-24 | AVDC | 25-Sep-24 | Post-Petition Delivery |
| 486/24 | 95320751 | $ 4,625.10 | 26-Jul-24 | Durant DC | 12-Oct-24 | Post-Petition Delivery |
| 487/24 | 95399836 | $ 4,376.60 | 29-Jul-24 | Durant DC | 12-Oct-24 | Post-Petition Delivery |
| 517/24 | 95320749 | $ 5,547.60 | 20-Aug-24 | CSC Distribution | 11-Oct-24 | Post-Petition Delivery |
| 518/24 | 95320750 | $ 7,067.70 | 2-Aug-24 | Closeout Distribution | 25-Sep-24 | Post-Petition Delivery |
| 519/24 | 95320752 | $ 5,691.60 | 9-Aug-24 | Big Lots Stores | 1-Oct-24 | Post-Petition Delivery |
| 528/24 | 95399837 | $ 5,719.60 | 9-Aug-24 | Big Lots Stores | 29-Sep-24 | Post-Petition Delivery |
| 529/24 | 95415354 | $ 9,360.00 | 20-Aug-24 | Durant DC | 13-Nov-24 | Post-Petition Delivery |
| 530/24 | 95415351 | $ 9,863.00 | 1-Aug-24 | AVDC | 22-Sep-24 | Post-Petition Delivery |
| 552/24 | 95348487 | $ 3,802.00 | 1-Aug-24 | AVDC | 22-Sep-24 | Post-Petition Delivery |
| 553/24 | 95415355 | $ 1,977.04 | 9-Aug-24 | Big Lots Stores | 1-Oct-24 | Post-Petition Delivery |
| 634/24 | 95348488 | $ 3,573.88 | 9-Aug-24 | CSC Distribution | 1-Oct-24 | Post-Petition Delivery |
| 635/24 | 95348489 | $ 4,486.36 | 9-Aug-24 | Closeout Distribution | 25-Sep-24 | Post-Petition Delivery |
| 659/24 | 95415352 | $ 8,400.00 | 13-Aug-24 | CSC Distribution | 1-Oct-24 | Post-Petition Delivery |
| 660/24 | 95268210 | $ 20,682.50 | 9-Aug-24 | Durant DC | 13-Nov-24 | Post-Petition Delivery |

# EXHIBIT 1

| Invoice | Big Lots PO Number | Order Total | FCR Issue Date | Big Lots Entity | Received by Big Lots | Claim Type |
|---|---|---|---|---|---|---|
| 690/24 | 95268210 | $ 12,339.00 | 9-Aug-24 | AVDC | 20-Sep-24 | Post-Petition Delivery |
| 691/24 | 95399572 | $ 4,956.00 | 9-Aug-24 | AVDC | 20-Sep-24 | Post-Petition Delivery |
| 692/24 | 95399832 | $ 3,333.00 | 9-Aug-24 | AVDC | 20-Sep-24 | Post-Petition Delivery |
| 693/24 | 95259315 | $ 26,024.80 | 9-Aug-24 | AVDC | 20-Sep-24 | Post-Petition Delivery |
| 694/24 | 95415351 | $ 21,994.50 | 9-Aug-24 | AVDC | 20-Sep-24 | Post-Petition Delivery |
| 713/24 | 95415351 | $ 21,018.00 | 13-Aug-24 | AVDC | 5-Oct-24 | Post-Petition Delivery |
| 714/24 | 95415354 | $ 20,529.00 | 20-Aug-24 | Durant DC | 1-Oct-24 | Post-Petition Delivery |

| | | |
|---|---|---|
| **Total Post-Petition Delivery** | $ | 268,210.45 |
| **Total 503(b)(9)** | $ | 188,011.56 |
| **Grand Total** | $ | 456,222.01 |

# Exhibit 2

Invoices, FCRs, and Big Lots Purchase Orders

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under payment of Intergrated Tax (IGST)**

| | | | | |
|---|---|---|---|---|
| Inv. No. | DS72/24 | | Buyer Order # | 95152797 |
| Inv. Date | 27/04/2024 | | | |
| **IEC** | 0588026786 | | Transport Mode | BY SEA |
| PAN | AABFD8214G | | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | | Date of Supply | 27/04/2024 |
| State of origin & code | U.P. & 09 | | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **DURANT DC - #0879**<br>**DURANT DC LLC**<br>**2306 ENTERPRISE DR**<br>**DURANT OK 74701-1964**<br>**USA** | **DURANT DC LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **NHAVA SHEVA** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **DURANT** | **DURANT** | **EXCHANGE RATE :  1 US $= Rs. 82.70** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DST-3521<br>810720868 | PILLOW COMBO HALLOWEEN SET OF 3<br>T. Net Wt. (Kgs) :    325.500 | 94049000 | 186 Set | 13.100 | 2436.60 | 0.00 | 201506.82 | 18.0% | 36271.23 | 237778.05 |
| DST-HV-3005-<br>810722910 | HH PUMPKIN EMBROIDERY<br>T. Net Wt. (Kgs) :    207.900 | 94049000 | 330 Pc | 4.400 | 1452.00 | 0.00 | 120080.40 | 18.0% | 21614.47 | 141694.87 |
| DST-3522<br>810723127 | HH COMBO PUMPKIN SET OF 8<br>T. Net Wt. (Kgs) :    120.400 | 94049000 | 56 Set | 33.720 | 1888.32 | 0.00 | 156164.06 | 18.0% | 28109.53 | 184273.59 |

| Amount Chargeable (In Words) | Total Amount | FOB | 5776.92 | 477751.28 | 85995.23 | 563746.51 |
|---|---|---|---|---|---|---|
| US. Dollars Five Thousand Seven Hundred Seventy Six And Ninety Two Cents  Only | | | | | | |

**TOTAL : 330 Pcs   242 Sets**

| NET Amount | FOB | 5776.92 | | |
|---|---|---|---|---|
| TOTAL VALUE BEFORE TAX IN RS. | | | 477751.28 | |
| ADD IGST | | | | 85995.23 |
| TOTAL VALUE AFTER TAX IN RS. | | | | 563746.51 |
| GST PAYMENT ON REVERSE CHARGE | | | | N A |

| | |
|---|---|
| Total Pkgs. | **352 CTNs** |
| Gross Weight (Kgs.) | **1049.300** |
| Net Weight (Kgs.) | **653.800** |
| Volume (CBM) | **14.692** |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Declaration :  We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

**27/04/2024**

Auth.Signy.

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL : surender@dewansons.com

## TAX INVOICE

### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | | |
|---|---|---|---|---|
| Inv. No. | DS194/24 | | Buyer Order # | 95195191 |
| Inv. Date | 20/05/2024 | | | |
| **IEC** | 0588026786 | | Transport Mode | BY SEA |
| PAN | AABFD8214G | | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | | Date of Supply | 20/05/2024 |
| State of origin & code | U.P. & 09 | | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **DURANT DC - #0879**<br>**DURANT DC LLC**<br>**2306 ENTERPRISE DR**<br>**DURANT OK 74701-1964**<br>**USA** | **DURANT DC LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| BY ROAD | MUMBAI | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| BY SEA | NHAVA SHEVA | |
| Port of Discharge | Final Destination | |
| DURANT | DURANT | **EXCHANGE RATE :** 1 US $= Rs. 82.65 |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST Rate | IGST Amount | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-53910-11-12<br>810728155 | MANGO WOOD/MARBLE 4PC COASTER SET ,SET OF 6<br>T. Net Wt. (Kgs) :        378.000 | 44199090 | 210 Set | 13.560 | 2847.60 | 0.00 | 235354.14 | 12.0% | 28242.50 | 263596.64 |
| DS-56228L<br>810728161 | MANGO WOODEN BOWL<br>T. Net Wt. (Kgs) :        186.200 | 44199090 | 280 Pc | 4.150 | 1162.00 | 0.00 | 96039.30 | 12.0% | 11524.72 | 107564.02 |
| DS-60381<br>810728185 | ACACIA WOOD SERVING TRAY<br>T. Net Wt. (Kgs) :        436.800 | 44199090 | 280 Pc | 4.300 | 1204.00 | 0.00 | 99510.60 | 12.0% | 11941.27 | 111451.87 |
| DS-60382<br>810728110 | ACACIA WOOD ROUND SERVING TRAY<br>T. Net Wt. (Kgs) :        462.000 | 44199090 | 280 Pc | 3.900 | 1092.00 | 0.00 | 90253.80 | 12.0% | 10830.46 | 101084.26 |

| Amount Chargeable (In Words) | | | Total Amount | FOB | 6305.60 | | 521157.84 | | 62538.95 | 583696.79 |
|---|---|---|---|---|---|---|---|---|---|---|
| US. Dollars Six Thousand Three Hundred Five And Sixty Cents Only | | | | | | | | | | |
| | | | NET Amount | FOB | 6305.60 | | | | | |
| **TOTAL : 840 Pcs   210 Sets** | | | TOTAL VALUE BEFORE TAX IN RS. | | | | 521157.84 | | | |
| | | | ADD IGST | | | | | | 62538.95 | |
| | | | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 583696.79 |
| | | | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

Total Pkgs.          **420 CTNs**
Gross Weight (Kgs.)      **1739.500**
Net Weight (Kgs.)       **1463.000**
Volume (CBM)            **5.518**

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

FOR DEWAN & SONS

Auth.Signatory
**20/05/2024**          **Auth.Sign.**

Declaration : We declare this invoice shows the actual price of goodsDescribed and all particulars are true and correct.

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under  payment of Intergrated Tax (IGST)**

| | | | |
|---|---|---|---|
| Inv. No. | DS276/24 | Buyer Order # | 95347349 |
| Inv. Date | 03/06/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 03/06/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **MONTGOMERY DC - #0870**<br>**CSC DISTRIBUTION LLC**<br>**2855 SELMA HWY**<br>**MONTGOMERY, AL 36108-5035**<br>**USA** | **CSC DISTRIBUTION LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| | | | |
|---|---|---|---|
| | | Country of Origin of Goods<br>INDIA | Country of Final Destination<br>USA |
| Pre-Carriage by<br>**BY ROAD** | Place of Rcpt. By Pre-carrier<br>**MUMBAI** | Terms of Delivery & Payment<br>F.O.B. US DOLLARS | |
| Vessel/Flight No.<br>**BY SEA** | Port of Loading<br>**NHAVA SHEVA** | PAYMENT MODE;- D/P | |
| Port of Discharge<br>**MONTGOMERY, AL** | Final Destination<br>**MONTGOMERY, AL** | **EXCHANGE RATE :**   1 US $= Rs. 82.65 | |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-60930<br>810745648 | LANTERN WITH WOOD HANDLE<br>T. Net Wt. (Kgs) :          156.000 | 94055000 | 104 Pc | 3.880 | 403.52 | 0.00 | 33350.93 | 18.0% | 6003.17 | 39354.10 |
| DS-60930-BL<br>810745676 | LANTERN WITH WOOD HANDLE<br>T. Net Wt. (Kgs) :          156.000 | 94055000 | 104 Pc | 3.880 | 403.52 | 0.00 | 33350.93 | 18.0% | 6003.17 | 39354.10 |

| Amount Chargeable (In Words) | Total Amount | FOB | 807.04 | | 66701.86 | | 12006.34 | 78708.20 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Eight Hundred Seven And Four Cents  Only | | | | | | | | |
| **TOTAL : 208 Pcs** | NET Amount | FOB | 807.04 | | | | | |
| | TOTAL VALUE BEFORE TAX IN RS. | | | | 66701.86 | | | |
| | ADD IGST | | | | | | 12006.34 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 78708.20 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

| | |
|---|---|
| | Total Pkgs.              52 CTNS |
| | Gross Weight (Kgs.)          390.000 |
| **Bank Detail s:** | Net Weight (Kgs.)          312.000 |
| **Bank Name :STATE BANK OF INDIA (COMM. BRANCH)** | Volume (CBM)              3.556 |
| **Address : CIVIL LINES, MORADABAD-244001, INDIA** | |
| **SWIFT CODE;- SBININBB167,** | Certified that the Particular given above are true and correct |
| **A/C No. : 10652086629** | FOR DEWAN & SONS |
| | **FOR DEWAN & SONS** |
| Declaration :  We declare this invoice shows the actual price of goodsDescribed<br>                     and all particulars are true and correct. | Auth.Signatory<br>**03/06/2024**              **Auth.Sign.** |

LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE
### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | |
|---|---|---|---|
| Inv. No. | DS306/24 | Buyer Order # | 95193419 |
| Inv. Date | 05/06/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 05/06/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **MONTGOMERY DC - #0870**<br>**CSC DISTRIBUTION LLC**<br>**2855 SELMA HWY**<br>**MONTGOMERY, AL 36108-5035**<br>**USA** | **CSC DISTRIBUTION LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **MUMBAI** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE;- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **MONTGOMERY, AL** | **MONTGOMERY, AL** | **EXCHANGE RATE : 1 US $= Rs. 82.60** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate US $ | Total US $ | Add/Less (Rs.) | Taxable FOB (Rs.) | IGST Rate | IGST Amount | Value with Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-59028<br>810727274 | WOOD MUSHROOM 2 PC DECOR, SET OF 2<br>**T. Net Wt. (Kgs) :        42.900** | 44219190 | 55 Set | 11.520 | 633.60 | 0.00 | 52335.36 | 12.0% | 6280.24 | 58615.60 |
| DS-63008<br>810725758 | ALUMINIUM CANDLE HOLDER SET OF 4<br>**T. Net Wt. (Kgs) :        440.000** | 76169990 | 220 Set | 18.000 | 3960.00 | 0.00 | 327096.00 | 12.0% | 39251.52 | 366347.52 |

| Amount Chargeable (In Words) | Total Amount | FOB | 4593.60 | | 379431.36 | | 45531.76 | 424963.12 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Four Thousand Five Hundred Ninety Three And Sixty Cents Only | | | | | | | | |
| | NET Amount | FOB | 4593.60 | | | | | |
| **TOTAL : 275 Sets** | TOTAL VALUE BEFORE TAX IN RS. | | | | 379431.36 | | | |
| | ADD IGST | | | | | | 45531.76 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 424963.12 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

| Total Pkgs. | 275 CTNs |
|---|---|
| Gross Weight (Kgs.) | 654.500 |
| Net Weight (Kgs.) | 482.900 |
| Volume (CBM) | 4.522 |

Certified that the Particular given above are true and correct

FOR FOR DEWAN & SONS

Auth.Signatory
Auth.Sign.

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

05/06/2024

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

### Supply Meant for Export Under  payment of Intergrated Tax (IGST)

| | | | |
|---|---|---|---|
| Inv. No. | DS339/24 | Buyer Order # | 95252805 |
| Inv. Date | 11/06/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 11/06/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **DURANT DC - #0879**<br>**DURANT DC LLC**<br>**2306 ENTERPRISE DR**<br>**DURANT OK 74701-1964**<br>**USA** | **DURANT DC LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **ICD MORADABAD** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **MUNDRA** | |
| Port of Discharge | Final Destination | |
| **HOUSTON, TX** | **DURANT, OK** | **EXCHANGE RATE :   1 US $= Rs. 82.60** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST Rate | IGST Amount | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-48617<br>810729267 | IRON BELL GARLAND<br>**T. Net Wt. (Kgs) :        784.000** | 95051000 | 1120 Pc | 4.500 | 5040.00 | 0.00 | 416304.00 | 18.0% | 74934.72 | 491238.72 |
| DS-52936BL<br>810729279 | ALUMINIUM STANDING DEER- LARGE- BLACK<br>**T. Net Wt. (Kgs) :        380.240** | 76169990 | 388 Pc | 10.750 | 4171.00 | 0.00 | 344524.60 | 12.0% | 41342.95 | 385867.55 |
| DS-52939BL<br>810729285 | ALUMINIUM STANDING DEER SMALL-BLACK<br>**T. Net Wt. (Kgs) :        552.960** | 76169990 | 1728 Pc | 3.500 | 6048.00 | 0.00 | 499564.80 | 12.0% | 59947.78 | 559512.58 |
| DS-56088BL<br>810729278 | ALUMINIUM DEER STANDING- BLACK<br>**T. Net Wt. (Kgs) :        903.000** | 76169990 | 1204 Pc | 6.500 | 7826.00 | 0.00 | 646427.60 | 12.0% | 77571.31 | 723998.91 |

| Amount Chargeable (In Words) | Total Amount | FOB | 23085.00 | | 1906821.00 | | 253796.76 | 2160617.76 |
|---|---|---|---|---|---|---|---|---|

US. Dollars Twenty Three Thousand  Eighty Five  Only

**TOTAL : 4440 Pcs**

| NET Amount | FOB | 23085.00 | | | |
|---|---|---|---|---|---|
| TOTAL VALUE BEFORE TAX IN RS. | | | 1906821.00 | | |
| ADD IGST | | | | 253796.76 | |
| TOTAL VALUE AFTER TAX IN RS. | | | | | 2160617.76 |
| GST PAYMENT ON REVERSE CHARGE | | | | | N A |

| | |
|---|---|
| Total Pkgs. | **966 CTNs** |
| Gross Weight (Kgs.) | **3547.800** |
| Net Weight (Kgs.) | **2620.200** |
| Volume (CBM) | **25.812** |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

**FOR DEWAN & SONS**

**Auth.Signatory**

**Auth.Sign.**

Declaration :  We declare this invoice shows the actual price of goodsDescribed
          and all particulars are true and correct.

11/06/2024

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under payment of Intergrated Tax (IGST)**

| | | | | |
|---|---|---|---|---|
| Inv. No. | DS340/24 | Buyer Order # | 95299497 | |
| Inv. Date | 11/06/2024 | | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA | |
| PAN | AABFD8214G | Vehicle Number | N/A | |
| Reverse Charges (Y/N) | N | Date of Supply | 11/06/2024 | |
| State of origin & code | U.P. & 09 | Place of Supply | USA | |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **DURANT DC - #0879**<br>**DURANT DC LLC**<br>**2306 ENTERPRISE DR**<br>**DURANT OK 74701-1964**<br>**USA** | **DURANT DC LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **ICD MORADABAD** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **MUNDRA** | |
| Port of Discharge | Final Destination | |
| **HOUSTON, TX** | **DURANT, OK** | **EXCHANGE RATE :  1 US $= Rs. 82.60** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST Rate | IGST Amount | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-48497<br>810732985 | IRON TREE COLLAR<br>**T. Net Wt. (Kgs) :          2790.000** | 95051000 | 1860 Pc | 7.750 | 14415.00 | 0.00 | 1190679.00 | 18.0% | 214322.22 | 1405001.22 |

| Amount Chargeable (In Words) | Total Amount | FOB | 14415.00 | | 1190679.00 | | 214322.22 | 1405001.22 |
|---|---|---|---|---|---|---|---|---|

US. Dollars Fourteen Thousand Four Hundred Fifteen  Only

**TOTAL : 1860 Pcs**

| | | | |
|---|---|---|---|
| NET Amount | FOB | 14415.00 | |
| TOTAL VALUE BEFORE TAX IN RS. | | 1190679.00 | |
| ADD IGST | | | 214322.22 |
| TOTAL VALUE AFTER TAX IN RS. | | | 1405001.22 |
| GST PAYMENT ON REVERSE CHARGE | | | N A |

| | |
|---|---|
| Total Pkgs. | **465 CTNs** |
| Gross Weight (Kgs.) | **3534.000** |
| Net Weight (Kgs.) | **2790.000** |
| Volume (CBM) | **35.656** |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Auth.Signatory Auth.Sign.

Declaration :  We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

11/06/2024

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under payment of Intergrated Tax (IGST)**

| | | | |
|---|---|---|---|
| Inv. No. | DS346/24 | Buyer Order # | 95193422 |
| Inv. Date | 11/06/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 11/06/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **DURANT DC - #0879**<br>**DURANT DC LLC**<br>**2306 ENTERPRISE DR**<br>**DURANT OK 74701-1964**<br>**USA** | **DURANT DC LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **MUMBAI** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **DURANT** | **DURANT** | **EXCHANGE RATE : 1 US $= Rs. 82.60** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST Rate | IGST Amount | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-30443<br>810725852 | LANTERN SET OF 4<br>**T. Net Wt. (Kgs) : 1895.040** | 94055000 | 252 Set | 30.360 | 7650.72 | 0.00 | 631949.47 | 18.0% | 113750.90 | 745700.37 |

| Amount Chargeable (In Words) | Total Amount | FOB | 7650.72 | | 631949.47 | | 113750.90 | 745700.37 |
|---|---|---|---|---|---|---|---|---|

US. Dollars Seven Thousand Six Hundred Fifty And Seventy Two Cents Only

**TOTAL : 252 Sets**

| NET Amount | FOB | 7650.72 | | | |
|---|---|---|---|---|---|
| TOTAL VALUE BEFORE TAX IN RS. | | | 631949.47 | | |
| ADD IGST | | | | 113750.90 | |
| TOTAL VALUE AFTER TAX IN RS. | | | | | 745700.37 |
| GST PAYMENT ON REVERSE CHARGE | | | | | N A |

| | |
|---|---|
| **Bank Detail s:** | Total Pkgs. **252 CTNs** |
| **Bank Name :STATE BANK OF INDIA (COMM. BRANCH)** | Gross Weight (Kgs.) **2349.900** |
| **Address : CIVIL LINES, MORADABAD-244001, INDIA** | Net Weight (Kgs.) **1895.040** |
| **SWIFT CODE;- SBININBB167,** | Volume (CBM) **27.518** |
| **A/C No. : 10652086629** | |

Certified that the Particular given above are true and correct

FOR FOR DEWAN & SONS

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

**11/06/2024**

Auth.Signatory
Auth.Sign.

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under  payment of Intergrated Tax (IGST)**

| | | | |
|---|---|---|---|
| Inv. No. | DS366/24 | Buyer Order # | 95252802 |
| Inv. Date | 15/06/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 15/06/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **APPLE VALLEY DC # 0869**<br>**AVDC, INC.**<br>**18880 NAVAJO ROAD**<br>**APPLE VALLEY, CA 92307**<br>**U.S.A.** | **AVDC, INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| | | | |
|---|---|---|---|
| Pre-Carriage by | **BY ROAD** | Place of Rcpt. By Pre-carrier | **NHAVA SHEVA** |
| Vessel/Flight No. | **BY SEA** | Port of Loading | **NHAVA SHEVA** |
| Port of Discharge | **APPLE VALLEY** | Final Destination | **APPLE VALLEY** |

Terms of Delivery & Payment
F.O.B. US DOLLARS
PAYMENT MODE :- D/P

**EXCHANGE RATE :   1 US $= Rs. 82.60**

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST Rate | IGST Amount | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-52939BL<br>810729285 | ALUMINIUM STANDING DEER SMALL-BLACK<br>**T. Net Wt. (Kgs) :          612.480** | 76169990 | 1914 Pc | 3.500 | 6699.00 | 0.00 | 553337.40 | 12.0% | 66400.49 | 619737.89 |

| Amount Chargeable (In Words) | | | |
|---|---|---|---|
| US. Dollars Six Thousand Six Hundred Ninety Nine  Only | | | |

**TOTAL : 1914 Pcs**

| | | | | | | |
|---|---|---|---|---|---|---|
| Total Amount | FOB | 6699.00 | | 553337.40 | 66400.49 | 619737.89 |
| NET Amount | FOB | 6699.00 | | | | |
| TOTAL VALUE BEFORE TAX IN RS. | | | | 553337.40 | | |
| ADD IGST | | | | | 66400.49 | |
| TOTAL VALUE AFTER TAX IN RS. | | | | | | 619737.89 |
| GST PAYMENT ON REVERSE CHARGE | | | | | | N A |

| | |
|---|---|
| Total Pkgs. | **319 CTNS** |
| Gross Weight (Kgs.) | **861.300** |
| Net Weight (Kgs.) | **612.480** |
| Volume (CBM) | **4.984** |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

**FOR DEWAN & SONS**

Auth.Sign.

**15/06/2024**          **Auth.Sign.**

Declaration :  We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | |
|---|---|---|---|
| Inv. No. | DS384/24 | Buyer Order # | 95268213 |
| Inv. Date | 19/06/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 19/06/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **DURANT DC - #0879**<br>**DURANT DC LLC**<br>**2306 ENTERPRISE DR**<br>**DURANT OK 74701-1964**<br>**USA** | **DURANT DC LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **ICD MORADABAD** | F.O.B. US DOLLARS<br>PAYMENT MODE :- D/P |
| Vessel/Flight No. | Port of Loading | |
| **BY SEA** | **MUNDRA** | |
| Port of Discharge | Final Destination | |
| **HOUSTON, TX** | **DURANT, OK** | **EXCHANGE RATE : 1 US $= Rs. 82.60** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-55775<br>810625001 | IRON TREE COLLAR- BLACK<br>T. Net Wt. (Kgs) : **1710.000** | 95051000 | 1140 Pc | 6.750 | 7695.00 | 0.00 | 635607.00 | 18.0% | 114409.26 | 750016.26 |
| DS-64501G<br>810732386 | IRON SNOEFLAKE TREE COLLAR<br>T. Net Wt. (Kgs) : **1590.000** | 95051000 | 1060 Pc | 6.750 | 7155.00 | 0.00 | 591003.00 | 18.0% | 106380.54 | 697383.54 |

| Amount Chargeable (In Words) | Total Amount | FOB | 14850.00 | | 1226610.00 | | 220789.80 | 1447399.80 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Fourteen Thousand Eight Hundred Fifty Only | | | | | | | | |
| | NET Amount | FOB | 14850.00 | | | | | |
| **TOTAL : 2200 Pcs** | TOTAL VALUE BEFORE TAX IN RS. | | | | 1226610.00 | | | |
| | ADD IGST | | | | | | 220789.80 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 1447399.80 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

| | |
|---|---|
| **Total Pkgs.** | **550 CTNS** |
| **Gross Weight (Kgs.)** | **4180.000** |
| **Net Weight (Kgs.)** | **3300.000** |
| **Volume (CBM)** | **42.174** |

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Auth.Signatory
**Auth.Sign.**

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

**19/06/2024**

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under payment of Intergrated Tax (IGST)**

| | | | |
|---|---|---|---|
| Inv. No. | DS385/24 | Buyer Order # | 95259318 |
| Inv. Date | 19/06/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 19/06/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **DURANT DC - #0879**<br>**DURANT DC LLC**<br>**2306 ENTERPRISE DR**<br>**DURANT OK 74701-1964**<br>**USA** | **DURANT DC LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **ICD MORADABAD** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **MUNDRA** | |
| Port of Discharge | Final Destination | |
| **HOUSTON, TX** | **DURANT, OK** | **EXCHANGE RATE : 1 US $= Rs. 82.60** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-52936<br>810641933 | ALUMINIUM STANDING DEER- LARGE<br>**T. Net Wt. (Kgs) : 611.520** | 76169990 | 624 Pc | 10.750 | 6708.00 | 0.00 | 554080.80 | 12.0% | 66489.70 | 620570.50 |
| DS-56088<br>810641963 | ALUMINIUM STANDING DEER -MED<br>**T. Net Wt. (Kgs) : 1357.200** | 76169990 | 1872 Pc | 6.500 | 12168.00 | 0.00 | 1005076.80 | 12.0% | 120609.22 | 1125686.02 |

| Amount Chargeable (In Words) | Total Amount | FOB | 18876.00 | | 1559157.60 | | 187098.92 | 1746256.52 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Eighteen Thousand Eight Hundred Seventy Six Only | | | | | | | | |
| | NET Amount | FOB | 18876.00 | | | | | |
| **TOTAL : 2496 Pcs** | TOTAL VALUE BEFORE TAX IN RS. | | | | 1559157.60 | | | |
| | ADD IGST | | | | | | 187098.92 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 1746256.52 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

| **Bank Detail s:** | Total Pkgs. | **624 CTNs** |
|---|---|---|
| | Gross Weight (Kgs.) | **2901.600** |
| **Bank Name :STATE BANK OF INDIA (COMM. BRANCH)** | Net Weight (Kgs.) | **1968.720** |
| **Address : CIVIL LINES, MORADABAD-244001, INDIA** | Volume (CBM) | **23.908** |
| **SWIFT CODE;- SBININBB167,** | | |
| **A/C No. : 10652086629** | Certified that the Particular given above are true and correct | |

FOR DEWAN & SONS

Auth.Signatory
**19/06/2024**
Auth.Sign.

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE
### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | | |
|---|---|---|---|---|
| Inv. No. | DS397/24 | | Buyer Order # | 95259318 |
| Inv. Date | 21/06/2024 | | | |
| **IEC** | 0588026786 | | Transport Mode | BY SEA |
| PAN | AABFD8214G | | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | | Date of Supply | 21/06/2024 |
| State of origin & code | U.P. & 09 | | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **DURANT DC - #0879**<br>**DURANT DC LLC**<br>**2306 ENTERPRISE DR**<br>**DURANT OK 74701-1964**<br>**USA** | **DURANT DC LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **MUMBAI** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **DURANT** | **DURANT** | **EXCHANGE RATE : 1 US $= Rs. 82.60** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST Rate | IGST Amount | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-52939<br>810641961 | ALUMINIUM STANDING DEER- SMALL-GOLD<br>**T. Net Wt. (Kgs) : 756.480** | 76169990 | 2364 Pc | 3.500 | 8274.00 | 0.00 | 683432.40 | 12.0% | 82011.89 | 765444.29 |
| DS-59811<br>810641927 | HANGING BELLE SET OF 3<br>**T. Net Wt. (Kgs) : 1098.000** | 95051000 | 2196 Set | 3.400 | 7466.40 | 0.00 | 616724.64 | 18.0% | 111010.44 | 727735.08 |

| Amount Chargeable (In Words) | Total Amount | FOB | 15740.40 | | 1300157.04 | | 193022.33 | 1493179.37 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Fifteen Thousand Seven Hundred Forty And Forty Cents Only | | | | | | | | |

**TOTAL : 2364 Pcs  2196 Sets**

| | | | |
|---|---|---|---|
| NET Amount | FOB | 15740.40 | |
| TOTAL VALUE BEFORE TAX IN RS. | | 1300157.04 | |
| ADD IGST | | | 193022.33 |
| TOTAL VALUE AFTER TAX IN RS. | | | 1493179.37 |
| GST PAYMENT ON REVERSE CHARGE | | | N A |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

| Total Pkgs. | 943 CTNs |
|---|---|
| Gross Weight (Kgs.) | 2408.850 |
| Net Weight (Kgs.) | 1854.480 |
| Volume (CBM) | 13.436 |

Certified that the Particular given above are true and correct

**FOR DEWAN & SONS**

Auth Signatory
**Auth.Sign.**

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

**21/06/2024**

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE
**Supply Meant for Export Under  payment of Intergrated Tax (IGST)**

| | | | |
|---|---|---|---|
| Inv. No. | DS398/24 | Buyer Order # | 95252804 |
| Inv. Date | 21/06/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 21/06/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **TREMONT DC# 0874**<br>**CLOSEOUT DISTRIBUTION ,LLC**<br>**50 RAUSCH CREEK RD**<br>**TREMONT PA 17981-1734**<br>**USA** | **CLOSEOUT DISTRIBUTION INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **MUMBAI** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **TREMONT, PA** | **TREMONT, PA** | **EXCHANGE RATE :   1 US $= Rs. 82.60** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate US $ | Total US $ | Add/Less (Rs.) | Taxable FOB (Rs.) | IGST Rate | IGST Amount | Value with Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-48617<br>810729267 | IRON BELL GARLAND<br>**T. Net Wt. (Kgs) :        1145.200** | 95051000 | 1636 Pc | 4.500 | 7362.00 | 0.00 | 608101.20 | 18.0% | 109458.22 | 717559.42 |
| DS-56088BL<br>810729278 | ALUMINIUM DEER STANDING- BLACK<br>**T. Net Wt. (Kgs) :        1350.000** | 76169990 | 1800 Pc | 6.500 | 11700.00 | 0.00 | 966420.00 | 12.0% | 115970.40 | 1082390.40 |

| Amount Chargeable (In Words) | Total Amount | FOB | 19062.00 | | 1574521.20 | | 225428.62 | 1799949.82 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Nineteen Thousand Sixty Two  Only | | | | | | | | |
| **TOTAL : 3436 Pcs** | NET Amount | FOB | 19062.00 | | | | | |
| | TOTAL VALUE BEFORE TAX IN RS. | | | | 1574521.20 | | | |
| | ADD IGST | | | | | | 225428.62 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 1799949.82 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

| | |
|---|---|
| | Total Pkgs.            **859 CTNs** |
| **Bank Detail s:** | **Gross Weight (Kgs.)      3239.700** |
| | **Net Weight (Kgs.)       2495.200** |
| **Bank Name :STATE BANK OF INDIA (COMM. BRANCH)** | **Volume (CBM)               21.760** |
| **Address : CIVIL LINES, MORADABAD-244001, INDIA** | |
| **SWIFT CODE;- SBININBB167,** | Certified that the Particular given above are true and correct |
| **A/C No. : 10652086629** | **FOR DEWAN & SONS** |

Declaration :  We declare this invoice shows the actual price of goodsDescribed
                        and all particulars are true and correct.

21/06/2024                                    Auth. Sign.

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under payment of Intergrated Tax (IGST)**

| | | | |
|---|---|---|---|
| Inv. No. | DS401/24 | Buyer Order # | 95299495 |
| Inv. Date | 22/06/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 22/06/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **MONTGOMERY DC - #0870**<br>**CSC DISTRIBUTION LLC**<br>**2855 SELMA HWY**<br>**MONTGOMERY, AL 36108-5035**<br>**USA** | **CSC DISTRIBUTION LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **ICD MORADABAD** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE;- D/P |
| **BY SEA** | **MUNDRA** | |
| Port of Discharge | Final Destination | |
| **SAVANNAH, GA** | **MONTGOMERY, AL** | **EXCHANGE RATE : 1 US $= Rs. 82.60** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST Rate | IGST Amount | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-48497<br>810732985 | IRON TREE COLLAR<br>**T. Net Wt. (Kgs) :         4566.000** | 95051000 | 3044 Pc | 7.750 | 23591.00 | 0.00 | 1948616.60 | 18.0% | 350750.99 | 2299367.59 |

| Amount Chargeable (In Words) | Total Amount | FOB | 23591.00 | | 1948616.60 | | 350750.99 | 2299367.59 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Twenty Three Thousand Five Hundred Ninety One Only | | | | | | | | |
| **TOTAL : 3044 Pcs** | NET Amount | FOB | 23591.00 | | | | | |
| | TOTAL VALUE BEFORE TAX IN RS. | | | | 1948616.60 | | | |
| | ADD IGST | | | | | | 350750.99 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 2299367.59 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

| | |
|---|---|
| **Total Pkgs.** | **761 CTNs** |
| **Gross Weight (Kgs.)** | **5783.600** |
| **Net Weight (Kgs.)** | **4566.000** |
| **Volume (CBM)** | **58.353** |

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Auth.Signatory

**Auth.Sign.**

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

**22/06/2024**

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under payment of Intergrated Tax (IGST)**

| | | | |
|---|---|---|---|
| Inv. No. | DS402/24 | Buyer Order # | 95299498 |
| Inv. Date | 22/06/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 22/06/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **COLUMBUS DC# 0890**<br>**BIG LOTS STORES INC**<br>**500 PHILLIPI RD**<br>**COLUMBUS, OH 43228-9006**<br>**USA** | **BIG LOTS STORES INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **ICD MORADABAD** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **MUNDRA** | |
| Port of Discharge | Final Destination | |
| **COLUMBUS, OH** | **COLUMBUS, OH** | **EXCHANGE RATE :   1 US $= Rs. 82.60** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-48497<br>810732985 | IRON TREE COLLAR<br>**T. Net Wt. (Kgs) :      4500.000** | 95051000 | 3000 Pc | 7.750 | 23250.00 | 0.00 | 1920450.00 | 18.0% | 345681.00 | 2266131.00 |

| Amount Chargeable (In Words) | Total Amount | FOB | 23250.00 | | 1920450.00 | | 345681.00 | 2266131.00 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Twenty Three Thousand  Two Hundred Fifty   Only | | | | | | | | |
| **TOTAL : 3000 Pcs** | NET Amount | FOB | 23250.00 | | | | | |
| | TOTAL VALUE BEFORE TAX IN RS. | | | | 1920450.00 | | | |
| | ADD IGST | | | | | | 345681.00 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 2266131.00 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

| Total Pkgs. | 750 CTNs |
|---|---|
| Gross Weight (Kgs.) | 5700.000 |
| Net Weight (Kgs.) | 4500.000 |
| Volume (CBM) | 57.510 |

Certified that the Particular given above are true and correct

**FOR DEWAN & SONS**

Auth.Sign.

Declaration :  We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

**22/06/2024**

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under  payment of Intergrated Tax (IGST)**

| | | | |
|---|---|---|---|
| Inv. No. | DS403/24 | Buyer Order # | 95299496 |
| Inv. Date | 22/06/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 22/06/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **TREMONT DC# 0874**<br>**CLOSEOUT DISTRIBUTION ,LLC**<br>**50 RAUSCH CREEK RD**<br>**TREMONT PA 17981-1734**<br>**USA** | **CLOSEOUT DISTRIBUTION INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **ICD MORADABAD** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **MUNDRA** | |
| Port of Discharge | Final Destination | |
| **NEW YORK, NY** | **TREMONT, PA** | **EXCHANGE RATE :   1 US $= Rs. 82.60** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST Rate | IGST Amount | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-48497<br>810732985 | IRON TREE COLLAR<br>**T. Net Wt. (Kgs) :          3864.000** | 95051000 | 2576Pc | 7.750 | 19964.00 | 0.00 | 1649026.40 | 18.0% | 296824.75 | 1945851.15 |

| Amount Chargeable (In Words) | Total Amount | FOB | 19964.00 | | 1649026.40 | | 296824.75 | 1945851.15 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Nineteen Thousand Nine Hundred Sixty Four  Only | | | | | | | | |
| **TOTAL : 2576 Pcs** | NET Amount | FOB | 19964.00 | | | | | |
| | TOTAL VALUE BEFORE TAX IN RS. | | | | 1649026.40 | | | |
| | ADD IGST | | | | | | 296824.75 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 1945851.15 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

| | | |
|---|---|---|
| | Total Pkgs. | **644 CTNs** |
| **Bank Detail s:** | Gross Weight (Kgs.) | **4894.400** |
| **Bank Name :STATE BANK OF INDIA (COMM. BRANCH)** | Net Weight (Kgs.) | **3864.000** |
| **Address : CIVIL LINES, MORADABAD-244001, INDIA** | Volume (CBM) | **49.382** |
| **SWIFT CODE;- SBININBB167,** | | |
| **A/C No. : 10652086629** | | |

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Auth Signatory
Auth.Sign.

Declaration :  We declare this invoice shows the actual price of goodsDescribed
       and all particulars are true and correct.

22/06/2024

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under payment of Intergrated Tax (IGST)**

| | | | | |
|---|---|---|---|---|
| Inv. No. | DS404/24 | | Buyer Order # | 95252804 |
| Inv. Date | 22/06/2024 | | | |
| **IEC** | 0588026786 | | Transport Mode | BY SEA |
| PAN | AABFD8214G | | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | | Date of Supply | 22/06/2024 |
| State of origin & code | U.P. & 09 | | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **TREMONT DC# 0874**<br>**CLOSEOUT DISTRIBUTION ,LLC**<br>**50 RAUSCH CREEK RD**<br>**TREMONT PA 17981-1734**<br>**USA** | **CLOSEOUT DISTRIBUTION INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| | | | |
|---|---|---|---|
| | | Country of Origin of Goods<br>INDIA | Country of Final Destination<br>USA |
| Pre-Carriage by<br>**BY ROAD** | Place of Rcpt. By Pre-carrier<br>**ICD MORADABAD** | Terms of Delivery & Payment<br>F.O.B. US DOLLARS<br>PAYMENT MODE :- D/P | |
| Vessel/Flight No.<br>**BY SEA** | Port of Loading<br>**MUNDRA** | | |
| Port of Discharge<br>**NEW YORK, NY** | Final Destination<br>**TREMONT, PA** | **EXCHANGE RATE : 1 US \$= Rs. 82.60** | |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-52936BL<br>810729279 | ALUMINIUM STANDING DEER- LARGE- BLACK<br>T. Net Wt. (Kgs) : 666.400 | 76169990 | 680 Pc | 10.750 | 7310.00 | 0.00 | 603806.00 | 12.0% | 72456.72 | 676262.72 |
| DS-52939BL<br>810729285 | ALUMINIUM STANDING DEER SMALL-BLACK<br>T. Net Wt. (Kgs) : 833.280 | 76169990 | 2604 Pc | 3.500 | 9114.00 | 0.00 | 752816.40 | 12.0% | 90337.97 | 843154.37 |

| Amount Chargeable (In Words) | Total Amount | FOB | 16424.00 | | 1356622.40 | | 162794.69 | 1519417.09 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Sixteen Thousand Four Hundred Twenty Four Only | | | | | | | | |
| **TOTAL : 3284 Pcs** | NET Amount | FOB | 16424.00 | | | | | |
| | TOTAL VALUE BEFORE TAX IN RS. | | | | 1356622.40 | | | |
| | ADD IGST | | | | | | 162794.69 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 1519417.09 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

| | |
|---|---|
| | Total Pkgs. **604 CTNs**<br>Gross Weight (Kgs.) **2191.800**<br>Net Weight (Kgs.) **1499.680**<br>Volume (CBM) **18.376** |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Auth. Sign.

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

22/06/2024

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under payment of Intergrated Tax (IGST)**

| | | | |
|---|---|---|---|
| Inv. No. | DS450/24 | Buyer Order # | 95301010 |
| Inv. Date | 03/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 03/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **TREMONT DC# 0874**<br>**CLOSEOUT DISTRIBUTION ,LLC**<br>**50 RAUSCH CREEK RD**<br>**TREMONT PA 17981-1734**<br>**USA** | **CLOSEOUT DISTRIBUTION INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **MUMBAI** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **TREMONT, PA** | **TREMONT, PA** | **EXCHANGE RATE : 1 US $= Rs. 82.60** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-50990A<br>810603846 | 14INCH DECORATIVE CANDLE HOLDER<br>T. Net Wt. (Kgs) : 258.000 | 76169990 | 600 Pc | 3.200 | 1920.00 | 0.00 | 158592.00 | 12.0% | 19031.04 | 177623.04 |
| DS-50990B<br>810603809 | 12INCH DECORATIVE CANDLE HOLDER<br>T. Net Wt. (Kgs) : 252.000 | 76169990 | 600 Pc | 2.930 | 1758.00 | 0.00 | 145210.80 | 12.0% | 17425.30 | 162636.10 |
| DS-50990C<br>810603856 | 10INCH DECORATIVE CANDLE HOLDER<br>T. Net Wt. (Kgs) : 138.000 | 76169990 | 600 Pc | 2.700 | 1620.00 | 0.00 | 133812.00 | 12.0% | 16057.44 | 149869.44 |
| DS-58684<br>810607072 | WOODEN BOWL<br>T. Net Wt. (Kgs) : 540.000 | 44199090 | 600 Pc | 5.000 | 3000.00 | 0.00 | 247800.00 | 12.0% | 29736.00 | 277536.00 |

| Amount Chargeable (In Words) | Total Amount | FOB | | 8298.00 | | 685414.80 | | 82249.78 | 767664.58 |
|---|---|---|---|---|---|---|---|---|---|
| US. Dollars Eight Thousand Two Hundred Ninety Eight Only | | | | | | | | | |
| | NET Amount | FOB | | 8298.00 | | | | | |
| **TOTAL : 2400 Pcs** | TOTAL VALUE BEFORE TAX IN RS. | | | | | 685414.80 | | | |
| | ADD IGST | | | | | | | 82249.78 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | | 767664.58 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | | N A |

| | |
|---|---|
| | Total Pkgs. **750 CTNs** |
| | Gross Weight (Kgs.) **1446.000** |
| **Bank Detail s:** | Net Weight (Kgs.) **1188.000** |
| | Volume (CBM) **9.875** |

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Auth.Sign.

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

03/07/2024

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE
### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | |
|---|---|---|---|
| Inv. No. | DS451/24 | Buyer Order # | 95301011 |
| Inv. Date | 03/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 03/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **COLUMBUS DC# 0890**<br>**BIG LOTS STORES INC**<br>**500 PHILLIPI RD**<br>**COLUMBUS, OH 43228-9006**<br>**USA** | **BIG LOTS STORES INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **MUMBAI** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **COLUMBUS, OH** | **COLUMBUS, OH** | **EXCHANGE RATE : 1 US $= Rs. 82.60** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate US $ | Total US $ | Add/Less (Rs.) | Taxable FOB (Rs.) | IGST Rate | IGST Amount | Value with Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-50990A<br>810603846 | 14INCH DECORATIVE CANDLE HOLDER<br>T. Net Wt. (Kgs) : 258.000 | 76169990 | 600 Pc | 3.200 | 1920.00 | 0.00 | 158592.00 | 12.0% | 19031.04 | 177623.04 |
| DS-50990B<br>810603809 | 12INCH DECORATIVE CANDLE HOLDER<br>T. Net Wt. (Kgs) : 252.000 | 76169990 | 600 Pc | 2.930 | 1758.00 | 0.00 | 145210.80 | 12.0% | 17425.30 | 162636.10 |
| DS-50990C<br>810603856 | 10INCH DECORATIVE CANDLE HOLDER<br>T. Net Wt. (Kgs) : 138.000 | 76169990 | 600 Pc | 2.700 | 1620.00 | 0.00 | 133812.00 | 12.0% | 16057.44 | 149869.44 |
| DS-58684<br>810607072 | WOODEN BOWL<br>T. Net Wt. (Kgs) : 540.000 | 44199090 | 600 Pc | 5.000 | 3000.00 | 0.00 | 247800.00 | 12.0% | 29736.00 | 277536.00 |

| | | | | | |
|---|---|---|---|---|---|
| Amount Chargeable (In Words) | | Total Amount | FOB | 8298.00 | 685414.80 | 82249.78 | 767664.58 |

US. Dollars Eight Thousand Two Hundred Ninety Eight Only

**TOTAL : 2400 Pcs**

| | | | |
|---|---|---|---|
| NET Amount | FOB | 8298.00 | |
| TOTAL VALUE BEFORE TAX IN RS. | | 685414.80 | |
| ADD IGST | | | 82249.78 |
| TOTAL VALUE AFTER TAX IN RS. | | | 767664.58 |
| GST PAYMENT ON REVERSE CHARGE | | | N A |

**Total Pkgs.** 750 CTNs
**Gross Weight (Kgs.)** 1446.000
**Net Weight (Kgs.)** 1188.000
**Volume (CBM)** 9.875

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Auth.Signatory
**Auth.Sign.**

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

03/07/2024

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under payment of Intergrated Tax (IGST)**

| | | | | |
|---|---|---|---|---|
| Inv. No. | DS477/24 | | Buyer Order # | 95399575 |
| Inv. Date | 04/07/2024 | | | |
| **IEC** | 0588026786 | | Transport Mode | BY SEA |
| PAN | AABFD8214G | | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | | Date of Supply | 04/07/2024 |
| State of origin & code | U.P. & 09 | | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **DURANT DC - #0879**<br>**DURANT DC LLC**<br>**2306 ENTERPRISE DR**<br>**DURANT OK 74701-1964**<br>**USA** | **DURANT DC LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **NHAVA SHEVA** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **DURANT** | **DURANT** | **EXCHANGE RATE :  1 US $= Rs. 82.60** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-64501WG<br>810745643 | IRON TREE COLLAR-WHITE<br>**T. Net Wt. (Kgs) :        1518.000** | 95051000 | 1012 Pc | 7.000 | 7084.00 | 0.00 | 585138.40 | 18.0% | 105324.91 | 690463.31 |

| Amount Chargeable (In Words) | Total Amount | FOB | | 7084.00 | | 585138.40 | | 105324.91 | 690463.31 |
|---|---|---|---|---|---|---|---|---|---|
| US. Dollars Seven Thousand Eighty Four  Only | | | | | | | | | |
| **TOTAL : 1012 Pcs** | NET Amount | FOB | | 7084.00 | | | | | |
| | TOTAL VALUE BEFORE TAX IN RS. | | | | | 585138.40 | | | |
| | ADD IGST | | | | | | | 105324.91 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | | 690463.31 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | | N A |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

| Total Pkgs. | 253 CTNs |
|---|---|
| **Gross Weight (Kgs.)** | **1922.800** |
| **Net Weight (Kgs.)** | **1518.000** |
| **Volume (CBM)** | **19.400** |

Certified that the Particular given above are true and correct

**FOR DEWAN & SONS**
FOR DEWAN & SONS

Declaration :  We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

04/07/2024

Auth.Sign.  Auth.Sign.

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | |
|---|---|---|---|
| Inv. No. | DS485/24 | Buyer Order # | 95320748 |
| Inv. Date | 05/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 05/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **APPLE VALLEY DC # 0869**<br>**AVDC, INC.**<br>**18880 NAVAJO ROAD**<br>**APPLE VALLEY, CA 92307**<br>**U.S.A.** | **AVDC, INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **NHAVA SHEVA** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | **EXCHANGE RATE :  1 US $= Rs. 82.70** |
| **APPLE VALLEY** | **APPLE VALLEY** | |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-52291<br>810747542 | FRUIT BOWL<br>T. Net Wt. (Kgs) :        571.200 | 73239490 | 408 Pc | 7.200 | 2937.60 | 0.00 | 242939.52 | 12.0% | 29152.74 | 272092.26 |
| DS-58914<br>810747573 | WOODEN SERVING OVAL TRAYS<br>T. Net Wt. (Kgs) :        208.125 | 44219160 | 333 Pc | 4.370 | 1455.21 | 0.00 | 120345.87 | 12.0% | 14441.50 | 134787.37 |
| DS-58910L<br>810748059 | WOODEN SERVING BOWL<br>T. Net Wt. (Kgs) :        233.100 | 44219160 | 333 Pc | 5.080 | 1691.64 | 0.00 | 139898.63 | 12.0% | 16787.84 | 156686.47 |

| Amount Chargeable (In Words) | Total Amount | FOB | 6084.45 | | 503184.02 | | 60382.08 | 563566.10 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Six Thousand Eighty Four And Forty Five Cents Only | | | | | | | | |
| | NET Amount | FOB | 6084.45 | | | | | |
| **TOTAL : 1074 Pcs** | TOTAL VALUE BEFORE TAX IN RS. | | | | 503184.02 | | | |
| | ADD IGST | | | | | | 60382.08 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 563566.10 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

| | Total Pkgs. | **426 CTNs** |
|---|---|---|
| | Gross Weight (Kgs.) | **1367.250** |
| **Bank Detail s:** | Net Weight (Kgs.) | **1012.425** |
| **Bank Name :STATE BANK OF INDIA (COMM. BRANCH)** | Volume (CBM) | **12.290** |
| **Address : CIVIL LINES, MORADABAD-244001, INDIA** | | |
| **SWIFT CODE;- SBININBB167,** | | |
| **A/C No. : 10652086629** | Certified that the Particular given above are true and correct | |
| | FOR DEWAN & SONS | |
| Declaration :  We declare this invoice shows the actual price of goodsDescribed<br>                    and all particulars are true and correct. | **05/07/2024** | Auth.Sign |

GSTIN : **09AABFD8214G1ZM**

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | | |
|---|---|---|---|---|
| Inv. No. | DS486/24 | | Buyer Order # | 95320751 |
| Inv. Date | 05/07/2024 | | | |
| **IEC** | 0588026786 | | Transport Mode | BY SEA |
| PAN | AABFD8214G | | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | | Date of Supply | 05/07/2024 |
| State of origin & code | U.P. & 09 | | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **DURANT DC - #0879**<br>**DURANT DC LLC**<br>**2306 ENTERPRISE DR**<br>**DURANT OK 74701-1964**<br>**USA** | **DURANT DC LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **NHAVA SHEVA** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **DURANT** | **DURANT** | **EXCHANGE RATE :** 1 US $= Rs. 82.70 |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate US $ | Total US $ | Add/Less (Rs.) | Taxable FOB (Rs.) | IGST Rate | IGST Amount | Value with Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-52291<br>810747542 | FRUIT BOWL<br>T. Net Wt. (Kgs) : 579.600 | 73239490 | 414Pc | 7.200 | 2980.80 | 0.00 | 246512.16 | 12.0% | 29581.46 | 276093.62 |
| DS-58914<br>810747573 | WOODEN SERVING OVAL TRAYS<br>T. Net Wt. (Kgs) : 108.750 | 44219160 | 174Pc | 4.370 | 760.38 | 0.00 | 62883.43 | 12.0% | 7546.01 | 70429.44 |
| DS-58910L<br>810748059 | WOODEN SERVING BOWL<br>T. Net Wt. (Kgs) : 121.800 | 44219160 | 174Pc | 5.080 | 883.92 | 0.00 | 73100.18 | 12.0% | 8772.02 | 81872.20 |

| Amount Chargeable (In Words) | | | | | | |
|---|---|---|---|---|---|---|
| US. Dollars Four Thousand Six Hundred Twenty Five And Ten Cents Only | Total Amount | FOB | 4625.10 | 382495.77 | 45899.49 | 428395.26 |
| | NET Amount | FOB | 4625.10 | | | |
| **TOTAL : 762 Pcs** | TOTAL VALUE BEFORE TAX IN RS. | | | 382495.77 | | |
| | ADD IGST | | | | 45899.49 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | 428395.26 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | N A |

Total Pkgs.          323 CTNs
Gross Weight (Kgs.)    1106.000
Net Weight (Kgs.)      810.150
Volume (CBM)           11.061

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

**FOR DEWAN & SONS**

Auth. Sign.

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

05/07/2024

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under payment of Intergrated Tax (IGST)**

| | | | |
|---|---|---|---|
| Inv. No. | DS487/24 | Buyer Order # | 95399836 |
| Inv. Date | 05/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 05/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **DURANT DC - #0879**<br>**DURANT DC LLC**<br>**2306 ENTERPRISE DR**<br>**DURANT OK 74701-1964**<br>**USA** | **DURANT DC LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **NHAVA SHEVA** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | **EXCHANGE RATE :   1 US $= Rs. 82.70** |
| **DURANT** | **DURANT** | |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-65045<br>810745369 | X-MAS STOCKING HOLDER SET OF 4<br>**T. Net Wt. (Kgs) :        794.990** | 95051000 | 277 Set | 15.800 | 4376.60 | 0.00 | 361944.82 | 18.0% | 65150.07 | 427094.89 |

| Amount Chargeable (In Words) | Total Amount | FOB | 4376.60 | | 361944.82 | | 65150.07 | 427094.89 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Four Thousand Three Hundred Seventy Six And Sixty  Cents  Only | | | | | | | | |

**TOTAL :  277 Sets**

| | | | |
|---|---|---|---|
| NET Amount | FOB | 4376.60 | |
| TOTAL VALUE BEFORE TAX IN RS. | | 361944.82 | |
| ADD IGST | | | 65150.07 |
| TOTAL VALUE AFTER TAX IN RS. | | | 427094.89 |
| GST PAYMENT ON REVERSE CHARGE | | | N A |

| | |
|---|---|
| Total Pkgs. | 277 CTNs |
| Gross Weight (Kgs.) | 1073.375 |
| Net Weight (Kgs.) | 794.990 |
| Volume (CBM) | 6.518 |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

**FOR DEWAN & SONS**
Auth. Sign.

Declaration :  We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

05/07/2024

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under payment of Intergrated Tax (IGST)**

| | | | |
|---|---|---|---|
| Inv. No. | DS517/24 | Buyer Order # | 95320749 |
| Inv. Date | 11/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 11/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **MONTGOMERY DC - #0870**<br>**CSC DISTRIBUTION LLC**<br>**2855 SELMA HWY**<br>**MONTGOMERY, AL 36108-5035**<br>**USA** | **CSC DISTRIBUTION LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **MUMBAI** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE;- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **MONTGOMERY, AL** | **MONTGOMERY, AL** | **EXCHANGE RATE :   1 US $= Rs. 82.80** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-52291<br>810747542 | IRON FRUIT BOWL<br>T. Net Wt. (Kgs) :      770.000 | 73239490 | 550 Pc | 7.200 | 3960.00 | 0.00 | 327888.00 | 12.0% | 39346.56 | 367234.56 |
| DS-58910L<br>810748059 | WOODEN SERVING BOWL<br>T. Net Wt. (Kgs) :      117.600 | 44219160 | 168 Pc | 5.080 | 853.44 | 0.00 | 70664.83 | 12.0% | 8479.78 | 79144.61 |
| DS-58914<br>810747573 | WOODEN SERVING OVAL TRAYS<br>T. Net Wt. (Kgs) :      105.000 | 44219160 | 168 Pc | 4.370 | 734.16 | 0.00 | 60788.45 | 12.0% | 7294.61 | 68083.06 |

| Amount Chargeable (In Words) | Total Amount | FOB | 5547.60 | | 459341.28 | | 55120.95 | 514462.23 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Five Thousand Five Hundred Forty Seven And Sixty Cents Only | | | | | | | | |
| | NET Amount | FOB | 5547.60 | | | | | |
| **TOTAL : 886 Pcs** | TOTAL VALUE BEFORE TAX IN RS. | | | | 459341.28 | | | |
| | ADD IGST | | | | | | 55120.95 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 514462.23 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

| Total Pkgs. | 387 CTNs |
|---|---|
| Gross Weight (Kgs.) | 1360.900 |
| Net Weight (Kgs.) | 992.600 |
| Volume (CBM) | 14.152 |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Declaration :  We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

11/07/2024

Auth.Sign.

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | |
|---|---|---|---|
| Inv. No. | DS518/24 | Buyer Order # | 95320750 |
| Inv. Date | 11/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 11/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **TREMONT DC# 0874**<br>**CLOSEOUT DISTRIBUTION ,LLC**<br>**50 RAUSCH CREEK RD**<br>**TREMONT PA 17981-1734**<br>**USA** | **CLOSEOUT DISTRIBUTION INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **MUMBAI** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **TREMONT, PA** | **TREMONT, PA** | **EXCHANGE RATE : 1 US $= Rs. 82.70** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-52291<br>810747542 | IRON FRUIT BOWL<br>T. Net Wt. (Kgs) :    812.000 | 73239490 | 580 Pc | 7.200 | 4176.00 | 0.00 | 345355.20 | 12.0% | 41442.62 | 386797.82 |
| DS-58910L<br>810748059 | WOODEN SERVING BOWL<br>T. Net Wt. (Kgs) :    214.200 | 44219160 | 306 Pc | 5.080 | 1554.48 | 0.00 | 128555.50 | 12.0% | 15426.66 | 143982.16 |
| DS-58914<br>810747573 | WOODEN SERVING OVAL TRAYS<br>T. Net Wt. (Kgs) :    191.250 | 44219160 | 306 Pc | 4.370 | 1337.22 | 0.00 | 110588.09 | 12.0% | 13270.57 | 123858.66 |

| Amount Chargeable (In Words) | Total Amount | FOB | | 7067.70 | | 584498.79 | | 70139.85 | 654638.64 |
|---|---|---|---|---|---|---|---|---|---|
| US. Dollars Seven Thousand Sixty Seven And Seventy  Cents  Only | | | | | | | | | |
| | NET Amount | FOB | | 7067.70 | | | | | |
| **TOTAL : 1192 Pcs** | TOTAL VALUE BEFORE TAX IN RS. | | | | | 584498.79 | | | |
| | ADD IGST | | | | | | | 70139.85 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | | 654638.64 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | | N A |

| Bank Detail s: | Total Pkgs. | **494 CTNs** |
|---|---|---|
| | Gross Weight (Kgs.) | **1656.300** |
| **Bank Name :STATE BANK OF INDIA (COMM. BRANCH)** | Net Weight (Kgs.) | **1217.450** |
| **Address : CIVIL LINES, MORADABAD-244001, INDIA** | Volume (CBM) | **16.031** |
| **SWIFT CODE;- SBININBB167,** | | |
| **A/C No. : 10652086629** | Certified that the Particular given above are true and correct | |

FOR DEWAN & SONS

**11/07/2024**

Auth.Sign.

Declaration :  We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE
**Supply Meant for Export Under payment of Intergrated Tax (IGST)**

| | | | | |
|---|---|---|---|---|
| Inv. No. | DS519/24 | | Buyer Order # | 95320752 |
| Inv. Date | 11/07/2024 | | | |
| **IEC** | 0588026786 | | Transport Mode | BY SEA |
| PAN | AABFD8214G | | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | | Date of Supply | 11/07/2024 |
| State of origin & code | U.P. & 09 | | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **COLUMBUS DC# 0890**<br>**BIG LOTS STORES INC**<br>**500 PHILLIPI RD**<br>**COLUMBUS, OH 43228-9006**<br>**USA** | **BIG LOTS STORES INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **MUMBAI** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **COLUMBUS, OH** | **COLUMBUS, OH** | **EXCHANGE RATE :  1 US $= Rs. 82.70** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate US $ | Total US $ | Add/Less (Rs.) | Taxable FOB (Rs.) | IGST Rate | IGST Amount | Value with Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-52291<br>810747542 | IRON FRUIT BOWL<br>T. Net Wt. (Kgs) : **798.000** | 73239490 | 570 Pc | 7.200 | 4104.00 | 0.00 | 339400.80 | 12.0% | 40728.10 | 380128.90 |
| DS-58910L<br>810748059 | WOODEN SERVING BOWL<br>T. Net Wt. (Kgs) : **117.600** | 44219160 | 168 Pc | 5.080 | 853.44 | 0.00 | 70579.49 | 12.0% | 8469.54 | 79049.03 |
| DS-58914<br>810747573 | WOODEN SERVING OVAL TRAYS<br>T. Net Wt. (Kgs) : **105.000** | 44219160 | 168 Pc | 4.370 | 734.16 | 0.00 | 60715.03 | 12.0% | 7285.80 | 68000.83 |

| Amount Chargeable (In Words) | | Total Amount | FOB | 5691.60 | | 470695.32 | | 56483.44 | 527178.76 |
|---|---|---|---|---|---|---|---|---|---|
| US. Dollars Five Thousand Six Hundred Ninety One And Sixty  Cents  Only | | | | | | | | | |
| | | NET Amount | FOB | 5691.60 | | | | | |
| **TOTAL : 906 Pcs** | | | | | | | | | |
| | | TOTAL VALUE BEFORE TAX IN RS. | | | | 470695.32 | | | |
| | | ADD IGST | | | | | | 56483.44 | |
| | | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 527178.76 |
| | | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

| | |
|---|---|
| **Total Pkgs.** | **397 CTNs** |
| **Gross Weight (Kgs.)** | **1399.900** |
| **Net Weight (Kgs.)** | **1020.600** |
| **Volume (CBM)** | **14.614** |

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Auth. Signatory
Auth.Sign.

Declaration :  We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

11/07/2024

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under payment of Intergrated Tax (IGST)**

| | | | | |
|---|---|---|---|---|
| Inv. No. | DS528/24 | | Buyer Order # | 95399837 |
| Inv. Date | 11/07/2024 | | | |
| **IEC** | 0588026786 | | Transport Mode | BY SEA |
| PAN | AABFD8214G | | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | | Date of Supply | 11/07/2024 |
| State of origin & code | U.P. & 09 | | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **COLUMBUS DC# 0890**<br>**BIG LOTS STORES INC**<br>**500 PHILLIPI RD**<br>**COLUMBUS, OH 43228-9006**<br>**USA** | **BIG LOTS STORES INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **MUMBAI** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **COLUMBUS, OH** | **COLUMBUS, OH** | **EXCHANGE RATE :   1 US $= Rs. 82.70** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-65045<br>810745369 | X-MAS STOCKING HOLDER SET OF 4<br>**T. Net Wt. (Kgs) :          1038.940** | 95051000 | 362 Set | 15.800 | 5719.60 | 0.00 | 473010.92 | 18.0% | 85141.97 | 558152.89 |

| Amount Chargeable (In Words) | Total Amount | FOB | 5719.60 | | 473010.92 | | 85141.97 | 558152.89 |
|---|---|---|---|---|---|---|---|---|

US. Dollars Five Thousand Seven Hundred Nineteen And Sixty  Cents  Only

**TOTAL :  362 Sets**

| | | | |
|---|---|---|---|
| NET Amount | FOB | 5719.60 | |
| TOTAL VALUE BEFORE TAX IN RS. | | 473010.92 | |
| ADD IGST | | | 85141.97 |
| TOTAL VALUE AFTER TAX IN RS. | | | 558152.89 |
| GST PAYMENT ON REVERSE CHARGE | | | N A |

**Total Pkgs.**          **362 CTNs**
**Gross Weight (Kgs.)**          **1402.750**
**Net Weight (Kgs.)**          **1038.940**
**Volume (CBM)**          **8.517**

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Auth.Signatory

**FOR DEWAN & SONS**

Auth.Sign.

Declaration :  We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

**11/07/2024**

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under payment of Intergrated Tax (IGST)**

| | | | |
|---|---|---|---|
| Inv. No. | DS529/24 | Buyer Order # | 95415354 |
| Inv. Date | 11/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 11/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **DURANT DC - #0879**<br>**DURANT DC LLC**<br>**2306 ENTERPRISE DR**<br>**DURANT OK 74701-1964**<br>**USA** | **DURANT DC LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| | | | |
|---|---|---|---|
| Pre-Carriage by<br>**BY ROAD** | Place of Rcpt. By Pre-carrier<br>**MUMBAI** | Terms of Delivery & Payment<br>F.O.B. US DOLLARS<br>PAYMENT MODE :- D/P | |
| Vessel/Flight No.<br>**BY SEA** | Port of Loading<br>**NHAVA SHEVA** | | |
| Port of Discharge<br>**DURANT** | Final Destination<br>**DURANT** | **EXCHANGE RATE :  1 US $= Rs. 82.70** | |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST Rate | IGST Amount | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-59811L<br>810745731 | HANGING BELLE SET OF 3-LARGE -GOLD<br>T. Net Wt. (Kgs) :        1003.600 | 95051000 | 1040 Set | 6.000 | 6240.00 | 0.00 | 516048.00 | 18.0% | 92888.64 | 608936.64 |
| DS-59811S<br>810745653 | HANGING BELLE SET OF 3-SMALL<br>T. Net Wt. (Kgs) :        452.400 | 95051000 | 1040 Set | 3.000 | 3120.00 | 0.00 | 258024.00 | 18.0% | 46444.32 | 304468.32 |

| Amount Chargeable (In Words) | Total Amount | FOB | 9360.00 | | 774072.00 | | 139332.96 | 913404.96 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Nine Thousand Three Hundred Sixty  Only | | | | | | | | |

**TOTAL :  2080 Sets**

| NET Amount | FOB | 9360.00 |
|---|---|---|
| TOTAL VALUE BEFORE TAX IN RS. | | 774072.00 |
| ADD IGST | | 139332.96 |
| TOTAL VALUE AFTER TAX IN RS. | | 913404.96 |
| GST PAYMENT ON REVERSE CHARGE | | N A |

| Total Pkgs. | 520 CTNs |
|---|---|
| Gross Weight (Kgs.) | 1768.000 |
| Net Weight (Kgs.) | 1456.000 |
| Volume (CBM) | 9.606 |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Auth.Sign.

Declaration :  We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

11/07/2024

LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under payment of Intergrated Tax (IGST)**

| | | | |
|---|---|---|---|
| Inv. No. | DS530/24 | Buyer Order # | 95415351 |
| Inv. Date | 12/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 12/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **APPLE VALLEY DC # 0869**<br>**AVDC, INC.**<br>**18880 NAVAJO ROAD**<br>**APPLE VALLEY, CA 92307**<br>**U.S.A.** | **AVDC, INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **MUMBAI** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | **EXCHANGE RATE :  1 US $= Rs. 82.70** |
| **APPLE VALLEY** | **APPLE VALLEY** | |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST<br>Rate | IGST<br>Amount | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-59811L<br>810745731 | HANGING BELLE SET OF 3-LARGE -GOLD<br>**T. Net Wt. (Kgs) :   1011.320** | 95051000 | 1048 Set | 6.000 | 6288.00 | 0.00 | 520017.60 | 18.0% | 93603.17 | 613620.77 |
| DS-63623<br>810745568 | ALUMINIUM DECOR REINDEER HEAD<br>**T. Net Wt. (Kgs) :   412.500** | 76169990 | 275 Pc | 13.000 | 3575.00 | 0.00 | 295652.50 | 12.0% | 35478.30 | 331130.80 |

| Amount Chargeable (In Words) | Total Amount | FOB | 9863.00 | | 815670.10 | | 129081.47 | 944751.57 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Nine Thousand Eight Hundred Sixty Three  Only | | | | | | | | |

**TOTAL : 275 Pcs   1048 Sets**

| NET Amount | FOB | 9863.00 |
|---|---|---|
| TOTAL VALUE BEFORE TAX IN RS. | | 815670.10 |
| ADD IGST | | 129081.47 |
| TOTAL VALUE AFTER TAX IN RS. | | 944751.57 |
| GST PAYMENT ON REVERSE CHARGE | | N A |

| | |
|---|---|
| Total Pkgs. | **537 CTNs** |
| Gross Weight (Kgs.) | **1865.200** |
| Net Weight (Kgs.) | **1423.820** |
| Volume (CBM) | **15.603** |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Auth.Signatory
**Auth.Sign.**

Declaration :  We declare this invoice shows the actual price of goods Described
and all particulars are true and correct.

**12/07/2024**

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE
### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | | |
|---|---|---|---|---|
| Inv. No. | DS552/24 | | Buyer Order # | 95348487 |
| Inv. Date | 16/07/2024 | | | |
| **IEC** | 0588026786 | | Transport Mode | BY SEA |
| PAN | AABFD8214G | | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | | Date of Supply | 16/07/2024 |
| State of origin & code | U.P. & 09 | | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **APPLE VALLEY DC # 0869**<br>**AVDC, INC.**<br>**18880 NAVAJO ROAD**<br>**APPLE VALLEY, CA 92307**<br>**U.S.A.** | **AVDC, INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **MUMBAI** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | **EXCHANGE RATE : 1 US $= Rs. 82.70** |
| **APPLE VALLEY** | **APPLE VALLEY** | |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-52272L<br>810751763 | WOODEN SERVING BOWL BOWL S/4<br>T. Net Wt. (Kgs) : 67.500 | 44219160 | 50 Set | 36.000 | 1800.00 | 0.00 | 148860.00 | 12.0% | 17863.20 | 166723.20 |
| DS-62530<br>810751706 | WOODEN SERVING OVAL TRAYS S/4<br>T. Net Wt. (Kgs) : 155.000 | 44219160 | 50 Set | 25.600 | 1280.00 | 0.00 | 105856.00 | 12.0% | 12702.72 | 118558.72 |
| DS-62534<br>810751705 | WOODEN 2PC SERVING SPOON SET OF 4<br>T. Net Wt. (Kgs) : 40.000 | 44219160 | 50 Set | 14.440 | 722.00 | 0.00 | 59709.40 | 12.0% | 7165.13 | 66874.53 |

| Amount Chargeable (In Words) | Total Amount | FOB | 3802.00 | | 314425.40 | | 37731.05 | 352156.45 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Three Thousand Eight Hundred Two Only | | | | | | | | |

**TOTAL : 150 Sets**

| NET Amount | FOB | 3802.00 | |
|---|---|---|---|
| TOTAL VALUE BEFORE TAX IN RS. | | 314425.40 | |
| ADD IGST | | | 37731.05 |
| TOTAL VALUE AFTER TAX IN RS. | | | 352156.45 |
| GST PAYMENT ON REVERSE CHARGE | | | N A |

| | |
|---|---|
| Total Pkgs. | 150 CTNS |
| Gross Weight (Kgs.) | 560.000 |
| Net Weight (Kgs.) | 262.500 |
| Volume (CBM) | 3.129 |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Auth.Signatory
Auth.Sign.

16/07/2024

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE
### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | |
|---|---|---|---|
| Inv. No. | DS553/24 | Buyer Order # | 95348491 |
| Inv. Date | 16/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 16/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **COLUMBUS DC# 0890**<br>**BIG LOTS STORES INC**<br>**500 PHILLIPI RD**<br>**COLUMBUS, OH 43228-9006**<br>**USA** | **BIG LOTS STORES INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **NHAVA SHEVA** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **NEW YORK** | **COLUMBUS, OH** | **EXCHANGE RATE :**   1 US $= Rs. 82.80 |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate US $ | Total US $ | Add/Less (Rs.) | Taxable FOB (Rs.) | IGST Rate | IGST Amount | Value with Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-52272L<br>810751763 | WOODEN SERVING BOWL BOWL S/4<br>T. Net Wt. (Kgs) :   35.100 | 44199090 | 26 Set | 36.000 | 936.00 | 0.00 | 77500.80 | 12.0% | 9300.10 | 86800.90 |
| DS-62534<br>810751705 | WOODEN 2PC SERVING SPOON SET OF 4<br>T. Net Wt. (Kgs) :   20.800 | 44199090 | 26 Set | 14.440 | 375.44 | 0.00 | 31086.43 | 12.0% | 3730.37 | 34816.80 |
| DS-62530<br>810751706 | WOODEN SERVING OVAL TRAYS S/4<br>T. Net Wt. (Kgs) :   80.600 | 44199090 | 26 Set | 25.600 | 665.60 | 0.00 | 55111.68 | 12.0% | 6613.40 | 61725.08 |

| Amount Chargeable (In Words) | | Total Amount | FOB | 1977.04 | | 163698.91 | | 19643.87 | 183342.78 |
|---|---|---|---|---|---|---|---|---|---|
| US. Dollars One Thousand Nine Hundred Seventy Seven And Four Cents Only | | | | | | | | | |
| | | NET Amount | FOB | 1977.04 | | | | | |
| **TOTAL : 78 Sets** | | TOTAL VALUE BEFORE TAX IN RS. | | | | 163698.91 | | | |
| | | ADD IGST | | | | | | 19643.87 | |
| | | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 183342.78 |
| | | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

| | |
|---|---|
| | Total Pkgs.    78 CTNs |
| | Gross Weight (Kgs.)    291.200 |
| | Net Weight (Kgs.)    136.500 |
| | Volume (CBM)    1.627 |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

**FOR DEWAN & SONS**

Auth. Sign.

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

16/07/2024

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE
### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | |
|---|---|---|---|
| Inv. No. | DS634/24 | Buyer Order # | 95348488 |
| Inv. Date | 23/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 23/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **MONTGOMERY DC - #0870**<br>**CSC DISTRIBUTION LLC**<br>**2855 SELMA HWY**<br>**MONTGOMERY, AL 36108-5035**<br>**USA** | **CSC DISTRIBUTION LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **NHAVA SHEVA** | F.O.B. US DOLLARS<br>PAYMENT MODE;- D/P |
| Vessel/Flight No. | Port of Loading | |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **MONTGOMERY, AL** | **MONTGOMERY, AL** | **EXCHANGE RATE :   1 US $= Rs. 82.80** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-52272L<br>810751763 | WOODEN SERVING BOWL BOWL S/4<br>T. Net Wt. (Kgs) :          63.450 | 44199090 | 47 Set | 36.000 | 1692.00 | 0.00 | 140097.60 | 12.0% | 16811.71 | 156909.31 |
| DS-62534<br>810751705 | WOODEN 2PC SERVING SPOON SET OF 4<br>T. Net Wt. (Kgs) :          37.600 | 44199090 | 47 Set | 14.440 | 678.68 | 0.00 | 56194.70 | 12.0% | 6743.36 | 62938.06 |
| DS-62530<br>810751706 | WOODEN SERVING OVAL TRAYS S/4<br>T. Net Wt. (Kgs) :          145.700 | 44199090 | 47 Set | 25.600 | 1203.20 | 0.00 | 99624.96 | 12.0% | 11955.00 | 111579.96 |

| Amount Chargeable (In Words) | Total Amount | FOB | 3573.88 | | 295917.26 | | 35510.07 | 331427.33 |
|---|---|---|---|---|---|---|---|---|

US. Dollars Three Thousand Five Hundred Seventy Three And Eighty Eight Cents  Only

**TOTAL : 141 Sets**

| | | | |
|---|---|---|---|
| NET Amount | FOB | | 3573.88 |
| TOTAL VALUE BEFORE TAX IN RS. | | 295917.26 | |
| ADD IGST | | | 35510.07 |
| TOTAL VALUE AFTER TAX IN RS. | | | 331427.33 |
| GST PAYMENT ON REVERSE CHARGE | | | N A |

| | |
|---|---|
| Total Pkgs. | 141 CTNs |
| Gross Weight (Kgs.) | 526.400 |
| Net Weight (Kgs.) | 246.750 |
| Volume (CBM) | 2.941 |

**Bank Detail s:**

Bank Name :STATE BANK OF INDIA (COMM. BRANCH)
Address : CIVIL LINES, MORADABAD-244001, INDIA
SWIFT CODE;- SBININBB167,
A/C No. : 10652086629

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Auth.Sign.

23/07/2024

Declaration :  We declare this invoice shows the actual price of goodsDescribed
                    and all particulars are true and correct.

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | |
|---|---|---|---|
| Inv. No. | DS635/24 | Buyer Order # | 95348489 |
| Inv. Date | 23/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 23/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **TREMONT DC# 0874**<br>**CLOSEOUT DISTRIBUTION ,LLC**<br>**50 RAUSCH CREEK RD**<br>**TREMONT PA 17981-1734**<br>**USA** | **CLOSEOUT DISTRIBUTION INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **NHAVA SHEVA** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **TREMONT, PA** | **TREMONT, PA** | **EXCHANGE RATE : 1 US $= Rs. 82.80** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST Rate | IGST Amount | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-52272L<br>810751763 | WOODEN SERVING BOWL BOWL S/4<br>T. Net Wt. (Kgs) : 79.650 | 44199090 | 59 Set | 36.000 | 2124.00 | 0.00 | 175867.20 | 12.0% | 21104.06 | 196971.26 |
| DS-62534<br>810751705 | WOODEN 2PC SERVING SPOON SET OF 4<br>T. Net Wt. (Kgs) : 47.200 | 44199090 | 59 Set | 14.440 | 851.96 | 0.00 | 70542.29 | 12.0% | 8465.07 | 79007.36 |
| DS-62530<br>810751706 | WOODEN SERVING OVAL TRAYS S/4<br>T. Net Wt. (Kgs) : 182.900 | 44199090 | 59 Set | 25.600 | 1510.40 | 0.00 | 125061.12 | 12.0% | 15007.33 | 140068.45 |

| Amount Chargeable (In Words) | Total Amount | FOB | 4486.36 | | 371470.61 | | 44576.46 | 416047.07 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Four Thousand Four Hundred Eighty Six And Thirty Six Cents Only | | | | | | | | |
| | NET Amount | FOB | 4486.36 | | | | | |
| **TOTAL : 177 Sets** | TOTAL VALUE BEFORE TAX IN RS. | | | | 371470.61 | | | |
| | ADD IGST | | | | | | 44576.46 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 416047.07 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

Total Pkgs. **177 CTNs**
Gross Weight (Kgs.) **660.800**
Net Weight (Kgs.) **309.750**
Volume (CBM) **3.692**

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Auth.Sign.

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

23/07/2024

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under payment of Intergrated Tax (IGST)**

| | | | |
|---|---|---|---|
| Inv. No. | DS659/24 | Buyer Order # | 95415352 |
| Inv. Date | 25/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 25/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **MONTGOMERY DC - #0870** <br> **CSC DISTRIBUTION LLC** <br> **2855 SELMA HWY** <br> **MONTGOMERY, AL 36108-5035** <br> **USA** | **CSC DISTRIBUTION LLC** <br> **4900 E. DUBLIN GRANVILLE RD** <br> **COLUMBUS, OH 43081-7651** <br> **U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **NHAVA SHEVA** | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE;- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **MONTGOMERY, AL** | **MONTGOMERY, AL** | **EXCHANGE RATE :** 1 US $= Rs. 82.80 |

| ITEM # BUYER # | DESCRIPTION | HSN | QTY | Rate US $ | Total US $ | Add/Less (Rs.) | Taxable FOB (Rs.) | IGST Rate | IGST Amount | Value with Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-64620 <br> 810745621 | IRON DECOR SET OF 3 CONE TREE S/2-SILVER <br> **T. Net Wt. (Kgs) :** 1391.600 | 95051000 | 280 Set | 30.000 | 8400.00 | 0.00 | 695520.00 | 18.0% | 125193.60 | 820713.60 |

| Amount Chargeable (In Words) | Total Amount | FOB | 8400.00 | | 695520.00 | | 125193.60 | 820713.60 |
|---|---|---|---|---|---|---|---|---|

US. Dollars Eight Thousand Four Hundred Only

**TOTAL : 280 Sets**

| NET Amount | FOB | 8400.00 |
|---|---|---|
| TOTAL VALUE BEFORE TAX IN RS. | | 695520.00 |
| ADD IGST | | 125193.60 |
| TOTAL VALUE AFTER TAX IN RS. | | 820713.60 |
| GST PAYMENT ON REVERSE CHARGE | | N A |

| Total Pkgs. | 280 CTNs |
|---|---|
| Gross Weight (Kgs.) | 1610.000 |
| Net Weight (Kgs.) | 1391.600 |
| Volume (CBM) | 9.408 |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

25/07/2024

Auth.Signy

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE
### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | |
|---|---|---|---|
| Inv. No. | DS660/24 | Buyer Order # | 95415354 |
| Inv. Date | 25/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 25/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **DURANT DC - #0879**<br>**DURANT DC LLC**<br>**2306 ENTERPRISE DR**<br>**DURANT OK 74701-1964**<br>**USA** | **DURANT DC LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | NHAVA SHEVA | F.O.B. US DOLLARS |
| Vessel/Flight No. | Port of Loading | PAYMENT MODE :- D/P |
| **BY SEA** | **NHAVA SHEVA** | |
| Port of Discharge | Final Destination | |
| **DURANT** | **DURANT** | **EXCHANGE RATE :  1 US $= Rs. 82.80** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST Rate | IGST Amount | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-65325<br>810745722 | IRON HANGING BELLS SET OF 6-SMALL<br>T. Net Wt. (Kgs) :    615.060 | 95051000 | 201 Set | 16.500 | 3316.50 | 0.00 | 274606.20 | 18.0% | 49429.12 | 324035.32 |
| DS-63623<br>810745568 | ALUMINIUM DECOR REINDEER HEAD<br>T. Net Wt. (Kgs) :    228.000 | 76169990 | 152 Pc | 13.000 | 1976.00 | 0.00 | 163612.80 | 12.0% | 19633.54 | 183246.34 |
| DS-64619<br>810745343 | IRON DECOR SET OF 3 CONE TREE S/2<br>T. Net Wt. (Kgs) :    849.870 | 95051000 | 171 Set | 30.000 | 5130.00 | 0.00 | 424764.00 | 18.0% | 76457.52 | 501221.52 |
| DS-64618<br>810745344 | IRON DECOR SET OF 3 CONE TREE S/2-RED<br>T. Net Wt. (Kgs) :    849.870 | 95051000 | 171 Set | 30.000 | 5130.00 | 0.00 | 424764.00 | 18.0% | 76457.52 | 501221.52 |
| DS-64620<br>810745621 | IRON DECOR SET OF 3 CONE TREE S/2-SILVER<br>T. Net Wt. (Kgs) :    849.870 | 95051000 | 171 Set | 30.000 | 5130.00 | 0.00 | 424764.00 | 18.0% | 76457.52 | 501221.52 |

| Amount Chargeable (In Words) | Total Amount | FOB | 20682.50 | 1712511.00 | 298435.22 | 2010946.22 |
|---|---|---|---|---|---|---|
| US. Dollars Twenty Thousand Six Hundred Eighty Two And Fifty Cents Only | | | | | | |
| **TOTAL : 152 Pcs   714 Sets** | NET Amount | FOB | 20682.50 | | | |
| | TOTAL VALUE BEFORE TAX IN RS. | | | 1712511.00 | | |
| | ADD IGST | | | | 298435.22 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | 2010946.22 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | N A |

| | |
|---|---|
| **Bank Detail s:** | Total Pkgs.        **866 CTNS** |
| | **Gross Weight (Kgs.)        4158.750** |
| **Bank Name :STATE BANK OF INDIA (COMM. BRANCH)** | **Net Weight (Kgs.)         3392.670** |
| **Address : CIVIL LINES, MORADABAD-244001, INDIA** | **Volume (CBM)             30.079** |
| **SWIFT CODE;- SBININBB167,** | |
| **A/C No. : 10652086629** | Certified that the Particular given above are true and correct |
| | FOR DEWAN & SONS |
| Declaration :  We declare this invoice shows the actual price of goodsDescribed<br> and all particulars are true and correct. | **25/07/2024**        Auth.Sign. |

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under payment of Intergrated Tax (IGST)**

| | | | |
|---|---|---|---|
| Inv. No. | DS690/24 | Buyer Order # | 95268210 |
| Inv. Date | 29/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 29/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **APPLE VALLEY DC # 0869**<br>**AVDC, INC.**<br>**18880 NAVAJO ROAD**<br>**APPLE VALLEY, CA 92307**<br>**U.S.A.**<br><br><br>`NOTIFY PARTY:GEODIS`<br>`5101 S. BROAD STREET`<br>`PHILADELPHIA, PA 19112-1404, U.S.A.`<br>`ATTN: ALENA LAMINA` | **AVDC, INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| | | |
|---|---|---|
| Pre-Carriage by<br>**BY ROAD** | Place of Rcpt. By Pre-carrier<br>**ICD MUNDRA** | Terms of Delivery & Payment<br>F.O.B. US DOLLARS<br>PAYMENT MODE :- D/P |
| Vessel/Flight No.<br>**BY SEA** | Port of Loading<br>**MUNDRA** | |
| Port of Discharge<br>**LOS ANGELES, CA** | Final Destination<br>**LOS ANGELES, CA** | **EXCHANGE RATE :** 1 US $= Rs. 82.80 |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-55775<br>810625001 | IRON TREE COLLAR- BLACK<br>T. Net Wt. (Kgs) : 1356.000 | 95051000 | 904 Pc | 6.750 | 6102.00 | 0.00 | 505245.60 | 18.0% | 90944.21 | 596189.81 |
| DS-64501G<br>810732386 | IRON SNOEFLAKE TREE COLLAR<br>T. Net Wt. (Kgs) : 1386.000 | 95051000 | 924 Pc | 6.750 | 6237.00 | 0.00 | 516423.60 | 18.0% | 92956.25 | 609379.85 |

| Amount Chargeable (In Words) | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Total Amount | FOB | 12339.00 | | 1021669.20 | 183900.46 | 1205569.66 |
| US. Dollars Twelve Thousand Three Hundred Thirty Nine Only | | | | | | | |
| **TOTAL : 1828 Pcs** | NET Amount | FOB | 12339.00 | | | | |
| | TOTAL VALUE BEFORE TAX IN RS. | | | | 1021669.20 | | |
| | ADD IGST | | | | | 183900.46 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | 1205569.66 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | N A |

| | |
|---|---|
| | Total Pkgs. **457 CTNs** |
| | Gross Weight (Kgs.) **3473.200** |
| | Net Weight (Kgs.) **2742.000** |
| | Volume (CBM) **35.043** |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Auth.Sign.

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

29/07/2024

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | | |
|---|---|---|---|---|
| Inv. No. | DS691/24 | Buyer Order # | 95399572 | |
| Inv. Date | 29/07/2024 | | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA | |
| PAN | AABFD8214G | Vehicle Number | N/A | |
| Reverse Charges (Y/N) | N | Date of Supply | 29/07/2024 | |
| State of origin & code | U.P. & 09 | Place of Supply | USA | |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **APPLE VALLEY DC # 0869**<br>**AVDC, INC.**<br>**18880 NAVAJO ROAD**<br>**APPLE VALLEY, CA 92307**<br>**U.S.A.**<br><br><br>NOTIFY PARTY:GEODIS<br>5101 S. BROAD STREET<br>PHILADELPHIA, PA 19112-1404, U.S.A.<br>ATTN: ALENA LAMINA | **AVDC, INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| | | |
|---|---|---|
| | Country of Origin of Goods<br>INDIA | Country of Final Destination<br>USA |
| Pre-Carriage by<br>**BY ROAD** | Place of Rcpt. By Pre-carrier<br>**ICD MUNDRA** | Terms of Delivery & Payment<br>F.O.B. US DOLLARS<br>PAYMENT MODE :- D/P |
| Vessel/Flight No.<br>**BY SEA** | Port of Loading<br>**MUNDRA** | |
| Port of Discharge<br>**LOS ANGELES, CA** | Final Destination<br>**LOS ANGELES, CA** | **EXCHANGE RATE :   1 US $= Rs. 82.80** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-64501WG<br>810745643 | IRON TREE COLLAR-WHITE<br>**T. Net Wt. (Kgs) :        1062.000** | 95051000 | 708 Pc | 7.000 | 4956.00 | 0.00 | 410356.80 | 18.0% | 73864.22 | 484221.02 |

| Amount Chargeable (In Words) | Total Amount | FOB | | 4956.00 | | 410356.80 | | 73864.22 | 484221.02 |
|---|---|---|---|---|---|---|---|---|---|
| US. Dollars Four Thousand Nine Hundred Fifty Six Only | | | | | | | | | |
| **TOTAL : 708 Pcs** | NET Amount | FOB | | 4956.00 | | | | | |
| | TOTAL VALUE BEFORE TAX IN RS. | | | | | 410356.80 | | | |
| | ADD IGST | | | | | | | 73864.22 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | | 484221.02 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | | N A |

| Bank Detail s: | Total Pkgs. | **177 CTNs** |
|---|---|---|
| **Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**<br>**Address : CIVIL LINES, MORADABAD-244001, INDIA**<br>**SWIFT CODE;- SBININBB167,**<br>**A/C No. : 10652086629** | **Gross Weight (Kgs.)**<br>**Net Weight (Kgs.)**<br>**Volume (CBM)** | **1345.200**<br>**1062.000**<br>**13.572** |

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

**FOR DEWAN & SONS**

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

29/07/2024

Auth.Sign. **Auth.Sign.**

DEWAN & SONS
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE
### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | |
|---|---|---|---|
| Inv. No. | DS692/24 | Buyer Order # | 95399832 |
| Inv. Date | 29/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 29/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **APPLE VALLEY DC # 0869**<br>**AVDC, INC.**<br>**18880 NAVAJO ROAD**<br>**APPLE VALLEY, CA 92307**<br>**U.S.A.**<br><br><br>**NOTIFY PARTY:GEODIS**<br>**5101 S. BROAD STREET**<br>**PHILADELPHIA, PA 19112-1404, U.S.A.**<br>**ATTN: ALENA LAMINA** | **AVDC, INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **ICD MUNDRA** | F.O.B. US DOLLARS<br>PAYMENT MODE :- D/P |
| Vessel/Flight No. | Port of Loading | |
| **BY SEA** | **MUNDRA** | |
| Port of Discharge | Final Destination | |
| **LOS ANGELES, CA** | **LOS ANGELES, CA** | **EXCHANGE RATE :   1 US $= Rs. 82.80** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST Rate | IGST Amount | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-65045<br>810745369 | X-MAS STOCKING HOLDER SET OF 4<br>**T. Net Wt. (Kgs) :          605.570** | 95051000 | 211 Set | 15.800 | 3333.80 | 0.00 | 276038.64 | 18.0% | 49686.96 | 325725.60 |

| Amount Chargeable (In Words) | Total Amount | FOB | 3333.80 | | 276038.64 | | 49686.96 | 325725.60 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Three Thousand Three Hundred Thirty Three And Eighty Cents Only | | | | | | | | |

**TOTAL : 211 Sets**

| NET Amount | FOB | 3333.80 |
|---|---|---|
| TOTAL VALUE BEFORE TAX IN RS. | | 276038.64 |
| ADD IGST | | 49686.96 |
| TOTAL VALUE AFTER TAX IN RS. | | 325725.60 |
| GST PAYMENT ON REVERSE CHARGE | | N A |

| | |
|---|---|
| Total Pkgs. | **211 CTNs** |
| Gross Weight (Kgs.) | **817.625** |
| Net Weight (Kgs.) | **605.570** |
| Volume (CBM) | **4.965** |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Auth.Sign.

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

29/07/2024

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE

**Supply Meant for Export Under  payment of Intergrated Tax (IGST)**

| | | | |
|---|---|---|---|
| Inv. No. | DS693/24 | Buyer Order # | 95259315 |
| Inv. Date | 29/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 29/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **APPLE VALLEY DC # 0869**<br>**AVDC, INC.**<br>**18880 NAVAJO ROAD**<br>**APPLE VALLEY, CA 92307**<br>**U.S.A.**<br><br><br>**NOTIFY PARTY:GEODIS**<br>**5101 S. BROAD STREET**<br>**PHILADELPHIA, PA 19112-1404, U.S.A.**<br>**ATTN: ALENA LAMINA** | **AVDC, INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| | | | |
|---|---|---|---|
| | | Country of Origin of Goods<br>**INDIA** | Country of Final Destination<br>**USA** |
| Pre-Carriage by<br>**BY ROAD** | Place of Rcpt. By Pre-carrier<br>**ICD MUNDRA** | Terms of Delivery & Payment<br>F.O.B. US DOLLARS<br>PAYMENT MODE :- D/P | |
| Vessel/Flight No.<br>**BY SEA** | Port of Loading<br>**MUNDRA** | | |
| Port of Discharge<br>**LOS ANGELES, CA** | Final Destination<br>**LOS ANGELES, CA** | **EXCHANGE RATE :   1 US $= Rs. 82.80** | |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-52936<br>810641933 | ALUMINIUM STANDING DEER- LARGE<br>T. Net Wt. (Kgs) :          505.680 | 76169990 | 516Pc | 10.750 | 5547.00 | 0.00 | 459291.60 | 12.0% | 55114.99 | 514406.59 |
| DS-52939<br>810641961 | ALUMINIUM STANDING DEER- SMALL-GOLD<br>T. Net Wt. (Kgs) :          547.200 | 76169990 | 1710Pc | 3.500 | 5985.00 | 0.00 | 495558.00 | 12.0% | 59466.96 | 555024.96 |
| DS-56088<br>810641963 | ALUMINIUM STANDING DEER -MED<br>T. Net Wt. (Kgs) :          997.600 | 76169990 | 1376Pc | 6.500 | 8944.00 | 0.00 | 740563.20 | 12.0% | 88867.58 | 829430.78 |
| DS-59811<br>810641927 | HANGING BELLE SET OF 3<br>T. Net Wt. (Kgs) :          816.000 | 95051000 | 1632Set | 3.400 | 5548.80 | 0.00 | 459440.64 | 18.0% | 82699.32 | 542139.96 |

| Amount Chargeable (In Words) | | Total Amount | FOB | 26024.80 | | 2154853.44 | | 286148.85 | 2441002.29 |
|---|---|---|---|---|---|---|---|---|---|
| US. Dollars Twenty Six Thousand  Twenty Four And Eighty  Cents  Only | | | | | | | | | |
| **TOTAL : 3602 Pcs   1632 Sets** | | NET Amount | FOB | 26024.80 | | | | | |
| | | TOTAL VALUE BEFORE TAX IN RS. | | | | 2154853.44 | | | |
| | | ADD IGST | | | | | | 286148.85 | |
| | | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 2441002.29 |
| | | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

|  | |
|---|---|
| **Bank Detail s:** | Total Pkgs.          **1166 CTNs** |
| | **Gross Weight (Kgs.)          3987.900** |
| **Bank Name :STATE BANK OF INDIA (COMM. BRANCH)** | **Net Weight (Kgs.)          2866.480** |
| **Address : CIVIL LINES, MORADABAD-244001, INDIA** | **Volume (CBM)          28.413** |
| **SWIFT CODE;- SBININBB167,** | |
| **A/C No. : 10652086629** | Certified that the Particular given above are true and correct |
| | FOR DEWAN & SONS |
| Declaration :  We declare this invoice shows the actual price of goodsDescribed<br>and all particulars are true and correct. | **29/07/2024**          Auth.Signatory<br>Auth.Sign. |

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE
### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | |
|---|---|---|---|
| Inv. No. | DS694/24 | Buyer Order # | 95415351 |
| Inv. Date | 29/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 29/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **APPLE VALLEY DC # 0869**<br>**AVDC, INC.**<br>**18880 NAVAJO ROAD**<br>**APPLE VALLEY, CA 92307**<br>**U.S.A.**<br><br><br>**NOTIFY PARTY:GEODIS**<br>**5101 S. BROAD STREET**<br>**PHILADELPHIA, PA 19112-1404, U.S.A.**<br>**ATTN: ALENA LAMINA** | **AVDC, INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **ICD MUNDRA** | F.O.B. US DOLLARS<br>PAYMENT MODE :- D/P |
| Vessel/Flight No. | Port of Loading | |
| **BY SEA** | **MUNDRA** | |
| Port of Discharge | Final Destination | |
| **LONG BEACH** | **LONG BEACH** | **EXCHANGE RATE : 1 US $= Rs. 82.80** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST Rate | IGST Amount | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| DS-59811S<br>810745653 | HANGING BELLE SET OF 3-SMALL<br>T. Net Wt. (Kgs) : 323.640 | 95051000 | 744 Set | 3.000 | 2232.00 | 0.00 | 184809.60 | 18.0% | 33265.73 | 218075.33 |
| DS-64618<br>810745344 | IRON DECOR SET OF 3 CONE TREE S/2-RED<br>T. Net Wt. (Kgs) : 904.540 | 95051000 | 182 Set | 30.000 | 5460.00 | 0.00 | 452088.00 | 18.0% | 81375.84 | 533463.84 |
| DS-64619<br>810745343 | IRON DECOR SET OF 3 CONE TREE S/2<br>T. Net Wt. (Kgs) : 904.540 | 95051000 | 182 Set | 30.000 | 5460.00 | 0.00 | 452088.00 | 18.0% | 81375.84 | 533463.84 |
| DS-64620<br>810745621 | IRON DECOR SET OF 3 CONE TREE S/2-SILVER<br>T. Net Wt. (Kgs) : 904.540 | 95051000 | 182 Set | 30.000 | 5460.00 | 0.00 | 452088.00 | 18.0% | 81375.84 | 533463.84 |
| DS-65325<br>810745722 | IRON HANGING BELLS SET OF 6-SMALL<br>T. Net Wt. (Kgs) : 627.300 | 95051000 | 205 Set | 16.500 | 3382.50 | 0.00 | 280071.00 | 18.0% | 50412.78 | 330483.78 |

| Amount Chargeable (In Words) | Total Amount | FOB | 21994.50 | | 1821144.60 | 327806.03 | 2148950.63 |
|---|---|---|---|---|---|---|---|

US. Dollars Twenty One Thousand Nine Hundred Ninety Four And Fifty Cents Only

**TOTAL : 1495 Sets**

| NET Amount | FOB | 21994.50 |
|---|---|---|

| TOTAL VALUE BEFORE TAX IN RS. | | 1821144.60 | |
|---|---|---|---|
| ADD IGST | | | 327806.03 |
| TOTAL VALUE AFTER TAX IN RS. | | | 2148950.63 |
| GST PAYMENT ON REVERSE CHARGE | | | N A |

| Total Pkgs. | 937 CTNs |
|---|---|
| Gross Weight (Kgs.) | 4409.700 |
| Net Weight (Kgs.) | 3664.560 |
| Volume (CBM) | 28.485 |

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

**FOR DEWAN & SONS**

Auth.Signatory

**Auth.Sign.**

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

**29/07/2024**

**DEWAN & SONS**
LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE
### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | |
|---|---|---|---|
| Inv. No. | DS713/24 | Buyer Order # | 95415351 |
| Inv. Date | 30/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 30/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **APPLE VALLEY DC # 0869**<br>**AVDC, INC.**<br>**18880 NAVAJO ROAD**<br>**APPLE VALLEY, CA 92307**<br>**U.S.A.**<br><br><br>**NOTIFY PARTY:GEODIS**<br>**5101 S. BROAD STREET**<br>**PHILADELPHIA, PA 19112-1404, U.S.A.**<br>**ATTN: ALENA LAMINA** | **AVDC, INC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| Country of Origin of Goods | Country of Final Destination |
|---|---|
| INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **ICD MUNDRA** | F.O.B. US DOLLARS<br>PAYMENT MODE :- D/P |
| Vessel/Flight No. | Port of Loading | |
| **BY SEA** | **MUNDRA** | |
| Port of Discharge | Final Destination | |
| **LONG BEACH** | **LONG BEACH** | **EXCHANGE RATE :** 1 US $= Rs. 82.85 |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US $ | Total<br>US $ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-65322<br>810745628 | IRON HANGING BELLS SET OF 3<br>T. Net Wt. (Kgs) : 1587.600 | 95051000 | 392 Set | 24.000 | 9408.00 | 0.00 | 779452.80 | 18.0% | 140301.50 | 919754.30 |
| DS-65323<br>810745370 | IRON HANGING BELLS SET OF 6-LARGE<br>T. Net Wt. (Kgs) : 1054.500 | 95051000 | 185 Set | 34.500 | 6382.50 | 0.00 | 528790.13 | 18.0% | 95182.22 | 623972.35 |
| DS-65324<br>810745660 | IRON HANGING BELLS SET OF 6-MED<br>T. Net Wt. (Kgs) : 799.500 | 95051000 | 205 Set | 25.500 | 5227.50 | 0.00 | 433098.38 | 18.0% | 77957.71 | 511056.09 |

| Amount Chargeable (In Words) | Total Amount | FOB | 21018.00 | | 1741341.31 | | 313441.43 | 2054782.74 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Twenty One Thousand Eighteen Only | | | | | | | | |
| | NET Amount | FOB | 21018.00 | | | | | |
| **TOTAL : 782 Sets** | TOTAL VALUE BEFORE TAX IN RS. | | | | 1741341.31 | | | |
| | ADD IGST | | | | | | 313441.43 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 2054782.74 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

**Total Pkgs.** 782 CTNs
**Gross Weight (Kgs.)** 4667.000
**Net Weight (Kgs.)** 3441.600
**Volume (CBM)** 67.374

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

FOR DEWAN & SONS

Declaration : We declare this invoice shows the actual price of goodsDescribed
and all particulars are true and correct.

30/07/2024

Auth.Sign.

LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA
TEL : 0091-591-2478400
EMAIL: surender@dewansons.com

## TAX INVOICE
### Supply Meant for Export Under payment of Intergrated Tax (IGST)

| | | | |
|---|---|---|---|
| Inv. No. | DS714/24 | Buyer Order # | 95415354 |
| Inv. Date | 30/07/2024 | | |
| **IEC** | 0588026786 | Transport Mode | BY SEA |
| PAN | AABFD8214G | Vehicle Number | N/A |
| Reverse Charges (Y/N) | N | Date of Supply | 30/07/2024 |
| State of origin & code | U.P. & 09 | Place of Supply | USA |

| Consignee | Buyer(if other than Consignee) |
|---|---|
| **DURANT DC - #0879**<br>**DURANT DC LLC**<br>**2306 ENTERPRISE DR**<br>**DURANT OK 74701-1964**<br>**USA**<br><br><br>**NOTIFY PARTY:GEODIS**<br>**5101 S. BROAD STREET**<br>**PHILADELPHIA, PA 19112-1404, U.S.A.**<br>**ATTN: ALENA LAMINA** | **DURANT DC LLC**<br>**4900 E. DUBLIN GRANVILLE RD**<br>**COLUMBUS, OH 43081-7651**<br>**U.S.A.** |

| | Country of Origin of Goods | Country of Final Destination |
|---|---|---|
| | INDIA | USA |

| Pre-Carriage by | Place of Rcpt. By Pre-carrier | Terms of Delivery & Payment |
|---|---|---|
| **BY ROAD** | **ICD MUNDRA** | F.O.B. US DOLLARS<br>PAYMENT MODE :- D/P |
| Vessel/Flight No. | Port of Loading | |
| **BY SEA** | **MUNDRA** | |
| Port of Discharge | Final Destination | |
| **HOUSTON** | **DALLAS** | **EXCHANGE RATE :  1 US \$= Rs. 82.85** |

| ITEM #<br>BUYER # | DESCRIPTION | HSN | QTY | Rate<br>US \$ | Total<br>US \$ | Add/Less<br>(Rs.) | Taxable FOB<br>(Rs.) | IGST | | Value with<br>Tax (Rs.) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Rate | Amount | |
| DS-65322<br>810745628 | IRON HANGING BELLS SET OF 3<br>**T. Net Wt. (Kgs) :      1510.650** | 95051000 | 373 Set | 24.000 | 8952.00 | 0.00 | 741673.20 | 18.0% | 133501.18 | 875174.38 |
| DS-65323<br>810745370 | IRON HANGING BELLS SET OF 6-LARGE<br>**T. Net Wt. (Kgs) :      1065.900** | 95051000 | 187 Set | 34.500 | 6451.50 | 0.00 | 534506.78 | 18.0% | 96211.22 | 630718.00 |
| DS-65324<br>810745660 | IRON HANGING BELLS SET OF 6-MED<br>**T. Net Wt. (Kgs) :      783.900** | 95051000 | 201 Set | 25.500 | 5125.50 | 0.00 | 424647.68 | 18.0% | 76436.58 | 501084.26 |

| Amount Chargeable (In Words) | Total Amount | FOB | 20529.00 | | 1700827.66 | | 306148.98 | 2006976.64 |
|---|---|---|---|---|---|---|---|---|
| US. Dollars Twenty Thousand Five Hundred Twenty Nine Only | | | | | | | | |
| | NET Amount | FOB | 20529.00 | | | | | |
| **TOTAL : 761 Sets** | | | | | | | | |
| | TOTAL VALUE BEFORE TAX IN RS. | | | | 1700827.66 | | | |
| | ADD IGST | | | | | | 306148.98 | |
| | TOTAL VALUE AFTER TAX IN RS. | | | | | | | 2006976.64 |
| | GST PAYMENT ON REVERSE CHARGE | | | | | | | N A |

**Total Pkgs.**      761 CTNs
**Gross Weight (Kgs.)**      4556.700
**Net Weight (Kgs.)**      3360.450
**Volume (CBM)**      65.651

**Bank Detail s:**

**Bank Name :STATE BANK OF INDIA (COMM. BRANCH)**
**Address : CIVIL LINES, MORADABAD-244001, INDIA**
**SWIFT CODE;- SBININBB167,**
**A/C No. : 10652086629**

Certified that the Particular given above are true and correct

**FOR DEWAN & SONS**

Declaration :  We declare this invoice shows the actual price of goodsDescribed
      and all particulars are true and correct.

**30/07/2024**

Auth.Sign.

# Yusen Logistics

Yusen Logistics - Yusen Logistics                    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.      **CNS-NSA-2400396**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | **DS72-24** |
| Buyer/Consignee : | DURANT DC, LLC<br>2306 ENTERPRISE DR, DURANT, OK 74701, USA | Dated: **April 27, 2024** |
| Shipment From : | NHAVA SHEVA           To : DURANT, OK | Date of Receipt of Cargo<br>**May 04, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95152797<br>SKU NO: 810720868,<br>810722910, 810723127<br>CARTON 1 - 352<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>5101 S. BROAD STREET<br>PHILADELPHIA, PA 19112-1404, U.S.A.<br>ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>1300 SOUTH MINT STREET SUITE 200<br>CHARLOTTE NC 28203 USA<br>TEL: 704-593-6329<br>EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>OTHER FURNISING ARTICLES OF COTTON PILLOW<br>PO NO: 95152797<br>SKU NO: 810720868, 810722910, 810723127<br>QTY: 572<br>GR.WT: 1049.300 KGS<br>SB.NO: 9507526 DT. 30/04/2024<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>CMAU4610942 (PART)      SEAL# R6328263      40H  DRY<br><br>SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 352 CARTONS | | 15.491 CBM | 1,049.30 KGS |

==============================================================
TOTAL : THREE HUNDRED FIFTY-TWO (352) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "BRUSSELS" VOY NO. 0VBHBW1MA    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT May 30, 2024. CARGO RECEIVED ON May 4, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA                    **May 10, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>For Yusen Logistics (India) Private Limited<br><br>Authorised Signatory                    As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V1 |

ORIGINAL

# Yusen Logistics

Yusen Logistics - Yusen Logistics        Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.      **CNS-NSA-2400396**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS** | **DS72-24** |
| | **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | Dated : **April 27, 2024** |
| Buyer/Consignee : | **DURANT DC, LLC** | |
| | **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Date of Receipt of Cargo |
| Shipment From : | **NHAVA SHEVA**    To : **DURANT, OK** | **May 04, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95152797                   5101 S. BROAD STREET
SKU NO: 810720868,                PHILADELPHIA, PA 19112-1404, U.S.A.
810722910, 810723127              ATTN: ALENA LAMINA
CARTON 1 - 352          ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN INDIA                     1300 SOUTH MINT STREET SUITE 200
                                  CHARLOTTE NC 28203 USA
                                  TEL: 704-593-6329
                                  EMAIL: DATAQUALITY@EDRAYCPL.COM

                         CFS-CY

                         OTHER FURNISING ARTICLES OF COTTON PILLOW
                         PO NO: 95152797
                         SKU NO: 810720868, 810722910, 810723127
                         QTY: 572
                         GR.WT: 1049.300 KGS
                         SB.NO: 9507526 DT. 30/04/2024

                         *MORADABAD, UTTAR PRADESH 244001, INDIA

                         CMAU4610942 (PART)     SEAL# R6328263        40H  DRY

                         SHIP TO CODE & LOCATION : 00879-DURANT, OK
                         SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                         MATERIAL


                         352 CARTONS                15.491 CBM    1,049.30 KGS
                         ===================================================
                         TOTAL : THREE HUNDRED FIFTY-TWO (352) CARTONS ONLY
                         "FREIGHT COLLECT"
SHIPMENT PER S.S. "BRUSSELS" VOY NO. 0VBHBW1MA    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT May 30, 2024. CARGO RECEIVED ON May 4, 2024.
```

*Non-Negotiable Copy* (watermark)

| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**          **May 10, 2024** |
|---|---|
| **Non-Negotiable** | (Place and date of issue.) |
| Copy | **YUSEN LOGISTICS** |
| | As Agent |
| | V1 |

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services  provider for its customer who is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers'  Instructions received  in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering  items to Company for Services and any person at whose request  or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery,  local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the  remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

   a)    By accepting these Conditions, Shipper  agrees to be bound by all stipulations, exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

   b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

   c)    The description and  particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

   d)    The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other  illegal material or substance or stowaways;

   e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

   f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

   g)    Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS.  Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

   h)    Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company,  have been properly and sufficiently packed and/or prepared and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

   i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

       i)    The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and

       ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

   j)    Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

   k)    Fitness of Cargoes: The cargoes are fit  and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

   l)    Delivery of Cargoes:  The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their  arrival at destination  and shall  pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods.  Shipper's notice  will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and  method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods.  If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE OFFERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

   Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's  interests or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered  into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability  for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

   a)    A force majeure event;

   b)    Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid by the exercise of reasonable diligence;

   c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

   d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation -- Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

   a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

   b)    Two (2) USDs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability -- Except as set forth in in this  Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of  Liability -- The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of  contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2    Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit.  For the foregoing purposes, Shipper  contracts for itself as well as agents for all the aforesaid persons.

7.4    Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion  of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously given to and accepted by Company.  A mere statement or declaration of the value or nature of cargoes for  insurance or export  or customs or  other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable  for any duties, taxes,  levies, deposits, or outlays of any kind levied  by the authorities at any port or place for  or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection  therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.  Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of whatsoever  nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its lien (including but not limited to storage charges) and in recovering or  attempting to recover  any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.  Company shall be entitled to  claim the difference against Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall survive delivery  or deemed delivery of cargoes.

11.3    Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently addressed  or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or  tender of the net proceeds of any sale after deduction of charges and expenses shall  be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any  claim, counterclaim, or set  -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice  is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13.    NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing  and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

   a)    In the case of damage to goods, the date of delivery of cargoes;

   b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

   c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14.    TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice  thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived  at the destination (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or otherwise, or to collect on any specified terms by time  drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions  and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

Yusen Logistics - Yusen Logistics    **Yusen Logistics**    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400553**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | **DS194-24** |
| Buyer/Consignee : | DURANT DC, LLC<br>2306 ENTERPRISE DR, DURANT, OK 74701, USA | Dated:  **May 20, 2024** |
| Shipment From : | NHAVA SHEVA         To : DURANT, OK | Date of Receipt of Cargo<br>**May 27, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES                 NOTIFY PARTY: GEODIS
PO NO: 95195191                     5101 S. BROAD STREET
SKU NO: 810728110, 810728155,      PHILADELPHIA, PA 19112-1404, U.S.A.
810728161, 810728185               ATTN: ALENA LAMINA
CARTON 1 - 420               ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN INDIA                      1300 SOUTH MINT STREET SUITE 200
                                   CHARLOTTE NC 28203 USA
                                   TEL: 704-593-6329
                                   EMAIL: DATAQUALITY@EDRAYCPL.COM

                             CFS-CY

                             TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANOGO AND
                             ACACIA WOOD
                             COASTER MADE OF MARBLE, MANGO WOOD, ACACIA WOOD AND BRASS
                             PO NO: 95195191
                             SKU NO: 810728110, 810728155, 810728161, 810728185
                             QTY: 1050
                             GR.WT: 1739.500 KGS
                             SB.NO: 1059850 DT. 22/05/2024

                             *MORADABAD, UTTAR PRADESH 244001, INDIA

                             BMOU6617943 (PART)      SEAL# R6338031          40H  DRY


                             SHIP TO CODE & LOCATION : 00879-DURANT, OK
                             SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                             MATERIAL

                             420 CARTONS                 5.837 CBM      1,739.50 KGS
                             =================================================
                             TOTAL : FOUR HUNDRED TWENTY (420) CARTONS ONLY
           "FREIGHT COLLECT"
SHIPMENT PER S.S. "CMA CGM MOLIERE" VOY NO. 0VBHHW1MA    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT June 12, 2024. CARGO RECEIVED ON May 27, 2024.
```

ORIGINAL

| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**          **June 8, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>For Yusen Logistics (India) Private Limited<br><br><br>Authorised Signatory<br>As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)          V1 |

Yusen Logistics - Yusen Logistics    Yusen Logistics - Yusen Logistics

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400553**

| | | |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** | Maker/Supplier's INVOICE No.<br>**DS194-24** |
| Buyer/Consignee : | **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **May 20, 2024** |
| Shipment From : | **NHAVA SHEVA**          To : **DURANT, OK** | Date of Receipt of Cargo<br>**May 27, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95195191                    5101 S. BROAD STREET
SKU NO: 810728110, 810728155,     PHILADELPHIA, PA 19112-1404, U.S.A.
810728161, 810728185              ATTN: ALENA LAMINA
CARTON 1 - 420           ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN INDIA                     1300 SOUTH MINT STREET SUITE 200
                                  CHARLOTTE NC 28203 USA
                                  TEL: 704-593-6329
                                  EMAIL: DATAQUALITY@EDRAYCPL.COM

                         CFS-CY

                         TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANOGO AND
                         ACACIA WOOD
                         COASTER MADE OF MARBLE, MANGO WOOD, ACACIA WOOD AND BRASS
                         PO NO: 95195191
                         SKU NO: 810728110, 810728155, 810728161, 810728185
                         QTY: 1050
                         GR.WT: 1739.500 KGS
                         SB.NO: 1059850 DT. 22/05/2024

                         *MORADABAD, UTTAR PRADESH 244001, INDIA

                         BMOU6617943 (PART)       SEAL# R6338031           40H  DRY

                         SHIP TO CODE & LOCATION : 00879-DURANT, OK
                         SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                         MATERIAL

                         420 CARTONS                   5.837 CBM      1,739.50 KGS
                         =================================================================
                         TOTAL : FOUR HUNDRED TWENTY (420) CARTONS ONLY

           "FREIGHT COLLECT"
SHIPMENT PER S.S. "CMA CGM MOLIERE" VOY NO. 0VBHHW1MA   DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT June 12, 2024. CARGO RECEIVED ON May 27, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | |
|---|---|
| **Non-Negotiable**<br><br>Copy | **NHAVA SHEVA**          **June 8, 2024**<br><br>(Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br><br>As Agent<br>V1 |

Non-Negotiable Copy

**1.    DEFINITIONS**

1.1.   "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate  entities issuing these Conditions in its  capacity as an origin services  provider for its customer who  is the ultimate consignee of this shipment.

1.2.   "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein,  and includes terms and conditions on the  front and any Shippers'  Instructions received  in writing at the time of receipt of the cargoes.

1.3.   "Shipper" means the vendor tendering  items to Company for Services and  any person at whose request  or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.   "Shippers' Instructions" means any of Shipper's specific written shipping instructions or  requirements delivered to Company at the time  of receipt of the cargoes.

1.5.   "Laws" means any laws, statutes,  regulations, or conventions which apply  compulsorily  to any element of the Services or any subject matter incidental to  these Conditions.

1.6.   "Services" means the origin services  to be provided by Company and  includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection,  delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other services  intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.   "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which  any business concluded under these Conditions relate s and any other person who is or may become interested in them depending  upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the   remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever therefo  re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)   By accepting these Conditions, Shipper  agrees to be bound by all stipulations,  exceptions, terms, and conditions on the front  and back hereof, whether written, typed, or printed, as fully as if signed by Shipper;

b)   By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the  Owner or person owning or entitled to the possession of the cargoes or  of the person who is or may become interested in the cargoes;

c)   The description and  particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)   The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other  illegal material or substance or stowaways;

e)   The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling,  and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)   Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines  of customs, port, import, export, and other authorities;

g)   Shipper shall provide the total gross  mass established using calibrated and certified equipment  of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance  with SOLAS. Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company,  have been properly and sufficiently packed and/or  prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

i)   Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

   i)   The transport unit is in good condition, is suitable  to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

   ii)   The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)   Description of Cargoes: All descriptions, values, and other   particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)   Fitness of Cargoes: The cargoes are fit  and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)   Delivery of Cargoes: The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their  arrival at destination  and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly  accepted in writing to  deal  with the Dangerous Goods.  Shipper's notice  will include all information necessary for Company to  perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable  Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and  handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods.  If any Dangerous Goods are tendered in  breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests  or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or  arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, conduct, or  arrangement entered  into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for  Loss or Damage to Cargoes -- Without prejudice to  any other right or remedies Company may have, Company shall be relieved of liability  for any loss or damage to cargoes if,  and to the extent  that, such loss or damage is caused by:

a)   A force majeure event;

b)   Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid by the exercise of reasonable diligence;

c)   Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)   Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for  loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)   The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)   Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability -- Except as set forth in in this  Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection  with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company  arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action  be founded in contract, bailment, tort, breach of express or  implied warranty, or  otherwise, even if the loss or  damage arose as a result of  negligence, willful misconduct, or fundamental breach of  contract.

6.8    By special arrangement which must be agreed  in writing, Company may accept liability in excess of the limit set forth herein  if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.   Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties,  taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any  authority) arising out of Company acting in accordance with Ship per's Instructions,  or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information  or instructions, or arising from the negligence of Shipper or Owner.

7.2.   Advice and information, in whatever form as may be  given  by Company, are provided  by Company for Shipper only and Shipper  shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.   Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided  by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub –contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper  contracts for itself as well as agents for all the aforesaid persons.

7.4.   Shipper shall defend,  indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or  preferred in excess of the liability of  Company under the terms of these Conditions,  and without prejudice to the generality  of the foregoing this indemnity shall include (without limitation)  all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub  -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion  of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously  given to and accepted by Company.  A mere statement or declaration of the value or nature of cargoes for  insurance or export  or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable  for any duties, taxes, levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or  in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.  Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of whatsoever  nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its lien (including  but not limited to storage charges) and in recovering or attempting to recover  any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at  the costs of Shipper cargoes and/or any such other property by private  treaty or by public auction or other  means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.  Company shall be entitled to  claim the difference against Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall survive  delivery or deemed delivery of cargoes.

11.3    Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently  addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any  notice to Shipper or the Owner and payment or tender  of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to  delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately  when due without deduction or deferment on account of any claim, counterclaim, or set  -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's  invoice is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company,  Company shall be entitled to interest calculated on a  monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13.    NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing  and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)   In the case of damage to goods, the date of delivery of cargoes;

b)   In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

c)   In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14.    TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice  thereof received by Company within three 3 months from the date cargoes  arrived at the destination or the date cargoes should have arrived  at the destination (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company shall have no obligation  to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and  communicate obligations  for collection of bank drafts or otherwise, or  to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions  and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

Yusen Logistics - Yusen Logistics

# Yusen Logistics

Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-NSA-2400599**

| | |
|---|---|
| Maker/Supplier : **DEWAN & SONS** **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | Maker/Supplier's INVOICE No. **DS276-24** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **June 03, 2024** |
| Shipment From : **NHAVA SHEVA**          To : **MONTGOMERY, AL** | Date of Receipt of Cargo **June 08, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95347349<br>SKU NO: 810745648, 810745676<br>CARTON 1 - 52<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>          5101 S. BROAD STREET<br>          PHILADELPHIA, PA 19112-1404, U.S.A.<br>          ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>          1300 SOUTH MINT STREET SUITE 200<br>          CHARLOTTE NC 28203 USA<br>          TEL: 704-593-6329<br>          EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>LANTERN MADE OF GLASS, ST STEEL WITH MANGO WOOD<br>PO NO: 95347349<br>SKU NO: 810745648, 810745676<br>QTY: 208<br>GR.WT: 390.000 KGS<br>SB.NO: 1406633 DT. 04/06/2024<br><br>\*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>BEAU4922244 (PART)     SEAL# HLG9031850     40H DRY<br><br>SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 52 CARTONS | | 3.807 CBM | 390.00 KGS |
| | ================================================= | | | |
| | TOTAL : FIFTY-TWO (52) CARTONS ONLY | | | |

          "FREIGHT COLLECT"
SHIPMENT PER S.S. "NAVIOS CONSTELLATION" VOY NO. 4125   DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT June 24, 2024. CARGO RECEIVED ON June 8, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**                    **June 20, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>For Yusen Logistics (India) Private Limited<br><br>Authorised Signatory<br>                              As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)          V1 |

ORIGINAL

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.          CNS-NSA-2400599

| | | |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS** **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** | Maker/Supplier's INVOICE No. **DS276-24** |
| Buyer/Consignee : | **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **June 03, 2024** |
| Shipment From : | **NHAVA SHEVA**          To : **MONTGOMERY, AL** | Date of Receipt of Cargo **June 08, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95347349                       5101 S. BROAD STREET
SKU NO: 810745648, 810745676          PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 52                         ATTN: ALENA LAMINA
MADE IN INDIA                ALSO NOTIFY: EDRAY 2020 LLC.
                                      1300 SOUTH MINT STREET SUITE 200
                                      CHARLOTTE NC 28203 USA
                                      TEL: 704-593-6329
                                      EMAIL: DATAQUALITY@EDRAYCPL.COM

                             CFS-CY

                             LANTERN MADE OF GLASS, ST STEEL WITH MANGO WOOD
                             PO NO: 95347349
                             SKU NO: 810745648, 810745676
                             QTY: 208
                             GR.WT: 390.000 KGS
                             SB.NO: 1406633 DT. 04/06/2024

                             *MORADABAD, UTTAR PRADESH 244001, INDIA

                             BEAU4922244 (PART)      SEAL# HLG9031850      40H  DRY

                             SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                             SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                             MATERIAL


                             52 CARTONS                      3.807 CBM      390.00 KGS
                             =======================================================
                             TOTAL : FIFTY-TWO (52) CARTONS ONLY

                             "FREIGHT COLLECT"
SHIPMENT PER S.S. "NAVIOS CONSTELLATION" VOY NO. 4125   DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT June 24, 2024. CARGO RECEIVED ON June 8, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA          June 20, 2024 |
|---|---|
| **Non-Negotiable** Copy | (Place and date of issue.) **YUSEN LOGISTICS** As Agent V1 |

Non-Negotiable

Copy

Forwarders' Cargo Receipt
Terms and Conditions

**1.    DEFINITIONS**
1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate  entities issuing these Conditions in its  capacity as an origin services  provider for its customer who is the ultimate consignee of this shipment.
1.2.    "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers'  Instructions received  in writing at the time of receipt.
1.3.    "Shipper" means the vendor tendering  items to Company for Services and any person at whose request  or on whose behalf Shipper undertakes any tender of  those cargoes to Company.
1.4.    "Shippers' Instructions" means any of Shipper's specific  written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.
1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.
1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery,  local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other  services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.
1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or   equipment other than those provided by Customer or carriers) to which any business concluded under these  Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**
2.1    In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency,  shall  be null and void in relation to such element of the Services by Company, but the   remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.
2.2    Nothing in these Conditions shall operate  to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.
2.3    Any and all advice information or Services provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**
3.1    Shipper warrants as follows:
    a)    By accepting these Conditions, Shipper  agrees to be bound by all stipulations, exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;
    b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the  Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;
    c)    The description and  particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;
    d)    The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other illegal  material or substance or stowaways;
    e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;
    f)    Shipper complies with all Laws, requirements,  directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;
    g)    Shipper shall provide the total gross  mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS.  Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such  gross mass information and will use this to comply with its obligations in accordance with SOLAS.
    h)    Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company,  have been properly and sufficiently packed and/or  prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.
    i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit  load device (each hereafter referred to as a "transport unit") then:
        i)    The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and
        ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.
    j)    Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.
    k)    Fitness of Cargoes: The cargoes are fit  and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.
    l)    Delivery of Cargoes: The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their  arrival at destination  and shall  pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**
4.1    Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods. Shipper's notice  will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and  method of storage and handling of the Dangerous Goods.
4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.
4.3    Additional charges may apply to the storage and handling of Dangerous Goods.  If any Dangerous Goods are tendered in  breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**
5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.
5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests  or is expedient.
5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.
5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.
5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.
5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.
5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered  into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**
6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.
6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.
6.3    Liability for Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability  for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

    a)    A force majeure event;
    b)    Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid, by the exercise of reasonable diligence;
    c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or
    d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.
6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for  loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:
    a)    The landed cost at the destination of  only those cargoes damaged or lost (excluding insurance); or
    b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.
6.5    No insurance will be arranged by Company for the benefit of Shipper.
6.6    Entire Liability -- Except as set forth in in this  Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with  the storage and handling of cargoes and/or this FCR.
6.7    Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions  of liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in  contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of  contract.
6.8    By special arrangement which must be agreed to  in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**
7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied  by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.
7.2.    Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which  is not related to specific instructions accepted  by Shipper is provided gratuitously and without liability.
7.3.    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made  Shipper shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.
7.4.    Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever  made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub  -contractors.

**8.    WAREHOUSING**
8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion  of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**
9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in  writing were previously given to and accepted by Company.  A mere statement or  declaration of the value or nature of cargoes for  insurance or export  or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**
10.1    Shipper shall be liable  for any duties, taxes, levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in  connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**
11.1    Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.  Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred  enforcing  and preserving its lien (including  but not limited to storage charges) and in recovering or  attempting to recover  any sums due from Shipper  or the ultimate consignee (whether  in respect of the storage and handling herein or otherwise).
11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper  cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in  or towards the payment of any amount due to Company.  Company shall be entitled to  claim the difference against  Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall survive  delivery or deemed delivery of cargoes.
11.3    Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently  addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any  notice to Shipper or the Owner and payment or tender of the net proceeds of  any sale after deduction of  charges and expenses shall be equivalent to  delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.
11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**
12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any  claim, counterclaim, or set  -off.
12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice  is rendered.  Forthwith upon such request being  made, Shipper shall make such advance to Company.
12.3    On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly  basis from the date such accounts are overdue  until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13.    NOTICE OF CLAIM**
13.1    Any claim against Company must be in writing  and delivered to Company at its  registered office  or its principal place of business in  Hong Kong within 3 days of:
    a)    In the case of damage to goods, the date of delivery of cargoes;
    b)    In the case of loss or non-delivery or mis-delivery  of cargoes, the date that cargoes should have been delivered; and
    c)    In any other case, the date of the event giving rise to the claim.
13.2    No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14.    TIME BAR**
14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum  and within notice  thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived  at the destination (whichever date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**
15.1    Shipper agrees that: (a) Company shall have  no obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of  bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**
16.1    These Conditions  and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics     Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-NSA-2400601**

| | |
|---|---|
| Maker/Supplier : **DEWAN & SONS** **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | Maker/Supplier's INVOICE No. **DS306-24** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **June 05, 2024** |
| Shipment From : **NHAVA SHEVA**     To : **MONTGOMERY, AL** | Date of Receipt of Cargo **June 14, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95193419<br>SKU NO: 810725758, 810727274<br>CARTON 1 - 275<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>    1300 SOUTH MINT STREET SUITE 200<br>    CHARLOTTE NC 28203 USA<br>    TEL: 704-593-6329<br>    EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>OTHER ARTICLE OF ALUMINIUM, OTHER ARTICLE OF MANGO WOOD WITH ALUMINIUM<br>PO NO: 95193419<br>SKU NO: 810725758, 810727274<br>QTY: 275<br>GR.WT: 654.500 KGS<br>SB.NO: 1505035 DT. 07/06/2024<br><br>\*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>BEAU4922244 (PART)     SEAL# HLG9031850     40H DRY<br><br>SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 275 CARTONS | | 4.639 CBM | 654.50 KGS |
| | =================================================== |
| | TOTAL : TWO HUNDRED SEVENTY-FIVE (275) CARTONS ONLY |

"FREIGHT COLLECT"

SHIPMENT PER S.S. "NAVIOS CONSTELLATION" VOY NO. 4125   DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT June 24, 2024. CARGO RECEIVED ON June 14, 2024.

| | |
|---|---|
| **THIS IS NOT A DOCUMENT OF TITLE** | **NHAVA SHEVA**          **June 20, 2024** |
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>**For Yusen Logistics (India) Private Limited**<br><br><br>**Authorised Signatory**<br>                                        As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V4 |

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.        CNS-NSA-2400601

| | | |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS** | Maker/Supplier's INVOICE No. |
| | **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** | **DS306-24** |
| Buyer/Consignee : | **CSC DISTRIBUTION, LLC** | Dated: **June 05, 2024** |
| | **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Date of Receipt of Cargo |
| Shipment From : | **NHAVA SHEVA**          To : **MONTGOMERY, AL** | **June 14, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95193419                  5101 S. BROAD STREET
SKU NO: 810725758, 810727274     PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 275                   ATTN: ALENA LAMINA
MADE IN INDIA                ALSO NOTIFY: EDRAY 2020 LLC.
                                 1300 SOUTH MINT STREET SUITE 200
                                 CHARLOTTE NC 28203 USA
                                 TEL: 704-593-6329
                                 EMAIL: DATAQUALITY@EDRAYCPL.COM

                             CFS-CY

                             OTHER ARTICLE OF ALUMINIUM, OTHER ARTICLE OF MANGO WOOD WITH
                             ALUMINIUM
                             PO NO: 95193419
                             SKU NO: 810725758, 810727274
                             QTY: 275
                             GR.WT: 654.500 KGS
                             SB.NO: 1505035 DT. 07/06/2024

                             *MORADABAD, UTTAR PRADESH 244001, INDIA

                             BEAU4922244 (PART)     SEAL# HLG9031850          40H  DRY

                             SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                             SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                             MATERIAL


                             275 CARTONS                   4.639 CBM      654.50 KGS
                             ==================================================
                             TOTAL : TWO HUNDRED SEVENTY-FIVE (275) CARTONS ONLY

                             "FREIGHT COLLECT"
SHIPMENT PER S.S. "NAVIOS CONSTELLATION" VOY NO. 4125   DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT June 24, 2024. CARGO RECEIVED ON June 14, 2024.
```

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**          **June 20, 2024** |
| **Non-Negotiable** | (Place and date of issue.) |
| Copy | **YUSEN LOGISTICS** |
| | As Agent |
| | V4 |

Non-Negotiable Copy

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services  provider for its customer who is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers'  Instructions received  in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering  items to Company for Services and any person  at whose request  or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific  written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection,  delivery,  local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the  remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound by all stipulations, exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the  Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b) are full and accurate;

d)    The cargoes contain no drugs, prohibited  or stolen goods, contraband, or  other illegal material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling,  and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h)    Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i)    The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)    Fitness of Cargoes: The cargoes are fit  and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)    Delivery of Cargoes: The consignee or other person entitled to the  delivery of the goods shall take delivery of the goods upon their  arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods.  Shipper's notice  will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and  method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods.  If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests  or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference  between the charges payable  by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or  arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, conduct, or  arrangement entered  into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability – Except as set forth in in this  Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of  Liability – The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of  contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising  out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.    Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend,  indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub  -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously given to and accepted by Company.  A mere statement or declaration of the value or nature of cargoes for  insurance or export  or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable  for any duties, taxes, levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or  in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in  connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.  Company may at its sole discretion exercise its lien at any  time and at any place.  The lien shall  cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its lien (including  but not limited to storage charges) and in recovering or attempting to recover  any sums due from Shipper or  the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or  any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of such sale (net of expenses) in or  towards the payment of any amount due to Company.  Company shall be entitled to  claim the difference against Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall survive delivery or deemed delivery of cargoes. Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to  delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.3    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any  claim, counterclaim, or set  -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13.    NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing  and delivered to Company at  its registered office  or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

c)    In any other case, the date of the event giving  rise to the claim.

13.2    No action shall lie against Company if  the claim is not made within  the times and in the manner  specified herein.

**14.    TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum  and written notice thereof received by Company within three 3 months from the date  cargoes arrived at the destination or the date cargoes should have arrived  at the destination (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company shall be responsible to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or  otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions  and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-MUN-2400099**

| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | Maker/Supplier's INVOICE No.<br>**DS339-24** |
|---|---|---|
| Buyer/Consignee : | DURANT DC, LLC<br>2306 ENTERPRISE DR, DURANT, OK 74701, USA | Dated: **June 11, 2024** |
| Shipment From : | MUNDRA        To : DURANT, OK | Date of Receipt of Cargo<br>**June 11, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
PLEASE REFER TO ATTACHED        NOTIFY PARTY: GEODIS
   SHEET(S).                       5101 S. BROAD STREET
                                   PHILADELPHIA, PA 19112-1404, U.S.A.
                                   ATTN: ALENA LAMINA
                              ALSO NOTIFY: EDRAY 2020 LLC.
                                   1300 SOUTH MINT STREET SUITE 200
                                   CHARLOTTE NC 28203 USA
                                   TEL: 704-593-6329
                                   EMAIL: DATAQUALITY@EDRAYCPL.COM

                              CY-CY
```

```
        966 CARTONS                    25.812 CBM     3,547.80 KGS
        ================================================================
        TOTAL : NINE HUNDRED SIXTY-SIX (966) CARTONS ONLY
```

```
             "FREIGHT COLLECT"
SHIPMENT PER S.S. "CMA CGM LAMARTINE" VOY NO. 0VBHJW1MA   DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT June 22, 2024. CARGO RECEIVED ON June 11, 2024.
```

**THIS IS NOT A DOCUMENT OF TITLE**

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

| MUNDRA | **June 22, 2024** |
|---|---|

(Place and date of issue.)

**YUSEN LOGISTICS**

For Yusen Logistics (India) Private Limited

Authorised Signatory

As Agent

(Authorized Signature)        V2

# Yusen Logistics

Yusen Logistics - Yusen Logistics                    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.        **CNS-MUN-2400099**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS** | **DS339-24** |
| | **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** | |
| Buyer/Consignee : | **DURANT DC, LLC** | Dated: **June 11, 2024** |
| | **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | |
| Shipment From : | **MUNDRA**        To : **DURANT, OK** | Date of Receipt of Cargo **June 11, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
PLEASE REFER TO ATTACHED          NOTIFY PARTY: GEODIS
   SHEET(S).                                    5101 S. BROAD STREET
                                                PHILADELPHIA, PA 19112-1404, U.S.A.
                                                ATTN: ALENA LAMINA
                                  ALSO NOTIFY: EDRAY 2020 LLC.
                                                1300 SOUTH MINT STREET SUITE 200
                                                CHARLOTTE NC 28203 USA
                                                TEL: 704-593-6329
                                                EMAIL: DATAQUALITY@EDRAYCPL.COM

                                  CY-CY
```

Non-Negotiable Copy

```
             966 CARTONS                       25.812 CBM      3,547.80 KGS
             ==============================================================
             TOTAL : NINE HUNDRED SIXTY-SIX (966) CARTONS ONLY
```

```
              "FREIGHT COLLECT"
SHIPMENT PER S.S. "CMA CGM LAMARTINE" VOY NO. 0VBHJW1MA   DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT June 22, 2024. CARGO RECEIVED ON June 11, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA                    **June 22, 2024** |
|---|---|
| **Non-Negotiable** | (Place and date of issue.) |
| Copy | **YUSEN LOGISTICS** |
| | As Agent |
| | V2 |

# Yusen Logistics

V2

FCR No.   CNS-MUN-2400099                                   Attachment Page 1/1

**Shipping Mark**                                           **Description of Goods**

BIG LOTS STORES                                             OTHER ARTICLE/HANDICRAFTS OF ALUMINIUM CRISTMAS ORNAMENT
PO NO: 95252805                                            MADE OF IRON
SKU NO: 810729267,                                         WITH ROPE
810729278, 810729279,                                     PO NO: 95252805
810729285.                                                SKU NO: 810729267, 810729278, 810729279, 810729285.
CARTON 1 - 966                                             QTY: 4440
MADE IN INDIA                                              GR.WT: 3547.8 KGS
                                                          SB.NO: 1583489 DT. 11/06/2024

                                                          *MORADABAD, UTTAR PRADESH 244001, INDIA

                                                          SHIPPER'S LOAD, COUNT AND SEAL
                                                          SAID TO CONTAIN
                                                          TCKU6817658 (PART)      SEAL# R6170405        40H  DRY


                                                          SHIP TO CODE & LOCATION : 00879-DURANT, OK
                                                          SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                                                          MATERIAL

**Yusen Logistics**

V2

FCR No.   CNS-MUN-2400099

Attachment Page 1/1

**Shipping Mark**

BIG LOTS STORES
PO NO: 95252805
SKU NO: 810729267,
810729278, 810729279,
810729285.
CARTON 1 - 966
MADE IN INDIA

**Description of Goods**

OTHER ARTICLE/HANDICRAFTS OF ALUMINIUM CRISTMAS ORNAMENT
MADE OF IRON
WITH ROPE
PO NO: 95252805
SKU NO: 810729267, 810729278, 810729279, 810729285.
QTY: 4440
GR.WT: 3547.8 KGS
SB.NO: 1583489 DT. 11/06/2024

*MORADABAD, UTTAR PRADESH 244001, INDIA

SHIPPER'S LOAD, COUNT AND SEAL
SAID TO CONTAIN
TCKU6817658 (PART)      SEAL# R6170405          40H  DRY

SHIP TO CODE & LOCATION : 00879-DURANT, OK
SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
MATERIAL

Forwarders' Cargo Receipt
Terms and Conditions

**1.**   **DEFINITIONS**

1.1.   "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services  provider for its customer who  is the ultimate consignee of this shipment.

1.2.   "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers'  Instructions received  in writing at the time of receipt.

1.3.   "Shipper" means the vendor tendering  items to Company for Services and any person  at whose request  or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.   "Shippers' Instructions" means any of Shipper's specific  written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.

1.5.   "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.   "Services" means the origin services to be provided by Company and  includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection,  delivery, local transportation, insurance, customs clearance, packing,   unpacking, and other  handling of goods and other  services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.   "Owner" means the owner of the cargoes (including any packings, containers, or   equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.**   **COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1   In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services,  those provisions,  to the extent of such inconsistency,  shall  be null and void in relation to such element of the Services by Company, but the   remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2   Nothing in these Conditions shall operate  to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3   Any and all advice information or Services provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.**   **SHIPPER'S WARRANTIES**

3.1   Shipper warrants as follows:

a)   By accepting these Conditions, Shipper  agrees to be bound by all stipulations,  exceptions, terms, and conditions on the  front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)   By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the  Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)   The description and  particulars relating to the  cargoes set out on the front hereof:  (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)   The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other  illegal material or substance or stowaways;

e)   The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling,  and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)   Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)   Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h)   Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or   insufficiently packed or prepared, no matter how such loss or damage is caused.

i)   Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

   i)   The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

   ii)   The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)   Description of Cargoes: All descriptions, values, and other   particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)   Fitness of Cargoes: The cargoes are fit  and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)   Delivery of Cargoes: The consignee or  other person entitled to the delivery of the goods shall  take delivery of the goods upon their  arrival at destination  and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.**   **DANGEROUS GOODS**

4.1   Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods.  Shipper's notice  will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and  method of storage and handling of the Dangerous Goods.

4.2   Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3   Additional charges may apply to the storage and handling of Dangerous Goods.  If any Dangerous Goods are tendered in breach of this Section, they may, at any time  or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.**   **COMPANY'S AUTHORITY**

5.1   SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE PROVIDED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's  interest or is expedient.

5.3   Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4   Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5   Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6   Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.   Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7   Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered  into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.**   **LIABILITY AND LIMITATIONS**

6.1   SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2   Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3   Liability for  Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability  for any loss or damage to cargoes if,  and to the extent  that, such loss or damage is caused by:

a)   A force majeure event;

b)   Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid by the exercise of reasonable diligence;

c)   Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)   Compliance with instructions or directions of Shipper  or the consignee or any person authorized to give them.

6.4   Amount of Compensation - Subject to these Conditions, if Company is liable for  loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)   The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)   Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5   No insurance will be arranged by Company for the benefit of Shipper.

6.6   Entire Liability – Except as set forth in in this  Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7   Application of Defenses, Limits, and Exclusions of  Liability - The defenses,  limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of  contract.

6.8   By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.**   **INDEMNITY**

7.1.   Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without   limitation all duties,  taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship pe's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.   Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper  shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.   Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper  contracts for itself as well as agents for all the aforesaid persons.

7.4.   Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without  limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub  -contractors.

**8.**   **WAREHOUSING**

8.1   Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of  Company and the cost therefore shall be for the account of Shipper.

**9.**   **DECLARED VALUE**

9.1   Company shall  not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously  given to and accepted by Company.   A mere statement or declaration of the value or  nature of cargoes for  insurance or export  or customs or  other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.**   **SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1   Shipper shall be liable  for any duties, taxes, levies, deposits, or outlays of  any kind levied  by the authorities at any port or  place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.**   **LIEN, DISPOSAL OF GOODS, ETC.**

11.1   Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.   Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including  but not limited to storage charges) and in recovering or  attempting to recover  any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2   Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.   Company shall be entitled to  claim the difference against Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3   Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of  any sale after deduction of charges and expenses shall be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4   The rights of Company under this Section are independent and cumulative.

**12.**   **RATES AND CHARGES**

12.1   Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set  -off.

12.2   Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice  is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3   On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13.**   **NOTICE OF CLAIM**

13.1   Any claim against Company must be in writing and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)   In the case of damage to goods, the date of delivery of cargoes;

b)   In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

c)   In any other case, the date of the event giving  rise to the claim.

13.2   No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14.**   **TIME BAR**

14.1   Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice  thereof received by Company within three 3 months from the date cargoes  arrived at the destination or the date cargoes should have arrived  at the destination (whichever  date is the earlier).

**15.**   **NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1   Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.**   **GOVERNING LAW**

16.1   These Conditions  and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.          **CNS-MUN-2400100**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS** **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD***  | **DS340-24** |
| Buyer/Consignee : | **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **June 11, 2024** |
| Shipment From : | **MUNDRA**          To : **DURANT, OK** | Date of Receipt of Cargo **June 11, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95299497<br>SKU NO: 810732985<br>CARTON 1 - 465<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>    1300 SOUTH MINT STREET SUITE 200<br>    CHARLOTTE NC 28203 USA<br>    TEL: 704-593-6329<br>    EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CY-CY<br><br>CHRITMAS ORNAMENT MADE OF IRON<br>PO NO: 95299497<br>SKU NO: 810732985<br>QTY: 1860<br>GR.WT: 3534.000 KGS<br>SB.NO: 1583505 DT. 11/06/2024<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>TCKU6817658 (PART)    SEAL# R6170405    40H  DRY<br><br>SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 465 CARTONS | | 35.656 CBM | 3,534.00 KGS |

TOTAL : FOUR HUNDRED SIXTY-FIVE (465) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "CMA CGM LAMARTINE" VOY NO. 0VBHJW1MA   DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT June 22, 2024. CARGO RECEIVED ON June 11, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA          **June 22, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>**For Yusen Logistics (India) Private Limited**<br><br>**Authorised Signatory**          As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)          V2 |

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.          **CNS-MUN-2400100**

| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | Maker/Supplier's INVOICE No.<br>**DS340-24** |
|---|---|---|
| Buyer/Consignee : | **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **June 11, 2024** |
| Shipment From : | **MUNDRA**          To : **DURANT, OK** | Date of Receipt of Cargo<br>**June 11, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95299497                  5101 S. BROAD STREET
SKU NO: 810732985                PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 465                   ATTN: ALENA LAMINA
MADE IN INDIA            ALSO NOTIFY: EDRAY 2020 LLC.
                                 1300 SOUTH MINT STREET SUITE 200
                                 CHARLOTTE NC 28203 USA
                                 TEL: 704-593-6329
                                 EMAIL: DATAQUALITY@EDRAYCPL.COM

                         CY-CY

                         CHRITMAS ORNAMENT MADE OF IRON
                         PO NO: 95299497
                         SKU NO: 810732985
                         QTY: 1860
                         GR.WT: 3534.000 KGS
                         SB.NO: 1583505 DT. 11/06/2024

                         *MORADABAD, UTTAR PRADESH 244001, INDIA

                         SHIPPER'S LOAD, COUNT AND SEAL
                         SAID TO CONTAIN
                         TCKU6817658 (PART)      SEAL# R6170405        40H  DRY

                         SHIP TO CODE & LOCATION : 00879-DURANT, OK
                         SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                         MATERIAL

                         465 CARTONS                  35.656 CBM    3,534.00 KGS
                         ==============================================================
                         TOTAL : FOUR HUNDRED SIXTY-FIVE (465) CARTONS ONLY

                              "FREIGHT COLLECT"
SHIPMENT PER S.S. "CMA CGM LAMARTINE" VOY NO. 0VBHJW1MA   DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT June 22, 2024. CARGO RECEIVED ON June 11, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA                          June 22, 2024 |
|---|---|
| **Non-Negotiable**<br><br>Copy | (Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br>As Agent<br>V2 |

Non-Negotiable Copy (watermark)

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate  entities issuing these Conditions in its  capacity as an origin services  provider for its customer who is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers'  Instructions received  in writing at the time of  receipt.

1.3.    "Shipper" means the vendor tendering  items to Company for Services and any person  at whose request or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be  provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other  services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services,  those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the  remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever thereto  re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound by all stipulations,  exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and  particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)    The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other illegal material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or marking are appropriate to the storage, handling,  and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide the total gross  mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply  with its obligations in accordance with SOLAS.

h)    Proper Packing, etc.: All the cargoes, the  subject of any Service provided by Company,  have been properly and sufficiently packed and/or  prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons,  tanks,  igloos, or any other unit bear device (each hereafter referred to as a "transport unit") then:

 i)    The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

 ii)    The cargoes are suitable for carriage  and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)    Fitness of Cargoes: The cargoes are fit  and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling  in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)    Delivery of Cargoes:  The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their  arrival at destination and shall  pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and  Company  has expressly accepted in writing to deal  with the Dangerous Goods. Shipper's notice  will include all information necessary for Company to perform  its obligation in connection with the Dangerous  Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and  method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly  marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage  and handling of Dangerous Goods.  If any Dangerous Goods are tendered in breach of this Section, they  may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests  or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference  between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered  into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid, by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of  only those cargoes damaged or lost (excluding insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability -- Except as set forth in  this Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of expres s or implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of  contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2    Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses,  damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper  contracts for itself as well as agents for all the aforesaid persons.

7.4    Shipper shall defend,  indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of  Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs,  and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at  any place at the sole discretion of  Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any  declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously  given to and accepted by Company.  A mere statement or declaration of the value or  nature of cargoes for  insurance or export  or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable  for any duties, taxes, levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in connection with cargoes and  for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and  documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.  Company may at  its sole discretion exercise its lien at any  time and at any place. The lien  shall cover without limitation all charges, expenses, and advances of whatsoever  nature due to Company and/or its affiliates  and inclusive of any costs incurred enforcing  and preserving its  lien (including  but not limited to  storage charges) and in recovering or attempting to recover  any sums due from Shipper or the  ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at  any place) at the costs of Shipper  cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.  Company shall be entitled to  claim the difference  against Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall survive delivery or  deemed delivery of cargoes. Perishable cargoes which are not  taken up immediately upon arrival or  which are insufficiently  addressed  or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without  any notice to Shipper or the Owner and payment or  tender of the net proceeds of  any sale after deduction  of charges and expenses shall be  equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.3    Perishable cargoes which are not  taken up immediately upon arrival or  which are insufficiently  addressed  or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without  any notice to Shipper or the Owner and payment or  tender of the net proceeds of  any sale after deduction  of charges and expenses shall be  equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set  -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice is rendered.  Forthwith upon such request being  made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13.    NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing  and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14.    TIME BAR**

14.1    Any right of action against Company shall be  extinguished  if suit is not brought in the proper forum and written notice  thereof received by Company within three 3 months from the date cargoes  arrived at the destination or the date cargoes should have arrived  at the destination (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk  for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400706**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS** **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | **DS346-24** |
| Buyer/Consignee : | **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated:  **June 11, 2024** |
| Shipment From : | **NHAVA SHEVA**          To : **DURANT, OK** | Date of Receipt of Cargo **June 19, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES PO NO: 95193422 SKU NO: 810725852 CARTON 1 - 252 MADE IN INDIA | | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM CFS-CY LANTERN MADE OF GLASS, ST STEEL & MANGO WOOD PO NO: 95193422 SKU NO: 810725852 QTY: 252 GR.WT: 2349.900 KGS SB.NO: 1613149 DT. 12/06/2024 \*MORADABAD, UTTAR PRADESH 244001, INDIA TEMU7413001 (PART)      SEAL# IN1629539      40H DRY SHIP TO CODE & LOCATION : 00879-DURANT, OK SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 252 CARTONS | | 28.068 CBM | 2,349.90 KGS |

```
================================================================
```
TOTAL : TWO HUNDRED FIFTY-TWO (252) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "ONE MAXIM" VOY NO. 070E    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT July 18, 2024. CARGO RECEIVED ON June 19, 2024.

ORIGINAL

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA                July 11, 2024 |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** **For Yusen Logistics (India) Private Limited** **Authorised Signatory** As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                V2 |

Yusen Logistics  -  Yusen Logistics  -  Yusen Logistics  -  Yusen Logistics  -  Yusen Logistics  -  Yusen Logistics  -  Yusen Logistics

# Yusen Logistics

Yusen Logistics - Yusen Logistics                    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400706**

| | |
|---|---|
| Maker/Supplier : **DEWAN & SONS** <br> **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** | Maker/Supplier's INVOICE No. <br> **DS346-24** |
| Buyer/Consignee : **DURANT DC, LLC** <br> **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **June 11, 2024** |
| Shipment From : **NHAVA SHEVA**    To : **DURANT, OK** | Date of Receipt of Cargo <br> **June 19, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES                    NOTIFY PARTY: GEODIS
PO NO: 95193422                        5101 S. BROAD STREET
SKU NO: 810725852                      PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 252                         ATTN: ALENA LAMINA
MADE IN INDIA                      ALSO NOTIFY: EDRAY 2020 LLC.
                                       1300 SOUTH MINT STREET SUITE 200
                                       CHARLOTTE NC 28203 USA
                                       TEL: 704-593-6329
                                       EMAIL: DATAQUALITY@EDRAYCPL.COM

                                   CFS-CY

                                   LANTERN MADE OF GLASS, ST STEEL & MANGO WOOD
                                   PO NO: 95193422
                                   SKU NO: 810725852
                                   QTY: 252
                                   GR.WT: 2349.900 KGS
                                   SB.NO: 1613149 DT. 12/06/2024

                                   *MORADABAD, UTTAR PRADESH 244001, INDIA

                                   TEMU7413001 (PART)    SEAL# IN1629539        40H  DRY


                                   SHIP TO CODE & LOCATION : 00879-DURANT, OK
                                   SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                                   MATERIAL


                                   252 CARTONS                28.068 CBM    2,349.90 KGS
                                   ==================================================
                                   TOTAL : TWO HUNDRED FIFTY-TWO (252) CARTONS ONLY

                        "FREIGHT COLLECT"
SHIPMENT PER S.S. "ONE MAXIM" VOY NO. 070E    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT July 18, 2024. CARGO RECEIVED ON June 19, 2024.
```

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE <br><br> **Non-Negotiable** <br><br> Copy | **NHAVA SHEVA**          **July 11, 2024** <br><br> (Place and date of issue.) <br><br> **YUSEN LOGISTICS** <br><br><br> As Agent <br> **V2** |

Non-Negotiable Copy (watermark)

**1.    DEFINITIONS**

1.1.  "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate  entities issuing these Conditions in its  capacity as an origin services  provider for its customer who  is the ultimate consignee of this shipment.

1.2.  "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein,  and includes terms and conditions on the  front and any Shippers' Instructions received  in writing at the time of issuance of this  shipment.

1.3.  "Shipper" means the vendor tendering  items to Company for Services and any person  at whose request or on whose behalf Shipper  undertakes any tender of  those cargoes to Company.

1.4.  "Shippers' Instructions" means any of Shipper's  specific written shipping instructions or  requirements delivered to Company at the time  of receipt of the cargoes.

1.5.  "Laws" means any laws, statutes, regulations,  or conventions which apply compulsorily  to any element of the Services or any subject  matter incidental to these Conditions.

1.6.  "Services" means the origin services to be  provided by Company and includes the receipt  of cargoes from Shipper and subsequent  arranging for the storage,  warehousing, collection,  delivery, local transportation, insurance, customs  clearance, packing,  unpacking, and other  handling of goods and other services intended to  accomplish delivery of the  cargoes to Company's  customer, the ultimate consignee.

1.7.  "Owner" means the owner of the cargoes  (including any packings, containers, or  equipment other than those provided by Customer  or carriers) to which any business concluded  under these Conditions relate s and any other  person who is or may become interested in them  depending upon the commercial terms of sale and  including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1  In the event that any provisions contained  herein are  inconsistent  with any Laws that apply  compulsorily to any element of the Services,  those provisions, to the extent of such  inconsistency, shall be null and void in  relation to such element of the Services by  Company, but the  remaining provisions of this  forwarders' certificate of receipt ("FCR") shall  remain valid and enforceable.

2.2  Nothing in these Conditions shall operate to  limit or deprive Company of any statutory  protection, defense, exception, or limitation  of liability authorized by any applicable Laws.

2.3  Any and all advice information or Services  provided by Company gratuitously  is provided on  the basis that Company will not accept any  liability whatsoever therefo  re, whether in tort,  bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1  Shipper warrants as follows:

a)  By accepting these Conditions, Shipper  agrees to be bound by all stipulations,  exceptions, terms, and conditions on the  front  and back hereof, whether written, typed, stamped,  or printed, as fully as if signed by Shipper;

b)  By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is  the agent of and has the authority of, the  Owner or person owning or entitled to the  possession of the cargoes or of the person who  is or may become interested in the cargoes;

c)  The description and  particulars relating to the  cargoes set out on the front hereof: (a) have  been checked by Shipper  on receipt of these  Conditions; and (b)  are full and accurate;

d)  The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other illegal  material or substance or stowaways;

e)  The cargoes have been properly and  sufficiently prepared,  packed, stowed, labelled,  and/or marked by or on behalf of Shipper, and  the preparation,  packing, stowage, labelling,  and/or marking are appropriate to the storage,  handling, and any  operations or transactions that  may affect the cargoes and are in compliance  with all applicable Laws;

f)  Shipper complies with all Laws,  requirements, directions, recommendations, rules,  guidelines of customs, port, import, export, and  other authorities;

g)  Shipper shall provide the total gross  mass established using calibrated and certified  equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with  SOLAS. Shipper acknowledges and agrees that  Company will rely on the  accuracy and timeliness  of such gross mass information and will use this  to comply with its obligations in accordance with  SOLAS.

h)  Proper Packing, etc.: All the cargoes,  the subject of any Service provided by Company,  have been properly and sufficiently packed and/or  prepared, and that Company has no liability for  any  loss of or damage to cargoes which are  improperly or  insufficiently packed or prepared,  no matter how such loss or damage is caused.

i)  Transport Unit: Where the cargoes  delivered by or on behalf of Shipper are already  carried in or on containers, trailers, flats,  tilts, railway wagons, tanks,  igloos, or any  other unit deemed (each hereafter referred to as  a "transport unit") then:

i)  The transport unit is in good  condition, is suitable to carry the goods loaded  therein or thereon, and is suitable for the  intended carriage and other handling; and

ii)  The cargoes are suitable for  carriage and other handling in or on the  transport unit and has been properly and  competently packed or loaded in or on the  transport unit.

j)  Description of Cargoes: All descriptions,  values, and other  particulars of the goods  furnished to Company are true, complete, and  accurate, it being the duty of Shipper to provide  such information to Company and to ensure that  such information is true, complete, and accurate.

k)  Fitness of Cargoes: The cargoes are fit  and suitable for the carriage (international as  well  as local), storage, packing, unpacking, and  other handling in accordance with, pursuant,  related, or incidental to Shipper's Instructions.

l)  Delivery of Cargoes: The consignee or  other person entitled to the  delivery of the goods  shall take delivery of the goods upon their  arrival at destination  and shall pay all  necessary charges, taxes, and duties and shall  comply with all necessary formalities and  procedures.

**4.    DANGEROUS GOODS**

4.1  Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive,  or which  do or may present a risk of damage to  any property or person whatsoever ("Dangerous  Goods") unless Shipper, or someone acting on its  behalf, has given Company written  notice of the  nature of the Dangerous Goods prior to Company's  receipt of such Dangerous Goods and Company has  expressly accepted in writing to deal  with the  Dangerous Goods. Shipper's notice will include  all information necessary for Company to perform  its obligation in connection with the Dangerous  Goods in accordance  with all applicable Laws or  requirements (or any combination of the  foregoing), including  without limitation  information about the characteristics of the  Dangerous Goods, the appropriate manner and  method of storage and handling of the Dangerous  Goods.

4.2  Any Dangerous Goods must be distinctly  marked on the outside so as to indicate the  nature and characteristics of the Dangerous Goods  and so as to comply with all Laws.

4.3  Additional charges may apply to the storage  and handling of Dangerous Goods.  If any Dangerous  Goods are tendered in breach of this Section,  they may, at any time or place be unloaded,  destroyed, disposed, abandoned, or rendered  harmless, as circumstances may require, at  Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1  SHIPPER ACKNOWLEDGES AND AGREES THAT  COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN  SERVICES PROVIDER, AND THAT COMPANY WILL NOT  UNDER THESE CONDITIONS PERFORM IN THE  CAPACITY OF A CARRIER, NON-VESSEL-OPERATING  COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A  SHIPPER AS THAT TERM IS UNDERSTOOD UNDER  APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE  CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO  COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL  BE IDENTIFIED AS THE LAWFUL SHIPPER FOR  INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE  PROVIDED AS A CONVENIENCE TO SHIPPER IN ITS  TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR  WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER  FOR THOSE SERVICES RENDERED AT ORIGIN.

Company is authorized to depart or deviate from  Shipper Instructions in any respect if in the  opinion of Company such departure or deviation is  necessary  or desirable in Shipper's  interest is  expedient.

5.3  Company is authorized by Shipper to act or to  enter into any contract or arrangement with  third-parties for performance of the Services  without prior  consultation with or further  authorization from Shipper.

5.4  Company is authorized to agree with any 3rd  Party the charges payable to such 3rd Party  without reference to or further authorization  from Shipper, it being agreed that the difference  between the charges payable by Company to 3rd  Party(ies), and the charges payable by Shipper to  Company is Company's  commission or remuneration or  profit. Shipper waives any and has no right of  enquiry of the charges payable to 3rd  Party(ies)  and Company is not under any duty to account  to  Shipper for Company's commissions, remunerations,  or profits.

5.5  Company is authorized (but not obligated) to  inspect or arrange for cargoes to be inspected.

5.6  Company is not obliged to arrange for  Shipper's goods  to be carried, forwarded, packed,  unpacked, stored, or handled separately.  Company  is authorized (but not obliged) to  consolidate or  arrange to be consolidated cargoes of Shipper  with other goods.

5.7  Shipper expressly agrees to be bound in all  respects by any act,  conduct, or arrangement  entered  into by Company with third-parties pursuant to the  aforesaid  authorizations.  Company is not and does  not act as Shipper's agent with respect to any  cargoes or shipments under these Conditions, and  Company does not accept any such purported  appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1  SHIPPER ACKNOWLEDGES AND AGREES THAT IT  HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR  CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE  EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED  WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY,  AND CONTROL OF COMPANY DURING PERFORMANCE OF THE  SERVICES PURSUANT TO THESE CONDITIONS; (B)  RELATED TO THE RELEASE OF THE CARGOES TO THE  CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND  SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT,  LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL  OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE,  OR ASSERTING SPECIAL, PUNITIVE, INDIRECT,  INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2  Company's liability for the cargoes, if any,  shall be determined and limited in accordance  with this Section.

6.3  Liability for Loss or Damage to Cargoes --  Without prejudice to any other right or remedies  Company may have, Company shall be relieved of  liability for any loss or damage to cargoes if,  and to the extent that, such loss or damage is  caused by:

a)  A force majeure event;

b)  Strike, lock-out, stoppage or restraint  of labor, the consequences of  which Company is  munable to avoid by the exercise of reasonable  diligence;

c)  Any cause or event which Company is  unable to avoid and the consequences  whereof  Company is unable to prevent by the exercise of  reasonable diligence; or

d)  Compliance with instructions or  directions of Shipper or the consignee or any  person authorized to give them.

6.4  Amount of Compensation - Subject to these  Conditions, if Company is liable for  loss of or  damage to cargoes, the liability of Company shall  be limited to the lesser of:

a)  The landed cost at the destination of  only those cargoes damaged or lost (excluding  insurance); or

b)  Two (2) SDRs per kilo of the gross  weight of any cargoes lost or damaged.

6.5  No insurance will be arranged by Company for  the benefit of Shipper.

6.6  Entire Liability -- Except as set forth in  this Section, Company shall not  be liable for loss  of or  damage to any cargoes or have any liability  whatsoever  for any events arising out  or in  connection with the storage and handling of  cargoes and/or this FCR.

6.7  Application of Defenses, Limits, and  Exclusions of  Liability - The defenses, limits and  exclusions of  liability provided for in these  Conditions of receipt shall  apply in any action  against Company arising out of or  in connection  with the Services (including  loss or damage to  cargoes) and whether the action be founded in  contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss  or  damage arose as a result of negligence, willful  misconduct, or fundamental breach of  contract.

6.8  By special arrangement which must be agreed  to in writing, Company may accept liability in  excess of the limit set forth herein if Shipper  agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.  Shipper shall save harmless and  indemnify and keep indemnified Company  from and  against all claims, liabilities, losses, damages,  costs, and expenses (including without  limitation  all duties,  taxes, imposts, levies, deposits,  fines, and outlays of whatsoever nature levied by  any authority) arising out of Company acting in  accordance with Ship per's Instructions, or  arising from a breach of warranty or obligation  by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or  instructions, or arising from the negligence of  Shipper or Owner.

7.2.  Advice and information, in whatever form as  may be given  by Company, are provided  by Company  for Shipper only and Shipper  shall save harmless  and indemnify and keep  indemnified Company from  and against all claims,  liabilities, losses,  damages, costs, and expenses arising out  of any  other person relying on such advice or  information. Except under special arrangements  previously  made in writing, advice, or  information which is not related to specific  instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.  Shipper undertakes that no claim shall be  made against  any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be  provided by Company.  If any such claim should  nevertheless be made Shipper  shall indemnify  Company against all consequences  thereof.  Without  prejudice to the foregoing  every such officer,  servant, agent, and sub -contractor shall have the  benefit  of all provisions herein benefiting  Company as if such provisions  were expressly for  his or its benefit.  For the foregoing purposes,  Shipper contracts for itself as well as agents  for all the aforesaid persons.

7.4.  Shipper shall defend, indemnify, and hold  harmless Company from and against all claims,  costs, and demands whatsoever and by whomsoever  made or preferred in excess of the liability of  Company under the terms of these Conditions,  and  without prejudice to the generality of the  foregoing this indemnity shall include (without  limitation) all claims, costs, and demands arising  from or  in connection with the negligence of  Company, its officers, servants, agents, or sub  -contractors.

**8.    WAREHOUSING**

8.1  Pending release of the cargoes after  provision of Services at origin, cargoes may be  warehoused  or otherwise held at the risk of  Shipper or the Owner at any place at the sole  discretion of  Company and the cost therefore  shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1  Company shall not be obliged to make any  declaration for the purpose of any  statute or  convention  or contract as to the nature or value  of any goods or  as to any special interest  in  delivery unless express instructions in writing  were previously  given to and accepted by Company.  A mere statement or  declaration of the value or  nature of cargoes for  insurance or export  or  customs or  other purposes is not and shall not  be construed to be Shipper's Instructions to  Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1  Shipper shall be liable for any duties,  taxes, levies, deposits, or outlays of any  kind levied  by the authorities at any port or  place for or  in connection with cargoes and for  any payments,  storage, demurrage, fines,  expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1  Company shall have a general lien on all  cargoes (and  documents relating thereto)  and any  other property belonging to Shipper,  directly or  indirectly  in Company's possession, custody,  control, or enroute for  all monies due to Company  and/or its affiliates  from Shipper or  the ultimate  consignee.  Company may at  its sole discretion  exercise its lien at any  time and at any place.  The lien shall  cover without limitation all  charges, expenses, and advances of  whatsoever  nature due to Company and/or its affiliates  and  inclusive of any costs incurred enforcing  and  preserving its  lien (including  but not limited to  storage charges) and in  recovering or  attempting  to recover  any sums due from Shipper or the  ultimate consignee (whether in respect of the  storage and handling herein or otherwise).

11.2  Company shall be entitled to sell (at any  time and at any place) at the costs of Shipper  cargoes and/or any such other property by private  treaty or by public auction or  other means,  without giving prior  notice or  incurring any  liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the  payment of any amount due to Company.  Company  shall be entitled to claim the difference against  Shipper or the ultimate consignee  in the event  that the (net) sale proceeds do  not discharge in  full  the amount due from Shipper or the ultimate  consignee. Company's lien shall survive delivery  or deemed delivery of cargoes.

11.3  Perishable cargoes which are not  taken up  immediately upon arrival or which are  insufficiently  addressed or marked or otherwise  not readily identifiable,  may be sold or otherwise  disposed of without any notice to Shipper or the  Owner and payment or tender of the net proceeds  of  any sale after deduction of charges and  expenses shall be equivalent to  delivery.  All  charges and expenses arising in  connection with  the sale or disposal of cargoes shall be paid by  Shipper.

11.4  The rights of Company under this Section are  independent and cumulative.

**12.    RATES AND CHARGES**

12.1  Shipper is directly and primarily liable for  the  payment of all charges owed to Company in  performance of the Services at origin for its  benefit.  Shipper shall pay to Company all sums  immediately when due without deduction or  deferment on account of any  claim, counterclaim,  or set  -off.

12.2  Company at its discretion  may request an  advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's  invoice  is rendered.  Forthwith upon such request  being made, Shipper shall make such advance to  Company.

12.3  On all amounts overdue to Company, Company  shall be entitled to interest calculated on a  monthly basis from the date such accounts are  overdue until payment thereof  at 2% per month  (compounded monthly) during the period that such  amounts are overdue.

**13.    NOTICE OF CLAIM**

13.1  Any claim against Company must be in writing  and delivered to Company at its registered office  or its principal place of business in Hong Kong  within 3 days of:

a)  In the case of damage to goods, the date  of delivery of cargoes;

b)  In the case of loss or non-delivery or  mis-delivery of cargoes, the date  that cargoes  should have been delivered; and

c)  In any other case, the date of the event  giving rise to the claim.

13.2  No action shall lie against Company if  the claim is not made within the times and in the  manner specified herein.

**14.    TIME BAR**

14.1  Any right of action against Company shall be  extinguished  if suit is not brought in the proper  forum and written notice thereof received  by  Company within three 3 months from the date  cargoes arrived at the destination or the date  cargoes should have arrived  at the destination  (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1  Shipper agrees that: (a) Company shall have  no obligation to  Shipper whatsoever related  to  Collect on Delivery (C.O.D.) shipments and  commensurate obligations  for collection of  bank  drafts or otherwise, or to collect on any  specified terms by time drafts  or otherwise; and  (b) Shipper bears all risk for the payment of  costs and/or collection of the invoice price from  its customer and the consignee.

**16.    GOVERNING LAW**

16.1  These Conditions and any act or contract to  which they apply shall be governed  by and  construed according to the laws of the Hong Kong  Special  Administrative Region. Any dispute  arising out  of these Conditions or any such act  or contract shall be subject  to the non exclusive  jurisdiction of  the courts of the Hong Kong  Special Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400651**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | **DS366-24** |
| Buyer/Consignee : | AVDC, LLC<br>18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA | Dated: **June 15, 2024** |
| Shipment From : | NHAVA SHEVA        To : APPLE VALLEY, CA | Date of Receipt of Cargo<br>**June 19, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95252802<br>SKU NO: 810729285<br>CARTON 1 - 319<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>    1300 SOUTH MINT STREET SUITE 200<br>    CHARLOTTE NC 28203 USA<br>    TEL: 704-593-6329<br>    EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>OTHER ARTICLE/ HANDICRAFTS OF ALUMINIUM<br>PO NO: 95252802<br>SKU NO: 810729285<br>QTY: 1914<br>GR.WT: 861.3 KGS<br>SB.NO: 1721433 DT. 17/06/2024<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>HLBU3320194 (PART)        SEAL# HLG6275091        40H  DRY<br><br>SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 319 CARTONS | | 5.389 CBM | 861.30 KGS |

TOTAL : THREE HUNDRED NINETEEN (319) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "EXPRESS ATHENS" VOY NO. 4126    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT July 1, 2024. CARGO RECEIVED ON June 19, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA                    June 28, 2024 |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>For Yusen Logistics (India) Private Limited<br><br><br>Authorised Signatory                    As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

# Yusen Logistics

Yusen Logistics - Yusen Logistics Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400651**

| | |
|---|---|
| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** |
| Buyer/Consignee : | **AVDC, LLC**<br>**18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** |
| Shipment From : | **NHAVA SHEVA**         To : **APPLE VALLEY, CA** |

Maker/Supplier's INVOICE No.
**DS366-24**

Dated: **June 15, 2024**

Date of Receipt of Cargo
**June 19, 2024**

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95252802<br>SKU NO: 810729285<br>CARTON 1 - 319<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>       5101 S. BROAD STREET<br>       PHILADELPHIA, PA 19112-1404, U.S.A.<br>       ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>       1300 SOUTH MINT STREET SUITE 200<br>       CHARLOTTE NC 28203 USA<br>       TEL: 704-593-6329<br>       EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>OTHER ARTICLE/ HANDICRAFTS OF ALUMINIUM<br>PO NO: 95252802<br>SKU NO: 810729285<br>QTY: 1914<br>GR.WT: 861.3 KGS<br>SB.NO: 1721433 DT. 17/06/2024<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>HLBU3320194 (PART)      SEAL# HLG6275091      40H  DRY<br><br>SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 319 CARTONS | | 5.389 CBM | 861.30 KGS |
| | ============================================================= | | | |
| | TOTAL : THREE HUNDRED NINETEEN (319) CARTONS ONLY | | | |

"FREIGHT COLLECT"

SHIPMENT PER S.S. "EXPRESS ATHENS" VOY NO. 4126    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT July 1, 2024. CARGO RECEIVED ON June 19, 2024.

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**                    **June 28, 2024** |
| **Non-Negotiable**<br><br>Copy | (Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br>As Agent<br>V1 |

Forwarders' Cargo Receipt
Terms and Conditions

**1.      DEFINITIONS**

1.1.      "Company" means Yusen Logistics Global  Management  Limited trading or any of its affiliate  entities issuing these Conditions in its  capacity as an origin services  provider for its customer who  is the ultimate consignee of this shipment.

1.2.      "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers'  Instructions received  in writing at the time of  receipt.

1.3.      "Shipper" means the vendor  tendering  items to Company for  Services and any person at whose request  or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.      "Shippers' Instructions" means any of Shipper's specific written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.

1.5.      "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.      "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of cargoes and other  services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.      "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.      COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1      In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services,  those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the  remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2      Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3      Any and all advice information or Services provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.      SHIPPER'S WARRANTIES**

3.1      Shipper warrants as follows:

a)      By accepting these Conditions, Shipper  agrees to be bound by all stipulations, exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)      By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the  Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)      The description and  particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)      The cargoes contain no drugs, prohibited  or stolen goods, contraband, or  other illegal material or substance or stowaways;

e)      The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)      Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)      Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h)      Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company,  have been properly and sufficiently packed and/or prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

i)      Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i)      The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and

ii)      The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)      Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)      Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related,  or incidental to Shipper's Instructions.

l)      Delivery of Cargoes: The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their  arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.      DANGEROUS GOODS**

4.1      Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods. Shipper's notice  will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and  method of storage and handling of the Dangerous Goods.

4.2      Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3      Additional charges may apply to the storage and handling of Dangerous Goods.  If any Dangerous Goods are tendered in breach of this Section, they may, at any time or  place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.      COMPANY'S AUTHORITY**

5.1      SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CONSOLIDATOR, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE OFFERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2      Company is authorized to depart or deviate from Shipper instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's  interests  or is expedient.

5.3      Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4      Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5      Company is authorized (but not obligated) to inspect or arrange for cargoes  to be reweighed.

5.6      Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or  arrange to be consolidated cargoes of Shipper with other goods.

5.7      Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered  into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.      LIABILITY AND LIMITATIONS**

6.1      SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2      Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3      Liability for  Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

a)      A force majeure event;

b)      Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid by the exercise of reasonable diligence;

c)      Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)      Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4      Amount of Compensation – Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)      The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)      Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5      No insurance will be arranged by Company for the benefit of Shipper.

6.6      Entire Liability – Except as set forth in in this  Section, Company shall not be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the  storage and handling of cargoes and/or this FCR.

6.7      Application of Defenses, Limits, and Exclusions of  Liability – The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action  be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of  negligence, willful misconduct, or fundamental breach of  contract.

6.8      By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.      INDEMNITY**

7.1.      Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties,  taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any  authority) arising out of Company acting in accordance with Ship  per's Instructions, or arising from a  breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or  Owner.

7.2.      Advice and information, in whatever form as may be  given by Company, are provided  by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.      Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made  Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit of  all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper  contracts for itself as well as agents for all the aforesaid persons.

7.4.      Shipper shall defend,  indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of  Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.      WAREHOUSING**

8.1      Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.      DECLARED VALUE**

9.1      Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously  given to and accepted by Company.  A mere statement or declaration of the value or nature of cargoes for  insurance or export  or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.      SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1      Shipper shall be liable  for any duties, taxes,  levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or  in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.      LIEN, DISPOSAL OF GOODS, ETC.**

11.1      Company shall have a general lien  on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control,  or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.   Company may at its sole discretion exercise its lien at any  time and at any place.  The lien shall  cover without limitation all charges, expenses, and advances of whatsoever nature due to  Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including but not limited to storage charges) and in recovering or attempting to recover  any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2      Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or  any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.   Company shall be entitled to claim the difference  against Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall survive delivery or deemed delivery of cargoes.

11.3      Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently  addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any  notice to Shipper or the Owner and payment or tender of the net proceeds of  any sale after deduction  of charges and expenses shall be equivalent to  delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4      The rights of Company under this Section are independent and cumulative.

**12.      RATES AND CHARGES**

12.1      Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any  claim, counterclaim, or set  -off.

12.2      Company at its discretion  may request an advance to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3      On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13.      NOTICE OF CLAIM**

13.1      Any claim against Company must be in writing  and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)      In the case of damage to goods, the date of delivery of cargoes;

b)      In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

c)      In any other case, the date of the event giving rise to the claim.

13.2      No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14.      TIME BAR**

14.1      Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice  thereof received by Company within three 3 months from the  date cargoes arrived at the destination or the date cargoes should have arrived  at the  destination (whichever  date is the earlier).

**15.      NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1      Shipper agrees that: (a) Company shall not accept any obligation for Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or  otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk  for the payment of costs and/or collection of the invoice price from  its customer and the consignee.

**16.      GOVERNING LAW**

16.1      These Conditions  and any act or contract to which they  apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.   Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-MUN-2400107**

| | |
|---|---|
| Maker/Supplier : **DEWAN & SONS** <br> **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | Maker/Supplier's INVOICE No. <br> **DS384-24** |
| Buyer/Consignee : **DURANT DC, LLC** <br> **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **June 19, 2024** |
| Shipment From : **MUNDRA**    To : **DURANT, OK** | Date of Receipt of Cargo <br> **June 19, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES                   NOTIFY PARTY: GEODIS
PO NO: 95268213                             5101 S. BROAD STREET
SKU NO: 810625001, 810732386                PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 550                              ATTN: ALENA LAMINA
MADE IN INDIA                     ALSO NOTIFY: EDRAY 2020 LLC.
                                            1300 SOUTH MINT STREET SUITE 200
                                            CHARLOTTE NC 28203 USA
                                            TEL: 704-593-6329
                                            EMAIL: DATAQUALITY@EDRAYCPL.COM

                                  CY-CY

                                  CRISTMAS ORNAMENT MADE OF IRON
                                  PO NO: 95268213
                                  SKU NO: 810625001, 810732386
                                  QTY: 2200
                                  GR.WT: 4180.000 KGS
                                  SB.NO: 1781092 DT. 19/06/2024

                                  *MORADABAD, UTTAR PRADESH 244001, INDIA

                                  SHIPPER'S LOAD, COUNT AND SEAL
                                  SAID TO CONTAIN
                                  CMAU4648594 (PART)       SEAL# R6170582        40H  DRY


                                  SHIP TO CODE & LOCATION : 00879-DURANT, OK
                                  SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                                  MATERIAL

                                  550 CARTONS                   42.174 CBM    4,180.00 KGS
                                  ================================================================
                                  TOTAL : FIVE HUNDRED FIFTY (550) CARTONS ONLY

                 "FREIGHT COLLECT"
SHIPMENT PER S.S. "OOCL BREMERHAVEN" VOY NO. 0VBHNW1MA   DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT July 6, 2024. CARGO RECEIVED ON June 19, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA    July 5, 2024 |
|---|---|

The Goods and instructions are accepted and dealt with subject to the
**YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard
Trading Conditions printed reverse side. Forwarding instructions can only
be cancelled or altered if the original of this document is surrendered to the
Company and then only provided the Company is still in a position to
comply with such cancellation or alteration. Instructions authorizing
disposal by a third party can only be cancelled or altered if the original of
this document is surrendered to the Company, and then only provided the
Company have not yet received instructions under the original authority.
The Company does not act as Carrier but a forwarding agent only.

(Place and date of issue.)
**YUSEN LOGISTICS**

For Yusen Logistics (India) Private Limited

Authorised Signatory
As Agent

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Authorized Signature)    V2

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-MUN-2400107**

| | | |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | Maker/Supplier's INVOICE No.<br>**DS384-24** |
| Buyer/Consignee : | **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **June 19, 2024** |
| Shipment From : | **MUNDRA**          To : **DURANT, OK** | Date of Receipt of Cargo<br>**June 19, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95268213                     5101 S. BROAD STREET
SKU NO: 810625001, 810732386        PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 550                      ATTN: ALENA LAMINA
MADE IN INDIA                ALSO NOTIFY: EDRAY 2020 LLC.
                                    1300 SOUTH MINT STREET SUITE 200
                                    CHARLOTTE NC 28203 USA
                                    TEL: 704-593-6329
                                    EMAIL: DATAQUALITY@EDRAYCPL.COM

                             CY-CY

                             CRISTMAS ORNAMENT MADE OF IRON
                             PO NO: 95268213
                             SKU NO: 810625001, 810732386
                             QTY: 2200
                             GR.WT: 4180.000 KGS
                             SB.NO: 1781092 DT. 19/06/2024

                             *MORADABAD, UTTAR PRADESH 244001, INDIA

                             SHIPPER'S LOAD, COUNT AND SEAL
                             SAID TO CONTAIN
                             CMAU4648594 (PART)    SEAL# R6170582        40H  DRY

                             SHIP TO CODE & LOCATION : 00879-DURANT, OK
                             SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                             MATERIAL

                             550 CARTONS              42.174 CBM    4,180.00 KGS
                             ================================================
                             TOTAL : FIVE HUNDRED FIFTY (550) CARTONS ONLY

                 "FREIGHT COLLECT"
SHIPMENT PER S.S. "OOCL BREMERHAVEN" VOY NO. 0VBHNW1MA    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT July 6, 2024. CARGO RECEIVED ON June 19, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA                    July 5, 2024 |
|---|---|
| **Non-Negotiable**<br><br>Copy | (Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br>As Agent<br>V2 |

Non-Negotiable Copy

Forwarders' Cargo Receipt
Terms and Conditions

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d)    The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h)    Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i)    The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k)    Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)    Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE PROVIDED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for inspection of the cargoes received.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation – Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability – Except as set forth in in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of Liability – The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7.    INDEMNITY**

7.1    Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2    Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3    Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub-contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4    Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3    Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2    Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13.    NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14.    TIME BAR**

14.1    Any right of action against Company shall be extinguished if suit is not brought in the proper forum and within notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-MUN-2400108**

| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | Maker/Supplier's INVOICE No.<br>**DS385-24** |
|---|---|---|
| Buyer/Consignee : | DURANT DC, LLC<br>2306 ENTERPRISE DR, DURANT, OK 74701, USA | Dated: **June 19, 2024** |
| Shipment From : | MUNDRA         To : DURANT, OK | Date of Receipt of Cargo<br>**June 19, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES               NOTIFY PARTY: GEODIS
PO NO: 95259318                  5101 S. BROAD STREET
SKU NO: 810641933, 810641963     PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 624                   ATTN: ALENA LAMINA
MADE IN INDIA                 ALSO NOTIFY: EDRAY 2020 LLC.
                                 1300 SOUTH MINT STREET SUITE 200
                                 CHARLOTTE NC 28203 USA
                                 TEL: 704-593-6329
                                 EMAIL: DATAQUALITY@EDRAYCPL.COM

                              CY-CY

                              OTHER ARTICLE/HANDICRAFTS OF ALUMINIUM
                              PO NO: 95259318
                              SKU NO: 810641933, 810641963
                              QTY: 2496
                              GR.WT: 2901.6 KGS
                              SB.NO: 1781090 DT. 19/06/2024

                              *MORADABAD, UTTAR PRADESH 244001, INDIA

                              SHIPPER'S LOAD, COUNT AND SEAL
                              SAID TO CONTAIN
                              CMAU4648594 (PART)     SEAL# R6170582      40H DRY

                              SHIP TO CODE & LOCATION : 00879-DURANT, OK
                              SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                              MATERIAL

                              624 CARTONS            23.908 CBM    2,901.60 KGS
                              ==================================================================
                              TOTAL : SIX HUNDRED TWENTY-FOUR (624) CARTONS ONLY
                                "FREIGHT COLLECT"
SHIPMENT PER S.S. "OOCL BREMERHAVEN" VOY NO. 0VBHNW1MA    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT July 6, 2024. CARGO RECEIVED ON June 19, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA                    July 5, 2024 |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br>For Yusen Logistics (India) Private Limited<br><br><br>**Authorised Signatory**                    As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V6 |

ORIGINAL

# Yusen Logistics

Yusen Logistics - Yusen Logistics                    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-MUN-2400108**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS** **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** | **DS385-24** |
| Buyer/Consignee : | **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **June 19, 2024** |
| Shipment From : | **MUNDRA**    To : **DURANT, OK** | Date of Receipt of Cargo **June 19, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES                 NOTIFY PARTY: GEODIS
PO NO: 95259318                    5101 S. BROAD STREET
SKU NO: 810641933, 810641963       PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 624                     ATTN: ALENA LAMINA
MADE IN INDIA                 ALSO NOTIFY: EDRAY 2020 LLC.
                                   1300 SOUTH MINT STREET SUITE 200
                                   CHARLOTTE NC 28203 USA
                                   TEL: 704-593-6329
                                   EMAIL: DATAQUALITY@EDRAYCPL.COM

                              CY-CY

                              OTHER ARTICLE/HANDICRAFTS OF ALUMINIUM
                              PO NO: 95259318
                              SKU NO: 810641933, 810641963
                              QTY: 2496
                              GR.WT: 2901.6 KGS
                              SB.NO: 1781090 DT. 19/06/2024

                              *MORADABAD, UTTAR PRADESH 244001, INDIA

                              SHIPPER'S LOAD, COUNT AND SEAL
                              SAID TO CONTAIN
                              CMAU4648594 (PART)    SEAL# R6170582    40H DRY

                              SHIP TO CODE & LOCATION : 00879-DURANT, OK
                              SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                              MATERIAL

      624 CARTONS                  23.908 CBM    2,901.60 KGS
      =================================================
      TOTAL : SIX HUNDRED TWENTY-FOUR (624) CARTONS ONLY

            "FREIGHT COLLECT"
SHIPMENT PER S.S. "OOCL BREMERHAVEN" VOY NO. 0VBHNW1MA    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT July 6, 2024. CARGO RECEIVED ON June 19, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA                    July 5, 2024 |
|---|---|
| **Non-Negotiable** | (Place and date of issue.) |
| Copy | **YUSEN LOGISTICS** |
| | As Agent |
| | V6 |

Non-Negotiable Copy

Forwarders' Cargo Receipt
Terms and Conditions

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate  entities issuing these Conditions in its  capacity as an origin services  provider for its customer who is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers'  Instructions received  in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering  items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written  shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection,  delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other  services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or   equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the   remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to  limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound by all stipulations, exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and  particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)    The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other  illegal material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h)    Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i)    The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values, and other   particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)    Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)    Delivery of Cargoes:  The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their  arrival at destination  and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal  with the Dangerous Goods.  Shipper's notice will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage  and handling of Dangerous Goods.  If any Dangerous Goods are tendered in  breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's  interest is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference  between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered  into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability  for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for  loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability – Except as set forth in in this  Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action  be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of   contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or third-parties.

7.2.    Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper  shall save harmless and indemnify and  keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided  by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend, indemnify, and hold harmless Company  from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion  of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in  writing were previously  given to and accepted by Company.  A mere statement or declaration of the value or  nature of cargoes for  insurance or export  or customs or  other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable  for any duties, taxes,  levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or  in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.  Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including but not limited  to storage charges) and in recovering or  attempting to recover  any sums due from Shipper  or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper  cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.  Company shall be entitled to  claim the difference against Shipper or the ultimate consignee  in the event that the (net) sale  proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall survive delivery or deemed delivery of cargoes.

11.3    Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently addressed  or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of  without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of  charges and expenses shall be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set  -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are  overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing and  delivered to Company  at its registered office or  its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14    TIME BAR**

14.1    Any right of action against Company shall be  extinguished  if suit is not brought in the proper forum and written notice  thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived  at the destination (whichever date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever  related to  Collect on Delivery (C.O.D.) shipments  and commensurate obligations  for collection of  bank drafts or  otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price  from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions  and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special Administrative Region.  Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the  courts of the Hong Kong Special Administrative Region.

Yusen Logistics - Yusen Logistics  # Yusen Logistics  Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400681**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS** **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | **DS397-24** |
| Buyer/Consignee : | **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **June 21, 2024** |
| Shipment From : | **NHAVA SHEVA**    To : **DURANT, OK** | Date of Receipt of Cargo **June 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95259318                   5101 S. BROAD STREET
SKU NO: 810641927, 810641961     PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 943                    ATTN: ALENA LAMINA
MADE IN INDIA                ALSO NOTIFY: EDRAY 2020 LLC.
                                 1300 SOUTH MINT STREET SUITE 200
                                 CHARLOTTE NC 28203 USA
                                 TEL: 704-593-6329
                                 EMAIL: DATAQUALITY@EDRAYCPL.COM

                             CFS-CY

                             OTHER ARTICLE/HANDICRAFTS OF ALUMINIUM
                             PO NO: 95259318
                             SKU NO: 810641927, 810641961
                             QTY: 4560
                             GR.WT: 2408.850 KGS
                             SB.NO: 1864209 DT. 22/06/2024

                             *MORADABAD, UTTAR PRADESH 244001, INDIA

                             FDCU0351920 (PART)      SEAL# IN1406215      40H  DRY

                             SHIP TO CODE & LOCATION : 00879-DURANT, OK
                             SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                             MATERIAL


                             943 CARTONS                  14.210 CBM    2,408.85 KGS
                             ========================================================
                             TOTAL : NINE HUNDRED FORTY-THREE (943) CARTONS ONLY

                "FREIGHT COLLECT"
SHIPMENT PER S.S. "ONE MAXIM" VOY NO. 070E    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT July 10, 2024. CARGO RECEIVED ON June 26, 2024.
```

**ORIGINAL**

| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**    **July 5, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** **For Yusen Logistics (India) Private Limited** Authorised Signatory                    As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V1 |

# Yusen Logistics

Yusen Logistics - Yusen Logistics    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400681**

| | |
|---|---|
| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** |
| Buyer/Consignee : | **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** |
| Shipment From : | **NHAVA SHEVA**    To : **DURANT, OK** |

Maker/Supplier's INVOICE No.
**DS397-24**

Dated: **June 21, 2024**

Date of Receipt of Cargo
**June 26, 2024**

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95259318<br>SKU NO: 810641927, 810641961<br>CARTON 1 - 943<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA | | |

BIG LOTS STORES                    NOTIFY PARTY: GEODIS
PO NO: 95259318                        5101 S. BROAD STREET
SKU NO: 810641927, 810641961          PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 943                        ATTN: ALENA LAMINA
MADE IN INDIA              ALSO NOTIFY: EDRAY 2020 LLC.
                                      1300 SOUTH MINT STREET SUITE 200
                                      CHARLOTTE NC 28203 USA
                                      TEL: 704-593-6329
                                      EMAIL: DATAQUALITY@EDRAYCPL.COM

                          CFS-CY

                          OTHER ARTICLE/HANDICRAFTS OF ALUMINIUM
                          PO NO: 95259318
                          SKU NO: 810641927, 810641961
                          QTY: 4560
                          GR.WT: 2408.850 KGS
                          SB.NO: 1864209 DT. 22/06/2024

                          *MORADABAD, UTTAR PRADESH 244001, INDIA

                          FDCU0351920 (PART)    SEAL# IN1406215        40H  DRY

                          SHIP TO CODE & LOCATION : 00879-DURANT, OK
                          SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                          MATERIAL

                          943 CARTONS                    14.210 CBM    2,408.85 KGS
                          =================================================
                          TOTAL : NINE HUNDRED FORTY-THREE (943) CARTONS ONLY

                          "FREIGHT COLLECT"
SHIPMENT PER S.S. "ONE MAXIM" VOY NO. 070E    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT July 10, 2024. CARGO RECEIVED ON June 26, 2024.

---

THIS IS NOT A DOCUMENT OF TITLE

## Non-Negotiable

Copy

NHAVA SHEVA                    July 5, 2024

(Place and date of issue.)

**YUSEN LOGISTICS**

As Agent

V1

Non-Negotiable Copy

Forwarders' Cargo Receipt
Terms and Conditions

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS. Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

h) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE OFFERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interest is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship pe's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly fo his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3 Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12. RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.   **CNS-NSA-2400680**

| | |
|---|---|
| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** |
| Buyer/Consignee : | **CLOSEOUT DISTRIBUTION, LLC**<br>**50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** |
| Shipment From : | **NHAVA SHEVA**       To : **TREMONT, PA** |

Maker/Supplier's INVOICE No.
**DS398-24**

Dated: **June 21, 2024**

Date of Receipt of Cargo
**June 27, 2024**

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95252804                   5101 S. BROAD STREET
SKU NO: 810729267, 810729278      PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 859                    ATTN: ALENA LAMINA
MADE IN INDIA                ALSO NOTIFY: EDRAY 2020 LLC.
                                  1300 SOUTH MINT STREET SUITE 200
                                  CHARLOTTE NC 28203 USA
                                  TEL: 704-593-6329
                                  EMAIL: DATAQUALITY@EDRAYCPL.COM

                             CFS-CY

                             OTHER ARTICLE/HANDICRAFTS OF ALUMINIUM CRISTMAS ORNAMENT
                             MADE OF IRON WITH ROPE
                             PO NO: 95252804
                             SKU NO: 810729267, 810729278
                             QTY: 3436
                             GR.WT: 3239.700 KGS
                             SB.NO: 1865452 DT. 22/06/2024

                             *MORADABAD, UTTAR PRADESH 244001, INDIA

                             FANU3144081 (PART)     SEAL# FANU3144081      40H  DRY

                             SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                             SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                             MATERIAL


                             859 CARTONS                 22.434 CBM    3,239.70 KGS
                             =================================================
                             TOTAL : EIGHT HUNDRED FIFTY-NINE (859) CARTONS ONLY
                             "FREIGHT COLLECT"
SHIPMENT PER S.S. "APL LE HAVRE" VOY NO. 4128   DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT July 17, 2024. CARGO RECEIVED ON June 27, 2024.
```

**ORIGINAL**

---

| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**                    **July 5, 2024** |
|---|---|

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

(Place and date of issue.)
**YUSEN LOGISTICS**

For Yusen Logistics (India) Private Limited

*Authorised Signatory*
As Agent

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Authorized Signature)       V1

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400680**

| | | |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | Maker/Supplier's INVOICE No.<br>**DS398-24** |
| Buyer/Consignee : | **CLOSEOUT DISTRIBUTION, LLC**<br>**50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **June 21, 2024** |
| Shipment From : | **NHAVA SHEVA**          To : **TREMONT, PA** | Date of Receipt of Cargo<br>**June 27, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES                  NOTIFY PARTY: GEODIS
PO NO: 95252804                     5101 S. BROAD STREET
SKU NO: 810729267, 810729278        PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 859                      ATTN: ALENA LAMINA
MADE IN INDIA                    ALSO NOTIFY: EDRAY 2020 LLC.
                                    1300 SOUTH MINT STREET SUITE 200
                                    CHARLOTTE NC 28203 USA
                                    TEL: 704-593-6329
                                    EMAIL: DATAQUALITY@EDRAYCPL.COM

                                 CFS-CY

                                 OTHER ARTICLE/HANDICRAFTS OF ALUMINIUM CRISTMAS ORNAMENT
                                 MADE OF IRON WITH ROPE
                                 PO NO: 95252804
                                 SKU NO: 810729267, 810729278
                                 QTY: 3436
                                 GR.WT: 3239.700 KGS
                                 SB.NO: 1865452 DT. 22/06/2024

                                 *MORADABAD, UTTAR PRADESH 244001, INDIA

                                 FANU3144081 (PART)      SEAL# FANU3144081      40H  DRY

                                 SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                                 SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                                 MATERIAL


             859 CARTONS                            22.434 CBM    3,239.70 KGS
             =====================================================================
             TOTAL : EIGHT HUNDRED FIFTY-NINE (859) CARTONS ONLY

             "FREIGHT COLLECT"
SHIPMENT PER S.S. "APL LE HAVRE" VOY NO. 4128   DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT July 17, 2024. CARGO RECEIVED ON June 27, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA                          July 5, 2024 |
|---|---|
| **Non-Negotiable**<br><br>Copy | (Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br>As Agent<br>V1 |

Non-Negotiable Copy

Forwarders' Cargo Receipt
Terms and Conditions

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:
   i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and
   ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;
b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;
c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or
d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation – Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:
a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or
b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability – The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or third-parties.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3 Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12. RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13. NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:
a) In the case of damage to goods, the date of delivery of cargoes;
b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and
c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and within notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-MUN-2400115**

| | |
|---|---|
| Maker/Supplier : **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** | Maker/Supplier's INVOICE No.<br>**DS401-24** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC**<br>**2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **June 22, 2024** |
| Shipment From : **MUNDRA**    To : **MONTGOMERY, AL** | Date of Receipt of Cargo<br>**July 04, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95299495<br>SKU NO: 810732985<br>CARTON 1 - 761<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>5101 S. BROAD STREET<br>PHILADELPHIA, PA 19112-1404, U.S.A.<br>ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>1300 SOUTH MINT STREET SUITE 200<br>CHARLOTTE NC 28203 USA<br>TEL: 704-593-6329<br>EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CY-CY<br><br>CRISTMAS ORNAMENT MADE OF IRON, OTHER ARTICLE/ HANDICRAFTS<br>OF ALUMINIUM<br>PO NO: 95299495<br>SKU NO: 810732985<br>QTY: 3044<br>GR.WT: 5783.6 KGS<br>SB.NO: 1879947  DT. 22/06/2024<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>HLBU2104605        SEAL# HLG5944028        40H  DRY<br><br>SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 761 CARTONS | | 58.353 CBM | 5,783.60 KGS |

======================================================
TOTAL : SEVEN HUNDRED SIXTY-ONE (761) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "APL LE HAVRE" VOY NO. 003W   DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT July 19, 2024. CARGO RECEIVED ON July 4, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **MUNDRA**                    **July 10, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>**For Yusen Logistics (India) Private Limited**<br><br>**Authorised Signatory**                    As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V2 |

ORIGINAL

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.          **CNS-MUN-2400115**

| | | |
|---|---|---|
| | | Maker/Supplier's INVOICE No. |
| Maker/Supplier : | **DEWAN & SONS** | **DS401-24** |
| | **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** | |
| | | Dated: **June 22, 2024** |
| Buyer/Consignee : | **CSC DISTRIBUTION, LLC** | |
| | **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Date of Receipt of Cargo |
| Shipment From : | **MUNDRA**          To : **MONTGOMERY, AL** | **July 04, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95299495                 5101 S. BROAD STREET
SKU NO: 810732985               PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 761                  ATTN: ALENA LAMINA
MADE IN INDIA            ALSO NOTIFY: EDRAY 2020 LLC.
                                1300 SOUTH MINT STREET SUITE 200
                                CHARLOTTE NC 28203 USA
                                TEL: 704-593-6329
                                EMAIL: DATAQUALITY@EDRAYCPL.COM

                         CY-CY

                         CRISTMAS ORNAMENT MADE OF IRON, OTHER ARTICLE/ HANDICRAFTS
                         OF ALUMINIUM
                         PO NO: 95299495
                         SKU NO: 810732985
                         QTY: 3044
                         GR.WT: 5783.6 KGS
                         SB.NO: 1879947  DT. 22/06/2024

                         *MORADABAD, UTTAR PRADESH 244001, INDIA

                         SHIPPER'S LOAD, COUNT AND SEAL
                         SAID TO CONTAIN
                         HLBU2104605          SEAL# HLG5944028          40H  DRY


                         SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                         SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                         MATERIAL
                         761 CARTONS                      58.353 CBM      5,783.60 KGS
                         ================================================================
                         TOTAL : SEVEN HUNDRED SIXTY-ONE (761) CARTONS ONLY

                         "FREIGHT COLLECT"
SHIPMENT PER S.S. "APL LE HAVRE" VOY NO. 003W   DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT July 19, 2024. CARGO RECEIVED ON July 4, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | |
|---|---|
| | **MUNDRA**                    **July 10, 2024** |
| **Non-Negotiable** | (Place and date of issue.) |
| Copy | **YUSEN LOGISTICS** |
| | As Agent |
| | **V2** |

Forwarders' Cargo Receipt
Terms and Condition

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d)    The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS.

h)    Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS. Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

        i)    The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

        ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k)    Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)    Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE PROVIDED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability – Except as set forth in in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.    Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3    Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2    Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13.    NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14.    TIME BAR**

14.1    Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics        Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.        **CNS-MUN-2400109**

| | |
|---|---|
| Maker/Supplier : **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | Maker/Supplier's INVOICE No.<br>**DS402-24** |
| Buyer/Consignee : **BIG LOTS STORES, LLC**<br>**500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated: **June 22, 2024** |
| Shipment From : **MUNDRA**        To : **COLUMBUS, OH** | Date of Receipt of Cargo<br>**June 25, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95299498<br>SKU NO: 810732985<br>CARTON 1 - 750<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>5101 S. BROAD STREET<br>PHILADELPHIA, PA 19112-1404, U.S.A.<br>ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>1300 SOUTH MINT STREET SUITE 200<br>CHARLOTTE NC 28203 USA<br>TEL: 704-593-6329<br>EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CY-CY<br><br>CRISTMAS ORNAMENT MADE OF IRON<br>PO NO: 95299498<br>SKU NO: 810732985<br>QTY: 3000<br>GR.WT: 5700.000 KGS<br>SB.NO: 1879944 DT. 22/06/2024<br><br>\*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>FCIU7345703        SEAL# HLG5944187        40H DRY<br><br>SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 750 CARTONS | | 57.510 CBM | 5,700.00 KGS |

TOTAL : SEVEN HUNDRED FIFTY (750) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "TENO" VOY NO. 4127W    DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT July 16, 2024. CARGO RECEIVED ON June 25, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA        **July 5, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>**For Yusen Logistics (India) Private Limited**<br><br>**Authorised Signatory**        As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)        V1 |

ORIGINAL

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.          **CNS-MUN-2400109**

| | | |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | Maker/Supplier's INVOICE No.<br>**DS402-24** |
| Buyer/Consignee : | **BIG LOTS STORES, LLC**<br>**500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated: **June 22, 2024** |
| Shipment From : | **MUNDRA**          To : **COLUMBUS, OH** | Date of Receipt of Cargo<br>**June 25, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95299498                   5101 S. BROAD STREET
SKU NO: 810732985                 PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 750                    ATTN: ALENA LAMINA
MADE IN INDIA             ALSO NOTIFY: EDRAY 2020 LLC.
                                  1300 SOUTH MINT STREET SUITE 200
                                  CHARLOTTE NC 28203 USA
                                  TEL: 704-593-6329
                                  EMAIL: DATAQUALITY@EDRAYCPL.COM

                             CY-CY

                             CRISTMAS ORNAMENT MADE OF IRON
                             PO NO: 95299498
                             SKU NO: 810732985
                             QTY: 3000
                             GR.WT: 5700.000 KGS
                             SB.NO: 1879944 DT. 22/06/2024

                             *MORADABAD, UTTAR PRADESH 244001, INDIA

                             SHIPPER'S LOAD, COUNT AND SEAL
                             SAID TO CONTAIN
                             FCIU7345703         SEAL# HLG5944187        40H DRY

                             SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH
                             SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                             MATERIAL

                             750 CARTONS              57.510 CBM    5,700.00 KGS
                             ======================================================
                             TOTAL : SEVEN HUNDRED FIFTY (750) CARTONS ONLY

                 "FREIGHT COLLECT"
SHIPMENT PER S.S. "TENO" VOY NO. 4127W     DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT July 16, 2024. CARGO RECEIVED ON June 25, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA          July 5, 2024 |
|---|---|
| **Non-Negotiable**<br><br>Copy | (Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br>As Agent<br>V1 |

Non-Negotiable Copy

Forwarders' Cargo Receipt
Terms and Conditions

**1.      DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management International trading or any of its affiliate  entities issuing these Conditions in its  capacity as an origin services  provider for its customer who  is the ultimate consignee of this shipment.

1.2.    "Conditions" means  the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers'  Instructions received  in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering  items to Company for Services and any person at whose request  or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific  written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection,  delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.      COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the  remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever therefo  re, whether in tort, bailment, or otherwise.

**3.      SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound by all stipulations, exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the  Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and  particulars relating to the  cargoes set out on the front hereof:  (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)    The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other illegal  material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h)    Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company,  have been properly and sufficiently packed and/or prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

      i)    The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

      ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)    Fitness of Cargoes: The cargoes are fit  and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related,  or incidental to Shipper's Instructions.

l)    Delivery of Cargoes: The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their  arrival at destination and shall  pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.      DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods. Shipper's notice  will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods.  If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.      COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE OFFERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's  interest or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.   Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered  into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.      LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation -- Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability -- Except as set forth in in this Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of  contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.      INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties,  taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority)  arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.    Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend,  indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub  -contractors.

**8.      WAREHOUSING**

8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion  of Company and the cost therefore shall be for the account of Shipper.

**9.      DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously  given to and accepted by Company.  A mere statement or declaration of the value or nature of cargoes for  insurance or export  or customs or  other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.      SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable  for any duties, taxes, levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.      LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.   Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including but not limited to storage charges) and in recovering or  attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place)  at the costs of Shipper cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.  Company shall be entitled to claim the difference against Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3    Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently  addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after  deduction of charges and expenses shall be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12.      RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set  -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13.      NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14.      TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice  thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived  at the destination (whichever  date is the earlier).

**15.      NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank  drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.      GOVERNING LAW**

16.1    These Conditions and any act or contract to which they apply  shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

Yusen Logistics - Yusen Logistics    # Yusen Logistics    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-MUN-2400110**

| | |
|---|---|
| Maker/Supplier : **DEWAN & SONS** | Maker/Supplier's INVOICE No. |
| **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** | **DS403-24** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC** | Dated: **June 22, 2024** |
| **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Date of Receipt of Cargo |
| Shipment From : **MUNDRA**    To : **TREMONT, PA** | **July 04, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95299496<br>SKU NO: 810732985<br>CARTON 1 - 644<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>    1300 SOUTH MINT STREET SUITE 200<br>    CHARLOTTE NC 28203 USA<br>    TEL: 704-593-6329<br>    EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CY-CY<br><br>CHIRTMAS ORNAMENT MADE OF IRON<br>PO NO: 95299496<br>SKU NO: 810732985<br>QTY: 2576<br>GR.WT: 4894.4 KGS<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>SEGU5463521 (PART)    SEAL# HLG5944211    40H  DRY<br><br>SHIP TO CODE & LOCATION : 00874-TREMONT, PA<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 644 CARTONS | | 49.382 CBM | 4,894.40 KGS |

==================================================================
TOTAL : SIX HUNDRED FORTY-FOUR (644) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "TENO" VOY NO. 4127W    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT July 16, 2024. CARGO RECEIVED ON July 4, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA               **July 5, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>**For Yusen Logistics (India) Private Limited**<br><br>Authorised Signatory<br>                        As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)        V1 |

Yusen Logistics - Yusen Logistics

# Yusen Logistics

Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-MUN-2400110**

| Maker/Supplier : | DEWAN & SONS | Maker/Supplier's INVOICE No. |
|---|---|---|
| | LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | **DS403-24** |
| Buyer/Consignee : | CLOSEOUT DISTRIBUTION, LLC | Dated: **June 22, 2024** |
| | 50 RAUSCH CREEK RD, TREMONT, PA 17981, USA | Date of Receipt of Cargo |
| Shipment From : | MUNDRA        To : TREMONT, PA | **July 04, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95299496                  5101 S. BROAD STREET
SKU NO: 810732985                PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 644                   ATTN: ALENA LAMINA
MADE IN INDIA            ALSO NOTIFY: EDRAY 2020 LLC.
                                 1300 SOUTH MINT STREET SUITE 200
                                 CHARLOTTE NC 28203 USA
                                 TEL: 704-593-6329
                                 EMAIL: DATAQUALITY@EDRAYCPL.COM

                        CY-CY

                        CHIRTMAS ORNAMENT MADE OF IRON
                        PO NO: 95299496
                        SKU NO: 810732985
                        QTY: 2576
                        GR.WT: 4894.4 KGS

                        *MORADABAD, UTTAR PRADESH 244001, INDIA

                        SHIPPER'S LOAD, COUNT AND SEAL
                        SAID TO CONTAIN
                        SEGU5463521 (PART)      SEAL# HLG5944211      40H  DRY

                        SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                        SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                        MATERIAL


                        644 CARTONS                49.382 CBM    4,894.40 KGS
                        =======================================================
                        TOTAL : SIX HUNDRED FORTY-FOUR (644) CARTONS ONLY
                        "FREIGHT COLLECT"
SHIPMENT PER S.S. "TENO" VOY NO. 4127W    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT July 16, 2024. CARGO RECEIVED ON July 4, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA        July 5, 2024 |
|---|---|
| **Non-Negotiable** | (Place and date of issue.) |
| Copy | **YUSEN LOGISTICS** |
| | As Agent |
| | V1 |

Non-Negotiable Copy

**1.    DEFINITIONS**

1.1.   "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate  entities issuing these Conditions in its  capacity as an origin services  provider for its customer who is the ultimate consignee of this shipment.

1.2.   "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers' Instructions received  in writing at the time of receipt.

1.3.   "Shipper" means the vendor tendering  items to Company for Services and any person  at whose request or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.   "Shippers' Instructions" means any of Shipper's specific  written shipping instructions or  requirements delivered to Company at the time of receipt  of the cargoes.

1.5.   "Laws" means any laws, statutes, regulations, or conventions  which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.   "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other  services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.   "Owner" means the owner of the cargoes (including any packings, containers, or   equipment other than those provided by Customer or carriers) to which any business concluded  under these Conditions relate s and any other person who is or may become interested in them depending  upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1   In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services,  those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the   remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2   Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3   Any and all advice information or Services provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1   Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound by all stipulations,  exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the  Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and  particulars relating to the  cargoes set out on the front hereof:  (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)    The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other illegal  material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling,  and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide the total gross mass established  using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS.  Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance  with SOLAS.

h)    Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company,  have been properly and sufficiently packed and/or  prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or   insufficiently packed or prepared, no matter how such loss or damage is caused.

i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i)     The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and

ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)    Fitness of Cargoes: The cargoes are fit  and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)    Delivery of Cargoes: The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their  arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1   Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods.  Shipper's notice  will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and  method of storage and handling of the Dangerous Goods.

4.2   Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3   Additional charges may apply to the storage and handling of Dangerous Goods.  If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1   SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE PROVIDED SOLELY AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests  or is expedient.

5.3   Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4   Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5   Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6   Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7   Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered  into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1   SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2   Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3   Liability for  Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4   Amount of Compensation – Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5   No insurance will be arranged by Company for the benefit of Shipper.

6.6   Entire Liability – Except as set forth in in this  Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7   Application of Defenses, Limits, and Exclusions of  Liability – The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be  founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of  contract.

6.8   By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.   Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority)  arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.   Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided gratuitously and without liability.

7.3.   Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made  Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit.  For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.   Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of  the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or  sub -contractors.

**8.    WAREHOUSING**

8.1   Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of  Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1   Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously  given to and accepted by Company.  A mere statement or declaration of the value or  nature of cargoes for  insurance or export  or customs or  other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.   SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1  Shipper shall be liable  for any duties, taxes,  levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.   LIEN, DISPOSAL OF GOODS, ETC.**

11.1  Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.   Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including but not limited to storage charges) and in recovering or  attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2  Company shall be entitled to sell (at any time and at any place)  at the costs of Shipper cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.  Company shall be entitled to claim the difference  against Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall survive delivery or deemed delivery of cargoes.  Perishable cargoes which are not  taken up immediately upon arrival or which are  insufficiently addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of  any sale after deduction of charges and expenses shall be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.3

11.4  The rights of Company under this Section are independent and cumulative.

**12.   RATES AND CHARGES**

12.1  Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set  -off.

12.2  Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3  On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue  until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13.   NOTICE OF CLAIM**

13.1  Any claim against Company must be in writing  and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2  No action shall lie against Company if  the claim is not made within the  times and in the manner specified herein.

**14.   TIME BAR**

14.1  Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice  thereof received by Company within three  3 months from the date cargoes  arrived at the destination or the date cargoes should have arrived  at the destination (whichever  date is the earlier).

**15.   NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1  Shipper agrees that:  (a) Company shall have no obligation  to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.   GOVERNING LAW**

16.1  These Conditions  and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.        **CNS-MUN-2400111**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | **DS404-24** |
| Buyer/Consignee : | CLOSEOUT DISTRIBUTION, LLC<br>50 RAUSCH CREEK RD, TREMONT, PA 17981, USA | Dated: **June 22, 2024** |
| Shipment From : | MUNDRA          To : TREMONT, PA | Date of Receipt of Cargo<br>**July 04, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95252804<br>SKU NO: 810729279, 810729285<br>CARTON 1 - 604<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>        5101 S. BROAD STREET<br>        PHILADELPHIA, PA 19112-1404, U.S.A.<br>        ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>        1300 SOUTH MINT STREET SUITE 200<br>        CHARLOTTE NC 28203 USA<br>        TEL: 704-593-6329<br>        EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>        CY-CY<br><br>OTHER ARTICLE/HANDICRAFTS OF ALUMINIUM CRISTMAS ORNAMENT<br>MADE OF IRON<br>WITH ROPE<br>PO NO: 95252804<br>SKU NO: 810729279, 810729285<br>QTY: 3284<br>GR.WT: 2191.800 KGS<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>SEGU5463521 (PART)    SEAL# HLG5944211        40H DRY<br><br>SHIP TO CODE & LOCATION : 00874-TREMONT, PA<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL<br><br>604 CARTONS | | 18.376 CBM | 2,191.80 KGS |

==========================================================
TOTAL : SIX HUNDRED FOUR (604) CARTONS ONLY

            "FREIGHT COLLECT"
SHIPMENT PER S.S. "TENO" VOY NO. 4127W    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT July 16, 2024. CARGO RECEIVED ON July 4, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA | **July 5, 2024** |
|---|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>For Yusen Logistics (India) Private Limited<br><br>Authorised Signatory          As Agent | |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)        V1 | |

ORIGINAL

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-MUN-2400111**

| Maker/Supplier : | DEWAN & SONS |
| | LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* |
| Buyer/Consignee : | CLOSEOUT DISTRIBUTION, LLC |
| | 50 RAUSCH CREEK RD, TREMONT, PA 17981, USA |
| Shipment From : | MUNDRA          To : TREMONT, PA |

Maker/Supplier's INVOICE No.
**DS404-24**

Dated: **June 22, 2024**

Date of Receipt of Cargo
**July 04, 2024**

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES                NOTIFY PARTY: GEODIS
PO NO: 95252804                     5101 S. BROAD STREET
SKU NO: 810729279, 810729285        PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 604                      ATTN: ALENA LAMINA
MADE IN INDIA              ALSO NOTIFY: EDRAY 2020 LLC.
                                    1300 SOUTH MINT STREET SUITE 200
                                    CHARLOTTE NC 28203 USA
                                    TEL: 704-593-6329
                                    EMAIL: DATAQUALITY@EDRAYCPL.COM

                           CY-CY

                           OTHER ARTICLE/HANDICRAFTS OF ALUMINIUM CRISTMAS ORNAMENT
                           MADE OF IRON
                           WITH ROPE
                           PO NO: 95252804
                           SKU NO: 810729279, 810729285
                           QTY: 3284
                           GR.WT: 2191.800 KGS

                           *MORADABAD, UTTAR PRADESH 244001, INDIA

                           SHIPPER'S LOAD, COUNT AND SEAL
                           SAID TO CONTAIN
                           SEGU5463521 (PART)      SEAL# HLG5944211      40H  DRY

                           SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                           SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                           MATERIAL

                           604 CARTONS                    18.376 CBM    2,191.80 KGS
                           ===================================================
                           TOTAL : SIX HUNDRED FOUR (604) CARTONS ONLY
                                "FREIGHT COLLECT"
SHIPMENT PER S.S. "TENO" VOY NO. 4127W    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT July 16, 2024. CARGO RECEIVED ON July 4, 2024.
```

Non-Negotiable Copy

| THIS IS NOT A DOCUMENT OF TITLE | |
|---|---|
| **Non-Negotiable** | MUNDRA                July 5, 2024 |
| Copy | (Place and date of issue.) |
| | **YUSEN LOGISTICS** |
| | As Agent |
| | V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate  entities issuing these Conditions in its  capacity as an origin services  provider for its customer who  is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers'  Instructions received  in writing at the time of  receipt.

1.3.    "Shipper" means the vendor tendering  items to Company for Services and  any person at whose request  or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific  written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations,  or conventions  which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection,  delivery, local transportation, insurance, customs clearance, packing,   unpacking, and other  handling of goods and  other services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or   equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them  depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services, those provisions,  to the extent of such  inconsistency,  shall  be null and void in relation to such element of the Services by Company, but the   remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of  any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever therefo  re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:
a)    By accepting these Conditions, Shipper  agrees to be bound  by all stipulations,  exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;
b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the  Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;
c)    The description and  particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;
d)    The cargoes contain no drugs, prohibited  or stolen goods, contraband, or  other illegal  material or substance or stowaways;
e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing,  stowage, labelling, and/or  marking are appropriate to the storage, handling, and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;
f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;
g)    Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS.  Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.
h)    Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company,  have been properly and sufficiently packed and/or prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.
i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit designed to hold cargoes (each hereafter referred to as a "transport unit") then:
     i)    The transport unit is in good condition, is suitable to carry the goods loaded therein  or  thereon, and is suitable for the intended carriage and other handling; and
     ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.
j)    Description of Cargoes: All descriptions, values, and other   particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.
k)    Fitness of Cargoes: The cargoes are fit  and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.
l)    Delivery of Cargoes: The consignee or  other person entitled to the  delivery of the goods shall  take delivery of the goods upon their  arrival at destination  and shall  pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods. Shipper's notice  will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable  Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods.  If any Dangerous Goods are tendered in  breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's  interest  is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference  between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.   Company is authorized (but not obliged) to  consolidate or  arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered  into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

a)    A force majeure event;
b)    Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid by the exercise of reasonable diligence;
c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or
d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for  loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:
a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or
b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability -- Except as set forth in in this  Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of  or  in connection with the Services (including  loss or damage to cargoes) and whether the action be  founded in contract, bailment, tort, breach of express or  implied warranty, or  otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of  contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties,  taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.    Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper  shall save harmless and indemnify and  keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.   Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided  by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper  contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend,  indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of  Company under the terms of these Conditions,  and without prejudice to the generality of  the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the  Owner at any place at the sole discretion of  Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in  writing were previously  given to and accepted by Company.   A mere statement or  declaration of the value or  nature of cargoes for  insurance or export  or customs or  other purposes is not and shall  not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable  for any duties, taxes, levies, deposits, or outlays of any kind levied  by the authorities at any port or  place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.   Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of whatsoever  nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including  but not limited to storage charges) and in recovering or  attempting to recover  any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or  any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.   Company shall be entitled to  claim the difference  against Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall  survive delivery or  deemed delivery of cargoes. Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently  addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of  without any notice to Shipper or the Owner and payment or tender of  the net proceeds of any sale after deduction of charges and expenses shall be equivalent to  delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.3    Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently  addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of  without any notice to Shipper or the Owner and payment or tender of  the net proceeds of any sale after deduction of charges and expenses shall be equivalent to  delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the   payment of all charges owed to Company in  performance of the Services at origin for its benefit.   Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any  claim, counterclaim, or set  -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before  Shipper's invoice is rendered.   Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13.    NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:
a)    In the case of damage to goods, the date of delivery of cargoes;
b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and
c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14.    TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived  at the destination (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that:  (a) Company shall have no obligations for Shipper whatsoever  related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions  and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.        **CNS-NSA-2400783**

| | | |
|---|---|---|
| | | Maker/Supplier's INVOICE No. |
| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | **DS450-24** |
| Buyer/Consignee : | CLOSEOUT DISTRIBUTION, LLC<br>50 RAUSCH CREEK RD, TREMONT, PA 17981, USA | Dated: **July 03, 2024** |
| Shipment From : | NHAVA SHEVA          To : TREMONT, PA | Date of Receipt of Cargo<br>**July 09, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95301010<br>SKU NO: 810603809, 810603846,<br>810603856, 810607072<br>CARTON 1 - 750<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>    1300 SOUTH MINT STREET SUITE 200<br>    CHARLOTTE NC 28203 USA<br>    TEL: 704-593-6329<br>    EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>OTHER HANDICRAFTS OF ALUMINIUM WITH IRON TABLE KITCHEN OR<br>OTHER HOUSEHOLD ARTICLE OF MANGO WOOD<br>PO NO: 95301010<br>SKU NO: 810603809, 810603846, 810603856, 810607072<br>QTY: 2400<br>GR.WT: 1446.000 KGS<br>SB.NO: 2156756 DT. 03/07/2024<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>UETU5610836 (PART)      SEAL# OOLJSC2217      40H  DRY<br><br>SHIP TO CODE & LOCATION : 00874-TREMONT, PA<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 750 CARTONS | | 10.529 CBM | 1,446.00 KGS |

==============================================================
TOTAL : SEVEN HUNDRED FIFTY (750) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "APL SOUTHAMPTON" VOY NO. 418W   DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT August 18, 2024. CARGO RECEIVED ON July 9, 2024.

---

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA          **August 2, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>For Yusen Logistics (India) Private Limited<br><br>Authorised Signatory<br>As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)          V3 |

ORIGINAL

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-NSA-2400783**

| | |
|---|---|
| | Maker/Supplier's INVOICE No. |
| Maker/Supplier : **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** | **DS450-24** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC**<br>**50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated : **July 03, 2024** |
| Shipment From : **NHAVA SHEVA**       To : **TREMONT, PA** | Date of Receipt of Cargo<br>**July 09, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES             NOTIFY PARTY: GEODIS
PO NO: 95301010                           5101 S. BROAD STREET
SKU NO: 810603809, 810603846,             PHILADELPHIA, PA 19112-1404, U.S.A.
810603856, 810607072                      ATTN: ALENA LAMINA
CARTON 1 - 750           ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN INDIA                             1300 SOUTH MINT STREET SUITE 200
                                          CHARLOTTE NC 28203 USA
                                          TEL: 704-593-6329
                                          EMAIL: DATAQUALITY@EDRAYCPL.COM

                         CFS-CY

                         OTHER HANDICRAFTS OF ALUMINIUM WITH IRON TABLE KITCHEN OR
                         OTHER HOUSEHOLD ARTICLE OF MANGO WOOD
                         PO NO: 95301010
                         SKU NO: 810603809, 810603846, 810603856, 810607072
                         QTY: 2400
                         GR.WT: 1446.000 KGS
                         SB.NO: 2156756 DT. 03/07/2024

                         *MORADABAD, UTTAR PRADESH 244001, INDIA

                         UETU5610836 (PART)      SEAL# OOLJSC2217        40H  DRY

                         SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                         SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                         MATERIAL


                         750 CARTONS                    10.529 CBM    1,446.00 KGS
                         =======================================================
                         TOTAL : SEVEN HUNDRED FIFTY (750) CARTONS ONLY

              "FREIGHT COLLECT"
SHIPMENT PER S.S. "APL SOUTHAMPTON" VOY NO. 418W   DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT August 18, 2024. CARGO RECEIVED ON July 9, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA            August 2, 2024 |
|---|---|
| **Non-Negotiable**<br><br>Copy | (Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br>As Agent<br>V3 |

**Non-Negotiable Copy**

Forwarders' Cargo Receipt
Terms and Conditions

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing,   unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or   equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are   inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the   remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound by all stipulations, exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and  particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d)    The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS. Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or  prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

h)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i)     The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

i)    Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

j)    Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

k)    Delivery of Cargoes: The consignee or  other person entitled to the delivery of the goods shall take delivery of the goods upon their  arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods.  Shipper's notice  will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and to so comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE PROVIDED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Company's commercial interests is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or  arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is unable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability – Except as set forth in this Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of  contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without   limitation all duties,  taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.    Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing  purposes, Shipper  contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend, indemnify, and hold harmless Company from  and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously given to and accepted  by Company.  A mere statement or declaration of the value or nature of cargoes for insurance or export or  customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.  Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of whatsoever  nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its lien (including  but not limited to storage charges) and in recovering or attempting to recover  any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.   Company shall be entitled to claim the difference against Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3    Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2    Company at its discretion may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing  and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14    TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice  thereof received by Company within three  3 months from the date cargoes arrived at the destination or the date cargoes should have arrived  at the destination (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company  shall have no obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions  and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.          **CNS-NSA-2400749**

| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | Maker/Supplier's INVOICE No.<br>**DS451-24** |
|---|---|---|
| Buyer/Consignee : | BIG LOTS STORES, LLC<br>500 PHILLIPI RD, COLUMBUS, OH 43228, USA | Dated: **July 03, 2024** |
| Shipment From : | NHAVA SHEVA          To : COLUMBUS, OH | Date of Receipt of Cargo<br>**July 09, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95301011<br>SKU NO: 810603809, 810603846,<br>810603856, 810607072<br>CARTON 1 - 750<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>          5101 S. BROAD STREET<br>          PHILADELPHIA, PA 19112-1404, U.S.A.<br>          ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>          1300 SOUTH MINT STREET SUITE 200<br>          CHARLOTTE NC 28203 USA<br>          TEL: 704-593-6329<br>          EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANOGO WOOD,<br>OTHER ARTICLE OF ALUMINIU WITH IRON<br>PO NO: 95301011<br>SKU NO: 810603809, 810603846,810603856, 810607072<br>QTY: 2400<br>GR.WT: 1446.000 KGS<br>SB.NO: 2156746 DT. 03/07/2024<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>TCNU5956632 (PART)          SEAL# R6148636          40H  DRY<br><br>SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 750 CARTONS | | 10.529 CBM | 1,446.00 KGS |
| | ================================================== | | | |
| | TOTAL : SEVEN HUNDRED FIFTY (750) CARTONS ONLY | | | |

                    "FREIGHT COLLECT"
SHIPMENT PER S.S. "SEASPAN GANGES" VOY NO. 0INHHW1MA   DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT August 1, 2024. CARGO RECEIVED ON July 9, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**          **July 22, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>For Yusen Logistics (India) Private Limited<br><br>**Authorised Signatory**          As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)          V1 |

ORIGINAL

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.      **CNS-NSA-2400749**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS** | **DS451-24** |
| | **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** | |
| Buyer/Consignee : | **BIG LOTS STORES, LLC** | Dated : **July 03, 2024** |
| | **500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Date of Receipt of Cargo |
| Shipment From : | **NHAVA SHEVA**          To : **COLUMBUS, OH** | **July 09, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES                 NOTIFY PARTY: GEODIS
PO NO: 95301011                     5101 S. BROAD STREET
SKU NO: 810603809, 810603846,       PHILADELPHIA, PA 19112-1404, U.S.A.
810603856, 810607072                ATTN: ALENA LAMINA
CARTON 1 - 750                  ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN INDIA                       1300 SOUTH MINT STREET SUITE 200
                                    CHARLOTTE NC 28203 USA
                                    TEL: 704-593-6329
                                    EMAIL: DATAQUALITY@EDRAYCPL.COM

                                CFS-CY

                                TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANOGO WOOD,
                                OTHER ARTICLE OF ALUMINIU WITH IRON
                                PO NO: 95301011
                                SKU NO: 810603809, 810603846,810603856, 810607072
                                QTY: 2400
                                GR.WT: 1446.000 KGS
                                SB.NO: 2156746 DT. 03/07/2024

                                *MORADABAD, UTTAR PRADESH 244001, INDIA

                                TCNU5956632 (PART)      SEAL# R6148636          40H  DRY

                                SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH
                                SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                                MATERIAL


                                750 CARTONS                 10.529 CBM     1,446.00 KGS
                                ===================================================
                                TOTAL : SEVEN HUNDRED FIFTY (750) CARTONS ONLY
```

"FREIGHT COLLECT"

SHIPMENT PER S.S. "SEASPAN GANGES" VOY NO. 0INHHW1MA   DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT August 1, 2024. CARGO RECEIVED ON July 9, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | |
|---|---|
| **Non-Negotiable** | **NHAVA SHEVA**                **July 22, 2024** |
| | (Place and date of issue.) |
| Copy | **YUSEN LOGISTICS** |
| | As Agent |
| | V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

Forwarders Cargo Receipt
Terms and Conditions

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services  provider for its customer who  is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers' Instructions received  in writing at the time of  receipt.

1.3.    "Shipper" means the vendor tendering  items to Company for Services and any person  at whose request  or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions  or requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations,  or conventions which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery,  local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other services  intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the  remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever therefo  re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound by all stipulations, exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the  Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and  particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)    The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage,  handling, and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance  with SOLAS. Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

h)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i)    The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and

ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

i)    Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

j)    Fitness of Cargoes: The cargoes are fit  and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

k)    Delivery of Cargoes: The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their  arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods.  Shipper's notice  will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and  method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and to do so comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods.  If any Dangerous Goods are tendered in  breach of this Section, they may, at any time or  place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDERTAKE CONSIDERATIONS IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND COMPANY WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES OFFERED BY COMPANY AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's  interest or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or  arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered  into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY:  (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, in which Company is unable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for  loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability -- Except as set forth in in this Section, Company shall not be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of  contract.

6.8    By special arrangement which  must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship pe's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.    Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions  were expressly for his or its benefit.  For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend, indemnify, and  hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of  Company under the terms of these Conditions,  and without prejudice to the generality  of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously  given to and accepted by Company.  A mere statement or  declaration of the value or  nature of cargoes for  insurance or export  or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable  for any duties, taxes,  levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or  in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.  Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates  and inclusive of any costs incurred enforcing  and preserving its lien (including  but not limited to storage charges) and in recovering or  attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or  any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.  Company shall be entitled to claim the difference against Shipper  or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall survive delivery or  deemed delivery of cargoes.

11.3    Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently  addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or  tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any  claim, counterclaim, or set  -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14    TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and  written notice  thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived  at the destination (whichever  date is the earlier).

**15    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16    GOVERNING LAW**

16.1    These Conditions  and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics

Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400707**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | DEWAN & SONS | **DS477-24** |
| | LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | |
| Buyer/Consignee : | DURANT DC, LLC | Dated: **July 04, 2024** |
| | 2306 ENTERPRISE DR, DURANT, OK 74701, USA | |
| Shipment From : | NHAVA SHEVA    To : DURANT, OK | Date of Receipt of Cargo<br>**July 10, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95399575<br>SKU NO: 810745643<br>CARTON 1 - 253<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>    1300 SOUTH MINT STREET SUITE 200<br>    CHARLOTTE NC 28203 USA<br>    TEL: 704-593-6329<br>    EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>CHRISTMAS ORNAMENT MADE OF IRON<br>PO NO: 95399575<br>SKU NO: 810745643<br>QTY: 1012<br>GR.WT: 1922.800 KGS<br>SB.NO: 2178452 DT. 04/07/2024<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>TEMU7413001 (PART)    SEAL# IN1629539    40H DRY<br><br>SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 253 CARTONS | | 19.885 CBM | 1,922.80 KGS |

===================================================================
TOTAL : TWO HUNDRED FIFTY-THREE (253) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "ONE MAXIM" VOY NO. 070E    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT July 18, 2024. CARGO RECEIVED ON July 10, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA    **July 11, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>For Yusen Logistics (India) Private Limited<br><br><br>Authorised Signatory<br>                      As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)    V1 |

ORIGINAL

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-NSA-2400707**

| | |
|---|---|
| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** |
| Buyer/Consignee : | **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** |
| Shipment From : | **NHAVA SHEVA**     To : **DURANT, OK** |

Maker/Supplier's INVOICE No.
**DS477-24**

Dated : **July 04, 2024**

Date of Receipt of Cargo
**July 10, 2024**

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95399575                  5101 S. BROAD STREET
SKU NO: 810745643                PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 253                   ATTN: ALENA LAMINA
MADE IN INDIA            ALSO NOTIFY: EDRAY 2020 LLC.
                                 1300 SOUTH MINT STREET SUITE 200
                                 CHARLOTTE NC 28203 USA
                                 TEL: 704-593-6329
                                 EMAIL: DATAQUALITY@EDRAYCPL.COM

                         CFS-CY

                         CHRISTMAS ORNAMENT MADE OF IRON
                         PO NO: 95399575
                         SKU NO: 810745643
                         QTY: 1012
                         GR.WT: 1922.800 KGS
                         SB.NO: 2178452 DT. 04/07/2024

                         *MORADABAD, UTTAR PRADESH 244001, INDIA

                         TEMU7413001 (PART)    SEAL# IN1629539      40H  DRY

                         SHIP TO CODE & LOCATION : 00879-DURANT, OK
                         SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                         MATERIAL


                         253 CARTONS              19.885 CBM    1,922.80 KGS
                         ==================================================
                         TOTAL : TWO HUNDRED FIFTY-THREE (253) CARTONS ONLY

                         "FREIGHT COLLECT"
SHIPMENT PER S.S. "ONE MAXIM" VOY NO. 070E    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT July 18, 2024. CARGO RECEIVED ON July 10, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**     **July 11, 2024** |
|---|---|
| **Non-Negotiable**<br><br>Copy | (Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br>As Agent<br>V1 |

**Non-Negotiable**

Copy

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d)    The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS. Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

h)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i)    The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k)    Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)    Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and to so comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE PROVIDED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Company's interest is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is unable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability -- Except as set forth in in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8    By special arrangement which must be confirmed in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship pe's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.    Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3    Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2    Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13.    NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c)    In any other case, the event giving rise to the claim.

13.2    No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14.    TIME BAR**

14.1    Any right of action against Company shall be extinguished if suit is not brought in the proper forum and within notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company when provided its obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.          **CNS-NSA-2400844**

| | | |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD***  | Maker/Supplier's INVOICE No.<br>**DS485-24** |
| Buyer/Consignee : | **AVDC, LLC**<br>**18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated:   **July 05, 2024** |
| Shipment From : | **NHAVA SHEVA**          To : **APPLE VALLEY, CA** | Date of Receipt of Cargo<br>**July 13, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95320748<br>SKU NO:<br>810747542,810747573,810748059<br>CARTON  1 - 426<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>5101 S. BROAD STREET<br>PHILADELPHIA, PA 19112-1404, U.S.A.<br>ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>1300 SOUTH MINT STREET SUITE 200<br>CHARLOTTE NC 28203 USA<br>TEL: 704-593-6329<br>EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANGO WOOD, IRON<br>PO NO: 95320748<br>SKU NO: 810747542,810747573,810748059<br>QTY: 1074<br>SB.NO: 2320980 DT.10/07/2024<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>FCIU8634296 (PART)     SEAL# R6183665          40H  DRY<br><br>SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 426 CARTONS | | 13.280 CBM | 1,367.25 KGS |

==============================================================
TOTAL : FOUR HUNDRED TWENTY-SIX (426) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "CMA CGM LA SCALA" VOY NO. 0INHVW1MA   DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT September 15, 2024. CARGO RECEIVED ON July 13, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA                    **August 20, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>**For Yusen Logistics (India) Private Limited**<br><br>**Authorised Signatory**          As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)          V4 |

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400844**

| | |
|---|---|
| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** |
| Buyer/Consignee : | **AVDC, LLC**<br>**18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** |
| Shipment From : | **NHAVA SHEVA**     To : **APPLE VALLEY, CA** |

Maker/Supplier's INVOICE No.
**DS485-24**

Dated :   **July 05, 2024**

Date of Receipt of Cargo
**July 13, 2024**

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES            NOTIFY PARTY: GEODIS
PO NO: 95320748                5101 S. BROAD STREET
SKU NO:                        PHILADELPHIA, PA 19112-1404, U.S.A.
810747542,810747573,810748059  ATTN: ALENA LAMINA
CARTON 1 - 426             ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN INDIA                 1300 SOUTH MINT STREET SUITE 200
                              CHARLOTTE NC 28203 USA
                              TEL: 704-593-6329
                              EMAIL: DATAQUALITY@EDRAYCPL.COM

                           CFS-CY

                           TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANGO WOOD, IRON
                           PO NO: 95320748
                           SKU NO: 810747542,810747573,810748059
                           QTY: 1074
                           SB.NO: 2320980 DT.10/07/2024

                           *MORADABAD, UTTAR PRADESH 244001, INDIA

                           FCIU8634296 (PART)    SEAL# R6183665         40H  DRY

                           SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA
                           SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                           MATERIAL


                           426 CARTONS              13.280 CBM    1,367.25 KGS
                           ==================================================
                           TOTAL : FOUR HUNDRED TWENTY-SIX (426) CARTONS ONLY
                           "FREIGHT COLLECT"
SHIPMENT PER S.S. "CMA CGM LA SCALA" VOY NO. 0INHVW1MA   DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT September 15, 2024. CARGO RECEIVED ON July 13, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA          **August 20, 2024** |
|---|---|
| **Non-Negotiable**<br><br>Copy | (Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br>                                      As Agent<br>V4 |

Non-Negotiable Copy

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

Forwarders Cargo Receipt
Terms and Conditions

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE BEING PROVIDED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interest is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is unable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability -- Except as set forth in in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship pe's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3 Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12. RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and within notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400753**

| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | Maker/Supplier's INVOICE No.<br>**DS486-24** |
|---|---|---|
| Buyer/Consignee : | **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated:  **July 05, 2024** |
| Shipment From : | **NHAVA SHEVA**          To : **DURANT, OK** | Date of Receipt of Cargo<br>**July 13, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95320751<br>SKU NO: 810747542, 810747573,<br>810748059<br>CARTON 1 - 323<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>  5101 S. BROAD STREET<br>  PHILADELPHIA, PA 19112-1404, U.S.A.<br>  ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>  1300 SOUTH MINT STREET SUITE 200<br>  CHARLOTTE NC 28203 USA<br>  TEL: 704-593-6329<br>  EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANGO WOOD, IRON<br>PO NO: 95320751<br>SKU NO: 810747542, 810747573, 810748059<br>QTY: 762<br>GR.WT: 1106.000 KGS<br>SB.NO: 2318156 DT. 10/07/2024<br><br>\*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>NYKU5238310 (PART)      SEAL# IN1482866      40H  DRY<br><br>SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 323 CARTONS | | 11.706 CBM | 1,106.00 KGS |

============================================================

TOTAL : THREE HUNDRED TWENTY-THREE (323) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "EVER SAFETY" VOY NO. 114E    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT August 10, 2024. CARGO RECEIVED ON July 13, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**                    **July 26, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>**For Yusen Logistics (India) Private Limited**<br><br>**Authorised Signatory**<br>                                     As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                 V1 |

ORIGINAL

# Yusen Logistics

Yusen Logistics - Yusen Logistics        Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400753**

| Maker/Supplier : | **DEWAN & SONS** **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** | Maker/Supplier's INVOICE No. **DS486-24** |
| Buyer/Consignee : | **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **July 05, 2024** |
| Shipment From : | **NHAVA SHEVA**        To : **DURANT, OK** | Date of Receipt of Cargo **July 13, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES                 NOTIFY PARTY: GEODIS
PO NO: 95320751                    5101 S. BROAD STREET
SKU NO: 810747542, 810747573,     PHILADELPHIA, PA 19112-1404, U.S.A.
810748059                         ATTN: ALENA LAMINA
CARTON 1 - 323                  ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN INDIA                     1300 SOUTH MINT STREET SUITE 200
                                  CHARLOTTE NC 28203 USA
                                  TEL: 704-593-6329
                                  EMAIL: DATAQUALITY@EDRAYCPL.COM

                               CFS-CY

                               TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANGO WOOD, IRON
                               PO NO: 95320751
                               SKU NO: 810747542, 810747573, 810748059
                               QTY: 762
                               GR.WT: 1106.000 KGS
                               SB.NO: 2318156 DT. 10/07/2024

                               *MORADABAD, UTTAR PRADESH 244001, INDIA

                               NYKU5238310 (PART)    SEAL# IN1482866        40H  DRY

                               SHIP TO CODE & LOCATION : 00879-DURANT, OK
                               SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                               MATERIAL


       323 CARTONS                    11.706 CBM    1,106.00 KGS
       =================================================================
       TOTAL : THREE HUNDRED TWENTY-THREE (323) CARTONS ONLY

       "FREIGHT COLLECT"
```

SHIPMENT PER S.S. "EVER SAFETY" VOY NO. 114E    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT August 10, 2024. CARGO RECEIVED ON July 13, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**        **July 26, 2024** |
| **Non-Negotiable** Copy | (Place and date of issue.) **YUSEN LOGISTICS** |
| | As Agent |
| | V1 |

Non-Negotiable Copy

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the  remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

    a)    By accepting these Conditions, Shipper  agrees to be bound by all stipulations, exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

    b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

    c)    The description and  particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

    d)    The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

    e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

    f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

    g)    Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS.  Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

    h)    Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

    i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

        i)    The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and

        ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

    j)    Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

    k)    Fitness of Cargoes: The cargoes are fit  and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

    l)    Delivery of Cargoes: The consignee or  other person entitled to the delivery of the goods shall take delivery of the goods upon their  arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods.  Shipper's notice  will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods.  If any Dangerous Goods are tendered in  breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE OFFERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interest is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered  into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for  Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability  for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

    a)    A force majeure event;

    b)    Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is unable to avoid by the exercise of reasonable diligence;

    c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

    d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

    a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

    b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability -- Except as set forth in this Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of  contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship pe's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.    Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper  shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in connection with any Services provided or to be provided  by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend,  indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub  -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of  Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously given to and accepted by Company.  A mere statement or  declaration of the value or  nature of cargoes for  insurance or export  or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable  for any duties, taxes, levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.  Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including but not limited to storage charges) and in recovering or attempting to recover  any sums due from Shipper or the ultimate consignee (whether  in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.  Company shall be entitled to  claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall survive delivery or  deemed delivery of cargoes.

11.3    Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without  any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set  -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1    Any claim against Company  must be in writing and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

    a)    In the case of damage to goods, the date of delivery of cargoes;

    b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

    c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14    TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice  thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived  at the destination (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company shall not undertake any obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions  and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.      **CNS-NSA-2400763**

| | |
|---|---|
| Maker/Supplier : **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | Maker/Supplier's INVOICE No.<br>**DS487-24**<br><br>Dated: **July 05, 2024** |
| Buyer/Consignee : **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Date of Receipt of Cargo<br>**July 19, 2024** |
| Shipment From : **NHAVA SHEVA**          To : **DURANT, OK** | |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95399836<br>SKU NO: 810745369<br>CARTON 1 - 277<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>    1300 SOUTH MINT STREET SUITE 200<br>    CHARLOTTE NC 28203 USA<br>    TEL: 704-593-6329<br>    EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>CHRITMAS ORNAMENT MADE OF MARBLE, ALUMINIUM AND IRON<br>PO NO: 95399836<br>SKU NO: 810745369<br>QTY: 277<br>GR.WT: 1073.375 KGS<br>SB.NO: 2318020 DT. 10/07/2024<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>NYKU5238310 (PART)      SEAL# IN1482866      40H  DRY<br><br>SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 277 CARTONS | | 6.611 CBM | 1,073.58 KGS |

TOTAL : TWO HUNDRED SEVENTY-SEVEN (277) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "EVER SAFETY" VOY NO. 114E    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT August 10, 2024. CARGO RECEIVED ON July 19, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**          **July 29, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>For Yusen Logistics (India) Private Limited<br><br>Authorised Signatory<br>                                        As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)          V1 |

ORIGINAL

# Yusen Logistics

Yusen Logistics - Yusen Logistics                    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400763**

| | |
|---|---|
| Maker/Supplier : **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | Maker/Supplier's INVOICE No.<br>**DS487-24** |
| Buyer/Consignee : **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **July 05, 2024** |
| Shipment From : **NHAVA SHEVA**          To : **DURANT, OK** | Date of Receipt of Cargo<br>**July 19, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95399836                  5101 S. BROAD STREET
SKU NO: 810745369                PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 277                   ATTN: ALENA LAMINA
MADE IN INDIA            ALSO NOTIFY: EDRAY 2020 LLC.
                                 1300 SOUTH MINT STREET SUITE 200
                                 CHARLOTTE NC 28203 USA
                                 TEL: 704-593-6329
                                 EMAIL: DATAQUALITY@EDRAYCPL.COM

                         CFS-CY

                         CHRITMAS ORNAMENT MADE OF MARBLE, ALUMINIUM AND IRON
                         PO NO: 95399836
                         SKU NO: 810745369
                         QTY: 277
                         GR.WT: 1073.375 KGS
                         SB.NO: 2318020 DT. 10/07/2024

                         *MORADABAD, UTTAR PRADESH 244001, INDIA

                         NYKU5238310 (PART)      SEAL# IN1482866          40H  DRY


                         SHIP TO CODE & LOCATION : 00879-DURANT, OK
                         SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                         MATERIAL


                         277 CARTONS                    6.611 CBM      1,073.58 KGS
                         =============================================================
                         TOTAL : TWO HUNDRED SEVENTY-SEVEN (277) CARTONS ONLY

                         "FREIGHT COLLECT"
SHIPMENT PER S.S. "EVER SAFETY" VOY NO. 114E    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT August 10, 2024. CARGO RECEIVED ON July 19, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**                    **July 29, 2024** |
|---|---|
| **Non-Negotiable**<br><br>Copy | (Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br>As Agent |

V1

Non-Negotiable Copy

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS. Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE PROVIDED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interest is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is unable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation – Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability – The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3 Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12. RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13. NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company shall not perform to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400845**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | **DS517-24** |
| Buyer/Consignee : | **CSC DISTRIBUTION, LLC**<br>**2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **July 11, 2024** |
| Shipment From : | **NHAVA SHEVA**         To : **MONTGOMERY, AL** | Date of Receipt of Cargo<br>**July 24, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95320749<br>SKU NO: 810747542, 810747573,<br>810748059<br>CARTON 1 - 387<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>        5101 S. BROAD STREET<br>        PHILADELPHIA, PA 19112-1404, U.S.A.<br>        ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>        1300 SOUTH MINT STREET SUITE 200<br>        CHARLOTTE NC 28203 USA<br>        TEL: 704-593-6329<br>        EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANGO WOOD, IRON<br>PO NO: 95320749<br>SKU NO: 810747542, 810747573, 810748059<br>QTY: 886<br>GR.WT: 1360.900<br>SB.NO: 2568461 DT. 20/07/2024<br><br>\*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>BEAU4016208 (PART)    SEAL# R6222128        40H DRY<br><br>SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL<br><br>387 CARTONS | | 14.997 CBM | 1,360.90 KGS |

==================================================================
TOTAL : THREE HUNDRED EIGHTY-SEVEN (387) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "CMA CGM PELLEAS" VOY NO. 0INHPW1MA    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT August 25, 2024. CARGO RECEIVED ON July 24, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA                    **August 20, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>**For Yusen Logistics (India) Private Limited**<br><br>**Authorised Signatory**<br>                                                    As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V3 |

ORIGINAL

# Yusen Logistics

Yusen Logistics - Yusen Logistics    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400845**

| | |
|---|---|
| Maker/Supplier : **DEWAN & SONS** <br> **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | Maker/Supplier's INVOICE No. <br> **DS517-24** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC** <br> **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **July 11, 2024** |
| Shipment From : **NHAVA SHEVA**         To : **MONTGOMERY, AL** | Date of Receipt of Cargo <br> **July 24, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES                 NOTIFY PARTY: GEODIS
PO NO: 95320749                     5101 S. BROAD STREET
SKU NO: 810747542, 810747573,      PHILADELPHIA, PA 19112-1404, U.S.A.
810748059                          ATTN: ALENA LAMINA
CARTON 1 - 387               ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN INDIA                      1300 SOUTH MINT STREET SUITE 200
                                   CHARLOTTE NC 28203 USA
                                   TEL: 704-593-6329
                                   EMAIL: DATAQUALITY@EDRAYCPL.COM

                             CFS-CY

                             TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANGO WOOD, IRON
                             PO NO: 95320749
                             SKU NO: 810747542, 810747573, 810748059
                             QTY: 886
                             GR.WT: 1360.900
                             SB.NO: 2568461 DT. 20/07/2024

                             *MORADABAD, UTTAR PRADESH 244001, INDIA

                             BEAU4016208 (PART)     SEAL# R6222128          40H  DRY


                             SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                             SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                             MATERIAL


                             387 CARTONS              14.997 CBM    1,360.90 KGS
                             ==================================================
                             TOTAL : THREE HUNDRED EIGHTY-SEVEN (387) CARTONS ONLY
                             "FREIGHT COLLECT"
SHIPMENT PER S.S. "CMA CGM PELLEAS" VOY NO. 0INHPW1MA   DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT August 25, 2024. CARGO RECEIVED ON July 24, 2024.
```

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE <br><br> **Non-Negotiable** <br><br> Copy | **NHAVA SHEVA**            **August 20, 2024** <br><br> (Place and date of issue.) <br><br> **YUSEN LOGISTICS** <br><br><br> As Agent <br> V3 |

Non-Negotiable Copy

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:
   i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and
   ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and to so comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is unable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship pe's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3 Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12. RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13. NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:
a) In the case of damage to goods, the date of delivery of cargoes;
b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and
c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400784**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | **DS518-24** |
| Buyer/Consignee : | CLOSEOUT DISTRIBUTION, LLC<br>50 RAUSCH CREEK RD, TREMONT, PA 17981, USA | Dated:   **July 11, 2024** |
| Shipment From : | NHAVA SHEVA          To : TREMONT, PA | Date of Receipt of Cargo<br>**July 19, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95320750<br>SKU NO: 810747542,<br>810747573, 810748059<br>CARTON 1 - 494<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>            5101 S. BROAD STREET<br>            PHILADELPHIA, PA 19112-1404, U.S.A.<br>            ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>            1300 SOUTH MINT STREET SUITE 200<br>            CHARLOTTE NC 28203 USA<br>            TEL: 704-593-6329<br>            EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANGO WOOD, IRON<br>PO NO: 95320750<br>SKU NO: 810747542, 810747573, 810748059<br>QTY: 1192<br>GR.WT: 1656.300  KGS<br>SB.NO: 2483725 DT. 17/07/2024<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>BEAU4459823 (PART)      SEAL# HLG6279096      40H  DRY<br><br>SHIP TO CODE & LOCATION : 00874-TREMONT, PA<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 494 CARTONS | | 15.261 CBM | 1,656.30 KGS |
| | ======================================================= | | | |
| | TOTAL : FOUR HUNDRED NINETY-FOUR (494) CARTONS ONLY | | | |

              "FREIGHT COLLECT"
SHIPMENT PER S.S. "TUCAPEL" VOY NO. 4133    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT August 21, 2024. CARGO RECEIVED ON July 19, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA                    **August 2, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>**For Yusen Logistics (India) Private Limited**<br><br>**Authorised Signatory**<br>                                                        As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V4 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.          **CNS-NSA-2400784**

| | | |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | Maker/Supplier's INVOICE No.<br>**DS518-24** |
| Buyer/Consignee : | **CLOSEOUT DISTRIBUTION, LLC**<br>**50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated:  **July 11, 2024** |
| Shipment From : | **NHAVA SHEVA**          To : **TREMONT, PA** | Date of Receipt of Cargo<br>**July 19, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95320750                   5101 S. BROAD STREET
SKU NO: 810747542,                PHILADELPHIA, PA 19112-1404, U.S.A.
810747573, 810748059              ATTN: ALENA LAMINA
CARTON 1 -  494          ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN INDIA                     1300 SOUTH MINT STREET SUITE 200
                                  CHARLOTTE NC 28203 USA
                                  TEL: 704-593-6329
                                  EMAIL: DATAQUALITY@EDRAYCPL.COM

                         CFS-CY

                         TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANGO WOOD, IRON
                         PO NO: 95320750
                         SKU NO: 810747542, 810747573, 810748059
                         QTY: 1192
                         GR.WT: 1656.300  KGS
                         SB.NO: 2483725 DT. 17/07/2024

                         *MORADABAD, UTTAR PRADESH 244001, INDIA

                         BEAU4459823 (PART)      SEAL# HLG6279096      40H  DRY

                         SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                         SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                         MATERIAL


                         494 CARTONS              15.261 CBM    1,656.30 KGS
                         =========================================================
                         TOTAL : FOUR HUNDRED NINETY-FOUR (494) CARTONS ONLY

                "FREIGHT COLLECT"
SHIPMENT PER S.S. "TUCAPEL" VOY NO. 4133    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT August 21, 2024. CARGO RECEIVED ON July 19, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**          **August 2, 2024** |
|---|---|
| **Non-Negotiable**<br><br>Copy | (Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br>As Agent<br>V4 |

Non-Negotiable Copy

Forwarders Cargo Receipt
Terms and Conditions

**1.    DEFINITIONS**
1.1.    "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.
1.2.    "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.
1.3.    "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.
1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.
1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.
1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.
1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**
2.1    In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.
2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.
2.3    Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**
3.1    Shipper warrants as follows:
    a)    By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;
    b)    By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;
    c)    The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;
    d)    The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;
    e)    The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;
    f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;
    g)    Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS. Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.
    i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:
        i)    The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and
        ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.
    j)    Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.
    k)    Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.
    l)    Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**
4.1    Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.
4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.
4.3    Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**
5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.
5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Company's interest is expedient.
5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.
5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.
5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.
5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.
5.7    Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**
6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.
6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.
6.3    Liability for Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

    a)    A force majeure event;
    b)    Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is unable to avoid by the exercise of reasonable diligence;
    c)    Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or
    d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.
6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:
    a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or
    b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.
6.5    No insurance will be arranged by Company for the benefit of Shipper.
6.6    Entire Liability -- Except as set forth in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.
6.7    Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.
6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7.    INDEMNITY**
7.1    Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship pe's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.
7.2    Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.
7.3    Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.
7.4    Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**
8.1    Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**
9.1    Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**
10.1    Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**
11.1    Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).
11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.
11.3    Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.
11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**
12.1    Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.
12.2    Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.
12.3    On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**
13.1    Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:
    a)    In the case of damage to goods, the date of delivery of cargoes;
    b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and
    c)    In any other case, the date of the event giving rise to the claim.
13.2    No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14    TIME BAR**
14.1    Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**
15.1    Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**
16.1    These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.      **CNS-NSA-2400805**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | **DS519-24** |
| Buyer/Consignee : | BIG LOTS STORES, LLC<br>500 PHILLIPI RD, COLUMBUS, OH 43228, USA | Dated: **July 11, 2024** |
| Shipment From : | NHAVA SHEVA          To : COLUMBUS, OH | Date of Receipt of Cargo<br>**July 20, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95320752<br>SKU NO: 810747542,<br>810747573, 810748059<br>CARTON 1 - 397<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>          5101 S. BROAD STREET<br>          PHILADELPHIA, PA 19112-1404, U.S.A.<br>          ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>          1300 SOUTH MINT STREET SUITE 200<br>          CHARLOTTE NC 28203 USA<br>          TEL: 704-593-6329<br>          EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANGO WOOD, IRON<br>PO NO: 95320752<br>SKU NO: 810747542, 810747573, 810748059<br>QTY: 906<br>GR.WT: 1399.900 KGS<br>SB.NO: 2515816 DT. 18/07/2024<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>OOCU6447743 (PART)     SEAL# OOLJSC2212     40H  DRY<br><br>SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 397 CARTONS | | 15.410 CBM | 1,399.90 KGS |

===========================================================================

TOTAL : THREE HUNDRED NINETY-SEVEN (397) CARTONS ONLY

          "FREIGHT COLLECT"

SHIPMENT PER S.S. "APL SOUTHAMPTON" VOY NO. 418W   DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT August 18, 2024. CARGO RECEIVED ON July 20, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA                    **August 9, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>**For Yusen Logistics (India) Private Limited**<br><br><br>**Authorised Signatory**<br>As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)          V3 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.          **CNS-NSA-2400805**

| | |
|---|---|
| Maker/Supplier : **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** | Maker/Supplier's INVOICE No.<br>**DS519-24** |
| Buyer/Consignee : **BIG LOTS STORES, LLC**<br>**500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated: **July 11, 2024** |
| Shipment From : **NHAVA SHEVA**          To : **COLUMBUS, OH** | Date of Receipt of Cargo<br>**July 20, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES                    NOTIFY PARTY: GEODIS
PO NO: 95320752                         5101 S. BROAD STREET
SKU NO: 810747542,                      PHILADELPHIA, PA 19112-1404, U.S.A.
810747573, 810748059                    ATTN: ALENA LAMINA
CARTON 1 - 397                     ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN INDIA                           1300 SOUTH MINT STREET SUITE 200
                                        CHARLOTTE NC 28203 USA
                                        TEL: 704-593-6329
                                        EMAIL: DATAQUALITY@EDRAYCPL.COM

                                   CFS-CY

                                   TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANGO WOOD, IRON
                                   PO NO: 95320752
                                   SKU NO: 810747542, 810747573, 810748059
                                   QTY: 906
                                   GR.WT: 1399.900 KGS
                                   SB.NO: 2515816 DT. 18/07/2024

                                   *MORADABAD, UTTAR PRADESH 244001, INDIA

                                   OOCU6447743 (PART)      SEAL# OOLJSC2212       40H  DRY

                                   SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH
                                   SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                                   MATERIAL


      397 CARTONS                       15.410 CBM     1,399.90 KGS
      ========================================================================
      TOTAL : THREE HUNDRED NINETY-SEVEN (397) CARTONS ONLY
```

"FREIGHT COLLECT"

```
SHIPMENT PER S.S. "APL SOUTHAMPTON" VOY NO. 418W   DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT August 18, 2024. CARGO RECEIVED ON July 20, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA                    **August 9, 2024** |
|---|---|
| **Non-Negotiable**<br><br>Copy | (Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br>As Agent<br>**V3** |

Non-Negotiable Copy

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1. In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2. Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3. Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1. Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS. Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

h) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

i) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

j) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

k) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1. Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2. Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3. Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1. SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2. Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3. Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4. Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5. Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6. Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7. Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1. SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2. Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3. Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, in respect of which Company is unable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4. Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5. No insurance will be arranged by Company for the benefit of Shipper.

6.6. Entire Liability – Except as set forth in in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7. Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8. By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1. Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1. Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1. Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1. Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2. Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3. Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4. The rights of Company under this Section are independent and cumulative.

**12. RATES AND CHARGES**

12.1. Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2. Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3. On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13. NOTICE OF CLAIM**

13.1. Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the event giving rise to the claim.

13.2. No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1. Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1. Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1. These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400806**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | **DS528-24** |
| Buyer/Consignee : | BIG LOTS STORES, LLC<br>500 PHILLIPI RD, COLUMBUS, OH 43228, USA | Dated: **July 11, 2024** |
| Shipment From : | NHAVA SHEVA    To : COLUMBUS, OH | Date of Receipt of Cargo<br>**July 22, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95399837<br>SKU NO: 810745369<br>CARTON 1 - 362<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>    1300 SOUTH MINT STREET SUITE 200<br>    CHARLOTTE NC 28203 USA<br>    TEL: 704-593-6329<br>    EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>CHRISTMAS ORNAMENT MADE OF MARBLE, ALUMINIUM AND IRON<br>PO NO: 95399837<br>SKU NO: 810745369<br>QTY: 362<br>GR.WT: 1402.750 KGS<br>SB.NO: 2378594 DT. 12/07/2024<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>HLBU1066434 (PART)    SEAL# HLG6335897    40H DRY<br><br>SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 362 CARTONS | | 9.033 CBM | 1,402.75 KGS |

==================================================================
TOTAL : THREE HUNDRED SIXTY-TWO (362) CARTONS ONLY

      "FREIGHT COLLECT"
SHIPMENT PER S.S. "TUCAPEL" VOY NO. 4133    DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT August 19, 2024. CARGO RECEIVED ON July 22, 2024.

---

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA        **August 9, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>For Yusen Logistics (India) Private Limited<br><br><br>*Authorised Signatory*<br>                            As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)        V3 |

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400806**

| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* |
|---|---|
| Buyer/Consignee : | BIG LOTS STORES, LLC<br>500 PHILLIPI RD, COLUMBUS, OH 43228, USA |
| Shipment From : | NHAVA SHEVA            To : COLUMBUS, OH |

| Maker/Supplier's INVOICE No. |
|---|
| **DS528-24** |
| Dated:    **July 11, 2024** |
| Date of Receipt of Cargo |
| **July 22, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

BIG LOTS STORES
PO NO: 95399837
SKU NO: 810745369
CARTON 1 - 362
MADE IN INDIA

NOTIFY PARTY: GEODIS
          5101 S. BROAD STREET
          PHILADELPHIA, PA 19112-1404, U.S.A.
          ATTN: ALENA LAMINA
ALSO NOTIFY: EDRAY 2020 LLC.
          1300 SOUTH MINT STREET SUITE 200
          CHARLOTTE NC 28203 USA
          TEL: 704-593-6329
          EMAIL: DATAQUALITY@EDRAYCPL.COM

CFS-CY

CHRISTMAS ORNAMENT MADE OF MARBLE, ALUMINIUM AND IRON
PO NO: 95399837
SKU NO: 810745369
QTY: 362
GR.WT: 1402.750 KGS
SB.NO: 2378594 DT. 12/07/2024

*MORADABAD, UTTAR PRADESH 244001, INDIA

HLBU1066434 (PART)      SEAL# HLG6335897      40H  DRY

SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH
SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
MATERIAL

362 CARTONS                    9.033 CBM      1,402.75 KGS
=================================================
TOTAL : THREE HUNDRED SIXTY-TWO (362) CARTONS ONLY

          "FREIGHT COLLECT"
SHIPMENT PER S.S. "TUCAPEL" VOY NO. 4133      DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT August 19, 2024. CARGO RECEIVED ON July 22, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | |
|---|---|
| **Non-Negotiable**<br><br>Copy | NHAVA SHEVA            **August 9, 2024**<br><br>(Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br>As Agent<br>V3 |

Non-Negotiable Copy

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d)    The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS. Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i)    The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k)    Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)    Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE OFFERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interest or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is unable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with Instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability – Except as set forth in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship pe's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.    Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub-contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3    Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2    Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14    TIME BAR**

14.1    Any right of action against Company shall be extinguished if suit is not brought in the proper forum and within notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.          **CNS-NSA-2400846**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | **DS529-24** |
| Buyer/Consignee : | **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated : **July 11, 2024** |
| Shipment From : | **NHAVA SHEVA**        To : **DURANT, OK** | Date of Receipt of Cargo<br>**August 14, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES            NOTIFY PARTY: GEODIS
PO NO: 95415354               5101 S. BROAD STREET
SKU NO: 810745653, 810745731  PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON  1 - 520               ATTN: ALENA LAMINA
MADE IN INDIA              ALSO NOTIFY: EDRAY 2020 LLC.
                              1300 SOUTH MINT STREET SUITE 200
                              CHARLOTTE NC 28203 USA
                              TEL: 704-593-6329
                              EMAIL: DATAQUALITY@EDRAYCPL.COM

                           CFS-CY

                           CHRISTMAS ORNAMENT MADE OF IRON WITH ROPE
                           PO NO: 95415354
                           SKU NO: 810745653, 810745731
                           QTY: 2080
                           GR.WT: 1768 KGS
                           SB.NO: 2378745 DT. 12/07/2024

                           *MORADABAD, UTTAR PRADESH 244001, INDIA

                           TCLU6755907 (PART)     SEAL# INA249735        40H  DRY


                           SHIP TO CODE & LOCATION : 00879-DURANT, OK
                           SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                           MATERIAL


                           520 CARTONS              10.175 CBM    1,768.00 KGS
                           ==================================================
                           TOTAL : FIVE HUNDRED TWENTY (520) CARTONS ONLY
              "FREIGHT COLLECT"
SHIPMENT PER S.S. "ONE MAJESTY" VOY NO. 015E   DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT August 29, 2024. CARGO RECEIVED ON August 14, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**                **August 20, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>**For Yusen Logistics (India) Private Limited**<br><br><br>**Authorised Signatory**<br>                                    As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V3 |

ORIGINAL

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-NSA-2400846**

| | |
|---|---|
| Maker/Supplier : | **DEWAN & SONS** **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** |
| Buyer/Consignee : | **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** |
| Shipment From : | **NHAVA SHEVA**          To : **DURANT, OK** |

Maker/Supplier's INVOICE No.
**DS529-24**

Dated: **July 11, 2024**

Date of Receipt of Cargo
**August 14, 2024**

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES                NOTIFY PARTY: GEODIS
PO NO: 95415354                    5101 S. BROAD STREET
SKU NO: 810745653, 810745731       PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON  1 - 520                    ATTN: ALENA LAMINA
MADE IN INDIA               ALSO NOTIFY: EDRAY 2020 LLC.
                                   1300 SOUTH MINT STREET SUITE 200
                                   CHARLOTTE NC 28203 USA
                                   TEL: 704-593-6329
                                   EMAIL: DATAQUALITY@EDRAYCPL.COM

                           CFS-CY

                           CHRISTMAS ORNAMENT MADE OF IRON WITH ROPE
                           PO NO: 95415354
                           SKU NO: 810745653, 810745731
                           QTY: 2080
                           GR.WT: 1768 KGS
                           SB.NO: 2378745 DT. 12/07/2024

                           *MORADABAD, UTTAR PRADESH 244001, INDIA

                           TCLU6755907 (PART)      SEAL# INA249735          40H  DRY

                           SHIP TO CODE & LOCATION : 00879-DURANT, OK
                           SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                           MATERIAL

                           520 CARTONS                10.175 CBM    1,768.00 KGS
                           ========================================================
                           TOTAL : FIVE HUNDRED TWENTY (520) CARTONS ONLY

                               "FREIGHT COLLECT"
SHIPMENT PER S.S. "ONE MAJESTY" VOY NO. 015E    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT August 29, 2024. CARGO RECEIVED ON August 14, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA          **August 20, 2024** |
|---|---|
| **Non-Negotiable** Copy | (Place and date of issue.) **YUSEN LOGISTICS** As Agent **V3** |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

Forwarders Cargo Receipt
Terms and Conditions

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:
a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;
b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;
c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;
d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;
e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;
f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;
g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.
h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.
i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:
i)    The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and
ii)   The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.
j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.
k) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.
l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and to so comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Company's interest is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)    A force majeure event;
b)    Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;
c)    Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or
d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:
a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or
b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability – The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3 Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12. RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:
a)    In the case of damage to goods, the date of delivery of cargoes;
b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and
c)    In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14 TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and within notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.        **CNS-NSA-2400781**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS** **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | **DS530-24** |
| Buyer/Consignee : | **AVDC, LLC** **18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated: **July 12, 2024** |
| Shipment From : | **NHAVA SHEVA**          To : **APPLE VALLEY, CA** | Date of Receipt of Cargo **July 19, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES PO NO: 95415351 SKU NO: 810745568, 810745731 CARTON 1 - 537 MADE IN INDIA | | NOTIFY PARTY: GEODIS   5101 S. BROAD STREET   PHILADELPHIA, PA 19112-1404, U.S.A.   ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC.   1300 SOUTH MINT STREET SUITE 200   CHARLOTTE NC 28203 USA   TEL: 704-593-6329   EMAIL: DATAQUALITY@EDRAYCPL.COM CFS-CY CHRITMAS ORNAMENT MADE OF IRON WITH JUTE, , OTHER HANDICRAFTS OF ALIUMINIUM PO NO: 95415351 SKU NO: 810745568, 810745731 QTY: 1323 GR.WT: 1865.200 KGS SB.NO: 2388564 DT. 12/07/2024 \*MORADABAD, UTTAR PRADESH 244001, INDIA KOCU4375803 (PART)     SEAL# 1333775          40H  DRY SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 537 CARTONS | | 15.952 CBM | 1,865.20 KGS |

====================================================================
TOTAL : FIVE HUNDRED THIRTY-SEVEN (537) CARTONS ONLY

                    "FREIGHT COLLECT"
SHIPMENT PER S.S. "CONTI CRYSTAL" VOY NO. 0137E   DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT August 11, 2024. CARGO RECEIVED ON July 19, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**                    **August 1, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** **For Yusen Logistics (India) Private Limited** Authorised Signatory                    As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V1 |

ORIGINAL

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400781**

| Maker/Supplier : | DEWAN & SONS LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* |
|---|---|
| Buyer/Consignee : | AVDC, LLC 18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA |
| Shipment From : | NHAVA SHEVA          To : APPLE VALLEY, CA |

Maker/Supplier's INVOICE No.
**DS530-24**

Dated : **July 12, 2024**

Date of Receipt of Cargo
**July 19, 2024**

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

BIG LOTS STORES
PO NO: 95415351
SKU NO: 810745568, 810745731
CARTON 1 - 537
MADE IN INDIA

NOTIFY PARTY: GEODIS
          5101 S. BROAD STREET
          PHILADELPHIA, PA 19112-1404, U.S.A.
          ATTN: ALENA LAMINA
ALSO NOTIFY: EDRAY 2020 LLC.
          1300 SOUTH MINT STREET SUITE 200
          CHARLOTTE NC 28203 USA
          TEL: 704-593-6329
          EMAIL: DATAQUALITY@EDRAYCPL.COM

CFS-CY

CHRITMAS ORNAMENT MADE OF IRON WITH JUTE, , OTHER
HANDICRAFTS OF ALIUMINIUM
PO NO: 95415351
SKU NO: 810745568, 810745731
QTY: 1323
GR.WT: 1865.200 KGS
SB.NO: 2388564 DT. 12/07/2024

*MORADABAD, UTTAR PRADESH 244001, INDIA

KOCU4375803 (PART)      SEAL# 1333775          40H  DRY

SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA
SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
MATERIAL

537 CARTONS                      15.952 CBM    1,865.20 KGS
===================================================
TOTAL : FIVE HUNDRED THIRTY-SEVEN (537) CARTONS ONLY

          "FREIGHT COLLECT"
SHIPMENT PER S.S. "CONTI CRYSTAL" VOY NO. 0137E    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT August 11, 2024. CARGO RECEIVED ON July 19, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA                    August 1, 2024 |
|---|---|
| **Non-Negotiable** Copy | (Place and date of issue.) **YUSEN LOGISTICS** As Agent V1 |

Forwarders Cargo Receipt
Terms and Conditions

**1.    DEFINITIONS**

1.1.   "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2.   "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3.   "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4.   "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5.   "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6.   "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7.   "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1   In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2   Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3   Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1   Shipper warrants as follows:

a)   By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)   By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)   The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d)   The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e)   The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)   Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS.

Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h)   Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i)    The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii)   The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k)   Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)    Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1   Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2   Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and to so comply with all Laws.

4.3   Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1   SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDERTAKE CONSIDERATIONS IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE OFFERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2   Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interest is expedient.

5.3   Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4   Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5   Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6   Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7   Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1   SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2   Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3   Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)   A force majeure event;

b)   Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is unable to avoid by the exercise of reasonable diligence;

c)   Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)   Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4   Amount of Compensation – Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)   The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)   Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5   No insurance will be arranged by Company for the benefit of Shipper.

6.6   Entire Liability – Except as set forth in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7   Application of Defenses, Limits, and Exclusions of Liability – The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8   By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.   Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.   Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3.   Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub-contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.   Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1   Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1   Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.   SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1  Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11.   LIEN, DISPOSAL OF GOODS, ETC.**

11.1  Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2  Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3  Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4  The rights of Company under this Section are independent and cumulative.

**12.   RATES AND CHARGES**

12.1  Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2  Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3  On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13.   NOTICE OF CLAIM**

13.1  Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a)   In the case of damage to goods, the date of delivery of cargoes;

b)   In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c)   In any other case, the date of the event giving rise to the claim.

13.2  No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14.   TIME BAR**

14.1  Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15.   NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1  Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.   GOVERNING LAW**

16.1  These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400782**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** | **DS552-24** |
| Buyer/Consignee : | **AVDC, LLC**<br>**18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated : **July 16, 2024** |
| Shipment From : | **NHAVA SHEVA**      To : **APPLE VALLEY, CA** | Date of Receipt of Cargo<br>**July 25, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS STORES**<br>**PO NO: 95348487**<br>**SKU NO: 810751705,**<br>**810751706, 810751763**<br>**CARTON 1 - 150**<br>**MADE IN INDIA** | **NOTIFY PARTY: GEODIS**<br>**5101 S. BROAD STREET**<br>**PHILADELPHIA, PA 19112-1404, U.S.A.**<br>**ATTN: ALENA LAMINA**<br>**ALSO NOTIFY: EDRAY 2020 LLC.**<br>**1300 SOUTH MINT STREET SUITE 200**<br>**CHARLOTTE NC 28203 USA**<br>**TEL: 704-593-6329**<br>**EMAIL: DATAQUALITY@EDRAYCPL.COM**<br><br>**CFS-CY**<br><br>**TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANGO WOOD**<br>**PO NO: 95348487**<br>**SKU NO: 810751705, 810751706, 810751763**<br>**QTY: 150**<br>**GR.WT: 560.000 KGS**<br>**SB.NO: 2485881 DT. 17/07/2024**<br><br>***MORADABAD, UTTAR PRADESH 244001, INDIA**<br><br>**HMMU6453426 (PART)      SEAL# 1333798      40H DRY**<br><br>**SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA**<br>**SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL** | | |

**150 CARTONS                  3.277 CBM      560.00 KGS**
================================================================
**TOTAL : ONE HUNDRED FIFTY (150) CARTONS ONLY**

**"FREIGHT COLLECT"**
**SHIPMENT PER S.S. "CONTI CRYSTAL" VOY NO. 0137E    DISCHARGED AT LOS ANGELES, CA**
**SAILING ON / ABOUT August 11, 2024. CARGO RECEIVED ON July 25, 2024.**

| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**                        **August 1, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>**For Yusen Logistics (India) Private Limited**<br><br>**Authorised Signatory**            As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                      V1 |

ORIGINAL

# Yusen Logistics

Yusen Logistics - Yusen Logistics        Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.        **CNS-NSA-2400782**

| | |
|---|---|
| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** |
| Buyer/Consignee : | **AVDC, LLC**<br>**18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** |
| Shipment From : | **NHAVA SHEVA**        To : **APPLE VALLEY, CA** |

Maker/Supplier's INVOICE No.
**DS552-24**

Dated : **July 16, 2024**

Date of Receipt of Cargo
**July 25, 2024**

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES                NOTIFY PARTY: GEODIS
PO NO: 95348487                      5101 S. BROAD STREET
SKU NO: 810751705,                   PHILADELPHIA, PA 19112-1404, U.S.A.
810751706, 810751763                 ATTN: ALENA LAMINA
CARTON 1 - 150            ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN INDIA                        1300 SOUTH MINT STREET SUITE 200
                                     CHARLOTTE NC 28203 USA
                                     TEL: 704-593-6329
                                     EMAIL: DATAQUALITY@EDRAYCPL.COM

                         CFS-CY

                         TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANGO WOOD
                         PO NO: 95348487
                         SKU NO: 810751705, 810751706, 810751763
                         QTY: 150
                         GR.WT: 560.000 KGS
                         SB.NO: 2485881 DT. 17/07/2024

                         *MORADABAD, UTTAR PRADESH 244001, INDIA

                         HMMU6453426 (PART)      SEAL# 1333798          40H  DRY


                         SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA
                         SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                         MATERIAL


                         150 CARTONS                 3.277 CBM      560.00 KGS
                         ========================================================
                         TOTAL : ONE HUNDRED FIFTY (150) CARTONS ONLY

                         "FREIGHT COLLECT"
SHIPMENT PER S.S. "CONTI CRYSTAL" VOY NO. 0137E   DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT August 11, 2024. CARGO RECEIVED ON July 25, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA | **August 1, 2024** |
|---|---|---|
| **Non-Negotiable**<br><br>Copy | (Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br>As Agent<br>V1 | |

Non-Negotiable Copy

Forwarders' Cargo Receipt
Terms and Conditions

**1.    DEFINITIONS**
1.1.    "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.
1.2.    "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.
1.3.    "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.
1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.
1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.
1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.
1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**
2.1    In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.
2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.
2.3    Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**
3.1    Shipper warrants as follows:
    a)    By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;
    b)    By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;
    c)    The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;
    d)    The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;
    e)    The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;
    f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;
    g)    Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS.
        Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.
    h)    Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.
    i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:
        i)    The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and
        ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.
    j)    Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.
    k)    Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.
    l)    Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**
4.1    Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.
4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.
4.3    Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**
5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE PROVIDED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.
5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interest or is expedient.
5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.
5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.
5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.
5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.
5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**
6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.
6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.
6.3    Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

    a)    A force majeure event;
    b)    Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is unable to avoid by the exercise of reasonable diligence;
    c)    Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or
    d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.
6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:
    a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or
    b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.
6.5    No insurance will be arranged by Company for the benefit of Shipper.
6.6    Entire Liability – Except as set forth in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.
6.7    Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.
6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7.    INDEMNITY**
7.1.    Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.
7.2.    Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.
7.3.    Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub-contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.
7.4.    Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**
8.1    Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**
9.1    Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**
10.1    Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**
11.1    Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).
11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.
11.3    Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.
11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**
12.1    Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.
12.2    Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.
12.3    On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**
13.1    Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:
    a)    In the case of damage to goods, the date of delivery of cargoes;
    b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and
    c)    In any other case, the date of the event giving rise to the claim.
13.2    No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14    TIME BAR**
14.1    Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**
15.1    Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**
16.1    These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

**FORWARDER'S CARGO RECEIPT No.**     **CNS-NSA-2400807**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | **DS553-24** |
| Buyer/Consignee : | BIG LOTS STORES, LLC<br>500 PHILLIPI RD, COLUMBUS, OH 43228, USA | Dated: **July 16, 2024** |
| Shipment From : | NHAVA SHEVA      To : COLUMBUS, OH | Date of Receipt of Cargo<br>**August 01, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95348491<br>SKU NO: 810751705,<br>810751706, 810751763<br>CARTON 1 - 78<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>    1300 SOUTH MINT STREET SUITE 200<br>    CHARLOTTE NC 28203 USA<br>    TEL: 704-593-6329<br>    EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANGO WOOD<br>PO NO: 95348491<br>SKU NO: 810751705, 810751706, 810751763<br>QTY: 78<br>GR.WT: 291.200 KGS<br>SB.NO: 2747612 DT. 27/O7/2024<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>OOCU6447743 (PART)     SEAL# OOLJSC2212     40H DRY<br><br>SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 78 CARTONS | | 1.650 CBM | 291.20 KGS |

================================================================

TOTAL : SEVENTY-EIGHT (78) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "APL SOUTHAMPTON" VOY NO. 418W   DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT August 18, 2024. CARGO RECEIVED ON August 1, 2024.

---

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA                       August 9, 2024 |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>For Yusen Logistics (India) Private Limited<br><br><br>Authorised Signatory<br>                                        As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V3 |

ORIGINAL

# Yusen Logistics

Yusen Logistics - Yusen Logistics Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400807**

| | | |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** | Maker/Supplier's INVOICE No.<br>**DS553-24** |
| Buyer/Consignee : | **BIG LOTS STORES, LLC**<br>**500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated : **July 16, 2024** |
| Shipment From : | **NHAVA SHEVA**    To : **COLUMBUS, OH** | Date of Receipt of Cargo<br>**August 01, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES            NOTIFY PARTY: GEODIS
PO NO: 95348491               5101 S. BROAD STREET
SKU NO: 810751705,            PHILADELPHIA, PA 19112-1404, U.S.A.
810751706, 810751763          ATTN: ALENA LAMINA
CARTON 1 - 78              ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN INDIA                 1300 SOUTH MINT STREET SUITE 200
                              CHARLOTTE NC 28203 USA
                              TEL: 704-593-6329
                              EMAIL: DATAQUALITY@EDRAYCPL.COM

                           CFS-CY

                           TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANGO WOOD
                           PO NO: 95348491
                           SKU NO: 810751705, 810751706, 810751763
                           QTY: 78
                           GR.WT: 291.200 KGS
                           SB.NO: 2747612 DT. 27/O7/2024

                           *MORADABAD, UTTAR PRADESH 244001, INDIA

                           OOCU6447743 (PART)      SEAL# OOLJSC2212       40H  DRY

                           SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH
                           SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                           MATERIAL
```

|  | | | |
|---|---|---|---|
| 78 CARTONS | | 1.650 CBM | 291.20 KGS |

```
==================================================================
TOTAL : SEVENTY-EIGHT (78) CARTONS ONLY
```

"FREIGHT COLLECT"

SHIPMENT PER S.S. "APL SOUTHAMPTON" VOY NO. 418W   DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT August 18, 2024. CARGO RECEIVED ON August 1, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | |
|---|---|
| **Non-Negotiable**<br><br>Copy | **NHAVA SHEVA**          **August 9, 2024**<br><br>(Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br><br><br>As Agent<br>V3 |

Non-Negotiable Copy

**1.**   **DEFINITIONS**
1.1.   "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services  provider for its customer who  is the ultimate consignee of this shipment.
1.2.   "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers' Instructions received  in writing at the time of receipt.
1.3.   "Shipper" means the vendor tendering  items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of  those cargoes to Company.
1.4.   "Shippers' Instructions" means any of Shipper's specific written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.
1.5.   "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.
1.6.   "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery, local transportation, insurance, customs clearance, packing,   unpacking, and other  handling of goods and other services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.
1.7.   "Owner" means the owner of the cargoes (including any packings, containers, or   equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.**   **COMPULSORY LEGISLATION AND STATUTORY PROTECTION**
2.1   In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the   remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.
2.2   Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.
2.3   Any and all advice information or Services provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.**   **SHIPPER'S WARRANTIES**
3.1   Shipper warrants as follows:
a)   By accepting these Conditions, Shipper  agrees to be bound by all stipulations, exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;
b)   By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;
c)   The description and  particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;
d)   The cargoes contain no drugs, prohibited  or stolen goods, contraband, or  other illegal material or substance or stowaways;
e)   The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling,  and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;
f)   Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;
g)   Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS.  Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.
h)   Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.
i)   Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:
     i)   The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and
     ii)   The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.
j)   Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.
k)   Fitness of Cargoes:  The cargoes are fit and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.
l)   Delivery of Cargoes:  The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their  arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.**   **DANGEROUS GOODS**
4.1   Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods.  Shipper's notice  will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable  Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and  method of storage and handling of the Dangerous Goods.
4.2   Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and to so comply with all Laws.
4.3   Additional charges may  apply to the storage and handling of Dangerous Goods.  If any Dangerous Goods are tendered in breach of this Section, they may, at any time  or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.**   **COMPANY'S AUTHORITY**
5.1   SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND COMPANY WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.
5.2   Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interest or is expedient.
5.3   Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.
5.4   Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.
5.5   Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.
5.6   Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or  arrange to be consolidated cargoes of Shipper with other goods.
5.7   Shipper expressly agrees to be bound in all respects by any act, contract, or  arrangement entered  into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.**   **LIABILITY AND LIMITATIONS**
6.1   SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.
6.2   Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.
6.3   Liability for  Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability  for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

a)   A force majeure event;
b)   Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is unable to avoid by the exercise of reasonable diligence;
c)   Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or
d)   Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.
6.4   Amount of Compensation - Subject to these Conditions, if Company is liable for  loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:
a)   The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or
b)   Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.
6.5   No insurance will be arranged by Company for the benefit of Shipper.
6.6   Entire Liability -- Except as set forth in in this Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.
6.7   Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of  contract.
6.8   By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional  charges for accepting such increased liability.

**7.**   **INDEMNITY**
7.1.   Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority)  arising out of Company acting in accordance with Ship per's Instructions,  or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.
7.2.   Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper  shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses,  damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.
7.3.   Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper  contracts for itself as well as agents for all the aforesaid persons.
7.4.   Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.**   **WAREHOUSING**
8.1   Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of  Company and the cost therefore shall be for the account of Shipper.

**9.**   **DECLARED VALUE**
9.1   Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously  given to and accepted by Company.  A mere statement or declaration of the value or nature of cargoes for  insurance or export  or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.**   **SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**
10.1   Shipper shall be liable  for any duties, taxes,  levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.**   **LIEN, DISPOSAL OF GOODS, ETC.**
11.1   Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.   Company may at its sole discretion exercise its lien at any  time and at any place.  The lien shall  cover without limitation all charges, expenses, and advances of whatsoever  nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including  but not limited to storage charges) and in recovering or attempting to recover  any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).
11.2   Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.  Company shall be entitled to claim the difference against Shipper or the ultimate consignee  in the event that  the (net) sale proceeds do not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall survive delivery or deemed delivery of cargoes.
11.3   Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of  any sale after deduction of charges and expenses shall be equivalent to  delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.
11.4   The rights of Company under this Section are independent and cumulative.

**12.**   **RATES AND CHARGES**
12.1   Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set  -off.
12.2   Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice  is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.
12.3   On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13**   **NOTICE OF CLAIM**
13.1   Any claim against Company  must be in writing and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:
a)   In the case of damage to goods, the date of delivery  of cargoes;
b)   In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and
c)   In any other case, Company if  the event of the event giving rise to the claim.
13.2   No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14**   **TIME BAR**
14.1   Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice  thereof received by Company within three 3 months from the date cargoes  arrived at the destination or the date cargoes should have arrived  at the destination (whichever  date is the earlier).

**15.**   **NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**
15.1   Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.**   **GOVERNING LAW**
16.1   These Conditions  and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400808**

| | | | |
|---|---|---|---|
| | | Maker/Supplier's INVOICE No. | |
| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | **DS634-24** | |
| Buyer/Consignee : | CSC DISTRIBUTION, LLC<br>2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA | Dated : **July 23, 2024** | |
| Shipment From : | NHAVA SHEVA          To : MONTGOMERY, AL | Date of Receipt of Cargo<br>**August 01, 2024** | |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95348488<br>SKU NO: 810751705, 810751706,<br>810751763<br>CARTON 1 - 141<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>5101 S. BROAD STREET<br>PHILADELPHIA, PA 19112-1404, U.S.A.<br>ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>1300 SOUTH MINT STREET SUITE 200<br>CHARLOTTE NC 28203 USA<br>TEL: 704-593-6329<br>EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANGO WOOD<br>PO NO: 95348488<br>SKU NO: 810751705, 810751706, 810751763<br>QTY: 141<br>GR.WT: 526.400 KGS<br>SB.NO: 2743447 DT. 27/07/2024<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>FFAU1143230 (PART)      SEAL# HLG6291684      40H  DRY<br><br>SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 141 CARTONS | | 2.984 CBM | 526.40 KGS |

```
=================================================================
TOTAL : ONE HUNDRED FORTY-ONE (141) CARTONS ONLY
```

"FREIGHT COLLECT"

SHIPMENT PER S.S. "TUCAPEL" VOY NO. 4133    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT August 21, 2024. CARGO RECEIVED ON August 1, 2024.

THIS IS NOT A DOCUMENT OF TITLE

The Goods and instructions are accepted and dealt with subject to the
**YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard
Trading Conditions printed reverse side. Forwarding instructions can only
be cancelled or altered if the original of this document is surrendered to the
Company and then only provided the Company is still in a position to
comply with such cancellation or alteration. Instructions authorizing
disposal by a third party can only be cancelled or altered if the original of
this document is surrendered to the Company, and then only provided the
Company have not yet received instructions under the original authority.
The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

| | |
|---|---|
| **NHAVA SHEVA** | **August 9, 2024** |

(Place and date of issue.)
**YUSEN LOGISTICS**

For Yusen Logistics (India) Private Limited

Authorised Signatory
As Agent

(Authorized Signature)                    V2

Forwarders Cargo Receipt
Terms and Conditions

**1.      DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate  entities issuing these Conditions in its  capacity as an origin services  provider for its customer who  is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein,  and includes terms and conditions on the  front and any Shippers' Instructions received  in writing at the time of  receipt of this shipment.

1.3.    "Shipper" means the vendor tendering  items to Company for Services and  any person at whose request  or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's  specific written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations,  or conventions which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be  provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection,  delivery,  local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.      COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the  remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.      SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound by all stipulations,  exceptions, terms, and conditions on the front  and back hereof, whether written, typed,  stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the  Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and  particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)    The cargoes contain no drugs, prohibited  or stolen goods,  contraband, or other  illegal material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling,  and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS. Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

h)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i)    The transport unit is in good condition, is suitable to carry the goods loaded therein or  thereon, and is suitable for the intended carriage and other handling; and

ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

j)    Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)    Fitness of Cargoes: The cargoes are fit  and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)    Delivery of Cargoes:  The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their  arrival at destination  and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.      DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods.  Shipper's notice  will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and  method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and for so to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods.  If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.      COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Company's  interest is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference  between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.      LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for  loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability -- Except as set forth in in this  Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or  otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of  contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.      INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties,  taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.    Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper  shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously made in writing,  advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor  shall have the benefit  of all provisions herein benefiting Company as if such provisions  were expressly for his  or its benefit.  For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.      WAREHOUSING**

8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion  of Company and the cost therefore shall be for the account of Shipper.

**9.      DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express  instructions in  writing were previously given to and accepted by Company.  A mere statement or declaration of the value or nature of cargoes for  insurance or export  or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable  for any duties, taxes,  levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in connection with cargoes and for  any payments,  storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.   Company may at its sole discretion exercise its lien at any  time and at any place.  The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including but not limited to storage charges) and in recovering or attempting to recover  any sums due from Shipper  or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place)  at the costs of Shipper cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.  Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds  do not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall survive delivery or deemed delivery of cargoes.

11.3    Perishable cargoes which are not  taken up immediately upon arrival or which are  insufficiently addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of  any sale after deduction of charges and expenses shall be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due  without deduction or deferment on account of any claim, counterclaim, or set  -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice is rendered.  Forthwith upon such request  being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13.    NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14.    TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice  thereof received by Company within three 3 months from the date cargoes  arrived at the destination or the date cargoes should have arrived  at the destination (whichever date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions  and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special Administrative  Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400809**

| | |
|---|---|
| Maker/Supplier : | **DEWAN & SONS** <br> **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** |
| Buyer/Consignee : | **CLOSEOUT DISTRIBUTION, LLC** <br> **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** |
| Shipment From : | **NHAVA SHEVA**    To : **TREMONT, PA** |

Maker/Supplier's INVOICE No.
**DS635-24**

Dated: **July 23, 2024**

Date of Receipt of Cargo
**August 01, 2024**

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES <br> PO NO: 95348489 <br> SKU NO: 810751705, <br> 810751706, 810751763 <br> CARTON 1 - 177 <br> MADE IN INDIA | | NOTIFY PARTY: GEODIS <br>   5101 S. BROAD STREET <br>   PHILADELPHIA, PA 19112-1404, U.S.A. <br>   ATTN: ALENA LAMINA <br> ALSO NOTIFY: EDRAY 2020 LLC. <br>   1300 SOUTH MINT STREET SUITE 200 <br>   CHARLOTTE NC 28203 USA <br>   TEL: 704-593-6329 <br>   EMAIL: DATAQUALITY@EDRAYCPL.COM <br><br> CFS-CY <br><br> TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANGO WOOD <br> PO NO: 95348489 <br> SKU NO: 810751705, 810751706, 810751763 <br> QTY: 177 <br> GR.WT: 660.8 KGS <br> SB.NO: 2743446 DT. 27/07/2024 <br><br> *MORADABAD, UTTAR PRADESH 244001, INDIA <br><br> BEAU4459823 (PART)    SEAL# HLG6279096    40H DRY <br><br> SHIP TO CODE & LOCATION : 00874-TREMONT, PA <br> SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 177 CARTONS | | 3.747 CBM | 660.80 KGS |
| | ==================================================================== | | | |
| | TOTAL : ONE HUNDRED SEVENTY-SEVEN (177) CARTONS ONLY | | | |

"FREIGHT COLLECT"
SHIPMENT PER S.S. "TUCAPEL" VOY NO. 4133    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT August 21, 2024. CARGO RECEIVED ON August 1, 2024.

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE <br><br> The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. <br><br> No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** <br> (Terms and conditions are to be continued to the reverse side hereof.) | **NHAVA SHEVA**    **August 9, 2024** <br><br> (Place and date of issue.) <br> **YUSEN LOGISTICS** <br><br> **For Yusen Logistics (India) Private Limited** <br><br> **Authorised Signatory**    As Agent <br><br> (Authorized Signature)    V3 |

ORIGINAL

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400809**

| | |
|---|---|
| Maker/Supplier : **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | Maker/Supplier's INVOICE No.<br>**DS635-24** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC**<br>**50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **July 23, 2024** |
| Shipment From : **NHAVA SHEVA**          To : **TREMONT, PA** | Date of Receipt of Cargo<br>**August 01, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95348489<br>SKU NO: 810751705,<br>810751706, 810751763<br>CARTON 1 - 177<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>　　5101 S. BROAD STREET<br>　　PHILADELPHIA, PA 19112-1404, U.S.A.<br>　　ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>　　1300 SOUTH MINT STREET SUITE 200<br>　　CHARLOTTE NC 28203 USA<br>　　TEL: 704-593-6329<br>　　EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>TABLE KITCHEN OR OTHER HOUSEHOLD ARTICLE OF MANGO WOOD<br>PO NO: 95348489<br>SKU NO: 810751705, 810751706, 810751763<br>QTY: 177<br>GR.WT: 660.8 KGS<br>SB.NO: 2743446 DT. 27/07/2024<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>BEAU4459823 (PART)     SEAL# HLG6279096      40H  DRY<br><br>SHIP TO CODE & LOCATION : 00874-TREMONT, PA<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |

177 CARTONS                              3.747 CBM      660.80 KGS

=================================================================
TOTAL : ONE HUNDRED SEVENTY-SEVEN (177) CARTONS ONLY

　　　　　"FREIGHT COLLECT"
SHIPMENT PER S.S. "TUCAPEL" VOY NO. 4133    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT August 21, 2024. CARGO RECEIVED ON August 1, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA                    **August 9, 2024** |
|---|---|
| **Non-Negotiable**<br><br>Copy | (Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br>As Agent<br><br>V3 |

Non-Negotiable Copy

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate  entities issuing these Conditions in its  capacity as an origin services  provider for its customer who  is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers' Instructions received  in writing at the time of receipt of this shipment.

1.3.    "Shipper" means the vendor tendering  items to Company for Services and any person  at whose request or on whose behalf Shipper  undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written  shipping instructions or  requirements delivered to Company at the time  of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes,  regulations, or conventions which apply  compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be  provided by Company and includes the receipt of  cargoes from Shipper and subsequent arranging  for the storage,  warehousing, collection,  delivery, local transportation, insurance,  customs clearance, packing,  unpacking, and  other  handling of goods and other  services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate  consignee.

1.7.    "Owner" means the owner of the cargoes  (including any packings, containers, or   equipment other than those provided by  Customer or carriers) to which any business  concluded under these Conditions relate s  and any other person who is or may become  interested in them depending upon the  commercial terms of sale and including the  ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained  herein are  inconsistent  with any Laws that  apply compulsorily to any element of the  Services, those provisions, to the extent of  such inconsistency,  shall  be null and void in relation to such element of the Services by  Company, but the   remaining provisions of this  forwarders' certificate of receipt ("FCR")  shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate  to limit or deprive Company of any statutory  protection, defense, exception, or limitation of  liability authorized by any applicable Laws.

2.3    Any and all advice information or Services  provided by Company gratuitously  is provided  on the basis that Company will not accept any  liability whatsoever therefo re, whether in tort,  bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound by all stipulations,  exceptions, terms, and conditions on the front  and back hereof, whether written, typed,  stamped, or printed, as fully as if signed by  Shipper;

b)    By accepting these Conditions and   agreeing to the terms hereof, Shipper is, or is  the agent of and has the authority of, the  Owner or person owning or entitled to the  possession of the cargoes or of the person who  is or may become interested in the cargoes;

c)    The description and  particulars relating to  the  cargoes set out on the front hereof:  (a) have been checked by Shipper  on receipt of  these Conditions; and (b)  are full and accurate;

d)    The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other illegal  material or substance or stowaways;

e)    The cargoes have been properly and  sufficiently prepared,  packed, stowed,  labelled,  and/or marked by or on behalf of Shipper, and  the preparation, packing, stowage, labelling,  and/or  marking are appropriate to the storage,  handling, and any  operations or transactions  that may affect the cargoes and are in  compliance with all applicable Laws;

f)    Shipper complies with all Laws,  requirements, directions, recommendations,  rules, guidelines of customs, port, import,  export, and other authorities;

g)    Shipper shall provide the total gross mass  established using calibrated and certified  equipment of each packed Container (FCL) or   each package of cargoes (LCL)  in accordance  with SOLAS. Shipper acknowledges and agrees  that Company will rely on the  accuracy and  timeliness of such gross mass information and  will use this to comply with its obligations  in accordance with SOLAS. Proper Packing,  etc.: All the cargoes, the subject of any  Service provided by Company,  have been  properly and sufficiently packed and/or  prepared, and that Company has no liability for  any  loss of or damage to cargoes which are  improperly or   insufficiently packed or  prepared, no matter how such loss or damage is  caused.

h)    Transport Unit: Where the cargoes delivered  by or on behalf of Shipper are already carried  in or on containers, trailers, flats, tilts,  railway wagons, tanks,  igloos, or any other  unit device load device (each hereafter referred  to as a "transport unit") then:

i)      The transport unit is in good condition,  is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended  carriage and other handling; and

ii)     The cargoes are suitable for carriage  and other handling in or on the transport unit  and has been properly and competently packed  or loaded in or on the transport unit.

i)    Description of Cargoes: All descriptions,  values, and other   particulars of the goods  furnished to Company are true, complete, and  accurate, it being the duty of Shipper to provide  such information to Company and to ensure  that  such information is true, complete, and  accurate.

j)    Fitness of Cargoes: The cargoes are fit  and suitable for the carriage (international as  well  as local), storage, packing, unpacking, and  other handling in accordance with, pursuant,  related, or incidental to Shipper's Instructions.

k)    Delivery of Cargoes: The consignee or   other person entitled to the  delivery of the  goods shall  take delivery of the goods upon  their  arrival at destination and shall  pay all  necessary charges, taxes, and duties and shall  comply with all necessary formalities and  procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company  are  not of such nature that they are or may  become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive,  or which  do or may present a risk of damage to  any property or person whatsoever ("Dangerous  Goods")  unless Shipper, or someone acting on its  behalf, has given Company written  notice of the  nature of the Dangerous Goods prior to  Company's receipt of such Dangerous Goods and  Company has expressly accepted in writing to  deal  with the Dangerous Goods. Shipper's notice  will include all information necessary for Company  to perform  its obligation in connection with the  Dangerous Goods in accordance  with all  applicable Laws or requirements (or any  combination of the foregoing), including  without limitation information about the  characteristics of the Dangerous Goods, the  appropriate manner and  method of storage and  handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly  marked on the outside so as to indicate the  nature and characteristics of the Dangerous  Goods and so to comply with all Laws.

4.3    Additional charges may apply to the storage  and handling of Dangerous Goods. If any  Dangerous Goods are tendered in breach of this  Section, they may, at any time or place be  unloaded, destroyed, disposed, abandoned, or  rendered harmless, as circumstances may require,  at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT  COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN  SERVICES PROVIDER, AND THAT COMPANY WILL NOT  UNDERTAKE THE CONSIGNEE'S POSITION IN THE  CAPACITY OF A CARRIER, NON-VESSEL-OPERATING  COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A  SHIPPER AS THAT TERM IS UNDERSTOOD UNDER  APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE  CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO  COMPANY UNDER THESE CONDITIONS AND COMPANY  WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR  INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES  ARE PROVIDED AS A CONVENIENCE TO SHIPPER IN ITS  TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR  WHICH COMPANY IS ENTITLED TO COLLECT FROM  SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate  from Shipper Instructions in any respect if in the  opinion of Company such departure or deviation is  necessary  or desirable in Shipper's interest, is  expedient.

5.3    Company is authorized by Shipper to act or  to enter into any contract or arrangement with  third-parties for performance of the Services  without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd  Party the charges payable to such 3rd Party without  reference to or further authorization from Shipper,  it being agreed that the difference between the  charges payable by Company to 3rd Party(ies),  and the charges payable by Shipper to Company is  Company's  commission or  remuneration or profit.   Shipper waives any and has no right of enquiry of  the charges payable to 3rd Party(ies) and Company  is not under any duty to account  to Shipper for  Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated)  to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for  Shipper's goods  to be carried, forwarded,  packed, unpacked, stored, or handled separately.   Company is authorized (but not obliged) to   consolidate or arrange to be consolidated cargoes  of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all  respects by any act, conduct, or arrangement  entered  into by Company with third-parties  pursuant to the aforesaid authorizations.   Company is not and does not act as Shipper's  agent with respect to any cargoes or shipments  under these Conditions, and Company does not  accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT  HEREBY WAIVES ALL CLAIMS AGAINST COMPANY:  (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO  THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM  OCCURRED WHILE SUCH CARGOES WERE IN THE CARE,  CUSTODY, AND CONTROL OF COMPANY DURING  PERFORMANCE OF THE SERVICES PURSUANT TO THESE  CONDITIONS; (B) RELATED TO THE RELEASE OF THE  CARGOES TO THE CONSIGNEE OR OTHER PARTIES  INCLUDING CARRIERS AND SERVICE PROVIDERS; AND  (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF  BUSINESS, LOSS OF GOODWILL, OR REPUTATION,  THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING  SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR  CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any,  shall be determined and limited in accordance  with this Section.

6.3    Liability for Loss or Damage to Cargoes --  Without prejudice to any other right or remedies  Company may  have, Company shall be relieved of  liability  for any loss or damage to cargoes if,  and to the extent that, such loss or damage is  caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of  labor, the consequences of  which Company is  munable  to avoid by the exercise of reasonable  diligence;

c)    Any cause or event which Company is unable  to avoid and the consequences  whereof Company is  unable to prevent by the exercise of reasonable  diligence; or

d)    Compliance with instructions or directions  of Shipper or the consignee or any person  authorized to give them.

6.4    Amount of Compensation - Subject to these  Conditions, if Company is liable for  loss of or  damage to cargoes, the liability of Company shall  be limited to the lesser of:

a)    The landed cost at the destination of only  those cargoes damaged or lost (excluding  insurance); or

b)    Two (2) SDRs per kilo of the gross weight of  any cargoes lost or damaged.

6.5    No insurance will be arranged by Company  for the benefit of Shipper.

6.6    Entire Liability -- Except as set forth in n  this  Section, Company shall not  be liable for loss of  or  damage to any cargoes or have any liability  whatsoever  for any events arising out  or in  connection with the storage and handling of  cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and  Exclusions of  Liability - The defenses, limits and  exclusions of  liability provided for in these  Conditions of receipt shall  apply in any action  against Company arising out of or  in  connection with the Services (including  loss or  damage to cargoes) and whether the action  be founded in contract, bailment, tort, breach of  express or  implied warranty, or  otherwise, even  if the loss or  damage arose as a result of  negligence, willful misconduct, or fundamental  breach of   contract.

6.8    By special arrangement which must be  agreed to in writing, Company may accept liability  in excess of the limit set forth herein  if Shipper  agrees to pay, and  has paid, Company's additional   charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify  and keep indemnified Company  from and against all  claims, liabilities, losses,  damages, costs, and expenses (including without   limitation all duties,  taxes, imposts, levies,  deposits, fines, and outlays of whatsoever nature  levied by any authority) arising out of Company  acting in accordance with Ship per's Instructions,  or arising from a breach of warranty or obligation  by Shipper, or arising from Shipper's inaccurate   or incomplete or ambiguous information or  instructions, or arising from the negligence of  Shipper or Owner.

7.2.    Advice and information, in whatever form as  may be given  by Company, are provided  by  Company for Shipper only and Shipper  shall save harmless and indemnify and keep  indemnified Company from and against all claims,  liabilities, losses, damages, costs, and expenses  arising out  of any other person relying  on such  advice or information.  Except under  special  arrangements previously  made in writing, advice,  or information which is not  related to specific  instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be  made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to  be provided by Company.  If any such claim  should nevertheless be made  Shipper  shall indemnify  Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent and  sub -contractor shall have the benefit  of all  provisions herein benefiting Company as if  such provisions  were expressly for his  or its benefit.  For the foregoing purposes,  Shipper  contracts for itself as well as agents for  all the aforesaid persons.

7.4.    Shipper shall defend,  indemnify, and  hold  harmless Company from and against all  claims, costs, and demands whatsoever and by  whomsoever  made or preferred in excess of the  liability  of Company under the terms of these  Conditions,  and without prejudice  to the generality  of the foregoing this indemnity shall  include  (without  limitation) all claims, costs, and  demands arising  from or   in connection with the  negligence of Company, its officers, servants,  agents, or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be  warehoused  or otherwise held at the risk of  Shipper or the Owner  at any place at the sole  discretion  of  Company and the cost therefore shall be  for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any  declaration for the purpose of any  statute or  convention  or contract as to the nature or value  of any goods or  as to any special interest   in delivery unless express instructions in  writing were previously  given to and accepted  by  Company.   A mere statement or declaration of  the value or  nature of cargoes for  insurance or  export  or customs or  other purposes is not and  shall not  be construed to be Shipper's Instructions  to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable  for any duties, taxes,  levies, deposits, or outlays of any kind levied  by the authorities  at any port or place for or in  connection with cargoes and for  any payments,  storage, demurrage, fines, expenses, loss, or  damage whatsoever incurred or  sustained by  Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien  on all  cargoes (and documents relating thereto)  and  any other property belonging to Shipper,  directly or indirectly  in Company's possession,  custody, control, or enroute for  all monies due  to Company and/or its affiliates from Shipper or   the ultimate consignee.   Company may at its   sole discretion exercise its lien at any  time  and at any place. The lien shall  cover without  limitation all charges, expenses, and advances  of  whatsoever nature due to Company and/or its  affiliates  and inclusive of any costs incurred  enforcing  and preserving its  lien (including  but not limited to storage charges) and in  recovering or  attempting to recover  any sums due from  Shipper or the ultimate consignee (whether  in respect of the storage and handling herein or  otherwise).

11.2    Company shall be entitled to sell  (at any  time and at any place) at the costs of Shipper  cargoes and/or any such other  property by  private treaty or by public  auction or  other means, without giving prior  notice or  incurring any liability to Shipper and  to apply the  proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to  Company.   Company shall be entitled to  claim the  difference against Shipper or the ultimate  consignee  in the event that the (net) sale  proceeds do  not discharge in full  the amount due  from Shipper or the ultimate consignee.   Company's lien shall survive delivery or deemed  delivery of cargoes.

11.3    Perishable cargoes which are not  taken up  immediately upon arrival or which are  insufficiently  addressed  or marked or otherwise  not readily identifiable,  may be sold or otherwise  disposed of without any  notice to Shipper or the  Owner and payment or  tender of the net proceeds  of any sale after deduction  of charges and  expenses shall  be equivalent to  delivery.   All charges and expenses arising in  connection  with the sale or disposal of  cargoes shall be  paid by Shipper.

11.4    The rights of Company under this Section  are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for  the  payment of all charges owed to Company in   performance of the Services at origin for its  benefit.   Shipper shall pay to Company all sums  immediately when due without deduction or  deferment on account of any claim, counterclaim,  or set  -off.

12.2    Company at its discretion  may request an  advance  to cover fees, duties, charges, taxes,  and/or other  expenses payable before Shipper's  invoice is rendered.   Forthwith upon such request  being made, Shipper shall make such advance to  Company.

12.3    On all amounts overdue to Company,  Company shall be entitled to interest calculated  on a monthly basis from the date such accounts  are overdue until payment thereof  at 2% per  month (compounded monthly)  during the period  that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1    Any claim against Company must be in  writing  and delivered to Company at its registered  office or its principal place of business in Hong  Kong within 3 days of:

a)    In the case of damage to goods, the date  of delivery of cargoes;

b)    In the case of loss or non-delivery or  mis-delivery of cargoes, the date  that cargoes  should have been delivered; and

c)    In any other case, the date of the event  giving rise to the claim.

13.2    No action shall lie against Company if  the claim is not made within the times and in the  manner specified herein.

**14.    TIME BAR**

14.1    Any right of action against Company shall  be extinguished  if suit is not brought in the  proper forum and within notice  thereof  received by Company within three 3 months  from the date cargoes arrived at the  destination  or the date cargoes should have arrived  at the destination (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that:  (a) Company shall not  be liable in the event  of any failure by Shipper  whatsoever related  to Collect on Delivery (C.O.D.)  shipments and commensurate obligations  for  collection of bank drafts or otherwise, or to  collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the  invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions  and any act or contract to  which they apply  shall be governed  by and  construed according  to the laws of the Hong Kong  Special  Administrative Region.  Any dispute arising  out  of these Conditions or  any such act or contract  shall be subject  to the non exclusive jurisdiction of   the courts of the Hong Kong Special  Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NSA-2400824**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | **DS659-24** |
| Buyer/Consignee : | CSC DISTRIBUTION, LLC<br>2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA | Dated:  **July 25, 2024** |
| Shipment From : | NHAVA SHEVA          To : MONTGOMERY, AL | Date of Receipt of Cargo<br>**July 31, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95415352<br>SKU NO: 810745621<br>CARTON 1 - 280<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>    1300 SOUTH MINT STREET SUITE 200<br>    CHARLOTTE NC 28203 USA<br>    TEL: 704-593-6329<br>    EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CFS-CY<br><br>CHRITMAS ORNAMENT MADE OF IRON WITH JUTE<br>PO NO: 95415352<br>SKU NO: 810745621<br>QTY: 280<br>GR.WT: 1610.000 KGS<br>SB.NO: 2743444 DT .27/07/2024<br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>FANU3787508 (PART)     SEAL# HLG6335896       40H  DRY<br><br>SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL<br>SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 280 CARTONS | | 9.408 CBM | 1,610.00 KGS |

=======================================================

TOTAL : TWO HUNDRED EIGHTY (280) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "TUCAPEL" VOY NO. 4133    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT August 21, 2024. CARGO RECEIVED ON July 31, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | NHAVA SHEVA                    **August 13, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>For Yusen Logistics (India) Private Limited<br><br>Authorised Signatory<br>                                         As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                      V2 |

# Yusen Logistics

Yusen Logistics - Yusen Logistics                Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.        **CNS-NSA-2400824**

| | | |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS** | Maker/Supplier's INVOICE No. |
| | **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** | **DS659-24** |
| Buyer/Consignee : | **CSC DISTRIBUTION, LLC** | |
| | **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **July 25, 2024** |
| Shipment From : | **NHAVA SHEVA**        To : **MONTGOMERY, AL** | Date of Receipt of Cargo **July 31, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95415352                    5101 S. BROAD STREET
SKU NO: 810745621                  PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 280                     ATTN: ALENA LAMINA
MADE IN INDIA            ALSO NOTIFY: EDRAY 2020 LLC.
                                   1300 SOUTH MINT STREET SUITE 200
                                   CHARLOTTE NC 28203 USA
                                   TEL: 704-593-6329
                                   EMAIL: DATAQUALITY@EDRAYCPL.COM

                        CFS-CY

                        CHRITMAS ORNAMENT MADE OF IRON WITH JUTE
                        PO NO: 95415352
                        SKU NO: 810745621
                        QTY: 280
                        GR.WT: 1610.000 KGS
                        SB.NO: 2743444 DT .27/07/2024
                        *MORADABAD, UTTAR PRADESH 244001, INDIA

                        FANU3787508 (PART)    SEAL# HLG6335896        40H DRY

                        SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                        SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                        MATERIAL


                        280 CARTONS                9.408 CBM      1,610.00 KGS
                        ===================================================
                        TOTAL : TWO HUNDRED EIGHTY (280) CARTONS ONLY
                "FREIGHT COLLECT"
SHIPMENT PER S.S. "TUCAPEL" VOY NO. 4133    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT August 21, 2024. CARGO RECEIVED ON July 31, 2024.
```

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**        **August 13, 2024** |
| **Non-Negotiable** | (Place and date of issue.) |
| Copy | **YUSEN LOGISTICS** |
| | As Agent |
| | V2 |

Non-Negotiable Copy

Forwarders' Cargo Receipt
Terms and Conditions

**1.    DEFINITIONS**

1.1.   "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2.   "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3.   "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4.   "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5.   "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6.   "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7.   "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1   In the event that any provisions contained herein are  inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the  remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2   Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3   Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1   Shipper warrants as follows:

a)   By accepting these Conditions, Shipper  agrees to be bound by all stipulations, exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)   By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)   The description and  particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)   The cargoes contain no drugs, prohibited or stolen goods, contraband, or  other illegal material or substance or stowaways;

e)   The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)   Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)   Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h)   Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company,  have been properly and sufficiently packed and/or prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

i)   Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i)   The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and

ii)   The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)   Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k)   Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)   Delivery of Cargoes: The consignee or  other person entitled to the delivery of the goods shall take delivery of the goods upon their  arrival at destination  and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1   Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods.  Shipper's notice  will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2   Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3   Additional charges may apply to the storage and handling of Dangerous Goods.  If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1   SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDERTAKE CONSIDERATIONS EITHER IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2   Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's  interests or is expedient.

5.3   Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4   Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5   Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6   Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7   Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1   SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2   Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3   Liability for Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)   A force majeure event;

b)   Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c)   Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)   Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4   Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)   The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)   Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5   No insurance will be arranged by Company for the benefit of Shipper.

6.6   Entire Liability -- Except as set forth in in this  Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7   Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or  otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of  contract.

6.8   By special arrangement which  must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.   Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.   Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.   Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper  contracts for itself as well as agents for all the aforesaid persons.

7.4.   Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1   Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion  of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1   Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously  given to and accepted by Company.  A mere statement or declaration of the value or  nature of cargoes for  insurance or export  or customs or  other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1   Shipper shall be liable  for any duties, taxes,  levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1   Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper, directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.  Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including but not limited to storage charges) and in recovering or attempting to recover  any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2   Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or towards the payment of any amount due to Company.  Company shall be entitled to claim the difference against Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall survive delivery or deemed delivery of cargoes.

11.3   Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently  addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall  be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4   The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1   Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set  -off.

12.2   Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3   On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1   Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a)   In the case of damage to goods, the date of delivery of cargoes;

b)   In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

c)   In any other case, the date of the event giving rise to the claim.

13.2   No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14    TIME BAR**

14.1   Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes  arrived at the destination or the date cargoes should have arrived  at the destination (whichever date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1   Shipper agrees that: (a) Company shall accept no obligations to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1   These Conditions  and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-NSA-2400847**

| | |
|---|---|
| Maker/Supplier : **DEWAN & SONS** | Maker/Supplier's INVOICE No. **DS660-24** |
| Buyer/Consignee : **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **July 25, 2024** |
| Shipment From : **NHAVA SHEVA**     To : **DURANT, OK** | Date of Receipt of Cargo **August 01, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
PLEASE REFER TO ATTACHED          NOTIFY PARTY: GEODIS
   SHEET(S).                         5101 S. BROAD STREET
                                     PHILADELPHIA, PA 19112-1404, U.S.A.
                                     ATTN: ALENA LAMINA
                                  ALSO NOTIFY: EDRAY 2020 LLC.
                                     1300 SOUTH MINT STREET SUITE 200
                                     CHARLOTTE NC 28203 USA
                                     TEL: 704-593-6329
                                     EMAIL: DATAQUALITY@EDRAYCPL.COM

                                  CFS-CY
```

```
       866 CARTONS                        30.513 CBM    4,158.75 KGS
       =================================================================
       TOTAL : EIGHT HUNDRED SIXTY-SIX (866) CARTONS ONLY
```

```
             "FREIGHT COLLECT"
SHIPMENT PER S.S. "ONE MAJESTY" VOY NO. 015E    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT August 29, 2024. CARGO RECEIVED ON August 1, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **NHAVA SHEVA**      **August 20, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>For Yusen Logistics (India) Private Limited<br><br>Authorised Signatory<br><br>                                As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)        V4 |

ORIGINAL

Yusen Logistics - Yusen Logistics    **Yusen Logistics**    Yusen Logistics - Yusen Logistics

V4

FCR No.    CNS-NSA-2400847

Attachment Page 1/1

<u>Shipping Mark</u>

BIG LOTS STORES
PO NO: 95415354
SKU NO: 810745343, 810745344,
810745568,
810745621, 810745722,
CARTON 1 - 866
MADE IN INDIA

<u>Description of Goods</u>

CHRITMAS ORNAMENT MADE OF IRON, WITH MANGO WOOD, JUTE
OTHER HANDICRAFTS OF ALUMINIUM
PO NO: 95415354
SKU NO: 810745343, 810745344, 810745568, 810745621,
810745722.
QTY: 866
GR.WT: 4158.750 KGS
SB.NO: 2747762 DT. 27/07/2024

*LAKRI FAZALPUR, MINI BYPASS
DELHI ROAD, MORADABAD-244001, INDIA

ONEU0568532 (PART)        SEAL# INA249588        40H  DRY

SHIP TO CODE & LOCATION : 00879-DURANT, OK
SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
MATERIAL

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services  provider for its customer who is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers' Instructions received  in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or   equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the   remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)      By accepting these Conditions, Shipper  agrees to be bound by all stipulations, exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)      By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)      The description and  particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)      The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e)      The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing,  stowage, labelling, and/or  marking are appropriate to the storage, handling, and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)      Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)      Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS.  Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS. Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

h)      Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

      i)       The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

      ii)      The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

i)      Description of Cargoes: All descriptions, values, and other   particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

j)      Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

k)      Delivery of Cargoes:  The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their  arrival at destination  and shall  pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive  materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods.  Shipper's notice  will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE PROVIDED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests  or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)      A force majeure event;

b)      Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is unable to avoid by the exercise of reasonable diligence;

c)      Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)      Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for  loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)      The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)      Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability -- Except as set forth in this  Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of  contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties,  taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any  authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.    Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub- contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of  Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or as to any special interest  in delivery unless express instructions in writing were previously given to and accepted by Company.  A mere statement or declaration of the value or nature of cargoes for  insurance or export  or customs or  other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable  for any duties, taxes,  levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.  Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of whatsoever nature due to Company  and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including  but not limited to storage charges) and in recovering or  attempting to recover any sums due from Shipper or  the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.  Company shall be entitled to claim the difference against Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3    Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently addressed  or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)      In the case of damage to goods, the date of delivery of cargoes;

b)      In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

c)      In any other case, the date of the event giving  rise to the claim.

13.2    No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14    TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice  thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived  at the destination (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for the  payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions  and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-MUN-2400125**

| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | Maker/Supplier's INVOICE No.<br>**DS690-24** |
|---|---|---|
| Buyer/Consignee : | AVDC, LLC<br>18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA | Dated: **July 29, 2024** |
| Shipment From : | MUNDRA        To : APPLE VALLEY, CA | Date of Receipt of Cargo<br>**August 02, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95268210<br>SKU NO: 810625001, 810732386<br>CARTON 1 - 457<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>          5101 S. BROAD STREET<br>          PHILADELPHIA, PA 19112-1404, U.S.A.<br>          ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>          1300 SOUTH MINT STREET SUITE 200<br>          CHARLOTTE NC 28203 USA<br>          TEL: 704-593-6329<br>          EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CY-CY<br><br>CHRISTMAS ORNAMENT MADE OF IRON<br>PO NO: 95268210<br>SKU NO: 810625001, 810732386<br>QTY: 1828<br>GR.WT: 3473.2 KGS<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>DFSU6855120 (PART)    SEAL# IN1642060        40H DRY<br><br>SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 457 CARTONS | | 39.043 CBM | 3,473.20 KGS |

===============================================================
TOTAL : FOUR HUNDRED FIFTY-SEVEN (457) CARTONS ONLY

          "FREIGHT COLLECT"
SHIPMENT PER S.S. "SAN DIEGO BRIDGE" VOY NO. 071E    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT August 7, 2024. CARGO RECEIVED ON August 2, 2024.

---

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA | **August 9, 2024** |
|---|---|---|

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**

For Yusen Logistics (India) Private Limited

Authorised Signatory
                                    As Agent

(Authorized Signature)                    V2

# Yusen Logistics

Yusen Logistics - Yusen Logistics                    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-MUN-2400125**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | **DS690-24** |
| Buyer/Consignee : | AVDC, LLC<br>18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA | Dated: **July 29, 2024** |
| Shipment From : | MUNDRA          To : APPLE VALLEY, CA | Date of Receipt of Cargo<br>**August 02, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95268210<br>SKU NO: 810625001, 810732386<br>CARTON 1 - 457<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>            5101 S. BROAD STREET<br>            PHILADELPHIA, PA 19112-1404, U.S.A.<br>            ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>            1300 SOUTH MINT STREET SUITE 200<br>            CHARLOTTE NC 28203 USA<br>            TEL: 704-593-6329<br>            EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CY-CY<br><br>CHRISTMAS ORNAMENT MADE OF IRON<br>PO NO: 95268210<br>SKU NO: 810625001, 810732386<br>QTY: 1828<br>GR.WT: 3473.2 KGS<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>DFSU6855120 (PART)     SEAL# IN1642060          40H  DRY<br><br>SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 457 CARTONS | | 39.043 CBM | 3,473.20 KGS |

=================================================================
TOTAL : FOUR HUNDRED FIFTY-SEVEN (457) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "SAN DIEGO BRIDGE" VOY NO. 071E   DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT August 7, 2024. CARGO RECEIVED ON August 2, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA                    **August 9, 2024** |
|---|---|
| **Non-Negotiable**<br><br>Copy | (Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br>As Agent<br>V2 |

Non-Negotiable Copy

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services  provider for its customer who  is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers'  Instructions received  in writing at the time of  receipt.

1.3.    "Shipper" means the vendor tendering  items to Company for Services and any  person at whose request  or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection,  delivery, local transportation, insurance, customs clearance, packing,   unpacking, and other  handling of goods and other  services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or   equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency,  shall  be null and void in relation to such element of the Services by Company, but the   remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound by all stipulations,  exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the  Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and  particulars relating to the  cargoes set out on the front hereof:  (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)    The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal  material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of  customs, port, import, export, and other authorities;

g)    Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS. Proper Packing, etc.:  All the cargoes, the subject of any Service provided by Company,  have been properly and sufficiently packed and/or  prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i)    The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and

ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values, and other   particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)    Fitness of Cargoes:  The cargoes are fit  and suitable for the  carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)    Delivery of Cargoes:  The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their  arrival at destination  and shall  pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods.  Shipper's notice  will include all information  necessary for Company to perform  its obligation in connection with  the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and  method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in  breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE OFFERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's  interest is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered  into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY:  (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is unable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability -- Except as set forth in in this  Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence,  willful misconduct, or fundamental breach of  contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all  claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties,  taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising  out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Third-party.

7.2.    Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper  shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided  by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting  Company as if such provisions were expressly for his or its benefit.  For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend, indemnify, and  hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality  of the foregoing this indemnity shall include (without  limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub  -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion  of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously given to and accepted by Company.  A mere statement or declaration of the value or nature of cargoes for  insurance or export  or customs or other purposes is not and shall not be construed to be Shipper's instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable  for any duties, taxes, levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper,  directly or indirectly in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or the ultimate consignee.   Company may at  its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including but not limited to storage charges) and in recovering or  attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.   Company shall be entitled to claim the difference against Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall survive delivery or deemed delivery of cargoes.

11.3    Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently  addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to  delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.   Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any  claim, counterclaim, or set  -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14    TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought  in the proper forum and written notice  thereof received by Company within three 3 months from the date cargoes  arrived at the destination or the date cargoes should have arrived  at the destination (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company shall comply with obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk  for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions and any act or contract to which they apply shall be governed by and construed  according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

| FORWARDER'S CARGO RECEIPT No. | CNS-MUN-2400126 |
|---|---|

| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | Maker/Supplier's INVOICE No.<br>**DS691-24** |
|---|---|---|
| Buyer/Consignee : | AVDC, LLC<br>18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA | Dated : **July 29, 2024** |
| Shipment From : | MUNDRA                    To : APPLE VALLEY, CA | Date of Receipt of Cargo<br>**August 06, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95399572<br>SKU NO: 810745643<br>CARTON 1 - 177<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>    1300 SOUTH MINT STREET SUITE 200<br>    CHARLOTTE NC 28203 USA<br>    TEL: 704-593-6329<br>    EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>    CY-CY<br><br>    CHRISTMAS ORNAMENT MADE OF IRON<br>    PO NO: 95399572<br>    SKU NO: 810745643<br>    QTY: 708<br>    GR.WT: 1345.2 KGS<br><br>    *MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>    SHIPPER'S LOAD, COUNT AND SEAL<br>    SAID TO CONTAIN<br>    DFSU6855120 (PART)    SEAL# IN1642060    40H  DRY<br><br>    SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA<br>    SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>    MATERIAL | | | |
| | 177 CARTONS | | 14.572 CBM | 1,345.20 KGS |

TOTAL : ONE HUNDRED SEVENTY-SEVEN (177) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "SAN DIEGO BRIDGE" VOY NO. 071E   DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT August 7, 2024. CARGO RECEIVED ON August 6, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA | **August 9, 2024** |
|---|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>For Yusen Logistics (India) Private Limited<br><br><br>Authorised Signatory    As Agent | |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)    V3 | |

ORIGINAL

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.        **CNS-MUN-2400126**

| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* |
|---|---|
| Buyer/Consignee : | AVDC, LLC<br>18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA |
| Shipment From : | MUNDRA          To : APPLE VALLEY, CA |

Maker/Supplier's INVOICE No.
**DS691-24**

Dated: **July 29, 2024**

Date of Receipt of Cargo
**August 06, 2024**

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95399572                         5101 S. BROAD STREET
SKU NO: 810745643                       PHILADELPHIA, PA 19112-1404, U.S.A.
CARTON 1 - 177                          ATTN: ALENA LAMINA
MADE IN INDIA                ALSO NOTIFY: EDRAY 2020 LLC.
                                        1300 SOUTH MINT STREET SUITE 200
                                        CHARLOTTE NC 28203 USA
                                        TEL: 704-593-6329
                                        EMAIL: DATAQUALITY@EDRAYCPL.COM

                             CY-CY

                             CHRISTMAS ORNAMENT MADE OF IRON
                             PO NO: 95399572
                             SKU NO: 810745643
                             QTY: 708
                             GR.WT: 1345.2 KGS

                             *MORADABAD, UTTAR PRADESH 244001, INDIA

                             SHIPPER'S LOAD, COUNT AND SEAL
                             SAID TO CONTAIN
                             DFSU6855120 (PART)     SEAL# IN1642060        40H  DRY

                             SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA
                             SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                             MATERIAL


                             177 CARTONS                14.572 CBM    1,345.20 KGS
                             ==========================================================
                             TOTAL : ONE HUNDRED SEVENTY-SEVEN (177) CARTONS ONLY

                             "FREIGHT COLLECT"
SHIPMENT PER S.S. "SAN DIEGO BRIDGE" VOY NO. 071E   DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT August 7, 2024. CARGO RECEIVED ON August 6, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | |
|---|---|
| **Non-Negotiable**<br><br>Copy | MUNDRA                    **August 9, 2024**<br><br>(Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br><br>As Agent<br>V3 |

Non-Negotiable Copy

Forwarders Cargo Receipt
Terms and Conditions

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS. Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDERTAKE THE CARRIAGE OR PERFORMANCE IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE PROVIDED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interest is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is unable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1 Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship pe's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2 Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3 Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4 Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3 Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12. RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13. NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-MUN-2400127**

| | |
|---|---|
| Maker/Supplier : **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD, MORADABAD.** | Maker/Supplier's INVOICE No.<br>**DS692-24** |
| Buyer/Consignee : **AVDC, LLC**<br>**18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated: **July 29, 2024** |
| Shipment From :   **MUNDRA**          To : **APPLE VALLEY, CA** | Date of Receipt of Cargo<br>**August 02, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95399832<br>SKU NO: 810745369<br>CARTON  1 - 211<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>        5101 S. BROAD STREET<br>        PHILADELPHIA, PA 19112-1404, U.S.A.<br>        ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>        1300 SOUTH MINT STREET SUITE 200<br>        CHARLOTTE NC 28203 USA<br>        TEL: 704-593-6329<br>        EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CY-CY<br><br>CHRISTMAS ORNAMENT MADE OF MARBLE, ALUMINUM AND IRON<br>PO NO: 95399832<br>SKU NO: 810745369<br>QTY: 211<br>GR.WT: 817.63 KGS<br>SB.NO: 2876237 DT. 01/08/2024<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>DFSU6855120 (PART)      SEAL# IN1642060      40H  DRY<br><br>SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 211 CARTONS | | 4.965 CBM | 817.63 KGS |

==================================================================
TOTAL : TWO HUNDRED ELEVEN (211) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "SAN DIEGO BRIDGE" VOY NO. 071E   DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT August 7, 2024. CARGO RECEIVED ON August 2, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **MUNDRA**          **August 9, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>**For Yusen Logistics (India) Private Limited**<br><br>**Authorised Signatory**<br>As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)          V3 |

ORIGINAL

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-MUN-2400127**

| | |
|---|---|
| Maker/Supplier : | **DEWAN & SONS** |
| | **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD, MORADABAD.** |
| Buyer/Consignee : | **AVDC, LLC** |
| | **18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** |
| Shipment From : | **MUNDRA**        To : **APPLE VALLEY, CA** |

Maker/Supplier's INVOICE No.
**DS692-24**

Dated : **July 29, 2024**

Date of Receipt of Cargo
**August 02, 2024**

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95399832<br>SKU NO: 810745369<br>CARTON  1 - 211<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>  5101 S. BROAD STREET<br>  PHILADELPHIA, PA 19112-1404, U.S.A.<br>  ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>  1300 SOUTH MINT STREET SUITE 200<br>  CHARLOTTE NC 28203 USA<br>  TEL: 704-593-6329<br>  EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>  CY-CY<br><br>CHRISTMAS ORNAMENT MADE OF MARBLE, ALUMINUM AND IRON<br>PO NO: 95399832<br>SKU NO: 810745369<br>QTY: 211<br>GR.WT: 817.63 KGS<br>SB.NO: 2876237 DT. 01/08/2024<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>DFSU6855120 (PART)     SEAL# IN1642060      40H  DRY<br><br>SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| 211 CARTONS | | | 4.965 CBM | 817.63 KGS |

TOTAL : TWO HUNDRED ELEVEN (211) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "SAN DIEGO BRIDGE" VOY NO. 071E   DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT August 7, 2024. CARGO RECEIVED ON August 2, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | |
|---|---|
| **Non-Negotiable**<br><br>Copy | MUNDRA                         **August 9, 2024**<br><br>(Place and date of issue.)<br><br>**YUSEN LOGISTICS**<br><br><br><br>                                              As Agent<br>**V3** |

Non-Negotiable
Copy

Forwarders Cargo Receipt
Terms and Conditions

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS. Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or properly prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

h) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and to so comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE OFFERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interest is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is unable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability -- Except as set forth in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1 Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2 Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3 Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub-contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4 Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3 Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12. RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13. NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-MUN-2400128**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | **DS693-24** |
| Buyer/Consignee : | **AVDC, LLC**<br>**18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated: **July 29, 2024** |
| Shipment From : | **MUNDRA**      To : **APPLE VALLEY, CA** | Date of Receipt of Cargo<br>**August 06, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS STORES**<br>**PO NO: 95259315**<br>**SKU NO: 810641927, 810641933,**<br>**810641961, 810641963**<br>**CARTON 1 - 1166**<br>**MADE IN INDIA** | **NOTIFY PARTY: GEODIS**<br>   **5101 S. BROAD STREET**<br>   **PHILADELPHIA, PA 19112-1404, U.S.A.**<br>   **ATTN: ALENA LAMINA**<br>**ALSO NOTIFY: EDRAY 2020 LLC.**<br>   **1300 SOUTH MINT STREET SUITE 200**<br>   **CHARLOTTE NC 28203 USA**<br>   **TEL: 704-593-6329**<br>   **EMAIL: DATAQUALITY@EDRAYCPL.COM**<br><br>   **CY-CY**<br><br>   **ARTWARE / HANDICRAFTS OF ALUMINIUM, CHRISTMAS ORNAMENT MADE**<br>   **OF IRON WITH ROPE**<br>   **PO NO: 95259315**<br>   **SKU NO: 810641927, 810641933, 810641961, 810641963**<br>   **QTY: 5234**<br>   **GR.WT: 3987.9 KGS**<br>   **SB.NO: 2876230 DT. 01/08/2024**<br><br>   **\*MORADABAD, UTTAR PRADESH 244001, INDIA**<br><br>   **SHIPPER'S LOAD, COUNT AND SEAL**<br>   **SAID TO CONTAIN**<br>   **TCNU4904547 (PART)      SEAL# IN1642055        40H  DRY**<br><br>   **SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA**<br>   **SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING**<br>   **MATERIAL** | | |
| **1,166 CARTONS** | | | **28.413 CBM** | **3,987.90 KGS** |

**===================================================================**
**TOTAL : ONE THOUSAND ONE HUNDRED SIXTY-SIX (1,166) CARTONS**
**ONLY**

   **"FREIGHT COLLECT"**
**SHIPMENT PER S.S. "SAN DIEGO BRIDGE" VOY NO. 071E    DISCHARGED AT LOS ANGELES, CA**
**SAILING ON / ABOUT August 7, 2024. CARGO RECEIVED ON August 6, 2024.**

| THIS IS NOT A DOCUMENT OF TITLE | **MUNDRA**    **August 9, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>**For Yusen Logistics (India) Private Limited**<br><br>**Authorised Signatory**<br>                                              As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    **V3** |

ORIGINAL

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-MUN-2400128**

| | |
|---|---|
| Maker/Supplier : **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD***| Maker/Supplier's INVOICE No.<br>**DS693-24** |
| Buyer/Consignee : **AVDC, LLC**<br>**18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated: **July 29, 2024** |
| Shipment From : **MUNDRA**     To : **APPLE VALLEY, CA** | Date of Receipt of Cargo<br>**August 06, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95259315                          5101 S. BROAD STREET
SKU NO: 810641927, 810641933,            PHILADELPHIA, PA 19112-1404, U.S.A.
810641961, 810641963                     ATTN: ALENA LAMINA
CARTON 1 - 1166             ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN INDIA                            1300 SOUTH MINT STREET SUITE 200
                                         CHARLOTTE NC 28203 USA
                                         TEL: 704-593-6329
                                         EMAIL: DATAQUALITY@EDRAYCPL.COM

                           CY-CY

                           ARTWARE / HANDICRAFTS OF ALUMINIUM, CHRISTMAS ORNAMENT MADE
                           OF IRON WITH ROPE
                           PO NO: 95259315
                           SKU NO: 810641927, 810641933, 810641961, 810641963
                           QTY: 5234
                           GR.WT: 3987.9 KGS
                           SB.NO: 2876230 DT. 01/08/2024

                           *MORADABAD, UTTAR PRADESH 244001, INDIA

                           SHIPPER'S LOAD, COUNT AND SEAL
                           SAID TO CONTAIN
                           TCNU4904547 (PART)     SEAL# IN1642055          40H DRY

                           SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA
                           SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                           MATERIAL
1,166 CARTONS                                    28.413 CBM    3,987.90 KGS
==============================================================================
TOTAL : ONE THOUSAND ONE HUNDRED SIXTY-SIX (1,166) CARTONS
ONLY

      "FREIGHT COLLECT"
SHIPMENT PER S.S. "SAN DIEGO BRIDGE" VOY NO. 071E   DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT August 7, 2024. CARGO RECEIVED ON August 6, 2024.
```

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE | **MUNDRA**          **August 9, 2024** |
| **Non-Negotiable** | (Place and date of issue.) |
| Copy | **YUSEN LOGISTICS** |
| | As Agent |
| | V3 |

Non-Negotiable Copy

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate  entities issuing these Conditions in its  capacity as an origin services  provider for its customer who  is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein,  and includes terms and conditions on the  front and any Shippers' Instructions received  in writing at the time of receipt of this shipment.

1.3.    "Shipper" means the vendor tendering  items to Company for Services and any person  at whose request or on whose behalf Shipper  undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of  Shipper's specific written shipping instructions  or requirements delivered to Company at the time  of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes,  regulations, or conventions which apply  compulsorily  to any element of the Services or any subject matter  incidental to these Conditions.

1.6.    "Services" means the origin services to  be provided by Company and includes the receipt  of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other handling of goods and other services  intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes  (including any packings, containers, or  equipment other than those provided by Customer or carriers) to  which any business concluded under these Conditions relate s and any other person who is or may become interested  in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent  of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the  remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate  to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any  applicable Laws.

2.3    Any and all advice information or Services  provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever  therefo  re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound by all stipulations,  exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the  Owner or person owning or entitled to the possession  of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and  particulars relating to the  cargoes set out on the front hereof:  (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)    The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other illegal  material or substance or stowaways;

e)    The cargoes have been properly and  sufficiently prepared,  packed, stowed, labelled,  and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling,  and any operations or transactions that may affect  the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws,  requirements, directions, recommendations,  rules, guidelines of customs, port, import, export, and  other authorities;

g)    Shipper shall provide the total gross mass  established using calibrated and certified equipment  of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company  will rely on the  accuracy and timeliness  of such gross mass information and will use this to  comply with its obligations in accordance  with SOLAS. Proper Packing, etc.: All the cargoes, the subject  of any Service provided by Company,  have been properly and sufficiently packed and/or  prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

h)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i)    The transport unit is in good condition, is suitable  to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and

ii)    The cargoes are suitable for carriage and other handling  in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate,  it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)    Fitness of Cargoes: The cargoes are fit  and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related,  or incidental to Shipper's Instructions.

l)    Delivery of Cargoes:  The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their arrival at destination  and shall  pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive,  or which  do or may present a risk of damage to any property or person whatsoever  ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods.  Shipper's notice  will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner  and method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly  marked on the outside so as to indicate the nature  and characteristics of the Dangerous Goods and to  do so as to comply with all Laws.

4.3    Additional charges may apply to the storage  and handling of Dangerous Goods.  If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A)  ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT  UNDERTAKE THE CONTRACTUAL POSITION IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING  COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM  IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE  CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND  CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE;  AND C) SERVICES ARE PROVIDED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION  WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate  from Shipper Instructions in any respect if in the opinion  of Company such departure or deviation is necessary  or desirable in Shipper's interests  or is expedient.

5.3    Company is authorized by Shipper to act or  to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party  the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed  that the difference between the charges  payable by Company to 3rd Party(ies), and the charges payable by Shipper to  Company is Company's  commission or remuneration or profit.  Shipper waives any and has  no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to  inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for  Shipper's goods to be carried, forwarded, packed, unpacked, stored,  or handled separately.  Company is authorized (but not  obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all  respects by any act, conduct, or arrangement entered  into by Company with third-parties pursuant to the aforesaid  authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments  under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT  HEREBY WAIVES ALL CLAIMS AGAINST COMPANY:  (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO  THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED  WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING  PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE  RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE  PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL,  OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE,  INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any,  shall be determined and limited in accordance with this Section.

6.3    Liability for  Loss or Damage to Cargoes – Without  prejudice to any other right or remedies Company may have, Company shall be relieved of liability  for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor,  the consequences of  which Company is unable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is  unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of  reasonable diligence; or

d)    Compliance with instructions or directions of  Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation -  Subject to these Conditions, if Company is liable for  loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only  those cargoes damaged or lost (excluding insurance); or

b)    Two (2) SDRs per kilo of the gross weight of  any cargoes lost or damaged.

6.5    No insurance will be arranged by Company  for the benefit of Shipper.

6.6    Entire Liability – Except as set forth in  this Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions  of Liability – The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out  of or  in connection with the Services (including  loss or damage to cargoes) and whether the action  be founded in contract, bailment, tort, breach of expres s  or  implied warranty, or  otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct,  or fundamental breach of  contract.

6.8    By special arrangement which must be agreed  to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses  (including without  limitation all duties,  taxes, imposts, levies, deposits, fines, and outlays of  whatsoever nature levied by any authority) arising  out of Company acting in accordance with Ship pe's  Instructions, or arising from a breach of  warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or  instructions, or arising from the negligence of Shipper or Third-Party.

7.2    Advice and information, in whatever form as  may be given  by Company, are provided  by Company for Shipper only and Shipper shall save harmless and  indemnify and keep  indemnified Company from and against all claims, liabilities, losses,  damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific  instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3    Shipper undertakes that no claim shall  be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or attempts  to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such  claim should nevertheless be made  Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall  have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper  contracts for itself as well as agents for all the aforesaid persons.

7.4    Shipper shall defend, indemnify, and hold  harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made  or preferred in excess of the liability of Company  under the terms of these Conditions,  and without prejudice  to the generality of the foregoing this indemnity  shall include (without  limitation) all claims, costs,  and demands arising from or  in connection with the negligence of Company, its officers, servants, agents,  or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after provision  of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the  Owner at any place at the sole discretion  of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any  declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods  or  as to any special interest  in delivery unless express instructions in writing were previously  given to and accepted by Company.  A mere statement or declaration of the value or nature of cargoes  for  insurance or export  or customs or  other purposes is not and shall not be construed to be Shipper's Instructions  to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable  for any duties, taxes,  levies, deposits, or outlays  of any kind levied  by the authorities at any port or place for or in  connection with cargoes and for  any payments,  storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all  cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates  from Shipper or  the ultimate consignee.  Company may at  its sole discretion exercise its lien at any  time and at any place.  The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its affiliates  and inclusive of any costs incurred enforcing  and preserving its  lien (including  but not limited to storage charges) and in recovering or attempting to recover  any sums due from Shipper or the ultimate consignee  (whether in respect of the storage and handling  herein or otherwise).

11.2    Company shall be entitled to sell (at any  time and at any place) at the costs of Shipper cargoes  and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.   Company shall be entitled to  claim the difference against Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall survive delivery  or deemed delivery of cargoes.

11.3    Perishable cargoes which are not  taken up immediately upon arrival or  which are insufficiently  addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without  any notice to Shipper or the Owner and payment or  tender of the net proceeds of  any sale after deduction  of charges and expenses shall  be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are  independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for  the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.   Shipper shall pay to  Company all sums immediately  when due without deduction or deferment on account of any  claim, counterclaim, or set  -off.

12.2    Company at its discretion  may request an  advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice  is rendered.  Forthwith upon such request  being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company,  Company shall be entitled to interest  calculated on a monthly  basis from the date such accounts are overdue until payment  thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing  and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days  of:

a)    In the case of damage to goods, the date  of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery  of cargoes, the date  that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if  the claim is not made within the times and in the manner  specified herein.

**14.    TIME BAR**

14.1    Any right of action against Company shall be  extinguished  if suit is not brought in the proper forum  and within notice  thereof  received by Company within three 3 months  from the date cargoes  arrived at the destination or the date cargoes should  have arrived  at the destination (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that:  (a) Company shall not  be responsible to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate  obligations  for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk  for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions  and any act or contract to  which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-MUN-2400129**

| | | Maker/Supplier's INVOICE No. |
|---|---|---|
| Maker/Supplier : | DEWAN & SONS<br>LAKRI FAZALPUR, MINI BYPASS DELHI ROAD* | **DS694-24** |
| Buyer/Consignee : | AVDC, LLC<br>18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA | Dated: **July 29, 2024** |
| Shipment From : | MUNDRA    To : APPLE VALLEY, CA | Date of Receipt of Cargo<br>**August 02, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95415351<br>SKU NO: 810745343, 810745344,<br>810745621, 810745653,<br>810745722<br>CARTON 1 - 937<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>            5101 S. BROAD STREET<br>            PHILADELPHIA, PA 19112-1404, U.S.A.<br>            ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>            1300 SOUTH MINT STREET SUITE 200<br>            CHARLOTTE NC 28203 USA<br>            TEL: 704-593-6329<br>            EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>            CY-CY<br><br>            CHRITMAS ORNAMENT MADE OF IRON WITH MANGO WOOD, JURE, ROPE<br>            PO NO: 95415351<br>            SKU NO: 810745343, 810745344,81 0745621, 810745653,<br>            810745722<br>            QTY: 1495<br>            GR.WT: 4409.7 KGS<br>            SB.NO: 2876227 DT. 01/08/2024<br><br>            *MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>            SHIPPER'S LOAD, COUNT AND SEAL<br>            SAID TO CONTAIN<br>            TCNU4904547 (PART)    SEAL# IN1642055    40H DRY<br><br>            SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA<br>            SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>            MATERIAL<br>            937 CARTONS | | 28.485 CBM    4,409.70 KGS |

=========================================================================
TOTAL : NINE HUNDRED THIRTY-SEVEN (937) CARTONS ONLY

            "FREIGHT COLLECT"
SHIPMENT PER S.S. "SAN DIEGO BRIDGE" VOY NO. 071E    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT August 7, 2024. CARGO RECEIVED ON August 2, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA    **August 9, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>**For Yusen Logistics (India) Private Limited**<br><br>**Authorised Signatory**    As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)    V3 |

ORIGINAL

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-MUN-2400129**

| | |
|---|---|
| Maker/Supplier : **DEWAN & SONS** **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | Maker/Supplier's INVOICE No. **DS694-24** |
| Buyer/Consignee : **AVDC, LLC** **18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated: **July 29, 2024** |
| Shipment From : **MUNDRA**     To : **APPLE VALLEY, CA** | Date of Receipt of Cargo **August 02, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES PO NO: 95415351 SKU NO: 810745343, 810745344, 810745621, 810745653, 810745722 CARTON 1 - 937 MADE IN INDIA | | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM | | |

CY-CY

CHRITMAS ORNAMENT MADE OF IRON WITH MANGO WOOD, JURE, ROPE
PO NO: 95415351
SKU NO: 810745343, 810745344,81 0745621, 810745653,
810745722
QTY: 1495
GR.WT: 4409.7 KGS
SB.NO: 2876227 DT. 01/08/2024

\*MORADABAD, UTTAR PRADESH 244001, INDIA

SHIPPER'S LOAD, COUNT AND SEAL
SAID TO CONTAIN
TCNU4904547 (PART)      SEAL# IN1642055          40H  DRY

SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA
SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
MATERIAL

| | | | | |
|---|---|---|---|---|
| 937 CARTONS | | | 28.485 CBM | 4,409.70 KGS |

TOTAL : NINE HUNDRED THIRTY-SEVEN (937) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "SAN DIEGO BRIDGE" VOY NO. 071E   DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT August 7, 2024. CARGO RECEIVED ON August 2, 2024.

Non-Negotiable
Copy

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA                     **August 9, 2024** |
|---|---|
| **Non-Negotiable** **Copy** | (Place and date of issue.) **YUSEN LOGISTICS** |
| | As Agent |
| | V3 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services  provider for its customer who  is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers' Instructions received  in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering  items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection,  delivery, local transportation, insurance, customs clearance, packing,   unpacking, and other  handling of goods and other services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the  remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously  is provided on the basis that Company will not accept any liability whatsoever therefo  re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound by all stipulations,  exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and  particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)    The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other  illegal material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling,  and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS. Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company,  have been properly and sufficiently packed and/or prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

h)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i)    The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and

ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

i)    Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

j)    Fitness of Cargoes: The cargoes are fit  and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

k)    Delivery of Cargoes: The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their  arrival at destination  and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company  has expressly accepted in writing to deal  with the Dangerous Goods. Shipper's notice  will include all information necessary for Company to perform  its obligation in connection with  the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and  method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may  apply to the storage and handling of Dangerous Goods.  If any Dangerous Goods are tendered in breach of this Section,  they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE PROVIDED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests  or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered  into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is unable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability -- Except as set forth in this  Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever  for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of  contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Third-party.

7.2.    Advice and information, in whatever form as may be given  by Company, are provided  by Company for Shipper only and Shipper  shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences  thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit of  all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend,  indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability  of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without  limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub  -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion  of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously  given to and accepted by Company.  A mere statement or declaration of the value or  nature of cargoes for  insurance or export  or customs or  other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable  for any duties, taxes,  levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or  in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or its affiliates from Shipper or  the ultimate consignee.   Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including  but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether  in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.  Company shall be entitled to claim the difference against Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3    Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to  delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12.    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set  -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1    Any claim against Company must be in writing  and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14    TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice thereof received by Company within three  3 months from the date cargoes arrived at the destination or the date cargoes should have arrived  at  the destination (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk  for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions  and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics       Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-MUN-2400135**

| Maker/Supplier : | **DEWAN & SONS** **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** |
|---|---|
| Buyer/Consignee : | **AVDC, LLC** **18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** |
| Shipment From : | **MUNDRA**      To : **APPLE VALLEY, CA** |

Maker/Supplier's INVOICE No.
**DS713-24**

Dated :   **July 30, 2024**

Date of Receipt of Cargo
**August 09, 2024**

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br>PO NO: 95415351<br>SKU NO: 810745370,<br>810745628, 810745660<br>CARTON 1 - 782<br>MADE IN INDIA | | NOTIFY PARTY: GEODIS<br>    5101 S. BROAD STREET<br>    PHILADELPHIA, PA 19112-1404, U.S.A.<br>    ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>    1300 SOUTH MINT STREET SUITE 200<br>    CHARLOTTE NC 28203 USA<br>    TEL: 704-593-6329<br>    EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>    CY-CY<br><br>CHRISTMAS ORNAMENT MADE OF IRON WITH MANGO WOOD, JURE<br>PO NO: 95415351<br>SKU NO: 810745370, 810745628, 810745660<br>QTY: 782<br>GR.WT: 4667.000 KGS<br>SB.NO: 3033487 DT. 07/08/2024<br><br>*MORADABAD, UTTAR PRADESH 244001, INDIA<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>TLLU7968551      SEAL# TSL325919      40H DRY<br><br>SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL<br><br>782 CARTONS | | 67.374 CBM |
| | | | | 4,667.00 KGS |

========================================================
TOTAL : SEVEN HUNDRED EIGHTY-TWO (782) CARTONS ONLY

     "FREIGHT COLLECT"
SHIPMENT PER S.S. "SHIMIN" VOY NO. 0VBHXW1MA    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT August 15, 2024. CARGO RECEIVED ON August 9, 2024.

---

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA          **August 13, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>For Yusen Logistics (India) Private Limited<br><br>Authorised Signatory<br>                    As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)        V3 |

ORIGINAL

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.          **CNS-MUN-2400135**

| | |
|---|---|
| Maker/Supplier : **DEWAN & SONS** <br> **LAKRI FAZALPUR, MINI BYPASS DELHI ROAD*** | Maker/Supplier's INVOICE No. <br> **DS713-24** |
| Buyer/Consignee : **AVDC, LLC** <br> **18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated : **July 30, 2024** |
| Shipment From : **MUNDRA**    To : **APPLE VALLEY, CA** | Date of Receipt of Cargo <br> **August 09, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES              NOTIFY PARTY: GEODIS
PO NO: 95415351                  5101 S. BROAD STREET
SKU NO: 810745370,               PHILADELPHIA, PA 19112-1404, U.S.A.
810745628, 810745660             ATTN: ALENA LAMINA
CARTON 1 - 782          ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN INDIA                    1300 SOUTH MINT STREET SUITE 200
                                 CHARLOTTE NC 28203 USA
                                 TEL: 704-593-6329
                                 EMAIL: DATAQUALITY@EDRAYCPL.COM

                             CY-CY

                             CHRISTMAS ORNAMENT MADE OF IRON WITH MANGO WOOD, JURE
                             PO NO: 95415351
                             SKU NO: 810745370, 810745628, 810745660
                             QTY: 782
                             GR.WT: 4667.000 KGS
                             SB.NO: 3033487 DT. 07/08/2024

                             *MORADABAD, UTTAR PRADESH 244001, INDIA

                             SHIPPER'S LOAD, COUNT AND SEAL
                             SAID TO CONTAIN
                             TLLU7968551          SEAL# TSL325919          40H DRY

                             SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA
                             SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                             MATERIAL

                             782 CARTONS          67.374 CBM    4,667.00 KGS
                             ==============================================================
                             TOTAL : SEVEN HUNDRED EIGHTY-TWO (782) CARTONS ONLY

                "FREIGHT COLLECT"
SHIPMENT PER S.S. "SHIMIN" VOY NO. 0VBHXW1MA    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT August 15, 2024. CARGO RECEIVED ON August 9, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA          **August 13, 2024** |
|---|---|
| **Non-Negotiable** <br><br> Copy | (Place and date of issue.) <br><br> **YUSEN LOGISTICS** <br><br> As Agent <br> V3 |

Non-Negotiable Copy (watermark)

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS. Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

h) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:
   i)   The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and
   ii)  The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

i) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

j) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

k) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and to do so comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE PROVIDED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interest is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;
b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is unable to avoid by the exercise of reasonable diligence;
c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or
d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:
a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or
b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability -- Except as set forth in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3 Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12. RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13. NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:
a) In the case of damage to goods, the date of delivery of cargoes;
b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and
c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Yusen Logistics

Yusen Logistics - Yusen Logistics    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-MUN-2400151**

| | | |
|---|---|---|
| Maker/Supplier: | **DEWAN & SONS**<br>**LAKRI FAZALPUR, MINI BYPASS DELHI ROAD\*** | Maker/Supplier's INVOICE No.<br>**DS714-24** |
| Buyer/Consignee : | **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **July 30, 2024** |
| Shipment From : | **MUNDRA**          To : **DURANT, OK** | Date of Receipt of Cargo<br>**August 01, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS STORES            NOTIFY PARTY: GEODIS
PO NO: 95415354                5101 S. BROAD STREET
SKU NO:                        PHILADELPHIA, PA 19112-1404, U.S.A.
810745660,810745370,810745628 ATTN: ALENA LAMINA
CARTON 1 - 761            ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN INDIA                 1300 SOUTH MINT STREET SUITE 200
                              CHARLOTTE NC 28203 USA
                              TEL: 704-593-6329
                              EMAIL: DATAQUALITY@EDRAYCPL.COM

                         CY-CY

                         CHRISTMAS ORNAMENT MADE OF IRON, WOOD, JUTE
                         PO NO: 95415354
                         SKU NO: 810745660,810745370,810745628
                         QTY: 761
                         GR.WT: 4556.7 KGS
                         SB.NO: 3118963 DT. 10/08/2024

                         *MORADABAD, UTTAR PRADESH 244001, INDIA

                         SHIPPER'S LOAD, COUNT AND SEAL
                         SAID TO CONTAIN
                         CXDU2158418        SEAL# FX31344325        40H DRY

                         SHIP TO CODE & LOCATION : 00879-DURANT, OK
                         SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                         MATERIAL

                         761 CARTONS              65.651 CBM    4,556.70 KGS
                         ================================================
                         TOTAL : SEVEN HUNDRED SIXTY-ONE (761) CARTONS ONLY

                         "FREIGHT COLLECT"
SHIPMENT PER S.S. "MSC VERACRUZ" VOY NO. 0VBHXW1MA    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT August 19, 2024. CARGO RECEIVED ON August 1, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | MUNDRA                    **August 20, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>**For Yusen Logistics (India) Private Limited**<br><br><br>**Authorised Signatory**<br>                                        As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V2 |

ORIGINAL

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefo re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and to so comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND COMPANY WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES OFFERED ARE A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Company's interest is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, conduct, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes -- Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is unable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability -- Except as set forth in in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3 Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12. RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14 TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and within notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.



**PO #**  **95152797**

| | |
|---|---|
| Date Created | 02/08/2024 |
| Version: | 0 |
| Buyer: | LECLAIRE, NICOLE |
| Do Not Ship Before: | 04/08/2024 |
| Cancel if not Shipped by: | 04/15/2024 |
| Must be Routed by: | 03/18/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-NHAVA SHEVA |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100      Fax:  580-931-2197

---

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800      Fax: 614-278-6871

---

**Purchase From Vendor:  5005521**

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:    SURENDER GANDHI
Telephone:  91-591-2478400      Fax    91-591-2478499
E-Mail:    surender@dewansons.com

---

**ADDITIONAL COMMENTS**

---

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 186 | 7,248.42 | 2,436.60 | 51.568 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.       Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.       Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.       Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.       Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.       Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.       Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.       Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.       Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.       Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| | | | | | | | | | | |
| 354 | 810720868 | DE COMBO HALLOWEEN | 0.00 | IN | 1 | | 186 | 13.10 | 3,510.56 | 06/17/2024 |
| 35074 | DST-3521 | HALOSFTHOM | | | 1 | | 186 | 5.77 | 7,248.42 | |
| 35074003 | NA | | | | | | | 38.97 | 51.568 | |
| 1 | 481072086800 | | GRM | 1.594 | A1 | | | | | |
| -->> The | above assortment | (810720868) | consists of | | | | | | | 06/17/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 354 | 810720726 | DE BOO 18X18 EMBROI | 0.00 | IN | | | 186 | 4.25 | 790.50 | 06/17/2024 |
| 35074 | DST-HW-2852 | HALOSFTHOM | | | | | 186 | | 2,416.14 | |
| 35074003 | NA | | | | | | | 12.99 | 67.283 | 24.00 |
| 2 | 481072072605 | | | 1.594 | A1 | | | | | |
| 354 | 810720727 | DE HAPPY HALLOWEEN | 0.00 | IN | | | 186 | 4.45 | 827.70 | 06/17/2024 |
| 35074 | DST-HW-2827 | HALOSFTHOM | | | | | 186 | | 2,416.14 | |
| 35074003 | NA | | | | | | | 12.99 | 65.743 | 24.00 |
| 3 | 481072072704 | | | 1.377 | A1 | | | | | |
| 354 | 810720811 | DE TRICK OR TREAT 2 | 0.00 | IN | | | 186 | 4.40 | 818.40 | 06/17/2024 |
| 35074 | DST-HW-2834 | HALOSFTHOM | | | | | 186 | | 2,416.14 | |
| 35074003 | NA | | | | | | | 12.99 | 66.128 | 24.00 |
| 4 | 481072081102 | | | 1.377 | A1 | | | | | |
| *--End of | assortment list | for -810720868 | | | | | | | | 06/17/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



**PO #**   **95193419**

| | |
|---|---|
| Date Created | 02/28/2024 |
| Version: | 2 |
| Buyer: | MERRIMAN, SAVANNAH |
| Do Not Ship Before: | 06/03/2024 |
| Cancel if not Shipped by: | 06/10/2024 |
| Must be Routed by: | 05/13/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | NHAVA SHEVA  IN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

---

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

Purchase From Vendor:   5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:     SURENDER GANDHI
Telephone:  91-591-2478400      Fax    91-591-2478499
E-Mail:      surender@dewansons.com

---

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 429 | 24,402.84 | 9,269.04 | 61.913 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 340 | 810725758 | COMBO DECORATIVE CA | 0.00 | IN | 1 | | 220 | 18.00 | 4,767.40 | 07/15/2024 |
| 34001 | DS-63008 | PILLAR&TAPERHOLDE | | | 1 | | 220 | 3.67 | 13,191.20 | |
| 34001002 | NA | | H25 | | | | | 59.96 | 63.859 | |
| 1 | 481072575809 | | GRM | 0.654 | A1 | | | | | |
| -->> The | above assortment | (810725758) | consists of | | | | | | | 07/15/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 340 | 810725826 | SILVER DECOR CANDLE | 0.00 | IN | | | 220 | 4.50 | 990.00 | 07/15/2024 |
| 34001 | DS-63008S | PILLAR&TAPERHOLDE | | | | | 220 | | 3,297.80 | |
| 34001002 | NA | | H25 | | | | | 14.99 | 69.980 | 60.22 |
| 2 | 481072582609 | | | 0.654 | A1 | | | | | |
| 340 | 810725827 | BLACK DECOR CANDLE | 0.00 | IN | | | 440 | 4.50 | 1,980.00 | 07/15/2024 |
| 34001 | DS-63008BL | PILLAR&TAPERHOLDE | | | | | 220 | | 6,595.60 | |
| 34001002 | NA | | H25 | | | | | 14.99 | 69.980 | 60.22 |
| 3 | 481072582708 | | | 0.654 | A1 | | | | | |
| 340 | 810725954 | GOLD DECOR CANDLE H | 0.00 | IN | | | 220 | 4.50 | 990.00 | 07/15/2024 |
| 34001 | DS-63008G | PILLAR&TAPERHOLDE | | | | | 220 | | 3,297.80 | |
| 34001002 | NA | | H25 | | | | | 14.99 | 69.980 | 60.22 |
| 4 | 481072595401 | | | 0.654 | A1 | | | | | |
| End of | assortment list | for -810725758 | | | | | | | | 07/15/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 340 | 810725852 | COMBO DECO SS LANTE | 0.00 | IN | 1 | | 154 | 30.36 | 7,069.28 | 07/15/2024 |
| 34001 | DS-30443 | HURRICANE&LANTERN | | | 1 | | 154 | 15.54 | 9,233.84 | |
| 34001001 | NA | | H25 | | | | | 59.96 | 23.442 | |
| 5 | 481072585204 | | GRM | 4.375 | A1 | | | | | |
| -->> The | above assortment | (810725852) | consists of | | | | | | | 07/15/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 340 | 810725769 | SILVER SS LANTERN W | 0.00 | IN | | | 154 | 7.59 | 1,168.86 | 07/15/2024 |
| 34001 | DS-30443S | HURRICANE&LANTERN | | | | | 154 | | 4,618.46 | |
| 34001001 | NA | | H25 | | | | | 29.99 | 74.692 | 80.99 |
| 6 | 481072576905 | | | 4.375 | A1 | | | | | |
| 340 | 810725790 | GOLD SS LANTERN W/H | 0.00 | IN | | | 154 | 7.59 | 1,168.86 | 07/15/2024 |
| 34001 | DS-30443G | HURRICANE&LANTERN | | | | | 154 | | 4,618.46 | |
| 34001001 | NA | | H25 | | | | | 29.99 | 74.692 | 80.99 |
| 7 | 481072579005 | | | 4.375 | A1 | | | | | |
| 340 | 810725841 | BLACK SS LANTERN W/ | 0.00 | IN | | | 308 | 7.59 | 2,337.72 | 07/15/2024 |
| 34001 | DS-30443BL | HURRICANE&LANTERN | | | | | 154 | | 9,236.92 | |
| 34001001 | NA | | H25 | | | | | 29.99 | 74.692 | 80.99 |
| 8 | 481072584108 | | | 4.375 | A1 | | | | | |
| End of | assortment list | for -810725852 | | | | | | | | 07/15/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

PO#:  95193419

Page 8 of 8

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 340 | 810727274 | COMBO DECORATIVE M | 0.00 | IN | 1 | | 55 | 11.52 | 658.94 | 07/15/2024 |
| 34011 | DS-59028 | OBJECTS&FIGURAL | | | 1 | | 55 | 0.46 | 1,977.80 | |
| 34011002 | NA | | H25 | | | | | 35.96 | 66.683 | |
| 12 | 481072727406 | | GRM | .433 | A1 | | | | | |
| -->> The | above assortment | (810727274) | consists of | | | | | | | 07/15/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 340 | 810725941 | LG DECORATIVE MUSHR | 0.00 | IN | | | 110 | 3.12 | 343.20 | 07/15/2024 |
| 34011 | DS-59028L | OBJECTS&FIGURAL | | | | | 55 | | 1,098.90 | |
| 34011002 | NA | | H25 | | | | | 9.99 | 68.769 | 24.99 |
| 13 | 481072594107 | | | | A1 | | | | | |
| 340 | 810725953 | SM DECORATIVE MUSHR | 0.00 | IN | | | 110 | 2.64 | 290.40 | 07/15/2024 |
| 34011 | DS-59028S | OBJECTS&FIGURAL | | | | | 55 | | 878.90 | |
| 34011002 | NA | | H25 | | | | | 7.99 | 66.959 | 19.99 |
| 14 | 481072595302 | | | | A1 | | | | | |
| *--End of | assortment list | for -810727274 | | | | | | | | 07/15/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



**PO #**          **95193422**

| | | See attached Terms and  Conditions for additional Big Lots requirements. A complete list of requirements can be found on the Big Lots website www.biglots.com/corporate/vendors | Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program. |

Date Created              02/28/2024
Version:                  2
Buyer:                    MERRIMAN, SAVANNAH
Do Not Ship Before:       05/20/2024
Cancel if not Shipped by: 05/27/2024
Must be Routed by:        04/29/2024
Payment Terms:            Wire Transfer + 60 Days Upon Receipt in DC
Freight Terms:            Collect
FOB:                      NHAVA SHEVA   IN

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:  580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:   5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:    SURENDER GANDHI
Telephone:  91-591-2478400    Fax    91-591-2478499
E-Mail:     surender@dewansons.com

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name   _____

Title    _____

Date    _____

| Units | Retail | Vendor Cost | IMU |
|-------|--------|-------------|-----|
| 702 | 39,931.92 | 15,167.52 | 61.913 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

## Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1. Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2. Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3. Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4. Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5. Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6. Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7. Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8. Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9. Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 340 | 810725758 | COMBO DECORATIVE CA | 0.00 | IN | 1 | | 360 | 18.00 | 7,801.20 | 07/15/2024 |
| 34001 | DS-63008 | PILLAR&TAPERHOLDE | | | 1 | | 360 | 3.67 | 21,585.60 | |
| 34001002 | NA | | H25 | | | | | 59.96 | 63.859 | |
| 1 | 481072575809 | | GRM | 0.654 | A1 | | | | | |
| -->> The | above assortment | (810725758) | consists of | | | | | | | 07/15/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 340 | 810725826 | SILVER DECOR CANDLE | 0.00 | IN | | | 360 | 4.50 | 1,620.00 | 07/15/2024 |
| 34001 | DS-63008S | PILLAR&TAPERHOLDE | | | | | 360 | | 5,396.40 | |
| 34001002 | NA | | H25 | | | | | 14.99 | 69.980 | 60.22 |
| 2 | 481072582609 | | | 0.654 | A1 | | | | | |
| 340 | 810725827 | BLACK DECOR CANDLE | 0.00 | IN | | | 720 | 4.50 | 3,240.00 | 07/15/2024 |
| 34001 | DS-63008BL | PILLAR&TAPERHOLDE | | | | | 360 | | 10,792.80 | |
| 34001002 | NA | | H25 | | | | | 14.99 | 69.980 | 60.22 |
| 3 | 481072582708 | | | 0.654 | A1 | | | | | |
| 340 | 810725954 | GOLD DECOR CANDLE H | 0.00 | IN | | | 360 | 4.50 | 1,620.00 | 07/15/2024 |
| 34001 | DS-63008G | PILLAR&TAPERHOLDE | | | | | 360 | | 5,396.40 | |
| 34001002 | NA | | H25 | | | | | 14.99 | 69.980 | 60.22 |
| 4 | 481072595401 | | | 0.654 | A1 | | | | | |
| End of | assortment list | for -810725758 | | | | | | | | 07/15/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 340 | 810725852 | COMBO DECO SS LANTE | 0.00 | IN | 1 | | 252 | 30.36 | 11,567.91 | 07/15/2024 |
| 34001 | DS-30443 | HURRICANE&LANTERN | | | 1 | | 252 | 15.54 | 15,109.92 | |
| 34001001 | NA | | H25 | | | | | 59.96 | 23.442 | |
| 5 | 481072585204 | | GRM | 4.375 | A1 | | | | | |
| -->> The | above assortment | (810725852) | consists of | | | | | | | 07/15/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 340 | 810725769 | SILVER SS LANTERN W | 0.00 | IN | | | 252 | 7.59 | 1,912.68 | 07/15/2024 |
| 34001 | DS-30443S | HURRICANE&LANTERN | | | | | 252 | | 7,557.48 | |
| 34001001 | NA | | H25 | | | | | 29.99 | 74.692 | 80.99 |
| 6 | 481072576905 | | | 4.375 | A1 | | | | | |
| 340 | 810725790 | GOLD SS LANTERN W/H | 0.00 | IN | | | 252 | 7.59 | 1,912.68 | 07/15/2024 |
| 34001 | DS-30443G | HURRICANE&LANTERN | | | | | 252 | | 7,557.48 | |
| 34001001 | NA | | H25 | | | | | 29.99 | 74.692 | 80.99 |
| 7 | 481072579005 | | | 4.375 | A1 | | | | | |
| 340 | 810725841 | BLACK SS LANTERN W/ | 0.00 | IN | | | 504 | 7.59 | 3,825.36 | 07/15/2024 |
| 34001 | DS-30443BL | HURRICANE&LANTERN | | | | | 252 | | 15,114.96 | |
| 34001001 | NA | | H25 | | | | | 29.99 | 74.692 | 80.99 |
| 8 | 481072584108 | | | 4.375 | A1 | | | | | |
| End of | assortment list | for -810725852 | | | | | | | | 07/15/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|--------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| | | | | | | | | | | |
| 340 | 810727274 | COMBO DECORATIVE M | 0.00 | IN | 1 | | 90 | 11.52 | 1,078.27 | 07/15/2024 |
| 34011 | DS-59028 | OBJECTS&FIGURAL | | | 1 | | 90 | 0.46 | 3,236.40 | |
| 34011002 | NA | | H25 | | | | | 35.96 | 66.683 | |
| 12 | 481072727406 | | GRM | .433 | A1 | | | | | |
| -->> The | above assortment | (810727274) | consists of | | | | | | | 07/15/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 340 | 810725941 | LG DECORATIVE MUSHR | 0.00 | IN | | | 180 | 3.12 | 561.60 | 07/15/2024 |
| 34011 | DS-59028L | OBJECTS&FIGURAL | | | | | 90 | | 1,798.20 | |
| 34011002 | NA | | H25 | | | | | 9.99 | 68.769 | 24.99 |
| 13 | 481072594107 | | | | A1 | | | | | |
| 340 | 810725953 | SM DECORATIVE MUSHR | 0.00 | IN | | | 180 | 2.64 | 475.20 | 07/15/2024 |
| 34011 | DS-59028S | OBJECTS&FIGURAL | | | | | 90 | | 1,438.20 | |
| 34011002 | NA | | H25 | | | | | 7.99 | 66.959 | 19.99 |
| 14 | 481072595302 | | | | A1 | | | | | |
| *--End of | assortment list | for -810727274 | | | | | | | | 07/15/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



**PO #**      **95195191**

| | |
|---|---|
| Date Created | 02/27/2024 |
| Version: | 2 |
| Buyer: | TREMPE, KAREN |
| Do Not Ship Before: | 05/20/2024 |
| Cancel if not Shipped by: | 05/27/2024 |
| Must be Routed by: | 04/29/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-NHAVA SHEVA |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK 74701-1964

Telephone: 580-931-2100     Fax: 580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800     Fax: 614-278-6871

**Purchase From Vendor:** 5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:    SURENDER GANDHI
Telephone: 91-591-2478400    Fax    91-591-2478499
E-Mail:    surender@dewansons.com

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 1,050 | 15,519.00 | 6,305.60 | 55.279 |

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:   95195191

Page 2 of 7

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008 and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 320 | 810728161 | 10IN WOODED SERVING | 0.00 | IN | 4 | | 280 | 4.15 | 1,401.68 | 07/29/2024 |
| 32002 | DS-56228L | WOODSERVE | | | 4 | | 70 | 0.86 | 2,797.20 | |
| 32002002 | NA | | HST | | | | | 9.99 | 49.890 | 15.99 |
| 1 | 481072816100 | | GRM | 0.775 | A1 | | | | | |
| 320 | 810728185 | ACACIA SERVING BOAR | 0.00 | IN | 4 | | 280 | 4.30 | 1,414.56 | 07/29/2024 |
| 32002 | DS-60381 | WOODSERVE | | | 4 | | 70 | 0.75 | 3,637.20 | |
| 32002002 | NA | | HST | | | | | 12.99 | 61.109 | 24.99 |
| 2 | 481072818500 | | GRM | 0.612 | A1 | | | | | |
| 320 | 810728110 | ACACIA ROUND SERVIN | 0.00 | IN | 4 | | 280 | 3.90 | 1,331.68 | 07/29/2024 |
| 32002 | DS-60382 | WOODSERVE | | | 4 | | 70 | 0.86 | 2,797.20 | |
| 32002002 | NA | | HST | | | | | 9.99 | 52.392 | 34.99 |
| 3 | 481072811006 | | GRM | 0.807 | A1 | | | | | |
| 320 | 810728155 | COMBO COASTER SET | 0.00 | IN | 1 | | 210 | 13.56 | 3,482.30 | 07/29/2024 |
| 32005 | DS-53910-11-12 | COUNTERTOP | | | 1 | | 210 | 3.02 | 6,287.40 | |
| 32005002 | NA | | HST | | | | | 29.94 | 44.615 | |
| 4 | 481072815509 | | GRM | 0.591 | A1 | | | | | |
| -->> The | above assortment | (810728155) | consists of | | | | | | | 07/29/2024 |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 320 | 810727979 | SET OF 4 CANE WOVEN | 0.00 | IN | | | 420 | 2.89 | 1,213.80 | 07/29/2024 |
| 32005 | DS-53911 | COUNTERTOP | | | | | 210 | | 2,095.80 | |
| 32005002 | NA | | HST | | | | | 4.99 | 42.084 | 6.99 |
| 5 | 481072797904 | | | 0.182 | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 320 | 810727980 | SET OF 4 WOODEN COA | 0.00 | IN | | | 420 | 1.75 | 735.00 | 07/29/2024 |
| 32005 | DS-53912 | COUNTERTOP | | | | | 210 | | 2,095.80 | |
| 32005002 | NA | | HST | | | | | 4.99 | 64.930 | 12.99 |
| 6 | 481072798000 | | | 0.187 | A1 | | | | | |
| 320 | 810728186 | SET OF 4 WOOD/MARBL | 0.00 | IN | | | 420 | 2.14 | 898.80 | 07/29/2024 |
| 32005 | DS-53910 | COUNTERTOP | | | | | 210 | | 2,095.80 | |
| 32005002 | NA | | HST | | | | | 4.99 | 57.114 | 12.99 |
| 7 | 481072818609 | | | 0.221 | A1 | | | | | |
| *--End of | assortment list | for -810728155 | | | | | | | | 07/29/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



**PO #**              **95252802**

| | | See attached Terms and  Conditions for additional Big Lots requirements.<br>A complete list of requirements can be found on the Big Lots website<br>www.biglots.com/corporate/vendors | Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program. |
|---|---|---|---|

Date Created           03/22/2024
Version:               1
Buyer:                 ROUNTREE, ELISA
Do Not Ship Before:    06/24/2024
Cancel if not Shipped by: 07/01/2024
Must be Routed by:     06/03/2024
Payment Terms:         Wire Transfer + 60 Days Upon Receipt in DC
Freight Terms:         Collect
FOB:                   MUNDRA        ,  IN

---

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520        Fax:

---

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

Purchase From Vendor:   5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA
Contact:
Telephone:                      Fax
E-Mail:

---

**ADDITIONAL COMMENTS**

---

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 5,038 | 87,431.62 | 27,206.00 | 67.456 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's online portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.       Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.       Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.       Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.       Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.       Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.       Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.       Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.       Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.       Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810729279 | LG BLACK STANDING M | 0.00 | IN | 4 | | 612 | 10.75 | 8,249.76 | 08/12/2024 |
| 36008 | DS-52936BL | BETERDECOR | | | 4 | | 153 | 2.73 | 18,353.88 | |
| 36008003 | Winter Wonder Lane | | H31 | | | | | 29.99 | 55.052 | |
| 1 | 481072927905 | | SEA | 3.222 | A1 | | | | | |
| 360 | 810729278 | MD BLACK STANDING M | 0.00 | IN | 4 | | 1,312 | 6.50 | 10,154.88 | 08/12/2024 |
| 36008 | DS-56088BL | BETERDECOR | | | 4 | | 328 | 1.24 | 26,226.88 | |
| 36008003 | Winter Wonder Lane | | H31 | | | | | 19.99 | 61.281 | 31.79 |
| 2 | 481072927806 | | SEA | 1.377 | A1 | | | | | |
| 360 | 810729285 | SM BLACK STANDING M | 0.00 | IN | 6 | | 1,914 | 3.50 | 7,598.58 | 08/12/2024 |
| 36008 | DS-52939BL | BETERDECOR | | | 6 | | 319 | 0.47 | 24,862.86 | |
| 36008003 | Winter Wonder Lane | | H31 | | | | | 12.99 | 69.438 | 19.98 |
| 3 | 481072928506 | | SEA | 0.684 | A1 | | | | | |
| 360 | 810729267 | RED METAL BELL GARL | 0.00 | IN | 4 | | 1,200 | 4.50 | 6,648.00 | 08/12/2024 |
| 36008 | DS-48617 | BETERDECOR | | | 4 | | 300 | 1.04 | 17,988.00 | |
| 36008003 | Winter Wonder Lane | | H31 | | | | | 14.99 | 63.042 | 20.50 |
| 4 | 481072926700 | | SEA | 0.839 | A1 | | | | | |



**PO #**  **95252802**

| | |
|---|---|
| Date Created | 03/22/2024 |
| Version: | 1 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/24/2024 |
| Cancel if not Shipped by: | 07/01/2024 |
| Must be Routed by: | 06/03/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | MUNDRA    ,  IN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520        Fax:

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

**Purchase From Vendor:   5005521**

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA
Contact:
Telephone:                        Fax
E-Mail:

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 5,038 | 87,431.62 | 27,206.00 | 67.456 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:   95252802

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.          Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.          Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.          Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.          Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.          Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.          Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.          Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.          Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.          Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810729279 | LG BLACK STANDING M | 0.00 | IN | 4 | | 612 | 10.75 | 8,249.76 | 08/12/2024 |
| 36008 | DS-52936BL | BETERDECOR | | | 4 | | 153 | 2.73 | 18,353.88 | |
| 36008003 | Winter Wonder Lane | | H31 | | | | | 29.99 | 55.052 | |
| 1 | 481072927905 | | SEA | 3.222 | A1 | | | | | |
| 360 | 810729278 | MD BLACK STANDING M | 0.00 | IN | 4 | | 1,312 | 6.50 | 10,154.88 | 08/12/2024 |
| 36008 | DS-56088BL | BETERDECOR | | | 4 | | 328 | 1.24 | 26,226.88 | |
| 36008003 | Winter Wonder Lane | | H31 | | | | | 19.99 | 61.281 | 31.79 |
| 2 | 481072927806 | | SEA | 1.377 | A1 | | | | | |
| 360 | 810729285 | SM BLACK STANDING M | 0.00 | IN | 6 | | 1,914 | 3.50 | 7,598.58 | 08/12/2024 |
| 36008 | DS-52939BL | BETERDECOR | | | 6 | | 319 | 0.47 | 24,862.86 | |
| 36008003 | Winter Wonder Lane | | H31 | | | | | 12.99 | 69.438 | 19.98 |
| 3 | 481072928506 | | SEA | 0.684 | A1 | | | | | |
| 360 | 810729267 | RED METAL BELL GARL | 0.00 | IN | 4 | | 1,200 | 4.50 | 6,648.00 | 08/12/2024 |
| 36008 | DS-48617 | BETERDECOR | | | 4 | | 300 | 1.04 | 17,988.00 | |
| 36008003 | Winter Wonder Lane | | H31 | | | | | 14.99 | 63.042 | 20.50 |
| 4 | 481072926700 | | SEA | 0.839 | A1 | | | | | |



**PO #**    **95252804**

| | |
|---|---|
| Date Created | 03/22/2024 |
| Version: | 1 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | MUNDRA        ,  IN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:   570-695-2862

---

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

---

**Purchase From Vendor:**   5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:
Telephone:                        Fax
E-Mail:

---

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 6,720 | 114,724.80 | 35,486.00 | 67.586 |

---

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810729279 | LG BLACK STANDING M | 0.00 | IN | 4 | | 680 | 10.75 | 9,166.40 | 08/12/2024 |
| 36008 | DS-52936BL | BETERDECOR | | | 4 | | 170 | 2.73 | 20,393.20 | |
| 36008003 | Winter Wonder Lane | | H31 | | | | | 29.99 | 55.052 | |
| 1 | 481072927905 | | SEA | 3.222 | A1 | | | | | |
| 360 | 810729278 | MD BLACK STANDING M | 0.00 | IN | 4 | | 1,800 | 6.50 | 13,932.00 | 08/12/2024 |
| 36008 | DS-56088BL | BETERDECOR | | | 4 | | 450 | 1.24 | 35,982.00 | |
| 36008003 | Winter Wonder Lane | | H31 | | | | | 19.99 | 61.281 | 31.79 |
| 2 | 481072927806 | | SEA | 1.377 | A1 | | | | | |
| 360 | 810729285 | SM BLACK STANDING M | 0.00 | IN | 6 | | 2,604 | 3.50 | 10,337.88 | 08/12/2024 |
| 36008 | DS-52939BL | BETERDECOR | | | 6 | | 434 | 0.47 | 33,825.96 | |
| 36008003 | Winter Wonder Lane | | H31 | | | | | 12.99 | 69.438 | 19.98 |
| 3 | 481072928506 | | SEA | 0.684 | A1 | | | | | |
| 360 | 810729267 | RED METAL BELL GARL | 0.00 | IN | 4 | | 1,636 | 4.50 | 9,063.44 | 08/12/2024 |
| 36008 | DS-48617 | BETERDECOR | | | 4 | | 409 | 1.04 | 24,523.64 | |
| 36008003 | Winter Wonder Lane | | H31 | | | | | 14.99 | 63.042 | 20.50 |
| 4 | 481072926700 | | SEA | 0.839 | A1 | | | | | |



**PO #**     **95252805**

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 03/22/2024 |
| Version: | 1 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | MUNDRA        ,  IN |

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100       Fax:  580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax: 614-278-6871

**Purchase From Vendor:**   5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:
Telephone:                        Fax
E-Mail:

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 4,440 | 74,939.60 | 23,085.00 | 67.641 |

OFFICE-COPY



## IMPORTANT Terms and Conditions

PO#:    95252805

Page 2 of 6

---

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

### Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.     Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.     Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.     Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.     Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.     Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.     Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.     Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.     Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.     Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.
27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#: 95252805

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|---|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810729279 | LG BLACK STANDING M | 0.00 | IN | 4 | | 388 | 10.75 | 5,230.24 | 08/12/2024 |
| 36008 | DS-52936BL | BETERDECOR | | | 4 | | 97 | 2.73 | 11,636.12 | |
| 36008003 | Winter Wonder Lane | | H31 | | | | | 29.99 | 55.052 | |
| 1 | 481072927905 | | SEA | 3.222 | A1 | | | | | |
| 360 | 810729278 | MD BLACK STANDING M | 0.00 | IN | 4 | | 1,204 | 6.50 | 9,318.96 | 08/12/2024 |
| 36008 | DS-56088BL | BETERDECOR | | | 4 | | 301 | 1.24 | 24,067.96 | |
| 36008003 | Winter Wonder Lane | | H31 | | | | | 19.99 | 61.281 | 31.79 |
| 2 | 481072927806 | | SEA | 1.377 | A1 | | | | | |
| 360 | 810729285 | SM BLACK STANDING M | 0.00 | IN | 6 | | 1,728 | 3.50 | 6,860.16 | 08/12/2024 |
| 36008 | DS-52939BL | BETERDECOR | | | 6 | | 288 | 0.47 | 22,446.72 | |
| 36008003 | Winter Wonder Lane | | H31 | | | | | 12.99 | 69.438 | 19.98 |
| 3 | 481072928506 | | SEA | 0.684 | A1 | | | | | |
| 360 | 810729267 | RED METAL BELL GARL | 0.00 | IN | 4 | | 1,120 | 4.50 | 6,204.80 | 08/12/2024 |
| 36008 | DS-48617 | BETERDECOR | | | 4 | | 280 | 1.04 | 16,788.80 | |
| 36008003 | Winter Wonder Lane | | H31 | | | | | 14.99 | 63.042 | 20.50 |
| 4 | 481072926700 | | SEA | 0.839 | A1 | | | | | |



**PO #**   **95259315**

| | |
|---|---|
| Date Created | 03/25/2024 |
| Version: | 3 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/15/2024 |
| Cancel if not Shipped by: | 07/22/2024 |
| Must be Routed by: | 06/24/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | MUNDRA    , IN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520        Fax:

---

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

**Purchase From Vendor:   5005521**

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:    SURENDER GANDHI
Telephone:  91-591-2478400      Fax    91-591-2478499
E-Mail:    surender@dewansons.com

---

**ADDITIONAL COMMENTS**

---

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 5,234 | 86,909.66 | 26,024.80 | 68.805 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95259315

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810641933 | LG GOLD METAL STAND | 0.00 | IN | 4 | | 516 | 10.75 | 6,955.68 | 09/02/2024 |
| 36008 | DS-52936 | BETERDECOR | | | 4 | | 129 | 2.73 | 15,990.84 | |
| 36008003 | Winter Wonder Lane | | 029 | | | | | 30.99 | 56.502 | |
| 1 | 481064193301 | | SEA | 3.222 | A1 | | | | | |
| 360 | 810641963 | MED GOLD METAL STAD | 0.00 | IN | 4 | | 1,376 | 6.50 | 10,650.24 | 09/02/2024 |
| 36008 | DS-56088 | BETERDECOR | | | 4 | | 344 | 1.24 | 27,506.24 | |
| 36008003 | Winter Wonder Lane | | 029 | | | | | 19.99 | 61.281 | 59.00 |
| 2 | 481064196302 | | SEA | 1.377 | A1 | | | | | |
| 360 | 810641961 | SM GOLD METAL STAND | 0.00 | IN | 6 | | 1,710 | 3.50 | 6,788.70 | 09/02/2024 |
| 36008 | DS-52939 | BETERDECOR | | | 6 | | 285 | 0.47 | 22,212.90 | |
| 36008003 | Winter Wonder Lane | | 029 | | | | | 12.99 | 69.438 | 20.99 |
| 3 | 481064196104 | | SEA | 0.684 | A1 | | | | | |
| 360 | 810641927 | SET OF 3 HANGING BE | 0.00 | IN | 4 | | 1,632 | 3.40 | 6,635.71 | 09/02/2024 |
| 36008 | DS-59811 | BETERDECOR | | | 4 | | 408 | 0.67 | 21,199.68 | |
| 36008003 | Winter Wonder Lane | | 029 | | | | | 12.99 | 68.699 | |
| 4 | 481064192700 | | SEA | 0.468 | A1 | | | | | |



**PO #**            **95259318**

| | |
|---|---|
| Date Created | 03/25/2024 |
| Version: | 1 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | MUNDRA        ,  IN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:  580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:   5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:    SURENDER GANDHI
Telephone:  91-591-2478400      Fax    91-591-2478499
E-Mail:      surender@dewansons.com

**ADDITIONAL COMMENTS**

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 7,056 | 115,993.44 | 34,616.40 | 68.896 |

OFFICE-COPY



These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95259318

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|--------------------|----|-----|-----|-----|-----|-----|-----|-----|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810641933 | LG GOLD METAL STAND | 0.00 | IN | 4 | | 624 | 10.75 | 8,411.52 | 08/26/2024 |
| 36008 | DS-52936 | BETERDECOR | | | 4 | | 156 | 2.73 | 19,337.76 | |
| 36008003 | Winter Wonder Lane | NVO | H29 | | | | | 30.99 | 56.502 | |
| 1 | 481064193301 | | SEA | 3.222 | A1 | | | | | |
| 360 | 810641963 | MED GOLD METAL STAD | 0.00 | IN | 4 | | 1,872 | 6.50 | 14,489.28 | 08/26/2024 |
| 36008 | DS-56088 | BETERDECOR | | | 4 | | 468 | 1.24 | 37,421.28 | |
| 36008003 | Winter Wonder Lane | | H29 | | | | | 19.99 | 61.281 | |
| 2 | 481064196302 | | SEA | 1.377 | A1 | | | | | |
| 360 | 810641961 | SM GOLD METAL STAND | 0.00 | IN | 6 | | 2,364 | 3.50 | 9,385.08 | 08/26/2024 |
| 36008 | DS-52939 | BETERDECOR | | | 6 | | 394 | 0.47 | 30,708.36 | |
| 36008003 | Winter Wonder Lane | | H29 | | | | | 12.99 | 69.438 | |
| 3 | 481064196104 | | SEA | 0.684 | A1 | | | | | |
| 360 | 810641927 | SET OF 3 HANGING BE | 0.00 | IN | 4 | | 2,196 | 3.40 | 8,928.94 | 08/26/2024 |
| 36008 | DS-59811 | BETERDECOR | | | 4 | | 549 | 0.67 | 28,526.04 | |
| 36008003 | Winter Wonder Lane | NVO | H29 | | | | | 12.99 | 68.699 | |
| 4 | 481064192700 | | SEA | 0.468 | A1 | | | | | |



**PO #**     **95268210**

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 03/27/2024 |
| Version: | 3 |
| Buyer: | NOWICKI, ABIGAIL |
| Do Not Ship Before: | 07/15/2024 |
| Cancel if not Shipped by: | 07/22/2024 |
| Must be Routed by: | 06/24/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | MUNDRA        ,  IN |

---

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520        Fax:

---

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

**Purchase From Vendor:   5005521**

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:     SURENDER GANDHI
Telephone:  91-591-2478400      Fax    91-591-2478499
E-Mail:     surender@dewansons.com

---

**ADDITIONAL COMMENTS**

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| | 1,828 | 54,821.72 | 12,339.00 | 73.848 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor.

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO.  The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer.  A BOL in duplicate must accompany all Vendor invoices.  A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual.  Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period").  After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods.  Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms.  For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law.  As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification.  Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records").  Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative.  Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit.  In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice.  Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof.  Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls.  A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations.  In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above.  When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date.  Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law.  Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods.  Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality.  Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information").  "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties.  Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry.  Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected.  The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption.  Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws").  Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor.  Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|-----------|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810732386 | GALVANIZED SNOWFLA | 0.00 | IN | 4 | | 924 | 6.75 | 8,279.04 | 09/02/2024 |
| 36009 | DS-64501G | TREESKIRTS | | | 4 | | 231 | 2.21 | 27,710.76 | |
| 36009003 | Winter Wonder Lane | | 033 | | | | | 29.99 | 70.123 | 45.99 |
| 1 | 481073238604 | | SEA | 2.708 | A1 | | | | | |
| 360 | 810625001 | MATTE BLACK TREE CO | 0.00 | IN | 4 | | 904 | 6.75 | 8,099.84 | 09/02/2024 |
| 36009 | DS-55775 | TREESKIRTS | | | 4 | | 226 | 2.21 | 27,110.96 | |
| 36009003 | Winter Wonder Lane | | 030 | | | | | 29.99 | 70.123 | |
| 2 | 481062500101 | | SEA | 2.708 | A1 | | | | | |



**PO #** 95268213

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 03/27/2024 |
| Version: | 1 |
| Buyer: | OPEN - DIV 3 |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | MUNDRA    , IN |

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:  580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

**Purchase From Vendor:  5005521**

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:
Telephone:                     Fax
E-Mail:

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 2,200 | 65,978.00 | 14,850.00 | 73.674 |

OFFICE-COPY



These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1. Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2. Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3. Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4. Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5. Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6. Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7. Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8. Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9. Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|-------------|---------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810732386 | GALVANIZED SNOWFLA | 0.00 | IN | 4 | | 1,060 | 6.75 | 9,497.60 | 08/26/2024 |
| 36009 | DS-64501G | TREESKIRTS | | | 4 | | 265 | 2.21 | 31,789.40 | |
| 36009003 | Winter Wonder Lane | | H33 | | | | | 29.99 | 70.123 | 45.99 |
| 1 | 481073238604 | | SEA | 2.708 | A1 | | | | | |
| 360 | 810625001 | MATTE BLACK TREE CO | 0.00 | IN | 4 | | 1,140 | 6.75 | 10,214.40 | 08/26/2024 |
| 36009 | DS-55775 | TREESKIRTS | | | 4 | | 285 | 2.21 | 34,188.60 | |
| 36009003 | Winter Wonder Lane | | H30 | | | | | 29.99 | 70.123 | 63.98 |
| 2 | 481062500101 | | SEA | 2.708 | A1 | | | | | |



**PO #**          **95299495**

| | |
|---|---|
| Date Created | 04/10/2024 |
| Version: | 1 |
| Buyer: | RUPERT, BRIANNE |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | MUNDRA        ,  IN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

Purchase From Vendor:   5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:    SURENDER GANDHI
Telephone:  91-591-2478400      Fax    91-591-2478499
E-Mail:    surender@dewansons.com

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 3,044 | 91,289.56 | 23,591.00 | 66.656 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|--------------------|----|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 360 | 810732985 | GOLD TREE COLLAR | 0.00 | IN | 4 | | 3,044 | 7.75 | 30,440.00 | 08/12/2024 |
|------|-----------|------------------|------|----|----|--|-------|------|-----------|-----------|
| 36009 | DS-48497 | TREESKIRTS | | | 4 | | 761 | 2.25 | 91,289.56 | |
| 36009003 | Winter Wonder Lane | | H31 | | | | | 29.99 | 66.656 | 35.99 |
| 1 | 481073298509 | | SEA | 2.708 | A1 | | | | | |





**PO #**    **95299496**

| | |
|---|---|
| Date Created | 04/10/2024 |
| Version: | 1 |
| Buyer: | OPEN - DIV 3 |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | MUNDRA    ,  IN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848       Fax:   570-695-2862

---

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800       Fax:  614-278-6871

---

**Purchase From Vendor:   5005521**

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:
Telephone:                    Fax
E-Mail:

---

**ADDITIONAL COMMENTS**

---

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 2,576 | 77,254.24 | 19,964.00 | 66.656 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#: 95299496

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor.

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1. Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2. Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3. Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4. Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5. Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6. Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7. Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8. Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9. Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|--------------------|------|-------------------|--------|--|--------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 360 | 810732985 | GOLD TREE COLLAR | 0.00 | IN | 4 | | 2,576 | 7.75 | 25,760.00 | 08/12/2024 |
|------|-----------|------------------|------|----|---|--|-------|------|-----------|------------|
| 36009 | DS-48497 | TREESKIRTS | | | 4 | | 644 | 2.25 | 77,254.24 | |
| 36009003 | Winter Wonder Lane | | H31 | | | | | 29.99 | 66.656 | 35.99 |
| 1 | 481073298509 | | SEA | 2.708 | A1 | | | | | |



**PO #**     **95299497**

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 04/10/2024 |
| Version: | 1 |
| Buyer: | OPEN - DIV 3 |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | MUNDRA    , IN |

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:  580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:  5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:
Telephone:                    Fax
E-Mail:

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 1,860 | 55,781.40 | 14,415.00 | 66.656 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms").  The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party.  "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC").  A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 360 | 810732985 | GOLD TREE COLLAR | 0.00 | IN | 4 | | 1,860 | 7.75 | 18,600.00 | 08/12/2024 |
|---|---|---|---|---|---|---|---|---|---|---|
| 36009 | DS-48497 | TREESKIRTS | | | 4 | | 465 | 2.25 | 55,781.40 | |
| 36009003 | Winter Wonder Lane | | H31 | | | | | 29.99 | 66.656 | 35.99 |
| 1 | 481073298509 | | SEA | 2.708 | A1 | | | | | |



**PO #**                **95299498**

| | |
|---|---|
| Date Created | 04/10/2024 |
| Version: | 1 |
| Buyer: | OPEN - DIV 3 |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | MUNDRA       ,  IN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800        Fax:   614-278-3809

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:   5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA
Contact:
Telephone:                      Fax
E-Mail:

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 3,000 | 89,970.00 | 23,250.00 | 66.656 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:    95299498

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| | | | | | | | | | | |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| 360 | 810732985 | GOLD TREE COLLAR | 0.00 | IN | 4 | | 3,000 | 7.75 | 30,000.00 | 08/12/2024 |
| 36009 | DS-48497 | TREESKIRTS | | | 4 | | 750 | 2.25 | 89,970.00 | |
| 36009003 | Winter Wonder Lane | | 031 | | | | | 29.99 | 66.656 | 35.99 |
| 1 | 481073298509 | | SEA | 2.708 | A1 | | | | | |



| PO # | **95301010** | See attached Terms and Conditions for additional Big Lots requirements. A complete list of requirements can be found on the Big Lots website www.biglots.com/corporate/vendors | Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program. |
|---|---|---|---|

| | |
|---|---|
| Date Created | 04/11/2024 |
| Version: | 0 |
| Buyer: | MERRIMAN, SAVANNAH |
| Do Not Ship Before: | 07/08/2024 |
| Cancel if not Shipped by: | 07/15/2024 |
| Must be Routed by: | 06/17/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-NHAVA SHEVA, INDIA |

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:  570-695-2862

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

**Purchase From Vendor:  5005521**

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA
Contact:
Telephone:                    Fax
E-Mail:

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 2,400 | 27,576.00 | 8,298.00 | 67.254 |

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

OFFICE-COPY



These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 340 | 810603856 | BHFD 10IN GOLD CAND | 0.00 | IN | 4 | | 600 | 2.70 | 1,912.80 | 09/02/2024 |
| 34001 | DS-50990C | VOTIVEHOLDERS | | | 4 | | 150 | 0.49 | 4,794.00 | |
| 34001003 | Broyhill | | HST | | | | | 7.99 | 60.100 | |
| 1 | 481060385601 | | GRM | 0.249 | BTA | | | | | |
| 340 | 810603809 | BHFD 12IN GOLD CAND | 0.00 | IN | 4 | | 600 | 2.93 | 2,086.32 | 09/02/2024 |
| 34001 | DS-50990B | VOTIVEHOLDERS | | | 4 | | 150 | 0.55 | 5,994.00 | |
| 34001003 | Broyhill | | HST | | | | | 9.99 | 65.193 | |
| 2 | 481060380903 | | GRM | 0.294 | BTA | | | | | |
| 340 | 810603846 | BHFD 14IN GOLD CAND | 0.00 | IN | 4 | | 600 | 3.20 | 2,290.80 | 09/02/2024 |
| 34001 | DS-50990A | VOTIVEHOLDERS | | | 4 | | 150 | 0.62 | 7,794.00 | |
| 34001003 | Broyhill | | H31 | | | | | 12.99 | 70.608 | |
| 3 | 481060384604 | | GRM | 0.339 | BTA | | | | | |
| 340 | 810607072 | BHFD DECORATIVE WOO | 0.00 | IN | 2 | | 600 | 5.00 | 3,732.00 | 09/02/2024 |
| 34011 | DS-58684 | DECTRAYS/BOWLS | | | 2 | | 300 | 1.22 | 8,994.00 | |
| 34011001 | Broyhill | | HST | | | | | 14.99 | 58.506 | |
| 4 | 481060707205 | | GRM | 0.563 | RPF | | | | | |



**PO #**     **95301011**

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 04/11/2024 |
| Version: | 0 |
| Buyer: | MERRIMAN, SAVANNAH |
| Do Not Ship Before: | 07/08/2024 |
| Cancel if not Shipped by: | 07/15/2024 |
| Must be Routed by: | 06/17/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-NHAVA SHEVA |

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800     Fax:  614-278-3809

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800     Fax: 614-278-6871

**Purchase From Vendor:**   5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:
Telephone:               Fax
E-Mail:

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 2,400 | 27,576.00 | 8,298.00 | 67.254 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.     Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.     Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.     Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.     Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.     Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.     Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.     Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.     Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.     Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 340 | 810603856 | BHFD 10IN GOLD CAND | 0.00 | IN | 4 | | 600 | 2.70 | 1,912.80 | 09/02/2024 |
| 34001 | DS-50990C | VOTIVEHOLDERS | | | 4 | | 150 | 0.49 | 4,794.00 | |
| 34001003 | Broyhill | | HST | | | | | 7.99 | 60.100 | |
| 1 | 481060385601 | | GRM | 0.249 | BTA | | | | | |
| 340 | 810603809 | BHFD 12IN GOLD CAND | 0.00 | IN | 4 | | 600 | 2.93 | 2,086.32 | 09/02/2024 |
| 34001 | DS-50990B | VOTIVEHOLDERS | | | 4 | | 150 | 0.55 | 5,994.00 | |
| 34001003 | Broyhill | | HST | | | | | 9.99 | 65.193 | |
| 2 | 481060380903 | | GRM | 0.294 | BTA | | | | | |
| 340 | 810603846 | BHFD 14IN GOLD CAND | 0.00 | IN | 4 | | 600 | 3.20 | 2,290.80 | 09/02/2024 |
| 34001 | DS-50990A | VOTIVEHOLDERS | | | 4 | | 150 | 0.62 | 7,794.00 | |
| 34001003 | Broyhill | | H31 | | | | | 12.99 | 70.608 | |
| 3 | 481060384604 | | GRM | 0.339 | BTA | | | | | |
| 340 | 810607072 | BHFD DECORATIVE WOO | 0.00 | IN | 2 | | 600 | 5.00 | 3,732.00 | 09/02/2024 |
| 34011 | DS-58684 | DECTRAYS/BOWLS | | | 2 | | 300 | 1.22 | 8,994.00 | |
| 34011001 | Broyhill | | HST | | | | | 14.99 | 58.506 | |
| 4 | 481060707205 | | GRM | 0.563 | RPF | | | | | |



**PO #**   **95320748**

| | |
|---|---|
| Date Created | 04/18/2024 |
| Version: | 0 |
| Buyer: | TREMPE, KAREN |
| Do Not Ship Before: | 07/08/2024 |
| Cancel if not Shipped by: | 07/15/2024 |
| Must be Routed by: | 06/17/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-NHAVA SHEVA |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520        Fax:

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

**Purchase From Vendor:   5005521**

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA
Contact:
Telephone:                    Fax
E-Mail:

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 1,074 | 15,808.26 | 6,084.45 | 59.566 |

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95320748

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|--------------------|------|-------------------|--------|---|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 320 | 810747542 | FRUIT BOWL METAL WO | 0.00 | IN | 2 | | 408 | 7.20 | 4,017.98 | 09/09/2024 |
| 32002 | DS-52291 | WOODSERVE | | | 2 | | 204 | 2.65 | 8,155.92 | |
| 32002002 | NA | PRODUCTION | 999 | | | | | 19.99 | 50.735 | 29.99 |
| 1 | 481074754202 | | GRM | 1.480 | A1 | | | | | |
| 320 | 810747573 | SERVE TRAY OVAL WAR | 0.00 | IN | 3 | | 333 | 4.37 | 1,666.60 | 09/09/2024 |
| 32002 | DS-58914 | WOODSERVE | | | 3 | | 111 | 0.63 | 3,326.67 | |
| 32002002 | NA | PRODUCTION | 999 | | | | | 9.99 | 49.902 | 16.99 |
| 2 | 481074757302 | | GRM | 0.336 | A1 | | | | | |
| 320 | 810748059 | WOOD SERVE BOWL 10I | 0.00 | IN | 3 | | 333 | 5.08 | 1,999.07 | 09/09/2024 |
| 32002 | DS-58910L | WOODSERVE | | | 3 | | 111 | 0.92 | 4,325.67 | |
| 32002002 | NA | PRODUCTION | 999 | | | | | 12.99 | 53.786 | 15.99 |
| 3 | 481074805904 | | GRM | 0.581 | A1 | | | | | |



**PO #**          **95320749**

| | |
|---|---|
| Date Created | 04/18/2024 |
| Version: | 0 |
| Buyer: | TREMPE, KAREN |
| Do Not Ship Before: | 07/15/2024 |
| Cancel if not Shipped by: | 07/22/2024 |
| Must be Routed by: | 06/24/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-NHAVA SHEWA |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

---

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

**Purchase From Vendor:   5005521**

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:
Telephone:                        Fax
E-Mail:

---

**ADDITIONAL COMMENTS**

---

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 886 | 14,855.14 | 5,547.60 | 61.611 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:    95320749

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and virtual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|---|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 320 | 810747542 | FRUIT BOWL METAL WO | 0.00 | IN | 2 | | 550 | 7.20 | 5,416.40 | 09/09/2024 |
| 32002 | DS-52291 | WOODSERVE | | | 2 | | 275 | 2.65 | 10,994.50 | |
| 32002002 | NA | PRODUCTION | 999 | | | | | 19.99 | 50.735 | 29.99 |
| 1 | 481074754202 | | GRM | 1.480 | A1 | | | | | |
| 320 | 810747573 | SERVE TRAY OVAL WAR | 0.00 | IN | 3 | | 168 | 4.37 | 840.81 | 09/09/2024 |
| 32002 | DS-58914 | WOODSERVE | | | 3 | | 56 | 0.63 | 1,678.32 | |
| 32002002 | NA | PRODUCTION | 999 | | | | | 9.99 | 49.902 | 16.99 |
| 2 | 481074757302 | | GRM | 0.336 | A1 | | | | | |
| 320 | 810748059 | WOOD SERVE BOWL 10I | 0.00 | IN | 3 | | 168 | 5.08 | 1,008.54 | 09/09/2024 |
| 32002 | DS-58910L | WOODSERVE | | | 3 | | 56 | 0.92 | 2,182.32 | |
| 32002002 | NA | PRODUCTION | 999 | | | | | 12.99 | 53.786 | 15.99 |
| 3 | 481074805904 | | GRM | 0.581 | A1 | | | | | |



| PO # | 95320750 |
|------|----------|

| | |
|------|------|
| Date Created | 04/18/2024 |
| Version: | 0 |
| Buyer: | TREMPE, KAREN |
| Do Not Ship Before: | 07/15/2024 |
| Cancel if not Shipped by: | 07/22/2024 |
| Must be Routed by: | 06/24/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-NHAVA SHEVA |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848      Fax:  570-695-2862

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800      Fax: 614-278-6871

**Purchase From Vendor:  5005521**

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:
Telephone:                     Fax
E-Mail:

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|-------|--------|-------------|-----|
| 1,192 | 18,626.08 | 7,067.70 | 60.538 |

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms").  The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party.  "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.       Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.       Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.       Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.       Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.       Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.       Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.       Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.       Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.       Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 320 | 810747542 | FRUIT BOWL METAL WO | 0.00 | IN | 2 | | 580 | 7.20 | 5,711.84 | 09/09/2024 |
| 32002 | DS-52291 | WOODSERVE | | | 2 | | 290 | 2.65 | 11,594.20 | |
| 32002002 | NA | PRODUCTION | 999 | | | | | 19.99 | 50.735 | 29.99 |
| 1 | 481074754202 | | GRM | 1.480 | A1 | | | | | |
| 320 | 810747573 | SERVE TRAY OVAL WAR | 0.00 | IN | 3 | | 306 | 4.37 | 1,531.47 | 09/09/2024 |
| 32002 | DS-58914 | WOODSERVE | | | 3 | | 102 | 0.63 | 3,056.94 | |
| 32002002 | NA | PRODUCTION | 999 | | | | | 9.99 | 49.902 | 16.99 |
| 2 | 481074757302 | | GRM | 0.336 | A1 | | | | | |
| 320 | 810748059 | WOOD SERVE BOWL 10I | 0.00 | IN | 3 | | 306 | 5.08 | 1,836.98 | 09/09/2024 |
| 32002 | DS-58910L | WOODSERVE | | | 3 | | 102 | 0.92 | 3,974.94 | |
| 32002002 | NA | PRODUCTION | 999 | | | | | 12.99 | 53.786 | 15.99 |
| 3 | 481074805904 | | GRM | 0.581 | A1 | | | | | |



**PO #**      **95320751**

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 04/18/2024 |
| Version: | 1 |
| Buyer: | TREMPE, KAREN |
| Do Not Ship Before: | 07/08/2024 |
| Cancel if not Shipped by: | 07/15/2024 |
| Must be Routed by: | 06/17/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-NHAVA SHEVA |

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100       Fax:  580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800       Fax: 614-278-6871

**Purchase From Vendor:** 5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:
Telephone:       Fax
E-Mail:

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 762 | 12,274.38 | 4,625.10 | 61.010 |

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's online portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.       Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.       Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.       Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.       Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.       Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.       Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.       Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.       Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.       Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



# IMPORTANT Terms and Conditions

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95320751

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|--------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 320 | 810747542 | FRUIT BOWL METAL WO | 0.00 | IN | 2 | | 414 | 7.20 | 4,077.07 | 09/16/2024 |
| 32002 | DS-52291 | WOODSERVE | | | 2 | | 207 | 2.65 | 8,275.86 | |
| 32002002 | NA | PRODUCTION | 999 | | | | | 19.99 | 50.735 | 29.99 |
| 1 | 481074754202 | | GRM | 1.480 | A1 | | | | | |
| 320 | 810747573 | SERVE TRAY OVAL WAR | 0.00 | IN | 3 | | 174 | 4.37 | 870.84 | 09/16/2024 |
| 32002 | DS-58914 | WOODSERVE | | | 3 | | 58 | 0.63 | 1,738.26 | |
| 32002002 | NA | PRODUCTION | 999 | | | | | 9.99 | 49.902 | 16.99 |
| 2 | 481074757302 | | GRM | 0.336 | A1 | | | | | |
| 320 | 810748059 | WOOD SERVE BOWL 10I | 0.00 | IN | 3 | | 174 | 5.08 | 1,044.56 | 09/16/2024 |
| 32002 | DS-58910L | WOODSERVE | | | 3 | | 58 | 0.92 | 2,260.26 | |
| 32002002 | NA | PRODUCTION | 999 | | | | | 12.99 | 53.786 | 15.99 |
| 3 | 481074805904 | | GRM | 0.581 | A1 | | | | | |



**PO #**    **95320752**

| | |
|---|---|
| Date Created | 04/18/2024 |
| Version: | 0 |
| Buyer: | TREMPE, KAREN |
| Do Not Ship Before: | 07/15/2024 |
| Cancel if not Shipped by: | 07/22/2024 |
| Must be Routed by: | 06/24/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-NHAVA SHEVA |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800      Fax:  614-278-3809

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800      Fax: 614-278-6871

**Purchase From Vendor:   5005521**

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:
Telephone:                    Fax
E-Mail:

**ADDITIONAL COMMENTS**

| Vendor Signature | _____ |
|---|---|
| Signee's Name | _____ |
| Title | _____ |
| Date | _____ |

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 908 | 15,294.92 | 5,706.00 | 61.679 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 320 | 810747542 | FRUIT BOWL METAL WO | 0.00 | IN | 2 | | 572 | 7.20 | 5,633.06 | 09/09/2024 |
| 32002 | DS-52291 | WOODSERVE | | | 2 | | 286 | 2.65 | 11,434.28 | |
| 32002002 | NA | PRODUCTION | 999 | | | | | 19.99 | 50.735 | 29.99 |
| 1 | 481074754202 | | GRM | 1.480 | A1 | | | | | |
| 320 | 810747573 | SERVE TRAY OVAL WAR | 0.00 | IN | 3 | | 168 | 4.37 | 840.81 | 09/09/2024 |
| 32002 | DS-58914 | WOODSERVE | | | 3 | | 56 | 0.63 | 1,678.32 | |
| 32002002 | NA | PRODUCTION | 999 | | | | | 9.99 | 49.902 | 16.99 |
| 2 | 481074757302 | | GRM | 0.336 | A1 | | | | | |
| 320 | 810748059 | WOOD SERVE BOWL 10I | 0.00 | IN | 3 | | 168 | 5.08 | 1,008.54 | 09/09/2024 |
| 32002 | DS-58910L | WOODSERVE | | | 3 | | 56 | 0.92 | 2,182.32 | |
| 32002002 | NA | PRODUCTION | 999 | | | | | 12.99 | 53.786 | 15.99 |
| 3 | 481074805904 | | GRM | 0.581 | A1 | | | | | |



**PO #**          **95347349**

| | |
|---|---|
| Date Created | 04/30/2024 |
| Version: | 1 |
| Buyer: | MERRIMAN, SAVANNAH |
| Do Not Ship Before: | 06/10/2024 |
| Cancel if not Shipped by: | 06/17/2024 |
| Must be Routed by: | 05/20/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-NHAVA SHEVA |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633      Fax:  334-286-7024

---

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800      Fax:  614-278-6871

---

Purchase From Vendor:   5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:
Telephone:                      Fax
E-Mail:

---

**ADDITIONAL COMMENTS**

---

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 208 | 3,117.92 | 807.04 | 67.027 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 340 | 810745676 | CE METAL LANTERN WI | 0.00 | IN | 4 | | 104 | 3.88 | 624.54 | 08/05/2024 |
| 34001 | DS-60930 | PILLAR&TAPERHOLDE | | | 4 | | 26 | 2.13 | 1,558.96 | |
| 34001002 | NA | CLOSEOUT | HST | | | | | 14.99 | 59.939 | 80.99 |
| 1 | 481074567604 | | GRM | 2.424 | A1 | | | | | |
| 340 | 810745648 | CE METAL LANTERN WI | 0.00 | IN | 4 | | 104 | 3.88 | 624.54 | 08/05/2024 |
| 34001 | DS-60930 | PILLAR&TAPERHOLDE | | | 4 | | 26 | 2.13 | 1,558.96 | |
| 34001002 | NA | CLOSEOUT | HST | | | | | 14.99 | 59.939 | 80.99 |
| 2 | 481074564801 | | GRM | 2.424 | A1 | | | | | |



**PO #**      **95348487**

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 04/30/2024 |
| Version: | 1 |
| Buyer: | TREMPE, KAREN |
| Do Not Ship Before: | 07/29/2024 |
| Cancel if not Shipped by: | 08/05/2024 |
| Must be Routed by: | 07/08/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-NHAVA SHEVA |

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:  760-503-0520     Fax:

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800     Fax: 614-278-6871

**Purchase From Vendor:**  5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:
Telephone:         Fax
E-Mail:

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 150 | 8,594.00 | 3,802.00 | 53.663 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:    95348487

Page 2 of 8

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1. Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2. Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3. Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4. Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5. Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6. Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7. Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8. Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9. Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 320 | 810751763 | COMBO WOOD ENAMEL | 0.00 | IN | 1 | | 50 | 36.00 | 2,125.50 | 09/30/2024 |
| 32001 | DS-52272L | CHRISTMAS | | | 1 | | 50 | 6.51 | 3,998.00 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 79.96 | 46.836 | |
| 1 | 481075176300 | | GRM | 1.371 | A1 | | | | | |
| -->> The | above assortment | (810751763) | consists of | | | | | | | 09/30/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 320 | 810751669 | WOOD ENAMEL SERVE | 0.00 | IN | | | 100 | 9.00 | 900.00 | 09/30/2024 |
| 32001 | DS-52272LB | CHRISTMAS | | | | | 50 | | 1,999.00 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 19.99 | 54.977 | 31.99 |
| 2 | 481075166905 | | | 1.371 | A1 | | | | | |
| 320 | 810751757 | WOOD ENAMEL SERVE | 0.00 | IN | | | 100 | 9.00 | 900.00 | 09/30/2024 |
| 32001 | DS-52272LA | CHRISTMAS | | | | | 50 | | 1,999.00 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 19.99 | 54.977 | 31.99 |
| 3 | 481075175709 | | | 1.371 | A1 | | | | | |
| End of | assortment list | for -810751763 | | | | | | | | 09/30/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 320 | 810751705 | COMBO WOOD ENAMEL | 0.00 | IN | 1 | | 50 | 14.44 | 775.88 | 09/30/2024 |
| 32001 | DS-62534 | CHRISTMAS | | | 1 | | 50 | 1.08 | 1,598.00 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 31.96 | 51.447 | |
| 4 | 481075170506 | | GRM | 0.176 | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| -->> The | above assortment | (810751705) | consists of | | | | | | | 09/30/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 320 | 810751758 | WOOD ENAMEL SERVIN | 0.00 | IN | | | 100 | 3.61 | 361.00 | 09/30/2024 |
| 32001 | DS-62534A | CHRISTMAS | | | | | 50 | | 799.00 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 7.99 | 54.819 | 9.99 |
| 5 | 481075175808 | | | 0.176 | A1 | | | | | |
| 320 | 810751761 | WOOD ENAMEL SERVIN | 0.00 | IN | | | 100 | 3.61 | 361.00 | 09/30/2024 |
| 32001 | DS-62534B | CHRISTMAS | | | | | 50 | | 799.00 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 7.99 | 54.819 | 9.99 |
| 6 | 481075176102 | | | 0.176 | A1 | | | | | |
| End of | assortment list | for -810751705 | | | | | | | | 09/30/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 320 | 810751706 | COMBO WOOD ENAMEL | 0.00 | IN | 1 | | 50 | 25.60 | 1,460.20 | 09/30/2024 |
| 32001 | DS-62530 | CHRISTMAS | | | 1 | | 50 | 3.60 | 2,998.00 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 59.96 | 51.294 | |
| 7 | 481075170605 | | GRM | 0.617 | A1 | | | | | |
| -->> The | above assortment | (810751706) | consists of | | | | | | | 09/30/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 320 | 810751668 | WOOD ENAMEL OVAL TR | 0.00 | IN | | | 100 | 6.40 | 640.00 | 09/30/2024 |
| 32001 | DS-62530A | CHRISTMAS | | | | | 50 | | 1,499.00 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 14.99 | 57.305 | 20.00 |
| 8 | 481075166806 | | | 0.617 | A1 | | | | | |
| 320 | 810751762 | WOOD ENAMEL OVAL TR | 0.00 | IN | | | 100 | 6.40 | 640.00 | 09/30/2024 |
| 32001 | DS-62530B | CHRISTMAS | | | | | 50 | | 1,499.00 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 14.99 | 57.305 | 20.00 |
| 9 | 481075176201 | | | 0.617 | A1 | | | | | |
| *--End of | assortment list | for -810751706 | | | | | | | | 09/30/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



**PO #**     **95348488**

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 04/30/2024 |
| Version: | 1 |
| Buyer: | TREMPE, KAREN |
| Do Not Ship Before: | 08/05/2024 |
| Cancel if not Shipped by: | 08/12/2024 |
| Must be Routed by: | 07/15/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-NHAVA SHEWA |

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:   334-286-6633     Fax:   334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800     Fax: 614-278-6871

**Purchase From Vendor:**   5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:
Telephone:            Fax
E-Mail:

**ADDITIONAL COMMENTS**

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| | 141 | 8,078.36 | 3,573.88 | 53.663 |

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 320 | 810751763 | COMBO WOOD ENAMEL | 0.00 | IN | 1 | | 47 | 36.00 | 1,997.97 | 09/30/2024 |
| 32001 | DS-52272L | CHRISTMAS | | | 1 | | 47 | 6.51 | 3,758.12 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 79.96 | 46.836 | |
| 1 | 481075176300 | | GRM | 1.371 | A1 | | | | | |
| -->> The | above assortment | (810751763) | consists of | | | | | | | 09/30/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 320 | 810751669 | WOOD ENAMEL SERVE | 0.00 | IN | | | 94 | 9.00 | 846.00 | 09/30/2024 |
| 32001 | DS-52272LB | CHRISTMAS | | | | | 47 | | 1,879.06 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 19.99 | 54.977 | 31.99 |
| 2 | 481075166905 | | | 1.371 | A1 | | | | | |
| 320 | 810751757 | WOOD ENAMEL SERVE | 0.00 | IN | | | 94 | 9.00 | 846.00 | 09/30/2024 |
| 32001 | DS-52272LA | CHRISTMAS | | | | | 47 | | 1,879.06 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 19.99 | 54.977 | 31.99 |
| 3 | 481075175709 | | | 1.371 | A1 | | | | | |
| End of | assortment list | for -810751763 | | | | | | | | 09/30/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 320 | 810751705 | COMBO WOOD ENAMEL | 0.00 | IN | 1 | | 47 | 14.44 | 729.33 | 09/30/2024 |
| 32001 | DS-62534 | CHRISTMAS | | | 1 | | 47 | 1.08 | 1,502.12 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 31.96 | 51.447 | |
| 4 | 481075170506 | | GRM | 0.176 | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| -->> The | above assortment | (810751705) | consists of | | | | | | | 09/30/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 320 | 810751758 | WOOD ENAMEL SERVIN | 0.00 | IN | | | 94 | 3.61 | 339.34 | 09/30/2024 |
| 32001 | DS-62534A | CHRISTMAS | | | | | 47 | | 751.06 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 7.99 | 54.819 | 9.99 |
| 5 | 481075175808 | | | 0.176 | A1 | | | | | |
| 320 | 810751761 | WOOD ENAMEL SERVIN | 0.00 | IN | | | 94 | 3.61 | 339.34 | 09/30/2024 |
| 32001 | DS-62534B | CHRISTMAS | | | | | 47 | | 751.06 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 7.99 | 54.819 | 9.99 |
| 6 | 481075176102 | | | 0.176 | A1 | | | | | |
| End of | assortment list | for -810751705 | | | | | | | | 09/30/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 320 | 810751706 | COMBO WOOD ENAMEL | 0.00 | IN | 1 | | 47 | 25.60 | 1,372.59 | 09/30/2024 |
| 32001 | DS-62530 | CHRISTMAS | | | 1 | | 47 | 3.60 | 2,818.12 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 59.96 | 51.294 | |
| 7 | 481075170605 | | GRM | 0.617 | A1 | | | | | |
| -->> The | above assortment | (810751706) | consists of | | | | | | | 09/30/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | | EAS Tag | PDQ Pkg | | |
| 320 | 810751668 | WOOD ENAMEL OVAL TR | 0.00 | IN | | | | 94 | 6.40 | 601.60 | 09/30/2024 |
| 32001 | DS-62530A | CHRISTMAS | | | | | | 47 | | 1,409.06 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | | 14.99 | 57.305 | 20.00 |
| 8 | 481075166806 | | | 0.617 | A1 | | | | | | |
| 320 | 810751762 | WOOD ENAMEL OVAL TR | 0.00 | IN | | | | 94 | 6.40 | 601.60 | 09/30/2024 |
| 32001 | DS-62530B | CHRISTMAS | | | | | | 47 | | 1,409.06 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | | 14.99 | 57.305 | 20.00 |
| 9 | 481075176201 | | | 0.617 | A1 | | | | | | |
| *--End of | assortment list | for -810751706 | | | | | | | | | 09/30/2024 |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| 0 | | | | | | | | | | | |



**PO #**        **95348489**

| | |
|---|---|
| Date Created | 04/30/2024 |
| Version: | 1 |
| Buyer: | TREMPE, KAREN |
| Do Not Ship Before: | 08/05/2024 |
| Cancel if not Shipped by: | 08/12/2024 |
| Must be Routed by: | 07/15/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-NHAVA SHEVA |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:  570-695-2862

---

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

Purchase From Vendor:  5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:
Telephone:                    Fax
E-Mail:

---

**ADDITIONAL COMMENTS**

---

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 177 | 10,140.92 | 4,486.36 | 53.663 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 320 | 810751763 | COMBO WOOD ENAMEL | 0.00 | IN | 1 | | 59 | 36.00 | 2,508.09 | 09/30/2024 |
| 32001 | DS-52272L | CHRISTMAS | | | 1 | | 59 | 6.51 | 4,717.64 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 79.96 | 46.836 | |
| 1 | 481075176300 | | GRM | 1.371 | A1 | | | | | |
| -->> The | above assortment | (810751763) | consists of | | | | | | | 09/30/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 320 | 810751669 | WOOD ENAMEL SERVE | 0.00 | IN | | | 118 | 9.00 | 1,062.00 | 09/30/2024 |
| 32001 | DS-52272LB | CHRISTMAS | | | | | 59 | | 2,358.82 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 19.99 | 54.977 | 31.99 |
| 2 | 481075166905 | | | 1.371 | A1 | | | | | |
| 320 | 810751757 | WOOD ENAMEL SERVE | 0.00 | IN | | | 118 | 9.00 | 1,062.00 | 09/30/2024 |
| 32001 | DS-52272LA | CHRISTMAS | | | | | 59 | | 2,358.82 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 19.99 | 54.977 | 31.99 |
| 3 | 481075175709 | | | 1.371 | A1 | | | | | |
| End of | assortment list | for -810751763 | | | | | | | | 09/30/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 320 | 810751705 | COMBO WOOD ENAMEL | 0.00 | IN | 1 | | 59 | 14.44 | 915.54 | 09/30/2024 |
| 32001 | DS-62534 | CHRISTMAS | | | 1 | | 59 | 1.08 | 1,885.64 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 31.96 | 51.447 | |
| 4 | 481075170506 | | GRM | 0.176 | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| -->> The | above assortment | (810751705) | consists of | | | | | | | 09/30/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 320 | 810751758 | WOOD ENAMEL SERVIN | 0.00 | IN | | | 118 | 3.61 | 425.98 | 09/30/2024 |
| 32001 | DS-62534A | CHRISTMAS | | | | | 59 | | 942.82 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 7.99 | 54.819 | 9.99 |
| 5 | 481075175808 | | | 0.176 | A1 | | | | | |
| 320 | 810751761 | WOOD ENAMEL SERVIN | 0.00 | IN | | | 118 | 3.61 | 425.98 | 09/30/2024 |
| 32001 | DS-62534B | CHRISTMAS | | | | | 59 | | 942.82 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 7.99 | 54.819 | 9.99 |
| 6 | 481075176102 | | | 0.176 | A1 | | | | | |
| End of | assortment list | for -810751705 | | | | | | | | 09/30/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 320 | 810751706 | COMBO WOOD ENAMEL | 0.00 | IN | 1 | | 59 | 25.60 | 1,723.04 | 09/30/2024 |
| 32001 | DS-62530 | CHRISTMAS | | | 1 | | 59 | 3.60 | 3,537.64 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | 59.96 | 51.294 | |
| 7 | 481075170605 | | GRM | 0.617 | A1 | | | | | |
| -->> The | above assortment | (810751706) | consists of | | | | | | | 09/30/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | | PDQ Pkg | | |
| 320 | 810751668 | WOOD ENAMEL OVAL TR | 0.00 | IN | | | | 118 | 6.40 | 755.20 | 09/30/2024 |
| 32001 | DS-62530A | CHRISTMAS | | | | | | 59 | | 1,768.82 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | | 14.99 | 57.305 | 20.00 |
| 8 | 481075166806 | | | 0.617 | A1 | | | | | | |
| 320 | 810751762 | WOOD ENAMEL OVAL TR | 0.00 | IN | | | | 118 | 6.40 | 755.20 | 09/30/2024 |
| 32001 | DS-62530B | CHRISTMAS | | | | | | 59 | | 1,768.82 | |
| 32001001 | NA | PRODUCTION | 999 | | | | | | 14.99 | 57.305 | 20.00 |
| 9 | 481075176201 | | | 0.617 | A1 | | | | | | |
| *--End of | assortment list | for -810751706 | | | | | | | | | 09/30/2024 |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| 0 | | | | | | | | | | | |



**PO #**        **95399572**

| | |
|---|---|
| Date Created | 05/23/2024 |
| Version: | 2 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/15/2024 |
| Cancel if not Shipped by: | 07/22/2024 |
| Must be Routed by: | 06/24/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | MUNDRA    , IN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520          Fax:

---

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800          Fax: 614-278-6871

---

**Purchase From Vendor:   5005521**

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:      SURENDER GANDHI
Telephone:   91-591-2478400      Fax    91-591-2478499
E-Mail:      surender@dewansons.com

---

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 708 | 21,232.92 | 4,956.00 | 69.256 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:    95399572

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and virtual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| | | | | | | | | | | |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| 360 | 810745643 | WHITE GOLD SNOWFLA | 0.00 | IN | 4 | | 708 | 7.00 | 6,527.76 | 09/02/2024 |
| 36009 | DS-64501WG | TREESKIRTS | | | 4 | | 177 | 2.22 | 21,232.92 | |
| 36009003 | Winter Wonder Lane | | 034 | | | | | 29.99 | 69.256 | 39.99 |
| 1 | 481074564306 | | GRM | 2.708 | A1 | | | | | |



| **PO #** | **95399575** | |
|---|---|---|

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 05/23/2024 |
| Version: | 1 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/08/2024 |
| Cancel if not Shipped by: | 07/15/2024 |
| Must be Routed by: | 06/17/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-NHAVA SHEVA |

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:  580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

**Purchase From Vendor:  5005521**

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:
Telephone:                          Fax
E-Mail:

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 1,012 | 30,349.88 | 7,084.00 | 69.256 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



**IMPORTANT Terms and Conditions**

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:   95399575

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|--------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 360 | 810745643 | WHITE GOLD SNOWFLA | 0.00 | IN | 4 | | 1,012 | 7.00 | 9,330.64 | 09/16/2024 |
|-----|-----------|--------------------|------|----|---|--|-------|------|-----------|------------|
| 36009 | DS-64501WG | TREESKIRTS | | | 4 | | 253 | 2.22 | 30,349.88 | |
| 36009003 | Winter Wonder Lane | | 034 | | | | | 29.99 | 69.256 | 39.99 |
| 1 | 481074564306 | | GRM | 2.708 | A1 | | | | | |



**PO #**        **95399832**

| | |
|---|---|
| Date Created | 05/23/2024 |
| Version: | 1 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/15/2024 |
| Cancel if not Shipped by: | 07/22/2024 |
| Must be Routed by: | 06/24/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | MUNDRA        ,  IN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520        Fax:

---

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax:  614-278-6871

---

Purchase From Vendor:   5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:    SURENDER GANDHI
Telephone:  91-591-2478400      Fax    91-591-2478499
E-Mail:     surender@dewansons.com

---

**ADDITIONAL COMMENTS**

---

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 211 | 8,431.56 | 3,333.80 | 52.222 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and virtual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.     Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.     Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.     Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.     Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.     Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.     Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.     Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.     Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.     Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO.  The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer.  A BOL in duplicate must accompany all Vendor invoices.  A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR.  Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual.  Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period").  After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods.  Each party shall remain responsible (hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms.  For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law.  As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet.  Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification.  Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records").  Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative.  Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit.  In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice.  Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof.  Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs.  Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls.  A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations.  In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate.  Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above.  When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date.  Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law.  Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods.  Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality.  Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information").  "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods.  Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties.  Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry.  Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13.  Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods.  Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer.  The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms.  In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws.  In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected.  The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption.  Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws").  Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor.  Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810745369 | COMBO S/4 XMAS STOC | 0.00 | IN | 1 | | 211 | 15.80 | 4,028.41 | 09/02/2024 |
| 36006 | DS-65045 | STOCKINGS | | | 1 | | 211 | 3.29 | 8,431.56 | |
| 36006001 | Winter Wonder Lane | | H34 | | | | | 39.96 | 52.222 | |
| 1 | 481074536907 | | GRM | 0.930 | A1 | | | | | |
| -->> The | above assortment | (810745369) | consists of | | | | | | | 09/02/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745368 | NUTCRACKER STOCKIN | 0.00 | IN | | | 211 | 3.95 | 833.45 | 09/02/2024 |
| 36006 | DS-65045N | STOCKINGS | | | | | 211 | | 2,107.89 | |
| 36006001 | Winter Wonder Lane | | 034 | | | | | 9.99 | 60.460 | 14.99 |
| 2 | 481074536808 | | | 0.830 | A1 | | | | | |
| 360 | 810745540 | REINDEER STOCKING H | 0.00 | IN | | | 211 | 3.95 | 833.45 | 09/02/2024 |
| 36006 | DS-65045R | STOCKINGS | | | | | 211 | | 2,107.89 | |
| 36006001 | Winter Wonder Lane | | 034 | | | | | 9.99 | 60.460 | 14.99 |
| 3 | 481074554000 | | | 1.016 | A1 | | | | | |
| 360 | 810745606 | GOLD SNOWFLAKE STO | 0.00 | IN | | | 211 | 3.95 | 833.45 | 09/02/2024 |
| 36006 | DS-65045S | STOCKINGS | | | | | 211 | | 2,107.89 | |
| 36006001 | Winter Wonder Lane | | 034 | | | | | 9.99 | 60.460 | 14.99 |
| 4 | 481074560605 | | | 0.918 | A1 | | | | | |
| 360 | 810745667 | GOLD XMAS TREE STOC | 0.00 | IN | | | 211 | 3.95 | 833.45 | 09/02/2024 |
| 36006 | DS-65045T | STOCKINGS | | | | | 211 | | 2,107.89 | |
| 36006001 | Winter Wonder Lane | | 034 | | | | | 9.99 | 60.460 | 14.99 |
| 5 | 481074566706 | | | 0.781 | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| *--End of | assortment list | for -810745369 | | | | | | | | | 09/02/2024 |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| 0 | | | | | | | | | | | |



**PO #**        **95399836**

| | |
|---|---|
| Date Created | 05/23/2024 |
| Version: | 2 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/08/2024 |
| Cancel if not Shipped by: | 07/15/2024 |
| Must be Routed by: | 06/17/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | LCL-NHAVA SHEVA |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:  580-931-2197

---

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

Purchase From Vendor:   5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:     SURENDER GANDHI
Telephone:  91-591-2478400      Fax    91-591-2478499
E-Mail:    surender@dewansons.com

---

**ADDITIONAL COMMENTS**

---

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 197 | 7,872.12 | 3,112.60 | 52.222 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.  Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.  Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.  Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.  Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.  Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.  Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.  Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.  Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.  Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner, without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|--------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810745369 | COMBO S/4 XMAS STOC | 0.00 | IN | 1 | | 197 | 15.80 | 3,761.12 | 09/16/2024 |
| 36006 | DS-65045 | STOCKINGS | | | 1 | | 197 | 3.29 | 7,872.12 | |
| 36006001 | Winter Wonder Lane | | H34 | | | | | 39.96 | 52.222 | |
| 1 | 481074536907 | | GRM | 0.930 | A1 | | | | | |
| -->> The | above assortment | (810745369) | consists of | | | | | | | 09/16/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745368 | NUTCRACKER STOCKIN | 0.00 | IN | | | 197 | 3.95 | 778.15 | 09/16/2024 |
| 36006 | DS-65045N | STOCKINGS | | | | | 197 | | 1,968.03 | |
| 36006001 | Winter Wonder Lane | | 034 | | | | | 9.99 | 60.460 | 14.99 |
| 2 | 481074536808 | | | 0.830 | A1 | | | | | |
| 360 | 810745540 | REINDEER STOCKING H | 0.00 | IN | | | 197 | 3.95 | 778.15 | 09/16/2024 |
| 36006 | DS-65045R | STOCKINGS | | | | | 197 | | 1,968.03 | |
| 36006001 | Winter Wonder Lane | | 034 | | | | | 9.99 | 60.460 | 14.99 |
| 3 | 481074554000 | | | 1.016 | A1 | | | | | |
| 360 | 810745606 | GOLD SNOWFLAKE STO | 0.00 | IN | | | 197 | 3.95 | 778.15 | 09/16/2024 |
| 36006 | DS-65045S | STOCKINGS | | | | | 197 | | 1,968.03 | |
| 36006001 | Winter Wonder Lane | | 034 | | | | | 9.99 | 60.460 | 14.99 |
| 4 | 481074560605 | | | 0.918 | A1 | | | | | |
| 360 | 810745667 | GOLD XMAS TREE STOC | 0.00 | IN | | | 197 | 3.95 | 778.15 | 09/16/2024 |
| 36006 | DS-65045T | STOCKINGS | | | | | 197 | | 1,968.03 | |
| 36006001 | Winter Wonder Lane | | 034 | | | | | 9.99 | 60.460 | 14.99 |
| 5 | 481074566706 | | | 0.781 | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| *--End of | assortment list | for -810745369 | | | | | | | | 09/16/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



**PO #**          **95399837**

| | |
|---|---|
| Date Created | 05/23/2024 |
| Version: | 1 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/15/2024 |
| Cancel if not Shipped by: | 07/22/2024 |
| Must be Routed by: | 06/24/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | LCL-NHAVA SHEWA, INDIA |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800        Fax:   614-278-3809

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

**Purchase From Vendor:   5005521**

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:    SURENDER GANDHI
Telephone:  91-591-2478400      Fax    91-591-2478499
E-Mail:    surender@dewansons.com

**ADDITIONAL COMMENTS**

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| | 257 | 10,269.72 | 4,060.60 | 52.222 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.     Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.     Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.     Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.     Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.     Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.     Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.     Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.     Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.     Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any public party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|--------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810745369 | COMBO S/4 XMAS STOC | 0.00 | IN | 1 | | 257 | 15.80 | 4,906.64 | 09/09/2024 |
| 36006 | DS-65045 | STOCKINGS | | | 1 | | 257 | 3.29 | 10,269.72 | |
| 36006001 | Winter Wonder Lane | | H34 | | | | | 39.96 | 52.222 | |
| 1 | 481074536907 | | GRM | 0.930 | A1 | | | | | |
| -->> The | above assortment | (810745369) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745368 | NUTCRACKER STOCKIN | 0.00 | IN | | | 257 | 3.95 | 1,015.15 | 09/09/2024 |
| 36006 | DS-65045N | STOCKINGS | | | | | 257 | | 2,567.43 | |
| 36006001 | Winter Wonder Lane | | 034 | | | | | 9.99 | 60.460 | 14.99 |
| 2 | 481074536808 | | | 0.830 | A1 | | | | | |
| 360 | 810745540 | REINDEER STOCKING H | 0.00 | IN | | | 257 | 3.95 | 1,015.15 | 09/09/2024 |
| 36006 | DS-65045R | STOCKINGS | | | | | 257 | | 2,567.43 | |
| 36006001 | Winter Wonder Lane | | 034 | | | | | 9.99 | 60.460 | 14.99 |
| 3 | 481074554000 | | | 1.016 | A1 | | | | | |
| 360 | 810745606 | GOLD SNOWFLAKE STO | 0.00 | IN | | | 257 | 3.95 | 1,015.15 | 09/09/2024 |
| 36006 | DS-65045S | STOCKINGS | | | | | 257 | | 2,567.43 | |
| 36006001 | Winter Wonder Lane | | 034 | | | | | 9.99 | 60.460 | 14.99 |
| 4 | 481074560605 | | | 0.918 | A1 | | | | | |
| 360 | 810745667 | GOLD XMAS TREE STOC | 0.00 | IN | | | 257 | 3.95 | 1,015.15 | 09/09/2024 |
| 36006 | DS-65045T | STOCKINGS | | | | | 257 | | 2,567.43 | |
| 36006001 | Winter Wonder Lane | | 034 | | | | | 9.99 | 60.460 | 14.99 |
| 5 | 481074566706 | | | 0.781 | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|--------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| *--End of | assortment list | for -810745369 | | | | | | | | 09/09/2024 |
|-----------|-----------------|----------------|--|--|--|--|--|--|--|------------|
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



**PO #**    **95415351**

| | |
|---|---|
| Date Created | 05/30/2024 |
| Version: | 4 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/22/2024 |
| Cancel if not Shipped by: | 07/29/2024 |
| Must be Routed by: | 07/01/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | MUNDRA    ,  IN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520        Fax:

---

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

**Purchase From Vendor:   5005521**

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:    SURENDER GANDHI
Telephone:  91-591-2478400      Fax    91-591-2478499
E-Mail:    surender@dewansons.com

---

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 3,216 | 157,396.95 | 50,011.50 | 65.173 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner, without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810745722 | COMBO 14.25IN METAL | 0.00 | IN | 1 | | 205 | 16.50 | 4,589.95 | 09/09/2024 |
| 36006 | DS-65325 | DECORATION | | | 1 | | 205 | 5.89 | 12,287.70 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 59.94 | 62.646 | |
| 1 | 481074572202 | | GRM | 1.493 | A1 | | | | | |
| -->> The | above assortment | (810745722) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810624994 | SM RED METAL HANGIN | 0.00 | IN | | | 410 | 2.75 | 1,127.50 | 09/09/2024 |
| 36008 | DS-47302S | BETERDECOR | | | | | 205 | | 4,095.90 | |
| 36008003 | Winter Wonder Lane | | 029 | | | | | 9.99 | 72.472 | 34.05 |
| 2 | 481062499405 | | | 0.911 | A1 | | | | | |
| 360 | 810745651 | EX SM GOLD METAL HA | 0.00 | IN | | | 410 | 2.75 | 1,127.50 | 09/09/2024 |
| 36006 | DS-59639EX-GOLD | DECORATION | | | | | 205 | | 4,095.90 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 9.99 | 72.472 | 14.99 |
| 3 | 481074565105 | | | 1.493 | A1 | | | | | |
| 360 | 810745678 | EX SM SILVER METAL | 0.00 | IN | | | 410 | 2.75 | 1,127.50 | 09/09/2024 |
| 36006 | DS-64960EX-SILVER | DECORATION | | | | | 205 | | 4,095.90 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 9.99 | 72.472 | 14.99 |
| 4 | 481074567802 | | | 1.493 | A1 | | | | | |
| End of | assortment list | for -810745722 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810745660 | COMBO 15IN METAL HA | 0.00 | IN | 1 | | 205 | 25.50 | 7,234.45 | 09/09/2024 |
| 36006 | DS-65324 | DECORATION | | | 1 | | 205 | 9.79 | 18,437.70 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 89.94 | 60.763 | |
| 5 | 481074566003 | | GRM | 2.550 | A1 | | | | | |
| -->> The | above assortment | (810745660) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810624995 | LG RED METAL HANGIN | 0.00 | IN | | | 410 | 4.25 | 1,742.50 | 09/09/2024 |
| 36008 | DS-47302L | BETERDECOR | | | | | 205 | | 6,145.90 | |
| 36008003 | Winter Wonder Lane | | 029 | | | | | 14.99 | 71.648 | 65.00 |
| 6 | 481062499504 | | | 1.595 | A1 | | | | | |
| 360 | 810745486 | SM GOLD METAL HANGI | 0.00 | IN | | | 410 | 4.25 | 1,742.50 | 09/09/2024 |
| 36006 | DS-59639S-GOLD | DECORATION | | | | | 205 | | 6,145.90 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 71.648 | 19.69 |
| 7 | 481074548603 | | | 2.550 | A1 | | | | | |
| 360 | 810745489 | SM SILVER METAL HAN | 0.00 | IN | | | 410 | 4.25 | 1,742.50 | 09/09/2024 |
| 36006 | DS-64960S-SILVER | DECORATION | | | | | 205 | | 6,145.90 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 71.648 | 19.69 |
| 8 | 481074548900 | | | 2.550 | A1 | | | | | |
| End of | assortment list | for -810745660 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| | | | | | | | | | | |
| 360 | 810745370 | COMBO 16.5IN METAL | 0.00 | IN | 1 | | 185 | 34.50 | 9,486.80 | 09/09/2024 |
| 36006 | DS-65323 | DECORATION | | | 1 | | 185 | 16.78 | 22,188.90 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 119.94 | 57.245 | |
| 9 | 481074537003 | | GRM | 4.685 | A1 | | | | | |
| -->> The | above assortment | (810745370) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745565 | MD RED METAL HANGIN | 0.00 | IN | | | 370 | 5.75 | 2,127.50 | 09/09/2024 |
| 36006 | DS-60491M-RED | DECORATION | | | | | 185 | | 7,396.30 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 71.236 | 23.99 |
| 10 | 481074556509 | | | 4.685 | A1 | | | | | |
| 360 | 810745569 | MD GOLD METAL HANGI | 0.00 | IN | | | 370 | 5.75 | 2,127.50 | 09/09/2024 |
| 36006 | DS-60897M-GOLD | DECORATION | | | | | 185 | | 7,396.30 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 71.236 | 23.99 |
| 11 | 481074556905 | | | 4.685 | A1 | | | | | |
| 360 | 810745748 | MD SILVER METAL HAN | 0.00 | IN | | | 370 | 5.75 | 2,127.50 | 09/09/2024 |
| 36006 | DS-60896M-SILVER | DECORATION | | | | | 185 | | 7,396.30 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 71.236 | 23.99 |
| 12 | 481074574800 | | | 4.685 | A1 | | | | | |
| End of | assortment list | for -810745370 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810745568 | REINDEER HEAD TABLE | 0.00 | IN | 1 | | 195 | 13.00 | 3,246.75 | 09/09/2024 |
| 36006 | DS-63623 | DECORATION | | | 1 | | 195 | 3.65 | 7,798.05 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 39.99 | 58.365 | 58.99 |
| 17 | 481074556806 | | GRM | 1.094 | A1 | | | | | |
| 360 | 810745343 | COMBO S/3 DECORATIV | 0.00 | IN | 1 | | 182 | 30.00 | 6,280.82 | 09/09/2024 |
| 36006 | DS-64619 | DECORATION | | | 1 | | 182 | 4.51 | 16,733.08 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 91.94 | 62.465 | |
| 18 | 481074534309 | | GRM | 1.156 | A1 | | | | | |
| -->> The | above assortment | (810745343) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745623 | 32IN GOLD DECORATIV | 0.00 | IN | | | 364 | 6.00 | 2,184.00 | 09/09/2024 |
| 36006 | DS-64619A | DECORATION | | | | | 182 | | 7,276.36 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 69.985 | 36.99 |
| 19 | 481074562302 | | | 1.156 | A1 | | | | | |
| 360 | 810745655 | 18IN GOLD DECORATIV | 0.00 | IN | | | 364 | 4.00 | 1,456.00 | 09/09/2024 |
| 36006 | DS-64619C | DECORATION | | | | | 182 | | 4,000.36 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 10.99 | 63.603 | 15.99 |
| 20 | 481074565501 | | | 0.333 | A1 | | | | | |
| 360 | 810745705 | 24IN GOLD DECORATIV | 0.00 | IN | | | 364 | 5.00 | 1,820.00 | 09/09/2024 |
| 36006 | DS-64619B | DECORATION | | | | | 182 | | 5,456.36 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 66.644 | 19.99 |
| 21 | 481074570505 | | | 0.617 | A1 | | | | | |



OFFICE-COPY

PO#:  95415351

Page 10 of

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| | | | | | | | | | | |
| End of | assortment list | for -810745343 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745344 | COMBO S/3 DECORATIV | 0.00 | IN | 1 | | 182 | 30.00 | 6,280.82 | 09/09/2024 |
| 36006 | DS-64618 | DECORATION | | | 1 | | 182 | 4.51 | 16,733.08 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 91.94 | 62.465 | |
| 22 | 481074534408 | | GRM | 1.156 | A1 | | | | | |
| -->> The | above assortment | (810745344) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745622 | 18IN RED DECORATIVE | 0.00 | IN | | | 364 | 4.00 | 1,456.00 | 09/09/2024 |
| 36006 | DS-64618C | DECORATION | | | | | 182 | | 4,000.36 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 10.99 | 63.603 | 15.99 |
| 23 | 481074562203 | | | 0.333 | A1 | | | | | |
| 360 | 810745624 | 32IN RED DECORATIVE | 0.00 | IN | | | 364 | 6.00 | 2,184.00 | 09/09/2024 |
| 36006 | DS-64618A | DECORATION | | | | | 182 | | 7,276.36 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 69.985 | 36.99 |
| 24 | 481074562401 | | | 1.156 | A1 | | | | | |
| 360 | 810745703 | 24IN RED DECORATIVE | 0.00 | IN | | | 364 | 5.00 | 1,820.00 | 09/09/2024 |
| 36006 | DS-64618B | DECORATION | | | | | 182 | | 5,456.36 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 66.644 | 19.99 |
| 25 | 481074570307 | | | 0.617 | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| | | | | | | | | | | |
| End of | assortment list | for -810745344 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745621 | COMBO S/3 DECORATIV | 0.00 | IN | 1 | | 182 | 30.00 | 6,280.82 | 09/09/2024 |
| 36006 | DS-64620 | DECORATION | | | 1 | | 182 | 4.51 | 16,733.08 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 91.94 | 62.465 | |
| 26 | 481074562104 | | GRM | 1.156 | A1 | | | | | |
| -->> The | above assortment | (810745621) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745625 | 18IN SILVER GLITTER | 0.00 | IN | | | 364 | 4.00 | 1,456.00 | 09/09/2024 |
| 36006 | DS-64620C | DECORATION | | | | | 182 | | 4,000.36 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 10.99 | 63.603 | 15.99 |
| 27 | 481074562500 | | | 0.333 | A1 | | | | | |
| 360 | 810745707 | 32IN SILVER GLITTER | 0.00 | IN | | | 364 | 6.00 | 2,184.00 | 09/09/2024 |
| 36006 | DS-64620A | DECORATION | | | | | 182 | | 7,276.36 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 69.985 | 36.99 |
| 28 | 481074570703 | | | 1.156 | A1 | | | | | |
| 360 | 810745708 | 24IN SILVER GLITTER | 0.00 | IN | | | 364 | 5.00 | 1,820.00 | 09/09/2024 |
| 36006 | DS-64620B | DECORATION | | | | | 182 | | 5,456.36 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 66.644 | 19.99 |
| 29 | 481074570802 | | | 0.617 | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| End of | assortment list | for -810745621 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745731 | SET OF 3 HANGING BE | 0.00 | IN | 4 | | 744 | 6.00 | 5,520.48 | 09/09/2024 |
| 36006 | DS-59811L | DECORATION | | | 4 | | 186 | 1.42 | 11,152.56 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 50.500 | 18.99 |
| 30 | 481074573100 | | GRM | 1.167 | A1 | | | | | |
| 360 | 810745653 | 3 HANGING BELLS GOL | 0.00 | IN | 4 | | 744 | 3.00 | 2,663.52 | 09/09/2024 |
| 36006 | DS-59811S | DECORATION | | | 4 | | 186 | 0.58 | 5,944.56 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 7.99 | 55.194 | 14.12 |
| 31 | 481074565303 | | GRM | 0.403 | A1 | | | | | |
| 360 | 810745628 | COMBO 18IN METAL HA | 0.00 | IN | 1 | | 392 | 24.00 | 14,213.92 | 09/09/2024 |
| 36006 | DS-65322 | DECORATION | | | 1 | | 392 | 12.26 | 29,388.24 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 74.97 | 51.634 | |
| 32 | 481074562807 | | GRM | 7.775 | A1 | | | | | |
| -->> The | above assortment | (810745628) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745563 | LG GOLD METAL HANGI | 0.00 | IN | | | 392 | 8.00 | 3,136.00 | 09/09/2024 |
| 36006 | DS-60897L-GOLD | DECORATION | | | | | 392 | | 9,796.08 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 24.99 | 67.987 | 29.99 |
| 33 | 481074556301 | | | | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | | PDQ Pkg | | |
| 360 | 810745677 | LG RED METAL HANGIN | 0.00 | IN | | | 392 | 8.00 | 3,136.00 | 09/09/2024 |
| 36006 | DS-60491L-RED | DECORATION | | | | | 392 | | 9,796.08 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 24.99 | 67.987 | 29.99 |
| 34 | 481074567703 | | | | A1 | | | | | |
| 360 | 810745747 | LG SILVER METAL HAN | 0.00 | IN | | | 392 | 8.00 | 3,136.00 | 09/09/2024 |
| 36006 | DS-60896L-SILVER | DECORATION | | | | | 392 | | 9,796.08 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 24.99 | 67.987 | 29.99 |
| 35 | 481074574701 | | | | A1 | | | | | |
| *--End of | assortment list | for -810745628 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



**PO #**  **95415352**

| | |
|---|---|
| Date Created | 05/30/2024 |
| Version: | 5 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 08/05/2024 |
| Cancel if not Shipped by: | 08/12/2024 |
| Must be Routed by: | 07/15/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | MUNDRA        ,  IN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633      Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800      Fax: 614-278-6871

**Purchase From Vendor:  5005521**

DEWAN & SONS EXPORTS PVT LTD
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:
Telephone:                     Fax
E-Mail:

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 6,632 | 327,055.77 | 93,549.15 | 68.503 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms").  The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party.  "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.       Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.       Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC").  A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.       Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.       Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.       Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.       Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.       Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.       Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.       Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|--------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810745722 | COMBO 14.25IN METAL | 0.00 | IN | 1 | | 418 | 14.85 | 8,641.73 | 09/16/2024 |
| 36006 | DS-65325 | DECORATION | | | 1 | | 418 | 5.82 | 25,054.92 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 59.94 | 65.509 | |
| 1 | 481074572202 | | GRM | 1.493 | A1 | | | | | |
| -->> The | above assortment | (810745722) | consists of | | | | | | | 09/16/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810624994 | SM RED METAL HANGIN | 0.00 | IN | | | 836 | 2.75 | 2,299.00 | 09/16/2024 |
| 36008 | DS-47302S | BETERDECOR | | | | | 418 | | 8,351.64 | |
| 36008003 | Winter Wonder Lane | | 029 | | | | | 9.99 | 72.472 | 34.05 |
| 2 | 481062499405 | | | 0.911 | A1 | | | | | |
| 360 | 810745651 | EX SM GOLD METAL HA | 0.00 | IN | | | 836 | 2.75 | 2,299.00 | 09/16/2024 |
| 36006 | DS-59639EX-GOLD | DECORATION | | | | | 418 | | 8,351.64 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 9.99 | 72.472 | 14.99 |
| 3 | 481074565105 | | | 1.493 | A1 | | | | | |
| 360 | 810745678 | EX SM SILVER METAL | 0.00 | IN | | | 836 | 2.75 | 2,299.00 | 09/16/2024 |
| 36006 | DS-64960EX-SILVER | DECORATION | | | | | 418 | | 8,351.64 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 9.99 | 72.472 | 14.99 |
| 4 | 481074567802 | | | 1.493 | A1 | | | | | |
| End of | assortment list | for -810745722 | | | | | | | | 09/16/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

PO#:  95415352

Page 7 of 13

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 360 | 810745660 | COMBO 15IN METAL HA | 0.00 | IN | 1 | | 418 | 22.95 | 13,642.68 | 09/16/2024 |
| 36006 | DS-65324 | DECORATION | | | 1 | | 418 | 9.69 | 37,594.92 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 89.94 | 63.711 | |
| 5 | 481074566003 | | GRM | 2.550 | A1 | | | | | |
| -->> The | above assortment | (810745660) | consists of | | | | | | | 09/16/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810624995 | LG RED METAL HANGIN | 0.00 | IN | | | 836 | 4.25 | 3,553.00 | 09/16/2024 |
| 36008 | DS-47302L | BETERDECOR | | | | | 418 | | 12,531.64 | |
| 36008003 | Winter Wonder Lane | | 029 | | | | | 14.99 | 71.648 | 65.00 |
| 6 | 481062499504 | | | 1.595 | A1 | | | | | |
| 360 | 810745486 | SM GOLD METAL HANGI | 0.00 | IN | | | 836 | 4.25 | 3,553.00 | 09/16/2024 |
| 36006 | DS-59639S-GOLD | DECORATION | | | | | 418 | | 12,531.64 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 71.648 | 19.69 |
| 7 | 481074548603 | | | 2.550 | A1 | | | | | |
| 360 | 810745489 | SM SILVER METAL HAN | 0.00 | IN | | | 836 | 4.25 | 3,553.00 | 09/16/2024 |
| 36006 | DS-64960S-SILVER | DECORATION | | | | | 418 | | 12,531.64 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 71.648 | 19.69 |
| 8 | 481074548900 | | | 2.550 | A1 | | | | | |
| End of | assortment list | for -810745660 | | | | | | | | 09/16/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810745370 | COMBO 16.5IN METAL | 0.00 | IN | 1 | | 389 | 31.05 | 18,552.19 | 09/16/2024 |
| 36006 | DS-65323 | DECORATION | | | 1 | | 389 | 16.64 | 46,656.66 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 119.94 | 60.237 | |
| 9 | 481074537003 | | GRM | 4.685 | A1 | | | | | |
| -->> The | above assortment | (810745370) | consists of | | | | | | | 09/16/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745565 | MD RED METAL HANGIN | 0.00 | IN | | | 778 | 5.75 | 4,473.50 | 09/16/2024 |
| 36006 | DS-60491M-RED | DECORATION | | | | | 389 | | 15,552.22 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 71.236 | 23.99 |
| 10 | 481074556509 | | | 4.685 | A1 | | | | | |
| 360 | 810745569 | MD GOLD METAL HANGI | 0.00 | IN | | | 778 | 5.75 | 4,473.50 | 09/16/2024 |
| 36006 | DS-60897M-GOLD | DECORATION | | | | | 389 | | 15,552.22 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 71.236 | 23.99 |
| 11 | 481074556905 | | | 4.685 | A1 | | | | | |
| 360 | 810745748 | MD SILVER METAL HAN | 0.00 | IN | | | 778 | 5.75 | 4,473.50 | 09/16/2024 |
| 36006 | DS-60896M-SILVER | DECORATION | | | | | 389 | | 15,552.22 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 71.236 | 23.99 |
| 12 | 481074574800 | | | 4.685 | A1 | | | | | |
| End of | assortment list | for -810745370 | | | | | | | | 09/16/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810745568 | REINDEER HEAD TABLE | 0.00 | IN | 1 | | 391 | 11.70 | 5,981.52 | 09/16/2024 |
| 36006 | DS-63623 | DECORATION | | | 1 | | 391 | 3.60 | 15,636.09 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 39.99 | 61.745 | 58.99 |
| 17 | 481074556806 | | GRM | 1.094 | A1 | | | | | |
| 360 | 810745343 | COMBO S/3 DECORATIV | 0.00 | IN | 1 | | 394 | 27.00 | 12,367.66 | 09/16/2024 |
| 36006 | DS-64619 | DECORATION | | | 1 | | 394 | 4.39 | 36,224.36 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 91.94 | 65.858 | |
| 18 | 481074534309 | | GRM | 1.156 | A1 | | | | | |
| -->> The | above assortment | (810745343) | consists of | | | | | | | 09/16/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745623 | 32IN GOLD DECORATIV | 0.00 | IN | | | 788 | 6.00 | 4,728.00 | 09/16/2024 |
| 36006 | DS-64619A | DECORATION | | | | | 394 | | 15,752.12 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 69.985 | 36.99 |
| 19 | 481074562302 | | | 1.156 | A1 | | | | | |
| 360 | 810745655 | 18IN GOLD DECORATIV | 0.00 | IN | | | 788 | 4.00 | 3,152.00 | 09/16/2024 |
| 36006 | DS-64619C | DECORATION | | | | | 394 | | 8,660.12 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 10.99 | 63.603 | 15.99 |
| 20 | 481074565501 | | | 0.333 | A1 | | | | | |
| 360 | 810745705 | 24IN GOLD DECORATIV | 0.00 | IN | | | 788 | 5.00 | 3,940.00 | 09/16/2024 |
| 36006 | DS-64619B | DECORATION | | | | | 394 | | 11,812.12 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 66.644 | 19.99 |
| 21 | 481074570505 | | | 0.617 | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|-------------|------|------------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| | | | | | | | | | | |
| End of | assortment list | for -810745343 | | | | | | | | 09/16/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745344 | COMBO S/3 DECORATIV | 0.00 | IN | 1 | | 394 | 27.00 | 12,367.66 | 09/16/2024 |
| 36006 | DS-64618 | DECORATION | | | 1 | | 394 | 4.39 | 36,224.36 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 91.94 | 65.858 | |
| 22 | 481074534408 | | GRM | 1.156 | A1 | | | | | |
| -->> The | above assortment | (810745344) | consists of | | | | | | | 09/16/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745622 | 18IN RED DECORATIVE | 0.00 | IN | | | 788 | 4.00 | 3,152.00 | 09/16/2024 |
| 36006 | DS-64618C | DECORATION | | | | | 394 | | 8,660.12 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 10.99 | 63.603 | 15.99 |
| 23 | 481074562203 | | | 0.333 | A1 | | | | | |
| 360 | 810745624 | 32IN RED DECORATIVE | 0.00 | IN | | | 788 | 6.00 | 4,728.00 | 09/16/2024 |
| 36006 | DS-64618A | DECORATION | | | | | 394 | | 15,752.12 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 69.985 | 36.99 |
| 24 | 481074562401 | | | 1.156 | A1 | | | | | |
| 360 | 810745703 | 24IN RED DECORATIVE | 0.00 | IN | | | 788 | 5.00 | 3,940.00 | 09/16/2024 |
| 36006 | DS-64618B | DECORATION | | | | | 394 | | 11,812.12 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 66.644 | 19.99 |
| 25 | 481074570307 | | | 0.617 | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| End of | assortment list | for -810745344 | | | | | | | | 09/16/2024 |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745621 | COMBO S/3 DECORATIV | 0.00 | IN | 1 | | 394 | 27.00 | 12,367.66 | 09/16/2024 |
| 36006 | DS-64620 | DECORATION | | | 1 | | 394 | 4.39 | 36,224.36 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 91.94 | 65.858 | |
| 26 | 481074562104 | | GRM | 1.156 | A1 | | | | | |
| -->> The | above assortment | (810745621) | consists of | | | | | | | 09/16/2024 |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745625 | 18IN SILVER GLITTER | 0.00 | IN | | | 788 | 4.00 | 3,152.00 | 09/16/2024 |
| 36006 | DS-64620C | DECORATION | | | | | 394 | | 8,660.12 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 10.99 | 63.603 | 15.99 |
| 27 | 481074562500 | | | 0.333 | A1 | | | | | |
| 360 | 810745707 | 32IN SILVER GLITTER | 0.00 | IN | | | 788 | 6.00 | 4,728.00 | 09/16/2024 |
| 36006 | DS-64620A | DECORATION | | | | | 394 | | 15,752.12 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 69.985 | 36.99 |
| 28 | 481074570703 | | | 1.156 | A1 | | | | | |
| 360 | 810745708 | 24IN SILVER GLITTER | 0.00 | IN | | | 788 | 5.00 | 3,940.00 | 09/16/2024 |
| 36006 | DS-64620B | DECORATION | | | | | 394 | | 11,812.12 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 66.644 | 19.99 |
| 29 | 481074570802 | | | 0.617 | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| | | | | | | | | | | |
| End of | assortment list | for -810745621 | | | | | | | | 09/16/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745731 | SET OF 3 HANGING BE | 0.00 | IN | 4 | | 1,528 | 5.40 | 10,384.29 | 09/16/2024 |
| 36006 | DS-59811L | DECORATION | | | 4 | | 382 | 1.40 | 22,904.72 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 54.663 | 18.99 |
| 30 | 481074573100 | | GRM | 1.167 | A1 | | | | | |
| 360 | 810745653 | 3 HANGING BELLS GOL | 0.00 | IN | 4 | | 1,528 | 2.70 | 4,993.50 | 09/16/2024 |
| 36006 | DS-59811S | DECORATION | | | 4 | | 382 | 0.57 | 12,208.72 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 7.99 | 59.099 | 14.12 |
| 31 | 481074565303 | | GRM | 0.403 | A1 | | | | | |
| 360 | 810745628 | COMBO 18IN METAL HA | 0.00 | IN | 1 | | 778 | 21.60 | 26,268.39 | 09/16/2024 |
| 36006 | DS-65322 | DECORATION | | | 1 | | 778 | 12.16 | 58,326.66 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 74.97 | 54.963 | |
| 32 | 481074562807 | | GRM | 7.775 | A1 | | | | | |
| -->> The | above assortment | (810745628) | consists of | | | | | | | 09/16/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745563 | LG GOLD METAL HANGI | 0.00 | IN | | | 778 | 8.00 | 6,224.00 | 09/16/2024 |
| 36006 | DS-60897L-GOLD | DECORATION | | | | | 778 | | 19,442.22 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 24.99 | 67.987 | 29.99 |
| 33 | 481074556301 | | | | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | | PDQ Pkg | | |
| 360 | 810745677 | LG RED METAL HANGIN | 0.00 | IN | | | 778 | 8.00 | 6,224.00 | 09/16/2024 |
| 36006 | DS-60491L-RED | DECORATION | | | | | 778 | | 19,442.22 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 24.99 | 67.987 | 29.99 |
| 34 | 481074567703 | | | | A1 | | | | | |
| 360 | 810745747 | LG SILVER METAL HAN | 0.00 | IN | | | 778 | 8.00 | 6,224.00 | 09/16/2024 |
| 36006 | DS-60896L-SILVER | DECORATION | | | | | 778 | | 19,442.22 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 24.99 | 67.987 | 29.99 |
| 35 | 481074574701 | | | | A1 | | | | | |
| *--End of | assortment list | for -810745628 | | | | | | | | 09/16/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



**PO #**     **95415354**

| | |
|---|---|
| Date Created | 05/30/2024 |
| Version: | 3 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/15/2024 |
| Cancel if not Shipped by: | 07/22/2024 |
| Must be Routed by: | 06/24/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | MUNDRA     ,  IN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:   580-931-2197

---

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

---

Purchase From Vendor:   5005521

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:     SURENDER GANDHI
Telephone:  91-591-2478400      Fax    91-591-2478499
E-Mail:      surender@dewansons.com

---

**ADDITIONAL COMMENTS**

---

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 3,107 | 150,767.37 | 47,871.50 | 65.215 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Buyer's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| | | | | | | | | | | |
| 360 | 810745722 | COMBO 14.25IN METAL | 0.00 | IN | 1 | | 201 | 16.50 | 4,500.39 | 09/09/2024 |
| 36006 | DS-65325 | DECORATION | | | 1 | | 201 | 5.89 | 12,047.94 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 59.94 | 62.646 | |
| 1 | 481074572202 | | GRM | 1.493 | A1 | | | | | |
| -->> The | above assortment | (810745722) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810624994 | SM RED METAL HANGIN | 0.00 | IN | | | 402 | 2.75 | 1,105.50 | 09/09/2024 |
| 36008 | DS-47302S | BETERDECOR | | | | | 201 | | 4,015.98 | |
| 36008003 | Winter Wonder Lane | | 029 | | | | | 9.99 | 72.472 | 34.05 |
| 2 | 481062499405 | | | 0.911 | A1 | | | | | |
| 360 | 810745651 | EX SM GOLD METAL HA | 0.00 | IN | | | 402 | 2.75 | 1,105.50 | 09/09/2024 |
| 36006 | DS-59639EX-GOLD | DECORATION | | | | | 201 | | 4,015.98 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 9.99 | 72.472 | 14.99 |
| 3 | 481074565105 | | | 1.493 | A1 | | | | | |
| 360 | 810745678 | EX SM SILVER METAL | 0.00 | IN | | | 402 | 2.75 | 1,105.50 | 09/09/2024 |
| 36006 | DS-64960EX-SILVER | DECORATION | | | | | 201 | | 4,015.98 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 9.99 | 72.472 | 14.99 |
| 4 | 481074567802 | | | 1.493 | A1 | | | | | |
| End of | assortment list | for -810745722 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| | | | | | | | | | | |
| 360 | 810745660 | COMBO 15IN METAL HA | 0.00 | IN | 1 | | 201 | 25.50 | 7,093.29 | 09/09/2024 |
| 36006 | DS-65324 | DECORATION | | | 1 | | 201 | 9.79 | 18,077.94 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 89.94 | 60.763 | |
| 5 | 481074566003 | | GRM | 2.550 | A1 | | | | | |
| -->> The | above assortment | (810745660) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810624995 | LG RED METAL HANGIN | 0.00 | IN | | | 402 | 4.25 | 1,708.50 | 09/09/2024 |
| 36008 | DS-47302L | BETERDECOR | | | | | 201 | | 6,025.98 | |
| 36008003 | Winter Wonder Lane | | 029 | | | | | 14.99 | 71.648 | 65.00 |
| 6 | 481062499504 | | | 1.595 | A1 | | | | | |
| 360 | 810745486 | SM GOLD METAL HANGI | 0.00 | IN | | | 402 | 4.25 | 1,708.50 | 09/09/2024 |
| 36006 | DS-59639S-GOLD | DECORATION | | | | | 201 | | 6,025.98 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 71.648 | 19.69 |
| 7 | 481074548603 | | | 2.550 | A1 | | | | | |
| 360 | 810745489 | SM SILVER METAL HAN | 0.00 | IN | | | 402 | 4.25 | 1,708.50 | 09/09/2024 |
| 36006 | DS-64960S-SILVER | DECORATION | | | | | 201 | | 6,025.98 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 71.648 | 19.69 |
| 8 | 481074548900 | | | 2.550 | A1 | | | | | |
| End of | assortment list | for -810745660 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810745370 | COMBO 16.5IN METAL | 0.00 | IN | 1 | | 187 | 34.50 | 9,589.36 | 09/09/2024 |
| 36006 | DS-65323 | DECORATION | | | 1 | | 187 | 16.78 | 22,428.78 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 119.94 | 57.245 | |
| 9 | 481074537003 | | GRM | 4.685 | A1 | | | | | |
| -->> The | above assortment | (810745370) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745565 | MD RED METAL HANGIN | 0.00 | IN | | | 374 | 5.75 | 2,150.50 | 09/09/2024 |
| 36006 | DS-60491M-RED | DECORATION | | | | | 187 | | 7,476.26 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 71.236 | 23.99 |
| 10 | 481074556509 | | | 4.685 | A1 | | | | | |
| 360 | 810745569 | MD GOLD METAL HANGI | 0.00 | IN | | | 374 | 5.75 | 2,150.50 | 09/09/2024 |
| 36006 | DS-60897M-GOLD | DECORATION | | | | | 187 | | 7,476.26 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 71.236 | 23.99 |
| 11 | 481074556905 | | | 4.685 | A1 | | | | | |
| 360 | 810745748 | MD SILVER METAL HAN | 0.00 | IN | | | 374 | 5.75 | 2,150.50 | 09/09/2024 |
| 36006 | DS-60896M-SILVER | DECORATION | | | | | 187 | | 7,476.26 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 71.236 | 23.99 |
| 12 | 481074574800 | | | 4.685 | A1 | | | | | |
| End of | assortment list | for -810745370 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810745568 | REINDEER HEAD TABLE | 0.00 | IN | 1 | | 152 | 13.00 | 2,530.80 | 09/09/2024 |
| 36006 | DS-63623 | DECORATION | | | 1 | | 152 | 3.65 | 6,078.48 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 39.99 | 58.365 | 58.99 |
| 17 | 481074556806 | | GRM | 1.094 | A1 | | | | | |
| 360 | 810745343 | COMBO S/3 DECORATIV | 0.00 | IN | 1 | | 171 | 30.00 | 5,901.21 | 09/09/2024 |
| 36006 | DS-64619 | DECORATION | | | 1 | | 171 | 4.51 | 15,721.74 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 91.94 | 62.465 | |
| 18 | 481074534309 | | GRM | 1.156 | A1 | | | | | |
| -->> The | above assortment | (810745343) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745623 | 32IN GOLD DECORATIV | 0.00 | IN | | | 342 | 6.00 | 2,052.00 | 09/09/2024 |
| 36006 | DS-64619A | DECORATION | | | | | 171 | | 6,836.58 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 69.985 | 36.99 |
| 19 | 481074562302 | | | 1.156 | A1 | | | | | |
| 360 | 810745655 | 18IN GOLD DECORATIV | 0.00 | IN | | | 342 | 4.00 | 1,368.00 | 09/09/2024 |
| 36006 | DS-64619C | DECORATION | | | | | 171 | | 3,758.58 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 10.99 | 63.603 | 15.99 |
| 20 | 481074565501 | | | 0.333 | A1 | | | | | |
| 360 | 810745705 | 24IN GOLD DECORATIV | 0.00 | IN | | | 342 | 5.00 | 1,710.00 | 09/09/2024 |
| 36006 | DS-64619B | DECORATION | | | | | 171 | | 5,126.58 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 66.644 | 19.99 |
| 21 | 481074570505 | | | 0.617 | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| | | | | | | | | | | |
| End of | assortment list | for -810745343 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745344 | COMBO S/3 DECORATIV | 0.00 | IN | 1 | | 171 | 30.00 | 5,901.21 | 09/09/2024 |
| 36006 | DS-64618 | DECORATION | | | 1 | | 171 | 4.51 | 15,721.74 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 91.94 | 62.465 | |
| 22 | 481074534408 | | GRM | 1.156 | A1 | | | | | |
| -->> The | above assortment | (810745344) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745622 | 18IN RED DECORATIVE | 0.00 | IN | | | 342 | 4.00 | 1,368.00 | 09/09/2024 |
| 36006 | DS-64618C | DECORATION | | | | | 171 | | 3,758.58 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 10.99 | 63.603 | 15.99 |
| 23 | 481074562203 | | | 0.333 | A1 | | | | | |
| 360 | 810745624 | 32IN RED DECORATIVE | 0.00 | IN | | | 342 | 6.00 | 2,052.00 | 09/09/2024 |
| 36006 | DS-64618A | DECORATION | | | | | 171 | | 6,836.58 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 69.985 | 36.99 |
| 24 | 481074562401 | | | 1.156 | A1 | | | | | |
| 360 | 810745703 | 24IN RED DECORATIVE | 0.00 | IN | | | 342 | 5.00 | 1,710.00 | 09/09/2024 |
| 36006 | DS-64618B | DECORATION | | | | | 171 | | 5,126.58 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 66.644 | 19.99 |
| 25 | 481074570307 | | | 0.617 | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| | | | | | | | | | | |
| End of | assortment list | for -810745344 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745621 | COMBO S/3 DECORATIV | 0.00 | IN | 1 | | 171 | 30.00 | 5,901.21 | 09/09/2024 |
| 36006 | DS-64620 | DECORATION | | | 1 | | 171 | 4.51 | 15,721.74 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 91.94 | 62.465 | |
| 26 | 481074562104 | | GRM | 1.156 | A1 | | | | | |
| -->> The | above assortment | (810745621) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745625 | 18IN SILVER GLITTER | 0.00 | IN | | | 342 | 4.00 | 1,368.00 | 09/09/2024 |
| 36006 | DS-64620C | DECORATION | | | | | 171 | | 3,758.58 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 10.99 | 63.603 | 15.99 |
| 27 | 481074562500 | | | 0.333 | A1 | | | | | |
| 360 | 810745707 | 32IN SILVER GLITTER | 0.00 | IN | | | 342 | 6.00 | 2,052.00 | 09/09/2024 |
| 36006 | DS-64620A | DECORATION | | | | | 171 | | 6,836.58 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 69.985 | 36.99 |
| 28 | 481074570703 | | | 1.156 | A1 | | | | | |
| 360 | 810745708 | 24IN SILVER GLITTER | 0.00 | IN | | | 342 | 5.00 | 1,710.00 | 09/09/2024 |
| 36006 | DS-64620B | DECORATION | | | | | 171 | | 5,126.58 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 66.644 | 19.99 |
| 29 | 481074570802 | | | 0.617 | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| End of | assortment list | for -810745621 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745731 | SET OF 3 HANGING BE | 0.00 | IN | 4 | | 740 | 6.00 | 5,490.80 | 09/09/2024 |
| 36006 | DS-59811L | DECORATION | | | 4 | | 185 | 1.42 | 11,092.60 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 50.500 | 18.99 |
| 30 | 481074573100 | | GRM | 1.167 | A1 | | | | | |
| 360 | 810745653 | 3 HANGING BELLS GOL | 0.00 | IN | 4 | | 740 | 3.00 | 2,649.20 | 09/09/2024 |
| 36006 | DS-59811S | DECORATION | | | 4 | | 185 | 0.58 | 5,912.60 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 7.99 | 55.194 | 14.12 |
| 31 | 481074565303 | | GRM | 0.403 | A1 | | | | | |
| 360 | 810745628 | COMBO 18IN METAL HA | 0.00 | IN | 1 | | 373 | 24.00 | 13,524.98 | 09/09/2024 |
| 36006 | DS-65322 | DECORATION | | | 1 | | 373 | 12.26 | 27,963.81 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 74.97 | 51.634 | |
| 32 | 481074562807 | | GRM | 7.775 | A1 | | | | | |
| -->> The | above assortment | (810745628) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745563 | LG GOLD METAL HANGI | 0.00 | IN | | | 373 | 8.00 | 2,984.00 | 09/09/2024 |
| 36006 | DS-60897L-GOLD | DECORATION | | | | | 373 | | 9,321.27 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 24.99 | 67.987 | 29.99 |
| 33 | 481074556301 | | | | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | | PDQ Pkg | | |
| 360 | 810745677 | LG RED METAL HANGIN | 0.00 | IN | | | | 373 | 8.00 | 2,984.00 | 09/09/2024 |
| 36006 | DS-60491L-RED | DECORATION | | | | | | 373 | | 9,321.27 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | | 24.99 | 67.987 | 29.99 |
| 34 | 481074567703 | | | | | A1 | | | | | |
| 360 | 810745747 | LG SILVER METAL HAN | 0.00 | IN | | | | 373 | 8.00 | 2,984.00 | 09/09/2024 |
| 36006 | DS-60896L-SILVER | DECORATION | | | | | | 373 | | 9,321.27 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | | 24.99 | 67.987 | 29.99 |
| 35 | 481074574701 | | | | | A1 | | | | | |
| *--End of | assortment list | for -810745628 | | | | | | | | | 09/09/2024 |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| 0 | | | | | | | | | | | |



**PO #**          **95415355**

| | |
|---|---|
| Date Created | 05/30/2024 |
| Version: | 4 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/29/2024 |
| Cancel if not Shipped by: | 08/05/2024 |
| Must be Routed by: | 07/08/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | MUNDRA        ,  IN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800        Fax:   614-278-3809

---

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

**Purchase From Vendor:   5005521**

DEWAN & SONS
SURENDER GANDHI
LAKRI -FAZALPUR , MINI BYPASS DELHI ROA
244001 MORADABAD, UTTAR PRADESH
INDIA

Contact:
Telephone:                        Fax
E-Mail:

---

**ADDITIONAL COMMENTS**

---

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 6,387 | 311,494.92 | 98,936.00 | 65.216 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810745722 | COMBO 14.25IN METAL | 0.00 | IN | 1 | | 408 | 16.50 | 9,135.12 | 09/09/2024 |
| 36006 | DS-65325 | DECORATION | | | 1 | | 408 | 5.89 | 24,455.52 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 59.94 | 62.646 | |
| 1 | 481074572202 | | GRM | 1.493 | A1 | | | | | |
| -->> The | above assortment | (810745722) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810624994 | SM RED METAL HANGIN | 0.00 | IN | | | 816 | 2.75 | 2,244.00 | 09/09/2024 |
| 36008 | DS-47302S | BETERDECOR | | | | | 408 | | 8,151.84 | |
| 36008003 | Winter Wonder Lane | | 029 | | | | | 9.99 | 72.472 | 34.05 |
| 2 | 481062499405 | | | 0.911 | A1 | | | | | |
| 360 | 810745651 | EX SM GOLD METAL HA | 0.00 | IN | | | 816 | 2.75 | 2,244.00 | 09/09/2024 |
| 36006 | DS-59639EX-GOLD | DECORATION | | | | | 408 | | 8,151.84 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 9.99 | 72.472 | 14.99 |
| 3 | 481074565105 | | | 1.493 | A1 | | | | | |
| 360 | 810745678 | EX SM SILVER METAL | 0.00 | IN | | | 816 | 2.75 | 2,244.00 | 09/09/2024 |
| 36006 | DS-64960EX-SILVER | DECORATION | | | | | 408 | | 8,151.84 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 9.99 | 72.472 | 14.99 |
| 4 | 481074567802 | | | 1.493 | A1 | | | | | |
| End of | assortment list | for -810745722 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810745660 | COMBO 15IN METAL HA | 0.00 | IN | 1 | | 408 | 25.50 | 14,398.32 | 09/09/2024 |
| 36006 | DS-65324 | DECORATION | | | 1 | | 408 | 9.79 | 36,695.52 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 89.94 | 60.763 | |
| 5 | 481074566003 | | GRM | 2.550 | A1 | | | | | |
| -->> The | above assortment | (810745660) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810624995 | LG RED METAL HANGIN | 0.00 | IN | | | 816 | 4.25 | 3,468.00 | 09/09/2024 |
| 36008 | DS-47302L | BETERDECOR | | | | | 408 | | 12,231.84 | |
| 36008003 | Winter Wonder Lane | | 029 | | | | | 14.99 | 71.648 | 65.00 |
| 6 | 481062499504 | | | 1.595 | A1 | | | | | |
| 360 | 810745486 | SM GOLD METAL HANGI | 0.00 | IN | | | 816 | 4.25 | 3,468.00 | 09/09/2024 |
| 36006 | DS-59639S-GOLD | DECORATION | | | | | 408 | | 12,231.84 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 71.648 | 19.69 |
| 7 | 481074548603 | | | 2.550 | A1 | | | | | |
| 360 | 810745489 | SM SILVER METAL HAN | 0.00 | IN | | | 816 | 4.25 | 3,468.00 | 09/09/2024 |
| 36006 | DS-64960S-SILVER | DECORATION | | | | | 408 | | 12,231.84 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 71.648 | 19.69 |
| 8 | 481074548900 | | | 2.550 | A1 | | | | | |
| End of | assortment list | for -810745660 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810745370 | COMBO 16.5IN METAL | 0.00 | IN | 1 | | 384 | 34.50 | 19,691.52 | 09/09/2024 |
| 36006 | DS-65323 | DECORATION | | | 1 | | 384 | 16.78 | 46,056.96 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 119.94 | 57.245 | |
| 9 | 481074537003 | | GRM | 4.685 | A1 | | | | | |
| -->> The | above assortment | (810745370) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745565 | MD RED METAL HANGIN | 0.00 | IN | | | 768 | 5.75 | 4,416.00 | 09/09/2024 |
| 36006 | DS-60491M-RED | DECORATION | | | | | 384 | | 15,352.32 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 71.236 | 23.99 |
| 10 | 481074556509 | | | 4.685 | A1 | | | | | |
| 360 | 810745569 | MD GOLD METAL HANGI | 0.00 | IN | | | 768 | 5.75 | 4,416.00 | 09/09/2024 |
| 36006 | DS-60897M-GOLD | DECORATION | | | | | 384 | | 15,352.32 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 71.236 | 23.99 |
| 11 | 481074556905 | | | 4.685 | A1 | | | | | |
| 360 | 810745748 | MD SILVER METAL HAN | 0.00 | IN | | | 768 | 5.75 | 4,416.00 | 09/09/2024 |
| 36006 | DS-60896M-SILVER | DECORATION | | | | | 384 | | 15,352.32 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 71.236 | 23.99 |
| 12 | 481074574800 | | | 4.685 | A1 | | | | | |
| End of | assortment list | for -810745370 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810745568 | REINDEER HEAD TABLE | 0.00 | IN | 1 | | 326 | 13.00 | 5,427.90 | 09/09/2024 |
| 36006 | DS-63623 | DECORATION | | | 1 | | 326 | 3.65 | 13,036.74 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 39.99 | 58.365 | 58.99 |
| 17 | 481074556806 | | GRM | 1.094 | A1 | | | | | |
| 360 | 810745343 | COMBO S/3 DECORATIV | 0.00 | IN | 1 | | 359 | 30.00 | 12,389.09 | 09/09/2024 |
| 36006 | DS-64619 | DECORATION | | | 1 | | 359 | 4.51 | 33,006.46 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 91.94 | 62.465 | |
| 18 | 481074534309 | | GRM | 1.156 | A1 | | | | | |
| -->> The | above assortment | (810745343) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745623 | 32IN GOLD DECORATIV | 0.00 | IN | | | 718 | 6.00 | 4,308.00 | 09/09/2024 |
| 36006 | DS-64619A | DECORATION | | | | | 359 | | 14,352.82 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 69.985 | 36.99 |
| 19 | 481074562302 | | | 1.156 | A1 | | | | | |
| 360 | 810745655 | 18IN GOLD DECORATIV | 0.00 | IN | | | 718 | 4.00 | 2,872.00 | 09/09/2024 |
| 36006 | DS-64619C | DECORATION | | | | | 359 | | 7,890.82 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 10.99 | 63.603 | 15.99 |
| 20 | 481074565501 | | | 0.333 | A1 | | | | | |
| 360 | 810745705 | 24IN GOLD DECORATIV | 0.00 | IN | | | 718 | 5.00 | 3,590.00 | 09/09/2024 |
| 36006 | DS-64619B | DECORATION | | | | | 359 | | 10,762.82 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 66.644 | 19.99 |
| 21 | 481074570505 | | | 0.617 | A1 | | | | | |



| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| | | | | | | | | | | |
| End of | assortment list | for -810745343 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745344 | COMBO S/3 DECORATIV | 0.00 | IN | 1 | | 359 | 30.00 | 12,389.09 | 09/09/2024 |
| 36006 | DS-64618 | DECORATION | | | 1 | | 359 | 4.51 | 33,006.46 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 91.94 | 62.465 | |
| 22 | 481074534408 | | GRM | 1.156 | A1 | | | | | |
| -->> The | above assortment | (810745344) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745622 | 18IN RED DECORATIVE | 0.00 | IN | | | 718 | 4.00 | 2,872.00 | 09/09/2024 |
| 36006 | DS-64618C | DECORATION | | | | | 359 | | 7,890.82 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 10.99 | 63.603 | 15.99 |
| 23 | 481074562203 | | | 0.333 | A1 | | | | | |
| 360 | 810745624 | 32IN RED DECORATIVE | 0.00 | IN | | | 718 | 6.00 | 4,308.00 | 09/09/2024 |
| 36006 | DS-64618A | DECORATION | | | | | 359 | | 14,352.82 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 69.985 | 36.99 |
| 24 | 481074562401 | | | 1.156 | A1 | | | | | |
| 360 | 810745703 | 24IN RED DECORATIVE | 0.00 | IN | | | 718 | 5.00 | 3,590.00 | 09/09/2024 |
| 36006 | DS-64618B | DECORATION | | | | | 359 | | 10,762.82 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 66.644 | 19.99 |
| 25 | 481074570307 | | | 0.617 | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| | | | | | | | | | | |
| End of | assortment list | for -810745344 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745621 | COMBO S/3 DECORATIV | 0.00 | IN | 1 | | 359 | 30.00 | 12,389.09 | 09/09/2024 |
| 36006 | DS-64620 | DECORATION | | | 1 | | 359 | 4.51 | 33,006.46 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 91.94 | 62.465 | |
| 26 | 481074562104 | | GRM | 1.156 | A1 | | | | | |
| -->> The | above assortment | (810745621) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745625 | 18IN SILVER GLITTER | 0.00 | IN | | | 718 | 4.00 | 2,872.00 | 09/09/2024 |
| 36006 | DS-64620C | DECORATION | | | | | 359 | | 7,890.82 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 10.99 | 63.603 | 15.99 |
| 27 | 481074562500 | | | 0.333 | A1 | | | | | |
| 360 | 810745707 | 32IN SILVER GLITTER | 0.00 | IN | | | 718 | 6.00 | 4,308.00 | 09/09/2024 |
| 36006 | DS-64620A | DECORATION | | | | | 359 | | 14,352.82 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 19.99 | 69.985 | 36.99 |
| 28 | 481074570703 | | | 1.156 | A1 | | | | | |
| 360 | 810745708 | 24IN SILVER GLITTER | 0.00 | IN | | | 718 | 5.00 | 3,590.00 | 09/09/2024 |
| 36006 | DS-64620B | DECORATION | | | | | 359 | | 10,762.82 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 66.644 | 19.99 |
| 29 | 481074570802 | | | 0.617 | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| | | | | | | | | | | |
| End of | assortment list | for -810745621 | | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745731 | SET OF 3 HANGING BE | 0.00 | IN | 4 | | 1,508 | 6.00 | 11,189.36 | 09/09/2024 |
| 36006 | DS-59811L | DECORATION | | | 4 | | 377 | 1.42 | 22,604.92 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 14.99 | 50.500 | 18.99 |
| 30 | 481074573100 | | GRM | 1.167 | A1 | | | | | |
| 360 | 810745653 | 3 HANGING BELLS GOL | 0.00 | IN | 4 | | 1,508 | 3.00 | 5,398.64 | 09/09/2024 |
| 36006 | DS-59811S | DECORATION | | | 4 | | 377 | 0.58 | 12,048.92 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 7.99 | 55.194 | 14.12 |
| 31 | 481074565303 | | GRM | 0.403 | A1 | | | | | |
| 360 | 810745628 | COMBO 18IN METAL HA | 0.00 | IN | 1 | | 768 | 24.00 | 27,847.68 | 09/09/2024 |
| 36006 | DS-65322 | DECORATION | | | 1 | | 768 | 12.26 | 57,576.96 | |
| 36006006 | Winter Wonder Lane | | H34 | | | | | 74.97 | 51.634 | |
| 32 | 481074562807 | | GRM | 7.775 | A1 | | | | | |
| -->> The | above assortment | (810745628) | consists of | | | | | | | 09/09/2024 |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 360 | 810745563 | LG GOLD METAL HANGI | 0.00 | IN | | | 768 | 8.00 | 6,144.00 | 09/09/2024 |
| 36006 | DS-60897L-GOLD | DECORATION | | | | | 768 | | 19,192.32 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | 24.99 | 67.987 | 29.99 |
| 33 | 481074556301 | | | | A1 | | | | | |



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | | EAS Tag | PDQ Pkg | | |
| 360 | 810745677 | LG RED METAL HANGIN | 0.00 | IN | | | | 768 | 8.00 | 6,144.00 | 09/09/2024 |
| 36006 | DS-60491L-RED | DECORATION | | | | | | 768 | | 19,192.32 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | | 24.99 | 67.987 | 29.99 |
| 34 | 481074567703 | | | | A1 | | | | | | |
| 360 | 810745747 | LG SILVER METAL HAN | 0.00 | IN | | | | 768 | 8.00 | 6,144.00 | 09/09/2024 |
| 36006 | DS-60896L-SILVER | DECORATION | | | | | | 768 | | 19,192.32 | |
| 36006006 | Winter Wonder Lane | | 034 | | | | | | 24.99 | 67.987 | 29.99 |
| 35 | 481074574701 | | | | A1 | | | | | | |
| *--End of | assortment list | for -810745628 | | | | | | | | | 09/09/2024 |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| 0 | | | | | | | | | | | |