## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date:**<br>**December 19, 2024 at 1:00 p.m. (ET)** |
| | **Objection Deadline:**<br>**December 12, 2024 at 4:00 p.m. (ET)** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING (A) THE DEBTORS' ASSUMPTION OF AND PERFORMANCE UNDER THE PURCHASE AGREEMENT AND (B) THE SALE OF THE WESTMINSTER ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (II) APPROVING THE SETTLEMENT AND (III) GRANTING RELATED RELIEF**

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**" or "**Big Lots**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this *Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of the Westminster Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (II) Approving the Settlement and (III) Granting Related Relief* (this "**Motion**"). In further support of this Motion, the Debtors respectfully state as follows:

---

[1]  The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows:  Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

## RELIEF REQUESTED

1.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Order**"), (a) authorizing and approving the private sale (the "**Sale**") of the land, easements, appurtenances and improvements located at 6351 Westminster Blvd., Westminster, CA 92683, together with all improvements located thereon (the "**Real Property**") as well as certain appurtenant easements, rights, permits, entitlements, privileges and other intangible property relating to the Real Property (the "**Intangibles**," and together with the Real Property, the "**Property**"), as described in and subject to the terms and conditions of that certain Purchase Agreement, the form of which is attached to this Motion as its **Exhibit B** (the "**Purchase Agreement**") between Big Lots Stores – PNS, LLC, a California limited liability company ("**Seller**"), which is one of the Debtors, and 6351 Westminster Blvd, LLC, a Wyoming limited liability company ("**Buyer**"), free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code (as defined herein), (b) settling the prepetition Litigation (as defined herein) concerning a prior agreement to sell the Property by and between the Seller and the Buyer and granting mutual releases related thereto, and (c) granting related relief.

2.      In support of this Motion, the Debtors submit the *Declaration of Chris Macke, Vice President, Legal – Real Estate of Big Lots, Inc. in Support of Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of the Westminster Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (II) Approving the Settlement and (III) Granting Related Relief* (the "**Macke Declaration**"), filed contemporaneously herewith.

## INTRODUCTION

3.      By this Motion, the Debtors seek authorization for the Sale of the Property and approval of the Settlement (as defined below) of the Litigation outside the ordinary course of the Debtors' business.  The Property to be sold by this private sale is non-core and, as described in

#99078720v6

more detail below, not included in the ongoing sale process for substantially all the business assets of the Debtors. This Sale and Settlement will generate approximately $6.1 million (the "**Purchase Price**") for the estates. For the reasons further discussed below, the Debtors believe that the relief sought in the Motion is a reasonable exercise of the Debtors' business judgment, is in the best interests of the estates, and should be granted.

## JURISDICTION, VENUE, AND AUTHORITY

4.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are sections 105(a), 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), rules 2002, 6004, 6006 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 6004-1.

## Background

6.      Big Lots is a one-stop shop home discount retailer. Big Lots' mission is to help customers "Live Big and Save Lots" by offering bargains on everything for their homes, including furniture, décor, pantry essentials, kitchenware, groceries, and pet supplies. Headquartered in Columbus, Ohio, Big Lots operates more than 1,300 stores across 48 states in the United States, as well as an ecommerce store with expanded fulfillment and delivery capabilities.

7.      On September 9, 2024 (the "**Petition Date**"), the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to manage

their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 23, 2024, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**") pursuant to 11 U.S.C. § 1102(a)(1). No trustee or examiner has been appointed in the Chapter 11 Cases.

8.      Additional detail regarding the Debtors, their business, the events leading to the filing of this chapter 11 case, and the facts and circumstances supporting the relief requested herein is set forth in the *Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings* (D.I. 77) (the "**Ramsden Declaration**") and incorporated herein by reference.

## The Initial Sale and Litigation

9.      On February 2, 2023, Seller and Buyer entered into a purchase agreement governing the sale of the Property (the "**Initial Sale**"). A dispute between the Buyer and Seller relating to the condition of the Property at the time of the Initial Sale resulted in Seller filing an action in the United States District Court for the Central District of California, commencing Case No. SACV 24-757-MWF (JDEx) (the "**Litigation**").

10.     On or about August 9, 2024, Judgment was entered in the Litigation in favor of Seller. On September 4, 2024, Buyer filed a Notice of Appeal of the Judgment with the Ninth Circuit Court of Appeals, which commenced Appeal Docket No. 24-5432 (the "**Appeal**").

11.     Seller and Buyer mutually acknowledge and agree that the Initial Sale is of no further force or effect. Seller and Buyer now wish to consummate the Sale, and, in so doing, settle and release all disputes, claims, demands and causes of action against one another relating to the Litigation, including all causes of action brought or that could have been brought arising from the allegations raised in the Litigation, as set forth in greater detail in Section 6 of the Purchase Agreement (the "**Settlement**").

#99078720v6

### The Sale

12.     The Debtors believe that a private sale of the Designated Assets to Buyer as part of the Settlement and pursuant to the terms and conditions of the Purchase Agreement is both appropriate and in the best interest of the Debtors, their estates, and their creditors.

13.     The proposed Sale and Settlement, if approved, will provide the Debtors with an injection of approximately $6.1 million in incremental liquidity.  The Purchase Agreement also constitutes the settlement of claims that are the subject of the pending Litigation to which the Debtors and Buyer (and their respective affiliates) are party and would release all claims arising therefrom.  Accordingly, to avoid incurring unnecessary expenses of a longer marketing process that is not likely to generate a higher and better offer for the Property and would otherwise force the Debtors to continue to pay ongoing rent and other operating costs and leave the Litigation unresolved, the Debtors believe this private sale process is appropriate under the circumstances.

14.     Importantly, the Debtors, in consultation with their advisors, believe that the cost and delay of running an auction process for the Assets would outweigh any marginal increase to the Sale proceeds, particularly in light of the benefits to the Debtors, their estates, and all stakeholders if the Sale, along with the Settlement, is approved.  The Debtors and their advisors believe that an appropriate marketing process for the sale of the Property has already been conducted in connection with the Initial Sale, and proceeding to closing is in the best interests of the Debtors and all parties in interest.  Ultimately, approval of the Sale and Settlement will provide the most efficient path to divesting the Property for fair consideration.

#99078720v6

## Relief Requested

15.     By this Motion, the Debtors seek an order (a) authorizing the Sale of the Property free and clear of all liens, claims, encumbrances, and other interests (b) approving the Settlement of the Litigation (including the mutual releases), and (c) granting related relief.

## Summary of Key Sale Terms

16.     The following is a summary of the material terms of the Purchase Agreement:[2]

| Provision | Summary Description |
|---|---|
| Parties | **Seller**:<br>• Big Lots Stores – PNS, LLC ("**Seller**")<br>**Buyer**:<br>• 6351 Westminster Blvd, LLC ("**Buyer**") |
| Description | Purchase of certain real property located at the address commonly known as 6351 Westminster Blvd., Westminster, CA 92683. |
| Assets | Real property located at the address commonly known as 6351 Westminster Blvd., Westminster, CA 92683, together with all improvements located thereon (the "**Real Property**").  Seller is also the owner or holder of certain appurtenant easements, rights, permits, entitlements, privileges and other intangible property relating to the Real Property (the "**Intangibles**"; the Real Property and Intangibles are all sometimes referred to collectively as the "**Property**"). |
| Proposed Purchase Price | The aggregate consideration to be paid by Buyer for the purchase of the Property shall be cash consideration of $6.1 million at closing (collectively, the "**Purchase Price**"). |
| Private Sale | The Property will be sold via private sale.  There will not be an auction. |
| Sale Free and Clear | Pursuant to section 363(f) of the Bankruptcy Code, the transfer of the Property shall be free and clear of liens and all interests, liabilities, obligations, or claims (including all "claims" within the meaning of section 101(5) of the Bankruptcy Code). |
| Litigation Settlement | Pursuant to the Purchase Agreement, it is a condition of the Sale to settle and release each and every claim, demand, and cause of action, matter or thing specified relating to the Litigation, including all causes of action brought or that could have been brought arising from the allegations raised in the Litigation. |

---

[2]  This summary is provided for the convenience of the Court and parties in interest and describes, generally, the terms contained in the Purchase Agreement.  To the extent there is any conflict between this summary and the Purchase Agreement, the Purchase Agreement shall govern in all respects.

#99078720v6

## Basis for Relief

I.    **The Debtors' Entry Into the Purchase Agreement Should Be Approved as an Exercise of Sound Business Judgment.**

17.    Section 363(b) of the Bankruptcy Code provides that "[t]he [debtor-in-possession], after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  In determining whether to authorize the use, sale, or lease of property of the estates under section 363 of the Bankruptcy Code, "courts require the debtor to show that a sound business purpose justifies such actions."  *The Dai-Ichi Kangyo Bank Ltd. V. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *see, e.g.*, *In re ICL Holding Co., Inc.*, 802 F.3d 547, 551 (3d Cir. 2015); *In re Lionel Corp.*, 722 F.2d 1063, 1070–71 (2d Cir. 1983).  The "sound business purpose" test requires a debtor to establish that:  "(1) a sound business purpose [for the sale] exists; (2) the [total consideration] is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith."  *In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)).  The Debtors submit that the Sale satisfies each of these elements.

18.    Once a debtor articulates a valid business justification, then the burden of rebutting the "strong presumption . . . that the agreement at issue was negotiated in good faith and in the best interests of the estate" falls to parties opposing the transaction.  *In re Filene's Basement*, No. 11-13511 (KJC), 2014 WL 1713416; *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).  Thus, if a debtor satisfies the business judgment rule, the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

19.     Here, the Debtors' entry into the Purchase Agreement is a sound exercise of their business judgment because selling the Property by private sale and settling the Litigation is in the best interests of the Debtors' estates.  After engaging in good-faith, arm's-length negotiations for several months, the Parties agreed on the purchase price for the Property, which totals approximately $6.1 million in cash consideration.  Forcing the Debtors to abandon or restart the sales and marketing process when the Sale is agreed would be value destructive and jeopardize the Debtors' ability to achieve the Settlement.  Further, the terms and conditions of the Purchase Agreement are favorable to the Debtors and comport with the long-term strategic initiatives of the Debtors, allowing the Debtors to divest an unneeded asset in favor of shoring up immediate liquidity needs.  Unwinding the progress made towards consummation of the Sale would require expending significant assets of the Debtors' estates and would be detrimental to the Debtors, their creditors, estates, and other parties-in-interest.  For these reasons, the Debtors' entry into the Purchase Agreement is a sound exercise of the Debtors' business judgment and should be approved.

## II.    The Private Sale of the Property Is Appropriate Pursuant to Bankruptcy Rule 6004(f) and Should Be Approved.

20.     Bankruptcy Rule 6004(f)(1) authorizes a debtor to sell estate property outside of the ordinary course of its business by private sale or public auction.  *See* Fed. R. Bankr. P. 6004(f)(1).  Courts generally afford debtors in possession broad discretion in determining the manner in which estate property is sold.  *See*, *e.g.*, *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998).  Private sales by a debtor outside of the ordinary course of business are appropriate where the debtor demonstrates that the sale is permissible pursuant to section 363 of the Bankruptcy Code.  *See In re Stephens Indus., Inc.*, 789 F.2d 386, 390 (6th Cir. 1986) (holding a debtor may sell property via private sale "when a sound business purpose dictates such action");

#99078720v6

*In re Schipper*, 933 F.2d 513 (7th Cir. 1991) (approving private real estate sale by debtor when purchase price was the same as independent appraisal); *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect to sales of estate property, "[t]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction."); *In re Blue Coal Corp.*, 67 B.R. 798 (Bankr. M.D. Penn. 1986) (permitting the private sale of certain of the debtor's assets); *In re Paper Corp. of Am.*, 138 F.Supp. 29 (S.D.N.Y. 1956) (holding that the trustee's inability to sell the property after "many months . . . was sufficient to warrant the private sale."); *see also In re Blue Coal Corp.*, 168 B.R. 553, 564 (M.D. Penn. 1994) ("[A] larger measure of discretion is available to the court in considering whether a private bid should be approved or confirmed."). Courts in this and other jurisdictions regularly authorize private sales pursuant to section 363 of the Bankruptcy Code. *See, e.g.*, *In re Sunpower Corporation*, No. 24-11649 (CTG) (Bankr. D. Del. Aug. 29, 2024) (authorizing a private sale of certain of the debtors' assets without bidding procedures or an auction); *In re MVK FarmCo LLC*, No. 23-11721 (LSS) (Bankr. D. Del. Mar. 11, 2024) (same); *In re Armstrong Flooring, Inc.*, No. 22-10426 (MFW) (Bankr. D. Del. Mar. 27, 2023) (same); *In re Indep. Pet Partners Holdings, LLC*, No. 23-10153 (LSS) (Bankr. D. Del. Feb. 24, 2023); *In re Boy Scouts of Am.*, No. 20-10343 (LSS) (Bankr. D. Del. Apr. 22, 2022) (same).

21.    The Debtors believe that a public auction for the Property would require the Debtors' estates to incur substantial additional costs and create undue delay in realizing a recovery on the Property. It would also make Settlement of the Litigation difficult if not impossible. The Debtors do not believe an auction would result in incremental value sufficient to justify the incurrence of such costs and delay, particularly in light of the Debtors' liquidity constraints.

#99078720v6

**III.     The Sale of the Property Free and Clear of Liens and Other Interests Is Authorized by Section 363(f) of the Bankruptcy Code.**

22.     Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if:

> (1)     applicable non-bankruptcy law permits sale of such property free and clear of such interests;
>
> (2)     such entity consents;
>
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)     such interest is in bona fide dispute; or
>
> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Because these requirements are listed in the disjunctive, the Debtors only need to satisfy one of the five requirements to permit the Property to be sold "free and clear" of liens and interests.  *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002).  The Debtors submit that each lien or interest in the Property satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such lien or interest will be adequately protected by either being paid in full at the time of closing or by attaching to the net proceeds of the Sale, subject to any claims and defenses the Debtors may possess with respect thereto.

23.     Further, to the extent any prepetition secured lenders have a prepetition security interest in and liens upon the Property, those creditors can be compelled to accept a monetary satisfaction of their interests or are adequately protected by having their claims that constitute interests in the Property, if any, attach to the proceeds of the Sale with the same priority that existed immediately prior to the closing.

#99078720v6

24.     Thus, section 363(f)(5) of the Bankruptcy Code is satisfied and any existing interests in the Property will be adequately protected through attachment to the proceeds of the Sale. *See In re Katy Indus.*, No. 17-11101 (KJC), 2017 WL 5434578, at *5 (Bankr. D. Del. 2017) (finding that holders of liens against property sold free and clear of all liens are "adequately protected by having their Encumbrances, if any, attach to the cash proceeds of the Sale attributable to the Purchased Assets in which such holder alleges an Encumbrance"); *see also MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition."). Accordingly, the Debtors request that the Property be transferred to the applicable party free and clear of liens, claims, and encumbrances, with any such liens, claims, and encumbrances attaching to the net sale proceeds realized from the applicable private sale.

## IV.     Buyer is a Good-Faith Purchaser and is Entitled to the Full Protection of Section 363(m) of the Bankruptcy Code.

25.     Section 363(m) of the Bankruptcy Code provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith[.]" 11 U.S.C. § 363(m). Although good faith is not specifically defined in the Bankruptcy Code, one court has stated that the "[g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings . . . A purchaser's good faith is lost by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997) (internal quotations omitted). Within the Third Circuit, a good faith purchaser is one who purchases assets for value and in good faith. "The requirement that a

purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies of Pa.,* 788 F.2d 143, 147 (3d Cir. 1986).

26.     The Purchase Agreement and the Sale contemplated therein are the product of good-faith, arm's-length negotiations. There is no indication of fraud or any improper insider dealing. Further, the consideration to be received by the Debtors for the Property is fair and reasonable, and the Debtors are not aware of any other actionable competing offers. The Debtors submit that Buyer is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and that the Purchase Agreement is a good faith agreement on arms'-length terms entitled to the protections of section 363(m) of the Bankruptcy Code. The consideration to be received by the Debtors pursuant to the Purchase Agreement is substantial, fair, and reasonable under the circumstances. Furthermore, Buyer and the Debtors are wholly unrelated, sharing no officers, directors, shareholders, incorporators, employees, or economic interests—other than as embodied in these transactions—in common, and Buyer is not an "insider" as that term is defined in the Bankruptcy Code. 11 U.S.C. § 101(31). Accordingly, the Debtors request that the Court enter an order entitling each of the parties to the Sale to the full protections of section 363(m) of the Bankruptcy Code.

## V.    Relief Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate.

27.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise." Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the

#99078720v6

expiration of fourteen days after the entry of the order, unless the court orders otherwise." The Debtors request that the Order be effective immediately upon its entry by providing that the fourteen day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

28.    The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *In re Filene's Basement,* 2014 WL 1713416*,* at *14; *see* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d). Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, the leading treatise on bankruptcy suggests that the fourteen-day stay should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to procedure." 10 *Collier on Bankruptcy* ¶ 6004.11, ¶ 6004.04 (16th rev. ed. 2014). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.*; *see In re Filene's Basement,* 2014 WL 1713416, at *14 (reducing the stay to seven days from the date of entry of the sale order).

29.    To maximize the value received for the Property and reduce the accrual of administrative expenses relating to such assets, the Debtors seek to close the Sale as soon as possible after the Sale Hearing. Accordingly, the Debtors hereby request that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## VI.    The Settlement Should be Approved Under Bankruptcy Rule 9019 Because of the Additional Benefits to the Debtors that are Integral to the Sale.

30.    Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The overarching consideration in ruling on a settlement is whether the settlement is "fair and

equitable" and "in the best interest of the estate." *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). "Settlement agreements are generally favored and, in fact encouraged, in bankruptcy cases, as they provide for often needed and efficient resolutions." *In re TSIC, Inc.*, 393 B.R. 71, 78 (Bankr. D. Del. 2008); *In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing *Meyers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996)).

31.    The decision whether to approve or reject a settlement under Bankruptcy Rule 9019 lies within the sound discretion of the court. *In re Louise's, Inc*., 211 B.R. 798, 801 (D. Del. 1997); *In re Neshaminy Office Bldg. Assoc.*, 62 B.R. 798, 803 (E.D. Pa. 1986). To make this determination, a court must assess and balance the value of the claims that are being compromised against the value to the estate of the acceptance of the compromise proposal. *See Martin*, 91 F.3d at 393.

32.    Approval is appropriate where the compromise is fair, reasonable, and in the interest of the estate. *Id.* Courts should not substitute their judgment for that of the debtor, but instead canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re World Health Alts., Inc*., 344 B.R. at 296 ("The court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities") (internal citations and quotations omitted); *see also In re Coram Healthcare Corp*., 315 B.R. 321, 330 (Bankr. D. Del. 2004); *In re Neshaminy Office Bldg. Assoc*., 62 B.R. at 803.

33.    Bankruptcy Courts in the Third Circuit apply the four *Martin* factors when determining whether to approve or reject settlement agreements: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and

14

the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin*, 91 F.3d at 393; *see also Will v. Nw. Univ.*, 434 F.3d 639, 644 (3d Cir. 2006) (applying the *Martin* factors when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry, Inc.*, 390 U.S. at 424; *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 250 (D. Del. 1998) (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997) (referring to *Martin* factors as test under "fair and equitable standard").

34.    Application of these criteria does not require a mini-trial or an evidentiary hearing to determine the probable outcome of claims waived in settlement.  *See Official Comm. of Unsecured Creditors v. Cajun Elec. Power Co-op., Inc.*, 119 F.3d 349, 356 (5th Cir. 1997); *see also Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994).  Instead, a court must gather relevant facts and law to make an informed and objective decision with respect to approving the settlement by balancing the *Martin* factors.  *Id.*  Courts generally give deference to a debtors' business judgement in evaluating settlements.  *See In re Key3Media Grp., Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005).

35.    The Purchase Agreement with Buyer has both sale and settlement features, with the settlement terms providing additional consideration to the Debtors for the assets to be transferred. The Debtors respectfully submit that the *Martin* factors weigh strongly in favor of approving the Settlement because the Settlement represents a fair and reasonable compromise that is in the best interests of the Debtors' estates and creditors. By settling the Litigation, the Debtors will avoid incurring additional legal fees, the risk of reversal on appeal, and the possible award of damages to Buyer.  Accordingly, the Debtors have determined in their business judgment that the Settlement is fair, reasonable, and in the best interest of their estates.

**<u>Notice</u>**

36.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) Choate, Hall & Stewart LLP, as counsel to the ABL Agent; (d) Otterbourg P.C., as counsel to the Term Agent; (e) all parties who have expressed a written interest in some or all of the Property, if any; (f) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Property; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "**Notice Parties**").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

#99078720v6

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: November 27, 2024
         Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Casey B. Sawyer*
Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Tamara K. Mann (No. 5643)
Sophie Rogers Churchill (No. 6905)
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
tmann@morrisnichols.com
srchurchill@morrisnichols.com
csawyer@morrisnichols.com

-and-

DAVIS POLK & WARDWELL LLP
Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Jonah A. Peppiatt (admitted *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
stephen.piraino@davispolk.com
jonah.peppiatt@davispolk.com
ethan.stern@davispolk.com

*Counsel to the Debtors and Debtors in Possession*

#99078720v6