## Exhibit 1

**Agreed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 13 & 460** |

**ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE
AUTHORIZING THE DEBTORS-IN-POSSESSION TO TERMINATE OR ASSUME,
ASSIGN AND SELL CERTAIN NON-RESIDENTIAL REAL PROPERTY LEASES**

Upon the motion (the "**Motion**")[2] of Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for an order pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006 and 9014, and Local Rule 6004-1, (i) establishing procedures (the "**Lease Sale Procedures**") to sell or transfer certain unexpired leases of non-residential real property (each, as the same may have been amended from time to time a "**Lease**"); (ii) scheduling an auction to sell the leases (the "**Lease Sales**") detailed in the Lease Sale Procedures (the "**Lease Auction**") and a hearing to approve one or more Sales (the "**Lease Sale Hearing**"); and (iii) granting related relief [D.I. 13]; Court having entered an interim order granting the relief requested in the Motion on October 30, 2024 [D.I. 650] (the "**Third Interim Order**"); and in accordance

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

with the Third Interim Order, the Debtors having conducted a Lease Auction on November 7, 2024; and the Debtors having filed a notice of Successful Bidder on November 8, 2024 [D.I. 1053] (the "**Post-Auction Notice**"); and the Debtors having filed a *Notice of Abandonment, Utilization and Disposal of Personal Property on Certain of the Debtors' Leased Premises Sold Pursuant to the September Wave Lease Sales* on October 30, 2024 [D.I. 663] (the "**Notice of Abandonment**"); and the Debtors having filed a *Notice of Potential Utilization and Disposal of Personal Property on Certain of the Debtors' Leased Premises Sold Pursuant to the November Wave Lease Sales* on October 30, 2024 [D.I. 664] (the "**Notice of Disposal**"); and the Debtors having determined, in the exercise of their business judgement and in consultation with their advisors and the Consultation Parties, that the offers listed on **Exhibit A** attached hereto are the highest and best offers for the respective Leases and the other Assigned Assets (as defined in the applicable Assignment Agreement); and the Court having determined that the legal and factual bases set forth in the Motion and the *Declaration of Todd Eyler of A&G Real Estate Partners, in Support of Order (I) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of all Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (II) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief in Connection with November Lease Sale Wave* [D.I. 1212] establish just cause for the relief granted herein; and the Debtors having served notice of Motion, the Lease Sale Hearing, the Notice of Abandonment, Notice of Disposal and related filings; and after due deliberation and good and sufficient cause appearing therefor;

  **NOW, THEREFORE**, the Court hereby finds as follows:

A.      After good and sufficient notice of the Motion having been provided and the occurrence of the Lease Auction on November 7, 2024, the purchase prices listed on **Exhibit A** are the highest and best offers received by the Debtors for the Leases listed therein.

B.      A reasonable opportunity to object or be heard regarding the Post-Auction Notice has been afforded to all interested persons and entities, including the landlords for the premises referenced on **Exhibit A** (the "**Landlords**").

C.      The Debtors have determined in the exercise of their reasonable business judgment that the Leases and the other Assigned Assets should be (i) sold and assigned to the parties listed on **Exhibit A** for which the type of agreement sought to be approved is an Assignment Agreement (the "**Proposed Assignees**," or "**Buyers**," and the relevant Leases, the "**Assigned Leases**").

D.      The assumption, assignment and sale of the Leases and the other Assigned Assets to the Buyers pursuant to Sections 363 and 365 of the Bankruptcy Code is in the best interests of the Debtors, their estates and their creditors.

E.      The consideration to be paid by the Buyers pursuant to the Assumption and Assignment Agreements dated November 30, 2024 (the "**Agreements**"), copies of which are attached as **Exhibit B** hereto, constitutes adequate and fair value for the Leases and the other Assigned Assets.

F.      Pursuant to Sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) of the Bankruptcy Code, to the extent required under the Lease Sale Procedures, the Buyers have provided adequate assurance of future performance under the Leases, as applicable.

G.      The assumption and assignment of the Assigned Leases to the Proposed Assignees is in compliance with Section 365(b)(3) of the Bankruptcy Code.

H.      The Agreements were negotiated and entered into in good faith, from arm's length bargaining positions, by the Debtors and the Buyers. Each Buyer is hereby found to be a good faith purchaser of the Leases and the other Assigned Assets and is found to be entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code.

I.      Through, *inter alia*, the Notice of Abandonment and the Notice of Disposal, the Debtors have provided sufficient notice to certain known and potentially interested third parties concerning the abandonment and disposal of personal property that will be left at the leased premises upon the Closing Dates (as defined in the Agreements), as applicable.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT**

1.      The Lease Sale Procedures Motion, as it pertains to the assignment of the Leases and the other Assigned Assets to each Buyer, is hereby approved.

2.      Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are each hereby authorized to assume, sell and assign to each Proposed Assignee the Assigned Leases and the other Assigned Assets, pursuant to the terms and provisions of this Order and the Agreements attached hereto as **Exhibit B**, all of the terms of which are hereby approved.

3.      In accordance with Section 363 of the Bankruptcy Code, effective as of the applicable Closing Dates, the Leases and the other Assigned Assets shall be transferred to the applicable Buyer free and clear of any leasehold mortgages, subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, mortgages, trust deeds, liens, pledges, hypothecations, charges, debentures, interests, mechanics liens, bills, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances of any type whatsoever.

4.      Upon the entry of this Order and the occurrence of the Closing Date (as defined in the Assignment Agreements), each Proposed Assignee shall be deemed to have assumed and succeeded to the entirety of the Debtors' rights and obligations in the applicable Assigned Leases which come due after the Closing Date and shall have the rights of the tenant thereunder.

5.      Upon entry of this Order and the occurrence of the Closing Date, each Buyer is a good faith purchaser and shall be entitled to the protections of Bankruptcy Code Section 363(m).

6.      Pursuant to Section 365(b)(l) of the Bankruptcy Code, to the extent a Cure Cost is owed to a Counterparty, the applicable Cure Cost shall be promptly paid by the Debtors. Any objection of any Counterparty to the assumption or assignment or transfer of any Assigned Leases or any other Assigned Assets, any Cure Cost, or seeking further adequate assurance of future performance other than that provided in the relevant Agreements, to the extent not otherwise resolved by agreement, contemplated to be heard after the Lease Sale Hearing, or by separate order of this Court, is hereby overruled. There shall be no accelerations, assignment fees, increases, or any other fees charged to any Buyer or the Debtors as a result of the assumption and assignment of the Assigned Leases or any other Assigned Assets. Upon remittance of the Cure Costs by the Debtors to the Landlords pursuant to the terms of this Order, the parties to the Assigned Leases shall be barred from asserting any additional cure amounts or other claims with respect to the Assigned Leases. For the avoidance of doubt, the parties (including without limitation, the Landlords) to the Assigned Leases shall be forever (i) barred from objecting to the applicable Cure Cost and from asserting any additional cure or other amounts with respect to the Assigned Leases or any other Assigned Assets, and the Debtors and the applicable Proposed Assignee shall be entitled to rely solely upon the Cure Cost set forth above and (ii) barred, estopped, and permanently enjoined from asserting or claiming against each other, the applicable Proposed Assignee or their

respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the Leases or any other Assigned Assets, or that there is any objection or defense to the assumption or assumption and assignment of the Leases or any other Assigned Assets. On and after the Closing Date, each Proposed Assignee shall be responsible for paying (and shall be entitled to receive any credits for) all amounts outstanding under the Assigned Leases due on or after the Closing Date.

7.      The proceeds of the Lease Sales shall be payable in accordance with the DIP Orders and the Approved Budget (as defined in the DIP Orders).

8.      All personal property and furniture, fixtures and equipment ("**FF&E**") remaining in the stores subject to the Leases on or after the Closing Date, as applicable, shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as of the Closing Date.  Each Buyer may, in its sole discretion and without further order of this Court, utilize and/or dispose of such property without notice or liability to the Debtors or any consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition; provided, however, that the DIP Lenders and the Debtors' pre-petition secured lenders consent to the release of their interests (if any) in, and liens on (if any), the FF&E, and to the Buyers' disposition of such FF&E, and any such interests and liens are hereby released; provided, further, that the Debtors are not aware of any other parties with interests in the FF&E.

9.      Any party which did not object to the Lease Auction, Cure Cost & Lease Sale Hearing Notice within the time set forth in the notice is deemed to consent to the Debtors' assumption and assignment of the Assigned Leases or Terminated Leases, respectively, and the satisfaction of the requirements of Section 365 of the Bankruptcy Code. Absent further order of the Court, in accordance with the Notice of Abandonment, any party served with the Notice of

Abandonment that did not timely object to abandonment in accordance with objection procedures set forth in such notice is deemed to have consented to the abandonment of the Debtors' personal property remaining on the Lease Asset premises as of the effective date of the Leases Sale. In accordance with the Notice of Disposal, any party served with the Notice of Disposal that did not timely object to disposal in accordance with objection procedures set forth in such notice is deemed to have consented to (i) the transfer to any Buyer of ownership of personal property remaining on the Lease Asset premises as of the effective date of the Lease Sales and (ii) allow the Debtors or any buyer to utilize and/or dispose of any personal property remaining on the premises of the Lease Assets without further Court order and without liability or further notice to any third party. Subject to paragraph 19 herein, the sale and assignment of the Assigned Leases, payment of the Cure Costs and the transfer of the furniture, fixtures and equipment referenced immediately above, as applicable, shall relieve the Debtors from any further liability pursuant to Section 365(k) of the Bankruptcy Code.

10.     Solely with respect to the transactions contemplated by this Order and the Agreements, and except as otherwise agreed between any Landlord and each Buyer, and except to the extent a Lease is terminated pursuant to this Order (in which case such provisions are no longer of any force and effect in any event), nothing in this Order shall be deemed to annul or vary any provision of the Leases *other than* the following provisions (the "**Unenforceable Provisions**"):

        a.      a provision prohibiting each Buyer's Intended Use of the premises, as defined in each Agreement;

        b.      a provision unreasonably prohibiting necessary alterations to the premises or signage required to convert the premises to each Buyer's Intended Use, as defined in each Agreement; provided such alterations are deemed necessary by the Buyer to conform such store

to the Buyer's typical retail store consistent with the Buyer's Intended Use of the premises, as defined in each Agreement;

      c.    a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Leases or an increase in rent or other penalty by reason of the Debtors' cessation of retail operations before the assignment, and/or any delay by any Buyer in reestablishing retail operations after the assignment, to the extent any such provision does not permit any Buyer to "go dark" until the later of: (i) one hundred twenty (120) days after the Closing Date (as defined in the Agreement) of the assignment of the Leases, or such later time, when the particular facts and circumstances of a given store warrant additional time, which circumstances shall include, without limitation, the age and condition of the shopping center, the ability to obtain any permits and documents necessary to complete construction, the location of the premises in the shopping center, the shape of the premises to be assigned, the demographics of the shopping center's location and the overall quality of the shopping center and its existing tenants or (ii) the Going Dark Period (as defined in each Agreement) listed in each applicable Agreement;

      d.    a provision conditioning assignment on Landlord consent, or requiring payment to the Landlord as the price of assignment, or granting Landlord the right to recapture the leased premises following the assignment;

      e.    a provision effecting forfeiture or a modification of any of a Buyer's rights or obligations presently in effect under the Leases upon an assignment by the Debtors of the Leases;

      f.    a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

8

g.      a provision restricting a Buyer's ability to place reasonable signage on the premises; provided such signage is deemed necessary by the Buyer to conform such store to the Buyer's typical retail store consistent with the Buyer's Intended Use of the premises, as defined in each Agreement;

h.      a provision requiring the use of a certain tradename;

i.      a provision regarding minimum sales revenues required to be satisfied at the premises covered by the Leases; and

j.      any radius provisions set forth in the Leases to the extent applicable to any existing stores of each Buyer located near the Debtors' premises (but such radius provisions shall at all times apply to any new stores which might be opened by each Buyer in the area of Debtors' premises after Closing).

11.     Solely with respect to the transactions contemplated by this Order and the Agreements, none of the Unenforceable Provisions shall apply to any Proposed Assignee in any respect and, without limiting the generality of the foregoing, no violation by the Debtors or Proposed Assignees of the Unenforceable Provisions shall constitute an event of default under any of the Leases.

12.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and Buyers are authorized to close the Lease Sales set forth in the Agreements immediately upon entry of this Order. Time is of the essence in closing the Lease Sale transactions referenced herein, and the Debtors and Buyers intend to close each of the Lease Sale transactions as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

13.     Upon entry of this Order, this Order and the findings hereunder shall be binding upon all parties to the Leases and the Agreements.

14.     Upon the entry of this Order and the occurrence of the Closing Date, the Landlords of the Assigned Leases shall accept and honor the assignment of the Assigned Leases and the other Assigned Assets to the Proposed Assignees.

15.     The Landlords for the Assigned Leases shall cooperate and expeditiously execute and deliver, within ten (10) days of any reasonable requests of any Buyer and at no cost to such Landlords, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the properties as contemplated under a relevant Agreement.

16.     Notwithstanding anything to the contrary in the Second Interim Order, this Order, any of the Agreements, any side letters, or the Lease Sale Procedures, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of the applicable Buyer and applicable insurer and/or third-party administrator.

17.     Notwithstanding anything to the contrary in the Second Interim Order, this Order, the Lease Sale Procedures, the Landlords do not release, and are not releasing, the Debtors from any claims for indemnification under the terminated Leases or the Assigned Leases, as applicable, arising from any third party claims that may be asserted against the Landlords for occurrences taking place prior to the Closing Dates, as applicable. Nothing in this Order or the applicable Agreements shall impair or prejudice an applicable landlord's rights with respect to the Debtors'

available insurance coverage with respect to third-party claims asserted in connection with the Debtors' use and occupancy of the applicable premises subject to the Assigned Leases or Terminated Leases with regard to events that occurred prior to the Closing Date.

18.     This Court shall retain jurisdiction (i) to construe and determine any disputes under this Order, (ii) to enforce and implement the terms and provisions of each Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, and (iii) to resolve any disputes arising under or related to the Lease Sales (but all Landlord/tenant disputes arising subsequent to the Closing Date, which do not involve the Lease Sales, this Order or the Debtors shall not be subject to the jurisdiction of this Court).

19.     The Debtors and the Buyers are hereby authorized to execute and deliver any and all documents, and to do all things reasonably necessary, to effectuate the purposes of this Order, to transfer the Debtors' interests in and to the Leases and the other Assigned Assets, in accordance with the terms of the Agreements, and to carry out the terms and conditions of such Agreements.

20.     The Buyers are not successors in interest to the Debtors (other than with respect to the Debtors' rights and obligations under the Assigned Leases first accruing after each Proposed Assignee takes assignment thereunder as provided for under the relevant Agreements), or their bankruptcy estates as a result of each Buyer taking title or possession of the Leases, the other Assigned Assets and the subject premises, and the Buyers are not assuming any liabilities or obligations of the Debtors or their bankruptcy estates, except as may be specifically provided for in the Agreements.

21.     This Order shall be effective and enforceable immediately after its entry as provided by Bankruptcy Rule 7062.

22.     Any remaining objections to the assignment of the Leases or any other Assigned Assets that have not been withdrawn, waived, adjourned, or settled, and all reservations of rights included in such objections, are overruled in all respects and denied.

23.     Any provision in the Leases regarding percentage rent to the extent of Debtors' sales prior to the Closing Date shall not be imputed against the Proposed Assignees provided that each Proposed Assignee shall be liable for Percentage Rent for the prorated portion of calendar year 2024 remaining after the Closing Date for a partial calendar year as if the Term began on the Closing Date (and each Proposed Assignee shall not be liable to pay any Percentage Rent based upon sales that occurred prior to the Closing Date) and no Percentage Rent is due and owing by the Buyers for the period prior to the Closing Date.

24.     To the extent there is any inconsistency between the terms of this Order and the terms of the Agreements (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

25.     To the extent that any Buyer and Landlord enter into a side letter with respect to any Lease, such side letter shall govern with respect to rights and obligations of the Buyer and Landlord.  For the avoidance of doubt, no side letter shall modify the rights and obligations of any third party without such third party's consent.

26.     The failure to specifically include any particular provision of the Agreements or other related documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreements and all other related documents be authorized and approved in their entirety pursuant to this Order.

27.     The Agreements and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms

thereof, without further order of this Court, provided that any such modification, amendment, or supplement is consistent with this Order and does not have any adverse effect on the Debtors' estates; *provided, further*, that the Debtors shall provide any such modification, amendment, or supplement to the Secured Parties, the applicable Landlord under the Lease and any official committee appointed in these Chapter 11 Cases no less than one (1) day prior to execution of such modification, amendment, or supplement; *provided further,* that after Closing, the final versions of the Agreement any related agreements, documents or other instruments (as modified, amended or supplemented) shall be filed with the Court.

**EXHIBIT A**

| LEASE ASSET | LEASE COUNTERPARTY | SUCCESSFUL BIDDER | TYPE OF AGREEMENT | PRICE | CURE |
|---|---|---|---|---|---|
| 2700 US Highway 22, Union, NJ, 07083 | DT Route 22 Retail LLC | Dick's Sporting Goods, Inc. | Assumption & Assignment | $600,000 | $124,486.85 |

**EXHIBIT B**

**Assumption & Assignment Agreements**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSUMPTION AND ASSIGNMENT AGREEMENT (the "**Agreement**"), dated as of November 30, 2024, is by and between Big Lots Stores – PNS, LLC, a California limited liability company ("**Assignor**") and Dick's Sporting Goods, Inc., a Delaware corporation ("**Assignee**" and together with Assignor, collectively, the "**Parties**" and each a "**Party**"). For the avoidance of doubt, all provisions of the applicable Lease, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), jointly administered under case *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "**Chapter 11 Cases**"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on <u>Schedule A</u> attached hereto (the "**Leases**") with respect to the premises set forth on <u>Schedule A</u> (the "**Premises**"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "**Lease Sale Procedures**") subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.    <u>Assignment and Assumption</u>.

(a)    Effective as of the Closing Date (as defined below) and upon payment of the Purchase Price as set forth below, Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Assets free and clear (subject to this Agreement's express terms regarding the assumption/cure of certain liabilities) of leasehold mortgages (if any), subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, mortgages, trust deeds, liens, pledges, hypothecations, charges, debentures, mechanics liens, bills, interests, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances of any type whatsoever (collectively, the "**Interests**"). The "**Assigned Assets**" shall consist of (i) the Lease, (ii) all reports (including, without limitation, engineering, environmental, HVAC and roof reports), surveys (including, without limitation, boundary and topographical surveys), plans, blueprints, as-builts, CAD files and other schematics, franchises, grants, authorizations, licenses, easements, variances, exceptions, consents, certificates (including, without limitation, certificates of occupancy), site plan approvals and all other planning approvals, zoning variances, building permits, fire, health and safety permits, conditional or special use permits (including, without limitation, for firearms or other special occupancies or uses), general assembly or general use permits or other similar documentation, environmental permits, other permits of any kind, other

approvals, clearances and orders of a governmental authority, together with all architect, engineer, contractor, vendor and supplier warranties and guarantees with respect to any of the foregoing and/or the related Improvements (as defined below), in each case related to the Lease and (iii) all building systems (including, without limitation, HVAC, electrical, plumbing, mechanical, vertical transportation and other similar systems), leasehold alterations, improvements, structures, buildings, fixtures and equipment which are affixed to and constitute a part of or are used in the operation of the Premises, together with all tenant improvements (other than movable partitions, trade fixtures, furniture, office machines, equipment, merchandise, inventory, racking, shelving and similar items) located thereon, in each case located on or comprising the Premises (the items described in this clause (iii), the "**Improvements**").

(b)    No later than the Closing Date, Assignor shall surrender the Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written confirmation that Assignee is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Assignee.

(c)    Effective as of the Closing Date and upon consummation of the sale, transfer, conveyance, assignment and set over set forth in Section 1(a) above, Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Assets which come due after the Closing Date.  Other than the Cure Costs as set forth below, Assignee shall have no liabilities (and both Assignor and the landlord in respect of the Lease shall be barred from asserting any cure costs or other claims) with respect to the Assigned Assets that came due on or before the Closing Date.

2.    <u>Payment of Purchase Price</u>.  (a) Assignee shall, on the Closing Date, deliver the purchase price for the Assigned Assets in the amount of $600,000.00 (net of the amount of $20,000.00 (which was previously deposited by Assignee into an escrow account maintained by the Assignors (the "<u>Deposit</u>")) (the "**Purchase Price**")) in immediately available funds wired to the account specified by Assignor and (b) the Deposit shall be released from escrow to Assignors.  The Purchase Price is inclusive of cure amounts owed as a result of the assumption of the Lease in connection with this Agreement in the amount of $124,486.85 (the "**Cure Costs**"), which amount shall be promptly turned over by Assignor to the landlord in respect of the Lease.

3.    <u>No Further Liability of Assignor</u>.  Except as provided for herein, from and after the date hereof, Assignor shall have no further obligations and duties with respect to the Assigned Assets.

4.    <u>Effectiveness</u>.  Assignee's obligation to consummate the transactions contemplated by this Agreement is subject to the satisfaction (or waiver by Assignee) of each of the following conditions:  (a) this Agreement shall have been executed by Assignor and Assignee, (b) the representations and warranties of Assignor set forth herein shall be true and correct in all material respects and (c) the Court shall have entered an order acceptable to Assignee in its sole discretion authorizing Assignors to enter into this Agreement and perform the transactions contemplated hereby (the "**Approval Order**"), which Approval Order shall not have been modified, vacated or stayed.  The business day immediately succeeding the first day on which such conditions are satisfied or waived (so long as such conditions continue to be satisfied or waived on such

succeeding business day) shall be referred to herein as the "**Closing Date**"; provided that the Closing Date shall occur no earlier than November 30, 2024.

5.      Further Assurances.  At any time and from time to time after the Closing Date, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Assets.

6.      Representations.  Assignor represents and warrants to Assignee that (a) it has delivered to Assignee each Lease (including, without limitation, all amendments, supplements and other modifications thereto and all notices, certificates, elections, instructions, directions or other communication relating thereto), (b) the Lease is legal, valid, binding and enforceable against Assignor and, to Assignor's knowledge, each other party thereto, is in full force and effect and has not been terminated, amended, supplemented or otherwise modified except pursuant to such documents as Assignor has delivered to Assignee, (c) Assignor has good title to the Lease and a valid leasehold interest in the Premises, free and clear of any Interests, except for such as shall be released upon consummation of the assignment contemplated hereby pursuant to the terms of the Approval Order and (d) subject to entry of the Approval Order, (i) Assignor has the requisite corporate power and authority necessary to enter into and perform its obligations under this Agreement and to consummate the transactions contemplated hereby, (ii) the execution, delivery and performance of this Agreement and Assignor's obligations hereunder have been duly authorized by all necessary corporate action and (iii) this Agreement has been duly executed and delivered by Assignor and constitutes, when executed and delivered by Assignor, a legal, valid and binding obligation of Assignor enforceable against Assignor in accordance with its terms.

7.      "As Is Where Is" Transaction.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Assets except as otherwise expressly provided herein.  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Assets except as otherwise expressly provided herein.  Assignee further acknowledges that the Assignee has conducted (or has had an opportunity to conduct) an independent inspection and investigation of the physical condition of the Assigned Assets and all such other matters relating to or affecting the Assigned Asset(s as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Assets, Assignee is doing so based upon such independent inspections and investigations.  Accordingly, except as otherwise expressly set forth herein, Assignee will accept the Assigned Assets "AS IS" and "WHERE IS."

8.      Abandonment.  Subject to Court approval, upon the Closing Date, any personal property remaining at the premises is deemed abandoned and Assignee is free to dispose of or utilize any personal property without further notice or liability to the Debtor or any consenting third parties.

9.      Compliance With Law.  Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

10.     <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

11.     <u>Jurisdiction</u>.  The Parties consent to the jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

12.     <u>No Reliance</u>.  Except as specifically set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

13.     <u>Construction</u>.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

14.     <u>Execution in Counterparts</u>.  This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

15.     <u>Miscellaneous</u>.  Assignor acknowledges and agrees that Assignee shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Assignor with respect to this Agreement.

16.     <u>Intended Use & Going Dark</u>.  Assignee intends to use the Premises as an expanded DICK'S store, a combined DICK'S/Golf Galaxy store, or a DICK's House of Sport store (the "**Intended Use**").  In order to facilitate such usage, Assignee may need to delay reestablishing retail operations for a period of time as described in that certain letter agreement, dated as of November 26, 2024, between Assignee and DT Route 22 Retail LLC (the "**Going Dark Period**").

*[Signatures appear on following page]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**BIG LOTS STORES – PNS, LLC**

By: _____
Name: _____
Title: _____


**ASSIGNEE:**
**DICK'S SPORTING GOODS, INC.**

By: _____
Name: _____
Title: _____

## Schedule A to the Assumption and Assignment Agreement

### Description of Lease Asset(s)

Lease Agreement, dated as of December 16, 2019, by and between DT Route 22 Retail LLC, a Delaware limited liability company, as landlord, and PNS Stores Inc., a California corporation (n/k/a Big Lots Stores – PNS, LLC, a California limited liability company), as tenant, relating to store location no. 4720, located at 2700 US Highway 22, Union, NJ 07083.