IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: December 12, 2024 at 5:00 p.m. (ET)**<br><br>**Hearing Date: December 19, 2024 at 1:00 p.m. (ET)**<br><br>**Related Docs: 13, 1198, 1236 & 1312** |

**LIMITED OBJECTION AND RESERVATION OF
RIGHTS OF WPG LEGACY, LLC TO THE ASSUMPTION AND
ASSIGNMENT OF LEASE PURSUANT TO THE LEASE SALE PROCEDURES**

WPG Legacy, LLC, as the managing agent for Palms Crossing Town Center, LLC (collectively, "WPG"), by its undersigned counsel, hereby files this limited objection and reservation of rights (this "Limited Objection") to the above-captioned debtors' (the "Debtors") *Fourth Notice of (A) Bid Deadline, (B) Sale Hearing, and (C) Potential Assumption and Assignment of Certain Unexpired Leases* [Docket No. 1236] (the "Assumption Notice") and *Fourth Notice of Successful Bidders with Respect to the Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* [Docket No. 1312] ("Successful Bidder Notice" and with the Assumption Notice, collectively the "Notice"). In support of this Limited Objection, WPG respectfully states:

**BACKGROUND**

1. On September 9, 2024 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court").

2. Upon information and belief, the Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. The Debtors and WPG are parties to that certain unexpired lease of nonresidential real property (the "WPG Lease")[1] involving the Debtors' retail store (Store #4736) (the "Leased Premises) located at Palms Crossing in McAllen, Texas (the "Center").

4. The Leased Premises is located in a "shopping center" as that term is used in section 365(b)(3) of the Bankruptcy Code. *See, e.g.*, *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1086-87 (3rd Cir. 1990).

5. On the Petition Date, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Orders (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. 13] (the "Lease Procedures Motion")[2] pursuant to which the Debtors sought entry of an order establishing procedures for the sale of the Lease Assets.

6. On November 20, 2024, this Court entered the *Fourth Interim Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. 1198] (the "Lease Procedures Order") which, among other things, approved certain procedures (the "Lease Procedures") for the Lease Auction to be held in December 2024.

7. As contemplated by the Lease Procedures Order, on November 25, 2024, the Debtors filed the Assumption Notice which identifies certain Lease Assets, including the WPG

---

[1] A copy of the WPG Lease is available upon request.
[2] Any capitalized terms not defined herein shall have the meaning ascribed in the Lease Procedures Motion, the Notice, or the Lease Procedures Order (defined herein), as applicable.

Lease, that may be assumed and assigned pursuant to the Lease Procedures. The Assumption Notice lists the cure amount for the WPG Lease as $26,428 (the "Proposed Cure Amount").

8. On December 5, 2024, the Debtors filed the Successful Bidder Notice whereby the Debtors propose to assume and assign the WPG Lease (the "Proposed Assignment") to Burlington Coat Factory of Texas, L.P. (the "Proposed Assignee" or "Burlington").

9. WPG is in discussions with the Debtors, through counsel, regarding WPG's concerns related to the Proposed Assignment, including, but not limited to, the form of the proposed order authorizing the assumption and assignment of the WPG Lease to Burlington (the "Proposed Lease Sale Order") and the terms of the assumption and assignment agreement. WPG understands that Burlington is seeking to "go-dark" in the Leased Premises up to 180 days after the lease assignment date (the "Go-Dark Provision") contrary to the terms of the WPG Lease. Moreover, as of the filing of this Limited Objection, the Proposed Lease Sale Order has not been filed with this Court or provided to WPG to review. WPG is hopeful that a consensual resolution can be reached in advance of the hearing on December 19, 2024 and files this Limited Objection out of an abundance of caution to preserve its rights.

## LIMITED OBJECTION

10. Although WPG supports generally the assignment of the WPG Lease to Burlington, WPG objects to any terms of the Proposed Assignment that seek to impair, limit and/or modify WPG's rights under the WPG Lease, the Bankruptcy Code and applicable law. Moreover, any assumption and assignment of the WPG Lease must be conditioned on the Debtors' compliance with the requirements of section 365 of the Bankruptcy Code and the WPG Lease, including, but not limited to, paying all amounts due and owing under each of the WPG Lease through the effective date of the Proposed Assignment and complying with all terms of the WPG Lease.

### A. The Debtors' Proposed Cure Amount is Incorrect

11. The Proposed Cure Amount is not accurate and will not cure all amounts due and owing to WPG under the WPG Lease. As of the date of this Limited Objection, the aggregate cure amount owing under the WPG Lease is not less $243,226.71[3], plus any indemnity and contribution obligations and additional accrued but unbilled amounts (the "WPG Cure Amount"). Attached hereto and incorporated herein as **Exhibit A** is an itemization of the amounts due and owing under the WPG Lease.

12. The WPG Cure Amount represents the amounts currently due and owing to WPG under the WPG Lease. The WPG Cure Amount may increase prior to any actual date of assumption and assignment of the WPG Lease if the Debtors do not pay all amounts that accrue after the date of this Limited Objection, and any taxes, common area maintenance and other amounts that may come due, pursuant to the terms of the WPG Lease, and regardless of when those amounts accrued.

13. WPG notes that the WPG Lease imposes certain indemnification and contribution obligations that arise out of litigation or other claims that may be asserted or threatened against WPG in connection with the WPG Lease. Each of these indemnification and contribution covenants and obligations must be assumed, paid, and otherwise cured in connection with the Proposed Assignment. WPG objects to the Proposed Cure Amount to the extent that it fails to include amounts related to the indemnification and contribution covenants and obligations for which the Debtors are responsible to WPG under the WPG Lease.

14. In connection with the Proposed Assignment of the WPG Lease, all rights of WPG under the WPG Lease (including defenses thereto) must be preserved. As such, the Proposed Lease Sale Order should specify that WPG's setoff, recoupment, and subrogation rights are preserved,

---

[3] This amount includes (i) December 2024 rent and related charges and (ii) accrued, but unbilled tax reconciliation amounts for 2024 totaling not less than $95,890.

4

and that the Debtors and the Proposed Assignee remain liable to WPG for (i) any accrued but unbilled charges under the WPG Lease including but not limited to year-end adjustments for common area maintenance, taxes and similar charges; (ii) any regular or periodic adjustment or reconciliation charges that come due under the WPG Lease; (iii) any percentage rent that may be due under the WPG Lease; (iv) any non-monetary defaults; and/or (v) any insurance, indemnification and other contractual obligations under the WPG Lease regardless of when they accrued. This result is mandated by the requirement that the Debtors cure all arrears and that the Debtors provide adequate assurance of future performance under the terms of the WPG Lease. *See* 11 U.S.C. § 365(b)(1).

15. To the extent that rent, interest, and/or other charges continue to accrue, and/or WPG suffers other pecuniary losses with respect to the WPG Lease, WPG further reserves the right to amend the WPG Cure Amount to: (i) reflect such additional amounts; and (ii) to account for any additional year-end adjustments (collectively, the "Adjustment Amounts"), which have not yet been billed or have not yet become due under the terms of the WPG Lease. The Debtors or the Proposed Assignee must be responsible for satisfying the Adjustment Amounts when due in accordance with the terms of the WPG Lease regardless of when such Adjustment Amounts were incurred. To the extent that the Debtors are to remain responsible for any Adjustment Amounts, WPG requests that at the closing of the Proposed Assignment, such funds be placed into a separate and segregated escrow account outside of the Debtors' estates so that there is no question that sufficient, earmarked, unencumbered funds will be available to pay WPG when said Adjustment Amounts become due and owing to WPG in accordance with the terms of the WPG Lease.

16. Further, under section 365(k) of the Bankruptcy Code the Debtors remain responsible for any contractual obligations under the WPG Lease that arose prior to the assumption

and assignment of the WPG Lease, thus, any provision in the Proposed Lease Sale Order that purports to release the Debtors from any further liability under the WPG Lease, including those contractual obligations that arose prior to the assumption and assignment of the WPG Lease should be stricken. Further, the Proposed Lease Sale Order should be revised to provide that nothing impairs or prejudices WPG's right to recover from the Debtors' available insurance coverage with respect to third-party claims asserted in connection with the Debtors' use and occupancy of the Leased Premises on account of events that arose prior to the assumption and assignment of the WPG Lease. Further, the Debtors should be required to demonstrate proof of such insurance coverage and/or to obtain, if applicable, any necessary tail insurance in order to satisfy potential indemnification obligations based on events or occurrences prior to the effective date of the assumption and assignment of the WPG Lease.

17. Finally, the Proposed Lease Sale Order must provide, among other things, that the Debtors or the Proposed Assignee promptly pay to WPG all amounts due and owing under the WPG Lease through the effective date of the assumption and assignment (*i.e.*, the WPG Cure Amount), as the same may increase to reflect attorneys' fees and any other amounts that become due or are determined after the date of this Limited Objection.

### B. Debtors Must Demonstrate Adequate Assurance of Future Performance

18. In accordance with section 365 of the Bankruptcy Code, WPG must be provided with sufficient information with respect to adequate assurance of future performance prior to the potential assumption and assignment of the WPG Lease to the Proposed Assignee.

19. The adequate assurance of future performance information provided to WPG as part of the Proposed Assignment must demonstrate the heightened standards for adequate assurance of future performance in a shopping center will be satisfied by Burlington in accordance

with section 365 of the Bankruptcy Code.

20. Under this requirement, the Debtors must provide to WPG assurances: (a) of the source of rent and other consideration due under the WPG Lease, and that the financial condition and operating performance of the Proposed Assignee and any guarantor shall be similar to the financial condition and operating performance of the Debtors and any guarantor of the Debtors at the time the Debtors entered into the WPG Lease; (b) that any percentage rent due under the WPG Lease, if applicable, will not decline substantially; (c) that assumption and assignment of the WPG Lease is subject to all provisions of the WPG Lease, including but not limited to radius, location, use or exclusivity provisions, and will not breach any such provision contained in another lease; and (d) that assumption or assignment of the WPG Lease will not disrupt any tenant mix in the Leased Premises. *See* 11 U.S.C. § 365(b)(3). The Debtors bear the burden of demonstrating the Proposed Assignee's ability to provide adequate assurance of future performance. *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991). *See also In re Federated Dept. Stores, Inc.*, 135 B.R. 941, 944 (Bankr. S.D. Ohio 1991); *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 308 (Bankr. S.D.N.Y. 1983).[4]

21. On December 2, 2024, WPG, through counsel, received Burlington's adequate assurance information (the "Proposed Adequate Assurance Information"). WPG is reviewing the Proposed Adequate Assurance Information and reserves all of its rights accordingly. WPG expressly reserves the right to request further adequate assurance information that WPG may deem necessary,

---

[4] In order to satisfy the heightened adequate assurance of future performance burden, the Proposed Assignee must provide the following information: (i) the proposed name under which the Proposed Assignee intends to operate the store; (ii) the Proposed Assignee's intended use for the space; (iii) audited financial statements and annual reports for the past three (3) years, including all supplements or amendments thereto; (iv) cash flow projections for the Proposed Assignee, the Proposed Assignee's most recent business plan, all cash flow projections for the WPG Lease, and any financial projections, calculations and/or proformas prepared in contemplation of purchasing the WPG Lease; (v) all documents and other evidence of the Proposed Assignee's retail experience and experience operating stores in a shopping center; and (vi) a contact person for the Proposed Assignee WPG may directly contact in connection with the adequate assurance of future performance information.

in its sole and unfettered discretion, to make an informed decision as to Burlington's adequate assurance of future performance under section 365 of the Bankruptcy Code.

        **C.**      **The Debtors are Required to Assume and Assign the WPG Lease in its Entirety, Including any and all Obligations Contained Therein, and all WPG's Rights Under the WPG Lease and Applicable Law Must be Preserved**

      22.      WPG objects to any attempt by the Debtors and the Proposed Assignee to side-step or invalidate the bargained-for protections in the WPG Lease. Any attempt by the Debtors or the Proposed Assignee to do so is contrary to well-established caselaw and not supported by the Bankruptcy Code.

      23.      Any assumption and assignment of the WPG Lease requires the Debtors to assume and assign the WPG Lease in its entirety, including any and all conditions, covenants, monetary and non-monetary obligations and terms contained in the WPG Lease for which the Debtors are responsible. *See In re New York Skyline, Inc.,* 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) (citations omitted) ("When a debtor assumes the lease…it must assume both the benefits and burdens of the contract. Neither the debtor nor the bankruptcy court may exercise material obligations owing to the non-debtor contracting party."). WPG is entitled to the full benefit of its bargain under the WPG Lease and the full protections provided by section 365 of the Bankruptcy Code. *See, e.g.*, *Entertainment, Inc.*, 223 B.R. at 151; *In re new Almacs, Inc.*, 196 B.R. 244, 248 (Bankr. N.D.N.Y. 1996); *In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 831 (Bankr. S.D.N.Y. 1996) (each recognizing that section 365(d)(3) of the Bankruptcy Code imposes an affirmative duty on a debtor to comply with all of its leasehold obligations).

      24.      The Proposed Assignee must be responsible for satisfying all obligations and charges when due in accordance with the terms of the WPG Lease regardless of when such amounts were incurred. Accordingly, the Proposed Lease Sale Order must preserve WPG's right

to payment of these charges and expressly provide that the Proposed Assignee continues to be responsible for any and all express and implied covenants and obligations under the WPG Lease or related documents or supplements, regardless of when such covenants or obligations arose.

25.     Moreover, WPG's rights under the WPG Lease and applicable law must survive the Proposed Assignment. Any acquisition of the WPG Lease free and clear of claims could presumably result in the impairment of WPG's setoff and recoupment rights under the WPG Lease and applicable law. WPG's rights under the WPG Lease (including defenses thereto) cannot be extinguished through the Proposed Assignment.

26.     Additionally, the Go-Dark Provision represents an impermissible attempt to unilaterally modify the terms of the WPG Lease and curtail WPG's rights under the WPG Lease, and should not be approved by this Court. *See City of Covington v. Covington landing L.P.*, 71 F.3d 1221, 1226 (6th Cir. 1995) ("Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party."); *In re Air Vectors Assocs.*, 53 B.R. 668, 687 (Bankr. S.D.N.Y. 1985) (The bankruptcy court does not have authority to rewrite the terms of a lease.). Specifically, the WPG Lease does not permit the Debtors or any assignee of the Debtors, to go dark during the term of the WPG Lease for more than 90 days (the "<u>Permitted Go-Dark Period</u>"). This Court should require strict compliance with the WPG Lease by the Proposed Assignee. The Proposed Assignee should not be permitted to cease operations in connection with a renovation, alternation or restoration of the Leased Premises for more than the Permitted Go-Dark Period absent WPG's consent.

27.     Any attempt by the Debtors and/or the Proposed Assignee to modify the terms of the WPG Lease, including the Permitted Go-Dark Period, disregards the long-standing principle that executory contracts are assumed *cum onere*, subject to all its benefits and burdens.

*In re Nat'l Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000); *In re E-Z Convenience Stores, Inc.*, 289 B.R. 45, 49 (Bankr. M.D. N.C. 2003) (citations omitted) ("When an executory contract or lease is assumed, it must be assumed *cum onere*, with all of its benefits and burdens…Debtors cannot assume favorable positions of a lease and reject unfavorable provisions or rewrite the terms when assuming a lease."); *In re Buffets Holdings, Inc.*, 387 B.R. 115, 128 (Bankr. D. Del. 2008) (debtor could not assume or reject individual leases but had to assume or reject the master lease and all related agreements as a whole, where evidence established that master leases governed all related leases). It is well-settled that the Debtors cannot sell the WPG Lease, or any of their real estate assets, free and clear of certain terms. *See, e.g.*, *In re Kopel*, 232 B.R. 57 (Bankr. E.D. N.Y. 1999) (lease and related agreements constituted an entire transaction; debtor could not assume one agreement without curing defaults on others). In assuming and assigning the WPG Lease to Burlington, the Debtors must assume and assign to Burlington all the terms and conditions of the WPG Lease and cannot unilaterally rewrite the WPG Lease or pick and choose the terms of the WPG Lease with which Burlington will comply. *See Citibank, N.A. v. Tele/Resources, Inc.*, 724 F.2d 266 (2nd Cir. 1983) ("An assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and the assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged….Insofar as an assignment touches on the obligations of the other party to the underlying contract, the assignment moves into the shoes of the assignor.") (citations omitted); *In re Fifth Taste Concepts Las Olas, LLC*, 325 B.R. 42, 47 (Bankr. S.D. Fla. 2005) (A debtor "must assume the contract warts and all."); *In re The Texstone Venture, Ltd.,* 54 B.R. 54, 56 (Bankr. S.D. Tex. 1985) ("It is axiomatic that an assumed contract . . . is accompanied by all of its provisions and conditions.").

28.     Not only does the Go-Dark Provision violate the terms of the WPG Lease, but the

presence of a vacant store at the Center is damaging to WPG and detrimental to other tenants located at the Center. Burlington's failure to operate beyond the Permitted Go-Dark Period may result in the Center's other tenants being able to exercise certain rights and remedies against WPG if co-tenancy requirements are breached. In addition, a vacant store can lead to negative inferences being drawn by customers with respect to the overall state of the Center, and perhaps of greatest concern, disrupts the tenant mix at the Center. The success of any shopping center depends upon a carefully thought out and planned tenant mix, a fact long recognized by bankruptcy courts. *See In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 306-07 (Bankr. S.D.N.Y. 1983). Merchants rely on each other as a collective draw for potential customers. For every vacant space that exists in the Center, the potential draw of customers is diminished, and revenues of the other merchants suffer. Because of the harmful effects on WPG and its other tenants, this Court should prohibit the Proposed Assignee from ceasing operations at the Leased Premises for more than the Permitted Go-Dark Period without WPG's consent. While WPG recognizes that Burlington may need to "go dark" to conform the Leased Premises to Burlington's typical retail store, extending beyond the Permitted Go-Dark Period, without WPG's consent, violates the terms of the WPG Lease and is determinantal to WPG and other tenants at the Center.[5]

## CONCLUSION AND RESERVATION OF RIGHTS

29.    In sum, WPG is entitled to the full benefit of its bargain under the WPG Lease and the full protections provided by section 365 of the Bankruptcy Code. Any assumption and assignment of the WPG Lease must be in accordance with all provisions of the WPG Lease and the Bankruptcy Code. *See, e.g.*, *Entertainment, Inc.*, 223 B.R. at 151.

---

[5] WPG reserves the right to seek to hold Burlington liable for any actual and pecuniary losses and damages, including any legal costs and/or fees, incurred by WPG resulting from Burlington going dark in the Leased Premises that violates or creates any potential violation by WPG of any other lease at the Center.

30. Nothing in this Limited Objection is intended to be, or should be construed as, a waiver by WPG of any of its rights under the WPG Lease, the Bankruptcy Code, or applicable law. WPG expressly reserves all such rights, including, without limitation, the right to: (a) supplement and/or amend this Limited Objection and to assert any additional objections with respect to the WPG Cure Amount, the Proposed Assignment and the Proposed Lease Sale Order; (b) amend the WPG Cure Amount; and (c) assert any further objections with respect to the relief requested that may subsequently be sought by the Debtors and/or any other party, as such requested relief relates to the WPG Lease and/or the interests of WPG.

## JOINDER

31. WPG joins in any objections that are filed by other landlords to the extent that they are not inconsistent with this Limited Objection.

**WHEREFORE**, WPG respectfully requests that this Court: (a) sustain this Limited Objection; (b) affirmatively require the Debtors and the Proposed Assignee to comply with each and every term, condition and obligation set forth in the WPG Lease; and (c) grant WPG such other and further relief as this Court deems just and appropriate under the circumstances.

| | |
|---|---|
| Dated: December 11, 2024<br>Wilmington, Delaware | Respectfully submitted,<br><br>LAW OFFICE OF SUSAN E. KAUFMAN, LLC<br><br>*/s/ Susan E. Kaufman*<br>Susan E. Kaufman (DSB# 3381)<br>919 N. Market Street, Suite 460<br>Wilmington, DE 19801<br>Tel: (302) 472-7420<br>Fax: (302) 792-7420<br>Email: skaufman@skaufmanlaw.com<br><br>-and-<br><br>Ronald E. Gold, Esq. (Ohio Bar No. 0061351)<br>(Admitted *pro hac vice*)<br>FROST BROWN TODD LLP<br>3300 Great American Tower<br>301 East Fourth Street<br>Cincinnati, OH 45202<br>Tel: (513) 651-6800<br>Fax: (513) 651-6981<br>Email: rgold@fbtlaw.com<br><br>**Counsel for WPG Legacy, LLC** |

0028924.0790918   4908-4263-3475v1