# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| BIG LOTS, INC., *et al.* | : | Case No. 24-11967 (JKS) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
|  | : | **Re: Docs. 18, 511, 612, 683, 977** |
|  | : | **Hearing Dec. 19, 2024 @ 1:00 p.m.** |

## AMENDED OBJECTION OF LANDLORD TEN EAST PARTNERS, LP TO ASSUMPTION AND ASSIGNMENT OF LEASE AND TO DEBTORS' CURE COST ESTIMATE AND RESERVATION OF RIGHTS

Landlord TEN EAST PARTNERS, LP ("Landlord") objects to the Debtors' proposed or estimated cure cost for the Debtors' lease of Store No. 4245, 7025 N. Mesa, El Paso, Texas dated February 16, 2024, by PNS Stores, Inc. as tenant (the "Store").

1. Please refer to Doc. #511 dated October 16, 2024, and Doc. #683 dated October 31, 2024, wherein the Debtors estimate the cure cost payable to Landlord in connection with the proposed assumption and assignment of the lease for the Store as $34,859.00.

2. Please also refer to the Amendment to Lease executed effective October 1, 2024, between Landlord and the tenant, Big Lots Stores, PNS, LLC, in which the Landlord agreed to certain waivers and adjustments of rent. The True Cure Cost shown in the following paragraph reflects and takes account of such waivers and adjustments.

3. As a result of such waivers and adjustments, (a) the true cure cost through December 31, 2024 is $-0- (the "True Cure Cost")[1], and (b) the tenant's account has a credit of $1,043.49 through December 31, 2024 (the "True Cure Cost").

---

[1] The True Cure Cost includes post-petition attorneys' fees incurred by Landlord in the Big Lots bankruptcy case(s).

4. If the Debtors fail to pay rents, CAM, insurance, taxes, and other sums due in January 2025 (or thereafter if the assumption and assignment is delayed), then those sums must also be included in the True Cure Cost.

5. In order to assume and/or assign the subject lease, the Debtors are required to pay the True Cure Cost through the date of assumption and assignment and to provide adequate assurance of future performance by the assignee.

6. In the event of a dispute regarding the True Cure Cost, the assignee should be ordered to pay the undisputed portion of the True Cure Cost and to escrow the balance pending resolution of the dispute and to pay any attorney's fees incurred by Landlord in resolving the dispute.

7. If the Debtors wish to assume and/or assign the subject lease free of use restrictions, exclusivity provisions, competition clauses, and operating hour obligations, and perhaps free of other lease obligations, the Debtors are not entitled to amend and modify the lease through Section 363 sales.

8. Any assignment of the subject lease must also require the assignee to assume the subject lease and the Debtors' lease obligations thereunder ***subject to and burdened by*** all use restrictions affecting the Store premises and operation, including (for example, but not limited to) indemnity obligations, insurance obligations, repair and maintenance obligations, operating hour covenants, restrictive use covenants, exclusivity provisions, and non-competition clauses.

**Authorities and Argument**

9. In order to assume and assign, the Debtors are required by section 365(b)(1) of the Bankruptcy Code to provide adequate assurance (a) that the Debtors will promptly cure all defaults under the unexpired leases to be assumed and assigned and (b) of the future performance of a proposed assignee under the terms of an unexpired lease sought to be assumed and assigned. In particular, Bankruptcy Code section 365(b)(1) provides that in the event of a default under an unexpired lease, a debtor may not assume the lease unless, at the time of the assumption of such lease, the debtor "(A) cures, or provides adequate assurance that the debtor will promptly cure, such default; (B) compensates, or provides adequate assurance that the debtor will promptly compensate, the non-debtor party to the contract for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract." 11 U.S.C. § 365(b)(1). A debtor must cure both monetary and nonmonetary defaults. *See id.*

10. The cure notice and the bidding procedures in this case do not specify any other economic and non-economic obligations of the Debtors under the subject lease. Among other obligations, the Debtors are responsible for payment of monthly operating expenses and any shortfall after the annual reconciliation of actual expenses to estimated amounts paid each month. Further, the Debtors are obligated to Landlord for Landlord's attorneys' fees (Section 40 of the lease) incurred in connection with enforcing its contractual rights under the subject lease. Finally, the Debtors remain liable for any amounts coming due prior to any assumption and assignment, as well as all noneconomic obligations thereunder.

11. Further, all other provisions of the subject lease must be complied with consonant with applicable bankruptcy law, including but not limited to the permitted use clause (pursuant to

Section 4 of the Lease) and the assignment clause (pursuant to Section 22 of the Lease) and the providing of adequate assurances that future obligations will be met by the assignee.

12.     As a condition of assuming the lease, Section 365 of the Bankruptcy Code requires a debtor to provide adequate assurance that the assignee will have the ability to perform under such lease. 11 U.S.C. §§ 365(b)(1), (c), (f)(2). The Debtors bear the ultimate burden of persuasion as to this issue. *See In re Rachels Industries, Inc.,* 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1309 (5th Cir. 1985). Adequate assurance of future performance is determined by the existing factual conditions, and the court may look to many factors in determining what is necessary to provide adequate assurance of future performance under section 365(b), including sufficient economic backing, economic conditions, certificates, credit reports, escrow deposits, or other similar forms of security or guarantee. *In re Lafayette Radio Electronics Corp.,* 9 B.R. 993, 998 (Bankr. E.D.N.Y. 1981); *In re Belize Airways*, 5 B.R. 152 (Bankr. S.D. Fla. 1980). Courts also look to the operating experience of the proposed assignees. *In re Bygaph, Inc.,* 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986).

13.     The Debtors must demonstrate that any assignee will perform under the subject lease as of the time of the assignment. Landlord demands strict proof at any hearing on the proposed assumption and assignment of the subject lease as to the assignee's ability to provide adequate assurance of future performance as required in accordance with section 365 of the Bankruptcy Code.  As a part of the showing of adequate assurance as required by section 365, the Debtors must show, in addition to all other requirements of section 365, that any proposed assignee's "financial condition ... [is] similar to the financial condition... of the debtor... *as of the time the debtor became the lessee under the lease*." 11 U.S.C. 365 (emphasis added).

14. Further, all other provisions of subject lease must be complied with in line with applicable bankruptcy law, including but not limited to the permitted use clause (Section 4) and the assignment clause (Section 22) and the providing of adequate assurances that the tenant's other future lease obligations will be met by the assignee.

15. In addition, the Debtors remain responsible for all accrued or accruing charges under the subject lease and must pay such charges when they come due under the Lease. The Debtors must assume the lease *subject to* its terms, conditions, and covenants, and must assume all obligations owing under the subject lease, including obligations that have accrued but may not yet have been billed.  Any final assumption and assignment order should clearly state that the Debtors and the assignee will assume the lease obligations and pay or perform timely, regardless of whether they relate to the period prior to or after assumption, and will observe and be bound by all provisions, covenants, and conditions of the lease.  Furthermore, any provision in an assumption and assignment order that purports to release the Debtors of further liability based upon a payment of cure amounts must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the lease and does not release the assignee from the provisions, covenants, and conditions of the lease.

16. Some charges for which the Debtors bear responsibility under the subject lease have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods.  Under the subject lease, the Debtors pay fixed minimum rent and percentage rent, along with common area maintenance ("CAM"), insurance and real estate taxes and such other amounts as required under the lease.  Certain charges, such as CAM, insurance, and real estate taxes, are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred. To

the extent the estimated payments exceed actual charges; the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the lease, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years may not yet be complete. In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end. Because these accrued, but unbilled, charges are not yet due under the lease, they do not create a current default that gives rise to a requirement to cure at this time. Nevertheless, any assignment of the lease should require the assignee to pay any such yet-unreconciled charges and obligations.

17. The subject lease also imposes indemnity obligations on the tenant, requiring the Debtors to indemnify and hold the Landlord harmless with respect to any claims resulting from injury or damages to persons or property occurring in or about the leased premises (Section 11 of the lease). Any assumption of the subject lease, therefore, must be subject to the terms of the lease, including (but not limited to) the continuation of all indemnification obligations, regardless of when any claim arose. Nothing in any assumption and assignment order should preclude the Landlord from pursuing the Debtors, their insurance, the assignee, its insurance, or any other party that may be liable under the lease. Any assumption of the subject lease is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the subject lease. Landlord specifically reserves its right to pursue such rights irrespective of any amounts claimed herein.

18. Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the lease upon assumption. To the extent there is a dispute over the total cure obligation, all undisputed cure amounts should be paid upon the assumption of the lease. The cure cost

estimated by the Debtors, $34,859.00, is incorrect. As a result of such waivers and adjustments effected by the parties' Amendment to Lease (referenced in paragraph 2, above), the True Cure Cost through December 31, 2024 is $-0-, and the tenant's account is overpaid and has a credit in the sum of $1,043.49 through December 31, 2024.

19. Landlord is entitled to recover attorneys' fees incurred post-petition as cure costs to the extent such fees are recoverable under Chapter 38 of the Texas Civil Practice and Remedies Code. Such fees have been included in the True Cure Cost. *See In re Williams,* 2011 Bankr. LEXIS 2463, *3 (Bankr. D. Del. June 24, 2011) (Shannon, B.J.) ("It is beyond cavil that attorneys' fees incurred because of actions taken to enforce the underlying lease or contract may be properly recoverable as part of a cure payment if such lease or contract provides for attorneys' fees."). *See In re: Trak Auto Cooperation*, 277 B.R. 655, 669-670 (Eastern District, Virginia 2002) ("Where the debtor's lease provides for the payment of counsel fees and late fees or interest, we will uphold the terms of the contract"); *In re: Muma Services, Inc.*, 279 B.R. 478, 488-89 (Bankr. D. Del. 2002); *In re: Valley Media,* 290 B.R. 73, 75-76 (Bankr. D. Del. 2003); *See also In re: Shangri-La Inc.*, 167 F.3d 843 (4th Cir. 1999).

20. Landlord reserves the right to amend this Objection and to assert claims for damage to the Store premises; to assert claims for removal and disposal of personal property left behind or abandoned by the Debtors; to object to the form of the assumption and assignment; to enforce the rights of Landlord and obligations of the Debtors and/or the assignee; to object to the extent that consent of third parties, such as other tenants, is required but refused; and to object to non-compliance with restrictive use covenants, exclusive use provisions, and non-competition provisions affecting the lease premises.

FOR THE REASONS EXPRESSED ABOVE, Landlord TEN EAST PARTNERS, LP respectfully prays that the Court will sustain or grant this Objection and that the Court will order the relief requested above, as well as any other relief to which Landlord.

Dated: December 12, 2024

Respectfully submitted,

LAW OFFICE OF SUSAN E. KAUFMAN, LLC

*/s/ Susan E. Kaufman*
Susan E. Kaufman, (DSB# 3381)
919 North Market Street, Suite 460
Wilmington, DE  19801
(302) 472-7420
(302) 792-7420 Fax
skaufman@skaufmanlaw.com

-and-

**ROBERT R. FEUILLE**
*Admitted pro hac vice*
ScottHulse, PC
201 E. Main Dr., Suite 1100
El Paso, Texas 79901
(915) 533-2493
(915) 546-8333 Fax
bfeu@scotthulse.com

Counsel for TEN EAST PARTNERS, LP