## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, Inc., *et al.*,[1] | Case No. 24-11967 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 1236 and 1312** |

### OBJECTION OF 5620 NOLENSVILLE PIKE, LLC TO PROPOSED ASSIGNMENT OF LEASE TO BURLINGTON COAT FACTORY WAREHOUSE CORPORATION

5620 Nolensville Pike, LLC ("Nolensville") hereby files this objection and reservation of rights (the "Objection") to the Debtor's proposed assignment of a certain lease among Nolensville and the Debtor as proposed in Debtors' *Fourth Notice of Successful Bidders With Respect to the Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* [Docket No. 1312] (the "Notice") and respectfully states the following:

### BACKGROUND

1. On September 9, 2024, the above-captioned debtors and debtors in possession (the "Debtors") commenced these chapter 11 cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") in this Court.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers, are: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores – PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores – CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).

2.      Nolensville, as landlord, and Debtor Big Lots Stores, Inc., as tenant ("Debtor Tenant"), are parties to that certain Lease Agreement dated July 31, 2011 (together with all exhibits and attachments thereto and as amended and assigned from time to time, the "Debtor Lease") for certain property identified by the Debtors as store #5216 (the "Debtor Premises") located within the South Plaza Shopping Center, 5702 Nolensville Road, Nashville, TN 37211 (the "Shopping Center"). A true and correct copy of the Lease is attached hereto as **Exhibit "1"**.

3.      The Shopping Center is a "shopping center" as that term is used in section 365(b)(3) of the Bankruptcy Code. *See, e.g., In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1086-87 (3rd Cir. 1990).

4.      Nolensville is also landlord to a different tenant at the Shopping Center, *i.e.* Ross Dress For Less, Inc. ("Ross") pursuant to a Lease Agreement dated June 28, 2022 (together with all exhibits and attachments thereto and as amended, restated and assigned from time to time, the "Ross Lease") for certain premises also located within the Shopping Center. Section 15.3 of the Ross Lease[2] prohibits any of Ross' "off-price competitors" (which include, without limitation, T.J. Maxx, Marshalls, HomeGoods, Sierra, HomeSense, Nordstrom Rack, Burlington Coat Factory, Macy's Backstage, Gabe's and Bealls Outlet) to use any premises at the Shopping Plaza for the Off Price Sale of merchandise, or use more than ten thousand (10,000) square feet or more of any premises at the Shopping Plaza for the display and/or sale of apparel on an off-price basis (defined as a "Protection Violation" in Section 15.3 of the Ross Lease).[3]

---

[2]  A true and correct copy of a redacted excerpt of the Ross Lease in relevant part including Section 15.3 of the Ross Lease is attached hereto as **Exhibit "2".**

[3]  Nolensville reserves all of its rights with respect to any alleged breaches of the Ross Lease and makes no admissions herein with respect to any such alleged breaches or other terms of the Ross Lease.

5.      The Notice identifies the Debtor Lease as an unexpired lease to be assumed by the

Debtors and assigned (the "Proposed Assignment") to Burlington Coat Factory Warehouse

Corporation (the "Proposed Assignee") for a price of $300,000, stating a "cure cost" for the Debtor

Lease in the amount of Cure $23,708 (the "Proposed Cure Amount"). *See* Notice at Dkt. No..

1312-1, p.4.   The Notice also states that "[t]his lease is subject to a backup bid from 5620

Nolensville Pike, LLC for $250,000." *Id*.

6.      The Proposed Assignee is a named "off price competitor" in the Ross Lease.

**OBJECTION TO ASSIGNMENT TO PROPOSED ASSIGNEE**

7.      11 U.S.C. § 365(b)(3)(C) provides that, for a bankruptcy court to approve the

assumption and assignment of a shopping center lease, the "assumption or assignment of such

lease [must be] subject to all the provisions thereof, including (but not limited to) provisions such

as a radius, location, use, or exclusivity provision, **and will not breach any such provision

contained in any other lease, financing agreement, or master agreement relating to such

shopping center**" (emphasis added).

8.      Nolensville files this Objection, not to express its opposition to Debtors' efforts to

assume and assign Debtor Tenant's interest in the Debtor Lease *per se*, but to oppose such

assumption and assignment to the Proposed Assignee because such assignment will breach certain

exclusivity provisions of another lease at the Shopping Center, *i.e.* the Ross Lease, in direct

violation of 11 U.S.C. § 365(b)(3)(C).

9.      Section 15.3 of the Ross Lease prohibits the Proposed Assignee to use the Debtor

Premises for the Off Price Sale of merchandise, or use more than ten thousand (10,000) square feet

or more of any premises at the Shopping Plaza for the display and/or sale of apparel on an off-

price basis.   Upon information and belief, the Proposed Assignee is an "off price" retailer and

intends to use the Debtor Premises for the Off Price Sale of merchandise.  Pursuant to 11 U.S.C. § 365(b)(3)(C), therefore, the Debtor cannot provide adequate assurance of future performance and the Court must deny the proposed assignment to the Proposed Assignee. *See e.g. In re Three A's Holdings, L.L.C.*, 364 B.R. 550, 560 (Bankr. D. Del. 2007) (denying proposed assumption and assignment of lease where proposed assignee's use of leased premises would violate restrictive covenant applicable to such lease); *In re Heilig-Meyers Co.*, 294 B.R. 660, 663 (Bankr. E.D. Va. 2001) ("[t]he court finds that the proposed sale, assumption and assignment to Hancock of debtors' lease with Mitchell cannot meet the provisions of the leases themselves or satisfy the requirements of § 365(b)(3)(C) because the Hancock lease conflicts with the exclusivity clause of the Fabric lease." (*citing In re Sun TV & Appliances, Inc.*, 234 B.R. 356 (Bankr.D.Del.1999)); *In re J. Peterman Co.*, 232 B.R. 366 (Bankr.E.D.Ky.1999); *Rockland Ctr. Assocs. v. TSW Stores of Nanuet, Inc. (In re TSW Stores of Nanuet, Inc.*), 34 B.R. 299 (Bankr.S.D.N.Y.1983); *see also* David Kupetz, 2001–2002 ANNUAL SURVEY OF BANKRUPTCY LAW, pp. 352–53 (William L. Norton, Jr., ed., West Group 2001)).

## OTHER OBJECTIONS AND RESERVATION OF RIGHTS

A.    The Debtors' Proposed Cure Amount is Incorrect

10.    The Proposed Cure Amount is not accurate and will not cure all amounts due and owing to Nolensville under the Debtor Lease. The Proposed Cure Amount does not include any indemnity and contribution obligations and additional accrued but unbilled amounts, as well as other amounts referenced herein (the "Correct Cure Amount").

11.    The Correct Cure Amount may increase prior to any actual date of assumption and assignment of the Debtor Lease if the Debtors do not pay all amounts that accrue after the date of

this Objection, and any taxes, common area maintenance and other amounts that may come due, pursuant to the terms of the Debtor Lease, and regardless of when those amounts accrued.

12.     Nolensville notes that the Debtor Lease imposes certain indemnification and contribution obligations that arise out of litigation or other claims that may be asserted or threatened against Nolensville in connection with the Debtor Lease. Each of these indemnification and contribution covenants and obligations must be assumed, paid, and otherwise cured in connection with the Proposed Assignment. Nolensville objects to the Proposed Cure Amount to the extent that it fails to include amounts related to the indemnification and contribution covenants and obligations for which the Debtors are responsible to Nolensville under the Debtor Lease.

13.     In connection with the Proposed Assignment of the Debtor Lease, all rights of Nolensville under the Debtor Lease (including defenses thereto) must be preserved. As such, the Proposed Lease Sale Order should specify that Nolensville's setoff, recoupment, and subrogation rights are preserved,

14.     This amount includes but is not limited to (i) December 2024 rent and related charges and (ii) any accrued, but unbilled tax reconciliation amounts for 2024 that the Debtors and the Proposed Assignee remain liable to Nolensville for (i) any accrued but unbilled charges under the Debtor Lease including but not limited to year-end adjustments for common area maintenance, taxes and similar charges; (ii) any regular or periodic adjustment or reconciliation charges that come due under the Debtor Lease; (iii) any percentage rent that may be due under the Debtor Lease; (iv) any non-monetary defaults; and/or (v) any insurance, indemnification and other contractual obligations under the Debtor Lease regardless of when they accrued. This result is mandated by the requirement that the Debtors cure all arrears and that the Debtors provide

adequate assurance of future performance under the terms of the Debtor Lease. See 11 U.S.C. § 365(b)(1).

15.     To the extent that rent, interest, and/or other charges continue to accrue, and/or Nolensville suffers other pecuniary losses with respect to the Debtor Lease, Nolensville further reserves the right to amend the Correct Cure Amount to: (i) reflect such additional amounts; and (ii) to account for any additional year-end adjustments (collectively, the "Adjustment Amounts"), which have not yet been billed or have not yet become due under the terms of the Debtor Lease. The Debtors or the Proposed Assignee must be responsible for satisfying the Adjustment Amounts when due in accordance with the terms of the Debtor Lease regardless of when such Adjustment Amounts were incurred. To the extent that the Debtors are to remain responsible for any Adjustment Amounts, Nolensville requests that at the closing of the Proposed Assignment, such funds be placed into a separate and segregated escrow account outside of the Debtors' estates so that there is no question that sufficient, earmarked, unencumbered funds will be available to pay Nolensville when said Adjustment Amounts become due and owing to Nolensville in accordance with the terms of the Debtor Lease.

16.     Further, under section 365(k) of the Bankruptcy Code the Debtors remain responsible for any contractual obligations under the Debtor Lease that arose prior to the assumption and assignment of the Debtor Lease, thus, any provision in the Proposed Lease Sale Order that purports to release the Debtors from any further liability under the Debtor Lease, including those contractual obligations that arose prior to the assumption and assignment of the Debtor Lease should be stricken. Further, the Proposed Lease Sale Order should be revised to provide that nothing impairs or prejudices Nolensville's right to recover from the Debtors' available insurance coverage with respect to third-party claims asserted in connection with the

Debtors' use and occupancy of the Leased Premises on account of events that arose prior to the assumption and assignment of the Debtor Lease. Further, the Debtors should be required to demonstrate proof of such insurance coverage and/or to obtain, if applicable, any necessary tail insurance in order to satisfy potential indemnification obligations based on events or occurrences prior to the effective date of the assumption and assignment of the Debtor Lease.

17.    Finally, the Proposed Lease Sale Order must provide, among other things, that the Debtors or the Proposed Assignee promptly pay to Nolensville all amounts due and owing under the Debtor Lease through the effective date of the assumption and assignment (i.e., the Correct Cure Amount), as the same may increase to reflect attorneys' fees and any other amounts that become due or are determined after the date of this Objection.

B.    Debtor Must Demonstrate Adequate Assurance of Future Performance

18.    In accordance with section 365 of the Bankruptcy Code, Nolensville must be provided with sufficient information with respect to adequate assurance of future performance prior to the potential assumption and assignment of the Debtor Lease to the Proposed Assignee.

19.    The adequate assurance of future performance information provided to Nolensville as part of the Proposed Assignment must demonstrate the heightened standards for adequate assurance of future performance in a shopping center will be satisfied by Burlington in accordance with section 365 of the Bankruptcy Code.

20.    Under this requirement, the Debtors must provide to Nolensville assurances: (a) of the source of rent and other consideration due under the Debtor Lease, and that the financial condition and operating performance of the Proposed Assignee and any guarantor shall be similar to the financial condition and operating performance of the Debtors and any guarantor of the Debtors at the time the Debtors entered into the Debtor Lease; (b) that any percentage rent due

under the Debtor Lease, if applicable, will not decline substantially; (c) that assumption and assignment of the Debtor Lease is subject to all provisions of the Debtor Lease, including but not limited to radius, location, use or exclusivity provisions, and will not breach any such provision contained in another lease; and (d) that assumption or assignment of the Debtor Lease will not disrupt any tenant mix in the Leased Premises. See 11 U.S.C. § 365(b)(3). The Debtors bear the burden of demonstrating the Proposed Assignee's ability to provide adequate assurance of future performance. *In re Lafayette Radio Electronics Corp.,* 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991). *See also In re Federated Dept. Stores, Inc.*, 135 B.R. 941, 944 (Bankr. S.D. Ohio 1991); *In re TSW Stores of Nanuet, Inc*., 34 B.R. 299, 308 (Bankr. S.D.N.Y. 1983).[4]

21.     On or around December 2, 2024, Nolensville, through counsel, received information that appears to be Burlington's adequate assurance information (the "Proposed Adequate Assurance Information"). Nolensville is reviewing the Proposed Adequate Assurance Information and reserves all of its rights accordingly. Nolensville expressly reserves the right to request further adequate assurance information that Nolensville may deem necessary, in its sole and unfettered discretion, to make an informed decision as to Burlington's adequate assurance of future performance under section 365 of the Bankruptcy Code.

---

[4]     In order to satisfy the heightened adequate assurance of future performance burden, the Proposed Assignee must provide the following information: (i) the proposed name under which the Proposed Assignee intends to operate the store; (ii) the Proposed Assignee's intended use for the space; (iii) audited financial statements and annual reports for the past three (3) years, including all supplements or amendments thereto; (iv) cash flow projections for the Proposed Assignee, the Proposed Assignee's most recent business plan, all cash flow projections for the Debtor Lease, and any financial projections, calculations and/or proformas prepared in contemplation of purchasing the Debtor Lease; (v) all documents and other evidence of the Proposed Assignee's retail experience and experience operating stores in a shopping center; and (vi) a contact person for the Proposed Assignee Nolensville may directly contact in connection with the adequate assurance of future performance information.

C.   The Debtors are Required to Assume and Assign the Debtor Lease in its Entirety,
Including any and all Obligations Contained Therein, and all Nolensville Rights
Under the Debtor Lease and Applicable Law Must be Preserved

22.     Nolensville objects to any attempt by the Debtors and the Proposed Assignee to side-step or invalidate the bargained-for protections in the Debtor Lease. Any attempt by the Debtors or the Proposed Assignee to do so is contrary to well-established caselaw and not supported by the Bankruptcy Code.

23.     Nolensville objects to the extent the Debtors seek authorization for the assumption and assignment of the Debtor Lease free and clear of any of the Debtor Tenant's obligations or prohibitions under the Debtor Lease, including, but not limited to, any "exclusive use", "prohibited uses" or "go dark" provisions.  Any assumption and assignment of the Debtor Lease must be accomplished subject to all of the Debtor Lease's provisions, both beneficial and burdensome. Section 365 of the Bankruptcy Code expressly provides that the assumption and assignment of an unexpired lease must be assumed and assigned in its entirety and not assumed and assigned only subject to the beneficial portions of such unexpired lease. *See Cinicola v. Scharffenberger*, 248 F.3d 110, 19-20 (3d Cir. 2001) ("If the trustee meets the assumption requirements under § 365, it must assume the executory contract entirely.") (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984)); *In re G-1 Holdings, Inc*., 568 B.R. 731, 767 (Bankr. D. N.J. 2017) ("A debtor may not 'cherry-pick' the provisions of an assumed contract with which it will comply."); *In re MF Global Holdings Ltd*., 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("The trustee must either assume the entire contract, cum onere, or reject the entire contract, shedding obligations as well as benefits."); *In re Buffets Holdings, Inc*., 387 B.R. 115, 119 (Bankr. D. Del. 2008) ("If the debtor decides to assume a lease, however, it must generally assume all the terms of the lease and may not pick and choose only favorable terms to be assumed. 'The [debtor] may not blow hot and cold. If he accepts

the contract he accepts it cum onere. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (*quoting In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3d Cir. 1951)); *see also In re Access Beyond Technologies, Inc.*, 237 B.R. 32, 47 (Bankr. D. Del. 1999) ("A debtor cannot avoid the requirements of section 365 by saying it is 'selling' a lease or executory contract, rather than assuming and assigning it.")

24.     The Proposed Assignee must be responsible for satisfying all obligations and charges when due in accordance with the terms of the Debtor Lease regardless of when such amounts were incurred. Accordingly, the Proposed Lease Sale Order must preserve Nolensville's right to payment of these charges and expressly provide that the Proposed Assignee continues to be responsible for any and all express and implied covenants and obligations under the Debtor Lease or related documents or supplements, regardless of when such covenants or obligations arose.

25.     Moreover, Nolensville's rights under the Debtor Lease and applicable law must survive the Proposed Assignment. Any acquisition of the Debtor Lease free and clear of claims could presumably result in the impairment of Nolensville's setoff and recoupment rights under the Debtor Lease and applicable law. Nolensville's rights under the Debtor Lease (including defenses thereto) cannot be extinguished through the Proposed Assignment.

26.     Additionally, any modification to the "go-dark provision" represents an impermissible attempt to unilaterally modify the terms of the Debtor Lease and curtail Nolensville's rights under the Debtor Lease, and should not be approved by this Court. Specifically, the Debtor Lease does not permit the Debtors or any assignee of the Debtors, to go dark during the term of the Debtor Lease for more than 90 days (the "Permitted Go-Dark Period"). See Debtor Lease at Section 4(A).  This Court should require strict compliance with the Debtor

Lease by the Proposed Assignee. The Proposed Assignee should not be permitted to cease operations in connection with a renovation, alternation or restoration of the Leased Premises for more than the Permitted GoDark Period absent Nolensville's consent.

27.    In assuming and assigning the Debtor Lease to Burlington, the Debtors must assume and assign to Burlington all the terms and conditions of the Debtor Lease and cannot unilaterally rewrite the Debtor Lease or pick and choose the terms of the Debtor Lease with which Burlington will comply. *See Citibank, N.A. v. Tele/Resources, Inc*., 724 F.2d 266 (2nd Cir. 1983) ("An assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and the assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged….Insofar as an assignment touches on the obligations of the other party to the underlying contract, the assignment moves into the shoes of the assignor.") (citations omitted).

28.    Not only does any modification to the Permitted Go-Dark Period violate the terms of the Debtor Lease, but the presence of a vacant store at the Shopping Center is damaging to Nolensvile and detrimental to other tenants located at the Shopping Center. Any assignee's failure to operate beyond the Permitted Go-Dark Period may result in the Shopping Center's other tenants being able to exercise certain rights and remedies against Nolensville if co-tenancy requirements are breached. In addition, a vacant store can lead to negative inferences being drawn by customers with respect to the overall state of the Shopping Center, and perhaps of greatest concern, disrupts the tenant mix at the Shopping Center. The success of any shopping center depends upon a carefully thought out and planned tenant mix, a fact long recognized by bankruptcy courts. *See In re TSW Stores of Nanuet, Inc*., 34 B.R. 299, 306-07 (Bankr. S.D.N.Y. 1983). Merchants rely on each other as a collective draw for potential customers. For every vacant space that exists in the

- 11 -

Shopping Center, the potential draw of customers is diminished, and revenues of the other merchants suffer.  Because of the harmful effects on Nolensville and its other tenants, this Court should prohibit the Proposed Assignee from ceasing operations at the Leased Premises for more than the Permitted Go-Dark Period without Nolensville's consent. While Nolensville recognizes that an assignee may need to "go dark" to conform the Leased Premises to its typical retail store, extending beyond the Permitted Go-Dark Period, without Nolensville's consent, violates the terms of the Debtor Lease and is determinantal to Nolensville and other tenants at the Shopping Center.

## **RESERVATION OF RIGHTS**

29.     Nolensville reserves the right to seek to hold any assignee of the Debtor Lease liable for any actual and pecuniary losses and damages, including any legal costs and/or fees, incurred by Nolensville resulting from assignee's going dark in the Leased Premises that violates or creates any potential violation by Nolensville of any other lease at the Shopping Center.

30.     Nothing in this Objection is intended to be, or should be construed as, a waiver by Nolensville of any of its rights under the Debtor Lease, the Bankruptcy Code, or applicable law. Nolensville expressly reserves all such rights, including, without limitation, the right to: (a) supplement and/or amend this Objection and to assert any additional objections with respect to the Correct Cure Amount, the Proposed Assignment and the Proposed Lease Sale Order; (b) amend the Correct Cure Amount; and (c) assert any further objections with respect to the relief requested that may subsequently be sought by the Debtors and/or any other party, as such requested relief relates to the Debtor Lease and/or the interests of Nolensville.

31.     Nolensville joins in any objections that are filed by other landlords to the extent that they are not inconsistent with this Objection.

## CONCLUSION

**WHEREFORE**, Nolensville respectfully requests that this Court: (a) sustain this Objection and deny the proposed assumption and assignment of the Debtor Lease to the Proposed Assignee; (b) affirmatively require the Debtors and any approved assignee to comply with each and every term, condition and obligation set forth in the Debtor Lease; and (c) grant Nolensville such other and further relief as this Court deems just and appropriate under the circumstances.

Dated: December 13, 2024
          Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ Alan M. Root*

Alan M. Root (No. 5427)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:     (302) 434-4407
Email: root@chipmanbrown.com

          -and-

**VARNUM LLP**
Brendan G. Best
480 Pierce Street, Ste. 300
Birmingham, MI  480009
Telephone:     (313) 481-7326
Email: bgbest@varnumlaw.com

*Counsel to 5620 Nolensville Pike, LLC*