# **<u>EXHIBIT 2</u>**

1   **THIS AMENDED AND RESTATED LEASE** (the "Lease") is made as of the Effective
2   Date by and between Landlord and Tenant who are designated in Section 1.2 hereof. Landlord and
3   Tenant previously entered into a Lease dated June 28, 2022 (the "Prior Lease"), with respect to the
4   Store and the Shopping Center, as defined herein. It is the intent of Landlord and Tenant that this
5   Lease amend and restate the Prior Lease in all respects, including all exhibits thereto. Accordingly,
6   as of the Effective Date of this Lease, the Prior Lease will be superseded and replaced by this Lease.
7   Notwithstanding the foregoing, the Memorandum of Lease that was recorded in connection with
8   the Prior Lease shall remain applicable to this Lease. Landlord and Tenant hereby agree as follows:

9   **1. SALIENT LEASE TERMS**

10  **1.1.   Effective Date.**

11  _____, 2024.

12  **1.2.   Parties/Addresses.**

13  1.2.1.   Landlord:         **5620 NOLENSVILLE PIKE, LLC,**
14                             a Delaware limited liability company

15           Address:          18331 Piles Blvd., # 319
16           City/State/Zip:   Pembroke Pines, FL 33029

17           Facsimile #:      (954) 533-0499
18           Phone #:          (954) 990-8022

19           Initial Contact Name: Mike Outlaw

20           Landlord's Taxpayer I.D. #: 82-2223068

21           With a copy to:

22           Name:             Varnum LLP
23           Address:          101 N. Main, Suite 525
24           City/State/Zip:   Ann Arbor, MI 48104
25           Attention:        Thomas W. Forster

26  1.2.2.   Tenant:  **ROSS DRESS FOR LESS, INC.,**
27                    a Virginia corporation

28       (a)   **Address for all invoices for Rent and Reimbursements due under this**
29             **Lease, and change of Landlord or Payee, or change of Landlord's or**
30             **Payee's address:**

31           Address:          5130 Hacienda Drive
32           City/State/Zip:   Dublin, CA 94568-7579
33           Attention:        **Property Management Department**

34           Facsimile #:      (925) 965-4865
35           Phone #:          (925) 965-4400



1
2

### 15. USE

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

**15.3. Protection.**

Without the prior written consent of Tenant, which consent may be withheld in the absolute and sole discretion of Tenant, no tenant or occupant of Landlord's Parcel (other than Tenant) may use, and Landlord, if it has the capacity to do so, shall not permit any other tenant or occupant of Landlord's Parcel to (a) use its premises for the Off Price Sale (as hereinafter defined) of merchandise, or (b) use more than ten thousand (10,000) square feet of Leasable Floor Area of its premises for the sale of apparel (except for discount department stores in excess of eighty-five thousand (85,000) square feet of Leasable Floor Area), or (c) use in excess of one thousand five hundred (1,500) square feet of Leasable Floor Area of its premises primarily for the rental or sale of prerecorded audio or video merchandise or electronic games software and technological evolutions thereof.  For purposes of this Section 15.3, "Off Price Sale" shall mean the retail sale of merchandise on an everyday basis at prices reduced from those charged by full price retailers, such as full price department stores; provided, however, this definition shall not prohibit sales events by a retailer at a price discounted from that retailer's everyday price. (As of the Effective Date, examples of Off Price Sale retailers include such retailers as T.J. Maxx, Marshalls, HomeGoods, Sierra, Homesense, Fallas Paredes, Nordstrom Rack, Factory 2U, Burlington, Macy's Backstage, Burkes Outlet, Gabe's and Bealls Outlet.)  The foregoing use restrictions shall not apply to the Existing Tenants listed on **Exhibit L** (as the same may be extended or renewed) to the extent Landlord does not have the right, pursuant to the lease or occupancy agreement to restrict the use of the premises

of the Existing Tenants.  If any of the foregoing provisions is violated ("Protection Violation"), commencing on the first day of the Protection Violation and continuing throughout the period of the Protection Violation, Tenant, in addition to all other remedies available at law or in equity, including injunctive relief, shall have the ongoing right, exercisable by written notice to Landlord, either to terminate this Lease or to pay Substitute Rent within fifteen (15) days after the close of each calendar month.  The parties agree that the monetary damages to be suffered by Tenant as a result of a breach by Landlord (or Landlord's tenant(s)) of the provisions of this Section 15.3 are difficult to ascertain and that the payment of Substitute Rent, after negotiation, constitutes the best estimate by the parties of the amount of such damage.  If Tenant elects to terminate this Lease as provided in this Section 15.3, this Lease shall terminate on a date indicated by Tenant in its notice of termination, which in no event shall be sooner than thirty (30) nor later than ninety (90) days after the date of Tenant's notice of termination.  In the event of termination, Landlord shall be obligated to pay Tenant for the Unamortized Cost of Tenant's leasehold improvements in the Store, which costs Tenant agrees to specify in its notice of termination.  If Tenant elects to pay Substitute Rent, (A) such payment of Substitute Rent shall be retroactive to the date any such Protection Violation commenced, and Tenant shall deduct any overpayments of Rent from Rent coming due under this Lease, and (B) at such time as all such Protection Violations cease (the "Cure Date"), Rent shall resume at the rate which would have pertained at the Cure Date had the Protection Violation not occurred.  Notwithstanding the foregoing, if a Protection Violation is not due to Landlord's act or omission (but is due to the act of another tenant or occupant of the Shopping Center) and provided that Landlord diligently pursues all rights and remedies available to Landlord to cause such a Protection Violation to cease (including the commencement of litigation), then in such event, Tenant shall defer exercising its right to pay Substitute Rent for a period not to exceed ninety (90) days and shall defer exercising its right to terminate this Lease for a period of one hundred eighty (180) days after the date the Protection Violation commences.  If Landlord fails to cure the Protection Violation prior to the expiration of the applicable ninety (90) day period or one hundred eighty (180) day period, as applicable, then Tenant shall be permitted to immediately exercise its remedies hereunder.  The provisions of this Section 15.3 shall apply to any subsequent Protection Violation.



## 26.19. No Offer.

The submission of this Lease for examination and negotiation does not constitute an offer to lease, or a reservation of, or option for, the Store, and this Lease shall not become effective or binding until this Lease has been fully executed by both Landlord and Tenant and an executed original of this Lease has been delivered to each party.

**LANDLORD:**
5620 NOLENSVILLE PIKE, LLC,
a Delaware limited liability company

By: *(signed)*
Name: Mike Ovime
Its: Managing Member

Witness: *(signed)*
Printed Name: Audriana Reid
Witness: *(signed)*
Printed Name: Sylvia Mills

By: _____
Name: _____
Its: _____

Witness: _____
Printed Name: _____
Witness: _____
Printed Name: _____

**TENANT:**
ROSS DRESS FOR LESS, INC.,
a Virginia corporation

By: *(signed)*
 Richard G. Lietz
Its: Executive Vice President,
 Property Development

Witness: *(signed)*
Printed Name: Michelle Owings
Witness: *(signed)*
Printed Name: Sara Duran

By: *(signed)*
 Jeff Sealy
Its: Group Senior Vice President, Real Estate

Witness: *(signed)*
Printed Name: Michelle Owings
Witness: *(signed)*
Printed Name: Sara Duran