**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 1259** |

**DEBTORS' OBJECTION TO ATTIC PRODUCTS, DAN DEE INTERNATIONAL, LLC, AND DEWAN & SONS' MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIMS**

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**" or "**Big Lots**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), file this objection (this "**Objection**") to *Attic Products, Dan Dee International, LLC, and Dewan & Sons' Motion for Allowance and Payment of Administrative Claims* [D.I. 1259] (the "**Motion**") filed by Attic Products ("**Attic Products**"), Dan Dee International, LLC ("**Dan Dee**"), and Dewan & Sons ("**Dewan**" and, together with Attic Products and Dan Dee, the "**Movants**").[2] In support of this Objection, the Debtors respectfully state as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Motion and (a) the *Declaration of Attic Products in Support of Motion for Allowance and Payment of Administrative Claims of Trade Creditors* [D.I. 1259-2], annexed to the Motion as Exhibit B (the "**Attic Products Declaration**"), (b) the *Declaration of Dan Dee International, LLC in Support of Motion for Allowance and Payment of Administrative Claims of Trade Creditors* [D.I. 1259-3], annexed to the Motion as Exhibit C (the "**Dan Dee Declaration**"), and (c) the *Declaration of Dewan & Sons in Support of Motion for Allowance and Payment of Administrative Claims of Trade Creditors* [D.I.

**Objection**

1.      The Movants seek entry of an order (a) allowing their asserted administrative expense claims in the total amount of $1,235,145.97 and (b) directing the Debtors to pay such claims within seven (7) days of entry of such order. *See* Mot. ¶¶ 9, 27. Specifically, the Movants assert the following claims (collectively, the "**Alleged Administrative Expense Claims**"):

- Attic Products asserts claims totaling $120,983.65, which allegedly consists of (i) a $30,975.00 claim under section 503(b)(9) of the Bankruptcy Code and (ii) a $90,008.65 claim for post-petition deliveries of goods in the normal course of business;[3]

- Dan Dee asserts claims totaling $657,940.31, which allegedly consists of (i) a $143,119.42 claim under section 503(b)(9) and (ii) a $514,820.99 claim for post-petition deliveries of goods in the normal course of business;[4] and

- Dewan asserts claims totaling $456,222.01, which allegedly consists of (i) a $188,011.16 claim under section 503(b)(9) and (ii) a $268,210.45 claim for post-petition deliveries of goods in the normal course of business.[5]

2.      The Debtors respectfully request that the Court defer determining the amount of the Alleged Administrative Expense Claims until after the as-yet-to-be-determined administrative expense bar date occurs. It is not a prudent use of the Debtors' and their advisors time to engage in an *ad hoc* claims reconciliation process at this stage of the Chapter 11 Cases and determine the validity of any administrative expense claims to which the Movants *may* be entitled.[6]

3.      In any event, even if allowed, the Court should not compel the Debtors to pay the Alleged Administrative Expense Claims at this time. In general, courts have broad discretion to determine when an administrative expense claim will be paid. *See In re Garden Ridge Corp.*, 323

---

1259-4], annexed to the Motion as Exhibit D (the "**Dewan Declaration**" and, together with the Attic Products Declaration and the Dan Dee Declaration, the "**Declarations**").

[3] Mot. ¶ 6.

[4] *Id.* ¶ 7.

[5] *Id.* ¶ 8.

[6] The Debtors, along with their advisors, are currently reconciling their books and records to determine their view on the allowable amount of the Alleged Administrative Expense Claims.

B.R. 136, 143 (Bankr. D. Del. 2005) (citations omitted); *In re Cont'l Airlines, Inc.*, 146 B.R. 520, 531 (Bankr. D. Del. 1992); *see also In re Midway Airlines Corp.*, 406 F.3d 229, 242 (4th Cir. 2005) (holding that the bankruptcy court did not abuse its discretion when it deferred the payment of administrative claim and commenting that "in most situations the courts prefer to postpone payment of the administrative claim until confirmation of a plan or distribution in a liquidation") (internal citations omitted). "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." *Id.*

> In making this determination, one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets. . . . Courts will also consider the particular needs of each administrative claimant and the length and expense of the case's administration. To qualify for exceptional immediate payment, a creditor must show that there is a necessity to pay and not merely that the Debtor has the ability to pay.

*In re Glob. Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr D. Del. Dec. 21, 2006) (internal quotation marks and citations omitted) (citing *In re HQ Glob. Holdings, Inc.*, 282 B.R. 169, 172 (Bankr. D. Del. 2002)).

4. Indeed, most courts faced with requests for immediate payment of administrative claims postpone the actual payment of such claims until confirmation of a plan or conclusion of a debtor's chapter 11 cases. *Cont'l Airlines*, 146 B.R. at 531 (collecting cases). This is because a court "can better assess the amount of administrative claims asserted against [a debtor's bankruptcy] estate and the funds available to satisfy such claims" at the conclusion of the debtor's case. *In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 1562201, at *10 (Bankr. S.D.N.Y. Mar. 17, 2003) (deferring any payment until confirmation of the debtor's plan of reorganization).

5. Here, the Court should not open the floodgates to numerous *ad hoc* requests for immediate payment of administrative claims by granting the Motion at this time, as the Movants

have not presented any evidence or legal justification that they will suffer hardship from the delay in payment. *See In re NE Opco, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013) (denying a motion for immediate payment of a section 503(b)(9) claim where the movant "ha[d] not presented any evidence" that a delay in payment would impose a hardship). Specifically, each of the Declarations only asserts that "Big Lots and its subsidiaries have taken possession of goods, shipped by [the applicable vendor], either within 20 days before the Petition Date of Sept. 9, 2024 or after the Petition Date." *See* Attic Products Decl. ¶ 4; Dan Dee Decl. ¶ 4; Dewan Decl. ¶ 4. Nowhere do any of the Declarations mention that the applicable Movant will suffer hardship if payment is not made within the requested timeframe of seven days following entry of an order, or otherwise support the supposed hardship advanced in the Motion. Mot. ¶ 25.

6. Rather, the Movants focus their argument on the erroneous assumption that, simply because (a) the Debtors received final authority via the Critical Vendor Order[7] to pay up to $60 million in critical vendor claims and (b) have authorization via the Final DIP Order[8] and cash collateral budget to pay up to $50 million in operating disbursements per week, that there will not be prejudice to the Debtors by having to pay the Alleged Administrative Expense Claims immediately. Such assumptions are wrong both legally and factually.

7. *First*, the Movants have not shown—as they must under section 503(b)(1)(A)—that the goods delivered to the Debtors post-petition were "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A); *see In re Bernard Techs., Inc.*, 342 B.R. 174 (Bankr. D. Del. 2006) ("[A party] carr[ies] a heavy burden to demonstrate that the costs and fees for which it seeks payments provided an actual benefit to the estate"); *In re O'Brien Envt'l Energy,*

---

[7] *See* D.I. 463.
[8] *See* D.I. 584.

*Inc.*, 181 F.3d 527, 533 (3d Cir. 1999) (noting that, in order to satisfy section 503(b)(1)(A), costs must be "necessary to preserve the value of the estate assets").[9] Despite this "heavy burden," the Declarations are devoid of any evidence that the goods shipped by the Movants provided an benefit to the estates, let alone a "necessary" benefit. Indeed, the Court has no factual record on which to make such a finding. As such, the Movants have failed to meet the basic evidentiary threshold to establish administrative priority status under section 503(b)(1)(A) for the portion of the Alleged Administrative Claims relating to post-petition deliveries of goods, and thus the Motion should be denied on that ground alone.

8.      *Second*, the $60 million cap in the Final Vendors Order was calculated by the Debtors based on the amount they sought to pay to critical vendors that were not otherwise entitled to administrative expense priority (whether under section 503(b)(9) or otherwise)—it is irrelevant to the Debtors' ability and willingness to pay administrative expense vendor claims during the pendency of the Chapter 11 Cases. Nor is the cap an admission by the Debtors that "the prejudice to the Debtors and other creditors arising from immediate payment of section 503(b)(9) and postpetition delivery claims is outweighed by the necessity of business continuity." Mot. ¶ 21. Instead, as set forth in the Critical Vendors Motion, such caps were "designed . . . as estimates of how much must be paid on account of prepetition obligations *during the pendency of the Chapter*

---

[9] *See also In re MTE Holdings LLC*, No. 19-12269 (CTG), 2021 WL 2258270, at *5 (Bankr. D. Del. June 2, 2021) (same (citing *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 818 (3d Cir. 2010))); *In re Energy Future Holdings Corp.*, 990 F.3d 728, 742 (3d Cir. 2021) (explaining there must be a real, actual benefit, not a merely hypothetical benefit to a debtor for administrative expense priority to be appropriate); *In re Lucky's Mkt. Parent Co.*, 2022 WL 843763, at *6 (D. Del. 2022) (citing *In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D. Del. 2001) ("Section 503 is strictly construed to keep administrative expenses at a minimum, so as to preserve the estate for the benefit of creditors."); *In re New WEI, Inc.*, No. 15-02741 (TOM), 2018 WL 1115200, at *3 (Bankr. N.D. Ala. Feb. 26, 2018) ("In an application for administrative expense, the burden of proof by a preponderance of the evidence is on the movant.").

*11 Cases*"[10] and are not evidence of the Debtors' ability to pay the Alleged Administrative Expense Claims immediately.

9. *Third*, even if the Final Vendors Order and Final DIP Order were indications of the Debtors' ability to pay the Alleged Administrative Expense Claims—which they are not—such ability is not cause to compel immediate payment, as the Movants themselves concede. Mot. ¶ 17 (quoting *In re Glob. Home Prods., LLC.*, 2006 WL 3791955, at *3 ("To qualify for exceptional immediate payment, a creditor must show that there is a necessity to pay and not merely that the Debtor has the ability to pay")); *see also Cont'l Airlines*, 146 B.R. at 531 (same (quoting *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 179 (Bankr. S.D.N.Y. 1989))).

10. *Fourth*, and finally, the Debtors and their estates would be prejudiced by having to reconcile the Alleged Administrative Expense Claims and pay any valid portion of such claim entitled to administrative expense priority now, which could (a) disturb the Debtors' financial projections, (b) invite additional requests from other administrative expense claimants for immediate payment,[11] and (c) distract the Debtors from more time-sensitive tasks during these critical stages of the Chapter 11 Cases.

11. Accordingly, the Court (a) should defer a determination on the allowable amount (if any) of the Alleged Administrative Expense Claims and (b) should not compel payment of the Alleged Administrative Expense Claims because the Movants have failed to meet their burdens in seeking such relief.

---

[10] *See* D.I. 11, ¶ 36 (emphasis added).

[11] Indeed, the Motion is one of multiple requests for payment of administrative expense vendor claims that have been filed against the Debtors in these Chapter 11 Cases. *See, e.g.*, D.I. 684, 1113.

## Reservation of Rights

12. Notwithstanding anything herein to the contrary, the Debtors reserve their rights to contest the allegations raised in the Motion on any other grounds, including that the Alleged Administrative Expense Claims asserted by Movants are not entitled to administrative expense priority or do not accurately reflect the amount of the Debtors' actual liability, whether or not such grounds are raised in this Objection. Nothing contained herein should be deemed to constitute an admission regarding the validity or allowability of Alleged Administrative Expense Claims or any other administrative expense claims asserted in these Chapter 11 Cases.

## Conclusion

**WHEREFORE**, for the reasons set forth herein, the Debtors respectfully request that the Court (a) deny the Motion and (b) grant the Debtors such other and further relief as is just and proper.

*[Remainder of page intentionally left blank]*

Dated: December 16, 2024
Wilmington, Delaware

        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

        */s/ Sophie Rogers Churchill*
Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
Sophie Rogers Churchill (No. 6905)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
tmann@morrisnichols.com
srchurchill@morrisnichols.com

-and-

DAVIS POLK & WARDWELL LLP

Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
James I. McClammy (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
james.mcclammy@davispolk.com
stephen.piraino@davispolk.com
ethan.stern@davispolk.com

*Counsel to the Debtors and Debtors in Possession*