## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Obj. Deadline:** Subject to Motion to Shorten<br>**Hearing Date:** Subject to Motion to Shorten |

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO (I) ENFORCE THE FINAL DIP ORDER AND COMPEL PAYMENT OF STUB RENT AND SECTION 503(b)(9) CLAIMS, OR (II) IN THE ALTERNATIVE, CONVERT THESE CASES TO CASES UNDER CHAPTER 7 OF THE BANKRUPTCY CODE

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby moves (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit E** (the "Proposed Order"), (i) enforcing the terms of the Final DIP Order and compelling immediate payment of Stub Rent and 503(b)(9) Claims (each as defined herein), or (ii) in the alternative, converting these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.[2]  In support of the Motion, the Committee respectfully states as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows:  Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Motion of Debtors for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552, (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Post-Petition Financing and (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Providing Adequate Protection to Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*

## BASIS FOR RELIEF AND RELIEF REQUESTED

1.      The bases for the relief sought in the Motion are 11 U.S.C. §§ 105, 365, 503, and 1112(b), Rule 60 of the Federal Rules of Civil Procedure ("FRCP"), Rule 9024 of the Federal Rules of Bankruptcy Procedure ("FRBP"), and the *Final Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364, 503, 506, 507, and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection to Prepetition Secured Creditors, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [Docket No. 584] (the "Final DIP Order").

2.      The Committee respectfully requests that the Court enter the Proposed Order (i) authorizing the Debtors to draw on the DIP ABL Facility and/or DIP Term Facility, to the extent necessary, to fund remaining stub rent obligations (the "Stub Rent") and claims arising under section 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Claims"), and (ii) directing the Debtors to make such payments within five (5) business days of entry of such order.  In the event the Court does not grant the requested relief, or the Court grants the requested relief but the Debtors do not make the required payments in accordance with the entered order, the Committee requests that these Chapter 11 Cases be immediately converted to cases under chapter 7 of the Bankruptcy Code.[3]

## JURISDICTION AND VENUE

3.      The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court for the

---

[Docket No. 20] (the "DIP Motion").

[3]      In the alternative, the Committee submits that the Court has broad authority under 11 U.S.C. § 105(a) to fashion an equitable remedy to address the inequities described herein, as well as authority under FRCP 60 to vacate the

District of Delaware, dated February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.       In addition, the Committee confirms its consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, to the entry of final orders and judgments by the Court in connection with the Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## FACTUAL BACKGROUND

### I.       The Chapter 11 Cases

5.       On September 9, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing these chapter 11 cases (the "Chapter 11 Cases").

6.       On September 23, 2024, the U.S. Trustee filed a notice appointing the Committee [Docket No. 248].

### II.      The DIP Negotiations and DIP Settlement

7.       On the Petition Date, the Debtors filed the DIP Motion seeking approval of (i) the DIP ABL Facility in the aggregate principal amount of $550 million and (ii) the DIP Term Loan Facility in the aggregate amount of $157.5 million (the "DIP Financing").[4]  Of the $707.5 million

---

relief granted in the Final DIP Order.

[4]    1903P, the administrative agent under both the DIP Term Loan Facility and Prepetition Term Loan Facility, is an affiliate of Gordon Brothers Retail Partners, LLC, the liquidation consultant currently conducting store closing sales at certain of the Debtors' locations.  As raised by the Committee throughout these Chapter 11 Cases, this affiliation creates mixed motives for 1903P, whose affiliate stands to earn substantial profits on a full-scale liquidation of the Debtors' assets.  The Committee believes that this affiliation necessitates a higher level of scrutiny with respect to any wind-down/GOB sale budget, particularly one that will pay only those administrative

3

in financing made available under the DIP Facilities, only $35 million was new money. The remaining approximate $672 million in available financing consisted of a "roll up" of the Debtors' obligations under the Prepetition Loan Facilities (the "Roll-Up").

8.      Shortly after its appointment, the Committee informally raised various objections to the proposed DIP Financing, including, among other things, (i) the failure of the proposed budget to provide for full payment of Stub Rent and 503(b)(9) Claims, (ii) the Debtors' proposed waiver of their section 506(c) surcharge rights (the "506(c) Waiver"), (iii) approval of the Roll-Up, and (iv) the proposed shortened Challenge Period for the Committee and other parties in interest. Several of the Debtors' landlords also raised, both informally and through formal objections filed on the docket, objections to the proposed DIP Financing on the basis that it did not provide any assurance that Stub Rent would be paid in these Chapter 11 Cases.

9.      Following good-faith negotiations to resolve the Committee's informal objections, the parties reached a settlement that obviated the filing of a formal objection by the Committee (the "DIP Settlement"). This included the parties negotiating the terms of a revised budget (the "Approved Budget") that was incorporated into the Final DIP Order. On October 22, 2024, the Court entered the Final DIP Order.

10.     The Final DIP Order and Approved Budget approved by the Court reflect the terms of the DIP Settlement.[5] As set forth therein, the Committee ultimately consented to certain aspects

---

expenses that support the liquidation without paying all administrative claims in full.

[5]     Attached hereto as **Exhibit A** is the Approved Budget. This version was erroneously omitted from the Final DIP Order, but was filed as Exhibit 4 to the *Notice of Filing of Proposed Final Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364, 503, 506, 507, and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection to Prepetition Secured Creditors, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [Docket No. 556].

4

of the DIP Facilities to which it previously objected, including, among other things, the 506(c) Waiver, the Roll-Up, and the shortened Challenge Period.

11.     In exchange for these meaningful concessions, however, the Debtors and the Prepetition Secured Creditors agreed to revise the Approved Budget to budget for payment of all outstanding Stub Rent during the week ending December 7, 2024, and payment of approximately $51.9 million in 503(b)(9) Claims during the budgeted period.[6]

12.     As a result of the negotiations between the parties, the Debtors also agreed to revise the Final DIP Order to expressly authorize the Debtors to draw upon any ABL DIP Availability to pay (i) Stub Rent for locations rejected on or before October 31, 2024 during the week ending November 9, 2024 (the "First Stub Rent Payment") and (ii) all remaining Stub Rent during the week ending December 7, 2024 (the "Final Stub Rent Payment"):

> The Approved Budget shall provide for, among other things, the following: (i) funding during the week ending November 9, 2024 of $7.9 million allocable to unpaid postpetition rent for the month of September 2024 with respect to leases for which the effective date of rejection occurs on or before October 31, 2024 (the "Stub Rent for Rejected Leases Budget") and funding during the week ending December 7, 2024 allocable to that balance of unpaid postpetition rent for the month of September 2024 (the "Remaining Stub Rent") with the Debtors having authority, but not direction, to draw upon any ABL DIP Availability to provide for such funding, subject to the terms and conditions of the DIP ABL Credit Agreement [. . .]

Final DIP Order ¶ 14(a).  In other words, the Debtors were authorized to automatically draw on the DIP ABL Facility (to the extent necessary and subject to availability) to make the First Stub Rent Payment and Final Stub Rent Payment without further consent of the Prepetition Secured Creditors.

---

[6]     The Approved Budget applied to the period from October 6, 2024 through December 7, 2024.  The Committee has not yet seen a proposed budget covering the post-December 7, 2024 period.

13.    As noted by Debtors' counsel at the October 21, 2024 hearing on the DIP Motion, this provision resolved the remaining objections filed by the Debtors' landlords.  *See* Oct. 21, 2024 Hr'g Tr. at 105:19-106:1[7] ("[T]he debtors shall be authorized, but not directed, to pay the remaining stub rent in accordance with the budget. Full Stop. So what that does, Your Honor, is it removes that conditionality . . . with respect to the payment of the stub rent. And now we have a budgeted payment of stub rent, which I believe resolves the remaining landlord objections.").

14.    As of the date hereof, the Committee understands that the Debtors funded substantially all of the First Stub Rent Payment.[8]  The Debtors have not funded the Final Stub Rent Payment[9] at all.

15.    When approving the DIP Financing on a final basis at the October 21, 2024 hearing, this Court expressly cited to "the modifications to the budget to provide for the payment of stub rent, and the resolution of all the objections to the [DIP Motion]," as justification for that approval. Ex. B at 113:22-25.

## III.    The Debtors' Non-Compliance with the Final DIP Order

16.    While the Prepetition Secured Creditors have received the benefit of the bargain struck by the parties, the Committee—as well as those landlords that consensually withdrew their objections to the DIP Motion—have not.  As of the date hereof, the Debtors have not paid the remaining Stub Rent obligations, despite having express authority and sufficient cash on hand

---

[7]    Attached hereto as **Exhibit B** is a true and correct copy of the October 21, 2024 hearing transcript.

[8]    Based on the Committee's discussions with certain creditors, at least one landlord has not received any Stub Rent for its lease, notwithstanding that it was rejected on or before October 31, 2024 and thus should have received payment over a month ago.

[9]    The Approved Budget forecasted a payment of $30.1 million for Stub Rent and "other rent cures" during the week ending December 7, 2024.  *See* **Exhibit A**.  Based on information provided to date, approximately $23 million of this amount is allocable to Stub Rent.

6

and/or availability under the DIP ABL Facility to do so. Although the Committee has affirmatively requested that the Debtors pay such claims in accordance with the Final DIP Order, the Debtors have not yet done so and have provided no compelling reason for the delay.

17. Likewise, the Debtors have also failed to pay outstanding 503(b)(9) Claims, having funded only $23.0 million of the $51.9 million in total 503(b)(9) Claim obligations forecasted to be paid in the Approved Budget to date. Based on currently available information, there are approximately $65.8 million in aggregate outstanding 503(b)(9) Claims.

## IV. The Sale

18. On November 22, 2024, this Court entered the *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, Encumbrances, and other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (the "Sale Order") [Docket No. 1232] approving the proposed sale of the Debtors' assets (the "Sale") to Gateway BL Acquisition, LLC (the "Buyer" or "Nexus"). The Committee understands that as of the date hereof, the Sale has not yet closed and that the parties are working in good faith to satisfy outstanding closing conditions. In light of the foregoing, the Debtors have not complied with the DIP Milestones, which required Sale closing to occur on or before December 13, 2024.[10]

19. On December 14, 2024, each of the DIP Agents issued a notice to the Debtors declaring an Event of Default under the DIP Facility arising from the Debtors' failure to timely close the Sale and reserving its rights with respect to remedies under the applicable loan

---

[10] *See* Final DIP Order, Ex. 5.

documents.  However, it is the Committee's understanding that as of the date hereof, the DIP Agents have not issued a DIP Termination Declaration terminating the Debtors' access to the DIP Financing.

20.    The Debtors are currently party to approximately 1,050 leases[11] that have not yet been assumed or rejected.  Liquidation sales have not commenced at the vast majority of these locations, as the leases were expected to be assumed and assigned to the Buyer or a third party under the Asset Purchase Agreement (as defined in the Sale Order).  If the Debtors are ultimately unable to consummate the Sale, the Debtors, at the direction of the Prepetition Secured Creditors, will likely seek to commence orderly liquidation sales at the remaining locations and market any valuable leases for sale to third parties, the proceeds of which will substantially repay the Prepetition Secured Creditors' claims.

21.    While the Committee appreciates that uncertainty regarding the Sale is likely driving the Debtors' failure to timely make payments on account of the Stub Rent and 503(b)(9) Claims, such uncertainty does not justify the Debtors' failure to honor the DIP Settlement and comply with the Final DIP Order.  Absent the relief requested herein, the budgeted Stub Rent and 503(b)(9) Claims may go unpaid, notwithstanding that the landlords' properties and vendors' inventory continue to be used to maximize the value of the Prepetition Secured Creditors' collateral for their sole benefit.

---

[11]    On December 13, 2024, the Debtors filed a motion seeking a 90-day extension of their existing January 7, 2025 deadline to assume or reject unexpired leases under 11 U.S.C. § 365(d)(4).  *See* Docket No. 1351.  The Committee intends to object to the Debtors' request for an extension absent immediate payment of Stub Rent and ironclad guarantees that all future post-petition rent obligations will be timely paid.

**ARGUMENT**

**I.    The Court Should Compel Immediate Payment of Stub Rent and 503(b)(9) Claims**

22.    Section 503(a) and (b) of the Bankruptcy Code provide a separate right to request payment of an administrative expense for the ". . . actual, necessary costs and expenses of preserving the estate[.]"  11 U.S.C. § 503(a), (b).

23.    The Third Circuit has expressly held that a debtor's post-petition use of leased premises following the Petition Date constitutes actual, necessary costs and expenses of the estate as contemplated by section 503(b)(1)(A) of the Bankruptcy Code, and as such, should be paid in full.  *See In re Goody's Family Clothing Inc.*, 392 B.R. 604 (Bankr. D. Del. 2008), *aff'd*, 610 F.3d 812 (3d Cir. 2010).

24.    Furthermore, section 365(d)(3) of the Bankruptcy Code protects landlords by requiring debtor-tenants to timely perform their obligations arising under the lease.  *See In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 210 (3d Cir. 2001); *In re Valley Media, Inc.*, 290 B.R. 73, 74 (Bankr. D. Del. 2003).  This section of the Bankruptcy Code expressly requires debtor-tenants to immediately comply with all of their lease obligations in full as they come due in the post-petition period.  *See In re DVI, Inc.*, 308 B.R. 703, 707 (Bankr. D. Del. 2004) (citing *In re Montgomery Ward Holding Corp.*, 268 F.3d at 206) ("Section 365 of the Bankruptcy Code requires the debtor to pay obligations which arise under a lease post-petition and pre-rejection.").  Accordingly, under the Bankruptcy Code, the Debtors are required to comply with their existing lease obligations, including payment of Stub Rent, which they have not yet done.

25.    From the Petition Date through the date hereof, the Debtors have enjoyed the use and benefit of the leased premises (and will continue to enjoy the use and benefit of their stores through assumption or rejection of the applicable leases).  Therefore, the Debtors' landlords are entitled to immediate payment of all outstanding postpetition rent, including Stub Rent.

9

26.     Likewise, 503(b)(9) Claims are expressly identified under the statute "as actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(9).  Accordingly, it is also appropriate for the Court to enter an order compelling the Debtors to immediately pay 503(b)(9) Claims in accordance with the Approved Budget.

27.     This Court has discretion to require that Stub Rent and 503(b)(9) Claims be paid immediately.  *See In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005).  "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors."  *Id.* (citing *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002)); *see also In re Global Home Prods., LLC*, 2006 WL 3791955, *4 (Bankr. D. Del. Dec. 21, 2006).

28.     There is no prejudice to the Debtors or other creditors here.  The Debtors already have Court authorization and sufficient funding (or access to funding) to pay Stub Rent and 503(b)(9) Claims in accordance with the Final DIP Order.  In comparison, there is hardship to the landlords and holders of 503(b)(9) Claims.  If the Debtors have, *arguendo*, insufficient assets to fund all allowed administrative claims in full, the estates are administratively insolvent and these Chapter 11 Cases should immediately be converted to cases under chapter 7, as discussed further herein.  In the interim, the Prepetition Secured Creditors should not be permitted to liquidate the balance of their collateral through a value-maximizing orderly chapter 11 liquidation process. Some of the Debtors' remaining inventory is almost certainly entitled to administrative priority status under section 503(b)(9) or section 503(b)(1) of the Bankruptcy Code—the Debtors should not be permitted to liquidate this inventory while refusing to pay 503(b)(9) Claims.  Likewise, the Debtors should not be permitted to continue to use the leased premises to liquidate their inventory for the sole benefit of the Prepetition Secured Creditors while Stub Rent and other post-petition

10

rent obligations remain unpaid.  As such, the Court should compel the Debtors to immediately pay all outstanding Stub Rent and 503(b)(9) Claims.

## II.    Absent Immediate Payment of Stub Rent and 503(b)(9) Claims, These Chapter 11 Cases Should be Converted to Cases Under Chapter 7 of the Bankruptcy Code

29.    Section 1112(b) of the Bankruptcy Code provides that, on request of a party in interest,[12] and after notice and a hearing, the Court "*shall* convert a case . . . to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, [if the movant establishes] cause."  *See* 11 U.S.C. § 1112(b)(1) (emphasis added).  The Bankruptcy Code provides for conversion of a chapter 11 case in such circumstances to prevent the debtor-in-possession "from gambling on the enterprises at the creditor's expense when there is no hope of rehabilitation."  *In re Reserves Resort, Spa & Country Club LLC*, 2013 WL 3523289, at *2 (Bankr. D. Del. July 12, 2013) (quoting *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995)).

30.    Section 1112(b)(1) calls for a two-step analysis.  *First,* the Court must determine whether there is "cause" to convert or dismiss the Chapter 11 Cases.  *See In re Am. Cap. Equip., LLC,* 688 F.3d 145, 161 (3d Cir. 2012) (citing *In re SGL Carbon Corp.,* 200 F.3d 154, 159 n.8 (3d Cir. 1999)).  *Second,* if cause exists, the Court must choose between conversion and dismissal based on "the best interest of creditors and the estate."  *See id.*  Absent unusual circumstances, "[section 1112(b)] makes conversion *mandatory* once a court finds . . . any of the elements of 'cause.' . . . *The Court does not have discretion." In re Reserves Resort, Spa & Country Club LLC,* 2013 WL 3523289, at *2 (emphasis added).  Section 1112(b)(2) provides a narrow exception to the court's obligation to convert or dismiss a case upon a showing of cause where:

---

[12]    The Committee is a party-in-interest in the Debtors' chapter 11 proceedings.  *See* 11 U.S.C. § 1109(b); *see also In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 n.21 (3d Cir. 2004) ("The [Bankruptcy] Code defines 'party in interest' to include . . . 'a creditors' committee' . . . .").

68457/0001-49004823

the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—

> (A) there is a reasonable likelihood that a plan will be confirmed . . . within a reasonable period of time; and

> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—

>> (i) for which there exists a reasonable justification for the act or omission; and

>> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2)(A), (B).

31.    The first prong of the two-step section 1112(b)(1) analysis may be satisfied by demonstrating that the debtor suffered or has continued to experience a negative cash flow or declining asset values following the order for relief and an absence of a reasonable likelihood of rehabilitation. *See In re Kanterman,* 88 B.R. 26, 29 (S.D.N.Y. 1988) ("All that need be found is that the estate is suffering some diminution in value."). Further, courts have also found that the administrative insolvency of a debtor's estate constitutes "cause" and can also constitute a separate and independent cause to convert a chapter 11 case to a case under chapter 7. *See In re Emerald Grande*, 2018 WL 2703071, at *3 (Bankr. N.D.W. Va. 2018) ("[A] debtor's administrative insolvency can demonstrate cause under [Section] 1112(b)(4)(A) or serve as independent cause for conversion, although not explicitly listed in the statute."); *see also In re BH S & B Holdings*, LLC, 439 B.R. 342, 349 (Bankr. S.D.N.Y. 2010) ("The Court further concludes that the Debtors administrative insolvency constitutes cause to convert these cases."); *In re Bartmann*, 310 B.R. 663 (B.A.P. 10th Cir. 2004) (affirming bankruptcy court's conversion order based, in part, on

12

administrative insolvency of the debtor); *In re Desmond*, 331 B.R. 42, 44 (Bankr. D.N.H. 2005) (finding cause to convert case based on debtor's administrative insolvency).

32.     Absent immediate payment of Stub Rent and 503(b)(9) Claims, or some other agreed resolution that guarantees the administrative solvency of these estates, the Committee is left with no choice but to seek immediate conversion of the Chapter 11 Cases.  Given the Debtors' ongoing failure to make payments in accordance with the Approved Budget, cause exists to convert these Chapter 11 Cases to cases under chapter 7.  This bankruptcy has been pending for three months and administrative claims continue to accrue to the detriment of the Debtors' landlords, vendors, and other unsecured creditors who have continued to do business with the Debtors following the Petition Date.  Although administrative claims were properly budgeted at the outset of the cases per the DIP Settlement, the Debtors now hold those payments hostage due to the uncertainty of the Sale process, despite the fact that such payments are not (and should not be under applicable law) contingent on consummation of the Sale.  The Debtors' ongoing failure to pay such claims in accordance with the Final DIP Order and Approved Budget leads the Committee to believe that, if the Sale cannot be consummated, the estates may be administratively insolvent.

33.     This Court should not approve a "wait and see" approach to administrative solvency, through which the Prepetition Secured Creditors will liquidate the balance of their collateral in chapter 11, and only permit payment of administrative claims at the end of the cases if sufficient assets remain after they are paid in full.  It is well established that a secured creditor that is availing itself of the protections of the Bankruptcy Code must "pay the freight, and the freight is . . . not necessarily a tip to the unsecured, but the freight is certainly an administratively solvent estate."  *See In re NEC Holdings Corp.,* No. 10-11890 (PJW) (Bankr. D. Del.), July 13,

2010 Hr'g Tr. at 100:17-20; *see also In re Townsends, Inc.*, No. 10-14092 (CSS) (Bankr. D. Del.),

Jan. 21, 2011 Hr'g Tr. at 23:14-24:22 (in response to the statement of debtors' counsel that section

503(b)(9) claims would not be paid in full, the Court stated: "Well, we've got a problem. Not going

to run an administratively insolvent estate").[13]   Absent immediate payment of Stub Rent and

503(b)(9) Claims and guarantees that these estates will be administratively solvent until these cases

are closed, the Chapter 11 Cases should be immediately converted to prevent further harm to the

Debtors' administrative creditors, many of whom have provided vital goods and services to the

Debtors during the pendency of these cases.

### III.   In the Alternative, the Court Has Broad Authority Under 11 U.S.C. § 105(a) to Fashion an Equitably Remedy to Address the Inequities Described Herein

34.   Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any

order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

No provision of this title providing for the raising of an issue by a party in interest shall be

construed to preclude the court from, *sua sponte*, taking any action or making any determination

necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of

process."  11 U.S.C. § 105(a).  "The Supreme Court has long recognized that bankruptcy courts

are equitable tribunals that apply equitable principles in the administration of bankruptcy

proceedings."  *Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp.

v. Chinery*, 330 F.3d 548, 567 (3d Cir. 2003) (citations omitted); *see also Murrama v. Citizens

Bank of Mass.*, 549 U.S. 365, 375 (2007) (identifying the "broad authority granted to bankruptcy

judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described

in § 105(a) of the Code").

---

[13]   A copy of the relevant portions of the referenced transcripts is attached hereto as **Exhibit C** and **Exhibit D**, respectively.

35.     If the Court determines to deny the relief requested herein, it should nonetheless exercise its equitable powers under section 105(a) of the Bankruptcy Code to fashion an appropriate remedy to address the inequities identified herein.  Such remedies may include, among other things, vacating the Final DIP Order.[14]  *See Vision Metals, Inc. v. SMS Demag, Inc. (In re Vision Metals, Inc.)*, 311 B.R. 692, 699 (Bankr. D. Del. 2004) (stating that the court may vacate an order under section 105(a) unless such result would be "inconsistent with the Code").

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court (i) enter the Proposed Order attached hereto as **Exhibit E** authorizing and directing the Debtors to pay outstanding Stub Rent and 503(b)(9) Claims or, in the alternative, converting these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, and (ii) grant such further relief as it deems just and proper.

*[Remainder of Page Intentionally Left Blank]*

---

[14]    The Court has authority to vacate the Final DIP Order under FRCP 60, made applicable through FRBP 9024, which permits relief from a final order for, among other things, "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)" and "any other reason that justifies relief."  The Committee respectfully submits that relief from the Final DIP Order would be appropriate given that the Debtors and Prepetition Secured Creditors have not honored the terms of the DIP Settlement, yet the Prepetition Secured Creditors will receive the benefit of, among other things, the 506(c) Waiver and the Roll-Up.

Dated: December 16, 2024
      Wilmington, Delaware

**COLE SCHOTZ P.C.**

*/s/ Justin R. Alberto*
Justin R. Alberto (No. 5126)
Stacy L. Newman (No. 5044)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Tel:    (302) 652-3131
Fax:    (302) 652-3117
Email: jalberto@coleschotz.com
      snewman@coleschotz.com

*-and-*

**MCDERMOTT WILL & EMERY LLP**

Darren Azman (admitted *pro hac vice*)
Kristin K. Going (admitted *pro hac vice*)
Stacy Lutkus (admitted *pro hac vice*)
Natalie Rowles (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, NY 10017
Tel:    (212) 547-5400
Fax:    (212) 547-5444
Email: dazman@mwe.com
      kgoing@mwe.com
      salutkus@mwe.com
      nrowles@mwe.com

*Counsel to the Official Committee of Unsecured Creditors*

68457/0001-49004823