**Exhibit 1**

**Proposed Lease Sale Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 13 & 1198** |

### ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS-IN-POSSESSION TO TERMINATE OR ASSUME, <u>ASSIGN AND SELL CERTAIN NON-RESIDENTIAL REAL PROPERTY LEASES</u>

Upon the motion (the "**Motion**")[2] of Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for an order pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006 and 9014, and Local Rule 6004-1, (i) establishing procedures (the "**Lease Sale Procedures**") to sell or transfer certain unexpired leases of non-residential real property (each, as the same may have been amended from time to time a "**Lease**"); (ii) scheduling an auction to sell the leases (the "**Lease Sales**") detailed in the Lease Sale Procedures (the "**Lease Auction**") and a hearing to approve one or more Sales (the "**Lease Sale Hearing**"); and (iii) granting related relief [D.I. 13]; Court having entered an interim order granting the relief requested in the Motion on November 20, 2024 [D.I. 1198] (the "**Fourth Interim Order**"); and in

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

accordance with the Fourth Interim Order, the Debtors having conducted a Lease Auction on December 4, 2024; and the Debtors having filed a notice of Successful Bidder on December 5, 2024 [D.I. 1312] (the "**Post-Auction Notice**"); and the Debtors having filed a *Notice of Abandonment, Utilization and Disposal of Personal Property on Certain of the Debtors' Leased Premises Sold Pursuant to the December Wave Lease Sales* on November 25, 2024 [D.I. 1237] (the "**Notice of Abandonment**"); and the Debtors having filed a *Notice of Potential Utilization and Disposal of Personal Property on Certain of the Debtors' Leased Premises Sold Pursuant to the December Wave Lease Sales* on November 25, 2024 [D.I. 1238] (the "**Notice of Disposal**"); and the Debtors having determined, in the exercise of their business judgement and in consultation with their advisors and the Consultation Parties, that the offers listed on **Exhibit A** attached hereto are the highest and best offers for the respective Leases; and the Court having determined that the legal and factual bases set forth in the Motion and the *Declaration of Emilio Amendola of A&G Real Estate Partners, in Support of Order (I) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of all Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (II) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [D.I. 1375] establish just cause for the relief granted herein; and the Debtors having served notice of Motion, the Lease Sale Hearing, the Notice of Abandonment, Notice of Disposal and related filings; and after due deliberation and good and sufficient cause appearing therefor;

     **NOW, THEREFORE**, the Court hereby finds as follows:

     A.    After good and sufficient notice of the Motion having been provided and the occurrence of the Lease Auction on December 4, 2024, the purchase prices listed on **Exhibit A** are the highest and best offers received by the Debtors for the Leases listed therein.

B.      A reasonable opportunity to object or be heard regarding the Post-Auction Notice has been afforded to all interested persons and entities, including the landlords for the premises referenced on **Exhibit A** (the "**Landlords**").

C.      The Debtors have determined in the exercise of their reasonable business judgment that the Leases should be (i) sold and assigned to the parties listed on **Exhibit A** for which the type of agreement sought to be approved is an Assignment Agreement (the "**Proposed Assignees**," and the relevant Leases, the "**Assigned Leases**"), or (ii) terminated pursuant to agreements entered into with the parties listed on **Exhibit A** for which the type of agreement sought to be approved is a Lease Termination Agreement (the "**LTA Landlords**," and together with the Proposed Assignees, the "**Buyers**").

D.      The assumption, assignment and sale of the Leases to the Buyers, or the termination of the Leases, as applicable, pursuant to Sections 363 and 365 of the Bankruptcy Code is in the best interests of the Debtors, their estates and their creditors.

E.      The consideration to be paid by the Buyers pursuant to the Assumption and Assignment Agreements or Termination Agreements dated on or about December 31, 2024 (the "**Agreements**"), copies of which are attached as **Exhibit B** and **Exhibit C**, respectively, hereto, constitutes adequate and fair value for the Leases.

F.      Pursuant to Sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) of the Bankruptcy Code, to the extent required under the Lease Sale Procedures, the Buyers have provided adequate assurance of future performance under the Leases, as applicable.

G.      The assumption and assignment of the Assigned Leases to the Proposed Assignees is in compliance with Section 365(b)(3) of the Bankruptcy Code.

H.      The Agreements were negotiated and entered into in good faith, from arm's length bargaining positions, by the Debtors and the Buyers. Each Buyer is hereby found to be a good faith purchaser of the Leases and is found to be entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code.

I.      Through, *inter alia*, the Notice of Abandonment and the Notice of Disposal, the Debtors have provided sufficient notice to certain known and potentially interested third parties concerning the abandonment and disposal of personal property that will be left at the leased premises upon the Closing Dates or Termination Dates (as defined in the Agreements), as applicable.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT**

1.      The Lease Sale Procedures Motion, as it pertains to the assignment of the Leases to each Buyer, or the termination of the Leases, is hereby approved.

2.      Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are each hereby authorized to assume, sell and assign to each Proposed Assignee the Assigned Leases, pursuant to the terms and provisions of this Order and the Agreements attached hereto as **Exhibit B**, all of the terms of which are hereby approved.

3.      Pursuant to Sections 105(a), 363(b)(1) and (f) and 365(a) of the Bankruptcy Code, the Debtors and the LTA Landlords are authorized to enter into and perform under the Lease Termination Agreements attached hereto as **Exhibit C**, and to implement the Lease Termination Agreements and the transactions contemplated thereunder and hereunder.  The Lease Termination Agreements and all of the terms and conditions thereof, including, without limitation, the Debtors' termination of the relevant Leases and surrender of the leased premises, are hereby approved in all respects.

4.      In accordance with Section 363 of the Bankruptcy Code, effective as of the applicable Closing Dates or Termination Dates, the Leases shall be transferred free and clear of any leasehold mortgages, subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, interests, mechanics liens, bills, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances.

5.      Upon the entry of this Order and the occurrence of the Closing Date (as defined in the Assignment Agreements), each Proposed Assignee shall be deemed to have assumed and succeeded to the entirety of the Debtors' rights and obligations in each of the Assigned Leases which are due and owing from and after the Closing Date and shall have the rights of the tenant thereunder.

6.      Upon the Termination Date (as defined in the Lease Termination Agreements), the Debtors' rejection and termination of the relevant Leases shall occur without any further action required by the Debtors, and the Debtors shall surrender the premises to the LTA Landlords pursuant to the terms of the Lease Termination Agreements, including turnover of the keys and access codes (or written confirmation that the LTA Landlords are authorized to change the locks).

7.      Upon entry of this Order and the occurrence of the Closing Date or Termination Date, as applicable, each Buyer is a good faith purchaser and shall be entitled to the protections of Bankruptcy Code Section 363(m).

8.      Pursuant to Section 365(b)(l) of the Bankruptcy Code, to the extent a Cure Cost is owed to a Counterparty, the applicable Cure Cost shall be promptly paid by the Debtors. Any objection of any Counterparty to the assumption or assignment or transfer of any Assigned Leases, any Cure Cost, or seeking further adequate assurance of future performance other than that provided in the relevant Agreements, to the extent not otherwise resolved by agreement,

contemplated to be heard after the Lease Sale Hearing, or by separate order of this Court, is hereby overruled. There shall be no accelerations, assignment fees, increases, or any other fees charged to any Buyer or the Debtors as a result of the assumption and assignment of the Assigned Leases. Upon remittance of the Cure Costs by the Debtors to the Landlords pursuant to the terms of this Order, the Landlords for the Assigned Leases shall be barred from asserting any additional cure amounts or other claims with respect to the Assigned Leases. For the avoidance of doubt, the counterparties (including without limitation, the Landlords) to the Assigned Leases shall be forever (i) barred from objecting to the applicable Cure Cost and from asserting any additional cure or other amounts with respect to the Assigned Leases, and the Debtors and Assignee shall be entitled to rely solely upon the Cure Cost set forth above and (ii) barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, the Buyer or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the Leases, or that there is any objection or defense to the assumption or assumption and assignment of the Leases. On and after the Closing Date, each Proposed Assignee shall be responsible for paying (and shall be entitled to receive any credits for) all amounts outstanding under the Assigned Leases due on or after the Closing Date.

9.      The proceeds of the Lease Sales shall be payable in accordance with the DIP Orders and the Approved Budget (as defined in the DIP Orders).

10.     All personal property and furniture, fixtures and equipment ("**FF&E**") remaining in the stores subject to the Leases on or after the Closing Date or Termination Date, as applicable, shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as of the Closing Date or Termination Date, as applicable.  Each Buyer may, in its sole discretion and without further order of this Court, utilize and/or dispose of such property without notice or liability to the Debtors

or any consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition; provided, however, that the DIP Lenders and the Debtors' pre-petition secured lenders consent to the release of their interests (if any) in, and liens on (if any), the FF&E, and to the Buyers' disposition of such FF&E, and any such interests and liens are hereby released; provided, further, that the Debtors are not aware of any other parties with interests in the FF&E.

11.     Any party which did not object to the Lease Auction, Cure Cost & Lease Sale Hearing Notice within the time set forth in the notice is deemed to consent to the Debtors' assumption and assignment or termination of the Assigned Leases or Terminated Leases, respectively, and the satisfaction of the requirements of Section 365 of the Bankruptcy Code. Absent further order of the Court, in accordance with the Notice of Abandonment, any party served with the Notice of Abandonment that did not timely object to abandonment in accordance with objection procedures set forth in such notice is deemed to have consented to the abandonment of the Debtors' personal property remaining on the Lease Asset premises as of the effective date of the Leases Sale.  In accordance with the Notice of Disposal, any party served with the Notice of Disposal that did not timely object to disposal in accordance with objection procedures set forth in such notice is deemed to have consented to (i) the transfer to any Buyer of ownership of personal property remaining on the Lease Asset premises as of the effective date of the Lease Sales and (ii) allow the Debtors or any buyer to utilize and/or dispose of any personal property remaining on the premises of the Lease Assets without further Court order and without liability or further notice to any third party. Subject to paragraph 19 herein, the sale and assignment of the Assigned Leases, payment of the Cure Costs and the transfer of the furniture, fixtures and equipment referenced immediately above, as applicable, shall relieve the Debtors from any further liability pursuant to Section 365(k) of the Bankruptcy Code.

12.    Solely with respect to the transactions contemplated by this Order and the Agreements, and except as otherwise agreed between any Landlord and each Buyer, and except to the extent a Lease is terminated pursuant to this Order (in which case such provisions are no longer of any force and effect in any event), nothing in this Order shall be deemed to annul or vary any provision of the Leases *other than* the following provisions (the "**Unenforceable Provisions**"):

a.    a provision prohibiting each Buyer's Intended Use of the premises, as defined in each Agreement;

b.    a provision unreasonably prohibiting necessary alterations to the premises or signage required to convert the premises to each Buyer's Intended Use, as defined in each Agreement; provided such alterations are deemed necessary by the Buyer to conform such store to the Buyer's typical retail store consistent with the Buyer's Intended Use of the premises, as defined in each Agreement;

c.    a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Leases or an increase in rent or other penalty by reason of the Debtors' cessation of retail operations before the assignment, and/or any delay by any Buyer in reestablishing retail operations after the assignment, to the extent any such provision does not permit any Buyer to "go dark" until the later of: (i) one hundred twenty (120) days after the Closing Date (as defined in the Agreement) of the assignment of the Leases, or such later time, when the particular facts and circumstances of a given store warrant additional time, which circumstances shall include, without limitation, the age and condition of the shopping center, the ability to obtain any permits and documents necessary to complete construction, the location of the premises in the shopping center, the shape of the premises to be assigned, the demographics of the shopping center's location and the overall quality of the shopping center and

its existing tenants or (ii) the Going Dark Period (as defined in each Agreement) listed in each applicable Agreement;

       d.     a provision conditioning assignment on Landlord consent, or requiring payment to the Landlord as the price of assignment, or granting Landlord the right to recapture the leased premises following the assignment;

       e.     a provision effecting forfeiture or a modification of any of a Buyer's rights or obligations presently in effect under the Leases upon an assignment by the Debtors of the Leases;

       f.     a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

       g.     a provision restricting a Buyer's ability to place reasonable signage on the premises; provided such signage is deemed necessary by the Buyer to conform such store to the Buyer's typical retail store consistent with the Buyer's Intended Use of the premises, as defined in each Agreement;

       h.     a provision requiring the use of a certain tradename;

       i.     a provision regarding minimum sales revenues required to be satisfied at the premises covered by the Leases; and

       j.     any radius provisions set forth in the Leases to the extent applicable to any existing stores of each Buyer located near the Debtors' premises (but such radius provisions shall at all times apply to any new stores which might be opened by each Buyer in the area of Debtors' premises after Closing).

     13.    Solely with respect to the transactions contemplated by this Order and the Agreements, none of the Unenforceable Provisions shall apply to any Proposed Assignee in any

respect and, without limiting the generality of the foregoing, no violation by the Debtors or Proposed Assignees of the Unenforceable Provisions shall constitute an event of default under any of the Leases.

14.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and Buyers are authorized to close the Lease Sales set forth in the Agreements immediately upon entry of this Order. Time is of the essence in closing the Lease Sale transactions referenced herein, and the Debtors and Buyers intend to close each of the Lease Sale transactions as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

15.     Upon entry of this Order, this Order and the findings hereunder shall be binding upon all parties to the Leases and the Agreements.

16.     Upon the entry of this Order and the occurrence of the Closing Date, the Landlords of the Assigned Leases shall accept and honor the assignment of the Assigned Leases to the Proposed Assignees.

17.     The Landlords for the Assigned Leases shall cooperate and expeditiously execute and deliver, within ten (10) days of any reasonable requests of any Buyer and at no cost to such Landlords, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the properties as contemplated under a relevant Agreement.

18.     Notwithstanding anything to the contrary in the Fourth Interim Order, this Order, any of the Agreements, any side letters, or the Lease Sale Procedures, none of the Debtors'

insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of the applicable Buyer and applicable insurer and/or third-party administrator.

19.     Notwithstanding anything to the contrary in the Fourth Interim Order, this Order, the Lease Sale Procedures, or any Lease Termination Agreement, the Landlords do not release, and are not releasing, the Debtors from any claims for indemnification under the terminated Leases or the Assigned Leases, as applicable, arising from any third party claims that may be asserted against the Landlords for occurrences taking place prior to the Termination Dates or Closing Dates, as applicable. Nothing in this Order or the applicable Agreements shall impair or prejudice an applicable landlord's rights with respect to the Debtors' available insurance coverage with respect to third-party claims asserted in connection with the Debtors' use and occupancy of the applicable premises subject to the Assigned Leases or Terminated Leases with regard to events that occurred prior to the Closing Date or Termination Date, as applicable.

20.     This Court shall retain jurisdiction (i) to construe and determine any disputes under this Order, (ii) to enforce and implement the terms and provisions of each Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, and (iii) to resolve any disputes arising under or related to the Lease Sales (but all Landlord/tenant disputes arising subsequent to the Closing Date or Termination Date, as applicable, which do not involve the Lease Sales, this Order or the Debtors shall not be subject to the jurisdiction of this Court).

21.     The Debtors and the Buyers are hereby authorized and directed to execute and deliver any and all documents, and to do all things reasonably necessary, to effectuate the purposes

11

of this Order, to transfer the Debtors' interests in and to the Leases, in accordance with the terms of the Agreements, and to carry out the terms and conditions of such Agreements.

22.     The Buyers are not successors in interest to the Debtors (other than with respect to the Debtors' rights and obligations under the Assigned Leases first accruing after each Proposed Assignee takes assignment thereunder as provided for under the relevant Agreements), or their bankruptcy estates as a result of each Buyer taking title or possession of the Leases and the subject premises, and the Buyers are not assuming any liabilities or obligations of the Debtors or their bankruptcy estates, except as may be specifically provided for in the Agreements.

23.     This Order shall be effective and enforceable after its entry as provided by Bankruptcy Rule 7062.

24.     The *Objection of Boone Investment Group, LLC* ("**Boone**") to *Debtors' Fourth Notice of (A) Bid Deadline, (B) Sale Hearing, and (C) Potential Assumption and Assignment of Certain Unexpired Leases* [Dkt. No. 1288] (the "**Boone Objection**") is withdrawn as set forth herein.  On or before 7 business days from the entry of this Order, Ollie's shall pay Boone $24,000 (the "**Settlement Sum**") for the purpose of resolving the Claim of Lien on Real Property from Moore's Electrical & Mechanical Construction, Inc. referenced in the Boone Objection (the "**Moore's Electrical Lien**").  Boone shall have the sole obligation to obtain the release or satisfaction of record of the Moore's Electrical Lien.  For the avoidance of doubt, other than Ollie's payment of the Settlement Sum, neither the Debtors nor Ollie's shall have any obligations with respect to the Moore's Electrical Lien.  On or before 90 days from the entry of this Order, unless such time period shall be extended by the written agreement of Ollie's, Boone shall provide Ollie's with written evidence that the Moore's Electrical Lien has been released or satisfied of record.

25.     The *Limited Objection and Reservation of Rights of Premium Asset Management, Inc to the Assumption and Assignment of Lease Pursuant to the Lease Sale Procedures* [Dkt. No. 1337] (the "PAM Objection") is adjourned to the omnibus hearing scheduled to be held on January 21, 2025. Haverty Furniture Companies, Inc. ("**Havertys**") agrees to maintain its backup bid through January 21, 2025, pursuant to the terms agreed to with the Debtors. In the event that neither Aldi's Inc. nor Havertys consummates a purchase of the Debtors' lease located in Vero Beach, Florida (the "**Vero Beach Lease**") by January 31, 2025 and the Vero Beach Lease is rejected by the Debtors on or before January 31, 2025, PAM agrees to waive any hold the Debtors harmless for any costs (including but not limited to rent, any taxes, insurance and CAM) related to the Vero Beach Lease that accrue in January, 2025.

26.     The *Objection of 5620 Nolensville Pike, LLC to Proposed Assignment of Lease to Burlington Coat Factory Warehouse Corporation* [Dkt. No. 1346] and the *Ross Stores, Inc.'s Objection to Debtors' Fourth Notice of Successful Bidders with Respect to the Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* [Dkt. No. 1350] (the "Nashville Objections") are adjourned to the omnibus hearing scheduled to be held on January 21, 2025. 5620 Nolensville Pike, LLC agrees to waive and hold the Debtors and the Successful Bidder harmless for any costs (including but not limited to rent, any taxes, insurance and CAM) arising under the Nashville, TN lease that accrue in January, 2025.

27.     Any remaining objections to the assignment of the Leases or the termination of the Leases that have not been withdrawn, waived, adjourned, or settled, and all reservations of rights included in such objections, are overruled in all respects and denied.

28.     Any provision in the Leases regarding percentage rent to the extent of Debtors' sales prior to the Closing Date shall not be imputed against the Proposed Assignees provided that

each Proposed Assignee shall be liable for Percentage Rent for the prorated portion of calendar year 2024 remaining after the Closing Date for a partial calendar year as if the Term began on the Closing Date (and each Proposed Assignee shall not be liable to pay any Percentage Rent based upon sales that occurred prior to the Closing Date) and no Percentage Rent is due and owing by the Buyers for the period prior to the Closing Date.

29.     To the extent there is any inconsistency between the terms of this Order and the terms of the Agreements (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

30.     To the extent that any Buyer and Landlord enter into a side letter with respect to any Lease, such side letter shall govern with respect to rights and obligations of the Buyer and Landlord.  For the avoidance of doubt, no side letter shall modify the rights and obligations of any third party without such third party's consent.

31.     The failure to specifically include any particular provision of the Agreements or other related documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreements and all other related documents be authorized and approved in their entirety pursuant to this Order.

32.     The Agreements and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement is consistent with this Order and does not have any adverse effect on the Debtors' estates; *provided, further*, that the Debtors shall provide any such modification, amendment, or supplement to the Secured Parties, the applicable Landlord under the Lease and any official committee appointed in these Chapter 11 Cases no less than one (1) day prior to execution of such

modification, amendment, or supplement; *provided further,* that after Closing, the final versions of the Agreement any related agreements, documents or other instruments (as modified, amended or supplemented) shall be filed with the Court.

**EXHIBIT A**

| LEASE ASSET(S) | LEASE COUNTERPARTY | SUCCESSFUL BIDDER | TYPE OF AGREEMENT | PRICE[3] | CURE |
|---|---|---|---|---|---|
| #4025, 610 Las Tunas Dr., Arcadia, CA | RHET FLORIN, LLC, ROBHANA INVESTMENTS III, LLC and RH BIG LOTS, LLC | RHET FLORIN, LLC, ROBHANA INVESTMENTS III, LLC and RH BIG LOTS, LLC | Lease Termination | $148,963 | $73,963 |
| #4476, 14339 Clark Ave, Bellflower, CA | Bellflower Park, LP, a California Limited Partnership, as successor in interest to Bellflower Shopping Center, LLC | Bellflower Park, LP, a California Limited Partnership, as successor in interest to Bellflower Shopping Center, LLC | Lease Termination | $48,330 | $48,330 |
| #1227, 2601 Fort Campbell Blvd, Hopkinsville, KY | Core Park Plaza LLC | Core Park Plaza LLC | Lease Termination | $34,484 | $34,484 |
| #1990, 1293 Shreveport Barksdale Hwy, Shreveport, LA | Shreve City, LLC | Shreve City, LLC | Lease Termination | $13,750 | $13,750 |
| #5271, 23351 Eureka Rd., Taylor, MI | BIG TAMI Owner LLC | Aldi Inc. | Assumption & Assignment | $195,922 | $70,922 |
| #1972, 613 N Perkins Rd., Stillwater, OK | FC Robson Properties LLC | Ollie's Bargain Outlet, Inc. | Assumption & Assignment | $26,353 | $34,550 |
| #1809, 3472 Concord Rd., Aston, PA | Village Green Realty L.P. | Goodwill of Delaware and Delaware County, Inc. | Assumption & Assignment | $100,860 | $15,860 |
| #4756, 4101 Interstate Hwy 69 Access Rd., Corpus Christi, TX | Cielo Paso Parke Green, LP | Ollie's Bargain Outlet, Inc. | Assumption & Assignment | $26,353 | $22,523 |
| #4606, 1255 Town Square Dr., Fort Worth, TX | RPI Ridgmar Town Square, Ltd. | RPI Ridgmar Town Square, Ltd. | Lease Termination | $84,623 | $84,623 |

---

[3] The listed price is inclusive of cure waivers in instances of landlord termination bids.

| #4741, 4919 North St, Ste 101, Nacogdoches, TX | Nacogdoches MP LTD | Aldi Inc. | Assumption & Assignment | $144,824 | $19,824 |
|---|---|---|---|---|---|
| #4686, 1445 N Montebello Blvd., Montebello, CA | KIR Montebello LP | Hobby Lobby Stores, Inc. | Assumption & Assignment | $550,000 | $71,507 |
| #4602, 10251 Fairway Dr., Roseville CA | Ethan Conrad as successor in interest to Conrad Urata 4, LLC | Ethan Conrad as successor in interest to Conrad Urata 4, LLC | Lease Termination | $30,000 | $28,382 |
| #4030, 299 Borchard Dr., Ventura, CA | Jasmine Meadow Properties, L.P. | Jasmine Meadow Properties, L.P. | Lease Termination | $175,675 | $75,675 |
| #4671, 78 Frontage Rd., East Haven, CT | KDS Associates, LLC | Burlington Coat Factory Warehouse Corporation | Assumption & Assignment | $104,786 | $89,688 |
| #4225, 2100 SW 27th Ave, Miami, FL | Orchard View Properties, LLC | Orchard View Properties, LLC | Lease Termination | $176,044 | $76,044 |
| #5316, 3950 Venture Dr., Duluth, GA | Venture Partners, LLC | Venture Partners, LLC | Lease Termination | $95,656 | $20,656 |
| #4711, 4655 Canal Ave SW, Grandville, MI | ROF Grandville LLC | Burlington Coat Factory of Texas, Inc. | Assumption & Assignment | $71,771 | $21,771 |
| #1970, 5881 Suemandy Rd., Saint Peter, MO | The Grewe Limited Partnership | Ollie's Bargain Outlet, Inc. | Assumption & Assignment | $26,353 | $23,261 |
| #4687, 1851 Sunrise Hwy, Bayshore, NY | Kimco Landlords (an affiliate of Kimco Realty Corporation) | Burlington Coat Factory of Texas, Inc. | Assumption & Assignment | $286,311 | $236,311 |
| #1377, 400 Route 211 E Ste 28, Middletown, NY | BRE RETAIL RESIDUAL OWNER 1 LLC | BRE RETAIL RESIDUAL OWNER 1 LLC | Lease Termination | $40,078 | $40,078 |
| #5216, 5702 Nolensville Rd., Nashville, TN | 5620 Nolensville Pike, LLC | Burlington Coat Factory Warehouse Corporation | Assumption & Assignment | $300,000 | $23,708 |
| #4277, 1070 W Avenue K Ste A, Lancaster, CA | BIG LACA Owner LLC | Burlington Coat Factory of Texas, Inc. | Assumption & Assignment | $61,790 | $11,790 |
| #527, 1492 S Belcher Rd., Clearwater, FL | Imperial Square LLC | Ollie's Bargain Outlet, Inc. | Assumption & Assignment | $26,353 | $13,407 |

| | | | | | |
|---|---|---|---|---|---|
| #4701, 5055 W Sahara Ave, Las Vegas NV | WEST SAHARA EQUITIES LLC | Burlington Coat Factory Warehouse Corporation | Assumption & Assignment | $87,283 | $37,283 |
| #5350, 949 Church Rd., Cherry Hill, NJ | ILF - Cherry Hill, LLC and; ALS - Cherry Hill, LLC, predecessor in interest to Jay Birnbaum – Cherry Hill, LLC | ILF - Cherry Hill, LLC and; ALS - Cherry Hill, LLC, predecessor in interest to Jay Birnbaum – Cherry Hill, LLC | Lease Termination | $101,139 | $76,139 |
| #1684, 223 New Market Ctr, Boone, NC | Boone Investment Group LLC | Ollie's Bargain Outlet, Inc. | Assumption & Assignment | $26,353 | $24,265 |
| #4736, 3300 W Expressway 83 Unit 200, McAllen, TX | Palms Crossing Town Center, LLC | Burlington Coat Factory of Texas, L.P. | Assumption & Assignment | $293,226.71 | $243,226.71 |
| #1859, 1201 S Interstate 35 Ste 200, Round Rock, TX | Tri Marsh Realty, LLC | Tri Marsh Realty, LLC | Lease Termination | $59,748 | $34,748 |
| #556, 14948 N Florida Ave, Tampa, FL | B&B Cash Grocery Stores, Inc. | Ollie's Bargain Outlet, Inc. | Assumption & Assignment | $26,353 | $15,212 |
| #5275, 2020 Gunbarrel Rd Ste 186, Chattanooga, TN | Hamilton Village Station LLC | Hamilton Village Station LLC | Lease Termination | $21,304 | $21,304 |
| #4761, 3512 Lamar Ave, Paris, TX | Paris Towne Center, LLC | Ivan Smith Furniture Co., LLC | Assumption & Assignment | $205,000 | $9,503 |

3

## EXHIBIT B

**Assumption & Assignment Agreements**

**[TO COME]**

## EXHIBIT C

**Lease Termination Agreements**

**[TO COME]**