**<u>Exhibit 1</u>**

**Lease Sale Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 13 & 1198** |

### ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS-IN-POSSESSION TO TERMINATE OR ASSUME, ASSIGN AND SELL CERTAIN NON-RESIDENTIAL REAL PROPERTY LEASES

Upon the motion (the "**Motion**")[2] of Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for an order pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006 and 9014, and Local Rule 6004-1, (i) establishing procedures (the "**Lease Sale Procedures**") to sell or transfer certain unexpired leases of non-residential real property (each, as the same may have been amended from time to time a "**Lease**"); (ii) scheduling an auction to sell the leases (the "**Lease Sales**") detailed in the Lease Sale Procedures (the "**Lease Auction**") and a hearing to approve one or more Sales (the "**Lease Sale Hearing**"); and (iii) granting related relief [D.I. 13]; Court having entered an interim order granting the relief requested in the Motion on November 20, 2024 [D.I. 1198] (the "**Fourth Interim Order**"); and in

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

accordance with the Fourth Interim Order, the Debtors having conducted a Lease Auction on December 4, 2024; and the Debtors having filed a notice of Successful Bidder on December 5, 2024 [D.I. 1312] (the "**Post-Auction Notice**"); and the Debtors having filed a *Notice of Abandonment, Utilization and Disposal of Personal Property on Certain of the Debtors' Leased Premises Sold Pursuant to the December Wave Lease Sales* on November 25, 2024 [D.I. 1237] (the "**Notice of Abandonment**"); and the Debtors having filed a *Notice of Potential Utilization and Disposal of Personal Property on Certain of the Debtors' Leased Premises Sold Pursuant to the December Wave Lease Sales* on November 25, 2024 [D.I. 1238] (the "**Notice of Disposal**"); and the Debtors having determined, in the exercise of their business judgement and in consultation with their advisors and the Consultation Parties, that the offers listed on **Exhibit A** attached hereto are the highest and best offers for the respective Leases; and the Court having determined that the legal and factual bases set forth in the Motion and the *Declaration of Emilio Amendola of A&G Real Estate Partners, in Support of Order (I) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of all Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (II) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [D.I. 1375] establish just cause for the relief granted herein; and the Debtors having served notice of Motion, the Lease Sale Hearing, the Notice of Abandonment, Notice of Disposal and related filings; and after due deliberation and good and sufficient cause appearing therefor;

       **NOW, THEREFORE**, the Court hereby finds as follows:

       A.    After good and sufficient notice of the Motion having been provided and the occurrence of the Lease Auction on December 4, 2024, the purchase prices listed on **Exhibit A** are the highest and best offers received by the Debtors for the Leases listed therein.

B.      A reasonable opportunity to object or be heard regarding the Post-Auction Notice has been afforded to all interested persons and entities, including the landlords for the premises referenced on **Exhibit A** (the "**Landlords**").

C.      The Debtors have determined in the exercise of their reasonable business judgment that the Leases should be (i) sold and assigned to the parties listed on **Exhibit A** for which the type of agreement sought to be approved is an Assignment Agreement (the "**Proposed Assignees**," and the relevant Leases, the "**Assigned Leases**"), or (ii) terminated pursuant to agreements entered into with the parties listed on **Exhibit A** for which the type of agreement sought to be approved is a Lease Termination Agreement (the "**LTA Landlords**," and together with the Proposed Assignees, the "**Buyers**").

D.      The assumption, assignment and sale of the Leases to the Buyers, or the termination of the Leases, as applicable, pursuant to Sections 363 and 365 of the Bankruptcy Code is in the best interests of the Debtors, their estates and their creditors.

E.      The consideration to be paid by the Buyers pursuant to the Assumption and Assignment Agreements or Termination Agreements dated on or about December 31, 2024 (the "**Agreements**"), copies of which are attached as **Exhibit B** and **Exhibit C**, respectively, hereto, constitutes adequate and fair value for the Leases.

F.      Pursuant to Sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) of the Bankruptcy Code, to the extent required under the Lease Sale Procedures, the Buyers have provided adequate assurance of future performance under the Leases, as applicable.

G.      The assumption and assignment of the Assigned Leases to the Proposed Assignees is in compliance with Section 365(b)(3) of the Bankruptcy Code.

3

H.      The Agreements were negotiated and entered into in good faith, from arm's length bargaining positions, by the Debtors and the Buyers. Each Buyer is hereby found to be a good faith purchaser of the Leases and is found to be entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code.

I.       Through, *inter alia*, the Notice of Abandonment and the Notice of Disposal, the Debtors have provided sufficient notice to certain known and potentially interested third parties concerning the abandonment and disposal of personal property that will be left at the leased premises upon the Closing Dates or Termination Dates (as defined in the Agreements), as applicable.

## ACCORDINGLY, IT IS HEREBY ORDERED THAT

1.      The Lease Sale Procedures Motion, as it pertains to the assignment of the Leases to each Buyer, or the termination of the Leases, is hereby approved.

2.      Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are each hereby authorized to assume, sell and assign to each Proposed Assignee the Assigned Leases, pursuant to the terms and provisions of this Order and the Agreements attached hereto as **Exhibit B**, all of the terms of which are hereby approved.

3.      Pursuant to Sections 105(a), 363(b)(1) and (f) and 365(a) of the Bankruptcy Code, the Debtors and the LTA Landlords are authorized to enter into and perform under the Lease Termination Agreements attached hereto as **Exhibit C**, and to implement the Lease Termination Agreements and the transactions contemplated thereunder and hereunder.  The Lease Termination Agreements and all of the terms and conditions thereof, including, without limitation, the Debtors' termination of the relevant Leases and surrender of the leased premises, are hereby approved in all respects.

4.    In accordance with Section 363 of the Bankruptcy Code, effective as of the applicable Closing Dates or Termination Dates, the Leases shall be transferred free and clear of any leasehold mortgages, subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, interests, mechanics liens, bills, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances.

5.    Upon the entry of this Order and the occurrence of the Closing Date (as defined in the Assignment Agreements), each Proposed Assignee shall be deemed to have assumed and succeeded to the entirety of the Debtors' rights and obligations in each of the Assigned Leases which are due and owing from and after the Closing Date and shall have the rights of the tenant thereunder.

6.    Upon the Termination Date (as defined in the Lease Termination Agreements), the Debtors' rejection and termination of the relevant Leases shall occur without any further action required by the Debtors, and the Debtors shall surrender the premises to the LTA Landlords pursuant to the terms of the Lease Termination Agreements, including turnover of the keys and access codes (or written confirmation that the LTA Landlords are authorized to change the locks).

7.    Upon entry of this Order and the occurrence of the Closing Date or Termination Date, as applicable, each Buyer is a good faith purchaser and shall be entitled to the protections of Bankruptcy Code Section 363(m).

8.    Pursuant to Section 365(b)(l) of the Bankruptcy Code, to the extent a Cure Cost is owed to a Counterparty, the applicable Cure Cost shall be promptly paid by the Debtors. Any objection of any Counterparty to the assumption or assignment or transfer of any Assigned Leases, any Cure Cost, or seeking further adequate assurance of future performance other than that provided in the relevant Agreements, to the extent not otherwise resolved by agreement,

contemplated to be heard after the Lease Sale Hearing, or by separate order of this Court, is hereby overruled. There shall be no accelerations, assignment fees, increases, or any other fees charged to any Buyer or the Debtors as a result of the assumption and assignment of the Assigned Leases. Upon remittance of the Cure Costs by the Debtors to the Landlords pursuant to the terms of this Order, the Landlords for the Assigned Leases shall be barred from asserting any additional cure amounts or other claims with respect to the Assigned Leases. For the avoidance of doubt, the counterparties (including without limitation, the Landlords) to the Assigned Leases shall be forever (i) barred from objecting to the applicable Cure Cost and from asserting any additional cure or other amounts with respect to the Assigned Leases, and the Debtors and Assignee shall be entitled to rely solely upon the Cure Cost set forth above and (ii) barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, the Buyer or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the Leases, or that there is any objection or defense to the assumption or assumption and assignment of the Leases. On and after the Closing Date, each Proposed Assignee shall be responsible for paying (and shall be entitled to receive any credits for) all amounts outstanding under the Assigned Leases due on or after the Closing Date.

9.      The proceeds of the Lease Sales shall be payable in accordance with the DIP Orders and the Approved Budget (as defined in the DIP Orders).

10.     All personal property and furniture, fixtures and equipment ("**FF&E**") remaining in the stores subject to the Leases on or after the Closing Date or Termination Date, as applicable, shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as of the Closing Date or Termination Date, as applicable. Each Buyer may, in its sole discretion and without further order of this Court, utilize and/or dispose of such property without notice or liability to the Debtors

or any consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition; provided, however, that the DIP Lenders and the Debtors' pre-petition secured lenders consent to the release of their interests (if any) in, and liens on (if any), the FF&E, and to the Buyers' disposition of such FF&E, and any such interests and liens are hereby released; provided, further, that the Debtors are not aware of any other parties with interests in the FF&E.

11.    Any party which did not object to the Lease Auction, Cure Cost & Lease Sale Hearing Notice within the time set forth in the notice is deemed to consent to the Debtors' assumption and assignment or termination of the Assigned Leases or Terminated Leases, respectively, and the satisfaction of the requirements of Section 365 of the Bankruptcy Code. Absent further order of the Court, in accordance with the Notice of Abandonment, any party served with the Notice of Abandonment that did not timely object to abandonment in accordance with objection procedures set forth in such notice is deemed to have consented to the abandonment of the Debtors' personal property remaining on the Lease Asset premises as of the effective date of the Leases Sale.  In accordance with the Notice of Disposal, any party served with the Notice of Disposal that did not timely object to disposal in accordance with objection procedures set forth in such notice is deemed to have consented to (i) the transfer to any Buyer of ownership of personal property remaining on the Lease Asset premises as of the effective date of the Lease Sales and (ii) allow the Debtors or any buyer to utilize and/or dispose of any personal property remaining on the premises of the Lease Assets without further Court order and without liability or further notice to any third party. Subject to paragraph 19 herein, the sale and assignment of the Assigned Leases, payment of the Cure Costs and the transfer of the furniture, fixtures and equipment referenced immediately above, as applicable, shall relieve the Debtors from any further liability pursuant to Section 365(k) of the Bankruptcy Code.

12.     Solely with respect to the transactions contemplated by this Order and the Agreements, and except as otherwise agreed between any Landlord and each Buyer, and except to the extent a Lease is terminated pursuant to this Order (in which case such provisions are no longer of any force and effect in any event), nothing in this Order shall be deemed to annul or vary any provision of the Leases *other than* the following provisions (the "**Unenforceable Provisions**"):

a.     a provision prohibiting each Buyer's Intended Use of the premises, as defined in each Agreement;

b.     a provision unreasonably prohibiting necessary alterations to the premises or signage required to convert the premises to each Buyer's Intended Use, as defined in each Agreement; provided such alterations are deemed necessary by the Buyer to conform such store to the Buyer's typical retail store consistent with the Buyer's Intended Use of the premises, as defined in each Agreement;

c.     a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Leases or an increase in rent or other penalty by reason of the Debtors' cessation of retail operations before the assignment, and/or any delay by any Buyer in reestablishing retail operations after the assignment, to the extent any such provision does not permit any Buyer to "go dark" until the later of: (i) one hundred twenty (120) days after the Closing Date (as defined in the Agreement) of the assignment of the Leases, or such later time, when the particular facts and circumstances of a given store warrant additional time, which circumstances shall include, without limitation, the age and condition of the shopping center, the ability to obtain any permits and documents necessary to complete construction, the location of the premises in the shopping center, the shape of the premises to be assigned, the demographics of the shopping center's location and the overall quality of the shopping center and

its existing tenants or (ii) the Going Dark Period (as defined in each Agreement) listed in each applicable Agreement;

       d.    a provision conditioning assignment on Landlord consent, or requiring payment to the Landlord as the price of assignment, or granting Landlord the right to recapture the leased premises following the assignment;

       e.    a provision effecting forfeiture or a modification of any of a Buyer's rights or obligations presently in effect under the Leases upon an assignment by the Debtors of the Leases;

       f.    a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

       g.    a provision restricting a Buyer's ability to place reasonable signage on the premises; provided such signage is deemed necessary by the Buyer to conform such store to the Buyer's typical retail store consistent with the Buyer's Intended Use of the premises, as defined in each Agreement;

       h.    a provision requiring the use of a certain tradename;

       i.    a provision regarding minimum sales revenues required to be satisfied at the premises covered by the Leases; and

       j.    any radius provisions set forth in the Leases to the extent applicable to any existing stores of each Buyer located near the Debtors' premises (but such radius provisions shall at all times apply to any new stores which might be opened by each Buyer in the area of Debtors' premises after Closing).

       13.    Solely with respect to the transactions contemplated by this Order and the Agreements, none of the Unenforceable Provisions shall apply to any Proposed Assignee in any

respect and, without limiting the generality of the foregoing, no violation by the Debtors or Proposed Assignees of the Unenforceable Provisions shall constitute an event of default under any of the Leases.

14.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and Buyers are authorized to close the Lease Sales set forth in the Agreements immediately upon entry of this Order. Time is of the essence in closing the Lease Sale transactions referenced herein, and the Debtors and Buyers intend to close each of the Lease Sale transactions as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

15.     Upon entry of this Order, this Order and the findings hereunder shall be binding upon all parties to the Leases and the Agreements.

16.     Upon the entry of this Order and the occurrence of the Closing Date, the Landlords of the Assigned Leases shall accept and honor the assignment of the Assigned Leases to the Proposed Assignees.

17.     The Landlords for the Assigned Leases shall cooperate and expeditiously execute and deliver, within ten (10) days of any reasonable requests of any Buyer and at no cost to such Landlords, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the properties as contemplated under a relevant Agreement.

18.     Notwithstanding anything to the contrary in the Fourth Interim Order, this Order, any of the Agreements, any side letters, or the Lease Sale Procedures, none of the Debtors'

insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of the applicable Buyer and applicable insurer and/or third-party administrator.

19.     Notwithstanding anything to the contrary in the Fourth Interim Order, this Order, the Lease Sale Procedures, or any Lease Termination Agreement, the Landlords do not release, and are not releasing, the Debtors from any claims for indemnification under the terminated Leases or the Assigned Leases, as applicable, arising from any third party claims that may be asserted against the Landlords for occurrences taking place prior to the Termination Dates or Closing Dates, as applicable. Nothing in this Order or the applicable Agreements shall impair or prejudice an applicable landlord's rights with respect to the Debtors' available insurance coverage with respect to third-party claims asserted in connection with the Debtors' use and occupancy of the applicable premises subject to the Assigned Leases or Terminated Leases with regard to events that occurred prior to the Closing Date or Termination Date, as applicable.

20.     This Court shall retain jurisdiction (i) to construe and determine any disputes under this Order, (ii) to enforce and implement the terms and provisions of each Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, and (iii) to resolve any disputes arising under or related to the Lease Sales (but all Landlord/tenant disputes arising subsequent to the Closing Date or Termination Date, as applicable, which do not involve the Lease Sales, this Order or the Debtors shall not be subject to the jurisdiction of this Court).

21.     The Debtors and the Buyers are hereby authorized and directed to execute and deliver any and all documents, and to do all things reasonably necessary, to effectuate the purposes

of this Order, to transfer the Debtors' interests in and to the Leases, in accordance with the terms of the Agreements, and to carry out the terms and conditions of such Agreements.

22.     The Buyers are not successors in interest to the Debtors (other than with respect to the Debtors' rights and obligations under the Assigned Leases first accruing after each Proposed Assignee takes assignment thereunder as provided for under the relevant Agreements), or their bankruptcy estates as a result of each Buyer taking title or possession of the Leases and the subject premises, and the Buyers are not assuming any liabilities or obligations of the Debtors or their bankruptcy estates, except as may be specifically provided for in the Agreements.

23.     This Order shall be effective and enforceable after its entry as provided by Bankruptcy Rule 7062.

24.     The *Objection of Boone Investment Group, LLC* ("**Boone**") to *Debtors' Fourth Notice of (A) Bid Deadline, (B) Sale Hearing, and (C) Potential Assumption and Assignment of Certain Unexpired Leases* [Dkt. No. 1288] (the "**Boone Objection**") is withdrawn as set forth herein.  On or before 7 business days from the entry of this Order, Ollie's shall pay Boone $24,000 (the "**Settlement Sum**") for the purpose of resolving the Claim of Lien on Real Property from Moore's Electrical & Mechanical Construction, Inc. referenced in the Boone Objection (the "**Moore's Electrical Lien**").  Boone shall have the sole obligation to obtain the release or satisfaction of record of the Moore's Electrical Lien.  For the avoidance of doubt, other than Ollie's payment of the Settlement Sum, neither the Debtors nor Ollie's shall have any obligations with respect to the Moore's Electrical Lien.  On or before 90 days from the entry of this Order, unless such time period shall be extended by the written agreement of Ollie's, Boone shall provide Ollie's with written evidence that the Moore's Electrical Lien has been released or satisfied of record.

25.    The *Limited Objection and Reservation of Rights of Premium Asset Management, Inc to the Assumption and Assignment of Lease Pursuant to the Lease Sale Procedures* [Dkt. No. 1337] (the "<u>PAM Objection</u>") is adjourned to the omnibus hearing scheduled to be held on January 21, 2025. Haverty Furniture Companies, Inc. ("**Havertys**") agrees to maintain its backup bid through January 21, 2025, pursuant to the terms agreed to with the Debtors. In the event that neither Aldi's Inc. nor Havertys consummates a purchase of the Debtors' lease located in Vero Beach, Florida (the "**Vero Beach Lease**") by January 31, 2025 and the Vero Beach Lease is rejected by the Debtors on or before January 31, 2025, PAM agrees to waive any hold the Debtors harmless for any costs (including but not limited to rent, any taxes, insurance and CAM) related to the Vero Beach Lease that accrue in January, 2025.

26.    The *Objection of 5620 Nolensville Pike, LLC to Proposed Assignment of Lease to Burlington Coat Factory Warehouse Corporation* [Dkt. No. 1346] and the *Ross Stores, Inc.'s Objection to Debtors' Fourth Notice of Successful Bidders with Respect to the Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* [Dkt. No. 1350] (the "<u>Nashville Objections</u>") are adjourned to the omnibus hearing scheduled to be held <u>on January 21, 2025</u>. 5620 Nolensville Pike, LLC agrees to waive and hold the Debtors and the Successful Bidder harmless for any costs (including but not limited to rent, any taxes, insurance and CAM) arising under the Nashville, TN lease that accrue in January, 2025.

27.    Notwithstanding anything contained in this Order to the contrary, solely with respect to the sale to Burlington Coat Factory of Texas, Inc. ("**Burlington**"), Proposed Assignee of the Lease Asset covering the premises located at 1070 W Avenue K Ste A, Lancaster, CA (the "**Blue Owl Lease**"), Blue Owl, as landlord, and Burlington shall have <u>until December 27, 2024</u>, subject to further extension by prior written consent of the Debtors, Burlington and Blue Owl, to

13

enter into a side letter (the "**Blue Owl Side Letter**") with respect to the Blue Owl Lease. Notwithstanding anything to the contrary in the Assignment Agreement, the Closing Date for the Blue Owl Lease shall not occur until a notice of entry into the Blue Owl Side Letter is filed by the Debtors, Blue Owl or Burlington. If such notice is not filed by December 30, 2024, as set forth herein: (a) Burlington's bid price shall be reduced by $61,790 and, (b) the Blue Owl Lease will be deemed rejected as of December 31, 2024.

28.    Any remaining objections to the assignment of the Leases or the termination of the Leases that have not been withdrawn, waived, adjourned, or settled, and all reservations of rights included in such objections, are overruled in all respects and denied.

29.    Any provision in the Leases regarding percentage rent to the extent of Debtors' sales prior to the Closing Date shall not be imputed against the Proposed Assignees provided that each Proposed Assignee shall be liable for Percentage Rent for the prorated portion of calendar year 2024 remaining after the Closing Date for a partial calendar year as if the Term began on the Closing Date (and each Proposed Assignee shall not be liable to pay any Percentage Rent based upon sales that occurred prior to the Closing Date) and no Percentage Rent is due and owing by the Buyers for the period prior to the Closing Date.

30.    To the extent there is any inconsistency between the terms of this Order and the terms of the Agreements (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

31.    To the extent that any Buyer and Landlord enter into a side letter with respect to any Lease, such side letter shall govern with respect to rights and obligations of the Buyer and Landlord.  For the avoidance of doubt, no side letter shall modify the rights and obligations of any third party without such third party's consent.

32.     The failure to specifically include any particular provision of the Agreements or other related documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreements and all other related documents be authorized and approved in their entirety pursuant to this Order.

33.     The Agreements and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement is consistent with this Order and does not have any adverse effect on the Debtors' estates; *provided, further*, that the Debtors shall provide any such modification, amendment, or supplement to the Secured Parties, the applicable Landlord under the Lease and any official committee appointed in these Chapter 11 Cases no less than one (1) day prior to execution of such modification, amendment, or supplement; *provided further,* that after Closing, the final versions of the Agreement any related agreements, documents or other instruments (as modified, amended or supplemented) shall be filed with the Court.

**EXHIBIT A**

| Lease Asset(s) | Lease Counterparty | Successful Bidder | Type of Agreement | Price[3] | Cure |
|---|---|---|---|---|---|
| #4476, 14339 Clark Ave, Bellflower, CA | Bellflower Park, LP, a California Limited Partnership, as successor in interest to Bellflower Shopping Center, LLC | Bellflower Park, LP, a California Limited Partnership, as successor in interest to Bellflower Shopping Center, LLC | Lease Termination | $48,330 | $48,330 |
| #1227, 2601 Fort Campbell Blvd, Hopkinsville, KY | Core Park Plaza LLC | Core Park Plaza LLC | Lease Termination | $34,484 | $34,484 |
| #1990, 1293 Shreveport Barksdale Hwy, Shreveport, LA | Shreve City, LLC | Shreve City, LLC | Lease Termination | $13,750 | $13,750 |
| #5271, 23351 Eureka Rd., Taylor, MI | BIG TAMI Owner LLC | Aldi Inc. | Assumption & Assignment | $195,922 | $70,922 |
| #1972, 613 N Perkins Rd., Stillwater, OK | FC Robson Properties LLC | Ollie's Bargain Outlet, Inc. | Assumption & Assignment | $48,666.66 | $34,550 |
| #1809, 3472 Concord Rd., Aston, PA | Village Green Realty L.P. | Goodwill of Delaware and Delaware County, Inc. | Assumption & Assignment | $100,860 | $15,860 |
| #4756, 4101 Interstate Hwy 69 Access Rd., Corpus Christi, TX | Cielo Paso Parke Green, LP | Ollie's Bargain Outlet, Inc. | Assumption & Assignment | $48,666.66 | $31,414.31 |
| #4606, 1255 Town Square Dr., Fort Worth, TX | RPI Ridgmar Town Square, Ltd. | RPI Ridgmar Town Square, Ltd. | Lease Termination | $84,623 | $84,623 |
| #4741, 4919 North St, Ste 101, Nacogdoches, TX | Nacogdoches MP LTD | Aldi Inc. | Assumption & Assignment | $144,824 | $19,824 |
| #4686, 1445 N Montebello Blvd., Montebello, CA | KIR Montebello LP | Hobby Lobby Stores, Inc. | Assumption & Assignment | $550,000 | $71,507 |

---

[3] The listed price is inclusive of cure waivers in instances of landlord termination bids.

| #4602, 10251 Fairway Dr., Roseville CA | Ethan Conrad as successor in interest to Conrad Urata 4, LLC | Ethan Conrad as successor in interest to Conrad Urata 4, LLC | Lease Termination | $30,000 | $28,382 |
|---|---|---|---|---|---|
| #4030, 299 Borchard Dr., Ventura, CA | Jasmine Meadow Properties, L.P. | Jasmine Meadow Properties, L.P. | Lease Termination | $175,675 | $75,675 |
| #4671, 78 Frontage Rd., East Haven, CT | KDS Associates, LLC | Burlington Coat Factory Warehouse Corporation | Assumption & Assignment | $104,786 | $89,688 |
| #4225, 2100 SW 27th Ave, Miami, FL | Orchard View Properties, LLC | Orchard View Properties, LLC | Lease Termination | $176,044 | $76,044 |
| #5316, 3950 Venture Dr., Duluth, GA | Venture Partners, LLC | Venture Partners, LLC | Lease Termination | $95,656 | $20,656 |
| #4711, 4655 Canal Ave SW, Grandville, MI | ROF Grandville LLC | Burlington Coat Factory of Texas, Inc. | Assumption & Assignment | $71,771 | $21,771 |
| #1970, 5881 Suemandy Rd., Saint Peter, MO | The Grewe Limited Partnership | Ollie's Bargain Outlet, Inc. | Assumption & Assignment | $48,666.67 | $23,261 |
| #4687, 1851 Sunrise Hwy, Bayshore, NY | Kimco Landlords (an affiliate of Kimco Realty Corporation) | Burlington Coat Factory of Texas, Inc. | Assumption & Assignment | $286,311 | $236,311 |
| #1377, 400 Route 211 E Ste 28, Middletown, NY | BRE RETAIL RESIDUAL OWNER 1 LLC | BRE RETAIL RESIDUAL OWNER 1 LLC | Lease Termination | $40,078 | $40,078 |
| #4277, 1070 W Avenue K Ste A, Lancaster, CA | BIG LACA Owner LLC | Burlington Coat Factory of Texas, Inc. | Assumption & Assignment | $61,790 | $11,790 |
| #527, 1492 S Belcher Rd., Clearwater, FL | Imperial Square LLC | Ollie's Bargain Outlet, Inc. | Assumption & Assignment | $48,666.67 | $13,407 |
| #4701, 5055 W Sahara Ave, Las Vegas NV | WEST SAHARA EQUITIES LLC | Burlington Coat Factory Warehouse Corporation | Assumption & Assignment | $87,283 | $37,283 |
| #5350, 949 Church Rd., Cherry Hill, NJ | ILF - Cherry Hill, LLC and; ALS - Cherry Hill, LLC, predecessor in interest to Jay | ILF - Cherry Hill, LLC and; ALS - Cherry Hill, LLC, predecessor in interest to Jay | Lease Termination | $101,139 | $76,139 |

2

| | Birnbaum – Cherry Hill, LLC | Birnbaum – Cherry Hill, LLC | | | |
|---|---|---|---|---|---|
| #1684, 223 New Market Ctr, Boone, NC | Boone Investment Group LLC | Ollie's Bargain Outlet, Inc. | Assumption & Assignment | $48,666.67 | $24,265 |
| #4736, 3300 W Expressway 83 Unit 200, McAllen, TX | Palms Crossing Town Center, LLC | Burlington Coat Factory of Texas, L.P. | Assumption & Assignment | $293,226.71 | $243,226.71 |
| #1859, 1201 S Interstate 35 Ste 200, Round Rock, TX | Tri Marsh Realty, LLC | Tri Marsh Realty, LLC | Lease Termination | $59,748 | $34,748 |
| #556, 14948 N Florida Ave, Tampa, FL | B&B Cash Grocery Stores, Inc. | Ollie's Bargain Outlet, Inc. | Assumption & Assignment | $48,666.67 | $15,212 |
| #5275, 2020 Gunbarrel Rd Ste 186, Chattanooga, TN | Hamilton Village Station LLC | Hamilton Village Station LLC | Lease Termination | $21,304 | $21,304 |
| #4761, 3512 Lamar Ave, Paris, TX | Paris Towne Center, LLC | Ivan Smith Furniture Co., LLC | Assumption & Assignment | $205,000 | $9,503 |

**<u>EXHIBIT B</u>**

**Assumption & Assignment Agreements**

**ASSUMPTION AND ASSIGNMENT AGREEMENT**

This ASSUMPTION AND ASSIGNMENT AGREEMENT (the "**Agreement**"), dated as of [    ], 2024, is by and between _____ ("**Assignor**") and _Ivan Smith Furniture_ ("**Assignee**" and together with Assignor, collectively, the "**Parties**" and each a "**Party**"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

**RECITALS**

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), jointly administered under case *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "**Chapter 11 Cases**"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto (the "**Assigned Asset(s)**" or the "**Lease(s)**") with respect to the premises set forth on Schedule A (the "**Premises**"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "**Lease Sale Procedures**") subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

**AGREEMENT**

1.      Assignment and Assumption.

(a)      Effective as of the date the Bankruptcy Court enters an order of record pursuant to 11 U.S.C. 363(b) and 365 approving the assumption and assignment contemplated by this Agreement (the "Closing Date"), and upon payment of the Purchase Price as set forth below, Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s) free and clear (subject to this Agreements express terms regarding the assumption/cure of certain liabilities) of leasehold mortgages (if any), subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, mechanics liens, bills, interests, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances (collectively, the "**Interests**").

(b)      No later than the Closing Date, Assignor shall surrender the Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written

confirmation that Assignee is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Assignee.

(c)    Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset(s) which come due after the date hereof. Assignor shall be barred from asserting any additional cure costs or other claims, with respect to the Assigned Asset(s) that came due on or before the Closing Date.

2.    <u>Payment of Purchase Price</u>. Assignee shall, on the Closing Date or the immediately following business day if the Court Order is entered of record after 3:00PM ET, deliver the purchase price for the Assigned Asset(s) in the amount of $205,000.00 (net of any previously paid deposit amounts) (the "**Purchase Price**") in immediately available funds wired to the account specified by Assignor. The Purchase Price is inclusive of any cure amounts that may be owed as a result of the assumption of any lease(s) in connection with this Agreement.

3.    <u>No Further Liability of Assignor</u>. Except as provided for herein, from and after the date hereof, Assignor shall have no further obligations and duties with respect to the Assigned Asset(s).

4.    <u>Further Assurances</u>. At any time and from time to time after the Closing Date, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

5.    <u>Representations</u>. Assignor represents and warrants to Assignee that it has fully complied with any requests from Assignee to provide access to all known leases and amendments documents relating to the Assigned Asset(s).

6.    <u>"As Is Where Is" Transaction</u>. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s) except as otherwise expressly provided herein. Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s). Assignee further acknowledges that the Assignee has conducted (or has had an opportunity to conduct) an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

7.    <u>Abandonment</u>. Subject to Court approval, upon the Closing Date, any personal property remaining at the premises is deemed abandoned and Assignee is free to dispose of or

2

utilize any personal property without further notice or liability to the Debtor or any consenting third parties.

8.    <u>Compliance With Law</u>. Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

9.    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

10.    <u>Jurisdiction.</u> The Parties consent to the jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

11.    <u>No Reliance</u>. Except as specifically set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

12.    <u>Construction</u>. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

13.    <u>Execution in Counterparts</u>. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

14.    <u>Miscellaneous</u>. Assignor acknowledges and agrees that Assignee shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Assignor with respect to this Agreement unless otherwise agreed by the Parties.

15.    <u>Intended Use & Going Dark</u>. Assignee intends to use the Premises to _Sell Furniture_ In order to facilitate such usage, Assignee may need to delay reestablishing retail operations for a period of time not to exceed __150 days__ (the "**Going Dark Period**").

3

*[Signatures appear on following page]*

4

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**[COMPANY]**

By_____
Name_____
Its_____

**ASSIGNEE:**
**[ASSIGNEE]**

By_____
Name_ Jonathan R. Smith
Its_ Member

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSUMPTION AND ASSIGNMENT AGREEMENT (the "**Agreement**"), dated as of December 18, 2024, is by and between Big Lots Stores, LLC, an Ohio limited liability company ("**Assignor**") and Goodwill of Delaware and Delaware County, Inc. ("**Assignee**" and together with Assignor, collectively, the "**Parties**" and each a "**Party**"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), jointly administered under case *In re Big Lots, Inc.,* Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "**Chapter 11 Cases**"); and

WHEREAS, pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "**Lease Sale Procedures**"), and subject to the entry of an order of the Court approving this Agreement pursuant to sections 363 and 365 of the Bankruptcy Code (an "**Approval Order**"), Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease listed on Schedule A attached hereto (the "**Assigned Asset**" or the "**Lease**") with respect to the premises set forth on Schedule A (the "**Premises**"), including all rights and benefits related thereto.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.    Assignment and Assumption.

(a)    Effective as of January 1, 2025 (the "**Closing Date**"), and to the extent the Bankruptcy Court has entered an Approval Order pursuant to 11 U.S.C. §§ 363(b) and 365 approving the assumption and assignment contemplated by this Agreement, and upon payment of the Purchase Price as set forth below, Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset free and clear (subject to this Agreement's express terms regarding the assumption/cure of certain liabilities) of leasehold mortgages (if any), subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, mechanics liens, bills, interests, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances (collectively, the "**Interests**").

(b)    No later than the Closing Date, Assignor shall surrender the Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written

confirmation that Assignee is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Assignee.

(c)    Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Lease that come due after the Closing Date. Assignor shall be barred from asserting any additional cure costs or other claims, with respect to the Lease that came due on or before the Closing Date.

2.    <u>Payment of Purchase Price</u>. Assignee shall, on the Closing Date or the immediately following business day, deliver the purchase price for the Assigned Asset in the amount of ONE HUNDRED THOUSAND EIGHT HUNDRED SIXTY AND NO/100 DOLLARS ($100,860.00), net of any previously paid deposit amounts (the "**Purchase Price**") in immediately available funds wired to the account specified by Assignor. The Purchase Price is inclusive of the cure amount of $15,860.00.  Notwithstanding anything to the contrary in this Agreement, in the event that any party objects to the proposed assumption and assignment of the Lease (an "**Objection**"), and in the event that any such Objection cannot be resolved to the satisfaction of the Assignee, the Assignee may, in its sole and exclusive discretion, terminate this Agreement by providing written notice to Assignor, which notice may be provided by email to Assignor's counsel.  Upon such termination, the Parties will have no further rights or obligations to each other related to the Lease or this Agreement.

3.    <u>No Further Liability of Assignor</u>. Except as provided for herein, from and after the Closing Date, Assignor shall have no further obligations and duties with respect to the Lease.

4.    <u>Further Assurances</u>. At any time and from time to time after the Closing Date, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Lease.

5.    <u>Representations</u>. Assignor represents and warrants to Assignee that it has fully complied with any requests from Assignee to provide access to all known leases and amendments documents relating to the Lease.

6.    <u>"As Is Where Is" Transaction</u>. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset except as otherwise expressly provided herein. Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset. Assignee further acknowledges that the Assignee has conducted (or has had an opportunity to conduct) an independent inspection and investigation of the physical condition of the Assigned Asset and all such other matters relating to or affecting the Assigned Asset as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset, Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Assigned Asset "AS IS" and "WHERE IS."

7.      <u>Abandonment</u>. Subject to Court approval, upon the Closing Date, any personal property remaining at the premises is deemed abandoned and Assignee is free to dispose of or utilize any personal property without further notice or liability to the Debtor or any consenting third parties.

8.      <u>Compliance With Law</u>. Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

9.      <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

10.     <u>Jurisdiction.</u> The Parties consent to the jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

11.     <u>No Reliance</u>. Except as specifically set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

12.     <u>Construction</u>. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

13.     <u>Execution in Counterparts</u>. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

14.     <u>Miscellaneous</u>. Assignor acknowledges and agrees that Assignee shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Assignor with respect to this Agreement unless otherwise agreed by the Parties.

15.     <u>Intended Use & Going Dark</u>. Assignee intends to use the Premises for the collection and processing of donations, the retail sale of secondhand goods or new goods through its thrift store, the provision of employment training, and other uses ancillary or accessory thereto. In order to facilitate such usage, Assignee may need to delay reestablishing retail operations for a

period of time not to exceed 120 days from the Closing Date, subject to events of force majeure (the "**Going Dark Period**").

[*Signatures appear on following page*]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**Big Lots Stores, LLC**

By_____
Name Ronald A. Robins Jr._____
Its Authorized Signatory_____

**ASSIGNEE:**
**Goodwill of Delaware and Delaware County, Inc.**

By_____
Name Colleen Morrone_____
Its President and CEO_____

**Schedule A to Assumption and Assignment Agreement**

**Description of Assigned Asset**

| Store Number | Address | Base Rent PSF | Lease Expiration Date | Options | Purchaser Entity |
|---|---|---|---|---|---|
| 1809 | 3742 Concord Road, Aston, PA | $6.50 | January 31, 2029 | 1 Five (5)-year option | Goodwill of Delaware and Delaware County |

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSUMPTION AND ASSIGNMENT AGREEMENT (the "**Agreement**"), dated as of December _____, 2024, is by and between **Big Lots Stores – PNS, LLC,** a California limited liability company ("**Assignor**") and **Hobby Lobby Stores, Inc.,** an Oklahoma corporation ("**Assignee**" and together with Assignor, collectively, the "**Parties**" and each a "**Party**"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), jointly administered under case *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "**Chapter 11 Cases**"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on <u>Schedule A</u> attached hereto (the "**Assigned Asset(s)**" or the "**Lease(s)**") with respect to the premises set forth on <u>Schedule A</u> (the "**Premises**"), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "**Lease Sale Procedures**") subject to approval by the Court in the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.      Assignment and Assumption.

(a)      Effective as of the date the Bankruptcy Court enters an order of record pursuant to 11 U.S.C. 363(b) and 365 approving the assumption and assignment contemplated by this Agreement (the "<u>Closing Date</u>"), and upon payment of the Purchase Price as set forth below, Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s) free and clear (subject to this Agreements express terms regarding the assumption/cure of certain liabilities) of leasehold mortgages (if any), subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, mechanics liens, bills, interests, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances (collectively, the "**Interests**").

(b)      No later than the Closing Date, Assignor shall surrender the Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written confirmation that Assignee is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Assignee.

(c)     Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset(s) which come due after the date hereof. Assignor shall be barred from asserting any additional cure costs or other claims, with respect to the Assigned Asset(s) that came due on or before the Closing Date.

2.     <u>Payment of Purchase Price</u>. Assignee shall, on the Closing Date or the immediately following business day if the Court Order is entered of record after 3:00PM ET, deliver the purchase price for the Assigned Asset(s) in the amount of FIVE HUNDRED FIFTY THOUSAND and NO/100 dollars ($550,000.00) (net of any previously paid deposit amounts) (the "**Purchase Price**") in immediately available funds wired to the account specified by Assignor. The Purchase Price is inclusive of any cure amounts that may be owed as a result of the assumption of any lease(s) in connection with this Agreement.

3.     <u>No Further Liability of Assignor</u>. Except as provided for herein, from and after the date hereof, Assignor shall have no further obligations and duties with respect to the Assigned Asset(s).

4.     <u>Further Assurances</u>. At any time and from time to time after the Closing Date, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

5.     <u>Representations</u>. Assignor represents and warrants to Assignee that it has fully complied with any requests from Assignee to provide access to all known leases and amendments documents relating to the Assigned Asset(s).

6.     <u>"As Is Where Is" Transaction</u>. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s) except as otherwise expressly provided herein. Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s). Assignee further acknowledges that the Assignee has conducted (or has had an opportunity to conduct) an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

7.     <u>Abandonment</u>. Subject to Court approval, upon the Closing Date, any personal property remaining at the premises is deemed abandoned and Assignee is free to dispose of or utilize any personal property without further notice or liability to the Debtor or any consenting third parties.

8.     <u>Compliance With Law</u>. Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

9.    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

10.    <u>Jurisdiction.</u> The Parties consent to the jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

11.    <u>No Reliance</u>. Except as specifically set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

12.    <u>Construction</u>. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

13.    <u>Execution in Counterparts</u>. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

14.    <u>Miscellaneous</u>. Assignor acknowledges and agrees that Assignee shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Assignor with respect to this Agreement unless otherwise agreed by the Parties.

15.    <u>Intended Use & Going Dark</u>. Assignee intends to use the Premises to operate a retail store for the sale of general merchandise, including without limitation art supplies, craft supplies, fabrics, photo frames, frames, framed art, wall art, and wall decor. In order to facilitate such usage, Assignee may need to delay reestablishing retail operations for a period of time not to exceed one (1) year (the "**Going Dark Period**").

*[Signatures appear on following page]*

3

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**

**Big Lots Stores – PNS, LLC**, a California limited liability company

By_____
Name_____
Its_____

**ASSIGNEE:**

**Hobby Lobby Stores, Inc.,** an Oklahoma corporation

By_____
  Randy Childers Senior Vice President

## <u>Schedule A to the Assumption and Assignment Agreement</u>

That certain Lease by and between Kir Montebello, LP and Big Lots Stores – PNS, LLC, a California limited liability company, dated June 12, 1993 for Store #4686 located at 1445 N. Montebello Blvd., Montebello, CA 90640, with 46,270 square feet of leasable space.

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSUMPTION AND ASSIGNMENT AGREEMENT (the "**Agreement**"), dated as of December 2, 2024, is by and between Big Lots Stores, Inc. for itself and on behalf of the respective affiliated debtors that are parties to the leases assumed and assigned pursuant to this Agreement, including, but not limited to, BLBO Tenant, LLC ("**Debtors**" or "**Assignor**") and Aldi Inc., an Illinois corporation, or its designee ("**Assignee**"). For the avoidance of doubt, all provisions of the applicable assigned contracts, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), jointly administered under case *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "**Chapter 11 Cases**");

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired leases listed on Schedule A attached hereto (the "**Leases**") with respect to the premises set forth on Schedule A (the "**Premises**"), pursuant to the terms and conditions of the *FOURTH INTERIM ORDER (I) ESTABLISHING PROCEDURES TO SELL CERTAIN LEASES, (II) APPROVING THE SALE OF CERTAIN LEASES AND (III) GRANTING RELATED RELIEF* [Doc 1198] (the "**Lease Sale Procedures**") subject to approval by the Court in the Chapter 11 Cases; and

WHEREAS, Assignee intends to occupy and use the Premises for operation of the Assignee's prototypical "Aldi Food Market" retail grocery store and other uses as are incidental to the operation of a retail grocery store (including, without limitation, the sale of beer, wine, and spirits) or for any other lawful retail purposes allowed by the Leases (the "**Intended Use**");

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.    Assignment and Assumption.  Effective as of the date the Bankruptcy Court enters an order of record pursuant to 11 U.S.C. 363(b) and 356 (the "**Sale Order**") approving the assumption and assignment contemplated by this Agreement (the "**Closing Date**"), and upon payment of the Purchase Price as set forth below,

(a)    Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Leases free and clear (subject to this Agreement's express terms regarding the assumption/cure of certain liabilities) of leasehold mortgages (if any), subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, mechanics liens, bills, interests, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances.

(b)    Except as may be agreed in writing by the landlord or as provided in the Sale Order, Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Leases; provided, however, the Assignee shall not be responsible for and does not

assume any responsibility for any personal injury or property damage claims that accrued or arose before the Closing Date.

(c)      No later than the Closing Date, Assignor shall surrender the Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written confirmation that Assignee is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Assignee.

2.      <u>Payment of Purchase Price</u>.  Assignee shall, on the Closing Date, deliver the purchase price for the Leases in the amount of $340,746.00 (net of any previously paid deposit amounts) (the "**Purchase Price**") in immediately available funds wired to the account specified by Assignor. The Purchase Price is inclusive of any cure amounts that may be owed as a result of the assumption of the Lease in connection with this Agreement. Assignee's obligation to deliver the Purchase Price is conditioned upon Assignor first surrendering and delivering possession of the Premises to Assignee in accordance with section 1 of this Agreement. To the extent Assignor has already paid rent and/or other charges due and owing under the respective Leases for the month in which the Closing Date occurs or for subsequent months, Assignee and Assignor shall adjust on a per diem basis for the same upon the Closing Date. Except as otherwise agreed by Assignee in writing, Assignee shall not be responsible for payment of rent and other charges that first come due pursuant to the respective Leases prior to the Closing Date.

3.      <u>Assumption of Liabilities</u>.  Assignee shall assume responsibility for any accrued but unbilled adjustments for common area maintenance, real estate taxes, and insurance; provided, however, Assignee shall not be responsible for and does not assume any liability or responsibility whatsoever for any personal injury or property damages claim that accrued or arose before the Closing Date. Assignor (and not Assignee) shall be obligated to pay all cure costs in connection with the assumption of the Leases.

4.      <u>Sale Order Conditions</u>.   The obligations of Assignee to consummate the closing of the transaction hereunder is expressly subject to and conditioned upon the entry of the Sale Order by the Bankruptcy Court under sections 363 and 365 of the Bankruptcy Code in form and substance reasonably satisfactory to Assignee.

5.      <u>No Further Liability of Assignor</u>.  From and after the Closing Date, except as provided herein or in the Sale Order, Assignor shall have no further obligations and duties with respect to the Leases.

6.      <u>Further Assurances</u>.  At any time and from time to time after the Closing Date, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Leases.

7.      "<u>As Is Where Is</u>" Transaction.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Leases.  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Leases.  Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Premises and all such other matters relating to or affecting the Leases as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Leases, Assignee is doing so based upon such independent inspections and investigations.  Accordingly, Assignee will accept the Premises "AS IS" and "WHERE IS."

8.      <u>Compliance With Law</u>.  Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section with respect to the Leases being conveyed by Assignor.

9.      <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

10.     <u>Jurisdiction.</u>  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

11.     <u>No Reliance</u>.  Except as specifically set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

12.     <u>Construction</u>.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

13.     <u>Execution in Counterparts</u>.  This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

14.     <u>Going Dark</u>. In order to facilitate  Assignee's Intended Use, Assignee shall be permitted to delay reestablishing retail operations for a period of time of at least 180 days (the "**Going Dark Period**").

15.     <u>Assignment Free and Clear of Alcohol Sale Restrictions</u>. It is a condition precedent to the assignment of the Leases contemplated herein that the assignment of the Leases must be made free and clear of any restrictions on the sale of alcoholic beverages contained in any of the Leases.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**Big Lots Stores, Inc.**

By_____
Name_____
Its_____


**ASSIGNEE:**
**Aldi Inc.**

By_____
Name_____
Its_____

**Schedule A**

**Description of Leases**

| LEASE | BID/PURCHASE PRICE |
|---|---|
| 1.   #4741 - 4919 North St., Nacogdoches, TX | $144,824.00 |
| 2.   #5271 - 23351 Eureka Rd., Taylor, MI | $195,922.00 |
| **Aggregate Purchase Price:** | $340,746.00 |

## ASSUMPTION AND ASSIGNMENT AGREEMENT

**THIS ASSUMPTION AND ASSIGNMENT AGREEMENT** (the "Agreement"), dated as of _____, 2024, is by and between **BIG LOTS, INC.**, an **Ohio** corporation and certain of its affiliates (collectively, the "Assignor") and **BURLINGTON COAT FACTORY WAREHOUSE CORPORATION**, a Florida corporation, or its designated affiliates reflected on **Schedule A** ("Assignee"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Assignor to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), jointly administered under case *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "**Chapter 11 Cases**"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto, with the term and address of each lease being as represented in the documents provided by Debtor's Broker of record, A&G Real Estate Partners, on Schedule A, including rights under those certain Subordination, Non-Disturbance and Recognition Agreements executed in connection with such leases (collectively referred to as either as the "Assigned Assets" or the "Leases" and individually an "Assigned Asset" or "Lease") with respect to the premises set forth on Schedule A (the "Premises), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "**Lease Sale Procedures**") subject to approval by the Court in the Chapter 11 Cases (the "Court Order").

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto (individually, "Party" or collectively, "Parties") agree as follows:

## AGREEMENT

1.    Assignment and Assumption. Effective as of the date the Bankruptcy Court enters an order of record pursuant to 11 U.S.C. 363(b) and 365 approving the assumption and assignment contemplated by this Agreement (the "Closing Date"), and upon payment of the Purchase Price as set forth below:

(a)    Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Assets.

(b)    No later than the Closing Date, Assignor shall surrender the Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written confirmation that Assignee is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Assignee.

(c)    Except as specifically set forth in this Agreement, Assignee hereby assumes and undertakes to pay, perform and discharge all of Assignor's obligations and duties with respect to the Assigned from and after the Closing Date.

2.      Payment of Purchase Price. Subject to the immediately following sentence, Assignee shall, on the Closing Date or the immediately following business day if the Court Order is entered of record after 3:00PM ET, deliver the purchase price for the Assigned Assets in the amount of **EIGHT HUNDRED SEVENTY-NINE THOUSAND SEVEN HUNDRED SIXTY-NINE DOLLARS AND 65/100 CENTS ($879,769.65)** (the "Purchase Price"), net of any previously paid deposits, in immediately available funds wired to the account specified by Assignor. Additionally, if Assignee and Debtor prevail in the objections filed of record at docket 1346 and 1350 with respect to Big Lots Store #5216 (Nashville, TN), then Assignee shall pay an additional **THREE HUNDRED THOUSAND DOLLARS ($300,000.00)** (the "Nashville TN Adjustment") on the immediately following business day after the latest to occur of the following: (i) the date a Court order authorizing the assumption and assignment of the Nashville, TN lease is entered of record; and (ii) the date any and all applicable appeals have been finalized and/or such appeal periods have expired; and (iii) the matter is settled between the relevant parties involved in the objections in a fully executed agreement; with such payment date being the effective date of the assignment of the Nashville TN lease. Further, Assignee, as back-up bidder, shall pay an additional **ONE HUNDRED NINETY FIVE THOUSAND DOLLARS ($195,000.00)** (the "Paris TX Adjustment") if the Ivan Smith Furniture, the successful bidder for Big Lots Store #4761 (Paris, TX) does not close on the Paris, TX lease. If Assignee were to become the ultimate winner of the Paris, TX lease, Assignee shall pay the Paris TX Adjustment on the immediately following business day after a Court order authorizing the assumption and assignment of the Paris, TX lease is entered of record, with such payment date being the effective date of the assignment of the Paris, TX lease. The Parties acknowledge that if the assumption and assignment of the Assigned Assets (the "Closing") does not occur on the date of the final Court Order the Lease(s) may thereafter be rejected in the bankruptcy proceeding referenced above.

3.      Assumption of Liabilities. All defaults or other obligations of Assignor subject to 11 U.S.C. 365(b) shall be cured by Assignor on or before the Closing Date or as soon thereafter as reasonably practicable (or as otherwise agreed with the counterparty to such Assigned Asset), and Assignee shall have no liability or obligation for such obligations or defaults. Assignee shall assume all obligations with respect to the Assigned Assets due from and after the Closing Date.

4.      No Further Liability of Assignor. From and after the Closing Date, Assignor shall have no further obligations and duties with respect to the Assigned Assets due after the Closing Date.

5.      Further Assurances. At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Assets.

6.      "As Is Where Is" Transaction. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Assets; *provided, however*, Assignor warrants and represents that it has fully complied with any requests from Assignee to provide access to all known leases and amendments documents relating to the Assigned Asset(s).

7.      Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

8.      Jurisdiction. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to

this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

9.     No Reliance. Except as specifically set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

10.     Construction. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

11.     Execution in Counterparts. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All such counterparts, when so executed, shall be deemed to constitute one final agreement as if one document had been signed by all Parties to this Agreement. Each such counterpart, upon execution and delivery of all counterparts, shall be deemed a complete and original of this Agreement. The Parties hereby each agree that its authorized signatories may receive and review this Agreement via electronic record and may sign this Agreement via electronic digital signature (i.e., DocuSign or similar electronic signature technology), and the Parties may rely on such electronic digital signatures as if they are original signatures by each Party or duly authorized representatives of each Party, and delivery of an executed copy of this Agreement by facsimile or by other electronic means (.pdf) shall be legal and binding and shall have the same full force and effect as if an original executed copy of this Agreement had been delivered. No Party may raise the use of an image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of such document.

12.     Intended Use & Going Dark. Assignee intends to use the Premises for the operation of a Burlington retail store. In order to facilitate such usage, Assignee may need to delay reestablishing retail operations for a period of time not to exceed one hundred and eighty (180) days after receipt of applicable permits, subject to events of force majeure (the "**Going Dark Period**").

*[Signatures appear on following page]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

<div style="margin-left: 40%;">

**ASSIGNOR:**
**BIG LOTS, INC**.,
an Ohio corporation

By:_____
Name:
Title:

**ASSIGNEE:**
**BURLINGTON COAT FACTORY**
**WAREHOUSE CORPORATION**,
a Florida corporation

By:_____
Name:  Scott Ciocco
Title:  Senior Vice President, Real Estate - Legal
Federal I.D. No.:  22-1970303

</div>

## <u>Schedule A to the Assumption and Assignment Agreement</u>

### Description of Assigned Assets

| Store Number | Address | Base Rent PSF | Lease Expiration Date | Options | Purchaser Entity |
|---|---|---|---|---|---|
| 4671 | 78 Frontage Road East Haven, CT – **Round 5** | $9.50 | 01/31/27 | 5 + 5 | Burlington Coat Factory Warehouse Corporation |
| 4687 | 1851 Sunrise Way Bayshore, NY – **Round 5** | $7.72 | 01/31/28 | 5 + 5 + 5 | Burlington Coat Factory of Texas, Inc. |
| 4711 | 4655 Canal Avenue SW Grandville, MI – **Round 5** | $7.00 | 01/31/30 | 5 + 5 + 5 | Burlington Coat Factory of Texas, Inc. |
| 5216 | 5702 Nolensville Road Nashville, TN – **Round 5** | $8.00 | 01/31/29 | 5 + 5 | Burlington Coat Factory Warehouse Corporation |
| 4277 | 1070 W Avenue K, Suite A Lancaster, CA – **Round 6** | $9.96 | 08/31/43 | 5 + 5 + 4 | Burlington Coat Factory of Texas, Inc. |
| 4701 | 5055 W Sahara Avenue Las Vegas, NV – **Round 6** | $11.00 | 01/31/30 | 5 + 5 + 5 + 5 | Burlington Coat Factory Warehouse Corporation |
| 4736 | 3300 W Expressway 83 McAllen, TX – **Round 6** | $8.00 | 01/31/32 | 5 + 5 + 5 + 5 | Burlington Coat Factory of Texas, L.P. |
| 4761 | 3512 Lamar Avenue Paris, TX – **Round 7** | $2.50 | 01/31/33 | 5 + 5 + 5 | Burlington Coat Factory of Texas, L.P. **AS BACK-UP BIDDER** |

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSUMPTION AND ASSIGNMENT AGREEMENT (the "**Agreement**"), dated as of December __, 2024, is by and between Big Lots Stores, LLC, an Ohio limited liability company ("**Big Lots**"), Big Lots Stores-PNS, LLC, a California limited liability company (together with Big Lots, collectively, "**Assignor**"), and Ollie's Bargain Outlet, Inc., a Pennsylvania corporation or its designated affiliate ("**Assignee**" or "**Buyer**" and together with Assignor, collectively, the "**Parties**" and each a "**Party**"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), jointly administered under case *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "**Chapter 11 Cases**"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto (the "Assigned Asset(s)" or the "Lease(s)") with respect to the premises set forth on Schedule A (the "**Premises**"), pursuant to the terms and conditions of the *Fourth Interim Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [Docket No. 1198] (the "**Lease Sale Procedures**") in the Chapter 11 Cases under Sections 363 and 365 of the Bankruptcy Code and otherwise applicable bankruptcy law and rules, substantially in the form of that certain *Order Pursuant To Sections 363 And 365 Of The Bankruptcy Code Authorizing The Debtors-In-Possession To Terminate Or Assume, Assign And Sell Certain Non-Residential Real Property Leases* attached hereto as Exhibit 1 (the "**Order**").

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.      Assignment and Assumption.

(a)      Effective as of the date the Court enters an order of record pursuant to 11 U.S.C. 363(b) and 365 approving the assumption and assignment contemplated by this Agreement (the "Closing Date"), and upon payment of the Purchase Price as set forth below, Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset(s) free and clear (subject to this

Agreements express terms regarding the assumption/cure of certain liabilities) of leasehold mortgages (if any), subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, mechanics liens, bills, interests, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances (collectively, the "**Interests**").

      (b)     No later than the Closing Date, Assignor shall surrender the Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written confirmation that Assignee is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Assignee.

      (c)     Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Asset(s) which come due after the date hereof. Assignor shall be barred from asserting any additional cure costs or other claims, with respect to the Assigned Asset(s) that came due on or before the Closing Date.

      2.     <u>Payment of Purchase Price</u>. Assignee shall, on the Closing Date or the immediately following business day if the Court Order is entered of record after 3:00PM ET, deliver the purchase price for the Assigned Asset(s) in the amount of TWO HUNDRED NINETY-TWO THOUSAND DOLLARS AND NO CENTS ($292,000.00) (net of any previously paid deposit amounts) (the "**Purchase Price**") in immediately available funds wired to the account specified by Assignor. The Purchase Price is inclusive of any cure amounts that may be owed as a result of the assumption of any lease(s) in connection with this Agreement.  Assignee has no obligation to purchase and assume, and Assignor has no right to sell and assign, less than all of the Assigned Asset(s), it being the express agreement and understanding of Assignee and Assignor that, as a material inducement to Assignee and Assignor to enter into this Agreement, Assignee has agreed to purchase and assume, and Assignor has agreed to sell and assign, all of the Assigned Asset(s), subject to and in accordance with the terms and conditions hereof. Notwithstanding anything to the contrary in this Agreement, in the event that any party objects to the proposed assumption and assignment of any Assigned Asset(s) other than an objection asserting any additional cure costs (an "**Objection**"), and in the event that any such Objection cannot be resolved to the satisfaction of the Assignee, the Assignee may, in its sole and exclusive discretion, terminate this Agreement solely with respect to such Assigned Asset(s) subject to such Objection by providing written notice to Assignor, which notice may be provided by email to Assignor's counsel (each a "**Partial Termination**") and, upon such Partial Termination, the Parties will have no further rights or obligations to each other relating to the Assigned Asset(s) subject to such Partial Termination and the Purchase Price may be reduced by an amount to be agreed upon in writing by Assignee and Assignor to address any Partial Termination hereunder as to any Lease(s) (such agreement, an "**Adjustment Agreement**").

      3.     <u>No Further Liability of Assignor</u>. Except as provided for herein, from and after the date hereof, Assignor shall have no further obligations and duties with respect to the Assigned Asset(s).

4.     <u>Further Assurances</u>. At any time and from time to time after the Closing Date, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset(s).

5.     <u>Representations</u>. Assignor represents and warrants to Assignee that it has fully complied with any requests from Assignee to provide access to all known leases and amendments documents relating to the Assigned Asset(s).

6.     <u>"As Is Where Is" Transaction</u>. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset(s) except as otherwise expressly provided herein. Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset(s). Assignee further acknowledges that the Assignee has conducted (or has had an opportunity to conduct) an independent inspection and investigation of the physical condition of the Assigned Asset(s) and all such other matters relating to or affecting the Assigned Asset(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset(s), Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Assigned Asset(s) "AS IS" and "WHERE IS."

7.     <u>Abandonment</u>. Subject to Court approval, upon the Closing Date, any personal property remaining at the premises is deemed abandoned and Assignee is free to dispose of or utilize any personal property without further notice or liability to the Debtor or any consenting third parties.

8.     <u>Compliance With Law</u>. Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

9.     <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

10.     <u>Jurisdiction.</u> The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

11.     <u>No Reliance</u>. Except as specifically set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment,

belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

12.    <u>Construction</u>. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

13.    <u>Execution in Counterparts</u>. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

14.    <u>Miscellaneous</u>. Assignor acknowledges and agrees that Assignee shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Assignor with respect to this Agreement unless otherwise agreed by the Parties.

15.    <u>Intended Use & Going Dark</u>. Assignee intends to use the Premises to operate Ollie's Bargain Outlet (including the retail sale of goods as sold in the majority of Assignee's other "Ollie's Bargain Outlet" stores) or, at Assignee's discretion, such other use or non-use as may be permitted under the Lease ("**Buyer's Intended Use**"). In order to facilitate such usage, Assignee may need to delay reestablishing retail operations for a period of time not to exceed one hundred-eighty (180) days from the Closing Date (the "**Going Dark Period**").

*[Signatures appear on following page]*

4

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

ASSIGNOR:

**BIG LOTS STORES, LLC**

By_____
Name: Ronald A. Robins Jr.
Its Authorized Signatory

ASSIGNOR:

**BIG LOTS STORES - PNS, LLC**

By_____
Name Ronald A. Robins Jr.
Its Authorized Signatory

ASSIGNEE:

**OLLIE'S BARGAIN OUTLET, INC.**

By_____
Name: James Comitale
Its  SVP, General Counsel

## Schedule A to the Assumption and Assignment Agreement

### Assigned Assets

| Store # | Premises Address | Debtor Entity/Assignor | Landlord Entity | Purchase Price |
|---------|------------------|------------------------|-----------------|----------------|
| 527 | 1492 S Belcher Rd Clearwater, FL 33764 | Big Lots Stores, LLC | Imperial Square LLC | |
| 556 | 14948 N Florida Ave Tampa, FL 33613 | Big Lots Stores, LLC | B&B Cash Grocery Stores, Inc. | |
| 1970 | 5881 Suemandy Rd Saint Peters, MO 63376 | Big Lots Stores, LLC | The Grewe Limited Partnership | |
| 1684 | 223 New Market Ctr Boone, NC 28607 | Big Lots Stores, LLC | Boone Investment Group LLC | $292,000.00 |
| 1972 | 613 N Perkins Rd Stillwater, OK 74075 | Big Lots Stores, LLC | FC Robson Properties LLC | |
| 4756 | 4101 Interstate Hwy 69 Access Rd Corpus Christi, TX 78410 | Big Lots Stores-PNS, LLC | Cielo Paso Parke Green, LP | |

**Exhibit 1**

**Proposed Order**

# **EXHIBIT C**

**Lease Termination Agreements**

## <u>LEASE TERMINATION AGREEMENT</u>

This Lease Termination Agreement (the **"Agreement"**) is made as of this 2nd day of December, 2024 between Hamilton Village Station LLC (**"Landlord"**) and Big Lots Stores, Inc. (**"Tenant"** or **"Debtor"**).

## <u>RECITALS</u>

WHEREAS, Landlord (or its predecessor-in-interest) and Tenant entered into a certain lease dated August 24, 2012 (the **"Lease"**), covering certain premises located at Hamilton Village Shopping Center, 2020 Gunbarrel Road, Suite 186, Chattanooga, TN 37421 (the **"Premises"**), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the **"Bankruptcy Code"**), in the United States Bankruptcy Court for the District of Delaware (the **"Bankruptcy Court"**);

WHEREAS, the Parties desire to enter into this Agreement, under which, among other things, Landlord is restored to possession of the Premises as of the Termination Date (as defined below), the parties release the other, and Landlord is able to dispose of any remaining equipment at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement (the **"Bankruptcy Court Order"**):

## <u>AGREEMENT</u>

1.      <u>Recitals</u>.  The Recitals are incorporated herein as if set forth at length.

2.      <u>Lease Termination</u>.  Subject to the Bankruptcy Court Order, the Lease is terminated effective December 31, 2024 (the **"Termination Date"**).  From and after the Termination Date, Tenant shall have no right, title or interest in or to the Premises pursuant to the Lease.  Subject to the Bankruptcy Court Order, no later than the Termination Date, Tenant shall surrender the Premises to Landlord, deliver possession thereof to Landlord and deliver all access codes and keys (or written confirmation that Landlord is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Landlord.  Tenant shall also provide utility account information to the Landlord upon request.  As of the date of execution of this Agreement, Tenant acknowledges and agrees that, from and after the date hereof, (a) Landlord shall have the right to immediately market the Premises for lease, and (b) Tenant shall not market the Lease and shall remove the Lease from any further sale process, and shall instruct its representatives, advisors and agents (including A&G Realty) accordingly.

3.      <u>Consideration</u>.  As consideration for this Agreement, and subject to satisfaction of the conditions precedent listed in paragraph 8 of this Agreement, Landlord shall (a) waive all

53420768.4

amounts outstanding and billed under the Lease as of the Petition Date, which includes Landlord's stub rent claim in the amount of $15,622.63, and (b) waive any claim for damages for the rejection of the Lease under 11 U.S.C. § 502(b)(6).

4.   Landlord Release of Tenant.  For valuable consideration, and the mutual covenants and agreements contained herein, effective from and after the Termination Date, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.  Notwithstanding the above, Landlord does not waive or release Tenant from the following: (i) any obligations arising under this Agreement; (ii) any Lease obligations that expressly survive the Termination Date; (iii) any indemnification obligations arising from third party claims asserted with respect to or arising from Tenant's use and occupancy of the Premises prior to the Termination Date for which Tenant had a duty to indemnify Landlord pursuant to the Lease (but only to the extent that such claims are covered by Tenant's insurance policies); and (iv) Landlord's exercise of any discovery rights that Landlord has against Tenant in connection with any civil litigation or arbitration proceedings involving a third party.

5.   Tenant Release of Landlord.  For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, avoidance actions under chapter 5 of the Bankruptcy Code, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

53420768.4

6.      As further consideration for this Release, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7.      <u>Extent of Release</u>.  The parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that the Releases set forth in this Agreement have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, the parties nevertheless hereby intend to release, discharge, and acquit the parties released herein from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.      <u>Conditions Precedent</u>.  As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)      Tenant has delivered possession of the Premises to Landlord;

Tenant has delivered to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks);

(b)      An order has been entered by the Bankruptcy Court approving the entirety of this Agreement.  Tenant shall use commercially reasonable efforts to seek and obtain Bankruptcy Court approval of this Agreement on an expedited basis such that the Termination Date shall occur no later than December 31, 2024.

9.      <u>Abandonment</u>.  Subject to Court approval, upon the Termination Date, any personal property remaining at the premises is deemed abandoned and Landlord is free to dispose of or utilize any personal property without further notice or liability to the Tenant or any consenting third parties.

10.      <u>Authority to Settle</u>.  Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.    <u>Entire Agreement</u>.  This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement.  Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.    <u>Advice of Counsel</u>.  Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations;  and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    <u>Attorneys' Fees</u>.  Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document.  Further, each of the parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.    <u>Governing Law</u>.  This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.    <u>Jurisdiction</u>.  The Parties consent to the jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.    <u>Miscellaneous</u>.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its

53420768.4

terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement.  Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(f)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel.  Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply.  Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**HAMILTON VILLAGE STATION LLC, a Delaware limited liability company,**

BY: Phillips Edison Grocery Center Operating Partnership I, L.P.,
a Delaware limited partnership, its sole member

BY: Phillips Edison Grocery Center OP GP I LLC,
a Delaware limited liability company, its general partner

By: _____ _____
Print Name: Joe Schlosser
Its: Executive Vice President, COO

**BIG LOTS STORES, INC.**

By: _____
Print Name: Ronald A. Robins, Jr. _____
Its: Authorized Signatory _____

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "**Agreement**") is made as of this ____ day of November, 2024 between Core Park Plaza LLC ("**Landlord**") and Big Lots Stores, LLC ("**Tenant**") or "**Debtor**").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated December 22, 2008 (the "**Lease**"), covering certain premises located at 2601 Fort Campbell Blvd, Hopkinsville, KY (the "**Premises**"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

WHEREAS, the Parties desire to enter into this Agreement, for among things, Landlord is restored to possession of the Premises as of the Termination Date, the parties release the other and Landlord is able to dispose of any remaining equipment at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.  Recitals.  The Recitals are incorporated herein as if set forth at length.

2.  Lease Termination.   Lease Termination. Subject to the Bankruptcy Court Order, the Lease is terminated effective [____], 2024 (the "**Termination Date**"). From and after the Termination Date, Tenant shall have no right, title or interest in or to the Premises pursuant to the Lease. Subject to the Bankruptcy Court Order, no later than the Termination Date, Tenant shall surrender the Premises to Landlord, deliver possession thereof to Landlord and deliver all access codes and keys (or written confirmation that Landlord is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Landlord. As of the date of execution of this Agreement, Tenant acknowledges and agrees that, from and after the date hereof, (a) Landlord shall have the right to immediately market the Premises for lease, and (b) Tenant shall not market the Lease and shall remove the Lease from any further sale process, and shall instruct its representatives, advisors and agents (including A&G Realty) accordingly.

3.  Consideration.  Landlord shall pay to Tenant $ 34,484.08 in the form of waiver of the $34,484.08 outstanding cure amount owed, (minus any deposits previously paid to Tenant) and waive all unpaid prepetition and post-petition amounts owed by Tenant to Landlord.

5

4.      Landlord Release of Tenant. For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

5.      Tenant Release of Landlord. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

6.      As further consideration for this Release, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7.      In this connection, the parties hereby agree, represent and warrant that they realize

and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that this Release has been negotiated and agreed upon in light of that realization and that, except as expressly limited above, it nevertheless hereby intends to release, discharge, and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.      Conditions Precedent. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)     Tenant has delivered possession of the Premises to Landlord;

(b)     Tenant has delivered to Landlord the keys and access codes to the Premises s (or written confirmation that Landlord is authorized to change the locks)

(c)     An order has been entered by the Bankruptcy Court approving the entirety of this Agreement. Tenant shall use commercially reasonable efforts to seek and obtain Bankruptcy Court approval of this Agreement on an expedited basis such that the Termination Date shall occur no later than [     ], 2024.

9.      Abandonment. Subject to Court approval, upon the Termination Date, any personal property remaining at the premises is deemed abandoned and Landlord is free to dispose of or utilize any personal property without further notice or liability to the Tenant or any consenting third parties

10.     Authority to Settle. Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby. Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.     Entire Agreement. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.     Advice of Counsel. Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be

represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    Attorneys' Fees. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.    Governing Law. This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.    Jurisdiction. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.    Miscellaneous.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)     Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)     Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(f)     The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel.  Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply.  Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**CORE PARK PLAZA LLC**

By: _____

Print Name: Drew Angel

Its: Manager

**BIG LOTS STORES, LLC**

By:_____

Print Name:_____

Its:_____

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "<u>Agreement</u>") is made as of this ___ day of _____, 2024 by and between BRE RETAIL RESIDUAL OWNER 1 LLC ("<u>Landlord</u>") BIG LOTS STORES, LLC ("<u>Tenant</u>" or "<u>Debtor</u>" and together with the Landlord, the "<u>Parties</u>").

## RECITALS

WHEREAS, Landlord's predecessor-in-interest and Tenant's predecessor-in-interest entered into a certain lease dated March 13, 1985  (as amended or modified from time to time, the "<u>Lease</u>"), covering certain premises located at 400 NY Route 211, Middletown, New York 10940 (and as more particularly described in the Lease, the "<u>Premises</u>"), in the shopping center commonly known as Wallkill Plaza (the "<u>Shopping Center</u>"), on the terms and conditions set forth therein;

WHEREAS, on September 9, 2024 (the "<u>Petition Date</u>"), Tenant, along with certain of its affiliated debtors and debtors in possession (the "<u>Debtors</u>"), has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "<u>Bankruptcy Code</u>"), in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>"), which case is being jointly administered under the case stylized as *In re Big Lots, Inc., et al.,* jointly administered as Case No. 24-11967 (JKS) (the "<u>Bankruptcy Case</u>");

WHEREAS, Landlord has prepetition and post-petition sums due and owing from Tenant, and the Parties desire to enter into this Agreement to, among other things, terminate the Lease and restore possession of the Premises to the Landlord as of the Termination Date (as defined below), provide for mutual releases as set forth in this Agreement, and grant Landlord the right to use or dispose of any furniture, fixtures, equipment or other personal property of the Tenant remaining at the Premises as of the Termination Date, in its sole and absolute discretion; and

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows, subject to the entry of an order of the Bankruptcy Court approving this Agreement (the "<u>Bankruptcy Court Order</u>"):

## AGREEMENT

1.    <u>Recitals</u>. The Recitals are incorporated herein as if set forth at length.

2.    <u>Lease Termination</u>. The Lease is terminated effective as of the later of (a) the Vacate Date (as defined below), which date shall not be later than December 31, 2024, unless otherwise agreed to in writing by Landlord, and (b) the date the Bankruptcy Court enters the Bankruptcy Court Order approving this Agreement (the "<u>Termination Date</u>").  On or prior to December 31, 2024, the Tenant shall surrender possession of the Premises to the Landlord, i.e., by written notice to the Landlord and the return, as applicable, of the keys, key codes and alarm codes for the Premises to the Landlord (or its agent) or by providing written confirmation that the Landlord is authorized to change the locks (the "<u>Vacate Date</u>"). Effective as of the Termination Date, Tenant shall: (a) surrender the Premises to Landlord and shall give, grant and surrender unto Landlord all of Tenant's right, title and interest in and to the Premises, including, without limitation, all of the Tenant's right, title and interest in, to and under the Lease, and Landlord hereby accepts such surrender; and (b) provide utility account information to the Landlord upon request. Each of the parties hereto acknowledges performance of all obligations of the other party under this Lease or otherwise in connection with the Premises through and including the Vacate Date, and agree that, from and after the Termination Date, the Lease, and all rights and obligations of the parties thereunder, shall be

1

deemed to have expired and terminated as fully and completely and with the same force and effect as if such date were the expiry date set forth in the Lease.

3.    <u>Consideration</u>. As consideration for this Agreement, Landlord shall (a) waive all amounts outstanding and billed under the Lease as of the Petition Date, which amount includes any rent attributable for the period from the Petition Date through September 30, 2024, and (b) waive any claim for damages for the rejection of the Lease under 11 U.S.C. § 502(b)(6) (the "<u>Consideration</u>").

4.    <u>Landlord Release of Tenant</u>. Conditioned upon (i) the entry of the Bankruptcy Court Order and (ii) Tenant's return of possession of the Premises to Landlord in accordance with this Agreement on or prior to the Termination Date, for valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates that have filed for relief under the Bankruptcy Code, and the respective past and present officers, directors, agents and employees, of each and all of the foregoing entities, and its and their respective successors, heirs and assigns, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, arising under the Lease each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease. Notwithstanding the above, Landlord does not waive or release Tenant from the following: (i) any obligations arising under this Termination Agreement; (ii) any Lease obligations that expressly survive the Termination Date; (iii) any indemnification obligations arising from third party claims asserted with respect to or arising from Tenant's use and occupancy of the Premises prior to the Termination Date for which Tenant had a duty to indemnify Landlord pursuant to the Lease (but only to the extent that such claims are covered by Tenant's insurance policies and on the condition that Landlord only seeks recovery from the insurer and only up to the insured amount); and (iv) Landlord's exercise of any discovery rights Landlord has against the Tenant in connection with any civil litigation or arbitration proceedings involving a third party; *provided, further,* Landlord does not waive or release Tenant from its obligations to pay when due all rent and other charges under the Lease from October 1, 2024 through the Vacate Date pursuant to Section 365(d)(3) of the Bankruptcy Code, including but not limited to that certain real estate tax billing dated October 21, 2024 in the amount of $108,834.69.

5.    <u>Tenant Release of Landlord</u>. Conditioned upon (i) the entry of the Bankruptcy Court Order, and (ii) Tenant's return of possession of the Premises to Landlord in accordance with this Agreement on or prior to the Termination Date, for valuable consideration, and the mutual covenants and agreements contained herein, Tenant and its affiliated Debtors do hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth

herein at length, including, without limitation, any and all claims evidenced by the Lease, including the pursuit of any avoidance actions under Sections 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code against the Landlord, relating to or arising out of the Lease, this Agreement or the Premises. Notwithstanding the above, Tenant, the bankruptcy estate, and anyone eligible to make a claim by or through the Tenant and bankruptcy estate, including the Committee, does not waive or release Landlord from the following: (i) any obligations arising under this Agreement; (ii) any indemnifications obligations arising from third party claims asserted with respect to or arising from Landlord's obligations prior to the Termination Date for which Landlord had a duty to indemnify Tenant pursuant to the Lease (but only to the extent that such claims are covered by Landlord's insurance policies and on the condition that Tenant only seeks recovery from the insurer and only up to the insured amount); and (iii) Tenant's exercise of any discovery rights Tenant has against the Landlord in connection with any civil litigation or arbitration proceedings involving a third party.

6.      As further consideration for the releases, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7.      In connection with the releases, the parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that the mutual releases have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses. Notwithstanding the foregoing, the obligations of Tenant to defend, indemnify, and hold the Landlord harmless for claims or potential claims (including but not limited to: (i) any third-party claims for bodily injury, personal injury, or property damage relating to the Premises; and, (ii) claims asserted by contractors, subcontractors, materialmen, laborers or persons or entities entitled to assert mechanics' liens or similar claims for works of improvement at any of the Premises) shall survive termination of the Lease, and are not affected by the mutual releases contained in this Agreement.

8.      <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)      Tenant has delivered possession of the Premises to Landlord;

(b)      Tenant has delivered to Landlord any keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks);

(c)      The Bankruptcy Court Order has been entered by the Bankruptcy Court approving the entirety of this Agreement.

9.      Furniture, Fixtures and Equipment (FF&E). Subject to Bankruptcy Court approval, any FF&E remaining at the Premises after the Termination Date is deemed abandoned by the Debtors, and the Landlord or their managing agents are free to use or dispose of such FF&E without notice of any kind and in their sole and absolute discretion, and without further notice or liability to the Debtor or any other person or entity.

10.      Authority to Settle. Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby. Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.      Entire Agreement. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.      Advice of Counsel. Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.      Attorneys' Fees. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees from the other party.

14.      Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the parties to this Agreement agrees that scanned or digital signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.      Governing Law. This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.      Jurisdiction. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non

conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.    Miscellaneous.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commissions or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(f)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel. Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**BRE RETAIL RESIDUAL OWNER 1, LLC**

By: _____
Print Name:  David Gerstenhaber
Its:  Senior Vice President
December 2, 2024 | 9:43 AM EST


**BIG LOTS STORES, LLC**


By: _____
Print Name: _____
Its: _____

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "**Agreement**") is made as of this 31st day of December, 2024 between Orchard View Properties, LLC ("**Landlord**") and BLBO TENANT, LLC, ("**Tenant**") or ("**Debtor**").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated October 5, 2023 (the "**Lease**"), covering certain premises located at 2100 Southwest 27th Avenue, Miami, Florida 33145-3416, [STORE # 4225] (the "**Premises**"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

WHEREAS, the Parties desire to enter into this Agreement, for among things, Landlord is restored to possession of the Premises as of the Termination Date, the parties release the other and Landlord is able to dispose of any remaining equipment at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.      Recitals. The Recitals are incorporated herein as if set forth at length.

2.      Lease Termination.     The Lease is terminated effective upon vacating of Premises by Tenant [unknown date – estimated to be mid-October, 2024] (the "**Termination Date**").

3.      Consideration. Landlord shall pay to Tenant One Hundred Thousand Dollars and No Cents ($100,000.00).

4.      Landlord Release of Tenant. For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages,

5

costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

5.      <u>Tenant Release of Landlord</u>. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

6.      As further consideration for this Release, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7.      In this connection, the parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that this Release has been negotiated and agreed upon in light of that realization and that, except as expressly limited above, it nevertheless hereby intends to release, discharge, and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.    <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)    Tenant has delivered possession of the Premises to Landlord;

(b)    Tenant has delivered to Landlord the keys and access codes to the Premises;

(c)    An order has been entered by the Bankruptcy Court approving the entirety of this Agreement.

9.    <u>Furniture, Fixtures and Equipment (FF&E)</u>. Any FF&E remaining at the Premises after the Termination Date is deemed abandoned and the Landlord and their managing agents are free to dispose of the FF&E in their sole and absolute discretion without liability to the Debtor or any entity.

10.    <u>Authority to Settle</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.    <u>Entire Agreement</u>. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement.  Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.    <u>Advice of Counsel</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    <u>Attorneys' Fees</u>. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

7

14.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document.  Further, each of the parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.    <u>Governing Law.</u> This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.    <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.    <u>Miscellaneous</u>.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel.  Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply.  Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**[LANDLORD]**

By: _Jack Nourafshan_
Print Name: Jack Nourafshan
Its: Jack Nourafshan [Manager]

**[TENANT]**

By:_____
Print Name:_____
Its:_____

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "**Agreement**") is made as of this 3rd day of  December , 2024 between  Tri Marsh Realty LLC  "**Landlord**") and  Big Lots Stores Inc  ("**Tenant**") or "**Debtor**").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated  11/21/2003     (the "**Lease**"), covering certain premises located at  1201 s IH 35 # 200 Round Rock TTX 78664   (the "**Premises**"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

WHEREAS, the Parties desire to enter into this Agreement, for among things, Landlord is restored to possession of the Premises as of the Termination Date (as defined below), the parties release the other and Landlord is able to dispose of any remaining equipment at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement (the "**Bankruptcy Court Order**"):

## AGREEMENT

1.        Recitals.  The Recitals are incorporated herein as if set forth at length.

2.        Lease Termination.    Subject to the Bankruptcy Court Order, the Lease is terminated effective December 31, 2024 (the "**Termination Date**"). From and after the Termination Date, Tenant shall have no right, title or interest in or to the Premises pursuant to the Lease. Subject to the Bankruptcy Court Order, no later than the Termination Date, Tenant shall surrender the Premises to Landlord, deliver possession thereof to Landlord and deliver all access codes and keys (or written confirmation that Landlord is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Landlord. As of the date of execution of this Agreement, Tenant acknowledges and agrees that, from and after the date hereof, (a) Landlord shall have the right to immediately market the Premises for lease, and (b) Tenant shall not market the Lease, and shall remove the Lease from any further sale process, and shall instruct its representatives, advisors and agents (including A&G Realty) accordingly.

3.    <u>Consideration</u>.  Landlord shall pay to Tenant $25,000 (minus any deposits already paid to Tenant) and waive all unpaid prepetition and post-petition amounts owed by Tenant to Landlord.

4.    <u>Landlord Release of Tenant</u>. For valuable consideration, and the mutual covenants and agreements contained herein, effective from and after the Termination Date, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

5.    <u>Tenant Release of Landlord</u>. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, avoidance actions under chapter 5 of the Bankruptcy Code, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

6.    As further consideration for this Release, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7.      In this connection, the parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that this Release has been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.      <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)     Tenant has delivered possession of the Premises to Landlord;

(b)     Tenant has delivered to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks);

(c)     An order has been entered by the Bankruptcy Court approving the entirety of this Agreement. Tenant shall use commercially reasonable efforts to seek and obtain Bankruptcy Court approval of this Agreement on an expedited basis such that the Termination Date shall occur no later than December 31, 2024.

9.      <u>Abandonment</u>. Subject to Court approval, upon the Termination Date, any personal property remaining at the premises is deemed abandoned and Landlord is free to dispose of or utilize any personal property without further notice or liability to the Tenant or any third parties; provided that, the Tenant shall have fourteen (14) days after the Closing Date to remove any point-of-sale ("**POS**") systems from the Premises during which time the Landlord shall not utilize or dispose of any such POS systems and shall use commercially reasonable efforts to provide access to the Premises to Tenant to remove any such POS systems.

10.     <u>Authority to Settle</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby. Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

3

11.    <u>Entire Agreement</u>. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement.  Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.    <u>Advice of Counsel</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    <u>Attorneys' Fees</u>. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document.  Further, each of the parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.    <u>Governing Law.</u> This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.    <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

#99081943v2

17.    Miscellaneous.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement.  Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(f)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel.  Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply.  Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

#99081943v2

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**Tri Marsh Realty LLC**

By:_____ 12/3/24

Print Name: Bo Avery

Its: President

**Big Lots Stores LLC**

By:_____

Print Name:_____

Its:_____

# LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "**Agreement**") is made as of this 4th day of December, 2024 between Bellflower Park, LP, a California Limited Partnership, as successor in interest to Bellflower Shopping Center, LLC ("**Landlord**") and Big Lots Stores – PNS, LLC, a California limited liability company, formerly known as PNS Stores, Inc., a California corporation ("**Tenant**" or "**Debtor**").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated December 22, 2000, as amended by that certain First Lease Extension and Modification Agreement dated September 29, 2021 and that certain Second Lease Modification Agreement dated September 5, 2023 (the "**Lease**"), covering certain premises located at 14339 Clark Avenue, Bellflower, CA 90706 (the "**Premises**"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

WHEREAS, the Parties desire to enter into this Agreement, for, among other things, Landlord to be restored to possession of the Premises as of the Termination Date (as defined below), the parties to release one another, and Landlord to be able to dispose of any remaining equipment at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement (the "**Bankruptcy Court Order**"):

## AGREEMENT

1.      Recitals. The Recitals are incorporated herein as if set forth at length.

2.      Lease Termination.    Subject to the Bankruptcy Court Order, the Lease is terminated effective December 31, 2024 (the "**Termination Date**"). From and after the Termination Date, Tenant shall have no right, title or interest in or to the Premises pursuant to the Lease. Subject to the Bankruptcy Court Order, no later than the Termination Date, Tenant shall surrender the Premises to Landlord, deliver possession thereof to Landlord and deliver all access codes and keys (or written confirmation that Landlord is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Landlord. As of the date of execution of this Agreement, Tenant acknowledges and agrees that, from and after the date hereof, (a) Landlord shall have the right to immediately market the Premises for lease, and (b) Tenant shall

Doc ID: 35266d2a446161bd5323f359cca40f2d5ff1667c

not market the Lease, and shall remove the Lease from any further sale process, and shall instruct its representatives, advisors and agents (including A&G Realty) accordingly.

3.    <u>Consideration</u>.  Landlord shall pay to Tenant zero dollars and zero cents ($0.00) and waive all unpaid prepetition and post-petition amounts owed by Tenant to Landlord.

4.    <u>Landlord Release of Tenant</u>. For valuable consideration, and the mutual covenants and agreements contained herein, effective from and after the Termination Date, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, provided, however, that this release does not extend to any claims for breach of this Lease Termination Agreement.

5.    <u>Tenant Release of Landlord</u>. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, avoidance actions under chapter 5 of the Bankruptcy Code, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

6.    As further consideration for this Release, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights

#99081943v2

Doc ID: 35266d2a446161bd5323f359cca40f2d5ff1667c

and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7.      In this connection, the parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that this Release has been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.      <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)      Tenant has delivered possession of the Premises to Landlord;

(b)      Tenant has delivered to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks);

(c)      An order has been entered by the Bankruptcy Court approving the entirety of this Agreement. Tenant shall use commercially reasonable efforts to seek and obtain Bankruptcy Court approval of this Agreement on an expedited basis such that the Termination Date shall occur no later than December 31, 2024.

9.      <u>Abandonment</u>. Subject to Court approval, upon the Termination Date, any personal property remaining at the premises is deemed abandoned and Landlord is free to dispose of or utilize any personal property without further notice or liability to the Tenant or any third parties; provided that, the Tenant shall have fourteen (14) days after the Closing Date to remove any point-of-sale ("**POS**") systems from the Premises during which time the Landlord shall not utilize or dispose of any such POS systems and shall use commercially reasonable efforts to provide access to the Premises to Tenant to remove any such POS systems.

10.      <u>Authority to Settle</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action,

#99081943v2

or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.     <u>Entire Agreement</u>. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement.  Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.     <u>Advice of Counsel</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.     <u>Attorneys' Fees</u>. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.     <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document.  Further, each of the parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.     <u>Governing Law.</u> This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.     <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any

#99081943v2

Doc ID: 35266d2a446161bd5323f359cca40f2d5ff1667c

right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17. <u>Miscellaneous</u>.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(f)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel. Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

(g)    Through the Termination Date, Tenant will continue to secure the Premises and maintain any and all insurance coverages required by the Lease.

*[Signatures appear on following page]*

5

Doc ID: 35266d2a446161bd5323f359cca40f2d5ff1667c

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**BELLFLOWER PARK, LP**

By: _Morad Shophet_

Print Name: Morad Shophet, Manager of Bell Park Management, LLC, a Delaware limited company

Its: Sole General Partner

**BIG LOTS STORES – PNS, LLC**

By: _____

Print Name: _____

Its: _____

Doc ID: 35266d2a4461161bd5323f359cca40f2d5ff1667c

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "**Agreement**") is made as of this _____ day of December, 2024 between ILF - Cherry Hill, LLC and; ALS - Cherry Hill, LLC, predecessor in interest to Jay Birnbaum – Cherry Hill, LLC("**Landlord**") and Big Lots Stores, Inc. ("**Tenant**" or "**Debtor**").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated September 10, 2015, as amended by that certain First Amendment to Lease dated July 12, 2019 (herein, collectively referred to as the "**Lease**"), covering certain premises located at   989 Church Road, Cherry Hill, New Jersey 08002(the "**Premises**"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

WHEREAS, the Parties desire to enter into this Agreement, for among things, Landlord is restored to possession of the Premises as of the Termination Date (as defined below), the parties release the other and Landlord is able to dispose of any remaining equipment at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement (the "**Bankruptcy Court Order**"):

## AGREEMENT

1.      Recitals.  The Recitals are incorporated herein as if set forth at length.

2.      Lease Termination.  Subject to the Bankruptcy Court Order, the Lease is terminated effective December 31, 2024 (the "**Termination Date**").  From and after the Termination Date, Tenant shall have no right, title or interest in or to the Premises pursuant to the Lease.  Subject to the Bankruptcy Court Order, no later than the Termination Date, Tenant shall surrender the Premises to Landlord, deliver possession thereof to Landlord and deliver all access codes and keys (or written confirmation that Landlord is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Landlord.  As of the date of execution of this Agreement, Tenant acknowledges and agrees that, from and after the date hereof, (a) Landlord shall have the right to immediately market the Premises for lease, and (b) Tenant shall not market the Lease and shall remove the Lease from any further sale process, and shall instruct its representatives, advisors and agents (including A&G Realty) accordingly.

3.   Consideration.  Landlord shall pay to Tenant $[25,000] (minus any deposits previously paid to Tenant) and waive all unpaid prepetition and post-petition amounts owed by Tenant to Landlord.

4.   Landlord Release of Tenant.  For valuable consideration, and the mutual covenants and agreements contained herein, effective from and after the Termination Date, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

5.   Tenant Release of Landlord.  For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, avoidance actions under chapter 5 of the Bankruptcy Code, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

6.   As further consideration for this Release, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS

OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7.     In this connection, the parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that this Release has been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.     <u>Conditions Precedent</u>.  As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)     Tenant has delivered possession of the Premises to Landlord;

(b)     Tenant has delivered to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks);

(c)     An order has been entered by the Bankruptcy Court approving the entirety of this Agreement.  Tenant shall use commercially reasonable efforts to seek and obtain Bankruptcy Court approval of this Agreement on an expedited basis such that the Termination Date shall occur no later than December 31, 2024.

9.     <u>Abandonment</u>.  Subject to Court approval, upon the Termination Date, any personal property remaining at the premises is deemed abandoned and Landlord is free to dispose of or utilize any personal property without further notice or liability to the Tenant or any consenting third parties.

10.     <u>Authority to Settle</u>.  Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.     <u>Entire Agreement</u>.  This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement.  Each of the parties to this Agreement further acknowledges that

such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.     Advice of Counsel.  Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.     Attorneys' Fees.  Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.     Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document.  Further, each of the parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.     Governing Law.  This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.     Jurisdiction.  The Parties consent to the jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.     Miscellaneous.

(a)     The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)     This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

4

(c)     Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)     Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)     Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(f)     The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel. Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

5

Docusign Envelope ID: A3EAD14C-9D30-4122-B958-D1F2672B56C5

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**ILF – Cherry Hill, LLC**

By: _____
Print Name: Ilene L. Flaum_____
Its: Member_____

**ALS – Cherry Hill, LLC**

**By: ALS SD Holdings, LLC, its member**

By: _____
Print Name: Asher J. Flaum_____
Its: Manager_____

**Big Lots Stores, INC.**

By: _____
Print Name: _____
Its: _____

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "**Agreement**") is made as of this 29 day of  Nov ,
2024 between  Shreve City LLC  "**Landlord**") and  Big Lots Stores Inc  ("**Tenant**") or "**Debtor**").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated  10/18/1995     (the
"**Lease**"), covering certain premises located at  1239 Shreveport Barksdale  Shreveport LA  (the
"**Premises**"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a
voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C.
§§ 101, et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for
the District of Delaware (the "**Bankruptcy Court**");

WHEREAS, the Parties desire to enter into this Agreement, for among things, Landlord is
restored to possession of the Premises as of the Termination Date (as defined below), the parties
release the other and Landlord is able to dispose of any remaining equipment at the Premises in its
sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained
herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby
covenant and agree as follows subject only to an order of the Bankruptcy Court approving this
Agreement (the "**Bankruptcy Court Order**"):

## AGREEMENT

1.    Recitals.  The Recitals are incorporated herein as if set forth at length.

2.    Lease Termination.    Subject to the Bankruptcy Court Order, the Lease is
terminated effective December 31, 2024 (the "**Termination Date**"). From and after the
Termination Date, Tenant shall have no right, title or interest in or to the Premises pursuant to the
Lease. Subject to the Bankruptcy Court Order, no later than the Termination Date, Tenant shall
surrender the Premises to Landlord, deliver possession thereof to Landlord and deliver all access
codes and keys (or written confirmation that Landlord is authorized to change the locks), key codes
and alarm codes for the Premises (if practically available) to Landlord. As of the date of execution
of this Agreement, Tenant acknowledges and agrees that, from and after the date hereof, (a)
Landlord shall have the right to immediately market the Premises for lease, and (b) Tenant shall
not market the Lease, and shall remove the Lease from any further sale process, and shall instruct
its representatives, advisors and agents (including A&G Realty) accordingly.

3.    Consideration.  Landlord shall pay to Tenant $0 (minus any deposits already paid
to Tenant) and waive all unpaid prepetition and post-petition amounts owed by Tenant to Landlord.

4.      Landlord Release of Tenant. For valuable consideration, and the mutual covenants and agreements contained herein, effective from and after the Termination Date, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

5.      Tenant Release of Landlord. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, avoidance actions under chapter 5 of the Bankruptcy Code, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

6.      As further consideration for this Release, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN

#99081943v2

BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER
SETTLEMENT WITH THE DEBTORS.

7.      In this connection, the parties hereby agree, represent and warrant that they realize
and acknowledge that factual matters now unknown to them may have given or may hereafter give
rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and
expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree,
represent and warrant that this Release has been negotiated and agreed upon in light of that
realization and that, except as expressly limited above, they nevertheless hereby intend to release,
discharge, and acquit the Released Parties from any such unknown causes of action, claims,
demands, debts, controversies, damages, costs, losses, and expenses.

8.      Conditions Precedent. As a condition precedent to the effectiveness of this
Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)      Tenant has delivered possession of the Premises to Landlord;

(b)      Tenant has delivered to Landlord the keys and access codes to the Premises (or
written confirmation that Landlord is authorized to change the locks);

(c)      An order has been entered by the Bankruptcy Court approving the entirety of this
Agreement. Tenant shall use commercially reasonable efforts to seek and obtain Bankruptcy Court
approval of this Agreement on an expedited basis such that the Termination Date shall occur no
later than December 31, 2024.

9.      Abandonment. Subject to Court approval, upon the Termination Date, any personal
property remaining at the premises is deemed abandoned and Landlord is free to dispose of or
utilize any personal property without further notice or liability to the Tenant or any third parties;
provided that, the Tenant shall have fourteen (14) days after the Closing Date to remove any point-
of-sale ("**POS**") systems from the Premises during which time the Landlord shall not utilize or
dispose of any such POS systems and shall use commercially reasonable efforts to provide access
to the Premises to Tenant to remove any such POS systems.

10.      Authority to Settle. Each of the parties to this Agreement respectively represents
and warrants that each such party has the absolute and unfettered power, right and authority to
enter into this Agreement and settle, compromise and release fully and completely all matters and
claims contemplated to be resolved hereby.  Each of the parties to this Agreement respectively
represents and warrants that each such party owns and controls each of the claims, causes of action,
or other matters that are the subject matter of this Agreement and that it has not assigned or
transferred to any other person any of such claims, causes of action, or other matters.

11.      Entire Agreement. This Agreement, the exhibits hereto and the other items to be
delivered as a condition precedent to the effectiveness of this Agreement, contains the entire
agreement and understanding concerning the subject matter of the Agreement supersedes and
replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the

3

parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement.  Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.    Advice of Counsel. Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    Attorneys' Fees. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document.  Further, each of the parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.    Governing Law. This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.    Jurisdiction. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.    Miscellaneous.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its

4

terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(f)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel. Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

#99081943v2

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**Shreve City LLC**

By:_____    11/29/24

Print Name: Bo Avery

Its: President

**Big Lots Stores LLC**

By:_____

Print Name:_____

Its:_____

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "**Agreement**") is made as of this 7th day of October, 2024 between JASMINE MEADOW PROPERTIES, L.P. ("**Landlord**") and BLBO TENANT, LLC, ("**Tenant**") or ("**Debtor**").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated August 25, 2023 (the "**Lease**"), covering certain premises located at 299 Borchard Drive, Ventura, CA 93003-4603, [STORE # 4030] (the "**Premises**"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

WHEREAS, the Parties desire to enter into this Agreement, for among things, Landlord is restored to possession of the Premises as of the Termination Date, the parties release the other and Landlord is able to dispose of any remaining equipment at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.      Recitals.  The Recitals are incorporated herein as if set forth at length.

2.      Lease Termination.     The Lease is terminated effective upon vacating of Premises by Tenant [unknown date – estimated to be mid-October, 2024] (the "**Termination Date**").

3.      Consideration.  Landlord shall pay to Tenant One Hundred Thousand Dollars and No Cents ($100,000.00).

4.      Landlord Release of Tenant. For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of

how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

5.     Tenant Release of Landlord. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

6.     As further consideration for this Release, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7.     In this connection, the parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that this Release has been negotiated and agreed upon in light of that realization and that, except as expressly limited above, it nevertheless hereby intends to release, discharge, and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.     Conditions Precedent. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

2

(a)    Tenant has delivered possession of the Premises to Landlord;

(b)    Tenant has delivered to Landlord the keys and access codes to the Premises;

(c)    An order has been entered by the Bankruptcy Court approving the entirety of this Agreement.

9.    <u>Furniture, Fixtures and Equipment (FF&E)</u>. Any FF&E remaining at the Premises after the Termination Date is deemed abandoned and the Landlord and their managing agents are free to dispose of the FF&E in their sole and absolute discretion without liability to the Debtor or any entity.

10.    <u>Authority to Settle</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby. Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.    <u>Entire Agreement</u>. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.    <u>Advice of Counsel</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    <u>Attorneys' Fees</u>. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further,

3

each of the parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.    <u>Governing Law.</u> This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.    <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.    <u>Miscellaneous</u>.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel. Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**[LANDLORD]**

By: *Jack Nourafshan*
Print Name: Jack Nourafshan
Its: President of General Partner [Meadow Stone Corp.]

**[TENANT]**

By:_____
Print Name:_____
Its:_____

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "**Agreement**") is made as of this \_\_\_\_ day of _____, 2024 between Venture Partners, LLC ("**Landlord**") and Big Lots Stores, Inc. ("**Tenant**") or "**Debtor**").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated \_\_\_\_(the "**Lease**"), covering certain premises located at 3950 Venture Drive, Duluth, Georgia 30096 (the "**Premises**"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

WHEREAS, the Parties desire to enter into this Agreement, for among things, Landlord is restored to possession of the Premises as of the Termination Date (as defined below), the parties release the other and Landlord is able to dispose of any remaining equipment at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement (the "**Bankruptcy Court Order**"):

## AGREEMENT

1.      Recitals.  The Recitals are incorporated herein as if set forth at length.

2.      Lease Termination.    Subject to the Bankruptcy Court Order, the Lease is terminated effective September 30, 2024 (the "**Termination Date**"). From and after the Termination Date, Tenant shall have no right, title or interest in or to the Premises pursuant to the Lease. Subject to the Bankruptcy Court Order, no later than the Termination Date, Tenant shall surrender the Premises to Landlord, deliver possession thereof to Landlord and deliver all access codes and keys (or written confirmation that Landlord is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Landlord. As of the date of execution of this Agreement, Tenant acknowledges and agrees that, from and after the date hereof, (a) Landlord shall have the right to immediately market the Premises for lease, and (b) Tenant shall not market the Lease, and shall remove the Lease from any further sale process, and shall instruct its representatives, advisors and agents (including A&G Realty) accordingly.

3.    Consideration.    Landlord shall pay to Tenant $75,000.00 (minus any deposits already paid to Tenant) and waive all unpaid prepetition and post-petition amounts owed by Tenant to Landlord.

4.    Landlord Release of Tenant. For valuable consideration, and the mutual covenants and agreements contained herein, effective from and after the Termination Date, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

5.    Tenant Release of Landlord. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, avoidance actions under chapter 5 of the Bankruptcy Code, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

6.    As further consideration for this Release, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

#99081943v2

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7.      In this connection, the parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that this Release has been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.      <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)      Tenant has delivered possession of the Premises to Landlord;

(b)      Tenant has delivered to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks);

(c)      An order has been entered by the Bankruptcy Court approving the entirety of this Agreement. Tenant shall use commercially reasonable efforts to seek and obtain Bankruptcy Court approval of this Agreement on an expedited basis such that the Termination Date shall occur no later than S_____ 30, 2024.

9.      <u>Abandonment</u>. Subject to Court approval, upon the Termination Date, any personal property remaining at the premises is deemed abandoned and Landlord is free to dispose of or utilize any personal property without further notice or liability to the Tenant or any third parties; provided that, the Tenant shall have fourteen (14) days after the Closing Date to remove any point-of-sale ("**POS**") systems from the Premises during which time the Landlord shall not utilize or dispose of any such POS systems and shall use commercially reasonable efforts to provide access to the Premises to Tenant to remove any such POS systems.

10.      <u>Authority to Settle</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

3

11.     <u>Entire Agreement</u>. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement.  Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.     <u>Advice of Counsel</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.     <u>Attorneys' Fees</u>. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.     <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document.  Further, each of the parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.     <u>Governing Law.</u> This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.     <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

#99081943v2

17.    <u>Miscellaneous</u>.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(f)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel. Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

#99081943v2

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**VENTURE POINTE, LLC**

By:_____

Print Name:_____

Its:_____

**BIG LOTS STORES, INC.**

By:_____

Print Name:_____

Its:_____

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "**Agreement**") is made as of this ____ day of _____, 2024 between __Ethan Conrad as successor in interest to Conrad Urata 4, LLC__ "**Landlord**") and __Big Lots__ ("**Tenant**") or "**Debtor**").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated __July 27, 2011__ (the "**Lease**"), covering certain premises located at __#4602 - 10251 Fairway Drive, Roseville, CA 95678__ (the "**Premises**"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

WHEREAS, the Parties desire to enter into this Agreement, for among things, Landlord is restored to possession of the Premises as of the Termination Date (as defined below), the parties release the other and Landlord is able to dispose of any remaining equipment at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement (the "**Bankruptcy Court Order**"):

## AGREEMENT

1.      Recitals.  The Recitals are incorporated herein as if set forth at length.

2.      Lease Termination.   Subject to the Bankruptcy Court Order, the Lease is terminated effective __December 31, 2024__ (the "**Termination Date**"). From and after the Termination Date, Tenant shall have no right, title or interest in or to the Premises pursuant to the Lease. Subject to the Bankruptcy Court Order, no later than the Termination Date, Tenant shall surrender the Premises to Landlord, deliver possession thereof to Landlord and deliver all access codes and keys (or written confirmation that Landlord is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Landlord. As of the date of execution of this Agreement, Tenant acknowledges and agrees that, from and after the date hereof, (a) Landlord shall have the right to immediately market the Premises for lease, and (b) Tenant shall not market the Lease, and shall remove the Lease from any further sale process, and shall instruct its representatives, advisors and agents (including A&G Realty) accordingly.

3.      <u>Consideration</u>.  Landlord shall pay to Tenant $<u>30,000.00 less cure obligations</u> and waive all unpaid prepetition and post-petition amounts owed by Tenant to Landlord.

4.      <u>Landlord Release of Tenant</u>. For valuable consideration, and the mutual covenants and agreements contained herein, effective from and after the Termination Date, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

5.      <u>Tenant Release of Landlord</u>. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, avoidance actions under chapter 5 of the Bankruptcy Code, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

6.      As further consideration for this Release, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

#99081943v2

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7.      In this connection, the parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that this Release has been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.      <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)      Tenant has delivered possession of the Premises to Landlord;

(b)      Tenant has delivered to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks);

(c)      An order has been entered by the Bankruptcy Court approving the entirety of this Agreement. Tenant shall use commercially reasonable efforts to seek and obtain Bankruptcy Court approval of this Agreement on an expedited basis such that the Termination Date shall occur no later than September 30, 2024.

9.      <u>Abandonment</u>. Subject to Court approval, upon the Termination Date, any personal property remaining at the premises is deemed abandoned and Landlord is free to dispose of or utilize any personal property without further notice or liability to the Tenant or any third parties; provided that, the Tenant shall have fourteen (14) days after the Closing Date to remove any point-of-sale ("**POS**") systems from the Premises during which time the Landlord shall not utilize or dispose of any such POS systems and shall use commercially reasonable efforts to provide access to the Premises to Tenant to remove any such POS systems.

10.      <u>Authority to Settle</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.     Entire Agreement. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement.  Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.     Advice of Counsel. Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.     Attorneys' Fees. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.     Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document.  Further, each of the parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.     Governing Law. This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.     Jurisdiction. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

#99081943v2

17.    <u>Miscellaneous</u>.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(f)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel. Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

5

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**[LANDLORD]**

By:_____

Print Name: Ethan Conrad_____

Its: CEO_____

**[TENANT]**

By:_____

Print Name: Big Lots_____

Its:_____

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "**Agreement**") is made as of this ____ day of _____, 2024 between RPI Ridgmar Town Square, Ltd_ "**Landlord**") and _Big Lots Stores - PNS, LLC ("**Tenant**") or "**Debtor**").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated ____(the "**Lease**"), covering certain premises located at 1255 Town Square Drive, Fort Worth, TX 76116 in the Ridgmar Town Center Shopping Center (the "**Premises**"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

WHEREAS, the Parties desire to enter into this Agreement, for among things, Landlord is restored to possession of the Premises as of the Termination Date (as defined below), the parties release the other and Landlord is able to dispose of any remaining equipment at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement (the "**Bankruptcy Court Order**"):

## AGREEMENT

1.    <u>Recitals</u>.  The Recitals are incorporated herein as if set forth at length.

2.    <u>Lease Termination</u>.    Subject to the Bankruptcy Court Order, the Lease is terminated effective December 31, 2024 (the "**Termination Date**"). From and after the Termination Date, Tenant shall have no right, title or interest in or to the Premises pursuant to the Lease. Subject to the Bankruptcy Court Order, no later than the Termination Date, Tenant shall surrender the Premises to Landlord, deliver possession thereof to Landlord and deliver all access codes and keys (or written confirmation that Landlord is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Landlord. As of the date of execution of this Agreement, Tenant acknowledges and agrees that, from and after the date hereof, (a) Landlord shall have the right to immediately market the Premises for lease, and (b) Tenant shall not market the Lease and shall remove the Lease from any further sale process, and shall instruct its representatives, advisors and agents (including A&G Realty) accordingly.

#99189957v1
#99182420v12

3.      Consideration. Consideration is in the form of a credit bid of $84,623.16 which is owed as a cure and includes stub rent and post-petition obligations for taxes and insurance. With the exception of December 2024 rental obligations, Landlord shall waive all remaining unpaid prepetition and post-petition amounts owed by Tenant to Landlord

4.      Landlord Release of Tenant. For valuable consideration, and the mutual covenants and agreements contained herein, effective from and after the Termination Date, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease with the exception of December 2024 rental obligations.

5.      Tenant Release of Landlord. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, avoidance actions under chapter 5 of the Bankruptcy Code, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

6.      As further consideration for this Release, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the

2

provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7.      In this connection, the parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that this Release has been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.      Conditions Precedent. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)      Tenant has delivered possession of the Premises to Landlord;

(b)      Tenant has delivered to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks);

(c)      An order has been entered by the Bankruptcy Court approving the entirety of this Agreement. Tenant shall use commercially reasonable efforts to seek and obtain Bankruptcy Court approval of this Agreement on an expedited basis such that the Termination Date shall occur no later than [     ], 2024.

9.      Abandonment. Subject to Court approval, upon the Termination Date, any personal property remaining at the premises is deemed abandoned and Landlord is free to dispose of or utilize any personal property without further notice or liability to the Tenant or any consenting third parties.

10.      Authority to Settle. Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

#99189957v1
#99182420v12

11.    Entire Agreement. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.    Advice of Counsel. Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    Attorneys' Fees. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.    Governing Law. This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.    Jurisdiction. The Parties consent to the jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.    Miscellaneous.

4

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(f)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel. Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

#99189957v1
#99182420v12

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**RPI RIDGMAR TOWN SQUARE, LTD**

By:RPI Ridgmar G.P., Inc.
Its General Partner
Print Name:_____
Its:_____

**BIG LOTS STORES- PNS, LLC**

By:_____
Print Name:_____
Its:_____

6