## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| | (Jointly Administered) |
| Debtors.[1] | **Related D.I. 1351** |

### OBJECTION OF EDGEWATER PARK URBAN RENEWAL, LLC TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) EXTENDING TIME TO ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) GRANTING RELATED RELIEF

Edgewater Park Urban Renewal, LLC (the "Landlord"), by and through its undersigned counsel, hereby files this objection and reservation of rights (the "Objection") to the *Motion of Debtors for Entry of an Order (I) Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* (the "Motion") [D.I. 1351], filed by Big Lots, Inc., *et al.* (the "Debtors").  In support of this Objection, Landlord respectfully states as follows:

### BACKGROUND

1.      On or about March 1, 2019, Landlord entered into that certain Lease Agreement (the "Lease") with the Debtors, pursuant to which the Debtors agreed to rent a storeroom at Landlord's "Shopping Center," located at 4355 Route 130, Beverly, NJ 08010 (the "Premises"). A true and correct copy of the Lease is attached as **Exhibit "A"** and incorporated fully herein.  The

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

initial term of the Lease is set to expire on January 31, 2030.

2.      The Debtors defaulted under the terms of the Lease when it failed to make the required monthly rental payment due on September 1, 2024 (the "Default").

3.      On September 9, 2024 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases (the "Chapter 11 Cases").

4.      On September 9, 2024, the Debtor filed the *Motion of Debtors for Entry of Interim and Final Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* (the "Lease Sale Procedures Motion") [D.I. 13], seeking an Order establishing procedures to sell certain unexpired leases of real property (the "Lease Assets").

5.      On September 9, 2024, the Debtors also filed the *Motion of Debtors for Entry of Interim and Final Order (I) Authorizing Debtors to Assume the Services Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* (the "Store Closing Motion") [D.I. 16], seeking approval of certain procedures to commence closing sales at several of the Debtors stores (the "Store Closing Procedures").  In the Store Closings Motion, the Debtors included a footnote which stated that with respect to the store closings, "the Debtors anticipate rejecting the applicable leases."  Store Closing Procedures Motion at ⁋ 11, n. 2.

6.      Also on September 9, 2024, the Debtors filed the *Motion of Debtors for Entry of Orders (I) (A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the*

*Stalking Horse and Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures, (II) (A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (the "Bidding Procedures Motion") [D.I. 18], requesting authority to potentially assume and assign certain unexpired leases and executory contracts to the successful bidder for all the Debtors' assets.

7.    By Order entered on September 10, 2024, this Court consolidated the Debtors' cases for procedural purposes only, and ordered the joint administration of the Debtors' cases, pursuant to Fed. R. Bankr. P. 1015(b), under *In re Big Lots, Inc., et al.*, Case No. 24-11967 (JKS) [D.I. 95].

8.    Subsequent to the filing of the Lease Sale Procedures Motion, the Court has entered four (4) Interim Orders (the "Interim Lease Sale Orders"),  permitting the Debtor to hold four (4) separate auctions to sell the Lease Assets on: (i) September 18, 2024 [D.I. 137]; (ii) October 18, 2024 [D.I. 460]; (iii) November 7, 2024 [D.I. 650]; and (iv) December 4, 2024 [D.I. 1198] (the "Lease Auctions").

9.    In addition to attempting to sell the Lease Assets through the Lease Auctions, on October 16, 2024, the Debtors filed the *Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount* (the "Potential Lease Assumption Notice") [D.I. 511], through which the Debtors designated certain contracts and leases to be potentially assumed and assigned during the sale to the eventual purchaser of the Debtors' assets (the "Sale").  In the Potential Lease Assumption Notice, the Debtors listed the Lease for the

Premises as a potential lease to be assumed and assigned.

10.    On October 21, 2024, the Court entered the Order approving the Store Closing

Motion (the "Store Closing Order") [D.I. 576].

11.    On October 25, 2024, the Court entered the Order approving the Bidding

Procedures Motion (the "Bidding Procedures Order") [D.I. 612].

12.    On October 31, 2024, the Debtors filed the *Notice of Proposed Assumption and*

*Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* (the "Proposed

Assumed Contracts Notice") [D.I. 683], through which the Debtors designated certain contracts

and leases (the "Proposed Assumed Contracts") they intended to assume and assign through the

Sale.  In the Proposed Assumed Contracts Notice, the Debtors again listed the Lease with Landlord

as a potential lease to be assumed and assigned.[2]

13.    On November 22, 2024, the Court entered the Order (the "Sale Order") [D.I. 1232]

approving the Sale to Gateway BL Acquisition, LLC (the "Buyer").  In accordance with Asset

Purchase Agreement attached to the Sale Order (the "APA") and the Bidding Procedures Order,

Buyer has discretion to determine whether or not to ultimately assume any of the Proposed

Assumed Contracts up until the date the Sale closes (the "Closing").

14.    On December 13, 2024, the Debtors filed the Motion, requesting the entry of an

Order extending the 120-day deadline by which the Debtors must assume or reject unexpired leases

of nonresidential real property (the "Unexpired Leases") for 90 days, from January 7, 2025, up to

and including April 7, 2025.

15.    On December 19, 2024, the Debtors filed the *Seventh Notice of Filing of List of*

---

[2] Landlord notes that the Debtors listed the Lease for the Premises, but mislabeled the Lease counterparty as Winbrook Management, LLC ("Winbrook") rather than Landlord.  Landlord has no connection with Winbrook and never received notice of either the Potential Lease Assumption Notice or the Proposed Assumed Contracts Notice.

*Additional Closing Stores Pursuant to the Final Order (I) Authorizing Debtors to Assume the Consulting Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures and Approving Related Procedures, And (III) Granting Related Relief* (the "Seventh Store Closing Notice") [D.I. 1397], which designated the Debtors' store at the Premises as one of the stores the Debtors are now seeking to close and at which they intend to commence a going out of business sale.

16.    Immediately thereafter, the Debtors filed the *Notice of Status Conference* (the "Notice of Status Conference") [D.I. 1398], in which the Debtors stated that a status conference before the Judge had taken place earlier that day, where they explained that a sale to Buyer "was no longer viable."  In lieu of the Sale, the Debtors appear to be liquidating their assets by holding going out of business sales at all their remaining stores which have not yet been closed.

## **OBJECTION**

17.    Section 365(d)(4)(A) of the Bankruptcy Code provides that, "an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected" if not assumed or rejected "by the earlier of (i) the date that is 120 days after that date of the order for relief; or (ii) the date of the entry of an order confirming a plan."  11 U.S.C. § 365(d)(4)(A). Further, Section 365(d)(4)(B)(i) states that, "[t]he court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause."  11 U.S.C. § 365(d)(4)(B)(i).

18.    "The policy behind section 365 is to prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-à-vis the estate." *In re Bon Ton Restaurant and Pastry Shop, Inc.*, 52 B.R. 850, 853 (Bankr. N.D. Ill. 1985); *accord In re University Medical Center*, 973 F.2d 1065, 1079 (3rd Cir. 1992).

19.     More specifically, the Third Circuit has understood that the purpose behind Section 365(d)(4) is "to prevent trustees from taking too much time in deciding whether to assume unexpired nonresidential leases" and "to prevent undue delay." *In re Channel Home Centers, Inc.*, 989 F.2d 682, 686 (3rd Cir. 1993); *see also In re GST Telecom, Inc.*, 2001 WL 686971, at *4 (D. Del. June 8, 2001) (noting the Third Circuit's recognition of "Congress' intention not to give debtors unlimited time to assume or reject these types of leases."); *Matter of American Healthcare Management, Inc.*, 900 F.2d 827, 830 (5th Cir. 1990) ("It is now well-established that the primary purpose of section 365(d)(4) is 'to protect lessors . . . from delay and uncertainty by forcing a trustee or a debtor in possession to decide quickly whether to assume unexpired leases.'" (citing *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989))).

20.     While the Bankruptcy Code does not define "cause," as that term is used in Section 165(d)(4), "[t]he decision to grant or deny a motion for an extension of time is generally within the discretion of the appropriate court." *In re Burger Boys, Inc.*, 94 F.3d 755, 760-61 (2nd Cir. 1996).  Courts may evaluate a wide range of factors in determining whether cause to grant an extension of time exists, but one of the central considerations is whether the decision to assume or reject the relevant leases is important for purposes of formulating a debtor's plan.  *See Channel Home*, 989 F.2d at 689 ("[N]othing prevents a bankruptcy court from granting an extension because a particular debtor needs additional time to determine whether the assumption or rejection of particular leases is called for by the plan of reorganization that it is attempting to develop."); *In re Wedtech Corp.*, 72 B.R. 464, 471 (Bankr. S.D.N.Y. 1987) (finding that one factor weighing in favor of granting an extension of time is that "the lease is a primary asset and the 'decision to assume or reject the lease would be central to any plan of reorganization' in the Chapter 11 proceeding" (citing *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 106 (2nd Cir. 1982))).

21.     Other factors to consider include whether (i) a debtor's continued occupation could cause damage to the lessor beyond the compensation available under the Bankruptcy Code; (ii) the debtor has been paying rent; (iii) a debtor has had enough time to evaluate its financial situation and decide whether assumption or rejection is appropriate; (iv) the debtor has already had sufficient time to formulate a plan of reorganization; (v) the overall complexity of the case, including the number of leases involved; and (vi) the leases at issue are the debtor's primary assets. *See Burger Boys*, 94 F.3d at 761; *Wedtech* 72 B.R. at 471-72.

22.     While Landlord does not dispute that its Lease, as well as the other Unexpired Leases, may have been important assets for purposes of operating the Debtors' businesses pre-petition, the Debtors have failed to show that the decision to assume or reject the Unexpired Leases remains a central consideration for purposes of formulating a plan of reorganization.  Notably the Debtors have not even proposed a plan, nor have they filed a motion to extend the exclusivity period.  Based on the Debtors' actions in these Chapter 11 Cases up to this point, there is little reason to suspect that the Unexpired Leases will play a crucial role in the Debtors' reorganization.

23.     As of now, the Debtors have had plenty of time to evaluate their financial situation for purposes of formulating a plan and determining the potential value of the Unexpired Leases. Just based on the Lease Sale Procedures Motion and the Sale to Buyer alone, it seemed relatively clear from the beginning of these Chapter 11 Cases that the Debtors had chosen to embark on a liquidation track, with the intent to sell any Unexpired Leases that are ultimately not assumed by Buyer.  Now, in light of the Seventh Store Closing Notice and the Notice of Status Conference, it is abundantly clear that the Debtors are not reorganizing and are merely closing all their stores and liquidating all their assets. Given that the Debtors are closing all their stores, the Debtors cannot argue that the Unexpired Leases will play a central role in the Debtors' plan for reorganization.

This is especially true in light of the fact that the Debtors appear to have already determined that the applicable leases are going to be rejected anyway.  *See* Store Closing Procedures Motion at ¶ 11, n. 2.  The Debtors should not be granted additional time to make a decision that appears to be predetermined.

24.     To the extent the Debtors are seeking additional time to market and sell any of the Unexpired Leases, that is not an appropriate reason to grant an extension of the deadline under Section 365(d)(4).  While Landlord recognizes that the Debtors have an obligation to maximize value for their creditors; Landlord, nevertheless, contends that Section 365(d)(4) does not bestow upon the Debtors an unfettered right to extend the deadline to assume or reject the Unexpired Leases for the sole purpose of having additional time to sell those leases.  Allowing the Debtors extra time to continue selling the Unexpired Leases only perpetuates the time that lessors continue to be uncertain regarding the status of their leases and would run afoul of the purpose of Section 365(d)(4).  *See American Healthcare*, 900 F.2d at 830 ("It is now well-established that the primary purpose of section 365(d)(4) is 'to protect lessors . . . from delay and uncertainty by forcing a trustee or a debtor in possession to decide quickly whether to assume unexpired leases.'").  Further, the Debtors have already had ample opportunity and time to market and sell the Unexpired Leases.  Pursuant to the Interim Lease Sale Orders, the Debtors have already conducted four (4) separate Lease Auctions.  Further, the Debtors attempted to sell several other leases through the Sale to Buyer.

25.     Given that the Debtors have either already decided that all the Unexpired Leases are to be rejected, or, to the extent they are seeking additional time to market and sell some of those leases, it is clear that the decision to assume or reject the Unexpired Leases is not central to the Debtors' reorganization.  Therefore, the Debtors should not be permitted to continue denying

landlords the opportunity to make alternative arrangements with new tenants.

26.      While it is true that the Debtors have been paying post-petition rent,[3] contrary to the Debtors' position in the Motion, this does not mean that the requested extensions will not result in prejudice to Landlord.  *See* Debtor's Motion at ⁋ 16.  The Debtors cite the inapposite *Bon Ton* case for the proposition that a lessor who receives continuing monthly rent payments is not prejudiced by an extension of the deadline under Section 365(d)(4).  *Id.* (citing *In re Bon Ton Rest. & Pastry Shop, Inc.*, 52 B.R. 850, 854-55 (Bankr. N.D. Ill. 1985)).  However, *Bon Ton* does not indicate, as the Debtors suggest, that a lessor is not harmed so long as a debtor continues paying rent post-petition.  Notably, unlike the situation here, the debtor in that case never requested an extension and elected to assume the lease at issue prior to the conclusion of the deadline fixed under Section 365(d)(4), which, at the time, was sixty (60) days.  *Bon Ton*, 52 B.R. at 851 ("[W]ithin 60 days of the commencement of this case, Bon Ton filed its motion under section 365(a) to assume the unexpired lease . . . .").  While the court's hearing on the motion ultimately was delayed, the court noted that because the debtor had complied with Section 365(a) and had timely elected to assume the lease, it "had no real duty under section 365(d)(4) to request an extension of time to assume."  *Id.* at 854.  According to the court, there was no prejudice to the lessor in delaying the hearing because in light of the clear election to assume, along with continuing payments, the landlord "was not faced with uncertainty or potential loss . . . ."  *Id.* at 855.

27.      In the absence of certainty, continuing payments alone does not mean that lessors are not experiencing harm by further delays.  For example, Landlord has heard from several parties that there is interest in renting the Premises, but these parties have also emphasized that time is of

---

[3] Landlord notes that the Debtors are still in default with respect to the stub rent owed for the post-petition portion of September.

9

the essence.  Not only would the Debtors' proposed extension of time prevent Landlord from immediately entering into a new lease, but also it could result in the loss of opportunity to contract with these interested parties altogether, who will likely look for alternative rental spaces if forced to wait much longer.  If the extension is granted and the Lease is later rejected, the fact that Landlord received rent from the Debtors for a few additional months is little consolation if Landlord is ultimately forced to forgo certainty and the opportunity to enter into a new lease.  Just because the Debtors continue to make payments post-petition does not mean they have unbridled discretion to extend the deadline to assume or reject indefinitely.  *See Burger Boys*, 94 F.3d at 761 ("[T]he debtor's current payment status remains a relevant consideration for the bankruptcy court. It is not, however, the only consideration . . . .").

28.    Given that the Debtors are closing all their stores and are likely to reject all the Unexpired Leases, there is no need for additional time to determine whether or not assumption or rejection is appropriate.  Mindful of the desire to keep administrative costs low and move quickly, the Debtors certainly do not need ninety (90) additional days to conduct going out of business sales.  Further, since the Store Closing Order contemplated that the Debtors will enter into "Side Letter" agreements with landlords, rather than seek an additional extension under Section 365(d)(4) that will perpetuate uncertainty, the Debtors are free to negotiate separately with the individual landlords to determine how best to proceed with the store closings.

29.    Accordingly, in light of the fact that the Debtors have already had sufficient time to evaluate their financial situation and have failed to show that the decision to assume or reject the Unexpired Leases remains central to the formulation of a plan of reorganization, Landlord submits that the Debtors have failed to show that cause exists to grant an extension of time to assume or reject the Unexpired Leases, pursuant to Section 365(d)(4).  The Court should deny the

Motion to ensure that Landlord and other similarly situated parties are not further harmed and can have greater certainty with respect to their leases and contracts moving forward.

## <u>RESERVATION OF RIGHTS</u>

30.     Nothing contained in this Objection is intended or should be construed to limit the rights of Landlord to otherwise supplement or adopt additional arguments in connection with this Objection, or to prevent Landlord from objecting to any future motion brought by the Debtors.

## <u>CONCLUSION</u>

WHEREFORE, Landlord respectfully requests that the Court issue an Order (i) denying the Motion and (ii) declaring that the Lease is deemed rejected as of January 7, 2025, to the extent Landlord and the Debtors do not agree otherwise.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: <u>*/s/ Seth A. Niederman*</u>
Seth A. Niederman
Delaware Bar No. 4588
1201 N. Market Street, Suite 1200
Wilmington, DE  19801
Phone (302) 654-7444/Fax (302) 656-8920
sniederman@foxrothschild.com

           -and-

Michael G. Menkowitz, Esquire
Matthew A. Skolnick, Esquire
Two Commerce Square
2001 Market Street, Suite 1700
Philadelphia, PA  19103
Phone (215) 299-2000/Fax (215) 299-2150
mmenkowitz@foxrothschild.com
mskolnick@foxrothschild.com

Dated:  December 23, 2024          *Attorneys for Edgewater Park Urban Renewal, LLC*