**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| BIG LOTS, INC., *et al.*,[1] | : | Case No. 24-11967 (JKS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF
BAYSHORE MALL 1A, 1B, AND 2 TO SEVENTH NOTICE OF FILING OF
LIST OF ADDITIONAL CLOSING STORES**

Bayshore Mall 1A, LLC, Bayshore Mall 1B, LLC, and Bayshore Mall 2, LLC (together, "Bayshore") (c/o Pintzuk Organization)[2], successor in interest to Bayshore Mall Acquisition, LLC, by and through its undersigned counsel, hereby files the following limited objection and reservation of rights (the "Limited Objection") with respect to the Seventh Notice of Filing of List of Additional Closing Stores Pursuant to the Final Order (I) Authorizing Debtors to Assume the Consulting Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief (the "Seventh Notice of Closing Stores").

**BACKGROUND**

1. Bayshore is the owner of the real property located at 3845 Bayshore Rd., Cape May, New Jersey 08204 (the "Property"), consisting of commercial space in a shopping center mall.

---

[1] The debtors and debtors in possession in these Chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Bayshore was identified in the Potential Assumed Contract Schedule appended to the Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount filed by the Debtors as "Pintzuk Organization". ECF No. 511.

2. The above-captioned Debtors are a series of related and/or affiliated corporations. The Debtors utilize the Property as Big Lots Store #1775 pursuant to the lease by and between the Debtors (through Big Lots Stores, LLC) and Bayshore Mall Acquisition, LLC dated May 7, 2003, as renewed, amended, assigned, and/or modified (the "Lease").[3]

3. Bayshore purchased the Property from Bayshore Mall Acquisition, LLC in March 2004. *See* Deed, attached hereto as **Exhibit "B"**.

4. Bayshore Mall Acquisition, LLC assigned all leases for the Property, including the Lease, to Bayshore as part of the sale.

5. On or around September 30, 2023, the Debtors stopped meeting their obligations under the Lease, including but not limited to making full, timely rent payments.

6. On September 9, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

7. On September 10, 2024, the Bankruptcy Court directed joint administration, but not substantive consolidation, of the Debtors' bankruptcy cases. ECF No. 95.

8. On September 23, 2024, the United States Trustee appointed an Official Committee of Unsecured Creditors in connection with the Debtors' bankruptcy cases. ECF No. 248.

9. On October 16, 2024, the Debtors filed a Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount. ECF No. 511. The

---

[3] The original Lease, attached hereto as **Exhibit A**, between Bayshore and Big Lots Stores, LLC, has been renewed, amended, assigned, and/or modified at least three times, including but not limited to: (i) on or around July 31, 2008 (Option 1 renewal notification deadline); (ii) on or around July 31, 2013 (Option 2 renewal notification deadline); (iii) on or around July 31, 2018 (Option 3 renewal notification deadline); (iv) on or around July 31, 2023 (Option 4 renewal notification deadline).

Notice estimated the cure amount – *i.e.*, the amount that must be paid pursuant to Bankruptcy Code Section 365(b) to assume an executory agreement or unexpired lease – for the Lease as $27,681.00 (the "Proposed Cure Amount"). *Id.*

10. On November 4, 2024, Bayshore filed the Limited Objection and Reservation of Rights of Bayshore Mall 1A, 1B, and 2 to Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount stating that the accurate cure amount – that for both pre- and post-petition arrearage – was $69,624.05. ECF No. 829.

11. The parties then negotiated a modification to the Lease based on the Debtors' representation that they intended to assume the lease and continue operating Store 1775 from the Property.

12. On December 19, 2024, counsel for the Debtors appeared at a status conference and advised the parties that the proposed sale of the Debtors' assets had fallen apart and, consequently, the Debtors' plans to continue operating post-reorganization were no longer viable. The Debtors filed the Seventh Notice of Closing Stores the same day. ECF No. 1397.

13. The Seventh Notice of Closing Stores lists the Property as one of the Big Lots stores where the Debtors will conduct a store closing sale and then close said store. *Id.* Exh. A.

14. The Debtors have occupied the Property since the Petition Date continuously and exclusively, and have expressed that they will continue to do so through the conduct of the store closing sale.

## OBJECTION

15. Pursuant to 11 U.S.C. § 365(d)(2), a trustee, and by extension a chapter 11 debtor-in-possession, "may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but

the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease."

16. Pursuant to 11 U.S.C. §503(b)(1)(a), the "actual, necessary costs and expenses of preserving the estate" shall be allowed as an administrative expense.

17. These allowed administrative expenses have priority of payment pursuant to 11 U.S.C. § 507(a)(2).

18. For a claimant to be entitled to administrative expenses, "(1) there must be a post-petition transaction between the creditor and the debtor; and (2) the estate must receive a benefit from the transaction." *In re Waste Systems Intern., Inc.*, 280 B.R. 824, 826 (Bankr. D. Del. 2002).

19. Timing of the payment of an administrative claim is within the discretion of this Court. *In re Garden Ridge Corp.*, 323 B.R. 136 (Bankr. D. Del. 2005).

20. In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors. *HQ Global Holdings, Inc.*, 282 B.R. 169, 174 (Bankr. D. Del. 2002).

21. The Debtors have expressed their intent to reject the Lease through the Seventh Store Closing Notice, which states that they intend to conduct a store closing sale at the Property and then close Store 1775.

22. Pursuant to the Lease, the Debtors have occupied the Property continuously and exclusively since the Petition Date, and have indicated that they will do so through at least the end of the Store 1775 closing sale. They have not paid all post-petition rent amounts due.

4928-2142-0041

23. The continuous and exclusive occupancy of the Property has allowed the Debtors to safely store and sell inventory during the bankruptcy, providing significant value to the Debtors' estates.

24. Bayshore is entitled to an administrative claim against the Debtors' estates for the post-petition rent it has not received from the Debtors during their occupancy of the Property, and thereafter while the Debtors use the Property to effectuate GOB sales.

25. Bayshore does not object to the rejection of the Lease provided the Debtors: 1) pay administrative claims such as Bayshore's, including but not limited to those claims for stub rent, post-petition rent, CAM charges, and taxes; 2) confirm that they have set aside a fund providing for payment of post-petition administrative rent, current rent, and rent that will become due during the course of the store closing sales; 3) confirm that the Property will not be used to the detriment of the other tenants in the Property; 4) leave the Property broom clean as required by the Lease; and 5) preserving Bayshore's rights to make claims for any amounts due to Bayshore, as well as for damage to the Property occasioned by the GOB sale and related activity.

26. It is respectfully submitted that the Debtors should make and explain their plans to pay administrative claims for post-petition rent as they have already stated their intent to remain in all stores listed in the Seventh Notice of Closing Stores through the end of the store closing sales, further depriving Bayshore and other landlords of the use of their properties and the income from those properties while the Debtors' estates benefit from their continued occupation.

27. Furthermore, through the Debtors' post-petition operations, which continue as of the date of this Limited Objection, additional amounts may come due and Bayshore reserves all rights with regard to all post-petition amounts due under the Lease or otherwise.

28.    For the sake of clarity, this Limited Objection is limited to the Debtors' lack of an explained plan to pay administrative claims, including those for post-petition rent, and the current lack of a dedicated fund for the payment of post-petition rent amounts that are, or will become, due.

## RESERVATION OF RIGHTS

29.    Bayshore reserves the right to assert further objections to the Seventh Notice of Closing Stores to the extent that additional costs are incurred under the Lease.

30.    Bayshore reserves the right to assert further objections to the Seventh Notice of Closing Stores to include in its administrative or other claims any sum or sums that become due or amounts that, after reconciliation, are due and owing as of the date hereof.

31.    Bayshore also expressly reserves its rights under the Lease and applicable law to assert against the Debtors or any other appropriate party, including the reorganized Debtors, claims including but not limited to tenant mix requirements and for any and all amounts that may be due and owing to them or their affiliated or related parties under the Lease.

32.    Bayshore hereby joins in the objections filed by other counterparties to contracts with the Debtors to the extent that such objections supplement and are not otherwise inconsistent with this Limited Objection.

**WHEREFORE,** Bayshore respectfully requests that this Court enter an Order sustaining the Limited Objection: (a) requiring the Debtor to outline a plan or the payment of administrative claims such as Bayshore's, including but not limited to those for stub rent, post-petition rent, CAM charges, and taxes; (b) requiring the Debtors to create a fund providing for payment of all post-petition rent that is or will become due; (c) granting relief consistent with the relief

6

4928-2142-0041

requested herein; and (c) granting such other and further relief as the Court may deem just equitable and proper.

Respectfully submitted,

Dated: December 23, 2024 By: */s/ Leslie B. Spoltore*
Leslie B. Spoltore, Esquire
Edmond M. George, Esquire (*pro hac vice* pending)
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
123 South Justison Street, Suite 100
Wilmington, DE 19801
Phone: (302) 238-6947
Email: leslie.spoltore@obermayer.com
edmond.george@obermayer.com

*Counsel to Bayshore Mall 1A, LLC, Bayshore Mall 1B, LLC, and Bayshore Mall 2, LLC*