**Exhibit C**

**Redline of Proposed Sale Order Against Nexus Sale Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.¹ | (Jointly Administered) |
| | **Re: D.I. ~~18~~[__]** |

## ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT, (II) AUTHORIZING AND APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS, ENCUMBRANCES, AND OTHER ASSUMED LIABILITIES AND PERMITTED ENCUMBRANCES, (III) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF

---

¹ The Debtors in these cases, together with the last four digits of their respective employer identification numbers, are as follows:  Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

#99666180v21

Upon the motion (the "Motion")[2] of Big Lots, Inc. and certain of its affiliates, each of which is a debtor and debtor in possession (collectively, the "Debtors"), pursuant to sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), rules 2002, 6004, 6006, 9007, and 9008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1 and 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of an order (this "Sale Order") (a) authorizing and approving entry into that certain Asset Purchase Agreement, dated as of ~~September 8~~December 27, 2024 (as amended or supplemented, and including all exhibits, schedules, and annexes attached thereto, including, without limitation, the Agency Agreement, the "APA"), attached hereto as **Exhibit 1**, by and among Big Lots, Inc. (the "Seller"), each of the subsidiaries of the Seller listed in Schedule 1 of the APA (together with the Seller, the "Selling Entities"), and ~~Gateway BL Acquisition~~Gordon Brothers Retail Partners, LLC, a Delaware limited liability company (the "Buyer"); (b) except as otherwise

---

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the APA, or ~~to the extent not defined therein, the Bidding Procedures Order~~as applicable, the *Final Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364, 503, 506, 507 and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection to Prepetition Secured Parties, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [Docket No. 584] (the "Final DIP Order").   For the avoidance of doubt, the "Motion" as referred to herein refers to the *Motion of Debtors for Entry of an Order (I) Approving ~~Bidding Procedures for~~ Sale of Debtors' Assets~~, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (IV) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (V) Approving~~ Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform Under the GBRP APA, (III) Authorizing Assumption and Assignment ~~Procedures~~of Executory Contracts and Unexpired Leases*, and (~~VI~~IV) Granting Related Relief* [D.I. ~~18], which, in addition to requesting the relief granted in the Bidding Procedures Order, is deemed to have served as the motion requesting the relief granted in this Sale Order pursuant to Local Rule 6004-1(c).   Accordingly, the Debtors shall not be required to file a separate motion seeking approval or authorization, as applicable, of the relief granted in this Sale Order, and the notice of the Motion is hereby deemed good and sufficient notice, was appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale, the Sale Order, and the Sale Hearing is, or shall be, required    ___]~~.

30652314.1

#99666180v21

provided in this Sale Order, approving the sale of the Assets free and clear of any property or asset, any legal or equitable, specific or floating, lien (statutory or otherwise and including any "Lien" as defined in the Bankruptcy Code), pledge, mortgage, deed of trust, security interest, charge, debenture, lease, license, occupancy agreement, option, easement, Claim, restriction, preference, priority, right of first refusal, right of first offer, servitude, right of way, right of set off, preemptive right, conditional sale or other title retention agreement or installment Contract or finance lease with substantially the same effect, or other encumbrances affecting any right or title to the Assets or any part thereof or interest therein, in each case of any type, nature or kind whatsoever, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, recorded or unrecorded, contingent or noncontingent, material or nonmaterial, known or unknown (together, the "Encumbrances") pursuant to the APA (the "Sale"); (c) subject to the Designation Rights as set forth in the APA, approving the assumption and assignment of certain executory contracts and unexpired leases identified in the APA (collectively, and ~~subject in each case to the amendments and other agreements that have been fully executed by the applicable counterparties and described in the APA and agreed~~as may be consensually modified or amended with the applicable ~~counterparties (the "Agreed Modifications")~~counterparty, the "Assigned Contracts") pursuant to section 365 of the Bankruptcy Code in connection with the Sale and assignment of the Assigned Contracts to the Buyer or any Designated Buyer, as applicable; (d) authorizing the Debtors to consummate the Sale and all other transactions related to the APA, including, but not limited to, conduct of the Store Closing Sale under the terms of the Agency Agreement; and (e) granting related relief, all as more fully set forth in the Motion; and upon the *Declaration of ~~Adam Rifkin~~Kent Percy in Support of Motion of Debtors for Entry of ~~Orders~~an Order (I)~~(A) Approving Bidding Procedures for Sale of Debtors' Assets,~~*

3

*(B) Approving the Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures, (II)(A)* Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances ~~and~~, (B~~II~~) Authorizing *the Debtors to Enter into and Perform Under the GBRP APA, (III) Authorizing* Assumption and Assignment of Executory Contracts and Unexpired Leases, and (~~III~~IV) Granting Related Relief ~~[D.I. 197]~~ (the "~~Rifkin~~Percy Declaration")~~; and this court (the "Court") having entered on October 25, 2024, that certain~~ *Order (I) Approving Bidding Procedures for Sale of Debtors' Assets, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (IV) Approving Form and Manner of Sale, Auction, and Sale Hearing, and (V) Approving Assumption and Assignment Procedures* ~~[D.I. 612] (the "Bidding Procedures Order"); and the Bidding Procedures Order having (i) authorized the Debtors to (A) conduct, and approved the terms and conditions of, an auction, if applicable, as required and as set forth in the Bidding Procedures (as defined in the Bidding Procedures Order) (the "Auction"); (B) consider the highest or otherwise best offer for the Assets; and (C) establish a date for the Auction; and (ii) approved, among other things, (A) the Bidding Procedures to be used in connection with the Auction, if applicable; (B) the form and manner of notice of the Auction and Bidding Procedures; (C) the form of Notice of Successful Bidder (as defined herein); and (D) the form of notice and the procedures relating to the assumption and assignment of the Assigned Contracts (as defined in the APA~~); and the Debtors having determined, in a sound exercise of their business judgment, that the ~~Buyer made~~entry into the APA represents the highest or otherwise best available offer for the Assets ~~pursuant to the APA; and the Debtors having filed and served~~

on parties in interest that certain *Notice of Successful Bidder for the Sale of the Debtors' Assets* [D.I. 661] (the "Notice of Successful Bidder") on October 30, 2024; and the Court having reviewed the Notice of Successful Bidder; and the Court having conducted a hearing on November 21-22, 2024[\_\_\_], 202[4] (the "Sale Hearing"), at which time all parties in interest were offered an opportunity to be heard with respect to the Sale, to consider the approval of the Sale pursuant to the terms and conditions set forth in the APA, and the Court having considered (1) the Motion and all objections related thereto, (2) the Sale, (3) the arguments of counsel made, and evidence adduced related thereto, and (4) the full record in these chapter 11 cases, including the record related to the hearing to consider the Bidding Procedures Order (the "Bidding Procedures Hearing") andof the Sale Hearing held before the Court; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the APA, the Sale, the transactions contemplated under the APA or in connection therewith, and the proposed assumption and assignment of the Assigned Contracts; and due and sufficient notice of the Sale Hearing and the relief sought in the Motion having been given under the particular circumstances of these chapter 11 cases and in accordance with the Bidding Procedures Order; and no other or further notice needing to be provided; and the relief requested provided for herein being in the best interests of the Debtors, their estates, their creditors, and other parties in interest in these chapter 11 cases; it is hereby **FOUND, CONCLUDED, AND DETERMINED THAT**:[3]

    A.    <u>Findings of Fact and Conclusions of Law</u>.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy

---

[3] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.

Rule 7052, made applicable to these chapter 11 cases pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.        <u>Jurisdiction</u>. The Court has jurisdiction over the Motion and over the Debtors' property, including the Assets to be sold, transferred, and conveyed pursuant to the APA, pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and the Motion in this district and Court is proper under 28 U.S.C. §§ 1408 and 1409.

C.        <u>Final Order</u>. This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to the extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable to these chapter 11 cases through Bankruptcy Rule 7054, the Court finds that there is no just reason for delay in the implementation of this Sale Order and that the terms and conditions of this Sale Order shall be immediately effective and enforceable upon its entry. The Court hereby directs entry of judgment as set forth herein.

D.        <u>Power and Authority</u>. The Debtors (a) have full corporate power and authority to execute the APA and all other documents contemplated related thereto, (b) the Debtors' sale of the Assets has been duly and validly authorized by all necessary corporate action; (c) have all of the corporate power and authority necessary to consummate the transactions contemplated under the APA; and (d) have taken all corporate action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereunder. No consents or approvals, other than those expressly provided for in the APA, are required for the Debtors to

6

consummate such transactions, subject to the waiver of such consents or approvals to the extent provided for in the APA and as may be permitted under applicable law.

E.       Binding Agreement.  The APA is a valid and binding contract between the Selling Entities and the Buyer and shall be enforceable pursuant to its terms.  The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.  Neither the Debtors nor the Buyer is entering into the transactions contemplated by the APA fraudulently for the purpose of statutory and common law fraudulent conveyance, fraudulent transfer claims, or otherwise.   This Sale Order, the APA, the Sale, and the consummation thereof, shall (i) be, to the extent provided in the APA, specifically enforceable against and binding upon (without posting any bond) the Buyer and all successors and assigns of the Buyer and each of its  respective affiliates, successors, and assigns, the Debtors and their estates, and any chapter 7 or chapter 11 trustee or receiver or trustee in bankruptcy appointed with respect to any of the Debtors, and, solely with respect to this Sale Order, their creditors (whether known or unknown) and holders of equity interests in any Debtor, any holders of Claims against or on all or any portion of the applicable Assets, all counterparties to the applicable Assigned Contracts, and any affected third-parties, (collectively, the "Bound Parties") and (ii) not be subject to rejection or avoidance.  Notwithstanding any subsequent appointment of any trustee, examiner, or receiver under the Bankruptcy Code or any other law, all such provisions and terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary under the Bankruptcy Code or any other law with respect to any of the Bound Parties.  The terms and provisions of the APA, shall survive the entry of any order that may be entered confirming or consummating any chapter 11 plan of the Debtors, dismissing these

7

chapter 11 cases, or converting these chapter 11 cases to cases under chapter 7.  The rights and interests granted pursuant to this Sale Order and the APA shall continue in these or any superseding cases and shall be binding upon the Bound Parties and their respective successors and permitted assigns including, without limitation, any trustee, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized and directed to perform under the APA and this Sale Order without the need for further order of the Court.

F.      Property of the Estate.  The Debtors are the sole and lawful owner(s) of, and have clear and marketable title to, the Assets.  The Debtors' right, title, and interest in and to the Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  Subject to sections 363(f) and 365(a) of the Bankruptcy Code, and except as otherwise set forth in this Sale Order, the transfer of each of the Assets to the Buyer or its designee (collectively, the "**Designated Buyer**"), in accordance with the APA shall be, as of the applicable Closing Date, a legal, valid, and effective transfer of the Assets, which transfer vests or shall vest the Buyer or such Designated Buyer(s), as applicable, with all right, title, and interest of the Debtors to the Assets free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances or as otherwise set forth in this Sale Order). Notwithstanding anything to the contrary in this Sale Order or the APA, the transfer of any nonresidential real property lease  shall be subject to any easements, reciprocal easement agreements, operating or redevelopment agreements, licenses, permits, dedications, covenants, or other rights applicable to such real estate that run with the

8

land or limit or condition the permitted use of the property (the "**Lease Encumbrances**") and shall not be free and clear of any such Lease Encumbrances.

G.        <u>Statutory Bases for Relief</u>.  The statutory bases for the relief requested in the Motion and provided for herein are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008, and Local Rules 2002-1 and 6004-1.

H.        <u>Petition Date</u>.  On September 9, 2024 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued to maintain their businesses and manage their property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

~~I. The Auction.  The Auction was conducted on October 30, 2024, pursuant to the Bidding Procedures.  The transaction as described on the record at the Auction was properly identified as the Successful Bid for the Assets in the Notice of Successful Bidder filed and served on October 30, 2024 [D.I. 661] pursuant to the Bidding Procedures.~~

<u>I.</u>        ~~J.~~ <u>Notice</u>.  ~~As evidenced by the affidavits of service and publication previously filed with the Court at D.I. 275, 361, 574, 640, 648, 748, 951, and 1013, and based on the representations of counsel at the Sale Hearing, due~~<u>Due</u>, proper, timely, adequate, and sufficient notice of the Motion, the ~~hearing approving the Bidding Procedures Order, the~~ Sale Hearing, the ~~Bidding Procedures Hearing, the Auction, the~~ Sale, and the assumption and assignment of the Assigned Contracts to be assumed and assigned to the Buyer ~~at~~<u>(or a Designated Buyer, as applicable) at a</u> Closing pursuant to this Sale Order and the APA has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9007, 9008, and 9014, ~~and in compliance with the Bidding Procedures Order,~~ to each party entitled to receive such notice.  ~~With respect to entities whose identities are not~~

9

reasonably ascertained by the Debtors, publication of the Notice of Successful Bidder once in the *Wall Street Journal* on November 5, 2024, as evidenced by the affidavit of publication the Debtors filed at D.I. 1013 in these chapter 11 cases, was, and is deemed, sufficient, and reasonably calculated under the circumstances to reach such entities. The notices described herein constitute good and sufficient notice, and were appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale, this Sale Order, and the Sale Hearing is, or shall be, required.

J.    K. The notices provided all interested parties with timely and proper notice of the Motion, this Sale Order, the Sale, the Sale Hearing, the Bidding Procedures Order, the Bidding Procedures, the Bidding Procedures Hearing, the Auction, related deadlines and requirements, the assumption, assignment, and sale of the Assigned Contracts, and the other relief granted herein and related to the transactions contemplated under the APA.

K.    L. Disclosures.  The disclosures the Debtors made in the Motion, the Notice of Successful Bidder, and related documents filed with the Court concerning the APA, the Auction, the Sale, and the Sale Hearing were good, complete, and adequate.

L.    M. Best Interests of the Estates, Creditors, and Parties in Interest.  Given all the facts and circumstances of these chapter 11 cases and the adequacy and fair value of the consideration the Buyer shall provide to the Selling Entities under the APA, the Sale constitutes a reasonable and sound exercise of the Debtors' business judgment, is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, and should be approved.

M.    N. Sound Business Purpose.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code

10

and pursuant to the APA because, among other reasons, (a) the APA constitutes the highest or otherwise best offer for the Assets, (b) the APA and the closing of the Sale thereunder present the best available opportunity to realize the value of the Assets, and (c) any other transaction would not have yielded as favorable an economic result given the circumstances.

O.   The Debtors have therefore Sale and Marketing Process.  The Bidding Procedures set forth in the Bidding Procedures Order are non-collusive, proposed and executed in good faith as a result of arms'-length negotiations, designed to maximize the value of the Assets, and substantively and procedurally fair to all parties.  The Debtors conducted the sale and marketing process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order.   The sale and marketing process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase, and to competitively bid on, the Assets relative to all other interested parties, including the Buyer and all other bidders that participated in the Auction.  All potential purchasers had a full and fair opportunity to participate in the sale and marketing process and to make higher or better offers for the Assets relative to the Successful Bid.

P. Successful Bidder.   The Debtors determined, in a sound exercise of their business judgment and in accordance with the Bidding Procedures Order, that the Buyer's bid represented offer as contained in the APA represents the highest or otherwise best offer for the Assets.  As a result, the Debtors properly and adequately declared the Buyer as the Successful Bidder for the Assets in the Notice of Successful Bidder given the circumstances presently facing these Debtors.

30652314.1

#99666180v21

N.        Q. Good Faith and No Collusion.  The APA, including the Agency Agreement, was negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and as the result of arm's-length bargaining positions and is substantively and procedurally fair to all parties.  Neither the Buyer nor any of the Buyer's affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective representatives, successors, or assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, and no common identity of incorporators, directors, managers, or controlling stockholders existed between the Debtors and the Buyer.  The Buyer has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among bidders. The Debtors and the Buyer have not engaged in any conduct that would cause or permit the APA to be avoided or damages to be assessed against the Buyer or any other party under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-bankruptcy law.  The Buyer (including any Designated Buyer) is purchasing the Assets, in accordance with the APA, in good faith, and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to all the protections afforded by such provision and otherwise has proceeded in good faith in all respects in connection with the Debtors' chapter 11 cases.  As demonstrated by (a) the Rifkin Percy Declaration, (b) any testimony and other evidence proffered or adduced at the Sale Hearing, and (c) the representations of counsel made on the record at the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bidding Procedures Order and, among other things:  (i) the Debtors and Buyer complied with the provisions in the Bidding Procedures Order; (ii) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iii) the Buyer recognized

that the Debtors were free to deal with any other party interested in purchasing and ultimately acquiring the Assets; (~~iv~~ii) the Buyer in no way induced or caused the Debtors' chapter 11 filing; (~~v~~iii) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been fully and properly disclosed; (~~vi~~iv) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (~~vii~~v) the negotiation and execution of the APA and Agency Agreement, including the Sale contemplated thereby, were at arms'-length and in good faith.  There was and is no evidence of insider influence or improper conduct in any manner by the Buyer or any of its affiliates in connection with the negotiation, and ultimate execution, of the APA (including the Agency Agreement) with the Debtors.

O. ~~R.~~ Highest and Best Bid and Fair Consideration.  The consideration the Buyer shall provide to the Selling Entities pursuant to the APA (~~a~~including the Agency Agreement) (i) is fair and reasonable, (~~b~~ii) is the highest or otherwise best offer for the Assets, (~~c~~iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Voidable Transactions Act (formally the Uniform Fraudulent Transfer Act), Uniform Fraudulent Conveyance Act, section 548 of the Bankruptcy Code, and other similar laws), and (~~d~~iv) will provide a greater recovery to the Debtors' estates than would be provided by any other available alternative. Taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Assets for greater economic value to the Debtors or their estates. ~~Therefore, following a full, fair, and robust sale and marketing process and the Auction, the~~The Debtors' determination that the APA (including the Agency Agreement) constitutes the highest and otherwise best offer for the Assets and the Debtors'

~~selection of the Buyer as the Successful Bidder~~determination to seek approval of the APA (including the Agency Agreement) and the sale transactions embodied therein each constitute a valid and sound exercise of the Debtors' business judgment and the Debtors' decision to enter into the APA (including the Agency Agreement) and consummate the transactions contemplated thereunder constitutes a proper exercise of the fiduciary duties of the Debtors and their officers and directors.

P.        ~~S. Purchaser~~Buyer Not a Successor.  The transactions contemplated under the APA do not amount to a consolidation, merger, or *de facto* merger of the Buyer, any Designated Buyer, and the Debtors and/or the Debtors' estates; there is not substantial continuity between the Buyer any Designated Buyer, and the Debtors; there is no continuity of enterprise between the Debtors and the Buyer~~;~~ or any Designated Buyer; neither the Buyer nor any Designated Buyer is ~~not~~ a mere continuation of the Debtors or their estates; and neither the Buyer nor any Designated Buyer is ~~not~~ a successor or assignee of the Debtors or their estates for any purpose including, but not limited to, under any federal, state, or local statute or common law, or revenue, pension, ERISA, COBRA, tax, labor, employment, environmental (including, without limitation, the Comprehensive Environmental Response Compensation and Liability Act, as amended), escheat, or unclaimed property laws, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine or common law, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation, or doctrine.  ~~The~~ Except for the Assumed Liabilities or Permitted Encumbrances or as otherwise set forth in the APA or this Sale Order, neither the Buyer and its affiliates, nor any Designated Buyer, shall have ~~no~~any liability or

obligation under the Workers Adjustment and Retraining Act (the "WARN Act"), 929 U.S.C. §§ 210 *et seq.* or the Comprehensive Environmental Response Compensation and Liability Act, as amended or analogous foreign, state, or local laws and shall not be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disability Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the Employee Retirement Income Security Act, the Multiemployer Pension Protection Act, the Pension Protection Act, and/or the Fair Labor Standards Act.  Except for the Assumed Liabilities or Permitted Encumbrances or as otherwise set forth in the APA or this Sale Order, the (a) transfer of the Assets to Buyer or any Designated Buyer, as applicable, and (b) assumption and assignment to the Buyer or any Designated Buyer, as applicable, of the Assigned Contracts do not and shall not subject the Buyer or any Designated Buyer, as applicable, to any liability whatsoever with respect to the operation of the Debtors' business before the applicable Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, either directly, or based on, in whole or in part, directly or indirectly, any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability, in each case regardless of whether such law or theory purports to apply any liability directly to the Buyer or any Designated Buyer, as applicable, rather than in a successor or transferee capacity.

      Q.      T. No *Sub Rosa* Plan.  The Sale neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates the terms of a plan of reorganization of the

Debtors.   The   Sale   does   not   constitute   a   *sub rosa*   or   *de facto*   plan   of   reorganization   or liquidation.

R.      U. Valid Transfer.  The transfer of the Assets to the Buyer (or any Designated Buyer, as applicable), including the consummation of the transactions contemplated by the Agency Agreement, shall be as of the applicable Closing Date a legal, valid, and effective transfer of such assets, and vests or shall vest the Buyer (or any Designated Buyer, as applicable) with all right, title, and interest to the Assets free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances.

S.      V. Free and Clear Sale.  The Debtors may sell the Assets free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances (as may be modified by this Sale Order), as contemplated under the APA (including the Agency Agreement), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.   Holders of Encumbrances and non-Debtor parties to Assigned Contracts that affirmatively consented to the Sale and the entry of this Sale Order (on the record or otherwise), or did not object, or who withdrew their objections to the Motion or the Sale, are deemed, subject to the terms of this Sale Order, to have consented to the Sale pursuant to sections 363(f)(2) and 365(c)(1) of the Bankruptcy Code and shall be forever barred and estopped from pursuing or asserting any right, title, claim, or interest against the Buyer, or any Designated Buyer, or any of its, or their, respective assets, property, affiliates, successors, assigns, or the Assets.  All holders of Encumbrances are adequately protected by having their Encumbrances, if any, attach to the net cash proceeds the Debtors shall receive in connection with the Sale that are ultimately attributable to the property against or in which such Encumbrances are asserted, subject to the terms of such Encumbrances with the same validity,

30652314.1

#99666180v21

force, and effect, and in the same order of priority, which such Encumbrances now have against the Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

T. ~~W.~~ If the Sale were not free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances (as may be modified by this Sale Order), if the Buyer (or any Designated Buyer, as applicable) would, or in the future could, be liable for any Encumbrances other than Assumed Liabilities and Permitted Encumbrances, or if the Buyer (or any Designated Buyer, as applicable) could be liable for any liabilities related to the Debtors' business under any law or statute that purports to apply to the Buyer (or any Designated Buyer, as applicable) in the first instance rather than as successor or transferee, the Buyer (or any Designated Buyer, as applicable) would not have entered into the APA and would not consummate the Sale, thus adversely affecting the Debtors, their estates, their creditors, and all other parties in interest. A sale of the Assets other than one free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances would yield substantially less value for the Debtors' estates, with less certainty, than the Sale. Therefore, the Sale contemplated under the APA is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

U. ~~X.~~ Assigned Contracts. The Debtors have demonstrated that it is an exercise of their sound business judgment for the Debtors to assume and assign the Assigned Contracts to the Buyer (or a Designated Buyer, as applicable) pursuant to the terms of this Sale Order and the APA (including, without limitation, the Designation Rights procedures contained in the APA), in each case in connection with the consummation of the Sale, and subject to the Designation Rights procedures contained in the APA (the "Designation Rights Procedures"), the assumption

30652314.1

#99666180v21

and assignment of the Assigned Contracts is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest. The Assigned Contracts being assigned to ~~the~~any Designated Buyer under the APA are an integral part of the APA and the Sale, and accordingly such assumptions and assignments are reasonable, fair under applicable law or rules, and enhance the value of the Debtors' estates.

V.    ~~Y.~~ The Debtors and the <u>Buyer, or any Designated</u> Buyer, as applicable, have, or will have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), 365(b)(1)(B), and 365(f) of the Bankruptcy Code, in connection with the sale and assumption and assignment of the Assigned Contracts to the extent provided under this Sale Order and the APA and have: (a) cured or will cure any default existing prior to the ~~Closing Date under~~<u>effective date of any assumption and assignment of</u> any of the Assigned Contracts, within the meaning of section 365(b)(l)(A) of the Bankruptcy Code; (b) provided or will provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code; and (c) have provided or will provide adequate assurance of future performance with respect to the Assigned Contracts, within the meaning of sections 365(b)(1), 365(b)(3) (to the extent applicable), and 365(f)(2) of the Bankruptcy Code. The Assigned Contracts are assignable notwithstanding any provisions contained therein to the contrary.

W.    ~~Z.~~ <u>Consumer Privacy Provisions</u>. The sale of personally identifiable information contemplated in the APA, if any, is consistent with the Selling Entities' privacy policies and satisfies the requirements of section 363(b)(1)(A) of the Bankruptcy Code.

18

X.    ~~AA.~~ Single, Integrated Transaction.  The APA (including the conduct of the Store Closing Sale under the Agency Agreement) and Sale must be approved and the Initial Closing must occur promptly to preserve the value of the Assets and the Debtors' estates.  The provisions of this Sale Order and the APA (including the Agency Agreement) and the transactions contemplated under this Sale Order and the APA (including the Agency Agreement) and the Sale to the Buyer, and any Designated Buyer, are inextricably linked and technically and collectively constitute a single, integrated transaction.

Y.    ~~BB.~~ Consummation is Legal, Valid and Authorized.  The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all the applicable requirements of such sections have been complied with in respect of the Sale.

Z.    ~~CC.~~ Waiver of Stay.  Time is of the essence in effectuating the APA and proceeding with the transactions contemplated therein without interruption.  Accordingly, cause exists to waive the stay to the extent necessary, as contemplated by Bankruptcy Rules 4001(a), 6004(h), and 6006(d) to permit the immediate effectiveness of this Sale Order.

AA.    ~~DD.~~ Legal and Factual Bases.  The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The relief requested in the Motion is granted as set forth herein.

2.    Any and all objections and responses to the Motion that have not been withdrawn, waived, settled, adjourned (as set forth on the Agenda filed prior to the Sale Hearing) or

30652314.1

#99666180v21

resolved, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice. ~~Notwithstanding anything to the contrary herein, the Debtors will identify the applicable assignee entity for all real property leases in (i) the filed schedule of Assigned Contracts in advance of the Closing, or (ii) the Designated Lease Notice. With respect to cure disputes, the Debtors will address the cure objections at a later hearing date, to the extent not resolved by ordinary course reconciliation or otherwise consensually resolved. The Debtors will also address all unresolved assumption and adequate assurance objections at a later, separate hearing date. Accordingly, notwithstanding anything to the contrary in the APA or this Sale Order, a landlord's timely filed objection challenging assumption that has not been consensually resolved or withdrawn as of the date of entry of this Sale Order, including any adequate assurance-related issues (including evidence), is expressly reserved until a hearing on December 19, 2024, or such later proceeding is scheduled on lease assumptions. No landlord needs to object to or challenge the assumption or assumption and assignment of their leases as part of the Sale, including any challenge to the Debtors' adequate assurance evidence and cure amounts at the Sale Hearing, to preserve their rights for that later hearing to the extent that such landlord has already timely objected and such objection remains unresolved as of the date of this Sale Order. While the Debtors may rely on similar evidence in connection with lease assumption issues, the Debtors will not argue issue preclusion as it relates to adequate assurance or cure evidence or findings that may be relevant to lease assumption issues.~~; *provided* that the foregoing shall not prejudice any applicable Counterparty's rights with respect provided under the Designation Rights and the Designation Rights Procedures (each as defined herein).

3.     Notice of the Motion~~, the Bidding Procedures Order, the Auction~~, the Sale Hearing, and the Sale was fair and equitable under the circumstances and complied in all

respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008, the Local Rules, and applicable law.

~~4.   The Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, are incorporated herein by reference. No appeal, motion to reconsider, or similar pleading has been filed with respect to the Bidding Procedures Order, and the Bidding Procedures Order is a final order of the Court, has not been vacated, withdrawn, rescinded, or amended and remains in full force and effect.~~

**Approval of the Sale of the Assets**

4.   ~~5.~~ The APA, including all other ancillary documents, agreements, instruments, notices, and papers related thereto or contemplated thereunder, including, but not limited to, the Agency Agreement, and all the terms and conditions thereof, and the Sale and related transactions contemplated thereunder, are hereby approved in all respects unless otherwise set forth in this Sale Order.

5.   ~~6.~~ Pursuant to sections 363 and 365 of the Bankruptcy Code, the Selling Entities' entry into the APA (including the Agency Agreement), and any other ancillary documents required in connection with Sale, is hereby authorized and approved as a valid exercise of their business judgment.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to continue performance under and make all payments required by the APA and Agency Agreement (on the terms and conditions set forth herein) and all other ancillary documents as and when due thereunder without further order of the Court.  Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, acting by and through their agents, representatives, directors, and officers, are authorized and empowered to take any and all actions necessary or appropriate to:  (a) consummate and close the Sale pursuant to and in accordance with the terms

21

30652314.1

#99666180v21

and conditions of this Sale Order and the APA (including the Agency Agreement); (b) transfer and assign all right, title, and interest to all property, licenses, and rights to be conveyed in accordance with the terms and conditions of this Sale Order and the APA; and (c) execute and deliver, perform under, consummate, and implement this Sale Order and the APA (including the Agency Agreement) and all additional instruments and documents that may be reasonably necessary or desirable to implement this Sale Order, the APA, the Agency Agreement, and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated under this Sale Order, the APA, and any other ancillary documents.  The Debtors are further authorized to pay, without further order of the Court, whether before, at or after the Closing, any amounts that become payable by the Debtors pursuant to the APA, the Agency Agreement, or ancillary documents (on the terms and conditions set forth herein), together with other fees and expenses approved by the Court. Such amounts shall:  (a) constitute allowed administrative expenses of the Debtors' estates under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code (~~and in the case of the payment of the Bid Protections to the Stalking Horse Bidder, if applicable, shall constitute superpriority administrative expenses of the Debtors' estates with priority over any and all administrative expenses of any kind, including those specified under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code (~~provided that the priority of such ~~superpriority~~ administrative claims shall ~~be junior to the Carve Out and the Wind-Down Budget, and shall~~ in no circumstance so long as the DIP Obligations or the Prepetition Secured Obligations remain outstanding, be *pari passu* with or senior to the claims granted to the DIP Credit Parties or the Prepetition Secured Creditors~~); ⁴ and any requirement that the Stalking Horse Bidder file a proof of claim for, or~~

---

⁴    ~~Capitalized terms used in this paragraph 6, or paragraphs 20, 64 or 77,  that are not otherwise defined herein shall have the meanings ascribed to such terms in the *Interim Order Under Bankruptcy Code*~~

~~otherwise request allowance of, such administrative expense claim(s) is hereby waived; and the Debtors, in accordance with the terms of the Bidding Procedures Order, are authorized and directed to make payment to the Stalking Horse Bidder on account of such administrative expense claim(s) without need for further order of the Court~~, respectively); (b) be treated with such priority if the chapter 11 cases convert to cases under chapter 7 of the Bankruptcy Code; and (c) not be discharged, modified, or otherwise affected by any reorganization or liquidation plan for any of the Debtors, except by written agreement with the Buyer (such agreement to be provided in the Buyer's sole discretion).  Neither the Buyer nor the Selling Entities shall have any obligation to proceed with the Closing under the APA until all conditions precedent to their respective obligations to do so have been met, satisfied, or waived in accordance with the terms of the APA.

6.     ~~7.~~ The Debtors are authorized to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units (as defined in section 101(27) of the Bankruptcy Code), any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the APA, any related agreements and this Sale Order, including amended and restated certificates or articles of incorporation and bylaws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors or Buyer (or any Designated Buyer, as

---

~~herein shall have the meanings ascribed to such terms in the~~ *~~Interim Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364(c-d), 503, 506, 507, and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Post-Petition Financing and (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Providing Adequate Protection to Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief~~* ~~(the "Interim DIP Order" and, upon entry of a final order, the "Final DIP Order" and, together with the Interim DIP Order, the "DIP Orders").~~

23

applicable), as the case may be, may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

7. 8. This Sale Order shall be binding in all respects upon the Debtors, their estates, all their creditors, all holders of equity interests in the Debtors, all holders of any Encumbrances against the Debtors, any holders of Encumbrances against or on all or any portion of the Assets, all counterparties to any executory contract or unexpired lease of the Debtors, the Buyer and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in these chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' bankruptcy cases. The terms and provisions of the APA and this Sale Order shall inure to the benefit of the Debtors, their estates, their creditors, the Buyer (including any Designated Buyer, as applicable), and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, (and any Designated Buyer, as applicable), and any other affected third parties, including all persons asserting any Encumbrances in the Assets to be sold to the Buyer (including any Designated Buyer, as applicable) pursuant to the APA and Agency Agreement, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding. This Sale Order shall survive any dismissal or conversion of any of these chapter 11 cases or any dismissal of any subsequent chapter 7 cases. Nothing contained in any chapter 11 plan of reorganization or liquidation confirmed in any of these chapter 11 cases, any order confirming any such chapter 11 plan of reorganization or liquidation or any order approving the wind-down

or dismissal of any of these chapter 11 cases or any subsequent chapter 7 cases (including any discharge of Claims thereunder) or otherwise shall alter, conflict with, or derogate from the provisions of this Sale Order or the APA (including the Agency Agreement), and to the extent of any conflict or derogation between this Sale Order or the APA (including the Agency Agreement) and such future plan or order, the terms of this Sale Order and the APA (including the Agency Agreement) shall control. To the extent of any conflict between the terms of this Sale Order and, the APA, or the Agency Agreement, except as otherwise set forth in this Sale Order, the terms of this Sale Order shall control.

## Sale and Transfer of the Assets

8.    9.  Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Assets to the Buyer (or a Designated Buyer, as applicable) in accordance with the APA, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Assets and shall vest the Buyer (or a Designated Buyer, as applicable) with title in and to the Assets and, other than the Assumed Liabilities or Permitted Encumbrances or as otherwise set forth in this Sale Order, the Buyer (or a Designated Buyer, as applicable) shall take title to and possession of the Assets free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) and other interests of any kind or nature whatsoever, including, but not limited to, "bulk sale" rules (or similar laws) and theories of successor or successor-in-interest liability regardless of whether such theory, rule, or law would purport to provide for the Buyer's (or a Designated Buyer's, as applicable) direct liability rather than merely as a successor of the Selling Entities and claims in respect of the Excluded Liabilities, with all such Encumbrances and other interests to attach to the net cash proceeds the Debtors receive in connection with the Sale that are ultimately attributable to the

property against or in which such Encumbrances are asserted, subject to the terms of such Encumbrances with the same validity, force, and effect, and in the same order of priority, which such Encumbrances now have against the Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto. Those holders of such Encumbrances, counterparties to Assigned Contracts, and other parties in interest that did not object (or that ultimately withdrew their objections, if any) to the Sale are deemed to have consented to such Sale being free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances or as otherwise set forth in this Sale Order) pursuant to sections 363(f)(2) and 365(c)(1) of the Bankruptcy Code, or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Encumbrance, claim, right, interests, or otherwise that constitute interests in the Assets, if any, attach solely to the proceeds of the Sale ultimately attributable to the property in which they have an interest, in each case with the same validity, force and effect that such holders had prior to the entry of this Sale Order, and subject to any claims and defenses of the Debtors.  Neither the process by which any of the Assets were sold, nor the results of such Sale in the APA (as opposed to selling the Assets to any other party), create claims of any kind against either the Buyer (or a Designated Buyer, as applicable) or the Debtors, and no claims arising out of the sale process or the Sale shall be brought against the Buyer (or any Designated Buyer, as applicable) or the Debtors.

9.    10. Pursuant to the APA, the sale of the Avoidance Actions described in Section 2.01(b)(xviii) of the APA  (excluding the right to assert setoff rights that may arise from Avoidance Actions in relation to any Liability that is not an Assumed Liability, which right shall be retained by the Debtors), and all other claims, causes of action, lawsuits, judgments,

privileges, counterclaims, defenses, rights of recovery, rights of setoff, rights of subrogation, and all other rights of any kind in each case under any other provision of the Bankruptcy Code or Applicable Laws~~, solely relating to vendors and service providers used in the Business after the Closing~~ (the "Purchased Avoidance Actions") is hereby approved. ~~To the extent any Purchased Avoidance Action is not assignable to the Buyer or any of its affiliates, the Debtors, and any chapter 11 or chapter 7 trustee (or any other designee) of any of the Debtors and their estates, shall be prohibited from bringing any such Purchased Avoidance Actions.~~

10.    ~~11.~~ Unless otherwise expressly included in the definition of "Assumed Liabilities" or "Permitted Encumbrances" in the APA or as otherwise set forth in this Sale Order, neither the Buyer nor any Designated Buyer shall ~~not~~ be responsible for any Encumbrances, including, for the avoidance of doubt, any Claims (as defined in section 101(5) of the Bankruptcy Code).

11.    ~~12.~~ Notwithstanding anything to the contrary in this Sale Order or the APA, with respect to each Assigned Contract, upon assumption and assignment of such Assigned Contract to the Buyer (or a Designated Buyer, as applicable), the Buyer (or a Designated Buyer, as applicable) shall be responsible for all obligations under such Assigned Contract, *cum onere* ~~after giving effect to the Agreed Modifications, if any~~, including, without limitation, liabilities for any default under such Assigned Contract, in each case arising or occurring after such assumption, assignment and sale, and for payment or performance of any and all obligations under such Assigned Contract arising or occurring after such assumption, assignment and sale when due in accordance with the terms of such Assigned Contract (irrespective of whether such obligations accrued before, on, or after assumption and assignment of the Assigned Contract), including with respect to (a) claims for indemnification, and (b) year-end adjustment and reconciliation amounts that become due or accrue after the entry of this Sale Order, including for

30652314.1

#99666180v21

royalties, rents, utilities, taxes, insurance, fees, common area or other maintenance charges, promotional funds, and percentage rent, in each case subject to the terms and conditions of the Assigned Contract, and subject to any defenses provided by such Assigned Contract and applicable non-bankruptcy law and unless otherwise agreed with the counterparty to the Assigned Contract. To the extent the Buyer (or any Designated Buyer, as applicable) relies on the Debtors' existing insurance coverage to satisfy any such assumed indemnification obligations under any Assigned Contracts, any deductibles or self-insured retention amount shall be the responsibility of the Buyer (or any Designated Buyer, as applicable), except to the extent the applicable Selling Entity has already satisfied any such insurance deductibles or self-insured retention amount.

12.    13. On the applicable Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Assets or a bill of sale transferring the Debtors' good and marketable title in such Assets to the Buyer (or any Designated Buyer, as applicable) pursuant to the terms set forth in this Sale Order and the APA. This Sale Order is and shall be effective as a determination that, on the Initial Closing Date, all Encumbrances or other interests of any kind or nature whatsoever existing as to the Assets prior to the Initial Closing Date, other than the Assumed Liabilities or Permitted Encumbrances or as otherwise set forth in this Sale Order, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been affected. This Sale Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all

other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and the Agency Agreement.  A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Encumbrances and other interests of record except those assumed as Assumed Liabilities or Permitted Encumbrances.

13.    14. Subject to the terms and conditions of this Sale Order, the transfer of the Assets to the Buyer (or any Designated Buyer, as applicable) pursuant to the APA (including the Agency Agreement) and the consummation of the Sale and any related actions contemplated thereby do not require any consents other than as specifically provided for in this Sale Order and the APA and the Agency Agreement, constitute a legal, valid, and effective transfer of the Assets, and shall vest the Buyer (or any Designated Buyer, as applicable) with right, title, and interest in and to the Assets as set forth in this Sale Order and the APA and Agency Agreement, as applicable, free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances.

15. Upon the Closing Date, Buyer is acquiring all claims and causes of action of the Selling Entities against any current or former employee, director or officer of any Selling Entity that is hired or retained by Buyer or its affiliates on or within 90 days of the Closing Date.  Notwithstanding anything to the contrary in this Sale Order or the APA, all claims and causes of action of the Selling Entities against any current or former employee, director or officer of any

Selling Entity that is not hired or otherwise retained by Buyer or its affiliates on or within 90 days of the Closing Date shall not be transferred to Buyer or its affiliates unless and until either (a) this Court on notice and a hearing has entered a further order approving such transfer or (b) a settlement is reached, and notice of which is filed on the Bankruptcy Court's docket, among the Committee, Blue Owl, Buyer and Seller pursuant to which each agree to such transfer. All rights of the Committee, Blue Owl Real Estate Capital LLC, Buyer and Seller with respect to the transfer of such claims are reserved notwithstanding entry of this Sale Order. Buyer has provided to the Committee a list of individuals that Buyer believes in good faith will be employed or retained by the company following the closing of the Sale, which list may be updated up until five days prior to the Closing Date. For the avoidance of doubt, upon the Closing Date, Buyer is acquiring all claims and causes of action of the Selling Entities against any individuals on such list as it exists as of five days prior to the Closing Date. Any claims or causes of action against any current or former employee, director or officer of any Selling Entity who is not on such list but who is hired or otherwise retained by Buyer or its affiliates in good faith on or within 90 days of the Closing Date shall also be acquired by Buyer, provided that Buyer shall provide notice to the Committee within 10 days after the hiring or retention of any such individual, and the Committee shall have until 10 days thereafter to file an objection with the Bankruptcy Court to the acquisition by the Buyer of any claims or causes of action against such individual, which objection shall be based solely on an argument that the Buyer employed or retained such individual in bad faith in order to take advantage of this paragraph rather than because of Buyer's good faith desire to employee or retain such individual for genuine business reasons. If any such objection is timely filed, Buyer shall not be deemed to acquire claims and causes of action against any such individual absent further order of court resolving such objection, absent

30

~~resolution between the Buyer and the Committee or further order of this Court. In addition, notwithstanding anything to the contrary in this Sale Order or the APA, no claims or causes of action against the Released Parties~~ (as defined in the Final DIP Order) ~~shall constitute Assets (as defined in the APA), and such claims and causes of action shall not be transferred to Buyer or its affiliates but instead~~ for the avoidance of doubt ~~shall be released pursuant to paragraph 64 of this Sale Order.~~

14. ~~16.~~ All entities that are presently, or on the applicable Closing Date may be, in possession of some or all of the Assets to be sold, transferred, or conveyed (wherever located) to the Buyer (or any Designated Buyer, as applicable) pursuant to this Sale Order ~~and,~~ the APA and the Agency Agreement are hereby directed to surrender possession of the Assets to the Buyer (or any Designated Buyer, as applicable) on the applicable Closing Date.

15. ~~17.~~ Upon Closing, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) against or in the Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) that the person or entity has with respect to the Assets, then (a) the Debtors may request that the applicable person or entity execute and file such termination statements, releases, instruments of satisfaction, or other documents with respect to the Assets, and, to the extent such person or entity fails to do so, may execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets, and (b) the Buyer (or any Designated Buyer, as applicable) is hereby authorized to file, register, or otherwise record a

31

certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances against or in the Assets of any kind or nature (other than Assumed Liabilities and Permitted Encumbrances).  For the avoidance of doubt, upon Closing, the Buyer (or any Designated Buyer, as applicable) is authorized to file termination statements, lien terminations, or other amendments in any required jurisdiction to remove and record, notice filings or financing statements recorded to attach, perfect, or otherwise notice any Encumbrances that are extinguished or otherwise released pursuant to this Sale Order under section 363 of the Bankruptcy Code and the related provisions of the Bankruptcy Code. Notwithstanding the foregoing, the provisions of this Sale Order shall be self-executing and neither the Debtors nor the Buyer (or its designee, including any Designated Buyer) shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

16.    18.  Except for the Assumed Liabilities or Permitted Encumbrances or as otherwise set forth in this Sale Order, neither the Buyer nor any of its designees (including any Designated Buyer) shall have any liability or other obligation of the Debtors arising under or related to any of the Assets, including, but not limited to, any liability for any Encumbrances, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the applicable Closing Date.

17.    19.  Except to the extent included in Assumed Liabilities or Permitted Encumbrances or as otherwise set forth in this Sale Order, or as necessary to enforce the APA

and Agency Agreement, all persons and entities, including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts and unexpired leases, contract counterparties, customers, licensors, litigation claimants, employees and former employees, dealers and sale representatives, and trade or other creditors holding Encumbrances against or in the Debtors and their estates or the Assets arising under or out of, in connection with, or in any way relating to, the transfer of the Assets to the Buyer (or any Designated Buyer, as applicable), or any entities or individuals asserting any interests in the Assets, hereby are forever barred, estopped, and permanently enjoined from asserting any Encumbrances against the Buyer (or any Designated Buyer, as applicable), the permitted successors and assigns of the Buyer the Buyer (or any Designated Buyer, as applicable), the property of the Buyer the Buyer (or any Designated Buyer, as applicable) or its permitted successors and assigns, or the Assets including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against Buyer, any Designated Buyer, its successors and assigns, assets, or properties; (b) enforcing, attaching, collecting, or recovering, in any manner, any judgment, award, decree, or order against the Buyer, any Designated Buyer, its successors and assigns, or their assets or properties; (c) creating, perfecting, or enforcing any Encumbrance, lien, claim, or interest against the Buyer, any Designated Buyer, its successors and assigns, their assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Buyer, any Designated Buyer, or its successors and assigns (except in connection with Assigned Contracts consistent with paragraph 1211 of this Sale Order); (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect

thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets.

18.    ~~20.~~ As of and after the Initial Closing and any subsequent Closing, as applicable, any and all valid and perfected liens or interests in the Assets (other than the Permitted Encumbrances and the Assumed Liabilities) shall attach to any proceeds of the Sale immediately upon receipt of such proceeds by the Debtors in the order of priority, and with the same validity, force and effect which they now have against such Assets, subject to any rights, claims, and defenses of the Debtors, the Debtors' estates or any trustee for any Debtor, or any statutory committee or any party (to the extent any such rights, claims, and defenses exist), as applicable, may possess with respect thereto; *provided*, *however*, that setoff rights shall be extinguished to the extent there is no longer mutuality after the consummation of the Sale. At the Initial Closing, the Debtors (or the Buyer at the Debtors' direction) shall transfer, or cause to be transferred, proceeds generated from the sale of the Assets contemplated herein to the DIP Agents and the Prepetition Agents, as applicable; free and clear of any and all liens, claims and encumbrances, which shall be in an amount not less than necessary to fully fund ~~the following two items~~ and shall be applied ~~as follows: (i) first, to fully fund the Carve Out Reserves~~ in accordance with the DIP Orders (whereupon such funding, the DIP Credit Parties and Prepetition Secured Creditors shall have no further obligation to fund the Carve Out Reserves); and (ii) second,~~ for permanent application against the DIP Obligations and the Prepetition Secured Obligations in accordance with the terms and conditions of the Final DIP ~~Orders~~Order and the DIP Loan Documents until the DIP Obligations and the Prepetition Secured Obligations have been Paid in Full ~~(which for.~~ For the avoidance of doubt ~~includes amounts used to fund the Carve Out in item (i)).~~, any cash

collateral delivered in connection with the DIP ABL Facility and the Prepetition ABL Facility being "Paid in Full" pursuant to the payoff letter entered in connection therewith shall be held in a "Big Lots For Benefit Of" account (the "ABL FBA Account") at PNC Bank, N.A. for the benefit of the DIP ABL Lenders and the Prepetition ABL Lenders. The DIP ABL Lenders and the Prepetition ABL Lenders shall have a first priority, perfected security interest on the ABL FBA Account, and the Debtors and Buyer (and any Designated Buyer) shall have no control of, or ability to withdraw from, the ABL FBA Account in any respect. Similarly, any cash collateral delivered in connection with the DIP Term Facility and the Prepetition Term Facility being "Paid in Full" pursuant to the payoff letter entered in connection therewith shall be held in an account to be identified by the DIP Term Agent (the "Term FBA Account") for the benefit of the DIP Term Lenders and the Prepetition Term Lenders. The DIP Term Lenders and the Prepetition Term Lenders shall have a first priority, perfected security interest on the Term FBA Account, and the Debtors and Buyer (and any Designated Buyer) shall have no control of, or ability to withdraw from, the Term FBA Account in any respect.  Prior to the occurrence of the foregoing and the payment in full of the DIP Obligations and the Prepetition Secured Obligations in accordance with the Carve Out provisions (including paragraph 29) of the Final DIP Order, the Debtors shall transfer all funds held in the Professional Fee Account to an escrow account held by an escrow agent reasonably acceptable to the Debtors (such transfer, the "Professional Fee Escrow Transfer" and such escrow account, the "Professional Fee Escrow Account").  For the avoidance of doubt, following the occurrence of the Professional Fee Escrow Transfer, all Professional Persons shall continue to have a first-priority claim over the funds held in the Professional Fee Escrow Account, with priority over all administrative expense claims and unsecured claims against the Debtors and their estates of any kind or nature whatsoever,

35

including, without limitation, (x) any remaining obligations of the DIP Credit Parties or the Prepetition Secured Parties that survive termination of the DIP Obligations, including any contingent indemnification claims, (y) administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, and 1114 of the Bankruptcy Code, and (z) any DIP Liens or Adequate Protection Liens (each as defined in the Final DIP Order).  The Debtors shall continue to pay Professional Persons as and when the same may become due and payable, the Allowed Professional Fees of Professional Persons, from the funds held in the Professional Fee Escrow Account.  Upon the Initial Closing, in accordance with the terms of the APA, Buyer shall deposit $7,500,000 in cash to fund the Professional Fee Escrow Amount, and shall fund $1,500,000 beginning February 7, 2025 and each Friday thereafter through February 28, 2025, which all such amounts shall be deposited by Buyer into the Professional Fee Escrow Account.  Such Payments shall be an advance on the Buyer's assumption of the Professional Fees Amount in accordance with the APA. For the avoidance of doubt, at and after the Initial Closing, upon payment in full of the DIP Obligations and the Prepetition Secured Obligations, the DIP Credit Parties and Prepetition Secured Creditors shall have no further obligation to fund the Carve-Out or the Carve Out Reserves or otherwise to fund any amount owing by the Debtors to Professional Persons.  For the further avoidance of doubt, the Debtors' reversionary interest, if any, in any funds held in the ABL FBA Account and the Term FBA Account, and the proceeds thereof, shall constitute an Acquired Asset in accordance with Section 2.01(a)(xxiv) of the APA.

19.    Consistent with the Final DIP Order, not later than 6:00 p.m. New York time on Tuesday of each week beginning with the week ending January 10, 2025, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount

of the fees and expenses incurred during the preceding week (through the Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement").

20.    If any Professional Person fails to deliver a Weekly Statement within three calendar days after such Weekly Statement is due, then the estimated aggregate unpaid amount of professional fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period (if any) shall be the aggregate unpaid amount of professional fees included in the budget prepared by the Debtors as of the Initial Closing Date (and which may be updated from time to time by the Debtors) for such period for such Professional Person.  If at any time the cumulative aggregate amounts reported in the Weekly Statements, or estimated pursuant to the foregoing sentence, exceed the total amount Buyer is obligated to fund into the Professional Fee Escrow Account (after adding the amount of the Professional Fee Escrow Transfer), then the Debtors shall immediately notify the Buyer and, within one (1) Business Day of receipt of such notice, such additional amount shall be funded by the Buyer into the Professional Fee Escrow Account to cover the shortfall.  Buyer's obligation to fund the foregoing shortfall shall be capped by the amount of payments Buyer is required to make under the APA Administrative Budget and the Winddown Budget, and any payments to be made by the Buyer to the Debtors' estates in accordance with the APA Administrative Budget and the Winddown Budget shall be reduced by the amount of such shortfall.  If following any payments made by the Buyer, the funds in the Professional Fee Escrow Account are insufficient to pay all Allowed Professional Fee claims (the "Professional Fee Shortfall"), then the

Professional Persons shall continue to have a superpriority administrative expense claim, senior to all other claims, against, and a superpriority lien, senior to all other liens, on, all remaining assets in the Debtors' estates for such Professional Fee Shortfall.  Any amounts remaining in the Professional Fee Escrow Account after the payment in full of all Professional Fees Amount of Professional Persons pursuant through the final Closing shall be returned to the Debtors.

21.     Neither the Buyer, any Designated Buyer, nor its affiliates, successors, and assigns, shall have nor incur any liability to, or be subject to, any action by any Debtor or any of its predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the APA, the Agency Agreement, the Transaction Documents, and the entry into and consummation of the Sale, except as expressly provided in the APA, the Agency Agreement, and this Sale Order.

22.     To the greatest extent available under applicable law, the Buyer (or any Designated Buyer, as applicable), shall be authorized, as of the applicable Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Assets to the extent transferred in the APA or Agency Agreement, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer (or any Designated Buyer, as applicable), as of the Closing Date.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Assets on account of the filing or pendency of these chapter 11 cases or the consummation of the transactions contemplated by the APA and Agency Agreement, including the Sale and the assumption and assignment of the Assigned Contracts.  To the extent any license or permit necessary for the operation of the business of the Debtors is determined not

to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code or otherwise transferable to the Buyer (or any Designated Buyer, as applicable), the Buyer (or any Designated Buyer, as applicable), may apply for and obtain any necessary license or permit promptly and the Debtors are hereby authorized to cooperate with the Buyer (or any Designated Buyer, as applicable) in connection with any such application as the Buyer (or any Designated Buyer, as applicable) deems reasonably necessary or desirable, pursuant to the provisions of the Designated BuyerAPA.

23.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the Debtors' ability to sell and transfer the Assets to the Buyer (or any Designated Buyer, as applicable) in accordance with the terms of the APA and this Sale Order.

24.     The Buyer has given substantial and fair consideration under the APA and the Agency Agreement for the benefit of the Debtors, their estates, and their creditors. The Buyer's consideration for the Assets under the APA and the Agency Agreement shall constitute valid and valuable consideration for the releases of any potential Encumbrances pursuant to this Sale Order, which releases shall be deemed to have been given in favor of the Buyer (and any Designated Buyer, as applicable) by all holders of Encumbrances or liens against or interests in, or claims against, any of the Debtors or any of the Assets, other than with respect to the Assumed Liabilities or Permitted Encumbrances or as otherwise set forth in this Sale Order. The Buyer's consideration for the Assets under the APA and Agency Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

30652314.1

#99666180v21

**Executory Contracts and Unexpired Leases to be Assumed and Assigned**

25.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the applicable Closing Date, the Debtors' assumption and assignment to the Buyer (or any Designated Buyer, as applicable), and the Buyer's (or any Designated Buyer's, as applicable), assumption, on the terms set forth in this Sale Order and the APA, of the Assigned Contracts, is hereby approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied subject to the terms of this Sale Order.

26.     The Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to assume and assign to the Buyer (or any Designated Buyer, as applicable) in accordance with the Designation Rights Procedures, effective upon the applicable Closing Date, the Assigned Contracts free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances or as otherwise set forth in this Sale Order, and execute and deliver to the Buyer (or any Designated Buyer, as applicable), such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Buyer (or any Designated Buyer, as applicable).

27.     Upon the applicable Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer (or any Designated Buyer, as applicable) shall be fully and irrevocably vested in all right, title, and interest in and of each Assigned Contract.  The Debtors and all counterparties to the Assigned Contracts shall cooperate with, not charge for, and take all actions reasonably requested by, the Buyer (or any Designated Buyer, as applicable) to effectuate the foregoing, as further provided in the APA.  The Buyer (or any Designated Buyer, as

applicable) shall likewise cooperate with the Debtors and all counterparties to the Assigned Contracts to effectuate the forgoing pursuant to the APA.

28.     Notwithstanding any term of any Assigned Contract to the contrary, any extension or renewal options or other rights contained in such Assigned Contract that purport to be personal only to, or exercisable only by, the Debtors, a named entity, or an entity operating under a specific trade name, may, in each case, be freely exercised to their full extent by the Buyer or any applicable Designated Buyer, subject to the other applicable terms of the Assigned Contract. Any extension or renewal options in connection with all Assigned Contracts that the Debtors validly exercised prior to the entry of this Sale Order, and all terms of the Assigned Contracts are in full force and effect and have not been previously rejected, and the Debtors' time to assume or reject the Assigned Contracts has not otherwise expired.

29.     The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer (or any Designated Buyer, as applicable) in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer, or requires any counterparty to consent to assignment.

30.     Solely in accordance with any Assigned Contract, the Buyer (or any Designated Buyer, as applicable), shall be authorized to (a) use the leased premises, (b) operate its business at the leased premises, (c) make such alterations and modifications to the interior and exterior of the leased premises (including signage, together with appropriate changes to existing tenant signage in the respective shopping center, including signage affixed to the building panels on all directional and other ground and off-premises signs where the Debtors are presently represented)

41

as are determined by the Buyer (or any Designated Buyer, as applicable) to be necessary to operate its business at such leased premises, and (d) exercise, utilize, or take advantage of any renewal options and any other current or future rights, benefits, privileges, and options granted or provided to the Debtors in or under any Assigned Contract.

31.    ~~Notwithstanding anything to the contrary contained herein or in the APA, any Assigned Contract for which there is an unresolved cure objection shall not be assumed, assigned, and sold unless (a) all such objections relating to such executory contract or unexpired lease are withdrawn, (b) the counterparty to such executory contract or unexpired lease consents in writing (email being sufficient), or (c) the Court subsequently orders otherwise (each a "Resolution Event").~~ For the avoidance of doubt, if ~~no Resolution Event occurs by the end of the Designation Rights Period~~ with respect to any Assigned Contract(s) that are subject to a pending cure objection in accordance with this paragraph (a) such objection is not withdrawn, (b) the counterparty to such Assigned Contract does not consent in writing (email being sufficient), or (c) the Court subsequently does not order otherwise, in each case, by the end of the Designation Rights Period, such Assigned Contract(s) shall automatically be deemed an Excluded Contract (as defined in the APA) without the need for further order of the Court or amendments to the APA.  Accordingly, unless an adequate assurance or cure objection with respect to the Buyer (or any Designated Buyer, as applicable) was filed and served before the applicable deadline (a "Filed Objection"), the applicable Counterparty is forever barred from objecting to (i) the Cure Costs and from asserting any additional cure or other amounts with respect to the applicable Assigned Contract in the event it is assumed and/or assigned, except to the extent such Cure Costs further accrue (being subject to further credits, debits, and adjustments in accordance with the terms of the applicable underlying Assigned Contract)

30652314.1

#99666180v21

following the Debtors' filing of the applicable assumption and assignment notice or (ii) adequate assurance of future performance by the Buyer (or any Designated Buyer, as applicable).

32.     Pursuant to sections 365(b)(1)(A)–(B) of the Bankruptcy Code and in accordance with the APA, at the applicable Closing, the Debtors shall pay to the respective counterparty the Cure Costs relating to any Assigned Contract.

33.     All defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the Initial Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the applicable Closing Date or as soon thereafter as reasonably practicable through the Debtors', Buyer's, or Designated Buyer's, as applicable, payment of the Cure Costs.  To the extent that any counterparty to an Assigned Contract did not object to its Cure Cost by the Cure Objection Deadline, such counterparty is deemed to have consented to such Cure Cost and the assumption and assignment of its respective Assigned Contract(s) to the Buyer (or any Designated Buyer, as applicable) in accordance with the APA.

34.     Upon the Debtors' assignment of the Assigned Contracts to the Buyer (or any Designated Buyer, as applicable) under the provisions of this Sale Order and any additional orders of the Court and payment of any Cure Costs by the Debtors, no counterparty to any Assigned Contract shall be permitted (a) to declare a pre-assignment default by the Buyer (or any Designated Buyer, as applicable) under such Assigned Contract or (b) otherwise take action against the Buyer  (or any Designated Buyer, as applicable) as a result of Debtors' financial condition, bankruptcy, or failure to perform any of their obligations under the relevant Assigned Contract.  Each non-Debtor party to an Assigned Contract hereby is also forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors or the Buyer (or any

43

Designated Buyer, as applicable), or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, including those constituting Excluded Liabilities or, against the Buyer (or any Designated Buyer, as applicable), any counterclaim, defense, setoff, recoupment, or any other Claim asserted or assertable against the Debtors, in each case, except as provided in paragraph 1211 of this Sale Order and (b) imposing or charging against the Buyer (or any Designated Buyer, as applicable) any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to the Buyer (or any Designated Buyer, as applicable) of any Assigned Contract in accordance with the APA. The validity of such assumption and assignment of each Assigned Contract shall not be affected by any dispute between the Debtors and any non-Debtor party to an Assigned Contract relating to such contract's respective Cure Costs.

35.    Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtors are authorized to assume all Assigned Contracts, and assign such Assigned Contracts to the Buyer (or transfer such Assigned Leases to theany Designated Buyer, as applicable) or transfer such Assigned Contracts to the Buyer (or any Designated Buyer, as applicable), as applicable.

36.    The payment of the applicable Cure Costs (if any) and cure ifof any non-monetary defaults (if any), shall effect a cure of all defaults existing as of the date that such Assigned Contracts are assumed and compensate for any actual pecuniary loss to such non-Debtor party resulting from such default, and the non-Debtor parties to such Assigned Contracts are forever bound by such Cure Costs and, upon payment of such Cure Costs, are hereby enjoined from taking any action against the Debtors and their bankruptcy estates, the Buyer (or any Designated Buyer, as applicable) and all agents, representatives, affiliates, and permitted successors and

44

assigns of the Buyer (or any Designated Buyer, as applicable), or the Assets with respect to any claim for cure under any Assigned Contract.

37.     The Debtors shall have assumed the Assigned Contracts, and pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Assigned Contracts to the (or any Designated Buyer, as applicable) shall not be a default thereunder.  After the payment of the relevant Cure Costs, neither the Debtors and their bankruptcy estates nor the Buyer (or any Designated Buyer, as applicable) shall have any further liabilities to the non-Debtor counterparties to the Assigned Contracts, other than the Buyer's (or any Designated Buyer's, as applicable) obligations under the Assigned Contracts as set forth in paragraph 1211 of this Sale Order.

38.     Any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contract constitute anti-assignment provisions that are unenforceable solely in connection with this Sale.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer (or any Designated Buyer, as applicable) of the Assigned Contracts have been satisfied.

39.     To the furthest extent permitted by law, any party having the right to consent to the assumption or assignment of any Assigned Contract that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code, and shall be barred from objecting, or asserting monetary or non-monetary defaults, with respect to any such Assigned Contract.

30652314.1
#99666180v21

40.     From the date of the entry of this Sale Order, the Debtors may, in consultation with the Buyer (or any Designated Buyer, as applicable), settle objections to assumption and assignment of any Assigned Contract, including to proposed Cure Costs, without any further notice to or action by any party or order of the Court (including by paying any agreed Cure Cost); *provided* that notice to and consent of the Buyer (or any Designated Buyer, as applicable) shall be required to the extent the Buyer (or any Designated Buyer, as applicable) is liable for such Cure Cost pursuant to the APA as modified by this Sale Order. Subject to and in accordance with the terms of the APA and unless the Court orders otherwise, contemporaneously with the resolution of any such objection, the executory contract or unexpired lease underlying such objection shall be deemed an Assigned Contract to the Buyer (or any Designated Buyer, as applicable) without the necessity of obtaining any further order of the Court; *provided* that any counterparty to such Assigned Contract may request a subsequent order providing for such assumption and assignment be submitted under certification of counsel with respect to its contract or lease.

41.     Nothing in this Sale Order, the Motion, or any notice relating to the assumption and assignment of the Assigned Contracts, is or shall be deemed an admission by the Debtors that any contract is an executory contract or must be assumed and assigned pursuant to the APA or in order to consummate the Sale.

42.     Upon the assignment of the Assigned Contracts and payment of the applicable Cure Costs, the Buyer (or any Designated Buyer, as applicable) shall be deemed to be substituted for the Debtors as a party to the applicable Assigned Contracts, and the Debtors and their bankruptcy estates shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability for a breach under the Assigned Contracts.

30652314.1

#99666180v21

43.     The failure of the Debtors or the Buyer (or any Designated Buyer, as applicable) to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's (or any Designated Buyer's, as applicable) rights to enforce every term and condition of the Assigned Contracts.

44.     The Buyer (or any Designated Buyer, as applicable) has provided, or will provide prior to the effective date of any assumption and assignment of any Assigned Contract, adequate assurance of future performance under the Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

45.     Neither the Buyer (or any Designated Buyer, as applicable) nor any permitted successor or assign of the Buyer (or any Designated Buyer, as applicable) shall be responsible for or have any Encumbrances or obligations arising out of any of the Excluded Contracts (except as specifically provided by the APA or this Sale Order).

46.     Notwithstanding anything herein to the contrary and subject to the APA, prior to the Closing Date, the Debtors may remove any contract or lease from the list of Assigned Contracts (and thereby exclude such Contract from the definition of Assigned Contracts) pursuant to the procedures set forth in the APA or the Bidding Procedures Order, as applicable.  To the extent applicable, the Debtors shall use reasonable best efforts file a schedule of the final Assigned Contracts reasonably promptly after the Closing Date; provided that such schedule may be amended or supplemented.

47.     Pursuant to the Bidding Procedures Order, at or prior to the Closing Date, in the event that a 365 Contract (as defined in the APA) was not listed on the Proposed Assumed Contracts Schedule, such Counterparty shall have 14 days after the date on which the applicable Supplemental Assumption and Assignment Notice is filed with the Court and served on the

47

~~applicable Counterparty (the "Supplemental Additional Contract Cure Objection Deadline") to~~ ~~(a) object to the applicable proposed Cure Costs for such 365 Contract and~~ the assumption and assignment of such 365 Contract (the "Supplemental Additional Cure Cost Objection") and (b) ~~serve the Supplemental Additional Contract Cure Cost Objection (by email or overnight mail) so~~ ~~that is actually received by counsel for the Debtors and the Buyer on or before the Supplemental~~ ~~Additional Contract Cure Objection Deadline.~~

~~48.  In the event that a 365 Contract was listed on the Proposed Assumed Contracts~~ ~~Schedule and was the subject of a Filed Objection, the applicable Counterparty that filed such~~ ~~Filed Objection shall be limited to objecting (a) on the basis set forth in their Filed Objection, (b)~~ ~~on a basis which could not have been the subject of a Filed Objection at the time of such Filed~~ ~~Objection, and/or (c) on the basis of the adequate assurance information provided regarding the~~ ~~applicable assignee; *provided, however*, that the applicable counterparty shall not be required to~~ ~~file a supplemental objection to preserve the objections previously asserted in a Filed Objection.~~

46. ~~49.~~ Designation Rights. ~~The APA is modified as set forth hereto as **Exhibit 2** (the~~ ~~"Designation Rights Amendment"), which is hereby approved.~~ During the Designation Rights Period, the Buyer may designate any 365 Contract for assumption and assignment in accordance with the terms of the APA and this Sale Order (in such instance, a "Designated ~~Lease~~365 Contract").  In such event, the Debtors shall file with the Court and serve on the applicable Counterparty a Designated ~~Lease~~365 Contract Notice (as defined below).  If the proposed assignee is not the Buyer, the Debtors shall also deliver to the applicable Counterparty (and deliver by email to counsel for the applicable Counterparty, if such counsel has filed a notice of appearance or request for service of notices) evidence of adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code with respect to the

48

applicable Designated ~~Lease~~365 Contract that is proposed to be assumed and assigned to such assignee.

47.    Notwithstanding anything to the contrary in the APA, during the Designation Rights Period, Buyer may deliver a written notice to Seller of Buyer's entry into an agreement with a 365 Counterparty to any Post-Closing Desired 365 Contract pursuant to which such 365 Counterparty consents to the assumption by the applicable Selling Entity and assignment to Buyer or its designee of such Post-Closing Desired 365 Contract on the terms set forth in such agreement (each, an "Agreed Assignment Notice"). Each Agreed Assignment Notice shall be filed with the Bankruptcy Court no later than the expiration of the Designation Rights Period. The assumption and assignment of any Post-Closing Desired 365 Contract pursuant to this Section 2.05(d) shall be effective on the date set forth in the notice, provided that such date is no later than the expiration of the Designation Rights Period.

48.    ~~50.~~ At any time after Closing but in no event later than the expiration of the Designation Rights Period, Buyer may notify (a "Post-Closing Designation Notice") Seller from time to time of its determination to designate a 365 Lease (the "Post-Closing Designated Leases") or 365 Contract (the "Post-Closing Designated Contracts", and together with the Post-Closing Designated Leases, the "Post-Closing Desired 365 Contracts", and together with the Pre-Closing Desired 365 Contracts, the "Desired 365 Contracts") that has not previously been (x) rejected by the Selling Entities or (y) designated as an Assigned Asset pursuant to Disclosure Schedule 2.05(a) or Sections 2.05(b)or 2.05(c) of the APA, for assumption by the applicable Selling Entity and assignment to Buyer (or its designee). Within five Business Days of Seller's receipt of a Post-Closing Designation Notice, the applicable Selling Entity shall provide written notice to the counterparty of such Post-Closing Desired 365 Contract (such

counterparty, the "365 Counterparty") of Seller's intent to assume and assign such Post-Closing Desired 365 Contract (each, a "Designated 365 Contract Notice"). Each Designated ~~Lease~~365 Contract Notice will set forth the following information:  (a) the street address of the real property that is the subject of such 365 Contract; (b) the name and address of the Counterparty (and their counsel, if known); (c) a description of the deadline and procedures for filing objections to the Designated ~~Lease~~365 Contract Notice; (d) the identity of the proposed assignee; (e) information intended to provide the Counterparty to the Designated ~~Lease~~365 Contract with adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code; (f) the proposed Cure Costs associated with such Designated ~~Lease~~365 Contract; and (g) a proposed form of order authorizing the assumption and assignment; *provided, however,* that if adequate assurance information is provided pursuant to this paragraph, such adequate assurance information shall be kept strictly confidential and not be used for any purpose other than to (a) evaluate whether adequate assurance requirements under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code have been satisfied, and (b) to support any objection to adequate assurance provided by any party including the Buyer (or any Designated Buyer, as applicable) and its affiliates.

49.    ~~51.~~ Any party seeking to object to the assumption and assignment of any Designated ~~Lease~~365 Contract on any basis other than the Cure Costs (including, but not limited to, objections to adequate assurance of future performance if such Designated ~~Lease~~365 Contract is designated to a third party or with respect to the provision of adequate assurance of future performance of the Buyer (or any Designated Buyer, as applicable) if a Filed Objection was timely filed) must (a) file a written objection in compliance with the Bankruptcy Rules and Local Rules (a "Designated Contract Assumption and Assignment Objection") with the Court, so that

such objection is filed no later than fourteen (14) days after the date on which (i) the applicable Designated ~~Lease~~365 Contract Notice is filed with the Court and (ii) evidence of adequate assurance of future performance required pursuant to the terms hereof is served on the applicable Counterparty (the "Designated Contract Assumption and Assignment Objection Deadline"); and (b) serve the Designated Contract Assumption and Assignment Objection (by email) so that it is actually received by counsel for the Debtors, the Buyer and applicable designated assignee on or before the Designated Contract Assumption and Assignment Deadline.

50.    ~~52.~~ If no Filed Objection has been filed, or no Designated Contract Assumption and Assignment Objection has been filed by the Designated Contract Assumption and Assignment Objection Deadline, the Debtors, the Buyer, and the applicable assignee shall submit for evaluation and entry by this Court, under certificate of no objection, an order approving assignment of the Designated ~~Lease~~365 Contract (such order, a "~~Supplemental Lease~~Designated Contract Assignment Order"). ~~The Supplemental Lease Assignment~~ Each Designated Contract Assignment Order shall provide that the assumption and assignment of a Designated 365 Contract shall be effective as of the date the Designated 365 Contract Notice is filed with the Court (which date shall not be later than the expiration of the Designation Rights Period) without further order of the Bankruptcy Court upon expiration of the applicable Objection Deadline  The Designated Contract Assignment Order may seek, among other things, that upon the applicable Designated Assignment Date, except as otherwise expressly agreed by the applicable assignee and the applicable Counterparty, notwithstanding any provision in any Designated ~~Lease~~365 Contract that purports to prohibit, restrict, or condition such action, upon the assumption and assignment of such Designated ~~Lease~~365 Contract to an assignee in accordance with the terms of the APA and any related assignment agreements, (x) the applicable assignee shall be authorized

51

to:  (i) use the leased premises subject to the Designated ~~Lease~~365 Contract (such premises, the "Leased Premises") as a retail store (and related goods and services) upon consummation of the assumption and assignment of such Designated ~~Lease~~365 Contract to such assignee in accordance with the terms of the APA and any related assignment agreements; (ii) operate its business at the Leased Premises under its tradename; (iii) make such alterations and modifications to the interior and exterior of the Leased Premises (including signage, together with appropriate changes to existing tenant signage in the respective shopping center, including signage affixed to the building panels on all directional and other ground and off-premises signs where the Debtors are presently represented) as are determined by the applicable assignee to be necessary to conform such Leased Premises to the applicable assignee's typical retail store; (iv) remain "dark" with respect to such Leased Premises after such assumption and assignment until the date that is necessary to permit, but no more than 270 consecutive days, such assignee to remodel, restock, re-fixture, change signage and/or until completion of the work described in clause (iii) above; and (v) exercise, utilize, or take advantage of any renewal options and any other current or future rights, benefits, privileges, and options granted or provided to the Debtors under such Designated ~~Lease~~365 Contract (including all of the same which may be described or designated as, or purport to be, "personal" to the Debtors or to a named entity in such Designated ~~Lease~~365 Contract or to be exercisable only by the Debtors or by a named entity or an entity operating under a specific trade name) and (y) neither the Buyer nor the applicable assignee shall have any responsibility or liability for any Excluded Liabilities.

51.    ~~53.~~ If a Filed Objection has been filed, or a Designated Contract Assumption and Assignment Objection is timely filed and not withdrawn or resolved, the Debtors, the applicable assignee, and the objecting Counterparty shall have authority to compromise, settle, or otherwise

resolve any objections and submit an agreed form of order under certification of counsel.  If the Debtors, the applicable assignee, and the objecting Counterparty determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Designated ~~Lease~~365 Contract will be determined by the Court on a date to be scheduled by any of the Debtors or the applicable assignee (which hearing date shall be no sooner than ten business days following the date of filing of the Designated ~~Lease~~365 Contract Notice Objection, unless the Debtors, the Buyer, the applicable assignee, and the applicable Counterparty agree otherwise).

52.     ~~54.~~ Pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code, the Buyer (or Designated Buyer, if applicable) shall, on the applicable assumption effective date for a 365 Contract, cure all nonmonetary defaults solely to the extent required under section 365 of the Bankruptcy Code, and pay to the applicable Counterparty all Cure Costs.  Upon assumption and assignment of any 365 Contract and payment of the applicable Cure Costs, the Debtors and the estates shall be relieved of any liability for breach of such 365 Contract pursuant to section 365(k) of the Bankruptcy Code, except as expressly provided herein or in the APA or related agreements. For the avoidance of doubt, during the Designation Rights Period, nothing in this Sale Order or the APA shall modify the obligations of the Debtors pursuant to Section 365(d)(3) of the Bankruptcy Code with respect to unexpired real property leases that are 365 Contracts until such time as the applicable 365 Contract is assumed, assumed and assigned, or rejected. Nothing in this Sale Order shall be considered an extension of the Debtors' time to assume or reject nonresidential real property leases pursuant to Section 365(d)(4).

53.     ~~55.~~ The Debtors may seek that upon the applicable assignment effective date, any provision in any 365 Contract that purports to declare a breach or default as a result of a change

or transfer of control of any interest in respect of the Debtors is unenforceable (solely in connection with this Sale) and all assigned 365 Contracts that in any way purport to: (i) prohibit, restrict, or condition the Debtors' assignment of such 365 Contract (including, but not limited to, the conditioning of such assignment on the consent of any non-debtor party to such 365 Contract); (ii) provide for the cancellation, or modification of the terms of the 365 Contract based on the filing of a bankruptcy case, the financial condition of the Debtors, or similar circumstances; (iii) provide for additional payments (e.g., so called "profit" sharing/splitting), penalties, fees, charges, or other financial accommodations in favor of the non-debtor third party to such 365 Contract upon assignment thereof; or (iv) provide for any rights of first refusal on a Counterparty's part, or any recapture or termination rights in favor of a Counterparty, or any right of a landlord to take an assignment or sub lease from a tenant, shall have any force or effect with respect to the grant and honoring of the Buyer's 365 Contract designation rights or in accordance with this Sale Order and the APA and assignments of 365 Contracts by the Debtors in accordance therewith or in accordance with any ~~Supplemental Lease~~Designated Contract Assignment Order.

**Provisions Related to the Agency Agreement**

54.    The Agency Agreement, a copy of which is attached hereto as **Exhibit 2**, and each of the transactions contemplated therein, including, but not limited to, conducting the Sale (as defined in the Agency Agreement) pursuant to the Agency Agreement, shall be binding on all parties thereto, and is approved in its entirety and incorporated herein by reference. Following the Initial Closing, the Agent shall be deemed to be the Debtors' and Buyer's exclusive agent for the purpose of conducting the Store Closing Sale and selling the Assets constituting Designated

Assets, and any other assets to be sold pursuant to the Agency Agreement free and clear of all Claims, Liens, Interests or other Encumbrances thereon.

55.      Subject to the provisions of this Sale Order, as same may be modified by any Side Letter (as defined below), the Debtors, Buyer and Agent are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Store Closing Sale in accordance with the Agency Agreement and the Store Closing Procedures[4] as may be modified by any Side Letter, which Store Closing Procedures are hereby approved in their entirety.

56.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, Buyer, Agent and each of their respective officers, employees and agents are hereby authorized to (i) execute such documents and to do such acts as are necessary or desirable to carry out the transactions contemplated by the Agency Agreement, including the conduct of the Store Closing Sale in accordance with the Agency Agreement and Store Closing Procedures, (ii) effectuate the Agency Agreement and each of the transactions and related actions contemplated or set forth therein, and any actions taken by the Debtors, Buyer and/or the Agent necessary or desirable to implement said transactions prior to the date of this Sale Order, are hereby are approved and ratified. Any officer of the Debtors is authorized to act on behalf of the Debtors in connection with the Store Closing Sale and no other consents or approvals are necessary or required for the Debtors to carry out the Store Closing Sale and effectuate the Agency Agreement and each of the transactions and related actions contemplated or set forth therein.

57.      The Agent shall be required to comply with applicable federal, state and local laws, regulations and ordinances, including, without limitation, all laws and regulations relating

---

[4]      For purposes of this Sale Order, Store Closing Procedures shall have the meaning ascribed thereto in the Court's Final Order (I) Authorizing Debtors To Assume The Consulting Agreement, (II) Authorizing Store Closing Sales And Approving Related Procedures, And (III) Granting Related Relief" [ECF No. 576].

to advertising, privacy, consumer protection, occupational health and safety and the environment, together with all applicable statutes, rules, regulations and orders of, and applicable restrictions imposed by, governmental authorities (collectively, the "Applicable General Laws"), other than all applicable laws, rules and regulations in respect of "going out of business", "store closing" or similar-themed sales and permitting, including laws restricting safe, professional and nondeceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Store Closing Sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the Store Closing Sale (collectively, the "Liquidation Sale Laws"), *provided* that the Store Closing Sale are conducted in accordance with the terms of the Agency Agreement, the Store Closing Procedures and this Sale Order (as may be modified by any Side Letter); and *provided, further*, that so long as the Store Closing Sale are conducted in accordance with the Store Closing Procedures and this Sale Order and in a safe and professional manner, Agent shall be deemed to be in compliance with any Applicable General Laws, and are authorized to conduct the Store Closing Sale in accordance with the terms of the Agency Agreement, this Sale Order and the Store Closing Procedures without the necessity of further showing compliance with any Applicable General Laws. To the extent the Store Closing Sale are subject to any Liquidation Sale Laws, the following provisions shall apply:

30652314.1

#99666180v21

a.  Within two (2) business days after entry of this Sale Order, the Debtors shall serve copies of this Sale Order, the Agency Agreement, and the Store Closing Procedures via email, facsimile, or regular mail, on the following: (i) the United States Trustee; (ii) the state attorney general's office for each state where the Store Closing Sale are being conducted; (iii) the county consumer protection agency or similar agency for each county where the Store Closing Sale will be held; (iv) the division of consumer protection for each state where the Store Closing Sale will be held; (v) the chief legal counsel for the local jurisdiction; and (vi) the landlords for the Stores.

b.  To the extent there is a dispute arising from or relating to the Store Closing Sale, this Sale Order, the Agency Agreement, or the Store Closing Procedures, which dispute relates to any Applicable General Laws (a "Reserved Dispute"), this Court shall retain exclusive jurisdiction to resolve the Reserved Dispute.  Any time within ten (10) days following entry of this Sale Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute (which may be by e-mail) to Any Governmental Unit may assert a Reserved Dispute by sending a written notice (which may be by e-mail) explaining the nature of the dispute to: (a) the Debtors, Davis Polk & Wardwell LLP, Attn: Brian M. Resnick, Esq., Adam L. Shpeen, Esq., Stephen D. Piraino, Esq., and Ethan Stern Esq.  (notice.biglots@davispolk.com); (b) co-counsel to the Debtors, Morris, Nichols, Arsht & Tunnell LLP; Attn: Robert J. Dehney, Sr., Esq., Andrew R. Remming, Esq., Daniel B. Butz, Esq., Tamara K. Mann, Esq., and Casey B. Sawyer, Esq. (biglots.mnat@morrisnichols.com); (c) the United States Trustee for the District of Delaware, Attn.: Linda J. Casey (linda.casey@usdoj.gov), Attn: Robert J. Dehney, Sr., Esq., Andrew R. Remming, Esq., Daniel B. Butz, Esq., Tamara K. Mann, Esq., and Casey B. Sawyer, Esq. (biglots.mnat@morrisnichols.com); (d) counsel to the Official Committee of Unsecured Creditors, (i) McDermott Will & Emery LLP, Attn: Darren Azman, Esq., Kristin K. Going, Esq., and Stacy A. Lutkus (BigLotsMWETeam@mwe.com) and (ii) Cole Schotz P.C., Attn: Justin R. Alberto, Stacy L. Newman, and Sarah Carnes (CS-BigLots@coleschotz.com); (e) counsel to the Agent, Riemer & Braunstein LLP, Attn: Steven E. Fox (sfox@riemerlaw.com); and (f) any affected landlord and their counsel of record (if known), so as to ensure delivery thereof within one (1) business day thereafter. If the Debtors, Agent and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days after service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

30652314.1

#99666180v21

c.  In the event a Dispute Resolution Motion is filed, nothing in this Sale Order shall preclude the Debtors, a landlord, or other interested party from asserting (i) that the provisions of any Applicable General Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Sale Order nor the conduct of the Debtors pursuant to this Sale Order, violates such Applicable General Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of any order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue to conduct the Store Closing Sale pursuant to this Sale Order, absent further order of this Court. This Court grants authority for the Debtors and the Agent to conduct the Store Closing Sale pursuant to the terms of this Sale Order, the Agency Agreement, and/or the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Applicable General Laws or the lack of any preemption of such Applicable General Laws by the Bankruptcy Code.  Nothing in this Sale Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

d.  If, at any time, a dispute arises between the Debtors and/or the Agent and a Governmental Unit as to whether a particular law is an Applicable General Law, and subject to any provisions contained in this Sale Order related to the Applicable General Laws, then any party to that dispute may utilize the provisions hereunder by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is an Applicable General Law shall be made *de novo*.

e.  Nothing in this Sale Order shall constitute a ruling with respect to any issues to be raised with respect to a Reserved Dispute.

58.  Except as expressly provided in this Sale Order, the Agency Agreement, and/or any Side Letter, the Store Closing Sale shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision or covenant in any lease, sublease, license or other agreement relative to occupancy, abandonment of assets or "going dark" provisions or other provisions or covenants that purport to prohibit, restrict or otherwise interfere with the conduct of the Store Closing Sale. Without further order of this Court, the Debtors, the Agent and landlords of the Stores are authorized to enter into agreements (each a "Side Letter") between

58

themselves modifying the Store Closing Procedures and the Agency Agreement, to the extent such modifications do not have an adverse economic effect on the Debtors or the Buyer, and such Side Letters shall be binding on the Debtors, Buyer, the Agent and any such landlords. In the event of any conflict between the Store Closing Procedures, the Agency Agreement, and any Side Letter, the terms of such Side Letter shall control. In the event of any conflict between any Side Letter and this Sale Order, the terms of this Sale Order shall control.

57.    For purposes of conducting the Store Closing Sale, the Agent shall have (a) the right to the unencumbered use and occupancy of, and peaceful and quiet possession of each Store and the assets currently located at such Stores (as defined in the Agency Agreement), and (b) the exclusive right to use the Stores and all related Store services, furniture, fixtures, equipment and other assets of the Debtors or Buyer, as the context makes applicable, as designated under the Agency Agreement and/or hereunder for the purpose of conducting the Store Closing Sale, free of any interference from any entity or person, subject to compliance with the Store Closing Procedures as modified by any Side Letter and this Sale Order. The Agent, as the exclusive agent for the Debtors and Buyer, is authorized to conduct, advertise, post signs, utilize sign-walkers, and otherwise promote the Store Closing Sale, and otherwise in accordance with this Sale Order and the Store Closing Procedures (as the same may be modified by any Side Letters) and without further compliance with any Liquidation Sale Law.

58.    Except as otherwise consented to by the Agent and Buyer, which consent may be withheld, delayed, conditioned or denied in the exercise of the Buyer's and Agent's respective discretion, the Debtors shall not assign, reject or otherwise terminate any lease or other occupancy agreement relating to any Store, or vacate any Store, until the applicable Sale Termination Date or Vacate Date, as the case may be.

30652314.1

#99666180v21

59.    In connection with a motion or notice by the Debtors to reject any lease, pursuant to section 554(a) of the Bankruptcy Code the Debtors, Buyer and the Agent are permitted to abandon property of the Debtors' estates in accordance with the terms and provisions of the Agency Agreement, without notice or liability to any person or entity; *provided* that to the extent prohibited by applicable law, the Agent and Debtors are not authorized to abandon, and the Debtors are directed to remove and properly dispose of, any "hazardous materials" (as may be defined under applicable law of the jurisdiction in which the materials are located) from any leased premises as and to the extent required by applicable law of the jurisdiction in which the lease premises lies.

60.    Notwithstanding anything to the contrary in this Sale Order, the APA, the Agency Agreement or Store Closing Procedures, the Debtors shall not sell or abandon any property that the Debtors know is not owned by the Debtors; *provided* that the Debtors will either (a) provide for the return of such property to the Headquarters (as defined below) or (b) return such property to the applicable lessor, or other owner of the property; *provided, however,* that the Debtors may abandon property owned by the landlord at the applicable Store.  In the event of any such abandonment of property owned by the landlord at the applicable Store, the applicable landlords, the Debtors and the Agent shall be authorized to dispose of such property without any liability to any individual or entity that may claim an interest in such abandoned property, and such abandonment shall be without prejudice to any landlord's right to assert any claim based on such abandonment and without prejudice to the Debtors or any other party in interest to object thereto.

61.    All sales of Inventory, F&E, and Additional Agent Merchandise pursuant to the Agency Agreement will be "final sales" and "as is," and appropriate signage and sales receipts will reflect the same. However, as to the sale of Inventory in the Store Closing Sale, all state and

30652314.1

#99666180v21

federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."  The Agent shall accept return of any goods that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, *provided* that the consumer must return the merchandise within the time period proscribed by the Debtors' return policy that was in effect when the merchandise was purchased, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect, which goods shall not be resold by the Debtors, Buyer and/or Agent.

61

62.    Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Inventory, F&E, and Additional Agent Merchandise, to the extent that disputes arise during the course of such Store Closing Sale regarding laws regulating the use of sign-walkers, banners or other advertising and the Debtors and the Agent are unable to resolve the matter consensually, this Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Sale Order, the Agency Agreement and Store Closing Procedures (as may be modified by a Side Letter), including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner, (b) any claim of the Debtors, the landlords and/or the Agent for protection from interference with the Store Closing Sale, (c) any other disputes related to the Store Closing Sale, and (d) protection of the Debtors, Buyer and/or the Agent against any assertions of any Liens, Claims, Encumbrances, and other Interests. No such parties or person shall take any action against the Debtors, Buyer, Agent, the landlords, or the Store Closing Sale until this Court has resolved such dispute. Any party may request an emergency telephonic hearing with this Court pursuant to these provisions.

63.     Except as expressly provided for herein, in the Agency Agreement, or in the Store Closing Procedures (as may be modified by a Side Letter), no person or entity, including but not limited to any landlord, licensor, or creditor shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sale, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such Store Closing Sale, and all such parties and persons of every nature and description, including landlords, licensors, creditors, utility companies, parties in interest, and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, or otherwise impeding, the conduct of the Store Closing Sale and/or (ii) instituting any action or proceeding in any court (other than in the Court) or administrative body with respect to Inventory, or the F&E, or seeking an order or judgment against, among others, the Debtors, Buyer, the Agent, or the landlords at the Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sale or other liquidation sales at the Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

64.     Unless otherwise ordered by this Court, all newspapers and other advertising media in which the Store Closing Sale may be advertised and all landlords shall be directed to accept this Sale Order as binding and to allow the Debtors, Buyer, and Agent to consummate the transactions provided for in the Agency Agreement, including, without limitation, the conducting and advertising of the Store Closing Sale in the manner contemplated by the Agency Agreement.

30652314.1

#99666180v21

65.    The Additional Agent Merchandise shall be consigned to Debtors and/or Buyer, as applicable, as a true consignment under Article 9 of the Uniform Commercial Code. Agent is hereby granted a first priority security interest in and lien upon (i) the Additional Agent Merchandise and (ii) the Proceeds (as defined in the Agency Agreement), which security interest shall be deemed perfected pursuant to this Sale Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties; *provided* that Agent is hereby authorized, but shall not be required, to deliver all required notices and file all necessary financing statements and amendments thereof under the applicable UCC identifying Agent's interest in the Additional Agent Merchandise as consigned goods thereunder and Debtors as the consignee therefor, and Agent's security interest in and lien upon such Additional Agent Merchandise and related Proceeds.

30652314.1

#99666180v21

66.    Upon the Closing, the Debtors shall hold the Proceeds that may be in the Debtors' possession and/or control from time to time, in trust for the benefit of the Agent as required under the Agency Agreement. To the extent that any Proceeds are ever determined to constitute property of the Debtors' estates, the Agent shall have, pursuant to section 364(d) of the Bankruptcy Code, a senior lien on such Proceeds. The Designated Deposit Accounts (as defined in the Agency Agreement) and all funds on deposit therein from time to time after the Initial Closing shall be held in trust for the benefit of the Agent, and to the extent any Designated Deposit Account or any funds on deposit therein is deemed to be property of the Debtors' estates, the Agent shall have a first priority senior security interest in each Designated Deposit Account and all funds on deposit in such accounts from and after the Closing. The liens granted pursuant to this paragraph shall be automatically perfected pursuant to this Sale Order and the Agent is expressly authorized to take any action the Agent deems appropriate to perfect and enforce such liens, without further order of this Court.

67.    Subject to the terms of paragraph 18 in this Sale Order, any amounts owed by Debtors to Agent under the Agency Agreement shall be granted the status of superpriority claims pursuant to section 364(c) of the Bankruptcy Code. Agent shall have a superpriority administrative expense claim against the Debtors to the extent of any amounts owing from the Debtors to Agent in connection with the Agency Agreement until all such amounts have been indefeasibly paid in full, subject to the right of any party in interest to object to the allowance of such claim if asserted.

68.    The Agent is hereby granted a first priority, senior security interest in and lien upon: (i) the Inventory (to the extent constituting Designated Assets); (ii) the Additional Agent Merchandise; (iii) all Proceeds (including, without limitation, processor receivables and credit

65

card Proceeds); (iv) the F&E; and (v) all "proceeds" (within the meaning of Section 9-102(a)(64) of the Code) of each of the foregoing (all of which are collectively referred to herein as the "Agent Collateral"). Subject to the preceding sentence, and only upon entry of this Sale Order, and subject to and upon the Initial Closing, the security interests and liens granted to Agent herein shall be deemed valid, binding, enforceable, and properly perfected as provided for in Section 15.11 of the Agency Agreement (without the necessity of filing UCC-1 financing statements or any other documentation). Subject to entry of this Sale Order, neither Debtors nor Buyer shall sell, grant, assign or transfer any security interest in, or permit to exist any lien or encumbrance on, any of Agent Collateral other than in favor of Agent. In the event of an occurrence of an Event of Default under the Agency Agreement, other than by Agent, in any jurisdiction where the enforcement of its rights under the Agency Agreement is sought Agent shall have, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code.

69.     Subject to the terms of the Agency Agreement, to the extent that there is Inventory remaining as of the Sale Termination Date (as such term is defined in the Agency Agreement, the "Remaining Merchandise"), Agent may, at its election and without further order of this Court, take title to such Remaining Merchandise in its own name or designate a party to take title to such Remaining Merchandise, without further consideration to the Debtors, free and clear of all liens, claims, and encumbrances. The Agent and its affiliates or designees shall be authorized to sell or cause to be sold or otherwise dispose of the Remaining Merchandise with all logos, brand names, and other Intellectual Property intact, and shall be authorized to advertise the sale of the Remaining Merchandise using the Intellectual Property.  The proceeds received by Agent upon the sale or other disposition of any Remaining Merchandise shall constitute Proceeds under the Agency Agreement and shall be for the sole account and benefit of Agent.

70.     The sales and other transactions contemplated in the Agency Agreement may not be avoided, and no damages may be assessed against the Agent under section 363(n) of the Bankruptcy Code.

71.     The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement and the payment of any and all sales taxes is the responsibility of the Debtors.  The Debtors are directed to remit all taxes arising from the Store Closing Sale to the applicable Governmental Units as and when due, *provided* that in the case of a bona fide dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  The Agent shall collect, remit to the Debtors and account for sales taxes as

67

and to the extent provided in the Agency Agreement.  This Sale Order does not enjoin, suspend, or restrain the assessment, levy or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

72.    Neither the Store Closing Procedures, Agency Agreement, nor this Sale Order authorize the Debtors to transfer or sell to the Agent the personal identifying information (which means information which alone or in conjunction with other information identifies an individual, including but not limited to an individual's first name (or initial) and last name, physical address, electronic address, telephone number, social security number, date of birth, government-issued identification number, account number and credit or debit card number ("PII") of any customers or employees unless such sale or transfer is permitted by the Debtors' privacy policy and state or federal privacy and/or identity theft prevention laws and rules (collectively, the "Applicable Privacy Laws"), or the APA.  The foregoing shall not limit the Agent's use of the Debtors' customer lists and mailing lists in accordance with the Agency Agreement solely for purposes of advertising and promoting the Store Closing Sale.  To the extent that the Debtors, Buyer or Agent propose to sell or abandon FF&E which may contain PII or confidential information about the Debtors' employees and/or customers, the Debtors shall utilize commercially reasonable efforts to remove or cause to be removed the PII from such items of FF&E before such sale or abandonment. At the conclusion of the Store Closing Sale, and other than as provided under the APA, the Agent shall provide the Debtors with written verification that the Agent has not removed, copied, or sold any customer PII  and that any records containing PII were shredded, erased or otherwise modified to render the PII unreadable or undecipherable prior to any sales.

**Additional Provisions**

73.    Buyer Releases.  Except to the extent expressly preserved pursuant to the APA or this

68

Sale Order, upon the Closing Date, each of the Debtors and the Buyer (each a "Releasing Party"), to the fullest extent permissible under applicable law, mutually releases and discharges each other Releasing Party and such Releasing Parties' respective current and former predecessors, successors, affiliates (regardless of whether such interests are held directly or indirectly), assigns, subsidiaries, direct and indirect equity holders, funds, portfolio companies, management companies, current, and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors, and other professionals, each in their capacity as such (collectively, in such capacity, the "Released Parties" and each a "Released Party"), from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities of every kind, nature and description whatsoever, which such Releasing Party ever had, now has or may have on or by reason of any matter, cause or thing whatsoever to the Closing Date, including any derivative claims that such Releasing Party (or someone on its behalf) would have been legally entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Releasing Party would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of a holder of any claim against a Releasing Party, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any claim, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Sale, entry into the APA, the chapter 11 cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Sale, the APA, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the APA, the filing of these chapter 11 cases, the pursuit of the Sale, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the applicable Closing Date related or relating to the foregoing; *provided* that this paragraph 63

shall not affect the liability of any Releasing Party for claims or liabilities arising out of or relating to any act or omission of a Releasing Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a final order of a court of competent jurisdiction.

74.    Lender Releases.  At (and immediately prior to) the Closing, the Debtors, on behalf of themselves their estates, and on behalf of their past, present, and future successors and assigns (solely to the extent permitted under applicable law) (collectively, the "Debtor Releasors"), hereby, forever release, discharge and acquit the DIP Credit Parties, the Prepetition Secured Parties and their respective successors and assigns, and their current and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, partners, members, managers, attorneys, employees, consultants, advisors and other representatives in their respective capacities as such (collectively, the "DIP Credit Party Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Debtor Releasors had, have or hereafter can or may have against any DIP Credit Party Releasees as of the Closing, in respect of events that occurred on or prior to the Closing relating to any Debtor or any subsidiary thereof, the APA, the Final DIP Order, the DIP Obligations or DIP Loan Documents, the Prepetition Secured Obligations, the Prepetition Secured Parties, and the Prepetition Credit Documents.

75.    56. Consumer Privacy Provisions.  The Buyer shall be bound by and meet the material standards established by the Buyer's privacy policies solely with respect to the personally identifiable information transferred to the Buyer pursuant to the APA; *provided*, *however*, that nothing in this Sale Order shall affect, limit, restrict, prohibit, or impair any right to amend or replace such privacy policies on a going forward basis with respect to the personally

identifiable information transferred to the Buyer, in accordance with the terms thereof and applicable law.

76.    57.  Automatic Stay Relief.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted to the extent necessary, without further order of the Court, to (a) allow the Buyer to deliver any notice provided for in the APA and any ancillary documents and (b) allow the Buyer, the Agent and any Designated Buyer, as applicable, to take any and all actions permitted under this Sale Order, the APA, the Agency Agreement, and any ancillary documents in accordance with the terms and conditions thereof.

77.    58.  Buyer Not a Successor.  The transactions contemplated under the APA and Agency Agreement do not amount to a consolidation, merger, or *de facto* merger of the Buyer, Agent, any Designated Buyer, and the Debtors and/or the Debtors' estates; there is not substantial continuity between Buyer, Agent, any Designated Buyer, and the Debtors; there is no continuity of enterprise between the Debtors and the Buyer, Agent, or any Designated Buyer; neither the Buyer, Agent, nor any Designated Buyer is not a mere continuation of the Debtors or their estates; and neither the Buyer, Agent, any Designated Buyer is not a successor or assignee of the Debtors or their estates for any purpose including, but not limited to, under any federal, state, or local statute or common law, or revenue, pension, ERISA, COBRA, tax, labor, employment, environmental (including, without limitation, the Comprehensive Environmental Response Compensation and Liability Act, as amended), escheat, or unclaimed property laws, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine or common law, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law,

71

rule or regulation, or doctrine. ~~The Buyer and its~~Neither the Buyer, Agent, nor any Designated Buyer,  or their respective affiliates shall have ~~no~~any liability or obligation under the WARN Act, 929 U.S.C. §§ 210 *et seq.,* or the Comprehensive Environmental Response Compensation and Liability Act, as amended or analogous foreign, state, or local laws and shall not be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disability Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the Employee Retirement Income Security Act, the Multiemployer Pension Protection Act, the Pension Protection Act, and/or the Fair Labor Standards Act.  Except for the Assumed Liabilities or Permitted Encumbrances, or as otherwise set forth in this Sale Order, the (a) transfer of the Assets to Buyer (or any Designated Buyer, as applicable), or the sale of the Designated Assets by Agent pursuant to the Agency Agreement, and (b) assumption and assignment to Buyer (or any Designated Buyer, as applicable) of the Assigned Contracts do not and shall not subject Buyer, Agent, or any Designated Buyer to any liability whatsoever with respect to the operation of the Debtors' business before the applicable Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, either directly, or based on, in whole or in part, directly or indirectly, any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability, in each case regardless of whether such law or theory purports to apply any liability directly to Buyer, Agent or any Designated Buyer rather than in a successor or transferee capacity.

72

78.    59. Bulk Transfer Laws.  The Debtors and the Buyer hereby waive, and shall be deemed to waive, any requirement of compliance with, and any Claims including, without limitation, any Claims related to non-compliance with the provisions of any bulk sales rules, bulk transfer rules, or similar law of any jurisdiction that may be applicable regardless of whether such non-compliance would purport to result in Buyer being liability in its own capacity.

79.    60. No Interference.  Following the Closing, no holder of an Encumbrance (other than Assumed Liabilities and Permitted Encumbrances) in or against the Debtors and their estates or the Assets shall interfere with the Buyer's (or any Designated Buyer's, as applicable) title to or use and enjoyment of the Assets based on or related to such Encumbrance or any actions that the Debtors and their bankruptcy estates may take in these chapter 11 cases or any successor bankruptcy cases.

80.    61. Authorization.  The Debtors, including their respective directors, managers, officers, employees, and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the APA, the Agency Agreement, and this Sale Order.  The Debtors shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this Sale Order and the relief granted pursuant to this Sale Order.

81.    62. Good Faith.  The Sale as contemplated by the APA is undertaken by the Buyer (and where applicable, the Agent and any Designated Buyer) without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assigned Contracts byto the Buyer (or any Designated Buyer, as applicable) and the sale free and clear of

73

all Encumbrances other than Assumed Liabilities and Permitted Encumbrances) unless such authorization and consummation of such Sale are duly stayed pending such appeal. The Buyer, Agent and any Designated Buyer, as applicable, is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and as such is entitled to the full benefits and protections of such section. As a good-faith purchaser of the Assets, neither the Buyer has not, the Agent, nor or any Designated Buyer, as applicable, has colluded with any of the other bidders, potential bidders, or any other parties interested in the Assets, and therefore the sale of the Assets shall not be avoided pursuant to section 363(n) of the Bankruptcy Code.

63. Buyer Releases. Except to the extent expressly preserved pursuant to the APA or this Sale Order, upon the Closing Date, each of the Debtors and the Buyers (each a "Releasing Party"), to the fullest extent permissible under applicable law, mutually releases and discharges each other Releasing Party and such Releasing Parties' respective current and former predecessors, successors, affiliates (regardless of whether such interests are held directly or indirectly), assigns, subsidiaries, direct and indirect equity holders, funds, portfolio companies, management companies, current, and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors, and other professionals, each in their capacity as such (collectively, in such capacity, the "Released Parties" and each a "Released Party"), from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities of every kind, nature and description whatsoever, which such Releasing Party ever had, now has or may have on or by reason of any matter, cause or thing whatsoever to the Closing Date, including any derivative claims that such Releasing Party (or someone on its behalf) would have been legally entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Releasing Party would have been legally entitled to assert in their

own right (whether individually or collectively) or on behalf of a holder of any claim against a Releasing Party, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any claim, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Sale, entry into the APA, the chapter 11 cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Sale, the APA, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the APA, the filing of these chapter 11 cases, the pursuit of the Sale, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Closing Date related or relating to the foregoing; *provided* that this paragraph 63 shall not affect the liability of any Releasing Party for claims or liabilities arising out of or relating to any act or omission of a Releasing Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a final order of a court of competent jurisdiction.

64. Lender Releases.  At (and immediately prior to) the Closing, the Debtors, on behalf of themselves their estates, and on behalf of their past, present, and future successors and assigns (solely to the extent permitted under applicable law), (collectively, the "Debtor Releasors"), hereby, forever release, discharge and acquit the DIP Credit Parties, the Prepetition Secured Parties and their respective successors and assigns, and their current and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, partners, members, managers, attorneys, employees, consultants, advisors and other representatives in their respective capacities as such (collectively, the "DIP Credit Party Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Debtor Releasors had, have or hereafter can

75

~~or may have against any DIP Credit Party Releasees as of the Closing, in respect of events that occurred on or prior to the Closing relating to any Debtor or any subsidiary thereof, the APA, the DIP Orders, the DIP Obligations or DIP Loan Documents, the Prepetition Secured Obligations, the Prepetition Secured Parties, and the Prepetition Credit Documents.~~

82.    ~~65.~~ <u>Failure of Approval</u>.   The failure specifically to include any particular provision of the APA <u>or the Agency Agreement,</u> including any of the documents, agreements, or instruments executed in connection therewith in this Sale Order<u>,</u> shall not diminish or impair the efficacy of such provision, document, agreement, or instrument, it being the intent of the Court that the APA and each document, agreement or instrument be authorized and approved in its entirety.

83.    ~~66.~~ <u>Post-Closing Claims Administration</u>.   After the <u>applicable</u> Closing:  (a) neither the Debtors nor any successor in interest, including any chapter 11 or chapter 7 trustee in these chapter 11 cases or any successor chapter 7 cases, shall consent or agree to the allowance of any claim to the extent it would constitute an Assumed Liability or Permitted Encumbrance without the prior written consent of the Buyer <u>(or applicable Designated Buyer)</u>; and (b) the Buyer shall have standing to object to any claim against the Debtors and their estates to the extent that, if allowed, it would constitute an Assumed Liability or Permitted Encumbrance, and the Court shall retain jurisdiction to hear and determine any such objections. ~~Buyer agrees to use commercially reasonable efforts, in consultation with the Committee and the Debtors, to establish a protocol within 10 business days of closing, for payment of Assumed 503(b)(9) Claims.  Further, Buyer shall pay all Assumed Accounts Payable consistent with the mutually agreeable protocol for payment.~~

84.    ~~67.~~ <u>Liberty Mutual Insurance Company</u>.  Liberty Mutual Insurance Company (the

"Surety") executed certain surety bonds on behalf of certain of the Debtors (collectively, the "Existing Surety Bonds").  These Existing Surety Bonds are issued pursuant to certain existing indemnity agreements and/or related agreements by and between the Surety, on the one hand, and the Debtors, on the other hand (collectively, the "Existing Indemnity Agreements" and, together with any Existing Surety Bond, the "Surety Agreements").

85.    68. Nothing in this Sale Order, the APA, or any document related to any of the foregoing shall be (a) construed to authorize or permit the Debtors' assumption and/or assignment of any Surety Agreement or to obligate the Surety to replace any Existing Surety Bond in connection with the Sale, or (b) deemed to (i) provide the Surety's consent to the substitution of any principal under any Existing Surety Bond or Existing Indemnity Agreement, and the Buyer shall not be deemed a substitute principal under any Existing Surety Bond or an indemnitor under any Existing Indemnity Agreement or (ii) alter, limit, expand, modify, release, waive or prejudice any rights, remedies and/or defenses of the Surety under the Surety Agreements or in connection with the Chapter 11 Cases.

86.    69. Nothing in this Sale Order, the APA, or any document related to any of the foregoing shall be deemed to limit, impair, or prime Surety's rights or interests, if any, in any letters of credit, or any other collateral or the proceeds of such collateral, securing existing surety bonds and existing indemnity agreements.

87.    70. Chubb Companies.  Notwithstanding anything to the contrary in the Motion, the APA, the Bidding Procedures, the Bidding Procedures Order, any cure notice or assumption notice, any lists of executory contracts to be assumed and assigned, this Sale Order, or any documents relating to any of the foregoing: (a) nothing shall permit or otherwise effect a sale, an assignment or any other transfer, without the express written consent of the Chubb Companies

(as defined herein), of (i) any insurance policies that have been issued by ACE American Insurance Company, Federal Insurance Company, ACE Property & Casualty Insurance Company, Westchester Surplus Lines Insurance Company, Indemnity Insurance Company of North America, Executive Risk Indemnity Inc., Chubb Atlantic Indemnity, Ltd., Great Northern Insurance Company, Chubb Custom Insurance Company, and/or any of their U.S.-based affiliates and predecessors (collectively, the "Chubb Companies") to or that provide coverage to any of the Debtors (or their predecessors) and all agreements, documents or instruments relating thereto (collectively, the "Chubb Insurance Contracts"), and/or (ii) any rights, proceeds, benefits, claims, interests, rights to payments and/or recoveries under such Chubb Insurance Contracts to the Buyer; provided, however, that to the extent any claim with respect to the Assets arises that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Buyer any such insurance proceeds (each, a "Proceed Turnover") and, further, Chubb Companies shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover.

88.    Tempur Sealy International, Inc. Notwithstanding any other provision of this Sale Order or the APA to the contrary, to the extent the Assets include any assets related to Tempur Sealy International, Inc. or its affiliates, such transfer shall not be free and clear of, and shall not impair in any respect, but are expressly subject to, any and all affirmative defenses to payment, including but not limited to rights of setoff and recoupment, held by Tempur Sealy International, Inc. or its affiliates.

89.    71. WPG Management Associates, Inc. Notwithstanding anything to the contrary in this Sale Order or the APA, the real property located at 4900 E Dublin Granville Rd., Westerville OH 43081 (the "Headquarters") shall not be transferred to the Buyer or its affiliates

free and clear under Section 363(f) of the Bankruptcy Code of that certain leasehold interest (the "Lease") of WPG Management Associates, Inc. ("WPG") at the Headquarters until either (a) this Court on notice and a hearing has entered a further order approving such transfer of the Headquarters free and clear of any interest in the Lease or (b) a settlement is reached, and notice of which is filed on the Bankruptcy Court's docket, among WPG, Buyer and Seller pursuant to which each agree to such transfer free and clear.  All rights of WPG, Buyer and Seller are reserved notwithstanding entry of this Sale Order.

72. Tempur Sealy International, Inc. Notwithstanding any other provision of this Sale Order or the APA to the contrary, to the extent the Assets include any assets related to Tempur Sealy International, Inc. or its affiliates, such transfer shall not be free and clear of, and shall not impair in any respect, but are expressly subject to, any and all affirmative defenses to payment, including but not limited to rights of setoff and recoupment, held by Tempur Sealy International, Inc. or its affiliates.

90. 73. AGS Matter.  Subject to the terms of this Sale Order, the Acquired Proceedings includes all rights, claims, accounts, and causes of action (including warranty and similar claims) of the Selling Entities against any persons (other than another Selling Entity) (regardless of whether such claims and causes of action have been asserted) and all rights of indemnity, rights of contribution, rights to refunds, rights of reimbursement, and other rights of recovery, including rights to insurance proceeds, possessed by the Selling Entities (regardless of whether such rights are currently exercisable).  For the avoidance of doubt, the AGS Matter is an asset of the Sellers and is property of the Debtors' estates, and that is an Acquired Proceeding subject to the terms of this Sale Order and the APA. *provided, however,* that if Buyer determines not to pursue the AGS Matter, Buyer shall promptly inform Seller in writing and such claims

shall be deemed to be Excluded Assets and be deemed property of the Debtors' Estates. Within five (5) business days of Closing, Seller shall file a motion to substitute Buyer as a party in the AGS Matter.

91.    74. Notice of Sale Closing.  Within one Business Day of the occurrence of the Initial Closing of the Sale, the Debtors shall file and serve a notice of the closing of the Sale.

92.    75. Computation of Time Periods.  All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

93.    76. Order Governs in Event of Inconsistencies.  To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Sale Order shall govern.  To the extent there are any inconsistencies between the terms of this Sale Order and the APA (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

94.    77. Modification.  The APA and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court. Notwithstanding the foregoing, no such modifications, amendments or supplements shall be permitted that impair the rights of the DIP Credit Parties or Prepetition Secured Creditors under this Sale Order without their prior written consent or further order of the Court.

95.    78. Buyer Entities.  The term "Buyer" as used in this Sale Order shall include any affiliate the Buyer designates to acquire particular assets in accordance with the terms of the APA.

96.    79. Waiver of Stay.  Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), or 7062 or any applicable provisions of the Local Rules, this Sale Order shall

30652314.1

#99666180v21

not be stayed following the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.

97.    80.    Non-Severability.  The provisions of this Sale Order as applied to the Buyer for the APA are nonseverablenon-severable and mutually dependent.

98.    81.    Retention of Jurisdiction.  The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and, the APA and the Agency Agreement, all amendments thereto, and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Buyer (or any Designated Buyer, as applicable), and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

30652314.1
#99666180v21

# EXHIBIT 1

APA

**<u>EXHIBIT 2</u>**

<u>Agency Agreement</u>
~~Designation Rights Amendment~~