IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| BIG LOTS, INC., et al.,[1] | § § § | Case No. 24-11967 (JKS) |
| | § § | (Jointly Administered) |
| Debtors. | § § § | Related D.I. 1351 |

**OBJECTION OF STEGER TOWNE CROSSING, LP TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) EXTENDING TIME TO ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) GRANTING RELATED RELIEF**

Steger Towne Crossing, LP ("**Landlord**") hereby files this objection ("**Objection**") to the *Motion of Debtors for Entry of an Order (I) Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [D.I. 1351] (the "**Motion**") filed by the above-captioned debtors and debtors in possession (together, "**Debtors**"), and in support thereof, would respectfully show the Court as follows:

### I.     RELEVANT BACKGROUND

1.     On June 3, 2021, Landlord and Debtor PNS Stores, Inc. entered into that certain Lease Agreement ("**Lease**") for the premises consisting of 36,878 square feet at the shopping center located at 2855 Ridge Road, Rockwall, Texas 75032 (the "**Property**"). A true and correct copy of the Lease is attached hereto as **Exhibit A**.

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin- Granville Road, Columbus, OH 43081.

2. Currently, the term under the Lease expires on January 31, 2032.

3. On September 9, 2024 (the "**Petition Date**"), the Debtors filed their voluntary petitions for relief before this Court.

4. As of the Petition Date, the Lease was in arrears by not less than $30,034.26, or approximately one-month's rent.

5. Also on the Petition Date, the Debtors sought a variety of relief from the Court with respect to its nonresidential real property leases, including the following:

- *Motion of Debtors for Entry of Interim and Final Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* [D.I. 13] (the "**Lease Sale Procedures Motion**"), seeking to establish procedures to sell certain of the Debtors' unexpired real property leases at its stores, which motion was granted by the Court via a number of interim orders entered between September 18 and December 4, 2024, authorizing the Debtors to hold four (4) separate lease auctions [D.I. 137,460, 650, and 1198];

- *Motion of Debtors for Entry of Interim and Final Order (I) Authorizing Debtors to Assume the Services Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* [D.I, 16] (the "**Store Closing Motion**"), seeking approval of procedures for going-out-of-business sales and related notices and processes for closing certain of the Debtors' stores, which motion was granted by the Court on October 21, 2024 [D.I. 576];

- *Motion of Debtors for Entry of Orders (I) (A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Stalking Horse and Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures, (II) (A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [D.I. 18] (the "**Bid Procedures Motion**"), seeking authority to potentially assume and assign certain unexpired leases of the Debtors' stores to the winning bidder of a sale of substantially all of the Debtors' assets, which was motion granted by the Court on October 31, 2024 [D.I. 612];

6. Meanwhile, beginning on or about September 10, 2024, the Debtors also reached out to the Landlord through their real estate consultant, A&G Real Estate Partners, LLC ("**A&G**"), to

initiate negotiations for an amended version of the Lease with terms more favorable to the Debtors or their assignee(s). A&G represented to the Landlord that the Big Lots store at the Property was "in the 'Possible Close' category" and "has to be addressed quickly." *See* **Exhibit B**.

7.  In the ensuing months, a number of back and forth offers were exchanged between the Debtors and the Landlord, wherein the Debtors attempted to extract more favorable lease terms, but ultimately rejected the terms to which Landlord was willing to agree. Landlord ultimately preferred that the Lease be rejected by the Debtors, and offered $10,000 to incentivize the Debtors to reject the Lease, which offer the Debtors rebuffed.[2]

8.  Throughout this process, the Debtors have kept their options open, signaling a spectrum of intentions with respect to the Lease, and making it nearly impossible for the Landlord to do necessary business planning with respect to the Property. Specifically:

- On October 16, 2024, the Debtors filed their *Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount* [D. I 511], specifically listing the Lease as one to be potentially assumed and assigned pursuant to the Bid Procedures Order.

   o In conjunction with the notice of potential assumption and assignment of the Lease, the Debtors also communicated to Landlord that the Lease had been included in marketing materials advertising the Debtors' leases to be auctioned off to potential bidders as part of its Wave 6 auction to be held in December 2024.

- Also, as of October 16, 2024, the Debtors posted "store closing" and "going out of business" signs on the Property. When Landlord inquired with A&G if this meant the Debtors would also be rejecting the Lease, Landlord was told that the amended lease terms were still "under review" by the Debtors and that they had not determined whether to reject the Lease.

- On November 23, 2024, Landlord observed that the Debtors had removed any "store closing" and "going out of business" signs on the Property, and had instead replaced them with signs containing the Big Lots' logo and stating, "We're Staying

---

[2] Ironically, throughout the negotiation process, the Debtors threatened Landlord with closure of the store (and presumptively, rejection of the Lease) if they could not agree on terms for an amended Lease, but when Landlord finally determined that it actually *desired* rejection of the Lease and offered the Debtors cash consideration to reject the Lease, the Debtors were uninterested in this offer.

Open."

- On December 2, 2024, the Debtors filed their *Sixth Notice of Filing of List of Additional Closing Store Pursuant to the Final Order (I) Authorizing Debtors to Assume the Consulting Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* [D.I. 1292], specifically listing the store at the Property as one the Debtors had identified to be closed.

9.   On December 13, 2024, the Debtors filed their Motion, seeking to extend their deadline under 11 U.S.C. § 365(d)(4) to assume or reject nonresidential real property leases by 90 days, or until April 7, 2025.

10.   Less than one week later, on December 19, 2024, the Court held a status conference wherein the Debtors acknowledged that their previously-approved sale of substantially all of their assets to their stalking-horse bidder Nexus Capital Management was "no longer viable," and that, subject to potentially salvaging a vastly pared-down sale of certain core assets, the Debtors would be closing their remaining stores and liquidating their assets as a result. *See Notice of Status Conference* [D.I. 1398].

11.   Notwithstanding the revelation that the Debtors will be closing all stores and liquidating, the Debtors continue to hold their landlords in limbo by prosecuting their Motion to extend their time to make a final determination to assume or reject the remaining store leases, including Landlords' Lease. For the reasons set forth below, the Debtors' Motion should be denied.

## II.   OBJECTION

12.   Section 365(d)(4) of the Bankruptcy Code provides that "an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected" if it is not assumed or rejected "by the earlier of (i) the date that is 120 days after that date of the order for relief; or (ii) the date of the entry of an order confirming a plan." 11 U.S.C. § 365(d)(4)(A).

Section 365(d)(4)(B)(i) further provides that, upon motion, the Court may extend the 120-day period by 90 days "for cause." 11 U.S.C. § 365(d)(4)(B)(i).

10. Section 365(d)(4) was specifically enacted for the purpose of protecting landlords in chapter 11 proceedings. *In re Enrst Home Center, Inc.*, 209 B.R. 974, 982 (Bankr. W.D. Wash. 1997). As such, the burden for showing "cause" that the deadline to assume or reject should be extended falls on the debtor, and the deadline may be extended only upon the Court finding "cause." *In re Wedtech Corp.*, 72 B.R. 464, 469 (Bankr. S.D.N.Y. 1987).

11. "Cause" to extend the deadline under section 365(d)(4) is not defined in the Bankruptcy Code, and the Code thereby gives courts a great deal of discretion to weigh all relevant factors related to a requested extension. *Enrst Home Center, Inc.*, 209 B.R. at 981. Courts may consider a number of factors for guidance in whether to grant the extension, including: (1) whether the lease is the primary asset of the debtor; (2) whether the lessor has a reversionary interest in the building built by the debtor on the landlord's land; (3) whether the debtor has had time to intelligently appraise its financial situation and potential value of its assets in terms of the formulation of a plan; (4) whether the lessor continues to receive the rent required in the lease; (5) whether the lessor will be damaged beyond the compensation available under the Bankruptcy Code due to the debtor's continued occupation; (6) whether the case is exceptionally complex and involves a large number of leases; (7) whether the need exists for a judicial determination of whether the lease is a disguised security interest; (8) whether the debtor has failed or is unable to formulate a plan when it has had more than enough time to do so; and (9) any other factors bearing on whether the debtor has had a reasonable amount of time to decide to assume or reject the lease. *Id.* at 980 (internal citations omitted).

12. Here, the most relevant factors for the Court to consider with respect to the

requested extension are:

- whether the debtor has had time to intelligently appraise its financial situation and potential value of its assets in terms of the formulation of a plan; and

- whether the debtor has failed or is unable to formulate a plan when it has had more than enough time to do so.

13. The Debtors have had more than enough time in these cases to determine what to do with their unexpired leases, and they have emphasized repeatedly that time was of the essence in making these determinations. In actuality, the Debtors' repeated insistence that the Landlord act quickly to come to terms for an amended Lease has been entirely at odds with the dilatory and scattershot "all options on the table" process that ensued. The Landlord has lost valuable time and opportunity to negotiate with potential replacement tenants, as all such parties who have indicated interest in the Property have been necessarily informed that no new lease can be offered until the Debtors make their decision on assumption/rejection of the current Lease.

14. There is also no plan on file in these cases, or even a motion to extend the Debtors' exclusivity period to file and solicit a plan. The Debtors' failure to propose a plan, coupled with their admission that they will not be going forward with their asset sale and will be liquidating, supports setting the Landlord (and other similarly-situated landlords) free from being held hostage to the Debtors' protracted decision-making process.

15. Contrary to the Debtors' statement in their Motion that no landlords will be prejudiced by any extension of the Debtors' deadline to assume or reject nonresidential real property leases because post-petition rent will be timely paid during any extension, the Landlord has already been prejudiced and will continue to be prejudiced by any proposed extension of the 365(d)(4) deadline. As mentioned, Landlord has lost significant time and opportunity to negotiate

with replacement tenants without having any certainty as to whether its lease might be assumed and assigned by the Debtors. Further, the posting of store closing/going-out-of-business signs, followed contradicting signs indicating the store at the Property will stay open has proved confusing to customers, affecting traffic at the shopping center, and thereby harming Landlord's other tenants at the shopping center.

16. Under these circumstances, the continued prejudice to Landlord in lost time and opportunity to negotiate with replacement tenants far outweighs any value to the Debtors' estates that could be squeezed from a potential sale of the Lease, not to mention outweighed by the cost to the estates of continued post-petition rent payments. The Debtors have already held four lease auctions. Presumably, any leases of significant value to potential buyers were already monetized through these auctions.

17. It is also unclear where the Debtors intend secure revenue to pay post-petition rent for stores that will be closed shortly after the beginning of the new year.

18. The Debtors are entitled to their business judgment in their determination of whether to assume or reject their unexpired leases, but the Debtors cannot have it both ways, nor can they keep all options open for an indefinite amount of time, especially to the prejudice of the Landlord. The Landlord cannot operate in a commercially reasonable manner and make appropriate business decisions under the have-it-both-ways scenario that the Debtors have created, and the Debtors have had more than sufficient time to make a determination regarding whether to assume and assign or reject the Lease, especially in light of their recent announcement regarding the failed sale process and their intent to liquidate. For these reasons, the Landlord objects to the Debtors' Motion, and requests that the Court order the Debtors to make their decision to assume or reject the Lease on or before the existing deadline on January 7, 2025.

WHEREFORE, Landlord respectfully prays that the Court will enter an order denying the relief requested by the Debtors with respect to their deadline to assume or reject the Lease, as well as granting Landlord such other and further relief to which it may be entitled.

Dated: December 27, 2024
Wilmington, Delaware

**SAUL EWING LLP**

*/s/ Monique B. DiSabatino*
Monique B. DiSabatino (DE Bar No. 6027)
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Email: monique.disabatino@saul.com

-and-

**FERGUSON BRASWELL FRASER KUBASTA P.C.**
Rachael L. Smiley
2500 Dallas Parkway, Suite 600
Plano, TX 75093
Telephone: (972) 826-4457
Email: rsmiley@fbfk.law

*Attorneys for Steger Town Crossing, LP*