IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: 12/30/2024 at 11:00 a.m. (ET)**<br><br>**Hearing Date: 12/30/2024 at 11:00 a.m. (ET)** |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF TEMPUR SEALY INTERNATIONAL, INC. TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING SALE OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER THE GBRP APA, (III) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF**

Tempur Sealy International, Inc., on behalf of itself and its affiliates ("Tempur Sealy") including, by its undersigned counsel, Frost Brown Todd LLP and the Law Office of Susan E. Kaufman, LLC, files this limited objection and reservation of rights (this "Limited Objection") to the *Motion of Debtors for Entry of an Order (I) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform under the GBRP APA, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1437] (the "New Sale Motion").[1] In support of this Limited Objection, Tempur Sealy respectfully states:

**BACKGROUND**

1. On September 9, 2024 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this

---

[1] Capitalized terms used herein but undefined shall have the meaning ascribed to them in the New Sale Motion.

Court.

2. Prior to the Petition Date, the Debtors and Tempur Sealy entered into the following agreements (collectively, the "Agreements"):

- Sealy Retailer Agreement, entered into May 15, 2019, as amended by the First Amendment to Sealy Retailer Agreement, entered into February 1, 2021 and Second Amendment to Sealy Retailer Agreement, entered into August 11, 2021 (the "Retailer Agreement")
- Statement of Work, entered into September 16, 2019, as amended by the First Amendment to Statement of Work, entered into January 20, 2020
- Dealer Agreement, signed September 28, 2004
- Trailer Interchange Agreement, entered into March 30, 2020
- Trademark Sublicense Agreement, effective August 1, 2021

3. Pursuant to the terms of the Agreements, and prior to December 19, 2024, the Debtors purchased from Tempur Sealy certain Tempur Sealy branded bedding products under the trademarks and trade names of Tempur-Pedic®, Sealy® and Stearns & Foster® (collectively, the "Tempur Products").

4. As of the Petition Date, the Debtors owed Tempur Sealy not less than $4,095,504.70 under the Agreements (the "Pre-Petition Claim").[2]

5. On and after the Petition Date, Tempur Sealy and the Debtors maintained their ordinary business relationship, with Tempur Sealy continuing to sell the Goods to the Debtors.

6. On October 9, 2024, this Court entered its *Order (I) Authorizing Debtors To Pay Prepetition Critical Vendor Claims, Foreign Vendor Claims, and 503(b)(9) Claims in the Ordinary Course of Business, (II) Granting Administrative Expense Status to Debtors' Undisputed Obligations to Vendors Arising From Post-Petition Delivery of Goods Ordered Prepetition and Authorizing Debtors To Pay Those Obligations in the Ordinary Course of Business, (III) Authorizing Debtors To Return Goods, (IV) Authorizing Debtors To Pay Certain Prepetition*

---

[2] The Pre-Petition Claim includes amounts arising under section 503(b)(9) of the Bankruptcy Code.

*Claims of Lien Claimants, and (V) Authorizing Financial Institutions To Honor and Process Related Checks and Transfers* [Docket No. 463] (the "Critical Vendor Order").

7. On October 28, 2024, the Debtors and Tempur Sealy entered into that certain agreement acknowledging Tempur Sealy's critical vendor status (the "Critical Vendor Letter Agreement"). Under the Critical Vendor Letter Agreement, the Debtors agreed to pay Tempur Sealy $2,260,081.00 (the "Critical Vendor Claim") within 60 days of October 28, 2024 and in exchange Tempur Sealy agreed to continue to provide certain Tempur Products to the Debtors post-Petition Date in accordance with Customary Trade Terms (as defined in the Critical Vendor Letter Agreement). Pursuant to the terms of the Critical Vendor Letter Agreement, the Debtors agreed that the Critical Vendor Claim is an administrative claim and entitled to treatment as a priority claim under section 507 of the Bankruptcy Code. As of the filing of this Limited Objection, the Debtors have failed to pay the Critical Vendor Claim.

8. In reliance upon the Critical Vendor Letter Agreement and the Critical Vendor Order, Tempur Sealy continued in good faith to conduct business with the Debtors post-Petition Date despite Tempur Sealy's already significant outstanding Pre-Petition Claim. Specifically, Tempur Sealy continued to deliver the Goods to the Debtors.

9. As of the filing of this Limited Objection, Tempur Sealy is owed not less than $3,187,044.27 from the Debtors in post-Petition Date amounts due under the Agreements (the "Post-Petition Claim").

10. As of the filing of this Limited Objection, the aggregate amount of the Critical Vendor Claim and the Post Petition Claim is not less than $5,447,125.27 (the "Administrative Claim").

11. On December 27, 2024, the Debtors filed the New Sale Motion seeking approval

of the sale of substantially all of the Debtors' assets to the Proposed Purchaser.

## OBJECTION AND RESERVATION OF RIGHTS

12. Like many vendors whose claims have not been paid by the Debtors, Tempur Sealy is disappointed that the previously approved sale to the affiliate of Nexus Capital Management, LP did not close.  While Tempur Sealy understands the current posture of this Chapter 11 Case and does not generally object to the Debtors  seeking to preserve value, Tempur Sealy objects to the entry of order approving the Sale and/or the GBRP APA to the extent (x) Tempur Products are included in the Proposed Sale[3] and (y) the Debtors seek to impermissibly assign or transfer the Debtors' rights under the Agreements without assuming and assigning such Agreements to the Proposed Purchaser or otherwise seek to impair Tempur Sealy's rights under the Agreements in contravention of section 365 of the Bankruptcy Code, all as further set forth below.

13. On December 29, 2024, counsel for Tempur Sealy had a phone call with counsel for GBRP, in which counsel for GBRP clarified that GBRP is <u>not</u> purchasing the Inventory; rather, GBRP will be liquidating the Inventory in accordance with the Agency Agreement.  Nevertheless, Tempur Sealy files this Limited Objection for purposes of preserving its rights, including intellectual property rights and indemnification and warranty and rebate issues under theAgreements.

### *Tempur Sealy's Intellectual Property Rights Should be Preserved*

14. In an effort to preserve and protect Tempur Sealy's brands, the Agreements

---

[3] Pursuant to Paragraph 7 of the Retailer Agreement between Tempur Sealy and the Debtors, the Debtors specifically agreed that "Big Lots will not sell Products to another retailer or any wholesaler but only to end users with a shipping address in the U.S." The Agreements remain in place and the Debtors may not unilaterally and willfully breach or ignore the terms and conditions of those Agreements.  To the extent that the Debtors seek to sell the Tempur Products absent assumption and assignment of the Agreements to GBRP, such a sale would side-step bargained for provisions in the Agreements that Tempur Sealy relied upon when entering into the Agreements with the Debtors. Tempur Sealy reserves all rights to assert additional claims arising from any improper sale of the Products by the Debtors.

between the Debtors and Tempur Sealy specifically restrict the ability of the Debtors to advertise Tempur Sealy trade names and trademarks on advertising and promotions; for instance, Exhibit C to the Retailer Agreement requires the Debtors to use the Sealy®, Sealy Posturepedic®, Sealy Posturepedic® Premier Hybrid & Optimum™ trade names and trademarks exactly how they appear in the graphic files Tempur Sealy provided the Debtors.  Furthermore, paragraph 5 of the Retailer Agreement provides that "Big Lots will not advertise or sell [Tempur Products] through any 'marketplace' site owned or operated by a third party, including, for example, eBay, Craig's, or Amazon.com.

15. To the extent that the proposed Sale does not involve the assumption and assignment of the Agreements to the Proposed Purchaser, Tempur Sealy objects to the New Sale Motion to the extent it seeks to circumvent the Agreements and transfer to the Proposed Purchaser the Debtors' limited rights for the use of Tempur Sealy trade names and trademarks. Any order approving the sale to the Proposed Purchaser without assumption and assignment of the Agreements should expressly provide that the Proposed Purchaser will not be entitled to use Tempur Sealy's trade names and trademarks.

***Any Assumption and Assignment of the Agreements Must Account for the Full Cure Amount***

15. On November 6, 2024, Tempur Sealy filed its *Objection and Reservation of Rights to the (I) Notice of Proposed Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount and (II) Proposed Sale* [Docket No. 937] (the "Cure Objection").  In the Cure Objection, among other things, Tempur Sealy objected to the Debtors' proposed cure amount of $0.00 in connection with the potential assumption and assignment of the Agreements. As previously set forth in the Cure Objection, the aggregate cure amount owing under the Agreements as of the time of the filing of the Cure Objection was not less than $4,096,504.70,

plus any additional amounts incurred post-petition in the ordinary course of business that remain unpaid (the "Tempur Cure Amount"). The Cure Objection was not resolved prior to the filing of the New Sale Motion. Tempur Sealy objects to the extent that the New Sale Motion seeks the approval of the assumption and assignment of the Agreements to the Proposed Purchaser without paying Tempur Sealy the Tempur Cure Amount.[4]

### *Tempur Sealy's Rights of Setoff and Recoupment Must be Preserved in Connection With the Sale*

16. The Proposed Sale Order attached as Exhibit B to the New Sale Motion [at Docket No. 1437-3] contains previously agreed upon language by the Debtors and Tempur Sealy in paragraph 88 that preserves Tempur Sealy' rights of setoff and recoupment. To the extent that any order approving the Sale modifies or deletes that language, Tempur Sealy objects and re-urges the arguments made in paragraphs 17-20 of its Cure Objection with respect to its rights of setoff and recoupment.

### *The Debtors Cannot Sell the Tempur Products Nor Entitle the Proposed Purchaser to Assert Claims, if any, Against Tempur Sealy for Indemnification, Warranties or Rebates, if any, Without Assuming and Assigning the Agreements*

17. Similarly, pursuant to the terms of the Agreements, the Debtors may be able to, among other things, assert claims to Tempur Sealy for indemnification, warranties, rebates, or other similar incentives relating to the Tempur Products.

18. To the extent that the Agreements are not being assumed and assigned to the Proposed Purchaser, the Sale cannot entitle the Proposed Purchaser to assert claims, if any, against Tempur Sealy for indemnification, warranties, rebates, or other similar incentives relating to the Tempur Products. Tempur Sealy objects to the New Sale Motion to the extent that Debtors seek

---

[4] Because of the expedited hearing on the New Sale Motion, Tempur Sealy reserves the right to file a supplemental cure statement with this Court.

to allow the Proposed Purchaser to assert claims against Tempur Sealy under the Agreements or to the extent the Debtors attempt to assert claims against Tempur Sealy on behalf of the Proposed Purchaser.

19. Accordingly, any order approving the sale to the Proposed Purchaser should provide that the Proposed Purchaser will not be entitled to assert claims to Tempur Sealy for indemnification, warranties, rebates, or other similar incentives relating to the Tempur Products.

### AGREED LANGUAGE FOR PROPOSED SALE ORDER

20. To address Tempur Sealy's objections set forth in this Limited Objection, Tempur Sealy and GBRP have agreed to the following language (the "Proposed Language") to be inserted into the Proposed Sale Order (in addition to the previously agreed upon language set forth in paragraph 88 of the Proposed Sale Order):

> Notwithstanding anything in this Order or the GBRP APA to the contrary: (i) no rights under that certain (a) Sealy Retailer Agreement, entered into May 15, 2019, as amended by the First Amendment to Sealy Retailer Agreement, entered into February 1, 2021 and Second Amendment to Sealy Retailer Agreement, entered into August 11, 2021, (b) Statement of Work, entered into September 16, 2019, as amended by the First Amendment to Statement of Work, entered into January 20, 2020, (c) Dealer Agreement, signed September 28, 2004, (d) Trailer Interchange Agreement, entered into March 30, 2020, and (e) Trademark Sublicense Agreement, effective August 1, 2021 (collectively, as amended, the "**Tempur Sealy Agreements**") are being transferred to GBRP pursuant to this Order or the GBRP APA; (ii) GBRP shall not be permitted to utilize, without the express permission of Tempur Sealy International, Inc. ("**Tempur Sealy**"), any intellectual property assets of Tempur Sealy including, but not limited to, Tempur-Pedic®, Sealy® and Stearns & Foster® trade names and trademarks (the "**Tempur Sealy Marks**"); provided, however, that the foregoing shall not (x) in any way limit or otherwise restrict GBRP's sale or other disposition pursuant to the Asset Purchase Agreement and/or Agency Agreement of any Tempur Sealy products that are included in Debtors' inventory that are the subject of the Asset Purchase Agreement in GBRP's capacity as Agent under the Agency Agreement and in the course of the Store Closing Sale; (y) in any way preclude GBRP from selling any Assets purchased by GBRP that include the Tempur Sealy Marks, or (z) obligate GBRP to remove any Tempur Sealy Marks from the Assets purchased by GBRP in connection with such sales or otherwise; provided further, however, with respect to

any Assets purchased by GBRP that include the Tempur Sealy Marks (as distinguished from Inventory that is subject to disposition under the Agency Agreement), GBRP shall not be permitted to include Tempur Sealy Marks in advertising or other promotions; (iii) GBRP shall not be entitled to assert a claim against Tempur Sealy for indemnification, warranties, rebates, or incentives that may otherwise be due and owing to the Debtors pursuant to the Tempur Sealy Agreements; and (iv) Tempur Sealy reserves all of its rights and remedies under the Tempur Sealy Agreements against the Debtors and nothing in this Order or the GBRP APA shall abrogate Tempur Sealy's rights under the Tempur Sealy Agreements against the Debtors.

## **RESERVATION OF RIGHTS**

21.     Tempur Sealy reserves all rights to press any additional objections to the Sale Motion and the proposed sale to the Proposed Purchaser. To the extent this Objection is not sustained, Tempur Sealy reserves all additional rights under the Agreements and the Bankruptcy Code to seek relief from the automatic stay to terminate the Agreements or to compel the Debtors to reject the Agreements, and Tempur Sealy reserves any and all rights it may have against the Proposed Purchaser. Furthermore, to the extent the Proposed Purchaser later elects to designate the Agreements for assumption and assignment to the Proposed Purchaser, Tempur Sealy reserves any and all rights to object to such assumption and assignment including, but not limited to, proposed cure amounts and adequate assurance of future performance of the Proposed Purchaser, as well as the sale of any rights of setoff and recoupment to the Proposed Purchaser.

[*Signature page follows*]

| | |
|---|---|
| Dated:  December 30, 2024<br>Wilmington, Delaware | Respectfully submitted,<br><br>LAW OFFICE OF SUSAN E. KAUFMAN, LLC<br><br>*/s/ Susan E. Kaufman*<br>Susan E. Kaufman (DSB# 3381)<br>919 N. Market Street, Suite 460<br>Wilmington, DE 19801<br>Tel: (302) 472-7420<br>Fax: (302) 792-7420<br>Email: skaufman@skaufmanlaw.com<br><br>-and-<br><br>Ronald E. Gold (OH Bar No. 0061351)<br>(Admitted *pro hac vice*)<br>FROST BROWN TODD LLP<br>3300 Great American Tower<br>301 East Fourth Street<br>Cincinnati, OH 45202<br>Tel: (513) 651-6800<br>Fax: (513) 651-6981<br>Email: rgold@fbtlaw.com<br><br>-and-<br><br>Rebecca L. Matthews (TX Bar No. 2406776)<br>(Admitted *pro hac vice*)<br>Mark A. Platt (TX Bar No. 00791453)<br>(Admitted *pro hac vice*)<br>FROST BROWN TODD LLP<br>2101 Cedar Springs Road, Suite 900<br>Dallas, TX 75201<br>Tel: (214) 580-5852<br>Fax: (214) 545-3473<br>Email: rmatthews@fbtlaw.com<br>         mplatt@fbtlaw.com<br><br>**Counsel for Tempur Sealy International, Inc.** |