IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| _____ ) |  |
| In re: | ) Chapter 11 |
|  | ) |
| BIG LOTS, INC., *et al.*, | ) Case No. 24-11967 (JKS) |
|  | ) |
|  | ) (Jointly Administered) |
| Debtors. | ) |
|  | ) Re:  Docket No. 1437 |
|  | ) |
|  | ) Obj. Deadline: 12/30/24, 11:00 a.m. |
|  | ) Hearing Date: 12/30/24, 11:00 a.m. |
| _____ ) |  |

**OBJECTION OF CERTAIN UTILITY COMPANIES TO THE MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING SALE OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, and ENCUMBRANCES, (II) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER THE GBRP APA, (III) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF**

Appalachian Power Company, Public Service Company of Oklahoma, Southwestern Electric Power Company, Ohio Power Company, Indiana Michigan Power Company (collectively, "American Electric Power"), Arizona Public Service Company, Ohio Edison Company, Potomac Edison Company, West Penn Power Company, Pennsylvania Electric Company, Monongahela Power Company, Metropolitan Edison Company, Pennsylvania Power Company, Jersey Central Power & Light Company, Toledo Edison Company, The Cleveland Electric Illuminating Company, Virginia Electric and Power Company d/b/a Dominion Energy Virginia, Dominion Energy South Carolina, Inc., Public Service Company of North Carolina Incorporated, Georgia Power Company, PSEG Long Island, Salt River

Project, San Diego Gas and Electric Company, Southern California Gas Company, Southern California Edison Company, Baltimore Gas and Electric Company, Commonwealth Edison Company, PECO Energy Company, The Potomac Electric Power Company, Delmarva Power & Light Company, Atlantic City Electric Company, Tampa Electric Company, Peoples Gas System, Inc., Entergy Arkansas, LLC, Entergy Louisiana, LLC, Entergy Mississippi, LLC, Entergy Texas, Inc., The Connecticut Light & Power Company, Yankee Gas Services Company, Public Service Company of New Hampshire, Eversource Gas of Massachusetts, NStar Electric Company, Western Massachusetts, NStar East Electric, Boston Gas Company, KeySpan Energy Delivery Long Island, Massachusetts Electric Company, Niagara Mohawk Power Corporation, Orange & Rockland Utilities, Inc., The East Ohio Gas Company d/b/a Enbridge Gas Ohio, Tucson Electric Power Company, UNS Electric, Inc., UNS Gas, Inc., Oklahoma Gas and Electric Company, Symmetry Energy Solutions, LLC, Constellation NewEnergy, Inc., Constellation NewEnergy – Gas Division, LLC, CenterPoint Energy Resources Corp., New York State Electric and Gas Corporation, Rochester Gas & Electric Corporation, Florida Power & Light Company, Central Maine Power Company and Public Service Electric and Gas Company (collectively, the "Utilities"), hereby file this *Objection* to the *Motion of Debtors For Entry of an Order (I) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the*

2

*Debtors To Enter Into and Perform Under the GBRP APA, (III)*
*Authorizing Assumption and Assignment of Executory Contracts and*
*Unexpired Leases, and (IV) Granting Related Relief* (the "Sale
Motion")(Docket No. 1437), and set forth the following:

## Introduction

The Debtors have failed to pay a substantial amount of post-
petition charges owed to the Utilities and other post-petition
creditors and appear to be administratively insolvent.  As a
result, the Debtors filed the Sale Motion at 2:43 p.m. on Friday,
December 27, 2024, that will be heard at a hearing on Monday,
December 30, 2024 at 11:00 a.m., seeking Court approval of the
sale of the Debtors' assets pursuant to the Asset Purchase
Agreement dated December 27, 2024, entered into between the
Debtors and Gordon Brothers Retail Partners, LLC ("GBRP" or the
"Buyer") (the "GBRP APA")1.  Upon information and belief, even
though GBRP is listed as the Buyer, the entity that will actually
be the purchaser of the Debtors' stores is Variety Wholesalers,
which is not a party to the APA.  According to Article 3 of the
Sale Motion, the sale proceeds will be used to: (1) pay off the
DIP Lenders; (2) pay landlords $17 million in stub rent; (3) fund
the Administration Budget; and (4) $7,500,000 to fund the
Professional Fee Escrow Account.

---

1 The GBRP APA is attached as Exhibit "1" to the proposed Order (the "Proposed
Sale Order") (Docket No. 1437-3) approving the Sale Motion.

The Utilities are filing this Objection to the Sale Motion for the following reasons:

1.    Although not requested at all in the Sale Motion, paragraph 23 of the Proposed Sale Order improperly includes the following injunctive relief:

> "All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the Debtors' ability to sell and transfer the Assets to the Buyer (or any Designated Buyer, as applicable) in accordance with the terms of the APA and this Sale Order."

(the "Proposed Injunctive Relief");

2.    Exhibit 2.1(a) of the Agency Agreement (attached as Exhibit "H" to the GBRP APA) makes it clear that the Debtors and the Buyer are improperly attempting to obtain Court authority to enjoin the Utilities from taking any actions, such as the termination of utility service for non-payment2 of post-petition charges:

> "The Sale Order shall provide, and otherwise be satisfactory to the Agent, _inter alia_, that:
>
> \* \* \*
>
> (xii) All utilities, internet service providers, website service or hosting providers, landlords, creditors, governmental authorities, and all persons acting for or on their behalf shall not interfere with or otherwise impede the conduct or advertising of the Sale, institute any action in any court (other than in

---

2 The Debtors' post-petition accounts with the Utilities are subject to service termination for the following unpaid post-petition charges:  (a) for the agreed upon post-petition deposits pursuant to Section 366 of the Bankruptcy Code; and (b) unpaid, past due post-petition bills pursuant to applicable state laws, regulations, tariffs or contracts pursuant to 28 U.S.C. Section 959(b).

> the Bankruptcy Court) or before any administrative body
> which in any way directly or indirectly interferes with
> or obstructs or otherwise impedes the conduct or
> advertising of the Sale."

3.    The legal basis for the relief requested in the Sale Motion is set forth in paragraph 5 of the Sale Motion.  However, the Debtors fail to cite to Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure, which govern how injunctive or other equitable relief must be sought in bankruptcy.  Despite the fact that the Proposed Injunctive Relief is clearly equitable in nature and the Debtors admit in Exhibit 2.1(a) of the Agency Agreement that the Proposed Injunctive Relief would apply to the Utilities, the Debtors have not sought Court approval of the Proposed Injunctive Relief via an adversary proceeding, but rather are attempting to obtain Court approval of the Proposed Injunctive Relief via a provision in the Proposed Sale Order on an extremely expedited basis.  Not only are the Debtors not properly before the Court on a procedural basis to seek extraordinary injunctive relief, they actually do not request the granting of injunctive relief in the Sale Motion or set forth any factual or legal arguments as to why the Debtors require the granting of extraordinary injunctive relief.

4.    With respect to the Proposed Injunctive Relief, it should be denied until it is properly sought via an adversary proceeding pursuant to Rules 7001 and 7065 of the Federal Rules

of Bankruptcy Procedure so that: (1) the Debtors are required to put on a proper evidentiary basis for seeking and obtaining such relief; and (2) parties that would be impacted by the Proposed Injunctive Relief will be able to address the relief sought.

5.     The proposed Winddown Budget (attached at Exhibit "G" to the GBRP APA) and APA Administrative Budget (attached at Exhibit "F" to the GRRP APA) do not include sufficient monies for the payment in full of the Utilities' post-petition charges (the Winddown  Budget and APA Administrative Budget collectively, the "Budgets").  Instead, it appears that the Agent under the proposed Agency Agreement attached as Exhibit H to the Proposed Order is supposed to pay "Occupancy Expenses" for the Debtors' stores.  Occupancy Expenses is supposed to be defined in Exhibit 4.1(a) to the Agency Agreement, which was not filed with the Sale Motion. Presumably the Utilities bills would be included in the definition of Occupancy Expenses to be paid by the Agent.

6.     The Budgets apparently only budget funds to pay administrative charges from January 1, 2025 through either February 28, 2025 (or March 31, 2025 if the Buyer extends the end date).  As the Utilities bill the Debtors in arrears for post-petition utility charges, it does not appear that there would be funds in the Budgets for the Debtors to pay the Utilities' final bills that would not be issued until March or April 2025 for

6

utility goods/services provided to the Debtors up through either
February 28, 2025 or March 31, 2025, as applicable.

7.    The Budgets apparently do not include funds to pay
utility charges billed prior to January 1, 2025 or for unbilled
utility goods/services provided to the Debtors prior to January
1, 2025.

8.    As the Debtors' post-petition creditors will impacted,
either favorably or unfavorably, by the Budgets, the Debtors and
the Buyer should not be given the authority to determine which
administrative expense claims should be paid.  The Court should
determine which administrative expense claims should be paid
either in full or on a pro rata basis.  If the Debtors and the
Buyers want to use the goods and services of the Utilities during
a winddown, the Utilities' post-petition charges should be paid
in full by the Debtors.  Furthermore, if the Utilities post-
petition charges are not paid in full, the Utilities, pursuant to
applicable state laws, regulations or tariffs can terminate
service to the Debtors for post-petition payment defaults so long
as they follow applicable state law termination of service
procedures.

As reflected in the *Joinder of Certain Utility Companies To
the Motion of the Official Committee of Unsecured Creditors To
(I) Enforce the Final DIP Order and Compel Payment of Stub Rent
and Section 503(b)(9) Claims, or (II) In the Alternative, Convert*

*These Cases To Cases Under Chapter 7 of the Bankruptcy Code* (the "Joinder") (Docket No. 1387), the Debtors have not paid the Utilities' numerous post-petition utility bills and Deposit charges owed to the Utilities that have resulted in the Utilities issuing numerous termination of utility services notices to the Debtors.

CNE, CNEG and Symmetry only provide utility goods and/or services to the Debtors pursuant to contracts. Neither CNE, CNEG nor Symmetry should be required to provide continued utility goods or services to the Buyer or its designee absent assumption and assignment of their contracts.

Based on all of the foregoing, this Court should: (A) deny the extraordinary Proposed Injunctive Relief sought in the Proposed Order to the Sale Motion; (B) require the Debtors to budget sufficient funds for the payment of the Utilities' post-petition Deposits and charges; and (C) Require the Debtors to either assume and assign or reject their contracts with CNE, CNEG and Symmetry as of the Initial Sale Closing Date.

**Facts**

**Procedural Facts**

1.   On September 9, 2024 (the "Petition Date"), the Debtors commenced their cases under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") that are now pending with this Court. The Debtors continue to operate their

8

businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

2.    The Debtors' Chapter 11 bankruptcy cases are being jointly administered.

## **The Utility Motion**

3.    On the Petition Date, the Debtors filed the *Motion of Debtors For Entry of Interim and Final Orders (I) Prohibiting Utilities From Altering, Refusing, or Discontinuing Service, (II) Deeming Utilities Adequately Assured of Future Performance, and (III) Establishing Procedures For Determining Requests For Additional Adequate Assurance* (the "Utility Motion")(Docket No. 9).

4.    On September 11, 2024, the Court entered the *Interim Order (I) Prohibiting Utilities From Altering, Refusing, or Discontinuing Service, (II) Deeming Utilities Adequately Assured of Future Performance, and (III) Establishing Procedures For Determining Requests For Additional Adequate Assurance* (the "Interim Utility Order")(Docket No. 136).  The Interim Utility Order set (i) an objection deadline of October 2, 2024 and (ii) the final hearing on the Utility Motion to take place on October 9, 2024 at 1:00 p.m.

5.    On September 25, 2024, the Utilities filed the *Objection of Certain Utility Companies To the Motion of Debtors For Entry of Interim and Final Orders (I) Prohibiting Utilities*

*From Altering, Refusing, or Discontinuing Service, (II) Deeming Utilities Adequately Assured of Future Performance, and (III) Establishing Procedures For Determining Requests For Additional Adequate Assurance* (the "Objection") (Docket No. 272).

6.   Following good-faith negotiations, the Utilities and the Debtors resolved the Objection with an adequate assurance settlement letter agreement dated October 18, 2024 (the "Adequate Assurance Settlement Agreement") whereby the Debtors agreed, in part, that (i) the Utilities (other than Baltimore Gas and Electric Company which held a prepetition deposit credit) would include one-month deposit amounts (the "Deposits") in the post-petition bills from the Utilities to the Debtors that would be paid by the applicable due date set forth in the post-petition invoices, and (ii) the Debtors would pay all undisputed post-petition bills received from the Utilities for post-petition utility charges on or before the applicable due date on the invoice, which is a due date in accordance with applicable state laws, regulations and/or tariffs.

7.   The Deposits and post-petition utility bills were supposed to be paid by Engie, which is the Debtors' agent that purportedly pays the Debtors' utility bills.

8.   On October 21, 2024, the Utilities filed a Notice of Withdrawal (Docket No. 561) pursuant to the adequate assurance settlement between the Utilities and the Debtors.

10

9.    By email on November 11, 2024, Debtors' counsel
informed the Utilities' counsel that Engie was provided with a
copy of the Adequate Assurance Settlement Letter Agreement, and
requested copies of past-due post-petition bills and termination
notices.

10.    From October 24, 2024 through the filing of this
Joinder, the Utilities' counsel has sent over forty (40) emails
to Debtors' counsel regarding the following: (i) Engie refusing
to pay the Deposits; (ii) Engie failing to pay bills from the
Utilities for post-petition utility service; (iii) numerous
disconnect notices issued by the Utilities for the non-payment
of post-petition utility charges, including Deposits; and (iv)
numerous unpaid post-petition bills.  Attached to those emails
were numerous disconnect notices, unpaid post-petition bills and
correspondence from Engie to the Utilities regarding its refusal
to pay billed Deposits.

## The Sale Motion

11.    On December 27, 2024 at 2:43 p.m., the Debtors filed
the Sale Motion.  An extremely expedited hearing on the Sale
Motion is set to take on December 30, 2024 at 11:00 a.m.

12.    Attached at Exhibit "B" to the Sale Motion is the
Proposed Sale Order (Docket No. 1437-3).

13.    The GBRP APA is attached as Exhibit "1" to the
Proposed Sale Order.

11

14.  Although not requested in the Sale Motion, paragraph 23 of the Proposed Sale Order improperly includes the following Proposed Injunctive Relief:

> "All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the Debtors' ability to sell and transfer the Assets to the Buyer (or any Designated Buyer, as applicable) in accordance with the terms of the APA and this Sale Order."

15.  Exhibit 2.1(a) of the Agency Agreement (attached as Exhibit "H" to the GBRP APA) makes it clear that the Debtors and the Buyer are improperly attempting to obtain Court authority to enjoin the Utilities from taking any actions, such as the termination of utility service for non-payment of post-petition charges:

> "The Sale Order shall provide, and otherwise be satisfactory to the Agent, inter alia, that:
>
> * * *
> (xii) All utilities, internet service providers, website service or hosting providers, landlords, creditors, governmental authorities, and all persons acting for or on their behalf shall not interfere with or otherwise impede the conduct or advertising of the Sale, institute any action in any court (other than in the Bankruptcy Court) or before any administrative body which in any way directly or indirectly interferes with or obstructs or otherwise impedes the conduct or advertising of the Sale."

16.  The legal basis for the relief requested in the Sale Motion is set forth in paragraph 5 of the Sale Motion.  However, the Debtors fail to cite to Rules 7001 and 7065 of the Federal

Rules of Bankruptcy Procedure, which govern how injunctive or other equitable relief must be sought in bankruptcy.

17.   The Debtors have contracts with CNE, CNEG and Symmetry whereby those Utilities have been providing post-petition utility goods/services to the Debtors.  If the Debtors' sale will close on either December 30 or 31, 2024, then the Debtors either need to (i) assume and assign the Debtors' contracts with CNE, CNEG and Symmetry, or (ii) reject the contracts with CNE, CNEG and Symmetry and obtain other suppliers for the provision of post-petition utility commodity.  Neither CNE, CNEG nor Symmetry should be required to provide utility goods/services after the Initial Sale Closing date to an entity that they do not have contractual privity with.

## Discussion

**A.   THE COURT SHOULD NOT ENTER THE PROPOSED SALE ORDER THAT IMPROPERLY INCLUDES THE PROPOSED INJUNCTIVE RELIEF PROVISION THAT WOULD IMPROPERLY ENJOIN THE UTILITIES FROM TERMINATING POST-PETITION SERVICES PURSUANT TO APPLICABLE STATE LAW PROCEDURES OR CONTRACTS.**

The Court should not enter the Proposed Sale Order containing the Proposed Injunctive Relief because (i) proceedings seeking injunctive relief must be brought as an adversary proceeding, and (ii) the Proposed Injunctive Relief would improperly deprive the Utilities of their right to terminate post-petition utility service for non-payment of a post-petition deposit or a post-petition payment default as long as they follow

applicable procedures set forth in state law tariffs or applicable contracts.

> **1.  Rule 7001 Of The Federal Rules Of Bankruptcy Procedure Requires A Party To File And Proceed Via An Adversary Proceeding To Obtain The Extraordinary Remedy Of the Proposed Injunctive Relief.**

Rule 7001 of the Federal Rules of Bankruptcy Procedure requires a party seeking injunctive relief to proceed via an adversary proceeding, not a motion.  Specifically, Rule 7001 of the Federal Rules of Bankruptcy Procedure in part provides:

> An adversary proceeding is governed by the rules of this Part VII.  The following are adversary proceedings:
>
> *   *   *
>
> (7)  a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;
>
> *   *   *

Hence, Rule 7001 requires that all proceedings seeking to obtain injunctive or other equitable relief shall be brought as an adversary proceeding.  *In re Best Products*, 203 B.R. 51 (Bankr. E.D. Va. 1996); *In re Norsal Indus., Inc.*, 147 B.R. 85, 86 (Bankr. E.D.N.Y. 1992); *see also In re Conxus Comm., Inc.*, 262 B.R. 893, 899 (D. Del. 2001).  In *Best Products*, the bankruptcy court, in the context of a chapter 11 bankruptcy case, held:

> The final issue which the court must address is the status of the injunction included in my September 24, 1996, order providing adequate assurance to utility companies. Fed.R.Bankr.P. 7001(7) plainly requires that any request for an injunction or other equitable relief must be sought in the context of an adversary proceeding. Since the

14

debtor has not filed the requisite action, I cannot enjoin
any utility from pursuing its rights under state law
should the debtor default in its payments post-petition.

*In re Best Products*, 203 B.R. at 54.  The Debtors have not filed

and served an adversary proceeding against the Utilities in

accordance with Bankruptcy Rules 7001 and 7004(b)(3) to enjoin

the Utilities from attempting to recover unpaid post-petition

utility charges or terminate post-petition utility service for

non-payment.

In addition to Rule 7001, Rule 7065 of the Federal Rules of

Bankruptcy Procedure specifically sets forth how temporary and

permanent injunctive relief should be sought in bankruptcy.  The

Debtors ignored all of the requirements of both Rules 7001 and

7065 of the Federal Rules of Bankruptcy Procedure.

As such, the Court should deny the Sale Motion to the extent

that the Debtors are seeking to enjoin the Utilities from

exercising their right to (i) request payment for post-petition

utility charges, or (ii) terminate post-petition utility service

in accordance with applicable state law or contract for the

Debtors' failure to pay an agreed upon post-petition deposit or

post-petition invoice.

**2.    The Proposed Injunctive Relief Would Improperly
Deprive The Utilities Of Their Right To Terminate
Service To The Debtors For Failure To Pay Post-
Petition Utility Bills And Agreed Upon Deposits In
Accordance With Section 366 of the Bankruptcy Code,
Applicable State Laws Or Regulations.**

Section 366 clearly allows a utility to terminate service if
a debtor fails to provide adequate assurance of payment. *In re
Hanratty*, 907 F.2d 1418, 1423-1424 (3d Cir. 1990); *In re Carter*,
133 B.R. 110, 112 (Bankr. N.D. Ohio 1991); *In    re Stagecoach
Enterprises, Inc.*, 1 B.R. 732, 734 (Bankr. M.D. Fla 1979).  In
this case, the Utilities and the Debtors reached an agreement
regarding the provision of adequate assurance of payment and the
Debtors have failed to pay all of the agreed upon deposits to the
Utilities. Accordingly, for the Utilities that have not received
their agreed upon deposits they can terminate the Debtors service
unless they pay the agreed upon deposits.

With respect to the payment of post-petition charges,
bankruptcy courts have held that a utility can terminate post-
petition service if a debtor fails to pay post-petition charges
and the utility follows applicable state law tariffs and/or
regulations. *See In re Weisel*, 428 B.R. 185(W.D. Pa 2010); *In re
Jones,* 369 B.R. 745, 752 (1st Cir. BAP 2007); *In re Best
Products*, 203 B.R. 51 (Bankr. E.D. Va.1996); *In re Begley,* 760
F.2d 46, 49 (3d Cir. 1985); *In the Matter of Deiter*, 33 B.R. 547,
548 (Bankr. W.D. Wis. 1983).  Specifically, 28 U.S.C. Section

16

959(b) provides that a bankruptcy trustee or debtor-in-possession "shall manage and operate the property in his possession…according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."

Section 959(b) provides that Congress did not intend for the Bankruptcy Code to preempt all state laws.  In fact, Section 959(b) "provides explicitly that a bankruptcy trustee must administer the bankrupt's estate in accordance with state law." *Robinson v. Mich. Consolidated Gas Co., Inc.*, 918 F.2d 579, 589 (6th Cir. 1990) (citing *MidAtlantic National Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755 (1986)); *see also Texas v. Lowe (In the Matter of H.L.S. Energy Co., Inc.)*, 151 F.3d 434, 438 (5th Cir. 1998). The Bankruptcy Code does not preempt state law tariffs that govern termination of service for failure to pay post-petition bills.  *See Robinson v. Mich. Consolidated Gas Co. Inc.*, 918 F.2d at 588-89 (holding that although Section    366(b) of the Bankruptcy Code did not stand in the way of utility termination for failure to pay post-petition bills, 28 U.S.C. Section 959(b) required that state and municipal regulations governing the procedure by which such termination may occur must be followed).

Based on the foregoing, it is clear that the Proposed Injunctive Relief would preclude the Utilities from terminating service to the Debtors for failure to pay an agreed upon deposit or a post-petition payment invoice even if a Utility complies with Section 366 of the Bankruptcy Code or applicable state laws or regulations to accomplish the termination.  Therefore, this Court should not enter the Proposed Sale Order that includes the Proposed Injunctive Relief as to the Utilities.

   **3.    The Court Should Deny The Proposed Injunctive Relief As To The Utilities Because The Relief Sought Is Contrary To The Terms Of The Debtors Adequate Assurance Of Payment Agreement With The Utilities.**

Following good-faith negotiations, the Utilities and the Debtors resolved the Utilities' adequate assurance of payment requests pursuant to the terms set forth in the Adequate Assurance Settlement Agreement whereby the Debtors agreed, in part, that (i) the Utilities (other than Baltimore Gas and Electric Company which held a prepetition deposit credit) would include one-month Deposits the post-petition bills from the Utilities to the Debtors that would be paid by the applicable due date set forth in the post-petition invoices, and (ii) the Debtors would pay all undisputed post-petition bills received from the Utilities for post-petition utility charges on or before the applicable due date on the invoice.  The Deposits and post-petition utility bills were supposed to be paid by Engie, which

18

is the Debtors' agent that purportedly pays the Debtors' utility bills.

The Proposed Injunctive Relief contained in the Proposed Sale Order are contrary to provisions of the Adequate Assurance Settlement Agreement.  Accordingly, the Court should not enter the Proposed Sale Order containing the Proposed Injunctive Relief.

    **B.**    **THE COURT SHOULD REQUIRE THE DEBTORS TO BUDGET SUFFICIENT FUNDS FOR THE PAYMENT OF UTILITY EXPENSES.**

The Budgets apparently only budget funds to pay administrative charges from January 1, 2025 through either February 28, 2025 (or March 31, 2025 if the Buyer extends the end date).  As the Utilities bill the Debtors in arrears for post-petition utility charges, there are would be no monies budgeted for the Debtors to pay the Utilities' bills final bills that would not be issued until March or April 2025 for utility goods/services provided to the Debtors up to either February 28, 2025 or March 31, 2025, as applicable.

Additionally, the Budgets apparently do not include funds to pay utility charges billed prior to January 1, 2025 or for unbilled utility goods/services provided to the Debtors prior to January 1, 2025. As the Debtors' post-petition creditors will impacted, either favorably or unfavorably, by the Budgets, the Debtors and the Buyer should not be given the authority to

19

determine which administrative expense claims should be paid.
The Court should determine which administrative expense claims
should be paid either in full or on a pro rata basis.  If the
Debtors and the Buyers want to use the goods and services of the
Utilities during a winddown, the Utilities' post-petition charges
should be paid in full by the Debtors.  If the Utilities post-
petition charges are not paid in full, the Utilities, pursuant to
applicable state laws, regulations, tariffs or contracts can
terminate service to the Debtors for post-petition payment
defaults so long as they follow applicable state law termination
of service procedures.

    **C.    THE COURT SHOULD REQUIRE THE DEBTORS TO EITHER ASSUME
AND ASSIGN THEIR CONTRACTS WITH CNE, CNEG AND SYMMETRY
AS OF THE INITIAL SALE CLOSING DATE OR REJECT THEM SO
THAT CNE, CNEG AND SYMMETRY ARE NOT REQUIRED TO PROVIDE
UTILITY GOODS AND/OR SERVICES TO AN ENTITY THAT THEY DO
NOT HAVE CONTRACTUAL PRIVITY WITH.**

As set forth in paragraphs 35 to 44 of the Objection filed
at Docket No. 272, CNE, CNEG and Symmetry provide utility goods
and/or services to the Debtors pursuant to contracts, not
tariffs like the other Utilities.  Accordingly, once the
proposed sale closes they should not be required to continue to
provide utility goods and/or services to the Buyer (or even the
Buyer's assignee Variety Wholesalers) unless their contracts
have been properly assumed and assigned to the Buyer and/or
Buyer's designee.  Therefore, the Buyer should either obtain a

new utility supplier for the Debtors' accounts with CNE, CNEG and Symmetry or have their contracts assumed and assigned to them.

WHEREFORE, the Utilities respectfully request that this Court enter an order:

1.    Denying the Proposed Injunctive Relief;

2.    Require the Debtors to budget sufficient funds for the payment of the Utilities' post-petition deposits and charges;

3.    Require the Debtors to either assume and assign the Debtors' contracts with CNE, CNEG and Symmetry as of the Initial Sale Closing Date or reject them and have the Buyer obtain new suppliers for those accounts; and

4.    Providing such other and further relief as the Court deems just and appropriate.

Dated: December 30, 2024          WHITEFORD TAYLOR & PRESTON LLC

                                  */s/ William F. Taylor, Jr.*
                                  William F. Taylor, Jr. (#2936)
                                  600 North King Street, Suite 300
                                  Wilmington, Delaware 19801
                                  wtaylor@whitefordlaw.com

                                  and

                                  LAW FIRM OF RUSSELL R. JOHNSON III, PLC
                                  Russell R. Johnson III (VSB No. 31468)
                                  John M. Craig (VSB No. 32977)
                                  2258 Wheatlands Drive
                                  Manakin-Sabot, Virginia  23103
                                  Telephone: (804) 749-8861
                                  russell@russelljohnsonlawfirm.com
                                  john@russelljohnsonlawfirm.com

21

*Counsel for Appalachian Power Company,
Public Service Company of Oklahoma,
Southwestern Electric Power Company,
Ohio Power Company, Indiana Michigan
Power Company, Arizona Public Service
Company, Ohio Edison Company, Potomac
Edison Company, West Penn Power Company,
Pennsylvania Electric Company,
Monongahela Power Company, Metropolitan
Edison Company, Pennsylvania Power
Company, Jersey Central Power & Light
Company, Toledo Edison Company, The
Cleveland Electric Illuminating Company,
Virginia Electric and Power Company
d/b/a Dominion Energy Virginia, Dominion
Energy South Carolina, Inc., Public
Service Company of North Carolina
Incorporated, Georgia Power Company,
PSEG Long Island, Salt River Project,
San Diego Gas and Electric Company,
Southern California Gas Company,
Southern California Edison Company,
Baltimore Gas and Electric Company,
Commonwealth Edison Company, PECO Energy
Company, The Potomac Electric Power
Company, Delmarva Power & Light Company,
Atlantic City Electric Company, Tampa
Electric Company, Peoples Gas System,
Inc., Entergy Arkansas, LLC, Entergy
Louisiana, LLC, Entergy Mississippi,
LLC, Entergy Texas, Inc., The
Connecticut Light & Power Company,
Yankee Gas Services Company, Public
Service Company of New Hampshire,
Eversource Gas of Massachusetts, NStar
Electric Company, Western Massachusetts,
NStar East Electric, Boston Gas Company,
KeySpan Energy Delivery Long Island,
Massachusetts Electric Company, Niagara
Mohawk Power Corporation, Orange &
Rockland Utilities, Inc., The East Ohio
Gas Company d/b/a Enbridge Gas Ohio,
Tucson Electric Power Company, UNS
Electric, Inc., UNS Gas, Inc., Oklahoma
Gas and Electric Company, Symmetry
Energy Solutions, LLC, Constellation
NewEnergy, Inc., Constellation NewEnergy*

22

*– Gas Division, LLC, CenterPoint Energy Resources Corp., New York State Electric and Gas Corporation, Rochester Gas & Electric Corporation, Florida Power & Light Company, Central Maine Power Company and Public Service Electric and Gas Company*