## IN THE UNITED STATES BANKRUPCTY COURT
## FOR THE DISTRICT OF DELEWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS INC., *et al.*[1] | Case No. 24-11967 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: 1/14/2025 at 4:00 PM ET** |
| | **Hearing Date: 1/21/2025 at 1:00 PM ET** |

## SENSATIONAL BRANDS INC. & THE MARKETING GROUP LLC'S MOTION FOR ALLOWANCE AND TO COMPEL PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

Sensational Brans, Inc. ("**Sensational Brands**") and The Marketing Group LLC **("TMG")** (collectively the "**Claimants**"), by and through their undersigned attorneys, file this *Motion for Allowance and to Compel Payment of Administrative Expense Claims* (the "**Motion"**). Claimants request entry of an order allowing their administrative expense claims as set forth herein, ordering payment thereof within seven (7) days pursuant to 11 U.S.C. § 503(b), and granting any other form of relief that the Court finds just and proper. In support of the Motion, Claimants set forth the following:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

2.      The Debtors commenced the above-captioned, jointly administered cases by filing

---

[1] The debtors and debtors in possession in these chapter 11 cases (hereafter, "Debtors") are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785);Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); 1NFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).

1

voluntary petitions under chapter 11 of title 11 of the U.S. Code (the **"Bankruptcy Code"**) on September 9, 2024 (the **"Petition Date"**).

3.      The Debtors are operating as debtors-in-possession. No trustee or examiner has been appointed.

4.      On the Petition Date, the Debtors filed that certain *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors To Pay Prepetition Critical Vendor Claims, Foreign Vendor Claims, and 503(b)(9) Claims in the Ordinary Course of Business, (II) Granting Administrative Expense Status to Debtors Undisputed Obligations to Vendors Arising From Post-Petition Delivery of Goods Ordered Prepetition and Authorizing Debtors To Pay Those Obligations in the Ordinary Course of Business, (III) Authorizing Debtors To Return Goods, (IV) Authorizing Debtors To Pay Certain Prepetition Claims of Lien Claimants, and (V) Authorizing Financial Institutions To Honor and Process Related Checks and Transfers* [D.I. 11] (the **"Critical Vendor Motion"**). Per the Critical Vendor Motion, in order to preserve the going concern value of the estates, the Debtors requested authority to pay the prepetition claims of certain vendors, suppliers, and service providers in part in recognition of the importance of the Debtors' relationships with such vendors, suppliers, and service providers and their desire that the bankruptcy cases have as little effect on the debtors' ongoing businesses and operations as possible. See Critical Vendor Motion.

5.      As the Debtors explained:

> The Debtors strongly believe that the uninterrupted supply of Goods and Services, on Customary Trade Terms, and the continuing support of their customers are imperative to the Debtors' ongoing businesses and operations and the preservation and maximization of the value of the Debtors' estates. The continued availability of trade credit, in amounts and on terms consistent with those that the Debtors have worked hard to obtain over time, is also clearly advantageous to the Debtors, as it allows the Debtors to

maintain and enhance necessary liquidity and to focus on returning to profitability and preserving and maximizing the value of the Debtors.

Critical Vendor Motion at 20.

6.      Also on the Petition Date, the Debtors filed a Motion to Approve Debtor in Possession Financing [D.I. 19] (the **"DIP Financing Motion"**).

7.      On September 10, 2024, the Bankruptcy Court entered an interim order [D.I. 106] (the **"Interim Critical Vendor Order"**) authorizing the Debtors, under certain conditions, to pay prepetition claims of certain vendors, suppliers, and service providers that agree to the terms set forth below and to be bound by the terms of the Order.

8.      On September 23, 2024, the U.S. Trustee filed a Notice of Appointment of a Committee of Unsecured Creditors [D.I. 248] (the **"Committee"**).

9.      On October 9, 2024, the Court entered a final order [D.I. 463] (the **"Final Critical Vendor Order"**) authorizing the Debtors to pay prepetition claims of certain vendors on a final basis.

10.     On October 22, 2024, the Court entered the Final DIP Order [D.I. 584].

11.     Claimants are trade creditors of the Debtors who have received purchase orders from the Debtors after the Petition Date and fulfilled those orders in the ordinary course of business.

12.     Debtors enticed Claimants to produce products and deliver products to Debtors' three distribution centers by stating the Claimants were protected under Administrative Claims Status and that Debtors needed inventory. **Exhibit A**.

13.     Upon information and belief, it is the Claimants' position that Debtors' buyers were told by upper management to secure orders from vendors in order to increase inventory. Debtors

repeatedly asked Claimants to produce and ship product to Debtors' distribution centers so that Debtors could attain inventory levels to meet Nexus Capital Inventory Requirements. Upon information and belief, Debtors acted out of desperation and needed inventory to meet Nexus Captial Requirements and therefore sought product from Claimants and other vendors. **Exhibit B**, articles from Bloomberg News and Forces News.

14.     Claimants entered into an Administrative Claims vendor agreement with Debtors post-petition and have delivered goods to the Debtors as required by that agreement. **Exhibits C and D**.

15.     The Debtors placed post-petition orders for goods from the Claimants which have been delivered but have not been paid for.

16.     Claimants received an email from the Debtors' buyers explaining that Debtors needed inventory from Claimants and would be protected under Administrative Payment Protection and that all invoices from Claimants would be guaranteed payment under normal payment terms. **Exhibit A**.

17.     Claimant Sensational Brands, has delivered goods (with a purchase price and value of no less than $671,212.80) and TMG has delivered goods (with a purchase price and value of no less than $598,080.00), and further TMG purchased and paid money in ADVANCE on Debtors' behalf for paper plates, trash bags and aluminum foil, with a purchase price and value of no less than $908,653.02, that has not yet been delivered to the Debtors in the normal course of business post-petition, for which payment is now overdue and remains outstanding. Invoices showing post-petition amounts owed by the Debtors to Sensational Brands and TMG are attached hereto as **Exhibits C and D.** Documents showing amounts advanced on Debtors' behalf are attached hereto as **Exhibit E**.

18.     Claimants seek allowance and immediate payment of these post-petition trade debts as administrative expense claims in the total amount of $2,177,945.82.

## **RELIEF REQUESTED**

*I.  Each Claimant is Entitled to an Administrative Expense Claim for Goods Ordered by and Delivered to the Debtors Post-Petition.*

19.     11 U.S.C. § 503(b) mandates the allowance of an administrative expense for the ". . . actual, necessary costs and expenses of preserving the estate[.]" To qualify as an administrative expense, an expense "must arise from a [post-petition] transaction with the debtor-in-possession" and "be beneficial to the debtor-in-possession in the operation of the business." *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 314-315 (3d Cir. 2011). To be awarded an administrative expense claim, a claimant must demonstrate that it conducted a transaction with a debtor in possession that, in turn, provided a benefit to such debtor's estate. *See Calpine Corp. v. O 'Brien Env 't Energy, Inc.* (*In re O'Brien Env 7 Energy, Inc.*), 181 F.3d 527, 532-33 (3d Cir. 1999) (noting that, to establish a priority claim under section 503(b)(1)(A) of the Bankruptcy Code, the debt must arise post-petition and benefit the estate (citations omitted)).

20.     Claims arising from goods purchased in the ordinary course of business by a debtor-in-possession are generally entitled to administrative priority. *See e.g.. In re Thatcher Glass Corp.*, 59 B.R. 797, 799 (Bankr. D. Conn. 1986); *see also* "There is an initial assumption that, where a contract exists, the contractual rate is the reasonable value of the goods or services provided to the estate." *In re Bethlehem Steel Corp.*, 291 B.R. 260, 264 (Bankr. S.D. N.Y. 2003 (cited with approval in *In re Smurfit-Stone Container Corp.*, 425 B.R. 735, 741 (Bankr. D. Del. 2010).

21.     Since the Petition Date, the Debtors have stocked their stores with millions of dollars in inventory purchased from the Claimants, which upon information and belief was a requirement of the Nexus Capital Sales Agreement. The goods provided by Claimants to the

Debtors have been "vital" and necessary for maintaining the value of the Debtors' estates. Claimants' uninterrupted shipment of goods to the Debtors have been critical to the Debtors' businesses during this bankruptcy, providing direct and substantial benefits to the estates. Claimants are therefore entitled to administrative expense claims for the value of the goods delivered post-petition.

## II. The Court Should Compel Payment of Claimants' Administrative Expense Claims Within Seven Days.

22.     The Court has discretion to require that Claimants' administrative expense claims be paid immediately. *In re Garden Ridge Corp.*, 323 B. R. 136, 143 (Bankr. D. Del. 2005). "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." *Id.* "'In making this determination, one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets." *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) (internal citations omitted). "Courts will also consider the particular needs of each administrative claimant and the length and expense of the case's administration." *In re NE OPCO, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013) (internal citations omitted). "To qualify for exceptional immediate payment, a creditor must show that 'there is a necessity to pay and not merely that the Debtor has the ability to pay.'" *In re Continental Airlines*, 146 B.R. 520, 531 (Bankr. D. Del. 1992) (internal citation omitted).

23.     On Friday, December 13, 2024, the Debtors failed to timely pay Claimants for post-petition deliveries and have provided no explanation for the delay, except to say payments would be made the following week and then would be paid after the closing of the agreement with Nexus Capital.

24. Contrary to Debtors, Claimants will suffer severe hardship if their administrative expense claims are not paid immediately. Claimants and the owners of Claimants are now faced with bankruptcy themselves as a result of Debtors' failure to pay for goods supplied by Claimants.

25.    Claimants are distributors with high overhead costs, including relentless payroll and lease payments. If forced to wait indefinitely for payment of the administrative expense amounts, Claimants will suffer severe financial distress and disruptions in their ability to accept and fulfill future orders for the Debtors, any potential purchasers of the Debtors' businesses, and Claimants' other customers. Delayed payment will also result in the loss of employee positions for Claimants' workers and is likely to also result in the loss of salaried positions, as well. Delay in payment of over $2.0 million to Claimants Sensational Brands and TMG would cause significantly tightened cashflow well into 2025 and possible bankruptcy. Delay in payment to Claimants will result in adverse consequences to Claimants under their existing financing arrangements, leaving them without the liquidity necessary to operate in 2025. In reliance on the Debtors' representations that they had the ability, authority, and intent to timely pay Claimants for post-petition deliveries, Claimants agreed to and did deliver in excess of $1,200,000 in goods. These receivables are particularly large in proportion to the size of Claimants' businesses. Nonpayment or even a delay in payment presents an existential threat to Claimants' businesses.

26.    Claimants further submit that there would be no meaningful prejudice to other creditors if Claimants are paid immediately. As holders of allowed administrative expense claims, Claimants are entitled to payment in full on their administrative expense claims in any potential plan or liquidation, so immediate payment will not disadvantage any other creditors.

27.    The totality of the circumstances supports compelling the Debtors to pay Claimants' administrative expense claims immediately, as further delay in payment will only prejudice

Claimants. Accordingly, Claimants request that their administrative expense claims be paid within seven days after the entry of this Court's order granting the Motion.

<u>**RESERVATION OF RIGHTS**</u>

28.     By entering this motion or making these claims, the Claimants do not waive any rights related to the matters herein, including the right to submit these claims to insurance.

<u>**CONCLUSION**</u>

The Claimants respectfully request that the Court enter an order (a) allowing Claimants Sensational Brands Inc. and The Marketing Group LLC administrative expense claims against the debtors in an amount no less than $2,177,945.82, ordering the Debtors to pay those administrative expense claims within seven days of entry of the order, and (b) granting such other relief as is just and is proper.

Dated: December 30, 2024
Wilmington, DE                                            Respectfully submitted,

                                                         LAW OFFICE OF SUSAN E. KAUFMAN, LLC

                                                         */s/ Susan E. Kaufman*
                                                         Susan E. Kaufman, (DSB# 3381)
                                                         919 North Market Street, Suite 460
                                                         Wilmington, DE 19801
                                                         (302) 472-7420
                                                         (302) 792-7420 Fax
                                                         skaufman@skaufmanlaw.com

                                                         -and-

BECKHAM PORTELA

/s/ Eric Walraven

Eric Walraven (admitted Pro Hac Vice)
State Bar No. 00794814
eric@bptriallaw.com
3400 Carlisle, Suite 550
Dallas, Texas 75204
214-965-9300 - Telephone
214-965-9301 – Facsimile

**ATTORNEYS FOR SENSATIONAL BRANDS INC. AND THE MARKETING GROUP LLC**