## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS INC., *et al.*,[1]<br><br>               Debtors. | Chapter 11<br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**RE: Docket No. 1437** |

## META PLATFORMS, INC. LIMITED OBJECTION TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING SALE OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER THE GBRP APA, (III) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF

Meta Platforms, Inc. ("Meta"), by and through undersigned counsel, hereby submits this *Limited Objection to the Motion of Debtors for Entry of an Order (I) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform Under the GBRP APA, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1437] (the "Sale Motion")[2] and in support thereof respectfully states as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. DublinGranville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

1.      The Debtors' estates are administratively insolvent.  Trade creditors that sold their goods and services under the aegis and inducement of this Court's prior financing orders are now left holding the bag.  Meta objects to the Sale Motion because the Sale Motion and the GBRP Sale will effectuate wrongful discrimination between holders of administrative expenses in contravention of the priority scheme established by the Bankruptcy Code.  Absent material changes to the terms of the Sale and Sale Order, the Sale Motion should be denied.

## RELEVANT BACKGROUND

2.      Meta is a trade creditor of the Debtors.  As of the date of this Limited Objection, Meta is owed an administrative claim of no less than $2,088,755.89 by the Debtors, representing services performed for the Debtors after the Petition Date.  Meta has not received any portion of this amount as of the date of this Limited Objection.

3.      On Friday, December 27, 2024, the Debtors filed the Sale Motion, which sought authority to approve the GBRP Sale (as defined therein).  The Debtors sought to have the Sale Motion heard on an expedited basis, scheduling a hearing for Monday, December 30 at 10:00 a.m. The original Agenda [Docket No. 1455] for the hearing stated only that "This matter is going forward" with respect to the Sale Motion.  The Debtors subsequently filed an amended Agenda [Docket No. 1482] approximately half an hour before the hearing which now stated "This matter is going forward. The Debtors intend to present the testimony of Kent Percy by declaration and direct examination."

4.      The Court held a hearing on the Sale Motion on December 30, 2024.  At the hearing, Meta and several other trade creditors noted their concerns with the Sale Motion and the proposed GBRP Sale, including but not limited to the irregular timing and dearth of information provided to creditors prior to the hearing.

5.      The Debtors proposed to allow Mr. Kent Percy to give direct testimony at the hearing in order to address the creditors' questions, but after the trade creditors pointed out the inadequacy of this suggestion given the prejudicial lack of notice, discovery, and preparation time,

the Court adjourned the hearing on the Sale Motion until 10:00 a.m. on December 31 in order to permit parties to depose Mr. Percy on the evening of December 30.

6.      The Debtors made Mr. Percy available for a deposition at 7:00 p.m. eastern time on December 30, 2024, approximately three and a half hours after the conclusion of the hearing on the Sale Motion earlier that day.

## <u>LIMITED OBJECTION</u>

7.      Section 3.01 of the GBRP APA proposes to pay (i) $304,000,000 to the Debtors' prepetition secured creditors, (ii) then, $17,000,000 in administrative claims  to holders of so-called "stub rent" claims, followed by (iii) $42,391,000 in amounts provided for in an "APA Administration Budget" attached to the GBRP APA, then (iv) an amount not to exceed $125,000,000 for amounts set forth in a "Winddown Budget" attached the GBRP APA, then (v) $7,500,000 to fund a Professional Fee Escrow Amount, and only after these amounts are paid, (vi) if there is a surplus available after achieving unspecified savings under the APA Administration Budget and Winddown Budget, other accrued and payable administrative claims up to a $100,000,000 cap.[3]

8.      GBRP is "paying" $304,000,000 directly to the DIP lenders.  This includes a $134,000,000 "payment" to GBRP's affiliate, 1903P Loan Agent, LLC, one of the DIP Agents. But it is unlikely that any funds will actually change hands.

9.      All amounts in (ii) through (vi) above should be paid *pari passu* with one another according to the priority scheme imposed by the Bankruptcy Code.  There is no basis or authority for the Debtors to arbitrarily indulge the administrative claims of certain post-petition parties at the expense of others whose claims are indistinguishable from one another in the eyes of the Bankruptcy Code.

10.      At the deposition of Mr. Percy on December 30, 2024, Mr. Percy was asked whether the Debtors had performed any manner of liquidation analysis, any manner of conversion

---

[3] Trade vendors are proposed to be stiffed despite the fact that Gordon Brothers is reported to be working on a $1 billion capital raise for the Debtors with Mitch Modell according to reports.

analysis, and/or any manner of solvency analysis. In each case Mr. Percy answered that the Debtors had not conducted or prepared any such analyses. When asked why, in each case Mr. Percy responded that the Debtors did not think it was necessary to conduct or prepare such analyses. Despite the lack of any evidence to draw on, Mr. Percy opined that the GBRP Sale would result in greater value to the Debtors' estates than a wind-down and liquidation of the Debtors' businesses, even though Mr. Percy admitted that a liquidation would result in greater inflows to the Debtors' estates. Mr. Percy stated his belief that a winddown liquidation would also result in greater outflows, i.e. costs to the estates. As was made clear in the deposition of Mr. Percy, the Debtors have not and have never performed any kind of administrative solvency analysis, conversion analysis or liquidation analysis and have no evidentiary basis to support their claim that the GBRP Sale will result in higher returns to administrative claimants than a conversion to chapter 7 other than their own word.[4] The only thing that Mr. Percy was able to answer with absolute clarity was that professional fees will be paid in full under the GBRP Sale.

11.    Under the proposed GBRP APA, the Debtors' professionals will receive approximately $13.4 million in post-closing professional fees, while "stub rent" landlords will receive $17 million that Mr. Percy could only explain was required by GBRP. This represents a $30 million cost ahead of other administrative claimants arising solely out of the GBRP APA, apparently not counting a further $40 million that Mr. Percy indicated has already been funded into the Debtor's professional fee reserves. It strains credibility to suggest that a chapter 7 trustee could or would incur more than $30 million in fees in connection with a conversion and winddown. The Debtors' sole argument in favor of the GBRP Sale, i.e. that they should be taken at their word that it will result in greater recoveries regardless of the lack of any analysis, therefore does not even withstand cursory scrutiny.

---

[4] Mr. Percy's Declaration enumerates his credentials and at paragraph 5 lists 22 cases as examples of his experience. Yet, as Mr. Percy testified, none of the cases listed in the Percy Declaration involved a chapter 11 case that converted to chapter 7.

12.     After running a sale process that failed because Nexus was allowed to delay closing, the Debtors now ask this Court to approve a sale to GBRP on an expedited timeline that sacrifices notice and due process.  But even more troubling are the protections afforded to professionals, landlords and litigation targets which the Debtors seek to approve, thus creating clear categories of administrative claimants who are preferred and who are prejudiced by the sale.

| Preferred Treatment | Potentially Prejudiced | Prejudicial Treatment |
|---|---|---|
| **Professionals**:<br><br>Estate professionals have a fully funded fee reserve of $40,000,000.<br><br>The Wind Down Budget increases the fee reserve by an additional $13,438,000 for 9 weeks of services to a company with no go-forward operations or prospects for rehabilitation.<br><br>If allowed professional fee claims exceed budgeted amounts, the professionals will have a superiority administrative expense claim, senior to all other claims, against, and a superpriority lien, senior to all other liens, on, all remaining estate assets. | **Employees**:<br><br>Employees with healthcare claims ("IBNR") that exceed forecast amounts contained in the Wind Down Budget will be left to pay their healthcare bills out of their own pockets. Also, workers' compensation claims in excess of the Wind Down Budget will be claims against an administratively insolvent estate.  It does not appear that the employees have been notified that their rights may be affected or how. | **Trade Vendors**:<br><br>Post-petition providers of goods and services are owed no less than $216,000,000 in administrative claims and will receive nothing.<br><br>Critical vendors are budgeted to receive nothing.<br><br>503(b)(9) creditors are owed $38,000,000 and will receive nothing. |
| **Landlords**:<br><br>Certain landlords will be paid $17,000,000 in satisfaction of unpaid administrative rent; and Debtors will remain current on their rent | | |

5

| | | |
|---|---|---|
| obligations to landlords for the remainder of the case. | | |
| **Insiders**: The GBRP APA proposes to transfer all chapter 5 claims to GBRP, whereas the Nexus APA only proposed to transfer chapter 5 claims relating to vendors and contract counterparties who were continuing to do business with the buyer going forward. Furthermore, the proposed sale order for the GBRP APA contains broad mutual releases of claims and causes of action between the Debtors, the buyer, and their respective insiders and affiliates. | | |
| **Buyer**:<br><br>GBRP and the Term DIP Agent are affiliates who appear to be under common control. Under the Court's Final DIP Order, the Term DIP Agent was granted certain protections any arms-length purchaser would not enjoy, including but not limited to a waiver by the Debtors and the Committee of any claims under Section 506(c) of the Bankruptcy Code and provisions governing the use of cash. The Court should revisit these protections in light of the proposed transaction under the GBRP APA and the fact that the GBRP purchaser is for all intents and purposes also the Term DIP Agent. | | |

13.     The Bankruptcy Code establishes a priority scheme for the exact reason of prohibiting allowing a debtor to pick and choose among its creditors.  That is exactly what is being proposed through the GBRP Sale, and the only parties that stand to benefit from this overt violation of the priority scheme are the Debtors' professionals and select landlords who will be receiving a windfall at the expense of all other administrative claimants who they by rights should be sharing with pro rata.  Rather than a typical 363 transaction, this sale looks like a sub rosa plan. *See, Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468–69 (2017) (collecting cases); *In re Energy Future Holdings Corp.*, 648 Fed. App'x 277, 285 (3d Cir. 2016) (explaining that "[w]hen a transaction or settlement in bankruptcy has the effect of dictating some of the terms of any future reorganization plan, a court deems the transaction impermissible because it short circuits the requirements of Chapter 11 by establishing the plan sub rosa in connection with a sale of assets.") (quotations omitted).

14.     Notwithstanding the infirmities of the Sale Motion, Meta does not dispute that it may represent the highest and best prospect for any recovery to administrative claimants (although Meta does not believe that the Debtors have made this showing and does not believe that it or any other creditor has been provided sufficient information to make any reasoned determination of its own).  To that end, Meta does not object to the approval of the Sale Motion to the extent that all proceeds thereof are held in escrow, and the proposed waterfall to creditors established through the GBRP APA and the attached budgets are not approved by any order of the Court. Rather, the sale funds should be permitted to come into the estate but be held in escrow until the parties and the Court can come to a conclusion about how they should be allocated in accordance with the exigencies of this case and the requirements of the Bankruptcy Code.

15.     Meta does not dispute that it is indeed possible that the GBRP Sale may be the best outcome for administrative creditors—just not under its current terms.  Simply put, Meta (and for that matter no other creditor, besides the preferentially-treated landlords) has not been provided or reviewed any evidence or analysis that would allow it to make an informed decision about how it

stands to fare under the GBRP Sale versus a chapter 7 liquidation.  The necessary analysis, by the Debtors' own admission, has not been performed and thus does not exist.

16.     However, if the Court were to grant the Sale Motion but stop short of approving the proposed waterfall under Section 3.01 of the GBRP APA and the Winddown and APA Administrative Budgets attached thereto, the proceeds of the sale could be distributed *pro rata* to the administrative creditors as required under the Bankruptcy Code and within whatever necessary minimum modifications may be required to make the sale remain feasible.  For this reason, Meta does not object to approval of the Sale Motion outright so long as no funds are paid on account of stub rent, and professional fees.

17.     However, while Meta remains willing to work with the Debtors and their professionals on any consensual sale, it bears emphasizing that Meta is deeply troubled by the process the Debtors undertook to get to this point, the way that the hearing on the Sale Motion was noticed and handled (including the deposition of Mr. Percy), and remains wary of the Debtors' outright proposals to favor certain administrative claimants over others in contravention of the provisions of the Bankruptcy Code.

## **RESERVATION OF RIGHTS**

18.     Meta reserves and preserves all of its rights, including but not limited to the right to supplement this Limited Objection in the future as it may see fit, including but not limited to raising such other or further arguments at any hearing on the Sale Motion or any related matters, and nothing contained herein shall be or shall be construed as a waiver of any such arguments, claims, defenses, or other rights of Meta, all of which are expressly reserved.

## **CONCLUSION**

19.     For the above reasons, and for the reasons stated on the record at the December 30 hearing and any such further reasons as Meta may advance in the future, including but not limited to at the hearing scheduled for December 31, 2024, Meta respectfully asks that the Court (a) enter an order denying approval of the Sale Motion, unless it is materially modified as set forth above, and (b) grant such other and further relief as the Court deems proper.

Dated: December 31, 2024

**CAROTHERS & HAUSWIRTH LLP**

*/s/ Gregory W. Hauswirth*
Gregory W. Hauswirth (No. 5679)
Patrick W. Carothers (PA ID No. 85721)
1007 N. Orange Street, 4th Foor
Wilmington, DE 19801
Direct: 302.332.7181
Facsimile: 412.910.7510
ghauswirth@ch-legal.com
pcarothers@ch-legal.com

*and*

**ARENTFOX SCHIFF LLP**

George P. Angelich (*Pro hac vice to be filed*)
ARENTFOX SCHIFF LLP
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019
Telephone : (212) 457-5423
Email: George.Angelich@afslaw.com

James E. Britton (*Pro hac vice to be filed*)
ARENTFOX SCHIFF LLP
800 Boylston Street, 32nd Floor
Boston, MA 02199
Telephone: (617) 973-6102
Email: James.Britton@afslaw.com

*Counsel for Meta Platforms, Inc.*