# **Exhibit C**

**Supporting Documents regarding Goods Received by Closeout Distribution, LLC**



| | | | |
|---|---|---|---|
| PO # | 95313441 | See attached Terms and Conditions for additional Big Lots requirements. A complete list of requirements can be found on the Big Lots website www.biglots.com/corporate/vendors | Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program. |
| Date Created | 04/15/2024 | | |
| Version: | 0 | | |
| Buyer: | HUTTON, SCOTT | | |
| Do Not Ship Before: | 06/17/2024 | | |
| Cancel if not Shipped by: | 06/24/2024 | | |
| Must be Routed by: | 05/27/2024 | | |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC | | |
| Freight Terms: | Collect | | |
| FOB: | HO CHI MINH ，VN | | |

SHIP TO

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:   570-695-2848          Fax:    570-695-2862

BILL TO

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800          Fax:  614-278-6871

Purchase From Vendor:   5006524

HOMELEGANCE, INC
CATHERINE
48200 FREMONT BLVD
FREMONT CA  94538

Contact:       CATHERINE
Telephone:   5109336888           Fax
E-Mail:          AGACATHERINE@HOMELEGANCE.COM

ADDITIONAL COMMENTS

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 660 | 263,993.40 | 75,240.00 | 57.191 |

OFFICE-COPY



These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship", "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1. Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2. Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3. Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4. Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5. Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6. Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7. Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8. Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9. Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate(s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or take or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner, without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF
LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



| |  |
|---|---|
| AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.<br>27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs. | |



OFFICE-COPY

PO#: 95313441

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 608 | 810741795 | CAMO GLIDER RECLINE | 0.00 | VN | 1 | | 660 | 114.00 | 113,011.80 | 07/29/2024 |
| 60802 | 9655-1GD | STATIONARY | | | 1 | | 660 | 57.23 | 263,993.40 | |
| 60802001 | Homelegance | PRODUCTION | | | | | | 399.99 | 57.191 | 859.00 |
| 1 | 194840255642 | | GRM | 22.900 | UPC | | | | | |



# HOMELEGANCE, INC.

48200 FREMONT BOULEVARD
FREMONT, CA 94538
(510)933-6888, (510)933-6889 (FAX)
http://www.homelegance.com

**INVOICE**

INVOICE NO. HL088928
CUSTOMER NO. OHBIG
Tracking Number:

| | |
|---|---|
| **BILL TO:** BIG LOTS STORES, LLC<br>ACCOUNTS PAYABLE<br>4900 E. DUBLIN GRANVILLE RD<br>WESTERVILLE OH, 43081 US<br>TEL:6142786642<br>ATTN:Savannah Merriman | **SHIP TO:** CLOSEOUT DISTRIBUTION, LLC<br>TREMONT DC #0874 BIG LOTS<br>50 RAUSCH CREEK RD<br>TREMONT, PA 17981<br>TEL:570/6952848   FAX:570/6952862 |

| DATE | SHIP VIA | F.O.B. | TERMS |
|---|---|---|---|
| 07/08/2024 | Yusen Logistics | FOB | NET 60 From ETD |

| PURCHASE ORDER NUMBER | ORDER DATE | SALESPERSON | OUR ORDER NUMBER |
|---|---|---|---|
| 95313441 F | 05/08/2024 | SRDOU | D15340 |

| QUANTITY REQUIRED | QUANTITY SHIPPED | ITEM NUMBER | DESCRIPTION | W.T. | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| | 108 | 9655-1GD | Glider Reclining Chair | | 114.00 | 12,312.00 |

Must route by May 27

VESSEL CMA CGM SYMI / 1TU8US1MA
CNTR# CMAU4936841
SEAL# R6374632
ETD 07-12-2024
ETA TO PORT NY 08-19-2024

Products are US EPA TSCA VI compliant

\*\*\*   The above products are not for commercial use   \*\*\*

WT / CBF : .00 / 2473.20           Boxes / Chairs : 108 / 0

- The above products are not for commercial use.
- 15% re-stocking fee for returned merchandise; $25 surcharge applies to each returned check.
- All claims must be made within 10 days after receiving the merchandise.
- All returned merchandise must have RMA#. No credit will be given after 90 days of the receiving date.
- 1.5% monthly finance charge will be applied to all past due invoices, plus collection costs, attorney's fees and court costs if legal action is taken.
- All merchandise listed on this invoice is the property of Homelegance until paid in full or until check is cleared.
- This is a legal binding agreement, the buyer agrees to pay the total amount on this invoice, if lawsuit arises from a discrepancy, jurisdiction will reside in the county selected by Homelegance.

|   |   |
|---|---|
| Subtotal: | 12,312.00 |
| Surcharge: | 0.00 |
| Shipping Subtotal: | 0.00 |

We appreciate your business. Thank you!

**Total:** 12,312.00

PAGE 1 of 1

Printed on Status: Closed        Printed Date: 07/08/2024 11:26:02        Printed By: LILIAN

# YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED

FORWARDER'S CARGO RECEIPT No.  **CNS-SGN-2401591**

| | |
|---|---|
| Maker/Supplier : **HANG TAI VIETNAM CO., LTD** <br> **O/B HOMELEGANCE, INC (*)** | Maker/Supplier's INVOICE No. <br> **HL088928** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC** <br> **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **July 08, 2024** |
| Shipment From : **HO CHI MINH CITY**   To : **TREMONT, PA** | Date of Receipt of Cargo <br> **July 05, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS** <br> **STORES** <br><br><br> PO# 95313441 <br> DC#   00874 <br> SKU#  810741795 <br> MADE IN   VIETNAM | | NOTIFY PARTY: GEODIS <br>             5101 S. BROAD STREET <br>             PHILADELPHIA, PA 19112-1404, U.S.A. <br>             ATTN: ALENA LAMINA <br> ALSO NOTIFY: EDRAY 2020 LLC. <br>             1300 SOUTH MINT STREET SUITE 200 <br>             CHARLOTTE NC 28203 USA <br>             TEL: 704-593-6329 <br>             EMAIL: DATAQUALITY@EDRAYCPL.COM <br> CY-CY <br><br> SHIPPER'S LOAD, COUNT AND SEAL <br> SAID TO CONTAIN <br> CMAU4936841          SEAL# R6374632          40H   DRY <br><br><br> CAMO GLIDER RECLINER <br> SKU#   810741795 <br><br><br> SHIP TO CODE & LOCATION : 00874-TREMONT, PA <br> SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING MATERIAL <br><br> (*)NO. E8(B4 AREA) ROAD D9, RACH BAP INDUSTRIAL PARK, AN TAY WARD <br> BEN CAT CITY <br> 75900, BINH DUONG PROVINCE , VIETNAM <br> **108 CARTONS** | **70.030 CBM** | **5,529.60 KGS** |

================================================================
TOTAL : ONE HUNDRED EIGHT (108) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "CMA CGM SYMI" VOY NO. 1TU8US1MA    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT July 12, 2024. CARGO RECEIVED ON July 5, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **HO CHI MINH CITY          July 11, 2024** |
|---|---|
| ## Verification Copy | (Place and date of issue.) <br><br> **YUSEN LOGISTICS** <br><br><br><br> ................................................ As Agent <br> V1 |

*** Please advise **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if amendment is needed ***
*** Please check with **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** if B/L & Cargo Receipt are ready for issuance ***

# Capital Trading Company Limited

Unit 902A, 9/F, Capital Centre, 151 Gloucester Road, Wan Chai, Hong Kong
E-mail: capitaltradingco@outlook.com

## PACKING LIST

| | | | | |
|---|---|---|---|---|
| **SOLD TO:** | HOMELEGANCE, INC. | **DATE:** | 07-12-2024 | |
| | 48200 Fremont Blvd | **ETD:** | 07-12-2024 | |
| **SHIP TO:** | CLOSEOUT DISTRIBUTION, LLC | **PORT:** | NEW YORK, NY | |
| | TREMONT DC #0874 BIG LOTS | **ETA TO PORT:** | 08-19-2024 | |
| **VENDOR CODE:** | AI | **INVOICE #:** | CD09303 | |
| **FACTORY CODE:** | AI | **PO#:** | POA2405049 | |
| | | **Customer PO#:** | D15340 | |
| | | **End Customer PO#:** | 95313441 F | |
| **CONTAINER:** | CMAU4936841 | **SHIP VIA:** | YUSEN | |
| **SEAL NO.:** | R6374632 | **CONTAINER SIZE:** | 40HQ | |
| **VESSEL:** | CMA CGM SYMI / 1TU8US1MA | **TERMS:** | FOB VUNG TAU,VIETNAM | |
| **SHIPED BY:** | Hang Tai Viet Nam Co.,LTD | **TOTAL:** | 108 | |

| ITEM | DESCRIPTION | QTY (PCS) | CTNS | NET WEIGHT (KGS) | GROSS WEIGHT (KGS) | CUFT/PC | TOTAL | REMARK |
|---|---|---|---|---|---|---|---|---|
| 9655-1GD | Glider Reclining Chair | 108 | 108 | 4833.00 | 5529.60 | 22.90 | 2473.20 | |
| | **TOTAL** | **108** | **108** | **4833.00** | **5529.60** | | **2473.20** | **70.03** |

**COUNTRY OF ORIGIN:** Vietnam
**State:** TSCA TITLE VI compliant

**Statement:** THE SHIPMENT DOES NOT CONTAIN ANY WOOD PACKAGING MATERIALS

Capital Trading Company Limited

*Gin*