# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | Hearing Date: January 21, 2025 at 1:00 p.m.<br>Obj. Deadline: January 14, 2025 at 4:00 p.m. |

**CREDITOR GIFTREE CRAFTS COMPANY LIMITED'S MOTION FOR
AN ORDER (I) ALLOWING AND COMPELLING IMMEDIATE
PAYMENT OF ITS ADMINISTRATIVE EXPENSE CLAIMS AND
PREPETITION CLAIMS; AND (II) FOR OTHER REQUESTED RELIEF**

Giftree Crafts Company Limited ("Giftree"), by and through its undersigned counsel, hereby submits this motion (the "Motion") requesting entry of an order (a) allowing Giftree's section[2] 503(b)(9) claim in the amount of $778,433.59, post-petition administrative claim in the amount of $537,378.82, and prepetition claim in the amount of $238,035.77; and (b) compelling the Debtors to pay such amounts within seven (7) business days of an order approving this Motion. In further support of the Motion, Giftree submits the Declaration of Hua Peng (the "Peng Declaration") and respectfully states as follows:

---

[1] The debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the Debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Unless otherwise noted, section references herein refer to the corresponding sections within Title 11 of the United States Code (the "Bankruptcy Code").

## **PRELIMINARY STATEMENT**[3]

1. Giftree is a critical foreign vendor supplying essential Christmas tree products to the Debtors. In the twenty (20) days preceding the Petition Date (defined below), the Debtors received $778,433.59 in goods sold by Giftree and purchased in the ordinary course of the Debtors' businesses, which entitles Giftree to an administrative claim under section 503(b)(9). Post-petition, Giftree delivered an additional $537,378.82 in goods to the Debtors, forming the basis for Giftree's further administrative claim under section 503(b)(1)(A). Giftree also delivered goods prepetition totaling in the amount of $238,035.77. In total, ~$1.55 million is owed by the Debtors to Giftree.

2. Moreover, pursuant to the Critical Vendor Order, the Court has authorized the Debtors to make immediate payment of the administrative and priority claims, including any 503(b)(9) Claim[4], Foreign Vendor Claim[5], Critical Vendor Claim[6], and Prepetition Order Claim[7]. Giftree's claims fit every definition contained in the Critical Vendor Order, and yet it has received no payment on account of these claims. The Debtors previously assured this Court that they have sufficient funds to pay such claims, and that immediate payment of the claims will have little to no material effect on the chapter 11 proceeding[8]. Notably, the Debtors themselves have identified Giftree as a critical vendor and previously expressed their intent to maintain this

---

[3] All capitalized terms used but not otherwise defined herein shall have the same meanings as ascribed to them *infra*.
[4] 503(b)(9) Claims are defined as claims entitled to administrative expense status under section 503(b)(9) of the Bankruptcy Code because such claims are on account of Goods received by the Debtors in the ordinary course of their businesses during the 20-day period prior to the Petition Date. See Critical Vendor Motion, Dkt. No. 11
[5] Foreign Vendor Claims are defined as claims arising from goods and services provided by: "vendors that operate in foreign jurisdiction and had no connection to the United States". See Critical Vendor Motion, Dkt. No. 11, ¶9-10.
[6] Critical Vendor Claims are defined as claims arising from goods and services provided by: "vendors who are the sole source or limited source for the goods and services". See Critical Vendor Motion, Dkt. No. 11, ¶9-10.
[7] Prepetition Order Claims are defined as claims arising from delivery or shipment of Goods or the provision of Services after the Petition Date if such deliveries, shipments, or provisions were based on prepetition purchase orders or other short and longer term contracts (collectively, the "Prepetition Orders"), or that their claims arising from the Prepetition Orders). See Critical Vendor Motion, Dkt. No. 11, ¶13.
[8] See Critical Vendor Motion, Dkt No. 11.

7934346

essential relationship with Giftree. Payment of Giftree's claims is therefore essential for both parties' ongoing operations. Despite this, and despite Giftree's counsel engaging with the Debtors' since early November, the Debtors have failed to provide any meaningful response regarding the resolution of Giftree's claims. Thus, while the Debtors benefited from Giftree's goods, particularly during the crucial holiday season, Giftree has been left to shoulder the financial burden, which has caused significant harm to Giftree's business operations, including cash flow strain and supply chain disruptions.

3. As evidenced by its recent motion to compel payment of section 503(b)(9) claims, the Committee, which withdrew its DIP objection partially in reliance on payment of administrative claims, has expressed concerns regarding the Debtors' inability to promptly honor administrative claim payments. *See Motion of the Official Committee of Unsecured Creditors to (I) the Final DIP Order and Compel Payment of Stub Rent and Section 503(b)(9) Claims, of (II) in the Alternative, Convert These Cases to Cases Under Chapter 7 of the Bankruptcy Code*, Dkt. No. 1360. Furthermore, it appears the Debtors currently have no intention of making such payments, and provision for such payments do not appear to be included in the wind down budget filed by the Debtor. See Dkt. No. 1434. Nor is the payment of these claims assumed in the sale to GBRP. *See Motion of Debtors for Entry of an Order (I) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform Under the GBRP APA, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (Dkt. No. 1437) (the "GBRP Sale Motion").

4. In light of these facts, Giftree respectfully requests that the Court enter an order (a) allowing Giftree's section 503(b)(9) claim in the amount of $778,433.59, post-petition

administrative claim in the amount of $537,378.82, and prepetition claim in the amount of $238,035.77; and (b) compelling the Debtors to pay such amounts within seven (7) business days.

## JURISDICTION, VENUE & STATUTORY PREDICATE

5.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Motion is sections 105, 503(b) and 507(a) of the Bankruptcy Code, as supplemented by the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

**Debtors' Cases**

6.     On September 9, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief in this Court commencing cases (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. The Debtors' Chapter 11 Cases are being jointly administered under case number 24-11967 (JKS). Dkt. No. 95.

7.     On October 9, 2024, this Court entered an order (the "Critical Vendor Order") authorizing the Debtors to pay $60 million in Critical Vendor Claims, Prepetition Order Claims and Foreign Vendor Claims in the ordinary course of business, in addition to 503(b)(9) Claims. *See* Critical Vendor Order, Dkt. No. 463. The Debtors have stated that they have sufficient financing to pay such amounts, as well as post-petition operating disbursements. *See* Final DIP Order, Dkt. No. 584 (granting DIP financing in $707.5 million, with budget including $647 million operational disbursement in 8 weeks, and $50 million 503(b)(9) claim disbursement in 8 weeks); *see also* Bid Procedure Motion, Dkt. No. 18 (indicating a stalking horse purchase price of $760 million); *see* also Critical Vendor Motion, Dkt No. 11, ¶15-16, ("The Debtors' cash on hand, the

4

cash generated by the Debtors' businesses, and the proceeds of the post-petition credit facilities would provide ample liquidity for the payment of the Critical Vendor Claims, Foreign Vendor Claims, and 503(b)(9) Claims.").

**Debtors' Sale Status**

8. On November 22, 2024, the Court entered an order approving a going-concern sale (the "Nexus Sale") of substantially all of the Debtors' assets to Gateway BL Acquisition, LLC, an affiliate of Nexus Capital Management LP. *See* Sale Order. Dkt. No. 1232.

9. On December 19, 2024, the Court held a status conference wherein the Debtors announced that the Nexus Sale was no longer viable. *See* Dkt. No. 1398.

10. On December 26, 2024, Debtors filed a wind down budget, which indicates no payment to the "merchandise vendors". *See* Dkt. No. 1434.

11. On December 27, Debtors filed the GBRP Sale Motion, which similarly does not provide for payment or assumption of liabilities of any 503(b)(9) Claims or post-petition administrative claims[9]. *See* Dkt. No. 1437.

12. On January 2, 2025, the court entered an order approving the GBRP Sale Motion. *See* Dkt. No. 1556.

**Giftree's Claims**

13. Giftree is a foreign vendor in Shenzhen, China, that supplies essential Christmas tree materials to the Debtors. Peng Declaration, ¶3. The Debtors entered into purchase orders

---

[9] The purchase price payment includes: "(I) an amount equal to the Debt Payoff Amount; provided, that in the event the Debt Payoff Amount is less than $304,000,000, the Purchase Price shall be reduced on a dollar for dollar basis by the amount by which the Debt Payoff Amount is less than $304,000,000; plus (II) an amount in cash required to satisfy obligations not to exceed $17,000,000 in the aggregate; plus (III) an amount not to exceed $42,391,000 in the aggregate as set forth in, and limited to (determined on both a line-item and aggregate basis), the amounts set forth in the APA Administration Budget (including for any such Seller obligations arising under the Agency Agreement); plus (IV) an amount not to exceed $125,000,000 limited to set forth in the Winddown Budget; plus (V) $7,500,000 to fund the Professional Fee Escrow Amount." See GBRP Sale Motion, Dkt. No. 1437.

("POs") with Giftree for the procurement of these supplies. *Id.* Under the terms of the POs, Giftree selects the supplies and loads them onto third-party common carriers Free on Board ("FOB") in China. *Id.* Once loaded, the common carrier issues a Forwarder's Cargo Receipt ("FCR") identifying the shipment. *Id.* The shipment is then tracked using a detailed tracking history until its arrival in the United States, where it is received by the Debtors. *Id.*

14. On the dates shown in the chart that follows, the Debtors received the shipments from Giftree pursuant to various POs. *See* Peng Declaration, ¶4, Ex. 1. Each of the corresponding Purchase Orders, tracking histories, FCRs, and other supporting documents are attached to the Peng Declaration as **Exhibit "1"**. *See id*., *see also* Proofs of Claim 1778, 1779, 1780, 1781 and 1782.

| PURCHASER DEBTOR | PO# | ORDER AMOUNT | INVOICE# | DATE RECEIVED BY DEBTOR | TYPE OF CLAIM |
|---|---|---|---|---|---|
| AVDC, LLC[10] | 95209318 | US$16,210.23 | PIN24-BLT-009 | 08/10/2024 (Ex. 1, p. 207) | Prepetition Claim |
| | 95209319 | US$37,639.90 | | 08/09/2024 (Ex. 1, p. 208) | Prepetition Claim |
| | | | PIN24-BLT-019 | 08/14/2024 (Ex. 1, p. 215) | Prepetition Claim |
| | 95315144 | US$4,455.60 | PIN24-BLT-023 | 09/04/2024 (Ex. 1, p. 237) | 503(b)(9) Claim |
| | 95209355 | US$7,335.90 | PIN24-BLT-026 | 09/04/2024 (Ex. 1, p. 237) | 503(b)(9) Claim |
| CSC DISTRIBUTION, LLC[11] | 95209320 | US$132,480.95 | PIN24-BLT-001 | 08/12/2024 (Ex. 1, p. 161) | Prepetition Claim |
| | | | PIN24-BLT-005 | 09/05/2024 (Ex. 1, p. 166) | 503(b)(9) Claim |
| | | | PIN24-BLT-022 | 09/12/2024 (Ex. 1, p. 11) | Post Petition Claim |
| | | | | 09/11/2024 (Ex. 1, p. 12) | |
| | | | | 09/12/2024 (Ex. 1, p.13) | |
| | | | | 09/12/2024 (Ex. 1, p. 14) | |
| | | | | 09/11/2024 (Ex. 1, p. 15) | |
| | 95209351 | 313807.53 | PIN24-BLT-021 | 08/23/2024 (Ex. 1, p. 178) | 503(b)(9) Claim |
| | | | | 08/23/2024 (Ex. 1, p. 179) | |
| | | | | 08/23/2024 (Ex. 1, p. 180) | |
| | | | | 08/23/2024 (Ex. 1, p. 181) | |
| | 95209338 | US$47,507.22 | PIN24-BLT-028 | 09/09/2024 (Ex. 1, p.42) | Post Petition Claim |
| | | | | 09/09/2024 (Ex. 1, p. 42) | |
| | | | | 09/09/2024 (Ex. 1, p. 42) | |
| | 95209357 | US$43,114.50 | | 09/09/2024 (Ex. 1, p. 42) | |
| | 95317579 | US$7,360.20 | | 09/09/2024 (Ex. 1, p. 42) | |
| CLOSEOUT DISTRIBUTION, LLC[12] | 95209352 | US$206,658.10 | PIN24-BLT-018 | 08/28/2024 (Ex. 1, p. 254) | 503(b)(9) Claim |
| | | | | 08/28/2024 (Ex. 1, p. 254) | |
| | | | | 08/28/2024 (Ex. 1, p. 254) | |
| | | | PIN24-BLT-030 | 09/30/2024 (Ex. 1, p. 97) | Post Petition Claim |
| | | | | 09/30/2024 (Ex. 1, p. 98) | |
| | | | | 09/30/2024 (Ex. 1, p. 99) | |
| | | | | 09/30/2024 (Ex. 1, p. 100) | |
| | | | | 09/30/2024 (Ex. 1, p. 101) | |
| | 95209321 | US$132,581.87 | PIN24-BLT-027 | 09/08/2024 (Ex. 1, p. 267) | 503(b)(9) Claim |
| | | | | 09/08/2024 (Ex. 1, p. 267) | |
| | | | PIN24-BLT-031 | 09/30/2024 (Ex. 1, p. 115) | Post Petition Claim |
| | | | | 09/30/2024 (Ex. 1, p. 115) | |
| | | | | 09/30/2024 (Ex. 1, p. 115) | |
| | | | | 09/30/2024 (Ex. 1, p. 115) | |
| | | | | 09/30/2024 (Ex. 1, p. 115) | |
| | | | | 09/30/2024 (Ex. 1, p. 115) | |
| | 95209358 | US$56,386.13 | PIN24-BLT-029 | 09/24/2024 (Ex. 1, p. 138) | Post Petition Claim |
| | 95317580 | US$6,232.20 | | 09/24/2024 (Ex. 1, p. 138) | |
| DURANT DC, LLC[13] | 95209353 | US$195,774.51 | PIN24-BLT-004 | 08/07/2024 (Ex. 1, p. 285) | Prepetition Claim |
| | | | | 08/07/2024 (Ex. 1, p. 286) | |
| | | | PIN24-BLT-007 | 08/20/2024 (Ex. 1, p. 292) | 503(b)(9) Claim |
| | | | | 08/27/2024 (Ex. 1, p. 293) | |
| | | | PIN24-BLT-011 | 08/28/2024 (Ex. 1, p.302) | 503(b)(9) Claim |
| | | | | 08/28/2024 (Ex. 1, p. 302) | |
| | | | | 08/28/2024 (Ex. 1, p. 302) | |
| | 95209322 | 66683.11 | PIN24-BLT-008 | 08/28/2024 (Ex. 1, p. 317) | 503(b)(9) Claim |
| | | | | 08/28/2024 (Ex. 1, p. 317) | |
| | | | | 08/28/2024 (Ex. 1, p. 317) | |
| | | | | 08/28/2024 (Ex. 1, p. 317) | |
| | 95209340 | US$4,505.88 | PIN24-BLT-12A | 08/28/2024 (Ex. 1, p. 343) | 503(b)(9) Claim |
| | 95317581 | US$4,060.80 | | 08/28/2024 (Ex. 1, p. 343) | |
| | | | | 08/28/2024 (Ex. 1, p. 343) | |
| | 95209361 | US$28,086.45 | PIN24-BLT-020 | 09/03/2024 (Ex. 1, p. 350) | 503(b)(9) Claim |
| BIG LOTS STORES, LLC[14] | 95209354 | US$299,125.40 | PIN24-BLT-015 | 09/04/2024 (Ex. 1, p. 367) | 503(b)(9) Claim |
| | | | | 09/04/2024 (Ex. 1, p. 368) | 503(b)(9) Claim |
| | | | | 09/05/2024 (Ex. 1, p. 369) | 503(b)(9) Claim |
| | | | PIN24-BLT-017 | 08/21/2024 (Ex. 1, p. 375) | 503(b)(9) Claim |
| | | | | 08/21/2024 (Ex. 1, p. 376) | 503(b)(9) Claim |
| | | | | 08/21/2024 (Ex. 1, p. 377) | 503(b)(9) Claim |
| | | | | 08/29/2024 (Ex. 1, p. 378) | 503(b)(9) Claim |
| | | | | 08/14/2024 (Ex. 1, p. 379) | Prepetition Claim |
| | | | | 08/14/2024 (Ex. 1, p. 380) | Prepetition Claim |
| | | | | 08/29/2024 (Ex. 1, p. 381) | 503(b)(9) Claim |

7934346

| | | | 09/03/2024 (Ex. 1, p. 382) | 503(b)(9) Claim |
| --- | --- | --- | --- | --- |
| | | | 09/09/2024 (Ex. 1, p. 58) | Post Petition Claim |
| | | | 09/10/2024 (Ex. 1, p. 59) | Post Petition Claim |
| | | | 08/13/2024 (Ex. 1, p.399) | Prepetition Claim |
| 95209335 | US$133,105.41 | PIN24-BLT-016 | 08/14/2024 (Ex. 1, p. 400) | Prepetition Claim |
| | | | 09/09/2024 (Ex. 1, p. 401) | Post Petition Claim |
| | | | 08/21/2024 (Ex. 1, p. 402) | 503(b)(9) Claim |
| | | | 08/21/2024 (Ex. 1, p. 403) | 503(b)(9) Claim |
| | | | 08/13/2024 (Ex. 1, p. 404 ) | Prepetition Claim |
| 95209362 | US$9,266.40 | PIN24-BLT-024 | 09/26/2024 (Ex. 1, p. 73) | Post Petition Claim |
| 95317582 | US$5,865.60 | PIN24-BLT-025 | 09/23/2024 (Ex. 1, p.84) | Post Petition Claim |

15. As shown on the POs contained in Exhibit 1—payment from the Debtors on account of the POs was due within sixty (60) days of the Debtors' receipt of the goods. *See, e.g.*, Peng Declaration, ¶5 & Ex. 1 at p. 2 (stating "Payment Terms: Wire Transfer + 60 Days Upon Receipt in DC"). Accordingly, insofar as the last goods on account of the aforementioned POs was received by the Debtors on September 30, 2024 (as is reflected in the above chart and in the documents annexed as Exhibit 1), all the POs and associated invoices are past due. *See* Peng Declaration, ¶5.

16. The terms and conditions of the POs state: "Shipping Goods to a DC…Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO." *See* Peng Declaration, ¶6 & Ex. 1, p. 3.

17. Not only have the Debtors taken possession of the goods, but it is believed that the goods were then sold by the Debtors to customers post-petition to generate, especially during the

---

[10] Against AVDC, LLC Giftree has a 503(b)(9) Claim in the amount of $11,791.5, and a prepetition claim in the amount of $53,850.13.

[11] Against CSC DISTRIBUTION, LLC Giftree has a 503(b)(9) Claim in the amount of $140,969.15, a post-petition administrative claim in the amount of $184,711.04 and a prepetition claim in the amount of $13,369.5.

[12] Against CLOSEOUT DISTRIBUTION, LLC Giftree has a 503(b)(9) Claim in the amount of $118,924.8, and a post-petition administrative claim in the amount of $282,933.5.

[13] Against DURANT DC, LLC Giftree has a 503(b)(9) Claim in the amount of $238,225.75, and a prepetition claim in the amount of $60,885.

[14] Against BIG LOTS STORES, LLC Giftree has a 503(b)(9) Claim in the amount of $268,522.39, a post-petition administrative claim in the amount of $69,734.28 and a prepetition claim in the amount of $109,931.14.

7934346

holiday season (given the nature of the goods), necessary receivables for the Debtors' estates. *See* Peng Declaration, ¶7.

18.     As is summarized in the chart above and demonstrated by the documents attached as Exhibit 1 to the Peng Declaration, prior to the Petition Date, the Debtors received goods valued at $238,035.77 more than twenty (20) days before Petition Date, which goods are identified in the chart above as the "Prepetition Claim". *See* Peng Declaration, ¶8.

19.     As is summarized in the chart above and demonstrated by the documents attached as Exhibit 1 to the Peng Declaration, within the twenty (20) days leading to the Petition Date, the Debtors received an additional $778,433.59 worth of goods that were purchased in the ordinary course of business, which goods are identified in the chart above as the "503(b)(9) Claim". *See* Peng Declaration, ¶9.

20.     As is summarized in the chart above and demonstrated by the documents attached as Exhibit 1 to the Peng Declaration, following the Petition Date, the Debtors received goods valued at $537,378.82 that were purchased in the ordinary course of business, which goods are identified in the chart above as the "Post Petition Claim". *See* Peng Declaration, ¶10.

21.     Giftree has also submitted Proof of Claims documenting its Prepetition Claim and 503(b)(9) Claim.  See Claim Nos. 1778[15], 1779[16], 1780[17], 1781[18] and 1782[19]. *See* Peng Declaration, ¶11.

---

[15] Asserting a prepetition claim in the amount of $13,369.50 and a 503(b)(9) claim in the amount of $140,969.15 against CSC DISTRIBUTION, LLC.
[16] Asserting a prepetition claim in the amount of $53,850.13, and a 503(b)(9) claim in the amount of $11,791.5 against AVDC, LLC.
[17] Asserting a 503(b)(9) claim in the amount of $118,924.8 against CLOSEOUT DISTRIBUTION, LLC
[18] Asserting a prepetition claim in the amount of $60,885, and a 503(b)(9) claim in the amount of $238,225,75 against DURANT DC, LLC.
[19] Asserting a prepetition claim in the amount of $109,931.14, and a 503(b)(9) claim in the amount of $268,522.39 against BIG LOTS STORES, LLC.

7934346

22. Giftree has also received communications from the Debtors' representatives expressing their intention to continue the business relationship. *See* Peng Declaration, ¶12. Specifically, on October 15, 2024, the Debtors forwarded a proposed critical vendor agreement to Giftree, identifying it as one of their Critical Vendors. *Id.* The agreement is attached as **Exhibit "2"** to the Peng Declaration.  However, despite outreach and requests from Giftree and its representatives (including Giftree's counsel since early November), the Debtors have neither confirmed nor disputed Giftree's claims, nor have they made any payments to Giftree on account of them. *Id.*

23. As a local Chinese company specializing in supplying goods to overseas retailers, Giftree has been significantly impacted by the ~$1.55 million outstanding balance owed by the Debtors.  *See* Peng Declaration, ¶13. This substantial amount outstanding has severely disrupted Giftree's business operations, impairing its cash flow management and triggering a ripple effect across the company. *Id.* Giftree would suffer additional detriment if it was forced to wait months for payment on account of the POs. *Id.*

24. The cash flow challenges caused by the unpaid debts have destabilized Giftree's supply chain, significantly intensifying financial pressures and undermining the company's ability to maintain smooth and consistent operations. *See* Peng Declaration, ¶14.  As a direct result, Giftree cannot meet its payment obligations to upstream suppliers, placing these vital business relationships at risk. *Id.* Additionally, the delays in payment have hindered Giftree's ability to pay rent and wages on time, further straining its operations. *Id.*  Without immediate resolution and payment, Giftree risks disruptions to critical parts of its business operations and may face legal action from upstream suppliers. *Id.*

7934346

25. The Debtors' payment delays have also had a profound impact on Giftree's export operations. See Peng Declaration, ¶15. Under applicable regulations, exporters are required to complete foreign exchange collection and customs clearance within a specified period. *Id.* However, due to Debtors' nonpayment of the shipments, Giftree has been unable to receive the necessary funds in time to complete these processes to obtain a tax refund of $162,022.82. *Id.* Additionally, such delays may expose Giftree to regulatory penalties and the potential for a downgrade in its credit rating, threatening its ability to operate in international markets effectively. *Id.*

## RELIEF REQUESTED

26. Giftree respectfully requests the entry of an order, in the form attached hereto as **Exhibit A**, to compel allowance and immediate payment in full of Giftree's claims.

## BASIS FOR RELIEF

**A.    Giftree is Entitled to Allowed 503(b)(9) Claims Against the Debtors in the Total Amount of $778,433.59.**

27. Administrative claims are entitled to priority payment under section 507(a)(2) and are required to be paid in full in cash under a plan pursuant to section 1129(a)(9). *See Id*. §§ 507(a)(2), 1129(a)(9).

28. Section 503(b)(9) provides that, "there shall be allowed administrative expenses . . . including . . . the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). Under section 503(b)(9), "goods are 'received' when the debtor or its agent takes physical possession of them," even if the goods were ordered or shipped Free On Board at an earlier date. *In re World Imports, Ltd*., 862 F.3d 338, 342 (3d Cir. 2017). In *In re World Imports, Ltd*., a foreign vendor loaded the shipment to the

common carrier more than twenty (20) days before the petition date, and the shipment was physically accepted by the debtor in its designation city within the twenty (20) day window before the petition date. *Id.* at 340-41. Because the goods were received for section 503(b)(9) purposes when the debtor took control of them upon delivery in the United States, the vendor was entitled to administrative priority. *Id.*

29.    The facts in this case are nearly identical. Here, $778,433.59 worth of goods were shipped from Giftree via a common carrier and were physically received by the Debtors in the United States within twenty (20) days of the Petition Date. See Peng Declaration at ¶17, & Ex. 1. For avoidance of doubt, the twenty (20) day period for 503(b)(9) claim purposes is defined by the date in which the Debtors is in physical receipt of the goods as indicated in *World Imports*.[20] Thus, Giftree's claim of $778,433.59, arising for goods received by the Debtors within this twenty (20) day period, qualifies for administrative priority under section 503(b)(9). The Court has authorized the Debtors to pay such claims in the ordinary course of business. *See* Critical Vendor Order, Dkt. No. 463.

**B.    Giftree is Entitled to Allowed Post-Petition Administrative Claims Under Section 503(b) Against the Debtors in the Total Amount of $537,378.82.**

30.    In addition, goods received by Debtors post-petition are treated as an administrative claim under the Bankruptcy Code as an "actual, necessary cost and expense of preserving the estate." *See* 11 U.S.C. § 503(b)(1). Claims on account of goods received post-petition are entitled

---

[20] Giftree has reason to believe that the Debtors are deliberately avoiding a clear definition of the 20-day period and are refraining from adhering to established legal precedents. *See* Committee's Limited Objection, Dkt. No. 981. ("Debtors are incorrectly calculating the estates' outstanding section 503(b)(9) liabilities under Third Circuit law by using the date title to the goods was transferred to the Debtors instead of the date the goods were physically received by the Debtors in the United States. The Debtors must clarify the date they have used to determine whether claims are entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code for goods received by the Debtors in the 20 days prior to the Petition Date.")

7934346

to administrative expense priority even if they were ordered prepetition so long as "(1) there was a post-petition transaction between the claimant and the estate, and (2) those expenses yielded a benefit to the estate." *In re Energy Future Holdings Corp.,* 990 F.3d 728, 741-42 (3d Cir. 2021).

31. As demonstrated by the documents attached as Exhibit 1 to the Peng Declaration and summarized in the aforementioned chart, $537,378.82 worth of Giftree's goods were received by the Debtors' post-petition, which goods were sold to customers for the benefit of the Debtors' estate. See Peng Declaration, ¶7 & Ex. 1. Indeed, Giftree's uninterrupted shipment of goods to the Debtors has been critical to the Debtors' businesses during this bankruptcy (and the ensuing holiday period), providing direct and necessary benefits to the Debtors' estates. Giftree is therefore entitled to administrative expense claims for the value of the goods delivered post-petition in the amount of $537,378.82.

32. Furthermore, the Critical Vendor Motion defines such administrative claims as Prepetition Order Claims with priority status, and authorizes payment of such claims in the ordinary course of business. *See* Critical Vendor Order, Dkt. No. 463 ("The Debtors are authorized, but not directed, to pay Prepetition Order Claims in the ordinary course of business."[21])

33. Accordingly, pursuant to the section 503(b) of the Bankruptcy Code and the Critical Vendor Order, Giftree's post-petition claim of $537,378.82 is subject to administrative priority under section 503(b)(1).

---

[21] Prepetition Order Claim was defined in the Critical Vendor Motion as: "obligations of the Debtors for Goods delivered to and accepted by the Debtors on or after the Petition Date under Prepetition Orders that the Debtors determine are valid claims against the Debtors' estates". See Critical Vendor Order, Dkt. No. 463. As much as the defined term may cause one to believe it would apply to prepetition claims, this term actually applies to post-petition claims.

7934346

**C.      Giftree's Prepetition Claims Should be Allowed Against the Debtors in the Total Amount of $238,035.77.**

34.     Prior to the Petition Date, the Debtors received $238,035.77 in goods from Giftree. *See* Peng Declaration, Ex. 1. *See also* Proof of Claim 1778, 1779, 1781, and 1782

35.     Pursuant to the Critical Vendor Order, the Debtors are authorized to pay Critical Vendor Claims and Foreign Vendor Claims not to exceed $60,000,000 in the aggregate. The Critical Vendors are further defined as "vendors who are the sole source or limited source for the goods and services", and Foreign Vendors are defined as "vendors that operate in foreign jurisdiction and had no connection to the United States". *See* Critical Vendor Motion, Dkt. No. 11, ¶9-10.   The Debtors have identified Giftree as one of its critical vendors through the proposed Critical Vendor Agreement. *See* Peng Declaration at Ex. 2. Indeed, Giftree satisfies every definition contained in the Critical Vendor Order—it is a Prepetition Order Vendor, a Critical Vendor, and  Foreign Vendor.  More specifically, Giftree is located in Shenzhen, China, that provides Christmas tree merchandise to the Debtors, which makes its supplies particularly crucial around the holiday season.  *See* Peng Declaration at ¶11.  Accordingly, the Debtors are authorized to make payment on account of the $238,035.77 in the ordinary course of business, but have failed to do so.

**C.      The Court Should Compel Immediate Payment of Giftree's Claims.**

36.     The requirement under section 1129(a)(9) of the Bankruptcy Code of paying administrative claims "on the effective date of the plan" has been interpreted as setting an outside limit, with nothing preventing a court from authorizing the payment of an administrative-expense claim earlier than the effective date of the debtor's plan of reorganization. *In re Arts Dairy, LLC*, 414 B.R. 219, 221 (Bankr. N.D. Ohio 2009). Specifically, in the instance of administrative claims arising from ordinary course of business payments, it is generally accepted that such expenses will

7934346

be paid when due, and not when the debtor's plan becomes effective. *Id.* Within its own discretion, a court can require administrative claims under section 503(b)(1) be paid immediately. *In re Garden Ridge Corp.*, 323 B. R. 136, 143 (Bankr. D. Del. 2005) (in determining the timing of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors). *See In re Christmas Tree Shops, LLC*, Case No. 23-10576 (TMH), Doc. No. 257 (Bankr. D. Del., June 12, 2023) (ordering that post-petition administrative claims be paid in full within 30 day period)

37. Courts apply the same analysis regarding immediate payment of section 503(b)(9) administrative expenses: "(1) the prejudice to the debtors, (2) hardship to claimant, and (3) potential detriment to other creditors." *In re Global Home Products, LLC*, No. 06–10340 KG, 2006 WL 3791955, *4 (Bankr. D. Del. Dec. 21, 2006) (applying *Garden Ridge Corp.* test and granting immediate payment of a section 503(b)(9) claim).

38. Here, the Debtors have already received final authority to pay up to $60 million in critical vendor claims, including the 503(b)(9) claims. *See* Critical Vendor Order, Dkt. No. 463. The Debtors also had authorization, with a $707 million DIP and cash collateral budget, to pay disbursements in excess of $50 million per week for 503(b)(9) claims. *See* Final DIP Order Dkt. No. 584. The Debtors had additionally disclosed in their Critical Vendors Motion, that their cash on hand, the cash generated by the Debtors' business, and the proceeds of the post-petition credit facilities would provide ample liquidity for the payment of the Critical Vendors Claims, the Foreign Vendors Claims, the Prepetition Order Claims, and the 503(b)(9) Claims, as well as the ongoing obligations of the Debtors' continued operations in the ordinary course during the pendency of the Chapter 11 Cases. In addition, $23 million of the 503(b)(9) claims were supposedly already funded by the Debtors. *See Committee's Motion to Compel Payments*, Dkt. No.

1360. As such, payment of the Giftree administrative claims promptly will not prejudice the Debtors or other creditors.

39. Moreover, Giftree is facing serious disruption to its business operations. The Debtors' nonpayment has significantly impacted Giftree's cash flow management, destabilized its supply chain, and exacerbated financial pressures on the company. The significant debt has created a cascading effect on Giftree's ability to fulfill commitments to upstream suppliers and cover their operational costs. *See* Peng Declaration, ¶ 8-10. Yet, the Debtor's recently filed wind down budget indicated zero payment to the merchandise vendors in its nine (9) week period, and such claims were not assumed by the recent GBRP transaction. *See* Dkt. No. 1434-1. Thus, resolving this issue is critical.

## RESERVATION OF RIGHTS

40. Giftree reserves all rights, remedies and obligations to, among other things, supplement, augment, withdraw, and/or modify this Motion and to conduct any and all discovery as may be required or deemed necessary, and to assert such other grounds for relief as may become apparent. Moreover, the filing of this Motion shall not be construed as a waiver or release of any of Giftree's claims, rights, or remedies and Giftree reserves the right to file other motions and/or supplement or amend this Motion in any manner and for any purpose, including without limitation to assert additional claims.

## NOTICE AND PRIOR REQUEST

41. Notice of this Motion will be given to the following parties and their counsel: (a) the U.S. Trustee for the District of Delaware; (b) the Debtors; (c) the secured parties; and (d) all parties who have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, Giftree submits that no other or further notice of hearing is required.

42.     No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, Giftree respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A,** and granting such further relief as the Court deems just and proper.

Dated: January 6, 2025

*/s/ Cheryl A. Santaniello*
Cheryl A. Santaniello, Esq. (DE Bar No. 5062)
Porzio, Bromberg & Newman, P.C.
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone:  (302) 526-1235
Facsimile:  (302) 416-6064
E-mail: casantaniello@pbnlaw.com

Kelly D. Curtin, Esq. *(pro hac vice pending)*
Jenny Zhou, Esq. *(pro hac vice pending)*
Porzio, Bromberg & Newman, P.C.
100 Southgate Parkway
P.O. Box. 1997
Morristown, New Jersey 07962
Telephone: (973) 538-4006
Facsimile: (973) 538-5146
Email: kdcurtin@pbnlaw.com
Email: jzhou@pbnlaw.com

*Counsel for Giftree Craft Company Limited*

7934346