## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date: January 21, 2025 at 1:00 p.m.**<br>**Obj. Deadline: January 14, 2025 at 4:00 p.m.** |

## DECLARATION OF HUA PENG IN SUPPORT OF CREDITOR GIFTREE CRAFTS COMPANY LIMITED'S MOTION FOR AN ORDER (I) ALLOWNG AND COMPELLING IMMEDIATE PAYMENT OF ITS ADMINISTRATIVE EXPENSE CLAIMS AND PREPEITION CLAIMS; <u>AND (II) FOR OTHER REQUESTED RELIEF</u>

I, Hua Peng, declare as follows:

1.      I am over 18 years of age and competent to testify to the following statements of fact based upon my personal knowledge.

2.      I am an officer of Giftree Crafts Company Limited. ("<u>Giftree</u>"), and I make this declaration in support of Giftree's Motion for an Order (I) Allowing and Compelling Immediate Payment of its Administrative Expense Claims and Prepetition Claims; and (II) For Other Requested Relief (the "<u>Motion</u>").

3.      Giftree is a foreign vendor in Shenzhen, China, that supplies essential Christmas tree materials to the Debtors. The Debtors entered into purchase orders with Giftree for the procurement of these supplies ("<u>Purchase Orders</u>" or "<u>POs</u>"). Under the terms of the POs, Giftree

---

[1] The debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the Debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

selects the supplies and loads them onto third-party common carriers Free on Board ("FOB") in China. Once loaded, the common carrier issues a Forwarder's Cargo Receipt ("FCR") identifying the shipment. The shipment is then tracked using a detailed tracking history until its arrival in the United States, where it is received by the Debtors.

4.      Each of the corresponding Purchase Orders, FCRs, and tracking histories that supports the Motion and the relief sought therein are attached as **Exhibit 1**. These documents are true and accurate copies of business records of Giftree's fulfillment of the Purchase Orders. Furthermore, to illustrate the debt owed in a summary fashion, I prepared the following summary list of the Purchase Orders and their delivery dates as stated in the chart below.  Given that the documents are voluminous, to facilitate the Court's review, I have included the specific page numbers of Exhibit 1 reflecting the date of receipt by the Debtor.

7929120

| PURCHASER DEBTOR | PO# | ORDER AMOUNT | INVOICE# | DATE RECEIVED BY DEBTOR | TYPE OF CLAIM |
|---|---|---|---|---|---|
| AVDC, LLC[2] | 95209318 | US$16,210.23 | PIN24-BLT-009 | 08/10/2024 (Ex. 1, p. 207) | Prepetition Claim |
| | 95209319 | US$37,639.90 | | 08/09/2024 (Ex. 1, p. 208) | Prepetition Claim |
| | | | PIN24-BLT-019 | 08/14/2024 (Ex. 1, p. 215) | Prepetition Claim |
| | 95315144 | US$4,455.60 | PIN24-BLT-023 | 09/04/2024 (Ex. 1, p. 237) | 503(b)(9) Claim |
| | 95209355 | US$7,335.90 | PIN24-BLT-026 | 09/04/2024 (Ex. 1, p. 237) | 503(b)(9) Claim |
| CSC DISTRIBUTION, LLC[3] | | | PIN24-BLT-001 | 08/12/2024 (Ex. 1, p. 161) | Prepetition Claim |
| | | | PIN24-BLT-005 | 09/05/2024 (Ex. 1, p. 166) | 503(b)(9) Claim |
| | 95209320 | US$132,480.95 | PIN24-BLT-022 | 09/12/2024 (Ex. 1, p. 11) | Post Petition Claim |
| | | | | 09/11/2024 (Ex. 1, p. 12) | |
| | | | | 09/12/2024 (Ex. 1, p.13) | |
| | | | | 09/12/2024 (Ex. 1, p. 14) | |
| | | | | 09/11/2024 (Ex. 1, p. 15) | |
| | 95209351 | 313807.53 | PIN24-BLT-021 | 08/23/2024 (Ex. 1, p. 178) | 503(b)(9) Claim |
| | | | | 08/23/2024 (Ex. 1, p. 179) | |
| | | | | 08/23/2024 (Ex. 1, p. 180) | |
| | | | | 08/23/2024 (Ex. 1, p. 181) | |
| | 95209338 | US$47,507.22 | PIN24-BLT-028 | 09/09/2024 (Ex. 1, p.42) | Post Petition Claim |
| | | | | 09/09/2024 (Ex. 1, p. 42) | |
| | | | | 09/09/2024 (Ex. 1, p. 42) | |
| | 95209357 | US$43,114.50 | | 09/09/2024 (Ex. 1, p. 42) | |
| | 95317579 | US$7,360.20 | | 09/09/2024 (Ex. 1, p. 42) | |
| CLOSEOUT DISTRIBUTION, LLC[4] | | | PIN24-BLT-018 | 08/28/2024 (Ex. 1, p. 254) | 503(b)(9) Claim |
| | | | | 08/28/2024 (Ex. 1, p. 254) | |
| | | | | 08/28/2024 (Ex. 1, p. 254) | |
| | 95209352 | US$206,658.10 | PIN24-BLT-030 | 09/30/2024 (Ex. 1, p. 97) | Post Petition Claim |
| | | | | 09/30/2024 (Ex. 1, p. 98) | |
| | | | | 09/30/2024 (Ex. 1, p. 99) | |
| | | | | 09/30/2024 (Ex. 1, p. 100) | |
| | | | | 09/30/2024 (Ex. 1, p. 101) | |
| | 95209321 | US$132,581.87 | PIN24-BLT-027 | 09/08/2024 (Ex. 1, p. 267) | 503(b)(9) Claim |
| | | | | 09/08/2024 (Ex. 1, p. 267) | |
| | | | PIN24-BLT-031 | 09/30/2024 (Ex. 1, p. 115) | Post Petition Claim |
| | | | | 09/30/2024 (Ex. 1, p. 115) | |
| | | | | 09/30/2024 (Ex. 1, p. 115) | |
| | | | | 09/30/2024 (Ex. 1, p. 115) | |
| | | | | 09/30/2024 (Ex. 1, p. 115) | |
| | | | | 09/30/2024 (Ex. 1, p. 115) | |
| | 95209358 | US$56,386.13 | PIN24-BLT-029 | 09/24/2024 (Ex. 1, p. 138) | Post Petition Claim |
| | 95317580 | US$6,232.20 | | 09/24/2024 (Ex. 1, p. 138) | |
| DURANT DC, LLC[5] | | | PIN24-BLT-004 | 08/07/2024 (Ex. 1, p. 285) | Prepetition Claim |
| | | | | 08/07/2024 (Ex. 1, p. 286) | |
| | 95209353 | US$195,774.51 | PIN24-BLT-007 | 08/20/2024 (Ex. 1, p. 292) | 503(b)(9) Claim |
| | | | | 08/27/2024 (Ex. 1, p. 293) | |
| | | | PIN24-BLT-011 | 08/28/2024 (Ex. 1, p.302) | 503(b)(9) Claim |
| | | | | 08/28/2024 (Ex. 1, p. 302) | |
| | | | | 08/28/2024 (Ex. 1, p. 302) | |
| | 95209322 | 66683.11 | PIN24-BLT-008 | 08/28/2024 (Ex. 1, p. 317) | 503(b)(9) Claim |
| | | | | 08/28/2024 (Ex. 1, p. 317) | |
| | | | | 08/28/2024 (Ex. 1, p. 317) | |
| | | | | 08/28/2024 (Ex. 1, p. 317) | |
| | 95209340 | US$4,505.88 | PIN24-BLT-12A | 08/28/2024 (Ex. 1, p. 343) | 503(b)(9) Claim |
| | 95317581 | US$4,060.80 | | 08/28/2024 (Ex. 1, p. 343) | |
| | 95209361 | US$28,086.45 | | 08/28/2024 (Ex. 1, p. 343) | |
| | | | PIN24-BLT-020 | 09/03/2024 (Ex. 1, p. 350) | 503(b)(9) Claim |
| BIG LOTS STORES, LLC[6] | | | PIN24-BLT-015 | 09/04/2024 (Ex. 1, p. 367) | 503(b)(9) Claim |
| | | | | 09/04/2024 (Ex. 1, p. 368) | 503(b)(9) Claim |
| | | | | 09/05/2024 (Ex. 1, p. 369) | 503(b)(9) Claim |
| | 95209354 | US$299,125.40 | PIN24-BLT-017 | 08/21/2024 (Ex. 1, p. 375) | 503(b)(9) Claim |
| | | | | 08/21/2024 (Ex. 1, p. 376) | 503(b)(9) Claim |
| | | | | 08/21/2024 (Ex. 1, p. 377) | 503(b)(9) Claim |
| | | | | 08/29/2024 (Ex. 1, p. 378) | 503(b)(9) Claim |
| | | | | 08/14/2024 (Ex. 1, p. 379) | Prepetition Claim |
| | | | | 08/14/2024 (Ex. 1, p. 380) | Prepetition Claim |
| | | | | 08/29/2024 (Ex. 1, p. 381) | 503(b)(9) Claim |

7929120

| | | | 09/03/2024 (Ex. 1, p. 382) | 503(b)(9) Claim |
|---|---|---|---|---|
| 95209335 | US$133,105.41 | PIN24-BLT-016 | 09/09/2024 (Ex. 1, p. 58) | Post Petition Claim |
| | | | 09/10/2024 (Ex. 1, p. 59) | Post Petition Claim |
| | | | 08/13/2024 (Ex. 1, p.399) | Prepetition Claim |
| | | | 08/14/2024 (Ex. 1, p. 400) | Prepetition Claim |
| | | | 09/09/2024 (Ex. 1, p. 401) | Post Petition Claim |
| | | | 08/21/2024 (Ex. 1, p. 402) | 503(b)(9) Claim |
| | | | 08/21/2024 (Ex. 1, p. 403) | 503(b)(9) Claim |
| | | | 08/13/2024 (Ex. 1, p. 404 ) | Prepetition Claim |
| 95209362 | US$9,266.40 | PIN24-BLT-024 | 09/26/2024 (Ex. 1, p. 73) | Post Petition Claim |
| 95317582 | US$5,865.60 | PIN24-BLT-025 | 09/23/2024 (Ex. 1, p.84) | Post Petition Claim |

5.    As shown on the POs contained in Exhibit 1—payment from the Debtors on account of the POs was due within sixty (60) days of the Debtors' receipt of the goods. See, e.g., Ex. 1 at p. 2 (stating "Payment Terms: Wire Transfer + 60 Days Upon Receipt in DC"). Accordingly, insofar as the last goods on account of the aforementioned POs was received by the Debtors on September 30, 2024 (as is reflected in the above chart and in the documents annexed as Exhibit 1), all Purchase Orders and associated invoices are past due.

6.    The terms and conditions of the Purchase Orders state: "Shipping Goods to a DC... Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO." See Exhibit 1, p.3.

7.    Not only have the Debtors taken possession of the goods, but to the best of my knowledge, the goods were then sold by the Debtors to customers post-petition, especially during the holiday season (given the nature of the goods), to generate necessary receivables for the Debtors' estates.

---

[2] Against AVDC, LLC Giftree has a 503(b)(9) Claim in the amount of $11,791.5, and a prepetition claim in the amount of $53,850.13.

[3] Against CSC DISTRIBUTION, LLC Giftree has a 503(b)(9) Claim in the amount of $140,969.15, a post-petition administrative claim in the amount of $184,711.04 and a prepetition claim in the amount of $13,369.5.

[4] Against CLOSEOUT DISTRIBUTION, LLC Giftree has a 503(b)(9) Claim in the amount of $118,924.8, and a post-petition administrative claim in the amount of $282,933.5.

[5] Against DURANT DC, LLC Giftree has a 503(b)(9) Claim in the amount of $238,225.75, and a prepetition claim in the amount of $60,885.

[6] Against BIG LOTS STORES, LLC Giftree has a 503(b)(9) Claim in the amount of $268,522.39, a post-petition administrative claim in the amount of $69,734.28 and a prepetition claim in the amount of $109,931.14.

8.      As is summarized in the chart above and demonstrated by the documents attached as Exhibit 1, prior to the Petition Date, the Debtors received goods valued at $238,035.77 more than twenty (20) days before Petition Date, which goods are identified in the chart above as the "Prepetition Claim".

9.      As is summarized in the chart above and demonstrated by the documents attached as Exhibit 1, within the twenty (20) days leading to the Petition Date, the Debtors received an additional $778,433.59 worth of goods that were purchased by the Debtors in the ordinary course of business, which goods are identified in the chart above as the "503(b)(9) Claim".

10.      As is summarized in the chart above and demonstrated by the documents attached as Exhibit 1, following the Petition Date, the Debtors received goods valued at $537,378.82 that were purchased by the Debtors in the ordinary course of business, which goods are identified in the chart above as the "Post Petition Claim".

11.      Giftree has also submitted Proof of Claims documenting its Prepetition Claim and 503(b)(9) Claim.  See Claim Nos. 1778[7], 1779[8], 1780[9], 1781[10]and 1782[11].

12.      Giftree has received communications from the Debtors' representatives expressing their intention to continue the business relationship. On October 15, 2024, the Debtors forwarded a proposed Critical Vendor Agreement to Giftree, identifying it as one of their Critical Vendors. The agreement is attached as **Exhibit "2"**.  However, despite outreach and requests from Giftree and its representatives (including Giftree's counsel since early November), the Debtors have

---

[7] Asserting a prepetition claim in the amount of $13,369.50 and a 503(b)(9) claim in the amount of $140,969.15 against CSC DISTRIBUTION, LLC.

[8] Asserting a prepetition claim in the amount of $53,850.13, and a 503(b)(9) claim in the amount of $11,791.50 against AVDC, LLC.

[9] Asserting a 503(b)(9) claim in the amount of $118,924.80 against CLOSEOUT DISTRIBUTION, LLC

[10] Asserting a prepetition claim in the amount of $60,885 and a 503(b)(9) claim in the amount of $238,225,75 against DURANT DC, LLC.

[11] Asserting a prepetition claim in the amount of $109,931.14 and a 503(b)(9) claim in the amount of $268,522.39 against BIG LOTS STORES, LLC.

neither confirmed nor disputed Giftree's claims, nor have they made any payments to Giftree on account of them.

13.     As a local Chinese company specializing in supplying goods to overseas retailers, Giftree has been significantly impacted by the ~$1.55 million outstanding balance owed by the Debtors.  This substantial amount outstanding has severely disrupted Giftree's business operations, impairing its cash flow management and triggering a ripple effect across the company. Giftree would suffer additional detriment if it was forced to wait months for payment on account of the Purchase Orders.

14.     The cash flow challenges caused by the unpaid debts have destabilized Giftree's supply chain, significantly intensifying financial pressures and undermining the company's ability to maintain smooth and consistent operations. As a direct result, Giftree cannot meet its payment obligations to upstream suppliers, placing these vital business relationships at risk. Additionally, the delays in payment have hindered Giftree's ability to pay rent and wages on time, further straining its operations. Without immediate resolution and payment, Giftree risks disruptions to critical parts of its business operations and may face legal action from upstream suppliers.

15.     The Debtors' payment delays have also had a profound impact on Giftree's export operations. Under applicable regulations, exporters are required to complete foreign exchange collection and customs clearance within a specified period. However, due to Debtors' nonpayment of the shipments, Giftree has been unable to receive the necessary funds in time to complete these processes to obtain a tax refund of $162,022.82. Additionally, such delays may expose Giftree to regulatory penalties and the potential for a downgrade in its credit rating, threatening its ability to operate in international markets effectively.

7929120

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: December <u>30</u>, 2024

_____
Hua Peng

7929120

**EXHIBIT 1**

| DC | CONSIGNEE | PO# | Order Amount | INVOICE# | INVOICE AMOUNT | FCR NO. | DATE OF FCR ISSUED | BOOKING NUMBER | BILLOF LOADING NUMBER | ACTRAL ARRIVE DESTINATION DATE | VESSEL VOYAGE | CONTAINER NO | WITHIN 20 DAYS OF SEP. 9TH (Y/N) | SHIPPING LINE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 870 | CSC DISTRIBUTION, LLC 4900 E. Dublin Granville Rd Columbus, OH 43081-7651 US Telphone: 614-278-6800 Fax: 614-278-6871 | 95209320 | US$132,480.95 | PIN24-BLT-022 | US$86,729.12 | CNS-SZP-2401386 | 07/24/2024 | 36821509-1, 36821509-2, 36821509-3, 36821509-4, 36821509-5 | CCLLSZXS24358584 | 09/11/2024 | (GECL) EVER SMART V.130E | CAIU8365060 / FANU3016481 / FCIU8490389 / HLBU2706979 / TCKU6074130 | N | https://www.hapag-lloyd.cn/en/online-business/track/track-by-booking-solution.html?blno=HLCUSZX2406EDP#2 |
| | | 95209338 | US$47,507.22 | PIN24-BLT-028 | US$97,981.92 | CNS-SZP-2401702 | 08/08/2024 | 2150915830, 2150915840, 2150915850, 2150915860, 2150915870 | 2150915830 | 09/09/2024 | (OOLU) COSCO MALAYSIA V.100E | FSCU5110822 / OOCU4735838 / OOCU4884488 / OOCU5003913 / OOLU7918280 | N | https://www.oocl.com/usa/eng/Pages/default.aspx |
| | | 95209357 | US$43,114.50 | | | | | | | | | | | |
| | | 95317579 | US$7,360.20 | | | | | | | | | | | |

US$184,711.04

Attached below: PO, FCR, CONTAINER ARRIVED PROOF, INVOICE, PACKING LIST

**BIG LOTS!**

| | | | |
|---|---|---|---|
| **PO #** | **95209320** | | |

See attached Terms and  Conditions for
additional Big Lots requirements.
A complete list of requirements can be found
on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit
it to BigLotsmsds@chemtelinc.com prior to the time of shipment in
compliance with OSHA 29 CRF.1910.1200. If the product does not require
a Safety Data Sheet (SDS), please disregard this request. Thank you for
assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN          ,  CN |

---

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:   334-286-6633        Fax:   334-286-7024

---

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800         Fax:  614-278-6871

---

**Purchase From Vendor:**   1008980

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:      JOE PENG
Telephone:   86-755-6122-6325      Fax    86-755-6122-6326
E-Mail:        JOEPENG@GIFTREE.NET

---

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 4,455 | 428,605.45 | 132,480.95 | 65.362 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1. Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2. Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3. Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4. Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5. Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6. Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7. Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8. Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9. Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.
10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.
11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.
The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.
12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.
13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.
14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner, without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



OFFICE-COPY

Case 24-11967-JKS

**IMPORTANT Terms and Conditions**

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.

Case 24-11967-JKS    Doc 1584-2    Filed 01/06/25    Page 15 of 422

OFFICE-COPY

PO#:   95209320

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810475687 | D - 5FT CUPID CASHM | 0.00 | CN | 1 | | 1,505 | 20.68 | 43,023.74 | 08/05/2024 |
| 36011 | 8147-H47709-02 | URNS | | | 1 | | 1,505 | 7.91 | 105,334.95 | |
| 36011005 | Winter Wonder Lane | | H30 | | | | | 69.99 | 59.451 | 92.00 |
| 1 | 481047568706 | | SEA | 2.903 | XX | | | | | |
| 360 | 810569946 | F - 6.5FT BLITZEN F | 0.00 | CN | 1 | | 1,505 | 29.71 | 63,072.14 | 08/05/2024 |
| 36011 | 8147-H54452-04 | URNS | | | 1 | | 1,505 | 12.20 | 135,434.95 | |
| 36011005 | Winter Wonder Lane | | H30 | | | | | 89.99 | 53.760 | 139.99 |
| 2 | 481056994602 | | SEA | 4.510 | A1 | | | | | |
| 360 | 810569935 | PP - 6.5FT GRAND RA | 0.00 | CN | 1 | | 1,445 | 39.20 | 72,622.81 | 08/05/2024 |
| 36011 | 8147-H71010-01 | LIT6-6.5FT | | | 1 | | 1,445 | 11.06 | 187,835.55 | |
| 36011003 | Winter Wonder Lane | | H30 | | | | | 129.99 | 61.639 | 189.00 |
| 3 | 481056993506 | | SEA | 3.890 | A1 | | | | | |

# Yusen Logistics

Yusen Logistics - Yusen Logistics                    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401386**

| Maker/Supplier : | **GIFTREE CRAFTS COMPANY LIMITED** |
|---|---|

Maker/Supplier's INVOICE No.
**PIN24-BLT-022**

| Buyer/Consignee : | **CSC DISTRIBUTION, LLC** |
|---|---|
| | **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** |

Dated: **July 18, 2024**

| Shipment From : | **SHENZHEN** | To : | **MONTGOMERY, AL** |
|---|---|---|---|

Date of Receipt of Cargo
**July 17, 2024**

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
PLEASE REFER TO ATTACHED        NOTIFY PARTY: GEODIS
  SHEET(S).                                   5101 S. BROAD STREET
                                              PHILADELPHIA, PA 19112-1404, U.S.A.
                                              ATTN: ALENA LAMINA
                                 ALSO NOTIFY: EDRAY 2020 LLC.
                                              1300 SOUTH MINT STREET SUITE 200
                                              CHARLOTTE NC 28203 USA
                                              TEL: 704-593-6329
                                              EMAIL: DATAQUALITY@EDRAYCPL.COM
                                 CY-CY
```

```
    2,664 CARTONS                  283.920 CBM    24,818.15 KGS
    ============================================================
    TOTAL : TWO THOUSAND SIX HUNDRED SIXTY-FOUR (2,664) CARTONS
    ONLY


           "FREIGHT COLLECT"
SHIPMENT PER S.S. "EVER SMART" VOY NO. 130E    DISCHARGED AT MOBILE, AL
SAILING ON / ABOUT July 25, 2024. CARGO RECEIVED ON July 17, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN** | **July 24, 2024** |
|---|---|---|

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**

*For and on behalf of*
Yusen Logistics (Shenzhen) Co., Ltd.

*Authorized Signature(s)*    As Agent

(Authorized Signature)    V1

# Yusen Logistics

V1

FCR No.    CNS-SZP-2401386

Attachment Page 1/1

**Shipping Mark**

**Description of Goods**

BIG LOTS

SHIPPER'S LOAD, COUNT AND SEAL

STORES

SAID TO CONTAIN

| | | | |
|---|---|---|---|
| CAIU8365060 | SEAL# HLK0035880 | 40H | DRY |
| PO# | FANU3016481 | SEAL# HLK0024943 | 40H | DRY |
| SKU# | FCIU8490389 | SEAL# HLK0036034 | 40H | DRY |
| DEPT# 360 | HLBU2706979 | SEAL# HLK0036023 | 40H | DRY |
| MADE IN CHINA | TCKU6074130 | SEAL# HLK0036095 | 40H | DRY |

ARTIFICIAL XMAS TREE
PO#95209320
2664PCS/2664CTNS
HS CODE:95095100090

SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
MATERIAL

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever there re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of Company.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of either.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes. Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12 RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.



We're hiring!

Home | Services & Information | Our Company | Online Business Suite

- Quote
- Schedule NEW
- Book
- Documentation
- Finance
- Track
  - by Booking
  - by Container
  - Subscription
  - Vessel Tracker
  - Live Position
  - Hapag-Lloyd LIVE
- Import
- Navigator
- Quality Promises
- Digital Insights Dock
- Gemini Cooperation

Enter a container number to receive tracing information. Use also the **Vessel Tracing** for the current vessel schedule.

**Container No.** CAIU 8365060  (e.g. HLCU1234567)

Find   Clear

## Container Information

| Type | 45GP | Description | HIGH CUBE CONT. | Dimension | 40' X 8' X 9'6" | Tare (kg) | 3870 | Max. Payload (kg) | 28630 |
|------|------|-------------|-----------------|-----------|------------------|-----------|------|-------------------|-------|

## Last Movement

The container arrived in MOBILE, AL at 2024-09-27 .

| Status | Place of Activity | Date | Time | Transport | Voyage No. |
|--------|-------------------|------|------|-----------|------------|
| Gate out empty | YANTIAN | 2024-07-17 | 03:42 | Truck | |
| Arrival in | YANTIAN | 2024-07-17 | 13:04 | Truck | |
| Loaded | YANTIAN | 2024-07-25 | 11:07 | EVER SMART | 130E |
| Vessel departed | YANTIAN | 2024-07-25 | 21:42 | EVER SMART | 130E |
| Vessel arrived | MOBILE, AL | 2024-09-07 | 19:00 | EVER SMART | 130E |
| Discharged | MOBILE, AL | 2024-09-07 | 23:14 | EVER SMART | 130E |
| Departure from | MOBILE, AL | 2024-09-12 | 09:41 | Truck | |
| Gate in empty | MOBILE, AL | 2024-09-27 | 09:22 | Truck | |

**Hapag-Lloyd**

We're hiring!

Home | Services & Information | Our Company | **Online Business Suite**

- Quote
- Schedule NEW
- Book
- Documentation
- Finance
- Track
  - by Booking
  - by Container
  - Subscription
  - Vessel Tracker
  - Live Position
  - Hapag-Lloyd LIVE
- Import
- Navigator
- Quality Promises
- Digital Insights Dock
- Gemini Cooperation

Container No. FANU 3016481 (e.g. HLCU1234567)

**Find**   **Clear**

**Container Information**

| Type | 45GP | Description | HIGH CUBE CONT. | Dimension | 40' X 8' X 9'6" | Tare (kg) | 3680 | Max. Payload (kg) | 28820 |

**Last Movement**

The container arrived in MOBILE, AL at 2024-09-25 .

| Status | Place of Activity | Date | Time | Transport | Voyage No. |
|---|---|---|---|---|---|
| Gate out empty | YANTIAN | 2024-07-17 | 02:46 | Truck | |
| Arrival in | YANTIAN | 2024-07-17 | 19:26 | Truck | |
| Loaded | YANTIAN | 2024-07-25 | 10:55 | EVER SMART | 130E |
| Vessel departed | YANTIAN | 2024-07-25 | 21:42 | EVER SMART | 130E |
| Vessel arrived | MOBILE, AL | 2024-09-07 | 19:00 | EVER SMART | 130E |
| Discharged | MOBILE, AL | 2024-09-08 | 01:29 | EVER SMART | 130E |
| Departure from | MOBILE, AL | 2024-09-12 | 08:31 | Truck | |
| Gate in empty | MOBILE, AL | 2024-09-25 | 10:58 | Truck | |

**Bold data** represents actual data, all other rows indicate planned movements. Blank dates are under review or not yet available and will be updated once data was received.

# Hapag-Lloyd

Home    Services & Information    Our Company    Online Business Suite

**Quote**
**Schedule** NEW
**Book**
**Documentation**
**Finance**
**Track**
- by Booking
- by Container
- Subscription
- Vessel Tracker
- Live Position
- Hapag-Lloyd LIVE

**Import**
**Navigator**
**Quality Promises**
**Digital Insights Dock**
**Gemini Cooperation**

Container No. FCIU 8490389   (e.g. HLCU1234567)

Find    Clear

### Container Information

Type 45GP   Description HIGH CUBE CONT.   Dimension 40' X 8' X 9'6"   Tare (kg) 3900   Max. Payload (kg) 28600

### Last Movement

The container arrived in MOBILE, AL at 2024-09-24 .

| Status | Place of Activity | Date | Time | Transport | Voyage No. |
|---|---|---|---|---|---|
| Gate out empty | YANTIAN | 2024-07-17 | 04:31 | Truck | |
| Arrival in | YANTIAN | 2024-07-17 | 19:35 | Truck | |
| Loaded | YANTIAN | 2024-07-25 | 10:53 | EVER SMART | 130E |
| Vessel departed | YANTIAN | 2024-07-25 | 21:42 | EVER SMART | 130E |
| Vessel arrived | MOBILE, AL | 2024-09-07 | 19:00 | EVER SMART | 130E |
| Discharged | MOBILE, AL | 2024-09-07 | 23:37 | EVER SMART | 130E |
| Departure from | MOBILE, AL | 2024-09-11 | 15:52 | Truck | |
| Gate in empty | MOBILE, AL | 2024-09-24 | 07:28 | Truck | |

**Bold data** represents actual data, all other rows indicate planned movements. Blank dates are under review or not yet available and will be updated once data was received.





**Hapag-Lloyd**

We're hiring!

Home    Services & Information    Our Company    **Online Business Suite**

- Quote
- Schedule NEW
- Book
- Documentation
- Finance
- Track
  - by Booking
  - by Container
  - Subscription
  - Vessel Tracker
  - Live Position
  - Hapag-Lloyd LIVE
- Import
- Navigator
- Quality Promises
- Digital Insights Dock
- Gemini Cooperation

Container No.  TCKU 6074130   (e.g. HLCU1234567)

Find    Clear

## Container Information

| Type | 45GP | Description | HIGH CUBE CONT. | Dimension | 40' X 8' X 9'6" | Tare (kg) | 3730 | Max. Payload (kg) | 28770 |

## Last Movement

The container arrived in MOBILE, AL at 2024-09-25 .

| Status | Place of Activity | Date | Time | Transport | Voyage No. |
|---|---|---|---|---|---|
| **Gate out empty** | **YANTIAN** | **2024-07-17** | **02:36** | **Truck** | |
| **Arrival in** | **YANTIAN** | **2024-07-17** | **20:55** | **Truck** | |
| **Loaded** | **YANTIAN** | **2024-07-25** | **10:32** | **EVER SMART** | **130E** |
| **Vessel departed** | **YANTIAN** | **2024-07-25** | **21:42** | **EVER SMART** | **130E** |
| **Vessel arrived** | **MOBILE, AL** | **2024-09-07** | **19:00** | **EVER SMART** | **130E** |
| **Discharged** | **MOBILE, AL** | **2024-09-07** | **23:26** | **EVER SMART** | **130E** |
| **Departure from** | **MOBILE, AL** | **2024-09-11** | **10:40** | **Truck** | |
| **Gate in empty** | **MOBILE, AL** | **2024-09-25** | **08:52** | **Truck** | |

**Bold data** represents actual data, all other rows indicate planned movements. Blank dates are under review or not yet available and will be updated once data was received.

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-022

**Invoice Date.:** July 18, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** EVER SMART / 130E

**Port of Loading:** YANTIAN

**Ship on or about:** July 25, 2024

**Port of Entry:** MOBILE, AL

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** CAIU8365060, FANU3016481, FCIU8490389, HLBU2706979, TCKU6074130

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95209320 | | 679 EA | 20.680/EA | 14,041.720 |
| **SKU No.:** 810475687 | | 679 CTNS | | |
| 5FT CUPID CASHMERE URN TREE | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **P/O No.:** 95209320 | | 1,445 EA | 39.200/EA | 56,644.000 |
| **SKU No.:** 810569935 | | 1,445 CTNS | | |
| 6.5FT GRAND RAPIDS FLOCKED TREE | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **P/O No.:** 95209320 | | 540 EA | 29.710/EA | 16,043.400 |
| **SKU No.:** 810569946 | | 540 CTNS | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **Manufacturer Name & Address** | | | | |
| KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA HUIZHOU, GUANGDONG 516800, CHINA | | | | |
| Total: | (2,664 CTNS) | 2,664 | | 86,729.120 |

TOTAL (USD) DOLLARS : EIGHTY-SIX THOUSAND SEVEN HUNDRED TWENTY-NINE AND CENTS TWELVE ONLY.

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
FANU3016481/HLK0024943/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
FANU3016481/HLK0024943/40H

FCIU8490389/HLK0036034/40H
HLBU2706979/HLK0036023/40H
CAIU8365060/HLK0035880/40H
TCKU6074130/HLK0036095/40H

FCIU8490389/HLK0036034/40H
HLBU2706979/HLK0036023/40H
CAIU8365060/HLK0035880/40H
TCKU6074130/HLK0036095/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# PACKING LIST

**Invoice No.:** PIN24-BLT-022

**Invoice Date.:** July 18, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** EVER SMART / 130E

**Port of Loading:** YANTIAN

**Ship on or about:** July 25, 2024

**Port of Entry:** MOBILE, AL

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** CAIU8365060, FANU3016481, FCIU8490389, HLBU2706979, TCKU6074130

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95209320 | | 679 EA | 3,271.00 | 4,481.40 | 55.800 |
| **SKU No.:** 810475687 | | 679 CTNS | | | |
| 5FT CUPID CASHMERE URN TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209320 | | 1,445 EA | 12,764.00 | 14,666.75 | 159.170 |
| **SKU No.:** 810569935 | | 1,445 CTNS | | | |
| 6.5FT GRAND RAPIDS FLOCKED TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209320 | | 540 EA | 4,672.00 | 5,670.00 | 68.950 |
| **SKU No.:** 810569946 | | 540 CTNS | | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| Total: | (2,664 CTNS) | 2,664 | 20,707.00 | 24,818.15 | 283.920 |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
FANU3016481/HLK0024943/40H
FCIU8490389/HLK0036034/40H
HLBU2706979/HLK0036023/40H
CAIU8365060/HLK0035880/40H
TCKU6074130/HLK0036095/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
FANU3016481/HLK0024943/40H
FCIU8490389/HLK0036034/40H
HLBU2706979/HLK0036023/40H
CAIU8365060/HLK0035880/40H
TCKU6074130/HLK0036095/40H

We certify that there is no wood packing materials in the shipment

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA



**PO #**     **95317579**

| | |
|---|---|
| Date Created | 04/17/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-YANTIAN ，CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

**Purchase From Vendor:   1008980**

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:      JOE PENG
Telephone:  86-755-6122-6325    Fax    86-755-6122-6326
E-Mail:      JOEPENG@GIFTREE.NET

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name   _____

Title   _____

Date   _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 3,132 | 31,288.68 | 7,360.20 | 67.227 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.          Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.          Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.          Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.          Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.          Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.          Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.          Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.          Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.          Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.
10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.
11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.
The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.
12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.
13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.
14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification.  Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance.  Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance.  The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence.  Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer).  In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies.  With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured.  The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and  (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies.  Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure.  Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control.  In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks.  Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion.  Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce.  "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting.  Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer.  Any purported assignment or delegation made without this consent is void.  Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion.  In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation.  Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives.  Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration.  The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms.  Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum.  The parties hereby agree to waive a trial by jury with respect to Disputes.  Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations.  The location of such arbitration will be in Columbus, Ohio.  Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree.  The parties may also mutually elect to seek mediation as an alternative precursor to arbitration.  If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply.  The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree.  The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability.  Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms.  The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement.  The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof.  The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor.  The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer.  Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected.  The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein.  In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts.  Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy").  Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries.  Certain sections of the PO Terms are for the benefit of Buyer's Affiliates.  As a result, any of Buyer's Affiliates may enforce the PO Terms.  Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY.  EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms.  Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



OFFICE-COPY
Case 24-11967-JKS   Doc 1584-2   Filed 05/30/25   Page 5 of 422
**IMPORTANT Terms and Conditions**
Page 24 of 419
PO#:  95317579
Page 5 of 6

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 360 | 810734180 | 12IN PRELIT HARD NE | 0.00 | CN | 12 | | 3,132 | 2.35 | 10,254.17 | 09/02/2024 |
|---|---|---|---|---|---|---|---|---|---|---|
| 36004 | 8147-H75850-02 | DECWREATHS | | | 1 | | 261 | 0.92 | 31,288.68 | |
| 36004005 | Winter Wonder Lane | | H33 | | | | | 9.99 | 67.462 | 13.80 |
| 1 | 481073418006 | | SEA | 4.069 | A1 | | | | | |

# BIG LOTS!

| | | | |
|---|---|---|---|
| **PO #** | **95209338** | | |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 1 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/08/2024 |
| Cancel if not Shipped by: | 07/15/2024 |
| Must be Routed by: | 06/17/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN            ,  CN |

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:   334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax:  614-278-6871

**Purchase From Vendor:   1008980**

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:      JOE PENG
Telephone:  86-755-6122-6325    Fax    86-755-6122-6326
E-Mail:       JOEPENG@GIFTREE.NET

**ADDITIONAL COMMENTS**

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 1,639 | 152,873.61 | 47,507.22 | 65.871 |

OFFICE-COPY



## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


OFFICE COPY Case 24-11967-JKS Doc 1584-4 Filed 05/02/25 Page 28 of 410 Page 9520938
**IMPORTANT Terms and Conditions** PO #: 9520938

Page 3 of 6

title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.

**BIG LOTS!**

OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Package Art | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810475687 | D - 5FT CUPID CASHM | 0.00 | CN | 1 | | 575 | 20.68 | 16,437.64 | 08/26/2024 |
| 36011 | 8147-H47709-02 | URNS | | | 1 | | 575 | 7.91 | 40,244.25 | |
| 36011005 | Winter Wonder Lane | | H30 | | | | | 69.99 | 59.451 | 92.00 |
| 1 | 481047568706 | | SEA | 2.903 | XX | | | | | |
| 360 | 810569946 | F - 6.5FT BLITZEN F | 0.00 | CN | 1 | | 642 | 29.71 | 26,905.19 | 08/26/2024 |
| 36011 | 8147-H54452-04 | URNS | | | 1 | | 642 | 12.20 | 57,773.58 | |
| 36011005 | Winter Wonder Lane | | H30 | | | | | 89.99 | 53.760 | 139.99 |
| 2 | 481056994602 | | SEA | 4.510 | A1 | | | | | |
| 360 | 810569935 | PP - 6.5FT GRAND RA | 0.00 | CN | 1 | | 422 | 39.20 | 21,208.88 | 08/26/2024 |
| 36011 | 8147-H71010-01 | LIT6-6.5FT | | | 1 | | 422 | 11.06 | 54,855.78 | |
| 36011003 | Winter Wonder Lane | | H30 | | | | | 129.99 | 61.639 | 189.00 |
| 3 | 481056993506 | | SEA | 3.890 | A1 | | | | | |

Case 24-11967-JKS    Doc 1584-2    Filed 01/06/25    Page 40 of 422

OFFICE-COPY

PO#:  95209351

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810614468 | N - 7.5FT  CASH/HAR | 0.00 | CN | 1 | | 1,501 | 26.23 | 53,149.21 | 08/05/2024 |
| 36011 | 8147-H60723-01 | LIT7FT&UP | | | 1 | | 1,501 | 9.18 | 150,084.99 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 99.99 | 64.850 | 129.99 |
| 1 | 481061446806 | | SEA | 3.333 | A1 | | | | | |
| 360 | 810715824 | Z - 7.5FT WINDHAM T | 0.00 | CN | 1 | | 1,444 | 82.50 | 145,815.12 | 08/05/2024 |
| 36011 | 8147-H59004-01 | LIT7FT&UP | | | 1 | | 1,444 | 18.48 | 288,785.56 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 199.99 | 49.920 | 399.00 |
| 2 | 481071582402 | | SEA | 6.222 | A1 | | | | | |
| 360 | 810715803 | S - 7.5FT SHOWSHOE | 0.00 | CN | 1 | | 1,402 | 75.80 | 130,669.20 | 08/05/2024 |
| 36011 | 8147-H66753-01 | LIT7FT&UP | | | 1 | | 1,402 | 17.40 | 280,385.98 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 199.99 | 53.776 | 299.99 |
| 3 | 481071580309 | | SEA | 5.890 | A1 | | | | | |
| 360 | 810715793 | GG - 9FT WINDHAM TR | 0.00 | CN | 1 | | 381 | 128.70 | 58,905.65 | 08/05/2024 |
| 36011 | 8147-H59003-02 | LIT7FT&UP | | | 1 | | 381 | 25.91 | 114,296.19 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 299.99 | 48.891 | 599.99 |
| 4 | 481071579303 | | SEA | 8.507 | A1 | | | | | |

# BIG LOTS!

| | | | |
|---|---|---|---|
| **PO #** | **95209357** | See attached Terms and Conditions for additional Big Lots requirements. | Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program. |

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 1 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/08/2024 |
| Cancel if not Shipped by: | 07/15/2024 |
| Must be Routed by: | 06/17/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN     ,  CN |

A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633      Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800      Fax: 614-278-6871

**Purchase From Vendor:   1008980**

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:     JOE PENG
Telephone:   86-755-6122-6325    Fax    86-755-6122-6326
E-Mail:     JOEPENG@GIFTREE.NET

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 335 | 100,496.65 | 43,114.50 | 48.462 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor.

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.
"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.
"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.
"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.
"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.
"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.
"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.
"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.
1.        Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.
2.        Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC").  A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.
3.        Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.
4.        Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.
6.        Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.
7.        Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.
8.        Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.
9.        Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO.  The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer.  A BOL in duplicate must accompany all Vendor invoices.  A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual.  Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period").  After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods.  Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms.  For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law.  As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification.  Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records").  Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative.  Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit.  In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice.  Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof.  Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs.  Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls.  A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations.  In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate.  Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above.  When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date.  Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law.  Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods.  Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality.  Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information").  "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods.  Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties.  Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry.  Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13.  Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods.  Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected.  The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption.  Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws").  Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor.  Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.

OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 360 | 810715793 | GG - 9FT WINDHAM TR | 0.00 | CN | 1 | | 335 | 128.70 | 51,793.68 | 08/26/2024 |
| 36011 | 8147-H59003-02 | LIT7FT&UP | | | 1 | | 335 | 25.91 | 100,496.65 | |
| 36011002 | Winter Wonder Lane | | 030 | | | | | 299.99 | 48.891 | 599.99 |
| 4 | 481071579303 | | SEA | 8.507 | A1 | | | | | |

Yusen Logistics - Yusen Logistics

# Yusen Logistics

Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401702**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-028** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **July 30, 2024** |
| Shipment From : **SHENZHEN**      To : **MONTGOMERY, AL** | Date of Receipt of Cargo **July 29, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| PLEASE REFER TO ATTACHED SHEET(S). | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA | | | |

```
                                 NOTIFY PARTY: GEODIS
                                   5101 S. BROAD STREET
                                   PHILADELPHIA, PA 19112-1404, U.S.A.
                                   ATTN: ALENA LAMINA
                                 ALSO NOTIFY: EDRAY 2020 LLC.
                                   1300 SOUTH MINT STREET SUITE 200
                                   CHARLOTTE NC 28203 USA
                                   TEL: 704-593-6329
                                   EMAIL: DATAQUALITY@EDRAYCPL.COM
                                 CY-CY
```

**2,235 CARTONS**          **286.470 CBM**   **26,256.50 KGS**
===============================================================
**TOTAL : TWO THOUSAND TWO HUNDRED THIRTY-FIVE (2,235) CARTONS ONLY**

**"FREIGHT COLLECT"**
**SHIPMENT PER S.S. "COSCO MALAYSIA" VOY NO. 100E    DISCHARGED AT MOBILE, AL SAILING ON / ABOUT August 6, 2024. CARGO RECEIVED ON July 29, 2024.**

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                **August 8, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** *For and on behalf of* **Yusen Logistics (Shenzhen) Co., Ltd.** *Authorized Signature(s)*                As Agent |
| **No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: 1** (Terms and conditions are to be continued to the reverse hereof.) | (Authorized Signature)                V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

# Yusen Logistics

V1

FCR No.    CNS-SZP-2401702                                        Attachment Page 1/1

**Shipping Mark**                          **Description of Goods**

BIG LOTS                                   SHIPPER'S LOAD, COUNT AND SEAL
STORES                                     SAID TO CONTAIN

|  |  |  |  |
|---|---|---|---|
| FSCU5110822 | SEAL# OOLJRT4874 | 40' | DRY |
| OOCU4735838 | SEAL# OOLJXZ8919 | 40' | DRY |
| OOCU4884488 | SEAL# OOLJXV7701 | 40' | DRY |
| OOCU5003913 | SEAL# OOLJXV7754 | 40' | DRY |
| OOLU7918280 | SEAL# OOLJXZ8884 | 40' | DRY |

PO#
SKU#
DEPT# 360
MADE IN CHINA

BIG LOTS
STORES

ARTIFICIAL XMAS TREE
PO#                                        PO#95209338
SKU#                                       1639PCS/1639CTNS
DEPT# 360                                  HS CODE:9505100090
MADE IN CHINA

BIG LOTS                                   ARTIFICIAL XMAS TREE
STORES                                     PO#95209357
                                           335PCS/335CTNS
PO#                                        HS CODE:9505100090
SKU#
DEPT# 360                                  ARTIFICIAL XMAS WREATH
MADE IN CHINA                              PO#95317579
                                           3132PCS/261CTNS
                                           HS CODE:9505100090

                                           SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                                           SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                                           MATERIAL

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers' Instructions received in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions  which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the  receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection,  delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other  services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or   equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending  upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the  remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all article information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever incurre  re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound  by all stipulations,  exceptions, terms, and conditions on the front and  back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)    The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide the total gross  mass established using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy  and timeliness of such gross mass information and will use this to comply with its obligations in accordance  with SOLAS.

h)    Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently  packed and/or prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other  unit load device (each hereafter referred to as a "transport unit") then:

   i)    The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and

   ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)    Fitness of Cargoes: The cargoes are fit and suitable for the  carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)    Delivery of Cargoes: The consignee or other person entitled to the  delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered  by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable,  explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly  accepted in writing to deal  with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of  the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly  marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMERWILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized  to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from  Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference  between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for  Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into  by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of Company.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding  insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability – Except as set forth in n this Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.    Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided  by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions  were expressly for his  or its benefit.  For the foregoing purposes, Shipper  contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without  limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously given to and accepted by Company.  A mere statement or declaration of the value or  nature of cargoes for  insurance or export  or customs or  other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for   all monies due to Company and/or  its affiliates from Shipper or  the ultimate consignee.  Company may at its sole discretion exercise its lien at  any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including but not limited to storage charges) and in recovering or  attempting to recover  any sums due from Shipper  or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and  at any place) at the costs of Shipper  cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount  due to Company.  Company shall be entitled to  claim the difference  against Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3    Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently addressed  or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to  delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set  -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes, and/or other expenses payable  before Shipper's invoice  is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1    Any claim against Company  must be in writing and  delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14.    TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice thereof received  by Company within three 3 months from the date  cargoes arrived at the destination or the date cargoes should have  arrived at the destination (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that:  (a) Company shall have no obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of  bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all  risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions and any act or contract to which they apply  shall be governed by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of the  courts of the Hong Kong Special Administrative Region.



# Cargo Tracking

## Search Result - Bill of Lading Number  2150915830

### Summary

| | | | |
|---|---|---|---|
| B/L Vessel Voyage: | COSCO MALAYSIA 100E | FND Customs Clearance Code: | R103 |
| Bill of Lading Number: | 2150915830 (B/L Ready) | Inbound Customs Clearance Status: *Note* | Cleared  (09 Sep 2024, 10:55 GMT) |
| Booking Number: | 2150915870 (Confirmed) | | |
| | 2150915860 (Confirmed) | Payment Status (collect charges): *Note* | Cleared |
| | 2150915830 (Confirmed) | Cargo Release Status: | Released |
| | 2150915850 (Confirmed) | Original B/L Received by Carrier: | N.A. (Under Sea WayBill) |
| | 2150915840 (Confirmed) | | |
| Total Containers: | 5 x 40' General Purpose Container | | |
| Total Quantity: | 2235 Carton | | |

Containers | Detention & Demurrage

| Container Number | Container Size Type | Quantity | Gross Weight | Verified Gross Mass | Latest Event | | | Final Destination |
|---|---|---|---|---|---|---|---|---|
| | | | | | Event | Location | Time | |
| OOCU488448-8 | 40GP | 453 Carton | 4742.100 KGS | 8312.100 KGS (Submitted) | Picked Up for Delivery | APM Terminals Mobile, Mobile, Mobile, Alabama, United States | 13 Sep 2024, 08:20 CDT | Montgomery, Montgomery, Alabama, United States appointment to be arranged |
| OOCU500391-3 | 40GP | 485 Carton | 3717.600 KGS | 7287.600 KGS (Submitted) | Picked Up for Delivery | APM Terminals Mobile, Mobile, Mobile, Alabama, United States | 13 Sep 2024, 10:34 CDT | Montgomery, Montgomery, Alabama, United States appointment to be arranged |
| FSCU511082-2 | 40GP | 660 Carton | 4782.000 KGS | 8432.000 KGS (Submitted) | Picked Up for Delivery | APM Terminals Mobile, Mobile, Mobile, Alabama, United States | 13 Sep 2024, 08:01 CDT | Montgomery, Montgomery, Alabama, United States appointment to be arranged |
| OOLU791828-0 | 40GP | 237 Carton | 7038.900 KGS | 10678.900 KGS (Submitted) | Picked Up for Delivery | APM Terminals Mobile, Mobile, Mobile, Alabama, United States | 13 Sep 2024, 15:28 CDT | Montgomery, Montgomery, Alabama, United States appointment to be arranged |
| OOCU473583-8 | 40GP | 400 Carton | 5975.900 KGS | 9555.900 KGS (Submitted) | Picked Up for Delivery | APM Terminals Mobile, Mobile, Mobile, Alabama, United States | 13 Sep 2024, 08:28 CDT | Montgomery, Montgomery, Alabama, United States appointment to be arranged |

### Detail of OOCL Container OOCU488448-8    Detailed Container Specification Enquiry

Inbound Customs Clearance Status: *Note*  Released (09 Sep 2024, 05:55 CDT)

Payment Status (collect charges): *Note*

Linked Reference Number: *Note*

Routing | Equipment Activities

| Origin | Empty Pickup Location | Full Return Location | Port of Load | Vessel Voyage | Port of Discharge | Final Destination Hub | Destination | Empty Return Location | Haulage |
|---|---|---|---|---|---|---|---|---|---|

| Yantian, Shenzhen, Guangdong, China | | Yantian, Shenzhen, Guangdong, China 06 Aug 2024, 21:13 CCT (Actual)  | GCC2 COSCO MALAYSIA 100E/100W (100E/100W) | Mobile, Mobile, Alabama, United States 09 Sep 2024, 05:13 CDT (Actual) | APM Terminals Mobile 09 Sep 2024, 10:35 Local (Actual) | Montgomery, Montgomery, Alabama, United States | APM Terminals Mobile (Subject to Confirmation) | CY/DOOR |

Powered by CargoSmart

| Terms of Use | Privacy and Security Statement | Online Security | Customer Communications Policy |

Copyright © 1998 - 2024. Orient Overseas Container Line Limited. All rights reserved.

 OOIL GROUP

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-028

**Invoice Date.:** July 30, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO MALAYSIA / 100E

**Port of Loading:** YANTIAN

**Ship on or about:** August 06, 2024

**Port of Entry:** MOBILE, AL

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** FSCU5110822, OOCU4735838, OOCU4884488, OOCU5003913, OOLU7918280

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95209338 | | 575 EA | 20.680/EA | 11,891.000 |
| **SKU No.:** 810475687 | | 575 CTNS | | |
| 5FT CUPID CASHMERE URN TREE | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **P/O No.:** 95209338 | | 422 EA | 39.200/EA | 16,542.400 |
| **SKU No.:** 810569935 | | 422 CTNS | | |
| 6.5FT GRAND RAPIDS FLOCKED TREE0 | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **P/O No.:** 95209338 | | 642 EA | 29.710/EA | 19,073.820 |
| **SKU No.:** 810569946 | | 642 CTNS | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **P/O No.:** 95209357 | | 335 EA | 128.700/EA | 43,114.500 |
| **SKU No.:** 810715793 | | 335 CTNS | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **P/O No.:** 95317579 | | 3,132 EA | 2.350/EA | 7,360.200 |
| **SKU No.:** 810734180 | | 261 CTNS | | |
| 12IN HARDNEEDLE DECORATION WREATH | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |

Manufacturer Name & Address

KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA

HUIZHOU, GUANGDONG
516800 CHINA

| | Total: | (2,235 CTNS) | 5,106 | 97,981.920 |
|---|---|---|---|---|

TOTAL (USD) DOLLARS : NINETY-SEVEN THOUSAND NINE HUNDRED EIGHTY-ONE AND CENTS NINETY-TWO ONLY.

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU,
CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
FSCU5110822/OOLJRT4874/40'
OOCU4735838/OOLJXZ8919/40'
OOCU4884488/OOLJXV7701/40'
OOCU5003913/OOLJXV7754/40'
OOLU7918280/OOLJXZ8884/40'

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU,
CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
FSCU5110822/OOLJRT4874/40'
OOCU4735838/OOLJXZ8919/40'
OOCU4884488/OOLJXV7701/40'
OOCU5003913/OOLJXV7754/40'
OOLU7918280/OOLJXZ8884/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

---

# PACKING LIST

---

**Invoice No.:** PIN24-BLT-028 | **Invoice Date.:** July 30, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO MALAYSIA / 100E

**Port of Loading:** YANTIAN

**Ship on or about:** August 06, 2024

**Port of Entry:** MOBILE, AL

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** FSCU5110822, OOCU4735838, OOCU4884488, OOCU5003913, OOLU7918280

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95209338 | | 575 EA | 2,976.00 | 3,795.00 | 47.260 |
| **SKU No.:** 810475687 | | 575 CTNS | | | |
| 5FT CUPID CASHMERE URN TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209338 | | 422 EA | 3,795.00 | 4,283.30 | 46.480 |
| **SKU No.:** 810569935 | | 422 CTNS | | | |
| 6.5FT GRAND RAPIDS FLOCKED TREE0 | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209338 | | 642 EA | 5,678.00 | 6,741.00 | 81.980 |
| **SKU No.:** 810569946 | | 642 CTNS | | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209357 | | 335 EA | 8,764.00 | 9,949.50 | 80.680 |
| **SKU No.:** 810715793 | | 335 CTNS | | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95317579 | | 3,132 EA | 1,042.00 | 1,487.70 | 30.070 |
| **SKU No.:** 810734180 | | 261 CTNS | | | |
| 12IN HARDNEEDLE DECORATION WREATH | No. of Pallet: | | | | |

HTS Code.: 9505102500    Case 24-11967-JKS    Doc 1584-2    Filed 01/06/25    Page 55 of 422

| | Total: | (2,235 CTNS) | 5,106 | 22,255.00 | 26,256.50 | 286.470 |
|---|---|---|---|---|---|---|

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
FSCU5110822/OOLJRT4874/40'
OOCU4735838/OOLJXZ8919/40'
OOCU4884488/OOLJXV7701/40'
OOCU5003913/OOLJXV7754/40'
OOLU7918280/OOLJXZ8884/40'

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
FSCU5110822/OOLJRT4874/40'
OOCU4735838/OOLJXZ8919/40'
OOCU4884488/OOLJXV7701/40'
OOCU5003913/OOLJXV7754/40'
OOLU7918280/OOLJXZ8884/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

| DC | CONSIGNEE | PO# | Order Amount | INVOICE# | INVOICE AMOUNT | FCR NO. | DATE OF FCR ISSUED | BOOKING NUMBER | BILLOF LOADING NUMBER | ACTRAL ARRIVE DESTINATION DATE | VESSEL VOYAGE | CONTAINER NO | WITHIN 20 DAYS OF SEP. 9TH (Y/N) | SHIPPING LINE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 890 | BIG LOTS STORES, LLC 4900 E. Dublin Granville Rd Columbus, OH 43081-7651 US Telphone: 614-278-6800 Fax: 614-278-6871 | 95209335 | US$133,105.41 | PIN24-BLT-016 | US$54,602.28 | CNS-SZP-2401255 | 07/16/2024 | SHZ6470112, SHZ6470115, SHZ6470116, SHZ6470123, SHZ6470124, SHZ6470125, SHZ6470252, SHZ6470254 | CMDUSH26470064 | 08/15/2024~09/12/2024 | (CMDU) TS MELBOURNE V.0WF1BE1MA | TCLU4348250 / APZU4762831 / SELU4144115/ APZU4790520/ CMAU8240872 / SELU41428801 / CMAU8330050 / APZU4447845 | N | https://www.cma-cgm.com/ebusiness/tracking |
| | | 95209362 | US$9,266.40 | PIN24-BLT-024 | US$9,266.40 | CNS-SZP-2401559 | 07/30/2024 | | CMDUSH26496297 | 09/23/2024 | (CMDU) APL ESPLANADE V.0XR5ZE1MA | TCLU9671013 | N | https://www.cma-cgm.com/ebusiness/tracking |
| | | 95317582 | US$5,865.60 | PIN24-BLT-025 | US$5,865.60 | CNS-SZP-2401560 | 07/30/2024 | | CMDUSH26496299 | 09/23/2024 | (CMDU) APL ESPLANADE V.0XR5ZE1MA | CMAU7865865 | N | https://www.cma-cgm.com/ebusiness/tracking |
| | | | US$148,237.41 | | US$69,734.28 | | | | | | | | | |

Attached below: PO, FCR, CONTAINER ARRIVED PROOF, INVOICE, PACKING LIST

# INVOICE BREAKDOWN

| PO# 95209335 | | | INVOICE No.:PIN24-8147-016 | | | | |
|---|---|---|---|---|---|---|---|
| SKU# | MFG# | DESCRIPTION | QTY(PCS) | CTN NO. | UNIT PRICE | UNIT | AMOUNT |
| CONTAINER #: TCLU4348250    SEAL #: R6578441 | | | | | | | |
| 810569935 | 8147-H71010-01 | 6.5FT GRAND RAPIDS FLOCKED TREE | 480 | 480 | US$39.20 | PCS | US$18,816.00 |
| 810475687 | 8147-H59003-02 | D-5FT CUPID CASHM URNS | 43 | 43 | US$20.68 | PCS | US$889.24 |
| SUB-TOTAL | | | 523 | 523 | | | US$19,705.24 |
| CONTAINER #: APZU4762831    SEAL #: R6578485 | | | | | | | |
| 810475687 | 8147-H59003-02 | D-5FT CUPID CASHM URNS | 698 | 698 | US$20.68 | PCS | US$14,434.64 |
| SUB-TOTAL | | | 698 | 698 | | | US$14,434.64 |
| CONTAINER #: CMAU8240872    SEAL #: R6578429 | | | | | | | |
| 810569935 | 8147-H71010-01 | 6.5FT GRAND RAPIDS FLOCKED TREE | 522 | 522 | US$39.20 | PCS | US$20,462.40 |
| SUB-TOTAL | | | 522 | 522 | | | US$20,462.40 |
| G-TOTAL: | | | 1743 | 1743 | | | US$54,602.28 |



**PO #**   **95209335**

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 5 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN          ,  CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800       Fax:   614-278-3809

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800       Fax: 614-278-6871

Purchase From Vendor:   1008980

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA
Contact:
Telephone:                    Fax
E-Mail:

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 4,452 | 431,415.48 | 133,105.41 | 65.241 |

OFFICE-COPY



## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (d) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.

**BIG LOTS!**

OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810475687 | D - 5FT CUPID CASHM | 0.00 | CN | 1 | | 1,509 | 20.68 | 43,138.08 | 08/05/2024 |
| 36011 | 8147-H47709-02 | URNS | | | 1 | | 1,509 | 7.91 | 105,614.91 | |
| 36011005 | Winter Wonder Lane | | 030 | | | | | 69.99 | 59.451 | |
| 1 | 481047568706 | | SEA | 2.903 | XX | | | | | |
| 360 | 810569946 | F - 6.5FT BLITZEN F | 0.00 | CN | 1 | | 1,419 | 29.71 | 59,468.02 | 08/05/2024 |
| 36011 | 8147-H54452-04 | URNS | | | 1 | | 1,419 | 12.20 | 127,695.81 | |
| 36011005 | Winter Wonder Lane | | 030 | | | | | 89.99 | 53.760 | 149.00 |
| 2 | 481056994602 | | SEA | 4.510 | A1 | | | | | |
| 360 | 810569935 | PP - 6.5FT GRAND RA | 0.00 | CN | 1 | | 1,524 | 39.20 | 76,593.19 | 08/05/2024 |
| 36011 | 8147-H71010-01 | LIT6-6.5FT | | | 1 | | 1,524 | 11.06 | 198,104.76 | |
| 36011003 | Winter Wonder Lane | | 030 | | | | | 129.99 | 61.639 | 223.63 |
| 3 | 481056993506 | | SEA | 3.890 | A1 | | | | | |

# Yusen Logistics

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.      **CNS-SZP-2401255**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-016** |
| Buyer/Consignee : **BIG LOTS STORES, LLC** **500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated: **July 12, 2024** |
| Shipment From : **SHENZHEN**      To : **COLUMBUS, OH** | Date of Receipt of Cargo **July 10, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

**PLEASE REFER TO ATTACHED SHEET(S).**

```
                        NOTIFY PARTY: GEODIS
                                      5101 S. BROAD STREET
                                      PHILADELPHIA, PA 19112-1404, U.S.A.
                                      ATTN: ALENA LAMINA
                        ALSO NOTIFY: EDRAY 2020 LLC.
                                      1300 SOUTH MINT STREET SUITE 200
                                      CHARLOTTE NC 28203 USA
                                      TEL: 704-593-6329
                                      EMAIL: DATAQUALITY@EDRAYCPL.COM
                        CY-CY
```

```
        4,452 CARTONS                     473.100 CBM    38,933.01 KGS
        =============================================================
        TOTAL : FOUR THOUSAND FOUR HUNDRED FIFTY-TWO (4,452) CARTONS
        ONLY
```

```
                        "FREIGHT COLLECT"
SHIPMENT PER S.S. "TS MELBOURNE" VOY NO. 0WF1BE1MA    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 15, 2024. CARGO RECEIVED ON July 10, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**      **July 16, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** *For and on behalf of* **Yusen Logistics (Shenzhen) Co., Ltd.** |
| **No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: 1** (Terms and conditions are to be continued to the reverse hereof.) | *Authorized Signature(s)* As Agent (Authorized Signature)      V1 |

# Yusen Logistics

V1

FCR No.    CNS-SZP-2401255                                          Attachment Page 1/1

**Shipping Mark**                          **Description of Goods**

BIG LOTS                                   SHIPPER'S LOAD, COUNT AND SEAL
STORES                                     SAID TO CONTAIN
                                           TCLU4348250        SEAL# R6578441        40'   DRY
PO#                                        APZU4762831        SEAL# R6578485        40'   DRY
SKU#                                       SELU4144115        SEAL# R2172451        40H   DRY
DEPT# 360                                  APZU4790520        SEAL# R6587177        40'   DRY
MADE IN CHINA                              CMAU8240872        SEAL# R6578429        40'   DRY
                                           SELU4142880        SEAL# R2172478        40H   DRY
                                           CMAU8330050        SEAL# R6578424        40'   DRY
                                           APZU4447845        SEAL# R6587174        40'   DRY


                                           ARTIFICIAL XMAS TREE
                                           PO#95209335
                                           4452PCS/4452CTNS
                                           HS CODE: 9505100090

                                           SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH
                                           SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                                           MATERIAL

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any compulsory protection herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever there re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused;

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

   i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

   ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment or engagement.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is ununable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of Company.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the net proceeds of such sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3 Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12 RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

**Tracking details**  `EMPTY IN DEPOT`





**TCLU4348250**  •  42 G1

● RECEIPT
● PORT  Yantian, CH
● PORT  Los Angeles, Ca, US
● DELIVERY  Columbus, Oh, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:21**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Tuesday, 09-JUL-2024 🕐 22:35 | EMPTY TO SHIPPER | YANTIAN | | |
| Wednesday, 10-JUL-2024 🕐 18:22 | READY TO BE LOADED | YANTIAN | | |
| Saturday, 13-JUL-2024 🕐 22:09 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024 🕐 17:00 | VESSEL DEPARTURE | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 🕐 07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Monday, 05-AUG-2024 🕐 10:39 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Saturday, 31-AUG-2024 🕐 12:05 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Saturday, 31-AUG-2024 🕐 12:06 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Saturday, 07-SEP-2024 🕐 23:46 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| Sunday, 08-SEP-2024 🕐 01:01 | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |
| Monday, 09-SEP-2024 🕐 10:40 | CONTAINER TO CONSIGNEE | COLUMBUS, OH | | |
| Wednesday, 11-SEP-2024 🕐 17:57 | EMPTY IN DEPOT | COLUMBUS, OH | | |

**Tracking details** `EMPTY IN DEPOT`





**APZU4762831**  •  42 G1

● **RECEIPT**
● **PORT**  Yantian, CH
● **PORT**  Los Angeles, Ca, US
● **DELIVERY**  Columbus, Oh, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:20**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Tuesday, 09-JUL-2024 🕐 23:29 | EMPTY TO SHIPPER | YANTIAN | | |
| Wednesday, 10-JUL-2024 🕐 19:10 | READY TO BE LOADED | YANTIAN | | |
| Sunday, 14-JUL-2024 🕐 14:55 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024 🕐 17:00 | VESSEL DEPARTURE | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 🕐 07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 04-AUG-2024 🕐 18:23 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Saturday, 31-AUG-2024 🕐 10:14 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Saturday, 31-AUG-2024 🕐 10:15 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Saturday, 07-SEP-2024 🕐 12:59 | TRAIN ARRIVAL FOR IMPORT | COLUMBUS, OH | | |
| Sunday, 08-SEP-2024 🕐 08:55 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| Sunday, 08-SEP-2024 🕐 10:01 | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |
| Tuesday, 10-SEP-2024 🕐 12:32 | CONTAINER TO CONSIGNEE | COLUMBUS, OH | | |
| **Thursday, 12-SEP-2024 🕐 10:16** | EMPTY IN DEPOT | **COLUMBUS, OH** | | |

## Tracking details  `EMPTY IN DEPOT`





CMAU8240872  •  42 G1

● RECEIPT
● PORT  Yantian, CH
● PORT  Los Angeles, Ca, US
● DELIVERY  Columbus, Oh, US

Booking reference

Custom reference
N/A

Exported on
Friday 27-SEP-2024 at 09:20

ⓘ Times reflected are local Times
  Provisional moves are given for
  information purpose only, without
  warranty of any kind either expressed
  or implied, and are subject to change
  at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Wednesday, 10-JUL-2024 🕐 06:19 | EMPTY TO SHIPPER | YANTIAN | | |
| Wednesday, 10-JUL-2024 🕐 15:54 | READY TO BE LOADED | YANTIAN | | |
| Saturday, 13-JUL-2024 🕐 22:05 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024 🕐 17:00 | VESSEL DEPARTURE | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 🕐 07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Monday, 05-AUG-2024 🕐 10:44 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Saturday, 31-AUG-2024 🕐 12:08 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Saturday, 31-AUG-2024 🕐 12:09 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Saturday, 07-SEP-2024 🕐 23:49 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| Sunday, 08-SEP-2024 🕐 01:01 | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |
| Monday, 09-SEP-2024 🕐 08:40 | CONTAINER TO CONSIGNEE | COLUMBUS, OH | | |
| Thursday, 12-SEP-2024 🕐 15:04 | EMPTY IN DEPOT | COLUMBUS, OH | | |

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-016

**Invoice Date.:** July 12, 2024

**Sold To:**  BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:**  500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** TS MELBOURNE / 0WF1BE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** July 14, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** COLUMBUS, OH

**Container Number (Factory Load) :** APZU4447845, APZU4762831, APZU4790520, CMAU8240872, CMAU8330050, SELU4142880, SELU4144115, TCLU4348250

| Cargo Description | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| P/O No.: 95209335 | 1,509 | EA | 20.680/EA | 31,206.120 |
| SKU No.: 810475687 | 1,509 | CTNS | | |
| 5FT CUPID CASHMERE URN TREE | No. of Pallet: | | | |
| HTS Code.: 9505102500 | | | | |
| P/O No.: 95209335 | 1,524 | EA | 39.200/EA | 59,740.800 |
| SKU No.: 810569935 | 1,524 | CTNS | | |
| 6.5FT GRAND RAPIDS FLOCKED TREE | No. of Pallet: | | | |
| HTS Code.: 9505102500 | | | | |
| P/O No.: 95209335 | 1,419 | EA | 29.710/EA | 42,158.490 |
| SKU No.: 810569946 | 1,419 | CTNS | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | |
| HTS Code.: 9505102500 | | | | |
| **Manufacturer Name & Address**<br><br>KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD<br>BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA<br>HUIZHOU, GUANGDONG<br>516800, CHINA | | | | |
| **Total:** (4,452 CTNS) | 4,452 | | | 133,105.410 |
| **TOTAL (USD) DOLLARS : ONE HUNDRED THIRTY-THREE THOUSAND ONE HUNDRED FIVE AND CENTS FORTY-ONE ONLY.** | | | | |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:

APZU4447845/R6587174/40'
APZU4762831/R6578485/40'
APZU4790520/R6587177/40'
CMAU8240872/R6578429/40'
CMAU8330050/R6578424/40'
SELU4142880/R2172478/40H
SELU4144115/R2172451/40H
TCLU4348250/R6578441/40'

APZU4447845/R6587174/40'
APZU4762831/R6578485/40'
APZU4790520/R6587177/40'
CMAU8240872/R6578429/40'
CMAU8330050/R6578424/40'
SELU4142880/R2172478/40H
SELU4144115/R2172451/40H
TCLU4348250/R6578441/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES


PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

## PACKING LIST

**Invoice No.:** PIN24-BLT-016

**Invoice Date.:** July 12, 2024

**Sold To:** BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:** 500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** TS MELBOURNE / 0WF1BE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** July 14, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** COLUMBUS, OH

**Container Number (Factory Load) :** APZU4447845, APZU4762831, APZU4790520, CMAU8240872, CMAU8330050, SELU4142880, SELU4144115, TCLU4348250

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95209335 | | 1,509 EA | 8,769.00 | 9,883.95 | 124.020 |
| **SKU No.:** 810475687 | | 1,509 CTNS | | | |
| 5FT CUPID CASHMERE URN TREE | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209335 | | 1,524 EA | 13,972.00 | 14,036.04 | 167.870 |
| **SKU No.:** 810569935 | | 1,524 CTNS | | | |
| 6.5FT GRAND RAPIDS FLOCKED TREE | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209335 | | 1,419 EA | 14,073.00 | 15,013.02 | 181.210 |
| **SKU No.:** 810569946 | | 1,419 CTNS | | | |
| 6.5FT BLITZEN FLOCKED URN TREE | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** (4,452 CTNS) | | 4,452 | 36,814.00 | 38,933.01 | 473.100 |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
APZU4447845/R6587174/40'
APZU4762831/R6578485/40'
APZU4790520/R6587177/40'
CMAU8240872/R6578429/40'

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
APZU4447845/R6587174/40'
APZU4762831/R6578485/40'
APZU4790520/R6587177/40'
CMAU8240872/R6578429/40'

CMAU8330050/R6578424/40'
SELU4142880/R2172478/40H
SELU4144115/R2172451/40H
TCLU4348250/R6578441/40'

CMAU8330050/R6578424/40'
SELU4142880/R2172478/40H
SELU4144115/R2172451/40H
TCLU4348250/R6578441/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA



**PO #**    **95209362**

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 4 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/08/2024 |
| Cancel if not Shipped by: | 07/15/2024 |
| Must be Routed by: | 06/17/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN        , CN |

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800        Fax:  614-278-3809

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

**Purchase From Vendor:**  1008980

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:      JOE PENG
Telephone:  86-755-6122-6325    Fax    86-755-6122-6326
E-Mail:        JOEPENG@GIFTREE.NET

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 72 | 21,599.28 | 9,266.40 | 48.462 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



OFFICE COPY

**IMPORTANT Terms and Conditions**

PO#: 95209362

securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses'), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute'), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



Case 24-11967-JKS    Doc 1584-2    Filed 01/06/25    Page 77 of 422

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.

OFFICE-COPY

PO#:   95209362

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 360 | 810715793 | GG - 9FT WINDHAM TR | 0.00 | CN | 1 | | 72 | 128.70 | 11,131.78 | 08/26/2024 |
|---|---|---|---|---|---|---|---|---|---|---|
| 36011 | 8147-H59003-02 | LIT7FT&UP | | | 1 | | 72 | 25.91 | 21,599.28 | |
| 36011002 | Winter Wonder Lane | | 030 | | | | | 299.99 | 48.891 | 599.99 |
| 4 | 481071579303 | | SEA | 8.507 | A1 | | | | | |

# Yusen Logistics

Yusen Logistics - Yusen Logistics     Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401559**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No.<br>**PIN24-BLT-024** |
| Buyer/Consignee : **BIG LOTS STORES, LLC**<br>**500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated: **July 30, 2024** |
| Shipment From : **SHENZHEN**       To : **COLUMBUS, OH** | Date of Receipt of Cargo<br>**July 25, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS**<br>**STORES**<br><br>**PO#**<br>**SKU#**<br>**DEPT# 360**<br>**MADE IN CHINA** | | **NOTIFY PARTY: GEODIS**<br>      **5101 S. BROAD STREET**<br>      **PHILADELPHIA, PA 19112-1404, U.S.A.**<br>      **ATTN: ALENA LAMINA**<br>**ALSO NOTIFY: EDRAY 2020 LLC.**<br>      **1300 SOUTH MINT STREET SUITE 200**<br>      **CHARLOTTE NC 28203 USA**<br>      **TEL: 704-593-6329**<br>      **EMAIL: DATAQUALITY@EDRAYCPL.COM**<br><br>**CFS-CY**<br><br>**TCLU9671013 (PART)      SEAL# R7367149      40H  DRY**<br><br><br>**ARTIFICIAL XMAS TREE**<br>**PO#95209362**<br>**72PCS/72CTNS**<br>**HS CODE:9505100090**<br><br>**SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH**<br>**SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING**<br>**MATERIAL** | | |
| | **72 CARTONS** | | **18.108 CBM** | **2,145.00 KGS** |

**TOTAL : SEVENTY-TWO (72) CARTONS ONLY**

**"FREIGHT COLLECT"**
**SHIPMENT PER S.S. "APL ESPLANADE" VOY NO. 0XR5ZE1MA    DISCHARGED AT NORFOLK, VA**
**SAILING ON / ABOUT August 13, 2024. CARGO RECEIVED ON July 25, 2024.**

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                    **July 30, 2024** |
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>*For and on behalf of*<br>**Yusen Logistics (Shenzhen) Co., Ltd.**<br><br>*Authorized Signature(s)*                As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

**1.    DEFINITIONS**

1.1.   "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2.   "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers' Instructions received in writing at the time of receipt.

1.3.   "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.   "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5.   "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.   "Services" means the origin services to be provided by Company and includes the  receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other  services intended to accomplish delivery of the  Cargoes to Company's customer, the ultimate consignee.

1.7.   "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending  upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services,  those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the  remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate  to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever there  re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)   By accepting these Conditions, Shipper  agrees to be bound by all stipulations, exceptions, terms, and conditions on the  front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)   By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)   The description and  particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)   The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other illegal material or substance or stowaways;

e)   The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled,  and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)   Shipper complies with all Laws, requirements,  directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)   Shipper shall provide  the total gross  mass established  using calibrated and certified equipment  of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance  with SOLAS.

h)   Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

i)   Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other  unit load device (each hereafter referred to as a "transport unit") then:

    i)    The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and

    ii)   The cargoes are suitable for carriage and other handling in or on the  transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)   Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)   Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)   Delivery of Cargoes: The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their arrival at destination  and shall pay  all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered  by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or  person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and has expressly accepted in writing to deal  with the Dangerous Goods.  Shipper's notice will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may  apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized  to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from  Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference  between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for  Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

a)   A force majeure event;

b)   Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid by the exercise of reasonable diligence;

c)   Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)   Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)       The landed cost at the destination of only those cargoes damaged or lost (excluding  insurance); or

b)       Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability – Except as set forth in n this  Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of Company.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.   Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever  nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.   Advice and information, in whatever form as may be given  by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.   Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided  by Company.  If any such  claim should nevertheless be made Shipper  shall indemnify Company against all consequences thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper  contracts for itself as well as agents for all the aforesaid persons.

7.4.   Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without  limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub  -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously given to and accepted by Company.  A mere statement or declaration of the value or  nature of cargoes for  insurance or export  or customs or  other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.   SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1   Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.   LIEN, DISPOSAL OF GOODS, ETC.**

11.1   Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or  its affiliates from Shipper or  the ultimate consignee.   Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including  but not limited to storage charges) and in recovering or  attempting to recover any sums due from Shipper  or the ultimate consignee (whether  in respect of the storage and handling herein or otherwise).

11.2   Company shall be entitled to sell (at any time and at any place) at the costs of Shipper  cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.   Company shall be entitled to  claim the difference against Shipper or the ultimate consignee  in the event that  the net (net) sale  proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3   Perishable cargoes which are  not  taken up immediately upon arrival or which are insufficiently  addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall  be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4   The rights of Company under this Section are independent and cumulative.

**12    RATES AND CHARGES**

12.1   Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set  -off.

12.2   Company at its discretion  may request an advance  to cover fees, duties, charges, taxes, and/or other expenses payable  before Shipper's invoice  is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3   On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1   Any claim against Company  must be in writing and delivered  to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)       In the case of damage to goods, the date of  delivery of cargoes;

b)       In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

c)       In any other case, the date of the event giving rise to the claim.

13.2   No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14.   TIME BAR**

14.1   Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date  cargoes arrived at the destination or the date cargoes should have  arrived at the destination (whichever  date is the earlier).

**15.   NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1   Shipper agrees that:  (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of  bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.   GOVERNING LAW**

16.1   These Conditions and any act or contract to which they apply  shall be governed by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

## Tracking details `TRAIN ARRIVAL FOR IMPORT`





**TCLU9671013** • 45 G1

● **RECEIPT**
● **PORT**  Yantian, CH
● **PORT**  Norfolk, Va, US
● **DELIVERY**  Columbus, Oh, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 08:22**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Tuesday, 30-JUL-2024 🕐 11:32 | EMPTY TO SHIPPER | YANTIAN | | |
| Wednesday, 31-JUL-2024 🕐 16:41 | READY TO BE LOADED | YANTIAN | | |
| Tuesday, 13-AUG-2024 🕐 16:22 | LOADED ON BOARD | YANTIAN | APL ESPLANADE | 0XR5ZE1MA |
| Wednesday, 14-AUG-2024 🕐 02:28 | VESSEL DEPARTURE | YANTIAN | APL ESPLANADE | 0XR5ZE1MA |
| Thursday, 19-SEP-2024 🕐 12:00 | VESSEL ARRIVAL | NORFOLK, VA | APL ESPLANADE | 0XR60W1MA |
| Friday, 20-SEP-2024 🕐 02:08 | DISCHARGED | NORFOLK, VA | APL ESPLANADE | 0XR60W1MA |
| Friday, 20-SEP-2024 🕐 17:13 | FULL LOAD ON RAIL FOR IMPORT | NORFOLK, VA | | |
| Monday, 23-SEP-2024 🕐 23:02 | CONTAINER IN TRANSIT FOR IMPORT | NORFOLK, VA | | |
| **Thursday, 26-SEP-2024 🕐 03:02** | TRAIN ARRIVAL FOR IMPORT | COLUMBUS, OH | | |

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-024

**Invoice Date.:** July 30, 2024

**Sold To:** BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:** 500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** APL ESPLANADE / 0XR5ZE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** August 14, 2024

**Port of Entry:** NORFOLK, VA

**Destination:** COLUMBUS, OH

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95209362 | 72 EA | 128.700/EA | 9,266.400 |
| **SKU No.:** 810715793 | 72 CTNS | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | |
| **HTS Code.:** 9505102500 | | | |
| **Manufacturer Name & Address** | | | |
| KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA HUIZHOU, GUANGDONG 516800, CHINA | | | |
| **Total:** (72 CTNS) | 72 | | 9,266.400 |

TOTAL (USD) DOLLARS : NINE THOUSAND TWO HUNDRED SIXTY-SIX AND CENTS FORTY ONLY.

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
TCLU9671013/R7367149/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
TCLU9671013/R7367149/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# PACKING LIST

**Invoice No.:** PIN24-BLT-024

**Invoice Date.:** July 30, 2024

**Sold To:** BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:** 500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** APL ESPLANADE / 0XR5ZE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** August 14, 2024

**Port of Entry:** NORFOLK, VA

**Destination:** COLUMBUS, OH

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95209362 | | 72 EA | 1,678.00 | 2,145.00 | 18.108 |
| **SKU No.:** 810715793 | | 72 CTNS | | | |
| 9FT WINDHAM TREE TWINKLING | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** | **(72 CTNS)** | 72 | 1,678.00 | 2,145.00 | 18.108 |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
TCLU9671013/R7367149/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
TCLU9671013/R7367149/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA



**PO #**      **95317582**

| | |
|---|---|
| Date Created | 04/17/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-YANTIAN ，CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800      Fax:  614-278-3809

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800      Fax: 614-278-6871

**Purchase From Vendor:**    1008980

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:      JOE PENG
Telephone:   86-755-6122-6325    Fax    86-755-6122-6326
E-Mail:      JOEPENG@GIFTREE.NET

**ADDITIONAL COMMENTS**

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 2,496 | 24,935.04 | 5,865.60 | 67.227 |

OFFICE-COPY



OFFICE-COPY

# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC").  A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.

**BIG LOTS!**

OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 360 | 810734180 | 12IN PRELIT HARD NE | 0.00 | CN | 12 | | 2,496 | 2.35 | 8,171.90 | 09/02/2024 |
|---|---|---|---|---|---|---|---|---|---|---|
| 36004 | 8147-H75850-02 | DECWREATHS | | | 1 | | 208 | 0.92 | 24,935.04 | |
| 36004005 | Winter Wonder Lane | | H33 | | | | | 9.99 | 67.462 | 13.80 |
| 1 | 481073418006 | | SEA | 4.069 | A1 | | | | | |

# Yusen Logistics

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401560**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-025** |
| Buyer/Consignee : **BIG LOTS STORES, LLC** **500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated: **July 30, 2024** |
| Shipment From : **SHENZHEN**        To : **COLUMBUS, OH** | Date of Receipt of Cargo **July 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES PO# SKU# DEPT# 360 MADE IN CHINA | NOTIFY PARTY: GEODIS          5101 S. BROAD STREET          PHILADELPHIA, PA 19112-1404, U.S.A.          ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC.          1300 SOUTH MINT STREET SUITE 200          CHARLOTTE NC 28203 USA          TEL: 704-593-6329          EMAIL: DATAQUALITY@EDRAYCPL.COM CFS-CY CMAU7865865 (PART)      SEAL# R7367144          40H  DRY ARTIFICIAL XMAS WREATH PO#95317582 2496PCS/208CTNS HS CODE:9505100090 SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 208 CARTONS | | 24.736 CBM | 1,206.00 KGS |

===============================================================

TOTAL : TWO HUNDRED EIGHT (208) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "APL ESPLANADE" VOY NO. 0XR5ZE1MA    DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT August 13, 2024. CARGO RECEIVED ON July 26, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                    **July 30, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** *For and on behalf of* **Yusen Logistics (Shenzhen) Co., Ltd.** *Authorized Signature(s)*        As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)        V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global  Management Limited trading  or any of its affiliate entities issuing these Conditions in its  capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers' Instructions received  in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions  which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the  receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection,  delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other  services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending  upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provision contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services,  those provisions,  to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the  remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate  to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever incurre  re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper  agrees to be bound  by all stipulations, exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d) The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any operations or transactions that  may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross  mass established  using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy  and timeliness of such gross mass information and will use this to comply with its obligations in accordance  with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or  prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other  unit load device (each hereafter referred to as a "transport unit") then:

i) The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and

ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the  carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with , pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the  delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay  all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered  by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable,  explosive, or which  do or may present a risk of damage to any property or  person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly  accepted in writing to deal  with the Dangerous Goods.  Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate  the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized  to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests or is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from  Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference  between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for  Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding  insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in n this Section, Company shall not  be liable for loss of  or  damage to any cargoes or have any liability whatsoever for any events arising out  or in connection with  the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action  be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions,  or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given  by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub-contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper  contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of  the foregoing this indemnity shall include (without  limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub  -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion  of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any  statute or convention  or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously given to and accepted  by Company.  A mere statement or declaration of the value or  nature of cargoes for insurance or export  or customs or  other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by  the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper, directly or indirectly  in Company's possession, custody, control,  or enroute for  all monies due to Company and/or  its affiliates from Shipper or  the ultimate consignee.  Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including  but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper  or the ultimate consignee (whether  in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper  cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net if expenses) in  or towards the payment of any amount due to Company.  Company shall be entitled to  claim the difference against Shipper or the ultimate consignee  in the event that  the (net) sale proceeds do not discharge in full  the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3 Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently  addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12 RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set  -off.

12.2 Company at its discretion  may request an advance  to cover fees, duties, charges, taxes, and/or other expenses payable  before Shipper's invoice  is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company  must be in writing and delivered  to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of damage;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice thereof received  by Company within three 3 months from the date  cargoes arrived at the destination or the date cargoes should have been  delivered at the destination (whichever  date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or otherwise,  or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply  shall be governed by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

**Tracking details** `RECEIVED FOR IMPORT TRANSFER`





**CMAU7865865**  •  45 G1

● **RECEIPT**
│
● **PORT**  Yantian, CH
│
● **PORT**  Norfolk, Va, US
│
● **DELIVERY**  Columbus, Oh, US

**Booking reference**

**Custom reference**
**N/A**

**Exported on**
**Friday 27-SEP-2024 at 08:19**

ⓘ  Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Tuesday, 30-JUL-2024 11:07 | EMPTY TO SHIPPER | YANTIAN | | |
| Wednesday, 31-JUL-2024 10:27 | READY TO BE LOADED | YANTIAN | | |
| Wednesday, 14-AUG-2024 00:02 | LOADED ON BOARD | YANTIAN | APL ESPLANADE | 0XR5ZE1MA |
| Wednesday, 14-AUG-2024 02:28 | VESSEL DEPARTURE | YANTIAN | APL ESPLANADE | 0XR5ZE1MA |
| Thursday, 19-SEP-2024 12:00 | VESSEL ARRIVAL | NORFOLK, VA | APL ESPLANADE | 0XR60W1MA |
| Thursday, 19-SEP-2024 21:42 | DISCHARGED | NORFOLK, VA | APL ESPLANADE | 0XR60W1MA |
| Friday, 20-SEP-2024 13:15 | FULL LOAD ON RAIL FOR IMPORT | NORFOLK, VA | | |
| Saturday, 21-SEP-2024 08:02 | CONTAINER IN TRANSIT FOR IMPORT | NORFOLK, VA | | |
| Sunday, 22-SEP-2024 14:54 | TRAIN ARRIVAL FOR IMPORT | COLUMBUS, OH | | |
| Monday, 23-SEP-2024 08:08 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| **Monday, 23-SEP-2024 09:20** | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-025

**Invoice Date.:** July 30, 2024

**Sold To:** BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:** 500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** APL ESPLANADE / 0XR5ZE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** August 14, 2024

**Port of Entry:** NORFOLK, VA

**Destination:** COLUMBUS, OH

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95317582 | 2,496   EA | 2.350/EA | 5,865.600 |
| **SKU No.:** 810734180 | 208   CTNS | | |
| 12IN HARDNEEDLE DECORATION WREATH        No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | |
| **Manufacturer Name & Address** | | | |
| KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA HUIZHOU, GUANGDONG 516800, CHINA | | | |
| Total:        (208 CTNS) | 2,496 | | 5,865.600 |
| TOTAL (USD) DOLLARS : FIVE THOUSAND EIGHT HUNDRED SIXTY-FIVE AND CENTS SIXTY ONLY. | | | |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
CMAU7865865/R7367144/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
CMAU7865865/R7367144/40H

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# PACKING LIST

**Invoice No.:** PIN24-BLT-025

**Invoice Date.:** July 30, 2024

**Sold To:**  BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:**  500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** APL ESPLANADE / 0XR5ZE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** August 14, 2024

**Port of Entry:** NORFOLK, VA

**Destination:** COLUMBUS, OH

| Cargo Description | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|
| **P/O No.:** 95317582 | 2,496  EA | 1,067.00 | 1,206.00 | 24.736 |
| **SKU No.:** 810734180 | 208  CTNS | | | |
| 12IN HARDNEEDLE DECORATION WREATH | **No. of Pallet:** | | | |
| **HTS Code.:** 9505102500 | | | | |
| **Total:**     (208 CTNS) | 2,496 | 1,067.00 | 1,206.00 | 24.736 |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
CMAU7865865/R7367144/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
CMAU7865865/R7367144/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

| DC | CONSIGNEE | PO# | Order Amount | INVOICE# | INVOICE AMOUNT | FCR NO. | DATE OF FCR ISSUED | BOOKING NUMBER | BILLOF LOADING NUMBER | ACTRAL ARRIVE DESTINATION DATE | VESSEL VOYAGE | CONTAINER NO | WITHIN 20 DAYS OF SEP. 9TH (Y/N) | SHIPPING LINE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 874 | CLOSEOUT DISTRIBUTION, LLC 4900 E. Dublin Granville Rd Columbus, OH 43081-7651 US Telphone: 614-278-6800 Fax: 614-278-6871 | 95209352 | US$206,658.10 | PIN24-BLT-030 | US$118,334.60 | CNS-SZP-2401754 | 08/15/2024 | SHZ6541416 SHZ6541419 SHZ6538129 SHZ6541417 SHZ6541422 | CMDUSHZ6538129 | 09/30/2024 | (CMDU) CMA CGM NORMA V.1TU9IS1MA | APZU4883113 / CMAU8137139 / CMAU9096986/ TGHU5106498 / TXGU7999209 | N | https://www.cma-cgm.com/ebusiness/tracking |
| | | 95209321 | US$132,581.87 | PIN24-BLT-031 | US$101,980.57 | CNS-SZP-2401824 | 08/21/2024 | 2151312240, 2151312250, 2151312260, 2151312270, 2151312280, 2151312290 | OOLU2151312240 | 09/30/2024 | (OOLU) COSCO SHIPPING ORCHID V.025E | CCLU4936108 / CSNU4088432 / OOCU4958528 / OOCU5008962 / OOLU4424832 / TCLU4250393 | N | https://www.oocl.com/usa/eng/Pages/default.aspx |
| | | 95209358 | US$56,386.13 | PIN24-BLT-029 | US$62,618.33 | CNS-SZP-2401579 | 07/30/2024 | SZPM78764400, SZPM39731700 | SZPM39731700 | 09/24/2024 | (HDMU) YM WARRANTY V.0022E | HMMU9062600 / KOCU9021295 | N | https://www.hmm21.com/e-service/general/trackNTrace/TrackNTrace.do |
| | | 95317580 | US$6,232.20 | | | | | | | | | | | |

US$282,933.50

Attached below: PO, FCR, CONTAINER ARRIVED PROOF, INVOICE, PACKING LIST

# BIG LOTS!

**PO #**    **95209352**

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/24/2024 |
| Cancel if not Shipped by: | 07/01/2024 |
| Must be Routed by: | 06/03/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN        , CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:   570-695-2862

---

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax:  614-278-6871

---

**Purchase From Vendor:   1008980**

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:      JOE PENG
Telephone:   86-755-6122-6325     Fax    86-755-6122-6326
E-Mail:       JOEPENG@GIFTREE.NET

---

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 3,355 | 560,266.45 | 206,658.10 | 62.453 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions



These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO.  The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer.  A BOL in duplicate must accompany all Vendor invoices.  A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual.  Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period").  After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods.  Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms.  For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law.  As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification.  Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records").  Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative.  Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit.  In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice.  Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof.  Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs.  Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls.  A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations.  In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate.  Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above.  When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date.  Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law.  Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods.  Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality.  Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information").  "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods.  Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties.  Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry.  Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13.  Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods.  Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected.  The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption.  Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws").  Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor.  Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses'), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI') signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute'), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.

OFFICE-COPY

PO#:  95209352

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810614468 | N - 7.5FT  CASH/HAR | 0.00 | CN | 1 | | 1,250 | 26.23 | 44,261.50 | 08/05/2024 |
| 36011 | 8147-H60723-01 | LIT7FT&UP | | | 1 | | 1,250 | 9.18 | 124,987.50 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 99.99 | 64.850 | 129.99 |
| 1 | 481061446806 | | SEA | 3.333 | A1 | | | | | |
| 360 | 810715824 | Z - 7.5FT WINDHAM T | 0.00 | CN | 1 | | 1,007 | 82.50 | 101,686.86 | 08/05/2024 |
| 36011 | 8147-H59004-01 | LIT7FT&UP | | | 1 | | 1,007 | 18.48 | 201,389.93 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 199.99 | 49.920 | 399.00 |
| 2 | 481071582402 | | SEA | 6.222 | A1 | | | | | |
| 360 | 810715803 | S - 7.5FT SHOWSHOE | 0.00 | CN | 1 | | 955 | 75.80 | 89,007.91 | 08/05/2024 |
| 36011 | 8147-H66753-01 | LIT7FT&UP | | | 1 | | 955 | 17.40 | 190,990.45 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 199.99 | 53.776 | 299.99 |
| 3 | 481071580309 | | SEA | 5.890 | A1 | | | | | |
| 360 | 810715793 | GG - 9FT WINDHAM TR | 0.00 | CN | 1 | | 143 | 128.70 | 22,108.94 | 08/05/2024 |
| 36011 | 8147-H59003-02 | LIT7FT&UP | | | 1 | | 143 | 25.91 | 42,898.57 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 299.99 | 48.891 | 599.99 |
| 4 | 481071579303 | | SEA | 8.507 | A1 | | | | | |

**Yusen Logistics** - Yusen Logistics          # Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401754**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-030** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC** <br> **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **August 15, 2024** |
| Shipment From : **SHENZHEN**         To : **TREMONT, PA** | Date of Receipt of Cargo <br> **August 13, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| PLEASE REFER TO ATTACHED SHEET(S). | | NOTIFY PARTY: GEODIS <br>          5101 S. BROAD STREET <br>          PHILADELPHIA, PA 19112-1404, U.S.A. <br>          ATTN: ALENA LAMINA <br> ALSO NOTIFY: EDRAY 2020 LLC. <br>          1300 SOUTH MINT STREET SUITE 200 <br>          CHARLOTTE NC 28203 USA <br>          TEL: 704-593-6329 <br>          EMAIL: DATAQUALITY@EDRAYCPL.COM <br> CY-CY | | |

         2,148 CARTONS                    292.790 CBM    28,184.85 KGS
         ================================================================
         TOTAL : TWO THOUSAND ONE HUNDRED FORTY-EIGHT (2,148) CARTONS
         ONLY


                    "FREIGHT COLLECT"
SHIPMENT PER S.S. "CMA CGM NORMA" VOY NO. 1TU9IS1MA    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT August 20, 2024. CARGO RECEIVED ON August 13, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                    **August 15, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) <br> **YUSEN LOGISTICS** <br><br> *For and on behalf of* <br> **Yusen Logistics (Shenzhen) Co., Ltd.** <br><br> *Authorized Signature(s)*          As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** <br> (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)          V2 |

# Yusen Logistics

V2

FCR No.   CNS-SZP-2401754

Attachment Page 1/1

**Shipping Mark**

BIG LOTS
STORES


PO#
SKU#
DEPT# 360
MADE IN CHINA

**Description of Goods**

SHIPPER'S LOAD, COUNT AND SEAL
SAID TO CONTAIN

| | | | |
|---|---|---|---|
| APZU4883113 | SEAL# R7059456 | 40' | DRY |
| CMAU8137139 | SEAL# R7438864 | 40' | DRY |
| CMAU9096986 | SEAL# R7433878 | 40' | DRY |
| TGHU5106498 | SEAL# R7059406 | 40' | DRY |
| TXGU7999209 | SEAL# R2170495 | 40H | DRY |


ARTIFICIAL XMAS TREE
PO#95209352
2148PCS/2148CTNS
HS CODE:9505100090

SHIP TO CODE & LOCATION : 00874-TREMONT, PA
SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
MATERIAL

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the Company's cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1. In the event that any convention contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2. Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3. Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1. Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes in connection with the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

   i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

   ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1. Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2. Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3. Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1. SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2. Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3. Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4. Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5. Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6. Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7. Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of Company.

**6. LIABILITY AND LIMITATIONS**

6.1. SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2. Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3. Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4. Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5. No insurance will be arranged by Company for the benefit of Shipper.

6.6. Entire Liability – Except as set forth in n this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7. Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or default of Company.

6.8. By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of administrative nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing each such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1. Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1. Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1. Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1. Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2. Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes. Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4. The rights of Company under this Section are independent and cumulative.

**12 RATES AND CHARGES**

12.1. Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2. Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3. On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1. Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the date of the event giving rise to the claim.

13.2. No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1. Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1. Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1. These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

**Tracking details** `VESSEL DEPARTURE`





**APZU4883113** • 42 G1

- RECEIPT
- PORT   Yantian, CH
- PORT   New York, Ny, US
- DELIVERY

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:16**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|------|-------|----------|--------|--------|
| Monday, 12-AUG-2024 🕐 01:31 | EMPTY TO SHIPPER | SHEKOU | | |
| Monday, 12-AUG-2024 🕐 16:11 | READY TO BE LOADED | YANTIAN | | |
| Tuesday, 20-AUG-2024 🕐 16:19 | LOADED ON BOARD | YANTIAN | CMA CGM NORMA | 1TU9IS1MA |
| **Tuesday, 20-AUG-2024 🕐 22:48** | VESSEL DEPARTURE | **YANTIAN** | **CMA CGM NORMA** | **1TU9IS1MA** |
| Monday, 30-SEP-2024 🕐 13:00 | VESSEL ARRIVAL | NEW YORK, NY | CMA CGM NORMA | 1TU9JN1MA |

## Tracking details  `VESSEL DEPARTURE`





**CMAU8137139** • 42 G0

- RECEIPT
- PORT  Yantian, CH
- PORT  New York, Ny, US
- DELIVERY

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:16**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|------|-------|----------|--------|--------|
| Tuesday, 13-AUG-2024<br>🕐 02:10 | `EMPTY TO SHIPPER` | SHEKOU | | |
| Tuesday, 13-AUG-2024<br>🕐 15:52 | `READY TO BE LOADED` | YANTIAN | | |
| Tuesday, 20-AUG-2024<br>🕐 14:58 | `LOADED ON BOARD` | YANTIAN | CMA CGM NORMA | 1TU9IS1MA |
| **Tuesday, 20-AUG-2024**<br>🕐 **22:48** | `VESSEL DEPARTURE` | **YANTIAN** | **CMA CGM NORMA** | **1TU9IS1MA** |
| Monday, 30-SEP-2024<br>🕐 13:00 | `VESSEL ARRIVAL` | NEW YORK, NY | CMA CGM NORMA | 1TU9JN1MA |

**Tracking details**  `VESSEL DEPARTURE`

CMA CGM

**CMAU9096986**  ·  42 G1

- **RECEIPT**
- **PORT**  Yantian, CH
- **PORT**  New York, Ny, US
- **DELIVERY**

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:17**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|------|-------|----------|--------|--------|
| Tuesday, 13-AUG-2024 🕐 11:56 | EMPTY TO SHIPPER | SHEKOU | | |
| Wednesday, 14-AUG-2024 🕐 07:30 | READY TO BE LOADED | YANTIAN | | |
| Tuesday, 20-AUG-2024 🕐 14:42 | LOADED ON BOARD | YANTIAN | CMA CGM NORMA | 1TU9IS1MA |
| **Tuesday, 20-AUG-2024 🕐 22:48** | **VESSEL DEPARTURE** | **YANTIAN** | **CMA CGM NORMA** | **1TU9IS1MA** |
| Monday, 30-SEP-2024 🕐 13:00 | VESSEL ARRIVAL | NEW YORK, NY | CMA CGM NORMA | 1TU9JN1MA |

**Tracking details** `VESSEL DEPARTURE`





**TGHU5106498** • 42 G1

RECEIPT

PORT  **Yantian, CH**

PORT  **New York, Ny, US**

DELIVERY

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:17**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|------|-------|----------|--------|--------|
| Monday, 12-AUG-2024  🕐 03:12 | EMPTY TO SHIPPER | SHEKOU | | |
| Monday, 12-AUG-2024  🕐 17:40 | READY TO BE LOADED | YANTIAN | | |
| Tuesday, 20-AUG-2024  🕐 17:36 | LOADED ON BOARD | YANTIAN | CMA CGM NORMA | 1TU9IS1MA |
| **Tuesday, 20-AUG-2024  🕐 22:48** | VESSEL DEPARTURE | **YANTIAN** | **CMA CGM NORMA** | **1TU9IS1MA** |
| Monday, 30-SEP-2024  🕐 13:00 | VESSEL ARRIVAL | NEW YORK, NY | CMA CGM NORMA | 1TU9JN1MA |

## Tracking details  `VESSEL DEPARTURE`

CMA CGM

**TXGU7999209** • 45 G1

- RECEIPT
- PORT  Yantian, CH
- PORT  New York, Ny, US
- DELIVERY

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:18**

Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|------|-------|----------|--------|--------|
| Monday, 12-AUG-2024 09:00 | EMPTY TO SHIPPER | YANTIAN | | |
| Monday, 12-AUG-2024 23:26 | READY TO BE LOADED | YANTIAN | | |
| Tuesday, 20-AUG-2024 15:22 | LOADED ON BOARD | YANTIAN | CMA CGM NORMA | 1TU9IS1MA |
| **Tuesday, 20-AUG-2024 22:48** | VESSEL DEPARTURE | **YANTIAN** | **CMA CGM NORMA** | **1TU9IS1MA** |
| Monday, 30-SEP-2024 13:00 | VESSEL ARRIVAL | NEW YORK, NY | CMA CGM NORMA | 1TU9JN1MA |

# GIFTREE CRAFTS COMPANY LIMITED

Seller reference

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-030

**Invoice Date.:** August 15, 2024

**Sold To:**  CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:**  50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** CMA CGM NORMA / 1TU9IS1MA

**Port of Loading:** YANTIAN

**Ship on or about:** August 20, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** APZU4883113, CMAU8137139, CMAU9096986, TGHU5106498, TXGU7999209

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95209352 | | 1,050 EA | 26.230/EA | 27,541.500 |
| **SKU No.:** 810614468 | | 1,050 CTNS | | |
| 7.5FT CASH/HARD NEEDLE PENCIL TREE | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **P/O No.:** 95209352 | | 143 EA | 128.700/EA | 18,404.100 |
| **SKU No.:** 810715793 | | 143 CTNS | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **P/O No.:** 95209352 | | 955 EA | 75.800/EA | 72,389.000 |
| **SKU No.:** 810715803 | | 955 CTNS | | |
| 7.5FT SHOWSHOE TREE GLITTER | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **Manufacturer Name & Address**<br><br>KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD<br>BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA<br>HUIZHOU, GUANGDONG<br>516800, CHINA | | | | |
| Total: | (2,148 CTNS) | 2,148 | | 118,334.600 |
| TOTAL (USD) DOLLARS : ONE HUNDRED EIGHTEEN THOUSAND THREE HUNDRED THIRTY-FOUR AND CENTS SIXTY ONLY. | | | | |
| | | | | |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
APZU4883113/R7059456/40'

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
APZU4883113/R7059456/40'

CMAU8137139/R7438864/40'
CMAU9096986/R7433878/40'
TGHU5106498/R7059406/40'
TXGU7999209/R2170495/40H

Case 24-11967-JKS    Doc 1584-2

Page 103 of 410
CMAU8137139/R7438864/40'
CMAU9096986/R7433878/40'
TGHU5106498/R7059406/40'
TXGU7999209/R2170495/40H

Filed 01/06/25    Page 111 of 422

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

Seller reference

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# PACKING LIST

**Invoice No.:** PIN24-BLT-030

**Invoice Date.:** August 15, 2024

**Sold To:**  CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:**  50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** CMA CGM NORMA / 1TU9IS1MA

**Port of Loading:** YANTIAN

**Ship on or about:** August 20, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** APZU4883113, CMAU8137139, CMAU9096986, TGHU5106498, TXGU7999209

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95209352 | | 1,050 EA | 7,867.00 | 8,610.00 | 99.100 |
| **SKU No.:** 810614468 | | 1,050 CTNS | | | |
| 7.5FT CASH/HARD NEEDLE PENCIL TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209352 | | 143 EA | 3,674.00 | 4,247.10 | 34.440 |
| **SKU No.:** 810715793 | | 143 CTNS | | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209352 | | 955 EA | 14,678.00 | 15,327.75 | 159.250 |
| **SKU No.:** 810715803 | | 955 CTNS | | | |
| 7.5FT SHOWSHOE TREE GLITTER | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| Total: | (2,148 CTNS) | 2,148 | 26,219.00 | 28,184.85 | 292.790 |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
APZU4883113/R7059456/40'
CMAU8137139/R7438864/40'
CMAU9096986/R7433878/40'
TGHU5106498/R7059406/40'
TXGU7999209/R2170495/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
APZU4883113/R7059456/40'
CMAU8137139/R7438864/40'
CMAU9096986/R7433878/40'
TGHU5106498/R7059406/40'
TXGU7999209/R2170495/40H

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# BIG LOTS!

**PO #**          **95209321**

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/24/2024 |
| Cancel if not Shipped by: | 07/01/2024 |
| Must be Routed by: | 06/03/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN          , CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:   570-695-2862

---

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

**Purchase From Vendor:   1008980**

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:       JOE PENG
Telephone:  86-755-6122-6325    Fax    86-755-6122-6326
E-Mail:       JOEPENG@GIFTREE.NET

---

**ADDITIONAL COMMENTS**

---

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| Vendor Signature | | | | |
| Signee's Name | 4,449 | 429,025.51 | 132,581.87 | 65.326 |
| Title | | | | |
| Date | | | | |

OFFICE-COPY



OFFICE-COPY    **IMPORTANT Terms and Conditions**

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and virtual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810475687 | D - 5FT CUPID CASHM | 0.00 | CN | 1 | | 1,493 | 20.68 | 42,680.69 | 08/05/2024 |
| 36011 | 8147-H47709-02 | URNS | | | 1 | | 1,493 | 7.91 | 104,495.07 | |
| 36011005 | Winter Wonder Lane | | H30 | | | | | 69.99 | 59.451 | 92.00 |
| 1 | 481047568706 | | SEA | 2.903 | XX | | | | | |
| 360 | 810569946 | F - 6.5FT BLITZEN F | 0.00 | CN | 1 | | 1,493 | 29.71 | 62,569.24 | 08/05/2024 |
| 36011 | 8147-H54452-04 | URNS | | | 1 | | 1,493 | 12.20 | 134,355.07 | |
| 36011005 | Winter Wonder Lane | | H30 | | | | | 89.99 | 53.760 | 139.99 |
| 2 | 481056994602 | | SEA | 4.510 | A1 | | | | | |
| 360 | 810569935 | PP - 6.5FT GRAND RA | 0.00 | CN | 1 | | 1,463 | 39.20 | 73,527.45 | 08/05/2024 |
| 36011 | 8147-H71010-01 | LIT6-6.5FT | | | 1 | | 1,463 | 11.06 | 190,175.37 | |
| 36011003 | Winter Wonder Lane | | H30 | | | | | 129.99 | 61.639 | 189.00 |
| 3 | 481056993506 | | SEA | 3.890 | A1 | | | | | |

# Yusen Logistics

Yusen Logistics - Yusen Logistics Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401824**

| | |
|---|---|
| Maker/Supplier: **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-031** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC** **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **August 19, 2024** |
| Shipment From : **SHENZHEN**    To : **TREMONT, PA** | Date of Receipt of Cargo **August 17, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| PLEASE REFER TO ATTACHED SHEET(S). | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM CY-CY | | | |

```
                3,419 CARTONS              342.960 CBM   29,564.75 KGS
                ==========================================================
                TOTAL : THREE THOUSAND FOUR HUNDRED NINETEEN (3,419) CARTONS
                ONLY
```

"FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO SHIPPING ORCHID" VOY NO. 025E    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT August 24, 2024. CARGO RECEIVED ON August 17, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**    **August 21, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** *For and on behalf of* **Yusen Logistics (Shenzhen) Co., Ltd.** *Authorized Signature(s)*    As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)    V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

# Yusen Logistics

V1

**FCR No.**   CNS-SZP-2401824                                   Attachment Page 1/1

**Shipping Mark**                          **Description of Goods**

**BIG LOTS**                               SHIPPER'S LOAD, COUNT AND SEAL
**STORES**                                 SAID TO CONTAIN
                                           CCLU4936108      SEAL# OOLJAR0582      40'  DRY
                                           CSNU4088432      SEAL# OOLJAR0438      40'  DRY
**PO#**                                     OOCU4958528      SEAL# OOLJAR0437      40'  DRY
**SKU#**                                    OOCU5008962      SEAL# OOLJXY2094      40'  DRY
**DEPT# 360**                               OOLU4424832      SEAL# OOLJAR0594      40'  DRY
**MADE IN CHINA**                           TCLU4250393      SEAL# OOLJAR0539      40'  DRY


                                           ARTIFICIAL XMAS TREE
                                           PO#95209321
                                           3419PCS/3419CTNS
                                           HS CODE: 9505100090

                                           SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                                           SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                                           MATERIAL

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers' Instructions received  in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions  which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and  includes the  receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection,  delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other  services intended to accomplish delivery of the  Cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these  Conditions relate s and any other person who is or may become interested in them depending  upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any consignment contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the   remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound  by all stipulations,  exceptions, terms, and conditions on the  front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)    The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other illegal material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any operations or transactions that may affect  the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide  the total gross  mass established  using calibrated and certified equipment of each packed Container (FCL) and each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy  and timeliness of such gross mass information and will use this to comply with its obligations in accordance  with SOLAS. Proper Packing, etc.:  All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

h)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other  unit load device (each hereafter referred to as a "transport unit") then:

i)    The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and

ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)    Fitness of Cargoes:  The cargoes are fit and  suitable for  the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)    Delivery of Cargoes:  The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their arrival at destination  and shall pay  all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered  by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly  accepted in writing to deal  with the Dangerous Goods.  Shipper's notice will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized  to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from  Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference  between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for  Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment or authorization.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding  insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability – Except as set forth in n this Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever for any events arising out  or in connection with  the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2    Advice and information, in whatsoever form as may be given  by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to  impose upon them any liability in  connection with  any Services provided or to be provided  by Company.  If any such  claim should nevertheless be made Shipper  shall indemnify Company against all consequences thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions  were expressly for his  or its benefit.  For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without  limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for  the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention or  contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously given to and accepted by Company.  A mere statement or declaration of the value or nature of cargoes for insurance or export  or customs or  other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper, directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or  its affiliates from Shipper or  the ultimate consignee.   Company may at its sole discretion exercise its lien at  any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its  affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including  but not limited to storage charges) and in recovering or  attempting to recover any sums due from Shipper  or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper  cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.  Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the  (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3    Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently addressed  or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice  to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall  be equivalent to  delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.   Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set  -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes, and/or other expenses payable  before Shipper's invoice  is rendered.  Forthwith upon such request  being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1    Any claim against Company  must be in writing and  delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14.    TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice thereof received  by Company within three 3 months from the date  cargoes arrived at the destination or the date cargoes should have  arrived at the destination (whichever date  is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that:  (a) Company have no obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection  of bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.



# Cargo Tracking

## Search Result - Bill of Lading Number  2151312240

### Summary

| | |
|---|---|
| B/L Vessel Voyage: | COSCO SHIPPING ORCHID 025E |
| Bill of Lading Number: | 2151312240 (B/L Ready) |
| Booking Number: | 2151312270 (Confirmed) |
| | 2151312260 (Confirmed) |
| | 2151312290 (Confirmed) |
| | 2151312280 (Confirmed) |
| | 2151312250 (Confirmed) |
| | 2151312240 (Confirmed) |
| Total Containers: | 6 x 40' General Purpose Container |
| Total Quantity: | 3419 Carton |

| | |
|---|---|
| FND Customs Clearance Code: | E416 |
| Inbound Customs Clearance Status: Note | Cleared  (24 Sep 2024, 14:20 GMT) |
| Payment Status (collect charges): Note | Cleared |
| Cargo Release Status: | Released |
| Original B/L Received by Carrier: | N.A. (Under Sea WayBill) |

[ Containers ] [ Detention & Demurrage ]

| Container Number | Container Size Type | Quantity | Gross Weight | Verified Gross Mass | Latest Event | | | Final Destination |
|---|---|---|---|---|---|---|---|---|
| | | | | | Event | Location | Time | |
| CCLU493610-8 | 40GP | 700 Carton | 4620.000 KGS | 8360.000 KGS (Submitted) | Customs Released | New York, New York, New York, New York, United States | 24 Sep 2024, 10:20 EDT | Tremont, Schuylkill, Pennsylvania, United States appointment to be arranged |
| OOLU442483-2 | 40GP | 445 Carton | 4672.500 KGS | 8272.500 KGS (Submitted) | Customs Released | New York, New York, New York, New York, United States | 24 Sep 2024, 10:20 EDT | Tremont, Schuylkill, Pennsylvania, United States appointment to be arranged |
| CSNU408843-2 | 40GP | 700 Carton | 4620.000 KGS | 8260.000 KGS (Submitted) | Customs Released | New York, New York, New York, New York, United States | 24 Sep 2024, 10:20 EDT | Tremont, Schuylkill, Pennsylvania, United States appointment to be arranged |
| OOCU495852-8 | 40GP | 544 Carton | 5197.750 KGS | 8777.750 KGS (Submitted) | Carrier and Customs Released | New York, New York, New York, New York, United States | 24 Sep 2024, 10:20 EDT | Tremont, Schuylkill, Pennsylvania, United States appointment to be arranged |
| TCLU425039-3 | 40GP | 515 Carton | 5227.250 KGS | 8887.250 KGS (Submitted) | Customs Released | New York, New York, New York, New York, United States | 24 Sep 2024, 10:20 EDT | Tremont, Schuylkill, Pennsylvania, United States appointment to be arranged |
| OOCU500896-2 | 40GP | 515 Carton | 5227.250 KGS | 8797.250 KGS (Submitted) | Customs Released | New York, New York, | 24 Sep 2024, | Tremont, Schuylkill, Pennsylvania, United States appointment to be arranged |

| | | | | | New York, New York, United States | 10:20 EDT | | | |

**Detail of OOCL Container CCLU493610-8**   [Detailed Container Specification Enquiry](#)

Inbound Customs Clearance Status:  Released (24 Sep 2024, 10:20 EDT)

Payment Status (collect charges): *Note*

Linked Reference Number: *Note*

| Routing | Equipment Activities |
|---|---|

| Origin | Empty Pickup Location | Full Return Location | Port of Load | Vessel Voyage | Port of Discharge | Final Destination Hub | Destination | Empty Return Location | Haulage |
|---|---|---|---|---|---|---|---|---|---|
| Yantian, Shenzhen, Guangdong, China | | | Yantian, Shenzhen, Guangdong, China 26 Aug 2024, 11:48 CCT (Actual) | ECX1 COSCO SHIPPING ORCHID 025E (025E) | New York, New York, United States 27 Sep 2024, 23:30 EDT (Estimated) | Maher Terminals LLC 30 Sep 2024, 08:00 EDT (Estimated) | Tremont, Schuylkill, Pennsylvania, United States | Maher Terminals LLC (Subject to Confirmation) | CY/DOOR |

Powered by CargoSmart

| Terms of Use | Privacy and Security Statement | Online Security | Customer Communications Policy |

Copyright © 1998 - 2024. Orient Overseas Container Line Limited. All rights reserved.

 OOIL GROUP

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

## INVOICE

**Invoice No.:** PIN24-BLT-031

**Invoice Date.:** August 19, 2024

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO SHIPPING ORCHID / 025E

**Port of Loading:** YANTIAN

**Ship on or about:** August 26, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** CCLU4936108, CSNU4088432, OOCU4958528, OOCU5008962, OOLU4424832, TCLU4250393

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| P/O No.: 95209321 | | 1,493 | EA | 20.680/EA | 30,875.240 |
| SKU No.: 810475687 | | 1,493 | CTNS | | |
| 5FT CUPID CASHMERE URN TREE | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| P/O No.: 95209321 | | 1,463 | EA | 39.200/EA | 57,349.600 |
| SKU No.: 810569935 | | 1,463 | CTNS | | |
| 6.5FT GRAND RAPIDS FLOCKED TREE | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| P/O No.: 95209321 | | 463 | EA | 29.710/EA | 13,755.730 |
| SKU No.: 810569946 | | 463 | CTNS | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| **Manufacturer Name & Address** | | | | | |
| KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA HUIZHOU, GUANGDONG 516800, CHINA | | | | | |
| Total: | (3,419 CTNS) | 3,419 | | | 101,980.570 |
| **TOTAL (USD) DOLLARS : ONE HUNDRED ONE THOUSAND NINE HUNDRED EIGHTY AND CENTS FIFTY-SEVEN ONLY.** | | | | | |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:

CCLU4936108/OOLJAR0582/40'
CSNU4088432/OOLJAR0436/40'
OOCU4958528/OOLJAR0437/40'
OOCU5008962/OOLJXY2094/40'
OOLU4424832/OOLJAR0594/40'
TCLU4250393/OOLJAR0539/40'

CCLU4936108/OOLJAR0582/40'
CSNU4088432/OOLJAR0436/40'
OOCU4958528/OOLJAR0437/40'
OOCU5008962/OOLJXY2094/40'
OOLU4424832/OOLJAR0594/40'
TCLU4250393/OOLJAR0539/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

Seller reference

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

## PACKING LIST

**Invoice No.:** PIN24-BLT-031

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB YANTIAN

**Country of Origin:** CHINA

**Vessel / Voyage:** COSCO SHIPPING ORCHID / 025E

**Ship on or about:** August 26, 2024

**Invoice Date.:** August 19, 2024

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** CCLU4936108, CSNU4088432, OOCU4958528, OOCU5008962, OOLU4424832, TCLU4250393

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95209321 | | 1,493 EA | 8,946.00 | 9,853.80 | 122.700 |
| **SKU No.:** 810475687 | | 1,493 CTNS | | | |
| 5FT CUPID CASHMERE URN TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209321 | | 1,463 EA | 13,876.00 | 14,849.45 | 161.130 |
| **SKU No.:** 810569935 | | 1,463 CTNS | | | |
| 6.5FT GRAND RAPIDS FLOCKED TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209321 | | 463 EA | 3,945.00 | 4,861.50 | 59.130 |
| **SKU No.:** 810569946 | | 463 CTNS | | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** (3,419 CTNS) | | 3,419 | 26,767.00 | 29,564.75 | 342.960 |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
CCLU4936108/OOLJAR0582/40'
CSNU4088432/OOLJAR0438/40'
OOCU4958528/OOLJAR0437/40'
OOCU5008962/OOLJXY2094/40'

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
CCLU4936108/OOLJAR0582/40'
CSNU4088432/OOLJAR0438/40'
OOCU4958528/OOLJAR0437/40'
OOCU5008962/OOLJXY2094/40'

OOLU4424832/OOLJAR0594/40'
TCLU4250393/OOLJAR0539/40

Page 120 of 410

Case 24-11967-JKS    Doc 1584-2    Filed 01/06/25    Page 128 of 422

OOLU4424832/OOLJAR0594/40'
TCLU4250393/OOLJAR0539/40

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES


PO#
SKU#
DEPT# 360
MADE IN CHINA



| | |
|---|---|
| **PO #** | **95317580** |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 04/17/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/08/2024 |
| Cancel if not Shipped by: | 07/15/2024 |
| Must be Routed by: | 06/17/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-YANTIAN，CN |

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:  570-695-2862

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:   1008980

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:      JOE PENG
Telephone:  86-755-6122-6325      Fax    86-755-6122-6326
E-Mail:      JOEPENG@GIFTREE.NET

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 2,652 | 26,493.48 | 6,232.20 | 67.227 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



**IMPORTANT Terms and Conditions**

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 360 | 810734180 | 12IN PRELIT HARD NE | 0.00 | CN | 12 | | 2,652 | 2.35 | 8,682.65 | 09/02/2024 |
| 36004 | 8147-H75850-02 | DECWREATHS | | | 1 | | 221 | 0.92 | 26,493.48 | |
| 36004005 | Winter Wonder Lane | | H33 | | | | | 9.99 | 67.462 | 13.80 |
| 1 | 481073418006 | | SEA | 4.069 | A1 | | | | | |



**PO #**　　　　**95209358**

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/15/2024 |
| Cancel if not Shipped by: | 07/22/2024 |
| Must be Routed by: | 06/24/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN　　, CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:  570-695-2862

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

**Purchase From Vendor:**  1008980

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA
Contact:      JOE PENG
Telephone:  86-755-6122-6325    Fax    86-755-6122-6326
E-Mail:      JOEPENG@GIFTREE.NET

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 785 | 147,492.15 | 56,386.13 | 59.732 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner, without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



IMPORTANT Terms and Conditions

OFFICE-COPY

Case 24-11967-JKS   Doc 1584-1   Filed 01/13/25   Page 131 of 410

PO#: 95209358

Page 5 of 6

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.

OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810614468 | N - 7.5FT  CASH/HAR | 0.00 | CN | 1 | | 211 | 26.23 | 7,471.34 | 08/26/2024 |
| 36011 | 8147-H60723-01 | LIT7FT&UP | | | 1 | | 211 | 9.18 | 21,097.89 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 99.99 | 64.850 | 129.99 |
| 1 | 481061446806 | | SEA | 3.333 | A1 | | | | | |
| 360 | 810715824 | Z - 7.5FT WINDHAM T | 0.00 | CN | 1 | | 180 | 82.50 | 18,176.40 | 08/26/2024 |
| 36011 | 8147-H59004-01 | LIT7FT&UP | | | 1 | | 180 | 18.48 | 35,998.20 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 199.99 | 49.920 | 399.00 |
| 2 | 481071582402 | | SEA | 6.222 | A1 | | | | | |
| 360 | 810715803 | S - 7.5FT SHOWSHOE | 0.00 | CN | 1 | | 278 | 75.80 | 25,910.16 | 08/26/2024 |
| 36011 | 8147-H66753-01 | LIT7FT&UP | | | 1 | | 278 | 17.40 | 55,597.22 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 199.99 | 53.776 | 299.99 |
| 3 | 481071580309 | | SEA | 5.890 | A1 | | | | | |
| 360 | 810715793 | GG - 9FT WINDHAM TR | 0.00 | CN | 1 | | 116 | 128.70 | 17,934.53 | 08/26/2024 |
| 36011 | 8147-H59003-02 | LIT7FT&UP | | | 1 | | 116 | 25.91 | 34,798.84 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 299.99 | 48.891 | 599.99 |
| 4 | 481071579303 | | SEA | 8.507 | A1 | | | | | |

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401579**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-029** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC** **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **July 30, 2024** |
| Shipment From : **SHENZHEN**    To : **TREMONT, PA** | Date of Receipt of Cargo **July 29, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **PLEASE REFER TO ATTACHED SHEET(S).** | **NOTIFY PARTY: GEODIS** **5101 S. BROAD STREET** **PHILADELPHIA, PA 19112-1404, U.S.A.** **ATTN: ALENA LAMINA** **ALSO NOTIFY: EDRAY 2020 LLC.** **1300 SOUTH MINT STREET SUITE 200** **CHARLOTTE NC 28203 USA** **TEL: 704-593-6329** **EMAIL: DATAQUALITY@EDRAYCPL.COM** **CY-CY** | | | |

**1,006 CARTONS**                                    **151.380 CBM    14,353.00 KGS**
======================================================================
**TOTAL : ONE THOUSAND SIX (1,006) CARTONS ONLY**

**"FREIGHT COLLECT"**
**SHIPMENT PER S.S. "YM WARRANTY" VOY NO. 0022E    DISCHARGED AT NEW YORK, NY**
**SAILING ON / ABOUT August 5, 2024. CARGO RECEIVED ON July 29, 2024.**

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                    **July 30, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** *For and on behalf of* **Yusen Logistics (Shenzhen) Co., Ltd.** *Authorized Signature(s)*    As Agent |
| **No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: 1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)    V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

# Yusen Logistics

Yusen Logistics - Yusen Logistics                    Yusen Logistics - Yusen Logistics

V1

**FCR No.**    CNS-SZP-2401579                            Attachment Page 1/1

**Shipping Mark**                              **Description of Goods**

**BIG LOTS**                                  SHIPPER'S LOAD, COUNT AND SEAL
**STORES**                                    SAID TO CONTAIN
                                              HMMU9062600           SEAL# 24H0791981        45'  DRY
**PO#**                                       KOCU9021295           SEAL# 24H0794736        45'  DRY
**SKU#**
**DEPT# 360**
**MADE IN CHINA**
                                              ARTIFICIAL XMAS TREE
**BIG LOTS**                                  PO#95209358
**STORES**                                    785PCS/785CTNS
                                              HS CODE:9505100090
**PO#**
**SKU#**                                      ARTIFICIAL XMAS WREATH
**DEPT# 360**                                 PO#95317580
**MADE IN CHINA**                             2652PCS/221CTNS
                                              HS CODE:9505100090


                                              SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                                              SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                                              MATERIAL

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions  which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the  receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other  services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending  upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any convention contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services,  those provisions,  to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the   remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate  to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever resulting  re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:
a)  By accepting these Conditions, Shipper  agrees to be bound  by all stipulations,  exceptions, terms, and conditions on the  front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)  By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)  The description and  particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b) are full and accurate;

d)  The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other illegal material or substance or stowaways;

e)  The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled,  and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)  Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)  Shipper shall provide  the total gross  mass established  using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy  and timeliness of such gross mass information and will use this to comply with its obligations in accordance  with SOLAS.

h)  Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently  packed and/or prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

i)  Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other  unit load device (each hereafter referred to as a "transport unit") then:
   i)     The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and
   ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)  Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)  Fitness of Cargoes: The cargoes are fit and suitable for their  collection (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)  Delivery of Cargoes: The consignee or other person entitled to the  delivery of the goods shall take delivery of the goods upon their  arrival at destination  and shall pay  all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered  by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable,  explosive, or which  do or may present a risk of damage to any property or  person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly  accepted in writing to deal  with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly  marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply  to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMERWILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized  to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests or is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from  Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or having to obtain  agreement from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for  Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment or authority.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND/OR SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

a)      A force majeure event;

b)      Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid by the exercise of reasonable diligence;

c)      Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)      Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)      The landed cost at the destination of only those cargoes damaged or lost (excluding  insurance); or

b)      Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in in this Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever for any events arising out  or in connection with  the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including loss  or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of Company.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of administration nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2 Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted by  Shipper is provided  gratuitously and without liability.

7.3 Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with  any Services provided or to be provided  by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences thereof.  Without prejudice to the foregoing such  officer, servant, agent, and sub-contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without  limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any  statute or convention or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously given to and accepted by Company.  A mere statement or declaration of the value or nature of cargoes for  insurance or export  or customs or  other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or  its affiliates from Shipper or  the ultimate consignee.  Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper  or the ultimate consignee (whether  in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper  cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.  Company shall be entitled to  claim the difference against Shipper  or the ultimate consignee in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes. Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall  be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12 RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set  -off.

12.2 Company at its discretion  may request an advance  to cover fees, duties, charges, taxes, and/or other expenses payable  before Shipper's invoice is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)      In the case of damage to goods, the date of delivery of cargoes;

b)      In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c)      In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived  at the destination (whichever  date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that:  (a) Company shall have no obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection  of bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive  jurisdiction of  the courts of the Hong Kong Special Administrative Region.

# Track & Trace

**B/L No.**

SZPM39731700

## Tracking Result



YANTIAN, SHENZHEN, CHINA

NEW YORK, NY

TREMONT, PA

| | Origin | Loading Port | Discharging Port | Destination |
|---|---|---|---|---|
| **Location** | YANTIAN, SHENZHEN, CHINA | YANTIAN, SHENZHEN, CHINA | NEW YORK, NY | TREMONT, PA |
| **Terminal** | YANTIAN INT'L CONTAINER TERMINAL LTD. | YANTIAN INT'L CONTAINER TERMINAL LTD. | PORT LIBERTY BAYONNE LLC | USTPDZON ZONE |
| **Arrival(ETB)** | | 2024-07-29 03:27 | 2024-09-19 18:26 | 2024-09-24 12:00 |
| **Departure** | 2024-07-27 13:52 | 2024-08-06 22:43 | | |

· The arrival date & time at discharging port is set as ETB (Estimated time of Berthing)
· Blue : Estimated Date & Time
· Red : Actual Date & Time
· All dates and times are local dates and times.
· Estimated data is given without guarantee and subject to change without prior notice.
· If your shipment is blank now, please contact with HMM for more details.

| No. | Container No. | Trailer No. | Cargo Type | Type / Size | Weight | B/L No. | Cell No. | Service Term | B/L Status | Seal No. | Movement | Last Movement Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **HMMU9062600** | | DC | DC/45 | 6791.4 | SZPM39731700 | | CY-DR | Waybill | 24H0791981 | Truck Full Container Door Delivery | 2024-09-24 12:00 |
| 2 | KOCU9021295 | | DC | DC/45 | 7561.6 | SZPM39731700 | | CY-DR | Waybill | 24H0794736 | Truck Full Container Door Delivery | 2024-09-24 12:00 |

· You can view Track & Trace results when clicking Container number.

## Current Location

| Location | Date / Time | Status Description |
|---|---|---|
| TREMONT, PA | 2024-09-24 12:00 | Truck Full Container Door Delivery |

· Blue : Estimated Date & Time
· The Status Description is shown per BL basis thus please check the individual container status at DEM/DET menu.

## Vessel Movement

| Vessel / Voyage | Route | Loading Port | Departure | Discharging Port | Arrival |
|---|---|---|---|---|---|
| YM WARRANTY 0022E | EC1 | YANTIAN, SHENZHEN, CHINA | 2024-08-06 22:43 | NEW YORK, NY | 2024-09-19 18:26 |

· If your T/S vessel movement is not reflected on HMM website, Please contact HMM

## Customs Status

| Nation / Item | US / AMS | Canada / ACI | EU / ENS | U.K. / SNS | China / CAMS | Japan / AFR |
|---|---|---|---|---|---|---|
| Status(Origin) | Filed | | | | | |
| Status(Customs Release) | Released | | | | | |

## Cargo Delivery Information (US Import Only)

| | |
|---|---|
| Way Bill | Issued : 2024-08-12 |
| Freight | |
| US Custom | Cleared : 2024-09-11 |
| Firms Code | E364 |
| Delivery Order | Delivery Order on file |

## Empty Container Return Location

| Empty Container Return Location | Address |
|---|---|
| Port Liberty Bayonne LLC | 302 PORT JERSEY BLVD JERSEY CITY, NJ |

## Shipment Progress

| Date | Time | Location | Status Description | Mode |
|------|------|----------|-------------------|------|
| 2024-09-24 | 12:00 | TREMONT, PA | Truck Full Container Door Delivery | Truck |
| 2024-09-24 | 07:33 | NEW YORK, NY | Import Truck Gate Out from Terminal | Truck |
| 2024-09-21 | 13:53 | NEW YORK, NY | Vessel Discharged at POD | YM WARRANTY 0022E |
| 2024-09-19 | 18:26 | NEW YORK, NY | Vessel Berthing at POD | YM WARRANTY 0022E |
| 2024-09-19 | 14:26 | NEW YORK, NY | Vessel Arrival at POD | YM WARRANTY 0022E |
| 2024-08-06 | 22:43 | YANTIAN, SHENZHEN, CHINA | Vessel Departure from POL | YM WARRANTY 0022E |
| 2024-08-06 | 09:05 | YANTIAN, SHENZHEN, CHINA | Vessel Loading at POL | YM WARRANTY 0022E |
| 2024-07-29 | 03:27 | YANTIAN, SHENZHEN, CHINA | Export Truck Gate In to Terminal | Truck |
| 2024-07-27 | 13:52 | YANTIAN, SHENZHEN, CHINA | Export Empty Container Released | Truck |

· Tracking results are provided by HMM Co.,Ltd : 2024-09-28 Saturday 10:37

# GIFTREE CRAFTS COMPANY LIMITED

Seller reference

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN,
GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-029

**Invoice Date.:** July 30, 2024

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** YM WARRANTY / 0022E

**Port of Loading:** YANTIAN

**Ship on or about:** August 06, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** HMMU9062600, KOCU9021295

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95209358 | | 211 EA | 26.230/EA | 5,534.530 |
| **SKU No.:** 810614468 | | 211 CTNS | | |
| 7.5FT CASH/HARD NEEDLE PENCIL TREE | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **P/O No.:** 95209358 | | 116 EA | 128.700/EA | 14,929.200 |
| **SKU No.:** 810715793 | | 116 CTNS | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **P/O No.:** 95209358 | | 278 EA | 75.800/EA | 21,072.400 |
| **SKU No.:** 810715803 | | 278 CTNS | | |
| 7.5FT SHOWSHOE TREE GLITTER | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **P/O No.:** 95209358 | | 180 EA | 82.500/EA | 14,850.000 |
| **SKU No.:** 810715824 | | 180 CTNS | | |
| 7.5FT WINDHAM TREE TWINKLING | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **P/O No.:** 95317580 | | 2,652 EA | 2.350/EA | 6,232.200 |
| **SKU No.:** 810734180 | | 221 CTNS | | |
| 12IN HARDNEEDLE DECORATION WREATH | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |

Manufacturer Name & Address

KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA

HUIZHOU , GUANGDONG
516800, CHINA

| | Total: | (1,006 CTNS) | 3,437 | 62,618.330 |
|---|---|---|---|---|

**TOTAL (USD) DOLLARS : SIXTY-TWO THOUSAND SIX HUNDRED EIGHTEEN AND CENTS THIRTY-THREE ONLY.**

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
HMMU9062600/24H0791981/45'
KOCU9021295/24H0794736/45'

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
HMMU9062600/24H0791981/45'
KOCU9021295/24H0794736/45'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

Seller reference

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

---

# PACKING LIST

---

**Invoice No.:** PIN24-BLT-029

**Invoice Date.:** July 30, 2024

**Sold To:**   CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:**   50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** YM WARRANTY / 0022E

**Port of Loading:** YANTIAN

**Ship on or about:** August 06, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** HMMU9062600, KOCU9021295

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95209358 | | 211  EA | 1,627.00 | 1,730.20 | 19.910 |
| **SKU No.:** 810614468 | | 211  CTNS | | | |
| 7.5FT CASH/HARD NEEDLE PENCIL TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209358 | | 116  EA | 2,845.00 | 3,445.20 | 27.940 |
| **SKU No.:** 810715793 | | 116  CTNS | | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209358 | | 278  EA | 3,678.00 | 4,461.90 | 46.360 |
| **SKU No.:** 810715803 | | 278  CTNS | | | |
| 7.5FT SHOWSHOE TREE GLITTER | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209358 | | 180  EA | 2,764.00 | 3,456.00 | 31.710 |
| **SKU No.:** 810715824 | | 180  CTNS | | | |
| 7.5FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95317580 | | 2,652  EA | 1,172.00 | 1,259.70 | 25.460 |
| **SKU No.:** 810734180 | | 221  CTNS | | | |
| 12IN HARDNEEDLE DECORATION WREATH | No. of Pallet: | | | | |

**HTS Code.:** 9505102500 Case 24-11967-JKS    Doc 1584-2    Filed 01/06/25    Page 154 of 422

| | Total: | (1,006 CTNS) | 3,437 | 12,086.00 | 14,353.00 | 151.380 |
|---|---|---|---|---|---|---|

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
HMMU9062600/24H0791981/45'
KOCU9021295/24H0794736/45'

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
HMMU9062600/24H0791981/45'
KOCU9021295/24H0794736/45'

We certify that there is no wood packing material in the shipment.

<u>**Carton Marks And Number**</u>

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

United States Bankruptcy Court, District of Delaware

**Fill in this information to identify the case (Select only one Debtor per claim form):**

**Debtor:** CSC Distribution LLC

**Case Number:** 24-11974

## Modified Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| 1. | Who is the current creditor? | GIFTREE CRAFTS COMPANY LIMITED |
| --- | --- | --- |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor |

| 2. | Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? |
| --- | --- | --- |

| 3. | Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| --- | --- | --- |
| | | Address1: King Tree Office, West Fl.6th, Bldg 4, Feilette Industrial Park,<br>Address2: No.88 Jiaoyu North Rd. Pingdi Town,<br>Address3:<br>Address4:<br>City: Shenzhen<br>State: Guang Dong<br>Postal Code: 518117<br>Country: China<br>Contact phone +86-13823169463<br>Contact email joepeng@giftree.net | Address1:<br>Address2:<br>Address3:<br>Address4:<br>City:<br>State:<br>Postal Code:<br>Country:<br>Contact phone<br>Contact email |

| 4. | Does this claim amend one already filed? | ☐ No<br>☑ Yes. Claim number on court claims registry (if known) 922 | 09/19/2024<br>Filed on MM / DD / YYYY |
| --- | --- | --- | --- |

| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? |
| --- | --- | --- |

**Claim Number: 1778**                    **Proof of Claim**                    page 1

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?** $ 154,338.65 . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

GOODS SOLD

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☐ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**Proof of Claim**                                                                 page 2

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

|  | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(    ) that applies. | $_____ |

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

☐ No

☑ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.**    $ 140,969.15

---

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

*HUA PENG*                    10/04/2024

_____        _____
Electronic Signature              Date

**Name of the person who is completing and signing this claim**

Name    HUA PENG

| First name | Middle name | Last name |
|---|---|---|

Title/Company    MANAGER / GIFTREE CRAFTS COMPANY LIMITED

Identify the corporate servicer as the company if the authorized agent is a servicer.

Address    West Fl.6th, Bldg 4, Feilette Industrial Park,

No.88 Jiaoyu North Rd. Pingdi Town,

| Number    Street |
|---|

| Shenzhen | Guang Dong | 518117 | China |
|---|---|---|---|
| City | State | ZIP Code | Country |

Contact phone    +86-13823169463        Email    joepeng@giftree.net

**Additional Noticing Addresses (if provided):**

**Additional Address 1**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Address 2**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
 Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Supporting Documentation Provided**
☑ Yes
☐ No
--------------------------------------------------------------------------------------------------------------
Attachment Filename:

DC870 PROOF DOCUMENTS OF CLAIM _CSC DISTRIBUTION LLC.pdf

**KROLL**

# PO/INVOICE STATEMENT

| DC | CONSIGNEE | PO# | Order Amount | INVOICE# | INVOICE AMOUNT | FCR NO. | DATE OF FCR ISSUED | BILL OF LADING # | VESSEL /VOYAGE | BOOKING NUMBER | CONTAINER NO | GOODS RECEIVED DAY AT FINAL DESTINATION | WITHIN 20 DAYS OF SEP. 9TH (Y/N) | SHIPPING LINE/CONTAINER TRACKING LINK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 870 | CSC DISTRIBUTION, LLC 4900 E. Dublin Granville Rd Columbus, OH 43081-7651 US Telephone: 614-278-6800 Fax:  614-278-6871 | 95209320 | US$132,480.95 | PIN24-BLT-001 | US$13,369.50 | CNS-SZP-2401032 | 07/23/2024 | MAEU239855558 | (MAEU) ZIM HONG KONG V.027E | 239855558 | MSKU6728030 | 08/12/2024 | N | https://www.maersk.com.cn/tracking/239855558 |
| | | | | PIN24-BLT-005 | US$15,300.65 | CNS-SZP-2401105 | 07/22/2024 | KFUNTCS8YO78465 | (TOPO) ALULA EXPRESS V.033E | HKGEB9298700 | ONEU0845447 | 09/05/2024 | Y | https://ecomm.one-line.com/one-ecom/manage-shipment/cargo-tracking?ctrack-field=ONEU0845447&trakNoParam=ONEU0845447 |
| | | 95209351 | 313807.53 | PIN24-BLT-021 | US$125,668.50 | CNS-SZP-2401361 | 07/17/2024 | CMDUSHZ6422787 | (CMDU) XIN MEI ZHOU V.0TYIBE1MA | SHZ6422787 | CMAU8685359 | 08/23/2024 | Y | https://www.cma-cgm.com/ebusiness/tracking |
| | | | | | | | | | | SHZ6423162 | CMAU9448259 | 08/23/2024 | | |
| | | | | | | | | | | SHZ6423164 | FCIU7260437 | 08/23/2024 | | |
| | | | | | | | | | | SHZ6423151 | TLLU4935179 | 08/23/2024 | | |
| | **TOTAL** | | | | **US$154,338.65** | | | | | | | | | |

Total Claim AMT: **US$154,338.65**

Within 20days AMT: **US$140,969.15**

REMARK:

Goods received day was determined when goods arrived at Big Lots DC according to the terms and conditions Point 2 on the purchase order. It said that Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

**Attached below: PO, FCR, CONTAINER ARRIVED PROOF, INVOICE,  PACKING LIST**



**PO #**    **95209320**

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN        , CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:   334-286-7024

---

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

**Purchase From Vendor:   1008980**

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:      JOE PENG
Telephone:   86-755-6122-6325    Fax    86-755-6122-6326
E-Mail:        JOEPENG@GIFTREE.NET

---

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 4,455 | 428,605.45 | 132,480.95 | 65.362 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate(s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or take or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|------------|--------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810475687 | D - 5FT CUPID CASHM | 0.00 | CN | 1 | | 1,505 | 20.68 | 43,023.74 | 08/05/2024 |
| 36011 | 8147-H47709-02 | URNS | | | 1 | | 1,505 | 7.91 | 105,334.95 | |
| 36011005 | Winter Wonder Lane | | H30 | | | | | 69.99 | 59.451 | 92.00 |
| 1 | 481047568706 | | SEA | 2.903 | XX | | | | | |
| 360 | 810569946 | F - 6.5FT BLITZEN F | 0.00 | CN | 1 | | 1,505 | 29.71 | 63,072.14 | 08/05/2024 |
| 36011 | 8147-H54452-04 | URNS | | | 1 | | 1,505 | 12.20 | 135,434.95 | |
| 36011005 | Winter Wonder Lane | | H30 | | | | | 89.99 | 53.760 | 139.99 |
| 2 | 481056994602 | | SEA | 4.510 | A1 | | | | | |
| 360 | 810569935 | PP - 6.5FT GRAND RA | 0.00 | CN | 1 | | 1,445 | 39.20 | 72,622.81 | 08/05/2024 |
| 36011 | 8147-H71010-01 | LIT6-6.5FT | | | 1 | | 1,445 | 11.06 | 187,835.55 | |
| 36011003 | Winter Wonder Lane | | H30 | | | | | 129.99 | 61.639 | 189.00 |
| 3 | 481056993506 | | SEA | 3.890 | A1 | | | | | |

# Yusen Logistics

Yusen Logistics - Yusen Logistics

Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401032**

| | |
|---|---|
| Maker/Supplier: **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-001** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **June 28, 2024** |
| Shipment From : **SHENZHEN**    To : **MONTGOMERY, AL** | Date of Receipt of Cargo **June 25, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                  NOTIFY PARTY: GEODIS
STORES                                  5101 S. BROAD STREET
                                        PHILADELPHIA, PA 19112-1404, U.S.A.
PO#                                     ATTN: ALENA LAMINA
SKU#                      ALSO NOTIFY: EDRAY 2020 LLC.
DEPT# 360                               1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                           CHARLOTTE NC 28203 USA
                                        TEL: 704-593-6329
                                        EMAIL: DATAQUALITY@EDRAYCPL.COM

                          CY-CY

                          SHIPPER'S LOAD, COUNT AND SEAL
                          SAID TO CONTAIN
                          MSKU6728030          SEAL# CN8235429          40'  DRY


                          ARTIFICIAL XMAS TREE
                          PO#95209320
                          450PCS/450CTNS
                          HS CODE:9505100090

                          SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                          SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                          MATERIAL


                          450 CARTONS              57.460 CBM   4,725.00 KGS
                          ====================================================
                          TOTAL : FOUR HUNDRED FIFTY (450) CARTONS ONLY

                               "FREIGHT COLLECT"
SHIPMENT PER S.S. "ZIM HONG KONG" VOY NO. 027E   DISCHARGED AT MOBILE, AL
SAILING ON / ABOUT July 9, 2024. CARGO RECEIVED ON June 25, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                    **July 23, 2024** |
|---|---|

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**

*For and on behalf of*
**Yusen Logistics (Shenzhen) Co., Ltd.**

*Authorized Signature(s)*    As Agent

(Authorized Signature)    V1

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers' Instructions received  in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering  items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions  which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the  receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other  services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending  upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services,  those provisions, to the extent of such inconsistency,  shall be null and  void in relation to such element of the Services by Company, but the   remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and  enforceable.

2.2    Nothing in these Conditions shall operate  to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever  re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound  by all stipulations,  exceptions, terms, and conditions on the  front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)    The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other illegal material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled,  and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide the total gross mass established  using calibrated and certified equipment of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance  with SOLAS.

h)    Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently  packed and/or prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused;

i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other  unit load device (each hereafter referred to as a "transport unit") then:

    i)     The transport unit is in good condition, is  suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and

    ii)    The cargoes are suitable for carriage and other handling in or on the  transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values, and other   particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)    Fitness of Cargoes:  The cargoes are fit  and suitable for carriage (internal as well  as local), storage, packing, unpacking, and other handling in accordance with,  pursuant, related, or incidental to Shipper's Instructions.

l)    Delivery of Cargoes:  The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their arrival at destination and shall  pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered  by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or  person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly  accepted in writing to deal  with the Dangerous Goods.  Shipper's notice will include all information necessary for Company to perform  its obligation  in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of  the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate  the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in  breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized  to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to and the charges payable by Shipper, it being agreed that the difference  between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY:  (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes – Without prejudice to any other  right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding  insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability – Except as set forth in in this Section, Company shall not  be liable for loss of  or damage to any cargoes or have any liability whatsoever for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful conduct, or otherwise.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without   limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority)  arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.    Advice and information, in whatever form as may be given by  Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof.  Without prejudice to the foregoing such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit.  For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of  the foregoing this indemnity shall include (without  limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously given to and accepted by Company.  A mere statement or declaration of the value or nature of cargoes for insurance or export  or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper, directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or  its affiliates from Shipper or  the ultimate consignee.   Company may at  its sole discretion exercise its lien at any  time and at any place.  The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including  but not limited to storage charges) and in recovering or  attempting to recover  any sums due from Shipper or the ultimate consignee (whether  in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper  cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.   Company shall be entitled to  claim the difference against Shipper or the ultimate consignee  in the event that the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall survive delivery or deemed delivery of cargoes.  Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently addressed  or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall  be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set  -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes, and/or other expenses payable  before Shipper's invoice  is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1    Any claim against Company  must be in writing  and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14.    TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice thereof received  by Company within three  3 months from the date cargoes arrived at the destination or the date cargoes should have  arrived at the destination (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that:  (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of  bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions and any act or contract to which they apply  shall be governed by and construed according to the laws of the Hong Kong Special  Administrative Region.   Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

Select your booking type from **Ocean, Air or Less-than-container-load (LCL)** and enter your tracking number to view full tracking details.

| Ocean cargo ⌄ | 239855558 | ⊗ | Track |

Container number is made of 4 letters and 7 digits.
Bill of Lading number consists of 9 characters.



**Bill of Lading number**
239855558

**From**
YANTIAN

**To**
MONTGOMERY

View Shipment Details

🔲 **MSKU6728030** | 40' Dry Standard                    ↺

📅 **Estimated arrival date**
28 Aug 2024 07:40

📍 **Last location**
Empty container return •
MOBILE, UNITED STATES •
28 Aug 2024

Note: All times are given in local time, unless otherwise stated.

**Yantian**
Yantian Wan Yong Lian
→| Gate out Empty
25 Jun 2024 11:29

**YANTIAN**
YanTian Intl. Container Terminal
|→ Gate in
25 Jun 2024 22:40

Load
08 Jul 2024 05:46

Vessel departure (ZIM HONG KONG / 027E)
09 Jul 2024 02:54



**MOBILE**
Mobile Container Terminal ( R103 )
Vessel arrival (ZIM HONG KONG / 027E)
12 Aug 2024 05:33

Discharge
12 Aug 2024 19:35

Gate out
16 Aug 2024 09:12

Empty container return
28 Aug 2024 07:40

ⓘ Expecting to see more containers here? Go to Shipment Details to get a view of all of your unassigned containers

Go to Shipment Details

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-001

**Invoice Date.:** June 28, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** ZIM HONG KONG / 027E

**Port of Loading:** YANTIAN

**Ship on or about:** July 09, 2024

**Port of Entry:** MOBILE, AL

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** MSKU6728030

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| P/O No.: 95209320 | | 450 | EA | 29.710/EA | 13,369.500 |
| SKU No.: 810569946 | | 450 | CTNS | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA HUIZHOU, GUANGDONG 516800, CHINA | | | | |
| | Total: | (450 CTNS) | | 450 | 13,369.500 |
| TOTAL (USD) DOLLARS : THIRTEEN THOUSAND THREE HUNDRED SIXTY-NINE AND CENTS FIFTY ONLY. | | | | | |
| | | | | | |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
MSKU6728030/CN8235429/40'

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
MSKU6728030/CN8235429/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# PACKING LIST

**Invoice No.:** PIN24-BLT-001

**Invoice Date.:** June 28, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** ZIM HONG KONG / 027E

**Port of Loading:** YANTIAN

**Ship on or about:** July 09, 2024

**Port of Entry:** MOBILE, AL

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** MSKU6728030

| Cargo Description | Quantity (Unit) | | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95209320 | 450 | EA | 3,946.00 | 4,725.00 | 57.460 |
| SKU No.: 810569946 | 450 | CTNS | | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| **Total:** (450 CTNS) | 450 | | 3,946.00 | 4,725.00 | 57.460 |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
MSKU6728030/CN8235429/40'

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
MSKU6728030/CN8235429/40'

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401105**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-005** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC**<br>**2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated:  **July 06, 2024** |
| Shipment From : **SHENZHEN**          To : **MONTGOMERY, AL** | Date of Receipt of Cargo **July 05, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#<br>SKU#<br>DEPT# 360<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>          5101 S. BROAD STREET<br>          PHILADELPHIA, PA 19112-1404, U.S.A.<br>          ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>          1300 SOUTH MINT STREET SUITE 200<br>          CHARLOTTE NC 28203 USA<br>          TEL: 704-593-6329<br>          EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CY-CY<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>ONEU0845447          SEAL# CNCS53432          40H  DRY<br><br><br>ARTIFICIAL XMAS TREE<br>PO#95209320<br>515PCS/515CTNS<br>HS CODE:9505100090<br><br>SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 515 CARTONS | | 65.760 CBM | 5,407.50 KGS |

```
==========================================================
TOTAL : FIVE HUNDRED FIFTEEN (515) CARTONS ONLY

              "FREIGHT COLLECT"
SHIPMENT PER S.S. "ALULA EXPRESS" VOY NO. 033E   DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT July 12, 2024. CARGO RECEIVED ON July 5, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                **July 22, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.<br><br>No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>*For and on behalf of*<br>**Yusen Logistics (Shenzhen) Co., Ltd.**<br><br>*Authorized Signature(s)*          As Agent<br><br>(Authorized Signature)          V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become incidentally interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

   i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

   ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to Shipper, it being agreed that the difference between the charges rendered by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in n this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful conduct, or breach of duty of Company.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes. Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12 RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have been delivered at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company has no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

**Cargo Tracking**

User Guide

| | All | ▼ | HKGEB9298700 |
|---|---|---|---|

Please enter only the last 12 characters of ONE BL number, without the prefix "ONEY". Our system does not accept House BL number assigned by NVOCC or Freight Forwarder.

Search

Total : 1

| | Booking No. | Container No. | S.O.C | Seal No. | Size | Event Date / Time | Status |
|---|---|---|---|---|---|---|---|
| ☐ | HKGEB9298700 | ONEU0845447 | ☐ | ******** | 40'DRY HC. | 2024-09-13 10:56 | Empty Container Returned from Customer |

Add My Tracking

Download

The date and time in this menu are the local date and time

Place of Receipt
YANTIAN, GUANGDONG, CHINA

Place of Delivery
SAVANNAH, GA, UNITED STATES

Add My Tracking

▶ Sailing Information

| Vessel | Port of Loading | Departure Date | Port of Discharging | Arrival Time |
|---|---|---|---|---|
| ALULA EXPRESS 033E (AXUT) | YANTIAN, GUANGDONG, CHINA | Actual 2024-07-12 20:40 | SAVANNAH, GA, UNITED STATES | Actual 2024-09-02 17:30 |

Coastal Coastal Schedule Actual Actual Schedule

▶ Cargo Tracking Details

Magenta color is the estimated schedule, which is subject to change

| No. | Status | Location | Event Date |
|---|---|---|---|
| 1 | Empty Container Release to Shipper | YANTIAN, GUANGDONG, CHINA YANTIAN F-LINK LOGISTICS | Actual 2024-07-05 04:37 |
| 2 | Gate In to Outbound Terminal | YANTIAN, GUANGDONG, CHINA YICT (YANTIAN INTL CONTAINER TERMINAL) | Actual 2024-07-05 15:03 |
| 3 | Loaded on 'ALULA EXPRESS 033E' at Port of Loading ALULA EXPRESS 033E | YANTIAN, GUANGDONG, CHINA YICT (YANTIAN INTL CONTAINER TERMINAL) | Actual 2024-07-12 09:32 |
| 4 | 'ALULA EXPRESS 033E' Departure from Port of Loading ALULA EXPRESS 033E | YANTIAN, GUANGDONG, CHINA YICT (YANTIAN INTL CONTAINER TERMINAL) | Actual 2024-07-12 20:40 |
| 5 | 'ALULA EXPRESS 033E' Arrival at Port of Discharging ALULA EXPRESS 033E | SAVANNAH, GA, UNITED STATES GARDEN CITY TERMINAL | Actual 2024-09-02 17:30 |
| 6 | 'ALULA EXPRESS 033E' POD Berthing Destination ALULA EXPRESS 033E | SAVANNAH, GA, UNITED STATES GARDEN CITY TERMINAL | Actual 2024-09-02 22:35 |
| 7 | Unloaded from 'ALULA EXPRESS 033E' at Port of Discharging ALULA EXPRESS 033E | SAVANNAH, GA, UNITED STATES GARDEN CITY TERMINAL | Actual 2024-09-04 11:18 |
| 8 | Gate Out from Inbound Terminal for Delivery to Consignee (or Port Shuttle) | SAVANNAH, GA, UNITED STATES GARDEN CITY TERMINAL | Actual 2024-09-05 10:36 |
| 9 | Empty Container Returned from Customer | SAVANNAH, GA, UNITED STATES | Actual 2024-09-13 10:56 |

Estimate Estimated Schedule Actual Actual Schedule

Download

▶ Cargo Release & Customs : U.S.A. Inbound

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-005 | **Invoice Date.:** July 06, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** ALULA EXPRESS / 033E

**Port of Loading:** YANTIAN

**Ship on or about:** July 12, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** ONEU0845447

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| P/O No.: 95209320 | 515 EA | 29.710/EA | 15,300.650 |
| SKU No.: 810569946 | 515 CTNS | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | |
| HTS Code.: 9505102500 | | | |
| **Manufacturer Name & Address** | | | |
| KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA HUIZHOU, GUANGDONG 516800, CHINA | | | |
| **Total:** (515 CTNS) | 515 | | 15,300.650 |

**TOTAL (USD) DOLLARS : FIFTEEN THOUSAND THREE HUNDRED AND CENTS SIXTY-FIVE ONLY.**

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
ONEU0845447/CNCS53432/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
ONEU0845447/CNCS53432/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#
SKU#

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

## PACKING LIST

**Invoice No.:** PIN24-BLT-005

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB YANTIAN

**Country of Origin:** CHINA

**Vessel / Voyage:** ALULA EXPRESS / 033E

**Ship on or about:** July 12, 2024

**Invoice Date.:** July 06, 2024

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** ONEU0845447

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95209320 | | 515 EA | 4,783.00 | 5,407.50 | 65.760 |
| SKU No.: 810569946 | | 515 CTNS | | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| **Total:** | **(515 CTNS)** | **515** | **4,783.00** | **5,407.50** | **65.760** |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
ONEU0845447/CNCS53432/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
ONEU0845447/CNCS53432/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# BIG LOTS!

**PO #**     **95209351**

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN     , CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633     Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800     Fax: 614-278-6871

**Purchase From Vendor:**   1008980

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:     JOE PENG
Telephone:   86-755-6122-6325     Fax     86-755-6122-6326
E-Mail:     JOEPENG@GIFTREE.NET

**ADDITIONAL COMMENTS**

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 4,728 | 833,552.72 | 313,807.53 | 61.169 |

OFFICE-COPY



OFFICE-COPY    

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO.  The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer.  A BOL in duplicate must accompany all Vendor invoices.  A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual.  Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period").  After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods.  Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms.  For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law.  As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet.  Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification.  Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records").  Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative.  Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit.  In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice.  Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof.  Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs.  Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls.  A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations.  In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate.  Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above.  When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date.  Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law.  Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods.  Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality.  Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information").  "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods.  Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties.  Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry.  Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods.  Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected.  The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption.  Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws").  Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor.  Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



OFFICE-COPY Case 24-11967-JKS Doc 1584-1 Filed 01/10/25 Page 173 of 410 PO#: 95209351 **IMPORTANT Terms and Conditions**

Page 4 of 6

securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses'), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI') signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute'), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.

OFFICE-COPY

PO#:  95209351

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810614468 | N - 7.5FT  CASH/HAR | 0.00 | CN | 1 | | 1,501 | 26.23 | 53,149.21 | 08/05/2024 |
| 36011 | 8147-H60723-01 | LIT7FT&UP | | | 1 | | 1,501 | 9.18 | 150,084.99 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 99.99 | 64.850 | 129.99 |
| 1 | 481061446806 | | SEA | 3.333 | A1 | | | | | |
| 360 | 810715824 | Z - 7.5FT WINDHAM T | 0.00 | CN | 1 | | 1,444 | 82.50 | 145,815.12 | 08/05/2024 |
| 36011 | 8147-H59004-01 | LIT7FT&UP | | | 1 | | 1,444 | 18.48 | 288,785.56 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 199.99 | 49.920 | 399.00 |
| 2 | 481071582402 | | SEA | 6.222 | A1 | | | | | |
| 360 | 810715803 | S - 7.5FT SHOWSHOE | 0.00 | CN | 1 | | 1,402 | 75.80 | 130,669.20 | 08/05/2024 |
| 36011 | 8147-H66753-01 | LIT7FT&UP | | | 1 | | 1,402 | 17.40 | 280,385.98 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 199.99 | 53.776 | 299.99 |
| 3 | 481071580309 | | SEA | 5.890 | A1 | | | | | |
| 360 | 810715793 | GG - 9FT WINDHAM TR | 0.00 | CN | 1 | | 381 | 128.70 | 58,905.65 | 08/05/2024 |
| 36011 | 8147-H59003-02 | LIT7FT&UP | | | 1 | | 381 | 25.91 | 114,296.19 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 299.99 | 48.891 | 599.99 |
| 4 | 481071579303 | | SEA | 8.507 | A1 | | | | | |

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401361**

| | |
|---|---|
| Maker/Supplier: **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-021** |
| Buyer/Consignee: **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **July 17, 2024** |
| Shipment From: **SHENZHEN**    To: **MONTGOMERY, AL** | Date of Receipt of Cargo **July 14, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                 NOTIFY PARTY: GEODIS
STORES                                 5101 S. BROAD STREET
PO#                                    PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#                                   ATTN: ALENA LAMINA
DEPT# 360                ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN CHINA                          1300 SOUTH MINT STREET SUITE 200
                                       CHARLOTTE NC 28203 USA
                                       TEL: 704-593-6329
                                       EMAIL: DATAQUALITY@EDRAYCPL.COM
                         CY-CY

                         SHIPPER'S LOAD, COUNT AND SEAL
                         SAID TO CONTAIN
                         CMAU8685359      SEAL# R7420038      40H  DRY
                         CMAU9448259      SEAL# R7412817      40H  DRY
                         FCIU7260437      SEAL# R7412780      40H  DRY
                         TLLU4965179      SEAL# R7412773      40H  DRY


                         ARTIFICIAL XMAS TREE
                         PO#95209351
                         1392PCS/1392CTNS
                         HS CODE: 9505100090

                         SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                         SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                         MATERIAL
                         1,392 CARTONS                 260.340 CBM   27,542.25 KGS
                         ==========================================================
                         TOTAL : ONE THOUSAND THREE HUNDRED NINETY-TWO (1,392) CARTONS
                         ONLY

                           "FREIGHT COLLECT"
SHIPMENT PER S.S. "XIN MEI ZHOU" VOY NO. 0TYIBE1MA   DISCHARGED AT MOBILE, AL
SAILING ON / ABOUT July 21, 2024. CARGO RECEIVED ON July 14, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                    **July 17, 2024** |
|---|---|

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**

*For and on behalf of*
*Yusen Logistics (Shenzhen) Co., Ltd.*

*Authorized Signature(s)*                    As Agent

(Authorized Signature)                    V1

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions  which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the  receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other  services intended to accomplish delivery of  the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending  upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are  inconsistent with any Laws that apply compulsorily to any element of the Services,  those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the  remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate  to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper  agrees to be bound by all stipulations, exceptions, terms, and conditions on the  front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d) The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide  the total gross  mass established using calibrated and certified equipment of each packed Container (FCL) and  each package of cargoes (LCL)  in accordance with SOLAS.  Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance  with SOLAS.  Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

h) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other  unit load device (each hereafter referred to as a "transport unit") then:

   i)   The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and

   ii)  The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the  carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with,  pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered  by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable,  explosive, or which  do or may present a risk of damage to any property or  person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly  accepted in writing to deal  with the Dangerous Goods.  Shipper's notice will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMERWILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized  to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests or is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference  between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment or agency.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

a)   A force majeure event;

b)   Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid by the exercise of reasonable diligence;

c)   Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)   Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)   The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)   Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in in this Section, Company shall not be liable for loss of or  damage to any cargoes or have any liability whatsoever for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of administration nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by  Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided  by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences thereof.  Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper  contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub  -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion  of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any  statute or convention or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously given to and accepted by Company.  A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or  other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper, directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or  its affiliates from Shipper or  the ultimate consignee.  Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or  the ultimate consignee (whether  in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper  cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or towards the payment of any amount due to Company.  Company shall be entitled to claim the difference against Shipper or the ultimate consignee  in the event that  the (net) sale proceeds do not discharge in full  the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery  or deemed delivery of cargoes.  Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of  the net proceeds of any sale after deduction of charges and expenses shall  be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12 RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim,  counterclaim, or set  -off.

12.2 Company at its discretion  may request an advance  to cover fees, duties, charges, taxes, and/or other expenses payable  before Shipper's invoice  is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a)   In the case of damage to goods, the date of delivery of cargoes;

b)   In the case of loss or non-delivery or mis-delivery of cargoes, the date  that cargoes should have been delivered; and

c)   In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the  destination (whichever  date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that:  (a) Company will have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of  bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

**Tracking details**  `EMPTY IN DEPOT`

CMA CGM

**CMAU8685359** · 45 G1

- RECEIPT
- PORT  Yantian, CH
- PORT  Mobile, Al, US
- DELIVERY

Booking reference

Custom reference
**N/A**

Exported on
**Saturday 28-SEP-2024 at 00:49**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Sunday, 14-JUL-2024 ⏱ 02:54 | `EMPTY TO SHIPPER` | SHEKOU | | |
| Monday, 15-JUL-2024 ⏱ 01:04 | `READY TO BE LOADED` | YANTIAN | | |
| Monday, 22-JUL-2024 ⏱ 06:07 | `LOADED ON BOARD` | YANTIAN | XIN MEI ZHOU | 0TYIBE1MA |
| Monday, 22-JUL-2024 ⏱ 16:52 | `VESSEL DEPARTURE` | YANTIAN | XIN MEI ZHOU | 0TYIBE1MA |
| Thursday, 22-AUG-2024 ⏱ 05:47 | `VESSEL ARRIVAL` | MOBILE, AL | XIN MEI ZHOU | 0TYICW1MA |
| Thursday, 22-AUG-2024 ⏱ 10:35 | `DISCHARGED` | MOBILE, AL | XIN MEI ZHOU | 0TYICW1MA |
| Friday, 23-AUG-2024 ⏱ 07:41 | `CONTAINER TO CONSIGNEE` | MOBILE, AL | | |
| Tuesday, 27-AUG-2024 ⏱ 14:44 | `EMPTY IN DEPOT` | MOBILE, AL | | |

**Tracking details**  `EMPTY IN DEPOT`

CMA CGM

CMAU9448259 · 45 G1

- RECEIPT
- PORT  Yantian, CH
- PORT  Mobile, Al, US
- DELIVERY

Booking reference

Custom reference
**N/A**

Exported on
**Saturday 28-SEP-2024 at 00:50**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|------|-------|----------|--------|--------|
| Sunday, 14-JUL-2024 ◷ 05:08 | `EMPTY TO SHIPPER` | SHEKOU | | |
| Sunday, 14-JUL-2024 ◷ 20:41 | `READY TO BE LOADED` | YANTIAN | | |
| Monday, 22-JUL-2024 ◷ 06:10 | `LOADED ON BOARD` | YANTIAN | XIN MEI ZHOU | 0TYIBE1MA |
| Monday, 22-JUL-2024 ◷ 16:52 | `VESSEL DEPARTURE` | YANTIAN | XIN MEI ZHOU | 0TYIBE1MA |
| Thursday, 22-AUG-2024 ◷ 05:47 | `VESSEL ARRIVAL` | MOBILE, AL | XIN MEI ZHOU | 0TYICW1MA |
| Thursday, 22-AUG-2024 ◷ 10:29 | `DISCHARGED` | MOBILE, AL | XIN MEI ZHOU | 0TYICW1MA |
| Friday, 23-AUG-2024 ◷ 07:43 | `CONTAINER TO CONSIGNEE` | MOBILE, AL | | |
| **Tuesday, 27-AUG-2024 ◷ 07:08** | `EMPTY IN DEPOT` | **MOBILE, AL** | | |

**Tracking details**  `EMPTY IN DEPOT`

CMA CGM

**FCIU7260437** • 45 G1

- RECEIPT
- PORT  Yantian, CH
- PORT  Mobile, AI, US
- DELIVERY

Booking reference

Custom reference
**N/A**

Exported on
**Saturday 28-SEP-2024 at 00:51**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Sunday, 14-JUL-2024 ⏱ 03:03 | EMPTY TO SHIPPER | SHEKOU | | |
| Sunday, 14-JUL-2024 ⏱ 19:58 | READY TO BE LOADED | YANTIAN | | |
| Monday, 22-JUL-2024 ⏱ 06:13 | LOADED ON BOARD | YANTIAN | XIN MEI ZHOU | 0TYIBE1MA |
| Monday, 22-JUL-2024 ⏱ 16:52 | VESSEL DEPARTURE | YANTIAN | XIN MEI ZHOU | 0TYIBE1MA |
| Thursday, 22-AUG-2024 ⏱ 05:47 | VESSEL ARRIVAL | MOBILE, AL | XIN MEI ZHOU | 0TYICW1MA |
| Thursday, 22-AUG-2024 ⏱ 10:17 | DISCHARGED | MOBILE, AL | XIN MEI ZHOU | 0TYICW1MA |
| Friday, 23-AUG-2024 ⏱ 07:39 | CONTAINER TO CONSIGNEE | MOBILE, AL | | |
| Monday, 26-AUG-2024 ⏱ 14:45 | EMPTY IN DEPOT | MOBILE, AL | | |

**Tracking details** `EMPTY IN DEPOT`

CMA CGM

🏠 **TLLU4965179** • 45 G1

| Date | Moves | Location | Vessel | Voyage |
|------|-------|----------|--------|--------|
| Sunday, 14-JUL-2024 🕐 03:23 | EMPTY TO SHIPPER | SHEKOU | | |
| Monday, 15-JUL-2024 🕐 07:10 | READY TO BE LOADED | YANTIAN | | |
| Monday, 22-JUL-2024 🕐 06:00 | LOADED ON BOARD | YANTIAN | XIN MEI ZHOU | 0TYIBE1MA |
| Monday, 22-JUL-2024 🕐 16:52 | VESSEL DEPARTURE | YANTIAN | XIN MEI ZHOU | 0TYIBE1MA |
| Thursday, 22-AUG-2024 🕐 05:47 | VESSEL ARRIVAL | MOBILE, AL | XIN MEI ZHOU | 0TYICW1MA |
| Thursday, 22-AUG-2024 🕐 10:20 | DISCHARGED | MOBILE, AL | XIN MEI ZHOU | 0TYICW1MA |
| Friday, 23-AUG-2024 🕐 14:19 | CONTAINER TO CONSIGNEE | MOBILE, AL | | |
| Tuesday, 27-AUG-2024 🕐 07:06 | EMPTY IN DEPOT | MOBILE, AL | | |

● RECEIPT
● PORT    Yantian, CH
● PORT    Mobile, Al, US
● DELIVERY

Booking reference

Custom reference
**N/A**

Exported on
**Saturday 28-SEP-2024 at 00:50**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-021

**Invoice Date.:** July 17, 2024

**Sold To:**   CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:**   2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** XIN MEI ZHOU / 0TYIBE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** July 22, 2024

**Port of Entry:** MOBILE, AL

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** CMAU8685359, CMAU9448259, FCIU7260437, TLLU4965179

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| P/O No.: 95209351 | | 381 EA | 128.700/EA | 49,034.700 |
| SKU No.: 810715793 | | 381 CTNS | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | |
| HTS Code.: 9505102500 | | | | |
| P/O No.: 95209351 | | 1,011 EA | 75.800/EA | 76,633.800 |
| SKU No.: 810715803 | | 1,011 CTNS | | |
| 7.5FT SHOWSHOE TREE GLITTER | No. of Pallet: | | | |
| HTS Code.: 9505102500 | | | | |
| **Manufacturer Name & Address**<br><br>KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD<br>BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA<br>HUIZHOU, GUANGDONG<br>516800, CHINA | | | | |
| Total: | (1,392 CTNS) | 1,392 | | 125,668.500 |
| TOTAL (USD) DOLLARS : ONE HUNDRED TWENTY-FIVE THOUSAND SIX HUNDRED SIXTY-EIGHT AND CENTS FIFTY ONLY. | | | | |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
CMAU8685359/R7420038/40H
CMAU9448259/R7412817/40H
FCIU7260437/R7412780/40H
TLLU4965179/R7412773/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
CMAU8685359/R7420038/40H
CMAU9448259/R7412817/40H
FCIU7260437/R7412780/40H
TLLU4965179/R7412773/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

## PACKING LIST

**Invoice No.:** PIN24-BLT-021

**Invoice Date.:** July 17, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** XIN MEI ZHOU / 0TYIBE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** July 22, 2024

**Port of Entry:** MOBILE, AL

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** CMAU8685359, CMAU9448259, FCIU7260437, TLLU4965179

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95209351 | | 381 EA | 10,127.00 | 11,315.70 | 91.760 |
| **SKU No.:** 810715793 | | 381 CTNS | | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209351 | | 1,011 EA | 15,427.00 | 16,226.55 | 168.580 |
| **SKU No.:** 810715803 | | 1,011 CTNS | | | |
| 7.5FT SHOWSHOE TREE GLITTER | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| Total: | (1,392 CTNS) | 1,392 | 25,554.00 | 27,542.25 | 260.340 |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
CMAU8685359/R7420038/40H
CMAU9448259/R7412817/40H
FCIU7260437/R7412780/40H
TLLU4965179/R7412773/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
CMAU8685359/R7420038/40H
CMAU9448259/R7412817/40H
FCIU7260437/R7412780/40H
TLLU4965179/R7412773/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#

DEPT# 360
MADE IN CHINA

Electronic Proof of Claim Confirmation:  3735-1-OEMUA-447653587

Claim Electronically Submitted on (UTC) :  2024-10-04T13:34:16.702Z

Submitted by:  GIFTREE CRAFTS COMPANY LIMITED
                       joepeng@giftree.net

KROLL

**United States Bankruptcy Court, District of Delaware**

---

**Fill in this information to identify the case (Select only one Debtor per claim form):**

**Debtor:** AVDC, LLC

**Case Number:** 24-11981

---

Modified Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| 1. Who is the current creditor? | GIFTREE CRAFTS COMPANY LIMITED |
| --- | --- |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |

| 2. Has this claim been acquired from someone else? | ✔ No |
| --- | --- |
| | ☐ Yes. From whom? |

| 3. Where should notices and payments to the creditor be sent? | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| --- | --- | --- |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Address1: King Tree Office, West Fl.6th, Bldg 4, Feilette Industrial Park, | Address1: |
| | Address2: No.88 Jiaoyu North Rd. Pingdi Town, | Address2: |
| | Address3: | Address3: |
| | Address4: | Address4: |
| | City: Shenzhen | City: |
| | State: Guang Dong | State: |
| | Postal Code: 518117 | Postal Code: |
| | Country: China | Country: |
| | Contact phone +86-13823169463 | Contact phone |
| | Contact email joepeng@giftree.net | Contact email |

| 4. Does this claim amend one already filed? | ☐ No | Filed on 09/19/2024 |
| --- | --- | --- |
| | ✔ Yes. Claim number on court claims registry (if known) 917 | MM / DD / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ✔ No |
| --- | --- |
| | ☐ Yes. Who made the earlier filing? |

---

**Claim Number: 1779**                     **Proof of Claim**                     page 1

**Part 2:**  **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____ |

| | |
|---|---|
| **7. How much is the claim?** | $ 65,641.63 . **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| **8. What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>GOODS SOLD |

| | |
|---|---|
| **9. Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**  $_____<br><br>**Amount of the claim that is secured:**  $_____<br><br>**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**  $_____<br><br>**Annual Interest Rate** (when case was filed)_____%<br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| **10. Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.**  $_____ |

| | |
|---|---|
| **11. Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)( ) that applies. | $ _____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

☐ No

☑ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.**    $ 11,791.50

---

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

*HUA PENG*                    10/04/2024

_____        _____
Electronic Signature              Date

Name of the person who is completing and signing this claim

Name        HUA PENG
            _____
            First name        Middle name        Last name

Title/Company   MANAGER / GIFTREE CRAFTS COMPANY LIMITED
                _____
                Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     West Fl.6th, Bldg 4, Feilette Industrial Park,

            No.88 Jiaoyu North Rd. Pingdi Town,
            _____
            Number        Street

            Shenzhen            Guang Dong    518117    China
            _____
            City                State        ZIP Code   Country

Contact phone   +86-13823169463        Email    joepeng@giftree.net

**Additional Noticing Addresses (if provided):**

**Additional Address 1**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Address 2**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
 Postal Code:
 Country:

Contact Phone:
Contact Email:

**Additional Supporting Documentation Provided**

☑ Yes
☐ No

---------------------------------------------------------------------------------------------------------------

Attachment Filename:

DC 869 PROOF DOCUMENTS OF CLAIM _AVDC LLC.pdf

**KROLL**

## PO/INVOICE STATEMENT

| DC | CONSIGNEE | PO# | Order Amount | INVOICE# | INVOICE AMOUNT | FCR NO. | DATE OF FCR ISSUED | BILL OF LADING # | VESSEL /VOYAGE | BOOKING NUMBER | CONTAINER NO | GOODS RECEIVED DAY AT FINAL DESTINATION | WITHIN 20 DAYS OF SEP. 9TH (Y/N) | SHIPPING LINE/CONTAINER TRACKING LINK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 869 | AVDC, LLC<br>4900 E. Dublin Granville Rd<br>Columbus, OH 43081-7651 US<br>Telphone: 614-278-6800<br>Fax: 614-278-6871 | 95209318 | US$16,210.23 | PIN24-BLT-009 | US$47,157.73 | CNS-SZP-2401163 | 07/22/2024 | CMDUSHZ6423442 | (CMDU) TS MELBOURNE V.0WF1BE1MA | SHZ6423447 | SELU4139968 | 08/10/2024 | N | https://www.cma-cgm.com/ebusiness/tracking |
| | | 95209319 | US$37,639.90 | | | | | | | SHZ6423442 | SELU4143232 | 08/09/2024 | N | https://www.cma-cgm.com/ebusiness/tracking |
| | | | | PIN24-BLT-019 | US$6,692.40 | CNS-SZP-2401280 | 07/24/2024 | CMDUSHZ6423389 | (CMDU) CMA CGM TUTICORIN V.0TXHXE1MA | SHZ6423389 | TCKU6216240 | 08/14/2024 | N | https://www.cma-cgm.com/ebusiness/tracking |
| | | 95315144 | US$4,455.60 | PIN24-BLT-023 | US$4,455.60 | CNS-SZP-2401558 | 07/30/2024 | 2150918910 | (OOLU) OOCL ROTTERDAM V.149E | 2150918910 | OOLU8882010 | 09/04/2024 | Y | https://www.oocl.com/usa/eng/Pages/default.aspx |
| | | 95209355 | US$7,335.90 | PIN24-BLT-026 | US$7,335.90 | CNS-SZP-2401561 | 07/30/2024 | 2150918910 | (OOLU) OOCL ROTTERDAM V.149E | 2150918910 | OOLU8882010 | 09/04/2024 | Y | https://www.oocl.com/usa/eng/Pages/default.aspx |
| | TOTAL: | | | | US$65,641.63 | | | | | | | | | |

Total Claim AMT:  **US$65,641.63**
Within 20days AMT:  **US$11,791.50**

REMARK:

Goods received day was determined when goods arrived at Big Lots DC according to the terms and conditions Point 2 on the purchase order. It said that Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

**Attached below: PO, FCR, CONTAINER ARRIVED PROOF, INVOICE,  PACKING LIST**



**PO #**          **95209318**

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 2 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN          , CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

SHIP TO

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520        Fax:

---

BILL TO

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

Purchase From Vendor:   1008980

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:      JOE PENG
Telephone:   86-755-6122-6325    Fax    86-755-6122-6326
E-Mail:       JOEPENG@GIFTREE.NET

---

ADDITIONAL COMMENTS

---

Vendor Signature _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 540 | 52,494.60 | 16,210.23 | 65.202 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:    95209318

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810475687 | D - 5FT CUPID CASHM | 0.00 | CN | 1 | | 177 | 20.68 | 5,059.93 | 08/05/2024 |
| 36011 | 8147-H47709-02 | URNS | | | 1 | | 177 | 7.91 | 12,388.23 | |
| 36011005 | Winter Wonder Lane | | 030 | | | | | 69.99 | 59.451 | 92.00 |
| 1 | 481047568706 | | SEA | 2.903 | XX | | | | | |
| 360 | 810569946 | F - 6.5FT BLITZEN F | 0.00 | CN | 1 | | 177 | 29.71 | 7,417.79 | 08/05/2024 |
| 36011 | 8147-H54452-04 | URNS | | | 1 | | 177 | 12.20 | 15,928.23 | |
| 36011005 | Winter Wonder Lane | | 030 | | | | | 89.99 | 53.760 | 149.00 |
| 2 | 481056994602 | | SEA | 4.510 | A1 | | | | | |
| 360 | 810569935 | PP - 6.5FT GRAND RA | 0.00 | CN | 1 | | 186 | 39.20 | 9,347.99 | 08/05/2024 |
| 36011 | 8147-H71010-01 | LIT6-6.5FT | | | 1 | | 186 | 11.06 | 24,178.14 | |
| 36011003 | Winter Wonder Lane | | 030 | | | | | 129.99 | 61.639 | 223.63 |
| 3 | 481056993506 | | SEA | 3.890 | A1 | | | | | |



**PO #**                    **95209319**

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 1 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN        ,  CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

SHIP TO

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:  760-503-0520        Fax:

---

BILL TO

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax:  614-278-6871

---

Purchase From Vendor:   1008980

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:      JOE PENG
Telephone:   86-755-6122-6325    Fax    86-755-6122-6326
E-Mail:       JOEPENG@GIFTREE.NET

---

ADDITIONAL COMMENTS

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 558 | 99,594.42 | 37,639.90 | 60.646 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:  95209319

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



---

title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,
without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.

**BIG LOTS!**

OFFICE-COPY

PO#:  95209319

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810614468 | N - 7.5FT  CASH/HAR | 0.00 | CN | 1 | | 180 | 26.23 | 6,373.66 | 08/05/2024 |
| 36011 | 8147-H60723-01 | LIT7FT&UP | | | 1 | | 180 | 9.18 | 17,998.20 | |
| 36011002 | Winter Wonder Lane | | 030 | | | | | 99.99 | 64.850 | 129.99 |
| 1 | 481061446806 | | SEA | 3.333 | A1 | | | | | |
| 360 | 810715824 | Z - 7.5FT WINDHAM T | 0.00 | CN | 1 | | 163 | 82.50 | 16,459.74 | 08/05/2024 |
| 36011 | 8147-H59004-01 | LIT7FT&UP | | | 1 | | 163 | 18.48 | 32,598.37 | |
| 36011002 | Winter Wonder Lane | | 030 | | | | | 199.99 | 49.920 | 399.00 |
| 2 | 481071582402 | | SEA | 6.222 | A1 | | | | | |
| 360 | 810715803 | S - 7.5FT SHOWSHOE | 0.00 | CN | 1 | | 155 | 75.80 | 14,446.31 | 08/05/2024 |
| 36011 | 8147-H66753-01 | LIT7FT&UP | | | 1 | | 155 | 17.40 | 30,998.45 | |
| 36011002 | Winter Wonder Lane | | 030 | | | | | 199.99 | 53.776 | 299.99 |
| 3 | 481071580309 | | SEA | 5.890 | A1 | | | | | |
| 360 | 810715793 | GG - 9FT WINDHAM TR | 0.00 | CN | 1 | | 60 | 128.70 | 9,276.48 | 08/05/2024 |
| 36011 | 8147-H59003-02 | LIT7FT&UP | | | 1 | | 60 | 25.91 | 17,999.40 | |
| 36011002 | Winter Wonder Lane | | 030 | | | | | 299.99 | 48.891 | 599.99 |
| 4 | 481071579303 | | SEA | 8.507 | A1 | | | | | |

# Yusen Logistics

Yusen Logistics - Yusen Logistics     Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401163**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-009** |
| Buyer/Consignee : **AVDC, LLC** **18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated: **July 10, 2024** |
| Shipment From : **SHENZHEN**    To : **APPLE VALLEY, CA** | Date of Receipt of Cargo **July 07, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| PLEASE REFER TO ATTACHED SHEET(S). | | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM CY-CY | | |

```
                 1,046 CARTONS                  131.130 CBM    12,245.55 KGS
                 ===========================================================
                 TOTAL : ONE THOUSAND FORTY-SIX (1,046) CARTONS ONLY


                      "FREIGHT COLLECT"
SHIPMENT PER S.S. "TS MELBOURNE" VOY NO. 0WF1BE1MA    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 15, 2024. CARGO RECEIVED ON July 7, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**      **July 22, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** *For and on behalf of* **Yusen Logistics (Shenzhen) Co., Ltd.** *Authorized Signature(s)*    As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)     V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

# Yusen Logistics

V1

FCR No.   CNS-SZP-2401163

Attachment Page 1/1

| Shipping Mark | Description of Goods | | |
|---|---|---|---|
| **BIG LOTS** | SHIPPER'S LOAD, COUNT AND SEAL | | |
| **STORES** | SAID TO CONTAIN | | |
| | SELU4139968 | SEAL# R5017468 | 40H  DRY |
| **PO#** | SELU4143232 | SEAL# R5017470 | 40H  DRY |
| **SKU#** | | | |
| **DEPT# 360** | | | |
| **MADE IN CHINA** | ARTIFICIAL XMAS TREE | | |
| | PO#95209318 | | |
| **BIG LOTS** | 540PCS/540CTNS | | |
| **STORES** | HS CODE:9505100090 | | |
| | | | |
| **PO#** | | | |
| **SKU#** | ARTIFICIAL XMAS TREE | | |
| **DEPT# 360** | PO#95209319 | | |
| **MADE IN CHINA** | 506PCS/506CTNS | | |
| | HS CODE:9505100090 | | |

SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA
SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
MATERIAL

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever there re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in n this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or deviation of Company.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes. Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12 RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company will have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

**Tracking details** `EMPTY IN DEPOT`





**SELU4139968** • 45 G1

● RECEIPT
● PORT  Yantian, CH
● PORT  Los Angeles, Ca, US
● DELIVERY

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:14**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|------|-------|----------|--------|--------|
| Saturday, 06-JUL-2024 🕐 19:49 | EMPTY TO SHIPPER | YANTIAN | | |
| Sunday, 07-JUL-2024 🕐 17:59 | READY TO BE LOADED | YANTIAN | | |
| Sunday, 14-JUL-2024 🕐 18:14 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 🕐 07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Monday, 05-AUG-2024 🕐 08:18 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Friday, 09-AUG-2024 🕐 14:11 | CONTAINER TO CONSIGNEE | LOS ANGELES, CA | | |
| Saturday, 10-AUG-2024 🕐 01:00 | FULL AT CONSIGNEE'S PREMISES | LOS ANGELES, CA | | |
| **Monday, 19-AUG-2024 🕐 18:07** | EMPTY IN DEPOT | **LOS ANGELES, CA** | | |

**Tracking details** `EMPTY IN DEPOT`





**SELU4143232**  •  45 G1

● **RECEIPT**

● **PORT**  Yantian, CH

● **PORT**  Los Angeles, Ca, US

● **DELIVERY**

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:14**

ⓘ  Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Sunday, 07-JUL-2024 🕐 03:58 | EMPTY TO SHIPPER | YANTIAN | | |
| Monday, 08-JUL-2024 🕐 02:35 | READY TO BE LOADED | YANTIAN | | |
| Sunday, 14-JUL-2024 🕐 17:08 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 🕐 07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 04-AUG-2024 🕐 10:06 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Thursday, 08-AUG-2024 🕐 00:03 | CONTAINER TO CONSIGNEE | LOS ANGELES, CA | | |
| Friday, 09-AUG-2024 🕐 01:00 | FULL AT CONSIGNEE'S PREMISES | LOS ANGELES, CA | | |
| **Thursday, 15-AUG-2024 🕐 08:47** | EMPTY IN DEPOT | **LOS ANGELES, CA** | | |

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-009

**Invoice Date.:** July 10, 2024

**Sold To:** AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Delivery To:** 18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** TS MELBOURNE / 0WF1BE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** July 14, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** APPLE VALLEY, CA

**Container Number (Factory Load) :** SELU4139968, SELU4143232

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95209318 | | 177 | EA | 20.680/EA | 3,660.360 |
| **SKU No.:** 810475687 | | 177 | CTNS | | |
| 5FT CUPID CASHMERE URN TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209318 | | 186 | EA | 39.200/EA | 7,291.200 |
| **SKU No.:** 810569935 | | 186 | CTNS | | |
| 6.5FT GRAND RAPIDS FLOCKED TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209318 | | 177 | EA | 29.710/EA | 5,258.670 |
| **SKU No.:** 810569946 | | 177 | CTNS | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209319 | | 180 | EA | 26.230/EA | 4,721.400 |
| **SKU No.:** 810614468 | | 180 | CTNS | | |
| 7.5FT CASH/HARD NEEDLE PENCIL TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209319 | | 8 | EA | 128.700/EA | 1,029.600 |
| **SKU No.:** 810715793 | | 8 | CTNS | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209319 | | 155 | EA | 75.800/EA | 11,749.000 |
| **SKU No.:** 810715803 | | 155 | CTNS | | |
| 7.5FT SHOWSHOE TREE GLITTER | No. of Pallet: | | | | |

**HTS Code.:** 9505102500

| | | | | |
|---|---|---|---|---|
| **P/O No.:** 95209319 | | 163 | EA | 82.500/EA | 13,447.500 |
| **SKU No.:** 810715824 | | 163 | CTNS | | |

7.5FT WINDHAM TREE TWINKLING                    **No. of Pallet:**

**HTS Code.:** 9505102500

**Manufacturer Name & Address**

KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU, GUANGDONG
516800, CHINA

| | | | |
|---|---|---|---|
| **Total:** | **(1,046 CTNS)** | **1,046** | **47,157.730** |

**TOTAL (USD) DOLLARS : FORTY-SEVEN THOUSAND ONE HUNDRED FIFTY-SEVEN AND CENTS SEVENTY-THREE ONLY.**

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
SELU4139968/R5017468/40H
SELU4143232/R5017470/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
SELU4139968/R5017468/40H
SELU4143232/R5017470/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

## PACKING LIST

**Invoice No.:** PIN24-BLT-009

**Invoice Date.:** July 10, 2024

**Sold To:** AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Delivery To:** 18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** TS MELBOURNE / 0WF1BE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** July 14, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** APPLE VALLEY, CA

**Container Number (Factory Load) :** SELU4139968, SELU4143232

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95209318 | | 177 EA | 798.00 | 1,168.20 | 14.550 |
| **SKU No.:** 810475687 | | 177 CTNS | | | |
| 5FT CUPID CASHMERE URN TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209318 | | 186 EA | 971.00 | 1,887.90 | 20.490 |
| **SKU No.:** 810569935 | | 186 CTNS | | | |
| 6.5FT GRAND RAPIDS FLOCKED TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209318 | | 177 EA | 1,046.00 | 1,858.50 | 22.600 |
| **SKU No.:** 810569946 | | 177 CTNS | | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209319 | | 180 EA | 768.00 | 1,476.00 | 16.990 |
| **SKU No.:** 810614468 | | 180 CTNS | | | |
| 7.5FT CASH/HARD NEEDLE PENCIL TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209319 | | 8 EA | 127.00 | 237.60 | 1.930 |
| **SKU No.:** 810715793 | | 8 CTNS | | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |

**P/O No.:** 95209319 | | 155 EA | 1,972.00 | 2,487.75 | 25.850

**SKU No.:** 810715803 | | 155 CTNS

7.5FT SHOWSHOE TREE GLITTER                **No. of Pallet:**

**HTS Code.:** 9505102500

**P/O No.:** 95209319 | | 163 EA | 2,897.00 | 3,129.60 | 28.720

**SKU No.:** 810715824 | | 163 CTNS

7.5FT WINDHAM TREE TWINKLING                **No. of Pallet:**

**HTS Code.:** 9505102500

| | Total: | (1,046 CTNS) | 1,046 | | 8,579.00 | 12,245.55 | 131.130 |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
SELU4139968/R5017468/40H
SELU4143232/R5017470/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
SELU4139968/R5017468/40H
SELU4143232/R5017470/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

Yusen Logistics - Yusen Logistics

# Yusen Logistics

Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401280**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-019** |
| Buyer/Consignee : **AVDC, LLC**<br>**18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated: **July 13, 2024** |
| Shipment From : **SHENZHEN**    To : **APPLE VALLEY, CA** | Date of Receipt of Cargo<br>**July 08, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS**<br>**STORES**<br><br>**PO#**<br>**SKU#**<br>**DEPT# 360**<br>**MADE IN CHINA** | | **NOTIFY PARTY: GEODIS**<br>       **5101 S. BROAD STREET**<br>       **PHILADELPHIA, PA 19112-1404, U.S.A.**<br>       **ATTN: ALENA LAMINA**<br>**ALSO NOTIFY: EDRAY 2020 LLC.**<br>       **1300 SOUTH MINT STREET SUITE 200**<br>       **CHARLOTTE NC 28203 USA**<br>       **TEL: 704-593-6329**<br>       **EMAIL: DATAQUALITY@EDRAYCPL.COM**<br><br>**CFS-CY**<br><br>**TCKU6216240  (PART)    SEAL# R7414195        40H  DRY**<br><br><br>**ARTIFICIAL XMAS TREE**<br>**PO#95209319**<br>**52PCS/52CTNS**<br>**HS CODE: 9505100090**<br><br>**SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA**<br>**SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING**<br>**MATERIAL** | | |
| | **52 CARTONS** | | **13.418 CBM** | **1,550.00 KGS** |

=============================================================
**TOTAL : FIFTY-TWO (52) CARTONS ONLY**

**"FREIGHT COLLECT"**
SHIPMENT PER S.S. "CMA CGM TUTICORIN" VOY NO. 0TXHXE1MA    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 21, 2024. CARGO RECEIVED ON July 8, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                              **July 24, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>*For and on behalf of*<br>**Yusen Logistics (Shenzhen) Co., Ltd.**<br><br>*Authorized Signature(s)*                    As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                          V1 |

1. **DEFINITIONS**
1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.
1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.
1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.
1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.
1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.
1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the Company's customer, the ultimate consignee.
1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

2. **COMPULSORY LEGISLATION AND STATUTORY PROTECTION**
2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.
2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.
2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever there re, whether in tort, bailment, or otherwise.

3. **SHIPPER'S WARRANTIES**
3.1 Shipper warrants as follows:
   a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;
   b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;
   c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;
   d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;
   e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;
   f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;
   g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.
   h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.
   i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:
      i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and
      ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.
   j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.
   k) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.
   l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

4. **DANGEROUS GOODS**
4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.
4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.
4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

5. **COMPANY'S AUTHORITY**
5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.
5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.
5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.
5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.
5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.
5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.
5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

6. **LIABILITY AND LIMITATIONS**
6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.
6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.
6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

   a) A force majeure event;
   b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;
   c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or
   d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.
6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:
   a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or
   b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.
6.5 No insurance will be arranged by Company for the benefit of Shipper.
6.6 Entire Liability – Except as set forth in in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.
6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of Company.
6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

7. **INDEMNITY**
7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.
7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.
7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.
7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

8. **WAREHOUSING**
8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

9. **DECLARED VALUE**
9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

10. **SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**
10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

11. **LIEN, DISPOSAL OF GOODS, ETC.**
11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).
11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.
11.3 Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.
11.4 The rights of Company under this Section are independent and cumulative.

12 **RATES AND CHARGES**
12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.
12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.
12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

13 **NOTICE OF CLAIM**
13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:
   a) In the case of damage to goods, the date of delivery of cargoes;
   b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and
   c) In any other case, the date of the event giving rise to the claim.
13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

14. **TIME BAR**
14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have been arrived at the destination (whichever date is the earlier).

15. **NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**
15.1 Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

16. **GOVERNING LAW**
16.1 These Conditions and any or act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

**Tracking details**  `EMPTY IN DEPOT`





**TCKU6216240**   •   45 G0

● RECEIPT
● PORT   Yantian, CH
● PORT   Los Angeles, Ca, US
● DELIVERY

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 08:37**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Friday, 12-JUL-2024 🕐 15:05 | EMPTY TO SHIPPER | SHEKOU | | |
| Monday, 15-JUL-2024 🕐 10:48 | READY TO BE LOADED | YANTIAN | | |
| Saturday, 20-JUL-2024 🕐 07:07 | LOADED ON BOARD | YANTIAN | CMA CGM TUTICORIN | 0TXHXE1MA |
| Sunday, 21-JUL-2024 🕐 02:48 | VESSEL DEPARTURE | YANTIAN | CMA CGM TUTICORIN | 0TXHXE1MA |
| Monday, 05-AUG-2024 🕐 14:12 | VESSEL ARRIVAL | LOS ANGELES, CA | CMA CGM TUTICORIN | 0TXHYW1MA |
| Tuesday, 06-AUG-2024 🕐 23:38 | DISCHARGED | LOS ANGELES, CA | CMA CGM TUTICORIN | 0TXHYW1MA |
| Monday, 12-AUG-2024 🕐 14:09 | CONTAINER TO CONSIGNEE | LOS ANGELES, CA | | |
| Wednesday, 14-AUG-2024 🕐 01:00 | FULL AT CONSIGNEE'S PREMISES | LOS ANGELES, CA | | |
| Friday, 23-AUG-2024 🕐 11:32 | EMPTY IN DEPOT | LOS ANGELES, CA | | |

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-019

**Invoice Date.:** July 13, 2024

**Sold To:** AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Delivery To:** 18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** CMA CGM TUTICORIN / 0TXHXE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** July 21, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95209319 | | 52   EA | 128.700/EA | 6,692.400 |
| **SKU No.:** 810715793 | | 52   CTNS | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **Manufacturer Name & Address** | | | | |
| KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA HUIZHOU, GUANGDONG 516800, CHINA | | | | |
| Total:   (52 CTNS) | | 52 | | 6,692.400 |
| TOTAL (USD) DOLLARS : SIX THOUSAND SIX HUNDRED NINETY-TWO AND CENTS FORTY ONLY. | | | | |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
TCKU6216240/R7414195/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
TCKU6216240/R7414195/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

---

# PACKING LIST

---

**Invoice No.:** PIN24-BLT-019

**Sold To:** AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB YANTIAN

**Country of Origin:** CHINA

**Vessel / Voyage:** CMA CGM TUTICORIN / 0TXHXE1MA

**Ship on or about:** July 21, 2024

**Invoice Date.:** July 13, 2024

**Delivery To:** 18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** LOS ANGELES, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95209319 | | 52 EA | 1,125.00 | 1,550.00 | 13.418 |
| **SKU No.:** 810715793 | | 52 CTNS | | | |
| 9FT WINDHAM TREE TWINKLING | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** (52 CTNS) | 52 | | 1,125.00 | 1,550.00 | 13.418 |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
TCKU6216240/R7414195/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
TCKU6216240/R7414195/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# BIG LOTS!

| | |
|---|---|
| **PO #** | **95315144** |
| Date Created | 04/16/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/15/2024 |
| Cancel if not Shipped by: | 07/22/2024 |
| Must be Routed by: | 06/24/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-YANTIAN，CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:  760-503-0520        Fax:

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

**Purchase From Vendor:**  1008980

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:      JOE PENG
Telephone:  86-755-6122-6325    Fax    86-755-6122-6326
E-Mail:      JOEPENG@GIFTREE.NET

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 1,896 | 18,941.04 | 4,455.60 | 67.227 |

OFFICE-COPY



These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


OFFICE-COPY **IMPORTANT Terms and Conditions** Case 24-11967-JKS Doc 1584-1 Filed 01/06/25 Page 221 of 419 PO # 95319144

Page 4 of 6

securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|---|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 360 | 810734180 | 12IN PRELIT HARD NE | 0.00 | CN | 12 | | 1,896 | 2.35 | 6,207.50 | 09/02/2024 |
|------|-----------|---------------------|------|----|----|---|-------|------|----------|------------|
| 36004 | 8147-H75850-02 | DECWREATHS | | | 1 | | 158 | 0.92 | 18,941.04 | |
| 36004005 | Winter Wonder Lane | | H33 | | | | | 9.99 | 67.463 | 13.80 |
| 1 | 481073418006 | | SEA | 4.069 | A1 | | | | | |

Yusen Logistics - Yusen Logistics # Yusen Logistics Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401558**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-023** |
| Buyer/Consignee : **AVDC, LLC** **18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated: **July 30, 2024** |
| Shipment From : **SHENZHEN**    To : **APPLE VALLEY, CA** | Date of Receipt of Cargo **July 27, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES PO# SKU# DEPT# 360 MADE IN CHINA | | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM CFS-CY OOLU8882010 (PART)    SEAL# OOLJXY1267 | | 40H  DRY |

ARTIFICIAL XMAS WREATH
PO#95315144
1896PCS/158CTNS
HS CODE:9505100090

SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA
SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
MATERIAL

| | | | | |
|---|---|---|---|---|
| | 158 CARTONS | | 19.238 CBM | 894.00 KGS |

==================================================
TOTAL : ONE HUNDRED FIFTY-EIGHT (158) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO SPAIN" VOY NO. 066E    DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT August 8, 2024. CARGO RECEIVED ON July 27, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**    **July 30, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** *For and on behalf of* **Yusen Logistics (Shenzhen) Co., Ltd.** *Authorized Signature(s)*    As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)    V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the Cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the international movement as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws and requirements.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment or authorization.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in n this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or, otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of Company.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes. Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12 RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company will have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.



**We take it personally**

# Cargo Tracking

### Search Result - Bill of Lading Number  2150918910



#### Summary

| | | | |
|---|---|---|---|
| B/L Vessel Voyage: | OOCL ROTTERDAM 149E | FND Customs Clearance Code: | WAC8 |
| Bill of Lading Number: | 2150918910 (B/L Ready) | Inbound Customs Clearance Status: *Note* | Cleared  (28 Aug 2024, 18:40 GMT) |
| Booking Number: | 2150918910 (Confirmed) | Payment Status (collect charges): *Note* | Cleared |
| Total Containers: | 1 x 40' Hi-Cube Container | Cargo Release Status: | Released |
| Total Quantity: | 1069 Carton | Original B/L Received by Carrier: | N.A. (Under Sea WayBill) |

| Containers | Detention & Demurrage |

| Container Number | Container Size Type | Quantity | Gross Weight | Verified Gross Mass | Latest Event | | | Final Destination |
|---|---|---|---|---|---|---|---|---|
| | | | | | Event | Location | Time | |
| OOLU888201-0 | 40HQ | 1069 Carton | 5742.000 KGS | 9532.000 KGS (Submitted) | Freight Charges Settled | Apple Valley, Apple Valley, San Bernardino, California, United States | 26 Sep 2024, 02:10 PDT | Apple Valley, San Bernardino, California, United States appointment to be arranged |

#### Detail of OOCL Container OOLU888201-0    Detailed Container Specification Enquiry

Inbound Customs Clearance Status: *Note*  Released (28 Sep 2024, 11:40 PDT)
Payment Status (collect charges): *Note*  Cleared (26 Sep 2024, 02:10 PDT)
Linked Reference Number: *Note*

| Routing | Equipment Activities |

| Origin | Empty Pickup Location | Full Return Location | Port of Load | Vessel Voyage | Port of Discharge | Final Destination Hub | Destination | Empty Return Location | Haulage |
|---|---|---|---|---|---|---|---|---|---|
| Yantian, Shenzhen, Guangdong, China | Yantian Port | Yantian Port  05 Aug 2024, 12:00 CCT (Cargo Cutoff Date At First Full Hub) | Yantian, Shenzhen, Guangdong, China 19 Aug 2024, 03:39 CCT (Actual) | PSX OOCL ROTTERDAM 149E (149E) | Long Beach, Los Angeles, California, United States 03 Sep 2024, 05:53 PDT (Actual) | Long Beach Container Terminal (Pier E) 04 Sep 2024, 11:12 PDT (Actual) | Apple Valley, San Bernardino, California, United States | Long Beach Container Terminal (Pier E) | CY/DOOR |

Powered by CargoSmart

| Terms of Use | Privacy and Security Statement | Online Security | Customer Communications Policy |
Copyright © 1998 - 2024. Orient Overseas Container Line Limited. All rights reserved.

OOIL GROUP

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-023

**Invoice Date.:** July 30, 2024

**Sold To:** AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Delivery To:** 18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL ROTTERDAM / 149E

**Port of Loading:** YANTIAN

**Ship on or about:** August 19, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95315144 | | 1,896   EA | 2.350/EA | 4,455.600 |
| **SKU No.:** 810734180 | | 158   CTNS | | |
| 12IN HARDNEEDLE DECORATION WREATH | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| | **Manufacturer Name & Address** | | | |
| | KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA HUIZHOU, GUANGDONG 516800, CHINA | | | |
| Total: | (158 CTNS) | 1,896 | | 4,455.600 |
| **TOTAL (USD) DOLLARS : FOUR THOUSAND FOUR HUNDRED FIFTY-FIVE AND CENTS SIXTY ONLY.** | | | | |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
OOLU8882010/OOLJXY1267/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
OOLU8882010/OOLJXY1267/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

## PACKING LIST

**Invoice No.:** PIN24-BLT-023

**Invoice Date.:** July 30, 2024

**Sold To:** AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Delivery To:** 18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL ROTTERDAM / 149E

**Port of Loading:** YANTIAN

**Ship on or about:** August 19, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95315144 | | 1,896 EA | 687.00 | 894.00 | 19.238 |
| **SKU No.:** 810734180 | | 158 CTNS | | | |
| 12IN HARDNEEDLE DECORATION WREATH | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** | **(158 CTNS)** | **1,896** | **687.00** | **894.00** | **19.238** |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
OOLU8882010/OOLJXY1267/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
OOLU8882010/OOLJXY1267/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# BIG LOTS!

**PO #**    **95209355**

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 2 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/22/2024 |
| Cancel if not Shipped by: | 07/29/2024 |
| Must be Routed by: | 07/01/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN    ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

APPLE VALLEY DC - #0869
AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY CA  92307

Telephone:   760-503-0520         Fax:

**BILL TO**

AVDC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

**Purchase From Vendor:**   1008980

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:      JOE PENG
Telephone:   86-755-6122-6325      Fax    86-755-6122-6326
E-Mail:      JOEPENG@GIFTREE.NET

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 57 | 17,099.43 | 7,335.90 | 48.462 |

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1. Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2. Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3. Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4. Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5. Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6. Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7. Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8. Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9. Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



OFFICE-COPY

IMPORTANT Terms and Conditions

Page 233 of 410

Case 24-11967-JKS    Doc 1584    Filed 01/06/25    Page 241 of 422

PO#: 95209355

Page 5 of 6

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:   95209355

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810715793 | GG - 9FT WINDHAM TR | 0.00 | CN | 1 | | 57 | 128.70 | 8,812.66 | 08/26/2024 |
| 36011 | 8147-H59003-02 | LIT7FT&UP | | | 1 | | 57 | 25.91 | 17,099.43 | |
| 36011002 | Winter Wonder Lane | | 030 | | | | | 299.99 | 48.891 | 599.99 |
| 4 | 481071579303 | | SEA | 8.507 | A1 | | | | | |

**Yusen Logistics** - Yusen Logistics

# Yusen Logistics

Yusen Logistics - **Yusen Logistics**

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401561**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-026** |
| Buyer/Consignee : **AVDC, LLC** <br> **18880 NAVAJO ROAD, APPLE VALLEY, CA 92307, USA** | Dated: **July 30, 2024** |
| Shipment From : **SHENZHEN**         To : **APPLE VALLEY, CA** | Date of Receipt of Cargo <br> **July 25, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                    NOTIFY PARTY: GEODIS
STORES                          5101 S. BROAD STREET
                                PHILADELPHIA, PA 19112-1404, U.S.A.
PO#                             ATTN: ALENA LAMINA
SKU#                        ALSO NOTIFY: EDRAY 2020 LLC.
DEPT# 360                       1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                   CHARLOTTE NC 28203 USA
                                TEL: 704-593-6329
                                EMAIL: DATAQUALITY@EDRAYCPL.COM

                            CFS-CY

                            OOLU8882010 (PART)     SEAL# OOLJXY1267      40H  DRY



                            ARTIFICIAL XMAS TREE
                            PO#95209355
                            57PCS/57CTNS
                            HS CODE:9505100090

                            SHIP TO CODE & LOCATION : 00869-APPLE VALLEY, CA
                            SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                            MATERIAL



                            57 CARTONS                    14.336 CBM    1,697.00 KGS
                            ======================================================
                            TOTAL : FIFTY-SEVEN (57) CARTONS ONLY

                                    "FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO SPAIN" VOY NO. 066E    DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT August 8, 2024. CARGO RECEIVED ON July 25, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                                **July 30, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) <br> **YUSEN LOGISTICS** <br><br> *For and on behalf of* <br> **Yusen Logistics (Shenzhen) Co., Ltd.** <br><br> *Authorized Signature(s)*          As Agent |
| **No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: 1** <br> (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                         V1 |

ORIGINAL

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become entitled to an interest in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all article information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

   i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

   ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or consultation with Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or strict liability.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing each such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities in, at, or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes. Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12 RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D) SHIPMENTS**

15.1 Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.



# Cargo Tracking

### Search Result - Bill of Lading Number 2150918910

#### Summary

| | |
|---|---|
| B/L Vessel Voyage: | OOCL ROTTERDAM 149E |
| Bill of Lading Number: | 2150918910 (B/L Ready) |
| Booking Number: | 2150918910 (Confirmed) |
| Total Containers: | 1 x 40' Hi-Cube Container |
| Total Quantity: | 1069 Carton |

| | |
|---|---|
| FND Customs Clearance Code: | WAC8 |
| Inbound Customs Clearance Status: *Note* | Cleared (28 Aug 2024, 18:40 GMT) |
| Payment Status (collect charges): *Note* | Cleared |
| Cargo Release Status: | Released |
| Original B/L Received by Carrier: | N.A. (Under Sea WayBill) |

Containers | **Detention & Demurrage**

| Container Number | Container Size Type | Quantity | Gross Weight | Verified Gross Mass | Latest Event | | | Final Destination |
|---|---|---|---|---|---|---|---|---|
| | | | | | Event | Location | Time | |
| OOLU888201-0 | 40HQ | 1069 Carton | 5742.000 KGS | 9532.000 KGS (Submitted) | Freight Charges Settled | Apple Valley, Apple Valley, San Bernardino, California, United States | 26 Sep 2024, 02:10 PDT | Apple Valley, San Bernardino, California, United States appointment to be arranged |

#### Detail of OOCL Container OOLU888201-0 — Detailed Container Specification Enquiry

Inbound Customs Clearance Status: *Note* Released (28 Aug 2024, 11:40 PDT)
Payment Status (collect charges): *Note* Cleared (26 Sep 2024, 02:10 PDT)
Linked Reference Number: *Note*

Routing | **Equipment Activities**

| Origin | Empty Pickup Location | Full Return Location | Port of Load | Vessel Voyage | Port of Discharge | Final Destination Hub | Destination | Empty Return Location | Haulage |
|---|---|---|---|---|---|---|---|---|---|
| Yantian, Shenzhen, Guangdong, China | Yantian Port | Yantian Port 05 Aug 2024, 12:00 CCT (Cargo Cutoff Date At First Full Hub) | Yantian, Shenzhen, Guangdong, China 19 Aug 2024, 03:39 CCT (Actual) | PSX OOCL ROTTERDAM 149E (149E) | Long Beach, Los Angeles, California, United States 03 Sep 2024, 05:53 PDT (Actual) | Long Beach Container Terminal (Pier E) 04 Sep 2024, 11:12 PDT (Actual) | Apple Valley, San Bernardino, California, United States | Long Beach Container Terminal (Pier E) | CY/DOOR |

Powered by CargoSmart

| Terms of Use | Privacy and Security Statement | Online Security | Customer Communications Policy |
Copyright © 1998 - 2024. Orient Overseas Container Line Limited. All rights reserved.

OOIL GROUP

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

---

# INVOICE

---

**Invoice No.:** PIN24-BLT-026

**Sold To:**   AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB YANTIAN

**Country of Origin:** CHINA

**Vessel / Voyage:** OOCL ROTTERDAM / 149E

**Ship on or about:** August 19, 2024

**Invoice Date.:** July 30, 2024

**Delivery To:**   18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** LONG BEACH, CA

**Destination:** APPLE VALLEY, CA

---

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95209355 | 57    EA | 128.700/EA | 7,335.900 |
| **SKU No.:** 810715793 | 57    CTNS | | |
| 9FT WINDHAM TREE TWINKLING    No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | |
| **Manufacturer Name & Address**<br><br>KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD<br>BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA<br>HUIZHOU, GUANGDONG<br>516800, CHINA | | | |
| Total:            (57 CTNS) | 57 | | 7,335.900 |
| TOTAL (USD) DOLLARS : SEVEN THOUSAND THREE HUNDRED THIRTY-FIVE AND CENTS NINETY ONLY. | | | |

---

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
OOLU8882010/OOLJXY1267/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI
WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED
LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
OOLU8882010/OOLJXY1267/40H

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

Seller reference

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

---

## PACKING LIST

---

**Invoice No.:** PIN24-BLT-026

**Sold To:** AVDC, LLC
18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Shipment Terms:** FOB YANTIAN

**Country of Origin:** CHINA

**Vessel / Voyage:** OOCL ROTTERDAM / 149E

**Ship on or about:** August 19, 2024

**Invoice Date.:** July 30, 2024

**Delivery To:** 18880 NAVAJO ROAD
APPLE VALLEY, CA 92307
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** LONG BEACH, CA

**Destination:** APPLE VALLEY, CA

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95209355 | | 57  EA | 1,487.00 | 1,697.00 | 14.336 |
| SKU No.: 810715793 | | 57  CTNS | | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| **Total:** | **(57 CTNS)** | **57** | **1,487.00** | **1,697.00** | **14.336** |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
OOLU8882010/OOLJXY1267/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
OOLU8882010/OOLJXY1267/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

Electronic Proof of Claim Confirmation:  3735-1-MAZIM-537621914

Claim Electronically Submitted on (UTC) :  2024-10-04T13:22:31.306Z

Submitted by:  GIFTREE CRAFTS COMPANY LIMITED
                joepeng@giftree.net

**United States Bankruptcy Court, District of Delaware**

| Fill in this information to identify the case (Select only one Debtor per claim form): |
|---|
| **Debtor:** Closeout Distribution, LLC |
| **Case Number:** 24-11978 |

## Modified Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

| | | | |
|---|---|---|---|
| 1. | **Who is the current creditor?** | **GIFTREE CRAFTS COMPANY LIMITED** | |
| | | Name of the current creditor (the person or entity to be paid for this claim) | |
| | | Other names the creditor used with the debtor | |
| 2. | **Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes. From whom? | |
| 3. | **Where should notices and payments to the creditor be sent?** <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> Address1: King Tree Office, West Fl.6th, Bldg 4, Feilette Industrial Park, <br> Address2: No.88 Jiaoyu North Rd. Pingdi Town, <br> Address3: <br> Address4: <br> City: Shenzhen <br> State: Guang Dong <br> Postal Code: 518117 <br> Country: China <br> Contact phone +86-13823169463 <br> Contact email joepeng@giftree.net | **Where should payments to the creditor be sent?** (if different) <br><br> Address1: <br> Address2: <br> Address3: <br> Address4: <br> City: <br> State: <br> Postal Code: <br> Country: <br> Contact phone <br> Contact email |
| 4. | **Does this claim amend one already filed?** | ☐ No <br> ☑ Yes.  Claim number on court claims registry (if known) 921 | Filed on 09/19/2024 <br> MM / DD / YYYY |
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes. Who made the earlier filing? | |

---

**Claim Number: 1780**                           **Proof of Claim**                                          page 1

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☑ No <br> ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: \_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_\_ |

| | |
|---|---|
| **7. How much is the claim?** | $ <u>118,924.80</u>     . **Does this amount include interest or other charges?** <br>      ☑ No <br>      ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| **8. What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. <br><br> Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). <br><br> Limit disclosing information that is entitled to privacy, such as health care information. <br><br> **GOODS SOLD** |

| | |
|---|---|
| **9. Is all or part of the claim secured?** | ☑ No <br> ☐ Yes. The claim is secured by a lien on property. <br><br>      **Nature of property:** <br>      ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*. <br>      ☐ Motor vehicle <br>      ☐ Other. Describe: _____ <br><br>      **Basis for perfection:** _____ <br>      Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.) <br><br>      **Value of property:**     $_____ <br><br>      **Amount of the claim that is secured:**     $_____ <br><br>      **Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.) <br><br>      **Amount necessary to cure any default as of the date of the petition:**     $_____ <br><br>      **Annual Interest Rate** (when case was filed) _____% <br>      ☐ Fixed <br>      ☐ Variable |

| | |
|---|---|
| **10. Is this claim based on a lease?** | ☑ No <br> ☐ Yes. **Amount necessary to cure any default as of the date of the petition.**     $_____ |

| | |
|---|---|
| **11. Is this claim subject to a right of setoff?** | ☑ No <br> ☐ Yes. Identify the property: _____ |

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ✔ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(    ) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |
| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☐ No<br>✔ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.** | $ 118,924.80 |

---

| **Part 3:** | **Sign Below** |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

✔ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

*HUA PENG*                    10/04/2024

_____        _____
Electronic Signature                Date

**Name of the person who is completing and signing this claim**

Name        HUA PENG
            _____
            First name        Middle name        Last name

Title/Company   MANAGER / GIFTREE CRAFTS COMPANY LIMITED
            _____
            Identify the corporate servicer as the company if the authorized agent is a servicer.

            West Fl.6th, Bldg 4, Feilette Industrial Park,

            No.88 Jiaoyu North Rd. Pingdi Town,
Address     _____
            Number        Street

            Shenzhen        Guang Dong    518117    China
            _____
            City        State        ZIP Code    Country

Contact phone  +86-13823169463            Email    joepeng@giftree.net

---

**Additional Noticing Addresses (if provided):**

**Additional Address 1**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
Postal Code:
Country:

Contact Phone:
Contact Email:
_____

**Additional Address 2**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
 Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Supporting Documentation Provided**
☑ Yes
☐ No
------------------------------------------------------------------------------------------------------------------

Attachment Filename:

DC874 PROOF DOCUMENTS OF CLAIM _CLOSEOUT DISTRIBUTION LLC.pdf

**KROLL**

# PO/INVOICE STATEMENT

| DC | CONSIGNEE | PO# | Order Amount | INVOICE# | INVOICE AMOUNT | FCR NO. | DATE OF FCR ISSUED | BILL OF LADING # | VESSEL /VOYAGE | BOOKING NUMBER | CONTAINER NO | GOODS RECEIVED DAY AT FINAL DESTINATION | WITHIN 20 DAYS OF SEP. 9TH (Y/N) | SHIPPING LINE/CONTAINER TRACKING LINK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 874 | CLOSEOUT DISTRIBUTION, LLC 4900 E. Dublin Granville Rd Columbus, OH 43081-7651 US Telephone: 614-278-6800 Fax: 614-278-6871 | 95209352 | US$206,658.10 | PIN24-BLT-018 | US$88,323.50 | CNS-SZP-2401325 | 07/16/2024 | 2150196290 | (OOLU) THALASSA AXIA V.1262-050E | 2150196290 | BMOU5063174 | 08/28/2024 | Y | https://www.oocl.com/usa/eng/Pages/default.aspx |
| | | | | | | | | | | 2150196300 | FSCU9344238 | 08/28/2024 | | |
| | | | | | | | | | | 2150196310 | RFCU4084875 | 08/28/2024 | | |
| | | 95209321 | US$132,581.87 | PIN24-BLT-027 | US$30,601.30 | CNS-SZP-2401576 | 07/30/2024 | 2150642810 | (OOLU) TEXAS TRIUMPH V.1264-031E | 2150642810 | TCLU9783780 | 09/08/2024 | Y | https://www.oocl.com/usa/eng/Pages/default.aspx |
| | | | | | | | | | | 2150723340 | FBLU0189406 | 09/08/2024 | | |
| | **TOTAL** | | | | **US$118,924.80** | | | | | | | | | |

Total Claim AMT:  **US$118,924.80**

Within 20days AMT:  **US$118,924.80**

REMARK:

Goods received day was determined when goods arrived at Big Lots DC according to the terms and conditions Point 2 on the purchase order. It said that Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

**Attached below: PO, FCR, CONTAINER ARRIVED PROOF, INVOICE,  PACKING LIST**

**BIG LOTS!**

**PO #**          **95209352**

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/24/2024 |
| Cancel if not Shipped by: | 07/01/2024 |
| Must be Routed by: | 06/03/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN        ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:   570-695-2862

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800         Fax:  614-278-6871

**Purchase From Vendor:   1008980**

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA
Contact:      JOE PENG
Telephone:   86-755-6122-6325     Fax    86-755-6122-6326
E-Mail:       JOEPENG@GIFTREE.NET

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 3,355 | 560,266.45 | 206,658.10 | 62.453 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:    95209352

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



**IMPORTANT Terms and Conditions**

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.

OFFICE-COPY

PO#: 95209352

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|--------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810614468 | N - 7.5FT  CASH/HAR | 0.00 | CN | 1 | | 1,250 | 26.23 | 44,261.50 | 08/05/2024 |
| 36011 | 8147-H60723-01 | LIT7FT&UP | | | 1 | | 1,250 | 9.18 | 124,987.50 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 99.99 | 64.850 | 129.99 |
| 1 | 481061446806 | | SEA | 3.333 | A1 | | | | | |
| 360 | 810715824 | Z - 7.5FT WINDHAM T | 0.00 | CN | 1 | | 1,007 | 82.50 | 101,686.86 | 08/05/2024 |
| 36011 | 8147-H59004-01 | LIT7FT&UP | | | 1 | | 1,007 | 18.48 | 201,389.93 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 199.99 | 49.920 | 399.00 |
| 2 | 481071582402 | | SEA | 6.222 | A1 | | | | | |
| 360 | 810715803 | S - 7.5FT SHOWSHOE | 0.00 | CN | 1 | | 955 | 75.80 | 89,007.91 | 08/05/2024 |
| 36011 | 8147-H66753-01 | LIT7FT&UP | | | 1 | | 955 | 17.40 | 190,990.45 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 199.99 | 53.776 | 299.99 |
| 3 | 481071580309 | | SEA | 5.890 | A1 | | | | | |
| 360 | 810715793 | GG - 9FT WINDHAM TR | 0.00 | CN | 1 | | 143 | 128.70 | 22,108.94 | 08/05/2024 |
| 36011 | 8147-H59003-02 | LIT7FT&UP | | | 1 | | 143 | 25.91 | 42,898.57 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 299.99 | 48.891 | 599.99 |
| 4 | 481071579303 | | SEA | 8.507 | A1 | | | | | |

# Yusen Logistics

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401325**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-018** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC** **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **July 16, 2024** |
| Shipment From : **SHENZHEN**    To : **TREMONT, PA** | Date of Receipt of Cargo **July 12, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES PO# SKU# DEPT# 360 MADE IN CHINA | | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM CY-CY SHIPPER'S LOAD, COUNT AND SEAL SAID TO CONTAIN | | |

```
BMOU5063174          SEAL# OOLJYA0545     40H  DRY
FSCU9344238          SEAL# OOLJYA0603     40H  DRY
RFCU4084875          SEAL# OOLJXW4876     40H  DRY


ARTIFICIAL XMAS TREE
PO#95209352
1207PCS/1207CTNS
HS CODE:9505100090

SHIP TO CODE & LOCATION : 00874-TREMONT, PA
SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
MATERIAL

1,207 CARTONS                    196.270 CBM    20,974.40 KGS
=============================================================
TOTAL : ONE THOUSAND TWO HUNDRED SEVEN (1,207) CARTONS ONLY

          "FREIGHT COLLECT"
SHIPMENT PER S.S. "THALASSA AXIA" VOY NO. 1262-050E   DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT July 19, 2024. CARGO RECEIVED ON July 12, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**    **July 16, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** *For and on behalf of* **Yusen Logistics (Shenzhen) Co., Ltd.** *Authorized Signature(s)*    As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)    V1 |

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any convention contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

   i)   The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

   ii)   The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for their carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMERWILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of Company.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)   A force majeure event;

b)   Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c)   Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)   Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)   The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)   Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in n this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of Company.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing each such officer, servant, agent, and sub- contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes. Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12 RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set - off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a)   In the case of damage to goods, the date of delivery of cargoes;

b)   In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c)   In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.



# Cargo Tracking

**Search Result - Bill of Lading Number  2150196290**

### Summary

| | | | |
|---|---|---|---|
| B/L Vessel Voyage: | THALASSA AXIA 050E | FND Customs Clearance Code: | E416 |
| Bill of Lading Number: | 2150196290 (B/L Ready) | Inbound Customs Clearance Status: | Cleared (22 Aug 2024, 13:20 GMT) |
| Booking Number: | 2150196290 (Confirmed) 2150196310 (Confirmed) 2150196300 (Confirmed) | Payment Status (collect charges): | Cleared |
| Total Containers: | 3 x 40' Hi-Cube Container | Cargo Release Status: | Released |
| Total Quantity: | 1207 Carton | Original B/L Received by Carrier: | N.A. (Under Sea WayBill) |

**Containers** | Detention & Demurrage

| Container Number | Container Size Type | Quantity | Gross Weight | Verified Gross Mass | Latest Event | | | Final Destination |
|---|---|---|---|---|---|---|---|---|
| | | | | | Event | Location | Time | |
| BMOU506317-4 | 40HQ | 372 Carton | 7142.400 KGS | 11002.400 KGS (Submitted) | Freight Charges Settled | Tremont, Tremont, Schuylkill, Pennsylvania, United States | 26 Sep 2024, 05:10 EDT | Tremont, Schuylkill, Pennsylvania, United States appointment to be arranged |
| FSCU934423-8 | 40HQ | 372 Carton | 7142.400 KGS | 10972.400 KGS (Submitted) | Freight Charges Settled | Tremont, Tremont, Schuylkill, Pennsylvania, United States | 26 Sep 2024, 05:10 EDT | Tremont, Schuylkill, Pennsylvania, United States appointment to be arranged |
| RFCU408487-5 | 40HQ | 463 Carton | 6689.600 KGS | 10499.600 KGS (Submitted) | Freight Charges Settled | Tremont, Tremont, Schuylkill, Pennsylvania, United States | 26 Sep 2024, 05:10 EDT | Tremont, Schuylkill, Pennsylvania, United States appointment to be arranged |

### Detail of OOCL
**Container BMOU506317-4**   Detailed Container Specification Enquiry

Inbound Customs Clearance Status: Released (22 Aug 2024, 09:20 EDT)
Payment Status (collect charges): Cleared (26 Sep 2024, 05:10 EDT)
Linked Reference Number:

**Routing** | Equipment Activities

| Origin | Empty Pickup Location | Full Return Location | Port of Load | Vessel Voyage | Port of Discharge | Final Destination Hub | Destination | Empty Return Location | Haulage |
|---|---|---|---|---|---|---|---|---|---|
| Yantian, Shenzhen, Guangdong, China | | | Yantian, Shenzhen, Guangdong, China 20 Jul 2024, 02:57 CCT (Actual) | ECC1 THALASSA AXIA 1262-050E/1262W (050E/050W) | New York, New York, New York, United States 27 Aug 2024, 22:00 EDT (Actual) | Maher Terminals LLC 28 Aug 2024, 23:06 EDT (Actual) | Tremont, Schuylkill, Pennsylvania, United States | Columbia Container Services | CY/DOOR |


| Terms of Use | Privacy and Security Statement | Online Security | Customer Communications Policy |
Copyright © 1998 - 2024. **Orient Overseas Container Line Limited. All rights reserved.**



# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-018

**Invoice Date.:** July 16, 2024

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** THALASSA AXIA / 1262-050E

**Port of Loading:** YANTIAN

**Ship on or about:** July 20, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** BMOU5063174, FSCU9344238, RFCU4084875

| Cargo Description | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95209352 | 200 | EA | 26.230/EA | 5,246.000 |
| **SKU No.:** 810614468 | 200 | CTNS | | |
| 7.5FT CASH/HARD NEEDLE PENCIL TREE | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **P/O No.:** 95209352 | 1,007 | EA | 82.500/EA | 83,077.500 |
| **SKU No.:** 810715824 | 1,007 | CTNS | | |
| 7.5FT WINDHAM TREE TWINKLING | No. of Pallet: | | | |
| **HTS Code.:** 9505102500 | | | | |
| **Manufacturer Name & Address** | | | | |
| KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA HUIZHOU, GUANGDONG 516800, CHINA | | | | |
| **Total:** (1,207 CTNS) | 1,207 | | | 88,323.500 |

**TOTAL (USD) DOLLARS : EIGHTY-EIGHT THOUSAND THREE HUNDRED TWENTY-THREE AND CENTS FIFTY ONLY.**

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
BMOU5063174/OOLJYA0545/40H
FSCU9344238/OOLJYA0603/40H
RFCU4084875/OOLJXW4876/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
BMOU5063174/OOLJYA0545/40H
FSCU9344238/OOLJYA0603/40H
RFCU4084875/OOLJXW4876/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

Seller reference

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

## PACKING LIST

**Invoice No.:** PIN24-BLT-018

**Sold To:**    CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB YANTIAN

**Country of Origin:** CHINA

**Vessel / Voyage:** THALASSA AXIA / 1262-050E

**Ship on or about:** July 20, 2024

**Invoice Date:** July 16, 2024

**Delivery To:**    50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** BMOU5063174, FSCU9344238, RFCU4084875

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95209352 | | 200 EA | 1,024.00 | 1,640.00 | 18.880 |
| **SKU No.:** 810614468 | | 200 CTNS | | | |
| 7.5FT CASH/HARD NEEDLE PENCIL TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| | | | | | |
| **P/O No.:** 95209352 | | 1,007 EA | 18,764.00 | 19,334.40 | 177.390 |
| **SKU No.:** 810715824 | | 1,007 CTNS | | | |
| 7.5FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** | **(1,207 CTNS)** | 1,207 | 19,788.00 | 20,974.40 | 196.270 |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
BMOU5063174/OOLJYA0545/40H
FSCU9344238/OOLJYA0603/40H
RFCU4084875/OOLJXW4876/40H

We certify that there is no wood packing material in the shipment.

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
BMOU5063174/OOLJYA0545/40H
FSCU9344238/OOLJYA0603/40H
RFCU4084875/OOLJXW4876/40H

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS

STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA



**PO #**          **95209321**

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/24/2024 |
| Cancel if not Shipped by: | 07/01/2024 |
| Must be Routed by: | 06/03/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN         ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:  570-695-2862

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

**Purchase From Vendor:**   1008980

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:     JOE PENG
Telephone:  86-755-6122-6325    Fax    86-755-6122-6326
E-Mail:     JOEPENG@GIFTREE.NET

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 4,449 | 429,025.51 | 132,581.87 | 65.326 |

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1. Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2. Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3. Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4. Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5. Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6. Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7. Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8. Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9. Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification.  Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses'), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance.  Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance.  The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence.  Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI') signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer).  In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies.  With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured.  The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and  (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies.  Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure.  Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control.  In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks.  Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion.  Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce.  "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting.  Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer.  Any purported assignment or delegation made without this consent is void.  Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion.  In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation.  Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives.  Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration.  The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms.  Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum.  The parties hereby agree to waive a trial by jury with respect to Disputes.  Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations.  The location of such arbitration will be in Columbus, Ohio.  Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree.  The parties may also mutually elect to seek mediation as an alternative precursor to arbitration.  If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply.  The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree.  The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability.  Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms.  The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement.  The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof.  The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor.  The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer.  Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected.  The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein.  In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts.  Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy").  Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries.  Certain sections of the PO Terms are for the benefit of Buyer's Affiliates.  As a result, any of Buyer's Affiliates may enforce the PO Terms.  Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY.  EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms.  Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.

OFFICE-COPY

PO#:   95209321

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|--------------------|----|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810475687 | D - 5FT CUPID CASHM | 0.00 | CN | 1 | | 1,493 | 20.68 | 42,680.69 | 08/05/2024 |
| 36011 | 8147-H47709-02 | URNS | | | 1 | | 1,493 | 7.91 | 104,495.07 | |
| 36011005 | Winter Wonder Lane | | H30 | | | | | 69.99 | 59.451 | 92.00 |
| 1 | 481047568706 | | SEA | 2.903 | XX | | | | | |
| 360 | 810569946 | F - 6.5FT BLITZEN F | 0.00 | CN | 1 | | 1,493 | 29.71 | 62,569.24 | 08/05/2024 |
| 36011 | 8147-H54452-04 | URNS | | | 1 | | 1,493 | 12.20 | 134,355.07 | |
| 36011005 | Winter Wonder Lane | | H30 | | | | | 89.99 | 53.760 | 139.99 |
| 2 | 481056994602 | | SEA | 4.510 | A1 | | | | | |
| 360 | 810569935 | PP - 6.5FT GRAND RA | 0.00 | CN | 1 | | 1,463 | 39.20 | 73,527.45 | 08/05/2024 |
| 36011 | 8147-H71010-01 | LIT6-6.5FT | | | 1 | | 1,463 | 11.06 | 190,175.37 | |
| 36011003 | Winter Wonder Lane | | H30 | | | | | 129.99 | 61.639 | 189.00 |
| 3 | 481056993506 | | SEA | 3.890 | A1 | | | | | |

# Yusen Logistics

Yusen Logistics - Yusen Logistics

Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401576**

| | |
|---|---|
| Maker/Supplier : | **GIFTREE CRAFTS COMPANY LIMITED** |

Maker/Supplier's INVOICE No.
**PIN24-BLT-027**

| | |
|---|---|
| Buyer/Consignee : | **CLOSEOUT DISTRIBUTION, LLC** |
| | **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** |

Dated: **July 30, 2024**

| | | |
|---|---|---|
| Shipment From : | **SHENZHEN** | To : **TREMONT, PA** |

Date of Receipt of Cargo
**July 28, 2024**

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS** | | **NOTIFY PARTY: GEODIS** | | |
| **STORES** | | **5101 S. BROAD STREET** | | |
| | | **PHILADELPHIA, PA 19112-1404, U.S.A.** | | |
| **PO#** | | **ATTN: ALENA LAMINA** | | |
| **SKU#** | | **ALSO NOTIFY: EDRAY 2020 LLC.** | | |
| **DEPT# 360** | | **1300 SOUTH MINT STREET SUITE 200** | | |
| **MADE IN CHINA** | | **CHARLOTTE NC 28203 USA** | | |
| | | **TEL: 704-593-6329** | | |
| | | **EMAIL: DATAQUALITY@EDRAYCPL.COM** | | |
| | | **CY-CY** | | |
| | | **SHIPPER'S LOAD, COUNT AND SEAL** | | |
| | | **SAID TO CONTAIN** | | |
| | | **FBLU0189406        SEAL# OOLJXZ7530        40H  DRY** | | |
| | | **TCLU9783780        SEAL# OOLJYA0829        40H  DRY** | | |
| | | **ARTIFICIAL XMAS TREE** | | |
| | | **PO#95209321** | | |
| | | **1030PCS/1030CTNS** | | |
| | | **HS CODE: 9505100090** | | |
| | | **SHIP TO CODE & LOCATION : 00874-TREMONT, PA** | | |
| | | **SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING** | | |
| | | **MATERIAL** | | |
| | **1,030 CARTONS** | | **131.520 CBM** | **10,815.00 KGS** |

========================================================
**TOTAL : ONE THOUSAND THIRTY (1,030) CARTONS ONLY**

**"FREIGHT COLLECT"**
SHIPMENT PER S.S. "TEXAS TRIUMPH" VOY NO. 1264-031E    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT August 4, 2024. CARGO RECEIVED ON July 28, 2024.

---

### THIS IS NOT A DOCUMENT OF TITLE

The Goods and instructions are accepted and dealt with subject to the
**YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard
Trading Conditions printed reverse side. Forwarding instructions can only
be cancelled or altered if the original of this document is surrendered to the
Company and then only provided the Company is still in a position to
comply with such cancellation or alteration. Instructions authorizing
disposal by a third party can only be cancelled or altered if the original of
this document is surrendered to the Company, and then only provided the
Company have not yet received instructions under the original authority.
The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: 1
(Terms and conditions are to be continued to the reverse side hereof.)

**SHENZHEN**                          **July 30, 2024**

(Place and date of issue.)
**YUSEN LOGISTICS**

*For and on behalf of*
**Yusen Logistics (Shenzhen) Co., Ltd.**

*Authorized Signature(s)*                    As Agent

(Authorized Signature)                    V1

**1.  DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.  COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all article information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever re, whether in tort, bailment, or otherwise.

**3.  SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i)     The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for being transported (nternational as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.  DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.  COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMERWILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment or agency.

**6.  LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND OTHER SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7.  INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2 Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3 Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.  WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.  DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.  SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11.  LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes. Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12  RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13  NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14.  TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15.  NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company has no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.  GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.



# Cargo Tracking

### Search Result - Bill of Lading Number  2150642810

#### Summary

| | |
|---|---|
| B/L Vessel Voyage: | TEXAS TRIUMPH 031E |
| Bill of Lading Number: | 2150642810 (B/L Ready) |
| Booking Number: | 2150642810 (Confirmed) |
| | 2150723340 (Confirmed) |
| Total Containers: | 2 x 40' Hi-Cube Container |
| Total Quantity: | 1030 Carton |

| | |
|---|---|
| FND Customs Clearance Code: | E416 |
| Inbound Customs Clearance Status: Note | Cleared  (06 Sep 2024, 15:40 GMT) |
| Payment Status (collect charges): Note | Cleared |
| Cargo Release Status: | Released |
| Original B/L Received by Carrier: | N.A. (Under Sea WayBill) |

**Containers** | **Detention & Demurrage**

| Container Number | Container Size Type | Quantity | Gross Weight | Verified Gross Mass | Latest Event Event | Location | Time | Final Destination |
|---|---|---|---|---|---|---|---|---|
| TCLU978378-0 | 40HQ | 515 Carton | 5407.500 KGS | 9247.500 KGS (Submitted) | Container Returned to Carrier | Columbia Container Services, New York, New York, New York, United States | 12 Sep 2024, 17:30 EDT | Tremont, Schuylkill, Pennsylvania, United States appointment to be arranged |
| FBLU018940-6 | 40HQ | 515 Carton | 5407.500 KGS | 9107.500 KGS (Submitted) | Container Returned to Carrier | Columbia Container Services, New York, New York, New York, United States | 13 Sep 2024, 13:52 EDT | Tremont, Schuylkill, Pennsylvania, United States appointment to be arranged |

#### Detail of OOCL
**Container TCLU978378-0**    Detailed Container Specification Enquiry

Inbound Customs Clearance Status: Note  Released (06 Sep 2024, 11:40 EDT)
Payment Status (collect charges): Note
Linked Reference Number: Note

**Routing** | **Equipment Activities**

| Origin | Empty Pickup Location | Full Return Location | Port of Load | Vessel Voyage | Port of Discharge | Final Destination Hub | Destination | Empty Return Location | Haulage |
|---|---|---|---|---|---|---|---|---|---|
| Yantian, Shenzhen, Guangdong, China | Yantian Port | Yantian Port 31 Jul 2024, 12:00 CCT (Cargo Cutoff Date At First Full Hub) | Yantian, Shenzhen, Guangdong, China 04 Aug 2024, 23:30 CCT (Actual) | ECC1 TEXAS TRIUMPH 1264-031E/1264W (031E/031W) | New York, New York, New York, United States 08 Sep 2024, 00:36 EDT (Actual) | Maher Terminals LLC 08 Sep 2024, 15:04 EDT (Actual) | Tremont, Schuylkill, Pennsylvania, United States | Columbia Container Services | CY/DOOR |

 | Terms of Use | Privacy and Security Statement | Online Security | Customer Communications Policy |
Copyright © 1998 - 2024. Orient Overseas Container Line Limited. All rights reserved. 

https://pbservice.moc.oocl.com/party/cargotracking/ct_search_from_other_domain.jsf?ANONYMOUS_TOKEN=VXbRozCPNKCNsZwCnLAbMC...    1/1

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-027

**Invoice Date.:** July 30, 2024

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** TEXAS TRIUMPH / 1264-031E

**Port of Loading:** YANTIAN

**Ship on or about:** August 04, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** FBLU0189406, TCLU9783780

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95209321 | 1,030 EA | 29.710/EA | 30,601.300 |
| **SKU No.:** 810569946 | 1,030 CTNS | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | |
| **HTS Code.:** 9505102500 | | | |
| | | | |
| **Manufacturer Name & Address** | | | |
| KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA HUIZHOU, GUANGDONG 516800, CHINA | | | |
| Total: (1,030 CTNS) | 1,030 | | 30,601.300 |
| **TOTAL (USD) DOLLARS : THIRTY THOUSAND SIX HUNDRED ONE AND CENTS THIRTY ONLY.** | | | |
| | | | |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
FBLU0189406/OOLJXZ7530/40H
TCLU9783780/OOLJYA0829/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
FBLU0189406/OOLJXZ7530/40H
TCLU9783780/OOLJYA0829/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#

SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# PACKING LIST

**Invoice No.:** PIN24-BLT-027

**Invoice Date:** July 30, 2024

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** TEXAS TRIUMPH / 1264-031E

**Port of Loading:** YANTIAN

**Ship on or about:** August 04, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** FBLU0189406, TCLU9783780

| Cargo Description | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|
| P/O No.: 95209321 | 1,030  EA | 9,478.00 | 10,815.00 | 131.520 |
| SKU No.: 810569946 | 1,030  CTNS | | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | |
| HTS Code.: 9505102500 | | | | |
| **Total:**  (1,030 CTNS) | 1,030 | 9,478.00 | 10,815.00 | 131.520 |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
FBLU0189406/OOLJXZ7530/40H
TCLU9783780/OOLJYA0829/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
FBLU0189406/OOLJXZ7530/40H
TCLU9783780/OOLJYA0829/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

Electronic Proof of Claim Confirmation:  **3735-1-UCBWX-637681613**

Claim Electronically Submitted on (UTC) :  **2024-10-04T13:43:21.313Z**

Submitted by:  GIFTREE CRAFTS COMPANY LIMITED
joepeng@giftree.net

**KROLL**

**United States Bankruptcy Court, District of Delaware**

---

**Fill in this information to identify the case (Select only one Debtor per claim form):**

**Debtor:** Durant DC, LLC

**Case Number:** 24-11975

---

Modified Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

---

**Part 1:    Identify the Claim**

| | |
|---|---|
| 1. **Who is the current creditor?** | GIFTREE CRAFTS COMPANY LIMITED |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| 2. **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? |

| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|---|
| | Address1:  King Tree Office, West Fl.6th, Bldg 4, Feilette Industrial Park, | Address1: |
| | Address2:  No.88 Jiaoyu North Rd. Pingdi Town, | Address2: |
| | Address3: | Address3: |
| | Address4: | Address4: |
| | City:  Shenzhen | City: |
| | State:  Guang Dong | State: |
| | Postal Code:  518117 | Postal Code: |
| | Country:  China | Country: |
| | Contact phone  +86-13823169463 | Contact phone |
| | Contact email  joepeng@giftree.net | Contact email |

| 4. **Does this claim amend one already filed?** | ☐ No<br>☑ Yes.  Claim number on court claims registry (if known) 923 | Filed on 09/19/2024<br>MM / DD / YYYY |
|---|---|---|

| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? |
|---|---|

---

Claim Number: 1781                    Proof of Claim                                    page 1

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**  $ 299,110.75

**Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

GOODS SOLD

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                $_____

Amount of the claim that is secured:    $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

☐ No

☑ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.**    $ 238,225.75

---

**Part 3:    Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

HUA PENG          10/04/2024

_____          _____
Electronic Signature          Date

**Name of the person who is completing and signing this claim**

Name      HUA PENG

_____          _____          _____
First name          Middle name          Last name

Title/Company    MANAGER / GIFTREE CRAFTS COMPANY LIMITED

Identify the corporate servicer as the company if the authorized agent is a servicer.

West Fl.6th, Bldg 4, Feilette Industrial Park,

No.88 Jiaoyu North Rd. Pingdi Town,

Address

_____          _____
Number          Street

Shenzhen          Guang Dong      518117      China

_____          _____          _____
City          State          ZIP Code          Country

Contact phone    +86-13823169463          Email    joepeng@giftree.net

---

Proof of Claim                                                    page 3

**Additional Noticing Addresses (if provided):**

**Additional Address 1**
Name:
Address1:
Address2:
Address3:
Address4:

City:
State:
Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Address 2**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
 Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Supporting Documentation Provided**

☑ Yes
☐ No

-------------------------------------------------------------------------------------------------------------

Attachment Filename:

DC879 PROOF DOCUMENTS OF CLAIM_DURANT DC LLC.pdf

**KROLL**

# PO/INVOICE STATEMENT

| DC | CONSIGNEE | PO# | Order Amount | INVOICE# | INVOICE AMOUNT | FCR NO. | DATE OF FCR ISSUED | BILL OF LADING # | VESSEL /VOYAGE | BOOKING NUMBER | CONTAINER NO | GOODS RECEIVED DAY AT FINAL DESTINATION | WITHIN 20 DAYS OF SEP. 9TH (Y/N) | SHIPPING LINE/CONTAINER TRACKING LINK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 879 | DURANT DC, LLC<br>4900 E. Dublin Granville Rd<br>Columbus, OH 43081-7651 US<br>Telphone: 614-278-6800<br>Fax: 614-278-6871 | 95209353 | US$195,774.51 | PIN24-BLT-004 | US$60,885.00 | CNS-SZP-2401066 | 07/16/2024 | CMDUSHZ6375112 | (CMDU) OOCL TOKYO V.0TYI7E1MA | SHZ6375112 | CMAU3491999 | 08/07/2024 | N | https://www.cma-cgm.com/ebusiness/tracking |
| | | | | | | | | | | SHZ6375129 | CMAU6477192 | 08/07/2024 | | |
| | | | | PIN24-BLT-007 | US$51,351.37 | CNS-SZP-2401159 | 07/22/2024 | CMDUSHZ6397084 | (CMDU) CMA CGM YUKON V.0TXHVE1MA | SHZ6397097 | TCKU4760471 | 08/20/2024 | Y | https://www.cma-cgm.com/ebusiness/tracking |
| | | | | | | | | | | SHZ6397084 | SELU4130554 | 08/27/2024 | | |
| | | | | PIN24-BLT-011 | US$83,538.14 | CNS-SZP-2401247 | 07/24/2024 | SZPM05952100 | (HDMU) HYUNDAI FORWARD V.0157E | SZPM05952100 | GAOU6335194 | 08/28/2024 | Y | https://www.hmm21.com/e-service/general/trackNTrace/TrackNTrace.do |
| | | | | | | | | | | SZPM07064500 | KOCU5043070 | 08/28/2024 | | |
| | | | | | | | | | | SZPM09128300 | TGBU6484504 | 08/28/2024 | | |
| | | 95209322 | 66683.11 | PIN24-BLT-008 | US$66,683.11 | CNS-SZP-2401160 | 07/22/2024 | SZPM44258900 | (HDMU) HYUNDAI FORWARD V.0157E | SZPM79801800 | BMOU5167332 | 08/28/2024 | Y | https://www.hmm21.com/e-service/general/trackNTrace/TrackNTrace.do |
| | | | | | | | | | | SZPM75919700 | BMOU5168869 | 08/28/2024 | | |
| | | | | | | | | | | SZPM78625400 | KOCU4891409 | 08/28/2024 | | |
| | | | | | | | | | | SZPM44258900 | TCNU7233273 | 08/28/2024 | | |
| | | 95209340 | US$4,505.88 | PIN24-BLT-12A | US$22,496.13 | CNS-SZP-2401484 | 07/25/2024 | CMDUSHZ6470501 | (CMDU) TS MELBOURNE V.0WF1BE1MA | SHZ6470501 | TGHU9638694 | 08/28/2024 | Y | https://www.cma-cgm.com/ebusiness/tracking |
| | | 95317581 | US$4,060.80 | | | | | | | | | 08/28/2024 | | |
| | | | | | | | | | | | | 08/28/2024 | | |
| | | 95209361 | US$28,086.45 | PIN24-BLT-020 | US$14,157.00 | CNS-SZP-2401299 | 07/24/2024 | 2150642420 | (OOLU) XIN FEI ZHOU V.096E | 2150642420 | OOLU8747941 | 09/03/2024 | Y | https://www.oocl.com/usa/eng/Pages/default.aspx |
| | **TOTAL** | | | | **US$299,110.75** | | | | | | | | | |

Total Claim AMT:    US$299,110.75
Within 20days AMT:    US$238,225.75

**REMARK:**

Goods received day was determined when goods arrived at Big Lots DC according to the terms and conditions Point 2 on the purchase order. It said that Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

**Attached below: PO, FCR, CONTAINER ARRIVED PROOF, INVOICE,  PACKING LIST**



**PO #**          **95209353**

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN         ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:   580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

**Purchase From Vendor:**   1008980

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA
Contact:     JOE PENG
Telephone:  86-755-6122-6325    Fax    86-755-6122-6326
E-Mail:     JOEPENG@GIFTREE.NET

**ADDITIONAL COMMENTS**

| | | | |
|---|---|---|---|
| Units | Retail | Vendor Cost | IMU |
| 2,889 | 517,571.11 | 195,774.51 | 60.447 |

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

OFFICE-COPY



OFFICE-COPY    **IMPORTANT Terms and Conditions**

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses'), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.

OFFICE-COPY

PO#:   95209353

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810614468 | N - 7.5FT  CASH/HAR | 0.00 | CN | 1 | | 947 | 26.23 | 33,532.51 | 08/05/2024 |
| 36011 | 8147-H60723-01 | LIT7FT&UP | | | 1 | | 947 | 9.18 | 94,690.53 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 99.99 | 64.850 | 129.99 |
| 1 | 481061446806 | | SEA | 3.333 | A1 | | | | | |
| 360 | 810715824 | Z - 7.5FT WINDHAM T | 0.00 | CN | 1 | | 818 | 82.50 | 82,601.64 | 08/05/2024 |
| 36011 | 8147-H59004-01 | LIT7FT&UP | | | 1 | | 818 | 18.48 | 163,591.82 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 199.99 | 49.920 | 399.00 |
| 2 | 481071582402 | | SEA | 6.222 | A1 | | | | | |
| 360 | 810715803 | S - 7.5FT SHOWSHOE | 0.00 | CN | 1 | | 779 | 75.80 | 72,604.36 | 08/05/2024 |
| 36011 | 8147-H66753-01 | LIT7FT&UP | | | 1 | | 779 | 17.40 | 155,792.21 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 199.99 | 53.776 | 299.99 |
| 3 | 481071580309 | | SEA | 5.890 | A1 | | | | | |
| 360 | 810715793 | GG - 9FT WINDHAM TR | 0.00 | CN | 1 | | 345 | 128.70 | 53,339.76 | 08/05/2024 |
| 36011 | 8147-H59003-02 | LIT7FT&UP | | | 1 | | 345 | 25.91 | 103,496.55 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 299.99 | 48.891 | 599.99 |
| 4 | 481071579303 | | SEA | 8.507 | A1 | | | | | |

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-SZP-2401066**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No.<br>**PIN24-BLT-004** |
| Buyer/Consignee : **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **July 02, 2024** |
| Shipment From : **SHENZHEN**          To : **DURANT, OK** | Date of Receipt of Cargo<br>**June 30, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#<br>SKU#<br>DEPT# 360<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>            5101 S. BROAD STREET<br>            PHILADELPHIA, PA 19112-1404, U.S.A.<br>            ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>            1300 SOUTH MINT STREET SUITE 200<br>            CHARLOTTE NC 28203 USA<br>            TEL: 704-593-6329<br>            EMAIL: DATAQUALITY@EDRAYCPL.COM<br>CY-CY<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>CMAU3491999          SEAL# R7044666          40H  DRY<br>CMAU6477192          SEAL# R7044804          40H  DRY<br><br><br>ARTIFICIAL XMAS TREE<br>PO#95209353<br>738PCS/738CTNS<br>HS CODE:9505100090<br><br>SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 738 CARTONS | | 130.020 CBM | 14,169.60 KGS |

====================================================================
TOTAL : SEVEN HUNDRED THIRTY-EIGHT (738) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "OOCL TOKYO" VOY NO. 0TYI7E1MA    DISCHARGED AT HOUSTON, TX
SAILING ON / ABOUT July 7, 2024. CARGO RECEIVED ON June 30, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**          **July 16, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>*For and on behalf of*<br>**Yusen Logistics (Shenzhen) Co., Ltd.**<br><br>*Authorized Signature(s)*          As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)          V1 |

**1.    DEFINITIONS**

1.1.   "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2.   "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3.   "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4.   "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5.   "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6.   "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7.   "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become entitled to an interest in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all article information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)     By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)     By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)     The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d)     The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e)     The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)     Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)     Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h)     Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i)     Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

       i)     The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

       ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)     Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k)     Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)     Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or notification by Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment or agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CONDITIONS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a)     A force majeure event;

b)     Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c)     Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)     Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)     The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b)     Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability – Except as set forth in in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of Company.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.   Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.   Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3.   Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.   Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.   SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1   Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11.   LIEN, DISPOSAL OF GOODS, ETC.**

11.1   Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at an y time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2   Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the net proceeds of such sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes. Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4   The rights of Company under this Section are independent and cumulative.

**12    RATES AND CHARGES**

12.1   Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2   Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3   On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1   Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a)     In the case of damage to goods, the date of delivery of cargoes;

b)     In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c)     In any other case, the date of the event giving rise to the claim.

13.2   No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14.   TIME BAR**

14.1   Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15.   NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1   Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.   GOVERNING LAW**

16.1   These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

**Tracking details**  `EMPTY IN DEPOT`





CMAU3491999  •  45 G1

● RECEIPT
│
● PORT  Yantian, CH
│
● PORT  Houston, Tx, US
│
● DELIVERY

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:01**

ⓘ Times reflected are local Times Provisional moves are given for information purpose only, without warranty of any kind either expressed or implied, and are subject to change at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Sunday, 30-JUN-2024 🕐 02:52 | EMPTY TO SHIPPER | SHEKOU | | |
| Sunday, 30-JUN-2024 🕐 13:44 | READY TO BE LOADED | YANTIAN | | |
| Sunday, 07-JUL-2024 🕐 09:32 | LOADED ON BOARD | YANTIAN | OOCL TOKYO | 0TYI7E1MA |
| Sunday, 07-JUL-2024 🕐 22:00 | VESSEL DEPARTURE | YANTIAN | OOCL TOKYO | 0TYI7E1MA |
| Monday, 05-AUG-2024 🕐 09:36 | VESSEL ARRIVAL | HOUSTON, TX | OOCL TOKYO | 0TYI8W1MA |
| Tuesday, 06-AUG-2024 🕐 11:04 | DISCHARGED | HOUSTON, TX | OOCL TOKYO | 0TYI8W1MA |
| Tuesday, 06-AUG-2024 🕐 16:56 | CONTAINER TO CONSIGNEE | HOUSTON, TX | | |
| Wednesday, 07-AUG-2024 🕐 02:00 | FULL AT CONSIGNEE'S PREMISES | HOUSTON, TX | | |
| **Wednesday, 14-AUG-2024 🕐 16:13** | EMPTY IN DEPOT | **HOUSTON, TX** | | |

**Tracking details** `EMPTY IN DEPOT`





CMAU6477192 • 45 G1

- RECEIPT
- PORT  Yantian, CH
- PORT  Houston, Tx, US
- DELIVERY

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:02**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Sunday, 30-JUN-2024<br>🕐 00:27 | EMPTY TO SHIPPER | SHEKOU | | |
| Sunday, 30-JUN-2024<br>🕐 12:08 | READY TO BE LOADED | YANTIAN | | |
| Sunday, 07-JUL-2024<br>🕐 17:55 | LOADED ON BOARD | YANTIAN | OOCL TOKYO | 0TYI7E1MA |
| Sunday, 07-JUL-2024<br>🕐 22:00 | VESSEL DEPARTURE | YANTIAN | OOCL TOKYO | 0TYI7E1MA |
| Monday, 05-AUG-2024<br>🕐 09:36 | VESSEL ARRIVAL | HOUSTON, TX | OOCL TOKYO | 0TYI8W1MA |
| Monday, 05-AUG-2024<br>🕐 21:13 | DISCHARGED | HOUSTON, TX | OOCL TOKYO | 0TYI8W1MA |
| Tuesday, 06-AUG-2024<br>🕐 12:41 | CONTAINER TO CONSIGNEE | HOUSTON, TX | | |
| Wednesday, 07-AUG-2024<br>🕐 02:00 | FULL AT CONSIGNEE'S PREMISES | HOUSTON, TX | | |
| **Wednesday, 14-AUG-2024**<br>🕐 **10:17** | EMPTY IN DEPOT | **HOUSTON, TX** | | |

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

---

# INVOICE

---

**Invoice No.:** PIN24-BLT-004

**Invoice Date.:** July 02, 2024

**Sold To:**  DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:**  2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL TOKYO / 0TYI7E1MA

**Port of Loading:** YANTIAN

**Ship on or about:** July 07, 2024

**Port of Entry:** HOUSTON, TX

**Destination:** DURANT, OK

**Container Number (Factory Load) :** CMAU3491999, CMAU6477192

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| P/O No.: 95209353 | | 738 | EA | 82.500/EA | 60,885.000 |
| SKU No.: 810715824 | | 738 | CTNS | | |
| 7.5FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA HUIZHOU, GUANGDONG 516800, CHINA | | | | |
| | **Total:** | **(738 CTNS)** | | **738** | **60,885.000** |
| **TOTAL (USD) DOLLARS : SIXTY THOUSAND EIGHT HUNDRED EIGHTY-FIVE ONLY.** | | | | | |
| | | | | | |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
CMAU3491999/R7044666/40H
CMAU6477192/R7044804/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
CMAU3491999/R7044666/40H
CMAU6477192/R7044804/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#

SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN,
GUANGDONG, 518117, CHINA

# PACKING LIST

**Invoice No.:** PIN24-BLT-004

**Invoice Date:** July 02, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL TOKYO / 0TYI7E1MA

**Port of Loading:** YANTIAN

**Ship on or about:** July 07, 2024

**Port of Entry:** HOUSTON, TX

**Destination:** DURANT, OK

**Container Number (Factory Load) :** CMAU3491999, CMAU6477192

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95209353 | | 738 EA | 12,678.00 | 14,169.60 | 130.020 |
| SKU No.: 810715824 | | 738 CTNS | | | |
| 7.5FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| Total: | (738 CTNS) | 738 | 12,678.00 | 14,169.60 | 130.020 |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU,
CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
CMAU3491999/R7044666/40H
CMAU6477192/R7044804/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU,
CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
CMAU3491999/R7044666/40H
CMAU6477192/R7044804/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

Page 1 of 1

# Yusen Logistics

Yusen Logistics - Yusen Logistics    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401159**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-007** |
| Buyer/Consignee : **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **July 10, 2024** |
| Shipment From : **SHENZHEN**    To : **DURANT, OK** | Date of Receipt of Cargo **July 06, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS** **STORES** **PO#** **SKU#** **DEPT# 360** **MADE IN CHINA** | | **NOTIFY PARTY: GEODIS** **5101 S. BROAD STREET** **PHILADELPHIA, PA 19112-1404, U.S.A.** **ATTN: ALENA LAMINA** **ALSO NOTIFY: EDRAY 2020 LLC.** **1300 SOUTH MINT STREET SUITE 200** **CHARLOTTE NC 28203 USA** **TEL: 704-593-6329** **EMAIL: DATAQUALITY@EDRAYCPL.COM** **CY-CY** **SHIPPER'S LOAD, COUNT AND SEAL** **SAID TO CONTAIN** **SELU4130554      SEAL# R5015378      40H  DRY** **TCKU4760471      SEAL# R7390889      40'  DRY** **ARTIFICIAL XMAS TREE** **PO#95209353** **829PCS/829CTNS** **HS CODE:9505100090** **SHIP TO CODE & LOCATION : 00879-DURANT, OK** **SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING** **MATERIAL** | | |
| | **829 CARTONS** | | **121.040 CBM** | **12,214.00 KGS** |

==========================================================
**TOTAL : EIGHT HUNDRED TWENTY-NINE (829) CARTONS ONLY**

**"FREIGHT COLLECT"**
**SHIPMENT PER S.S. "CMA CGM YUKON" VOY NO. 0TXHVE1MA    DISCHARGED AT LOS ANGELES, CA**
**SAILING ON / ABOUT July 14, 2024. CARGO RECEIVED ON July 6, 2024.**

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**    **July 22, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** *For and on behalf of* **Yusen Logistics (Shenzhen) Co., Ltd.** *Authorized Signature(s)*    As Agent |
| **No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: 1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)    V1 |

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever there re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

   i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

   ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for carriage and other handling in accordance with international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMERWILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further liability of Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful conduct, or gross neglect of Company.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1 Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2 Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3 Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4 Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at an y time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes. Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12 RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such amounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company will have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

**Tracking details**  `EMPTY IN DEPOT`





**TCKU4760471** • 42 G1

● **RECEIPT**
● **PORT**  Yantian, CH
● **PORT**  Los Angeles, Ca, US
● **DELIVERY**  Dallas, Tx, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 08:41**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|------|-------|----------|--------|--------|
| Saturday, 06-JUL-2024 11:02 | EMPTY TO SHIPPER | SHEKOU | | |
| Sunday, 07-JUL-2024 04:11 | READY TO BE LOADED | YANTIAN | | |
| Saturday, 13-JUL-2024 11:00 | LOADED ON BOARD | YANTIAN | CMA CGM YUKON | 0TXHVE1MA |
| Saturday, 13-JUL-2024 22:30 | VESSEL DEPARTURE | YANTIAN | CMA CGM YUKON | 0TXHVE1MA |
| Tuesday, 30-JUL-2024 07:30 | VESSEL ARRIVAL | LOS ANGELES, CA | CMA CGM YUKON | 0TXHWW1MA |
| Saturday, 03-AUG-2024 00:40 | DISCHARGED | LOS ANGELES, CA | CMA CGM YUKON | 0TXHWW1MA |
| Monday, 12-AUG-2024 12:00 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Monday, 12-AUG-2024 12:01 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Friday, 16-AUG-2024 23:54 | TRAIN ARRIVAL FOR IMPORT | DALLAS, TX | | |
| Sunday, 18-AUG-2024 16:36 | IMPORT UNLOAD FULL FROM RAIL | DALLAS, TX | | |
| Sunday, 18-AUG-2024 17:31 | RECEIVED FOR IMPORT TRANSFER | DALLAS, TX | | |
| Tuesday, 20-AUG-2024 03:07 | CONTAINER TO CONSIGNEE | DALLAS, TX | | |
| **Friday, 23-AUG-2024 21:11** | EMPTY IN DEPOT | **DALLAS, TX** | | |

Tracking details  `EMPTY IN DEPOT`





**SELU4130554** • 45 G1

- **RECEIPT**
- **PORT**  Yantian, CH
- **PORT**  Los Angeles, Ca, US
- **DELIVERY**  Dallas, Tx, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 08:40**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Saturday, 06-JUL-2024 09:00 | EMPTY TO SHIPPER | YANTIAN | | |
| Saturday, 06-JUL-2024 18:47 | READY TO BE LOADED | YANTIAN | | |
| Saturday, 13-JUL-2024 20:52 | LOADED ON BOARD | YANTIAN | CMA CGM YUKON | 0TXHVE1MA |
| Saturday, 13-JUL-2024 22:30 | VESSEL DEPARTURE | YANTIAN | CMA CGM YUKON | 0TXHVE1MA |
| Tuesday, 30-JUL-2024 07:30 | VESSEL ARRIVAL | LOS ANGELES, CA | CMA CGM YUKON | 0TXHWW1MA |
| Friday, 02-AUG-2024 09:18 | DISCHARGED | LOS ANGELES, CA | CMA CGM YUKON | 0TXHWW1MA |
| Saturday, 17-AUG-2024 21:09 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Saturday, 17-AUG-2024 21:10 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Saturday, 24-AUG-2024 16:00 | TRAIN ARRIVAL FOR IMPORT | DALLAS, TX | | |
| Sunday, 25-AUG-2024 17:48 | IMPORT UNLOAD FULL FROM RAIL | DALLAS, TX | | |
| Sunday, 25-AUG-2024 18:32 | RECEIVED FOR IMPORT TRANSFER | DALLAS, TX | | |
| Tuesday, 27-AUG-2024 05:20 | CONTAINER TO CONSIGNEE | DALLAS, TX | | |
| **Thursday, 29-AUG-2024 10:21** | EMPTY IN DEPOT | **DALLAS, TX** | | |

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-007

**Invoice Date.:** July 10, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** CMA CGM YUKON / 0TXHVE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** July 13, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** SELU4130554, TCKU4760471

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| P/O No.: 95209353 | | 379 | EA | 26.230/EA | 9,941.170 |
| SKU No.: 810614468 | | 379 | CTNS | | |
| 7.5FT CASH/HARD NEEDLE PENCIL TREE | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| P/O No.: 95209353 | | 138 | EA | 128.700/EA | 17,760.600 |
| SKU No.: 810715793 | | 138 | CTNS | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| P/O No.: 95209353 | | 312 | EA | 75.800/EA | 23,649.600 |
| SKU No.: 810715803 | | 312 | CTNS | | |
| 7.5FT SHOWSHOE TREE GLITTER | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| **Manufacturer Name & Address** KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA HUIZHOU, GUANGDONG 516800, CHINA | | | | | |
| Total: | (829 CTNS) | 829 | | | 51,351.370 |
| TOTAL (USD) DOLLARS : FIFTY-ONE THOUSAND THREE HUNDRED FIFTY-ONE AND CENTS THIRTY-SEVEN ONLY. | | | | | |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:

SELU4130554/R5015378/40H
TCKU4760471/R7390889/40

Page 295 of 410

Case 24-11967-JKS     Doc 1584-2     Filed 11/06/25     Page 303 of 422

SELU4130554/R5015378/40H
TCKU4760471/R7390889/40

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# PACKING LIST

**Invoice No.:** PIN24-BLT-007

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB YANTIAN

**Country of Origin:** CHINA

**Vessel / Voyage:** CMA CGM YUKON / 0TXHVE1MA

**Ship on or about:** July 13, 2024

**Invoice Date.:** July 10, 2024

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** SELU4130554, TCKU4760471

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95209353 | | 379 EA | 2,678.00 | 3,107.80 | 35.770 |
| **SKU No.:** 810614468 | | 379 CTNS | | | |
| 7.5FT CASH/HARD NEEDLE PENCIL TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209353 | | 138 EA | 3,245.00 | 4,098.60 | 33.240 |
| **SKU No.:** 810715793 | | 138 CTNS | | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209353 | | 312 EA | 4,570.00 | 5,007.60 | 52.030 |
| **SKU No.:** 810715803 | | 312 CTNS | | | |
| 7.5FT SHOWSHOE TREE GLITTER | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| Total: (829 CTNS) | | 829 | 10,493.00 | 12,214.00 | 121.040 |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
SELU4130554/R5015378/40H
TCKU4760471/R7390889/40'

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
SELU4130554/R5015378/40H
TCKU4760471/R7390889/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401247**

| | |
|---|---|
| Maker/Supplier: **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-011** |
| Buyer/Consignee: **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **July 12, 2024** |
| Shipment From: **SHENZHEN**    To: **DURANT, OK** | Date of Receipt of Cargo **July 07, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                     NOTIFY PARTY: GEODIS
STORES                                     5101 S. BROAD STREET
PO#                                        PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#                                       ATTN: ALENA LAMINA
DEPT# 360                    ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN CHINA                              1300 SOUTH MINT STREET SUITE 200
                                           CHARLOTTE NC 28203 USA
                                           TEL: 704-593-6329
                                           EMAIL: DATAQUALITY@EDRAYCPL.COM

                             CY-CY

                             SHIPPER'S LOAD, COUNT AND SEAL
                             SAID TO CONTAIN
                             GAOU6335194        SEAL# 24H0560788        40H  DRY
                             KOCU5043070        SEAL# 24H0554962        40H  DRY
                             TGBU6484504        SEAL# 24H0560825        40H  DRY


                             ARTIFICIAL XMAS TREE
                             PO#95209353
                             1322PCS/1322CTNS
                             HS CODE:9505100090

                             SHIP TO CODE & LOCATION : 00879-DURANT, OK
                             SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                             MATERIAL

                             1,322 CARTONS              195.430 CBM    19,836.85 KGS
                             =============================================================
                             TOTAL : ONE THOUSAND THREE HUNDRED TWENTY-TWO (1,322) CARTONS
                             ONLY

                                  "FREIGHT COLLECT"
SHIPMENT PER S.S. "HYUNDAI FORWARD" VOY NO. 0157E    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 14, 2024. CARGO RECEIVED ON July 7, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                    **July 24, 2024** |
|---|---|

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**

*For and on behalf of*
*Yusen Logistics (Shenzhen) Co., Ltd.*

*Authorized Signature(s)*                    As Agent

(Authorized Signature)                    V1

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

   i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

   ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in n this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or intentional wrongdoing.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of administrative nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at an y time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes. Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12 RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Track & Trace

**B/L No.**

SZPM05952100

## Tracking Result



YANTIAN, SHENZHEN, CHINA — BUSAN, KOREA — LOS ANGELES, CA — DURANT, OK

| | Origin | Loading Port | T/S Port | Discharging Port | Destination |
|---|---|---|---|---|---|
| **Location** | YANTIAN, SHENZHEN, CHINA | YANTIAN, SHENZHEN, CHINA | BUSAN, KOREA | LOS ANGELES, CA | DURANT, OK |
| **Terminal** | YANTIAN INT'L CONTAINER TERMINAL LTD. | YANTIAN INT'L CONTAINER TERMINAL LTD. | BUSAN CONTAINER TERMINAL | YUSEN TERMINALS INC | USDUAZON ZONE |
| **Arrival(ETB)** | | 2024-07-08 04:19 | 2024-07-22 12:08 | 2024-08-08 05:13 | 2024-08-28 12:00 |
| **Departure** | 2024-07-07 05:16 | 2024-07-14 08:43 | 2024-07-28 16:54 | 2024-08-21 18:52 | |

· The arrival date & time at discharging port is set as ETB (Estimated time of Berthing)
· Blue : Estimated Date & Time
· Red : Actual Date & Time
· All dates and times are local dates and times.
· Estimated data is given without guarantee and subject to change without prior notice.
· If your shipment is blank now, please contact with HMM for more details.

| No. | Container No. | Trailer No. | Cargo Type | Type / Size | Weight | B/L No. | Cell No. | Service Term | B/L Status | Seal No. | Movement | Last Movement Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Case 24-11967-JKS | | Doc 1584-2 | Filed 01/06/25 | Page 310 of 422 | | | | |
| 1 | GAOU6335194 | | DC | DC/4H | 5964 | SZPM05952100 | | CY-DR | Waybill | 24H0560788 | Import Empty Container Returned | 2024-09-03 14:52 |
| 2 | KOCU5043070 | | DC | DC/4H | 6291.6 | SZPM05952100 | | CY-DR | Waybill | 24H0554962 | Import Empty Container Returned | 2024-09-10 17:01 |
| 3 | TGBU6484504 | | DC | DC/4H | 7581.25 | SZPM05952100 | | CY-DR | Waybill | 24H0560825 | Import Empty Container Returned | 2024-09-10 20:46 |

· You can view Track & Trace results when clicking Container number.

## Current Location

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

## INVOICE

**Invoice No.:** PIN24-BLT-011        **Invoice Date.:** July 12, 2024

**Sold To:**  DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:**  2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** HYUNDAI FORWARD / 0157E

**Port of Loading:** YANTIAN

**Ship on or about:** July 14, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** GAOU6335194, KOCU5043070, TGBU6484504

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95209353 | | 568 | EA | 26.230/EA | 14,898.640 |
| **SKU No.:** 810614468 | | 568 | CTNS | | |
| 7.5FT CASH/HARD NEEDLE PENCIL TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209353 | | 207 | EA | 128.700/EA | 26,640.900 |
| **SKU No.:** 810715793 | | 207 | CTNS | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209353 | | 467 | EA | 75.800/EA | 35,398.600 |
| **SKU No.:** 810715803 | | 467 | CTNS | | |
| 7.5FT SHOWSHOE TREE GLITTER | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209353 | | 80 | EA | 82.500/EA | 6,600.000 |
| **SKU No.:** 810715824 | | 80 | CTNS | | |
| 7.5FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |

**Manufacturer Name & Address**

KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU, GUANGDONG
516800, CHINA

| | Total: | (1,322 CTNS) | 1,322 | 83,538.140 |
|---|---|---|---|---|

**TOTAL (USD) DOLLARS : EIGHTY-THREE THOUSAND FIVE HUNDRED THIRTY-EIGHT AND CENTS FOURTEEN ONLY.**

**Consolidator(Full Name & Address)** CAS0024-11967-JKS   Doc 1584-2   **Container Stuffing Location(Full Name & Address )**

KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
GAOU6335194/24H0560788/40H
KOCU5043070/24H0554962/40H
TGBU6484504/24H0560825/40H

KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
GAOU6335194/24H0560788/40H
KOCU5043070/24H0554962/40H
TGBU6484504/24H0560825/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

Seller reference

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

## PACKING LIST

**Invoice No.:** PIN24-BLT-011

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB YANTIAN

**Country of Origin:** CHINA

**Vessel / Voyage:** HYUNDAI FORWARD / 0157E

**Ship on or about:** July 14, 2024

**Invoice Date.:** July 12, 2024

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** GAOU6335194, KOCU5043070, TGBU6484504

| Cargo Description | | Quantity (Unit) | | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|---|
| **P/O No.:** 95209353 | | 568 | EA | 3,894.00 | 4,657.60 | 53.600 |
| **SKU No.:** 810614468 | | 568 | CTNS | | | |
| 7.5FT CASH/HARD NEEDLE PENCIL TREE | No. of Pallet: | | | | | |
| **HTS Code.:** 9505102500 | | | | | | |
| **P/O No.:** 95209353 | | 207 | EA | 5,784.00 | 6,147.90 | 49.860 |
| **SKU No.:** 810715793 | | 207 | CTNS | | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | | |
| **HTS Code.:** 9505102500 | | | | | | |
| **P/O No.:** 95209353 | | 467 | EA | 6,872.00 | 7,495.35 | 77.880 |
| **SKU No.:** 810715803 | | 467 | CTNS | | | |
| 7.5FT SHOWSHOE TREE GLITTER | No. of Pallet: | | | | | |
| **HTS Code.:** 9505102500 | | | | | | |
| **P/O No.:** 95209353 | | 80 | EA | 976.00 | 1,536.00 | 14.090 |
| **SKU No.:** 810715824 | | 80 | CTNS | | | |
| 7.5FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | | |
| **HTS Code.:** 9505102500 | | | | | | |
| **Total:** | (1,322 CTNS) | 1,322 | | 17,526.00 | 19,836.85 | 195.430 |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU,

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU,

CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
GAOU6335194/24H0560788/40H
KOCU5043070/24H0554962/40H
TGBU6484504/24H0560825/40H

CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
GAOU6335194/24H0560788/40H
KOCU5043070/24H0554962/40H
TGBU6484504/24H0560825/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA



**PO #**  **95209322**

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 1 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN        , CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:  580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

**Purchase From Vendor:   1008980**

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA
Contact:      JOE PENG
Telephone:  86-755-6122-6325    Fax    86-755-6122-6326
E-Mail:      JOEPENG@GIFTREE.NET

**ADDITIONAL COMMENTS**

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| | 2,222 | 215,937.78 | 66,683.11 | 65.207 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY





OFFICE-COPY

# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.
"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.
"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.
"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.
"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.
"Ship", "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.
"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.
"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1. Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.
2. Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.
3. Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.
4. Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.
5. Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.
6. Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.
7. Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.
8. Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.
9. Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification.  Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance.  Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance.  The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence.  Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer).  In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies.  With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured.  The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and  (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies.  Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure.  Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control.  In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks.  Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion.  Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce.  "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting.  Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer.  Any purported assignment or delegation made without this consent is void.  Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion.  In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation.  Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives.  Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration.  The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms.  Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum.  The parties hereby agree to waive a trial by jury with respect to Disputes.  Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations.  The location of such arbitration will be in Columbus, Ohio.  Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree.  The parties may also mutually elect to seek mediation as an alternative precursor to arbitration.  If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply.  The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree.  The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof.  The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor.  The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer.  Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries.  Certain sections of the PO Terms are for the benefit of Buyer's Affiliates.  As a result, any of Buyer's Affiliates may enforce the PO Terms.  Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY.  EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms.  Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked or accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810475687 | D - 5FT CUPID CASHM | 0.00 | CN | 1 | | 729 | 20.68 | 20,840.07 | 08/05/2024 |
| 36011 | 8147-H47709-02 | URNS | | | 1 | | 729 | 7.91 | 51,022.71 | |
| 36011005 | Winter Wonder Lane | | H30 | | | | | 69.99 | 59.451 | 92.00 |
| 1 | 481047568706 | | SEA | 2.903 | XX | | | | | |
| 360 | 810569946 | F - 6.5FT BLITZEN F | 0.00 | CN | 1 | | 729 | 29.71 | 30,551.22 | 08/05/2024 |
| 36011 | 8147-H54452-04 | URNS | | | 1 | | 729 | 12.20 | 65,602.71 | |
| 36011005 | Winter Wonder Lane | | H30 | | | | | 89.99 | 53.760 | 139.99 |
| 2 | 481056994602 | | SEA | 4.510 | A1 | | | | | |
| 360 | 810569935 | PP - 6.5FT GRAND RA | 0.00 | CN | 1 | | 764 | 39.20 | 38,397.11 | 08/05/2024 |
| 36011 | 8147-H71010-01 | LIT6-6.5FT | | | 1 | | 764 | 11.06 | 99,312.36 | |
| 36011003 | Winter Wonder Lane | | H30 | | | | | 129.99 | 61.639 | 189.00 |
| 3 | 481056993506 | | SEA | 3.890 | A1 | | | | | |

Yusen Logistics - Yusen Logistics (repeated in left and right margins and top/bottom borders)

# Yusen Logistics

Yusen Logistics - Yusen Logistics                    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401160**

| | |
|---|---|
| Maker/Supplier: **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No.<br>**PIN24-BLT-008** |
| Buyer/Consignee: **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **July 10, 2024** |
| Shipment From: **SHENZHEN**    To: **DURANT, OK** | Date of Receipt of Cargo<br>**July 07, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                    NOTIFY PARTY: GEODIS
STORES                                    5101 S. BROAD STREET
PO#                                       PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#                                      ATTN: ALENA LAMINA
DEPT# 360                   ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN CHINA                             1300 SOUTH MINT STREET SUITE 200
                                          CHARLOTTE NC 28203 USA
                                          TEL: 704-593-6329
                                          EMAIL: DATAQUALITY@EDRAYCPL.COM

                            CY-CY

                            SHIPPER'S LOAD, COUNT AND SEAL
                            SAID TO CONTAIN
                            BMOU5167332        SEAL# 24H0553408      40H   DRY
                            BMOU5168869        SEAL# 24H0576513      40H   DRY
                            KOCU4891409        SEAL# 24H0560760      40H   DRY
                            TCNU7233273        SEAL# 24H0554992      40H   DRY


                            ARTIFICIAL XMAS TREE
                            PO#95209322
                            2222PCS/2222CTNS
                            HS CODE: 9505100090

                            SHIP TO CODE & LOCATION : 00879-DURANT, OK
                            SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                            MATERIAL
                            2,222 CARTONS                    237.150 CBM    20,220.50 KGS
                            ================================================================
                            TOTAL : TWO THOUSAND TWO HUNDRED TWENTY-TWO (2,222) CARTONS
                            ONLY

                      "FREIGHT COLLECT"
SHIPMENT PER S.S. "HYUNDAI FORWARD" VOY NO. 0157E    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 12, 2024. CARGO RECEIVED ON July 7, 2024.
```

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                    **July 22, 2024** |

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**

*For and on behalf of*
**Yusen Logistics (Shenzhen) Co., Ltd.**

*Authorized Signature(s)*    As Agent

(Authorized Signature)    V1

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment whatsoever.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in s this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or default.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub- contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes. Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12 RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company herewith has no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

# Track & Trace

**B/L No.**

SZPM44258900

## Tracking Result



**YANTIAN, SHENZHEN, CHINA**

BUSAN, KOREA

LOS ANGELES, CA

**DURANT, OK**

| | Origin | Loading Port | T/S Port | Discharging Port | Destination |
|---|---|---|---|---|---|
| **Location** | YANTIAN, SHENZHEN, CHINA | YANTIAN, SHENZHEN, CHINA | BUSAN, KOREA | LOS ANGELES, CA | DURANT, OK |
| **Terminal** | YANTIAN INT'L CONTAINER TERMINAL LTD. | YANTIAN INT'L CONTAINER TERMINAL LTD. | BUSAN CONTAINER TERMINAL | YUSEN TERMINALS INC | USDUAZON ZONE |
| **Arrival(ETB)** | | 2024-07-07 01:06 | 2024-07-21 00:59 | 2024-08-08 05:13 | 2024-08-25 12:00 |
| **Departure** | 2024-07-06 11:06 | 2024-07-12 20:25 | 2024-07-28 16:54 | 2024-08-18 15:49 | |

· The arrival date & time at discharging port is set as ETB (Estimated time of Berthing)

· Blue : Estimated Date & Time

· Red : Actual Date & Time

· All dates and times are local dates and times.

· Estimated data is given without guarantee and subject to change without prior notice.

· If your shipment is blank now, please contact with HMM for more details.

| No. | Container No. | Trailer No. | Cargo Type | Type / Size | Weight | B/L No. | Cell No. | Service Term | B/L Status | Seal No. | Movement | Last Movement Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Case 24-11967-JKS Doc 1584-2 Filed 01/06/25 Page 325 of 422 | | | | | | |
| 1 | **BMOU5167332** | | DC | DC/4H | 4620 | SZPM44258900 | | CY-DR | Waybill | 24H0553408 | Import Empty Container Returned | 2024-08-27 14:32 |
| 2 | BMOU5168869 | | DC | DC/4H | 4866.7 | SZPM44258900 | | CY-DR | Waybill | 24H0576513 | Import Empty Container Returned | 2024-09-03 16:21 |
| 3 | KOCU4891409 | | DC | DC/4H | 4725 | SZPM44258900 | | CY-DR | Waybill | 24H0560760 | Import Empty Container Returned | 2024-08-27 21:15 |
| 4 | TCNU7233273 | | DC | DC/4H | 6008.8 | SZPM44258900 | | CY-DR | Waybill | 24H0554992 | Import Empty Container Returned | 2024-09-02 09:42 |

· You can view Track & Trace results when clicking Container number.

## Current Location

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-008

**Invoice Date.:** July 10, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** HYUNDAI FORWARD / 0157E

**Port of Loading:** YANTIAN

**Ship on or about:** July 12, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** BMOU5167332, BMOU5168869, KOCU4891409, TCNU7233273

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| P/O No.: 95209322 | | 729 | EA | 20.680/EA | 15,075.720 |
| SKU No.: 810475687 | | 729 | CTNS | | |
| 5FT CUPID CASHMERE URN TREE | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| | | | | | |
| P/O No.: 95209322 | | 764 | EA | 39.200/EA | 29,948.800 |
| SKU No.: 810569935 | | 764 | CTNS | | |
| 6.5FT GRAND RAPIDS FLOCKED TREE | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| | | | | | |
| P/O No.: 95209322 | | 729 | EA | 29.710/EA | 21,658.590 |
| SKU No.: 810569946 | | 729 | CTNS | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA HUIZHOU, GUANGDONG 516800, CHINA | | | | |
| Total: | (2,222 CTNS) | | 2,222 | | 66,683.110 |

**TOTAL (USD) DOLLARS : SIXTY-SIX THOUSAND SIX HUNDRED EIGHTY-THREE AND CENTS ELEVEN ONLY.**

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
516800 CHINA
Container No./Seal/Size:
BMOU5167332/24H0553408/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
516800 CHINA
Container No./Seal/Size:
BMOU5167332/24H0553408/40H

BMOU5168869/24H0576513/40H
KOCU4891409/24H0560760/40H
TCNU7233273/24H0554992/40H

BMOU5168869/24H0576513/40H
KOCU4891409/24H0560760/40H
TCNU7233273/24H0554992/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES


PO#
SKU#
DEPT# 360
MADE IN CHINA

**GIFTREE CRAFTS COMPANY LIMITED**

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# PACKING LIST

| | |
|---|---|
| **Invoice No.:** PIN24-BLT-008 | **Invoice Date.:** July 10, 2024 |

**Sold To:**    DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:**    2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** HYUNDAI FORWARD / 0157E

**Port of Loading:** YANTIAN

**Ship on or about:** July 12, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** BMOU5167332, BMOU5168869, KOCU4891409, TCNU7233273

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95209322 | | 729  EA | 3,975.00 | 4,811.40 | 59.910 |
| **SKU No.:** 810475687 | | 729  CTNS | | | |
| 5FT CUPID CASHMERE URN TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209322 | | 764  EA | 6,972.00 | 7,754.60 | 84.150 |
| **SKU No.:** 810569935 | | 764  CTNS | | | |
| 6.5FT GRAND RAPIDS FLOCKED TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209322 | | 729  EA | 6,794.00 | 7,654.50 | 93.090 |
| **SKU No.:** 810569946 | | 729  CTNS | | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| Total: | (2,222 CTNS) | 2,222 | 17,741.00 | 20,220.50 | 237.150 |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
BMOU5167332/24H0553408/40H
BMOU5168869/24H0576513/40H
KOCU4891409/24H0560760/40H
TCNU7233273/24H0554992/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
BMOU5167332/24H0553408/40H
BMOU5168869/24H0576513/40H
KOCU4891409/24H0560760/40H
TCNU7233273/24H0554992/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA



| | |
|---|---|
| **PO #** | **95317581** |

| | |
|---|---|
| Date Created | 04/17/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/01/2024 |
| Cancel if not Shipped by: | 07/08/2024 |
| Must be Routed by: | 06/10/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | LCL-YANTIAN，CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100       Fax:  580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800       Fax: 614-278-6871

**Purchase From Vendor:   1008980**

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:     JOE PENG
Telephone:  86-755-6122-6325    Fax   86-755-6122-6326
E-Mail:      JOEPENG@GIFTREE.NET

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 1,728 | 17,262.72 | 4,060.80 | 67.227 |

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

OFFICE-COPY



OFFICE-COPY

# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:   95317581

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|---|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|---|-------------|------|-----------|---------------|
| 360 | 810734180 | 12IN PRELIT HARD NE | 0.00 | CN | 12 | | 1,728 | 2.35 | 5,657.47 | 09/02/2024 |
| 36004 | 8147-H75850-02 | DECWREATHS | | | 1 | | 144 | 0.92 | 17,262.72 | |
| 36004005 | Winter Wonder Lane | | H33 | | | | | 9.99 | 67.462 | 13.80 |
| 1 | 481073418006 | | SEA | 4.069 | A1 | | | | | |



**PO #**  **95209340**

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 2 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/08/2024 |
| Cancel if not Shipped by: | 07/15/2024 |
| Must be Routed by: | 06/17/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN     ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100      Fax:  580-931-2197

---

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800      Fax:  614-278-6871

---

**Purchase From Vendor:**  1008980

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:     JOE PENG
Telephone:   86-755-6122-6325     Fax    86-755-6122-6326
E-Mail:      JOEPENG@GIFTREE.NET

---

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 162 | 14,638.38 | 4,505.88 | 66.273 |

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.     Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.     Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC").  A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.     Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.     Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.     Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.     Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.     Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.     Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.     Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



OFFICE-COPY

**IMPORTANT Terms and Conditions**

Page 332 of 410

Case 24-11057-BLS    Doc 1584    Filed 10/29/24    Page 332 of 422

PO#:    95209340

Page 5 of 6

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



Case 24-11967-JKS    Doc 1584-2    Filed 01/06/25    Page 341 of 422

OFFICE-COPY

PO#:  95209340

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810475687 | D - 5FT CUPID CASHM | 0.00 | CN | 1 | | 75 | 20.68 | 2,144.04 | 08/26/2024 |
| 36011 | 8147-H47709-02 | URNS | | | 1 | | 75 | 7.91 | 5,249.25 | |
| 36011005 | Winter Wonder Lane | | 030 | | | | | 69.99 | 59.451 | 92.00 |
| 1 | 481047568706 | | SEA | 2.903 | XX | | | | | |
| 360 | 810569946 | F - 6.5FT BLITZEN F | 0.00 | CN | 1 | | 48 | 29.71 | 2,011.60 | 08/26/2024 |
| 36011 | 8147-H54452-04 | URNS | | | 1 | | 48 | 12.20 | 4,319.52 | |
| 36011005 | Winter Wonder Lane | | 030 | | | | | 89.99 | 53.760 | 149.00 |
| 2 | 481056994602 | | SEA | 4.510 | A1 | | | | | |
| 360 | 810569935 | PP - 6.5FT GRAND RA | 0.00 | CN | 1 | | 39 | 39.20 | 1,960.06 | 08/26/2024 |
| 36011 | 8147-H71010-01 | LIT6-6.5FT | | | 1 | | 39 | 11.06 | 5,069.61 | |
| 36011003 | Winter Wonder Lane | | 030 | | | | | 129.99 | 61.639 | 223.63 |
| 3 | 481056993506 | | SEA | 3.890 | A1 | | | | | |



**PO #**               **95209361**

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 1 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 07/08/2024 |
| Cancel if not Shipped by: | 07/15/2024 |
| Must be Routed by: | 06/17/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN            ,  CN |

See attached Terms and  Conditions for
additional Big Lots requirements.
A complete list of requirements can be found
on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit
it to BigLotsmsds@chemtelinc.com prior to the time of shipment in
compliance with OSHA 29 CRF.1910.1200. If the product does not require
a Safety Data Sheet (SDS), please disregard this request. Thank you for
assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:   580-931-2197

---

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

---

Purchase From Vendor:   1008980

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:      JOE PENG
Telephone:  86-755-6122-6325    Fax    86-755-6122-6326
E-Mail:      JOEPENG@GIFTREE.NET

---

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 324 | 70,396.76 | 28,086.45 | 55.649 |

---

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY    **IMPORTANT Terms and Conditions**

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC").  A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification.  Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance.  Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance.  The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence.  Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer).  In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies.  With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured.  The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and  (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification.  Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies.  Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure.  Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control.  In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks.  Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion.  Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce.  "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting.  Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer.  Any purported assignment or delegation made without this consent is void.  Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion.  In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation.  Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives.  Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration.  The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms.  Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum.  The parties hereby agree to waive a trial by jury with respect to Disputes.  Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations.  The location of such arbitration will be in Columbus, Ohio.  Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree.  The parties may also mutually elect to seek mediation as an alternative precursor to arbitration.  If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply.  The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree.  The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability.  Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms.  The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement.  The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof.  The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor.  The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer.  Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected.  The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein.  In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts.  Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy").  Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries.  Certain sections of the PO Terms are for the benefit of Buyer's Affiliates.  As a result, any of Buyer's Affiliates may enforce the PO Terms.  Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY.  EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms.  Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



OFFICE-COPY

**IMPORTANT Terms and Conditions**

Page 338 of 410

PO#: 95209361

Page 5 of 6

Case 24-11967-JKS    Doc 1584    Filed 01/06/25    Page 346 of 422

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.

OFFICE-COPY

PO#:   95209361

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810614468 | N - 7.5FT  CASH/HAR | 0.00 | CN | 1 | | 65 | 26.23 | 2,301.60 | 08/26/2024 |
| 36011 | 8147-H60723-01 | LIT7FT&UP | | | 1 | | 65 | 9.18 | 6,499.35 | |
| 36011002 | Winter Wonder Lane | | 030 | | | | | 99.99 | 64.850 | 129.99 |
| 1 | 481061446806 | | SEA | 3.333 | A1 | | | | | |
| 360 | 810715824 | Z - 7.5FT WINDHAM T | 0.00 | CN | 1 | | 52 | 82.50 | 5,250.96 | 08/26/2024 |
| 36011 | 8147-H59004-01 | LIT7FT&UP | | | 1 | | 52 | 18.48 | 10,399.48 | |
| 36011002 | Winter Wonder Lane | | 030 | | | | | 199.99 | 49.920 | 399.00 |
| 2 | 481071582402 | | SEA | 6.222 | A1 | | | | | |
| 360 | 810715803 | S - 7.5FT SHOWSHOE | 0.00 | CN | 1 | | 86 | 75.80 | 8,015.37 | 08/26/2024 |
| 36011 | 8147-H66753-01 | LIT7FT&UP | | | 1 | | 86 | 17.40 | 17,199.14 | |
| 36011002 | Winter Wonder Lane | | 030 | | | | | 199.99 | 53.776 | 299.99 |
| 3 | 481071580309 | | SEA | 5.890 | A1 | | | | | |
| 360 | 810715793 | GG - 9FT WINDHAM TR | 0.00 | CN | 1 | | 121 | 128.70 | 18,707.57 | 08/26/2024 |
| 36011 | 8147-H59003-02 | LIT7FT&UP | | | 1 | | 121 | 25.91 | 36,298.79 | |
| 36011002 | Winter Wonder Lane | | 030 | | | | | 299.99 | 48.891 | 599.99 |
| 4 | 481071579303 | | SEA | 8.507 | A1 | | | | | |

Yusen Logistics - Yusen Logistics          # Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401484**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-12A** |
| Buyer/Consignee : **DURANT DC, LLC** <br> **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **July 25, 2024** |
| Shipment From : **SHENZHEN**　　　　To : **DURANT, OK** | Date of Receipt of Cargo **July 09, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

**PLEASE REFER TO ATTACHED**
  **SHEET(S).**

```
                        NOTIFY PARTY: GEODIS
                                      5101 S. BROAD STREET
                                      PHILADELPHIA, PA 19112-1404, U.S.A.
                                      ATTN: ALENA LAMINA
                        ALSO NOTIFY: EDRAY 2020 LLC.
                                      1300 SOUTH MINT STREET SUITE 200
                                      CHARLOTTE NC 28203 USA
                                      TEL: 704-593-6329
                                      EMAIL: DATAQUALITY@EDRAYCPL.COM
                        CY-CY
```

ORIGINAL

```
     520 CARTONS                              65.460 CBM      5,454.05 KGS
     =====================================================================
     TOTAL : FIVE HUNDRED TWENTY (520) CARTONS ONLY
```

            **"FREIGHT COLLECT"**
**SHIPMENT PER S.S. "TS MELBOURNE" VOY NO. 0WF1BE1MA    DISCHARGED AT LOS ANGELES, CA**
**SAILING ON / ABOUT July 15, 2024. CARGO RECEIVED ON July 9, 2024.**

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**　　　　　　　　**July 25, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) <br> **YUSEN LOGISTICS** <br><br> *For and on behalf of* <br> **Yusen Logistics (Shenzhen) Co., Ltd.** <br><br> *Authorized Signature(s)*　　　As Agent |
| **No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: 1** <br> (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)　　　　　　　V1 |

# Yusen Logistics

V1

**FCR No.**    CNS-SZP-2401484

Attachment Page 1/1

| Shipping Mark | Description of Goods |
|---|---|
| BIG LOTS | SHIPPER'S LOAD, COUNT AND SEAL |
| STORES | SAID TO CONTAIN |
| | TGHU9638694          SEAL# R6708431          40H  DRY |
| PO# | |
| SKU# | |
| DEPT# 360 | |
| MADE IN CHINA | ARTIFICIAL XMAS TREE |
| | PO#95209340 |
| BIG LOTS | 162PCS/162CTNS |
| STORES | HS CODE:9505100090 |
| PO# | ARTIFICIAL XMAS TREE |
| SKU# | PO#95209361 |
| DEPT# 360 | 214PCS/214CTNS |
| MADE IN CHINA | HS CODE: 9505100090 |
| BIG LOTS | ARTIFICIAL XMAS WREATH |
| STORES | PO#95317581 |
| | 1728PCS/144CTNS |
| PO# | HS CODE:9505100090 |
| SKU# | |
| DEPT# 360 | SHIP TO CODE & LOCATION : 00879-DURANT, OK |
| MADE IN CHINA | SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING |
| | MATERIAL |

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' Instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the Company's customer, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any packings, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1 In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2 Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3 Any and all article information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever re, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1 Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

   i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

   ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for their carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1 Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the cargoes, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2 Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3 Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1 SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2 Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3 Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4 Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authority from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5 Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6 Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7 Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment or engagement.

**6. LIABILITY AND LIMITATIONS**

6.1 SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2 Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3 Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4 Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5 No insurance will be arranged by Company for the benefit of Shipper.

6.6 Entire Liability – Except as set forth in n this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7 Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of Company.

6.8 By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1 Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1 Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions in writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1 Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities in or at any place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1 Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2 Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes. Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4 The rights of Company under this Section are independent and cumulative.

**12 RATES AND CHARGES**

12.1 Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2 Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3 On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13 NOTICE OF CLAIM**

13.1 Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the date of the event giving rise to the claim.

13.2 No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1 Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1 Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

16.1 These Conditions and any act or contract to which they apply shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

## Tracking details · EMPTY IN DEPOT





**TGHU9638694** · 45 G1

- RECEIPT
- PORT   Yantian, CH
- PORT   Los Angeles, Ca, US
- DELIVERY   Dallas, Tx, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:12**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Monday, 08-JUL-2024 20:13 | EMPTY TO SHIPPER | YANTIAN | | |
| Tuesday, 09-JUL-2024 20:29 | READY TO BE LOADED | YANTIAN | | |
| Sunday, 14-JUL-2024 02:21 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024 17:00 | VESSEL DEPARTURE | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Monday, 05-AUG-2024 01:56 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Tuesday, 20-AUG-2024 11:07 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Tuesday, 20-AUG-2024 11:08 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Sunday, 25-AUG-2024 04:39 | TRAIN ARRIVAL FOR IMPORT | DALLAS, TX | | |
| Monday, 26-AUG-2024 14:02 | IMPORT UNLOAD FULL FROM RAIL | DALLAS, TX | | |
| Monday, 26-AUG-2024 14:32 | RECEIVED FOR IMPORT TRANSFER | DALLAS, TX | | |
| Wednesday, 28-AUG-2024 04:10 | CONTAINER TO CONSIGNEE | DALLAS, TX | | |
| Friday, 30-AUG-2024 13:26 | EMPTY IN DEPOT | DALLAS, TX | | |

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

## INVOICE

**Invoice No.:** PIN24-BLT-12A

**Invoice Date.:** July 25, 2024

**Sold To:**  DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:**  2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** TS MELBOURNE / 0WF1BE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** July 14, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** TGHU9638694

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95209340 | | 75 | EA | 20.680/EA | 1,551.000 |
| **SKU No.:** 810475687 | | 75 | CTNS | | |
| 5FT CUPID CASHMERE URN TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209340 | | 39 | EA | 39.200/EA | 1,528.800 |
| **SKU No.:** 810569935 | | 39 | CTNS | | |
| 6.5FT GRAND RAPIDS FLOCKED TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209340 | | 48 | EA | 29.710/EA | 1,426.080 |
| **SKU No.:** 810569946 | | 48 | CTNS | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209361 | | 65 | EA | 26.230/EA | 1,704.950 |
| **SKU No.:** 810614468 | | 65 | CTNS | | |
| 7.5FT CASH/HARD NEEDLE PENCIL TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209361 | | 11 | EA | 128.700/EA | 1,415.700 |
| **SKU No.:** 810715793 | | 11 | CTNS | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209361 | | 86 | EA | 75.800/EA | 6,518.800 |
| **SKU No.:** 810715803 | | 86 | CTNS | | |
| 7.5FT SHOWSHOE TREE GLITTER | No. of Pallet: | | | | |

**HTS Code.:** 9505102500 Case 24-11967-JKS    Doc 1584-2    Filed 01/06/25    Page 353 of 422

| | | | | |
|---|---|---|---|---|
| **P/O No.:** 95209361 | | 52 | EA | 82.500/EA | 4,290.000 |
| **SKU No.:** 810715824 | | 52 | CTNS | | |

7.5FT WINDHAM TREE TWINKLING                    No. of Pallet:

**HTS Code.:** 9505102500

| | | | | |
|---|---|---|---|---|
| **P/O No.:** 95317581 | | 1,728 | EA | 2.350/EA | 4,060.800 |
| **SKU No.:** 810734180 | | 144 | CTNS | | |

12IN HARDNEEDLE DECORATION WREATH                    No. of Pallet:

**HTS Code.:** 9505102500

**Manufacturer Name & Address**

KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU, GUANGDONG
516800, CHINA

| | Total: | (520 CTNS) | 2,104 | 22,496.130 |
|---|---|---|---|---|

**TOTAL (USD) DOLLARS : TWENTY-TWO THOUSAND FOUR HUNDRED NINETY-SIX AND CENTS THIRTEEN ONLY.**

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
TGHU9638694/R6708431/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
TGHU9638694/R6708431/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# PACKING LIST

**Invoice No.:** PIN24-BLT-12A

**Sold To:**   DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB YANTIAN

**Country of Origin:** CHINA

**Vessel / Voyage:** TS MELBOURNE / 0WF1BE1MA

**Ship on or about:** July 14, 2024

**Invoice Date.:** July 25, 2024

**Delivery To:**   2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** TGHU9638694

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95209340 | | 75 EA | 324.00 | 495.00 | 6.160 |
| **SKU No.:** 810475687 | | 75 CTNS | | | |
| 5FT CUPID CASHMERE URN TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209340 | | 39 EA | 267.00 | 395.85 | 4.300 |
| **SKU No.:** 810569935 | | 39 CTNS | | | |
| 6.5FT GRAND RAPIDS FLOCKED TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209340 | | 48 EA | 427.00 | 504.00 | 6.130 |
| **SKU No.:** 810569946 | | 48 CTNS | | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209361 | | 65 EA | 467.00 | 533.00 | 6.130 |
| **SKU No.:** 810614468 | | 65 CTNS | | | |
| 7.5FT CASH/HARD NEEDLE PENCIL TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209361 | | 11 EA | 246.00 | 326.70 | 2.650 |
| **SKU No.:** 810715793 | | 11 CTNS | | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |

**HTS Code.:** 9505102500

| | | | | | | |
|---|---|---|---|---|---|---|
| **P/O No.:** 95209361 | | 86 | EA | 1,207.00 | 1,380.30 | 14.340 |
| **SKU No.:** 810715803 | | 86 | CTNS | | | |
| 7.5FT SHOWSHOE TREE GLITTER | **No. of Pallet:** | | | | | |
| **HTS Code.:** 9505102500 | | | | | | |
| | | | | | | |
| **P/O No.:** 95209361 | | 52 | EA | 824.00 | 998.40 | 9.160 |
| **SKU No.:** 810715824 | | 52 | CTNS | | | |
| 7.5FT WINDHAM TREE TWINKLING | **No. of Pallet:** | | | | | |
| **HTS Code.:** 9505102500 | | | | | | |
| | | | | | | |
| **P/O No.:** 95317581 | | 1,728 | EA | 734.00 | 820.80 | 16.590 |
| **SKU No.:** 810734180 | | 144 | CTNS | | | |
| 12IN HARDNEEDLE DECORATION WREATH | **No. of Pallet:** | | | | | |
| **HTS Code.:** 9505102500 | | | | | | |
| **Total:** (520 CTNS) | | 2,104 | | 4,496.00 | 5,454.05 | 65.460 |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
TGHU9638694/R6708431/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
TGHU9638694/R6708431/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA
BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401299**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-020** |
| Buyer/Consignee : **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **July 13, 2024** |
| Shipment From : **SHENZHEN**    To : **DURANT, OK** | Date of Receipt of Cargo **July 12, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                  NOTIFY PARTY: GEODIS
STORES                          5101 S. BROAD STREET
                                PHILADELPHIA, PA 19112-1404, U.S.A.
PO#                             ATTN: ALENA LAMINA
SKU#                      ALSO NOTIFY: EDRAY 2020 LLC.
DEPT# 360                       1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                   CHARLOTTE NC 28203 USA
                                TEL: 704-593-6329
                                EMAIL: DATAQUALITY@EDRAYCPL.COM

                          CFS-CY

                          OOLU8747941 (PART)     SEAL# OOLJXX5076      40H  DRY


                          ARTIFICIAL XMAS TREE
                          PO#95209361
                          110PCS/110CTNS
                          HS CODE:9505100090

                          SHIP TO CODE & LOCATION : 00879-DURANT, OK
                          SHIPPER DECLARED ALL ITEM(S) CONTAIN NO WOOD PACKAGING
                          MATERIAL



                          110 CARTONS               27.666 CBM   3,289.00 KGS
                          =========================================================
                          TOTAL : ONE HUNDRED TEN (110) CARTONS ONLY

                              "FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO ENGLAND" VOY NO. 064E    DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT July 25, 2024. CARGO RECEIVED ON July 12, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**    **July 24, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** *For and on behalf of* **Yusen Logistics (Shenzhen) Co., Ltd.** *Authorized Signature(s)*    As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)    V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers' Instructions received  in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions  which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the  receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other  services intended to accomplish delivery of  the cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or    equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the   remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate  to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound  by all stipulations,  exceptions, terms, and conditions on the  front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and  agreeing  to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)    The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other illegal material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide  the total gross  mass established  using calibrated and certified equipment  of each packed Container (FCL) or  each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy  and timeliness of such gross mass information and will use this to comply with its obligations in accordance  with SOLAS.

h)    Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed  and/or prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other  unit load device (each hereafter referred to as a "transport unit") then:

  i)    The transport unit is in good condition, is  suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and

  ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values, and other    particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)    Fitness of Cargoes:  The cargoes are fit  and suitable for the storage, preparation (external as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)    Delivery of Cargoes:  The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their arrival at destination  and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered  by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly  accepted in writing to deal  with the Dangerous Goods.  Shipper's notice will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of  the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly  marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage  and handling of Dangerous Goods.  If any Dangerous Goods are tendered in breach of this Section, they  may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized  to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference  between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for  Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of Company.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper  or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding  insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability – Except as set forth in in this Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes)  and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied  by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of  warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2    Advice and information, in whatever form as may be given by  Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences thereof.  Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit.  For the foregoing purposes, Shipper  contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of  the foregoing this indemnity shall include (without  limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub  -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously given to and accepted by  Company.  A mere statement or declaration of the value or nature of cargoes for  insurance or export  or customs or  other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or  its affiliates from Shipper or  the ultimate consignee.   Company may at  its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its lien (including  but not limited to storage charges) and in recovering or  attempting to recover any sums due from Shipper or the ultimate consignee (whether  in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper  cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.   Company shall be entitled to  claim the difference against Shipper or the ultimate consignee  in the event that  the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.  Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall  be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.   Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set  -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes, and/or other expenses payable  before Shipper's invoice  is rendered.   Forthwith upon such request being  made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1    Any claim against Company  must be in writing and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14.    TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice thereof received  by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have  arrived at the destination (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that:  (a) Company will have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of  bank drafts or otherwise, or to collect on any specified terms  by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions and any act or contract to which they apply  shall be governed by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.



# Cargo Tracking

## Search Result - Bill of Lading Number  2150642420

### Summary

| | |
|---|---|
| B/L Vessel Voyage: | XIN FEI ZHOU 096E |
| Bill of Lading Number: | 2150642420 (B/L Ready) |
| Booking Number: | 2150642420 (Confirmed) |
| Total Containers: | 1 x 40' Hi-Cube Container |
| Total Quantity: | 1505 Carton |

| | |
|---|---|
| FND Customs Clearance Code: | WAC8 |
| Inbound Customs Clearance Status: *Note* | Cleared  (19 Aug 2024, 18:50 GMT) |
| Payment Status (collect charges): *Note* | Cleared |
| Cargo Release Status: | Released |
| Original B/L Received by Carrier: | N.A. (Under Sea WayBill) |

Containers | Detention & Demurrage

| Container Number | Container Size Type | Quantity | Gross Weight | Verified Gross Mass | Latest Event | | | Final Destination |
|---|---|---|---|---|---|---|---|---|
| | | | | | Event | Location | Time | |
| OOLU874794-1 | 40HQ | 1505 Carton | 9560.000 KGS | 13360.000 KGS (Submitted) | Container Returned to Carrier | BNSF - Alliance, Dallas, Dallas, Texas, United States | 26 Sep 2024, 12:11 CDT | Durant, Bryan, Oklahoma, United States appointment to be arranged |

### Detail of OOCL
Container OOLU874794-1    Detailed Container Specification Enquiry

Inbound Customs Clearance Status: *Note*  Released (19 Aug 2024, 11:50 PDT)
Payment Status (collect charges): *Note*  Cleared (13 Sep 2024, 03:36 CDT)
Linked Reference Number: *Note*

Routing | Equipment Activities

| Origin | Empty Pickup Location | Full Return Location | Port of Load | Vessel Voyage | Port of Discharge | Final Destination Hub | Destination | Empty Return Location | Haulage |
|---|---|---|---|---|---|---|---|---|---|
| Yantian, Shenzhen, Guangdong, China | Yantian Port | Yantian Port 22 Jul 2024, 12:00 CCT (Cargo Cutoff Date At First Full Hub) | Yantian, Shenzhen, Guangdong, China 04 Aug 2024, 22:01 CCT (Actual) | PSX XIN FEI ZHOU 096E (096E) | Long Beach, Los Angeles, California, United States 19 Aug 2024, 14:34 PDT (Actual) | BNSF - Alliance 03 Sep 2024, 04:06 CDT (Actual) | Durant, Bryan, Oklahoma, United States | BNSF - Alliance | CY/DOOR |



| Terms of Use | Privacy and Security Statement | Online Security | Customer Communications Policy |
Copyright © 1998 - 2024. Orient Overseas Container Line Limited. All rights reserved.    OOIL GROUP

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# INVOICE

**Invoice No.:** PIN24-BLT-020

**Invoice Date.:** July 13, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** XIN FEI ZHOU / 096E

**Port of Loading:** YANTIAN

**Ship on or about:** August 04, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| P/O No.: 95209361 | | 110 EA | 128.700/EA | 14,157.000 |
| SKU No.: 810715793 | | 110 CTNS | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | |
| HTS Code.: 9505102500 | | | | |
| **Manufacturer Name & Address** | | | | |
| KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA HUIZHOU, GUANGDONG 516800, CHINA | | | | |
| **Total:** (110 CTNS) | | 110 | | 14,157.000 |
| TOTAL (USD) DOLLARS : FOURTEEN THOUSAND ONE HUNDRED FIFTY-SEVEN ONLY. | | | | |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
OOLU8747941/OOLJXX5076/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
OOLU8747941/OOLJXX5076/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

Page 1 of 1

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

# PACKING LIST

**Invoice No.:** PIN24-BLT-020

**Invoice Date.:** July 13, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** XIN FEI ZHOU / 096E

**Port of Loading:** YANTIAN

**Ship on or about:** August 04, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95209361 | | 110  EA | 2,864.00 | 3,289.00 | 27.666 |
| SKU No.: 810715793 | | 110  CTNS | | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| **Total:**  (110 CTNS) | | 110 | 2,864.00 | 3,289.00 | 27.666 |

**Consolidator(Full Name & Address)**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
OOLU8747941/OOLJXX5076/40H

**Container Stuffing Location(Full Name & Address )**
YUSEN LOGISTICS (SHENZHEN) CO.,LTD. C/O CNBMI WAREHOUSE
CNBMI LOGISTICS CENTRE, ROAD 1, YANTIAN PORT BONDED LOGISTICS PARK (NORTH AREA),
NO.15 MINGZHU ROAD, YANTIAN
SHENZHEN , GUANGDONG
518083 CHINA
Container No./Seal/Size:
OOLU8747941/OOLJXX5076/40H

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

Electronic Proof of Claim Confirmation:  3735-1-ZLWVU-670741705

Claim Electronically Submitted on (UTC) :  2024-10-04T13:53:04.802Z

Submitted by:  GIFTREE CRAFTS COMPANY LIMITED
               joepeng@giftree.net

KROLL

**United States Bankruptcy Court, District of Delaware**

---

**Fill in this information to identify the case (Select only one Debtor per claim form):**

**Debtor:** Big Lots Stores, LLC

**Case Number:** 24-11973

---

Modified Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

---

| **Part 1:** | **Identify the Claim** |
|---|---|

| 1. Who is the current creditor? | GIFTREE CRAFTS COMPANY LIMITED |
|---|---|
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |

| 2. Has this claim been acquired from someone else? | ✔ No |
|---|---|
| | ☐ Yes. From whom? |

| 3. Where should notices and payments to the creditor be sent? | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|---|
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Address1: King Tree Office, West Fl.6th, Bldg 4, Feilette Industrial Park, | Address1: |
| | Address2: No.88 Jiaoyu North Rd. Pingdi Town, | Address2: |
| | Address3: | Address3: |
| | Address4: | Address4: |
| | City: Shenzhen | City: |
| | State: Guang Dong | State: |
| | Postal Code: 518117 | Postal Code: |
| | Country: China | Country: |
| | Contact phone +86-13823169463 | Contact phone |
| | Contact email joepeng@giftree.net | Contact email |

| 4. Does this claim amend one already filed? | ☐ No | 09/19/2024 |
|---|---|---|
| | ✔ Yes. Claim number on court claims registry (if known) 918 | Filed on |
| | | MM / DD / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ✔ No |
|---|---|
| | ☐ Yes. Who made the earlier filing? |

---

**Claim Number: 1782**              **Proof of Claim**              page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

**7. How much is the claim?**   $ 378,453.53    . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

GOODS SOLD

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**                    $_____

**Amount of the claim that is secured:**      $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br><br>☐ Yes. *Check one:* | **Amount entitled to priority** |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(    ) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |
| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☐ No<br><br>☑ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.** | $ 268,522.39 |

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

*HUA PENG*                    10/04/2024

_____        _____
Electronic Signature                Date

**Name of the person who is completing and signing this claim**

Name          HUA PENG
_____
              First name        Middle name        Last name

Title/Company   MANAGER / GIFTREE CRAFTS COMPANY LIMITED
_____
              Identify the corporate servicer as the company if the authorized agent is a servicer.

              West Fl.6th, Bldg 4, Feilette Industrial Park,

              No.88 Jiaoyu North Rd. Pingdi Town,

Address       _____
              Number        Street

              Shenzhen          Guang Dong    518117    China
              _____
              City              State         ZIP Code   Country

Contact phone  +86-13823169463          Email    joepeng@giftree.net

## Additional Noticing Addresses (if provided):

**Additional Address 1**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Address 2**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
Postal Code:
Country:

Contact Phone:
Contact Email:

## Additional Supporting Documentation Provided

☑ Yes
☐ No

-------------------------------------------------------------------------------------------------

Attachment Filename:

DC890 PROOF DOCUMENTS OF CLAIM_BIG LOTS STORES LLC.pdf

**KROLL**

# PO/INVOICE STATEMENT

| DC | CONSIGNEE | PO# | Order Amount | INVOICE# | INVOICE AMOUNT | FCR NO. | DATE OF FCR ISSUED | BILL OF LADING # | VESSEL /VOYAGE | BOOKING NUMBER | CONTAINER NO | AMOUNT PER CONTAINER | GOODS RECEIVED DAY AT FINAL DESTINATION | WITHIN 20 DAYS OF SEP. 9TH (Y/N) | SHIPPING LINE/CONTAINER TRACKING LINK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 890 | BIG LOTS STORES, LLC 4900 E. Dublin Granville Rd Columbus, OH 43081-7651 US Telphone: 614-278-6800 Fax: 614-278-6871 | 95209354 | US$299,125.40 | PIN24-BLT-015 | US$91,575.00 | CNS-SZP-2401253 | 07/16/2024 | CMDUSHZ6411198 | (CMDU) CMA CGM URAL V.0XR5TE1MA | SHZ6411198 | FSCU7198371 | US$91,575.00 | 09/04/2024 | Y | https://www.cma-cgm.com/ebusiness/tracking |
| | | | | | | | | | | SHZ6411203 | GCXU6139676 | | 09/04/2024 | Y | |
| | | | | | | | | | | SHZ6411199 | TGHU6409122 | | 09/05/2024 | Y | |
| | | | | | PIN24-BLT-017 | US$208,375.40 | CNS-SZP-2401256 | 07/24/2024 | CMDUSHZ6470064 | (CMDU) TS MELBOURNE V.0WF1BE1MA | SHZ6470113 | APZU4673821 | US$15,738.00 | 08/21/2024 | Y | https://www.cma-cgm.com/ebusiness/tracking |
| | | | | | | | | | | SHZ6470064 | APZU4892054 | US$15,738.00 | 08/21/2024 | Y | |
| | | | | | | | | | | SHZ6470317 | CAAU8154700 | US$30,548.50 | 08/21/2024 | Y | |
| | | | | | | | | | | SHZ6470312 | CAAU8154911 | US$29,941.00 | 08/29/2024 | Y | |
| | | | | | | | | | | SHZ6470258 | CAAU8170888 | US$29,941.00 | 08/14/2024 | N | |
| | | | | | | | | | | SHZ6470251 | SELU4140948 | US$29,941.00 | 08/14/2024 | N | |
| | | | | | | | | | | SHZ6470345 | SELU4142350 | US$35,006.40 | 08/29/2024 | Y | |
| | | | | | | | | | | SHZ6470126 | TRLU8729341 | US$21,521.50 | 09/03/2024 | Y | |
| | | 95209335 | US$133,105.41 | PIN24-BLT-016 | US$133,105.41 | CNS-SZP-2401255 | 07/16/2024 | CMDUSHZ6470064 | (CMDU) TS MELBOURNE V.0WF1BE1MA | SHZ6470116 | TCLU4348250 | US$19,705.24 | 09/09/2024 | NA | https://www.cma-cgm.com/ebusiness/tracking |
| | | | | | | | | | | SHZ6470124 | APZU4762831 | US$14,434.64 | 09/10/2024 | NA | |
| | | | | | | | | | | SHZ6470254 | SELU4144115 | US$15,152.10 | 08/13/2024 | N | |
| | | | | | | | | | | SHZ6470123 | APZU4790520 | US$14,434.64 | 08/14/2024 | N | |
| | | | | | | | | | | SHZ6470115 | CMAU8240872 | US$20,462.40 | 09/09/2024 | NA | |
| | | | | | | | | | | SHZ6470252 | SELU4142880 | US$15,152.10 | 08/21/2024 | Y | |
| | | | | | | | | | | SHZ6470125 | CMAU8330050 | US$13,301.89 | 08/21/2024 | Y | |
| | | | | | | | | | | SHZ6470112 | APZU4447845 | US$20,462.40 | 08/13/2024 | N | |

**TOTAL:** US$433,055.81    US$433,055.81

Total Claim AMT: US$378,453.53

Within 20days AMT: US$268,522.39

REMARK:

1.Goods received day was determined when goods arrived at Big Lots DC according to the terms and conditions Point 2 on the purchase order. It said that Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

2.Invoice#PIN24-BLT-016 has 8 containers in total, there are 3 containers(TCLU4348250, APZU4762831, CMAU8240872)delieried at DC after filing day so that we only claim for the rest 5 containers. The invoice breakdown for the 5 containers enclosed.

**Attached below: PO, FCR, CONTAINER ARRIVED PROOF, INVOICE, INVOICE BREAKDOWN, PACKING LIST**

# BIG LOTS!

**PO #**            **95209354**

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 0 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN        , CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800        Fax:   614-278-3809

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

**Purchase From Vendor:**   1008980

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA

Contact:      JOE PENG
Telephone:  86-755-6122-6325    Fax    86-755-6122-6326
E-Mail:      JOEPENG@GIFTREE.NET

**ADDITIONAL COMMENTS**

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 4,585 | 798,154.15 | 299,125.40 | 61.348 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

## Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1. Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2. Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3. Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4. Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5. Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6. Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7. Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8. Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9. Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



# IMPORTANT Terms and Conditions

securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95209354

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810614468 | N - 7.5FT  CASH/HAR | 0.00 | CN | 1 | | 1,550 | 26.23 | 54,884.26 | 08/05/2024 |
| 36011 | 8147-H60723-01 | LIT7FT&UP | | | 1 | | 1,550 | 9.18 | 154,984.50 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 99.99 | 64.850 | 129.99 |
| 1 | 481061446806 | | SEA | 3.333 | A1 | | | | | |
| 360 | 810715824 | Z - 7.5FT WINDHAM T | 0.00 | CN | 1 | | 1,383 | 82.50 | 139,655.34 | 08/05/2024 |
| 36011 | 8147-H59004-01 | LIT7FT&UP | | | 1 | | 1,383 | 18.48 | 276,586.17 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 199.99 | 49.920 | 399.00 |
| 2 | 481071582402 | | SEA | 6.222 | A1 | | | | | |
| 360 | 810715803 | S - 7.5FT SHOWSHOE | 0.00 | CN | 1 | | 1,290 | 75.80 | 120,230.58 | 08/05/2024 |
| 36011 | 8147-H66753-01 | LIT7FT&UP | | | 1 | | 1,290 | 17.40 | 257,987.10 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 199.99 | 53.776 | 299.99 |
| 3 | 481071580309 | | SEA | 5.890 | A1 | | | | | |
| 360 | 810715793 | GG - 9FT WINDHAM TR | 0.00 | CN | 1 | | 362 | 128.70 | 55,968.10 | 08/05/2024 |
| 36011 | 8147-H59003-02 | LIT7FT&UP | | | 1 | | 362 | 25.91 | 108,596.38 | |
| 36011002 | Winter Wonder Lane | | H30 | | | | | 299.99 | 48.891 | 599.99 |
| 4 | 481071579303 | | SEA | 8.507 | A1 | | | | | |

Yusen Logistics - Yusen Logistics

# Yusen Logistics

Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-SZP-2401253**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-015** |
| Buyer/Consignee : **BIG LOTS STORES, LLC**<br>**500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated: **July 12, 2024** |
| Shipment From : **SHENZHEN**          To : **COLUMBUS, OH** | Date of Receipt of Cargo<br>**July 09, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                NOTIFY PARTY: GEODIS
STORES                                5101 S. BROAD STREET
                                      PHILADELPHIA, PA 19112-1404, U.S.A.
PO#                                   ATTN: ALENA LAMINA
SKU#                    ALSO NOTIFY: EDRAY 2020 LLC.
DEPT# 360                             1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                         CHARLOTTE NC 28203 USA
                                      TEL: 704-593-6329
                                      EMAIL: DATAQUALITY@EDRAYCPL.COM

                        CY-CY

                        SHIPPER'S LOAD, COUNT AND SEAL
                        SAID TO CONTAIN
                        FSCU7198371        SEAL# R6708443        40H  DRY
                        GCXU6139676        SEAL# R6708590        40H  DRY
                        TGHU6409122        SEAL# R6702879        40H  DRY


                        ARTIFICIAL XMAS TREE
                        PO#95209354
                        1110PCS/1110CTNS
                        HS CODE:9505100090

                        SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH
                        SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                        MATERIAL

                        1,110 CARTONS                 195.540 CBM   21,756.00 KGS
                        ================================================================
                        TOTAL : ONE THOUSAND ONE HUNDRED TEN (1,110) CARTONS ONLY

                             "FREIGHT COLLECT"
SHIPMENT PER S.S. "CMA CGM URAL" VOY NO. 0XR5TE1MA    DISCHARGED AT NORFOLK, VA
SAILING ON / ABOUT July 23, 2024. CARGO RECEIVED ON July 9, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**                    **July 16, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>*For and on behalf of*<br>*Yusen Logistics (Shenzhen) Co., Ltd.*<br><br>*Authorized Signature(s)*          As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)          V1 |

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings,  terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers' Instructions received  in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering  items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the  receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other handling of goods and other  services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending  upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services,  those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the  remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate  to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever in care  re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound by all stipulations,  exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)    The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other illegal material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide  the total gross  mass established  using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance  with SOLAS. Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

h)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other  unit load device (each hereafter referred to as a "transport unit") then:

i)    The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and

ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values,  and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)    Fitness of Cargoes:  The cargoes are fit  and suitable for loading, transportation  as well  as local), storage, packing, unpacking, and other handling in accordance with,  pursuant, related, or incidental to Shipper's Instructions.

l)    Delivery of Cargoes:  The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their arrival at destination  and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered  by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable,  explosive, or which do or may present a risk of damage to any property or  person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal  with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMERWILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized  to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to Shipper, it being agreed that the difference  between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for  Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND OCEAN SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is unable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences  whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding  insurance); or

b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability – Except as set forth in s this Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever for any events arising out  or in connection with  the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct, or fundamental breach of  Company.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.    Advice and information, in whatever form as may be given  by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided  or to be provided  by Company.  If any such  claim should nevertheless be made Shipper  shall indemnify Company against all consequences thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without  limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub  -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously given to and accepted by Company.  A mere statement or declaration of the value or nature of cargoes for  insurance or export  or customs or  other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable for any duties, taxes, levies, deposits, or  outlays of any kind levied by  the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or  its affiliates from Shipper or  the ultimate consignee.  Company may at its sole discretion exercise its lien  at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including but  not limited to storage charges) and in recovering or attempting to recover  any sums due from Shipper or the ultimate consignee (whether  in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or  any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.  Company shall be entitled to  claim the difference against Shipper or the ultimate consignee  in the event that  the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes. Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently addressed  or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery.  All charges and expenses arising  in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are  independent and cumulative.

**12    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.   Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set -off.

12.2    Company at its discretion may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable  before Shipper's invoice is rendered.   Forthwith upon such request  being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1    Any claim against Company  must be in writing  and delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;

b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if  the claim is not made within the times and  in the manner specified herein.

**14.    TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice thereof received  by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have  arrived at the destination (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk  for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

**Tracking details** `EMPTY IN DEPOT`





**GCXU6139676** • 45 G1

| | |
|---|---|
| ● | RECEIPT |
| ● | PORT    Yantian, CH |
| ● | PORT    Norfolk, Va, US |
| ● | DELIVERY    Columbus, Oh, US |

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 08:30**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Monday, 08-JUL-2024 🕐 22:50 | EMPTY TO SHIPPER | YANTIAN | | |
| Tuesday, 09-JUL-2024 🕐 18:43 | READY TO BE LOADED | YANTIAN | | |
| Wednesday, 24-JUL-2024 🕐 12:08 | LOADED ON BOARD | YANTIAN | CMA CGM URAL | 0XR5TE1MA |
| Wednesday, 24-JUL-2024 🕐 15:47 | VESSEL DEPARTURE | YANTIAN | CMA CGM URAL | 0XR5TE1MA |
| Friday, 30-AUG-2024 🕐 11:12 | VESSEL ARRIVAL | NORFOLK, VA | CMA CGM URAL | 0XR5UW1MA |
| Friday, 30-AUG-2024 🕐 19:37 | DISCHARGED | NORFOLK, VA | CMA CGM URAL | 0XR5UW1MA |
| Saturday, 31-AUG-2024 🕐 09:55 | FULL LOAD ON RAIL FOR IMPORT | NORFOLK, VA | | |
| Saturday, 31-AUG-2024 🕐 23:40 | CONTAINER IN TRANSIT FOR IMPORT | NORFOLK, VA | | |
| Monday, 02-SEP-2024 🕐 17:14 | TRAIN ARRIVAL FOR IMPORT | COLUMBUS, OH | | |
| Tuesday, 03-SEP-2024 🕐 18:13 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| Tuesday, 03-SEP-2024 🕐 19:20 | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |
| Wednesday, 04-SEP-2024 🕐 08:59 | CONTAINER TO CONSIGNEE | COLUMBUS, OH | | |
| **Friday, 06-SEP-2024 🕐 14:32** | EMPTY IN DEPOT | **COLUMBUS, OH** | | |

**Tracking details** `EMPTY IN DEPOT`





**FSCU7198371** • 45 G1

● **RECEIPT**
│
● **PORT** Yantian, CH
│
● **PORT** Norfolk, Va, US
│
● **DELIVERY** Columbus, Oh, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 08:28**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|------|-------|----------|--------|--------|
| Monday, 08-JUL-2024<br>🕐 20:21 | `EMPTY TO SHIPPER` | YANTIAN | | |
| Tuesday, 09-JUL-2024<br>🕐 11:55 | `READY TO BE LOADED` | YANTIAN | | |
| Wednesday, 24-JUL-2024<br>🕐 09:10 | `LOADED ON BOARD` | YANTIAN | CMA CGM URAL | 0XR5TE1MA |
| Wednesday, 24-JUL-2024<br>🕐 15:47 | `VESSEL DEPARTURE` | YANTIAN | CMA CGM URAL | 0XR5TE1MA |
| Friday, 30-AUG-2024<br>🕐 11:12 | `VESSEL ARRIVAL` | NORFOLK, VA | CMA CGM URAL | 0XR5UW1MA |
| Friday, 30-AUG-2024<br>🕐 15:31 | `DISCHARGED` | NORFOLK, VA | CMA CGM URAL | 0XR5UW1MA |
| Saturday, 31-AUG-2024<br>🕐 10:02 | `FULL LOAD ON RAIL FOR IMPORT` | NORFOLK, VA | | |
| Saturday, 31-AUG-2024<br>🕐 23:40 | `CONTAINER IN TRANSIT FOR IMPORT` | NORFOLK, VA | | |
| Monday, 02-SEP-2024<br>🕐 17:14 | `TRAIN ARRIVAL FOR IMPORT` | COLUMBUS, OH | | |
| Tuesday, 03-SEP-2024<br>🕐 18:14 | `IMPORT UNLOAD FULL FROM RAIL` | COLUMBUS, OH | | |
| Tuesday, 03-SEP-2024<br>🕐 19:20 | `RECEIVED FOR IMPORT TRANSFER` | COLUMBUS, OH | | |
| Wednesday, 04-SEP-2024<br>🕐 12:37 | `CONTAINER TO CONSIGNEE` | COLUMBUS, OH | | |
| Wednesday, 04-SEP-2024<br>🕐 12:39 | `FULL AT CONSIGNEE'S PREMISES` | COLUMBUS, OH | | |
| **Friday, 06-SEP-2024**<br>🕐 **17:15** | `EMPTY IN DEPOT` | **COLUMBUS, OH** | | |

## Tracking details    **EMPTY IN DEPOT**





**TGHU6409122**  •  45 G1

- **RECEIPT**
- **PORT**    Yantian, CH
- **PORT**    Norfolk, Va, US
- **DELIVERY**    Columbus, Oh, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 08:29**

ⓘ  Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Monday, 08-JUL-2024 18:52 | EMPTY TO SHIPPER | YANTIAN | | |
| Tuesday, 09-JUL-2024 13:58 | READY TO BE LOADED | YANTIAN | | |
| Wednesday, 24-JUL-2024 08:48 | LOADED ON BOARD | YANTIAN | CMA CGM URAL | 0XR5TE1MA |
| Wednesday, 24-JUL-2024 15:47 | VESSEL DEPARTURE | YANTIAN | CMA CGM URAL | 0XR5TE1MA |
| Friday, 30-AUG-2024 11:12 | VESSEL ARRIVAL | NORFOLK, VA | CMA CGM URAL | 0XR5UW1MA |
| Friday, 30-AUG-2024 16:21 | DISCHARGED | NORFOLK, VA | CMA CGM URAL | 0XR5UW1MA |
| Saturday, 31-AUG-2024 13:41 | FULL LOAD ON RAIL FOR IMPORT | NORFOLK, VA | | |
| Saturday, 31-AUG-2024 23:40 | CONTAINER IN TRANSIT FOR IMPORT | NORFOLK, VA | | |
| Monday, 02-SEP-2024 17:14 | TRAIN ARRIVAL FOR IMPORT | COLUMBUS, OH | | |
| Wednesday, 04-SEP-2024 14:01 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| Wednesday, 04-SEP-2024 15:20 | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |
| Thursday, 05-SEP-2024 07:38 | CONTAINER TO CONSIGNEE | COLUMBUS, OH | | |
| Thursday, 05-SEP-2024 07:39 | FULL AT CONSIGNEE'S PREMISES | COLUMBUS, OH | | |
| **Friday, 06-SEP-2024 16:26** | EMPTY IN DEPOT | COLUMBUS, OH | | |

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

## INVOICE

**Invoice No.:** PIN24-BLT-015

**Invoice Date.:** July 12, 2024

**Sold To:** BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:** 500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** CMA CGM URAL / 0XR5TE1MA

**Port of Loading:** YANTIAN

**Ship on about:** July 24, 2024

**Port of Entry:** NORFOLK, VA

**Destination:** COLUMBUS, OH

**Container Number (Factory Load) :** FSCU7198371, GCXU6139676, TGHU6409122

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95209354 | 1,110  EA | 82.500/EA | 91,575.000 |
| **SKU No.:** 810715824 | 1,110  CTNS | | |
| 7.5FT WINDHAM TREE TWINKLING | No. of Pallet: | | |
| **HTS Code.:** 9505102500 | | | |
| **Manufacturer Name & Address** | | | |
| KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA HUIZHOU, GUANGDONG 516800, CHINA | | | |
| Total: (1,110 CTNS) | 1,110 | | 91,575.000 |
| TOTAL (USD) DOLLARS : NINETY-ONE THOUSAND FIVE HUNDRED SEVENTY-FIVE ONLY. | | | |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
FSCU7198371/R6708443/40H
GCXU6139676/R6708590/40H
TGHU6409122/R6702879/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
FSCU7198371/R6708443/40H
GCXU6139676/R6708590/40H
TGHU6409122/R6702879/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

## PACKING LIST

**Invoice No.:** PIN24-BLT-015

**Sold To:**  BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB YANTIAN

**Country of Origin:** CHINA

**Vessel / Voyage:** CMA CGM URAL / 0XR5TE1MA

**Ship on or about:** July 24, 2024

**Invoice Date.:** July 12, 2024

**Delivery To:**  500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** NORFOLK, VA

**Destination:** COLUMBUS, OH

**Container Number (Factory Load) :** FSCU7198371, GCXU6139676, TGHU6409122

| Cargo Description | Quantity (Unit) | | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95209354 | 1,110 | EA | 19,457.00 | 21,756.00 | 195.540 |
| SKU No.: 810715824 | 1,110 | CTNS | | | |
| 7.5FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| **Total:** (1,110 CTNS) | 1,110 | | 19,457.00 | 21,756.00 | 195.540 |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
FSCU7198371/R6708443/40H
GCXU6139676/R6708590/40H
TGHU6409122/R6702879/40H

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
FSCU7198371/R6708443/40H
GCXU6139676/R6708590/40H
TGHU6409122/R6702879/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401256**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-017** |
| Buyer/Consignee : **BIG LOTS STORES, LLC**<br>**500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated: **July 12, 2024** |
| Shipment From : **SHENZHEN**      To : **COLUMBUS, OH** | Date of Receipt of Cargo<br>**July 10, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| PLEASE REFER TO ATTACHED<br>SHEET(S). | | NOTIFY PARTY: GEODIS<br>5101 S. BROAD STREET<br>PHILADELPHIA, PA 19112-1404, U.S.A.<br>ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>1300 SOUTH MINT STREET SUITE 200<br>CHARLOTTE NC 28203 USA<br>TEL: 704-593-6329<br>EMAIL: DATAQUALITY@EDRAYCPL.COM<br>CY-CY | | |

3,485 CARTONS             498.460 CBM    51,980.10 KGS
==================================================================
TOTAL : THREE THOUSAND FOUR HUNDRED EIGHTY-FIVE (3,485)
CARTONS ONLY


    "FREIGHT COLLECT"
SHIPMENT PER S.S. "TS MELBOURNE" VOY NO. 0WF1BE1MA    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 15, 2024. CARGO RECEIVED ON July 10, 2024.

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**        **July 24, 2024** |
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br>*For and on behalf of*<br>*Yusen Logistics (Shenzhen) Co., Ltd.*<br><br>*Authorized Signature(s)*        As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)        V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

# Yusen Logistics

V1

FCR No.    CNS-SZP-2401256                                         Attachment Page 1/1

**Shipping Mark**                          **Description of Goods**

BIG LOTS                                   SHIPPER'S LOAD, COUNT AND SEAL
STORES                                     SAID TO CONTAIN
                                           APZU4673821        SEAL# R6587159       40'  DRY
PO#                                        APZU4892054        SEAL# R6587176       40'  DRY
SKU#                                       CAAU8154700        SEAL# R6578464       40H  DRY
DEPT# 360                                  CAAU8154911        SEAL# R6578466       40H  DRY
MADE IN CHINA                              CAAU8170888        SEAL# R6578490       40H  DRY
                                           SELU4140948        SEAL# R6587106       40H  DRY
                                           SELU4142350        SEAL# R6587122       40H  DRY
                                           TRLU8729341        SEAL# R6578452       40'  DRY


                                           ARTIFICIAL XMAS TREE
                                           PO#95209354
                                           3485PCS/3485CTNS
                                           HS CODE: 9505100090

                                           SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH
                                           SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                                           MATERIAL

**1.    DEFINITIONS**

1.1.    "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2.    "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers' Instructions received in writing at the time of receipt.

1.3.    "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of  those cargoes to Company.

1.4.    "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5.    "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.

1.6.    "Services" means the origin services to be provided by Company and includes the  receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other  services intended to accomplish delivery of the  cargoes to Company's customer, the ultimate consignee.

1.7.    "Owner" means the owner of the cargoes (including any packings, containers, or   equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending  upon the commercial terms of sale and including the ultimate consignee.

**2.    COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1    In the event that any provisions contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services,  those provisions, to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the   remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2    Nothing in these Conditions shall operate  to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3    Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever  re, whether in tort, bailment, or otherwise.

**3.    SHIPPER'S WARRANTIES**

3.1    Shipper warrants as follows:

a)    By accepting these Conditions, Shipper  agrees to be bound by all stipulations,  exceptions, terms, and conditions on the front  and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b)    By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the  Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c)    The description and particulars relating to the  cargoes set out on the front hereof:  (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;

d)    The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other illegal material or substance or stowaways;

e)    The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any  operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f)    Shipper complies with all Laws, requirements,  directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g)    Shipper shall provide the total gross  mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance  with SOLAS.

h)    Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently  packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.

i)    Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

        i)    The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and
        ii)    The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j)    Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.

k)    Fitness of Cargoes: The cargoes are fit and  suitable for the remaining carriage and transportation as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l)    Delivery of Cargoes: The consignee or other person entitled to the  delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.    DANGEROUS GOODS**

4.1    Cargoes tendered by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal  with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2    Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3    Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.    COMPANY'S AUTHORITY**

5.1    SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMER WILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2    Company is authorized  to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests or is expedient.

5.3    Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.

5.4    Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for  Company's commissions, remunerations, or profits.

5.5    Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6    Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7    Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment or agency.

**6.    LIABILITY AND LIMITATIONS**

6.1    SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

a)    A force majeure event;

b)    Strike, lock-out, stoppage or restraint of labor, the consequences of  which Company is munable to avoid by the exercise of reasonable diligence;

c)    Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d)    Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4    Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a)    The landed cost at the destination of only those cargoes damaged or lost (excluding  insurance); or
b)    Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5    No insurance will be arranged by Company for the benefit of Shipper.

6.6    Entire Liability – Except as set forth in in this Section, Company shall not  be liable for loss of or  damage to any cargoes or have any liability whatsoever for any events arising out  or in connection with the storage and handling of cargoes and/or this FCR.

6.7    Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, willful misconduct or breach of this contract.

6.8    By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.    INDEMNITY**

7.1.    Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without   limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of administrative nature levied by any authority) arising out of Company acting in accordance with Ship per's Instructions,  or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2.    Advice and information, in whatever form as may be given by  Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.

7.3.    Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences.  Without prejudice to the foregoing every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit.  For the foregoing purposes, Shipper  contracts for itself as well as agents for all the aforesaid persons.

7.4.    Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without  limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.    WAREHOUSING**

8.1    Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9.    DECLARED VALUE**

9.1    Company shall not be obliged to make any declaration for the purpose of any  statute or convention or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously given to and accepted by Company.  A mere statement or declaration of the value or nature of cargoes for insurance or export  or customs or  other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.    SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1    Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.    LIEN, DISPOSAL OF GOODS, ETC.**

11.1    Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly in Company's possession, custody, control, or enroute for  all monies due to Company and/or  its affiliates from Shipper or  the ultimate consignee.  Company may at its sole discretion exercise its lien  at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or  its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including  but not limited to storage charges) and in recovering or  attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2    Company shall be entitled to sell (at any time and at any place)  at the costs of Shipper  cargoes and/or any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount due to Company.  Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that  the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3    Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently  addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall  be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4    The rights of Company under this Section are independent and cumulative.

**12    RATES AND CHARGES**

12.1    Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set   -off.

12.2    Company at its discretion  may request an advance  to cover fees, duties, charges, taxes, and/or other expenses payable  before Shipper's invoice  is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3    On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13    NOTICE OF CLAIM**

13.1    Any claim against Company  must be in writing and delivered  to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:

a)    In the case of damage to goods, the date of delivery of cargoes;
b)    In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and
c)    In any other case, the date of the event giving rise to the claim.

13.2    No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14.    TIME BAR**

14.1    Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date  cargoes arrived at the destination or the date cargoes should have arrived  at the destination (whichever  date is the earlier).

**15.    NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1    Shipper agrees that:  (a) Company will have no obligation to Shipper whatsoever related to Collect on  Delivery (C.O.D.) shipments and commensurate obligations  for collection of bank drafts or otherwise,  or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.    GOVERNING LAW**

16.1    These Conditions and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject to the non exclusive jurisdiction of  the courts of the Hong Kong Special Administrative Region.

**Tracking details**  `EMPTY IN DEPOT`





**APZU4673821**  •  42 G1

- **RECEIPT**
- **PORT**  Yantian, CH
- **PORT**  Los Angeles, Ca, US
- **DELIVERY**  Columbus, Oh, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:26**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Tuesday, 09-JUL-2024 🕐 14:59 | EMPTY TO SHIPPER | YANTIAN | | |
| Wednesday, 10-JUL-2024 🕐 02:06 | READY TO BE LOADED | YANTIAN | | |
| Sunday, 14-JUL-2024 🕐 10:13 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024 🕐 17:00 | VESSEL DEPARTURE | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 🕐 07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 04-AUG-2024 🕐 16:52 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 11-AUG-2024 🕐 21:16 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Sunday, 11-AUG-2024 🕐 21:17 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Monday, 19-AUG-2024 🕐 20:00 | TRAIN ARRIVAL FOR IMPORT | COLUMBUS, OH | | |
| Tuesday, 20-AUG-2024 🕐 12:46 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| Tuesday, 20-AUG-2024 🕐 14:01 | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |
| Wednesday, 21-AUG-2024 🕐 11:45 | CONTAINER TO CONSIGNEE | COLUMBUS, OH | | |
| **Thursday, 22-AUG-2024** 🕐 **15:31** | EMPTY IN DEPOT | **COLUMBUS, OH** | | |

**Tracking details**  EMPTY IN DEPOT





**APZU4892054** • 42 G1

| | RECEIPT | |
| | PORT | Yantian, CH |
| | PORT | Los Angeles, Ca, US |
| | DELIVERY | Columbus, Oh, US |

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:26**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Tuesday, 09-JUL-2024 ⏱ 15:30 | EMPTY TO SHIPPER | YANTIAN | | |
| Wednesday, 10-JUL-2024 ⏱ 02:27 | READY TO BE LOADED | YANTIAN | | |
| Sunday, 14-JUL-2024 ⏱ 12:34 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024 ⏱ 17:00 | VESSEL DEPARTURE | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 ⏱ 07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 04-AUG-2024 ⏱ 17:02 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 11-AUG-2024 ⏱ 21:06 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Sunday, 11-AUG-2024 ⏱ 21:07 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Monday, 19-AUG-2024 ⏱ 20:00 | TRAIN ARRIVAL FOR IMPORT | COLUMBUS, OH | | |
| Tuesday, 20-AUG-2024 ⏱ 12:56 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| Tuesday, 20-AUG-2024 ⏱ 14:01 | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |
| Wednesday, 21-AUG-2024 ⏱ 10:58 | CONTAINER TO CONSIGNEE | COLUMBUS, OH | | |
| **Thursday, 22-AUG-2024 ⏱ 14:45** | EMPTY IN DEPOT | **COLUMBUS, OH** | | |

## Tracking details  `EMPTY IN DEPOT`





CAAU8154700 • 45 G1

- ● RECEIPT
- ● PORT  Yantian, CH
- ● PORT  Los Angeles, Ca, US
- ● DELIVERY  Columbus, Oh, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:24**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|------|-------|----------|--------|--------|
| Wednesday, 10-JUL-2024 🕒 03:09 | EMPTY TO SHIPPER | YANTIAN | | |
| Wednesday, 10-JUL-2024 🕒 18:32 | READY TO BE LOADED | YANTIAN | | |
| Sunday, 14-JUL-2024 🕒 13:35 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024 🕒 17:00 | VESSEL DEPARTURE | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 🕒 07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 04-AUG-2024 🕒 10:30 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 11-AUG-2024 🕒 21:23 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Sunday, 11-AUG-2024 🕒 21:24 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Monday, 19-AUG-2024 🕒 20:00 | TRAIN ARRIVAL FOR IMPORT | COLUMBUS, OH | | |
| Tuesday, 20-AUG-2024 🕒 11:55 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| Tuesday, 20-AUG-2024 🕒 13:01 | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |
| Wednesday, 21-AUG-2024 🕒 11:02 | CONTAINER TO CONSIGNEE | COLUMBUS, OH | | |
| **Thursday, 22-AUG-2024 🕒 16:27** | EMPTY IN DEPOT | **COLUMBUS, OH** | | |

**Tracking details**  `EMPTY IN DEPOT`





**CAAU8154911** • 45 G1

● `RECEIPT`
● `PORT`  Yantian, CH
● `PORT`  Los Angeles, Ca, US
● `DELIVERY`  Columbus, Oh, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:23**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Wednesday, 10-JUL-2024<br>🕐 03:15 | `EMPTY TO SHIPPER` | YANTIAN | | |
| Wednesday, 10-JUL-2024<br>🕐 19:12 | `READY TO BE LOADED` | YANTIAN | | |
| Sunday, 14-JUL-2024<br>🕐 11:12 | `LOADED ON BOARD` | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024<br>🕐 17:00 | `VESSEL DEPARTURE` | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024<br>🕐 07:12 | `VESSEL ARRIVAL` | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 04-AUG-2024<br>🕐 19:14 | `DISCHARGED` | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Wednesday, 21-AUG-2024<br>🕐 11:18 | `FULL LOAD ON RAIL FOR IMPORT` | LOS ANGELES, CA | | |
| Wednesday, 21-AUG-2024<br>🕐 11:19 | `CONTAINER IN TRANSIT FOR IMPORT` | LOS ANGELES, CA | | |
| Tuesday, 27-AUG-2024<br>🕐 08:25 | `TRAIN ARRIVAL FOR IMPORT` | COLUMBUS, OH | | |
| Wednesday, 28-AUG-2024<br>🕐 18:13 | `IMPORT UNLOAD FULL FROM RAIL` | COLUMBUS, OH | | |
| Wednesday, 28-AUG-2024<br>🕐 19:20 | `RECEIVED FOR IMPORT TRANSFER` | COLUMBUS, OH | | |
| Thursday, 29-AUG-2024<br>🕐 14:49 | `CONTAINER TO CONSIGNEE` | COLUMBUS, OH | | |
| **Friday, 30-AUG-2024**<br>🕐 **13:39** | `EMPTY IN DEPOT` | **COLUMBUS, OH** | | |

**Tracking details**  `EMPTY IN DEPOT`





CAAU8170888  •  45 G1

● RECEIPT
● PORT  Yantian, CH
● PORT  Los Angeles, Ca, US
● DELIVERY  Columbus, Oh, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:27**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Tuesday, 09-JUL-2024 ⏱ 21:42 | EMPTY TO SHIPPER | YANTIAN | | |
| Wednesday, 10-JUL-2024 ⏱ 14:37 | READY TO BE LOADED | YANTIAN | | |
| Sunday, 14-JUL-2024 ⏱ 13:17 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024 ⏱ 17:00 | VESSEL DEPARTURE | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 ⏱ 07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 04-AUG-2024 ⏱ 09:41 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Tuesday, 06-AUG-2024 ⏱ 19:22 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Tuesday, 06-AUG-2024 ⏱ 19:23 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Tuesday, 13-AUG-2024 ⏱ 07:47 | TRAIN ARRIVAL FOR IMPORT | COLUMBUS, OH | | |
| Tuesday, 13-AUG-2024 ⏱ 13:43 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| Tuesday, 13-AUG-2024 ⏱ 15:01 | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |
| Wednesday, 14-AUG-2024 ⏱ 07:53 | CONTAINER TO CONSIGNEE | COLUMBUS, OH | | |
| **Thursday, 15-AUG-2024 ⏱ 11:32** | EMPTY IN DEPOT | **COLUMBUS, OH** | | |

## Tracking details  `EMPTY IN DEPOT`





**SELU4140948**  •  45 G1

- ● **RECEIPT**
- ● **PORT**  Yantian, CH
- ● **PORT**  Los Angeles, Ca, US
- ● **DELIVERY**  Columbus, Oh, US

**Booking reference**

**Custom reference**
N/A

**Exported on**
Friday 27-SEP-2024 at 09:27

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Tuesday, 09-JUL-2024 🕑 17:54 | EMPTY TO SHIPPER | YANTIAN | | |
| Wednesday, 10-JUL-2024 🕑 14:39 | READY TO BE LOADED | YANTIAN | | |
| Sunday, 14-JUL-2024 🕑 14:40 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024 🕑 17:00 | VESSEL DEPARTURE | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 🕑 07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 04-AUG-2024 🕑 10:00 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Tuesday, 06-AUG-2024 🕑 19:16 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Tuesday, 06-AUG-2024 🕑 19:17 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Tuesday, 13-AUG-2024 🕑 07:47 | TRAIN ARRIVAL FOR IMPORT | COLUMBUS, OH | | |
| Tuesday, 13-AUG-2024 🕑 13:38 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| Tuesday, 13-AUG-2024 🕑 15:01 | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |
| Wednesday, 14-AUG-2024 🕑 07:22 | CONTAINER TO CONSIGNEE | COLUMBUS, OH | | |
| Friday, 16-AUG-2024 🕑 06:58 | EMPTY IN DEPOT | COLUMBUS, OH | | |

## Tracking details  `EMPTY IN DEPOT`





**SELU4142350** • 45 G1

- **RECEIPT**
- **PORT** Yantian, CH
- **PORT** Los Angeles, Ca, US
- **DELIVERY** Columbus, Oh, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:23**

ⓘ Times reflected are local Times Provisional moves are given for information purpose only, without warranty of any kind either expressed or implied, and are subject to change at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Tuesday, 09-JUL-2024 16:22 | EMPTY TO SHIPPER | YANTIAN | | |
| Wednesday, 10-JUL-2024 01:45 | READY TO BE LOADED | YANTIAN | | |
| Sunday, 14-JUL-2024 10:50 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024 17:00 | VESSEL DEPARTURE | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 04-AUG-2024 19:09 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Wednesday, 21-AUG-2024 11:18 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Wednesday, 21-AUG-2024 11:19 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Tuesday, 27-AUG-2024 08:25 | TRAIN ARRIVAL FOR IMPORT | COLUMBUS, OH | | |
| Wednesday, 28-AUG-2024 18:16 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| Wednesday, 28-AUG-2024 19:20 | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |
| Thursday, 29-AUG-2024 09:48 | CONTAINER TO CONSIGNEE | COLUMBUS, OH | | |
| Friday, 30-AUG-2024 11:16 | EMPTY IN DEPOT | COLUMBUS, OH | | |

**Tracking details**  `EMPTY IN DEPOT`





**TRLU8729341** • 42 G1

- ● `RECEIPT`
- ● `PORT` **Yantian, CH**
- ● `PORT` **Los Angeles, Ca, US**
- ● `DELIVERY` **Columbus, Oh, US**

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:22**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Wednesday, 10-JUL-2024 ⏱ 03:22 | `EMPTY TO SHIPPER` | YANTIAN | | |
| Thursday, 11-JUL-2024 ⏱ 03:08 | `READY TO BE LOADED` | YANTIAN | | |
| Sunday, 14-JUL-2024 ⏱ 06:59 | `LOADED ON BOARD` | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024 ⏱ 17:00 | `VESSEL DEPARTURE` | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 ⏱ 07:12 | `VESSEL ARRIVAL` | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 04-AUG-2024 ⏱ 19:57 | `DISCHARGED` | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Wednesday, 21-AUG-2024 ⏱ 10:48 | `FULL LOAD ON RAIL FOR IMPORT` | LOS ANGELES, CA | | |
| Wednesday, 21-AUG-2024 ⏱ 10:49 | `CONTAINER IN TRANSIT FOR IMPORT` | LOS ANGELES, CA | | |
| Tuesday, 27-AUG-2024 ⏱ 08:25 | `TRAIN ARRIVAL FOR IMPORT` | COLUMBUS, OH | | |
| Saturday, 31-AUG-2024 ⏱ 06:47 | `IMPORT UNLOAD FULL FROM RAIL` | COLUMBUS, OH | | |
| Saturday, 31-AUG-2024 ⏱ 08:01 | `RECEIVED FOR IMPORT TRANSFER` | COLUMBUS, OH | | |
| Tuesday, 03-SEP-2024 ⏱ 11:23 | `CONTAINER TO CONSIGNEE` | COLUMBUS, OH | | |
| **Thursday, 05-SEP-2024** ⏱ 15:53 | `EMPTY IN DEPOT` | **COLUMBUS, OH** | | |

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

## INVOICE

**Invoice No.:** PIN24-BLT-017

**Invoice Date.:** July 12, 2024

**Sold To:**  BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:**  500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** TS MELBOURNE / 0WF1BE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** July 14, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** COLUMBUS, OH

**Container Number (Factory Load) :** APZU4673821, APZU4892054, CAAU8154700, CAAU8154911, CAAU8170888, SELU4140948, SELU4142350, TRLU8729341

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95209354 | | 1,550 | EA | 26.230/EA | 40,656.500 |
| **SKU No.:** 810614468 | | 1,550 | CTNS | | |
| 7.5FT CASH/HARD NEEDLE PENCIL TREE | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209354 | | 362 | EA | 128.700/EA | 46,589.400 |
| **SKU No.:** 810715793 | | 362 | CTNS | | |
| 9FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209354 | | 1,290 | EA | 75.800/EA | 97,782.000 |
| **SKU No.:** 810715803 | | 1,290 | CTNS | | |
| 7.5FT SHOWSHOE TREE GLITTER | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209354 | | 283 | EA | 82.500/EA | 23,347.500 |
| **SKU No.:** 810715824 | | 283 | CTNS | | |
| 7.5FT WINDHAM TREE TWINKLING | No. of Pallet: | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA HUIZHOU, GUANGDONG 516800, CHINA | | | | |
| **Total:** | **(3,485 CTNS)** | | 3,485 | | 208,375.400 |

TOTAL (USD) DOLLARS : TWO HUNDRED EIGHT THOUSAND THREE HUNDRED SEVENTY-FIVE AND CENTS FORTY ONLY.

**Consolidator(Full Name & Address)** 44-11967-JKS   Doc 1584-2   **Container Stuffing Location(Full Name & Address )**

KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU,
CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
APZU4673821/R6587159/40'
APZU4892054/R6587176/40'
CAAU8154700/R6578464/40H
CAAU8154911/R6578466/40H
CAAU8170888/R6578490/40H
SELU4140948/R6587106/40H
SELU4142350/R6587122/40H
TRLU8729341/R6578452/40'

KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU,
CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
APZU4673821/R6587159/40'
APZU4892054/R6587176/40'
CAAU8154700/R6578464/40H
CAAU8154911/R6578466/40H
CAAU8170888/R6578490/40H
SELU4140948/R6587106/40H
SELU4142350/R6587122/40H
TRLU8729341/R6578452/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# INVOICE BREAKDOWN

**PO# 95209354**                                              **INVOICE No.:PIN24-8147-017**

| SKU# | MFG# | DESCRIPTION | QTY(PCS) | CTN NO. | UNIT PRICE | UNIT | AMOUNT |
|------|------|-------------|----------|---------|------------|------|--------|
| **CONTAINER #: APZU4892054       SEAL #: R6587176** | | | | | | | |
| 810614468 | 8147-H60723-01 | N-7.5FT CASH/HAR LIT 7FT&UP | 600 | 600 | US$26.23 | PCS | US$15,738.00 |
| **SUB-TOTAL** | | | **600** | **600** | | | **US$15,738.00** |
| **CONTAINER #: APZU4673821       SEAL #: R6587159** | | | | | | | |
| 810614468 | 8147-H60723-01 | N-7.5FT CASH/HAR LIT 7FT&UP | 600 | 600 | US$26.23 | PCS | US$15,738.00 |
| **SUB-TOTAL** | | | **600** | **600** | | | **US$15,738.00** |
| **CONTAINER #: TRLU8729341       SEAL #: R6578452** | | | | | | | |
| 810614468 | 8147-H60723-01 | N-7.5FT CASH/HAR LIT 7FT&UP | 350 | 350 | US$26.23 | PCS | US$9,180.50 |
| 810715803 | 8147-H66753-01 | S-7.5FT SHOWSHOE LIT 7FT&UP | 10 | 10 | US$75.80 | PCS | US$758.00 |
| 810715793 | 8147-H59003-02 | GG-9FT WINDHAM TR LIT 7FT&UP | 90 | 90 | US$128.70 | PCS | US$11,583.00 |
| **SUB-TOTAL** | | | **450** | **450** | | | **US$21,521.50** |
| **CONTAINER #: SELU4140948       SEAL #: R6587106** | | | | | | | |
| 810715803 | 8147-H66753-01 | S-7.5FT SHOWSHOE LIT 7FT&UP | 395 | 395 | US$75.80 | PCS | US$29,941.00 |
| **SUB-TOTAL** | | | **395** | **395** | | | **US$29,941.00** |
| **CONTAINER #: CAAU8170888       SEAL #: R6578490** | | | | | | | |
| 810715803 | 8147-H66753-01 | S-7.5FT SHOWSHOE LIT 7FT&UP | 395 | 395 | US$75.80 | PCS | US$29,941.00 |
| **SUB-TOTAL** | | | **395** | **395** | | | **US$29,941.00** |
| **CONTAINER #: CAAU8154911       SEAL #: R6578466** | | | | | | | |
| 810715803 | 8147-H66753-01 | S-7.5FT SHOWSHOE LIT 7FT&UP | 395 | 395 | US$75.80 | PCS | US$29,941.00 |
| **SUB-TOTAL** | | | **395** | **395** | | | **US$29,941.00** |
| **CONTAINER #: CAAU8154700       SEAL #: R6578464** | | | | | | | |
| 810715803 | 8147-H66753-01 | S-7.5FT SHOWSHOE LIT 7FT&UP | 95 | 95 | US$75.80 | PCS | US$7,201.00 |
| 810715824 | 8147-H59004-01 | Z-7.5FT WINDHAM T LIT 7FT&UP | 283 | 283 | US$82.50 | PCS | US$23,347.50 |
| **SUB-TOTAL** | | | **378** | **378** | | | **US$30,548.50** |
| **CONTAINER #: SELU4142350       SEAL #: R6587122** | | | | | | | |
| 810715793 | 8147-H59003-02 | GG-9FT WINDHAM TR LIT 7FT&UP | 272 | 272 | US$128.70 | PCS | US$35,006.40 |
| **SUB-TOTAL** | | | **272** | **272** | | | **US$35,006.40** |
| **G-TOTAL:** | | | **3485** | **3485** | | | **US$208,375.40** |

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

## PACKING LIST

**Invoice No.:** PIN24-BLT-017

**Invoice Date.:** July 12, 2024

**Sold To:**   BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:**   500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** TS MELBOURNE / 0WF1BE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** July 14, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** COLUMBUS, OH

**Container Number (Factory Load) :** APZU4673821, APZU4892054, CAAU8154700, CAAU8154911, CAAU8170888, SELU4140948, SELU4142350, TRLU8729341

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95209354 | | 1,550  EA | 12,764.00 | 13,330.00 | 146.290 |
| **SKU No.:** 810614468 | | 1,550  CTNS | | | |
| 7.5FT CASH/HARD NEEDLE PENCIL TREE | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209354 | | 362  EA | 10,467.00 | 11,366.80 | 87.190 |
| **SKU No.:** 810715793 | | 362  CTNS | | | |
| 9FT WINDHAM TREE TWINKLING | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209354 | | 1,290  EA | 20,467.00 | 21,736.50 | 215.120 |
| **SKU No.:** 810715803 | | 1,290  CTNS | | | |
| 7.5FT SHOWSHOE TREE GLITTER | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209354 | | 283  EA | 4,972.00 | 5,546.80 | 49.860 |
| **SKU No.:** 810715824 | | 283  CTNS | | | |
| 7.5FT WINDHAM TREE TWINKLING | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** | **(3,485 CTNS)** | 3,485 | 48,670.00 | 51,980.10 | 498.460 |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD

BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
APZU4673821/R6587159/40'
APZU4892054/R6587176/40'
CAAU8154700/R6578464/40H
CAAU8154911/R6578466/40H
CAAU8170888/R6578490/40H
SELU4140948/R6587106/40H
SELU4142350/R6587122/40H
TRLU8729341/R6578452/40'

BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
APZU4673821/R6587159/40'
APZU4892054/R6587176/40'
CAAU8154700/R6578464/40H
CAAU8154911/R6578466/40H
CAAU8170888/R6578490/40H
SELU4140948/R6587106/40H
SELU4142350/R6587122/40H
TRLU8729341/R6578452/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA



**PO #** **95209335**

| | |
|---|---|
| Date Created | 03/05/2024 |
| Version: | 5 |
| Buyer: | ROUNTREE, ELISA |
| Do Not Ship Before: | 06/17/2024 |
| Cancel if not Shipped by: | 06/24/2024 |
| Must be Routed by: | 05/27/2024 |
| Payment Terms: | Wire Transfer + 60 Days Upon Receipt in DC |
| Freight Terms: | Collect |
| FOB: | YANTIAN          , CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

COLUMBUS DC - #0890
BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS OH  43228-9006

Telephone:  614-278-6800        Fax:   614-278-3809

**BILL TO**

BIG LOTS STORES, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

**Purchase From Vendor:**   1008980

GIFTREE CRAFTS CO LTD
JOE PENG
NO 50 FAGANG DEVELOPMENT
SHENZHEN GUANGDONG
CHINA
Contact:
Telephone:                        Fax
E-Mail:

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 4,452 | 431,415.48 | 133,105.41 | 65.241 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.     Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.     Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.     Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.     Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.     Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.     Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.     Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.     Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.     Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.

BIG LOTS!

OFFICE-COPY

PO#: 95209335

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 360 | 810475687 | D - 5FT CUPID CASHM | 0.00 | CN | 1 | | 1,509 | 20.68 | 43,138.08 | 08/05/2024 |
| 36011 | 8147-H47709-02 | URNS | | | 1 | | 1,509 | 7.91 | 105,614.91 | |
| 36011005 | Winter Wonder Lane | | 030 | | | | | 69.99 | 59.451 | |
| 1 | 481047568706 | | SEA | 2.903 | XX | | | | | |
| 360 | 810569946 | F - 6.5FT BLITZEN F | 0.00 | CN | 1 | | 1,419 | 29.71 | 59,468.02 | 08/05/2024 |
| 36011 | 8147-H54452-04 | URNS | | | 1 | | 1,419 | 12.20 | 127,695.81 | |
| 36011005 | Winter Wonder Lane | | 030 | | | | | 89.99 | 53.760 | 149.00 |
| 2 | 481056994602 | | SEA | 4.510 | A1 | | | | | |
| 360 | 810569935 | PP - 6.5FT GRAND RA | 0.00 | CN | 1 | | 1,524 | 39.20 | 76,593.19 | 08/05/2024 |
| 36011 | 8147-H71010-01 | LIT6-6.5FT | | | 1 | | 1,524 | 11.06 | 198,104.76 | |
| 36011003 | Winter Wonder Lane | | 030 | | | | | 129.99 | 61.639 | 223.63 |
| 3 | 481056993506 | | SEA | 3.890 | A1 | | | | | |

# Yusen Logistics

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SZP-2401255**

| | |
|---|---|
| Maker/Supplier : **GIFTREE CRAFTS COMPANY LIMITED** | Maker/Supplier's INVOICE No. **PIN24-BLT-016** |
| Buyer/Consignee : **BIG LOTS STORES, LLC** **500 PHILLIPI RD, COLUMBUS, OH 43228, USA** | Dated: **July 12, 2024** |
| Shipment From : **SHENZHEN**    To : **COLUMBUS, OH** | Date of Receipt of Cargo **July 10, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
PLEASE REFER TO ATTACHED          NOTIFY PARTY: GEODIS
   SHEET(S).                                    5101 S. BROAD STREET
                                                PHILADELPHIA, PA 19112-1404, U.S.A.
                                                ATTN: ALENA LAMINA
                                  ALSO NOTIFY: EDRAY 2020 LLC.
                                                1300 SOUTH MINT STREET SUITE 200
                                                CHARLOTTE NC 28203 USA
                                                TEL: 704-593-6329
                                                EMAIL: DATAQUALITY@EDRAYCPL.COM
                                  CY-CY
```

```
        4,452 CARTONS                  473.100 CBM    38,933.01 KGS
        ==================================================================
        TOTAL : FOUR THOUSAND FOUR HUNDRED FIFTY-TWO (4,452) CARTONS
        ONLY


             "FREIGHT COLLECT"
SHIPMENT PER S.S. "TS MELBOURNE" VOY NO. 0WF1BE1MA   DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT July 15, 2024. CARGO RECEIVED ON July 10, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHENZHEN**    **July 16, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** *For and on behalf of* **Yusen Logistics (Shenzhen) Co., Ltd.** *Authorized Signature(s)*    As Agent |
| **No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: 1** (Terms and conditions are to be continued to the reverse hereof.) | (Authorized Signature)    V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

# Yusen Logistics

V1

FCR No.    CNS-SZP-2401255                                              Attachment Page 1/1

**Shipping Mark**                          **Description of Goods**

BIG LOTS                                   SHIPPER'S LOAD, COUNT AND SEAL
STORES                                     SAID TO CONTAIN
                                           TCLU4348250        SEAL# R6578441        40'   DRY
PO#                                        APZU4762831        SEAL# R6578485        40'   DRY
SKU#                                       SELU4144115        SEAL# R2172451        40H   DRY
DEPT# 360                                  APZU4790520        SEAL# R6587177        40'   DRY
MADE IN CHINA                              CMAU8240872        SEAL# R6578429        40'   DRY
                                           SELU4142880        SEAL# R2172478        40H   DRY
                                           CMAU8330050        SEAL# R6578424        40'   DRY
                                           APZU4447845        SEAL# R6587174        40'   DRY


                                           ARTIFICIAL XMAS TREE
                                           PO#95209335
                                           4452PCS/4452CTNS
                                           HS CODE: 9505100090

                                           SHIP TO CODE & LOCATION : 00890-COLUMBUS, OH
                                           SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                                           MATERIAL

**1.  DEFINITIONS**
1.1.  "Company" means Yusen Logistics Global  Management Limited trading or any of its affiliate entities issuing these Conditions in its  capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.
1.2.  "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the  front and any Shippers' Instructions received in writing at the time of receipt.
1.3.  "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of  those cargoes to Company.
1.4.  "Shippers' Instructions" means any of Shipper's specific written shipping instructions or  requirements delivered to Company at the time of receipt of the cargoes.
1.5.  "Laws" means any laws, statutes, regulations, or conventions  which apply compulsorily  to any element of the Services or any subject matter incidental to these Conditions.
1.6.  "Services" means the origin services to be provided by Company and includes the  receipt of cargoes from Shipper and subsequent arranging for the storage,  warehousing, collection, delivery, local transportation, insurance, customs clearance, packing,  unpacking, and other  handling of goods and other  services intended to accomplish delivery of the  Cargoes to Company's customer, the ultimate consignee.
1.7.  "Owner" means the owner of the cargoes (including any packings, containers, or  equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relate s and any other person who is or may become interested in them depending  upon the commercial terms of sale and including the ultimate consignee.

**2.  COMPULSORY LEGISLATION AND STATUTORY PROTECTION**
2.1  In the event that any convention contained herein are  inconsistent  with any Laws that apply compulsorily to any element of the Services,  those provisions,  to the extent of such inconsistency,  shall be null and void in relation to such element of the Services by Company, but the  remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.
2.2  Nothing in these Conditions shall operate  to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.
2.3  Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever  re, whether in tort, bailment, or otherwise.

**3.  SHIPPER'S WARRANTIES**
3.1  Shipper warrants as follows:
   a)  By accepting these Conditions, Shipper  agrees to be bound  by all stipulations,  exceptions, terms, and conditions on the  front  and back hereof,  whether written, typed, stamped, or printed, as fully as if signed by Shipper;
   b)  By accepting these Conditions and  agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;
   c)  The description and particulars relating to the  cargoes set out on the front hereof: (a) have been checked by Shipper  on receipt of these Conditions; and (b)  are full and accurate;
   d)  The cargoes contain no drugs, prohibited  or stolen goods, contraband, or other illegal material or substance or stowaways;
   e)  The cargoes have been properly and sufficiently prepared,  packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation,  packing, stowage, labelling, and/or  marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;
   f)  Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;
   g)  Shipper shall provide the total gross  mass established  using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL)  in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the  accuracy  and timeliness of such gross mass information and will use this to comply with its obligations in accordance  with SOLAS.
   h)  Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently  packed and/or prepared, and that Company has no liability for any  loss of or damage to cargoes which are improperly or  insufficiently packed or prepared, no matter how such loss or damage is caused.
   i)  Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks,  igloos, or any other  unit load device (each hereafter referred to as a "transport unit") then:
      i)  The transport unit is in good condition, is suitable to carry the goods loaded therein  or thereon, and is suitable for the intended carriage and other handling; and
      ii)  The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.
   j)  Description of Cargoes: All descriptions, values, and other  particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that  such information is true, complete, and accurate.
   k)  Fitness of Cargoes:  The cargoes are fit and suitable for  the carriage (international as well  as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.
   l)  Delivery of Cargoes:  The consignee or  other person entitled to the  delivery of the goods shall take delivery of the goods upon their arrival at destination  and shall pay  all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4.  DANGEROUS GOODS**
4.1  Cargoes tendered  by Shipper to Company are  not of such nature that they are or may become  dangerous, hazardous, noxious (including  radioactive materials), inflammable, explosive, or which  do or may present a risk of damage to any property or  person whatsoever ("Dangerous Goods")  unless Shipper, or someone acting on its behalf, has given Company written  notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and has expressly  accepted in writing to deal  with the Dangerous Goods.  Shipper's notice will include all information necessary for Company to perform  its obligation in connection with the Dangerous Goods in accordance  with all applicable Laws or requirements (or any combination of the foregoing), including  without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of  the Dangerous Goods.
4.2  Any Dangerous Goods must be distinctly  marked on the outside so as to indicate  the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.
4.3  Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5.  COMPANY'S AUTHORITY**
5.1  SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMERWILL BE IDENTIFIED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.
5.2  Company is authorized  to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary  or desirable in Shipper's interests or is expedient.
5.3  Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior  consultation with or further  authorization from Shipper.
5.4  Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to Shipper, it being agreed that the difference  between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's  commission or remuneration or profit.  Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account  to Shipper for  Company's commissions, remunerations, or profits.
5.5  Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.
5.6  Company is not obliged to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately.  Company is authorized (but not obliged) to  consolidate or arrange to be consolidated cargoes of Shipper with other goods.
5.7  Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations.  Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6.  LIABILITY AND LIMITATIONS**
6.1  SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST COMPANY: (A) FOR CARGO LOSS, DAMAGE, OR DELAY, EXCEPT TO THE EXTENT SHIPPER CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL, OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.
6.2  Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.
6.3  Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if,  and to the extent that, such loss or damage is caused by:

   a)  A force majeure event;
   b)  Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is munable to avoid by the exercise of reasonable diligence;
   c)  Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or
   d)  Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.
6.4  Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:
   a)  The landed cost at the destination of only those cargoes damaged or lost (excluding  insurance); or
   b)  Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.
6.5  No insurance will be arranged by Company for the benefit of Shipper.
6.6  Entire Liability – Except as set forth in n this Section, Company shall not  be liable for loss of  or damage to any cargoes or have any liability whatsoever for any events arising out  or in connection with  the storage and handling of cargoes and/or this FCR.
6.7  Application of Defenses, Limits, and Exclusions of  Liability - The defenses, limits and exclusions of  liability provided for in these Conditions of receipt shall  apply in any action against Company arising out of or  in connection with the Services (including  loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or  implied warranty, or otherwise, even if the loss or  damage arose as a result of negligence, wilful misconduct, or fundamental breach of contract.
6.8  By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and  has paid, Company's additional  charges for accepting such increased liability.

**7.  INDEMNITY**
7.1.  Shipper shall save harmless and  indemnify and keep indemnified Company  from and against all claims, liabilities, losses, damages, costs, and expenses (including without  limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied  by any authority) arising out of Company acting in accordance with Ship per's Instructions,  or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate  or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.
7.2.  Advice and information, in whatever form as may be given by  Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep  indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out  of any other person relying on such advice or information.  Except under special arrangements previously  made in writing, advice, or information which is not related to specific instructions accepted  by Shipper is provided  gratuitously and without liability.
7.3.  Shipper undertakes that no claim shall be made against any officer,  servant, agent, or  sub-contractor of Company which imposes or  attempts to impose upon them any liability in  connection with any Services provided or to be provided by Company.  If any such claim should nevertheless be made Shipper  shall indemnify Company against all consequences thereof.  Without prejudice to the foregoing  every such officer, servant, agent, and sub -contractor shall have the benefit  of all provisions herein benefiting Company as if such provisions were expressly for his  or its benefit.  For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.
7.4.  Shipper shall defend, indemnify, and hold harmless Company from and against all  claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions,  and without prejudice to the generality of the foregoing this indemnity shall include (without  limitation) all claims, costs, and demands arising from or  in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8.  WAREHOUSING**
8.1  Pending release of the cargoes after  provision of Services at origin, cargoes may be warehoused  or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of  Company and the cost therefore shall be for the account of Shipper.

**9.  DECLARED VALUE**
9.1  Company shall not be obliged to make any declaration for the purpose of any  statute or convention or contract as to the nature or value of any goods or  as to any special interest  in delivery unless express instructions in writing were previously given to and accepted by Company.  A mere statement or declaration of the value or nature of cargoes for  insurance or export  or customs or other purposes is not and shall not be construed to be Shipper's Instructions to Company to make any such declaration.

**10.  SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**
10.1  Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied  by the authorities at any port or place for or in connection with cargoes and for  any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or  sustained by Company in connection therewith.

**11.  LIEN, DISPOSAL OF GOODS, ETC.**
11.1  Company shall have a general lien on all cargoes (and documents relating thereto)  and any other property belonging to Shipper,  directly or indirectly  in Company's possession, custody, control, or enroute for  all monies due to Company and/or  its affiliates from Shipper or  the ultimate consignee.  Company may at its sole discretion exercise its lien at any  time and at any place. The lien shall  cover without limitation all charges, expenses, and advances of  whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing  and preserving its  lien (including  but not limited to storage charges) and in recovering or  attempting to recover  any sums due from Shipper or the ultimate consignee (whether  in respect of the storage and handling herein or otherwise).
11.2  Company shall be entitled to sell (at any time and at any place) at the costs of Shipper  cargoes and/or  any such other property by private  treaty or by public auction or  other means, without giving prior  notice or incurring any liability to Shipper and  to apply the proceeds of  such sale (net of expenses) in or  towards the payment of any amount  due to Company.  Company shall be entitled to  claim the difference against Shipper or the ultimate consignee  in the event that  the (net) sale proceeds do  not discharge in full  the amount due from Shipper or the ultimate consignee.  Company's lien shall survive delivery or deemed delivery of cargoes.  Perishable cargoes which are not  taken up immediately upon arrival or which are insufficiently  addressed or marked or otherwise not readily identifiable,  may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery.  All charges and expenses arising in  connection with the sale or disposal of cargoes shall be paid by Shipper.
11.4  The rights of Company under this Section are independent and cumulative.

**12  RATES AND CHARGES**
12.1  Shipper is directly and primarily liable for the  payment of all charges owed to Company in  performance of the Services at origin for its benefit.  Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set  -off.
12.2  Company at its discretion  may request an advance  to cover fees, duties, charges, taxes,  and/or other expenses payable before Shipper's invoice  is rendered.  Forthwith upon such request being made, Shipper shall make such advance to Company.
12.3  On all amounts overdue to Company,  Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof  at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13  NOTICE OF CLAIM**
13.1  Any claim against Company  must be in writing and  delivered to Company at its registered office  or its principal place of business in Hong Kong within 3 days of:
   a)  In the case of damage to goods, the date of delivery of cargoes;
   b)  In the case of loss or non-delivery or  mis-delivery of cargoes, the date  that cargoes should have been delivered; and
   c)  In any other case, the date of the event giving rise to the claim.
13.2  No action shall lie against Company if  the claim is not made within the times and in the manner specified herein.

**14.  TIME BAR**
14.1  Any right of action against Company shall be extinguished  if suit is not brought in the proper forum and written notice thereof received  by Company within three 3 months from  the date cargoes arrived at the destination or the date cargoes should have  arrived at  the destination (whichever  date is the earlier).

**15.  NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**
15.1  Shipper agrees that:  (a) Company shall have no obligation to Shipper whatsoever related  to Collect on Delivery (C.O.D.) shipments and commensurate obligations  for collection of  bank drafts or otherwise, or to collect on any specified terms by time drafts  or otherwise; and (b) Shipper bears all risk for  the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16.  GOVERNING LAW**
16.1  These Conditions and any act or contract to which they apply  shall be governed  by and construed according to the laws of the Hong Kong Special  Administrative Region.  Any dispute arising out  of these Conditions or any such act or contract shall be subject  to the non exclusive  jurisdiction of  the courts of the Hong Kong Special Administrative Region.

## Tracking details `EMPTY IN DEPOT`





**TCLU4348250**   •   42 G1

- ● **RECEIPT**
- ● **PORT**   Yantian, CH
- ● **PORT**   Los Angeles, Ca, US
- ● **DELIVERY**   Columbus, Oh, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:21**

ⓘ  Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Tuesday, 09-JUL-2024 22:35 | EMPTY TO SHIPPER | YANTIAN | | |
| Wednesday, 10-JUL-2024 18:22 | READY TO BE LOADED | YANTIAN | | |
| Saturday, 13-JUL-2024 22:09 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024 17:00 | VESSEL DEPARTURE | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Monday, 05-AUG-2024 10:39 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Saturday, 31-AUG-2024 12:05 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Saturday, 31-AUG-2024 12:06 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Saturday, 07-SEP-2024 23:46 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| Sunday, 08-SEP-2024 01:01 | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |
| Monday, 09-SEP-2024 10:40 | CONTAINER TO CONSIGNEE | COLUMBUS, OH | | |
| Wednesday, 11-SEP-2024 17:57 | EMPTY IN DEPOT | COLUMBUS, OH | | |

**Tracking details** `EMPTY IN DEPOT`





**APZU4762831** • 42 G1

- ● RECEIPT
- ● PORT  Yantian, CH
- ● PORT  Los Angeles, Ca, US
- ● DELIVERY  Columbus, Oh, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:20**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Tuesday, 09-JUL-2024 23:29 | EMPTY TO SHIPPER | YANTIAN | | |
| Wednesday, 10-JUL-2024 19:10 | READY TO BE LOADED | YANTIAN | | |
| Sunday, 14-JUL-2024 14:55 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024 17:00 | VESSEL DEPARTURE | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 04-AUG-2024 18:23 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Saturday, 31-AUG-2024 10:14 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Saturday, 31-AUG-2024 10:15 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Saturday, 07-SEP-2024 12:59 | TRAIN ARRIVAL FOR IMPORT | COLUMBUS, OH | | |
| Sunday, 08-SEP-2024 08:55 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| Sunday, 08-SEP-2024 10:01 | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |
| Tuesday, 10-SEP-2024 12:32 | CONTAINER TO CONSIGNEE | COLUMBUS, OH | | |
| **Thursday, 12-SEP-2024 10:16** | EMPTY IN DEPOT | **COLUMBUS, OH** | | |

# Tracking details  `EMPTY IN DEPOT`





**SELU4144115** • 45 G1

- ● **RECEIPT**
- ● **PORT**  Yantian, CH
- ● **PORT**  Los Angeles, Ca, US
- 📍 **DELIVERY**  Columbus, Oh, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:28**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Tuesday, 09-JUL-2024 🕐 23:14 | EMPTY TO SHIPPER | YANTIAN | | |
| Wednesday, 10-JUL-2024 🕐 19:03 | READY TO BE LOADED | YANTIAN | | |
| Sunday, 14-JUL-2024 🕐 14:28 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024 🕐 17:00 | VESSEL DEPARTURE | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 🕐 07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 04-AUG-2024 🕐 09:43 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Tuesday, 06-AUG-2024 🕐 19:19 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Tuesday, 06-AUG-2024 🕐 19:20 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Tuesday, 13-AUG-2024 🕐 07:47 | TRAIN ARRIVAL FOR IMPORT | COLUMBUS, OH | | |
| Tuesday, 13-AUG-2024 🕐 12:20 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| Tuesday, 13-AUG-2024 🕐 13:40 | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |
| Tuesday, 13-AUG-2024 🕐 17:06 | CONTAINER TO CONSIGNEE | COLUMBUS, OH | | |
| **Thursday, 15-AUG-2024 🕐 10:29** | EMPTY IN DEPOT | **COLUMBUS, OH** | | |

**Tracking details**  `EMPTY IN DEPOT`





**APZU4790520**  ·  42 G1

- **RECEIPT**
- **PORT**  Yantian, CH
- **PORT**  Los Angeles, Ca, US
- **DELIVERY**  Columbus, Oh, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:29**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Tuesday, 09-JUL-2024  15:18 | EMPTY TO SHIPPER | YANTIAN | | |
| Wednesday, 10-JUL-2024  04:33 | READY TO BE LOADED | YANTIAN | | |
| Sunday, 14-JUL-2024  15:23 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024  17:00 | VESSEL DEPARTURE | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024  07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 04-AUG-2024  10:13 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Tuesday, 06-AUG-2024  19:12 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Tuesday, 06-AUG-2024  19:13 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Tuesday, 13-AUG-2024  07:47 | TRAIN ARRIVAL FOR IMPORT | COLUMBUS, OH | | |
| Tuesday, 13-AUG-2024  13:42 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| Tuesday, 13-AUG-2024  15:01 | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |
| Wednesday, 14-AUG-2024  07:43 | CONTAINER TO CONSIGNEE | COLUMBUS, OH | | |
| **Thursday, 15-AUG-2024  10:12** | EMPTY IN DEPOT | **COLUMBUS, OH** | | |

## Tracking details  `EMPTY IN DEPOT`





**CMAU8240872** • 42 G1

| | |
|---|---|
| ● | `RECEIPT` |
| ● | `PORT`  Yantian, CH |
| ● | `PORT`  Los Angeles, Ca, US |
| ● | `DELIVERY`  Columbus, Oh, US |

**Booking reference**

**Custom reference**
N/A

**Exported on**
Friday 27-SEP-2024 at 09:20

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Wednesday, 10-JUL-2024  🕐 06:19 | `EMPTY TO SHIPPER` | YANTIAN | | |
| Wednesday, 10-JUL-2024  🕐 15:54 | `READY TO BE LOADED` | YANTIAN | | |
| Saturday, 13-JUL-2024  🕐 22:05 | `LOADED ON BOARD` | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024  🕐 17:00 | `VESSEL DEPARTURE` | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024  🕐 07:12 | `VESSEL ARRIVAL` | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Monday, 05-AUG-2024  🕐 10:44 | `DISCHARGED` | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Saturday, 31-AUG-2024  🕐 12:08 | `FULL LOAD ON RAIL FOR IMPORT` | LOS ANGELES, CA | | |
| Saturday, 31-AUG-2024  🕐 12:09 | `CONTAINER IN TRANSIT FOR IMPORT` | LOS ANGELES, CA | | |
| Saturday, 07-SEP-2024  🕐 23:49 | `IMPORT UNLOAD FULL FROM RAIL` | COLUMBUS, OH | | |
| Sunday, 08-SEP-2024  🕐 01:01 | `RECEIVED FOR IMPORT TRANSFER` | COLUMBUS, OH | | |
| Monday, 09-SEP-2024  🕐 08:40 | `CONTAINER TO CONSIGNEE` | COLUMBUS, OH | | |
| **Thursday, 12-SEP-2024**  🕐 **15:04** | `EMPTY IN DEPOT` | **COLUMBUS, OH** | | |

**Tracking details** `EMPTY IN DEPOT`





**SELU4142880**  •  45 G1

○ **RECEIPT**
● **PORT**  Yantian, CH
● **PORT**  Los Angeles, Ca, US
● **DELIVERY**  Columbus, Oh, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:25**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Tuesday, 09-JUL-2024 🕐 19:56 | EMPTY TO SHIPPER | YANTIAN | | |
| Wednesday, 10-JUL-2024 🕐 14:59 | READY TO BE LOADED | YANTIAN | | |
| Sunday, 14-JUL-2024 🕐 14:32 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024 🕐 17:00 | VESSEL DEPARTURE | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 🕐 07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 04-AUG-2024 🕐 10:18 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 11-AUG-2024 🕐 21:31 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Sunday, 11-AUG-2024 🕐 21:32 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Monday, 19-AUG-2024 🕐 20:00 | TRAIN ARRIVAL FOR IMPORT | COLUMBUS, OH | | |
| Tuesday, 20-AUG-2024 🕐 11:54 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| Tuesday, 20-AUG-2024 🕐 13:01 | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |
| Wednesday, 21-AUG-2024 🕐 07:32 | CONTAINER TO CONSIGNEE | COLUMBUS, OH | | |
| **Thursday, 22-AUG-2024 🕐 15:54** | EMPTY IN DEPOT | **COLUMBUS, OH** | | |

**Tracking details**  `EMPTY IN DEPOT`





**CMAU8330050** · 42 G1

- `RECEIPT`
- `PORT` **Yantian, CH**
- `PORT` **Los Angeles, Ca, US**
- `DELIVERY` **Columbus, Oh, US**

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:25**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|------|-------|----------|--------|--------|
| Wednesday, 10-JUL-2024 🕐 06:14 | `EMPTY TO SHIPPER` | YANTIAN | | |
| Wednesday, 10-JUL-2024 🕐 23:10 | `READY TO BE LOADED` | YANTIAN | | |
| Sunday, 14-JUL-2024 🕐 14:36 | `LOADED ON BOARD` | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024 🕐 17:00 | `VESSEL DEPARTURE` | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 🕐 07:12 | `VESSEL ARRIVAL` | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 04-AUG-2024 🕐 17:29 | `DISCHARGED` | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 11-AUG-2024 🕐 20:54 | `FULL LOAD ON RAIL FOR IMPORT` | LOS ANGELES, CA | | |
| Sunday, 11-AUG-2024 🕐 20:55 | `CONTAINER IN TRANSIT FOR IMPORT` | LOS ANGELES, CA | | |
| Monday, 19-AUG-2024 🕐 20:00 | `TRAIN ARRIVAL FOR IMPORT` | COLUMBUS, OH | | |
| Tuesday, 20-AUG-2024 🕐 13:10 | `IMPORT UNLOAD FULL FROM RAIL` | COLUMBUS, OH | | |
| Tuesday, 20-AUG-2024 🕐 14:20 | `RECEIVED FOR IMPORT TRANSFER` | COLUMBUS, OH | | |
| Wednesday, 21-AUG-2024 🕐 12:00 | `CONTAINER TO CONSIGNEE` | COLUMBUS, OH | | |
| **Thursday, 22-AUG-2024 🕐 15:33** | `EMPTY IN DEPOT` | **COLUMBUS, OH** | | |

## Tracking details  `EMPTY IN DEPOT`





**APZU4447845**  •  42 G1

- ● **RECEIPT**
- ● **PORT**  Yantian, CH
- ● **PORT**  Los Angeles, Ca, US
- ● **DELIVERY**  Columbus, Oh, US

Booking reference

Custom reference
**N/A**

Exported on
**Friday 27-SEP-2024 at 09:28**

ⓘ Times reflected are local Times
Provisional moves are given for
information purpose only, without
warranty of any kind either expressed
or implied, and are subject to change
at any time without further notice.

| Date | Moves | Location | Vessel | Voyage |
|---|---|---|---|---|
| Tuesday, 09-JUL-2024 🕐 15:18 | EMPTY TO SHIPPER | YANTIAN | | |
| Wednesday, 10-JUL-2024 🕐 05:04 | READY TO BE LOADED | YANTIAN | | |
| Sunday, 14-JUL-2024 🕐 14:54 | LOADED ON BOARD | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 14-JUL-2024 🕐 17:00 | VESSEL DEPARTURE | YANTIAN | TS MELBOURNE | 0WF1BE1MA |
| Sunday, 04-AUG-2024 🕐 07:12 | VESSEL ARRIVAL | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Sunday, 04-AUG-2024 🕐 10:01 | DISCHARGED | LOS ANGELES, CA | TS MELBOURNE | 0WF1CW1MA |
| Tuesday, 06-AUG-2024 🕐 19:14 | FULL LOAD ON RAIL FOR IMPORT | LOS ANGELES, CA | | |
| Tuesday, 06-AUG-2024 🕐 19:15 | CONTAINER IN TRANSIT FOR IMPORT | LOS ANGELES, CA | | |
| Tuesday, 13-AUG-2024 🕐 07:47 | TRAIN ARRIVAL FOR IMPORT | COLUMBUS, OH | | |
| Tuesday, 13-AUG-2024 🕐 13:40 | IMPORT UNLOAD FULL FROM RAIL | COLUMBUS, OH | | |
| Tuesday, 13-AUG-2024 🕐 15:01 | RECEIVED FOR IMPORT TRANSFER | COLUMBUS, OH | | |
| Tuesday, 13-AUG-2024 🕐 17:00 | CONTAINER TO CONSIGNEE | COLUMBUS, OH | | |
| **Thursday, 15-AUG-2024 🕐 11:11** | EMPTY IN DEPOT | **COLUMBUS, OH** | | |

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

## INVOICE

**Invoice No.:** PIN24-BLT-016

**Sold To:** BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB YANTIAN

**Country of Origin:** CHINA

**Vessel / Voyage:** TS MELBOURNE / 0WF1BE1MA

**Ship on or about:** July 14, 2024

**Invoice Date.:** July 12, 2024

**Delivery To:** 500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** YANTIAN

**Port of Entry:** LOS ANGELES, CA

**Destination:** COLUMBUS, OH

**Container Number (Factory Load) :** APZU4447845, APZU4762831, APZU4790520, CMAU8240872, CMAU8330050, SELU4142880, SELU4144115, TCLU4348250

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| P/O No.: 95209335 | | 1,509 | EA | 20.680/EA | 31,206.120 |
| SKU No.: 810475687 | | 1,509 | CTNS | | |
| 5FT CUPID CASHMERE URN TREE | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| P/O No.: 95209335 | | 1,524 | EA | 39.200/EA | 59,740.800 |
| SKU No.: 810569935 | | 1,524 | CTNS | | |
| 6.5FT GRAND RAPIDS FLOCKED TREE | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| P/O No.: 95209335 | | 1,419 | EA | 29.710/EA | 42,158.490 |
| SKU No.: 810569946 | | 1,419 | CTNS | | |
| 6.5FT BLITZEN FLOCKED URN TREE | No. of Pallet: | | | | |
| HTS Code.: 9505102500 | | | | | |
| **Manufacturer Name & Address**<br><br>KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD<br>BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA<br>HUIZHOU, GUANGDONG<br>516800, CHINA | | | | | |
| Total: | (4,452 CTNS) | 4,452 | | | 133,105.410 |
| TOTAL (USD) DOLLARS : ONE HUNDRED THIRTY-THREE THOUSAND ONE HUNDRED FIVE AND CENTS FORTY-ONE ONLY. | | | | | |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:

APZU4447845/R6587174/40'
APZU4762831/R6578485/40'
APZU4790520/R6587177/40'
CMAU8240872/R6578429/40'
CMAU8330050/R6578424/40'
SELU4142880/R2172478/40H
SELU4144115/R2172451/40H
TCLU4348250/R6578441/40'

APZU4447845/R6587174/40'
APZU4762831/R6578485/40'
APZU4790520/R6587177/40'
CMAU8240872/R6578429/40'
CMAU8330050/R6578424/40'
SELU4142880/R2172478/40H
SELU4144115/R2172451/40H
TCLU4348250/R6578441/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

# INVOICE BREAKDOWN

**PO# 95209335**                                                 **INVOICE No.:PIN24-8147-016**

| SKU# | MFG# | DESCRIPTION | QTY(PCS) | CTN NO. | UNIT PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|---|---|
| **CONTAINER #: TCLU4348250** | **SEAL #: R6578441** | | | | | | |
| 810569935 | 8147-H71010-01 | 6.5FT GRAND RAPIDS FLOCKED TREE | 480 | 480 | US$39.20 | PCS | US$18,816.00 |
| 810475687 | 8147-H59003-02 | D-5FT CUPID CASHM URNS | 43 | 43 | US$20.68 | PCS | US$889.24 |
| **SUB-TOTAL** | | | **523** | **523** | | | **US$19,705.24** |
| **CONTAINER #: SELU4144115** | **SEAL #: R2172451** | | | | | | |
| 810569946 | 8147-H54452-04 | F-6.5FT BLITZEN F URNS | 510 | 510 | US$29.71 | PCS | US$15,152.10 |
| **SUB-TOTAL** | | | **510** | **510** | | | **US$15,152.10** |
| **CONTAINER #: APZU4790520** | **SEAL #: R6587177** | | | | | | |
| 810475687 | 8147-H59003-02 | D-5FT CUPID CASHM URNS | 698 | 698 | US$20.68 | PCS | US$14,434.64 |
| **SUB-TOTAL** | | | **698** | **698** | | | **US$14,434.64** |
| **CONTAINER #: APZU4762831** | **SEAL #: R6578485** | | | | | | |
| 810475687 | 8147-H59003-02 | D-5FT CUPID CASHM URNS | 698 | 698 | US$20.68 | PCS | US$14,434.64 |
| **SUB-TOTAL** | | | **698** | **698** | | | **US$14,434.64** |
| **CONTAINER #: APZU4447845** | **SEAL #: RR6587174** | | | | | | |
| 810569935 | 8147-H71010-01 | 6.5FT GRAND RAPIDS FLOCKED TREE | 522 | 522 | US$39.20 | PCS | US$20,462.40 |
| **SUB-TOTAL** | | | **522** | **522** | | | **US$20,462.40** |
| **CONTAINER #: CMAU8240872** | **SEAL #: R6578429** | | | | | | |
| 810569935 | 8147-H71010-01 | 6.5FT GRAND RAPIDS FLOCKED TREE | 522 | 522 | US$39.20 | PCS | US$20,462.40 |
| **SUB-TOTAL** | | | **522** | **522** | | | **US$20,462.40** |
| **CONTAINER #: SELU4142880** | **SEAL #: R2172478** | | | | | | |
| 810569946 | 8147-H54452-04 | F-6.5FT BLITZEN F URNS | 510 | 510 | US$29.71 | PCS | US$15,152.10 |
| **SUB-TOTAL** | | | **510** | **510** | | | **US$15,152.10** |
| **CONTAINER #: CMAU8330050** | **SEAL #: R6578424** | | | | | | |
| 810569946 | 8147-H54452-04 | F-6.5FT BLITZEN F URNS | 399 | 399 | US$29.71 | PCS | US$11,854.29 |
| 810475687 | 8147-H59003-02 | D-5FT CUPID CASHM URNS | 70 | 70 | US$20.68 | PCS | US$1,447.60 |
| **SUB-TOTAL** | | | **469** | **469** | | | **US$13,301.89** |
| **G-TOTAL:** | | | **4452** | **4452** | | | **US$133,105.41** |

# GIFTREE CRAFTS COMPANY LIMITED

NO.50 FAGANG DEVELOPMENT ZONE,LIULIAN VILLAGE,, PINGDI TOWN,LONGGANG DISTRICT,, SHENZHEN, GUANGDONG, 518117, CHINA

## PACKING LIST

**Invoice No.:** PIN24-BLT-016

**Invoice Date.:** July 12, 2024

**Sold To:** BIG LOTS STORES, LLC
500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Delivery To:** 500 PHILLIPI RD
COLUMBUS, OH 43228
USA

**Shipment Terms:** FOB YANTIAN

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** TS MELBOURNE / 0WF1BE1MA

**Port of Loading:** YANTIAN

**Ship on or about:** July 14, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** COLUMBUS, OH

**Container Number (Factory Load) :** APZU4447845, APZU4762831, APZU4790520, CMAU8240872, CMAU8330050, SELU4142880, SELU4144115, TCLU4348250

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95209335 | | 1,509 EA | 8,769.00 | 9,883.95 | 124.020 |
| **SKU No.:** 810475687 | | 1,509 CTNS | | | |
| 5FT CUPID CASHMERE URN TREE | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209335 | | 1,524 EA | 13,972.00 | 14,036.04 | 167.870 |
| **SKU No.:** 810569935 | | 1,524 CTNS | | | |
| 6.5FT GRAND RAPIDS FLOCKED TREE | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **P/O No.:** 95209335 | | 1,419 EA | 14,073.00 | 15,013.02 | 181.210 |
| **SKU No.:** 810569946 | | 1,419 CTNS | | | |
| 6.5FT BLITZEN FLOCKED URN TREE | **No. of Pallet:** | | | | |
| **HTS Code.:** 9505102500 | | | | | |
| **Total:** (4,452 CTNS) | | 4,452 | 36,814.00 | 38,933.01 | 473.100 |

**Consolidator(Full Name & Address)**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
APZU4447845/R6587174/40'
APZU4762831/R6578485/40'
APZU4790520/R6587177/40'
CMAU8240872/R6578429/40'

**Container Stuffing Location(Full Name & Address )**
KING TREE HANDICRAFTS (HUIZHOU) CO.,LTD
BLOCK 11, 168 INDUSTRIAL PARK, LONGMEN COUNTY, HUIZHOU, CHINA
HUIZHOU , GUANGDONG
516800 CHINA
Container No./Seal/Size:
APZU4447845/R6587174/40'
APZU4762831/R6578485/40'
APZU4790520/R6587177/40'
CMAU8240872/R6578429/40'

CMAU8330050/R6578424/40'
SELU4142880/R2172478/40'H
SELU4144115/R2172451/40H
TCLU4348250/R6578441/40'

CMAU8330050/R6578424/40'
SELU4142880/R2172478/40'H
SELU4144115/R2172451/40H
TCLU4348250/R6578441/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#
SKU#
DEPT# 360
MADE IN CHINA

Electronic Proof of Claim Confirmation:   3735-1-TDNHB-212430837

Claim Electronically Submitted on (UTC) :   2024-10-04T14:01:57.046Z

Submitted by:   GIFTREE CRAFTS COMPANY LIMITED
              joepeng@giftree.net

KROLL

# EXHIBIT 2

### Big Lots, Inc.

October 15, 2024

TO: Giftree Crafts Co Ltd,
Vendor #1008980

Dear Valued Vendor:

As you are aware, Big Lots, Inc. and certain of its affiliates (collectively, the "**Company**") commenced chapter 11 proceedings in the United States (collectively, the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") on September 9, 2024 (the "**Petition Date**"). On the Petition Date, the Company requested the Bankruptcy Court's authority to pay the prepetition claims of certain vendors, suppliers, and service providers in part in recognition of the importance of the Company's relationship with such vendors, suppliers, and service providers and its desire that the Chapter 11 Cases have as little effect on the Company's ongoing businesses and operations as possible. On September 10, 2024, the Bankruptcy Court entered an interim order (the "**Order**") authorizing the Company, under certain conditions, to pay prepetition claims of certain vendors, suppliers, and service providers that agree to the terms set forth below and to be bound by the terms of the Order. A copy of the Order is enclosed.

In order to receive payment on account of prepetition claims, you must sign this agreement ("**Vendor Agreement**") and agree to continue to supply goods and services to the Company based on "**Customary Trade Terms**." In the motion seeking the Bankruptcy Court's entry of the Order, Customary Trade Terms are defined as the normal and customary trade terms, practices, and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability, and other applicable terms and programs) that were most favorable to the Company and in effect between you and the Company in the one-year period prior to the Petition Date, or such other trade terms and conditions as you and the Company agree upon.

For purposes of administration of this vendor payment program as authorized by the Bankruptcy Court (the "**Vendor Payment Program**"), you and the Company both agree to the following:

      1.     The agreed-upon amount of your prepetition claims (net of any setoffs, credits, or discounts) that the Company has agreed to pay in recognition of your critical vendor status, is $250,000.00 (the "**Vendor Settled Claim**"), of which amount $101,980.57 is with respect to claims arising under section 503(b)(9) of the Bankruptcy Code.

      2.     The Company agrees to provisionally pay you the amount of your Vendor Settled Claim $250,000.00 within sixty (60) days of execution of this Vendor Agreement. Any prepetition claims you may have shall be reduced by the amount of the Vendor Settled Claim set forth in paragraph 1 of this Vendor Agreement.

3.    You agree to supply post-petition goods or services to the Company in accordance with the Customary Trade Terms, which include TT60 days as the Company's option.

4.    You will continue to extend to the Company all Customary Trade Terms (as described above) during the pendency of the Chapter 11 Cases or such other trade terms and conditions as you and the Company agree upon.

5.    You will not demand a lump sum payment upon consummation of a chapter 11 plan in the Chapter 11 Cases on account of any administrative expense priority claim that you assert, but instead agree that such claims will be paid in the ordinary course of business after consummation of a plan under applicable Customary Trade Terms, if the plan provides for the ongoing operations of the Company.

6.    You will not separately seek payment for reclamation or similar claims outside of the terms of the Order.

7.    You will not file or otherwise assert against the Company, the estates, or any other person or entity or any of their respective assets or property (real or personal) any lien (regardless of the statute or other legal authority upon which such lien is asserted) or interest related in any way to any remaining prepetition amounts allegedly owed to you by the Company arising from agreements entered into prior to the Petition Date.  Furthermore, you agree to take (at your own expense) all necessary steps to remove any such lien or interest as soon as possible.

8.    If either the applicable Vendor Payment Program authorized by the Order or your participation therein terminates as provided in the Order, or you later refuse to continue to supply goods to the Company on Customary Trade Terms during the pendency of the Chapter 11 Cases, the Company may, in its sole discretion, and without further order of the Bankruptcy Court, (a) declare any payments you receive on account of your Vendor Settled Claim (including claims arising under section 503(b)(9) of the Bankruptcy Code) to be voidable post-petition transfers pursuant to section 549(a) of the Bankruptcy Code that the Company may recover from you in cash or in goods (including by setoff against post-petition obligations) and (b) demand that you immediately return such payments to the extent that the aggregate amount of such payments exceeds the post-petition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever. Upon recovery of such payment by the Company, your Vendor Settled Claim shall be reinstated in such an amount as to restore the Company and you to your original positions, as if the agreement had never been entered into and the payment of the Vendor Settled Claim had not been made.

9.    The undersigned, a duly authorized representative of Vendor, has reviewed the terms and provisions of the Order and agrees that Vendor is bound by such terms.  By accepting payment of the Vendor Settled Claim, you agree to the terms of the Order and submit to the jurisdiction of the Bankruptcy Court for enforcement thereof.

10.    Any dispute with respect to this letter agreement, the Order, and/or your participation in the Vendor Payment Program shall be determined by the Bankruptcy Court.

If you have any questions about this Vendor Agreement or our Chapter 11 Cases, please do not hesitate to call.

Sincerely,

Big Lots, Inc.

By: _____

Ronald A. Robins, Jr.
Executive Vice President, Chief
Legal and Governance Officer

Agreed and Accepted by:

Giftree Crafts Co Ltd

By: _____
Its: _____

Dated: October 15, 2024