## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| BIG LOTS, INC., *et al.*,[1] | Case No. 24-11967 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date**: **January 21, 2025 at 1:00 p.m. (ET)** |
| | **Objection Deadline**: **January 14, 2025 at 4:00 p.m. (ET)** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTORS MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES

Big Lots, Inc. and certain of its affiliates (collectively, the "Debtors" or "Big Lots"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby files this Motion (this "Motion") requesting entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), extending the periods during which (i) the Debtors have the exclusive right to file a chapter 11 plan (the "Exclusive Filing Period") to the earlier of (a) the Effective Date of the Plan (as defined below) and (b) April 7, 2025, 90 days from the expiration of the initial 120-day Exclusive Filing Period,[2]

---

[1] The debtors and debtors in possession in these Chapter 11 Cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Pursuant to Local Rule 9006-2, the filing of this Motion prior to the end of the initial Exclusive Periods serves to automatically extend the end of such periods until such time as the Court acts on the Motion. *See* Del. Bankr. L.R. 9006-2.

and (ii) the Debtors have the exclusive right to solicit acceptances of any plan (the "Exclusive Solicitation Period" and together with the Exclusive Filing Period, the "Exclusive Periods") to the earlier of (a) the Effective Date of the Plan and (b) June 6, 2025, 90 days from the expiration of the initial 180-day Exclusive Solicitation Period, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods.

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      The statutory basis for the relief requested herein is section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Local Rule 9006-2.

## BACKGROUND

**A.      General Background**

4.      On September 9, 2024 (the "Petition Date"), the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtors continue to manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

2

Additional detail regarding the Debtors, their business, the events leading to the filing of the Chapter 11 Cases, and the facts and circumstances supporting the relief requested herein is set forth in the *Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings* [D.I. 77] (the "Ramsden Declaration") and incorporated herein by reference.

5.      The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [D.I. 95] entered by the Court on September 10, 2024, in each of the Chapter 11 Cases.[3]

6.      On September 23, 2024, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to 11 U.S.C. § 1102(a)(1).  *See Not. of Appointment of Comm. of Unsecured Creditors* [D.I. 248].

7.      Pursuant to Section 1121(b) of the Bankruptcy Code, the Debtors' initial 120-day Exclusive Filing Period expires on January 7, 2025. Pursuant to Section 1121(c)(3) of the Bankruptcy Code, the Debtors' initial 180-day Exclusive Solicitation Period expires on March 8, 2025.

---

[3]  *See In re Great Basin, LLC*, No. 24-11966 (JKS); *In re Big Lots, Inc.*, No. 24-11967 (JKS); *In re Big Lots Management, LLC*, No. 24-11969 (JKS); *In re Consolidated Property Holdings, LLC.*, No. 24-11968 (JKS); *In re Broyhill LLC*, No. 24-11971 (JKS); *In re Big Lots Stores – PNS, LLC*, No. 24-11970 (JKS); *In re Big Lots Stores, LLC*, No. 24-11973 (JKS); *In re BLBO Tenant, LLC*, No. 24-11972 (JKS); *In re Big Lots Stores – CSR, LLC*, No. 24-11976 (JKS) *In re CSC Distribution LLC*, No. 24-11974 (JKS); *In re Closeout Distribution, LLC*, No. 24-11978 (JKS); *In re Durant DC, LLC*, No. 24-11975 (JKS); *In re AVDC, LLC*, No. 24-11981 (JKS); *In re GAFDC LLC*, No. 24-11977 (JKS); *In re PAFDC LLC*, No. 24-11982 (JKS); *In re WAFDC, LLC*, No. 24-11979 (JKS); *In re INFDC, LLC*, No. 24-11983 (JKS); *In re Big Lots Ecommerce LLC*, No. 24-11980 (JKS); *In re Big Lots F&S, LLC*, No. 24-11984 (JKS).

**B.      The Debtors' Sale Process**

8.      On the September 10, 2024, the Debtors filed the *Motion of Debtors for Entry of Orders (I) (A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures, (II) (A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [D.I. 18] (the "Bidding Procedures Motion").  The Bidding Procedures Motion sought, among other things, approval of a sale of substantially all of the Debtors' assets after the Debtors executed a stalking horse asset purchase agreement, dated as of September 8, 2024 (as amended or supplemented, and including all exhibits, schedules, and annexes attached thereto, the "Nexus APA"), by and among the Seller, the Selling Entities, and Gateway BL Acquisition, LLC, a Delaware limited liability company (together with its affiliates, including Nexus Capital Management LP, "Nexus").

9.      Consistent with the Bidding Procedures (as defined in the Bidding Procedures Motion), the Debtors and their advisors continued to solicit and negotiate competing bids during the post-petition period.  On October 30, 2024, the Debtors conducted the Auction pursuant to the Bidding Procedures Order.[4]  Prior to the Auction, the Debtors received an additional bid from Gordon Brothers Retail Partners, LLC ("GBRP").  However, as stated on the

---

[4] *See Order (I) Approving Bidding Procedures for Sale of Debtors' Assets, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (IV) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (V) Approving Assumption and Assignment Procedures, and (VI) Granting Related Relief* [D.I. 612] (the "Bidding Procedures Order").

record of the Auction, the sale to Nexus (the "Nexus Sale") was identified as the Successful Bid in the *Notice of Successful Bidder for the Sale of the Debtors' Assets* filed and served on October 30, 2024 [D.I. 661] pursuant to the Bidding Procedures Order.

10.     At the hearings on November 21 and 22, 2024 (collectively the "Nexus Sale Hearing"), the Debtors sought and received Court approval to consummate the Nexus Sale.  *See Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1232] (the "Nexus Sale Order").

11.     Following entry of the Nexus Sale Order, the Debtors and their advisors moved swiftly the close the Nexus Sale.  However, the Debtors were unable to satisfy the sale closing milestone of December 13, 2024 contemplated by the Debtors' DIP Facilities (as defined in the Final DIP Order[5]) and, on December 14, 2024, received notices of default and reservations of rights (the "DIP Defaults") from the DIP Lenders.

12.     Following the DIP Defaults, on the evening of December 14, 2024, counsel to Nexus informed counsel to the Debtors that closing the Nexus Sale prior to the outside date of December 31, 2024 under the Nexus APA was very unlikely and that Nexus did not see a realistic path to doing so.  On December 21, 2024, the Debtors received a formal Termination Notice from Nexus pursuant to Section 13.02 of the Nexus APA.  At that time, the Debtors immediately

---

[5] *See Final Order Under Bankruptcy Code Sections 105, 105, 361, 362, 363, 364, 503, 506, 507, and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection to Prepetition Secured Creditors, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [D.I. 584] (the "Final DIP Order").

commenced Store Closing Sales[6] at all of the Debtors' stores while, on a parallel track, continuing to pursue alternative going-concern transactions and/or other asset sales in an effort to preserve the Debtors' businesses.

13.    On December 15, 2024, the Debtors received a letter from GBRP (the "GBRP Bid Letter") setting forth GBRP's bid for a transaction for certain of the Debtors' assets (as further detailed in the GBRP Sale Motion).  Given the likely failure of the Nexus Sale to close, the Debtors determined, in their reasonable business judgment, that the most value-maximizing path forward for the Debtors' estates was to pursue the transaction described in the GBRP Bid Letter (the "GBRP Sale").  Accordingly, on December 27, 2024, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform Under the GBRP APA, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1437] (the "GBRP Sale Motion"), seeking, on an emergency basis, authorization and approval of the GBRP Sale in accordance with that certain Asset Purchase Agreement (the "GBRP APA") by and among Big Lots, Inc., each of its subsidiaries listed on the signature pages of the GBRP APA, and GBRP.

14.    Following a contested hearing on December 30 and 31, 2024, on January 2, 2025, the Court entered the *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of all Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts*

---

[6] As defined in the *Final Order (I) Authorizing Debtors to Assume the Consulting Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* [D.I. 576] (the "Store Closing Order").

*and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "GBRP Sale Order").

The GBRP Sale was subsequently consummated on January 3, 2025. *See Notice of Closing of*

*Sale of Debtors' Assets to Gordon Brothers Retail Partners, LLC* [D.I. 1588].

## BASIS FOR RELIEF

15.    Section 1121(b) of the Bankruptcy Code provides for an initial period of

120 days after the commencement of a chapter 11 case during which a debtor has the exclusive

right to propose and file a plan.  Section 1121(c)(3) of the Bankruptcy Code provides that if the

debtor proposes and files a plan within the initial 120-day exclusive period, the debtor then has

until 180 days after the commencement of the chapter 11 case to solicit and obtain acceptances of

such plan.  Pursuant to section 1121(d)(1) of the Bankruptcy Code, "on request of a party in interest

made within the respective periods specified in subsections (b) and (c) of this section and after

notice and hearing, the court may for cause reduce or increase the 120-day period or the 180-day

period referred to in this section."

16.    Although the term "cause" is not defined by the Bankruptcy Code, the

legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an

agreement" with its creditors.   H.R. Rep. No. 595, 95th Cong., 1st Sess. 232 (1977); *see also In*

*re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987); *In re Public Serv. Co. of N.H.*,

88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent . . . [is] to promote maximum

flexibility.").  To facilitate this legislative intent, a debtor should be given a reasonable opportunity

to negotiate an acceptable plan with creditors and to prepare adequate financial and non-financial

information concerning the ramifications of any proposed plan for disclosure to creditors.  *See,*

*e.g.*, *McLean*, 87 B.R. at 833–34; *In re Texaco, Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

17.    The decision to extend a debtor's exclusivity period is committed to the

bankruptcy court's sound discretion, guided by the facts and circumstances of each case.  *See, e.g.*,

*First Am. Bank of N.Y. v. S.W. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986). Courts consider a variety of factors in determining whether "cause" exists to warrant an extension of the exclusive periods, including:

> a.    the size and complexity of the case;
>
> b.    the existence of good faith progress;
>
> c.    the necessity of sufficient time to negotiate and prepare adequate information;
>
> d.    whether creditors are prejudiced by the extension;
>
> e.    whether the debtor is paying its debts as they become due;
>
> f.    whether the debtor has demonstrated reasonable prospects for filing a viable plan;
>
> g.    the length of time a case has been pending;
>
> h.    whether the debtor is seeking an extension to pressure creditors; and
>
> i.    whether or not unresolved contingencies exist.

*In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) ("*Adelphia*"); *In re PWM Prop. Mgmt.*, No. 21-11445 (MFW) (Bankr. D. Del. Mar. 24, 2022) [D.I. 563], Hr'g Tr. at 174:7–13 (considering the *Adelphia* factors in determining whether to extend or reduce the debtors' exclusivity period); *see also, e.g.*, *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409–10 (Bankr. E.D.N.Y. 1989); *In re Dow Corning Corp.*, 208 B.R. 661, 664–65 (Bankr. E.D. Mich. 1997) (citing *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (listing factors)).  Good faith progress and the need for additional time to continue such progress are particularly significant factors in support of extending the exclusive periods under section 1121(d) of the Bankruptcy Code.  *See Express One Int'l, Inc.*, 194 B.R. at 101; *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986).

18.     Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be sufficient to extend a debtor's exclusivity periods.  *See, e.g.*, *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (listing all nine factors later set forth in *Adelphia*, but relying on only four as relevant in determining whether there was "cause" to extend exclusivity).  Moreover, courts regularly grant a debtor's first request for an extension of the debtor's exclusive period to file a chapter 11 plan.  *See, e.g.*, *In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) ("It is true that during the initial 120-day period in which debtors have an exclusive right to file a plan of reorganization . . . the bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied.").

19.     Indeed, courts in this District regularly extend debtors' exclusive periods under section 1121 of the Bankruptcy Code.  *See, e.g.*, *In re AIO US, Inc.*, No. 24-11836 (CTG) (Bankr. D. Del. Jan. 2, 2025) [D.I. 676] (extending exclusivity period and solicitation period by approximately ninety (90) days each); *In re Blink Holdings, Inc.*, No. 24-11686 (JKS) (Bankr. D. Del. Dec. 12, 2024) [D.I. 673] (extending exclusivity period and solicitation period by approximately three months each); *In re Hardinge Inc.*, No. 24-11605 (JKS) (Bankr. D. Del. Dec. 6, 2024) [D.I. 541] (extending exclusivity period and solicitation period by approximately ninety (90) days each); *In re Meier's Wine Cellars Acquisition, LLC*, No. 24-11575 (MFW) (Bankr. D. Del. Dec. 6, 2024) [D.I. 632] (extending exclusivity period and solicitation period by approximately sixty (60) days each); *In re Number Holdings, Inc.*, No. 24-10719 (JKS) (Bankr. D. Del. Aug. 21, 2024) [D.I. 1192] (extending exclusivity period and solicitation period by approximately ninety (90) days each); *In re NVN Liquidation, Inc.*, No. 23-10937 (LSS) (Bankr. D. Del. Dec. 1, 2023) [D.I. 446] (extending exclusive filing period and exclusive solicitation period

by ninety (90) days each); *In re Allegiance Coal USA Ltd.*, No. 23-10234 (CTG) (Bankr. D. Del. July 10, 2023) [D.I. 377] (extending exclusivity period and solicitation period by approximately three months); *In re PhaseBio Pharms., Inc.*, No. 22-10995 (LSS) (Bankr. D. Del. Mar. 13, 2023) [D.I. 536] (extending exclusivity period by approximately ninety (90) days); *In re Phoenix Services Topco, LLC*, No. 22-10906 (MFW) (Bankr. D. Del. Feb. 10, 2023) [D.I. 516] (extending exclusivity period and solicitation period by approximately ninety (90) days each).

20.     The Debtors submit that sufficient "cause" exists pursuant to section 1121(d) of the Bankruptcy Code to extend Exclusivity Periods for a modest period of 90 days as provided herein. As set forth below, the relevant factors strongly favor extension of the Debtors' Exclusive Periods.

**A.     The Debtors' Chapter 11 Cases Are Large and Complex.**

21.     These Chapter 11 Cases involve 19 debtor-affiliate entities. At the outset of these Chapter 11 Cases, the Debtors operated approximately 1,300 stores and employed over 27,000 employees. The Debtors have successfully consummated the GBRP Sale for substantially all of their assets, which will enable Variety Wholesalers, Inc. ("Variety") to acquire between 200 and 400 Big Lots stores, which Variety plans to operate under the Big Lots brand. Moreover, the Debtors have a wide variety of parties in interest, including various vendors, customers, and landlords—many of whom have been active in these Chapter 11 Cases.

22.     Given the size and complexity of these Chapter 11 Cases, terminating exclusivity would be detrimental to an efficient resolution of these cases. While no other party has yet suggested they would be willing or able to propose a plan, terminating exclusivity could create a situation where the Debtors' estates are saddled with multiple and competing plans. *See In re Borders Grp., Inc.,* 460 B.R. 818, 828 (Bankr. S.D.N.Y. 2011) ("'Opening the floodgates' to allow each and every one of [the debtor's creditors] to file a plan, no matter how poorly conceived or

supported, would not serve 'to secure the expeditious and economical administration of' this case nor 'to carry out the provisions of' the Bankruptcy Code.") (quoting *In re United Press Intern., Inc.*, 60 B.R. 265, 271 n.12 (Bankr. D. Col. 1986)).

**B.**     **The Debtors Have Made Good Faith Progress Towards Exiting Chapter 11.**

23.     A plan would represent the culmination of the Debtors' significant, and nearly complete, efforts in moving these cases to a swift and successful conclusion. To date, the Debtors have achieved much to maximize the value of their estates and progress the cases, including (i) conducting monthly auctions for the sale of valuable leases, (ii) conducting Store Closing Sales, (iii) obtaining court approval of for the sale of substantially all of the Debtors' assets to GBRP, which has closed, and (iv) and negotiating with various stakeholders and interested parties to resolve potential disputes in the cases. Therefore, if achieved, a chapter 11 plan would be the product of the Debtors' extensive efforts and agreement among the Debtors' most significant stakeholders, and cause exists to extend the Exclusive Periods to allow the Debtors to negotiate and formulate such plan.

**C.**     **Additional Time is Necessary to Formulate a Chapter 11 Plan.**

24.     During the first four months of these Chapter 11 Cases, the Debtors have primarily focused their efforts on the sale of substantially all of their assets to maximize value for all stakeholders. *See* GBRP Sale Mot. ¶¶ 14–22. Now that the Initial Closing of the GBRP Sale has occurred, the Debtors, in consultation with the Committee and other relevant stakeholders, need to determine the best path forward for resolving these cases. The prospect of competing plans would only lead to disorder and waste scarce estate resources, thereby ultimately diminishing the remaining pool of value available for distribution to creditors.

25.     Specifically, now that the GBRP Sale has closed, and in order to determine the most value-maximizing path forward for all stakeholders, the Debtors need sufficient time to

reconcile claims asserted by trade creditors and other administrative claimants and determine how best to maximize and distribute the remaining estate assets. As the Debtors noted at the January 2, 2025 hearing, the Debtors intend to work collaboratively with parties in interest, including the Committee, to establish an orderly process for reconciling administrative expense claims in order to avoid costly litigation that would otherwise drain value from the estates. Jan. 2 Hr'g Tr. at 48:20–24. Determining such a process will take time and will likely have a substantial impact on the terms of any chapter 11 plan proposed by the Debtors.

26.     Accordingly, this extension request is reasonable and consistent with the efficient prosecution of these Chapter 11 Cases because it will provide the Debtors with additional time to continue negotiations with creditors, including trade vendors and other alleged administrative claimants. Allowing the Exclusive Periods to lapse now would defeat the purpose of section 1121 and deprive the Debtors and their creditors of the benefit of a meaningful and reasonable opportunity to negotiate and confirm a consensual plan. Even if a chapter 11 plan is ultimately not pursued, extending exclusivity is justified here to provide the Debtors with time to determine, in consultation with the Committee and other large creditors, the optimal resolution of these Chapter 11 Cases without facing competing plans. The expiration of the Debtors' exclusive right to file a chapter 11 plan at such a critical time would jeopardize the forward momentum of these Chapter 11 Cases and disrupt the substantial progress made to date.

**D.     The Debtors Have Reasonable Prospects for Filing a Viable Plan.**

27.     Notwithstanding the likelihood that accrued administrative expense creditors will not receive a full recovery, the Debtors believe that all parties may benefit from an orderly process set forth in a chapter 11 plan, and the Debtors will endeavor to garner support for a plan if one is pursued. There is potentially significant upside to the Excluded Assets, *see* Dec. 31 Hr'g Tr. at 18:25–19:16, and the Debtors should have the opportunity to explore a plan around

distributing the liquidated value of such Excluded Assets even if it contemplates impairment of administrative claims.

**E.      Creditors Will Not Be Harmed by Extending Exclusivity.**

28.      Under the GBRP APA, go-forward administrative expenses (including professional fees) are covered by the Buyer, and, as the Debtors represented at the December 19, 2024 status conference, the Debtors have committed to not placing new vendor orders.  Dec. 19 Hr'g Tr. at 48:1–2.  As such, creditors are not prejudiced by an extension of the Exclusive Periods because the administrative exposure to the estate is not growing. *See* GBRP Sale Mot. ¶ 26. Given the Debtors' extensive history of working constructively and achieving consensual resolutions with parties in interest in these Chapter 11 Cases, the Debtors are best positioned to negotiate with creditors and propose a plan of liquidation that equitably maximizes the remaining value of the Debtors' estates following the GBRP Sale. And, importantly, this Motion is not an opportunity for creditors or other parties in interest to relitigate or otherwise undermine this Court's ruling on December 31, 2024[7] or the Sale Order. *See U.S. Bank Nat'l Assoc. v. Wilmington Trust Co. (In re Spansion, Inc.)*, 426 B.R. 114, 140 (Bankr. D. Del. 2010) ("[A] creditor constituency's unhappiness or dissatisfaction with a debtor's proposed plan [with or without a formal plan on file], without more, does not constitute cause to end exclusivity and undermine the debtor's chance of obtaining confirmation of its plan during that period." (citing *Adelphia*, 336 B.R. at 676)).

**F.      The Cases Are Fewer Than Four Months Old.**

29.      The Debtors' request for an extension of the Exclusivity Periods is the Debtors' first such request and comes fewer than four months after the Petition Date. As discussed above, during this short time, the Debtors have accomplished a great deal. The Debtors will

---

[7] *See* Dec. 31 Hr'g Tr. 224:18–233:9.

continue to work diligently with all stakeholders to negotiate and consummate a plan, and the fact that this is the Debtors' first request for an extension supports granting the requested extension.

30.     For all the foregoing reasons, the Debtors submit that sufficient cause exists to extend (i) the Exclusive Filing Period through and including the earlier of (a) the Effective Date of the Plan and (b) April 7, 2025, and (ii) the Exclusive Solicitation Period through and including the earlier of (a) the Effective Date of the Plan and (b) June 6, 2025.

## NOTICE

31.     Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) counsel to the Committee; and (c) any other party that has requested notice pursuant to Local Rule 2002-1(b).

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form of the Proposed Order attached as **Exhibit A**, and grant such other relief as is just and proper under the circumstances.

Dated: January 6, 2025
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Sophie Rogers Churchill*
Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Tamara K. Mann (No. 5643)
Sophie Rogers Churchill (No. 6905)
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
tmann@morrisnichols.com
srchurchill@morrisnichols.com
csawyer@morrisnichols.com

*-and-*

DAVIS POLK & WARDWELL LLP
Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
stephen.piraino@davispolk.com
ethan.stern@davispolk.com

*Counsel to the Debtors and Debtors in Possession*