**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.¹ | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>Hearing Date: January 21, 2025 at 1:00 p.m.<br>Obj. Deadline: January 14, 2025 at 4:00 p.m. |

**MOTION OF KENTEX CORPORATION FOR ENTRY OF AN
ORDER ALLOWING AND COMPELLING PAYMENT CHAPTER 11
ADMINISTRATIVE EXPENSE CLAIMS AND FOR RELATED RELIEF**

Kentex Corporation ("Kentex"), by and through its undersigned counsel, hereby moves (the "Motion") for entry of an Order, pursuant to §§ 365(d)(3) and/or 503(b)(1)(A) of title 11 of the United States Code (the "Bankruptcy Code"), and in substantially the same form as attached hereto as Exhibit A, allowing and compelling the payment of its chapter 11 administrative expense claims in the above-captioned cases. In support of this Motion, Kentex respectfully represents and alleges as follows:

**JURISDICTION AND VENUE**

1.  The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

---

¹ The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores – PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores – CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

**BACKGROUND**

2. On September 9, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court. The Debtors had initially remained in possession of their assets and continued to operate and manage their businesses as debtors-in-possession.

3. On the Petition Date, the Debtors filed that certain *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors To Pay Prepetition Critical Vendor Claims, Foreign Vendor Claims, and 503(b)(9) Claims in the Ordinary Course of Business, (II) Granting Administrative Expense Status to Debtors Undisputed Obligations to Vendors Arising From Post-Petition Delivery of Goods Ordered Prepetition and Authorizing Debtors To Pay Those Obligations in the Ordinary Course of Business, (III) Authorizing Debtors To Return Goods, (IV) Authorizing Debtors To Pay Certain Prepetition Claims of Lien Kentexs, and (V) Authorizing Financial Institutions To Honor and Process Related Checks and Transfers* [D.I. 11] (the "Critical Vendor Motion"). The Debtors claimed they needed the Order approving the Critical Vendor Motion to preserve the going concern value of the estate, and the Debtors requested authority to pay the prepetition claims of certain vendors, suppliers, and service providers in part in recognition of the importance of the Debtors' relationships with such vendors, suppliers, and service providers and their desire that the bankruptcy cases have as little effect on the debtors' ongoing businesses and operations as possible. *See* Critical Vendor Motion. Also on the Petition Date, the Debtors filed a Motion to Approve Debtor in Possession Financing [D.I. 19] (the "DIP Financing Motion").

4. On September 10, 2024, the Bankruptcy Court entered an interim order [D.I. 106] (the "Interim Critical Vendor Order") authorizing the debtors, under certain conditions, to pay

prepetition claims of certain vendors, suppliers, and service providers that agree to the terms set forth below and to be bound by the terms of the Order.

5. On October 9, 2024, the Court entered a final order [D.I. 463] (the "Final Critical Vendor Order") authorizing the debtors to pay prepetition claims of certain vendors on a final basis. On October 22, 2024, the Court entered the Final DIP Order [D.I. 584]. Kentex is a postpetition trade creditor of the Debtors who has received purchase orders from the Debtors since the Petition Date and fulfilled those orders in the ordinary course of business.

6. After the Petition Date, the Debtors placed orders for goods from Kentex which have been delivered but have not been paid for, notwithstanding repeated representations from the Debtors that they would pay for those goods, and that the Debtors had the means to pay for those goods. Kentex has delivered goods with a price and value of no less than $808,139.92 to the Debtors in the normal course of business, for which payment is now overdue and remains outstanding. A summary of account for postpetition shipments made by Kentex actually received by the Debtors as of the date of this Motion are follows:

| Invoice date | Invoice# | PO# | Amount |
|---|---|---|---|
| 9/23/2024 | 0049385-IN | 95562786 | $ 64,002.60 |
| 10/14/2024 | 0049397-IN | 95562773 | $ 42,668.40 |
| 10/14/2024 | 0049403-IN | 95618325 | $ 81,452.50 |
| 10/18/2024 | 0049401-IN | 95562787 | $ 20,553.00 |
| 10/18/2024 | 0049402-IN | 95562788 | $ 21,334.20 |
| 11/20/2024 | 0049426-IN | 95609114 | $ 66,080.22 |
| 11/20/2024 | 0049427-IN | 95609385 | $ 34,139.94 |
| 11/20/2024 | 0049428-IN | 95288671-2 | $ 31,327.98 |
| 11/20/2024 | 0049429-IN | 95288670-2 | $ 29,362.26 |
| 12/3/2024 | 0049447-IN | 95288569-2 | $ 31,688.22 |
| | | | $ 422,609.32 |

7. Additionally, Kentex has shipped the following goods to the Debtors, which goods are *en* route to the Debtors and due to the terms of origin (FOB), are now property of, and the

responsibility of the Debtors. As of the date of this Motion, those goods are identified by the following invoices:

| Invoice date | Invoice# | PO# | Amount |
|---|---|---|---|
| 11/20/2024 | 0049430-IN | 95562784 | $ 20,553.00 |
| 11/20/2024 | 0049431-IN | 95562782 | $ 21,185.00 |
| 11/20/2024 | 0049432-IN | 95562783 | $ 20,553.00 |
| 11/21/2024 | 0049433-IN | 95562775 | $ 21,185.00 |
| 11/21/2024 | 0049434-IN | 95562776 | $ 20,553.00 |
| 11/21/2024 | 0049435-IN | 95606810 | $ 20,553.00 |
| 11/21/2024 | 0049436-IN | 95606809 | $ 21,185.00 |
| 11/25/2024 | 0049439-IN | 95562774 | $ 20,553.00 |
| 11/26/2024 | 0049440-IN | 95562785 | $ 21,334.20 |
| 11/26/2024 | 0049441-IN | 95606787 | $ 21,334.20 |
| 11/26/2024 | 0049442-IN | 95562789 | $ 21,334.20 |
| 11/26/2024 | 0049443-IN | 95606786 | $ 21,334.20 |
| 12/2/2024 | 0049444-IN | 95562790 | $ 21,334.20 |
| 12/2/2024 | 0049445-IN | 95606785 | $ 21,334.20 |
| 12/5/2024 | 0049452-IN | 95358149 | $ 91,205.40 |
| | | | $ 385,530.60 |

8. Kentex has attached hereto as <u>Exhibit B</u> the backup records and shipping details for the invoices identified in paragraphs 6 and 7 *infra*.

## RELIEF REQUESTED

9. Kentex respectfully requests that this Court enter an Order allowing its postpetition administrative expense claim in the amount of $808,139.92, and compelling the Debtors to immediately pay Kentex the total amount of $808,139.92.

## BASIS FOR RELIEF

10. 11 U.S.C. § 503(b) mandates the allowance of an administrative expense for the ".. . actual, necessary costs and expenses of preserving the estate[.]" To qualify as an administrative expense, an expense "must arise from a [post-petition] transaction with the debtor-in-possession" and "be beneficial to the debtor-in-possession in the operation of the business." *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 314-315 (3rd Cir. 2011). To be awarded an administrative expense claim,

a Kentex must demonstrate that it conducted a transaction with a debtor in possession that, in turn, provided a benefit to such debtor's estate. *See Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.)*, 181 F.3d 527, 532–33 (3d Cir. 1999) (noting that, to establish a priority claim under section 503(b)(1)(A) of the Bankruptcy Code, the debt must arise post-petition and benefit the estate (citations omitted)).

11.     Claims arising from goods purchased in the ordinary course of business by a debtor-in-possession are generally entitled to administrative priority. *See e.g., In re Thatcher Glass Corp.*, 59 B.R. 797, 799 (Bankr. D. Conn. 1986); *see also* "There is an initial assumption that, where a contract exists, the contractual rate is the reasonable value of the goods or services provided to the estate." *In re Bethlehem Steel Corp.*, 291 B.R. 260, 264 (Bankr. S.D. N.Y. 2003 (cited with approval in *In re Smurfit-Stone Container Corp.*, 425 B.R. 735, 741 (Bankr. D. Del. 2010).

12.     The Court has discretion to require that Kentex's administrative expense be paid immediately. *In re Garden Ridge Corp*., 323 B. R. 136, 143 (Bankr. D. Del. 2005). "In determining the time of payment, courts consider prejudice to the debtor, hardship to the Kentex, and potential detriment to other creditors." *Id*. "In making this determination, one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets." *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) (internal citations omitted). "Courts will also consider the particular needs of each administrative Kentex and the length and expense of the case's administration." *In re NE OPCO, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013) (internal citations omitted). "To qualify for exceptional immediate payment, a creditor must show that 'there is a necessity to pay and not merely that the Debtor has the ability to pay.'" *In re Continental Airlines*, 146 B.R. 520, 531 (Bankr. D. Del. 1992) (internal citation omitted).

13. There is no prejudice to the Debtors in requiring immediate payment of this administrative expense. The Debtors have authorization — and a DIP and cash collateral budget — permitting them to pay more than $50 million in operating disbursements per week, which amount includes post-petition delivery claims. *See* D.I. at 431 (Interim DIP Order); D.I. 584 (Final DIP Order). The Debtors have thus already decided that, in their business judgment, the prejudice to the Debtors and other creditors arising from immediate payment of post-petition delivery claim is outweighed by the necessity of business continuity. *See* Critical Vendor Motion. The Debtors have also budgeted and set aside sufficient funds to pay post-petition delivery claims without impairing their ability to operate or restructure during the pendency of these cases. The Debtors thus already have made the representations that they have the capacity, ability, and authority to pay Kentex's administrative expenses, and the Court has ruled that payment of other post-petition delivery claims is a proper exercise of the Debtors' business judgment.

14. Kentex will suffer severe hardship if its administrative claim is not paid immediately. Kentex is a trading company with operating costs and obligations to its trading partners. If forced to wait indefinitely for payment of the administrative expense amount, Kentex will suffer severe financial distress and disruption in its ability to order, accept and fulfill future orders for customers, including any potential purchasers of the Debtors' businesses.

15. Despite having sufficient cash on hand and/or availability under the DIP ABL Facility to do so, the Debtors have failed to timely pay Kentex for postpetition deliveries and have provided no explanation for the delay. Kentex relied on representations by the Debtors' representatives – including the CEO – that the Debtors had the ability, authority, and intent to timely pay Kentex for postpetition deliveries. In reliance on those statements, Kentex agreed to and did deliver goods to the Debtors with a value of not less than $808,139.92. These receivables

are particularly large in proportion to the size of Kentex's business. Nonpayment or even a delay in payment presents an existential threat to Kentex's business.

16. Any claims by the Debtors or other creditors, including the DIP Lender, of prejudice are belied by the acceptance by those parties – who have inside knowledge of the Debtors' affairs – of the budgets and representations made by the Debtors regarding the Debtors' financial wherewithal, or those parties' knowing silence that the Debtors' reports were untrue. Just three short months ago, the Debtors made representations that they needed goods and services to operate in chapter 11, and that they had the means to conduct that business. As holder of an allowed administrative expenses, Kentex is entitled to payment in full on its administrative claim in any potential plan or liquidation, so immediate payment will not disadvantage any other creditors. Other creditors should not be entitled to benefit from inventory obtained by inducements which those parties knew to be false or misleading. If it is true that the Debtors funded their operations without the means to pay administrative expenses, and the proceeds from the sale of goods delivered by trade creditors simply went to pay other secured creditors and professionals, then this Court should fashion relief to remedy those wrongs.

17. The totality of the circumstances supports compelling the Debtors to pay Kentex's administrative claim immediately, as further delay in payment will only prejudice Kentex, and there is no cognizable prejudice to the Debtors or to the Debtors' other creditors. Accordingly, Kentex requests that its administrative expense claim be paid within seven days after the entry of this Court's order granting the Motion.

| | |
|---|---|
| Dated: January 7, 2025 | CROSS & SIMON, LLC |
| | |
| | */s/ Christopher P. Simon* |
| | Christopher P. Simon (No. 3697) |
| | 1105 North Market Street, Suite 901 |
| | Wilmington, DE   19801 |
| | Tel.: (302) 777-4200 |
| | Fax: (302) 777-4224 |
| | Email: csimon@crosslaw.com |
| | |
| | *Counsel for Kentex Corporation* |