**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967(JKS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: 1/14/2025 at 4:00 PM ET**<br>**Hearing Date: 1/21/2025 at 1:00 PM ET** |

**SQUARETRADE, INC.'S MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

SquareTrade, Inc. (the "Claimant"), by and through its undersigned counsel, respectfully files this motion for allowance and payment of administrative expense claim, and for approval of offset or recoupment (the "Motion") pursuant to *inter alia* Title 11 of the United States Code (the "Bankruptcy Code") Sections 503(b), 507(a)(2), and 553, and granting such other relief that the Court finds just and proper. In support of this Motion, Claimant represents as follows:

## JURISDICTION

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### Case Background

4. On September 9, 2024 (the "Petition Date"), Big Lots Stores, Inc. and each of its subsidiaries (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).

5. Shortly after the Petition Date, the United States Trustee appointed an Official Committee of Unsecured Creditors in the Debtors' jointly-administered cases pursuant to Section 1102 of the Bankruptcy Code.

6. The Debtors have operated since the Petition Date and have continued to operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

7. On September 9, 2024, the Debtors filed the "*Motion Of Debtors For Entry Of Interim And Final Orders Authorizing (I) Debtors To Honor Prepetition Obligations To Customers And Otherwise Continue Customer Practices And (II) Financial Institutions To Honor And Process Related Checks And Transfers*" [Doc. No. 10] (the "Customer Obligations Motion").[2]

8. On October 31, 2024, the Debtors filed the "*Notice Of Proposed Assumption And Assignment Of Executory Contracts Or Unexpired Leases and Cure Amounts*" [Doc. No. 683] (the "Assumption Notice") which stated that the Debtors intended to assume the Agreement.[3]

9. Among other things, the Debtors filed their bankruptcy cases to effectuate a sale (the "Nexus Sale") of substantially all of their assets and business operations to an affiliate of Nexus Capital Management LP ("Nexus").[4]

10. However, on December 19, 2024, the Debtors announced that they do "not anticipate completing [the] previously announced asset purchase agreement with Nexus" and that they are "preparing to commence going out of business [GOB] . . . sales at all remaining Big Lots store locations."[5]

11. On December 27, 2024, the Debtors filed their "*Motion . . . For Entry Of An Order*

---

[2] With respect to the Protection Plans (which the Debtors define in the Customer Obligations Motion as the "Product Warranty Program," the Debtors sought Court authority to continue honoring and selling these plans because the Debtors determined that they are "beneficial and cost-effective to their business and . . . would preserve the value of the Debtors' estates . . . [,] necessary to maintain the Debtors' critical business relationships and Customer satisfaction for the benefit of the Debtors' estates and stakeholders . . . [, and are] "essential and in the best interests of the Debtors, their estates, and their creditors." *See* (Customer Obligations Motion, pg. 4, 11 and 12 of 24).

[3] *See* (Assumption Notice, pg. 95 of 109) ("SquareTrade, Inc. . . . Amendment to Retailer Agreement . . . Retailer Agreement").

[4] https://cases.ra.kroll.com/biglots/Home-Index

[5] https://cases.ra.kroll.com/biglots/Home-Index.

*(I) Approving Sale Of Debtors' Assets Free And Clear Of Liens, Claims, Interests, And Encumbrances; (II) Authorizing The Debtors To Enter Into And Perform Under the GBRP APA, (III) Authorizing Assumption And Assignment Of Executory Contracts And Unexpired Leases, And (IV) Granting Related Relief*" [Doc. No. 1437] (the "GBRP Sale Motion"). The GBRP Sale Motion sought Court approval of a transaction to sell substantially all of the Debtors' assets to Gordon Brothers Retail Partners, LLC ("GBRP"), and attached an asset purchase agreement and agency agreement that provided that "during the first fourteen (14) days following the Sale Commencement Date," GBRP "shall accept [Debtors' gift cards, gift certificates, Inventory creditors and other Merchant-issued credits, provided, that [GBRP] shall not accept such items following such date." *See* (Doc. No. 1437, pg. 170 of 186).

12. Further, the GBRP Sale Motion and related asset purchase agreement do not provide a list of executory contracts to be assumed or rejected, but rather provides that GBRP will have until March 31, 2025 to make this decision. *See* (Doc. No. 1437). Accordingly, at this time, Claimant does not know whether its contracts with the Debtors will be assumed or rejected.

**Agreement, And Protection Plans[6]**

13. Claimant markets, sells, and administers service contracts called Protection Plans ("Protection Plans") that provide extended warranty coverage for various consumer goods – such as furniture, electronics and appliances. These Protection Plans are sold direct to consumers and through large retailers such as Big Lots. (Poole Decl. para. 3).

14. On or around July 8, 2021, Claimant and Big Lots Stores, LLC[7] and certain of the other Debtors entered into that certain "*SquareTrade, Inc. Retailer Agreement*" (as amended, the "Agreement"). The Agreement includes a confidentiality provision, and will be filed with the Court under seal if necessary. (Poole Decl. para. 4).

15. After the Petition Date, the Debtors continued to sell and benefit from the sale of Claimant's Protection Plans to their customers for certain products purchased through the Debtors'

[6] The Declaration of Matthew Poole in support of this Motion is being filed concurrently herewith.
[7] Big Lots Stores, LLC was formerly known as Big Lots Stores, Inc.

"brick and mortar" stores and website. (Poole Decl. para. 5).

16. Among other things, the Agreement provides that: (1) the Debtors shall pay to Claimant the wholesale cost (the "Wholesale Cost") for each Protection Plan that is sold to the Debtors' customers ("Customers"); (2) Claimant will handle all claims by the repair or replacement of the covered product, or by the issuance of a retailed branded electronic gift card or check; and (3) the Debtors shall sell to Claimant the retail branded electronic gift cards at an agreed-upon discount. (Poole Decl. para. 6).

**Protection Plans Claim**

17. The Debtors have failed to pay Claimant for Protection Plans sold post-petition (the "Protection Plans Claim"), including several post-petition invoices[8] totaling **$522,952.38**:

- (1) the October 2024 invoice in the amount of $158,705.10;
- (2) the November 2024 invoice in the amount of $239,486.58; and
- (3) the December 2024 invoice in the amount of $124,760.70.[9]

(Poole Decl. para. 7).

18. Because the Debtors continued to sell Protection Plans in their stores and website, there may be future amounts that are due and owing to Claimant from the post-petition sale of other Protection Plans, and Claimant reserves the right to amend or supplement this Motion, or file another Motion to have these amounts allowed and paid. (Poole Decl. para. 8).

**Gift Card Claim**

19. In addition to the Protection Plans Claim, Claimant also holds a claim comprising of the amounts outstanding on the gift cards (the "GC Claim Amount") purchased by Claimant from the Debtors pursuant to the Agreement (the "Gift Card Claim," and together with the Protection Plans Claim, the "Administrative Claims") both prior to and after the Petition Date. (Poole Decl. para. 9).

---

[8] True and correct copies of the Invoices are attached collectively as **Exhibit "B"** hereto.

[9] The amounts due to Claimant under the October 2024, November 2024 and December 2024 invoices (the "Invoices") constitute the aggregate amount of the "Wholesale Cost" due to Claimant from the Debtors sale of Protection Plans to their Customers (the "Wholesale Costs") during the relevant periods.

20. Pursuant to the Agreement, Claimant purchased gift cards from the Debtors to be given to customers that have purchased and submitted claims under the Protection Plans. (Poole Decl. para. 10).

21. Pursuant to the Debtors' "*Motion For Entry Of . . . Orders Authorizing . . . Debtors To Honor Prepetition Obligations To Customers And Otherwise Continue Customer Practices* . . . ." [Doc. No. 10] and order thereon, the Debtors obtained an order allowing them to, among other things, honor "Gift Cards purchased prior to the Petition Date . . . maintain the Gift Card Program on a post-petition basis, and . . . honor all Customer obligations related thereto in the ordinary course of business." *See* (Doc. No. 10, pg. 11 of 24).

22. However, given: (1) the Debtors' stated inability to close the Nexus Sale, and (2) their intention of completing going out of business sales for all of their stores and to stop honoring gift cards shortly following the initial closing date for the GBRP sale,[10] it appears that the Debtors will no longer honor the gift cards purchased by Claimant and given to certain customers that have purchased Protection Plans (the "Customers") – which will result in Claimant having to honor qualifying Customers' claims with alternative forms of payment. (Poole Decl. para. 12).

23. Because: (1) the Gift Card Claim arises from the Debtors' purchase of gift cards post-petition as well as the post-petition breach of the Agreement for gift cards purchased by Claimant prepetition, and (2) the administration of the Protection Plans using the gift cards provide a benefit to the Debtors and their estates, the Gift Card Claim is entitled to administrative expense priority. Claimant holds a Gift Card Claim against the Debtors in the GC Claim Amount, which amount is currently being determined. Claimant requests the allowance and immediate payment of the Gift Card Claim.

24. Claimant currently owes the Debtors approximately $35,691.59 for gift cards purchased post-petition (the "$35,691.59 Credit"). Debtors owe Claimant at least $522,952.38 for the Protection Plan Claim and additional amounts for the Gift Card Claim (the "Total Administrative Expense Claim"). By this Motion, Claimant requests authority to offset the

[10] *See* https://cases.ra.kroll.com/biglots/Home-Index; (Doc. No. 1437, pg. 170 of 186).

$35,691.59 Credit against the Total Administrative Expense Claim such that Claimant retains the $35,691.59. (Poole Decl. para. 13).

**RELIEF REQUESTED AND RESERVATION OF RIGHTS**

25. Pursuant to Sections 503(b) and 507(a)(2), and Federal Rules of Bankruptcy Procedure 3002, Claimant respectfully requests that the Court enter an order allowing and authorizing immediate payment to Claimant of: (1) the Protection Plans Claim in the amount of no less than $522,952.38; and (2) the Gift Card Claim. Claimant also requests authority to offset pursuant to Bankruptcy Code section 553 or the doctrine or recoupment, the $35,691.59 Credit against the Total Administrative Expense Claim and retain the $35,691.59.

26. Claimant reserves its rights to amend this Motion to reflect any additional amounts including fees, attorneys' fees and/or other expenses arising under the terms of the Agreement, monetary losses suffered by Claimant with respect to the Agreement, and/or to address adjustments that have not yet become due or have not yet been billed under the terms of the Agreement.

**BASIS FOR RELIEF REQUESTED**

27. Section 503(b)(1) of the Bankruptcy Code provides for an administrative expense claim for the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). To qualify for administrative expense priority, an expense "must arise from a [post-petition] transaction with the debtor-in-possession" and "be beneficial to the debtor-in-possession in the operation of the business." *In re Mutual Paper Mills, Inc.*, 650 F.3d 311, 314-315 (3d. Cir. 2011). "There is an initial presumption that, where a contract exists, the contractual rate is the reasonable value of the goods or services provided to the estate." *In re Bethlehem Steel Corp.*, 291 B.R. 260, 264 (Bankr. S.D.N.Y. 2023).

28. Here, since the Petition Date until December 2024, the Debtors have continued to sell and benefit from the sale of Claimant's Protection Plans to their customers for certain products purchased through the Debtors' "brick and mortar" stores and website. However, despite being paid by Customers for the costs of the Protection Plans sold (and administered by Claimant), the Debtors have failed to pay, among other things, the Invoices for Protection Plans sold post-petition

in the aggregate amount of $522,952.38.[11] There can be no reasonable dispute that the sale of Protection Plans post-petition constitute a "post-petition" transaction, and provided "actual and necessary" benefits to the bankruptcy estate. In fact, the Debtors have acknowledged in the Customer Obligations Motion that the Protection Plans are "beneficial and cost-effective to their business and . . . would preserve the value of the Debtors' estates . . . [,] necessary to maintain the Debtors' critical business relationships and Customer satisfaction for the benefit of the Debtors' estates and stakeholders . . . [, and are] "essential and in the best interests of the Debtors, their estates, and their creditors." *See* (Customer Obligations Motion, pg. 4, 11 and 12 of 24). As a result, the Court should allow the Protection Plans Claim as an administrative expense priority claim pursuant to Section 503(b)(1) of the Bankruptcy Code, and authorize immediate payment thereof in an amount not less than $522,952.38.

29. In addition to the Protection Plans Claim, Claimant is also entitled to an administrative expense priority claim for its Gift Cards Claim. The Gift Cards Claim relates to gift cards that Claimant purchased from Debtors both pre-petition and post-petition. The Gift Cards Claim is entitled to administrative expense priority: (1) for gift cards purchased by Claimant post-petition which will soon be unredeemable such that Claimant will be obligated to satisfy Customers that obtained the gift cards in to satisfy warranty claims from Claimants' own funds; (2) for gift cards purchased by Claimant prepetition due to Debtors' post-petition breach of the Agreement (thereby obligating Claimant to compensate Customers for the soon to be unredeemable gift cards post-petition); and (3) because Claimant continues to administer and provide services under the Protection Plans post-petition (services which the Debtors have admitted are "essential and in the best interests of the Debtors, their estates, and their creditors").[12]

---

[11] It appears to Claimant that the Debtors may have largely ceased selling the Protection Plans late in December 2024. However, because the Debtors continued to sell Protection Plans in their stores and website in December 2024, there will be future amounts that are due and owing to Claimant from the post-petition sale of other Protection Plans. Further, in the event Debtors elect to restart selling Protection Plans, Claimant would have additional administrative expense claims.

[12] *See* (Customer Obligations Motion, pg. 4, 11 and 12 of 24).

30. Claimant should be permitted to offset the $35,691.59 Credit against the Total Administrative Expense Claim and retain the $35,691.59 pursuant to Section 553 of the Bankruptcy Code. Moreover, with respect to the GC Claim Amount, the common-law doctrine of recoupment applies because the GC Claim Amount and the $35,691.59 Credit both arise from the same transaction regarding the purchase of Customer gift cards by Claimant from the Debtors under the Agreement. *See In re 105 E. Second St. Assocs.*, 207 B.R. 64, 68 (Bankr. S.D.N.Y. 1997) ("Recoupment . . . is a recovery of money owed arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim.")

31. Accordingly, Claimant is entitled to allowance and immediate payment of its Total Administrative Expense Claim, and to retain the $35,691.59 as an offset or recoupment.

**CONCLUSION**

**WHEREFORE**, Claimant respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit "A"**:

1. Granting this Motion in its entirety;
2. Allowing Claimant's Protection Plans Claim as an administrative expense claim, and directing the Debtors to pay that claim in the amount of no less than $522,952.38;
3. Allowing Claimant's Gift Card Claim as an administrative expense claim, and directing the Debtors to pay that claim in the GC Claim Amount;
4. Allowing Claimant to offset the $35,691.59 Credit and retain the $35,691.59; and
5. Granting such other relief the Court deems just and proper.

Dated: January 7, 2025
Wilmington, Delaware

**POLSINELLI PC**

*/s/ Michael V. DiPietro*
Christopher A. Ward (Del. Bar No. 3877)
Michael V. DiPietro (Del. Bar No. 6781)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
cward@polsinelli.com; mdipietro@polsinelli.com

-and-

**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK LLP**
Eve H. Karasik
Jeffrey S. Kwong
2818 La Cienega Avenue
Los Angeles, CA 90034
Telephone: (310) 229-1234
EHK@LNBYG.COM; JSK@LNBYG.COM

*Counsel for SquareTrade, Inc.*