# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967(JKS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: 1/14/2025 at 4:00 PM ET**<br>**Hearing Date: 1/21/2025 at 1:00 PM ET** |

## SQUARETRADE, INC.'S MOTION FOR ORDER COMPELLING IMMEDIATE ASSUMPTION OR REJECTION OF AGREEMENT; OR, IN THE ALTERNATIVE, FOR STAY RELIEF

SquareTrade, Inc. ("Movant"), by and through its undersigned counsel, respectfully files this motion for a Court order, substantially in the form attached hereto as **Exhibit "A"** (the "Proposed Order"), compelling the Debtors (defined below) to immediately assume or reject the Agreement (defined below). In the alternative to the foregoing relief, Movant respectfully requests entry of an order granting relief from stay pursuant to Section 362(d)(1) of the Bankruptcy Code and Fed. R. Bankr. P. 4001(a)(1) and (3) to enable Movant to exercise its contractual rights under the Agreement to terminate the Agreement, with such relief to be effective immediately.

In support of this Motion, Movant represents as follows:

## JURISDICTION

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).

**BACKGROUND**

**Case Background**

4.  On September 9, 2024 (the "Petition Date"), Big Lots Stores, Inc. and each of its subsidiaries (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

5.  Shortly after the Petition Date, the United States Trustee appointed an Official Committee of Unsecured Creditors in the Debtors' jointly-administered cases pursuant to Section 1102 of the Bankruptcy Code.

6.  The Debtors have operated since the Petition Date and have continued to operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

7.  On September 9, 2024, the Debtors filed the "*Motion Of Debtors For Entry Of Interim And Final Orders Authorizing (I) Debtors To honor Prepetition Obligations To Customers And Otherwise Continue Customer Practices And (II) Financial Institutions To Honor And Process Related Checks And Transfers*" [Doc. No. 10] (the "Customer Obligations Motion").[2]

8.  On October 31, 2024, the Debtors filed the "*Notice Of Proposed Assumption And Assignment Of Executory Contracts Or Unexpired Leases and Cure Amounts*" [Doc. No. 683] (the "Assumption Notice") which stated that the Debtors intended to assume the Agreement.[3]

9.  Among other things, the Debtors filed their bankruptcy cases to effectuate a sale (the "Nexus Sale") of substantially all of their assets and business operations to an affiliate of Nexus Capital Management LP ("Nexus").[4]

10. However, on December 19, 2024, the Debtors announced that they do "not

---

[2] With respect to the Protection Plans (which the Debtors define in the Customer Obligations Motion as the "Product Warranty Program," the Debtors sought Court authority to continue honoring and selling these plans because the Debtors determined that they are "beneficial and cost-effective to their business and . . . would preserve the value of the Debtors' estates . . . [,] necessary to maintain the Debtors' critical business relationships and Customer satisfaction for the benefit of the Debtors' estates and stakeholders . . . [, and are] "essential and in the best interests of the Debtors, their estates, and their creditors." *See* (Customer Obligations Motion, pg. 4, 11 and 12 of 24).

[3] *See* (Assumption Notice, pg. 95 of 109) ("SquareTrade, Inc. . . . Amendment to Retailer Agreement . . . Retailer Agreement").

[4] https://cases.ra.kroll.com/biglots/Home-Index

2

anticipate completing [the] previously announced asset purchase agreement with Nexus" and that they are "preparing to commence going out of business [GOB] . . . sales at all remaining Big Lots store locations."[5]

11. On December 27, 2024, the Debtors filed their "*Motion . . . For Entry Of An Order (I) Approving Sale Of Debtors' Assets Free And Clear Of Liens, Claims, Interests, And Encumbrances; (II) Authorizing The Debtors To Enter Into And Perform Under the GBRP APA, (III) Authorizing Assumption And Assignment Of Executory Contracts And Unexpired Leases, And (IV) Granting Related Relief*" [Doc. No. 1437] (the "GBRP Sale Motion"). The GBRP Sale Motion sought Court approval of a transaction to sell substantially all of the Debtors' assets to Gordon Brothers Retail Partners, LLC ("GBRP"), and attached an asset purchase agreement and agency agreement (the "Agency Agreement") that provided that "during the first fourteen (14) days following the Sale Commencement Date," GBRP "shall accept [Debtors' gift cards, gift certificates, Inventory creditors and other Merchant-issued credits, provided, that [GBRP] shall not accept such items following such date." *See* (Doc. No. 1437, pg. 170 of 186).

12. Further, the GBRP Sale Motion and related asset purchase agreement do not provide a list of executory contracts to be assumed or rejected, but rather provides that GBRP will have until March 31, 2025 to make this decision. *See* (Doc. No. 1437). Accordingly, at this time, Movant does not know whether its contracts with the Debtors will be assumed or rejected.

**Agreement And Breach Thereof** [6]

13. Movant markets, sells, and administers service contracts called Protection Plans ("Protection Plans") that provide extended warranty coverage for various consumer goods – such as furniture, electronics and appliances. These Protection Plans are sold direct to consumers and through large retailers such as Big Lots. (Poole Decl. para. 3).

14. On or around July 8, 2021, Movant and Big Lots Stores, LLC[7] and certain of the other Debtors entered into that certain "*SquareTrade, Inc. Retailer Agreement*" (as amended, the

---

[5] https://cases.ra.kroll.com/biglots/Home-Index.
[6] The Declaration of Matthew Poole in support of this Motion is being filed concurrently herewith.
[7] Big Lots Stores, LLC was formerly known as Big Lots Stores, Inc.

"Agreement"). The Agreement provides, among other things, that either of the parties may terminate the Agreement if the other party breaches the Agreement and that breach is not cured within thirty (30) days following written notice thereof. (Agreement, § 6.d). The Agreement also includes a confidentiality provision, and will be filed with the Court under seal if necessary. (Poole Decl. para. 4).

15. After the Petition Date, the Debtors continued to sell and benefit from the sale of Movant's Protection Plans to their customers for certain products purchased through the Debtors' "brick and mortar" stores and website. (Poole Decl. para. 5).

16. Among other things, the Agreement provides that: (1) the Debtors shall pay to Movant the wholesale cost (the "Wholesale Cost") for each Protection Plan that is sold to the Debtors' customers ("Customers"); (2) Movant will handle all claims by the repair or replacement of the covered product, or by the issuance of a retailed branded electronic gift card or check; and (3) the Debtors shall sell to Movant the retail branded electronic gift cards at an agreed-upon discount (the "Discounted Gift Cards"). (Poole Decl. para. 6).

17. The Debtors have breached, and continues to breach the Agreement for several reasons. (Poole Decl. para. 7).

18. *First*, the Debtors have failed to pay Movant for Protection Plans sold post-petition, including several post-petition invoices (the "Invoices")[8] totaling **$522,952.38**:

- (1) the October 2024 invoice in the amount of $158,705.10;
- (2) the November 2024 invoice in the amount of $239,486.58; and
- (3) the December 2024 invoice in the amount of $124,760.70.[9]

There may be future amounts that are due and owing to Movant from the post-petition sale of other Protection Plans. (Poole Decl. para. 8).

19. *Second*, the Debtors have continued to sell Protection Plans administered by

---

[8] True and correct copies of the Invoices are attached collectively as **Exhibit "B"** hereto.
[9] The amounts due to Movant under the October 2024, November 2024 and December 2024 invoices (the "Invoices") constitute the aggregate amount of the "Wholesale Cost" due to Movant from the Debtors sale of Protection Plans to their Customers (the "Wholesale Costs") during the relevant periods.

4

Movant in their stores and website post-petition, despite not paying the Invoices and the Wholesale Costs of these plans to Movant. Although it appears that the Debtors may have ceased selling Protection Plans in certain of their stores and/or website in December 2024, they have failed to confirm to Movant whether these plans are still being sold. In fact, the Debtors have failed to respond to an email dated December 23, 2024 from counsel to the Movant requesting that they cease selling the Protection Plans (the "December Email"). (Karasik Decl. para. 3). A true and correct copy of the December Email is attached as **Exhibit "C"** hereto.

20. *Third*, the Debtors have acknowledged in the GBRP Sale Motion that it is, or will soon be unable to perform its obligations to provide and honor Discounted Gift Cards pursuant to the terms of the Agreement. Specifically – given the Debtors' stated inability to close the Nexus Sale, and their intention of completing going out of business sales for all of their stores and to stop honoring gift cards shortly following the initial closing date for the GBRP sale[10] – it appears that the Debtors and GBRP will decline to honor the Discounted Gift Cards purchased by Movant and given to certain customers that have purchased Protection Plans (the "Customers") shortly after the initial closing of the GBRP Sale. This will result in Movant having to honor qualifying Customers' claims with alternative forms of payment. (Poole Decl. para. 10).

21. *Fourth*, if the Debtors elect not to continue their gift card program, they will no longer be able to sell Discounted Gift Cards to the Movant in the future, as contemplated by the terms of the Agreement. (Poole Decl. para. 11).

22. As a result, the Debtors are currently in breach of, and cannot comply with their obligations under the Agreement. The Movant is not only prejudiced financially by the Debtors' inability to pay the Invoices; more importantly, the Debtors failure to confirm that it has ceased, or stipulate that it will cease selling Protection Plans will result in the Movant being in the untenable position of having to service Protection Plans sold by the Debtors in the future that Movant will not be paid for. Importantly, this is not like an ordinary debtor-vendor relationship where a vendor can decide to stop shipping goods upon non-payment because, especially with the

---

[10] *See* https://cases.ra.kroll.com/biglots/Home-Index; (Doc. No. 1437, pg. 170 of 186).

automatic stay in place, the Debtors are in control of whether to continue or stop selling the Protection Plans at their stores or website. (Poole Decl. para. 12).

## RELIEF REQUESTED AND RESERVATION OF RIGHTS

23. As described above, the Debtors' failure to seek assumption or rejection of the Agreement – and confirm whether they have ceased selling the Protection Plans – subjects Movant to unreasonable and growing risk (*i.e.*, in addition to non-payment of the Invoices, Movant is forced to service any Protection Plans sold in the future). This risk is compounded by the automatic stay which deprives Movant of its contractual remedies.

24. Given the significant and ongoing prejudice to Movant caused by the Debtors, the Court should compel the Debtors to immediately decide whether they want to assume or reject the Agreement pursuant to Section 365(d)(2) of the Bankruptcy Code.

25. In the alternative to the foregoing relief, Movant respectfully requests entry of an order granting relief from stay pursuant to Section 362(d)(1) of the Bankruptcy Code and Fed. R. Bankr. P. 4001(a)(1) and (3) to enable Movant to exercise its contractual termination rights under the Agreement, with such relief to be effective immediately.

26. Although the Debtors are in default of the Agreement, Movant may be amenable to the assumption and assignment of the Agreement to GBRP if: (1) any monetary defaults under the Agreement are promptly cured; and (2) GBRP provides it with adequate assurance of future performance.

## BASIS FOR RELIEF REQUESTED

### Debtors Should Be Compelled To Assume Or Reject The Agreement Immediately

27. Section 365 of the Bankruptcy Code provides that a debtor generally has up until "any time before the confirmation of a plan" to decide whether to assume or reject an executory contract or unexpired lease. 11 U.S.C. § 365(d)(2). However, upon the request from a contract counterparty, the court "may order the [debtor] to determine within a specified period of time whether to assume or reject such contract." *Id. See also* 11 U.S.C. § 105(d)(2)(A) ("The court . . . may issue an order . . . set[ting] the date by which the [debtor] must assume or reject an executory

6

contract or unexpired lease."). The "determination of what is a reasonable time is within the bankruptcy court's discretion 'in light of the circumstances of each case[.]'" *In re Enron Corporation*, 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002). The court may consider several factors including:

> "1) the damage the non-debtor will suffer beyond the compensation available under the Bankruptcy Code;
>
> 2) the importance of the contract to the debtor's business and reorganization;
>
> 3) whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan; and
>
> 4) whether exclusivity has terminated."

*Id*.

28.     Here, the relevant factors weigh in favor of compelling immediate assumption or rejection of the Agreement.

29.     ***First,*** absent a timely decision by the Debtors to assume or reject the Agreement, Movant will sustain injuries that are "beyond the compensation available [under] the Bankruptcy Code." *See id*. This is because, among other reasons, the Debtors are in control over whether the Protection Plans will be sold in their stores and website, and Movant is unable to prohibit the Debtors from selling these plans. As a result, Movant will be forced to service new Protection Plans purchased by Customers pending the Debtors' decision to assume or reject the Agreement (which could be delayed until March 31, 2025 pursuant to the Sale Motion) without being paid the Wholesale Costs of these plans. Moreover, if the Debtors decide not to continue with their gift card program, Movant is forced to service these Protection Plans without the ability to purchase Discounted Gift Cards from the Debtors as contemplated under the Agreement.

30.     ***Second***, while the Debtors requested that the Agreement be assumed and assigned to Nexus, no decision has yet been made on assumption or rejection of the Agreement to GBRP. In fact, the Debtors have sold substantially all of their assets to GBRP so the Agreement cannot be important to the Debtors' business and prospects for reorganization. Further, the Debtors and

GBRP have agreed that the Discounted Gift Cards will not be honored at the going out of business sales after the 14 day period following the initial closing of the GBRP sale (the "Initial 14 Day Period"). The Debtors have breached the Agreement post-petition by failing to pay the Wholesale Costs of the Protection Plans as required by the Agreement since October 2024, which amount totals $522,952.38 as of the filing of this Motion. Given these actions by GBRP and the Debtors, it is clear that the Agreement is not important to GBRP or the Debtors.

31.     *Third*, the Debtors have had sufficient time to apprise its financial situation, and to determine whether to assume or reject the Agreement. Specifically, the Debtors' filed the bankruptcy cases with the goal of quickly closing the quick sale to Nexus, which contemplated the assumption and assignment of the Agreement. However, the Nexus sale will not be consummated. The Debtors quickly obtained approval of the sale to GBRP which provides for store closing sales at what appears to be all stores. GBRP will not honor the Discounted Gift Cards during the sales and have not agreed to pay the Wholesale Costs of the Protection Plans. It would be patently unfair to require the Movant to incur the expense and obligations under the Agreement while GBRP decides whether the Agreement will be assumed or rejected (which could be as late as March 31, 2025). The burden to the Movant is significant as the Debtors have not agreed to cease selling Protection Plans, and have not paid to Movant the Wholesale Costs of the Protection Plans sold from October 2024 and onward (which at present total $522,952.38), and will no longer honor the Discounted Gift Cards.

32.     *Fourth*, although the exclusive periods for the Debtors to file a Chapter 11 plan have not lapsed, the Debtors have effected their reorganization through the sale to GBRP and are conducting store closing sales at all locations at which the Discounted Gift Cards will not be honored after the Initial 14 Day Period, and there is no agreement that the Wholesale Costs of the Protection Plans will be paid. Given the circumstances of these cases, including the Debtors' administrative insolvency, the Debtors have had sufficient time (*i.e.*, three months) to evaluate their options, including whether to assume or reject the Agreement.

33.     All of the relevant factors and the balance of equities weigh in favor of compelling

the Debtors to immediately assume or reject the Agreement. It is inequitable to allow the Debtors to escape their contractual obligations at the expense of the Movants. If Debtors wish to continue receiving the benefits of the Agreement, then they must assume the Agreement, cure all defaults, and provide adequate assurance of future performance thereunder. On the other hand, if it determines that the Agreement is too burdensome, it should seek to reject it. In any event, the Debtors should be compelled to act swiftly, so that Movant is not further prejudiced. This is unlike an ordinary debtor-vendor relationship where a vendor can decide to stop shipping goods upon non-payment because it is the Debtors who control whether to continue or stop selling the Protection Plans at their stores or website.

34. Accordingly, the Court should compel the Debtors to make an immediate decision as to whether it will assume or reject the Agreement.

**In The Alternative, Movants Must Be Granted Stay Relief To Exercise All Rights Under The Contract**

35. If the Court is disinclined to order immediate assumption or rejection of the Agreement, Movant respectfully requests relief from the automatic stay to exercise its rights under the Agreement and applicable law including, but not limited to, termination of the Agreement. The Agreement provides, among other things, that either of the parties may terminate the Agreement if the other party breaches the Agreement and that breach is not cured within thirty (30) days following written notice thereof. (Agreement, § 6.d).

36. Bankruptcy Code Section 362(d) provides that "the court shall grant relief from the [automatic] stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . for cause, including the lack of adequate protection." 11 U.S.C. § 362(d)(1). Here, the automatic stay must be terminated for "cause." In a situation where there is not a pending dispute, courts balance the hardship to the estate if the stay is lifted against the hardship to movant if stay relief is denied. *See e.g.*, *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).

37. Here, as described more fully in paragraphs 28 to 32 *supra* which is incorporated

9

herein by this reference for the sake of brevity, the Debtors would be substantially prejudiced from the continued imposition of the stay because it would be forced to service Protection Plans sold by the Debtors post-petition – without the Debtors paying the Wholesale Costs of such plans, and while the Debtors are unable to perform their obligations under the Agreement. In addition, the Discounted Gift Cards will no longer be honored after the Initial 14 Day Period, forcing Movant to pay warranty claims with alternative sources of payment. The Debtors have had adequate time to determine whether the Agreement is necessary for its reorganization, and there would be minimal injury to the estate from stay relief given that the Debtors are currently unable to perform under the terms of the Agreement. The Court should grant stay relief "for cause" pursuant to Section 362(d)(1) to allow Movant to exercise its rights under the Agreement and applicable law.

38.     Moreover, because delaying the effective date of any stay relief order would harm Movant substantially more than it would help the Debtors (who do not have the ability to perform under the Agreement in any event), the Movant respectfully submits that a waiver of the 14-day stay pursuant to Federal Rule of Bankruptcy Proceeding 4001(a)(3) is appropriate under the circumstances.

## CONCLUSION

**WHEREFORE**, Movant respectfully requests that this Court enter an order:

1. Granting this Motion in its entirety;
2. Compelling the Debtors to immediately decide whether they will assume or reject the Agreement within three (3) calendar days of the Court's entry of an order granting the Motion;
3. If the Debtors decide to assume the Agreement, requiring (i) prompt cure of all defaults thereunder and (ii) adequate assurance of future performance acceptable to Movant;
4. In the alternative, granting Movant relief from the automatic stay under Section 362(d)(1) for cause to enforce all contractual rights under the Agreement, including termination of the Agreement on 30-days notice to the Debtors, and waiving the 14-day stay under Fed. R. Bankr. P. 4001(a)(3); and

5. Granting such other relief the Court deems just and proper.

Dated: January 7, 2025
      Wilmington, Delaware

**POLSINELLI PC**

*/s/ Michael V. DiPietro*
Christopher A. Ward (Del. Bar No. 3877)
Michael V. DiPietro (Del. Bar No. 6781)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
cward@polsinelli.com; mdipietro@polsinelli.com

-and-

**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK LLP**
Eve H. Karasik
Jeffrey S. Kwong
2818 La Cienega Avenue
Los Angeles, CA 90034
Telephone: (310) 229-1234
EHK@LNBYG.COM; JSK@LNBYG.COM

*Counsel for SquareTrade, Inc.*