# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.* | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
|  | **Objection Deadline** <br> **January 14, 2025, at 4:00 p.m. (ET)** |
|  | **Hearing Date** <br> **January 21, 2025, at 1:00 p.m. (ET)** |

## MOTION OF HIGHLAND AND STERLING, LLC AND BIG HOLDINGS 2, LLC TO (A) COMPEL IMMEDIATE REJECTION OF LEASE AND SURRENDER POSSESSION OF THE PREMISES PURSUANT TO 11 U.S.C. § 365 OR, ALTERNATIVELY, (B) GRANT LANDLORD RELIEF FROM STAY PURSUANT TO 11 U.S.C. § 362(d); AND (C) FOR RELATED RELIEF

Highland and Sterling, LLC and Big Holdings 2, LLC (collectively, the "Landlord"), by and through its undersigned counsel, hereby moves (the "Motion") for entry of an order (a) compelling BLBO Tenant, LLC (the "Debtor," together with its affiliates, the "Debtors") to (a) immediately reject the Lease (as defined below) and surrender the Premises (as defined below) to the Landlord, pursuant to sections 365 of title 11 of the United States Code (the "Bankruptcy Code"), or, alternatively, (b) granting Landlord relief from stay pursuant to section 362(d) of the Bankruptcy Code, together with certain related relief.  In support of this Motion, Landlord respectfully represents as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

## PRELIMINARY STATEMENT

1.      "Do no further harm." That was the message sent from this Court over the last few weeks following the failure of the Nexus sale, and which has necessitated this Motion. The Lease subject to this Motion is for a store that the Debtors have now closed, following the conclusion of their store closing sales at the end of December, 2024. The Lease also is not one of the assets that transferred to Gordon Brothers Retail Partners as part of the Debtors' recent sale of substantially all of their assets pursuant to the alternative liquidation transaction this Court approved on January 2, 2025 after the Nexus sale failed to close. Nor was it ever a go-forward Lease subject to the now defunct Nexus sale or subject to any formal lease auction sale process. Instead, the Debtors agreed, in their business judgment, to accept a termination bid from the Landlord for this Lease which provided substantial value to these estates, including for the Debtors to remain in the Premises rent free post-petition through December 31, 2024 and a waiver of both pre- and post-petition rent defaults, so that the Debtors could conclude their store closing sales at which time the Debtors were to surrender the Premises to the Landlord and the Lease was to be terminated. However, instead of closing on the Landlord's bid for the Lease, the Debtors breached their agreement with the Landlord in favor of more time to explore a potential alternative Lease bid, which is still nothing more than a *potential indication of interest* in the Lease received from a last minute third-party as no formal bid or offer was ever made in advance of the Debtors' unfortunate pivot to a liquidation. Time has now run out and the Debtors are without any funds to meet their post-petition obligations under the Lease. Instead, the Premises are now dark, and the Landlord is being forced to subsidize the Debtors' estates through their continued defaults, to the prejudice and detriment of the Landlord. This is not the result intended by the Bankruptcy Code, and the equities weigh in

favor of the Landlord.  Accordingly, this Court should grant the Landlord's Motion and compel the immediate rejection of the Lease and surrender of the Premises to the Landlord.

### JURISDICTION

2.        This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

3.        Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Landlord consents to the entry of a final order or judgment with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot entry final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.        This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.        The statutory and legal predicates for the relief requested herein are sections 362(d), 365 and 554 of the Bankruptcy Code.

### BACKGROUND

1.        On September 9, 2024 (the "Petition Date"), each of the above-captioned Debtors filed for voluntary relief under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

2.        On September 23, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code (D.I. 248).

6.      Landlord is the owner of a shopping center in which the Debtor operates a retail store (Store No. 4126, hereinafter, the "Store") pursuant to that certain unexpired nonresidential real property lease dated August 25, 2023 (as may have been amended from time to time, the "Lease") for the premises located at 1410 East Plaza Boulevard, National City, California 91950 (the "Premises").  *See Declaration of Robert Hanasab* filed contemporaneously herewith in support of this Motion and attached hereto and incorporated by reference herein as **Exhibit 1** (the "Hanasab Declaration"), ¶¶ 3, 8.  A true and correct copy of the Lease is attached as **Exhibit A** to the Hanasab Declaration.  To date, the Lease has not been assumed or rejected by the Debtors and remains in full force and effect. *Id.* at ¶ 8.

7.      The Premises is located in a shopping center, as that term is used in 11 U.S.C. § 365(b)(3).  *See In Re: Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

8.      Pursuant to the terms of the Lease, the Debtors are responsible for various charges related to the Premises, including, but not limited to, minimum monthly rent ("Base Rent") (Lease, §§ 1.A & 5),[2] and certain additional Rent, including Real Estate Taxes (Lease, § 7.A.), Utility Charges (Lease § 9.A), and such other costs, expenses, including Landlord's expenses, which include the reimbursement of Landlords' property and casualty insurance premiums on the Building (the "CAM and Insurance") (Lease §§ 5.C., 6 & 9.C, responsibilities and obligations of every kind and nature, including all repair and maintenance obligations as more fully set forth in Section 10 of the Lease (the "Repair Obligations") (Lease § 10), with respect to the entire Premises, that accrue and become due under the Lease in accordance with the terms of the Lease. Hanasab Declaration, ¶ 9.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Lease.

9.      More specifically, Base Rent is to be paid on a quarterly basis, in advance on the first calendar day of each subsequent three-month period. *See* Lease § 5.A.  Further, Debtor is to promptly pay its Real Property Taxes when due directly to the applicable taxing authority and promptly furnish to Landlord copies of official receipts or other satisfactory proof evidencing such payments.  *See* Lease § 7.A, Hanasab Declaration, ¶ 10.

10.      As of the Petition Date, the Debtor was in default of their payment obligations under the Lease in the total amount of $268,215.55 (the "Prepetition Defaults"), including, among other things, for non-payment of (i) the quarterly Base Rent due on September 1, 2024 in the amount of $84,804.03, (ii) certain CAM and Insurance billings for the first, second and third quarters of 2024 totaling $154,216.52, and (ii) certain Repair Obligations in the estimated amount of $29,195.00. A true and copy of the Landlords' accounting of the Tenant's Prepetition Defaults, together with certain post-petition defaults is attached to the Hanasab Declaration is as **Exhibit B.**  Hanasab Declaration, ¶ 11.

11.      On October 4, 2024, pursuant to this Court's order authorizing the Debtors to, among other things, conduct store closing sales (D.I. 134), the Debtors filed the *Third Notice of Filing of List of Additional Closing Stores Pursuant to the Interim Order (I) Authorizing Debtors to Assume the Consulting Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* (the "Third Store Closing Notice") (D.I. 424), pursuant to which the Debtors' scheduled the Store for closing and notified the Landlord that they would be commencing immediate store closing sales at the Premises. Hanasab Declaration, ¶ 13.

12.      Thereafter, on or about October 7, 2024, the Debtor's real estate consultant, A&G Realty Partners, LLC ("A&G") commenced marketing the Lease and listed the Lease for sale in certain marketing materials distributed to potential buyers in connection with the auction process

established by the Debtors for the sale of the Debtors' leased assets pursuant to that certain *Motion of Debtors for Entry of Interim and Final Orders (I) Establishing Procedures to Sell Certain Leases, (II) Approving The Sale of Certain Leases, and (III) Granting Related Relief* (the "Lease Sale Motion").    Hanasab Declaration, ¶ 14, 10-7-24 A&G flyer, attached to the Hanasab Declaration as **Exhibit C**.    Pursuant to A&G's auction flyer, the Lease was to be the subject of a "6th Wave" lease auction, with the bid deadline set as "TBD".    *Id.*

13.    On October 11, 2024, Landlord submitted an unsolicited termination bid to regain control of its Lease (the "Bid") to A&G, pursuant to the terms of the proposed lease termination agreement attached to its Bid (the "LTA", together with the Bid, the "Offer").    Hanasab Declaration, ¶ 15, October 11, 2024 e-mail from M. Maciejewski to E. Amendola and attachments thereto attached as **Exhibit D** to the Hanasab Declaration.    At the time, the Lease was not (and has never been), the subject of any approved bidding procedures entered in connection with the Lease Sale Motion or noticed for auction and, therefore, the Offer as submitted by the Landlord is not (and should not be considered) a binding offer pursuant to any lease sale procedures approved by the Court in these cases, and is subject to withdrawal at the discretion of the Landlord at any time.

14.    On or about October 15, 2024, Landlord revised the Offer to allow the Debtors' to stay in the Premises and conclude its store closing sales rent free through no later than December 31, 2024, at which time the Debtors' were to surrender the Premises and the Lease would terminate pursuant to the terms of the LTA.    The Offer was also revised to include a waiver of all pre- and post-petition rents due under the Lease through and including December 31, 2024, among other consideration.    Hanasab Declaration, ¶ 16, October 15, 2024 e-mail from M. Maciejewski to E. Amendola and attachments thereto attached as **Exhibit E** to the Hanasab Declaration.

15.    On October 16, 2024, the Debtors filed that certain *Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount* (D.I. 511) the "Cure Notice"), in connection with the proposed sale of substantially all of the Debtors' assets to Gateway BL Acquisition, LLC (the "Nexus Sale"), an affiliate of Nexus Capital Management, LP ("Nexus"), which attached a schedule listing all potential executory contracts and/or unexpired leases that may be assumed and assigned to Nexus in connection with the Nexus Sale, which upon information and belief, included all of the Debtors' not yet closed or rejected unexpired leases in the cases at the time of the filing of the Cure Notice, including the Lease.

16.    Notwithstanding, the Landlord and the Debtors (through their real estate consultant A&G) continued to be engaged in discussions regarding the Offer, as revised, and on November 21, 2024, the Landlord submitted final executed forms of the Landlord's Offer, as revised, to A&G, which Offer was accepted by the Debtors on or about November 26, 2024.  Hanasab Declaration, ¶ 16. *See also* November 21, 2024 e-mail from L. Heilman to E. Amendola and attachments thereto and November 27, 2024 email from A. Amendola to L. Heilman, attached hereto as **Exhibits 2 and 3**.  Upon acceptance, the Lease was removed from any further sale process pursuant to the parties' agreement and the terms of the LTA.  *See Id*.

17.    Prior to the Debtors' acceptance of the Offer, on November 18, 2024, the Debtors shared with Landlord's counsel a list of the leases expected to be part of the December 2024 wave of lease sales, which included the Lease (the "December Lease Auction Locations").  *See* 11/18/24 email and related attachments from J. Goldberger to L. Heilman, attached hereto as **Exhibit 4.** The next day, on November 19, 2024, counsel for the Debtors also confirmed that none of the December Lease Auction Locations were to be assumed and assigned as part of the Nexus Sale. *See* 11/19/24 e-mail from J. Goldberger to L. Heilman, attached hereto as **Exhibit 5**.

18.     On November 27, 2024, the Debtors filed the *Fourth Notice of (A) Bid Deadline, (B) Sale Hearing, and (C) Potential Assumption and Assignment of Certain Unexpired Leases* (D.I. 1236),  pursuant to which the Debtors publicly noticed the December Lease Auction Locations for sale (the "December Lease Auction Notice") pursuant to their December auction lease process approved by the Court's Order entered on November 20, 2024 (D.I. 1198), which December Lease Auction Notice excluded the Lease pursuant to the terms of the LTA and the accepted Offer.  *See* D.I. 1236.

19.     Notwithstanding the exclusion of the Lease from the December Lease Auction Notice, Landlord's counsel learned for the first time during the auction held on December 4, 2024, that the Debtors' received a bid for the Lease from a potential third-party bidder, which bid was not qualified by the Debtors or acted upon at the auction.  Following the auction, however, the Landlord, through its counsel, was notified that the potential third-party bidder was still interested in the Lease and the Debtors were going to notice the Lease for an auction, in breach of the parties' agreement and notwithstanding the Debtors' prior acceptance of the Landlord's Offer and the terms of the LTA.  Upon information and belief, no formal offer has ever been submitted by this potentially interested third-party bidder, the Lease has never been noticed for auction, and the Landlord's Offer remains the best and only offer for the Lease.

20.     In addition to the Prepetition Defaults, the Debtors are delinquent in the payment of certain lease obligations post-petition in the total amount of $184,744.75 (the "Post-Petition Defaults", and together with the Prepetition Defaults, the "Rent Defaults"), including for the quarterly Base Rent in the amount of $84,804.03 due and unpaid on December 1, 2024, the CAM and Insurance due for fourth quarter 2024 in the estimated amount of $64,951.14, and 2024 Real

Estate Taxes in the amount of $37,989.58 that were due to be paid in November, 2024 and were not paid by the Debtors.  *See* Hanasab Declaration, ¶ 12 and Exhibit B thereto.

21.     As a result of these Post-Petition Defaults, the Landlord issued a notice of default and demand for payment to the Debtors on December 13, 2024.  Hanasab Declaration, ¶ 18 and **Exhibit F** thereto.  The Debtors have not cured the Post-Petition Defaults, and these sums remain outstanding.  Hanasab Declaration, ¶ 18.  Nor have they honored their agreement to consummate their acceptance of the Offer and surrender the Premises to the Landlord on or before December 31, 2024 in accordance with the terms of the LTA.  *Id.* 19.  Notwithstanding, Landlord understands that the Store is now closed and dark (confirmed with an adjacent tenant to Premises), having closed sometime in the last week of December, 2024 following the Debtors' conclusion of their store closing sales, and the phone lines have been disconnected. *Id.* at 20.

22.     In anticipation of a closing on the Nexus Sale, and the designation rights period contemplated thereby, on December 13, 2024, the Debtors filed a motion seeking to extend the deadline by which they must assume or reject their unexpired leases of nonresidential real property, including the Lease, for another 90 days, from January 7, 2025 up to and including April 7, 2025 (D.I. 1351) (the "Extension Motion").

23.     Thereafter, on December 19, 2024, following a status conference held on the same date, at which time the Debtors informed the Court and other interested parties that they did not expect the Nexus Sale to close and would be commencing going out of business sales at all remaining store locations to protect the value of their estates, the Debtors filed the *Seventh Notice of Filings of List of Additional Closing Stores Pursuant to the Final Order (I) Authorizing Debtors to Assume the Consulting Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* (D.I. 1397) (the "7th Closing Notice"), which 7th

Closing Notice noticed the commencement of store closing sales for all of the Debtors' Stores that had not previously been listed on any prior closing notices and, upon information and belief, are the Stores that were previously the subject of the now defunct Nexus Sale. Importantly, and consistent with the Debtors' prior confirmation that none of the December Lease Auction Locations were included in the Nexus Sale, the Lease was not included among the Stores scheduled pursuant to the 7th Closing Notice. *See* Exhibit 5.

24.    On December 27, 2024, following the Debtors' announcement that it would be pivoting to a liquidation due to the failure of the Nexus Sale to close, the Debtors filed a motion seeking this Court's approval of an alternative transaction (the "GBRP Sale") with Gordon Brothers Retail Partners, LLC ("GBRP"), where GBRP would, *inter alia*, purchase substantially all of the Debtors' remaining assets, including designation rights to the Debtors' stores subject to the 7th Closing Notice (the "GBRP Designated Store Leases" , and pay all anticipated go-forward administrative expenses for such GBRP Designated Leases (but not any past unpaid administrative expenses other than the stub rent arising under the Debtors' leases from the Petition Date through the end of September 30, 2024 (the "Stub Rent") that remains unpaid pursuant to the terms of the DIP Order), among other expenses, all in accordance with the Agency Agreement and two budgets through the week ending March 3, 2024, necessary for the Debtors to conclude the store closing sales process for the GBRP Designated Store Leases (the "GBRP Budgeted Amounts"). Upon information and belief, the Lease is not among the GBRP Designated Store Leases and no administrative expenses due the Landlord have been budgeted to be paid in connection with the go-forward store closing process and GBRP Sale.[3] Upon further belief, and as evidenced by the

---

[3] Counsel for the Landlord sent repeated communications to the Debtors before, during and after the hearings on the GBRP Sale, to obtain confirmation that the Lease was not subject to the GBRP Sale. The Landlord never received a clear answer, although during in-court discussions with GBRP's counsel, Landlord's counsel was

extensive record made at the hearings held on the GBRP Motion, the Debtors' estates are woefully administratively insolvent and the Debtors do not have sufficient funds to pay any of their unpaid administrative expenses that accrued and were unpaid as of December 31, 2024, including the Post-Petition Defaults due to the Landlord.

25.     On January 2, 2024, after two-days of contested hearings, the Court approved the GBRP Sale.  *See* D.I. 1556.  Further, that same date, Court entered a bridge order on the Extension Motion extending the Debtors' time to assume or reject unexpired leases from January 7, 2025, through and including January 21, 2025, so that the Extension Motion may be heard on January 21, 2025, with all parties' rights to object to the Extension Motion preserved.  *See* D.I. 1551.

26.     In short, to summarize the above facts, the Debtors have concluded their store closing sales at the Premises and the Store is presently dark.  The Debtors have not rejected the Lease, and do not have any funds to any go-forward administrative expenses accruing under the Lease, let alone the Post-Petition Defaults.  Nor is the Lease part of the GBRP Sale.  Yet the Debtors continue to hold out on consummating the Offer for the Lease with the Landlord in the hope that a mere expression of potential interest might mature into an offer that may potentially be maximized through a further auction process, a process in which they do not have sufficient funds to run.

27.     Further, upon information and belief, given the fact that the Store is now closed and the utilities have disconnected, the Landlord is concerned that the Debtors may no longer be (or may not have the funds to continue) maintaining insurance for the Premises as required by the Lease.  The Debtors lack the ability to cure the monetary defaults under the Lease, which is a

---

informed by Mr. Fox that he didn't believe the Lease was part of the designation rights leases in connection with the sale.  *See* 1-2-25 email chain from J. Goldberger to L. Roglen, attached hereto as **Exhibit 6**.

prerequisite to the Debtors assuming the Lease, and the Premises are at risk of vandalism in absence of a new tenant or proper security to the significant harm of the Landlord. Landlord should not be prejudiced or forced to incur this type of liability or exposure for a location that the Debtors, in their business judgement, had previously determined to close and found value in pursuing a termination with the Landlord. Nor is the Lease part of the GBRP Sale. Neither the Bankruptcy Code, nor any applicable case law support such a proposition. As such, time is of the essence to avoid any further harm and prejudice to the Landlord as well as to the Debtors' estates.

### **RELIEF REQUESTED**

28.    Landlord respectfully requests that the Court enter an order that compels the Debtors to immediately reject the Lease and surrender the Premises to the Landlord, pursuant to sections 365 of Bankruptcy Code. In order to fully obtain possession of the Premises, Landlord also requests that any rejection and surrender, include an order compelling Debtors to remove or abandon any interest in the Debtors' personal property remaining at the Premises, or grant Landlord stay relief to dispose of any such remaining personal property as of the surrender date free and clear of any interest of the Debtors or any consenting third parties. Alternatively, Landlord requests that the Court enter an order lifting the stay for all purposes with respect to the Lease and the Premises so that Landlord may pursue its state law rights and remedies to remove the Debtors from the Premises and terminate the Lease.

29.    In support of this Motion, the Landlord relies upon and incorporates by reference the Hanasab Declaration, filed herewith and attached hereto as **Exhibit 1** to the Motion.

## BASIS FOR RELIEF REQUESTED

**A. Immediate Rejection of the Lease is Warranted, Since the Debtors Have Not, and Cannot Pay the Post-Petition Rent as Required by Section 365(d)(3).**

30.     Section 365(d)(3) of the Bankruptcy Code requires the Debtors to "timely perform all the obligations . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected . . . ." 11 U.S.C. § 365(d)(3). Section 365 of the Bankruptcy Code is unequivocal: it says that a debtor "*shall*" timely perform. 11 U.S.C. § 365(d)(3) (emphasis added).  When obligations arise, including, but not limited to, payments that become due under a nonresidential real property lease during the post-petition period, the debtor is required to timely and fully comply with those obligations when they become due. *See In re Pudgie's Dev. of NY, Inc.,* 239 B.R. 688, 693 (S.D.N.Y. 1999) ("The plain meaning of § 365(d)(3) requires that the landlord obtain payment as lease obligations come due.").  Post-petition payments are due under Section 365(d)(3) "irrespective of whether payments required under the leases meet the usual requirement for administrative status, reasonableness and benefits to the estate, they are unconditionally due." *In re Wingspread Corp.*, 116 B.R. 915, 925 (S.D.N.Y. 1990); *In re Goody's Family Clothing, Inc.*, 401 B.R. 656, 663 (Bankr. D. Del. 2009) ("§ 365(d)(3) makes recovery of post-petition rent automatic, rather than requiring landlords to bring, and prove, a § 503(b)(1) administrative expense claim.")

31.     The effect of Section 365(d)(3) of the Bankruptcy Code is to require the immediate performance of post-petition obligations regardless of the solvency of an estate. *In re Montgomery Ward*, 268 F.3d 205, 209-211 (3d Cir. 2001) ("The clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms. To be consistent with this intent, any interpretation must look to the terms of the lease to determine both the nature of the 'obligation' and when it 'arises.'"); *In re Goody's Family Clothing, Inc.*, 401 B.R. at 663; *In re*

*Telesphere Communications, Inc.*, 148 B.R. 525, 530 (Bankr. N.D. Ill. 1992); *In re Rare Coin Galleries of America, Inc.*, 72 B.R. 415, 416 (D. Mass. 1987); *In re Brennick,* 178 B.R. 305, 307 (D. Mass. 1995). In short, lack of funds does not excuse lack of performance under an unexpired, non-rejected nonresidential real property lease.

32.     The Debtors have failed to comply with their post-petition payment obligations as they have come due under the Lease, and failed to make any post-petition payments to Landlord since the Petition Date. In addition, upon information and belief, there is no time in the foreseeable future in which the Debtors will be able to comply with the post-petition obligations that have and will become due under the Lease.

33.     Landlord fully comprehends the Debtors desire to run a value-maximizing sale process and solicit competing bids for its leased assets, but any sales process is not without administrative cost and the time to conduct that sales process is now passed. Further, any potential interest is not certain at best, and any expression of interest by the third party potential bidder is just that: *potential* interest. Only the Landlord has ever solidified such interest into a valid bid that was accepted by the Debtors. Pursuant to the terms of the Offer, Landlord allowed the Debtors to continue running store closing sales on the Premises to the benefit of the Debtors' estates. Further, Landlord offered to free the Debtors' estates of the burden to pay all pre- and post-petition rent obligations in return for termination of the Lease by December 31, 2024. The Debtors, however, stalled closing with Landlord in favor of a potential interested third-party to the detriment of both Landlord and the Debtors' estates, which have now pivoted to a liquidation with no immediate funding.

34.     Indeed, the Lease is not part of the GBRP Sale for the liquidation of the Debtors' assets and the Debtors are otherwise administratively insolvent. Thus, the Debtors have no

intention of paying and do not have the funds to pay the Post-Petition Defaults due under the Lease

and neither Nexus nor GBRP will be assuming that obligation.  Further, even assuming arguendo

that the Lease transferred to GBRP (which it did not), the Debtors have now sold substantially all

of their remaining assets to GBRP, so they no longer hav any assets to maximize any value for the

benefit of these estates and their creditors.  The only value would go to GBRP, a non-debtor.

Accordingly, immediate rejection of the Lease is warranted, since the Debtors have not, and cannot

pay the post-petition rent as required by Section 365(d)(3).

35.    Courts in the Third Circuit, and elsewhere, recognize that the counterparty to an

unexpired lease is entitled to request an order compelling rejection where, as here, the Debtors

have defaulted in their post-petition payments and/or there is "some manifest unfairness" in forcing

the non-debtor to wait while the debtor decides to assume or reject.  *See In re University Medical

Center*, 973 F.2d 1065, 1078 (3d Cir. 1992) (" Bankruptcy Code section 365(d)(2) enables a

creditor, at any time after a bankruptcy petition is filed, to move the court to compel the debtor's

assumption or rejection of an executory contract. Congress intended this provision to 'prevent

parties in contractual or lease relationships with the debtor from being left in doubt concerning

their status vis-a-vis the estate.'") (internal citation omitted); *In re Pac. Gas & Elec. Co.*, 2004

U.S. Dist. LEXIS 22023 (Bankr. D. Cal., 2004) (finding that a non-debtor party should seek relief

under section 365(d)(2) based on concerns of the debtor's financial viability to continue

performing); *In re Coast Trading Co. Inc.*, 26 B.R. 737, 741 (Bankr. D. Or. 1982) (non-debtor

party to an executory contract may not engage in post-petition withholding of performance, but

may only either seek relief from automatic stay or request the court to fix a time which the debtor

must assume or reject under section 365); s*ee also Zagata Fabricators, Inc. v. Superior Air Prods.*,

893 F.2d 624, 628 (3rd Cir. 1990) (granting relief from stay based on failure to pay post-petition

rent); *Skeen v. Denver Coca-Cola Bottling Co. (In re Feyline Presents, Inc.)*, 81 B.R. 623, 626

(Bankr. D. Colo. 1988); *C̲alet Hirsch & Ferell, Inc. v. Microvideo Learning Sys. (In re Microvideo*

*Learning Sys.)*, 254 B.R. 90, 93 (Bankr. S.D.N.Y.) (remedies available under section 365(d)(3)

include relief from the automatic stay).

36.    If the Court compels rejection of the Lease, the Debtors must "immediately

surrender [the] nonresidential real property to the lessor."  11 U.S.C. § 356(d)(4).

37.    Upon the Debtors' rejection of the Lease, the express language of the Bankruptcy

Code requires possession of the Premises to be returned to the lessor.  *See In re Scarborough-St.*

*James Corp.*, 554 B.R, 714, 719 (D. Del. 2016) (holding that the Bankruptcy Court correctly

determined that, when a lease is rejected pursuant to § 365(d)(4), immediate surrender of the leased

premises is required); *In re Tri-Glied, Ltd*., 179 B.R. 1014, 1023-24 (Bankr. E.D.N.Y. 1995)

(finding that Section 365(d)(4) mandates that when a lease is deemed rejected, the landlord is

entitled to an order compelling a debtor or trustee to immediately surrender possession of the

leased premises).

**B.  The Debtors Time to Reject or Assume the Lease Should Not Be Extended.**

38.    Section 365(d)(4) of the Bankruptcy Code provides a 120-day window, as well as

a discretionary 90-day extension of such window, for the assumption or rejection of an unexpired

nonresidential lease:

> (A) Subject to subparagraph (B), an unexpired lease of nonresidential real property
> under which the debtor is the lessee shall be deemed rejected, and the trustee shall
> immediately surrender that nonresidential real property to the lessor, if the trustee
> does not assume or reject the unexpired lease by the earlier of
>
> > (i) the date that is 120 days after the date of the order for relief; or
> >
> > (ii) the date of the entry of an order confirming a plan.
>
> (B)

(i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.

(ii) If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

39.     Thus, an unexpired lease of nonresidential real property under which a debtor is the lessee will be deemed automatically rejected if the debtor does not assume or reject such lease within the earlier of 120 days after its bankruptcy filing and plan confirmation.  However, a court may extend the above deadline for an additional 90 days on the motion of the debtor or the lessor for *cause*. 11 U.S.C. 365(d)(4)(B)(i) (emphasis added).

40.     Although the term "cause" as used in section 365(d)(4) is not defined in the Bankruptcy Code, the courts have identified the following factors, as enumerated in the Debtors' Extension Motion, as pertinent to the determination of cause:

   i. Whether the debtor was paying for the use of the property;

   ii. Whether the debtor's continued occupation beyond the compensation available to it under the Bankruptcy Code;

   iii. Whether the lease is the debtor's primary asset; and

   iv. The number of leases the debtor must evaluate.

*See S. St. Seaport L.P. v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755,760-61 (2d Cir. 1996); *see also In re Wedtech Corp.,* 72 B.R. 464, 471-72 (Bankr. S.D.N.Y. 1987); *Channel Home Centers Inc.*, 989 F.2d 682, 689 (3d Cir. 1993).

41.     As detailed above, the Debtors have not, and cannot, pay for the post-petition rent under the Lease.  Indeed, it was the Debtors that negotiated for a waiver of their obligation to pay the rent through December 31, 2024 to be included in the Offer, to continue and conclude their

store closing sale at the Premises.  In good faith, and in reliance on the Debtors' acceptance of the Offer, the Landlord agreed and allowed the Debtors to continue running their store closing sales on the Premises rent free until their completion in late December 2024.  The Debtors, however, failed to close on the Offer and terminate the lease on December 31, 2024 as agreed, leaving Landlord to bear the cost of the Debtors' administrative insolvency and at risk of not being able to control and secure its Premises to re-let to paying Tenant.

42.     Further, with the conclusion of the store closing sales at the Premises, there is no longer a need for the Debtors to continue to occupy the Premises and incur the administrative costs associated therewith.  In fact, upon information and belief, the Debtors have already vacated the Premises and disconnected the utilities.  Nor do the Debtors have any means to pay the go-forward administrative expenses under the Lease as it is not part of the GBRP Sale.  Thus, the Lease is not crucial to the GBRP Sale and the liquidation of the Debtors' remaining Store assets.

43.     As such, the Debtors cannot demonstrate that cause exists for the Court to extend the time within which the Debtors may assume or reject the Lease.

**C.  Upon    Rejection    Landlord    is    Entitled    to    an    Order    Compelling Surrender of the Premises Pursuant to 11 U.S.C. § 365(d) and Directing Debtors to Remove or Abandon any Interest in Personal Property Remaining at The Premises Pursuant to 11 U.S.C. § 554(b).**

44.     Given that there may be personal property belonging to the Debtors at the Premises, in order to effectuate a full surrender, any order should either require the Debtors to either remove or abandon any interest in any personal property remaining at the Premises.

45.     Section 554(b) of the Bankruptcy Code authorizes the court to order the Debtors to abandon any "property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(b).

46.     If personal property remaining at the Premises is valuable to the estate or not subject to abandonment by the Debtors, then prior to any rejection of the Lease, Debtors should be directed to immediately remove or cause such personal property to be removed from the Premises. Moreover, personal property not immediately removed by the Debtors should be deemed abandoned pursuant to section 554(b).

47.     Accordingly, should the Court compel the rejection of the Lease, the Debtors should be directed to remove or abandon any interest they may have in personal property remaining at the Premises prior to their surrender of the Premises to the Landlord.

**D.    In the alterative, Landlord Should Be Granted Stay Relief to Terminate the Lease and Dispose of Any Remaining Inventory and Property.**

48.     In addition to cause existing under section 365 of the Bankruptcy Code to compel the Debtors to reject the Lease and surrender the Premises, cause also exists under section 362(d) of the Bankruptcy Code to modify the stay and permit Landlord to exercise its rights and remedies under the Lease to remove the Debtors from the Premises and terminate the Lease.[4]

49.     Section 362(d) of the Bankruptcy Code provides, in relevant part, as follows:

> On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay --
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –

---

[4] To the extent necessary and out of an abundance of caution, Landlord hereby requests relief from the automatic stay pursuant to section 362 of the Bankruptcy Code so that it can provide the notice necessary to terminate the Lease and take all other action required by applicable non-bankruptcy law to remove the Debtors from the Premises based upon the ongoing events of default under the Lease.

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

50.     Landlord as the moving party has the initial burden of establishing that cause exists for relief from the automatic stay. *See In re Peregrine Systems, Inc.*, 314 B.R. 31, 48 (Bankr. D. Del. 2004) and 11 U.S.C. § 362(g)(1). Once Landlord establishes cause for relief from the stay, the burden of proof shifts to the Debtor on all other issues. *See JP Morgan Chase Bank v. Rocco (In re Rocco)*, 319 B.R. 411, 419 (Bankr. W.D. Pa. 2005) and 11 U.S.C. § 362(g)(1). It is within this Court's sound discretion as to whether the stay should be lifted for cause, and such a decision will only be reviewed for an abuse of discretion. *See In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86 (2d Cir. 2003).

51.     In similar circumstances (involving a debtor's obligation (and failure) to pay post-petition rent), Congress and the courts have determined that a landlord should receive the benefit of its bargain to compensate a landlord for being compelled by the Bankruptcy Code to continue providing a debtor with a critical service. *In re Travel 2000, Inc.,* 264 B.R. 444 (Bankr. W.D. Mich. 2001). In this case, Debtor's failure to pay its post-petition obligations under the Lease is depriving Landlord of the benefit of its bargain under the Amended Lease as well as the protections of the Bankruptcy Code. In this Circuit, it has been held that relief from stay is appropriate where (as here) a debtor fails to pay post-petition rent. *See also Zagata Fabricators, Inc.,* 893 F.2d at 628 (3d Cir. 1990) (relief from stay appropriate based on post-petition failure to pay rent).

52.     The Bankruptcy Code does not define "cause," however, courts have found "cause" existed to grant lessors relief from the automatic stay to pursue their rights under their leases and/or

applicable state law for non-payment of rent.  *See In re Scarborough-St. James Corp.*, 535 B.R. 60, 73 (Bankr. D. Del. 2015) (granting landlord relief from the automatic stay for "cause" under section 362(d) to permit lessor to prosecute eviction proceedings in pending in Michigan); *In re Seven Stars Restaurant, Inc.*, 122 B.R. 213, 218 (Bankr. S.D.N.Y. 1990) (granting landlord stay relief to pursue state court action for eviction); *see also In re The Inn at Longshore, Inc.*, 32 B.R. 942, 946 (Bankr. D. Conn. 1983) (granting relief from the automatic stay for "cause" under section 362(d) to permit lessor to commence and prosecute its rights under the subject lease); *In re Rocchio*, 125 B.R. 345 (Bankr. D.R.I. 1991) (determining that cause existed for lifting the automatic stay to allow a commercial landlord to proceed with a state court eviction based upon the debtor's failure to pay post-petition rent, together with a total absence of evidence that the debtor could cure a default, provide adequate protection, or give adequate assurance of future performance).

53.     The Debtors' failure to timely perform their post-petition obligations under the Lease, and the Debtors' inability to timely perform such obligations on a go-forward basis, constitute continuing events of default under the terms of the Lease, in direct violation of Section 365(d)(3) of the Bankruptcy Code.  Accordingly, cause exists to modify the stay to permit Landlord to terminate the Lease, compel the Debtors to surrender the Premises, and to the extent there is any remaining inventory and property of the estate remaining at the Premises, to dispose of such property, without further order of this Court and without notice or liability to the Debtors or any consenting third parties.

54.     In addition to there being "cause" for relief from the automatic stay, relief is also appropriate under section 362(d)(1).  Here, because the Debtors' vacation from the Premises, and/or to the extent the Lease was sold to GBRP as part of the GBRP Sale, the Debtor no longer

has an "equity" interest in the Lease.  *See In re Flexipak, Inc.,* 49 B.R. 641, 642-643 (S.D.N.Y. 1985) (stay relief granted because debtor not regarded as having any equity in leased premises). Moreover, there is no reasonable possibility of a successful reorganization in these cases within a reasonable time in light of the Debtors' substantial administrative insolvency.  Thus, Landlord would also be also entitled to relief under 11 U.S.C. § 362(d)(2).

### E.  Landlord Continues to Suffer Harm Pending Rejection of the Lease.

55.    Absent payment of post-petition rent and a rejection of the Lease, Landlord continues to suffer harm.  Landlord has an obligation to mitigate its damages, but cannot do so absent surrender of the Premises.  The continued harm caused to Landlord due to the Debtors' failure to reject the Lease and surrender possession when it intended to do so is exacerbated by the fact that the store is now sitting dark, subject to vandalism and other risks.  Additionally, upon information and belief, the utilities, including the phone lines, have been disconnected, which are crucial for the operation of the fire and alarm system at the Premises, to report fires and contact the fire/police department, in the event of a fire or unauthorized entry.  Moreover it is unclear if the Debtors are continuing to maintain insurance at the Premises, and the insurable interest in the Premises will not transfer to the Landlord until the Premises are surrendered.

56.    Debtors' refusal to reject and its inability to pay rent for the Premises, coupled with Landlord's inability to regain possession of the Premises and mitigate its losses, puts the Landlord at considerable risk with no recourse.  This is not the result intended by the Bankruptcy Code.  Nor should the Landlord be forced to subsidize the Debtors' Chapter 11 Cases (more than it already has).

**F. Landlord is Entitled to an Allowed Administrative Expense Claim for the Outstanding Post-Petition Rent Pursuant to 11 U.S.C. §§ 365(d)(3) & 503(b).**

57.    Finally, in addition to the language contained in section 365(d)(3) of the Bankruptcy Code, section 503(b) of the Bankruptcy Code mandates that a party shall have an allowed administrative expense claim for all actual, necessary costs and expenses of preserving a debtor's estate.  Given how the Premises have been used by the Debtors post-petition to conduct store closing sales for the benefit of themselves and their estates, all outstanding post-petition rent should be deemed an allowed administrative expense claim.

## CONFERENCE REQUIREMENT

58.    In accordance with Local Rule 4001-1(d), Landlord will confer with counsel for the Debtors with respect to the issues raised by this Motion in advance of any hearing thereon for the purpose of determining whether a consent judgment may be entered and/or for the purpose of stipulating to relevant facts.

## NO PRIOR REQUEST

59.    No prior request for the relief sought in this Motion has been made to this or any other Court.

## NOTICE

60.    Notice of this Motion is being provided to: (i) the Debtors; (ii) the U.S. Trustee; (iii) the Committee; (iv) Choate, Hall & Stewart LLP, as counsel to the DIP ABL Agent; (v) Otterbourg P.C., as counsel to the DIP Term Agent; (vi) counsel to GBRP; and (vii) electronically via CM/ECF on all parties that have filed a request for service of notices in this case.  In light of the relief requested, Landlord submits that no other or further notice is required.

**WHEREFORE**, Landlord respectfully requests that the Court enter an order that (i) compels Debtors to immediately reject the Lease, and surrender possession of the Premises to Landlord; (ii) directs the Debtors and any party with an interest in the personal property remaining at the Premises, to remove or abandon their interest in any remaining personal property on or before the surrender date; (iii) grants Landlord an allowed administrative expense claim pursuant to sections 365(d)(3) and 503(b) of the Bankruptcy Code in the amount of the outstanding Defaults; and (iv) grants such other and further relief as the Court deems just and proper.

<div style="margin-left:40%">

Respectfully submitted,

</div>

Dated:  January 7, 2025
Wilmington, Delaware

<div style="margin-left:40%">

/s/ Leslie C. Heilman
Leslie C. Heilman (DE No. 4716)
Laurel D. Roglen (DE No. 5759)
Margaret A. Vesper (DE No. 6995)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: heilmanl@ballardspahr.com
        roglenl@ballardspahr.com
        vesperm@ballardspahr.com

*Counsel for Landlord*

</div>