# EXHIBIT 2

# Heilman, Leslie C.

| | |
|---|---|
| **From:** | Heilman, Leslie C. <HeilmanL@ballardspahr.com> |
| **Sent:** | Thursday, November 21, 2024 11:25 AM |
| **To:** | Emilio Amendola |
| **Cc:** | Todd Eyler; Mike Matlat; notice.biglots@davispolk.com |
| **Subject:** | Big Lots - Robhana Landlord Bids for Store Nos. 4126, 4025, and 4118 |
| **Attachments:** | Big Lots - Bidder Form - Manchester Blvd.pdf; Big Lots - Bidder Form - Arcadia.pdf; Big Lots - Bidder Form - National City.pdf; Big Lots - LTA - National City.pdf; Big Lots - LTA - Arcadia.pdf; Big Lots - LTA - Manchester.pdf; Redline - BALLARD FORM - Big Lots LTA - 1410 Natl City - revised 11-20-24-414487579-v2 DMFIRM_414496271(1).PDF; Redline - BALLARD FORM Big Lots LTA -610 Las Tunas Arcadia - 11-20-2024-414492102-v2 DMFIRM_414496257(1).PDF; Redline - BALLARD FORM - Big Lots LTA - 3003 Manchester - 11-20-2024-414491884-v2 DMFIRM_414496183(1).PDF; Redline - OFFER AND QUALIFIED BIDDER FORM - 1410 Plaza Natl City- 10-15-2024-414491927-v1 to 11-20-24-414491927-v2 DMFIRM_414495759(1).PDF; Redline - Lease Termination Form - 1410 Natl City - filed 10-15-2024-414487579-v1 to 11-20-24-414487579-v2 DMFIRM_414495699(1).PDF; Redline - Lease Termination Form -610 Las Tunas Arcadia - 10-11-2024-414492102-v1 to 11-20-2024-414492102-v2 DMFIRM_414495659(1).PDF; Redline - OFFER AND QUALIFIED BIDDER FORM - Arcadia - filled 10-15-2024 to 11-20-2024-414491809-v2 DMFIRM_414495646(1).PDF; Redline - OFFER AND QUALIFIED BIDDER FORM - 3003 Manchester - 10-15-2024-414495113-v1 to 11-20-24-414495113-v2 DMFIRM_414495402(1).PDF; Redline - Lease Termination Form - 3003 Manchester - 10-11-2024 to 11-20-2024 DMFIRM_414495345(1).PDF |

Good morning, Emilio,

As we discussed, here are the fully executed revised Offer and Bidder Registration Forms and Lease Termination Agreements for Store Nos. 4126, 4025, and 4018. I have also enclosed blacklines showing (i) the cumulative changes we have made to the forms since their prior submission on 10/15/24; and (2) conformance of the forms that were submitted on 10/15/24, as amended, to the Ballard agreed LTA form that we previously reached in these cases, which demonstrate that even though the cumulative redlines show a lot of new changes, those changes were really to conform to the Ballard LTA Form, and so the separate Ballard Form Redlines show that we have not deviated from the Ballard approved form except with respect to any changed economic terms from the bids submitted on 10-15-24, which were mostly to increase the consideration to include all amounts due and owing through 12/31/24, as agreed by the parties. Please confirm acceptable and that these three stores will be removed from the December auction process as agreed.

Please do not hesitate to contact me with any questions or concerns.

Best,
Leslie

**Leslie C. Heilman**

**Ballard Spahr** LLP

919 N. Market Street, 11th Floor
Wilmington, DE 19801-3034

1

302.252.4446 DIRECT
302.300.4065 FAX

267.664.0633 MOBILE | heilmanl@ballardspahr.com
VCARD

www.ballardspahr.com

## OFFER AND QUALIFIED BIDDER FORM

Bidder, __HIGHLAND AND STERLING, LLC and BIG HOLDINGS 2, LLC__, hereby:

    Offers to purchase the following Lease Asset(s) for the bid set forth below, pursuant to this Offer and Qualified Bidder Form and the terms and conditions of the accompanying Lease Termination Agreement, and

    Seeks to become a Qualified Bidder pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* subject to approval by the United States Bankruptcy Court for the District of Delaware in the Chapter 11 Cases jointly administered under *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "**Lease Sale Procedures**").

Bidder's offer is for the following Lease Assets at the following bids:

| LEASE ASSET | BID/PURCHASE PRICE |
| --- | --- |
| 1. 1410 E PLAZA BLVD., NATIONAL CITY, CA | $75,000 Cash, plus a waiver of all unpaid prepetition and post-petition rental amounts owed by Tenant to Landlord through December 31, 2024 as more fully set forth herein and in the Lease Termination Agreement.<br><br>If the bid is accepted, Lessor shall waive all past unpaid prepetition and post-petition rental amounts owed by Tenant to Landlord through November 30, 2024, as more fully set forth on the attached ledger in the amount of $306,205.13, together with the monthly rental charges for December, 2024 in the amount of $28,268.01. Big Lots agrees to vacate the Premises, remove all personal property and inventory on or before December 31, 2024. |
| 2. | |
| 3. | |
| **Aggregate Purchase Price:** | $409,548.14 |

**Bidder hereby warrants and represents as follows:**

(a) Bidder has received, reviewed, understands, and agrees to abide by the terms and conditions of the Lease Sale Procedures, the terms and conditions of which are incorporated herein by reference.

(b) Bidder has received, reviewed, and understands the terms and conditions of the Lease Termination Agreement, the terms and conditions of which are incorporated herein by reference.

(c) To the extent that the words and phrases which are capitalized in this Offer and Qualified Bidder Form have been defined in the Lease Sale Procedures or in the Lease Termination Agreement, those definitions are incorporated herein by reference.

(d) Each Bid made at a Lease Auction shall constitute a binding, irrevocable "Bid" pursuant to the Lease Sale Procedures.

(e) Each Bid is and shall be a good faith, bona fide, irrevocable offer to purchase the Lease Asset(s) on an as-is, where-is basis, with no contingencies.

(f) Bidder (a) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Lease Asset(s) in making its offer; (b) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Lease Asset(s) or the completeness of any information provided in connection therewith or the Lease Auction other than as provided in the Lease Termination Agreement; (c) is not entitled to any break-up fee, termination fee, expense reimbursement, or similar type of payment; and (d) by submitting a Lease Termination Agreement, waives, and shall be deemed to waive, the right to pursue a substantial contribution claim under section 503 of title 11 of the United States Code (the "**Bankruptcy Code**") related in any way to the submission of its bid, the Lease Sale Procedures, or any earnest money Deposit.

(g) Bidder is either not represented by a broker seeking a commission, or if Bidder is represented by a broker, Bidder exclusively authorizes broker to submit such offer on behalf of Bidder and that any commission or fee of any type due and payable to such broker as a result of a Lease Sale shall be paid solely by Bidder and Bidder shall indemnify the Debtors and their agents in this regard, and (ii) Bidder acknowledges that it will comply with the Lease Sale Procedures.

(h) Bidder acknowledges that, pursuant to, inter alia, 18 U.S.C. § 371, it is a federal crime to engage in collusive bidding or to chill the bidding.

(i) Bidder confirms that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Lease Sale.

(j) Identification of how the Bidder will pay the purchase price at Closing.

*[Signatures appear on following page]*

AGREED & ACCEPTED this 20 day of November, 2024

Company: HIGHLAND AND STERLING LLC AND BIG HOLDINGS 2 LLC
By: /s/
Name: ROBERT HANASAB
Title: MANAGER


*BIDDER I.D.*
Bidder's Company: HIGHLAND AND STERLING, LLC and BIG HOLDINGS 2, LLC
Bidder's Address: 606 S. Olive Street, Suite 600, Los Angeles, CA 90014
Bidder's Contact: Robert Hanasab
Bidder's Phone & Facsimile Numbers: 213-683-8000
Bidder's Email Address: robert@robhana.com; mathias@robhana.com
Bidder's Tax ID Number:_____


*ATTORNEY OR AUTHORIZED AGENT I.D.*
Attorney or Agent Name: Mathias Maciejewski
Law Firm or Company: Robhana Legal PC
Address: 606 S. Olive Street, Suite 600, Los Angeles, CA 90014
Phone & Facsimile Numbers: 213-683-8000 x 130
Email Address:  mathias@robhana.com

3

EXHIBIT 34

**Big Lots - National City - Bay Plaza, 1410 E Plaza Blvd., National City, CA (Store No. 4126)**

| Item | Amount |
|---|---|
| **CAMs** | **$306,205.13** |
| | **$154,216.52** |
| Q1 2024 - CAM + Insurance | $51,554.96 |
| Q2 2024 - CAM + Insruance | $43,318.65 |
| Q3 2024 - CAM + Insrunace | $59,342.91 |
| **Estimated Repairs** | **$29,195.00** |
| Confirm sprinkler head recall status | $350.00 |
| Facades | $5,985.00 |
| Fire & LIfe Safety | $1,500.00 |
| HVAC | $15,700.00 |
| Pavement and Parking | $4,610.00 |
| Provide additional handicapped-accessible parking spaces to bring property into compliance. | $800.00 |
| Update fire sprinkler and fire alarm Inspections | $250.00 |
| **Outstanding Rent** | **$84,804.03** |
| Rent Nov. 2024 | $28,268.01 |
| Rent Oct. 2024 | $28,268.01 |
| Rent Sept. 2024 | $28,268.01 |
| **Property Taxes** | **$37,989.58** |
| Property Taxes 11/2024 (APN: 557-322-16-00) | $33,632.84 |
| Property Taxes 11/2024 (APN: 557-322-16-00, Supplemental) | $4,356.74 |

Store No. 4126

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "**Agreement**") is made as of this 2̶0̶ day of November, 2024, by and between  HIGHLAND AND STERLING, LLC and BIG HOLDINGS 2, LLC  (collectively, the "**Landlord**") and  BLBO Tenant, LLC  ("**Tenant**" or "**Debtor**", and together with the Landlord, the "**Parties**").

### RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated  August 25, 2023  (as amended or modified from time to time, the "**Lease**"), covering certain premises located at  1410 E PLAZA BLVD., NATIONAL CITY, CA  (and as more particularly described in the Lease, the "**Premises**"), on the terms and conditions set forth therein;

WHEREAS, on September 9, 2024 (the "**Petition Date**"), Tenant, along with certain of its affiliated debtors and debtors in possession (the "**Debtors**"), filed voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), which chapter 11 cases are being jointly administered under the case stylized as *In re Big Lots, Inc., et al.*, at Case No. 24-11967 (JKS) (the "**Bankruptcy Cases**"); and

WHEREAS, the Landlord has prepetition and post-petition sums due and owing from Tenant, and Parties desire to enter into this Agreement to, among other things, to terminate the Lease and restore possession of the Premises to the Landlord as of the Termination Date (as defined below), provide for mutual releases as set forth in this Agreement, and grant Landlord the right to use or dispose of any furniture, fixtures and equipment or other personal property of the Tenant remaining at the Premises as of the Termination Date in its sole and absolute discretion.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows, subject to the entry of an order of the Bankruptcy Court approving this Agreement (the "**Bankruptcy Court Order**"):

### AGREEMENT

1. <u>Recitals</u>. The Recitals are incorporated herein as if set forth at length.

2. <u>Lease Termination</u>. The Lease shall be terminated as of the later of (a) the Vacate Date (as defined below), which date shall not be later than December 31, 2024, unless otherwise agreed to in writing by Landlord, and (b) the date the Bankruptcy Court enters the Bankruptcy Court Order approving this Agreement (the "**Termination Date**"). On or prior to the Termination Date, the Tenant shall surrender possession of the Premises to the Landlord, i.e., by written notice to the Landlord and the return, as applicable, of the keys, key codes and alarm codes for the Premises to the Landlord (or its agent) or by providing written confirmation that the Landlord is authorized to change the locks (the "**Vacate Date**"). Effective as of the Termination Date, Tenant shall: (a) surrender the Premises to Landlord and shall give, grant and surrender unto Landlord all of Tenant's right, title and interest in and to the Premises, including, without limitation, all of the

Tenant's right, title and interest in, to and under the Lease, and Landlord hereby accepts such surrender; and (b) provide utility account information to Landlord upon request. Each of the parties hereto acknowledges performance of all obligations of the other party under the Lease or otherwise in connection with the Premises through and including the Vacate Date except as otherwise agreed to herein, and agree that, from and after the Termination Date, the Lease, and all rights and obligations of the parties thereunder, shall be deemed to have expired and terminated as fully and completely and with the same force and effect as if such date were the expiry date set forth in the Lease; *provided, further*, as of the date of execution of this Agreement, Tenant acknowledges and agrees that, from and after the date hereof, (a) Landlord shall have the right to immediately market the Premises for lease, and (b) Tenant shall not market the Lease, and shall remove the Lease from any further sale process, and shall instruct its representatives, advisors and agents (including A&G Realty) accordingly.

       3.       <u>Consideration</u>. As consideration for this Agreement, Landlord shall (a) pay to Tenant $75,000 (minus any deposits already paid to Tenant); and (b) waive all unpaid prepetition and post-petition rental amounts owed by Tenant to Landlord through December 31, 2024 (the "**Consideration**"); *provided, however,* Landlord's Consideration and the waiver of prepetition and post-petition sums due and owing from Tenant, shall not include any obligations of the Tenant to indemnify the Landlord for any third party claims asserted with respect to or arising from the Tenant's use and occupancy of the Premises prior to the Termination Date for which the Tenant had a duty to indemnify Landlord pursuant to the Lease, including but not limited to any third party claims or mechanics' liens that have been or may be filed against the Tenant and the Premises (the "**Liens**"), which Liens shall attach to in all respects to the proceeds of the Consideration and remain the responsibility of and be discharged or paid by the Debtors and their estates in the Bankruptcy Cases.

       4.       <u>Landlord Release of Tenant</u>. Conditioned upon (i) the entry of the Bankruptcy Court Order and (ii) Tenant's return of possession of the Premises to Landlord in accordance with this Agreement on or prior to the Termination Date, for valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates that have filed for relief under the Bankruptcy Code, and the respective past and present officers, directors, agents and employees, of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, arising under the Lease to Landlord each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease by and between Tenant and Landlord. Notwithstanding the above, Landlord does not waive or release Tenant from the following: (i) obligations arising under this Agreement; (ii) any Lease obligations that expressly survive the Termination Date; (iii) any indemnification obligations for Liens and arising from third party damage and personal injury claims asserted with respect to or arising from Tenant's use and occupancy of the Premises prior to the Termination Date

for which Tenant had a duty to indemnify Landlord pursuant to the Lease (but only to the extent that such latter claims are covered by Tenant's insurance policies and on the condition that Landlord only seeks recovery from the insurer and only up to the insured amount); and (iv) Landlord's exercise of any discovery rights Landlord has against the Tenant in connection with any civil litigation or arbitration proceedings involving a third party.

     5.     <u>Tenant Release of Landlord</u>.  Conditioned upon (i) the entry of the Bankruptcy Court Order, and (ii) Tenant's return of possession of the Premises to Landlord in accordance with this Agreement on or prior to the Termination Date, for valuable consideration, and the mutual covenants and agreements contained herein, Tenant and its affiliated Debtors do hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, including the pursuit of any avoidance actions under Sections 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code against the Landlord, relating to or arising out of the Lease, this Agreement or the Premises. Notwithstanding the above, Tenant, the bankruptcy estate, and anyone eligible to make a claim by or through the Tenant and bankruptcy estate, including the Committee, does not waive or release Landlord from the following:  (i) any obligations arising under this Agreement; (ii) any indemnifications obligations arising from third party claims asserted with respect to or arising from Landlord's obligations prior to the Termination Date for which Landlord had a duty to indemnify Tenant pursuant to the Lease (but only to the extent that such claims are covered by Landlord's insurance policies and on the condition that Tenant only seeks recovery from the insurer and only up to the insured amount); and (iii) Tenant's exercise of any discovery rights Tenant has against the Landlord in connection with any civil litigation or arbitration proceedings involving a third party.

     6.     As further consideration for the releases contained in this Agreement, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE,

3

WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

7. In connection with the releases contained in this Agreement, the parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that the mutual releases have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses. Notwithstanding the foregoing, the obligations of Tenant to defend, indemnify, and hold the Landlord harmless for Liens, claims or potential claims, including but not limited to: (i) any third-party claims for bodily injury, personal injury, or property damage relating to the Premises; and, (ii) claims asserted by contractors, subcontractors, materialmen, laborers or persons or entities entitled to assert mechanics' liens or similar claims for works of improvement at any of the Premises) shall survive termination of the Lease, and are not affected by the mutual releases contained in this Agreement.

8. <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a) Tenant has delivered possession of the Premises to Landlord;

(b) Tenant has delivered to Landlord any keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks);

(c) The Bankruptcy Court Order has been entered by the Bankruptcy Court approving the entirety of this Agreement. Tenant shall use commercially reasonable efforts to seek and obtain Bankruptcy Court approval of this Agreement on an expedited basis such that the Termination Date shall occur no later than December 31, 2024.

9. <u>Furniture, Fixtures and Equipment (FF&E)</u>. Subject to Bankruptcy Court approval, any FF&E remaining at the Premises after the Termination Date is deemed abandoned by the Debtors, and the Landlord or their managing agents are free to use or dispose of such FF&E without notice of any kind and in their sole and absolute discretion, and without further notice or liability to the Debtor or any other person or entity.

10. <u>Authority to Settle</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby. Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11. <u>Entire Agreement</u>. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire

agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12. <u>Advice of Counsel</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13. <u>Attorneys' Fees</u>. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees from the other party.

14. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the parties to this Agreement agrees that scanned or digital signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15. <u>Governing Law.</u> This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16. <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17. <u>Miscellaneous</u>.

(a) The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. This Agreement and its

terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

(f)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel. Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

Store No. 4126

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**LANDLORD:**

**HIGHLAND AND STERLING, LLC**,
a California limited liability company

By:_____
Name: Robert Hanasab
Its: Manager

**BIG HOLDINGS 2 LLC**,
a California limited liability company

By:_____
Name: Robert Hanasab
Its: Manager


**TENANT:**

By:_____
Print Name:_____
Its:_____