## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*,[1] | Case No. 24-11967 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Obj. Deadline: January 14, 2025, 4:00 p.m. ET**<br>**Hrg. Date: January 21, 2025, 1:00 p.m. ET** |

### ALL STATE BROKERAGE, INC.'S MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

All State Brokerage, Inc. (the "Claimant"), a creditor in the above-captioned, jointly administered bankruptcy cases, by and through its undersigned attorneys, files this *Motion for Allowance and Payment of Administrative Claim* (the "Motion"). In support of the Motion, Claimant respectfully sets forth the following:

### JURISDICTION AND VENUE

1. The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.

2. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are Sections 105, 503(a),

---

[1] The debtors and debtors in possession in these chapter 11 cases (hereafter, "Debtors") are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).

503(b)(1), and 507(a)(2) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

4.      This is a core proceeding under 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), Claimant consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## **<u>FACTUAL BACKGROUND</u>**

5.      The Debtors commenced the above-captioned, jointly administered cases by filing voluntary petitions under chapter 11 of the Bankruptcy Code on September 9, 2024 (the "<u>Petition Date</u>").

6.      The Debtors are operating their businesses as debtors in possession.  No trustee or examiner has been appointed. On September 23, 2024, the U.S. Trustee filed a notice of appointment of a committee of unsecured creditors [D.I. 248].

7.      On the Petition Date, the Debtors filed a Motion to Approve Debtor in Possession Financing [D.I. 19] (the "<u>DIP Financing Motion</u>") which, *inter alia*, sought approval to pay over $970 million of operating disbursements between September 1st and November 30th.  *See* DIP Financing Motion, Budget.  The Debtors explained that such financing was necessary to "satisfy an immediate cash need to maintain business relationships with vendors, suppliers, operators and managers, to make capital expenditures and to satisfy other working capital and operational needs and otherwise finance the Debtors' operations."  DIP Financing Motion, ¶4. The Debtors further explained that they "require[]uninterrupted access to their cash and an immediate capital infusion in order to, among other things, (a) satisfy payroll, pay vendors and suppliers, and meet overhead expenses, … (c) pay for goods and services critical

to necessary operations …" DIP Financing Motion, ¶6.

8.      The Debtors claimed that the "DIP Facilities are necessary to the successful resolution of these cases, which is important to reassure customers and vendors, protect operations, and maximize value for creditors."  DIP Financing Motion, ¶32.

9.      On September 9, 2024, the Court entered the Interim DIP Order [D.I. 114] and on October 22, 2024, the Court entered the Final DIP Order [D.I. 584].

10.     Following the entry of the Interim DIP Order and Final DIP Order, the Debtors ordered products from the Claimant.[2]  Believing in good faith that it would be paid for a Chapter 11 debtors' post-petition orders, Claimant fulfilled them.

11.     The Debtors failed to pay for the goods that they ordered and received post-petition.

12.     The Debtors' post-petition purchase orders (the "Post-Petition Purchase Orders"), reflecting the Debtors' status as debtors-in-possession by the annotation "DIP # 11967", are voluminous and have not been attached hereto.  They are, however, available to the Debtors upon written request.  A summary of the Post-Petition Purchase Orders is attached hereto as **Exhibit A**.

13.     Claimant has delivered goods with a purchase price and value of no less than $1,021,403.96 to the Debtors business post-petition, for which payment is in part now overdue and remains outstanding, or will shortly become due (the "Administrative Expense Claim").

14.     Claimant seeks allowance and prompt payment of its Administrative Expense Claim in the total amount of $1,021,403.96.

---

[2] The Claimant also sold goods to the Debtors before they filed their bankruptcy cases.  Claimant does not seek recovery of any of its pre-petition claims as part of this application.

**RELIEF REQUESTED**

**i.    *Claimant is Entitled to Payment for Its Administrative Expense Claim for Goods Ordered by, and Delivered to, the Debtors Post-Petition.***

15.    Section 503(b) of the Bankruptcy Code mandates the allowance of an administrative expense for ". . . the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. 503(b)(1)(A). To qualify as an administrative expense, an expense "must arise from a [post-petition] transaction with the debtor-in-possession" and "must be beneficial to the debtor-in-possession in the operation of the business." *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 314-15 (3rd Cir. 2011); *see also Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.)*, 181 F.3d 527, 532–33 (3d Cir. 1999) (noting that, to establish a priority claim under section 503(b)(1)(A) of the Bankruptcy Code, the debt must arise post-petition and benefit the estate) (citations omitted).

16.    The Claimant's Administrative Expense Claim arises from goods ordered and delivered post-petition. These goods sustained the Debtors' business and were a part of the inventory that was sold for valuable consideration to Gordon Brothers Retail Partners, LLC, pursuant to the transaction approved by the Court on January 2, 2025 [D.I. 1556].

17.    Therefore, the Claimant's Administrative Expense Claim for post-petition deliveries should be allowed as an actual, necessary cost and expense of preserving the estate.

**ii.    *The Court Should Compel Prompt Payment of Claimant's Administrative Expense Claim.***

18.    The Court has discretion to require that Claimant's Administrative Expense Claim be paid promptly. *See In re Garden Ridge Corp.*, 323 B. R. 136, 143 (Bankr. D. Del. 2005). "In determining the time of payment, courts consider prejudice to the debtor, hardship to the

claimant, and potential detriment to other creditors." *Id.*    "Courts will also consider the particular needs of each administrative claimant and the length and expense of the case's administration." *In re NE OPCO, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013) (internal citations omitted). "To qualify for exceptional immediate payment, a creditor must show that 'there is a necessity to pay and not merely that the Debtor has the ability to pay.'" *In re Global Home Products*, 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (*citing In re Continental Airlines*, 146 B.R. 520, 531 (Bankr. D. Del. 1992) (quoting *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 179–79 (Bankr.S.D.N.Y.1989))). ¡

19.    Claimant is a distributor.  In order to fulfill the Debtors' post-petition orders, Claimant incurred significant costs and expenses; namely, Claimant had to purchase the goods for delivery to the Debtors.  Claimant will suffer hardship if its Administrative Expense Claim is not paid promptly.   In reliance on the Debtors' representations that they had the ability, authority, and intent to timely pay Claimant for post-petition deliveries, Claimant agreed to, and delivered, $1,021,403.96 in goods. These receivables, constituting the Administrative Expense Claim, are large in proportion to the size of Claimants' business.

20.    Claimant submits that there would be no meaningful prejudice to other creditors if Claimant's Administrative Expense Claim were paid promptly.

21.    The totality of the circumstances supports compelling the Debtors to pay Claimant's Administrative Expense Claim promptly, to prevent prejudice to the Claimant. Accordingly, Claimant requests that its Administrative Expense Claim be paid within seven (7) days after the entry of this Court's order granting the Motion.

## **RESERVATION OF RIGHTS**

22.    By filing this Motion and asserting its Administrative Expense Claim, Claimant

does not waive any rights related to the matters herein, including the right to submit this claim to insurance.

## <u>CONCLUSION</u>

Claimant respectfully requests that the Court enter an order, substantially in the form attached hereto as **<u>Exhibit B</u>**, (i) allowing Claimant's Administrative Expense Claim against the Debtors in an amount no less than $1,021,403.96, (ii) ordering the Debtors to pay such Administrative Expense Claim within seven (7) days of entry of the order, and (iii) granting such other relief as is just and proper.

Dated: January 7, 2025
Wilmington, DE

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Lisa Bittle Tancredi*
Matthew P. Ward (DE Bar # 4471)
Lisa Bittle Tancredi (DE Bar # 4657)
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 2552-4320
Fax: (302) 252-4330
Email: matthew.ward@wbd-us.com
        lisa.tancredi@wbd-us.com

*Counsel for All State Brokerage, Inc.*