# EXHIBIT 2

## Sale Document Provisions

The motion refers to certain provisions of the APA, Sale Order, and Bidding Procedures Order (each as defined in the motion). For reference purposes only, the language of each provision mentioned in the motion is provided in the below table.

| Sale Document Provision | Language |
|---|---|
| **APA** | |
| "Alternative Transaction" | "Alternative Transaction" means a sale, transfer, or other disposition, whether direct or indirect, whether by means of an asset sale (other than a liquidation or other sale of assets where the Business is not continuing as a going-concern), merger, sale of stock, amalgamation, reorganization, or otherwise (including through a standalone plan of reorganization), of (a) beneficial ownership of a majority of the equity interests of the Selling Entities or (b) any material portion of the Assets, in a transaction or a series of transactions with one or more Persons, other than the Buyer and/or its Affiliates; *provided*, that nothing in this Agreement shall be deemed to prohibit or limit in any manner (and "Alternative Transaction" shall not include) sales of inventory and product sales or other dispositions of immaterial or obsolete assets in the ordinary course of business or sales of assets that would not require Buyer's consent pursuant to Section 7.02. |
| "Break-Up Fee" | "Break-Up Fee" means a fee payable as set forth in this Agreement in an amount equal to $7,500,000 which, until paid, shall constitute an allowed administrative expense claim against each of the Selling Entities in the Bankruptcy Cases under Sections 503(a)–(b) of the Bankruptcy Code, and entitled to priority status under Section 507(a)(2) of the Bankruptcy Code, which shall be subject to the Carve-Out. |
| "Repaid Indebtedness" | "Repaid Indebtedness" means collectively, the ABL DIP Obligations, the Pre-Petition ABL Obligations, the Term DIP Obligations and the Pre-Petition Term Obligations. |
| "Tail Transaction" | "Tail Transaction" means (a) an Alternative Transaction pursuant to which the holders of Repaid Indebtedness receive payment in full for the Repaid Indebtedness or (b) in the case of termination of this Agreement for any reason other than pursuant to Section 12.01(d) (*Material Buyer Breach*), a transaction pursuant to a Superior Proposal. |
| APA § 9.06 | *Section 9.06 Contributed Asset Value.* The Contributed Asset Value will be equal to or greater than the Minimum Asset Value.<br><br>"Minimum Asset Value" means the "Minimum Asset Value set forth on Schedule 1.01(b) for the date closest to the Closing Date." |
| APA § 12.01(c)(i) | *Section 12.01. Termination Events.* Notwithstanding anything herein to the contrary, this Agreement may be terminated at any time prior to the Closing:<br><br>(c) by Buyer by written notice to Seller if: |

| | |
|---|---|
| | (i) (A) any Selling Entity breaches any representation or warranty or any covenant or agreement contained in this Agreement, (B) such breach would result in a failure of a condition set forth in Article 9 or Article 10 and (C) if such breach is capable of being cured, such breach has not been cured by the earlier of (1) 10 Business Days after the giving of written notice by Buyer to the Selling Entities of such breach and (2) the date that is three Business Days prior to the Outside Date. |
| APA § 13.07(b)(ii)(A) | Notwithstanding [Section 13.07(a)], in consideration for Buyer having expended considerable time and expense in connection with this Agreement and the negotiation thereof and the identification and quantification of assets of the Selling Entities:<br><br>(ii) in accordance with the terms of the Bidding Procedures Order:<br><br>(A) if (I) this Agreement is validly terminated pursuant to Section 12.01(b)(iii) (Superior Proposal), Section 12.01(c)(i) (Material Seller Breach), Section 12.01(c)(ii) (Alternative Transaction), Section 12.01(c)(v) (Buyer Not Selected at Auction), or (solely at a time when this Agreement was permitted to be terminated pursuant to the foregoing sections) Section 12.01(b)(i) (Outside Date), and (II) concurrently with or within 120 days following such termination of this Agreement, the closing of a Tail Transaction has occurred, the Selling Entities will pay to Buyer the Break-Up Fee upon the closing of the Tail Transaction; |
| **Sale Order [Docket No. 1232]** ||
| Sale Order ¶ 6 | Pursuant to sections 363 and 365 of the Bankruptcy Code, the Selling Entities' entry into the APA, and any other ancillary documents required in connection with Sale, is hereby authorized and approved as a valid exercise of their business judgment. Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to continue performance under and make all payments required by the APA (on the terms and conditions set forth herein) and all other ancillary documents as and when due thereunder without further order of the Court. Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, acting by and through their agents, representatives, directors, and officers, are authorized and empowered to take any and all actions necessary or appropriate to: (a) consummate and close the Sale pursuant to and in accordance with the terms and conditions of this Sale Order and the APA; (b) transfer and assign all right, title, and interest to all property, licenses, and rights to be conveyed in accordance with the terms and conditions of this Sale Order and the APA; and (c) execute and deliver, perform under, consummate, and implement this Sale Order and the APA and all additional instruments and documents that may be reasonably necessary or desirable to implement this Sale Order, the APA, and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated under this Sale Order, the APA, and any other ancillary documents. The Debtors are further authorized to pay, without further order of the Court, whether before, at or after the Closing, any amounts that become payable by the Debtors pursuant to the APA or ancillary documents (on the terms and conditions set forth herein), together with other fees and expenses approved by the Court. Such |

| | |
|---|---|
| | amounts shall: (a) constitute allowed administrative expenses of the Debtors' estates under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code (and in the case of the payment of the Bid Protections to the Stalking Horse Bidder, if applicable, shall constitute superpriority administrative expenses of the Debtors' estates with priority over any and all administrative expenses of any kind, including those specified under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code (provided that the priority of such superpriority administrative claims shall be junior to the Carve Out and the Wind-Down Budget, and shall in no circumstance be pari passu with or senior to the claims granted to the DIP Credit Parties or the Prepetition Secured Creditors);4 and any requirement that the Stalking Horse Bidder file a proof of claim for, or otherwise request allowance of, such administrative expense claim(s) is hereby waived; and the Debtors, in accordance with the terms of the Bidding Procedures Order, are authorized and directed to make payment to the Stalking Horse Bidder on account of such administrative expense claim(s) without need for further order of the Court); (b) be treated with such priority if the chapter 11 cases convert to cases under chapter 7 of the Bankruptcy Code; and (c) not be discharged, modified, or otherwise affected by any reorganization or liquidation plan for any of the Debtors, except by written agreement with the Buyer (such agreement to be provided in the Buyer's sole discretion). Neither the Buyer nor the Selling Entities shall have any obligation to proceed with the Closing under the APA until all conditions precedent to their respective obligations to do so have been met, satisfied, or waived in accordance with the terms of the APA. |
| **Bidding Procedures Order [Docket No. 612]** | |
| Bidding Procedures Order ¶ 16 | Bid Protections.  Subject to the terms of this Bidding Procedures Order, the Debtors are hereby authorized and directed to pay, or cause to be paid, the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse APA (as amended by the Proposed Stalking Horse APA Amendment) and the Bidding Procedures, without further order of this Court. The dollar amount of the Break-Up Fee and Expense Reimbursement are hereby approved. The Stalking Horse Bidder shall be entitled to receive the Bid Protections in accordance with the terms and conditions of the Stalking Horse APA, the Bidding Procedures, and this Bidding Procedures Order, provided that notwithstanding anything to the contrary in the Stalking Horse APA or the Bidding Procedures, the Bid Protections shall only be earned, due and/or payable if (and the Debtors shall only be authorized to pay the Bid Protections if), prior to the Bid Deadline, the Stalking Horse Bidder has delivered Debt Commitment Letters to the Debtors evidencing committed Debt Financing. The Debtors' obligation to pay the Bid Protections shall be the joint and several obligations of the Debtors and shall survive termination of the Stalking Horse APA, dismissal or conversion of any of the Chapter 11 Cases, and confirmation of any plan of reorganization or liquidation. |
| Bidding Procedures Order ¶ 17 | From the delivery of Debt Commitment Letters as set forth in paragraph 16 of this Bidding Procedures Order until paid, the Break-Up Fee and Expense Reimbursement shall constitute allowed administrative expense claim(s) arising in the Chapter 11 Cases under sections 503(b), 507(a)(2), and 507(b) |

|  | of the Bankruptcy Code; provided, however, that such administrative expense claim(s) shall be subject to the Carve-Out and the Wind-Down Budget, and shall in no circumstance be pari passu with or senior to the claims granted to the DIP Credit Parties or the Prepetition Secured Creditors; provided, further, that any requirement that the Stalking Horse Bidder file a proof of claim for, or otherwise request allowance of, such administrative expense claim(s) is hereby waived; provided, further, that, notwithstanding anything to the contrary in the Stalking Horse APA, the Break-Up Fee and Expense Reimbursement shall not be entitled to any "superpriority" status. |
|---|---|