# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.,* | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date: January 21, 2025 at 1:00 p.m.**<br>**Objection Deadline: January 14, 2025 at 4:00 p.m.** |

## MOTION OF BELKIS MILLAN FOR RELIEF
## FROM THE AUTOMATIC STAY

Belkis Millan ("Millan" or "Movant"), by and through her undersigned counsel, files this motion for relief from the automatic stay to allow prosecution of a personal injury claim to be pursued in Florida against one or more of the above-captioned debtors ("Debtors"), under 11 U.S.C. § 362(d) and pursuant to Fed. R. Bankr. P. 4001(a), 9014 and Del. Bankr. L.R. 4001-1. In support of the Motion, Millan states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the standing order of reference to this Court.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Pursuant to 28 U.S.C. § 1409, venue of this Motion is proper in this Court.

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. DublinGranville Road, Columbus, OH 43081.

4. Pursuant to Del. Bankr. L.R. 9013-1(f), Movant does consent to the entry of final orders or judgments by the Court with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Movant does not, however, consent to the adjudication of her claim by this Court nor does she concede that jurisdiction is proper as to such adjudication under 28 U.S.C. § 1334 or otherwise.

## FACTUAL BACKGROUND

**A. The Murder of Acelia Barrios and its Impact on Millan**

5. On September 26, 2023, one Ernesto Vino ("Vino"), armed with a loaded firearm, entered a store owned and operated by Debtor Big Lots Stores, LLC ("Big Lots") at 5580 NW 167th Street, Miami-Date County, Florida (the "Store") with the intention of killing a management level employee of Big Lots, Acelia Barrios ("Barrios").

6. Millan was also an employee of Big Lots. Barrios was her immediate supervisor.

7. For several months prior to September 26, 2023, Vino had repeatedly threatened to kill Barrios. These threats were made in the Store. One of these prior threats culminated in his producing a knife and physically threatening and/or attempting to stab Barrios, only to be thwarted by another of Big Lot's employees.

8. On the night of September 26, 2023, Vino carried out his prior threats to kill Barrios. Vino entered the Store with a loaded firearm and accosted Barrios: "I told you I would kill you and now you'll see what I mean." Millan heard Barrios plead for her life just before Vino shot Barrios dead.

9. Prior to killing Barrios, Vino assaulted Millan, who ran away from Vino. After killing Barrios, Vino followed Millan through a darkened parking lot causing him to lose sight of her. Vino called out Millan's name in an apparent effort to reveal her whereabouts to Vino.

10. While running through the darkened parking lot, Millan sustained serious and permanent physical injuries as she attempted to avoid being murdered by Vino.

11. As she hid from Vino, she then witnessed Vino commit suicide by shooting himself with his gun.

12. In addition to her physical injuries, Millan has suffered serious and permanent emotional distress and psychological trauma after her experiences on September 26, 2023 (the "Incident").

13. The Incident was caused by Big Lot's negligence, including without limitation, Big Lot's failing to provide its employees with a safe work place; failing to provide adequate security; failing to implement sufficient anti-crime policies; and failing to warn of the danger posed by Vino in light of his repeated threats to commit murder.

B. **The State Court Action**

14. On November 29, 2023, Millan's complaint against Big Lots was filed with the Circuit Court of the 11th Judicial Circuit of the State of Florida in and for Miami-Dade County (the "State Court") which is pending at Case No. 2023-027199-CA-01 Section CA04 (the "State Court Action").

15. The State Court Action is very close to resolution and may be resolved as soon as Ms. Millan's deposition is completed. Accordingly, the Debtors and/or their insurer will incur little if any costs moving forward with the litigation.

C. **The Big Lots Bankruptcy**

16. On September 29, 2024 (the "Petition Date"), Big Lots and several affiliated debtors each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. The cases

are pending before the Honorable J. Kate Stickles, and are jointly administered under Case No. 24-11967-JKS.

17. Movant, through counsel in the State Court Action, timely filed her proof of claim with the claims agent as follows:

| Claim No. | Claim Amount | Date Filed | Debtor |
| --- | --- | --- | --- |
| 1652 | $5,000,000 or more | 10/1/2024 | Big Lots Stores, LLC |

18. The Debtors have not filed a plan.

19. Movant does not have knowledge of what insurance policy or policies may apply to her claim.

20. However, based on a review of other stay relief motions and the *Debtors' Omnibus Objection to Motions for Relief from Automatic Stay under Section 362 of the Bankruptcy Code* (D.I. 1103, the "Omnibus Objection"), certain claims may be covered under a policy (the "Policy") with Starr Indemnity & Liability Company (the "Insurer") which allegedly contains a $1 million self-insured retention (the "SIR") per occurrence, which does not contain an exception for bankruptcy or insolvency.

21. As reflected in her proof of claim, Movant believes and has been advised that her claims have a value well in excess of the $1 million SIR.

**RELIEF REQUESTED AND REASONS THEREFOR**

22. By virtue of 11 U.S.C. § 362(a), the commencement of or prosecution of any action against the Debtors has been stayed pending a hearing on this Motion.

23. Section 362(d) of the Bankruptcy Code provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

> (1)    for cause, including lack of adequate protection of an interest in property of such part in interest;
>
> (2)    with respect to a stay of an act against property under subsection (a) of this section, if—
>
>> (A)    the debtor does not have an equity in such property; and
>>
>> (B)    such property is not necessary to an effective reorganization.

24.    In determining whether cause exists to lift the stay to permit a party to pursue an action outside of the Bankruptcy Court, this Court may consider whether:

a. Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,

b. The hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship of the debtor, and

c. The creditor has a probability of prevailing on the merits.

*In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992); *see also American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 152 B.R. 420, 424 (D. Del. 1993); *Levitz Furniture Inc. v. T. Rowe Price Recovery Fund, L.P. (In re Levitz Furniture Inc.)*, 2000 Bankr. LEXIS 1322, *15 (Bankr. D. Del. 2000); *Save Power Limited v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.),* 193 B.R. 713, 718 (Bankr. D. Del. 1996). Further, courts are directed to consider the following legislative history:

> It will often be more appropriate to permit proceedings to continue in their place of origin, where no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

*Rexene Products*, 141 B.R. at 576; *In re Wilson*, 85 B.R. 722, 728-29 (Bankr. E.D. Pa. 1988) (citing S. Rep. No. 989, 95th Cong., 2d. Sess. 50, reprinted in [1978] *U.S. Code Cong. & Ad. News* 5836).

25. The legislative history of section 362 indicates that cause may be established by a single factor such as "a desire to permit an action to proceed . . . in another tribunal," or "lack of any connection with or interference with the pending bankruptcy case." H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977) *U.S. Code Cong. & Admin. News*, pp. 5787, 6300. *See also In re Rexene*, 141 B.R. at 576 ("cause" for relief was found in order to allow civil plaintiffs to proceed with a class action against the debtor because discovery was nearly complete, both parties were nearly ready for trial prior to the bankruptcy filing, trial of the claim in bankruptcy court would be burdensome to plaintiffs and risk unnecessary, duplicative litigation, and plaintiffs had at least some probability of success on merits of suit); s*ee also In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 838 n. 8 (Bankr. S.D.N.Y. 1990) (citing various examples of "cause" to permit litigation in another forum such as liquidation of a personal injury, arbitration or specialized jurisdiction claims).

26. This Court, in the *Continental Airlines* decision referred to above, set forth the following framework for analyzing motions for relief from the automatic stay:

> There is no rigid test for determining whether sufficient cause exists to modify an automatic stay. Rather, in resolving motions for relief for "cause" from the automatic stay courts generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the Movant. In balancing the competing interests of the debtor and the Movant, Courts consider three factors: (1) the prejudice that would be suffered should the stay be lifted; (2) the balance of the hardships facing the parties; and (3) the probable success on the merits if the stay is lifted. *See Int'l Business Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.*) 938 F. 2d 731. 734-37 (7th Cir. 1991).

*In re Continental Airlines*, 152 B.R. at 424.

27. Application of the standards set forth in the case law here weighs overwhelmingly in favor of granting stay relief. The prejudice to Movant in forcing her to pursue claims in Delaware, or not pursing these claims at all until possibly after this bankruptcy case is fully

administered, is manifest. Most if not all witnesses and parties are located in Florida. And in any event, because Movant's claim is, in whole or in part, in the nature of personal injury, this Court lacks jurisdiction to adjudicate that claim. 28 U.S.C. § 157(b)(5).

28.     By contrast, adjudication of Movant's claims in a commercial bankruptcy such as this would have no discernable effect on the administration of the Debtors' cases. This is particularly true as the State Court Action was on the verge of resolution just before the bankruptcy cases were filed.

29.     As to probability of success on the merits, this Court need not conduct a 'mini-trial' to determine the merits of the case, even in fairly complex cases. *In re Adelphia Commun. Corp.*, 285 B.R. 580, 595 (Bankr. S.D.N.Y. 2002) vacated, 298 B.R. 49 (S.D.N.Y. 2003) ("The fact that allegations have not been proven is more than a 'technical consideration[ ],' and this Court, like most bankruptcy courts, is ill-suited to conducting mini-trials on insureds' culpability incident to determining their entitlement to relief from the stay on access to the D & O policy proceeds that were put in place, at least in part, to help them in litigation to determine that very issue."). Rather, this prong merely requires a showing that the cause of action has some merit.

30.     In this case, Millan was seriously injured as a result of the negligence of the Debtors. This is, in whole or in part, a personal injury action and no detailed showing is required to obtain stay relief in such cases. There is little doubt that Millan's injuries were the result of Debtors' negligence.  Millan stresses that Debtors had repeated forewarning that Vino would return to the Store to commit acts of violence and yet undertook no security measures to prevent that from happening.

31.     Debtors will likely argue, as they have in the Omnibus Objection, that "[i]n light of the SIR, the Debtors will be responsible for costs up to $1 million for each separate claim." But the authority Debtors cite does not support that proposition.

32. For example, in *In re Cont'l AIRLINES*, 177 B.R. 475, 481 n.5 (D. Del. 1993), the debtors had no insurance policy at all. ("In the absence of insurance, Continental will be forced to shoulder these indemnity obligations itself, thereby directly impacting Continental's assets.").

33. Similarly, *Majestic Star Casino v. City of Gary (In re Majestic Star Casino, LLC)*, Nos. 09-14136(KG), 10-50841(KG), 2010 Bankr. LEXIS 1874, at *1 (Bankr. D. Del. Apr. 28, 2010) did not even address the issue of insurance.

34. On the other hand, case law on point shows that liability policies are, in general, not executory contracts and, hence, insurers do not hold administrative claims against the estate if the Debtors do not satisfy the SIR.

## I.  DEBTORS HAVE NOT ESTABLISHED THAT THE INSURER WILL HAVE AN ADMINISTRATIVE CLAIM FOR THE SIR

The Debtors' primary objection to the various stay relief motions is that the Debtors would be required to pay defense costs, presumably because if the Debtors do not assume the defense costs, the Insurer *might* assert an administrative claim for any defense costs up to the unexhausted portion of SIR. It bears noting that the Insurer has not filed a request for allowance of an administrative expense claim. If the Debtors are correct that a claim for funds expended by an insurer under the SIR constitute a cost of administration, then the Insurer arguably now holds a contested, contingent and unliquidated claim. Yet apparently, it has not taken any action to assert such claim.

In any event, case law shows that a claim for reimbursement of an unpaid SIR under a liability policy that has neither been assumed nor rejected is not entitled to administrative status. *E.g. Argonaut Ins. Co. v. Ames Dep't Stores (In re Ames Dep't Stores),* 93 Civ. 4014 (KMW), 1995 U.S. Dist. LEXIS 6704, at *8 (S.D.N.Y. May 17, 1995) (in rejecting insurer's assertion of an administrative claim for a self-insured retention, held that insurer "failed to cite a single case, and the court has found none, in which insurance policies, executed pre-petition, whose policy

periods expired prior to the confirmation of the plan of reorganization, were deemed to be executory contracts."); *see also Home Ins. Co. of Illinois v. Hooper,* 691 N.E.2d 65 (Ill. App. 1998) (provision in insurance policy conditioning coverage on actual payment of a self-insured retention void as against public policy); *Albany Ins. Co. v. Bengal Marine, Inc.,* 857 F.2d 250 (5th Cir. 1988) (failure of insured to pay deductible not a defense under Louisiana law); *Columbia Casualty Co. v. Federal Press Co.,* 104 B.R. 56 (Bankr. N.D. Ind. 1989) (Indiana statute preventing bankruptcy of insured from discharging carrier's coverage obligations held to prevent carrier from denying coverage for failure to pay SIR); *Keck, Mahin & Cate,* 241 B.R. 583, 596 (N.D. Ill. 1999) (allowance of tort claims as unsecured claims in the amount of the SIR satisfied the SIR); *In re Edgeworth,* 993 F.2d 51, 54 (5th Cir. 1993)("[I]t makes no sense to allow an insurer to escape coverage for injuries caused by its insured merely because the insured receives a bankruptcy discharge."); *Sturgill v. Beach at Mason Limited Partnership,* 2015 U.S. Dist. LEXIS 142490 (S.D. Ohio 2015) ("[T]he great weight of authority … holds … that the insured's failure to pay a SIR does not relieve the insurer of its contractual duties under the policy."); *Admiral Ins. Co. v. FF Acquisition Corp. (In re FF Acquisition Corp.),* 2010 Bankr. LEXIS 876 (Bankr. N.D. Miss. 2010) ("[B]ankruptcy courts [] have consistently held that the failure of a bankrupt insured to fund a self-insured retention will not excuse the insurer's performance under the insurance policy."). The insurer will be in a position to decide whether to watch Movant's litigation unfold or to drop down and defend. *Admiral Ins. Co. v. Grace Indus.,* 409 B.R. 275 (E.D.N.Y 2009) (Insurer "is free (or not) to save itself money by paying what would have been [the insured's] obligation rather than playing out all of the litigation cards with their attendant risks.").

The case of *Am. Safety Indem. Co. v. Vanderveer Estates Hldg., LLC (In re Vanderveer Estates Hldg., LLC)*, 328 B.R. 18, 21 (Bankr. E.D.N.Y. 2005) ("<u>Vanderveer</u>"), is instructive. In

*Vanderveer,* the debtor, Vanderveer, had entered into a liability policy with American Safety Indemnity Co. ("ASIC") before the petition date. Debtor cancelled the policy post-petition. Just as in this case, the policy contained a *per claim* SIR (in *Vanderveer* this was $25,000). ASIC asserted that its defense costs up to the amount of the SIR were entitled to administrative priority because the policy was an executory contract. The Court rejected ASIC's position holding that a paid-up policy that expired pre-bankruptcy was not an executory contract under the usual Countryman definition:

> It is well established that insurance policies for which the policy periods have expired and the premium has been paid are not executory contracts, despite continuing obligations on the part of the insured. *Beloit Liquidating Trust v. United Insurance Co.*, 287 B.R. 904 (N.D. Ill. 2002); [**18] *Argonaut*, 1995 U.S. Dist. LEXIS 6704 at *6-7 (S.D.N.Y. 1995), *citing In re Texscan Corp.*, 976 F.2d 1269, 1271-73 (9th Cir. 1992); *In re Sudbury, Inc.*, 153 B.R. 776, 778-780 (Bankr. N.D. Ohio 1993); *In re Firearms Import and Export Corp.*, 131 B.R. 1009, 1013-14 (Bankr. S.D. Fla. 1991); *In re Federal Press Co.*, 104 B.R. 56 (Bankr. N.D. Ind. 1989). "These courts have reasoned that the failure of the insured to perform those continuing obligations would not excuse the insurer from being required to perform and, consequently, that the Countryman definition of an executory contract would not be satisfied." *Argonaut*, 1995 U.S. Dist. LEXIS 6704 at *7. Here, it is not disputed the Debtor paid the insurance premium to ASIC in full; therefore, the Insurance Policy is not executory, and has not been (and could not be) assumed by the Debtor.

*Vanderveer,* 328 B.R. at 26.

Moreover, *Vanderveer* is consistent with Florida case law that while the SIR is ultimately borne by the claimant, failure to satisfy the SIR is not a complete defense to coverage:

> In light of the foregoing, this Court is satisfied that the stay should be lifted to allow Browns Bridge to proceed against the Debtor's insured, Greenwich. Greenwich is obligated to defend and indemnify the Debtor for the portion of any judgment or settlement exceeding $ 50,000, irrespective of Debtor's inability to pay the claimed retention amount. *See* Home Insurance Company of Ill. v. Hooper, 294 Ill. App. 3d 626, 691 N.E.2d 65, 229 Ill. Dec. 129 (Ill. App. Ct. 1998).

*In re OES Envtl., Inc.*, 319 B.R. 266, 269 (Bankr. M.D. Fla. 2004).

## II. EVEN IF PAYMENTS UP TO THE SIR ARE EXPENSES OF ADMINISTRATION, MOVANT SHOULD BE ABLE TO PROCEED WITH HER LAWSUIT

As noted above, the Debtors have not demonstrated that a possible claim by the Insurer for reimbursement of defense costs up to the SIR would be an expense of administration. But even if the Debtors were right, that does not mean Movant should be denied stay relief. Movant has an absolute right to pursue insurance proceeds regardless of the outcome of this bankruptcy and no purpose would be served in delaying the lawsuit to Movant's material prejudice.

In the Third Circuit, the law is clear that even the discharge of a debtor does not prevent a claimant from recovering insurance proceeds arising under the debtor's insurance policies. *First Fid. Bank v. McAteer*, 985 F.2d 114, 118 (3d Cir. 1993) ("the protection from liability afforded the debtor under the Code does not affect the liability of the debtor's insurers."); *accord Hawxhurst v. Pettibone Corp.,* 40 F.3d 175, 177 (7th Cir. 1994) (claimant who *never* filed a proof of claim granted discharge relief *four years* later to pursue insurance); *In re SelectBuild Illinois, LLC,* 2015 WL 3452542, at *8 (Bankr. D. Del. May 28, 2015) (KJC) ("Other courts have determined that a bankruptcy discharge does not preclude a suit brought nominally against the debtor in order to seek relief against the insurer."); *In re Chemtura Corp.,* 2016 Bankr. LEXIS 4056, *55 (Bankr. S.D.N.Y. Nov. 23, 2016) ("[I]t is well settled that by application of sections 524(a) and 524(e), the discharge injunction does not bar a tort claimant from bringing suit against a discharged debtor only to recover from the debtor's insurer, where that suit comes with no cost to the debtor."). These decisions make no distinction between the presence of a deductible or an SIR. *E.g. Hawxhurst,* 40 F.3d at 178 (discharge relief granted where policies provided for SIR); *SelectBuild*, 2015 WL at *18 (discharge did not bar claim against insurer even where $1.9 million deductible was supported by letters of credit secured against estate assets).

It may be noted that even where there is an obligation of the debtor to reimburse the insurer for very large self-insured retainages or deductibles, that does not preclude granting stay relief. Of particular interest were the many stay relief motions in *In re Coach Am Holdings Corp.*, Case No. 12-10010 (KG) ("*Coach America*"). In *Coach America*, the debtors' insurance policies had a $5 million per occurrence deductible or self-insured retainage. *See* 3/19/2012 transcript (D.I. 484, excerpts attached as Exhibit "1" hereto, at 53). Significantly, the debtors in *Coach America* had posted $39 million in *secured* letters of credit to support any payments the insurers had to make under the deductible. The stay relief motions were eventually resolved consensually under a global order that granted the movants relief from stay, *including* the right to liquidate their claims against the estate (*i.e.* recovery was *not* limited to insurance coverage). Coach Am. D.I. 649, Exhibit "2" hereto. As is often the case, this 'consensual' resolution did not occur in a vacuum, as at an earlier hearing, the Court voiced little sympathy for the debtors' plight:

> Well, you know, it troubles me that a public carrier has a $5 million deductible. That may be a business decision, but it certainly isn't a business decision of people who get on those buses. And these people got on those buses and they were injured and I think they're entitled to be heard.

Coach Am., 3/19/2012 Tr. at p. 84 (Exhibit "1" hereto).

*Coach America* and *Select Build* both show that the mere fact that the debtor may have to pay a deductible or SIR out of pocket, due to its voluntary decision to procure policies with high SIRs, does not mean that that the claimant should be denied stay relief. At best, denying stay relief would just "kick the can down the road." As the Debtors are liquidating their assets through section 363 sales, there will presumably be no discharge here. 11 U.S.C. § 1141(d)(3). And even if there were, again, a discharge of the debtor does *not* relieve the debtor's insurance carriers of their coverage obligations. Finally, any plan injunction that effectively released a third-party carrier would surely run afoul of the Supreme Court's recent rejection of non-consensual third-party

releases. *Harrington v. Purdue Pharma L.P.,* No. 23-124, 2024 U.S. LEXIS 2848, at *32 (June 27, 2024) ("the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants").

The Debtors might argue that if the Policy is indeed an executory contract, the Debtors should reject the Policy thereby terminate coverage. That would be a mistaken conclusion. Once an injured claimant has asserted a claim under a policy that is in effect, the subsequent cancellation or termination of the policy does not excuse the carrier's obligations under the policy. Here, the Movant was injured and notified the Debtors of her injuries. The Debtors and the Insurer cannot now conspire to deprive the Movant of her rights by terminating the policies after the fact. As the leading treatise on insurance contracts explains:

> A completed surrender and cancellation of an insurance policy terminates the contract, and the parties are relieved from any liability that might otherwise accrue under the policy, though not from liability already accrued.
> … Where the contract of insurance provides for liability to third persons, the insurer and the insured cannot terminate such a contract by their voluntary action to the prejudice of a claimant's rights which have already vested. …
> A mutual rescission of a liability policy by the insurer and the named insured does not abrogate the accrued rights of the omnibus insureds without their consent.
> …
> A provision in a liability policy giving the injured person a right of action over against the insurer cannot be cancelled by the insurer, even with the consent of the insured, after the injured person's identity has been established.

Couch on Ins. § 31:49 (3d ed. 2020).

An insurer and insured may not rescind a liability policy after a known loss. *E.g. Society Ins. v. Capitol Indem. Corp.,* 260 Wis. 2d 549, 555-56 (Ct. App. 2003); *In re Estate of Gardinier,* 40 N.J. 261 (1963); *Rauch v. Am. Fam. Ins. Co.,* 115 Wis. 2d 257, 267 (1983) ("[U]pon the happening of an accident, the injured party acquires an interest in the policy that cannot be foreclosed by litigation or agreement between the insurer and insured alone."). Similarly,

rejection of an executory contract does not terminate the contract, but merely constitutes a pre-petition breach of contract by the debtor party. *Mission Prod. Hldgs. v. Tempnology,* LLC, 139 S. Ct. 1652, 1661 (2019) ("Rejection of a contract—any contract—in bankruptcy operates not as a rescission but as a breach."). If a post-injury cancellation or termination does not absolve the carrier of liability, then, *a fortiori,* a post-injury breach (via rejection under section 365 or otherwise) cannot accomplish that result.

In sum, in the (very unlikely) event that the Insurer holds an administrative claim for expenses under the SIR, no delay in hearing the Motion will change that result and the Debtors need not concern themselves with litigation being defended by the carrier that is out of their control. This is particularly true here where the State Court Litigation was on the cusp of being resolved when the bankruptcy cases were filed. The Debtors would be better off addressing the issue promptly than deferring it indefinitely. In any case, justice delayed is justice denied to an injured claimant who holds nondischargeable claims against insurance proceeds due to spoliation of evidence, waning memories and costs associated with unnecessary delay.

### III. THE MOTION IS NOT PREMATURE

The Debtors argue in the Omnibus Objection that other stay relief motions are premature. These cases have been pending almost four months. The Debtors have conducted or are conducting section 363 sales of substantially all of their assets. Moreover, the Motion seek to prosecute a personal injury claim and there is no reason to believe that the Debtors would somehow be distracted by permitting Movant to pursue claims that were pending for some time before the Petition Date and which are likely to be resolved promptly.

### IV. THE DEBTORS' "FLOODGATES" ARGUMENT SHOULD BE MET WITH SKEPTICISM

As argued above, to the extent other personal injury claimants have an interest in insurance proceeds, such claimants will, as soon as the automatic stay is terminated, be

able to pursue those claims. While bankruptcy is supposed to provide debtors with a "breathing spell", this is a liquidating case and delaying the inevitable does not help anyone.

But even taking the Debtors' argument at face value, it should be kept in mind that only a handful of claimants have taken steps to seek stay relief. The presence of the $1 million SIR represents a significant practical hurdle for many such claimants. Hence, there is no reason to believe that granting the Motion to permit Movant to recover insurance proceeds will open any floodgates. And even if that happens, there is nothing to say that the Court cannot address any concomitant problems if and when they arise. Ultimately, the Debtors' floodgates argument is based on speculation and should be rejected.

## V.    MOVANT HAS MERITORIOUS CLAIMS IN EXCESS OF THE SIR

Movant timely filed a proof of claim in excess of $5 million. Movant's State Court Action was pending for almost a year when the bankruptcy was filed.

Preliminarily, Debtors stress in their Omnibus Objection that movants cannot meet *their* burden to show entitlement to stay relief. But under 11 U.S.C. § 362(g), in an adjudication of a motion under 11 U.S.C. § 362(d), the burden of proof rests with the party *opposing* stay relief except as to the issue of equity in any collateral. This statute "by its burden shifting, seems almost . . . to ask 'why shouldn't the stay be lifted'" rather than asking "why should the court lift the stay." *In re Abeinsa Hldg., Inc.,* No. 16-10790 (KJC), 2016 Bankr. LEXIS 3641, at *8 (Bankr. D. Del. Oct. 6, 2016).

Second, very little is needed to show a meritorious claim. As this Court held in *Rexene Products*

> Finally, the third prong examines Movants' probability of success on the merits. The required showing is very slight. *See, e.g. Peterson*, 116 Bankr. at 250 (foregoing merits analysis entirely in a relief from stay motion merely to liquidate claim). "Only strong defenses to state court [**12] proceedings can prevent a

bankruptcy court from granting relief from the stay in cases where, as here, we believe that the decision-making process should be relegated to bodies other than this court." *Fonseca v. Philadelphia Housing Authority* (*In re Fonseca*) 110 Bankr. 191, 196 (Bankr. E.D. Pa 1990). This slight showing is easily met by the fact that there has already been a denial of defendants' motion for summary judgment in the lawsuit.

*In re Rexene Prods. Co.*, 141 B.R. at 578.

Finally, it should be pointed out that the alternative to litigating Movant's claims where they are pending (Florida State Court) is not to subject them to claims administration here. Rather, under 28 U.S.C. § 157(b)(5):

> (5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

Given the enormous burden on the Delaware District Court's docket and the lack of any connection between the underlying disputes to Delaware, it is highly probable that personal injury claims would be adjudicated in federal court in Florida in the absence of stay relief. No purpose would be served from what would amount to the removal of personal injury actions arising under state law.

For all these reasons, the Movant respectfully requests that this Motion be granted.

WHEREFORE, Movant requests that the Court approve the order attached hereto, granting relief from the automatic stay to permit her to prosecute the State Court Action, and granting such other and further relief as this Court deems just and proper.

DATED: January 7, 2025

/s/ Christopher D. Loizides
Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE  19801
Telephone:   (302) 654-0248
Facsimile:    (302) 654-0728
Email:           loizides@loizides.com
*Counsel for BELKIS MILLAN*