**EXHIBIT "1"**

1

2

3    IN RE:                            )  Case No. 12-10010 (KG)
                                      )  Chapter 11
4    COACH AM GROUP HOLDINGS CORP.,   )
         *et al.*                     )  Courtroom No. 3
5                                     )  824 Market Street
                      Debtors.        )  Wilmington, Delaware 19801
6                                     )
                                      )
7                                     )  March 19, 2012
                                      )  2:00 P.M.
8

                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE

9                      TRANSCRIPT OF HEARING
           BEFORE HONORABLE CHIEF JUDGE KEVIN GROSS
10                UNITED STATES BANKRUPTCY JUDGE

11   APPEARANCES:

12   For The Debtors:        Polsinelli Shughart
                             BY:  CHRISTOPHER A. WARD, ESQ.
13                                JUSTIN K. EDELSON, ESQ.
                             222 Delaware Avenue, Suite 1101
14                           Wilmington, DE  19801
                             (302) 252-0920
15
                             Lowenstein Sandler PC
16                           By:  SHARON LEVINE, ESQ.
                                  S. JASON TEELE, ESQ.
17                                NICOLE STEFANELLI, ESQ.
                             65 Livingston Avenue
18                           Roseland, New Jersey  07068
                             (973) 597-2500
19

20   ECRO:                   GINGER MACE

21   Transcription Service:  Reliable
                             1007 N. Orange Street
22                           Wilmington, Delaware 19801
                             Telephone:  (302) 654-8080
23                           E-Mail:  gmatthews@reliable-co.com

24   Proceedings recorded by electronic sound recording:
     transcript produced by transcription service.

25

1  of Central Florida, and on approximately December 2, 2008, he
2  boarded a bus shuttle at the college, the bus was owned and
3  operated by an employee of American Coach Lines of Orlando,
4  and he suffered a grave injury while riding that shuttle to
5  class.  He sustained very substantial injuries to his back,
6  in particular, and on June 19th, 2009, he did file a law suit
7  against American Coach Orlando which is pending in Florida,
8  and that complaint is attached to our motion, it serves two
9  causes of action.  One is for vicarious liability,
10 essentially it's a negligence action.

11        THE COURT:  Right.

12        MR. ROSSNER:  And the second cont is a statute that
13 is relevant to Florida, it's the Florida's dangerous
14 instrumentality doctrine.  Basically the bus is a dangerous
15 instrumentality, and it was operated by a Coach employee in a
16 negligent manner, so that's the second count.  And I'll just
17 join in with the comments made by Mr. Sullivan and reserve
18 rights to make a closing and to participate in any cross-
19 examination of any witnesses.

20        THE COURT:  All right.

21        MR. ROSSNER:  Thank you, Your Honor.

22        THE COURT:  Thank you, Mr. Rossner.  Mr. Teele.

23        MR. TEELE:  Thank you, Your Honor.  For the record
24 Jason Teele for the Debtors.  You know, I listened to Mr.
25 Sullivan's argument pretty closely and he gets a lot of it

1  right, but he misses the ultimate point. So let's talk about
2  what he got right before we talk about what's missing from
3  the argument. His reading of the insurance policies may well
4  be correct that National Union might have a direct obligation
5  to anybody who has a judgment claim under the policy. And he
6  might well be correct that National Union is acting in a
7  capacity almost as a surety with respect to folks that have
8  claims under the policy.

9           THE COURT: Yes.

10          MR. TEELE: I'm not sure that we want to dispute
11  that, I'm not sure that that's relevant to these motions.
12  But what the point that was missed is that these policies
13  undeniably on their face inarguably have a $5 million
14  deductible. There's no way around it. The policies speak
15  for themselves. The polices are in the record, we will move
16  them into evidence shortly. Each policy that is applicable
17  to each of these motions, the policies are substantially
18  identical among the three motions. The only differences are
19  it's the policy year for the year in which the accident
20  occurred with respect to each Movant. All three policies
21  here include a $5 million deductible. That $5 million
22  deductible includes defense costs. That $5 million
23  deductible is something that the company must pay or
24  reimburse to the insurance company if the insurance company
25  has to make any payments under the policy to a claimant.

1    Here's the point that's missed.  If the Debtors default in

2    their obligations to the insurance company, the insurance

3    company has a direct right to draw down on the letter of

4    credit.  There have been several letters of credit over the

5    last couple of years and they've increased in value.  They're

6    now in round numbers $39 million in favor of the insurance

7    carriers under these policies.

8         Now, I'm not going to concede the point, but there

9    may not be a point ever worth arguing that the insurance

10   company probably could draw down on that letter of credit

11   without coming back to Your Honor for prior approval because

12   of the body of case law that says they can do that.  I think

13   if we ever got there, we might be in front of Your Honor

14   asking for some relief, I'm not sure that we would get it.

15        THE COURT:  But when?  In other words, after they

16   paid any judgment.

17        MR. TEELE:  If they have to pay a judgment and they

18   make a demand on the Debtors for reimbursement of the

19   deductible and the Debtors tell the insurance carriers no,

20   the insurance carriers will draw down on the letter of

21   credit.  We might have something to say about that if the

22   automatic stay is still applicable.  Your Honor might have

23   something different to say about it, given the law of letters

24   of credit and property of the estate.

25        THE COURT:  Right.

1          THE COURT:  Yes.

2          MR. SULLIVAN:  So, Your Honor, I would respectfully

3    request that it be kept on for April, and let's try to work

4    around the scheduling issues.

5          THE COURT:  Well, here's what we'll do.  That's a

6    good suggestion.  First of all, if there is any possibility,

7    and I'm not suggesting there is, that the sale date will be

8    moved, we'll know closer to the 23rd whether or not that's

9    going to occur, which will then open the 23rd for the motions

10   to lift stay.  Why don't we schedule a teleconference for

11   Wednesday the 18th at 4:00 p.m., it's a status conference.

12   And at that point I think we'll have greater certainty where

13   matters are, where the discovery has played out and where the

14   sale hearing is playing out and whether or not further

15   submissions are even necessary.  Okay, Mr. Sullivan?

16         MR. TEELE:  That's, Your Honor, I'm sorry to do this

17   to you, but that's the auction.

18         THE COURT:  That's the auction, okay.  Then let's do

19   this on -- I don't think it'll be a very lengthy call.  Let's

20   do it at noon on the 17th.  All right, noon on the 17th.

21   This is a status conference, first of all where we are on the

22   sale, and where the parties are on the discovery that's taken

23   place.

24         MR. TEELE:  So the 17th of April at 4:00 p.m. is the

25   status call.

1              THE COURT:  At noon, I'm sorry, at noon, yes.

2              MR. TEELE:  At noon.  And at that point in time are

3    we expected to have made any progress on the discovery

4    because given the schedule going forward, my personal

5    suspicion confirmed by the reactions of everybody in Court

6    today when they heard the proposed dates, is we're going to

7    have to go dormant on the stay relief issues until after the

8    sale hearing.  So I don't believe that management, and

9    frankly, the lawyers are going to have any time, meaningful

10   amount of time to devote to these issues.  We're prepared for

11   this hearing, we're ready to go forward today.  Frankly, you

12   know, the whole point of filing for bankruptcy was to get

13   some breathing room from these exact kinds of actions, and

14   you know now our entire sale process is being put into

15   jeopardy by having to respond to these actions.  So I'm just

16   concerned that if we have to have a status conference on the

17   17th --

18             THE COURT:  Well, you know, it troubles me that a

19   public carrier has a $5 million deductible.  That may be a

20   business decision, but it certainly isn't a business decision

21   of people who get on those buses.  And these people got on

22   those buses and they were injured and I think they're

23   entitled to be heard.  So we're going to proceed as

24   suggested.  If you would like I will order discovery to be

25   completed by March the 30th.

1       MR. TEELE:  Your Honor, we'll go forward on the

2  17th.

3       THE COURT:  All right.  We'll have our telephone

4  conference on the 17th, status conference to determine when

5  we are next are heard, okay, at noon, and discovery should be

6  taking place in the meantime.

7       MR. TEELE:  Now earlier Your Honor said that April

8  13th would be the discovery cutoff.  Is that not the case

9  anymore?  We should be making progress as you just said but -

10  -

11       THE COURT:  The 13th is fine, I thought you were

12  concerned, you were mentioning that that was the bid

13  deadline.

14       MR. TEELE:  Well, that's why I'm asking because I

15  just want to make sure we're clear.  If we're having a status

16  conference on the 17th and Your Honor just commented that we

17  should be making progress on the discovery by then, that's

18  fine, we'll do our best.  If Your Honor is saying that we

19  have to have discovery completed by the 13th, that's a

20  different thing.

21       THE COURT:  Well, Mr. Teele, if you want to have a

22  sale hearing on the 23rd you will cooperate with discovery

23  before that date.  Okay?

24       MR. TEELE:  Very well.

25       THE COURT:  Otherwise, I'll hear the lift stay