**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BIG LOTS, INC., *et al.,1* | ) | Case No.  24-11967 (JKS) |
| | ) | |
| | ) | Hearing Date: January 21, 2025 |
| | ) | Response Deadline: January 14, 2025 |
| Debtors. | ) | |

**MOTION OF BIG MIFL2 OWNER LLC FOR AN ORDER (I) COMPELLING**
**DEBTOR TO TIMELY PERFORM LEASE OBLIGATIONS UNDER**
**11 U.S.C. § 365(d)(3) AND (II) ALLOWING, AND COMPELLING**
**PAYMENT OF ADMINISTRATIVE CLAIM UNDER 11 U.S.C. §503(b)(1)(A)**

Big Mifl2 Owner LLC (the "Lessor"), by and through his counsel, moves this

Court for an Order Compelling (i) Big Lots, Inc. and (ii) Debtor/Tenant, BLBO Tenant, L.L.C.

(the "Debtors") to timely perform lease obligations under 11 U.S.C. § 365(d)(3) and (ii)

allowing, and compelling the Debtor to pay, administrative expense claim under 11 U.S.C. §

503(b)(1)(A) (the "Motion") and states as follows:

I.    **FACTUAL BACKGROUND**

1.        On September 9, 2024 (the "Petition Date"), the Debtors filed voluntary

bankruptcy petitions pursuant to 11 U.S.C. §§ 101 *et seq.* (Docket No. 1).

---

1 The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective
employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots
Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores -
PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182);
CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400);
GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC
(9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin -
Granville Road, Columbus, OH 43081.

## THE LEASE

2.        The Lessor, Big Mifl2 and BLBO Tenant, LLC, ("Tenant") are parties to a lease (the "Lease") dated effective as of August 25, 2023, and attached hereto as Exhibit "A" of nonresidential real property located at 18325 South Dixie Highway, Miami, Florida 33517 (the "Premises"). Notably, the performance of all the Tenant's obligations under the Lease and the Post-Closing Agreement are guaranteed by Big Lots, Inc. The Lease Agreement between Big Mifl2 and the Tenant is part of the acquisition by Big Mifl2 of the Premises from Blue Owl, Inc.

3.        The primary term of the Lease was for twenty (20) years, commencing on August 25, 2023. *See* Lease § 1.H., p. 2.

4.        The Lease is a "triple-net" lease. *See* Lease at § 6. C.


### 1.        Quarterly Base Rent Obligation

5.        The Quarterly Base Rent[2] during the first year of the Lease was $108,794.74. *See* Lease at Exhibit A to the Lease. The Quarterly Base Rent increases annually as set forth on Exhibit A. Quarterly Base Rent is payable on the first day of the applicable quarter. *See* Lease, § 5.A., p.14.

### 2.        Additional Rent Obligations

6.        In addition, the Debtor is obligated to "pay, as additional rent, all costs, charges, obligations, assessments, and expenses of every kind and nature against or relating to the

---

2 Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Lease.

Premises . . ." *See* Lease, § 6. C., p. 16.   The Lease provides that "[d]uring the Term, Tenant shall promptly pay, or cause to be paid, on a cash basis when due to the applicable taxing authority one hundred percent (100%) of all taxes." Lease at 7.A. p. 17.   The Lease further provides that "[if] Landlord receives a bill for Real Estate Taxes, Landlord shall provide the bill for each installment of Real Estate Taxes to Tenant promptly upon Landlord's receipt of such bill.   **Tenant shall pay the Real Estate Taxes set forth on such bill prior to when due."**   Lease at 7.B., p. 18. (Empasis added).

7.       On November 1, 2024, the Debtors became obligated under the Lease to pay taxes in the amount of $187,083.70.  Lessor promptly provided a copy of the tax bills to Debtor by email and Federal Express.  While the Debtors attempted to negotiate a reduction in the amount of the taxes, Lessor paid the taxes in accordance with Section 7.B. of the Lease. The tax bills and Lessor's check in payment thereof upon Debtors' refusal to pay the taxes due are attached as Exhibit "B."

8.       Based upon the representations made to the Court on December 19, 2024, the Debtors apparently paid other real estate tax bills and other administrative expenses without considering the rights of other similarly situated creditors.

### 3.      Attorneys' Fees

9.    Sections 23 and 24 of the Lease entitled the Lessor to recover its fees, costs, and expenses associated with the Debtor's breach of the Lease and/or with respect to actions taken in the Debtors' bankruptcy to protect the Lessor's interests.  *See* Lease at §§ 23 and 24, p. 46-47. The outstanding amounts of accrued attorneys' fees, costs and expenses total $119,551.00 plus attorneys' fees, costs and expenses to be incurred.

**B.      Debtor's Rejection of the Lease**

10.      On October 18, 2024, the Debtor delivered to the Lessor the keys to the Property.  In its letter to Lessor transmitting the keys to the Premise, Big Lots stated: "please find enclosed the keys to the premises along with the alarm code and EMS instruction. Tent hereby returns possession of the premises to the landlord as of November 30, 2024 at 11:59pm." Exhibit "D."

11.      On October 30, 2024, the Debtor filed its Fifth Notice of Rejection and Abandonment of Personal Property (the "Rejection Motion") [Docket No. 666].

## II.      RELIEF REQUESTED

**A.      Relief under Section 365(d)(3)**

12. Lessor requests that this Court enter an Order compelling the Debtor to pay to Lessor, as required by Section 365(d)(3) of the Bankruptcy Code, the sum of $97.133 (plus attorneys' fees), which is broken down as follows:

> a.      Stub Rentt:  $97,133.90;
>
> b.      Additional Rent/Real Estate Taxes:  $187, 083.79 (*see* Lease at §§ 6.C.); and
>
> c.      Attorneys' Fees:  $119,551.00.
>
> Total: $403,768.69

**B.      Relief under Section 503(b)(1)(A)**

13. Lessor also seeks allowance, and payment, of its administrative expense claim in the amount of $187,083.70 under 11 U.S.C. § 503(b)(1)(A), which is broken down as follows:

a.      Real estate taxes:                    $187, 083.79

Total $187,083.79

## III.   BASIS FOR RELIEF REQUESTED

### A.   Lessor's Section 365(d)(3) Claim

14. Section 365(d)(3) of the Bankruptcy Code provides, in relevant part, that the trustee or

debtor-in-possession "shall timely perform all the obligations of the debtor . . . arising from

and after the order for relief under any unexpired lease of nonresidential real property, until

such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title."  11 U.S.C.

§ 365(d)(3).

15. The purpose of Section 365(d)(3) has been described as follows:

> This subtitle contains three major substantive provisions which are intended to
> remedy serious problems caused shopping centers and their solvent tenants by the
> administration of the bankruptcy code.... A second and related problem is that
> during the time the debtor has vacated space but has not yet decided whether to
> assume or reject the lease, the trustee has stopped making payments under the
> lease.  In this situation, the landlord is forced to provide current services--the use
> of its property, utilities, security, and other services-- without current payment.
> No other creditor is put in this position.  In addition, the other tenants often must
> increase their common area charge payments to compensate for the trustee's
> failure to make the required payments for the debtor.  This bill would lessen these
> problems by requiring the trustee to perform all the obligations of the debtor
> under a lease of nonresidential real property at the time required in the lease.  This
> timely performance requirement will insure that debtor-tenants pay their rent,
> common area, and other charges on time pending the trustee's assumption or
> rejection of the lease.

H.R.Conf.Rep. No. 882, 98th Cong., 2d Sess. (1984), reprinted in 1984 U.S.C.C.A.N. 576.

Thus, the legislative history accompanying Section 365(d)(3) "'demonstrates a concern about the

unfairness which occurs when a landlord is forced, in effect, to extend credit to the bankruptcy

estate prior to assumption or rejection of the lease.'  Norton, BANKRUPTCY LAW AND PRACTICE

2D § 39:42 (1983)."

16.     Interpreting Section 365(d)(3), the Third Circuit held that "[t]he clear and

express intent of Section 365(d)(3) is to require the trustee to perform the lease

in accordance with its terms." *In re Montgomery Ward Holding Corp.*, 268 F.3d

205 (3d Cir. 2001).

17.     The Third Circuit declared that an "obligation" is "something that one is legally required

to perform under the terms of the lease" and that such an obligation "arises" "when one

becomes legally obligated to perform." *Montgomery Ward*, 268 F.2d at 209.  The Court then

declared that Section 365(d)(3) requires a debtor in possession to "timely perform"

obligations that fall due post-petition and prerejection, regardless of when the obligation

accrued.  *Id*. (requiring debtor in possession to immediately pay taxes that accrued pre-

petition where the taxes were due post-petition, pre-rejection).

18.     The Third Circuit has also held that a Debtor cannot prorate Lease obligations that fall due

post-petition, prerejection.  *See In re Federal-Mogul Global, Inc.,* 222 Fed.Appx. 196, 199

(3d Cir. March 15, 2007) ("all sums due pre-rejection under the terms of that lease are owing

irrespective of whether the sums otherwise can be prorated.").

### 1.     Base Rent Obligation

19.     Pursuant to Section 365(d)(3), the Debtor was required to timely perform its obligation to

pay rent that feel due on September 1, 2024, under Section 4.2 of the Lease.  *See*

*Montgomery Ward*, 268 F.2d at 209.

20.     Accordingly, pursuant to Section 365(d)(3), the Lessor is entitled to immediate payment

of Quarterly Base Rent in the amount of $97,133.90.

### 2.    Additional Rent (Real Estate Tax Obligation)

21.    In *Montgomery Ward*, the debtor had a commercial real estate lease which required it to pay its landlord real estate taxes in addition to base rent. *Id.* at 207.  Four days after the bankruptcy filing, the landlord presented an annual tax bill to the debtor and demanded full payment even though most of the taxes had accrued pre-petition. *Id.*  The debtor tendered only a prorated amount equal to its post-petition occupancy. *Id. See also, In re Montgomery Ward*, Bankruptcy Case No. 00-4667, Civil. Action No. 02-368-JJF (D. Del. March 28, 2003)(adopting the billing rate approach).

22.    The Third Circuit, reversing the Bankruptcy Court and District Court, required the debtor to pay the full year's taxes, regardless of when such taxes accrued.  The Court held that the Congressional intent behind Section 365(d)(3) required a debtor to perform all leasehold obligations as they came due. *Id*. at 209*; see also In re MUMA Serv*., 279 B.R. 478, 487 (Bankr. D.Del. 2002) (MFW).

23.    Accordingly, as the real estate tax obligation arose after the Petition Date and prior to rejection, Section 365(d)(3) requires the Debtor to pay the entire amount of real estate taxes, which total $ 187,083.79.

### 3.    Attorneys' Fees

24.    The Supreme Court has held that, "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Raleigh v. Ill. Dept. of Revenue,* 530 U.S. 15, 20 (2000).  Accordingly, the Supreme Court has instructed that state law claims for attorneys' fees will be allowed in bankruptcy unless they are expressly disallowed by the

Bankruptcy Code.  *See Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.,* 127 S.Ct. 1199, 1206 (2007).

25.    Here, the Lease entitles the Lessor to recover its attorneys' fees incurred because of the Tenant's defaults under the Lease and/or to enforce the Lessor's rights in this bankruptcy case.  *See* Lease at §§ 23 and 24.  Thus, the Lessor is also entitled to recover its attorneys' fees under Section 365(d)(3).  *E.g., In re Crown Books Corp.,* 269 B.R. 12, 17-19 (Bankr. D.Del. 2001) (MFW) (awarding attorneys' fees in amount of twenty five percent (25%) of arrearages as lease obligation under Section 365(d)(3)); *In re Cukierman,* 242 B.R. 486, 490 (9th Cir. BAP 1999) (lessor is entitled to attorneys' fees under Section 365(d)(3*)); In re Pacific Sea Farms, Inc.,* 134 B.R. 11, 15 (Bankr. D.Haw. 1991) (awarding attorneys' fees to lessor); *In re Narragansett Clothing Co.,* 119 B.R. 388, 391-92 (Bankr. D.R.I. 1990) (same); *In re Revco D.S., Inc.,* 109 B.R. 264, 272-73 (Bankr. N.D.Ohio 1989) (same); *In re Gillis*, 92 B.R. 461, 465 (Bankr. D.Haw. 1988) (same).

### B.    Lessor's Section 503(b)(1)(A) Claim

#### 1.    Allowance of Section 503(b)(1)(A) Claim

26.    Pursuant to Section 503(b)(1)(A) of the Bankruptcy Code, the "actual, necessary costs and expenses of preserving the estate" are entitled to payment as administrative expenses.  11 U.S.C. § 503(b)(1)(A).  Section 503(b)(1)(A) encompasses costs such as outlays for "repairs, upkeep, rent, taxes and 'other costs incidental to protection and conservation' of the estate." *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 108 (3d Cir.), *aff'd,* 488 U.S. 852 (1988).

27.    Although Section 365(d)(3) does not require a debtor to "timely perform" lease obligations that are due outside of the post-petition, pre-rejection period, a lessor has a claim

under Section 503(b)(1)(A) for such obligations to the extent that they accrued during that post-petition, pre-rejection period.  *See In re HQ Global Holdings, Inc*., 282 B.R. 169, 173 (Bankr. D.Del. 2002) (lessor has claim under Section 503(b)(1)(A) for use of lease premises during post-petition, pre-rejection period where obligation is due outside of post-petition, prerejection period and, therefore, not immediately payable under Section 365(d)(3)); *see also In re MUMA*, 279 B.R. at  490 (lessor has claim under Section 503(b)(1)(A) for lease post-petition obligations that due outside Section 365(d)(10) [now Section 365(d)(5)] period); *In re Russell Cave Co., Inc.*, 247 B.R. 656, 659-60 (Bankr. E.D.Ky. 2000) (same).

28.     Whether or not a debtor earns a profit from the use of a lessor's property is irrelevant when determining the benefit conferred upon the debtor's estate under Section 503(b)(1)(A). *See In re Patient Educ. Media, Inc.*, 221 B.R. 97, 103 (Bankr. S.D.N.Y. 1998).  The contract rate is presumptively the appropriate rate for determining the benefit conferred upon a debtor's estate under Section 503(b)(1)(A).  *See id*. at 104.

29.     Accordingly, the Lessor is entitled to allowance of a Section 503(b)(1)(A) administrative expense claim for CAM charges, real estate taxes, and other sums under the Lease that accrued during the post-petition, pre-rejection period.  Those lease obligations total as follows:

|   | | |
|---|---|---|
| a. | Real estate taxes: | $187,093.00 |
|   | Total: | $187,093.00 |

### 2.     Payment of Section 503(b)(1)(A) Claim

30.     While Section 503(b) provides for the *allowance* of administrative claims, it does not specifically provide for the *timing of payment* on such claims.  *See In re Global Home Prods., LLC*, 2006 WL 3791955, at *3 (Bankr. D.Del. Dec. 21, 2006) (Gross, J.) ("Section

503 does not specify a time for payment of these expenses"); *HQ Global*, 282 B.R. at 173

("Section 503 . . . does not address the question of when a claim for administrative expenses

is to be paid.").

31.     "[T]he timing of the payment of an administrative expense claim is left to the discretion of

the court". *See Global Home*, 2006 WL 3791955, at *3; *In re Chi-Chi's, Inc.,* 305 B.R. 396,

401(Bankr. D.Del. 2004) (Case, J.); *In re Garden Ridge Corp.*, 323 B.R 136, 143 (Bankr.

D.Del. 2005) (Kornreich, J.) ("Courts have discretion to determine when an administrative

expense will be paid."); *HQ Global*, 282 B.R. at 173.

32.     In determining whether to exercise that discretion, courts typically consider the particular

needs of each administrative claimant and weigh the prejudice to the debtor against the

hardship to the claimant. *See Global Home,* 2006 WL 3791955, at *3; *Garden Ridge*, 323

B.R. at 143; *see also HQ Global*, 282 B.R. at 174.

33.     Considering the parties' respective financial conditions, the Lessor requests that this Court

order the Debtors immediately to pay the Lessor's claim under Section 503(b)(1)(A).

**IV.     RESERVATION OF RIGHTS**

34.      The Lessor reserves all its rights and remedies, including without limitation, the right to

assert additional claims under Sections 502, 503 and 365 of the Bankruptcy Code, including

amounts related to public safety hazards.

**V.     NOTICE OF MOTION**

35.     Pursuant to Del.Bankr.LR. 2002-1(b), counsel for the Lessor has served this Motion

upon (i) counsel for the Debtor, (ii) counsel for the Official Committee of Unsecured

Creditors, (iii) the United States Trustee and (iv) all entities requesting notice pursuant to

Fed.R.Bankr.P. 2002(i).

VI.    **CONCLUSION**

WHEREFORE, the Lessor requests that this Court enter an Order (i) compelling

the Debtor to pay $216,684.90 in outstanding Lease obligations pursuant to Section 365(d)(3);

(ii) allowing, and compelling the Debtor to pay, $187,083.79 in Lease obligations under 11

U.S.C. § 503(b)(1)(A); and (iii) granting such further relief to Lessor as is appropriate.

Dated:  January 7, 2025
Wilmington, Delaware

Respectfully submitted,

JMCARBIN0 LAW

By:      /s/ *Jeffrey M. Carbino*
         Jeffrey M. Carbino (No. 4062)
         1007 N. Orange Street, Suite 420
         Wilmington, DE 19801
         Telephone: (610) 639-3695
         E-mail: jcarbinolaw@outlook.com

         Counsel for Big Milf2 Owner LLC

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BIG LOTS, INC., *et al.*, | ) | Case No.  24-11967 (JKS) |
| | ) | |
| | ) | |
| Debtors. | ) | |

## ORDER (I) COMPELLING DEBTOR TO TIMELY PERFORM LEASE OBLIGATIONS UNDER 11 U.S.C. § 365(d)(3) AND (II) ALLOWING, AND COMPELLING PAYMENT OF, ADMINISTRATIVE CLAIM UNDER 11 U.S.C. §503(b)(1)(A)

Upon consideration of the Motion of Big Milf2 Owner LLC ("Lessor") for An Order

(i) Compelling Big Lots, Inc and BLBO Tenant , LLC (the "Debtors") to Timely Perform Lease

Obligations under 11 U.S.C. § 365(d)(3) and (ii) Allowing, and Compelling the Debtor to Pay,

Administrative Expense Claim under 11 U.S.C. § 503(b)(1)(A) (the "Motion") and any timely

response in opposition to the Motion, and after notice and an opportunity for a hearing pursuant

to 11 U.S.C. § 102(1), and for the reasons set forth in the Motion and on the record, it is hereby

ORDERED THAT, the Motion is granted;

ORDERED THAT, pursuant to 11 U.S.C. § 365(d)(3), within three (3) days after this

Order is entered on the docket, the Debtors shall pay to Lessor the sum of $$216,684.90 ; and it

is further

ORDERED THAT, Lessor has an administrative expense claim in the amount of

$187,083.79 under 11 U.S.C. § 503(b)(1)(A).  Within three (3) days after this Order is entered on

the docket, the Debtor shall also pay that amount to Lessor

ORDERED THAT, this Court shall retain jurisdiction to interpret and enforce this Order.

Dated: _____, 2025
Wilmington, Delaware

BY THE COURT:

_____
HONORABLE J. KATE STICKLES
U.S. BANKRUPTCY JUDGE