**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| Big Lots, Inc., et. al., | : | Case No. 24-11967 (JKS) |
| Debtors. | : | (Jointly Administered) |
| | : | Obj. Deadline: January 16, 2025 |
| | : | Hearing Date: January 21, 2025 @ 1:00 p.m. |

**SERTA SIMMONS BEDDING, LLC's MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM**

Serta Simmons Bedding, LLC, and its affiliates and related companies (collectively, "SSB") by its undersigned attorneys, files this Motion for Allowance and Payment of Administrative Expense Claim, and in support hereof states as follows:

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

2. This is a core proceeding pursuant to 28 U.S.C. §157(b).

3. SSB consent to the entry of final orders or judgments of the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4. The statutory predicates for relief requested in this Motion are sections 503(b) and 507(a)(2) of the Bankruptcy Code.

**FACTUAL BACKGROUND**

5. SSB is a mattress and related mattress products manufacturing company. SSB sold mattresses and related mattress products to Debtors.

1

6. On September 9, 2024 (the "Petition Date") the Debtors commenced the above-referenced jointly administered bankruptcy cases under Chapter 11 of the Bankruptcy Code.

7. On the Petition Date, the Debtors filed that certain *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Pay Prepetition Critical Vendor Claims, Foreign Vendor Claims, and 503(b)(9) Claims in the Ordinary Course of Business, (II) Granting Administrative Expenses Status to Debtors' Undisputed Obligations to Vendors Arising From Post Petition Delivery of Goods Ordered Prepetition and Authorizing Debtors To Pay Those Obligations in the Ordinary Course of Business, (III) Authorizing Debtors to Return Goods, (IV) Authorizing Debtors to Pay Certain Prepetition Claims of Lien Claimants, and (V) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers* [D.I. 11] (the "Critical Vendor Motion"). Per the Critical Vendor Motion, in order to preserve the going concern value of the estate, the Debtors requested authority to pay the prepetition claims of certain vendors, suppliers and service providers in part in recognition of the importance of Debtors' relationships with such vendors, suppliers, and service providers and their desire that the bankruptcy cases have as little effect on the Debtors' ongoing businesses and operations as possible.

8. As the Debtors explained in the Critical Vendor Motion:

> The Debtors strongly believe that the uninterrupted supply of Goods and Services, on Customary Trade Terms, and the continuing support of their customers are imperative to the Debtors' ongoing businesses and operations and the preservation and maximization of the value of the Debtors' estates. The continued availability of trade credit, in amounts and on terms consistent with those that Debtors have worked hard to obtain over time, is also clearly advantageous to the Debtors, as it allows the Debtors to maintain and enhance necessary liquidity and to focus on retuning to profitability and preserving and maximizing the value of the Debtors. (Critical Vendor Motion at 20).

9. Also on the Petition Date, the Debtors filed a *Motion to Approve Debtor in Possession Financing* [D.I. 19] (the "DIP Financing Motion").

10. On September 10, 2024, the Bankruptcy Court entered an interim order [D.I. 106] (the "Interim Critical Vendor Order"), *inter alia*, authorizing the Debtors, under certain conditions, to pay prepetition claims of certain vendors, suppliers, and service providers.

11. On October 9, 2024, the Court entered a final order [D.I. 463] (the "Final Critical Vendor Order"), *inter alia*, authorizing the Debtors to pay prepetition claims of certain vendors on a final basis. The Final Critical Vendor Order provides, *inter alia*:

> The Debtors' Prepetition Order Vendors shall be granted administrative expense claims **with priority status**, pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, with respect to those obligations of the Debtors for Goods delivered to and accepted by the Debtors on or after the Petition Date under Prepetition Orders that the Debtors determine are valid claims against the Debtors estates. (emphasis added).

12. On October 22, 2024, the Court entered the Final DIP Order [D.I. 584].

13. SSB and Debtors entered into a Critical Vendor Agreement (the "SSB CV") attached hereto as **Exhibit B** and dated September 17, 2024 providing, *inter alia*, that Debtors would pay for post-petition goods provided by SSB on 2% net thirty (30) days or net forty-five (45) days. A copy of the SSB CV is attached hereto as Exhibit A.

14. The SSB CV provides that, "[u]pon a Payment Default with respect to goods delivered post-petition, Vendor shall have the right to assert a claim under Sections 503(b) and 507(a)(2) of the Bankruptcy Code equal to the amount of all goods delivered to Company post-petition (less any amounts paid to Vendor for such goods). Company agrees not to contest the claims described in the foregoing or to assert any preference claim against Vendor … ."

15. SSB received purchase orders from Debtors before and after the Petition Date and fulfilled those orders post-petition in the ordinary course of business.

16. Debtors placed post-petition orders for goods from SSB which were delivered but were not paid for by Debtors. SSB is therefore a post-petition trade creditor of Debtors.

17. Post-petition SSB delivered goods with a purchase price and value of no less than $3,614,009.76 (the "Post-Petition Invoices"). Debtors also failed to pay the total amount of SSB's pre-petition administrative claim, despite the SSB CV, in the amount of $516,726.35. Therefore, the total amount of SSB's administrative claim is $4,130,736.11, plus attorneys' fees and interest thereon ("SSB Administrative Claim"). SSB filed a Proof of Claim in this case attaching a summary of the unpaid invoices owed by Debtors to SSB.

18. SSB seeks allowance and immediate payment of the SSB Administrative Claim.

**RELIEF REQUESTED AND BASIS THEREFORE**

19. SSB requests that this Court enter an order that allows the SSB Administrative Claim as an administrative claim under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and that requires immediate payment thereof and enforces Debtor's obligations under the SSB CV.

20. Section 503(b) of the Bankruptcy Code provides, *inter alia*, that allowed administrative expense claims exist for the "actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1)(A). Section 507(a) of the Bankruptcy Code provides that administrative expense claims that are allowed under section 503(b) of the Bankruptcy Code have second priority. 11 U.S.C. § 507(a)(2).

21. "An administrative expense claim is entitled to priority under Section 503(b)(1)(A) if: (1) there was a post-petition transaction between the claimant and the estate, and (2) those expenses yielded a benefit to the estate." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741-42 (3d Cir. 2021)(internal quotations omitted). "A main purpose of granting administrative priority to certain expenses is to incentivize creditors to continue doing business with a debtor." *In re Juvennelliano*, 464 B.R. 651, 655 (Bankr. D. Del. 2011).

22. Claims arising from goods purchased in the ordinary course of business by a debtor-in-possession are generally entitled to administrative priority. See e.g. *In re Thatcher Glass Corp.*, 59 B.R. 797, 799 (Bankr. D. Conn. 1986); see also *In re Smurfit-Stone Container Corp.*, 425 B.R. 735, 741 (Bankr. D. Del. 2010 citing *In re Bethlehem Steel Corp.*, 291 B.R. 260, 264 (Bankr. S.D.N.Y. 2003)("There is an initial assumption that, where a contract exists, the contractual rate is the reasonable value of the goods or services provided to the estate.").

23. Since the Petition Date, the Debtors have stocked their stores with over $4 million dollars in inventory provided by SSB but for which Debtors did not pay. The goods provided by SSB to Debtors have been "vital" and necessary for maintaining the value of the Debtors' estates. SSB's shipment of goods to Debtors post-petition has been critical to the Debtors' businesses during this bankruptcy, providing direct and substantial benefits to the estates. In fact, Debtor agreed that SSB would have and the Final Critical Vendor Order also provided that SSB is entitled to an administrative expense claim *with priority* for all goods delivered to the Company post-petition.

24. The SSB Administrative Claim is therefore entitled to administrative expenses priority pursuant to sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code because the claim was incurred by the Debtors' estates after the Petition Date, pursuant to the SSB CV and there was a benefit to the estate from SSB's provision of post-petition goods. The costs of these Chapter 11 Cases should not be involuntarily foisted upon SSB and other trade creditors.

25. This Court should also require the SSB Administrative Claim to be paid immediately. *In re Garden Ridge Corp.*, 323 B.R. 136,143 (Bankr. D. Del. 2005)("In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors."); *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del.

2002 (In making this determination, one of the chief factors courts consider is the bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets. ) *In re NE OPCO, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013) ("Courts will also consider the particular needs of each administrative claimant and the length and expense of the case's administration."); *In re Continental Airlines*, 146 B.R. 520, 531 (Bankr. D. Del. 1992)("To qualify for exceptional immediate payment, a creditor must show that 'there is a necessity to pay and not merely that the Debtor has the ability to pay.'")

26. There is no prejudice to the Debtors in requiring immediate payment of SSB's administrative expense claim. The Debtors have authorization and a DIP and cash collateral budget permitting them to pay more than $50 million in operating disbursements per week, which amount includes post-petition delivery claims. [D.I. 431; 584]. Thus the Debtors have already decided that, in their business judgment, the prejudice to the Debtors and other creditors arising from immediate payment of post-petition delivery claims is outweighed by the necessity of business continuity. See Critical Vendor Motion. The Debtors budgeted and set aside sufficient funds to pay post-petition delivery claims and the Court has ruled that payment of post-petition delivery claims is a proper exercise of the Debtor's business judgment. Despite having sufficient cash on hand and/or availability under the DIP ABL Facility to do so, Debtors have failed to timely pay SSB for post-petition deliveries/goods.

27. SSB will suffer financial hardship if its administrative claim is not paid immediately. SSB will suffer financial distress if its administrative claim is not paid; as it provided over $4 million in product post-petition for which it has not been paid. At the same time, other administrative claimants have or are receiving payment of their claims to the detriment of SSB because the Debtors' estates are administratively insolvent to the tune of over $250 million dollars.

28. SSB further submits that there would be no meaningful prejudice to other creditors if SSB is paid immediately on its administrative claim as it is entitled to payment in full on its administrative claim and other administrative claims have or will already have been paid and there is no reason SSB should be treated any differently than those administrative creditors or for those administrative creditors to be paid on the backs of trade creditors such as SSB. Further, the Final Critical Vendor Order provided that Critical Vendors shall have an administrative expense claim *with priority*.

29. SSB relied upon the Debtor's post-petition DIP financing and the budgets approved by the Court in determining whether to sell goods to the Debtors. The Debtors continued to place orders for product with SSB even after the Debtor knew the sale to Nexus would not go through and that the estates are administratively insolvent. In fact, Debtors are conducting going out of business sales and ostensibly selling the very mattress products SSB supplied to Debtors but for which it was not paid. Same justifies granting and requiring immediate payment of the SSB Administrative Claim.

WHEREFORE, SSB respectfully requests that this Court enter an order that, substantially the form attached hereto as **Exhibit A** (i) allowing the SSB Administrative Claim in the amount of $4,130,736.11, plus attorneys' fees and interest thereon (in amounts to be shown prior to or at hearing on this Motion) as an administrative expenses priority claim pursuant to Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, (ii) compelling the Debtors to pay the SSB Administrative Claim in full within seven (7) days of the date of an order entered hereon or earlier; and (iii) granting SSB such other and further relief as is just and equitable.

Dated: January 9th, 2025  
    Wilmington, DE

Respectfully submitted,

**WERB & SULLIVAN**

*/s/ Brian A. Sullivan*
Brian A. Sullivan (DE Bar No. 2098)
1225 N. King Street, Suite 600
Wilmington, DE 19801
Phone: 302-652-1100
Fax: 302-652-1111
bsullivan@werbsullivan.com

-and-

Beth E. Rogers
**ROGERS LAW OFFICES**
 Georgia Bar No. 612092
9040 Roswell Road, Suite 1950
Atlanta, Georgia 30350
770-685-6320 phone
678-990-9959 fax
distribution@berlawoffice.com

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| Big Lots, Inc., et. al., | : | Case No. 24-11967 (JKS) |
| Debtors. | : | (Jointly Administered) |
| | : | Obj. Deadline: January 16, 2025 |
| _____ | : | Hearing Date: January 21, 2025 @ 1:00 p.m. |

## NOTICE OF MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM
## PURSUANT TO 11 U.S.C. 503(b)(1)(A)

**PLEASE TAKE NOTICE** that, on January 9, 2025, Serta Simmons Bedding, LLC filed a Motion for Allowance and Immediate Payment of Administrative Claim Pursuant to 11 U.S.C. 503 (b)(1)(A) (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion are required to be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801 by January 16, 2025, at 4:00 p.m. (ET)(the "Objection Deadline").

**A HEARING ON THE MOTION WILL BE HELD ON** January 21, 2025 at 1:00 p.m. **(ET) BEFORE THE HONORABLE J. KATE SICKLES U.S. BANKRUPTCY JUDGE, U.S. BAKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 NORTH MARKET STREET, 5th FLOOR, COURTROOM NO. 6, WILMINGTON, DELAWARE 19801**.

**PLEASE TAKE FURTHER NOTICE, IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS OTICE, THE BANKRUPTCY COURT MAY GRANT THE RELEIF REQUESTED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.**

Dated: January 9th, 2025
       Wilmington, DE

**WERB & SULLIVAN**

*/s/ Brian A. Sullivan*
Brian A. Sullivan (DE Bar No. 2098)
1225 N. King Street, Suite 600
Wilmington, DE 19801
Phone: 302-652-1100
Fax: 302-652-1111
bsullivan@werbsullivan.com

-and-

Beth E. Rogers
**ROGERS LAW OFFICES**
 Georgia Bar No. 612092
9040 Roswell Road, Suite 1950
Atlanta, Georgia 30350
770-685-6320 phone
678-990-9959 fax
distribution@berlawoffice.com

**EXHIBIT A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| Big Lots, Inc., et. al., | : | Case No. 24-11967 (JKS) |
| Debtors. | : | (Jointly Administered) |
| | : | Obj. Deadline: January 16, 2025 |
| | : | Hearing Date: January 21, 2025 @ 1:00 p.m. |

**ORDER GRANTING SERTA SIMMONS BEDDING, LLC's MOTION FOR
ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM**

Upon consideration of the *SERTA SIMMONS BEDDING, LLC's MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM*; and the Court having determined that the legal and factual bases set forth in the Motion establish sufficient cause for the relief granted herein; accordingly,

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED;

2. Serta Simmons Bedding, LLC is granted an allowed Administrative Claim in the amount of $4,130,736.11, plus attorneys' fees and interest thereon (in amounts to be shown prior to or at hearing on this Motion) as an administrative expenses priority claim pursuant to Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code.

3. The Debtors be compelled to pay the SSB Administrative Claim in full within seven (7) days of the date of an order entered hereon or earlier

**EXHIBIT B**

## Big Lots, Inc.

September 17, 2024

TO: Serta Simmons Bedding, LLC
2451 Industry Avenue
Doraville, GA 30360

Dear Valued Vendor:

As you are aware, Big Lots, Inc. and certain of its affiliates (collectively, the "**Company**") commenced chapter 11 proceedings in the United States (collectively, the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") on September 9, 2024 (the "**Petition Date**"). On the Petition Date, the Company requested the Bankruptcy Court's authority to pay the prepetition claims of certain vendors, suppliers, and service providers in part in recognition of the importance of the Company's relationship with such vendors, suppliers, and service providers and its desire that the Chapter 11 Cases have as little effect on the Company's ongoing businesses and operations as possible. On September 10, 2024, the Bankruptcy Court entered an interim order (the "**Order**") authorizing the Company, under certain conditions, to pay prepetition claims of certain vendors, suppliers, and service providers that agree to the terms set forth below and to be bound by the terms of the Order. A copy of the Order is enclosed.

In order to receive payment on account of prepetition claims, you must sign this agreement ("**Vendor Agreement**") and agree to continue to supply goods and services to the Company based on "**Customary Trade Terms.**" In the motion seeking the Bankruptcy Court's entry of the Order, Customary Trade Terms are defined as the normal and customary trade terms, practices, and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability, and other applicable terms and programs) that were most favorable to the Company and in effect between you and the Company in the one-year period prior to the Petition Date, or such other trade terms and conditions as you and the Company agree upon.

For purposes of administration of this vendor payment program as authorized by the Bankruptcy Court (the "**Vendor Payment Program**"), you and the Company both agree to the following:

1.      The agreed-upon amount of your prepetition claims (net of any subsidies, setoffs, rebates, credits, or discounts) that the Company has agreed to pay in recognition of your critical vendor status, is $3,940,000 (the "**Vendor Settled Claim**"), of which amount $3,456,755 is with respect to claims arising under section 503(b)(9) of the Bankruptcy Code. Company agrees that Vendor shall not be required to file any proof of claim, motion or other pleading with the Bankruptcy Court in order to assert the 503(b)(9) Claim.

2.      The Company agrees to provisionally pay you the amount of your Vendor Settled Claim within thirty (30) days of execution of this Vendor Agreement. Any prepetition claims you may have shall be reduced by the amount of the Vendor Settled Claim set forth in paragraph 1 of this Vendor Agreement; *provided* that upon full payment of the Vendor Settled Claim, Vendor

shall have no remaining claims under Section 503(b)(9) of the Bankruptcy Code. As used in this Agreement, "Remaining Pre-Petition Claims" shall mean any prepetition claims of the Vendor that are not paid or settled in accordance with this Agreement.

3. As long as the Vendor Settled Claim is timely paid, you agree to supply pos-petition goods or services to the Company in accordance with the Customary Trade Terms, which are 2% net thirty (30) days or net forty-five (45) days ("SSB Customary Trade Terms"). Company agrees that the pre-petition orders that were shipped by SSB to Company post-petition will be paid on SSB Customary Trade Terms.

4. All provision of this Agreement waiving any rights of Vendor will be null, void and unenforceable to the extent Company fails to timely pay (i) the Vendor Settled Claim in accordance with the terms; or (ii) for any post-petition goods pursuant to SSB Customary Trade Terms (each of (i) and (ii), a "Payment Default"). Upon a Payment Default with respect to the Vendor Settled Claim, Vendor shall have the right to assert a claim under section 503(b)(9) of the Bankruptcy Code in the amount of $3,500,000 and a pre-petition claim in the amount of $1,872,188 (less any amounts paid hereunder). Upon a Payment Default with respect to goods delivered pos-petition, Vendor shall have the right to assert a claim under Sections 503(b) and 507(a)(2) of the Bankruptcy Code equal to the amount of all goods delivered to Company post-petition (less any amounts paid to Vendor for such goods). Company agrees not to contest the claims described in the foregoing or to assert any preference claim against Vendor (other than in the case of breach of this Agreement by Vendor).

5. You will continue to extend to the Company all SSB Customary Trade Terms for post-petition orders during the pendency of the Chapter 11 Cases or upon such other trade terms and conditions as you and the Company agree upon. Nothing herein shall prohibit Company and Vendor from modifying the SSB Customary Trade Terms upon execution of a written agreement providing the same.

6. You will not separately seek payment for reclamation or similar claims outside of the terms of the Order.

7. Other than to preserve Vendor's Remaining Prepetition Claim, you will not file or otherwise assert against the Company, the estates, or any other person or entity or any of their respective assets or property (real or personal) any lien (regardless of the statute or other legal authority upon which such lien is asserted) or interest related in any way to any remaining prepetition amounts allegedly owed to you by the Company arising from agreements entered into prior to the Petition Date. Furthermore, you agree to take (at your own expense) all necessary steps to remove any such lien or interest as soon as possible. Company agrees not to dispute or contest any of Vendor's Settled Claim or to assert a preference claim against Vendor.

8. If either the applicable Vendor Payment Program authorized by the Order or your participation therein terminates as provided in the Order, or you later refuse to continue to supply goods to the Company on SSB Customary Trade Terms during the pendency of the Chapter 11 Cases, for a reason other than non-payment, the Company may, in its sole discretion, and without further order of the Bankruptcy Court, (a) declare any payments you receive on account of your Vendor Settled Claim (including claims arising under section 503(b)(9) of the Bankruptcy Code) to be voidable post-petition transfers pursuant to section 549(a) of the Bankruptcy Code that the Company may recover from you in cash or in goods (including by setoff against post-petition obligations) and (b) demand that you immediately return such payments to the extent that the

aggregate amount of such payments exceeds the post-petition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever. Upon recovery of such payment by the Company, your Vendor Settled Claim shall be reinstated in such an amount as to restore the Company and you to your original positions, as if the agreement had never been entered into and the payment of the Vendor Settled Claim had not been made.

9. The undersigned, a duly authorized representative of Vendor, has reviewed the terms and provisions of the Order and agrees that Vendor is bound by such terms. By accepting payment of the Vendor Settled Claim, you agree to the terms of the Order and submit to the jurisdiction of the Bankruptcy Court for enforcement thereof.

10. Any dispute with respect to this letter agreement, the Order, and/or your participation in the Vendor Payment Program shall be determined by the Bankruptcy Court.

If you have any questions about this Vendor Agreement or our Chapter 11 Cases, please do not hesitate to call.

Sincerely,

Big Lots, Inc.

By: _____
Ronald A. Robins, Jr.
Executive Vice President, Chief
Legal and Governance Officer

Agreed and Accepted by:

Serta Simmons Bedding, LLC

By: _____
Its: C.F.O

Dated: September 17, 2024

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| Big Lots, Inc., et. al., | : | Case No. 24-11967 (JKS) |
| Debtors. | : | (Jointly Administered) |
| | : | Obj. Deadline: January 16, 2025 |
| _____ | : | Hearing Date: January 21, 2025 @ 1:00 p.m. |

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2025, I caused a copy of the Serta Simmons Bedding, LLC Motion for Allowance and Payment of Administrative Claim to be served on all parties that are registered to receive notice via the Court's CM/ECF notification system including the following:

Robert J. Dehney, Sr.
Andrew R. Remming
Daniel B. Butz
Tamara K. Mann
Sophie Rogers Churchill
Casey B. Sawyer
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

1201 N. Market Street, 16th Floor
Wilmington, DE 19801
rdehney@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
tmann@morrisnichols.com
srchurchill@morrisnichols.com
csawyer@morrisnichols.com
biglots.mnat@morrisnichols.com

*Counsel to the Debtors*

Brian M. Resnick, Esq.,
Adam L. Shpeen, Esq.
Stephen D. Piraino, Esq.
Jonah A. Peppiatt, Esq.
Ethan Stern, Esq.
**Davis Polk & Wardwell LLP**
450 Lexington Avenue
New York, NY 10017
notice.biglots@davispolk.com

| | |
|---|---|
| Chad B. Simon, Esq.<br>James V. Drew, Esq.<br>Sarah L. Hautzinger, Esq.<br>**Otterbourg P.C.**<br>230 Park Avenue New York, NY 10169<br>CSimon@otterbourg.com<br>JDrew@otterbourg.com<br>shautzinger@otterbourg.com<br><br>*Counsel to the Committee* | John H. Knight, Esq.<br>**Richards, Layton & Finger**, P.A.<br>920 N. King Street<br>Wilmington, DE 19801<br>knight@rlf.com |

Dated: January 9th, 2025
Wilmington, DE

**WERB & SULLIVAN**

*/s/ Brian A. Sullivan*
Brian A. Sullivan (DE Bar No. 2098)
1225 N. King Street, Suite 600
Wilmington, DE 19801
Phone: 302-652-1100
Fax: 302-652-1111
bsullivan@werbsullivan.com

-and-

Beth E. Rogers
**ROGERS LAW OFFICES**
 Georgia Bar No. 612092
9040 Roswell Road, Suite 1950
Atlanta, Georgia 30350
770-685-6320 phone
678-990-9959 fax
distribution@berlawoffice.com