**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*,[1] | Case No. 24-11967 (JKS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: TBD[2] <br> Objection Deadline: TBD |

**PRO-MART INDUSTRIES, INC. MOTION FOR ALLOWANCE AND PAYMENT OF
ADMINISTRATIVE EXPENSE CLAIM**

Pro-Mart Industries, Inc. ("PMI"), by and through its undersigned counsel and pursuant to sections 503(b) and 507(a)(2) of Title 11 of the United States Code (the "Bankruptcy Code"), hereby moves (this "Motion") for an entry of an order allowing and compelling the immediate payment of its chapter 11 administrative expense claims in the above-captioned cases. In support of this Motion, PMI respectfully represents and alleges as follows:

**Relevant Factual Background**

1.     On September 9, 2024 ("Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the

---

[1] The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 bankruptcy cases (these "Cases"), together with the last four digits of each of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the Debtors' corporate headquarters is 4900 E. Dublin Granville Road, Columbus, OH 43081.

[2] Movant has concurrently requested that this motion be heard on shortened notice on January 21, 2025. That request is pending, and if granted movant will issue a separate notice regarding the hearing date and objection deadline.

616271267

District of Delaware (this "Court"). The Debtors remain in possession of their assets and continue to operate and manage their businesses as debtors-in-possession.

2. The following day, on September 10, 2024, the Debtors sent PMI a document titled "Vendor FAQ" in which the Debtors announced a sale of the company's assets and business operations to Nexus Capital Management LP ("Nexus"). The Vendor FAQ further explained that the chapter 11 proceedings were initiated to "facilitate the sale" and that the Debtors had received secured commitments from Nexus for $707.5 million in financing.

3. On September 13, 2024, PMI filed proof of claim for $80,405.44 in open receivables for goods shipped prior to the Petition Date ("Pre-Petition Amount"). *See* Claim No. 349.

4. Thereafter, between September 20 and December 10, 2024, the Debtors submitted 25 purchase orders to PMI requesting the immediate shipment of goods (generally, and as more fully described below, the "Post-Petition Orders"). Relying upon the Vendor FAQ and other representations made by the Debtors, and in a good faith effort to support the Debtors during the course of their chapter 11 cases, PMI fulfilled the Post-Petition Orders. Notably, the Post-Petition Orders were far larger in size and quantity than those placed by the Debtors prior to the Petition Date.

5. On December 13, 2024, PMI contacted the Debtors about a $102,559.40 ACH payment scheduled for December 12 that PMI did not receive. The Debtors' Accounts Payable representative responded via email on December 13, 2024 and advised that "[f]unds were not issued this week pending the finalization of the sale to Nexus. We greatly apologize for the inconvenience, payments will be issued next week."

6.	On December 19, 2024, the Debtors announced that the sale to Nexus did not close and that they would begin going-out-of-business sales at all locations. Upon receipt this notice, and on the same day, PMI demanded the return of goods that were in transit to the Debtors.

7.	Between December 19 and December 24, 2024, PMI made numerous attempts via telephone and electronic correspondence to recover the goods in transit to Debtors.

8.	On December 24, 2024, PMI received notice from the Debtors via electronic correspondence that the Debtors would not return any of PMI's products.

9.	PMI has delivered goods on account of the Post-Petition Orders with a price and value not less than $498,398.27 ("Accrued Administrative Amount"). These goods were delivered to the Debtors in the normal course of business, and payment therefor is now overdue and outstanding.

10.	As of the date hereof, the Debtors have failed to pay PMI for goods delivered on account of the following Post-Petition Orders:

| Invoice # | Invoice Date | Ship Date | Customer PO | Amount |
| --- | --- | --- | --- | --- |
| 816555 | 10/03/2024 | 10/01/2024 | 0095618247 | $ 15,066.48 |
| 816556 | 10/03/2024 | 10/01/2024 | 0095618248 | $ 22,865.04 |
| 838051 | 11/05/2024 | 11/05/2024 | 0095635413 | $ 9,177.00 |
| 838052 | 11/05/2024 | 11/05/2024 | 0095635414 | $ 14,953.50 |
| 838194 | 11/08/2024 | 11/05/2024 | 0095644417 | $ 26,996.88 |
| 838316 | 11/12/2024 | 11/05/2024 | 0095630276 | $ 49,174.70 |
| 838679 | 11/15/2024 | 11/05/2024 | 0095644418 | $ 40,243.80 |
| 838680 | 11/15/2024 | 11/01/2024 | 0095645781 | $ 16,791.00 |
| 838811 | 11/20/2024 | 11/05/2024 | 0095630277 | $ 78,280.05 |
| 839303 | 11/27/2024 | 11/12/2024 | 0095669733 | $ 25,585.20 |
| 839863 | 11/29/2024 | 11/26/2024 | 0095617506 | $ 26,619.36 |
| 839864 | 11/29/2024 | 11/26/2024 | 0095617505 | $ 21,387.12 |
| 839865 | 11/29/2024 | 11/18/2024 | 0095669735 | $ 18,107.40 |
| 840015 | 12/02/2024 | 12/02/2024 | 0095617507 | $ 18,708.24 |
| 840412 | 12/04/2024 | 11/12/2024 | 0095669734 | $ 17,749.80 |
| 840935 | 12/16/2024 | 11/29/2024 | 0095669907 | $ 58,035.90 |
| 841082 | 12/18/2024 | 12/09/2024 | 0095717273 | $ 9,438.00 |
| 841083 | 12/18/2024 | 12/17/2024 | 0095665450 | $ 14,800.80 |

| Invoice # | Invoice Date | Ship Date | Customer PO | Amount |
|---|---|---|---|---|
| 841282 | 12/23/2024 | 11/29/2024 | 0095669905 | $ 14,418.00 |
| | | | **Total:** | **$498,398.27** |

Copies of invoices for the unpaid Post-Petition Orders are included in **Composite Exhibit A**, attached hereto.[3]

### Requested Relief

11. PMI respectfully requests that this Court enter an order (i) allowing its administrative expense claim for the Accrued Administrative Amount of $498,398.27 and (ii) compelling the Debtors to immediately pay PMI the allowed Accrued Administrative Amount.

12. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

13. This is a core proceeding pursuant to 28 U.S.C. § 157 and venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

14. In accordance with this Court's Local Rule 9013-1(f), PMI consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### Basis for Requested Relief

**A.    The Accrued Administrative Amount Should Be Allowed as Actual Necessary Costs of the Estates**

15. Section 503(b) of the Bankruptcy Code permits administrative expense claims for the "actual, necessary costs and expenses of preserving the estate[.]" 11 U.S.C. § 503(b)(1)(a). To

---

[3] For purposes of completeness, **Composite Exhibit A** includes all unpaid and outstanding invoices owed by the Debtors, as well as certain limited invoices for Post-Petition Orders which the Debtors paid post-petition.

the extent allowed, such claims are entitled to priority treatment as administrative expenses pursuant to section 507(a)(2) of the Bankruptcy Code.

16. A post-petition claim qualifies as an administrative expense claim under section 503(b)(1) of the Bankruptcy Code if (a) it arises out of a transaction between the creditor and the debtor's estate post-petition and (b) the consideration supporting the claimant's right to the expense was supplied to and benefits the debtor's estate. *See In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021). "A main purpose of granting administrative priority to certain expenses is to incentivize creditors to continue doing business with a debtor." *In re Juvennelliano*, 464 B.R. 651, 655 (Bankr. D. Del. 2011).

17. Following the Petition Date, PMI continued to provide valuable goods to the Debtors throughout the duration of these chapter 11 cases. The Debtors have reaped the benefits of these goods, permitting them to continue operating their businesses in the ordinary course at the expense of PMI.

18. As such, PMI should be allowed an administrative expense claim in the Accrued Administrative Amount pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code for all amounts that remain outstanding and unpaid by the Debtors.

### B. The Debtors Should Be Required to Pay PMI the Allowed Accrued Administrative Amount Immediately

19. The Court has discretion to require that the Debtors pay allowed administrative expenses such as PMI's Accrued Administrative Amount immediately. *See In re Garden Ridge Corp.*, 323 B. R. 136, 143 (Bankr. D. Del. 2005). "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." *Id*. "In making this determination, one of the chief factors courts consider is bankruptcy's goal of an orderly *and equal* distribution among creditors and the need to prevent a

race to a debtor's assets." *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) (internal citations omitted, emphasis added). "Courts will also consider the particular needs of each administrative claimant and the length and expense of the case's administration." *In re NE OPCO, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013) (internal citations omitted). "To qualify for exceptional immediate payment, a creditor must show that 'there is a necessity to pay and not merely that the Debtor has the ability to pay.'" *In re Continental Airlines*, 146 B.R. 520, 531 (Bankr. D. Del. 1992) (internal citation omitted).

20. There should be no argument that the Debtors have the current ability to pay accrued administrative expenses – indeed, this is what the Debtors have told their vendors to induce their continued delivery of goods and inventory during the course of these cases. To be sure, the Debtors have authorization and a Court-approved budget permitting them to pay more than $50 million in operating disbursements per week, which specifically includes post-petition delivery claims. *See, e.g.,* Docket Nos. 431 and 584 (Debtors' interim and final DIP financing orders).

21. For similar reason, the Debtors cannot also claim that they will be prejudiced by and order directing immediate payment of accrued administrative vendor expenses: they have already decided in their business judgment that immediate payment of post-petition vendor claims is outweighed by the necessity of business continuity. *See id.*; *see also,* Docket No. 11 (Critical Vendor motion).

22. On the other hand, PMI will suffer severe and immediate hardship if its administrative claim is not paid immediately. PMI is a family-owned and operated company that is not capitalized to incur losses of the magnitude of nearly $500,000 in Accrued Administrative Amount (which is well beyond even its $80,000 pre-petition exposure, which will almost certainly go unpaid). Moreover, PMI has obligations to its own vendors and trading partners which will be

significantly impacted if PMI has to wait indefinitely for (what appears to be the speculative chance at) payment of the Accrued Administrative Amount.

23. In sum, despite having sufficient cash on hand and otherwise the availability under its DIP financing to pay accrued vendor claims, the Debtors have failed to timely pay PMI for undisputed post-petition deliveries. Like countless other vendors, PMI relied on representations by the Debtors' representatives that the Debtors had the ability, authority, and intent to timely pay PMI for post-petition deliveries. In reliance on those statements, PMI agreed to deliver – and in fact did deliver – goods to the Debtors with a value of not less than $498,398.27.

WHEREFORE, PMI respectfully requests that the Court enter an order, substantially in the form submitted herewith, (i) allowing PMI an administrative expense claim against the Debtors in the Accrued Administrative Amount of $498,398.27, (ii) ordering the Debtors to pay PMI's administrative expense claim for the Post-Petition Amount immediately and not later than within seven (7) days of the entry of the order, and (iii) granting such other relief as is just and proper.

Dated: January 9, 2025

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Jarret P. Hitchings*
Jarret P. Hitchings (No. 5564)
301 S. College Street, Suite 2150
Charlotte, North Carolina 28202
(704) 749-8965
jarret.hitchings@bclplaw.com

*Counsel to Pro-Mart Industries, Inc.*

**CERTIFICATE OF SERVICE**

This is to certify that on the 9th day of January 2025, I caused to be electronically filed the foregoing *Pro-Mart Industries, Inc. Motion for Allowance and Payment of Administrative Expense Claim* using the Court's CM/ECF filing system. The CM/ECF system generated an email notice of the filing, linked to this document, to those parties registered to receive electronic notices in this case.

Dated: January 9, 2025

BRYAN CAVE LEIGHTON PAISNER LLP

/s/ *Jarret P. Hitchings*
Jarret P. Hitchings (No. 5564)
301 S. College Street, Suite 2150
Charlotte, North Carolina 28202
(704) 749-8965
jarret.hitchings@bclplaw.com

*Counsel to Pro-Mart Industries, Inc.*

616271267