**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br>(Jointly Administered)<br><br>Hearing Date: January 21, 2025 at 1:30 p.m. (ET)<br>Re: D.I. 1351 |

**LIMITED OBJECTION OF RIVER OAKS PROPERTIES, LTD. AND
ROP NORTH HILLS, LLC TO MOTION OF DEBTORS FOR ENTRY OF
AN ORDER (I) EXTENDING THE TIME TO ASSUME OR REJECT
UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY
AND (II) GRANTING RELATED RELIEF AND REQUEST
FOR ADEQUATE PROTECTION**

River Oaks Properties, Ltd. (the "Montana Market Landlord") and ROP North Hills, LLC ("North Hills Landlord" and together with Montana Market Landlord, "Landlords") hereby submit their limited objection and request for adequate protection (the "Limited Objection") with respect to Debtors' *Motion for Entry of an Order (i) Extending the Time to Assume or Reject Unexpired Leases of Nonresidential Real Property and (ii) Granting Related Relief* [D.I. 1351] (the "Extension Motion"), as follows:

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

1.      On September 9, 2024 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On September 10, 2024, this Court entered its order authorizing joint administration of these

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

4917-9309-4159.1

Chapter 11 cases [D.I. 95]. No trustee or examiner has been appointed and Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

2. Landlords and debtor PNS Stores, Inc. ("Tenant") are parties to two real property leases in El Paso Texas: (a) that certain Lease Agreement, dated January 8, 2019 (as subsequently amended, the "Montana Market Lease") for retail premises commonly known as 6375 Montana Avenue, El Paso, Texas, located in the Montana Market shopping center, and (b) that certain Lease Agreement, dated February 20, 2015 (as subsequently amended, the "North Hills Lease") for retail premises commonly known as 10771 Gateway South Boulevard, El Paso, Texas, located in the North Hills Crossing shopping center.

3. On December 13, 2024, Debtors filed the Extension Motion, seeking to extend Debtors' time to assume, assume and assign, or reject unexpired leases of nonresidential real property under Bankruptcy Code section 365(d)(4) from January 7 to April 7, 2025 (the "Requested Section 365(d)(4) Extension").

4. On December 27, 2024, Debtors filed, on an emergency basis, the *Motion of Debtors for Entry of an Order (I) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter Into and Perform Under the GBRP APA, etc.* [D.I. 1437] (the "Emergency Sale Motion").

5. Following hearings on December 30 and 31, 2024, the Court entered its order [D.I. 1556] (the "Sale Order"), on January 2, 2025, granting the Emergency Sale Motion and approving Debtors' entry into an asset purchase agreement with Gordon Brothers Retail Partners, LLC ("GBRP"), by which GBRP acquired substantially all of Debtors' remaining assets, including leasehold designation rights (the "GBRP Transaction").

6. On January 2, 2025, this Court entered its *Bridge Order (I) Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [D.I. 1551], providing that "the time within which the Debtors must assume or reject their Unexpired Leases is hereby extended from January 7, 2025, through and including January 21, 2025, without prejudice to the Debtors' rights to seek further extensions or any party in interest's right to object thereto, so that the Motion may be heard at the hearing scheduled for January 21, 2025."

7. The GBRP Transaction closed on January 3, 2025 (the "Closing Date"). *See Notice of Closing of Sale of Debtors' Assets to Gordon Brothers Retail Partners, LLC* [D.I. 1588]. Debtors remain in possession of the Montana Market and North Hills Crossing premises and neither the Montana Market Lease nor the North Hills Lease have been assumed, assumed and assigned, or rejected.

II. **DEBTORS' REQUESTED EXTENSION OF TIME SHOULD BE CONDITIONED ON PROVIDING LANDLORDS WITH ADEQUATE PROTECTION**

8. At the time Debtors filed the Extension Motion, Debtors were pursuing a prospective sale of substantially all of Debtors' assets to affiliates of Nexus Capital Management, L.P. (the "Nexus Transaction"). As the Court is well aware, the Nexus Transaction collapsed and Debtors then filed the Emergency Sale Motion, seeking approval of the GBRP Transaction. While a key component of the GBRP Transaction is the sale of lease designation rights (*see* Sale Order at ¶¶ U, 27, 41), it is well-established that "a sale of designation rights with respect to leases cannot and does not result in an exemption from the requirements of section 365 (including, *inter alia,* the showings that need to be made in connection with extensions of the time to assume or reject under section 365(d)(4) . . . .)." *In re Ames Dept. Stores, Inc.*, 287 B.R. 112, 115 (Bankr. S.D.N.Y. 2002).

9. Debtors' Extension Motion cites familiar authorities for the list of non-exclusive factors the Court should consider in whether to grant an extension of time to assume or reject nonresidential leases under Bankruptcy Code section 365(d)(4) (*see, e.g.*, *In re South St. Seaport L.P. v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 760-61 (2d Cir. 1996)), emphasizing that these Chapter 11 cases are "large and complex and involve a substantial number of leases for nonresidential real property." Extension Motion at ¶ 13.

10. Given the current procedural posture of these cases, however, two of the Burger Boys factors take on increased significance: "(iii) whether the debtor is paying for the use of the property" and "(iv) whether the debtor's continued occupation could damage the lessor beyond the compensation available to it under the Bankruptcy Code." *In re Burger Boys, Inc.*, 94 F.3d at 761.

11. As demonstrated by the testimony at the December 30-31 hearings on the Emergency Sale Motion, these Chapter 11 cases are <u>administratively insolvent</u> (to the magnitude of literally hundreds of millions of dollars) and there are substantial questions regarding the adequacy of the "Wind-Down Budget" accompanying the Emergency Sale Motion. While Mr. Percy of Alix Partners, Debtors' financial advisor, testified that the Debtors have budgeted for "all estimated go-forward administrative expenses necessary for the Debtors to conduct the Store Closing Sale Process" (*see Declaration of Kent Percy in Support of Debtors' Motion For Entry of an Order (II) Approving Sale of Debtors' Assets, etc.* [D.I. 1437-2]) at ¶ 17), the occupancy cost information underlying the Wind-Down Budget has not yet been provided to Landlords, two weeks after the Sale Hearing, notwithstanding the representation of Debtors' counsel that the "lease-by-lease" information underlying the Wind-Down Budget would be forthcoming. *See* Transcript of December 31, 2024 hearing at 217: 141-9 ("And so what we do, an we'd endeavor to do, is work in good faith to provide as much information as possible to counsel for the landlords regarding the

number and the backup and the buildup and do the best we can with the information we have."). As set forth in Landlords' previously-filed *Limited Objection of River Oaks Properties, Ltd. and ROP North Hills, LLC to Proposed Assumption and Assignment of Leases* [D.I. 969], substantial sums are coming due under both the Montana Market Lease and the North Hills Lease with respect to annual insurance and real property tax billings, in the aggregate sum of $281,743.38. *See* Exhibit A hereto. Debtors also underpaid January 2025 rent and monthly charges for these two locations. If post-Closing Date sums coming due under Debtors' nonresidential real property leases are not paid during the Requested Section 365(d)(4) Extension Period, notwithstanding the mandate of Bankruptcy Code section 365(d)(3) and governing Third Circuit authority (*see, e.g.*, *Centerpoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205 (3d Cir. 2001), then there is a substantial risk Landlords will never be paid in full for these obligations. Thus, "debtor's continued occupation could damage the lessor beyond the compensation available to it under the Bankruptcy Code," as described in *Burger Boys*; *accord*, *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 106 (2d Cir. 1982) (In affirming the bankruptcy court's decision to limit an extension of time to only 30 days, the Second Circuit observed that "the debtor's continued occupation of the land, coupled with its failure to pay taxes, could damage the lessors beyond the compensation available under the Bankruptcy Code.").[2]

12.     It is well-settled that real property lessors are entitled to adequate protection. *See, e.g.*, *Memphis-Shelby County Airport Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 783 F.2d 1283, 1286-87 (5th Cir. 1986) (recognizing landlord's right to adequate protection); *In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) (noting that a "landlord's right to adequate protection seems to follow clearly from the language of

---

[2]     This is among the situations that Paragraph 101 of the Court's Sale Order, providing for retention of jurisdiction to address the "failure to pay any go-forward administrative expenses," was intended to address.

§363(e) . . . "); *In re Ernst Home Center, Inc.*, 209 B.R. 955, 965-66 (Bankr. W.D. Wash. 1997); *In re MS Freight Distribution, Inc.*, 172 B.R. 976, 980 n.4 (Bankr. W.D. Wash. 1994) ("Section 363(e) by its express terms authorizes an entity whose property is to be leased by the debtor to seek adequate protection."); *In re RB Furniture, Inc.*, 141 B.R. 706, 713 (Bankr. C.D. Cal. 1992) (adequate protection under § 363(e) may even be broader that the rights provided lessors under § 365(d)(3) given that it "is a fluid concept that reflects all the circumstances surrounding a debtor's use of property."). It is equally well-established that the mere allowance of an administrative priority claim for accruing post-petition rents is not adequate protection. *In re Attorneys Office Management, Inc.*, 29 B.R. 96, 99 (Bankr. C.D. Cal. 1983) ("In § 361(3) it is made clear that an administrative claim under § 503(b)(1) in itself will not constitute adequate protection.").

13. Under the circumstances, Landlords are entitled to adequate protection in the form of *substantive* evidence that upcoming insurance and real property tax obligations are *funded* and *will be timely paid*, along with accruing post-petition rent payments, during the Requested Section 365(d)(4) Extension Period. *See, e.g.*, *In re RB Furniture, Inc.*, 141 B.R. at 714.

### III.   RESERVATION OF RIGHTS

14. Landlords reserve the right to make such other and further objections to the Extension Motion as may be appropriate based upon any new information provided by Debtors or upon any different relief requested by Debtors, or as may be developed through formal or informal discovery.

### IV.   JOINDER

15. To the extent not inconsistent with the foregoing, Landlords join in any other objections to the Extension Motion filed by Debtors' other landlords.

## V.   CONCLUSION

16.    As set forth above, any extension of the Debtors' time to assume or reject the Montana Market Lease and North Hills Lease should be conditioned on adequate protection of Landlords' interest in the timely receipt of accruing monetary obligations under the Leases.

Dated:  January 14, 2025
Wilmington, Delaware

Respectfully submitted,

*/s/ Laurel D. Roglen*
Leslie C. Heilman (DE 4716)
Laurel D. Roglen (DE 5759)
Nicholas J. Brannick (DE 5721)
Margaret Vesper (DE 6995)
BALLARD SPAHR LLP
919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel:  (302) 252-4465
Fax:  (302) 252-4466
Email: heilmanl@ballardspahr.com
         roglenl@ballardpshar.com
         brannickn@ballardspahr.com
         vesperm@ballardspahr.com

-and-

Ivan M. Gold (admitted *pro hac vice*)
ALLEN MATKINS LECK GAMBLE
 MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
Telephone:  (415) 837-1515
Facsimile:  (415) 837-1516
E-mail:  igold@allenmatkins.com

*Attorneys for River Oaks Properties, Ltd. and ROP North Hills, LLC*