**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------x

In re:                                                     :        Chapter 11

                                                           :

BIG LOTS, INC.,[1]                                         :        Case No. 24-11967 (JKS)

                                                           :

                        Debtor.                            :        **Hearing Date:  January 21, 2025 at 1:00 p.m. (ET)**

                                                           :        **Related to Docket Nos. 1351 & 1551**

-------------------------------------------------------x

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF 35/WCD CENTURY
SOUTH K/C LTD; ALTA CENTER, LLC; ARC ASANDSC001, LLC; BEACON PLAZA
LLC; BMA BEACHWOOD, LLC; BRIXMOR OPERATING PARTNERSHIP LP;
MILLAN HOLDINGS LLC: NETSTREIT; RD MANAGEMENT LLC; ROBHANA
GROUP; SUN PLAZA SHOPS, LLC; THE CARRINGTON COMPANY; TJ ELITE
PROPERTIES, LLC; URBAN EDGE PROPERTIES LLC; AND WHITTIER TRUST
COMPANY TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER
(I) EXTENDING TIME TO ASSUME OR REJECT UNEXPIRED
LEASES OF NONRESIDENTIAL REAL PROPERTY
AND (II) GRANTING RELATED RELIEF**

35/WCD Century South K/C LTD; Alta Center, LLC; ARC ASANDSC001, LLC;

Beacon Plaza LLC; BMA Beachwood, LLC; Brixmor Operating Partnership LP; Millan

Holdings LLC; Netstreit; RD Management LLC; Robhana Group; Sun Plaza Shops, LLC; The

Carrington Company; TJ Elite Properties, LLC; Urban Edge Properties LLC; and Whittier Trust

Company (collectively, the "Landlords"), by and through their undersigned counsel, hereby file

this objection and reservation of rights (the "Limited Objection") to the *Motion of Debtors for*

*Entry of an Order (I) Extending Time to Assume or Reject Unexpired Leases of Nonresidential*

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin Granville Road, Columbus, OH 43081.

*Real Property and (II) Granting Related Relief* [D.I. 1351] (the "Extension Motion"), and respectfully represent as follows:

## I.    BACKGROUND FACTS

1.      On September 9, 2024 (the "Petition Date"), each of the above-captioned Debtors filed for voluntary relief under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

2.      On September 23, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 248]

3.      The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the locations (the "Centers") set forth in **Schedule 1** attached hereto.

4.       Each Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3).  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

5.      On September 9, 2024, the Debtors filed a motion the ("Original Sale Motion"), seeking approval of procedures and authority to sell substantially all of the Debtors' assets to Gateway BL Acquisition, LLC (the "Nexus Sale"), an affiliate of Nexus Capital Management, LP ("Nexus") [D.I. 18].  On November 22, 2024, the Court approved the Nexus Sale, which had been modified to provide for the sale of designation rights to Nexus, and a post-closing period through January 31, 2025 for Nexus to determine whether to designate contracts for assumption or rejection [D.I. 1232].

6.      In order to effectuate the Nexus Sale and the designation rights contemplated thereby, on December 13, 2024, the Debtors filed the Extension Motion, which seeks to extend the deadline by which the Debtors must assume or reject their unexpired leases of nonresidential real property, including the Leases, for another 90 days, from January 7, 2025 up to and including April 7, 2025.

7.      Thereafter, on December 19, 2024, following a status conference held on the same date, at which time the Debtors informed the Court and other interested parties that they did not expect the Nexus Sale to close, the DIP Lenders had issued a notice of default under the DIP facilities based on the failure to meet the sale closing milestone, and that the Debtors would immediately commence going out of business sales at all remaining store locations to protect the value of their estates, the Debtors filed the *Seventh Notice of Filings of List of Additional Closing Stores Pursuant to the Final Order (I) Authorizing Debtors to Assume the Consulting Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* [D.I. 1397] (the "Seventh Closing Notice"), which Seventh Closing Notice noticed the commencement of store closing sales for all of the Debtors' stores that had not previously been listed on any prior closing notices and, upon information and belief, are the stores that were previously the subject of the now-defunct Nexus Sale.

8.      Following this announcement and pivot to a full chain liquidation, on December 27, 2024, the Debtors filed a motion [D.I. 1437] seeking this Court's expedited approval of an alternative transaction (the "GBRP Sale") with Gordon Brothers Retail Partners, LLC ("GBRP"), where GBRP would, *inter alia*, purchase substantially all of the Debtors' remaining assets, including designation rights through February 28, 2025 (subject to extension through March 31, 2025) to the Debtors' stores (the "GBRP Designated Store Leases"), and pay all anticipated go-

forward administrative expenses for such GBRP Designated Store Leases, but not any past unpaid administrative expenses other than the stub rent arising under the Debtors' leases from the Petition Date through the end of September 30, 2024 (the "Stub Rent") that remains unpaid pursuant to the terms of the final DIP order [D.I. 584], among other expenses necessary for the Debtors' to conclude the store closing sales at the GBRP Designated Store Leases, all in accordance with the Agency Agreement and two budgets through the week ending March 3, 2025 (the "GBRP Budgeted Amounts").  Upon information and belief, and as evidenced by the extensive record made at the hearings held on the GBRP Sale, the Debtors' estates are woefully administratively insolvent and the Debtors do not have sufficient funds to pay any of their unpaid administrative expenses that accrued and were unpaid as of December 31, 2024, other than those expressly provided pursuant to the terms of the GBRP Sale.

9.      On January 2, 2025, after more than two days of contested hearings, the Court approved the GBRP Sale (the "GBRP Sale Hearing").  *See* D.I. 1556.

10.     Further, that same date, the Court entered the *Bridge Order (I) Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [D.I. 1551], which extended the Debtors' time to assume or reject unexpired leases from January 7, 2025, through and including January 21, 2025, so that the Extension Motion may be heard on January 21, 2025 (the "Hearing"), with all parties' rights to object to the Extension Motion preserved.

11.     On January 6, 2025, the Debtors filed the *Notice of Closing of Sale of Debtors' Assets to Gordon Brothers Retail Partners, LLC* [D.I. 1588], which advised parties that the Initial Closing for the GBRP Sale occurred on January 3, 2025.

12.     Landlords' Counsel has been working with the Debtors to confirm receipt of the GBRP Budgeted Amounts owed to the Landlords, specifically for the Lease expenses and Stub Rent payments that were to be paid to Landlords in connection with the GBRP Sale; however, due to the timing of the closing of the GBRP Sale and subsequent timing and method of those payments, Landlords' Counsel has not yet been able to confirm that all required payments have been received and upon information and belief, certain required payments of January Lease obligations and/or stub rent have not yet been made to the Landlords.  In advance of the Hearing, Landlords' Counsel will continue to work with the Debtors to confirm payments and hope to resolve the issues raised herein.

13.     If such payments have not been made or are not being made, the Debtors are only exacerbating an ongoing failure to perform post-petition obligations under the Leases and an extension of the 365(d)(4) deadline should be denied.

## II.    ARGUMENT

### A.    "Cause" does not exist to extend the time to assume or reject the Unexpired Leases

14.     Under Section 365(d)(4) of the Bankruptcy Code, an unexpired lease of nonresidential real property under which a debtor is the lessee will be deemed automatically rejected if the debtor does not assume or reject such lease within the earlier of 120 days after its bankruptcy filing and plan confirmation.

15.     However, a court may extend the above deadline for an additional 90 days on the motion of the debtor or the lessor for *cause*. 11 U.S.C. 365(d)(4)(B)(i) (emphasis added).

16.     Here, the Debtors assert that cause exists to extend the 120-day window under Section 365(d)(4) of the Bankruptcy Code for the assumption or rejection of unexpired nonresidential leases by 90 days because *inter alia* (i) the cases are "large and complex and involve a substantial number of leases for nonresidential real property"; (ii) the Debtors do not

want to "inadvertently reject an otherwise Unexpired Lease, which may be valuable to the estate"; (iii) the "Debtors have been, and intend to continue to ensure the timely payments on account of postpetition rent obligations arising under the Unexpired Leases"; and (iv) "the timely payment of postpetition rent obligations means that the requested extension will not prejudice or otherwise affect the substantive rights of the lessors under the Unexpired Leases." See Extension Motion, ¶13-16.

17.    Notably, the Extension Motion, and the recitation of "cause" therein, does not reflect the failure to pay obligations under the Leases prior to the GBRP Sale, the default under the DIP financing, the failure to close the Nexus Sale, or the subsequent approval of the GBRP Sale which does not provide for payment of all administrative expenses under the Leases, though supposedly should provide for all go-forward obligations.

18.    Although the term "cause" as used in Section 365(d)(4) is not defined in the Bankruptcy Code, courts have identified the following factors, as enumerated in the Debtors' Extension Motion, as pertinent to the determination of cause: (i) whether the debtor was paying for the use of the property; (ii) whether the debtor's continued occupation beyond the compensation available to it under the Bankruptcy Code; (iii) whether the lease is the debtor's primary asset; and (iv)the number of leases the debtor must evaluate.  See S. St. Seaport L.P. v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755,760-61 (2d Cir. 1996); see also Channel Home Centers Inc., 989 F.2d 682, 689 (3d Cir. 1993); In re Wedtech Corp., 72 B.R. 464, 471-72 (Bankr. S.D.N.Y. 1987).

19.    Landlords recognize that the Debtors are parties to a large number of unexpired leases.  However, sheer numerosity of the Debtors' lease locations alone does not itself warrant an extension of time to assume or reject leases.

20.     Moreover, "cause" that may have arguably supported the Extension Motion when it was filed on December 13, 2024 no longer exists—the Nexus Sale did not close, the Debtors failed to pay all post-petition obligations arising under their leases, and the Debtors have now pivoted to a liquidation and the GBRP Sale.

21.     As detailed above and exposed during the GBRP Sale Hearing, the Debtors are administratively insolvent and despite the ongoing requirements of Section 365(d)(3) to timely pay all obligations arising under real property leases as they come due, the *Debtors* are unable to do so (and have not done so between the Petition Date and the GBRP Sale).  The only funding for any lease obligations during the requested extension period is provided through the GBRP Sale, and the backup to support the inclusion of all such go-forward expenses in the schedule to the Agency Agreement or the budgets, as discussed at the GBRP Sale Hearing, has not been provided.  The Debtors can only satisfy the requisite cause for the requested 365(d)(4) extension if the Debtors can demonstrate that all of the go-forward obligations arising under the Leases that should have been paid to date under the GBRP Sale have in fact been paid, and that the go-forward expenses contemplated by the schedule to the Agency Agreement and the budgets actually include all obligations arising under Section 365(d)(3) during the extension period Landlords hereby request adequate protection of the Debtors' ability to pay all obligations arising under the Leases.  11 U.S.C. § 363(e).

**B.      The Debtors must pay all post-petition balances owing under the Leases pursuant to Section 365(d)(3) as a condition to any extension of time to assume or reject.**

22.     Section 365(d)(3) of the Bankruptcy Code directs a debtor in possession to "timely perform all obligations . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected."  11 U.S.C. § 365(d)(3).  The Debtors failure to make timely payments and to comply with their performance

obligations under the Bankruptcy Code, although not a prerequisite to obtaining an extension under Section 365(d)(4) of the Bankruptcy Code, does provide an important consideration. <u>See In re Monahan Ford Corp. of Flushing</u>, 390 B.R. 493, 500, 506 (Bankr. E.D.N.Y. 2008).

23.    Moreover, there is no doubt that Landlords are entitled to the immediate payment of post-petition rent and charges under Section 365(d)(3). <u>See In re Best Prods. Co., Inc.</u>, 206 B.R. 404 (E.D. Va. 1997).  The Debtors' compliance with Section 365(d)(3) is mandatory, and the Debtors must timely perform all obligations under the Leases during the post-petition period. <u>See In re New Almacs, Inc.</u>, 196 B.R. 244, 248 (Bankr. N.D.N.Y. 1996); <u>Towers v. Chickering & Gregory (In re Pacific-Atlantic Trading Co.)</u>, 27 F.3d 401 (9th Cir. 1994).  Under Section 365(d)(3), the Debtors must immediately pay obligations under the Leases pursuant to the Leases' terms, without such delay as may occur as to ordinary Section 503 claims. <u>See, e.g., In re Microvideo Learning Systems</u>, 254 B.R. 90, 93 (S.D.N.Y. 1999); <u>In re Duckwall-Alco Stores, Inc.</u>, 150 B.R. 965, 971 n.10 (Bankr. D. Kan. 1993).  This heightened priority exists because the Debtors' obligations under Section 365(d)(3) are independent of, and not subject to, the requirements for the allowance of administrative expenses pursuant to Section 503. <u>See In re Valley Media, Inc.</u>, 290 B.R. 73, 77 (Bank. D. Del. 2003); <u>In re Coastal Dry Dock & Repair Corp.</u>, 62 B.R. 879, 882-83 (Bankr. E.D.N.Y. 1986).

24.    Therefore, the Debtors must continue to satisfy all post-petition obligations in a timely manner during any extension period.  If the Debtors fail to perform on their post-petition obligations, or if other cause arises, Landlords maintain the right to compel a shorter time to assume or reject, irrespective of any extension period.

**C.      Any further extension beyond 210 days requires Landlords' consent.**

25.      Should "cause" be shown to grant the single 90-day extension that Section 365(d)(4) authorizes, any extension must remain subject to the rights of Landlords under the Bankruptcy Code.  The proposed order states that the extension request is without prejudice to the Debtors rights to seek a further extension of time to assume or reject leases.  Any final order should accurately reflect that Section 365(d)(4)(B) requires that any request by the Debtors for an additional extension of time to assume or reject leases must be done with the written consent of the Landlords.

**D.      No extension may be granted beyond the date of confirmation of a plan.**

26.      The proposed order approving the Extension Motion also does not provide the typical limitation that any extension is limited to the earlier of the 210-day period, and the confirmation of a plan.  Any extension of time to assume or reject leases should be limited so that that such extension does not extend beyond the confirmation of a plan.  Prior to the enactment of Section 365(d)(4), Section 365(d)(2) permitted the assumption or rejection of all unexpired leases, including leases of non-residential real property, "at any time before the confirmation of a plan."

27.      Nothing in the subsequent amendments to the Bankruptcy Code has changed the requirement that a lease be assumed or rejected no later than plan confirmation.[2]  In fact, the current language of Section 365(d)(4) still includes this language, providing that the Debtor must assume or reject the Leases "by the earlier of – (i) the date that is 120 days after the date of the order for relief; or (ii) the date of the entry of an order confirming a plan."  11 U.S.C.

---

[2] The authority to assume or reject leases is limited by the express terms of Section 365(a) to a trustee, which includes a debtor-in-possession by virtue of Section 1107(a), but does not extend to reorganized debtors.  See In re Grinstead, 75 B.R. 2, 3 (Bankr. D. Minn. 1985) ("There is no debtor in possession status of a debtor post confirmation.").

§ 365(d)(4).  Therefore, there is no authority for the Debtor to delay the assumption of the Leases beyond the date of plan confirmation.  See In re Dynamic Tooling Systems, Inc., 349 B.R. 847, 854 (Bankr.  D. Kan. 2006); see also In re Cole, 189 B.R. 40, 46 (Bankr. S.D.N.Y. 1995) citing 5 L. King, Collier on Bankruptcy, ¶ 1123.02 at 1123-20 to 1123-21 (15th ed. 1994).

28.     While it is unlikely the Debtors will ultimately confirm a plan, the Court should nevertheless limit any order on the Extension Motion accordingly, consistent with the statutory language.  As a result, if granted, the Court should limit any extension of time to the earlier of the date of entry of an order confirming a plan or April 7, 2025.

## III.    RESERVATION OF RIGHTS

29.     Landlords reserve the right to make such other and further objections to the Extension Motion as may be appropriate based upon any new information provided by Debtors or upon any different relief requested by Debtors.

## IV.    JOINDER

30.     To the extent not inconsistent with the foregoing, Landlords join in any other opposition to the Extension Motion.

## V.    CONCLUSION

Based on the foregoing, Landlords respectfully request that, if granted, any order on the Extension Motion provide: (a) for the timely payment of all post-petition administrative expenses associated pursuant to 11 U.S.C. § 365(d)(3) during any extension period; (b) that any further extension be conditioned upon written consent of any affected Landlord; (c) that the all Leases be assumed or rejected by the earlier of (i) plan confirmation, and (ii) April 7, 2025; and (d) for such other and further relief as the Court deems just and proper.

Dated: January 14, 2025
Wilmington, Delaware

/s/ Laurel D. Roglen
Leslie C. Heilman (DE No. 4716)
Laurel D. Roglen (DE No. 5759)
Margaret A. Vesper (DE No. 6995)
Erin L. Williamson (DE No. 7286)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: heilmanl@ballardspahr.com
        roglenl@ballardspahr.com
        vesperm@ballardspahr.com
        williamsone@ballardspahr.com

and

Dustin P. Branch, Esquire
Nahal Zarnighian, Esquire
Sara Shahbazi, Esquire
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: (424) 204-4400
Facsimile: (424) 204-4350
E-mail:  branchd@ballardspahr.com
        zarnighiann@ballardspahr.com
        shahbazis@ballardspahr.com

and

Craig Solomon Ganz, Esquire
Michael S. Myers, Esquire
Joel F. Newell, Esquire
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: (602) 798-5427
Facsimile: (602) 798-5595
E-mail: ganzc@ballardspahr.com
        myersm@ballardspahr.com
        newellj@ballardspahr.com

*Attorneys for 35/WCD Century South K/C LTD; Alta Center, LLC; ARC ASANDSC001, LLC; Beacon Plaza LLC; BMA Beachwood, LLC; Brixmor Operating Partnership LP; Millan Holdings LLC; Netstreit; RD Management LLC; Robhana Group; Sun Plaza Shops, LLC; The Carrington Company; TJ Elite Properties, LLC; Urban Edge Properties LLC; and Whittier Trust Company*

## SCHEDULE 1

| LANDLORD | SHOPPING CENTER | LOCATION | STORE NO. |
|---|---|---|---|
| 35/WCD Century South K/C Ltd. | Century South | Austin, TX | 4387 |
| Alta Center, LLC | Colonial Plaza Partners Annex | Fort Myers, FL | 1545 |
| ARC ASANDSC001 | Anderson Station | Anderson, SC | 5367 |
| Beacon Plaza LLC | Beacon Plaza | Panama City, FL | 5490 |
| BMA Beachwood, LLC | Pavilion Shopping Ctr. | Beachwood, OH | 5181 |
| Brixmor Operating Partnership LP | County Line Plaza | Souderton, PA | 5468 |
| Brixmor Operating Partnership LP | County Line Plaza | Souderton, PA | Storage |
| Brixmor Operating Partnership LP | Fox Run Shopping Ctr. | Prince Frederick, MD | 5460 |
| Brixmor Operating Partnership LP | Lehigh Shopping Ctr. | Bethlehem, PA | 1380 |
| Brixmor Operating Partnership LP | Merchant's Park | Houston, TX | 4237 |
| Brixmor Operating Partnership LP | Northgate Shopping Ctr. | DeLand, FL | 5387 |
| Brixmor Operating Partnership LP | Panama City Square | Panama City, FL | 5215 |
| Brixmor Operating Partnership LP | Shoppes at Valley Forge | Phoenixville, PA | Storage |
| Brixmor Operating Partnership LP | Shoppes at Valley Forge | Phoenixville, PA | 5441 |
| Brixmor Operating Partnership LP | Stevens Park Village | Dallas, TX | 4652 |
| Millan Holdings LLC | Center State Station | Springfield, TN | 1797 |
| Millan Holdings LLC | Wal-Mart Center | Hermitage, TN | 1845 |
| Netstreit | 3000 Scottsville Rd | Bowling Green, KY | 4729 |
| Netstreit | 14333 Eureka Rd | Southgate, MI | 4723 |
| Netstreit | Cypress Mill Square | Brunswick, GA | 1507 |
| Netstreit | Elizabeth City Crossing | Elizabeth City, NC | 1891 |
| Netstreit | Shops on the Circle | Dothan, AL | 5239 |
| Netstreit | Southland Shopping Ctr. | Kingsport, TN | 225 |
| RD Management LLC | Port Huron Shopping Ctr. | Port Huron, MI | 835 |

| LANDLORD | SHOPPING CENTER | LOCATION | STORE NO. |
|---|---|---|---|
| RD Management LLC | Shops at Billerica | Billerica, MA | 5225 |
| Robhana Group | Bay Plaza | National City, CA | 4126 |
| Sun Plaza Shops, LLC | Heart of Florida Shopping Ctr. | Haines City, FL | 5265 |
| The Carrington Company | 791 W. Elk Avenue | Elizabethton, TN | 5345 |
| TJ Elite Properties, LLC | 8318 Farm to Market Rd 78 | Converse, TX | 4641 |
| Urban Edge Properties LLC | Wonderland Marketplace | Revere, MA | 4658 |
| Urban Edge Properties LLC | Town Brook Commons | Middletown, NJ | 5198 |
| Whittier Trust Company | 400 Campbellville BYP | Campbellsville, KY | 1842 |
| Whittier Trust Company | Hunting Creek Plaza | Conyers, GA | 1989 |