# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*,[1] | Case No. 24-11967 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: January 28, 2025 at 4:00 p.m. (ET)**<br>**Hearing Date: February 26, 2025 at 10:30 a.m. (ET)** |

## ROUNDTRIPPING LTD.'S MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

Roundtripping Ltd. ("**Roundtripping**" or "**Claimant**"), by and through its undersigned counsel, hereby moves (the "**Motion**") for allowance and payment of administrative expenses entitled to administrative priority (i) pursuant to 11 U.S.C. § 503(b)(9), and (ii) for goods that were delivered to and actually received by the Debtors post-petition pursuant to 11 U.S.C. § 503(b)(1)(A), and in support of the Motion respectfully states as follows:

## BACKGROUND

1.  On September 9, 2024 (the "**Petition Date**"), each of the above-captioned debtors filed voluntary petitions for relief under chapter 11, title 11, United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

2. The period starting 20 days before the Petition Date begins on August 20, 2024 (the "**503(b)(9) Claims Period**").

3. Goods actually received by the Debtors on or after the Petition Date constitute "**Post-Petition Goods**."

4. Roundtripping is a trade creditor of Big Lots affiliated debtors AVDC LLC ("**AVDC**"), Big Lots Stores, LLC ("**Big Lots Stores**"), Closeout Distribution, LLC ("**Closeout**"), CSC Distribution LLC ("**CSC**"), and Durant DC, LLC ("**Durant DC**" and, together with their affiliated debtors, the "**Debtors**")[2] who received purchase orders and fulfilled those orders in the normal course of business.

5. Pursuant to various purchase orders (the "**Purchase Orders**") issued by the Debtors, Roundtripping shipped various goods to the Debtors from ports in Asia to the Debtors' distribution centers or stores in the United States for retail sale by the Debtors.

6. Importantly, the Purchase Orders provide that "[u]nless expressly stated differently on the PO from Buyer, <u>title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC</u> or the location otherwise designated by Buyer in the PO."[3]

---

[2] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/biglots. The location of the Debtors' service address is: 4900 E. Dublin-Granville Road, Columbus, Ohio 43081.

[3] *See* Purchase Orders at 2, ¶ 2. Specifically the Debtors' Purchase Orders provide:

> 2. Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. *Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.*

The Purchase Orders issued by the Debtor are voluminous and will be provided upon request.

7. Similarly, the Debtors' *Import Supplier Manual 4.4*, also provides that "[u]nless expressly stated differently on the PO from Buyer, <u>title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC</u> or the location otherwise designated by Buyer in the PO."[4]

8. Thus, pursuant to the express terms of the *Purchase Orders* and *Import Supplier Manual*, the Debtors did not obtain title until the goods reached the Debtors' distribution facilities in the United States as set forth on the *Purchase Orders*.

9. The Debtors placed orders for goods from Roundtripping that have been delivered but have not been paid for. A portion of these goods were delivered to the Debtors' possession within the 503(b)(9) Claims Period ("**503(b)(9) Deliveries**"). Other portions of these goods have been delivered and/or received on or after the Petition Date (the "**Post-Petition Deliveries**"), based on available records or upon information and belief formed after a reasonable inquiry.

10. Roundtripping delivered goods ordered by the Debtors in the normal course of business. Within the 503(b)(9) Claims Period, Roundtripping delivered goods valued at $1,247,437.04 to the Debtors as set forth below:

| AVDC | $260,569.14 |
| Big Lots Stores | $409,325.44 |
| Closeout | $28,992.60 |
| CSC | $135,879.36 |
| Durant | $412,670.50 |
| **Total 503(b)(9) Claim** | **$1,247,437.04** |

11. Roundtripping also delivered goods in Post-Petition Deliveries valued at $3,535,075.71 to the Debtors as set forth below:

| AVDC | $362,959.58 |
| Big Lots Stores | $670,679.22 |

---

[4] *See Import Supplier Manual* at 11, ¶ 2. The Big Lots *Import Supplier Manual* is 56 pages long and will be made available upon request.

| Closeout | $1,265,826.53 |
| --- | --- |
| CSC | $1,038,646.57 |
| Durant | $196,963.81 |
| **Post-Petition Total** | **$3,535,075.71** |

12. In total, Roundtripping delivered $4,782,512.75 worth of goods entitled to administrative priority in the normal course of business. Roundtripping's claim is better described in the enclosed Declaration of Dennis Wang ("**Wang Declaration**"), which includes invoices and Big Lots Purchase Orders, as attached herein as **EXHIBIT A**.

13. True and correct copies of the invoices and purchase orders for the goods set forth above are attached to the Wang Declaration as **EXHIBIT 1**. In order to determine the date that the goods were actually received at the Debtors' distribution centers, the Roundtripping team went on the carrier's website and searched the relevant container number. Entering the container numbers allowed Roundtripping to see the location, date and time of delivery to the Debtors. We used the following carrier websites to confirm the information:

CMA: https://www.cma-cgm.com/
Maersk: https://www.maersk.com/
Hyundai: https://www.hmm21.com/company.do
MSC: https://www.msc.com/en
ONE: https://www.one-line.com/en
OOCL: https://www.oocl.com/eng/Pages/default.aspx
Hapag: https://www.hapag-lloyd.com/en/home.html.

14. A summary showing the amounts due and the dates that the Goods were received by the Debtors is attached to the Wang Declaration as **EXHIBIT 2.**

15. Moreover, on October 4, 2024, Roundtripping entered into a *Critical Vendor Agreement* (the "**CV Agreement**") with the Debtors pursuant to which Roundtripping agreed, among other things, to continue to provide goods post-petition according to customary trade terms and that it would "not demand a lump sum payment upon consummation of a chapter 11 plan on account of any administrative expense priority claim … if the plan provides for the ongoing

4

operations of the Company," which at this point appears unlikely.[5] Roundtripping further agreed that its total claim should be reduced by the amounts actually paid to Roundtripping by the Debtors pursuant to the CV Agreement.

16. As of the date of the filing of this Motion, the Debtors are in breach of the CV Agreement as they have failed to make a payment in the amount of $1,000,000 (the "**CV Payment**") on account of Roundtripping's "Vendor Settled Claim" (as that term is defined in the CV Agreement).

## JURISDICTION AND VENUE

17. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

18. Rountripping seeks allowance and payment of these trade debts as administrative claims in the total amount of $4,782,512.75. In addition, Roundtripping seeks payment of the CV Payment.

i. *Roundtripping's 503(b)(9) Administrative Expenses Should be Allowed*

19. The Court shall allow administrative expenses, after notice and hearing, in the amount of the value of any goods received by the debtor within 20 days before the Petition Date. 11 U.S.C. § 503(b)(9). For the purposes of 503(b)(9) claims, "receipt" occurs when the debtor takes physical possession of the items. *In re World Imports, Ltd.*, 862 F.3d 338, 346 (3d Cir. 2017). The 503(b)(9) Deliveries at issue for the present claim were taken into Debtors' possession within 20 days before the Petition Date, so these 503(b)(9) claims should be allowed.

---

[5] Upon information and belief, the CV Agreement is confidential and will be provided upon request.

ii.     ***Roundtripping's Post-Petition Delivery Administrative Expenses Should be Allowed***

20.     Similarly, the Post-Petition Deliveries were received by the Debtors once they took physical possession after the Petition Date, even if the goods were shipped before the Petition Date. Administrative expenses shall be allowed for "the actual, necessary costs and expenses of preserving the estate[.]" 11 U.S.C. § 503(b)(1)(A).

21.     To be awarded an administrative expense claim, a claimant must demonstrate that it conducted a transaction with a debtor in possession that, in turn, provided a benefit to such debtor's estate. *See Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.)*, 181 F.3d 527, 532–33 (3d Cir. 1999) (noting that, to establish a priority claim under section 503(b)(1)(A) of the Bankruptcy Code, the debt must arise post-petition and benefit the estate (citations omitted)).

22.     Roundtripping submits that, pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in connection with the post-petition delivery of desired and necessary goods, including goods ordered prepetition, are in fact administrative expense priority claims in virtually all instances. Indeed, even if the goods had been received in the ordinary course of the Debtors' business 20 days before the Petition Date, the related claims would receive administrative expense priority under section 503(b)(9) of the Bankruptcy Code. *See In re GWLS Holdings, Inc.*, No. 08-12430 (PJW) (Bankr. D. Del. Oct. 22, 2008); *In re Chateaugay Corp.*, 10 F.3d 944, 956 (2d Cir. 1993) (holding that an obligation from post-petition performance related to a prepetition transaction is entitled to administrative expense priority). Further, where transactions involve both the delivery of goods and associated services, courts have granted priority under section 503(b)(9)

of the Bankruptcy Code to the portion of the claim relating to the sale of goods. *See In re NE Opco, Inc.*, 501 B.R. 233, 257 (Bankr. D. Del. 2013).[6]

23. Roundtripping is a foreign vendor, whose services are "vital" and necessary for maintaining the value of the Debtors' estates. Roundtripping's uninterrupted shipment of goods to the Debtors have been critical to the Debtors' business during this bankruptcy, and therefore the Claimant has provided direct and substantial benefits to the estates.

24. In the Debtors' own words:

> The Debtors strongly believe that the uninterrupted supply of Goods and Services, on Customary Trade Terms, and the continuing support of their customers are imperative to the Debtors' ongoing businesses and operations and the preservation and maximization of the value of the Debtors' estates. The continued availability of trade credit, in amounts and on terms consistent with those that the Debtors have worked hard to obtain over time, is also clearly advantageous to the Debtors, as it allows the Debtors to maintain and enhance necessary liquidity and to focus on returning to profitability and preserving and maximizing the value of the Debtors.

Critical Vendor Motion [D.I. 11] at 20.

25. Therefore, Roundtripping's administrative expense claims for Post-Petition Deliveries should be allowed, using the logic of the Debtors' own prior representations and arguments.

---

[6] The arguments in this paragraph are taken, almost word for word, from the Debtors' own *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors To Pay Prepetition Critical Vendor Claims, Foreign Vendor Claims, and 503(b)(9) Claims in the Ordinary Course of Business, (II) Granting Administrative Expense Status to Debtors' Undisputed Obligations to Vendors Arising From Post-Petition Delivery of Goods Ordered Prepetition and Authorizing Debtors To Pay Those Obligations in the Ordinary Course of Business, (III) Authorizing Debtors To Return Goods, (IV) Authorizing Debtors To Pay Certain Prepetition Claims of Lien Claimants, and (V) Authorizing Financial Institutions To Honor and Process Related Checks and Transfers* (the "**Critical Vendor Motion**," [D.I. 11 ¶¶ 39-40].

iii. *The Court Should Compel Payment of Claimants' Administrative Expense Claims in the Ordinary Course of Business*

26. Although this Court has discretion to require that Claimant's administrative expenses be paid immediately (*In re Garden Ridge Corp.*, 323 B. R. 136, 143 (Bankr. D. Del. 2005)), in light of the CV Agreement, Roundtripping asks that the Court direct the Debtors to pay Roundtripping's administrative expense claims as they come due in the ordinary course of business.

27. Here, the Debtors received final authority to pay up to $60 million in critical vendor claims including up to $37 million in section 503(b)(9) claims. *See* D.I. 463 (the "**Critical Vendor Order**").

28. The Debtors also had authorization—and a DIP and cash collateral budget—permitting them to pay in excess of $50 million in operating disbursements per week, which amount includes section 503(b)(9) and post-petition delivery claims. *See* D.I. 114 at 431 (interim DIP order); D.I. 584 (final DIP order).

29. Roundtripping relied upon the Debtors' DIP financing orders, the Court-approved budget, the Critical Vendor Order, among other things, in determining whether to continue its business relationship with the Debtors. The Court should not permit other parties to be paid on the backs of the Debtors' trade creditors such as Roundtripping.

30. The totality of the circumstances supports compelling the Debtors to pay Roundtripping's administrative claims in the ordinary course of business, as further delay in payment will only prejudice Roundtripping, and there is no cognizable prejudice to the Debtors or to the Debtors' other creditors.

31. Accordingly, Roundtripping requests that its administrative expense claims be paid in the ordinary course of business following entry of this Court's order granting the Motion.

## RESERVATION OF RIGHTS

32. By entering this motion or making these claims, Roundtripping does not waive any rights related to the matters herein, including the right to submit these claims to insurance.

## CONCLUSION

33. Roundtripping respectfully requests that the Court enter an order, substantially in the form attached hereto as **EXHIBIT B**, (a) allowing Roundtripping's administrative expense claims against the Debtors in an amount no less than $4,782,512.75, (b) ordering that those administrative expense claims be paid in the ordinary course of business, and (c) ordering the Debtors to pay the CV Payment.

Dated: January 14, 2025.
Wilmington, Delaware

**GIBBONS P.C.**

*Katharina Earle*
Katharina Earle (No. 6348)
300 Delaware Avenue, Suite 1015
Wilmington, DE 19801-1671
Tel: 302-518-6300
Fax: 302-429-6294
Email: kearle@gibbonslaw.com

and

Mark Conlan, Esq. (admitted *pro hac vice*)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Tel: 973-596-4545
E-mail: mconlan@gibbonslaw.com

*Counsel for Roundtripping Ltd.*