IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 588, 1289, 1404, 1406, 1421, 1436, 1451, 1452, 1453, 1487, 1491, 1494, 1508, 1561, 1566, 1571, 1572, 1577, 1578, 1581, 1583, 1584, 1586, 1591, 1594, 1596, 1604, 1608, 1609, 1610, 1611, 1612, 1613, 1615, 1617, 1619, 1622, 1623, 1624, 1626, 1627, 1628, 1640, 1641, 1656** |

### DEBTORS' OMNIBUS OBJECTION TO MOTIONS FOR ALLOWANCE AND PAYMENT OF STUB RENT, POST-PETITION RENT AND OTHER ADMINISTRATIVE EXPENSE CLAIMS

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**" or "**Big Lots**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), file this omnibus objection (this "**Objection**") to (a) the motions to allow and compel payment of administrative expense claims (collectively, the "**Trade Motions**") filed by certain trade creditors (collectively, the "**Trade Movants**"), which are listed on **Exhibit A** attached hereto and (b) the motions to compel payment of stub rent and/or post-petition rent (collectively, the "**Rent Motions**" and, together with the Trade Motions, the "**Motions**") filed by

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

certain landlords (collectively, the "**Landlord Movants**" and, together with the Trade Movants, the "**Movants**"), which are listed on **Exhibit B** attached hereto.[2] In support of this Objection, the Debtors respectfully state as follows:

## Objection

### I. Preliminary Statement

1. Each of the Movants seeks essentially the same relief: entry of an order (a) allowing asserted administrative expense claims and (b) directing the Debtors to pay such claims within a specified amount of time after approval of such claims. Specifically, the Movants assert the following categories of claims (collectively, the "**Alleged Administrative Expense Claims**"):

- Claims under section 503(b)(9) for delivery of goods within the 20-day period prior to September 9, 2024 (the "**Petition Date**");[3]

- Claims under section 503(b)(1)(A) for delivery of goods post-Petition Date in the ordinary course of business or pursuant to Critical Vendor Agreements[4],[5]

---

[2] The Debtors note that certain Trade Motions (D.I. 1628 and 1656) and Rent Motions (D.I. 1640 and 1461) were not timely filed to be noticed for the January 21, 2025 omnibus hearing pursuant to Rule 9006-1(c)(i) of Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"). *See* Del. Bankr. L.R. 9006-1(c)(i) ("[A]ll motion papers shall be filed and served in accordance with Local Rule 2002-1(b) at least fourteen (14) days prior to the hearing date."). Such Motions were likewise not accompanied by a motion to shorten notice under Local Rule 9006-1(e) and Federal Rule of Bankruptcy Procedure 2014-1(b), as other recent motions to compel were. *See, e.g.*, D.I. 1665, 1673. The Debtors respectfully submit that such Motions should not be considered by the Court at this time. However, if the Court decides to hear such Motions at the January 21, 2025 omnibus hearing, the arguments made by the Debtors in this Objection shall apply to such Motions. The Debtors reserve the right to supplement this Objection to such late-filed Motions in the event such Motions are scheduled to be heard at a later date.

[3] *See, e.g.*, D.I. 1571, 1572, 1604.

[4] As defined in the *Final Order (I) Authorizing Debtors To Pay Prepetition Critical Vendor Claims, Foreign Vendor Claims, and 503(b)(9) Claims in the Ordinary Course of Business, (II) Granting Administrative Expense Status to Debtors Undisputed Obligations to Vendors Arising From Post-Petition Delivery of Goods Ordered Prepetition and Authorizing Debtors To Pay Those Obligations in the Ordinary Course of Business, (III) Authorizing Debtors To Return Goods, (IV) Authorizing Debtors To Pay Certain Prepetition Claims of Lien Claimants, and (V) Authorizing Financial Institutions To Honor and Process Related Checks and Transfers* [D.I. 463] (the "**Final Vendors Order**").

[5] *See, e.g.*, D.I. 1421, 1452, 1453, 1491, 1494, 1571, 1572, 1577, 1581, 1584, 1586, 1594, 1604, 1608, 1609, 1624, 1626, 1628, 1656.

- Claims under section 503(b)(1)(A) for "stub rent" owing on account of occupancy and usage of leases during the post-Petition Date segment of September 2024;[6]

- Claims under section 365(d)(3) and 503(b)(1)(A) for post-Petition Date rent and lease-related obligations through the date of the Sale (as defined below);[7] and

- Claims under section 365(d)(3) and 503(b)(1)(A) for go-forward rent and lease-related obligations for the post-sale period.[8]

2. The Debtors respectfully request that the Court defer determining the amount of the Alleged Administrative Expense Claims until after the as-yet-to-be-determined administrative expense reconciliation process is established. As stated on the record during the January 2, 2025 hearing, the Debtors have committed to establish, in consultation with the Committee, a procedure for the reconciliation of administrative expense claims. *See* Jan. 2, 2025 Hr'g Tr. at 48:20–24. Now that the sale (the "**Sale**") to Gordon Brothers Retail Partners, LLC ("**GBRP**") has been consummated,[9] the Debtors are at a critical juncture in these Chapter 11 Cases and the Debtors' estates simply cannot be burdened with the tremendous cost and resource drain that would result from allowing the Alleged Administrative Expense Claims and requiring that such claims be paid immediately, let alone the distraction of actively litigating dozens of motions seeking the same relief. Much work remains ahead of the Debtors during the Designation Rights Period to effectuate an orderly transition of the Debtors' operations and assets to GBRP and its designees.[10]

---

[6] *See, e.g.*, D.I. 588, 1289, 1404, 1436, 1451, 1610, 1611, 1612, 1613, 1615, 1617, 1619, 1622, 1623.

[7] *See, e.g.*, D.I. 588, 1406, 1436, 1451, 1487, 1566, 1578, 1610, 1611, 1612, 1615, 1617, 1619, 1622, 1623, 1627, 1640, 1641.

[8] *See, e.g.*, D.I. 1622, 1623.

[9] *See Notice of Closing of Sale of Debtors' Assets to Gordon Brothers Retail Partners* [D.I. 1588].

[10] The Debtors intend to file a motion to be heard at the omnibus hearing scheduled for February 26, 2025 (or an earlier hearing date) establishing a bar date and procedures for filing claims related to administrative expenses accrued prior to the closing of the Sale.

3

3.	Moreover, as explained in the Debtors' Exclusivity Extension Motion,[11] the prospect of having to reconcile numerous administrative expense claims at this stage would substantially jeopardize the forward momentum in these Chapter 11 Cases to bring them to a conclusion and disrupt the Debtors' efforts to bring the cases to a consensual and value-maximizing resolution.[12]  Accordingly, it is not a prudent use of the Debtors' and their advisors' time to engage in an *ad hoc* claims reconciliation process at this stage of the Chapter 11 Cases and determine the validity of any administrative expense claims to which the Movants *may* be entitled.[13]

4.	In any event, even if the Alleged Administrative Expense Claims were to be allowed, the Court should not compel the Debtors to pay such claims at this time, as such relief would reward the Movants for filing their *ad hoc* requests for immediate payment ahead of similarly-situated claimants and thus encourage the race to the courthouse that is anathema to the collective nature of a bankruptcy proceeding.  *See In re Glob. Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr D. Del. Dec. 21, 2006) ("[O]ne of the chief factors courts consider [in determining whether to grant a motion to compel immediate payment] is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets . . . .") (internal quotation marks and citations omitted) (citing *In re HQ Glob. Holdings, Inc.*, 282 B.R. 169, 172 (Bankr. D. Del. 2002)).  When determining whether to grant a motion to compel immediate payment, courts (including this Court) generally attempt to balance

---

[11] *See Debtors' Motion for Entry of an Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances* [D.I. 1590] (the "**Exclusivity Extension Motion**") ¶ 25.

[12] *See id.* ¶ 26.

[13] The Debtors, along with their advisors and in consultation with the Committee, are currently reconciling their books and records to determine their view on the allowable amount of the Alleged Administrative Expense Claims.

the relative hardships between the administrative claimant and the debtor's estate. *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005); *accord In re Glob. Home Prods., LLC*, 2006 WL 3791955, at *4. However, many of the Movants have not even attempted to include evidence or legal justification that they will suffer hardship if immediate payment is not authorized. *See In re NE Opco, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013) (denying a motion for immediate payment of a section 503(b)(9) claim where the movant "ha[d] not presented any evidence" that a delay in payment would impose a hardship). In sharp contrast, the record in these Chapter 11 Cases, including the hearing to approve the Sale, is replete with evidence that paying the Alleged Administrative Expense Claims would be a burden on the Debtors' estates and would prejudice other creditors.

5.     Given the applicable precedent to the contrary,[14] as well as the unique circumstances of these Chapter 11 Cases, this Court should not open the floodgates by granting the requests for immediate payment of the Alleged Administrative Expense Claims. Instead, consistent with the Debtors' representations on the record at the January 2, 2025 hearing[15] and in the Debtors' Exclusivity Extension Motion,[16] the Court should permit the Debtors to work with the Committee and other relevant stakeholders to establish an orderly and value-maximizing administrative claims reconciliation process that will treat all administrative claims equitably. Absent the ability of the Debtors to process and reconcile administrative expense claims in an orderly fashion, Movants will attempt to collect on their Alleged Administrative Expense Claims to the detriment of all other similarly situated administrative claimants in these Chapter 11 Cases. Because the Bankruptcy Code and equitable principles do not countenance such a result, the Court

---

[14] *See, e.g.*, *In re Glob. Home Prods., LLC*, 2006 WL 3791955; *In re NE Opco, Inc.*, 501 B.R. 233.

[15] *See* Jan. 2, 2025 Hr'g Tr. at 48:20–24.

[16] *See* Exclusivity Extension Mot. ¶ 25.

should deny the Motions or, at the very least, hold such Motions in abeyance pending the Debtors' presentation of an acceptable set of procedures for reconciling and making distributions on account of such claims.

II. **The Court Should Deny the Motions or, in the Alternative, Hold the Motions in Abeyance**

    A. **Compelling Immediate Payment Would Run Afoul of Established Caselaw and Equitable Bankruptcy Principles**

6. The Court should deny the Motions without prejudice or, at the very least, hold such Motions in abeyance until the Debtors have a reasonable opportunity to work with the Committee and other parties in interest to establish an orderly process for reconciling administrative expense claims, including the establishment of an administrative claims bar date.

7. In general, courts have broad discretion to determine when an administrative expense claim will be paid. *See In re Garden Ridge Corp.*, 323 B.R. at 143 (citations omitted); *In re Cont'l Airlines, Inc.*, 146 B.R. 520, 531 (Bankr. D. Del. 1992); *see also In re Midway Airlines Corp.*, 406 F.3d 229, 242 (4th Cir. 2005) (holding that the bankruptcy court did not abuse its discretion when it deferred the payment of administrative claim and commenting that "in most situations the courts prefer to postpone payment of the administrative claim until confirmation of a plan or distribution in a liquidation") (internal citations omitted). "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." *In re Garden Ridge Corp.*, 323 B.R. at 143.

> In making this determination, one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets. . . . Courts will also consider the particular needs of each administrative claimant and the length and expense of the case's administration. To qualify for exceptional immediate payment, a creditor must show that there is a necessity to pay and not merely that the Debtor has the ability to pay.

*In re Glob. Home Prods., LLC*, 2006 WL 3791955, at *3 (internal quotation marks and citations omitted) (citing *In re HQ Glob. Holdings, Inc.*, 282 B.R. at 172).

8. Indeed, most courts faced with requests for immediate payment of administrative claims postpone the actual payment of such claims until confirmation of a plan or conclusion of a debtor's chapter 11 cases. *Cont'l Airlines*, 146 B.R. at 531 (collecting cases). This is because a court "can better assess the amount of administrative claims asserted against [a debtor's bankruptcy] estate and the funds available to satisfy such claims" at the conclusion of the debtor's case. *In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 1562201, at *10 (Bankr. S.D.N.Y. Mar. 17, 2003) (deferring any payment until confirmation of the debtor's plan of reorganization). Even more relevant to the specific circumstances in these Chapter 11 Cases, this Court has noted on multiple occasions that "[d]istributions to administrative claimants are generally disallowed prior to confirmation if there is a showing that the bankruptcy estate may not be able to pay all of the administrative expenses in full." *In re Glob. Home Prods.*, 2006 WL 3791955, at * 3 (quoting *In re HQ Glob. Holdings*, 282 B.R. at 173); *accord In re NE Opco, Inc.*, 501 B.R. at 259.[17] The exact concerns expressed by courts have borne out in these Chapter 11 Cases, as evidenced by the deluge of motions to compel that have been filed and, as of the date hereof, continue to be filed.

9. Accordingly, for the reasons set forth above, the Debtors respectfully request that the Court deny the Motions without prejudice or hold such Motions in abeyance until the Debtors have established an orderly process for reconciling administrative expense claims. Alternatively, if the Court allows the Alleged Administrative Expense Claims, the Debtors request that the Court not require such claims to be paid immediately, as doing so would prejudice both the Debtors and

---

[17] *See also* Dec. 31, 2024 Hr'g Tr. at 25:8–14; 42:11–14; 43:2–4 ("Q. And vendors who have provided inventory to the debtors are not being paid their claims in full; is that correct? [MR. PERCY] A. Is our estimation that they will not receive full recovery.")

other administrative claimants who have not filed motions to compel. Specifically, the Debtors and their estates would be substantially prejudiced by having to reconcile the Alleged Administrative Expense Claims and pay any valid portion of such claim entitled to administrative expense priority now, which could (a) disturb the Debtors' financial projections, (b) invite additional requests from other administrative expense claimants for immediate payment, and (c) distract the Debtors from more time-sensitive tasks during these critical stages of the Chapter 11 Cases.

### B. Movants' Justifications for Compelling Immediate Payment are Factually Incorrect and/or Legally Irrelevant

10. Aside from the equitable reasons that exist for why the Court should not compel immediate payment of the Alleged Administrative Expense Claims, many of the Trade Motions are based on outdated and flawed assumptions about the Debtors' current financial wherewithal and/or the Debtors' access to funding in these Chapter 11 Cases.

11. *First*, contrary to some of the assertions made in the Trade Motions,[18] the $60 million cap in the Final Vendors Order is irrelevant to the Debtors' ability and willingness to pay administrative expense vendor claims during the pendency of the Chapter 11 Cases. This amount was calculated by the Debtors prior to the Petition Date based on the amount the Debtors sought to pay to critical vendors that were not otherwise entitled to administrative expense priority (whether under section 503(b)(9) or otherwise). Nor is the cap an admission by the Debtors that the Debtors will not be prejudiced by immediate payment of the Alleged Administrative Expense Claims, as some of the Trade Motions assert.[19] Instead, as set forth in the Debtors' Vendors Motion, such caps were "designed . . . as estimates of how much must be paid on account of

---

[18] *See, e.g.*, D.I. 1584 at ¶¶ 8, 38.

[19] *See, e.g., id.* at ¶ 38.

8

prepetition obligations *during the pendency of the Chapter 11 Cases*."[20]  Needless to say, the circumstances of these Chapter 11 Cases have changed substantially since such caps were calculated, and thus they are not evidence—let alone reliable evidence—of the Debtors' ability to pay the Alleged Administrative Expense Claims immediately.

12.    *Second*, certain of the Trade Motions argue that, because the Debtors have access to approximately $50 million under the DIP ABL Facility and a budget that permits the Debtors to make payments to post-petition vendors,[21] the Debtors will not be prejudiced by the Court compelling immediate payment of the Alleged Administrative Expense Claims.[22]  This argument fails for several reasons, as it is both factually incorrect and legally irrelevant.  As an initial matter, the Debtors no longer have access to a DIP budget given that the DIP Facilities were paid in full on the closing date of the GBRP Sale.[23]  Indeed, as the Debtors represented at the GBRP Sale hearings on December 30 and 31, 2024, the Debtors' assets following the closing of the GBRP sale will consist of, among other things, (a) the proceeds from the sale of the Debtors' corporate headquarters, (b) shares of certain retained litigation actions, and (c) certain retained tax refunds.

---

[20] *See Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors To Pay Prepetition Critical Vendor Claims, Foreign Vendor Claims, and 503(b)(9) Claims in the Ordinary Course of Business, (II) Granting Administrative Expense Status to Debtors' Undisputed Obligations to Vendors Arising From Post-Petition Delivery of Goods Ordered Prepetition and Authorizing Debtors To Pay Those Obligations in the Ordinary Course of Business, (III) Authorizing Debtors To Return Goods, (IV) Authorizing Debtors To Pay Certain Prepetition Claims of Lien Claimants, and (V) Authorizing Financial Institutions To Honor and Process Related Checks and Transfers* [D.I. 11] (the "**Vendors Motion**") ¶ 36 (emphasis added).

[21] As defined in the *Final Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364, 503, 506, 507, and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection to Prepetition Secured Creditors, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [D.I. 584] (the "**Final DIP Order**").

[22] *See, e.g.*, D.I. 1452 at ¶ 19; 1453 at ¶ 22; 1491 at ¶ 20; 1508 at ¶ 20; 1583 at ¶ 19; 1584 at ¶ 38; 1586 at ¶ 20; 1594 at ¶ 13; 1656 at ¶ 26.

[23] *See Order (I) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform Under the GBRP APA, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "**GBRP Sale Order**") ¶ 19.

*See* Dec. 31, 2024 Hr'g Tr. at 95:19–96:12. There are no other sources of funding available to the Debtors other than the Excluded Assets (as defined in the GBRP APA) and the proceeds of the sale of the Debtors' Westminster property.[24] And even if the caps and budgets in the Final Vendors and DIP Orders were indications of the Debtors' ability to pay the Alleged Administrative Expense Claims—which they are not; they are merely budgets that previously gave the Debtors authorization to make such payments—such ability is not cause to compel immediate payment ahead of other similarly situated administrative claimants. *See Cont'l Airlines*, 146 B.R. at 531 ("To qualify for exceptional immediate payment, a creditor must show that 'there is a necessity to pay and not merely that the Debtor has the ability to pay.'") (quoting *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 179 (Bankr. S.D.N.Y. 1989)); *In re Glob. Home Prods., LLC*, 2006 WL 3791955, at *4 (noting that "potential detriment to other creditors" is a key consideration in determining whether to compel immediate payment) (citing *In re Garden Ridge Corp.*, 323 B.R at 143).

13. Accordingly, the Court (a) should defer a determination on the allowable amount (if any) of the Alleged Administrative Expense Claims and (b) should not compel payment of the Alleged Administrative Expense Claims because the Movants have failed to meet their burdens in seeking such relief.

### C. The Court Should Deny the Rent Motions

14. The Rent Motions should receive the same treatment as the Trade Motions. The Landlord Movants seek payments on account of either stub rent, alleged section 365(d)(3) obligations, or go-forward freight costs. None of these payment requests raise issues that this Court should address now.

---

[24] *See Order (I) Authorizing and Approving (A) The Debtors' Assumption of and Performance Under the Purchase Agreement and (B) The Sale of the Westminster Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (II) Approving the Settlement and (III) Granting Related Relief* [D.I. 1407].

15. As provided for in GBRP Sale Order, the Debtors promptly remitted all outstanding stub rent payments where alternative agreements had not been reached with the landlord. The Debtors have been in communication with counsel for the landlords and are working to ensure that any outstanding issues relating to stub rent payment are resolved mutually.

16. Similarly, pursuant to the GBRP Sale Order, GBRP has accepted to pay the go-forward freight costs associated with keeping leases available for designation, and this Court has acknowledged the certainty that the Sale provides for the remittance of those payments.[25] The Landlord Movants seeking assurances of such payments can simply turn to the GBRP Sale Order. In particular, at the request of counsel for certain landlords, the GBRP Sale Order specifically provides for this Court's retention of jurisdiction with respect to go-forward administrative expense payments.[26] The Rent Motions do not allege that GBRP has failed to make any required post-close payments, so there is no judiciable dispute before the Court on this issue.

17. The claims for alleged section 365(d)(3) obligations are also not ripe for resolution. There are many section 365(d)(3) and administrative claimants in these Chapter 11 Cases, and, as stated on the record, the Debtors are committed to establishing a fair and transparent process that does not involve a race to the courthouse. For the reasons already stated above, it would be inefficient, inequitable and inconsistent with precedent to require resolution and payment of these expenses now. The appropriate and reasonable course of action is to defer the determination of allowable claims, the relative priority of such claims and their payment so that a bar date and claims submission process can be established. This would provide a streamlined, fair and comprehensive treatment for all creditors and is the approach this Court should adopt.

---

[25] *See* Dec. 31, 2024 Hr'g Tr. at 228:4–6.
[26] GBRP Sale Order ¶ 101.

**Reservation of Rights**

18. Notwithstanding anything herein to the contrary, the Debtors reserve their rights to contest the allegations raised in the Motions on any other grounds, including that the Alleged Administrative Expense Claims asserted by Movants are not entitled to administrative expense priority or do not accurately reflect the amount of the Debtors' actual liability, whether or not such grounds are raised in this Objection. Nothing contained herein should be deemed to constitute an admission regarding the validity or allowability of Alleged Administrative Expense Claims or any other administrative expense claims asserted in these Chapter 11 Cases.

**Conclusion**

**WHEREFORE**, for the reasons set forth herein, the Debtors respectfully request that the Court (a) deny the Motions and (b) grant the Debtors such other and further relief as is just and proper including, in the alternative, holding the Motions in abeyance until the Debtors have established an administrative expense claims bar date and an orderly process for reconciling such claims in these Chapter 11 Cases.

*[Remainder of page intentionally left blank]*

Dated: January 14, 2025
Wilmington, Delaware

        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

        /s/ *Casey B. Sawyer*
Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Sophie Rogers Churchill (No. 6905)
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
srchurchill@morrisnichols.com
csawyer@morrisnichols.com

-and-

DAVIS POLK & WARDWELL LLP

Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
James I. McClammy (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
james.mcclammy@davispolk.com
stephen.piraino@davispolk.com
ethan.stern@davispolk.com

*Counsel to the Debtors and Debtors in Possession*