### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: 2/5/2025 at 4:00 p.m. (ET)**<br><br>**Hearing Date: 2/26/2025 at 10:30 a.m. (ET)** |

### MOTION OF TEMPUR SEALY INTERNATIONAL, INC. FOR ALLOWANCE AND IMMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

Tempur Sealy International, Inc., on behalf of itself and its affiliates including, but not limited to, Tempur-Pedic North America, LLC, Comfort Revolution, LLC and Sealy Mattress Manufacturing Company, LLC (collectively, "TSI"),[1] by its undersigned counsel, Frost Brown Todd LLP and the Law Office of Susan E. Kaufman, LLC, files this motion (this "Motion") for entry of an order (the "Proposed Order"), substantially in the form attached hereto as Exhibit A, allowing and directing immediate payment of the Administrative Claim (defined herein) pursuant to sections 105, 503(b) and 507(a) of title 11 of the United States Code (the "Bankruptcy Code"). In support of this Motion, TSI submits the *Declaration of Corey Middleton* (the "Declaration") filed contemporaneously herewith and incorporated herein, and respectfully states:

### JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

---

[1] All of the accounts receivable that form the basis of the Administrative Claim (defined herein) are generated and owned by one or more of TSI's affiliates of which TSI is a direct or indirect parent. TSI acts as servicer on all TSI affiliated receivables and has authority to collect and administer the accounts receivable of its affiliates.

2. Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought in this Motion are sections 105, 503, and 507 of the Bankruptcy Code.

## BACKGROUND

4. On September 9, 2024 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.

5. Prior to the Petition Date, the Debtors and TSI entered into the following agreements (collectively, the "Agreements"):

- Sealy Retailer Agreement, entered into May 15, 2019, as amended by the First Amendment to Sealy Retailer Agreement, entered into February 1, 2021 and Second Amendment to Sealy Retailer Agreement, entered into August 11, 2021
- Statement of Work, entered into September 16, 2019, as amended by the First Amendment to Statement of Work, entered into January 20, 2020
- Dealer Agreement, signed September 28, 2004
- Trailer Interchange Agreement, entered into March 30, 2020
- Trademark Sublicense Agreement, effective August 1, 2021

6. Pursuant to the terms of the Agreements, and prior to December 19, 2024, the Debtors purchased from TSI certain Tempur Sealy branded bedding products under the trademarks and trade names of Tempur-Pedic®, Sealy® and Stearns & Foster® (collectively, the "Goods" or "Tempur Products").

7. As of the Petition Date, the Debtors owed TSI not less than $4,095,504.70 under the Agreements (the "Pre-Petition Claim").[2]

8. On and after the Petition Date, TSI and the Debtors maintained their ordinary business relationship, with TSI continuing to sell the Goods to the Debtors.

---

[2] The Pre-Petition Claim includes amounts arising under section 503(b)(9) of the Bankruptcy Code.

9. On October 9, 2024, this Court entered its *Order (I) Authorizing Debtors To Pay Prepetition Critical Vendor Claims, Foreign Vendor Claims, and 503(b)(9) Claims in the Ordinary Course of Business, (II) Granting Administrative Expense Status to Debtors' Undisputed Obligations to Vendors Arising From Post-Petition Delivery of Goods Ordered Prepetition and Authorizing Debtors To Pay Those Obligations in the Ordinary Course of Business, (III) Authorizing Debtors To Return Goods, (IV) Authorizing Debtors To Pay Certain Prepetition Claims of Lien Claimants, and (V) Authorizing Financial Institutions To Honor and Process Related Checks and Transfers* [Docket No. 463] (the "<u>Critical Vendor Order</u>"). The Critical Vendor Order, *inter alia*, authorized the Debtors to enter into letter agreements with qualifying critical vendors regarding payment of pre-Petition Date claims in exchange for those vendors continuing to supply goods or services on a post-Petition Date basis. Pursuant to the Critical Vendor Order, the Debtors are authorized to make up to $60,000,000.00 in payments to critical vendors without further order of this Court. *See* Critical Vendor Order at ¶ 3.

10. On October 28, 2024, the Debtors and TSI entered into that certain agreement addressing TSI's critical vendor status (the "<u>Critical Vendor Letter Agreement</u>").[3] Under the Critical Vendor Letter Agreement, the Debtors agreed to pay TSI $2,260,081.00[4] (the "<u>Critical Vendor Claim</u>") within 60 days of October 28, 2024 and in exchange TSI agreed to continue to provide certain Tempur Products to the Debtors post-Petition Date in accordance with Customary Trade Terms (as defined in the Critical Vendor Letter Agreement). Pursuant to the terms of the Critical Vendor Letter Agreement, the Debtors agreed that the Critical Vendor Claim is an administrative claim and entitled to treatment as a priority claim under section 507 of the

---

[3] A copy of the Critical Vendor Letter Agreement is available upon request.
[4] The Critical Vendor Claim represents the agreed priority amount of TSI's significant pre-Petition Date claim to be paid by the Debtors pursuant to the Critical Vendor Letter Agreement.

Bankruptcy Code.

11. In reliance upon the Critical Vendor Letter Agreement, the Critical Vendor Order and the representations of the Debtors[5], TSI continued in good faith to conduct business with the Debtors post-Petition Date despite TSI's already significant outstanding Pre-Petition Claim. Specifically, TSI continued to deliver the Goods to the Debtors.

12. As of the filing of this Motion, Tempur Sealy has not received any payments from the Debtors on account of its Critical Vendor Claim. In addition, Tempur Sealy has not been paid for Goods supplied to the Debtors post-petition in reliance upon the Critical Vendor Letter Agreement in an amount not less than $3,187,044.27 (the "Post-Petition Claim").

13. Based upon representations made at the hearing before this Court held on December 19, 2024, TSI understands that, notwithstanding defaults under the *Final Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364, 503, 506, 507, and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection to Prepetition Secured Creditors, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [Docket No. 584] (the "Final DIP Order"), the Debtors' ability to use cash collateral pursuant to the Final DIP Order has not been terminated.

14. The total amount of the Critical Vendor Claim and the Post-Petition Claim is not

---

[5] Pursuant to the *Motion of Debtors for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552 (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Post-Petition Financing and (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Providing Adequate Protection to Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 20] (the "DIP Motion"), the Debtors indicated their requested financing was calculated to infuse liquidity into the Debtors' estates and "satisfy an immediate cash need to maintain business relationships with vendors [and] suppliers." *See* DIP Motion at ¶ 4. TSI relied on this and other representations of the Debtors in their first day pleadings in continuing to supply Goods to the Debtors. Indeed, the Approved Budget (defined in the DIP Motion) attached as Exhibit 4 to the DIP Motion provided for $973,553,000.00 in operating disbursements over 13 weeks, which TSI reasonably believed would accommodate payment of claims for the Goods provided to the Debtors under the Critical Vendor Letter Agreement. *Id.* at Ex. 4.

less than $5,447,125.27 (the "Administrative Claim"). As of the filing of this Motion, the Debtors have failed or otherwise refused to pay the Administrative Claim.

## RELIEF REQUESTED

15. By this Motion, TSI seeks allowance and immediate payment of the Administrative Claim as an administrative expense of the Debtors' estates pursuant to sections 503 and 507 of the Bankruptcy Code. *See* 11 U.S.C. §§ 503 and 507. The Administrative Claim represents the actual and necessary cost of preserving the Debtors' estates.

## BASIS FOR RELIEF

16. Section 503(b) of the Bankruptcy Code provides that "… there shall be allowed administrative expenses . . . including . . . (1)(A) the actual, necessary costs and expenses of preserving the estate . . ." 11 U.S.C. § 503(b)(1)(A). Under section 507(a)(2) of the Bankruptcy Code, administrative expenses allowed under section 503(b) are entitled to priority status. *In re O'Brien Env't Energy, Inc.*, 181 F.3d 527, 532-33 (3d Cir. 1999).

17. To be entitled to administrative expense priority, the claimant must establish that "the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." *See In re ID Liquidation One, LLC*, 503 B.R. 392, 399 (Bankr. D. Del. 2013).

18. It is undisputed that the Administrative Claim represents an administrative expense entitled to priority under the Bankruptcy Code. First, the Debtors expressly agreed to the administrative priority status of the Critical Vendor Claim. Specifically, the Critical Vendor Letter Agreement states that the Critical Vendor Claim "is an administrative claim under Section 503(b)(9) of the Bankruptcy Code and is entitled to treatment as a priority claim under Section 507 of the Bankruptcy Code."

19. Second, the Debtors' agreement to pay the Critical Vendor Claim benefited the Debtors' estates because in exchange for agreeing to pay the Critical Vendor Claim to TSI, TSI agreed to supply the Tempur Products to the Debtors post-Petition Date in accordance with Customary Trade Terms. This enabled the Debtors to continue their ongoing business relationship with TSI on a post-petition basis without any disruption to their business and allowed the Debtors to maintain the necessary inventory and merchandise levels of Tempur Products needed to operate their business.

20. Third, the Tempur Products provided on credit by TSI post-petition were essential to the Debtors' business. TSI's post-Petition Date sale of the Tempur Products to the Debtors added value to the Debtors' estates because it enabled the Debtors to maintain their ongoing business operations and maximize the value of their businesses, which in turn directly and substantially benefited the Debtors' estates.

21. Additionally, this Court may, in its discretion, require the Debtors to make immediate payment of the Administrative Claim. *See In re Glob. Home Prods., LLC,* 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006). ("[W]hen a claimant timely files a request for payment of an administrative expense under section 503(a), the timing of the payment of that administrative expense claim is left to the discretion of the Court.") (citing *In re Garden Ridge Corp.,* 323 B.R. 136 (Bankr. D. Del. 2005)). In determining whether to order immediate payment of an administrative expense claim, courts consider the prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors. *Garden Ridge*, 323 B.R. at 143.

22. TSI is entitled to immediate payment of its Administrative Claim. First, the Debtors will not be prejudiced by paying the Administrative Claim upon such order becoming final and non-appealable, as the Debtors were obligated to pay the amounts that comprise the Administrative

Claim pursuant to the Critical Vendor Letter Agreement, the Final DIP Order and the Critical Vendor Order. Upon information and belief, these amounts were included in the Approved Budget (as defined in the DIP Motion) and required to be paid pursuant to the Critical Vendor Letter Agreement and pursuant to the Bankruptcy Code. Indeed, the Critical Vendor Letter Agreement was entered on October 28, 2024, after the September 9, 2024 filing of the DIP Motion and the October 22, 2024 entry of the Final DIP Order, so the Debtors certainly entered into the agreement with TSI with full knowledge that they had funds budgeted to pay TSI—they simply have chosen not to make the payment. Second, TSI will suffer a hardship as a result of having to wait an undetermined amount of time for payment, thus losing the time value of a substantial sum of money that TSI could have used as capital for its business. Immediate payment of the Administrative Claim will serve to mitigate this economic hardship faced by TSI and nonpayment of the Administrative Claim. TSI was induced by the Debtors to supply the Tempur Products to the Debtors in reliance on being paid in accordance with the terms of the Critical Vendor Letter Agreement. It is inequitable for the Debtors to receive the benefit of the Tempur Products supplied by TSI without paying for them. Accordingly, this Court should direct the Debtors to make immediate payment of the Administrative Claim pursuant to section 105(a) of the Bankruptcy Code. *See* 11 U.S.C. §105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . ."); *In re Barron,* 73 B.R. 812, 814 (Bankr. S.D. Cal. 1987) ("Placing the time of payment within the parameters of the court's sound discretion establishes a flexible system").

## RESERVATION OF RIGHTS

23. Nothing in this Motion is intended to be, or should be construed as, a waiver by TSI of any of its rights under the Agreements, invoice or purchase order with the Debtors, the

Bankruptcy Code, or applicable law, including, but not limited to its rights of setoff and/or recoupment and other affirmative defenses to payment as it relates to the Agreements. TSI expressly reserves all such rights, including, without limitation, the right to supplement and/or amend this Motion to assert additional post-petition amounts due and owing under open purchase orders and invoices.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, TSI respectfully requests that this Court enter the Proposed Order granting the relief requested therein and such other further relief as this Court deems just and appropriate under the circumstances.

[*Signature page follows*]

Dated: January 14, 2025
Wilmington, Delaware

Respectfully submitted,

LAW OFFICE OF SUSAN E. KAUFMAN, LLC

*/s/ Susan E. Kaufman*
Susan E. Kaufman (DSB# 3381)
919 N. Market Street, Suite 460
Wilmington, DE 19801
Tel: (302) 472-7420
Fax: (302) 792-7420
Email: skaufman@skaufmanlaw.com

-and-

Ronald E. Gold (OH Bar No. 0061351)
(Admitted *pro hac vice*)
FROST BROWN TODD LLP
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
Tel: (513) 651-6800
Fax: (513) 651-6981
Email: rgold@fbtlaw.com

-and-

Rebecca L. Matthess (TX Bar No. 2406776)
(Admitted *pro hac vice*)
FROST BROWN TODD LLP
2101 Cedar Springs Road, Suite 900
Dallas, TX 75201
Tel: (214) 580-5852
Fax: (214) 545-3473
Email: rmatthews@fbtlaw.com

**Counsel for Tempur Sealy International, Inc.**

0011277.0793974  4926-8431-6425v6