IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| BIG LOTS, INC., *et al.*,[1] | : | Case No. 24-11967 (JKS) |
|  | : | (Jointly Administered) |
| Debtors. | : | Related to D.I. 13 and 1337<br>Hearing Date: January 21, 2025 at 1:00 p.m. |

### ALDI INC.'S REPLY IN SUPPORT OF THE MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) ESTABLISHING PROCEDURES TO SELL CERTAIN LEASES, (II) APPROVING THE SALE OF CERTAIN LEASES, AND (III) GRANTING RELATED RELIEF

Aldi Inc. ("**Aldi**"), by counsel, replies in support of the *Motion of Debtors for Entry of Interim and Final Orders (I) Establishing Procedures To Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief* ("**Sale Motion**")[2] [Doc 13] and responds to the *Limited Objection of Premium Asset Management, Inc. to the Assumption and Assignment of Lease Pursuant to the Lease Sales Procedure* (the "**Objection**") [Doc 1337] filed by Premium Asset Management, Inc. ("**PAM**") as managing agent to certain landlords, regarding the Debtors' proposed assumption and assignment of the real property lease (the "**Lease**") for Store #5230, Vero Beach, FL (the "**Leased Premises**") as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms not otherwise defined herein have the meanings set forth in the Sale Motion.

**PRELIMINARY STATEMENT**

1. The Objection disputes the cure amount listed for the Lease in the *Debtors' Fourth Notice of (A) Bid Deadline, (B) Sale Hearing, and (C) Potential Assumption and Assignment of Certain Unexpired Leases* [Doc No. 1236], alleging it fails to take into account property taxes (a matter that can easily be resolved) and PAM's attorney's fees and expenses which, as of December 12, 2024, totaled $30,315.50. The Objection does not provide an itemization of the attorney's fees and expenses. It appears the fees were incurred for monitoring the docket and filing what is otherwise a proforma objection to the Debtors' proposed assumption and assignment of the Lease.

2. Although the Objection is silent as to other specific grounds for challenging the proposed assignment, from brief discussion with counsel for PAM and others, Aldi speculates that the lessor takes issue with Aldi's intent to sell beer and wine at the Leased Premises (for off-premises consumption) and seeks to enforce a restriction in the lease prohibiting the sale of alcohol. To this end, the Objection only includes a rote citation to inapplicable and outdated caselaw (the lead case cited was decided nearly 30 years prior to enactment of the Bankruptcy Code in 1978) purportedly supporting the claim that the Lease "must be assumed without modification, *cum onere*, with all of their benefits and burdens, as expressly provided in 11 U.S.C. §365(b)(3)(C)."  (Objection, p. 4). Without reference to *any* supporting evidence, the Objection erroneously claims the Leased Premises are located in a "shopping center," presumably to take advantage of the heightened adequate assurance requirements found in section 365(b)(3) of the Bankruptcy Code. Property records, the Lease, and other *Joshua Slocum* factors all demonstrate that the Leased Premises are not part of a shopping center.

3. Moreover, section 365(f)(1) of the Bankruptcy Code permits a debtor to assign a lease notwithstanding a provision that prohibits, restricts, or conditions the assignment. Prohibiting assignment on these grounds would undoubtedly prevent the Debtors from realizing the full value of their leasehold interest. Conversely, allowing the assignment free and clear of the restriction would

not harm the lessor in any way. Sustaining the Objection would contradict clear Congressional policy favoring assignment for the benefit of the Debtors' bankruptcy estate.

**STATEMENT OF FACTS**

**I.      The Lease and Aldi's Bid**

4.      Aldi is the Successful Bidder for the Lease following an auction conducted by the Debtors on December 3, 2024 pursuant to bidding procedures approved by the Court. A true and correct copy of the Lease is attached and incorporated as Exhibit A. The Lease is a commercial lease for approximately 3.39 acres (the "**Big Lots Parcel**"), together with the stand-alone building in which the Debtors operated a store located at 6420 20th St., Vero Beach, Florida. DTS Properties VI LLC ("**Lessor**") is the current owner of the Leased Premises. The Lessor did not make a bid at the auction.

5.      The Lease provides the tenant shall not "sell or consume, or allow the sale or consumption of, alcoholic beverages in the Premises." (Lease, p. 12). The Assumption and Assignment Agreement Aldi submitted with its bid specifically provides that Aldi intends to occupy and use the Leased Premises for operation of an "Aldi Food Market" retail grocery store and other uses incidental to the operation of a retail grocery store including, without limitation, the sale of beer and wine. A true and correct copy of the Assumption and Assignment Agreement is attached as Exhibit B and incorporated herein. The Assumption and Assignment Agreement further provides that it is a condition precedent to the assignment of the Lease that the assignment must be made free and clear of any restrictions on the sale of alcoholic beverages contained in the Lease. Aldi intends to sell beer and wine at the Leased Premises. [Declaration of Jordan Ford ("**Ford Declaration**") filed contemporaneously herewith, ¶¶ 11-12]. Aldi will not permit the consumption of alcoholic beverages at the Leased Premises. *Id*.

6.      The Lease is a "triple net lease," known sometimes as a "coupon clipper" lease colloquially because the Lessor has minimal obligations under the Lease. The tenant is required to

pay a monthly base rent, property taxes, utility charges, and any and all other costs and expenses relating to the condition, use, operation, management, maintenance, repair, restoration and replacement of the Leased Premises. The tenant is also required to maintain a variety of forms of insurance on the property, including, but not limited to, commercial general liability insurance, and to indemnify, defend, and hold Lessor harmless.

**II.    Development of the Indian River Mall, the Big Lots Parcel, and the Mattress Firm Parcel**

7.    The Leased Premises originally sat on a 3.988 acre parcel which was subdivided into two parcels on or about December 31, 2000. The .595 acre parcel that was subdivided from the Big Lots Parcel is currently home to a stand-alone Mattress Firm (the "**Mattress Firm Parcel**"). The Mattress Firm Parcel is currently owned by 6440 Vero Beach LLC, an entity which, on information and belief, has no connection to the Lessor or PAM.

8.    The Indian River Mall is an enclosed shopping mall located to the north of the Big Lots Parcel and separated from it by Indian River Mall Road. The Indian River Mall shopping center consists of numerous parcels, including a 78.81 acre parcel sold by Indian River Mall Realty Holding LLC to DTS Properties II LLC (an entity presumably affiliated with the Lessor) in May 2024 (collectively, the "**Indian River Mall Parcels**"). The initial development included approximately 80,000 square feet of retail space plus adjacent parcels where department stores would be constructed and operate. Attached as Exhibit C are a diagram and aerial map outlining the Big Lots Parcel, the Indian River Mall Parcels, and the Mattress Firm Parcel. The Indian River Mall's website lists dozens of tenants, but does not include the Big Lots that operated on the Leased Premises. [Ford Declaration ¶ 10].

9.    The Indian River Mall was developed in the mid-1990s by the DeBartolo Realty Partnership, L.P. ("**DeBartolo**"). On December 28, 1995, DeBartolo executed a Special Warranty Deed pursuant to which ownership of the Big Lots Parcel (undeveloped at the time) was conveyed to

GMRI, Inc. ("**1995 Deed**"). A certified copy of the 1995 Deed is attached as Exhibit D and incorporated herein. The 1995 Deed references the development of the Indian River Mall and a Reciprocal Easement and Operating Agreement ("**REA**") in favor of DeBartolo related to the Indian River Mall parcels, which at the time were being developed. The 1995 Deed notes that the REA had not been completed or recorded at the time the deed was executed. It also provides that a Red Lobster Restaurant was intended to be developed on the Big Lots Parcel.

10. The Indian River Mall development was originally subdivided into three subdivisions: the "Mall Subdivision," the "East Peripheral Subdivision," and the "West Peripheral Subdivision." The Mall Subdivision consists of those lots which are subject to the REA. The plat for the Mall Subdivision was recorded in the Indian River County plat books on December 5, 1995 and includes the below condensed depiction of the Indian River Mall:



(Big Lots Parcel)

The shaded area represents what was intended to, and would become, the Indian River Mall. Notably, the Big Lots Parcel (highlighted in yellow) is not shaded. Moreover, although the Big Lots Parcel appears on the plat, it is marked with the following language: "UNPLATTED ACERAGE NOT A PART OF THIS PLAT." A certified copy of the Mall Subdivision plat is attached as Exhibit E and incorporated herein.

5

11.     The REA was executed on October 7, 1997 by DeBartolo (through I R mall Associates LTD.), Dillard's Inc., Burdines, Inc., Sears, Roebuck and Co., and J.C. Penney Company, Inc. A certified copy of the REA is attached as Exhibit F and incorporated herein. Consistent with the Mall Subdivision plat, the property described as being subject to the REA <u>does not</u> include the Big Lots Parcel.

12.     In 2001, GMRI, Inc. sold the Big Lots Parcel and the Mattress Firm Parcel to VLM Associates, LLC ("**VLM**"). In connection with the sale, GMRI, Inc, VLM, and Simon Property Group, L.P. (DeBartolo's successor in interest) executed an Agreement Amending Deed dated January 4, 2021 ("**Deed Amendment**"). The Deed Amendment provides that (a) the REA <u>does not</u> affect the Big Lots Parcel, (b) no other portion of the legal description of the Big Lots Parcel is included within the REA, and (c) Simon Property Group, L.P. waives its right to record the REA against the Big Lots Parcel. A certified copy of the Deed Amendment is attached as Exhibit G and incorporated herein.

13.     In connection with the sale and the subdivision of the Big Lots Parcel and Mattress Firm Parcel, VLM executed a Declaration of Covenants, Restrictions and Easements dated December 31, 2000 ("**Declaration**"). A certified copy of the Declaration is attached as Exhibit H and incorporated herein. The Declaration establishes access easements to each of the adjacent lots and generally provides that each owner pays the expenses of maintaining their properties.

14.     The Indian River Mall Parcels and the Big Lots Parcel did not share common ownership again until 2024, when the Lessor and apparently affiliated entities purchased the Indian River Mall Parcels and the Big Lots Parcel. A certified copy of the Special Warranty Deed conveying title to the Big Lots Parcel to the Lessor is attached as Exhibit I and incorporated herein. The Mattress Firm Parcel's current owner, 6440 Vero Beach LLC, an entity which, on information and belief, has no connection to the Lessor or PAM, purchased the property in 2022 pursuant to a Special Warranty Deed, a certified copy of which is attached as Exhibit J and incorporated herein.

**RESPONSE TO LESSOR'S OBJECTION**

I. **The Bankruptcy Code Authorizes the Assignment of the Lease to Aldi Free of the Alcohol Restriction**

   A. **The Shopping Center Restrictions Set Forth in Section 365(B)(3) Do Not Apply to the Lease Because the Leased Premises Are Not in a "Shopping Center" as Contemplated by Section 365(b)(3).**

   15. The plain language of section 365(b)(3) of the Bankruptcy Code narrowly applies to shopping centers. "A landlord seeking to avail itself of the protection of section 365(b)(3) bears the burden of proof that the area in question is a shopping center[,]" and the term "shopping center . . . should be strictly construed." *Ames Dep't Stores, Inc.*, 121 B.R. at 163; 3 COLLIER ON BANKRUPTCY P 365.06 (16th ed. 2018). Bankruptcy courts uniformly apply a multi-factor test to determine whether a debtor's premises is part of a shopping center, and in doing so consider the presence of the following elements:

   (a) a combination of leases;
   (b) all leases held by a single landlord;
   (c) all tenants engaged in the commercial retail distribution of goods;
   (d) the presence of a common parking area;
   (e) the purposeful development of the premises as a shopping center;
   (f) the existence of a master lease;
   (g) the existence of fixed hours during which all stores are open;
   (h) the existence of joint advertising;
   (i) contractual interdependence of tenants as evidenced by restrictive-use provisions in their leases;
   (j) the existence of percentage rent provisions in the leases;
   (k) the right of the tenants to terminate their leases if the anchor tenant terminates its lease;
   (l) joint participation by tenants in trash removal and other maintenance;
   (m) the existence of tenant mix; and
   (n) the contiguity of the stores.

*In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1087-88 (3d Cir. 1990); *see also In re Sun TV & Appliances, Inc.*, 234 B.R. 356 (Bankr. D. Del. 1999) (applying the *Joshua Slocum* factors to determine whether a lease was located in a shopping center).

16. As noted, PAM and the Lessor have provided *no proof* that the Leased Premises are part of a shopping center. The Objection does not include a copy of or any citation to the Lease and does not provide any evidence that the Lessor was assigned the prior Lessor's rights upon acquisition of the property in 2024. Regardless, application of the *Joshua Slocum* factors establishes that the Leased Premises are not part of the Indian River Mall shopping center.

17. The Mall Subdivision plat (recorded in 1995) and the Deed Amendment (executed in 2001) make it abundantly clear that the Big Lots Parcel is <u>not</u> part of the Indian River Mall shopping center or subject to the REA (which pertains only to the Indian River Mall). The Indian River Mall Parcels were purposely developed separately from the Big Lots Parcel. The Leased Premises, likewise, were purposely developed separately from the Indian River Mall. The building is a stand-alone location with its own parking lot on a separate tract of land that is separated from the Indian River Mall by Indian River Mall Road.

18. The Lease is not part of a combination of leases and is independent of any other lease or agreement. The Lease makes no reference to, and is not connected in any way, to any lease that is part of the Indian River Mall. The Lease does not reference a master lease, does not establish fixed hours of operation, does not include a percentage rent provision, does not provide for the right of termination if an anchor tenant terminates its lease, and does not require participation by the tenant in trash removal and other maintenance of the Indian River Mall. There is no grocery store located at the Indian River Mall. [Ford Declaration ¶ 9]. Moreover, there is no evidence of joint advertising, even after the Lessor (or its affiliates) acquired ownership of the Indian River Mall Parcels and the Big Lots Parcel. [*Id*.] Indian River Mall has separate signage that does not include advertising for the Big Lots at the Leased Premises. [*Id*.]. In fact, there is a separate sign for Big Lots in front of the Leased Premises for advertising purposes. [*Id*.].

19. Taken together, these factors point to one conclusion: the Leased Premises are not part of the Indian River Mall shopping center. PAM and the Lessor cannot satisfy their burden and,

8

as such, the heightened adequate assurance requirements found in section 365(b)(3) of the Bankruptcy Code do not apply.

### B. The Leased Premises and the Mattress Firm Parcel Do Not Comprise a "Shopping Center" as Contemplated by Section 365(b)(3).

20. PAM and the Lessor have provided no evidence that the Leased Premises and the Mattress Firm Parcel are part of a single shopping center. To the contrary, application of the *Joshua Slocum* factors establishes that the Leased Premises and the Mattress Firm Parcel do not comprise a shopping center. The Big Lots store and the Mattress Firm store are stand-alone stores that sit on two separate parcels owned by distinct and unaffiliated landlords. The two parcels do not share a common parking area. Instead, each parcel contains its own parking area, with curb cuts for ingress and egress across parking lots.

21. The Lease contains no markings of a typical "shopping center" lease. It makes no reference to the Mattress Firm Parcel or any lease related to the Mattress Firm Parcel. As set forth above, the Lease does not reference a master lease, does not establish fixed hours of operation, does not include a percentage rent provision, does not provide for the right of termination if an anchor tenant terminates its lease, and does not require participation by the tenant in trash removal and other maintenance of the Mattress Firm Parcel. The Declaration is silent as to these items as well. Apart from establishing access easements with curb cuts to access each of the adjacent lots, the Declaration in substance provides that each owner pays the expenses of maintaining their properties.

22. These stand-alone stores operate independently of one another. Under the *Joshua Slocum* analysis, they do not constitute a shopping center.

### C. Enforcement of the Alcohol Use Restriction Would Prevent the Debtors from Realizing the Value of the Lease and is thus an Unenforceable Anti-Assignment Provision Pursuant to Section 365(f)(1) of the Bankruptcy Code.

23. Without specifically referencing the alcohol use restriction in the Lease or asserting that the clause prevents assignment to Aldi, the Objection recites inapplicable case law for the

9

proposition that a debtor must generally assume all the terms of the lease and may not pick and choose only favorable terms to be assumed. Tellingly, none of the cited cases require enforcement of a use restriction.

24.  As explained by the United States Court of Appeals for the Third Circuit in *In re Headquarters Dodge, Inc.*, 13 F.3d 674, 682 (3d Cir. 1993), "[s]ection 365(f)(1) was designed to prevent anti-alienation or other clauses in leases and executory contracts assumed by the Trustee from defeating his or her ability to realize the full value of the debtor's assets in a bankruptcy case." The plain language of section 365(f)(1) "encompasses more than merely provisions that actually prohibit the assignment of an executory contract or an unexpired lease; the statutory provision also extends to any clause that 'restricts, or conditions' such assignment. *In re Joshua Slocum Ltd.*, 922 F.2d at 1091. Section 365(f)(1) ensures the "free assignability [of executory contracts or unexpired leases] as a means to maximize the value of the debtor's estate . . . . [T]o that end, [it] allows the [debtor] to assign notwithstanding a provision in the contract or lease, or applicable law, prohibiting, restricting, or conditioning assignment." *In re Rickel Home Ctrs., Inc.*, 209 F.3d 291, 299 (3d Cir. 2000). "[T]he offending provision may not necessarily be one that directly prohibits assignment of a contract, but may be one that indirectly interferes with a debtor's ability to realize the value of its assets." *Shaw Grp., Inc. v. Bechtel Jacobs Co. (In re IT Group, Inc.)*, 350 B.R. 166, 178-79 (Bankr. D. Del. 2006).

25.  Courts considering use restrictions in the section 365(f)(1) context look to balance the benefit of the assignment to the debtor versus the harm assignment would cause the lessor. In *In re Adelphia Communications Corp.*, 359 B.R. 65, 73 (Bankr. S.D.N.Y. 2007), the United States Bankruptcy Court for the Southern District of New York noted that section 365(f)(1) "implements a Congressional policy determination that executory contracts are valuable assets of the estate, and that except in those relatively rare cases where the realization of their value gives rise to material prejudice to the contract counterparty other than the loss of a prospective windfall, the economic

value in such contracts should go not to the contract counterparty, but rather to the debtor's creditor community generally." This policy "parallels case law which disfavors forfeiture. To prevent an assignment of an unexpired lease by demanding strict enforcement of a use clause, and thereby contradict clear Congressional policy, *a landlord or lessor must show that actual and substantial detriment would be incurred by him if the deviation in use was permitted*." *In re U.L. Radio Corp.*, 19 B.R. 537, 544 (Bankr. S.D. N. Y. 1982) (emphasis added by the undersigned) (citing *In re Huntington Limited*, 654 F.2d 578, 584 n.7 (9th Cir. 1981)).

26. The facts in this case are similar to those analyzed in *In re Toys "R" Us, Inc.*, No. 17-34665-KLP, 2018 Bankr. LEXIS 1604 (Bankr. E.D. Va. May 31, 2018). In that case, the debtors conducted an auction of unexpired leases. The lease in question contained a use restriction as to the sale of furniture. After a competitive bidding process, a retail furniture store was named the successful bidder. Its bid was subject to entry of a bankruptcy court order that the assignment would be free and clear of any use restrictions in the lease. The lessor objected to the proposed assignment, asserting that the transaction was impermissible because the use restriction could not be voided. The United States Bankruptcy Court for the Eastern District of Virginia disagreed. It held that the use restriction would unduly hamper the debtors' ability to assign the lease and prevent the full realization of the value of the debtors' assets. *Id*. at *8. "When balancing the interests of the Debtors against those of (the lessor), it is evident that the interest of the Debtors in obtaining the full value of the below-market Lease outweighs the detriment to (the lessor)." *Id*. The court noted that the lessor had failed to provide any clear evidence of harm.

27. Also pertinent to the holding was the competitive bidding process. The evidence showed that the purchaser's bid was conditioned on the use restriction not being enforced. The effect of the purchaser's auction participation was to increase the price of the lease to $1,300,000.00, which was a substantial increase over the lessor's initial $500,000 bid. "This undoubtedly led to a maximization of the value to be received by the bankruptcy estates . . . had (the purchaser) not

continued bidding on the Lease, the purchase price undoubtedly would have been substantially lower than the eventual $1,300,000 winning bid." *Id*. at 9.

28.     Here, enforcement of the alcohol use restriction would interfere with the Debtors' ability to realize the value of their assets. Aldi submitted the highest initial bid for the Leased Premises in the amount of $150,000.00. Haverty's submitted an initial bid for a lower amount. At the December 3, 2024 auction, Aldi increased its bid to $800,000.00 and was named the successful bidder. Haverty's agreed to submit a backup bid in the amount of $750,000.00. Without Aldi's bid, Haverty's would have been the successful bidder for a purchase price of less than $150,000.00, plus cure amounts.

29.     Aldi submitted its bid on the condition that the assignment would be made free and clear of any restriction prohibiting the sale of beer and wine contained in the Lease. [Ford Declaration ¶ 13]. Without this protection, Aldi would not have bid on the Lease. [Ford Declaration ¶ 13]. The effect of Aldi's auction participation was to increase the price of the Lease to $800,000.00, a substantial increase over Haverty's initial bid of less than $150,000.00. Aldi's participation undoubtedly led to a maximization of the value of the Lease.

30.     Balancing the interests of the Debtors in this case in obtaining the full value of the Lease versus the interests of the Lessor, it is clear that the Lease should be assigned free and clear of the alcohol use restriction. The Lessor has not provided *any* evidence that it would be harmed by the proposed assignment to Aldi. The proposed assignment would, however, maximize the value of the Debtors' assets for the benefit of the bankruptcy estates. Aldi's bid increased the purchase price of the Lease by more than $650,000.00. Preventing the assignment by demanding strict enforcement of the alcohol use restriction, when there is no evidence that assignment would prejudice the Lessor in any way, would contradict clear Congressional policy. As such, the Objection must be overruled.

31.     Furthermore, the cases cited in the Objection do not support enforcing the use restriction. In fact, they are silent as to enforcement of use restrictions in the section 365(f)(1)

context. The Objection cites two cases from the United States Court of Appeals for the Third Circuit. The first, *In re Italian Cook Oil Corp*, 190 F.2d 994, 996 (3d Cir. 1951), was decided in 1951, 27 years prior to enactment of the Bankruptcy Code. It does not address enforceability of a use restriction in a commercial lease the debtor seeks to assign. The other Third Circuit case cited, *In re Fleming Cos*., 499 F.3d 300 (3d Cir. 2007), also does not address enforceability of a use restriction. It instead involves the assignee's inability to carry out a material obligation under the contract. The court held that a debtor could not assume and assign a lease because the assignee could not, due to the debtor's actions in rejecting a separate contract, possibly complete one of the lease's material terms. The Objection completely fails to provide evidence or pertinent caselaw that would support prohibiting assignment of the Lease to Aldi.

D.     **Aldi Has Provided Adequate Assurance of Future Performance Under the Lease**

32.     Finally, the Lessor's counsel has claimed (outside of the Objection) that permitting the sale of beer and wine at the Leased Premises would lead to a breach of the Lease, as the tenant purportedly would be unable to comply with the Lease's requirements concerning insurance coverage. This hypothetical breach alluded to by the Lessor's counsel would prevent assignment pursuant to section 365(b)(1), which requires the debtor in possession to provide the lessor with adequate assurance of future performance under the Lease. Aldi's intended sale of beer and wine poses no risk to the Lessor or Aldi's ability to perform under the Lease and such use is no different than many other retail grocery leases for grocery stores in thousands of locations around the state of Florida (and certainly Lessor is landlord under one or more such grocery store leases).

33.     The Lease prohibits the tenant from using the Leased Premises in any manner which makes void or voidable any insurance then in force with respect thereto as required pursuant to Section 15 of the Lease. (Lease, p. 12). Section 15 sets forth the tenant's insurance obligations. They include, among other things, maintaining commercial general liability insurance against claims for third party bodily injury, personal/advertising injury, property damage, and products/completed

13

operations liability, with limits of no less than $1 million per occurrence and $2 million general aggregate with a deductible no greater than $1 million.

34.     Assignment to Aldi would not violate this provision. Aldi maintains a commercial general liability policy in part pursuant to a self-insured retention program that would satisfy the Lease's insurance requirements. [Ford Declaration ¶ 14]. Moreover, Aldi's intended use of the Leased Premises does not present a materially increased risk of liability compared to the Debtors' use of the Leased Premises. Aldi would sell beer and wine for off-premises consumption, only. Aldi is not opening a bar or permitting consumption of any kind of alcoholic beverage within the Leased Premises. Any increased insurance costs related to the sale of beer and wine would be borne and satisfied by Aldi, not the Lessor. Moreover, the Lease is a triple net lease which grants the Lessor broad contractual recourse against the tenant. As such, any objection of the Lessor on these grounds is unfounded.

## CONCLUSION

35.     For the foregoing reasons, Aldi respectfully requests the Court (i) overrule the Objection, (ii) approve the assumption and assignment of the Lease to Aldi pursuant to the terms and conditions of the underlying assumption and assignment agreement; and (iii) grant all other just and proper relief.

Dated: January 15, 2025                                 Respectfully submitted,

                                                        CONNOLLY GALLAGHER LLP

                                                        By: /s/ Karen C. Bifferato
                                                        Karen C. Bifferato (No. 3279)
                                                        1201 North Market Street, 20th Floor
                                                        Wilmington, DE 19801
                                                        Telephone: (302) 888-6221
                                                        Email: kbifferato@connollygallagher.com

                                                            -and-

RUBIN & LEVIN, P.C.

By: */s/ James E. Rossow Jr.*
James E. Rossow Jr. (*pro hac vice*)
(Indiana Attorney No. 21063-29)
135 N. Pennsylvania Street, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 860-2893
Facsimile: (317) 453-8619
Email:  jim@rubin-levin.net

*Attorneys for Aldi Inc.*