# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>Obj. Deadline: January 29, 2025 at 4:00 p.m.<br>Hearing Date: February 26, 2025 at 10:30 a.m. |

## THRASIO, LLC'S MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

Thrasio, LLC (the "Thrasio"), by and through its undersigned counsel, respectfully files this Motion for Allowance and Payment of Administrative Expense Claim, (the "Motion") pursuant to Title 11 of the United States Code (the "Bankruptcy Code") Section 503(b), and granting such other relief that the Court finds just and proper. In support of this Motion, Thrasio represents as follows:

### JURISDICTION

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested are 11 U.S.C. §§ 105, 503(a), 503(b)(1)(A), and 507(a)(2).

---

[1] The debtors and debtors in possession in these chapter 11 cases (hereafter, "Debtors") are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).

## BACKGROUND

4. On September 9, 2024 (the "Petition Date"), Big Lots Stores, Inc. and each of its subsidiaries (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

5. The United States Trustee has appointed an Official Committee of Unsecured Creditors in the Debtors' jointly-administered cases pursuant to Section 1102 of the Bankruptcy Code.

6. The Debtors have operated since the Petition Date and have continued to operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

7. The Debtors filed their bankruptcy cases to effectuate a sale (the "Nexus Sale") of substantially all of their assets and business operations to an affiliate of Nexus Capital Management LP ("Nexus").

8. On December 19, 2024, the Debtors announced that they do "not anticipate completing [the] previously announced asset purchase agreement with Nexus" and that they are "preparing to commence going out of business [GOB] . . . sales at all remaining Big Lots store locations."

9. Prior to the Petition Date, the Debtors and Thrasio entered into a certain revenue share agreement (the "Agreement") wherein Thrasio would provide the Debtors with inventory (the "Products") for aftermarket resale. Pursuant to section 2(b) of the Agreement, the Debtors are required to (1) provide Thrasio with bi-weekly sales reports of the Products and (2) pay Thrasio fifty percent (50%) of the retail sales proceeds of the Products. Agreement ¶ 2(b)[2].

---

[2] Copies of the Agreement are available upon request to undersigned counsel.

10. On October 9, 2024, the Court entered the *Order (I) Authorizing Debtors to Reject Certain Unexpired Leases of Nonresidential Real Property and (II) Authorizing and Establishing Procedures to Reject Executory Contracts and Unexpired Leases* [D.I. 461] (the "Rejection Procedures Order").

11. On November 25, 2024, the Debtors filed their *Sixth Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases* [D.I. No. 1245] (the "Notice of Rejection"). Pursuant to the Rejection Procedures Order and the Notice of Rejection, the effective date of rejection of the Agreement was November 25, 2024.

12. After the Petition Date, the Debtors continued to sell and benefit from the sale of the Products. Indeed, upon information and belief, between the Petition Date and November 25, 2024, the Debtors sold some or all of the Products to their retail customers. To date., the Debtors have failed to (1) provide Thrasio with bi-weekly sales reports of the Products and (2) failed to pay Thrasio fifty percent (50%) of the retail sales proceeds of the Products. While the Debtors have failed to provide bi-weekly sales reports as required by the Agreement, Thrasio estimates its fifty percent revenue share of the postpetition sales to be $3,791,521.86 (the "Postpetition Claim")[3].

**RELIEF REQUESTED**

13. Pursuant to Sections 503(b) and 507(a)(2), and Federal Rules of Bankruptcy Procedure 3002, Thrasio respectfully requests that the Court enter an order allowing and authorizing immediate payment of the Postpetition Claim in the amount of no less than $3,791,521.86.

14. Section 503(b)(1)(A) of the Bankruptcy Code affords administrative priority to claims for the actual, necessary costs and expenses of preserving an estate. "When third parties are induced to supply goods or services to the debtor-in-possession … the purposes of [Section

---

[3] Thrasio reserves the right to amend the amount of the Postpetition Claim subject to the Debtors reporting of actual postpetition sales.

503] plainly require that their claims be afforded priority." *In re Goody's Family Clothing, Inc.*, 610 F.3d 812, 818 (3d Cir. 2010) quoting *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)* 536 F.2d 950, 954 (1st Cir. 1976). Under Section 507(a) of the Bankruptcy Code, administrative expense claims allowed under Section 503(b) are to be given high priority.

15. To qualify for administrative expense priority, an expense "must arise from a [post- petition] transaction with the debtor-in-possession" and "be beneficial to the debtor-in-possession in the operation of the business." *In re Mutual Paper Mills, Inc.*, 650 F.3d 311, 314-315 (3d. Cir. 2011). "There is an initial presumption that, where a contract exists, the contractual rate is the reasonable value of the goods or services provided to the estate." *In re Bethlehem Steel Corp.*, 291 B.R. 260, 264 (Bankr. S.D.N.Y. 2023).

16. Nonwithstanding the Debtors rejection of the Agreement, Thrasio is entitled to an administrative expense claim on account of the Debtors' postpetition sales of the Products. "To hold as a matter of law that a post-petition contract extension of identical substantive terms never can result in an administrative-priority breach of contract claim would flip the Bankruptcy Code on its head." 630 F. Supp. 3d 554 *16 2022 U.S. Dist. LEXIS 172793 ** *Fin. of Am. LLC v. Mortg. Winddown LLC (In re Ditech Holding Corp.)*, 630 F. Supp. 3d 554, 556. A universally acknowledged aim of administrative expense priority is to provide counterparties with an incentive to do business with the debtor in possession so as to rehabilitate the business for the collective benefit of all creditors. *Id*.

17. If a bankruptcy debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services. *Mason v. Official Comm. of Unsecured Creditors (In re FBI Distrib. Corp.)* 330 F.3d 36 * 2003 U.S. App. LEXIS 10443. Here, during the period from the Petition Date until November 25, 2024, the Debtors elected to continue to sell and benefit from the sale of the Products to its retail customers. Pursuant to the Agreement, when the Products are sold, the Debtors are required to

provide sales reports to Thrasio and pay Thrasio fifty percent (50%) of the retail sales proceeds of the Products.  The Agreement requires payment on account of the Product sales within fifteen (15) days of the Debtors report of sale(s).  Such sales represent the "actual, necessary costs and expenses of preserving an estate" in that the sales occurred after the Petition Date and prior to November 25, 2024, the effective date of rejection of the Agreement.  Further, the Debtors affirmatively elected to retain the benefit of the Agreement after the Petition Date by continuing to sell the Products subject to the obligation to make payment *upon the Debtors resale of the Products.*

18. Accordingly, Thrasio is entitled to allowance and immediate payment of the Postpetition Claim.

## **CONCLUSION**

**WHEREFORE**, in accordance with the Debtors' obligations under Sections 503(b)(1)(A), and 507(a)(2) of the Bankruptcy Code, Thrasio respectfully requests entry of an Order (a) allowing the Postpetition Claim, (b) ordering the Debtors to immediately pay the Postpetition Claim, and (c) granting such other and further relief as this Court deems necessary and appropriate.

Dated: January 15, 2025

**JOYCE, LLC**

*/s/ Michael J. Joyce*
Michael J. Joyce (No. 4563)
1225 King Street
Suite 800
Wilmington, DE 19801
Telephone: (302)-388-1944
Email: mjoyce@mjlawoffices.com
www.joycellc.com

*Counsel to Thrasio, LLC*