# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 1312, 1346 & 1350** |

### BURLINGTON STORES, INC.'S OMNIBUS REPLY TO OBJECTIONS TO BURLINGTON'S ASSIGNMENT AND ASSUMPTION OF NOLENSVILLE LEASE

Burlington Stores, Inc.[2] ("Burlington") states as follows (this "Reply") in response to the objections of 5620 Nolensville Pike, LLC (the "Landlord") [Docket No. 1346] (the "Landlord Objection") and Ross Dress for Less ("Ross") [Docket No. 1350] (the "Ross Objection," and together with the Landlord Objection, the "Objections") regarding that certain lease for real property at Store #5216 located at 5702 Nolensville Road, Nashville, TN 37211 (the "Nolensville Lease")[3].

## Preliminary Statement

1. Burlington—a nationally recognized off-price retailer and Fortune 500 company—is the successful bidder for the Nolensville Lease. Burlington has been a valuable partner to the above-captioned debtors and debtors in possession (collectively, the "Debtors")

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Burlington Stores, Inc. is the parent of the Buyer listed at Docket No. 1312, Burlington Coat Factory Warehouse Corporation.

[3] A copy of the Lease is attached to the Landlord Objection, as Exhibit 1.

throughout their sweeping lease asset sale process. Thus far, Burlington has purchased approximately twenty-one (21) unexpired leases of nonresidential real property from the Debtors, generating significant funds for the benefit of their estates.

2. The Landlord for the Nolensville Lease, ostensibly compelled by Ross, whose lease is subsequent in time to Big Lots by almost eleven years, or perhaps eager to recapture its under-market lease, has objected to Burlington's proposed assumption of the Nolensville Lease. Notably, Landlord opposes the proposed assignment to Burlington, not because it violates the terms of Nolensville Lease, but because it will "breach certain exclusivity provisions of another lease in the Shopping Center, *i.e.*, the Ross Lease." Landlord Objection ¶ 8. Ross, for its part, appears in these proceedings to seemingly enforce the Landlord's rights second-hand under Bankruptcy Code section 365, despite having no right to do so under the Bankruptcy Code, the Nolensville Lease or otherwise. Ross also argues that the Nolensville Lease cannot be assigned to Burlington because the assignment would violate Ross's **subsequent in time** lease with the Landlord (the "Ross Lease")[4]. Ross Objection ¶ 7.

3. Ironically, Ross is only a current tenant in the South Plaza Shopping Center ("South Plaza") because Big Lots executed a lease amendment (the "Nolensville Amendment") with Landlord modifying Big Lots's own use restriction against Ross to allow Ross to enter South Plaza at the time of execution of the Ross Lease. Ross argues (without any evidentiary support) that it paid a premium for a broad exclusive to keep Burlington out of South Plaza. *See* Ross Objection ¶ 5–6. It is that very provision between Ross and the Landlord that Ross now purports to wield against the Debtors and their proposed assignee.

---

[4] An excerpt of the Ross Lease is attached to the Landlord Objection, as Exhibit 2.

4.  Through the Objections, the Landlord and Ross ask this Court to strain the meaning of Bankruptcy Code sections 365(b)(3)(C) and (D) to the illogical conclusion that the Bankruptcy Code saddles the Nolensville Lease with later-in-time restrictions between the Landlord and third parties (including Ross), thereby diminishing the value of the Nolensville Lease in myriad unknown ways. The Landlords' proposed interpretation turns a blind eye to the fundamental purpose of the Bankruptcy Code and basic contract and commercial real estate law on its head. If sustained, the Objections will provide a chilling effect on all future lease sale processes, greatly diminishing the ultimate recovery to all stakeholders, while resulting in a windfall to the Landlord and Ross.

5.  For these reasons, and as more fully set forth herein and within the *Debtors' Reply to Certain Objections to Debtors' Assumption and Assignment of the Lease in Nashville, TN* (the "Debtors' Omnibus Reply") [Docket No. 1723], which Burlington adopts and incorporates to the extent not inconsistent with the positions taken herein, Burlington requests that this Court overrule the Objections and approve the assumption and assignment of the Nolensville Lease to Burlington.

**REPLY**

**I.    The Nolensville Lease is Freely Assignable Pursuant to its Terms.**

6.  The Nolensville Lease is freely assignable pursuant to its terms. It provides that Big Lots:

> "shall have the right at any time…to assign this Lease without Landlord's consent; provided, that no such…assignment shall relieve Tenant of any of its obligations thereunder."

Nolensville Lease ¶ 22. It also allows Big Lots to use and occupy the premises for a litany of retail purposes including "for the sale of general merchandise…" Nolensville Lease ¶ 4(A). The proposed assignment to Burlington will not violate the use provision in the Nolensville Lease or

3

any exclusive right in South Plaza to which the Nolensville Lease is subject. Big Lots has the right to use the Premises for the sale of general merchandise, which in retail terms, means any goods other than groceries. Burlington's intended use is for the sale of general merchandise, consistent with the Nolensville Lease. Big Lots and Landlord negotiated fully for this right. In fact, under the Nolensville Lease, the Landlord warrantied that all exclusive use provisions granted by Landlord to tenants in South Plaza to which the Nolensville Lease is subject, and any covenants or restrictions of record affecting Big Lot's use were attached and incorporated in the Nolensville Lease in Article 7.(b)(i) and in Exhibit F. Nolensville Lease ¶ 4(a). And so, Big Lot's right to sell general merchandise is plainly not subject to any future exclusive.

7. The proposed assignment to Burlington will not violate any existing exclusive right in South Plaza. As described above, through the Nolensville Amendment, Big Lots consented to the operation of a Ross in South Plaza. Ross explains that "[a]t the time that Ross negotiated and entered into the Lease, there were no other large off-price apparel tenants in the shopping center." Ross, however, fails to mention that when it entered South Plaza, its exclusive was necessarily limited by and subject to the rights of existing tenants.

8. Specifically, the Ross "protection" exclusive is limited in scope as it:

> "shall not apply to the Existing Tenants listed on Exhibit L (as same may be extended or renewed) to the extent Landlord does not have the right, pursuant to the lease or occupancy agreement to restrict the use of the premises of the Existing Tenants."

Ross MOL ¶ 15.3 (the "Ross Exclusive"). Here, the Debtors are "Existing Tenants" under the Lease, and Big Lots is listed on Exhibit L of the Ross Lease.[5]

---

[5] "Existing Tenant" is defined as "those tenants or occupants of Landlord's Parcel listed on Exhibit L who in accordance with the terms of the existing leases or occupancy agreements in effect on the Effective Date, cannot be prohibited from so operating, but only for the balance of the term(s) of such existing lease(s) or occupancy agreement(s) (as same may be renewed and/or extended in accordance with their terms). Ross Lease 3.2.1(b).

4

9. As sophisticated parties, Landlord and Ross presumably understood that Big Lots had a nearly unfettered right to assign the Nolensville Lease. However, nothing in the Nolensville Amendment restricts the prior-in-time Nolensville Lease. The Amendment does not modify or otherwise restrict the Nolensville Lease (or make the Nolensville Lease subject to the Ross Exclusive) in any manner. Instead of bargaining for the restriction to apply, Ross now asks this Court for an interpretation of the Bankruptcy Code granting it rights it did not bargain for outside of bankruptcy.[6]

10. Neither the Landlord nor Ross can modify and/or restrict the terms of the Nolensville Lease without Big Lots's consent (which Big Lots did not give). That proposition is consistent with applicable commercial real estate law. *See, e.g.*, *MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.)*, 661 B.R. 298, 322 (S.D.N.Y. 2024) ("[T]he purpose of chapter 11 is . . . not to provide windfalls to any, or to allow landlords to improve the position they occupied as a result of a bad bargain prior to bankruptcy."); *In re Rock 49th Rest. Corp.*, 2010 WL 1418863 at *21 (Bankr. S.D.N.Y. April 7, 2010) ("Section 365 does not give a landlord the right to improve its position upon the bankruptcy of the tenant. The statute affords no relief to a landlord simply because it might seek to escape a bargain it made.").

11. In short, because the Ross Lease does not restrict the prior in time Nolensville Lease, the Debtors' proposed assignment to Burlington does not violate the terms of the Nolensville Lease. Similar to this Court's analysis in *In re 99 Cents*, where a lease is freely assignable and the proposed assignment does not violate the use restriction, the Court's inquiry can end there. *See In re Number Holdings, Inc.*, Case No. 24-10719 (JKS) (Bankr. D. Del.

---

[6] *See In re Martin Paint Stores*, 199 B.R. 258, 264 (Bankr. S.D.N.Y. 1996), *aff'd sub nom.*, *S. Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57 (S.D.N.Y. 1997) ("Section 365 aims to ensure that the landlord receives the benefit of his bargain, and looks, therefore, to the prejudice to the landlord. It does not deal with a third party's benefit of its own bargain with the landlord, and Persuasion's position is analogous to the creditor of a creditor.").

2024), 5/23/2024 Hr'g Tr., Docket No. 734, at pgs. 96–97; a copy of which is attached hereto as **Exhibit A**.

II.     **Use and Exclusivity Restrictions Not Contained in the Nolensville Lease are Unenforceable.**

12.     A central question raised by the Landlord and Ross is whether Bankruptcy Code sections 365(b)(3)(C) and (D) require the Court to enforce exclusive use clauses and "tenant mix" restrictions granted by a landlord to subsequent tenants and not contained in the lease at issue.  The short answer is no—the exclusive use clauses and "tenant mix" restrictions that sections 365(b)(3)(C) and (D) protect must be rooted in the terms of the leases.  Sections 365(b)(3)(C) and (D) are designed to further the purposes of the Bankruptcy Code and the Court should interpret them in harmony with section 365(f).  *See United Hospital Center, Inc. v. Richardson*, 757 F.2d 1445, 1451 (4th Cir. 1985) (explaining that it is the court's task to "'interpret the words of the [statute] in light of the purposes [the Legislature] sought to serve,' and to arrive at a construction which is 'most harmonious' with the statutory scheme and general purpose. [. . .] Should there be some inconsistency between the two statutes or sections of a single statute, courts, in construing the statues, so far as it is possible, should seek to steer a 'middle course that vitiates neither provision but implements to the fullest extent possible the directives of each.'") (internal citations omitted).

13.     Bankruptcy Code section 365(f) renders contractual "anti-assignment clauses…unenforceable in bankruptcy."  11 U.S.C. § 365(f).  The intent of section 365(f) is that "subject only to certain statutory safeguards, the value of a debtor's leases should go to the debtor's creditors, and that leases can be sold to achieve that end—with or without landlord consent."  *In re Ames Dep 't Stores. Inc.,* 348 B.R. 91, 98 (Bankr. S.D.N.Y. 2006).

14. Here, the Objections not only render section 365(f)(3)'s waiver of anti-assignment provisions meaningless, but also seek to impose new and more stringent anti-assignment provisions than those contained in the actual lease. In other words, the Landlord and Ross implicitly argue that section 365(f) (designed to waive anti-assignments provisions) should be ignored, and sections 365(b)(3)(C) and (D) should be interpreted to impose **new, greater** and more stringent anti-assignment obligations applicable solely in the bankruptcy context. This interpretation turns sections 365(b)(3) (C) and (D) into a sword rather than a shield—a sword that bestows upon the Landlord and Ross a commercially competitive advantage that allows them to significantly improve their position to the detriment of the Debtors' estates.

15. That argument has been rejected by courts in this and other jurisdictions. The Fourth Circuit Court of Appeals has explained that the purpose of section 365(b)(3)(C) "is to preserve the landlord's bargained-for protections with respect to premises use and other matters that are <u>spelled out in the lease with the debtor-tenant</u>." *Trak Auto Corp. v. West Town Center LLC (In re Trak Auto Corp.)*, 367 F.3d 237, 244 (4th Cir. 2004) (emphasis added) (citing *In re Ames Dep't Stores*, Inc. 121 B.R. 160, 165 n.4 (Bankr. S.D.N.Y. 1990)). This provision is "intended to protect the landlord's economic expectations rather than those of the other tenants." *In re Martin Paint Stores*, 199 B.R. 258, 262 (Bankr. S.D.N.Y. 1996). "Its intent is not to bestow upon landlords new contractual rights but rather to preserve contract provisions at risk of being stricken as de facto anti-assignment clauses under the provisions of 11 U.S.C § 365(f)." *In re Toys "R" Us, Inc.*, 587 B.R. 304, 309–310 (Bankr. E.D. Va. 2018) (quoting *Trak Auto Corp. v. West Town Center LLC (In re Trak Auto Corp.)*, 367 F.3d 237, 244 (4th Cir. 2004)).

16. The Bankruptcy Court for the Eastern District of Virginia's opinion in *Toys "R" Us* is squarely on point and highly instructive. *See Toys*, 587 B.R. at 309–310. In *Toys* (and

here), nothing in the four corners of the lease between the landlord and the *Toys* debtors prohibited assignment to Burlington. *See id*. at 308–309. The landlord nevertheless sought to block *Toys'* proposed assignment of the lease to Burlington on the basis of exclusive use provisions the landlord had granted to Ross, a subsequent tenant. *See id*. at 307. The *Toys* court rejected that interpretation because the lease being assigned contained no provision requiring compliance with the Ross exclusive use provision. *See id*. at 310–311. The *Toys* court alternatively found that the assignment would not breach the exclusivity provision because the court's order would render the landlord "without the capacity to prevent Burlington's intended use," noting that the exclusivity provision only applied if the landlord "ha[d] the capacity" to prevent a tenant from selling off-price apparel. *Id*. at 310.

17. The *Toys* court's interpretation comports with the fundamental contractual and commercial leasing principle that, outside of bankruptcy, the debtors would have been able to assign the leases to Burlington pursuant to their terms, subject only to any later-in-time or future exclusive or use restrictions to which Big Lots had explicitly agreed to be bound. The Debtors should be permitted to do the same here.

18. More recently, in *Bed, Bath & Beyond*, the Bankruptcy Court for the District of New Jersey reasoned similarly in a detailed bench opinion rejecting a strict interpretation of section 365(b)(3)(C) that favors landlords at the expense of retail debtors' lease values. The court explained,

> "When [the] canons of statutory construction are applied, it becomes clear to the Court that the phrase 'any other lease' could not have been intended and was not intended to mean a subsequent lease between a landlord and a third party as to which the debtor was not a party. As the District Court for the Southern District of New York persuasively explained in the Sears case, the provisions of 365(b) must be read in harmony with 365(f)(2)(B), Sears Holding Corp, 613 B.R. 51, 68 (S.D.N.Y. 2020). Applying the

8

plain language argument here would mean that the debtors are bound by restrictive use and similar provisions in any other leases that were entered into after Bed Bath & Beyond leases, in these cases, often more than a decade later, and make the broad assignment provisions negotiated for by BBB unenforceable based on the landlord's agreement with a third party that the debtor never knew about or much less agreed to.  Thus, the ability of debtors to maximize the proceeds from their leases would or could be severely curtailed by landlord's agreement with other tenants to limit the uses for which the BBB premises were expressly allowed to be used without BBB, Bed Bath and Beyond agreeing to those terms.  The landlords would be permitted to eviscerate the debtors' negotiated bargain, a broad assignment provision, by subsequently entering into an agreement with any third party in the same shopping center that restricts uses that Bed Bath & Beyond was expressly permitted to have under their lease.  That would seriously limit BBB's assignment rights without its knowledge or consent.  And this frankly makes no sense to the Court…."

*In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D. N.J. 2023), 8/30/2023 Hr'g Tr., Docket No. 2115 at pgs. 116–120; a copy of which is attached hereto as **Exhibit B**.

19. As the BBB court recognized, the proposed interpretation of section 365(b)(3)(C) would not only be detrimental to Burlington in this (and future) lease asset sale(s), but would chill bidding and depress lease values in future retail cases, to the detriment of retail debtors and their estates.

20. The Objections should be overruled, and the assignment of the Nolensville Lease should be approved.

Dated: January 15, 2025

/s/ *Marcy J. McLaughlin Smith*
**WOMBLE BOND DICKINSON (US) LLP**
Matthew P. Ward (DE Bar No. 4471)
Marcy J. McLaughlin Smith (DE Bar No. 6184)
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: matthew.ward@wbd-us.com
 marcy.smith@wbd-us.com

-and-

**JACKSON WALKER LLP**
Kristhy M. Peguero (TX Bar No. 24102776)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Email:   kpeguero@jw.com

Jennifer F. Wertz (TX Bar No. 24072822)
100 Congress Ave., Suite 1100
Austin, TX 78701
Telephone: (512) 236-2247
Email:   jwertz@jw.com

Christopher R. Bankler (TX Bar No. 24066754)
William Farmer (TX Bar No. 24127156)
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-5859
Email: cbankler@jw.com
 wfarmer@jw.com

*Co-Counsel for Burlington Stores, Inc.*

43274770v.9