**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*,[1] | Case No. 24-11967 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Obj. Deadline February 4, 2025 at 4:00 p.m. (ET)**<br>**Hearing Date: February 26, 2025 at 10:30 a.m. (ET)** |

**MOTION OF GAINESVILLE REALTY, LTD., TO COMPEL DEBTORS TO
IMMEDIATELY REJECT A LEASE OF NON-RESIDENTIAL REAL PROPERTY**

Gainesville Realty, Ltd., ("Gainesville Realty"), a Texas limited partnership as landlord and creditor in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby files this *Motion of Gainesville Realty, Ltd., to Compel Debtors to Immediately Reject a Lease of Non-Residential Real Property* (the "Motion") seeking an order substantially in the form attached hereto as **Exhibit A**, compelling Big Lots, Inc., (the "Debtors") to immediately reject the lease agreement between Gainesville Realty and Big Lots Stores, Inc., and in support thereof respectfully represents as follows:

**JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Motion presents a core proceeding under 28 U.S.C. § 157(b)(2). The statutory predicate for the relief sought herein is 11 U.S.C. §§ 365(d)(3), 503(b) and 365(d)(2).

2. Venue before this Court is proper pursuant to 28 U.S.C. § 1409.

---

[1] The debtors and debtors-in-possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores – PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores – CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163) INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin Granville Road, Columbus, OH 43081.

**BACKGROUND**

**A. Procedural Background**

3.  On September 9, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code")

4.  The Debtors' Chapter 11 cases have been jointly administered for procedural purposes, and the Debtors are operating their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.  On September 23, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code. See Not. of Appointment of Comm. of Unsecured Creditors. *See Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 248].

6.  On October 21, 2024, the Court entered the *Final Order (I) Authorizing Debtors to Assume the Consulting Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, and (III) Granting Related Relief* [Docket No. 576] (the "Store Closing Order").

7.  On October 25, 2024, the Court entered the *Order (I) Approving Bidding Procedures for Sale of Debtors' Assets, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (IV) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (V) Approving Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Docket No. 612] (the "Bidding Procedures Order").

8.  The Debtors commenced these Chapter 11 Cases after having executed a stalking horse asset purchase agreement, dated as of September 8, 2024 (the "Nexus APA") by and among

Big Lots, Inc., and Gateway BL Acquisition, LLC, a Delaware limited liability company (together with its affiliates, including Nexus Capital Management LP, "Nexus").

9. On November 21 and 22, 2024 (collectively the "Nexus Sale Hearing"), the Debtors sought and received Court approval to consummate the sale to Nexus. *See Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1232] (the "Nexus Sale Order").

10. However, the Debtors' proposed going-concern sale to Nexus failed and Gordon Brothers Retail Partners ("GBRP") stepped in and cobbled together a new sale (the "GBRP Sale"), and on or about January 2, 2025, the Court entered an *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Asset Free and Clear of All Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1556] (the "GBRP Sale Order").

11. The GBRP Sale contemplates assumption and assignment to a new buyer of a minimum of 200 former Big Lots locations, but up to 400 locations – less than half of those proposed sale to Nexus. To date, however, no notice of any proposed assumptions of any leases has been filed. Accordingly, at present, landlords, including Gainesville Realty, have no idea whether their lease will be assumed/assigned, or rejected. In the meantime, Gainesville Realty has been approached by two national retailers who have shown an interest in the Gainesville location.

Yet, while the status of the future of the Gainesville location is uncertain, Gainesville Realty is unable to negotiate with interested retailers, notwithstanding the very real prospect that the Lease for the Gainesville location could still be rejected in the next 30-60 days.

### B. The Lease

12. Gainesville Realty is the owner of the premises located at 1104 US-82, Gainesville, Texas 76240 (the "Premises") at which Big Lots Stores, Inc., operates store number 1860 ("Store 1860") at the Premises pursuant to that certain written lease of nonresidential real property between Gainesville Realty, Ltd. and Big Lots Stores, Inc., dated June 9, 2004 (as amended and supplement) (the "Lease"). A copy of the Lease and all modifications thereto is attached hereto as **Exhibit B**. The current term of the Lease is set to expire on January 31, 2025.[2]

13. Despite repeated promises to pay, as of the date of the filing of this Motion, Debtors have not paid post-petition rent for the month of January 2025, and the Lease has not been assumed or rejected, all while the Debtors remain in possession of the property and continue to enjoy its full use and occupation, and while GBRP conducts going-out-of-business sales at the Premises.

## RELIEF REQUESTED

### A. Order Compelling Compliance with Obligations Under 11 U.S.C. § 365(d)(3)

14. Section 365(d)(3) of the Bankruptcy Code provides, in pertinent part, that:

> [t]he [debtor-in-possession] shall timely perform all of the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential lease property . . . until such lease is assumed or rejected . . .

11 U.S.C. § 365(d)(3).

---

[2] On August 30, 2024, the Debtors signed a letter extending the lease into the Third Option Term, set to commence February 1, 2025 and end January 1, 2030. A copy of the letter is attached here to as **Exhibit C**.

15. Section 365(d)(3) protects landlords by requiring debtor-tenants to perform timely their obligations arising under the lease. *See In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209 (3d Cir. 2001); *In re Valley Media, Inc.*, 290 B.R. 73, 74 (Bankr. D. Del. 2003). This section of the Bankruptcy Code expressly requires debtor-tenants immediately to comply with all their lease obligations in full as they come due in the post-petition period. *See Id.*; *In re DVI, Inc.*, 308 B.R. 703 (Bankr. D. Del. 2004).

16. Currently, despite obligations imposed on the Debtor by 11 U.S.C. § 365(d)(3), and despite assurances that it would be forthcoming, the Debtor has not yet remitted January rent and additional rent to Gainesville Realty.

17. By the time of any hearing on this Motion, rent and additional rent under the lease will come due beginning February 1, 2025. Accordingly, the Debtor will have the affirmative duty to timely pay all rent and additional rent as it comes due. Gainesville Realty therefore respectfully requests that this Court order the Debtor to timely perform all its obligations under the Lease as such obligations come due, as required by section 365(d)(3).

**B. The Debtors Should Be Compelled to Immediately Reject the Lease**

18. Additionally, Gainesville Realty respectfully requests that the Court exercise its authority under Bankruptcy Code Section 365(d)(2) and enter an order compelling the Debtors to reject the Lease on an expedited basis.

19. Section 365(d)(2) of the Bankruptcy Code expressly provides, in relevant part, that:

> In a case under chapter … 11 … of this title, the trustee may assume or reject an executory contract … of the debtor at any time before confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2).

20. Accordingly, on the request of a non-debtor party to an executory contract or unexpired lease, the Court may order the debtor to determine within a specified period of time whether to assume or reject such executory contract or unexpired lease. 11 U.S.C. § 365(d)(2); *Zions Credit Corp. v. Rebel Rents (In re Rebel Rents, Inc.)*, 291 B.R. 520, 529-31 (Bankr. C.D. Cal. 2003) (granting debtor thirty days within which to assume or reject personal property leases). This provision is intended to "'prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-à-vis the estate.'" *University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065, 1078-79 (3d Cir. 1992) (footnote omitted, and quoting S. Rep. No. 989, 95th Cong., 2d Sess. 59 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5845).

21. It is within the Court's discretion to avoid unnecessary delay by establishing a deadline by which a debtor must make its Section 365(a) election. *See, e.g., In re Winn-Dixie Stores, Inc.*, 345 B.R. 402, 406 (Bankr. M.D. Fla. 2006). In doing so, the Court must balance the interests of the debtor against those of the non-debtor party to the contract. *See, e.g., In re Physician Health Corp.*, 262 B.R. 290, 292 (Bankr. D. Del. 2001). This is an equitable inquiry in which the Court balances the potential harm to the estate from making an accelerated decision against the potential harm to the counter-party to the contract from having to wait for assumption or rejection. *See, e.g., In re Kmart Corp.*, 290 B.R. 614, 619 (Bankr. N.D. Ill. 2003). While the Bankruptcy Code enables a debtor substantial time within which to make a final decision on whether to assume or reject an executory contract, such right should not be utilized by a debtor if the result would be to harm its creditors and its estates.

22. While a debtor should be permitted a reasonable time to decide whether to accept or reject an executory contract, *see, e.g., Rebel Rents*, 291 B.R. at 530, what constitutes a

reasonable time period for a debtor to make such election is also within the Court's discretion, "in light of all the circumstances of the case." *In re Wheeling-Pittsburgh Steel Corp.*, 54 B.R. 385, 388 (Bankr. D. Pa. 1985); *In re Dunes Casino Hotel*, 63 B.R. 939, 949 (Bankr. D.N.J. 1986); *In re Monroe Well Serv., Inc.*, 83 B.R. 317, 323 (Bankr. E.D. Pa. 1988) (a bankruptcy court has "broad discretion" to determine whether to shorten the time in which a debtor has to assume or reject an executory contract).

23. In determining what constitutes a reasonable time, courts consider a number of factors, including: (i) the nature of the interests at stake; (ii) the balance of the harm to the contract parties; (iii) the good to be achieved; (iv) the safeguards afforded to the contract parties; and (v) whether the imposition of a deadline is arbitrary. *In re G-1 Holdings, Inc.*, 308 B.R. 196, 213 (Bankr. D.N.J. 2004); In re Grant Broadcasting of Phila., Inc., 71 B.R. 891, 902 (Bankr. E.D. Pa. 1987).

24. Here, the Debtor is conducting a going-out-of-business sale and clearly has no intention of retaining the Premises.[3] In order to transfer the Lease under Section 365(b)(1), the Debtor must cure any defaults and provide adequate assurance of future performance. It makes no financial sense for the Debtors or a buyer to cure what will likely soon be two months of Lease arrearages which will total $18,252 ($9,126 a month), together with two months of common area maintenance ("CAM") charges which total $2,808 ($1,404 a month), and the 2024 Premises insurance of $13,491.69 that are due on February 12, 2025, all in order to obtain a market rate lease for approximately five years. Moreover, and critically, two national retailers have indicated an interest to become a tenant in the Gainesville store. The uncertainty regarding the future of the

---

[3] Additionally, the Debtors and GBRP do not listed the Premises and Lease as one of its leases available for sale on their website "offering Big Lots leases for sale nationwide." *See* https://info.gordonbrothers.com/biglotsrealestate and the accompanying Brochure listing the Leases Available for Assignment, attached hereto as **Exhibit D**.

Gainesville store, and the inability to negotiate with those retailers, risks a circumstance where the lease is rejected by the debtor, and the landlord has, in the interim, lost viable perspective replacement tenants.

25. Under any application of the factors to be considered when determining whether to order the Debtor to assume or reject the Lease on an expedited basis, relief is warranted here. As to the first factor, Gainesville Realty has a strong interest in having the Debtor comply with the terms of the Lease – it is both a legal requirement of the Bankruptcy Code and a contractual requirement under the Lease.

26. The balance of the harms also weighs in Gainesville Realty's favor. Gainesville Realty is being denied the ability to engage in negotiations with two national retailers who may be willing to enter into a new lease with options.

27. The good to be achieved is the specified relief that the Bankruptcy Code already requires. Thus, that factor weighs in favor of Gainesville Realty. Likewise, the safeguards imposed upon the parties are specified in the Code, specifically, the Debtor must comply with its obligations under the Lease. Finally, requiring the Debtors to immediately make a determination whether to assume or reject is not arbitrary. Either the Debtor intends to comply with the Lease or it does not. In light of its going-out-of-business sale being conducted on the Premises, the Debtor does not need the Lease.

28. Under the foregoing standards, this Court should compel the Debtors to assume or reject the Lease within three (3) business days of the granting of this Motion. Pending the Debtors' determination whether to assume or reject the Lease, Tenant should be ordered to comply with all the terms of the Lease, including, but not limited to payment of all post-petition obligations contained in the Lease.

**RESERVATION OF RIGHTS**

29.     Gainesville Realty reserves its right to further amend, modify, or supplement this Motion, including, without limitation, adding any obligations that accrue, arise, or are related to the pre-rejection period that subsequently become known to Gainesville Realty or that become defaulted with the passage of time. Gainesville Realty further reserves its rights to raise any additional objections to assumption of the Lease, including the ability of any proposed assignee to perform and to provide the necessary adequate assurance information. Gainesville Realty expressly reserves all rights and remedies at law or in equity against the Debtors and nothing contained herein is intended to or should be construed to limit Gainesville Realty's rights, remedies, or interests with respect to the Lease

*[Remainder of page intentionally left blank]*

WHEREFORE, Gainesville Realty respectfully requests that this Court grant this Motion and enter the attached Order and grant such other and further relief that the Court deems just and proper.

Dated: January 21, 2025

**MORRIS JAMES LLP**

*/s/ Christopher M. Donnelly*
Carl N. Kunz, III (DE Bar No. 3201)
Christopher M. Donnelly (DE Bar No. 7149)
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail:  ckunz@morrisjames.com
             cdonnelly@morrisjames.com

*Counsel to Gainesville Realty, Ltd.*